IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| THE STATE OF TEXAS, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | Civil Action No. 4:20-CV-957-SDJ |
| GOOGLE LLC, | § | |
| | § | |
| Defendant. | § | |

**DEFENDANT GOOGLE LLC'S MOTION TO TRANSFER VENUE
PURSUANT TO 28 U.S.C. § 1404(a) AND MEMORANDUM IN SUPPORT**

The first case alleging that Google has monopolized online display advertising was filed in May 2020 by an advertiser, seeking to represent a putative class of advertisers and publishers. An identical case was filed a month later in June 2020, followed by a consolidated class action complaint in September 2020.[1] Three more similar cases were filed in December 2020, and, in January 2021, a sixth. All of these private class actions were filed in the Northern District of California, the venue where Google is headquartered and where more relevant witnesses and documents are located than in any other district in the country.[2]

Like all these cases filed in the Northern District of California, this case alleges violations of Section 2 of the Sherman Act, plus state antitrust and unfair competition law claims, and seeks injunctive relief and damages. This case also alleges a violation of Section 1 of the Sherman Act, based on Google's alleged "unlawful agreement with Facebook … to manipulate advertising auctions." Compl. ¶ 2. Facebook, like Google, has its principal place of business in the Northern District of California.

---

[1] *In re Google Digital Advertising Antitrust Litig.*, No. 20-cv-03556 (N.D. Cal.), Dkt. 1, 24, 25.

[2] *Sweepstakes Today LLC v. Google LLC*, No. 20-cv-08984 (N.D. Cal.); *Genius Group Media, Inc. v. Google LLC*, No. 20-cv-09092 (N.D. Cal.); *Sterling Int'l Consulting Group v. Google LLC*, No. 20-cv-9321 (N.D. Cal.); *Astarita v. Google LLC,* No. 21-cv-00022 (N.D. Cal.).

Yet, Plaintiffs brought this case in the Sherman Division of the Eastern District of Texas—a venue that has no special connection to the case. The Complaint contains no factual allegations that connect Google's alleged conduct to this division or District, or even this State. One might expect that the State of Texas would want to sue in Texas court. But nine other states are plaintiffs as well. Those states range from the far north (North Dakota) to the far west (Idaho) to the midwest (Indiana) to the deep south (Mississippi), and plainly their claims—particularly, the *parens patriae* claims on behalf of their individual citizens—have no particular connection to the Eastern District of Texas. If Arkansas, Idaho, Indiana, Kentucky, Mississippi, Missouri, North Dakota and South Dakota would not be inconvenienced by trying this case in Texas—a venue with no connection to their claims—then they would not be inconvenienced by trying it almost anywhere in the country, and certainly not in the Northern District of California. As certain class action plaintiffs said in opposition to a motion filed with the Judicial Panel on Multidistrict Litigation to consolidate various private antitrust litigation against Google (including various digital advertising class actions) in the District of Columbia, "[t]he Northern District of California is the location of the defendant and the most witnesses and evidence for purposes of these cases." *In re: Google Antitrust Litigation*, Dkt. 34 at 9 (MDL No. 2981). The private-interest factors that guide a § 1404(a) analysis therefore strongly favor transfer of this case to the Northern District of California. And the public-interest factors tilt in favor of transfer as well.  For those reasons, we request that the Court grant Google's motion and transfer the case.

### ARGUMENT

The legal criteria for transferring a case pursuant to § 1404(a) are well-established. The court must first determine whether the case "might have been brought" in the proposed transferee forum and, if so, then consider eight factors—four "private interest" factors and four "public interest" factors. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 312–15 (5th Cir. 2008) (en banc).

The private interest factors are: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id*. at 315 (internal citation omitted).

