```
 1                 IN THE UNITED STATES DISTRICT COURT
                   FOR THE EASTERN DISTRICT OF TEXAS
 2                          SHERMAN DIVISION

 3   THE STATE OF TEXAS, et al,        §
                                       §
 4                                     §
                      Plaintiff,       §
 5                                     §        Case No.:
         vs.                           §        4:20-cv-00957-SDJ
 6                                     §
     GOOGLE, LLC,                      §
 7                                     §
                      Defendant.       §
 8

 9                PRELIMINARY SCHEDULING CONFERENCE
                    TRANSCRIPT OF PROCEEDINGS
10            BEFORE THE HONORABLE SEAN D. JORDAN
                  UNITED STATES DISTRICT JUDGE
11
              Thursday, February 4, 2021; 10:16 a.m.
12                        Plano, Texas

13   APPEARANCES OF COUNSEL:
     (Continued on page 2.)
14
     FOR THE PLAINTIFF
15   THE STATE OF TEXAS:

16       W. Mark Lanier
         THE LANIER LAW FIRM
17       6810 FM 1960 West
         P. O. Box 691448
18       Houston, Texas 77269-1448

19       Zeke DeRose, III
         Alex J. Brown
20       THE LANIER LAW FIRM, PC - Houston
         10940 W. Sam Houston Parkway, N., Suite 100
21       Houston, Texas 77064

22       *******************************************

23                   GAYLE WEAR, RPR, CRR
                  Federal Official Court Reporter
24                      7940 Preston Road
                      Plano, Texas 75024
25                        214.872.4867
```

```
 1    FOR THE PLAINTIFF
      THE STATE OF TEXAS:
 2    (Continued from page 1.)

 3         Ashley C. Keller
           KELLER LENKNER LLC
 4         150 N. Riverside Plaza, Suite 4270
           Chicago, Illinois 60606
 5
           Shawn Cowles
 6         OFFICE OF THE ATTORNEY GENERAL OF TEXAS - 214
           214 W. 14th Street
 7         Austin, Texas 78701

 8    FOR THE DEFENDANT:

 9         R. Paul Yetter
           YETTER COLEMAN, LLP - Houston
10         909 Fannin, Suite 3600
           Houston, Texas 77010
11
           Eric Mahr
12         FRESHFIELDS BRUCKHAUS DERINGER US LLP
           700 13th Street NW
13         Washington, DC 20005

14
      ALSO PRESENT:
15
           Grant Dorfman, Deputy First Assistant Attorney General
16         ATTORNEY GENERAL KEN PAXTON
           P. O. Box 12548
17         Austin, Texas 78711

18         Roger P. Alford
           UNIVERSITY OF NOTRE DAME
19         3119 Eck Hall of Law
           Notre Dame, Indiana 46556 USA
20

21                           *     *     *

22

23

24

25
```

```
1    FOR THE PLAINTIFF
     STATE OF TEXAS
2    VIA VIDEO CONFERENCE:

3         Warren D. Postman
          KELLER LENKNER LLC
4         1300 I Street, N.W., Suite 400E
          Washington, DC 20005
5
          David Matthew Ashton
6         TEXAS ATTORNEY GENERAL
          P. O. Box 12548
7         Austin, Texas 78711

8         Nicholas G. Grimmer
          Kim Van Winkle
9         TEXAS ATTORNEY GENERAL
          300 W. 15th Street
10        Austin, Texas 78701

11                          *    *    *

12   FOR THE PLAINTIFF STATES
     VIA VIDEO CONFERENCE:
13   (Continued on page 4.)

14   FOR THE STATE OF IDAHO:

15        Brett DeLange
          OFFICE OF THE IDAHO ATTORNEY GENERAL
16        945 W. Jefferson Street, Second Floor
          P. O. Box 83720
17        Boise, Idaho 83720

18   FOR THE STATE OF INDIANA:

19        Matthew Michaloski
          OFFICE OF THE INDIANA ATTORNEY GENERAL
20        302 W. Washington Street
          IGCS 5th Floor
21        Indianapolis, Indiana 46234

22   FOR THE STATE OF KENTUCKY:

23        John Christian Lewis
          KENTUCKY OFFICE OF THE ATTORNEY GENERAL
24        1024 Capital Center Drive, Suite 200
          Frankfort, Kentucky 40601
25
```

```
 1   FOR THE PLAINTIFF STATES
     VIA VIDEO CONFERENCE:
 2   (Continued from page 3.)

 3   FOR THE STATE OF MISSISSIPPI:

 4       Hart Martin
         MISSISSIPPI ATTORNEY GENERAL'S OFFICE
 5       P. O. Box 220
         Jackson, Mississippi 39205
 6
     FOR THE STATE OF MISSOURI:
 7
         Kimberley Biagioli
 8       MISSOURI ATTORNEY GENERAL'S OFFICE
         615 E. 13th Street, Suite 401
 9       Kansas City, Missouri 64106

10       Stephen M. Hoeplinger
         MISSOURI ATTORNEY GENERAL'S OFFICE
11       P. O. Box 899
         Jefferson City, Missouri 65102
12
     FOR THE STATE OF NORTH DAKOTA:
13
         Elin S. Alm
14       Parrell D. Grossman
         OFFICE OF THE ATTORNEY GENERAL OF NORTH DAKOTA
15       1050 East Interstate Avenue, Suite 200
         Bismarck, North Dakota 58503
16
     FOR THE STATE OF SOUTH DAKOTA:
17
         Yvette K. Lafrentz
18       OFFICE OF ATTORNEY GENERAL
         1302 E. Highway 14, Suite 1
19       Pierre, South Dakota 57501

20   FOR THE STATE OF UTAH:

21       Tara W. Pincock
         UTAH OFFICE OF ATTORNEY GENERAL
22       160 E. 300 S, 5th Floor
         Salt Lake City, Utah 84114
23
                         *    *    *
24

25
```

```
1    FOR THE STATE OF ARKANSAS
     VIA TELECONFERENCE:
2    (Continued from page 4.)

3         Johnathan R. Carter
          OFFICE OF THE ARKANSAS ATTORNEY GENERAL
4         323 Center Street, Suite 200
          Little Rock, Arkansas 72201
5

6                        *    *    *
     FOR THE DEFENDANT
7    VIA VIDEO CONFERENCE:

8         Julie Elmer
          FRESHFIELDS BRUCKHAUS DERINGER US LLP
9         7700 13th Street NW
          Washington, DC 20005
10
          Bryce L. Callahan
11        YETTER COLEMAN, LLP - HOUSTON
          909 Fannin, Suite 3600
12        Houston, Texas 77010

13        John D. Harkrider
          AXINN VELTROP & HARKRIDER, LLP - NY
14        114 West 47th Street
          New York, New York 10036
15
                         *    *    *
16
     ALSO PRESENT
17   VIA VIDEO CONFERENCE:

18        Gabriella Gonzalez, TEXAS ATTORNEY GENERAL
          Ralph Molina, TEXAS ATTORNEY GENERAL
19        Floyd Walker, TEXAS ATTORNEY GENERAL
          Margaret Sharp, TEXAS ATTORNEY GENERAL
20        Paul Singer, TEXAS ATTORNEY GENERAL
          Nanette Dinunzio, TEXAS ATTORNEY GENERAL
21        Charles Eldred, TEXAS ATTORNEY GENERAL

22        Brooke Smith for GOOGLE
          KELLER LENKNER LLC
23        1300 I Street, N.W., Suite 400E
          Washington, DC 20005
24

25                       *    *    *
```

