IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| THE STATE OF TEXAS, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | Civil Action No. 4:20-cv-957-SDJ |
| GOOGLE LLC, | § | |
| | § | |
| Defendant. | § | |

**JOINT STATUS REPORT REGARDING PROTECTIVE ORDER**

Pursuant to the January 22, 2021 Order, Dkt. 35, the parties respectfully submit this report on the status of negotiations over a permanent protective order and seek the Court's guidance.

Google and the State of Texas, negotiating on behalf of Plaintiffs, have conferred by emails and videoconferences to finalize the protective order. The parties agree on most terms, largely adopting the protective order entered in *U.S., et al. v. Google LLC*, No. 20-cv-3010 (D.D.C.). But a few disagreements remain.[1] Google seeks certain protections to prevent disclosure of confidential Google or third-party information, and to prevent its competitively sensitive information from being shared with competitors. Plaintiffs seek a provision to protect privileged and confidential information communicated on Google's platforms from disclosure to Google's counsel and any others acting on Google's behalf related to this litigation. Because the parties appear to be at an impasse on these issues, they submit their respective positions for the Court's guidance.

I.   **Google's Request for Disclosure of Who Will Access Confidential Data**

A.  **Google's Position**

Google seeks a provision requiring disclosure of individuals who will access confidential

---

[1]   The parties have attached a Stipulated Protective Order as Joint Exhibit 1, which contains both the parties' agreed and opposed provisions. Joint Exhibit 2 is attached for the Court's reference and contains only the opposed provisions.

information for two reasons. First, the prior confidentiality breaches in this case indicates that heightened protection is necessary. Second, Google should have the opportunity to object to an expert or consultant accessing its competitively sensitive information if that individual is affiliated with a competitor or otherwise has a conflict of interest.

**_Additional protections have been shown to be necessary_**. As the Court is aware, part of an unredacted draft of the complaint was leaked to at least two national media outlets just days after this case was filed. Both newspapers ran articles publicizing confidential Google and third-party information in the draft complaint.

The disclosed information included material that Google had provided to the Texas OAG and other Plaintiffs as part of its cooperation with the multistate investigation. Google had agreed to produce thousands of documents pursuant to civil investigative demands from the Texas OAG on the express condition that its confidential information would be protected and not leaked or otherwise misused. Google's productions were made under a state-court protective order, a multistate confidentiality agreement, and the Texas Antitrust Act, Tex. Bus. & Com. Code §15.01, *et seq*. Although unauthorized disclosure or use is prohibited, at least one investigating jurisdiction or its lawyers, experts, or consultants breached the confidentiality duties and leaked confidential Google and third-party information to the media.

Thereafter, Google made reasonable requests to investigate the disclosures. In response, Texas refused to name the states and individuals to which it provided access to the draft complaint. It refused to inquire which of the investigating or prosecuting States was responsible. Google was forced to investigate alone, including contacting all 51 states and territories in the multistate investigation, some of which never responded. When Google sought certain information or assurances to assist its investigation, Texas declined to provide them. To this day, Google is in the

dark as to who leaked—or even saw—the draft complaint before the case was filed. The lack of information has undermined Google's ability to secure remedies and prevent future misconduct.

As the Court noted at the initial conference, the leak "underscores the point [of] just how robust the protections will need to be." Tr. 29:7-8, Dkt. 57 (Feb. 4, 2021). Nor is this the first time Texas released confidential information during its investigation. Texas's subpoenas to Google, correspondence between Google and Texas in response to those subpoenas, and the parties' non-public confidentiality agreement all were leaked to news outlets at various points during the 15-month Texas-led multistate investigation,[2] which was launched by Attorney General Paxton holding a press conference on the steps of the U.S. Supreme Court.[3] Given the significant confidentiality breaches that have already happened in this case, greater transparency and accountability is warranted.

---

[2]    *See, e.g.*, McKinnon, John, "Google resists demands from states in digital ad probe," *Wall Street Journal* (Feb. 21, 2020), https://www.wsj.com/articles/google-resists-demand-from-states-in-digital-ad-probe-11582281000 (citing confidential Google correspondence to Texas OAG regarding response to subpoena, which was "reviewed by the Wall Street Journal under a public-records-act request"); McLaughlin, David, "Google Hit With Sweeping Demand From States Over Ad Business," *Bloomberg News* (Sept. 10, 2019), https://www.bloomberg.com/news/articles/2019-09-10/google-hit-with-sweeping-demand-from-states-over-its-ad-business (citing and summarizing September 2019 civil investigative demand to Google from Texas OAG, which was "obtained by Bloomberg"); McCabe, David, "Google Reaches Document Protection Deal in Antitrust Fight," *New York Times* (Feb. 21, 2020), https://www.nytimes.com/2020/02/21/technology/google-antitrust-document-deal.html#:~:text=The%20company%20had%20asked%20a,is%20leading%20a%20multistate%20investigation (citing non-public confidentiality agreement between Texas and Google, according to "a copy reviewed by The New York Times").

[3]    Romm, Tony, "Texas attorney general, Google's new competition cop, says everything is 'on the table,'" *Washington Post* (Oct. 8, 2019), https://www.washingtonpost.com/technology/2019/10/08/texas-attorney-general-googles-new-competition-cop-says-everything-is-on-table/; *see also* CSPAN: Investigation of Large Technology Companies, https://www.c-span.org/video/?464067-1/investigations-large-technology-companies (Sept. 9, 2019) (attendance and remarks by plaintiffs Alaska, Arkansas, Florida, Indiana, Missouri, South Dakota, and Utah).

With that focus, Google proposes that each side provide copies of the protective order Appendix signed by experts/consultants before they get access to the other party's confidential information. This mutual obligation will provide transparency into who will have access to confidential party or non-party information. Specifically, Google proposes the following:

> A copy of each executed Agreement Concerning Confidentiality must be provided to Outside Counsel of Record for the producing Party within three days of its execution and prior to disclosing any Confidential Information or Highly Confidential Information.

Texas rejected this proposal on February 12, 2021. It said that "disclosing to Defendant the identity of testifying experts before the Court ordered disclosure deadlines, as well as the identity of consulting experts, or trial consultants creates an unjust advantage for Defendant as an intrusion into Plaintiffs' litigation strategy." Google proposes to make disclosure duties reciprocal, however, which would eliminate any "unjust advantage" to one side or the other.

