BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE: GOOGLE DIGITIAL ADVERTISING ANTITRUST LITIGATION | MDL No. 3010 |
| | ORAL ARGUMENT REQUESTED |

*This Document Relates To:*

| | |
|---|---|
| STATE OF TEXAS, et. al., | No. 1:21-cv-06841 (PKC) (S.D.N.Y.) |
| *Plaintiffs,* | No. 4:20-cv-957 (SDJ) (E.D. Tex.) |
| -against- | |
| GOOGLE LLC, | |
| *Defendant.* | |

### THE PLAINTIFF STATES' REPLY IN FURTHER SUPPORT OF THE STATE PLAINTIFFS' MOTION FOR REMAND TO THE EASTERN DISTRICT OF TEXAS

## TABLE OF CONTENTS

TABLE OF CONTENTS ...........................................................................................................i

TABLE OF AUTHORITIES......................................................................................................ii

INTRODUCTION...................................................................................................................1

ARGUMENT ..........................................................................................................................1

   I.  The Venue Act applies to *Texas v. Google*................................................................1

      a.   The Venue Act expressly applies to pending cases ........................................1

      b.   By default, an act applies to pending cases when it affects only secondary conduct......4

      c.   The Venue Act affects only secondary conduct. ..............................................5

  II.  None of Google's counterarguments are persuasive ..............................................7

      a.   The State Plaintiffs did not unduly delay in bringing this motion ................7

      b.   That the State Plaintiffs' case has already been transferred doesn't change that the Venue Act requires remand...............................................................................8

      c.   Google's efficiency arguments misunderstand Congress's purpose in passing the Venue Act...........................................................................................................9

CONCLUSION ......................................................................................................................10

## TABLE OF AUTHORITIES

**Cases**                                                                                                                                                    Page(s)

*Albemarle Corp. v. AstraZeneca UK Ltd.*,
   628 F.3d 643 (4th Cir. 2010) ..................................................................................................... 7

*Blaz v. Belfer*,
   368 F.3d 501 (5th Cir. 2004) ...................................................................................................... 4

*Bowen v. Georgetown Univ. Hosp.*,
   488 U.S. 204 (1988) ................................................................................................................ 6, 7

*Bruner v. United States*,
   343 U.S. 112 (1952) ..................................................................................................................... 5

*Connecticut Nat'l Bank v. Germain*,
   503 U.S. 249 (1992) ..................................................................................................................... 3

*Edelman v. Lynchburg Coll.*,
   535 U.S. 106 (2002) ..................................................................................................................... 3

*Ex parte Collett*,
   337 U.S. 55 (1949) ....................................................................................................................... 4

*Food Mktg. Inst. v. Argus Leader Media*,
   139 S. Ct. 2356 (2019) ............................................................................................................ 1, 3

*Hadlich v. Am. Mail Line*,
   82 F. Supp. 562 (N.D. Cal. 1949) .............................................................................................. 5

*Hallowell v. Commons*,
   239 U.S. 506 (1916) ..................................................................................................................... 5

*Hughes Aircraft Co. v. U.S. ex rel. Schumer*,
   520 U.S. 939 (1997) ..................................................................................................................... 5

*I.N.S v. St. Cyr.*,
   533 U.S. 289 (2001) ..................................................................................................................... 6

*In re Food Lion, Inc., Fair Labor Standards Act Effective Scheduling Litig.*,
   73 F.3d 528 (4th Cir. 1996) ........................................................................................................ 6

*In re Generic Pharmaceuticals Pricing Antitrust Litig.*,
　　No. 16-md-2724 (E.D. Pa.) ......................................................................................................... 6

*Landgraf v. USI Film Prod.*,
　　511 U.S. 244 (1994) ........................................................................................... 4, 5, 6, 9

*Legal Assistance for Vietnamese Asylum Seekers v. Dep't of State, Bureau of Consular, Affs.*,
　　104 F.3d 1349 (D.C. Cir. 1997) ................................................................................................. 6

*Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*,
　　523 U.S. 26 (1998) ....................................................................................................................... 8

*Lindh v. Murphy*,
　　521 U.S. 320 (1997) ..................................................................................................................... 7

*Merck & Co. v. Reynolds*,
　　559 U.S. 633 (2010) ..................................................................................................................... 3

*Milner v. Dep't of Navy*,
　　562 U.S. 562 (2011) ..................................................................................................................... 3

*North Star Steel Co. v. Thomas*,
　　515 U.S. 29 (1995) ....................................................................................................................... 3

*Schoen v. Mountain Producers Corp.*,
　　170 F.2d 707 (3d Cir. 1948) ....................................................................................................... 5

*Seay v. Kaplan*,
　　35 F.R.D. 118 (S.D. Iowa 1964) ............................................................................................... 5

*Toibb v. Radloff*,
　　501 U.S. 157 (1991) ..................................................................................................................... 2

*United States v. Gonzales*,
　　520 U.S. 1 (1997) ......................................................................................................................... 2

*United States v. Google LLC*,
　　1:23-cv-108 (LMB/JFA), 2023 WL 2486605 (Mar. 14, 2023, E.D. Va. 2023) ............................. 10

*United States v. Nat'l City Lines*,
　　80 F. Supp. 734 (S.D. Cal. 1948) ............................................................................................... 4

*United States v. Nat'l City Lines, Inc.,*
  337 U.S. 78 (1949) ............................................................................................................... 1, 4, 5, 8

*Zall v. Standard Ins. Co.,*
  58 F.4th 284 (7th Cir. 2023).............................................................................................................4

**Statutes**

28 U.S.C. § 1407(b) ................................................................................................................................9

Pub. L. No. 117-328, § 301, 136 Stat. 4459 (2022).............................................................................2

**Other Authorities**

Herr, David F. *Multidistrict Litigation Manual,* § 10.5 (2022).............................................................6

Weigle, S.A. *The Judicial Panel on Multidistrict Litigation, Transferor Courts and*
  *Transferee Courts,* 78 F.R.D. 575 (1977).............................................................................................6

## INTRODUCTION

In case after case, the Supreme Court has ruled that procedural changes, like those contained in the Venue Act, apply to pending cases. Indeed, in *United States v. National City Lines, Inc.*, 337 U.S. 78, 80-82 (1949), the Supreme Court affirmed the transfer of an antitrust case under the newly enacted section 1404—even though the Court had previously held (*in the very same case* heard before section 1404's enactment) that the district court could not transfer the case under the prior rules. Google cannot and does not dispute this unbroken line of binding precedent. Instead, Google is the latest litigant to take "a selective tour through the legislative history" in hopes that this dubious source of statutory construction can overcome the plain text of the Venue Act and decades of Supreme Court precedent. *Food Marketing Institute v. Argus Leader Media*, 139 S. Ct. 2356, 2364 (2019). But the text of the Venue Act speaks in the present tense, making crystal clear it applies to ongoing disputes. Any doubt on that score is belied by the fact that Congress legislates against the backdrop of the common law. For that reason, the very history Google relies upon—if it could be used at all—simply confirms that Congress intended the Venue Act to receive the same retroactive application as any other procedural change.

