EXHIBIT D

**Discovery Steering Committee**
**In re Google Digital Advertising Antitrust Litigation**

October 20, 2023

**VIA ECF**
Hon. P. Kevin Castel
Daniel Patrick Moynihan
United States Courthouse
500 Pearl St.
New York, NY 10007-1312

*In re Google Digital Advertising Antitrust Litigation*
*No. 1:21-md-03010 (PKC)*

Dear Judge Castel:

Pursuant to the Court's September 26, 2023, Order (ECF No. 634), the Discovery Steering Committee writes on behalf of all MDL Plaintiffs to submit remaining disputes with Google regarding search terms and custodians relevant to Plaintiffs' First Set of Requests for Production. Because the parties have not resolved these disputes, Plaintiffs respectfully request that the Court order a prompt briefing schedule on the disputed issues and schedule a conference to resolve remaining disputes. No conference is scheduled at this time.

The Discovery Steering Committee repeatedly sought information from Google concerning its claim of burden in producing responsive documents out of the set of documents that would result from running the search terms that remain in dispute. Such information would allow Plaintiffs to narrow their search term and custodian requests while still ensuring they receive documentary evidence in Google's possession responsive to Plaintiffs' discovery requests. Google has either not provided the requested information or delayed in providing it throughout meet-and-confer correspondence and discussions. On those occasions when Google provided such information, Plaintiffs refined their search terms and custodian requests to narrow areas of dispute. But those occasions have been the exception: Google has made reaching a resolution ever more difficult by making progressively more limiting proposals rather than coming anywhere close to meeting Plaintiffs halfway. This, despite the massive increase in responsive documents since these negotiations began occasioned by Google's inexplicable failure to search most of its own document repositories. Regrettably, Google has used its own document production deficiencies—including failing to have reviewed over 16 million documents before certifying compliance with this Court's substantial completion requirement—as the excuse to delay negotiations and to reduce, rather than increase, the number of documents Google is willing to produce in response to the MDL search terms that remain in dispute.

While Plaintiffs' position is set forth below and their understanding of Google's latest proposals, Plaintiffs believe the Court would benefit from a more fulsome description of why the search terms that remain in Plaintiffs' position—down to 10 terms from what had been 55 and, as recently as last week, 26—are appropriate and why Google's proposals are not only going backward but would allow it to withhold plainly relevant documents. Further, Plaintiffs have

1

narrowed their requests for additional custodians as well, with three additional custodians applicable for all Plaintiffs, and 19 identified by three individual Plaintiffs—Daily Mail, Gannett, and Inform.

Plaintiffs are prepared to appear before the Court to argue their positions on these issues and respectfully suggest that fuller briefing in advance of such a conference will assist the Court in resolving these search term and custodian issues relating to Plaintiffs' initial document requests.

## **Negotiations to Date**

Defendants' proposal is convoluted and cumbersome. In an August 7, 2023, letter Google offered to resolve the then-remaining 55 disputed search terms by having Plaintiffs prioritize the disputed search terms, after which Google would run search terms in the prioritized order across 119 custodians' documents until those terms yielded 100,000 documents "post-deduplication." Google stated that the search terms that resulted in 100,000 post-deduplication documents from the originally agreed-upon 119 custodians would then be run against additional custodians' documents (which by agreement had grown by 39 to 158) and against centrally stored locations. Google expressly noted in its August 7 letter that it would follow this approach "*notwithstanding that those searches are likely to bring the total review population to well over 100,000 documents*". (Emphasis added.)

To avoid inevitable disputes over deduplication issues and iterative rounds of search term selections to reach a certain quota as Google proposed, Plaintiffs on August 10 made a simple streamlined proposal under which Google would run fewer than half of the disputed search terms—26 of 55—and Plaintiffs would drop the rest, based on pre-deduplication hit count data Google provided—Google has steadfastly refused to provide unique hit counts on Plaintiffs' search terms.

Following Plaintiffs' August 10 proposal, Google put negotiations on hold due to its failure to collect and review nearly 16.1 million documents (what it referred to as its "ingestion site issue") and refused to engage in any meaningful discussions with the MDL Plaintiffs regarding the search terms and custodians.

