<pre>
 1                 IN THE UNITED STATES DISTRICT COURT
                   FOR THE EASTERN DISTRICT OF TEXAS
 2                         SHERMAN DIVISION

 3   THE STATE OF TEXAS, et al,        §
                                       §
 4                                     §
                  Plaintiffs,          §
 5                                     §      Case No.:
        vs.                            §      4:20-cv-00957-SDJ
 6                                     §
     GOOGLE, LLC,                      §
 7                                     §
                  Defendant.           §
 8

 9                        STATUS CONFERENCE
                      TRANSCRIPT OF PROCEEDINGS
10             BEFORE THE HONORABLE SEAN D. JORDAN
                   UNITED STATES DISTRICT JUDGE
11
               Monday, November 20, 2023; 9:34 a.m.
12                         Plano, Texas

13
     APPEARANCES OF COUNSEL:
14   (Continued on page 2.)

15   FOR THE PLAINTIFF STATES:

16   W. Mark Lanier
     THE LANIER LAW FIRM
17   6810 FM 1960 West
     P. O. Box 691448
18   Houston, Texas 77269-1448

19   Ashley C. Keller
     KELLER POSTMAN, LLC
20   150 N. Riverside Plaza, Suite 4270
     Chicago, Illinois 60606

21

22       ********************************************

23               GAYLE WEAR, RPR, CRR
             Federal Official Court Reporter
24                 7940 Preston Road
                 Plano, Texas 75024
25           gayle_wear@txed.uscourts.gov
</pre>

```
 1    FOR THE PLAINTIFF STATES:
      (Continued from page 1.)
 2
      Joseph M. Graham, Jr.
 3    NORTON ROSE FULBRIGHT US LLP - Houston
      1301 McKinney Suite 5100
 4    Houston, Texas 77010-3095

 5    James Lloyd
      Trevor Young
 6    STATE OF TEXAS, OFFICE OF THE ATTORNEY GENERAL
      ANTITRUST DIVISION
 7    300 W. 15th Street
      Austin, Texas 78701
 8

 9    FOR THE DEFENDANT:

10    R. Paul Yetter
      Mollie Bracewell
11    YETTER COLEMAN, LLP - Houston
      811 Main Street, Suite 4100
12    Houston, Texas 77002

13    Eric Mahr
      FRESHFIELDS BRUCKHAUS DERINGER US LLP
14    700 13th Street NW
      Washington, DC 20005
15

16    ALSO PRESENT:

17        Roger P. Alford
          UNIVERSITY OF NOTRE DAME
18        3119 Eck Hall of Law
          Notre Dame, Indiana 46556
19

20                              *    *    *

21

22

23

24

25
```

| | |
|---|---|
| 1 | November 20, 2023                                    9:34 a.m. |

2                           ---o0o---

3                      P R O C E E D I N G S

4                           ---o0o---

5           THE COURT:  All right.  Good morning.  Please be

6   seated.

7           All right.  So we're here on cause number

8   4:20-cv-957, State of Texas, et al versus Google, LLC.  Let's

9   go ahead and have appearances of counsel.  We can start with

10  the plaintiff states, and maybe you can let me know who will

11  be doing your presentation.

12          MR. LANIER:  All right, Your Honor.  Mark Lanier

13  here from Lanier Law Firm.  I will be doing probably most of

14  the speaking unless I really start messing up, in which event

15  it will be the other counsel.

16          If I may introduce counsel table, is that --

17          THE COURT:  Please do.

18          MR. LANIER:  Ashley Keller with Keller Postman is

19  in and co-lead counsel.  We also have Trevor Young who is

20  with us.  We have Roger Alford who's down here from Notre

21  Dame.  We have James Lloyd who is with the AG's office.  And

22  we have Joe Graham who is with Norton Rose Fulbright.

23          THE COURT:  All right.  Thank you, Mr. Lanier.

24          And Google, Mr. Yetter, if you want to go ahead and

25  make your appearance and identify your co-counsel.

1          MR. YETTER:  Yes, Your Honor.  Good to see you.

2    Paul Yetter on behalf of the defendant, Google; and my

3    co-counsel, Eric Mahr from Freshfields; and my colleague,

4    Mollie Bracewell from my firm, will be here today.  Given the

5    interplay between the MDL and this case, Mr. Mahr is going to

6    take -- I believe present most of our position today.

7          THE COURT:  All right.  Thank you, counsel, and

8    welcome back to the Eastern District of Texas.

9          I want to let you know that as we have in the past,

10   we have a media line that the media is able to listen in on

11   our hearing.

12         I'll repeat for counsel that we do tend to get the

13   best reception, so to speak, from the podium, that big podium

14   there.  But if you prefer to use a lapel mic or the table

15   mic, you can do so.  Just make sure that green light's on;

16   that's the lapel mic.

17         So we're here for a status conference on the case.

18   And just to sort of orient us, I'm going to briefly go

19   through -- very briefly -- a bit of the history of this case

20   and then talk a little bit about what I understand has

21   happened while the case has been in the Southern District of

22   New York.

23         So although I know the case history really goes

24   back to 2019 and the investigation from the States, I'm going

25   to start with when it came to this court.  So this lawsuit,

1    as you all will recall, was filed in this court back in

2    December of 2020.  It proceeded in this court until August of

3    2021, at which time the JPML made the decision that this case

4    should be included in an MDL that was -- this is MDL, I'm

5    just going to call it, 3010 in the Southern District of New

6    York, and the case was transferred around mid-August 2021.

7    So for approximately the next two years, the case proceeded

8    in the Southern District of New York, together with the other

9    actions consolidated in the MDL.

10           As you all are also aware, during this time frame,

11   Congress enacted legislation, the State Antitrust Enforcement

12   Act of 2021, enacted in late 2022, and that amended Section

13   1407(g) such that it exempted state antitrust enforcement

14   actions from being able to be consolidated into MDLs.

