IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| The State of Texas, et al.,<br><br>                          Plaintiffs,<br><br>v.<br><br>Google LLC,<br><br>                          Defendants. | Case No. 4:20-cv-00957-SDJ<br><br>Hon. Sean D. Jordan |

**PLAINTIFF STATES' DISCOVERY REPORT**

Plaintiff States (the "States") respectfully submit the following report addressing discovery issues for discussion, in compliance with the Court's Order (Dkt. 165), and in advance of the December 14, 2023 Discovery Status Conference set at 8:00 A.M.

## I. Introduction

This three-year old case can be ready for trial by August 26, 2024. Currently, discovery has yielded millions of documents, and several depositions have already occurred (in which the States participated), and there are nearly half-a-million entries being withheld on 16 privilege logs. While discrete discovery issues exist requiring a ruling, and more discovery and depositions are expected, there are no case issues that would prevent this matter from going to trial by August 26, 2024 under the States' proposed docket schedule. All pending discovery issues—outlined in this Report and raised by Google in its Report—can be swiftly resolved now or during regularly scheduled discovery hearings before a Special Master or Magistrate Judge. As seen in the MDL and the DOJ's E.D. Va. cases, the key to moving this case forward will be the Court's assistance (whether through a Special Master or Magistrate) on discovery issues that cannot be quickly resolved between the parties. A Special Master or Magistrate will hold all parties accountable and

ensure the case proceeds on the timeline this Court sets.

The States are ready to proceed efficiently and sensibly, and with this Court's help, will be able to hold Google accountable to its discovery obligations and deadlines in a timely fashion. To that end, the States propose below a streamlined process that will benefit all parties, and conserve the Court's resources by avoiding unnecessary discovery delays.

## II.     Proposed Special Master Process

Special Masters, or assigned U.S. Magistrate Judges, exist for cases like this, where a dedicated arbiter can streamline and quickly decide discovery disputes.

The States propose the following process:

1. Appointment of a Special Master, or U.S. Magistrate Judge by December 28, 2023;

2. Scheduling of standing discovery hearings before the Special Master, or Magistrate Judge, to occur:

    o every two weeks on a set day of the week and time;

    o virtually over Zoom or in-person; and

    o through the end of the discovery period.

3. Setting of submission deadlines, where:

    o the parties must submit any discovery issues to be heard in writing at least three (3) days before each standing discovery hearing;

    o the parties' initial written submissions will each be limited to three (3) pages, not including any appendices or attachments, and any pre-hearing response will be limited to two (2) pages; and

    o if there are no issues to be heard, the particular standing discovery hearing may be removed from the schedule.

4. Agreement by the parties that the Special Master's, or Magistrate's, decisions are final and not subject to party objections to the Court, unless they relate to privilege assertions where, in such cases, objections must be filed within 7 days of the objected-to decision.

**III.     Discovery Issues for Discussion with the Court**

The following chart sets forth pending discovery issues in this case and the States' proposed process for swiftly reaching resolution for each issue. The States request that any pending issues, not resolved by the Court at the upcoming discovery conference, and any future discovery issues that may arise, be submitted to the Special Master, or Magistrate Judge, as part of the process proposed above. Such a process is critical to moving the States' enforcement action forward in a deliberate and intentional manner.

