IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| THE STATE OF TEXAS, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| v. | § | Civil Action No. 4:20-cv-00957-SDJ |
| | § | |
| GOOGLE LLC, | § | |
| | § | |
| Defendant. | § | |

## GOOGLE LLC'S DISCOVERY STATUS REPORT

Plaintiffs have had four years and five complaints to develop and articulate their claims. They have benefitted from their own 13-month investigation and a three-year investigation by the U.S. Department of Justice.  They have received from Google over six million documents, 200 terabytes of data, and access to 80 gigabytes of source code.  But Plaintiffs still cannot articulate several foundational elements of their case.  As an immediate priority, Plaintiffs should address these foundational questions by supplementing their responses to Google's Interrogatories (set forth in Appendix A).[1]  If Google does not receive satisfactory responses, the Court should set a briefing schedule so that Google can move to compel to obtain the information needed to shape the remainder of fact discovery (and, if necessary, seek other relief).  This status report addresses these threshold issues (section I), as well as the one-sided nature of fact discovery to date (section II), Plaintiffs' desire for one-way coordination that favors only them going forward (section III), and privilege concerns raised by both sides (section IV).

The focus of Plaintiffs' case has slowly shifted from their antitrust claims to their patchwork of state-law tort claims.  Plaintiffs have amended their complaint multiple times and "eliminated" their damages claim under the federal antitrust laws.  Dkt. 136 at 2.  Judge Castel dismissed Plaintiffs' principal federal antitrust claim alleging a conspiracy with Facebook (now Meta), and pruned several of Plaintiffs' other federal antitrust claims.  *See* Dkt. 156-2.  Plaintiffs have since stated that some States are no longer pursuing their state antitrust damages claims.

Earlier this year, Plaintiffs filed their Fourth Amended Complaint ("FAC") which they told

---

[1] On December 6, 2023, Plaintiffs served amended Interrogatory responses—more than eight months after Google first told Plaintiffs that their responses were deficient.  Although Google is still evaluating those belated revised responses, they do not appear to address the deficiencies and concerns set forth in this status update.

Judge Castel was intended to finally "put their best foot forward"[2] regarding claims under their state deceptive trade practice acts ("DTPAs").  MDL Dkt. 541.  The FAC introduced a new 72-paragraph section which attempts to recast Plaintiffs' dismissed federal antitrust claim concerning Meta as a DTPA claim.  FAC ¶¶ 590-92.[3]  And just last month, Texas issued another 101 RFPs which seek potentially immense quantities of data and could take months to address.

Against that backdrop, Plaintiffs' proposal for an accelerated fact discovery period closing in early 2024 seems, at best, unrealistic in light of the amount of discovery remaining and, at worst, a calculated effort to deprive Google of the opportunity to develop its defenses.  Indeed, just working through Plaintiffs' 101 new RFPs and policing Plaintiffs' failure to comply with outstanding discovery requests will likely take several months.  As set forth below, for Google to determine what discovery is required for its defense, Plaintiffs must first explain at a minimum: what relief they seek, on whose behalf they seek it as *parens patriae*, and how their ever-growing tangle of factual allegations—which have swollen from 450 paragraphs to 778 since first presented to this Court—support which specific legal theories.

## I.    Plaintiffs Have Yet To Respond To Google's Discovery Seeking Basic Information Necessary To Google's Defense

Plaintiffs' FAC sheds little light on which private parties they purport to represent as to any given course of conduct, nor does it link that conduct to relief sought.  Google requested answers to these basic questions in January 2023 but Plaintiffs have yet to answer them.  *See* Appx. A (attached hereto).  Plaintiffs' flip response that they want all remedies on behalf of all parties for all conduct not only fails to meet their obligations under the Federal Rules of Civil Procedure,

---

[2] Letter to Judge Castel from M. Lanier at 2, *In re Google Dig. Advert. Antitrust Litig.*, No. 1:21-md-0310 (S.D.N.Y. Feb. 16, 2023), Dkt. 466 (hereinafter "MDL Dkt.").

[3] The FAC also introduces a new claim that Google profited from users' personal information through its publisher ad serving.  FAC ¶¶ 582-585.

but also betrays the lack of direction and substance of Plaintiffs' sprawling case.  Nov. 20, 2023 Hr'g Tr. at 31:22.  ("We claim to represent all of them.  All of the above.").

