**APPENDIX B**

UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

_____

IN RE:  DIGITAL ADVERTISING          MDL No. 3010
ANTITRUST LITIGATION                 July 29, 2021
                                     10:43 a.m.

_____

TRANSCRIPT OF ORAL ARGUMENT

Chair:                      Honorable Karen K. Caldwell, Chair
                            United States District Court
                            Eastern District of Kentucky

Members:                    Honorable Catherine D. Perry
                            United States District Court
                            Eastern District of Missouri

                            Honorable Nathaniel M. Gorton
                            United States District Court
                            District of Massachusetts

                            Honorable Matthew F. Kennelly
                            United States District Court
                            Northern District of Illinois

                            Honorable David C. Norton
                            United States District Court
                            District of South Carolina

                            Honorable Roger T. Benitez
                            United States District Court
                            Southern District of California

                            Honorable Dale A. Kimball
                            United States District Court
                            District of Utah

DEBRA M. JOYCE, RMR, CRR, FCRR
Official Court Reporter
John J. Moakley U.S. Courthouse
1 Courthouse Way, Room 5204
Boston, MA  02210
joycedebra@gmail.com

```
 1      APPEARANCES:

 2      Eric Mahr, Esq.
        Freshfields Bruckhaus Deringer, LLP
 3      For Google, LLC

 4      Kevin J. Orsini, Esq.
        Cravath, Swaine & Moore, LLP
 5      For Facebook, Inc.

 6      Kate M. Baxter-Kauf, Esq.
        Lockridge Grindal Nauen, P.L.L.P.
 7      For SPX Total Body Fitness, LLC

 8      Jordan Elias, Esq.
        Girard Sharp, LLP
 9      For Surefreight Global, LLC, et al.

10      Carol O'Keefe, Esq.
        Korein Tillery, LLC
11      For Genius Media Group, Inc., et al.

12      Serina M. Vash, Esq.
        Herman Jones, LLP
13      For AIM Media Indiana Operating, LLC, et al.

14      John Thorne, Esq.
        Kellogg, Hansen, Todd, Figel & Frederick, P.L.L.C.
15      For Associated Newspapers Ltd., et al.

16      Jonathan Rubin, Esq.
        MoginRubin, LLP
17      For Cliffy Care Landscaping, LLC

18      W. Mark Lanier, Esq.
        The Lanier Law Firm, P.C.
19      For States of Texas, et al.

20

21

22

23

24

25
```

1                    P R O C E E D I N G S

2                    (The following proceedings were held via

videoconference before the United States Judicial Panel on

Multidistrict Litigation, at the John J. Moakley United States

Courthouse, 1 Courthouse Way, Boston, Massachusetts, on July

29, 2021.)

7                    JUDGE CALDWELL:  The panel will now turn to MDL 3010

regarding Digital Advertising Antitrust Litigation.

9                    We'll hear now from Eric Mahr.

10                   Mr. Mahr.

11                   MR. MAHR:  Good morning, your Honors.  My name is Eric

Mahr.  I'm with the firm of Freshfields Bruckhaus Deringer.  I

represent the Google defendants who have moved to centralize

the cases before the panel in the Northern District of

California for pretrial purposes and for both pretrial and

trial purposes in the case of the state plaintiffs.

17                   As the panel advises, I will focus my three minutes on

one point of emphasis and on updating the panel on recent

events.

20                   Google's ad tech products and services attempt to

generate the highest quality matches between on the one side

internet publishers who operate websites and apps, and on the

other side internet advertisers who seek to place digital

advertisements on those websites and apps.

25                   One of the many common issues that pervade these cases

before the panel will be whether all or part of Google's ad tech offering constitutes a two-sided transaction platform.  In Ohio v. American Express, the Supreme Court explained that antitrust cases addressing two-sided transaction markets, in those cases competition cannot be accurately assessed by looking at only one side of the platform in isolation. Instead, the court needs to evaluate competitive effects on both sides of the market.  As a result, the advertisers' claims in this litigation will require the court to evaluate competition on the publishers' side of the market and vice versa.

The misguided approach some of plaintiffs advance here of breaking this case up and putting the publisher cases in one district, the advertiser cases in another, and allowing the states to go forward in yet a third district, would very much encourage just the error the Supreme Court identified in Ohio v. American Express.  It just to us makes no sense to separate claims that the Supreme Court has expressly ruled must be considered together.  To do so would risk inconsistent rulings on these and other key common issues, a risk centralization would eliminate.

Turning to updates, in the eight cases before Judge Freeman in the Northern District of California, Judge Freeman remains the only judge in the country to have substantively engaged with the complex merits of this litigation, and in

1    doing so, she has given the parties important guidance on the

2    law that will apply to this case.  None of the other private

3    cases around the country have moved forward either on procedure

4    or substance.

