IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| THE STATE OF TEXAS, et al., | § § § | |
| Plaintiffs, | § | |
| v. | § § | Civil Action No. 4:20-cv-00957-SDJ |
| GOOGLE LLC, | § § | |
| Defendant. | § § | |

**<u>GOOGLE LLC'S BRIEF REGARDING THE USE OF A SPECIAL MASTER</u>**

Given the Court's belief that a Special Master should be appointed, Google respectfully submits that it is premature to appoint one until specific discovery disputes are ripe. Doing so now would invite the creation and litigation of discovery issues, rather than their resolution. Although Plaintiffs have suggested a litany of inchoate "Pending Discovery Issues," E.D. Tex. Dkt. No. 176, there are no pending motions to compel in this case and there are currently no discovery disputes that otherwise require this Court's intervention.

Over the life of this litigation and investigation, Google has produced an extraordinary volume of documents and data, largely without judicial intervention. The parties have narrowed discovery disputes through the usual meet-and-confer process and, when necessary, Judge Castel promptly addressed any remaining issues without the need for a Special Master or a Magistrate Judge. There is no reason to deviate from that successful path now or to think that any issues the parties cannot resolve "cannot be effectively and timely addressed by an available district judge or magistrate judge" in this District. Fed. R. Civ. P. 53(a)(1)(C).

This Court has already invested significant time and energy into this case, and Google believes this Court is well-situated to address any disputes that may arise. *See La Buy v. Howes Leather Co.*, 352 U.S. 249, 256 (1957) (holding that the district judge's "knowledge of the cases . . . point[ed] to the conclusion that he could dispose of the litigation with greater dispatch and less effort than anyone else"). And although Federal Rule 53 has been amended over time to afford greater flexibility to appoint a Special Master when resources within the District are insufficient, it remains the case that a "pretrial master should be appointed only when the need is clear," and that "a broad delegation of pretrial responsibility . . . can run afoul of Article III." Fed. R. Civ. P. 53, Advisory Committee Notes (2003 Amendment).

This brief addresses Plaintiffs' illusory "Pending Discovery Issues" (section I) and the

procedural safeguards that should apply in the event a Special Master may be needed at some point in the future (section II). Pursuant to the Court's Order, E.D. Tex. Dkt. No. 187, this brief also identifies potential Special Master candidates in the event that discovery disputes materialize that cannot efficiently be addressed through the normal meet-and-confer process and, where necessary, with existing judicial resources (section III).

### I. Referral To a Special Master Would Be Premature at This Juncture Because There Are No Pending Discovery Issues.

To bolster their case for a Special Master, Plaintiffs assert various purported "Pending Discovery Issues." *See* E.D. Tex. Dkt. No. 176. But many of those "issues" were resolved months (and, in some cases, years) ago—either through the meet-and-confer process or rulings from Judge Castel. And others are not yet ripe, as Plaintiffs concede. *Id.* at 6 ("[I]f the parties are unable to resolve these outstanding issues, they should be considered and decided by the proposed Special Master."). As set forth below, Plaintiffs have not identified any disputes requiring this Court's intervention, so it would be premature to appoint a Special Master now.

**Linked documents**. The parties litigated linked documents more than nine months ago. MDL Dkt. Nos. 468 at 1, 500 at 2–3, and 501 at 5–6; *see also* Feb. 22, 2023 MDL Hr'g Tr. Judge Castel resolved the dispute by entering a provision that incorporated aspects of both sides' submissions as to links, MDL Dkt. No. 508, Appx. 1 § J, and this Court entered the same provision. E.D. Tex. Dkt. No. 183, Appx. 1 § J.

There are no ripe disputes regarding compliance with the links provision. The ESI Order permits a party to "make reasonable and proportionate requests that the producing party conduct a reasonable search for relevant documents identified via hyperlinks." Dkt. No. 183, Appx. 1 § J. Plaintiffs have made no such requests, and Google remains available to confer should Plaintiffs make any. To the extent that Plaintiffs intend to re-litigate Judge Castel's order, such a dispute

2

would be well outside the appropriate scope of a Special Master.[1]

**Chats**. Plaintiffs assert that there are "[i]ssues with Google's production of internal chats." Dkt. No. 176 at 6. But the parties met and conferred regarding Google Chat retention in *February 2020*. Plaintiffs confirmed in writing that they understood Google's practices and then said nothing further to Google about Chats *for years*. When the parties subsequently discussed preservation obligations as part of the MDL ESI Order negotiations in late 2022, Plaintiffs likewise raised no questions about how Chats are retained. Google has produced responsive Chats retained pursuant to these disclosed policies for agreed custodians applying agreed search terms. Plaintiffs have made no motion nor raised any specific issue regarding Chats. There simply is no "issue" for Google or the Court to address.

