IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| THE STATE OF TEXAS, et al., | § § § | |
| Plaintiffs, | § | |
| v. | § § | Civil Action No. 4:20-cv-00957-SDJ |
| GOOGLE LLC, | § § | |
| Defendant. | § § | |

**GOOGLE LLC'S MOTION FOR DISMISSAL PURSUANT TO RULE 12(b)(1)**

## INTRODUCTION

Texas, joined by sixteen other states ("States" or "Plaintiffs"), filed this lawsuit attacking Google's ad tech business with the stated goal to "break[] up" Google.[1] The lawsuit is an amalgam of state law claims, under seventeen different state antitrust and consumer protection statutes, held together and in federal court by a common claim that Google violated federal antitrust laws. *See* Fourth Am. Compl. ("FAC" or "Complaint"), *In re: Google Dig. Advert. Antitrust Litig.*, No. 1:21-md-03010 (S.D.N.Y. May 5, 2023), ECF No. 541 ¶¶ 33-36. But as the Fifth Circuit's recent decision in *Harrison v. Jefferson Parish School Board*, 78 F.4th 765 (5th Cir. 2023) makes clear: the States lack standing to bring these claims in federal court.

The States describe their claims as broadly as possible. They collectively purport to "bring this action in their respective sovereign capacities and as *parens patriae* on behalf of the citizens, general welfare, and economy of their respective states," FAC ¶ 31, and to seek "structural, behavioral, and monetary relief," FAC ¶ 30. To those ends, the Complaint includes all categories of potential plaintiffs, alleging anticompetitive effects on rivals, advertisers, publishers, and consumers. FAC ¶¶ 29-30. But while sweeping omnibus allegations may make for good sound bites, they are unsound as a foundation for Article III jurisdiction.

When Google sought answers about the claims being brought and in what capacity they are asserted, the States demurred and instead claimed to seek all available remedies listed in the Complaint. But in disclosures made last month—and separately confirmed on the record—the States overhauled their theories of standing. Some States abandoned *parens patriae* standing, some abandoned sovereign standing, and one is pursuing both.

---

[1] *Texas AG Says Break-Up, All Other Remedies on the Table in Google Probe*, Reuters (Feb. 5, 2020), https://www.reuters.com/article/us-usa-google-texas/texas-ag-says-break-up-all-other-remedies-on-the-table-in-google-probe-idUSKBN1ZZ2OH.

The States' evasiveness and diverging positions betray the tenuousness of the States' approach—an attempt by seventeen states to use federal court to collectively enforce federal and state laws against a private actor. The Fifth Circuit considered and rejected Louisiana's similar attempt in *Jefferson Parish*. 78 F.4th at 767. In that case, the court held that Louisiana had neither sovereign nor *parens patriae* standing to enforce federal and state laws in federal court.

*Jefferson Parish* governs here and establishes:

- *First*, the States have no sovereign or *parens patriae* standing to bring their state law claims in federal court.
- *Second*, the States have no sovereign or *parens patriae* standing to bring their federal antitrust claim.
- *Third*, without standing to bring a federal antitrust claim, there is no supplemental jurisdiction over the state law claims under the time-of-filing rule.

As such, Google respectfully submits that the States lack standing, and the Complaint should be dismissed with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(1).

## RELEVANT BACKGROUND

The background of this case is set forth in Google's parallel Rule 12(b)(6) motion to dismiss the state law claims. For purposes of this motion, Google adds the following.

On December 6, 2023, the States updated their interrogatory responses. Those updates reveal that eleven States are no longer proceeding as *parens patriae*. *See* Ex. A, States' 3rd Am. Resps. to Google LLC's First Set of Rogs. (Dec. 6, 2023). The States confirmed their position in Court. *See* Dec. 14, 2023 Hr'g Tr. at 49:19-50:11.

