```
                 IN THE UNITED STATES DISTRICT COURT
                  FOR THE EASTERN DISTRICT OF TEXAS
                           SHERMAN DIVISION

THE STATE OF TEXAS, et al,        §
                                  §
                                  §
              Plaintiffs,         §
                                  §       Case No.:
     vs.                          §       4:20-cv-00957-SDJ
                                  §
GOOGLE, LLC,                      §
                                  §
              Defendant.          §


                        STATUS CONFERENCE
                     TRANSCRIPT OF PROCEEDINGS
              BEFORE THE HONORABLE SEAN D. JORDAN
                    UNITED STATES DISTRICT JUDGE

                 January 18, 2024; 10:04 a.m.
                          Plano, Texas


APPEARANCES OF COUNSEL:
(Continued on page 2.)

FOR THE PLAINTIFF STATES:

W. Mark Lanier
THE LANIER LAW FIRM
6810 FM 1960 West
P. O. Box 691448
Houston, Texas 77269-1448

Jonathan P. Wilkerson
THE LANIER LAW FIRM
6810 Cypress Creek Parkway
Houston, Texas 77069


       *******************************************

                  GAYLE WEAR, RPR, CRR
               Federal Official Court Reporter
                     7940 Preston Road
                     Plano, Texas 75024
                gayle_wear@txed.uscourts.gov
```

```
 1   FOR THE PLAINTIFF STATES:
     (Continued from page 1.)
 2
     Zeke DeRose, III
 3   THE LANIER LAW FIRM, PC - Houston
     10940 W. Sam Houston Parkway N.
 4   Suite 100
     Houston, Texas 77064
 5
     Geraldine W. Young
 6   NORTON ROSE FULBRIGHT US LLP - Houston
     1301 McKinney, Suite 5100
 7   Houston, Texas 77010-3095

 8   James Lloyd
     Trevor Young
 9   STATE OF TEXAS, OFFICE OF THE ATTORNEY GENERAL
     ANTITRUST DIVISION
10   300 W. 15th Street
     Austin, Texas 78701
11

12   FOR THE DEFENDANT:

13   R. Paul Yetter
     Mollie Bracewell
14   YETTER COLEMAN, LLP - Houston
     811 Main Street, Suite 4100
15   Houston, Texas 77002

16   Robert John McCallum
     FRESHFIELDS BRUCKHAUS DERINGER US LLP
17   601 Lexington Avenue
     New York, New York 10022
18
     ALSO PRESENT:
19
         Roger P. Alford
20       UNIVERSITY OF NOTRE DAME
         3119 Eck Hall of Law
21       Notre Dame, Indiana 46556

22                         *   *   *

23

24

25
```

```
1    January 18, 2024                                    10:04 a.m.
2                              ---o0o---
3                         P R O C E E D I N G S
4                              ---o0o---
5             THE COURT:  Please be seated.
6             MR. YETTER:  Good morning, Your Honor.
7             MR. LANIER:  Good morning, Your Honor.
8             THE COURT:  Good morning.  We're here on cause
9    number 4:20-cv-957, State of Texas, et al versus Google, LLC,
10   and we're here for a status conference, first status
11   conference of a series that we'll have every month going
12   forward.
13            So why don't I have appearances from counsel first,
14   and we'll start with plaintiffs.
15            MR. LANIER:  Thank you, Your Honor.  Mark Lanier
16   here on behalf of the State of Texas.  Along with me, from my
17   firm, I've got Zeke DeRose and Jonathan Wilkerson.  With the
18   State of Texas, I've got Trevor Young; and while we're on the
19   "young" subject, Geraldine Young from Norton Rose Fulbright.
20            At the opposite end of the "young" spectrum, we
21   have Robert Alford whose birthday is today and he is 61 years
22   old, and then he is here on behalf of the State of Texas,
23   though he works at Notre Dame Law School.  And then we also
24   have James Lloyd from the Attorney General's office.
25            Thank you, Judge.
```

