UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| THE STATE OF TEXAS, ET AL. | § | |
| | § | |
| v. | § | CIVIL NO. 4:20-CV-957-SDJ |
| | § | |
| GOOGLE LLC | § | |

## <u>ORDER APPOINTING SPECIAL MASTER</u>

This antitrust action was initially filed in this Court on December 16, 2020. The case was later transferred, on August 12, 2021, to the United States District Court for the Southern District of New York (SDNY) by the Judicial Panel on Multidistrict Litigation (JPML) for coordinated and consolidated pretrial proceedings in MDL 3010.

On June 5, 2023, the JPML remanded the case back to this Court. Defendant Google sought mandamus relief from the JPML remand order in the United States Court of Appeals for the Second Circuit. On October 4, 2023, the Second Circuit denied Google's mandamus petition and the SDNY transferred the case back to this Court shortly thereafter (Cause No. 1:21-CV-6841).

When proceedings resumed in this Court, the Court requested, and the parties provided, reports addressing (1) the status of the case following nearly two years of proceedings in MDL 3010, (Dkt. #156, #157), and (2) discovery issues that the parties expect will need the Court's intervention going forward, (Dkt. #176, #177). The Court then held a status conference on discovery. Following that hearing, the Court issued an order advising the parties that the Court believes a Special Master should be

1

appointed under Rule 53 of the Federal Rules of Civil Procedure to handle discovery issues and disputes. (Dkt. #187). The Court further advised the parties that the anticipated scope of the Special Master's authority would be limited to discovery issues only.

To ensure that both sides were provided "notice and an opportunity to be heard" before the appointment of a Special Master, FED. R. CIV. P. 53(b)(1), the Court required the parties to file briefs confirming whether they agreed to the appointment of a Special Master, (Dkt. #187). The parties submitted the requested briefs. (Dkt. #190, #191). The Plaintiff States agree that a Special Master should be appointed, while Google has advised that it believes the appointment of a Special Master is premature and unnecessary at this time.

Thereafter, the Court entered an order advising the parties that it was considering the appointment of David T. Moran to serve as Special Master and requiring the parties to advise the Court, by no later than January 9, 2024, whether they had any concerns or objections to the appointment of Mr. Moran. (Dkt. #195). The Court's order attached Mr. Moran's affidavit pursuant to Rule 53(b)(3), wherein Mr. Moran attests that there is no ground for disqualification under 28 U.S.C. § 455. Both parties confirmed that they had no objection to the appointment of Mr. Moran, but Google reaffirmed that it believes the appointment of a Special Master is unnecessary at this time. (Dkt. #197, #198).

# I. LEGAL STANDARD

Federal Rule of Civil Procedure 53(a)(1)(C) authorizes a district court to appoint a Special Master to "address pretrial and posttrial matters that cannot be effectively and timely addressed by an available district judge or magistrate judge of the district." *See also Moore ex rel. Moore v. Tangipahoa Parish Sch. Bd.*, 912 F.3d 247, 250 (5th Cir. 2018) ("A district court may appoint special masters and other agents pursuant to the court's inherent authority in fashioning equitable remedies.") (cleaned up). As the Advisory Committee Notes to the 2003 amendments to Rule 53 explain, a master's duties may include "matters that could be addressed by a judge, such as reviewing discovery documents for privilege, or duties that might not be suitable for a judge." The Advisory Committee Notes further observe that, "[t]he appointment of masters to participate in pretrial proceedings has developed extensively" over recent decades, to assist district courts in "managing complex litigation." However, courts are cautioned that a Special Master should be appointed "only when the need is clear." FED. R. CIV. P. 53 advisory committee's note to 2003 amendment.

"Before appointing a master, the court must give the parties notice and an opportunity to be heard." FED. R. CIV. P. 53(b)(1). And once the parties have been heard, a Special Master candidate must file an affidavit disclosing whether there is any ground for disqualification under 28 U.S.C. § 455. FED. R. CIV. P. 53(b)(3). This part of Rule 53 is grounded in the obligation of a Special Master to be impartial and objective in the pursuit of their duties. *See Newton v. Consol. Gas Co. of N.Y.*, 259 U.S.

