# YetterColeman LLP

February 7, 2024

**Via Email**

David T. Moran
Jackson Walker LLP
2323 Ross Avenue, Suite 600
Dallas, Texas 75201
(214) 953-6051
dmoran@jw.com

Re: *Texas, et al. v. Google LLC*, No. 4:20-cv-957-SDJ (E.D. Tex.)

Dear Mr. Moran:

On behalf of Defendant Google, we write to provide the Special Master with an overview of the discovery landscape in this case to date. Significant discovery has occurred since Plaintiffs initiated their pre-suit investigation of Google in 2019. Google has produced more than 6 million documents, 200 terabytes of data, and made available more than 80 gigabytes of source code for review.

Fact discovery has been open since November 2022 and less than three months remain. In the interests of efficiency and to avoid retreading old ground at this late juncture, Google respectfully submits any remaining disputes, to the extent that they arise, should be resolved taking into account the parties' extensive negotiating history in the MDL, including the prior resolution of complex ESI issues and the agreed scope of document and data production. This letter provides a high-level overview of that background; Google is available to provide additional background and context as required to address any specific issues that may arise.

**Preservation and Production Format Negotiations**

During the MDL, the parties negotiated the scope of an ESI Order over a ten-month period. During the course of negotiations, Google made clear its position that the parties' respective preservation and collection obligations should be grounded in the Sedona Principles.[1] Judge Castel stated that, when considering these complex ESI issues, the Sedona Principles should be "front and center." MDL ECF No. 481 at 6:2-4.

Among other things, Google made clear its view that ephemeral data (such as dynamic dashboards) need not be preserved—much less collected and produced. *See* MDL ECF No. 434 at 8. The governing ESI Order reflects Google's position that these dashboards and dynamic data

---

[1] *See Sedona Principles*, Third Edition, 19 Sedona Conf. J. 1, 40-41 (2018).

YetterColeman LLP

Special Master Moran											2											February 7, 2024

sources need not be preserved, collected, reviewed, or produced. MDL ECF No. 508 ¶¶ II(3)-(4), at 5 n.3; ECF No. 183 ¶¶ II(3)-(4), at 5 n.3.

The ESI Order also reflects the parties' agreement concerning ad logs, the result of months of negotiation. Specifically, the parties agreed to meet and confer regarding the sampling and/or preservation of "a relevant and proportionate set of ad logs." MDL ECF No. 508 at 5 n.2; ECF No. 183 at 5 n.2. Google provided both a sample set of ad logs and bespoke transaction-level datasets derived from the ad logs. Plaintiffs have been silent on this front since September of last year.

The ESI Order also reflected the parties' agreement regarding production format, including their agreement that Google is not required to reproduce materials from the pre-suit investigation phase. MDL ECF No. 508 at 2 n.1; ECF No. 183 at 2 n.1. The ESI Order entered in this case reflects all of these same agreements. ECF No. 183.

**Google's Document and Data Productions**

Plaintiffs had significant influence over the contours of document and data discovery in the MDL. As occupants of two of the five seats on the MDL Discovery Steering Committee established by Judge Castel, Plaintiffs were charged with drafting "a common set of Rule 34 requests and [a] common set of interrogatories" on behalf of all plaintiffs in the MDL. MDL ECF No. 311 ¶¶ 2 n.1, 3.

Discovery opened on November 21, 2022. In Pre-Trial Order No. 5, Judge Castel ordered that initial requests for production of documents and data be served by January 27, 2023. MDL ECF No. 394 ¶ 6.1. Because he dismissed Plaintiffs' conspiracy claim related to Google's Network Bidding Agreement with Facebook (now Meta), Judge Castel ordered that "discovery relating to the Network Bidding Agreement is stayed pending further Order[,]" MDL ECF No. 394 ¶ 3, but did not otherwise stay discovery, including discovery related to Plaintiffs' state-law claims.

On January 27, 2023, MDL Plaintiffs (including Plaintiffs in this action) collectively served 301 Requests for Production ("RFPs") on Google. Plaintiffs represented to Google that those 301 RFPs would be "comprehensive" and cover "all aspects of the case." MDL ECF No. 371 at 8. On February 27, 2023, Google served its Responses and Objections, and sent a contemporaneous letter, detailing its "proposal for identifying custodial documents and data responsive" to Plaintiffs' RFPs. MDL ECF No. 550-1 at 1 (Google's "Discovery Plan").

*Google's document productions.* Google's Discovery Plan proposed that 80 search terms adapted from those used with Texas and the DOJ in their respective ad tech investigations, be run over a proposed 119 Google custodians over a ten-year period. Discovery Plan at 2. Over the next eight months, Google negotiated additional custodians and search terms with Plaintiffs in this case and other MDL Plaintiffs.

As a result of those protracted negotiations, and parallel negotiations with plaintiffs in the Virginia Case, Google has collected, reviewed and produced more than 4 million more documents

YetterColeman LLP

Special Master Moran  3  February 7, 2024

by applying a total of 212 search terms across the files of 158 Google custodians.[2] *See* MDL ECF No. 662 at 1-2. On November 2, 2023, Judge Castel granted Plaintiffs' request for an additional 12 Google custodians and an additional 9 search terms, but cautioned that his order "is not a license to come back next month [to ask for other search terms or more custodians] . . . this is essentially it." MDL ECF No. 664; MDL ECF No. 665 at 11:10-18. Although that Order was issued following remand to this Court, Google agreed to continue producing those documents to Plaintiffs in this case.

