IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| THE STATE OF TEXAS, et al., | § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. 4:20-CV-957-SDJ |
| GOOGLE LLC, | § § | |
| Defendant. | § § | |

**GOOGLE'S FIRST BRIEF ON DISCOVERY IMPASSES**

Defendant Google LLC ("Google") respectfully submits its first brief raising discovery disputes at an impasse in advance of the February 22, 2024 conference before the Special Master. Over three years and five complaints into this case, Plaintiffs have yet to disclose basic information that Google needs to prepare its defense. Plaintiffs have repeatedly promised to supplement their deficient responses and have repeatedly failed to do so.[1]

*First*, Plaintiffs should be ordered to respond to interrogatories stating on whose behalf they are bringing this action, the remedies they seek and for what alleged conduct, and how they intend to calculate damages. This information should have been provided in Rule 26 disclosures back in April 2021 and must be provided now without further delay.

*Second*, Plaintiffs should be ordered to provide privilege logs. Most Plaintiffs have failed to provide privilege logs at all. And Texas refuses to provide basic privilege log information, incorrectly claiming certain work product is exempt from logging requirements.

*Third*, Plaintiffs should be ordered to complete their long-outstanding document searches and provide substantive responses to Google's interrogatories. These have been long-promised, but never delivered. Most Plaintiffs have produced few, if any, documents. It is clear that they have not done diligent searches for responsive information. In addition, Plaintiffs promised revised responses to a number of interrogatories that have never come. And, based on what they have promised, it is clear that their anticipated revisions will still fall short. Plaintiffs should be ordered to participate fully and promptly in discovery.

---

[1] In discussions over the last month, and repeated in their letter dated February 7, 2024, Plaintiffs have promised revisions to their interrogatory responses. Ex. 1. However, in discussions, Plaintiffs have refused to state clearly that their revisions will provide the specific information to which Google is entitled. Moreover, Plaintiffs have previously promised revisions that subsequently fail to materialize. Google believes that Plaintiffs' deficient interrogatory responses will present a live issue until adequate and complete revisions are actually received.

## ARGUMENT AND AUTHORITIES

### I. Interrogatories 2, 4, 5 and 26

**What Remedies for Whom**: Plaintiffs should be required to respond fully to Google's Interrogatories 2 and 4. Google sought fundamental information about the relief sought in this case and on whose behalf over a year ago. Plaintiffs should have disclosed this information at the outset of the case under Rule 26 as *initial* disclosures. After more than three years of litigation, near the close of discovery, Plaintiffs should be compelled finally to state the injuries that brought them to federal court, and for whom.

Plaintiffs amended interrogatory responses, served in December, remain deficient. *See* Ex. 2 (Third. Am. Interrogs. Responses and Objs.); App'x (providing text of interrogatories). After repeated demands, Plaintiffs purported to identify their respective theories of standing and applicable state statutes. But these new responses still do not even identify what remedies Plaintiffs seek, for what conduct, or for which persons. Their interrogatory responses are also internally inconsistent, identifying different states proceeding in *parens* capacity in response to Interrogatories 2 versus 4. After much conferring, Plaintiffs finally said they will give some unspecified revised responses by the "week of February 12." Yet they refuse to explain how they will supplement their responses and provide no assurance they will respond to concerns Google has repeatedly raised. Plaintiffs have made and failed to deliver on similar promises before.

This delay appears to be strategic. Google has moved to dismiss Plaintiffs' latest complaint because Plaintiffs lack standing to seek relief in their sovereign or *parens patriae* capacities. Plaintiffs appear determined to avoid stating any positions in an effort to stave off dismissal. It is obviously improper to delay discovery responses simply because Plaintiffs have not yet decided

how they will try to respond to Google's motion. Plaintiffs clearly intend to tailor their overdue responses to bolster their opposition brief. Regrettably, this tactic of taking no definitive position on fundamental issues is not new. For example, Plaintiffs abandoned their federal-law damages demand in an effort to deprive the JPML of jurisdiction to centralize their case.[2] When pressed by Google, Plaintiffs responded that while it was "unlikely" that they would reassert these demands, they reserved the right to do so.[3] The time for Plaintiffs to develop a theory of jurisdiction has long since passed. Fact discovery will soon close, and Google is entitled to know the basic contours of the case Plaintiffs are bringing so that Google can conduct discovery and prepare its defense.

