IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| THE STATE OF TEXAS, et al.,<br><br>      Plaintiffs,<br><br>v.<br><br>GOOGLE LLC,<br><br>      Defendant. | Civil Action No. 4:20-cv-00957-SDJ |

## PLAINTIFF STATES' RESPONSE IN OPPOSITION TO DEFENDANT GOOGLE LLC'S MOTION FOR DISMISSAL PURSUANT TO RULE 12(b)(1)

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ............................................................................................................... 1

BACKGROUND .................................................................................................................. 2

LEGAL STANDARD .......................................................................................................... 3

RESPONSE TO GOOGLE'S STATEMENT OF THE ISSUES .................................... 4

ARGUMENT ....................................................................................................................... 4

    I.    Plaintiff States Have Standing To Bring Federal Antitrust Claims. ............................... 4

        A.    Plaintiff States Adequately Allege *Parens Patriae* Standing. .................................. 4

            1.    Suits To Enforce Federal Antitrust Laws Based on Alleged Injuries to States' General Economies Are Paradigmatic *Parens Patriae* Claims. ............ 4

            2.    The Complaint Alleges Quasi-Sovereign Injuries That Support Standing. ........................................................................................................ 6

            3.    Google's Counterarguments Are Unpersuasive. ............................................... 8

        B.    Plaintiff States Also Have Sovereign Standing To Bring Their Federal Claims.... 11

    II.    Plaintiff States Have Standing To Bring Their State Law Claims. ................................ 12

        A.    Plaintiff States Have *Parens Patriae* Standing To Bring State Law Claims.......... 13

        B.    Plaintiff States Have Sovereign Standing To Bring State Claims. ......................... 14

        C.    The Court Has Supplemental Jurisdiction. ............................................................ 15

CONCLUSION .................................................................................................................. 15

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*,
458 U.S. 592 (1982)................................................................3, 4, 5, 9, 13

*Burch v. Goodyear Tire & Rubber Co.*,
554 F.2d 633 (4th Cir. 1977) ................................................................6, 8

*California v. Am. Stores Co.*,
495 U.S. 271 (1990)................................................................1, 11

*California v. ARC Am. Corp.*,
490 U.S. 93 (1989)................................................................13, 15

*Claflin v. Houseman*,
93 U.S. 130 (1876)................................................................12

*In re Edmond*,
934 F.2d 1304 (4th Cir. 1991) ................................................................13

*In re Elec. Books Antitrust Litig.*,
14 F. Supp. 3d 525 (S.D.N.Y. 2014)................................................................6, 8, 11

*Gen. Inv. Co. v. Lake Shore & M.S. Ry. Co.*,
260 U.S. 261 (1922)................................................................5

*In re Generic Pharms. Pricing Antitrust Litig.*,
605 F. Supp 3d 672 (E.D. Pa. 2022) ................................................................6

*Georgia v. Evans*,
316 U.S. 159 (1942)................................................................5, 11

*Georgia v. Pa. R.R. Co.*,
324 U.S. 439 (1945)................................................................5, 6, 7, 9, 10

*Harrison v. Jefferson Par. Sch. Bd.*,
78 F.4th 765 (5th Cir. 2023) ................................................................1, 3, 8, 9, 12, 14

*Hawaii v. Standard Oil Co. of Cal.*,
405 U.S. 251 (1972)................................................................1

*In re Ins. Antitrust Litig.*,
938 F.2d 919 (9th Cir. 1991) ................................................................5

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992)..............................................................................................................3

*Massachusetts v. E.P.A.*,
    549 U.S. 497 (2007)........................................................................................................3, 10

*New York v. Facebook, Inc.*,
    549 F. Supp. 3d 6 (D.D.C. 2021)............................................................................6, 8, 9, 10

*New York v. Microsoft Corp.*,
    209 F. Supp. 2d 132 (D.D.C. 2002)..............................................................6, 8, 9, 10, 13

*Pennsylvania v. Mid-Atl. Toyota Distribs., Inc.*,
    704 F.2d 125 (4th Cir. 1983) ..........................................................................................12

*In re Pork Antitrust Litig.*,
    495 F. Supp. 3d 753 (D. Minn. 2020).............................................................................9

*Saginaw Cnty., Michigan v. STAT Emergency Med. Servs., Inc.*,
    946 F.3d 951 (6th Cir. 2020) ..........................................................................................12

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016)..........................................................................................................3

*Sprint Commc'ns Co. v. APCC Servs., Inc.*,
    554 U.S. 269 (2008)..........................................................................................................3

*Stallworth v. Bryant*,
    936 F.3d 224 (5th Cir. 2019) ............................................................................................9

*Testa v. Katt*,
    330 U.S. 386 (1947)........................................................................................................12

*Texas v. Pennsylvania*
    141 S. Ct. 1230 (2020)....................................................................................................12

*TransUnion LLC v. Ramirez*,
    594 U.S. 413 (2021)..........................................................................................................3

*United States v. Texas*,
    599 U.S. 670 (2023)..................................................................................................1, 3, 14

*Washington v. Gen. Motors Corp.*,
    406 U.S. 109 (1972)..................................................................................................10, 13

**Statutes**

15 U.S.C. § 26 ................................................................................................................10, 11

Clayton Act of 1914, Pub. L. No. 94-435, § 16, 38 Stat. 730 (codified at 15 U.S.C.
§ 26) .........................................................................................................................5

Crime Control Act of 1976, Pub. L. 94–503, 90 Stat. 2407 ...........................................14

Hart-Scott-Rodino Antitrust Improvement Act of 1976, Pub. L. 94-435, 90 Stat.
1394 (codified at 15 U.S.C. § 15c) ...........................................................................5

Sherman Anti-Trust Act of 1890, 26 Stat. 209 Ch. 647 (1890) (codified at 15
U.S.C. §§ 1-7) ...........................................................................................................5

**Rules**

Fed. R. Civ. P. 54(c) .......................................................................................................11

**Other Authorities**

H.R. Rep. No. 117-494 (Sept. 26, 2022) ..........................................................................11

Harry First, *Delivering Remedies: The Role of the States in Antitrust Enforcement*,
69 Geo. Wash. L. Rev. 1004 (2001) ........................................................................13

Herbert Hovenkamp, *State Antitrust in the Federal Scheme*, 58 Ind. L.J. 375
(1983) .......................................................................................................................14

Jay L. Himes, *Exploring the Antitrust Operating System: State Enforcement of
Federal Antitrust Law in the Remedies Phase of the Microsoft Case*, 11 Geo.
Mason L. Rev. 37 (2002) ........................................................................................14

