**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| The State of Texas, et al., | |
| Plaintiffs, | Case No. 4:20-cv-00957-SDJ |
| | Hon. Sean D. Jordan |
| v. | |
| Google LLC, | |
| | Special Master: David T. Moran |
| Defendants. | |

**PLAINTIFF STATES' RESPONSE TO GOOGLE'S FIRST BRIEF**
**<u>TO THE SPECIAL MASTER</u>**

## TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................................... 1

ARGUMENTS ......................................................................................................... 3

    I.     The States have adequately responded to Interrogatories 2, 4, 5 and 26. ............ 3

    II.    The States have fully complied with their privilege logging obligations. ........... 5

    III.   Google's other arguments as to the States' document productions and interrogatory responses lack merit and do not require any action by the Special Master or the States. ........................................................................ 6

CONCLUSION ....................................................................................................... 10

The Plaintiff States ("States") submit this response to Google's brief (ECF No. 236).

## <u>INTRODUCTION</u>

In its opening brief, Google does not articulate any actual, specific deficiencies with the States' current discovery responses, nor does Google request any precise or concrete relief for the Special Master to order. Instead, Google continues to complain about purported "discovery impasses" based on past, resolved issues.

<u>First</u>, while Google complains about the timing of the States' disclosures, which is unfounded under caselaw from this District, Google does not specifically identify any actual deficiency in the States' interrogatory responses. With the information available, the States have adequately responded to Google's interrogatories and will continue to supplement as appropriate.

<u>Second</u>, although Google generally complains about the few privilege logs produced, it does not identify any categories of relevant, privileged documents in the States' possession that require logging but have not been logged. Beyond the documents that have been logged, the States have not withheld other relevant, privileged documents subject to logging in this case.

<u>Third</u>, the States have searched for and produced all responsive, non-privileged documents. While Google complains about the quantum of documents produced, it does not identify any specific categories of documents that are missing, or would not be equally available to Google.

By contrast, in the States' opening brief and proposed order, the States have identified discrete, concrete categories of highly relevant Google documents and data—that are necessary to effectively and efficiently conduct depositions and that the States have requested but that Google has refused to produce. ECF Nos. 235, 235-1.

Rather than tee up live issues, Google uses its filing to continue to propagate its one-sided

"delay" narrative, which is simply inaccurate and unproductive.[1]  Over the course of the last year, the States produced several rounds of interrogatory responses, as well as responded to requests for admission.  Google also received productions, by its own count, of roughly: (a) **13,000 documents** from the States; (b) **16,000 documents** from stage agencies; and (c) **770,000 documents** from the Texas investigative file—totaling close to **800,000 documents**.[2]  *See* ECF No. 177-3.

In short, there has been no undue delay on the part of the States, which have worked diligently to respond to issues, real or not, raised by Google.  Also, as shown in their opening brief, the States have made timely requests to Google regarding deficiencies found in Google's ongoing productions.  *See* ECF No. 235.  On the other hand, Google's own filing reveals substantial gaps of time on Google's end as to the purported issues raised by Google. *See* ECF No. 236 at 6 (citing a July 2021 hearing statement to support privilege log arguments, not raised by Google until January 2024); *id.* at 12 (showing many months' gap in conferences).  Moreover, just last month and in December 2023, in trying to avoid the special master process, Google represented to the Court that "there are currently no discovery disputes that otherwise require this Court's intervention" and "there are currently no pending discovery disputes," which would have included the issues Google now claims have been "delayed" for three years.  ECF Nos. 197 at 2, 191 at 2.

The States want to move discovery and depositions forward.  While the States believe they have met their obligations with respect to their discovery responses and productions, the States remain open to meeting and conferring with Google and discussing them with the Special Master.

---

[1] Similarly, Google has focused much of its attention on another red herring, in the form of the supposed lack of authority and coordination of the States on meet and confers, when, in reality: (a) Google itself, as a single entity, does not come with authority, requiring further approvals and consultations and resulting in deferral of issues; and (b) the States are not new to multi-state enforcement actions and have worked diligently to coordinate among the 17 different States, as shown in their combined filings and responses.

[2] In its Appendix B, Google does not include state-agency or investigation productions.

