IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| THE STATE OF TEXAS, et al., § <br> § <br> Plaintiffs, § <br> v. § <br> § <br> GOOGLE LLC, § <br> § <br> Defendant. § | Civil Action No. 4:20-cv-00957-SDJ |

**<u>DEFENDANT GOOGLE LLC'S RESPONSE BRIEF TO
PLAINTIFFS' OPENING BRIEF TO THE SPECIAL MASTER
FOR THE FEBRUARY 22, 2024 HEARING</u>**

**TABLE OF CONTENTS**

BACKGROUND ..........................................................................................................................1

ARGUMENT ..............................................................................................................................2

   I. THE SPECIAL MASTER SHOULD DENY THE MAJORITY OF PLAINTIFFS'
      REQUESTS PURSUANT TO FEDERAL RULE 26(b)(2)(C) ............................................2

      A. Google's Document Productions Address Plaintiffs' Belated DTPA RFPs. ..................3

      B. Google's Productions Also Address Plaintiffs' Brand New Request for "Technical
         Documents and Data." ....................................................................................................5

      C. Google Has Already Addressed Plaintiffs' Repetitive Requests for "Document
         Repositories" and Other Sources of Centrally-Stored Documents. ...............................5

   II. THE SPECIAL MASTER SHOULD ALSO DENY PLAINTIFFS' VARIOUS
       REQUESTS TO RELITIGATE THE TERMS OF THE GOVERNING ESI ORDER ......6

      A. The Parties Have Agreed, and the Court Has Ordered,
         That Google is Not Required To Reproduce Investigation Materials En Masse ...........7

      B. It Is Too Late For Plaintiffs To Change Course and Demand a Clean Room To Review
         Dashboards. ......................................................................................................................8

      C. Plaintiffs' Request for Linked Documents and Metadata is Inconsistent With the
         Terms of the Governing ESI Order ...............................................................................10

   III. THIS CASE IS NOT ABOUT SEARCH. .........................................................................12

   IV. PLAINTIFFS HAVE FAILED TO MEET AND CONFER IN GOOD FAITH
        REGARDING THEIR REQUEST TO RE-REVIEW ALL PRIVILEGE LOGS. .............13

   V. GOOGLE HAS ALREADY ADDRESSED PLAINTIFFS' REQUESTS FOR EVEN
      MORE SOURCE CODE. ..................................................................................................15

## BACKGROUND

The Special Master should deny the majority of Plaintiffs' requests because they are "unreasonably cumulative or duplicative" or seek discovery that Plaintiffs otherwise "had ample opportunity to obtain." Fed. R. Civ. P. 26(b)(2)(C). And the Special Master should deny many other requests, which are clear attempts to relitigate the ESI Order entered by two federal courts.

The nature and scope of Plaintiffs' purported discovery "disputes" are even more fluid than their ever-evolving theories of the case.[1] Google expressed concern that Plaintiffs would take advantage of the Special Master process to create disputes, rather than resolve them through meet and confers, ECF No. 191 at 1, and Plaintiffs' Brief demonstrates that Google's concerns were well-founded.

Many of the issues that Plaintiffs now raise were resolved many months ago. The parties concluded their negotiations of custodians and search terms in October 2023, culminating in a November 2023 ruling from Judge Castel. MDL ECF No. 664; MDL ECF No. 665 at 11:10-18 ("[T]his order is] not a license to come back next month [to ask for other search terms or more custodians] . . . this is essentially it."). And Google provided detailed responses to Plaintiffs' various questions about centrally-stored documents in the summer of 2023.

Plaintiffs never followed up and, tellingly, they did not raise these issues in their December 7 discovery status update.[2] But now that the Special Master has been appointed, Plaintiffs apparently perceive a new opportunity to resurrect numerous issues that were resolved last year.

---

[1] Late on Wednesday night, Plaintiffs served Google with revised Interrogatory Responses reflecting—for the second time in as many months—an about-face in the fundamental structure of their claims and who they represent. At a status conference yesterday, Judge Jordan stated that the change in position was "significant."

