```
 1                   IN THE UNITED STATES DISTRICT COURT
                     FOR THE EASTERN DISTRICT OF TEXAS
 2                           SHERMAN DIVISION


 3

     THE STATE OF TEXAS, et al,        §
 4                                      §
                     Plaintiffs,        §
 5                                      §
         vs.                            §        Case No.:
 6                                      §        4:20-cv-00957-SDJ
     GOOGLE, LLC,                       §
 7                                      §
                     Defendant.         §
 8

 9                        STATUS CONFERENCE
                     TRANSCRIPT OF PROCEEDINGS
10              BEFORE THE HONORABLE SEAN D. JORDAN
                    UNITED STATES DISTRICT JUDGE
11

             Thursday, February 15, 2024; 10:04 a.m.
12                          Plano, Texas

13

     APPEARANCES OF COUNSEL:
14   (Continued on page 2.)

15   FOR THE PLAINTIFF STATES:

16   W. Mark Lanier
     THE LANIER LAW FIRM
17   6810 FM 1960 West
     P. O. Box 691448
18   Houston, Texas 77269-1448

19   Jonathan P. Wilkerson
     THE LANIER LAW FIRM
20   6810 Cypress Creek Parkway
     Houston, Texas 77069

21

22       *********************************************

23               GAYLE WEAR, RPR, CRR
             Federal Official Court Reporter
24                7940 Preston Road
                  Plano, Texas 75024
25            gayle_wear@txed.uscourts.gov
```

```
 1    FOR THE PLAINTIFF STATES:
      (Continued from page 1.)
 2
      Zeke DeRose, III
 3    THE LANIER LAW FIRM, PC - Houston
      10940 W. Sam Houston Parkway N.
 4    Suite 100
      Houston, Texas 77064
 5
      Geraldine W. Young
 6    NORTON ROSE FULBRIGHT US LLP - Houston
      1301 McKinney, Suite 5100
 7    Houston, Texas 77010-3095
 8    James Lloyd
      Trevor Young
 9    STATE OF TEXAS, OFFICE OF THE ATTORNEY GENERAL
      ANTITRUST DIVISION
10    300 W. 15th Street
      Austin, Texas 78701
11
12    FOR THE DEFENDANT:
13    R. Paul Yetter
      Mollie Bracewell
14    YETTER COLEMAN, LLP - Houston
      811 Main Street, Suite 4100
15    Houston, Texas 77002
16    Robert John McCallum
      FRESHFIELDS BRUCKHAUS DERINGER US LLP
17    601 Lexington Avenue
      New York, New York 10022
18
      ALSO PRESENT:
19
           Roger P. Alford
20         UNIVERSITY OF NOTRE DAME
           3119 Eck Hall of Law
21         Notre Dame, Indiana 46556
22                              *    *    *
23
24
25
```

```
1    February 15, 2024                              10:04 a.m.

2                          ---o0o---

3                    P R O C E E D I N G S

4                          ---o0o---

5         THE COURT:  Good morning.  You can be seated.

6         MR. YETTER:  Good morning, Your Honor.

7         THE COURT:  So we're here this morning on

8    4:20-cv-957, the State of Texas, et al versus Google LLC.

9    We're here for a status conference, and as with our other

10   hearings, we have an audio-only feed for the public of the

11   hearing.

12        And let's go ahead and get appearances from the

13   parties, and we can start with the plaintiff states.

14        MR. LANIER:  Thank you, Your Honor.  Mark Lanier

15   here on behalf of plaintiff states, along with, from my firm,

16   Zeke DeRose and Jonathan Wilkerson.  From the AG's office, we

17   have Mr. James Lloyd; Mr. Trevor Young from Fulbright --

18   Norton Rose Fulbright.  We have Ms. Geraldine Young.  We have

19   Roger Alford here from -- as co-counsel.  I think he's

20   technically from Notre Dame, but we don't say that to

21   anybody.

22        THE COURT:  All right.  Thank you, Mr. Lanier.

23        Go ahead, Mr. Yetter.

24        MR. YETTER:  Thank you, Your Honor.  Good morning.

25   On behalf of the defendant, Google, Paul Yetter; my
```

```
 1    colleague, Mollie Bracewell; and our co-counsel from
 2    Freshfields, Robert McCallum, are here for today's hearing.
 3              THE COURT:  All right.  Thank you, counsel.  So I
 4    have a couple of topics that I anticipate addressing today.
 5    And then, as in our prior conferences, if there's issues that
 6    counsel believe we need to address that are not among my
 7    topics, we can also take those up.
 8              So my list includes some discussion on the
 9    coordinated discovery order.  As you all know, I have the
10    special master's report and recommendation.  I also have a
11    filing from Google on that that helpfully brought to the
12    Court's attention an order from New York that bears on the
13    issue.  And I'm sure both sides may have points to make
14    regarding the coordinated discovery order.
15              I do want to talk briefly with you all about just
16    sort of scheduling on the motion to dismiss.  Because of the
17    motion practice we had on the dismissal motion and
18    resubmission of Google's second dismissal motion, and the
19    States' recent request and granting of that request for an
20    extension I think in terms of the reply, we may be looking at
21    timing on the reply, and then I want to talk about a
22    potential hearing on the dismissal motions.
23              I do also want to discuss with you all, for our
24    status conferences going forward, maybe a process for the
25    parties to identify issues or topics that they think would be
```

 1    important for the Court to hear at each status conference.

 2              And then, more broadly, I want to talk a bit

 3    about -- really, at about 50,000 feet, about some of where

 4    discovery is right now.

 5              So that's sort of my list of topics.  We'll work

 6    through those.  And then anything else you all think we ought

 7    to discuss, we can take up.

 8              So let's start with the coordinated discovery

 9    order.  I have the report and recommendation of the special

10    master, it includes a proposed order.  Why don't I start with

11    the plaintiff states and see if there's anything you want to

12    say about that, and that includes Google's filing concerning

13    the recent New York order on shared discovery in the case and

14    whether or not it makes sense to either make an adjustment

15    based on the order in the coordination order, or to send it

16    back to the special master to take another look, I think just

17    at that issue unless we have other issues we think need to

18    be reconsidered.

19              So, Mr. Lanier, go ahead.

20              MR. LANIER:  Thank you, Your Honor.  And thank you

21    for your time this morning.  And thank you for what you've

22    done thus far.

23              We think all parties appreciate that the special

24    master has been extremely useful, even thus far, and will

25    continue to be.  And that was a lot of work to put that into

1    place.  We appreciate you.  We appreciate all that were

2    involved.

3             We think he produced a good order.  We don't like

4    Google's effort to change the definition; we think that that

5    denudes the order.  But we believe that the order itself is

6    good.  I have looked at what Google filed.  I have read Judge

7    Castel's order that is referenced, and I think that it's a

8    red herring.  Let me explain why.

9             Judge Castel said in order to order production of

10   additional documents or documents from another case, one of

11   two factors need to be present -- I'm sure you read his order

12   as well -- it's a stipulation between parties or it's got to

13   be relevant to the underlying dispute.  We certainly have

14   relevance he could not find.  Ours has been found not just in

15   our case and in our arguments, but if you go to Judge

16   Gilstrap's *Infernal Technologies v. Microsoft* 2019 opinion

17   that dealt with infringement contentions from prior

18   litigation with the same products, and expert reports and

19   things of that nature, Judge Gilstrap's opinion says that

20   there's absolutely a relevance because it bears on the

21   parties' understanding of the claims; it may also be relevant

22   if it's inconsistent in how they make a claim in one place

23   versus another.

24            So even under the reasoning of Judge Castel's

25   order, we believe that we should be entitled to this

1    discovery in this manner as set forward in our coordination

2    arguments and in the report and recommendation.

3            My bottom line, looking at it as an old guy -- I

4    was laughing -- my team didn't even understand that I started

5    practicing law and trying cases when you had to file your

6    interrogatory answers in court, when your expert reports were

7    filed in court often.  But what a coordination order exists

8    to do is to allow the parties to proceed with speed and

9    efficiency over the burden and cost that comes from something

10   independent.

