**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| The State of Texas, et al., | |
| Plaintiffs, | Case No. 4:20-cv-00957-SDJ |
| | Hon. Sean D. Jordan |
| v. | |
| Google LLC, | Special Master: David T. Moran |
| Defendants. | |

**PLAINTIFF STATES' OPENING BRIEF TO THE SPECIAL MASTER**
**FOR THE FEBRUARY 22, 2024 HEARING**

## TABLE OF CONTENTS

**Page**

I.    The States' request for a concrete timeline from Google for its privilege log re-review and rolling productions of revised logs and de-designated documents.............. 1

II.   The States' request for linked documents and metadata. ............................................. 2

III.  The States's requests for relevant technical documents and data. ............................... 4

      A.   Dashboards................................................................................................... 4

      B.   Links and document repositories ................................................................... 7

      C.   Reproduction of Word documents in native form ........................................... 9

      D.   APIs, programming guides, design documents, onboarding and training materials, and other technical documents .................................................... 11

      E.   Source Code ................................................................................................ 12

IV.   The States' request for trial transcripts and exhibits from the DOJ Search trial............ 13

V.    Texas's requests for production related to its state-law DTPA claims......................... 14

Pursuant to the Special Master's Order (ECF No. 227), Plaintiff States ("States") respectfully submit this opening brief on pending discovery disputes.

As outlined below, despite the States' well-documented and timely requests,[1] Google has not produced several categories of highly relevant documents and datasets—which are necessary to efficiently and effectively move forward with depositions, and the production of which the States request the Special Master to order at the February 22, 2024 hearing.

## I.     The States' request for a concrete timeline from Google for its privilege log re-review and rolling productions of revised logs and de-designated documents.

Starting in July 2023 and continuing through January 2024, Google has produced 18 volumes of privilege logs, totaling 479,389 entries of withheld or redacted documents under a privilege assertion. *See* Ex. 1. In October 2023 alone, Google produced 17 separate privilege log spreadsheets of volume subparts. *Id.* Starting in November, the parties exchanged the following:

- On November 12, 2023, the States served a letter identifying deficiencies in Google's first 8 log volumes and attaching appendices with examples of each deficiency. Ex. 2.[2] Those deficiencies, for example, included 43,000 entries that reference no lawyer, entries for communications with third parties (like government officials), and vague, barebones entries that do not substantiate the privilege claims. *Id.* at 4-6. Google's inconsistent redactions also showed that Google is redacting non-privileged materials. *Id.* at 2, Exs. 1-3. Given Google's burden to produce sufficiently detailed logs and establish the privilege for each withheld or redacted document, the States requested that Google re-review all log entries for deficiencies and produce revised logs by November 27, 2023. *Id.* at 6.

- Google responded on November 30, 2023. Ex. 3. While Google claimed to disagree that deficiencies exist in its logs, Google agreed to re-review all of the entries identified in the appendices but provided no timeline or specifics for that re-review.

---

[1] Google has already expended much paper on unilaterally filing its version of this case's "discovery background." The States do not have pages to do so in this filing. However, the States note that noticeably absent from Google's filings is any mention of the revelation in August and September 2023 regarding Google's admitted "ingestion site" failure to collect, dedupe, and review over 16 million custodial documents, including documents from Google witnesses who had already been deposed, and Google's subsequent dumping of document productions on the plaintiffs. *See* ECF No. 157 at 3-4.

[2] Due to the format and large size of the files and electronic filing limitations, the States are not filing the appendices and other documents that are in native Excel format, but can provide them upon request.

- On December 22, 2023, the States served another letter and supplemental appendices on Google, again identifying Google's burden to vet *all* entries in its privilege logs, not just those identified by plaintiffs. Ex. 4. As the States noted, Google's burden to vet all entries is particularly crucial here, given: (a) the high levels of withholdings for some key custodians, including those already deposed; (b) the *ad hoc*, rushed nature of Google's document review and productions in the fall of 2023 after the revelation of its failure to collect and review over 16 million documents; and (c) Google's practices, reported in other cases, of using "fake privilege" and other practices to shield non-privileged documents from production. *Id.* at 2-3. The States again asked for prompt action and revised logs by January 15, 2024. *Id.* at 7-8.

