IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| THE STATE OF TEXAS, et al.,<br><br>  Plaintiffs,<br><br>v.<br><br>GOOGLE LLC,<br><br>  Defendant. | Civil Action No. 4:20-cv-00957-SDJ |

# EXHIBIT 4

**PLAINTIFF STATES' OPENING BRIEF TO THE SPECIAL MASTER
FOR THE FEBRUARY 22, 2024 HEARING**

December 22, 2023

**Via E-mail**

Eric Mahr
Julie S. Elmer
Robert J. McCallum
Freshfields Bruckhaus Deringer LLP
700 13th Street NW, 10th Floor
Washington, DC  20005
Eric.mahr@freshfields.com
julie.elmer@freshfields.com

R. Paul Yetter
Bryce Callahan
Yetter Coleman LLP
811 Main Street, Suite 4100
Houston, Texas 77002
pyetter@yettercoleman.com
bcallahan@yettercoleman.com

John D. Harkrider
Axinn Veltrop & Harkrider, LLP
114 West 47th Street
New York, NY  10036
jharkrider@axinn.com

Daniel S. Bitton
Axinn Veltrop & Harkrider, LLP
560 Mission St.
San Francisco, CA 94105
dbitton@axinn.com

**Re: In re Google Digital Advertising Antitrust Litigation**

Dear Counsel:

The E.D. Tex. and MDL Plaintiffs write in response to your letter dated November 30, 2023, regarding Google's privilege logs.

As an initial matter, we appreciate that Google has agreed to re-review all of the entries identified in Appendices A through L of our letter dated November 12, 2023, and to produce revised privilege logs for the deficient entries. As indicated in our November 12 letter (p. 4 n.1), we have prepared supplemental appendices, attached as **Supplemental Appendices A through**

**L**[1] to this letter, outlining similar deficiencies in Google's more recent privilege logs (Volumes 9A-9C, 10A-10B, 11A-11B, 12A-12B, 13A-13B, 14A-14B, 15A-15B, and 16). These Supplemental Appendices can be accessed at the link sent with this letter, with the password to be emailed separately. As with the documents identified in the prior appendices, please re-review the entries identified in these Supplemental Appendices and produce revised privilege logs for the deficient entries.

In addition to the privilege log deficiencies that we have identified, we share the U.S. Department of Justice's concern that some custodians, including individuals already deposed, have unusually high and unexplained levels of withholding and redaction for privilege. *See* Letter from Michael J. Freeman, U.S. DOJ, to Julie Elmer, *et al.* (Dec. 7, 2023), at 4-5 and relevant appendices. Google's response to that recent letter did not even attempt to provide an explanation for its suspiciously high levels of withholding and redaction. *See* Letter from R. McCallum to Michael J. Freeman, U.S. DOJ (Dec. 15, 2023), at 3. Instead, Google cited as justification cases in which the percentages—1.8 percent withholding in *Travelers Indem. Co. v. Northrop Grumman Corp.*, 2013 WL 3055437, at *1 (S.D.N.Y. Apr. 22, 2013)—or aggregate volumes—fewer than 8,000 documents withheld or redacted by one defendant and approximately 2,000 withheld or redacted by another in *Jones v. Varsity Brands, LLC*, 2022 WL 1913043, at *2-4 (W.D. Tenn. June 3, 2022)—pale in comparison to this case. Tellingly, Google was unable to point to any situation where a court permitted such extensive privilege designations where the defendants had a *company policy* of encouraging employees to use sham privilege designations to preemptively thwart discovery in anticipated litigation.

Further, we disagree with your broad assertion that Google is under no obligation to re-review the full set of entries in each of its logs for the identified deficiencies. That position is squarely at odds with the representation by Google's counsel to the Court in the Eastern District of Texas that Google will personally review all log entries.

As the party withholding close to 500,000 otherwise relevant and responsive documents from production, in whole or in part, Google bears the burden and obligation to ensure that its privilege assertions are proper and that it is not withholding non-privileged documents and information that should be produced. Instead, your November 30 letter presumes that it is Plaintiffs' burden to comb through all half-a-million entries to identify deficient entries based only on the privilege log entries themselves and that, otherwise, Google will not re-assess its entries. Google's shirking of its obligation to vet its privilege logs any further is particularly concerning given (1) the *ad hoc*, rushed nature of Google's recent document reviews and productions, after Google discovered its shocking failure to collect, review and produce over 16 million documents,

---

[1] Because Google appears to have changed its methodology for logging privilege to no longer include the "ESQ" abbreviation in the From/Author, To, CC, or BCC fields, we have combined Supplemental Appendices B and E into one appendix. Further, Google's changed methodology has removed Plaintiffs' ability to identify privilege entries that only CC or BCC an attorney (Appendix C), so Plaintiffs have not provided a Supplemental Appendix C at this time. Plaintiffs reserve their right to do so when Google provides a list of attorneys.

