***FILED UNDER SEAL***

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| THE STATE OF TEXAS, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>GOOGLE LLC,<br><br>    Defendant. | Civil Action No. 4:20-cv-00957-SDJ |

# EXHIBIT 41

**PLAINTIFF STATES' OPENING BRIEF TO THE SPECIAL MASTER
FOR THE FEBRUARY 22, 2024 HEARING**



|  | **New York** |
|---|---|
| **Via Email** | 601 Lexington Avenue |
|  | 31st Floor |
| Zeke DeRose III | New York, NY 10022 |
| The Lanier Law Firm, PC | T +1 212 277 4000 (Switchboard) |
| Zeke.DeRose@lanierlawfirm.com |    +1 212 284 4910 (Direct) |
|  | F +1 646 521 5710 |
| Joseph M. Graham, Jr. | E rob.mccallum@freshfields.com |
| Geraldine Young | www.freshfields.com |
| Marc B. Collier |  |
| Norton Rose Fulbright US LLP |  |
| joseph.graham@nortonrosefulbright.com |  |
| geraldine.young@nortonrosefulbright.com |  |
| marc.collier@northrosefulbright.com | February 2, 2024 |

Re:   *State of Texas et al. v. Google LLC*, No. 4:20-cv-957-SDJ (E.D. Tex.)

Counsel:

We write in response to Plaintiff State of Texas's letter dated January 24, 2024, regarding alleged deficiencies in Google's Responses and Objections to Texas's requests for production ("RFPs"), served on Texas on December 11, 2023. Google's Responses and Objections are consistent with its obligations under Rules 26 and 34, the Court's scheduling order (ECF 194), and E.D. Tex. Local Rule CV-26(d). The assertion that Google has made a "blanket refusal" to produce any additional responsive documents is false and wholly ignores Google's offer, repeated 20 times in its Responses and Objections, to confer on targeted searches related to Texas's new, non-duplicative RFPs.  *See* Google's Resps. and Objs. at General Obj. 1; RFPs 1-6, 8-10, 13-16, 20-21.  Google writes to reiterate its availability to confer and to correct other of the letter's inaccuracies.

## Background

### *Discovery in the MDL*

The 301 RFPs filed by the Discovery Steering Committee (the "DSC"), on which Plaintiffs held two out of the five seats, MDL ECF No. 311 ¶ 2 n.1, were intended to be "comprehensive" and cover "all aspects of the case," *see* MDL ECF No. 371 at 8.  Indeed, while Judge Castel stayed Google's response to the state law claims, he made no such distinction for state law-related discovery.  Reflecting the comprehensive nature of those Requests, the search terms and custodians in the MDL were expansive and heavily negotiated by the DSC with input

from all plaintiff groups. Over five rounds of negotiations and approximately 20 meet and confers spanning nearly ten months, Google agreed to run over 200 search terms across the files of over 158 custodians. *See* MDL ECF Nos. 653 at 1-2, 662 at 1-3.

When MDL Plaintiffs still were not satisfied, they moved to compel. Judge Castel largely granted MDL Plaintiffs' motion, yielding another nine search strings and 12 custodians. *See* MDL ECF No. 664. Plaintiffs signed onto that motion to compel, MDL ECF No. 660 at 12 (letter motion to compel signed by two attorneys for State Plaintiffs in their capacity as members of the DSC representing State Plaintiffs) and have been receiving the output of Judge Castel's Order.

Throughout this process, Plaintiffs had, and availed themselves of, the opportunity to seek the discovery relevant to their federal and state law claims. The MDL RFPs extended beyond common discovery requests. More than 50 of the 301 MDL RFPs, as well as certain negotiated search terms, addressed the needs of particular plaintiff groups. And, when unable to reach a negotiated resolution on other particular needs, MDL Plaintiffs moved to compel six search strings and 19 custodians relevant only to specific plaintiff groups' claims (none related to State Plaintiffs). The negotiated search terms and custodians clearly encompassed the State Plaintiffs' particular needs, unsurprisingly given their presence on the DSC and their lead role among the MDL Plaintiffs.

