# EXHIBIT A

2011 TSPR (*Tribunal Supremo de Puerto Rico* [Supreme Court of Puerto Rico]) 194, 83 P.R. Offic. Trans. 44

183 D.P.R. 901, 2011 WL 6759549 (P.R.), 2011 TSPR 194, 83 P.R. Offic. Trans. 44

AGUADILLA PAINT CENTER, INC., CB GASOLINE SERVICE
GROUP and MICADA DE PUERTO RICO, INC., Respondents,

v.

ESSO STANDARD OIL COMPANY (PUERTO RICO), Petitioner.

In the Supreme Court of Puerto Rico.
*Number:* CC-2010-1135

### Synopsis

*CERTIORARI* PETITION to request the review of a RESOLUTION by *Guillermo Arbona Lago, José L. Miranda de Hostos* and *Mildred G. Pabón Charneco*, Judges of the Court of Appeals, who concluded that, after a weighted analysis of the appeal filed and the documents contained in the file, Esso Standard Oil Company had not put the court in a position to grant the requested remedy and that the appealed opinion did not merit its intervention at this procedural stage. *The Resolution issued by the Court of Appeals is revoked and, consequently, the cause of action based on Art. 4A of the Gasoline Producers, Refiners and Distributors-Wholesale Control Act, 23 LPRA sec. 1104a, as amended, before the Court of First Instance, for lack of jurisdiction.*

*Salvador Antonetti Stutts, Carlos A. Valldejuly Sastre, Carlos J. Sagardía Abreu, Pedro A. Delgado Hernández* and *Carla Framil Ferrén*, by *O'Neill & Borges*, attorneys for the petitioning party; *José A. Ramos Díaz*, attorney for the respondent; *Irene S. Soroeta Kodesh*, prosecutor general, *Amir Cristina Nieves Villegas*, assistant prosecutor general, *Leticia Casalduc Rabell*, deputy prosecutor general, and *José G. Díaz Tejera*, Assistant Secretary of the Office of Monopolistic Affairs of the Department of Justice, *amicii curiae.*

THE ASSOCIATE JUDGE MR. KOLTHOFF CARABALLO issued the opinion of the Court.

On this occasion, the dispute at hand is relatively simple: does a private person, a gasoline retailer, have legal standing to file a cause of action before the Court of First Instance against a distributor-wholesaler of that product for alleged violations of the provisions related to the duty of operational separation established in Art. 4A of the Gasoline Producers, Refiners and Distributors-Wholesale Control Act? [1] When answering this question, we jointly interpreted for the first time jointly two statutes that regulate competition in the gasoline market, namely: the Gasoline Producers, Refiners and Distributors-Wholesale Control Act, Law No. 3 of March 21, 1978, as amended, 23 LPRA sec. 1101 *et seq.*(Gasoline Law), and the Monopolies Law **\*909** and Restriction of Trade, Law No. 77 of June 25, 1964, as amended, 10 L.P.R.A sec. 257 *et seq.*(Monopolies Law).

### I

The petitioner, Esso Standard Oil Company (the petitioner or Esso), is a corporation dedicated to the import, distribution, and sale of gasoline in bulk, that is, a distributor-wholesaler. [2] For its part, the respondents Aguadilla Paint Center, Inc., and CB Gasoline Service Group, Inc. (the respondents) are retail operators,[3] that is, retail sellers of gasoline, in this case gasoline imported, distributed, and sold by the petitioner Esso (brand retailers).

In August 2004, the respondents filed a lawsuit with the trial court in which they charged that the petitioner Esso, inter alia, incurred the practice of operational linkage, in contravention of Art. 4A of the Gasoline Law, supra, and Art. 7 of the Monopolies Law. [4] In addition, they requested compensation for damages, according to Art. 1802 of the Civil Code, 31 LPRA sec. 5141.

After multiple procedural incidents, [5] on March 12, 2010, Esso requested the dismissal of the lawsuit **\*910** under Rule 10.2 of the Civil Procedure. [6] In its motion, Esso essentially argued that the cause of action of the respondents, based on the obligation of "operational separation" established in Art. 4A of the Gasoline Law, *supra*, should be dismissed because Art. 8 of the Gasoline

Aguadilla Paint Center v. Esso, 183 D.P.R. 901 (2011)

2011 TSPR (*Tribunal Supremo de Puerto Rico* [Supreme Court of Puerto Rico]) 194, 83 P.R. Offic. Trans. 44

Law, 23 LPRA sec. 1108, establishes that a violation of Art. 4A "shall constitute an unfair or deceptive practice or act and shall be subject to the provisions of sec. 257 et seq." of the Monopolies Law, *supra.*

The trial court declared Esso's motion for dismissal "inadmissible" by concluding "that a private entity such as the plaintiff may file a lawsuit under Article 7 of the [Gasoline Law, 23 LPRA Sec. 1107] on competition in the gasoline market, with the Court of First Instance." [7] Dissatisfied, Esso appealed to the Court of Appeals through a *certiorari appeal.* The court concluded that, after a careful analysis of the appeal filed and the documents on file, Esso had not placed it in a position to grant the requested relief and that the appealed opinion did not merit its intervention at that procedural stage.

In view of this opinion, Esso appeared before this Court by means of a *certiorari* appeal outlining the following points of error:

> The Court of Appeals erred by not issuing the requested order and not recognizing that Art. 12(a) of the Monopolies Law excludes private lawsuits for alleged operational linkage under Art. 4A of the Gasoline Law.

> The Court of Appeals erred by not issuing the requested order and not ordering the dismissal of the lawsuit under Art. 4A of the Gasoline Law, since the plaintiffs do not have legal standing to initiate it and, therefore, the Court of First Instance lacks jurisdiction over the matter to hear it. **\*911**

> The Court of Appeals erred in determining that Esso did not place it in "a position to grant the requested relief," since the criteria for the issuance of the order contained in Rule 40 of the Rules of the Court of Appeals were met. Request for *certiorari*, p. 8.

Once the *certiorari* has been issued, we ceased the procedures and ordered the parties to submit their corresponding arguments. [8] With the benefit of the position of all parties, we resolve.

## II

### A. *Gasoline Producers, Refiners and Distributors-Wholesale Control Act*

[1] As it appears in its Statement of Reasons, the approval of the Gasoline Producers, Refiners and Distributors-Wholesale Control Act, Law No. 3 of March 21, 1978, as amended, 23 LPRA sec. 1101 *et seq.*, was intended to, among others, combat the problem "that represents controlling energy product supplies and, especially, gasoline and other petroleum and natural gas fuels, continuing to focus on the hands of a few who dominate all aspects of production, refining, and marketing of these products." [9] In such a way that the legislator sought to eliminate the competitive advantages existing in the gasoline or special engine fuels market, and to have oversight of that process and to establish measures for the fulfillment of the purposes pursued by said statute. In **\*912** accordance with this purpose, the legislator typified offenses and set penalties for violators of the statute.

In this way, the Legislative Assembly determined that, in the absence of competitive uniformity, it was necessary to institute careful safeguards that prevented the actions of oil companies and distributors of energy products aimed at monopolizing the points of public distribution of gasoline. [10] In addition, the Gasoline Law seeks to protect the retail fuel sales industry from any discriminatory practice that seeks to eliminate the individual gasoline retailer from market competition, as well as from those discriminatory practices and control over the price structure aimed at favoring some retailers to the detriment of others and the consumer. [11]

[2] On the other hand, just a few months after the passage of the Gasoline Law, the Legislature approved, as an addendum to the latter, Law No. 73 of June 23, 1978, as amended, 23 LPRA sec. 1131 *et seq.* (Law No. 73), aimed at the "Regulation and Control of the Gasoline Industry." With the passage of Law No. 73, "the gasoline industry, in all its facets, was declared covered by public interest." [12] In doing so, it was recognized that the gasoline industry is a fundamental element for the safety and well-being of the people of Puerto Rico. This is because the availability of that product was largely dependent at the time—and obviously continues

2011 TSPR (*Tribunal Supremo de Puerto Rico* [Supreme Court of Puerto Rico]) 194, 83 P.R. Offic. Trans. 44

to be so today—on the normal functioning of our economy and the continued development of the daily activities of the Country. [13] **\*913**

Consistent with the Gasoline Law, the purpose of Law No. 73 is to effectively regulate certain aspects of the gasoline industry and thus ensure that the interests of the people of Puerto Rico are adequately protected from harmful practices that take place at any of the different operational levels of that industry. [14] In so doing, the legislator indicated that it is the Government that is responsible for ensuring that there is a stable situation within all activities that affect the general well-being of the citizens, as well as to ensure the good order of the community and the protection of the best interests of the economic and government system. [15]

