# EXHIBIT H



**HIGHLY CONFIDENTIAL**

<u>Via Email</u>

Zeke DeRose III
The Lanier Law Firm, PC
Zeke.DeRose@lanierlawfirm.com

Joseph M. Graham, Jr.
Geraldine Young
Marc B. Collier
Norton Rose Fulbright US LLP
joseph.graham@nortonrosefulbright.com
geraldine.young@nortonrosefulbright.com
marc.collier@northrosefulbright.com

**New York**
601 Lexington Avenue
31st Floor
New York, NY 10022
T +1 212 277 4000 (Switchboard)
   +1 212 284 4910 (Direct)
F +1 646 521 5710
E rob.mccallum@freshfields.com
www.freshfields.com

January 30, 2024

**Re:**   *State of Texas et al. v. Google LLC*, No. 4:20-cv-957-SDJ (E.D. Tex.)

Counsel:

We write regarding Plaintiffs' letters dated January 16, 2024, concerning the production of linked files and alleged deficiencies in Google's document production, as well as Plaintiffs' letter dated January 19, 2024, which raises many of the same issues. All three letters re-raise issues the parties have already litigated and negotiated over years of discovery.

### I. Dashboards, Monitoring, and Display Tools

Plaintiffs' various belated assertions that Google has failed to produce "internal reporting and monitoring tools" and "corresponding reports" are predicated on the flawed assumption that there is a deficiency in Google's data productions. As set forth below, Google has already responded to most of these requests many months ago and your letter fails to raise any discovery deficiencies warranting further searches or production.

**Dashboards**. Google has previously made clear its position that dashboards are automatically populated with refreshed data from (and thus duplicative of) other sources and there is no obligation to preserve multiple duplicative copies of the same relevant ESI. And because Google has made comprehensive data productions—the sufficiency of which Plaintiffs have not credibly challenged—there is no merit to your argument that Google should now

provide that information in a different format.[1]

**Lumina**. As we have previously explained to Plaintiffs, Lumina 

**RASTA**. RASTA ███, as Plaintiffs contend. We have previously explained that RASTA ███. We proposed a solution in which Google would conduct a reasonable and proportionate search for RASTA ███, but Plaintiffs have not made any such requests.

**Ad Logs**. We find it difficult to seriously credit your belated complaints that the volume of ad log data generated by Google is so massive that it is difficult for Plaintiffs to review. Plaintiffs have never sought to negotiate any reasonable sample of ad logs, and now complain that the samples negotiated with the DOJ and provided to you are insufficient.

**Onboarding Materials**. Plaintiffs also demand "onboarding and training documents" related to the above tools and databases. However, Plaintiffs already have documents responsive to expansive and extensively negotiated custodial searches which covered these and broader related topics. It is unclear from your letters what additional materials Plaintiffs are seeking.

## II. Source Code

As you know, Google has made available for inspection an extensive production of source code beginning in August 2023. In December, Plaintiffs represented to the Court that there were deficiencies in that production, as well as issues with the review tools available to review that code. But you have not, until now, provided Google with any details of those alleged deficiencies. We are considering your requests with Google and will respond in due course.

## III. Obfuscated/Truncated Documents

Plaintiffs' request for wholesale reproduction of categories of documents lacks any basis in the governing ESI Order. The documents that you cite in support of your argument that Google has improperly truncated comments were produced during the DOJ and Texas OAG pre-suit investigation phases and thus have been in Plaintiffs' possession for many years.

The ESI Order reflects that parties' agreement "that responsive Investigation Materials . . . *need not be reproduced*, but that parties shall retain the ability to make reasonable and proportionate requests pursuant to Appendix E (for higher quality images) and Appendix J (for links)." ECF No. 508, at 2, n.1 (emphasis added). If there are specific *responsive* documents for which Plaintiffs seek higher quality images, please let us know and we will consider that request

---

[1] Plaintiffs include "go/" links as another asserted repository of dashboards. But as previously explained to Plaintiffs, a "go/" link is a link that can redirect to any URL address, including documents already found in custodial files that are being collected and reviewed. The inclusion of the word "dashboard" in a "go/" link is not an indication of the existence of a dashboard/monitoring tool.

in good faith in accordance with Appendix E.

We are looking into your concerns regarding documents containing mathematical formulae and will respond separately on that issue.

### IV.    Display Ads Document Repositories

Your letter does not articulate any credible basis for your purported "concern[] that Google has not performed reasonable searches for technical documents." Google has already addressed Plaintiffs' various questions concerning centrally-stored documents.

