IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| THE STATE OF TEXAS, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| v. | § | |
| | § | Civil Action No. 4:20-cv-00957-SDJ |
| GOOGLE LLC, | § | |
| | § | |
| Defendant. | § | |

**DEFENDANT GOOGLE'S REPLY IN SUPPORT OF RULE 12(b)(1) MOTION**

The Response confirms that Plaintiffs cannot establish sovereign standing because they do not assert any injury to a sovereign interest. They cite no authority supporting their argument that a violation of federal law somehow injures a state sovereign interest, and the distinctions they draw with *Jefferson Parish* are ineffectual. Nor can Plaintiffs establish standing for an indirect suit in their *parens patriae* capacity because they do not assert a quasi-sovereign interest apart from the interests of particular private parties. While they cite inapposite cases where states brought antitrust claims on behalf of their general populations they cite no case where, as here, states maintained a *parens patriae* action on behalf of an industry based on naked assertions of conduct having generalized indirect consumer impact. Indeed, the Fifth Circuit recently rejected a similar assertion of *parens patriae* standing in *Louisiana ex rel. Dep't of Wildlife & Fisheries v. Nat'l Oceanic & Atmospheric Admin*, 70 F.4th 872, 881-82 (5th Cir. 2023). Other appellate courts have as well. And without federal jurisdiction, Plaintiffs concede that there is no supplemental jurisdiction over the state-law claims.

Plaintiffs' jurisdictional tap-dance is no accident. In one federal case, seventeen states attempt to anchor their disparate claims under their respective state antitrust and deceptive trade

1

practice laws seeking a hodgepodge of remedies, differing state-by-state, to a single jointly-asserted claim under Section 16 of the Clayton Act for prospective injunctive relief. Jurisdiction in this Court thus hinges on that lone federal claim. But every standing argument Plaintiffs raise falls short. Plaintiffs do not have sovereign standing under Section 16, they do not have *parens patriae* standing to assert a claim on behalf of an industry, and, because of *Illinois Brick*, they cannot base *parens patriae* standing on indirect harm to consumers.

Absent any basis for federal jurisdiction, this case must be dismissed.

## SUPPLEMENTAL BACKGROUND

What is consistent about Plaintiffs' theories of standing and remedies is their inconsistency. *See* Appendix A.

Plaintiffs originally purported to bring damages claims in their *parens patriae* capacities. Mar. 18, 2021 Hr'g Tr., 99:20-22 ("[W]e're the State of Texas. We are here on *parens patria*, and we are a -- *patriae*. We are here for all of that."). They claimed to sue on behalf of injured citizens, and not advertisers or publishers, as Plaintiffs confirmed to both this Court and the JPML in 2021. *See also* ECF No. 46 at 16 ("This case was filed by sovereign states as *parens patriae* on behalf of citizens harmed by Google's anticompetitive conduct—a far broader population than implicated by the putative private classes."); Jul. 29, 2021 Hr'g Tr., 27:5-6, 28:1-16, *In re: Dig. Advert. Antitrust Litig.*, MDL No. 3010 (J.P.M.L) ("The theory would be the idea that you ultimately are paying more for products because all of those products have built within them advertising costs."). By that summer, however, Plaintiffs abandoned their Section 4c damages claims in an attempt to thwart MDL coordination. *See* Pl. State of Texas Supp. Info. to Panel, 1, *In re: Dig. Advert. Antitrust Litig.*, MDL No. 3010 (J.P.M.L Aug. 4, 2021); Pl. States' Ltr. to Judge Castel, 1, *In re Google Dig. Advert.*, 1:21-md-03010-PKC (S.D.N.Y. Sept. 3, 2021). From August of 2021 on—

two and a half years—Plaintiffs have pursued a federal antitrust claim under Section 16 only. Section 16 provides for injunctive—not monetary or restitutionary—relief. *See, e.g. FTC v. Mylan Lab'ys, Inc.*, 99 F. Supp. 2d 1 (D.D.C. 1999) (states, among others, could not pursue Section 16 claim for disgorgement and restitution).

In June 2021, Texas announced that it was leading a "multistate coalition in supporting the State Antitrust Enforcement Venue Act of 2021."[1] Texas argued that the "Act would ensure that Texas could pursue relief for consumers without the delays in justice that would result if its enforcement actions were transferred to other jurisdictions." *Id.*

After the Act was signed, upon remand to this Court, Plaintiffs confirmed that they were proceeding as *parens patriae*. Nov. 20, 2023 Hr'g Tr. 31:20-22 ("Google complains that they don't know the who, what, and how much. *Parens patriae*. . . . We claim to represent all of them. All of the above."). Then, just sixteen days later, Texas and other states abandoned their remaining *parens patriae* claims. On December 6, 2023, Plaintiffs served their long-overdue Third Amended Interrogatory Responses reflecting that those 11 States were no longer proceeding as *parens patriae* but rather as sovereigns asserting a sovereign injury.[2]

Google promptly brought this fundamental change in position to the Court's attention at the next status conference. Dec. 14, 2023 Hr'g Tr. at 38:6-41:19. And Google raised a specific concern that it would need to file its Rule 12(b) motion amid Plaintiffs' changing discovery positions. *Id.* at 41:20-24.

