IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| The State of Texas, et al., | |
|         Plaintiffs, | Case No. 4:20-cv-00957-SDJ |
| v. | Hon. Sean D. Jordan |
| Google LLC, | Special Master: David T. Moran |
|         Defendants. | |

**PLAINTIFF STATES' RESPONSE TO GOOGLE'S SECOND BRIEF
TO THE SPECIAL MASTER**

## TABLE OF CONTENTS

Page

I.     The States have adequately identified, disclosed, and produced documents as to relevant third parties in response to Google's Interrogatories 9 and 29-31. ................................................................................................................ 1

II.    The States that use Ad Tech products have sufficiently responded to interrogatories and have produced relevant documents and/or discussed or are willing to facilitate Rule 45 subpoenas that Google has not further pursued. ............................................................................................................... 8

III.   The States have adequately responded to Interrogatories 2, 4, 5 and 26. ............ 9

The Plaintiff States ("States") submit this response to Google's Second Brief on Discovery Disputes, filed on February 27, 2024 (ECF No. 272).

I. **The States have adequately identified, disclosed, and produced documents as to relevant third parties in response to Google's Interrogatories 9 and 29-31.**

Google first argues that the States have not: (i) identified third parties contacted during their investigation, when those communications occurred, the topics discussed, and any documents disclosed, and (ii) identified any third party with knowledge of the alleged harms and injuries underlying the States' claims. *See* ECF No. 272 at 2-7. Neither argument is correct, given the States' fulsome discovery responses, disclosures, and productions in this case where Texas and the other States have produced every single communication and document exchanged with third parties related to their Google investigations and disclosed those third parties' identities to Google. Google not only ignores this past discovery but seeks to use its faulty arguments to "alternatively" discover attorney opinion work product, in the form of attorney-directed memoranda exchanged only among the common-interest, investigating states. As shown below, Google's position is supported by neither the law nor the facts, particularly where Google could have itself sought to interview third parties, just as the States did, and can still interview and depose them.

<u>First</u>, the States have already provided the information that Google seeks in its Interrogatory 9, mooting Google's arguments. In response to Interrogatory 9 and pursuant to Federal Rule of Civil Procedure 33(d)(1), the States directed Google to their Amended Initial Disclosures and prior document productions by Plaintiff State of Texas. ECF No. 245-1 at 27-28 (Ex. A: States' Amended ROG Responses); *see also* Fed. R. Civ. P. 33(d) ("responding party may answer by: (1) specifying the records that must be reviewed, in sufficient detail ….").

In turn, the States' Amended Initial Disclosures contain a 28-page Appendix A, which

1

discloses 74 third-party entities,[1] including advertisers and publishers, which are then further broken out into multiple individual names within those third-party entities. ECF No. 272, Ex. 1 at A-1 to A-28. Appendix A also provides the "subject" or summary of the substance of the information known by each third party, based on the States' investigation and information. Those "subjects" include: "Relevant product markets at issue in the Complaint, including the ad buying tools market, the ad exchange market, the ad network market, the ad server market, and the instream online video advertising market; competition and barriers to entry in the relevant markets; Google's exclusionary conduct; and the anticompetitive effects arising from that conduct." *Id.* The States served their original initial disclosures in October 2022, disclosing the majority of these third-party names at the time and recently amended their disclosures to add third-party names that also appear in their document productions and Texas's privilege log. The States have disclosed all, and are not withholding any, identities of third parties with which they communicated about their relevant investigations and this case.

The States' document productions, starting in April 2021, have likewise laid bare the details of the States' communications with relevant third parties:

- **April 2021 Texas productions**: Between April 16 and April 22, 2021, Texas produced all documents (roughly 770,000 documents) that the multistate received from third parties in response to any Civil Investigative Demands ("CIDs") sent to third parties, including the CIDs themselves, in a rolling production. Texas possessed and produced these and other related documents because Texas served as the lead state in the investigation.

