IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| THE STATE OF TEXAS, et al.,<br><br>      Plaintiffs,<br><br>v.<br><br>GOOGLE LLC,<br><br>      Defendant. | Civil Action No. 4:20-cv-00957-SDJ |

**PLAINTIFF STATES' SUR-REPLY IN OPPOSITION TO DEFENDANT
GOOGLE LLC'S MOTION FOR DISMISSAL PURSUANT TO RULE 12(b)(1)**

## INTRODUCTION

Google's confused reply raises faulty *merits* arguments to contest this Court's subject-matter jurisdiction. Although most of Google's arguments are repackaged from its original motion, it now raises the new—and baseless—argument that Plaintiff States lack Article III standing because "*Illinois Brick* forecloses *parens patriae* standing based on indirect consumer injury." Dkt. 277 at 14 (quoting *Kansas v. UtiliCorp United, Inc.*, 497 U.S. 199, 219 (1990)). *This* was the "additional explanation" that sparked its motion for more pages. Dkt. 267 at 3. Because Google's *Illinois Brick* argument has not been previously briefed and is egregiously wrong, Plaintiff States file this sur-reply.

Google's *Illinois Brick* argument is wrong for two independent and sufficient reasons. First, controlling authority (that Google fails to cite) clearly holds that the indirect-purchaser bar does not apply to suits for injunctive relief. Second, *Illinois Brick*'s indirect-purchaser bar is not jurisdictional, but a question of *statutory* standing addressing which persons have a cause of action. Google's remaining argument against Plaintiff States' *parens patriae* standing misreads two cases that have little application here and continues to ignore Plaintiff States' well-pleaded allegations.

Failing in its new arguments, Google reprises its old ones, fixating on Plaintiff States' interrogatory responses on remedies. Google's own protracted and unnecessary account of the litigation to date does not support Google's accusation that Plaintiff States have "dramatically reversed positions on standing." Dkt. 267 at 1. The Interrogatory Responses did not mention "standing." Google's argument follows from its continued conflation of Article III *injuries*—a jurisdictional issue—with state-law *remedial* authorities—a merits question. Plaintiff States' responses on injuries have been consistent, and continue to support standing.

Finally, Google fails once again to identify any controlling authority for its argument that states lack sovereign standing to sue for antitrust and consumer protection violations.

## ARGUMENT

Google chose to bifurcate its motions to dismiss into one on jurisdiction under Rule 12(b)(1) and the other on the merits under Rule 12(b)(6). And yet, its reply in support of its 12(b)(1) motion largely raises merits questions. Courts in the Fifth Circuit "refus[e] to treat indirect attacks on the merits as Rule 12(b)(1) motions." *Williamson v. Tucker*, 645 F.2d 404, 415 (5th Cir. May 1981). This Court should do the same. The few arguments in Google's reply that *do* pertain to jurisdiction still fail to undermine Plaintiff States' standing for all their federal and state-law claims.

## I. Injuries to Plaintiff States' Consumers, Businesses, Competitive Conditions, and General Economies Support *Parens Patriae* Standing.

### A. Indirect Injuries to Plaintiff States' Consumers Support Article III Standing.

Google's argument that the "indirect injuries" it imposed on millions of affected consumers that reside in the Plaintiff States cannot support Article III standing relies entirely on a case that holds nothing of the sort. In *Kansas*, the Supreme Court held that states lack a "cause of action" to sue as *parens patriae* for *damages* under 15 U.S.C. § 15 and § 15c on behalf of indirectly injured consumers, applying the indirect-purchaser rule of *Illinois Brick*. 497 U.S. at 204, 218 (citing, *inter alia*, *Ill. Brick Co. v. Illinois*, 431 U.S. 720 (1977)). This holding has nothing to do with Article III's case-or-controversy requirement. And it has no bearing on Plaintiff States' constitutional standing to sue for injunctive relief under 15 U.S.C. § 26 or for any relief under their state laws.

