IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| THE STATE OF TEXAS, et al.,<br><br>      Plaintiffs,<br><br>v.<br><br>GOOGLE LLC,<br><br>      Defendant. | Civil Action No. 4:20-cv-00957-SDJ |

**PLAINTIFFS STATES' MOTION TO LIFT STAY OF DISCOVERY RELATING TO THE NETWORK BIDDING AGREEMENT**

**INTRODUCTION**

Plaintiffs State of Texas, State of Alaska, State of Arkansas, State of Florida, State of Idaho, State of Indiana, Commonwealth of Kentucky, State of Louisiana, State of Mississippi, State of Missouri, State of Montana, State of Nevada, State of North Dakota, Commonwealth of Puerto Rico, State of South Carolina, State of South Dakota, and State of Utah (collectively, "State Plaintiffs"), respectfully move to lift the discovery stay restricting State Plaintiffs from engaging in any discovery relating to the Network Bidding Agreement ("NBA") between Google LLC ("Google") and Facebook (a subsidiary of Meta Platforms, Inc.). Under the Federal Rules of Civil Procedure and the Local Rules, Plaintiff States "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense[,]" from nonparties to the suit. Fed. R. Civ. P. 26(b)(1); 34(a)(1); E.D. Tex. Local Rule CV-26(d). District courts are given broad discretion to control discovery into relevant information and documents, including the lifting of discovery stays. *See Est. of Brown v. Ogletree*, No. CV H-11-1491, 2011 WL 13318529, at *1 (S.D. Tex. Dec. 15, 2011) ("The control of discovery is committed to the sound discretion of the trial court and its discovery rulings will be reversed only where they are arbitrary or clearly unreasonable.") (internal citation omitted).

As discussed below, the NBA is relevant to State Plaintiffs' claims in at least two ways: First, the NBA is relevant to claims that Google collaborated and agreed with Facebook to suppress the adoption of Header Bidding, in violation of each State Plaintiff's respective Deceptive Trade Practices Act ("DTPA") statutes and in a manner that constitutes anti-competitive behavior. MDL Dkt. 541 (Fourth Amended Complaint, or "FAC") at Counts I, II, and VI. Second, issues related to the NBA are highly relevant to State Plaintiffs' claims regarding Google's deceptive and misleading misrepresentations that auction participants were on "equal footing," while making a deal with Facebook to provide secret "information" and numerous other advantages to Facebook in exchange for Facebook's abandonment of Header Bidding. *See* FAC at Count VI.

2

## PROCEDURAL BACKGROUND

While State Plaintiffs filed their initial complaint in the Eastern District of Texas ("EDTX"), the Judicial Panel on Multidistrict Litigation ("JPML") transferred this action to the Southern District of New York ("SDNY") for coordinated and pretrial proceedings with the multi-district litigation brought by separate classes and groups of plaintiffs. *See In re Google Dig. Advert. Antitrust Litig.*, No. 1:21-md-3010 (S.D.N.Y.) ("MDL"), Dkt. 1. On September 13, 2022, Judge Castel in SDNY issued an order on Google's motion to dismiss directed only at the State Plaintiffs' antitrust claims, in which he ruled that State Plaintiffs had not plausibly alleged a violation of Section 1 of the Sherman Act regarding the NBA (while refusing to dismiss the State Plaintiffs' other well-pleaded antitrust claims and allegations). MDL Dkt. 308 at 20-26; *In re Google Digital Advertising Antitrust Litig.*, 627 F. Supp. 3d 346 (S.D.N.Y. 2022). In light of his ruling, in Pre-Trial Order No. 5 ("PTO No. 5") Judge Castel stayed all discovery relating to the NBA pending further Order. MDL Dkt. 394 at ¶ 3.

On October 4, 2023, the Second Circuit denied Google's challenge to the JPML's ruling to remand State Plaintiffs' case back to the EDTX. This case then returned soon after to the EDTX. The parties raised the NBA stay issue in the context of the proposed coordination order in February 2024. At that time, the Court directed the State Plaintiffs to seek discovery on the NBA through motion practice requesting a lift of Judge Castel's stay – which is why this motion has been filed. Transcript of February 15, 2024 Hearing, p.23, lines 22-25 ("I will say that with regard to non-party Meta in this case, if the States are going to want to do discovery, I do think ou're going to need to do a motion. Just to be clear, I think you'll need to do a motion."). This is that motion.

