IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| THE STATE OF TEXAS, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>GOOGLE LLC,<br><br>    Defendant. | Civil Action No. 4:20-cv-00957-SDJ |

**STATE PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION TO LIFT STAY RELATED TO THE NETWORK BIDDING AGREEMENT**

Google's Opposition to State Plaintiffs' Motion to Lift Stay Relating to the Network Bidding Agreement is without merit. Notably, Google's response:

(1) *concedes* that State Plaintiffs have a live DTPA claim that relates to the Network Bidding Agreement ("NBA") (*see* Opp., Dkt. 301, at 2, 6);

(2) *ignores* the broad definition of "relevance" in Local Rule CV-26(d) by arguing discovery is somehow limited to only the "four corners" of the NBA (*id.* at 7).

(3) inappropriately argues that State Plaintiffs are not entitled to highly relevant discovery because they have not specifically identified the *precise* information and materials that are in *the sole possession of Google* (*id.* at 8); and

(4) attempts to *unilaterally extend* a dismissal of specific claims based on Section 1 of the Sherman Act to also cover independent Section 2 and state law claims (*id.* at 5).

Google's arguments must fail. State Plaintiffs are entitled to discovery into "***any nonprivileged matter*** that is ***relevant to a party's claim*** or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1) (emphasis added). By conceding throughout its Opposition that the NBA is relevant to (at least) State Plaintiffs' DTPA claims, Google openly acknowledges the relevance of NBA-related discovery to State Plaintiffs' live claims. Mischaracterizing State Plaintiffs' arguments at a hearing on Google's motion to dismiss antitrust claims does nothing to shield Google from concededly relevant DTPA discovery. Also without merit is Google's spurious contention that State Plaintiffs are not entitled to discovery related to the NBA because they have not described with specificity the information they hope to obtain. Indeed, State Plaintiffs *have* specifically described the types of information they seek—including documents and communications related to the speed and technological advantages Facebook received from Google, information that Facebook received that other bidders did not, and other non-transparent advantages Facebook obtained through the NBA—as well as the relevance of those materials to State Plaintiffs' live claims. *See, e.g.*, Mot., Dkt. 288 at pp. 6–8. Regardless, the nature of the discovery process is obtaining information a party *does not know*, and the law places the burden of specificity on the party *resisting* discovery, not the party

1

*requesting* it. *See McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990) (party resisting discovery "must show specifically how each interrogatory is not relevant or how each question is overly broad, burdensome, or oppressive"). And finally, Google is simply incorrect that Judge Castel's dismissal of State Plaintiffs' antitrust claims stretch any further than Section 1 of the Sherman Act.

Under this Court's local rules and the Federal Rules of Civil Procedure, State Plaintiffs are entitled to discovery related to the NBA, and State Plaintiffs' Motion should be granted.

## ARGUMENT

### I. Google Openly Concedes that the NBA is Relevant to State Plaintiffs' DTPA Claims

State Plaintiffs are entitled to *any* relevant discovery, and in particular, the highly relevant discovery they seek here. Fed. R. Civ. P. 26(b)(1); EDTX Local Rule 26(d); *see also Crosby v. La. Health Serv. & Indem. Co.*, 647 F.3d 258, 262 (5th Cir. 2011) ("Generally the scope of discovery is broad and permits the discovery of any nonprivileged matter that is relevant to any party's claim or defense.") (internal citations omitted). State Plaintiffs allege—and Google repeatedly concedes—that the NBA is relevant to State Plaintiffs' live DTPA claims. *See e.g.,* Opp., Dkt. 301, at 2, 4, 6. For example, State Plaintiffs believe that "[d]iscovery into the NBA and resulting partnership between Google and Facebook (as Meta was known at the time) is necessary to fully develop" their claims related to Google's "deceptive[] and misleading[]" statements to "auction participants and the public at large" that it was "running a fair and transparent market for everyone." *See* Mot., Dkt. 288 at pp. 4, 7–8. State Plaintiffs allege further that Google was offering secret, substantial favors to Facebook in return for Facebook reducing its use of Header Bidding. *See id*. Discovery into the negotiation, execution, and operation of the NBA, as well as the resulting partnership between Google and Facebook, will shed light on Google's unfair and false representations that ***all*** auction participants

2

were on "equal footing" while Facebook benefitted from a lucrative side deal that afforded it special bidding advantages.

