IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| THE STATE OF TEXAS, et al., <br><br> Plaintiffs, <br><br> v. <br><br> GOOGLE LLC, <br><br> Defendant. | Civil Action No. 4:20-cv-00957-SDJ |

**_CORRECTED_ STATE PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION TO LIFT STAY RELATED TO THE NETWORK BIDDING AGREEMENT**

Google's Opposition to the State Plaintiffs' ("the States'") Motion to Lift Stay Relating to the Network Bidding Agreement is without merit. Notably, Google's response:

(1) *concedes* that the States have a live DTPA claim that relates to the Network Bidding Agreement ("NBA") (*see* Dkt. 301 at 2, 6);

(2) *ignores* the broad definition of "relevance" in Local Rule CV-26(d) by arguing discovery is somehow limited to only the "four corners" of the NBA (*id.* at 7).

(3) inappropriately argues that the States are not entitled to discovery because they have not specifically identified the *precise* information that is in *the sole possession of Google* (*id.* at 8); and

(4) attempts to *unilaterally extend* a dismissal of specific claims based on Section 1 of the Sherman Act to also cover independent Section 2 and state law claims (*id.* at 5).

Google's arguments must fail. The States are entitled to discovery into "***any nonprivileged matter*** that is ***relevant to a party's claim*** or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1) (emphasis added). By conceding throughout its Opposition that the NBA is relevant to (at least) State Plaintiffs' DTPA claims, Google openly acknowledges the relevance of NBA-related discovery to the States' live claims. Mischaracterizing the States' arguments on Google's motion to dismiss antitrust claims does nothing to shield Google from concededly relevant DTPA discovery. Further, Google incorrectly contends that the States are not entitled to this discovery because they have not described with specificity the information they hope to obtain. Indeed, the States *have* specifically described the types of information sought—including information related to the advantages Facebook received from Google, and information Facebook received that other bidders did not—as well as the relevance of those materials to the States' live claims. *See, e.g.*, Mot., Dkt. 288 at pp. 6–8. Regardless, the nature of the discovery process is obtaining information a party *does not know*, and the law places the burden of specificity on the party *resisting* discovery, not the party *requesting* it. *See McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990) (party resisting discovery "must show specifically . . . how each question is overly broad, burdensome, or oppressive"). And finally, Google is simply incorrect that Judge Castel's dismissal of the States' antitrust claims stretch any further than Section 1 of the Sherman Act.

1

Under this Court's local rules and the Federal Rules of Civil Procedure, the States are entitled to discovery related to the NBA, and the States' Motion should be granted.

## ARGUMENT

### I. Google Openly Concedes that the NBA is Relevant to the States' DTPA Claims

State Plaintiffs are entitled to *any* relevant discovery, and in particular, the highly relevant discovery they seek here. Fed. R. Civ. P. 26(b)(1); EDTX Local Rule 26(d). The States allege—and Google repeatedly concedes—that the NBA is relevant to the States' live DTPA claims. *See e.g.,* Dkt. 301 at 2, 4, 6 (discussing "relevant" DTPA claim). For example, the States believe that "[d]iscovery into the NBA and resulting partnership between Google and Facebook is necessary to fully develop" their claims related to Google's "deceptive[] and misleading[]" statements to "auction participants and the public at large" that it was "running a fair and transparent market for everyone." *See* Mot., Dkt. 288 at pp. 4, 7–8. The States allege further that Google was offering secret, substantial favors to Facebook in return for Facebook reducing its use of Header Bidding. *See id*. Discovery into the NBA, and the resulting partnership between Google and Facebook, will shed light on these conflicting ideas.

### II. State Plaintiffs are Entitled to Full Discovery Related to the NBA.

Unable to win under the rules, Google resorts to distorting the record. It falsely claims that the States "have conceded that their claims are based on the [NBA] itself" and should therefore need no information other than the four corners of the agreement. *See* Dkt. 301 at 7. The 2022 motion-to-dismiss hearing was expressly limited to claims sounding in federal antitrust law. The States' argument about the four corners of the NBA was obviously limited to that context. Specifically, to plausibly plead a "contract" or "combination" in restraint of trade under Section 1 of the Sherman Act, 15 U.S.C. § 1, the States argued that they could rely "mostly on the four corners of the written document." Hr'g Tr., Aug. 31, 2022, at 28:10-13. They did not need to separately plead the illegal features of that contract or combination that the conspiring parties "agreed to in the C-Suite." *Id.* at 23:3-8. Indeed,

2

as the States repeatedly argued, only the most brazen scofflaws write down the flagrantly illegal features of their forbidden contracts. *Id.* at 22:9-23:15. That is why Mr. Keller noted that considering only the "four corners of the agreement" would essentially reward Google for being "smart enough not to write down their illegal behavior . . ." *Id*. at 23:9-15. Far from conceding that the States did not require additional discovery, Mr. Keller's point was just the opposite: the NBA itself supplied plausible evidence of an illicit "contract" or "conspiracy," and further discovery was necessary to verify the unwritten, illegal, secretly-agreed-upon terms of that agreement.

