***FILED UNDER SEAL***

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| The State of Texas, et al., | |
| Plaintiffs, | Case No. 4:20-cv-00957-SDJ |
| v. | Hon. Sean D. Jordan |
| Google LLC, | Special Master: David T. Moran |
| Defendants. | |

**PLAINTIFF STATES' OPENING BRIEF TO THE SPECIAL MASTER
FOR THE MARCH 21, 2024 HEARING**

## TABLE OF CONTENTS

Page

INTRODUCTION .................................................................................................................. 1

PENDING DISCOVERY DISPUTES ................................................................................... 1

    I.      The Special Master's Order on Dashboards ........................................................ 1

    II.     The States 30(b)(6) Notice ................................................................................. 5

    III.    The States' Requests on Source Code ............................................................... 6

    IV.    The States' Requests on Project Bell ................................................................. 9

CONCLUSION ..................................................................................................................... 10

***FILED UNDER SEAL***

Pursuant to the Special Master's Order (ECF No. 227), Plaintiff States ("States") submit this opening brief on pending discovery disputes for the March 21, 2024 Special Master conference.

## INTRODUCTION

The States' brief addresses 3 issues:

1. The Special Master's ordered deposition of Mr. ▮▮▮▮ on Dashboards;
2. The States' request for 30(b)(6) depositions, and
3. The States' request for additional source code.

The States believe each of these topics is ripe for resolution by the Special Master at the March 21 Special Master conference.

## PENDING DISCOVERY DISPUTES

### I.  The Special Master's Order on Dashboards

The States seek enforcement of the Special Master's order on Dashboards. Following the February 22, 2024 hearing, the Special Master found "that dashboards containing high-level key performance metrics for Google's Display Ads products at issue in this action—for example, dashboards showing the real-time financial performance of Google's Display Ads business—are likely to be highly relevant." Dkt. 265 (Feb. 25, 2024) at 5. The Special Master did not limit such dashboards to those that were only available company-wide, nor did he exclude dashboards that might only be used by a particular team or group of teams..[1] Consistent with Judge Jordan's earlier instructions,[2] the Special Master then ordered Google to "produce a suitable records custodian or

---

[1] Indeed, given that certain accused conducts (such as Bernanke) were a closely guarded secret even within Google, it is a virtual certainty that such dashboards would not be made widely available. And Google documents note that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. 12 at 3.

[2] "And those kinds of depositions -- this is a general matter, particularly in complex litigation -- can be extremely helpful, they can be extremely useful in moving things forward." Feb. 15, 2024 Status

**\*FILED UNDER SEAL\***

<u>Rule 30(b)(6) witness</u> <u>with personal knowledge</u> of Google's dashboards for Display Ads for a deposition." *Id.* (emphasis added).

Google has not done so. Despite waiting until the last available day, Google failed to provide a witness knowledgeable about dashboards. The deponent that Google produced – Mr. ▮▮▮▮ – admitted that there were potentially millions of dashboards, Ex. 1 at 15-16, but that in preparation for this deposition, he had investigated only five, and was aware of the partial names of only two of those. *Id.* at 17:6-15. Mr. ▮▮▮▮ reviewed a grand total of five documents, *id.* at 16:24-25, and talked to only two people out of the hundreds in the Ad Manager group and ▮ in the reporting group, both in the presence of counsel. *Id.* at 5:19-25, 16:14-18, 51:11-13. Despite the "Lumina" dashboard being the subject of previous briefing and a Google document stating that it is the "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮," Ex. 11 at 5, Mr. ▮▮▮▮ did no investigation of that dashboard, did not communicate with the member of his team who created and maintained it in preparation for his deposition, *id.* at 51:18-52:6, did not know when it purportedly stopped being maintained, *id.* at 52:16-18, and undertook no investigation as to whether it was replaced or there was an alternative. *Id.* at 52:19-53:1. Other than the five dashboards he "investigated" (but could not provide full names for), Mr. ▮▮▮▮ was unable to name a single "dashboard that is currently being used at Google," nor a single actively maintained dashboard. *Id.* at 9:23-10:2, 30:9-11. While Mr. ▮▮▮▮ was allegedly aware of and viewed certain financial dashboards, he was not able to provide the full name of a single one. *Id.* at 14:22-15:15; 36:20-37:4.

