IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| THE STATE OF TEXAS, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>GOOGLE LLC,<br><br>    Defendant. | Civil Action No. 4:20-cv-00957-SDJ |

# EXHIBIT 9

**PLAINTIFF STATES' OPENING BRIEF TO THE SPECIAL MASTER
FOR THE MARCH 21, 2024 HEARING**

| | |
|---|---|
| **From:** | MCCALLUM, Robert <rob.mccallum@freshfields.com> |
| **Sent:** | Tuesday, March 12, 2024 2:30 PM |
| **To:** | Peter M. Hillegas; VACA, Lauren; Bryce Callahan; Paul Yetter; John Harkrider; Daniel Bitton; ELMER, Julie (JSE); MAHR, Eric (EJM); BAYOUMI, Jeanette; Bracewell, Mollie; Zorn, Matt; SESSIONS, Justina (JKS); SONG, Tinny |
| **Cc:** | NRFAdTech; Zeke DeRose III; Jonathan Wilkerson; Noah Heinz; zina.bash@kellerpostman.com; Trevor Young; Business Litigation Section |
| **Subject:** | RE: The State of Texas, et al v. Google LLC - Ordered Dashboard Deposition |
| **Attachments:** | 2024.03.12 Ltr. from R. McCallum re Dashboards 30(b)(6) Witness.pdf |

Counsel –

Please see attached.

Kind regards,
Rob

**From:** Peter M. Hillegas <peter.hillegas@nortonrosefulbright.com>
**Sent:** Monday, March 11, 2024 6:34 PM
**To:** MCCALLUM, Robert <rob.mccallum@freshfields.com>; VACA, Lauren <Lauren.Vaca@freshfields.com>; Bryce Callahan <bcallahan@yettercoleman.com>; Paul Yetter <pyetter@yettercoleman.com>; John Harkrider <jharkrider@axinn.com>; Daniel Bitton <dbitton@axinn.com>; ELMER, Julie (JSE) <Julie.Elmer@freshfields.com>; MAHR, Eric (EJM) <Eric.MAHR@freshfields.com>; BAYOUMI, Jeanette <Jeanette.Bayoumi@freshfields.com>; Bracewell, Mollie <mbracewell@yettercoleman.com>; Zorn, Matt <mzorn@yettercoleman.com>; SESSIONS, Justina (JKS) <Justina.Sessions@freshfields.com>; SONG, Tinny <Tinny.Song@freshfields.com>
**Cc:** NRFAdTech <NRFAdTech@nortonrosefulbright.com>; Zeke DeRose <Zeke.DeRose@LanierLawFirm.com>; Jonathan Wilkerson <Jonathan.Wilkerson@LanierLawFirm.com>; Noah Heinz <Noah.Heinz@kellerpostman.com>; zina.bash@kellerpostman.com; Trevor Young <Trevor.Young@oag.texas.gov>; Business Litigation Section <businesslitigationsection@LanierLawFirm.com>; Peter M. Hillegas <peter.hillegas@nortonrosefulbright.com>
**Subject:** The State of Texas, et al v. Google LLC - Ordered Dashboard Deposition

Counsel,

Special Master Moran ordered you to provide a "30(b)(6) witness with personal knowledge of Google's dashboards for Display Ads for deposition." ▓▓▓▓▓▓ was unprepared to discuss Google's Display Ads dashboards as a 30(b)(6) witness. He was unable to testify regarding any dashboard with particularity, and was unable to act as a records custodian with respect to Google's dashboards. ▓▓▓▓▓▓ lack of knowledge of Google's relevant dashboards further precludes the Special Master's ordered meet and confer "regarding the scope of the most highly relevant dynamic Display Ads dashboards to be made available and produced by Google in a secure code room."

The States will seek production of another witness, at Google's expense, to be deposed in front of the Special Master, as well as all fees and expenses related to ▓▓▓▓▓▓ deposition and any other remedies the Special Master deems appropriate. Such witness must be prepared to personally access any relevant dashboard during the deposition. To the extent Google opposes these remedies, the States are available to meet and confer tomorrow before noon.

