# EXHIBIT 1



**Via Email**

Zeke DeRose III
The Lanier Law Firm, PC
Zeke.DeRose@lanierlawfirm.com

Joseph M. Graham, Jr.
Geraldine Young
Marc B. Collier
Norton Rose Fulbright US LLP
joseph.graham@nortonrosefulbright.com
geraldine.young@nortonrosefulbright.com
marc.collier@northrosefulbright.com

New York
3 World Trade Center
175 Greenwich Street
New York, NY 10007
T +1 212 284 4910
F +1 646 521 5710
E rob.mccallum@freshfields.com
www.freshfields.com

March 20, 2024

Re:     *State of Texas et al. v. Google LLC*, No. 4:20-cv-957-SDJ (E.D. Tex.)

Counsel:

I write in connection with Plaintiffs' 30(b)(6) Notice to Google, which we have been struggling to make sense of and respond to.  To that end, this letter summarizes some of the many problems with the Notice, which make it literally impossible to satisfy, and proposes a reasonable and proportional compromise.  We look forward to having a productive meet and confer confined to proper topics that are reasonable in scope.

Plaintiffs' 30(b)(6) Notice is remarkably broad and phenomenally burdensome.

Topics overlap and potentially duplicate one another, making the Notice extremely difficult to parse.  For example, Topic 23 demands a witness to provide testimony "[f]or each Google Ad Tech Product and Ad Tech Auction Mechanic, the structure, architecture, function, operation, integration, and implementation and associated Documents, Source Code, dashboards, and data."  In addition to being exceedingly broad and requiring a witness to be prepared to testify about *any* document, source code, dashboard, and/or data "associated" with *any* Ad Tech Product, the topic also appears to encompass (and yet also be broader than) a litany of more specific topics on particular products and optimizations.  *See, e.g.*, Topics 98-103.  As another example, Topic 78 calls for testimony on "[t]he effects of each Ad Tech Auction Mechanic on AdX exchange floors, on bids from Google Ads, on Google's fees, revenue share, margins, and take-rates, and on second bids on non-competitive queries."  Parts of this language are repeated in (and therefore duplicative of) Topics 80 ("The effects of each Ad Tech Auction Mechanic on AdX exchange floors"); 82, 83, 84, and 85.

Several topics are irrelevant.  For example, Topic 35: "The location and address of all facilities owned or operated by You anywhere in the United States and the activities at each such location related to the Ad Tech Products or Ad Tech Auction Mechanics."  Others relate to claims that have been dismissed, for example Topic 36: "Your decision to deprecate third-party cookies in Chrome and/or Android, implement FLEDGE ('First Locally-Executed Decision over Groups Experiment'), the Privacy Sandbox, and/or Protected Audience API, and the consequences and effects thereof, including any analysis of the impact of such deprecation and implementation, including but not limited to the impact on Publisher revenues and the DSP market."

Many of the topics are obviously inappropriate as 30(b)(6) topics, and appear to instead be data or document requests or requests for Google to estimate or create counterfactual analyses.  For example, Topic 98(g): "the number of transactions and impressions transacted on and the number and identify of every Publisher transacting on AdX on a monthly basis from January 1, 2012 to the present in which the implementation or operation of DRS resulted in exchange fees for publisher inventory, or Your take rates, margins, or revenue shares, that were higher than they otherwise would have been had DRS not been implemented or in operation."  Topic 104(a): "the monthly share of impressions and revenue served by DFP or transacted through AdX, as well as the monthly share of impressions transacted by and revenue for any other Publisher Ad Server, Ad Exchange, or Ad Network or through Header Bidding."

Many other topics purport to improperly require Google to do Plaintiffs' fact investigation for them.  For example: Topic 101(b): "the number and identity of all Publishers whose exchange floors were affected, altered, changed, manipulated or overridden as a result of RPO from January 1, 2013 to the present" and Topic 101(c): "the number of transactions on AdX on a monthly basis from January 1, 2013 to the present, in which an Advertiser paid more for an ad/impression than they otherwise would have if RPO had not been operational or in effect."  Google has no obligation to do Plaintiffs' work for them or provide 30(b)(6) testimony on such requests.

Still other topics call for expert testimony and/or legal conclusions.  For example, Topic 77 demands that Google prepare a witness to testify regarding "Google's market share in the display advertising and ad server industry," a topic that obviously calls for both expert testimony and legal conclusions (additionally, this topic has five extremely detailed subparts that purport to require Google to generate data to respond to the request, *e.g.*, "volume of impressions, gross revenue transacted . . . broken down by region including North America and the United States as well as for all Plaintiff States.").

Yet more topics are so broad and demand such detail that it would be impossible to prepare a 30(b)(6) witness to testify on a single one of them within the remaining fact discovery period, let alone prepare witnesses to testify on the entirety of Plaintiffs' Notice.  For example, Topic 39: "All marketing, advertising, commercialization, public-facing statements, and promotion related to each of the Ad Tech Products and/or Ad Tech Auction Mechanics, including without limitation external presentations, internal presentations, customer documentation, sales brochures, promotional materials, trade show packets, sale forecasts, customer acquisition

