**FILED UNDER SEAL**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| THE STATE OF TEXAS, et al., | § § § § § § § § § | |
| Plaintiffs, | | |
| v. | | Civil Action No. 4:20-CV-957-SDJ |
| GOOGLE LLC, | | |
| Defendant. | | |

**GOOGLE'S SECOND BRIEF ON DISCOVERY DISPUTES**

Defendant Google LLC ("Google") respectfully submits this brief raising discovery disputes in advance of the March 7, 2024 conference before the Special Master.

*First*, Plaintiffs have not provided adequate interrogatory responses about third parties or persons with relevant information. Plaintiffs revised their responses late on February 14, 2024, but their responses on these topics were largely unchanged from their prior, deficient responses. They omit information about third parties interviewed during their investigation and fail to identify persons with information about their claims or purported harms or injuries, even though such information is available in interview memoranda that they have otherwise touted. Much of this information should have been included in Initial Disclosures, and Plaintiffs' ongoing delay interferes with Google's ability to conduct depositions.

*Second*, Plaintiffs that use ad tech have not provided adequate information concerning their use of products that are at issue in the case. Rather than take steps to gather and provide information that may not be in their possession but is in their control, they largely respond to both document requests and interrogatories by simply saying that the information is held by outside vendors. While Google expects Plaintiffs to produce more responsive documents (*see* Feb. 25, 2024 Special

**FILED UNDER SEAL**

Master Order at 9), they also should obtain and produce information and documents from third-party vendors to which they are contractually entitled.

*Third*, Plaintiffs' revised responses on other interrogatories remain deficient. Responses concerning the basic contours of their claims, including on whose behalf they are bringing this action, the remedies they seek and for what alleged conduct, and how they intend to calculate damages, do not provide sufficient information to allow Google to defend against the claims. Google cannot wait longer for information to which it is entitled and that is long overdue.

## ARGUMENT AND AUTHORITIES

### A. Identification of Relevant Persons and Third-Party Witnesses (Interrogs. 9, 29-31)

In their interrogatory responses, Plaintiffs fail to identify individuals and companies with critical information about their investigation, claims, or alleged harms and injuries as requested by Interrogatories 9 and 29-31.  But Plaintiffs' remarks on the record and their belatedly produced supplemental privilege log for third party interview memoranda confirm that they are, and have been, in possession of responsive information for years.

Plaintiffs have yet to adequately respond to Interrogatory 9, which requests a list of all third parties contacted during the investigation, when Plaintiffs communicated with each third party, what topics were discussed, and whether documents were provided by or to the third party.  The topics that were discussed and the documents that were shown to third parties (who have no attorney-client relationship with Plaintiffs) are of particular importance for Google to understand which third parties were allegedly harmed or should be deposed.  Instead of answering, Plaintiffs' response incorporates Appendix A of their Initial Disclosures, which has a general list of parties

**FILED UNDER SEAL**

with discoverable information, Ex. 1 (Pls. Initial Disclosures),[1] and refers to Rule 33(d), pointing to produced third-party communications, *see* ECF No. 245-1 (Pls.' 4th Am. Rog. Resps.)  This response is plainly deficient as it does not address the information Google actually requested (*i.e.*, third parties interviewed, the dates and subject matter of each interview, and documents referenced during the interview).  Plaintiffs' pointing to a list of people who might have discoverable information is a far cry from identifying and describing the information that Plaintiffs have already received from particular third parties.

In response to Interrogatories 29, 30, and 31, Plaintiffs also have refused to identify *any* third party with knowledge of the harms and injuries for which they claim relief.  Google seeks identification of persons with knowledge of harms or injuries for which Plaintiffs seek relief in their sovereign capacity (Interrog. 29), in their *parens patriae* capacity (Interrog. 30), or of persons with knowledge of harm or injury to the general welfare and economy of their states (Interrog. 31).  Plaintiffs continue to object to all three interrogatories as premature[2] and, for Interrogatories 30 and 31, provide a sweeping and nonresponsive assertion that "[w]eb publishers and advertisers located in each of the Plaintiff States suffered harm as a result of Google's anticompetitive and deceptive conduct."  ECF No. 245-1 at 76-79, Resp. to Interrogs. 30, 31. Plaintiffs' revised interrogatory responses of February 14, 2024, indicating that they now proceed in a *parens patriae*

---

[1] After promising to supplement their initial disclosures for months to address deficiencies flagged by Google, Plaintiffs provided supplemental initial disclosures the morning of this filing, February 27, 2024.

[2] These interrogatories are clearly not premature, given that discovery is ending soon and, as discussed, Plaintiffs evidently have responsive information. *See*, *e.g.*, *Janvey v. Greenberg Traurig, LLP*, 2019 WL 13175533, at *6 (N.D. Tex. Feb 12, 2019) (compelling responses to even contention interrogatories after "seven months of discovery," when plaintiff should "have a good idea of" facts underlying claims).

