**FILED UNDER SEAL**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| THE STATE OF TEXAS, et al., | § § § | |
| Plaintiffs, | § | |
| v. | § | Civil Action No. 4:20-cv-00957-SDJ |
| | § | |
| GOOGLE LLC, | § § | |
| Defendant. | § § | |

# DEFENDANT GOOGLE LLC'S RESPONSE BRIEF TO PLAINTIFFS' OPENING BRIEF TO THE SPECIAL MASTER FOR THE MARCH 7, 2024 HEARING

**FILED UNDER SEAL**

**TABLE OF CONTENTS**

BACKGROUND ........................................................................................................................... 1

ARGUMENT ................................................................................................................................. 2

    I. PLAINTIFFS' BELATED REQUEST FOR ADDITIONAL METADATA FIELDS PERTAINING TO CHATS ................................................................................................ 2

    II. PLAINTIFFS' REQUEST FOR ADDITIONAL SEARCH TRANSCRIPTS THAT THEY CONCEDE ARE NOT RELEVANT ................................................................................... 5

    III. PLAINTIFFS' BELATED DTPA RFPS ......................................................................... 8

**FILED UNDER SEAL**

**BACKGROUND**

Plaintiffs continue to relitigate settled issues and raise them here without following the meet and confer process. Plaintiffs were principal members of the Discovery Steering Committee in the MDL that directed the expansive discovery of Google that Plaintiffs amassed during the MDL, but now in this venue they claim the discovery is inadequate. The Special Master should not reward Plaintiffs' attempts to renegotiate what has already been addressed.

**Google Chats**. The Special Master should deny Plaintiffs' request for additional metadata fields beyond those that were negotiated over 10 months in the MDL and which Plaintiffs recently agreed should apply in this case. Google has supplied all of the other information requested by Plaintiffs, which they demanded for the first time weeks ago. Google disclosed all relevant preservation practices to Plaintiffs many years ago, and they have chosen to wait until now to litigate them.

*Search* **transcripts**. Plaintiffs' requests are not grounded in proportionality. Unsatisfied with millions of documents produced in response to their more than 300 Requests for Production and more than 200 search terms, Plaintiffs have now turned their attention to the *Search* case which they have repeatedly asserted is not relevant to this case. Nevertheless, Google has produced transcripts and exhibits for any testifying witnesses in *Search* who are custodians in this case.[1] Plaintiffs told us yesterday that they will next be seeking materials from the *Play* case. Google's search engine and its Android phone and tablet Play store for downloading apps are irrelevant to this case about Google's ad tech stack. Plaintiffs' ballooning and far flung requests will never end unless they are reined in.

---

[1] Google has already produced all these witnesses' transcripts and the majority of the exhibits associated with these transcripts. Google is in the process of redacting some remaining exhibits for third-party confidential and highly confidential information and will provide these exhibits when that process is complete, subject to protective order in the *Search* case, *United States, et al. v. Google LLC*, No. 20-cv-03010 (D.D.C.), ECF No. 98.

1

FILED UNDER SEAL

**DTPA custodians and search terms**. Plaintiffs' newly propounded DTPA discovery requests do not seek genuinely new discovery. Instead, Plaintiffs propose a series of custodians and search terms that are overbroad and not tethered to their DTPA claims.

## ARGUMENT

### I. PLAINTIFFS' BELATED REQUEST FOR ADDITIONAL METADATA FIELDS PERTAINING TO CHATS

Plaintiffs' Brief seeks to relitigate the terms of an ESI Order that Plaintiffs already agreed to and which the Court already entered. The Special Master should deny Plaintiffs' effort to end-run around those settled terms.

