IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

THE STATE OF TEXAS, et al.,

       Plaintiffs,

v.

GOOGLE LLC,

       Defendant.

Civil Action No. 4:20-cv-00957-SDJ

# EXHIBIT D

**PLAINTIFF STATES' OPENING BRIEF TO THE SPECIAL MASTER
FOR THE APRIL 4, 2024 HEARING**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| THE STATE OF TEXAS, et al. | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 4:20-cv-00957-SDJ |
| | § | |
| GOOGLE, LLC, | § | |
| | § | |
| Defendant. | § | |

### GOOGLE LLC'S RESPONSES AND OBJECTIONS TO
### PLAINTIFF STATE OF TEXAS'S SECOND REQUESTS FOR PRODUCTION

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure (the "Federal Rules") and the Local Rules of the United States District Court for the Eastern District of Texas (the "Local Rules"), Defendant Google LLC ("Google"), by and through its undersigned counsel, hereby responds and objects to Plaintiff State of Texas's ("Plaintiff") Second Requests for Production dated February 9, 2024 (the "Requests") as follows:

These Responses and Objections are based on the information currently available to Google and are provided subject to, without intending to waive, and expressly preserving Google's right at any time to revise, correct, supplement, or clarify any of the responses and objections herein.

In providing these Responses and Objections, Google does not waive, and expressly preserves, all defenses and claims. Google provides these Responses and Objections without waiving or intending to waive (a) any objections as to the competency, relevance, materiality, privileged status, or admissibility as evidence, for any purpose, of any information provided in response to the Requests; (b) the right to object on any ground to the documents produced in response to the Requests at any hearing or trial; (c) the right to object on any ground at any time to a demand for further responses to the Requests; (d) the right to revise, amend, supplement, or clarify any of the responses and objections

- 1 -

set forth herein; or (e) the right to move the Court for a protective order with respect to the Requests.

Subject to Google's Responses and Objections below, Google is willing to meet and confer to better understand Plaintiff's views on the relevance and discoverability of the documents requested.

## OBJECTIONS TO DEFINITIONS

To the extent that Google does not object to a defined term or responds to Requests containing a defined term, regardless of whether Google has objected to that definition, Google's response should not be taken as a concession or agreement by Google that the defined term is factually accurate or legally sufficient for any evidentiary purposes. To the extent Google objects to any of Plaintiff's defined terms below, Google incorporates by reference those objections wherever such definition is used in the Requests.

1.      Google objects to Definition 2, "Ad Exchange," as vague and ambiguous in its use of the undefined phrases "digital marketplace" and "direct or indirect means" of connecting to the same. Google will construe the term "Ad Exchange" to refer to a third-party or in-house product or service through which two or more ad buying tools (at least one of which is not owned or controlled by the entity operating the Ad Exchange) placed or can place bids in real-time auctions for Ad Inventory offered for sale by or on behalf of two or more Publishers (at least one of which is not owned or controlled by the entity operating the Ad Exchange).

2.      Google objects to Definition 3, "Ad Impression," as overbroad to the extent that it purports to include pre-service "opportunity," as opposed to the actual service of an advertisement.

3.      Google objects to Definition 6, "Ad Request," as vague and ambiguous, as the phrase "may be directed to a portion or the entirety of a web page" is inconsistent with the rest of the definition given for this term. Google will interpret this definition to exclude the last sentence containing the vague and ambiguous phrase.

4.      Google objects to Definition 7, "Ad Tech Product(s)," as overbroad, unduly burdensome, vague, and ambiguous to the extent it is defined to include "any and all systems, platforms, and software . . . used in the process of identifying, selecting, transmitting, and/or rendering Digital Advertising on a desktop or mobile device, as well as all systems and software . . . that implement and/or effectuate an Ad Auction, including receiving, processing, and transmitting Bid Requests, Bid Responses, or related messages." The definition could be read to be limited solely to those portions of a product that implement the specified functionality (e.g., those portions of a DSP that handle bidding, but not, for example, the advertiser-facing user interface), or conversely to include general-purpose infrastructure on which software involved in ad tech relies, such as a user's web browser or Google's proprietary network and data storage infrastructure on which all of its services rely. Google further objects to this definition as overbroad, unduly burdensome, and disproportionate to the needs of the case to the extent it is defined to include systems, platforms, and software used in Google's search advertising business, an area that is not relevant to any claim that the Court has determined was well-pleaded and that has no reasonable connection to this case. The Google "systems, platform, and software . . . used in the process of identifying, selecting, transmitting, and/or rendering" search advertising, including the "systems and software . . . that implement and/or effectuate . . . Ad Auction[s]" for such advertising, are distinct from those that Google uses for the display advertising relevant to this case, so including them dramatically increases the breadth of this definition and of each of the specifications relying on it, without proportional benefit. Google further objects that this definition's use of the term "Google Ads," without specifying whether a Request seeks information about the search or display advertising systems offered under that brand, is vague and ambiguous. Google further objects to this definition as overbroad, unduly burdensome, and disproportionate to the needs of the case to the extent that it purports to include Campaign Manager, DoubleClick Campaign Manager, Google Analytics, Search Ads 360, or any other product not the

