IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| THE STATE OF TEXAS, et al., § <br> § <br> Plaintiffs, § <br> v. § <br> § <br> GOOGLE LLC, § <br> § <br> Defendant. § | Civil Action No. 4:20-cv-00957-SDJ |

**DEFENDANT GOOGLE LLC'S RESPONSE BRIEF TO
PLAINTIFFS' OPENING BRIEF TO THE SPECIAL MASTER
FOR THE APRIL 4, 2024 HEARING**

Google respectfully submits this Response Brief in advance of the April 4, 2024 hearing before the Special Master. Plaintiffs raised two issues. Both of Plaintiffs' requests are moot, but they underscore that Plaintiffs have yet to provide Google with a complete response to Google's Interrogatory No. 12 which Google intends to promptly seek.[1]

**1.    Chat metadata**. Google has undertaken further manual searches which moot Plaintiffs' various requests for additional Chat metadata.

Almost five weeks ago, citing a single document that was not in fact a Chat, Plaintiffs sought the wholesale reproduction of Chats in a different format. ECF. No. 271 at 2. The Special Master denied Plaintiffs' request as moot. ECF No. 289 at 3.

Plaintiffs now contend that Google has not produced metadata for approximately 1,800 Chats. Google has already complied with the provisions of the governing ESI Order by providing the metadata that can be automatically populated. ECF No. 183, App'x 1(D) ("each of the metadata and coding fields set forth below that can be extracted shall be produced for each document, to the extent reasonably practicable. The parties are not obligated to populate manually any of the fields below if such fields cannot be extracted from a document . . . ").

Despite being under no obligation to do so, as an offer of compromise and to move past this issue, last week Google provided Plaintiffs with a spreadsheet that includes additional metadata for more than 1,600 of the approximately 1,800 Chats for which Plaintiffs contend that metadata was not produced. This involved a manual search for available metadata across our review database. Google has also conducted a reasonable search for additional metadata and was unable to locate additional metadata. To the extent that Plaintiffs contend that additional metadata

---

[1] Plaintiffs provided an amended response to Interrogatory No. 12 on February 14, 2024, which provides "examples" of allegedly coercive contracts but does not identify the specific provisions alleged to be coercive.

remains unproduced, Google does not believe that further searches will yield additional metadata.

As we explained to Plaintiffs last week, many of the documents that they identified are *attachments* to Chats (as opposed to Chats) and that we would not normally expect to find to/from metadata associated with those attachments. Nothing more is required, and the Special Master should deny Plaintiffs' renewed request.

**2.      Production of publisher contracts**. Instead of responding to Google's fourteen-month old interrogatories asking Plaintiffs to identify the contracts on which their tying allegation is premised, Plaintiffs now claim that Google must undertake vaguely defined searches for broad swaths of contracts. But Google has already searched for and produced relevant contracts in both the investigative stage and litigation, *see* Ex. A, and so Plaintiffs' request for more contracts should be denied. Plaintiffs have yet to provide a complete response to Google's Interrogatory No. 12.

Beginning with the fourth iteration of their Complaint, filed in November *2021*, Plaintiffs alleged that, starting in 2018, "Google began renegotiating publisher contracts to eliminate the few remaining exchange-only contracts in existence, requiring publishers to sign a combined contract that included both Google's DFP ad server and Google's AdX exchange." MDL ECF No. 541 ¶ 251. Plaintiffs further alleged that, "[w]ith this strict contractual tie, Google no longer even attempts to maintain the fiction that its exchange and ad server may be purchased separately." *Id*.

In Google's First Set of Interrogatories—issued fourteen months ago—Google sought clarification of the basis of Plaintiffs' tying allegations based on combined contracts. Specifically, Google asked Plaintiffs to "[i]dentify all contracts that You allege coerced customers into using DFP with AdX, as set forth in Paragraphs 245-252 of the Third Amended Complaint. For each contract, identify the specific provisions You contend are coercive in nature."[2] For fourteen

---

[2] *E.g.*, Google's LLC's First Set of Interrogatories to the State of Texas (Jan. 27, 2023) at 25.

2

months, Plaintiffs have resisted responding to Google's Interrogatory No. 12.  Their objections and statements on meet-and-confers boil down to assertions that the Interrogatory is premature or that Google has the information to figure out the basis for Plaintiffs' tying claim.[3]

Then, on February 9, 2024, Plaintiffs issued Requests for Production Nos. 102-105 seeking all agreements related to "GAM," "AdX Direct," "Yavin," and Google's "Ad Server and[] Ad Exchange."  Plaintiffs have since issued an additional Interrogatory seeking the same information in a different format.[4]  In their latest opening brief, Plaintiffs expand their request further to seek "the identity of publishers" with the contracts sought in Plaintiffs' RFP Nos. 102-105.  ECF No. 322 at 2.  They issued a 30(b)(6) notice asking for this information as well.

