IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| THE STATE OF TEXAS, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| v. | § | |
| | § | Civil Action No. 4:20-CV-957-SDJ |
| GOOGLE LLC, | § | |
| | § | |
| Defendant. | § | |

**GOOGLE'S BRIEF TO THE SPECIAL MASTER**

Google submits the following three issues to the Special Master:

*First*, Texas is playing games to keep Google from obtaining information about the state's use of display advertising technology. When Google initially sought discovery from the state regarding its use of display advertising technology through its various arms, such as state agencies, Texas insisted that such information be obtained through third party subpoenas to those agencies. Rather than fight with the state, Google served subpoenas on certain Texas agencies as the Office of the Attorney General requested. But after Google served those agencies with deposition subpoenas, the very same lawyers who filed suit–the lawyers that have been representing Texas and requested that this information be obtained through subpoenas–moved to quash the deposition subpoenas served on state agencies on the alleged basis of sovereign immunity. The law does not sanction such an unfair result. Texas, represented by its Office of the Attorney General, should have to produce witnesses able to testify about the Ad Tech usage of its subsidiary state agencies.[1]

---

[1] In the alternative, and pending the Court's resolution of the agencies' motion to quash, Google will seek that the state agencies be required to produce witnesses to testify about their use of Ad Tech.

1

*Second*, Google seeks narrow supplemental responses to Interrogatories 8 and 12, which ask, respectively, for identification of the allegedly deceptive statements upon which Plaintiffs rely for the DTPA claims and identification of the allegedly coercive contractual provisions upon which Plaintiffs rely for their tying claim.  Google intends to request an order from the Special Master requiring Plaintiffs to supplement their interrogatory responses if the parties are unable to reach an agreement.

*Third*, Google has proposed that the parties use Microsoft's Azure Data Share service ("Azure") to transfer the materials described in paragraphs 4.1.1 to 4.1.6 of the Stipulation and Order Regarding Expert Discovery, ECF No. 184 ("expert backup materials").  Google has raised this proposal with Plaintiffs, and intends to request the Special Master's assistance if the parties are unable to reach an agreement.

*Finally*, following the meet and confer on April 9, 2024, the parties are exploring ways to reproduce in this case certain fact discovery materials from *United States v. Google LLC*, No. 1:23-cv-00108 (E.D. Va.) while complying with the Modified Protective Order in that case (ECF No. 251).  In an abundance of caution, Google has also served subpoenas on the relevant EDVA third parties and parties to enable re-production of those materials.  The parties continue to meet and confer on this issue and will provide additional details in advance of the April 18 conference, including any requests for assistance from the Special Master.

### I.  Depositions of Texas Agencies

At the outset of discovery in this case, the State Plaintiffs refused to respond to Google's discovery requests concerning the state's use of the products at issue, thus confining their discovery responses to the offices of attorney general themselves. The State Plaintiffs directed Google to subpoena their state agencies as third parties through Rule 45 subpoenas. (ECF No. 343-2 at 2–3, State Pl.'s April 3, 2023 Ltr. to Google.)  Rather than burden the court and to avoid delay, Google – following the instructions of the State Plaintiffs – served subpoenas on 70 state agencies, including the Texas General Land Office, Texas A&M University, and Texas Department of Motor Vehicles (collectively, the "Texas Agencies"). Each produced documents regarding their use of the very Ad Tech tools that are the subject of this litigation.  Consistent with the State Plaintiffs' instructions, Google served Rule 45 deposition subpoenas on the Texas Agencies on March 24, 2024.  The Texas Agencies moved to quash the subpoenas on April 5, 2024, claiming sovereign immunity. The motion elides the fact that Texas – the lead state in the 17-state coalition – initiated this lawsuit.  Moreover, the Texas Agencies, as set forth below, are under the control of Plaintiff Texas and should be treated as such.

As set forth in Google's response to the motions, the Texas Attorney General waived the state's immunity through voluntarily filing suit against Google.  (Google's April 9, 2024 Br., ECF No. 343).  *Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 619 (2002) ("[W]here a State voluntarily becomes a party to a cause and submits its rights for judicial determination, it will be bound thereby and cannot escape the result of its own voluntary act by invoking the prohibitions of the Eleventh Amendment." (cite omitted)); *see also Louisiana v. Allstate Ins. Co.*, 536 F.3d 418, 432 (5th Cir. 2008) (Louisiana waived its sovereign immunity when, through its attorney general, it joined private parties to file *parens patriae* action alleging

antitrust violations).  Sovereign immunity belongs to the state and only derivatively to its agencies. *See Green v. Graham*, 906 F.3d 955, 961–62 (11th Cir. 2018) ("The Supreme Court has consistently recognized[,] sovereign immunity belongs to the state, and only derivatively to state entities and state officials."). So, the Texas Agencies have no immunity to assert.

Google has asked the Court to deny the Texas Agencies' motions to quash, but now also seeks further relief from the Special Master as to Plaintiff Texas. Texas, as lead Plaintiff in this case, should be directed to produce witnesses able to speak on behalf of the Texas Agencies that filed the unmerited motions to quash.

