IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| THE STATE OF TEXAS, et al., | § § § § § § § § | |
| Plaintiffs, | | |
| v. | | Civil Action No. 4:20-cv-00957-SDJ |
| GOOGLE LLC, | | |
| Defendant. | | |

**MEMORANDUM OF LAW IN SUPPORT OF GOOGLE'S MOTION FOR A PROTECTIVE ORDER PROHIBITING PLAINTIFFS FROM DEPOSING SERGEY BRIN, SUNDAR PICHAI, AND NEAL MOHAN**

Plaintiffs seek the depositions of three high-ranking Google executives. Google respectfully seeks a protective order prohibiting each deposition because there is no basis in law or fact to permit the depositions to proceed.

*First*, the law is clear that Plaintiffs should not be permitted to depose Sundar Pichai, Google and Alphabet's CEO, and Sergey Brin, Google's co-founder and now a member of its board, because (1) neither high-ranking executive has unique information relevant to this case, and (2) any additional discovery that Plaintiffs might need (which they have not identified) could be obtained through less intrusive means, such as depositions of persons more directly involved in the conduct at issue.

*Second*, Plaintiffs should not be permitted to depose YouTube's CEO Neal Mohan. Mr. Mohan sat for two full depositions in November 2020, as part of the Department of Justice's and Attorney General of Texas' pre-suit investigations, and in October of last year, in *United States v. Google LLC*, Case No. 1:23-cv-00108 (E.D. Va.). Plaintiffs should not be permitted to question Mr. Mohan again on the same subject matter because: (1) another deposition would be cumulative and duplicative of the nearly 14 hours of his deposition testimony to which Plaintiffs already have access; (2) Plaintiffs were required to depose Mr. Mohan in the MDL, had every opportunity to do so, but decided to forego their questioning of Mr. Mohan; and (3) no new information has come to light since Mr. Mohan was last deposed that justifies yet another deposition.

## I. PLAINTIFFS SHOULD NOT BE PERMITTED TO DEPOSE MR. BRIN OR MR. PICHAI.

### A. Factual Background

Plaintiffs' complaint—now in its fifth iteration—spans more than 236 pages of allegations yet there are no unique allegations related to Google's CEO or co-founder. *In re Google Digit. Advertising Antitrust Litig.*, No. 1:21-md-3010 (S.D.N.Y), ECF No. 541 ("FAC"). Mr. Brin is not mentioned once. Mr. Pichai is mentioned three times, none of

1

which suggests unique knowledge of relevant facts. *See* FAC ¶ 46 (alleging that Mr. Pichai said Google's policy regarding sale of personal data is "unequivocal"), ¶ 424 (incorrectly asserting that Mr. Pichai personally signed off on the Network Bidding Agreement), ¶ 577 (alleging that Google's policy against selling user personal information "is not found only on its website" but was also expressed by Mr. Pichai).

Following over a year of fact discovery, on January 2, 2024, this Court entered a scheduling order granting each side forty depositions of fact witnesses. ECF No. 194 at 6. Before completing a single one of those depositions, Plaintiffs issued deposition notices for Messrs. Brin and Pichai.[1]

The parties conferred on March 25, 2024, and Google inquired about the purported unique relevance of the executives' testimony. Plaintiffs stated that Messrs. Brin and Pichai have information about Google's acquisition of DoubleClick. Plaintiffs also asserted that Mr. Pichai has information about the Network Bidding Agreement between Google and Facebook. The parties conferred for a second time on March 27, 2024, and Google asked the same question. Plaintiffs were unable to provide any additional specificity about unique relevant facts they hope to learn from Messrs. Brin and Pichai's testimony, but offered to provide a "sampling" of documents that they believed supported their position. Plaintiffs provided the sampling, but remain unable to show that Messers. Brin and Pichai have unique, relevant knowledge that cannot be obtained through other forms of discovery.

