IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| THE STATE OF TEXAS, et al., | § § § | |
| Plaintiffs, | § | |
| v. | § | Civil Action No. 4:20-cv-00957-SDJ |
| | § | |
| GOOGLE LLC, | § § | |
| Defendant. | § § | |

# **CORRECTED MEMORANDUM IN SUPPORT OF GOOGLE LLC'S MOTION FOR A PROTECTIVE ORDER**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................... 1

BACKGROUND ................................................................................................................. 1

LEGAL STANDARD .......................................................................................................... 3

ARGUMENT ....................................................................................................................... 4

    I. THE COURT "MUST LIMIT" THE DISCOVERY-ON-DISCOVERY SOUGHT BY PLAINTIFFS BECAUSE IT IS "OUTSIDE THE SCOPE PERMITTED BY RULE 26(b)(1)." ............................................................................................................... 4

    II. THE COURT "MUST LIMIT" THE DISCOVERY-ON-DISCOVERY SOUGHT BY PLAINTIFFS BECAUSE THEY "HAD AMPLE OPPORTUNITY TO OBTAIN THE INFORMATION BY DISCOVERY IN THE ACTION." ........................................... 7

    III. THE COURT SHOULD PROHIBIT THE DEPOSITION OF GOOGLE'S IN-HOUSE LAWYER FOR THE ADDITIONAL REASON THAT PLAINTIFFS DO NOT MEET THE SHELTON TEST CRITERIA ............................................................................... 9

CONCLUSION .................................................................................................................. 12

**PRELIMINARY STATEMENT**

Plaintiffs should not be allowed to seek vast discovery-on-discovery given there is no basis for doing so in this case. They are attempting to import issues from other cases that have no bearing on any of the issues here. It is telling that even at this late date in discovery that Plaintiffs concede they have no evidence that there has been any issue with Google's discovery collection, review, or production that would warrant such requests for discovery-on-discovery that goes far beyond relevant, proportional discovery.

**BACKGROUND**

The Federal Rules of Civil Procedure mandate that a district court "must limit the frequency or extent of discovery otherwise allowed" if the discovery sought "is outside the scope permitted by Rule 26(b)(1), if it determines that the discovery sought is "unreasonably cumulative or duplicative," or if the party seeking discovery "has had ample opportunity to obtain the information." Fed. R. Civ. P. 26(b)(2)(C). Plaintiffs' latest round of discovery-on-discovery requests—served as recently as last week—run afoul of Federal Rule 26(b)(2)(C). As a result, Google now brings this motion seeking a protective order barring Plaintiffs from pursuing the discovery-on-discovery they request in Exhibit A (Interrogatories), Exhibit B (Requests for Production), Exhibit C (30(b)(6) deposition topics), and the deposition of Google's in-house counsel.

Upon remand, Plaintiffs pressed for a fact discovery period that would have ended in February 2024—two months ago—on the argument that Plaintiffs were ready to go to trial.[1] But even now, in April 2024, Plaintiffs continue to issue more discovery requests. Having amassed massive amounts of discovery from Google, Plaintiffs' post-remand requests have expanded to encompass discovery-on-discovery of collateral issues in an effort to import the discovery record

---
[1] ECF No. 189 (Dec. 14, 2023 Hr'g Tr.) at 30:10-14.

of other unrelated cases—such as the *Play* case[2]—into this case. *See* Ex. B, RFP Nos. 119, 130, 131, 133, 134. This Court has previously stated that its assessment of this case will depend not on "what anybody has done in other cases," but "what's happening in this case, and . . . the parties' actions in this case."[3]

Google has met its discovery obligations in this case at every turn. In response to over 600 Requests for Production,[4] Google produced more than 6.2 million documents by running more than 200 search terms over the files of more than 170 custodians and conducting extensive searches of centrally stored files. Google also produced 200 terabytes of data comprising more than 40 distinct datasets. This includes custom transaction-level datasets that required the involvement of more than 20 Google engineers over six months to create bespoke data pipelines. Plaintiffs then sought access to dashboards, which Google is producing as well.

Google made available more than 81 gigabytes of source code for inspection. The broad scope of the source code encompasses the code for bidding, auction algorithms, and ad tech products at issue in the case. Plaintiffs have inspected the code more than 45 times so far. Google has recently supplemented that production, including by manually decoding encrypted data tables that Plaintiffs assert are relevant to their analysis.

