```
 1                 IN THE UNITED STATES DISTRICT COURT
                  FOR THE EASTERN DISTRICT OF TEXAS
 2                          SHERMAN DIVISION

 3    THE STATE OF TEXAS, et al,        §
                                        §
 4                  Plaintiffs,         §
                                        §
 5         vs.                          §        Case No.:
                                        §        4:20-cv-00957-SDJ
 6    GOOGLE, LLC,                      §
                                        §
 7                  Defendant.          §

 8
                          STATUS CONFERENCE
 9                   TRANSCRIPT OF PROCEEDINGS
                BEFORE THE HONORABLE SEAN D. JORDAN
10                  UNITED STATES DISTRICT JUDGE

11            Thursday, April 18, 2024; 10:02 a.m.
                          Plano, Texas
12

13    APPEARANCES OF COUNSEL:
      (Continued on page 2.)
14
      FOR THE PLAINTIFF STATES:
15
      Zeke DeRose, III
16    THE LANIER LAW FIRM, PC - Houston
      10940 W. Sam Houston Parkway N.
17    Suite 100
      Houston, Texas 77064
18
      Jonathan P. Wilkerson
19    THE LANIER LAW FIRM
      6810 Cypress Creek Parkway
20    Houston, Texas 77069

21

22        *********************************************

23                 GAYLE WEAR, RPR, CRR
                Federal Official Court Reporter
24                   7940 Preston Road
                   Plano, Texas 75024
25            gayle_wear@txed.uscourts.gov
```

```
 1   FOR THE PLAINTIFF STATES:
     (Continued from page 1.)
 2
     Ashley C. Keller
 3   KELLER LENKNER LLC
     150 N. Riverside Plaza, Suite 4270
 4   Chicago, Illinois 60606

 5   Geraldine W. Young
     NORTON ROSE FULBRIGHT US LLP - Houston
 6   1301 McKinney, Suite 5100
     Houston, Texas 77010-3095
 7
     John W. McBride
 8   NORTON ROSE FULBRIGHT
     1045 W Fulton Market, Suite 1200
 9   Chicago, Illinois 60607

10   James Lloyd
     Trevor Young
11   STATE OF TEXAS, OFFICE OF THE ATTORNEY GENERAL
     ANTITRUST DIVISION
12   300 W. 15th Street
     Austin, Texas 78701
13
     FOR THE DEFENDANT:
14
     R. Paul Yetter
15   Mollie Bracewell
     YETTER COLEMAN, LLP - Houston
16   811 Main Street, Suite 4100
     Houston, Texas 77002
17
     Robert John McCallum
18   FRESHFIELDS BRUCKHAUS DERINGER US LLP
     601 Lexington Avenue
19   New York, New York 10022

20   Justina Kahn Sessions
     KEKER, VAN, NEST & PETERS LLP - San Francisco
21   633 Battery Street
     San Francisco, California 94111
22

23                              *    *    *

24

25
```

1    ALSO PRESENT:

2        David T. Moran, Special Master
         JACKSON WALKER LLP - Dallas
3        2323 Ross Avenue, Suite 600
         Dallas, Texas 75201
4
         Roger P. Alford
5        UNIVERSITY OF NOTRE DAME
         3119 Eck Hall of Law
6        Notre Dame, Indiana 46556

7        Lauren Vaca

8
                                *    *    *
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1   April 18, 2024                                    10:02 a.m.

 2                            ---o0o---

 3                      P R O C E E D I N G S

 4                            ---o0o---

 5          THE COURT:  Good morning.  Please be seated.

 6          MR. YETTER:  Good morning, Your Honor.

 7          THE COURT:  We're here on cause number 4:20-cv-957,

 8   the State of Texas, et al versus Google, LLC.

 9          Why don't we have appearances from counsel, and we

10   can start with the plaintiffs.

11          MR. DEROSE:  Good morning, Your Honor.  Zeke DeRose

12   from the Lanier Law Firm on behalf of the Plaintiff States.

13   We have -- oh, I need to start off by sending Mr. Lanier's

14   apologies for not being in court this morning.  As the Court

15   is aware, he is in a trial -- he has two trials up in Helena,

16   Montana.  So he sends his apologies, but will be here next

17   time.

18          We've got Ashley Keller, co-lead counsel from

19   the Keller Postman law firm.  You last I think heard from

20   Mr. Keller three years ago plus a day when we were discussing

21   a motion to transfer.  Trevor Young from the Texas Attorney

22   General's office.  Roger Alford from the University of Notre

23   Dame.  Jonathan Wilkerson from the Lanier Law Firm.  Mr. John

24   McBride from Norton Rose Fulbright, and Ms. Geraldine Young

25   from Norton Rose Fulbright.  And James Lloyd, who is head of
```

```
 1    civil litigation at the Texas Attorney General's office.
 2              THE COURT:  Thank you, Mr. DeRose.
 3              Mr. Yetter?
 4              MR. YETTER:  Thank you.  Good morning, Your Honor.
 5              THE COURT:  I'm not sure if your microphone is on.
 6    You may want to double check that.
 7              MR. YETTER:  Good morning, Your Honor.  It's
 8    wonderful to be back.  Paul Yetter on behalf of the
 9    defendant, Google; and my colleague, Mollie Bracewell; and
10    our co-counsel from Freshfields, Rob McCallum; Justina
11    Sessions; and Lauren Vaca.
12              Thank you, Your Honor.
13              THE COURT:  All right.  Thank you, counsel.
14              So this morning, we have our monthly status
15    conference.  As you know, this afternoon at one o'clock we
16    have oral arguments on the motions to dismiss.  Just as a
17    preview, my plan for those is that we'll start with the
18    12(b)(1) motion, we'll hear argument on that motion.  We'll
19    take a break, and then we'll come back and hear argument on
20    the 12(b)(6) motion.  And I've allotted as much time as we
21    need in the afternoon for those motions.
22              I did notice that for the status conference, as of
23    late last week, the parties had not identified any issues
24    that the parties felt needed to be raised with the Court.
25    And so my first question for both sides is whether, since
```

