# Exhibit 2

**Volume 16**

**Pages 3066 - 3293**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable James Donato, Judge

| | |
|---|---|
| IN RE GOOGLE PLAY STORE ANTITRUST LITIGATION, | ) ) ) **NO. 21-md-02981-JD** ) |
| THIS DOCUMENT RELATES TO: | ) ) |
| EPIC GAMES, INC., | ) ) |
| Plaintiff, | ) ) |
| VS. | ) **NO. 3:20-cv-05671-JD** ) |
| GOOGLE, LLC., et al., | ) ) |
| Defendants. | ) ) |

San Francisco, California

Friday, December 1, 2023

**TRANSCRIPT OF PROCEEDINGS**

STENOGRAPHICALLY REPORTED BY:

Kelly Shainline, CSR 13476, RPR, CRR
Official United States Reporter

**APPEARANCES**:

For Plaintiff:

        CRAVATH, SWAINE & MOORE LLP
        825 Eighth Avenue
        New York, New York 10019
**BY: GARY BORNSTEIN, ATTORNEY AT LAW**
    **YONATAN EVEN, ATTORNEY AT LAW**
    **LAUREN MOSKOWITZ, ATTORNEY AT LAW**
    **MICHAEL ZAKEN, ATTORNEY AT LAW**
    **BRENT BYARS, ATTORNEY AT LAW**
    **ANDREW WIKTOR, ATTORNEY AT LAW**
    **TIMOTHY G. CAMERON, ATTORNEY AT LAW**

For Defendants:

        MUNGER, TOLLES & OLSON LLP
        350 South Grand Avenue - 50th Floor
        Los Angeles, California 90071
**BY: GLENN POMERANTZ, ATTORNEY AT LAW**
    **JAMIE LUGURI, ATTORNEY AT LAW**
    **KURUVILLA J. OLASA, ATTORNEY AT LAW**
    **NICK R. SIDNEY, ATTORNEY AT LAW**

        MUNGER, TOLLES & OLSON LLP
        601 Massachusetts Avenue NW
        Suite 500 East
        Washington, DC 20001
**BY: JONATHAN KRAVIS, ATTORNEY AT LAW**
    **LAUREN BELL, ATTORNEY AT LAW**

        MORGAN, LEWIS & BOCKIUS LLP
        One Market - Spear Street Tower
        San Francisco, California 94105
**BY: MICHELLE PARK CHIU, ATTORNEY AT LAW**
    **LEIGHA BECKMAN, ATTORNEY AT LAW**
    **REBECCA L. SCIARRINO, ATTORNEY AT LAW**
    **BRIAN ROCCA, ATTORNEY AT LAW**

        MUNGER, TOLLES & OLSON LLP
        560 Mission Street - 27th Floor
        San Francisco, California 94105
**BY: JUSTIN P. RAPHAEL, ATTORNEY AT LAW**
    **KYLE W. MACH, ATTORNEY AT LAW**
    **DANE P. SHIKMAN, ATTORNEY AT LAW**

# I N D E X

Friday, December 1, 2023 - Volume 16

|  | PAGE | VOL. |
|---|---|---|
| Plaintiff Rests | 3213 | 16 |
| Defendant Rests | 3213 | 16 |
| Charging Conference | 3214 | 16 |

| **PLAINTIFF'S WITNESSES** | PAGE | VOL. |
|---|---|---|
| **BERNHEIM, BERT DOUGLAS (IN REBUTTAL)** | | |
| (SWORN) | 3175 | 16 |
| Direct Examination by Mr. Bornstein | 3176 | 16 |
| Cross-Examination by Mr. Raphael | 3199 | 16 |
| Redirect Examination by Mr. Bornstein | 3211 | 16 |

