# Exhibit 13

HIGHLY CONFIDENTIAL

Page 1

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF TEXAS

SHERMAN DIVISION

- - -

THE STATE OF TEXAS, et al.,

Plaintiffs,

v.                              Civil Action No.

GOOGLE LLC,                     4:20-cv-00957-SDJ

Defendant.

- - -

April 5, 2024

- HIGHLY CONFIDENTIAL -

Videotaped deposition of

███████ ███████ held at Freshfields,

Bruckhaus, Deringer, 170 Greenwich Street,

New York, New York, commencing at 8:00

a.m. EDT, on the above date, before Marie

Foley, a Registered Merit Reporter,

Certified Realtime Reporter and Notary

Public.

- - -

Job No. MDLG6626470

```
                                                        Page 2
 1
 2   A P P E A R A N C E S:
 3
 4   NORTON ROSE FULBRIGHT US LLP
 5   BY:  M. MILES ROBINSON, ESQUIRE
 6        GERALDINE YOUNG, ESQUIRE
 7        DANIELLA TORREALBA, ESQUIRE
 8        Fulbright Tower
 9        1301 McKinney, Suite 5100
10        Houston, Texas  77010-3095
11        713.651.5151
12        m.miles.robinson@nortonrosefulbright.com
13
14
15   THE LANIER LAW FIRM
16   BY:  ZEKE DeROSE, III, ESQUIRE (via Zoom)
17        10940 W. Sam Houston Parkway N
18        Suite 100
19        Houston, Texas  77064
20        713.659.5200
21        zeke.derose@lanierlawfirm.com
22        Representing the Plaintiff States of
23        Texas, Idaho, South Dakota and
24        North Dakota
25
```

```
                                                        Page 3
 1
 2   A P P E A R A N C E S: (Cont.)
 3
 4   FRESHFIELDS BRUCKHAUS DERINGER LLP
 5   BY: SARA SALEM, ESQUIRE
 6        TINA LaRITZ, ESQUIRE
 7        JUSTINA SESSIONS, ESQUIRE
 8        LAUREN VACA, ESQUIRE (via Zoom)
 9        700 13th Street, NW
10        10th Floor
11        Washington, DC  20005-3960
12        202.777.4400
13        sara.salem@freshfields.com
14        Representing the Defendant
15
16
17   ALSO PRESENT:
18        Steve Sparling, Google in-house counsel
19
20   ALSO PRESENT VIA ZOOM:
21        Trevor Young, Texas Attorney
22                  General's Office
23        Melonie DeRose, Lanier Law Firm
24        Jonathan D. Jaffe, Mayer Brown
25        Cuong Pham
```

```
 3   EXHIBIT TECHNICIAN:
 4        Ray Moore (via Zoom)



 7   VIDEOGRAPHER:
 8        Danny Ortega
```

Page 221

1
2  comment's overall goal to highlight the
3  needs of end-users, right?
4      A.   The comment's referring to the
5  specific content on the slide to which I
6  testified I don't know specifically what
7  it's referring to in regard to the
8  underlying text.  And the comment, I
9  didn't make the comment.
10         I'm comfortable testifying that
11 generally we put -- not generally.  We put
12 the interests of our customers and users
13 first.
14         MR. ROBINSON:  Okay.
15         I want to move to a new exhibit
16     that is Bates stamped
17     GOOG-AT-MDL-012527114.
18         (Exhibit 55, email with
19     attachment, Bates
20     GOOG-AT-MDL-012527114-154, was marked
21     for identification, as of this date.)
22 BY MR. ROBINSON:
23     Q.   Now, this is a big document, but
24 I will only be asking you about just a
25 fraction of it.

