IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| THE STATE OF TEXAS, ET AL. | § § § | |
| v. | § § | CIVIL NO. 4:20-CV-957-SDJ |
| GOOGLE LLC | § § § | |

## ORDER OF SPECIAL MASTER

By Order of the Court dated January 26, 2024 (Dkt. #213) the undersigned was appointed Special Master to address discovery issues and disputes between Plaintiff States ("States") and Defendant Google LLC ("Google"). The States filed their Motion to Compel Production of Expert Reports and Brief Regarding Discovery Into Google's Privacy Sandbox (Dkt. #342) (the "Motion") on April 9, 2024. Google filed its response on April 15, 2024 (Dkt. #376). The Special Master conducted an in-person hearing on the Motion on April 18, 2024 (the "April 18 Hearing").

In the Motion, the States seek an order compelling (i) the production of expert reports from *U.S., et al. v. Google LLC*, No. 1:23-cv-108-LMB-JFA (the "Virginia Action"), and (ii) responses to discovery served by the States on Google's Privacy Sandbox product. (Dkt. #342).

For the reasons stated herein, the Special Master **GRANTS** the Motion as to production of expert reports from the Virginia Action and **DENIES** the Motion as to Privacy Sandbox.

1. **LEGAL STANDARD**

The rules of discovery "are to be accorded a broad and liberal treatment to effect

their purpose of adequately informing litigants in civil trials." *Herbert v. Lando*, 441 U.S. 153, 176 (1979). "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case…." Fed. R. Civ. P. 26(b)(1). "Information within this scope of discovery need not be admissible in evidence to be discoverable." *Id.* "Once the moving party establishes that the materials requested are within the scope of permissible discovery, the burden shifts to the party resisting discovery to show why the discovery is irrelevant, overly broad, or unduly burdensome or oppressive, and thus should not be permitted." *SSL Servs., LLC v. Citrix Sys., Inc.*, No. 2:08-cv-158-TJW, 2010 WL 547478, at *2 (E.D. Tex. Feb. 10, 2010).

2. ANALYSIS

   a. Virginia Expert Reports

The States argue that, under the relevance standards of Fed. R. Civ. P. 26(b)(1) and L.R. CV-26(d), they are entitled to the expert reports served by the Department of Justice and Google in the Virginia Action. (Dkt. #342 at 3–4). The States further cite the Special Master's Report and Recommendation as to the entry of a Coordination Order in this action, which stated that such expert reports are "unquestionably relevant" and acknowledged that several courts have ordered the production of expert reports in similar circumstances. (*Id.* at 4) (citing Dkt. #230 at 5–6).

Google argues in response that it would be prejudiced in this case by premature disclosure of expert reports. (Dkt. #376 at 1–2). Google refers to the Court's Scheduling Order, which provides for the disclosure of expert opinions after the end of fact

discovery, and argues that good cause is needed to alter those deadlines. (*Id.* at 2–3). Google also refers to Magistrate Judge Anderson's ruling in the Virginia Action that expert reports could not be shared with the parties in the MDL, based on a conclusion that Google would be prejudiced by such sharing and that there was not good cause to modify the Coordination Order in place in that Court. (*Id.* at 2) (citing Virginia Action, Dkt. #516).

The Special Master is persuaded by Chief Judge Gilstrap's analysis in *Infernal Tech., LLC v. Microsoft Corp.*, Civ. A. No. 2:18-cv-144-JRG, 2019 WL 5388442 (E.D. Tex. May 3, 2019).[1] In *Infernal*, the Court noted that "prior litigation positions regarding the same claims asserted in this case are relevant to the claims and defenses in this case." *Id.*, at *2. As Google's counsel stated during the March 10, 2023 hearing in the Virginia Action, this case and the Virginia Action are "the same case, under the same legal theories, with the same allegations, concerning the same Google products and services, at the same time." *See* Virginia Action, Mar. 10, 2023 Tr. at 9.

