**EXHIBIT 4**

**Memorandum and Proposed Order in Support of Motion to Amend Coordination Order**

**(E.D. Va.)**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | | |
|---|---|---|
| UNITED STATES, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | No. 1:23-cv-00108-LMB-JFA |
| | ) | |
| GOOGLE LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**<u>PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION TO AMEND ORDER</u>**
**<u>REGARDING COORDINATION OF DISCOVERY</u>**

At the outset of discovery in this case, both the Plaintiffs and Google agreed that coordination with the other lawsuits filed against Google alleging antitrust violations related to Google's ad tech business was in the interest of all parties to the actions, as well as the numerous non-parties whose documents and testimony would be sought in these actions. Plaintiffs and Google sought, and this Court entered, a Coordination Order (ECF No. 251), which at the time covered all the major related cases: this case brought by the United States and its state co-plaintiffs, the case brought by the State of Texas and its state co-plaintiffs, and the cases brought by various private parties and class actions. Because at the time all of those cases except this case were consolidated into a multi-district litigation pending in New York, coordination among all the cases could be effectuated through an order requiring coordination with the multi-district litigation in New York. Since that time, circumstances have changed—the case brought by Texas has been removed from the multi-district litigation and remanded for further proceedings in Texas. This change in circumstances requires an amendment to the Coordination Order to maintain the same level of coordination as previously agreed between the parties and ordered by this Court.

When Plaintiffs agreed to coordinate discovery in this action with discovery taking place in the multi-district litigation in New York, Plaintiffs did so with the understanding that after discovery in this action was complete, Plaintiffs would be entitled, pursuant to the terms of the negotiated Coordination Order, to documents and deposition testimony in the other related cases to which Google was a party so that Google would not have, by virtue of its participation in those cases, an informational advantage over Plaintiffs in this action. Plaintiffs negotiated for, and secured, an agreement and order requiring certain documents and testimony obtained in the multi-district litigation to be made available to Plaintiffs—even after the close of fact discovery here (as contained in paragraphs 2.e. and 6.b.-d. of the Coordination Order). Those provisions of the Coordination Order—which applied to the case brought by Texas at the time the Coordination Order was entered—were the fundamental "benefit of the bargain" that Plaintiffs sought in exchange for agreeing to coordinate discovery with the related cases in the first place. Yet now that the Texas case is proceeding with document and deposition discovery, Google seeks to deny Plaintiffs the benefit of that bargain.

For those reasons, Plaintiffs are moving for an order amending the Coordination Order to treat the Texas case identically to the cases still in the multi-district litigation for purposes of the Coordination Order. Plaintiffs have met-and-conferred with counsel for Google and for Texas and its co-plaintiffs regarding this motion. Google opposes the relief requested in this motion. Texas and its co-plaintiffs do not oppose the relief requested.

## BACKGROUND

### A. This Court Ordered Coordination with the Texas Case while Part of the MDL, Including Coordination After the Close of Fact Discovery.

At the start of discovery in this case, the Plaintiffs and Google agreed that coordinating aspects of this case with the pending multi-district litigation against Google, *In re Google Digital*

*Advertising Antitrust Litigation*, No. 1:21-md-03010 (S.D.N.Y.) (the "MDL"), would benefit all parties as well as the numerous third parties whose documents and testimony would be sought in these cases. *See* ECF Nos. 165 & 166 (Google's motion for entry of coordination order); ECF No. 174 (Plaintiffs' brief in support thereof). After resolving certain disputes between the parties as to the extent of the coordination (*see* ECF No. 201), the Court entered an Order Regarding Coordination of Discovery (ECF No. 251) (the "Coordination Order"), which has been in effect ever since. At the time the Coordination Order was entered, the lawsuit filed by Texas and its co-plaintiffs against Google, *State of Texas et al. v. Google LLC*, No. 4:20-cv-957 (E.D. Tex.) (the "Texas Case"), was consolidated with and part of the MDL.

Google obtained significant benefits from the Coordination Order: Google was freely able to use all documents produced in this case in the MDL without serving additional discovery in the MDL (*see* Coordination Order, ¶ 2.e.)—including the millions of documents produced by the United States and the State Plaintiffs from their own files, documents they collected from non-parties during their pre-suit investigations, and documents obtained from non-parties via subpoenas issued in this case. Google further benefitted from the coordination of depositions taken of Google witnesses, who, absent good cause, could only be deposed only once across this case and the MDL. *See* Coordination Order, ¶¶ 3.e., 4.b. Indeed, of the ten party depositions noticed by the Plaintiffs in this case, the MDL Plaintiffs cross-noticed four of them—meaning Google obtained the benefit of scheduling those depositions on two consecutive days, and for the remaining depositions of individual Google witnesses, the MDL Plaintiffs' choice not to cross-notice the depositions meant that those Google witnesses are no longer subject to deposition in the MDL, absent good cause shown.

While discovery is indisputably closed in this case, the Coordination Order expressly permitted limited additional coordination between this case and the MDL after the close of fact discovery. First, this Court ordered that transcripts and exhibits from Google and non-party depositions taken in the MDL could be obtained by counsel for the Plaintiffs and used for impeachment at trial. Coordination Order, ¶ 6.b.-d. Second, this Court ordered that documents obtained by Google in the MDL *after* the close of discovery in this case could be used for impeachment purposes in this case if they were promptly re-produced (within 14 days of receipt) to the Plaintiffs. *Id.*, ¶ 2.e. These provisions were the primary benefit Plaintiffs obtained from agreeing to the Coordination Order and consenting to allowing Google to re-use all materials collected by Plaintiffs in the MDL. And at the time, Google did not dispute that the Coordination Order should allow the use in this case of documents and depositions obtained in the MDL after the close of fact discovery in this case. Indeed, Google argued for a *broader* provision allowing unrestricted use in this case (i.e., not only for impeachment) for documents and depositions it obtained in the MDL after the close of fact discovery, asserting that doing so "advances the truth-seeking function of litigation," would "promote the just resolution of these matters," and lessen "the risk of inconsistent rulings." ECF No. 166, at 6.

