# EXHIBIT 6

# Reply in Support of Motion to Amend Coordination Order

# (E.D. Va.)

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| UNITED STATES, et al., | ) |
| Plaintiffs, | ) |
| v. | ) No. 1:23-cv-00108-LMB-JFA |
| GOOGLE LLC, | ) |
| Defendant. | ) |

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO AMEND ORDER REGARDING COORDINATION OF DISCOVERY**

No fair reading of Plaintiffs' motion to amend the Coordination Order can support Google's contention that it is a "broad, eleventh hour request to inject voluminous discovery into these proceedings." Google's Memorandum in Opposition, ECF No. 553 ("Opp.") at 2. The provisions that Plaintiffs request to effectuate limited coordination with the Texas Case are: (a) currently in place for the MDL; (b) applied to the Texas Case as well when it was part of the MDL; and (c) provisions that Google actively sought at the time the Coordination Order was being negotiated and entered. To distract from the limited, reasonable nature of Plaintiffs' request, Google incorrectly asserts that Plaintiffs are seeking to re-open discovery and relies on arguments that are directly contradicted by Google's prior statements to the Court.

Nothing in Plaintiffs' motion would "reopen" discovery in this case. As indicated in Plaintiffs' motion, discovery is "indisputably closed" and Plaintiffs do not seek to change that fact. *See* Plaintiffs' Memorandum in Support of Motion, ECF No. 551 ("Memo.") at 4. Google claims Plaintiffs' proposal would have that effect, but argued the exact opposite to this Court when requesting that the Court allow Google to use *all* discovery collected in the MDL in this case for *any* purpose (not just impeachment, as Plaintiffs propose here):

1

> Google's proposal respects the established schedule for this case. That schedule requires fact discovery in that case to be completed by September 8, 2023, and nothing in Google's proposal would change that. The parties would not be able to serve any further document requests or interrogatories in this case after that deadline. Nor would they be able to take additional depositions in this case.

Google's Br. in Support of Coordination Order, ECF No. 166, at 7. Those arguments by Google apply equally to Plaintiffs' motion, which would neither authorize new discovery requests, subpoenas, or depositions in this case, nor allow additional expert discovery or change the factual record available to both sides for summary judgment. Plaintiffs' motion would simply allow them access to certain discovery from the Texas Case for impeachment in the same manner that the Coordination Order already allows access to certain discovery from the MDL. There is no principled reason to treat the MDL differently than the Texas Case—they each include similarly relevant issues and are similarly proceeding on slower timelines than this case.

Further, Google's arguments that Plaintiffs' motion lacks good cause or prejudices Google rely on more assertions that are squarely contradicted by Google's own prior statements. First, Google now argues that discovery in the Texas case is "focused on different issues than this case." Opp. at 4. But Google's counsel stated to Judge Brinkema in support of Google's transfer motion that "this case is exactly substantively identical to the cases that have been pending before Judge Castel for 18 months now," which included the Texas Case at the time. *See* 3/10/2023 Hearing Tr., at 9:2-4. Similarly, Google asserted in its transfer motion that this case "is strikingly similar to the Texas Case" because: "They allege the same facts, relevant markets, and claims, and seek the same relief. They . . . share the same factual nucleus of shared documents. And they will implicate the same or similar documents, data, party witnesses, and third parties as they progress through discovery." Google's Memo. on Mot. to Transfer, ECF No. 44-2, at 11-12.

Second, Google argues that Plaintiffs' discussion of reducing the risk of inconsistent judgments has a "true motivation" of improving Plaintiffs' case. Opp. at 7. But Google

2

previously made the same arguments to the Court that allowing access to the discovery from the related cases would "advance[] the truth-seeking function of litigation" and denying it would "exacerbate the risk of inconsistent rulings" which would be "compound[ed]" by "insisting that the cases be decided on different evidentiary records." Google's Br. in Support of Coordination Order, ECF No. 166, at 6-7. Google's repudiation of so many of its prior statements demonstrates the inadequacy of Google's opposition to Plaintiffs' motion.

