# EXHIBIT 7

# Transcript of Hearing on Motion to Amend Coordination Order

# April 19, 2024

# (E.D. Va.)

```
 1                  UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF VIRGINIA
 2                       ALEXANDRIA DIVISION

 3      --------------------------x
        UNITED STATES, et al.,     :     Civil Action No.:
 4                                 :     1:23-cv-108
                     Plaintiffs,   :
 5           versus                :
                                   :     Friday, April 19, 2024
 6      GOOGLE LLC,                :     Alexandria, Virginia
                                   :     Pages 1-23
 7                   Defendant.    :
        --------------------------x
 8

 9           The above-entitled motions hearing was heard before
        the Honorable John F. Anderson, United States Magistrate
10      Judge.

11                       A P P E A R A N C E S :

12      FOR THE PLAINTIFFS:   GERARD MENE, ESQUIRE
                              OFFICE OF THE UNITED STATES ATTORNEY
13                            2100 Jamieson Avenue
                              Alexandria, Virginia  22314
14                            (703) 299-3700

15                            JULIA TARVER WOOD, ESQUIRE
                              AARON TEITELBAUM, ESQUIRE
16                            MICHAEL WOLIN, ESQUIRE
                              UNITED STATES DEPARTMENT OF JUSTICE
17                            ANTITRUST DIVISION
                              450 Fifth Street, NW
18                            Washington, D.C.  20530
                              (202) 894-4266
19
                              TYLER HENRY, ESQUIRE
20                            OFFICE OF THE ATTORNEY GENERAL
                              OFFICE OF THE SOLICITOR GENERAL
21                            202 North Ninth Street
                              Richmond, Virginia  23219
22                            (804) 786-7704

23

24

25
                                                              1
```

```
 1                      A P P E A R A N C E S:

 2  FOR THE DEFENDANT:     CRAIG REILLY, ESQUIRE
                           LAW OFFICE OF CRAIG C. REILLY
 3                         209 Madison Street
                           Suite 501
 4                         Alexandria, Virginia  22314
                           (703) 549-5354
 5
                           BRADLEY JUSTUS, ESQUIRE
 6                         KENINA LEE, ESQUIRE
                           CAROLINE BOISVERT, ESQUIRE
 7                         AXINN, VELTROP & HARKRIDER LLP
                           1901 L Street, NW
 8                         Washington, D.C.  20036
                           (202) 699-0950
 9
    TRANSCRIBER:           STEPHANIE M. AUSTIN, RPR, CRR
10                         Transcriber
                           United States District Court
11                         401 Courthouse Square
                           Alexandria, Virginia  22314
12                         (571) 298-1649
                           S.AustinReporting@gmail.com
13
          (TRANSCRIPT PROCEEDINGS RECORDED BY THE FTR SYSTEM)
14

15

16

17

18

19

20

21

22

23

24

25
                                                              2
```

```
 1                    P R O C E E D I N G S

 2            THE DEPUTY CLERK:  United States, et al. versus

 3   Google LLC, Civil Action Number 23-cv-108.

 4            MR. MENE:  Good morning, Your Honor.  Gerard Mene

 5   with the U.S. Attorney's Office.

 6            MS. WOOD:  Good morning, Your Honor.  Julia Wood

 7   for the Department of Justice for the plaintiffs.  My

 8   colleague, Michael Wolin, will be arguing today.

 9            THE COURT:  Okay.

10            MR. WOLIN:  Good morning, Your Honor.

11   Michael Wolin from the Department of Justice.

12            THE COURT:  Thank you.

13            MR. TEITELBAUM:  Good morning, Your Honor.  Aaron

14   Teitelbaum, also from the Department of Justice.

15            THE COURT:  Thank you.

16            MR. HENRY:  Good morning, Your Honor.  Ty Henry

17   from the Virginia Attorney General's Office on behalf of the

18   plaintiff states.

19            THE COURT:  Thank you.

20            MR. JUSTUS:  Good morning, Your Honor.

21   Bradley Justus for Google.  I have my colleagues, Kenina Lee

22   and Caroline Boisvert, and then Craig Reilly, our local

23   counsel.

24            THE COURT:  Okay.  Who's going to argue for?

25            MR. JUSTUS:  I will.
```

                                                                    3

1          THE COURT:  Okay.  Thank you.  Well, I've read the

2    papers that the parties submitted, so I'll hear any

3    arguments that you want to make.