The public interest factors are: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law." *Id.*

Under the general venue statute, as the Fifth Circuit has recognized, "large corporations … often have sufficient contacts to satisfy the requirement of § 1391(c) for most, if not all, federal venues," such that the statute "'has the effect of nearly eliminating venue restrictions in suits against corporations.'" *Id.* at 313 (quoting 14D Wright, Miller & Cooper, *Federal Practice & Procedure* § 3802 (3d ed. 2007)). Section 1404(a) serves to "prevent plaintiffs from abusing their privilege under § 1391 by subjecting defendants to venues that are inconvenient under the terms of § 1404(a)." *Id.* at 315; *Veba-Chemie A.G. v. M/V Getafix*, 711 F.2d 1243, 1247 (5th Cir. 1983) (§ 1404(a) "requires only that the transfer be '[f]or the convenience of the parties, in the interest of justice.'"); *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 (1981) (noting the "relaxed standards for transfer" under § 1404(a)).

It is indisputable that Plaintiffs could have brought this case in the Northern District of California, as have the plaintiffs in the *In re Google Digital Advertising Antitrust Litig.*, *Genius Media Group*, *Sweepstakes Today*, *Sterling Int'l Consulting Group*, and *Astarita* cases.[3]  The issue is whether the private- and public-interest factors favor transfer to the Northern District of California as the more convenient and appropriate forum. They do.

---

[3]   *In re Volkswagen*, 545 F.3d at 312 ("The preliminary question under § 1404(a) is whether a civil action 'might have been brought' in the destination venue.").

I.      **The Private-Interest Factors Favor Transfer to the Northern District of California**

All four private-interest factors favor transfer.

**Relative ease of access to sources of proof**.  *In re Volkswagen* arose from an automobile accident on a Dallas freeway. It was undisputed that (i) the accident occurred in Dallas, (ii) the vehicle was purchased there, (iii) Dallas residents witnessed the accident, (iv) Dallas police and paramedics responded, (v) a Dallas doctor performed the autopsy, and (vi) the third-party defendant (the driver of the car that struck the plaintiff) lived in Dallas. It was also undisputed that none of the plaintiffs lived in the Marshall Division (where they filed the case), no witness lived there, no source of proof was located there, and none of the facts giving rise to the case occurred there.

The plaintiffs argued nevertheless that the relative ease of access to sources of proof was the same for Dallas and Marshall because of "copying technology and information storage." 545 F.3d at 316. The Fifth Circuit rejected plaintiffs' argument out of hand, underscoring that "the sources of proof requirement is a meaningful factor in the analysis" and that improved information-sharing technology "does not render this factor superfluous." *Id*.

Here, the challenged conduct occurred in the Northern District of California, where Google has its headquarters and where its executives and most of its employees work, or in New York City, where a number of employees concerned with display advertising work. ***None*** of the alleged anticompetitive conduct is alleged to have occurred in this District, or even in Texas. Plaintiffs' allegations acknowledge as much. The Complaint's allegations of wrongdoing identify nine Google employees by name,[4] but ***none*** of them work in Texas. The Complaint's allegations of wrongdoing also quote or characterize a number of Google communications[5]—documents that were authored by, sent to, or possessed by more than 150 Google employees in all. But, again,

---

[4]     *E.g.*, Compl. ¶¶ 104, 160, 168.

[5]     *E.g.*, *id.* ¶¶ 5, 11, 13.

*none* of these employees work in Texas. The vast majority work at Google's Mountain View headquarters or satellite offices in San Francisco or Sunnyvale (all in the Northern District of California) or in New York City. While this District would be inconvenient for all of these witnesses, the Northern District of California would be more convenient for dozens of them.[6]

The same is true of third-party witnesses and sources of documentary proof according to the Complaint. It identifies various relevant third parties, a majority of which have their headquarters or offices in Northern District of California (or elsewhere in California or Washington State). *None* has its headquarters or offices in the Eastern District of Texas.  The Complaint names fourteen alleged rivals, Facebook, foremost among them. Facebook, like Google, has its headquarters in the Northern District of California (in Facebook's case, in Menlo Park, California). The Complaint devotes 25 paragraphs to allegations that "the two giants reached an illegal agreement" to prevent competitive bidding for display ads.[7] There is no allegation they did so in this District, however. To the contrary, the Complaint alleges that the "illegal agreement" was the product of "formal negotiations" between executives of Facebook and Google.  And where are the other alleged rivals located?