1  ALSO PRESENT
   VIA TELECONFERENCE:
2
        Brett Fulkerson, TEXAS ATTORNEY GENERAL
3       Brad Schuelke, TEXAS ATTORNEY GENERAL

4

5
                          *    *    *
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1    February 4, 2021                              10:16 a.m.

 2                          ---o0o---

 3                    P R O C E E D I N G S

 4                          ---o0o---

 5              THE COURT:  Good morning.  Please be seated.

 6              All right.  We're here on cause number 4:20-cv-957,

 7    State of Texas, et al versus Google, LLC.  And I want to get

 8    a few quick housekeeping matters out before I even have

 9    counsel do introductions.

10              So as I think everybody in this room is probably

11    aware, we have a number of attorneys who are participating

12    via video conference in this preliminary scheduling

13    conference.  We also have some attorneys who are here,

14    obviously, in the courtroom.  We also have a few attorneys I

15    think who are in by video -- I'm sorry, by audio conference

16    only.  And also I wanted all of the attorneys to be aware

17    that we also have an audio-only feed that is available to the

18    public and the media for this hearing, and it is something

19    that we'll plan to do for future hearings, too.

20              So one of the things we'll need to be considering,

21    not necessarily today, is how we handle issues of

22    confidentiality and issues that are otherwise under seal.

23    But I want everybody to be aware that we do have an

24    audio-feed only going to the public and the press today.