**_Google should be allowed to object to experts/consultants working for competitors_**. Even if Google's confidential information had not already been leaked to the *New York Times*, this provision would be justified. In complex cases involving competitively sensitive information, parties should have the opportunity to object to experts and consultants who are aligned with competitors or who are otherwise conflicted. Again, the concern is not theoretical here. Google is aware of at least one such outside consultant hired by Texas.[4]

---

[4]   Texas hired Cristina Caffarra, a public critic of Google, as a *free* consultant in its investigation. Ms. Caffarra has marketed her anti-Google experience widely, including her advocacy against Google before the European Commission and in Russia on behalf of search engine and ad tech competitor Yandex. *See, e.g.*, Caffarra, Latham, Bennett, et al., "Google Android:  European 'techlash' or milestone in antitrust enforcement?" *VOC CEPR Policy Portal* (July 2018) ("The authors of this column all worked together on behalf of Yandex, a Russian search engine, both before the Russian FAs and the European Commission"), https://voxeu.org/article/google-android-european-techlash-or-milestone-antitrust-enforcement; Tr. of Conference Call with CRA's Cristina Caffarra on an Alternative Vision for Antitrust in the Digital Age, *The Capitol Forum*, 7:23 at 1, (Jan. 25,

Nor is advance disclosure novel, unjust, or onerous. It is actually commonplace in this District. The standard protective order template offered by Chief Judge Gilstrap for patent cases *requires* each outside consultant or expert to serve both a resume and signed confidentiality agreement to the producing party at least ten days prior to his/her accessing confidential information. *See* Hon. Rodney Gilstrap Patent Prot. Order ¶5(e). The order allows a producing party to object to the proposed disclosure if the parties are unable to reach agreement:

> "CONFIDENTIAL" documents, information and material may be disclosed only to the following persons, except upon receipt of the prior written consent of the designating party, upon order of the Court, or as set forth in paragraph 12 herein: *outside consultants or experts* (*i.e.*, not existing employees or affiliates of a Party or an affiliate of a Party) retained for the purpose of this litigation, *provided that*: (1) such consultants or experts are not presently employed by the Parties hereto for purposes other than this Action; (2) *before access is given, the consultant or expert has completed the Undertaking* attached as Exhibit A hereto *and the same is served upon the producing Party* with a current curriculum vitae of the consultant or expert *at least ten (10) days before access to the Protected Material is to be given* to that consultant or Undertaking to object to and notify the receiving Party in writing that it objects to disclosure of Protected Material to the consultant or expert. The Parties agree to promptly confer and use good faith to resolve any such objection. If the Parties are unable to resolve any objection, the objecting Party may file a motion with the Court within fifteen (15) days of the notice, or within such other time as the Parties may agree, seeking a protective order with respect to the proposed disclosure. The objecting Party shall have the burden of proving the need for a protective order. No disclosure shall occur until all such objections are resolved by agreement or Court order.

*Id*. (emph. added). The same terms have been adopted by other judges in this District. *See, e.g.*, Hon. Robert Schroeder Patent Prot. Order ¶5(e); Hon. John Love Patent Prot. Order ¶5(e); Hon. Caroline Craven Patent Prot. Order ¶5(e); Hon. Roy Payne Patent Prot. Order ¶5(e).

Courts in this Division have approved such terms. In the patent and non-patent context, parties in the Sherman Division have agreed to—and the Court has entered—protective orders

---

2019), available at https://thecapitolforum.com/wp-content/uploads/2019/02/Tech-Policy-2019.01.25.pdf.

requiring disclosures of identities and background for experts/consultants prior to accessing confidential materials. *See*, *e.g.*, *Wegner v. Tetra Pak, Inc.*, No. 4:20-cv-00608-SDJ, Dkt. 18, Prot. Order ¶9 (Oct. 5, 2020) (life insurance lawsuit); *Far North Patents LLC v. Int'l Business Machines Corp.*, No. 4-19-cv-00940-SDJ, Dkt. 39, Am. Prot. Order ¶5(e) (May 7, 2020) (patent infringement suit); *Resman, LLC v. Karya Prop. Mgmt., LLC*, No. 4:19-cv-00402-ALM, Dkt. 24, Prot. Order ¶4(e) (June 17, 2019) (contract/computer theft lawsuit).

This practice extends outside of this District and is not unfair or detrimental to either side. For example, in the Western District of Texas, the standard protective order template for all civil cases (patent or otherwise) requires written identification and disclosure of all experts and outside consultants to the producing party before they are provided For-Counsel-Only information:

> *actual or potential independent experts or consultants* (and their administrative or clerical staff) engaged in connection with this litigation . . . *who, prior to any disclosure of Classified Information to such person*, have signed a document agreeing to be bound by the terms of this Protective Order (such signed document to be maintained by the attorney retaining such person) and *have been designated in writing by notice to all counsel*.[5]

In conformity with this common practice in high-stakes, complex cases, Google seeks the entry of a provision that would require both sides to disclose the identities of outside experts and consultants prior to providing them with access to the other's confidential information.

### B.    Plaintiffs' Opposition

Google has zero evidence that any Plaintiff State disclosed confidential information. A draft Complaint was shown to 35 states via a "Box" read program a few days before the Complaint was filed with the Court. A draft Complaint was also shown to the United States Department of

---

[5]    W.D. Tex. Confidentiality & Protective Order ¶2(a)(ii), available at https://www.txwd. uscourts.gov/wp-content/uploads/Forms/Civil/Western%20District%20of%20Texas%20 Protective%20Order.pdf.

Justice (DOJ) prior to the filing of the original Complaint.  Ultimately, only Texas and nine other Plaintiff States joined in the filing of the original Complaint.  Google cannot cite to any evidence that the Plaintiff States did anything improper, and further, Google cannot rule out that one of the 35 states or the DOJ was subject to a SolarWinds-type computer hack.

In January, the Plaintiff States proposed that the parties enter into the heavily negotiated protective order that Google (and six of the current Plaintiff States) agreed to enter into in the DOJ's case against Google (DOJ v. Google Case). In response, Google asked for a number of edits to that protective order, the majority of which, Plaintiffs agreed to accept.[6]

After months of negotiations, there are three outstanding points in the otherwise stipulated protective order: (1) Google's request to know the identities of persons who sign the protective order, including all of Plaintiff's consulting or testifying experts before the Rule 26 discovery deadline; (2) Google's broad request to have such persons disclose any affiliation with competitors, investigations, or litigation relating to Google; and (3) Plaintiffs' request to secure certain assurances from Google that it will not use its rights under Google's various Terms of Service Agreements to share Plaintiffs' confidential or privileged information with Google's attorneys or those acting on behalf of Google related to this litigation.