Google also gestures at Plaintiff States' delay as a form of laches or forfeiture but provides no legal authority for the proposition that taking a couple months means that Plaintiff States lose their statutory rights. The motion should be granted, and the case remanded to Texas.

## ARGUMENT

I.    **The Venue Act applies to *Texas v. Google*.**

a.    **The Venue Act expressly applies to pending cases.**

The text of the Venue Act requires remand—which is why Google provides no argument from that text. Instead, Google starts by quoting multiple cases saying *just how clear* Congress must

1

be to end the inquiry at *Landgraf's* first step. Response at 9. Next, it explains that the Venue Act does not meet that standard. Response at 10-11. Then, in a remarkable non-sequitur, it concludes that the textual silence *is* clear on the opposite side. *Id.* at 12. But the text obviously does not support Google. Rather, the Venue Act reads that "[n]othing in this section *shall apply* to any action in which the United States or a State *is* a complainant arising under the antitrust laws." *See* Consolidated Appropriations Act, 2023, Pub. L. No. 117-328, Div. gg, Title III, § 301, 136 Stat. 4459, 5970 (2022) (emphasis added). The present tense "is" means the Venue Act applies to "any action" in which a State *is currently* an antitrust complainant. Here, Plaintiff States *are* complainants against Google. The MDL statute therefore "shall [not] apply" to these states because they *are currently* complainants.

Google knows the words of the Venue Act do not help it. So it instead resorts to the words that Congress did not enact into law, offering up cherry-picked snippets of legislative history. Response at 8-13. To start, Google's use of legislative history is based on a contradiction. Google essentially argues that the legislative history, when considered, proves that the text of the Venue Act unambiguously supports its position. But this reverses the order of things: Courts are supposed to revert to legislative history only *if* there is ambiguity in the text, not to *prove* the lack of ambiguity. *See United States v. Gonzales*, 520 U.S. 1, 6 (1997) ("Given the straightforward statutory command, there is no reason to resort to legislative history."); *Toibb v. Radloff*, 501 U.S. 157, 162 (1991) ("First, this Court has repeated with some frequency: Where, as here, the resolution of a question of federal law turns on a statute and the intention of Congress, we look first to the statutory language and then to the legislative history if the statutory language is unclear.") (internal quotation marks omitted). In any case, the legislative history upon which Google relies does not even support its position. Google argues that prior drafts of the Venue Act said that its changes would "apply to any matter

pending on, or filed on or after, the date of enactment." Response at 11. The deletion of these

words, in Google's telling, somehow proves that the Act is not retroactive. Just the opposite is as

likely true. The words were deleted because Congress legislates against the backdrop of the common

law, *Merck & Co. v. Reynolds*, 559 U.S. 633, 648 (2010), and so Congress therefore knew it did not

need to address retroactivity because the Supreme Court's default rule had already done so. All

Google's reliance on legislative history has done is reaffirmed the wisdom of recent Supreme Court

cases refusing to use murky legislative history as a method of statutory construction. *Argus*, 139 S.

Ct. at 2364 ("Even those of us who sometimes consult legislative history will never allow it to be

used to muddy the meaning of clear statutory language.") (internal quotation marks omitted); *Milner*

*v. Dep't of Navy*, 562 U.S. 562, 572 (2011) (same); *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249,

253-254 (1992) ("In any event, canons of construction are no more than rules of thumb that help

courts determine the meaning of legislation, and in interpreting a statute a court should always turn

first to one, cardinal canon before all others.  We have stated time and again that courts must

presume that a legislature says in a statute what it means and means in a statute what it says there.

When the words of a statute are unambiguous, then, this first canon is also the last: 'judicial inquiry

is complete.'") (collecting cases).

The text of the Venue Act is clear. And it comports with the normal rule that Congress knew

the default of retroactive application for procedural changes. *Edelman v. Lynchburg Coll.*, 535 U.S.

106, 117-18 (2002) ("This background law not only persuades by its regularity over time but points

to tacit congressional approval" what with "Congress being presumed to have known of this settled

judicial treatment of the [the background law] when it enacted and later amended Title VII."); *North*

*Star Steel Co. v. Thomas*, 515 U.S. 29, 34 (1995) ("It is not only appropriate but also realistic to

presume that Congress was thoroughly familiar with our precedents and that it expects its enactments to be interpreted in conformity with them.") (cleaned up).

Here, that means proceeding to *Landgraf* step 2.

### b.  By default, an act applies to pending cases when it affects only secondary conduct.

Turning to step 2 of *Landgraf*, the State Plaintiffs' motion to remand must be granted because the Venue Act affects secondary conduct rather than primary conduct. Whether a new law affects "primary conduct" guides retroactive application of changes in procedural rules. In *Landgraf v. USI Film Products*, the Court held that—because parties have "diminished interests in matters of procedure" and "rules of procedure regulate *secondary* [*conduct*]" as opposed to "*primary conduct*"— "[c]hanges in procedural rules may often be applied in suits arising before their enactment without raising concerns about retroactivity." 511 U.S. 244, 275, 280 (1994). Subsequent cases reaffirmed that rule. *See Zall v. Standard Ins. Co.*, 58 F.4th 284, 292, 296 (7th Cir. 2023); *Blaz v. Belfer*, 368 F.3d 501, 502 (5th Cir. 2004); *Legal Assistance for Vietnamese Asylum Seekers v. Dep't of State, Bureau of Consular Affs.*, 104 F.3d 1349, 1352 (D.C. Cir. 1997).