Consistent with the Court's September 26 Order, MDL Plaintiffs provided Google with "advance notice of the specific issues" relating to search terms and custodians on September 29, a full week prior to the date required by the Court. Because Google had not yet responded to Plaintiffs' August 10 proposal on search terms or their September 1 proposal on custodians, Plaintiffs reiterated their positions from those two proposals.

Despite requests to engage in meet-and-confer discussions on any of October 6, 9, 10 or 11, Google begged off from doing so and instead, on October 11, wrote that Google was standing on its 100,000 post-deduplication document figure to resolve search terms and its proposed 10 additional custodians across all Plaintiffs. Google's position had not changed even after the number of documents against which the search terms were being tested had drastically increased on account of its document production failure, such that 100,000 hits now covered a

far smaller number of search terms than it did when the parties were previously negotiating these issues and Plaintiffs made their last proposal in August.

As became clear in our meet-and-confer discussion on October 13, however, far from even staying the same (at 100,000 post-deduplication documents), Google's proposal in fact went backwards. Instead of agreeing to select search terms that would yield 100,000 post-deduplication documents by running search terms against 119 custodians to get to the 100,000 quota and then running those same search terms across all additional custodians—including the 39 already-agreed custodians plus any additional custodians (at least 10)—and centrally stored locations, Google's October 11 position was that the limit of 100,000 post-deduplication documents be taken from all 158 agreed custodians and on all centrally stored locations. Because following that course would significantly *reduce* the overall production that would result from Google's proposal, it did the opposite of narrow the gap between the parties. Only when Plaintiffs complained in writing that Google had backtracked did it reluctantly increase its 100,000 figure to 125,000, and even that proposal was not made until midnight last night.

Even with that token addition, moreover, Google's proposal remains both complicated and fraught with uncertainty. Google has refused to provide Plaintiffs the amount of duplication between (a) the documents it has already produced and (b) the hits identified in connection with the search terms remaining in dispute.[1] By Plaintiffs' accounting, a very substantial portion of the supposedly "de-duplicated" documents that Google has produced in this litigation—both before and after its production failures—are either exact duplicates or near duplicates with little discernible differences. Indeed, Plaintiffs believe that more than half of the documents Google has produced to date appear to be either near duplicates or non-inclusive emails (meaning emails whose content is wholly contained in a later-in-time email in the same thread). As a result, Plaintiffs have continued to negotiate to narrow their search terms without applying artificial quotas derived from Google's unrealistically high hit count data.

The parties met and conferred on October 13, 17, and 19. Plaintiffs requested and finally received some limited information to further tailor their search terms. Following the October 19 meet and confer, MDL Plaintiffs sent Google a revised proposal which further cut their search terms from 26 to 13, including dropping two of the three highest-yielding search terms. This reduced the raw (pre-deduplication) hit counts for the disputed search terms to approximately one-third of the hits from all 26 terms.

Regarding custodians, Plaintiffs requested three additional common custodians for all plaintiffs, four additional custodians for Daily Mail, five for Gannett, and nine for Inform. Further, in a significant concession, Plaintiffs identified 47 search terms that Google would not have to run against those Plaintiff-specific custodians.

At midnight last night, without addressing Plaintiffs' proposal, Google again moved its proposal backwards. In response to Plaintiffs' proposal that the parties agree on a number of hits

---

[1] According to Google's EDVA reports, however, 16.1 million documents that hit on search terms from the previously unprocessed ingestion sites resulted in 6.4 million documents following deduplication. In other words, approximately 60% of the impacted documents were duplicates.

on search terms *before* deduplication that Google would be willing to process for production, Google proposed 250,000. Based on the ratio of post-deduplication to pre-deduplication documents in the EDVA, this would result in only 100,000 post-deduplication documents—down from the 125,000 Google agreed to after Plaintiffs complained that its October 11 proposal had gone backwards.

The parties met and conferred again twice today, negotiated in good faith, and agreed they are not able to resolve their differences today. Plaintiffs are prepared to move the Court regarding the proposal set forth below. Plaintiffs understand that Google will submit Defendants' position to the Court in their separate submission today.