15           In early 2023, around February, the States moved

16   for the case to be remanded to this court.  There was a

17   briefing and argument about whether or not this legislation

18   was retroactive.  Ultimately, the JPML made its decision in

19   June that the case did need to be sent back to this court.

20   What followed was some mandamus practice in the Second

21   Circuit, which was resolved recently, ultimately, and did not

22   alter the JPML's decision.

23           So in the very recent past, this case has now

24   completely come back to this court, and so here we are for a

25   status conference.  We have filings from both sides about the

 1    status of the case -- they were helpful, I appreciate them --

 2    including the attachments from both sides that included

 3    proposed schedules, and we can talk about that today, as well

 4    as some other information about the background of the case.

 5            So before I hear from counsel, I want to talk a

 6    little bit more about what I understand, broadly speaking,

 7    has happened during the two years the case was up in the

 8    S.D.N.Y. with Judge Castel.

 9            So I understand that at the outset, the decision

10    was made that the Court would first evaluate -- I'm talking

11    about the S.D.N.Y., would first evaluate the States' federal

12    antitrust claims and test them against motion to dismiss

13    practice from Google.  And that arc went until September of

14    2022, at which time Judge Castel issued a ruling that

15    basically granted in part and denied in part Google's

16    dismissal motions and I would say, you know, basically pruned

17    the federal antitrust claims.

18            Following that, the states have submitted a third

19    and now, as I understand, as of May 2023, a fourth amended

20    complaint.  I understand that Judge Castel allowed the fourth

21    amended complaint really only to alter I think some of the

22    State DTPA claims; and other than that, it probably, you

23    know, was to look like the third amended complaint.

24            From a discovery standpoint -- and you all can

25    correct me if I get any of this wrong.  So from a discovery

1    standpoint, I understand that following the Court's ruling on

2    the dismissal motions, Judge Castel had initial disclosures

3    due in January 2023, about mid-January it looks like.  And

4    then I know there were orders about when discovery was

5    supposed to go out.  But what I understand he had -- again,

6    this is for the MDL -- I understand they had a fact discovery

7    deadline to be completed by end of June 2024, an expert

8    discovery to-be-complete deadline of end of December,

9    essentially, 2024.  And that Judge Castel also issued some

10   orders which are talked about in your status reports; he had

11   an ESI order, a confidentiality order, and an expert

12   stipulation order, all three of which the parties talk about

13   in their status reports, and it will be one of the action

14   items that I have for you all that we're going to cover

15   today.

16          And I'm also aware of an order in June of 2023 that

17   was coordinating discovery between basically the MDL, you

18   know, as relevant here, the plaintiff states, and the case

19   pending in the Eastern District of Virginia, the DOJ case

20   that addresses similar issues.  So, generally speaking, these

21   are some of the benchmarks for me of what's happened.

22          And so the agenda I have today for us, and you all

23   tell me if you want to add to it, is to discuss where we're

24   at in the case right now generally speaking and looking at

25   scheduling going forward.

1          Number two, I have some immediate action items for

2    the parties in the near term.

3          And related to two is three, which is that we are

4    going to wind up -- I want to set a discovery conference in

5    this case, and sooner rather than later, and I will follow up

6    with you on what that is, because I can see from the status

7    reports from the parties is that we have some discovery

8    issues that it makes sense for this Court to figure out

9    sooner rather than later.  And indeed, I can hear from

10   counsel on this, I do think that those discovery issues may

11   bear somewhat on the scheduling order the Court's going to

12   enter.  So it's another reason why looking at those issues

13   sooner rather than later is going to help this Court put in

14   place a scheduling order that makes sense.

15          I will tell you now, at the outset, and then you

16   can -- you all can discuss this, but I'm going to give you

17   the action items that I have for you.  So we know already

18   from the Court's order issued leading up to this hearing that

19   tomorrow you have a deadline of submitting a joint report

20   designating either the record on remand or otherwise

21   describing all filings in the MDL matter 3010 and the

22   individual S.D.N.Y. matter, which was under 21-cv-6841, that

23   should be made a part of this Court's docket in this cause

24   number.  That is something we need to, you know, put in place

25   as soon as we can, so we know what all filings are now going

1    to be part of this record and that the parties and the Court

2    can work off of.

3          Related to that is going to be action item two,

4    which is both parties have referenced the orders I just

5    talked about from Judge Castel -- the ESI order, the

6    confidentiality order, the expert stipulation -- and what I

7    noted was that the parties generally believe those orders

8    should be adopted and continue in this court but they

9    might -- you might be recommending some modifications to

10   them.

11         So what I'm going to look for from the parties --

12   and you can tell me if this is too short a time frame -- is a

13   joint proposal, if you can do a joint proposal by December

14   1st, as to whether those orders should be adopted or whether

15   they should be modified and entered with some modification in

16   this case.  They're, obviously, very important orders

17   concerning how discovery is going to go forward in this case.

18         And so I would like to get the parties' thoughts on

19   that and try and get those in place sooner rather than later.

20   You can tell me if December 1st is difficult.  But it seems

21   that these are items you've already been thinking about.

22         And then third action item, and we'll come back to

23   this at the end, is going to be, as I just mentioned, a

24   discovery conference in December.  I will tell you all we

25   have a trial starting on December 4, but what I will plan to

1    do is find a way to work this hearing in, even though we will

2    be in trial.  Right now, we're scheduled for trial for the

3    week of December 4 and 11, same case.  The trial may not go

4    both weeks.  And either way, I'm thinking if the parties'

5    schedules permit, we can potentially -- I would like to see

6    if we can't get that discovery conference in that time frame.