| Pending Discovery Issues | The States' Requests and Proposed Solutions |
|---|---|
| **Coordination with the MDL and DOJ Cases**<br><br>There are now three pending litigations against Google related to its display advertising business and practices:<br><br>1. this case;<br>2. the MDL cases brought by private plaintiffs and consolidated in the Southern District of New York; and<br>3. the case brought by the Department of Justice in the Eastern District of Virginia, *U.S. et al. v. Google LLC*, No. 1:23-cv-00108-LMB-JFA (E.D. Va., Jan. 24, 2023) ("DOJ AdTech" case).<br><br>Recognizing the need for the free flow of information across these cases, both the MDL and DOJ AdTech courts entered orders ("Coordination Order"), coordinating discovery in certain respects between the cases. The DOJ's fact discovery period has ended and the Coordination Order does not address the new issues since this case was remanded.<br><br>Neither the States nor the MDL Plaintiffs had any substantive input into the Coordination Order negotiated between the DOJ and Google and entered in the MDL. Since this case was remanded back to this Court from the MDL Court, the parties have not conferred in substance or stipulated to a coordination order for this case. | The States request guidance on several issues to aid the quick negotiation of any coordination order for this case. Without such guidance, negotiations could drag on unnecessarily.<br><br>The States specifically request guidance from the Court at the upcoming conference on the terms and deadline for a coordination order in this case. This will save the parties from otherwise spending weeks conferring on coordination issues as occurred in the MDL.<br><br>To facilitate the efficient free flow of information between this case and the MDL and DOJ AdTech cases, the States specifically request that the Court consider ordering the following types of coordination:<br><br>1. The prompt sharing of all document productions and discovery;<br>2. The prompt sharing of all expert discovery, including reports, data, and testimony; and<br>3. The coordination of party and third-party depositions that does not delay the States' case.<br><br>The States address these points in more detail below. With the Court's guidance on coordination issues at the upcoming hearing, the parties can then work together to effectuate that guidance and prepare a coordination order for entry in this Court. |

3

| **Pending Discovery Issues** | **The States' Requests and Proposed Solutions** |
|---|---|
| **The States' Requests for Expert Discovery from the DOJ AdTech Case and Trial Documents from the DOJ Search Case**<br><br>On September 29, 2023, the States served requests for production on Google for production of:<br><br>a. Unredacted expert disclosures and reports from the DOJ AdTech case (RFPs 302, 303); and<br><br>b. Unredacted trial transcripts and exhibits from the ongoing DOJ "Search" antitrust trial against Google, arising from Google's alleged monopoly in search advertising: *U.S. of Am. et al. v. Google LLC*, No. 1:20-cv-03010-APM (D.D.C., Oct. 20, 2020) (RFP 305).<br><br>Both sets of discovery seek documents (a) that are relevant to the States' claims against Google and (b) the prompt production of which would help streamline discovery in this case.<br><br>Google has, however, refused to produce both sets of documents, objecting on confidentiality, loose relevance, and/or prematurity grounds under the MDL Court's Coordination Order. The MDL Court's Coordination Order does not resolve this issue and instead instructs the parties to meet and confer absent order of court. Such conversations have been fruitless and an order is needed from this Court. | The parties have met and conferred on the production of these documents for months, with Google refusing to produce any of the requested documents.<br><br>The States request that the Court order Google to produce both sets of requested documents:<br><br>a. the unredacted expert disclosures and reports from the DOJ AdTech case; and<br><br>b. the unredacted trial transcripts and exhibits from the DOJ Search case that relate to AdTech.<br><br>The parties have already stipulated to a Confidentiality Order for entry in this Court, which would govern any documents produced in this case regardless of whether they were previously produced in other cases.<br><br>Both of these requests are responsive to the States' discovery requests and relevant to claims in this case. Further, production promotes efficiency. Google's relevance and prematurity objections are unfounded, where the efficiency benefit of the prompt production of these documents in this case far outweigh the non-existent burden on Google. |