**Whom do Plaintiffs represent?**  Plaintiffs purport to stand in the shoes of the "citizens, general welfare, and economy of their respective states" as *parens patriae*.  FAC ¶ 31.  But Plaintiffs have not yet disclosed whose specific shoes they purport to fill.  Appx. A, Interrog. No. 4.  To bring a claim as *parens patriae*, "the State must articulate an interest apart from the interest of particular private parties."[4]  Plaintiffs should now identify the particular private parties they represent—publishers, advertisers, competitors, users—and, for each, identify the conduct of which they complain and link that to some asserted relief.

The identity of the Plaintiffs matters.  Some state antitrust laws do not allow for damages claims by indirect purchasers.[5]  Similarly, the identity of the person who is alleged to have been deceived is relevant—particularly for states where reliance is an element of a DTPA claim.[6]  And Google needs to know the extent to which those claims overlap with the publisher and advertiser classes in the multidistrict litigation before Judge Castel (the "MDL").

**Which Plaintiffs seek damages?**  In September 2021 Plaintiffs told this Court that the third iteration of their complaint "eliminated" their claims for damages under the federal antitrust laws.  Dkt. 136 at 2.  The operative complaint suggests that six States are seeking damages.  *See* FAC ¶¶ 617-777.[7]  Plaintiffs told Google earlier this year that "at least one" State intends to drop

---

[4] *Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel., Barez*, 458 U.S. 592, 607 (1982).

[5] *See, e.g.*, *Abbott Labs., Inc. v. Segura*, 907 S.W.2d 503, 505-7 (Tex. 1995) (indirect purchasers do not have standing to sue under the Texas Free Enterprise and Antitrust Act or under the DTPA when alleging antitrust violations); *Free v. Abbott Labs., Inc.*, 176 F.3d 298, 301 (5th Cir. 1999) (indirect purchasers lack standing under the Louisiana antitrust law), *aff'd*, 529 U.S. 333 (2000).

[6] *See, e.g.*, *Energy Enhancement Sys., LLC v. Dep't of Bus. & Indus.*, 486 P.3d 14, 2021 WL 1687056, at *4-5 (Nev. App. 2021).

[7] Florida, Idaho, Louisiana, North Dakota, Puerto Rico, and Utah.

3

its claims for damages under state antitrust laws.  Plaintiffs' counsel recently told this Court that only Puerto Rico and one (unspecified) State were seeking damages; but it is unclear whether Plaintiffs' counsel was addressing federal or state antitrust claims, or DTPA claims.  Nov. 20, 2023 Hr'g Tr., at 31:25-32:3.  Yesterday, Plaintiffs provided amended Interrogatory responses stating that five States were seeking damages.  Plaintiffs should not be permitted to continue this shell game.

These distinctions have consequences.  Some States' deceptive trade practice laws are limited to "consumer" transactions and do not extend to commercial transactions.[8]  Others have limitation periods that may apply depending on the particular conduct challenged.[9]

In 2021, the JPML asked Plaintiffs multiple times to explain their theory of damages as *parens patriae*: "What are the damages that are available to you as the representative of the states, as the representative of their citizens."  Appx. B at 27:9-11.  But Plaintiffs danced around the question.  *Id*. at 27:18-20 ("I asked that question three times; I didn't get an answer. . . .").[10] Plaintiffs should now answer as to each of their claims.

**How is Plaintiffs' asserted monetary relief computed?**  Plaintiffs should also be directed to provide a computation of each asserted category of monetary relief without further delay.  Under Rule 26, Plaintiffs "must, without awaiting a discovery request," provide "a computation of each category of damages claimed."  Fed. R. Civ. P. 26(a)(1)(A)(iii).  This includes the various other

---

[8] For example, the Indiana and Utah statutes extend only to conduct "in connection with a consumer transaction."  *See* Ind. Code §§ 24-5-0.5-3(a); 24-5-0.5-2(a) (defining "consumer transaction" as being "for purposes that are primarily personal, familial, charitable, agricultural, or household"); Utah Code Ann. §§ 13-11-4(1); 13-11-3(2)(a) (defining "consumer transaction" as being for "primarily personal, family, or household purposes").

[9] *See, e.g.*, Mont. Code Ann. § 27-2-211(1) (two-year statute of limitations).

[10] When Plaintiffs finally answered and acknowledged that there would be overlapping claims, the JPML stated: "Isn't that the best argument for all these cases to be in front of one judge? Somebody is going to have to sort it out."  Appx. B at 28:17-19.