5         In the Eastern District of Texas, the state

6    plaintiffs' case has actually managed to move backwards over

7    the last two months.  You may recall in their opposition to

8    centralization, the state plaintiffs told the panel that they

9    would be taking depositions this summer before this panel even

10   had a chance to rule on centralization.  Well, they certainly

11   failed in making good on that promise, and in fact, haven't yet

12   even noticed a deposition.

13        And in just this month, two additional states, South

14   Carolina and Louisiana, have sought to intervene adding new

15   state claims.  But, more importantly, in its reply brief on its

16   motion to intervene, South Carolina informed the court that,

17   quote, the plaintiff states anticipate filing a substantive

18   amended pleading to possibly winnow down and clarify points

19   made in the complaint.  As a result, not only has been there no

20   progress in the Eastern District of Texas on the merits or even

21   on discovery, but we now do not even have an operative

22   complaint in that case.

23        Thank you.

24        JUDGE CALDWELL:  Panel members, do you have questions

25   for counsel?

1          (No response.)

2          JUDGE CALDWELL:  Hearing none, we have your argument,

3     thank you.  You've reserved a minute for rebuttal.

4          We will now hear from Kevin Orsini.

5          MR. ORSINI:  Good morning, your Honors.  Kevin Orsini

6     from Cravath, Swaine & Moore on behalf of Facebook.

7          Facebook supports centralization in the Northern

8     District of California before Judge Freeman.

9          Your Honors, Facebook agrees with Google that all of

10    the cases that are at issue in Google's petition ought to be

11    centralized together for the purposes of efficiency for the

12    courts and the parties.  I don't need to repeat their

13    arguments, but I would like to emphasize two points.

14         First, with respect to Facebook, whatever the panel

15    does here with respect to the cases not involving Facebook we

16    do believe that at a minimum the 14 cases in which we are

17    defendants ought to be centralized, 13 of them are copycat

18    complaints filed in 13 different districts around the country

19    involving identical issues requiring identical discovery and at

20    least one overlapping firm in each of those cases.

21         I think judicial efficiency and efficiency to the

22    party clearly dictates those should be handled together at

23    least for pretrial purposes, and the only real issue there is

24    whether or not we could achieve those efficiencies otherwise

25    through informal coordination or motion practice in 13 courts.

1    I submit that would be far less efficient.

2         The remaining case in which Facebook is named as a

3    defendant is pending in D.C., it's actually three cases that

4    have been consolidated into one.  It, too, involves allegations

5    at its core about the alleged anticompetitive agreement between

6    Facebook and Google, the very same agreement that is at issue

7    in the 13 publisher cases.  And we submit that case ought to be

8    also consolidated or centralized for pretrial purposes at least

9    with those 13 publisher cases.

10        With respect to where the cases ought to be

11   centralized, we agree with Google that the Northern District of

12   California, and particularly Judge Freeman, is the best place

13   to go.  Google and Facebook are headquartered there, key

14   witnesses will be located there.  Judge Freeman has extensive

15   experience not only with Google ad tech cases but with general

16   antitrust cases also involving Facebook, as contrasted to, for

17   example, Texas where there really is no connection to the

18   jurisdiction other than the fact that the State of Texas has

19   filed their claim in the Eastern District.  The witnesses

20   aren't there, no other plaintiff is located in that

21   jurisdiction, and we respectfully submit, your Honors, that

22   it's not nearly as convenient.

23        And with that, I see my time has expired.

24        JUDGE CALDWELL:  Thank you, Mr. Orsini.

25        Judge Gorton.

1          JUDGE GORTON:  Mr. Orsini, if the panel chose to

2     centralize but for some reason chose not to send it to the

3     Northern District of California, what would your second choice

4     be?

5          MR. ORSINI:  Thank you, Judge Gorton.  I anticipated

6     that question because I think you asked me the same one when I

7     was before the panel for Robinhood a few months ago.

8          We obviously have one case in D.C., but I think the

9     Southern District of New York would make a lot of sense.  Both

10    parties, both defendants, Facebook and Google, have significant

11    presence in the Southern District, although they're not

12    headquartered there; and obviously the Southern District courts

13    are more than capable of handling MDLs and are very experienced

14    in that regard.

15         JUDGE GORTON:  Thank you.

16         JUDGE CALDWELL:  Other questions?

17         (No response.)