**Source code**. In July 2023, Google made 80 gigabytes of source code available for inspection, including auction and bidding code for the ad tech products at issue. Plaintiffs now assert that their "ongoing review of Google's source code has identified a number of highly relevant source code files that have not been made available for inspection." *Id.* at 6. But Plaintiffs have not requested any additional code. At present, there is no dispute to adjudicate.

As to review tools, the parties litigated the contours of a source code protocol more than 18 months ago. MDL Dkt. Nos. 294, 295. The resulting protocol requires the producing party to "make a good faith effort to provide legitimate review tools . . . as requested by the Receiving Party." E.D. Tex. Dkt. No. 174-1 at 8. Google accommodated Plaintiffs' request for two specific

---

[1] Plaintiffs now assert that linked documents "should be produced with the parent or referencing documents, just as attachments are produced." E.D. Tex. Dkt. No. 176 at 6. But the ESI Order that Plaintiffs agreed to in this case treats attachments and links differently. That is, "[d]ocument families must be produced, even if only the parent email or an attachment to an email is responsive," but "documents that are linked are not part of the same family for purposes of th[e] [ESI] Order." E.D. Tex. Dkt. No. 183 Appx. 1 § A.

3

review tools (PowerGrep and Understand) when Google made the code available earlier this year. Plaintiffs now assert that "a number of data files []require specialized software to review, but no such software has been provided on the review computer." E.D. Tex. Dkt. No. 176 at 6. But Plaintiffs have not identified such files or the tools supposedly needed to review them. And any such requests could be most efficiently addressed, in the first instance, through the meet-and-confer process.

**Data and ad logs**. Google has produced 200 terabytes of data covering billions of ad queries. Plaintiffs now complain of "outstanding requests for various data that Google generates and logs as part of the display ad auction process" and that "Google has yet to produce a number of relevant auction data sources." *Id.* But Plaintiffs have not identified any datasets or data sources that they have requested and that Google has yet to provide.

**Dashboards**. At the December 14, 2023 Conference, Plaintiffs asserted that they were missing certain "dashboards." Dec. 14, 2023 Hr'g Tr. at 15:10–19. The parties met and conferred regarding "dashboards" in 2022, and then briefed the burden of preserving them. MDL Dkt. No. 434 at 7–8. The resulting ESI Order reflects that the parties were unable to reach agreement on these issues. *See* MDL Dkt. No. 508 at 5 n.3; E.D. Tex. Dkt. No. 183 at 5 n.3. Plaintiffs have not raised the issue since, so Google was surprised to hear them resurrect it at the recent Conference without first meeting and conferring with Google. Again, there is no ripe issue to adjudicate.

**DOJ Deficiency Letter**. At the December 14 Conference, Plaintiffs asserted that the DOJ had "alerted" Plaintiffs to a deficiency letter sent to Google. Dec. 14, 2023 Hr'g Tr. at 15:20–22. Google timely responded to that letter that the concerns raised lacked foundation and did not merit follow-up in light of Google's comprehensive productions. The DOJ has not moved to compel.

**Clawbacks**. Plaintiffs concede that there are "no pending clawback challenges," E.D. Tex.

4

Dkt. No. 176 at 9, so there is nothing for a Special Master to do at this time. Plaintiffs contend that they may "propose bellwether rulings on a small number of challenged documents" to "inform the parties' other privilege assertion,"[2] *id.* at 9, like they asked Judge Castel to do back in November 2022.[3] To the extent that a second round of "bellwether" rulings proves necessary, Google submits that illustrative rulings for a "small number of challenged documents" would be most useful and appropriate from this Court rather than a Special Master. *See* Fed. R. Civ. P. 53(a)(1)(C) (referral appropriate for something that "cannot be effectively and timely addressed by an available district judge or magistrate judge").

**Privilege logs**. Plaintiffs recently requested that Google re-review its privilege logs. Although Google disagreed with Plaintiffs' asserted deficiencies, Google agreed in good faith to undertake a reasonable re-review of those log entries. That review is underway, so there is nothing to bring to the attention of a Special Master or the Court at this time.

**Plaintiffs' Discovery Deficiencies**. Google has raised concerns with Plaintiffs' deficient productions and Interrogatory responses—including those seeking basic details about who Plaintiffs represent in this case. E.D. Tex. Dkt. No. 156 at 4. The day before the parties' discovery status reports were due, Plaintiffs provided revised Interrogatory Responses revealing that— despite their repeated statements to the contrary—Texas and multiple other Plaintiffs are *not*, in fact, proceeding as *parens patriae*. Plaintiffs have since advised Google that they intend to further amend their Interrogatory Responses to correct errors and inconsistencies on this critical point.