According to the States' December 6 interrogatory responses, eleven States proceed in their sovereign capacity and not *parens patriae*: Texas, Alaska, Florida, Idaho, Indiana, Kentucky, Mississippi, Missouri, Montana, South Carolina, and Utah. Five States proceed as *parens patriae*

and not in their sovereign capacity: Arkansas, Louisiana, South Dakota, North Dakota, and the Commonwealth of Puerto Rico. Only one State, Nevada, proceeds on both grounds. Ex. A.

These positions are not disputed and have been confirmed on the record before the Court. Under either theory, the States lack standing.

## LEGAL STANDARD

Article III limits jurisdiction to "cases" and "controversies." *Massachusetts v. E.P.A.*, 549 U.S. 497, 516 (2007). This means federal courts have limited jurisdiction confined to deciding questions presented "in an adversary context and in a form historically viewed as capable of resolution through the judicial process." *Id.* (quoting *Flast v. Cohen*, 392 U.S. 83, 95 (1968)).

To establish Article III standing, a litigant—including a state litigant—"must show (1) an injury in fact that (2) is fairly traceable to the conduct complained of and (3) redressable by a favorable judicial decision." *Jefferson Parish*, 78 F.4th at 769 (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)). While "'[s]tates are not normal litigants for the purposes of invoking federal jurisdiction,'" they must establish Article III standing. *Id.* (quoting *Massachusetts v. E.P.A.*, 549 U.S. at 517).

"A State's standing depends on the capacity in which it initiates a lawsuit." *Manitoba v. Bernhardt*, 923 F.3d 173, 178 (D.C. Cir. 2019). That is, it depends on whether the state seeks to vindicate its own direct injury or to vindicate, in a representative capacity, its citizens' interests under a *parens patriae* theory. The States here proceed under two theories: direct injury to sovereign interests, *i.e.*, sovereign standing, and *parens patriae* standing. The States do not allege injury to any proprietary or private interests. *See Jefferson Parish*, 78 F.4th at 769 (describing direct standing arising from injury to sovereign, proprietary, and private interests).

3

To have sovereign standing, a state must show a cognizable injury to a sovereign interest. That is, "the acts of the defendant must invade the government's sovereign right, resulting in some tangible interference with its authority to regulate or enforce its laws." *Jefferson Parish*, 78 F.4th at 770 (internal quotation marks, brackets, and ellipsis omitted). This requires the state to articulate more than a violation of the law. Instead, to show injury to a sovereign interest, the state must show that the conduct challenged somehow impaired it from *enforcing* a law. *See id.* at 770-72. "Violating the law is different from hindering its enforcement." *Id.* at 772*; see also Saginaw Cnty. v. STAT Emergency Med. Servs., Inc.*, 946 F.3d 951, 956 (6th Cir. 2020) ("[S]omeone violat[ing] a law . . . does not by itself injure the government in an Article III way. Only actual or threatened interference with its authority does." (internal quotation marks omitted) (quoted in *Jefferson Parish*, 78 F.4th at 771)).

*Parens patriae* standing requires the state to show: (1) "a quasi-sovereign interest that is sufficiently concrete to create an actual controversy between the State and the defendant and (2) the injury to that interest affects a sufficiently substantial segment of the state's population." *Jefferson Parish,* 78 F.4th at 772 (internal quotation marks and brackets omitted) (quoting *Alfred L. Snapp & Son, Inc. v. Puerto Rico*, 458 U.S. 592, 602, 607 (1982)). Although the definition of a quasi-sovereign interest "is not simple or exact," classic examples of quasi-sovereign interests are the interests of a state to "be free from the invasion of out-of-state nuisances or discriminatory policies that threaten the state's economy." *Id.* at 772-73. A quasi-sovereign interest is one "apart from the interest of particular private parties." *Id.* at 772.