1          THE COURT:  All right.  Thank you, Mr. Lanier.
2          Mr. Yetter?
3          MR. YETTER:  Good morning, Your Honor.
4          THE COURT:  Good morning.
5          MR. YETTER:  Paul Yetter for the defendant, Google.
6  And with me is my colleague Mollie Bracewell and our
7  co-counsel from Freshfields, Rob McCallum, and we're here
8  today for Google.
9          THE COURT:  All right.  Thank you, Mr. Yetter.
10         I'll just remind counsel that we do have an
11 audio-only field for the public on these hearings, so that's
12 in place.
13         For this particular status conference, I just had a
14 few things on the agenda to discuss with you all.  And then
15 if there are other matters you want to raise, we can visit
16 about them.  The first one may go fairly quickly.  I just
17 wanted to see if we can get an update on the designated
18 record on remand, just if you all can kind of tell me the
19 status of that from your perspective.
20         And then, second, you know, I have received
21 the proposed coordination orders from both sides, and I
22 anticipate we'll talk about that a bit today.
23         And then, third, I may briefly touch on the special
24 master issue this morning.
25         So why don't we start with the designated record on

1  remand.  I appreciate the parties working with Leigh Lyon in
2  our Clerk's office to try and find the most efficient way to
3  get that record uploaded.
4              So Mr. Lanier, how is that going?
5              MR. LANIER:  Thank you, Your Honor.  May it please
6  the Court.  I am in great error if I don't say that Ms. Leigh
7  Lyon has done an outstanding job of paying attention to it,
8  and it's made it easier for all parties.  So kudos to the
9  chief deputy clerk for that.  I think it's almost complete.
10 We've got a few basic things I'm sure we'll find that we'll
11 be able to add to the process.  But at this point in time, I
12 think for all practical purposes, we're 98 percent there.
13             THE COURT:  All right.  Thank you.
14             Mr. Yetter, anything to add, or does that cover it?
15             MR. YETTER:  No, Your Honor.  Counsel was very
16 accurate on that.
17             THE COURT:  All right.  So moving on to the
18 proposed coordination orders.  As you all know, a couple of
19 weeks ago, earlier in the year on January 2, the Court issued
20 the scheduling order in this case.  Part of what was in the
21 scheduling order anticipated the parties conferring and
22 potentially submitting jointly or separately proposed
23 coordination orders for the MDL case that's pending and the
24 case in the Eastern District of Virginia.
25             And it sounds like, from reviewing the submissions

1   from both sides, that there have been ongoing discussions,
2   really, right up to today.  And the reason I say that is it
3   sounds like maybe a number of things that there was some
4   disagreement on your arriving at some agreement.  And I'd
5   like to maybe just get an overarching view from each side
6   about where you stand in the process of conferring.
7           I mean, the State submission seemed to indicate
8   that a lot of what had been disagreed -- a lot of
9   disagreement had been overcome, but I may have misread that.
10          MR. LANIER:  No, Your Honor; I don't think you did
11  misread it.  First of all, I know that there's been a lot of
12  hard work, and I want the Court to be aware that the States
13  have worked hard with the MDL plaintiffs and with the DOJ, to
14  try to get everybody corralled into an order that all would
15  agree to and it wouldn't just be something that we do
16  independently of everyone else.
17          THE COURT:  Um-hum.
18          MR. LANIER:  Toward that end, we tried to bullet
19  point our issues with Google Monday morning.  Though we had
20  hoped to speak with them on Monday, it didn't work evidently
21  to speak until Tuesday.  We were able to work through some
22  measure of some agreements, and there's been give and take I
23  think on both sides, but there are some very real issues of
24  disagreement still.
25          And our hope would be -- candidly, I had hoped to

supply the Court on the 16th with a very clear *Here is everywhere we agreed to and here are the sections of disagreement*, but the parties were working with each other so late that we weren't able to do that.

We got the briefing from Google late that night, 10:30 or so -- 9:30, 10:30, I forget which -- and we did not even file a brief and argument in that regard.

So our hope would be that the Court might allow us maybe until next Friday to make sure we submit something that's much cleaner, where we find those last areas of agreement that we can wrangle out of each other before we submit ourselves to the almighty pen of an Article III judge who decides what it will be.

So to the extent we can orchestrate our own destiny, we think maybe with one more week, we can do that. Even to the extent we can't orchestrate our destiny fully, we believe we can much more cleanly submit to the Court something that maps out the areas of disagreement where it's not such an arduous task for you and your staff.