101, 105, 42 S.Ct. 438, 66 L.Ed. 844 (1922) ("He occupies a position of honor, responsibility, and trust; the court looks to him to execute its decrees thoroughly, accurately, impartially, and in full response to the confidence extended . . . ."). A court may issue the order appointing the Special Master thereafter so long as the appointment order includes the contents set out in Rule 53(b)(2).

## II. DISCUSSION

After considering the record in this case, as well as the parties' written submissions and discussion during status conferences, the Court concludes that a Special Master should be appointed to handle discovery issues and disputes in this case.

The reasons underlying the Court's decision are straightforward. To begin, this case is exceptional by any measure, both in its scope and the complexity of the issues presented. Broadly speaking, the case concerns Google's "alleged monopolization and suppression of competition in online display advertising – essentially, the marketplace for the placement of digital display ads on websites and mobile apps." *In re Digit. Advert. Antitrust Litig.*, 555 F.Supp.3d 1372, 1373 (J.P.M.L. 2021).  Like so many aspects of modern life, the internet brought seismic changes to the advertising industry, including the advent of "display advertising," a form of tailored digital advertising, displayed on websites and mobile applications, that allows advertisers to direct ads to specific web users based on their browsing history and characteristics. Publishers and advertisers use sophisticated web tools to conduct auctions, each lasting a fraction of a second, to sell ads that are targeted to likely purchasers. In this

4

market, and as described in the current complaint, advertisers use so-called "ad buying tools" to purchase publisher "inventory"—the space on websites where ads are shown. These ad buying tools let advertisers specify how much they are willing to pay for inventory and the audiences that they want their ads to reach. On the other side of the transaction, publishers use "ad servers" to manage and sell their web display inventory by specifying where advertisers can purchase that inventory and the minimum prices that publishers will accept for it, among other functions. Situated in the middle of these transactions are "ad exchanges" that serve to connect advertisers' buying tools and publishers' ad servers. The ad exchanges conduct real-time auctions in which advertisers—through ad buying tools—bid on publisher inventory.

Challenging Google's alleged misconduct in the display advertising market, the States of Texas, Alaska, Arkansas, Florida, Idaho, Indiana, Louisiana, Mississippi, Missouri, Montana, Nevada, North Dakota, South Carolina, South Dakota, and Utah, and the Commonwealths of Kentucky and Puerto Rico, have asserted federal and state antitrust claims, as well as claims under the various States' deceptive trade practices laws. The Plaintiff States' Fourth Amended Complaint, which spans approximately 236 pages, includes the following alleged violations of federal law:

(1) Google has violated Section II of the Sherman Act, 15 U.S.C. § 2, by willfully acquiring or maintaining a monopoly in the market for ad servers, ad exchanges, and ad buying tools through anticompetitive conduct, (4th Am. Compl. ¶¶ 598–601);

(2) Google has monopoly power, or in the alternative, a dangerous

probability of acquiring monopoly power in the market for ad exchanges and ad buying tools. According to the Plaintiff States, Google also has willfully, knowingly, and with specific intent, attempted to monopolize the market for ad exchanges and the market for ad buying tools, (4th Am. Compl. ¶¶ 602–06); and

 (3) Google has violated Section I and II of the Sherman Act by tying its ad exchange and ad server together to coerce publishers to use both products, (4th Am. Compl. ¶¶ 607–13).[1]

The Plaintiff States also maintain that Google's conduct in the display advertising market was deceptive and violated the States' deceptive trade practices laws. (4th Am. Compl. ¶¶ 526–97, 674–758). Specifically, among other claims, the Plaintiff States assert that Google deceived publishers and advertisers about its use of programs designed to benefit Google at the expense of publishers and advertisers, failed to properly disclose programs, and misrepresented that it runs a transparent marketplace where participants compete on equal footing. (4th Am. Compl. ¶¶ 526–97).

On their face, the claims in this case implicate the application of federal antitrust law and various States' antitrust laws, as well as various States' deceptive trade practices laws, to a variety of alleged acts and practices of Google over a number of years in a complex digital advertising marketplace. Thus, the subject matter at issue, the parties and other market participants involved, and the varying law to be

---

[1] The Plaintiff States maintain that Google's alleged misconduct also violated various state antitrust laws. (4th Am. Compl. ¶¶ 617–73).

applied all demonstrate that this lawsuit presents unusually complex and extensive issues for resolution.