*Google's data productions.* Google's Discovery Plan included a comprehensive proposal to address the subset of Plaintiffs' RFPs that sought data (the "Data Requests").[3] Given the time and burden involved in Google's proposed production of extensive quantities of transaction-level and aggregated data, Google asked for Plaintiffs' confirmation that its proposed data "productions would constitute complete responses to the Data Requests" or that Plaintiffs "identify with specificity any additional information Plaintiffs contend should be included." Discovery Plan at 3. Plaintiffs have done neither, instead focusing their efforts on discovery-on-discovery concerning the source of the data that Google has produced.

Google substantially completed its production in response to the Data Requests by May 30, 2023. In summary, Google has produced more than 40 different datasets comprising over 200 terabytes of data, including, as previously noted, custom transaction-level datasets that do not exist in the ordinary course of business. Developing the bespoke pipelines to produce these datasets required work from more than 20 Google engineers over the course of nearly six months.

*Google's source code productions.* Plaintiffs have had access to approximately 80 gigabytes of Google's source code since July 17, 2023. The broad scope of the source code encompasses the code for bidding, auction algorithms, and ad tech products at issue in the case.[4] In addition to the code itself, Google made available information sufficient to identify changes to the code for these features and products since January 1, 2013 (with the exception of changes to the code for Dynamic Allocation, for which Google provided information going back to January 1, 2009).

---

[2] Google also produced approximately 2 million documents to Plaintiffs in the course of the pre-suit investigation.

[3] In its Discovery Plan, Google identified the Data Requests as RFP Nos. 20, 21, 22, 116, 159, 243, and 247. Discovery Plan at 3.

[4] This includes source code for Dynamic Allocation, Enhanced Dynamic Allocation, Reserve Price Optimization, Dynamic Revenue Share, Minimum Bid to Win aka Highest Other Bid, Poirot, Bernanke (including Global Bernanke and Bell), Elmo, Exchange Bidding, Line Item Caps, and Unified Pricing Rules; source code for bid, price floor, or auction optimization algorithms, products, and features; source code for automated means or manner of bidding, including on individual bids and on a campaign-level basis; and components of source code that choose what exchanges, DSPs, and Ad Networks are called by Google Ad Manager, DV360, and Google Ads.

YetterColeman LLP

Special Master Moran												4												February 7, 2024

Since July 2023, Plaintiffs have inspected the code on 36 occasions. In a December 7, 2023, brief submitted to the Court by Plaintiffs, Google learned for the first time that Plaintiffs contended there are gaps in the source code, but Plaintiffs provided no details. ECF No. 176 at 6. Plaintiffs first notified Google of their specific gaps that they contend exist in the code in a letter dated January 16, 2024. Google will continue to meet and confer with Plaintiffs with respect to their recent request.

**Google's Privilege Logs**

Google has faced multiple pre-suit investigations across multiple jurisdictions since at least 2019, and there are now three parallel Ad Tech litigations across three jurisdictions in the United States. Because of those investigations and the resulting lawsuits, Google's privilege reviews in this case have been substantial, with counsel grappling with difficult questions of privilege and work product protections.

Across the coordinated cases, there have been only two challenges to Google's privilege logs. The first challenge was made by Plaintiffs (and other MDL plaintiffs) in November 2022 seeking guidance regarding "the applicable standards for withholding a document on privilege grounds" and asking the Court to review Google's privilege assertions on a handful of documents. MDL ECF No. 369 at 6. The Court declined to provide the requested advisory opinion, but issued an order adjudicating specific claims for specific documents. *See* MDL ECF No. 438.

The second challenge was made by plaintiffs in the Virginia Case, who challenged 21 documents that they claimed were improperly withheld or redacted in an attempt to shield sensitive business communications. *See* EDVA ECF No. 215. Magistrate Judge Anderson determined that the Virginia Plaintiffs failed to meet the standard required to warrant in camera review for all but one of the challenged documents, EDVA ECF No. 271 (order declining in camera review except for one document challenged by plaintiffs). For the remaining document, Magistrate Judge Anderson upheld Google's assertions of privilege. EDVA ECF Nos. 274 at 2, 279 (orders recognizing in part that document addressing "potential regulatory risks" reflected "direct input from . . . counsel" and was thus properly protected).

Google has consistently produced privilege logs in this case within 45 days of each production as required by the governing ESI Order, *see* MDL ECF No. 508 ¶ V(1), beginning in July 2023. In November 2023, Plaintiffs asserted for the first time that there were deficiencies in Google's privilege logs. Google agreed to undertake a reasonable re-review of entries flagged by Plaintiffs, and that review is ongoing. The majority of Plaintiffs have yet to produce any privilege logs.[5]

---

[5] To date, Google has received privilege logs from only two States—Texas and South Carolina—for documents withheld or redacted for privilege, as well as a privilege log for 69 memoranda related to witness interviews taken during the multi-state investigation.

YetterColeman LLP

Special Master Moran　　　　　　　　　　5　　　　　　　　　　February 7, 2024

\* \* \*

Efficiency is paramount in light of the May 3 deadline for the close of fact discovery. To that end, Google proposes that any issue brought to the Special Master should be briefed in advance with adequate time for the opposing party to respond. To ensure that all parties may share any relevant fact and law—and, as needed, any background and negotiating history as to specific discovery-related issues—Google proposes that opening briefs (of no more than 10 pages) be submitted at least 5 business days before a conference, with any response due 4 business days after that.

We look forward to discussing these issues tomorrow.

Cordially yours,

R. Paul Yetter

cc:　Hon. Sean D. Jordan, U.S.D.J. (by ECF)
　　　Counsel of Record (by ECF)