**Damages Theory/Calculation and Relief**: Similarly, Plaintiffs have not yet even said who or what was allegedly injured, for what they seek monetary damages or civil penalties (Interrog. 5), or how they intend to calculate such damages or penalties (Interrog. 26)—again, basic Rule 26 disclosures that are years late.

Rule 26 initial disclosures require a "computation of each category of damages claimed," without "awaiting a discovery request." Fed. R. Civ. P. 26(a)(1)(iii). A plaintiff is "not excused from making its disclosures because it has not fully investigated the case." Fed. R. Civ. P. 26(a)(1)(E); s*ee also CQ, Inc. v. TXU Min. Co., L.P.*, 565 F.3d 268, 279 (5th Cir. 2009) (damages evidence excluded which was not included in Rule 26 disclosures); *Janvey v. Greenberg Traurig, LLP*, 2019 WL 13175533 at *3 (N.D. Tex. Feb 12, 2019) (ordering interrogatory response to state damages even if an exact computation of damages would require an expert opinion).

---

[2] *See* Letter to Judge Castel from M. Lanier at 2, *In re Google Dig. Advert. Antitrust Litig.*, No. 1:21-md-0310 (S.D.N.Y. Aug. 18, 2021), MDL ECF No. 12.

[3] Letter to Judge Castel from M. Lanier, *In re: Google Dig. Advert. Antitrust Litig.*, No. 1:21-md-0310 (S.D.N.Y. September 3, 2021), MDL ECF No. 52 at 2.

Like with the other interrogatories, Plaintiffs vaguely say they will provide some responses by the "week of February 12," but have not identified how they will supplement responses or given any assurance they will address Google's specific concerns.

As explained in Google's February 7 submission, when faced with a similar issue in the parallel DOJ litigation, Magistrate Judge Anderson noted that a defendant "in any case is entitled to know what the plaintiff is asking for . . . [and] at least needs to know, in some respects, [] how damages are being calculated, what the elements are, what you intend to be going after." ECF No. 221-1 (Sept. 15, 2023 Hr'g Tr. (E.D. Va.)) at 24:7-23. He ordered the DOJ to provide its damages calculation or risk preclusion of the evidence at trial. *Id.*

Plaintiffs should not be allowed to continue to kick the can on providing years-late basic information by vaguely stating they will revise their responses, particularly where there are "multiple capacities" in which a state could sue. *Harrison v. Jefferson Parish School Bd.*, 78 F.4th 765, 769 (5th Cir. 2023) (noting that states may "sue on behalf of themselves or in the interest of their residents in a parens patriae capacity") (cite omitted); *see also, e.g.*, *Macro Niche Software, Inc. v. 4 Imaging Sols., L.L.C.*, 2014 WL 12599512, at *1-2 (S.D. Tex. Jan. 15, 2014) (excluding damages evidence because calculations not disclosed with sufficient time for defendants to prepare). They should be ordered to stop playing games and by a date certain provide the specific information that they are obligated to provide.

## II.   Privilege Logs

Plaintiffs have not provided logs disclosing and substantiating their privilege assertions, another basic discovery obligation. Fifteen Plaintiffs produced no privilege logs at all and Texas

5

and South Carolina have provided only limited information about their privilege assertions. *See* App'x B (chart of state productions).