Press Release, Rep. Buck, Rep. Buck Introduces the State Antitrust Enforcement
Venue Act (May 21, 2021), https://buck.house.gov/media-center/press-
releases/rep-buck-introduces-state-antitrust-enforcement-venue-act .....................11

U.S. Const. art. III, § 2 ....................................................................................................11

## INTRODUCTION

State antitrust enforcement is an "integral part of the congressional plan for protecting competition." *California v. Am. Stores Co.*, 495 U.S. 271, 284 (1990). That was true in 1890, when Congress authorized states to sue under the Sherman Act while preserving longstanding state antitrust and unfair competition law. It was true in 1914, when Congress expanded states' federal right of action to enforce the antitrust laws. It was true in 2020, when the Plaintiff States filed this action, which paved the way for a similar suit by the United States. And it was true in 2022, when Congress put state and federal antitrust enforcers on equal footing to enforce antitrust laws in their chosen venue. "[T]he United States Government, the governments of each state, and any individual threatened with injury by an antitrust violation may all sue for injunctive relief against violation of the antitrust laws" and can even "do so simultaneously against the same persons for the same violations." *Hawaii v. Standard Oil Co. of Cal.*, 405 U.S. 251, 261 (1972).

Ignoring that history, and without relevant citation, Google declares that "the States have no authority to regulate or enforce *federal*" antitrust laws. Dkt. 200 at 10. The Clayton Act and more than 100 years of history say otherwise. Ironically, the very case Google principally relies upon points to "historical precedent" as the "guide" for Article III standing analysis. *Harrison v. Jefferson Par. Sch. Bd.*, 78 F.4th 765, 769 (5th Cir. 2023) (quoting *United States v. Texas*, 599 U.S. 670, 677 (2023)). The relevant historical precedents and case law provide clear guidance here. Plaintiff States have alleged injuries to support both *parens patriae* and sovereign standing.

To oppose Plaintiff States' *parens patriae* standing on their federal claims, Google misstates the facts and misreads precedents. Google's argument against Plaintiffs' sovereign standing fares little better and offers no controlling, or even persuasive, authority. And with respect to Plaintiff States' state law claims, Google's novel standing argument relies entirely on *Jefferson*

1

*Parish*, an inapposite case that turned on unusual facts not present here, while ignoring the *antitrust* precedents and constitutional principles that do apply.

Without support on the law, Google tries to change the well-pleaded facts. It disregards the pleadings and misreads interrogatory responses to mischaracterize the Plaintiff States' standing theories and injuries. Despite this attempt at sowing confusion, the Court's decision here is straightforward: Plaintiff States, like many multi-state antitrust enforcement coalitions before them, have standing to pursue their claims in federal court. Any other decision would risk upending the "integral" role that states play in enforcing antitrust law and the benefits of fair and competitive state and national markets that such enforcement yields. The Court should deny the motion.

## BACKGROUND

Plaintiff States "bring this action in their respective sovereign capacities and as *parens patriae* on behalf of the citizens, general welfare, and economy of their respective states." Fourth Am. Compl. ("FAC") ¶ 31. Plaintiff States allege numerous, large-scale injuries to each state, *see* FAC ¶¶ 29, 502-525, and identify the state and federal statutes authorizing them to redress those injuries, *see* FAC ¶¶ 601-758.

In the teeth of these allegations, Google argues that "[s]ome states abandoned *parens patriae* standing, some abandoned sovereign standing, and one is pursuing both." Dkt. 200 at 1. That is a misreading of an interrogatory response. Interrogatory 2 asked about the "remedies" that Plaintiff States seek.[1] Young Decl., Ex. A at 7. After objecting, Plaintiff States (a) reiterated that they seek "any allowable remedy under federal or state antitrust law," and (b) provided a preliminary spreadsheet listing the "remedies" that Plaintiff States have "the present intent to pursu[e]" and the state statutes that make such relief available. *Id.* at 7-8. The spreadsheet cites

---

[1] The focus on "remedies" is notable, since Google attempts to use the response to show Plaintiff States lack the type of *injury* that could ground standing—a topic the response does not address.

particular state statutes—but no federal statutes—and describes relief as "sovereign," "parens patriae," or both. *Id.*, Ex. B. The spreadsheet was designed to capture differences among state laws, not abandon relief under *federal* law pleaded in the FAC. Google mistakenly treats this response about state law remedies as a statement on federal law injuries. The amended interrogatory response eliminates any possible confusion. *See id.*, Ex. C at 8-9; *id.*, Ex. D.

## LEGAL STANDARD

Article III standing requires: "(1) an injury in fact that (2) is fairly traceable to the conduct complained of and (3) redressable by a favorable judicial decision." *Jefferson Parish*, 78 F.4th at 769 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). The Supreme Court examines "'history and tradition,' among other things, as 'a meaningful guide to the types of cases that Article III empowers federal courts to consider.'" *Texas*, 599 U.S. at 676-77 (quoting *Sprint Commc'ns Co. v. APCC Servs., Inc.*, 554 U.S. 269, 274 (2008)).

Plaintiffs need not identify "an exact duplicate in American history and tradition." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 424 (2021). Rather, "courts should assess whether the alleged injury to the plaintiff has a 'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit." *Id.* (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016)). The parallel is relaxed further for states: when "protecting its quasi-sovereign interests, the [state] is entitled to special solicitude in our standing analysis." *Massachusetts v. E.P.A.*, 549 U.S. 497, 520 (2007).

Several types of injuries have traditionally supported a state's standing to sue. These include injuries to a state's "sovereign, quasi-sovereign, proprietary, or private" interests. *Jefferson Parish*, 78 F.4th at 769. States have *sovereign* interests in, at a minimum, (1) the "creat[ion] and enforce[ment of] a legal code, both civil and criminal," and (2) "the maintenance and recognition of borders." *Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*, 458 U.S. 592, 601 (1982).

3

States have *quasi-sovereign* interests, for which they can sue in a *parens patriae* capacity, in (1) "the health and well-being—both physical and economic—of its residents" and (2) "not being discriminatorily denied [their] rightful status within the federal system." *Id* at 607.

### RESPONSE TO GOOGLE'S STATEMENT OF THE ISSUES

Plaintiff States respond that they have both sovereign and *parens patriae* standing to pursue both (1) state and (2) federal claims in federal court, which renders issue (3) moot.