## <u>ARGUMENTS</u>

### I.   The States have adequately responded to Interrogatories 2, 4, 5 and 26.

Google primarily complains about the States' responses to four out of its total 31 interrogatories (not including subparts).  Based on information reasonably available to the States at this time, the States have more than sufficiently responded to those four interrogatories by outlining the States' sought remedies (ROG No. 2), the categories of injured persons and injuries related to their *parens patriae* claims (ROG No. 4), the harm to the general welfare and the economy related to their sought monetary relief (ROG No. 5), and the theories and general methodologies related to the monetary relief sought by the States (ROG No. 26).  *See* Ex. A at 8-9, 12-23, 63-74 (Plaintiffs' Fourth Amended Interrogatory Responses); Ex B (Ex. B to same).

Google does not demonstrate otherwise.  Indeed, other than complain about the timing and past inconsistency[3] of the States' disclosures and calling them "deficient" in a conclusory manner, Google does not specifically identify any shortcomings with respect to the States' actual responses.  Google's lack of specificity is not only telling but it provides no basis for a discovery ruling.  Under well-established discovery principles, a party seeking discovery relief must "specifically, as to each request, identify the nature and basis of the dispute, including, for example, ***explaining that and how a response or answer is deficient or incomplete, and ask the Court for specific relief as to each request***." *Harrison v. Wells Fargo Bank, N.A.*, 2016 WL 1392332, at *7 (N.D. Tex. Apr. 8, 2016) (emphasis added); *see also Samsung Elecs. Am. Inc. v. Yang Kun "Michael" Chung*, 325 F.R.D. 578, 594 (N.D. Tex. 2017) (identifying specificity as a "threshold issue" in compelling discovery).  Google does neither: Google does not specifically explain how the States' responses to Interrogatories 2, 4, 5 and 26 are, in fact, deficient at this stage of litigation, nor does Google

---

[3] In response, the States quickly clarified the inconsistencies in writing to Google.  Ex. C.

ask the Court for any specific relief as to each request.

Google's complaints about the timing of the States' disclosures, which make up the majority of its arguments, also do not move the needle.  Google first argues that the States should have disclosed the information in their initial disclosures.  Courts in this District and Circuit have rejected similar arguments, finding that disclosures can be supplemented during discovery and through written discovery and that disclosures (particularly as to "damages") are not untimely if they depend on unproduced information in the defendant's possession.[4]  *See, e.g.*, *Realtime Data LLC v. EchoStar Corp.*, 2018 WL 6257472, at *3 (E.D. Tex. Nov. 15, 2018) (Love, M.J.) ("An initial disclosure may also be considered supplemented if the 'additional or corrective information' is 'made known to the other parties during the discovery process or in writing....' Fed. R. Civ. P. 26(e)(1)(A)."); *BioTE Med., LLC v. Jacobsen*, 2020 WL 6781516, at *2 (E.D. Tex. Nov. 18, 2020) (Mazzant, J.) ("While Defendants argue that BioTE's damages calculation is still untimely and should be excluded, it is only untimely because Defendants have not yet produced certain sales data. It would be unreasonable to strike one party's evidence as tardy when the delay was caused by the movant. … As Defendants possess their own sales data, they will not be surprised when BioTE uses it to calculate damages."); *Firefighters' Ret. Sys. v. Citco Grp. Ltd.*, 2017 WL 2825925, at *4 (M.D. La. June 30, 2017) ("The court cannot compel Plaintiffs to respond with information they do not have and, as discussed below, deferring such supplemental responses is within the discretion of the court.").

---

[4] Google's cited cases do not prove otherwise.  For instance, in *CQ, Inc. v. TXU Min. Co., L.P.*, 565 F.3d 268, 279 (5th Cir. 2009), the plaintiffs tried to present evidence of new "categories" of damages that were not disclosed during discovery; whereas here, the States have disclosed the "categories" of relief sought, and discovery is ongoing.  In *Janvey v. Greenberg Traurig, LLP*, 2019 WL 13175533 at *3 (N.D. Tex. Feb 12, 2019), where (unlike here) the plaintiff sued multiple defendants for tort claims, the court took issue with the plaintiff's "lump sum" approach to the defendants in its interrogatory responses.  Finally, in *Macro Niche Software, Inc. v. 4 Imaging Sols.*, L.L.C., 2014 WL 12599512, at *1-2 (S.D. Tex. Jan. 15, 2014), the court excluded damages evidence not disclosed until *one week before* trial.