[2] In their December 7 discovery status report, Plaintiffs made no mention of dashboards, document repositories, reproductions of documents in native form, APIs, programming guides, design documents, onboarding and training materials, and other technical documents. *See* ECF No. 176.

Of concern, Plaintiffs' recently retained discovery counsel conceded at a meet and confer *just last week* that they had not even obtained from their co-counsel (much less reviewed) key historical correspondence before declaring impasse on many issues that they now challenge.[3]

Even worse, Plaintiffs are engaging in a pattern of relitigating settled court orders. Having told the Court that they would not relitigate the Coordination Order,[4] Plaintiffs then sought to restructure it entirely to their benefit. *See e.g.,* ECF Nos. 201, 214, 216. And having told the Court that they would make only "cosmetic changes" to the MDL ESI Order,[5] Plaintiffs are now seeking to change key terms. The provisions of the ESI Order governing production format and links were heavily negotiated and entered by two federal judges. The Special Master should not accept Plaintiffs' invitation to unravel them and create inconsistent ESI protocols, which will only create inefficiencies and delay coordination.

As to the few issues that remain, Google is prepared to work in good faith with Plaintiffs and the Special Master to resolve genuine issues in a constructive manner.

## ARGUMENT

**I. THE SPECIAL MASTER SHOULD DENY THE MAJORITY OF PLAINTIFFS' REQUESTS PURSUANT TO FEDERAL RULE 26(b)(2)(C)**

The Federal Rules require that the Court "must limit the frequency or extent of discovery if it determines that: "(i) the discovery sought is unreasonably cumulative or duplicative . . . " (ii) "the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed.

---

[3] *See* Hr'g Trans. 14:15-21 (Nov. 20, 2023) ("[W]e have brought Fulbright in to help assist us in the discovery prep of this case.").
[4] Hr'g Tr. at 18: 23 - 19:1 (Nov. 20, 2023) ("perhaps either an agreed order or an order from this Court along the lines of what Judge Castel did, but extending the time period, would be appropriate.").
[5] Hr'g Tr. at 24:1-6, 30:21-24 (Nov. 20, 2023).

2

R. Civ. P. 26(b)(2)(C).[6]

### A. Google's Document Productions Address Plaintiffs' Belated DTPA RFPs.

Upon remand, Plaintiffs told the Court that their DTPA document requests "are going to be the same document search terms that have already been allegedly used by Google," but that they would "apply to a new set of custodians." Hr'g Tr. at 19:13-15 (Nov. 20, 2023). But now Plaintiffs apparently no longer "believe the past search terms and custodians are sufficient to find all relevant and responsive documents." Br. at 15. And despite previously having some plan for DTPA discovery in mind, they now assert that Google should come forward with a custodian and search terms plan that they then intend to supplement. Br. at 15 (citations omitted).

But Google met its burden to formulate a discovery plan a year ago. Although Plaintiffs now claim that their first 301 RFPs were limited in scope to antitrust claims, at the time Plaintiffs represented to Google that those 301 RFPs would be "comprehensive" and cover "all aspects of the case." MDL ECF No. 371 at 8.[7] Google's initial discovery proposal was equally comprehensive, *see* Ex. A at 1, and only expanded over the next eight months as additional custodians and search terms were negotiated. Ultimately, Google ran over 200 comprehensive search strings over the files of more than 150 custodians and more than 1,500 shared drives, *see* Ex. B (setting forth negotiated search terms), producing over 4 million documents in addition to the 2 million documents already produced during the investigative phase. *See* MDL ECF No. 662 at 1-2. And although Plaintiffs have told the Court and the Special Master that discovery was stayed as to their state law DTPA claims until recently, they cite to nothing in support of that

---

[6] Courts are cautioned to "apply the standards in an even-handed manner that will prevent use of discovery to wage a war of attrition or as a device to coerce a party, whether financially weak or affluent." Fed. R. Civ. P. 26 Advisory Committee Notes (1983 Amendment).