11           Coordination orders do not exist to put handcuffs

12   on you and tell you how to run discovery in your court.

13   Coordination orders do not exist to dictate what the Eastern

14   District of Texas must or must not do as per the rulings of a

15   sitting judge in New York, even one on senior status, or, for

16   that matter, a judge in Virginia.  We're guided by the local

17   rules, by the Federal Rules of Civil Procedure, and by your

18   discretion and judgment as you apply those rules.

19           And so the question becomes what's the most

20   expedient, efficient way for us to get information and data

21   which the Eastern District prioritizes, as opposed to the

22   cost and burden associated with getting that data another

23   way.

24           So we believe that discovery is not a game of hide

25   and seek; that there's information that we're entitled to

```
 1    get; that the positions that Google takes should not be
 2    allowed to vacillate between one case and a separate case;
 3    and that if it's non-privileged information, under Federal
 4    Rule of Civil Procedure 26(b)(1), we ought to be entitled to
 5    it.  And so we like the special master's order.
 6            We don't think the Google judge has -- Judge
 7    Castel, with due respect, we don't think that he changes the
 8    complexion of this at all.  And we would urge you to adopt
 9    the report and recommendation of the special master and allow
10    us to get the discovery we're entitled to in the quickest,
11    most efficient way possible.  Thank you.
12            THE COURT:  And, Mr. Lanier, let me follow up real
13    quick with one --
14            MR. LANIER:  Yes.
15            THE COURT:  -- question for you.  I just want to
16    make sure I understand your argument.  It sounds to me like
17    your view is we could enter the coordination order as
18    proposed by the special master, including the language on
19    shared discovery, and not be, if you will, in tension or
20    conflict with Judge Castel's order because of the discussion
21    in his order about one reason that you could allow this type
22    of shared discovery is when there are requests and response
23    relevant to the underlying dispute.
24            Do I have you correct?  You think it would not be
25    in tension with that.
```

1    MR. LANIER:  You have me correct, Your Honor.  Now,
2    I do realize that paragraph 10 of the report and
3    recommendation does say it would go into effect when it was
4    entered by the MDL and by you.  And that delay could be an
5    issue that needs to be dealt with because Judge Castel may or
6    may not agree to enter the order and, by the same token, he
7    may not rule on it timely, it may just get caught up in the
8    busyness of life.
9          But we think you're absolutely fine entering a
10   coordination order for your court, for this case, to make
11   this as speedy and efficient as possible between the parties.
12         THE COURT:  All right.  Thank you, Mr. Lanier.
13         MR. LANIER:  Thank you, Judge.
14         THE COURT:  Mr. Yetter?  I took your filing, by the
15   way, to communicate that other than the issue regarding
16   shared discovery that you identified, and Judge Castel agrees
17   in the order, there isn't anything else about the
18   magistrate's recommended order that you had an issue with.
19         MR. YETTER:  That is correct, Your Honor.  Thank
20   you again for the chance to speak at this status conference.
21         We -- there are many things that we may not agree
22   on, but there's one thing that I think we do agree with
23   counsel in his comments, that your choice of special master
24   was on the mark.  He has been careful.  He was thorough,
25   efficient, and his ruling is thoughtful.

```
 1              At our last hearing, Your Honor, I analogized him,
 2       he might be like the second or third quarterback, and that
 3       you were the Dak Prescott.  And you corrected me by saying
 4       Patrick Mahomes.  And after last week, after last week's
 5       game, it's clear that I was completely off the mark and
 6       Patrick Mahomes is the right analogy.  But -- and my
 7       colleague, Rob McCallum, he's the one that argued this to the
 8       special master.
 9              But the one thing -- and I will cede just briefly
10       to him in a minute.  The one thing I will say, Your Honor, is
11       the arguments that we just heard from counsel that this Court
12       doesn't need to pay attention to a senior judge in New York
13       or to a magistrate judge in Virginia are the same type of
14       arguments that Special Master Moran heard on a lot of
15       different topics.  And Special Master Moran was very careful
16       to take into account the fact that this Court is not alone.
17              We're not -- this case is not an island all by
18       itself.  There's three connected cases.  This order is a
19       coordination order between two particular cases and two
20       particular judges.  And I think, to his credit, Special
21       Master Moran was very careful about considering and then,
22       very much we think in the respects that he did, aligning the
23       cases.
24              And the only suggestion we had was that this Court
25       give Special Master Moran the chance to consider an order
```

1    that literally came out minutes before he issued his

2    recommendation, report and recommendation.  And the

3    plaintiffs' argument today that he shouldn't be able to

4    consider that is -- we don't think has merit.  He may come to

5    a different opinion than what we suggest, certainly, what we

6    believe, but the Court's process that you set up was this was

7    supposed to be for the special master to consider to make a

8    report and recommendation to you.  Patrick Mahomes is going

9    to make the final call, Your Honor, but this is something

10   that you've given to him to give you a recommendation.

11          And I will pass to my colleague on any of the

12   details if the Court wants to question it.

13          THE COURT:  Oh, right.  Is there something else,

14   Mr. McCallum, that you wanted to visit about with regard to

15   the order?

16          MR. MCCALLUM:  Just one or two points, Your Honor,

17   if I may.

18          THE COURT:  Okay.  Go ahead.

19          MR. MCCALLUM:  Your Honor, if I may just build very

20   briefly on the comments of my co-counsel, Mr. Yetter, and

21   suggestion that the argument that has been made by the

22   plaintiffs around this Court should not be handcuffed by the

23   orders of other courts.  And this is, as Mr. Yetter said, an

24   issue that was raised by plaintiffs' counsel before the

25   special master, and it was directly addressed in the context

1    of the recommendation regarding expert reports.  The special

2    master said in his report and recommendation the principles

3    of comity and coordination between the three actions require

4    approaching this issue in the same way.

5            And we would suggest to the Court, respectfully,

6    that that same logic should apply here; that we should be

7    able for coordination and to not knowingly encourage the

8    Court to enter any orders that are inconsistent in any way

9    with the orders entered by Judge Castel or Magistrate Judge

10   Anderson.

11           I would also just add that in connection with the

12   suggestion by plaintiffs' counsel that there's some kind of a

13   game of hide and seek here, that Google is somehow taking

14   inconsistent positions, I would point out to the Court that

15   Google has already produced its own interrogatory responses,

16   its responses to interrogatories propounded by the DOJ.

17   Those have been produced in the MDL and those have also been

18   produced to the Texas plaintiffs as well.  So there's no

19   suggestion here that Google is trying to hide the ball.

20           And the final point I would make is that, as Your

21   Honor alluded to, this is really just a very narrow issue

22   that we would like to give the special master an opportunity

23   to review.  I think you saw from our papers, the timing, that

24   the orders came down within half an hour of each other.  We

25   think that the right and prudent course of action here, Your

1    Honor, is to give the special master an opportunity to

2    revisit and review this very specific issue and give us his

3    views.

4                    That's all unless the Court has any questions.

5                    THE COURT:  All right.  No.  Thank you,

6    Mr. McCallum.

7                    MR. MCCALLUM:  Thank you.

8                    THE COURT:  Mr. Lanier, is there anything else the

9    States wanted to say writ large about the report and

10   recommendation and proposed coordination order?

11                   MR. LANIER:  Uh, yes.  The argument that I'm

12   making, I don't know if it's the same argument I made to

13   Special Master Moran or not.  I mean, I made the argument, so

14   maybe it is, but it certainly wasn't in these terms because

15   it's so much clearer in my head today.

16                   The magistrate in Virginia doesn't tell you how to

17   do the discovery in your case.  The judge in New York doesn't

18   tell you how to do the discovery in your case.  If they want

19   to enter an order that says we cannot share what we have in

20   this case with those parties in their courts, they can enter

21   that order, and we would need to abide by that order, but

22   they can't tell you or Google what you can or cannot order

23   Google to do in this case, and that's the argument that I'm

24   trying to make.

25                   And so I don't know the point in sending this back

1    to Special Master Moran to reconsider in light of the Google

2    case.  You answered -- you asked me a question that reflected

3    my understanding of that Google order.