- Google responded in letters, dated January 17 and 30. Exs. 5, 6 at 4. Regarding the timing of the re-review, Google only vaguely disclosed that the re-review is "well underway." On February 12, the parties met and conferred, and Google's counsel stated that they may have a timeline for the re-review by Friday, February 16, and they clarified that Google's re-review includes a universe of roughly 70,000 prioritized custodian documents, followed by the balance (or ~ 230,000) of the total 300,000+ documents identified by the States.

In sum, the States requested that Google promptly re-review its privilege logs three months ago, provide a concrete timeline for that re-review, and conduct rolling productions of revised logs and de-designated documents. Because Google has not yet done so, the States request the Special Master to order Google to begin rolling productions of revised logs and de-designated documents immediately, with a completion date of **March 1, 2024**.

## II.     The States' request for linked documents and metadata.

Instead of traditional attachments, Google engages in a pervasive practice of placing referenced documents in links. Just like attachments, the linked documents are necessary to understand the context of the referring or parent document. *See* Exs. 7, 19.

Accordingly, the ESI Protocol requires Google to conduct an automated search across all produced emails to identify linked documents. ECF No. 183 ("ESI Protocol" or "ESI Order") at 24. The States can "also make reasonable and proportionate requests that the producing party [Google] conduct a reasonable search for relevant documents identified via hyperlinks," and Google "shall conduct a reasonable search for the document corresponding with the link … and produce relevant documents corresponding with the links with reasonably available metadata" that

includes "[m]etadata tying linked and linking documents." *Id.* at 19, 24.

Pursuant to those terms of the ESI Protocol, on January 16, 2024, the States requested that Google conduct a reasonable search for and produce all linked documents and/or corresponding "tying" metadata that appear in 5,811 documents identified by the States in their attached appendix – roughly 0.1% of Google's total 6-million production volume. Ex. 8. The States also disclosed that they are interested in internal Google linked documents (like Google Sheets, Workspace, and Word documents), as opposed to external links. *Id.* at 2. Noting the need for linked documents for depositions, the States requested that Google respond by January 23, 2024 as to whether Google agreed to conduct the requested searches for linked documents and, if so, on what timeline. *Id.*

Google responded on January 30, 2024. Ex. 6. While Google contested the reasonableness, proportionality, and timeliness of the request, Google stated that it planned to provide "within a week" a linked document metadata overlay, "which we expect will address many of the documents" identified by the States. *Id.* at 3-4. On February 2, Google produced the linked document overlay.  However, as the States informed Google on February 9, the overlay produced by Google appears to only address 236 of the 5,811 documents identified by the States. Ex. 9 at 2. The States still do not have the linked documents or the required metadata for the remaining 5,575 identified documents. *Id*. The States, thus, requested that Google provide, by February 12, a definitive answer as to whether Google will search for, and produce if found, the requested linked documents and/or metadata for those remaining documents and on what timeline. *Id.* at 3.

The parties met and conferred on February 12.  Google continued to object to the burden and volume of the documents requested but stated that it may offer a counterproposal that may limit the search and production. The States reiterated that they need all internal linked documents associated with relevant documents to be used in depositions and to be relied on by any experts,

and, without knowledge of what is in each linked document, are not in a position to write off internal linked documents. Google sent a letter on February 13, proposing only a collection 300 single links,[3] an arbitrarily small number not tethered to the scope or needs of this case. Ex. 44.

The States request that the Special Master order Google to search for, and produce if found, the linked documents and/or required metadata associated with the 5,575 documents identified by the States, by **March 1, 2024**.

### III.    The States's requests for relevant technical documents and data.

On February 6, 2024, the parties met and conferred on the below technical documents and data, requested on January 16 by the States, resulting in an impasse.  *See* Exs. 10, 11, 12, 42.