December 22, 2023
Via E-mail
Page 3

which reasonably raises the concern that Google's rushed document and privilege review may have led to erroneous over-assertions of privilege and non-privileged documents being withheld, and (2) Google's widely publicized practices of using "fake privilege," "communicate with care," "silent-attorney emails," and other abusive practices to withhold highly relevant and sensitive non-privileged Google documents from discovery.[2]

As you well know, attorney-client privilege must be established, protected and maintained.[3] A party cannot veil a communication under the privilege by copying an attorney, nor can a party veil a document under the privilege by sending it to an attorney.[4] Even when an attorney is involved in a communication, the privilege only attaches when the communication seeks legal advice rather than business advice.[5] Moreover, otherwise privileged communications can be waived when shared with third parties or individuals who do not need to know the

---

[2] *See, e.g., United States v. Google LLC*, No. 1:20-cv-03010-APM, Doc. 361 at 21-22 (D.D.C. June 16, 2022); *In re Google Play Store Antitrust Litig.*, No. 3:21MD-02981, Nov. 14, 2023, Hearing, Sundar Pichai testimony; "Judge Slams Google's 'Deeply Troubling' Tactics as Trial Ends," *Law360* (Dec. 1, 2023), https://www.law360.com/articles/1772102/judge-slams-google-s-deeply-troubling-tactics-as-trial-ends; "Google In-House Attys Joked About 'Fake Privilege,' Jury Told," *Law360* (Nov. 9, 2023), https://www.law360.com/articles/1765405/google-in-house-attys-joked-about-fake-privilege-jury-told.

[3] *See von Bulow v. von Bulow*, 811 F.2d 136, 144 (2d Cir. 1987) (party seeking to assert a claim of privilege has the burden of demonstrating both that the privilege exists and that it has not been waived); *Smith v. Conway Org.*, 154 F.R.D. 73, 77 (S.D.N.Y. 1994); *Denney v. Jenkens & Gilchrist*, 362 F. Supp. 2d 407, 412 (S.D.N.Y. 2004) (requiring a showing that the communications "have been maintained in confidence.") (emphasis omitted).

[4] *U.S. Postal Serv. v. Phelps Dodge Ref. Corp.*, 852 F. Supp. 156, 163-64 (E.D.N.Y. 1994) ("A corporation cannot be permitted to insulate its files from discovery simply by sending a 'cc' to in-house counsel."); *In re Signet Jewelers Ltd. Sec. Litig.*, 332 F.R.D. 131, 136 (S.D.N.Y. 2019) ("While it is true that Signet in-house counsel were copied on the emails . . . that does not make them privileged.").

[5] *Pearlstein v. BlackBerry Ltd.*, No. 13CV-07060-CM-KHP, 2019 WL 1259382, at *4 (S.D.N.Y. Mar. 19, 2019) (although "[t]he privilege applies to a company's communications with its external and in-house lawyers . . . in light of the two hats often worn by in-house lawyers, communications between a corporation's employees and its in-house counsel . . . must be scrutinized carefully to determine whether the predominant purpose of the communication was to convey business advice and information or, alternatively, to obtain or provide legal advice.").

December 22, 2023
Via E-mail
Page 4

information.[6] Google "bears the burden of demonstrating that it disseminated any communications containing legal advice only to persons with a need to know."[7]

Because Google is responsible for and bears the burden of substantiating its own privilege assertions and logs, Plaintiffs reiterate their demand that Google re-review all entries in its privilege logs, including for the deficiencies we identified in our November 12 letter and this letter.