Furthermore, while Judge Castel largely granted the motion to compel, he warned MDL Plaintiffs—including State Plaintiffs—that they should not turn around and seek more still. *See* Nov. 2, 2023 MDL Hr'g Tr. at 11:7-18 ("I don't expect anybody to be back here with follow-ups and not taking yes as an answer from the Court.").

***Discovery upon Remand***

Upon remand to the Eastern District of Texas, Plaintiff Texas served an additional 101 RFPs on Google on November 11, 2023. These RFPs consisted of a limited number of new and broad requests that pertained to Plaintiffs' DTPA and consumer privacy claims and a vast majority of requests that duplicated prior ad tech-related requests to which Google had long since responded. Google proposed to meet and confer on new requests,[1] and otherwise pointed out where prior requests and search strings had addressed the very same subject matter.

As an example, RFP 30 requests all documents and communications exchanged with third parties "related to how any AdTech Product affects Publishers' revenues or yields." Google's response notes that, at a minimum, there are 14 search strings covering the full spectrum of Google and third-party ad tech products and combinations of terms relating to publisher revenue and yields (*e.g.*, impact, affect, increase/higher, decrease/decline/low, optimize, revenue, revenue share, yield, profit, cost).

---

[1] Google objected to three new requests as drafted, given that their scope substantially extended beyond any discernible relevance. *See* RFP 7 ("All Documents and Communications relating to any commitment or representation You have made to never sell the personal information or personal data of Your Users."); RFP 17 ("All Documents and Communications related to any instance in which You shared a User's personal information or personal data with a third party to protect against harm to the rights, property, or safety of Google."); RFP 18 ("Documents Identifying all mergers, acquisitions, or sales of assets in which You have shared Users' personal information or personal data.").

Google timely served its responses on December 11, 2023. Texas waited more than six weeks to take issue with Google's responses.

At the same time, Texas was advocating for a more expedited fact discovery schedule, repeatedly asserting that very little discovery remained. In discussing these RFPs, counsel for Texas assured Google and Judge Jordan that the State was seeking only limited additional materials in response to these requests.

At the first status conference after remand, in arguing for a February 2024 close of fact discovery, Plaintiffs' counsel characterized the 101 RFPs as entailing "the same document search terms . . . perhaps appl[ied] to a new set of custodians," which would amount to "pretty quick prep work in terms of getting the documents." Nov. 20, 2023 Hr'g Tr. at 19:12-16. Plaintiffs reiterated this position in their December discovery status report: "Discovery on the state-law claims likely will involve the same search terms negotiated but be applied toward a handful of additional custodians. The States have already winnowed down their claims in the Fourth Amended Complaint." Dkt. 176 at 5 (Pls. 12/7/23 Discovery Rpt.).

The position in Plaintiffs' letter—suggesting that much discovery remains to be done—represents a dramatic change from what Texas stated on the record in recent court conferences. The letter is particularly perplexing given that we are two weeks from the date on which Plaintiffs initially proposed to close fact discovery, and given that Google has provided six million documents, 200 terabytes of data, and 80 gigabytes of source code. There is no legal basis to demand that Google rewind the discovery process and duplicate the enormous production efforts already undertaken. Indeed, Plaintiffs' amorphous demand for further "relevant information and documents" suggests that Plaintiffs cannot in fact identify relevant materials that they are lacking, which is unsurprising given the breadth of Google's prior productions.

Against this backdrop, we do not understand what additional searches or other inquiries Plaintiffs would like Google to undertake on ad tech-related topics in light of the extensive prior negotiations and agreed upon search parameters. But, as repeatedly made clear in its Responses and Objections, Google remains willing to negotiate reasonable searches in response to Plaintiffs' DTPA claims, which are only a portion of the total 101 recent RFPs.