To fulfill its purposes, Law No. 73 established certain obligations and prohibitions detailed in its Art. 3. [16] Among them, and as an example, it is prohibited that in relationships between distributors-wholesalers and retailers, there are simultaneously lease and lease-back (*lease and lease-back*) agreements, when said relationship has the effect or purpose of canceling the payment obligation between the parties or unreasonably restricting the right to free contracting or disposal of the property. [17] In addition, Law No. 73 established the obligation for any distributor-wholesaler to present at the Office of Monopolistic Affairs (O.A.M.) [18] a legible copy of any contract establishing a commercial relationship with a retailer, within ten days following its execution, as well as any subsequent amendment or modification thereof. **\*914**

Together, and to ensure the fulfillment of its objectives and purposes, Law No. 73 empowered several government agencies and imposed on them the responsibility to carry out various functions. These agencies include the Department of Commerce,[19] the Public Service Commission, the Planning Board, the Regulations and Permit Administration, and *the Department of Consumer Affairs* (D.A.Co.). [20]

Finally, it is necessary to consider what Art. 5 of Law No. 73 establishes in relation to the Monopolies Law, *supra*:

Sec. 1134. Application of the Monopolies Law

Nothing herein provided or promulgated by regulation or otherwise, pursuant to the provisions of Sections 1131 to 1135 of this title, shall be construed as excepting or conferring immunity as to the applicability of the provisions of Sections 257 to 274 of Title 10. [21]

[3] In summary, it is evident that, from its inception, both the Gasoline Law and its *addendum*, Law No. 73, provided not only for the protection of the retail fuel sales industry of any discriminatory practice to the detriment of the best interests of the people of Puerto Rico, but they expressly recognized the intervention of the Monopolies Law in such a process. Thus, both laws provided for the action of the Puerto Rico Department of Justice, through the O.A.M., to be fundamental in compliance with its auditing provisions. In addition, the legislator arranged for other government agencies, such as the D.A.Co., to also participate.

[4] In line with all of the foregoing, Art. 2(a) of the Gasoline Law, *supra*, 23 LPRA sec. 1102(a), establishes that **\*915**

... no producer, refiner or distributor-wholesaler will acquire or establish, open, operate or recover to operate any gasoline retail service station to be operated by personnel of their own company or subsidiary company, agent, commission agent, or under contract with any natural or legal person, operating or administering said retail service station by means of a paid agreement or arrangement with said producer, refiner or distributor-wholesaler. The gas sales service station may only be operated by a retailer.

[5] Likewise, Art. 4 of the Gasoline Law, *supra*, 23 LPRA sec. 1104, establishes that

Case 4:20-cv-00957-SDJ   Document 260-4   Filed 02/21/24   Page 5 of 23 PageID #:  7378

Aguadilla Paint Center v. Esso, 183 D.P.R. 901 (2011)

2011 TSPR (*Tribunal Supremo de Puerto Rico* [Supreme Court of Puerto Rico]) 194, 83 P.R. Offic. Trans. 44

[e]very petroleum producer or refiner or distributor-wholesale of petroleum products that supplies gasoline and/or special fuels to service stations for the retail sale of such products shall be obliged to uniformly provide to all retailers selling gasoline and/or special fuels to whom it supplies, any discount, deduction, decrease or reduction in prices granted directly or indirectly. [22]

[6] Now, directly related to the dispute at hand, we analyze Art. 4A of the Gasoline Law, *supra*, which provides the following:

*Sec. 1104a . Operational Separation*

No refiner, oil producer or distributor-wholesaler may, by agreement, arrangement, contract, corporate operational plan, with any retailer and/or natural or legal person, or in any other way directly operate a **\*916** gasoline retail service station in a way that prevents its complete operational separation. No refiner, oil producer or distributor-wholesaler may, by agreement, arrangement, contract, operational corporate plan, with any retailer and/or natural or legal person, or in any other way directly impose, require, set or limit the profit margin and/or retail price of gasoline and/or special fuels at the retail service station.

[7] Art. 4A of the Gasoline Law, *supra*, is the result of an amendment made to this statute by Law No. 157-1996 (Law No. 157) and another amendment to the article itself, which adds the second sentence, by the approval of Law No. 74-2005. The article establishes the "operational separation" or, in other words, prohibits the so-called "operational link" of gasoline wholesalers with retail sales stations. Law No. 157 also amended the Gasoline Law to establish that "operational separation" is the cessation by a refiner, oil producer, or distributor-wholesaler "of directly participating in the operation or commercial exchange activities of the retail sale of gasoline and special fuels at retail service stations." [23]

[8] On the other hand, and fundamental to the dispute at hand, we must also consider Art. 8 of the Gasoline Law, which provides the following:

*Sec. 1108. Violation of Fair Competition*

Any violation of Sections 1102, *1102a*, *1104*, *1104a*, *1105* and 1105a of this title *shall constitute an unfair [or] deceptive act or practice and shall be subject to the provisions of Sections 257 et seq. of Title 10.* (Emphasis added.) [24]

[9] Art. 8 of the Gasoline Law, *supra*, is intended for two intimately linked purposes. First, institute **\*917** as "unfair or deceptive practice or act" any violation of Arts. 2, 2A, 4, 4A, 5 and 5A of the Gasoline Law. Second, *establish that any violation of the aforementioned articles will be subject to the provisions of the Monopolies Law.* Complementing this provision, Art. 10 of the Gasoline Law provides that "[t]he fulfillment of the purposes and provisions of sections 1101 to 1110 of [the Gasoline Law] shall be the responsibility of the Secretary of Justice, through its Office of Monopolistic Affairs." [25]

In its original version, Art. 8 of the Gasoline Law, *supra*, provided as follows:

Any violation of Arts. 4, 5, 6, and 7 shall constitute an unfair or deceptive act or practice and shall be subject to the provisions of Article 3 of Law No. 77 of June 25, 1964. [26]

Note that this article originally referred to violations of Art. 4 of the Gasoline Law, *supra*, which establishes the obligation of any petroleum producer or refiner or distributor-wholesaler of petroleum products to be consistent in any discount, deduction, decrease or reduction in prices to retailers; violations of Art. 5, which establishes the obligation of any oil producer or refiner or distributor-

Aguadilla Paint Center v. Esso, 183 D.P.R. 901 (2011)

2011 TSPR (*Tribunal Supremo de Puerto Rico* [Supreme Court of Puerto Rico]) 194, 83 P.R. Offic. Trans. 44

wholesaler of petroleum products to provide uniformity in equipment rental and signs to retailers, and violations of Art. 6, which establishes the obligation of any oil producer or refiner or distributor-wholesaler of petroleum products to institute indiscriminate proration and uniform distribution among all retailers to whom it supplies gasoline for sale, during times of shortages, or decrease in the supply or availability of gasoline or special fuels. On the other hand, Art. 8 in its original version also referred to violations of Art. 7, **\*918** which establishes a prohibition on the retailer to request or induce the concession or reduction in prices of equipment rentals and signs. As can be seen, each provision to which Art. 8 in its original version referred—Arts. 4 to 7—contained *a prohibition* whose violation constituted "an unfair or deceptive practice or act."

However, since its original wording, Art. 8 of the Gasoline Law, *supra*, has been amended twice. The first amendment through the approval of Law No. 157-1996 (Law No. 157), which in its Statement of Reasons indicated the following (referring to Law No. 3 of 1978, Gasoline Law):

> In 1978, the Legislative Assembly passed legislation *aimed at protecting gasoline retailers from potential predatory practices by wholesale gasoline distribution companies.* One of those laws, Law No. 3 ... provided that *no wholesale company could directly operate gasoline stations*, subject to certain exceptions. *Responsibility for monitoring compliance with this law was assigned to the Secretary of Justice through its Office of Monopolistic Affairs.* (Emphasis added.) [27]

As can be seen in the Statement of Reasons of Law No. 157, the Legislative Assembly mentioned the Gasoline Law among those laws whose intention is to "protect gasoline retailers from possible *predatory practices on the part of wholesale gasoline distribution companies*." (Emphasis added.) [28] In addition, it noted that the Gasoline Law "provided that no wholesale company could directly operate gasoline stations, subject to certain exceptions." [29] In such a way that Law No. 157, in its Statement of Reasons, recognized as a predatory practice, that is, harmful to retailers and prohibited by the Gasoline Law, that in which the **\*919** wholesaler directly operated a gasoline station. He also pointed out that the supervision of that prohibition was a matter for the *Office of Monopolistic Affairs.*

On the other hand, in its last paragraph, the Statement of Reasons of Law No. 157 also indicates as its purpose to amend the Gasoline Law so that there is complete separation established between retail sales operations and those of wholesalers and gasoline refiners. The aforementioned text provides as follows:

> This measure aims to close the exception gaps that, because they were opened in 1978, have limited the achievement of public objectives in this industry. *Specifically, the complete separation is established between retail sales operations and those of wholesalers and gasoline refiners, providing a period for the necessary separations to be carried out until it is achieved.* (Emphasis added.) [30]