The purported concerns that you now raise track those that we have addressed in prior correspondence and reflect similar misunderstandings of Google's document management practices. There is nothing in your letter that causes us to question or revise our prior responses.

### V.    API and Other Technical Documentation

It is difficult to seriously credit Plaintiffs' assertion that Google has produced "barely any relevant technical documents" as part of its production of over 6 million documents. The search terms and custodians used to generate that population of documents responsive to Plaintiffs' RFPs are extraordinarily broad, necessarily capturing technical aspects of Google's ad tech products and business. These include substantial productions of, for example, design documents, modeling documents, and launch documents. Your letter does not credibly identify any deficiency in that production.

### VI.   Linked Documents

Plaintiffs' demands for almost 6,000 linked documents at this late juncture are neither reasonable nor proportionate.

Almost half of the documents contained in Plaintiffs' Appendix 1 were produced during the DOJ and Texas OAG pre-suit investigation phases and thus have been in Plaintiffs' possession for years. Plaintiffs have no excuse for waiting until now to raise these requests for the very first time. And the assertion in your January 19 letter that Plaintiffs first began requesting linked documents almost five months ago is simply not true.

Moreover, the assertion in your letter that "it is reasonable and feasible for Google to search for and produce internal Google linked documents" is incorrect. We have consistently made clear to Plaintiffs that collection of linked documents—beyond those that can be identified in emails using an automated tool, which Plaintiffs already have—is a burdensome manual process.

Putting those problems with your request to one side, our preliminary assessment indicates that Plaintiffs already have many of the documents that they are now requesting. Although under no obligation to do so, Google has agreed in a separate meet and confer process to provide Plaintiffs with an overlay that provides additional linked document metadata, which

we expect will address many of the documents at issue in Appendix 1. We anticipate providing that overlay to Plaintiffs within a week.

### VII. Discovery Correspondence from the Virginia Case

Your request for a library of discovery correspondence from the Virginia Case will not lead to efficiencies, as you contend, but will instead lead to needless further disputes. You have no need to "assess th[e] resolutions" that Google reached with the DOJ. Plaintiffs have the ability to challenge the sufficiency of Google's productions but have not credibly done so. Plaintiffs acknowledged that they plan to use this information, if provided, to resurrect settled issues—circumventing the entire point of coordinated discovery.

### VIII. Privilege Log Re-Review

As we previously told Plaintiffs, Google's reasonable re-review of the privilege log entries identified by Plaintiffs is well underway. We continue to prioritize the log entries for Google custodians identified in Plaintiffs' Initial Disclosures. That population comprises approximately 70,000 entries. We are available to meet and confer with Plaintiffs if you would like to discuss further prioritization of that population.

### IX. Expert Reports from the Virginia Case

We disagree with your various unfounded assertions regarding your request for early disclosure of expert reports from the Virgina Case in this case. As you know, Magistrate Judge Anderson has denied MDL Plaintiffs' recent Motion in the Eastern District of Virginia concerning the early provision of the DOJ's expert reports, noting the prejudice such disclosure would cause to Google.

### X. *Search* Trial Transcripts

On December 8, 2023, we wrote to Plaintiffs offering to produce, in full satisfaction of RFP 305, the trial testimony (and related exhibits) of the seven *Search* witnesses who are also Ad Tech custodians in unredacted form, except to the extent they contain third-party confidential information, noting that third-party confidential information will remain redacted pursuant to the *Search* case protective order.

As you know, our proposal was informed by discussions with Google's counsel in the *Search* case. Your assertion that our proposal is somehow insufficient because it is limited to "the custodians currently identified in the respective [] cases" appears to assume an entitlement to more custodians. But Plaintiffs told Judge Jordan that your additional discovery requests in the Texas Case would be limited to—at most, "a handful of additional custodians" relevant to your DTPA claims. ECF No. 176 at 5. Plaintiffs' counterproposal seeks the trial testimony and exhibits of 20 additional witnesses—on top of the testimony and exhibits that we have already offered. *See* January 19, 2024 Email from C. Goodnow to R. McCallum (writing on behalf of E.D. Tex. Plaintiffs). Moreover, the titles and descriptions of testimony supplied by Plaintiffs in

an effort to sweep in more transcripts only serve to confirm their tangential relevance (at best) to the issues in this case.  *See id.*

* * *

      Plaintiffs have waited until close to the end of fact discovery to raise or relitigate issues that could have been raised (and in many cases, were resolved) months or years ago.  To the extent Plaintiffs have specific requests that are reasonable and proportionate, we remain willing to meet and confer to address them.

      Sincerely,

      */s/ Robert J. McCallum*

      Robert J. McCallum