In response, Plaintiffs confirmed on the record the abandonment of *parens patriae* standing by the majority of Plaintiffs, including Texas. Plaintiffs' counsel stated that they had "been very

---

[1] Press Release, Attorney General Ken Paxton, Paxton Joins Multistate Fight to Expand States' Antitrust Enforcement, June 18, 2021, available at https://www.texasattorneygeneral.gov/news/releases/paxton-joins-multistate-fight-expand-states-antitrust-enforcement.
[2] Pls.' 3rd Am. Resps. to Google's LLC's First Set of Interrogs., at Ex. B (Dec. 6, 2023) (ECF No. 244-4).

3

careful" with their *parens patriae* claims and in the way they had "narrowed and ferreted that down." *Id*. at 49:19-21. Plaintiffs' counsel stated that "Texas at this point has a policy in the AG's office where they are not pursuing things under *parens patriae* like this." *Id*. at 49:22-24. Counsel continued that they had "made that adjustment and made that clear," and confirmed that the *only* States pursuing *parens patriae* claims were "Arkansas, Louisiana, South Dakota, Missouri, Nevada, North Dakota," and "the District of Puerto Rico." *Id*. at 49:24-50:3. Plaintiffs provided that information in chart form "to clarify any ambiguity" about their claims. *Id*. at 50:3-4.

Google filed the instant motion on January 16, 2024. Late on February 14, 2024—the day before Plaintiffs' Response to the instant motion was due—Plaintiffs shifted yet again in their standing and representation theories. Now, they say, some proceed as sovereigns and all proceed *parens patriae*. Pls.' 4th Am. Resps. to Google's LLC's First Set of Interrogs., 12-14 (Feb. 14, 2024) (ECF No. 244-5).

So, as of today, all Plaintiffs again proceed as *parens patriae*, while some continue to assert sovereign standing. Opp. at 4, 11. And, as of today, as *parens patriae*, all Plaintiffs purport to represent (1) publishers and advertisers that "have been deprived of improved quality, increased transparency, further innovation and lower prices due to Google[']s anticompetitive conduct" and (2) consumers, based on "increased prices and lowered quality on the web caused by Google's anticompetitive conduct in the markets alleged." Pls.' 4th Am. Resps. to Google's LLC's First Set of Interrogs., 13 (Feb. 14, 2024) (ECF No. 244-5).

## ARGUMENT

The States do not contest that their standing depends on the capacities in which they sue and the purported injuries that they seek to redress. After all, standing depends (in addition to other factors) on the particular "injury in fact" that a plaintiff alleges. *Harrison v. Jefferson Par.*

4

*Sch. Bd.*, 78 F.4th 765, 769 (5th Cir. 2023); *see also* Opp. at 4 ("Article III standing turns on injury in fact, and the relevant injury for *parens patriae* standing is injury to a quasi-sovereign interest . . . ."). Here, the States have no standing because they allege no sovereign injury nor any quasi-sovereign injury.

## I. The States Do Not Assert Sovereign Injuries.

The States cannot sue as "sovereigns" in federal court to redress alleged violations of federal or state antitrust law on these facts.

As the Fifth Circuit explained in *Jefferson Parish*, for a State to have standing as sovereign, the acts of the defendant—here, Google—must invade a sovereign right "resulting in some tangible interference with its authority to regulate or to enforce its laws." 78 F.4th at 770. The States never allege that Google has somehow interfered with their ability to enforce their laws, nor do they attempt to articulate any such interference with their sovereign rights in their opposition. This may be why, the day before filing their response, every State that had abandoned a *parens patriae* theory in December, including Texas, has now flocked back. The Court should dismiss *all* claims predicated on sovereign standing, regardless of which States claim to be proceeding on such a basis on any particular day of the week.

### a. The States Do Not Have a Sovereign Interest in Enforcing Federal Law.

Unable to articulate any *sovereign* right that has been impaired, the States resort to improperly conflating a federal statutory cause of action (in their words, a right to "enforce" federal antitrust laws) with a sovereign injury.