- **May 2023 productions:** On May 30, 2023, in response to Google's First Requests for Production, Texas searched, collected, reviewed, and produced any and all relevant correspondence with third parties in its possession, custody, or control (in addition to other categories of documents requested, all totaling around 6,500 documents). Other States did the same. As they have advised, the States are working on refresh collections and productions (if any) that will capture any additional third-party communications between April 12, 2023 (or the date of their initial collections) and March 1, 2024. All documents

---

[1] Appendix A includes 76 entries in total, including 2 entries for current and former Google employees.

disclosed to and from third parties (if any) were captured in the past productions.

In addition to the Amended Initial Disclosures and the document productions, Texas also voluntarily disclosed a privilege log of 69 attorney-directed memoranda prepared by different state Attorney General offices ("OAGs") about third-party interviews, which were exchanged solely between the common-interest, investigating states. ECF No. 272, Ex. 2. Texas's log clearly discloses to Google the identities of each third-party individual and entity interviewed and the dates of each interview, among other logged information. *Id.* Importantly, none of the entities on the log were new to Google, who either had them (or their prior entities[2]) through the original initial disclosures or documents produced by Texas. Google's repeated arguments about the "belated" timing of Texas's privilege log is, thus, a red herring, particularly in light of the fact that Google knew, in July 2021, that the States had conducted third-party witness interviews. *See* ECF No. 272 at 4 (citing July 2021 hearing transcript, where, according to Google, the States "referenc[ed] numerous interviews with third parties").

<u>Second</u>, the States have also adequately provided the information that Google seeks in its Interrogatories 29 through 31 and will continue to supplement its answers based on ongoing discovery and available information, again rendering Google's arguments moot. In response to those interrogatories—which seek the identity of persons with knowledge of the harms underlying the States' claims for any relief sought and brought in their sovereign and *parens patriae* capacities—the States (subject to and without waiving their objections) directed Google to:

- The States' Rule 26 Initial Disclosures, which are duplicative of the information sought by the interrogatories and which, as outlined above, discloses 74 third parties, including specific publishers and advertisers that the States allege are part of groups of persons that suffered the harms and injuries underlying the States' claims.

---

[2] Some entities were acquired or changed ownership and/or underwent name changes in the interim, which is information publicly and equally available to Google.

3

- The ongoing fact discovery and forthcoming expert discovery in this case, which include documents recently or not yet produced by Google, such as dashboards, APIs, programming guides, and other datasets and records—that the States will use to identify those harmed and that the Special Master has ordered Google to produce or take additional steps regarding. As they are entitled to do, the States will supplement their discovery responses as they receive data from Google. *See Firefighters' Ret. Sys. v. Citco Grp. Ltd.*, 2017 WL 2825925, at *4 (M.D. La. June 30, 2017) ("The court cannot compel Plaintiffs to respond with information they do not have and, as discussed below, deferring such supplemental responses is within the discretion of the court.").

- For Interrogatories 30 and 31, the States identified web publishers and advertisers—Google's customers, whose identities Google knows and the States are working to discover—as well as internet users and consumers, in each State as those persons that suffered harm as a result of Google's anticompetitive and deceptive conduct and provided additional information on that harm.

ECF No. 245-1 at 76-79 (Ex. A: States' Amended ROG Responses). Like the States' response to Interrogatory 9, the States have adequately responded to Interrogatories 29 through 31 based on the information available to them and will continue to supplement as they obtain more data and documents from Google and third parties.

*Finally*, Google's arguments not only fail to articulate any deficiency in the States' discovery responses—but they <u>certainly</u> fail to go the further extraordinary step of dismantling work product protections to gain access to the attorney-directed memoranda prepared by and exchanged between the investigating OAGs. Notably, Google does not challenge Texas's assertion of the work product doctrine, attorney-client privilege, and common interest privilege as to the attorney memoranda. Instead, as an "alternative" request, Google argues "substantial need" and "undue hardship" for redacted versions of these memoranda. ECF No. 272 at 4-5.