First, and fatally, the indirect-purchaser rule applied in *Kansas* and *Illinois Brick* applies only to federal antitrust *damages* actions, not to suits for injunctive relief. Binding Fifth Circuit precedent has repeatedly held: "[T]he *Illinois Brick* rule has no application to claims for injunctive relief." *In re Beef Indus. Antitrust Litig.*, 600 F.2d 1148, 1167 (5th Cir. 1979). That is because the *Illinois Brick* rule "rests not on a lack of injury to indirect purchasers, but on the belief that difficulties in proving indirect damages might weaken the effectiveness of private antitrust

2

actions." *In re Chicken Antitrust Litig. Am. Poultry*, 669 F.2d 228, 238 (5th Cir. 1982). Thus, "this circuit has held that indirect purchasers may obtain injunctive relief pursuant to section 16 of the Clayton Act, 15 U.S.C. § 26, even if monetary relief is generally unavailable." *Id.* (citing *In re Beef*, 600 F.2d at 1167). Other circuits agree, without exception.[1] Google does not pretend otherwise. Despite obtaining permission to file a longer reply brief, it apparently did not have space to address or even cite this binding precedent.

Second, the indirect-purchaser bar of *Kansas* and *Illinois Brick* has nothing to do with Article III standing. Rather, both cases pertain only to "antitrust standing," *Illinois Brick*, 431 U.S. at 760, a species of "statutory standing" that asks whether a plaintiff "*has a cause of action* under the statute," *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128, 128 n.4 (2014) (emphasis added). While it may have been confusing to Google that judicial power under Article III and the existence of a damages claim under the antitrust laws both use the shorthand "standing," binding precedent again teaches that the two concepts are distinct. The antitrust standing inquiry is "different from that of standing as a constitutional doctrine," *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 535 n.31 (1983), and "the absence of a valid . . . cause of action does not implicate subject-matter jurisdiction," *Lexmark*, 572 U.S. at 128 n.4 (citation omitted). *See also Port Dock & Stone Corp. v. Oldcastle Ne., Inc.*, 507 F.3d 117, 121 (2d Cir. 2007) ("Antitrust standing is distinct from constitutional

---

[1] *See, e.g.*, *Lakeland Reg'l Med. Ctr., Inc. v. Astellas US, LLC*, 763 F.3d 1280, 1290 (11th Cir. 2014). ("The direct purchaser rule does not apply to claims for injunctive and declaratory relief."); *Dickson v. Microsoft Corp.*, 309 F.3d 193, 214 n.24 (4th Cir. 2002) ("*Illinois Brick*'s indirect purchaser rule, when applicable, bars only compensatory damages relief and does not apply to injunctive relief." (citing *Cargill, Inc. v. Monfort of Colorado,* 479 U.S. 104, 111 n. 6 (1986); *Campos v. Ticketmaster,* 140 F.3d 1166, 1172 (8th Cir.1998); *McCarthy v. Recordex Serv., Inc.,* 80 F.3d 842, 856–57 (3d Cir. 1996))); *In re Nat'l Football League's Sunday Ticket Antitrust Litig.*, 933 F.3d 1136, 1156 n.6 (9th Cir. 2019) ("[P]laintiffs have standing to seek injunctive relief based on the Teams-NFL Agreement because 'indirect purchasers are not barred from bringing an antitrust claim for injunctive relief against manufacturers.'" (quoting *Lucas Auto. Eng'g, Inc. v. Bridgestone/Firestone, Inc.*, 140 F.3d 1228, 1235 (9th Cir. 1998))).

standing . . . ."); *NicSand, Inc. v. 3M Co.*, 507 F.3d 442, 449 (6th Cir. 2007) ("[A]ntitrust standing and Article III standing are not one and the same . . . .").

That is why "[w]hether a plaintiff has antitrust standing does not raise a question of jurisdiction." *McCormack v. Nat'l Collegiate Athletic Ass'n*, 845 F.2d 1338, 1343 (5th Cir. 1988). And that is why dismissal for lack of antitrust standing "is properly granted under Rule 12(b)(6)," not 12(b)(1). *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 795 n.2 (5th Cir. 2011). That, of course, makes sense. If a party cannot recover based on the court's interpretation of the governing *statute,* its case should be dismissed on the *merits,* not for lack of jurisdiction. If Google were correct, Congress could not modify the antitrust laws to repeal *Illinois Brick*—since it would be constitutionally required—and courts could not entertain suits from indirect purchasers in the many states that have passed *Illinois-Brick* repealer statutes for their state antitrust law. Neither logic nor any legal authority supports that argument.