# ARGUMENT

I. **State Plaintiffs' DTPA and Sherman Act Section 2 Claims Have Not Been Dismissed, and Should Be Evaluated in Determining the Relevance of Discovery on the NBA and as to Facebook.**

   a. **Judge Castel's Order Did Not Dismiss State Plaintiffs' Claim That The NBA Violated Relevant State DTPA Statutes.**

In his Order on Google's Motion to Dismiss, Judge Castel did not dismiss State Plaintiffs' claims that the NBA violated applicable state law DTPA statutes. Notably, State Plaintiffs alleged in the FAC that Google deceptively and misleadingly led auction participants and the public at large to believe that it was running "a fair and transparent market for everyone," FAC ¶ 379, while simultaneously tipping the scales in favor of Facebook. *See id.* at Count VI. For instance, State Plaintiffs allege that (a) "Google promised Facebook a number of special advantages in publishers' and developers' auctions" (FAC ¶ 427); (b) the agreement "provided Facebook with a speed advantage," in part by doubling timeouts for Facebook, which State Plaintiffs allege "were presumably designed to aid FAN in winning more auctions" (FAC ¶ 429); (c) the agreement provided Facebook with more information than other auction participants, including by "informing Facebook which impressions are likely targeted to spam"—information Google refused to provide to other networks (FAC ¶ 429); (d) the agreement improved match rates because the parties agreed to "match rate commitments" (FAC ¶ 432); and (e) the agreement advantaged Facebook by restricting Google's access to certain Facebook bid data, "a stark departure from Google's usual practices of spying and trading based on other bidders' past behavior." FAC ¶ 434; *see also id*. ¶¶ 586-597 (alleging violations of deceptive trade practices statutes by "misrepresenting that all auction participants are on equal footing," in part because "Google gives Facebook several special, secret advantages in publishers'

4

auctions," including "information and speed advantages" designed to "aid FAN in winning more auctions.").

Judge Castel did not rule on State Plaintiffs' DTPA claims. In fact, his ruling does not even mention State Plaintiffs' Count VI (Supplemental State Law Deceptive Trade Practices Claims), instead focusing on the State Plaintiffs' antitrust allegations. Additionally, Judge Castel's Order Regarding State Plaintiffs' State Law Claims is silent as to State Plaintiffs' allegations of violations of DTPA statutes. *See* MDL Dkt. 493. Thus, State Plaintiffs' DTPA claims are not and should not be affected by Judge Castel's orders.

### b. Judge Castel's Order On Google's Motion To Dismiss *Did Not* Dismiss State Plaintiffs' Claim That The NBA Violated Section 2 Of The Sherman Act.

Further, Judge Castel's order did not dismiss State Plaintiffs' allegations that the NBA violated Section 2 of the Sherman Act, which prohibits a single person or entity from monopolizing or attempting to monopolize trade. Judge Castel ruled that Count IV "does not plausibly allege[] Google's [NBA] with Facebook amounts to an unlawful restraint of trade in violation of section 1," which prohibits conspiracies or collusion among more than one party in restraint of trade. MDL Dkt. 308 (emphasis added); *In re Google Digital Advertising Antitrust Litig.*, 627 F. Supp. 346 (S.D.N.Y. 2022). Judge Castel devotes several pages to explaining how the NBA does not plausibly allege collusion between Google and Facebook to thwart header bidding, and many more on the conduct allegations pertaining to the claims of monopolization and attempted monopolization. *Id.* at 24-26, 40-78. Yet, Judge Castel was silent as to State Plaintiffs' allegations that the NBA was simply another tool of Google's to divert spend away from and curtail usage of header bidding, thus reinforcing its monopolies or attempting to gain monopolies in the markets for ad servers and ad exchanges. MDL Dkt. 308; *see also* FAC at Count I, II.

Additionally, Judge Castel's Order Regarding State Plaintiffs' State Law Claims further highlights that allegations relating to the NBA were dismissed only as to Section 1, and ***not*** as to

5

Section 2. MDL Dkt. 493; FAC at Counts I, II. Judge Castel ordered that, to the extent that any State Plaintiff alleges a parallel state law antitrust claim in the complaint based on allegations that the NBA constitutes an "illegal contract, combination or conspiracy, such claim is hereby dismissed." MDL Dkt. 493. This language closely mirrors that of Section 1 of the Sherman Act. 15 U.S.C. § 1. The Order Regarding State Plaintiffs' State Law Claims does not purport to limit the relevance of the NBA and State Plaintiffs' Section 2 and related state-law allegations of monopolization and attempted monopolization. MDL Dkt. 493.