A district court has "broad discretion in all discovery matters." *Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 855 (5th Cir. 2000) (internal citation omitted).[1] The Court should exercise its discretion to lift the stay so the State Plaintiffs can obtain this highly relevant, proportional discovery.

## II.     State Plaintiffs are Entitled to Full Discovery Related to the NBA.

Unable to win under the rules, Google resorts to distorting the record. It falsely claims that State Plaintiffs "have conceded that their claims are based on the [NBA] itself" and should therefore need no information other than the four corners of the agreement. *See* Opp., Dkt. 301, at 7. The 2022 motion-to-dismiss hearing was expressly limited to claims sounding in federal antitrust law. State Plaintiffs' argument about the four corners of the NBA was obviously limited to that context. Specifically, to plausibly plead a "contract" or "combination" in restraint of trade under Section 1 of the Sherman Act, 15 U.S.C. § 1, State Plaintiffs argued that they could rely "mostly on the four corners of the written document." Hr'g Tr., Aug. 31, 2022, at 28:10-13. They did not need to separately plead the illegal features of that contract or combination that the conspiring parties "agreed to in the C-Suite." *Id.* at 23:3-8. Indeed, as the State Plaintiffs repeatedly argued, only the most brazen scofflaws write down the flagrantly illegal features of their forbidden contracts. *Id.* at 22:9-23:15. That is why Mr. Keller noted that considering only the "four corners of the agreement" would essentially reward Google for being "smart enough not to write down their illegal behavior . . ." *Id*. at 23:9-15. Far from conceding that State Plaintiffs did not require additional discovery, Mr. Keller's point was just the

---

[1] Google's interpretation of *Ogletree* is also misplaced. *See Est. of Brown v. Ogletree*, No. CV H-11-1491, 2011 WL 13318529, at *3 (S.D. Tex. Dec. 15, 2011); Opp., Dkt. 301, at pp. 2–3. To the extent Google relies on the Southern District decision of *Ogletree* to suggest that a lift of a stay is not appropriate where a motion to dismiss is pending, such an argument is foreclosed by this Court's local rules. *See* EDTX Local Rule CV-26 ("[A] party is not excused from responding to discovery because there are pending motions to dismiss, to remand, or to change venue.").

opposite: the NBA itself supplied plausible evidence of an illicit "contract" or "conspiracy," and further discovery was necessary to verify the unwritten, illegal, secretly-agreed-upon terms of that agreement.

Regardless, State Plaintiffs have shown that materials relevant to their DTPA claims, which were not at issue at the 2022 hearing, lie outside the "four corners" of the NBA. These materials include documents and communications related to the negotiation of the agreement, how Google and Facebook intended the agreement to operate, how the agreement affected the veracity of Google's claims that it ran a fair and impartial ad auction, and the impact the agreement had on the markets for ad servers and ad exchanges. The law places the burden on the party *resisting* discovery to show that such discovery is not relevant or is otherwise objectionable. *See Hall v. Rent-A-Center, Inc.*, No. 4:16-cv-978, 2018 WL 4293141, at *5 (E.D. Tex. Aug. 31, 2018) ("[T]he party resisting discovery bears the burden of showing the discovery fails the proportionality test" and arguments that this burden lies with the party requesting discovery amount to "improperly shift[ing] the burden."). Google has not met this burden.

### III. Google's Arguments that State Plaintiffs Must Predict the Information Sought in Discovery, and that "Further Discovery" on the NBA is "Not Necessary" are Flawed

Google's contentions that State Plaintiffs are not entitled to the discovery sought because they fail to "describe what . . . relevant information" it is they hope to obtain, and that such discovery is "untethered to any cognizable need," are also patently false. *See* Opp., Dkt. 301, at 8. Not only do State Plaintiffs specifically identify numerous categories of highly relevant materials they seek, they also demonstrate how such materials are relevant to their claims. For example, State Plaintiffs seek documents and communications evincing that Google suppressed the adoption of Header Bidding in a manner that constitutes anti-competitive behavior. *See, e.g.*, Mot., Dkt. 288 at p. 2 (citing MDL Dkt. 541 (Fourth Amended Complaint or "FAC") at Counts I, II); *see also id*. at p. 4 (citing State Plaintiffs'