Regardless, the States have shown that materials relevant to their DTPA claims, which were not at issue at the 2022 hearing, lie outside the "four corners" of the NBA. These materials include documents and communications related to the negotiation of the agreement, how Google and Facebook intended the agreement to operate, how the agreement affected the veracity of Google's claims that it ran a fair and impartial ad auction, and the impact the agreement had on the markets for ad servers and ad exchanges. "[T]he party resisting discovery bears the burden of showing the discovery fails the proportionality test" and arguments that this burden lies with the party requesting discovery amount to "improperly shift[ing] the burden." *Hall v. Rent-A-Center, Inc.*, 2018 WL 4293141, at *5 (E.D. Tex. Aug. 31, 2018) ). Google has not met this burden.

III. **Google's Arguments that the States Must Predict the Information Sought in Discovery, and that "Further Discovery" on the NBA is "Not Necessary" are Flawed**

Google's contentions that the States are not entitled to the discovery sought because they fail to "describe what . . . relevant information" it is they hope to obtain, and that such discovery is "untethered to any cognizable need," are also patently false. *See* Dkt. 301 at 8. Not only do the States specifically identify numerous categories of highly relevant materials they seek, they also demonstrate how such materials are relevant to their claims. For example, the States seek documents and communications evincing that Google suppressed the adoption of Header Bidding in a manner that constitutes anti-competitive behavior. *See, e.g.*, Mot., Dkt. 288 at p. 2 (citing FAC at Counts I,

3

II); *see also id*. at p. 4 (citing the States' allegations regarding special advantages Google promised to Facebook). Also highly relevant to the States' DTPA and live anti-competition claims are the documents and communications they seek regarding Google's deceptive and misleading misrepresentations that auction participants were on "equal footing," while making a deal to provide secret information and other advantages to Facebook. Mot., Dkt. 288, at p. 2 (citing FAC at Count VI); *id*. at p. 5 (allegations that the NBA was another Google tool to kill Header Bidding, thus reinforcing monopolies); *id*. at pp. 6–7 (specifically showing how NBA-related materials are relevant to the States' claims). In other words, Google's attempt to show that the States somehow failed to identify the materials they seek and/or how such materials are relevant to their claims is simply wrong.

Also without merit is Google's contention that the States are not entitled to highly relevant discovery because the States already have *some* scattershot documents related to the Google-Facebook partnership. Dkt. 301 at 7. Google is not entitled to dictate what discovery is "adequate" or what documents are relevant to the States' claims. "[A] party may not choose to produce 'selective' or 'representative' documents in responding to a properly tailored request . . . rather, it must produce all such relevant documents." *Franklin D. Azar & Assocs., P.C. v. Bryant*, 2018 WL 11443607, at *2 (E.D. Tex. Sept. 17, 2018).

IV.  **State Plaintiffs' Antitrust Claims are Valid, Live, and Relevant to the NBA.**

Similarly without merit is Google's contention that the States' antitrust claims relating to the NBA have been dismissed. *See* Dkt. 301 at 2. Had Judge Castel intended to dismiss all such claims, he would have done so. Nor should this Court be persuaded by the inaccuracies and half-truths that permeate Google's related arguments. For example, Google incorrectly claims that "the NBA was only relevant to Plaintiffs' Section 2 claims insofar as the NBA could be considered an 'unlawful agreement.'" Dkt. 301 at 4. Nothing could be further from the truth. The States allege that Google used the NBA as a tool to divert spend away from and curtail usage of Header Bidding in violation of

4

Section 2 of the Sherman Act. *See* FAC ¶ 600(e), 605(e)). The States' contention has nothing to do with whether the NBA was an "unlawful agreement" in restraint of trade.