Despite being the corporate representative to testify regarding "Google's dashboards for Display Ads," Mr. ▮▮▮▮ was unfamiliar with Google's "▮▮▮▮▮▮▮▮" dashboard, *id.*

---

Conference Tr. at 24

***FILED UNDER SEAL***

at 32:2-11, was unfamiliar with any of the "▮▮▮▮▮▮▮▮" dashboards or the document listing them, *id.* at 28:6-16, was unfamiliar with Google's "▮▮▮▮▮▮▮▮▮" url, *id.* at 14:3-16, and at times claimed to be uncertain as to the meaning of the term "display advertising." *Id.* at 7:22-23, 8:16-20 (asking for clarification). Mr. ▮▮▮▮ admitted that he conducted no investigation into dashboards for any of the conducts relevant to this case, including UPR, RPO, Bernanke, DRS, Poirot, Elmo, Header-Bidding, Open Bidding, Awbid, Jedi, or Yavin. *Id.* at 58:4-67:25. Mr. ▮▮▮▮ was even unaware of the number or most of the names of the teams in the Ad Manager group. *Id.* at 72:18-73:16. Mr. ▮▮▮▮ was unable to provide the name of a single dashboard that a member of the Ad Manager sales team would use. *Id.* at 25:1-4. Mr. ▮▮▮▮ was unaware of the existence of the gTrade team (which was responsible for developing DRS and Bernanke), let alone the dashboards used by that team, and was only vaguely familiar with a handful of the over one hundred dashboard names presented to him and was unable to provide information on any of them. *Id.* at 19:1-27:18 (discussing in part Ex. 13), 68:19-72:6, 80:13-83:15 (discussing Ex. 7).

The persons designated for 30(b)(6) depositions "must testify about information known or reasonably available to the organization." Fed. R. Civ. P. 30(b)(6) (emphasis added). "The duty to present and prepare a Rule 30(b)(6) designee goes beyond matters personally known to that designee or to matters in which that designee was personally involved. The deponent must prepare the designee to the extent matters are reasonably available, whether from documents, past employees, or other sources." *Brazos River Auth. v. GE Ionics, Inc.*, 469 F.3d 416, 433 (5th Cir. 2006). In explaining the duties of a corporation responding to a Rule 30(b)(6) deposition notice, the Fifth Circuit has held that:

> [w]hen a corporation or association designates a person to testify on its behalf, the corporation appears vicariously through that agent. If that agent is not

3

> knowledgeable about relevant facts, and the principal has failed to designate an available, knowledgeable, and readily identifiable witness, then the appearance is, for all practical purposes, no appearance at all.

*Resolution Trust Corp. v. S. Union Co.*, 985 F.2d 196, 197 (5th Cir. 1993).

Google has previously been sanctioned for failing to prepare witnesses. In *Function Media*, Judge Everingham found that Google's 30(b)(6) witness "was unprepared and answered, 'I don't know,' to many questions concerning the circumstances surrounding . . . topics contained in [the plaintiff's] Rule 30(b)(6) notice. *Function Media, L.L.C.*, 2010 U.S. Dist. 3275, at *6 (E.D. Tex. Jan. 15, 2010). There, as here, "Google failed to comply with its obligation to educate a witness on the noticed 30(b)(6) topic . . . ." *Id.* at *11. The court further held that "[r]equiring [plaintiff] to take multiple depositions to learn the facts underlying the execution of the license agreements would unnecessarily increase the cost of litigation and reward Google for its failure to comply with the rules." *Id.* (precluding Google from relying on information the witness was not prepared to discuss).