Respectfully,

Peter

1

**Peter M. Hillegas** | Senior Associate
Norton Rose Fulbright US LLP
98 San Jacinto Boulevard, Suite 1100, Austin, Texas  78701-4255, United States
Tel +1 512 536 2402 | Fax +1 512 536 4598
peter.hillegas@nortonrosefulbright.com

# NORTON ROSE FULBRIGHT

*Law around the world*
nortonrosefulbright.com

**CONFIDENTIALITY NOTICE:** This email, including any attachments, is confidential and may be privileged. If you are not the intended recipient please notify the sender immediately, and please delete it; you should not copy it or use it for any purpose or disclose its contents to any other person. Norton Rose Fulbright entities reserve the right to monitor all email communications through their networks.

Norton Rose Fulbright Australia, Norton Rose Fulbright LLP, Norton Rose Fulbright Canada LLP, Norton Rose Fulbright South Africa Inc and Norton Rose Fulbright US LLP are separate legal entities and all of them are members of Norton Rose Fulbright Verein, a Swiss verein. Norton Rose Fulbright Verein helps coordinate the activities of the members but does not itself provide legal services to clients. Details of each entity, with certain regulatory information, are available at nortonrosefulbright.com.

This e-mail is confidential and may be legally privileged. If you have received it in error, you are on notice of its status. Please notify us immediately by reply e-mail and then delete this message from your system. Please do not copy it, use it for any purpose or disclose its contents to any other person; to do so could be a breach of confidentiality. Thank you for your cooperation. Please contact our IT Helpdesk at GlobalITServiceDesk@freshfields.com if you need assistance.

Freshfields Bruckhaus Deringer US LLP has offices in New York, Silicon Valley and Washington, DC. Freshfields Bruckhaus Deringer LLP is a limited liability partnership registered in England and Wales with registered number OC334789, and has offices or associated entities in Austria, Bahrain, Belgium, China, England, France, Germany, Hong Kong, Italy, Japan, the Netherlands, Singapore, Spain, the United Arab Emirates and Vietnam.

Any reference to a partner means a member, or a consultant or employee with equivalent standing and qualifications, of Freshfields Bruckhaus Deringer US LLP, Freshfields Bruckhaus Deringer LLP or any associated firms or entities.

For information about how Freshfields Bruckhaus Deringer processes personal data please refer to this Privacy notice.
For further information about Freshfields Bruckhaus Deringer, please refer to our website at www.freshfields.com.

# Freshfields Bruckhaus Deringer US LLP

**HIGHLY CONFIDENTIAL**

**Via Email**

Zeke DeRose III
The Lanier Law Firm, PC
Zeke.DeRose@lanierlawfirm.com

Joseph M. Graham, Jr.
Geraldine Young
Marc B. Collier
Norton Rose Fulbright US LLP
joseph.graham@nortonrosefulbright.com
geraldine.young@nortonrosefulbright.com
marc.collier@northrosefulbright.com

**New York**
3 World Trade Center
New York, NY 10007
T +1 212 284 4910
F +1 646 521 5710
E rob.mccallum@freshfields.com
www.freshfields.com

March 12, 2024

Re:   *State of Texas et al. v. Google LLC*, No. 4:20-cv-957-SDJ (E.D. Tex.)

Counsel:

We write regarding Plaintiffs' March 11, 2024 email concerning the 30(b)(6) testimony of ▅▅▅▅▅ on Google's Display Ads dashboards. As set forth below, your email reflects a pretextual effort to raise another issue with the Special Master without following the required meet and confer process.

As you know, Google suggested that yesterday's dashboard deposition—which the Special Master anticipated would be "relatively short"—be conducted remotely. Plaintiffs pressed for it to be held in person and then flew counsel from Chicago to New York to take the deposition, which lasted just over two hours on the record. At the deposition, Plaintiffs' counsel told Google's counsel that the deposition did not need to occur in person but that Texas insisted that he travel to New York from Chicago. Two hours after the deposition concluded, and without regard to the content of the testimony given, Plaintiffs emailed to say that they would be seeking another deposition before the Special Master, at Google's expense, and that Google should bear all of the needless "fees and expenses related to ▅▅▅▅▅ deposition" that Plaintiffs chose to incur. There is no basis for those demands or for additional deposition time.