March 20, 2024
Page 3

strategies, competitor analyses, Internet websites, Help Center updates, blog posts, articles, and social media postings, including any internal discussions regarding whether, to what extent, and with whom You should disclose or externally discuss such Ad Tech Products and/or Ad Tech Auction Mechanics."  It would be impossible to prepare a witness to speak to every single statement, "internal presentation," sales forecast, website, etc. relating to any Ad Tech Product or Auction Mechanic.  Similarly, Topic 47: "Google's internal discussions regarding each Ad Tech Auction Mechanic, including Google's understanding of the effects of the Ad Tech Auction Mechanic on Publishers, Advertisers, Google, and the broader 'ecosystem'; Your decision whether or not (and if so, when) to disclose the Ad Tech Auction Mechanic to Publishers, Advertisers, and third-parties, the extent of such disclosure, and Your reasoning or rationale regarding such decisions."  It would be impossible to prepare a witness to testify regarding every single "internal discussion" relating to each Ad Tech Mechanic, let alone also testify regarding an "understanding" of the "effects" of every Mechanic.  Also, Topic 56: "Whether You ran live experiments on auction participants, whether you notified the auction participants of these experiments and how they were notified, and if live experiments were run, the type, scope and description of the experiments run, the percentage of traffic or 'slices' on which they were run, and the identity of the participants on which they were run as well as Google's conclusions regarding the results of those experiments."  This topic purports to require Google to testify regarding every single experiment Google has *ever* run and to investigate and inventory a massive amount of information regarding every single experiment.

Other topics are so vague they are impossible to understand or begin to prepare a witness on.  For example, Topic 31: "The similarities and differences between Ad Tech Auction Mechanics (and any variants, predecessors, and successors thereof), as well as the interaction among Your Ad Tech Auction Mechanics and how programs or features of Your Ad Tech Auction Mechanics operated in conjunction with or relation to one another."  It is completely unclear how Google could begin to prepare a witness on unspecified "similarities" or "differences" between various Auction Mechanics (some of which  operated in connection with different products, at different times).  Nor is it readily apparent what Plaintiffs have in mind with respect to "interaction among" such mechanics.

These are but a few examples of the problems that infect the entirety of the Notice.

It is unreasonable to expect Google to parse and slog through the entirety of the Notice and provide a detailed response to each Topic, particularly on the timeline that Plaintiffs are demanding.  Moreover, the exercise would be unfair given the sheer breadth of the Notice.  Google should not be expected to, and cannot reasonably, prepare a witness on the entirety of the Notice (nor any substantial portion of the Notice) within any reasonable time frame.

Additionally, we note that many of the topics in Plaintiffs' Notice were already covered in 30(b)(6) testimony and/or written responses as part of the EDVA case to which you have access and/or we are willing to make available.  In particular:

- Financial topics:  Google provided a live witness and written responses on numerous financial and accounting topics, which should be sufficient.

- Long-range plans and forecasts for AdX, AdSense, AFC, DFP, GAM, GDN, and DV360 and successor and predecessor products and services from 2020 to the present.

- Use of results from Ariane and RASTA by Google's employees and executives.

- The definitions of fields and values in certain data sets produced by Google.

- The Header Bidding Monitor datasets produced by Google.

- How data is passed, shared, or exchanged among or between Google Ads, DoubleClick for Publishers (DFP) and AdX.

- From January 1, 2016 to the present, identification and descriptions of any datasets accessed by the following products: Google Ads, DoubleClick for Publishers (DFP), and AdX.

We do not believe it is necessary or proportional to the needs of the case to demand that Google provide a second 30(b)(6) witness to testify on these overlapping topics.

We propose two potential paths forward.  As one option, in an effort to compromise and to streamline and accelerate the actual taking of testimony (rather than litigation about the scope of such testimony), Google would propose to designate 30(b)(6) witnesses on the following high-level topics (in addition to the offer of testimony and written responses that Google made in response to Topics 1-20).  This offer would be conditional upon the testimony satisfying the entirety of Google's obligations to provide 30(b)(6) testimony and upon each deposition lasting no longer than 7 hours on the record.  Subject to these terms, Google is willing to provide witnesses to testify regarding:

- The operation, design, and expected benefits of Dynamic Allocation, Enhanced Dynamic Allocation, Reserve Price Optimization, Dynamic Revenue Share, and Uniform Pricing Rules, as well as the design the Google AdX auction from 2012-2020 (*e.g.*, first-price vs. second-price).

- The operation, design, and expected  benefits of Bernanke, Poirot, Elmo, AwBid, and Google Smart Bidding as applied to display ads.

- Additionally, Google may be willing to consider offering a 30(b)(6) witness to testify regarding the alleged Google public statements specifically identified in Plaintiffs' Fourth Amended Complaint, *i.e.*:

  ○ Scott Spencer's 2010 statement that "AdX is a second price auction with minimum CPMs set by the publisher" and "this is the most efficient auction model."

  ○ 2015 statement attributed to Andrea Faville in Digiday article

  ○ May 12, 2016 blog post regarding Reserve Price Optimization

March 20, 2024

Page 5

      ○   March 2019 blog post regarding Unified First Price Auction

      ○   Google website statement regarding Open Bidding ("All participants in the unified auction, including Ad Exchange and third-party exchanges, compete equally for each impression on a net basis. Each exchange runs its own auction independently and then submits its bid into the unified auction.")

      ○   Google's Privacy Policy

However, before Google can agree to provide any such testimony, Google needs to understand what types of information regarding these statements Plaintiffs are seeking. The contents of the statements speak for themselves, so Google struggles to understand what additional relevant information a 30(b)(6) witness could or should be prepared to provide.

Alternatively, if this offer is not satisfactory to Plaintiffs, Google suggests that Plaintiffs identify no more than six targeted, relevant, and reasonably narrow topics (including subparts) in the existing Notice as the most important topics and the topics over which Plaintiffs would like to meaningfully meet and confer. Google again requests that Plaintiffs consider whether any of the topics in the Notice can be clarified or narrowed, in writing, in advance of any meet and confer.

If Plaintiffs decline both of these options and fail to offer any constructive alternative suggestions, Google will move for a protective order.

Sincerely,

*/s/ Robert J. McCallum*

Robert J. McCallum