3

**FILED UNDER SEAL**

capacity on behalf of advertisers and publishers, make these deficiencies even more troubling. *Id.* at 8-9, Resp. to Interrog. 2.

Plaintiffs have refused to answer these interrogatories despite long having possession of responsive information. Plaintiffs' counsel trumpeted before the JPML that the Plaintiffs were far along in their investigation, referencing numerous interviews with third parties:

> It's also important for the court to understand that we've been intensely involved in this. We've got two years going now because of all of the pretrial work. We took over 50 statements, equivalent to depositions, before filing the case. We've got over two million documents. We've got documents and information from 25 third parties at this point.

ECF No. 221-2 (July 29, 2021 JPML Hr'g Tr. at 25:5-10). Plaintiffs produced a supplemental privilege log pertaining to third party interview memoranda on February 2, 2024, only after Google's urging and with Plaintiffs insisting they were under no obligation to provide such a log. *See* Google's Feb. 12, 2024 Opening Br. at 5-7, ECF No. 236. Their supplemental privilege log confirms that Plaintiffs have long had responsive information; the log lists 69 interview sessions with dozens of third-party witnesses. See Ex. 2 (Feb. 2, 2024 Priv. Log).[3]

There is no adequate explanation for the continued failure to provide information responsive to Interrogatories 9 and 29 through 31 to Google. If Plaintiffs continue to refuse to respond to relevant interrogatories, even when such information is clearly readily available in the interview memoranda that Plaintiffs have touted, then, alternatively, Google intends to request that the Special Master compel production of redacted versions of these interview memoranda. Google plainly has a substantial need for information about which third parties have relevant information

---

[3] The privilege log is not an adequate substitute for Interrogatory 9, given that it is not a sworn statement, Plaintiffs have never confirmed that it is comprehensive, and it provides the date of the interview but nothing about the subject matter discussed and/or documents reviewed.

or injuries upon which Plaintiffs rely. As described below, Plaintiffs' refusal to respond to interrogatories creates an undue hardship since Google cannot get at the underlying information without having to expend inordinate (and, in the case of depositions, finite) resources deposing dozens of witnesses. Google can no longer wait to obtain information that is critical to its defense.

If Plaintiffs do not provide adequate and fulsome responses by the March 7 conference, then, in the alternative, Google will ask the Special Master to review and recommend production of redacted third-party interview memoranda withheld as attorney work product under Rule 26. Under Rule 26(b)(3)(A)(ii), work product may be discovered if "the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Courts have distinguished between fact or ordinary work product and opinion or core work product, imposing higher levels of protection on the latter. *See Hawkins v. Wadley Reg'l Med. Ctr.*, No. 5:05-CV-154, 2006 WL 8440539, at *5 (E.D. Tex. Sept. 20, 2006). Google will request that the Special Master review the interview memoranda so as to produce the fact work product, such as facts provided by the witness, quotations attributed to the witness, and documents reviewed or discussed with the witness. *See, e.g., Mass Engineered Design, Inc. v. Ergotron, Inc.*, 2008 WL 4873421, at *2 (E.D. Tex. Oct. 31, 2008) (describing that "[n]otes taken by an attorney of a third-party witness" may have "elements of both discoverable and non-discoverable work product").

Google has a substantial need for these materials in order to understand the nature of the injuries and harm that Plaintiffs claim. Plaintiffs' flip-flops on standing and delayed disclosures mean Google is only recently able to even understand what Plaintiffs' claims are (assuming they do not change yet again). As of February 14, 2024, Plaintiffs contend that their *parens patriae*

standing rests on harm and injuries to advertisers, publishers, and their economies and general welfare, but they have yet to identify a single harmed entity or individual in any state. Identifying and testing the alleged harm of third parties is material to Google's defense, but Google cannot do so without knowing which third parties (*i.e.*, which advertisers, publishers, businesses, or individuals) suffered alleged harm.

With respect to the burden, if Plaintiffs do not respond to the interrogatories, Google's only method to obtain the information would be to conduct dozens of depositions to determine who has suffered the injuries on which Plaintiffs rest their claims. But practically, it would be impossible for Google to depose everyone Plaintiffs interviewed (or at least the interviewed third parties of which it is aware from the February 2, 2024 privilege log) given the limited amount of time left in fact discovery and the deposition caps imposed by the Court. Furthermore, such time pressure is wholly a product of Plaintiffs' refusal to provide timely and adequate disclosures and productions. In addition, dozens of depositions would impose needless costs on the parties and deponents. *See In re Int'l Sys. and Controls Corp. Sec. Litig.*, 693 F.2d 1235, 1240 (5th Cir. 1982) (permitting courts to factor in "unusual expense" in undue hardship analysis).