For more than four years, Plaintiffs have known about Google's preservation policies. The Court previously stated that, while it "appreciate[s] the parties bringing to the Court's attention what's happening in other cases," it is "most concerned with . . . what's happening in *this* case."[2] Ignoring that guidance, Plaintiffs point to other cases but say little about *this* case. It is true that—as Plaintiffs repeatedly have pointed out—in another case based on other facts, a federal judge in California faulted Google on the basis that it "should have advised plaintiffs about its preservation approach [to Google Chat] early in the litigation, and engaged in a discussion with them."[3] But in *this* case, Google notified Plaintiffs of the preservation practices applicable to Chat (previously known as "Hangouts") at the inception of the pre-suit investigation, on January 16, 2020. *See* Ex. A at 3. Texas acknowledged that disclosure in a February 4, 2020 letter: "As we understand your description of this type of communication, Google Hangouts messages are akin to instant messages between Google employees." Ex. B at 2. Texas went on to confirm its explicit understanding that:

---

[2] ECF No. 189 (Dec. 14, 2023 Hr'g Tr.) at 30:9-14 (emphasis added).
[3] Findings of Fact and Conclusions of Law at 16-17, *In re Google Play Store Lit.*, No. 21-md-02981-JD (N.D. Cal. Mar. 28, 2023), ECF No. 469.

2

**FILED UNDER SEAL**

- "These messages are not retained in any way unless they are marked on-the-record by the user,"

- "If marked on-the-record, they are maintained for thirty days and then deleted," and,

- "If the user does not take this action for every conversation, the unmarked ones will be deleted immediately."

On February 7, 2020, Google responded to Texas and provided an explanation of the instructions that it provides to custodians who are on a legal hold regarding Chat usage. Ex. C at 4.

Following the formation of the MDL, Plaintiffs in this case represented to Judge Castel that they hosted a meeting for all MDL Plaintiffs to address, among other things, "consolidating comments on an ESI Stipulation," MDL ECF No. 141. The parties then negotiated the ESI Order over the next ten months. Plaintiffs did not raise any of the Chats preservation practices of which they had full knowledge. During those ESI negotiations, Google repeatedly sought Plaintiffs' views on a range of complex ESI preservation issues. But Plaintiffs did not engage, despite months of chasing from Google.[4]

As relevant here, the parties' ESI negotiations included a protracted debate regarding the scope of metadata fields to be populated. Although Plaintiffs now demand manual population of new metadata fields, before Judge Castel, they argued that "the language preceding the metadata table" in the ESI Order "makes clear [that] '[t]he parties are not obligated to populate manually any of the[se] fields.'" ECF No. 436 at 9.

In early 2023, Plaintiffs raised in the MDL the question of Chat preservation in the *Play* case. Ex. D. Plaintiffs demanded that, among other things, Google agree to produce its Chat preservation practices. *Id.* Google agreed to do so and requested that Plaintiffs do the same with

---

[4] *See* Google's Response Brief to Plaintiffs' Opening Brief to the Special Master for the Feb. 22, 2024 Hearing, ECF No. 246, Exs. N, O.

3

respect to their preservation policies. Ex. E. But Plaintiffs refused to provide the same information they had requested of Google. Ex. F.

Against that backdrop, the suggestion in Plaintiffs' Brief that developments in an unrelated case in December 2023 somehow piqued their interest in Chat is misleading—at best. Google first produced Chats to Plaintiffs as early as 2020. There is no reason why Plaintiffs could not have raised the issues set forth in their Brief at any time during the pre-suit investigation or fact discovery in the MDL. Plaintiffs chose not to do so and agreed to an ESI Order, entered by two courts, that does not require what they now demand.

We turn to the specific questions that Plaintiffs have asked of Google in their Brief.

**Identification of Chats**. Google has produced over 13,000 Chats. For technical reasons, Google cannot reproduce these documents in the RSMF format requested by Plaintiffs. Google has provided Plaintiffs with a list of the Bates Numbers corresponding to those produced documents, which should resolve this aspect of Plaintiffs' request. *See* Ex. G. And although Plaintiffs complain that they have had to "engage in a manual process" to identify these documents, Plaintiffs' Br. at 1, when Plaintiffs asked, for the first time, for Google's assistance, Google promptly supplied a list of produced Chats.

**Identification of retention policies**. Google produced, in 2023, the retention policies that Plaintiffs now seek. Ex. F at 3. And Google has identified those policies to Plaintiffs by providing the corresponding Bates Number. Ex. G. To be clear: Plaintiffs made this request for the Bates numbers for the first time last week and brought it to the attention of the Special Master days later, despite already having the requested documents in their possession.