- 3 -

subject of alleged misconduct in this case. Given the breadth of discovery already produced and to be produced in response to the Requests, any additional documents generated by expanding the scope of Google's search and production obligations to include such products would be of limited or no relevance to any party's claims or defenses. Google further objects to this definition to the extent that it purports to include the "Google Display Network." The Google Display Network refers to the group of website publishers and mobile application developers that offer display ad inventory for sale using Google services, not an independent product. Google will construe the term "Ad Tech Product(s)" to refer to independent products that Google and third parties provide to publishers or advertisers to facilitate the sale and purchase of display advertising inventory, and not, for example, the sale of search ad inventory. For the avoidance of doubt, Google will construe the term "Ad Tech Product(s)" to include the following Google products: Google Ads (solely as used for the purchase of display advertising, not search ad inventory), Display & Video 360, Campaign Manager, AdSense for Content (but not, for the avoidance of doubt, AdSense for Search), AdMob, and Google Ad Manager.

5.       Google objects to Definition 8, "Ad Tech Auction Mechanics," as overbroad, unduly burdensome, vague, and ambiguous to the extent it purports to equate "mechanics" with "systems and software" and purports to include "all systems and software" that, without limitation, "implement" or "effectuate" certain rules, preferences, designs, or features, regardless of the nature, extent, or directness of their contribution to the implementation or effectuation of such features. Google further objects that "Ad Auction rules, preferences, designs, or features" is vague and ambiguous. In responding to specifications using the term "Ad Tech Auction Mechanics," Google will construe that term to refer to any design, feature, limitation, policy, mechanism, innovation, improvement, optimization, or strategy related to how ad tech products buy, sell, price, bid, or auction inventory, how ad tech products improve ad quality or match quality, how ad tech products measure or report on the effectiveness of display advertising, or how ad tech products integrate or interoperate with other ad

tech products.

6.      Google objects to Definition 9, "Advertiser," as overbroad to the extent it purports to include "anyone who . . . bids, or otherwise attempts to buy Ad Inventory" as well as intermediaries that help facilitate transactions between "advertisers" and "publishers," and might be said to "buy[]" or "bid" for online "Ad Inventory." Google will interpret this to refer to advertisers, and all affiliated persons or companies to the extent they are known to Google, who buy Ad Inventory for their own account, but not the intermediaries they may use to do so.

7.      Google objects to Definition 10, "Advertiser Ad Server," as vague and ambiguous to the extent it could be read to be limited solely to those portions of a product that implement the specified functionalities. Google will respond based on information reasonably available to Google and its good faith and reasonable interpretation of the vague and ambiguous term.

8.      Google objects to Definition 11, "AdX Direct" as vague and ambiguous to the extent it suggests that AdX Direct is a distinct product and/or feature from AdX. Google will construe "AdX Direct" as referring to a technical integration of AdX

9.      Google objects to Definition 12, "Algorithm," as overbroad, unduly burdensome, vague, and ambiguous to the extent it is defined to include "any process, set of rules, source code, or white paper describing or concerning the operation of" Google's Ad Tech Products. That definition could, for example, include internal business "process[es]" of Google related to the development or operation of its Ad Tech Products or search engine or textual descriptions of their operation, including any number of ordinary course documents bearing little or no relevance to this case. Google further objects to the term "white paper" as vague and ambiguous because the term is not defined and does not have a well-understood plain meaning in the context of this definition. Google further objects to this definition to the extent it purports to seek information related to the operation of Google's search engine, an area that is not relevant to any claim that the Court has determined was well-pleaded and

that has no reasonable connection to this case. In responding to specifications using the defined term "Algorithm," Google will respond based on information reasonably available to Google and its good faith and reasonable interpretation of the identified overbroad, vague, and ambiguous term.

10.     Google objects to Definition 18, "Behavioral Data," as vague and ambiguous to the extent that terms used within the definition, including "User," "First-Party Data," "Second-Party Data," and "Third-Party Data," appear to be defined terms for which no definition is provided. Google will respond based on information reasonably available to Google and its good faith and reasonable interpretation of the identified vague and ambiguous terms.

11.     Google objects to Definition 19, "Bernanke," as overbroad, unduly burdensome, vague, and ambiguous in its reference to a "program . . . that adjusted bids." Google will construe "Bernanke" to refer to the Google feature that helped advertisers using Google Ads win more impressions by optimizing the bids submitted on their behalf into the AdX auction.