At a meet and confer held on March 19, 2024, Plaintiffs conceded that they issued Requests for Production Nos. 102-105 in response to Google's Interrogatory No. 12 to Plaintiffs.  *See* ECF No. 322 at 2.  Plaintiffs confirmed this understanding in their March 26, 2024 email to Google, again directing Google to its own Interrogatories for these Requests.  ECF No. 322-5.

Plaintiffs' recently revised Response to Google's Interrogatory No. 12, served on February 14, 2024, asserts that Google somehow "mischaracterizes" Plaintiffs' tying allegations—as well as "the state of discovery"—and "assume[s] that Google has produced a substantial number of

---

[3] In their Responses and Objections served on March 13, 2023, Plaintiffs asserted that Interrogatory No. 12 was "overly broad, unduly burdensome, and disproportional to the needs of the case as it places an undue burden on the responding party that outweighs its expected benefits and the requesting party's ability to obtain the information is similar or superior to that of the responding party. Further, the Plaintiff States object to this interrogatory as premature given the status of the case and the fact that a significant amount of discovery has yet to occur in this litigation, and to the extent it seeks to compel Plaintiff States to marshal all of their evidence in advance of trial. Plaintiff States also object on the basis that this is a contention interrogatory and pursuant to Local Rule 33.3(c) contention interrogatories seeking the claims and contentions of the opposing party should not be served until the conclusion of fact discovery. Subject to and without waiving the foregoing objections, the Plaintiff States will supplement its response to this interrogatory at a later date once it has obtained sufficient discovery to make a complete response."
[4] *See* Pl. State of Texas' Second Set of Interrogatories (Mar. 6, 2024) at 6.

actual agreements between publishers and DFP." Plaintiffs identify 10 contracts they claim are coercive but note that the list is not exhaustive. Plaintiffs also fail to respond to the portion of the Interrogatory requesting plaintiffs to "identify the specific provisions You contend are coercive in nature."[5]

Google has already produced more than 700 relevant contracts and has done more than is required to satisfy Plaintiffs' various Requests for Production of publisher contracts. *See* Ex. A. As Plaintiffs know, during the pre-suit investigation Google produced (a) template contracts, (b) contracts with Open Bidding partners, (c) contracts with Google's top 50 publisher customers from 2014-2020, and 341 integration agreements between Google and 48 counterparties. *Id*.[6]

Moreover, as Plaintiffs know, during discovery Google: (a) searched for and produced U.S. contracts that were categorized as "Ads" and designated as a "template," (b) made reasonable inquiries of relevant employees with responsibility for GAM, Google Ads, and DV360 to ascertain if there were additional responsive template contracts, and produced the output, (c) conducted a further search for contracts with Open Bidding and Exchange Bidding partners and produced the output, and (d) conducted a further search of its contract database for additional integration agreements and produced the output of those searches. *Id*.

During the course of their pre-suit investigation and the extensive document productions made during this litigation, Plaintiffs have received more than sufficient discovery with respect to the contracts that they allege support their tying claim. Plaintiffs should not be permitted to put off their discovery obligations any longer just because the facts contained in those contracts do not

---

[5] The Pl. States' Fourth Am. Resps & Objs to Google LLC's First Set of Interrogatories (Feb. 14, 2024) at 29-30.

[6] To avoid burdening the Court with a motion to seal, Google has omitted the identity of the individual counterparties from Exhibit A. But Google has supplied that information to Plaintiffs.

4

support the allegations in Plaintiffs' complaint.

Dated: April 1, 2024                     Respectfully submitted,

*/s/ R. Paul Yetter*
R. Paul Yetter
State Bar No. 22154200
YETTER COLEMAN LLP
811 Main Street, Suite 4100
Houston, Texas 77002
(713) 632-8000
pyetter@yettercoleman.com

Eric Mahr (*pro hac vice*)
FRESHFIELDS BRUCKHAUS DERINGER LLP
700 13th Street NW, 10th Floor
Washington, D.C. 20005
(202) 777-4545
eric.mahr@freshfields.com

ATTORNEYS FOR GOOGLE LLC

5

## CERTIFICATE OF SERVICE

I certify that, on April 1, 2024, this document was filed electronically in compliance with Local Rule CV-5(a) and served on all counsel who have consented to electronic service, per Local Rule CV-5(a)(3)(A).

/s/ *R. Paul Yetter*
R. Paul Yetter