Google only treated state agencies as third parties because the State Plaintiffs demanded it do so at the outset of discovery in this case. State agencies, including these Texas Agencies, are *not* third parties but components of the very Plaintiff States who brought this litigation. A state's discovery obligations extend to its state agencies, particularly when, as here, the case is brought in a *parens patriae* capacity on behalf of the state. "[W]here the plaintiff is the State [. . .], discovery addressed to the State [. . .] includes its agencies." *Washington v. GEO Grp., Inc.*, No. 3:17-CV-05806-RJB, 2018 WL 9457998, at *3 (W.D. Wash. Oct. 2, 2018) (noting that "the [Office of the Attorney General] has explicitly brought this case as *parens patriae* on behalf of the State of Washington. . . ."). A state cannot bring claims on its own behalf but then shield itself from reciprocal discovery, particularly when its Attorney General advances both positions. *Washington*, 2018 WL 9457998, at *3 ("Because the [Attorney General's Office] is the law firm to the State of Washington, the AGO should respond to and produce discovery on behalf of the State of Washington, including its agencies."); *see also New Mexico v. Purdue Pharma, L.P.,* 2020 WL 13566522, at *2 (D.N.M. July 22, 2020) (discussing fundamental unfairness of

4

allowing New Mexico attorney general to make broad claims on behalf of agencies without requiring the agencies to answer party discovery).

Texas's position is a transparent attempt to obstruct Google's right to obtain discovery. The Texas Agencies are represented by the Office of the Attorney General of Texas. Indeed, the motions to quash were signed by some of the same OAG supervisory attorneys that oversee this litigation, including an attorney who regularly appears for conferences in this case. To claim that the Texas Agencies are separate from the plaintiff state of Texas is farcical. *Cf. Perez v. Perry*, 2014 WL 1796661, at *2 (W.D. Tex. May 6, 2014) (requiring Texas Attorney General to produce materials "in the possession of the 23 individual legislators represented by the Attorney General's office" and noting "it is inconsistent for the State to argue that on one hand the Attorney General represents these individuals, but that for discovery purposes the United States must resort to Federal Rule of Civil Procedure 45"). Texas's attempt to avoid depositions of Texas Agencies should be rejected, and Texas, as a plaintiff, should be required to produce witnesses from these Texas Agencies which it represents.

## II.     Interrogatories 8 and 12

Google has requested that Plaintiffs supplement their responses to certain interrogatories.

*First*, Interrogatory 8 requests that Plaintiff States "[i]Identify with particularity each and every act, practice, or statement by Google that You allege to have been unfair or deceptive," and "all documents on which you relied on to respond to this Interrogatory." Google seeks additional information about one particular alleged misstatement as set forth in Paragraph 575 of Plaintiffs' Fourth Amended Complaint:

> Similarly, since at least October 2018, Google has maintained a webpage touting certain privacy protections it supposedly practices, including relating to its advertising. On that webpage, as it existed in October 2018, Google proclaimed, 'We do not sell your personal information to anyone'. Later versions of the webpage were even more definitive, 'We

*never* sell your personal information,' (emphasis added) and '[y]our personal information is not for sale.'"

Plaintiffs have not yet identified the source for these alleged statements, or the website where they claim such a statement was made. Such information is critical to Google's preparation of its defense, as it will allow Google to evaluate, among other things, its context, presentation, and surrounding text.

*Second*, Interrogatory 12 requests that Plaintiff States "identify all contracts that You allege coerced customers into using DFP with AdX," and, "[f]or each contract, identify the specific provisions You contend are coercive in nature." In response, Plaintiffs have identified a number of contracts by Bates number but have not yet identified the particular contractual provisions that Plaintiffs allege to be coercive. Google has recently engaged in multiple meet-and-confers with Plaintiffs regarding Google's production of contracts related to DFP and, in particular, Plaintiffs have sought information about which publishers used which of Google's contract templates. Plaintiffs' requests, however, demonstrate that their tying claim arises from some, but not all, of Google's templates. Google should not have to guess at Plaintiffs' theory of its claim, and Plaintiffs should have to provide responsive information that they clearly possess.

Google intends to confer about these interrogatory responses and will raise with the Special Master at the next conference if Plaintiffs do not agree to supplement their responses.

### III. Expert Back-Up Materials

In anticipation of expert discovery, Google has made a proposal to produce expert backup materials through Microsoft's Azure Data Share service, as used successfully by the parties in the Eastern District of Virginia. (Ex. 1, April 9, 2024 E-Mail.)

**CONCLUSION**

Google respectfully requests that Plaintiff Texas be required to produce witnesses on behalf of the Texas Agencies for 30(b)(6) depositions. If the parties have not otherwise come to a resolution, Google will seek an order requiring Plaintiffs to supplement their responses to Interrogatories 8 and 12, and assistance from the Special Master with respect to the production of expert back up materials.

Dated: April 9, 2024

Respectfully submitted,

_R. Paul Yetter_
R. Paul Yetter
State Bar No. 22154200
YETTER COLEMAN LLP
811 Main Street, Suite 4100
Houston, Texas 77002
(713) 632-8000
pyetter@yettercoleman.com

Eric Mahr (*pro hac vice*)
FRESHFIELDS BRUCKHAUS DERINGER US LLP
700 13th Street NW, 10th Floor
Washington, D.C. 20005
(202) 777-4500
eric.mahr@freshfields.com

ATTORNEYS FOR DEFENDANT GOOGLE LLC

## CERTIFICATE OF SERVICE

I certify that, on April 9, 2024, this document was filed electronically in compliance with Local Rule CV-5(a) and served on all counsel who have consented to electronic service, per Local Rule CV-5(a)(3)(A).

*/s/ R. Paul Yetter*
R. Paul Yetter

## CERTIFICATE OF CONFERENCE

I certify that, on April 9, 2024, counsel has complied with the meet and confer requirement of Local Rule CV-7(h).  Counsel discussed the issues raised in this brief on a meet and confer on the morning of April 9, 2024.  We will continue to confer with Plaintiffs and, to the extent these issues are resolved before the next conference, update the Special Master in the parties' joint report.

*/s/ R. Paul Yetter*
R. Paul Yetter