### 1. Plaintiffs' Allegations Regarding the DoubleClick Acquisition

Plaintiffs allege that "[t]he origins of Google's display advertising monopolies trace back to its 2008 acquisition of DoubleClick." FAC ¶ 19. Plaintiffs allege that, following the acquisition, Google altered the design of the DFP ad server and allegedly tied "its DFP ad

---

[1] Plaintiffs noticed the depositions of Mr. Brin for April 3 and Mr. Pichai for April 10. On March 25, Google explained that the executives are not available on those dates. Moreover, given their schedules and other demands and responsibilities, Mr. Pichai and Mr. Brin would not be available to sit for deposition before the close of fact discovery in this case.

server to its AdX exchange." *Id.*; *see also id.* ¶ 257 (discussing alleged restrictions imposed "[a]fter Google's acquisition of DoubleClick"). Crucially, Plaintiffs do not allege that the acquisition itself was anticompetitive. Instead, they assert that Google's alleged monopolization began *following* the acquisition. *See id.* ¶¶ 245-46 ("Google entered the publisher ad server market by acquiring DoubleClick in 2008. . . . Soon thereafter, Google began pursuing an unlawful strategy to monopolize the market for publisher ad servers."). The FAC's section on "anticompetitive effects" does not mention the acquisition at all. *See id.* ¶ 505 (alleging that Google foreclosed competition in an alleged publisher ad server market by "tying its DFP ad server to its AdX exchange and engaging in a scheme to 'kill' header bidding"); ¶ 512 (alleging that Google foreclosed competition in an alleged ad exchange market through various alleged conduct but not the DoubleClick acquisition). Nor do Plaintiffs' Counts I-IV mention the acquisition. Plaintiffs also do not mention DoubleClick at all in their deceptive trade practices claims.

        **2.**     **Plaintiffs' Allegations Regarding the Network Bidding Agreement**

Plaintiffs' claim that the Google/Facebook Network Bidding Agreement violated Section 1 of the Sherman Act has been dismissed. Opinion and Order at 20, *In re Google Digit. Advert. Antitrust Litig.*, No. 21-md-3010 (S.D.N.Y.), ECF No. 308. Plaintiffs continue to assert that the agreement was part of an alleged "scheme to 'kill' header bidding" resulting in monopolization or attempted monopolization. As for Plaintiffs' DTPA claims, Plaintiffs allege that the agreement undermines Google's representation that "all participants in the unified auction, including Ad Exchange and third-party exchanges, compete equally for each impression on a net basis." *See* FAC ¶ 587; *see also* Google Ad Manager Help, How Open Bidding works, https://support.google.com/admanager/answer/7128958?hl=en.

3

### 3. Purported Relevance of Mr. Brin and Mr. Pichai

On March 29, 2024, Plaintiffs identified the following threadbare "sampling of documents" to support their deposition requests. None suggests that Google's CEO or co-founder has unique information relevant to this case that cannot be obtained through less intrusive means. Instead, the documents reflect, at most, that Mr. Brin and Mr. Pichai were one of several contributors to documents or email communications that mention either the DoubleClick acquisition or Facebook NBA.

#### a. *Documents Concerning Mr. Brin*

- GOOG-TEX-01068770 (attached as Ex. A): A 2007 email chain involving numerous people regarding DoubleClick. Mr. Brin replies that Google should do the deal, agrees with making a higher offer, and suggests a number in response to a proposal from others on the team.

- GOOG-NE-01787563 (attached as Ex. B):[2] A 2007 presentation sent to Mr. Brin, among others, assessing a potential deal with DoubleClick. Nothing in the deal presentation suggests unique involvement from Mr. Brin.

#### b. *Documents Concerning Mr. Pichai*

- GOOG-DOJ-AT-01901774 (attached as Ex. C) and GOOG-AT-MDL-016678498 (attached as Ex. D): Two versions of a promotion application from a Google employee who worked on the NBA. The author references a "*Plan* for Sept 2018 - more VP/SVP reviews and BC Deal review of contract, then send to Sundar Pichai for final approval[.]" Ex. D at -501 (emphasis added).

- GOOG-DOJ-19087611 (attached as Ex. E): A 2008 email from Mr. Pichai, before he became Google's CEO in 2015, sharing an outline proposed by the "board slides team." One of the fourteen proposed topics is "DoubleClick - Update and product

---

[2] Plaintiffs identified GOOG-NE-01787563. Exhibit B (GOOG-DOJ-01823992) is a production of the same document with the GOOG-DOJ Bates prefix.