Discovery in this litigation is set to close in just over three weeks. But just last week, on April 3, 2024, Plaintiffs issued over a dozen Interrogatories and Requests for Production ("RFPs") related to document preservation issues, none of which are justified by the circumstances of *this* case. *See* Exs. A, B. Plaintiffs have also issued a sprawling 30(b)(6) deposition notice with 107 broad and detailed topics (including subparts), nine of which target

---

[2] *Epic Games, Inc. v. Google LLC*, No.3:20-cv-05671 (N.D. Cal.) ("*Play*").
[3] ECF No. 189 at 30:9-14.
[4] Plaintiffs issued more than 200 RFPs in the pre-suit investigation, over 300 RFPs while in the MDL, and over 100 RFPs since this case has been remanded to this Court.

2

discovery-on-discovery.[5]  *See* Ex. C.  Moreover, Plaintiffs are seeking to take the deposition of an in-house counsel who is not a custodian and has had no direct involvement in events at issue in this case.  As set forth below, these discovery-on-discovery requests are not permitted under Federal Rule 26(b)(2)(C) and case law concerning depositions of counsel.

## LEGAL STANDARD

Litigants may obtain "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense."  Fed. R. Civ. P. 26(b)(1).  But the discovery sought must be "proportional to the needs of the case," which in turn requires the Court to consider, among other things, "the importance of the discovery in resolving the issues," and "whether the burden or expense of the proposed discovery outweighs its likely benefit."  *Id.*  A court "must limit the frequency or extent of discovery otherwise allowed" if it determines that: (1) the discovery sought is cumulative or duplicative; (2) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (3) the proposed discovery is outside the scope permitted by Rule 26(b)(1).  Fed. R. Civ. P. 26(b)(2)(C).[6]

To warrant discovery-on-discovery, courts require that parties "make [a] showing of a specific or material deficiency in the other party's production."  *VeroBlue Farms USA Inc. v. Wulf*, 2021 WL 5176839, at *9 (N.D. Tex. Nov. 8, 2021); *see also* MDL ECF. No. 725 ("When

---

[5] These topics are far afield from the depositions of records custodians that the Court proposed to the parties to resolve technical production questions.  *See* Feb. 15, 2024 Hr'g Transcript at 24-25 (Court: "[T]here is a lot of back and forth, but I'll say maybe more so on the States' side, in terms of talking about issues with regard to things like the dashboards, things like some of the I guess you would call it the technical documents and those materials… And in order to approach these types of areas of discovery most efficiently -- and I think this goes both ways. . . . But I would at least suggest that the parties think about records custodian depositions.").

[6] *See Carroll v. Variety Children's Hosp.*, 2007 WL 2446553, at *2 (E.D. Tex. Aug. 23, 2007) (denying "cumulative and duplicative" discovery); *Wade v. Westinghouse Lighting Corp.*, 2013 WL 12136608, at *5 (E.D. Tex. June 4, 2013) (granting protective order where "plaintiffs were given ample opportunity" to obtain the discovery demanded); *Alvarado v. State Farm Lloyds*, 2015 WL 12941979, at *4 (S.D. Tex. Jan. 29, 2015) (granting protective order against requested information "outside the proper scope of discovery").

3

the discovery sought is collateral to the relevant issues (i.e., discovery-on-discovery), the party seeking the discovery must provide an 'adequate factual basis' to justify the discovery, and the Court must closely scrutinize the request 'in light of the danger of extending the already costly and time-consuming discovery process *ad infinitum*.'" (citations and quotations omitted)). That is consistent with the Sedona Principles,[7] which counsel that "there should be no discovery-on-discovery, absent an agreement between the parties, or specific, tangible, evidence-based indicia (versus general allegations of deficiencies or mere 'speculation') of a material failure by the responding party to meet its obligations." Sedona Principles at 123.

Rule 26(c) provides relief from discovery that exceeds the scope permitted by Rule 26(b)(1). Courts have broad discretion, for good cause shown, to "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1); *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984) (holding the courts have "broad discretion ... to decide when a protective order is appropriate and what degree of protection is required"). This includes orders forbidding the requested discovery altogether, as well as orders modifying the requested discovery. Fed. R. Civ. P. 26(c)(1)(A); *Grey v. Dallas Indep. Sch. Dist.*, 265 F. App'x 342, 348 (5th Cir. 2008) (affirming because "[g]ranting protective orders because of impending discovery deadlines is not an abuse of discretion").