```
 1    that time, anything has arisen that you believe we should
 2    discuss this morning.
 3              Mr. DeRose?
 4              MR. DEROSE:  I'll just run up here.  It will
 5    probably be easier.
 6              Yes, Your Honor.  May it please the Court.  I
 7    don't -- we have a lot of issues on stack for the special
 8    master this afternoon, so I don't envy him, but I think we're
 9    going to make some progress between now and the afternoon.
10              I think we could, though, if it would please the
11    Court, give you just a general update of where we are in
12    discovery.  Although I want to be respectful of the Court's
13    time, and I'm well aware that you're fully briefed on all the
14    motions practice, so I'm happy to walk through a couple of
15    quick updates if it pleases the Court, or if there is a
16    specific issue.
17              THE COURT:  No; that's fine.  You can go ahead and
18    do that.  And I -- depending on what you are going to talk
19    about, I have one issue I want to visit with the parties
20    about, but we'll see if it's something that's raised in your
21    discussion, from the plaintiffs or defendant.  But if not,
22    I'll just raise it at the end.
23              So go ahead, Mr. DeRose.
24              MR. DEROSE:  Absolutely.  Thank you, Your Honor.
25              So I wanted to tell you a little bit about where we
```

1    are right now; the depositions that are taking place,

2    including the state depositions; the third thing would be a

3    quick note on the coordination with the, I guess we'll call

4    them, companion cases; and then some third-party discovery

5    related to Meta, which Your Honor had just granted recently.

6              As the Court's aware, the States provided an

7    advisory last week detailing out Exhibit B to our logs and

8    the various claims.  Your Honor asked for States and reliefs

9    sought.  We had a back and forth with Google and entered a

10    clarifying one.  There were three issues that needed to be

11    clarified.  Louisiana is, in fact, seeking penalties for

12    antitrust.  Indiana is seeking attorney's fees for antitrust.

13    And Missouri is seeking attorney fees for antitrust.  And so

14    to the extent any questions still arise from Google, we're

15    happy to work with them as we move forward with these

16    depositions.

17              Discovery is though ongoing.  We have 15 days left

18    of fact discovery, and about 29 left until we get to expert

19    reports being due.  There were four depositions taken before

20    we were remanded to Your Honor.  There have been six since

21    then -- since about March or April; two of those have been

22    30(b)(6) depositions.  We have eight that are scheduled for

23    the next two weeks.

24              We were conferring with counsel for Google.

25    There's no want for work, just want for time.  We're

1    double-tracking and triple-tracking depositions.  There are

2    about seven depositions that are outstanding, either the

3    special master is dealing with whether or not we can take

4    them, or Google has notified us that they're objecting or

5    that they no longer represent the witness.

6         Then we have twelve issues related to DTPA

7    discovery that we're getting in and/or in their individual

8    capacity because we have already designated a couple of them

9    as 30(b)(6) witnesses.  The rough math on that is 46.  Your

10   Honor has only given us 40.  The delta there, though, I think

11   is some of these are 30(b)(6) witnesses, and there's a

12   structure in your scheduling order that allows for, you know,

13   if you take a shorter deposition or whatnot.

14        Based on what rulings we get today or in the coming

15   weeks, we'll adjust those, and we think we, as of now, we'll

16   stay within Your Honor's parameters.

17        The States were noticed for deposition.  We have

18   given Google all of the names, all of the dates, and all of

19   the locations for all 17 states that look like they will

20   occur by May 3rd.  I think we're waiting on a couple of

21   confirmations from Google on that.

22        I will note that the general counsel for the Texas

23   Attorney General's office sat for a deposition yesterday.

24   That was the lead deposition, if you will, for the States.

25   We were in Austin for about twelve hours there.  And we may

1    hear some of that later today with Mr. Moran.

2           Third topic, coordination and Meta.  And I'll be

3    finished except asking --

4                (Court reporter clarification.)

5           MR. DEROSE:  Except answering whatever the Court

6    would like me to entertain.

7           The -- there's still ongoing attempts to coordinate

8    in the wake of not having a coordination order, I guess, and

9    we know some of this will be piecemeal, if you will.  There

10   are some efforts by the MDL plaintiffs in the MDL to get

11   certain discovery or depositions.  There are some outstanding

12   questions of what happens when we have cross-noticed

13   depositions and we're sitting back to back on Monday and

14   Tuesday.  Are we permitted to sit in on Monday?  Are they

15   permitted?  I think that'll all get worked out.

16          I will note that out of the discovery in the

17   Eastern District of Virginia, and Mr. McCallum kind of led

18   the effort on this, is proposing a joint stipulation to get

19   third-party documents out of or from the E.D.V.A. case into

20   our case.  The issue we have with that, one is timing;

21   because of the protective order, there's a seven-day

22   objection period.  We're running a little bit out of time.

23   The other issue is it's a little bit of a piecemeal approach

24   because we've got to figure out what is missing besides that

25   third party -- besides those third-party documents.

1          Simultaneously, the Department of Justice has just

2     filed a motion, which Your Honor may or not -- may or may not

3     be aware of --

4          THE COURT:  I've seen the motion and the response.

5          MR. DEROSE:  I figured you might have -- seeking to

6     put in place the coordination order as if we were still part

7     of the MDL on October 2nd.  Google filed a response, as you

8     noted, last night objecting.

9          And so one of those two things will play out or

10    some variation of them, but we just wanted to let the Court

11    know that we are just looking for the fastest, easiest way

12    for a free flow of information.  Obviously, the coordination

13    order, if it was an order entered by Magistrate Judge

14    Anderson, we would then present it to Your Honor.  But we

15    just want to get the documents and the information, and make