| **DEFENDANT'S WITNESSES** | PAGE | VOL. |
|---|---|---|
| **OLIVER, CARSON** | | |
| (SWORN) | 3070 | 16 |
| Direct Examination by Ms. Bell | 3071 | 16 |
| Cross-Examination by Mr. Cameron | 3093 | 16 |
| Redirect Examination by Ms. Bell | 3108 | 16 |
| **GELBER, RANDY** | | |
| By Video Deposition | 3110 | 16 |
| **LEONARD, GREGORY** | | |
| (SWORN) | 3110 | 16 |
| Direct Examination by Ms. Beckman | 3111 | 16 |
| Cross-Examination by Mr. Zaken | 3116 | 16 |
| **BURAK, ASI** | | |
| By Video Deposition | 3117 | 16 |
| **BEATY, ROBERT** | | |
| By Video Deposition | 3118 | 16 |
| **LOEW, MRINALINI** | | |
| (SWORN) | 3119 | 16 |
| Direct Examination by Ms. Bell | 3119 | 16 |
| Cross-Examination by Mr. Cameron | 3150 | 16 |
| Redirect Examination by Ms. Bell | 3171 | 16 |

# E X H I B I T S

| **TRIAL EXHIBITS** | IDEN | EVID | VOL. |
|---|---|---|---|

| | | |
|---|---|---|
| 1710 | 3164 | 16 |
| 6178, pages 112 and 132 | 3135 | 16 |
| 6288 | 3169 | 16 |
| 6485 | 3103 | 16 |
| 6691 | 3090 | 16 |
| 6836 | 3073 | 16 |
| 6839 | 3083 | 16 |
| 6840 | 3085 | 16 |
| 6848 | 3081 | 16 |
| 6849 | 3084 | 16 |
| 6853 | 3074 | 16 |
| 8594 | 3160 | 16 |
| 9500 | 3115 | 16 |
| 9900 | 3077 | 16 |
| 10692 | 3110 | 16 |
| 10694 | 3110 | 16 |
| 10708 | 3110 | 16 |
| 11373 | 3117 | 16 |

|     |                                                                 |
| --: | :-------------------------------------------------------------- |
| 1   | <u>**Friday - December 1, 2023**</u>                    <u>**9:08 a.m.**</u> |
| 2   |                   **P R O C E E D I N G S**                    |
| 3   |                           ---oOo---                             |
| 4   |   (Proceedings were heard in the presence of the jury:)         |
| 5   |       **THE CLERK:** Calling Civil 20-5671, Epic Games, Inc.    |
| 6   | vs. Google LLC, and Multidistrict Litigation 21-2981, In re     |
| 7   | Google Play Store Antitrust Litigation.                         |
| 8   |       **MR. BORNSTEIN:** Good morning, Your Honor. Gary         |
| 9   | Bornstein for Epic Games. Today I have with me Ben Wiley,       |
| 10  | Yonatan Even, Michael Zaken, Andrew Wiktor, Lauren Moskowitz,   |
| 11  | and Tim Cameron.                                                |
| 12  |       **MR. POMERANTZ:** Good morning, Your Honor. Glenn        |
| 13  | Pomerantz on behalf of Google, and with me are Leigha Beckman,  |
| 14  | Dane Shikman, Brian Smith, Michelle Park Chiu, Jonathan Kravis, |
| 15  | and Lauren Bell.                                                |
| 16  |       **THE COURT:** Okay. Who do we have next?                 |
| 17  |       **MS. BELL:** Your Honor, Google calls Carson Oliver.     |
| 18  |       **THE COURT:** All right.                                 |
| 19  |                  (Pause in proceedings.)                        |
| 20  |       **THE CLERK:** Raise your right hand.                     |
| 21  |                     <u>**CARSON OLIVER**</u>,                   |
| 22  | called as a witness for the Defendant, having been duly sworn,  |
| 23  | testified as follows:                                           |
| 24  |       **THE WITNESS:** I do.                                    |
| 25  |       **THE CLERK:** Thank you. Please be seated.               |