Page 222

```
 2              So, just looking at the first
 3   couple pages -- actually, looking at the
 4   first page, do you see that this is a
 5   email dated July 20th, 2010 from a Neal
 6   Mohan?
 7        A.    Yes, I see this is an email sent
 8   by Neal Mohan on July 20th, 2010.
 9        Q.    Who is Neal Mohan?
10        A.    Neal Mohan is an executive at
11   Google.
12        Q.    And what -- what is his position
13   at Google?
14        A.    I believe he's the current CEO
15   of YouTube.
16        Q.    And do you see the subject line
17   that says:  ▓▓▓▓▓▓▓▓   ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
18   ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
19   ▓▓▓▓▓▓▓▓▓▓?
20        A.    Yes, I see that subject line.
21        Q.    And Invite Media, we spoke about
22   this earlier, Invite Media is the company
23   you were at before Google acquired it,
24   right?
25        A.    Invite Media was my employer and
```

HIGHLY CONFIDENTIAL

Page 223

1
2  was acquired by Google and is how I became
3  an employee of Google.
4      Q.   And you were an employee at
5  Invite Media in July of 2010?
6      A.   I was officially an employee of
7  Google at that time as a part of the
8  Invite Media business unit.
9      Q.   And what was Neal Mohan's
10 position at this time in July 2010?
11     A.   I don't know his specific title,
12 but I believe he was running the product
13 and engineering organization for
14 DoubleClick as a business unit as well as
15 at least the Invite Media team that was
16 acquired into Google.
17     Q.   So can you see the next couple
18 of pages are a giant list of email
19 addresses, and make it a little easier
20 because your name appears the bottom
21 right-hand corner number is 12527117, and
22 you're about middle bottom of the page
23 towards the right-hand side and I think
24 arrange -- it appears to be arranged by
25 alphabetical order of the recipients'

HIGHLY CONFIDENTIAL

Page 224

1
2  first names.
3            There are a lot of times, but
4  let me know whenever you find yours.
5       A.   I found my name.
6       Q.   So you received this email,
7  right?
8       A.   Presumably, yes.  It was sent to
9  my Google address at a time I worked at
10 Google.
11      Q.   Now, the -- the very next page,
12 the email addresses finally end, and this
13 appears to be an email again from Neal
14 Mohan, right?  That starts with:  Thank
15 you to Neal?
16           MS. SALEM:  Object to form.
17      A.   The email that you're
18 referencing here does not seem to be
19 written by Neal Mohan.  It seems to be
20 thanking Neal Mohan.
21      Q.   You're right.  The email appears
22 to be from, if we go back to the very
23 first page, from a ███████ █ ████████████.
24           Do you see that on the first
25 page?

Page 225

1
2      A.    I do see that.
3      Q.    And it's dated July 20th, 2010,
4   right?
5      A.    Yes.
6      Q.    Who is ██████ █ ██████████?
7      A.    I don't recognize that name
8   specifically.
9      Q.    But the email, if we go the
10  actual body of the email it reads:  Thank
11  you to Neal and everybody -- and everyone
12  who attended today's Display, Platforms,
13  Agency & Invite Media All-Hands.  Attached
14  please find Neal's presentation with the
15  updated slides.  In response to Sabrina's
16  query, you can direct all inbounds for
17  Invite Media to invitemedia-sales.
18            Did I read that correctly?
19     A.    Yeah.
20     Q.    So, with you being on this email
21  thread, did you attend this all-hands that
22  ████████████████████ is referring to?
23     A.    I do not recall.
24     Q.    Do you have any reason to think
25  that you didn't go to this all-hands

Page 226

1
2  meeting?
3     A.   I don't recall if I attended
4  this all-hands meeting or not.
5     Q.   Can I assume correctly if it
6  says it's a Invite Media all-hands and
7  you're -- if you were an account director
8  at Invite Media and you're listed on the
9  email that you probably attended this
10 all-hands?
11    A.   The all-hands was for Display,
12 Platforms, Agency & Invite Media.  It
13 seems to be a much larger group of people,
14 and it would not have been out of ordinary
15 course for me to miss a meeting if I had a
16 customer engagement, for example.
17    Q.   But you can't recall one way or
18 another?
19    A.   I don't recall if I attended
20 this meeting.
21    Q.   And at this point in July of
22 2010, Google had purchased Invite Media?
23    A.   I believe so, yes.
24    Q.   So I want to go to the actual
25 presentation itself and on the page marked