The recent opinion in *Alaska Air Grp., Inc. v. Anthem, Inc.*, No. 2:21-cv-1209-RDP, 2024 WL 347156 (N.D. Ala., Jan. 30, 2024) is also instructive. In *Alaska Air*, the plaintiffs—a group of claimants in an antitrust action who opted out of an MDL proceeding to pursue their claims separately—sought the production of expert reports submitted in the MDL proceeding. *See id.*, at *1–2. The defendants made an

---

[1] Google initially argued that *Infernal* should not apply here, on the basis that the Court ruled on the issue after the close of fact discovery in that case and during the expert discovery phase, but withdrew that argument upon a further filing by the States demonstrating otherwise. (Dkt. #376 at 4; #382); (Apr. 18 Hrg. Tr. at 18).

**ORDER OF SPECIAL MASTER – Page 3**

argument similar to the one Google makes here, seeking to "delay production until the period of expert discovery," but the Court rejected that argument and "readily conclude[d] that discovery of Defendants' expert reports produced in the MDL is actually *fact discovery*." *Id.*, at *2 (emphasis added). The *Alaska Air* Court further found the prior expert reports "are clearly relevant," noting that they "address the same questions that existed in the MDL," including the relevant product market and whether challenged restraints had anticompetitive effects. *Id.* The Court concluded that "prior litigation positions regarding the same claims are relevant to the claims and defenses in this subsequent, nearly identical litigation. . . . Therefore, the discovery sought is relevant." *Id.*[2] The *Alaska Air* Court further concluded that "the argument that Plaintiffs may obtain an unfair advantage by the production of Defendants MDL expert reports during fact discovery, before the period for expert discovery, rings hollow." *Id.*, at *3 (noting also that defendants already had access to the plaintiffs' expert reports in the MDL).

As noted in the Special Master's earlier Report and Recommendation, "this District's Local Rules are designed to promote sharing relevant information in discovery, and the parties' expert reports are unquestionably relevant information." (Dkt. #230 at 5–6). At the time of that Report and Recommendation, the Special Master did not recommend that expert reports be included in the shared discovery permitted by the Coordination Order. (*Id.* at 6). But, as the parties are aware, that Coordination Order never became operative. (*See* Dkt. #266 ¶ 10) ("This Order shall not come into

---

[2] The *Alaska Air* Court cited to the *Infernal* opinion. *Id.*

**ORDER OF SPECIAL MASTER – Page 4**

effect unless and until it has been entered in both the MDL and the Texas Case."); *see also In re Google Digital Advertising Antitrust Lit.*, 21-md-3010 (S.D.N.Y.) (Dkt. #708) (order of MDL Court denying entry of Coordination Order).

The different procedural posture of the parties' current dispute demands, in the Special Master's view, a different analysis than that applied when the issue arose in the Virginia Action or when previously presented to the Special Master. As noted by the Virginia Court, "given the procedural posture of how [expert report sharing] has come before the Court, that an order was negotiated by the parties and entered by the Court, that there has to be good cause or good reason" to modify that order. (*See* Virginia Action, Dkt. #516, at 29:12–15). And when the Special Master recommended that expert reports be excluded from the definition of "Shared Discovery" in a recommended Coordination Order, the Special Master attempted to achieve coordination and consistency across three related cases. (*See* Dkt. #230 at 6) ("The Special Master is persuaded that principles of comity and coordination between the three actions require approaching the issue the same way . . . ."). Now, in the absence of a request to modify an existing Coordination Order, and indeed in the absence of an operative Coordination Order in this case, the Special Master views the issue primarily as one of relevance under Rule 26 and L.R. CV-26(d). Under that standard, and approaching the issue as the *Infernal* and *Alaska Air* courts did, the Special Master concludes the expert reports from the Virginia Action are discoverable and must be produced by Google in this case.

The Special Master appreciates the determination of the Virginia Court that

Google would be prejudiced by expert report sharing. However, the Special Master views the issue differently in this procedural posture, and finds that any asserted prejudice to Google from allowing the States equal access to expert reports from the Virginia Action is outweighed by the prejudice to the States of Google alone having access to the same relevant expert reports. The Special Master views the efficiency gain and truth-seeking function to be significant and consistent with the text and goal of Fed. R. Civ. P. 1 of securing "the just, speedy, and inexpensive determination of every action and proceeding."