## B.  After its Remand, Texas Sought an Order from the Texas Court Effectuating Continued Coordination with this Case.

The Coordination Order entered here and in the MDL expressly contemplated the possibility that the Texas Case would become separated from the MDL, and that continued coordination between this case and the Texas Case may be appropriate in that event. *See* Coordination Order, ¶ 9 ("If any case(s) currently part of the MDL are transferred to other venue(s), the Parties in the Coordinated Cases shall meet and confer with the parties to the

transferred case(s) regarding whether, and on what conditions, the transferred case(s) should be coordinated with the MDL and the Virginia Case.").

On November 1, 2023, pursuant to orders from the Judicial Panel on Multidistrict Litigation and the United States Court of Appeals for the Second Circuit, the Texas Case was remanded from the MDL for further proceedings before the United States District Court for the Eastern District of Texas, where the case is currently proceeding. *See In re Google Digital Advertising Antitrust Litig.*, MDL No. 3010, ECF No. 250 (J.P.M.L. June 5, 2023); *In re Google LLC*, No. 23-910, ECF No. 101 (2d Cir. Oct. 4, 2023).

Upon remand, Texas and Google sought a coordination order in the Texas Case, and such an order was entered on February 26, 2024. *See* No. 4:20-cv-957, ECF No. 266 (E.D. Tex.). The focus of that order was coordination of fact discovery between the Texas Case and the MDL, as fact discovery is still open in both of those cases, but the order also effectuated some of the limited post-close-of-fact discovery coordination allowed in the Coordination Order. *See id*. ¶ 6.b. ("Counsel for any Party and Virginia Plaintiffs' Counsel may obtain Transcripts and exhibits of Google Depositions, Party Depositions, and Non-Party depositions in the Texas Case or the MDL after the Fact Discovery Cutoffs in the Virginia Case, the Texas Case, or the MDL directly from the court reporters."). That order was signed by the court in the Texas Case but never became effective because it was contingent on obtaining approval in the MDL (*see id*. ¶ 10), which has not occurred to date. But notwithstanding that fact, Google represented to the court in the Texas Case that Google was committed to coordination with this case:

> [Google's Counsel:] We've actually had productive discussions over the last two days where *Google has made it very clear to plaintiffs that as regards Virginia, we intend to do everything that we can to sort of continue the effectuation of the existing coordination order that was entered in Virginia and the MDL*. And we have made it very clear to plaintiffs that we are prepared to make Google --

continue to make Google's documents and data available and to otherwise coordinate with respect to that existing coordination order.

March 21, 2024 Hearing Transcript, No. 4:20-cv-957, ECF No. 320 (E.D. Tex.) (emphasis added).[1]

### C. A Further Order from this Court is Required to Continue the Previously-Ordered Coordination with the Texas Case.

While this Court previously ordered coordination with the Texas Case (when it was part of the MDL), and the presiding judge in the Texas Case has expressed support for coordination between the Texas Case and this case, a further order of this Court appears necessary to implement the coordination. Plaintiffs' proposed order filed herewith does so in the simplest way possible: amending the Coordination Order to treat the Texas Case as if it were still part of the MDL for purposes of the Coordination Order. This approach simply applies the current Coordination Order to the Texas Case without any changes, thereby preserving as much as possible both the agreements reached by the parties in negotiating the Coordination Order and the decisions of this Court in ruling on disputes between the parties and in entering the Coordination Order.

To be clear, Plaintiffs recognize that fact discovery in this case is closed, and therefore only the provisions of the Coordination Order that apply after fact discovery is closed would apply moving forward. But, importantly, amending the Coordination Order as Plaintiffs request would preserve the guidelines for use of fact discovery obtained in the Texas Case after the close of fact discovery in this case: (1) under paragraph 6.b., Plaintiffs would be able to obtain transcripts and exhibits from fact depositions taken in the Texas Case directly from the court

---

[1] Upon request, Plaintiffs will provide a copy of the complete transcript of this hearing to the Court.

reporters; (2) under paragraph 6.d., both Plaintiffs and Google would be permitted to use fact depositions taken in the Texas Case for impeachment at trial in this case; (3) under paragraph 2, Plaintiffs could share fact discovery with Texas and its co-plaintiffs in the Texas Case; and (4) under paragraph 2.e., fact discovery obtained in the Texas Case could be used in this case for impeachment at trial if it was produced to Plaintiffs within 14 days of receipt in the Texas Case—effectively giving Google the option to elect to use new documents obtained in the Texas Case for impeachment at trial in this case if Google promptly re-produces them to the Plaintiffs. As these exact same provisions are already in effect for fact discovery obtained in the MDL, Plaintiffs merely request that they be extended to the Texas Case.

## ARGUMENT

There is ample cause to amend the Coordination Order as Plaintiffs propose. Plaintiffs' amendment updates the Coordination Order to account for the change in circumstances for the Texas Case since the Coordination Order was entered in a way that preserves the Court's decisions and the parties' agreements. Doing so ensures a level playing field between the parties, benefits all of them, and does not prejudice Google.

### A. Extending the Existing Coordination Order to the Texas Case Ensures a Level Playing Field between the Plaintiffs and Google.