## ARGUMENT

As explained in Plaintiffs' memorandum in support of this motion, amending the Coordination Order to ensure that it continues to apply to the Texas Case (as it did when the Coordination Order was entered) would ensure efficient discovery across the cases, create a level playing field by providing Plaintiffs with similar access to relevant materials being collected by Google's counsel in the Texas Case, minimize burden on third parties and the risk of inconsistent judgments, and create no prejudice to Google. Therefore, good cause exists to amend the Coordination Order as Plaintiffs propose.

### A. Granting Plaintiffs' Motion Would Not "Reopen" Discovery as Google Contends.

Plaintiffs' motion seeks simply to apply the Coordination Order to the Texas Case in the same manner it once applied to the Texas Case and still currently applies to the MDL. Memo. at 2. Google argues repeatedly that this would "reopen" or "extend" discovery. Opp. at 2, 8, 9. That is simply not the case. The Coordination Order already allows Plaintiffs access to the same materials from the MDL, but that fact does not mean that discovery in this case is still "open" or "ongoing." The Court was clear when ruling on the original Coordination Order that while "[a]ll discovery of factual information" was to "be completed by September 8, 2023" it was appropriate to implement Plaintiffs' proposal "on the use of later disclosed information in the MDL proceedings." ECF No. 201 at 3-4. Allowing the parties access to and use for impeachment

3

purposes of certain materials from related cases was not considered an "extension" of discovery when the Coordination Order was implemented, and it is not an "extension" now.

Indeed, Plaintiffs' motion unquestionably does not allow the Plaintiffs to take any additional discovery. Plaintiffs cannot issue new discovery requests or subpoenas, issue new deposition notices, question any witness under oath, or serve any new or supplemental expert reports. Granting Plaintiffs' motion would not require Google to provide any additional discovery to Plaintiffs—indeed, Google would not be compelled to do any thing at all if Plaintiffs' motion were granted. *See* Memo. at 11. It was the intentional design of the Coordination Order to avoid burdening Google by allowing the Plaintiffs to obtain deposition transcripts directly from the court reporters—instead of requiring Google to re-produce them to Plaintiffs—and Plaintiffs' motion would maintain that provision. *See* Coordination Order, ¶ 6.b.

Google posits the Plaintiffs will somehow use Texas and its co-plaintiffs as "prox[ies]" to take additional discovery by "suggest[ing] specific documents and lines of deposition questioning" or providing "feedback." Opp. at 2, 8, 9. But Texas and its co-plaintiffs are sovereign states, not under the control of the Department of Justice or the State Plaintiffs in this case, and filed their own lawsuit against Google pre-dating this case by several years. Moreover, any coordination of litigation strategy that could occur as a result of Plaintiffs' motion is insignificant in comparison to the advantage Google already enjoys in coordinating its strategy between this case and the Texas Case. Google has some of the same law firms and individual lawyers deciding litigation strategy with the benefit of knowledge of the documents and depositions obtained in both this case and the Texas Case.

4

### B. Granting Plaintiffs' Motion Is Necessary to Mitigate the Advantage Google Has of Taking Additional Discovery in the Texas Case Before Trial in This Case.

Google refers multiple times to the pre-suit investigation undertaken by the Plaintiffs (*see* Opp. at 2, 6, 7) or that both sides were subject to the same discovery limitation in this case (*see* Opp. at 6). Those facts are beside the point. The issue is not what occurred in the past, but what is happening now: Google, using two of the same law firms and many of the same lawyers who have appeared in this case, is taking *forty* additional depositions and obtaining countless additional documents from relevant third parties in the Texas Case. Google can also use these depositions to decide which third party witnesses to call (or not call) in this trial. Furthermore, Google concedes that it is sending "document subpoenas [to] third-parties in the Texas Case for documents produced in connection with this action" (Opp. at 7), meaning that Google is *already* using knowledge learned from this case to guide its discovery strategy in the Texas case.