4          Thank you.

5          MR. WOLIN:  Thank you, Your Honor.

6          The focus of plaintiffs' motion is one question,

7    should the Texas case against Google be treated differently

8    than the MDL case against Google, and we believe the answer

9    is no, it should be treated the same.

10         THE COURT:  Let me just make sure I understand the

11   facts.  When Texas was part -- well, let me step back.

12         The case that got transferred from Texas to the

13   MDL and then from the MDL back to Texas, was the case that

14   was transferred to the MDL the entire action that was

15   pending in Texas, or were there other parties in the Texas

16   action that continued with a case in Texas and then were

17   rejoined by the attorney general of Texas and the others?

18         MR. WOLIN:  No, Your Honor.  The entire case that

19   Texas's co-plaintiffs filed against Google was transferred

20   to the MDL and then subsequently remanded to Texas.

21         THE COURT:  And when the coordination order was

22   negotiated in the MDL and in this court, at that time, the

23   Texas -- the request to transfer the case back to Texas was

24   pending, so the parties knew that that was something that

25   was on the horizon or could happen; is that right?

4

1    MR. WOLIN:  Yes, that's correct, Your Honor.  The

2 parties anticipated that any case that was in the MDL could

3 be remanded to its home district, either during discovery or

4 after discovery was over, which was the reason that the

5 coordination order allowed for that.  But, in this instance,

6 it's important.

7    THE COURT:  Well, it specifically says that if

8 it's transferred, that the party will be a non-party.  That

9 once it gets transferred, that party whose case gets

10 transferred is considered to be a non-party.

11    MR. WOLIN:  It says, Your Honor, that if any case

12 gets transferred out of the MDL, the parties will meet and

13 confer and determine at that time, based on where each case

14 is in its timeline, what additional coordination is

15 necessary or proper.  And we believe in this instance,

16 because Texas was transferred while there was still

17 discovery outstanding in Texas, that it was important.

18    THE COURT:  Well, that's -- let's look at the

19 order.  Do you have it in front of you?

20    MR. WOLIN:  Yes.  Of course, Your Honor.

21    THE COURT:  Okay.  Well, it talks about some

22 discussions, but it also says that the transferred case,

23 they will be treated as a non-party; doesn't it?

24    MR. WOLIN:  Yes.  That's correct, Your Honor.

25    THE COURT:  Okay.  So unless and until something

5

1    happens, they're a non-party.

2          MR. WOLIN:  That's correct, Your Honor.  And

3    that's why we're here today because the coordination order

4    suggested that the parties meet and confer and determine

5    what coordination would be appropriate, and we believe that

6    further coordination is appropriate, given that discovery is

7    continuing in Texas and depositions are going to be taken,

8    including depositions of witnesses that are listed on the

9    parties' initial disclosures in this case.

10         And in that instance, we think that continuing the

11   coordination order is appropriate, specifically because it

12   allowed for the plaintiffs in this case to obtain deposition

13   transcripts for witnesses that were deposed in other cases

14   after discovery closed in this case.  And that was part of

15   the benefit that we bargained for, and we think that it's

16   appropriate to order that given that and all the other

17   reasons that we put forward for why coordination makes

18   sense.

19         THE COURT:  Well, your brief says that the

20   New York court has not -- that the approval of the New York

21   court has not occurred to date.

22         MR. WOLIN:  Yes.  That's correct, Your Honor.

23         THE COURT:  It was denied; right?

24         MR. WOLIN:  It was denied.

25         THE COURT:  Well, help me understand how you can

6

 1    tell me in your opening brief that it has not occurred to

 2    date, when, in fact, it has been requested and denied.