- Apple (Compl. ¶¶ 142, 190): headquartered in Cupertino, California in N.D. Cal.
- Project Rubicon (*id*. ¶¶ 46, 76-77, 260): headquartered in Los Angeles, California; offices in N.D. Cal.
- OpenX (*id*. ¶¶ 203, 205, 254): headquartered in Pasadena, California; offices in N.D. Cal.
- The Trade Desk, Inc. (*id*. ¶¶ 54, 71, 230): headquartered in Ventura, California; offices in N.D. Cal.
- 24/7 Real Media (*id*. ¶¶ 64, 99, 104): headquartered in New York, New York; offices in N.D. Cal.
- Index Exchange (*id*. ¶¶ 76-77); headquartered in New York, New York; offices in N.D. Cal.

---

6   *See* Decl. of Andrew Rope ¶¶ 4-11, regarding the foregoing facts.

7   Compl. ¶¶ 171-96. These paragraphs follow the heading, "Facebook helps Google kill Header bidding with an unlawful agreement."

- Microsoft (*id*. ¶¶ 99, 142-43, 152): headquartered in Redmond, Washington; offices in N.D. Cal.
- Yahoo (*id*. ¶¶ 99, 152, 254): headquartered in New York, New York; offices in N.D. Cal.
- Amazon (*id*. ¶¶ 55, 142, 155, 162, 174, 176): headquartered in Seattle, Washington; offices in N.D. Cal.
- Criteo (*id*. ¶¶ 176): headquartered in Paris, France; offices in N.D. Cal.

Only two alleged rivals have any connection to Texas (*id*. ¶¶ 76-77, 99, 109), but no connection to this District, and each has strong connections to the Northern District of California.[8]

Just as in *In re Volkswagen* where there was easier access to the sources of proof in Dallas because the accident occurred in Dallas, so here there is easier access to sources of proof in the Northern District of California—because Google, Facebook, and most of the other alleged rival companies identified in the Complaint are there. According to Plaintiffs' own allegations, the majority of the witnesses and documents will be found in the Northern District of California, while there is no reason to believe that significant sources of proof will be found in this District. The first private-interest factor therefore favors transfer to the Northern District of California.

**Compulsory process**. Rule 45, as extensively amended in 2013, permits a trial subpoena to command the attendance of the witness "within 100 miles of where the person resides, is employed, or regularly transacts business in person" or, if the witness is a party or party's officer, "within the state where the person resides, is employed, or regularly transacts business in person." Thus, in its defense, Google would be unable to subpoena witnesses from Facebook or other relevant third parties (including former Google employees), many of whom are located in California. The Complaint does not identify a single company or person who might be a witness at trial and lives or works within 100 miles of the Sherman Division courthouse. When applying

[8] ValueClick (Compl. ¶¶ 99, 109) is now a subsidiary of Epsilon Data Management, which is headquartered in Irving, Texas.  It does not appear to have offices in this District but does have offices in the Northern District of California.  Similarly, AT&T (headquartered in Dallas) bought AppNexus (*id*. ¶¶ 76-77, 230, 254), which once operated an ad exchange, and made it a subsidiary of AT&T's advertising division, Xandr. Xandr is headquartered in New York City and has offices in the Northern District of California.

§ 1404(a), the courts have a decided preference for trials where witnesses appear live, not by deposition.  Rule 43(a) provides: "[a]t trial, the witnesses' testimony must be taken in open court," absent "good cause in compelling circumstances and with appropriate safeguards." The Advisory Notes underscore why: "The importance of presenting live testimony in court cannot be forgotten. The very ceremony of trial and the presence of the factfinder may exert a powerful force for truthtelling. The opportunity to judge the demeanor of a witness face-to-face is accorded great value in our tradition."[9] By filing in this District, Plaintiffs invite a trial where the only live witnesses will be retained experts and those controlled by the parties. Accordingly, the second private-interest factor also favors transfer to the Northern District of California.