25              So we have, as you're also aware, a large number of
```

1    attorneys who, as I understand it, are on video conference
2    and who may or may not want to say something.  I will tell
3    you that my preference is, number one, to have lead counsel
4    as much as possible do all of the speaking, and lead counsel
5    to go ahead and make the appearance introductions, as much as
6    possible, for everyone on their side.  I mean, to the extent
7    that somebody needs to make an appearance separately, that's
8    fine.  But if lead counsel can just notify the Court of all
9    the various attorneys who are appearing, I think we'll move a
10   little more efficiently.
11          For all of the attorneys who are here by video
12   conference or by audio conference, please do keep yourself on
13   mute unless you do happen to be speaking.
14          And with that, I will go ahead and let counsel make
15   their introductions.  Let's -- we'll start with the State of
16   Texas and their lead counsel to make introductions for Texas
17   and all of the other sovereign States that are part of this
18   case, and then we'll have Mr. Yetter make introductions for
19   Google.
20          MR. LANIER:  Thank you, Your Honor.  May it please
21   the Court.  My name is Mark Lanier.  I'm lead counsel for the
22   State of Texas.  Here at counsel table with me is Zeke DeRose
23   from my firm; he may argue one thing or another today, with
24   your permission, depending upon what you get into today,
25   because we're not totally sure.  Shawn Cowles with the State

1    of Texas is here, is not going to be arguing.  We've

2    got Roger Alford here as well, State of Texas; he will not be

3    arguing.  Alex Brown from my firm will not be arguing.  Grant

4    Dorfman, State of Texas, will not be arguing.  Ashley Keller,

5    my co-lead counsel, will be arguing, with the Court's

6    permission, depending upon what we get into.

7            And final housekeeping note, Your Honor.  We do

8    understand that there are some states who are live on video

9    right now but are unable to speak because of a system glitch.

10   So with the Court's permission, what we're willing to do,

11   recognizing the public has access to it, is give out poor

12   Zeke's phone number so if any of the States have a question,

13   they can either text the question to Zeke, or if they want to

14   make an appearance and the Court deems it okay, we'll

15   MacGyver his phone to a microphone or something.

16           THE COURT:  Well, Mr. Lanier, I believe my

17   courtroom deputy is telling me that the glitch is fixed.

18           Is that correct?

19           THE COURTROOM DEPUTY:  I'm being told by the IT

20   that it's fixed.  We might want to try it out with one

21   participant, just to make sure they can un-mute themselves.

22           THE COURT:  Why don't we do that.  Do you have

23   somebody, Mr. Lanier, who you know would like to introduce

24   themselves?

25           MR. LANIER:  Warren Postman is Mr. Keller's partner

1   from Chicago.  So he's right there on the screen.  We can see

2   him easy.  If he could un-mute and see if we hear him.

3           THE COURT:  Go ahead, Mr. Postman.

4           (No audio from video conference.)

5           THE COURT:  Well, I see him speaking.  I don't hear

6   anything.  Do you have -- I'm assuming he's attempted to

7   un-mute himself.

8           So why don't we do this, then.  Whether the glitch

9   is fixed or not, to be perfectly candid, I think it's going

10  to make us move more efficiently if people are sending their

11  questions to Mr. DeRose anyway.  So, Mr. Lanier, if you want

12  to go ahead and disclose that number.

13          MR. LANIER:  I will, Your Honor, with some mixed

14  joy.

15          THE COURT:  It's not my phone.

16          MR. LANIER:  Exactly.  And he does DUI bails in the

17  middle of the night, if anybody has any trouble.

18          ███████████████  Thank you, Your Honor.

19          THE COURT:  All right.  And I have a list of, you

20  know -- so the Court is aware, just so you know, I have a

21  list of all of the various attorneys.  I mean, I see people

22  on the screen as well, but just -- but I can only see a

23  certain number of people on the screen, and you can only see

24  a certain number.  There are a number of people who are also

25  by video conference; we just don't see them.

1          I have a list and so I'm aware, I can tell you, of

2     each person that is here by conference for all the States,

3     Mr. Lanier.  So I don't know that you want or need to go

4     through the list of them.  You can if you'd like.

5          MR. LANIER:  Your Honor, I think if you've got it

6     all under control, it's whatever -- you're the Judge.  I'm

7     just here.  So I think we're great like this.

8          THE COURT:  All right.  Well, I appreciate it.  And

9     I appreciate the fact that the States have all got somebody

10    on the line who is present for them, and I'm aware of who

11    they are.

12         So, Mr. Yetter, would you like to introduce counsel

13    for Google.

14         MR. YETTER:  Yes.  I would be happy to, Your Honor.

15    May it please the Court.  Paul Yetter from Yetter Coleman for

16    the defendant, Google; and my cocounsel, Eric Mahr, from

17    Freshfields, also for the defendant.  Thank you, Your Honor.

18         THE COURT:  All right.  Thank you, Mr. Yetter.  I

19    know you have some cocounsel who are online by video, but

20    again I'm aware of who they are.

21         MR. YETTER:  Yes, they are.  Thank you, Your Honor.

22         THE COURT:  All right.  So we're here, as I

23    mentioned earlier, for just a preliminary scheduling

24    conference.  This was something that the plaintiffs had

25    requested.  And as you saw from the Court's order of

1    January 22, I thought it made sense to have a preliminary

2    scheduling conference at this time, even though Google's

3    deadline to answer or otherwise respond does not come until

4    later this month.

5             I have a few topics that I'd like to go through.

6    I'm going to tell you what they are.  I want to talk briefly

7    about where we are on timeline and pending motions, that's

8    topic one for me.

9             Topic two for me is just going to be sort of a

10   status update on how you're doing on a protective order, a

11   proposed protective order.

12            And then topic three for me is just going to be to

13   address what I'm perceiving might be an issue in terms of how

14   the parties are conferencing in this case, meaning for

15   certificates of conference.  And this mainly just has to do

16   with making sure that we iron out how that's being done,

17   understanding that Texas is -- has been acting as the lead

18   state in this, and just to make sure that we're on the same

19   page.

20            Before we get into the timeline issues, typically I

21   would give the parties in any case an opportunity, if they

22   would like, to talk about the case a little bit.  I recognize

23   that in this case that is a -- that would be a fraught

24   endeavor because I have read more than once the 116-page-plus

25   complaint, and I have also reviewed the 1404(a) motion and