---

[6]     For example, Google initially requested to have an independent right to enforce the provisions of the protective order in jurisdictions outside of this court. The Plaintiffs first noted that any such independent right to enforce should be reciprocal, but more importantly, that if either party sought to enforce a protective order entered into in Judge Jordan's Court, it should be enforced by Judge Jordan rather than a separate unrelated jurisdiction that has no information or background of this case. The parties were able to draft reciprocal language that now appears in the draft protective order making it clear that any redress be sought from this Court. The Plaintiffs further agreed to add an additional provision in the Appendix at Google's request, making it abundantly clear that anyone who signs the protective order is subject to enforcement in this Court and in the U.S. District Court in the Eastern District of Texas.

Unfortunately, rather than focusing on the narrow points at issue between the parties, Google's position mischaracterizes the parties' negotiations and levies false accusations against the Plaintiffs, and specifically Texas, under the veil of achieving its goals relating to the protective order. Plaintiffs' position addresses these inaccuracies and the merits of the disputed provisions.[7]

***Google's Proposed Disclosure Request is Pretext to Learn Identities of Plaintiffs' Experts.*** Google's primary argument is that an alleged prior unauthorized disclosure of confidential information in this case necessitates advance disclosure of the identities of persons bound by the protective order (such as experts, consulting exerts, jury consultants, etc.), and that such persons must reveal to Google whether or not they are loosely affiliated with any person or entity that is generally averse to Google. However, Google failed to explain how such disclosure would help Google "enforce" the terms of the protective order. Nor is Google's request actually precipitated by the prior disclosure in this case—Google requested, and was denied, a similar provision as part of the Texas state-court protective order. Nonetheless, Google is relitigating the issue in this case as a pretext to infiltrate Plaintiffs' case strategy and diminish Plaintiffs' access to the limited pool of highly skilled experts for this case.

The parties agree that the previous unauthorized disclosure—or computer hack—of the draft Complaint in this case was problematic, burdensome, and may have violated confidentiality obligations and that anyone found to have violated the state-court protective order or

---

[7]     In its discussion, Google notes that on February 12, 2021, Texas rejected Google's proposal that each side disclose who signs the protective order and Google argues that since its proposal is reciprocal it cannot be unjust. At this time, Google's suggested language was not reciprocal, it was one-sided—that only Plaintiffs disclose to Google. It was not until one month later, last Friday, that Google informed counsel that it was now proposing reciprocal language, and Plaintiffs did not see that language until Google transmitted a draft of this Notice. Nevertheless, the unfair advantage still relates to Google having insight into Plaintiffs' litigation strategy and a means to remove Plaintiffs' access to experts.

confidentiality agreements should be held accountable. However, both parties are "in the dark" about who leaked or hacked the information, not just Google. Texas (and all other Plaintiff States) take seriously their confidentiality obligations owed to Google and other third parties. To that end, Texas took numerous proactive measures when it learned of the disclosure: (1) it confirmed that every state entity that received confidential information signed the applicable confidentiality agreement; (2) it required its employees/agents with access to Google's confidential information to affirm they did not improperly disclose to the media; (3) it issued a litigation hold notice to its employees and agents with access to Google's confidential information; (4) it halted any automatic email deletion for its employees with access to Google's confidential information; (5) it reached out to the New York Times and Wall Street Journal requesting that they return confidential information governed by the protective order; (6) it requested that the New York Times and Wall Street Journal refrain from publishing additional articles containing confidential information that they may have obtained from an unauthorized disclosure; and (7) it reached out to the states that viewed a draft of the complaint and the Department of Justice and reminded them of the disclosure, the applicable confidentiality provisions, and Google's requests related to the state-court protective order and applicable confidentiality agreement.[8] Furthermore, Texas continued to update Google as it learned more information relating to the disclosure.[9] None of the Plaintiff States know who

---

[8]     For context, Texas followed the DOJ's protocol utilized in the DOJ v. Google Case when sharing a draft version of the complaint in this case. Instead of emailing a copy of the draft, it shared a draft via Box.net, disabled downloads and printing, and shared only with those states/territories that had previously signed the applicable confidentiality agreement.

[9]     In addition to taking immediate action, counsel for Texas engaged with Google about the disclosure and the steps taken by Texas through numerous phone calls and correspondence. Texas complied with nearly every request from Google.

may have obtained improper access to the draft complaint or if it was subject to a computer hack, nor do Plaintiffs know that it was leaked before the complaint was filed, as Google insinuates.[10]

Google is nevertheless attempting to use the disclosure as a pretext to infiltrate Plaintiffs' case strategy and diminish Plaintiffs' access to the limited pool of highly skilled experts for this case.  Despite offering no evidence as to the source of the disclosure, Google continues to assert unfounded comments about consultants, experts, or the lawyers in this case being the source the leak. But as Texas has conveyed to Google multiple times, the disclosure appears to have originated from screenshots of a Box.net shared draft of the Complaint, which was not accessible to any consultants or outside counsel. It also could have originated from a computer hack.

Furthermore, Google has provided no explanation as to how securing the identity of experts and affiliation with Google's competitors could help Google enforce the protective order or protect against future improper disclosure. Indeed, the opposite is true here. Specifically, Google currently knows the identity of three of Plaintiffs' consultants and the ten Plaintiff States.  One such expert is Christina Caffarra, who is cited by Google herein and was the subject of a lawsuit Google filed in Texas state court to impose restrictions on Ms. Caffarra related to the Texas investigation; the second consultant was the subject of a December 20, 2020 New York Times article identifying her as a technical consultant in this case and who Attorney General Paxton noted was "an integral part of the team"; and the third is a former Department of Justice colleague of Google's outside counsel who was sitting at Plaintiffs' counsel table during the last hearing.[11] Any assertion by Google that

---

[10]     In addition to mischaracterizing Plaintiffs' investigation, Google falsely accuses Texas of previous leaks to news outlets. However, as Google is well aware, the information reviewed by the media during the pre-suit investigation was produced subject to a mandatory open records request and is entirely irrelevant to unauthorized disclosures.