Venue changes, which are, themselves, paradigmatically procedural, plainly affect only secondary conduct. In *National City Lines, Inc.* (which Google ignores entirely in its response), the Court applied retroactively a statute that permitted the transfer of "any civil action," holding that it applied to antitrust cases. 337 U.S. 78, 80-82 (1949); *see also United States v. Nat'l City Lines*, 80 F. Supp. 734, 738-39 (S.D. Cal. 1948) ("[M]atters of venue and change of venue are, as a rule, mere incidences of procedure. And statutes relating to remedies and procedure operate retrospectively."). Similarly, in *Ex parte Collett* (which Google also ignored entirely), the Court reached the very same conclusion, permitting retroactive application of a statute that permitted *forum non conveniens*

4

transfers in FELA cases. 337 U.S. 55, 71 (1949). Further cases support the rule that venue changes apply retroactively when those changes do not affect primary conduct. *See Albemarle Corp. v. AstraZeneca UK Ltd.*, 628 F.3d 643, 650 (4th Cir. 2010); *Schoen v. Mountain Producers Corp.*, 170 F.2d 707, 714 (3d Cir. 1948); *Seay v. Kaplan*, 35 F.R.D. 118 (S.D. Iowa 1964); *Hadlich v. Am. Mail Line*, 82 F. Supp. 562, 563 (N.D. Cal. 1949).

Even jurisdictional changes wrought by new laws affect only paradigmatically secondary conduct. The Supreme Court has held that statutes that merely affect jurisdiction "regulate the secondary conduct of litigation and not the underlying primary conduct of the parties"—they "affect only *where* a suit may be brought, not *whether* it may be brought at all." *Hughes Aircraft Co. v. U.S. ex rel. Schumer*, 520 U.S. 939, 951 (1997). Precedent again supports the rule that jurisdictional changes apply retroactively when those changes do not affect primary conduct. *See Hallowell v. Commons*, 239 U.S. 506, 508 (1916); *Bruner v. United States*, 343 U.S. 112, 116-17 (1952); *Landgraf*, 511 U.S. at 274.

Time and time again—whether procedure, venue, or jurisdiction—the Supreme Court applies the same rule: legislation that affects only secondary conduct applies retroactively.

### c.   The Venue Act affects only secondary conduct.

Here, the Venue Act plainly affects only secondary conduct. In *Landgraf*, the Court held that a statute would affect "primary conduct" if it (1) "impair[ed] rights a party possessed when [it] [had] acted," (2) "increase[d] [its] liability for past conduct," or (3) "impose[d] new duties with respect to transactions already completed." 511 U.S. at 280; *see also* Response at 8-9 (adopting this definition). The Venue Act does none of these three things: it merely changes the venue in which the State Plaintiffs' case will be heard (for pretrial purposes). And, try as it might, Google points to no instance where retroactive application of the Venue Act would affect its primary conduct.

Rather than argue that the Venue Act affects primary conduct, Google instead advances straw man arguments. Most notably, Google needlessly calls into question what would come of Judge Castel's many rulings, even though the law is well-settled that those rulings remain law of the case.[1] *See In re Food Lion, Inc., Fair Labor Standards Act Effective Scheduling Litig.*, 73 F.3d 528, 531 (4th Cir. 1996) ("'[I] would be improper to permit a transferor judge to overturn orders of a transferee judge[.]'") (quoting Weigle, S.A., *The Judicial Panel on Multidistrict Litigation, Transferor Courts and Transferee Courts*, 78 F.R.D. 575, 577 (1977)); *Multidistrict Litigation Manual*, § 10.5 David F. Herr (2022) ("The decisions made by the transferee court are considered "'law of the case.'"). But either way, the Venue Act certainly will not "impair rights [Google] possessed when [it] acted, increase [its] liability for past conduct, or impose new duties with respect to transactions already completed." *Landgraf*, 511 U.S. at 280.

Every case Google cites in its Response illustrates how different venue is from retroactive application of substantive laws. In comparison to a simple change of venue, each of Google's cited cases unequivocally *did* involve primary conduct. *See I.N.S v. St. Cyr*, 533 U.S. 289, 315 (2001) ("The Court of Appeals, relying primarily on the analysis in our opinion in *Landgraf*[], held, contrary to the INS's arguments, that . . . the statute imposes an impermissible retroactive effect on aliens who, in reliance on the possibility of [a waiver of deportation] relief, pleaded guilty to aggravated felonies. We agree."); *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988) (holding that the Secretary of Health and Human Services could not, under a newly passed statute, exercise rulemaking authority to promulgate Medicare cost limits that are retroactive, noting that "[t]he power to require

---

[1]        In its response, Google also references that this MDL is one of two antitrust MDLs involving state attorneys general, the other being *In re Generic Pharmaceuticals Pricing Antitrust Litig.*, No. 16-md-2724 (E.D. Pa.) Response at 13 n.2. Whether the state attorneys general in *In re Generic Pharmaceuticals* decide to seek remand based on the Venue Act is beyond the purview of the State Plaintiffs' motion in this case.

readjustments for the past is drastic."); *Lindh v. Murphy*, 521 U.S. 320, 327 (1997) ("If [the new habeas law] were merely procedural in a strict sense (say, setting deadlines for filing and disposition), the natural expectation would be that it would apply to pending cases. But [the new law] does more, for in its revisions of prior law to change standards of proof and persuasion in a way favorable to a State, the statute goes beyond 'mere' procedure to affect substantive entitlement to relief.") (internal citations omitted). Because the Venue Act affects only secondary conduct—not deportation rights, *St. Cyr*, 533 U.S. at 315, prior transactions, *Bowen*, 488 U.S. at 208, or burdens of proof, *Lindh*, 521 U.S. at 327—it applies to pending cases under *Landgraf* absent clear congressional intent to the contrary.

II.    **None of Google's counterarguments are persuasive.**

Unable to point to any past "primary conduct" affected by the Venue Act, Google makes three misplaced counterarguments.

a.   **The State Plaintiffs did not unduly delay in bringing this motion.**

Google makes much of the fact that the States brought this motion two months after Congress passed the Venue Act. *See, e.g.*, Response at 1. In doing so, Google seems to imply that the States should have filed a motion the second the Act became law.  But its critique confuses the reality of democratic governance: the States here are not 17 parties unified under one totalitarian decisionmaker—they are 17 sovereign states, each of which represents millions of citizens. This motion raised important questions, and those important questions required deliberation across these 17 sovereigns. Google's critique therefore runs headfirst into two realities: (1) deliberations had to take place across 17 sovereigns, and (2) plaintiffs have every right to pursue their case at every turn, including while those internal deliberations took place (and even while this motion is pending).