### Plaintiffs' Position

#### Search Terms

Plaintiffs have narrowed their search terms down to 10 of the 26 that were contained in their August 7 proposal: search string numbers 29, 60, 80, 94, 107, 165, 177, 179, 191, and 200.[2] These terms yield approximately 498,000 hits *before* deduplication. A table of these search terms is being provided to chambers (but not being filed) as Attachment A and shows the number of pre-deduplication hits for each term.[3]

Of the approximately 500,000 pre-deduplication hits, approximately 430,000 derive from four search terms (Nos. 94, 107, 191, and 200) that request documents containing the names of Plaintiffs, including class representatives, and their affiliates. The six remaining search terms yield a small number of hits and are narrowly tailored to issues in the MDL, such as the network effects of Google's products (No. 29), Google's use of search ranking to punish publishers that deal with rival exchanges (No. 60), the effect of Dynamic Allocation on direct sales (No. 80), Google's auction experiments (No. 165), and Google's throttling of advertisers and publishers (Nos. 177, 179).

#### Custodians

Plaintiffs have sought to narrow the number of additional custodians to the greatest extent possible and propose adding 22 custodians to the agreed-upon 158: (a) three custodians applicable for all Plaintiffs; (b) four custodians for Daily Mail; (c) five custodians for Gannett (two of whom are listed in Google's initial disclosures); and (d) 10 custodians for Inform (one of whom is listed in Google's initial disclosures). In keeping with our understanding of prior Court directives, the names of the custodians are not filed herewith but are provided to chambers as Attachment B.

---

[2] MDL Plaintiffs and Google have referred to the search terms throughout negotiations with reference to the number given to the search term in the spreadsheets used in the negotiations.

[3] Because Defendants have designated as "Confidential" certain documents upon which this Exhibit is based, Plaintiffs have, in an abundance of caution, not filed this Exhibit.

The additional custodians are proper subjects for discovery because they are likely to have non-duplicative responsive information reasonably necessary for MDL Plaintiffs' claims. For example, the Daily Mail and Gannett custodians were Daily Mail's and Gannett's primary points of contact (*i.e.*, "account managers") at Google. Among other interactions, Daily Mail and Gannett negotiated their ad serving, exchange, and other contracts with these Google employees; raised their complaints to them; and corresponded with them regarding Google's products. These individuals are the Google employees who knew and discussed Daily Mail's and Gannett's specific facts. They are also the individuals whom Daily Mail and Google allege made misrepresentations regarding the products and services at issue in this litigation.

Much the same is true of the custodians proposed by Inform—which is uniquely situated in that it had Google contacts on both the publishing *and* the advertising sides as well as technical account managers. The custodians sought by Inform assisted with the technical aspects of Inform's video players, the integration of Google's SDK, and met with Inform to gather information about the company and its clients as a competitor of YouTube and Google's DV360. The requested custodians do not include all of Inform's primary points of contact at Google, but instead represent a pared-down set; Inform respectfully reserves the right to seek additional custodians and their Inform-related documents in conjunction with additional, approved requests for production, as appropriate and proportionate to the needs of the case.

Finally, Plaintiffs propose that in exchange for the addition of these 22 custodians, Google may forgo running 47 of the approximately 200 search terms for the 19 custodians specific to Daily Mail, Gannett, and Inform.

\*\*\*

To assist the Court in resolving the parties' disputes summarized above, Plaintiffs respectfully seek leave to file a brief by October 26 in support of their position and propose that Google respond by November 1. Plaintiffs also respectfully request that the Court schedule a conference once this briefing is completed.[4]

Respectfully submitted,

/s/ Jordan Elias
Jordan Elias
Girard Sharp LLP

/s/ Philip Korologos
Philip Korologos
Boies Schiller Flexner LLP

/s/ Zeke DeRose
Zeke DeRose
The Lanier Law Firm, PC

/s/ Noah Heinz
Noah Heinz
Keller Postman LLC

/s/ Serina Vash
Serina Vash
Herman Jones LLP

Copies to all counsel via ECF.

---

[4] Plaintiff States note that its case has been ordered to be remanded to EDTX. Depending on the date of remand, the Plaintiff States may not participate in the proposed briefing as contemplated by this letter.