7         And what I anticipate is, as you would expect, both

8    sides would have time to make submissions before that

9    conference identifying your issues and positions.  And, you

10   know, you did a good job on these status reports of, you

11   know, flagging these for me, *Here's things we see about*

12   *discovery*.  There are issues the States have raised with

13   Google's discovery.  There are issues Google has raised with

14   the States' discovery.  And I will want to talk about all

15   those at the discovery conference.

16        And we will also discuss the suggestion that there

17   may need to be, you know, a special master.  You know, I will

18   tell you I sort of convert that to more likely a magistrate

19   judge being involved, but I'm willing to consider whatever

20   the parties think ought to be considered in moving as

21   efficiently as possible.

22        You know, the privilege logs, understandably, given

23   the volume of documents, are very large and, as you've both

24   noted, they're going to get larger.  So if you're dealing

25   with already a quarter of a million, you know, documents

1    identified, that's a lot.

2            And so that's my agenda for today.  I want to start

3    by allowing both sides, each side, to kind of talk about your

4    view of where we are.  I will tell you that what I'll do is

5    follow up with you.  You can roll into the schedule you've

6    suggested.  So when you talk about where we are, feel free to

7    make your argument on the schedule that you've suggested to

8    the Court.

9            And then I may have -- I'll tell you I have a

10   couple of specific follow-up items that just have to do with

11   certain things I'm not entirely clear on on how they were

12   left in the S.D.N.Y., so I'll just ask you.

13           So Mr. Lanier, we can start with you, and if you'd

14   like to give your synopsis of where we are and talk a bit

15   about why the States' schedule is the one that makes sense.

16           MR. LANIER:  That'd be great, Your Honor.  Thank

17   you very much.  And thank you, obviously, for all of the

18   thorough work you and your staff have put into this.  It's

19   very apparent and it's very appreciated, I'm sure, by all

20   parties.

21           It's good to be back in God's country to have --

22   nothing pejorative meant about New York there, but it's good

23   to be back in Texas and good to be back in the Eastern

24   District.  So thank you for that.

25           Your Honor, you have couched the issues that were

1   on our list to deal with today.  At your allowance, I will

2   put this into a little bit of perspective from our side of

3   the V.

4          We did not file this case haphazardly.  As you

5   pointed out, there had already been pretrial work.  Our venue

6   was selected with care because we wanted to make sure we were

7   able to move expeditiously, as well as with good precision

8   and good judicial work.  And so we filed here in December of

9   2020, as you pointed out, thinking that we were in a place

10  where we could move on that track.  You set us up to do that.

11         In 2020 is also when the *Epic* antitrust case was

12  filed, the one that has just concluded settling on the

13  courthouse steps as trial was beginning.

14         We thought we were postured well, and then we hit a

15  bump in the road and that was the MDL bump.  We beat, for

16  example, the DOJ to filing by over two years.  The DOJ filed

17  in their rocket docket of choice out on the east coast, and

18  it looks like they're requesting a trial setting.  The judge

19  has set a hearing in March of 2024, likely a trial setting

20  that the DOJ wants in May.  We internally have done the math

21  and suspect it may move to later in the summer or early fall.

22  I would be surprised if it goes in May.  But that's a case

23  that we beat in filing by over two years that we would love

24  to beat to trial.

25         So many of the issues are the same, and yet the DOJ

1    couches its relief in a way different than we do.  And we

2    believe that we should be trying this case first.  We believe

3    it should be tried in your court.  We believe that the delay

4    of the MDL, we believe the additional subsequent months'

5    delay with the mandamus that we would term to be, in the

6    history of MDLs, quite a stretch and unusual mandamus effort,

7    we believe that we should be in a posture to pick back up and

8    move quickly.  We believe what Judge Castel did in New York

9    has been yeoman's work.  And I do want the record to reflect

10   a deep appreciation and respect for him for the way he was

11   moving the case, and will probably still be moving that case

12   which is still before him.  But we are in a position where we

13   need to go to trial sooner than later.

14          Just looking at the revenue that is continuing to

15   accumulate, we believe at the expense of the citizens of the

16   State of Texas and the other 16 states that I speak for -- 15

17   states and Puerto Rico -- you look just when we filed this,

18   the advertising revenue for Google in 2020 was $146 billion,

19   their advertising revenue in '22 jumps to 224 billion, and as

20   of third quarter 2023, they're up another 9 percent above

21   that.  We view that as actual damage to our clients as we

22   exist here on behalf of the State of Texas and these other

23   states.

24          So we have sat down and made a list of what are the

25   impediments to us moving to trial with rapidity.  The first

1    impediment is, of course, the Court's schedule.  And we

2    cannot vouch for that.  We're not privy to that.  We do know

3    that, by reputation and experience, you are one of the most

4    thorough courts that we've been in front of in terms of being

5    personally prepared for everything that comes down the pike.

6    And we know that does not happen overnight.  So we are

7    sensitive to the Court's schedule.  We just don't know what

8    it is, so we're speaking out of our schedule.

9            We know that one of the impediments is getting the

10   discovery done.  Mr. Graham, who is seated opposite me at the

11   head of counsel table on the jury side, is the head of

12   litigation at Norton Rose Fulbright.  In my crazy, rebellious

13   youth, I worked at Fulbright and Jaworski for the first five

14   and a half years out of law school, and still keep good ties

15   there.  And we have brought Fulbright in to help assist us in

16   the discovery prep of this case.

17           Fulbright is also lead counsel in two other Google

18   cases pending in Texas right now that are set for trial in

19   August of 2024 and December of 2024.  And they are -- have

20   been and continue to be an immense help to us in doing what

21   we need to do to get our discovery ready because they have

22   been able to help us with the document issues, they've been

23   able to help us with depositions, with experts, et cetera.

24   So we have worked internally to fortify ourselves for the

25   struggle of meeting any discovery deadline that we can

1  possibly have.