| Pending Discovery Issues | The States' Requests and Proposed Solutions |
|---|---|
| **The States' Document Requests and Google's Document Productions**<br><br>In response to the States' and MDL Plaintiffs' original requests for production, Google has produced roughly 6 million documents, with most of produced since the Google production missteps in September/October.[1] But those documents were not immediately accessible to the States. The States (along with other MDL Plaintiffs) previously experienced issues with accessing Google's recent document productions. Those access issues were not resolved until late October 2023. Even after that, the States experienced further issues with the metadata produced by Google, which required manual review and work before the States could load the productions for review. This additional manual work and review has delayed the States' loading and review of Google's produced documents.<br><br>Although Judge Castel addressed the States' federal claims as the bellwether complaint, Google requested, and Judge Castel ordered that discovery was stayed during motions practice. When discovery opened at the end of January 2023, Judge Castel directed that RFPs from the Discovery Steering Committee be common to the MDL Plaintiffs. Google also requested to file a motion to dismiss on the States' state-law claims.<br><br>On November 10, 2023, the States served additional requests on Google, related to the States' specific claims. These additional requests are not "common" with the other MDL Plaintiffs and were, therefore, not previously included in the "common" requests served in the MDL. Google's response to these requests are due on December 11, 2023. Google, however, has indicated that it will ask for a stay of discovery related to the States' state-law claims, while Google's not-yet-filed motion to dismiss those claims is pending. | If Google seeks a stay of discovery in this case, the States request that the Court deny Google any discovery stay, especially given the three years this case has already pended and given the delays that have already occurred with respect to Google's document productions and mandamus "appeals" for much of 2023.<br><br>Discovery is ongoing in this case already. The parties can, and should, proceed with that ongoing discovery even if the Court permits Google to file a pleadings challenge to the States' state-law claims. There is no need to further delay the adjudication of this case or depositions. Discovery on the state-law claims likely will involve the same search terms negotiated but be applied toward a handful of additional custodians. The States have already winnowed down their claims in the Fourth Amended Complaint.<br><br>Further, delaying DTPA discovery may inhibit depositions, as deponents may be asked questions related to conduct and programs that implicate both antitrust and DTPA issues. In the interest of not needing to re-depose individuals or corporate representatives, DTPA and state-law claim discovery should continue during any motions practice. |

---

[1] Note that approximately 1.2 million of those documents produced do not relate to display advertising and, instead, appear to be documents produced in response to other State investigations; nevertheless,

5

| **Pending Discovery Issues** | **The States' Requests and Proposed Solutions** |
|---|---|
| Other outstanding issues with Google's document and data productions, which the States have raised or intend to raise with Google, include:<br><br>a. Issues with Google's production of linked documents, as required under the stipulated ESI protocol;[2]<br><br>b. Issues with Google's production of internal chats, of which the States have found de minimis amounts in Google's productions and which are concerning given the widely publicized Google practice of destroying internal chats;[3]<br><br>c. The States' outstanding requests for various data that Google generates and logs as part of the display ad auction process.  Google has yet to produce a number of relevant auction data sources; the auction data it has produced has been limited based on its negotiations with the DOJ in the DOJ AdTech case; and<br><br>d. Issues with Google's production of source code, including that the States' ongoing review of Google's source code has identified a number of highly relevant source code files that have not been made available for inspection.  The States have also identified a number of data files that require specialized software to review, but no such software has been provided on the review computer. | The States request that, if the parties are unable to resolve these outstanding issues, they should be considered and decided by the proposed Special Master, or Magistrate Judge.<br><br>The issue regarding linked documents (Google's version of attaching documents) is best handled by a Special Master or Magistrate Judge to not inundate this Court's docket.<br><br>The same is true for the data Google produced to the States (and MDL Plaintiffs) that was requested by the DOJ and any additional claim/case specific data/source code the States may be entitled to and relevant to the claims in its case. |

---

Google has refused to acknowledge that nearly 1.2 million are not responsive documents, yet it continues to tout the aggregate number in its production totals as proof of compliance with discovery.

[2] Linked documents include links to documents embedded in Google emails, chats, presentations and other documents, that function like attachments and that should be produced with the parent or referencing document, just as attachments are produced.