4

forms of "other monetary relief" that Plaintiffs assert such as disgorgement, restitution, fines, and civil penalties.[11]

Plaintiffs' computation of each category remains a mystery.  The parties exchanged Rule 26 Initial Disclosures thirty-two months ago in April 2021, but Plaintiffs failed to include the required computations and have refused to provide them since.  Google pursued that information through discovery in the MDL (Appx. A, Interrog. Nos. 4-5, 7, 26), but Plaintiffs refused to respond on the basis that it would "call[] for the premature disclosure of expert opinions."[12]

Plaintiffs are in violation of Rule 26 and at risk of preclusion.  In the ongoing litigation in the Eastern District of Virginia (the "Virginia Case"), the DOJ also refused to provide a computation of damages, claiming that it was "premature" and would "be the subject of expert discovery."  The court disagreed and compelled production of the required computations on the basis that providing them for the first time during expert discovery would not be "fair" because "[a] defendant in any case is entitled to know what the plaintiff is asking for" and "how the damages are being calculated."  Tr. at 23-24, *United States v. Google LLC*, No. 1:23-cv-00108 (E.D. Va. Sep. 15, 2023), Dkt. 435 (hereinafter "EDVA Dkt.").  The court further warned the DOJ that its "claim for damages is in jeopardy in this case given their lack of responsiveness in discovery." *Id.* at 24.  Consistent with the law in this Circuit and District, the Court should compel Plaintiffs to do the same.[13]  Otherwise, Google will be deprived of the opportunity to produce

---

[11] *See* Fed. R. Civ. P. 26 Advisory Committee Notes (1993 Amendment) ("A party claiming damages *or other monetary relief* must, *in addition to disclosing the calculation of such damages*, make available the supporting documents . . . ." (emphasis added)).

[12] Pls.' Third Am. Resps. & Objs. to Google's First Set of Interrogs. (Dec. 6, 2023); Alaska's Resps. & Objs. to Google's First Set of Interrogs. at 19 (Mar. 13, 2023).

[13] *See, e.g.*, *CQ, Inc. v. TXU Mining Co., L.P.*, 565 F.3d 268, 279-80 (5th Cir. 2009) (affirming District Court's exclusion of evidence as to categories of damages that were not disclosed under Rule 26); *Burrell v. Crown Cent. Petroleum, Inc.*, 177 F.R.D. 376, 385-86 (E.D. Tex. 1997) (compelling plaintiffs to provide a "meaningful computation" of damages).

rebuttal data—which can take many months—during fact discovery.[14]

**What is the factual basis for Plaintiffs' tying claim?**  One of Plaintiffs' three remaining federal antitrust claims alleges that Google used its AdX exchange to coerce publishers to use Google's DFP ad server in a "strict contractual tie" that "requir[ed]" publishers to purchase both Google's AdX exchange and the DFP ad server.  FAC ¶¶ 245-252.  But Plaintiffs have yet to identify the contracts or terms they allege coerce publishers to purchase DFP and AdX together. At the motion to dismiss phase, Plaintiffs leaned on the presumption of truth in their favor.[15]  But Plaintiffs had already obtained in the pre-suit investigation Google's contracts with its top 50 publishers.  And Plaintiffs have now amassed six million documents from Google, so it is hardly "premature" to respond.  Appx. A, Interrog. Nos. 12, 26.

## II.    Fact Discovery To Date Has Been Largely One-Sided

Prior to remand, Google produced over six million documents from over 150 custodians and over 200 terabytes of data, and provided access to nearly 80 gigabytes of source code. Plaintiffs, by contrast, have collectively produced only approximately 13,000 documents (exclusive of the pre-suit investigative file containing third-party documents).  As summarized in Appendix C, three Plaintiffs failed to produce any documents at all (including Puerto Rico and South Dakota, which are pursuing damages claims in Plaintiffs' latest Interrogatory Responses).[16]

---

[14] It is equally unclear what non-monetary relief Plaintiffs are seeking.  The FAC is replete with general demands for "other equitable relief" or "all available" relief, sometimes followed by a citation to an entire chapter of state statutory code.  *See, e.g.* FAC ¶¶ 626, 631, 634, 763, 770, 773. The same is true for Plaintiffs' Interrogatory responses, which only assert in broad terms that Plaintiffs seek all available remedies identified in the FAC while objecting that it would be "premature" to do more.  *See* Appx. A, Interrog. Nos. 7, 11.