18         JUDGE CALDWELL:  Hearing none, we have your argument.

19    Thank you, Mr. Orsini.

20         MR. ORSINI:  Thank you, your Honors.

21         JUDGE CALDWELL:  The panel will now hear from Kate

22    Baxter-Kauf.

23         MS. BAXTER-KAUF:  Good morning, your Honors.  Kate

24    Baxter-Kauf from Lockridge Grindal Nauen in Minneapolis

25    appearing today on behalf of SPX Total Body Fitness.

1          We support centralization but not necessarily

2     consolidation in the Northern District of California.

3          The SPX Total Body Fitness matter is currently pending

4     in the Northern District of California in front of Judge

5     Gilliam.

6          Initially I wanted to note that SPX was previously

7     referred to in the case by the caption Kimberly Negron before

8     substitution of the proper parties, so there might be

9     references and other parties that refer to SPX in that way.

10         It is somewhat uniquely situated in so far we

11    represent a class of advertisers who advertised on Facebook,

12    which is a different class than some of the other actions.

13    Judge Freeman has already evaluated our case on a motion to

14    relate and rejected that SPX was related to the digital

15    advertisers' or publishers' cases currently pending before her.

16    As a result, we're currently pending before Judge Gilliam with

17    a motion to dismiss hearing set -- briefing set to commence

18    next month.

19         We're happy to proceed in front of either judge but

20    believe that coordinated discovery will aid all of the actions

21    and that since all of the defendants, significant witnesses,

22    and documents will be located in the Northern District of

23    California, that's the most appropriate forum.

24         Thank you.

25         JUDGE CALDWELL:  Questions from the panel?

1          (No response.)

2          JUDGE CALDWELL:  Seeing none, we thank you for your

3    argument.

4          MS. BAXTER-KAUF:  Thank you.

5          JUDGE CALDWELL:  The panel will now recognize Jordan

6    Elias.

7          MR. ELIAS:  Good morning.  Jordan Elias of the Girard

8    Sharp firm, interim co-lead counsel for the proposed advertiser

9    class in the Google digital ads case.

10          The advertisers we represent oppose centralization.

11    Our litigation is proceeding with coordinated advertiser and

12    publisher tracks, and an MDL would just set things back.

13          Google hasn't adequately addressed the Texas order

14    denying transfer.  A lot of that reasoning also applies to the

15    issues in front of the panel.  For example, our case is going

16    to involve class certification.  The AG case is out in front in

17    looking at how best to restore competition, and some of the

18    publisher opt-out cases may involve unique business

19    relationships.

20          It makes sense for more than one judge to hear cases

21    that focus on different aspects of this controversy under

22    different liability theories, especially when the cases are

23    positioned at different stages with the states in the lead and

24    our class actions ahead of everything else.

25          Judicial economy favors not interfering with these

1   ongoing proceedings.  Beyond the delay an MDL would cause and

2   the fact that we can coordinate discovery with the usual

3   methods even without an MDL, I wanted to point out that we have

4   here not one, but two monopolists in different markets both

5   urging the panel to create a single MDL.

6          Our clients filed the first case and haven't named

7   Facebook or claimed overcharges on social media ads.  In fact,

8   we've expressly excluded Facebook from the relevant market, and

9   our new complaint is going to explain in more detail why

10  advertising on Facebook isn't a reasonable substitute for

11  Google's broader set of ad tech services.

12         The panel should not insert Facebook and its market

13  into ongoing monopoly litigation that's focused on Google and

14  its markets.  That would only further complicate our case.

15         Judge Freeman has already ordered Google to produce in

16  our case the materials it provided in Texas, and we've been

17  coordinating closely with Ms. O'Keefe and the other publisher

18  class counsel.

19         In short, our coordinated litigation is working and

20  there's no reason to start over again, so the petition should

21  be denied.

22         Thank you.

23         JUDGE CALDWELL:  Judge Kennelly.

24         JUDGE KENNELLY:  So I'm a little hesitant to wade into

25  antitrust because I'm anything but an expert, but as I

1    understand it, the Texas case which is brought on behalf of

2    half a dozen or maybe 14 states is what's called a *parens*

3    *patriae* case, which means it's brought on behalf of anybody

4    that's in that state.  Aren't some of those same folks in your

5    class?

6                MR. ELIAS:  I think that is true, and --

7                JUDGE KENNELLY:  So how does it make sense then to

8    have these two cases which basically overlap, particularly if

9    you have 14 states, and who knows how many others might join

10   it, in two different places?  I'm just not getting that.

11               I have to say that the opposition of you folks and the

12   other folks on the plaintiffs' side to centralization in this

13   case is a little bit perplexing because this is the type of

14   case where in virtually every other situation we have before us

15   you guys are out in front asking to centralize because you

16   don't want to have all these gnats in other districts that are

17   interfering with your cases.