---

[2] It is too late to challenge most clawbacks. The governing Confidentiality Agreement provides that, pursuant to Federal Rule 26(b), any clawbacks must be "promptly" challenged. E.D. Tex. Dkt. No. 182 at 16. It has been over a year since Plaintiffs last challenged any of Google's clawbacks.

[3] MDL Dkt. No. 369 at 8. ("At this stage of the litigation, the Court should issue 'bellwether' rulings on the status of four documents.").

5

Google hopes that the parties can continue to iron out these issues by meeting and conferring, particularly given the discipline imposed by monthly appearances before this Court. But to the extent that impasse is reached, these threshold issues are not suitable for referral to a Special Master. Plaintiffs are seeking unquantified damages and structural relief based on shifting theories on behalf of an unspecified mix of sovereign and private interests. Google respectfully submits that this Court should directly address these issues.

## II. Any Special Master Appointment Should Be Limited in Scope and the Special Master Should Be Bound by the Federal Rules.

Should the Court decide to appoint a Special Master, any delegation of Article III functions should be accompanied by appropriate procedural safeguards.

*First*, any Special Master's remit should be limited to discovery disputes that are ripe for resolution, *i.e.*, those that the parties have attempted—but failed—to resolve via the meet-and-confer process. Many of the "Pending Discovery Issues" that Plaintiffs identified in their Discovery Status Report came as a surprise to Google because Plaintiffs had not first raised them with Google (and have yet to follow up). Permitting parties to circumvent the usual meet-and-confer process would introduce—rather than eliminate—inefficiencies.

*Second*, any Special Master's remit should be limited to discovery disputes that "cannot be effectively and timely addressed" by the assigned District Judge. *See* Fed. R. Civ. P. 53(a)(1)(C). This Court has invested significant time and energy learning the background of this case and is therefore best situated to address any issues that arise. While Google is mindful of the Court's workload and the need for efficiency, the "Pending Discovery Issues" identified by Plaintiffs so far are illusory. And to the extent that any disputes actually materialize, they will likely be far narrower in scope than Plaintiffs portend.

*Third*, the Federal Rules of Civil Procedure should apply. The alternative process proposed

6

by Plaintiffs contemplates accelerated timetables and abbreviated submissions. E.D. Tex. Dkt. No. 176 at 2. Such a regime would incentivize the parties to go straight to the Special Master rather than invest the time to seek a negotiated solution. And Plaintiffs' proposals would be prejudicial if, for example, a fact-intensive dispute required affidavits to support a privilege assertion (as has happened in the MDL). If any modifications to the Federal Rules are needed, those modifications should be made with appropriate input from the Court, the parties, and the Special Master (if one is appointed).

*Finally*, any decisions by a Special Master should be appealable to this Court. *See* Fed. R. Civ. P. 53(f)(2) (explaining parties may object or move to adopt or modify a master's order, report, or recommendation.). Plaintiffs initially sought to eliminate this critical oversight role, E.D. Tex. Dkt. No. 176 at 2 (proposing that "decisions are final and not subject to party objections to the Court, unless they relate to privilege assertions"), but then changed course, stating that "the special master's orders would be appealable," Dec. 14, 2023 Hr'g Tr. at 22:11–12. Google objects to any procedure that undermines or removes this Court's critical supervisory authority under Rule 53.

### III. Google's Candidates for a Special Master, Should the Need Arise.

Google has met and conferred with Plaintiffs but has been unable to reach agreement on suitable candidates for a potential Special Master. To the extent that one is required, Google proposes the following candidates: the Honorable Nancy Atlas, retired U.S. District Judge in the Southern District of Texas, and the Honorable Jeff Kaplan, retired U.S. Magistrate Judge in the Northern District of Texas. Both are experienced, well-respected former judges and litigators who would be well-suited to address discovery issues referred by this Court. Google will follow the Court's guidance to ensure that any Special Master is available to timely assist should the need arise.

Dated: December 22, 2023                                Respectfully submitted,


  /s/ R. Paul Yetter
R. Paul Yetter
State Bar No. 22154200
YETTER COLEMAN LLP
811 Main Street, Suite 4100
Houston, Texas 77002
(713) 632-8000
pyetter@yettercoleman.com

Eric Mahr (*pro hac vice*)
FRESHFIELDS BRUCKHAUS DERINGER LLP
700 13th Street NW, 10th Floor
Washington, D.C. 20005
(202) 777-4545
eric.mahr@freshfields.com

ATTORNEYS FOR DEFENDANT
GOOGLE LLC

**CERTIFICATE OF SERVICE**

      I certify that on this 22nd day of December, this document was filed electronically in compliance with Local Rule CV-5(a) and served on all counsel who have consented to electronic service, per Local Rule CV-5(a)(3)(A).

                                                              */s/ R. Paul Yetter*