Rule 12(b)(1) applies to motions to dismiss for lack of constitutional standing. *See Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 795 n.2 (5th Cir. 2011). Under the Rule, a court may consider "'(1) the complaint alone; (2) the complaint supplemented by undisputed facts

evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.'" *Moore v. Bryant*, 853 F.3d 245, 248 (5th Cir. 2017) (quoting *Barrera–Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996)) (affirming dismissal, pursuant to Rule 12(b)(1), for lack of standing). Once challenged, the party seeking to establish federal jurisdiction—here, the States—has the burden of establishing subject matter jurisdiction. *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006). Each State must demonstrate standing for every claim asserted. *Id*. at 352.

## SUMMARY OF THE ARGUMENT

The States' respective theories of standing are fatally flawed under governing Fifth Circuit law. The States' attempt to collectively enforce federal and state laws against a private actor in *federal* court fails because no state has articulated an injury to either sovereign or quasi-sovereign interests. *Jefferson Parish* makes clear that the States' desire to have Google follow state or federal law does not create an Article III case or controversy nor give them a right to invoke the federal courts.

*First*, the States lack standing to assert their state law claims under *Jefferson Parish*. The States cannot assert sovereign injury based only on an alleged violation of their state laws; the States have recourse to their own courts and their enforcement of state law has in no way been hindered. Similarly, the States lack *parens patriae* standing because they have not shown that the alleged violation of state law injures any quasi-sovereign interest for which only a federal court can provide relief.

*Second*, as to the federal claim, the notion that the States have sovereign standing to enforce *federal* law finds no basis in precedent. Similarly, the States proceeding as *parens patriae* again cannot articulate a quasi-sovereign interest to sustain their federal claims.

5

*Third*, because there was no original jurisdiction for the federal law claim at the time this suit was filed, there can be no supplemental jurisdiction for the state law claims.

Accordingly, the complaint should be dismissed for lack of Article III standing.

## STATEMENT OF THE ISSUES

1. Whether the States have sovereign or *parens patriae* standing to pursue state law claims in federal court.

2. Whether the States have sovereign or *parens patriae* standing to pursue their federal antitrust claim in federal court.

3. Whether, without jurisdiction over the federal antitrust claim, there is supplemental jurisdiction over the state law claims under the time-of-filing rule.

## ARGUMENT

**I.     The States Lack Standing To Bring Their State Law Claims in Federal Court.**

   **A. The States' Sovereign Interest Cannot Support Standing for This State Enforcement Action.**

Some States—Texas, Alaska, Florida, Idaho, Indiana, Kentucky, Mississippi, Missouri, Montana, South Carolina, Utah, and Nevada—assert sovereign standing for their state law claims. In *Jefferson Parish*, the Fifth Circuit held that alleged violations of state law do not amount to an Article III injury sufficient to support sovereign standing. 78 F.4th at 770-72. The States' assertion of sovereign standing for their state law claims, premised only on Google's alleged violation of state law, is therefore fatally flawed.

In *Jefferson Parish*, Louisiana was suing the Jefferson Parish School Board in federal district court for suspending two students and claimed that the school board had violated state statutes and the students' due process rights under the state and federal constitutions. 78 F.4th at 767-68. The Fifth Circuit considered and rejected Louisiana's claim of sovereign standing.

6

Sovereign standing can lie where a state's sovereign interest[2] is injured in some way, "[b]ut what has traditionally counted as an injury to a sovereign interest does not include every act of disobedience to a state's edicts." *Id.* at 770. The Fifth Circuit held that "someone violating a law does not by itself injure the government in an Article III way. Only actual or threatened interference with its authority does." *Id.* at 771 (internal quotation marks and brackets omitted).