THE COURT: Well, I think, Mr. Lanier, you anticipated where I was going with this -- and I'll hear from Mr. Yetter -- which is that, really, the submissions of both sides did seem to indicate that perhaps further discussion could at least narrow the issues of disagreement that are going to be presented to the Court. And, Mr. Lanier, I

```
 1   assume that you mean -- when you say -- you mean the Friday
 2   from a week from tomorrow; correct?
 3             MR. LANIER:  Yes, Your Honor.
 4             THE COURT:  All right.
 5             So, Mr. Yetter, I know from reading the Google
 6   submission that you also mentioned in your filing that, you
 7   know, there were -- I suppose, in the days running up to this
 8   conference, that there were some -- there was some movement,
 9   if you will, in your discussions with the States that
10   indicated maybe the disagreements were being narrowed.  So I
11   don't know if Mr. Lanier's proposal strikes you as sensible
12   to give you all about another week to come back to the Court
13   with hopefully something that's at least narrowed.
14             MR. YETTER:  Let me start at the end, Your Honor.
15   I do believe that counsel's suggestion is sensible, and we
16   would have made the same suggestion.
17             A little bit of background.  As the Court knows,
18   the coordination order originated between the MDL and the
19   Virginia case, and it was heavily negotiated and entered by
20   both judges, Judge Castel and Judge Anderson.  And so what we
21   have proposed on behalf of Google is a coordination order
22   that is essentially what's already in place between those two
23   cases but somewhat conformed for the Texas case.  So that's
24   our proposal.
25             Until Tuesday, we thought that the States' proposal
```

1    was going to be significantly different, that it was going to
2    be consistent with what they had proposed to Judge Castel who
3    rejected it; I think he called it a non-coordination order.
4    But the States stepped away from that and, on Tuesday, told
5    us that they were going to do something different.  We
6    haven't -- we did not have a chance to digest it before we
7    filed our brief to the Court, and we're still working through
8    it.
9              We do want to work through it with the plaintiffs.
10   There are some significant sticking points, and I'm not going
11   to argue them, but I am going to flag them for the Court just
12   so that you have them at top of mind.  Two in particular that
13   are not in the plaintiffs' submission that are very
14   significant on our end, one is about expert discovery, and
15   the other is about discovery correspondence.
16             The first one, Your Honor, is -- when the original
17   coordination order was put into effect, the MDL plaintiffs
18   and the States proposed that they would get access to the
19   expert disclosures by Google in the Virginia case -- in the
20   Eastern District of Virginia case.  We object to that because
21   both Judge Castel and Your Honor put in the scheduling orders
22   that had the normal sequence of expert disclosures, where the
23   plaintiff produces their expert reports first and then
24   followed by defendants who don't have the burden.
25             Our concern about this, and this is a very

1  significant one for us, is that plaintiffs essentially are --
2  and this is not mentioned in their briefing -- plaintiffs
3  essentially are proposing to file rebuttal expert reports,
4  having gotten Google's expert reports in Virginia and then
5  essentially modeling -- we are concerned that they would be
6  modeling their expert reports here based on that.
7            And that's particularly important here because we
8  still don't know -- as the Court has picked up from a number
9  of the filings, we don't know some of the basic initial
10 disclosure information that the States are obligated to give
11 us, now almost three years ago; how much -- how much they're
12 asking for in terms of damages; how they're calculating their
13 damages; who, in fact, they're representing.  All of which is
14 to say this is an important issue to us.
15           Second one that again was not mentioned, and this
16 is why I'm mentioning it, in their papers is that the
17 plaintiffs are proposing that Google produce the discovery
18 discussions with the DOJ in Virginia, the back-and-forth on
19 various issues where DOJ raised some concerns; Google
20 addressed them; DOJ dropped them.  And evidently what the
21 states want to do, and the MDL plaintiffs have done something
22 similar, is they want to pick up on the disputes that the DOJ
23 raised and got resolved and start them again here.  And we
24 don't think that's efficient or productive.
25           Long story short, there are some important issues

1 | that we want to work through, but we're happy to talk with
2 | them.  We haven't had a chance to talk with them.  Our
3 | ultimate goal, we think, which is appropriate, is a
4 | coordination order that doesn't conflict or undermine the
5 | coordination order that Judge Castel and Judge Anderson
6 | already put into place and so ours matches theirs pretty
7 | closely.  So that's our position on that, Your Honor.
8 | THE COURT:  All right.  Thank you, Mr. Yetter.
9 | So is there any followup you wanted to provide,
10 | Mr. Lanier?
11 | MR. LANIER:  Yes, please.  Yes, please, Your Honor.
12 | Recognizing now is not the time and place to argue
13 | these things, I don't want the record to be read by anybody
14 | or misunderstood as to the two issues singled out by
15 | Mr. Yetter.  We're not seeking to file rebuttal expert
16 | reports.  We're seeking to coordinate discovery, and that
17 | includes expert discovery.  And just see the expert reports
18 | that have been filed by the DOJ in a case that Mr. Mahr,
19 | other counsel for Google, described as basically the same as
20 | ours, is absolutely relevant, absolutely pertinent, and under
21 | local Rule 26 of the Eastern District rules, ought to be
22 | provided pro forma.  We certainly shouldn't have to be
23 | fighting about it.
24 | This is not -- you know, if we're filing what he
25 | wants to call a rebuttal report at that point, then they will