In addition to the exceptional nature of the case, the parties have also identified a number of discovery issues that will likely require substantial assistance from the Court as the case moves forward. A large amount of discovery, particularly in regard to document production, has already occurred. Google has produced approximately six million documents from over 150 custodians to the Plaintiff States.[2] This production, however, has also been accompanied by numerous privilege logs comprised of nearly 500,000 individual entries. The Court anticipates that a Special Master will be able to provide material assistance in addressing any issues or disputes concerning these privilege logs, as well as any privilege issues that may arise in document productions made by the Plaintiff States.

The Plaintiff States have also raised specific issues with Google's production of documents, including a concern that certain "linked documents," which are referenced in materials already produced by Google, have not been produced. In addition, the Plaintiff States have identified issues related to Google's production of internal chats, the States' requests for various data that they allege Google generates and logs as part of its display ad auction process, and concerns regarding Google's production of source code.

For its part, Google has also identified issues regarding the States' production of discovery materials. Most notably, Google observes that it has received only

---

[2] The Court notes that the parties have confirmed that additional requests for production have recently been served on Google.

approximately 13,000 documents from the Plaintiff States, that the States' document productions remain substantially incomplete, and that, in Google's view, the States "are not taking their discovery obligations seriously." (Dkt. #177).

The Special Master, in addition to assisting with any privilege issues, will be able to address these document production and related issues already identified by the parties, together with any additional issues that may arise through the close of discovery, including sealing motions.

The Court also notes that very few depositions have been taken to date, and the expected end of fact discovery is currently set for May 3, 2024. Each side is permitted up to forty depositions of fact witnesses, and extensive expert discovery is also anticipated by the Court's scheduling order. Although the Court anticipates that the parties will work together cooperatively in coordinating the large number of expected depositions over the next few months, the Special Master can also assist regarding deposition scheduling as needed and in resolving any disputes that may arise.

Finally, both MDL 3010 and a case brought by the Department of Justice in the Eastern District of Virginia, *United States et al. v. Google LLC*, No. 1:23-CV-00108-LMB-JFA, concern similar issues related to Google's display advertising business and, thus, offer opportunities for coordinated discovery going forward. The parties have been directed to confer and make a joint proposal concerning a potential coordinated discovery order. The Court has received initial submissions from the parties and expects additional briefing from the parties on coordinated discovery. The

Court anticipates that the Special Master will assist the Court in the development of an appropriate order on coordinated discovery and in overseeing the implementation of any such order.

For these reasons, the Court has determined that the appointment of a Special Master to assist with discovery matters and disputes will materially advance the efforts of the Court to adjudicate this exceptional matter as efficiently as possible.

### III. APPOINTMENT

The Court appoints David T. Moran as Special Master. Mr. Moran has already provided the affidavit required under Rule 53(b)(3). (Dkt. #195). The Special Master shall proceed with all reasonable diligence. FED. R. CIV. P. 53(b)(2).

### A. Duties and Authority

The Special Master's authority shall be defined as stated in Rule 53(c), but shall be limited to discovery issues and disputes. *See* FED. R. CIV. P. 53(c)(1) (providing that the Special Master has authority to "regulate all proceedings;" "take all appropriate measures to perform the assigned duties fairly and efficiently;" and "if conducting an evidentiary hearing, exercise the appointing court's power to compel, take, and record evidence"). The Special Master shall have authority to:

    i.    oversee all discovery in this matter, including all depositions;

    ii.    establish discovery and other schedules, consistent with the Court's scheduling order; direct and supervise the production of discovery, including electronically stored information; review and attempt to resolve informally any discovery conflicts, including issues such as the

discoverability of particular information, privilege, confidentiality, and access to trade secrets and other records; and generally supervise formal discovery and any informal exchanges of information;

iii.   rule on any objections raised in discovery in this matter, including in depositions;

iv.   oversee all discovery disputes that may arise before trial, including related discovery conferences and motions; and

v.   implement any order on coordinated discovery that may be entered by this Court.

To accomplish these tasks, the Court anticipates that the Special Master will hold regular status conferences with the parties, likely occurring twice each month. Pursuant to Rule 53(e), and if the Court so requests, the Special Master will prepare formal reports and issue formal recommendations to the Court on the subjects covered by this appointment. If the Special Master considers it advisable to make any other report to the Court, he will do so in accordance with Rule 53(e) and (f).