No litigant gets to self-exempt from the Rules. A party "asserting a privilege exemption from discovery bears the burden of demonstrating its applicability." *In re Santa Fe Int'l Corp.*, 272 F.3d 705, 710 (5th Cir. 2001). That includes privilege logs, without which Google cannot assess, let alone challenge, claims of privilege under the Rules. *See, e.g.*, *United States v. Planned Parenthood Fed'n of Am., Inc.*, 2022 WL 19021459, at *3-5 (N.D. Tex.), *clarified*, 2022 WL 19010525 (N.D. Tex. 2022) (ordering Texas to provide a privilege log for materials withheld under an investigative privilege so the court and defendants could probe its privilege assertions).

Even the two limited privilege logs that have been provided fall far short of identifying the information withheld as privileged. For example, in discussions among the parties, Google learned Texas is taking the position that the ESI Protocol broadly *exempts* logging documents about or pertaining to third-party statements. The provisions Texas pointed to in the ESI Protocol in no way support their interpretation. *See* ECF No. 183 at 8 ¶¶(e), (h) (covering communications between various attorneys, not third party interviews). Texas's position is wrong and it cannot be allowed to unilaterally excuse itself from having to assert and explain its privilege assertions.

Plaintiffs' failures are troubling because they previously used privilege assertions to hide key information from Google. In July 2021, Plaintiffs represented to the JPML that they took "over 50 [witness] statements, equivalent to depositions" as part of their investigation. ECF No. 221-2 at 25:5-8. When Google sought production of those written statements, Plaintiffs said that they had misspoken before the JPML and that there were no written statements, only attorney memoranda of discussions with third parties. But Plaintiffs had not logged any such memoranda

and initially took the position that this was not required. Only after Google threatened to raise the issue with Judge Jordan did Plaintiffs agree to log these specific documents, which revealed multiple interviews with third parties not previously identified on their Initial Disclosures.

### III. Deficient Document Productions and Interrogatory Responses

**Document productions**: While Google has produced 6 million documents, and is getting requests for even more, some Plaintiffs have yet to produce *any* documents in response to disclosures or requests for production. Most productions are negligible: 11 states have produced fewer than 60 documents each. *See* App'x B.

Such low numbers make no sense in a case that spans a decade of challenged conduct and strongly suggest a lack of diligent searches. This is particularly concerning when the plaintiffs who seek damages have produced few (if any) documents to substantiate those claims. *Compare* Ex. 3 (App'x B to Pls.' Third Am. Responses and Objs.) (Arkansas, Idaho, Louisiana, Puerto Rico, and South Dakota claiming damages) *with* App'x B, *infra* (each of those states have produced 47 documents or fewer, and two have produced no documents). Many states failed even to produce any document retention policies (RFP No. 12), and many of the states that use the disputed digital advertising products failed to produce documents related to their use of those products or their digital advertising strategy.

As we near the end of discovery, Google is missing the information and documents from Plaintiffs necessary to take depositions. Plaintiffs' vague statements that they will "reexamine" their productions and provide "assurances" of compliance are insufficient. Each Plaintiff should be compelled to identify custodians and search terms and find and promptly produce all relevant documents, just as Google has done.

**Common Interrogatory Deficiencies**: For certain interrogatories, all Plaintiffs have failed to provide adequate responses relying on the same meritless objections.

Interrogs. 6, 7, 11, 12, 14, 22, 29-31: Plaintiffs object to more than half a dozen interrogatories as *premature* in light of "the status of the case," or as requesting premature expert disclosures. Ex. 2 (Pls.' Third Am. Interrogs. Responses). This cannot square with the current schedule. Indeed, Plaintiffs' originally proposed to the Court that fact discovery end by February 14, "in view of the proceedings and discovery already conducted in the MDL." ECF No. 157.

The interrogatories seek relevant information concerning injunctive and structural relief sought (No. 6); the claim for disgorgement (No. 7); communications with Google relied on for Plaintiffs' claims (No. 11); particular contracts, and specific contract terms, that allegedly "coerced" customers into using certain Google products (No. 12); when Plaintiffs formed the belief that Google has monopoly power (No. 14); and specific allegations in the Complaint (No. 22); as well as persons with knowledge about alleged harm or injuries (Nos. 29-31).