### ARGUMENT

Precedent, history, and federal statutes all confirm Plaintiff States' standing to bring this suit. Plaintiff States have alleged injuries of the kind that courts, including the Supreme Court, have repeatedly affirmed as sufficient to support states' standing to sue under both the federal antitrust laws and state antitrust and consumer protection laws. Google arrives at a different conclusion only by misconstruing the relevant precedent, ignoring history, and entirely overlooking the federal-state antitrust enforcement system that Congress created.

## I.   Plaintiff States Have Standing To Bring Federal Antitrust Claims.

The States bring claims as sovereigns and under well-established *parens patriae* principles.

### A.   Plaintiff States Adequately Allege *Parens Patriae* Standing.

All Plaintiff States bring their federal claims in a *parens patriae* capacity for injuries to their quasi-sovereign interests. *See* FAC ¶ 31. Each Plaintiff State has the authority to bring *parens patriae* actions for federal antitrust violations and adequately alleges quasi-sovereign injuries.

#### 1.   Suits To Enforce Federal Antitrust Laws Based on Alleged Injuries to States' General Economies Are Paradigmatic *Parens Patriae* Claims.

Plaintiff States have standing because they allege the sort of injury that produces a justiciable controversy. Article III standing turns on injury in fact, and the relevant injury for *parens patriae* standing is injury to a quasi-sovereign interest, which "consist[s] of a set of interests that the State has in the well-being of its populace." *Snapp*, 458 U.S. at 602. Though this set of interests

"does not lend itself to a simple or exact definition," *id.* at 601, each state has a quasi-sovereign interest in "the health and well-being—both physical and economic—of its residents in general," *id.* at 607. Accordingly, courts have long recognized that a state's "interest in preventing harm to its citizens by antitrust violations is, indeed, a prime instance of the interest that the *parens patriae* can vindicate by obtaining damages and/or an injunction." *In re Ins. Antitrust Litig.*, 938 F.2d 919, 927 (9th Cir. 1991), *rev'd in part on other grounds sub nom.*, *Hartford Fire Ins. Co. v. California*, 509 U.S. 764 (1993). Congress has recognized this interest in multiple antitrust laws.

In the Sherman Anti-Trust Act of 1890, Congress authorized states and other "person[s]" to sue in federal court to recover damages for federal antitrust violations. Ch. 647, 26 Stat. 209 (1890) (codified at 15 U.S.C. §§ 1-7); *Georgia v. Evans*, 316 U.S. 159 (1942). In 1914, Congress amended the Sherman Act to authorize states and other "person[s]" to obtain injunctive relief for federal antitrust law violations. Clayton Act of 1914, Pub. L. No. 94-435, § 16, 38 Stat. 730 (codified at 15 U.S.C. § 26); *Evans*, 316 U.S. at 162. And in 1976, Congress explicitly authorized states to sue in *parens patriae* to recover treble damages for federal antitrust violations that injured their residents. Hart-Scott-Rodino Antitrust Improvement Act of 1976, Pub. L. 94-435, 90 Stat. 1394 (codified at 15 U.S.C. § 15c). States may bring federal antitrust claims *exclusively* in federal court. *Gen. Inv. Co. v. Lake Shore & M.S. Ry. Co.*, 260 U.S. 261, 287 (1922).

The Supreme Court recognized states' antitrust enforcement powers long ago. In 1945, it made clear that Clayton Act § 16, the same cause of action at issue here, authorizes state *parens patriae* suits. *See Georgia v. Pa. R.R. Co.*, 324 U.S. 439 (1945). There, the Court upheld Georgia's standing to sue to enjoin a price-fixing conspiracy among railroads that injured "the economy of Georgia." *Id.* at 447. Georgia alleged that price-fixing (a) "den[ied] to many of Georgia's products equal access with those of other States to the national market"; (b) "limite[d] in a general way the Georgia economy" and "prevent[ed] the full and complete utilization of the natural wealth of the

5

State"; (c) "frustrate[d] and counteract[ed] the measures taken by the State to . . . promote the general progress and welfare of its people"; and (d) "h[e]ld the Georgia economy in a state of arrested development." *Id*. at 444 (internal quotation marks omitted). Based on these allegations, the Supreme Court found that "the economy of Georgia and the welfare of her citizens have seriously suffered as the result of this alleged conspiracy," and called these injuries "matters of grave public concern in which Georgia has an interest apart from that of particular individuals who may be affected." *Id.* at 450-51.

Following the Supreme Court's lead, lower courts have routinely and consistently held that "[a]llegations of injury to the general economy of the State [] are sufficient to confer standing upon the Attorney General [] in an antitrust suit filed in a *parens patriae* capacity where the Attorney General seeks to sue on behalf of the citizens [] for injunctive relief." *Burch v. Goodyear Tire & Rubber Co.*, 554 F.2d 633, 634-35 (4th Cir. 1977).[2] Plaintiff States' suit here is no different.

## 2.   The Complaint Alleges Quasi-Sovereign Injuries That Support Standing.

Plaintiff States' complaint is replete with allegations of economic injury of the kind that have supported *parens patriae* standing in antitrust suits since *Pennsylvania Railroad*. Plaintiff States allege that "Google's anticompetitive conduct has adversely and substantially affected the

---

[2] *See In re Elec. Books Antitrust Litig.*, 14 F. Supp. 3d 525, 531 (S.D.N.Y. 2014) (standing upheld where (a) the challenged conduct "deprived the Plaintiff States and their consumers of the benefits of competition," (b) "the general economies of the Plaintiff States have sustained injury," and (c) "Defendants' activities . . . continue to have a substantial effect upon the trade and commerce within each of the Plaintiff States."); *New York v. Microsoft Corp.*, 209 F. Supp. 2d 132, 151-52 (D.D.C. 2002) (standing upheld based on "'significant adverse effect on competition within'" the plaintiff states) (citation omitted); *New York v. Facebook, Inc.*, 549 F. Supp. 3d 6, 23 (D.D.C. 2021) (standing upheld based on allegations of (a) "reductions in the quality and variety of" products available to the states' citizens, (b) price increases for the states' consumers who used Facebook and "small and medium businesses" who advertised on Facebook, and (c) harms to "the States' economies in general" due to "suppressed innovation and investment in the social-networking space.") (internal quotation marks omitted); *In re Generic Pharms. Pricing Antitrust Litig.*, 605 F. Supp 3d 672, 680 (E.D. Pa. 2022) ("Preventing antitrust harms to a state' citizenry is a recognized quasi-sovereign interest. . . . States may pursue injunctive relief . . . as *parens patriae* for generalized injury to their economies.") (footnotes omitted).