That is the case here, where Google possesses, but has refused to produce, data—like dashboards, reporting tools, reports, APIs, guides, and other records—that the States need to help identify those harmed and the scale of that harm. *See* ECF No. 235. Moreover, as Google has repeatedly done in the party's conferences, Google again points to the proceedings in the Virginia case where, according to Google, the Magistrate Judge "ordered the DOJ to provide its damages calculation." ECF No. 236. Yet Google does not argue that the States' responses are deficient vis-à-vis the DOJ's ordered responses. In fact, in response to Google's repeated reference to the DOJ's responses, the States asked Google to share those responses "to provide the States with more clarity on the scope and format of what Google seeks and to help the States better satisfy Google's requests." Ex. D (Jan. 30, 2024 Email). Google has refused to provide the DOJ responses and cannot show that the States' responses are deficient by comparison.

The States have sufficiently responded to Google's Interrogatories No. 2, 4, 5 and 26, and will continue to supplement their responses as necessary, pursuant to the federal rules.[5]

## II.    The States have fully complied with their privilege logging obligations.

Google next complains about the few privilege logs it has received from the States, but does not identify any categories of relevant privileged or work product documents that it believes are required to but have not been logged. When Google and the States (16 of them) conferred on February 16, 2024, Google explained that it was primarily concerned about the logging of work product related to third-party investigative interviews. Google first raised this issue in January 2024, citing comments from a July 2021 hearing years earlier. Texas had explained that no witness statements or transcripts exist; rather, some state Offices of Attorneys General had prepared and

---

[5] For example, since serving the States' Fourth Amended Interrogatory Responses, the States have promptly advised Google of expected supplementation of individual States' responses, and will continue to do so. Ex. E (Feb. 16, 2024 Email).

exchanged memoranda, prepared by or at the direction of attorneys, regarding impressions and notes of third-party interviews conducted during the investigative phase. *See* Ex. D at 1.  In response to Google's request, Texas promptly produced a log of those attorney work product memoranda on February 2, 2024.  On the multi-state conference with Google on February 16, the States stated they would go back and confirm that no other such attorney work product memoranda exist, related to third-party investigative interviews.  More broadly and just as they have done previously, the States have evaluated their logging obligations, and, other than those documents that have been logged, the States have not withheld any relevant documents from their productions that they are required to log.  In short, there is nothing to compel the States to do on this front, and Google does not request any specific relief.  The States remain willing to confer with Google on any other categories of documents Google believes exist and should be logged.

Contrary to Google's arguments, it is not the States' position that they are "self-exempt from the Rules" or that the ESI Protocol "broadly" exempts logging documents pertaining to third-party statements. *See* ECF No. 236 at 6.  The Court's ESI Protocol does, however, enumerate significant exemptions to logging requirements in this case, in addition to those documents associated with outside counsel, including: "Documents sent solely between counsel for the United States and counsel for any State;" "Documents sent solely between counsel for any State and counsel for any other State including State Agencies …;" and "Documents sent solely between or among (i) Defendants' counsel, or (ii) Plaintiffs' counsel."  ECF No. 183 at 11.

In sum, just as the States are not withholding relevant non-privileged documents, they are not withholding logs of relevant privileged documents.

## III. Google's other arguments as to the States' document productions and interrogatory responses lack merit and do not require any action by the Special Master or the States.

Google's last set of arguments do not fare better.

First, Google challenges the States' document productions, requesting that the States be compelled to identify custodians and search terms, and produce all responsive documents, suggesting that will fix the purported document issue.  ECF No. 236 at 7.  Yet that process, for example, has already occurred between Google and Plaintiff State of South Carolina nearly ten months ago in May 2023.  The South Carolina Office of the Attorney General ("SCOAG") met and conferred with Google on May 9, 2023 regarding the search methodology, including custodians and search terms, to respond to Google's Requests for Production.  As documented in correspondence between SCOAG and Google dated May 11, 2023, May 19, 2023, May 22, 2023, May 24, 2023, and June 6, 2023, SCOAG and Google then agreed on a search methodology. Ex. G (emails and correspondence).  SCOAG subsequently conducted its search using the agreed-upon methodology and produced all responsive, non-privileged documents—totaling 48 documents.  In short, even though South Carolina has "produced fewer than 60 documents," as Google complains, Google has no grounds to object to South Carolina's methodology, with which Google evaluated and agreed, and the resulting production.[6]  South Carolina's instance also demonstrates that: (i) the States, like South Carolina and others, have been diligent in their efforts and searches, as Google itself is aware; and (ii) few responsive documents exist, despite that diligence.