[7] As occupants of two of the five seats on the MDL Discovery Steering Committee, Plaintiffs in this case had significant input into those 301 Requests. *See* MDL ECF No. 311 ¶¶ 2 n.1, 3.

assertion because there was never any such stay. And that argument is a red herring because Plaintiffs' DTPA claims involve the same tools and programs at issue for the antitrust claims and implicate the same universe of documents that Google has already collected and produced.

On the eve of remand to this Court, Plaintiffs joined a motion to compel in the MDL Court seeking even more custodians and search terms. ECF No. 660. Following remand, Judge Castel granted the motion but told all plaintiffs (including Plaintiffs in this case, who attended the conference) to "get on with the depositions, . . . I don't expect anybody to be back here with follow ups." *See* Hr'g Tr. at 11:6-8.

Eight days later, Plaintiffs in this case issued 101 new RFPs. Now back in Texas, Plaintiffs demand that (i) Google continue to produce the "final" documents ordered by Judge Castel while also demanding that (ii) Google come up with a new discovery plan to address their post-remand DTPA RFPs. Br. at 15.

Google served its Responses and Objections on December 11, 2023. Ex. C. The majority of Plaintiffs' 101 RFPs are "duplicative of documents already produced to Plaintiff" and "mirror[ ]" previously negotiated search terms or prior ad tech related RFPs that Google has long since resolved.[8] Google offered to meet and confer on a limited number of requests that pertain to Plaintiffs' DTPA and consumer privacy claims. Plaintiffs waited over six weeks to follow up.

At a meet and confer *this week*, and as reflected in their Brief (at 15), Plaintiffs have apparently now abandoned their 101 RFPs and are seeking only two "categories" of documents, which overlap significantly, if not entirely, with the requests to which Google previously responded. Br. at 15. Then, shortly before midnight on Wednesday, Plaintiffs served 96 pages of

---

[8] Google specifically objected to 76 of Plaintiffs' 101 RFPs on the basis that they were duplicative and, for the vast majority, identified the existing search terms that addressed their new requests. *See* Ex. C at Response Nos. 11-12, 24-87, 92-101.

4

revised interrogatory responses that completely overhaul their DTPA claims and—for the second time in as many months—perform an about-face regarding the *parens patriae* theory that has been the lynchpin of their case. The Court recognized yesterday that Plaintiffs' change in position was "significant" and may have consequences for the contours of discovery.

In light of Plaintiffs' shifting theories of the case, who they do or do not represent, and what discovery they still seek, Google should no longer be forced to guess the contours of Plaintiffs' case; Plaintiffs should make their own limited DTPA discovery proposal, to which Google will respond in good faith.

### B. Google's Productions Also Address Plaintiffs' Brand New Request for "Technical Documents and Data."

Plaintiffs did not identify any purported lack of "technical documents" in their December 7, 2023 discovery status update. And their new, vague assertion that Google has produced "few relevant technical documents," Br. at 11, is demonstrably false.

The crux of Plaintiffs' gripe is that they have not seen as many documents as they would like with respect to 11 products and features. But, as reflected in the table at Exhibit D, Google has made substantial productions of documents—hitting on search terms negotiated and agreed to by Plaintiffs—that bear directly on the issues about which Plaintiffs now complain. *See* Br. at 12. These numbers do not include the source code and data that Google also produced.

### C. Google Has Already Addressed Plaintiffs' Repetitive Requests for "Document Repositories" and Other Sources of Centrally-Stored Documents.

In 2023, Plaintiffs and Google discussed at length the scope and extent of Google's searches of various "document repositories" and other sources of centrally stored documents. At Plaintiffs' request, Google investigated 28 purported "sources" of documents that Plaintiffs had identified following their review of Google's expansive productions.