4              THE COURT:  Um-hum.

5              MR. LANIER:  But even aside from that, that's not

6    the issue in our case.  The issue in our case is what can we

7    do in this case.  We can't share in New York, fine.  We can't

8    share in Virginia, fine.  We'll honor the Court's rulings in

9    those cases.  But what you decide in this case is totally

10   independent of what the magistrate determines in Virginia.

11             THE COURT:  All right.  Thank you, Mr. Lanier.

12             I think I've got both sides' positions on that.

13   And I think we've covered the only issue the parties felt we

14   needed to cover with regard to the proposed coordinated

15   discovery order.

16             And I want to move to talk about the motion to

17   dismiss just in terms of scheduling, but I also want to say

18   something more broadly about the local rules because we have

19   some motion practice on that.  And just to be clear about

20   that, the parties are, I'm sure, familiar with the Court's

21   ruling on that, which was that there was not an impediment

22   under Fifth Circuit precedent for Google to file a second

23   motion to dismiss under Rule 12, but that we -- you know, but

24   that there was an issue of running afoul of a particular

25   local rule.

```
 1                    And for both parties going forward in this case, I
 2        know you're all aware of our local rules, again at about
 3        50,000 feet, this Court has a fork in the road with regard to
 4        local rules.  I'm either going to enforce them or I'm not.
 5        And the problem becomes if you go down what I think is kind
 6        of a slippery slope of sort of enforcing them or, you know,
 7        finding circumstances where I'm effectively not enforcing
 8        them -- and I distinguish that from circumstances where the
 9        local rules themselves provide some discretion in the way the
10        rule reads and what the circumstances may be -- but I want
11        the parties to know that this was a situation where for both
12        sides going forward if, you know, we expect you're going to
13        follow the local rules and, you know, where there is
14        divergence from that and it's an issue, the Court is going to
15        be committed to following and implementing the local rules.
16                    With that said, what that -- the effect of that was
17        to sort of move the scheduling a little bit.  And the States'
18        response is now due on February 21, which moves a little bit
19        from the scheduling order.  In the scheduling order, we had
20        built in for Google's reply, basically, a 14-day period, but
21        now that period is less than that, it's more like about 8
22        days.  And so the parties will know that I did not
23        automatically move the States' date to respond because my
24        view was if the States are comfortable responding within the
25        time limit we had, then we'll proceed in that manner, but I
```

 1    was open to the States asking for more time.

 2              And I'll say the same thing for Google.  If Google

 3    feels like it can file its reply within the time period

 4    that's already in the scheduling order, we'll proceed in that

 5    manner, but I will certainly be open to an extension request

 6    from Google that mirrors the time frame that is set forth in

 7    the scheduling order.

 8              The other thing I wanted to note is I am assuming

 9    that one or both sides are going to want oral argument on the

10    dismissal motions.

11              Mr. Lanier, is that fair for your side?

12              MR. LANIER:  Your Honor, I don't know that we're

13    going to necessarily need it.  I think we're good with our

14    reply date.  We'll need to see what they bring up.  But it's

15    whatever your preference is.  If you've got questions, we'll

16    answer them.  But, I mean, it's clear you don't need us to

17    regurgitate briefs.

18              THE COURT:  Mr. Yetter, what about for Google?  Do

19    you think you're going to want a hearing on the dismissal

20    motions?

21              MR. YETTER:  Yes, we are, Your Honor.  We

22    appreciate the Court bringing up the topic.

23              Let me go back a little bit on a couple of points

24    that the Court made on the extra time.  The States approached

25    us about six extra days for their response brief for the

```
 1    12(b)(6) motion.  We obviously agreed with that.  We have
 2    talked with them about six extra days on our reply brief, as
 3    the Court thought we might, and we will be filing a motion --
 4    and it's been agreed -- and we will be filing a motion with
 5    the Court so that the Court can consider whether to allow
 6    that.  We hope the Court will.
 7            And the last point on following the local rules, we
 8    know the Court in this district local rules are very
 9    important.  That was on me.  I just misread the local rules.
10    And so it will not happen again at least intentionally,
11    Judge.  We're going to follow the local rules very carefully.
12            So to answer the question that you had, yes, we
13    would like oral argument.  We think it would be helpful for
14    the Court.  These are both -- this is obviously a
15    complicated, significant case, these are significant motions,
16    and we would like that opportunity if the Court allows it.
17            THE COURT:  All right.  Thank you, Mr. Yetter.  I
18    think what I'll do -- you can anticipate that probably
19    Ms. Munoz will be reaching out to you all for potential dates
20    for a hearing, likely -- you know, likely in March, and we
21    could potentially do it around the time we have our status
22    conference.  And if it's -- and/or if the parties think it's
23    better to have a different date or push that a little more,
24    we're welcome to hear from both sides on that issue.
25            So moving from the motion to dismiss to something I
```

 1   wanted to raise with you all just about these status

 2   conferences.  I think it was a great -- these are very

 3   helpful for the Court.  I think they're helpful for the

 4   parties.  And I think it may be even more helpful, but I

 5   would like to hear from counsel for both sides, if some

 6   period of time before the conference, I'm thinking maybe

 7   seven days in advance, the parties can identify -- and you

 8   can do it by letter or advisory -- topics that you think

 9   should be addressed at the status conference.

10         And what I'd say, not to -- so that there's not too

11   much burden put on the parties, is that you limit it to I'd

12   say no more than a paragraph describing what the issue is --

13   it could be a sentence, it could be a paragraph -- something

14   that just you think will be sufficient to put the Court on

15   notice of what that issue is.

16         And then if either party thinks, you know, that you

17   need some sort of further submission on that, then I'm, you

18   know, welcome for you to tee that up as well.  Let me get

19   your -- I think that will be helpful for everybody.  I know

20   it will be helpful for me.

21         So Mr. Lanier, any comment from the States on that.

22         MR. LANIER:  Yes, Your Honor.  I think it's a great

23   idea.  I think it's very easy to do it in the form in which

24   you suggested.  I think an alternative idea that would not be

25   too burdensome on the parties is for us to get on some type

```
 1    of meet-and-confer basis and do a joint submission where
 2    we're able to say to you, Here is an agenda that we think
 3    will be useful for your status conference.  These are issues
 4    Google wants dealt with.  These are issues that the States
 5    want dealt with.  These are issues both want dealt with,
 6    whatever it may be.  But there's no reason we should not be
 7    able to come up with a joint report to you seven days out
 8    from your hearing that tells you, Here's our suggested agenda
 9    for the conference, obviously with anything else the Court
10    might want.  But from the parties' perspective, I think we
11    could coordinate that very easily with them.  We have no
12    trouble coordinating with them.  On that level, we get along
13    fine.
14            THE COURT:  All right.  Great.  I think it's a good
15    suggestion.  It can be, as with so many other things you're
16    submitting, jointly or separately as needed.
17            Mr. Yetter, any thoughts?
18            MR. YETTER:  As always -- well, maybe not as
19    always, but counsel comes up with a good idea as usually.  He
20    came up with a very good idea.  And we can work together on
21    this, Your Honor.  Even if the sides don't agree on, These
22    are the topics we should talk about, both sides can say, We
23    want to talk about this one and that one.  At least then you
24    just get one submission.
25            And the one thing I would caution, I hope that
```

1    doesn't turn into, is basically circumventing the Court's

2    normal process for motions and especially discovery issues

3    and things like this.  I'm assuming that this would be we're

4    raising a topic we wanted to alert the Court about, and the

5    Court will then decide, Okay, this is how we're going to deal

6    with it.  You're either going to have to file a motion or I'm

7    going to deal with it in some other way.

8            THE COURT:  Right.  That's a good point,

9    Mr. Yetter.  As I alluded to earlier, I don't want this to

10   become a free for all of now, you know, we're making all

11   kinds of submissions.  It really is designed simply to

12   identify topics for discussion.  And my thought is, really,

13   if we needed to have any kind of briefing on something that

14   is outside the realm of what's contemplated in the scheduling

15   order, that's something we discuss at the status conference.

16   If it's something that for whatever exigent reason needs --

17   there needs to be filings on it, then the parties can ask for

18   leave to do that.