#### A.    Dashboards

Google's Display Ads systems produce a staggering amount of data every day – according to one Google document, more than ███████ of data <u>daily</u> (more than all of the information contained in the Library of Congress).  As its AdTech business generates revenues in excess $700 million per day, Google has developed numerous reporting tools ("Dashboards") to allow it to monitor and analyze this voluminous data for both business and engineering purposes.

Google does not contest the relevance of the requested Dashboards; numerous Google documents confirm their existence and importance as internal reporting and monitoring tools that Google maintains in the ordinary course of its business.[4] *See, e.g.*, Ex. 14, GOOG-AT-MDL-004017319 (████████████████████████████████████████████████

---

[3] Google argues that the States should have requested single links within documents, versus asking for all links in a parent document. But, as the States have explained, they need all internal links in a document used in deposition or by an expert and cannot parse links (of currently unknown content) within a relevant document. Also, the States cannot distinguish between internal and external links, only Google can.

[4] Such dashboards are relevant to at least the States' Requests for Production Nos. 25, 131, 160, 241, 248, 259, 270, and 271. Ex. 13.



); Ex. 15, GOOG-AT-MDL-000992184 (

);

Ex. 16, GOOG-AT-MDL-000992438 (

). Hundreds of Google documents reference the RASTA and Lumina dashboards, highlighting their relevance and importance to Google and this case. And RASTA and Lumina are far from the only Dashboards that Google uses in connection with its Display Ads business. The States have identified more than 2,400 unique links in these documents that include the word "dashboard,"[6] including those that reference Google's Display Ad products (such as DRX and ADX) and various other technology identified in the Complaint, including header bidding, Bernanke, RPO, DRS, and Yavin.[7]

Google's objections to the production of these Dashboards appear to stem from the burden of producing them (or otherwise making them available). Google's arguments, however, fall flat – Google does not address any of the 2,400 dashboards identified, instead focusing on RASTA and Lumina, which it contends are tools for "                                    " and

---

[5] Google has asserted that                                                            Ex. 6 at 2. To the extent accurate, Google should be required to provide a declaration detailing                                    , who authorized their shutdown, and when such shutdown took place.

[6] These more than 2,400 dashboards may just be the tip of the iceberg, as the States have no way of determining whether additional dashboards may be referenced in Google's documents that do not have term "dashboard" in the text of the link.

[7] Examples of such links include: go/apps-bernanke-dashboard; go/upr-dashboard; go/auction-rpo-dashboard; go/drs-dashboard; go/drs-pub-dashboard-internal; go/drx-apidashboard; go/header-bidding-dashboard; go/jedi-dashboard; go/rpo-allosaur-dashboard; go/rpobulbasaur- dashboard; go/rpo-dashboard; go/rpo-greensaur-dashboard;   go/rpo-greensaur-launchholdback-dashboard;   go/rpo-ivysaur-dashboard; go/rpo-jumbosaur-dashboard; go/rpo-megasaurdashboard; go/rpo-microsaur-dashboard; go/rpo-spinsaur-dashboard;   go/rpo-venusaur-dashboard;   go/yavin-dashboard;   go/yavin-latency-dashboard;   go/yavin-misrep-dashboard; go/yavin-revenuedashboard; go/yavin-success-dashboard; go/adx-dashboard. *See* Ex. 11, Appendix A (listing relevant dashboards).

5

█████████████████████████████████████████████████████

███████████ Ex. 6 at 2.