We also disagree with other assertions in your November 30 letter, including but not limited to the following:

- In our November 12 letter, we identified (at that time) over 43,000 entries that do not appear to include any lawyers and over 12,000 entries that were not directly from or to a lawyer but rather merely copied a lawyer, in addition to other categories of entries that had facially incomplete information to assess Google's privilege claims. In Google's privilege log volumes 9-16, we identify in the Supplemental Appendices over 36,000 additional entries that do not clearly identify any lawyer. *See* Suppl. App'x B/E. Plaintiffs requested that, to the extent it stands by its designations, Google provide more information to show that those and other similarly deficient entries actually concern privileged materials. We acknowledged that non-lawyer communications could be privileged but only if "they discuss or transmit legal advice from a lawyer" or if "the lawyer was providing or being asked to provide legal advice when copied" (pp. 4-5), making our request for more information as to the identity and capacity of the lawyer involved and the nature of the non-lawyer and lawyer communications more than reasonable. Google's response is thus off-base in mischaracterizing Plaintiffs' position as stating that non-lawyer communications are "categorically not privileged."

    Google has failed to demonstrate that communications and documents with no lawyers identified or merely copying lawyers are privileged, and Google does not appear to have a substantive response to this shortcoming. Google's position is effectively that communications without lawyers or merely copying lawyers are privileged, unless

---

[6] *Scott v. Chipotle Mexican Grill, Inc.*, 94 F. Supp. 3d 585, 598 (S.D.N.Y. 2015) ("[a] corporate entity's attorney-client privilege may . . . be waived by disclosure of the communication to employees of the corporation who are not in a position to act or rely on the legal advice contained in the communication"); *M&T Bank Corp. v. State Nat'l Ins. Co.*, No. 18-CV-787-EAW-MJR, 2020 WL 5494501, at *3 (W.D.N.Y. Sept. 11, 2020) (when a privileged communication is conveyed to a *non*-attorney employee, privilege is waived, except if the recipient "had a need to know the content of the communication in order to perform his or her job effectively or to make informed decisions concerning, or affected by, the subject matter of the communication"); *In re Horowitz*, 482 F.2d 72, 81-82 (2d Cir. 1973) (finding it "difficult to be persuaded that the documents were intended to remain confidential in the light of the fact that they were indiscriminately mingled with the other routine documents of the corporation and that no special effort to preserve them in segregated files with special protections was made.") (citation omitted).

[7] *Verschoth v. Time Warner Inc.*, No. 00 Civ 1339 (AGS) (JCF), 2001 WL 286763, at *2 (S.D.N.Y. Mar. 22, 2001) (citing, *inter alia*, 3 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence § 503.22[4][a] & n.33 (2000)).

December 22, 2023
Via E-mail
Page 5

Plaintiffs prove otherwise, but that is not the law; nor has the MDL or any other court so held. The MDL Court's requirements and the E.D. Tex. Court's recently entered privilege log requirements mandate, among other requirements, that: "Each entry on a privilege log must indicate each person, group, or entity who was acting in a legal capacity with respect to that particular Document" and "[t]o the extent reasonably available, the name of the attorney(s) and legal organization who provided the legal advice at issue, from whom the legal advice at issue is requested, who directed the facilitation of the legal advice at issue, and/or who requested or prepared the Document." EDTX ECF 183 at 10; *see also* ECF 508 at 9-10 (similar). Although Google has not fulfilled these mandates with respect to numerous log entries, it nonetheless designated the associated documents privileged, purportedly based on some indication of an involved lawyer.

Google's recent logs do not remedy the issue either but instead raise additional concerns, as they appear to just indiscriminately insert the phrase "ESQ" after names, even isolated first names,[8] while some entries remain without any identification of any lawyer or a description of legal advisory capacity.[9] Other entries include lists of multiple individuals, with a singular "ESQ" abbreviation at the end of the list, making it impossible to tell who (if anyone) was acting in a legal advisory capacity.[10] Google is required to re-review its privilege logs to, at minimum, assess and include the identity and capacity of the lawyers involved and other information to prove its privilege assertions, and to de-designate the entries for which it cannot substantiate a privilege claim upon re-review.

- Google's other responses to Plaintiffs' identified deficiencies are unavailing as well. Specifically, Plaintiffs identified categories of entries that were not "sufficient to enable [Plaintiffs] to understand the general subject matter of the Document and assess the basis of the claim or privilege or other protection from disclosure," including entries that

---

[8] *See, e.g.*, GGPL-AT-000677570 ("Draft memorandum seeking, containing and revealing legal advice of ▌ ESQ and ▌ ESQ regarding compliance with privacy laws."); GGPL-AT-000660742 ("Draft document seeking and revealing legal advice of ▌ ESQ and ▌ ESQ regarding contract interpretation.").