### Definitions and Objections

Plaintiffs raise a litany of spurious complaints with Google's Responses and Objections under a section entitled "Issues with Google's Objections to Definitions." Plaintiffs may disagree with Google's objections, but Google is entitled to protect its rights through making objections and stands behind them as written.

With respect to Google's objections to Plaintiff's definitions, Google notes that the objections about which Plaintiffs complain are largely unchanged from Google's objections to the definitions in the 301 RFPs served in the MDL. It has been 11 months since Google served its responses and objections to those RFPs so Plaintiffs have acquiesced to these definition objections and Google's responses to the associated requests.

February 2, 2024
Page 4

## Plaintiffs' Duplicative Requests

Plaintiffs broadly assert an entitlement to Ad Tech materials wholly ignoring the volume of discovery already produced. Moreover, Plaintiffs assert that the past search terms utilized in the MDL, the DOJ investigation and suit, and Texas's investigation do not cover all of the responsive documents sought by the current RFPs. This is simply incorrect—the prior requests and the corresponding search terms covered all the products and product features Plaintiffs now seek in their current RFPs and were extremely broad, such that they would have swept in any documents plausibly responsive to the current RFPs.[2] Google declines Plaintiffs' unwarranted demand that it withdraw its objections to these duplicative requests.

Dynamic Revenue Share and Bernanke: Plaintiffs' letter requests further documents regarding Dynamic Revenue Share and Bernanke, but Google has already produced all responsive, non-privileged documents across a negotiated universe of custodians that contain those terms and their variants. *See* DOJ EDVA 12, DOJ EDVA 15, MDL 3, MDL 11. Indeed, Plaintiffs point to a *produced* document about Bernanke so as to support Plaintiffs' asserted entitlement to further documents about Bernanke. (Pl. Ltr. at 6 (If more such documents exist [like GOOG-DOJ-15445619], Google is required to produce them and the States are unquestionably entitled to that discovery.")). It is unclear how you expect Google to respond to this statement or what "further documents" you think remain unproduced.

Reserve Price Optimization: Plaintiffs' letter raises purported concerns about RPO-related documents based, in part, on Google's response to RFP 52. Google inadvertently adopted the response for RFP 51 (on exchange bidding) in RFP 52. Google will amend this response accordingly.[3] This is no basis to conclude that Google's other responses suffer from similar deficiencies. And, as already reflected in the responses to RFPs 53 through 68, the RPO-related requests are duplicative of prior requests and search terms—as are the rest of the ad-tech-related requests.

---

[2] As an example, Plaintiffs cite to Appendix A of Google's Responses and Objections as evidence that Google's prior search terms are insufficient to address Plaintiffs' current RFPs. But Appendix A of Google's Responses and Objections contains only some examples of past overlapping requests and search terms cited in Google's responses and objections to Plaintiffs' Requests; it is not, and did not purport to be, an exhaustive list of all requests and search terms employed in this litigation.

[3] RFP 52 seeks "[a]ll Documents and Communications related to the disclosure of Reserve Price Optimization to any Publisher, Advertiser, or other third party." This is entirely covered by MDL RFPs 180 (seeking "[a]ll Communications with Advertisers or Publishers and/or public statements concerning RPO" and all internal documents regarding the same) and 181 (seeking "[a]ll Documents concerning disclosure or non-disclosure of RPO to parties outside of Google and/or concerns about Your lack of transparency regarding RPO").

February 2, 2024
Page 5

**<u>Plaintiffs' New Privacy-Related Requests</u>**

As noted repeatedly in Google's Responses and Objections, Google remains willing to meet and confer about targeted searches in response to the State's DTPA requests. Please let us know your availability in the next week to confer on Plaintiffs' discovery requests.

Sincerely,

*<u>/s/ Robert J. McCallum</u>*

Robert J. McCallum