As part of the amendments made to the Gasoline Law aimed at establishing the "complete separation between operations" of retailers and wholesalers, Law No. 157 created the aforementioned Art. 4A, which prohibits any act that prevents the so-called "operational separation." The definition of "operational separation," which Law No. 157 itself also established as one of the amendments to the Gasoline Law, *supra*, states that it "[o]ccurs when a ... wholesale distributor ceases to participate directly in the operation or commercial exchange activities of the retail sale of gasoline ... at retail service stations." [31]

Case 4:20-cv-00957-SDJ    Document 260-4    Filed 02/21/24    Page 7 of 23 PageID #: 7380

Aguadilla Paint Center v. Esso, 183 D.P.R. 901 (2011)
2011 TSPR (*Tribunal Supremo de Puerto Rico* [Supreme Court of Puerto Rico]) 194, 83 P.R. Offic. Trans. 44

However, the amendment to Art. 8 of the Gasoline Law, *supra*, produced by Law No. 157, changed the majority of the articles referred to in the original article version. The version of Art. 8 after the amendment of Law No. 157 became as follows: **\*920**

> Any violation of Articles 1, 2, 3, 4, and 5 shall constitute an unfair or deceptive practice or act and shall be subject to the provisions of Article 3 of Law No. 77 of June 25, 1964, as amended .... 1996 Puerto Rico Laws 686.

In analyzing the above text, we have to conclude that the aforementioned amendment to Art. 8 that was introduced by Law No. 157 produced illogical changes in some cases and inconsequential changes in others. We will explain ourselves. First, it has no relation to the logic that a law whose Statement of Reasons indicates that its purpose is to amend the Gasoline Law to establish a complete separation between retail and wholesale sales operations, thus avoiding "possible predatory [monopolistic] practices on the part of wholesale gasoline distribution companies"; which creates Art. 4A of "operational separation" for those purposes, and which acknowledges that the supervision of such compliance rests on the *expertise* of the OAM, does not include Art. 4A as part of the amendment to the aforementioned Art. 8 of the Gasoline Law, *supra*.

On the other hand, the amendment to Art. 8 of the Gasoline Law, *supra*, which introduced Law No. 157, also included, as "unfair or deceptive practice or act," any violation of Art. 1 of the Gasoline Law, *supra*, 23 LPRA sec. 1101. However, Art. 1 of the Gasoline Law, *supra*, only established at that time—and currently establishes—a series of definitions of terms, none of which constitutes a prohibition *per se*. Therefore, no one could commit a violation of Art. 1 of the Gasoline Law, *supra*, since such an article did not prohibit nor does it prohibit anything.

Finally, the same thing happened with Art. 3 of the Gasoline Law, *supra*, 23 LPRA sec. 1103. Said article established at the time—and remains the same today—the creation of the "Interagency Committee on the Gasoline Industry." As was the case with Art. 1 ("Definitions"), Art. 3 did not constitute any prohibition, so the inclusion **\*921** of that article in the list established by the amendment of Law No. 157 to Art. 8 of the Gasoline Law, *supra*, was totally inconsequential.

Thus, the question that is applicable is what the final wording and approval of Art. 8 of the Gasoline Law, *supra*, followed, after the amendment incorporated by Law No. 157. Although legislative history does not provide too much light on this matter, we do find that the first version of the amendment to this article (which was presented in the Bill in the House of Representatives) indicated that it would constitute an unfair or deceptive practice or act "[a]ny violation of Articles 2, 4, 4A, 5, 5A, 6, 6A, and 7". (Emphasis on original and added.) [32]

On the other hand, when codifying the version of the second and last amendment undergone by this article through Law No. 74-2005, the following codifying note is indicated in its revision:

> The amending law of 1996 appears to have referred to Arts. 1, 2, 3, 4, and 5 of the law itself instead of the articles amended or added thereto, namely: Arts. 1, 2, 4A, 5A and 8, i.e., sec. 1101, 1102, 1104a, 1105a and 1108 of this title. *However, because it is similar to the content of the sections originally referred to in the 1978 law, it could be that the 1996 law attempted to refer to Arts. 4, 4A, 5 and 5A of the law, sec. 1104, 1104a, 1105 and 1105a of this title.* (Emphasis added.) 23 LPRA sec. 1108 n.

2011 TSPR (*Tribunal Supremo de Puerto Rico* [Supreme Court of Puerto Rico]) 194, 83 P.R. Offic. Trans. 44

In considering all of the above, we are certain that the version of Art. 8 of the Gasoline Law, *supra*, which appears as a result of the amendment made by Law No. 157, was the product of a likely typographical error, which did not reflect the intention or will of the legislator. As the codifying note of the revision of this article suggests, we understand that the intention of Law No. 157 was to include Arts. 4, 4A, 5, and 5A in version **\*922** of Art. 8 of the Gasoline Law, *supra*, and its exclusion responds to a mere clerical error.

**[10]** We determine the foregoing, considering the standard of legal hermeneutics that we reiterate in *Passalacqua v. Mun. of San Juan,* 116 D.P.R. 618, 623 (1985), where we indicate the following:

> In *Roig Commercial Bank v. Buscaglia, Tes.*, 74 D.P.R. 986, 998 (1953), this Court determined that if a word, phrase, or provision has been approved inadvertently or by error, *especially if it is contrary to the rest of the law or would limit the effectiveness of the law, it can be eliminated. We understand that under the same circumstances a phrase or words can be added, so that legislative intent can be met.* (Emphasis added.)

So, being consistent with what our guideline on legal interpretation has been when faced with situations in a law such as the case in question, we determined that the legislator intended that Art. 4A shall be part of those listed in Art. 8 of the Gasoline Law, *supra*, from the approval of Law No. 157; this must be interpreted.

**[11]** To finalize the analysis of the articles of the Gasoline Law that are necessary to consider for the resolution of the case in question, we must refer to Art. 7 of the aforementioned law, 23 LPRA sec. 1107. This article provides the following:

*Sec. 1107. Retailer Obligation*

No natural or legal person *operating a retail service station* may knowingly solicit or induce the concession or reduction in prices or the equipment rental and signs, in violation of Sections 1104 and 1105 of this title. (Emphasis added.)

As it clearly appears in its text—including the title—this article is directed *only* to the fuel retailer, prohibiting it from knowingly inducing or requesting a **\*923** (but not limited to) producer or distributor-wholesaler to grant or reduce prices or equipment rental and signs, in violation of Arts. 4 and 5 of the Gas Law, *supra*. In other words, the object of prohibition is that *of a retailer* who intends to request or induce a producer or distributor to provide different prices for gasoline or special fuels, than those provided to other retailers, in violation of Art. 4 of the Gasoline Law, *supra*. Likewise, the article is intended only for those *retailers* who request or induce the producer or distributor-wholesaler (among others) to provide them with different equipment rental and signs than provided to other retailers, in violation of Art. 5 of the Gasoline Law, *supra*.

B. *Monopolies Law*

**[12]** Monopolies laws, as well as those intended to establish fair competition and establish restrictions on trade, constitute statutes that require extreme care both in their legislation and in their legal interpretation. The objective that inspires this type of statute is based on pressing interests and, as such, is indispensable for the economy of the jurisdiction in which they are applied.

Thus, in *Colón Cabrera v. Caribbean Petroleum*,[33] we state in relation to our Monopolies Law that, "considering that it is a matter that affects the foundation of our democratic society, we understand that the purposes underlying said legislation are of the highest level and constitute an urgent interest of the State."

The main purpose of this type of statute lies in the fundamental economic principle that provides for the preservation of freedom of competition and the hindrance of **\*924** any practice that harms the development of the different markets. Therefore, such statutes

Case 4:20-cv-00957-SDJ   Document 260-4   Filed 02/21/24   Page 9 of 23 PageID #:  7382

Aguadilla Paint Center v. Esso, 183 D.P.R. 901 (2011)

2011 TSPR (*Tribunal Supremo de Puerto Rico* [Supreme Court of Puerto Rico]) 194, 83 P.R. Offic. Trans. 44

aim to eradicate abusive, unfair, and monopolistic acts that tend to limit commercial activity, thus favoring free and open competition in the markets. [34]

**[13]** In Puerto Rico, the Monopolies Law was drafted based on two federal statutes: the Sherman Act[35] and the Clayton Act. [36] In fact, this is also the pattern in most states of the Union that also have statutes that somehow regulate competition, monopolies, and trade restrictions, and that contain provisions comparable to those of federal antitrust laws.

Our Monopolies Law was enacted "to assure the People in general, and small merchants in particular, the benefits of free competition." [37] As we pointed out in *Colón Cabrera v. Caribbean Petroleum*, *supra*, p. 594, the purpose of the Monopolies Law is to

... avoid "the collusion between firms to dominate the market, [the] hoarding of raw materials, [the] improper price increases resulting from a monopolistic position, [the] discriminatory practices in customer relations [and the] extreme concentration of economic activity and wealth in some large consortiums of companies." (Brackets in original.)