But the two are not the same. Clayton Act Section 16—the only federal law under which the States proceed—gives "any person" the right to sue for injunctive relief "against threatened loss or damage by a violation of the antitrust laws." 15 U.S.C. § 26. It does not purport to transform those "persons" into sovereigns, nor does it dispense with the requirement that any

5

person-plaintiff articulate an injury-in-fact (in this case, "threatened loss or damage by a violation of the antitrust laws"). *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 426-27 (2021) (holding that Congress's creation of a cause of action does not obviate the need for a plaintiff to articulate concrete harm, and "an injury in law is not an injury in fact"). The alleged violation of a federal statute does not create a sovereign injury. *Jefferson Parish*, 78 F.4th at 771 (explicitly rejecting the theory that an alleged violation of federal or state law constitutes sovereign injury).[3] The fact that the States believe that Google violated federal antitrust law is not a *sovereign* injury or *sovereign* "threatened loss or damage," and "the mere fact that the state is involved as a party does not transform the action into a 'sovereign enforcement' proceeding." *Philip Morris, Inc. v. Blumenthal*, 123 F.3d 103, 107 (2d Cir. 1997). Rather, as with countless other federal laws, Section 16 merely provides a cause of action to anyone with an injury.

Indeed, Plaintiffs cannot identify a single case in which a federal court found a state had a *sovereign* interest in enforcing Section 16 (or any other provision of the antitrust laws). Instead, courts consistently treat the states akin to private parties when proceeding under Section 16. *See California v. Am. Stores Co.*, 495 U.S. 271, 296 (1990) (noting that California, unlike the United States, is a private litigant under 15 U.S.C. § 26); *New York v. Facebook*, 2021 WL 2643724, at *39 (D.D.C. June 28, 2021) ("In pursuing injunctive relief, however, the States appear before the Court as private parties, not as sovereign law enforcers.") (quoting with approval DOJ Amicus Brief in *New York v. Microsoft Corp.*, No. 98-1233 (D.D.C. Apr. 15, 2002), https://bit.ly/3fJDlVw); *cf. State of Ga. v. Evans*, 316 U.S. 159, 162 (1942) ("The State of Georgia,

---

[3] Plaintiffs argue that the existence of a federal cause of action distinguishes their case from *Jefferson Parish*. *See* Opp. at 12. In that case, Louisiana argued that the school district violated the federal and state constitutions and state statutes. *Jefferson Parish*'s discussion of what constitutes a sovereign injury did not turn on the existence (or lack) of a federal statutory cause of action. 78 F.4th at 768, 769-72. Moreover, the states provide no reason that the sovereign-standing analysis would be any different when statutory, rather than constitutional, rights are at issue. Article III applies either way.

unlike the United States, *cannot prosecute violations of the Sherman Law*." (emphasis added)). *Pennsylvania v. Mid-Atl. Toyota Distribs., Inc.*, 704 F.2d 125, 131-32 (4th Cir. 1983), *cited at* Opp. at 12, does not hold otherwise. In that case, "where the state [sought] recovery of damages on behalf of specific individuals injured by antitrust violations, it [was] concededly not acting in its 'quasi-sovereign' capacity." *Id.* at 132 n.14. The States—as well as private parties—may well be part of the "congressional plan for protecting competition," Opp. at 11, but that fact does not make the States sovereign enforcers any more than private plaintiffs are.

### b. The States Do Not Have a Sovereign Interest in Enforcing State Laws in Federal Court.

The States lack sovereign standing to bring their state-law claims in federal court for the same reason as their federal-law claims: they allege no injury to their sovereign interests. Tellingly, the States cite no case holding that states have sovereign standing to bring state-law antitrust claims in federal court. Again, they improperly conflate their allegations of a *violation* of the law with injury to a *sovereign* interest; that is, "actual or threatened interference with its authority" to create or enforce laws. *Jefferson Parish*, 78 F.4th at 771. The latter must be present to establish Article III standing, and it is lacking here.

First, the States make the remarkable argument that they need not show "individualized injury" at all because they "have sovereign powers to enforce their own laws for the general public." Opp. at 14. But the fact that the States might have sovereign powers to enforce their own laws in some courts (say, in their home state courts) does not obviate the need for them to show standing (including injury-in-fact) to proceed in the federal courts. Indeed, as Plaintiffs concede elsewhere, "the same Article III standing principles apply to both federal and state claims." Opp. at 13. To have sovereign standing, they must show sovereign injury, and they have not done so.

Next, Plaintiffs argue that "[e]nforcement of state antitrust and consumer protection laws in federal court has ample historical precedent." Opp. at 14. As support, they cite two articles, *id.* n.8, which note, unremarkably, that state antitrust enforcement continued after enactment of the Sherman Act and that federal law supplemented state antitrust laws. This misses the point because the issue is not whether the States can enforce their state law as sovereigns in parallel, nor is it whether States can bring antitrust claims in federal court. Clearly states can bring properly pleaded claims in federal court brought in a proprietary or *parens patriae* capacity. But that is not what the States seek to do here. Instead, here, they attempt to use the federal courts to adjudicate alleged violations of state law, without any cognizable injury to sovereign interests.