Google's alternative ask fails for several reasons. All of the memoranda at issue—prepared at the direction of OAGs in anticipation of litigation, by attorneys or law clerks of those OAGs, and with their mental impressions and opinions about the interviews—constitute protected privileged documents, as well as opinion or core work product that even Google acknowledges are highly protected. *See id.* at 5. Not just that: as courts in this District have recognized, "opinion

4

work product is afforded an almost absolute protection from discovery" and requires a demonstration of "a compelling need for the information." *United States v. Rodgers*, 2022 WL 1074013, at *6 (E.D. Tex. Apr. 8, 2022) (Mazzant, J.). Specifically, in *Rodgers*, Judge Mazzant denied the defendant's motion to compel testimony about third-party interviews because "even if the DOJ Witnesses testified only as to their 'interviews with witnesses related to the investigation' … these, too, would constitute opinion work product." *Id.* at *7 (citing *Smith v. Diamond Offshore Drilling, Inc.*, 168 F.R.D. 582, 585 (S.D. Tex. 1996) (concluding that investigatory reports that contain summaries of witness interviews are opinion work product because the reports are "suffused" with the investigator's mental impressions and conclusions) and *Dunn v. State Farm Fire & Cas. Co.*, 927 F.2d 869, 875 (5th Cir. 1991) (finding that opinion work product includes notes and memoranda created by an attorney or his agent, regarding witness interviews, because they contain mental impressions)).³

---

³ Other decisions by Judge Mazzant and courts in this Circuit have likewise protected attorney interview notes as opinion work product. *See Butler v. Am. Heritage Life Ins. Co.*, 2016 WL 367314, at *7 (E.D. Tex. Jan. 29, 2016) (Mazzant, J.) ("Documents thirty-two through thirty-four consist of handwritten notes that Mueller created when conducting his investigation. The Court finds that these documents would contain the 'mental impressions, conclusions, opinions, or legal theories' as created by a lawyer or a representative for Allstate."); *S.E.C. v. Brady*, 238 F.R.D. 429, 442 (N.D. Tex. 2006) ("Examples of opinion work product include notes and memoranda created by an attorney or his agent, regarding witness interviews, because they contain mental impressions. … Investigatory reports that contain summaries of witness interviews are also opinion work product because the reports are 'suffused' with the investigator's mental impressions and conclusions."); *Fisher v. Halliburton*, 2009 WL 10694752, at *7 (S.D. Tex. June 9, 2009) (attorney notes and memoranda of witness interviews are "clearly protected opinion work product").

On the other hand, Google's cited cases not only do not support its position, but some support protecting the memoranda here as opinion work product. In *Hawkins v. Wadley Reg'l Med. Ctr.*, 2006 WL 8440539, at *5 (E.D. Tex. Sept. 20, 2006) (Folsom, J.), the court held that an email between defense counsel and an expert regarding the framework for expert reports was protected opinion work product because it revealed the attorney's thought processes. In *Mass Engineered Design, Inc. v. Ergotron, Inc.*, 2008 WL 4873421, at *3 (E.D. Tex. Oct. 31, 2008) (Davis, J.), the court held that notes prepared by defense counsel concerning interviews with plaintiff's former counsel were opinion work product because they were "not simply a word-for-word transcript" of the interviews, but instead, contained a "selection of information" from the interviews and reflected defense counsel's mental impressions. The court only ordered production of the notes as a sanction because defense counsel had recklessly elicited privileged information from plaintiff's former counsel during the interviews. In *In re Int'l Sys. & Controls Corp. Sec. Litig.*, 693 F.2d 1235, 1240 (5th Cir. 1982), the Fifth Circuit vacated the district court's order requiring production of information an

Here, the OAG attorneys' and law clerks' memoranda are likewise "suffused" with their mental impressions and evaluations of the interviews, rendering the entire memoranda opinion work product and incapable of being redacted. *See Smith*, 168 F.R.D. at 585; *Brady*, 238 F.R.D. at 442. The memoranda are not transcripts or recordings of verbatim witness testimony.