Third, *Illinois Brick* and *Kansas* also do not apply to Plaintiff States' state-law claims. The *Illinois Brick* rule is "strictly a question of statutory interpretation"—namely, "what was the proper construction of § 4 of the Clayton Act"—and neither *Illinois Brick* nor the case upon which it relied "contain[ed] any discussion of state law." *California v. ARC Am. Corp.*, 490 U.S. 93, 102-03 (1989). Thus, even if the indirect-purchaser rule were relevant to federal antitrust claims, it would not affect Plaintiff States' state-law claims. Indeed, Google does not even discuss the indirect-purchaser bar in its Rule 12(b)(6) motion in this case, where it would belong.

With the underbrush of *Illinois Brick* swept aside, it is clear that Plaintiff States allege injuries to a sufficiently "substantial portion" of their populations.[2] Google's reply, like its initial

---

[2] Indeed, *Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez* explicitly instructs courts to consider "indirect effects of the injury" to "individual residents" when "determining whether the State has alleged injury to a sufficiently substantial segment of its population." 458 U.S. 591, 607 (1982).

4

motion, fails to distinguish Plaintiff States' allegations of quasi-sovereign injury from those that have long supported *parens patriae* standing in state antitrust enforcement suits. There is a simple reason for this: antitrust suits are quintessential *parens patriae* actions due to the widespread effects of antitrust violations on states' consumers, markets, and economies. *See, e.g.*, *In re Generic Pharms. Pricing Antitrust Litig.*, 605 F. Supp 3d 672, 680 (E.D. Pa. 2022) ("Preventing antitrust harms to a state's citizenry is a recognized quasi-sovereign interest."); Dkt. 244 at 6.[3]

Google's remaining authorities do not suggest otherwise. In *Harrison v. Jefferson Parish School Board*, only two students were concretely injured by the alleged violation. 78 F.4th 765, 767 (5th Cir. 2023). Further, *Jefferson Parish* did not even reach the question of whether the plaintiff state alleged injury to a sufficiently substantial segment of its population. *See id.* at 772. Meanwhile, in *Louisiana ex rel. Department of Wildlife & Fisheries v. NOAA*, the Fifth Circuit held that the plaintiff state lacked *parens patriae* standing at the summary judgment phase because it failed to put forward *any* evidence (as opposed to mere allegations) of injury to its residents. 70 F.4th 873, 881 (5th Cir. 2023). Here, by contrast, Plaintiff States need only *allege* sufficient quasi-sovereign injures, which they clearly do under the relevant precedents. Google's continued reliance on inapposite cases evinces the radical nature of its argument that widespread alleged injuries to states' consumers from antitrust and consumer protection violations do not support *parens patriae* standing.

### B. Google Ignores Well-Pleaded Quasi-Sovereign Injuries to Plaintiff States' Competitive Markets and General Economies.

Repackaging unconvincing arguments from its opening brief, Google insists again that

---

[3] *Snapp*, too, makes this clear. The Court in *Snapp* stated that one indication of whether a sufficiently substantial segment of the population is injured is whether "the injury is one that the State, if it could, would likely attempt to address through its sovereign lawmaking powers." 458 U.S. at 607. Here, States have in fact passed their own antitrust and consumer protection laws to address these kinds of injuries. This, too, demonstrates why antitrust and consumer protection suits are paradigmatic *parens patriae* suits.

Plaintiff States allege only "harms to particular private parties," namely their publishers, advertisers, and consumers. Dkt. 277 at 10-12. Yet, again, the allegations of quasi-sovereign injury in this case extend far beyond injuries to particular private parties. Plaintiff States allege injuries to the prices, product quality, innovation, and competitive functioning of five relevant markets in their states. *See* Dkt. 244 at 4-8, 13. These injuries are precisely the kinds of injury to "economic interests" that are "classic example[s]" of quasi-sovereign injury for *parens patriae* standing. *Jefferson Parish*, 78 F.4th at 772.

To argue otherwise, Google invokes a single out-of-circuit case that only highlights the strength of Plaintiff States' standing. In *Missouri ex rel. Koster v. Harris,* the plaintiffs failed to allege "specific allegations about the statewide magnitude" of the harms to the egg farmers affected by the challenged regulation, or "the extent to which they affect more than just an 'identifiable group of individual' egg farmers." 847 F.3d 646, 652 (9th Cir. 2017) (citation omitted). By contrast, Plaintiff States allege injury not just to advertisers and publishers, but also to their states' broader markets—including, for instance, to potential competitors who never entered the market due to Google's anticompetitive conduct. *See, e.g.*, FAC ¶¶ 509, 515, 522. Google offers no response whatsoever to these allegations.