## II. The Facebook NBA Is Relevant To State Plaintiffs' DTPA, Monopolization, And Attempted Monopolization Claims.

State Plaintiffs are entitled to seek the production of documents within the broad scope of Rule 26(b) and Local Rule CV-26(d) from nonparties to the action. Fed. R. Civ. P. 34(a)(1); EDTX Local Rule CV-26(d). Further, State Plaintiffs "may obtain discovery regarding any nonprivileged matter that is relevant to a party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). Courts may consider several factors when determining proportionality, including "the parties' relative access to relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id*.

Here, State Plaintiffs allege that Google sought to protect its ad server monopoly by curtailing usage of and investment in header bidding, which Google saw as a threat to that monopoly. *See e.g.,* FAC ¶¶ 415-416, 418, 426. One way Google planned to do so was through inducing large market participants—including Facebook—to stop participating in header bidding, an initiative codenamed "Jedi Blue." *Id.* at 418, 425. Previously, Facebook planned to allow its Facebook Audience Network to submit bids into header bidding, which would have allowed publishers and advertisers to bypass Google's ad server monopoly and its ad exchange's high fees. *Id.* at 414. Internal Google documents state that Google feared being "disintermediate[d]" from transactions and "los[ing its] must-call

6

status." *Id.* Thus, Google was willing to "collaborate [with Facebook] when necessary to maintain the status quo." *Id.* at ¶ 420. This collaboration ultimately resulted in the signing of the NBA. *Id.* at ¶ 424.

The NBA, a result of Jedi Blue, contained terms such as a minimum spend requirement on Facebook, designed to ensure Facebook would not allow bidding via header bidding, in an attempt to starve the technology from a valuable source of demand. *See e.g.*, *id.* at 426. In exchange for its commitment, Facebook received from Google certain advantages over competitors within publishers' auctions. *Id.* at ¶ 427. For example, Google informed Facebook which impressions were likely targeted to spam and Facebook did not have to pay for those impressions. *Id.* at ¶ 431. Even though other networks asked Google for this same information, Google only gave it to Facebook. *Id.* The NBA is thus relevant to State Plaintiffs' claims that Google deceptively and misleadingly led auction participants and the public at large to believe that it was running "a fair and transparent market for everyone" (*id.* at ¶ 379) while simultaneously tipping the scales in favor of strategic partners, like Facebook. *See id.* at Count VI. The NBA is also relevant to State Plaintiffs' claims that Google monopolized or attempted to monopolize the markets for ad servers and exchanges by curtailing the growth of and investment in header bidding by Facebook. *Id.* at Counts I, II. For example, Google's anticompetitive conduct altered Facebook's market incentives making it more valuable for Facebook to forego participating in header bidding auctions and bid through Google's Open Bidding product instead.

Discovery into the NBA and the resulting partnership between Google and Facebook is necessary to fully develop these claims. Specifically, Plaintiff States intend to seek discovery on, *inter alia*, the speed or technical advantages Facebook received from Google over other bidders, the information Facebook received that other bidders requested and were denied, the differences between Google's access to information about Facebook's bids and those of other participants, and the other secret or non-transparent advantages Facebook obtained through the NBA. The State Plaintiffs are

7

entitled to this information under Fed. R. Civ. P. 26(b)(1) and 34(a)(1), as well as Local Rule CV-26, because it is "reasonably calculated to lead to the discovery of admissible evidence" regarding State Plaintiffs' claims. *Performance Pulsation Control, Inc. v. Sigma Drilling Techs., LLC*, No. 4-17-cv-00450, 2019 WL 277620, at *1 (E.D. Tex. Jan. 22, 2019) (citing *Crosby v. La. Health & Indem. Co.*, 647 F.3d 258, 262 (5th Cir. 2011)).