4

allegations regarding special advantages Google promised to Facebook, including speed advantages designed to help Facebook win more auctions, information regarding which impressions were likely targeted to spam, and special restrictions on Google's access to Facebook's information, as well as how match rates were affected by the NBA's "match rate commitments"). Also highly relevant to State Plaintiffs' DTPA and live anti-competition claims are the documents and communications they seek regarding Google's deceptive and misleading misrepresentations that auction participants were on "equal footing," while making a deal with Facebook to provide secret information and other advantages to Facebook. Mot., Dkt. 288, at p. 2 (citing FAC at Count VI); *id*. at p. 5 (allegations that the NBA was another Google tool to kill Header Bidding, thus reinforcing monopolies or attempts to gain monopolies); *id*. at pp. 6–7 (specifically showing how NBA-related materials are relevant to State Plaintiffs' DTPA, monopolization, and attempted monopolization claims). In other words, Google's desperate attempt to show that State Plaintiffs somehow failed to identify the materials they seek and/or how such materials are relevant to their claims is simply wrong.

Also without merit is Google's contention that State Plaintiffs are not entitled to highly relevant discovery because State Plaintiffs already have *some* scattershot documents related to the partnership between Google and Facebook. *See* Opp., Dkt. 301, at 7. Google is not entitled to dictate what discovery is "adequate" or what documents are relevant to State Plaintiffs' claims, nor can Google escape its discovery obligations because "some" relevant documents have been produced. "Further, a party may not choose to produce 'selective' or 'representative' documents in responding to a properly tailored request under the Federal Rules of Civil Procedure Rule 26; rather, it must produce all such relevant documents." *Franklin D. Azar & Assocs., P.C. v. Bryant*, No. 4:17-CV-00418, 2018 WL 11443607, at *2 (E.D. Tex. Sept. 17, 2018).

5

## IV. State Plaintiffs' Antitrust Claims are Valid, Live, and Relevant to the NBA.

Similarly without merit is Google's contention that all of State Plaintiffs' antitrust claims relating to the NBA have been dismissed or "deemed" dismissed. *See* Opp., Dkt. 301 at p. 2. Had Judge Castel intended to dismiss all such claims, he would have done so. Nor should this Court be persuaded by the inaccuracies and half-truths that permeate Google's related arguments. For example, Google incorrectly claims that "the NBA was only relevant to Plaintiffs' Section 2 claims insofar as the NBA could be considered an 'unlawful agreement.'" Opp., Dkt. 301, at 4. Nothing could be further from the truth. Indeed, State Plaintiffs allege that Google used the NBA as a tool to divert spend away from and curtail usage of Header Bidding in violation of Section 2 of the Sherman Act. *See, e.g.*, FAC ¶ 600(e), 605(e)). State Plaintiffs' contention has nothing to do with whether the NBA was an "unlawful agreement" in restraint of trade.

Google also spuriously claims that Judge Castel's order dismissed State Plaintiffs' Section 2 claims, despite the fact that the Judge ***explicitly*** limited his ruling to claims that the NBA "amounts to an unlawful restraint of trade *in violation of section 1*," see Opp., Dkt. 301, at 5; MDL Dkt. 308 (emphasis added); *In re Google Digital Advertising Antitrust Litig.*, 627 F. Supp. 346 (S.D.N.Y. 2022), and was completely silent on the Section 2 claims. The NBA is relevant to State Plaintiffs' Section 2 claims because it is an embodiment of Google's strategy to kill Header Bidding—that is, to induce Facebook and other market participants to end their support for the new technology. This relevance does not rely on collusion or on a finding that the NBA was an "unlawful agreement," and is therefore wholly independent of the claims dismissed by Judge Castel.