Google also spuriously claims that Judge Castel's order dismissed the States' Section 2 claims, despite the fact that the Judge ***explicitly*** limited his ruling to claims that the NBA "amounts to an unlawful restraint of trade *in violation of section 1*," see Dkt. 301 at 5; MDL Dkt. 308 (emphasis added); *In re Google Digital Advertising Antitrust Litig.*, 627 F. Supp. 346 (S.D.N.Y. 2022), and was completely silent on the Section 2 claims. The NBA is relevant to the States' Section 2 claims because it is an embodiment of Google's strategy to induce Facebook and other market participants to end their support for Header Bidding. This relevance does not rely on a finding of collusion or that the NBA was an "unlawful agreement," and is thus independent of the claims dismissed by Judge Castel.

Finally, Google argues that the NBA has no relevance to any live antitrust claims because Judge Castel held that "[n]o plaintiff ha[d] plausibly stated a claim for relief premised upon on the ***terms*** of the NBA." *See* Dkt. 301 at 5; MDL Dkt. No. 701 at 3 (emphasis added). This ruling is irrelevant to the States' Section 2 claims that are not based strictly on the *terms* of the NBA, but rather on the surreptitious negotiation and operation of a tool that Google used specifically to kill Header Bidding. State Plaintiffs' Section 2 monopolization and anticompetitive claims remain live and valid, and the States are entitled to discovery relevant to their claims.[1]

## **CONCLUSION**

For the reasons described herein, State Plaintiffs request that the Court grant its motion, and reopen discovery on the NBA and Google and Facebook/Meta's conduct related to same as relevant to the claims and defenses in this case

---

[1] To be clear, the Court does not even need to find at this stage that the NBA is relevant to State Plaintiffs' antitrust claims, or determine whether those claims are live (although both of those statements are true). As discussed above (*see supra*, Sec. II), Google has conceded that the NBA is relevant to State Plaintiffs' DTPA claims, so lifting the stay of discovery related to the NBA is appropriate.

DATED: March 19, 2024

/s/ *W. Mark Lanier*
W. Mark Lanier
Alex J. Brown
Zeke DeRose III
Jonathan P. Wilkerson
**THE LANIER LAW FIRM, P.C.**
10940 W. Sam Houston Pkwy N.
Suite 100
Houston, TX 77064
Telephone: (713) 659-5200
Facsimile: (713) 659-2204
Email: mark.lanier@lanierlawfirm.com
Email: alex.brown@lanierlawfirm.com
Email: zeke.derose@lanierlawfirm.com
Email: Jonathan.wilkerson@lanierlawfirm.com

Respectfully submitted,

/s/ *Ashley Keller*
Ashley Keller (*pro hac vice*)
**KELLER POSTMAN LLC**
150 N. Riverside Plaza
Suite 4100
Chicago, IL 60606
Telephone: (312) 741-5220
Facsimile: (312) 971-3502
Email: ack@kellerpostman.com

Zina Bash (Bar No. 24067505)
111 Congress Avenue
Suite 500
Austin, TX 78701
Email: zina.bash@kellerpostman.com

Noah S. Heinz (*pro hac vice*)
1101 Connecticut Ave., N.W.
11th Floor
Washington, DC 20036
Email: noah.heinz@kellerpostman.com

*Counsel for Texas, Idaho, Indiana, Louisiana (The Lanier Law Firm Only), Mississippi, North Dakota, South Carolina, and South Dakota.*

**NORTON ROSE FULBRIGHT US LLP**
Joseph M. Graham, Jr.
joseph.graham@nortonrosefulbright.com
Geraldine Young
geraldine.young@nortonrosefulbright.com
1301 McKinney, Suite 5100
Houston, Texas 77010
(713) 651-5151

Marc B. Collier
Marc.Collier@nortonrosefulbright.com
98 San Jacinto Blvd., Suite 1100
Austin, Texas 78701
(512) 474-5201

FOR PLAINTIFF STATE OF TEXAS:

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

JAMES LLOYD
Deputy Attorney General for Civil Litigation

*/s/ Trevor E. D. Young*
Trevor E. D. Young
Deputy Chief, Antitrust Division
Trevor.Young@oag.texas.gov


**OFFICE OF THE ATTORNEY GENERAL OF TEXAS**
P.O. Box 12548
Austin, TX 78711-2548
(512) 936-1674

*Attorneys for Plaintiff State of Texas*

**CERTIFICATE OF SERVICE**

    I certify that on March 19, 2024, this document was filed electronically in compliance with Local Rule CV-5(a) and served on all counsel who have consented to electronic service, per Local Rule CV-5(a)(3)(A).

*/s/ Geraldine Young*
Geraldine Young