Here, Google's failure to prepare a witness on the Special Master's topic has delayed relevant and necessary discovery and has resulted in needless expense for both parties. Despite his lack of knowledge regarding relevant display advertising dashboards, Mr. ▇▇▇'s testimony further highlighted their necessity to this case. While Mr. ▇▇▇ expressed a preference, as an engineer, for querying underlying data instead of using a dashboard, Ex. 1 at 9:13-15, he testified that it would take tens of shipping containers loaded with hard drives to house the underlying data that these dashboards can display. *Id.* at 87:3-15. Even putting aside Google's refusal to produce all of the underlying data, it would be the definition of burdensome to require the States to load and develop tools to parse this data, given that teams at Google have developed dashboards to make sense of such data (and, indeed, tools to create such dashboards, *id.* at 12:12-13), and that

***FILED UNDER SEAL***

Google could make available such tools connected to its data sources in a secure clean room. *Id.* at 11:24-12:13.

In light of Google's failure to comply with the Special Master's Order,³ the States seek all possible remedies, including: (1) Google producing live another witness or witnesses, at Google's expense, at an evidentiary hearing to take place on or after March 29 in the presence of the Special Master, wherein the witness will be subject to questioning from counsel for the States and the Special Master; (2) such witness to bring to that hearing a laptop with access to Google's network and ability to access all display advertising dashboards;⁴ (3) Google to produce to the States and the Special Master 72 hours before the evidentiary hearing: (a) all documents found at the links referenced in Ex. 2; (b) screenshots of the five dashboards that Mr. ▮▮▮▮ reviewed in preparation for his deposition; (c) any other dashboards that Google's counsel upon reasonable investigation may think reasonably necessary for the Special Master to have an understanding of what potential dashboards can be run upon request given the issues sought to be determined by the States; (4) fees and expenses for all activities related to the deposition of Mr. ▮▮▮▮; and, as appropriate (5) an order precluding Google from offering any expert or fact witness opinion informed by any previously unproduced Dashboards or their underlying data or information.

## II.  The States 30(b)(6) Notice

On February 21, 2024 and consistent with Judge Jordan's dicta at the February 15, 2024 hearing, the States promulgated 107 30(b)(6) deposition topics, including 20 for custodian

---

³ Immediately following Mr. ▮▮▮▮'s deposition, the States emailed Google regarding its failure to provide a prepared witness, and seeking to meet and confer by noon the next day. Ex. 9. Rather than meet as requested, Google served a letter hours before the deadline to submit this brief and refused to meet and confer until the day <u>after</u> the deadline to brief the Special Master. *Id.* at 3.

⁴ Mr. ▮▮▮▮ testified that if he had his "corporate laptop and I was VPN'd in this room with internet connection and . . . I had permissions to view the dashboard than [sic], yes, I would be able to access [the dashboards]." Ex. 1 at 86:8-16.

depositions. Ex. 3; Hearing Tr. (Feb. 15, 2024) at 24:14-25:16. Nearly 3 weeks have passed, Google has engaged in one meet and confer limited to the 20 custodian topics, no objections have been served, no witnesses have been offered, and no dates have been set. The States therefore seek the Special Master's assistance in promptly scheduling 30(b)(6) depositions.

### III. The States' Requests on Source Code

The States request the Special Master order Google to produce source code, including (1) code for missing implementations of Project Bernanke, (2) the files in the "███████████" folder, (3) the files in the "████████" folder, (4) the Bernanke SSTable experiment files that are used as inputs to the program, and (5) software to view those files. *See* Ex. 10.