Google produced a Staff Software Engineer—employed by Google for 11 years—to testify. As a member of the Reporting Unit of the Display Ads business, ▅▅▅▅▅ testified that he had personal knowledge of creating and using dashboards related to display ads, and that

Case 4:20-cv-00957-SDJ   Document 310-8   Filed 03/19/24   Page 5 of 6 PageID #:  8682

March 12, 2024
Page 2

he indeed had a "very good understanding" about those dashboards. Google prepared ▮▮ for his deposition in three separate meetings over the course of a week.

▮▮ directly addressed the subject of the Special Master' Order, which was intended to provide a foundation for the parties "to confer regarding the scope of the most highly relevant dynamic Display Ads dashboards to be made available and produced by Google in a secure source code room." ECF No. 265 at 6. ▮▮ testified that there are likely hundreds of thousands (if not millions) of dashboards at Google that could reflect aspects of Google's Display Ads business, as dashboards are frequently created by individual employees on an ad hoc basis; some of these have become popular at times within particular teams and sub-teams. ▮▮ confirmed there is no commonly accepted set of dashboards that are used across the whole of the Display Ads business and so the best way to determine which dashboards are used (or were used at a particular time) by any of the many teams and sub-teams with Display Ads is to ask those teams directly. ▮▮ then identified various particular teams and sub-teams within Display Ads that use dashboards and provided points of contact. ▮▮ also explained that dashboards are not a source of information separate from the underlying data.

The Special Master's Order specifically referenced the "Lumina" dashboard—and any "analogue or equivalent"—and stated that the "Special Master expects the parties' discussions to principally focus on such dashboard(s)." *Id*. at 6-7, n.4  Mr. ▮▮ confirmed that he had personally used Lumina as part of his work ▮▮. He identified examples of Lumina content in documents shown to him in Plaintiffs' Exhibit 6, and answered Plaintiffs' various Lumina-related questions. ▮▮ identified the Google employee responsible for creating Lumina, but added that he himself would have comparable knowledge of Lumina. ▮▮ confirmed that he was not aware of ▮▮, but he did point to certain dashboards that were commonly used by the ▮▮ (including identification of the ▮▮ dashboard and other ▮▮ dashboards). ▮▮ further identified the ▮▮ dashboard as a dashboard that provides various metrics relevant to Google's Display Ads business.

Plaintiffs did not focus their questions, as the Special Master directed, on seeking to identify any "analogue or equivalent" to Lumina. Rather, Plaintiffs cherry-picked a list of approximately 97 "go" links (most, but not all, of which included the word "dashboard") and asked if ▮▮ knew what they were. This list—prepared by Plaintiffs' counsel—was not provided to Google beforehand, nor would it have been reasonable to insist that Google prepare a witness to testify on nearly 100 different hyperlinks. Plaintiffs also asked ▮▮ whether he had undertaken his own investigation to identify dashboards relevant to the various patterns of conduct underlying the States' Fourth Amended Complaint.  And Plaintiffs showed ▮▮ a 32 page slide deck that he did not author or receive and asked "Are you aware of any errors in this document?" Rough Tr. at 38:24-25.

Finally, we note that Plaintiffs' examination entirely overlooked the extent to which dashboards can, in fact, "be  made available and produced by Google in a secure source code room." ECF No. 265 at 6.  It was only when Google questioned ▮▮ that it became clear it would not be feasible for Google to make dashboards available in the kind of "secure source code room" contemplated by the governing ESI Order.  That is because it is not possible

<div align="right">March 12, 2024<br>Page 3</div>

to view Google's dashboards without access to the broader Google network and proprietary architecture, and because it is not possible to view all dashboards without appropriate permission to access the underlying data sources that serve as the inputs to those dashboards. Though Plaintiffs failed to ask, ▮▮▮▮▮▮ also testified that if raw data existed outside of Google's systems—as it does here because Google has produced 200 terabytes of data in response to Plaintiffs' RFPs—that a dashboard to view slices of this data can be easily created with standard and widely-available tools. In other words, if Plaintiffs want to view a particular subset of the data Google has provided, they may do so.

We remain available to meet and confer on the timeline specified by the Special Master regarding an appropriate scope of production. We are available tomorrow between 10am and 2pm ET and on Thursday between 11am and 2pm ET.

Sincerely,

*/s/ Robert J. McCallum*

Robert J. McCallum