Accordingly, Google expects to be able to establish for the Special Master that it has a "substantial need" for information about Plaintiffs' third-party interviews and for the identities of persons with information about their alleged injuries, and is unable to secure equivalent information without undue hardship. *See, e.g.*, *Smith v. Diamond Offshore Drilling, Inc.*, 168 F.R.D. 582, 584 (S.D. Tex. 1996) (requiring disclosure of witness interview notes following an accident where same information was not obtainable through other reliable means and given significant "lapse in time" from incident); *Steptoe & Johnson LLP v. UBS AG*, No. 08-mc-116,

ECF No. 17 (D.D.C. Apr. 29, 2008) (where interview memos were largely just factual recitations, finding "substantial need" existed for disclosure because the memos were more reliable than forms produced containing only basic and inaccurate facts about the interviews).

### B. Plaintiffs' Use of Ad Tech (Interrogs. 15-17; RFPs 17-41)

Based on Plaintiffs' disclosures, it appears that five Plaintiffs use ad tech products: the Attorney General's Offices of Arkansas, Indiana, Kentucky, Louisiana, and North Dakota ("Ad Tech Plaintiffs"). Google propounded multiple requests for productions and interrogatories related to Plaintiffs' use of Ad Tech products. *See* App'x A (Interrogs.); App'x B (RFPs).

Ad Tech Plaintiffs have largely dodged this discovery by describing that ad agencies handled these products, and that Ad Tech Plaintiffs do not have "possession, custody, or control" of their ad agencies' documents.[4] Ad Tech Plaintiffs' view on possession, custody, or control is far too limited and purports to absolve them from having to provide information about their own use of products about which they are suing. Ad Tech Plaintiffs are able, and should be compelled, to obtain and produce relevant documents from the ad agencies they have hired.

Documents "are deemed to be within [a party's] 'possession, custody or control' for the purposes of Rule 34 if the party has actual possession, custody, or control, or has the *legal right to obtain the documents on demand.*" *Torrey v. Infectious Diseases Soc'y of Am.*, 334 F.R.D. 79, 85 (E.D. Tex. 2019) (emphasis added). Possession, custody, or control "contemplates a party's legal right or practical ability to obtain the materials from a nonparty to the action." *United My Funds, LLC v. Perera*, 2020 WL 1225042, at *8 (E.D. Tex. Mar. 12, 2020); *see also Thyssenkrupp Steel USA, LLC v. United Forming, Inc.*, 2013 WL 12140996, at *9 (S.D. Ala. July 9, 2013) (granting

---

[4] Based on its disclosures, Arkansas does not use an ad agency, but its personnel handle display ads through an AdWords account. Google also understands that Arkansas is presently undertaking another search of the email account belonging to the custodian of the office's AdWords account.

motion to compel documents from third-party vendor). A party "cannot furnish only that information within his immediate knowledge or possession; he is under an affirmative duty to seek that information reasonably available to him from his employees, agents, or others subject to his control." *Flagg v. City of Detroit*, 252 F.R.D. 346, 353 (E.D. Mich. 2008).

As clients of their vendors, Ad Tech Plaintiffs have the "legal right to obtain" information concerning their own use of ad tech products. *See, e.g.*, Ex. 3 (LAOAG_000005) at -10 ("All records, reports, documents, pleadings, exhibits or other materials related to this contract and/or obtained or prepared by Contractor in connection with the performance of the services contracted for herein shall become property of [Louisiana], and shall, upon request, be returned by Contractor to State"). They should be compelled to obtain the responsive information. Google should not be forced to issue third-party subpoenas to discover information about Plaintiffs' own use of the products they put at issue.

### C. Claims, Remedies, and Damages (Interrogs. 2, 4, 5, & 26)

**What Remedies/For Whom** (Interrogs. 2 & 4): In an effort to defeat the motion to dismiss on standing (ECF No. 200), Plaintiffs have switched their theories of the case yet again. They now contend that each state is proceeding as *parens patriae*, and some in a sovereign capacity as well, with all seeking injunctive relief and civil penalties. Though they offer shifting theories of their claims, Plaintiffs fail to offer sufficient information for Google to test their evolving theories. These are not minor details that can wait to be added. Rather, with the close of discovery at hand, Plaintiffs continue to provide evasive answers about what claims they bring and relief they seek, which makes it impossible for Google to prepare its defense with approximately two months left of discovery.

Specifically, in response to Interrogatory 2, Plaintiffs have not specified the claims on which they seek injunctive relief, nor the types of injunctive relief they seek. And, while some

states list the type of injunctive relief they seek, others (like Arkansas and Indiana) merely say they seek "injunctive relief" without specifying exactly what. Without this information, Google cannot properly test Plaintiffs' requested recovery.