**Plaintiffs' request for additional metadata**. Google has already produced the metadata required by the ESI Order and is not required to produce additional metadata. Google does not

**FILED UNDER SEAL**

maintain the additional fields requested by Plaintiffs in the ordinary course of business and Google would need to manually populate these fields in order to address Plaintiffs' requests. As Plaintiffs themselves have argued to Judge Castel, under the governing ESI Order '[t]he parties are not obligated to populate manually any of the[se metadata] fields.'" ECF No. 436 at 9. The Special Master should deny Plaintiffs' request to relitigate the ESI Order entered by two federal courts. Under Federal Rule 26(b)(2)(C)(ii), the Court "must limit the . . . extent of discovery otherwise allowed" where a party "has had ample opportunity to obtain the information" sought but failed to do so.

Finally, we note that Plaintiffs continue to refuse to provide the same information that they have requested of Google. While Plaintiffs responded that they would conduct a "reasonable search" for retention policies themselves, Plaintiffs' response remains inadequate. Several states have not produced *any* retention policies, let alone policies specific to ephemeral communications. We reminded Plaintiffs of that request in our letter dated February 16, 2024. Ex. H at 2. When the parties met and conferred on that letter, at Plaintiffs' request, it was clear that Plaintiffs had taken no steps to address Google's request and had not consulted with any of the 17 Plaintiffs about it. Plaintiffs should now respond.

## II. PLAINTIFFS' REQUEST FOR ADDITIONAL *SEARCH* TRANSCRIPTS THAT THEY CONCEDE ARE NOT RELEVANT

Plaintiffs seek *Search* transcripts even though the only explanation of their purported relevance to this lawsuit is that the *Search* case concerns "advertising."[5] But in their own Complaint, Plaintiffs draw a sharp line between "display advertising" and "search advertising," alleging that the "distinction … is well recognized in the industry." Fourth Am. Compl. ¶ 39.

---

[5] Plaintiffs' Opening Brief to Special Master for the Feb. 22, 2024 Hearing, ECF No. 235 at 13.

5

**FILED UNDER SEAL**

Plaintiffs have yet to explain the irreconcilable position of their discovery demand with—as they acknowledged—the irrelevance of *Search* to this case.

Plaintiffs' Brief is notable for its failure to address Plaintiffs' repeated concessions that the *Search* case is not relevant to the claims or defenses in this case. Specifically:

- Plaintiffs represented to Google that it should not be permitted to claim credit for production of documents to the extent that they comprise documents that "relate to the States' and the DOJ's investigation of online search," as opposed to documents that "are in fact related to the Ad Tech investigation";[6]

- Plaintiffs represented to Judge Castel that Google should not be permitted to claim credit for production of documents related to Google Search, MDL ECF No. 544 at 2 n.1; and

- Plaintiffs represented to this Court that Google's production of 1.2 million documents in relation to the Google Search investigation "do not relate to display advertising" and are thus "not responsive" to Plaintiffs' own documents requests, ECF No. 176 at 5 n.1.

Even if Plaintiffs had not conceded that the documents that they seek are not relevant, it would nevertheless be unduly burdensome for Google to review them. Under the separate protective order in the *Search* case, *United States, et al. v. Google LLC*, No. 20-cv-03010 (D.D.C.), ECF No. 98 ("*Search* Protective Order"), Google may only disclose third-party confidential or highly confidential information to certain individuals or entities in connection with that litigation. Consequently, in order to produce *Search* trial transcripts and exhibits in this case while complying with the *Search* Protective Order, Google must undertake a manual line-by-line review of each document to assess whether it contains third-party confidential or highly confidential information that would need to be redacted before producing in this case. Courts in this Circuit have denied motions to compel RFPs for materials from other litigations when the material is of "relatively marginal importance"—which is at best the case here—and a

---

[6] Google's Response Brief to Plaintiffs' Opening Brief to the Special Master for the Feb. 22, 2024 Hearing, ECF No. 246, Ex. J, at 2.

**FILED UNDER SEAL**

burden is imposed "involving protective orders entered in [the] other case[.]" *See, e.g.*, *Randstad General Partner (US), LLC v. Beacon Hill Staffing Group, LLC*, No. 3:20-CV-2814-N-BN, 2021 WL 4319673, at *20 (N.D. Tex. Sept. 23, 2021).