12.     Google objects to Definition 20, "Bid Request," as vague and ambiguous because it does not specify the sender or recipient of the message it purports to describe. In responding to specifications using the term "Bid Request," Google will construe that term to refer to messages sent by a Publisher, Publisher Ad Server, Ad Exchange, or other system to one or more potential bidders (but excluding, for the avoidance of doubt, an Ad Request, Bid Response, or any subsequent messages potentially sent as a result of the processing of a Bid Response or the completion of the relevant Ad Auction).

13.     Google objects to Definition 21, "Bid Response," as vague and ambiguous because it does not identify the type of response. For example, if an Ad Exchange sent a Bid Request to a DSP, the definition of "Bid Response" could include both the DSP's immediate response to the Ad Exchange and the Ad Exchange's subsequent response providing the outcome to the auction, both of which were "generated in response to" the initial Bid Request, directly or indirectly. In responding to

specifications using the term "Bid Response," Google will construe that term to refer to messages sent by the recipient of a Bid Request to the originator of such Bid Request containing the specified information (and not to any subsequent messages potentially sent as a result of the processing of that initial response or the completion of the relevant Ad Auction).

14.     Google objects to Definition 23, "Competitors," as vague and ambiguous to the extent that "Ad Tech Services" appears to be a defined term for which no definition is provided. In responding to specifications using "Competitors," Google will respond based on information reasonably available to Google and its good faith and reasonable interpretation of the identified vague and ambiguous term.

15.     Google objects to Definition 24, "Core Algorithm Update," as overbroad, unduly burdensome, vague, and ambiguous to the extent it is defined to include "all other algorithmic changes and updates [Google] employ[s] to implement [its] Core Algorithm Updates." Google will respond based on information reasonably available to Google and its good faith and reasonable interpretation of the identified overbroad, vague, and ambiguous phrase.

16.     Google objects to Definition 26, "Cost-Per-Mille," as vague and ambiguous to the extent it refers both to the method by which Advertisers pay and to that by which Publishers receive compensation for advertisements. Advertisers may pay on the basis of what Definition 24 defines as "Cost-Per-Click," and Publishers may be paid for the same Impressions on a "Cost-Per-Mille" basis. In responding to specifications using the defined term "Cost-Per-Mille," Google will construe it not to include instances in which the definition of "Cost-Per-Click" is also satisfied, unless the context clearly indicates to the contrary.

17.     Google objects to Definition 27, "Daily Mail," as overbroad, unduly burdensome, vague, and ambiguous to the extent it purports to include in the definition "all persons or entities acting or that have acted on [Daily Mail's] behalf" and "any other related entity." Google will interpret

- 7 -

"Daily Mail" to refer to Associated Newspapers Ltd., Mail Media, Inc., and all affiliated persons or companies to the extent they are known to Google.

18.      Google objects to Definition 28, "Demand-Side Products," as overbroad, vague, and ambiguous to the extent it suggests that DoubleClick for Advertisers, Google Display Network, DoubleClick Campaign Manager, Google Campaign Manager, Google Analytics, Analytics 360, or Google Audience Center are used to "facilitate the purchase of Ad Inventory." Google will construe this definition as referring to those of Google's products that actually "facilitate the purchase of Ad Inventory," whether or not listed by name in the definition.

19.      Google objects to Definition 29, "Direct Action Plaintiff," as overbroad, unduly burdensome, vague, and ambiguous to the extent it purports to include in the definition "all persons or entities acting or that have acted on [the Direct Action Plaintiff's] behalf" and "any other related entity." Google will interpret "Direct Action Plaintiff" to refer to a Plaintiff (not including Daily Mail as defined) in any matter that is now or becomes a part of *In re Google Digital Advertising Antitrust Litigation*, 1:21-md-03010 (PKC) (S.D.N.Y.), that is proceeding in its or their individual capacity, and all affiliated persons or companies to the extent they are known to Google.

20.      Google objects to Definition 30, "Direct Sales," as the phrase "managed by the Publisher" is vague and ambiguous given that all line items, at least in Google Ad Manager, are designed to be managed by the publisher. Google will respond based on information reasonably available to Google and its good faith and reasonable interpretation of the identified vague and ambiguous phrase.

21.      Google objects to Definition 31, "Digital Advertising," as overbroad, unduly burdensome, and disproportionate to the needs of the case to the extent it is defined to include "search Digital Advertising," an area that is not relevant to any claim that the Court has determined was well-pleaded and that has no reasonable connection to this case. Given the breadth of discovery

already produced and to be produced in response to the Requests, any additional documents generated by expanding the scope of Google's search and production obligations to include such "search Digital Advertising" would be of limited or no relevance to any party's claims or defenses. Google will not produce documents relating solely to search advertising.

22.     Google objects to Definition 33, "Document(s)," to the extent it contradicts or seeks to impose obligations beyond the relevant definitions and stipulations in the Confidentiality Order (ECF No. 182) and ESI Protocol (ECF No. 183) filed in this case and to which the parties agreed. Google's productions will abide by the stipulated obligations as set forth in the Confidentiality Order and ESI Protocol.