4

integration plans and time-lines." It is obvious from the face of the email that Mr. Pichai was one of several people involved with a section of an outline for a board presentation, and that so many people were involved, the "board slides team" used an email alias. *See* Ex. E ("The board slides team comprising Biz Ops with [names two people] and Product with [names three people] has been reconstituted to work on the product/eng section of the board slides. . . . We are also closely in touch with [name] and team on all of this[.] As before you can reach all of us at [alias][.]").

- GOOG-DOJ-28505483 (attached as Ex. F): Emails to and from Mr. Pichai exchanging numerous draft suggested highlights and lowlights for Q1 2008 for a board presentation based on multiple sources. A revised version, reflecting input from another Google employee, includes a generic reference to the DoubleClick acquisition as one of roughly twenty highlights. *See* Ex. F ("Closed DoubleClick acquisition after receiving unconditional clearance from the EC; Integration of DoubleClick proceeding according to plan. First day of business 4/7.").

- GOOG-DOJ-16537020 (attached as Ex. G): A 2008 email from Mr. Pichai, as part of an email chain, discussing a new feature from Microsoft that allows users to block third-party content on sites and noting it could potentially impact numerous Google products, as well as third-party ad servers like DoubleClick's ad server. There are at least eight other people on the email chain.

**B.  Legal Standard**

The law imposes limits on deposing high-ranking executives. "The oral deposition of a high level corporate executive should not be freely granted when the subject of the deposition will be only remotely relevant to the issues of the case." *Computer Acceleration Corp. v. Microsoft Corp.*, No. 9:06-CV-140, 2007 WL 7684605, at *1 (E.D. Tex. June 15, 2007). In addition, "the Fifth Circuit has recognized the need for first utilizing less-intrusive

5

means before taking an apex deposition, by way of deposing lesser ranking employees." *Motion Games, LLC v. Nintendo Co., Ltd.*, No. 6:12-cv-878-JDL, 2015 WL 11143486 at *1 (E.D. Tex., Mar. 18, 2015) (citing *Salter v. Upjohn Co.*, 593 F.2d 649 (5th Cir. 1979)). "[U]nless a high level executive has unique personal knowledge about the controversy, the court should regulate the discovery process to avoid oppression, inconvenience, and burden to the corporation and to the executive." *Computer Acceleration*, 2007 WL 7684605, at *1.

If a party fails to comply with these standards, Rule 26 authorizes "[a] party or any person from whom discovery is sought" to seek a protective order for "good cause" "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." *Id.* at 26(c)(1). The party seeking a protective order "bears the burden of showing that a protective order is necessary." *EEOC v. BDO USA*, 876 F.3d 690, 698 (5th Cir. 2017).

### C. Argument

The Court should issue a protective order prohibiting Plaintiffs from deposing Messrs. Brin and Pichai because: (1) Plaintiffs cannot show that Messrs. Brin or Pichai possess unique personal knowledge relevant to the case, and (2) Plaintiffs have not exhausted less-intrusive means to obtain the information that they purportedly seek.

#### 1. Plaintiffs cannot show that Messrs. Brin or Pichai possess unique personal knowledge relevant to the case.

Plaintiffs must but cannot show that either executive possesses "unique personal knowledge" relevant to the case. *Computer Acceleration*, 2007 WL 7684605, at *1. Any information that Messrs. Brin and Pichai may have about Google's acquisition of DoubleClick would be neither relevant nor unique.