## ARGUMENT

I. **THE COURT "MUST LIMIT" THE DISCOVERY-ON-DISCOVERY SOUGHT BY PLAINTIFFS BECAUSE IT IS "OUTSIDE THE SCOPE PERMITTED BY RULE 26(b)(1)."**

Plaintiffs are seeking discovery-on-discovery across a range of topics. *See* Exs. A, B, C. Under Federal Rule 26, discovery sought must be "proportional to the needs of the case," which

---

[7] *The Sedona Principles, Third Edition: Best Practices, Recommendations & Principles for Addressing Electronic Document Production*, 19 SEDONA CONF. J. 1, 118 (2018).

in turn requires the Court to consider, among other things, "the importance of the discovery in resolving the issues and whether the burden or expense of the proposed discovery outweighs its likely benefit." Discovery-on-discovery of collateral issues is disfavored and only warranted where the party seeking the discovery has made a "showing of a specific or material deficiency in the other party's production." *VeroBlue Farms USA Inc.*, 2021 WL at *9; *see also* MDL ECF No. 725.

Plaintiffs have yet to point to any evidence in *this* case to warrant obtaining discovery-on-discovery. Instead, Plaintiffs continue to point to the *Play* case and are now seeking to import the discovery record from that case into this case. Ex. B, RFP Nos. 119, 130, 131, 134. Only as recently as today, April 9, when asked about the factual basis for pursuing discovery-on-discovery, counsel for Plaintiffs offered only speculation, articulating that such issues "may be present here." But this Court has previously stated that it is "most concerned with . . . what's happening in this case."[8] This Court's statements are consistent with Judge Castel's recent denial of MDL Plaintiffs' request for discovery-on-discovery. *See* MDL ECF No. 725.

Plaintiffs have not pointed to any reason they need to question a corporate designee related to collection of source code, as Google has agreed to Plaintiffs' requests for additional source code. *See, e.g.*, Ex. C, Topic Nos. 2, 4, 17. Nor is there any basis to seek testimony regarding "activities, practices, and policies related to [] discovery obligations," "information storage, organization, and retention practices and policies," "location, identity, and file and/or storage formats of all Documents," or "use of links in Documents." *Id*. at Topic Nos. 1, 3, 5, 16. Plaintiffs' other requests for discovery-on-discovery follow a similar pattern. *See, e.g.*, Ex. C, Topics 18, 19 (calling for testimony regarding subject matters already asked of and answered by

---

[8] ECF No. 189 (Dec. 14, 2023 Hr'g Tr.) at 30:9-14 (emphasis added).

counsel in this case); *see also* Exs. A and B. "Ordinarily and traditionally, counsel is not required to disclose the manner in which documents are collected, reviewed and produced in response to a discovery request." MDL ECF No. 725 (quotations and citations omitted).

The focus of Plaintiffs' discovery-on-discovery requests is on Google Chat related practices dating back to as far as 2007. *See, e.g.*, Ex. A, Interrogatory No. 30 (2007), Nos. 29, 31-34 (2015); *see also* Ex. B, RFP Nos. 119-120, 129-131, 133-35 (2015), 121-28, 132 (2018). But Google had no obligation to retain or preserve documents for the purposes of this case prior to the announcement of Plaintiffs' investigation in September 2019.[9] And the vast majority of conduct at issue in this case occurred prior to September 2019.[10] There is no basis for Plaintiffs to seek discovery-on-discovery prior to the existence of any retention obligation.[11]

Nor is there any basis for discovery-on-discovery after the pre-suit investigation commenced because Google promptly disclosed the relevant retention policies that Plaintiffs now seek to challenge. Plaintiffs announced their pre-suit investigation in September 2019. Over the next 15 months of that investigation, they obtained over 2 million documents from Google. In January 2020, over four years ago, Google notified Plaintiffs of the preservation practices applicable to Chat, including the distinction between a Chat marked "on the record" or "off the record," and the relationship between those settings and Google's preservation practices

---

[9] Press Release, Off. of the Att'y Gen. of Texas, Attorney General Paxton Leads 50 Attorneys General in Google Multistate Bipartisan Antitrust Investigation (Sept. 9, 2019), https://www.texasattorneygeneral.gov/news/releases/attorney-general-paxton-leads-50-attorneys-general-google-multistate-bipartisan-antitrust.