16    sure we're all on the same page.

17         Last thing, number four on my list, is Meta.  The

18    Court lifted the stay on March 22nd related to the NBA.  We

19    issued a subpoena to Meta on March 29th.  Meta has agreed to

20    give us a date, that's actually one date, on May 2nd -- not

21    before, not after -- in London.  So it sounds like we're

22    going to London.

23         What we're trying to do in the interim of that is

24    figure out do we have all the documents needed to take that

25    deposition.  Because as we've discussed, that discovery has

 1    been stayed, even though our initial requests for Meta

 2    discovery go back to January of 2023.

 3          We just found out last night -- and you can see

 4    where the coordination order with the Department of Justice

 5    will implicate this, because the Department of Justice has

 6    their investigative file that we don't have -- at least, we

 7    don't have the documents related to Meta.

 8          We found out last night from Meta that there are

 9    over three million Meta-related documents in the DOJ's

10    investigative file that they understand were provided to

11    Google.  We have not yet had an opportunity to talk with

12    counsel about that.  Although to be fair, Mr. McCallum and I

13    discussed the fact that when the investigative file was

14    produced to the MDL and/or the States, that Google, in

15    accordance with Judge Castel's order, had removed that NBA

16    discovery.  So the breadth of that is not yet known, or the

17    timing of that is not yet known.

18          But we are receiving discovery from Google related

19    to DTPA.  We've got a couple hundred thousand documents, I'm

20    told, either were produced last night or will be produced

21    today.  We're also getting blow-backs from privilege log

22    challenges that amount to at least 40,000 or so documents.

23    So just a general update, Your Honor.

24          THE COURT:  All right.  So Mr. DeRose, since I have

25    you up there anyway, the topic I had or the issue I wanted to

1    visit with you about has to do with the pending motions to

2    quash that were made by three Texas state agencies.  As you

3    all know, I have an R and R from our special master, and I

4    think we're in the period for objections on it.  But I wanted

5    to visit with the States about this because, you know,

6    candidly, this was a bit of a head scratcher for me.

7              MR. DEROSE:  That makes two of us, Your Honor.

8              THE COURT:  So, you know, the special master's R

9    and R lays this out I think pretty well.  The State of Texas

10   is here leading a group of states.  These three agencies are

11   exactly that, arms of the State of Texas.  They're not

12   political subdivisions.  They're not counties.  They are not

13   municipalities.  They're arms of the State of Texas.

14             And my view, and you can let me know if I've got a

15   mistake here, but, is that when the State of Texas comes into

16   court, at a minimum it's representing all the arms of the

17   state.  And so I suppose at the outset I find it puzzling

18   that Google is being directed to send subpoenas to state

19   agencies, as opposed to the state simply collecting that

20   information and organizing this.

21             And I think that process, which to me seems a very

22   indirect and odd process -- but you can enlighten me if I'm

23   just missing something -- seems like that is part of what

24   created this issue.  The fact that Google is having to go

25   around and send subpoenas, and then these agencies have the

1    idea that, well, you know, now we're going to assert

2    sovereign immunity -- and, you know, I think at the outset,

3    there's not many times that we, as lawyers, get to use the

4    words "a fortiori. But I think under *Lapides,* when you

5    invoke a federal court's jurisdiction by removal and that

6    waives sovereign immunity, then I think when you file an

7    original action in federal court on behalf of the State of

8    Texas, you are waiving sovereign immunity for the state and

9    all arms of the state. That seems to me to be

10   uncontroversial.

11        So what I find concerning about this, to put a

12   finer point on it, is both sides in this case have discovery

13   obligations, and I understand it's asymmetrical to some

14   degree here in terms of what Google has in its possession and

15   what the States are going to have in their possession, but

16   still meaningful discovery obligations on both sides. And I

17   get concerned when I see anything, particularly on the

18   schedule we're on, that looks like it may unnecessarily delay

19   matters.

20        And what further concerns me is, having read your

21   advisory and the 90-plus page attachment to the advisory

22   which includes a lot of discovery responses that, as far as I

23   can tell, have other states also directing Google to what it

24   seems to me to be a very indirect way of getting discovery

25   that it seems to me -- and, again, you can enlighten me --

1    the States should in the first instance be collecting.  And

2    indeed, I'm not sure how much of this should be part of

3    initial disclosures, not even discovery requests.  So maybe

4    you can help me out on that.

5            MR. DEROSE:  Thank you, Your Honor.  And I agree

6    with what you said.  And it's been a little bit of an

7    interesting dance for us with the various sovereign states

8    because each state is set up differently.  The attorney

9    general's office for a given state has sometimes an

10   attorney-client relationship with an agency and sometimes

11   they don't.  Sometimes there is an ability for a state -- a

12   couple of the states are able to take on, if asked by a given

13   agency, to be the representative and the lawyer, and then you

14   get a little bit of an easier path forward.

15           With the State of Texas -- and we do have Mr. Lloyd

16   here from civil litigation to make sure that I don't speak

17   out of turn -- but my understanding is the relationship in

18   Texas is that we do not represent these agencies.  Now, that

19   doesn't get to your second point, which is how do we move

20   this along and coordinate and do what we should do.

21           I will note that even as government enforcers, with

22   objections to sitting for a deposition, we heard the Court

23   loud and clear, our clients all heard the Court loud and

24   clear, we just set dates for depositions.  We have also been

25   asked at a given time by the special master to help

1    coordinate discovery from those agencies in various states.

2                For example, if a third-party advertiser or