| | |
|---|---|
| 1 | not show that Google Play and Google Play Billing are separate |
| 2 | products.  There was not sufficient evidence on this issue.  In |
| 3 | particular, Epic has not shown the developers demand a product |
| 4 | by Google Play Billing that is separate from the Google Play |
| 5 | Store. |
| 6 | On the element of coercion, Epic has failed to offer |
| 7 | legally sufficient evidence of foreclosure because no developer |
| 8 | is coerced into using Google Play Billing over an alternative |
| 9 | monetization option, such as advertising or consumption-only |
| 10 | distribution. |
| 11 | Those are our arguments, Your Honor. |
| 12 | **THE COURT:** Okay.  Epic, I'm prepared to rule.  If you |
| 13 | want to say thing, you certainly can. |
| 14 | **MR. BORNSTEIN:** No, Your Honor, unless you're willing |
| 15 | to entertain some argument on the Activision issue. |
| 16 | **THE COURT:** Well, maybe.  We'll get to that. |
| 17 | But with respect to the Rule 50(a) motion, it's denied. |
| 18 | As I've mentioned on previous occasions, I have paid great |
| 19 | attention to each and every word and document that has been |
| 20 | propounded into evidence during the trial, as has the jury.  I |
| 21 | really have been watching them closely.  They've been a superb |
| 22 | jury; and knock on wood, we haven't anybody really yet except |
| 23 | one person very early in the case with special circumstances |
| 24 | before any evidence started. |
| 25 | I am completely satisfied that there is more than enough |

| | |
|---|---|
| 1 | evidence in the record for the jury to find in favor of |
| 2 | plaintiff on each and every one of their claims; and so for |
| 3 | that reason, the Rule 50(a) motion is denied.  That is, of |
| 4 | course, subject to renewal as warranted by circumstances under |
| 5 | Rule 50(b) -- B, as in boy -- postverdict. |
| 6 | That takes care of that.  Let's go to the jury |
| 7 | instructions. |
| 8 | So let me hit a couple of highlights, then we're going to |
| 9 | go through the individual ones in prompt fashion.  I don't |
| 10 | think it's going to take forever to get through it. |
| 11 | Okay.  So with respect to the ABK agreement, I've looked |
| 12 | carefully, Mr. Bornstein, at the evidence that you gave to me |
| 13 | the other day and the record as a whole, and I just cannot say |
| 14 | that that agreement is, quote, "so plainly anticompetitive and |
| 15 | so lacking in any redeeming value such that it can be |
| 16 | conclusively presumed illegal and treated as a per se |
| 17 | violation."  And I'm quoting from *Epic v. Apple*, 67 F.4th |
| 18 | 946-997.  So it will be rule of reason. |
| 19 | Okay.  Now, with respect to permissive, the permissive |
| 20 | inference, it is deeply troubling to me as a judicial officer |
| 21 | of the United States, the record that I have seen by Google in |
| 22 | this case with respect to the willful and intentionally |
| 23 | suppression of relevant evidence. |
| 24 | You-all recall that I concluded after a prior evidentiary |
| 25 | hearing with testimony from -- and other evidence from Google |

1    and its employees, that Google had failed to preserve Chat
2    evidence with the intent of preventing its use in this
3    litigation and with the intent of depriving Epic of the use of
4    that evidence.  That's at Docket Number 469, page 18.
5        The evidence presented during trial most recently in the
6    testimony of Google employee Loew, L-O-E-W, just an hour or two
7    ago has strongly underscored this conclusion.
8        Google's witnesses at trial have testified about making
9    intentional decisions not to preserve Chats with potentially
10   relevant evidence.  Google's witnesses have also -- and I'm
11   referring here namely to in-house attorney Emily Garber -- have
12   also testified or given disturbing testimony about the use of,
13   quote, "fake privilege," close quote, claims with respect to
14   internal Google documents and communications.  As I said
15   previously, I found Attorney Garber's effort to explain this
16   away to be not credible and unpersuasive.
17       I have also noticed an unusually large number of
18   documents, Google documents, labeled "Privileged and
19   Confidential" by Google employees who prepared them.  These
20   documents, which I have looked at quite closely in the course
21   of their presentation in evidence, these documents on their
22   face have typically not included any indicia that the document
23   was, in fact, prepared in connection with an attorney-client
24   communication or with the goal of it soliciting attorney
25   advice.

```
 1       You will recall that I asked, I think it was yesterday --
 2   was that Paul Gennai? -- yesterday I asked Google witness Paul
 3   Gennai about this very point.  You will recall that he had
 4   labeled as privileged and confidential a document that he,
 5   himself, described as his own personal notes.  This document
 6   lacked any indication that it was privileged in any way.  And
 7   in response to my questions about his assertion of the
 8   privilege, he did not establish any basis whatsoever for a
 9   valid claim that these are privileged and confidential notes.
10       Now, the result of all this, I invited Google's chief
11   legal officer, Kent Walker, to come in and help me understand
12   why all of this was happening and why these evidence games were
13   so rampant at Google.
14       I found his testimony, which was taken outside the
15   presence of the jury, did not do anything to assuage my
16   concerns.  The testimony of Attorney Walker was evasive and was
17   materially inconsistent with testimony given by Google's
18   witnesses at the Chat hearing as described in Docket 469.
19       All of this presents the most serious and disturbing
20   evidence I have ever seen in my decade on the bench with
21   respect to a party intentionally suppressing potentially
22   relevant evidence in litigation.  I have just never seen
23   anything this egregious.
24       And my concern, as every judge's concern would be, is
25   motivated by the fact that this conduct is a frontal assault on
```