Page 227

2  at the bottom right-hand corner 012527120,
3  the first slide.
4          Do you see that?
5     A.   Yes.
6     Q.   And it's titled:  Agency Display
7  Update.  The right ad to the right
8  audience.  Neal Mohan, VP, Product
9  Management.  June 29th, 2010.
10         Am I reading that correctly?
11    A.   Yes, that's what the slide title
12 says.
13    Q.   Now, I want you to just glance,
14 we're going to go a couple pages down from
15 this, but if you wouldn't mind just
16 glancing at these slides and I'm going to
17 ask you about the page marked 12527124.
18         (Pause.)
19         Just let me know when you've
20 gotten to that slide.
21         (Pause.)
22    A.   Yes, I've gotten to that slide.
23    Q.   Now that you've glanced at least
24 at the first couple of slides, do you
25 recall this presentation from Mr. Mohan?

HIGHLY CONFIDENTIAL

Page 228

1
2      A.    I don't recall seeing this
3  presentation from Mr. Mohan.
4      Q.    But looking at this slide, it's
5  titled:  A Fragmented Technology
6  Landscape.
7            Do you see there's a number of
8  company logos on the slide, right?
9      A.    Yes.
10     Q.    And while the text is a little
11 small, do you recognize any company logos
12 here that were ultimately acquired by
13 Google?
14           MS. SALEM:  Object to form.
15     A.    Yes, I recognize, for example,
16 Invite Media's logo is on this slide.
17     Q.    And which -- which category do
18 you see Invite Media in?
19     A.    Invite Media is listed as a DSP.
20     Q.    And do you see any other
21 company -- company names here that you
22 recognize that Google ultimately acquired?
23     A.    Well, DoubleClick is on this
24 slide with its own logo, but was already
25 part of Google at the time, so that wasn't

HIGHLY CONFIDENTIAL

Page 229

2  a future acquisition.
3      Q.   'Cause at one point in time,
4  DoubleClick was a separate company from
5  Google, right?
6      A.   Correct.
7      Q.   And do you recall when Google
8  acquired DoubleClick?
9      A.   I believe 2008, but I don't know
10 with precision.
11     Q.   And do you recognize any other
12 company names here that Google ultimately
13 acquired?
14          For example, I see in the
15 Performance category more towards the
16 bottom right-hand side I see AdMob listed.
17          Did Google ultimately acquire
18 AdMob?
19     A.   Yes, I believe Google did --
20 well, I don't believe.  Yes, Google
21 acquired AdMob.
22     Q.   Do you recall when that was?
23     A.   I believe in a similar time
24 frame to Invite Media, around 2010.  I
25 don't know the precise date.

Page 230

1
2      Q.    And do you -- do you see any
3  other companies that we haven't already
4  talked about?
5      A.    Google made an acquisition on
6  the sell-side of the business that I had
7  mentioned earlier in my testimony.  I
8  believe it was Admeld.  I sometimes mix up
9  the name with another sell-side company.
10     Q.    Would you mind repeating the
11 name of that company?
12     A.    I believe the company that was
13 the SSP acquisition into our sell-side
14 product area was Admeld, but I sometimes
15 mixup the name with other sell-side
16 products.
17     Q.    So multiple acquisitions
18 since -- since 2010, right?
19     A.    Yes, Google made more than one
20 acquisition since 2008 when DoubleClick
21 was acquired, based on my memory.
22     Q.    I want to turn to the very next
23 page.  That first full paragraph sentence
24 says:  We're focused on simplifying the
25 buying and selling of display ads.