In the briefing, and at the April 18 Hearing, Google argues that the States would get a "sneak peek" of Google's arguments and incorporate that analysis into the States' opening expert reports in this case. (*See* Apr. 18 Hrg. Tr. at 12). In response, the States state they seek to vet inconsistencies in Google's Rule 30(b)(6) and other fact witness testimony in this case. (*Id.* at 9). The Special Master is not persuaded that a "sneak peek" is unfairly prejudicial to Google. *See Alaska Air*, 2024 WL 347156, at *3 ("[T]he argument that Plaintiffs may obtain an unfair advantage by the production of Defendants MDL expert reports during fact discovery, before the period for expert discovery, rings hollow."). In any event, Google will still have a full and fair opportunity to rebut the States' expert reports and serve their own responsive expert reports under this Court's Scheduling Order.

Further, to the extent there are confidentiality or protective order concerns, the Special Master notes that the Court has entered a Confidentiality Order (Dkt. #182), and is confident that the parties will cooperate and protect any designated materials

and the interests of others, including third parties.

### b. Privacy Sandbox

The States' Fourth Amended Complaint alleges that Google's Privacy Sandbox product—which blocks publishers and advertisers from using cookies on Google Chrome to track users and target advertisements—is anticompetitive. (*See* Fourth Am. Complaint ¶¶ 472, 474, 520, 605(f)). The States argue that Google should be compelled to respond to discovery regarding Privacy Sandbox, including the States' Request for Production Nos. 26 and 28. (Dkt. #342 at 10–11). Google responds that Judge Castel in the MDL proceeding found at an earlier stage of the case that Privacy Sandbox was not a ripe issue, as the product was "contingent" and "hypothetical" at the time. (Dkt. #376 at 6–7) (citing MDL, Dkt. #308 at 72–73). Google takes the position that "[t]hose contingent and hypothetical allegations have not changed in the nineteen months since Judge Castel issued that opinion," citing a news article stating that Privacy Sandbox has not been finalized or implemented. (*Id.* at 7–8).

The MDL Court concluded that an opinion on the merits of Privacy Sandbox's anticompetitive effects would be "advisory" as the product was not implemented yet. (*See* MDL, Dkt. #308 at 72). However, it remains uncertain at this time whether and to what extent Privacy Sandbox has been deployed.[3] Further, Google represented at

---

[3] It appears that some Privacy Sandbox features may have been deployed to 1% of users under the supervision of the UK CMA. *See* https://privacysandbox.com/open-web/ (last visited April 17, 2024); (see also Apr. 18 Hrg. Tr. at 25–30). However, Google noted at the April 18 Hearing that such deployment is for regulatory testing purposes in the United Kingdom. (*See id.* at 29) ("[M]y understanding is that it's a testing [of] the potential effects of Sandbox on a small percentage of traffic under the supervision of the UK CMA.").

ORDER OF SPECIAL MASTER – Page 7

the April 18 Hearing that Privacy Sandbox discovery would likely be burdensome and disproportional and adversely impact the fact discovery deadline. (*See* Apr. 18 Hrg. Tr. at 33–34) ("My understanding is that it is a heavy lift."); (*see also id.* at 25). Further, Privacy Sandbox remains contingent upon approval by the UK CMA. (*Id.* at 26–30). Balancing considerations of relevance and proportionality, the production burden in light of the fast-approaching end of fact discovery, and the remaining important discovery that both sides need to complete, the Special Master finds that Privacy Sandbox remains contingent and subject to the supervision and future UK regulatory approval for final implementation. Thus, at this time, the requested discovery into Privacy Sandbox is not proportional to the needs of this case.[4]

3.   **CONCLUSION**

For the reasons stated herein, the Special Master **GRANTS** the Motion as to expert reports from the Virginia Action, but **DENIES** the Motion as to Privacy Sandbox discovery.

Signed this 24th day of April, 2024.

David T. Moran
**Special Master**
TXBN: 14419400
JACKSON WALKER LLP
2323 Ross Avenue, Suite 600
Dallas, Texas  75201
Telephone: (214) 953-6051
E-mail:  dmoran@jw.com

---

[4] The Special Master notes that the eventual deployment, if any, of Privacy Sandbox may later affect the claims and potential remedies in this case.

ORDER OF SPECIAL MASTER – Page 8

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing Order of Special Master was filed electronically in compliance with Local Rule CV-5(a) on this 24th day of April, 2024. As such, this document was served on all counsel who are deemed to have consented to electronic service. Local Rule CV-5(a)(3)(A).

_____
David T. Moran