The Plaintiffs stand ready to proceed to trial on the record they have developed during discovery in this case, but ongoing discovery in the Texas Case is generating additional material that risks giving Google an asymmetrical informational advantage in this case. Because Google has at least one of the same law firms and several individual lawyers representing it in the Texas Case and in this case, there is a manifest and unavoidable risk that discovery in the Texas Case will inform Google's litigation of this case. Even assuming the best good faith on the part of Google and its counsel, they cannot unknow information they learn from discovery in the Texas

Case and will therefore inevitably rely on that information while litigating this case, even if that reliance is unintentional.[2] As the original Coordination Order implicitly acknowledged, the only practical way to protect against this risk is to make discovery from the Texas Case available to both sides in this case. Maintaining a level playing field among the parties was a key reason the Plaintiffs supported implementing the Coordination Order in the first place. *See* ECF No. 174, at 2 (Plaintiffs' brief in support of coordination order: "The Court should adopt plaintiffs' proposals on these disputed issues because they maintain a level playing field among all parties while still allowing for an appropriate degree of coordination …").

Sections 2 and 6 of the proposed amended Coordination Order would both place limits on the use of discovery obtained in the Texas Case (i.e., use for impeachment only) and ensure the Plaintiffs minimally fair access to the same discovery Google's counsel could access (i.e., allowing Plaintiffs to order deposition transcripts and requiring Google to promptly re-produce documents to Plaintiffs it wishes to use for impeachment at trial). Without those limits and assurances of fair access, an uneven playing field is unavoidable. For example, Google would be able to obtain documents and sworn testimony from non-parties in the Texas Case that would inevitably inform how they craft their examinations of witnesses from those same non-parties if they were called at trial by the Plaintiffs. In addition, if the Plaintiffs lack access to transcripts of the depositions of Google witnesses from the Texas Case, Google witnesses could color their trial testimony on key issues without being vulnerable to fair cross-examination based on their deposition testimony in the Texas case. Remedying this imbalance is an implicit reason the

---

[2] *See PepsiCo., Inc. v. Redmond*, 54 F.3d 1262, 1269 (7th Cir. 1995) (explaining that employee would "inevitably" rely on confidential information learned from prior employer, "whether or not [he] acts consciously or unconsciously" unless he "possessed an uncanny ability to compartmentalize information").

parties agreed to, and the Court entered, the current Coordination Order—and there is no reason to treat depositions and documents from the MDL differently than those from the Texas Case.

Plaintiffs seek a fair trial in which issues are decided on the merits. That cannot occur if Google were allowed to prepare its case with the benefit of multiple months of additional discovery from the Texas Case, but Plaintiffs were not afforded access to the additional information that Google has gathered.

**B. Extending the Existing Coordination Order to the Texas Case Benefits All Parties, Including Google and Non-Parties, and Minimizes the Risk of Inconsistent Judgments.**

The existing Coordination Order benefits the parties in the MDL by allowing unrestricted use of all the discovery produced in this case and depositions taken in this case without the need to re-issue discovery requests or non-party subpoenas. This reduces the burden on the plaintiffs in the MDL, Google, and relevant non-parties by removing the need to issue or respond to discovery responses merely seeking the same discovery already assembled in this case. In particular, hundreds of non-parties have responded to document or deposition subpoenas issued by Plaintiffs or Google in this case, producing thousands of documents and sitting for dozens of depositions. The Coordination Order significantly reduces the burden those relevant non-parties would otherwise have to bear if Google or the plaintiffs in the MDL were forced to issue their own subpoenas to obtain those same materials. Google likely recognizes the value of these advantages—as a coordination order was initially jointly proposed by both Google and the Plaintiffs.

Plaintiffs' proposed amendment to the Coordination Order would extend those same benefits to the Texas Case. Both Google and Texas and its co-plaintiffs would reap the benefits of obtaining the discovery assembled in this case, and non-parties may not be burdened with responding to duplicative subpoenas. Google specifically would obtain the right to use all

discovery and depositions from this case in the Texas Case—amounting to millions of documents obtained by the Plaintiffs during their pre-suit investigation, documents obtained from non-parties in this case, and dozens of pre-suit and litigation deposition transcripts. This would be fully consistent with Google's pledge to the court in the Texas Case to "continue the effectuation of the existing coordination order that was entered in Virginia and the MDL." No. 4:20-cv-957, ECF No. 320 (E.D. Tex.).

Plaintiffs further understand that Google is actively seeking to re-use the discovery obtained in this case in the Texas Case—and therefore recognizes the benefit of doing so. Plaintiffs have learned that Google has attempted to serve subpoenas on various non-parties who provided documents to the Plaintiffs during their pre-suit investigations and that those subpoenas have referenced the fact that those non-parties provided documents to the Plaintiffs during their pre-suit investigation. This conduct shows that Google is already relying on discovery it obtained in this case to inform how it is litigating the Texas Case. It is inevitable that discovery in the Texas Case will similarly inform how Google tries this case. Amending the Coordination Order as Plaintiffs propose would allow Google (and Texas and its co-plaintiffs) to re-use discovery from this case in the Texas Case immediately, without pursuing individual subpoenas on hundreds of non-parties.

A further benefit to all parties, including Google, of Plaintiffs' proposal is reducing the risk of inconsistent judgments. Extending the Coordination Order to the Texas case provides at least some pathway for using any highly probative evidence uncovered in the Texas Case at trial in this case. That increases the likelihood that both cases are decided on a consistent set of facts and reach consistent results. As Google itself argued to the Court previously, allowing some use of discovery obtained in the Texas Case at trial in this case would "advance[] the truth-seeking

function of litigation," remove "obstacles to probative evidence being used," "promote the just resolution of these matters," and address "the risk of inconsistent rulings." ECF No. 166, at 6.