Google attempts to argue that discovery in the Texas Case is "focused on different issues than this case" because 71 paragraphs of the Texas complaint relate to state law claims. Opp. at 4. But Google neglects to explain that the Texas complaint spans 702 paragraphs, and the large majority of those allegations overlap with the issues in this case. *See* No. 21-md-3010, ECF No. 541. Indeed, in seeking to transfer this case to New York, Google argued at length that this case was simply "DOJ['s] … Own Version of the Texas Case." *See* Google's Memo. on Mot. to Transfer, ECF No. 44-2, at 10-12 ("The DOJ Case filed in this Court is strikingly similar to the Texas Case (and the other S.D.N.Y. Cases). They allege the same facts, relevant markets, and claims, and seek the same relief. They . . . share the same factual nucleus of shared documents. *And they will implicate the same or similar documents, data, party witnesses, and third parties as they progress through discovery*.") (emphasis added). And Google's counsel informed the Court at the transfer motion hearing that "this case is *exactly substantively identical* to the cases

5

that have been pending before Judge Castel for 18 months now," which included the Texas Case at the time. *See* 3/10/2023 Hearing Tr., at 9:2-4 (emphasis added).

Google makes no argument that the Google witnesses who will be deposed in the Texas Case will not provide information relevant to the issues in this case. As explained in Plaintiffs' opening memorandum, Google witnesses should not be allowed to testify in a related matter on substantively identical subjects without fear of impeachment in this matter merely because Google refuses to allow access to those sworn statements. Nothing about that procedure is consistent with Google's purported aim to "advance[] the truth-seeking function in litigation." Google's Br. in Support of Coordination Order, ECF No. 166, at 6-7. And for third parties, Google can assert only that "many"—but, importantly, not all or even the majority of—the third parties are relevant only to the state law claims in the Texas Case. *See* Opp. at 6-7. If Google did not anticipate deposing any third parties that are likely to appear as witnesses in this case, surely it would have said so. Instead, Plaintiffs' understanding is that Google has already noticed depositions in the Texas Case of third parties that were deposed in this case or appear on the parties' initial disclosures (and therefore are potential trial witnesses).[1]

For third parties that are potential witnesses in this case, Google provides no explanation for how its counsel appearing in both cases could ensure they do not: (a) rely on knowledge they gained in this case (including the detailed knowledge of Plaintiffs' theories and supporting evidence disclosed in Plaintiffs' expert reports) in deposing these potential witnesses, or (b) rely on knowledge from these depositions in the Texas Case in crafting trial examinations in this case.

---

[1] Almost none of the arguments in Google's opposition about "asymmetry" or an advantage gained by the Plaintiffs would be applicable to depositions of third parties taken in the Texas Case. Opp. at 6. Google states that both sides "should remain[] bound by the appropriate discovery limitations in this case" (*id.*), but ignores that it enjoys the benefit taking additional third-party depositions in the Texas Case.

6

Even if unintentional, that reliance is unavoidable. *See* Memo. at 7-8 & n.2. Denying Plaintiffs' motion risks the exact result (in reverse) that Google argues would be unjust: "[one side] obtains no right to access more discovery of [the other side] while [that side] could use the new discovery to inform their trial strategy." Opp. at 2.

    **C. Because the Use of Depositions and Documents from the Texas Case Would be for Impeachment Only, Google's Prejudice Arguments Are Unfounded.**

The Coordination Order provisions that Plaintiffs seek to re-apply to the Texas Case are limited in scope, only allowing documents or deposition transcripts from the Texas Case to be used for impeachment at trial and very clearly not allowing them to "be admitted into evidence" or used affirmatively "in any dispositive motion, pleading, or expert report." Coordination Order, ¶¶ 2.e., 6.d. That fact eliminates the risk of one-sided benefit to the Plaintiffs that Google alleges as the basis for its prejudice argument. *See* Opp. at 5, 6, 8.