 3                MR. WOLIN:  Well, I mean, it hadn't occurred at

 4    the time that we filed it.  It's always open to reurging by

 5    the parties in the MDL.  The coordination order in the MDL

 6    was jointly proposed by Google and the MDL plaintiffs.

 7    Judge Castel decided not to implement it; he had his

 8    reasons.

 9                But, respectfully, that's not the situation that

10    we have in our case.  Discovery is still open in the MDL,

11    and Judge Castel's order was premised on the idea that it

12    might slow down discovery here -- in that case.  But, here,

13    discovery is closed; it's not going to slow anything down.

14    We're just asking to be able to obtain the deposition

15    transcripts and documents that Google obtains in Texas

16    without any burden on Texas itself.

17                We specifically set up the coordination order so

18    there would be no burden.  We can order the deposition

19    transcripts directly from the court reporters.  Google is

20    not involved in that at all.  They don't have to produce any

21    documents to us.  It's their choice.  If they want to

22    produce documents that they obtain in Texas and thereby get

23    the right to use those in our case, it's their option;

24    they're not forced to do it.  And we think this is an

25    important issue particularly because --

                                                              7

1          THE COURT:  Well, if it's an important issue and

2    the case was transferred to Texas November 1 and you're

3    bringing this to the Court at the end of April, why do you

4    wait five months to do that if it's so important an issue

5    for you?

6          MR. WOLIN:  Of course, Your Honor.

7          The process of transferring the case to Texas was

8    very long and drawn out; it had to go through the JPML, as

9    well as the Second Circuit.  And then once the case was

10   transferred to Texas, the parties in the Texas litigation

11   began negotiating their own coordination order, which we

12   discussed in our brief, which would have provided us access

13   to deposition transcripts from that case, which was the main

14   objective, the main bargain that we had wanted out of the

15   coordination order.  And when it looked like that wasn't

16   occurring, we realized that really the better path would be

17   to just fully extend the coordination order to the Texas

18   case again as it was when the coordination order was

19   eventually -- or was first implemented.  And we met and

20   conferred with Google, and now we're before Your Honor.

21         We observed in the Texas litigation that the judge

22   there seemed open to coordination with this case.  He had

23   ordered that the deposition transcripts from the Texas case

24   could be shared with us, and then when the coordination

25   order didn't come into effect because of Judge Castel, he

8

1    said again from the bench that he would be welcoming

2    coordination between the cases, and he would be there

3    willing to help if it was needed by the parties.

4         THE COURT:  Well, help me understand.  If I was

5    inclined to grant your request, is that a back door getting

6    around what Judge Castel has already done?  Since the MDL

7    parties have access to the discovery in this case, wouldn't

8    I be somehow or another undoing what he had already decided,

9    which you say in your brief it hasn't occurred to date when

10   it had actually been decided?

11        And that is -- that is troublesome that you would

12   write a brief and present it to the Court in a matter that

13   has been presented to a district judge in the MDL and

14   decided and tell me that it has not -- that nothing has

15   occurred to date.

16        MR. WOLIN:  We apologize for that, Your Honor.  We

17   thought we were clear.

18        But to get to Your Honor's question, we don't

19   think it's a back door way around Judge Castel's opinion on

20   not allowing further coordination between the MDL and the

21   Texas case.

22        Judge Castel already implemented coordination with

23   this case and the --

24        THE COURT:  But if you get discovery in this case,

25   it's coordinated with the MDL case; right?

9

1           MR. WOLIN:  Castel ruled about coordination of

2    depositions that still were taking place between the MDL and

3    the Texas case, but that's not the -- we don't have any

4    ability to share the depositions that we obtained from Texas

5    if the order is implemented with the MDL.  The coordination

6    order covers discovery obtained in this case -- the existing

7    coordination with the MDL covers the discovery that we

8    obtained in this case; it doesn't necessarily cover the --

9    anything that we would get for impeachment purposes.

10          THE COURT:  But documents you get in this case you

11   share with the MDL; right?