**Cost of attendance**. It is an "obvious conclusion," the Fifth Circuit said in *In re Volkswagen*, that it is more convenient for witnesses to testify at home and that "[a]dditional distance means additional travel time; additional travel time increases the probability for meal and lodging expenses; and additional travel time with overnight stays increases the time which these fact witnesses must be away from their regular employment." 545 F.3d at 317; *ESI/Employee Solutions, L.P. v. City of Dallas*, 2019 WL 5684668 at *4 (E.D. Tex. Oct. 31, 2019) ("Courts look to the distance between witnesses and venue to determine the degree of inconvenience each district poses."). Accordingly, the Fifth Circuit established a 100-mile threshold—i.e., when the distance between the existing and proposed venues is more than a hundred miles (as here), then "the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *In re Volkswagen*, 545 F.3d at 317. By that standard, it is significantly more inconvenient for the witnesses in the San Francisco area to attend trial in the Sherman Division than in San Jose or San Francisco, as the Sherman Division is 1,700 miles distant. In *In re Volkswagen*, the dispute

---

[9]    *See Aguilar-Ayala v. Ruiz*, 973 F.2d 411, 419 (5th Cir. 1992) ("Only through live cross-examination can the jury fully appreciate the strength or weakness of the witness' testimony …. Videotaped deposition testimony, subject to all of the rigors of cross-examination, is as good a surrogate for live testimony as you will find, but it is still only a substitute.").

was over venue in the Marshall Division versus in Dallas, a distance of only 155 miles. Yet the Fifth Circuit held that the cost-of-attendance factor favored transfer, emphasizing both the monetary costs suffered by the witnesses and "the personal costs associated with being away from work, family, and community." *Id*. The third factor therefore also favors transfer to the Northern District of California.

**Practical problems and judicial economy**. The fourth private-interest factor follows from the first three: if the greatest number of witnesses and other sources of proof are located a thousand or more miles away, then trial in this District will be less easy, expeditious, and inexpensive than it would be if it were held where the evidence is. Oddly enough, Plaintiffs' chosen forum is not convenient even for them. Nine of the ten Plaintiffs are states distant from Texas, the Attorneys General for which have their offices hundreds of miles away: Arkansas (320 miles); Idaho (1,567 miles); Indiana (905 miles); Kentucky (872 miles); Mississippi (406 miles); Missouri (609 miles); North Dakota (1,172 miles); South Dakota (953 miles); Utah (1,229 miles). A Texas forum may be convenient for the Texas Attorney General, but even his office is 214 miles distant from the Sherman Division. And Texas's outside counsel are further away, in Houston (257 miles), Chicago (907 miles), and Washington, D.C. (1,330 miles). While a plaintiff's choice of forum often conveniences only plaintiff's counsel, Plaintiffs' choice here does not spare any counsel lengthy travel.  Their choice would require all counsel to board a plane or spend hours behind the wheel.

The *nine* Plaintiffs other than Texas have already demonstrated a willingness to travel great distances to litigate this case. If they are not inconvenienced by travel to Texas, they will not be inconvenienced by travel to the Northern District of California. Even Texas has demonstrated its willingness to litigate its antitrust claims against Google halfway across the country, for Texas is a plaintiff in the antitrust case filed in October 2020 by the United States in the District Court for

the District of Columbia. So, too, are the other nine Plaintiffs.[10] In other words, when the nine Plaintiffs other than Texas elected to sue in this District, all nine selected this venue for reasons other than convenience and judicial economy. The Complaint alleges no facts that demonstrate a special connection between Plaintiffs' claims and this District, and no considerations that would make trial here, rather than in the Northern District of California, easier, more expeditious, or less expensive.