```
 1    the response that was recently filed.  So I will tell you
 2    that since I'm your audience today, I am familiar with the
 3    case at least as developed to date.
 4         So I don't want you to feel like -- and we're going
 5    to have more conferences.  I don't want you to feel like you
 6    need to have a ten minute or -- you would probably feel like
 7    you need a lot more time than that to talk about the case.
 8    But if there is anything in particular that you would like to
 9    state about the case at this time before we get into the
10    timeline, I'm happy to have you do that.
11         And again we can start with Mr. Lanier for
12    plaintiffs.
13         MR. LANIER:  Your Honor, recognizing what you
14    already know, the only thing I can think to add that might be
15    relevant, as we get into timeline, is the fact that the State
16    of Texas has already been investigating this matter since
17    September of 2019, and that there has been a large
18    multi-state investigation associated with that.  Other than
19    that, you've got everything.
20         THE COURT:  And I figured that topic will come up
21    as part of what we talk about a little bit with regard to
22    timeline and order governing proceedings.
23         Mr. Yetter.
24         MR. YETTER:  Your Honor, you're exactly right.
25    Counsel was correct that the State has been investigating
```

1    this for -- at least the State of Texas has been

2    investigating this for 18 months.  There is still other -- an

3    ongoing investigation --

4              THE COURTROOM DEPUTY:  Can you turn on your

5    microphone?

6              MR. YETTER:  This is a new microphone for me, Your

7    Honor.

8              THE COURT:  When the green light is on, you are

9    good to go.

10             MR. YETTER:  Here we go.

11             THE COURT:  Yes.

12             MR. YETTER:  And, Your Honor, and this will come up

13   in the timing.  We are at -- Google is at -- the State has

14   had a big head start and that's -- this will factor into the

15   timing of the case.

16             THE COURT:  All right.  Thank you, Mr. Yetter.

17             MR. YETTER:  Thank you.

18             THE COURT:  So let's go ahead and dive into talking

19   a little bit about the timeline.  So I'm going to tell you

20   where I see the case is at, at this moment.  We obviously,

21   you know, had a complaint filed initially, it was a redacted

22   complaint.  After the Court's order of January 22, an

23   unredacted complaint was submitted and was filed in this

24   case, and was eventually served on Google.

25             As I noted in that January 22 order, I know Google

1    had had the redacted complaint for about approximately a

2    month, and Google's answer is now due later this month.

3           My current plan is that after Google answers or

4    otherwise responds in the case, the Court will issue our

5    order governing proceedings and we will set a case management

6    conference.  You know, I will tell you that when we issue

7    that, I think the parties may have adjustments that the Court

8    would like to make on that schedule, both substantively in

9    terms of issues relating to discovery, protective order, et

10   cetera, and in terms of timelines.

11          So I won't go into the timelines today, but just to

12   say that I think the timelines in the Court's normal order

13   governing proceedings may not work well for this case.  But I

14   will tell you the plan would be probably to get it out and,

15   you know, we can amend it as needed.  And if we even need to

16   have a conference about that, we can do that, to figure out

17   what works best leading up to the case management conference.

18          Number two, I understand that we have Google's

19   1404(a) motion pending which I referenced before.  The States

20   have just responded.  I have no doubt that Google will be

21   filing a reply.  We may see a sur-reply.  I wanted to note

22   two things about that motion.  The first is my general policy

23   is, on motions, that we -- if I feel like I need oral

24   argument, I'll let the parties know and we'll have an oral

25   argument; otherwise, and I think particularly for this case,

1    if there is a request by either side for a hearing on a

2    motion, we'll have a hearing.  So I don't know if you're

3    prepared to answer this at this moment, but I wanted to ask

4    right now, is either side or both sides wanting a hearing on

5    the 1404(a) motion?

6            MR. YETTER:  Yes, Your Honor, we will want a

7    hearing.  And I think the timeline is Tuesday for our reply,

8    Tuesday the 9th of February, and then the 16th is their

9    sur-reply.  So if the Court -- consistent with the Court's

10   busy docket, if the Court has the end of February, early

11   March, we would like a hearing.

12           THE COURT:  Absolutely.  So here is what I would

13   recommend is that the parties get in touch with my judicial

14   assistant, who I think you have been in contact with, Lori

15   Munoz, and provide some dates in that time frame -- I think

16   we're looking towards end of February, early March -- that

17   would be available for you for a hearing.

18           And the second thing I'll note is that I don't have

19   any plan to stay proceedings while the 1404(a) motion is

20   pending.  Instead, what I plan to do is to work on that

21   motion efficiently and try and get it decided as quickly as

22   we can.

23           So those were the issues, the only issues, I have

24   with the 1404(a) motion at this time.  And those at the

25   moment are all my comments on our timeline, as we sit here

 1    today.  Is there anything else with regard to -- well, let me

 2    go ahead and step back for a second.

 3           Because, Mr. Lanier, you raised a good point with

 4    regard to timeline and what that looks like in terms of

 5    discovery issues potentially, is what I think you're

 6    referencing, because we have investigations by Texas at least

 7    and potentially other states.  I will tell you that I think

 8    that may well play into our analysis of the timeline when

 9    we're looking at the order governing proceedings and how we

10    go from there in terms of the discovery timeline in this

11    case.

12           And I think that would be expanded on both sides

13    because, as Mr. Yetter has pointed out, that may, you know,

14    mean the State has a lot of information.  I understand the

15    State would say a lot of that, you know, this information

16    came from Google.  Both sides will be able to make their

17    arguments on that, and we'll look at it at that time.

18           So the second item -- well, let me say is there

19    anything else on the timeline that either party thinks we

20    need to visit at this time?

21           MR. LANIER:  Not from plaintiff, Your Honor.

22           THE COURT:  All right.

23           MR. YETTER:  Your Honor, I will say perhaps it

24    might help the Court if we -- we have started to talk about

25    the timing, and one of the first issues that came up is

1    discovery.  And I think, from our standpoint, we do feel like

2    we're at a bit of a disadvantage.  The State has -- as the

3    States' response on the transfer motion says, apparently