[11]     Google has also not indicated what investigative steps it has taken with the 10 current plaintiff states that it knows had access to a draft complaint, other than the fact that it wrote each state a letter three months ago. Until late in the afternoon on the date of this filing,

it is being stymied and needs more information is simply untrue, as in this instance, it has already obtained the identifying information it is seeking to add to the Protective Order and has done nothing with it.

Moreover, when pressed on what Google—the largest proprietor of data and information in the world—would do with the names of state employees or any of the other identities that would be revealed in the event that the Plaintiffs had to turn over such information automatically, Google failed to respond.

***Google is Not Entitled to the Identities of Plaintiffs' Consulting or its Testifying Experts Prior to the Rule 26 Disclosure Deadline.*** Rule 26 governs expert disclosures. It requires parties to disclose the identities of their testifying experts at least ninety days before trial, with a specific disclosure deadline set by the Court. FRCP 26(a)(2). "In contrast, parties need not disclose the identity or opinions of non-testifying or consulting experts." *Bromeland v. Posthumus*, No. DR-07-CV-021, 2009 WL 10700074, at *1 (W.D. Tex. Jan. 29, 2009) (citing FRCP 26(a)). For this reason, parties are not required to disclose the identities of their consulting experts except in exceptional circumstances. *See Bromeland*, 2009 WL 10700074, at *1 (*citing Hoover v. United States Dep't of the Interior*, 611 F.2d 1132, 1142 (5th Cir.1980)). Such exceptional circumstances are present only when "it is impracticable for the party to obtain facts or opinions on the same subject by other means." *Id*. (quoting FRCP 26(b)(4)(B)).

A party seeking to show exceptional circumstances bears a heavy burden. Google has not met that burden or even attempted to show how automatic disclosure of all experts, consulting and testifying, is related to any need by Google to obtain otherwise unobtainable case-related

---

Google had not even shared any information about any states that did or did not respond to Google. In fact, Texas still does not know who has responded or what they have told Google.

information. *See Liveperson, Inc. v. 24/7 Customer, Inc.*, No. 14 CIV. 1559 RWS, 2015 WL 4597546, at *2 (S.D.N.Y. July 30, 2015) (holding that the Rule 26 expert identity protections apply equally to disclosure requested in a protective order).

*Automatic Expert Disclosure Compromises the Plaintiffs' Litigation Strategy*

Expert disclosure would unfairly and unnecessarily compromise Plaintiffs' litigation strategy[12] and Plaintiffs' ability to retain the necessary experts required to prosecute its case. Plaintiffs are already at a disadvantage due to Google's vast resources and ability to retain and employ innumerable experts and market participants, regardless of whether Google plans to utilize those experts in this litigation. Automatic, immediate disclosure of all experts would compound that disadvantage, especially given the highly technical nature of this case and the small pool of qualified experts. Given Google's industry dominance and resources, if Plaintiffs are required to disclose the identities of their experts or their experts' affiliation with other matters relating to Google, industry experts will inevitably be disincentivized from working with Plaintiffs for fear of repercussions. *Corley v. Google, Inc.*, No. 16CV00473LHKHRL, 2016 WL 3421402, at *3 (N.D. Cal. June 22, 2016) (**"[T]he [court] is satisfied that it will be significantly more difficult**

---

[12]   Courts recognize the strategic importance of maintaining the confidentiality of a party's expert identities. *See MGP Ingredients, Inc. v. Mars, Inc.*, No. CIVA 06-2318 JWLDJW, 2007 WL 756645, at *4 (D. Kan. Mar. 8, 2007) (rejecting proposed PO provision requiring disclosure of expert identity because "the forced disclosure of the identities of a party's non-testifying experts and consultants represents an unwarranted intrusion into the party's litigation strategy and would provide the opposing party with an unjust advantage"); *Todd v. Tempur-Sealy Int'l, Inc.*, No. 13-CV-04984JST (MEJ), 2015 WL 433481, at *4 (N.D. Cal. Feb. 2, 2015) ("The Court agrees with Plaintiffs that requiring them to disclose in advance the identity of anyone they might consult about Defendants' formula potentially invades the attorney work product doctrine and removes Plaintiffs' ability to have non-disclosed consulting experts."); *In re Pizza Time Theatre Sec. Litig.*, 113 F.R.D. 94, 98 (N.D. Cal. 1986) ("A lawyer's decisions about which people to use in confidence for which purposes in preparing a case for trial is as central to lawyering strategy as one can get.").

**for Plaintiffs to retain qualified non-testifying experts if those experts are not permitted to remain anonymous.")**

Furthermore, disclosure of expert identities is unwarranted in this case. Based on Plaintiffs' investigation, there is no reason to believe (and no evidence offered) that the draft Complaint was disclosed by any retained expert. Indeed, as Plaintiffs repeatedly have communicated to Google, there is reason to believe the opposite. Moreover, as noted above, Google already possesses the expert identity information it contends is essential for it to meaningfully investigate, enforce, and discourage breaches but has fared no better than Plaintiffs in identifying the source of the unauthorized disclosure.

*This is Not a Patent Case and Plaintiffs Have Not Agreed to Disclose their Litigation Strategy*

Google points to Chief Judge Gilstrap's standard protective order used in <u>patent</u> cases to argue that disclosure is proper in this non-patent case. However, this is not a patent case, it is a case about Google's anticompetitive and deceptive practices, and Chief Judge Gilstrap's standard protective order used in non-patent cases <u>does not</u> contemplate such disclosure. For the same reasons, Google's references to previous rulings on patent cases are not applicable to the instant case.

Google's reference to protective orders entered into where the parties <u>mutually agreed</u> to disclose consulting experts is also unpersuasive. Unlike those cases, the Plaintiff States do not waive their Rule 26 protections and have not agreed to compromise their strategy and disclose such information.[13]

---

[13] Finally, Google references the broad and ambiguous language in the Western District of Texas' template protective order to provide for disclosure of anyone who signs the protective order. Such disclosure is not required nor mandatory and is not exchanged in practice in the Western District.