7

And candidly, those deliberations were complicated by the fact that the transferee judge, Judge Castel, has done a remarkable job moving this complicated MDL forward. Notwithstanding Judge Castel's stewardship over the State Plaintiffs' case, the State Plaintiffs desire to exercise their right to return to their original forum.

### b. That the State Plaintiffs' case has already been transferred doesn't change that the Venue Act requires remand.

Google next emphasizes that the States' case has already been transferred, arguing that "[t]o the extent . . . the Venue Act can be interpreted as creating a procedural rule, the 'relevant activity' governed by that rule has already occurred." Response at 15. This misstates the law and the facts.

On the law, the best case, again, is *National City Lines*, 337 U.S. at 80-82. If Google's rule were right, the "relevant activity" for section 1404 would be when a motion for transfer were *initially* filed—but the Supreme Court ruled that transfer was *not* available at first, but *became* available after the enactment of section 1404. This case is exactly the same. Consolidation *was* available when this panel first centralized all cases in New York, but remand *became* available after the Venue Act was enacted. Recent precedent cited in the motion confirms this commonsense result. *See* Motion at 9 (citing *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach.* 523 U.S. 26 (1998)). In *Lexecon*, the Supreme Court interpreted the MDL statute to require the Panel to remand an action to the transferor court once the transferee court's authority over the case ended. 523 U.S. at 36-40. The Court held that § 1407(a) placed an affirmative obligation on the Panel to remand the action, even though (as here) the transferee court had not first issued a suggestion of remand. *Id.* at 36-37.

On the facts, it is not accurate that "the 'relevant activity' governed by" the Venue Act has fully concluded. To the contrary, the "relevant activity" at issue is "the entirety of the States' lawsuit." Congress wanted to strip the JPML, and transferee courts, of *all authority* over state antitrust lawsuits,

8

from the very start of the case to the very end of the case. For example, the MDL statute gives the transferee court authority to "conduct[] pretrial depositions[.]" 28 U.S.C. 1407(b). Yet pretrial depositions have yet to even begin in the States' case. It is logically inconsistent for Google to say that the Venue Act *would* have prevented the transfer of the States' case under the MDL statute, had the Venue Act been passed before that transfer, but that the same Act does not *now* prevent Judge Castel from overseeing depositions that have yet to even begin. Indeed, the text of the Venue Act is unequivocal: it does not say that "the *transfer portion* of the MDL statute shall not apply to any action"—it says that "[n]othing in th[e] [MDL statute] shall apply to any action[.]" *See* Consolidated Appropriations Act, *supra* at 2.

It would be one thing if the States' case had fully concluded, a judgment had been rendered, and *then* Congress passed the Venue Act. In that circumstance, the States could not move under the Venue Act to have their case reheard entirely—that would be analogous to asking that "'[a] new rule of evidence governing expert testimony'" apply after the "'testimony [had] already [been] taken.'" Response at 14 (quoting *Landgraf*, 511 U.S. at 291 (Scalia, J., concurring in the judgments)). But here, the lawsuit is in its infancy. Judgment is years away. The MDL statute should not continue to apply, at *any* point, to the States' lawsuit.

### c. Google's efficiency arguments misunderstand Congress's purpose in passing the Venue Act.

Finally, Google argues that this Panel should decline to order remand as a matter of discretion. Its argument boils down to efficiency. It notes that "[t]he Panel centralized State Plaintiffs' action because it recognized the substantial overlap with private plaintiffs' actions," Response at 17, that the transferee court "established a structure for the efficient management of [multiple] cases," *id.* at 18, and that the transferee court "even planned the entire discovery process based off when

9

Google complied with" one of his orders, *id.* True or not, these arguments are beside the point. Congress was fully aware that MDLs have numerous benefits, but they passed the Venue Act regardless. Why? Because Congress knew that MDLs proceed slower than individual actions. Congress concluded that, despite the benefits that an MDL might provide, those benefits were outweighed by the delay states face in being consolidated with other parties. *See* Ex. 1 Letter from Senators Klobuchar, Buck, Lee, and Cicilline at 2 & 3 (noting that "prompt resolution of state enforcement actions is required to 'secur[e] relief' for state citizens '*as quickly as possible.*'") (emphasis added). Indeed, the Eastern District of Virginia recently agreed when it rejected Google's attempt to transfer a case brought against it by the Department of Justice. *See United States v. Google LLC,* 2023 WL 2486605, at *5 (Mar. 14, 2023, E.D. Va. 2023) (noting that, in passing the MDL statute, "Congress prioritized concerns about delay of government antitrust suits above the goals of efficiency and judicial economy" and that "[t]he recent expansion of the exclusion to antitrust actions brought by states further supports the conclusion that Congress's intent was to prioritize efficient and expeditious adjudication of government antitrust enforcement actions and minimize delay.").

Here, it makes sense for the Panel to remand. Doing so fulfills Congress's intent in passing the Venue Act. It also prevents the potential for parallel state lawsuits, if some states choose to file a new lawsuit in the Eastern District of Texas, while other states remain in the Southern District of New York. The cleanest route is the same route that Congress intended: remand, so that the States can bring their lawsuit in the forum they originally selected.

## CONCLUSION

Under the Venue Act, the States' case is no longer subject to centralized pretrial proceedings in the Southern District of New York. The States respectfully request that the Panel remand their lawsuit to the Eastern District of Texas.