2         We do believe that a discovery master may be more

3  helpful than simply a magistrate because we have seen

4  evidence both in Virginia, in the MDL, and in the *Epic* case,

5  that there have been concerns either expressed by the judges

6  or experienced by the parties over what the Judge Donato has

7  called, in essence, a -- I've got his exact language here --

8  he calls it an ingrained systemic culture of suppression of

9  relevant evidence.  There are issues about the deleting of

10 chat dialogues that were used for substantive discussions

11 within the company.  There are issues with the company having

12 put lawyers on emails and missives that didn't need the

13 lawyers on them where it was, as one employee for Google put

14 it, a fake privilege.  There are issues that need to be

15 addressed.

16        And I'm not making those accusations.  I'm

17 referencing what other folks have made because it's my

18 responsibility as a lawyer to see to the fact that my

19 client's not disadvantaged by any such behavior if it turns

20 out to be as has been represented through the accounts that

21 we've gotten.

22        All to say, when we've got a privilege log of

23 250,000 documents, and that's just on the first million-plus

24 presented -- we don't have a privilege log on the 16 million

25 documents that were presented three months after Google said

1    they had substantially complied with the document

2    production -- we've had those 16 million since I believe

3    August, and maybe it's September, but we still don't have a

4    privilege log on those -- we think that it will be imperative

5    to have someone with a great deal of time on their hands and

6    experience to assist in the Court administering and examining

7    those privileges, whether you deem it to be a magistrate or a

8    master, or a combination of the two, whatever.  But we know

9    that discovery is an impediment.  We know that those aspects

10   of discovery are important.

11          As I listed my impediments, one of the things that

12   I had on my list was a request for this Court to give us an

13   early discovery hearing; it was on your list as well.  We

14   were hopeful internally that that might happen perhaps on

15   December 8th, but we will make any date work that works with

16   this Court because we believe that that is one that gives the

17   parties time to put together a very clear submission to the

18   Court that says, Here are discovery matters we agree on, here

19   are those we disagree on, plaintiff view, defendant view, so

20   that you've got a clear roadmap that allows you to navigate

21   as cleanly as possible and as efficiently as possible.

22          We do pledge to the Court that we will continue to

23   diligently try to integrate with the MDL court and Judge

24   Castel, and the DOJ court.  So, for example, so many of the

25   experts that we'll be using in this case, as Google, are

1    probably similar experts, if not the same experts with very

2    similar perspectives.  We would like to be in a position to

3    continue to get, and to begin getting, the expert reports as

4    they're being produced in the Eastern District of Virginia.

5           We would like to have an ability to continue that

6    judicial order of making sure we share discovery, so if the

7    DOJ gets a set of documents, we should get the same documents

8    in our litigation.  And that should be done expeditiously, we

9    believe.

10          THE COURT:  Mr. Lanier, can I stop you for a quick

11   question --

12          MR. LANIER:  Anything.

13          THE COURT:  -- along those lines.  Because you

14   talked about a continuation of the order regarding the

15   Eastern District of Virginia, and I'm assuming, of course,

16   you're referring to the discovery coordination order.

17          MR. LANIER:  Yes, sir.

18          THE COURT:  And maybe you can talk a little bit

19   more about that.  My understanding of that was there was a

20   designated time frame during which that coordinated discovery

21   was going to occur, and I'm probably not exact on this, but I

22   think it was between July and September 2023, something like

23   that.  And so I know we've been looking at the E.D.V.A.

24   docket, so I know that there's been some additional discovery

25   ongoing with E.D.V.A.  But maybe you can talk a little bit

 1   more about that order, and maybe put a little bit finer point

 2   on how, from the States' perspective, you would like to see

 3   that continue, because it's a very precise order.  And let me

 4   just also agree with your comments at the beginning of what

 5   an outstanding job that Judge Castel has done in moving the

 6   case forward.

 7          So, yeah, tell me a little bit more about that

 8   coordination order.

 9          MR. LANIER:  Your Honor, you've actually fleshed it

10   out.  That's exactly what the order says, and those were the

11   dates.  We believe that that should continue.  We should file

12   some type of either an agreement among the parties that we

13   can put into a letter to you, or an order to issue forth from

14   this Court.  But there is no reason for there not to be

15   coordination to the extent that it's providing opportunities

16   for joint depositions if there are such.  But at this point

17   in time, recognizing that fact discovery is closed in the

18   federal case, what we're looking at more realistically are

19   some of the expert issues and expert reports and things of

20   that nature.

21          We're just looking to increase the efficiency, and

22   it seems to me we ought to be able to agree to those types of

23   things with Google.  In the event we're not, or even if we

24   do, perhaps either an agreed order or an order from this

25   Court along the lines of what Judge Castel did, but extending

1    the time period, would be appropriate, it seems to us.

2         I'm near the end of what I wanted to say.  I do

3    know that the Court has referenced many of the rulings that

4    Judge Castel did, that he pruned the claims, to use your

5    terminology, which is good terminology, that we have since

6    amended for DTPA.  There's a host of discovery issues that

7    come with that.

8         I read, as the Court did, the five-page missive

9    prepared by Google.  And while I don't agree with all of its

10   characterizations, I think that's something that can be

11   ironed out as well before your discovery hearing.

12   Recognizing that the document requests that have been made

13   are going to be the same document search terms that have

14   already been allegedly used by Google, it's just going to

15   perhaps apply to a new set of custodians, but that's pretty

16   quick prep work in terms of getting the documents.

17        Now, I do know that Google has hired over a

18   thousand contract workers to go through these documents.  And

19   so I would think, with expedition, they should be able to do

20   that.  That's not quite as many people as Fulbright and

21   Jaworski or that Norton Rose has, but it's close.  That's a

22   facetious joke.