[3] *See*, *e.g.*, Law360, "Judge Slams Google's 'Deeply Troubling' Tactics As Trial Ends" (Dec. 1, 2023), https://www.law360.com/articles/1772102/judge-slams-google-s-deeply-troubling-tactics-as-trial-ends*;*
Law360, "Google's Deleted Chats Draw Scrutiny At Epic Antitrust Trial" (Nov. 7, 2023), https://www.law360.com/articles/1764392/google-s-deleted-chats-draw-scrutiny-at-epic-antitrust-trial,

| | |
|---|---|
| **Deposition Limits and Coordination**<br><br>The States have participated in four (4) depositions of Google witnesses, pursuant to cross-notices filed in compliance with the MDL Court's Coordination Order.<br><br>Given Google's recent revelation that it failed to timely collect, review and produce millions of documents and given the access and later loading issues experienced by the States, the States could not and did not participate in other depositions taken by the DOJ in the DOJ AdTech case. It would be highly prejudicial to the States to have participated in depositions of Google witnesses, whose documents had not been fully produced or whose voluminous documents were only recently produced without reasonable time for review.<br><br>The States anticipate they will need to take 30 fact witness depositions in this case (26 more when counting the 4 depositions already taken). | Regarding deposition limits, the States request that the Court enter the same or similar terms as the Court previously entered in this case in May 2021 (EDTX Dkt. 123 at 6-8) but reducing the States' deposition numbers from 60 to 30:<br><br>a. Each side is limited to thirty (30) depositions of fact witnesses. Fact-witness depositions shall be limited to seven hours, subject to exceptions.<br><br>b. The same limitations, requirements, and exceptions, previously ordered by the Court, should apply. (EDTX Dkt. 123 at 6-8) (*e.g.*, each seven-hour period of 30(b)(6) deposition testimony shall count as one deposition for the purpose of the side's limit, *i.e.*, the depositions of seven 30(b)(6) witnesses for two hours each (fourteen hours in total) count as two depositions).<br><br>With respect to coordination of depositions with the depositions taken in the MDL and DOJ AdTech cases, the States request that the Court:<br><br>a. Provide parties in this case the opportunity to cross-notice a deposition in the other cases, with the qualification that a party's decision not to cross-notice a witness does not prejudice or waive the party's right to later depose the same witness. While the States and Google should attempt reasonable accommodations to attempt to take coordinated depositions, the States should not be bound by the discovery decisions of the MDL Plaintiffs and their decisions on deposition preparedness, including that if the MDL Plaintiffs are not able to take a deposition within the time frame sought by the States, the States are not precluded from taking that deposition without the MDL Plaintiffs.<br><br>b. For any witnesses being deposed for more than one case, the deposition limit would be extended from seven to fourteen hours.<br><br>c. In accordance with the free-flow of discovery |

7

| **Pending Discovery Issues** | **The States' Requests and Proposed Solutions** |
|---|---|
| | as discussed above, the transcript/video of an MDL or DOJ deposition will be made available to the States promptly.<br><br>These proposals strike a sensible balance between the efficiency of coordinating depositions, and preserving a party's right to adequately prepare for a deposition.<br><br>Any subsequent issues related to depositions can be resolved by the proposed Special Master, or Magistrate Judge. |
| **Google's Privilege Logs**<br><br>Google has produced 16 volumes of privilege logs to date, across 24 spreadsheets—totaling almost half a million entries (roughly **480,000 individual entries)** for documents or information that Google is withholding under the guise of privilege.  The States mistakenly only alluded to a quarter million privilege entries, rather than the half million Google has withheld, making the need for a Special Master or Magistrate even more apparent. Given Google's widely publicized and questioned privilege practices, including U.S. District Judge James Donato's statement this week that Google's "willful and intentional suppression of relevant evidence in this case is deeply troubling to me as an officer of the court," the States anticipate that Google may produce additional logs of withheld documents, of currently unknown volume and that many of the withheld documents are not properly withheld.[4]<br><br>On November 12, 2023, the States sent a letter and twelve appendices to Google outlining categories of facial deficiencies with Google's multiple volumes of privilege logs.  The States requested that Google address the identified deficiencies in all of Google's | Google's misuse of the attorney-client privilege—including in the form of "fake privilege" and "communicate with care"—has been widely publicized as a Google tactic used to hide highly relevant and sensitive Google documents from discovery. For instance, when the Department of Justice discovered these tactics in its Search case against Google, Google unilaterally reversed its privilege call on 37,000 documents.  *See* No. 1:20-cv-03010-APM, Doc. 361 at 21-22 (D.D.C. June 16, 2022).<br><br>Given the staggering number of withheld or redacted documents in this case—currently around 480,000—a Special Master or dedicated Magistrate Judge is needed to oversee disputes over Google's privilege logs and prevent the concealment of otherwise discoverable, non-privileged documents. As Judge Donato noted, Google appears to have widely instructed its employees to label documents "privileged and confidential" when they should not have been. These privilege issues should be handled swiftly for the effective administration of the case and discovery.<br><br>The States have already engaged in efficient |