[15] Plaintiffs' counsel told the court: "Maybe [Google] will prove that wrong with actual contracts . . . but [Google] is not correct that we have to reference those in a complaint."  Hr'g Tr. at 16, *In re Google Dig. Advert. Antitrust Litig.*, No. 1:21-md-03010 (S.D.N.Y. Aug. 31, 2022).

[16] Appx. B to Pls.' Third Am. Resps. & Objs. to Google's First Set of Interrogs (Dec. 6, 2023). The third Plaintiff, Utah, made its first production today a few hours before this filing.

Moreover, five States have acknowledged being users of ad tech themselves but have produced just under 6,000 documents between them.  *See* Appx. C (attached hereto).

Plaintiffs are not taking their discovery obligations seriously.  All 17 Plaintiffs missed the deadline to respond to Google's initial discovery requests.  And while Plaintiffs bring these claims as *parens patriae* on behalf of some undefined subset of the population of their States, most Plaintiffs have restricted their own productions to documents within the control of their respective Offices of the Attorney General.[17]  Those Plaintiffs asserted that Google should issue third-party subpoenas to agencies in the various States.  When Google did so, various agencies (including six Texas State agencies) refused to respond on sovereign immunity grounds.  One state agency lost its sovereign immunity challenge, but is appealing to the Fourth Circuit, and the District Court has stayed enforcement of the subpoena in the meantime.[18]

Last week, Google asked Plaintiffs for an update on the status of their productions, but none have done so.  The Court should now direct Plaintiffs to complete their productions and certify the scope of the search undertaken for responsive documents.  Google will need an opportunity to review those productions once complete, and determine if additional party or third party discovery is needed as a result.  Among other things, Google may need to issue additional subpoenas to any advertising agencies retained by the States in connection with their use of ad tech.  Google will also need an opportunity during fact discovery to identify and produce any data needed to rebut Plaintiffs' claims.

Turning to depositions, Judge Castel stayed all depositions by Google of Plaintiffs until the

---

[17] The only exceptions are Nevada and Alaska, which have told Google that they will facilitate productions on behalf of state agencies that used display advertising.  But so far Alaska has only produced documents from one out of the 12 state agencies it has identified for this purpose.

[18] *See* Ord. at 1-2, 5, *In re S.C. Dept. of Parks, Recreation, and Tourism*, No. 3:23-cv-2100 (D.S.C. Sept. 20, 2023), Dkt. 31.

recent close of fact discovery in the Virginia Case.  MDL Dkt. 551 at 2.  At minimum, Google intends to take a 30(b)(6) deposition of each Plaintiff.  But before Google can do so, Plaintiffs will need to remedy their discovery deficiencies identified above, including confirming whom they represent, for what conduct, and regarding which claim(s) for relief—as well as the extent to which the States and their agencies use ad tech.  The answers will inform Google's decision-making as to which other third parties it may need to depose.

### III.    Plaintiffs Continue To Pursue Inefficient Coordination That Benefits Only Them

Over the course of seven weeks of intensive negotiations, Google, the DOJ, the other 17 state plaintiffs in the Virginia Case, and Meta, hammered out a coordination order that was approved and entered by Judge Castel and Magistrate Judge Anderson.  MDL Dkt. 564; EDVA Dkt. 251 (together, the "Coordination Orders").

The Coordination Orders provide benefits and impose burdens.  On one hand, fact discovery can be shared with all plaintiffs in the MDL and the Virginia Case across coordinated cases, including productions from a common document review, as well as fact deposition testimony.  On the other hand, all plaintiffs across those cases are required to coordinate on depositions of Google witnesses, such that "[a]ny witness appearing at a Google Deposition . . . taken during the Coordinated Discovery Period cannot be compelled to sit for a second deposition."[19]  And the Coordination Orders defer plaintiffs' ability to get discovery of expert reports and testimony in the Virginia Case until the expert discovery phase of their case by providing that "Expert Discovery shall not be shared between the Coordinated Cases pending further order," and that the parties need to meet and confer "before Google's expert reports are due

---

[19] MDL Dkt. 564 at ¶ 3(e).  The Coordination Orders contain a similar provision requiring coordination with respect to third party witnesses. *See id.* at ¶ 5.

in the MDL," which is in September 2024, regarding the "circumstances in which Expert Discovery may or should be shared."  MDL Dkt. 564 at ¶ 7.