18               MR. ELIAS:  Well, your Honor, to take the second part

19   first, I think the answer is, as I've stated, that we're way

20   out in front, that we've made considerable progress.  Judge

21   Freeman has already issued a ruling on the motion to dismiss.

22               Our case involves different claims.  It doesn't name

23   Facebook, as some of these other cases do, and so we think that

24   that should continue and not be disturbed by an MDL.  Yes,

25   and --

```
 1              JUDGE KENNELLY:  The first part of my question.

 2              MR. ELIAS:  So that's a very complex question that

 3     would require further research.  Obviously we don't favor

 4     duplicative recovery.  There are treble damages available under

 5     the antitrust laws, and so I think that that would be an issue

 6     that would have to be worked out down the road.

 7              I'm sorry, I would want to research that further

 8     before responding to that, your Honor.

 9              JUDGE CALDWELL:  Other questions?

10              (No response.)

11              JUDGE CALDWELL:  All right.  Thank you very much.  We

12     have your argument.

13              MR. ELIAS:  Thank you.

14              JUDGE CALDWELL:  The panel will hear from Carol

15     O'Keefe.

16              MS. O'KEEFE:  Good morning, your Honors.  I am Carol

17     O'Keefe with the law firm of Korein Tillery, interim co-lead

18     counsel with Boies Schiller Flexner and Berger Montague,

19     representing all online website publishers who use Google's

20     tools to sell advertising space.

21              Publisher plaintiffs oppose centralization.  The panel

22     should not establish an MDL for two reasons:  First, because

23     efficient informal schedule coordination of discovery is

24     already occurring; and second, because centralization would

25     risk blurring several legally relevant distinctions between
```

these cases that otherwise appear deceptively similar.

The states have taken the lead in informal coordination and discovery.  Our publishers have benefitted as Google has been directed to provide us with materials produced in Texas v. Google.

Ongoing informal coordination of discovery will ease Google's burden where overlap truly exists while enabling publisher plaintiffs to pursue their discreet claims.

Centralization would harm all plaintiff groups because burdening any single judge with juggling the distinct governmental interest of the states, the unique interests of publishers, and the independent interests of advertisers jeopardizes the progress the states have made.  Allowing the state's case to proceed on its own in Texas with voluntary coordination will result in the most efficient and speedy resolution of all cases.

This case presents the unusual situation where a common defendant is accused of antitrust violations in related but distinct markets.  Centralization for pretrial proceedings could potentially cloud rather than clarify the legal issues.

For example, Google's recent briefing on separate motions to dismiss treated publishers and advertisers with the same broad brush, ignoring that they used distinct tools and are suing for Google's abuse of power in separate relevant markets where Google has harmed different sets of competitors

1    and customers.  Centralization would only further muddy those

2    waters.

3           It is in Google's interest to lump the entirety of

4    online advertising into one market thereby minimizing its role

5    and its power.  Centralization would advance that interest at

6    the expense of the analytical clarity required in this

7    antitrust litigation.

8           JUDGE CALDWELL:  Thank you.

9           Question, Judge Kennelly.

10          JUDGE KENNELLY:  So a short comment, and then a

11    question.

12          So the comment would be that if it's really true these

13    are two distinct markets, I would think a judge would be able

14    to figure that out, and the fact that one party is arguing

15    otherwise, that's no different from any other case.

16          My question, though, has to do with the question that

17    I asked of Mr. Elias and he said that he wanted to do more

18    research on.  So isn't there overlap between the recovery in

19    the *parens patriae* cases and the other cases, the advertiser

20    and the publisher cases?

21        MS. O'KEEFE:  Absolutely not.  15 USC Section 15c

22    directs that damages properly allocable to, quote, any business

23    entity should be excluded from a state's *parens patriae*

24    antitrust damages.

25          JUDGE KENNELLY:  Let me just pick up on that.

1          So a judge dealing with a *parens patriae case* is going

2     to have to figure out how to carve out individual damages that

3     are applicable to any particular person.

4          MS. O'KEEFE:  Any business entity is going be

5     excluded.  We've got advertisers, we've not publishers, those

6     are businesses.  There's very few individuals who sell online

7     advertising, very few individuals who buy online advertising.

8          JUDGE KENNELLY:  So basically what you're telling

9     me -- this is why I'm not an expert on this stuff -- what I

10    think I'm hearing you saying is that businesses are carved out

11    of the *parens patriae* cases.  Did I hear that right?

12         MS. O'KEEFE:  In the antitrust context, absolutely.

13         JUDGE KENNELLY:  Okay.  And so the states -- obviously

14    I can ask their counsel this -- the states then are actually

15    suing on behalf of individuals, like people like you or me or

16    somebody like that?