*Jefferson Parish* distinguished between *enforcement* of state laws and *interference* with the enforcement of state laws. Only the latter supports sovereign standing, because only when a state is hindered in its enforcement of state law "would there exist a controversy for us to resolve within the limits of federalism." *Id.* States otherwise have a "full arsenal of enforcement mechanisms to force [a defendant] to comply with state law" distinct from filing suit in federal court. *Id.* at 770. Where nothing stands in the way of states enforcing state law in state courts against a defendant, there is no basis to claim a "sovereign injury" for Article III standing. *Id.* at 770-72; *see also Saginaw Cnty.*, 946 F.3d at 955-56 (Because a government "may lawfully use coercion to get its way—by enacting a law on behalf of the people and enforcing it against unwilling residents," it does not suffer "actual injuries" to its sovereign interest until its enforcement is thwarted.) (cited in *Jefferson Parish*, 78 F.4th at 771).[3]

The States' sovereign-standing argument fails for the same reason that Louisiana's did. Here, the States allege only that Google has violated various state laws, including state consumer protection and antitrust laws, without identifying a single impeded attempt at prior enforcement.

---

[2] The Supreme Court has put forward "two clear sovereign interests": "the power to create and enforce a legal code" and "the demand for recognition from other sovereigns" (typically regarding borders). *Jefferson Parish*, 78 F.4th at 770 (quoting *Snapp*, 458 U.S. at 601). Louisiana unsuccessfully sought to establish an injury to the first interest.

[3] It is worth noting that while *Jefferson Parish* did involve a subordinate of the state (a school board) rather than a private actor, the identity or status of the defendant nowhere arose in the court's discussion of what constitutes a sovereign injury.

According to *Jefferson Parish*, to establish sovereign standing, the States would need to allege that Google violated state law *and* that their efforts to enforce state law *outside of federal court* have been impeded. To that end, the States would need to show that "enforcement mechanisms to force [a defendant] to comply with state law" are unavailing. 78 F.4th at 770. Only those allegations would implicate their sovereign status and create a sovereign injury. The States do not, and cannot, make any such allegation. *Jefferson Parish* plainly dictates that these States have not suffered the kind of injury required for sovereign standing.

### B. For Those States Proceeding in *Parens Patriae*, the States Have No Quasi-sovereign Interest Necessary for *Parens Patriae* Standing.

Some States—Arkansas, Louisiana, South Dakota, North Dakota, the Commonwealth of Puerto Rico, and Nevada—assert standing to pursue their state law claims as "*parens patriae* on behalf of the citizens, general welfare, and economy of their respective states." FAC ¶ 31. *Parens patriae* standing fails because the States do not establish a quasi-sovereign interest as defined under *Jefferson Parish*.

In *Jefferson Parish*, Louisiana asserted *parens patriae* standing as an alternate basis to bring its claims against the school board. *Parens patriae* standing requires a state to show: (1) "a quasi-sovereign interest that is sufficiently concrete to create an actual controversy between the State and the defendant and (2) the injury to that interest affects a sufficiently substantial segment of the state's population." *Jefferson Parish*, 78 F.4th at 772 (internal quotation marks and brackets omitted) (quoting *Snapp*, 458 U.S. at 602, 607). A quasi-sovereign interest must stand "apart from the interests of particular private parties." *Id.* (quoting *Snapp*, 458 U.S. at 607).

The Fifth Circuit found that Louisiana failed at the first prong. Its interest did not stand apart from the interests of private parties but instead was "wholly derivative of the interests of [defendant's] students." *Id.* at 773. Moreover, the Fifth Circuit found that Louisiana had to show

8

"an injury that emanates outside the state's sovereign authority." *Id.* The court distinguished Louisiana's asserted interest from the one that Puerto Rico asserted in another seminal standing case, *Alfred L. Snapp & Son, Inc. v. Puerto Rico*. 458 U.S. 592 (1982). In *Snapp*, Puerto Rico invoked federal-court jurisdiction to protect against Virginia apple growers discriminating against Puerto Rican workers. *Id.* The *Jefferson Parish* court noted that the injury to Puerto Rico "emanates outside the state's sovereign authority" and "implicated Puerto Rico's interest in full and equal participation in the federal system." 78 F.4th at 773 (internal quotation marks omitted). The quasi-sovereign interest in *Snapp* was beyond Puerto Rico's sovereign reach to address. *Id.* "This *vindication of Puerto Rico's interest* in protecting its citizens against discrimination from a state *could only occur in federal court.*" *Id.* (emph. added). By contrast, Louisiana had "the power to right [the defendant's] violations without the help of the federal courts," including through newly enacted state laws. *Id.* It was demonstrably able to address the claims asserted in its federal suit.