1  be filing a rebuttal-rebuttal report.  They still get our
2  expert reports and a chance to respond to them.  And so it's
3  more efficient to follow the local rules and to produce that
4  accordingly.
5        As for the discussion correspondence issue, what
6  Mr. Yetter is artfully referencing is the deficiency letter
7  that the DOJ sent to Google over Google's production, noting
8  the deficiencies in terms of what was produced, deficiencies
9  in the privilege log, et cetera.  All of those are a
10 discussion and fights that we are going to be having in this
11 case.  And so it makes sense for us to see that discussion
12 analysis because if there's letters from the DOJ, which we
13 would like to see pointing out deficiencies, and there's
14 responses from Google that have resolved that, then why on
15 Earth would we go through that same process with you if it's
16 already met resolution once we do our due diligence and look
17 to see whether or not that resolution is proper or whether we
18 have additional arguments?  To hide that or to not produce
19 that is not an efficient way to go about coordinating
20 discovery.
21       And so we'll brief those issues if we're not able
22 to reach some type of an agreement with Google.  But until
23 that point in time, I at least need to have something on the
24 record so it doesn't look like it might look otherwise.
25 Thank you.

1          THE COURT:  All right.  Well, thank you, both.
2          I think as you've both noted, I'm going to give you
3  the time to further discuss these matters rather than getting
4  into a more detailed discussion about it right now because
5  there may be some areas where you can find agreement and
6  maybe not.
7          I don't have anything else on the coordination
8  orders at this time.  What we'll do is issue a short order
9  today that just asks the parties to file a followup on the
10 proposed coordination order by January 26.
11         And so the last topic I had is just to touch on the
12 special master issue, and I have obviously heard from both
13 parties on this.  And I do anticipate in the near term here
14 appointing a special master.  I've certainly heard Google's
15 arguments about where we are right now on discovery disputes.
16 But I think that as we've discussed, I think looking down the
17 road, there's going to be, in my view, a lot of discovery
18 issues that need to be addressed in various categories; we've
19 talked about privilege logs; even coordination of discovery
20 may raise some issues; and just the volume of documents
21 involved; and the number of depositions.  And I can see a lot
22 of issues coming up.
23         And my thought on this is that a special master
24 will really be able to help us be more efficient.  And we can
25 be tracking on both substantive issues -- we have motions to

```
 1   dismiss filed by Google -- at the same time that we're
 2   tracking on the discovery issues going forward.
 3          And I think just given the size and complexity of
 4   this case, it will benefit everybody to have a special master
 5   who can help us move any and all discovery issues that come
 6   up as efficiently as possible.  And, look, maybe there won't
 7   be that many.  I mean, it's possible.  But if there aren't,
 8   then great, the special master isn't getting used as much.
 9   But if there are, we're able to have the Court getting the
10   maximum efficiency of assistance on discovery while the Court
11   is also working on substantive issues in dispositive motions
12   and other types of motions.
13          So I wanted to give you a little bit more of my
14   thinking on that.  I will say in terms of, you know, special
15   master's authority, particularly in a case like this where
16   it's discovery only, Rule 53 really does provide guidelines
17   about what, you know, particularly what the standard would be
18   for reviewing the special master's work product.
19          And so one thing I did want to confirm -- this is
20   from Rule 53(f) -- is that typically the Court will decide de
21   novo all objections to findings of fact made or recommended
22   by a master unless the parties, with the Court's approval,
23   stipulate to something else, like that they can be reviewed
24   for clear error, et cetera, et cetera.  Legal conclusions,
25   obviously, are going to be de novo review.
```