The Special Master may "impose on a party any noncontempt sanction provided by Rule 37 or 45, and may recommend a contempt sanction against a party and sanctions against a nonparty." FED. R. CIV. P. 53(c)(2). The Special Master shall have the discretion to decide whether an in-person hearing is necessary to resolve a dispute or whether the dispute may be resolved through a telephonic hearing. The Special Master may communicate ex parte with the Court regarding the instant case. No party shall communicate with the Special Master ex parte unless otherwise

permitted by the Special Master.

Any decision or ruling issued by the Special Master shall be filed and served pursuant to Rule 53(d). *See* FED. R. CIV. P. 53(d)–(e) (noting that "[a] master who issues an order must file it and promptly serve a copy on each party. The clerk must enter the order on the docket[;]" and "[a] master must report to the court as required by the appointing order. The Special Master must file the report and promptly serve a copy on each party, unless the court orders otherwise."). Specifically, the Special Master shall either: (1) reduce any formal order, finding, report, or recommendation to writing and file it electronically on the case docket via Electronic Case Filing; or (2) issue any formal order, finding, report, or recommendation on the record, before a court reporter.

Pursuant to Rule 53(f)(2), any party who wishes to challenge any decision of the Special Master shall, no later than 14 days from the filing date of the Special Master's decision, file a motion for review of the Special Master's decision and notice the motion for hearing in accordance with the Court's procedures. The parties shall not include—and the Court will not consider—any evidence or argument that was not presented to the Special Master. The standard of review the Court will apply to any motion for review shall be governed by Rule 53(f). Absent timely objection, the orders, reports, or recommendations of the Special Master shall be deemed approved, accepted, and ordered by the Court, unless the Court explicitly provides otherwise.

All papers submitted by the parties to the Special Master shall be filed with the Court. The Special Master will specify the procedure for filing and lodging of such

papers with him.

Pursuant to Rule 53(b)(2)(C), the Special Master must maintain orderly files consisting of all documents submitted to him by the parties, and any of his written orders, findings, and/or recommendations. He must preserve these files until such time that the Court grants permission for their destruction.

## B. Compensation

Pursuant to Rule 53(g), the Special Master shall be compensated at his normal and customary hourly rate for work done pursuant to this Order, and will be reimbursed for any out-of-pocket expenses (e.g., costs of accountants, auditors, and clerical or other necessary personnel). The Special Master may also utilize and charge for services of attorneys and paralegals in his law firm at lower hourly rates than his to assist him with any of his duties. The Special Master may be reimbursed for travel expenses but will not charge for travel time. The Special Master will prepare a monthly invoice for his services, expenses, and costs, which he will provide to counsel for Plaintiffs and Defendant.

Counsel for the Plaintiff States will promptly and timely pay one-half of all hourly rates, expenses, and costs of the Special Master. Defense counsel will also promptly and timely pay one-half of all hourly rates, expenses, and costs of the Special Master. Payments shall be made by Plaintiffs' counsel and Defendant's counsel directly to the Special Master and not to the Court. Any disputes regarding compensation, costs and expenses of the Special Master, or the allocation of payment

of such fees and costs among the parties, will be brought to the Court's attention.

The Special Master may recommend to the Court that the cost imposed by any particular invoice, or invoices, should be divided differently among the parties based on the circumstances and nature of the Special Master's work. The Court will consider any such recommendation and make adjustments as necessary.

## C. Confidentiality Order

Pursuant to the Confidentiality Order, (Dkt. #182), the Court orders that the Special Master, and any person with whom he works pursuant to this Order, shall have access to and is authorized to review any documents and materials subject to the Confidentiality Order that may be accessed by this Court and its personnel. The Court clarifies, in case of any doubt, that providing such materials to the Special Master, and any person with whom he works pursuant to this Order, does not waive any protections under the Confidentiality Order.

The Special Master, and any person with whom he works pursuant to this Order, shall execute the agreement to be bound by the Confidentiality Order, which is Appendix A to the Confidentiality Order.

**So ORDERED and SIGNED this 26th day of January, 2024.**

_____
SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE

13