This is basic information that Plaintiffs should have had when filing the complaint. *See, e.g.*, *Brassell v. Turner*, No. 3:05-CV-476-LS, 2006 WL 1806465, at *4 (S.D. Miss. June 29, 2006) (granting motion to compel interrogatory response for information party "had before this litigation began" and finding "that the Interrogatory is not premature"); *In re Domestic Drywall Antitrust Litig.*, 300 F.R.D. 228, 231 (E.D. Pa. 2014) (compelling responses in antitrust case, as "Defendants have a reasonable need to know the identities of the products, individuals who discussed prices with competitors, and the dates and substance of the communications, to proceed with their own effective discovery and investigation"). These interrogatories do not call for a legal conclusion. *See Acosta v. Williamson Cnty.*, 2022 WL 16727728, at *5 (W.D. Tex. Nov. 4, 2022) (cite omitted)

(noting that questions "seeking the identification of witnesses or documents are not contention interrogatories"). Moreover, at this late stage of discovery, Plaintiffs must respond even to contention interrogatories. *See, e.g.*, *Janvey*, 2019 WL 13175533, at *6 (compelling responses to contention interrogatories after "seven months of discovery," when plaintiff should "have a good idea of" facts underlying claims).

Interrog. 9: In both their Initial Disclosures and response to Interrogatory 9, Plaintiffs have failed to identify or provide requested information about communications with third parties. *See* App'x A (requesting Plaintiffs identify "all persons other than Google with whom You communicated concerning an Investigation or this Action" as well as "the date of each communication, [. . .] the subject matter discussed; and "any documents disclosed by You or the person during each communication"). Plaintiffs' response to Interrogatory 9 refers back to Appendix A of their Initial Disclosures as "list[ing] each third party contacted during the investigation by the Plaintiff States" and added that Plaintiffs "did not disclose any documents to the listed parties during those conversations."

Plaintiffs' Appendix A of their Initial Disclosures is not an adequate substitute for a response to Interrogatory 9. It identifies third parties with relevant information and on what subjects, but does not provide information about if or when Plaintiffs communicated with those third parties, on what topics, or whether documents were provided by the third parties. In addition, there are substantial deficiencies with the information Plaintiffs provided. Google's review of Plaintiffs' productions revealed third parties contacted in the investigation but not included in Plaintiffs' Initial Disclosures and Texas's supplemental privilege log (February 2, 2024) referenced interviews with ten companies not included either. Though Google has alerted Plaintiffs

9

to these omissions, there may be more and Plaintiffs must meet their obligation to provide a complete response.

**Specific Interrogatory Deficiencies**: In addition, Plaintiffs that use the disputed products or services have not provided adequate responses to related interrogatories. For example, Interrogatory 21 asks Plaintiffs who have used the at-issue products to identify, among other things, any analyses regarding the effectiveness of the products. Arkansas, Indiana, and Louisiana—three states that use Ad Tech products—did not respond because they did not use the products to create a "return on investment." Plaintiffs cannot dissect discovery requests using such an overly narrow interpretation to avoid providing a complete answer.

## Conclusion

Google has been prejudiced by Plaintiffs' three-year delay and cannot timely prepare its defense unless Plaintiffs promptly and fully disclose basic information about their claims and log alleged privileged materials. Google respectfully requests that Plaintiffs be ordered promptly to provide full Rule 26 disclosures; proper responses to Interrogatories 2, 4-7, 9, 11, 12, 14, 22, 26, and 29-31; and perform reasonable searches for documents responsive to Google's requests.[4]

---

[4] Google notes that the Special Master's February 9, 2024 Order requires the party to comply with Local Rule CV-7(h)'s conference requirement. As set forth in Google's February 7, 2024 letter to the special master, the meet-and-confer process has caused delays because Plaintiffs do not participate through counsel with authority to speak on their behalf. Google expects to speak with all Plaintiffs this week and, to the extent that procedural issues remain unresolved, reserves the right to raise the issue again.