Plaintiff States' economies, as well as the general welfare in the Plaintiff States," through "higher prices, reduced output, lower quality, reduced innovation, the exit of rivals, and foreclosed entry." FAC ¶ 29. These harms accrue to "advertisers, publishers, and their consumers," which "depriv[es] the Plaintiff States and the persons within each Plaintiff State of the benefits of competition." *Id.*

Though precedent has held that broad allegations like these are sufficient, the pleading here has far more, detailing across 24 paragraphs anticompetitive effects on Plaintiff States' residents and economies. *Id.* ¶¶ 502-525. For example, "Google's exclusionary conduct has allowed it to charge publishers supracompetitive prices in the publisher ad server market," *id.* ¶ 506, "lowered the quality" of ad servers available to publishers, *id.* ¶ 507, caused exit of competitors and "remarkably weak" entry of "new competition" in that market, *id.* ¶ 508-509, lowered the output of news publications and other publishers, *id.* ¶ 510, and harmed "publishers' customers, i.e., individual consumers," through "less content, lower-quality content, less innovation in content delivery, more paywalls, and higher subscription fees," *id.* ¶ 511. Plaintiff States also allege widespread harms to business consumers and suppliers, individual consumers, and competition in four other markets: the Exchange Market, *id.* ¶¶ 512-517, the In-App Network Market, *id.* ¶¶ 518-519, and the Markets for Ad Buying Tools for both small and large advertisers, *id.* ¶¶ 520-525.[3]

These injuries closely match (indeed, exceed) the type and scale of harms upon which Georgia relied in *Pennsylvania Railroad*. *See* 324 U.S. at 444 (the challenged conduct, (a) "limite[d] in a general way the Georgia economy," "prevent[ed] the full and complete

---

[3] Allegations of quasi-sovereign injury pervade the rest of the FAC, too. *E.g.,* FAC ¶ 61 (alleging that Google charges publishers "double to quadruple the prices of some of its nearest exchange competitors" due to Google's illegally acquired and maintained monopoly power); *id.* ¶ 118 (alleging that Google's ad server charges publishers "supracompetitive fees"); *id.* ¶¶ 119-21 (alleging that Google's ill-begotten monopoly power allows it to "degrade[] the quality of its ad server product without consequence" and undermine competition in other markets); *id.* ¶¶ 194-95 (alleging that "Google's monopoly power allows it to hide the details of the prices it charges to advertisers[,]" hindering effective competition).

utilization of the natural wealth of the State," and "h[e]ld the Georgia economy in a state of arrested development") (internal quotation marks omitted). Plaintiff States' allegations exceed in specificity the alleged injuries that were sufficient in the *In re Electronic Books* case. *See* 14 F. Supp. 3d at 531 (the challenged conduct "deprived the Plaintiff States and their consumers of the benefits of competition," harmed "the general economies of the Plaintiff States," and "continue to have a substantial effect upon the trade and commerce within each of the Plaintiff States") (internal quotation marks omitted). Ditto for *Microsoft*, 209 F. Supp. 2d at 152, and *Facebook*, 549 F. Supp. 3d at 23. *See supra* n.2. Google's arguments against *parens patriae* standing fail because "[a]llegations of injury to [a state's] general economy . . . are sufficient to confer standing upon the Attorney General." *Burch*, 554 F.2d at 634-35.

### 3. Google's Counterarguments Are Unpersuasive.

Without citing this wall of precedent, Google attempts to impose new standing requirements unmoored from antitrust case law. It relies almost wholly on *Jefferson Parish*. *See* Dkt. 200 (citing *Jefferson Parish* 29 times). In *Jefferson Parish*, two students were suspended for "having a BB gun visible during virtual school"; Louisiana passed a law regulating suspensions (that applied retroactively); their families sued the school and settled; Louisiana intervened and sought to continue the case; the Fifth Circuit held that Louisiana lacked standing. 78 F.4th at 767. The problems were legion, among them: a complete lack of historical precedent; only two affected plaintiffs; the awkwardness of adjudicating a suit between a state and a public school board of that state in federal court; and the absence of "an injury that emanates outside the state's sovereign authority," since *all* relevant parties were within Louisiana. *Id.* at 773.

Relying on *Jefferson Parish*, Google first argues that the harms alleged here are purely private and localized, as well as "remote and entirely abstract," Dkt. 200 at 12, but the opposite is true. Louisiana could not establish injury "apart from the interests of particular private parties"

largely because the issue was quite local and did not affect "'a sufficiently substantial segment of [the state's] population.'" 78 F.4th at 772 (alteration in original) (citation omitted); *cf.* Dkt. 200 at 11-12 (quoting these sections). Rather than *two* students at *one* public school, Google's conduct resulted in higher prices, reduced quality, and other harms to "millions of users across billions of impressions," FAC ¶ 263, "the ad inventory of millions upon millions of websites of all sizes," *id.* ¶ 70, "the hundreds of thousands of advertisers using . . . Google Ads," *id.* ¶ 146, and "at least ~44 billion web display transactions per month in the United States," *id.* Its illegal action harmed the "competitive process," lowered the entry of competitors, and impaired innovation across five relevant markets. *See, e.g.*, FAC ¶¶ 244, 245-501, 508-509, 515-516, 518, 522, 524. That is why Google injured "Plaintiff States' economies" and the "general welfare in the Plaintiff States," in addition to private persons. *Id.* ¶ 29. Antitrust case law is uniform in allowing standing upon such allegations.[4] These allegations *at minimum* create the "reasonable inference[]" that Google broadly injured each Plaintiff State's economy. *Stallworth v. Bryant*, 936 F.3d 224, 232 (5th Cir. 2019).