Furthermore, Google itself possesses many of the documents it claims it wants, including information and documents relating to "the decade of challenged conduct" and the States that "use [Google's] disputed digital advertising products."  ECF No. 236 at 7.  During the multi-state conference with Google on February 16, in response to Google's statement that it wants documents

---

[6] Google also omits the fact that, in some of the States including Texas, state agencies are independent of the Office of Attorney General ("OAG") of that State and, thus, Google cannot compel state agency productions through the OAGs, which do not possess, control, or have custody of those agency documents. That led to Google previously serving various state agencies with Rule 45 subpoenas and, in negotiation with Google, some of the subpoenaed state agencies produced documents.

showing the harm alleged by the States from Google's conduct, the States explained that those documents reside in Google's documents, showing the impact of its conduct, and the many third-party productions in this case, again showing the impact of Google's conduct in the States.  That Google does not like this answer does not justify fishing expeditions against the States, where the States have already searched for and produced responsive documents.   Finally, Google has also not identified the specific "missing … information and documents from Plaintiffs" it claims is "necessary to take depositions."  *Id*.

The States nonetheless are willing to continue to confer with Google on specific, relevant documents sought by Google.  To facilitate such discussions, the States sent their combined response letter and coordinated their multi-state conference with Google on February 16, 2024, and agreed to coordinate a subsequent conference the following week.  Ex. H (Feb. 16, 2024 letter).  As to the States' document productions, the States stated that they were willing to consider conducting a refresh of their search for responsive documents that have come into existence since last year's productions and are willing to consider providing Google with information about their search and production processes (except for South Carolina, which has already done so in May 2023 and requests that Google withdraw its objections as unfounded against South Carolina).  The February 16 multi-state conference with Google marked the first time since this case returned to this Court that Google has requested the States to disclose their search and production processes; yet Google claimed otherwise and asked the States to make those disclosures within one business day (given the intervening President's Day public holiday).  The States advised that, while they were willing to consider making those disclosures, they could not do so within that tight timeframe.  The States remain willing to confer and coordinate a response to satisfy Google's request.

Second, Google again challenges the States' interrogatory responses but in an even more

vague, aggregated manner than its first set of arguments (*see* Section I).  Google purports to take issue with the States' responses to Interrogatories 6, 7, 11, 12, 14, 22, 29-31—but fails to specify what exactly is deficient with each of those responses or what relief it seeks from the Court on each of those responses.  *See Harrison*, 2016 WL 1392332, at *7.  The States have adequately and timely answered these interrogatories.  Ex. A; *see also supra* at 4-5 (cases rejecting "untimely" arguments); *DaVita, Inc. v. Scot Indus., Inc.*, 2018 WL 11443618, at *4 (E.D. Tex. Dec. 3, 2018) (Knowles, M.J.) ("'in cases where the parties anticipate the production of an expert report which will touch on the very contentions at issue, the Court should normally delay contention discovery until after the expert reports have been served, which may then render moot any further contention discovery.' … This Court dislikes contention interrogatories, and, in the past, has only ordered compliance with them toward the close of discovery.").[7]

Third, Google argues that the States have not identified all communications with third parties in their initial disclosures and in response to Interrogatory 9.  ECF No. 236 at 9.  Google, however, has acknowledged that Texas has produced the communications with third parties as part of Texas's document productions, so Google has not been deprived of that information.  *See id.* ("Google's review of Plaintiffs' productions revealed third parties contacted in the investigation ….").  The States have nevertheless amended their response to Interrogatory 9 to refer to those produced documents, pursuant to Federal Rule of Civil Procedure 33(d)(1), which permits parties

---

[7] Google's cited cases, again, do not show otherwise.  Google cites simplistic cases involving interrogatory responses entirely different in nature than those in this case.  In *Brassell v. Turner*, No. 3:05-CV-476-LS, 2006 WL 1806465, at *4 (S.D. Miss. June 29, 2006), which involved a false arrest claim, the information the party "had before this litigation began" was the reason for the arrest.  In *Acosta v. Williamson Cnty.*, 2022 WL 16727728, at *5 (W.D. Tex. Nov. 4, 2022), the claims at issue arose from an incident in which the plaintiff's finger was broken while arrested and the interrogatories sought the identification of witnesses or relevant documents to that one event.  As for the one antitrust case cited by Google, *Domestic Drywall Antitrust Litig.*, 300 F.R.D. 228, 231 (E.D. Pa. 2014), the court acknowledged that "[a]t this stage, [the plaintiffs did] not yet have sufficient information to identify all the relevant actors and communications" and thus it was reasonable to expect the plaintiff to only be able to identify "some of them."

to specify records in lieu of a written interrogatory answer.  Ex. A at 27-28.  Even though courts in this District recognize that disclosures can be supplemented through the discovery process and in written discovery, the States will also amend their initial disclosures to list the information Google already knows and has access to.  *See Realtime Data LLC* , 2018 WL 6257472, at *3 ("An initial disclosure may also be considered supplemented if the 'additional or corrective information' is 'made known to the other parties during the discovery process or in writing....').