After a good-faith investigation, Google reported back that "Plaintiffs' assertions [were]

5

based on misunderstandings of Google's document management practices." *See* Ex. F at 1. The results of Google's inquiries are attached as Exs. F, G.[9]

Google already debunked the basis for the argument that Plaintiffs make in their Brief *i.e.*, that "go/" and "goto/" links necessarily lead to other sources of centrally stored, relevant, discoverable information. Br. at 5 n.6. Google explained that a "goto/ or go/ link is a link that can redirect to any URL address, including documents already found in custodial files that are being collected and reviewed." Ex. G at 5; *see also* Ex. F at 3. Plaintiffs now claim they have narrowed their request to links "that include the word 'dashboard,'" but, as previously explained, "inclusion of the word 'dashboard' in a 'go/' link is not an indication of the existence of a dashboard/monitoring tool." Ex. H at 1 n.1.

Google also has already conducted a thorough search for and in central storage locations that Google identified as likely to contain relevant and responsive material. Among other things, this involved the collection and review of documents stored on more than 1,500 shared drives. Exs. E at 2, F at 5. Plaintiffs have the output of that review process, mooting this issue.

## II. THE SPECIAL MASTER SHOULD ALSO DENY PLAINTIFFS' VARIOUS REQUESTS TO RELITIGATE THE TERMS OF THE GOVERNING ESI ORDER

At the November 20, 2023 Conference, Plaintiffs' counsel represented to the Court that no substantive changes to the MDL ESI Order were necessary for this case following remand, and that any modifications would be limited to "cosmetic changes." Hr'g Tr. at 24:1-6, 30:21-24 (Nov. 20, 2023). Now, Plaintiffs seek to relitigate that Order.

---

[9] Google's response was grounded in Sedona Principle 6, *i.e.*, that Google, as the responding party, "is in the best position to identify and search appropriate locations for potentially responsive documents." Ex. F at 1*; see also Edwards v. McDermott Int'l, Inc.*, 2021 WL 5121853, at *3 (S.D. Tex. Nov. 4, 2021) (Pursuant to Sedona Principle 6, the court "do[es] not think that district court judges should micro-manage the parties' internal review procedures.").

6

### A. The Parties Have Agreed, and the Court Has Ordered, That Google is Not Required To Reproduce Investigation Materials *En Masse*.

The Special Master should deny Plaintiffs' requests for *en masse* reproduction because they conflict with provisions of the ESI Order that were agreed to by Plaintiffs and entered by two federal courts. Citing two documents produced by Google in 2020 as part of Plaintiffs' pre-suit investigation—"Investigation Materials," as defined by the ESI Order—Plaintiffs now assert that Google should be required to reformat and reproduce, *en masse*, and in native form, "each Microsoft Word document" produced by Google. Br. at 11. But the parties negotiated this precise issue over the course of the winter of 2022 and 2023 and agreed "that responsive Investigation Materials . . . *need not be reproduced*, but that parties shall retain the ability to make reasonable and proportionate requests pursuant to Appendix E (for higher quality images) and Appendix J (for links)." MDL ECF No. 508 at 2 n.1 (emphasis added).

In a meet and confer just last week, Google explained to Plaintiffs' newly retained discovery counsel the background to the ESI Order negotiations and that the relief they seek would violate that Order. Plaintiffs responded that the *MDL* ESI Order was superseded by the ESI Order entered in *this* case. But the ESI Order entered in this case contains the exact same provision. *Compare* ECF No. 183, at 2 n.1, *with* MDL ECF No. 508 at 2 n.1.

Although the governing ESI Order mandates that Plaintiffs are not entitled to the relief they seek, Google has been clear that it will entertain "reasonable and proportionate requests" to reproduce documents in "a higher quality TIFF image, or the native, Microsoft-equivalent, or original file." ECF No. 183 at 2 n.1; *id.* at App'x 1 ¶ E. Google has already reproduced the specific documents about which Plaintiffs complain (GOOG-DOJ-AT-02326571 and GOOG-NE-06841582). Plaintiffs have made no other specific requests.