19           MR. YETTER:  That makes good sense, Your Honor.

20           THE COURT:  So we'll implement that.  I'll do an

21   order on that shortly so that we have that for the March

22   status conference.

23           I did want to let you know, in terms of

24   coordination with the special master, you've probably noticed

25   I think that the special master put out an order that, you

```
 1    know, he's having meetings with you all about at least twice
 2    a month.  We have coordinated so that at least some of those
 3    meetings, for the ease of the parties and anybody who is
 4    having to travel, can occur at the time we do our status
 5    conferences.
 6            So, you know, for example, all of the next at least
 7    three status conferences that we have will be followed by
 8    meetings with the special master.  And I want to let you all
 9    know that the plan is for those meetings to be in our jury
10    assembly room, which is literally right next door.  So you
11    can literally walk out of here, go in there, and you can have
12    a conference with the special master.
13            All right.  That brings me to just having a bit of
14    discussion with you about where discovery is at the moment.
15    And, obviously, we have the special master in place.  And
16    from everything that I've seen, the parties have really
17    engaged with that process.  And I appreciate that, that
18    you've engaged with that process.
19            You know, I note that I'm reading obviously all
20    these filings.  Everything you're filing with the special
21    master, I'm seeing all of that.  And so for both sides, I
22    want to make a couple of just overarching comments, and I
23    don't want them to be taken as I'm taking one side's view or
24    the other side's view of discovery.  It's more where I see
25    issues identified that I want to make a comment on them.
```

1              So I will note first on the States' side of the
2      ledger, so to speak, on discovery, you know, I've seen a
3      number of filings from Google that are complaining, you know,
4      that are raising issues about the States' engagement with
5      discovery, the production of documents and privilege logs and
6      that.  And I think it goes without saying that given the
7      discovery schedule we have, to the extent that all of the
8      states that are part of this coalition have not been fully
9      engaged in doing what they need to do in terms of discovery,
10     whether it's initial disclosures or response to discovery,
11     that really needs to be addressed.  And particularly given
12     the schedule in this case and the deposition practice that's
13     going to be ongoing, and needing to sort out document issues
14     and privilege issues in as timely a manner as possible, it's
15     going to be very important that the States are doing their
16     part on discovery.

17             And, look, I recognize that in a case like this,
18     given the claims and given the parties, there is going to be
19     some asymmetry in the discovery that's going to happen.  In
20     the documents and the ESI that's going to be produced by each
21     side, there's going to be asymmetry.  There's going to be,
22     and has been, a lot more being produced, you know, by Google.
23     But the States still have their own records that are relevant
24     and their own information that's relevant.  And I want to
25     make sure the States are focused on providing all that to

1    Google in as timely a manner as possible.

2            On the Google side of the ledger, I'll say that,

3    you know, everyone in this courtroom acknowledges that there

4    has been a tremendous amount of documents produced -- I don't

5    know if the number is six million at this point, that's the

6    number I see thrown around -- but I think it's important for

7    everyone to recognize that the mere fact that a certain

8    number of documents has been produced does not necessarily

9    mean So we're done, or, We're effectively done with document

10   production, if there are more materials that are relevant and

11   that should be produced.

12           I understand that it is a marker, it's an important

13   data point, but I don't think it means that we're necessarily

14   at the end of the road.  I think the consideration remains if

15   there are discovery requests that are out there that are

16   relevant that are appropriate, that production of materials

17   and information is still on the table.

18           Those are just overarching observations.

19           Two other things I want to note on discovery.  One

20   is that I don't know if this is necessary -- I think this

21   is -- well, I know this is covered somewhat in the report and

22   recommendation, but I will say that with regard to non-party

23   Meta in this case, if the States are going to want to do

24   discovery, I do think you're going to need to do a motion.

25   Just to be clear, I think you'll need to do a motion.

1           The other point I want to raise has to do with --

2     again, this is discovery related -- in your filings, this is

3     your briefing to the special master in advance of this

4     February 22 conference with the special master, there is a

5     lot of back and forth, but I'll say maybe more so on the

6     States' side, in terms of talking about issues with regard to

7     things like the dashboards, things like some of the I guess

8     you would call it the technical documents and those

9     materials.  And it feels like there is back and forth about

10    what records Google has, what records Google keeps, whether

11    it's ESI format or otherwise.  And at least in the States'

12    filing, there are reflections of what's happened in

13    meet-and-confer discussions about that.

14          And in order to approach these types of areas of

15    discovery most efficiently -- and I think this goes both

16    ways.  By the way, I think there are issues that Google has

17    raised that also call this to mind.  I don't know if the

18    parties have considered this.  I don't know if the parties

19    have already had discussions about this.  But I would at

20    least suggest that the parties think about records custodian

21    depositions.

22          And those kinds of depositions -- this is a general

23    matter, particularly in complex litigation -- can be

24    extremely helpful, they can be extremely useful in moving

25    things forward.  And I'll just put this on the table.  They

1    can, in many instances, sort of take out that middleman of

2    you're working through the other side's counsel about what

3    they have and where they have it and what it looks like, and

4    you're going back and forth and back and forth and back and

5    forth.  And you take a records custodian or more than one

6    records custodian depositions and you're kind of cutting out

7    the middleman.  You're getting straight to the heart of

8    what's there.

9           My concern about, you know, endless -- or not

10   endless back-and-forths, but back-and-forths that don't

11   get -- don't make a lot of progress is that they can really

12   drag out the discovery process.  And let's face it, the

13   discovery deadlines we have in this case are ambitious.  I

14   think they are doable for the parties.  But I do think that

15   looking at something like record custodian depositions might

16   be very wise for the parties.

17          And if it means that -- and I mean for both sides.

18   I mean, I can see Google wanting them.  I can see the States

19   wanting them.  I think it might be very helpful moving this

20   forward.  So I'm going to suggest to the parties that you

21   think about doing that and talk to the special master about

22   doing that if you would like.

23          But if it means we also need to do any adjustments

24   on depositions or numbers, you know, I'm open to hearing

25   that.  Although, I think the parties have a pretty good

1   amount of depositions already available.  So I will -- I will

2   say this, even though I probably don't need to say it, the

3   key to those depositions is having the right person or

4   people; right?  Those kind of depositions work when you have

5   the right people.

6          Let me see.  I think -- all right.  I think that

7   covered what I wanted to say about discovery.  So let me open

8   it up.  First of all, I will hear from both sides on the

9   topics I visited about on discovery.  If there's anything you

10  want to say about those, I'll hear from both sides on that.

11  And then I'll ask you if there's any other topics you want to

12  hit on.

13         Mr. Lanier.

14         MR. LANIER:  Thank you, Your Honor.  First of all,

15  I wrote down you giving us four matters, in my enumeration.

16         Number one.  We better have our house in order and

17  all of the states better be doing their discovery

18  obligations.  I wrote mine in all caps and underlined it.

19  The message has been received.  Number two -- and I don't

20  want my side to think that I failed to state that, you know,

21  that they're working hard, they've been producing.  We just

22  produced a boatload more and all of that kind of mess.  I

23  understand that.  But your statement in and of itself is

24  understood and the message has been communicated.  Thank you

25  for it.

1        Number two.  Google's produced a lot of documents
2   but it doesn't mean that it's done.  If it's relevant, it
3   should be produced.  Thank you for that.  We do continue to
4   struggle with them, but I will save those struggles right now
5   for Special Master Moran because that's where you've placed
6   those struggles, and he's on top of it.
7        Number three.  If States want a Meta discovery,
8   then States are going to need to do a motion.  Thank you for
9   that insight.  We'll proceed under those circumstances.  I
10  have no argument with that.
11       Number four.  Take record custodian deps.  You
12  would almost think you've practiced law before you went on
13  the bench.  You're right.  That's what we are planning to do.
14  That's the right thing to do.  We will proceed.  I know that
15  next week we're putting out a number of 30(b)6) deposition
16  notices.  And I will make certain that the record custodian
17  depos are moved to the front of the line because that is our
18  back-and-forth argument, and so we will get moving on that as
19  well.
20       THE COURT:  Let me comment on that quickly because
21  I think that's exactly what I'm -- what my thought was that
22  maybe it makes sense to front load those.  Why?  Because the
23  game here is to try to make sure that you've got everything
24  or nearly everything done on the document production and all
25  of this, at least as much as possible, at the time when you

1    start taking all of your other depositions, for reasons I'm

2    sure are obvious to the experienced counsel here.