Google argues that it is not required to produce these Dashboards because they are "ephemeral data." ECF No. 222 at 1-2.   But the Dashboards themselves are not ephemeral and the data sources they draw from are only "ephemeral" to the extent that Google deletes this data on a rolling basis.  Google's argument thus highlights why these Dashboards – which Google developed to allow them to aggregate and analyze this underlying data – are relevant and proportional in this case. Google produces ███████████ of data per day, an amount that is facially unreasonable for the States – or indeed anyone – to review. Further, the States have attempted to negotiate relevant fields for such data, which Google has refused. *See* Exs. 17, 18.  And the snapshots of this data that Google has produced are for an extremely limited time period and will be of limited utility compared to the reporting tools that Google has developed to analyze these data sets over time and in the aggregate. Allowing the States access to the same Dashboards that Google uses to analyze the AdTech products at issue is the most efficient way to allow the States access to highly relevant discovery.  Such production, which may take place in a secure source code room, would vastly reduce the burden on both parties by permitting the same review of the data that Google performs, without requiring production of specialized data subject to negotiations regarding which of the 7,700 potential fields is relevant. *See* Exs. 17, 18.  Of course, Google should also be required to produce the user manuals and documentation for these dashboards (including, in the first instance, a listing of the various fields/metrics that can be selected in these Dashboards and the time periods covered by the Dashboards) as well as any reports that were generated using these dashboards.

Courts in this district have previously ordered Google to produce relevant tools. In *SimpleAir*, the court ordered Google to provide a "'diff tool' and a detailed description of the nature

of any fundamental changes to the source code." *SimpleAir v. Google*, 2:14-cv-00011-JRG, Dkt. 110 (Apr. 30, 2015) (Gilstrap, J.) (briefing filed under seal) (Ex. 43). As in *SimpleAir*, and contrary to Google's previous assertions, the States request the tools Google uses to review and analyze the relevant data, not reproductions of the data itself.  Accordingly, the States request that the Special Master require Google to produce the requested Display Ads Dashboards.

### B.     Links and document repositories

Google's documents reference extensive technical documentation, related to its AdTech products and the conduct accused in this case, that has not yet been produced.  This documentation is responsive to the States' RFPs and highly relevant to this case as it provides an explanation – written and relied on by Google's own engineers – of Google's AdTech products and programs. Google's documents indicate that it has repeatedly made efforts to consolidate technical and engineering documents related to the accused Display Ads products and systems. For example, GOOG-NE-07285295 (Ex. 19) describes such a consolidation plan involving "██████████ ███████████████████████████████████████████████████████████████████ ██████████████████████████" The ███████████████████████████████████████ ████████████████████████████████████████████████████████████." *Id.* Such documents are relevant to the operation of the Display Ads products and systems, the goals of the specific functionalities at issue, and the identification of relevant deponents, yet it does not appear that such directories were searched, nor have such documents been produced.

██████████████████████████████████████████████████████
██████████████████████████████████████████████████████
██████████████████████████████████████████████████████
██████████████████████████████████████████████████████
██████████████████████████████████████████████████████

████████████████ *Id.* These links/repositories largely do not appear to have been searched nor relevant documents produced. In the rare cases a relevant document has been produced, it appears to be an antiquated version. *See* Ex. 20, GOOG-NE-13539135 ████████████████ ████████████████████████████████████████ ██████████████████). ████████████████████████ ████████████████████████████████ Ex. 19, GOOG-NE-07285295 at -5301, -5302, ████████████████████████████. *Id*. at -5303.

Other documents make similar assertions. For example, GOOG-AT-MDL-002462689 (Ex. 21) requests the recipient "████████████████████████." GOOG-AT-MDL-001397578 (Ex. 22) refers to a ████████████████████████ ██████████████████████. GOOG-AT-MDL-000993528 (Ex. 23) directs readers to ████████████████, while GOOG-AT-MDL-001290493 (Ex. 24) involves a new hire asking about ████████████ documentation. *See also* Ex. 25, GOOG-AT-MDL-009042635 ("████████████████████████████ ████████████"). GOOG-AT-MDL-000035563 (Ex. 26) and GOOG-NE-09459207 (Ex. 27) both state that relevant price floor information and AdX configs and guides can be found in ████████████. GOOG-AT-MDL-003133329 (Ex. 28) states that the "████████████ ████████████████████" documents are in "████████." Based on the descriptions above, these links and repositories contain a consolidated set of documents relevant to the operation, use, and goals of the Display Ads products and systems at issue in the States' DTPA and Antitrust claims.