[9] In our November 12 letter, we asked Google to explain how it has identified attorneys acting in a legal capacity because Google inconsistently identifies individuals with an "ESQ" abbreviation at some places, but not others. *See* App'x A and Suppl. App'x A. Google appears to have changed its logging methodology and no longer includes the "ESQ" abbreviation in the From/Author, To, CC, or BCC fields, further thwarting Plaintiffs' ability to evaluate Google's privilege claims. Given Google's changed methodology, Plaintiffs reiterate their request in the November 12 letter for Google to provide a list of attorneys, their titles, and email addresses, and otherwise explain how Google has identified when an attorney is acting in a legal versus non-legal capacity. In addition, in Supplemental Appendix G, Plaintiffs have provided a list of non-Google domains. Please identify which of these non-Google domains acted as external counsel, along with a general description of the entity's role and time period.

[10] *See, e.g.*, GGPL-AT-000726887 ("Draft memorandum reflecting advice from outside EU counsel Slaughter & May and in-house counsel ▌, ▌, ▌, ▌, and ▌, ESQ re: regulatory compliance."); GGPL-AT-000708699 ("Email seeking legal advice of ▌ ESQ regarding third party partnership matters.").

December 22, 2023
Via E-mail
Page 6

contained the same vague conclusory privilege assertion for thousands of withheld documents, entries with formulaic work product assertions with no indication that their primary purpose was to aid ongoing or future litigation, entries with incomplete sentences, entries for images or charts again with no indication of their privileged or protected nature, and entries for meeting minutes with no indication of whether they could be redacted. *See* App'x D-F, H-L; Suppl. App'x D-F, H-L; *see also Equal Employment Opportunity Comm'n v. BDO USA, LLP*, 876 F.3d 690, 696 (5th Cir. 2017) ("[S]imply describing a lawyer's advice as 'legal,' without more, is conclusory and insufficient to carry out the proponent's burden of establishing attorney-client privilege."); *United States ex rel. Mitchell v. CIT Bank, N.A.*, No. 4:14-CV-00833, 2021 WL 3190556 (E.D. Tex. July 28, 2021) (labeling communications as "legal advice" or as being "prepared at direction of in-house and outside counsel" is conclusory, provides insufficient explanation as to why documents are protected, and does not support a claim of privilege); *Bowne of New York City, Inc. v. AmBase Corp.*, 150 F.R.D. 465, 474 (S.D.N.Y. 1993) (stating that "[t]he standard for testing the adequacy of the privilege log is whether, as to each document, it sets forth specific facts that, if credited, would suffice to establish each element of the privilege or immunity that is claimed" and that "the burden of the party withholding documents cannot be 'discharged by mere conclusory or ipse dixit assertions.'"). Further, it appears that Google could redact any privileged information from many of these documents instead of withholding relevant information.

Additionally, as Google plainly concedes with its statement that only "***most*** of the entries in Appendix G are among Google, their outside counsel, and/or outside consultants working at the direction of counsel," there are numerous entries that involve third parties (*e.g.*, government officials) that are clearly not within the scope of a privileged relationship with Google. Those communications must be de-designated and produced immediately. As for the others, like the other identified deficiencies, more information is needed to support privilege assertions involving external parties.

Google broadly claims to disagree with the deficiencies identified by Plaintiffs, yet does not specifically challenge any of the identified deficient entries.

In an attempt to apparently deflect from Google's own obligations and deficiencies, your November 30 letter concocts complaints against Plaintiffs, none of which are accurate or relieve Google from its privilege log obligations.