However, with regard to the dispute in question, it is necessary to consider, in particular, Articles 3(a) and 12(a) of the Monopolies Law. **\*925**

### C. *Art. 3(a) of the Monopolies Law*

**[14]** Where applicable, Art. 3(a) of the Monopolies Law[38] provides that "[t]he unfair competition methods, as well as *unfair or deceptive practices or acts* in business or trade" shall be illegal. (Emphasis added.) Likewise, subsection (c) of this article establishes the following:

(c) Without prejudice to the power to use the means authorized by sec. 269 of this title [*injunctions*], the Office of Monopolistic Affairs may file and process administrative complaints with the Department of Consumer Affairs to prevent, avoid, and stop violations of subsection (a) of this section or the regulations approved in accordance with subsection (b) thereof. [39]

Unlike other provisions of the Monopolies Law, Art. 3 was based on Sec. 5(a)(1) of the law created by the Federal Trade Commission (15 U.S.C.A. sec. 45), which, like Art. 3(a), declares unfair competition methods and unfair or deceptive acts or practices affecting trade illegal. [40]

**[15–16]** On the other hand, subsection (c) of Art. 3 of the Monopolies Law, 10 LPRA sec. 259(c) expressly empowers the Office of Monopolistic Affairs of the Department of Justice to act as a supervisory body before the D.A.Co. regarding any violation by "unfair competition methods, as well as unfair or deceptive practices or acts in business or trade." The Office of Monopolistic Affairs was created by Art. 16 of the aforementioned statute to implement the purpose that inspires it. [41] The OAM is an entity attached to the Department **\*926** of Justice, with powers for the administration of legislation on monopolistic practices, as well as for the oversight thereof. In addition, it has the power to enact regulations and proscribe actions that constitute unfair competition methods and practices or unfair or deceptive acts in business or trade. [42] In short, the OAM is an entity created with a delegation of broad powers that allows the State to have the precise investigative instruments to fulfill the supervisory purpose of the Monopolies Law. [43] There is no doubt that, according to Art. 3 of the Monopolies Law, *supra*, the OAM is the government body with the ministerial duty to supervise and ensure compliance with that law.

**[17]** However, please note that Art. 3 of the Monopolies Law, *supra, does not* confer adjudicative powers on the OAM. In other words, it is not the OAM that is responsible for adjudicating a dispute, but rather investigating and presenting the cause of action. Subsection (c) of Art. 3 of the Monopolies Law, *supra*, provides not only that it is before the D.A.Co. that the O.A.M. may file and process complaints seeking to prevent, avoid and stop violations of subsection (a) of the same article, but the rest of the article establishes a whole procedural and appellate scheme to be followed before that agency, of which we will mention some details.

2011 TSPR (*Tribunal Supremo de Puerto Rico* [Supreme Court of Puerto Rico]) 194, 83 P.R. Offic. Trans. 44

Thus, subsection (c) of Art. 3 of the Monopolies Law, *supra*, establishes that once the defendant has been notified of the complaint against it, D.A.Co. must hold a hearing and resolve the dispute between the parties, granting the most appropriate remedy as soon as possible. [44] Meanwhile, subsection (d) establishes that the OAM will have a period of thirty days to file the appeal for review of the D.A.Co. decision **\*927** to the Court of First Instance, if it was not in its favor. [45] For its part, subsection (e) establishes how such an appeal for review will be formalized before the Court of First Instance, of which the defendant and D.A.Co. must be notified, which will have a term of fifteen days to request an intervention. [46]

Subsection (g) establishes that the Court of First Instance will review the decision of the D.A.Co.. based on the administrative record that was submitted to the agency and only with regard to the conclusions of law. *In addition, D.A.Co.'s factual determinations "will be conclusive to the court if supported by substantial evidence."* [47]

It is evident that by direct reference to that agency, by the very detailed procedure established before it, and considering the nature of the causes of action that involve monopolistic disputes—especially in the face of allegations of unfair or deceptive practices or acts—the legislator decided that it was the D.A.Co. that had the exclusive primary jurisdiction to process and adjudicate any complaint filed by the OAM.

**[18]** The exclusive primary jurisdiction of D.A.Co. in this matter is further confirmed by the Organic Law of the Department of Consumer Affairs itself, Law No. 5 of April 23, 1973, as amended,[48] which in its Art. 6(x) includes among the powers and authorities exercised by the Secretary of Consumer Affairs the "[a]djudication of claims that the Office of Monopolistic Affairs of the Department of Justice may file and process under the provisions of sec. 259 [Art. 3] of **\*928** Title 10." [49] As we can see, in harmony with Art. 3(c) of the Monopolies Law, subsection (x) of Art. 6 of the Organic Law of the D.A.Co. confers jurisdiction on that agency to adjudicate the complaints presented to it by the OAM under Art. 3 of the Monopolies Law.

**[19]** In conclusion, it is the Department of Justice, through the OAM, that, in accordance with the legislative mandate, is responsible for directly supervising the violations of the Monopolies Law, specifically with regard to violations of the provisions of unfair trade practices, including any unfair or deceptive practice or act. In addition, we conclude that, in accordance with Art. 3 of the Monopolies Law, *supra*, the D.A.Co. is the exclusive responsible primary jurisdiction in any cause of antimonopoly action undertaken by the OAM corresponds, whose cause of action is based on any unfair or deceptive practice or act.

### D. *Art. 12(a) of the Monopolies Law*

**[20–21]** As we have already established, a violation of the prohibition of operational linkage established in Art. 4A of the Gasoline Law, supra, constitutes an "unfair or deceptive practice or act," an action that would be subject to the provisions of our Monopolies Law, in accordance with Art. 8 of the Gasoline Law, *supra*. Therefore, in view of the allegation of a violation of the provision that requires such "operational separation," refer to those articles of the Monopolies Law that concern "unfair or deceptive practices or acts" to trade, to resolve any questions on this matter. We have already analyzed Art. 3 of the Monopolies Law, *supra*, so we have to discuss Art. 12 of the aforementioned statute, specifically subsection (a), which provides: **\*929**

*Sec. 268. Lawsuits for harmed people*

(a) Anyone who is harmed in their business or property by another person by reason of acts, or attempted acts, prohibited or declared illegal by the provisions of this chapter, *except for those of Sections 259* and 261 of this title, may file a lawsuit on account of such acts before the Court of First Instance and shall have the right to recover three (3) times the amount of the damages suffered, plus the costs of the proceeding and a reasonable amount for attorneys' fees. (Emphasis added.) [50]

Art. 12(a) of the Monopolies Law, *supra*, establishes the so-called "triple damage remedy" for any person who suffers damages as a result of antimonopoly acts. The legal action to recover such damages must be initiated within four years from the start of the cause of action. [51] However, it *is clearly deduced from the text of this subsection (a) of Art. 12 of the Monopolies Law*, *supra*, *that,*

Aguadilla Paint Center v. Esso, 183 D.P.R. 901 (2011)

2011 TSPR (*Tribunal Supremo de Puerto Rico* [Supreme Court of Puerto Rico]) 194, 83 P.R. Offic. Trans. 44

*without any distinction, it exempts from its jurisdictional scope any cause of action that is intended or has to be initiated under Section 259 of the Monopolies Law itself; that is, any cause of action for unfair or deceptive practices or acts.*

### III

In the present case, we have no doubts regarding the fact that a private person, whether natural or legal, lacks standing to file a cause of action against a distributor-wholesaler for alleged violation of Art. 4A of the Gasoline Law, *supra.* This clearly arises from each statute concerned. We shall look.

Art. 8 of the Gasoline Law, *supra*, establishes as an "unfair [or] deceptive practice or act" any violation of Art. 4A of the aforementioned law and states that such violation **\*930** "will be subject to the provisions of Section 257 et seq. of Title 10," that is, to section 257 "and the following" of the Monopolies Law.