Plaintiffs then fall back to "practical consequences." Opp. at 15. They say, "banning sovereign state antitrust and consumer protection claims from federal court" would "require rampant claim splitting between federal and state courts, particularly in multi-state actions like this one." *Id.* But what Plaintiffs decry as "rampant claim splitting" is a consequence of and regular practice in our federal system: states can and do enforce their own differing laws in their own courts, while federal courts exercise limited supplemental jurisdiction over related state-law claims presenting Article III injuries. This is a feature of our federal system, not an inefficiency to be solved.

Plaintiffs' notion that they can enforce violations of their own statutes against foreign corporations in distant federal courts across the country, so long as those claims can be paired with a related federal claim and other States, runs afoul of federalism's dual-sovereignty principles. The rule of law and dual-sovereignty principles compel the contrary conclusion: states must exercise their *sovereign* power in their own courts. The system Plaintiffs propose—one where supplemental jurisdiction can be used by State collectives to seek civil penalties for state antitrust

8

and competition laws in distant federal courts—is an affront to the basic federalism idea that federal courts should not unnecessarily wade into state-law enforcement issues. *Cf. Yelp Inc. v. Paxton*, 2024 WL 413464 (N.D. Cal. Feb. 1, 2024) (California court applying *Younger* abstention to dismiss federal case filed one day before DTPA case filed in Texas state court seeking civil penalties).

## II. The States Do Not Plausibly Allege *Parens Patriae* Antitrust Injury.

Plaintiffs' argument on *parens patriae* standing responds to a strawman and, in so doing, attempts to sidestep Plaintiffs' failure to plead any specific *parens patriae* injury to any Plaintiff State. To be clear, Google's argument is not that a state could never have *parens patriae* standing under Section 16. Rather, Plaintiffs fail *in this case* to allege two essential elements of *parens patriae* standing: (1) they fail to allege a quasi-sovereign interest "apart from the interests of particular private parties," and (2) they fail to allege "injury to a sufficiently substantial segment of [their] population[s]." *Jefferson Parish*, 78 F.4th at 772 ("In *Snapp*, the Supreme Court stated two hard-and-fast limits on the *parens patriae* doctrine. To invoke the doctrine a state must show that it has [(1)] '[a] quasi-sovereign interest' that is 'sufficiently concrete to create an actual controversy between the State and the defendant' and (2) the injury to that interest affects a 'sufficiently substantial segment of [the state's] population.'" (quoting 458 U.S. at 602, 07)).

In their Response, the States contend that their pleading "details[s] across 24 paragraphs anticompetitive effects on Plaintiffs States' residents and economies." Opp. at 7. In reality, the Fourth Amended Complaint asserts injuries to unspecified publishers and advertisers, with an occasional reference to indirect follow-on effects to unidentified consumers. The FAC invokes alleged harm to every Plaintiff State's "general economy" in only the most boilerplate terms, and

the FAC contains no reference to any specific harm to any particular Plaintiff State or state resident. This failure lays bare the lack of actual *parens patriae* injury in this case.

### a. The States Do Not Plead Injuries Apart from Those of Private Parties.

In *Snapp*, the Supreme Court noted that a quasi-sovereign interest is "an interest apart from the interests of particular private parties." *Alfred L. Snapp & Son, Inc. v. Puerto Rico*, 458 U.S. 592, 607 (1982). In *Jefferson Parish*, the Fifth Circuit made clear that this requirement applies to suits seeking to vindicate "economic interests" like the one here. To have a quasi-sovereign economic interest, a state must "allege injury to its citizens['] health or economic well-being in a way that also implicates its own interests." *Jefferson Parish*, 78 F.4th at 773. Simply asserting the rights of state citizens is insufficient because those are "the interests of particular private parties" who "can sue to get relief" themselves. *Id.*

Plaintiffs attempt to manufacture quasi-sovereign injury by pointing to allegations of harm to publishers and advertisers. *See* Opp. at 7. But these allegations are a paradigmatic example of alleged harms to particular private parties. This is not sufficient, and the Ninth Circuit recently explained why in *Missouri ex rel. Koster v. Harris*, 847 F.3d 646 (9th Cir. 2017). In *Harris*, a California law required all eggs sold in California to come from farms that complied with certain standards. Missouri and other states sued on behalf of large egg producers from their states. But the Ninth Circuit correctly refused the state suit because "the Shell Egg Laws are not alleged to threaten the health of the entire population (or, indeed of anyone) [in Plaintiff States], and those directly affected—egg farmers—are capable of pursuing their own interests." *Id.* at 653; *see also People by Abrams v. 11 Cornwell Co.*, 695 F.2d 34, 40 (2d Cir. 1982), *vacated on other grounds sub nom. People of State of N.Y. by Abrams v. 11 Cornwell Co.*, 718 F.2d 22 (2d Cir. 1983) ("*Parens patriae* standing also requires a finding that individuals could not obtain complete relief through a private suit."). Plaintiffs' attempt to bootstrap alleged harm to publishers and advertisers