Importantly, Google does not even try to discover any opinion work product or try to demonstrate the required "compelling need" for such work product. That ends the inquiry with respect to the attorney memoranda at issue here. Rather, Google only seeks to discover any "fact or ordinary work product" that, by definition, must not include any opinion work product or an attorney's mental impressions, opinions, conclusions, theories, and evaluations. *See* ECF No. 272 at 5; Fed. R. Civ. P. 26(b)(3)(B). And, as Google concedes, to access even that non-opinion work product, it must first show a "substantial need" for the materials and that it cannot without "undue hardship" obtain the substantial equivalent by other means. Even setting aside the fact that there is no non-opinion work product to discover in the memoranda, Google has not made the required "substantial need" and "undue hardship" showings to compel redacted memoranda.

Google claims it "has a substantial need for information about which third parties have relevant information or injuries upon which Plaintiffs rely." *Id.* at 4-5. Google already has that information as to the specifically named third parties (entities and individuals) that have relevant

---

accounting firm had collected as part of an internal investigation. And although the Fifth Circuit recognized that an unusual expense could constitute undue hardship, it referenced the need to take depositions in Canada, England, and the Middle East as examples. In *Smith v. Diamond Offshore Drilling, Inc.*, 168 F.R.D. 582, 584 (S.D. Tex. 1996), the court ordered that witness statements—transcripts of recorded interviews by an investigator three days after an accident—be produced because the lapse in time since the accident meant that substantially equivalent information could not obtained without undue hardship. But the court held that the investigator's reports were opinion work product "suffused with the investigator's mental impressions and conclusions." *Id.* at 585. The court held that plaintiff failed to show "compelling or extraordinary need that would justify disclosure of the investigative reports." *Id.* In *In re HealthSouth Corp. Sec. Litig.*, 250 F.R.D. 8 (D.D.C. 2008), the court only held that memoranda of witness interviews that were "nearly verbatim transcripts" of questions and answers, "complete with certain statements contained in quotation marks", were fact work product instead of opinion work product. *Id.* at 12-13.

6

information and a description of the relevant subjects those third parties have knowledge of. As outlined above, the States have produced that information in multiple forms: their initial disclosures, document productions, and Texas's privilege log. There is clearly no need, and certainly not a substantial one, to access work product for the same information.

As to its alleged "hardship" or burden, Google merely asserts that it cannot get the same information from depositions, given the two-plus months left of discovery and the deposition limits in this case, and that pursuing depositions would be needlessly costly. ECF No. 272 at 6. For one, Google has known about the identity of many of these third parties since April 2021 when Texas produced all third-party CID productions, October 2022 when the States served their original initial disclosures, and then May 2023 when Texas produced all relevant third-party communications. Also, a glaring omission from this discussion is the fact that Google could have itself tried to interview the third parties, just as the States did, and obtain the same information as the States. Google can still do that, independent of any deposition limits or discovery cutoffs. The States did not conduct their interviews under any compulsory process or pursuant to any process unique to the States. The fact also remains that, with its 40 depositions in this case, Google can depose many of these third parties (remotely too if cost really is an issue for Google).[4] *See In re Int'l Sys. & Controls Corp. Sec. Litig.*, 693 F.2d 1235, 1240 (5th Cir. 1982) ("We agree with the general proposition that discovery of work product will be denied if a party can obtain the information he seeks by deposition."). That Google has not even yet tried to interview or depose any of these third parties to obtain the same alleged information further underscores the lack of undue hardship and substantial need for the work product memoranda at issue.

In sum, the States have adequately responded to Interrogatories 9 and 29-31, and Google

---

[4] Google also may have already deposed, or can depose, some of the third parties in the other actions.

cannot "alternatively" compel the production of the protected work product memoranda.

II. **The States that use Ad Tech products have sufficiently responded to interrogatories and have produced relevant documents and/or discussed or are willing to facilitate Rule 45 subpoenas that Google has not further pursued.**

Google purports to challenge the document productions[5] of the States that "use ad tech products," arguing generally that those states have not obtained relevant documents from their ad agencies and that discovery has been "dodged." ECF No. 272 at 7. That is simply not true.