*Harris* also points to another, independent reason that Plaintiff States sufficiently allege quasi-sovereign injury. In *Harris*, the Ninth Circuit considered the possibility that a state could base its *parens patriae* standing on injuries to its states' consumers in the form of higher and fluctuating egg prices. *See* 847 F.3d at 652. The court rejected the argument only because any effects on the price of eggs from the challenged, not-yet-implemented regulation were "too speculative for article III purposes." *Id.* at 653-64 (citation omitted). Here, the alleged price injuries to millions of Plaintiff States' consumers have already occurred due to Google's already-implemented anticompetitive conduct. Plaintiff States' suit thus stands in exactly the same position

as the state enforcement actions in *New York v. Microsoft Corp.*, 209 F. Supp. 2d 132 (D.D.C. 2002), *New York v. Facebook, Inc.*, 549 F. Supp. 3d 6 (D.D.C. 2021), and *In re Electronic Books Antitrust Litigation*, 14 F. Supp. 3d 525, 531 (S.D.N.Y. 2014), where courts readily found that widespread price harms to states' consumers support *parens patriae* standing.

Instead of addressing Plaintiff States' allegations or the relevant precedents, Google complains that the applicable rules make *parens patriae* standing in antitrust enforcement suits too easy to obtain. *See* Dkt. 277 at 11 ("Plaintiffs' argument would obviate the requirement of a quasi-sovereign interest altogether, by equating it with the allegation of an antitrust violation."). But that is a feature, not a bug, of the *parens patriae* jurisprudence. A state's "interest in preventing harm to its citizens by antitrust violations is, indeed, a prime instance of the interest that the *parens patriae* can vindicate," *In re Ins. Antitrust Litig.*, 938 F.2d 919, 927 (9th Cir. 1991), *rev'd in part on other grounds sub nom.*, *Hartford Fire Ins. Co. v. California*, 509 U.S. 764 (1993), precisely because antitrust violations readily cause widespread economic injuries that extend beyond a narrow set of particular parties.

## II.   Google Continues to Conflate Injuries and Remedies.

Google again accuses Plaintiff States of changing positions on their Article III standing theories, but this argument is based on a conflation between injuries and remedies and a misreading of the discovery responses. Article III requires that a plaintiff show "(1) an injury in fact that (2) is fairly traceable to the conduct complained of and (3) redressable by a favorable judicial decision." *Jefferson Parish*, 58 F.4th at 769. The "capacity" in which a state sues relates to "standing's first requirement," injury in fact, and "states can sue in multiple capacities" depending on the injury. *Id.* Google raises no challenge to traceability or redressability. Dkt. 277 at 4-5.

If the Court focuses on *injuries*, as Article III requires, Plaintiff States have been consistent in alleging both quasi-sovereign and sovereign injuries that support their standing. *See* FAC ¶ 31;

Dkt. 244 at 2. Plaintiff States' FAC and interrogatory responses both discuss injuries to advertisers, businesses, consumers, and the States' markets and general economies, all of which support the States' *parens patriae* standing. *See* FAC ¶¶ 29, 61, 70, 118-21, 194-95, 244, 254-501, 502-525, 538, 547-48, 560-62, 596; Dkt. 244-5 at 11-23.

Google improperly seeks to shift the focus away from injuries and standing to remedies and the merits. When Google asked Plaintiff States about the "remedies [the States] seek," the "capacity" in which they seek "each remedy," and "the statutory or other legal basis for each such remedy," the States responded with their best assessment of the *remedies* that they seek, citing the state-law legal authority. *See* Dkt. 244-5 at 8. Because, as a matter of state law, some State's legal authorities make certain remedies available only when a State sues in a certain capacity, Plaintiff States have provided those interpretations of state law where applicable.