### III.     Discovery Regarding The NBA Is Authorized And Necessary.

When weighing the proportionality of State Plaintiffs' request to seek discovery relating to the NBA, Google certainly has access to relevant information that the State Plaintiffs do not, given its role as a contracting party to the NBA. As a result, Google has greater access to relevant information relating to the NBA at the outset. Additionally, Google has withheld production of documents relating to the NBA in its productions to the MDL and State Plaintiffs, despite its relevance to State Plaintiffs' allegations. Furthermore, there is likely relevant information about the NBA that even Google is not privy to or does not possess and is only in the custody and control of Meta, a nonparty in this action. As such, under the federal and local rules, including Rule 34(a)(1) which entitles parties like the State Plaintiffs to request and discover relevant documents, the State Plaintiffs should be permitted to seek discovery from Meta related to the NBA. Discovery on the NBA is important because it would help resolve several issues surrounding Google's claim that it runs a fair and impartial ad auction and the impact that Google's anticompetitive conduct had on the markets for ad servers and ad exchanges.

### CONCLUSION

Accordingly, Plaintiff States respectfully request that the Court lift the stay of discovery, and reopen discovery, on the NBA and Google and Meta's conduct related to the same as relevant to the claims and defenses in this case, pursuant to the federal and local rules.

DATED: March 8, 2024

*/s/ W. Mark Lanier*
W. Mark Lanier
Alex J. Brown
Zeke DeRose III
**THE LANIER LAW FIRM, P.C.**
10940 W. Sam Houston Pkwy N.
Suite 100
Houston, TX 77064
Telephone: (713) 659-5200
Facsimile: (713) 659-2204
Email: mark.lanier@lanierlawfirm.com
Email: alex.brown@lanierlawfirm.com
Email: zeke.derose@lanierlawfirm.com

Respectfully submitted,

*/s/ Ashley Keller*
Ashley Keller (*pro hac vice*)
**KELLER POSTMAN LLC**
150 N. Riverside Plaza
Suite 4100
Chicago, IL 60606
Telephone: (312) 741-5220
Facsimile: (312) 971-3502
Email: ack@kellerpostman.com

Zina Bash (Bar No. 24067505)
111 Congress Avenue
Suite 500
Austin, TX 78701
Email: zina.bash@kellerpostman.com

Noah S. Heinz (*pro hac vice*)
1101 Connecticut Ave., N.W.
11th Floor
Washington, DC 20036
Email: noah.heinz@kellerpostman.com

*Counsel for Texas, Idaho, Indiana, Louisiana (The Lanier Law Firm Only), Mississippi, North Dakota, South Carolina, and South Dakota.*

*Submitted on behalf of all Plaintiff States*

**NORTON ROSE FULBRIGHT US LLP**
Joseph M. Graham, Jr.
joseph.graham@nortonrosefulbright.com
Geraldine Young
geraldine.young@nortonrosefulbright.com
1301 McKinney, Suite 5100
Houston, Texas 77010
(713) 651-5151

Marc B. Collier
Marc.Collier@nortonrosefulbright.com
98 San Jacinto Blvd., Suite 1100
Austin, Texas 78701
(512) 474-5201

FOR PLAINTIFF STATE OF TEXAS:

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

JAMES LLOYD
Deputy Attorney General for Civil Litigation

*/s/ Trevor E. D. Young*
Trevor E. D. Young
Deputy Chief, Antitrust Division
Trevor.Young@oag.texas.gov

**OFFICE OF THE ATTORNEY GENERAL OF TEXAS**
P.O. Box 12548
Austin, TX 78711-2548
(512) 936-1674

*Attorneys for Plaintiff State of Texas*

10

**CERTIFICATE OF SERVICE**

I certify that on March 8, 2024, this document was filed electronically in compliance with Local Rule CV-5(a) and served on all counsel who have consented to electronic service, per Local Rule CV-5(a)(3)(A).

                                                         */s/ Geraldine Young*
                                                        Geraldine Young

**CERTIFICATION OF CONFERENCE**

I certify that counsel has complied with the meet and confer requirement in Local Rule CV-7(h) and that the parties remain opposed on the issues outlined in the foregoing submission, leaving disputes for the Court to resolve. The personal conferences required by Local Rule CV-7(h) have been conducted or were attempted on March 6, 2024 via e-mail and then on March 8, 2024 during a meet and confer call between counsel of record for both sides.

                                                        */s/ Zeke DeRose*
                                                        Zeke DeRose