Finally, Google cobbles together an argument that the NBA has no relevance to any live antitrust claims because a recent ruling by Judge Castel held that "[n]o plaintiff ha[d] plausibly stated a claim for relief premised upon on the ***terms*** of the NBA." *See* Opp., Dkt. 301, at 5; MDL Dkt. No. 701 at 3 (emphasis added). This ruling is irrelevant to State Plaintiffs' Section 2 claims that are not

based strictly on the *terms* of the NBA, but rather on the surreptitious negotiation and operation of a tool that Google used specifically to kill Header Bidding in order to reinforce its monopolies or attempt to gain monopolies in the markets for ad servers and ad exchanges.

State Plaintiffs' Section 2 monopolization and anticompetitive claims remain live and valid, and the State Plaintiffs' are entitled to discovery relevant to their claims.[2]

## CONCLUSION

For the reasons described herein, State Plaintiffs request that the Court grant its motion, and reopen discovery on the NBA and Google and Facebook/Meta's conduct related to same as relevant to the claims and defenses in this case

---

[2] To be clear, the Court does not even need to find at this stage that the NBA is relevant to State Plaintiffs' antitrust claims, or determine whether those claims are live (although both of those statements are true). As discussed above (*see supra*, Sec. II), Google has conceded that the NBA is relevant to State Plaintiffs' DTPA claims, so lifting the stay of discovery related to the NBA is appropriate.

| | |
|---|---|
| DATED: March 19, 2024 | Respectfully submitted, |
| */s/ W. Mark Lanier* | */s/ Ashley Keller* |
| W. Mark Lanier<br>Alex J. Brown<br>Zeke DeRose III<br>Jonathan P. Wilkerson<br>**THE LANIER LAW FIRM, P.C.**<br>10940 W. Sam Houston Pkwy N.<br>Suite 100<br>Houston, TX 77064<br>Telephone: (713) 659-5200<br>Facsimile: (713) 659-2204<br>Email: mark.lanier@lanierlawfirm.com<br>Email: alex.brown@lanierlawfirm.com<br>Email: zeke.derose@lanierlawfirm.com<br>Email: Jonathan.wilkerson@lanierlawfirm.com | Ashley Keller (*pro hac vice*)<br>**KELLER POSTMAN LLC**<br>150 N. Riverside Plaza<br>Suite 4100<br>Chicago, IL 60606<br>Telephone: (312) 741-5220<br>Facsimile: (312) 971-3502<br>Email: ack@kellerpostman.com<br><br>Zina Bash (Bar No. 24067505)<br>111 Congress Avenue<br>Suite 500<br>Austin, TX 78701<br>Email: zina.bash@kellerpostman.com<br><br>Noah S. Heinz (*pro hac vice*)<br>1101 Connecticut Ave., N.W.<br>11th Floor<br>Washington, DC 20036<br>Email: noah.heinz@kellerpostman.com |

*Counsel for Texas, Idaho, Indiana, Louisiana (The Lanier Law Firm Only), Mississippi, North Dakota, South Carolina, and South Dakota.*

**NORTON ROSE FULBRIGHT US LLP**
Joseph M. Graham, Jr.
joseph.graham@nortonrosefulbright.com
Geraldine Young
geraldine.young@nortonrosefulbright.com
1301 McKinney, Suite 5100
Houston, Texas 77010
(713) 651-5151

Marc B. Collier
Marc.Collier@nortonrosefulbright.com
98 San Jacinto Blvd., Suite 1100
Austin, Texas 78701
(512) 474-5201

FOR PLAINTIFF STATE OF TEXAS:

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

JAMES LLOYD
Deputy Attorney General for Civil Litigation

*/s/ Trevor E. D. Young*
Trevor E. D. Young
Deputy Chief, Antitrust Division
Trevor.Young@oag.texas.gov

**OFFICE OF THE ATTORNEY GENERAL OF TEXAS**
P.O. Box 12548
Austin, TX 78711-2548
(512) 936-1674

*Attorneys for Plaintiff State of Texas*

9

**CERTIFICATE OF SERVICE**

I certify that on March 19, 2024, this document was filed electronically in compliance with Local Rule CV-5(a) and served on all counsel who have consented to electronic service, per Local Rule CV-5(a)(3)(A).

*/s/ Geraldine Young*
Geraldine Young

10