The Parties have been "negotiating" additional source code production for several months. The States detailed numerous gaps, including (1) missing implementations of Bernanke code, including the initial implementation; (2) the code for Project Bell; (3) many missing files and directories referenced by, and necessary to fully understand, the source code that Google has made available for inspection ; and (4) missing files that are used as inputs to Bernanke, as well as the Cassandra software to view those files and files of the same type (SStable files) already on the source code computer. Ex. 4 at 4-5. The Parties met and conferred on February 6 regarding these issues, but Google was unprepared to discuss source code, represented that the code would likely not be an issue, and that if any of the requested code was not produced, the parties would be at impasse. Ex. 5 at 1, Dkt. 235 at 12-13. Google then represented that "the approvals process for making additional code available was progressing quickly," but provided no objections or additional information. Ex. 5 at 1. In light of the Parties' previous agreement to declare impasse, the States notified the Special Master of the situation, agreements, and ongoing discussions. Dkt. 235 at 12-13.

6

On February 16, a month after Plaintiff's initial letter, Google responded. Ex. 5. However, its proposal failed to provide the States with necessary discovery, further delaying the States investigation of relevant code. As an initial matter, because the States do not know the exact date when Bernanke first launched, the States requested a code snapshot containing the "initial Bernanke implementation." Ex. 4 at 4. Google, not the States, knows the date of that launch and the corresponding code snapshot. But Google did not offer to make that snapshot available, and instead required the States to pick a date for a snapshot. But having to guess as to which date may correspond to the launch of Bernanke is precisely the scenario the States sought to avoid by requesting the initial implementation. Ex. 5 at 2. Google also agreed to produce some – but not all – of the folders the States identified as missing, stated with no evidence and no citation that it had "in good faith" determined that the Project Bell code was on the source code computer, and refused to produce the files that are used as inputs to Bernanke. *Id.* at 2-3. These inputs are relevant because they form the basis for Bernanke's operation; they necessarily inform Bernanke how to operate.

Rather than immediately run to the Special Master, the States took Google at its word. The States waited for the additional source code production to determine whether it sufficiently resolved at least those issues and to confirm that Project Bell was missing – but no production was made. On March 5, 2024, Google stated that it would make even more code available "to address the majority of Plaintiffs' requests from pages 4-5 of their January 16, 2024 letter." Ex. 6 at 1. Yet at the same time, Google admitted that they had not even begun to collect the already promised code, and would not do so unless the Parties agreed on a date for an additional code snapshot. *Id.* at 2.

The same day, in the interests of resolving the disputes, the States agreed to accept the offered December 2013 code snapshot if Google would stipulate none of the unproduced

7

implementations (which Google will not identify) contain any differences material to the claims at issue in this case, but again requested that Google produce facially relevant code that was missing from the files, the Project Bell code (or provide an identification of where such code resides on the source code computer), the files used as inputs to Bernanke, and the Cassandra software to view both the requested Bernanke input files and other, already produced, files of the same type (SStable files). Ex. 7 at 4. Google refused to produce the additional code, refused to identify the location of the Project Bell code on the grounds that it "has no obligations to assist Plaintiffs' experts with their analysis," and refused to produce the relevant Bernanke files or software to view such files despite having already made some SStable files available for inspection on the source code computer. Ex. 8 at 2. Google then suggested that a December 1, 2023 code snapshot "if Plaintiffs' goal is to capture Bernanke implementation," but did not represent that this code corresponded to the initial implementation of Bernanke or was not materially different from the initial implementation of Bernanke. *Id.*

Far from acting in good faith to produce relevant materials, as it is obligated to do under the Federal Rules of Civil Procedure, Local Rule CV-26(d), and the Discovery Orders in this case, Google continues to withhold relevant source code that it has already agreed to produce. Further, in refusing to stipulate that it had produced all relevant code, Google admits that it is <u>withholding</u> relevant code. Ex. 9 at 2, 3. Aside from deliberately delaying its productions, Google admits that folders such as "████████" contain files that are not necessarily public, but it refuses to search for and produce them. *Id.* And as Mr. Yetter pointed out at the last hearing, Google was obligated to produce this code at the <u>start</u> of the litigation, not to withhold it until discovery nears completion.