Similarly, Interrogatory 4 seeks information about the people for which Plaintiffs seek *parens patriae* relief and the specific relief sought. Plaintiffs respond that they primarily seek relief for advertisers and publishers but identify no specific advertiser or publisher nor ad tech products used. They say generally that persons "suffered from increased prices and lowered quality on the web," without specifying what prices increased or in what way "quality on the web" was "lowered." And, like in Interrogatory 2, their responses do not delineate between relief sought under federal or state law, relevant to the availability of the remedies they seek.

Based upon their own representations, Plaintiffs have long had everything they need to respond. At the February 22 hearing, Plaintiffs said they intend to rely on Google's documents and third-party productions during the investigation to prove up their claimed harm to advertisers or publishers. If so, then at this point in the case, and given the volume of discovery provided by Google, Plaintiffs should be able to—and need to—provide more information about which advertisers and publishers in their states they claim were allegedly harmed by Google.

**Damages Computation and Relief** (Interrogs. 5 & 26): Despite Google's request before the last hearing for full interrogatory responses, Plaintiffs have not said who or what allegedly was injured. Nor have they said for what they seek monetary damages or civil penalties (Interrog. 5) or how they will compute such damages or penalties (Interrog. 26). This information should have been in Rule 26 disclosures years ago.

**FILED UNDER SEAL**

Plaintiffs' recent interrogatory revisions largely repeat allegations from the complaint about the various programs at issue. They do not quantify the harm from such conduct, or even a model for how they will compute their monetary relief. For example, they state that Google's conduct affects "anyone who uses the internet (*i.e.*, consumers in the Plaintiff States)." That is too vague and not helpful. Even worse, for many of their responses, they punt to Google as "in the best position to calculate" the relief *Plaintiffs* seek. Plaintiffs cannot shunt their discovery obligations--and their obligation to explain (and ultimately prove) their own claims--by claiming that Google somehow knows what Plaintiffs are thinking.

With fact discovery ending on May 3, 2024, Plaintiffs must give a specific framework to compute their desired relief, beyond narrative and vague descriptions of the alleged conduct. *See, e.g.*, *Janvey v. Greenberg Traurig, LLP*, 2019 WL 13175533 at *3 (N.D. Tex. Feb 12, 2019) (ordering interrogatory response to state damages even if an exact computation of damages would require an expert opinion); *see also* ECF No. 221-1 at 24:7-23 (Sept. 15, 2023 Hr'g Tr. (E.D. Va.)) (Magistrate Judge Anderson noting that a defendant "in any case is entitled to know what the plaintiff is asking for . . . [and] at least needs to know, in some respects, [] how damages are being calculated, what the elements are, what you intend to be going after."). Such *initial* disclosures are long overdue and Plaintiffs know it.

## CONCLUSION

Google respectfully requests that Plaintiffs be ordered to promptly revise their responses to Interrogatories 2, 4-5, 9, 26 and 29-31. Google further requests that Ad Tech Plaintiffs (except Arkansas) be ordered to communicate with their ad agencies about documents responsive to Requests for Production 17-41.

**FILED UNDER SEAL**

Dated: February 27, 2024

Respectfully submitted,

*R. Paul Yetter*
R. Paul Yetter
State Bar No. 22154200
YETTER COLEMAN LLP
811 Main Street, Suite 4100
Houston, Texas 77002
(713) 632-8000
pyetter@yettercoleman.com

Eric Mahr (*pro hac vice*)
FRESHFIELDS BRUCKHAUS DERINGER US LLP
700 13th Street NW, 10th Floor
Washington, D.C. 20005
(202) 777-4500
eric.mahr@freshfields.com

ATTORNEYS FOR DEFENDANT GOOGLE LLC

**CERTIFICATE OF SERVICE**

I certify that on this 27th day of February 2024, this document was filed electronically in compliance with Local Rule CV-5(a) and served on all counsel who have consented to electronic service, per Local Rule CV-5(a)(3)(A).

*R. Paul Yetter*
R. Paul Yetter

**CERTIFICATE OF CONFERENCE**

I certify that on this 27th day of February 2024, counsel has complied with the meet and confer requirement of Local Rule CV-7(h). Google conferred on the phone or in person with counsel for Texas, primarily Trevor Young, Geraldine Young, and/or Zeke DeRose, on issues raised in this brief on at least the following days: April 5, 2023, May 25, 2023, January 19, 2024, January 24, 2024, January 29, 2024, February 12, 2024, February 19, 2024, and February 26, 2024. Counsel for Texas purported to represent all Plaintiffs for purposes of the conferences. The parties remain at an impasse on Plaintiffs' current discovery responses.

*R. Paul Yetter*
R. Paul Yetter