In order to avoid burdening this Court and Judge Castel, Google has already done more than necessary under the Federal Rules and the Local Rules to identify and produce materials from the *Search* case. Google initially agreed to produce the *Search* trial transcripts of the seven witnesses who are also custodians in Plaintiffs' case. Any theoretically relevant information in the *Search* trial would logically be contained in these transcripts. In addition, Google agreed to provide the exhibits associated with these transcripts, redacting only for third-party confidential and highly confidential information that is protected by the *Search* Protective Order. This required a burdensome line-by-line confidentiality review of 2,728 pages of exhibits. Given the limited, if any, relevance, this discovery is more than proportional to the needs of the case that Plaintiffs bring.

Then, Plaintiffs requested that Google review and provide the transcripts of 20 additional witnesses. In support of their request, Plaintiffs asserted relevance based on job titles and summaries of testimony that plainly have nothing to do with this case.[7] Without conceding relevance, Google informed Plaintiffs that 16 of those witnesses testified in open court, and therefore, their transcripts are accessible to Plaintiffs in the public domain.[8] As Plaintiffs' own cases confirm, when material such as transcripts are publicly available, the requesting party

---

[7] *See* Google's Response Brief to Plaintiffs' Opening Brief to the Special Master for the Feb. 22, 2024 Hearing, ECF No. 246, Ex. K (including, for example, Google employees responsible for partnerships with mobile carriers using Google's Android operating system).

[8] Two of the four remaining witnesses on this list are third parties, and their testimony that remains redacted is third-party confidential or highly confidential information that is redacted even for Google's counsel in this case. Thus, the publicly available versions of these two transcripts are the usable versions available to either party in this litigation, and Plaintiffs should obtain these transcripts on their own as well.

**FILED UNDER SEAL**

should obtain those transcripts on their own. *See Retractable Techs., Inc. v. Becton, Dickinson & Co.*, No. 2:08-CV-16, 2011 WL 13134891, at *5 (E.D. Tex. Aug. 4, 2011) ("To whatever extent documents covered by these requests are reasonably publically available, however, such as trial transcripts, trial exhibits, and deposition transcripts, [the requesting party] should obtain them at its own expense.").

It is unclear whether Plaintiffs have taken steps to obtain those transcripts. But after receiving confirmation that the majority of transcripts of interest to them are available in the public domain, Plaintiffs last week expanded their demands to encompass all *Search* transcripts that contain the words "advertising" or "ads" regardless of whether they have anything to do with display advertising and the nature or duration of the discussion of "ads." Plaintiffs' Br. at 4-5.

In an effort to reach a compromise, Google has offered to review any trial transcripts of Google witnesses that are not publicly accessible to ascertain whether the testimony bears on the claims and defenses in this case (e.g., digital advertising-related market definition or display ad tech products and services). If relevant testimony is identified, Google will produce relevant portions of testimony together with any exhibits that are referenced in those relevant portions, subject to the limitations of the *Search* Protective Order. Ex. G. Google's proposal is proportional to the needs of the case.

### III. PLAINTIFFS' BELATED DTPA RFPS

Google will continue to meet and confer with Plaintiffs regarding their late DTPA requests, but currently Plaintiffs' proposals are entirely unworkable. Plaintiffs' 101 Requests for Production concerning their DTPA claims are extremely broad, and come very late in this case. Contrary to Plaintiffs' representations to the Special Master, there was no stay of discovery as to Plaintiffs' DTPA claims; Plaintiffs could have sought this discovery at any time during 2023

**FILED UNDER SEAL**

pursuant to Judge Castel's Pre-Trial Order No. 3.  MDL ECF No. 311; *see also* Pre-Trial Order No. 5, MDL ECF No. 394 (staying discovery as to Network Bidding Agreement, but not otherwise staying discovery).

Plaintiffs told the Court that their DTPA document requests "are going to be the same document search terms that have already been allegedly used by Google," but that they would "apply to a new set of custodians." Hr'g Tr. at 19:13-15 (Nov. 20, 2023). But now Plaintiffs apparently no longer "believe the past search terms and custodians are sufficient to find all relevant and responsive documents." ECF No. 235 at 15.