23.     Google objects to Definition 35, "Dynamic Allocation," as overbroad, unduly burdensome, vague, and ambiguous to the extent it is defined to include a "feature of DFP introduced in 2014 that changed the procedure for how a winning bid was selected on DFP." Google will construe "Dynamic Allocation" to refer to the DFP feature that enabled demand from AdX to compete in real-time with demand from third-party Ad Exchanges, Ad Networks, and Ad Buying Tools via a price floor for AdX in DFP.

24.     Google objects to Definition 36, "Dynamic Revenue Share" and "DRS," as overbroad, unduly burdensome, vague, and ambiguous in its reference to fees being "otherwise adjusted." Google will construe "Dynamic Revenue Share" and "DRS" to refer to the Google feature that dynamically adjusted the fees Google charged Publishers to transact via AdX.

25.     Google objects to Definition 37, "Enhanced Dynamic Allocation" or "EDA," as vague and ambiguous in its use of the undefined term "Premium Inventory." Google will construe "Enhanced Dynamic Allocation" or "EDA" to refer to the modification to Dynamic Allocation first introduced in or about 2014, which enabled guaranteed and nonguaranteed line items to compete on a per-Impression basis.

- 9 -

26.     Google objects to Definition 38, "Relevant Time Period," because collecting, reviewing, and producing documents and information in response to requests covering a fourteen-year timeframe is overbroad, unduly burdensome, and disproportional to the needs of the case.

27.     Google objects to Definition 40, "Floor Pricing," as vague and ambiguous in its use of the undefined term "floor price." In responding to specifications using the term "Floor Pricing," Google will construe "floor price" to refer to the limitation on how low an Advertiser or ad buying tool can bid for Ad Inventory while still being eligible to win the Ad Impression.

28.     Google objects to Definition 41, "Yavin," as vague and ambiguous to the extent it suggests that a Google product or feature by that name provides or provided access to Google's ad exchange. Google will construe "Yavin" as referring to a Google product or feature by that name.

29.     Google objects to Definition 44, "Google Group," as overbroad, unduly burdensome, vague, and ambiguous to the extent it purports to include the entirety of the information provided on the webpage https://support.google.com/a/answer/33329. Google further objects to this definition as vague and ambiguous as it provides no context or meaning for the terms "computer account" and "computer resource." Google will respond based on information reasonably available to Google and its good faith and reasonable interpretation of the identified vague and ambiguous phrase.

30.     Google objects to Definition 45, "Header Bidding," as overbroad, unduly burdensome, vague, and ambiguous to the extent it is defined to include all Ad Auctions in which bids are invited "before an Ad Request is sent to the Publisher Ad Server." Google will construe "Header Bidding" to refer to the use by a Publisher of code that is directly or indirectly called during the web browser's processing or rendering of the HTML header of a webpage (and prior to the invocation of a Publisher Ad Server) and that causes Bid Requests to be sent to one or more Ad Exchanges, Ad Networks, DSPs, or other sources of demand.

31.     Google objects to Definition 49, "Metric," as vague and ambiguous to the extent that it

purports to include "Projections," which is defined in reference to this term "Metrics." See Definition

53 ("'Projections' shall mean any forecasts or evaluations of [Google's] or a third parties' [sic] (e.g.,

Advertisers, Competitors, Publishers) future or predicted Metrics, financial performance, expenses, or

revenues."). Google will interpret this Definition based on its reasonable and good faith understanding

of the identified vague and ambiguous term.

32.     Google objects to Definition 52, "Person," because it purports to include any

"governmental entity," but the cited statute excludes "the State of Texas, its departments, and its

administrative agencies or a community center operating under Subchapter A, Chapter 534, Health

and Safety Code." Google will construe "Person" to refer to any natural person or any legal entity,

including, without limitation, any business or governmental entity or association.

33.     Google objects to Definition 53, "Privacy and Security Principles," as overbroad,

unduly burdensome, vague, and ambiguous to the extent it is defined to include "any prior versions or

iterations of such principles," without any time limitation or specificity.

34.     Google objects to Definition 54, "Privacy Policy," as overbroad, unduly burdensome,

vague, and ambiguous to the extent it is defined to include "any prior versions or iterations of such

policy," without any time limitation or specificity.

35.     Google objects to Definition 55, "Projections," as vague and ambiguous to the extent

that it purports to include "Metrics," which is defined in reference to this term "Projections." See

Definition 47 ("'Metric' shall mean any measures of quantitative assessment that may be used for

analyzing, evaluating, or interpreting [Google's] business, [] budgets, [] financial performance, []

revenues, or [] Projections, including the following . . . Projections relating to third parties."). Google

will interpret this Definition based on its reasonable and good faith understanding of the term.