Neither Mr. Brin nor Mr. Pichai was intimately involved in the DoubleClick acquisition or the subsequent product development at issue in this case. Plaintiffs do not allege that the acquisition was itself anticompetitive; instead, they argue that following the acquisition, Google subsequently used or altered the DoubleClick ad server in ways that they

6

contend are anticompetitive. *See, e.g.*, FAC ¶¶ 245-46 ("Google entered the publisher ad server market by acquiring DoubleClick in 2008. . . . **Soon thereafter**, Google began pursuing an unlawful strategy to monopolize the market for publisher ad servers." (emphasis added)). At the time of the acquisition, Mr. Pichai worked on the team responsible for developing and launching Google's Chrome browser. The development of the Chrome browser in 2008 is not an issue in this case. Mr. Brin was president of Google at that time. Google has produced a few emails in which Mr. Brin expressed a view on the price Google might offer for DoubleClick. But Google's valuation of DoubleClick is not at issue in this case, nor is it a matter uniquely within Mr. Brin's knowledge. Plaintiffs have not explained—nor can they—how Messrs. Brin and Pichai have unique information about the terms of this 2008 acquisition, let alone that the terms of the acquisition are somehow relevant to this case, which focuses on conduct subsequent to the acquisition. *Computer Acceleration*, 2007 WL 7684605, at *1 (finding apex depositions "should not be freely granted when the subject of the deposition will be only remotely relevant to the issues of the case"); *see also Crosby v. La. Health Serv. & Indem. Co.*, 647 F.3d 258, 262, 264 (5th Cir. 2011) ("Rule 26(b) has never been a license to engage in an unwieldy, burdensome, and speculative fishing expedition" (citation omitted)).

The DoubleClick acquisition and later product development also involved numerous individuals at both DoubleClick and Google. Plaintiffs already have access to deposition transcripts of many of those individuals, who were asked questions about the acquisition and subsequent product development. *See, e.g.*, Nov. 3, 2023 MDL Dep.; GOOG-AT-MDL-007173923 (Oct. 28, 2021 DOJ Dep.); GOOG-AT-MDL-007178292 (Aug, 12, 2021 DOJ Dep.) (product manager who joined Google and continued working on the integration and development of DoubleClick products); GOOG-AT-MDL-007169640 (Oct. 2, 2020 DOJ Dep.). Numerous other witnesses—including those that Plaintiffs have already

deposed or have the opportunity to depose—have more in-depth knowledge of the integration of DoubleClick products and later product development.

With respect to the NBA, Plaintiffs allege in their complaint that Mr. Pichai personally signed off on the deal and now point to one Google employee's notes to prepare for a *promotion application* suggesting a *plan* to send the deal to Mr. Pichai for review. The allegation that Mr. Pichai signed off on the deal is false, as demonstrated by the discovery Google has already provided to Plaintiffs. Mr. Pichai did not sign the contract, and Google has produced evidence demonstrating that he was given an "FYI" regarding the deal but explicitly did not need to approve of, sign off on, or take any action regarding it. *See* GOOG-DOJ-10497041, attached as Exhibit H.[3] There is also no suggestion that he has any *unique* knowledge of the deal or its terms. And, as with the DoubleClick acquisition, Plaintiffs already have access to significant witness testimony regarding the NBA. *See, e.g.*, GOOG-AT-MDL-007173923 (Oct. 28, 2021 DOJ Dep.); GOOG-AT-MDL-007177356 (Oct. 6, 2021 DOJ Dep.); GOOG-AT-MDL-007178559 (Sept. 28, 2021 DOJ Dep.); GOOG-AT-MDL-007174888 (Aug. 10, 2021 DOJ Dep.); GOOG-AT-MDL-007179591 (Jul. 21, 2021 DOJ Dep.); GOOG-AT-MDL-007170602 (Oct. 26, 2020 DOJ Dep.). Many other Google witnesses have far more personal knowledge of the deal's terms and Google's business reasons for entering into it.

Finally, during meet-and-confers, Plaintiffs did not claim a need to take Mr. Pichai's deposition regarding Google's Privacy Policy. For good reason: Mr. Pichai's knowledge of Google's Privacy Policy and Google's practices with respect to user data is obviously not unique. Plaintiffs have received significant discovery regarding Google's practices with respect to user data. They have identified no additional evidence they would seek from Mr. Pichai, let alone any information uniquely within his knowledge.

---

[3] Google identified this document for Plaintiffs on a March 27, 2024 meet and confer.

To the extent that Plaintiffs contend that they do not already have adequate discovery on these points (a point that Google vigorously disputes), Plaintiffs have the option to notice depositions of current or former Google employees and specifically those with personal knowledge of these issues. They have not identified—and cannot identify—any *unique* knowledge of either apex witness.