[10] *See* MDL ECF No. 541 at ¶¶ 267, 274-75, 278-79 (Dynamic Allocation allegations dating around 2010), ¶¶ 297-351; 529-32, 550 (Bernanke, Dynamic Revenue Share, and Reserve Price Optimization allegations dating from 2010-19), ¶¶ 373, 378-79, 586-89 (Exchange Bidding allegations date to March 2019), ¶¶ 385-86, 563, 566-71 (header bidding-related allegations occuring in 2017), ¶¶ 485-87, 490-94 (WhatsApp allegations occur in 2015-17).

[11] *See DeYoung v. Dillon Logistics, Inc.*, 2021 WL 523494, at *2 (E.D. Tex. Feb. 11, 2021) ("A duty to preserve evidence arises when a party reasonably anticipates litigation."); *Wireless Protocol Innovations, Inc. v. TCT Mobile (US) Inc.*, 2023 WL 4626659, at *7 (E.D. Tex. July 19, 2023) (there can be no spoliation without "the existence of a duty to preserve the evidence.").

if the employee was on a legal hold.[12] Plaintiffs confirmed their understanding that chats "are not retained in any way unless they are marked on-the-record by the user," and that if the user does not mark a chat "on-the-record" then "the unmarked ones will be deleted immediately."[13] Google responded to Plaintiffs confirming their understanding of these practices.[14]

As a result, Plaintiffs' requests for discovery-on-discovery amount to little more than a "meandering attempt to prove defendant's noncompliance with its discovery obligations." MDL ECF No 725 (quoting *246 Sears Rd. Realty Corp. v. Exxon Mobil Corp.*, 09-cv-889 (NGG) (JMA), 2011 WL 13254283, at *4 (E.D.N.Y. Apr. 1, 2011)).

Fifty months have elapsed since Google first disclosed its Chat preservation practices. In that time, Plaintiffs have amassed over 6 million documents and have had the opportunity to depose many individual Google employees about their Chat usage. But Plaintiffs have yet to point to any material issue *in this case* to justify their belated requests for discovery-on-discovery. *See Alvarado v. State Farm Lloyds*, 2015 WL at *3 (requests "not sufficiently related to the[] causes of action are considered outside the scope of discovery").

## II.  THE COURT "MUST LIMIT" THE DISCOVERY-ON-DISCOVERY SOUGHT BY PLAINTIFFS BECAUSE THEY "HAD AMPLE OPPORTUNITY TO OBTAIN THE INFORMATION BY DISCOVERY IN THE ACTION."

Plaintiffs have long been aware of Google's retention practices and its positions in this case, none of which raise any genuine concerns about Google's collection, review, or production in this case. At this late stage, with no basis for contesting Google's discovery efforts, Plaintiffs are not entitled to discovery on discovery.N

As described above, *supra* at § I, Google disclosed its chat preservation policies in January of 2020, shortly after Plaintiffs announced their investigation.

---

[12] *See* ECF No. 280-001 at 3.
[13] *See* ECF No. 280-002 at 2.
[14] *See* ECF No. 280-003 at 4.

7

While in the MDL, Plaintiffs in this case occupied two of the five seats on the MDL Discovery Steering Committee, and they led the negotiation of the ESI Order in the MDL. Over the course of ten months, the parties addressed dozens of complex ESI issues in detail.

Google made clear its position that the parties' respective preservation and collection obligations should be grounded in the Sedona Principles,[15] and repeatedly sought Plaintiffs' position on those issues. Plaintiffs did not engage in any discussion of Google's preservation practices, and did not seek to address Chat preservation despite being on notice of Google's practices and its positions.[16]

Two years ago, Plaintiffs made clear that they were monitoring the unrelated *Play* case, and have consistently sought to inject discovery issues from that case into this one.[17] Fourteen months ago, Plaintiffs issued an RFP seeking "All Documents and Communications concerning deletion and/or failure to preserve informal communications and chats in relation to any actual or potential antitrust action." Google agreed to meet and confer; Plaintiffs never moved to compel.[18] And two years ago, Plaintiffs first raised various criticisms of Google's privilege practices with Judge Castel. MDL ECF No. 273 at 6; *see also* Ex. B, RFP No. 125 (seeking discovery-on-discovery regarding privilege practices). Since remand, Plaintiffs have continued to reference the *Play* case at every opportunity.[19] And beginning in December 2023, they foreshadowed the need to address unspecified "issues" concerning Google's production of Chat

---

[15] Judge Castel stated that, when considering these complex ESI issues, the Sedona Principles should be "front and center." MDL ECF No. 481 at 6:2-4.

[16] During ESI negotiations, Google repeatedly sought Plaintiffs' views on a range of complex ESI preservation issues. But Plaintiffs did not engage, despite months of chasing from Google. *See, e.g.*, ECF No. 246, Exs. N, O.