3    advertising group is used, technically there is an argument

4    that Indiana's AG's office doesn't have custody or control

5    over those documents, but what was happening is Google was

6    having to kind of do an end around.  So we stepped in, got

7    everybody on a phone call, got those documents.  And what I

8    hear from Your Honor is we need more of that and less of what

9    came a couple of weeks ago.

10               I will represent to the Court that the

11   Administrative Law Division in the State of Texas -- and in

12   no way is this an excuse for a disagreement -- is the agency

13   or the group that represents these agencies.  And so I -- we

14   were surprised when we saw the motion.  But what we can do --

15   one, I think first and foremost, is there is an objection

16   period.  We need to get you an answer on if there are going

17   to be objections or not.

18               More importantly, it seems as if these folks will

19   sit for depositions as I know various other agencies are

20   sitting for depositions, and they're on Google's calendar or

21   our calendar or my calendar, I guess, and so we need to make

22   sure those are set, those are scheduled, and that they move

23   forward; and whatever the administrative hang-ups may or may

24   not be, that we find a way to move this forward.

25               THE COURT:  Right.  I think the deadline on

1    objections is today.  And I want to be clear that if there's

2    a reason, you know, why things need to be handled in that

3    manner, I'm certainly open to hearing it or seeing what it is

4    in writing.  I articulated to you why I found it puzzling.  I

5    won't belabor that.  But as you suggested, Mr. DeRose, it

6    certainly seems to me, barring briefing from the States to

7    persuade me otherwise, that a process that has the States

8    that are the plaintiffs in this case directly involved in

9    collecting documents and getting people who need to be

10   rounded up for deposition, seems both the most efficient way

11   to proceed.  And I will say that again at the moment it's

12   hard for me to understand why there was a subpoena process in

13   the first place.

14           But again, if that's something I had been meaning

15   to take up and I need to look at, we can certainly do that.

16   But I'm encouraged with your comments today, Mr. DeRose.  And

17   I think given the schedule that we have, even if there were,

18   you know, some concerns amongst state agencies, I think that

19   moving the case forward should take priority.

20           MR. DEROSE:  Agree, Your Honor.  And I know

21   Mr. Yetter has a few things to say.  We will get you an

22   answer today if there are going to be any objections.  We'll

23   figure out how to do that.  Someone's got a phone number.

24   We'll make a phone call.

25           We'll also commit today to work with Mr. Yetter's

1    team and Mr. McCallum's team if there are any outstanding

2    issues, not just with the States that we represent, but with

3    any of the sovereign states or Puerto Rico in this case, that

4    we will sit down and do whatever is needed to facilitate that

5    free flow of discovery, setting deposition dates, absent any

6    state's individual objections that we can't handle.  But we

7    will do what we did before and we'll just make it happen.

8              THE COURT:  That sounds like a very good plan.  All

9    right.  I appreciate it, Mr. DeRose.

10             MR. DEROSE:  Thank you, Your Honor.

11             THE COURT:  Mr. Yetter?  And you can provide any

12   update from Google's side.  I know Mr. DeRose touched on some

13   of the topics of where you all are in discovery, and then we

14   have the specific discussion about these motions to quash,

15   but you can address whatever you need to.

16             MR. YETTER:  Thank you, Your Honor.  I think going

17   forward, you need to always be suspect when the parties give

18   you a status update before one of these conferences to say

19   they have nothing to talk about because they obviously will

20   always have something to talk about, Judge.

21             But I will say I think the happiest -- one of the

22   happiest persons in the courtroom is the special master for

23   you bringing up this last issue because this is something we

24   were going to have to -- it's one less issue for him to have

25   to deal with.  And I want to start with that, Your Honor, the

1    issue of whether these states must account for all of their

2    state agencies.

3              And I have never quite understood why we went about

4    doing this, but this started -- a little bit of background.

5    This started in the MDL.  We, on behalf of Google, went to

6    the various states to get discovery about their agencies.

7    And South Carolina was the first one to take the position,

8    "You don't need to talk to me" -- the litigant, the party --

9    "go talk to my agencies," which we then did.  And then the

10   agencies did what happened again here with the Texas

11   agencies, they claimed sovereign immunity.  The district

12   judge overruled it.  They appealed it.  We're now in the

13   court of appeals on that very issue you just raised.  It

14   makes no sense to me.  But out of expediency, Google started

15   going to the various agencies.

16             Again, I completely agree with the Court's

17   position.  The State of Texas is the litigant, not the Texas

18   Attorney General's Office or any specific agency, and so it

19   should answer on behalf of all of its agencies.  It has --

20   what we've heard, Texas tells us "We've got so many agencies,

21   over 200, and we can't possibly answer on behalf of all of

22   them," even though the State is proceeding in its sovereign

23   capacity and in its parens capacity.  We disagree.  But

24   again, as a matter of expediency, we went to the agencies.

25             By way of update, the three agencies have not given

us dates.  One has given -- one agency, and they're all
represented by the Texas Attorney General's office --
different lawyers, but the same office -- one, the lawyer
gave us a date, a tentative date, for one of the three
agencies, but not for two of them.  But said that they
wouldn't confirm until this Court rules on this issue.  So we
don't have dates on the calendar for any of the three.

This Court knows we did get documents from them.
And then they said, when it got to depositions, they were
immune under sovereign immunity.

Let me pause there and give a shout out to two of
the states.  This has been only 15 of the states that have
taken that position.  I will say Texas has led the way on
resisting any discovery of their agencies, including in the