1    the fair administration of justice.  It undercuts due process
2    and it calls into question the just resolution of legal
3    disputes.   It's antithetical to our system.
4         It also imposes tremendous taxes and costs, in terms of
5    time and effort money, on opposing parties.  Just getting
6    through bogus privilege assertions alone takes forever.
7    Somebody has to look at those documents, they have to evaluate
8    it, they have to make a claim, they have to fight about it, and
9    then they have to come to the judge to get it resolved.
10        In addition to that, it imposes completely untenable costs
11   on scarce federal judicial resources having to deal with all of
12   this.   There is nothing I would rather do than not deal with
13   this, but you have forced me to do it because of this rampant
14   and systemic culture of evidence suppression at Google.
15        Now, that's a long line of me saying I'm not going to give
16   a mandatory instruction, and I'm going to tell you why.  There
17   is no doubt in my mind a mandatory inference would be amply
18   warranted in this case given all the evidence we have.
19   However, I have concluded that the best course of action is for
20   the jury itself to decide whether it will make an inference,
21   and I am not going to constrain the jury's discretion by making
22   that inference for them or making that decision for them.  I
23   believe that is most faithful to the right to a jury trial, the
24   Seventh Amendment, and also the fair administration of justice.
25        So even though it would be well within bounds to issue a

1   mandatory inference instruction, I'm going to decline to do
2   that and take the more conservative approach of letting the
3   jury decide for itself.
4       Another reason I'm going to do that is that I can pursue
5   these issues on my own outside of this trial in subsequent
6   proceedings, which I intend to do.  I am going to get to the
7   bottom of who is responsible among outside counsel for allowing
8   this to happen.  I'm going to get to the bottom of who is
9   responsible within Google for tolerating this culture
10  suppression.  That's going to be separate and apart from
11  anything that happens here, but that day is coming.
12      So that's the basis for the permissive inference.
13      Now, we've talked about the after market.  You wanted to
14  add something, Mr. Bornstein?
15          **MR. BORNSTEIN:**  I'm sorry, Your Honor.  I didn't hear
16  what the question was?
17          **THE COURT:**  We talked about after market, but you
18  wanted to add something?
19          **MR. BORNSTEIN:**  Oh, it was not about after market.  We
20  had a -- I absolutely heard the ruling that Your Honor just
21  gave and have no intention of rearguing it --
22          **THE COURT:**  Oh, okay.
23          **MR. BORNSTEIN:**  -- but we did have a proposal that we
24  had made to Google on this issue to pair with the permissive
25  adverse inference instruction, and I'm going to cede the floor

1    **THE CLERK:** All rise. Court's in recess.

2    (Proceedings adjourned at 3:54 p.m.)

3    ---oOo---

5    **CERTIFICATE OF REPORTER**

6    I certify that the foregoing is a correct transcript
7    from the record of proceedings in the above-entitled matter.

9    DATE:   Friday, December 1, 2023

_Kelly Shainline_

14   Kelly Shainline, CSR No. 13476, RPR, CRR
     U.S. Court Reporter