Page 231

1
2              Do you see that?
3     A.    I see that sentence.
4     Q.    Do you know what Mr. Mohan meant
5  by that sentence?
6              MS. SALEM:  Object to the form.
7     A.    I was -- I don't recall being in
8  this presentation and I certainly wasn't
9  in Neal's mind when he was writing what
10  was -- appears to be the speaker notes for
11  the slide.  So I don't know what
12  specifically he would have meant by this
13  sentence, no.
14     Q.    So if you don't recall this
15  presentation, who would be a better person
16  I could ask about this presentation?
17     A.    Presumably folks who were part
18  of the ownership of the document.
19     Q.    Like Mr. Mohan?
20              MS. SALEM:  Object to the form.
21     A.    Presumably if it was his
22  presentation, he could be someone who
23  would be most familiar with the intent at
24  the time.
25     Q.    And he did present this

Page 232

1
2  presentation though, right?
3      A.   I don't know if he presented the
4  presentation or not.
5           As I testified earlier, I don't
6  recall this meeting.
7      Q.   I want to go back a couple pages
8  to page marked 012527120.
9           Just let me know when you're
10 there.
11     A.   Yeah, this is the cover page of
12 the slide; is that correct?
13     Q.   And it says there underneath the
14 title:  Neal Mohan, VP, Product
15 Management.
16          Right?
17     A.   That's what it says on the title
18 slide.
19     Q.   So presumably, if his title's
20 right there, he was probably the person
21 that presented this presentation, right?
22     A.   Sorry, I'm referencing back the
23 email:  In response to Sabrina's query you
24 can direct all inbounds.  Attached please
25 find Neal's presentation with the updated

Page 233

2    slides.
3         I was not in the meeting.  I
4    don't recall the presentation.  Based on
5    the context that presumably this is the
6    slide deck that was attached to the email,
7    these are the slides from what's referred
8    to as Neal's presentation.
9         I don't know if there would have
10   been other presenters as well.
11        Q.   Did you ever talk to Mr. Mohan
12   about the Invite Media acquisition?
13        A.   At the time that I would have
14   worked with Mr. Mohan, he was quite senior
15   to me.  I would not have talked to him, I
16   don't have any recollection of talking to
17   him about the acquisition, no.
18        Q.   By you were included in the
19   invite list for this -- for this
20   all-hands, right?
21        A.   Yes, the all-hands generally
22   refers to all individuals who work across
23   the business area, and I was a part of the
24   Invite Media team which was one of the
25   teams included in the meeting invitation.

VERITEXT LEGAL SOLUTIONS

COMPANY CERTIFICATE AND DISCLOSURE STATEMENT

Veritext Legal Solutions represents that the foregoing transcript is a true, correct and complete transcript of the colloquies, questions and answers as submitted by the court reporter. Veritext Legal Solutions further represents that the attached exhibits, if any, are true, correct and complete documents as submitted by the court reporter and/or attorneys in relation to this deposition and that the documents were processed in accordance with our litigation support and production standards.

Veritext Legal Solutions is committed to maintaining the confidentiality of client and witness information, in accordance with the regulations promulgated under the Health Insurance Portability and Accountability Act (HIPAA), as amended with respect to protected health information and the Gramm-Leach-Bliley Act, as amended, with respect to Personally Identifiable Information (PII). Physical transcripts and exhibits are managed under strict facility and personnel access controls. Electronic files of documents are stored in encrypted form and are transmitted in an encrypted

fashion to authenticated parties who are permitted to access the material. Our data is hosted in a Tier 4 SSAE 16 certified facility.

Veritext Legal Solutions complies with all federal and State regulations with respect to the provision of court reporting services, and maintains its neutrality and independence regardless of relationship or the financial outcome of any litigation. Veritext requires adherence to the foregoing professional and ethical standards from all of its subcontractors in their independent contractor agreements.

Inquiries about Veritext Legal Solutions' confidentiality and security policies and practices should be directed to Veritext's Client Services Associates indicated on the cover of this document or at www.veritext.com.