### C. Google is not Prejudiced by an Extension of the Existing Coordination Order to the Texas Case.

Amending the Coordination Order as Plaintiffs propose would cause no prejudice or burden on Google. Plaintiffs' amendment would not re-open discovery, force Google to produce additional documents or respond to additional discovery requests, or provide Plaintiffs with any information not already available to Google or its counsel. The provision on deposition transcripts and exhibits specifically states that Plaintiffs would obtain transcripts by ordering them directly from the court reporter (at their own expense), imposing no obligation or burden whatsoever on Google to re-produce any transcripts to the Plaintiffs. And the provision on documents gives Google the ability to decide whether to re-produce documents to the Plaintiffs promptly—giving Google the right to use them at trial in this case for impeachment—or to forego that burden. To the extent Google does argue that Plaintiffs' proposed amendment prejudices Google, that contention is belied by: (1) Google's arguments to this Court in April 2023 seeking broad ability to use information obtained in the MDL in this case, even if the information was obtained after the close of fact discovery (*see* ECF No. 166, at 6-7); (2) Google's agreement to these same provisions with respect to the MDL, and the Texas Case as well while it was part of the MDL, in the current Coordination Order; and (3) Google's recent apparent strategy to issue subpoenas which would allow it to re-use discovery from this case in the Texas Case.

### CONCLUSION

For the reasons stated herein, Plaintiffs respectfully request that the Court enter the proposed order amending the Coordination Order. Subsequently, Plaintiffs will work

expeditiously with counsel for Texas and its co-plaintiffs to request that the same order be

entered in the Texas Case.

Dated: April 12, 2024

Respectfully submitted,

JESSICA D. ABER
United States Attorney

/s/ Gerard Mene
GERARD MENE
Assistant U.S. Attorney
2100 Jamieson Avenue
Alexandria, VA 22314
Telephone: (703) 299-3777
Facsimile: (703) 299-3983
Email: Gerard.Mene@usdoj.gov

/s/ Julia Tarver Wood
JULIA TARVER WOOD
MICHAEL E. WOLIN
AARON M. TEITELBAUM

United States Department of Justice
Antitrust Division
450 Fifth Street NW, Suite 7100
Washington, DC 20530
Telephone: (202) 307-0077
Fax: (202) 616-8544
Email: Julia.Tarver.Wood@usdoj.gov
Attorneys for the United States

JASON S. MIYARES
Attorney General of Virginia

/s/ Tyler T. Henry
STEVEN G. POPPS
Deputy Attorney General
TYLER T. HENRY
Assistant Attorney General

Office of the Attorney General of Virginia
202 North Ninth Street
Richmond, VA 23219
Telephone: (804) 692-0485
Facsimile: (804) 786-0122
Email: thenry@oag.state.va.us

Attorneys for the Commonwealth of
Virginia and local counsel for the
States of Arizona, California,
Colorado, Connecticut, Illinois,
Michigan, Minnesota, Nebraska, New
Hampshire, New Jersey, New York,
North Carolina, Rhode Island,
Tennessee, Washington, and West
Virginia

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

UNITED STATES, et al.,      )
                                )
           Plaintiffs,      )
      v.                    )     No. 1:23-cv-00108-LMB-JFA
                                )
GOOGLE LLC,           )
                                )
           Defendant.     )


**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**Sherman Division**

THE STATE OF TEXAS, et al.,     )
                                )
           Plaintiffs,      )
      v.                    )     No. 4:20-cv-957-SDJ
                                )
GOOGLE LLC,           )
                                )
           Defendant.     )


**[PROPOSED] ORDER AMENDING PROCEDURES FOR COORDINATION OF**
**DISCOVERY**

On June 5, 2023, an order was entered in the United States District Court for the Eastern

District of Virginia in the matter of *United States et al. v. Google LLC*, No. 1:23-cv-00108-

LMB-JFA (the "Virginia Case") to effectuate coordination between the Virgnia Case and a

related matter pending in the U.S. District Court for the Southern District of New York, *In re*

*Google Digital Advertising Litigation*, No. 21-md-03010-PKS (the "MDL"). Virginia Case ECF

Docket No. 251, attached hereto as <u>Exhibit A</u> (the "Coordination Order).

Pursuant to Paragraph 9 of the Coordination Order, the parties in the Virginia Case have

met and conferred about coordination between the Virginia Case and a matter that formerly was

part of the MDL but which has since been transferred back to its home district, namely *State of*
*Texas et al. v. Google LLC*, No. 4:20-cv-957-SDJ, currently pending in the U.S. District Court
for the Eastern District of Texas (the "Texas Case").

In order to provide for the efficient coordination of discovery and other matters between
the Texas Case and the Virginia Case, and in order to preserve the benefits of coordination for
which the parties in the Virginia Case negotiated,

IT IS HEREBY ORDERED:

1.      Notwithstanding the Protective Orders entered in the Virginia Case or the Texas
Case, the Texas Case shall be treated as if it were the MDL for purposes of the Coordination
Order such that the terms of the Coordination Order shall govern the Virginia Case and the Texas
Case.

2.      This order shall become effective once entered in both the Virginia Case and the
Texas Case.


SO ORDERED THIS _____ DAY OF _____, 2024 IN THE UNITED STATES
DISTRICT COURT FOR THE EASTERN DISTRICT OF VIRGINIA.




SO ORDERED THIS _____ DAY OF _____, 2024 IN THE UNITED STATES
DISTRICT COURT FOR THE EASTERN DISTRICT OF TEXAS.