Both parties' theories have been disclosed in their discovery responses and expert reports, and the upcoming summary judgment briefing will further crystallize the issues and arguments in the case. Even if Plaintiffs would obtain more transcripts of depositions of Google witnesses while Google would not receive additional depositions of Plaintiffs' party witnesses (*see* Opp. at 5, 6),[2] Plaintiffs could not alter their previously-disclosed theories and contentions based on information from those depositions. Any additional information gleaned from documents or depositions could only be used in the context of impeachment of a witness at trial. Enforcing an exactly equal number of party depositions is no justification for removing the ability of the

---

[2] In making this argument, Google conveniently ignores that as a party to the MDL and Texas Case, it is already obtaining more depositions than the Plaintiffs in this case. Under the existing Coordination Order, Google can already use those depositions for impeachment in this case, and Google will inevitably apply some knowledge from its depositions in the Texas Case to advantage itself in this case. *See* Memo. at 7-8.

7

Plaintiffs to discipline a Google or third-party witness with their previous testimony under oath. Removing that possibility could only facilitate the ability of that witness to offer less than truthful testimony to the jury in this case.[3]

The limitation on using documents and depositions from the Texas Case only for impeachment also negates Google's concerns that some of the Texas Case depositions will be irrelevant (Opp. at 6-7) or that there is risk of confusing the issues for the jury (Opp. at 9). When a document or deposition testimony is used for impeachment at trial, a pre-condition to that use is that contrary testimony was already offered for the jury's consideration. Plaintiffs do not plan to offer irrelevant or confusing testimony to the jury, and, if any party does, then the Court would police that conduct at the time. Indeed, because the documents and depositions from the Texas Case could only be used for impeachment, it ensures that irrelevant facts contained therein—for example, those relating to the state law claims—would have no use in this case.

Google claims that the Court would be required to "parse through the extensive deposition testimony concerning facts and claims that are irrelevant to this proceeding for what is likely to be extremely limited impeachment value" (Opp. at 9) but provides no explanation for why the Court would be so burdened. It would be up to the parties, alone, to (a) determine if a document or deposition transcript from the Texas Case contradicts a witness's statement at trial and (b) perform the impeachment. And, in any event, Judge Brinkema is more than capable of determining whether a given prior statement is or is not appropriate impeachment, and policing the boundaries of such impeachment at the trial of this case. No additional work would be

---

[3] For similar reasons, the increased number of depositions that will occur in the Texas Case is beside the point. *Cf.* Opp. at 3, 4. Regardless of the number, the limitation on their use still applies, and it is important that, in both the Texas Case and the MDL, Google is afforded an equal number of depositions as the respective plaintiffs.

8

required of the Court unless and until a given witness testifies in a manner inconsistent with prior statements or documents. Likewise, there is no burden on Google to do anything unless it chooses to do so. *See* Memo. at 7, 11. Plaintiffs certainly do not object to "pars[ing]" deposition testimony to find the portions with relevant impeachment value, as Google claims would be necessary. Opp. at 9.

### D. Google's Other Arguments Likewise Lack Merit.

To further distract from the good cause that exists for Plaintiffs' motion, Google makes a series of additional factually incorrect arguments.

First, Google asserts that the benefit it sought from the Coordination Order was protection of its witnesses and that amending the Coordination Order would not promote that benefit. Opp. at 10. But Google ignores that for multiple months before the Texas Case was remanded, the Texas Plaintiffs were bound by the Coordination Order and Google obtained benefits during that period, including protections for its witnesses. For example, a former Google executive was deposed for two consecutive days on August 16-17, 2023 pursuant to a notice from the Plaintiffs and cross-notice from the MDL plaintiffs, including the Texas Plaintiffs. Google obtained the benefit of having that witness deposed once, instead of multiple times, across the related cases. Thus, it is the Plaintiffs, not Google, who are currently being denied the benefit they bargained for in the Coordination Order process. *See* Memo. at 2.