12          MR. WOLIN:  It would give -- I mean, the

13   coordination order now does give us the ability to share

14   discovery, correct.

15          THE COURT:  Right.  And deposition transcripts are

16   discovery.

17          MR. WOLIN:  Yes, Your Honor.

18          THE COURT:  A product of discovery.

19          So wouldn't -- if, in fact, you know, you were

20   getting deposition transcripts from the 80-or-so depositions

21   that are going on in Texas -- which is much different than

22   when this was negotiated.  There was a set number of

23   depositions that were going to be taken in the MDL and in

24   our case, now Texas apparently has decided you can take up

25   to 80 depositions or something, so it's a much different

                                                          10

```
 1   animal now.  But if you get a deposition transcript through
 2   a coordination order in our case, doesn't that give the MDL
 3   proceeding access to that since it's discovery in this case?
 4           MR. WOLIN:  I don't think that's necessarily
 5   correct.  The Texas protective order may prevent that,
 6   but --
 7           THE COURT:  Well, the -- I don't know the Texas
 8   protective order.  I don't know whether it allows you to get
 9   it here; so ...
10           MR. WOLIN:  I mean, the Texas protective order
11   requires that discovery from the Texas case only be used in
12   that case, which is why a coordination order with that case
13   would be required to use some of the discovery here.
14           But Judge Castel didn't seem to be worried about
15   sharing of the -- under the coordination order even if it
16   applied to the Texas case.  He was most concerned with not
17   slowing down the depositions that were occurring in the MDL.
18           THE COURT:  And when are they going to be done,
19   the depositions in the MDL?
20           MR. WOLIN:  June 28th.
21           THE COURT:  And when's the Texas?
22           MR. WOLIN:  May 3rd, Your Honor.
23           THE COURT:  May 3rd?
24           MR. WOLIN:  Yes.
25           THE COURT:  Okay.  And how many depositions are
```

                                                              11

1   they allowing in the Texas case?

2          MR. WOLIN:  In the Texas case, they're allowed 40

3   per side.

4          THE COURT:  When you negotiated this order --

5   coordination order, at that point in time, how many

6   depositions were the parties allowed to take?

7          MR. WOLIN:  In this case, the parties were allowed

8   10 party depositions and 20 third-party depositions.  In the

9   MDL case, Judge Castel put an initial limit of 15

10  depositions per side, but was open.  As I think he said in

11  his discovery order, he would be open to extending that for

12  a showing of good cause.

13         But, Your Honor, nothing in the coordination order

14  and the negotiations that went into it were premised on the

15  number of depositions.  It doesn't say in the coordination

16  order that it only applies if the number of depositions are

17  roughly equivalent, or it would not apply if Judge Castel

18  ordered more depositions.

19         The number of depositions is really not the most

20  important factor here.  The factor here is the fact that

21  Google is out there taking these depositions.  And Google

22  has an equal number of depositions in Texas as the Texas

23  plaintiffs do, so there's no unfairness there.  But the

24  unfairness to us here is because Google is out there taking

25  these depositions of parties that are listed on our initial

                                                          12

1    disclosures that may have been deposed in our case, and

2    there's really an unavoidable risk to Google's counsel, who

3    are the same counsel in this case.  Two of the same law

4    firms and several of the same individual lawyers appeared in

5    both cases.  The harm to us is that they will be out there

6    taking depositions of these witnesses and then making

7    decisions about whether to call those witnesses and how they

8    examine them at trial in our trial here in this courthouse.

9            And even if they do their best to not share

10   information between the cases -- which wouldn't be

11   allowed -- it's just human nature that it's inevitable that

12   they will unconsciously make decisions based on information.

13   They can't unknow something that they learned in the Texas

14   case from the depositions they're taking there when they're

15   making the decisions about what witnesses to call here and

16   how to cross-examine witnesses that we may call.