Moreover, important considerations of judicial economy favor transfer.  As courts in this District have recognized repeatedly, the practical problems encompassed by the fourth private-interest factor "include those that are rationally based on judicial economy, … *[p]articularly, the existence of duplicative suits involving the same or similar issues*." *ATEN Int'l Co. v. Emine Tech. Co.*, 261 F.R.D. 112, 125 (E.D. Tex. 2009).[11] Where such suits exist, the fourth factor "will weigh heavily in favor or against transfer." *Id*.; *Fujitsu Ltd. v. Tellabs, Inc.*, 639 F. Supp. 2d 761, 768 (E.D. Tex. 2009) ("While Fujitsu may be content trying two similar patent actions in courts across the country, judicial economy will not bear that result."); *Uniloc USA, Inc. v. Distinctive Development Ltd.*, 964 F. Supp. 2d 638, 650-51 (E.D. Tex. 2013) (duplicative suits "counsel for the cases to be handled by the same court"); *Princeton Digital Image Corp. v. Facebook, Inc.*, 2012 WL 3647182 at *5 (E.D. Tex. Aug. 23, 2012) ("[I]t simply 'does not make any sense for two courts to plow the same ground'"; granting transfer motion).

It is not necessary that the case(s) pending in the transferee forum be identical. *In re Volkswagen of Am., Inc.*, 566 F.3d 1349, 1351 (Fed. Cir. 2009) (applying Fifth Circuit law) ("[T]he existence of multiple lawsuits involving the same issues is a paramount consideration when determining whether a transfer is in the interest of justice… Although these cases may not involve

---

[10]   Rope Decl. ¶¶ 12-13.

[11]   All emphases are added, and all internal citations omitted, unless otherwise indicated.

precisely the same issues, there will be significant overlap and a familiarity with the patents could preserve time and resources.").[12] What matters for purposes of judicial economy is whether the issues sufficiently overlap that it would duplicate (and, therefore, waste) judicial resources to litigate them in two forums and also risk inconsistent rulings.

The antitrust class actions against Google in the Northern District of California make similar claims of monopolistic conduct relating to online display advertising. All, like this case, bring Section 2 monopolization claims under the Sherman Act. All, like this case, seek damages and unspecified injunctive relief. And, although the several complaints give greater or lesser emphasis to certain alleged conduct, all allege the following conduct: (1) Google's alleged leveraging of its position in search and search advertising to acquire market power in display advertising; (2) Google's alleged manipulation of its position as (i) broker for both the buyers and sellers of display advertising and (ii) operator of the exchange on which the buying and selling takes place to self-deal; (3) Google's alleged misinformation and lack of transparency; (4) Google's alleged suppression of head-to-head bidding with other advertising exchanges; and (5) Google's alleged tying and product integration arrangements.[13]

Though there may be differences in emphasis and the choice of factual detail, the core of each complaint is the same, alleging Google's dominance of the supposedly relevant markets in almost identical language. Compare Plaintiffs' central allegation, "Google uses its powerful position on every side of the online display markets to unlawfully exclude competition," Compl. ¶ 6, with what the plaintiffs in the Northern District of California allege:

---

[12] *See also Fujitsu*, 639 F. Supp. 2d at 768; *Uniloc*, 964 F. Supp. 2d at 650 ("same or similar issues"); *Princeton Digital Image*, 2012 WL 3647182 at *5 ("similar (if not identical) issues"); *ExpressJet Airlines, Inc. v. RBC Capital Markets Corp.*, 2009 WL 2244468 at *10 (S.D. Tex. July 27, 2009) ("multiple cases, similar both legally and factually"); *Westberry v. GusTech Commncn's, LLC*, 2018 WL 3548869 at *9 (N.D. Tex. July 24, 2018) ("substantially similar FLSA claims").

[13] The class action complaints are attached as Exhibits B-F to the Declaration of Andrew Rope.

- *Digital Advertising*: "[I]n display advertising, ***a single company, Google, simultaneously functions as the key intermediary through which buyers (advertisers) and suppliers (publishers) of display advertising trade***, and as a leading publisher of advertisements in its own right." Compl. ¶ 52; Ex. B.