4    they've talked to 64 third parties and they've gotten

5    millions of documents -- pages of documents.  Some are, at

6    least, of those we have not seen and we would need to see,

7    and we have not talked to any of those third parties.

8            But it may help the Court to give some input before

9    the Court sets that initial -- your initial -- sends out your

10   initial order after we answer or respond on the 22nd of

11   February, to get the parties -- to get -- for the parties to

12   talk about what discovery they anticipate.  We've talked a

13   little bit preliminarily, and the State or the plaintiffs

14   have indicated to us that they're going to have limited

15   discovery.  But the first discovery request -- and I don't

16   mean to go on too much about this, Your Honor -- is extremely

17   extensive that they have mentioned to us.

18           So it might make some sense for the parties to

19   continue to talk, and give you some sense of what discovery

20   to anticipate.  From our perspective, Google, we have a lot

21   of catching up to do.  And it sounds like the State is going

22   to be doing some fairly extensive discovery as well.  So that

23   might be something that you, the Court, would want to factor

24   into that, your initial order on the scheduling.

25           THE COURT:  All right.  Thank you, Mr. Yetter.

1          Mr. Lanier, do you have a comment?

2          MR. LANIER:  Please, Your Honor.  I will represent

3    to the Court on the record that we will move with all

4    expediency to produce anything we need to produce, to get

5    Google up to speed with documents that we may have gotten.

6          What we've done as far as third-party

7    investigation, I'm sure Google has -- Google's been aware

8    we've been doing this for 18 months as well.  And I'm sure

9    they've done their own investigation.  That's not necessarily

10   all discoverable information.  But I'd just represent to the

11   Court that we'll move with all expediency, and you can hold

12   me to it at every hearing from here on out.  We will give

13   them everything we can as quickly as possible.

14         THE COURT:  Well, I understand.

15         And, Mr. Yetter, to your point, what the Court may

16   do, after Google's gone ahead and responded or answered, is

17   we may send out something to get a joint report from the

18   parties in advance of the issuance of the OGP.  So the point

19   is well taken, and the Court may go ahead and do that, we'll

20   do it on efficient timeline.

21         And I would ask that the parties, as you've noted,

22   Mr. Yetter, continue those conversations.  So, in other

23   words, looking forward, expect something like that to come

24   from the Court.  And then I'm not going to give you a long

25   fuse to get it back to the Court because I do want to keep

1     this case moving.

2              MR. YETTER:  Thank you, Your Honor.  I think that

3     sounds like a very wise idea.

4              THE COURT:  All right.  So let me move to the

5     protective order.  You know, the -- I noted in the order that

6     was issued on January 22 that I was hopeful that you all

7     could confer and put together a proposed protective order as

8     soon as you could, understanding that that may not be the

9     easiest document to put together.

10             I did also want to highlight for the parties -- I

11    did in the order and I wanted to highlight again today -- are

12    the general order that we have in the district, 21-02 that

13    was entered last month, and that is a direct result of,

14    unfortunately, the SolarWinds hack and issues arising from

15    that.  I'm sure the parties have had a chance to look at that

16    general order.  And I would note that if you have reviewed

17    that general order, then you will see that there is certainly

18    the possibility that there may be materials in this case that

19    might be subject to that order.

20             But I would also note for the parties that the

21    language in that order that says presumptively our sealing --

22    our sealing process here is presumed to be adequate.  But if

23    the parties think otherwise as to particular materials, I

24    wanted to highlight that because it's a rather involved

25    process.  And I will tell you that, as you would expect, it's

1    a new process for the Court.  So please be cognizant of that

2    when you're putting together the protective order.  And I

3    wanted to see if I could get an update from counsel as to how

4    you're doing on that.

5            MR. LANIER:  With the Court's permission,

6    Mr. DeRose would address the protective order; though, I'm

7    glad to do it if the Court would prefer lead counsel to do

8    it.

9            THE COURT:  No.  That's fine.

10           Mr. DeRose?

11           MR. DEROSE:  Thank you, Your Honor.  I'm not --

12    there we go.  I got it working.

13           Your Honor, we have been working with opposing

14    counsel on a protective order for the past week or so.  We

15    have essentially accepted all of the terms of the protective

16    order that Google has entered into with the DOJ and other

17    states in the DOJ Search case.  Google has added a couple of

18    new additions that they would like to have involved, have

19    included, in this case.

20           We are very much aware of the general order from

21    the Eastern District.  And even recently this week, the DOJ

22    acknowledged that they, too, were the victim of the

23    SolarWinds hack at the end of last year.  So our hope is to

24    have I think a conference, and maybe even tomorrow or at our

25    earliest on Monday, with Google on that.

1      There are a couple of issues that they wanted

2  added.  But we have amazing outside counsel, and so I'm sure

3  we'll reach a reasonable decision, or at least mitigate it,

4  so that we're very narrow on what we bring before Your Honor

5  to safeguard the confidentiality of our consulting experts

6  and trial consultants, but also put in a mechanism to

7  safeguard Google's and third parties' confidential

8  information, and then a remedy for redress if need be.  But

9  I'm optimistic, Your Honor.

10          THE COURT:  All right.  Thank you, Mr. DeRose.

11           Mr. Yetter?

12          MR. YETTER:  Just briefly, Your Honor.  What

13  counsel said was exactly right.  We're much farther than you

14  might have expected, Your Honor, because protective orders

15  can last -- you know, negotiations can go on forever.  But

16  the negotiations were done in the Search case in DC between

17  Google and the DOJ and Texas which is in that case as well.

18  It was protracted.  They got it all worked out.

19      And we have -- both sides have agreed that those

20  basic terms make sense here with two exceptions.  The

21  Court -- the new Eastern District rules about highly

22  sensitive information is something that, to be very frank, I

23  haven't fully digested and I don't think, at least in our

24  discussions, we were not clear quite how to deal with those.

25  So for the moment, I think we set those aside and we -- but

1    we need to focus on that and we can do that relatively

2    quickly.

3              There were -- secondly, there were some additions

4    that we proposed to the existing protective order for some