*Google Rejected the Plaintiffs' Good Faith Compromise.*  While Google argues that Texas rejected its (one-sided) proposal, Google fails to inform the Court that Plaintiff States offered a good faith compromise on this issue that serves to solve Google's stated concerns. Google argued in Court that that disclosure "will have a prophylactic effect, so if anyone's tempted to be – you know, to potentially violate the protective order, they won't do it." Plaintiffs have offered to have all signed signature pages of the protective order submitted to the Court (*in camera*) so as to reiterate the importance of adhering to this Court's protective order. This compromise would accomplish the deterrent effect argued by Google as a reason for such disclosure and allow the Court to enforce the Protective Order if necessary.[14]

Further, there would be a record on file with the Court, which may be disclosed by the Court in the event the Court decides it is necessary to do so. This compromise addresses Google's concerns without forcing the Plaintiffs to disclose its trial and case strategy.

### C.    Google's Reply

The fact is that breaches occurred that were due to someone associated with investigating states. To this day, Texas refuses to identify who accessed its draft complaint. Plaintiffs' investigation failed to find the source of the leaks. Indeed, their submission provides more explanation of the investigation than Texas has given to Google in the past three months.[15]

---

[14]    The protective order subjects every recipient of confidential information to jurisdiction of the Court with the explicit threat of civil and criminal penalties for contempt of Court. *See Nearstar, Inc. v. Waggoner*, No. 4:09-CV-00218, 2010 WL 11531229, at *2 (E.D. Tex. Mar. 15, 2010) ("While the protective order does not allow ASE to challenge Nearstar's choice of expert, it does mandate that any retained expert must sign an agreement to be bound by the protective order and submit to the jurisdiction of this Court.").

[15]    In a December 30, 2020 letter, Texas rejected Google's requests to describe steps taken by other Plaintiffs to investigate the disclosures and secure certifications from individuals receiving confidential Google information that they did not leak the draft complaint. "Each Plaintiff is a separate sovereign, represented by separate counsel, that is individually responsible for its own confidentiality obligations," Texas said at the time. In a January 12,

Notably, two new Plaintiffs—Montana and Puerto Rico—did not respond to two Google letters asking for information about the disclosures. Two others—Florida and Alaska—responded only last night, denying that they are the cause of the "purported" leak and refusing to provide signed certifications.

This failure to cooperate confirms the need for reasonable extra precautions. The risks are not hypothetical. When Google petitioned the state court for similar protections at the outset of the multistate investigation, Texas dismissed the concerns as a "theoretical risk" that is "all conjecture based on the unsupportable proposition that these professionals will disregard their legal, contractual, and fiduciary obligations." Resp. to Google's Pet. for Protective Order, *Google LLC, et al. v. Paxton*, No. 19-7654, 261st Dist. Ct. of Travis Co. (Dec. 9, 2019) at 9. A year later, the risks materialized when confidential information was disclosed to media outlets.

This is not about relitigating the December breaches. Google's requests are to discourage future breaches and provide the parties with greater visibility and less risk.

The notion that the safeguards are burdensome, unusual, or "pretext" is contrary to what Texas has done in the past. In multistate litigation in the Northern District of Texas challenging the Affordable Care Act, Texas agreed to the *same* advance disclosure: names of consultants and experts and their signed agreements prior to their accessing confidential information:

> Outside consultants or experts ("experts") and their staff whose advice and consultation is being or will be used by a party for the preparation or resolution of this case may have access to documents and information designated as "Confidential" only to the extent necessary to provide their advice or render their opinion. *Prior to the disclosure of any Confidential Material*, however, *each such expert and the staff members* who will have access to Confidential Material *shall read this Order and execute an agreement to fully abide by its terms. An executed*

---

2021 letter, Texas ended the dialogue with the statement: "OAG is acting in good faith to protect Google's confidential information and will not entertain further requests from Google at this time."

> *copy of each expert's agreement shall be transmitted to all other parties and any other person producing Confidential Material that will be disclosed to such expert.* If the person producing Confidential Material believes that disclosure of the Confidential Material to the expert would be injurious or prejudicial, it must object in writing received by the other party before 5:00 p.m. on the fifth business day following receipt of the expert's agreement. If the dispute cannot be resolved, the party who selected the expert may apply to the court for an order permitting disclosure of Confidential Material to the expert. No disclosure of Confidential Material may be made by a party to any expert as to whom an objection has been timely received, unless the objection has been overruled by the court.

Protective Order, Dkt. 123, *State of Texas, et al. v. U.S., et al.*, No. 15-cv-151 (Dec. 4, 2018) ¶10 (emph. added). Indiana, a Plaintiff here, was part of the ACA litigation and also agreed.[16]

A disclosure duty protects all parties by giving them the ability to raise concerns *before* confidential data is shared.  In the words of the Texas/Indiana protective order in their ACA case, if a producing party believes access to its confidential materials by a disclosed expert "would be injurious or prejudicial," the party is able and entitled to raise an objection.  In that way, concerns are aired and resolved, and additional protections implemented, *before* the data is shared.

This strikes a prudent and necessary balance between protecting the parties' confidential information and keeping secret their strategy as to experts and consultants. Plaintiffs here attack extra disclosure in the protective order, despite the still-unsolved breaches in December, as just a pretext to "infiltrate" Plaintiffs' litigation strategy. It is nothing of the sort, no more here than it was in their ACA case. As for testifying experts, their identities will be disclosed at some point in the case, so the disclosure is a mere matter of timing. As for non-testifying consultants, whose identities can remain secret, Plaintiffs would have a simple choice: provide their names before they see confidential Google (or third-party) information; or keep them hidden, use their services, but allow them no access to this confidential data. Here, Plaintiffs' data is not at risk, and they

---

[16]     For the Court's reference, this provision and the parallel provisions from Judge Gilstrap's template and the Western District of Texas template are excerpted in Google's Exhibit A.

-16-

predictably emphasize the importance of their litigation strategies. But Plaintiffs cannot fairly dismiss the legitimate concerns of Google and third parties about their valuable proprietary data, some of which already was leaked to the national press.

Plaintiffs' offered "compromise" of filing signed certifications with the Court is actually the status quo and provides no extra protection. A court is in no position to monitor incoming certifications for likely issues, such as consultants working for competitors of the producing party (raising the risk of misuse of confidential data), which is also a disclosure Google seeks. No court has time or resources to monitor certifications. At best, the compromise would give after-the-breach relief to an aggrieved party who can seek copies of certifications directly from the court rather than from adverse parties. Here, that is no relief beyond what Google already can seek from Plaintiffs (post-breach disclosure of certifications) and does nothing to prevent future breaches and enforce the protective order.