10

March 29, 2023                                              Respectfully submitted,

/s/ W. Mark Lanier                                 /s/ Ashley Keller
W. Mark Lanier                                     Ashley Keller
New York Bar No.: 4327284                          ack@kellerpostman.com
Mark.Lanier@LanierLawFirm.com                      Jason A. Zweig
Alex J. Brown                                      New York Bar No.: 2960326
New York Bar No.: 4593604                          jaz@kellerpostman.com
Alex.Brown@LanierLawFirm.com                       150 N. Riverside Plaza, Suite 4100
Zeke DeRose III                                    Chicago, Illinois 60606
Zeke.DeRose@LanierLawFirm.com                      (312) 741-5220
Tower 56
126 East 56th Street, 6th Floor                    Zina Bash
New York, NY 10022                                 zina.bash@kellerpostman.com
(212) 421-2800                                     111 Congress Avenue, Suite 500
**THE LANIER LAW FIRM, PLLC**                      Austin, TX 78701
                                                   (512) 690-0990

                                                   Daniel Strunk
                                                   daniel.strunk@kellerpostman.com
                                                   Noah S. Heinz
                                                   noah.heinz@kellerpostman.com
                                                   1100 Vermont Avenue, N.W., 12th Floor
                                                   Washington, DC 20005
                                                   (202) 918-1123
                                                   **KELLER POSTMAN LLC**

*Attorneys for Plaintiff States of Texas, Idaho, Indiana, Louisiana (The Lanier Law Firm only), Mississippi,
North Dakota, South Carolina, and South Dakota*

FOR PLAINTIFF STATE OF TEXAS:

KEN PAXTON
Attorney General

*/s/ Shawn E. Cowles*
Brent Webster, First Assistant Attorney
General of Texas
Brent.Webster@oag.texas.gov
Grant Dorfman, Deputy First Assistant
Attorney General
Grant.Dorfman@oag.texas.gov
Aaron Reitz, Deputy Attorney General for
Legal Strategy
Aaron.Reitz@oag.texas.gov
Shawn E. Cowles, Deputy Attorney
General for Civil Litigation
Shawn.Cowles@oag.texas.gov

**Office of the Attorney General of Texas**
P.O. Box 12548
Austin, TX 78711-2548
(512) 936-1674

*Attorneys for Plaintiff State of Texas*

James R. Lloyd, Chief,
Antitrust Division
James.Lloyd@oag.texas.gov
Trevor Young, Deputy Chief,
Antitrust Division
Trevor.Young@oag.texas.gov

FOR PLAINTIFF STATE OF ALASKA:


TREG TAYLOR
Attorney General


By : /s/ Christopher A. Robison
Jeff Pickett
Senior Assistant Attorney General, Special Litigation Section
Christopher A. Robison
Senior Assistant Attorney General, Special Litigation Section
jeff.pickett@alaska.gov
chris.robison@alaska.gov

*Attorney for Plaintiff State of Alaska*

FOR PLAINTIFF STATE OF ARKANSAS:

TIM GRIFFIN
ATTORNEY GENERAL

By: _____
AMANDA J. WENTZ
Ark. Bar No. 2021066
Assistant Attorney General
Office of the Arkansas Attorney General
323 Center Street, Suite 200
Little Rock, AR 72201
(501) 682-1178
Amanda.Wentz@ArkansasAG.gov

*Attorney for Plaintiff State of Arkansas*

FOR PLAINTIFF STATE OF FLORIDA:

ASHLEY MOODY, Attorney General

*/s/ Lizabeth A. Brady*
LIZABETH A. BRADY, DIRECTOR, Antitrust Division
FL Bar No. 457991
LEE ISTRAIL, Assistant Attorney General
CHRISTOPHER KNIGHT, Assistant Attorney General
ANDREW BUTLER, Assistant Attorney General

Office of the Attorney General, State of Florida
PL-01 The Capitol
Tallahassee, Florida 32399
Phone: 850-414-3300
Email: Liz.Brady@myfloridalegal.com

Office of the Attorney General, State of Florida
PL-01 The Capitol
Tallahassee, Florida 32399
Phone: 850-414-3300
Email: scott.palmer@myfloridalegal.com

*Attorneys for Plaintiff State of Florida*

FOR PLAINTIFF STATE OF IDAHO:

RAÚL R. LABRADOR
ATTORNEY GENERAL

*/s/ John K. Olson*
John K. Olson, Acting Division Chief,
Consumer Protection Division
Office of the Attorney General
954 W. Jefferson Street, 2nd Floor
P.O. Box 83720
Boise, Idaho 83720-0010
Telephone: (208) 334-2424
john.olson@ag.idaho.gov

*Attorneys for Plaintiff State of Idaho*

FOR PLAINTIFF STATE OF INDIANA:

THEODORE E. ROKITA
Attorney General

The Office of the Indiana Attorney General

By: _____

Scott Barnhart
Chief Counsel and Director of Consumer Protection
Indiana Atty. No. 25474-82
Indiana Government Center South – 5th Fl. 302
W. Washington Street
Indianapolis, IN 46204-2770
Phone: (317) 232-6309
Fax: (317) 232-7979
Email: scott.barnhart@atg.in.gov


_____

Matthew Michaloski
Deputy Attorney General
Indiana Atty. No. 35313-49
Indiana Government Center South – 5th Fl. 302
W. Washington Street
Indianapolis, IN 46204-2770
Phone: (317) 234-1479
Fax: (317) 232-7979
Email: matthew.michaloski@atg.in.gov

*Attorneys for Plaintiff State of Indiana*

FOR PLAINTIFF COMMONWEALTH OF KENTUCKY:

DANIEL CAMERON
Attorney General

J. Christian Lewis
Executive Director of Consumer Protection

Christian.Lewis@ky.gov
Philip R. Heleringer, Deputy Director of Consumer Protection
Philip.Heleringer@ky.gov
Jonathan E. Farmer, Assistant Attorney General
Jonathan.Farmer@ky.gov
Office of the Attorney General
Commonwealth of Kentucky
1024 Capital Center Drive, Suite 200
Frankfort, Kentucky 40601
Tel: 502-696-5300

*Attorneys for Commonwealth of Kentucky*

FOR PLAINTIFF STATE OF LOUISIANA:

HON. JEFF LANDRY
ATTORNEY GENERAL, STATE OF LOUISIANA
Michael Dupree
Christopher J. Alderman
1885 N. 3rd Street
Baton Rouge, LA 70802

s/ James R. Dugan, II
James R. Dugan, II (*pro hac vice*)
TerriAnne Benedetto (*pro hac vice*)
The Dugan Law Firm
365 Canal Street
One Canal Place, Suite
1000 New Orleans, LA
70130  PH:  (504) 648-0180
FX:  (504) 649-0181
EM:  jdugan@dugan-lawfirm.com
tbenedetto@dugan-lawfirm.com

James Williams
CHEHARDY SHERMAN WILLIAM, LLP
Galleria Boulevard, Suite 1100
Metairie, LA 70001
PH:      (504) 833-5600
FX:      (504) 833-8080
EM:      jmw@chehardy.com