23        But, Your Honor, where we are on this is we just

24   want to be -- we would like to be at the head of the train

25   where we were initially when we started doing this work

1    because we think that it's important work that we would like

2    to be lead in, and we think this Court should be lead in it

3    as well.

4                So with that, I thank you, Your Honor, and that's

5    my view of the world.

6                THE COURT:  I have one more -- just one more

7    question for you before I hear from Mr. Mahr, and Mr. Mahr

8    may address this as well.  But as the case is transitioning

9    to this Court, one of the things that I'm looking at are just

10   what stay orders or any other kind of abate orders may have

11   been in place in the S.D.N.Y. regarding sort of the order in

12   which the case was proceeding.  So some of that is referenced

13   in the status reports in terms of from Google's perspective

14   when they could start taking depositions and things like

15   that.  But so I don't know if you can address what orders

16   were in effect along those lines at the time the case was

17   remanded.

18               MR. LANIER:  Your Honor, at this point, we believe

19   that the discovery should be wide open.  There was a delay in

20   the DTPA and discovery work to be done there, but we have

21   since filed now our request for production of documents.

22   Google is seeking documentation on that as well.  And we're

23   in full-blown discovery mode as far as we're concerned.

24               This is a case where you've got these resources I

25   referenced.  I think it's notable and it's nice to see

1    Mr. Yetter again.  He's not been active that we've seen in

2    the Southern District of New York, but I know he's been

3    active representing Google in other cases; and then, of

4    course, Mr. Mahr with Freshfields.  And Google's got a host

5    of lawyers to draw on.  We've seen Paul, Weiss; Wilson

6    Sonsini; Axinn; Morgan Lewis; Munger Tolles; Hogan Lovells,

7    and others representing them through these various matters.

8    So we think the manpower is there to do the discovery on

9    both -- on all issues, and we think that it's open at this

10   point on all issues.

11          THE COURT:  And Mr. Lanier, were there any other

12   motions, any kind of substantive motions or otherwise, that

13   were pending in the S.D.N.Y. at the time of remand?  I didn't

14   see any, but I want to make sure --

15          MR. LANIER:  No, there are not, Your Honor.  There

16   was no motion to dismiss against the DTPA-type claims, for

17   example.  We have no doubt that there would be motions for

18   summary judgment and expect the same would be filed, and so

19   those need to be incorporated into your schedule.  There were

20   no Daubert motions or anything like that filed yet.  And so I

21   think -- I think not.

22          THE COURT:  All right.  Thank you, Mr. Lanier.

23          MR. LANIER:  Thank you, Judge.

24          THE COURT:  All right.  So Mr. Mahr.

25          All right.  Let's hear from Google on where you

 1    think we are, what's happened, and maybe you can talk a

 2    little bit about the schedule Google's proposed to go

 3    forward.

 4              MR. MAHR:  Yes, Your Honor.  Good morning and

 5    thanks for the welcome back.  I feel as welcome here as in

 6    New York.  Being a Virginian, neither of those are my home,

 7    but both great places to practice law.

 8              To your first point where we are, and I think you

 9    alluded to this, I would just add a couple of things.  As you

10    pointed out, Judge Castel very consciously made the States'

11    antitrust claims the bellwether claims and the bellwether

12    complaint in that case.  He also very consciously stayed the

13    state law -- potentially the state law claims, and that means

14    there has been a stay of our ability to move to dismiss the

15    May 5th complaint, the fifth complaint, which has ballooned

16    in size since you last saw it, with respect to the DTPA

17    claims, and we would like the opportunity to do that.

18              There's also been a stay of our ability to depose

19    the plaintiffs.  And now that dissolved I believe at the end

20    of discovery in the E.D.V.A. for a large part of discovery,

21    that's been -- I believe has been stayed.

22              THE COURT:  I wasn't sure whether the E.D.V.A.

23    discovery deadline had moved or whether there were just

24    certain discrete discovery -- pieces of discovery that were

25    allowed to go on after the deadline happened.

```
 1              MR. MAHR:  Magistrate Judge Anderson was adamant
 2     that it was not moving.  The discovery ended except for --
 3     and we can get into the details of this internal discovery
 4     error that resulted in Google having to produce a massive
 5     amount of documents after the close of discovery, but it was
 6     only for that that discovery was open, and Google depositions
 7     that might have relied on those documents, which are going on
 8     now.
 9              THE COURT:  I know this is more for the discovery
10     conference, but I've read quite a bit about that, you know,
11     about what you just referenced, this, you know, this large
12     number of documents that you needed to go through that hadn't
13     been gone through.  But a question I have right at the moment
14     is, is that process still ongoing as to those documents or
15     has that process been completed as to those documents,
16     meaning Google's review of those?
17              MR. MAHR:  That process has been completed, and
18     that privilege log applies to those documents as well.  So it
19     is a large privilege log.  But when you ask for a massive
20     amount of documents, you're going to get a large privilege
21     log.
22              As far as your action items, the record on remand,
23     we sent that last week in the form of a joint proposal with
24     plaintiffs.  They're looking at it.  We ought to be able to
25     do that, as ordered, tomorrow.
```

1          ESI, confidentiality order, and expert stipulation,

2     we passed those to plaintiffs just over the weekend, so they

3     haven't had a chance to look at them, but I think your

4     December 1 proposal makes sense.  And based on our review of

5     them, I think there are cosmetic changes to make them

6     applicable in this court, but that's it.

7          As far as a discovery magistrate judge, we're open

8     to that, obviously, if the Court wishes.

9          I would say Mr. Lanier was referring to a lot of

10    discovery battles in a lot of other cases, but we've had one

11    privilege motion in this case so far before the E.D.V.A., and

12    Judge Anderson upheld our privilege claims in that.

13         Regardless of what is found in other cases to have

14    been a culture within the company, I am responsible and my

15    firm is responsible for reviewing all privilege to make sure

16    however it's labeled by the time it gets into this case,

17    it -- privilege documents -- properly withheld privilege

18    documents are withheld, and those that are marked privilege

19    but not properly privilege are produced.  And we have done

20    that.  A mammoth task, but I assure you we have done that and

21    we will continue to do that.