---

[4] *See* Law360, "Judge Slams Google's 'Deeply Troubling' Tactics As Trial Ends" (Dec. 1, 2023), https://www.law360.com/articles/1772102/judge-slams-google-s-deeply-troubling-tactics-as-trial-ends; Law360, "Google In-House Attys Joked About 'Fake Privilege,' Jury Told" (Nov. 9, 2023), https://www.law360.com/articles/1765405/google-in-house-attys-joked-about-fake-privilege-jury-told.

| **Pending Discovery Issues** | **The States' Requests and Proposed Solutions** |
|---|---|
| logs by producing revised logs.<br><br>On November 30, 2023, Google responded. While Google purports to dispute the deficiencies, Google states that it will re-review the identified log entries and produce revised privilege logs to the extent necessary. | processes to identify facial deficiencies in Google's logs and expects that any privilege log disputes can be handled efficiently as well with the assistance of a Special Master or Magistrate. |
| **Google's Clawback Documents**<br><br>Under the MDL Confidentiality Order and the Confidentiality Order recently stipulated by all parties to this Court (EDTX Dkt. 174-1), the parties may clawback or notify other parties about the inadvertent production of privileged materials; "[h]owever, if the Party has already reviewed the information prior to being notified, two total attorneys for Plaintiffs … or two attorneys for Defendant … may review the document for the sole purpose of determining whether to challenge the privilege claim …." *Id.* at ¶ 12(c).<br><br>Google has issued numerous clawback notices, of which a fraction have already been reviewed by the States and are able to be reviewed for challenging purposes pursuant to the Confidentiality Order.<br><br>Even within that limited universe, in the MDL Court, the States and the other MDL Plaintiffs have previously successfully challenged Google's privilege designations for clawed-back documents. The MDL Court ordered the de-designation of some of those documents, rejecting Google's privilege assertions. | While there are no pending clawback challenges, the States are in the process of assessing Google's clawback notices and reviewable documents, in compliance with the recently stipulated Confidentiality Order.<br><br>The States anticipate being judicious with their clawback challenges, challenging only select documents and abiding by the ruling of the Court or the proposed Special Master.<br><br>Depending on the volume of clawback and privilege challenges, to streamline any privilege disputes, the States may additionally propose bellwether rulings on a small number of challenged documents that can then inform the parties' other privilege assertions and challenges. |
| **The States' responses and productions**<br><br>In its status report, Google argued that the States "have yet to respond to interrogatories that go to key questions such as who they represent and the relief that they seek (a gating issue to Google's ability to complete discovery on the States)." EDTX Dkt. 156 at 2, 5. | The States' recent third amended interrogatory responses address the issues raised by Google.<br><br>If issues remain, if any, the parties can meet and confer, and any outstanding issues can be considered and resolved by the proposed Special Master. |

| **Pending Discovery Issues** | **The States' Requests and Proposed Solutions** |
|---|---|
| The States have previously twice-amended their interrogatory responses and, after several months of silence from Google, recently served third amended interrogatory responses on Google.[5] Subject to valid objections that the contours of the relief sought by the States are the proper subject of expert opinions, among other objections, the States provided Google with a chart stating the relief sought by each State, the statutory basis for such relief, and who each State represents or the capacity in which each State is seeking such relief.<br><br>Three months ago, in September 2023, the States also responded to Google's Requests for Admission, also directed at the relief sought by the States. Google has not challenged those responses.<br><br>With respect to the States' document productions, the States and state agencies have produced roughly 24,000 documents, as well as the roughly 760,000 documents from the Texas investigative file—which are neither paltry nor unusual production sums for plaintiffs, let alone state enforcers, in a case focused on the business practices of the defendant—here, Google. For good reason, the States simply do not have the same quantum of relevant documents as Google. Moreover, Google itself has superior or, at minimum, equal access to any documents related to the alleged harm *caused by Google*, underlying each State's claims. | |