Although invited to join, MDL plaintiffs (including Plaintiffs in this case) did not meaningfully participate in these negotiations.  Instead, they presented a separate proposal to Judge Castel which provided them with all of the benefits of coordination but none of the burdens.  Judge Castel described MDL plaintiffs' proposal as a "noncoordination order" that did not contribute to cross-case efficiency.  MDL Dkt. 560 at 11:24-12:3.

Following remand, the parties are obliged under the Coordination Orders to meet and confer regarding the prospect of further coordination.  MDL Dkt. 564, ¶ 9.  But based on Plaintiffs' recent statements, Plaintiffs appear poised to propose another one-sided coordination order along the lines that Judge Castel rejected.  Plaintiffs told the Court on November 20 that they expect to continue receiving any documents produced in the Virginia Case and the MDL.  Nov. 20, 2023 Hr'g Tr. at 17:5-9.  But Plaintiffs have told Google that they are reserving the right to reopen all previously-taken depositions, and that the date on which any other plaintiff notices a deposition of any Google employee is "of no moment" to them.  And, Plaintiffs' counsel told this Court on November 20 that they now expect to get "expert reports as they're being produced in the Eastern District of Virginia."  Nov. 20, 2023 Hr'g Tr. at 17:3-4.  Put another way, Plaintiffs want a preview of Google's expert report when they have yet to provide their own computations of damages under Rule 26—now thirty-two  months late.  *Supra* at 5.

### IV.    Google Is Discharging Its Privilege Obligations But Plaintiffs Have Yet To Do So

Many of the six million documents produced by Google are from a period in which Google was under investigation by, or in litigation against, multiple regulators and parties, including Plaintiffs.  As a result, Google has properly withheld a number of documents as privileged or

9

protected work product.

At the November 20 Conference, Plaintiffs raised privilege issues that arose in other cases and suggested the appointment of a Special Master.  Nov. 20, 2023 Hr'g Tr. at 15:2-15. Google's privilege assertions in this case have already been tested by two other courts.  In response to a privilege challenge in the Virginia Case, Magistrate Judge Anderson ruled that the DOJ failed to even meet the standard required to warrant in camera review for 20 of the 21 challenged documents.  *See* EDVA Dkt. 271.  In the MDL, Judge Castel ruled that certain challenged documents prepared at the direction of counsel in response to investigations are properly privileged or protected work product.  MDL Dkt. 438 at 6.

Plaintiffs have since asked Google to re-review its privilege logs, citing various concerns that have already been addressed by Judge Castel and Judge Anderson (or which otherwise lack basis).  Recognizing the inherent challenges in preparing a privilege log of this complexity in a review of this magnitude, Google has agreed in good faith to undertake a reasonable re-review.

Google respectfully submits that a Special Master or Magistrate Judge is not necessary to address any privilege issue in this case.  To the extent that one is appointed, Google submits that part of his or her remit should be to address the glaring deficiencies in Plaintiffs' productions, and to ensure that Plaintiffs satisfy their discovery obligations as *parens patriae*.

Finally, Google has concerns regarding Plaintiffs' privilege assertions and failure to comply with their obligation to produce privilege logs.  Only two Plaintiffs have produced any logs at all (Texas and South Carolina), and both sets are deficient.  Google will raise its concerns with the Court, if necessary, once Plaintiffs complete their productions and logging obligations.

## V.    Conclusion

Google respectfully requests that this Court enter Google's proposed schedule, Dkt. 162,

and order Plaintiffs to inform Google by January 7, 2024, whether (and, if so, by when) they will supplement their responses to Google's Interrogatories.

Dated: December 7, 2023                    Respectfully submitted,


                                            /s/ R. Paul Yetter
                                           R. Paul Yetter
                                           State Bar No. 22154200
                                           YETTER COLEMAN LLP
                                           811 Main Street, Suite 4100
                                           Houston, Texas 77002
                                           (713) 632-8000
                                           pyetter@yettercoleman.com

                                           Eric Mahr (*pro hac vice*)
                                           FRESHFIELDS BRUCKHAUS DERINGER LLP
                                           700 13th Street NW, 10th Floor
                                           Washington, D.C. 20005
                                           (202) 777-4545
                                           eric.mahr@freshfields.com

                                           ATTORNEYS FOR DEFENDANT
                                           GOOGLE LLC

**CERTIFICATE OF SERVICE**

I certify that on December 7, 2023, this document was filed electronically in compliance with Local Rule CV-5(a) and served on all counsel who have consented to electronic service, per Local Rule CV-5(a)(3)(A).

*/s/ R. Paul Yetter*
R. Paul Yetter