17         MS. O'KEEFE:  The viewers of ads, not their buyers,

18    not their sellers.

19         JUDGE KENNELLY:  Okay.  So what's their injury?

20         MS. O'KEEFE:  I think that's best addressed to the

21    state AG, but I will tell you from the publisher perspective,

22    not making enough ad revenue hinders their ability to provide

23    content online, and I think all individuals are injured by

24    that.

25         JUDGE KENNELLY:  Basically is the fact that the

1        Chicago Tribune is shrinking every day because they can't make

2        money.  That's hard to quantify.

3                Thanks, I have nothing further.

4                JUDGE CALDWELL:  Other judges?

5                (No response.)

6                JUDGE CALDWELL:  Thank you very much.

7                The panel will now hear from Serina Vash.

8                MS. VASH:  Good afternoon, your Honors.  Serina Vash

9        of Herman Jones, LLP.  Together with my colleagues from Robbins

10       Geller, the Fitzsimmons Law Firm and Farrell and Fuller, we

11       represent HD Media Company; AIM Media Industry Operating, LLC;

12       AIM Media Midwest Operating, LLC; AIM Media Texas Operating,

13       LLC; Brown County Publishing Company; Clarksburg Publishing

14       Company; Coastal Point, LLC; Eagle Print Company; Essence

15       Corp.; Emerick Newspapers, Inc.; Flag Publishing, Inc.; Gale

16       Force Media; and The Journal, Inc., which I will refer to as

17       the local newspaper plaintiffs.

18               The local newspaper plaintiffs oppose centralization.

19               Your Honors, these 13 cases are brought in the local

20       district where these local newspaper plaintiffs serve their

21       local communities, where their witnesses and documents are

22       located, and where the devastating effect of Google's

23       anticompetitive conduct, including its bid rigging with

24       Facebook, are being felt; where journalism news gathering and

25       investigative reporting, particularly local journalism, are

1    being eviscerated.

2         Centralization as respect these plaintiffs will not

3    serve the convenience of the parties and the witnesses and will

4    not promote a just and efficient disposition of the cases.

5         If these local newspaper plaintiffs are tossed into a

6    large MDL, they will be swallowed up in the maelstrom of class

7    action cases causing substantial prejudice to already

8    struggling local newspapers.

9         The relevant evidence is largely in the East Coast.

10   Google's own evidence, witnesses, and documents are largely in

11   the Southern District of New York.  This case can and will be

12   informally coordinated; it's not too massive to coordinate.

13   There are two sets of lawyers that need to coordinate as

14   respect the newspaper plaintiffs, that is, Herman Jones and our

15   colleagues, and the Kellogg Hansen associate who represents the

16   associated the newspapers and the Daily Mail.

17        If the panel is inclined to coordinate, we would favor

18   the Eastern District of Texas.  It is much more convenient for

19   the newspaper plaintiffs.  Google has answered.  There's a

20   trial date.  Three million pages of documents and broader

21   discovery has already been undertaken.  The market is in line

22   with what the newspaper plaintiffs have pled.  The harm is in

23   line with what the newspaper plaintiffs have pled.  Allegations

24   of Facebook are in front of the Eastern District of Texas, and

25   they have no pending MDLs.

1           Your Honors, speed matters in this case, and speed

2      favors plaintiffs; delay favors Google.

3           One of our clients is the Westfield Leader.  The

4      Westfield Leader is my local newspaper.  The Leader is 131

5      years old, that's 108 years older than Google and 114 years

6      older than Facebook.

7           Your Honors have everything you need to make a

8      decision that will lead to the just --

9           JUDGE CALDWELL:  Your time is up.

10          MS. VASH:  Thank you, your Honor.

11          JUDGE CALDWELL:  All right.  Questions from the panel?

12          (No response.)

13          JUDGE CALDWELL:  Hearing none, we thank you for your

14     argument.

15          MS. VASH:  Thank you, Judges.

16          JUDGE CALDWELL:  We'll now hear from John Thorne.

17          Mr. Thorne.

18          MR. THORNE:  Thank you, Judge Caldwell, members of the

19     panel.  My name is John Thorne.  I'm a partner with Kellogg

20     Hansen Todd Figel & Frederick.  I represent Daily Mail, the

21     world's most popular English language newspaper and the largest

22     of the publishers, the private publishers to sue Google in

23     these cases.