The States' attempt at *parens patriae* fails at the first prong for the same reasons Louisiana's did. The States' claims can be vindicated "without the help of the federal courts," including through existing state laws that are routinely enforced in their own state courts. *Id.* Nothing stops the States from pursuing an enforcement action in state court against this defendant. Because the States cannot show "an injury that emanates outside the state's sovereign authority," *id.*, they cannot establish *parens patriae* standing over their state law claims.

**II.     The States Lack Standing To Assert Their Federal Antitrust Claim, and Therefore Lack Supplemental Jurisdiction Over the State Claims.**

The States cannot establish either sovereign or *parens patriae* standing for their federal antitrust claim seeking injunctive relief under Section 16 of the Clayton Act. 15 U.S.C. § 26; *see also* Dkt. 136 at 2 (seeking leave to file Second Amended Complaint and describing that amended

9

complaint will "eliminate all claims for federal antitrust damages under Section 4C of the Clayton Act, 15 U.S.C. § 15c"). The States also fail to independently establish Article III standing for their federal claim. *DaimlerChrysler Corp.*, 547 U.S. at 352.

### A. The States Do Not Have Sovereign Standing To Enforce Federal Antitrust Laws.

Some States—Texas, Alaska, Florida, Idaho, Indiana, Kentucky, Mississippi, Missouri, Montana, South Carolina, Utah, and Nevada—also assert a sovereign interest in enforcing *federal* antitrust law. However, the Fifth Circuit rejected this standing theory in *Jefferson Parish* because a state suffers no "sovereign" injury when a *different* sovereign's laws are allegedly violated.

*Jefferson Parish* defines a sovereign injury as interference or injury to the state's authority to enforce its own laws: "[F]or a sovereign interest to serve as a cognizable injury for federal standing, the acts of the defendant must invade the government's sovereign right, resulting in some tangible interference with *its* authority to regulate or to enforce *its* laws." 78 F.4th at 770 (internal quotation marks, brackets, and ellipsis omitted) (emph. added); *see also id.* (noting successful invocations of a state's sovereign standing when federal action intrudes upon the state authority or law). The States have no authority to regulate or enforce *federal* laws, and accordingly, they have no basis to assert sovereign standing for their federal law claim. *Cf. Texas v. Pennsylvania*, 141 S. Ct. 1230, 1230 (2020) ("Texas has not demonstrated a judicially cognizable interest in the manner in which another State conducts its elections."); *see also* Ann Woolhandler & Michael G. Collins, *Reining in State Standing*, 94 Notre Dame L. Rev. 2015, 2017 (2019) ("State sovereignty interests are implicated when the government sues to vindicate its power to govern with respect to a particular subject matter or in a particular territory.") (cited in *Jefferson Parish*, 78 F.4th at 770 n.15). The federal government has the sovereign authority to enforce its own laws, and indeed, is

10

contemporaneously enforcing its antitrust laws against the same private actor for the same alleged conduct. *See United States, et al. v. Google, LLC*, 1:23-cv-00108-LMB-JFA (E.D. Va.).

The States' assertion of sovereign standing for the federal antitrust claim is utterly flawed. The States cannot explain how they suffered a cognizable injury to their state sovereign interests based on Google's alleged violations of federal laws.