1              The parties I think have been -- have somewhat, you
2    know, differing views on this, but what I've understood is
3    that Google at least is not going to be willing to stipulate
4    to the special master's factual findings being subject to a
5    standard review that is different from a de novo standard.
6              Am I right about that, Mr. Yetter?
7              MR. YETTER:  Yes, Judge Jordan, you're right.  From
8    Google's perspective, very briefly, we understand why the
9    Court wants to have Mr. Moran, who's got excellent
10   credentials and we have no opposition to his appointment, why
11   you want to have him on the bench.  Our expectation though is
12   given the way discovery disputes are resolved in this
13   district, there may not be that many issues that go to him.
14             We, in the spirit of the season, Your Honor, we
15   see there's a starting quarterback in this case, Dak
16   Prescott -- that's you, Judge Jordan --
17             MR. LANIER:  No.  He's much better.
18             THE COURT:  Well, this may not be the week to
19   compare anybody to Dak Prescott.
20             MR. YETTER:  Your Honor, I would have said --
21             THE COURT:  You know.
22             MR. YETTER:  Your honor, I would have said C. J.
23   Stroud; he's a rookie and he's only 22-years old.  And you're
24   a young man, Your Honor, but you're not 22-years old.
25             But Mr. Moran, as we see him, he's the backup to

1    your backup.  So Magistrate Johnson would be -- Judge,
2    Magistrate Judge Johnson would be your backup.  In this
3    district, you know, so many discovery disputes are resolved
4    very quickly and efficiently by the Court.  Let me give you
5    an example.
6         We have been back and forth with the States about
7    their initial disclosures.  We've asked:  Who do you
8    represent?  You know, what are you claiming the violations
9    are?  What are your damages?  How do you calculate them?
10   This is something that with that phone call with the Court
11   where the Court, without any briefing, just the Court can get
12   briefed on it, can make a quick decision.  Does this need
13   more briefing?  A motion to compel?  Does it just need to be
14   responded to?
15        And as the quarterback, Your Honor, and with the
16   full knowledge of this case, those are the kind of issues
17   that the Court can resolve quickly.  And we do hope, even
18   with a special master on the bench, or on the field, that we
19   don't dispense with those because they are very efficient.
20   And, frankly, under Rule 53, we think that is the right
21   approach anyway.
22        And not that there may be some big, complicated
23   time-consuming issue that Mr. Moran could deal with down the
24   road.  But that's our expectation.  So that's why we do
25   believe, under 53, the starting quarterback needs to be

involved. And we don't think a standard of review by this
Court, who knows the most about this case, should be any less
than what it would normally be under Rule 53.
            THE COURT: All right. Thank you, Mr. Yetter.
            Mr. Lanier, did you want to make any comments on
that?
            MR. LANIER: Yes, Judge Mahomes -- I mean, Judge
Jordan.
            Your Honor, all seriousness aside, David Moran is
imminently qualified to do this and to do this well, and
kudos on looking to him to perhaps fill that role. We
believe that he's very useful. We think that he'll be useful
immediately as we continue to sort through issues.
            My example would be obviously different than
Mr. Yetter's. My example would be last year, December 22nd
of '23, we sent the deficiency letter again to Google,
explaining that we need a privilege log review to be redone
as per what they had said they would do. You know, here we
are almost a month later and we've still gotten no review of
that privilege log, though they did on January 17th tell us
that that was continuing.
            If we had had a special master in place who would
have also gotten a copy of that letter, even without issuing
a de novo review by you or anything like that, he would have
been in a position to put some time limits down and say, *Hey,*

1	*Google, I would like a response by X date.*
2	             There's a lot that can be done even by a second- or
3	a third-string quarterback that will make life easier for the
4	starter, and so we're applauding that.  We think that there's
5	a lot to be done in a short amount of time.  And would hope
6	that we can move in that direction.  Thank you.
7	             THE COURT:  All right.  Thank you, Mr. Lanier.
8	             That's helpful for me to know what to put in there,
9	in any order on the special master.
10	             So counsel, anything else you would like to talk
11	about today?
12	             MR. LANIER:  Not for the State of Texas, Your
13	Honor.
14	             THE COURT:  Okay.  Mr. Yetter, anything from
15	Google?
16	             MR. YETTER:  No, Your Honor.  We've covered
17	everything on the Google side as well.
18	             THE COURT:  All right.  And we have a scheduling
19	order out.  We'll do an order today just setting January 26
20	for a followup on proposed coordination orders.
21	             And we will stand in recess.  Thank you, counsel,
22	for your helpful comments.
23	             MR. LANIER:  Thank you, Your Honor.
24	                    (Adjourned at 10:29 a.m.)
25	                       *    *    *    *    *

CERTIFICATE OF OFFICIAL REPORTER

I, Gayle Wear, Federal Official Court Reporter, in and for the United States District Court for the Eastern District of Texas, do hereby certify that pursuant to Section 753, Title 28 United States Code, that the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

Dated 19th day of January 2024.

/s/ Gayle Wear
GAYLE WEAR, RPR, CRR
FEDERAL OFFICIAL COURT REPORTER