Dated: February 13, 2024　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　 *R. Paul Yetter*
　　　　　　　　　　　　　　　　　　　　R. Paul Yetter
　　　　　　　　　　　　　　　　　　　　State Bar No. 22154200
　　　　　　　　　　　　　　　　　　　　YETTER COLEMAN LLP
　　　　　　　　　　　　　　　　　　　　811 Main Street, Suite 4100
　　　　　　　　　　　　　　　　　　　　Houston, Texas 77002
　　　　　　　　　　　　　　　　　　　　(713) 632-8000
　　　　　　　　　　　　　　　　　　　　pyetter@yettercoleman.com

　　　　　　　　　　　　　　　　　　　　Eric Mahr (*pro hac vice*)
　　　　　　　　　　　　　　　　　　　　FRESHFIELDS BRUCKHAUS DERINGER US LLP
　　　　　　　　　　　　　　　　　　　　700 13th Street NW, 10th Floor
　　　　　　　　　　　　　　　　　　　　Washington, D.C. 20005
　　　　　　　　　　　　　　　　　　　　(202) 777-4500
　　　　　　　　　　　　　　　　　　　　eric.mahr@freshfields.com

　　　　　　　　　　　　　　　　　　　　ATTORNEYS FOR DEFENDANT GOOGLE LLC

### CERTIFICATE OF SERVICE

　　I certify that on this 13th day of February 2024, this document was filed electronically in compliance with Local Rule CV-5(a) and served on all counsel who have consented to electronic service, per Local Rule CV-5(a)(3)(A).

　　　　　　　　　　　　　　　　　　　　 *R. Paul Yetter*
　　　　　　　　　　　　　　　　　　　　R. Paul Yetter

<strong>CERTIFICATE OF CONFERENCE</strong>

I certify that on this 13th day of February 2024, counsel has complied with the meet and confer requirement of Local Rule CV-7(h). Specifically, Google has conferred on the phone or in person with counsel for Texas, primarily Trevor Young and/or Geraldine Young, on issues raised in this brief on at least the following days:

- April 5, 2023
- May 25, 2023
- January 19, 2024
- January 24, 2024
- January 29, 2024
- February 12, 2024

Counsel for Texas purported to represent all Plaintiffs for the purposes of the conferences. Though Plaintiffs submitted a letter to Google on February 7, 2024, agreeing to provide amended interrogatory responses this week, this instant filing is due prior to Google receiving those responses. Accordingly, until Plaintiffs actually provide revisions they have been promising for weeks and those revisions are sufficient, the parties remain at an impasse on Plaintiffs' current discovery responses.

<em>R. Paul Yetter</em><br>
R. Paul Yetter

**Appendix A**

| No. | Text | Deficient States |
|---|---|---|
| 2 | Identify all remedies You seek in this Action, in what capacity (such as parens patriae or sovereign capacity) You seek each remedy, and the statutory or other legal basis for each such remedy. | All |
| 4 | Identify all injured persons or categories of persons on whose behalf You as parens patriae seek monetary relief (including, where applicable, restitution, disgorgement, civil penalties, civil fines, or damages) in this Action, and for each person or category of persons state the following: a. whether the person is a natural person or legal entity; b. how the person has used Display Advertising or Ad Tech Products, including whether the person is a Publisher, Advertiser, or consumer; c. the person's state of residence, organization, or incorporation; d. if applicable, the person's principal place of business; e. the nature of the person's injury; and f. the specific monetary relief You seek as a result of the person's injury. | All |
| 5 | Identify and quantify all harm to the general welfare and the economy of Your state for which You seek monetary relief (including, where applicable, restitution, disgorgement, civil penalties, civil fines, or damages) in this Action, and specify the particular relief You seek for each such harm. | All |
| 6 | Identify all injunctive or structural relief You seek in this Action, including a description of: a. the specific relief sought; b. the applicable relevant market; c. the assets or Ad Tech Product(s) You expect to be impacted; d. the proposed duration of the relief; and e. how each type of relief sought would "restore competitive conditions in the relevant markets" as alleged in Paragraph 683(c)-(d) of the Third Amended Complaint. | All |
| 7 | Identify the "data and information unlawfully taken from consumers by means of deceptive trade practices" for which You seek disgorgement in Paragraph 683(g) of the Third Amended Complaint, and describe how such disgorgement is to be effected and implemented. | All |