Google argues that a quasi-sovereign injury must involve "allegations of discrimination" against the suing state, Dkt. 200 at 13, but that is not the rule. *See Pa. R.R.*, 324 U.S. at 447 (relying on injuries to "the economy of Georgia" to find *parens patriae* standing). *Snapp* identified "not being discriminatorily denied its rightful status within the federal system" *and* "the health and well-being—both physical and economic—of its residents" as distinct and sufficient quasi-sovereign interests. *Snapp*, 458 U.S. at 607. Anticompetitive conduct emanating from Google's

---

[4] *E.g.*, *Microsoft*, 209 F. Supp. 2d at 151-52 ("'[M]illions of citizens of, and hundreds, if not thousands, of enterprises in each of the United States . . . utilize[d] PCs running on Microsoft software.'") (first alteration in original) (citation omitted); *Facebook*, 549 F. Supp. 3d at 23 ("[M]illions of [the plaintiff states'] citizens have experienced reductions in the quality and variety of privacy options and content available to them" and thus "millions have experienced a rise in the effective price of using Facebook.") (internal quotation marks omitted). Some courts have held that states need not meet the *Snapp* requirements if state law expressly grants *parens patriae* authority. *See, e.g.*, *In re Pork Antitrust Litig.*, 495 F. Supp. 3d 753, 799-800 (D. Minn. 2020) (analyzing Puerto Rico's explicit grant of *parens patriae* standing under Puerto Rico law).

headquarters in Mountain View, California injures Plaintiff States' residents' economic well-being, for which the States can sue without any allegation of discrimination. *E.g.*, *Facebook*, 549 F. Supp. 3d at 22 ("lower courts have consistently held that states have *parens patriae* standing to seek injunctions under Section 16 against antitrust violations the effects of which are widely felt"). This Court does not lose judicial power simply because Google harms competition in *every* state, rather than singling out the Plaintiff States. The longstanding "right to bring suit as *parens patriae* under the Clayton Act would be nullified where the harm sweeps broadly across the states" if there were a requirement of "state-specific injury." *Microsoft*, 209 F. Supp. 2d at 151.

Relying on *Pennsylvania Railroad*, Google also asserts that Plaintiff States' injury does not "require[] recourse to federal court" because Plaintiff States could sue in state court. Dkt. 200 at 13. The alternative forum discussion from *Pennsylvania Railroad* is a prudential consideration for the Supreme Court's *original jurisdiction* that does not apply here. *See* 324 U.S. at 464-66. In fact, the Supreme Court expressly held that a complaint alleging "a violation of the federal antitrust laws" and "a common-law conspiracy" "should be heard in the appropriate *federal district courts*." *Washington v. Gen. Motors Corp.*, 406 U.S. 109, 111, 116 (1972) (emphases added). That is because, unlike the claims in *Jefferson Parish*, federal antitrust claims *must* be adjudicated in federal court.

Google wholly disregards Congress's statute authorizing Plaintiff States' suit. When a statute creating a right of action "identif[ies] the injury it seeks to vindicate and relate[s] the injury to the class of persons entitled to bring suit," that injury can "give rise to a case or controversy where none existed before." *Massachusetts*, 549 U.S. at 516 (citations and internal quotation marks omitted). Section 16 authorizes "any person," including a state, to sue for injunctive relief "against threatened loss or damage by a violation of the antitrust laws." 15 U.S.C. § 26. There was no comparable statute in *Jefferson Parish*. Other courts have even held that section 15c's

authorization of *parens patriae* suits eliminates the need for any quasi-sovereign injury. *See In re. Elec. Books Antitrust Litig.*, 14 F. Supp. 3d at 531. Plaintiff States are not seeking money as an antitrust *remedy*, but that does not change whether the *injuries* alleged are sufficient for Article III. They clearly are. Aside from default judgments, prevailing plaintiffs can receive remedies without pleading them. Fed. R. Civ. P. 54(c). They do need to plead injury in fact. That is because remedies are analytically distinct from the kinds of injuries that our nation's history and traditions fit within the "cases" or "controversies" this Court has "judicial power" to resolve. U.S. Const. art. III, § 2.

**B.   Plaintiff States Also Have Sovereign Standing To Bring Their Federal Claims.**

Plaintiff States have sovereign standing, a commonplace proposition that Google breezily rejects with a categorical denial: "The States have no authority to regulate or enforce *federal* laws, and accordingly, they have no basis to assert sovereign standing for their federal law claim." Dkt. 200 at 10. Google's sparse citations do not support its argument, and abundant authority points the other way. Federal law authorizes States to enforce federal antitrust laws. *See* 15 U.S.C. § 26; *Evans*, 316 U.S. at 162. States have been an "integral part of the congressional plan for protecting competition" since the Sherman Act was first passed in 1890. *Am. Stores Co.*, 495 U.S. at 284. The State Antitrust Enforcement Venue Act reaffirmed Congress's policy that States stand on equal footing with federal enforcers of the federal antitrust laws.[5] Google deflects this history by distinguishing between federal and state law. But the "laws of the United States are laws in the several States, and just as much binding on the citizens and courts thereof as the State laws are."

---

[5] *See* H.R. Rep. No. 117-494 (Sept. 26, 2022) ("Delay is particularly undesirable in antitrust cases brought by the government because . . . 'the purpose of the governmental antitrust suits differs from that of a private suit; the Government seeks to protect the public from competitive injury'") (citation omitted); *see also* Press Release, Rep. Buck, Rep. Buck Introduces the State Antitrust Enforcement Venue Act (May 21, 2021), https://buck.house.gov/media-center/press-releases/rep-buck-introduces-state-antitrust-enforcement-venue-act ("States play a critical role in enforcing federal antitrust laws and should have the same benefit that is already afforded to federal antitrust enforcers—to select and remain in their preferred venue.").

*Claflin v. Houseman*, 93 U.S. 130, 136 (1876). Google is indulging the false "assumption that federal laws can be considered by the states as though they were laws emanating from a foreign sovereign." *Testa v. Katt*, 330 U.S. 386, 390-91 (1947). States have a sovereign interest in enforcing federal laws that, like the Clayton Act, grant States enforcement authority.

Neither the text of Section 16 nor the holding of *Pennsylvania Railroad* limits States' standing to the *parens patriae* variety. Even where the antitrust statute's text *does* specify *parens patriae* standing—as it does in 15 U.S.C. § 15c, but not 15 U.S.C. § 26—courts have held that states' interests are not limited to "quasi-sovereign or proprietary interests." *Pennsylvania v. Mid-Atl. Toyota Distribs., Inc.*, 704 F.2d 125, 131-32 (4th Cir. 1983). They extend to the broader "public interest" associated with sovereign standing. *Id.*

*Jefferson Parish* is not to the contrary. That case, like Google's other citations, lacked any federal statutory cause of action. *See Texas v. Pennsylvania* 141 S. Ct. 1230 (2020). *Jefferson Parish* also turned on the fact that Louisiana "attempt[ed] to invoke federal jurisdiction to enforce mostly state law against a subordinate," and "[n]either history nor tradition supports the use of our Article III judicial power in this way." 78 F.4th at 771.[6] Here, Plaintiff States invoke federal jurisdiction against a private party to enforce a federal statute that specifically authorizes suit, provides for *exclusive* federal jurisdiction, and has more-than-century-long history of authorizing state enforcement. Plaintiff States have sovereign standing. If the Court finds this question to be a close one, it need not go beyond finding *parens patriae* standing.