<u>Finally</u>, Google complains about the interrogatory responses from the States that use Google's "disputed products or services."  ECF No. 236 at 10.  But Google only references one interrogatory, No. 21, and three States' responses, and Google's argument falls flat on its face. Interrogatory 21 asks: "Separately for each agency, department, entity, or division of Your state (including the office of the Attorney General) that has used Ad Tech Products or Display Advertising, identify by date and description any studies or analyses **concerning return on investment** for Display Advertising, including …."  Ex. A at 53-54 (emphasis added).  That is, on its face, this interrogatory is limited in scope to "studies or analyses concerning return on investment for Display Advertising."  Accordingly, three states (Arkansas, Indiana, and Louisiana), among their other responses to the same interrogatory, responded that they do not track, or their use of display ads was not intended to create any, return on investment, directly addressing the question at hand.  Despite the express terms of the interrogatory, Google accuses those states of too narrowly interpreting the interrogatory.  This is yet another example of Google grasping at straws to find deficiencies in the States' discovery responses, where there are none.

## <u>CONCLUSION</u>

For the foregoing reasons, the States have fully complied with their discovery obligations and will continue to supplement their discovery responses as appropriate.  Therefore, Google is not entitled to any relief against the States.

10

Respectfully submitted,

/s/ W. Mark Lanier
W. Mark Lanier
Mark.Lanier@LanierLawFirm.com
Alex J. Brown
Alex.Brown@LanierLawFirm.com
Zeke DeRose III
Zeke.DeRose@LanierLawFirm.com
Jonathan P. Wilkerson
Jonathan.Wilkerson@LanierLawFirm.com
10940 W. Sam Houston Pkwy N
Suite 100
Houston, TX 77064
(713) 659-5200
**THE LANIER LAW FIRM, PLLC**

/s/ Ashley Keller
Ashley Keller
ack@kellerpostman.com
150 N. Riverside Plaza, Suite 4100
Chicago, Illinois 60606
(312) 741-5220

Zina Bash
zina.bash@kellerpostman.com
111 Congress Avenue, Suite 500
Austin, TX 78701
(512) 690-0990

Noah S. Heinz
noah.heinz@kellerpostman.com
1101 Connecticut, N.W., 11th Floor
Washington, DC 20005
(202) 918-1123
**KELLER POSTMAN LLC**

*Counsel for Texas, Idaho, Louisiana (The Lanier Law Firm only), Mississippi, North Dakota, Mississippi, South Carolina, and South Dakota*

*Submitted on behalf of all Plaintiff States*

**NORTON ROSE FULBRIGHT US LLP**
Joseph M. Graham, Jr.
joseph.graham@nortonrosefulbright.com
Geraldine Young
geraldine.young@nortonrosefulbright.com
1301 McKinney, Suite 5100
Houston, Texas 77010
(713) 651-5151

Marc B. Collier
Marc.Collier@nortonrosefulbright.com
98 San Jacinto Blvd., Suite 1100
Austin, Texas 78701
(512) 474-5201

FOR PLAINTIFF STATE OF TEXAS:

KEN PAXTON
Attorney General

*/s/ Trevor E. D. Young*
Brent Webster, First Assistant Attorney General of Texas
Brent.Webster@oag.texas.gov
James R. Lloyd, Deputy Attorney General for Civil Litigation
James.Lloyd@oag.texas.gov
Trevor Young, Deputy Chief, Antitrust Division
Trevor.Young@oag.texas.gov

**STATE OF TEXAS, OFFICE OF THE ATTORNEY GENERAL**
P.O. Box 12548
Austin, TX 78711-2548
(512) 936-1674

*Attorneys for Plaintiff State of Texas*

## <u>CERTIFICATE OF SERVICE</u>

I certify that, on February 16, 2024, this document was filed electronically in compliance with Local Rule CV-5(a) and served on all counsel who have consented to electronic service, per Local Rule CV-5(a)(3)(A).

*/s/ Geraldine Young*
Geraldine Young