With respect to documents that Plaintiffs claim have "illegible" mathematical formulae,

Google explained to Plaintiffs that these issues are caused by system rendering issues for which there is no automated or programmatic fix. Google also explained that it would, of course, make reasonable efforts to reproduce any specific documents identified by Plaintiffs. Google reproduced GOOG-AT-MDL-004334894—the only example that Plaintiffs cite—last week and before Plaintiffs filed their Brief.[10] If Plaintiffs identify additional specific documents, Google will make reasonable efforts to reproduce them.

### B. It Is Too Late For Plaintiffs To Change Course and Demand a Clean Room To Review Dashboards.

Plaintiffs' belated request for more than 2,000 "dashboards" reflects a fundamental shift in the way that the parties agreed to approach discovery in this case. Almost one year ago, the parties agreed to meet and confer regarding the sampling and/or preservation of "a relevant and proportionate set of ad logs." MDL ECF No. 508 at 5 n.2; ECF No. 183 at 5 n.2. Google provided both a sample set of ad logs and bespoke transaction-level datasets derived from the ad logs. Now, Plaintiffs demand that Google repackage that information in a different format i.e., "dashboards," which typically reflect other data in an alternative format. But Google has no central repository of "dashboards" and it would be extraordinarily burdensome to require that it search for them now.

At the outset of the MDL ESI Order negotiations in 2022, Google reached out to Plaintiffs seeking agreement regarding "appropriate limitations on the scope of discoverable ESI grounded in principles of proportionality." Ex. I at 1; *see also* MDL ECF No. 481 at 6:2-4 (Sedona principles should be "front and center"). Among those appropriate limitations, in its October 14, 2022 letter Google raised the issue of "[d]ynamic fields of databases [and] dashboards," which are types of "ephemeral data" that need not be preserved pursuant to the Sedona Principles. *Id.* at 3; Sedona Principles at 136. As Google explained to Plaintiffs back in 2022: "Google has many databases,

---

[10] Plaintiffs mistakenly cite the Bates number of their Ex. 30 as "GOOG-AT-MDL-004334897."

dashboards, and logs featuring dynamic fields that are automatically populated with refreshed data from (and thus duplicative of) other sources." *Id*. As a result, Google told Plaintiffs, there is no obligation to "'preserve multiple or duplicative copies of the same relevant ESI.'" *Id*. (quoting Sedona Principles at 94).

Google chased for a response to that October 14, 2022 letter for months but never received one. The chronology of Google's efforts to engage on these foundational ESI questions is summarized in Google's submission to Judge Castel, Ex. O, and in a separate letter to Plaintiffs, Ex. N. The ESI Orders in the MDL and in this case reflect that the parties failed to agree on the need to preserve dashboards and dynamic data sources. ECF No. 183 ¶¶ II(4), 5 n.3; MDL ECF No. 508 ¶¶ II(4), 5 n.3. But that was not for lack of trying by Google.

Given the complete lack of engagement by Plaintiffs on ESI issues, Google set forth its own comprehensive plan for the production of documents and data responsive to Plaintiffs 301 RFPs. *See* Ex. A. With respect to data, as further described in Google's letter dated February 7, 2024, ECF No. 222, Google has produced more than 40 different datasets comprising over 200 terabytes of data, including custom transaction-level datasets that do not exist in the ordinary course of business. Those expansive data productions are also summarized in Google's May 30, 2023 production letter attached hereto as Ex. E.

Tellingly, Plaintiffs are not complaining about the sufficiency of Google's data productions. Instead, having obtained that massive (and burdensome to produce) data production, *see* ECF No. 222 at 3, Plaintiffs now demand an entirely new and different data production. They demand that Google search for over 2,000 dashboards and then make them available in a "secure source code room." Br. at 6. But Google made very clear its position during the negotiation of the ESI Order—as early as 2022—that it would not produce materials in this format (even if

9

possible to do so). And the Federal Rules require that the Court "must limit the frequency or extent of discovery," when, as here, "the discovery sought is unreasonably cumulative or duplicative" or "the party seeking discovery has had ample opportunity to obtain the information by discovery in the action." Fed. R. Civ. P. 26(b)(2)(C). Plaintiffs have not explained in any coherent way what new information this production would reveal.