3           MR. LANIER:  It makes all the sense in the world.

4    And so it will be done, and you'll see, and you'll hear from

5    that as well.

6           As for your last statement, then are there any

7    additional issues, you have covered our waterfront, Your

8    Honor.  So thank you for that.

9           THE COURT:  All right.  Great.

10          Okay.  So Mr. Yetter, let me get your comments on

11   sort of this group of discovery thoughts, issues.

12          MR. YETTER:  Yes.  Thank you, Your Honor.

13          Your first point was about -- was about engagement

14   by the States, and this is an issue that -- this is one of

15   the issues that we wanted to raise today, and we appreciate

16   the Court raising it.

17          You may or may not remember, but almost three years

18   ago to the day, we had a status conference before the Court.

19   Most of the same people were here.  And one of the things

20   that the Court brought up was that you understood, given your

21   practice, that multi-state litigation can sometimes be a hard

22   thing to manage on both sides, certainly for the States to

23   speak as one voice, and then for the other side, the opposing

24   side, in this case Google, to hear and to coordinate with one

25   voice.

```
 1              And at the time -- this is in the status conference
 2     of February 4th, 2021 -- you suggested that the States should
 3     create or implement or adopt protocols so that all the States
 4     could sign off on agreements, and that you were looking to
 5     Texas as the lead state to make sure that's happened.  And
 6     the counsel for the States said that -- he pledged that
 7     Google wouldn't have to check with every single state, they
 8     wouldn't have to be -- when they were making agreements, and
 9     that Texas would act akin to a liaison counsel in the MDL.
10              The reason I say all this is that three years
11     later, we're still having this issue of herding cats.  We
12     have brought this up with the special master, but it is
13     something that I wanted to raise with the Court here because
14     it isn't just a discovery issue.  One example, a recent
15     example, and this is a discovery matter, but on Monday, the
16     States called us and said they wanted to confer about some of
17     the issues they had with discovery.  And we, in turn, said,
18     okay, we'll be prepared, and we want to talk about some of
19     the issues we have with the States' production.
20              And when we got together on Monday, there was a
21     group of representatives of counsel for the States and they
22     were prepared to talk about what they wanted from Google, but
23     they told us one of the Texas Attorney General -- Assistant
24     Attorney Generals wasn't there and so they couldn't talk
25     about the discovery that Google wanted from the -- or the
```

1    issues that Google were raising with the States.  And we

2    rescheduled it finally for tomorrow.  So we're going to get

3    together with them for tomorrow.

4           And I'm not complaining that counsel did anything

5    wrong.  But they don't have a protocol yet, Your Honor.  We

6    are at times not even able to confer about issues because

7    either that lawyer -- and this is a lawyer just for the State

8    of Texas -- is not available or the lawyers for the States

9    are not available.

10          So I wanted to raise that with the Court for the

11   Court to give some thought to encouraging or maybe even

12   directing the States to reach some consensus among the States

13   so that we know -- Google knows -- when we're talking to this

14   representative or this counsel, they are talking on behalf of

15   all the States, or whether we need to go state by state.  So

16   17 states, it would make it less efficient, but that is still

17   an issue three years later.  So that was your point number

18   one.

19          Your point number two.  We heard it.  We understand

20   that if there is relevant discovery left, that Google will

21   focus on that.  Google's position for much of the new

22   discovery that we've gotten is that it's already been

23   produced.  But we've heard the Court's comments and we will

24   certainly take them to heart.

25          The Meta issue, number three, is an issue really

```
 1   more for the plaintiffs.  The Court knows the situation with
 2   Meta.
 3           And issue number four.  I do want to pause a little
 4   bit more on that, and this is about the records custodians.
 5   And we too -- as counsel said they would be doing, the States
 6   would be doing, we too plan on getting out 30(b)6 notices in
 7   the next week or two, before the end of the month, hoping to
 8   have depositions -- 30(b)6 depositions in March.  Records
 9   certainly will be one of our topics.  And so we will be
10   working on that as well, as well as other topics.
11           And the reason -- and I want to explain one reason
12   why we are going to be going the 30(b)6 route, Your Honor.
13   And this is kind of late-breaking news and I'm raising it
14   with the Court because this is something that the Court --
15   this is an issue that the Court has gone over before and it
16   relates to one of the pending motions to dismiss.  Last
17   night, just as is often the case -- and counsel pointed this
18   out in an earlier status conference, the day before or the
19   days before a status conference there's a lot of scurrying
20   around.  And yesterday, before today's conference, we got,
21   for the first time, counsel for Louisiana and North Dakota --
22   maybe not the first time, but they reached out and produced
23   documents, 158 documents from Louisiana and 160 documents
24   from North Dakota.  None of the other 17 states produced any
25   more documents, in light of despite all the recent back and
```

1    forth between the parties.  And late last night, just about

2    quarter to midnight, we got new discovery responses from all

3    17 states that were served on us.

4         And the reason I'm bringing it up, Your Honor, and

5    the reason why it relates to the pending standing motion, the

6    jurisdictional motion to dismiss, is you might recall that

7    originally in this case counsel for the States said that they

8    were proceeding all in parens patriae, on behalf of every

9    consumer, every advertiser, every publisher; that was in

10   November of 2022 counsel said that -- in 2021 counsel said

11   that.

12        And then just last November of 2023, counsel

13   said -- talked about the who, what, when, where, and he said

14   they're, quote, "all of the above."  This was in November.

15        Then in December, they filed new -- the States, all

16   17, filed new discovery responses and they changed that and

17   they said that 11 states of the 17 were not proceeding in

18   parens patriae, but only as sovereigns.  That was in

19   responses on December the 6th, 2023.

20        And then we had a hearing about a week later, on

21   December the 14th, 2023, and this issue came up.  And counsel

22   for the States said that Google had complained because of --

23   and I'm quoting from the transcript at pages 49 and 50, that

24   Google had complained "because of the parens patriae issue

25   and the way we have narrowed and ferreted that down.  And we

1    have.  We have been very careful."

2         "Now, Texas at this point has a policy in the

3    Attorney General's office where they are not pursuing things

4    under parens patriae like this.  And so we've made that

5    adjustment and made that clear, and we have informed them of

6    that."

7         And they did.  The interrogatory answers said that

8    11 of the states of the 17 were not proceeding in parens

9    patriae.  One state was doing both, and five states were only

10   proceeding in parens patriae, not sovereign.

11        I know this is a long lead up, Your Honor.  But

12   last night, we got new discovery responses that did a

13   complete 180, and now all 17 states are proceeding in parens

14   patriae.  This is after we filed our jurisdictional motion.

15        And this is -- I will say this is one of the

16   concerns that we have raised more than once is the States

17   have not been willing to pin down where they're at.  And now

18   they have completely changed.  Tomorrow they're -- today

19   they're going to file their response to the jurisdiction

20   motion.  And just last night, they completely changed their

21   factual basis and their interrogatory answers.

22        So that's a very significant thing from our

23   perspective, Your Honor.  And one of the issues that has

24   caused us -- has delayed our own discovery is we don't know

25   where the States are.  And so these are very detailed.  I

1    believe it was a 96-page supplemental interrogatory answer

2    with two appendices, and we are still digesting it.  But

3    there's a tremendous amount in there that, three years into

4    the case, we are just learning and that is different from 60

5    days ago.

6              THE COURT:  So I want to make sure I understand

7    this sort of chronology from Google's standpoint, because I

8    certainly will be visiting with Mr. Lanier.  At the time that

9    you filed your 12(b)(1) motion, your understanding was eleven

10   states were proceeding basically as the State qua State,

11   we'll call it sovereign capacity, five states were proceeding

12   only in a parens patriae.  So I say only as the State qua

13   State.  Five states proceeding under parens patriae, and one

14   state proceeding on both grounds, that was at least your

15   understanding at the time you were filing that, which is, you

16   know, about a month ago.