Despite the above documents facially pointing to relevant technical documents and repositories, and rather than confirm that Google has conducted a reasonable search, Google relies on prior letters stating that links are not document repositories, and instead "can redirect to any

URL address, including documents already found in custodial files that are being collected and reviewed." Ex. 29. As described by the letter and ESI Order, however, to "the extent that Plaintiffs seek linked documents, they may make reasonable and proportionate requests for them under the governing ESI Order." *Id.*; *see also* ECF No. 183.

Under the terms of the ESI Order, the States have produced a list of relevant links that Google's own documents assert point either to specific relevant technical documents or to repositories of relevant technical documents. Google did not assert that it would be burdensome or disproportionate to check those links, only that it did not believe it had to do so. Ex. 6 at 3. But Google's discovery obligations are ongoing, and it is not permitted to unilaterally decide to stop searching for relevant documents that have been identified by the States.  The Special Master should therefore require Google to identify and collect relevant documents from any repositories of technical documents related to the Google AdTech products, including those in the links and otherwise identified in the States' January 16, 2024 letter (Ex. 10).

### C.      Reproduction of Word documents in native form

Numerous Word documents that have been produced by Google have had important content removed or rendered illegible through the process of converting the Word file to a TIFF image for production.  Both this Court and the prior MDL court in S.D.N.Y. promulgated an ESI Order agreed to by the parties, which states that all documents will be produced in TIFF format. ECF No. 183 at App'x 1(A)(3). However:

> [h]idden content, tracked changes or edits, <u>comments</u>, notes, and other similar information, shall to the extent reasonably practicable, <u>be produced in native or Microsoft-equivalent format, or be imaged so that such content is viewable on the image file</u>. Where hidden content, tracked changes or edits, comments, notes, or other similar information is not readable in its produced format, a party that received the document may make reasonable requests that a more readable version, such as a native or Microsoft-equivalent version, be produced when helpful to interpret the contents of the relevant document.

*Id.* at App'x. E (emphasis added). The parties further agreed "not to materially degrade the

searchability of the documents as part of the document production process." *Id.* at 8.

Google has not complied with its obligations. Numerous Microsoft Word documents containing comments have been produced as TIFFs, without the comments expanded or fully readable. For example, GOOG-AT-MDL-004334897 (Ex. 30) contains 18 comments, of which 7 cannot be read due to improperly collapsed comments:



*Id.*; *see also* Ex. 31, GOOG-DOJ-AT-02326571; Ex. 32 GOOG-NE-06841582 (cutoff comments).

Google further failed to meet its obligations with respect to documents containing mathematical formulae and various images/graphs. As the States identified in their January 16, 2024 letter (Ex. 10), many Google documents allegedly containing mathematical formulae actually contain nonce symbols, such as "▨" or "□":



Ex. 30, GOOG-AT-MDL-004334894; *see also id.* at -4906, -4907.

In objecting, Google improperly seeks to shift the burden to the States to identify each individual document containing an error by Google. First, Google asserts that the ESI Order precludes it from being required to reproduce documents. Ex. 6 at 2 (quoting ESI Order at 2 n.1). But that same provision permits the parties to "retain the ability to make reasonable and

proportionate requests pursuance to Appendix E . . . ." *Id.* As noted above, however, Google's obligations stem from Appendix E, and it is compliance with Appendix E that the States seek.

Further, while Google can easily and quickly search for and reproduce in native form Microsoft Word documents that it has already collected, requesting that the States identify each of the documents containing comments on a Bates number by Bates number basis improperly shifts the burden of production to the States. Under the ESI Order, Google, not the States, was required "not to materially degrade the searchability of the documents as part of the document production process." ECF No. 183 at 8. Google, and Google alone, is responsible for the production of its documents; that Google did not review its productions for compliance with the ESI Order should not result in the States shouldering the burden and expense of identifying each deficient document. The States, therefore, request that the Special Master require Google to reproduce each Microsoft Word document in native form.