First, your letter professes concern about Plaintiffs' compliance with Paragraph 12(d) of the Confidentiality Order, which requires notice if a party "becomes aware that it is in receipt of information or material that it knows or reasonably should know is privileged." Contrary to Google's suggestion, Plaintiffs are not required to notify Google of "unredacted versions of otherwise redacted documents" that are not privileged, or that Plaintiffs neither know nor reasonably should know to be privileged. For instance, neither Plaintiffs ***nor Google*** (given its absence of a privilege assertion) reasonably believe that the inconsistent redactions in the Exhibits to Plaintiffs' November 12 letter are privileged. Plaintiffs are in full compliance with the

governing Confidentiality Orders and, at this point, have not discovered inadvertently produced privileged documents or information. Rather, the opposite is true. As the Exhibits to our November 12 letter show, Plaintiffs have found numerous documents with erroneously redacted information under the guise of privilege. Further, Plaintiffs have taken all reasonable steps to comply with the procedures of the relevant Confidentiality Orders, including paragraph 12(d) and the provisions providing for a Privilege Committee to evaluate potentially privileged materials. Plaintiffs have taken such steps in the face of the substantial burdens imposed by Google's policy of encouraging fraudulent privilege designations on all manner of documents and its numerous production failures, including voluminous, contradictory, and overlapping claw back and throwback communications and productions.

Second, in an apparent attempt to deflect focus from Google's deficient logging practices, your letter criticizes Plaintiffs' document productions and privilege logs. Plaintiffs, unlike Google, have fully complied with their discovery obligations, and Google has not substantiated its critiques or moved to compel.

As to the State Plaintiffs' productions, despite Google's tactic of flooding the States and state agencies (most of which do not purchase display advertising or do not seek any damages) with irrelevant requests and subpoenas, the States and state agencies have nonetheless produced roughly 24,000 documents, in addition to the approximately 769,000 documents in Texas's investigative file. As to the States' privilege logging, the categories of communications that would be in the States' possession are explicitly excluded from logging requirements, including "Documents sent solely between counsel for any State and counsel for any other State including State Agencies" and "Documents sent solely between or among … Plaintiffs' counsel. … includ[ing] counsel for any Plaintiff in an Action." EDTX ECF 183, at 10-11.[11]

As to the MDL Plaintiffs, we note—as Google has repeatedly—that the Discovery Steering Committee was formed to address *common* discovery issues. *See* Pre-Trial Order No. 3, MDL ECF 311. The status of individual plaintiffs' privilege logs is a matter for Google to take up with those individual plaintiffs, and, moreover, has no bearing on Google's obligations to produce accurate privilege logs for documents it has determined to withhold from production or to redact. Further, unlike Google, no plaintiff in this litigation has a documented practice of using improper privilege designations to avoid discovery obligations. MDL Plaintiffs who determine to withhold or redact documents based on claims of privilege will provide logs as required under the ESI protocol in due course. MDL ECF 508, at 9 (requiring the production of a privilege log "for any Document withheld or redacted[.]").

We look forward to promptly receiving by January 15, 2024, revised privilege logs from Google, correcting the deficiencies identified in our November 12 letter, this letter, and each of

---

[11] Of the two logs provided by the States, Texas's log includes communications that were part of its investigation that other States would not have in their possession, and South Carolina's log includes communications that are exempt from logging requirements.

December 22, 2023
Via E-mail
Page 8

the attached Appendices and Supplemental Appendices.  We reserve the right to raise additional deficiencies going forward.

Sincerely,

*/s/ Zeke DeRose III*                              .
Zeke.DeRose@LanierLawFirm.com
**THE LANIER FIRM, P.C.**
10940 W. Sam Houston Parkway N., Suite 100
Houston, Texas 77064
Telephone: (713) 659-5200
Facsimile: (713) 659-2204

**NORTON ROSE FULBRIGHT US LLP**

Joseph M. Graham, Jr.
joseph.graham@nortonrosefulbright.com
Geraldine Young
geraldine.young@nortonrosefulbright.com
1301 McKinney, Suite 5100
Houston, Texas  77010
(713) 651-5151

Marc B. Collier
Marc.Collier@nortonrosefulbright.com
98 San Jacinto Blvd., Suite 1100
Austin, Texas  78701
(512) 474-5201

*For the Plaintiff State of Texas*

*/s/ Philip Korologos*
Philip Korologos
**BOIES SCHILLER FLEXNER LLP**
55 Hudson Yards
New York, NY 10001
Telephone: 212-446-2390
pkorologos@bsfllp.com

Jordan Elias
**GIRARD SHARP LLP**
601 California Street, Suite 1400
San Francisco, CA 94108
Telephone: 415-981-4800
jelias@girardsharp.com

Serina M. Vash
**HERMAN JONES LLP**
153 Central Avenue #131
Westfield, New Jersey 07090
Telephone: 404-504-6516
svash@hermanjones.com

*The MDL Plaintiffs' Discovery Steering Committee*