For its part, Art. 3(a) of the Monopolies Law (10 LPRA sec. 259(a)) declares "unfair or deceptive practices or acts" as illegal, which is precisely the conduct described and referred to in the scope of that law by Art. 8 of the Gasoline Law, *supra.* Please note, then, that there is clear identification or concordance in the language used in both provisions. Thus, by the clear language of both statutes—the Gasoline Law and the Monopolies Law—it is evident that the legislator provided, through Art. 8 of the Gasoline Law, *supra*, that any violation of Art. 4A of that law was understood, covered, or was under the jurisdictional scope of Art. 3 of the Monopolies Law, *supra.*

**[22]** Once we determine that the conduct prohibited by Art. 4A of the Gasoline Law, *supra*, is under the jurisdictional scope of Art. 3 of the Monopolies Law (10 L.R.P.A. sec. 259), we face Art. 12(a) of the Monopolies Law, *supra*, which, in turn, expressly exempts from its jurisdictional scope any action that is filed under the aforementioned section 259. Therefore, any private person who suffers damages due to actions prohibited by the Monopolies Law has a triple damage remedy under Art. 12(a) of the Monopolies Law, *supra, except that its cause of action is based on Art. 3 of the Monopolies Law (10 LPRA sec. 259)* 52 Thus, obviously, *all causes of action under Art. 4A of the Gasoline Law, supra, are excluded from the possibility of the \*931 triple damage remedy provided by Art. 12(a) of the Monopolies Law, supra.*

**[23]** In this context, Esso argues that the court of instance erred by not dismissing, under Rule 10.2 of Civil Procedure, the claim of the appealed parties based on Art. 4A of the Gasoline Law. [53] It is right. Rule 10.2 of Civil Procedure of 1979 (32 LPRA Ap. V) establishes privileged defenses that, as such, can be presented at any time in the process. [54] That is, such defenses are not lost if they are not raised in the answer to the lawsuit or sooner. Among those privileged defenses, Rule 10.2 includes a lack of jurisdiction over the subject matter. [55]

**[24]** Recently, in Gonzalez v. 📁 Mayagüez Resort & Casino, 176 D.P.R. 848, 855 (2009), we reiterate our guideline in the sense that the absence of jurisdiction on the matter:

> (1) is not capable of being remedied; (2) the parties may not voluntarily confer it on a court of law nor may the court arrogate it to them; (3) entails the nullity of the opinions issued; (4) imposes on the courts the unavoidable duty to examine its own jurisdiction; (5) imposes on the appellate courts the duty to examine the jurisdiction of the forum from which the appeal comes, and (6) may occur at any stage of the proceeding at the request of the parties or by the court itself.

**[25]** On the other hand, a plaintiff party has legal standing if it meets the following requirements: "(1) it has suffered clear and palpable damage; (2) the aforementioned damage is real, immediate, and precise, and not abstract or hypothetical; (3) **\*932** there

Aguadilla Paint Center v. Esso, 183 D.P.R. 901 (2011)

2011 TSPR (*Tribunal Supremo de Puerto Rico* [Supreme Court of Puerto Rico]) 194, 83 P.R. Offic. Trans. 44

is a connection between the damage suffered and the cause of action exercised, and (4) *the cause of action appears under the Constitution or of a law.*" (Emphasis added.) [56] Therefore, considering that, as we have established, a private person cannot file a cause of action for alleged violation of Art. 4A of the Gasoline Law, *supra*, the respondents lack a cause of action that appears under a law. As such, the court of instance certainly lacked jurisdiction over the matter to address such cause of action and should have dismissed it, in accordance with Rule 10.2 of Civil Procedure of 1979, *supra*.

[26] On the other hand, we recently established in *SLG Semidey Vázquez v. ASIFAL*, 177 D.P.R. 657, 676 (2009), that "if [a] statute confers jurisdiction on the administrative body, it is a statutory (exclusive) jurisdiction." [57] There, we also prescribe the following:

> The concept *of statutory or exclusive jurisdiction* relates to the concurrent primary jurisdiction but is different in scope and nature. In exclusive jurisdiction, these are situations in which the doctrine of *concurrent primary jurisdiction* does not apply because the law itself clarifies that the latter does not exist. That is, the statute itself establishes exclusive jurisdiction. In such cases, we face a legislative mandate. Hence, when a statute expressly confers jurisdiction on an administrative body on certain types of matters, the courts will not have the authority to elucidate the case in the first instance. Of course, the exclusive primary jurisdiction does not preclude further judicial review of the body's decision. (Citations omitted and emphasis in original.) [58]

[27] By observing the express, broad, and detailed manner in which the legislator expressed himself, we determine **\*933** that, with exception to the remedies authorized by sec. 269 (injunctions), Art. 3 of the Monopolies Law, *supra*, confers exclusive primary jurisdiction on the D.A.Co. in the determination of any violation of paragraph (a) of the article itself, that is, the use of unfair methods of competition and unfair or deceptive practices or acts in business or commerce.

As regards the determination of the court of instance in the sense that "a private entity such as the plaintiff may file a cause of action under Article 7 of the Gasoline Control Law," as we have already explained, we determine that it is clearly erroneous. Art. 7 of the Gasoline Law, *supra*, provides for a cause of action against the retailers and not in favor of them. On the other hand, in addition to the fact that the interpretation of such statute by the primary court was not correct, the truth is that the respondents never claimed a cause of action under Art. 7 of the Gasoline Law, but rather Art. 7 of the Monopolies Law, *supra*. [59]

[28] Now, regarding whether the respondents' cause of action can be compensated as a simple or ordinary remedy for damages and losses under Art. 1802 of the Civil Code, 31 LPRA sec. 5141, we find nothing in the law that prevents it; on the contrary. As the Prosecutor General points out in her special appearance, the following arises from the discussion outlined in the legislative history in relation to the court's reports from which the Monopolies Law originated:

> With regard to the actions of individuals, for triple damage, these are not authorized with respect to the acts prohibited by Article 3, *without this being attempted to affect the right to bring an ordinary action for damages, if this proceeds***\*934** *in accordance with the Civil Code or other legal principles.* (Emphasis added.) [60]

As we see, the legislator's expressions were clear. The Legislative Assembly did not intend that a cause of action such as the one in this case could not be compensated as a simple or ordinary remedy for damages and losses under the protection of Art. 1802 of the Civil Code, *supra*. Quite the opposite.

Finally, at the end of their argument, the respondents argue that the cause of action in this litigation includes events occurring from 2000 to 2005, a period of time in which Art. 8 of the Gasoline Law, *supra*, had not been amended to include Art. 4A.

Aguadilla Paint Center v. Esso, 183 D.P.R. 901 (2011)

2011 TSPR (*Tribunal Supremo de Puerto Rico* [Supreme Court of Puerto Rico]) 194, 83 P.R. Offic. Trans. 44

Therefore, the respondents conclude that as such an amendment occurred after the filing of their cause of action, this—the 2005 amendment—would have a retroactive effect in violation of Art. 3 of our Civil Code. [61] They are not right.

First, we have already determined, based on the analysis of the amended article and the legislative history of Law No. 157, *supra*, that the intention of the Legislative Assembly was that Art. 4A of the Gasoline Law, *supra*, be included under the jurisdictional scope of Art. 8 of the law itself, from the amendment of 1996. This is how we interpret it.

But, in addition, if we accept the proposal of the respondents in the sense that Art. 8 of the Gasoline Law, *supra*, did not include Art. 4A in the year when they filed their cause of action, we would still have to resolve that the 2005 amendment would not constitute an active retro-effect amendment. We will explain ourselves. **\*935**

The inclusion of Art. 4A of the Gasoline Law, *supra*, to the jurisdictional scope of Art. 8 of the Gasoline Law, *supra*, through the 2005 amendment, constituted a change in the jurisdictional aspect of this article. That is, since the 2005 amendment, all causes of action under Art. 4A of the Gasoline Law, *supra*, fall under the jurisdictional scope of Art. 3 of the Monopolies Law, *supra* (10 LPRA sec. 259). As such, the 2005 amendment, in effect, resulted in the fact that private causes of action can no longer be exercised under this article and that it is the D.A.Co. that comes to have exclusive primary jurisdiction.

Since 1905, this Curia resolved, interpreting Art. 3 of the Civil Code, *supra*, that it

> ... is a principle of Spanish law, that *the statutes that regulate jurisdiction and procedure are in the public interest, and begin to govern retroactively*, [or] rather, are not considered retroactive in such a sense, that fall under the restrictions of this article. (Emphasis added.) [62]

Also, in *Texas* 🚩 *Co. v. Sancho Bonet, Tes.*, 52 D.P.R. 658, 667(1938), we note that

> ... as stated in 59 Corpus Juris 1173, summarizing jurisprudence, "... The general rule that the statutes shall only be interpreted prospectively and not retrospectively or retroactively, *ordinarily is not applicable to statutes affecting the remedy or procedure, or, as otherwise said, that general rule is subject to an exception when it is a statute relating to the remedy or procedure*." (Emphasis added.)

Thus, considering that the amendment produced by Law No. 74-2005 to Art. 8 of the Gasoline Law, *supra*, had clearly an effect on the processes and jurisdiction of the trial court in causes of action under Art. 4A of the Gasoline Law, *supra*, such **\*936** amendment is retroactive in the framework that Art. 3 of the Civil Code, *supra*, prohibits it. [63]

**IV**

Due to the foregoing, *the Resolution issued by the Court of Appeals is revoked and, consequently, the cause of action based on Art. 4A of the Gasoline Law, supra, before the Court of First Instance, is dismissed due to lack of jurisdiction.*

*A ruling will be issued accordingly.*

Presiding Judge Mr. Hernández Denton issued a dissenting opinion, to which the Associate Judge Ms. Rodríguez Rodríguez joined.