10

into *parens patriae* injury fails for the same reason that Missouri's failed in *Harris* and Louisiana's claim failed in *Jefferson Parish*: the States articulate no harm to the states separate from harm to publishers and advertisers, and those parties can—and in many cases are—suing to vindicate their own interests.

Plaintiffs also point to vague allegations of downstream harm to consumers. *See* Opp. at 7 (arguing that publishers' customers were also harmed because they saw less content or higher subscription fees as a result of publishers making less money). But again, the States fail to allege how this supposed downstream harm also implicates any Plaintiff State's interests apart from those of the publishers' or advertisers' customers. They seem to recognize this failing. Instead of attempting to identify any truly quasi-sovereign interest, they argue that stating an "interest in preventing harm to its citizens by antitrust violations" is sufficient. Opp. at 5. It is not, just as protecting "52,000 public schoolchildren" from harm by constitutional violations was not in *Jefferson Parish.* 78 F.4th at 772. Plaintiffs' argument would obviate the requirement of a quasi-sovereign interest altogether, by equating it with the allegation of an antitrust violation.[4] In another flavor of this argument, Plaintiffs claim that Congress's creation of state rights of action themselves confer *parens patriae* standing. But "the presence or absence of a statute authorizing *parens patriae* standing does affect whether Article III's standing requirements have been satisfied." *New York v. Microsoft Corp.*, 209 F. Supp. 2d 132, 149 (D.D.C. 2002).

Although Plaintiffs claim that "[t]hese injuries closely match (indeed, exceed) the type and scale of harms upon which Georgia relied in *Pennsylvania Railroad*," Opp. at 7, the opposite is true. In *Pennsylvania Railroad*, Georgia claimed an interest apart from and in addition to the

---

[4] The out-of-circuit case on which Plaintiffs rely for this proposition, *In re Insurance Antitrust Litigation*, devoted three sentences to the issue of *parens patriae* standing. To the extent that the dictum Plaintiffs cite can be read to mean that reciting the phrase "the economic well-being of residents in general" is sufficient to articulate a quasi-sovereign interest, the case would be inconsistent with *Jefferson Parish*.

11

interests of the shippers directly harmed by the alleged conspiracy. In that case, Georgia argued that shippers in Georgia were specifically targeted and discriminated against. "[T]he gravamen of [that claim] runs far beyond the claim of damage to individual shippers" precisely because Georgia's interests were also affected: the conspiracy "prefer[ed] the ports of other States over the ports of Georgia." 324 U.S. at 443, 452. It is precisely that type of state-specific allegation that is lacking here.

### b. The States Do Not Plead Injury to a Sufficiently Substantial Portion of Their Populations.

To purport to vindicate "the health and well-being . . . of its residents in general," a state also must allege "injury to a sufficiently substantial segment of its population." *Snapp*, 458 U.S. at 607. Here again, the Fourth Amended Complaint falls woefully short, as it includes *no* allegations of harm to any portion of any specific State's population, let alone allegations of widespread economic harm to any Plaintiff State.

The numbers of "publishers and advertisers" affected does not help Plaintiffs because *parens patriae* standing must be premised not on widespread national injury to identified private parties, but substantial injury to the state population, residents, or citizenry. The Fifth Circuit recently addressed this issue in *Louisiana ex rel. Dep't of Wildlife & Fisheries v. Nat'l Oceanic & Atmospheric Admin.*, 70 F.4th 872, 881-82 (5th Cir. 2023). Although Louisiana alleged adverse effects on "the shrimping industry across the Gulf of Mexico," this carried no weight. Louisiana could not show the rule's impact on *its own* shrimping industry, let alone a substantial segment of its population. *Id.* at 881.[5] Similarly, here Plaintiffs fail to allege any impact on their own

---

[5] The court also reaffirmed that "special solicitude" for state standing does not override the need for a quasi-sovereign interest. *Id.* at 882 (citing *Texas v. United States*, 50 F.4th 498, 514 (5th Cir. 2022)).

12

economies, relying instead on vague allegations of widespread harm felt generally across the country. That is insufficient.