As an initial matter, the States discussed these issues with Google in or around April 2023 during the States' productions in response to Google's First Requests for Production and either resolved the issues then or heard nothing more from Google. For instance, at that time and as a result of those discussions, Google served at least one Rule 45 subpoena on the ad agency associated with North Dakota. That agency then produced documents to Google—with Google's counsel subsequently confirming in April 2023 and in writing to the ad agency that: "After reviewing the materials you sent, we can confirm that [the agency] has met its obligations under Google's Rule 45 subpoenas …." Ex. 1. Other States, like Kentucky and Indiana, have directly produced to Google responsive email communications concerning the use of ad tech products or display advertising by each State's Office of the Attorney General and are in the process of refreshing or have refreshed those productions. These States, Kentucky and Indiana, are also willing to facilitate Rule 45 subpoenas if Google wants to pursue documents from their ad agencies concerning the use of ad tech products or display advertising by each State's Office of the Attorney General that were not produced by the States themselves already. Google has not articulated why Rule 45 subpoenas, which it has already satisfactorily served against at least one ad agency (North

---

[5] Google's brief does not argue or assert that these States' interrogatory responses are deficient in any way.

8

Dakota), are unduly burdensome.[6]  With respect to Louisiana, Louisiana has no responsive documents in its possession but, without waiving its objections and as a sign of compromise and good faith, will request that the ad agencies, with which it contracted and which are identified in its discovery responses, conduct a reasonable search for responsive documents.  And yet other States, like Arkansas, do not use an ad agency, as Google itself acknowledges, so is not relevant to Google's arguments here.  ECF No. 272 at 7.

In short, there is no impasse on these issues and nothing to compel the States to do.

**III.    The States have adequately responded to Interrogatories 2, 4, 5 and 26.**

Google lastly, again, challenges the States' responses to Interrogatories 2, 4, 5 and 26—but does not raise any new or compelling arguments from the first time the parties briefed this issue two weeks ago.  *See* ECF No. 245 at 3-5.  Using the information reasonably available to them, the States have in good faith and diligently responded, and then amended their responses, to these four interrogatories, and continue to be willing to supplement them based on additional data produced during discovery, including those from Google and third parties.  *See* ECF No. 245-1 at 8-9, 12-23, 63-74 (Ex. A: States' Amended ROG Responses); Ex B (Ex. B to same).

Google repeats the same arguments about the timing of the States' disclosures that, again, do not reflect the law in this District or Circuit, which recognizes that a plaintiff's remedies and damages disclosures can be supplemented throughout discovery, particularly where they depend on information from the defendant.  *See BioTE Med., LLC v. Jacobsen*, 2020 WL 6781516, at *2 (E.D. Tex. Nov. 18, 2020) (Mazzant, J.) ("While Defendants argue that BioTE's damages calculation is still untimely and should be excluded, it is only untimely because Defendants have

---

[6] Google can also request a meet and confer with any specific State to discuss the issue of document/data production by that State's outside advertising agency prior to issuing such a subpoena. To date, Google has not requested or held such a meet and confer with the States.

not yet produced certain sales data. It would be unreasonable to strike one party's evidence as tardy when the delay was caused by the movant. … As Defendants possess their own sales data, they will not be surprised when BioTE uses it to calculate damages."); *Firefighters' Ret. Sys. v. Citco Grp. Ltd.*, 2017 WL 2825925, at *4 (M.D. La. June 30, 2017) ("The court cannot compel Plaintiffs to respond with information they do not have and, as discussed below, deferring such supplemental responses is within the discretion of the court.").[7] Here, Google possesses and has refused to produce data, including dashboards, APIs, guides, and other datasets and records—that the Special Master has now ordered Google to produce (or produce information on) and that the States will use to identify those harmed and the scale of that harm.