Any controversy around those interrogatory responses is immaterial to jurisdiction, however, since the precise remedy a plaintiff seeks, and under what state-law authority— disgorgement, civil penalties, and so forth—has nothing to do with Article III injury. A Court with Article III jurisdiction can award any and all "relief to which each party is entitled." Fed R. Civ. P. 54(c); *see Peterson v. Bell Helicopter Textron, Inc.*, 806 F.3d 335 (5th Cir. 2015) ("Rule 54(c) authorizes district courts to grant any appropriate relief . . . where relief is otherwise legally permitted."). The question of what relief is "legally permitted" is a merits question that concerns the facts proved and the "scope of the . . . right of action." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 92 (1998). That is why the remedial limitations of what state law deems *parens patriae* actions have no bearing on Article III standing, even if the same phrase—"*parens patriae*"—is used in both state and federal law.[4] The interrogatory responses similarly have no

---

[4] *See, e.g.*, Dkt. 244-6 at 5 (citing SD Codified L § 37-1-23, which allows the South Dakota attorney general to recover monetary relief when it sues "as parens patriae," and SD Codified L § 37-1-32,

relevance.

Plaintiff States made that distinction explicit in their amended interrogatory responses. *See* Dkt. 244-5 at 9 ("For the avoidance of doubt, the Plaintiff States emphasize that the foregoing responses pertain only to the *remedies* sought under their state law authorities and do not purport to address or modify the *injuries* that the Plaintiff States allege in the [FAC]."). Thus, far from demonstrating "inconsistency" in their "theories of standing and remedies," Dkt. 277 at 2, Plaintiff States have appropriately distinguished the question of Article III standing from the question of remedies. Google, on the other hand, continues to confuse them. Google can challenge, at the summary judgment stage, Plaintiff States' authority to seek any particular form of relief. But addressing that question under the guise of Article III is improper.

After Google's many pages of confused briefing on this topic, Plaintiff States' standing theories remain the same as originally pled: all Plaintiff States allege both quasi-sovereign injuries, for *parens patriae* standing, and sovereign injuries to support sovereign standing, for both their federal and state-law claims. *See* FAC ¶ 31.

## III.   Google Lacks Any Authority for Its Sweeping Sovereign Standing Theory.

Google still cites no relevant authority for its strident yet unsupported argument that states lack the sovereign authority to enforce (a) the federal antitrust laws that grant them such authority, and (b) their own state laws, despite the long "history and tradition" of both. *Jefferson Parish*, 78 F.4th at 769; Dkt. 244 at 11-12, 14-15.

Regarding federal law claims, Google relies on wholly inapposite citations. *Philip Morris,*

---

which clarifies that these and other powers granted to the State's AG are "in addition to and not in derogation of the common law powers of the AG to act in parens patriae"); *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 520–21 (E.D. Mich. 2003) ("[T]he United States Supreme Court observed that 'a State has a quasi-sovereign interest in the health and well being—both physical and economic—of its residents in general.' That federal authority is supplemented by state statutory provisions and case law." (quoting *Snapp*, 458 U.S. at 607)).

*Inc. v. Blumenthal* is a case about the applicability of *Younger* abstention and has nothing to do with Article III standing. 123 F.3d 103, 107 (2d Cir. 1997). The proposition Google paraphrases from *California v. American Stores Co*. concerns statutory standing, not Article III standing. 495 U.S. 271, 296 (1990). The out-of-context quote from *Facebook* pertains to the availability of a laches defense. *Facebook*, 549 F. Supp. 3d at 39. Finally, the quote from *Georgia v. Evans* just says that states cannot prosecute *criminally* under federal law. 316 U.S. 159, 162 n.1 (1942).

Google's authority regarding the state-law claims is even more sparse. Indeed, Google's only new citation is a single district-court case about *Younger* abstention, which plainly does not apply here because, among other things, there is no "parallel, pending . . . state civil proceeding" brought by any of the Plaintiff States against Google on their state claims. *Yelp Inc. v. Paxton*, No. 23-cv-04977, 2024 WL 413464, at *3 (N.D. Cal. Feb. 1, 2024) (citation omitted). The Court cannot abstain in favor of a phantom action that Google, apparently, wishes the Plaintiff States had instead filed. Google also relies again on *Jefferson Parish*, a case that turned on the lack of "any precedent, history, or tradition" to support a state's "attempts to invoke federal jurisdiction to enforce mostly state law against a subordinate." 78 F.4th at 767, 771. Beyond that, Google is left to fall back on vague and undefined "rule of law and dual-sovereignty principles." Dkt. 277 at 8.

There is substantially more historical precedent for this kind of suit than the odd suit in *Jefferson Parish*, and *Jefferson Parish* does not foreclose sovereign standing here. Even so, because Plaintiff States allege quasi-sovereign injuries for *parens patriae* standing, this Court can rely upon *parens patriae* standing to uphold jurisdiction and need not reach sovereign standing.