***FILED UNDER SEAL*** 

The States therefore request that the Special Master order Google to produce all relevant code of which it is aware, including (1) any implementations of Bernanke that contain material differences from the produced versions; (2) the files in the "▊▊▊▊▊▊▊▊" folder, (3) the files in the "▊▊▊▊▊▊▊▊" folder, (4) the Bernanke SSTable experiment files that are used as inputs to Bernanke, and (5) software to view those files.

## IV. The States' Requests on Project Bell

The States request the Special Master's assistance in ordering Google to identify the code for Project Bell.

The States have been asking for the code to Project Bell since January 16, 2024. Ex. 4 at 4. Google refused to respond for a month before asserting, without evidence, that the Project Bell code is on the source code computer, but refuses to identify where, and the States' source code reviewer has been unable to locate the code for Project Bell during his 36 trips to review Google's alleged 80 gigabytes of production. Ex. 5 at 3; Ex. 8 at 2; Dkt. 246 at 15.

Courts in this District and others have held that it is reasonable for a plaintiff to request—and for a defendant to identify—portions within source code that pertain to key elements of a case, because the defendant is certain to have better knowledge of that code. *LaserDynamics, Inc. v. Asus Computer Int'l*, No. 2:06-cv-348, 2009 WL 153161 at *2 (E.D. Tex. Jan. 21, 2009) ("It is implausible for the defendants to contend that the plaintiff stands on equal footing when it comes to determining how the defendants' own products operate."); *see also Personal Audio, LLC v. Apple, Inc.*, No. 9:09-cv-111, 2010 WL 9499679 at *3 (E.D. Tex. June 1, 2010) (even with the same access to source code, the owner of the source code is in a better position to answer interrogatories); *Audatex North America Inc. v. Mitchell Intern.*, Inc., No. 13-cv-1523, 2014 WL 4961437 at *6–*7 (S.D. Cal. Oct. 3, 2014) ("Plaintiff will face a significant burden . . . to learn the functionality of Defendant's products and understand the structure of Defendant's source code . . . .

9

***FILED UNDER SEAL***

The Court finds that Defendant[ ] . . . better equipped to provide the requested information . . . . Defendant needs to [. . .] provid[e] the requested source code citations."). In *LaserDynamics*, this Court required the defendant to go further in describing its own source code than Plaintiffs are requesting here. More specifically, the defendant in that case had already provided pinpoint source code citations, and the Court required the defendant to also provide narrative descriptions of how the accused feature operated. Here, Plaintiffs request only the source code pinpoint citations—information which, again, Google claims to have already located and identified.

Google's own briefing supports this remedy. In its February 16 submission, Google highlighted the breadth of source code it has produced. Dkt. 246 at 15 ("Plaintiffs have had access to approximately 80 gigabytes of Google's source code").

Google cannot have it both ways. It alleges it has made substantial productions of 80 gigabytes of code, while also asserting that it alone knows where the relevant code is located. Google is best equipped to identify which amongst the 80 gigabytes of produced code pertain to Project Bell. Accordingly, Plaintiffs request that the Court order Google to identify portions of its source code related to Project Bell.

## CONCLUSION

The States will continue to confer with Google on all of the above-outlined issues and will provide an update to the Special Master in the upcoming Joint Status Report, on which issues are at impasse, in advance of the March 21 conference.