**Custodians**.  Plaintiffs have represented to the Special Master that they need additional discovery regarding their DTPA claims.  But three of the four custodians that they have proposed are duplicative of custodians that Plaintiffs (and the MDL Plaintiffs) sought in the MDL in support of their antitrust claims but then later dropped.

Plaintiffs now assert that they need additional DTPA "custodians: (a) who are/were involved in, oversee/oversaw, or have/had any relevant role with respect to representations, statements, and communications to/with the public, Google's customers, and other third parties about the Google products, services, and programs at issue in this case; and (b) who generated both external and internal documents relating to the same." Plaintiffs' Br., Ex. D.  But Plaintiffs already have the documents of *more than 75 customer-facing custodians* who match this description, in whole or in part.

Google remains willing to add a limited number of additional custodians to address Plaintiffs' belated DTPA demands.  But based on Plaintiffs' proposals, it would appear that they are simply looking to supplement the extensive custodian negotiations that occurred over the course of eight months during fact discovery, and to circumvent Judge Castel's directive that his

9

**FILED UNDER SEAL**

November 2, 2023 Order "is not a license to come back next month [to ask for other search terms or more custodians] . . . this is essentially it." MDL ECF No. 664; MDL ECF No. 665 at 11:10-18. On top of that, Plaintiffs demand that Google propose additional custodians. To ensure that any additional discovery is proportional, Google is prepared to make a proposal of its own, subject to the parties reaching agreement on a total number of new custodians. Google proposes that the parties agree no more than five new custodians be added.[9]

**Search terms**. Google has tested the 23 new search terms[10] that Plaintiffs provided on February 26, 2024, and provided feedback to Plaintiffs on their proposal at a meet and confer yesterday, which we confirmed in writing today. Ex. G. Many of the terms proposed by Plaintiffs are overbroad or are not tethered to Plaintiffs' DTPA claims. As drafted, Plaintiffs' proposal sweeps in approximately 7.2 million documents, of which nearly 3.5 million are "new hits" which have not previously been exported to Google's review platform.[11]

Plaintiffs' proposals are overbroad and entirely unworkable. We have provided feedback to Plaintiffs regarding their searches and will continue to meet and confer next week. Ex. G.

---

[9] As Plaintiffs know from past negotiations, the custodian collection process alone can take weeks to complete once agreement is reached. As a result, it will already be difficult to complete any additional collection and review within the constrained period of fact discovery that Plaintiffs have pressed for.

[10] Although Plaintiffs framed their proposal to Google as comprising only five new search strings, after accounting for Plaintiffs' five "root/initial search strings" and "further modifying strings," there were 23 different permutations of search strings that Google needed to test.

[11] These figures are prior to de-duplication.

**FILED UNDER SEAL**

Dated: March 1, 2024

Respectfully submitted,

*/s/ R. Paul Yetter*
R. Paul Yetter
State Bar No. 22154200
YETTER COLEMAN LLP
811 Main Street, Suite 4100
Houston, Texas 77002
(713) 632-8000
pyetter@yettercoleman.com

Eric Mahr (*pro hac vice*)
FRESHFIELDS BRUCKHAUS DERINGER LLP
700 13th Street NW, 10th Floor
Washington, D.C. 20005
(202) 777-4545
eric.mahr@freshfields.com

ATTORNEYS FOR GOOGLE LLC

11

**FILED UNDER SEAL**

**CERTIFICATE OF SERVICE AND SEALING**

I certify that, on March 1, 2024, this document was filed electronically in compliance with Local Rule CV-5(a) and served on all counsel who have consented to electronic service, per Local Rule CV-5(a)(3)(A).  I also certify that, on March 1, 2024, a motion to seal this document certain exhibits thereto was filed separately and before the filing of those materials under seal, per Local Rule CV-5(a)(7)(B).  This sealed filing will be promptly served by email on counsel of record for all parties in this case, and will later be publicly filed in redacted form per Local Rule CV-5(a)(7)(E).

*/s/ R. Paul Yetter*
R. Paul Yetter