36.     Google objects to Definition 56, "Publisher," as vague and ambiguous in its use of the

undefined phrase "who serves content on the internet." Google further objects to this Definition as

overbroad, unduly burdensome, and disproportionate to the needs of the case in its inclusion of a "Publisher's agents, brokers, employees, representatives, officers, directors, and assigns." Google will interpret "Publisher" as meaning "any person or entity that owns or operates one or more internet websites, applications, and/or videos and monetizes the content on those properties by selling display advertising to Advertisers," and all affiliated persons or companies to the extent they are known to Google.

37.     Google objects to Definition 60, "RPM" or "Revenue Per Mille," as vague and ambiguous because it refers to a measure within the AdSense interface ("estimated earnings" per 1000 impressions), which may not be available for other products. Google will interpret this Definition as referring to actual or estimated revenue per 1000 impressions.

38.     Google objects to Definition 61, "Reserve Price Optimization" and "RPO," as vague and ambiguous in its use of the undefined term "custom floors." Google will interpret this Definition based on its reasonable and good faith understanding of the identified vague and ambiguous term.

39.     Google objects to Definition 62, "Supply Side Platforms" or SSP," as vague and ambiguous in its references to entities that "organize demand" and "connect" Publishers to Ad Exchanges and DSPs. Google will construe "Supply Side Platforms" or "SSP" to refer to a third-party or in-house product or service through which two or more ad buying tools (at least one of which is not owned or controlled by the entity operating the Ad Exchange) placed or can place bids in real-time auctions for Ad Inventory offered for sale by or on behalf of two or more Publishers (at least one of which is not owned or controlled by the entity operating the Ad Exchange).

40.     Google objects to Definition 63, "User," as unduly burdensome, as it requires Google to determine, for each instance of "User," whether the web page viewed "may be displayed through use of [Google's] Ad Tech Products and/or Ad Tech Services." For example, "Advertiser" is defined as "anyone who buys, bids, or otherwise attempts to buy Ad Inventory on a third-party webpage or

mobile application to serve ads to Users who visit a third-party webpage or mobile application, including their agents, brokers, employees, representatives, officers, directors, and assigns." To determine whether a company is an Advertiser, Google would have to determine whether the company attempts to "serve ads" on web pages that use Google's Ad Tech Products and/or Ad Tech Services. Google will interpret "User" without the qualification that the "Ad Impression may be displayed through use of [Google's] Ad Tech Products and/or Ad Tech Services."

41.     Google objects to Definition 64, "You", "Your", "Alphabet", or "Google," to the extent it defines "subsidiary," "affiliate," and "joint venture" to refer to "any firm in which there is total or partial ownership of twenty-five percent or more or total or partial control between the company and any other Person or entity." Google will construe "subsidiary," "affiliate," and "joint venture" to refer to firms over whose documents Google has possession, custody, or control.

## OBJECTIONS TO INSTRUCTIONS

1.     Google objects to Instruction 3 to the extent it seeks to impose obligations beyond those required by the Federal Rules or the Local Rules by requiring, without limitation, that Google identify any of the more than 6 million previously-produced documents by Bates number.

2.     Google objects to Instruction 5 because collecting, reviewing, and producing documents and information in response to requests covering a fourteen-year timeframe is overbroad, unduly burdensome, and disproportional to the needs of the case.

3.     Google objects to Instruction 6 to the extent it seeks to impose obligations beyond or different from those required by the stipulated ESI Protocol filed in this case. ECF No. 183. Instruction 6 contradicts Appendix 1.E of the ESI Protocol, which provides for production of documents as TIFFs as the default, because Instruction 6 imposes the burdensome requirement that all documents be produced in native format. Google's productions will abide by the stipulated obligations

in the ESI Protocol.

4.    Google objects to Instruction 7 to the extent it seeks to impose obligations beyond those required by the Federal Rules or the Local Rules by requiring, without limitation, that Google describe "in detail the process used to identify and collect Documents responsive to each request for production." Federal Rule of Civil Procedure 34(2)(B) provides only that the responding party either state objections or produce documents.

5.    Google objects to Instruction 9 to the extent it seeks to impose obligations beyond those required by the Federal Rules or the Local Rules by requiring, without limitation, that Google identify any of the more than 6 million previously-produced documents by Bates number in response to Plaintiff's duplicative requests.

6.    Google objects to Instruction 11 to the extent it seeks to impose obligations beyond or different from those required by the stipulated ESI Protocol filed in this case. ECF No. 183. Instruction 11 purports to set forth privilege log requirements, which are set forth in detail in Paragraph V of the ESI Protocol. Google's productions will abide by the obligations stipulated in the ESI Protocol.

7.    Google objects to Instruction 14 to the extent it seeks to impose obligations beyond those required by the Federal Rules or the Local Rules by requiring, without limitation, that "[a]ll Documents are to be produced in full." Google further objects to Instruction 14 to the extent it purports to require Google to produce (i) privileged information or information protected by the attorney work product doctrine, (ii) trade secrets, including source code and other highly sensitive information regarding competitive business practices, and/or (iii) information that is protected by privacy laws.