### 2. Plaintiffs are not entitled to depose Messrs. Brin or Pichai because they have not exhausted less-intrusive means.

An alternative but equally sufficient grounds for issuing a protective order is that Plaintiffs have not exhausted less-intrusive means to obtain additional information about the DoubleClick acquisition and the NBA. *See Motion Games, LLC*, 2015 WL 11143486, at *1 ("[T]he Fifth Circuit has recognized the need for first utilizing less-intrusive means before taking an apex deposition[.]" (citing *Salter*, 593 F.2d at 649)).

As noted above, Plaintiffs could notice the depositions of other witnesses who were actually involved in or responsible for the acquisition, product development, or NBA. Plaintiffs have also included these issues in their omnibus 30(b)(6) deposition notice to Google. Out of the 107 expansive topics noticed, Topic 66 is "Google's acquisition of DoubleClick and any exclusive access or rights afforded to AdX after and as a result of that acquisition." Topic 97 is "Any analysis conducted by or for You in connection with having Meta/Facebook use Open Bidding, including analysis of the minimum spend commitment needed to deter Meta/Facebook from using Header Bidding in a significant way, as well as any concerns You had or expressed (internally or externally) regarding Facebook potentially partnering with Amazon to use Header Bidding."[4] Google has already designated a witness to testify about the real-time interoperation of DFP and AdX through 2020 (Topic 66) and analysis conducted (if any) in connection with having Meta/Facebook use Open bidding, including analysis (if any) "of the minimum spend commitment needed to deter

---

[4] The NBA related to Facebook's participation in Open Bidding.

9

Meta/Facebook from using Header Bidding in a significant way" (Topic 97). The deposition is scheduled for April 19. This 30(b)(6) deposition, as well as 30(b)(1) depositions of individuals with more direct knowledge, provide less-intrusive opportunities for Plaintiffs to obtain additional information.

## II. PLAINTIFFS SHOULD NOT BE PERMITTED TO DEPOSE MR. MOHAN.

### A. Factual Background

On November 19, 2020, Mr. Mohan was deposed for nearly seven hours as part of the DOJ's and the Texas AG's coordinated pre-suit investigations, a deposition attended by counsel for Plaintiffs, Trevor Young, Texas Attorney General, Deputy Division Chief of the Antitrust Division. *See* Ex. I; Ex. J; GOOG-AT-MDL-007176156 (Nov. 19, 2020 Depo.).

In August 2021, Plaintiffs' action was transferred from this Court to the Southern District of New York for centralized pretrial proceedings before Judge Castel, in part, to "promote the just and efficient conduct of the litigation by eliminating duplicative discovery[.]" *See In re Digital Advertising Antitrust Litig.*, 555 F. Supp. 3d 1372, 1373-75 (J.P.M.L. 2021). On June 2, 2023, Judge Castel entered the Coordination Order, which permitted Plaintiffs to access discovery (including depositions) taken in the related Virginia case. *See* MDL ECF No. 564 ¶ 3.f. The Coordination Order expressly provided that any current or former employee of Google deposed in either of the coordinated cases, *i.e.*, the Virginia case or the MDL, during the Coordinated Discovery Period[5] "cannot be compelled to sit for a second deposition" absent good cause shown. MDL ECF No. 564 ¶ 3.e.

Mr. Mohan was deposed for a second time in the Virginia case. Plaintiffs had every opportunity to participate and chose not to. The Virginia Plaintiffs first noticed Mr. Mohan's deposition on July 14, 2023. Ex. K. Plaintiffs cross-noticed Mr. Mohan's deposition on July 19, 2023, with Plaintiffs' counsel at the Lanier Law Firm as a signatory to the cross-notice.

---

[5] Depositions of Google witnesses taken before November 15, 2023 are within the Coordinated Discovery Period. *See* MDL ECF No. 564 ¶ 1.c; EDVA ECF No. 440 ¶ 2.