[17] MDL ECF No. 273 at 6.

[18] Google has produced its Chats retention policies to Plaintiffs in discovery and listed them in Google's letter of March 1, 2024. *See* ECF No. 280-007.

[19] *See, e.g.*, Hr'g Tr. at 15:2-11 (Nov. 20, 2023); ECF No. 271 at 2-3; Ex. B, RFP Nos. 119, 130, 131, 133, 134.

8

messages.[20]  *Last week* Plaintiffs issued a slew of new Interrogatories and RFPs targeting discovery-on-discovery concerning matters of which they have been on notice for several years, even though they still cannot point to any legitimate concerns with Google's discovery responses.[21]  They should be barred from doing so.[22]

**III.  THE COURT SHOULD PROHIBIT THE DEPOSITION OF GOOGLE'S IN-HOUSE LAWYER FOR THE ADDITIONAL REASON THAT PLAINTIFFS DO NOT MEET THE *SHELTON* TEST CRITERIA.**

Plaintiffs are seeking to take the deposition of an in-house Google attorney who is not a custodian in this case, who Plaintiffs have never sought to add as a custodian in this case, who is not mentioned in the operative Complaint (or any prior version of the Complaint), and who has had no substantive involvement in the events at issue in this case.  In assessing whether to permit depositions of counsel, the Fifth Circuit has cited with approval the three-prong test established by the Eighth Circuit in *Shelton v. American Motors Corporation*, 805 F.2d 1323 (8th Cir. 1986); *see Nguyen v. Excel Corp.*, 197 F.3d 200, 209 (5th Cir. 1999) (citing, with approval, the *Shelton* test).[23]  Under that test, depositions of counsel are prohibited unless the party seeking to take the deposition can establish that "(1) no other means exist to obtain the information, (2) the

---

[20] ECF No. 176.

[21] Plaintiffs in the MDL—which still has almost three months of fact discovery remaining—recently sought to compel Google to respond to a much smaller set of interrogatories seeking discovery-on-discovery designed to facilitate further discovery requests.  Judge Castel denied that request on the basis that Plaintiffs had not shown a proper foundation for discovery-on-discovery.  MDL ECF. No. 725 (denying discovery-on-discovery and finding that "invasive discovery on a collateral issue is unwarranted").

[22] *See Turnage v. Gen. Elec. Co.*, 953 F.2d 206, 209 (5th Cir.1992) (affirming denial of plaintiff's request to conduct potentially dispositive discovery given "the impending discovery deadline, and … [plaintiff's] failure to request an inspection earlier."); *see also Alvarado v. Air Sys. Components LP*, 2022 WL 800731, at *5 (N.D. Tex. Mar. 15, 2022) (granting protective order as to discovery which plaintiff "had ample opportunity" to investigate previously).

[23] *See also Ring Plus, Inc. v. Cingular Wireless, LLC*, 2008 WL 11348478, at *3 (E.D. Tex. Feb. 13, 2008) ("The Fifth Circuit, although not expressly adopting the Shelton test, has cited to Shelton with approval.") (discussing cases); *Nat'l W. Life Ins. Co. v. W. Nat'l Life Ins. Co.*, 2010 WL 5174366, at *3 (W.D. Tex. Dec. 13, 2010) (applying *Shelton* factors to determine whether in-house counsel should be deposed).

9

information sought is relevant and non-privileged, and (3) the information is crucial to the preparation of the case." *Nguyen*, 197 F.3d at 208 (quoting *Shelton*, 805 F.2d at 1327). Plaintiffs should be barred from doing so because they cannot meet any of the three requirements of the *Shelton* test, much less all of them.

**Plaintiffs have other other means to obtain the information they seek**. Plaintiffs have represented to Google that they seek to depose Google's in-house counsel to elicit the same information that was given as trial testimony during the *Play* case—an unrelated case that does not involve ad tech. Because that testimony was in open court, Plaintiffs cannot meet their burden.

**The information sought by Plaintiffs is not relevant**. Plaintiffs have not asserted that the testimony would be relevant to the claims and defenses in the case. Instead, Plaintiffs want to draw privilege calls in this case—calls made by different outside counsel—into question. Plaintiffs apparently seek to do so by eliciting the same testimony given by the in-house counsel in the *Play* case concerning two Chat messages, neither of which concerns ad tech, discussing how some non-ad tech employees understood the legal concept of privilege. But Plaintiffs have not explained why the views of these uninvolved individuals as described by this equally uninvolved in-house counsel would have any bearing on the privilege calls made in *this* case.