30(b)(6) depositions that counsel just mentioned, which was
yesterday.  But two of the states, Nevada and Alaska, did do
the collecting for agencies, as I understand it, themselves
and then produced it directly to us.

So two of the seventeen actually did what Your
Honor says they should have done.  Fifteen, led by Texas, has
gone the opposite direction.  So that leads me to -- so we
heartily agree and we hope that the States do not challenge
the special master's recommendation to the Court, and that
the Court can enter that order and we can move quickly on
getting these depositions scheduled and done, and do it

1    directly through the litigants, the parties, the States that

2    are pursuing this case.

3            Which leads to the deposition yesterday.  A quick

4    update and, hopefully, I'll make this brief, Your Honor.  On

5    discovery, there's been lots of discovery.  The special

6    master has been very busy, as the Court knows.  You've seen

7    all the papers.  He's resolving issues quickly.  The parties

8    are talking every day.

9            Google has -- you won't be surprised to hear that

10   Google believes that they've literally moved Heaven and Earth

11   to get this done.  They have, at last count, 700 document

12   reviewers to get the information that they are producing done

13   and to get the privilege log re-review done that they

14   volunteered to do.  There's been lots of issues on dashboards

15   there.  There's a very extensive 30(b)(6) deposition that

16   took -- with the special master's assistance and a lot of

17   discussion between the parties, we think we've gotten that

18   all ironed out.  Google has designated eight 30(b)(6)

19   witnesses to cover all the 107 topics.

20           Even then, we have an issue that we're going to

21   raise with the special master.  One of the 30(b)(6) witnesses

22   that Google presented -- and this is, and I raise this with

23   the Court, in the vein of delay at this point in the case is

24   not a good thing -- is covering a substantial number, over

25   40, of the topics.  He is a senior engineer.  His name is

1    Nitish Korula, and he had been agreed to be deposed tomorrow.

2    He's prepared.  He's ready to go, ready to be deposed

3    tomorrow.  He's covering 42 topics.

4            By comparison, the State of Texas representative,

5    who was acting on behalf of the entire state and many of the

6    other states, covered 41 topics yesterday, in a long day, but

7    a single day.  We've agreed to have this representative,

8    Mr. Korula, ready to go tomorrow to cover all 41, and the

9    States have basically cancelled it.  We're going to ask the

10   special master to require that it go forward.  We think at

11   this point cancelling a deposition of the 30(b)6 witness

12   who's covering a substantial number of the topics does

13   nothing but delay --

14           THE COURT:  Can I ask -- sorry.  Can I ask what the

15   grounds for the cancellation were?

16           MR. YETTER:  Well, the --

17           THE COURT:  And I'll ask Mr. DeRose.

18           MR. YETTER:  I will let them speak for themselves,

19   but what the state told us is that because he's covering 42

20   topics and they're important topics, as the state conveyed to

21   us, there's no way they can get him done in the seven hours

22   that the rules allow, and so that we should set aside either

23   two or three days for Mr. Korula; and that they can't start

24   on Friday; they have to have those two or three days

25   consecutively.  And so they've cancelled it.

1              Now, again, he is a senior engineer.  He set aside
2      the time to prepare and the day on Friday to give this
3      deposition.  We don't think they should have more than a day.
4      We've told them what would be reasonable at the end of the
5      day.  This is exactly what happened yesterday with the Texas
6      representative.  We covered a lot of topics.  We had a little
7      bit longer in the day.  Counsel very professionally allowed
8      for it to go a little bit longer than seven hours.  We've
9      told them we're prepared to do the same thing as long as it's
10     efficiently taken and we think we can get it done.  And it
11     will cover 42 of the 107 topics, which we think will be a
12     good step forward.
13             On --
14             THE COURT:  Well, I may be able to save the special
15     master some work on this.
16             MR. YETTER:  Your Honor --
17             THE COURT:  I'll hear from Mr. DeRose, but my
18     inclination will be that you go forward with that deposition
19     and cover as much ground as you can possibly cover.  And then
20     if the States need more time, they can certainly request more
21     time.
22             But I'll hear from Mr. DeRose and see if there's
23     some compelling reason not to do that, that seems to make
24     sense to me.
25             MR. YETTER:  All right.  Then, Your Honor, unless

1    you want to hear from Mr. DeRose right now, which I'm fine

2    with.

3             THE COURT:  Yes.

4             So Mr. DeRose, in the interests of efficiency and

5    looking at our time table, I certainly understand the notion

6    that you may not be able to cover everything you need to

7    cover in that time period and given the number of topics, but

8    it certainly seems to make sense though to get started, get

9    as much done as you can and as soon as you can, and then if

10   you need more time, to take it.  But I'm just looking at the

11   date we're on right now.  And you can let me know if there's

12   a compelling reason to take something off the calendar that

13   was scheduled.

14            MR. DEROSE:  Yes, Your Honor.  And I may bring in

15   the A-Team here with Mr. McBride, who is handling the

16   technical side.  The 42 topics vary, and we'll get into that.

17   And we begrudgingly, and if I'm not mistaken, made sure the

18   special master was on this correspondence because we took

19   Your Honor's direction from the February 15th hearing where

20   you said maybe you should do some 30(b)6)s, get some

21   dashboard stuff going.  We issued our notices on February

22   21st.  It took -- Your Honor, I'll get directly to your

23   answer of why.  It took six weeks before we got a date.  It

24   took six weeks before we got a name of a witness.

25            We did do a dashboard deposition in between then.

1    But the special master asked us on March 22nd to specifically

2    lay out, the day after we were with Your Honor, what are the

3    topics, what are the categories, broadly help Google figure

4    out how to put some witnesses together.  We received

5    information back from Google on March 29th, gave them some

6    more information where there were gaps.  There were gaps in,