Exhibit A

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

**Alexandria Division**

|  |  |
|---|---|
| UNITED STATES OF AMERICA, *et al.*,<br><br>                           Plaintiffs,<br><br>     v.<br><br>GOOGLE LLC,<br><br>                        Defendant. | Civil Action No. 1:23-cv-00108-LMB-JFA |

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| IN RE GOOGLE DIGITAL ADVERTISING ANTITRUST LITIG. | Civil Action No. 1:21-md-03010-PKC |

### [~~PROPOSED~~] ORDER REGARDING COORDINATION OF DISCOVERY

1. <u>Definitions</u>. For purposes of this Order, the following definitions will apply:

    a. "Confidential Information" means material that qualifies as "Confidential Information" as that term is defined in either paragraph 1(b) of the MDL Confidentiality Order or paragraph 1(b) of the Virginia Protective Order.

    b. "Coordinated Case" means the MDL or the Virginia Case. "Coordinated Cases" means the MDL and the Virginia Case.

1

c. "Coordinated Discovery Period" means the time period after the Deadline for Substantial Completion of Document Production in the Virginia Case and before the Fact Discovery Cutoff in the Virginia Case.

d. "Counsel" means Outside Counsel, Virginia Plaintiffs' Counsel, and MDL State Plaintiffs' Counsel, provided that "Counsel" shall not include Counsel for any Party that ceases to be part of the MDL (unless and until a further order directs otherwise).

e. "Cross Notice" means to send a notice of intent to take a deposition of a Party under Federal Rule of Civil Procedure 30(b)(1) or to serve a subpoena for a Non-Party Deposition under Federal Rule of Civil Procedure 45(a)(1), after another Party has Noticed a deposition of the same witness.

f. "Deadline for Substantial Completion of Document Production in the Virginia Case" means the date ordered by the Court for the substantial completion of document production in the Virginia Case.

g. "Deposition Limit" means (i) for Parties in the MDL, the fact-deposition limit in the MDL referenced in paragraph 6.5 of Pre-Trial Order Number 5 in the MDL (Dkt. 394), and any changes to that limit that may be made after entry of this Order; and (ii) for Parties in the Virginia Case, the fact-deposition limits in the Virginia Case referenced in paragraph 7 of the Rule 16(b) Scheduling Order in the Virginia Case (Dkt. 94), which references and incorporates paragraph 6(G) of the Joint Discovery Plan in the Virginia Case (Dkt. 87), and any changes to those limits that may be made after entry of this Order.

      h.      "Deposition Notice" means a notice of intent to take a deposition of a Party under Federal Rule of Civil Procedure 30(b)(1) or a subpoena for a Non-Party Deposition under Federal Rule of Civil Procedure 45(a)(1).

      i.      "District Courts" means the U.S. District Court for the Eastern District of Virginia and the U.S. District Court for the Southern District of New York.

      j.      "Expert Discovery" means expert reports in a Coordinated Case, backup materials and other information disclosed in connection with expert reports in a Coordinated Case, and expert testimony (including expert deposition testimony) in a Coordinated Case.

      k.      "Fact Discovery Cutoff in the Virginia Case" means the date ordered by the Court for the conclusion of fact discovery in the Virginia Case.

      l.      "Google" means Google LLC, as well as its parents, divisions, subsidiaries, affiliates, partnerships and joint ventures, and all directors, officers, employees, agents (including counsel), and representatives of the foregoing.

      m.      "Google Deposition" means any deposition of a current or former employee of Google or of Google's corporate designee under Federal Rule of Civil Procedure 30(b)(6).

      n.      "Highly Confidential Information" means material that qualifies as "Highly Confidential Information" as that term is defined in either paragraph 1(h) of the MDL Confidentiality Order or paragraph 1(g) of the Virginia Protective Order.

      o.      "MDL" means the multidistrict litigation captioned as *In re Google Digital Advertising Antitrust Litigation* that is currently pending in the U.S. District Court for the Southern District of New York under docket number 21-md-03010-PKC, and all

of the cases that are currently part of that multidistrict litigation or that become part of

that multidistrict litigation after entry of this Order, but only for such time as a case is

part of the multidistrict litigation (unless and until a further order directs otherwise).

      p.    "MDL Confidentiality Order" means the Confidentiality Order entered as

docket entry 297 in the MDL.

      q.    "MDL Plaintiff" means a plaintiff in any case made part of the MDL, but

only for such time as that plaintiff's case is part of the MDL (unless and until a further

order directs otherwise).

      r.    "MDL Plaintiffs' Counsel" means any attorney retained to represent or

advise an MDL Plaintiff, as well as any paralegals, administrative assistants, and clerical

and administrative personnel supervised by that attorney, but only for such time as that

MDL Plaintiff's case is part of the MDL (unless and until a further order directs

otherwise).

      s.    "MDL State Plaintiffs" means the States of Texas, Alaska, Arkansas,

Idaho, Indiana, Kentucky, Florida, Louisiana, Mississippi, Montana, Missouri, Nevada,

North Dakota, South Dakota, South Carolina, Utah, the Commonwealth of Kentucky,

Puerto Rico, and any other state that joins the MDL, by and through their respective

Attorneys General, but only for such time as that state's case is part of the MDL (unless

and until a further order directs otherwise).

      t.    "MDL State Plaintiffs' Counsel" means any attorney retained to represent

or advise an MDL State Plaintiff in the MDL, as well as any paralegals, administrative

assistants, and clerical and administrative personnel supervised by that attorney, but only

4

for such time as that MDL State Plaintiff's case is part of the MDL (unless and until a further order directs otherwise).

u.   "Meta" means Meta Platforms, Inc. as well as its parents, divisions, subsidiaries, affiliates, partnerships and joint ventures, and all directors, officers, employees, agents (including counsel), and representatives of the foregoing.

v.   "NBA Stay" means the stay of discovery relating to the Network Bidding Agreement that was entered in paragraph 3 of Pre-Trial Order No. 5 in the MDL (Dkt. 394).