Second, Google claims twice that Plaintiffs only used 18 of their allocated 20 third-party depositions in this case. Opp. at 2, 7. That is simply factually wrong. Plaintiffs noticed 11 depositions of third-party witnesses and cross-noticed 9 depositions of third-party witnesses initially noticed by Google. Indeed, it is notable that Google, and Google alone, chose to use less than their allotted portion of third-party witnesses (even though it was Google that initially sought a higher number of third-party depositions than Plaintiffs).

9

Third, Google argues that this Court should reject limited coordination with the Texas Case because Judge Castel in New York did not order additional coordination between the Texas Case and the MDL. Opp. at 4, 8. Judge Castel rightly has broad discretion to manage the litigation in the MDL as he sees fit, and his rationale for denying coordination (which appears to be that it would complicate the completion of depositions in the MDL—*see* No. 21-md-3010, ECF No. 708) does not apply here. This Court has already ordered coordination with the MDL (and the Texas Case while it was part of the MDL) in the same manner that Plaintiffs seek here. The issue is whether that coordination should be re-applied to the Texas Case, which is not the issue that was before Judge Castel.

Fourth, Google attempts to minimize the inconsistency between its arguments here and its recent statement to the Court in the Texas Case. Opp. at 10 n.3. But Google's counsel's statement that "Google has made it very clear to plaintiffs that as regards Virginia, we intend to do everything that we can to sort of continue the effectuation of the existing coordination order that was entered in Virginia and the MDL" speaks for itself. *See* Memo. at 5-6 (quoting same).

Fifth, Google asserts that Plaintiffs are asking this Court to "overrule" the protective order in the Texas Case. Opp. at 5 n.1. That is not correct. As made clear in Plaintiffs' motion and proposed order, the proposed amendments to the Coordination Order would only become effective when also entered by the court in the Texas Case, which is the same procedure used to implement the existing Coordination Order. *See* Proposed Order, ECF No. 550-1, at 2; Memo. at 11-12; Coordination Order, ¶ 10.

## CONCLUSION

For the reasons stated here and in Plaintiffs' opening memorandum, Plaintiffs respectfully request that the Court grant Plaintiffs' motion to amend the Coordination Order.

Dated: April 18, 2024

Respectfully submitted,

JESSICA D. ABER
United States Attorney

/s/ Gerard Mene
GERARD MENE
Assistant U.S. Attorney
2100 Jamieson Avenue
Alexandria, VA 22314
Telephone: (703) 299-3777
Facsimile: (703) 299-3983
Email: Gerard.Mene@usdoj.gov

/s/ Julia Tarver Wood
JULIA TARVER WOOD
MICHAEL E. WOLIN
AARON M. TEITELBAUM

United States Department of Justice
Antitrust Division
450 Fifth Street NW, Suite 7100
Washington, DC 20530
Telephone: (202) 307-0077
Fax: (202) 616-8544
Email: Julia.Tarver.Wood@usdoj.gov
Attorneys for the United States

JASON S. MIYARES
Attorney General of Virginia

/s/ Tyler T. Henry
STEVEN G. POPPS
Deputy Attorney General
TYLER T. HENRY
Assistant Attorney General

Office of the Attorney General of Virginia
202 North Ninth Street
Richmond, VA 23219
Telephone: (804) 692-0485
Facsimile: (804) 786-0122
Email: thenry@oag.state.va.us

Attorneys for the Commonwealth of Virginia and local counsel for the States of Arizona, California, Colorado, Connecticut, Illinois, Michigan, Minnesota, Nebraska, New Hampshire, New Jersey, New York, North Carolina, Rhode Island, Tennessee, Washington, and West Virginia