17           Thank you, Your Honor.

18           THE COURT:  Okay.

19           MR. WOLIN:  Do you have questions?

20           THE COURT:  No.  Thank you.

21           MR. WOLIN:  Thank you.

22           MR. JUSTUS:  Thank you, Your Honor.

23           THE COURT:  Go ahead.

24           MR. JUSTUS:  Thank you, Your Honor.

25           This circumstance of Texas being remanded to a

                                                          13

1    separate proceeding was considered when the coordination
2    order was entered, and Texas was explicitly carved out of
3    this coordination order in the event of remand for the
4    obvious reason that the circumstances may be very different
5    when and if the case got remanded.  And now we're in those
6    different circumstances.
7            This case has had discovery closed for seven
8    months.  Summary judgment is due next Friday.  We're going
9    to trial later this year, and Texas has -- the Texas case
10   allows a number of depositions in this case that is far in
11   excess of those that have -- the Texas case allows a number
12   of depositions in that case that is far in excess of the
13   number of depositions that were allowed in this case.
14           If this coordination order modification were
15   granted, more depositions would come back into this case
16   than were initially taken in this case.
17           THE COURT:  They would only come back in this case
18   for the purposes of impeachment; is that right?
19           MR. JUSTUS:  Yes, Your Honor.  They would come
20   back in for the purposes of impeachment.
21           But the problem is is what sort of asymmetry does
22   that create?  The DOJ, I think, more or less concedes in
23   their reply brief that if this modification is granted, they
24   will discuss the Virginia discovery materials with Texas.
25           THE COURT:  Well, they had a right to discuss it

14

1    with Texas up until the case got transferred.

2              MR. JUSTUS:  Absolutely.  The problem is is that

3    they can discuss it with Texas, suggest lines of questioning

4    for these Texas depositions of Google employees, they will

5    bring those depos back into this Virginia case for either

6    impeachment, and also maybe even more importantly, to guide

7    their trial strategy.  And this is after the government has

8    had three years of pre-suit investigation, numerous depos

9    here.  It really works a huge asymmetry.  And, again, this

10   case is buttoned up and getting ready for trial.  This isn't

11   the time to bring back in all this new paper.

12             THE COURT:  How many depositions have been taken

13   in the Texas case?

14             MR. JUSTUS:  So, to date -- it's a small number.

15   I think -- I think it's less than ten; however, over the

16   next three weeks of discovery, and possibly for a limited

17   extension of discovery, there are multiple depos happening

18   every day.

19             THE COURT:  And what --

20             MR. JUSTUS:  Almost every day, I think.

21             THE COURT:  Tell me a little bit more about the

22   issue that was presented to Judge Castel and his decision on

23   that front in the -- I guess the decision not to coordinate

24   between Texas and the MDL proceeding.

25             MR. JUSTUS:  Yeah.  So I think that the parties

                                                              15

1    presented to Judge Castel the possibility of entering this

2    coordination order between the current MDL and Texas.  And

3    Judge Castel denied it, saying that the MDL case is getting

4    towards the end of discovery, and now is not the time to

5    bring in new deposition coordination into that case,

6    recognizing discovery is almost over.

7            In a lot of ways, Your Honor, I think Judge Castel

8    had more reason to grant this than this Court does, because

9    if Judge Castel had granted this, there was some efficiency

10   in that certain Google deponents wouldn't have had to sit

11   twice, certain third-parties wouldn't have had to sit twice.

12   If this Court granted that relief, even that benefit would

13   not be there, as Your Honor pointed out.

14           There would also be this weird result where

15   there's all this material flowing back into the MDL in

16   contravention of Judge Castel's order through kind of a back

17   door amendment.

18           THE COURT:  All right.  I think I understand your

19   argument.

20           I'll hear anything else from the plaintiffs.

21           MR. WOLIN:  Yes, Your Honor.  I want to start with

22   just a few points, Your Honor.

23           First, counsel from Google talked about the

24   ability of -- or the potential that the United States or the

25   plaintiffs in this case would coordinate directly with

                                                          16

1   counsel for Texas to discuss questions or something along

2   those lines.  And those were pointed out in our paper.