- *Sweepstakes Today*: "***Google is now in the unusual position of representing both buyers (advertisers) and sellers (publishers), while also being in control of the exchange (which sets the auction and pricing rules) through which they interact***, giving Google the incentive and ability to bias ad auction rules and prices in its own favor, which it has done for many years." Compl. ¶ 8; Ex. C.

- *Genius Media*: "The unlawful anticompetitive conduct at the heart of this case occurs in the display advertising marketplace, where publishers sell advertising space through real-time auctions. Through its campaign of anticompetitive conduct, ***Google has achieved and maintained a monopoly or near-monopoly in that marketplace by erecting a toll bridge between publishers and advertisers*** and charging an unlawfully high price for passage," Compl. ¶ 2; "***Google's conduct has both the goal and effect of gaining control over the entire range of products, … locking publishers and advertisers into a Google-controlled network***—all of which allows Google to extract more revenue from publishers and advertisers alike," Compl. ¶ 63; Ex. D.

- *Sterling*: "Google is able to [maximize its own revenues] because ***it occupies the dominant position as the representative for most sellers (Publishers) and most buyers (advertisers), and because of its role in designing and conducting the auctions*** for the sellers' inventory …." Compl. ¶ 82; Ex. E.

- *Astarita*: "[I]n display advertising, ***a single company, Google, simultaneously functions as the key intermediary through which buyers (advertisers) and suppliers (publishers) of display advertising trade***, and as a leading publisher of advertisements in its own right." Compl. ¶ 39; Ex. F.

Transfer of this case—which so clearly asserts similar claims—promises an extra measure of judicial economy, because it offers the prospect that one judge can oversee discovery, gain familiarity with the facts and legal issues, rule on dispositive motions, and, if necessary, preside over a trial.

In sum, all four private-interest factors favor transfer to the Northern District of California.

II.    **The Public-Interest Factors Also Favor Transfer to the Northern District Of California**

Two public-interest factors are neutral. Whether the case proceeds in this District or the Northern District of California, the court (i) will have equal familiarity with the federal law that will govern the principal legal claim (violations of the Sherman Act) and (ii) will unavoidably have to apply another state's law (as each Plaintiff brings unfair competition or consumer-protection claims under state statutes). The other two factors—relative court congestion and the local interest in having localized interests decided locally—favor transfer.

**Administrative difficulties**. For all practical purposes, this factor is neutral. Although judges in the Northern District of California nominally carry a heavier caseload, "weighted filings" in that District and here are comparable—605 per judge here, 612 there. And the judges in both districts manage and dispose of their cases efficiently: only 7.6 percent are more than three years old here, 8.4 percent there.[14] The courts of this District have repeatedly stated that this factor is "the most speculative" and that "case-disposition statistics may not always tell the whole story"[15]—indeed, may be "relatively meaningless"[16]—because "[c]omplex cases … need more time for discovery and take longer to get to trial" no matter where they proceed. *Virginia Innovation Sci., Inc. v. Amazon.com, Inc.*, 2019 WL 3082314 at *32 (E.D. Tex. July 15, 2019). Here, transfer unquestionably achieves overall efficiency because it places this case in the same district as numerous other antitrust cases against Google that concern the same claims.

---

[14]    U.S. Courts, *Federal Court Management Statistics—Profiles as of Sept. 30, 2020*, https://www.uscourts.gov/statistics-reports/federal-court-management-statistics-september-2020 (last visited Jan. 13, 2021).

[15]    *E.g.*, *TDE Petrol. Data Solutions, Inc. v. Akm Enter., Inc.*, 2015 WL 11110603 at *3 (E.D. Tex. June 24, 2015); *StoneAge, Inc. v. NLB Corp.*, 2011 WL 13224884 at *7-8 (E.D. Tex. Mar. 30, 2011).