5    very specific reasons.  And as the Court may or may not know,

6    right after this case in Texas was filed, a portion of the

7    unredacted complaint was provided to the *New York Times* and

8    to the *Wall Street Journal*.  We have no idea -- we, Google,

9    have no idea how that happened.  And because it was a draft

10   Texas -- unredacted draft Texas complaint, we never had

11   access to that, so it had to come from someone that Texas

12   provided access to.

13             We immediately raised it with the State, with

14   counsel, and we asked for their assistance in investigating

15   it.  I won't get into all the back and forth, Your Honor, but

16   we got some cooperation, but we didn't get entirely the

17   cooperation that we have expected, and we're still following

18   up on that.

19             It's obviously a very important point here, where

20   we're in a case with government regulators, information is

21   provided confidentially and voluntarily, it needs to stay

22   that way and the State acknowledges that.  And counsel was

23   very forthright, and they've even told this Court that that

24   redacted information is confidential; it should stay

25   confidential and it shouldn't be disclosed to the media or to

1    others.

2         Obviously, someone chose to violate the protective

3    order and the confidentiality agreements that were part of

4    the investigation.  And we are very much trying to figure out

5    what happened so that we can prevent it in the future, so

6    that we can go forward.

7         So we ask for two things, and we don't -- and we

8    are going to discuss these, and I hope we can come to

9    agreement -- to an agreement on this, and it's essentially

10   this.  In the event of a breach, full cooperation and

11   transparency by either side, wherever the breach was, so that

12   we can address it, remedy it, and prevent it in the future

13   more quickly.

14        Second, more disclosure so that such that both

15   sides have already agreed that whoever gets access to

16   confidential information has to sign a commitment to the

17   protective order, essentially saying *I know what the*

18   *protective order requirements are and I will abide by them,*

19   *and I am personally obligated to do that* -- both sides have

20   followed that practice, presumably -- and have those

21   certificates, certifications, for people that get it.

22        What we are proposing is essentially what the

23   Western District of Texas template protective order requires,

24   which is when you give it to an outside consultant, you

25   provide the name of that consultant to the other side before

1    you provide confidential information.

2            So our thinking, Your Honor, is, one, it's not that

3    unusual to do that.  But, two, if outside consultants and

4    agents and independent contractors recognize that they --

5    that both -- all parties know that they're getting

6    confidential information, it will have a prophylactic effect,

7    so if anyone's tempted to be -- you know, to potentially

8    violate the protective order, they won't do it; and second,

9    as part of that fuller disclosure, whether any of those

10   third-party agents, independent contractors, consultants

11   are -- have any ongoing ties to Google competitors or

12   complainants.  The reason why we think that's significant, as

13   in a patent case, that heightens the risk that there might be

14   disclosures.  We would obviously work with the State on what

15   that list would be.

16           But those are the two things we're asking about.

17   We haven't -- in all fairness, we just got that to them.

18   They're thinking it through, and we will discuss it.  And if

19   we have disagreements, of course, we'll -- that we can't

20   resolve, we'll bring it to the Court.

21           THE COURT:  All right.  Thank you, Mr. Yetter.

22           Mr. Lanier?

23           MR. LANIER:  Yes, Your Honor.  I'll represent to

24   the Court right now, just so you've got it in your brain,

25   that we will have a disagreement over disclosing the identity

1    of consulting experts and things that, under the rules, we're

2    not allowed to disclose -- we're not required to disclose, by

3    our understanding.

4          We certainly will have no qualm to anyone signing

5    the confidentiality arrangement, and it will include redress,

6    and it will include the Court's ability to come down as a

7    hammer, which is stronger than anything anybody else has got.

8    We've got no problem with that, and we'll have our consulting

9    experts sign those things and we'll keep them.

10         The issue we're going to have is disclosing this to

11   the other side.  We've got a situation where the defendant in

12   this case may have more data than any other entity in the

13   entire Planet Earth.  And so we live in a world where we're

14   very concerned that nobody uses a Gmail account, nobody uses

15   anything that goes through all of the Google filters and all

16   of the Google accounts.

17         And we're trying to build within ourselves a

18   confidentiality that will meet the needs of the case and will

19   serve this Court but, by the same token, will not feed the

20   information giant in a way that allows them to data mine all

21   of our consulting experts' emails that have -- they've got a

22   right to it, that's never been a Gmail account, that allows

23   them to do a lot of things like that.

24         It's a touchy situation because of who the parties

25   are and where we are.  And so we will refine that down and

1    put any disagreements in front of the Court.  We're trying to

2    work cooperatively.  We think it's critical to get the

3    protective order done.

4            And we've tried really hard to figure out where the

5    leak came from.  We don't know.  I'll represent that I

6    personally talked to a number of our people, and we've had

7    everybody sweep.  It's not from us.  I can represent that to

8    the Court, based upon diligent investigation, not obviously

9    personal knowledge, but I do not believe it's us.

10           And we will ascribe to any kind of hammer the Court

11   wants.  You've got more authority -- I mean, you can shut

12   down the electricity for this whole region, if you choose.  I

13   don't know how long it would last.  But I mean, we know the

14   authority you've got, and we are quick to say bring the

15   hammer down if we violate that.  But disclosing experts -- or

16   consultants is something that we're loathe to do absent the

17   Court telling us we have to.

18           MR. YETTER:  Your Honor, just briefly, two points.

19   The reason we're asking and the reason why we didn't ask in

20   the Search case is because we've had a disclosure here and it

21   obviously came from that side.  And we have nothing we can do

22   about it if we don't know who they disclosed their draft

23   complaint to.  And we asked counsel, and they simply said

24   *we're not telling you*.  And they do know.  And we have no

25   way, other than to simply accept what they're saying, which

1   is *trust us, it wasn't us*.  And we can't let this happen

2   again, and that's why we're trying to get to the bottom of

3   it.  And we think that will have a prophylactic effect.