Texas provides no compelling reason why it rejects a provision similar to one it agreed to in another high-profile multistate lawsuit just two years ago. Nor have Plaintiffs offered equal safeguards. As the Court noted, the nature and history of this case justifies a "robust" protective order. What Google proposes is a reasonable precaution in a major case involving competitively sensitive information and especially necessary given the breaches that already occurred.

## II.    Google's Request that Experts/Consultants Disclose Affiliations

### A.    Google's Position

Texas also rejected a related disclosure term proposed by Google that would require experts and consultants for Plaintiffs to list affiliations with certain Google competitors and complainants:

> [A certification from individuals signing the Appendix indicating whether they are]
> an employee, consultant, or representative of, volunteer for, or otherwise affiliated
> with or independent-contractor to, (a) any competitor of any Google product or
> service substantially related to the subject matter of the Investigation or this Action,

(b) a complainant in any other substantially-related regulatory investigation of or litigation against Google, or (c) any person or entity that is (or was during the pendency of the Investigation or this Action) adverse to Google in any other judicial or administrative proceeding substantially related to the subject matter of the Investigation or this Action.

Google will provide a targeted list of entities who it considers competitors or complainants for the purpose of the protective order so that the disclosure will be directly pertinent to this case and its likely scope of discovery. This additional disclosure would allow Google, and the Court, to better understand the risks of disclosure of confidential Google information to certain experts and consultants. In a case of this size, complexity, and potential for disclosure of competitively sensitive information, these protections are reasonable and necessary.[17] That is especially true here, where Google's concerns about the many entities and individuals working behind the scenes, and possibly working for competitors, have been validated by the actions of an investigating jurisdiction or its lawyers, experts, or consultants in breaching the parties' confidentiality agreement and state law.

Google's request for disclosure of consultants' professional history also aligns with standard practice in this District. In fact, Chief Judge Gilstrap's patent protective order template, used by several judges in this District, requires experts and consultants to provide their resumes, which serves a similar purpose.[18]

Despite the prior breaches, Plaintiffs reject this targeted extra protection. As a result, the

---

[17]     *See supra* footnote 4 (describing Plaintiffs' consultant Cristina Caffarra's affiliations).

[18]     Again, the flow of information in the multistate investigation and this litigation has been one way. Not only did Texas refuse to name the recipients who could have leaked its draft complaint, but it would not identify entities or persons with interests adverse to Google who collaborated with Texas in the investigation. Indeed, starting in 2019, Google sought disclosure of public records of communications between the Texas OAG and certain political groups and commercial rivals of Google. Although these records do not relate to bona fide factual/investigative materials, Texas refused to release responsive records.

parties have reached an impasse and request the Court's guidance or decision.

### B. Plaintiffs' Opposition

***Google's Request to Identify Adversarial Connections Unfairly Limits the Expert Pool.***

In addition to requesting the automatic disclosure of every person that signs the protective order, Google has requested that every signatory indicate whether it has any broad affiliation with Google's competitors, investigations, or litigation. Google is one of the largest companies in the world, with countless products and services and numerous competitors. As such, this broad provision could implicate most qualified experts in this highly specialized field and would serve no purpose other than to discourage participation in Plaintiffs' case. Google has not even articulated what it would do if an expert marked one of the boxes or provided a list of competitors or adversaries, as requested by Plaintiffs.[19]

It also important to again note that the proposed protective order in this case is modeled almost entirely off of the agreed upon protective order in the DOJ v. Google case, which was also adopted in the Colorado-led case involving 38 states and territories (Colorado v. Google). There is not a requirement in those cases for disclosure of consulting experts let alone disclosure of affiliation with competitors, litigation, or investigations before consultants or not-yet disclosed testifying experts can see confidential material under the protections of the protective order.[20]

---

[19]     It is also unclear how this would implicate persons who are involved with confidential investigations, including investigations by government actors or sovereigns, or are affiliated with an entity or person that may be implicated by the broad language. For example, the list includes any "employee, consultant, or representative, volunteer for, or otherwise affiliated with or independent contractor to . . . any competitor of any Google product or service" substantially related to the subject matter of this investigation or action, a complainant in other substantially related litigation against Google, or any person or entity that is or was averse to Google in any other administrative proceeding substantially related to this matter.

[20]     Much of the same highly confidential information will be exchanged in the DOJ v. Google and Colorado v. Google case, and has already been exchanged in pre-suit investigations.

This is likely because safeguarding the identity of such persons and maintaining one's litigation strategy when litigating against one of the largest and most wealthy companies in the world is of the utmost importance. And disclosing such information is an unwarranted intrusion into litigation strategy.

Based on the limited pool of qualified experts, it is conceivable that by outing a consulting expert or early identification of possible testifying experts in this case will also harm or discourage the other two government-run cases by requiring a consultant or non-testifying expert to be disclosed.

As the California federal judge told Google in *Corley v. Google, Inc.*, it will be "significantly more difficult for Plaintiffs to retain qualified non-testifying experts if those experts are not permitted to remain anonymous." 2016 WL 3421402, at *3.

Further, Google provides no support for this requirement other than equating it to a request for an expert's resume, which has no relation to this issue.

### C.     Google's Reply

Disclosure of outside expert/consultant credentials, resumes, or affiliations is common, non-burdensome, and part of the template protective orders in this District. Given the history and significance of this litigation, it is a measured and reasonable precaution.

### III.   Plaintiffs' Request Regarding Google Refusing to Agree Not to Communicate Litigation-Related Information it May Collect to its Attorneys or Representatives

#### A.  Plaintiffs' Position

Google is the dominant force in search, online advertising, and data collection. It is virtually impossible in this age to do anything digitally without being tracked and to avoid using Google products or services. Google's various Terms of Service Agreements also appear to give

Google the broad ability/right to collect and review information across its products and services. In the interest of protecting attorney client privilege and work product, the Plaintiffs have requested a very narrow safeguard in the protective order.

Plaintiffs requested that despite any right granted to Google by any Google Term of Service, Google will not share any case-related information it may collect or have access to from those working on behalf of the Plaintiffs with its in-house or outside counsel. Google has rejected the narrowed request.