*Attorneys for the State of Louisiana*

FOR PLAINTIFF STATE OF MISSISSIPPI:

LYNN FITCH, ATTORNEY GENERAL
STATE OF MISSISSIPPI

By:        _/s/ Hart Martin_
Hart Martin
Consumer Protection Division Mississippi
Attorney General's Office Post Office Box 220
Jackson, Mississippi 39205
Telephone: 601-359-4223
Fax: 601-359-4231
Hart.martin@ago.ms.gov

_Attorney for Plaintiff State of Mississippi_

FOR PLAINTIFF STATE OF MISSOURI:

ANDREW BAILEY
Attorney
General

*/s/ Stephen M. Hoeplinger*
Stephen.Hoeplinger@ago.mo.gov
Missouri Attorney General's Office
815 Olive St.
Suite 200
St. Louis, MO 63101
Tel: 314-340-7849

*Attorneys for Plaintiff State of Missouri*

FOR PLAINTIFF STATE OF MONTANA:

AUSTIN KNUDSEN
Montana Attorney General

*/s/ Anna Schneider*
Anna Schneider
Montana Attorney General's Office
P.O. Box 200151
Helena, MT 59620-0151
Phone: (406) 444-4500
Fax: (406) 442-1894
Anna.Schneider@mt.gov

*/s/ Charles J. Cooper*
Charles J. Cooper
ccooper@cooperkirk.com
David H. Thompson
dthompson@cooperkirk.com
Brian W. Barnes
bbarnes@cooperkirk.com
Harold S. Reeves
hreeves@cooperkirk.com
COOPER & KIRK PLLC
1523 New Hampshire Avenue, NW
Washington DC 20036
Phone: (202) 220-9620
Fax: (202) 220-9601

*Attorneys for Plaintiff State of Montana*

FOR PLAINTIFF STATE OF NEVADA:

AARON D. FORD
Attorney General
ERNEST D.
FIGUEROA
Consumer Advocate


*/s/ Michelle C. Newman*
Michelle C. Newman, Senior Deputy
Attorney General
mnewman@ag.nv.gov
Lucas J. Tucker (NV Bar No. 10252)
Senior Deputy Attorney General
LTucker@ag.nv.gov
Office of the Nevada Attorney General
100 N. Carson St.
Carson City, Nevada 89701
Tel: (775) 684-1100

*Attorneys for Plaintiff State of Nevada*

FOR PLAINTIFF STATE OF NORTH DAKOTA:


STATE OF NORTH DAKOTA

Drew H. Wrigley
Attorney General


By:        */s/ Elin S. Alm*
Parrell D. Grossman, ND ID 04684 Elin S.
Alm, ND ID 05924
Assistant Attorneys General
Consumer Protection & Antitrust Division
Office of Attorney General of North Dakota
1720 Burlington Drive, Suite C
Bismarck, ND 58503-7736
(701) 328-5570
(701) 328-5568 (fax)
pgrossman@nd.gov ealm@nd.gov

*Attorneys for Plaintiff State of North Dakota*

FOR PLAINTIFF COMMONWEALTH OF PUERTO RICO:

*/s/ Domingo Emanuelli-Hernández*
Domingo Emanuelli-
Hernández Attorney General
Thaizza Rodríguez Pagán
Assistant Attorney General
PR Bar No. 17177
P.O. Box 9020192
San Juan, Puerto Rico 00902-0192
Tel: (787) 721-2900, ext. 1201, 1204
trodriguez@justicia.pr.gov

Kyle G. Bates
HAUSFELD LLP
600 Montgomery Street, Suite 3200
San Francisco, CA 94111

*Attorneys for Plaintiff Commonwealth of Puerto Rico*

FOR PLAINTIFF STATE OF SOUTH CAROLINA:

ALAN WILSON
Attorney General


*/s/ Mary Frances Jowers*
Mary Frances Jowers
Assistant Deputy Attorney General
Rebecca M. Hartner (S.C. Bar No. 101302)
Assistant Attorney General
W. Jeffrey Young
Chief Deputy Attorney General
C. Havird Jones, Jr.
Senior Assistant Deputy Attorney General
South Carolina Attorney General's Office
P.O. Box 11549
Columbia, South Carolina 29211-1549
Phone: 803-734-3996
Email: mfjowers@scag.gov

Charlie Condon
Charlie Condon Law Firm, LLC
880 Johnnie Dodds Blvd, Suite 1
Mount Pleasant, SC 29464
Phone: 843-884-8146
Email: charlie@charliecondon.com

James R. Dugan, II (*pro hac vice*)
The Dugan Law Firm
365 Canal Street
One Canal Place, Suite 1000
New Orleans, LA 70130
Phone: (504) 648-0180
Email: jdugan@dugan-lawfirm.com

*Attorneys for Plaintiff State of South Carolina*

FOR PLAINTIFF STATE OF SOUTH DAKOTA:

MARTY JACKLEY
Attorney General


*/s/ Jonathan Van Patten*
Jonathan Van Patten
Assistant Attorney General
Office of the Attorney General
1302 E. Highway 14, Suite 1
Pierre, SD 57501
Tel: 605-773-3215
jonathan.vanpatten@state.sd.us

*Attorney for Plaintiff State of South Dakota*

27

FOR PLAINTIFF STATE OF UTAH:

Sean D. Reyes
Utah Attorney General

*/s/ Marie W.L. Martin*
Marie W.L. Martin
Assistant Attorney General
160 East 300 South, 5th Floor
P.O. Box 140874
Salt Lake City, UT 84114-0872
mwmartin@agutah.gov
Telephone: (801) 538-9600

*Attorneys for Plaintiff State of Utah and as counsel for the Utah Division of Consumer Protection*

# Exhibit 1

# Congress of the United States
## Washington, DC 20515

July 28, 2021

The Honorable Roslynn R. Mauskopf
Director
Administrative Office of the United States Courts
Washington, D.C. 20544

Dear Judge Mauskopf:

We write in response to your July 19, 2021 letter expressing concerns about H.R. 3460, the "State Antitrust Enforcement Venue Act of 2021," which was reported out of the House Committee on the Judiciary on June 24, 2021. We would like to take this opportunity to explain the importance of this legislation and its Senate companion, S. 1787, as well as to address the concerns raised in your letter.