22         So to turn to our proposal.  Google's proposal is

23    built on two, really, key principles.  The first is we think

24    it's important to preserve the benefits of the coordination

25    that has already taken place and that is already taking place

1    in the MDL by continuing to follow the orders and the

2    schedule that Judge Castel very carefully put together for

3    fact discovery.  He worked hard to fashion a fact discovery

4    plan that served both -- first served all the parties in the

5    case, and there were multiple parties in that case.

6            But the second principle is to allow the parties

7    now to take advantage of the speed and efficiency of this

8    Court.  And we think we do that by returning to your

9    schedule, the schedule Your Honor thought through and

10   carefully devised when we were last here, and having that

11   schedule govern from the close of fact discovery forward.

12           We believe this approach balances the speed and

13   efficiency with coordination and fairness by relying on the

14   work of the two district judges who have overseen the case

15   and carefully considered these issues.  In other words, there

16   is nothing new to decide here.  We're in fact discovery,

17   we're halfway through it, and it's progressing.  And under

18   Judge Castel's schedule and orders, we don't think that

19   cutting that off and risking the benefits of that

20   coordination make sense.

21           However, when that fact discovery period is over,

22   we think we should return to your schedule.  There would be

23   an argument you could do the same with experts.  But we think

24   since expert discovery hasn't started, that we are ready to

25   move on your schedule at the end of the fact discovery here.

1            These two principles, preserving the benefits of

2     coordination and while at the same time taking advantage of

3     the speed and efficiency that this Court offers, we think are

4     kind of emblematic of a very reasonable, simple,

5     straightforward, bottoms-up approach where we're seeing what

6     actually needs to be done in the case.

7            What I hear from Mr. Lanier is that they want to

8     win a race with DOJ.  And we don't think that kind of

9     top-down I want to go first is the prudent way to go about

10    determining how to address the issues in this case.  There

11    are a massive number of DTPA claims from 17 states that have

12    become a big focus of the States' case, and that makes it a

13    lot different from the one pending in the E.D.V.A.

14           Judge Castel's orders.  One reason to preserve or

15    the reason to preserve the coordination that's taken place so

16    far is that I think both sides agree that Judge Castel's

17    orders regarding coordination have served the parties well.

18    And to date, the state plaintiffs have especially benefitted,

19    they've benefitted to the tune of 6 million documents from

20    150 custodians; 80 terabytes of data; 20 gigabytes of source

21    codes; all in response to 301 requests for production that

22    the state plaintiffs put together with the MDL plaintiffs.

23           I remember, in our previous hearing, Mr. Lanier

24    considering whether 50 RFPs would be enough and he said he

25    couldn't commit to that but would try to get close; there are

 1    301.  And Texas has just served another 101, as he mentioned.

 2    And that's just Texas.  Remarkably, there's still not

 3    coordination on the States' side.  And sometimes we get

 4    something that's just from Texas.  Sometimes we get something

 5    from all 17.  Sometimes it's from 15 of the 17.  But we have

 6    that massive amount of discovery to do.

 7            Plaintiffs also have benefitted from the

 8    coordination through being able to pool their resources with

 9    the private and class plaintiffs.  Judge Castel set up a

10    discovery steering committee of five lawyers, two of whom

11    were from the state plaintiffs.  They participated in weekly

12    meet-and-confers, including just last Friday; they are

13    continuing.  They have lawyers for the States participating

14    in these meet-and-confers.

15            They have also benefitted from the coordinated

16    schedule through the stay, as I mentioned before.  They

17    haven't had to respond to a motion to dismiss on the state

18    law claims, and that continues to be stayed, and they haven't

19    had to face party depositions yet.

20            As a result, remarkably, at least with respect to

21    the state law claims, we are still very much learning their

22    case.  In contrast to the six million documents that we

23    produced, we've got less than 15,000 from the 17 states, and

24    3 of them haven't produced a single document.  And I don't --

25    I, obviously, don't expect the States to have as many

1    documents as Google or anything close to it, but I think the

2    fact that some haven't even responded yet with documents is

3    remarkable.

4         I think more troubling is that after three years,

5    the States continue to be unable to respond to some

6    fundamental questions in interrogatories about their claim:

7    Who?  What?  How much?  We've asked them whom do you

8    represent as a parens patriae?  Is it consumers?

9    Advertisers?  Publishers?  Competitors?  Users?

10        We get the answer *All of the above*.  Can't tell us

11   anything more than that.  We hear things -- in May, Texas

12   says that some agencies use Google ad techs, but they haven't

13   yet told us which ones.  We get messages like some plaintiffs

14   will be dropping their damages claims, but we haven't been

15   told which ones.  And the identity of who they represent is

16   very important here because there are legal consequences to

17   the shoes in which they stand as parens patriae; for example,

18   indirect purchaser bars and issues like that.  Haven't gotten

19   any answer.

20        So we have this list of these claims, antitrust and

21   state claims, from 17 states, and this list of plaintiffs,

22   but never have they provided us with, well, on the antitrust

23   claims, we're representing these folks; and on the Texas DTPA

24   claims, these folks.  Because there are limitations, as you

25   know, under each DTPA as to what kind plaintiff is eligible.

1          When it comes to the what, what relief -- damages,

2    disgorgement, restitution, equitable relief, fines,

3    penalties -- the response is *We seek all appropriate relief*.

4    After three years, can't tell us under what statutes they're

5    seeking which relief, much less how much.  Federal Rule of

6    Civil Procedure 26(a)(1)(A)(iii) requires them to provide a

7    computation of each category of damages claimed.  We've got

8    nothing.