## **CONCLUSION**

Counsel for the State of Texas is prepared to address all of the above issues and any issues raised by Google at the upcoming conference. As explained above, the States believe that the Court should appoint a Special Master, or Magistrate Judge, to streamline the pending discovery issues in this case, which will allow the Court to set an expeditious case schedule and trial date.

Dated: December 7, 2023

---

[5] Additionally, despite the fact that Google has exceeded its limit of 25 interrogatories already, the States have worked in good faith to answer those excess interrogatories.

| | |
|---|---|
| */s/ W. Mark Lanier* | */s/ Ashley Keller* |
| W. Mark Lanier | Ashley Keller |
| Mark.Lanier@LanierLawFirm.com | ack@kellerpostman.com |
| Alex J. Brown | 150 N. Riverside Plaza, Suite 4100 |
| Alex.Brown@LanierLawFirm.com | Chicago, Illinois 60606 |
| Zeke DeRose III | (312) 741-5220 |
| Zeke.DeRose@LanierLawFirm.com | |
| Jonathan P. Wilkerson | Zina Bash |
| Jonathan.Wilkerson@LanierLawFirm.com | zina.bash@kellerpostman.com |
| 10940 W. Sam Houston Pkwy N | 111 Congress Avenue, Suite 500 |
| Suite 100 | Austin, TX 78701 |
| Houston, TX 77064 | (512) 690-0990 |
| (713) 659-5200 | |
| **THE LANIER LAW FIRM, PLLC** | Noah S. Heinz |
| | noah.heinz@kellerpostman.com |
| | 1101 Connecticut, N.W., 11th Floor |
| | Washington, DC 20005 |
| | (202) 918-1123 |
| | **KELLER POSTMAN LLC** |

*Counsel for Texas, Idaho, Louisiana (The Lanier Law Firm only), Mississippi, North Dakota, Mississippi, South Carolina, and South Dakota*

*Submitted on behalf of all Plaintiff States*

**NORTON ROSE FULBRIGHT US LLP**
Joseph M. Graham, Jr.
joseph.graham@nortonrosefulbright.com
Geraldine Young
geraldine.young@nortonrosefulbright.com
1301 McKinney, Suite 5100
Houston, Texas 77010
(713) 651-5151

Marc B. Collier
Marc.Collier@nortonrosefulbright.com
98 San Jacinto Blvd., Suite 1100
Austin, Texas 78701
(512) 474-5201
***For the Plaintiff State of Texas***

FOR PLAINTIFF STATE OF TEXAS:

KEN PAXTON
Attorney General

*/s/ Trevor E. D. Young*
Brent Webster, First Assistant Attorney General of Texas
Brent.Webster@oag.texas.gov
Grant Dorfman, Deputy First Assistant Attorney General
Grant.Dorfman@oag.texas.gov
James R. Lloyd, Deputy Attorney General for Civil Litigation
James.Lloyd@oag.texas.gov
Trevor Young, Deputy Chief, Antitrust Division
Trevor.Young@oag.texas.gov

**STATE OF TEXAS, OFFICE OF THE ATTORNEY GENERAL**
P.O. Box 12548
Austin, TX 78711-2548
(512) 936-1674

*Attorneys for Plaintiff State of Texas*

## CERTIFICATE OF SERVICE

I certify that on December 7, 2023, this document was filed electronically in compliance with Local Rule CV-5(a) and served on all counsel who have consented to electronic service, per Local Rule CV-5(a)(3)(A).

*/s/ W. Mark Lanier*
W. Mark Lanier