24          We oppose Google's motion, but if you centralize

25     further, we have proposed that you divide the work across three

```
 1    district courts.

 2         I just want to emphasize two things in this brief

 3    argument.  First, the Southern District of New York is the best

 4    forum for the publisher cases, and that's because New York is

 5    the center of publishing.  New York is where the harm is most

 6    felt and where most of the witnesses are.  There are two

 7    newspaper trade associations that filed amicus briefs with you.

 8    They urge you to centralize the publisher cases in the Southern

 9    District of New York.

10         Google in the transfer argument in Texas counted up

11    its relevant witnesses and agreed.  It has more witnesses in

12    New York than it does in California.  The reason is Google's

13    search business is in California but its publisher business is

14    in New York.  They got into the publisher business by buying a

15    company called DoubleClick.  DoubleClick was based in New York

16    because that's where the publishers are.  Google has a New York

17    office that takes up an entire city block of Manhattan on 8th

18    Avenue between 15th and 16th Streets.

19         Small publishers sued in California because they're

20    required to under their forum selection clauses with Google.

21    The big publishers, for the most part, have forum selection

22    causes requiring them to sue in the Southern District of New

23    York.  You do not need to be a Silicon Valley judge to decide

24    these cases, but it would help to have some financial markets

25    experience.
```

1          We cited in our brief some of the financial markets

2     antitrust cases decided in the Southern District.  Google

3     didn't respond to those in its reply, but Google cited American

4     Express and U.S. Airways v. Sabre, those are also cases coming

5     out of New York.

6          Second point, and I won't belabor this, but it's the

7     most important point, and that is, there is some urgency here.

8     Daily Mail is seeking an injunction, the state attorneys

9     general are seeking injunctive relief; the harm to competition

10    is ongoing.  We cited in our brief Congressional findings that

11    Google is harming publishers with the conduct that's described

12    in our complaints.

13         The Chicago Tribune is WGN, Judge Kennelly knows the

14    world's greatest network newspaper.  We have lost 2,000

15    newspapers in the last decade; we're on pace to lose another

16    100 newspapers this year.

17         We would urge you to divide the work between we

18    propose three different district courts in order to try to

19    expedite the resolution getting to the merits.

20         Thank you.

21         JUDGE CALDWELL:  Questions for counsel?

22         (No response.)

23         JUDGE CALDWELL:  Hearing none, we'll hear now from

24    Jonathan Rubin.

25         Counsel, I'm going to ask you to carefully watch the

1    red light.  It appears that if you continue to talk, we cannot

2    interrupt you except by giving visual signals.  So we could ask

3    that you respect our time limitations.

4           Please continue.

5           MR. RUBIN:  Good morning.  Good morning, and may it

6    please the court.  My name is Jonathan Rubin.  I'm with

7    MoginRubin, LLP.  We represent Cliffy Care Landscaping, LLC,

8    Kinin, Inc., and Raintree Medical and Chiropractic, LLC against

9    defendants Facebook and Google.

10          The Cliffy Care plaintiffs seek to remain independent.

11          The plaintiffs in Cliffy Care were directly injured by

12   the 2018 Jedi Blue agreement between Facebook and Google.  Our

13   claim is solely for violation of Section 1 and makes no claim

14   of monopolization against Google or anyone else under Section

15   2.

16          Because the complaint seeks liability against the

17   defendants jointly and severally, Facebook must be made a

18   defendant before any court to which the case is transferred.

19   This includes Judge Freeman, who has made her preference clear

20   not to adjudicate claims or factual issues that affect Facebook

21   in the midst of a massive two-prong monopolization case by

22   advertisers and publishers against Google.

23          Google says in their memorandum on page 6 that Judge

24   Freeman's ruling declining to relate the SPX to the advertiser

25   cases was an error, but Judge Freeman knows Facebook's business

1    well having presided over Reveal Chat, and her views on this

2    should be given great deference.

3          No pending action other than Cliffy Care seeks redress

4    for injuries specifically flowing from the Jedi Blue agreement,

5    including SPX.  SPX names only Google, alleges injury flowing

6    from Google's advertising monopoly, says nothing about direct

7    economic effects of the agreement, and is brought by purchasers

8    of Facebook advertising not directly covered by the Jedi Blue

9    agreement.

10          And it's similar with the AIM Media 13 local newspaper

11    cases and the Texas AG cases which tack on a perfunctory

12    Section 1 count but describe competitive harm that flows from

13    Google's monopolization and not from the operation of the

14    agreement itself.  Because the claim, legal theory, injury,

15    parties, and class are fundamentally different, nothing in the

16    Cliffy Care case will effect the probative value of the Jedi

17    Blue agreement as evidence of other claims in other courts.

18    Thus, there is no danger of inconsistent rulings.

19          The Cliffy Care plaintiffs respectfully request to

20    remain independent, and I thank the panel for its attention.

21          JUDGE CALDWELL:  Thank you.

22          Questions for counsel?

23          (No response.)

24          JUDGE CALDWELL:  Hearing none, we thank you for your

25    argument.