### B. The States Cannot Establish *Parens Patriae* Standing for Their Federal Antitrust Claim.

Some States—Arkansas, Louisiana, South Dakota, North Dakota, the Commonwealth of Puerto Rico, and Nevada—assert standing to pursue the federal claim as "*parens patriae* on behalf of the citizens, general welfare, and economy of their respective states," under Section 16 of the Clayton Act, 15 U.S.C. § 26. FAC ¶ 31.[4] The States cannot establish *parens patriae* standing for their federal antitrust claim because, even in their fifth version of the Complaint, they have not identified a concrete quasi-sovereign interest as defined in *Jefferson Parish*. 78 F.4th at 772.

First, the States do not establish any interest apart from that of private parties. *Id.* at 772 (A quasi-sovereign interest must stand "apart from the interests of particular private parties."). The only harms that they plead relate to prices and costs experienced by particular individuals in the ad tech sphere (*i.e.*, advertisers, publishers, or competing ad tech providers). The States are "not asserting a separate injury such as being denied [their] full participation in the federal system, nor [do they] allege injury to [their] citizens health or economic well-being in a way that also implicates [their] own interests." *Id.* at 773. Instead, they articulate only injuries to private parties who can sue—and some of whom are suing—to get their own relief. *See In re Google Dig. Advert.*

---

[4] The States do *not* assert claims under 15 U.S.C. § 15c, which authorizes a state as *parens patriae* to pursue a quasi-class action for monetary damages for injuries to particular citizens. *See Texas v. Scott & Fetzer Co.*, 709 F.2d 1024, 1025 (5th Cir. 1983). Like a class action, Section 15c has notice and opt-out provisions, requiring notice to citizens of a state's *parens patriae* action and an opportunity for citizens to elect to exclude themselves from the monetary relief being sought. 15 U.S.C. § 15c(b).

11

*Antitrust Litig.*, No. 1:21-md-0310 (S.D.N.Y.) (plaintiffs include classes of advertisers and publishers as well as individual publishers and newspapers); *see also Jefferson Parish*., 78 F.4th at 773 ("[I]ndividual students can sue to get relief from [the school board's] alleged discrimination."); *Missouri v. Harris*, 58 F. Supp. 3d 1059, 1073-74 (E.D. Cal. 2014), *aff'd and remanded sub nom. Missouri ex rel. Koster v. Harris*, 847 F.3d 646 (9th Cir. 2017) ("Far from 'shackling' plaintiffs' industries, plaintiffs have alleged nothing to suggest California's shell egg laws will detrimentally affect anyone outside of an identifiable group of individual egg farmers."). Relatedly, the States also fail to allege how broadly these alleged effects are even felt within each State's populations. *Jefferson Parish*. 78 F.4th at 772 (injury to quasi-sovereign interest must "affect[] a sufficiently substantial segment of the state's population" (internal quotation marks and brackets omitted)).

Second, the States' alleged interest is remote and entirely abstract. *Id.* at 773 (requiring a quasi-sovereign interest be "sufficiently concrete to create an actual controversy" (internal quotation mark omitted)). The States generally allege "anticompetitive effects" that befall advertisers, publishers, and ultimately consumers without identifying a single particular impact on any of the seventeen States' respective economies. FAC ¶¶ 502-525. There is no allegation as to how the States' economies are actually injured—either their industries, their development, or any particular opportunities for their citizenry—beyond the effects on a particular subset of individuals.

And, although the Supreme Court has allowed a state to seek injunctive relief under Section 16 of the Clayton Act as *parens patriae*, the case actually illustrates the deficiencies of the States' allegations here. *See Georgia v. Pennsylvania R.R. Co.*, 324 U.S. 439 (1945). Georgia alleged a price-fixing conspiracy for freight transportation directed towards Georgia's railroad ports that "put it at a decided disadvantage in competitive markets." *Id.* at 443-44, 450. Georgia alleged

that the conspiracy "relegate[d] her to an inferior economic position among her sister States." *Id.* at 451. Unlike the States here, Georgia complained of an "immediate" injury that implicated a quasi-sovereign interest, *i.e.*, its equal participation in interstate commerce. *Id.*; *see also Snapp*, 458 U.S. at 607 ("[A] State has a quasi-sovereign interest in not being discriminatorily denied its rightful status within the federal system."). The States make no allegations of discrimination here and instead share a common claim of injury.