| 9 | Identify all persons other than Google with whom You communicated concerning an Investigation or this Action. In Your response: a. provide the date of each communication, the participants in the communication (including each participant's employer or affiliation), the method of the communication, and the subject matter discussed; and b. identify any documents disclosed by You or the person during each communication. | All |
|---|---|---|
| 11 | Identify any communications with or from Google upon which You rely for any of Your claims, including the dates of such communications, the relevant individuals from You and Google who participated in such communications, the subject matter of such communications, and all documents related thereto. | All |
| 12 | Identify all contracts that You allege coerced customers into using DFP with AdX, as set forth in Paragraphs 245-252 of the Third Amended Complaint. For each contract, identify the specific provisions You contend are coercive in nature. | All |
| 14 | Identify the earliest date on which You believe Google possessed monopoly power in each of the markets that You allege to be relevant to Your claims, and describe how You believe Google obtained monopoly power in each of those markets | All |
| 21 | Separately for each agency, department, entity, or division of Your state (including the office of the Attorney General) that has used Ad Tech Products or Display Advertising, identify by date and description any studies or analyses concerning return on investment for Display Advertising, including analyses comparing the performance, value, or effectiveness of Google Ad Tech Products to other Ad Tech Products. | Arkansas, Indiana, Louisiana |
| 22 | Identify all facts and documents supporting Your allegations concerning the alleged 2020 Facebook boycott described in Paragraph 175 of the Third Amended Complaint. | All |
| 26 | For each category of monetary relief (including where applicable restitution, disgorgement, civil penalties, civil fines, or damages) that You seek in this Action, provide a computation of the amount of each category of monetary relief sought for each count. | All |
| 29 | With respect to each harm or injury for which You seek relief in this Action in Your sovereign capacity, identify each person with knowledge of that harm or injury | All |

| 30 | With respect to each harm or injury for which You seek relief in this Action as parens patriae, identify each person with knowledge of that harm or injury. | All |
|---|---|---|
| 31 | With respect to each harm or injury to the general welfare and the economy of Your state for which You seek relief in this Action, identify each person with knowledge of that harm or injury. | All |

**Appendix B**

| State | Documents Produced | Privilege Log Entries |
|---|---|---|
| Alaska | 2 | 0 |
| Arkansas | 46 | 0 |
| Commonwealth of Puerto Rico | 0 | 0 |
| Florida | 57 | 0 |
| Idaho | 12 | 0 |
| Indiana | 2,204 | 0 |
| Kentucky | 627 | 0 |
| Louisiana | 47 | 0 |
| Mississippi | 1 | 0 |
| Missouri | 20 | 0 |
| Montana | 285 | 0 |
| Nevada | 8 | 0 |
| North Dakota | 2,925 | 0 |
| South Dakota | 0 | 0 |
| South Carolina | 48 | 516 |
| Texas | 6,569 (excluding investigative file) | 283[5] |
| Utah | 25 | 0 |

---

[5] Texas provided an initial log with 214 entries. Then, in the "spirit of reaching agreement" and without admitting it was required to do so, Texas provided a supplemental log with 69 entries for third-party witness interview memoranda withheld as purported attorney work product.