## II.   Plaintiff States Have Standing To Bring Their State Law Claims.

Because Plaintiff States have standing to enforce federal claims, they *a fortiori* have standing to bring their state law claims. "State law antitrust enforcement had coexisted with federal

---

[6] Google's remaining case, *Saginaw Cnty., Michigan v. STAT Emergency Med. Servs., Inc.*, 946 F.3d 951 (6th Cir. 2020), is inapposite because it turned on the fact that the plaintiff county sought pre-enforcement declaratory relief but lacked an "actual or imminent" injury. *Id.* at 956.

enforcement from the time that the Sherman Act was passed and the constitutionality of such state law enforcement had long been accepted." Harry First, *Delivering Remedies: The Role of the States in Antitrust Enforcement*, 69 Geo. Wash. L. Rev. 1004, 1010-11 (2001); *see California v. ARC Am. Corp.*, 490 U.S. 93, 100 (1989) (upholding the "long history of state common-law and statutory remedies against monopolies and unfair business practices").

### A. Plaintiff States Have *Parens Patriae* Standing To Bring State Law Claims.

Courts hearing state antitrust enforcement actions routinely find Article III standing for accompanying state antitrust and consumer protection claims, relying on the same injuries that support standing for states' federal claims. In *Microsoft*, the district court affirmed the multi-state enforcement coalition's *parens patriae* standing for both federal (Clayton Act § 16) and state law claims based on the same quasi-sovereign injuries. *See* 209 F. Supp. 2d at 150. That is because the same Article III standing principles apply to both federal and state claims. *See, e.g.*, *In re Edmond*, 934 F.2d 1304, 1309 (4th Cir. 1991) (applying the *Snapp* requirements to state consumer protection claims). Google provides no unique arguments that apply to any state law claims, for which Plaintiff States have standing based on quasi-sovereign interest in "the health and well-being— both physical and economic—of its residents." *Snapp*, 458 U.S. at 607.[7] State antitrust and consumer protection "claims can either be brought individually in state court or included as supplemental claims to federal antitrust violations." First, *supra*, at 1012; *see also Gen. Motors Corp.*, 406 U.S. at 115 (requiring federal antitrust claims and supplemental state law claims to be brought in federal district court rather than as an original action).

---

[7] Though the injuries arising from Google's antitrust violations are sufficient, Plaintiff States also allege numerous additional injuries to their businesses, consumers, and economies arising from Google's deceptive practices. *E.g.*, FAC ¶ 538 (advertisers paid more for "billions" of impressions); ¶¶ 547-48 (publishers paid more on "billions" of exchange fees); ¶¶ 560-62 (Project Bernanke decreased publishers' revenue and increased advertisers' costs on "billions" of auctions); ¶ 596 (Google's misrepresentations skewed "competition amongst ad exchanges").

**B.  Plaintiff States Have Sovereign Standing To Bring State Claims.**

Google's novel argument against a state's sovereign interest in enforcing its *own laws* alongside federal antitrust claims contravenes basic standing doctrine, history, and judicial economy. Google's argument would undermine the basic purpose of standing doctrine, which is "'the idea of separation of powers.'" *Texas*, 599 U.S. at 675 (citation omitted). The "case or controversy" requirement prevents federal courts from "'usurp[ing] the powers of the political branches.'" *Id.* at 676 (citation omitted). Here, states need no individualized injury to produce a "controversy" because they have sovereign powers to enforce their own laws for the general public. Further, Congress has long supported the role of state antitrust and consumer protection laws as an important complement to the federal antitrust laws. *E.g.*, Crime Control Act of 1976, Pub. L. 94–503, 90 Stat. 2407 (providing state grants to "improve the antitrust enforcement capability" of the states). Plaintiff States' sovereign standing in this case does not "usurp" the political branches' power, *Texas*, 599 U.S. at 675, but rather vindicates it.

Enforcement of state antitrust and consumer protection laws in federal court has ample historical precedent, which distinguishes it entirely from *Jefferson Parish*, in which "[n]either history nor tradition support[ed]" a state's "attempt[] to invoke federal jurisdiction to enforce mostly state law against a subordinate." 78 F.4th at 771. Here, Plaintiff States are not enforcing state law "against a subordinate," but rather against Google, a private, foreign corporation. Enforcement of state law claims brought in federal court alongside federal antitrust claims has a long history.[8] For that reason, "the Supreme Court has consistently declined to find federal pre-

---

[8] *See* Jay L. Himes, *Exploring the Antitrust Operating System: State Enforcement of Federal Antitrust Law in the Remedies Phase of the Microsoft Case*, 11 Geo. Mason L. Rev. 37, 42 (2002) ("In passing the Sherman Act in 1890, Congress intended the new federal law to supplement—not to supersede—state antitrust laws."); Herbert Hovenkamp, *State Antitrust in the Federal Scheme*, 58 Ind. L.J. 375, 378-79 (1983) (Legislative history makes clear that the Sherman "Act was designed to supplement rather than to abrogate state antitrust enforcement.").

emption of state antitrust laws," including when both federal and state law claims are brought in the same suit in federal court. Himes, *supra*, at 42 (citing *ARC Am. Corp*, 490 U.S. 93).

Finally, in deciding Google's argument that these claims belong in state court, this Court should consider the practical consequences of Google's proposed rule banning sovereign state antitrust and consumer protection claims from federal court. That rule would require rampant claim splitting between federal and state courts, particularly in multi-state actions like this one. States cannot bring federal antitrust enforcement actions in state court, and no one state court could hear all the state-law claims of the different states. So, under Google's rule, the Plaintiff States would have to file suit in federal court *and seventeen different state courts*—all against the same defendant regarding the same anticompetitive and deceptive conduct. That looks nothing like the straightforward remand in *Jefferson Parish*. It is an absurd result. If Article III required it, one would expect Google to cite even a single case where such a requirement was imposed. There are none. Longstanding historical precedent is all on the States' side, for standing as both *parens patriae* and as sovereigns.

### C.  The Court Has Supplemental Jurisdiction.

Google does not dispute that the state-law claims meet the test for supplemental jurisdiction under 28 U.S.C. § 1367. Rather, Google's sole argument is that *if* Plaintiff States lack "standing to bring the federal law claim[s]," then the Court should not exercise supplemental jurisdiction over the state-law claims. Dkt. 200 at 14. The argument fails at the threshold, because Plaintiff States *do* have standing to bring their federal claims. Supplemental jurisdiction is therefore appropriate.