### C. Plaintiffs' Request for Linked Documents and Metadata is Inconsistent With the Terms of the Governing ESI Order.

To date, Google has run more than 200 comprehensive search strings across 150 custodians' files and more than 1,500 shared drives. *See* Ex. B. Even after Google's extensive searches and subsequent productions, Plaintiffs now seek additional linked documents that may not have come from any negotiated custodian or hit on any of the 200+ negotiated search strings.

Judge Castel entered the final linked document provision following significant negotiation, briefing, and oral argument. Google has complied with the relevant provision, but Plaintiffs' requests go far beyond what is required.

There are two relevant parts in the ESI Order's linked document provision. The first requires any party with "access to a tool capable of performing [...] an automated search, to identify any emails that contain links to another document and [...] conduct a reasonable search for the document corresponding with each identified link." ECF No. 183 at 24, App'x J. Google has complied with that obligation and Plaintiffs do not contend otherwise.

The second part of Appendix J permits a requesting party to make "reasonable and proportionate requests" for "documents *identified via hyperlinks*." ECF No. 183 at 24, App'x J. Critically, this provision requires the requesting party to identify *links*—not wholesale documents. *Id.* ("For *each link identified* by the receiving party, the producing party shall conduct a reasonable search for the document corresponding with the link. The producing party shall process and

10

produce relevant documents *corresponding with the links* with reasonably available metadata.") (emphasis added).[11]

Plaintiffs' demand for all "internal" links contained in over 5,500 documents is patently indiscriminate, and it is not tied to individual links as required by Appendix J. Plaintiffs made no effort to identify individual links that they reasonably believe they need. In the Virginia Case, Magistrate Judge Anderson recently rejected a similar request for an indeterminate number of links—for *only* 299 documents. Judge Anderson emphasized that Virginia Plaintiffs "didn't pick out particular links" and decide "[t]his is important, I need this link, or I need that link," but rather told Google "I want all the links in every one of those [299] documents, go fish." Hr'g Tr. 13:21-14:1 (EDVA Feb. 9, 2024). Judge Anderson then ruled that the Virginia Plaintiffs could select up to 100 links in the 299 documents at issue. EDVA ECF No. 534.

The ESI Order's process—and limitations on requests for additional linked documents—reflects the fact that collecting specific documents identified via hyperlinks (beyond what was already done via the automated tool) is a burdensome process. *See* Ex. M (Declaration of V. Palavalli in Support of Google's Response Brief to Plaintiffs' Opening Brief to the Special Master for the Feb. 22, 2024 Hearing ("Decl.")). The first two steps require a person to obtain a native copy of the document containing hyperlinks, review the native copy, and manually identify all hyperlinks contained therein. Decl. ¶ 8. Once the hyperlinks have been identified, Google must search for each of those hyperlinks within the universe of documents collected and processed into

---

[11] Plaintiffs also urge the Court to treat links "[j]ust like attachments" to emails, Br. at 2, but the ESI Order and case law expressly reject this approach: "For the avoidance of doubt, documents that are linked are not part of the same family for purposes of this Order." ECF No. 183 at 14; *see, e.g.*, *Nichols v. Noom Inc.*, 2021 WL 948646, at *1, 4 (S.D.N.Y. Mar. 11, 2021) (rejecting plaintiffs' contention "that hyperlinks are akin to attachments and should be produced as part of a document 'family,'" instead finding that hyperlinked documents are not attachments and denying plaintiffs' motion).

11

the review platform. If the document was not previously collected, Google needs to try to find it, and then process it. Decl. ¶ 8. For those that were not previously produced, Google must conduct a privilege review, and then its third-party vendor will process the production of the links (to the extent they are not privileged). Decl. ¶ 8.