17             MR. YETTER:  Correct, Your Honor.  And that one

18   state was Nevada, and this comes from their interrogatory

19   answers on December the 6th, 2023.

20             THE COURT:  All right.  And now, as of yesterday,

21   you're saying that the newest information you have is that

22   now all 17 are proceeding under parens patriae.  Any other

23   changes?

24             MR. YETTER:  Your Honor, there may be lots of other

25   changes.  We just haven't been able to kind of really digest

1    the new supplemental interrogatory answers.  But that's one

2    of the things we focused on.  And it's clear because

3    they're -- the remedies that they're seeking, they make it

4    clear whether it's in the parens patriae capacity or in a

5    sovereign capacity.  And so that's how we could at least

6    quickly be able to convey to the Court that now all of the

7    states, all 17, have some claims and some relief that they

8    are seeking in the capacity of parens patriae.

9              THE COURT:  All right.

10             MR. YETTER:  Okay.  That issue, Your Honor, we

11   raise it only because it could well have a very -- we don't

12   know what their response to the jurisdictional motion's going

13   to be.  But under Rule 37, we don't think you're able to

14   withhold information and then use information that's untimely

15   disclosed in response to a motion.  We don't know.  I'm

16   not -- that may be premature to say what they're going to do

17   with it.  But at least it is a significant pivot again, a

18   late-breaking change that has impacted our process of

19   discovery, and we wanted to make sure the Court was aware of

20   it.

21             THE COURT:  All right.

22             MR. YETTER:  And with that, with those two points

23   about the meet and confer process, kind of herding the cats

24   point, and the change in position on who they represent,

25   that's all the issues that we have, Your Honor, on behalf of

1   Google.

2               THE COURT:  All right.  Thank you, Mr. Yetter.

3           So Mr. Lanier, let me give you an opportunity to

4   respond to both of those issues in either order that you

5   want.  So the one I'm going to call -- we'll call it protocol

6   issue, we can talk about that, and then the other would be

7   addressing sort of the chronology of the capacities in which

8   the states are proceeding and, you know, where we stand

9   today.

10              MR. LANIER:  Thank you, Your Honor.  And I

11  appreciate the chance to respond.  I'll take them in that

12  order.

13          The first one, I think the assertion that the State

14  of Texas has failed in its responsibility to herd cats is,

15  um, not only what I would term in my Lubbock jargon as a

16  little ticky-tack, but I would also say be real careful with

17  what judgment you throw rocks, because this was brought up in

18  the special master conference that we had with David Moran,

19  and in that, Mr. Yetter again complained that the States

20  seemed to have to go back and get authority from 17 different

21  states to state a position.

22          And about 15 minutes later in the conference, the

23  judge said, "well, are you agreeable to doing these expert --

24  this discovery in this deadline in this timeline?"

25          And I said, "Absolutely."

1        And he said, "Google, are you agreeable?"

2        "Well, we've got to go back and get authority.  We

3    don't have authority."

4        In the same conversation where they've argued that

5    the State doesn't show up with authority from 17 different

6    clients, they don't often have authority for one.  I cannot

7    list the number of meet and confers that we've had where they

8    say, "Well, we can't decide that," in a meet and confer where

9    the whole purpose of such is they've got to go back and get

10    clearance from their clients.

11        So to insinuate the States are off base and to use

12    as an example what happened with this recent call which, if

13    I'm understanding -- and I'll clarify, I wasn't on the call,

14    but I'm given some pretty good notes from my team, and the

15    notes from my team say that the agenda items that Google

16    wanted addressed by Mr. Young -- Trevor Young, who was not on

17    the call -- were brought to our attention an hour before the

18    call when the call had been scheduled for three days.  And so

19    Mr. Young didn't have any need to be on the call as it has

20    originally been scheduled as a meet and confer.  But then the

21    new matters get added on an hour beforehand, and it's too

22    late for him to get on the call.  So the call has been

23    rescheduled for tomorrow.  To bring that to your attention,

24    for me, is ticky-tack.  But I will say this, that we have

25    worked hard to have authority in the places where we can have

1    it.

2            So, for example, Google sends out 17 different

3    discovery letters.  Texas coordinates and gives all 17 in a

4    single response.  There have been delays in getting

5    everything figured out.  That is part and parcel of this

6    process.  That's not something that's new to us.  That's not

7    something unique to Google -- I mean, to the States.  It's

8    certainly an issue for Google as well.  And here I'm bleeding

9    over into the parens patriae argument.

10           But we live in a world where lawyers are doing the

11   best they can in a complicated case.  And so we'll have

12   Mr. Yetter, for example, at the last hearing say, quote,

13   "Disputes the DOJ raised got resolved.  How dare Lanier raise

14   these disputes."

15           "Where the DOJ" -- this is a quote, on transcript,

16   page 10, January 18th, "Where the DOJ raised some concerns,

17   Google addressed them and the DOJ dropped them."

18           And we turn around and go back to the DOJ, and the

19   DOJ says to us, "Oh, no, we're still having meet and confers

20   over those this week."

21           I'm not throwing that at Mr. Yetter's feet saying

22   that he was misrepresenting to the Court on purpose, but

23   those are ticky-tack things; that one of the reasons

24   Mr. Moran exists in this world is to try and navigate through

25   these things.  It's the continual resculpting of the timeline

1    that is done by Google.

2             Where we filed the case in 2020, but they point out

3    we don't do discovery in 2021 and never tell anybody, that's

4    because they moved on the JPML and all discovery was stayed.

5    And we move into 2022 and we don't do discovery.  Well,

6    that's because there's briefing in the MDL from January until

7    September.  And our requests for production aren't even

8    allowed to be filed until January of 2023.  And then Google

9    doesn't start producing documents until May, and they just

10   give us what they gave the DOJ.

11            And so, yes, we're trying to figure out all of

12   these things and we're trying to make sure we make the best

13   representations to the Court we can.  We load and review

14   their documents in June and July of last year, and we start

15   taking depositions.  But then we stopped in August because we

16   find out they've got 16.1 million new documents.  And we

17   didn't start with the custodian depos like we should have.

18            And then in September, October, they produced

19   another 12 million pages.  We load those documents in in

20   November.  We file our DTPA document request and discovery

21   November 10th; it's still unanswered.

22            And so in the midst of that to say, Well, yes, but

23   when you supplemented your discovery, you refined your claims

24   somewhat and didn't have them, you know -- okay, fine.  We'll

25   go yell at the attorney general for Idaho for changing their

1     minds or finding out something different.

2          I mean, we're doing the absolute best we can.  And

3     to say that this has altered the discovery to be done by

4     Google, to me -- I won't say it's disingenuous, but I will

5     say it shouldn't.  And if it's altered their discovery in

6     some way, I'd like the specifics of how it's altered it,

7     because I'm glad to try and help sculpt an appropriate remedy

8     for them.  It doesn't need to be brought to your attention

9     until we've had a meet and confer on it.

10          And I'm glad to figure out how we have altered

11    their discovery because of the change in what's parens

12    patriae and what's not.  And if they will tell us how we have

13    altered their discovery, we will try and shape an appropriate

14    remedy.  But, I mean, my response is that this is not what we

15    should be arguing about in your court, in my opinion, right

16    now.  Thank you.

17          THE COURT:  All right.  Before I comment,

18    Mr. Yetter, do you -- would you like any rebuttal on that?

19          MR. YETTER:  Very, very briefly, Your Honor.

20          I -- obviously, counsel feels aggrieved about

21    various things, but it really doesn't change the fact that we

22    really need a protocol on behalf on the side of the States to

23    allow us to know who to deal with.  We did send 17 different

24    discovery deficiency letters because at one point we just

25    decided we needed to deal individually with 17 different

1    states.  That's inefficient, it's time consuming, and it's

2    reflective of the fact that the States don't have a protocol

3    right now for coordinating.  We would welcome that.  We would

4    welcome the Court's guidance or even direction to the States

5    to do their best to coordinate so that we know who we're

6    dealing with.