   **D.      APIs, programming guides, design documents, onboarding and training materials, and other technical documents**

To date, Google has produced few relevant technical documents. Google has failed to produce relevant Application Programming Interfaces (APIs) for Display Ads products and systems, failed to produce relevant programming guides and design specifications for these products and systems, and failed to produce relevant onboarding/training materials for these products and systems. Google's own documents, however, show that these documents exist. For example, GOOG-AT-MDL-001399058 (Ex. 45) asking if " ████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████                          *Id.* at 85985

(underlining representing presumed hyperlinks in the original).

When such discrepancies were identified, however, Google merely threw its hands up, stating that it had produced "over 6 million documents" subject to the States' "extraordinarily broad" "search terms and custodians." Ex. 6. The volume of Google's production is irrelevant. The States have made a reasonable and proportionate request for targeted discovery in light of specific deficiencies in existing productions. Google cannot unilaterally decide to forgo additional discovery solely because it <u>hopes</u> that the documents were picked up by its search algorithms, especially when the States have highlighted specific tranches of documents that are missing.  The Special Master should require the production of these technical documents, including but not limited to those related to the operation of Bernanke (and its variants, including at least Bell and Global Bernanke), Reserve Price Optimization ("RPO"), AdMob, DoubleClick for Publishers ("DFP"), UPR, Header Bidding, Poirot, Elmo, Dynamic Revenue Sharing ("DRS"), Dynamic Allocation (and its variants), and Jedi (and its variants).

### E.    Source Code

On January 16, 2024, the States identified specific deficiencies in the source code that Google made available for inspection, including (1) code for the initial Bernanke implementation; (2) Code for Project Bell; (3) a number of specifically identified files and directories that are referenced by the code that Google has made available for inspection; (4) missing experiment files related to Bernanke; and (5) Cassandra software to view the missing experiment files. Ex. 10 at 4-6. Each of these items is relevant to the operation of Google AdTech products named in the Complaint or was used to "train" (optimize) specific Google AdTech products, such as Reserve Price Optimization ("RPO"), Bernanke, and Bell.  On February 6 and 12, Google's counsel represented only that Google was still considering the States' requests. *See* Ex. 12. The parties agreed that, should Google refuse to produce such code and software by the next Special Master

hearing on February 22, the parties will be at impasse and the issue will be ripe. *Id*. The States request that the Special Master order Google to produce the requested source code and software. *See In re Google Litig.*, 2011 WL 286173, at *5 (N.D. Cal. Jan. 27, 2011) (compelling "Google [to] produce all source code for each accused link analysis, any input to any link analysis … , and any components of any further analysis … that use the results of any link analysis")

## IV.   The States' request for trial transcripts and exhibits from the DOJ Search trial.

The Department of Justice's ("DOJ's") "Search" antitrust trial against Google, arising from Google's alleged monopoly in search **advertising**, began in September 2023. *See U.S. of Am. et al. v. Google LLC*, No. 1:20-cv-03010-APM (D.D.C.). On September 29, 2023, the States and MDL Plaintiffs issued RFPs to Google seeking all unredacted trial transcripts and exhibits that concern AdTech and advertising in the Search trial. Ex. 34. Google's Response on October 30, 2023, refused to produce any documents. Ex. 35. The Parties met and conferred multiples times on the issue, including most recently on February 6. *See* Ex. 12, 42. More than two months after the States' request, Google emailed on December 8 that it was willing to produce the testimony and exhibits for only the seven witnesses who are also custodians in this case, redacting all third-party confidential information. Ex. 36. According to Google, it produced those transcripts just last week.

The public record of the Search trial, however, shows that many more witnesses provided relevant advertising testimony. *See* Ex. 37.  But much of the Search trial was sealed, and the States cannot review the testimony to determine whether additional witnesses might be relevant. Despite having access to the transcripts and the duty to determine relevance, Google has refused to review the transcripts and exhibits to determine the extent to which individuals, who are not yet custodians in the instant case, provided relevant testimony in the Search trial.