**--O--**

Dissenting opinion issued by the Presiding Judge Mr. Hernández Denton, to which the Associate Judge Ms. Rodríguez Rodríguez joins.

2011 TSPR (*Tribunal Supremo de Puerto Rico* [Supreme Court of Puerto Rico]) 194, 83 P.R. Offic. Trans. 44

Understanding that neither the Gasoline Producers, Refiners and Distributors-Wholesale Control Law, Law No. 3 of March 21, 1978, as amended, 23 LPRA sec. 1101 *et seq.* (Gasoline Law), nor the Monopolies and Restrictive Trade Practices Act, Law No. 77 of June 25, 1964, as amended, 10 LPRA sec. 257 *et seq.* (Monopolies Law), prevent a market participant from filing an action for damages for violations of the prohibitions of the aforementioned laws, we disagree with the direction followed by a majority of this Court. In essence, we cannot **\*937** agree because the outcome of the Court's Opinion is contrary to the purposes of the disputed antitrust statutes.

<h2 style="text-align:center">I</h2>

The plaintiffs, Aguadilla Paint Center, Inc., CB Gasoline Service Group and Micada de Puerto Rico, Inc. are retailers or retail sellers of gasoline imported, distributed, and sold by Esso Standard Oil (Esso), i.e., brand retailers. In 2004, the retailers filed a lawsuit against Esso in which they charged it with incurring in unlawful practice of operational linkage and price and discount discrimination, in contravention of Art. 4A of the Gasoline Law, 23 LPRA sec. 1104a, and Art. 7 of the Monopolies Law, 10 LPRA sec. 263. Likewise, they requested compensation under Art. 1802 of the Civil Code of Puerto Rico, 31 LPRA sec. 5141. Specifically, the plaintiffs allege that Esso controls the operation of gasoline stations in violation of Art. 4A, because it establishes the cost of the gasoline, the amount of gasoline it sells, the frequency with which the gasoline is purchased, the delivery thereof, the method of payment, the suggested sale price, and the rental of the service stations. On the other hand, the cause of action for violation of Art. 7 of the Monopolies Law is based on the fact that, allegedly, Esso maintains price discrimination against equally positioned buyers.

For its part, Esso requested the dismissal alleging, in essence, that these two causes of action can only be filed by the Department of Justice. Therefore, the plaintiffs lacked legal standing.

The Court of First Instance ruled as "inadmissible" the motion to dismiss and the interim appeals forum upheld that opinion by not issuing the requested order, because it was not in a position to intervene at that procedural stage. **\*938** Dissatisfied, Esso comes before us. For their part, the plaintiffs, whose arguments were excluded from the Court's Opinion, argue that they are aware that there are a number of remedies in the aforementioned statutes that have been left to the Department of Justice. Specifically, they argue that the preliminary and permanent *injunctions* recognized in such laws to halt prohibited actions are the exclusive purview of the Secretary of Justice who has legal standing to seek them. However, the plaintiffs do not seek to interfere with those remedies. Their only plea is to be allowed to demonstrate that Esso caused them harm by violating the precepts of both laws for incurring operational linkage practices and price discrimination. Even though they originally requested it in their lawsuit, the plaintiffs contend before us that they do not claim the triple damage benefit, recognized in the antitrust statutes of the United States and Puerto Rico. Again, they just want to be allowed to demonstrate how, by engaging in the practices prohibited by the aforementioned statutes, damage was caused to them that, in some cases, resulted in the bankruptcy of family businesses.

<h2 style="text-align:center">II</h2>

<h3 style="text-align:center">A. <em>Antitrust Bylaws</em></h3>

The Gas Law aims to combat the control of energy product supplies and eliminate the competitive advantages existing in the gasoline market. Therefore, our Legislative Assembly sought competitive uniformity and implemented prohibitions on discriminatory and price control practices. A few months later, Law No. 73 of June 23, 1978 (23 LPRA sec. 1131 *et seq.*) (Law 73) was approved, with the purpose of declaring the gasoline industry—in all its facets—as covered by *public interest.* **\*939**

In turn, Law 73, *supra*, implemented a series of prohibitions on lease and sublease agreements, and other types of relationships between wholesalers and retailers. In addition, it established that wholesalers are required to submit a copy of all their contracts with retailers to the Department of Justice's Office of Monopolistic Affairs (OAM). Likewise, Law 73 provided that it recognized

2011 TSPR (*Tribunal Supremo de Puerto Rico* [Supreme Court of Puerto Rico]) 194, 83 P.R. Offic. Trans. 44

the existence of the Monopolies Law and that nothing in the first would contravenes the second. That is, the Legislative Assembly was aware of the Monopolies Law and its operation.

In line with the above, Art. 4A of the Gasoline Law, 23 LPRA sec. 1104a, provides that

> no ... distributor-wholesaler may, by agreement ... directly operate a gasoline retail service station in a manner that prevents its complete operational separation. No ... distributor-wholesaler may, by agreement ... directly impose, require, set or limit the profit margin and/or retail price of gasoline ... at the retail service station.

Likewise, Art. 8 of the Gasoline Law, 23 LPRA sec. 1108, provides that "[t]he violation of sec. 1102, 1102a, 1104, *1104a*, 1105 and 1105a, of this title shall constitute an unfair or deceptive practice or act and shall be subject to the provisions of sec. 257 *et seq.*, of Title 10." (Emphasis added.) The latter on sec. 257 et seq. of Title 10 refers to the Monopolies Law.

On the other hand, the Office of Monopolistic Affairs of the Department of Justice has a series of remedies and powers to monitor compliance with the Monopolies Law. It should be noted that all sections of that law referred to by the Opinion of this Court provide that the OAM "may" perform certain acts. **\*940**

For its part, Art. 7 of the Monopolies Law provides, where relevant, that:

> (a) It shall be illegal for any person, directly or indirectly, to discriminate in price between different buyers of traded things of the same grade and quality, when those things are sold for use, consumption, or resale in Puerto Rico, and where the effect of such discrimination may be to reduce competition substantially or tend to create a monopoly on any line of commerce in Puerto Rico or affect, destroy or avoid competition with any person who would have granted or knowingly received the benefit of such discrimination, or with any of their clients. 10 LPRA sec. 263.

Finally, Art. 12 of the Monopolies Law provides:

> (a) Anyone who is damaged in their business or property by another person, by reason of acts, or attempted acts, prohibited or declared illegal by the provisions of this chapter, except for those of *Secs. 259* and 261 of this title, may file a lawsuit for such acts before the Court of First Instance and shall be entitled to recover three (3) times the amount of the damages suffered, plus the costs of the proceeding and a reasonable amount for attorney's fees. (Emphasis added.) 10 LPRA sec. 268.

Since this latter article excludes the actions under 10 LPRA sec. 259, today this Forum concludes that it will not be just any person who can file that lawsuit, but rather it will be the OAM, which is the only one entitled in accordance with that provision of the Monopolies Law. Therefore, it orders the dismissal of the causes of action under the Gasoline Law and the Monopolies Law, although it allows the case to continue with regard to the allegations of damages according to Art. 1802 of the Civil Code, *supra*.

Case 4:20-cv-00957-SDJ   Document 260-4   Filed 02/21/24   Page 16 of 23 PageID #:  7389

Aguadilla Paint Center v. Esso, 183 D.P.R. 901 (2011)

2011 TSPR (*Tribunal Supremo de Puerto Rico* [Supreme Court of Puerto Rico]) 194, 83 P.R. Offic. Trans. 44

As we will later see, that analysis is contrary to what is expressed in *Pressure Vessels P.R. v. Empire Gas P.R.*, 137 D.P.R. 497 (1994). There, we established the origin and encompassing purposes of Art. 2 of the Monopolies Law, **\*941** 10 LPRA sec. 258. It seeks to avoid any act, contract, or conspiracy to unreasonably restrict business or trade in Puerto Rico. To this end, our Legislative Assembly adopted the same text as Sec. 1 of the *Sherman Act*, 15 U.S.C.A. sec. 1. See: *Pressure Vessels, supra; Northern Pac.* R. Co. v. United States, 356 U.S. 1, 4 (1958).

In addition, we established that both the text of our article and federal doctrine agree that there are three requirements that must be met to demonstrate a violation of this provision: (1) there must be a contract, combination, or conspiracy between two or more entities, (2) which unreasonably restricts business or trade (3) in Puerto Rico. *Pressure Vessels P.R. v. Empire Gas P.R.*, *supra*, p. 509. Finally, in the aforementioned case, we resolved that a plaintiff may bring evidence to demonstrate the inconsistency of contracts according to their substantially adverse effect on free competition; this as a vehicle to prove that, "as a result of the violation of the law, the plaintiff has suffered damage." Id., p. 520.