While Plaintiffs cite several cases where courts have found *parens patriae* standing under Section 16 was properly alleged, this case does not involve similar alleged injuries to the States' general populations. In particular, the cases that Plaintiffs cite involved allegations that large groups of in-state consumers were directly affected. For example, in *In re Elec. Books Antitrust Litig.*, 14 F. Supp. 3d 525, 531 (S.D.N.Y. 2014), states sued to rectify "their citizens' concrete injury from Apple's conspiracy with the publishers to raise e-book prices." Although the court did not engage in the prudential standing analysis for these Section 15c claims, the states alleged that a sufficiently substantial segment of their populations felt the *direct*, out-of-pocket impact of a price-fixing conspiracy of an item commonly owned by the general population. And in *New York v. Microsoft Corp.*, 209 F. Supp. 2d at 152, states brought suit on behalf of "millions of citizens of, and hundreds, if not thousands, of enterprises in each of the United States and the District of Columbia [that] utilize PCs running on Microsoft software." Again, a substantial portion of the general population was *directly* affected by the elevated prices of a ubiquitous consumer item due to anticompetitive conduct. Other similar examples of *parens patriae* standing abound where states have sought relief to protect their residents at large and a sufficiently substantial segment of their general population.

Plaintiffs simply don't allege direct harm to consumers here. Instead, they allege indirect harm, *i.e.*, that the unidentified customers of the directly affected advertisers and publishers suffered some follow-on effects (*e.g.*, that unidentified consumer goods became more expensive because Google internet display advertising was allegedly overpriced).[6] But the Supreme Court

---

[6] In the most recent iteration of their Interrogatory responses, Plaintiffs concede that they allege only indirect harm to consumers. *See, e.g.*, Pls.' 4th Am. Resps. to Google's LLC's First Set of Interrogs., 15

13

has held that *Illinois Brick* forecloses *parens patriae* standing based on indirect consumer injury. *Kansas v. UtiliCorp United, Inc.*, 497 U.S. 199, 219 (1990). Thus, these allegations also fall short.

### III. The States Concede There Is No Supplemental Jurisdiction Absent a Federal Claim.

Plaintiffs' only argument for supplemental jurisdiction is that they have standing to bring their federal claims. Because they do not, however, there can be no supplemental jurisdiction.

### CONCLUSION

Because Plaintiffs cannot meet Article III standing requirements in their sovereign or *parens patriae* capacities, the federal and state claims should be dismissed.

Dated: February 29, 2024

Respectfully submitted,

/s/ R. Paul Yetter
R. Paul Yetter
State Bar No. 22154200
YETTER COLEMAN LLP
811 Main Street, Suite 4100
Houston, Texas 77002
(713) 632-8000
pyetter@yettercoleman.com

Eric Mahr (*pro hac vice*)
FRESHFIELDS BRUCKHAUS DERINGER LLP
700 13th Street NW, 10th Floor
Washington, D.C. 20005
(202) 777-4545
eric.mahr@freshfields.com

ATTORNEYS FOR GOOGLE LLC

---

(Feb. 14, 2024) (ECF No. 244-5) (describing "follow-on" harm to consumers); *id.* at 19 (noting that overcharges to advertisers in each State "resulted in lost ad spend *which, in turn*, increased the prices of goods and services sold to consumers" (emphasis added)); *id.* at 22 (stating that "[t]he cost savings realized by advertisers and publishers could *be passed on* to consumers, such as lowering subscription fees and removing paywalls" (emphasis added)).

14

**CERTIFICATE OF SERVICE**

  I certify that on February 29, 2024, this document was filed electronically in compliance with Local Rule CV-5(a) and served on all counsel who have consented to electronic service, per Local Rule CV-5(a)(3)(A).

                */s/ R. Paul Yetter*
                R. Paul Yetter

**Appendix A: Plaintiffs' Positions**

| | |
|---|---|
| **March 18, 2021**<br><br>At oral argument on Google's motion to transfer venue, Plaintiffs' counsel represented that the States are proceeding in *parens patriae* for harm to their respective citizens. | "[MR. LANIER]: Texas is here in *parens patriae* on behalf of its own citizens for harm that occurred in its own state. And the same is true for the other sovereigns."<br><br>Mar. 18, 2021 Hr'g Tr., 32:6-8, *State of Texas v. Google*, No. 4:20-cv-00957-SDJ (E.D. Tex.). |
| **July 29, 2021**<br><br>At oral argument before the Judicial Panel on Multidistrict Litigation, Plaintiffs' counsel said the States' antitrust damages are for injuries to consumers, not publishers or advertisers. | "MR. LANIER: Well, the publishers and advertisers will both have business damages; the State of Texas won't.<br><br>. . .<br><br>JUDGE KENNELLY: What's the theory of damages? What's the theory on which I as an individual person lost money?<br><br>MR. LANIER: The theory would be the idea that you ultimately are paying more for products because all of those products have built within them advertising costs. The advertising costs are artificially inflated, the cost you spend for a product is artificially inflated as well. And how the dynamic of that flows through is going to take some expert work.<br><br>JUDGE KENNELLY: Excellent. So what that means, though, is whoever that expert is, is going to have to divvy out the harm that flows to me as distinct from the harm that flows to these advertisers who are having to pay these inflated rates and the publishers who are having to pay inflated rates to the advertisers.<br><br>MR. LANIER: True, true."<br><br>Jul. 29, 2021 Hr'g Tr., 27:5-6, 28:1-16, *In re: Dig. Advert. Antitrust Litig.*, MDL No. 3010 (J.P.M.L). |