Finally, Google's citation to Magistrate Judge Anderson's statement about the DOJ's interrogatory responses in the related Virginia case also does not support Google's arguments. As an initial matter, despite the Special Master's clear ruling that "written discovery in the Virginia Action is in fact 'relevant' and discoverable in this Texas Action" and despite the States' follow-up request for production of that discovery in this case pursuant to the Special Master's relevance finding under the Local Rules and past served RFPs, Google does not appear to have produced that relevant written discovery yet in this case.[8] ECF No. 253 at 3. Moreover, Google again does not argue that the States' responses are deficient vis-à-vis the DOJ's ordered responses.

As their responses show, the States have sufficiently responded to Google's Interrogatories 2, 4, 5 and 26. There is no relief to order on these issues at this time.

---

[7] This time around, Google only cites one reported decision. That case is again inapposite: *Janvey v. Greenberg Traurig, LLP*, 2019 WL 13175533 at *3 (N.D. Tex. Feb 12, 2019) involved a plaintiff's tort claims against multiple defendants (unlike here), and the court there only took issue with the plaintiff's "lump sum" approach to the defendants in its interrogatory responses. The court there did not order the relief sought by Google here.

[8] The States receive ongoing productions from Google that typically do not identify the documents produced and require time to download, ingest, and publish for review.

10

Respectfully submitted,

| | |
|---|---|
| */s/ W. Mark Lanier* | */s/ Ashley Keller* |
| W. Mark Lanier | Ashley Keller |
| Mark.Lanier@LanierLawFirm.com | ack@kellerpostman.com |
| Alex J. Brown | 150 N. Riverside Plaza, Suite 4100 |
| Alex.Brown@LanierLawFirm.com | Chicago, Illinois 60606 |
| Zeke DeRose III | (312) 741-5220 |
| Zeke.DeRose@LanierLawFirm.com | |
| Jonathan P. Wilkerson | Zina Bash |
| Jonathan.Wilkerson@LanierLawFirm.com | zina.bash@kellerpostman.com |
| 10940 W. Sam Houston Pkwy N | 111 Congress Avenue, Suite 500 |
| Suite 100 | Austin, TX 78701 |
| Houston, TX 77064 | (512) 690-0990 |
| (713) 659-5200 | |
| **THE LANIER LAW FIRM, PLLC** | Noah S. Heinz |
| | noah.heinz@kellerpostman.com |
| | 1101 Connecticut, N.W., 11th Floor |
| | Washington, DC 20005 |
| | (202) 918-1123 |
| | **KELLER POSTMAN LLC** |

*Counsel for Texas, Idaho, Louisiana (The Lanier Law Firm only), Mississippi, North Dakota, Mississippi, South Carolina, and South Dakota*

*Submitted on behalf of all Plaintiff States*


**NORTON ROSE FULBRIGHT US LLP**
Joseph M. Graham, Jr.
joseph.graham@nortonrosefulbright.com
Geraldine Young
geraldine.young@nortonrosefulbright.com
1301 McKinney, Suite 5100
Houston, Texas 77010
(713) 651-5151

Marc B. Collier
Marc.Collier@nortonrosefulbright.com
98 San Jacinto Blvd., Suite 1100
Austin, Texas 78701
(512) 474-5201

FOR PLAINTIFF STATE OF TEXAS:

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

JAMES LLOYD
Deputy Attorney General for Civil Litigation

*/s/ Trevor E. D. Young*
TREVOR E. D. YOUNG
Deputy Chief, Antitrust Division

**OFFICE OF THE ATTORNEY GENERAL OF TEXAS**
P.O. Box 12548
Austin, TX 78711-2548
(512) 936-1674

*Attorneys for Plaintiff State of Texas*

**CERTIFICATE OF SERVICE**

I certify that, on March 1, 2024, this document was filed electronically in compliance with Local Rule CV-5(a) and served on all counsel who have consented to electronic service, per Local Rule CV-5(a)(3)(A).

*/s/ Geraldine Young*
Geraldine Young