## CONCLUSION

Plaintiff States respectfully request that the Court deny Google's motion.

DATED: March 7, 2024

Respectfully submitted,

/s/ W. Mark Lanier

W. Mark Lanier
Alex J. Brown
Zeke DeRose III
**THE LANIER LAW FIRM, P.C.**
10940 W. Sam Houston Pkwy N.
Suite 100
Houston, TX 77064
Telephone: (713) 659-5200
Facsimile: (713) 659-2204
Email: mark.lanier@lanierlawfirm.com
Email: alex.brown@lanierlawfirm.com
Email: zeke.derose@lanierlawfirm.com

/s/ Ashley Keller

Ashley Keller (*pro hac vice*)
**KELLER POSTMAN LLC**
150 N. Riverside Plaza
Suite 4100
Chicago, IL 60606
Telephone: (312) 741-5220
Facsimile: (312) 971-3502
Email: ack@kellerpostman.com

Zina Bash (Bar No. 24067505)
111 Congress Avenue
Suite 500
Austin, TX 78701
Email: zina.bash@kellerpostman.com

Noah S. Heinz (*pro hac vice forthcoming*)
1101 Connecticut Ave., N.W.
11th Floor
Washington, DC 20036
Email: noah.heinz@kellerpostman.com

*Counsel for Texas, Idaho, Indiana, Louisiana (The Lanier Law Firm Only), Mississippi, North Dakota, South Carolina, and South Dakota.*

**NORTON ROSE FULBRIGHT US LLP**
Joseph M. Graham, Jr.
joseph.graham@nortonrosefulbright.com
Geraldine Young
geraldine.young@nortonrosefulbright.com
1301 McKinney, Suite 5100
Houston, Texas 77010
(713) 651-5151

Marc B. Collier
Marc.Collier@nortonrosefulbright.com
98 San Jacinto Blvd., Suite 1100
Austin, Texas 78701
(512) 474-5201

FOR PLAINTIFF STATE OF TEXAS:

KEN PAXTON
Attorney General


*/s/ Trevor E. D. Young*
Brent Webster, First Assistant Attorney
General of Texas
Brent.Webster@oag.texas.gov
James R. Lloyd, Deputy Attorney General
for Civil Litigation
James.Lloyd@oag.texas.gov
Trevor E. D. Young, Deputy Chief,
Antitrust Division
Trevor.Young@oag.texas.gov


**OFFICE OF THE ATTORNEY GENERAL OF
TEXAS**
P.O. Box 12548
Austin, TX 78711-2548
(512) 936-1674

*Attorneys for Plaintiff State of Texas*

FOR PLAINTIFF STATE OF ALASKA:

TREG TAYLOR
ATTORNEY GENERAL


By: /s/ Jeff Pickett
Jeff Pickett
Senior Assistant Attorney General, Special Litigation Section
jeff.pickett@alaska.gov

*Attorney for Plaintiff state of Alaska*

FOR PLAINTIFF STATE OF ARKANSAS:

TIM GRIFFIN
ATTORNEY GENERAL


By: _____
AMANDA J. WENTZ
Ark. Bar No. 2021066
Assistant Attorney General
Office of the Arkansas Attorney General
323 Center Street, Suite 200
Little Rock, AR 72201
(501) 682-1178
Amanda.Wentz@ArkansasAG.gov

*Attorney for Plaintiff State of Arkansas*

FOR PLAINTIFF STATE OF FLORIDA:

ASHLEY MOODY, Attorney General

*/s/ Lee Istrail*
Lee Istrail, Assistant Attorney General, Antitrust Division
FL Bar No. 119216

LIZABETH A. BRADY, Director, Antitrust Division
ANDREW BUTLER, Assistant Attorney General
CHRISTOPHER KNIGHT, Assistant Attorney General


Office of the Attorney General, State of Florida
PL-01 The Capitol
Tallahassee, Florida 32399
Phone: 850-414-3300
Email: Liz.Brady@myfloridalegal.com

Office of the Attorney General, State of Florida
PL-01 The Capitol
Tallahassee, Florida 32399
Phone: 850-414-3300
Email: scott.palmer@myfloridalegal.com

*Attorneys for Plaintiff State of Florida*

FOR PLAINTIFF STATE OF IDAHO:

RAÚL R. LABRADOR
Attorney General

*/s/ John K. Olson*
John K. Olson, Deputy Attorney General

Consumer Protection Division
Office of the Attorney General
954 W. Jefferson Street, 2nd Floor
P.O. Box 83720
Boise, Idaho 83720-0010
Telephone:   (208)   334-2424
john.olson@ag.idaho.gov

*Attorneys for Plaintiff State of Idaho*

FOR PLAINTIFF STATE OF INDIANA:

THEODORE E. ROKITA
Attorney General

Matthew Michaloski
Deputy Attorney General
Indiana Atty. No. 35313-49
Indiana Government Center South – 5th Fl. 302
W. Washington Street
Indianapolis, IN 46204-2770
Phone: (317) 234-1479
Fax: (317) 232-7979
Email: matthew.michaloski@atg.in.gov

*Attorneys for Plaintiff State of Indiana*

FOR PLAINTIFF COMMONWEALTH OF KENTUCKY:

RUSSELL COLEMAN
Attorney General

*/s/ Philip R. Heleringer*
Christian J. Lewis, Commissioner of the Office of Consumer Protection
christian.lewis@ky.gov
Philip R. Heleringer, Executive Director of the Office of Consumer Protection
philip.heleringer@ky.gov
Jonathan E. Farmer, Deputy Executive Director of the Office of Consumer Protection
jonathan.farmer@ky.gov
Office of the Attorney General
Commonwealth of Kentucky
1024 Capital Center Drive, Suite 200
Frankfort, Kentucky 40601
Tel: 502-696-5300

*Attorneys for Plaintiff Commonwealth of Kentucky*

FOR PLAINTIFF STATE OF LOUISIANA:

By: */s/ Patrick Voelker*
Liz Murrill, Attorney General
Michael Dupree, Assistant Attorney General
Patrick Voelker, Assistant Attorney General
Office of the Attorney General, State of Louisiana
Public Protection Division
1885 North Third St.
Baton Rouge, Louisiana 70802
(225) 326-6400
voelkerp@ag.louisiana.gov

*s/ James R. Dugan, II*
James R. Dugan, II (*pro hac vice*)
TerriAnne Benedetto (*pro hac vice*)
The Dugan Law Firm
365 Canal Street
One Canal Place, Suite 1000
New Orleans, LA 70130
PH:   (504) 648-0180
FX:   (504) 649-0181
EM:   jdugan@dugan-lawfirm.com
        tbenedetto@dugan-lawfirm.com

James Williams
CHEHARDY SHERMAN WILLIAM, LLP
Galleria Boulevard, Suite 1100
Metairie, LA 70001
PH:   (504) 833-5600
FX:   (504) 833-8080
EM:   jmw@chehardy.com

*Attorneys for Plaintiff State of Louisiana*

FOR PLAINTIFF STATE OF MISSISSIPPI:

LYNN FITCH, ATTORNEY GENERAL
STATE OF MISSISSIPPI

By:     */s/ Hart Martin*
        Hart Martin
        Consumer Protection Division
        Mississippi Attorney General's Office
        Post Office Box 220
        Jackson, Mississippi 39205
        Telephone: 601-359-4223
        Fax: 601-359-4231
        Hart.martin@ago.ms.gov

        *Attorney for Plaintiff State of Mississippi*

FOR PLAINTIFF STATE OF MISSOURI:

ANDREW BAILEY
Attorney General

*/s/ Michael Schwalbert*
Michael.Schwalbert@ago.mo.gov
Missouri Attorney General's
Office
815 Olive St.
Suite 200
St. Louis, MO 63101
Tel: 314-340-7888

*Attorneys for Plaintiff State of Missouri*

FOR PLAINTIFF STATE OF MONTANA:

AUSTIN KNUDSEN
Montana Attorney General


*/s/ Anna Schneider*
Anna Schneider
Montana Attorney General's Office
P.O. Box 200151
Helena, MT 59620-0151
Phone: (406) 444-4500
Fax: (406) 442-1894 Anna.Schneider@mt.gov


*/s/ Charles J. Cooper*
Charles J. Cooper
ccooper@cooperkirk.com
David H. Thompson
dthompson@cooperkirk.com
Brian W. Barnes
bbarnes@cooperkirk.com
Harold S. Reeves
hreeves@cooperkirk.com
COOPER & KIRK PLLC
1523 New Hampshire Avenue, NW
Washington DC 20036
Phone: (202) 220-9620
Fax: (202) 220-9601