**\*FILED UNDER SEAL\***

Respectfully submitted,

| | |
|---|---|
| */s/ W. Mark Lanier* <br> W. Mark Lanier <br> Mark.Lanier@LanierLawFirm.com <br> Alex J. Brown <br> Alex.Brown@LanierLawFirm.com <br> Zeke DeRose III <br> Zeke.DeRose@LanierLawFirm.com <br> Jonathan P. Wilkerson <br> Jonathan.Wilkerson@LanierLawFirm.com <br> 10940 W. Sam Houston Pkwy N <br> Suite 100 <br> Houston, TX 77064 <br> (713) 659-5200 <br> **THE LANIER LAW FIRM, PLLC** | */s/ Ashley Keller* <br> Ashley Keller <br> ack@kellerpostman.com <br> 150 N. Riverside Plaza, Suite 4100 <br> Chicago, Illinois 60606 <br> (312) 741-5220 <br><br> Zina Bash <br> zina.bash@kellerpostman.com <br> 111 Congress Avenue, Suite 500 <br> Austin, TX 78701 <br> (512) 690-0990 <br><br> Noah S. Heinz <br> noah.heinz@kellerpostman.com <br> 1101 Connecticut, N.W., 11th Floor <br> Washington, DC 20005 <br> (202) 918-1123 <br> **KELLER POSTMAN LLC** |

*Counsel for Texas, Idaho, Louisiana (The Lanier Law Firm only), Mississippi, North Dakota, Indiana, South Carolina, and South Dakota*

*Submitted on behalf of all Plaintiff States*

**NORTON ROSE FULBRIGHT US LLP**
Joseph M. Graham, Jr.
joseph.graham@nortonrosefulbright.com
Geraldine Young
geraldine.young@nortonrosefulbright.com
1301 McKinney, Suite 5100
Houston, Texas 77010
(713) 651-5151

Marc B. Collier
Marc.Collier@nortonrosefulbright.com
98 San Jacinto Blvd., Suite 1100
Austin, Texas 78701
(512) 474-5201

***FILED UNDER SEAL***

FOR PLAINTIFF STATE OF TEXAS:

KEN PAXTON
Attorney General

*/s/ Trevor E. D. Young*

Brent Webster, First Assistant Attorney General of Texas
Brent.Webster@oag.texas.gov
James R. Lloyd, Deputy Attorney General for Civil Litigation
James.Lloyd@oag.texas.gov
Trevor Young, Deputy Chief, Antitrust Division
Trevor.Young@oag.texas.gov

**STATE OF TEXAS, OFFICE OF THE ATTORNEY GENERAL**
P.O. Box 12548
Austin, TX 78711-2548
(512) 936-1674

*Attorneys for Plaintiff State of Texas*

*FILED UNDER SEAL*

# CERTIFICATION OF CONFERENCE

I certify that counsel has complied with the meet and confer requirement in Local Rule CV-7(h) and that the parties remain opposed on the pending discovery disputes outlined in the foregoing submission. The personal conferences required by Local Rule CV-7(h) have been conducted or were attempted on the following dates in the following manner, with the names of the participants in the conferences.

| Date & Manner | Conferred Issues | Participants[5] |
|---|---|---|
| February 6, 2024<br><br>Teams video call | The States' request for source code | For the States: Geraldine Young and Peter Hillegas<br><br>For Google: Mollie Bracewell, Robert McCallum, and Paul Yetter |
| March 8, 2024 | The States' first 20 30(b)(6) topics. | For the States: Zeke DeRose and Peter Hillegas<br><br>For Google: Justina Sessions |

The States attempted to meet and confer with Google regarding the dashboard witness; however Google refused to meet and confer until the day <u>after</u> the deadline to brief the Special Master. The States will continue to attempt to meet and confer with Google and will promptly notify the Special Master upon completion.

The foregoing document further outlines explanations of why no final resolution has been reached yet, leaving potentially open issues for the Special Master and Court to resolve.

*/s/ Peter Hillegas*
Peter Hillegas

---

[5] The conferences included other attorneys for both sides. Included are those who conferred, and not all observers are listed here.

***FILED UNDER SEAL***

## **CERTIFICATE OF SERVICE**

I certify that, on March 12, 2024, this document was filed electronically in compliance with Local Rule CV-5(a) and served on all counsel who have consented to electronic service, per Local Rule CV-5(a)(3)(A).

*/s/ W. Mark Lanier*
W. Mark Lanier