8.    Google objects to Instruction 15 to the extent it seeks to impose obligations beyond those required by the Federal Rules or the Local Rules. Google further objects to Instruction 15 to the

extent it purports to require Google to produce (i) privileged information or information protected by the attorney work product doctrine, (ii) trade secrets, including source code and other highly sensitive information regarding competitive business practices, and/or (iii) information that is protected by privacy laws. Google further objects to Instruction 15 to the extent it seeks to impose obligations beyond or different from those required by the stipulated ESI Protocol filed in this case. ECF No. 183. Instruction 15 contradicts Appendix 1.E of the ESI Protocol, which governs the production of "[h]idden content, tracked changes or edits, comments, notes, and other similar information." Google's productions will abide by the stipulated obligations in the ESI Protocol.

9.      Google objects to Instruction 17 to the extent it seeks to impose obligations beyond or different from those required by the ESI Protocol filed in this case. ECF No. 183. Instruction 17 contradicts Paragraph V.10 of the ESI Protocol, which permits redaction of "personal data and personally identifying numbers or sensitive information from produced documents, consistent with the requirements under Federal Rule of Civil Procedure 5.2 and Local Rules." Google's productions will abide by the stipulated obligations in the ESI Protocol.

10.     Google objects to Instruction 18 to the extent it seeks to impose obligations beyond or different from those required by the ESI Protocol filed in this case. ECF No. 183. Instruction 18 contradicts Appendix 1.E of the ESI Protocol which provides for production of documents as TIFFs as the default, because Instruction 18 purports to require "[a]ny responsive dynamic material" to "be produced . . . as a Clone of such material." Google's productions will abide by the stipulated obligations in the ESI Protocol.

## **GENERAL OBJECTIONS**

1.      In response to hundreds of earlier requests for production, and combined with materials produced during the State of Texas's 13-month pre-suit investigation as well as during the Department

of Justice's investigation and litigation, Google has already produced over 6 million documents from over 150 custodians and over 200 search terms, comprising more than 200 terabytes of data. Google has also made available for inspection nearly 80 gigabytes of source code. As set forth in the Specific Responses and Objections below, Google also agrees to meet and confer regarding additional targeted searches. To the extent the Requests purport to seek any additional custodial document searches, Google objects to the Requests because they "needlessly increase the cost of litigation" or are "unreasonable" and "unduly burdensome" when "considering the needs of the case" and the "prior discovery in the case" as prohibited by Federal Rule of Civil Procedure 26(g)(1)(B).

2.      Google objects to the Requests to the extent they seek documents or information covered by the attorney-client privilege, the work product doctrine, the common interest privilege, or any other applicable privilege, immunity, or restriction on discovery. Google will not produce privileged or protected material. Any inadvertent disclosure of privileged or protected information by Google in response to the Requests shall not be deemed a waiver of any such privilege or protection, and Google expressly requests that any party that receives any such inadvertently produced privileged or protected information immediately return and not make use of the inadvertently produced privileged or protected information. *See* Confidentiality Order, ECF No. 182, ¶ 12(a) ("The production of privileged or work-product protected [material], whether inadvertent or otherwise, is not a waiver of the privilege or protection from discovery . . . .").

3.      Google objects to the Requests to the extent they purport to require Google to search for or produce documents not within its possession, custody, or control, or that cannot be found through a reasonable search. Google will only search for and produce information and materials that are in its possession, custody, or control.

4.      Google objects to the Requests to the extent they call for information and/or documents that are already in the possession of or equally available to Plaintiff or its counsel, including, but not

limited to, documents previously produced to Plaintiff and documents available from government agencies, regulatory bodies, court filings, commercial industry sources, or documents available in the public domain.

5.      Google objects to the Requests to the extent they "needlessly increase the cost of litigation" or are "unreasonable" and "unduly burdensome" when "considering the needs of the case" and the "prior discovery in the case" as prohibited by Federal Rule of Civil Procedure 26(g)(1)(B).

6.      Google objects to the Requests as overbroad, unduly burdensome, and disproportionate to the needs of the case to the extent that they call for the identification or production of "all" documents or communications when a subset of the documents or communications would be sufficient.

7.      These responses and objections and any documents or information produced are provided without waiver of any objections as to the competency, relevance, materiality, privileged status, or admissibility of any document or information as evidence.

8.      Google objects to the Requests to the extent they identify document types, sources, and the scope of requested data. Google will produce documents pursuant to the ESI Protocol, ECF No. 183, which includes, among other things, specifications for the types of documents, sources, and data that will be produced in response to these Requests.