Ex. L. On August 22, 2023, Plaintiffs withdrew their cross-notice. The Virginia Plaintiffs later amended their deposition notice on October 10 and 19, 2023. *See* Exs. M & N. Plaintiffs chose not to re-issue a cross-notice of Mr. Mohan's deposition. Mr. Mohan was ultimately deposed on October 30, 2023, for a full seven hours. Plaintiffs chose not to participate in his deposition, but did cross notice and subsequently participate in two other Google witness depositions on November 10 and 14-15, with the Lanier Law Firm appearing at both depositions.

Plaintiffs noticed a third deposition of Mr. Mohan on March 19, 2024, and the parties conferred on March 29, 2024. Google asked Plaintiffs to explain their basis for noticing another deposition of Mr. Mohan. Plaintiffs' only response was that they are not bound by the Coordination Orders because the instant action is no longer a Coordinated Case. *See* Ex. O. Google also asked what additional information Plaintiffs were seeking from Mr. Mohan that would not be duplicative of his prior depositions. Plaintiffs have not articulated *any* specific information that they are seeking from Mr. Mohan. Plaintiffs reference only that Google produced additional documents after Mr. Mohan's deposition, but have not explained what new information those documents contained that justifies re-deposing Mr. Mohan. Ex. O.

### B. Legal Standard

Federal Rule of Civil Procedure 26(b)(2)(C) prohibits discovery that is, "unreasonably cumulative or duplicative" or where "the party seeking discovery has had ample opportunity to obtain the information by discovery in the action." A party must obtain leave of court to depose a witness more than once, and such leave may only be granted if doing so is consistent with Rule 26(b)(1) and (2). FED. R. CIV. P. 30(a)(2)(A)(ii). Courts apply a good cause standard when deciding whether to grant leave. *Kleppinger v. Texas Dept. of Transp.*, 283 F.R.D. 330, 335 n.7 (S.D. Tex. 2012); *Morrison v. Stephenson*, 2008 WL 145017 at *4

(S.D. Ohio Jan. 10, 2008). Typically good cause to subject a witness to another deposition exists only "where new information comes to light triggering questions that the discovering party would not have thought to ask at the first deposition." *Kleppinger,* 283 F.R.D. at 333; *see also Chevron v. Aker Maritime, Inc.*, 2007 WL 1558710 at *1 (E.D. La. May 30, 2007) (disallowing second deposition after finding "nothing 'new'" in documents produced after first deposition). And even "[w]here the deposition is reopened because of newly discovered information, the questioning of the witness is limited to those questions relating to the newly produced information." *Kleppinger,* 283 F.R.D. at 333.

    **C.**    **Argument**

Plaintiffs cannot show good cause to subject Mr. Mohan to another deposition given the nearly fourteen hours of testimony from Mr. Mohan available to Plaintiffs and their decision to forego questioning him when he was last deposed. Plaintiffs have further pointed to no new information that would justify deposing Mr. Mohan again. A further deposition of Mr. Mohan would be unreasonably cumulative and duplicative and unduly burdensome.

    **1.**    **Subjecting Mr. Mohan to another deposition would be unreasonably cumulative and duplicative and unduly burdensome.**

Mr. Mohan has already been deposed on the subject matter of Plaintiffs' complaint for nearly fourteen hours. On October 30, 2023, Mr. Mohan sat for a full seven hours of deposition and testified on a broad range of topics that underlie the key allegations in Plaintiffs' complaint.[6] In November 2020, Mr. Mohan also was deposed for nearly seven hours during the DOJ's and Plaintiffs' coordinated pre-suit investigations, which counsel for the State of Texas attended.

---

[6] Mr. Mohan was deposed on the Doubleclick acquisition, the integration of Doubleclick's ad server into Google's ad server, Google's display strategy, Dynamic Allocation, display advertising and how its defined, and his role as Senior Vice President of Display and Video Ads at Google from 2009 to 2015, among other topics.

Plaintiffs also have access to over 30 pre-suit Google deposition transcripts and 21 Google deposition transcripts from the Virginia and MDL cases. During those prior Google depositions, the witnesses provided testimony concerning the allegations in Plaintiffs' Complaint, including on many of the same topics that Mr. Mohan testified about. Indeed, many of the other deposed witnesses were part of the same Google business (and, prior to that, DoubleClick business) during the same time as Mr. Mohan.[7] Moreover, Plaintiffs have noticed the depositions of another 14 Google witnesses in this case, including a corporate witness for which Plaintiffs have issued a voluminous 30(b)(6) notice containing 107 topics.