The privilege review in this case was conducted by outside counsel. Plaintiffs have only mounted one court challenge to those privilege determinations, and Judge Castel largely upheld outside counsel's privilege calls, over one year ago in January 2023.[24] Plaintiffs in the Virginia case launched a much broader assault on the privilege determinations of Google's outside counsel based on the same set of privilege logs that Google provided in this case. Magistrate

---

[24] MDL ECF No. 438 (declining to provide the requested relief and issuing an order adjudicating specific claims for specific documents);

Judge Anderson rejected their arguments.[25] Plaintiffs in this case told Judge Jordan that a Special Master would likely be needed to address privilege issues associated with claw backs.[26] But for more than seventeen months, Plaintiffs have not challenged any of Google's claw backs. There is simply no dispute over Google's privilege practices to be litigated at all, let alone one that would justify deposing an in-house attorney.[27]

**Plaintiffs cannot credibly assert that the information they seek is crucial to the preparation of the case**. Plaintiffs began their investigation in 2019 and filed their lawsuit in 2020. In December, 2023, Plaintiffs represented to this Court that they had everything that they needed to be trial ready by October 2024, and that fact discovery should end in February 2024.[28] Plaintiffs cannot meet their burden to establish that the deposition of Google's in-house counsel—who is not alleged to have said or done anything relevant to the claims and defenses in this case—is somehow now "crucial" to their preparation of their case.[29]

---

[25] EDVA ECF No. 215 (challenging 21 documents that Plaintiffs claimed were improperly withheld or redacted); EDVA ECF No. 271 (order declining in camera review of all but one of Google's privilege claims challenged by plaintiffs).

[26] ECF No. 176.

[27] Indeed, when Google's privilege claims were challenged in the *Search* litigation, Judge Mehta rejected the assertion that allegations concerning Google's internal processes merited some form of litigation relief specifically because the relevant privilege determinations were made and reviewed by outside counsel—not Google. In assessing those determination, Judge Mehta found that a high percentage of Google's privilege calls "clearly privileged" and "another large-percentage category, it is hard for us to tell, but certainly seemed like good faith privilege assertions." Hr'g Tr. at 66:1-4, *United States v. Google, LLC* (D.D.C. May 12, 2022).

[28] ECF No. 189 at 12:2-13:22.

[29] To be sure, some district courts have held that the application of *Shelton* test depends upon the extent of the lawyer's involvement in the pending litigation, and that depositions of counsel may be permissible where the counsel "has direct knowledge of facts relevant to the case." *DataTreasury Corp. v. Wells Fargo & Co.*, 2009 WL 10742267, at *2 (E.D. Tex. June 23, 2009) (allowing a deposition of in-house counsel to proceed because the attorney created minutes of relevant board minutes). But none of those exceptional circumstances are present here.

## CONCLUSION

Google respectfully requests that this Court issue a protective order prohibiting Plaintiffs from pursuing the discovery requests set forth in Exhibits A through C and the deposition of Google's in-house counsel.

Dated: April 11, 2024                                  Respectfully submitted,

/s/ R. Paul Yetter
R. Paul Yetter
State Bar No. 22154200
YETTER COLEMAN LLP
811 Main Street, Suite 4100
Houston, Texas 77002
(713) 632-8000
pyetter@yettercoleman.com

Justina Sessions
FRESHFIELDS BRUCKHAUS DERINGER LLP
855 Main Street
Redwood City, CA 94063
(650) 461-8276
justina.sessions@freshfields.com
ATTORNEYS FOR DEFENDANT GOOGLE LLC

**CERTIFICATE OF SERVICE**

I certify that, on April 11, 2024, this document was filed electronically in compliance with Local Rule CV-5(a) and served on all counsel who have consented to electronic service, per Local Rule CV-5(a)(3)(A).

*/s/ R. Paul Yetter*
R. Paul Yetter

**CERTIFICATE OF CONFERENCE**

I certify that on the 9th day of April 2024, counsel has complied with the meet and confer requirement of Local Rule CV-7(h).  Specifically, Google (Rob McCallum, Mollie Bracewell) conferred by telephone with Plaintiffs counsel (Geraldine Young, Zeke DeRose) on April 9, 2024.  The parties are at an impasse on the issues herein.

*/s/ R. Paul Yetter*
R. Paul Yetter

13