7    "Hey, there's 30 to 50 of these topics that are not covered.

8    What's your intent?"  With Mr. Korula, who is on 42 topics,

9    Mr. Gordon, the general counsel, was noticed -- or Texas was

10   noticed on things like retention -- he has been noticed, and

11   Mr. McBride can talk about this -- on the operation, design,

12   expected benefits of dynamic allocation, enhancement

13   allocation, reserve price optimization --

14              (Court reporter clarification.)

15              THE COURT:  Take your time, Mr. DeRose.

16              MR. DEROSE:  I have to get the words right

17   correctly myself.  Reverse -- let me start over.

18              He's been designated on operation -- or his

19   testimony is, if we limit it, to operation, design, and

20   expected benefits of dynamic allocation, enhanced dynamic

21   allocation, reverse price optimization, dynamic revenue

22   share, unified pricing rules, open bidding, material features

23   at the Google AdX auction, as relevant to the Fourth amended

24   complaint.  The question then also becomes is he only

25   testifying on the technical side, which Mr. McBride will

1  take, or is he also going to testify on these business

2  questions related to double quick acquisition and other

3  things?

4          The back and forth with opposing counsel, our

5  friends at Google, has been -- these seem really broad topics

6  and not doable in seven hours.  The response was "You get

7  seven hours under the rules."  We wanted to narrow down

8  specifically, are we going to get another chance to take

9  this?  Or are you saying, "You've got 42 topics.  That's ten

10  minutes a topic.  Don't swear in the witness.  Don't ask what

11  they've done to prepare," so on and so forth.  And we've done

12  this back and forth for a couple of weeks where we've just

13  gotten -- the answer we did get, Your Honor, was, "If you

14  have a reasonable and discrete number of additional

15  unanswered questions at the conclusion of seven hours, Google

16  will be happy to discuss," which what we just wanted to know

17  is -- we've got, as Your Honor noted, 15 days left in

18  discovery.  We're flying people all over.  Even if we're

19  doing it remotely, is it going to be Mr. McBride?  Is it

20  going to be a combination of that?  Are we going to be able

21  to separate technical from business?

22          And so at the last point when we kept getting,

23  "Afterwards we'll discuss whether we'll give you more," we

24  felt that we were boxed in and had no -- we thought we were

25  going to waive our opportunity to do something different.  I

1    will let Mr. McBride speak into any more of the why is this a

2    real issue, but --

3              THE COURT:  Well, I'm happy to hear from

4    Mr. McBride, but I was going to note that, you know, from my

5    perspective -- and this is for both sides -- you know, I

6    fully understand, and I know the special master understands

7    the importance of these corporate rep depositions.  And that

8    when you have a lot of topics and are getting into the

9    substantial I'm going to say substance of this case, getting

10   into the meat of this case, I'm certainly going to be open to

11   requests for additional time, if needed, because a witness is

12   covering a lot of ground.

13             And as Mr. Yetter was referring to your witness of

14   yesterday, and you're discussing a witness that Google has

15   who is covering a lot of ground, I'm certainly going to be

16   open to the notion of having more time because one witness is

17   covering a lot of ground under the corporate rep topic.

18             So I understand the concern about, you know,

19   communications between the parties.  But, of course, you

20   know, if you're not agreeing, you're able to come to the

21   Court to get more time.  That applies for Google as well.

22   And that's why, from my standpoint, I think we put a premium

23   on getting done what you can get done as efficiently and

24   quickly as you can.  And if you need to come back and have

25   additional time, then you schedule that in there.  And part

1    of the message I'm saying to both parties here is that it's

2    in this kind of circumstance corporate representatives who

3    are covering a lot of ground that is very helpful in moving

4    the case forward, that I'm going to be open to any request

5    for additional time that's reasonable given what can be

6    covered in a day with the witness.

7         MR. DEROSE:  Thank you, Your Honor.  I think that

8    would help.  And we had requested, as Mr. Yetter I think

9    alluded to, that we think it will take three days.  That

10   being said, I think what we're looking for, and maybe it is

11   the direction Your Honor is maybe inclined to go or

12   insinuating, is we just wanted to know we didn't get three

13   more questions.  If it's two days, it's two days, that's

14   great, we'll let Google know we're going to do technical

15   topics.  And so I think maybe we might seek either from the

16   special master or Your Honor today -- I think that would be

17   enough to give us an opportunity to say, Great, one day we'll

18   do technical; the other day we'll do business; we know who is

19   going to take the depo and when.

20        THE COURT:  Right.  I mean, my expectation will be

21   that we're talking about time increments as opposed to some

22   set of questions; that, you know, you're getting whatever

23   amount of additional time it is with the witness as opposed

24   to a number of questions.  And I'm sure we can all think of

25   the reasons why that makes more sense.

1            MR. DEROSE:  Absolutely, Your Honor.  And I'll be

2    taking a broad stroke I think when I'm trying to categorize

3    at a high level the difference between technical and

4    business.  It's just what is the scope of their, you know --

5    and what of the 42.  It's a third of all of our topics that

6    we think we would like to take.  And so we can either seek

7    that from you today and move forward, or we can talk to the

8    special master.  I think we're happy.  Unless somebody tells

9    me otherwise, you know, I think we can do it in two days.  I

10    think if we knew that going in and we weren't -- if we don't

11    need two days, we don't need two days, we've got more to do

12    than anyone wants.

13            THE COURT:  Well, I think we have the benefit of

14    all of us being together here today.  We have a hearing in

15    the afternoon anyway.  I know you're meeting with the special

16    master.  But my thought is if both sides are agreeable to

17    streamlining, if we need to revisit in the afternoon any

18    particular topics or logistics on discovery going both ways,