w.   "Non-Noticing Party" means, with respect to a particular deposition, any Party other than the Noticing Party.

x.   "Non-Party Deposition" means a deposition of an individual who is not a Party or a current or former employee of a Party; a deposition of a current or former employee of an entity that is not a Party; and/or a deposition of a corporate designee under Federal Rule of Civil Procedure 30(b)(6) of an entity that is not a Party.

y.   "Notice" means to send a notice of intent to take a deposition of a Party under Federal Rule of Civil Procedure 30(b)(1) or to serve a subpoena for a Non-Party Deposition under Federal Rule of Civil Procedure 45(a)(1).

z.   "Noticing Party" means, with respect to a particular deposition, the Party that sends a Deposition Notice for that deposition.

aa.   "Outside Counsel" means the attorneys employed by outside law firms who are retained to represent or advise a Party in a Coordinated Case, as well as any paralegals, administrative assistants, and clerical and administrative personnel supervised by those attorneys.

bb. "Party" means any individual or entity that asserts a claim, or against which a claim has been asserted, in the MDL or the Virginia Case, including the MDL Plaintiffs, the Virginia Plaintiffs, Meta, and Google, provided that Meta shall not be considered a "Party" while the NBA Stay is in effect or until sixty (60) days after the NBA stay is lifted. For the avoidance of doubt, unless and until a further order directs otherwise, an individual or entity ceases to be a "Party" if all of the claims that it asserts or that have been asserted against it in the MDL or the Virginia Case have been dismissed or otherwise adjudicated by a District Court or transferred to a court other than one of the District Courts.

cc. "Protective Orders" means the MDL Confidentiality Order and the Virginia Protective Order.

dd. "Shared Discovery" means documents and data produced during fact discovery in a Coordinated Case and does not include Expert Discovery.

ee. "Transcript" means any recording of testimony, including recordings by stenographic means and by video.

ff. "Virginia Case" means the case captioned as *United States, et al. v. Google, LLC* that is pending in the U.S. District Court for the Eastern District of Virginia under docket number 1:23-cv-00108-LMB-JFA.

gg. "Virginia Plaintiffs" means the United States (including the "Federal Agency Advertisers" as defined in ¶ 6(A) of the Joint Discovery Plan in the Virginia Case, Dkt. 87), and the States of Arizona, California, Colorado, Connecticut, Illinois, Michigan, Minnesota, Nebraska, New Hampshire, New Jersey, New York, North Carolina, Rhode Island, Tennessee, Washington, and West Virginia and the

6

Commonwealth of Virginia, and any other state that joins the Virginia Case, by and through their respective Attorneys General.

hh. "Virginia Plaintiffs' Counsel" means "Plaintiffs' Counsel" as that term is defined in ¶ 1(p) of the Virginia Protective Order.

ii. "Virginia Protective Order" means the Protective Order entered as docket entry 98 in the Virginia Case.

2. <u>Shared Discovery</u>. Notwithstanding the Protective Orders, Counsel may disclose Shared Discovery to any other Counsel, provided that Shared Discovery may not be disclosed to either (i) any Counsel representing an MDL Plaintiff as to which discovery has been stayed or has not begun; or (ii) Counsel representing Meta while the NBA Stay is in effect.[1]

a. Shared Discovery that was produced and designated as Confidential Information in the Virginia Case may be used in the MDL only to the extent that Confidential Information may be used under the MDL Confidentiality Order.

b. Shared Discovery that was produced and designated as Highly Confidential Information in the Virginia Case may be used in the MDL only to the extent that Highly Confidential Information may be used under the MDL Confidentiality Order.

c. Shared Discovery that was produced and designated as Confidential Information in the MDL may be used in the Virginia Case only to the extent that Confidential Information may be used under the Virginia Protective Order.

d. Shared Discovery that was produced and designated as Highly Confidential Information in the MDL may be used in the Virginia Case only to the extent that Highly Confidential Information may be used under the Virginia Protective Order.

---

[1] Shared Discovery produced by Meta as a Non-Party in the Virginia Case shall not be made available to MDL Plaintiffs until seven (7) days after the NBA Stay is lifted.

e.　Subject to sub-paragraphs 2(a)-(d), Shared Discovery that was produced in a Coordinated Case may be used in any Coordinated Case for any purpose permissible under the Federal Rules of Evidence and the Federal Rules of Civil Procedure (including for purposes of impeachment at trial), as if the Shared Discovery had been produced in both Coordinated Cases. Notwithstanding the previous sentence, absent an order of the Court in the Virginia Case, Shared Discovery produced in the MDL case after the Fact Discovery Cutoff in the Virginia Case may not be used by any Party in the Virginia Case, unless (1) the Shared Discovery is produced in the Virginia Case within 14 days of its receipt in the MDL, notwithstanding the close of fact discovery in the Virginia Case; and (2) the Shared Discovery is used in the Virginia Case only for impeachment purposes at trial and may not be admitted into evidence or used in any dispositive motion, pleading, or expert report.

3.　Depositions Taken During Coordinated Discovery Period. During the Coordinated Discovery Period, the following provisions shall apply:

a.　The Parties in the Coordinated Cases shall serve any Deposition Notice on all Parties in the Coordinated Cases.[2] No Party may Notice a deposition in a Coordinated Case in which it is not a plaintiff or a defendant. If a deposition has been Noticed in one of the Coordinated Cases, a Party in the other Coordinated Case may Cross Notice the deposition in the other Coordinated Case.

b.　No Party shall send a Deposition Notice for a deposition to be held fewer than twenty-one (21) days after the date on which the Deposition Notice is sent.