3   They're their own litigants, they're doing their own

4   strategy.

5          But what's more important, I think, is Google that

6   has the same attorneys who are representing it in both cases

7   and are doing that type of coordination already.  They have

8   sent subpoenas to many third parties out of the Texas

9   litigation, including the federal agencies who provided

10  documents in this case, which -- and asking to renotice

11  discovery from this case in the Texas case, which shows that

12  they're already crafting their discovery strategy in the

13  Texas case based on information from this case.  So that

14  type of coordination or strategizing was already occurring.

15         And the second thing I want to just go back to is

16  the provision in the coordination order about what would

17  happen if a case was remanded.  The -- at the time the

18  parties were negotiating the coordination order, they

19  understood that, at some point, cases from the MDL would be

20  remanded to their home districts for trial or additional

21  proceedings, and the parties negotiated and agreed to the

22  language that they would -- if that occurred, they would

23  continue to meet and confer about whether and how

24  coordination would occur.

25         THE COURT:  Well, but -- there is that language,

17

```
 1   but there's also two specific instances in the coordination

 2   order in paragraph bb -- 1bb:  "For the avoidance of doubt,

 3   unless and until a further order directs otherwise, an

 4   individual or entity ceases to be a party" -- that is party

 5   under the terms of this agreement -- "if all claims that it

 6   asserts or have been asserted against it in the MDL of the

 7   Virginia case have been dismissed or otherwise adjudicated

 8   by a district court or transferred to a court other than one

 9   of the district courts."

10            MR. WOLIN:  Yes.

11            THE COURT:  And then it says in paragraph 9:  "If

12   all claims brought by an MDL plaintiff are dismissed,

13   transferred or remanded, then the MDL plaintiff shall be

14   treated as a non-party for the purposes of this order after

15   such dismissal, transfer or remand."

16            MR. WOLIN:  Yes, Your Honor.  And that's why we're

17   before Your Honor today.

18            But what is important is that when we were

19   negotiating it, we contemplated that a remand after

20   discovery had been completed in the MDL and there would be

21   no more discovery in the home district, it would be very

22   different than a remand in this circumstance where Texas was

23   remanded with additional --

24            THE COURT:  Where does it say that in this?  You

25   know, Texas was fighting long and hard to get this case out
```

18

```
 1   of the MDL at the time this was being negotiated, you knew
 2   that.  That isn't what you say here.
 3             MR. WOLIN:  Well, Your Honor, the order says what
 4   it says, and it says that there would be further discussion
 5   about whether and how there would be additional
 6   coordination, which contemplates that there could be an
 7   additional order, which is why we're here today seeking that
 8   additional order, because for all of the reasons that it
 9   made sense to order coordination when Texas was part of the
10   MDL, it still makes sense to order coordination with the
11   Texas case now that it's separate from the MDL.
12             THE COURT:  All right.
13             MR. WOLIN:  Just one final point, Your Honor.
14             At the time the coordination order was entered,
15   remand was with the Second Circuit.  Google was opposing it
16   at that point.  So it was not at all clear that there would
17   actually be a remand of the Texas case to its home
18   jurisdiction.
19             THE COURT:  And again, explain to me why you're
20   bringing this to me in April when the remand became
21   effective in November.
22             MR. WOLIN:  As I explained, Your Honor, the --
23   after the remand became effective, the Texas -- Texas and
24   Google proposed coordination orders to the Court there,
25   which would have provided the Virginia plaintiffs with the
```