[16]    *Unomedical A/S v. Smiths Medical MD, Inc.*, 2010 WL 2680144 at *4 (N.D. Ill. June 30, 2010).

**Local interest**. The ten Plaintiff States' interest in having this case adjudicated in Texas does not outweigh the greater interest that California courts have in adjudicating this matter that involves numerous California residents and third parties. Under these circumstances, this factor favors transfer to the Northern District of California (or, at worst, is neutral).

Plaintiffs may argue that online advertisers and publishers located in the Eastern District of Texas have an interest in trying the case here, as do local consumers of the publishers' content and the advertisers' products. But the Complaint does not identify any such advertisers, publishers, or consumers. And the Complaint gives no reason to believe that there are more advertisers, publishers and consumers here than in the Northern District of California or any other federal judicial district. As the Fifth Circuit stated in *In re Volkswagen,* the argument that local residents have an interest in the dispute "could apply virtually **to any judicial district or division in the United States** …. That the residents of the Marshall Division 'would be interested to know' whether a defective product is available does not imply that they have an interest—that is, a stake—in the resolution of this controversy." 545 F.3d at 318.[17]

But while this District has no greater interest in the case than, for example, Mississippi's Eastern Division in Hattiesburg or the Northern Division of Arkansas's Eastern District in Jonesboro, the Northern District of California does have a greater interest than any other District. First, California has a particular interest in adjudicating conduct that occurs in California as well as conduct, wherever it occurs, of corporations that have their principal places of business in California. In *Optimum Power Solutions LLC v. Apple Inc.*, 794 F. Supp. 2d 696, 702-03 (E.D.

---

[17] *See FTC v. Fortune Hi-Tech Mktg., Inc.*, 2013 WL 1858598 (N.D. Ill. May 1, 2013) ("In this case, where the alleged injury was nationwide, the Northern District of Illinois has no particularly significant connection to the *situs* of material events. The alleged scheme impacted victims not only in Illinois but throughout the United States and Canada, and ***there is no reason to believe that any injury occurring in Illinois is more significant than injury that occurred in any other district***.").

Tex. 2011), this Court stated that "[g]enerally, local interests that 'could apply virtually to any judicial district or division in the United States' are disregarded in favor of particularized local interests."[18] The Court granted the defendant's motion to transfer the case to the Northern District of California because:

> Two defendants and the plaintiff's parent company are located in the Northern District. Products manufactured by companies in the Northern District of California are implicated in this case. Another party is located in the Southern District of California. Additionally, many non-party entities and individuals relevant to this case are located in California. California is a clearly more convenient venue for more witnesses and parties and has a much greater and localized interest in this litigation than this District.

*Id.*[19] As noted, Google and Facebook have their principal places of business in California, and at least ten other alleged rivals named in the Complaint also have their headquarters or major offices there. *See* pp. 4-6, *supra*. Second, where Plaintiffs seek equitable relief, a California forum has the greater local interest. *AllChem Performance Prods., Inc. v. Oreq Corp.*, 2013 WL 180460 at *6-7 (N.D. Tex. Jan. 17, 2013) ("[T]he acts giving rise to suit occurred predominately in California, where the trichlor products were manufactured and allegedly mislabeled. Any equitable relief this court grants would therefore alter Oreq's and PPI's operations in California.").

Under these circumstances, no deference is due Plaintiffs' choice to sue in this District. First, "[a] plaintiff's choice of forum … is not an independent factor with the *forum non conveniens*

---

[18]  *See also Adaptix, Inc. v. HTC Corp.*, 937 F. Supp. 2d 867, 878 (E.D. Tex. 2013) ("When the accused products or services are sold nationwide, the alleged injury does not create a substantial local interest in any particular district."); *Compound Photonics, Ltd. v. Sony Corp.*, 2013 WL 12092232 at *7 (E.D. Tex. June 27, 2013) (same).