4         Second, this is not unusual.  The Western District,

5   essentially, in its protective order for everybody to use,

6   has this very provision.  This issue about data mining, I

7   have no idea where that's come from, that has nothing to do

8   with this case.  I don't know why that would be suggested.

9         But there's been one disclosure.  It came,

10   unfortunately, from the plaintiffs' side.  And we need to

11   have something -- put into place something that will prevent

12   it in the future, so that we can go forward and know that

13   information that's confidential, whether it's third party or

14   internal Google information, will be kept pursuant to the

15   Court's orders, and the Court's orders will be respected.

16         If the Court doesn't know who breaches it, there's

17   nothing the Court can do either.  So that's kind of our

18   position.  And we won't -- we don't mean to hash this out in

19   front of the Court, but we will talk with counsel and see if

20   we can get something worked out.

21         THE COURT:  All right.  Well, I appreciate the

22   comments from counsel on both sides.  You know, my hope would

23   be that you can work together and maybe find some sort of

24   middle ground, and you may not be able to, on this issue.

25   And if not, you can certainly bring it to the Court's

1    attention and we'll resolve it.

2         You know, the only two points I think it's

3    worthwhile for me to make at this point are, number one, I do

4    think the protective order needs to be robust and arguably

5    quite robust here, given the sensitivity of the information

6    involved.  And as Mr. Yetter's pointed out, I was aware of

7    that unfortunate leak, and so I think that maybe underscores

8    the point just how robust the protections will need to be,

9    number one.

10         The second point I would like to make is just in

11   terms of timing, and this will probably be obvious to counsel

12   for both sides as well, which is that ideally we would want

13   to have something in place before the Court's order governing

14   proceedings itself is going out, for the obvious reason that

15   following that order there is a, you know, a period of I

16   think fairly intense disclosures, you want to call it,

17   discovery.  And so looking at this timeline, I think we want

18   to try and mark that on the calendar as the time frame that

19   we're going to need that protective order in place.

20         Anything else on the protective order counsel need

21   to bring to the Court's attention right now?

22         MR. LANIER:  Not from plaintiff.

23         MR. YETTER:  No, Your Honor.

24         THE COURT:  All right.  So the last topic that I

25   had just has to do with conferencing.  And by that I mean, I

1    have already seen some back and forth on certain issues, even

2    at this early stage of the case, that has to do with

3    agreements or perceived agreements between parties and who,

4    you know, who may be bound by them.  And that's

5    understandable in a case particularly where we have ten

6    states on one side of the V here, and we have Texas acting as

7    lead -- you know, acting as lead counsel, but we have nine

8    other, again, sovereign states involved in this.

9           So something that I wanted to hear from both of you

10   on briefly is just, number one, to help me understand where

11   you both see that right now.  And what I mean by that is my

12   understanding is as a general matter, the State of Texas is

13   acting as lead counsel and as a general matter, at least as

14   to certain items, the State of Texas can speak for other

15   states.  But this is where I'm not sure how far that goes.

16          I would say that for things like any kind of a

17   major motion, like a 1404(a) motion, I would expect that one

18   way or the other, with regard to conferencing requirements,

19   you would need signoff from all, all of the States.

20          Obviously, in a case like this, there's going to be

21   a whole series of issues -- we've talked about some of them

22   today, things like protective orders and discovery issues --

23   that you all will be working together.  And so I want to have

24   a better understanding right now from both the States'

25   perspective, and then we can have comments from Google, on

1    how that's been working and/or not working.

2         MR. LANIER:  All right, Your Honor.  Speaking, Mark

3    Lanier, on behalf of the plaintiff, plaintiff State of Texas,

4    I've been in communication with several attorneys general of

5    several of the other States that have joined.  We're trying

6    to work through whether or not there is a direct

7    representation we might be able to get them as the legal team

8    in this case, or whether or not they're going to exist on

9    their own within the litigation.  Obviously, to the extent we

10   represent them as counsel, we will do the necessary work

11   before anything we file, to make sure all of our clients are

12   apprised and signing off on it, and we'll be able to

13   represent them fully under a power of attorney.

14        For those states that choose to go it alone, the

15   best resource that we've got is the responsibility under the

16   rules to conference and urge them not to swim against the

17   tide, not to buck what's going down, but to join in efforts

18   to minimize the inefficiency to Your Honor.  You're not going

19   to want 12 briefs that say the same thing where you've got to

20   winnow through them to figure out if there are discerning

21   argument on footnote 3 of page 19 of XYZ State.

22        So it is our pledge to you that we will work hard

23   to integrate those filings so that you only see one filing

24   for plaintiff.  If there's something unusual, if -- then

25   we'll try to do it in a way that highlights what's unusual,

1   so if you get a multiplicative filing, you know what's what.

2          THE COURT:  That's helpful, Mr. Lanier.  Before I

3   hear from Mr. Yetter, I think that, you know, because this

4   obviously is an issue mostly on the plaintiffs' side, I do

5   think it will be helpful for lead counsel for Texas to work

6   with the other states and develop the best solutions that

7   there are for how this is going to proceed.  And to the

8   extent that there are states that want to simply proceed as

9   independent plaintiffs and have their own counsel speaking,

10  then, you know, the Court can work with that.  But for the

11  purposes of agreements, and particularly I know for, I'm

12  sure, for the defendant, whatever you can do to make it quite

13  clear, you know, when Texas -- when and how the State of

14  Texas speaks for the other states and when and how it

15  doesn't.

16         MR. LANIER:  Excellent, Your Honor.  And I'll

17  pledge myself, as lead counsel, to doing that personally and

18  making sure the defendants, when they check with us, don't

19  have the necessary obligation to check with every state.

20  We'll try to do that background work to make sure that

21  everything is conferenced properly for the Court.

22         THE COURT:  Right.  And I understand the

23  difficulties.  I have some experience with that.

24         Mr. Yetter, do you have --

25         MR. YETTER:  Yes, just --