Texas has previously raised concerns around digital privacy given Google's unique position as a proprietor of massive amounts of data, including access to and collection of data across its widely used products and services (e.g., Gmail, Android texts, Android devices, Chrome, Google Drive, Google Docs, Google Sheets, Google Calendar, Google Meet, Maps, etc.). In response, Google noted its deep commitment to digital privacy for consumers of its products and services and stated that it does not engage in any such activities and that it was not aware of any such activity or concerns.[21]

Nevertheless, based on Google's data collection rights under its various Terms of Service and the articles and lawsuits over the years documenting such collection, concerns remain about Google's ability to collect and review information related to the case from those working on behalf

---

[21]    *See*  https://www.idropnews.com/news/googles-data-mining-on-the-iphone-is-staggering-app-privacy-labels-reveal/152960/;https://bgr.com/2018/08/13/google-tracking-locations-secretly-according-to-study/;    https://www.insideprivacy.com/united-states/court-denies-googles-motion-to-dismiss-gmail-wiretap-claims/;
https://blog.ericgoldman.org/archives/2013/09/wiretap_claims_1.htm;
https://www.security.org/resources/data-tech-companies-have/;
https://www.bloomberg.com/news/articles/2021-02-26/google-judge-disturbed-that-even-incognito-users-are-tracked.

of the Plaintiff States.[22] On February 24, 2021, Texas provided Google with draft language agreed to by all Plaintiff States to memorialize Google's stated commitment.

The Plaintiff States drafted narrowly focused language to address this concern and added to a section "L. Miscellaneous Provision" as follows:

> Notwithstanding any Google policy, agreement, or term to the contrary, neither Google nor anyone acting on Google's behalf will communicate to any In-House Counsel or Outside Counsel of Record or anyone else working on behalf of Google related to this litigation any information that is collected through or derived from any Google application or service, where such information is (1) communicated for any purpose relating to this Action and (2) associated with any individual Google knows or suspects is an employee, agent, or representative of one or more of the Plaintiff States.

Because Google has already agreed that it does not do this and it is committed to digital privacy, an affirmative commitment should not be an issue. Moreover, the proposed language is narrow and does not require Google to stop collecting or reviewing such information, but instead, simply requests that such information not be shared with counsel or anyone else working on behalf of Google related to this litigation.[23]

### B.    Google's Opposition

Plaintiffs request a "miscellaneous" clause, amounting to an injunctive order, that Google not break the law. The clause is neither reasonable nor justified by anything they cite.

---

[22]    For reference, and as requested by Google, Texas provided Google with references to some of its terms of service: Google's Main Privacy Policy (Information Google Collects, Why Google Collects Data, Sharing Your Information, Retaining Your Information, About This Policy) (https://policies.google.com/privacy?hl=en-US), Google's Main Terms of Service (Your relationship with Google) (https://policies.google.com/terms?hl=en-US), Gmail (https://www.google.com/gmail/about/policy/), Google Chrome Privacy Notice, (https://www.google.com/intl/en/chrome/privacy/)

[23]    After much discussion on this issue between the parties, the Plaintiff States understand that preventing the collection of such information by Google would be unduly burdensome. Thus, the Plaintiff States have offered this reasonable compromise instead.

Plaintiffs express vague "concerns" that Google "appears" to have a right to target, find, and in effect purloin privileged litigation communications of Plaintiffs' counsel/experts, done over Google services, and to give the intercepted data to Google counsel for use in this case. The suggestion is both baseless and outrageous. Despite repeated requests, Plaintiffs have provided no factual basis for this request and, in particular, no evidence that Google did, would, or could exercise such a tactic. Instead, Plaintiffs cite to non-specific concerns about non-specific parts of Google's terms of service. They provide no justification for this provision.

Texas did not propose this term until after the parties had been negotiating the protective order for several weeks. The parties used the Stipulated Protective Order entered in *U.S., et al. v. Google LLC*, No. 20-CV-3010, Dkt. 84 (D.D.C.), as a template here. Texas and other Plaintiffs had agreed to the D.D.C. order with no provision like what they seek in this case. The D.C. court entered that protective order on December 21, 2020, just days after Plaintiffs filed suit here and shortly before their unredacted draft complaint was disclosed to the media.

A month after filing this case, and with the uproar of the media leaks, Texas sought to try to change the subject. It asked for a "commitment" that Google not "wiretap, mine, gather, scan, access, or review emails, texts, data or documents" of employees, representatives, agents, and experts of the Texas OAG and outside counsel. Google Ex. B (1/28/21 email from Mr. DeRose). Google replied that the request is unwarranted, unsubstantiated, and appeared to be made for "PR, harassing, or other illegitimate reasons." *Id.* (2/3/20 response to Mr. DeRose).

Plaintiffs then raised the issue at the initial conference before the Court. Texas argued against Google's request for preventive disclosure in this case by claiming that, if Google knew the names of Plaintiffs' consulting experts, it might "data mine" their Gmail accounts:

> And we're trying to build within ourselves a confidentiality that will meet the needs
> of the case and will serve this Court but, by the same token, will not feed the

information giant in a way that allows them to data mine all of our consulting experts' emails that have – they've got a right to it, that's never been a Gmail account, that allows them to do a lot of things like that.

Dkt. 57, Tr. 26:17-23 (Feb. 4, 2021). Google called the accusation baseless. It "has nothing to do with this case. I don't know why that would be suggested." *Id.* 28:7-8. Texas repeated its claim in press conferences just minutes after the hearing ended. Through counsel, it told reporters that its litigation team was directed not to use Gmail in this case. Admitting to "*no evidence* that Google is mining emails," Texas said it would "be shocked" if Google did not data mine.[24]

On March 2, 2021, Texas and Google conferred about this provision by phone and email. Texas again gave no factual basis for any concerns. When pressed as to what makes Texas think Google has a right to "mine" litigation communications of adversaries, Texas pointed broadly to Google's "various terms of service" and privacy policies for its products, including half of its Main Privacy Policy and Main Terms of Service, its entire Program Policy, and its Chrome Privacy Notice. Texas points to these again now. Yet Texas has not been able to identify a single term that permits Google to engage in such illicit conduct. Nor has Texas identified a single instance in which Google ever did such a thing. Rather, Texas tries to bolster its request here with Google news stories stretching back to 2013, none of which involve confidential litigation information. *See supra* n.21.