Our country faces substantial problems with monopolization. Many industries are highly consolidated, and we need vigorous antitrust enforcement to protect consumers, workers, and competition. Congress and the federal government rely on state attorneys general to address this crisis by aiding in the enforcement of our federal antitrust laws. These bills would make a real difference, permitting state attorneys general to address anticompetitive conduct unencumbered by the need to coordinate—and possibly consolidate—with slower-moving private actions.

Congress is vested with the authority to define the power of the Courts to hear certain cases and determine where those cases should be heard. While the Constitution sets the outer limits of the federal Judiciary's jurisdiction, it is Congress that decides its exact metes and bounds,[1] including where and whether venue is proper.[2]

The *State Antitrust Enforcement Venue Act* reaffirms the importance of state antitrust enforcement. State attorneys general have critical opportunities to protect consumers from the problems that result from monopolies and oligopolies. The Judicial Panel on Multidistrict Litigation's ("JPML") powers should not be used to hinder the efforts of state attorneys general

---

[1] *Cary v. Curtis*, 44 U.S. 236, 245 (1845) ("[T]he judicial power of the United States, although it has its origin in the Constitution, is . . . dependent for its distribution and organization, and for the modes of its exercise, entirely upon the action of Congress . . . ."); *Turner v. Bank of N. Am.*, 4 U.S. 8 (1799) (Crase, J.) ("The notion has frequently been entertained, that the federal courts derive their judicial power immediately from the constitution; but the political truth is that the disposal of the judicial power (except in a few specified instances) belongs to congress. If congress has given the power to this court, we possess it, not otherwise.").

[2] *Atl. Marine. Constr. Co., Inc. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49, 56 (2013) ("The structure of the federal venue provisions confirms that they alone define whether venue exists in a given forum."); *Byers v. C.I.R.*, 740 F.3d 668, 676 (D.C. Cir. 2014) ("Congress determines the jurisdiction and venue of this court and we have no authority to declare otherwise.").

to enforce the antitrust statutes passed to protect American consumers. From the inception of the JPML, Congress has been aware of the potential for "substantial[] delay[]" that centralization for multidistrict litigation could entail.[3] That is why, at the behest of the Department of Justice, Congress included Section 1407(g), prohibiting the transfer of actions brought by the United States "under the antitrust laws" for "coordinated or consolidated pretrial proceedings" with similar private actions.[4] Congress did so mindful that keeping federal antitrust actions separate from multidistrict proceedings might "occasionally burden defendants" by requiring them "to answer similar questions posed both by the Government and by private parties."[5] But permitting federal antitrust actions to remain independent was "justified by the importance to the public of securing relief in antitrust cases as quickly as possible."[6]

The purpose of exempting federal antitrust enforcement actions from inclusion in multidistrict litigation applies equally to state actions. Like federal antitrust enforcers, state enforcement actions serve interests beyond those served by private actions.[7] H.R. 3460 and S. 1787 aim to give federal and state enforcers relative parity—neither federal nor state governments should be hamstrung in their efforts to halt antitrust violations or protect their citizens from anticompetitive conduct.

Your letter suggests that Congress created the JPML to be a "permanent solution" to the "problem" of too much antitrust enforcement.[8] We disagree. There is no over-enforcement problem. In fact, the statute permitting states to bring *parens patriae* actions for damages was passed as a response to *under*-enforcement of the antitrust laws.[9] In passing the *Hart-Scott-Rodino Act*, Congress noted that antitrust violations often injure "millions of consumers, each in relatively small amounts,"[10] and as a result, the "antitrust violations which ha[d] the broadest and, often, the most direct impact on consumers" were "likely to escape the penalty of the loss of illegally-obtained profits."[11] Congress specifically recognized the role of state attorneys general in protecting consumers against antitrust violations and noted that it had "fill[ed] this gap by providing the consumer an advocate in the enforcement process—his [or her] State attorney general."[12]

---

[3] H.R. Rep. No. 90-1130, at 7 (1968) (letter from then-Deputy Attorney General Ramsey Clark).

[4] There is, of course, a narrow exception to this prohibition for actions brought by the United States in its proprietary capacity. 28 U.S.C. § 1407(g).

[5] *Id.* at 8.

[6] *Id.*

[7] *See, e.g. Georgia v. Pennsylvania R. Co.*, 324 U.S. 439, 450–51 (1945) (explaining that antitrust violations are "matters of grave public concern" in which States have "an interest apart from that of particular individuals who may be affected").

[8] Letter of July 19, 2021, from Director Mauskopf ("AOUSC Letter"), pg. 1.

[9] *See* Hart-Scott-Rodino Antitrust Improvements Act of 1976, Pub. L. No. 94-435, § 301, 90 Stat. 1383 (amending the Clayton Act to permit "[a]ny attorney general of a State [to] bring a civil action" under the antitrust laws "in the name of such State . . . to secure monetary relief" for its citizens").

[10] H.R. Rep. No. 94-499 at 4 (1975). Those "injuries [are] too small to" justify "bear[ing] the burden of complex litigation." *Id.* at 4.

[11] *Id.*

[12] *Id.*

Your letter further suggests that the Act "could adversely affect the interests of the States."[13] However, 52 state and territory attorneys general recently called on Congress to enact this law and put states "on equal footing with federal enforcers in deciding where, when, and how to prosecute cases."[14]

Your letter also raises concerns about the potential inconvenience faced by defendants under the legislation. While we understand these considerations, we are more concerned about the prejudice caused to state citizens when redress for their injuries is unduly delayed. As noted, Congress recognizes that requiring defendants to potentially "answer similar questions posed both by the Government and by private parties" may "occasionally burden" them. [15] But that burden is justified when, as now, prompt resolution of state enforcement actions is required to "secur[e] relief" for state citizens "as quickly as possible."[16]

Finally, we note that some of the arguments made in your letter closely mirror the arguments made by Google in its response to the antitrust complaints of Texas and other states.[17] In fact, your letter quotes almost verbatim from Google's response brief without appropriate citation and largely adopts Google's positions in the Texas case in that both express a primary concern with the potential conflicting rulings on substantive issues, such as market definition; [18] make the same argument that Congress only amended Section 1407 once and that state attorneys general antitrust actions have always been subject to consolidation;[19] state the purposes of centralization in similar terms;[20] express concern about "multiple representation" and address use of outside counsel; [21] and argue that centralization is necessary to coordinate the apportionment of damages.[22]

---

[13] AOUSC Letter at pg. 4.