9          So a lot of benefits to the plaintiffs in this

10   discovery claim, but still lots to do.  And, you know, this

11   is less a complaint than pointing these out, because this is

12   how Judge Castel organized it.  Get the document discovery

13   first, get that all out; put the state law claims on the back

14   burner for now, focus on the antitrust claims.  But now that

15   we're back before this court, the state law claims come front

16   and center.

17         So we've got the motion to dismiss to the state law

18   claims.  We've got a motion to compel the States to respond

19   that we've been kind of holding onto until we're before Your

20   Honor rather than presenting it to Judge Castel.  We've got

21   the depositions versus the states and parties whom they seek

22   to represent on parens patriae.  And then we've got

23   responding to the 101 new RFPs.  So there's lots to do.

24         I think the last thing I would say is,

25   unfortunately, we don't think that this is one of those

 1    situations where the Court can kind of take the middle ground

 2    between two different proposals.  Our proposal again is based

 3    on the order of Judge Castel and the structure he set up for

 4    fact discovery, and we think interrupting that in the middle

 5    squanders the benefits of the coordination.  And, frankly, it

 6    hurts Google because we haven't had the opportunity to do

 7    discovery on the state law claims we need.

 8              And then, obviously, we pick up with your schedule

 9    after fact discovery closes.  And we think that you put a lot

10    of effort into it, it was a compromise between the two sides'

11    wishes then, and we think it's still appropriate now.

12              THE COURT:  All right.  Thank you, Mr. Mahr.  Let

13    me see if I have a question for you before you sit down.

14              No, I don't think I do.  Thank you.

15              MR. MAHR:  I had the benefit of hearing Mr. -- your

16    questions to Mr. Lanier and I tried to cover them.

17              THE COURT:  Right.  I think you did.

18              So Mr. Lanier, any followup you'd like to provide?

19              MR. LANIER:  Yes, please.

20              Just briefly, Your Honor.  Thank you.  First of

21    all, three things to cover -- four things to cover.  ESI

22    discovery, 12/1, we agree.  We can get through that.  We can

23    take care of that.  We got it back from them.  They're not

24    huge changes.  Easy to take care of.

25              Number two, he said his proposal is built on two

1    things, to preserve the MDL coordination with Judge Castel's

2    plans, and to take advantage of the speed in this court

3    afterwards.  Your Honor, with due respect, there's no need to

4    preserve the MDL coordination with Judge Castel's MDL

5    schedule.  His schedule was built not only on the parties,

6    but also built upon his Southern District of New York

7    schedule as well, when he had time for hearings, when he had

8    time to proceed on matters.

9         The idea of us coordinating with them is useful in

10   the sense if we're taking a deposition in one place, that

11   deposition can also be taken jointly, there's great

12   coordination there.  But tying us to his schedule is not

13   something that should be done.  And I dare say if he had

14   known about what was going to happen in the Eastern District

15   of Virginia when he had produced his schedule already, he

16   might have modified his schedule from the very beginning.  I

17   don't know that.  But tying us to his MDL schedule that he

18   set out years ago is not something that's productive, in my

19   mind.

20        Third, Google complains that they don't know the

21   who, what, and how much.  Parens patriae.  Yes, they knew the

22   who.  We claim to represent all of them.  All of the above.

23   That's -- he said it.

24        What.  There are only five states that seek

25   restitution.  There are only two states that seek damages if

1   you count Puerto Rico as a state, which I guess I shouldn't.

2   So there's only one state and the District of Puerto Rico

3   that seek damages.

4           As to the amounts of those damages, that's

5   information that Google has, by and large, that we're trying

6   to get from them.  They know the numbers.  They know how much

7   they've sold.  They know the number of ad auctions there have

8   been.  They know that type of data.  That comes, by and

9   large, from them.

10          And then the last point that I would make is the

11  argument that Mr. Mahr advanced that we -- that the Court

12  can't take a middle ground between our schedules because it

13  will basically tax Google and make Google be inefficient with

14  doing something in the MDL that might have to be duplicated

15  off of something they've done here.  That's not the first

16  time that argument's been waged.  That argument was even

17  waged in the legislative fights over the law that was passed

18  to get us back here.

19          And in those legislative fights, the legislators

20  themselves wrote a very clear letter that said, The -- here,

21  for example -- State of Texas is right to have their citizens

22  and their courts hear their disputed matters that concern the

23  State of Texas, outweighs any potential inefficiencies to

24  Google.  Basically, Google's big enough to handle it.  The

25  legislator themselves took that into account in drafting and

```
 1    passing this legislation that's got us back here.

 2              So thank you, Your Honor.

 3              THE COURT:  All right.  Thank you, Mr. Lanier.

 4              Mr. Mahr, is there anything else you wanted to say?

 5    I'm going to give you an opportunity.

 6              MR. MAHR:  Very quickly, Your Honor.

 7              The coordination benefits not only Google, but also

 8    the third parties that have to be deposed, that potentially

 9    have to be deposed twice, including former employees, former

10    employees of competitors, customers.  There's a whole lot

11    that happens when you pull apart the coordination halfway

12    through this fact discovery schedule.

13              THE COURT:  All right.  Thank you, Mr. Mahr.

14              So as I mentioned at the outset, I do think that

15    the Court's decisions on scheduling are going to be affected,

16    obviously, by what we're looking at when we do the discovery

17    conference and looking at the discovery issues.  I will say

18    that in deciding what kind of schedule we're going to have

19    going forward, you know, Mr. Lanier had mentioned, well,

20    really three items:  The Court's schedule, completing

21    discovery, and then the third is in that context, you know,

22    what comes from the discovery hearing.

23              And Mr. Mahr has mentioned dual themes, from

24    Google's standpoint, of taking advantage of the coordination

25    that was provided in the proceedings in the Southern District
```

1    of New York, and then also the efficiencies saying early of

2    this Court and its docket.