1          We will turn to the next counsel, Mark Lanier.

2          MR. LANIER:  May it please the court, thank you, your

3     Honors.  My name is Mark Lanier.  I represent a number of

4     the -- well, I represent all of the states and the District of

5     Puerto Rico, Alaska, Arkansas, Florida, Idaho, Indiana,

6     Kentucky, Louisiana, Mississippi, Missouri, Montana, Nevada,

7     North and South Dakota, Texas, Utah, and Puerto Rico.

8          I oppose centralization of this case, and with that, I

9     will commence.  May it please the Court.

10          Judge Kennelly, I'm coming straight to you because

11     this is the first time in my entire life to argue for no

12     centralization in front of the JPML, and I will be using some

13     of the arguments that have been used so effectively against me

14     over the years as I try to do this.

15          There are three arguments to make in two quick

16     minutes.

17          Number one, urgency.  Speed really is important here.

18     It's important for a number of reasons, including the fact that

19     there's an inherent amount of immense power that we've seen

20     exercised in elections and other places as well in the hands of

21     Google.  And we believe that the legislators recognize the

22     importance of urgency here.  We have tried to do what we think

23     the JPML has urged us to do before, and that is, consolidate

24     all of these cases.  Even the two pending cases wanting to

25     intervene in Louisiana and South Carolina are seeking our

1  counsel as well, and that I'll represent Louisiana in that

2  intervention and ultimately South Carolina I expect as well.

3  So we're trying to consolidate as best as we can without

4  imposing on the JPML and all that it requires.

5          It's also important for the court to understand that

6  we've been intensely involved in this.  We've got two years

7  going now because of all of the pretrial work.  We took over 50

8  statements, equivalent to depositions, before filing the case.

9  We've got over two million documents.  We've got documents and

10 information from 25 third parties at this point.  We have won

11 the 1404 transfer motion because Google uses Texas as one of

12 its nexus points for all of its technology.

13         So within the framework of that argument, two,

14 substance.  The *parens patriae* not covered here.  We are

15 seeking to recover for individuals in a different sense.  For

16 example, we want to disgorge the private data that's been

17 secured wrongly by Facebook.

18         Final point, three, clarification.  Judge Jordan has

19 taken a strong look at this case, a strong active involvement.

20 He's issued a protective order, he's issued a 1404 motion.

21 We've got discovery under way, we've got -- documents have been

22 scheduled.

23         Thank you.

24         JUDGE CALDWELL:  Questions for Mr. Lanier?

25         Judge Kennelly.

1          JUDGE KENNELLY:  I have two, let me ask the first one,
2     and then I'll ask the other one.
3          The first one goes back to the questions I asked some
4     of the other folks, which are really more questions for you.
5          So I get that you're asking to break up and I get that
6     you're asking for disgorgement, but the complaint also says
7     you're asking for damages.  And as I understand the *parens*
8     *patriae* part of the claim which has been described by some of
9     the other counsel, you're suing on behalf of natural persons,
10    quote-unquote, that's what the statute says, and you have to
11    carve out any business entities or anything like that.
12         So am I right -- so who are the -- what's the damage
13    to the natural persons in the 14 or so states that you
14    represent?
15         MR. LANIER:  Your Honor, the damage falls by and large
16    into the civil protection actions that I'd emphasize to you
17    right now.  In Texas it's the deceptive Trade Practices Act.
18    It says that an entity, like Google, cannot falsely
19    misrepresent that they're destroying everybody's individual
20    data and not selling it when, in fact, they are selling it and
21    they're not destroying it.  And so we've got an action for
22    that.  That's not found in any of the class actions that have
23    been sought.  That is solely an individual distinct action.
24         Yes, sir.
25         JUDGE KENNELLY:  So my question was what about

1    the Clayton Act.  So what are the damages under -- what are the

2    federal antitrust damages that you can get in a *parens patriae*

3    case that are distinct from damages to these entities that sue

4    the publishers and the advertisers?

5           MR. LANIER:  Well, the publishers and advertisers will

6    both have business damages; the State of Texas won't.

7           JUDGE KENNELLY:  What are the damages -- in your

8    complaint, which I'm looking at here, you ask for damages under

9    section -- under the Sherman Act and at Clayton Act.  What are

10   the damages that are available to you as the representative of

11   the states, as the representative of their citizens under the

12   Clayton Act?  What's my loss -- if I live in Texas, what's my

13   loss?

14          MR. LANIER:  Your Honor, it would have to be

15   discovered under -- the expert witnesses will have to come up

16   with some type of an economic number for the individuals, and

17   that's different and apart from all of the business numbers.