Third, the States' interest does not implicate any federalism concerns or sovereign interest. 78 F.4th at 773 (requiring "an injury that emanates outside the state's sovereign authority"); *see also Pennsylvania v. Kleppe*, 533 F.2d 668, 674 (D.C. Cir. 1976) (describing that the "controversy must in substance implicate the state's interest in economic supervision, and not merely affect the fortunes of a limited class of her citizens"). To the contrary, the States join together to complain of violations of federal antitrust law that overlap substantially with their state law claims, and which they can readily pursue in state court. There is no injury that requires recourse to federal court. *See Pennsylvania R.R.*, 324 U.S. at 444 (noting Georgia's interest could only be vindicated in a federal forum because "Georgia is without remedy in her own courts").

Under Supreme Court and Fifth Circuit precedent, the allegations of the FAC do not and cannot establish *parens patriae* standing for the federal antitrust claim.

### C. There Is No Supplemental Jurisdiction over the State Law Claims.

Because the States had no standing to bring the federal law claim at the time they filed, the Court cannot exercise supplemental jurisdiction over the state law claims under 28 U.S.C § 1367(a). FAC ¶ 35 (alleging supplemental jurisdiction); *see also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966) (federal question jurisdiction over a claim may authorize a federal court to exercise jurisdiction over state law claims "derive[d] from a common nucleus of operative fact" as the federal claim).

To assert supplemental jurisdiction, a court "must first have original jurisdiction over at least one claim in the action." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 554 (2005). "Subject matter jurisdiction is determined at the time that the complaint is filed." *Carney v. Resolution Trust Corp.*, 19 F.3d 950, 954 (5th Cir. 1994); *see also In re Carter*, 618 F.2d 1093, 1101 (5th Cir. 1980) (same); *Mobil Oil Corp. v. Kelley*, 493 F.2d 784, 786 (5th Cir. 1974) (jurisdiction "determined at the outset" of suit).

Because, as explained above, this Court did not have original jurisdiction over the States' federal law claim at the outset, the Court must also dismiss the remaining state law claims for lack of jurisdiction under § 1367.

Alternatively, if the Court finds the States have standing to assert the federal antitrust claim—and they do not—the Court would still independently have to consider whether the States have standing to pursue their state law claims in federal court. As set forth above, those claims should also be dismissed for lack of constitutional standing. *See DaimlerChrysler Corp.*, 547 U.S. at 351-52 (holding a district court cannot "exercise supplemental jurisdiction over a claim that does not itself satisfy those elements of the Article III inquiry, such as constitutional standing").

## CONCLUSION

For these reasons, Defendant respectfully requests that the Court dismiss the Complaint in its entirety because Plaintiffs lack standing.

Dated: January 16, 2024

Respectfully submitted,

*/s/ R. Paul Yetter*
R. Paul Yetter
State Bar No. 22154200
YETTER COLEMAN LLP
811 Main Street, Suite 4100
Houston, Texas 77002
(713) 632-8000
pyetter@yettercoleman.com

Eric Mahr (*pro hac vice*)
FRESHFIELDS BRUCKHAUS DERINGER LLP
700 13th Street NW, 10th Floor
Washington, D.C. 20005
(202) 777-4545
eric.mahr@freshfields.com

ATTORNEYS FOR DEFENDANT
GOOGLE LLC

## CERTIFICATE OF SERVICE

I certify that on January 16, 2024, this document was filed electronically in compliance with Local Rule CV-5(a) and served on all counsel who have consented to electronic service, per Local Rule CV-5(a)(3)(A).

*/s/ R. Paul Yetter*
R. Paul Yetter

15