### CONCLUSION

Plaintiff States respectfully request that the Court deny Google's motion.

DATED: February 15, 2024                    Respectfully submitted,

*/s/ W. Mark Lanier*                        */s/ Ashley Keller*

W. Mark Lanier                              Ashley Keller (*pro hac vice*)
Alex J. Brown                               **KELLER POSTMAN LLC**
Zeke DeRose III                             150 N. Riverside Plaza
**THE LANIER LAW FIRM, P.C.**               Suite 4100
10940 W. Sam Houston Pkwy N.                Chicago, IL 60606
Suite 100                                   Telephone: (312) 741-5220
Houston, TX 77064                           Facsimile: (312) 971-3502
Telephone: (713) 659-5200                   Email: ack@kellerpostman.com
Facsimile: (713) 659-2204
Email: mark.lanier@lanierlawfirm.com        Zina Bash (Bar No. 24067505)
Email: alex.brown@lanierlawfirm.com         111 Congress Avenue
Email: zeke.derose@lanierlawfirm.com        Suite 500
                                            Austin, TX 78701
                                            Email: zina.bash@kellerpostman.com

                                            Noah S. Heinz (*pro hac vice forthcoming*)
                                            1101 Connecticut Ave., N.W.
                                            11th Floor
                                            Washington, DC 20036
                                            Email: noah.heinz@kellerpostman.com

*Counsel for Texas, Idaho, Indiana, Louisiana (The Lanier Law Firm Only), Mississippi, North Dakota, South Carolina, and South Dakota.*

**NORTON ROSE FULBRIGHT US LLP**
Joseph M. Graham, Jr.
joseph.graham@nortonrosefulbright.com
Geraldine Young
geraldine.young@nortonrosefulbright.com
1301 McKinney, Suite 5100
Houston, Texas 77010
(713) 651-5151

Marc B. Collier
Marc.Collier@nortonrosefulbright.com
98 San Jacinto Blvd., Suite 1100
Austin, Texas 78701
(512) 474-5201

FOR PLAINTIFF STATE OF TEXAS:

KEN PAXTON
Attorney General


*/s/ Trevor E. D. Young*
Brent Webster, First Assistant Attorney
General of Texas
Brent.Webster@oag.texas.gov
James R. Lloyd, Deputy Attorney General
for Civil Litigation
James.Lloyd@oag.texas.gov
Trevor E. D. Young, Deputy Chief,
Antitrust Division
Trevor.Young@oag.texas.gov


**OFFICE OF THE ATTORNEY GENERAL OF
TEXAS**
P.O. Box 12548
Austin, TX 78711-2548
(512) 936-1674

*Attorneys for Plaintiff State of Texas*

17

FOR PLAINTIFF STATE OF ALASKA:

TREG TAYLOR
ATTORNEY GENERAL


By: /s/ Jeff Pickett
Jeff Pickett
Senior Assistant Attorney General, Special Litigation Section
jeff.pickett@alaska.gov

*Attorney for Plaintiff state of Alaska*

FOR PLAINTIFF STATE OF ARKANSAS:

TIM GRIFFIN
ATTORNEY GENERAL


By: _____
AMANDA J. WENTZ
Ark. Bar No. 2021066
Assistant Attorney General
Office of the Arkansas Attorney General
323 Center Street, Suite 200
Little Rock, AR 72201
(501) 682-1178
Amanda.Wentz@ArkansasAG.gov

*Attorney for Plaintiff State of Arkansas*

FOR PLAINTIFF STATE OF FLORIDA:

ASHLEY MOODY, Attorney General

*/s/ Lee Istrail*
Lee Istrail, Assistant Attorney General, Antitrust Division
FL Bar No. 119216

LIZABETH A. BRADY, Director, Antitrust Division
ANDREW BUTLER, Assistant Attorney General
CHRISTOPHER KNIGHT, Assistant Attorney General

Office of the Attorney General, State of Florida
PL-01 The Capitol
Tallahassee, Florida 32399
Phone: 850-414-3300
Email: Liz.Brady@myfloridalegal.com

Office of the Attorney General, State of Florida
PL-01 The Capitol
Tallahassee, Florida 32399
Phone: 850-414-3300
Email: scott.palmer@myfloridalegal.com

*Attorneys for Plaintiff State of Florida*

FOR PLAINTIFF STATE OF IDAHO:

RAÚL R. LABRADOR
Attorney General

*/s/ John K. Olson*
John K. Olson, Deputy Attorney General

Consumer Protection Division
Office of the Attorney General
954 W. Jefferson Street, 2nd Floor
P.O. Box 83720
Boise, Idaho 83720-0010
Telephone:   (208)   334-2424
john.olson@ag.idaho.gov

*Attorneys for Plaintiff State of Idaho*

FOR PLAINTIFF STATE OF INDIANA:

THEODORE E. ROKITA
Attorney General


_____
Matthew Michaloski
Deputy Attorney General
Indiana Atty. No. 35313-49
Indiana Government Center South – 5th Fl. 302
W. Washington Street
Indianapolis, IN 46204-2770
Phone: (317) 234-1479
Fax: (317) 232-7979
Email: matthew.michaloski@atg.in.gov

*Attorneys for Plaintiff State of Indiana*

FOR PLAINTIFF COMMONWEALTH OF KENTUCKY:

RUSSELL COLEMAN
Attorney General

*/s/ Philip R. Heleringer*
Christian J. Lewis, Commissioner of the Office of Consumer Protection
christian.lewis@ky.gov
Philip R. Heleringer, Executive Director of the Office of Consumer Protection
philip.heleringer@ky.gov
Jonathan E. Farmer, Deputy Executive Director of the Office of Consumer Protection
jonathan.farmer@ky.gov
Office of the Attorney General
Commonwealth of Kentucky
1024 Capital Center Drive, Suite 200
Frankfort, Kentucky 40601
Tel: 502-696-5300

*Attorneys for Plaintiff Commonwealth of Kentucky*

FOR PLAINTIFF STATE OF LOUISIANA:

By: */s/ Patrick Voelker*
Liz Murrill, Attorney General
Michael Dupree, Assistant Attorney General
Patrick Voelker, Assistant Attorney General
Office of the Attorney General, State of Louisiana
Public Protection Division
1885 North Third St.
Baton Rouge, Louisiana 70802
(225) 326-6400
voelkerp@ag.louisiana.gov