Plaintiffs' demand would require Google to undertake this burdensome process to research hyperlinks in each of the 5,575 documents requested by Plaintiffs. A single document may contain dozens of links. For example, when investigating Virginia Plaintiffs' request for Google to produce all hyperlinks contained in a much smaller set of 197 documents, Google discovered that those 197 documents contained more than 2,200 links. Decl. ¶ 10. Applying that math here as an approximation, Plaintiffs' request for links in 5,575 documents could very well implicate *over 60,000 links*. And even if Plaintiffs limit their request to "internal" links, Google would still need to review every link to determine which are internal.

Plaintiffs' demand is especially unreasonable given that almost half of the 5,575 documents were produced by Google during the DOJ and Texas OAG pre-suit investigations and have therefore been in Plaintiffs' possession for years. Google proposed that it would attempt to collect and produce the documents corresponding with up to 300 specific links identified by Plaintiffs over the course of fact discovery. Plaintiffs have now rejected that proposal. But they offer no reason for sitting on their massive request until a few months prior to the close of fact discovery in this case. Nor do they articulate why they believe the links in these documents will turn up any new or unique information beyond what has already been produced. They plainly had "ample opportunity to obtain the information" much earlier. Fed. R. Civ. P. 26(b)(2)(C).

### III. THIS CASE IS NOT ABOUT *SEARCH*.

Plaintiffs have conceded that documents and data related to *Search* are not responsive to their documents in this case. For over ten months, Plaintiffs claimed that "the majority of the 2.3

12

million documents produced in this MDL actually relate to the States' and DOJ's investigation of online search and mobile operating systems" and that Google should not, therefore, take credit for those productions. *See* Ex. J at 2; *see also* ECF No. 176 at 5 n.1.

Now, Plaintiffs want Google to produce unredacted trial transcripts and exhibits from witnesses who are not on their initial disclosures, from a case Plaintiffs continue to deem irrelevant. They are seeking testimony concerning, among other things, contracts with mobile carriers, contracts relevant to Google's Search business, default settings on computers, terms and conditions for smart phone companies, and third-party search providers. *See* Ex. K.

None of that material is relevant to this case. Nevertheless, Google has offered (and implemented) a reasonable compromise. Specifically, Google produced transcripts and exhibits for every *Search* witness that is also a custodian in this case. Google continues to review these witnesses' extensive exhibits and is undergoing a burdensome line by line manual review of each exhibit for needed redactions in light of the extensive references to confidential third-party information in the *Search* case that is governed by a separate protective order. Google should not be required also to undertake that burdensome process for materials that are obviously not relevant. Many transcripts are available in the public domain, and Plaintiffs are free to access and review them regardless of their relevance to this case.

### IV. PLAINTIFFS HAVE FAILED TO MEET AND CONFER IN GOOD FAITH REGARDING THEIR REQUEST TO RE-REVIEW ALL PRIVILEGE LOGS.

Anticipated and actual litigations relevant to Google's privilege logs date back to at least 2019, and there are now three parallel ad tech litigations across three jurisdictions in the United States. As a result, Google's privilege reviews in this case have been substantial. Counsel must grapple with difficult questions of privilege and work product protections as Google is asked to review documents reflecting its responses to investigations and litigation.

Even with rigorous privilege reviews, Google has consistently produced privilege logs in this case within 45 days of each production as required by the governing ESI Order, *see* MDL ECF No. 508 ¶ V(1), beginning in July 2023.[12]

Plaintiffs waited until November 2023 to assert for the first time that there were purported deficiencies in Google's privilege logs. Plaintiffs demanded Google re-review hundreds of thousands of log entries and produce revised logs in 9 business days. After Google agreed to conduct a re-review of the log entries Plaintiffs' raised, Plaintiffs requested that Google review another hundred entries over the holidays (in 11 business days). *See* Br. Ex. 5 at 2.