7            This issue is something we have raised, as the

8    Court probably knows.  We've raised it with the discovery

9    master.  That was one of the very first issues we raised with

10   the discovery master because we were not making any progress

11   just specifically on discovery in the meet and confers

12   because we were not finding people on the States side that

13   could speak on behalf of all of the States.

14           This is not an issue of whether you can agree on

15   the spot or not.  It's an issue of whether you're a

16   representative of that whole side of the case.  We don't

17   expect either side to agree on the spot to any new issues

18   that are brought up, but at least you should be able to

19   negotiate on that behalf.

20           And lastly, or secondly, on the change in position

21   of the States from sovereign, to not sovereign, to parens, to

22   not parens, that's a fundamental issue in this case.  It

23   changes everything about the case.  It changes our discovery.

24   It changes our motion practice.  It certainly changes what we

25   could expect to see at trial.

```
 1            It is not clear -- although we haven't fully
 2    digested the new discovery responses, when the States now say
 3    despite the Texas policy that it's not going to proceed in
 4    parens patriae, all the States are, but at least at this
 5    stage it's not entirely clear.  Are they representing all
 6    advertisers in the states?  All publishers in the states?
 7    All the users or consumers?  And that generates a tremendous
 8    amount of discovery from our end.  Or, you know, we thought
 9    that most of the states were proceeding as sovereigns, which
10    means we're just dealing with them as a government, which
11    made their lack of documents that they produced more
12    confusing because if, as a government, they're using
13    advertising technology products, there should be some
14    documents about that.
15            But the bottom line is as of last night, all of
16    this is back up in the air because we now have a completely
17    different position.  So we raise this with the Court because
18    this is something that's been discussed with the Court more
19    than once.  It's something that we think may affect the
20    current pending jurisdictional motion, and it's something
21    that clearly affects this case going forward.  So that's the
22    only other comments we have.
23            THE COURT:  Let me ask you a question, Mr. Yetter,
24    just in terms of when you're sending out discovery requests
25    or if you're sending out notices, are those ones that you
```

1    have been and anticipate that you're just going to send them

2    to Texas counsel, even if it's, let's say, you send

3    requests -- let's say they're RFPs and you want them from all

4    the States, the same types of materials.  Are you able to

5    just send that to Mr. Lanier and say, "These are requests

6    that we need this stuff from all the states," and then you're

7    able to get responses to that?  Or what you're saying is

8    there is a problem on the receiving end where you have to be

9    then in contact with the individual states.

10        MR. YETTER:  Yes, Your Honor.  It is not hard to --

11   I don't believe we've had any trouble sending discovery to

12   all the States through one point of contact, through the

13   current counsel here.  But it's getting back answers from all

14   the states, and then discussing with them where we think

15   there are deficiencies or gaps, or just asking why the

16   response has been so meager.

17        A good example is the privilege logs, Your Honor.

18   As the Court has read, there are 17 states, and only 2 of

19   them have given us any privilege log at all, so 15 haven't

20   given us any privilege logs.  And we've tried to deal with

21   counsel here, you know, liaison counsel, so to speak, but we

22   haven't gotten any progress on that.  And so we finally

23   decided -- this was in the last six weeks -- to send out

24   individual deficiency letters on the discovery that we sent

25   common to all the states, to each of the states, one by one,

1    to 17 different states.

2           So the issue is not sending it as much as getting

3    back responsive -- responses from each of the States and then

4    being able to dialogue on those responses.

5           THE COURT:  All right.  But I take it you haven't

6    had any state or states indicate to you that something Texas

7    represented or something Texas said they don't agree with,

8    they're not going to do it, or they have a different

9    position.  It's more just that when you're seeing these

10   deficiencies from particular states to particular discovery

11   requests, that, I suppose from a feeling of efficiency, you

12   would want to direct those to the states directly.  Is that

13   fair, or am I misunderstanding that?

14          MR. YETTER:  Yes, Your Honor.  Mr. McCallum can --

15   he's been more on the front lines on that, and I will let him

16   address that specific question.

17          THE COURT:  Mr. McCallum, just so you know where

18   I'm going with this -- and you can come up, Mr. McCallum --

19   where I'm going with this because you'd want to follow up

20   with Mr. Lanier, you know, there are some of these things

21   that it's I would suppose understandable that there needs to

22   be some coordination.  Let's say that it has to do with

23   privilege logs for, you know, the State of Utah or something.

24   And Texas could be, you know, still leading the group, but

25   there's going to need to be somebody from Utah likely

 1   involved in that, and so certain of the aspects of this are

 2   going to involve that.  But what I'm wondering is whether or

 3   not there are problems writ large with just, you know, states

 4   basically balking at what Texas has promised or what Texas

 5   has said the States will do.

 6        I guess what I'm looking for is do you have

 7   specific instances where there's problems created because it

 8   appears the States are not actually working under the

 9   guidance of Texas to complete discovery.

10        MR. MCCALLUM:  I can point to one very specific

11   example, Your Honor, which is back in January of 2023 when we

12   issued our initial requests for production on the plaintiffs

13   in the MDL, when the States were still a part of the MDL, and

14   we did think we had an understanding with Texas that we had

15   an e-mail agreement that we could serve discovery requests on

16   Texas and that service on Texas would be good as to service

17   on all states.

18        And then we had an issue when none of the 17 states

19   timely responded to any of our requests for production or our

20   interrogatories.  There was some confusion that followed and

21   some discussion, and a number of the states did, in fact,

22   reach out to us and say that while Texas may function as

23   their liaison for certain purposes, they were not authorized

24   to accept service of discovery and certain other documents on

25   their behalf.  And so we have had some issues getting in

1   touch with various states about these --

2             THE COURT:  Do you recall how many states that was?

3             MR. MCCALLUM:  It was somewhere in the order of

4   three or four, but I would have to go back and check that,

5   Your Honor.

6             THE COURT:  All right.  That's helpful.

7             Anything else you wanted to say?

8             MR. MCCALLUM:  No.  I mean, we're happy to work

9   with the States to try and work out these sorts of

10  coordination issues.  I mean, the most recent example is the

11  one that Mr. Yetter pointed out on Monday of this week where

12  again we were hoping to engage with all of the states on the

13  requests we had of them, and that meeting has been postponed

14  until Friday.  So we would very much like to work with the

15  States to work out these protocol issues, perhaps with the

16  guidance and/or direction of the Court.  But I'll leave it

17  there unless the Court has any questions.

18            THE COURT:  And the most recent materials you got

19  yesterday, for example, that had the change on parens

20  patriae, I take it that's something that came from Texas on

21  behalf of all those states.

22            MR. MCCALLUM:  That's correct.  It was sent by the

23  Texas OAG.

24            THE COURT:  All right.  Thank you, Mr. McCallum.

25            Thank you, Mr. Yetter.

```
 1              All right, Mr. Lanier.  Yeah, I would like to hear
 2    comments -- you know, let me just elaborate on the point I
 3    was exploring with Mr. McCallum, which is that understanding
 4    that with 17 states, there are going to be aspects of how
 5    discovery is conducted that's going to require whether if
 6    it's from the attorney general's office or somebody from that
 7    particular state to have involvement.  I use the example of
 8    privilege issues, for example, but I'm sure there's any
 9    number of others.
10              But it is obviously important for efficiency
11    purposes that Texas is able to confirm that other than where
12    there are specific issues that require, you know, individual
13    state's involvement, participation, that Texas is able to
14    coordinate, obviously, not just the receipt of discovery
15    requests, but also the delivery then of those discovery
16    responses, and then also, you know, we're going to be
17    coordinating depositions.  And can Texas, you know, do that
18    without issue.
19              So I would like to get your comments on that.  And
20    I don't know if you have got any kind of a protocol or MOU or
21    something like that among the states on these issues.  But if
22    you could speak to that, and then maybe speak to the point
23    Mr. McCallum made about, well, we've had at least one
24    incident, or one or two incidents where you had some states
25    that were saying, you know, "Texas doesn't speak for us on
```

1    this."