Because Google is in a superior position to determine relevance, the States request that the Special Master order Google to review the Search trial transcripts and produce anything relevant,

beyond arbitrary, formulaic custodian boundaries.  Such discovery is regularly ordered in this District. *See Retractable Tech., Inc. v. Becton*, 2011 WL 13134891, at *5 (E.D. Tex. August 4, 2011) (Folsom, J.) (holding that trial transcripts and exhibits from other similar cases are relevant, tailored and reasonable in scope, and should be produced to the extent not publicly available); *Moser v. Navistar Inter. Corp.*, 2018 WL 3613996, at *3 (E.D. Tex. July 27, 2018) (Mazzant, J.) (finding that trial transcripts and exhibits from other cases involving same defect issue were discoverable and should be produced, if transcribed and related to the issues in the case).

V.    **Texas's requests for production related to its state-law DTPA claims.**

    The State of Texas, as well as the 16 other States, have state-law claims in this case that were not common with the claims of the MDL Plaintiffs.  On November 10, 2023, soon after this case returned to this Court, Texas served requests for production ("RFPs") focused on its state law claims. Ex. 38. Google served its responses and objections on December 11, 2023. Ex. 39. Texas served Google with a letter identifying deficiencies and issues with Google's responses and objections on January 24, 2024, which Google responded to on February 2, 2024. Exs. 40, 41.

    Google's primary overall objection to the RFPs is their timing, arguing that Texas should have issued them while in the MDL. Yet—just as the MDL Judge did not evaluate the pleaded state-law claims leaving that to occur before this Court—the parties focused MDL discovery on common antitrust claims, not plaintiff-specific state law claims. For instance, the previous investigation and MDL search terms, first proposed by Google and further negotiated by the plaintiffs, focus on antitrust and market concepts, not DTPA concepts or alleged deceptive communications between Google and its customers related to all of the products at issue. The prior custodians do not appear to include Google personnel from its "Comms" or Communications teams. In any event, Google's timing objections are irrelevant: fact discovery is ongoing, and the States are not barred from issuing new RFPs in this Court.

The States do not seek duplicative discovery of past-produced documents. The States want:

(a) Google's communications with its customers and public-facing statements related to changes to its auction model, dynamics, and optimizations, including communications and statements related to all versions of Reserve Price Optimization (RPO), Dynamic Revenue Share (DRS), and Bernanke—each of which were referred to internally by different names—including all drafts, redlines, comments, and annotated versions of any actual or proposed public-facing statements; and

(b) all Help Center pages and articles, presentations, spreadsheets or other documents reflecting customer responses and complaints, launch proposals and plans, internal training documents, and internal communications, including updates or revisions thereto, related to communicating any changes to Google's auction model, dynamics, and optimizations (collectively, "Requested Categories of Documents").

To date, the States have found only a limited number of such documents, even in Google's large production universe, and do not believe the past search terms and custodians are sufficient to find all relevant and responsive documents.  And, just as Google was previously required to do, the States request that Google—as the entity with superior knowledge of its documents and personnel—bear the initial burden of "identifying custodial documents and data responsive" to the States' RFPs. *See* ECF No. 222 at 2.

The parties met and conferred on February 12, with Google continuing to object to the timing of the RFPs and not expressing a position at the time on the States' request for Google to propose search terms and custodians based on the discrete categories of documents identified by the States. The States also proposed to Google 3 new custodians as a starting point.

Given the upcoming fact discovery deadline, the States request that the Special Master order Google to propose by **February 29, 2024,** a Discovery Plan, just as it was required to do in the MDL and investigation phase, with proposed new custodians and search terms targeted at finding the Requested Categories of Documents, as defined above.

15

Respectfully submitted,

| | |
|---|---|
| */s/ W. Mark Lanier* | */s/ Ashley Keller* |
| W. Mark Lanier | Ashley Keller |
| Mark.Lanier@LanierLawFirm.com | ack@kellerpostman.com |
| Alex J. Brown | 150 N. Riverside Plaza, Suite 4100 |
| Alex.Brown@LanierLawFirm.com | Chicago, Illinois 60606 |
| Zeke DeRose III | (312) 741-5220 |
| Zeke.DeRose@LanierLawFirm.com | |
| Jonathan P. Wilkerson | Zina Bash |
| Jonathan.Wilkerson@LanierLawFirm.com | zina.bash@kellerpostman.com |
| 10940 W. Sam Houston Pkwy N | 111 Congress Avenue, Suite 500 |
| Suite 100 | Austin, TX 78701 |
| Houston, TX 77064 | (512) 690-0990 |
| (713) 659-5200 | |
| **THE LANIER LAW FIRM, PLLC** | Noah S. Heinz |
| | noah.heinz@kellerpostman.com |
| | 1101 Connecticut, N.W., 11th Floor |
| | Washington, DC 20005 |
| | (202) 918-1123 |
| | **KELLER POSTMAN LLC** |