### B. *Grant of regulatory power*

On June 23, 1978, the Legislative Assembly passed two laws that concern us in the current dispute. The first is Law No. 72, which had the purpose of adding to Art. 3 of the Monopolies Law, *supra*, a provision "in order to authorize the Office of Monopolistic Affairs to file and process complaints for violations of this article with the Department of Consumer Affairs," "to authorize said Department to resolve said complaints and impose the penalties provided herein" and "to establish the procedural process for the judicial review of said complaints." See Law No. 72 of June 23, 1978 (1978 Puerto Rico Laws 256–257). In addition, that law clearly establishes that what was desired was "to provide an *additional forum to* **\*942** *existing ones* where unfair acts or methods in business and trade can be heard." (Emphasis added.) Id., p. 257.

For its part, the second approved law, Law No. 73, was established with the purpose of "authorizing the Departments of Justice, Trade and Consumer Affairs, the Planning Board, the Administration of Regulations and Permits, and the Public Service Commission to adopt and implement the regulations necessary to put into effect the purposes and objectives of this law." 1978 Puerto Rico Laws 259. The Statement of Reasons of this law provides that "government intervention is necessary in its exercise of the State's Power of Reason to avoid discontinuity in the integrity, functionality, and competition that must prevail in the gasoline market in Puerto Rico, an industry vital to the best interests of the citizens and the economic dynamics of the country." Id., pg. 260. Later, that same law prescribes in its Art. 5 that "nothing herein provided or enacted by regulation or otherwise, in accordance with the provisions of this law, shall be interpreted as exempting or conferring immunity as to the applicability of the provisions of Law No. 77 of June 25, 1964, as amended." Id., p. 264.

Thus, the Legislative Assembly wanted to add an administrative remedy with the purpose of attaching tools to the antitrust struggle. Nonetheless, nothing herein provided regarding the powers and administrative procedure was intended to eliminate the remedies recognized by the Monopolies Law, as well provided for in Art. 5 of Law No. 73, *supra*.

That legislative action is entirely consistent with the 1970 amendment to the Monopolies Law. By means of Law No. 67 of May 30, 1970, an amendment was made to Art. 3 of the Monopolies Law, *supra*, which provides that "without **\*943** that set out in Article 13 [which deals with the remedy of *injunction*], the Office of Monopolistic Affairs, through enacted rules and regulations ... may prescribe specific acts or practices ...". (Brackets omitted.) Law No. 67 of May 30, 1970 (1970 Puerto Rico Laws 185).

Therefore, Art. 3 of the Monopolies Law, *supra*, as amended, simply recognizes the administrative power to regulate unlawful practices and provides a forum before the Department of Consumer Affairs to examine violations of the statutes discussed herein.

### III

2011 TSPR (*Tribunal Supremo de Puerto Rico* [Supreme Court of Puerto Rico]) 194, 83 P.R. Offic. Trans. 44

On the basis of the foregoing, we disagree with the result of the majority opinion. We consider that nothing in the statutes that we have discussed precludes the plaintiffs' legal standing and, despite the fact that, according to Art. 12 of the Monopolies Law, *supra*, Art. 3 is excluded, the plaintiffs' action in no way contravenes the legislative delegation of power to regulate, which is granted in Art. 3. In short, plaintiffs should be allowed to prove a case for damages for violations of the specific provisions of the statutes discussed herein. We shall look.

The Gasoline Law was adopted following the passage of the Monopolies Law. Likewise, the first expresses that the Legislative Assembly was aware of the provisions of the second, at the time of approving it. The Gasoline Law states in its Art. 8 that any violation of several of its articles, including Art. 4A, "shall constitute an unfair [or] deceptive act or practice and shall be subject to the provisions of sec. 257 *et seq.* of Title 10." 23 LPRA sec. 1108.

When we go to sec. 257 et seq. of Title 10, that is, to the Monopolies Law, we find that the Civil Code of Puerto Rico, *supra*, we should ask ourselves: what in Art. **\*944** 12 recognizes a cause of action for "[a]ny person who is harmed in their businesses or properties by another person, by reason of acts, or attempts to acts, prohibited or declared illegal by the provisions of this chapter, except those of sec. 259 and 261 ...". 10 LPRA sec. 268.

Consistent with the legislative purposes of our statutes and the federal statutes on which local legislation is based, *that cause of action is entirely independent of the legislative power to regulate that was conferred on administrative agencies by Art. 3 of the Monopolies Law*, *supra*.

This is important because, according to the Court's Opinion, the violative practices of Art. 8 of the Gasoline Law, *supra*, would only be subject to a lawsuit in accordance with the aforementioned Art. 3 of the Monopolies Law, which provides that "[t]he unfair methods of competition, as well as unfair or deceptive practices or acts in business or trade, are hereby declared illegal." 10 LPRA sec. 259. That is, because Art. 8 of the Gasoline Law declares "unfair and deceptive acts" as prohibited in said Act and that, since Art. 3 of the Monopolies Law is the one that prohibits "unfair and deceptive acts," and this, in turn, is excluded from Art. 12 of the Monopolies Law that recognizes the action of triple damage, then the plaintiffs do not have that cause of action available for violations of the Gasoline Law.

That textualist interpretation—which the petitioner proposes and which this Court fully adopts—is totally contrary to the purposes of both Laws. In addition, the items claimed by the plaintiffs should not be construed as the only items of those laws that allow an action for damages. While that interpretation by the Opinion of this Court allows the plaintiffs to continue with their cause of action for damages in accordance with Art. 1802 of the Civil **\*945** Code, could the plaintiffs submit allegations to demonstrate that it was the prohibited practices of the defendant that caused the damages for which they seek indemnification, if the causes of action under the Monopolies Law and the Gasoline Law have been dismissed?

We believe that a different interpretation could be reached. Especially given the fact that the Court's Opinion itself recognizes the direct origin of our antitrust statutes from their federal analogs.

In the United States, private antitrust actions play a critical role in the antitrust regime. *Antitrust Laws and Trade Regulation*, Cap. 160, Sec. 160.01, page 160-2 (Mathew Reader). "*In enacting antitrust laws, the US Congress was convinced that 'private antitrust litigation is one of the surest weapons for effective antitrust enforcement' and that private lawsuits are an important element of the Nation's antitrust enforcement' scheme .... The Supreme Court has labeled 'the private action as a vital means of enforcing the antitrust policy of the United States' and as an 'important weapon of antitrust enforcement.'* " (Emphasis added and brackets omitted.) Id.

Therefore, our interpretation is that the alleged unlawful action of the respondents could be prohibited by the Monopolies Law and the plaintiffs could thus prove it in accordance with our opinion in *Pressure Vessels P.R. v. Empire Gas P.R.*, supra, which essentially allows a market participant to claim damages for a prohibited act under the antitrust statute.

In fact, under federal law, the triple damage remedy is available in Sec. 4 of the *Clayton Act*. The text of that section is extremely simple and simply grants a cause of action to any person affected by any act prohibited by an antitrust law. 🚩 15 U.S.C.A. sec. 15. To obtain that remedy, the plaintiff only has to prove that the damage was caused by a Puerto Rican civil action, *supra*, we should ask ourselves: what antitrust **\*946** allegation. *Antitrust Laws and Trade Regulation* Cap. 160, Sec. 161.02, p. 161-9 (Mathew Bender) ("Thus, in antitrust cases, it is not sufficient simply to demonstrate an injury, even injury directly caused 'by the defendant. The injury will not be considered an antitrust injury unless it was caused by reason of a violation of the antitrust laws'"). This demonstrates that Congress wanted to allow market participants to file a lawsuit for damages for the mere fact of another having performed an anti-monopoly act.

Therefore, we would have concluded that the lawsuit filed by the respondent could continue. With its decision, this Court puts on hold an important element of the antitrust struggle, particularly in regard to the fuel distribution business in Puerto Rico. One only needs to look back over the decades to remember the undesirable practices we had in the Country during the 1970's oil crisis. Today, facing United States public policy, on the basis of which we formulate our statutes related to this matter, this Court binds its hands and closes the doors to justice for those who allege having suffered damage that will now be more difficult to demonstrate.

From the federal regulations described above, it is evident that, since the beginning of the last century, the legislation provided that competitors would play a central role in the fight against illicit control of markets, by submitting lawsuits to recover the damage caused by monopolistic actions. We do not see why Puerto Rican gasoline market participants cannot do the same, when our legislation is also intended to empower those affected with the legal standing to claim remedies for unfair practices.

## IV

As an epilogue, this Court's decision is issued **\*947** at times when the Office of Monopolistic Affairs' ability to advance legislative purposes is in question. From the information published by the Department of Justice regarding its budget for the current fiscal year, it appears that, since 2009, the Office has lost almost forty percent of its staff, has barely four lawyers today, and, during the same period, has had its budget cut by fifteen percent. See Department of Justice, *Approved Budget for 2012*, available at: http://www.pr.gov/presupuesto/aprobado—2012/justicia.htm.