| **August 4, 2021**<br><br>Plaintiffs sought leave to file the Second Amended Complaint, eliminating Section 4c damages claims to moot Google's consolidation motion. | "The complaint not only adds Louisiana's and South Carolina's state-specific claims, but also eliminates all Plaintiffs' claims for federal antitrust damages under Section 4C of the Clayton Act, 15 U.S.C. § 15c. Exhibit C. This amended complaint moots Google's motion in the current action to consolidate and transfer Texas v. Google for trial under 28 U.S.C. § 1407(h) ("[T]he judicial panel on multidistrict litigation may consolidate and transfer with or without the consent of the parties, for both pretrial purposes and for trial, any action brought under section 4C of the Clayton Act."). It also eliminates all common questions relating to the apportionment of federal antitrust damages between the Plaintiff States and private parties."<br><br>Pl. State of Texas Supp. Info. to Panel, 1, *In re: Dig. Advert. Antitrust Litig.*, MDL No. 3010 (J.P.M.L Aug. 4, 2021). |
|---|---|
| **September 3, 2021**<br><br>Plaintiffs' counsel reiterated the States' *parens patriae* theory based on harm to citizens and state economies. | "***[T]he Plaintiff States have not abandoned their parens patriae claims. On the contrary, those claims remain the core of this case.*** Although the Plaintiff States have decided against making claims for damages under Section 4C, they continue to assert claims for equitable and structural relief in their *parens patriae* capacity to protect the economic welfare of their citizens and economies."<br><br>Pl. States' Ltr. to Judge Castel, 1, *In re Google Dig. Advert.*, 1:21-md-03010-PKC (S.D.N.Y. Sept. 3, 2021) (emph. added). |
| **November 20, 2023**<br><br>At the first status conference after remand, Plaintiffs' counsel claimed to represent advertisers, publishers, Google's competitors, users, and consumers. | "[MR. MAHR]: I think more troubling is that after three years, the States continue to be unable to respond to some fundamental questions in interrogatories about their claim: Who? What? How much? We've asked them whom do you represent as a parens patriae? Is it consumers? Advertisers? Publishers? Competitors? Users? We get the answer All of the above.<br><br>. . .<br><br>[MR. LANIER]: Third, Google complains that they don't know the who, what, and how much. Parens patriae. Yes, they knew the who. ***We claim to represent all of them.*** All of the above. That's -- he said it."<br><br>Nov. 20, 2023 Hr'g Tr., 28:4-10, 31:20-23, *State of Texas v. Google*, No. 4:20-cv-00957-SDJ (E.D. Tex.) (emph. added). |

| | |
|---|---|
| **December 6, 2023**<br><br>Plaintiffs served 3rd Amended Interrogatory Responses identifying the capacities in which each State is suing. | According to Exhibit B to Plaintiffs' responses:<br><br>• Eleven States proceed in their sovereign capacities: Texas, Alaska, Florida, Idaho, Indiana, Kentucky, Mississippi, Missouri, Montana, South Carolina, and Utah.<br><br>• Five States proceed as *parens patriae*: Arkansas, Louisiana, South Dakota, North Dakota, and the Commonwealth of Puerto Rico.<br><br>• Nevada proceeds on both grounds.<br><br>Pls.' 3rd Am. Resps. to Google LLC's First Set of Interrogs., at Ex. B (Dec. 6, 2023) (ECF No. 244-4). |
| **December 13, 2023**<br><br>Shortly after, Plaintiffs' counsel confirmed via email the States' positions on standing, while correcting errors in the amended interrogatory response. | "As you recall in prior meet and confers, we discussed producing a chart that outlined what relief each state was seeking and the legal foundation for that relief. We attempted to give you that clarity by amending our interrogatory responses on December 6 with a new Exhibit B containing a detailed breakdown of remedies sought by each state. Unfortunately, a few states did not also revise the written responses to Interrogatory No. 4 which appears to have caused some confusion to Google according to your status update.<br><br>. . .<br><br>In the past few days, I have spoken with both South Dakota and Kentucky who have assured me that Exhibit B is an accurate reflection of the remedies that they presently intend to seek, and they look forward to an opportunity to amend Interrogatory No. 4 to reflect that. In the case of Missouri, they are seeking relief under both their parens authority and in their sovereign capacity and will need to edit Exhibit B in a future amendment to reflect that."<br><br>Ex. A, Dec. 13, 2023 Email from T. Young (Texas OAG). |
| **December 14, 2023**<br><br>Plaintiffs' counsel confirmed to the Court that the States' positions on standing are accurately | "[MR. LANIER:] Next issue. Mr. Mahr complains because of the parens patriae issue and the way we have narrowed and ferreted that down. And we have. We have been very careful. ***Now, Texas at this point has a policy in the AG's office where they are not pursuing things under parens patriae like this.*** And so we've made that adjustment and made that clear, and we have informed them of that. The States that are asserting parens |