*Attorneys for Plaintiff State of Montana*

FOR PLAINTIFF STATE OF NEVADA:

AARON D. FORD
Attorney General
ERNEST D. FIGUEROA
Consumer Advocate


*/s/ Michelle C. Badorine*
Michelle C. Badorine, Senior Deputy
Attorney General
MNewman@ag.nv.gov
Lucas J. Tucker (NV Bar No. 10252)
Senior Deputy Attorney General
LTucker@ag.nv.gov
Office of the Nevada Attorney General
100 N. Carson St.
Carson City, Nevada 89701
Tel: (775) 684-1100

*Attorneys for Plaintiff State of Nevada*

FOR PLAINTIFF STATE OF NORTH DAKOTA:

**STATE OF NORTH DAKOTA**
Drew H. Wrigley
Attorney General

By:      */s/ Elin S. Alm*
         Elin S. Alm, ND ID 05924
         Assistant Attorneys General
         Consumer Protection & Antitrust Division
         Office of Attorney General of North Dakota
         1720 Burlington Drive, Suite C, Bismarck, ND 58503-7736
         (701) 328-5570
         (701) 328-5568 (fax)
         ealm@nd.gov

         *Attorneys for Plaintiff State of North Dakota*

FOR PLAINTIFF COMMONWEALTH OF PUERTO RICO:

*/s/ Domingo Emanuelli-Hernández*
Domingo Emanuelli-
Hernández Attorney General
Thaizza Rodríguez Pagán
Assistant Attorney
General PR Bar No.
17177
P.O. Box 9020192
San Juan, Puerto Rico 00902-0192
Tel: (787) 721-2900, ext. 1201, 1204
trodriguez@justicia.pr.gov

Kyle G. Bates
HAUSFELD LLP
600 Montgomery Street, Suite 3200
San Francisco, CA 94111

*Attorneys for Plaintiff Commonwealth of Puerto Rico*

FOR PLAINTIFF STATE OF SOUTH CAROLINA:

ALAN WILSON
Attorney General


/s/ *Rebecca M. Hartner*
Rebecca M. Hartner (S.C. Bar No. 101302)
Assistant Attorney General
Rebecca M. Hartner
W. Jeffrey Young
Chief Deputy Attorney General
C. Havird Jones, Jr.
Senior Assistant Deputy Attorney General
Mary Frances Joers
Assistant Deputy Attorney General
South Carolina Attorney General's Office
P.O. Box 11549
Columbia, South Carolina 29211-1549
Phone: 803-734-5855
Email: rhartner@scag.gov

Charlie Condon
Charlie Condon Law Firm, LLC
880 Johnnie Dodds Blvd, Suite 1
Mount Pleasant, SC 29464
Phone: 843-884-8146
Email: charlie@charliecondon.com

James R. Dugan, II (*pro hac vice*)
The Dugan Law Firm
365 Canal Street
One Canal Place, Suite 1000
New Orleans, LA 70130
Phone: (504) 648-0180
Email: jdugan@dugan-lawfirm.com


*Attorneys for Plaintiff State of South Carolina*

FOR PLAINTIFF STATE OF SOUTH DAKOTA:

MARTY JACKLEY
Attorney General


*/s/ Jonathan Van Patten*
Jonathan Van Patten
Assistant Attorney General
Office of the Attorney General
1302 E. Highway 14, Suite 1
Pierre, SD 57501
Tel: 605-773-3215
jonathan.vanpatten@state.sd.us

*Attorney for Plaintiff State of South Dakota*

FOR PLAINTIFF STATE OF UTAH:

Sean D. Reyes
Utah Attorney General

*/s/ Marie W.L. Martin*
Marie W.L. Martin
Assistant Attorney General
160 East 300 South, 5th Floor
P.O. Box 140874
Salt Lake City, UT 84114-0872
mwmartin@agutah.gov
Telephone: (801) 538-9600

*Attorneys for Plaintiff State of Utah and as counsel for the Utah Division of Consumer Protection*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on March 7, 2024, this document was filed electronically in compliance with Local Rule CV-5(a) and served on all counsel who have consented to electronic service, per Local Rule CV-5(a)(3)(A).

<i>/s/ W. Mark Lanier</i>
W. Mark Lanier