9.      Google objects to the Requests as vague, ambiguous, overbroad, unduly burdensome, and disproportional to the needs of the case to the extent that requests for "Documents" seek to require Google to produce source code without specifically referring to source code as such. Google further objects because source code is unnecessary and irrelevant to whether or not Google engaged in the alleged anticompetitive conduct, particularly given the extensive document productions already made describing the operation of Google's ad tech products and auction mechanics. Source code is "extremely sensitive information or items representing computer code and associated comments and

revision histories, formulas, engineering specifications, or schematics that define or otherwise describe in detail the algorithms or structure of software or hardware designs." Confidentiality Order, ECF No. 182, ¶ 1(v). Disclosure of the requested source code would "create a substantial risk of serious harm" to Google. *Id.* Absent a showing that source code is relevant to the claims at issue and necessary to prove any of Plaintiff's claims, Google will not produce highly sensitive source code. *See id.*, App'x B ¶ 8 (setting forth source code production procedures "[t]o the extent production of source code becomes necessary in this case").

10.    Google objects to the Requests as vague, ambiguous, overbroad, unduly burdensome, and disproportional to the needs of the case to the extent that requests for "Documents" seek to require Google to produce log data without specifically referring to log data as such.

11.    Google further objects to the Requests to the extent they seek production of categories of ESI that "are not reasonably accessible" and need not be preserved, searched, collected, or reviewed pursuant to the ESI Protocol. ECF No. 183. Google's productions will be governed by the obligations in that ESI Protocol.

12.    Google's investigation of Plaintiff's claims is ongoing. These responses are being made after reasonable inquiry into the relevant facts and are based only upon the information and documentation that is presently known to Google. Google's responses and production should not be construed to prejudice its right to conduct further investigation, or to limit its use of any additional evidence that may be developed. Google reserves the right to assert additional objections, and to supplement its responses and objections as appropriate, particularly if any additional information regarding the Requests or the underlying claims at issue is provided.

**SPECIFIC RESPONSES AND OBJECTIONS TO REQUESTS FOR PRODUCTION**

**Request for Production No. 102:**

All contracts and agreements related to GAM.

**Response to Request for Production No. 102:**

Google objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of the case. The Request is overly broad and unduly burdensome because it purports to require Google, without any limitations, to search for and produce "all contracts and agreements" related to GAM. Google further objects to this request as vague and ambiguous because Plaintiffs have not specified with reasonable particularity the meaning or the scope of what documents are "related to" GAM.

Google objects to this Request as duplicative of other Requests, including MDL RFPs 37, 52, and 272. Google further objects to this Request as duplicative because it seeks documents that Google has already produced to Plaintiffs in response to MDL RFPs 37, 52, and 272, and in the MDL Expanded Investigation Materials. Plaintiffs' Request seeks to require Google to conduct further searches for additional copies of agreements is unduly burdensome and the additional benefit to Plaintiffs—if any—is unclear.

Subject to and without waiving its objections, Google is willing to meet and confer with Plaintiffs to discuss this Request and determine what, if any, additional relevant documents Plaintiffs believe Google maintains that are responsive to this Request that are not duplicative of other Requests or documents that Google has already produced.

**Request for Production No. 103:**

All contracts and agreements related to AdX Direct.

**Response to Request for Production No. 103:**

Google objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of the case. The Request is overly broad and unduly burdensome because it purports to require Google, without any limitations, to search for and produce "all contracts and agreements"

related to AdX Direct. Google further objects to this request as vague and ambiguous because Plaintiffs have not specified with reasonable particularity the meaning or the scope of what documents are "related to" AdX Direct.

Google objects to this Request as duplicative of other Requests, including MDL RFPs 52, 272, and 286. Google further objects to this Request as duplicative because it seeks documents that Google has already produced in response to MDL RFPs 52 and 272, and in the MDL Expanded Investigation Materials. Plaintiffs' Request seeks to require Google to conduct further searches for additional copies of agreements is unduly burdensome and the additional benefit to Plaintiffs—if any—is unclear.

Subject to and without waiving its objections, Google is willing to meet and confer with Plaintiffs to discuss this Request and determine what, if any, additional relevant documents Plaintiffs believe Google maintains that are responsive to this Request that are not duplicative of other Requests or documents that Google has already produced.

**Request for Production No. 104:**

All contracts and agreements related to Yavin.

**Response to Request for Production No. 104:**

Google objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of the case. The Request is overly broad and unduly burdensome because it purports to require Google, without any limitations, to search for and produce "all contracts and agreements" related to Yavin. Google further objects to this request as vague and ambiguous because Plaintiffs have not specified with reasonable particularity the meaning or the scope of what documents are "related to" Yavin.

Google objects to this Request as duplicative of other Requests, including MDL RFPs 70 and 272. Google further objects to this Request as duplicative because it seeks documents that Google has already produced in response to MDL RFPs 70 and 272, and in the MDL Expanded Investigation

Materials. Plaintiffs' Request seeks to require Google to conduct further searches for additional copies of agreements is unduly burdensome and the additional benefit to Plaintiffs—if any—is unclear.