Given the extensive deposition testimony from Mr. Mohan and other Google witnesses available to Plaintiffs, Mr. Mohan should not be deposed again, especially considering his role as the CEO of YouTube and the undue burden he would experience sitting for a deposition for a third time. *See Block v. Abbott Laboratories, Inc.*, 2001 WL 1539159, at *3 (N.D. Ill. Dec. 3, 2001) (disallowing CEO deponent to be re-deposed, noting Plaintiffs could not identify what relevant information the CEO deponent had "that other employees [did] not possess" and that Plaintiffs had not "already discovered").

    **2.** **Plaintiffs were required and had ample opportunity to question Mr. Mohan when he was deposed in October 2023 but decided to forego that opportunity.**

Plaintiffs should not be permitted to subject Mr. Mohan to yet another deposition because they had every opportunity, and indeed an obligation, to question Mr. Mohan as part of the MDL, when he was deposed in October 2023, but chose not to. *See Block*, 2001 WL 1539159 at *3 (prohibiting second deposition of CEO who was previously deposed in related action under an "Agreed Discovery Plan").

---

[7] *See, e.g.*, GOOG-AT-MDL-007178292 (Aug. 12, 2021 Dep.); GOOG-AT-MDL-007174558 (Oct. 20, 2020 Dep.); GOOG-AT-MDL-007169640 (Oct. 2, 2020 Dep.); GOOG-AT-MDL-007172126 (Nov. 6, 2020 Dep.).

The Coordination Order prohibits a Google witness deposed in either of the coordinated cases from being deposed twice absent good cause shown. MDL ECF No. 564 ¶ 3.e. Plaintiffs initially cross noticed Mr. Mohan's deposition on July 19, 2023, *see* Ex. L,[8] but subsequently withdrew their cross-notice on August 22, 2023. Plaintiffs had opportunities to re-cross-notice Mr. Mohan after the Virginia Plaintiffs served amended deposition notices of Mr. Mohan on October 10 and 19, but still declined. In contrast, Plaintiffs cross-noticed the depositions of two other Google witnesses on October 10, 2023 and participated in their depositions in November 2023, *after* Mr. Mohan was deposed. Plaintiffs' actions show they fully understood that they were bound by the Coordination Order and were taking advantage of it to depose witnesses when Mr. Mohan was noticed and deposed, and therefore cannot deny that fact now.[9]

### 3. Plaintiffs have not pointed to any new information justifying an additional deposition of Mr. Mohan.

Plaintiffs have not pointed to any new information learned since October 30, 2023, that they could not otherwise have questioned Mr. Mohan on when he was previously deposed. *See Chevron v. Aker Maritime, Inc.*, 2007 WL 1558710 at *1 (E.D. La. May 30. 2007) ("There is nothing "new" that would prompt [the witness's] re-deposition."); *Woodall v. Walt Disney Co.*, 2023 WL 8042737 at *4-5 (C.D. Cal. Oct. 24, 2023) (affirming finding that Plaintiff failed to show good cause to re-depose witness based on subsequently produced documents).

---

[8] Notably, Plaintiff's counsel, Zeke DeRose III, signed both the July 19th cross-notice and Mr. Mohan's deposition notice at issue in this motion. *See Block v. Abbott Laboratories, Inc.*, at *n.2 (finding notable that Plaintiff's attorney was involved in both cases which were subject to the "Agreed Discovery Plan").

[9] Plaintiffs have consistently taken the position that this case was remanded to Texas after the Remand Order was entered on November 1, 2023. *See* Ex. P ("As you are aware, the *Texas v. Google* case was remanded on November 1, 2023 and at that point the State Plaintiffs were no longer part of the MDL[.]"); ECF No. 151 at 1-2 ("Yesterday, the United States District Court for the Southern District of New York transferred the case back to Your Honor's Court. *See* November 1, 2023 Order.").