19    I'm happy to take that up because we've got the afternoon

20    allotted for this case, in any event.  And it's in everyone's

21    interests, including the Court's interest, to do whatever we

22    can to facilitate us moving as efficiently as possible.

23            So if we can make that, the process of resolving

24    disagreements, if we can go through the process of getting

25    them adjudicated today, I think that makes a lot of sense.

1          MR. DEROSE:  I think we can get it done today, Your

2     Honor.  We will report back before the 1:00 p.m. hearing.  If

3     I may, I have one more thing and then we're done with this.

4          THE COURT:  Yes.

5          MR. DEROSE:  I just wanted to -- on the topic of

6     the agencies from the State of Texas, I just got confirmation

7     from the Administrative Law Division -- it didn't come

8     directly to me, my representation is still true, but I

9     don't -- that they're separate -- "We will not be filing any

10    objections to the special master's ruling."  This is from

11    Ms. Lauren McGee.  "I have already been in contact with

12    counsel for Google regarding possible deposition dates."  So

13    the commitment is still held, Your Honor.  Whatever we need

14    to do with the other states, we'll do so.

15         THE COURT:  Well, with that representation, I'm

16    going to get my order entered on that today, just so we have

17    that processed.  And I -- you know, to Mr. Yetter's point,

18    I've already heard from you, Mr. DeRose, that Texas itself is

19    going to work with the other states to move that process

20    forward with all state agencies.

21         MR. DEROSE:  Yes, sir, Your Honor.

22         THE COURT:  All right.  Mr. Yetter, did you have

23    anything else you wanted to say?

24         MR. YETTER:  Just a couple more things, Your Honor.

25    And I might suggest that it will go easier if we are -- if

1    the States directly, like Nevada and Alaska have done, deal

2    with us as opposed to pushing it off to the agencies.

3         I know the agencies now are not going to object to

4    the special master's recommendation, but I don't think it

5    would hurt if the Court at least gave us some guidance to the

6    States that they should be dealing directly with Google in

7    terms of agency discovery, depositions, and things like that.

8    So but that's up to the Court.  That would be -- from our

9    perspective, that would be very helpful and efficient.

10        THE COURT:  Well, let me -- I think I made this

11   point earlier, but just in case it's not abundantly clear, I

12   do think that the State of Texas and every other state should

13   be coordinating responses, documents, witnesses with all

14   state agencies.  If there's a reason that the states can't do

15   that, the State of Texas or another state can't do that,

16   then -- and that becomes a real point of contention, then the

17   Court can take up an issue along those lines.

18        But my view is that the Attorney General's Office

19   of the State of Texas and the lawyers that its retained to

20   represent the State of Texas are representing these agencies,

21   and that means that they are the lawyers for the agencies and

22   they should be coordinating the agencies' response.  And I

23   would expect the same to be true of the other states.

24        I have some experience with the role of the Texas

25   Attorney General and the power of the Texas Attorney General.

 1    And so I'm happy to see briefing, if anyone wants to do

 2    briefing, on why any state attorney general cannot do that in

 3    this instance where they are representing the state in this

 4    court.  But my understanding and my expectation will be that

 5    the state -- the States and, by that, the Attorney General's

 6    Office are going to coordinate that.  And, yes, they are

 7    going to have to work through state agencies and maybe

 8    in-house counsel at state agencies, and that's what the

 9    attorney general does.  I hope that's clear enough.

10              Anything -- I assume there's no questions.

11              Mr. Yetter, anything else?

12              MR. YETTER:  Your Honor, that was very helpful.

13              Just one last couple of things.  Before we focused

14    on the 30(b)6 deposition of Mr. Korula, I was conveying to

15    the Court, hopefully at a high level, that Google is doing

16    everything it can and there has been a substantial amount of

17    discovery.  Our target is to finish fact discovery on

18    schedule as the Court has already set it.

19              We have some concerns that the States seem to be

20    moving toward positioning themselves to seek a delay of the

21    fact discovery cutoff.  I raise this only because -- and I

22    hope that's not so, but I raise it only because that is -- we

23    are doing everything on our side, the Google side, to make

24    sure that that does not happen.

25              The Court has given lots of thought to the

1    schedule.  I know that we originally asked for more time, but

2    the Court set the schedule, and we have tried very hard, and

3    we think successfully, to meet that schedule.  There's a lot

4    to do between now and early May, but that is the schedule

5    that we're on.  And with that, I don't have any other

6    comments, unless the Court has some questions for me.

7            THE COURT:  No, not at this time.

8            Mr. DeRose, anything else you needed to say?

9            MR. DEROSE:  May I?

10           THE COURT:  Yes, go ahead.

11           MR. DEROSE:  Just real quick.  And by "quick," I

12   mean not talk too fast.

13           The State of Texas and the other states have been

14   adamant from the get-go that we want a trial date.  Your

15   Honor gave it to us.  It starts jury selection March of next

16   year, and we're looking forward to being here.  But

17   Mr. Yetter did note -- and I feel obligated to at least put

18   this in context that delay in this case is not a good

19   thing -- it seems that the States will be moving toward

20   delay, and I hope that's not so.  In briefing, they said it

21   looks like the plaintiffs are manufacturing some basis for

22   extending the fact discovery deadline.

23           We need the facts that we need to be able to try

24   the case to overcome which I'm sure will be hundreds of pages

25   of summary judgment and Daubert motions.  For context, DTPA

1    discovery was requested November 13th, 2023.  It took a

2    special master order on March 29th to start that document

3    production.  We expect to get 200,000 of those documents

4    today -- or last night, to be candid -- with 15 days left.