---

[2] For purposes of paragraphs 3, 4, and 5, MDL Plaintiffs collectively will be considered a "Noticing Party" or a "Non-Noticing Party," and the Discovery Steering Committee in the MDL shall act on behalf of all MDL Plaintiffs. In addition, Virginia Plaintiffs collectively will be considered a "Noticing Party" or a "Non-Noticing Party," and the United States shall act on behalf of all Virginia Plaintiffs.

8

c.      If a Non-Noticing Party wishes to Cross Notice a deposition, it must do so within three (3) business days of receiving the Deposition Notice for that deposition. A Non-Noticing Party may not Cross Notice a deposition if doing so would cause that Non-Noticing Party to exceed a Deposition Limit.

d.      If a Non-Noticing Party Cross Notices the deposition within three (3) business days of receiving the Deposition Notice, the deposition will count against any Deposition Limit applicable to that Non-Noticing Party (unless the deposition does not take place). The deposition will also count against any Deposition Limit applicable to the Noticing Party (unless the deposition does not take place). For the avoidance of doubt, if a Party withdraws a previously-served Notice or Cross Notice at least forty-eight (48) hours before the deposition takes place, then that deposition will not count against any Deposition Limit applicable to that Party.

e.      Any witness appearing at a Google Deposition or a Non-Party Deposition taken during the Coordinated Discovery Period cannot be compelled to sit for a second deposition in any Coordinated Case (including a second Rule 30(b)(6) deposition of the same entity on the same or substantially similar topics), absent good cause shown to the Court in the Coordinated Case for which the subsequent deposition of the witness is noticed.

f.      Notwithstanding the Protective Orders, Counsel may disclose Transcripts and exhibits from depositions taken during the Coordinated Discovery Period to any other Counsel, provided that such Transcripts and exhibits may not be disclosed to either (i) any Counsel representing an MDL Plaintiff as to which discovery has been stayed or has not begun; or (ii) Counsel representing Meta while the NBA Stay is in effect. Subject

9

to the Protective Orders, Transcripts and exhibits from depositions taken in a Coordinated

Case during the Coordinated Discovery Period may be used in any Coordinated Case for

any purpose permissible under the Federal Rules of Evidence and the Federal Rules of

Civil Procedure (including for purposes of impeachment at trial).

        g.      Notwithstanding any other provisions of this Order, while the NBA Stay is

in effect, (i) Meta may not Notice or Cross Notice a deposition, and Meta may not

question a witness at a Google Deposition or a Non-Party Deposition (except at a Non-

Party Deposition of a current or former Meta employee); (ii) MDL Plaintiffs may not

Cross Notice a deposition of a current or former Meta employee; and (iii) no Transcripts

and exhibits from depositions of current and/or former Meta employees may be disclosed

to or used by MDL Plaintiffs.

        4.    <u>Time Allocations at Google Depositions Taken During Coordinated Discovery</u>

<u>Period</u>. During the Coordinated Discovery Period, the following provisions shall apply:

        a.      If any Party Notices a Google Deposition, and no other Party Cross

Notices the deposition, then the Noticing Party will have six (6) hours on the record to

examine the witness, and any Non-Noticing Party or Parties in the Coordinated Case to

which the Deposition Notice applies will collectively have one (1) hour on the record to

examine the witness.

        b.      If Virginia Plaintiffs and MDL Plaintiffs both Notice or Cross Notice a

Google Deposition, and no other Party Notices or Cross Notices the deposition, then the

deposition will be held for two (2) consecutive days.  Virginia Plaintiffs will have seven

(7) hours on the record to examine the witness, MDL Plaintiffs will have six (6) hours on

the record to examine the witness, and Meta will have one (1) hour on the record to

10

examine the witness, if Meta is deemed a Party (under paragraph 1(bb)) at the time of the deposition.

      c.     If Virginia Plaintiffs and Meta both Notice or Cross Notice a Google Deposition, and no other Party Cross Notices the deposition, then the deposition will be held for two (2) consecutive days.  Virginia Plaintiffs will have seven (7) hours on the record to examine the witness, Meta will have six (6) hours on the record to examine the witness, and MDL Plaintiffs will have one (1) hour on the record to examine the witness.

      d.     If MDL Plaintiffs and Meta both Notice or Cross Notice a Google Deposition, and no other Party Cross Notices the deposition, then MDL Plaintiffs will have three and one-half (3.5) hours on the record to examine the witness, and Meta will have three and one-half (3.5) hours on the record to examine the witness.

      e.     If Virginia Plaintiffs, MDL Plaintiffs, and Meta all Notice or Cross Notice a Google Deposition, then the deposition will be held for two (2) consecutive days. Virginia Plaintiffs will have seven (7) hours on the record to examine the witness, and MDL Plaintiffs and Meta will collectively have seven (7) hours on the record to examine the witness, if Meta is deemed a Party (under paragraph 1(bb)) at the time of the deposition.