19

```
 1   same benefits that they were seeking here.  We thought if
 2   that was sufficient to meet -- to create the level playing
 3   field that we were hoping for at trial that we wouldn't have
 4   to burden the Court, but it seems like that's not happening.
 5   And it's not happening for any reason -- it's happening
 6   because Judge Castel didn't want to coordinate his case with
 7   the Texas case -- with the MDL with the Texas case.  It had
 8   nothing to do with the provision that the Virginia
 9   plaintiffs would be able to obtain deposition transcripts
10   from the Texas case.
11              I mean, Judge Jordan in Texas agreed with that and
12   ordered it.  But to effectuate that, because Judge Castel
13   didn't enter the order, we needed to come here, which is
14   what we're doing and what was contemplated in the
15   coordination order originally, that we would seek additional
16   relief if it was justified when a remand occurred.
17              THE COURT:  All right.  Thank you.
18              MR. WOLIN:  Thank you, Your Honor.
19              THE COURT:  Well, I've reviewed the materials that
20   the parties submitted, I've heard the argument that's been
21   presented here today.  At this point, I don't think that the
22   motion should be granted.
23              First of all, you know, this coordination order
24   was negotiated through a long and difficult process, and the
25   parties agreed to certain provisions at that time.  And at
```

                                                              20

1   that time, the case was the MDL case and the Virginia case,

2   and the discovery was set as to what was going to be

3   happening in the MDL case and what was going to be happening

4   in the Virginia case.

5           The parties, you know, made an agreement at that

6   point in time, and the agreement is specific, where it says

7   that if a case gets transferred or remanded -- and this

8   is -- you know, everybody knew it was -- potentially it was

9   going to happen, that that was -- the result of that was

10  that the parties in that remanded case are going to be

11  non-parties.  It's that clear.

12          It does say that, you know, you can come back and

13  and talk about what -- regarding whether and on what

14  conditions the transferred cases should be coordinated with

15  the MDL in Virginia cases, but it doesn't say they will be.

16          Again, I'm not sure why, when this issue came up

17  in November, we're now dealing with it in April on the eve

18  of filing summary judgment motions and motions in limine and

19  four months before the trial in this case.

20          I'm also concerned, to be honest with you -- you

21  know, the Texas case is a much different case now that it's

22  in Texas than it was in the MDL.  Obviously there are

23  issues, and, as Google has pointed out, there are some other

24  claims that weren't being involved in the MDL case, the --

25  that are now part of the Texas case.  A bigger case, a lot

                                                          21

1     more depositions involved, a completely different set of

2     circumstances.  And I'm concerned that the MDL Court has

3     denied a similar request.  And we are coordinating with the

4     MDL Court, and for our Court to take a different position

5     than the MDL Court, whether it could be used as a back door

6     for the MDL plaintiffs or not, I think is an open issue.  I

7     don't think it's as clear as the plaintiffs in this case

8     indicate, that if you're getting information through a

9     coordination of discovery -- and it is discovery -- that

10    there may be the opportunity to share that information with

11    the MDL plaintiffs would again be backdooring Judge Castel's

12    denial of a request, not just a he-hasn't-acted-on-it kind

13    of a request.

14          So, for all these reasons, I deny the motion at

15    this time.

16          Anything else from the parties today?

17          MR. JUSTUS:  No, Your Honor.

18          THE COURT:  Okay.  Anything else?

19          MS. WOOD:  Your Honor, I just want to make one

20    clarification for the record.

21          The day the MDL -- the Texas case was remanded, I

22    sent an email personally to counsel for Google to begin the

23    coordination process for the coordination.  I just don't

24    want the Court left with the misimpression that we didn't

25    act promptly.

                                                              22

```
 1              THE COURT:  And as you know, you can file a motion
 2   on a Friday and get it heard the following Friday.
 3              MS. WOOD:  Understood, Your Honor.  We --
 4              THE COURT:  That's exactly what you did in this
 5   case, and you filed that motion a week ago today.
 6              MS. WOOD:  Yes, Your Honor.  We foolishly thought
 7   that we could negotiate something with Google.
 8              THE COURT:  Okay.  All right.  Okay.  Anything
 9   else?
10              Court will be adjourned.
11                  (Proceedings adjourned.)
12              ----------------------------------
13   I certify that the foregoing is a true and accurate, to the
14   best of my ability, transcription of proceedings recorded by
15   electronic sound recording (FTR system).
16
17                          Stephanie Austin
18                          Stephanie M. Austin, RPR, CRR
19
20
21
22
23
24
25
```

23