[19]  *See also Bedrock Logistics, LLC v. Braintree Labs., Inc.*, 2017 WL 1547013 at *4 (N.D. Tex. Apr. 28, 2017) ("While the residents of the Northern District of Texas may have an interest in unpaid invoices of companies doing business in the district, Massachusetts residents have a greater interest in the resolution of a potential illegal kickback scheme that occurred in Massachusetts."); *ExpressJet Airlines*, 2009 WL 2244468 at *13 ("[T]he Southern District of New York has an equally compelling interest in policing New York entities operating within its borders and engaging in interstate business activities," plus a predominating interest in regulating the financial industry, which is "critical to its overall economic health and viability, as well as that of the nation.").

or the § 1404(a) analysis." *In re Volkswagen*, 545 F.3d at 314 n.10. That is, "when the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected. When the movant demonstrates that the transferee venue is clearly more convenient, however, it has shown good cause and the district court should therefore grant the transfer." *Id*. at 315.

Second, Texas is the home forum only for the State of Texas, not the other nine Plaintiffs. In a case alleging violations of the FTC Act brought by Illinois and two other states, a Northern District of Illinois court granted a § 1404(a) transfer, explaining that **"[s]*ince this district is not the home forum of half the Plaintiffs, their chosen forum is entitled to less deference* than if it was the home forum of all the Plaintiffs." *Fortune Hi-Tech Marketing*, 2013 WL 1858598 at *2 (transferring case to E.D. Ky.). Plaintiffs' chosen forum is entitled to even less deference, since Texas is not the home forum for nine of the ten Plaintiffs.

Third, as *Fortune Hi-Tech Mktg.* reflects, even those courts that accord the government's choice of venue heightened respect (the Fifth Circuit does not), do so only "*[i]f the particular controversy has meaningful ties to the forum*." *FTC v. Cephalon, Inc.*, 551 F. Supp. 2d 21, 26 (D.D.C. 2008) (transferring case to E.D. Pa.); *see also FTC v. Watson Pharms., Inc.*, 611 F. Supp. 2d 1081, 1085 (C.D. Cal. 2009) (transferring case to N.D. Ga.). There are no such ties here.

## CONCLUSION

For these reasons, the Court should transfer the case to the Northern District of California.

Dated: January 19, 2021                  Respectfully submitted,

                                         R. Paul Yetter
                                         State Bar No. 22154200
                                         Bryce L. Callahan
                                         State Bar No. 24055248
                                         YETTER COLEMAN LLP
                                         811 Main Street, Suite 4100
                                         Houston, Texas 77002
                                         (713) 632-8000
                                         (713) 632-8002
                                         pyetter@yettercoleman.com
                                         bcallahan@yettercoleman.com

                                         ATTORNEYS FOR DEFENDANT
                                         GOOGLE LLC

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rule 7(h), I certify that Google conferred in good faith about this motion with the State of Texas, the only plaintiff with any connection or interest in this District. On January 15, 2021, Mr. Callahan and I, as counsel for Google, conferred by teleconference with Mr. Keller, counsel for the State of Texas, about this motion. We explained the nature and bases of the motion, i.e., other ad tech cases against Google are proceeding in N.D. California, witnesses are located there, and there are no connections to this District. We asked whether plaintiffs oppose a transfer of this action to N.D. California. Counsel for Texas stated that he wished to discuss the motion with Texas, he had no initial position on the motion, and he may not be able to provide a response until after the MLK holiday weekend. Texas suggested that it may have a genuine interest in a venue transfer, so Google delayed in filing the motion. Over the weekend, the parties' counsel conferred further by email. Based on later Texas responses, the State opposes the motion.

                                         */s/ R. Paul Yetter*
                                         R. Paul Yetter

## CERTIFICATE OF SERVICE

I certify that on this 19th day of January 2021, this document was filed electronically in compliance with Local Rule CV-5(a) and served on all counsel who have consented to electronic service, per Local Rule CV-5(a)(3)(A).

                                         */s/ Bryce L. Callahan*
                                         Bryce L. Callahan

-16-