```
1              THE COURT:  -- comments from Google?

2              MR. YETTER:  Just briefly.  You know, Your Honor

3    touched on something that counsel and I have talked about.

4    And from our perspective, it is -- it's both time consuming

5    and frustrating not to know who we're talking to.  And our

6    communications so far have been -- obviously, very excellent

7    counsel on the other side -- have been cordial, and we have

8    had our disagreements, but we have been making good progress.

9              Where we find that we're not talking to the whole

10   group is when we have a disagreement about something, and

11   then we hear that, well, you haven't even talked to the other

12   states yet; and on other things, the Texas counsel is

13   speaking for them all.

14             One thought I had, and we will work with the

15   States, and we hope that they can coalesce and have a single

16   voice that otherwise it's going to even further delay the

17   case and make it more cumbersome.  But one thought I had, and

18   I will raise it with the other side, is maybe we come up with

19   some email that includes all of the other States' lawyers

20   that want to be included and in our communications, we just

21   make sure they get copied.  And unless anybody says something

22   different from the other States, we're just going to assume

23   that everybody's okay with the agreements that we reach with

24   the State of Texas.

25             Now, that may not be workable.  But what we're
```

1    looking for is something efficient so that we can deal with

2    the ten states in a professional, efficient, expedited way,

3    without having later disagreements, *well, you didn't ask me*

4    *specifically, or that*, and which we would like to avoid.  So

5    we'll do whatever the States think best, but we would love

6    for them to have a single voice in most -- most or all

7    discussions with us.

8              THE COURT:  All right.  Mr. Lanier?

9              MR. LANIER:  Please, Your Honor.  I don't have

10   experience in front of you, and Mr. Yetter and I have known

11   each other professionally some, but not a lot of experience.

12   I'm not one who is going to fight this kind of stuff in the

13   sense of being obstreperous or using a State to leverage or

14   something like that.

15             I'll represent to you that in my mind what you've

16   done by saying *lead counsel for Texas is responsible to ABC*,

17   as you've said earlier, is akin to a liaison counsel role in

18   an MDL or something, where you basically said, *Lanier, you*

19   *better get all of those people in line and you better make it*

20   *clear if there is an issue, because Yetter ought to be able*

21   *to deal with you and let you take it from there*.  And I'll

22   pledge to the Court to do that because I think it will be

23   expedient, I think it will be fast.  I'll work with

24   Mr. Yetter to figure out the formula of where I'm allowed to

25   speak for others and where I'm not, and we'll make it real

1    clear where you never have to get involved at all.

2         MR. YETTER:  Your Honor, that sounds like a good

3    plan.

4         THE COURT:  All right.  I appreciate the comments

5    from both counsel.  And as I mentioned before, I understand

6    that this is, you know, it just can be difficult when you

7    have a number of states and it's -- you know, ten states is

8    not a particularly small number.  I'm not going to give you

9    detail thoughts on this because I think you're already on top

10   of it, but I think the development of protocols -- this is

11   simply with regard to, you know, where you're going to need

12   to reach agreements, so protocols that both sides can

13   understand about -- here's how you know we have signoff from

14   all of the plaintiffs, this is the way you're going to know

15   every plaintiff has signed off on this.

16        Of course, this is short of -- as you mentioned,

17   Mr. Lanier, there is the situation where you have otherwise

18   it is clear that some or all of the States have just been

19   able to turn this over to allow Texas to, basically, you

20   know, represent them, in effect, as lead -- you know, lead

21   counsel type of role.  But short of that, and I understand it

22   may not be possible, I do think it's going to be important to

23   have those kinds of protocols so that the defendant knows,

24   unequivocally knows, when they're agreeing with just Texas or

25   Texas and five States, and when they're agreeing with all

1    States.

2              And I'm going to be sympathetic to the concerns the

3    defendant has where there is a lack of clarity, because as

4    hard as it may be on the plaintiffs' side -- and I recognize

5    it may not be easy to bring all the States together -- I do

6    think it's going to just be on the States and probably, as

7    I've mentioned, mostly Texas as lead State, to try to make

8    sure that happens.

9              MR. LANIER:  Yes, sir.

10             THE COURT:  All right.  That was the issue of

11   conferencing was really the last topic that I wanted to cover

12   today in terms of this preliminary conference.  And so I will

13   open it up for counsel if there's any other issues that you

14   think we need to discuss at this conference.

15             Mr. Lanier.

16             MR. LANIER:  None for plaintiff, Your Honor.

17             MR. YETTER:  None for the defendant, Your Honor.

18             THE COURT:  All right.  Well, I want to thank you,

19   counsel.  Your comments and thoughts have been very helpful,

20   and I've appreciated getting a chance to visit with you as we

21   get this case moving.

22             We will stand in recess.  Thank you.

23                   (Adjourned at 10:54 a.m.)

24                   *    *    *    *    *

25

1        CERTIFICATE OF OFFICIAL REPORTER

2

3

4        I, Gayle Wear, Federal Official Court Reporter, in

5   and for the United States District Court for the Eastern

6   District of Texas, do hereby certify that pursuant to Section

7   753, Title 28 United States Code, that the foregoing is a

8   true and correct transcript of the stenographically reported

9   proceedings held in the above-entitled matter and that the

10   transcript page format is in conformance with the regulations

11   of the Judicial Conference of the United States.

12

13                    Dated 8th day of February 2021.

14

15

16                    /s/ Gayle Wear
                      GAYLE WEAR, RPR, CRR
17                    FEDERAL OFFICIAL COURT REPORTER

18

19

20

21

22

23

24

25