Thus, Plaintiffs give no basis for a request to impose a do-not-break-the-law directive in the protective order. Nor is this an appropriate clause for a protective order, as it does not deal with

---

[24]     Koenig, "Lead Texas Atty In Google Suit Tells Team Not To Use Gmail," *Law360* (Feb. 4, 2021), https://www.law360.com/articles/1352130?scroll=1&related=1; Perera and Swift, "Google, Texas antitrust case over ad technology gets first day in Plano court," *mLex* (Feb. 4, 2021), https://mlexmarketinsight.com/news-hub/editors-picks/area-of-expertise/antitrust/google-texas-antitrust-case-over-ad-technology-gets-first-day-in-plano-court.

case discovery at all. Instead, it amounts to a request for a court-imposed injunction against Google not to conduct unethical and illegal espionage of its litigation opponents, without anything approaching the proof required to support such equitable relief. *Cf. Robinson v. Home Depot USA Inc.*, 478 F. App'x 820, 826 (5th Cir. 2012) (injunction cannot be based on "mere speculation based on . . . broad and unsubstantiated allegations"). Plaintiffs have simply not created a record for this Court to support the ordering of such an extreme measure. Nor could they, since their allegation has no evidentiary support at all.

Google has been clear that it has never engaged in such conduct, and there is not a hint of evidence to the contrary. *See* Google Ex. B. Yet Plaintiffs persist in their demands and still give no basis. It is hard not to conclude that their proposals are more calculated to feed conspiracy theories, drum up media reports against Google and favoring Plaintiffs, and distract from the admitted breaches on Plaintiffs' side.

In short, Plaintiffs provide nothing more than supposition that Google has some right to access privileged litigation communications. Of course, the same can be said of government regulators like Plaintiffs. Their requested provision is tantamount to an injunction that Google not commit illegal acts or spy on courtroom adversaries for commercial gain. This request is an unjustified distraction and is inappropriate to include in a court-directed protective order, especially absent any supporting evidence. This proposed term should be rejected.

## C.    Plaintiffs' Reply

On January 28, 2021, Texas sent Google a draft of a protective order modeled after the DOJ v. Google case, as Google requested.  The same day, counsel for Texas also sent Google notice of its previously mentioned concern about Google's ability to collect information and asked Google for a commitment that it will not collect confidential and privileged information related to

those working on this case. When Google refused to make such a commitment the Plaintiff States decided that it was necessary to include such a safeguard in the protective order to ensure the confidentiality of their information.

This would not be the first time that Google said it did not do something it was later discovered Google was doing. Despite various articles over the years documenting Google's data mining and collection, various lawsuits over such activities, and even a federal judge in Google's home state just last month being disturbed by Google's efforts to collect user data and possibly doing so on the federal court's website,[25] Google has opined that a mere representation that the request is unwarranted, unsubstantiated, and appeared to be made for PR, harassing, or other illegitimate reasons—should suffice.

In Google's Main Privacy Policy regarding information it collects Google notes:

Information Google Collects > Things you create or provide to us

"We also collect the content you create, upload, or receive from others when using our services. This includes things like email you write and receive, photos and videos you save, docs and spreadsheets you create, and comments you make on YouTube videos.[26]

Plaintiffs respectfully request a narrow and simple safeguard be added to the protective order—not that Google must stop collecting or reviewing Plaintiffs' information, but instead, that Google will not share any case-related information it may collect or have access to from those working on behalf of the Plaintiffs with anyone working on behalf of Google.

---

[25]     https://www.bloomberg.com/news/articles/2021-02-26/google-judge-disturbed-that-even-incognito-users-are-tracked;

[26]     **Google's Main Privacy Policy** (https://policies.google.com/privacy?hl=en-US)

Dated: March 18, 2021                    Respectfully submitted,

                                         R. Paul Yetter
                                         State Bar No. 22154200
                                         Bryce L. Callahan
                                         State Bar No. 24055248
                                         YETTER COLEMAN LLP
                                         811 Main Street, Suite 4100
                                         Houston, Texas 77002
                                         (713) 632-8000
                                         (713) 632-8002 (Fax)
                                         pyetter@yettercoleman.com
                                         bcallahan@yettercoleman.com

                                         Eric Mahr (*pro hac vice*)
                                         Julie S. Elmer (*pro hac vice*)
                                         FRESHFIELDS BRUCKHAUS DERINGER LLP
                                         700 13th Street NW, 10th Floor
                                         Washington, D.C. 20005
                                         (202) 777-4545
                                         (202) 777-4587 (Fax)
                                         eric.mahr@freshfields.com
                                         Julie.elmer@freshfields.com

                                         John D. Harkrider (*pro hac vice*)
                                         AXINN VELTROP & HARKRIDER, LLP
                                         114 West 47th Street
                                         New York, New York 10036
                                         (212) 728-2210
                                         jharkrider@axinn.com

                                         Daniel S Bitton (*pro hac vice*)
                                         AXINN VELTROP & HARKRIDER, LLP
                                         560 Mission Street
                                         San Francisco, California 94105
                                         (415) 490-1486
                                         dbitton@axinn.com

                                         ATTORNEYS FOR DEFENDANT GOOGLE LLC

*/s/ Ashley Keller*                                                */s/ Mark Lanier*

| | |
|---|---|
| Ashley Keller | Mark Lanier (*lead counsel*) |
| Admitted Pro Hac Vice | Texas Bar No. 11934600 |
| ack@kellerlenkner.com | Mark.Lanier@LanierLawFirm.com |
| Brooke Smith | Alex J. Brown |
| brooke.smith@kellerlenkner.com | Alex.Brown@LanierLawFirm.com |
| 150 N. Riverside Plaza, Suite 4270 | Zeke DeRose III |
| Chicago, Illinois 60606 | Zeke.DeRose@LanierLawFirm.com |
| (312) 741-5220 | 10940 W. Sam Houston Parkway N. Suite 100 |
| Warren Postman | Houston, Texas 77064 |
| wdp@kellerlenkner.com | Telephone: (713) 659-5200 |
| 1300 I Street, N.W., Suite 400E | Facsimile: (713) 659-2204 |
| Washington, D.C. 20005 | **THE LANIER LAW FIRM, P.C.** |
| (202) 749-8334 | |
| **KELLER LENKNER LLC** | |

**ON BEHALF OF PLAINTIFF STATES**

## CERTIFICATE OF SERVICE

I certify that on this 18th day of March 2021, this document was filed electronically in compliance with Local Rule CV-5(a) and served on all counsel who have consented to electronic service, per Local Rule CV-5(a)(3)(A).

*/s/ Bryce L. Callahan*
Bryce L. Callahan