[14] Letter of June 18, 2021, from the National Association of Attorneys General in support of the State Antitrust Enforcement Venue Act of 2021; H.R. 3460, S. 1787.

[15] H.R. Rep. No. 90-1130 at 8.

[16] *Id.*

[17] For example, in its response, Google argued: "To the extent that some cases require specialized proceedings (such as class certification), the transferee court can craft a protocol that '1) allows pretrial proceedings with respect to any non-common issues to proceed concurrently with pretrial proceedings on common issues; and 2) ensures that pretrial proceedings will be conducted in a streamlined manner leading to the just and expeditious resolution of all actions to the overall benefit of the parties.' *In re: Countrywide Fin. Corp. Mortg. Mktg. & Sales Practices Litig.*, 582 F. Supp. 2d at 1375 (internal citation omitted); see also *In re Generic Pharm. Pricing Antitrust Litig.*, MDL Docket No. 2724 at *2 ('To the extent the State Action presents unique factual and legal issues, the transferee judge has the discretion to address those issues through the use of appropriate pretrial devices.'). Google Mem. Supp. Mot. To Transfer ("Google Mem.") at 15-16, *In re Digital Advertising Antitrust Litig.*, MDL No. 3010, ECF No. 1-1 (U.S. J.P.M.L.). Compare with your letter: "To the extent there are actions with different legal issues or concerns, the MDL judge can formulate a pretrial program that allows pretrial proceedings with respect to any non-common issues to proceed concurrently with pretrial proceedings on common issues (for example, by creating a separate discovery or motion track for certain actions). This ensures that pretrial proceedings will be conducted in a streamlined manner leading to a just and expeditious resolution of all actions to the overall benefit of the parties." AOUSC Letter pg. 3.

[18] AOUSC Letter pg. 3; Google Mem. at 13, Google Reply Supp. Mot. To Transfer ("Google Reply") at 7, *In re Digital Advertising Antitrust Litig.*, MDL No. 3010, ECF No. 89 (U.S. J.P.M.L.).

[19] AOUSC letter pg. 2; Google Reply at 16.

[20] AOUSC letter pgs. 2-3; Google Mem. at 9.

[21] AOUSC letter pg. 4; Google Mem. at 14, 18.

[22] AOUSC letter pg. 4; Google Reply at 12-13.

It strikes us as unusual, if not inappropriate, for the Administrative Office of the United States Courts to adopt the arguments of a party in active litigation before the federal courts in a policy letter to Congress. But whether the arguments in your letter came from Google's court filings or somewhere else, we remain skeptical that those arguments represent the correct public policy balance regarding the rights of state attorneys general in the federal courts and before the JPML.

We thank you for your attention and interest in this matter.

Sincerely,

Amy Klobuchar
Chairwoman
Senate Judiciary Subcommittee on
Competition Policy, Antitrust &
Consumer Rights

Mike Lee
Ranking Member
Senate Judiciary Subcommittee on
Competition Policy, Antitrust &
Consumer Rights

Ken Buck
Ranking Member
House Judiciary Subcommittee on
Antitrust, Commercial &
Administrative Law

David N. Cicilline
Chair
House Judiciary Subcommittee on
Antitrust, Commercial &
Administrative Law

cc:     United States Judicial Panel on Multidistrict Litigation
        Honorable Steny Hoyer
        Honorable Kevin McCarthy
        Honorable Jerrold Nadler
        Honorable Richard Durbin

## BEFORE THE UNITED STATES JUDICIAL PANEL
## ON MULTIDISTRICT LITIGATION

IN RE: GOOGLE DIGITIAL ADVERTISING
ANTITRUST LITIGATION

MDL No. 3010

ORAL ARGUMENT REQUESTED

*This Document Relates To:*

STATE OF TEXAS, et. al.,

*Plaintiffs,*

-against-

GOOGLE LLC,

*Defendant.*

No. 1:21-cv-06841 (PKC) (S.D.N.Y.)

No. 4:20-cv-957 (SDJ) (E.D. Tex.)

### PROOF OF SERVICE

In compliance with Rule 4.1(a) of the Rules of Procedure for the United States Judicial Panel

on Multidistrict Litigation, I hereby certify that copies of the foregoing Reply in Further Support of

the State Plaintiffs' Motion for Remand to the Eastern District of Texas were filed electronically with

the Clerk of the JPML via ECF on March 29, 2023 and were served via ECF to all Counsel of Record

and/or in the manner indicated below:

**Clerk of the Courts (via U.S. Mail)**

Daniel Patrick Moynihan
United States Courthouse
Attn: Clerk of the Court
500 Pearl Street
New York, New York, 10007

United States Courthouse
Sherman Division
Attn: Clerk of the Court
7940 Preston Road Room 101
Plano, Texas 75024

Dated: March 29, 2023

Respectfully submitted,

/s/ W. Mark Lanier
W. Mark Lanier
New York Bar No.: 4327284
Mark.Lanier@LanierLawFirm.com
Alex J. Brown
New York Bar No.: 4593604
Alex.Brown@LanierLawFirm.com
Zeke DeRose III
Zeke.DeRose@LanierLawFirm.com
Tower 56
126 East 56th Street, 6th Floor
New York, NY 10022
(212) 421-2800
**THE LANIER LAW FIRM, PLLC**

/s/ Ashley Keller
Ashley Keller
ack@kellerpostman.com
Jason A. Zweig
New York Bar No.: 2960326
jaz@kellerpostman.com
150 N. Riverside Plaza, Suite 4100
Chicago, Illinois 60606
(312) 741-5220

Zina Bash
zina.bash@kellerpostman.com
111 Congress Avenue, Suite 500
Austin, TX 78701
(512) 690-0990

Daniel Strunk
daniel.strunk@kellerpostman.com
Noah S. Heinz
noah.heinz@kellerpostman.com
1100 Vermont Avenue, N.W., 12th Floor
Washington, DC 20005
(202) 918-1123
**KELLER POSTMAN LLC**

*Attorneys for Plaintiff States of Texas, Idaho, Indiana, Louisiana (The Lanier Law Firm only), Mississippi, North Dakota, South Carolina, and South Dakota*

*And on behalf of all Plaintiff States*

2