3              So what I'll say on the Court's schedule is this

4    case was originally filed, as you know, in late 2020.  My

5    view of the Court's schedule is that we're going to move this

6    case as efficiently as we can, and we will make this Court's

7    schedule work to accommodate the needs of this case.  Given

8    its posture, given its history, the Court is going to

9    accommodate its schedule to the efficient resolution of this

10   case.  But I want to be clear that when I say "efficient

11   resolution," that means that we need to know and we need to

12   make sure that we have a sensible schedule for discovery,

13   that we have a sensible schedule for experts and dispositive

14   motion practice and everything else.

15             I don't want to sacrifice handling the case in a

16   thorough and proper manner for, let's say, an over emphasis

17   on speed.  We want it to be done efficiently.  We want it to

18   be done fairly.  The Court's going to accommodate its

19   schedule to what makes sense and what's fair and efficient to

20   both sides in this case.

21             But I will tell you that as I look at it, these

22   discovery issues and the schedule going forward of dealing

23   with those issues, and the parties being able to engage in

24   the motion practice they need to engage in, and the Court

25   having the time to decide those motions, that's what's going

1    to drive the Court's schedule, and we will otherwise make the

2    schedule work to accommodate this case.

3            So I want to just recap the next things you're

4    going to see from this Court that we've discussed today.  So

5    I do plan to issue an order that asks the parties to put

6    forward their joint proposal regarding the ESI order,

7    confidentiality order, and expert stipulation by December 1.

8            I will also set a discovery conference in the --

9    within the first two weeks of December.  And, Mr. Mahr, you

10   know, let me -- you can respond from the table.  Mr. Lanier

11   had identified December 8 as a date that was available for

12   the plaintiff states.  So I don't know, Mr. Yetter or

13   Mr. Mahr, is December 8 a date that works for Google?

14           MR. YETTER:  Your Honor, I was going to mention

15   this to you.  I have a trial that week as well, December the

16   4th.  It's only a one-week trial.  So the next week, second

17   week of your trial, would be much preferred for us.  Starting

18   the 11th of December would be much better.  And I haven't

19   asked Mr. Mahr, but that's -- I just wanted to flag that for

20   my schedule.

21           THE COURT:  Well, what we'll do is I'll have my

22   judicial assistant follow up with the parties likely today.

23   We'll identify the best date and we'll get it -- we'll get

24   that discovery conference set.

25           And I take it that tomorrow still works for the

 1    parties with regard to designation of the record?  I see a

 2    thumbs up from Mr. Lanier.

 3            Mr. Mahr --

 4            MR. MAHR:  Yes, Your Honor.

 5            THE COURT:  -- already said the same.

 6            So those are the next -- those are what's coming up

 7    in this case.  I do want to thank counsel for the submissions

 8    you've already made, which were very helpful, including the

 9    attachments.  And if there's any other information that the

10    Court's going to need as we're transitioning the case, I

11    don't want you to hesitate to file additional submissions.

12            I will let you know that I anticipate having both

13    parties submit briefing prior to the discovery conference.

14    So if we anticipate it occurring the week of December 11th,

15    let me ask you if, first of all, the parties have any

16    objection to having a joint deadline for those, meaning the

17    same day both of your submissions would be due from both

18    sides.

19            Any problem with that, Mr. Lanier?

20            MR. LANIER:  No, Your Honor.

21            THE COURT:  Any problem with that, Mr. Mahr?

22            MR. MAHR:  None, Your Honor.

23            THE COURT:  And in terms of page length, I would

24    like to put a reasonable limitation on that, but is something

25    like ten pages enough, or do you think you might need more

1   than that?

2           MR. LANIER:  Your Honor, ten pages works well,

3   especially if we've got an ability to do an appendix, if need

4   be, or something like that.

5           THE COURT:  Right.  It will be ten pages exclusive

6   of attachments.

7           Mr. Mahr, does that work for Google?

8           MR. MAHR:  It does, Your Honor.

9           THE COURT:  And in terms of timing, I anticipate it

10  would be helpful to have that about a week before whatever

11  the hearing date is.  So again that's probably going to be,

12  right, early December, sometime that week of December 4.  I

13  see a thumbs up from Mr. Lanier.

14          And, Mr. Mahr, is that going to work for Google?

15          MR. MAHR:  It will.

16          THE COURT:  All right.  Counsel, I think we've

17  gotten through everything I thought we need to talk about

18  today.  But I want to give you the opportunity.  If there's

19  anything else you think we need to talk about, let me know.

20          Mr. Lanier?

21          MR. LANIER:  Nothing from plaintiff, Your Honor.

22  Thank you.

23          THE COURT:  Mr. Mahr, anything from Google?

24          MR. MAHR:  Nothing here.

25          THE COURT:  All right.

1          MR. MAHR:  Thank you, Your Honor.

2          THE COURT:  All right.  Thank you again, counsel.

3   We'll stand in recess.

4                    (Adjourned at 10:30 a.m.)

5                    *    *    *    *    *

6

7          CERTIFICATE OF OFFICIAL REPORTER

8

9          I, Gayle Wear, Federal Official Court Reporter, in

10   and for the United States District Court for the Eastern

11   District of Texas, do hereby certify that pursuant to Section

12   753, Title 28 United States Code, that the foregoing is a

13   true and correct transcript of the stenographically reported

14   proceedings held in the above-entitled matter and that the

15   transcript page format is in conformance with the regulations

16   of the Judicial Conference of the United States.

17

18                    Dated 26th day of November 2023.

19

20

21                    /s/ Gayle Wear
                       GAYLE WEAR, RPR, CRR
22                     FEDERAL OFFICIAL COURT REPORTER

23

24

25