18          JUDGE KENNELLY:  With respect, Mr. Lanier, I asked

19   that question three times; I didn't get an answer, so I'll just

20   move on.

21          MR. LANIER:  I apologize, Judge.  I'm not

22   understanding the question then because I really thought I was

23   answering it head on.

24          We don't know the specific amount of damages that

25   would accrue to each individual person.

1          JUDGE KENNELLY:  What's the theory of damages?  What's

2     the theory on which I as an individual person lost money?

3          MR. LANIER:  The theory would be the idea that you

4     ultimately are paying more for products because all of those

5     products have built within them advertising costs.  The

6     advertising costs are artificially inflated, the cost you spend

7     for a product is artificially inflated as well.  And how the

8     dynamic of that flows through is going to take some expert

9     work.

10          JUDGE KENNELLY:  Excellent.  So what that means,

11     though, is whoever that expert is, is going to have to divvy

12     out the harm that flows to me as distinct from the harm that

13     flows to these advertisers who are having to pay these inflated

14     rates and the publishers who are having to pay inflated rates

15     to the advertisers.

16          MR. LANIER:  True, true.

17          JUDGE KENNELLY:  Isn't that the best argument for all

18     these cases to be in front of one judge?  Somebody is going to

19     have to sort it out.

20          MR. LANIER:  No, your Honor, I don't think it is --

21     strike that.

22          It's the best argument, but I don't think it's an

23     adequate argument, because I think what we're dealing with here

24     is much bigger than this problem at all.  But this is why we've

25     argued in the alternative please put it in Northern Dallas,

1   Plano, Judge Norton.

2            JUDGE KENNELLY:  That's a good segue to my second

3   question, I'll just ask it and then shut up.

4            So my second question is this:  I think there's four

5   districts in Texas, right?  Why didn't you choose the Eastern

6   District as opposed to the Northern District, which is where

7   Dallas is, where it's close to the capital where the Attorney

8   General sits or some other district or maybe the district where

9   your office is, which is Houston.

10           MR. LANIER:  Judge Kennelly, I was the one who made

11  that decision so this is the direct reason:  We were able to

12  file within certain divisions within each district.  So when we

13  filed in the Eastern District, we filed in the Plano division,

14  which is really just North Dallas.  It's the centerpiece; it's

15  close to the airport.  It's -- I don't even understand why it's

16  not part of part of the Northern District because it's the

17  Northern District.  It gives us all of the access and benefits

18  of Dallas, but it also gives us an easy-to-get-to courthouse

19  that has a really fast docket because it exists under the

20  Eastern District docket rules.

21           JUDGE KENNELLY:  Thank you.

22           JUDGE CALDWELL:  Thank you very much, Mr. Lanier.  We

23  have your argument.

24           Mr. Mahr, you have one minute reserved.

25           MR. MAHR:  Thank you, your Honors.  There was a lot of

1    testimony there, and I won't be able to address it all, but I

2    did think the most compelling testimony was from Mr. Elias and

3    Ms. O'Keefe who made quite a persuasive case as how well Judge

4    Freeman is handling these cases, the cases before her, and how

5    she's worked out the -- handling both the publisher and

6    advertisers' cases.  I understand they might want to keep it to

7    herself, but I think that the interest of justice and efficient

8    conduct of these litigations suggest that all the cases should

9    be there.

10            Second, Judge Kennelly appropriately noted the overlap

11   between the classes.  I haven't seen the states in any way in

12   the Texas case say that their case only represents individuals,

13   nor do they concede that they're not representing publishers

14   and advertisers.  They have, in fact, touted the representation

15   of small businesses not only under the antitrust laws but under

16   the 30-plus state laws they filed.

17            Finally, I don't think coordination will work.  I

18   think you heard from the state AGs.  They want to go faster.

19   They said they were to going to take depositions without the

20   others, they didn't do that, but they certainly are not

21   intending to coordinate.

22            Thank you.

23            JUDGE CALDWELL:  All right.  Thank you very much.

24            Questions?

25            (No response.)

```
 1            JUDGE CALDWELL:  Hearing none, we have your argument,
 2      and that concludes the matter MDL number 3010, and our
 3      arguments for the day.
 4            The panel will be in recess.
 5            (Court adjourned at 11:20 a.m.)
 6                  - - - - - - - - - - - -
 7                        CERTIFICATION
 8            I certify that the foregoing is a correct transcript
 9      of the record of proceedings in the above-entitled matter to
10      the best of my skill and ability.
11
12
13
14      /s/Debra M. Joyce                 August 3, 2021
        Debra M. Joyce, RMR, CRR, FCRR    Date
15      Official Court Reporter
16
17
18
19
20
21
22
23
24
25
```