*s/ James R. Dugan, II*
James R. Dugan, II (*pro hac vice*)
TerriAnne Benedetto (*pro hac vice*)
The Dugan Law Firm
365 Canal Street
One Canal Place, Suite 1000
New Orleans, LA 70130
PH:   (504) 648-0180
FX:   (504) 649-0181
EM:    jdugan@dugan-lawfirm.com
          tbenedetto@dugan-lawfirm.com

James Williams
CHEHARDY SHERMAN WILLIAM, LLP
Galleria Boulevard, Suite 1100
Metairie, LA 70001
PH:   (504) 833-5600
FX:   (504) 833-8080
EM:    jmw@chehardy.com

*Attorneys for Plaintiff State of Louisiana*

FOR PLAINTIFF STATE OF MISSISSIPPI:

LYNN FITCH, ATTORNEY GENERAL
STATE OF MISSISSIPPI

By:     */s/ Hart Martin*
        Hart Martin
        Consumer Protection Division
        Mississippi Attorney General's Office
        Post Office Box 220
        Jackson, Mississippi 39205
        Telephone: 601-359-4223
        Fax: 601-359-4231
        Hart.martin@ago.ms.gov

        *Attorney for Plaintiff State of Mississippi*

FOR PLAINTIFF STATE OF MISSOURI:

ANDREW BAILEY
Attorney General

*/s/ Michael Schwalbert*
Michael.Schwalbert@ago.mo.gov
Missouri Attorney General's
Office
815 Olive St.
Suite 200
St. Louis, MO 63101
Tel: 314-340-7888

*Attorneys for Plaintiff State of Missouri*

FOR PLAINTIFF STATE OF MONTANA:

AUSTIN KNUDSEN
Montana Attorney General


*/s/ Anna Schneider*
Anna Schneider
Montana Attorney General's Office
P.O. Box 200151
Helena, MT 59620-0151
Phone: (406) 444-4500
Fax: (406) 442-1894 Anna.Schneider@mt.gov


*/s/ Charles J. Cooper*
Charles J. Cooper
ccooper@cooperkirk.com
David H. Thompson
dthompson@cooperkirk.com
Brian W. Barnes
bbarnes@cooperkirk.com
Harold S. Reeves
hreeves@cooperkirk.com
COOPER & KIRK PLLC
1523 New Hampshire Avenue, NW
Washington DC 20036
Phone: (202) 220-9620
Fax: (202) 220-9601

*Attorneys for Plaintiff State of Montana*

FOR PLAINTIFF STATE OF NEVADA:

AARON D. FORD
Attorney General
ERNEST D. FIGUEROA
Consumer Advocate


*/s/ Michelle C. Badorine* _____
Michelle C. Badorine, Senior Deputy
Attorney General
MNewman@ag.nv.gov
Lucas J. Tucker (NV Bar No. 10252)
Senior Deputy Attorney General
LTucker@ag.nv.gov
Office of the Nevada Attorney General
100 N. Carson St.
Carson City, Nevada 89701
Tel: (775) 684-1100

*Attorneys for Plaintiff State of Nevada*

FOR PLAINTIFF STATE OF NORTH DAKOTA:

**STATE OF NORTH DAKOTA**
Drew H. Wrigley
Attorney General


By:     */s/ Elin S. Alm*
        Elin S. Alm, ND ID 05924
        Assistant Attorneys General
        Consumer Protection & Antitrust Division
        Office of Attorney General of North Dakota
        1720 Burlington Drive, Suite C, Bismarck, ND 58503-7736
        (701) 328-5570
        (701) 328-5568 (fax)
        ealm@nd.gov

        *Attorneys for Plaintiff State of North Dakota*

FOR PLAINTIFF COMMONWEALTH OF PUERTO RICO:

*/s/ Domingo Emanuelli-Hernández*
Domingo Emanuelli-
Hernández Attorney General
Thaizza Rodríguez Pagán
Assistant Attorney
General PR Bar No.
17177
P.O. Box 9020192
San Juan, Puerto Rico 00902-0192
Tel: (787) 721-2900, ext. 1201, 1204
trodriguez@justicia.pr.gov

Kyle G. Bates
HAUSFELD LLP
600 Montgomery Street, Suite 3200
San Francisco, CA 94111

*Attorneys for Plaintiff Commonwealth of Puerto Rico*

FOR PLAINTIFF STATE OF SOUTH CAROLINA:

ALAN WILSON
Attorney General


/s/ *Rebecca M. Hartner*
Rebecca M. Hartner (S.C. Bar No. 101302)
Assistant Attorney General
Rebecca M. Hartner
W. Jeffrey Young
Chief Deputy Attorney General
C. Havird Jones, Jr.
Senior Assistant Deputy Attorney General
Mary Frances Joers
Assistant Deputy Attorney General
South Carolina Attorney General's Office
P.O. Box 11549
Columbia, South Carolina 29211-1549
Phone: 803-734-5855
Email: rhartner@scag.gov

Charlie Condon
Charlie Condon Law Firm, LLC
880 Johnnie Dodds Blvd, Suite 1
Mount Pleasant, SC 29464
Phone: 843-884-8146
Email: charlie@charliecondon.com

James R. Dugan, II (*pro hac vice*)
The Dugan Law Firm
365 Canal Street
One Canal Place, Suite 1000
New Orleans, LA 70130
Phone: (504) 648-0180
Email: jdugan@dugan-lawfirm.com


*Attorneys for Plaintiff State of South Carolina*

FOR PLAINTIFF STATE OF SOUTH DAKOTA:

MARTY JACKLEY
Attorney General


*/s/ Jonathan Van Patten*
Jonathan Van Patten
Assistant Attorney General
Office of the Attorney General
1302 E. Highway 14, Suite 1
Pierre, SD 57501
Tel: 605-773-3215
jonathan.vanpatten@state.sd.us

*Attorney for Plaintiff State of South Dakota*

32

FOR PLAINTIFF STATE OF UTAH:

Sean D. Reyes
Utah Attorney General

*/s/ Marie W.L. Martin*
Marie W.L. Martin
Assistant Attorney General
160 East 300 South, 5th Floor
P.O. Box 140874
Salt Lake City, UT 84114-0872
mwmartin@agutah.gov
Telephone: (801) 538-9600

*Attorneys for Plaintiff State of Utah and as counsel for the Utah Division of Consumer Protection*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on February 15, 2024, this document was filed electronically in compliance with Local Rule CV-5(a) and served on all counsel who have consented to electronic service, per Local Rule CV-5(a)(3)(A).

*/s/ Geraldine Young*
Geraldine Young