Demanding a re-review of hundreds of thousands of entries in a few weeks is neither credible nor constructive. Plaintiffs know that what they have asked Google to do—and what Google has already agreed to do—is a time-consuming and painstaking process. The process for the review that Google has implemented is described below.

*First*, Google performed a manual de-duplication of the appendices to Plaintiffs' letters. This effort took considerable time, but reduced the population from approximately 490,000 entries to approximately 315,000 unique entries.

*Second*, Google looked to prioritize the log entries most relevant to depositions to be taken by Plaintiffs. To that end, Google prioritized a population of approximately 70,000 entries associated with Google custodians on Plaintiffs' list of initial disclosures. The review of that population is close to complete; Google expects to produce revised logs by March 15, 2024.

*Third*, Google has identified low priority categories of documents that should require no further review because they are unlikely to be relevant to this litigation. This includes the *Search*

---

[12] In contrast, Google to date has received privilege logs from only two States—Texas and South Carolina—for documents withheld or redacted for privilege, as well as a privilege log for 69 memoranda related to witness interviews taken during the multi-state investigation.

documents that Plaintiffs contend are not responsive to their document requests. Indeed, Judge Castel has stated that these kinds of documents need not be logged at all. *See* Hr'g Tr. at 19:18-20:8, 21:19-24 (S.D.N.Y. Apr. 19, 2022) (Google need only log documents withheld in response to "a proper Rule 34 request").

Google has asked for Plaintiffs' input into the prioritization process and, recognizing that depositions must soon begin, has offered to prioritize Plaintiffs' choice of custodians for review. But Plaintiffs have not engaged with those good faith efforts to meet and confer. Instead, they now make the unreasonable (and impossible) demand that Google complete its review of all documents, regardless of relevance, by March 1.

Google welcomes the opportunity to discuss this issue further with the Special Master.

## V. GOOGLE HAS ALREADY ADDRESSED PLAINTIFFS' REQUESTS FOR EVEN MORE SOURCE CODE.

Plaintiffs have had access to approximately 80 gigabytes of Google's source code since July 17, 2023, and they have inspected that code 36 times so far. In their December 7 discovery status update submitted to the Court by Plaintiffs, Google learned for the first time that Plaintiffs contended there are gaps in the source code, but Plaintiffs provided no details. ECF No. 176 at 6. Plaintiffs first notified Google of their *specific* requests in a letter dated January 16, 2024. As Google has informed Plaintiffs during meet and confers on February 6 and February 12, Google was optimistic that we would be able to make a source code proposal that addressed many of Plaintiffs' requests. But Plaintiffs declared an impasse. As we foreshadowed to Plaintiffs earlier this week, Google has offered additional source code for inspection which, in Google's view, sufficiently addresses this request, *see* Ex. L, and we remain available to meet and confer.

Dated: February 16, 2024					Respectfully submitted,

							*/s/ R. Paul Yetter*
							R. Paul Yetter
							State Bar No. 22154200
							YETTER COLEMAN LLP
							811 Main Street, Suite 4100
							Houston, Texas 77002
							(713) 632-8000
							pyetter@yettercoleman.com

							Eric Mahr (*pro hac vice*)
							FRESHFIELDS BRUCKHAUS DERINGER LLP
							700 13th Street NW, 10th Floor
							Washington, D.C. 20005
							(202) 777-4545
							eric.mahr@freshfields.com

							ATTORNEYS FOR GOOGLE LLC

## CERTIFICATE OF SERVICE AND SEALING

I certify that, on February 16, 2024, this document was filed electronically in compliance with Local Rule CV-5(a) and served on all counsel who have consented to electronic service, per Local Rule CV-5(a)(3)(A). I also certify that, on February 16, 2024, a motion to seal certain exhibits to this document was filed separately and before the filing of those exhibits under seal, per Local Rule CV-5(a)(7)(B). This sealed filing will be promptly served by email with a secure link on counsel of record for all parties in this case, and will be publicly filed in redacted form per Local Rule CV-5(a)(7)(E).

/s/ *R. Paul Yetter*
R. Paul Yetter