2            MR. LANIER:  Yes.  Okay, Your Honor.  I'll break

3    this out and try to provide the structure you asked for

4    first, and then I'll deal with the examples.

5            The structure that we've got is we, the Lanier Law

6    Firm and I believe probably the Keller Postman firm as well,

7    represent basically a handful of states as counsel.  We are

8    retained counsel, so we certainly speak on behalf of those

9    states.

10           A number of other states have not retained us, but

11   have given us authority to shepherd the litigation within

12   their oversight.  An example for that might be the State of

13   Alaska.  And so the State of Alaska has participated in

14   certain aspects of this case development, even though we do

15   not directly represent the State of Alaska.

16           In those situations, Mr. Trevor Young, who has been

17   careful to try to be here at each of your hearings,

18   Mr. Trevor Young is, within the OAG office of Texas, in

19   charge of interfacing with all of the states and has

20   representatives from all OAG offices that he interacts with.

21   So if there is a need for authority, if there is a need for

22   any coordination, Mr. Young sees to that, and he's done so

23   quite effectively, considering all that's gone on.

24           Having said that, your probing of an example from

25   Mr. Yetter, which was then addressed by Mr. McCallum, of in

1   January of 2023 they thought that service on Texas was

2   service on all, and several states, three or four, said that

3   Texas is not authorized to receive their discovery, there's

4   no question but that there are states who are entitled to get

5   the discovery themselves, in spite of the fact we're trying

6   to coordinate the best that we can.  We can't suddenly expect

7   an attorney general in another state to tell Ken Paxton "You

8   have the authority to receive discovery and to bind me."

9        There are politics involved.  There are state

10  issues involved.  And so we -- if I have ever represented to

11  the Court that Ken Paxton has the ability to make decisions

12  and to take on all of those filings on behalf of everyone,

13  then shame, shame on me.  I certainly never meant to make

14  that.

15       What I did mean to say is that Texas would work on

16  being the coordinating factor with these various States so

17  that you don't have to have a hearing with 17 AG reps in here

18  standing up to the microphone, each taking their turn.

19       By the same token, when we've had the meet and

20  confers, we don't have 17 state AG offices on the meet and

21  confers because we don't need them on that.  There are times

22  where we've got to say, "We will go find out," just as

23  Google's lawyers have to say, "We will go find out," from

24  Google, their actual client, as opposed to ours where we

25  serve in a coordinating capacity.

1          So I think it's working.  It may not work as tidily

2     as everyone may like.  But to the extent that Google was able

3     to serve their discovery, they served it on all 17.  We gave

4     a concerted united response combining all 17 into one

5     response.  We're doing the best we can to help facilitate.

6          Google has deficiency letters.  Mr. Yetter is

7     correct.  Those deficiency letters should be tailored to each

8     state.  If there is a complaint that State of Louisiana is

9     deficient in A-B-C, that should be delineated in a letter.

10    And if we can't get an adequate response to that to them,

11    then they can deal with the State of Louisiana, or you can

12    call that judge -- or that AG into your court, or Special

13    Master Moran can call them onto the phone.

14         But a deficiency letter going to the state is the

15    right thing to do.  And we'll take care of trying to tend to

16    that as best as we can.  But the bottom line is, is we

17    represent only a handful of those states, even though we try

18    to coordinate between all 17.  And, frankly, Mr. Young has

19    done an incredible job and I commend him in it.

20         THE COURT:  All right.  Thank you, Mr. Lanier.

21         All right.  You know, I am going to state the

22    obvious here, which is we could obviously be in a situation

23    where each of these States was proceeding independently, they

24    could all have counsel in the room, or some of them might.

25    And so I know, as Mr. Yetter recalls, and as Mr. Lanier

1    recalled, we had discussions early on in this case about the

2    ability of Texas to coordinate with the other States and what

3    is the extent of that coordination.

4         And I don't know that it may not be helpful here to

5    go ahead and maybe have -- you know, maybe have an advisory,

6    I'm going to say if we have an advisory submitted by the

7    States that just walks through that, what Mr. Lanier just

8    very helpfully walked through, that the Lanier firm

9    represents a handful of states, including Texas; that Texas

10   through the Lanier firm and through folks working I think in

11   its own attorney general's office, has taken on a

12   coordination role.  But then to understand the limits of that

13   coordination role, it may be helpful for an advisory with the

14   Court, and then the parties are on notice.

15        Look, I think that doesn't mean we're not going to

16   face some issues, particularly given the number of states

17   involved here.  But that may be helpful in just making sure

18   everybody understands everybody's on the same page.  And I

19   have no doubt issues are going to arise that may require help

20   from the special master or intervention from the Court.  But

21   it seems like there may have been some confusion or there may

22   be some ongoing confusion about exactly the breadth and scope

23   of Texas's coordination with the other states.

24        And, look, this gets down into some of the granular

25   stuff; right?  I mean, what kinds of agreements can Texas

1    make on behalf of all the states on discovery; right?  That's

2    very important.  There are issues we've talked about in terms

3    of acceptance of documents.  So, you know, I will say on the

4    good side of the ledger, right, I haven't seen states coming

5    in -- or Texas, you know, there's a certificate of conference

6    that says the States don't have an issue with this and then,

7    you know, we have a state come in and say, "Wait a minute.

8    We don't agree to that."  So but I do think an advisory maybe

9    helpful, so I may go ahead and ask for that to be submitted.

10           The other thing I will say that I want to make sure

11   the parties are aware of is with regard to this parens

12   patriae thing, I think everybody recognizes this is

13   significant in many ways in the case.  That's why the States

14   have to carefully, carefully decide in what capacity or

15   capacities they're suing.  So I think we all appreciate

16   that's important.  And if, you know, alterations in where the

17   States are mean that we need supplements or additions to

18   briefing, or other things need to be done, you can certainly

19   have a motion practice on that.  I'm going to be open to

20   that.

21           I don't need to tell anybody that the point we are

22   where we are in the case, you know, we want to tie down these

23   issues.  They're very important both with regard to

24   dispositive motions -- and I can see them being significant

25   as you work through discovery in terms of the proof that's

1   being developed by the parties.  So I naturally want to tie

2   that down, but I'll consider anything in regard to, if

3   there's motion practice, on needing to do some additional

4   briefing based on changes in the States' position.  And I

5   also don't discount that discovery, the process of discovery,

6   could then have an effect on where the States are on these

7   issues.  I recognize it could.

8           All right.  Let me see.  Anything else from

9   counsel?  Mr. Lanier, anything else from the States?

10          MR. LANIER:  No, Your Honor.

11          THE COURT:  All right.  Mr. Yetter, anything else

12  from Google?

13          MR. YETTER:  No, Your Honor.  Thank you for your

14  patience.

15          THE COURT:  All right.  We will stand in recess --

16  oh, before we do that, before we stand in recess, I do want

17  to say that I appreciate your advocacy.  We have all of my

18  clerks in here, plus we have some judicial externs from SMU

19  Law School, and we told them to attend this hearing because

20  they are going to see the finest advocacy from very

21  experienced and accomplished lawyers.  And so I thank you on

22  their behalf.  I think it's a good -- you provide a good

23  example of fine advocacy.

24          MR. LANIER:  Then I apologize for not letting

25  Mr. DeRose argue.

1          THE COURT:  All right.  We will now stand in

2    recess.  Thank you.

3          THE COURT SECURITY OFFICER:  All rise.

4              (Adjourned at 11:22 a.m.)

5                  *     *     *     *     *

6          CERTIFICATE OF OFFICIAL REPORTER

7

8

9          I, Gayle Wear, Federal Official Court Reporter, in

10   and for the United States District Court for the Eastern

11   District of Texas, do hereby certify that pursuant to Section

12   753, Title 28 United States Code, that the foregoing is a

13   true and correct transcript of the stenographically reported

14   proceedings held in the above-entitled matter and that the

15   transcript page format is in conformance with the regulations

16   of the Judicial Conference of the United States.

17

18              Dated 18th day of February 2024.

19

20

21          /s/ Gayle Wear
             GAYLE WEAR, RPR, CRR
22          FEDERAL OFFICIAL COURT REPORTER

23

24

25