*Counsel for Texas, Idaho, Louisiana (The Lanier
Law Firm only), Mississippi, North Dakota,
Mississippi, South Carolina, and South Dakota*

*Submitted on behalf of all Plaintiff States*

**NORTON ROSE FULBRIGHT US LLP**
Joseph M. Graham, Jr.
joseph.graham@nortonrosefulbright.com
Geraldine Young
geraldine.young@nortonrosefulbright.com
1301 McKinney, Suite 5100
Houston, Texas 77010
(713) 651-5151

Marc B. Collier
Marc.Collier@nortonrosefulbright.com
98 San Jacinto Blvd., Suite 1100
Austin, Texas 78701
(512) 474-5201

16

FOR PLAINTIFF STATE OF TEXAS:

KEN PAXTON
Attorney General

*/s/ Trevor E. D. Young*

Brent Webster, First Assistant Attorney General of Texas
Brent.Webster@oag.texas.gov
James R. Lloyd, Deputy Attorney General for Civil Litigation
James.Lloyd@oag.texas.gov
Trevor Young, Deputy Chief, Antitrust Division
Trevor.Young@oag.texas.gov

**STATE OF TEXAS, OFFICE OF THE ATTORNEY GENERAL**
P.O. Box 12548
Austin, TX 78711-2548
(512) 936-1674

*Attorneys for Plaintiff State of Texas*

## CERTIFICATION OF CONFERENCE

I certify that counsel has complied with the meet and confer requirement in Local Rule CV-7(h) and that the parties remain opposed on the pending discovery disputes outlined in the foregoing submission.  The personal conferences required by Local Rule CV-7(h) have been conducted or were attempted on the following dates in the following manner, with the names of the participants in the conferences.

| Date & Manner | Conferred Issues | Participants[8] |
|---|---|---|
| February 6, 2024<br><br>Teams video call | The States' requests for technical documents and data; and<br><br>The States' request for trial transcripts and exhibits from the DOJ Search trial (also prior meet and confers). | For the States: Geraldine Young and Peter Hillegas<br><br>For Google: Mollie Bracewell, Robert McCallum, and Paul Yetter |
| February 12, 2024<br><br>Teams video call | Google's privilege log re-review;<br><br>The States' request for linked documents; and<br><br>Texas's requests for production. | For the States: Zeke DeRose III, Jonathan Wilkerson, and Geraldine Young<br><br>For Google: Mollie Bracewell, Robert McCallum, and Paul Yetter |

The foregoing document further outlines explanations of why no agreement could be reached and that discussions have conclusively ended in an impasse, leaving an open issue for the court to resolve.

*/s/ W. Mark Lanier*
W. Mark Lanier

---

[8] The conferences included other attorneys for both sides. Included are those who conferred, and not all observers are listed here.

1

## CERTIFICATE OF SERVICE AND SEALING

I certify that, on February 13, 2024, this document was filed electronically in compliance with Local Rule CV-5(a) and served on all counsel who have consented to electronic service, per Local Rule CV-5(a)(3)(A).

I also certify that, on February 13, 2024, a motion to seal the foregoing document and its exhibits was filed separately and before the filing of this document under seal, per Local Rule CV-5(a)(7)(B).  This sealed filing will be promptly served by email with a secure link on counsel of record for all parties in this case, and will be publicly filed in redacted form, per Local Rule CV-5(a)(7)(E).

*/s/ W. Mark Lanier*
W. Mark Lanier

2