In short, we would have allowed the litigation to continue on its merits rather than settle it summarily, without allowing the plaintiff to establish its case. The dismissal of private lawsuits against illicit control of markets in our jurisdiction is contrary to both the intent and spirit of the Monopolies Law and the Gasoline Law, and deprives gasoline retailers of a very important instrument to vindicate their rights against unfair wholesaler practices.

### Footnotes

1        28 LPRA sec. 1104a.

2        See Art. 1(f) of the Gasoline Producers, Refiners and Distributors-Wholesale Control Law (Gasoline Law), 23 LPRA sec. 1101(f).

3        See Art. 1(g) of the Gasoline Law, supra, 23 LPRA sec. 1101(g).

4        10 LPRA sec. 263.

Case 4:20-cv-00957-SDJ   Document 260-4   Filed 02/21/24   Page 19 of 23 PageID #:  7392

Aguadilla Paint Center v. Esso, 183 D.P.R. 901 (2011)

2011 TSPR (*Tribunal Supremo de Puerto Rico* [Supreme Court of Puerto Rico]) 194, 83 P.R. Offic. Trans. 44

5   On October 1, 2004, Esso first requested the dismissal of the claim, based on the fact that Art. 4 of the Gasoline Law displaced the application of Art. 7 of the Law on Monopolies and Restraint of Trade (Monopolies Law) (case DAC2005-0343). However, the Court of First Instance denied the request for dismissal, so Esso appealed to the Court of Appeals (case KLCE2005-00564). The Court of Appeals denied the issuance of the order by Resolution of May 26, 2005. Esso then appealed to this Court by *certiorari*, which we denied on November 10, 2005. Such a determination was final and binding, thus continuing the proceedings before the Court of First Instance.

6   32 LPRA Ap. III.

7   Appendix to the *Certiorari* Petition, p. 179.

8   We also ordered the Prosecutor General of Puerto Rico to appear and express its position on the dispute, as *amicus curiae*; the Prosecutor General did so.

9   See Statement of Reasons for the Gasoline Law, 1978 Puerto Rico Laws 16-17.

10   Statement of Reasons for the Gasoline Law, *supra*.

11   Id.

12   23 LPRA sec. 1131.

13   See Statement of Reasons for the Gasoline Industry Regulation and Control Act, Law No. 73 of June 23, 1978, as amended, 23 LPRA sec. 1131 *et seq.* (Law No. 73).

14   Id.

15   Id.

16   23 LPRA sec. 1131.

17   23 LPRA sec. 1133(a).

18   As we will detail below, the Office of Monopolistic Affairs (OAM) is an entity attached to the Department of Justice, with powers for the administration of legislation on monopolistic practices, as well as for the oversight thereof.

19   Currently, Department of Economic Development and Commerce.

20   23 LPRA sec. 1133(c)–(h).

21   23 LPRA sec. 1134.

22   For its part, Art. 5 of the Gasoline Law, *supra*, 23 LPRA sec. 1105, provides that any oil producer or refiner or wholesaler of petroleum products that supplies gasoline or special fuels to retailers, uniformly applies to all retail sellers to whom it supplies, the rental of equipment and signs, when they are provided directly or indirectly to such retailers by that producer, refiner or wholesaler.

Meanwhile, Art. 6 of the Gasoline Law, supra, 23 LPRA sec. 1106, orders the uniform distribution of fuel in periods of shortage or decrease in the supply or availability of gasoline or special fuels. Art. 7 of the aforementioned law, 23 LPRA sec. 1107, prohibits a retail seller of fuel, knowingly, from requesting or inducing the granting, or reduction in prices or the rental of equipment and signs, in violation of Arts. 4 and 5 of the Gasoline Law, 23 LPRA sec. 1107.

Aguadilla Paint Center v. Esso, 183 D.P.R. 901 (2011)

2011 TSPR (*Tribunal Supremo de Puerto Rico* [Supreme Court of Puerto Rico]) 194, 83 P.R. Offic. Trans. 44

23    23 LPRA sec. 1101(j).

24    23 LPRA sec. 1108.

25    23 LPRA sec. 1110.

26    Art. 8 of Law No. 3 of March 25, 1978.

27    See Statement of Reasons of Law No. 157-1996 (Law No. 157), 1996 Puerto Rico Laws 683.

28    Id.

29    Id.

30    Id.

31    23 LPRA sec. 1101(j).

32    See P. of C. 2288 of January 30, 1996, 7th Ordinary Session, 12 Legislative Assembly, p. 7.

33    170 D.P.R. 582, 595 (2007).

34    J. von Kalinowski, *Antitrust Laws and Trade Regulation*, Sec. 1.02, Second ed. (2004).

35    ⚑ 15 U.S.C.A. seq. 1 *et seq.*

36    15 U.S.C.A. seq. 12 *et seq.*; ⚑ *P.R. Fuels, Inc. v. Empire Gas Co., Inc.*, 149 D.P.R. 691, 706–707 (1999).

37    *G.G. & Supp. Corp. v. S. & F. Systs., Inc.*, 153 D.P.R. 861, 869 (2001).

38    10 LPRA sec. 259(a).

39    10 LPRA sec. 259(c).

40    Session Minutes of the Senate of Puerto Rico of the 22 Session of May 22, 1964, page 1706.

41    Art. 16(a) of the Monopolies Law, 23 LPRA sec. 272(a).

42    10 LPRA sec. 259(b).

43    *Colón Cabrera v. Caribbean Petroleum*, *supra*, p. 594.

44    23 LPRA sec. 259(c).

45    23 LPRA sec. 259(d).

46    23 LPRA sec. 259(e).

47    23 LPRA sec. 259(g).

48    3 LPRA seq. 341e(x).

49    Id.

2011 TSPR (*Tribunal Supremo de Puerto Rico* [Supreme Court of Puerto Rico]) 194, 83 P.R. Offic. Trans. 44

50    10 LPRA sec. 268(a).

51    10 LPRA sec. 268(c).

52    Art. 12(a) also includes within that exception the provisions of 10 LPRA sec. 261.

53    See Petitioner's Pleading, p. 15.

54    R. Hernández Colón, *Legal Practice of Puerto Rico: civil procedural law*, 4th ed., San Juan, Ed. Lexisnexis, 2007, Sec. 2601, p. 234.

55    The new Rule 10.8(c) of Civil Procedure, 32 LPRA Ap. V, points out that ""[w]henever it appears, by indication of the parties or otherwise, that the court lacks jurisdiction over the matter, it will dismiss the suit."

56    *Col. Peritos Elec. v. A.E.*, 150 D.P.R. 327, 331 (2000). See also *Hernandez Torres v. Governor,* 129 D.P.R. 824, 835 (1992).

57    See also Mr. Fernández, *Administrative Law and Uniform Administrative Procedure Law,* 2nd ed. rev., Bogota, Ed. Forum, 2001, Sec. 8.3, p. 437 esc. 1.

58    *SLG Semidey Vázquez v. ASIFAL*, 177 D.P.R. 657, 677 (2009).

59    See the claim filed by the respondents. Appendix to the *Certiorari Petition,* pp. 79–84.

60    House of Representatives Session Minutes, May 22, 1964, p. 1708.

61    Art. 3 of the Civil Code establishes the following:

Aguadilla Paint Center v. Esso, 183 D.P.R. 901 (2011)

2011 TSPR (*Tribunal Supremo de Puerto Rico* [Supreme Court of Puerto Rico]) 194, 83 P.R. Offic. Trans. 44

"The laws will have no retroactive effect if they do not provide otherwise. Under no circumstances may the retroactive effect of a law prejudice the rights acquired under previous legislation." 31 LPRA sec. 3.

62      *American Railroad Co. of P.R. v. Hernandez,* 8 D.P.R. 516, 520 (1905).

63      *J.R.T. v. A.E.E.,* 133 D.P.R. 1, 13, (1993). See also: *Texas* 🚩 *Co. v. Sancho Bonet, Tes.,* 52 D.P.R. 658, 667 (1938); R.E. Bernier and J.A. Cuevas Segarra, *Approval and interpretation of the laws in Puerto Rico,* 2nd ed., San Juan, Pubs. J.T.S., 1987, Vol. I, Chap. 63.

---

**End of Document** © 2024                                    Thomson Reuters. No claim to original U.S. Government Works.



**TRANSPERFECT**

City of New York, State of New York, County of New York

I, Jacqueline Yorke, hereby certify that the document "**Aguadilla Paint Center v Esso**" is, to the best of my knowledge and belief, a true and accurate translation from Spanish into English.

Jacqueline Yorke

Sworn to before me this
February 19, 2024

Signature, Notary Public

WENDY POON
Notary Public - State of New York
No. 01PO0000184
Qualified in Queens County
My Commission Expires February 02, 20 27

Stamp, Notary Public