3

| | |
|---|---|
| reflected in the amended interrogatory responses, and explained that Texas had abandoned *parens patriae* standing due to a policy change. | patriae are Arkansas, Louisiana, South Dakota, Missouri, Nevada, North Dakota, and, in addition to those States, the District of Puerto Rico. We put that in a chart to clarify any ambiguity.<br><br>If Mr. Mahr is upset because we don't have more States pursuing it under parens patriae as opposed to sovereign authority, well, we reduced his workload. Two of those States, Missouri and Nevada, are pursuing under both parens patriae and sovereign authority. We've made that clear. We have given them an exhibit of which States are claiming damages."<br><br>Dec. 14, 2023 Hr'g Tr., 49:19-50:11, *State of Texas v. Google*, No. 4:20-cv-00957-SDJ (E.D. Tex.) (emph. added). |
| **February 14, 2024**<br><br>The day before filing their response to the 12(b)(1) motion, Plaintiffs served amended interrogatory responses reflecting a realignment of the States' standing theories and describing direct injuries only to publishers and advertisers. | Plaintiffs' fourth amended response to Interrogatory 4 reflects the reshuffling of the States' positions on standing, with some proceeding as sovereigns and all proceeding as *parens patriae*. The response also focuses on direct injuries to publishers and advertisers, with gestures to remote and speculative consumer knock-on effects.<br><br>For example, the States contend that: (1) publishers and advertisers "have been deprived of improved quality, increased transparency, further innovation and lower prices due to Google[']s anticompetitive conduct" and (2) consumers faced "increased prices and lowered quality on the web caused by Google's anticompetitive conduct in the markets alleged."<br><br>Pls.' 4th Am. Resps. to Google's LLC's First Set of Interrogs., 12-14 (Feb. 14, 2024) (ECF No. 244-5). |
| **February 15, 2024**<br><br>The Court acknowledged the significance of Plaintiffs' representations regarding standing, and advised that Plaintiffs carefully consider any | "[THE COURT]: The other thing I will say that I want to make sure the parties are aware of is with regard to this parens patriae thing, I think everybody recognizes this is significant in many ways in the case. That's why the States have to carefully, carefully decide in what capacity or capacities they're suing. So I think we all appreciate that's important. And if, you know, alterations in where the States are mean that we need supplements or additions to briefing, or other things need to be done, you can certainly have a motion practice on that. I'm going to be open to that.<br><br>*I don't need to tell anybody that the point we are where we are in the case, you know, we want to tie down these issues.* They're very important both with regard to dispositive motions -- and I can see them being |

4

| | |
|---|---|
| changes in response to discovery developments. | significant as you work through discovery in terms of the proof that's being developed by the parties. So I naturally want to tie that down, but I'll consider anything in regard to, if there's motion practice, on needing to do some additional briefing based on changes in the States' position. ***And I also don't discount that discovery, the process of discovery, could then have an effect on where the States are on these issues. I recognize it could.***" <br><br> Feb. 15, 2024 Hr'g Tr., 52:10-53:7, *State of Texas v. Google*, No. 4:20-cv-00957-SDJ (E.D. Tex.) (emph. added). |
| **February 15, 2024** <br><br> In opposition to the 12(b)(1) motion, Plaintiffs now assert both *parens patriae* and sovereign standing for their federal claims. | Representing that "[a]ll Plaintiff States bring their federal claims in a *parens patriae* capacity," that the States "[a]lso [h]ave [s]overeign [s]tanding [t]o [b]ring [t]heir [f]ederal [c]laims," and accusing Google of "mistakenly treat[ing] [Plaintiffs' interrogatory] response about state law remedies as a statement on federal law injuries." <br><br> Pls.' Resp. in Opp. to Google's 12(b)(1) Motion, 2-3, 4, 11, *State of Texas v. Google*, No. 4:20-cv-00957-SDJ (E.D. Tex. Feb. 15, 2024) (ECF No. 244). |