Subject to and without waiving its objections, Google is willing to meet and confer with Plaintiffs to discuss this Request and determine what, if any, additional relevant documents Plaintiffs believe Google maintains that are responsive to this Request that are not duplicative of other Requests.

**Request for Production No. 105:**

All contracts and agreements related to both Your Ad Server and Your Ad Exchange.

**Response to Request for Production No. 105:**

Google objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of the case. The Request is overly broad and unduly burdensome because it purports to require Google, without any limitations, to search for and produce "all contracts and agreements" related to Google's Ad Server and Ad Exchange. Google further objects to this request as vague and ambiguous because Plaintiffs have not specified with reasonable particularity the meaning or the scope of what documents are "related to" Google's Ad Server and Ad Exchange.

Google objects to this Request as duplicative of other Requests, including MDL RFPs 52, 70 and 272. Google further objects to this Request as duplicative because it seeks documents that Google has already produced in response to MDL RFPs 52, 70 and 272, and in the MDL Expanded Investigation Materials. Plaintiffs' Request seeks to require Google to conduct further searches for additional copies of agreements is unduly burdensome and the additional benefit to Plaintiffs—if any—is unclear.

Subject to and without waiving its objections, Google is willing to meet and confer with Plaintiffs to discuss this Request and determine what, if any, additional relevant documents Plaintiffs believe Google maintains that are responsive to this Request that are not duplicative of other Requests.

**Request for Production No. 106:**

All documents identifying and/or tracking the publishers with a GAM contract.

**Response to Request for Production No. 106:**

Google objects to this Request as irrelevant, overly broad, unduly burdensome, and not proportional to the needs of the case. The Request is overly broad and unduly burdensome because it purports to require Google, without any limitations, to search for and produce "[a]ll documents" identifying and/or tracking publishers with GAM contracts. Google further objects to this request as vague and ambiguous because Plaintiffs have not specified with reasonable particularity the meaning of "a GAM contract," "identifying" or "tracking."

Subject to and without waiving its objections, Google is willing to meet and confer with Plaintiffs to discuss this Request and determine what, if any, additional relevant documents Plaintiffs believe Google maintains that are responsive to this Request that are not duplicative of other Requests.

**Request for Production No. 107:**

All documents identifying and/or tracking the publishers with an AdX Direct contract.

**Response to Request for Production No. 107:**

Google objects to this Request as irrelevant, overly broad, unduly burdensome, and not proportional to the needs of the case. The Request is overly broad and unduly burdensome because it purports to require Google, without any limitations, to search for and produce "[a]ll documents" identifying and/or tracking publishers with AdX Direct contracts. Google further objects to this request as vague and ambiguous because Plaintiffs have not specified with reasonable particularity the meaning of "an AdX Direct contract," "identifying" or "tracking."

Subject to and without waiving its objections, Google is willing to meet and confer with Plaintiffs to discuss this Request and determine what, if any, additional relevant documents Plaintiffs believe Google maintains that are responsive to this Request that are not duplicative of other Requests.

**Request for Production No. 108:**

- 22 -

All documents identifying and/or tracking the publishers with a Yavin contract.

**Response to Request for Production No. 108:**

Google objects to this Request as irrelevant, overly broad, unduly burdensome, and not proportional to the needs of the case. The Request is overly broad and unduly burdensome because it purports to require Google, without any limitations, to search for and produce "[a]ll documents" identifying and/or tracking publishers with Yavin contracts. Google further objects to this request as vague and ambiguous because Plaintiffs have not specified with reasonable particularity the meaning of "a Yavin contract," "identifying" or "tracking."

Subject to and without waiving its objections, Google is willing to meet and confer with Plaintiffs to discuss this Request and determine what, if any, additional relevant documents Plaintiffs believe Google maintains that are responsive to this Request that are not duplicative of other Requests.

Dated: March 11, 2024                    Respectfully submitted,

R. Paul Yetter
State Bar No. 22154200
Bryce L. Callahan
State Bar No. 24055248
YETTER COLEMAN LLP
811 Main Street, Suite 4100
Houston, Texas 77002
(713) 632-8000
pyetter@yettercoleman.com
bcallahan@yettercoleman.com

Eric Mahr (*pro hac vice*)
Julie S. Elmer (*pro hac vice*)
FRESHFIELDS BRUCKHAUS DERINGER LLP
700 13th Street NW, 10th Floor
Washington, D.C. 20005

- 23 -

(202) 777-4545
eric.mahr@freshfields.com
julie.elmer@freshfields.com

ATTORNEYS FOR
DEFENDANT GOOGLE LLC

**CERTIFICATE OF SERVICE**

I certify that on March 11, 2024, this document was served via email on counsel of record for Plaintiff the State of Texas.

*/s/ R. Paul Yetter*
R. Paul Yetter