Plaintiffs assert they "received Google productions containing relevant documents associated with Mr. Mohan after his deposition in October 2023." *See* Ex. O. But those documents constitute less than 2% of the total documents produced from Mr. Mohan's custodial file, and Plaintiffs have failed to point to a single document that contains new information that has not already been covered by the prior depositions of Mr. Mohan or other Google witnesses.[10] "The mere fact that documents are produced after a deposition is by no means automatic grounds for a second deposition. The discovery materials must reveal 'new' information that was previously unknown and could not have been addressed at the prior deposition." *PlayUp, Inc. v. Mintas*, 344 F.R.D. 429, 436 (D. Nev. 2023) (citation omitted).

Moreover, the fact that the Plaintiffs' DTPA claims were stayed in the MDL is no basis for deposing Mr. Mohan again because the alleged conduct underlying Plaintiffs' DTPA claims is the very same conduct underlying their antitrust claims. *See* FAC ¶¶ 526-97.

## III. CONCLUSION

Plaintiffs have not met the rigorous requirements for deposing an apex witness. Plaintiffs cannot show that Messrs. Brin or Pichai possess unique personal knowledge relevant to the case. Plaintiffs have also failed to exhaust less-intrusive means. To protect against oppression, inconvenience, and burden, Google respectfully requests that this Court issue a protective order prohibiting the depositions of Mr. Pichai and Mr. Brin.

In addition, to protect against undue burden, Google respectfully requests that this Court issue a protective order prohibiting yet another deposition of Mr. Mohan on the very same issues he has previously been deposed on.

---

[10] To the extent the Court finds these purportedly "relevant documents associated with Mr. Mohan" to be sufficient to establish good cause, the Court should require Plaintiffs to "identify and produce those newly-produced documents" they intend to rely on in the deposition and limit the duration of the additional deposition. *See Alexander v. Martin*, 2010 WL 11531257 at *3 (E.D. Tex. Jun. 29, 2010).

<table>
<tr><td>Dated: April 9, 2024</td><td>Respectfully submitted,</td></tr>
</table>

Dated: April 9, 2024

Respectfully submitted,

*/s/ R. Paul Yetter*
R. Paul Yetter
State Bar No. 22154200
YETTER COLEMAN LLP
811 Main Street, Suite 4100
Houston, Texas 77002
(713) 632-8000
pyetter@yettercoleman.com

Eric Mahr (*pro hac vice*)
FRESHFIELDS BRUCKHAUS DERINGER LLP
700 13th Street NW, 10th Floor
Washington, DC 20005
(202) 365-5319
eric.mahr@freshfields.com
ATTORNEY FOR DEFENDANT GOOGLE LLC

**CERTIFICATE OF SERVICE**

I certify that on April 9, 2024, this document was filed electronically in compliance with Local Rule CV-5(a) and served on all counsel who have consented to electronic service, per Local Rule CV-5(a)(3)(A).

*/s/ R. Paul Yetter*
R. Paul Yetter

**CERTIFICATE OF CONFERENCE**

I certify that on this 9th day of April 2024, counsel has complied with the meet and confer requirement of Local Rule CV-7(h).  Specifically, Google (Paul Yetter, Justina Sessions, Mollie Bracewell) conferred by telephone with Plaintiffs counsel (Geraldine Young) on March 25, 2024.  Google (Justina Sessions, Mollie Bracewell) conferred by telephone with Plaintiffs counsel (Geraldine Young) again on March 27, 2024. Plaintiffs refused to withdraw their deposition notices to Messrs. Brin and Pichai, leaving the parties at an impasse.

Google (Daniel Bitton, Kenina Lee, and Allison Vissichelli) additionally conferred by telephone with Plaintiffs' counsel (Geraldine Young) on March 29, 2024 regarding Plaintiffs' deposition notice of Neal Mohan.  The parties further corresponded by email  regarding Mr. Mohan's deposition notice on March 29, 2024, April 2, 2024, and April 4, 2024. Based on the parties' meet and confer and subsequent correspondence, the parties are also at impasse with respect to Plaintiffs' deposition notice on Mr. Mohan.

/s/ *R. Paul Yetter*
R. Paul Yetter