5              The privilege log issues were noted November 22nd,

6    2023.  It took a special master order recently to get those

7    blow-backs to start coming in in mid to late April.  We have

8    as of now, from those 350,000 privilege log entries, 39,000

9    documents that were improperly withheld.

10             Meta discovery, which was first asked for in

11   January of 2023, Your Honor knows we just got a deposition

12   date, we're starting to get some information related to that.

13             For 30(b)6 topics, which was obviously a big part

14   of our conversation that was issued in February, we still

15   don't have 30 to 50 topics that have been given a witness,

16   or what are we doing on those, let alone dates.  I'm almost

17   finished, Your Honor.

18             Dashboards.  We were fighting with the MDL and

19   Google every single week for a year to say we think these

20   dashboards are relevant and responsive to outstanding

21   discovery.  At the end of March, after a 30(b)6 deposition

22   and after multiple meetings with the special master, we

23   started getting these multi-whatever -- there were millions

24   of dashboards at Google, but we started getting dashboard

25   production, which is very helpful and exactly what we need to

1    move forward.

2            If we could squeeze this all in and would have

3    gotten some of this not in November, not in December,

4    January, maybe even February, we wouldn't be where we are.

5    But to say that these sovereign states are manufacturing some

6    basis for an extension, we are reacting to the reality of the

7    playing field.

8            We do not want to give up that trial date, and we

9    have been adamant about that and have been forcing the fact

10   that we think this can get done, but we are where we are,

11   regardless of how we got here or what could have or should

12   have happened.  And we are extremely grateful for the

13   progress that Google has been making with us and with the

14   guidance of the special master.  But we do need to discuss

15   the reality of if we're just now getting 200,000 documents

16   that none of us can review yet, and if these topics have not

17   been designated, what do we need to do and what are those

18   incremental changes that, hopefully, and our request would

19   be, if we get to this point, does not move that trial date,

20   but is there room in Your Honor's schedule to say these are

21   the specific depositions that will take place, nothing more,

22   nothing less.

23            But when we find out we have three -- potentially

24   three million documents related to our DTPA and Section 2

25   claims related to Meta, it's concerning that we may not have

1    enough time.  And maybe I've just watched too much Final

2    Four, but I think arguably they have been effective with

3    running out this clock.  And so we will have a conversation.

4    I think, of course, everything is appropriate for Your Honor,

5    but I know we don't need to get you into the weeds of

6    discovery.

7              I think we can make a suggestion of how do we

8    handle it.  We want it to be very limited if we are going to

9    extend anything.  We want it to be very specific to

10   depositions and what we're doing and what happens with the

11   expert report.  But where I stand today, based on the

12   information that I've had, and how the last few months have

13   transpired, I'm not sure that 15 days is enough to get this

14   information in and these depositions scheduled, despite the

15   heroic efforts by Google and the States to double and

16   triple-track depositions.

17             THE COURT:  All right.  Thank you, Mr. DeRose.

18             Mr. Yetter, do you have -- yes, go ahead.

19             MR. YETTER:  Your Honor, this is really not the

20   forum to go point by point and dispute counsel, but I did

21   want to correct one likely inadvertent fact that counsel

22   gave.  On the DTPA discovery, which didn't get started for a

23   couple of months after they served the discovery in November,

24   and we responded in December, and the States then picked it

25   back up again earlier this year, we have produced 90 percent

1   of the documents already.  So there isn't 200,000 documents

2   ready to go, and there's 20,000 documents left to be

3   produced.  We believe either today or tomorrow they would be

4   produced.  So 90 percent has already been produced.

5       There has been a tremendous amount, as counsel said

6   correctly, a tremendous amount of discovery in the last 60

7   days that Google has produced, all of which lines up for the

8   depositions that are scheduled.  The States continue to

9   schedule more depositions; 18 third parties just in the last

10  two weeks, I believe, is the number.  We are going to do

11  whatever it takes to get all that done.  I raise this -- I

12  don't know if this is an issue for the Court today, but this

13  is an issue that we see coming, and that's why I wanted to

14  flag the Court on it.

15      THE COURT:  All right.  Thanks to both of you.

16  Again from, you know, my perspective, it seems to me that the

17  parties are working very hard to get everything done by the

18  close of fact discovery.  And if issues are coming up with

19  regard to a potential requested extension of deadlines or a

20  request that certain things be done past May 3, you know,

21  those are issues that I anticipate would first be raised with

22  the special master.  With that said, as I've mentioned in

23  terms of today, I think -- you may have other issues and

24  there's things that with regard to particular disputes that

25  remain active this afternoon, if the parties are agreeable to

1   streamline it, I may be able to just make some calls so that

2   we can keep this going.

3          But anyway, we will stand in recess for the moment.

4   I will see you all back at one o'clock.

5          THE COURT SECURITY OFFICER:  All rise.

6          (Adjourned at 10:50 a.m.)

7          *    *    *    *    *

8          CERTIFICATE OF OFFICIAL REPORTER

9

10         I, Gayle Wear, Federal Official Court Reporter, in

11   and for the United States District Court for the Eastern

12   District of Texas, do hereby certify that pursuant to Section

13   753, Title 28 United States Code, that the foregoing is a

14   true and correct transcript of the stenographically reported

15   proceedings held in the above-entitled matter and that the

16   transcript page format is in conformance with the regulations

17   of the Judicial Conference of the United States.

18

19         Dated 20th day of April 2024.

20

21

22         /s/ Gayle Wear
           GAYLE WEAR, RPR, CRR
23         FEDERAL OFFICIAL COURT REPORTER

24

25