     5.     <u>Time Allocations at Non-Party Depositions Taken During Coordinated Discovery Period</u>.  During the Coordinated Discovery Period, the following provisions shall apply:

      a.     If a Party Notices a Non-Party Deposition, and no other Party Cross Notices the deposition, then the Noticing Party will have six (6) hours on the record to examine the witness, and any Non-Noticing Party or Parties in the Coordinated Case to

which the Deposition Notice applies will collectively have one (1) hour on the record to examine the witness.

      b.      If two Parties (one of which is Google) Notice or Cross Notice a Non-Party Deposition, and no other Party Cross Notices the deposition, then Google will have three (3) hours on the record to examine the witness, the other Party that Noticed or Cross Noticed the deposition will have three (3) hours on the record to examine the witness, and any Non-Noticing Party or Parties in the Coordinated Case(s) to which the Deposition Notice(s) apply will collectively have one (1) hour on the record to examine the witness.

      c.      If two Parties (neither of which is Google) Notice or Cross Notice a Non-Party Deposition, and no other Party Cross Notices the deposition, then each of the Parties that Noticed or Cross Noticed the deposition will have two and one-half (2.5) hours on the record to examine the witness, Google will have one (1) hour on the record to examine the witness, and any Non-Noticing Party in the Coordinated Case(s) to which the Deposition Notice(s) apply will have one (1) hour on the record to examine the witness.

      d.      If three Parties (one of which is Google) Notice or Cross Notice a Non-Party Deposition, and no other Party Cross Notices the deposition, then the deposition will be held for two (2) consecutive days. Each of the Parties that Noticed or Cross Noticed the deposition will have three (3) hours on the record to examine the witness, and any Non-Noticing Party in the Coordinated Case(s) to which the Deposition Notice(s) apply will have one (1) hour on the record to examine the witness.

      e.      If three Parties (none of which is Google) Notice or Cross Notice a Non-Party Deposition, and Google does not Cross Notice the deposition, then the deposition

will be held for two (2) consecutive days.  Each of the Parties that Noticed or Cross

Noticed the deposition will have four (4) hours on the record to examine the witness, and

Google will have one (1) hour on the record to examine the witness.

        f.     If Google, Meta, Virginia Plaintiffs, and MDL Plaintiffs all Notice or

Cross Notice a Non-Party Deposition, then the deposition will be held for two (2)

consecutive days.  Google will have three (3) hours on the record to examine the witness,

Meta will have three (3) hours on the record to examine the witness, Virginia Plaintiffs

will have three (3) hours on the record to examine the witness, and MDL Plaintiffs will

have three (3) hours on the record to examine the witness.

     6.     <u>Depositions Taken Outside Coordinated Discovery Period</u>.  Outside the

Coordinated Discovery Period, the following provisions shall apply:

        a.     The Parties in the MDL shall serve any Deposition Notice on Virginia

Plaintiffs.

        b.     Notwithstanding the Protective Orders, Counsel for any Party may obtain

Transcripts and exhibits of Google Depositions and Non-Party Depositions taken in the

MDL after the Fact Discovery Cutoff in the Virginia Case directly from the court

reporters for those depositions.

        c.     Notwithstanding the Protective Orders, Counsel may disclose Transcripts

and exhibits from depositions taken outside the Coordinated Discovery Period to any

other Counsel, provided that such Transcripts and exhibits may not be disclosed to either

(i) any Counsel representing an MDL Plaintiff as to which discovery has been stayed or

has not begun; or (ii) Counsel representing Meta while the NBA Stay is in effect.

        d.      Subject to the Protective Orders, absent an order of the Court in the

Virginia Case, Transcripts and exhibits from depositions taken outside the Coordinated

Discovery Period may not be used in the Virginia Case for any purpose other than

impeachment at trial. For the avoidance of doubt, absent an order of the Court in the

Virginia Case, such Transcripts and exhibits may not be admitted into evidence at trial in

the Virginia Case or otherwise used affirmatively by any Party in any dispositive motion,

pleading, or expert report in the Virginia Case.

        7.      <u>Expert Discovery</u>. Expert Discovery shall not be shared between the Coordinated

Cases pending further order. At least ninety (90) days before Google's expert reports are due in

the MDL, the Parties shall meet and confer over whether there are circumstances in which Expert

Discovery may or should be shared between the Coordinated Cases. Google shall notify

Virginia Plaintiffs at least twenty-four (24) hours in advance of serving an expert report in the

MDL if Google serves such report before the due date in the MDL.

        8.      <u>Notice to Non-Parties</u>. Any Party, in conducting discovery from a non-party in

connection with a Coordinated Case, shall provide the non-party from which it seeks discovery

with a copy of this Order so as to inform the non-party of his, her, or its rights herein. In

addition, within three business days of this Order taking effect, the Parties shall give notice as

described in the following sub-paragraphs:

        a.      Virginia Plaintiffs shall give notice of this Order to (i) all persons to whom

Virginia Plaintiffs provided notice of the Virginia Protective Order under paragraph 2 of

that order; and (ii) all recipients of subpoenas that Virginia Plaintiffs have served in the

Virginia Case before this Order took effect.

     b.     MDL Plaintiffs shall give notice of this Order to (i) all persons to whom MDL Plaintiffs provided notice of the MDL Confidentiality Order under paragraph 2 of that order; and (ii) all recipients of subpoenas that MDL Plaintiffs have served in the MDL before this Order took effect.

     c.     Google shall give notice of this Order to all recipients of subpoenas that Google has served in the Virginia Case and/or the MDL before this Order took effect.

9.     <u>Departure from MDL</u>.  If any case(s) currently part of the MDL are transferred to other venue(s), the Parties in the Coordinated Cases shall meet and confer with the parties to the transferred case(s) regarding whether, and on what conditions, the transferred case(s) should be coordinated with the MDL and the Virginia Case.  If all claims brought by an MDL Plaintiff are dismissed, transferred, or remanded, then that MDL Plaintiff shall be treated as a Non-Party for purposes of this Order after such dismissal, transfer, or remand.  If all claims brought against Meta in the MDL are dismissed, then Meta shall be treated as a Non-Party for purposes of this Order after such dismissal.

10.     <u>Effective Date</u>.  This Order shall not come into effect unless and until it has been entered in both the MDL and the Virginia Case.

IT IS HEREBY SO ORDERED this **5TH** day of ___JUNE___, 2023.

                                    /s/ ___JFA___

                              John F. Anderson
                              United States Magistrate Judge