# Exhibit 1

| From: | Zeke DeRose III <Zeke.DeRose@LanierLawFirm.com> |
|---|---|
| Sent: | Monday, April 22, 2024 6:37 PM |
| To: | SESSIONS, Justina (JKS); Marc B. Collier; Geraldine W. Young; BAYOUMI, Jeanette |
| Cc: | Paul Yetter; MCCALLUM, Robert; Bracewell, Mollie; MAHR, Eric (EJM); Moran, David; Nilsson, William (DAL); Mark Lanier; Ashley Keller; John McBride; Jonathan.Wilkerson; Trevor.Young; Peter M. Hillegas; James Lloyd; Thomas Ray; Alex J. Brown; SALEM, Sara; ELMER, Julie (JSE); SONG, Tinny; Marisa Madaras; Gabriel Culver |
| Subject: | Re: Google AdTech (EDTX): Categories and First Priority of States' 30(b)(6) to Google per Special Master Conference |
| Attachments: | Copy of AdTech-30b6 Witness Topic and Time Tracker_LLF_4.22.24.xlsx |

Counsel,

As noted at the hearing last week, the States have managed and provided a chart to Google with dates, locations, witness names, links, and topics for all 17 depositions (pasted in below).

We request Google do the same for currently scheduled depositions where we are still needing information on start times, etc. The attached excel spreadsheet shows on the "Scheduled 30b6" tab highlighted info we are still missing from Google. **To date there are still 38 topics we do not have witnesses or dates from Google on.** This is the first tab "Outstanding 30b6" on our attached sheet and a summary is pasted in below with the highlighted information we are still missing from Google.

Mohan (#66) and ███████ (#97)
Additionally, Mr. Yetter noted on Thursday that Google was providing Mr. Mohan and Mr. ███████ on topic 66 and Mr. ███████ on topic 97 (that is Mr. ███████'s 43rd substantive topic he has been designated on).

**Please provide dates for those two depositions.**

(Mr. McBride sent a separate note about scheduling the remainder of Mr. ███████'s deposition and as Judge Jordan noted on Thursday and in the past, the parties are going to get the discovery they need and are entitled to. Mr. ███████ is designated on 43 topics so we need to get a date for the rest of the 30(b)(6) topics he has been noticed for. As noted to Judge Jordan we believe it will take 3 days to sufficiently address the 43 topics, but the States conceded and are willing to accept 2 days.)

Google is correct that the States have raised the alarm (and have been raising the alarm) over the schedule due to the volume of documents recently produced and the lack of witnesses and dates for 30(b)(6) depositions provided by Google. Google's claim is that the States are manufacturing a reason some depositions need to occur after May 3. Google is, and has been, in the driver's seat on this one and we look forward to Google's final position on these topics.

**Please provide dates and witnesses for the outstanding topics listed below or confirm Google will not provide a witness and its final objection. Please return this chart by Tuesday at 5pm CT.**

If we are unable to reach a resolution we will request a time with the Special Master on Thursday to get resolution so we can get these final depositions scheduled, but I'm still hopeful we can find a path forward.

| TOPIC No./Nos. (*Pending before Special Master) | Date(s) | Start Time | Witness | Location |
|---|---|---|---|---|
| Topic 66 | | | *Neal Mohan/*██████ ██████ *per Paul Yettter 4/18/24* | |
| *Topics 1, 2, 3, 4, and 16 | | | | |
| Topic 6 | | | | |
| *Topics 17-19 | | | | |
| Topic 22 | | | | |
| Topics 29 – 30 | | | | |
| *Topic 36 | | | | |
| Topics 40-42, 44, 51-52: | | | | |
| Topic 45 | | | | |
| Topic 55 | | | | |
| Topic 65 | | | | |
| Topic 74 | | | | |
| Topics 75 and 76 | | | | |
| Topic 83, Topic 104(f), 104(i), 104(q) | | | | |
| Topic 104(c) | | | | |
| Topic 104 (e), (j), (k), (n) (q) | | | | |
| Topics 105-106 | | | | |

██████ **Topics**

**Topics 26, 56, 88, 94**: These topics all involve, in one form or another, issues related to experiments that Google has performed in the context of its Ad Tech Products/Mechanics.  You have proposed having us identify specific analyses and experiments for you to consider, but as we have noted, we do not have access to a list of the experiments that Google ran or analyses that Google has conducted, and you have represented to us that there is no way to generate a comprehensive list.  Recent deposition testimony suggests that there are some ██████████████████████ ████████████████████████ to those experiments each year.  It would be unreasonably burdensome to require the States to sift through Google's 6 million document production and attempt to determine what all of these experiments are (assuming, of course, that such information even exists in Google's production, which the States do not believe to be the case), let alone which are relevant to the conduct at issue here.  Google should therefore investigate which experiments are relevant to this case and prepare a witness to testify regarding the same.

**Topic 34**: We requested a witness who can testify regarding any information that is available to Google that Google does not make available to Advertisers or Publishers and Google's <u>reasons</u> for not providing such information to Advertisers or Publishers.  Google has responded that Messrs. ████ and ████ will testify regarding "the information used by Google product features," but that is far narrower than what the States have requested.  Google has proposed that ████████ will testify regarding "the information that Google makes available to customers using Google Ad Manager" and that ████████ will testify regarding "information that Google makes available to advertiser customers using Display and Video 360 and/or Google Ads."  Google has suggested that "[q]uestions about whether Google makes information available to customers and why/why not should be directed to them."  Google's suggestion is nonsensical.  Customers will not know why or why not Google makes available information to them; only Google will.  Furthermore, it will be nigh impossible for the States to cobble together the testimony of four individuals in order to identify what information is in fact known to Google versus what is shared with publishers.

**Topic 43**:  Google has designated ████████ to testify regarding Google's "policies and procedures for public statements to customers about the Google Ad Tech Products referenced in the Fourth Amended Complaint and/or for customer notifications regarding product changes for those same products" and has "offered to designate a witness [also Ms. ████] regarding Google's communications programs or strategies relating to Reserve Price Optimization, Dynamic Revenue Share, and Bernanke."  This topic is far broader and Google's designation ignores that this topic seeks information on communications regarding <u>each</u> Ad Tech Product and/or Ad Tech Auction Mechanic (not just RPO, DRS, and Bernanke) and internal discussions regarding whether, to what extent, and with whom You should disclose or externally discuss Your Ad Tech Auction Mechanic(s), and the effect thereof.

**Topic 50**:  This topic is: "Statements or communications (internal or external) regarding the benefits or drawbacks of any auction types, including the transparency, fairness, and truthfulness of any auction type, the benefits and drawbacks of second price auctions and alternative auction models, Your reasons for switching from an alleged second price auction, including to a first price auction in or around 2019, and internal discussions regarding whether, to what extent, and with whom You should disclose or externally discuss such benefits and drawbacks, and the effects thereof."  In response Google stated that they were designating ████████ to "discuss the reasons that Google changed AdX from a second price auction to a first-price auction."  That is only a small sliver of this topic; please identify a witness who can speak to the other aspects of this topic.

**Topic 91**:  This topic seeks to explore the ways in which Google's Ad Tech products (including the Chrome browser) interact with each other, as well as with third party Ad Tech products.  Google has taken the position that this topic is too broad and vague but that Mr. ████ is designated to testify regarding a very small subset of product interactions.  But Google is in the best position to explain the interaction of its products both internally and in connection with 3rd party products and the States are entitled to explore this subject with one or more witnesses.

**Topic 98 (c, f, g, h)**: Despite the clear relevance of these topics, Google has refused to provide a witness.

**Topic 100**: Google has failed to identify a witnesses for most of the subtopics for topic 100, which relate to issues such as attempts by publishers to circumvent Unified Pricing Rules, publisher use of per-buyer price floors, analysis of the impact of UPR on the adoption of Header Bidding, the impact of UPR separate and apart from the move to a first-price acution, along with various UPR metrics.  Instead, Google has offered only ████████ "to testify on the operation, design, and reasons that Google implemented UPR."  Google contents that this designation "covers the majority of this topic, to the extent that Google performed any such analyses in the ordinary course of business."  Google has refused to provide a witness on Topic 100(d).

**Topic 101**:  As with topic 100, Google has failed to identify a witnesses for many of the subtopics for topic 101, including those directed to various metrics and impacts related to RPO, internal discussion regarding RPO and its impact, the decision to implement RPO without disclosing RPO.

**Topic 104 (a, b, h, l, o, p)**:  Google has not designated a witness on these sub-topics, despite suggesting in its April 15, 2024 letter that it had addressed them in its April 12, 2024 correspondence.

<u>**30(b)(6)'s of the States**</u>

| | | |
|---|---|---|
| Texas | April 17 (completed) | In Person<br>Justin Gordon<br>9 am CT start<br>NRF Austin<br>98 San Jacinto Blvd Ste 1100<br>Austin, TX 78701 |
| Florida | April 22 (completed) | In Person<br>Andrew Butler<br>9:30 am ET start<br>Collins Building<br>107 W Gaines St<br>Tallahassee, FL 32399 |
| South Carolina | April 23 (confirmed date) | Remote<br>Rebecca Hartner<br>9 am ET start |
| Kentucky | April 25 (confirmed date) | In Person<br>Jonathan Farmer<br>9 am ET start<br>310 Whittington Parkway<br>Suite 101<br>Louisville, KY 40222 |
| Mississippi | April 25 (confirmed date)<br>Crystal Secoy (30b6 topics)<br>Sid Salter (MSU topics) | In Person<br>Crystal Secoy<br>9:30 am CT start<br>Sid Salter<br>After 1st depo start<br>550 High Street<br>Jackson, MS |
| Indiana | April 25-26 (confirmed dates)<br>April 25 –<br>Steven Taterka - Topics 1-5, 11-14, 16, 26-28<br><br>April 26 –<br>Jamie Weber - Topic 32 | In Person<br>1 pm ET start April 25<br>10 am ET start April 26<br>302 W Washington Street<br>Indiana Gov't Center South<br>Fifth Floor<br>Indianapolis, IN 46204 |
| Missouri | April 26 (confirmed date) | Remote<br>Michael Schwalbert<br>9 am CT start |
| Nevada | April 29 (confirmed date) | Remote<br>Lucas Tucker<br>8:30 am to 4:30 pm PT |
| South Dakota | April 29 (confirmed date) | In Person<br>Jonathan Van Patten<br>8 am CT start<br>1302 E Hwy 14 |

| | | Pierre, SD 57501 |
|---|---|---|
| Utah | April 30 (confirmed date)<br>Marie Martin – Topics 1-3 (AGO only), 4-5 (but not DCP ad agency purchases or DCP's doc retention policies), 11-14, 16, 26-27 (both AGO and DCP)<br>Melanie Hall – Topics 1-3 (DCP), 4-5 (as they relate to DCP ad agency purchases and DCP doc retention policies), 28, 32 (DCP only) | Remote<br>Marie Martin<br>8 am PT start<br>Melanie Hall<br>1 pm PT start |
| Puerto Rico | April 30 (confirmed date) | In Person<br>Guarionex Diaz Martinez<br>9:30 am ET start<br>PR DOJ<br>Calle Teniente Cesar Gonzalez<br>677 Esq Ave Jesus T Pinero<br>San Juan, Puerto Rico |
| Montana | (confirmed dates)<br>April 30 – Bret Taylor - Topics 1-3<br>May 1 – Anna Schneider - Remaining topics | Remote<br>Bret Taylor 9 am MT start<br>Anna Scheider 9 am MT start |
| Arkansas | May 1 (confirmed date) | Remote<br>Chuck Harder<br>9 am CT start |
| North Dakota | May 2 (confirmed date) | Remote<br>Elin Alm<br>8 am CT start |
| Idaho | May 3 (confirmed date) | Remote<br>John Olson<br>9:30 am MT start |
| Louisiana | May 3 (confirmed date) | In Person<br>Patrick Voelker<br>9 am CT start<br>Louisiana AG office*<br>Baton Rouge |
| Alaska | May 3 (confirmed date) | Remote<br>Jeff Pickett<br>Noon Alaska start |

**From:** Zeke DeRose III <Zeke.DeRose@LanierLawFirm.com>
**Date:** Friday, April 19, 2024 at 11:32 AM
**To:** "SESSIONS, Justina (JKS)" <Justina.Sessions@freshfields.com>, "Marc B. Collier" <marc.collier@nortonrosefulbright.com>, "Geraldine W. Young" <geraldine.young@nortonrosefulbright.com>, "BAYOUMI, Jeanette" <Jeanette.Bayoumi@freshfields.com>
**Cc:** Paul Yetter <pyetter@yettercoleman.com>, "MCCALLUM, Robert" <rob.mccallum@freshfields.com>,

"Bracewell, Mollie" <mbracewell@yettercoleman.com>, "MAHR, Eric (EJM)" <Eric.MAHR@freshfields.com>, "Moran, David" <dmoran@jw.com>, "Nilsson, William (DAL)" <wnilsson@jw.com>, Mark Lanier <Mark.Lanier@LanierLawFirm.com>, Ashley Keller <ack@kellerpostman.com>, John McBride <john.mcbride@nortonrosefulbright.com>, Jonathan Wilkerson <Jonathan.Wilkerson@LanierLawFirm.com>, "Young, Trevor (TX)" <trevor.young@oag.texas.gov>, "Peter M. Hillegas" <peter.hillegas@nortonrosefulbright.com>, James Lloyd <James.Lloyd@oag.texas.gov>, Thomas Ray <thomas.ray@oag.texas.gov>, "Alex J. Brown" <Alex.Brown@LanierLawFirm.com>, "SALEM, Sara" <Sara.Salem@freshfields.com>, "ELMER, Julie (JSE)" <Julie.Elmer@freshfields.com>, "SONG, Tinny" <Tinny.Song@freshfields.com>, Marisa Madaras <marisa.madaras@nortonrosefulbright.com>, Gabriel Culver <gabriel.culver@nortonrosefulbright.com>
**Subject:** Re: Google AdTech (EDTX): Categories and First Priority of States' 30(b)(6) to Google per Special Master Conference

Mr. Yetter,

During the afternoon session of the Special Master Conference yesterday, you gave us the name of the representative Google would put up on topic number 66. Topic number 66 was one of the 30 – 50 topics we do did not have a witness or clarification on from my April 10 and April 12 emails below. We appreciate Google providing a witness name on one of the outstanding topics and that that witness is not Mr. ████.

**For Mr. Mohan—can you provide a date and location for Mr. Mohan's 30(b)(6) on topic number 66 and whether you intend to designate Mr. Mohan on any of the other topics so we can get the deposition scheduled?**

If Google has any additional names and dates for the not-yet designated topics, including topic 97, getting those names and dates would be helpful as well.

Thank you again for your help!

Zeke

| 66 | Google's acquisition of DoubleClick and any exclusive access or rights afforded to AdX after and as a result of that acquisition. | "The real-time interoperation of DFP and AdX through 2020" & "the operation, design, and expected benefits of Dynamic Allocation, Enhanced Dynamic Allocation,  Reserve Price Optimization, Dynamic Revenue Share, Unified Pricing Rules, Open Bidding, and the material features of the Google AdX auction as relevant to Plaintiffs' Fourth Amended Complaint, from 2012 – 2020" | Will Mr. ████ be prepared to testify regarding Google's acquisition of DoubleClick and any exclusive access or rights afforded to AdX as a result of that acquisition? |

**From:** "SESSIONS, Justina (JKS)" <Justina.Sessions@freshfields.com>
**Date:** Tuesday, April 16, 2024 at 8:59 PM
**To:** Zeke DeRose III <Zeke.DeRose@LanierLawFirm.com>, "Marc B. Collier" <marc.collier@nortonrosefulbright.com>, "Geraldine W. Young" <geraldine.young@nortonrosefulbright.com>, "BAYOUMI, Jeanette" <Jeanette.Bayoumi@freshfields.com>

**Cc:** Paul Yetter <pyetter@yettercoleman.com>, "MCCALLUM, Robert" <rob.mccallum@freshfields.com>, "Bracewell, Mollie" <mbracewell@yettercoleman.com>, "MAHR, Eric (EJM)" <Eric.MAHR@freshfields.com>, "Moran, David" <dmoran@jw.com>, "Nilsson, William (DAL)" <wnilsson@jw.com>, Mark Lanier <Mark.Lanier@LanierLawFirm.com>, Ashley Keller <ack@kellerpostman.com>, John McBride <john.mcbride@nortonrosefulbright.com>, Jonathan Wilkerson <Jonathan.Wilkerson@LanierLawFirm.com>, "Young, Trevor (TX)" <trevor.young@oag.texas.gov>, "Peter M. Hillegas" <peter.hillegas@nortonrosefulbright.com>, James Lloyd <James.Lloyd@oag.texas.gov>, Thomas Ray <thomas.ray@oag.texas.gov>, "Alex J. Brown" <Alex.Brown@LanierLawFirm.com>, "SALEM, Sara" <Sara.Salem@freshfields.com>, "ELMER, Julie (JSE)" <Julie.Elmer@freshfields.com>, "SONG, Tinny" <Tinny.Song@freshfields.com>, Marisa Madaras <marisa.madaras@nortonrosefulbright.com>, Gabriel Culver <gabriel.culver@nortonrosefulbright.com>
**Subject:** RE: Google AdTech (EDTX): Categories and First Priority of States' 30(b)(6) to Google per Special Master Conference


Dear Zeke,

Plaintiffs' last-minute attempt to cancel Mr. ████'s deposition is an unfair burden on the witness and creates needless delay. Google has no choice but to raise this issue with Special Master Moran in the morning.

Google complied with the Special Master's order that Google begin scheduling 30(b)(6) depositions and on March 29 designated Mr. ████ on various topics and offered April 19 for his deposition. Since that time, you have asked that we <u>expand</u> the scope of those designations, contending that various subparts of your topics were not covered. We obliged (in part by confirming that other witnesses will handle subjects and in part by confirming that Mr. ████ could testify as to some of your questions). But now, even though Google has done exactly what you requested, you are complaining that the scope of the designation is somehow too broad. The breadth of Plaintiffs 30(b)(6) notice is a problem of their own making. Moreover, you rejected our offers to designate 30(b)(1) testimony as 30(b)(6) testimony and rejected our offers to provide written responses on certain topics. You have also complained to us that too many depositions are scheduled for the final week of fact discovery. In light of this history it is unreasonable to demand that we reschedule Mr. ████'s previously confirmed deposition within such a compressed timeframe.

We are prepared to proceed with Mr. ████'s deposition as planned this Friday. He has been prepared to address the 30(b)(6) topics for which he's been designated, and Plaintiffs should proceed as scheduled.

Your sudden demand to reschedule Mr. ████'s deposition without a legitimate reason and demand that he sit for multiple days comes at the same time as various other correspondence that suggests that Plaintiffs are now looking to extend the fact discovery period set by the Court. Google has made tremendous efforts to address Plaintiffs' ever-expanding demands within the period that has been set for fact discovery, including to schedule the depositions you have demanded and to designate and prepare witnesses on the over-100-topic sprawling 30(b)(6) notice on which you have sought testimony.

There is no reason Mr. ████ should not be designated for the topics on which we have identified him and you have not identified any legitimate reason for him to sit for more than 7 hours as the rules contemplate and complete his deposition on Friday, as previously agreed. We remain willing to work with you, however, should there be a necessity for his to sit for deposition slightly longer than 7 hours on the record.

Regards,
Tina

---

**From:** Zeke DeRose III <Zeke.DeRose@LanierLawFirm.com>
**Sent:** Tuesday, April 16, 2024 4:00 PM
**To:** SESSIONS, Justina (JKS) <Justina.Sessions@freshfields.com>; Marc B. Collier <marc.collier@nortonrosefulbright.com>; Geraldine W. Young <geraldine.young@nortonrosefulbright.com>; BAYOUMI, Jeanette <Jeanette.Bayoumi@freshfields.com>
**Cc:** Paul Yetter <pyetter@yettercoleman.com>; MCCALLUM, Robert <rob.mccallum@freshfields.com>; Bracewell, Mollie <mbracewell@yettercoleman.com>; MAHR, Eric (EJM) <Eric.MAHR@freshfields.com>; Moran, David

<dmoran@jw.com>; Nilsson, William (DAL) <wnilsson@jw.com>; Mark Lanier <Mark.Lanier@LanierLawFirm.com>; Ashley Keller <ack@kellerpostman.com>; John McBride <john.mcbride@nortonrosefulbright.com>; Jonathan Wilkerson <Jonathan.Wilkerson@LanierLawFirm.com>; Young, Trevor (TX) <trevor.young@oag.texas.gov>; Peter M. Hillegas <peter.hillegas@nortonrosefulbright.com>; James Lloyd <James.Lloyd@oag.texas.gov>; Thomas Ray <thomas.ray@oag.texas.gov>; Alex J. Brown <Alex.Brown@LanierLawFirm.com>; SALEM, Sara <Sara.Salem@freshfields.com>; ELMER, Julie (JSE) <Julie.Elmer@freshfields.com>; SONG, Tinny <Tinny.Song@freshfields.com>; Marisa Madaras <marisa.madaras@nortonrosefulbright.com>; Gabriel Culver <gabriel.culver@nortonrosefulbright.com>
**Subject:** Re: Google AdTech (EDTX): Categories and First Priority of States' 30(b)(6) to Google per Special Master Conference

Hi Tina,

Mr. ████ has been designated on 42 topics and we have been discussing this issue for a couple weeks now.  Your line-by-line response does not resolve our concerns over the scope of your designation for Mr. ████, which remain numerous.

We cannot agree to limit the Plaintiff States' rights to discovery to be predicated on a scenario where if we "have a reasonable and discrete number of additional unanswered questions at the conclusion of seven hours, [Google] will be happy to discuss."

We have no choice but to pull down Friday's deposition of Mr. ████ and hold it open pending conversation with the Special Master on Thursday.

We envision that, to depose a Google representative or representatives on 42 topics, it will require 2-3 days. **Please provide dates and times for Mr. ████ or other Google representatives for 3 days for these 42 topics accordingly**.

Zeke

---

**From:** "SESSIONS, Justina (JKS)" <Justina.Sessions@freshfields.com>
**Date:** Tuesday, April 16, 2024 at 2:58 PM
**To:** Zeke DeRose III <Zeke.DeRose@LanierLawFirm.com>, "Marc B. Collier" <marc.collier@nortonrosefulbright.com>, "Geraldine W. Young" <geraldine.young@nortonrosefulbright.com>, "BAYOUMI, Jeanette" <Jeanette.Bayoumi@freshfields.com>
**Cc:** Paul Yetter <pyetter@yettercoleman.com>, "MCCALLUM, Robert" <rob.mccallum@freshfields.com>, "Bracewell, Mollie" <mbracewell@yettercoleman.com>, "MAHR, Eric (EJM)" <Eric.MAHR@freshfields.com>, "Moran, David" <dmoran@jw.com>, "Nilsson, William (DAL)" <wnilsson@jw.com>, Mark Lanier <Mark.Lanier@LanierLawFirm.com>, Ashley Keller <ack@kellerpostman.com>, John McBride <john.mcbride@nortonrosefulbright.com>, Jonathan Wilkerson <Jonathan.Wilkerson@LanierLawFirm.com>, "Young, Trevor (TX)" <trevor.young@oag.texas.gov>, "Peter M. Hillegas" <peter.hillegas@nortonrosefulbright.com>, James Lloyd <James.Lloyd@oag.texas.gov>, Thomas Ray <thomas.ray@oag.texas.gov>, "Alex J. Brown" <Alex.Brown@LanierLawFirm.com>, "SALEM, Sara" <Sara.Salem@freshfields.com>, "ELMER, Julie (JSE)" <Julie.Elmer@freshfields.com>, "SONG, Tinny" <Tinny.Song@freshfields.com>, Marisa Madaras <marisa.madaras@nortonrosefulbright.com>, Gabriel Culver <gabriel.culver@nortonrosefulbright.com>
**Subject:** RE: Google AdTech (EDTX): Categories and First Priority of States' 30(b)(6) to Google per Special Master Conference

Dear Zeke –

Attached please find a line-by-line response to the points outlined in your chart below.  In short, while Mr. ██████ is not designated to testify on the full scope of every topic/question that you outline below, other witnesses fill in the points that you identified so we believe that our existing designations have these topics and your questions covered.  We also think this gives you the clarification you've asked for on the scope of Mr. █████'s designations.

With respect to your request for additional deposition time with Mr. █████ or any other witnesses, the point may be moot in light of the additional information and clarifications we've provided in the attached chart.  But to the extent it is not, we see no reason to deviate from the Federal Rules and the presumption that the deposition of any 30(b)(6) designee is limited to seven hours.  If that were not the case, Plaintiffs could obtain additional deposition time simply by breaking their 30(b)(6) notice into myriad individual topics and arguing that the number of topics merited additional time.  Your concern that "Google could simply designate a single rep for any and all topics and seek to limit corporate testimony in this case to 7 hours" is obviously not what has happened here, as Google has designated eight different witnesses in response to Plaintiffs' 30(b)(6) notice.  It is also important to note that Plaintiffs have access to a significant amount of existing discovery on the majority of the topics in the 30(b)(6) notice, including prior deposition testimony on many of the same subjects.  To the extent that you remain concerned about the amount of deposition time available to you, we'd encourage you to accept Google's several offers to respond to certain portions of the 30(b)(6) notice in writing.  Finally, we do not intend to be unreasonable with respect to a precise time limit for Mr. █████'s 30(b)(6) deposition. If Plaintiffs have conducted the deposition efficiently and have a reasonable and discrete number of additional unanswered questions at the conclusion of seven hours, we will be happy to discuss.

Regards,
Tina

---

**From:** Zeke DeRose III <Zeke.DeRose@LanierLawFirm.com>
**Sent:** Tuesday, April 16, 2024 10:32 AM
**To:** SESSIONS, Justina (JKS) <Justina.Sessions@freshfields.com>; Marc B. Collier <marc.collier@nortonrosefulbright.com>; Geraldine W. Young <geraldine.young@nortonrosefulbright.com>; BAYOUMI, Jeanette <Jeanette.Bayoumi@freshfields.com>
**Cc:** Paul Yetter <pyetter@yettercoleman.com>; MCCALLUM, Robert <rob.mccallum@freshfields.com>; Bracewell, Mollie <mbracewell@yettercoleman.com>; MAHR, Eric (EJM) <Eric.MAHR@freshfields.com>; Moran, David <dmoran@jw.com>; Nilsson, William (DAL) <wnilsson@jw.com>; Mark Lanier <Mark.Lanier@LanierLawFirm.com>; Ashley Keller <ack@kellerpostman.com>; John McBride <john.mcbride@nortonrosefulbright.com>; Jonathan Wilkerson <Jonathan.Wilkerson@LanierLawFirm.com>; Young, Trevor (TX) <trevor.young@oag.texas.gov>; Peter M. Hillegas <peter.hillegas@nortonrosefulbright.com>; James Lloyd <James.Lloyd@oag.texas.gov>; Thomas Ray <thomas.ray@oag.texas.gov>; Alex J. Brown <Alex.Brown@LanierLawFirm.com>; SALEM, Sara <Sara.Salem@freshfields.com>; ELMER, Julie (JSE) <Julie.Elmer@freshfields.com>; SONG, Tinny <Tinny.Song@freshfields.com>; Marisa Madaras <marisa.madaras@nortonrosefulbright.com>; Gabriel Culver <gabriel.culver@nortonrosefulbright.com>
**Subject:** Re: Google AdTech (EDTX): Categories and First Priority of States' 30(b)(6) to Google per Special Master Conference

Hi Tina,

Thank you for your email.  We share your desire to resolve these issues quickly, given the limited time remaining in discovery and the crowded deposition calendar.

Given the continued uncertainty surrounding the scope of the topics for which you have designated Mr. ██████ and the volume of technical material you have designated him to cover, **we ask that you provide us – no later than tomorrow (Wednesday) afternoon – a new date for Mr. ███████'s deposition that will allow for at least two consecutive days of questioning**, as well as responses to the questions on scope that we sent last Friday.

We can then raise these issue with the Special Master, if needed, at the hearing on Thursday to find a path forward but need to know Google's position on providing a new date for Mr. █████ that will allow for two consecutive days as well as the notes below.

We note that we will need multiple (consecutive) days with Mr. ███—even if Mr. ███'s testimony is limited to only: the "operation, design, and expected benefits of Dynamic Allocation, Enhanced Dynamic Allocation, Reserve Price Optimization, Dynamic Revenue Share, Unified Pricing Rules, Open Bidding, and the material features of the Google AdX auction as relevant to Plaintiffs' Fourth Amended Complaint, from 2012 – 2020."

As we previously noted, limiting his testimony to just 7 hours would essentially allow us only an hour for each of the major issues in the case that Mr. ███ has been designated to cover (e.g., 1 hour on DRS, 1 hour RPO, 1 hour on UPR, etc.), which is simply not feasible or workable. Moreover, you have designated Mr. ███ as witness on some 42 topics, which is over 1/3 of the 30(b)(6) topics noticed by the States.

We are still waiting for you to confirm the exact scope of Mr. ███'s designations, which will likely impact the amount of time we will need with this witness. Until we get a response on this, we are extremely limited in our ability to prepare.

As spelled out in detail in our chart below, **we need to understand if Mr. ███ is being offered solely in a technical capacity, or if he will be testifying regarding issues such as the DoubleClick acquisition (Topic 66), communications with customers regarding auction mechanics, business/strategy decisions made by Google regarding various auction mechanics, etc**. And we need to know if Mr. ███ will be prepared to testify on the sell-side auction mechanics through the present, or if his testimony will be limited to 2012-2020 as you originally proposed.

Thank you and we are happy, as always, to discuss your responses after we get them.

Zeke

---

**From:** "SESSIONS, Justina (JKS)" <Justina.Sessions@freshfields.com>
**Date:** Friday, April 12, 2024 at 5:42 PM
**To:** Zeke DeRose III <Zeke.DeRose@LanierLawFirm.com>, "Marc B. Collier" <marc.collier@nortonrosefulbright.com>, "Geraldine W. Young" <geraldine.young@nortonrosefulbright.com>, "BAYOUMI, Jeanette" <Jeanette.Bayoumi@freshfields.com>
**Cc:** Paul Yetter <pyetter@yettercoleman.com>, "MCCALLUM, Robert" <rob.mccallum@freshfields.com>, "Bracewell, Mollie" <mbracewell@yettercoleman.com>, "MAHR, Eric (EJM)" <Eric.MAHR@freshfields.com>, "Moran, David" <dmoran@jw.com>, "Nilsson, William (DAL)" <wnilsson@jw.com>, Mark Lanier <Mark.Lanier@LanierLawFirm.com>, Ashley Keller <ack@kellerpostman.com>, John McBride <john.mcbride@nortonrosefulbright.com>, Jonathan Wilkerson <Jonathan.Wilkerson@LanierLawFirm.com>, "Young, Trevor (TX)" <trevor.young@oag.texas.gov>, "Peter M. Hillegas" <peter.hillegas@nortonrosefulbright.com>, James Lloyd <James.Lloyd@oag.texas.gov>, Thomas Ray <thomas.ray@oag.texas.gov>, "Alex J. Brown" <Alex.Brown@LanierLawFirm.com>, "SALEM, Sara" <Sara.Salem@freshfields.com>, "ELMER, Julie (JSE)" <Julie.Elmer@freshfields.com>, "SONG, Tinny" <Tinny.Song@freshfields.com>, Marisa Madaras <marisa.madaras@nortonrosefulbright.com>, Gabriel Culver <gabriel.culver@nortonrosefulbright.com>
**Subject:** RE: Google AdTech (EDTX): Categories and First Priority of States' 30(b)(6) to Google per Special Master Conference

Dear Zeke,

Thank you for the productive call yesterday. It was helpful to hear your clarification of certain outstanding topics. In the interest of resolving our negotiations quickly so that we can get to the important work of fully preparing our witnesses, we propose the following on the topics that we discussed yesterday. We note,

however, that our agreement to respond to additional topics as outlined below is subject to our reaching a global agreement on the remaining scope of the States' 30(b)(6) notice.  We are reviewing the long list of questions and requests that you sent earlier today and will respond as quickly as we can.  We're trying to bring these discussions to a close and finish identifying and preparing the Google witnesses, which benefits both sides, so we cannot agree to keep providing incremental additional designations while the scope of the States' demands also expand.

Topic 6
Google will designate a witness or witnesses to testify regarding the internal and external nomenclature commonly used for the Google Ad Tech Products and Ad Tech Auction Mechanics relevant to this case.

I say "commonly used" because we cannot reasonably prepare a witness to be able to list every single term that anyone may have used for any of the products or mechanics at issue, but we will make a good-faith effort to prepare witnesses on the nomenclature.

Topics 29 - 30
We understand from our discussion that Plaintiffs are not looking for Google to conduct an exhaustive investigation and identify every individual that may have worked on any of the products or optimizations in this case, despite the broad literal wording of these topics.  Instead, we understand that Plaintiffs would like to ask 30(b)(6) witnesses about the employees generally responsible for the Ad Tech Auction Mechanics at issue in the case, and what those employees' roles were.  We further understand that you want to be able to ask 30(b)(6) witnesses who they would go to if the witness does not know the answer to a particular technical question.  To that end, Google proposes to designate a witness or witnesses to testify regarding:

      The Google employees primarily responsible for conceiving and implementing the Ad Tech Auction Mechanics at issue in the case.

Topic 22
We understand from our discussion that Plaintiffs are looking for testimony regarding the types of integrations that Google has with third-party products, focused on ad servers, ad exchanges, and ad buying tools.  Examples of questions might be exploring the parties (or types of parties) that Google's ad servers, ad exchanges, and ad buying tools integrate with and how that integration is accomplished (e.g. via API, etc.).  Google proposes to designate a witness or witnesses to testify regarding:

      The nature or types of integrations that Google's ad server, ad exchange, and ad buying tools have with third-party products relevant to display advertising.

Topic 36
We agreed that the scope of discovery relating to the privacy sandbox is subject to dispute and will be determined soon.  I noted for planning purposes that ███████ would likely be Google's designee regarding the Privacy Sandbox.

Topics 40-42, 44, 51-52:
We understand from our discussion that Plaintiffs are looking for testimony regarding the communications programs or strategies surrounding the specific Auction Mechanics at issue in the case.  We propose a slight further narrowing of these topics to limit the scope to the Auction Mechanics that Plaintiffs specifically identify as part of their deceptive trade practices claims, as the communications programs or strategies surrounding other Auction Mechanics (on which plaintiffs have no claim relating to disclosure or lack of disclosure) would not be relevant.  Therefore, Google proposes to designate a witness or witnesses to testify regarding:

      Google's communications programs or strategies relating to Reserve Price Optimization, Dynamic Revenue Share, and Bernanke.

Topic 45:  This Topic is "The number and identity of Publishers and Advertisers to which You disclosed each Ad Tech Auction Mechanic, in full or in part, and the specific disclosures made to each such Publisher and

Advertiser."  As drafted, this Topic would require Google to investigate and then identify each publisher or advertiser to whom a disclosure was made, and identify the specific disclosure.  This topic does not require follow-up questions or extended explanation.  Therefore, although Google believes that the topic is improper and objectionable, Google proposes to:

identify its disclosures of Reserve Price Optimization, Dynamic Revenue Share, and Bernanke in writing on or before May 3, 2024.

Topic 55:  This Topic is "Complaints, concerns, or questions by any Publisher, Advertiser, or other third-party relating to the fairness, transparency of, or bias in Your Ad Auctions, and Your responses thereto, including relating to whether AdX ran a second-price auction prior to 2019."  Google cannot reasonably prepare a witness to testify on this Topic.  During our meet and confer, you expressed that you were interested in common complaints or the most frequent complaints.  Unfortunately that clarification does not help, as I don't know how we would go about determining whether complaints, concerns, or questions were common and there might be significant nuance to the differences among individual communications.

Topic 65:  As detailed in my letter dated April 9, we believe that this topic as written seeks privileged information, is overly broad and unduly burdensome (especially to the extent that it requires Google to identify every "document[ ] bearing on, supporting, or refuting each defense."  As a compromise, Google proposes to:

provide the factual basis for each of Google's affirmative defenses in writing on or before May 3, 2024.

Topic 74. We understand that plaintiffs are primarily interested in strategic or product plans for the products at issue in this case, both forward-looking and historical.  However, as you know, the relevant time period spans well over a decade and the products at issue are large and complex.  We are considering whether Google could reasonably prepare a witness on a clarified version of this topic and will get back to you shortly

Topic 83, Topic 104(f), 104(i), 104(q).  We understand from our discussions that Plaintiffs are not asking Google to perform an analysis of the effects of each Auction Mechanic on fees, revenue share, margins, and take-rates but, rather, are asking Google to identify whether it performed any such analyses in the ordinary course of business.  Similarly, with respect to Topic 104(f), we understand that Plaintiffs seek any ordinary course analyses of "Header bidding's impact on winning prices paid by Advertisers and/or received by Publishers for impressions and take rates charged by ad exchanges."  And for Topic 104(i), any ordinary course " analysis of the flow of queries running through Header Bidding as compared to Open Bidding."  After having demanded that Google produce an incredible number of documents, Plaintiffs now seem to want Google to sift through those documents to identify analyses within that massive set which Plaintiffs already have.

Nonetheless, in the interests of compromise and in lieu of a 30(b)(6) witness, Google proposes to conduct a reasonable investigation into whether Google analyzed, in the ordinary course of business, the effect of an Auction Mechanic on fees, revenue share, margins, and/or take-rates or "Header bidding's impact on winning prices paid by Advertisers and/or received by Publishers for impressions and take rates charged by ad exchanges," ordinary course "analysis of the flow of queries running through Header Bidding as compared to Open Bidding," and ordinary course analysis of the  "impact of Header Bidding on Your Metrics, Publishers' and/or Advertisers' Metrics, and Your competitors' Metrics"  and identify or produce any such ordinary course analyses before May 3, 2024.

Topic 104(c).  We understand from our discussions that Plaintiffs are not asking Google to analyze or speculate as to whether any product change had any effect on header bidding.  The only three product changes that you identify within the topic are line-item caps, line item caps, "data redactions," and minimum bid to win data.  Google designates ███████ to testify regarding line item caps.  Mr. ███ is sitting for a 30(b)(1) deposition on April 26 (which was rescheduled at plaintiffs request), and we ask that Plaintiffs complete their 30(b)(6) deposition of Mr. ███ at the same time.  We think this is more than reasonable given that Plaintiffs already have access to Mr. ███'s investigative deposition transcript.   Google will designate a witness to

testify regarding Google's provision of minimum bid to win data.  Google is not aware of any "data redactions" made in connection with header bidding.  Thus, we believe this topic is now covered.

Topics 104(d), 104(m).  As I noted on April 9, we believe this topic is covered by Google's designation of ██████████ to testify regarding the data and reporting that Google makes available to its publisher customers.  As such, we're not identifying anyone else.

Regards,
Tina

---

**From:** Zeke DeRose III <Zeke.DeRose@LanierLawFirm.com>
**Sent:** Friday, April 12, 2024 1:53 PM
**To:** Marc B. Collier <marc.collier@nortonrosefulbright.com>; Geraldine W. Young <geraldine.young@nortonrosefulbright.com>; BAYOUMI, Jeanette <Jeanette.Bayoumi@freshfields.com>
**Cc:** SESSIONS, Justina (JKS) <Justina.Sessions@freshfields.com>; Paul Yetter <pyetter@yettercoleman.com>; MCCALLUM, Robert <rob.mccallum@freshfields.com>; Bracewell, Mollie <mbracewell@yettercoleman.com>; MAHR, Eric (EJM) <Eric.MAHR@freshfields.com>; Moran, David <dmoran@jw.com>; Nilsson, William (DAL) <wnilsson@jw.com>; Mark Lanier <Mark.Lanier@LanierLawFirm.com>; Ashley Keller <ack@kellerpostman.com>; John McBride <john.mcbride@nortonrosefulbright.com>; Jonathan Wilkerson <Jonathan.Wilkerson@LanierLawFirm.com>; Young, Trevor (TX) <Trevor.Young@oag.texas.gov>; Peter M. Hillegas <peter.hillegas@nortonrosefulbright.com>; James Lloyd <James.Lloyd@oag.texas.gov>; Thomas Ray <Thomas.Ray@oag.texas.gov>; Alex J. Brown <Alex.Brown@LanierLawFirm.com>; SALEM, Sara <Sara.Salem@freshfields.com>; ELMER, Julie (JSE) <Julie.Elmer@freshfields.com>; SONG, Tinny <Tinny.Song@freshfields.com>; Marisa Madaras <marisa.madaras@nortonrosefulbright.com>; Gabriel Culver <gabriel.culver@nortonrosefulbright.com>
**Subject:** Re: Google AdTech (EDTX): Categories and First Priority of States' 30(b)(6) to Google per Special Master Conference

Tina,

Thank you again for getting on a call with us yesterday afternoon. We wanted to follow-up regarding the breadth of Mr. ████'s proposed testimony, additional time needed with Mr. ████, and who, if not Mr. ████, will testify to highlighted and the specific topics.

### *Mr. ████ Designated by Google for 42 Topics and Need for Additional Days*

As we discussed on our meet and confer yesterday, Google has designated Mr. ████ as a 30(b)(6) witness on certain matters that Google has suggested cover **42** of the States 30(b)(6) topics, which is over 1/3 of all topics noticed.

We noted yesterday, that due to the large number of topics Mr. ████ is designated on, we will need more than one day—likely multiple, consecutive days with Mr. ████, however, you noted that you weren't sure we are entitled to more than 7 hours with a corporate rep. This of course cannot be the case. Otherwise, Google could simply designate a single rep for any and all topics and seek to limit corporate testimony in this case to 7 hours.

Even if Mr. ████ is only going to give testimony on the specific things spelled out in previous correspondence, being limited to 7 hours would essentially allow us an hour for each of the major issues in the case (e.g., 1 hour on RPO, 1 hour on UPR, etc.), which of course is not workable or practical).

Given the schedule and the fact that Mr. ████'s deposition is currently scheduled for Friday, April 19—the day after the hearing in Plano, it seems like we need to understand when Mr. ████ or other deponents will be available so we can adjust the crowded deposition schedule accordingly.

### *Scope of Topics and Subject Matter Mr. ████ Designated*

Additionally, for many of these topics, however, the States believe there is a significant delta between the scope of the topic and the subject matter for which Google has designated Mr. █████.

As promised during our conversation yesterday, we are circulating the chart below to highlight these gaps. Specifically, we have used yellow highlighting to identify areas where we have scope concerns and tried to provide a (non-exhaustive) summary of our concerns in the column labelled "States' Issues."  Given that Google has taken a similar approach with Mr. █████'s designations, we believe that many of the same issues arise with that witness, and we're hopeful that working through things with Mr. █████ first will be an efficient path forward.  Please review the chart below and let us know if Mr. █████ will be prepared to testify regarding the full scope of these topics (with the understanding that he may testifying on some topics only as to certain Auction Mechanics) and if not, who Google will designate for the portion(s) of these topics that Mr. █████ will not be prepared to address.

| No. | Topic | Google Designation | States' Issues |
|---|---|---|---|
| 7 | The design and development process, employee or contractor onboarding process, and the identity of the persons, entities, and groups responsible for each Google Ad Tech Auction Mechanic. | Processes by which Google engineering personnel were initially educated or onboarded regarding the sell-side Ad Tech Auction Mechanics at issue in Plaintiffs' Fourth Amended Complaint | To avoid any misunderstanding, please let us know which Auction Mechanisms you consider "sell-side" and which you consider "buy-side."  Also, please confirm what you mean by engineers being "initially" educated or onboarded – are you restricting Mr. ████'s testimony on this subject to a particular time period? |
| 8 | The process by which any of your employees or contractors are educated or otherwise "onboarded" regarding each Google Ad Tech Auction Mechanic, including the resources used to provide such education, such as primers, instruction manuals, wikis, technical documents, presentations, tutorials, and videos, and any Documents and/or repositories used or referenced as part of this process. | Processes by which Google engineering personnel were initially educated or onboarded regarding the sell-side Ad Tech Auction Mechanics at issue in Plaintiffs' Fourth Amended Complaint | To avoid any misunderstanding, please let us know which Auction Mechanisms you consider "sell-side" and which you consider "buy-side."  Also, please confirm what you mean by engineers being "initially" educated or onboarded – are you restricting Mr. ████'s testimony on this subject to a particular time period? |
| 9 | The technical documentation (either internal or external) for each of Your Ad Tech Products and Ad Tech Auction Mechanics, including, but not limited to technical reference manuals, specifications, schematics, configuration guides, user manuals, APIs, instruction manuals, product roadmaps, product architecture schematics, training materials, sign-off guides, technology documents, integration | Documents . . . created in the ordinary course of business for Google Ad Manager, DFP, and/or AdX through 2020 | Please confirm that Mr. █████ will be prepared to cover the technical documentation for the various Auction Mechanics (UPR, DA, EDA, RPO, etc). |

| | | | |
|---|---|---|---|
| | guides, Markdown files, and information repositories, including websites, related to each Google Ad Tech Auction Mechanic. | | |
| 11 | The design and development process for each Google Ad Tech Auction Mechanic, including milestones such as conception, research, design, development, testing, experiments, first roll-out and staged roll-out (whether live or in experiment), and use at full scale, and including the location and approximate time for each stage, and identification of each Ad Tech Product to which each Ad Tech Mechanic applied and Documents relating to this Topic. | The operation, design, and expected benefits of Dynamic Allocation, Enhanced Dynamic Allocation,  Reserve Price Optimization, Dynamic Revenue Share, Unified Pricing Rules, Open Bidding, and the material features of the Google AdX auction as relevant to Plaintiffs' Fourth Amended Complaint, from 2012 - 2020 | This topic includes questions around timing/dates, including when Auction Mechanics were rolled out and used at full scale.  Will Mr. ▓▓▓▓ be prepared to testify regarding such dates? |
| 20 | Documents, including representations, statements, communications, presentations, posts or postings, marketing, promotions, advertising, updates, instructions, or recommendations regarding each Ad Tech Product and/or Ad Tech Auction Mechanic provided to Publishers, Advertisers, customers, Users, and/or third parties, and internal discussions regarding whether, to what extent, and with whom You should disclose or externally discuss Your Ad Tech Auction Mechanic and the effects thereof. | The operation, design, and expected benefits of Dynamic Allocation, Enhanced Dynamic Allocation,  Reserve Price Optimization, Dynamic Revenue Share, Unified Pricing Rules, Open Bidding, and the material features of the Google AdX auction as relevant to Plaintiffs' Fourth Amended Complaint, from 2012 - 2020 | Will Mr. ▓▓▓▓ be prepared to discuss documents provided to Publishers, Advertisers, etc. as well as internal discussions as to whether, to what extent and with whom Google should disclose or discuss Ad Tech Auction Mechanics and effects? |
| 21 | The lifecycle of an ad impression within Your Ad Tech Products, including through each Ad Tech Auction Mechanic. | The operation, design, and expected benefits of Dynamic Allocation, Enhanced Dynamic Allocation,  Reserve Price Optimization, Dynamic Revenue Share, Unified Pricing Rules, Open Bidding, and the material features of the Google AdX auction as relevant to Plaintiffs' Fourth Amended Complaint, from 2012 - 2020 | This topic seeks testimony on the overall end-to-end technical lifecycle for display advertising (in Google products).  You have designated Mr. ▓▓▓▓ for a subset of Auction Mechanics and Products (and Mr. ▓▓▓▓ regarding Bernanke, Poirot, Elmo, and Awbid) – but who will testify regarding the rest? |
| 24 | Your decision to implement and reasons for implementing or declining to implement each Ad Tech Auction Mechanic, including for all versions of each Ad Tech Auction Mechanic including Google's decision to exempt | The operation, design, and expected benefits of Dynamic Allocation, Enhanced Dynamic Allocation,  Reserve Price Optimization, Dynamic Revenue Share, Unified Pricing Rules, Open Bidding, and the material | Will Mr. ▓▓▓▓ be prepared to testify regarding why Google decided to implement the various Auction Mechanics and to exempt certain buyers from various Auction Mechanics? |

| | | | |
|---|---|---|---|
| | certain buyers from various Ad Tech Auction Mechanics. By way of example, this would include discussions related to exempting GDN from DRS and Google's RPO exemption policy. | features of the Google AdX auction as relevant to Plaintiffs' Fourth Amended Complaint, from 2012 - 2020 | |
| 26 | Google's evaluation, testing, experimentation, analyses, predictions, designs, simulations, query results, data maps, data descriptions, data dictionaries, and prototyping of each Google Ad Tech Product and Ad Tech Auction Mechanic. | The operation, design, and expected benefits of Dynamic Allocation, Enhanced Dynamic Allocation,  Reserve Price Optimization, Dynamic Revenue Share, Unified Pricing Rules, Open Bidding, and the material features of the Google AdX auction as relevant to Plaintiffs' Fourth Amended Complaint, from 2012 - 2020 | You have proposed having us identify specific analyses and experiments for you to consider, but as we have noted, we do not have access to a list of the experiments that Google ran or analyses that Google has conducted, and you have represented to us that there is no way to generate a comprehensive list.  Will Mr. ██████ be prepared to identify and discuss the relevant evaluations, experiments, analyses, etc. that Google performed in connection with the Auction Mechanics for which you are offering him (e.g., Dynamic Allocation, Enhanced Dynamic Allocation,  Reserve Price Optimization, Dynamic Revenue Share, Unified Pricing Rules, Open Bidding)? |
| 28 | Whether and to what extent You currently use or implement any Ad Tech Auction Mechanic; if not, when you stopped implementing the Ad Tech Auction Mechanic and Your reasons for doing so; and Your plans to implement any Ad Tech Auction Mechanic in the future, including revised or modified versions of that Ad Tech Auction Mechanic. | The operation, design, and expected benefits of Dynamic Allocation, Enhanced Dynamic Allocation,  Reserve Price Optimization, Dynamic Revenue Share, Unified Pricing Rules, Open Bidding, and the material features of the Google AdX auction as relevant to Plaintiffs' Fourth Amended Complaint, from 2012 - 2020 | For Auction Mechanics on which you have indicated Mr. ██████ will testify that are no longer in use, will he prepared to provide Google's reasons for discontinuing those Auction Mechanics as well as Google's plans to implement such Mechanic (or a variation thereof) in the future? |
| 34 | For any auction in which Google participates, any information that is available to Google that Google does not make available to Advertisers or Publishers and Google's reasons for not providing such information to Advertisers or Publishers. | The operation, design, and expected benefits of Dynamic Allocation, Enhanced Dynamic Allocation,  Reserve Price Optimization, Dynamic Revenue Share, Unified Pricing Rules, Open Bidding, and the material features of the Google AdX auction as relevant to Plaintiffs' Fourth Amended Complaint, from 2012 - 2020 | Will Mr. ██████ be prepared to testify as to the information that Google does not make available to publishers as well as Google's reasons for not providing such information? |
| 43 | Google's external representations and public-facing statements You | The operation, design, and expected benefits of Dynamic | Will Mr. ██████ be prepared to discuss the external |

| | | | |
|---|---|---|---|
| | made or considered making regarding each Ad Tech Product and/or Ad Tech Auction Mechanic to Publishers, Advertisers, and other third-parties, including any such representations or statements related to whether Publishers, Advertisers, and other-third parties would be opted into any version of an Ad Tech Auction Mechanic and/or whether being opted into that Ad Tech Auction Mechanic would also opt a Publisher out of another Ad Tech Auction Mechanic (or version of an Ad Tech Auction Mechanic), and internal discussions regarding whether, to what extent, and with whom You should disclose or externally discuss Your Ad Tech Auction Mechanic(s), and the effects thereof. | Allocation, Enhanced Dynamic Allocation,  Reserve Price Optimization, Dynamic Revenue Share, Unified Pricing Rules, Open Bidding, and the material features of the Google AdX auction as relevant to Plaintiffs' Fourth Amended Complaint, from 2012 - 2020 | representations/statement that Google made to Publishers, Advertisers, etc., including statements as to whether customers would be opted-in or out of various Auction Mechanics and internal discussions relating to the same? |
| 46 | Your internal discussions, communications documents, "talking points," marketing materials, and related internal trainings related to each Ad Tech Product and Ad Tech Auction Mechanic, including Your development thereof and internal communications related thereto, and including Google's understanding of the effects, benefits, and drawbacks of each Ad Tech Auction Mechanic on Publishers, Advertisers, Google, and the broader "ecosystem" as the term is used by Google in its documents; the transparency, fairness, and truthfulness of any auction type or Ad Tech Auction Mechanic; Your decision whether or not (and if so, when) to disclose the Ad Tech Auction Mechanic to Publishers, Advertisers, and third-parties, and Your reasoning or rationale regarding such decisions. | The operation, design, and expected benefits of Dynamic Allocation, Enhanced Dynamic Allocation,  Reserve Price Optimization, Dynamic Revenue Share, Unified Pricing Rules, Open Bidding, and the material features of the Google AdX auction as relevant to Plaintiffs' Fourth Amended Complaint, from 2012 - 2020 | Among other things, this topic relates to marketing materials, Google's decisions/rationale around third party disclosures, and Google's understanding of effects, benefits, and drawbacks of Auction Mechanics on Publishers, Advertisers, and Google.  Will Mr. ▉ be prepared on the full scope of this topic? |
| 47 | Google's internal discussions regarding each Ad Tech Auction Mechanic, including Google's understanding of the effects of the Ad Tech Auction Mechanic on | The operation, design, and expected benefits of Dynamic Allocation, Enhanced Dynamic Allocation,  Reserve Price Optimization, Dynamic Revenue | Will Mr. ▉ be prepared to discuss the effects of the Auction Mechanics/AdX on third parties, disclosures to third parties and |

| | | | |
|---|---|---|---|
| | Publishers, Advertisers, Google, and the broader "ecosystem"; Your decision whether or not (and if so, when) to disclose the Ad Tech Auction Mechanic to Publishers, Advertisers, and third-parties, the extent of such disclosure, and Your reasoning or rationale regarding such decisions. | Share, Unified Pricing Rules, Open Bidding, and the material features of the Google AdX auction as relevant to Plaintiffs' Fourth Amended Complaint, from 2012 - 2020 | Google reasons/rationale for disclosing (or not disclosing)? |
| 49 | The types of auctions (e.g., first price auctions, second price auctions, shadow auctions, first look auctions, and modified or hybrid second price auctions) that Google ran for display advertising from 2010 to the present, Your representations to and communications with third parties and internal communications regarding the same, and any internal discussions regarding whether, to what extent, and with whom You should disclose or externally discuss such auctions, and the effects thereof. | The operation, design, and expected benefits of Dynamic Allocation, Enhanced Dynamic Allocation, Reserve Price Optimization, Dynamic Revenue Share, Unified Pricing Rules, Open Bidding, and the material features of the Google AdX auction as relevant to Plaintiffs' Fourth Amended Complaint, from 2012 - 2020 | Will Mr. ▮ be prepared to discuss the types of auctions that Google ran and representations to third parties regarding the same? |
| 50 | Statements or communications (internal or external) regarding the benefits or drawbacks of any auction types, including the transparency, fairness, and truthfulness of any auction type, the benefits and drawbacks of second price auctions and alternative auction models, Your reasons for switching from an alleged second price auction, including to a first price auction in or around 2019, and internal discussions regarding whether, to what extent, and with whom You should disclose or externally discuss such benefits and drawbacks, and the effects thereof. | The operation, design, and expected benefits of Dynamic Allocation, Enhanced Dynamic Allocation, Reserve Price Optimization, Dynamic Revenue Share, Unified Pricing Rules, Open Bidding, and the material features of the Google AdX auction as relevant to Plaintiffs' Fourth Amended Complaint, from 2012 - 2020 | This topic covers, among other things, Google's reasons (which includes business/strategy reasons) for switching from an alleged second price to a first price auction. Will Mr. ▮ be prepared on the full scope of this topic? |
| 53 | Whether and to what extent Google contends that AdX ran a second price auction prior to switching to a first-price auction in or around 2019. | The operation, design, and expected benefits of Dynamic Allocation, Enhanced Dynamic Allocation, Reserve Price Optimization, Dynamic Revenue Share, Unified Pricing Rules, Open Bidding, and the material features of the Google AdX | Will Mr. ▮ be prepared to testify as to what constitutes a second price vs. first price auction and to answer questions on which type of auction AdX ran prior to 2019? |

| | | | |
|---|---|---|---|
| | | auction as relevant to Plaintiffs' Fourth Amended Complaint, from 2012 - 2020 | |
| 56 | Whether You ran live experiments on auction participants, whether you notified the auction participants of these experiments and how they were notified, and if live experiments were run, the type, scope and description of the experiments run, the percentage of traffic or "slices" on which they were run, and the identity of the participants on which they were run as well as Google's conclusions regarding the results of those experiments. | The operation, design, and expected benefits of Dynamic Allocation, Enhanced Dynamic Allocation,  Reserve Price Optimization, Dynamic Revenue Share, Unified Pricing Rules, Open Bidding, and the material features of the Google AdX auction as relevant to Plaintiffs' Fourth Amended Complaint, from 2012 - 2020 | You have proposed having us identify specific experiments for you to consider, but as we have noted, we do not have access to a list of the experiments that Google ran, and you have represented to us that there is no way to generate a comprehensive list.  Will Mr. ▇▇ be prepared to identify and discuss the relevant experiments run on live traffic in connection with the Auction Mechanics for which you are offering him (e.g., Dynamic Allocation, Enhanced Dynamic Allocation,  Reserve Price Optimization, Dynamic Revenue Share, Unified Pricing Rules, Open Bidding)? |
| 66 | Google's acquisition of DoubleClick and any exclusive access or rights afforded to AdX after and as a result of that acquisition. | "The real-time interoperation of DFP and AdX through 2020" & "the operation, design, and expected benefits of Dynamic Allocation, Enhanced Dynamic Allocation,  Reserve Price Optimization, Dynamic Revenue Share, Unified Pricing Rules, Open Bidding, and the material features of the Google AdX auction as relevant to Plaintiffs' Fourth Amended Complaint, from 2012 – 2020" | Will Mr. ▇▇ be prepared to testify regarding Google's acquisition of DoubleClick and any exclusive access or rights afforded to AdX as a result of that acquisition? |
| 69 | Publishers' ability to access AdX demand through a non-DFP (or other Google) ad server and Google's consideration of or refusal to integrate AdX with third-party or publisher in-house ad servers. | The operation, design, and expected benefits of Dynamic Allocation, Enhanced Dynamic Allocation,  Reserve Price Optimization, Dynamic Revenue Share, Unified Pricing Rules, Open Bidding, and the material features of the Google AdX auction as relevant to Plaintiffs' Fourth Amended Complaint, from 2012 - 2020 | Will Mr. ▇▇ be prepared to testify as to Google's consideration of or refusal to integrate AdX with 3rd party or publisher in-house ad servers?  Will he be able to testify as to Publishers' ability to access AdX demand through a non-DFP (or other Google) ad server? |
| 78 | The impact, effect, benefit, or harm of each Ad Tech Auction Mechanic alone or in combination on Publishers, Advertisers, Google, and Your competitors, including any such analysis conducted or | The operation, design, and expected benefits of Dynamic Allocation, Enhanced Dynamic Allocation,  Reserve Price Optimization, Dynamic Revenue Share, Open | Among other things, this topic goes to the impact/effect/benefit/harm of the Auction Mechanics on customers/competitors and any analysis Google has done |

| | | | |
|---|---|---|---|
| | generated by You or on Your behalf, the individuals involved in performing such analysis, the tools used to perform such analysis, any reports generated detailing such analysis, and Your communications regarding the same. | Bidding, and the material features of the Google AdX auction as relevant to Plaintiffs' Fourth Amended Complaint, from 2012 - 2020 | regarding such impact, but you have designated Mr. ▇ to testify only on the "expected benefits" of various Auction Mechanics.  Will he be prepared to address the full scope of this topic? |
| 79 | The effects of each Ad Tech Auction Mechanic on AdX exchange floors, on bids from Google Ads, on Google's fees, revenue share, margins, and take-rates, and on second bids on noncompetitive queries. | The operation, design, and expected benefits of Dynamic Allocation, Enhanced Dynamic Allocation,  Reserve Price Optimization, Dynamic Revenue Share, Unified Pricing Rules, Open Bidding, and the material features of the Google AdX auction as relevant to Plaintiffs' Fourth Amended Complaint, from 2012 - 2020 | You have indicated that Mr. ▇ will be prepared to testify regarding the "expected benefits" of various Auction Mechanics, but will he also be prepared to discuss the effects of those Mechanics, as set out in this topic? |
| 80 | The effects of each Ad Tech Auction Mechanic on AdX exchange floors. | The operation, design, and expected benefits of Dynamic Allocation, Enhanced Dynamic Allocation,  Reserve Price Optimization, Dynamic Revenue Share, Unified Pricing Rules, Open Bidding, and the material features of the Google AdX auction as relevant to Plaintiffs' Fourth Amended Complaint, from 2012 - 2020 | You have indicated that Mr. ▇ will be prepared to testify regarding the "expected benefits" of various Auction Mechanics, but will he also be prepared to discuss the effects of those Mechanics on AdX exchange floors? |
| 88 | Any experiments, tests, analyses, predictions, simulations, query results, data maps, data descriptions, data dictionaries, for GAM, DFP, and AdX. | The operation, design, and expected benefits of Dynamic Allocation, Enhanced Dynamic Allocation,  Reserve Price Optimization, Dynamic Revenue Share, Unified Pricing Rules, Open Bidding, and the material features of the Google AdX auction as relevant to Plaintiffs' Fourth Amended Complaint, from 2012 - 2020 | Who will testify regarding this topic for GAM and DFP?  Also, you have proposed having us identify specific analyses and experiments for you to consider, but as we have noted, we do not have access to a list of the experiments that Google ran or analyses that Google has conducted, and you have represented to us that there is no way to generate a comprehensive list.  Will Mr. ▇ be prepared to identify and discuss the relevant tests, experiments, analyses, etc. related to AdX? |
| 89 | Your decision to allow AdX to outbid non-Google Ad Exchanges after they submitted their bids, as well as Your decision to discontinue this conduct, if such a decision was made. | The operation, design, and expected benefits of Dynamic Allocation, Enhanced Dynamic Allocation,  Reserve Price Optimization, Dynamic Revenue Share, Unified Pricing Rules, Open Bidding, and the material | This topic is directed to the reasons Google decide to allow AdX to outbid non-Google Ad Exchanges – will Mr. ▇ be prepared to testify on the reasons behind such decisions? |

| | | features of the Google AdX auction as relevant to Plaintiffs' Fourth Amended Complaint, from 2012 - 2020 | |
|---|---|---|---|
| 91 | The manner in which DFP, AdX, GAM, Non-Google Publisher Ad Servers, Non-Google SSPs, non-Google Ad Exchanges, AdSense, DV360, Google Marketing Platform (formerly DoubleClick Digital Marketing and Google Analytics 360 Suite), and Google Chrome interact and/or exchange data or otherwise communicate with each other. | The operation, design, and expected benefits of Dynamic Allocation, Enhanced Dynamic Allocation, Reserve Price Optimization, Dynamic Revenue Share, Unified Pricing Rules, Open Bidding, and the material features of the Google AdX auction as relevant to Plaintiffs' Fourth Amended Complaint, from 2012 - 2020 | Of all of the platforms/technologies that are identified in this topic, you have indicated that Mr. ▇▇ will testify regarding the "material features of the Google AdX auction." Who will testify regarding the other platforms/technologies and how they interact? |
| 92 | Any advantages to You or Your Ad Tech Products arising from Your access to or use or accumulation of information relating to past bidding behavior of bidders on an Ad Auction You conduct, including Exchange Bidding and Open Bidding and including any documentation related to the availability of bid-related information for Publishers, Advertisers, and Ad Exchanges at each stage of the auction and Advertisers' valuation of Ad Impressions. | The operation, design, and expected benefits of Dynamic Allocation, Enhanced Dynamic Allocation, Reserve Price Optimization, Dynamic Revenue Share, Unified Pricing Rules, Open Bidding, and the material features of the Google AdX auction as relevant to Plaintiffs' Fourth Amended Complaint, from 2012 - 2020 | Will Mr. ▇▇ be prepared to discuss the advantages of access/use/accumulation of past bidding behavior and the availability of bid-related information to third parties? |
| 93 | The monetary and non-monetary advantages to You or Your Ad Tech Products arising from Your access to or use or accumulation of Behavioral Data as well as what representations were made to Publishers, Advertisers and Ad Exchanges about Behavioral Data and whether the underlying users consented to that Behavioral Data's use in an Ad Exchange. | The operation, design, and expected benefits of Dynamic Allocation, Enhanced Dynamic Allocation, Reserve Price Optimization, Dynamic Revenue Share, Unified Pricing Rules, Open Bidding, and the material features of the Google AdX auction as relevant to Plaintiffs' Fourth Amended Complaint, from 2012 - 2020 | Will Mr. ▇▇ be prepared to discuss the use/accumulation of Behavioral Data, representations to third parties regarding the same, and underlying users' consent to the use of such data in Ad Exchange? |
| 94 | Any experiment, analysis, or simulation You conducted or are aware of related to the impact of any Ad Tech Auction Mechanic on Publishers or Advertisers and the results thereof, including but not limited to any impact on Your exchange fees and Publisher revenues or yields. | The operation, design, and expected benefits of Dynamic Allocation, Enhanced Dynamic Allocation, Reserve Price Optimization, Dynamic Revenue Share, Unified Pricing Rules, Open Bidding, and the material features of the Google AdX auction as relevant to Plaintiffs' Fourth Amended Complaint, from 2012 - 2020 | You have proposed having us identify specific experiments for you to consider, but as we have noted, we do not have access to a list of the experiments that Google ran, and you have represented to us that there is no way to generate a comprehensive list. Will Mr. ▇▇ be prepared to identify and discuss the relevant experiments run on live |

| | | |
|---|---|---|
| | | traffic in connection with the Auction Mechanics for which you are offering him (e.g., Dynamic Allocation, Enhanced Dynamic Allocation, Reserve Price Optimization, Dynamic Revenue Share, Unified Pricing Rules, Open Bidding)? |
| 97 | Any analysis conducted by or for You in connection with having Meta/Facebook use Open Bidding, including analysis of the minimum spend commitment needed to deter Meta/Facebook from using Header Bidding in a significant way, ==as well as any concerns You had or expressed (internally or externally) regarding Facebook potentially partnering with Amazon to use Header Bidding.== | Analysis conducted (if any) in connection with having Meta/Facebook use Open bidding, including  analysis (if any) "of the minimum spend commitment needed to deter Meta/Facebook from using Header Bidding in a significant way" | Who are you designating to testify regarding concerns Google had or expressed regarding Facebook potentially partnering with Amazon to use Header Bidding? |
| 98 | Dynamic Revenue Share ("DRS"), including, but not limited to:<br><br>a. ==whether Google currently uses any revenue sharing programs or features, including where and how such revenue programs or features are used, and if not, whether Google currently has plans to implement any revenue sharing programs or features;==<br><br>b. ==any revenue sharing program or feature that dynamically adjusted margins, revenue share, take rates or the fees Google charged Publishers to transact via AdX;==<br><br>c. ==the effects of each Ad Tech Auction Mechanic on Your exchange fee, margin, revenue share, or take rate including but not limited to the time at which an Ad Tech Auction Mechanic adjusted Your exchange fee, revenue share, margin, or take rate in relation to the time at which bids were solicited;==<br><br>d. ==Your decision to opt Publishers into DRS v1 or any predecessor thereof and whether and to what== | The operation, design, and expected benefits of Dynamic Allocation, Enhanced Dynamic Allocation,  Reserve Price Optimization, Dynamic Revenue Share, Unified Pricing Rules, Open Bidding, and the material features of the Google AdX auction as relevant to Plaintiffs' Fourth Amended Complaint, from 2012 - 2020 | You have indicated that Mr. ▇▇▇ will testify regarding the operation, design, and expected benefits of DRS, but this topic is materially broader than that, including whether Google currently runs any programs similar to DRS, the effects (not just expected benefits) of DRS on a number of metrics, financial/revenue consequences of DRS, decisions and communications regarding opt-in or opt-out of publishers from DRS, and contracts related to DRS.  Will Mr. ▇▇▇ be prepared to testify regarding the full scope of this topic? |

extent You opted Publishers into DRS v1 or any predecessor thereof and whether and how, if at all, Google disclosed to Publishers their enrollment therein;

e. the ability of a Publisher to opt out of DRS v1 (or any predecessor) and Your communications internally and externally relating to the same;

f. the number and identity of all Publishers who were opted into the first version of DRS (or any version or iteration of DRS prior to DRS v2) when it was initially implemented;

g. the number of transactions and impressions transacted on and the number and identify of every Publisher transacting on AdX on a monthly basis from January 1, 2012 to the present in which the implementation or operation of DRS resulted in exchange fees for publisher inventory, or Your take rates, margins, or revenue shares, that were higher than they otherwise would have been had DRS not been implemented or in operation;

h. the impact of DRS on Your Metrics, Publishers' and/or Advertisers' Metrics, and Your competitors' Metrics;

i. Contracts related to DRS including Your interpretation such contracts.

| 100 | Unified (or Uniform) Pricing Rules ("UPR"), including, but not limited to:<br><br>a. publisher use of per-buyer (e.g., per-Ad Exchange or per-ad buying tool) price floors, including using price floors to increase revenue and improve quality of advertisements; | The operation, design, and expected benefits of Dynamic Allocation, Enhanced Dynamic Allocation,  Reserve Price Optimization, Dynamic Revenue Share, Unified Pricing Rules, Open Bidding, and the material features of the Google AdX auction as relevant to Plaintiffs' | You have designated Mr. ▮▮▮▮ to testify regarding the "operation, design, and expected benefits" of UPR but this topic is significantly broader, and requires a witness prepared to address, among other things, how publishers use per-buyer price floors, attempts by third parties to circumvent UPR, |

| | | Fourth Amended Complaint, from 2012 - 2020 | exceptions/accommodations related to UPR from third parties and Google's decisions related to such exceptions, the impact of UPR on the adoption of Header Bidding, and financial/operational reporting related to UPR, as well as the impact of UPR on various Google and third-party metrics. |
|---|---|---|---|
| | b. attempts by any Publisher, SSP, or Publisher ad network to circumvent GAM's [Unified/Uniform] Pricing Rules, and all exceptions to or accommodations or variations of [Unified/Uniform] Pricing Rules requested by Publishers and Your decision whether to approve or reject such requests;<br><br>c. internal tests, experiments, simulations, or studies, which measure, forecast, predict, study, or research the impact that Your decision to move to a Unified Auction or adopt [Unified/Uniform] Pricing Rules would have or has had on the adoption of Header Bidding;<br><br>d. the number of impressions (as an absolute number and as a percentage of the total number of impressions available in the Unified Auction) that Google Ads or DV360 won slightly above the floor price (where "slightly above" shall mean that the difference between the price that Google Ads or DV360 paid and the floor price or next highest bid does not exceed $0.10 CPM);<br><br>e. the impact of UPR separate from the move to the first price auction on Your Metrics, Publishers' and/or Advertisers' Metrics, and Your competitors' Metrics. | | |
| 101 | Reserve Price Optimization ("RPO"), including, but not limited to:<br><br>a. Your contracts with Publishers, including revisions, changes, or amendments thereto, related to Publishers' exchange floors and any alterations or changes thereto, as well as any related internal and external communications, | The operation, design, and expected benefits of Dynamic Allocation, Enhanced Dynamic Allocation,  Reserve Price Optimization, Dynamic Revenue Share, Unified Pricing Rules, Open Bidding, and the material features of the Google AdX auction as relevant to Plaintiffs' Fourth Amended Complaint, from 2012 - 2020 | You have designated Mr. ████ to testify regarding the "operation, design, and expected benefits" of RPO, but this topic is significantly broader, and requires a witness prepared to address, among other things, changes to contracts related to exchange floors, the effects of RPO on publishers and Google, public statements and disclosure (or lack of disclosure) regarding RPO and |

including those related to Your interpretation such contracts;

b. the number and identity of all Publishers whose exchange floors were affected, altered, changed, manipulated or overridden as a result of RPO from January 1, 2013 to the present;

c. the number of transactions on AdX on a monthly basis from January 1, 2013 to the present, in which an Advertiser paid more for an ad/impression than they otherwise would have if RPO had not been operational or in effect;

d. the identity of all Advertisers who, from January 1, 2013 to the present, paid more for an ad/impression than they otherwise would have if RPO had not been operational or in effect;

e. Your use of historical bidding information in connection with RPO, including whether and to what extent You informed Advertisers that RPO used Advertisers' historical bidding information;

f. Your internal discussions regarding RPO, including Your understanding of the effects of RPO on Publishers, Advertisers, and Google, and Your decision whether or not to disclose RPO to Publishers, Advertisers, and third-parties;

g. Your internal and external communications related to the amount and type of inventory that would be available on AdX as a result of RPO;

h. Your decision to initially implement RPO without disclosing the program to Publishers and/or

Google's decision making process around such disclosure.

Advertisers and the reasons therefore;

i. the number and identity of all Publishers who were opted into RPO when it was initially launched or implemented, including the extent to which Google disclosed RPO to Publishers;

j. Your decision to externally represent RPO as "optimized pricing" rather than "reserve price optimization," internal and external communications related to such decision, and the reasons therefore;

k. Your public-facing statements and internal communications related to RPO or "optimized pricing", including but not limited to the March 5, 2015 Digiday article "Google sweetens deal for publishers with dynamic price floors," including any internal discussions regarding whether, to what extent, and with whom You should make such statements regarding RPO, and the effects thereof.

l. the impact of RPO on Your Metrics, Publishers' and/or Advertisers' Metrics, and Your competitors' Metrics.

| 102 | Dynamic Allocation ("DA") and Enhanced Dynamic Allocation ("EDA"), including, but not limited to:<br><br>a. the design, development, and operation, including when AdX receives the impression and waterfall process, of each version of DA and EDA;<br><br>b. how EDA differs from DA;<br><br>c. the impact and/or effect of EDA on non-AdX Exchanges, on the share of Ad Inventory sold by | The operation, design, and expected benefits of Dynamic Allocation, Enhanced Dynamic Allocation, Reserve Price Optimization, Dynamic Revenue Share, Unified Pricing Rules, Open Bidding, and the material features of the Google AdX auction as relevant to Plaintiffs' Fourth Amended Complaint, from 2012 - 2020 | You have designated Mr. ▇▇ to testify regarding the "operation, design, and expected benefits" of DA and EDA, but this topic is significantly broader, and requires a witness prepared to address, among other things, the impact/effect of EDA on numerous subjects, DA's effects on Publishers' revenue and Google's views as to whether DA is an improvement over "waterfalling," how RTB works in the context of EDA, EDA's impact on advertiser use of AdX or GDN, as well as the impact of DA and |

| | | | |
|---|---|---|---|
| | Publishers through Direct Sales, on the timing of Ad Inventory sold by Publishers through Direct Sales, on the value of Publishers' inventory sold through Direct Sales, on allocation of Advertisers' ad spend between Direct Sales and programmatic sales, and/or on the loss to Publishers of the opportunity to gain additional ad spend absent EDA;<br><br>d. how you rank or ranked Ad Exchanges or Ad Networks with DA or EDA enabled (and how that compares or compared to how Publishers rank or prioritize Ad Exchanges or Ad Networks);<br><br>e. DA's effects on Publisher revenue and CPMs bid for Ad Inventory, whether DA is an improvement over "waterfalling" or "daisy chaining," and whether it reduces Publisher risk that ad inventory would not sell;<br><br>f. how You determined the reserve price and/or the "Temporary CPM" and/or the "Value CPM" in auctions using EDA and how Real Time Bidding ("RTB") works in the context of EDA;<br><br>g. EDA's impact on advertiser use of AdX or GDN;<br><br>h. the impact of DA on Your Metrics, Publishers' and/or Advertisers' Metrics, and Your competitors' Metrics;<br><br>i. the impact of EDA on Your Metrics, Publishers' and/or Advertisers' Metrics, and Your competitors' Metrics. | | EDA on various Google and 3rd party metrics. |
| 104(a), (b), (h), (l), (o), (p) | Header Bidding, including, but not limited to:<br><br>a. the monthly share of impressions and revenue served by DFP or transacted through AdX, as | The operation, design, and expected benefits of Dynamic Allocation, Enhanced Dynamic Allocation,  Reserve Price Optimization, Dynamic Revenue Share, Unified Pricing Rules, Open | You have designated Mr. ████ to testify regarding the "operation, design, and expected benefits" of Open Bidding, but this topic is significantly broader, and requires a witness prepared |

well as the monthly share of impressions transacted by and revenue for any other Publisher Ad Server, Ad Exchange, or Ad Network or through Header Bidding;

b. Your decision not to support the option for Publishers to use Header Bidding in GAM, DFP, or Open Bidding, and to prohibit AdX or GAM from returning bids through Header Bidding;

…

h. Your response to Header Bidding, including all Documents concerning Your policy and practice of implementing Open Bidding;

…

l. the potential or actual impact of Dynamic Allocation on Publisher revenues, including comparing revenues from Dynamic Allocation versus Header Bidding;

o. the impact that Your decision to move to a Unified Auction or adopt [Unified/Uniform] Pricing Rules would have or has had on the adoption of Header Bidding;

…

p. Your use or imposition of timeout restrictions on Bid Requests concerning ads served on AMP Pages when the inventory being served was sold through a Header Bidding solution or through any competing Ad Exchange;

Bidding, and the material features of the Google AdX auction as relevant to Plaintiffs' Fourth Amended Complaint, from 2012 - 2020

to address, among other things, Google's decision not to support Header Bidding in GAM and DFP and to prohibit AdX or GAM from returning bids through header bidding, Google's overall response to header bidding, the impact of header bidding on Publisher revenues, comparing revenues between Dynamic Allocation and header bidding, the impact of UPR adoption on header bidding, and the imposition of timeout restrictions in various scenarios.

---

**From:** Zeke DeRose III <Zeke.DeRose@LanierLawFirm.com>
**Date:** Thursday, April 11, 2024 at 6:40 PM
**To:** "Marc B. Collier" <marc.collier@nortonrosefulbright.com>, "Geraldine W. Young" <geraldine.young@nortonrosefulbright.com>, "BAYOUMI, Jeanette" <Jeanette.Bayoumi@freshfields.com>
**Cc:** "SESSIONS, Justina (JKS)" <Justina.Sessions@freshfields.com>, Paul Yetter <pyetter@yettercoleman.com>, "MCCALLUM, Robert" <rob.mccallum@freshfields.com>, "Bracewell, Mollie" <mbracewell@yettercoleman.com>, "MAHR, Eric (EJM)" <Eric.MAHR@freshfields.com>, "Moran, David" <dmoran@jw.com>, "Nilsson, William (DAL)" <wnilsson@jw.com>, Mark Lanier <Mark.Lanier@LanierLawFirm.com>, Ashley Keller <ack@kellerpostman.com>, John McBride

<john.mcbride@nortonrosefulbright.com>, Jonathan Wilkerson <Jonathan.Wilkerson@LanierLawFirm.com>, "Young, Trevor (TX)" <Trevor.Young@oag.texas.gov>, "Peter M. Hillegas" <peter.hillegas@nortonrosefulbright.com>, James Lloyd <James.Lloyd@oag.texas.gov>, Thomas Ray <Thomas.Ray@oag.texas.gov>, "Alex J. Brown" <Alex.Brown@LanierLawFirm.com>, "SALEM, Sara" <Sara.Salem@freshfields.com>, "ELMER, Julie (JSE)" <Julie.Elmer@freshfields.com>, "SONG, Tinny" <Tinny.Song@freshfields.com>, Marisa Madaras <marisa.madaras@nortonrosefulbright.com>, Gabriel Culver <gabriel.culver@nortonrosefulbright.com>
**Subject:** Re: Google AdTech (EDTX): Categories and First Priority of States' 30(b)(6) to Google per Special Master Conference

Special Master,

As a quick update, the Parties are continuing to work together on 30(b)(6) deposition issues and will update the Special Master after tomorrow's follow-up calls and correspondence.

Per the call with the Special Master yesterday, the Parties met and conferred this afternoon regarding 30(b)(6) witnesses and dates related to the Special Master's March 25 Order and Google's letter from yesterday regarding objections and clarification.

The Parties have both agreed to follow-up in writing on specific areas for clarification and speak again tomorrow in an effort to continue making progress.

Zeke

**From:** Zeke DeRose III <Zeke.DeRose@LanierLawFirm.com>
**Date:** Wednesday, April 10, 2024 at 1:36 PM
**To:** "Marc B. Collier" <marc.collier@nortonrosefulbright.com>, "Geraldine W. Young" <geraldine.young@nortonrosefulbright.com>, "BAYOUMI, Jeanette" <Jeanette.Bayoumi@freshfields.com>
**Cc:** "SESSIONS, Justina (JKS)" <Justina.Sessions@freshfields.com>, Paul Yetter <pyetter@yettercoleman.com>, "MCCALLUM, Robert" <rob.mccallum@freshfields.com>, "Bracewell, Mollie" <mbracewell@yettercoleman.com>, "MAHR, Eric (EJM)" <Eric.MAHR@freshfields.com>, "Moran, David" <dmoran@jw.com>, "Nilsson, William (DAL)" <wnilsson@jw.com>, Mark Lanier <Mark.Lanier@LanierLawFirm.com>, Ashley Keller <ack@kellerpostman.com>, John McBride <john.mcbride@nortonrosefulbright.com>, Jonathan Wilkerson <Jonathan.Wilkerson@LanierLawFirm.com>, "Young, Trevor (TX)" <Trevor.Young@oag.texas.gov>, "Peter M. Hillegas" <peter.hillegas@nortonrosefulbright.com>, James Lloyd <James.Lloyd@oag.texas.gov>, Thomas Ray <Thomas.Ray@oag.texas.gov>, "Alex J. Brown" <Alex.Brown@LanierLawFirm.com>, "SALEM, Sara" <Sara.Salem@freshfields.com>, "ELMER, Julie (JSE)" <Julie.Elmer@freshfields.com>, "SONG, Tinny" <Tinny.Song@freshfields.com>, Marisa Madaras <marisa.madaras@nortonrosefulbright.com>, Gabriel Culver <gabriel.culver@nortonrosefulbright.com>
**Subject:** Re: Google AdTech (EDTX): Categories and First Priority of States' 30(b)(6) to Google per Special Master Conference

As a quick follow-up, and to help with some more clarity regarding outstanding issues, the States still need answers on a few additional points in my April 1 email:

- Regarding ▮▮▮▮▮▮▮, whose Rule 30(b)(1) deposition is scheduled for this Friday April 5, the States believe that deposition may last the entire allotted time on the record for his

fact witness deposition, which the States are entitled to take. **For that reason, can you please provide other dates when, and location where, Mr. ▆▆▆▆ can be available for his Rule 30(b)(6) deposition?**

- Regarding your offer "to provide verified written responses in response to Topics 1, 2, 3, 4, 6, and 16" in lieu of a 30(b)(6) deposition (p. 4), the States believe that depositions will be the most efficient and effective manner of discovery because the States are entitled to probe those issues beyond written verified responses and such written responses will only prompt follow-up questions that are better-suited for and would be more efficiently handled in a deposition. The States had previously discussed with Google that the States have already provided, or could provide, Google with written verified responses in response to Google's Rule 30(b)(6) topics. Google had a similar response, that it wanted to probe those responses in a deposition. For that reason, the States have offered to sit for a deposition on Google's Topics 1-3, in addition to other topics, and are not providing any declarations or verified responses in lieu of a deposition. **Please provide us dates for the 30(b)(6) deposition(s) on Topics 1, 2, 3, 4, 6, and 16.**

- Regarding your proposal with respect to Topics 75 and 76—that Google is willing to "agree that the 30(b)(6) testimony of ▆▆▆▆ from the Virginia case can be used as if it were taken in this case" (p. 4)—I do not believe we have Ms. ▆▆'s 30(b)(6) testimony, so the States do not know what she testified to or whether it would satisfy the States' inquiries to which they are entitled. The States thus are not in a position to consider this proposal. **Please send us Ms. ▆▆'s 30(b)(6) testimony for us to consider.  Also, please send us pursuant to the States' RFPs, all 30(b)(6) testimony from the DOJ Virginia case that are relevant to this case.**

---

**From:** Zeke DeRose III <Zeke.DeRose@LanierLawFirm.com>
**Date:** Wednesday, April 10, 2024 at 1:51 AM
**To:** "Marc B. Collier" <marc.collier@nortonrosefulbright.com>, "Geraldine W. Young" <geraldine.young@nortonrosefulbright.com>, "BAYOUMI, Jeanette" <Jeanette.Bayoumi@freshfields.com>
**Cc:** "SESSIONS, Justina (JKS)" <Justina.Sessions@freshfields.com>, Paul Yetter <pyetter@yettercoleman.com>, "MCCALLUM, Robert" <rob.mccallum@freshfields.com>, "Bracewell, Mollie" <mbracewell@yettercoleman.com>, "MAHR, Eric (EJM)" <Eric.MAHR@freshfields.com>, "Moran, David" <dmoran@jw.com>, "Nilsson, William (DAL)" <wnilsson@jw.com>, Mark Lanier <Mark.Lanier@LanierLawFirm.com>, Ashley Keller <ack@kellerpostman.com>, John McBride <john.mcbride@nortonrosefulbright.com>, Jonathan Wilkerson <Jonathan.Wilkerson@LanierLawFirm.com>, "Young, Trevor (TX)" <Trevor.Young@oag.texas.gov>, "Peter M. Hillegas" <peter.hillegas@nortonrosefulbright.com>, James Lloyd <James.Lloyd@oag.texas.gov>, Thomas Ray <Thomas.Ray@oag.texas.gov>, "Alex J. Brown" <Alex.Brown@LanierLawFirm.com>, "SALEM, Sara" <Sara.Salem@freshfields.com>, "ELMER, Julie (JSE)" <Julie.Elmer@freshfields.com>, "SONG, Tinny" <Tinny.Song@freshfields.com>, Marisa Madaras <marisa.madaras@nortonrosefulbright.com>, Gabriel Culver <gabriel.culver@nortonrosefulbright.com>
**Subject:** Re: Google AdTech (EDTX): Categories and First Priority of States' 30(b)(6) to Google per Special Master Conference

Counsel,

There were 72 days left in fact discovery when the States served 30(b)(6) deposition notices on Google. There are now 23 days left.

While we very much appreciate the witnesses and dates Google provided on March 29th, we still do not have witnesses or dates on the below listed topics that were identified as outstanding in my April 1 email below.

After seeking assistance from the Special Master to promptly schedule the 30(b)(6) depositions served on Google on February 21st, the Special Master Ordered that "no later than March 29, 2024, [Google] provide dates to the States on which they will provide Rule 30(b)(6) deponents on the grouped topics" (Dkt. #291, #293 p. 6).

The parties have notified Special Master Moran that they may need his assistance on Wednesday afternoon related to the Publisher Contract Information for Friday's 30(b)(6) deposition. **Accordingly, please provide us dates and witnesses for the below topics not already addressed by 3pm CT today (Wednesday, April 10) so we may raise any outstanding issues from the Special Master's March 25, 2024 Order.**

**_[Excerpt from April 1 Email Below:]_**

Your letter does not address a number of the topics in the States' 30(b)(6) notice to Google, including but not limited to the following. **Please let us know what Google's position is as to these and other omitted topics, including whether Google is refusing to produce a witness to testify on these and the other omitted topics, so that we may raise the issue with the Special Master.**

- o Topics 17-19 (on source code and chats),
- o Topic 22 (integration with third party systems),
- o Topics 29-30 (persons knowledgeable about Ad Tech products and auctions),
- o Topic 32 (data and information Google makes available to advertisers and publishers),
- o Topic 36 (deprecation of third-party cookies and implementation of FLEDGE, Privacy Sandbox, and Protected Audience API)
- o Topics 40-42, 44, 51-52 (certain statements or disclosures made or not made to publishers, advertisers, third parties, or the public)
- o Topic 45 (number and identity of publishers and advertisers that received certain disclosures)
- o Topic 55 (complaints from publishers, advertisers and other third parties regarding fairness or transparency)
- o Topic 65 (factual bases of Google's defenses)
- o Topic 74 (plans, analyses and reports related to Ad Tech products and auctions)
- o Topic 83 (The effects of each Ad Tech Auction Mechanic on Google's fees, revenue share, margins, and take-rates)
- o Topics 85-87, 90 (Google's margins, take-rates, fees, and revenue paid by advertisers and received by publishers)
- o Topic 104(c), (d), (e), (f), (g), (i), (j), (k), (m), (n) (q) (changes, limitations, impacts, latency studies, analysis of flow of queries, contracts, decisions, and efforts related to header bidding, and groups or teams studying header bidding)

    o Topics 105-106 (source code, algorithms, and database configurations related to Ad Tech Productions, Ad Tech auctions, and Ad Requests)

    o After 2020 for "The operation, design, and expected benefits of Dynamic Allocation, Enhanced Dynamic Allocation, Reserve Price Optimization, Dynamic Revenue Share, Unified Pricing Rules, Open Bidding, and the material features of the Google AdX auction as relevant to Plaintiffs' Fourth Amended Complaint, (Topics 11, 14, 20, 21, 23, 24, 25, 26, 28, 31, 34, 43, 46, 47, 49, 50, 53, 56, 63, 64, 66, 78, 79, 80, 81, 88, 89, 91, 92, 93, 94, 98, 100, 102, 104(a), (b), (h) (l), (o), (p), 107)."

       ▪ Mr. ███ is only designated in your letter to testify regarding these topics "from 2012 – 2020"

---

**From:** "Marc B. Collier" <marc.collier@nortonrosefulbright.com>
**Date:** Tuesday, April 9, 2024 at 7:44 PM
**To:** "Geraldine W. Young" <geraldine.young@nortonrosefulbright.com>, "BAYOUMI, Jeanette" <Jeanette.Bayoumi@freshfields.com>, Zeke DeRose III <Zeke.DeRose@LanierLawFirm.com>
**Cc:** "SESSIONS, Justina (JKS)" <Justina.Sessions@freshfields.com>, Paul Yetter <pyetter@yettercoleman.com>, "MCCALLUM, Robert" <rob.mccallum@freshfields.com>, "Bracewell, Mollie" <mbracewell@yettercoleman.com>, "MAHR, Eric (EJM)" <Eric.MAHR@freshfields.com>, "Moran, David" <dmoran@jw.com>, "Nilsson, William (DAL)" <wnilsson@jw.com>, Mark Lanier <Mark.Lanier@LanierLawFirm.com>, Ashley Keller <ack@kellerpostman.com>, John McBride <john.mcbride@nortonrosefulbright.com>, Jonathan Wilkerson <Jonathan.Wilkerson@LanierLawFirm.com>, "Young, Trevor (TX)" <Trevor.Young@oag.texas.gov>, "Peter M. Hillegas" <peter.hillegas@nortonrosefulbright.com>, James Lloyd <James.Lloyd@oag.texas.gov>, Thomas Ray <Thomas.Ray@oag.texas.gov>, "Alex J. Brown" <Alex.Brown@LanierLawFirm.com>, "SALEM, Sara" <Sara.Salem@freshfields.com>, "ELMER, Julie (JSE)" <Julie.Elmer@freshfields.com>, "SONG, Tinny" <Tinny.Song@freshfields.com>, Marisa Madaras <marisa.madaras@nortonrosefulbright.com>, Gabriel Culver <gabriel.culver@nortonrosefulbright.com>
**Subject:** Re: Google AdTech (EDTX): Categories and First Priority of States' 30(b)(6) to Google per Special Master Conference

Additionally, Plaintiffs will present the State of Texas 30b witness on the previously mentioned April 17, 2024 date at the NRF Austin offices at 9am CT.

Thank you, Marc

Get Outlook for iOS

---

**From:** Geraldine W. Young <geraldine.young@nortonrosefulbright.com>
**Sent:** Tuesday, April 9, 2024 7:32 PM
**To:** BAYOUMI, Jeanette <Jeanette.Bayoumi@freshfields.com>; Zeke DeRose III <zeke.derose@lanierlawfirm.com>
**Cc:** SESSIONS, Justina (JKS) <Justina.Sessions@freshfields.com>; Paul Yetter <pyetter@yettercoleman.com>; MCCALLUM, Robert <rob.mccallum@freshfields.com>; Bracewell, Mollie <mbracewell@yettercoleman.com>; MAHR, Eric (EJM) <Eric.MAHR@freshfields.com>; Moran, David <dmoran@jw.com>; Nilsson, William (DAL) <wnilsson@jw.com>; Mark Lanier <Mark.Lanier@LanierLawFirm.com>; Ashley Keller <ack@kellerpostman.com>; Marc B. Collier <marc.collier@nortonrosefulbright.com>; John McBride <john.mcbride@nortonrosefulbright.com>; Jonathan Wilkerson <Jonathan.Wilkerson@LanierLawFirm.com>; Young, Trevor (TX) <Trevor.Young@oag.texas.gov>; Peter M. Hillegas <peter.hillegas@nortonrosefulbright.com>; James Lloyd <James.Lloyd@oag.texas.gov>; Thomas Ray <Thomas.Ray@oag.texas.gov>; Alex J. Brown <Alex.Brown@LanierLawFirm.com>; SALEM, Sara

<Sara.Salem@freshfields.com>; ELMER, Julie (JSE) <Julie.Elmer@freshfields.com>; SONG, Tinny
<Tinny.Song@freshfields.com>; Marisa Madaras <marisa.madaras@nortonrosefulbright.com>
**Subject:** Re: Google AdTech (EDTX): Categories and First Priority of States' 30(b)(6) to Google per Special Master
Conference

Plaintiffs confirm we can start at the witness's preferred time.

We will use the referenced platform for exhibits for all remote depositions that Plaintiffs take in the case, and I believe
the court reporter has already directly provided Google's counsel with those instructions for the ▮▮▮ deposition last
week. It would be the same for all such depositions.  If you have further questions, you should reach out to the court
reporter.

Thanks, Geraldine

---

**From:** BAYOUMI, Jeanette <Jeanette.Bayoumi@freshfields.com>
**Sent:** Tuesday, April 9, 2024 1:03 PM
**To:** Zeke DeRose III <zeke.derose@lanierlawfirm.com>
**Cc:** SESSIONS, Justina (JKS) <Justina.Sessions@freshfields.com>; Paul Yetter <pyetter@yettercoleman.com>;
MCCALLUM, Robert <rob.mccallum@freshfields.com>; Bracewell, Mollie <mbracewell@yettercoleman.com>; MAHR,
Eric (EJM) <Eric.MAHR@freshfields.com>; Moran, David <dmoran@jw.com>; Nilsson, William (DAL)
<wnilsson@jw.com>; Mark Lanier <Mark.Lanier@LanierLawFirm.com>; Ashley Keller <ack@kellerpostman.com>; Marc
B. Collier <marc.collier@nortonrosefulbright.com>; John McBride <john.mcbride@nortonrosefulbright.com>; Jonathan
Wilkerson <Jonathan.Wilkerson@LanierLawFirm.com>; Geraldine W. Young
<geraldine.young@nortonrosefulbright.com>; Young, Trevor (TX) <Trevor.Young@oag.texas.gov>; Peter M. Hillegas
<peter.hillegas@nortonrosefulbright.com>; James Lloyd <James.Lloyd@oag.texas.gov>; Thomas Ray
<Thomas.Ray@oag.texas.gov>; Alex J. Brown <Alex.Brown@LanierLawFirm.com>; SALEM, Sara
<Sara.Salem@freshfields.com>; ELMER, Julie (JSE) <Julie.Elmer@freshfields.com>; SONG, Tinny
<Tinny.Song@freshfields.com>
**Subject:** RE: Google AdTech (EDTX): Categories and First Priority of States' 30(b)(6) to Google per Special Master
Conference

**[External Email – Use Caution]**

Zeke,

With regard to ▮▮▮▮▮'s deposition taking place this Friday, April 12, we can confirm that it will be remote. We would
like for the deposition to start at 8:30am ET as Ms. ▮▮▮ has a hard stop at 5:30pm ET. Please confirm that State
Plaintiffs will be able to start at this time.

Additionally, please confirm whether Plaintiffs will be using Veritext's Golkow Zoom platform to conduct the remote
deposition and provide instructions for connecting and using exhibits on that platform by EOD tomorrow.

Thanks,
Jeanette

**Jeanette Bayoumi**
Senior Associate
she/her/hers

**Freshfields Bruckhaus Deringer US LLP**
3 World Trade Center
175 Greenwich Street

New York, NY 10007
**T** +1 212 277 4043 | **M** +1 646 284 7200
Jeanette.Bayoumi@freshfields.com

---

**From:** Zeke DeRose III <Zeke.DeRose@LanierLawFirm.com>
**Sent:** Tuesday, April 9, 2024 1:13 AM
**To:** SESSIONS, Justina (JKS) <Justina.Sessions@freshfields.com>; Paul Yetter <pyetter@yettercoleman.com>; MCCALLUM, Robert <rob.mccallum@freshfields.com>; Bracewell, Mollie <mbracewell@yettercoleman.com>; MAHR, Eric (EJM) <Eric.MAHR@freshfields.com>
**Cc:** Moran, David <dmoran@jw.com>; Nilsson, William (DAL) <wnilsson@jw.com>; Mark Lanier <Mark.Lanier@LanierLawFirm.com>; Ashley Keller <ack@kellerpostman.com>; Marc B. Collier <marc.collier@nortonrosefulbright.com>; John McBride <john.mcbride@nortonrosefulbright.com>; Jonathan Wilkerson <Jonathan.Wilkerson@LanierLawFirm.com>; Geraldine W. Young <geraldine.young@nortonrosefulbright.com>; Young, Trevor (TX) <Trevor.Young@oag.texas.gov>; Peter M. Hillegas <peter.hillegas@nortonrosefulbright.com>; James Lloyd <James.Lloyd@oag.texas.gov>; Thomas Ray <Thomas.Ray@oag.texas.gov>; Alex J. Brown <Alex.Brown@LanierLawFirm.com>
**Subject:** Re: Google AdTech (EDTX): Categories and First Priority of States' 30(b)(6) to Google per Special Master Conference

Justina,

Thank you for providing the locations of the 30(b)(6)s that have been confirmed.  Can you please also provide us the start times, so that we can finalize arrangements for those depositions?

For the upcoming 30(b)(6) deposition of ████████ on April 12, the States will take that deposition remotely, but reserve the right to take others in person and will follow up soon to confirm whether the below referenced depositions will be in person or remote.

As you acknowledge below, the States are also still waiting to hear back from Google on the date for Mr. ████'s 30(b)(6) and on designated witnesses and dates for the still outstanding multiple topics.

Zeke

---

**From:** "SESSIONS, Justina (JKS)" <Justina.Sessions@freshfields.com>
**Date:** Thursday, April 4, 2024 at 6:30 AM
**To:** Zeke DeRose III <Zeke.DeRose@LanierLawFirm.com>, Paul Yetter <pyetter@yettercoleman.com>, "MCCALLUM, Robert" <rob.mccallum@freshfields.com>, "Bracewell, Mollie" <mbracewell@yettercoleman.com>, "MAHR, Eric (EJM)" <Eric.MAHR@freshfields.com>
**Cc:** "Moran, David" <dmoran@jw.com>, "Nilsson, William (DAL)" <wnilsson@jw.com>, Mark Lanier <Mark.Lanier@LanierLawFirm.com>, Ashley Keller <ack@kellerpostman.com>, "Marc B. Collier" <marc.collier@nortonrosefulbright.com>, John McBride <john.mcbride@nortonrosefulbright.com>, Jonathan Wilkerson <Jonathan.Wilkerson@LanierLawFirm.com>, "Geraldine W. Young" <geraldine.young@nortonrosefulbright.com>, "Young, Trevor (TX)" <Trevor.Young@oag.texas.gov>, "Peter M. Hillegas" <peter.hillegas@nortonrosefulbright.com>, James Lloyd <James.Lloyd@oag.texas.gov>, Thomas Ray <Thomas.Ray@oag.texas.gov>, "Alex J. Brown" <Alex.Brown@LanierLawFirm.com>
**Subject:** RE: Google AdTech (EDTX): Categories and First Priority of States' 30(b)(6) to Google per Special Master Conference

Dear Zeke,

I write in response to your email from Monday evening regarding the States' 30(b)(6) notice.  I've provided answers to some of your questions below, and we will follow up with additional designations and responses to the topics you asked about.

████████.   We had offered April 5 for the 30(b)(6) portion of Mr. █████' deposition but you declined that date because you would like to spend seven hours questioning Mr. ██████ as a 30(b)(1) witness.  We are looking for alternative dates for Mr. ██████ 30(b)(6) deposition and will provide them shortly.

Deposition locations.  Thank you for confirming the offered dates.  With respect to locations, we suggest that Plaintiffs consider conducting 30(b)(6) depositions remotely, as it seems quite inefficient to force the time and expense of travel for what, in at least some cases, should be short and straightforward 30(b)(6) depositions.  Nonetheless, the witnesses will be available at the following locations:

████████: Freshfields Redwood City, CA
██████: Freshfields New York
███████: Freshfields Redwood City, CA
███████: Freshfields Redwood City, CA
███████: Freshfields New York
██████ (2nd depo):  Freshfields New York

Sell-side designee.  Our potential designee for sell-side market share calculations (if any), competitive intelligence or company tracking of sell-side ad tech companies or products, and pricing of sell-side products has been out of the office this past week and so we have been unable to discuss availability.  We expect to be able to provide availability by early next week.

Additional topics.  We will respond to all of the topics you list below but in the meantime provide some additional designations here:

Topic 32:  Google designates ████████ to testify regarding information that Google makes available to advertiser customers using Display and Video 360 and/or Google Ads.  Google also agrees to designate a witness to testify regarding the information that Google makes available to publisher customers using Google Ad Manager.  This will be the same sell-side designee as discussed above.

Topics 85-87.  Google designates ████████ to testify regarding the pricing of Display and Video 360 and Google Ads.  Google will designate a witness to testify regarding the pricing of Google Ad Manager (including DFP and AdX).  This will be the same sell-side designee as discussed above.

Topic 90:  Google designates ████████ to testify regarding the "decision to charge a fee to Ad Exchanges who participated in Open Bidding or Exchange Bidding."

---

**From:** SESSIONS, Justina (JKS)
**Sent:** Wednesday, April 3, 2024 6:21 AM
**To:** Zeke DeRose III <Zeke.DeRose@LanierLawFirm.com>; Paul Yetter <pyetter@yettercoleman.com>; MCCALLUM, Robert <rob.mccallum@freshfields.com>; Bracewell, Mollie <mbracewell@yettercoleman.com>; MAHR, Eric (EJM) <Eric.MAHR@freshfields.com>
**Cc:** Moran, David <dmoran@jw.com>; Nilsson, William (DAL) <wnilsson@jw.com>; Mark Lanier <Mark.Lanier@LanierLawFirm.com>; Ashley Keller <ack@kellerpostman.com>; Marc B. Collier <marc.collier@nortonrosefulbright.com>; John McBride <john.mcbride@nortonrosefulbright.com>; Jonathan Wilkerson <Jonathan.Wilkerson@LanierLawFirm.com>; Geraldine W. Young <geraldine.young@nortonrosefulbright.com>; Young, Trevor (TX) <Trevor.Young@oag.texas.gov>; Peter M. Hillegas <peter.hillegas@nortonrosefulbright.com>; James Lloyd <James.Lloyd@oag.texas.gov>; Thomas Ray <Thomas.Ray@oag.texas.gov>; Alex J. Brown <Alex.Brown@LanierLawFirm.com>
**Subject:** RE: Google AdTech (EDTX): Categories and First Priority of States' 30(b)(6) to Google per Special Master Conference

Dear Zeke –
This is received and we are working on a response.  We will provide an update later today.

- Tina

**From:** Zeke DeRose III <Zeke.DeRose@LanierLawFirm.com>
**Sent:** Monday, April 1, 2024 7:16 PM
**To:** SESSIONS, Justina (JKS) <Justina.Sessions@freshfields.com>; Paul Yetter <pyetter@yettercoleman.com>; MCCALLUM, Robert <rob.mccallum@freshfields.com>; Bracewell, Mollie <mbracewell@yettercoleman.com>; MAHR, Eric (EJM) <Eric.MAHR@freshfields.com>
**Cc:** Moran, David <dmoran@jw.com>; Nilsson, William (DAL) <wnilsson@jw.com>; Mark Lanier <Mark.Lanier@LanierLawFirm.com>; Ashley Keller <ack@kellerpostman.com>; Marc B. Collier <marc.collier@nortonrosefulbright.com>; John McBride <john.mcbride@nortonrosefulbright.com>; Jonathan Wilkerson <Jonathan.Wilkerson@LanierLawFirm.com>; Geraldine W. Young <geraldine.young@nortonrosefulbright.com>; Young, Trevor (TX) <Trevor.Young@oag.texas.gov>; Peter M. Hillegas <peter.hillegas@nortonrosefulbright.com>; James Lloyd <James.Lloyd@oag.texas.gov>; Thomas Ray <Thomas.Ray@oag.texas.gov>; Alex J. Brown <Alex.Brown@LanierLawFirm.com>
**Subject:** Re: Google AdTech (EDTX): Categories and First Priority of States' 30(b)(6) to Google per Special Master Conference

Hi Justina:

Thank you for sending your letter Friday night regarding witnesses and topics for the States' Rule 30(b)(6) notice to Google.  Please see below for our initial questions and comments that will help us confirm and schedule these depositions quickly:

Regarding ██████████, whose Rule 30(b)(1) deposition is scheduled for this Friday April 5, the States believe that deposition may last the entire allotted time on the record for his fact witness deposition, which the States are entitled to take. **For that reason, can you please provide other dates when, and location where, Mr. ██████ can be available for his Rule 30(b)(6) deposition?**

Regarding the other Rule 30(b)(6) witnesses in your letter, the States accept the dates offered, subject to further conference and discussion on the issues you raise with respect to each witness and the topics he/she will testify on.  **Please let us know the location of these depositions on those confirmed dates, so that we can make the necessary arrangements.**

Regarding your offer "to provide verified written responses in response to Topics 1, 2, 3, 4, 6, and 16" in lieu of a 30(b)(6) deposition (p. 4), the States believe that depositions will be the most efficient and effective manner of discovery because the States are entitled to probe those issues beyond written verified responses and such written responses will only prompt follow-up questions that are better-suited for and would be more efficiently handled in a deposition. The States had previously discussed with Google that the States have already provided, or could provide, Google with written verified responses in response to Google's Rule 30(b)(6) topics. Google had a similar response, that it wanted to probe those responses in a deposition. For that reason, the States have offered to sit for a deposition on Google's Topics 1-3, in addition to other topics, and are not providing any declarations or verified responses in lieu of a deposition. **Please provide us dates for the 30(b)(6) deposition(s) on Topics 1, 2, 3, 4, 6, and 16.**

Regarding your proposal with respect to Topics 75 and 76—that Google is willing to "agree that the 30(b)(6) testimony of ██████ from the Virginia case can be used as if it were

taken in this case" (p. 4)—I do not believe we have Ms. ███'s 30(b)(6) testimony, so the States do not know what she testified to or whether it would satisfy the States' inquiries to which they are entitled.  The States thus are not in a position to consider this proposal.  **Please send us Ms. ███'s 30(b)(6) testimony for us to consider.  Also, please send us pursuant to the States' RFPs, all 30(b)(6) testimony from the DOJ Virginia case that are relevant to this case.**

Your letter does not address a number of the topics in the States' 30(b)(6) notice to Google, including but not limited to the following. **Please let us know what Google's position is as to these and other omitted topics, including whether Google is refusing to produce a witness to testify on these and the other omitted topics, so that we may raise the issue with the Special Master.**

> Topics 17-19 (on source code and chats),
> Topic 22 (integration with third party systems),
> Topics 29-30 (persons knowledgeable about Ad Tech products and auctions),
> Topic 32 (data and information Google makes available to advertisers and publishers),
> Topic 36 (deprecation of third-party cookies and implementation of FLEDGE, Privacy Sandbox, and Protected Audience API)
> Topics 40-42, 44, 51-52 (certain statements or disclosures made or not made to publishers, advertisers, third parties, or the public)
> Topic 45 (number and identity of publishers and advertisers that received certain disclosures)
> Topic 55 (complaints from publishers, advertisers and other third parties regarding fairness or transparency)
> Topic 65 (factual bases of Google's defenses)
> Topic 74 (plans, analyses and reports related to Ad Tech products and auctions)
> Topic 83 (The effects of each Ad Tech Auction Mechanic on Google's fees, revenue share, margins, and take-rates)
> Topics 85-87, 90 (Google's margins, take-rates, fees, and revenue paid by advertisers and received by publishers)
> Topic 104(c), (d), (e), (f), (g), (i), (j), (k), (m), (n) (q) (changes, limitations, impacts, latency studies, analysis of flow of queries, contracts, decisions, and efforts related to header bidding, and groups or teams studying header bidding)
> Topics 105-106 (source code, algorithms, and database configurations related to Ad Tech Productions, Ad Tech auctions, and Ad Requests)
> After 2020 for "The operation, design, and expected benefits of Dynamic Allocation, Enhanced Dynamic Allocation, Reserve Price Optimization, Dynamic Revenue Share, Unified Pricing Rules, Open Bidding, and the material features of the Google AdX auction as relevant to Plaintiffs' Fourth Amended Complaint, (Topics 11, 14, 20, 21, 23, 24, 25, 26, 28, 31, 34, 43, 46, 47, 49, 50, 53, 56, 63, 64, 66, 78, 79, 80, 81, 88, 89, 91, 92, 93, 94, 98, 100, 102, 104(a), (b), (h) (l), (o), (p), 107)."
> > Mr. ███ is only designated in your letter to testify regarding these topics "from 2012 – 2020"

We will follow up regarding any other witness-specific or topic-specific issues, raised by your letter.

Again, thank you for the letter, and we look forward to receiving your responses to the above questions.

Zeke

---

**From:** "SESSIONS, Justina (JKS)" <Justina.Sessions@freshfields.com>
**Date:** Friday, March 29, 2024 at 10:09 PM
**To:** Zeke DeRose III <Zeke.DeRose@LanierLawFirm.com>, Paul Yetter <pyetter@yettercoleman.com>, "MCCALLUM, Robert" <rob.mccallum@freshfields.com>, "Bracewell, Mollie" <mbracewell@yettercoleman.com>, "MAHR, Eric (EJM)" <Eric.MAHR@freshfields.com>
**Cc:** "Moran, David" <dmoran@jw.com>, "Nilsson, William (DAL)" <wnilsson@jw.com>, Mark Lanier <Mark.Lanier@LanierLawFirm.com>, Ashley Keller <ack@kellerpostman.com>, "Marc B. Collier" <marc.collier@nortonrosefulbright.com>, John McBride <john.mcbride@nortonrosefulbright.com>, Jonathan Wilkerson <Jonathan.Wilkerson@LanierLawFirm.com>, "Geraldine W. Young" <geraldine.young@nortonrosefulbright.com>, "Young, Trevor (TX)" <Trevor.Young@oag.texas.gov>, "Peter M. Hillegas" <peter.hillegas@nortonrosefulbright.com>, James Lloyd <James.Lloyd@oag.texas.gov>, Thomas Ray <Thomas.Ray@oag.texas.gov>, "Alex J. Brown" <Alex.Brown@LanierLawFirm.com>
**Subject:** RE: Google AdTech (EDTX): Categories and First Priority of States' 30(b)(6) to Google per Special Master Conference

Dear Zeke,
Please see attached correspondence with 30(b)(6) designations.

Regards,
Tina

---

**From:** Zeke DeRose III <Zeke.DeRose@LanierLawFirm.com>
**Sent:** Tuesday, March 26, 2024 10:55 AM
**To:** SESSIONS, Justina (JKS) <Justina.Sessions@freshfields.com>; Paul Yetter <pyetter@yettercoleman.com>; MCCALLUM, Robert <rob.mccallum@freshfields.com>; Bracewell, Mollie <mbracewell@yettercoleman.com>; MAHR, Eric (EJM) <Eric.MAHR@freshfields.com>
**Cc:** Moran, David <dmoran@jw.com>; Nilsson, William (DAL) <wnilsson@jw.com>; Mark Lanier <Mark.Lanier@LanierLawFirm.com>; Ashley Keller <ack@kellerpostman.com>; Marc B. Collier <marc.collier@nortonrosefulbright.com>; John McBride <john.mcbride@nortonrosefulbright.com>; Jonathan Wilkerson <Jonathan.Wilkerson@LanierLawFirm.com>; Geraldine W. Young <geraldine.young@nortonrosefulbright.com>; Young, Trevor (TX) <Trevor.Young@oag.texas.gov>; Peter M. Hillegas <peter.hillegas@nortonrosefulbright.com>; James Lloyd <James.Lloyd@oag.texas.gov>; Thomas Ray <Thomas.Ray@oag.texas.gov>; Alex J. Brown <Alex.Brown@LanierLawFirm.com>
**Subject:** Re: Google AdTech (EDTX): Categories and First Priority of States' 30(b)(6) to Google per Special Master Conference

Counsel,

We write to follow up on our email from Friday, March 22, regarding prioritization of the States' Rule 30(b)(6) topics to Google.  Provided below is our further prioritized list of topic groupings.  As discussed previously and in our March 22 email, the general and high-level topics (the first 3 groupings) remain the States' priorities, followed by the UPR and DFP-AdX Tying topic groupings identified in the March 22 email.  We have now prioritized and organized the remaining topic groupings below. We acknowledge that the Special Master's Order (Dkt #291, #293) notes 10 prioritized deposition buckets into which the 107 noticed topics should be grouped. For ease of identifying deponents we have separated the topics into 13 buckets, but understand that Google may want to produce the same witness for multiple topics.

1. GENERAL DISCOVERY (Topics 1-20)
   - Obligations & Communications (Topics 1-4, 18-20)
   - Technical (Topics 6-15, 17)
   - Formats/Links (Topics 5, 16)
2. HIGH LEVEL TECH SPECIFIC TOPICS (Topics 21-36)
3. COMMUNICATIONS, REPRESENTATIONS, AND PURPORTED OMISSIONS (Topics 37-65) (pending DTPA document production)
4. UNIFIED PRICING RULES ("UPR") (Topic 100)
5. DFP-AdX TYING CLAIMS (Topics 66-73)
6. PRIVACY SANDBOX (Topic 36)
7. AD TECH ECONOMICS & IMPACT (Topics 74-97)
8. RESERVE PRICE OPTIMIZATION ("RPO") (Topic 101)
9. BERNANKE (Topic 99)
10. DYNAMIC REVENUE SHARE ("DRS") (Topic 98)
11. DYNAMIC ALLOCATION / ENHANCED DYNAMIC ALLOCATION (Topic 102)
12. HEADER BIDDING (Topics 96, 103, 104)
13. SOURCE CODE (Topic 105-107)

Also, we write to follow up on our meet and confer on Monday regarding Google's questions about the UPR and DFP-AdX Tying topic groupings:

- UNIFIED PRICING RULES ("UPR") (Topic 100)
  - Topic 100(c) ("internal tests, experiments, simulations, or studies, which measure, forecast, predict, study, or research the impact that Your decision to move to a Unified Auction or adopt [Unified/Uniform] Pricing Rules would have or has had on the adoption of Header Bidding"): this subtopic covers Google's general approach to analyzing these issues, as well as specific tests, experiments, simulations, or studies that have been produced by Google.
  - Topic 100(d) ("the number of impressions (as an absolute number and as a percentage of the total number of impressions available in the Unified Auction) that Google Ads or DV360 won slightly above the floor price (where "slightly above" shall mean that the difference between the price that Google Ads or DV360 paid and the floor price or next highest bid does not exceed $0.10 CPM)"):  you commented that this appears like a document request and not a 30(b)(6) topic.  While this data is also responsive to the States' other discovery requests, the States have not received it.  If the data can be produced as documents, then the Google witness should come to the deposition with that data and the States can ask questions about it.  The States believe they are, in any event, entitled to ask questions about this relevant topic.
  - Topic 100(e) ("the impact of UPR separate from the move to the first price auction on Your Metrics, Publishers' and/or Advertisers' Metrics, and Your competitors' Metrics"):  This subtopic covers analysis and data on this issue in Google's possession.
- DFP-AdX TYING CLAIMS (Topics 66-73)
  - Topics 66-70:  We have reviewed these topics and believe they are reasonably specific and targeted, based on the States' tying claims and allegations, so are unclear what further clarification can be provided.  We are of course willing to further meet and confer on these more specifically if needed.
  - Topics 71-73:  These topics cover testimony generally on the language of form contracts and Google's contracting process and related communications with publishers, and the number of publishers with which Google had such contracts.
    - Also related to these topics are Texas's Second Set of Requests for Production—served on Google on February 9, 2024 and which requested GAM (or AdX-DFP paired), Yavin, and AdX Direct contracts—and the identity of publishers with those contracts—to which Google responded on March 11, 2024, not producing any documents but generally offering to meet and confer.  The Parties met and conferred on those RFPs

and Google's responses on March 19, where Google stated it would take back and consider either producing (a) form contracts and lists of publishers with each form contract or (b) all relevant, responsive publisher contracts, depending on how Google stores and how quickly Google can collect and produce either form of these documents.  The States emphasized they were willing to take either type of production, based on the most expeditious form that can be produced.  The States believe these discrete categories of documents, in either form, should be able to be produced quickly but have not heard from Google since the March 19 meet and confer.  The States request an immediate response from Google as to these RFPs and documents and that these productions occur before the 30(b)(6) deposition on these topics as they are related and would make the deposition more efficient and productive.

As discussed, we can be available to further meet and confer later today on the UPR and Tying topics.  We can also continue to discuss after receiving Google's dates for its Rule 30(b)(6) depositions on March 29, per the Special Master's 3/25 Order.

Zeke

---

**From:** "SESSIONS, Justina (JKS)" <Justina.Sessions@freshfields.com>
**Date:** Monday, March 25, 2024 at 10:09 AM
**To:** Zeke DeRose III <Zeke.DeRose@LanierLawFirm.com>, Paul Yetter <pyetter@yettercoleman.com>, "MCCALLUM, Robert" <rob.mccallum@freshfields.com>, "Bracewell, Mollie" <mbracewell@yettercoleman.com>, "MAHR, Eric (EJM)" <Eric.MAHR@freshfields.com>
**Cc:** "Moran, David" <dmoran@jw.com>, "Nilsson, William (DAL)" <wnilsson@jw.com>, Mark Lanier <Mark.Lanier@LanierLawFirm.com>, Ashley Keller <ack@kellerpostman.com>, "Marc B. Collier" <marc.collier@nortonrosefulbright.com>, John McBride <john.mcbride@nortonrosefulbright.com>, Jonathan Wilkerson <Jonathan.Wilkerson@LanierLawFirm.com>, "Geraldine W. Young" <geraldine.young@nortonrosefulbright.com>, "Young, Trevor (TX)" <Trevor.Young@oag.texas.gov>, "Peter M. Hillegas" <peter.hillegas@nortonrosefulbright.com>, James Lloyd <James.Lloyd@oag.texas.gov>, Thomas Ray <Thomas.Ray@oag.texas.gov>, "Alex J. Brown" <Alex.Brown@LanierLawFirm.com>
**Subject:** Re: Google AdTech (EDTX): Categories and First Priority of States' 30(b)(6) to Google per Special Master Conference

2 CT today works, thank you.

- Tina

---

**From:** Zeke DeRose III <Zeke.DeRose@LanierLawFirm.com>
**Sent:** Monday, March 25, 2024 7:50:30 AM
**To:** SESSIONS, Justina (JKS) <Justina.Sessions@freshfields.com>; Paul Yetter <pyetter@yettercoleman.com>; MCCALLUM, Robert <rob.mccallum@freshfields.com>; Bracewell, Mollie <mbracewell@yettercoleman.com>; MAHR, Eric (EJM) <Eric.MAHR@freshfields.com>
**Cc:** Moran, David <dmoran@jw.com>; Nilsson, William (DAL) <wnilsson@jw.com>; Mark Lanier <Mark.Lanier@LanierLawFirm.com>; Ashley Keller <ack@kellerpostman.com>; Marc B. Collier <marc.collier@nortonrosefulbright.com>; John McBride <john.mcbride@nortonrosefulbright.com>; Jonathan Wilkerson <Jonathan.Wilkerson@LanierLawFirm.com>; Geraldine W. Young <geraldine.young@nortonrosefulbright.com>; Young, Trevor (TX) <Trevor.Young@oag.texas.gov>; Peter M. Hillegas <peter.hillegas@nortonrosefulbright.com>; James Lloyd <James.Lloyd@oag.texas.gov>; Thomas Ray <Thomas.Ray@oag.texas.gov>; Alex J. Brown <Alex.Brown@LanierLawFirm.com>

**Subject:** Re: Google AdTech (EDTX): Categories and First Priority of States' 30(b)(6) to Google per Special Master Conference

Hi Justina,

Thank you for your note and I hope you had a good weekend. We can have folks that can be available to understand any specific questions today at 2pm CT. And then plan any additional discussion Tuesday and this week.

Please let us know if that works, and Geraldine will circulate an invite.

Zeke


Zeke DeRose III - Attorney p: 713-659-5200 w: www.LanierLawFirm.com

---

**From:** "SESSIONS, Justina (JKS)" <Justina.Sessions@freshfields.com>
**Date:** Friday, March 22, 2024 at 7:23 PM
**To:** Zeke DeRose III <Zeke.DeRose@LanierLawFirm.com>, Paul Yetter <pyetter@yettercoleman.com>, "MCCALLUM, Robert" <rob.mccallum@freshfields.com>, "Bracewell, Mollie" <mbracewell@yettercoleman.com>, "MAHR, Eric (EJM)" <Eric.MAHR@freshfields.com>
**Cc:** "Moran, David" <dmoran@jw.com>, "Nilsson, William (DAL)" <wnilsson@jw.com>, Mark Lanier <Mark.Lanier@LanierLawFirm.com>, Ashley Keller <ack@kellerpostman.com>, "Marc B. Collier" <marc.collier@nortonrosefulbright.com>, John McBride <john.mcbride@nortonrosefulbright.com>, Jonathan Wilkerson <Jonathan.Wilkerson@LanierLawFirm.com>, "Geraldine W. Young" <geraldine.young@nortonrosefulbright.com>, "Young, Trevor (TX)" <Trevor.Young@oag.texas.gov>, "Peter M. Hillegas" <peter.hillegas@nortonrosefulbright.com>, James Lloyd <James.Lloyd@oag.texas.gov>, Thomas Ray <Thomas.Ray@oag.texas.gov>, "Alex J. Brown" <Alex.Brown@LanierLawFirm.com>
**Subject:** RE: Google AdTech (EDTX): Categories and First Priority of States' 30(b)(6) to Google per Special Master Conference

Dear Zeke,
Thanks for providing these priorities.  We are working to identify witnesses and their availability as soon as possible.

As we do that, it would be helpful to have a conversation Monday about what exactly you have in mind on these topics.  For example, Topics 66-73 encompass at least technical issues (e.g. product design and operation), contracts, communications with publishers, and competitive intelligence.  These may require different witnesses and may require different amounts of preparation time depending on what you are seeking.  For example, it would be helpful to know if you have specific communications with publishers in mind, if you expect a witness to be prepared to testify generally about how Google communicated with publishers on the topic, or something else.  Similarly, Topic 100 has five different subparts including at least one that appears to call for Google to generate bespoke data.

To be clear, we will work on witness availability in the meantime, but getting more clarity will help us determine the right people.

With respect to the "general discovery" topics, we'll also be glad to discuss your reaction to the offer that we made last Monday.

We are available to discuss on Monday at 10-11 CT or any time after 1 (following our meet and confer on your deposition notices of Sergey Brin and Sundar Pichai).

Regards,
Tina

**From:** Zeke DeRose III <Zeke.DeRose@LanierLawFirm.com>
**Sent:** Friday, March 22, 2024 3:00 PM
**To:** Paul Yetter <pyetter@yettercoleman.com>; MCCALLUM, Robert <rob.mccallum@freshfields.com>; Bracewell, Mollie <mbracewell@yettercoleman.com>; MAHR, Eric (EJM) <Eric.MAHR@freshfields.com>; SESSIONS, Justina (JKS) <Justina.Sessions@freshfields.com>
**Cc:** Moran, David <dmoran@jw.com>; Nilsson, William (DAL) <wnilsson@jw.com>; Mark Lanier <Mark.Lanier@LanierLawFirm.com>; Ashley Keller <ack@kellerpostman.com>; Marc B. Collier <marc.collier@nortonrosefulbright.com>; John McBride <john.mcbride@nortonrosefulbright.com>; Jonathan Wilkerson <Jonathan.Wilkerson@LanierLawFirm.com>; Geraldine W. Young <geraldine.young@nortonrosefulbright.com>; Young, Trevor (TX) <Trevor.Young@oag.texas.gov>; Peter M. Hillegas <peter.hillegas@nortonrosefulbright.com>; James Lloyd <James.Lloyd@oag.texas.gov>; Thomas Ray <Thomas.Ray@oag.texas.gov>; Alex J. Brown <Alex.Brown@LanierLawFirm.com>
**Subject:** Google AdTech (EDTX): Categories and First Priority of States' 30(b)(6) to Google per Special Master Conference

Counsel,

In accordance with our discussions yesterday during the Special Master Conference and the Special Master's directive, we have listed out the categories of Topics in the States' 30(b)(6) notice to Google that we served on February 21st , so that we can get the first witness produced immediately.

We were asked to (1) categorize the Topics; and (2) prioritize the Topics/categories identifying which category of Topics should go first.

As discussed, we had already identified the first 20 Topics (categorized as "General Discovery/Custodian/Location of Documents Topics") as our threshold depos and highest priority.

However, during conversations yesterday Mr. Yetter and Ms. Bracewell noted that that although that category was the States' priority, producing a witness(es) on that category would not be the quickest. We agreed to give Google a prioritized category other than "General Discovery." (This is based on Google's position that preparing for the general and high-level topics will be more time-intensive and the that forthcoming DTPA productions will not be made until late April.)

Below, we have broken the Topics into 12 categories (with corresponding Topic numbers).

**We have identified the category of DFP AdX TYING CLAIMS (Topics 66-73) and UPR (Topic 100) as Topics that can and should be scheduled immediately for deposition.**

We will follow up next week with our prioritization of the remaining Topics to help move the process forward while working with Google to set a date for the General Discovery deposition.

1. GENERAL DISCOVERY / CUSTODIAN / LOCATION OF DOCUMENTS TOPICS (Topics 1-20)
2. HIGH LEVEL TECH SPECIFIC TOPICS (Topics 21-36)
3. COMMUNICATIONS, REPRESENTATIONS, AND PURPORTED OMISSIONS (Topics 37-65)
4. DFP-AdX TYING CLAIMS (Topics 66-73)
5. AD TECH ECONOMICS & IMPACT (Topics 74-97)
6. DYNAMIC REVENUE SHARE ("DRS") (Topic 98)

7. BERNANKE (Topic 99)
8. UNIFIED PRICING RULES ("UPR") (Topic 100)
9. RESERVE PRICE OPTIMIZATION ("RPO") (Topic 101)
10. DYNAMIC ALLOCATION / ENHANCED DYNAMIC ALLOCATION (Topic 102)
11. POIROT & ELMO (Topic 103)
12. HEADER BIDDING (Topic 104)
13. SOURCE CODE (Topic 105-107)

Yesterday we discussed the fastest path forward was Google identifying a witness and setting a date for the prioritized category and then working with Google with any follow-up discussions related to the category and corresponding Topics.

Have a great weekend.

Zeke



**Zeke DeRose III**
**Attorney**
p: 713-659-5200
10940 West Sam Houston Pkwy N, Suite 100
Houston • Texas • 77064
www.LanierLawFirm.com

This e-mail is confidential and may be legally privileged. If you have received it in error, you are on notice of its status. Please notify us immediately by reply e-mail and then delete this message from your system. Please do not copy it, use it for any purpose or disclose its contents to any other person; to do so could be a breach of confidentiality. Thank you for your cooperation. Please contact our IT Helpdesk at GlobalITServiceDesk@freshfields.com if you need assistance.

Freshfields Bruckhaus Deringer US LLP has offices in New York, Silicon Valley and Washington, DC. Freshfields Bruckhaus Deringer LLP is a limited liability partnership registered in England and Wales with registered number OC334789, and has offices or associated entities in Austria, Bahrain, Belgium, China, England, France, Germany, Hong Kong, Italy, Japan, the Netherlands, Singapore, Spain, the United Arab Emirates and Vietnam.

Any reference to a partner means a member, or a consultant or employee with equivalent standing and qualifications, of Freshfields Bruckhaus Deringer US LLP, Freshfields Bruckhaus Deringer LLP or any associated firms or entities.

For information about how Freshfields Bruckhaus Deringer processes personal data please refer to this Privacy notice. For further information about Freshfields Bruckhaus Deringer, please refer to our website at www.freshfields.com.

This e-mail is confidential and may be legally privileged. If you have received it in error, you are on notice of its status. Please notify us immediately by reply e-mail and then delete this message from your system. Please do not copy it, use it for any purpose or disclose its contents to any other person; to do so could be a breach of confidentiality. Thank you for your cooperation. Please contact our IT Helpdesk at GlobalITServiceDesk@freshfields.com if you need assistance.

Freshfields Bruckhaus Deringer US LLP has offices in New York, Silicon Valley and Washington, DC. Freshfields Bruckhaus Deringer LLP is a limited liability partnership registered in England and Wales with registered number OC334789, and has offices or associated entities in Austria, Bahrain, Belgium, China, England, France, Germany, Hong Kong, Italy, Japan, the Netherlands, Singapore, Spain, the United Arab Emirates and Vietnam.

Any reference to a partner means a member, or a consultant or employee with equivalent standing and qualifications, of Freshfields Bruckhaus Deringer US LLP, Freshfields Bruckhaus Deringer LLP or any associated firms or entities.

For information about how Freshfields Bruckhaus Deringer processes personal data please refer to this Privacy notice. For further information about Freshfields Bruckhaus Deringer, please refer to our website at www.freshfields.com.

This e-mail is confidential and may be legally privileged. If you have received it in error, you are on notice of its status. Please notify us immediately by reply e-mail and then delete this message from your system. Please do not copy it, use it for any purpose or disclose its contents to any other person; to do so could be a breach of confidentiality. Thank you for your cooperation. Please contact our IT Helpdesk at GlobalITServiceDesk@freshfields.com if you need assistance.

Freshfields Bruckhaus Deringer US LLP has offices in New York, Silicon Valley and Washington, DC. Freshfields Bruckhaus Deringer LLP is a limited liability partnership registered in England and Wales with registered number OC334789, and has offices or associated entities in Austria, Bahrain, Belgium, China, England, France, Germany, Hong Kong, Italy, Japan, the Netherlands, Singapore, Spain, the United Arab Emirates and Vietnam.

Any reference to a partner means a member, or a consultant or employee with equivalent standing and qualifications, of Freshfields Bruckhaus Deringer US LLP, Freshfields Bruckhaus Deringer LLP or any associated firms or entities.

For information about how Freshfields Bruckhaus Deringer processes personal data please refer to this Privacy notice. For further information about Freshfields Bruckhaus Deringer, please refer to our website at www.freshfields.com.

This e-mail is confidential and may be legally privileged. If you have received it in error, you are on notice of its status. Please notify us immediately by reply e-mail and then delete this message from your system. Please do not copy it, use it for any purpose or disclose its contents to any other person; to do so could be a breach of confidentiality. Thank you for your cooperation. Please contact our IT Helpdesk at GlobalITServiceDesk@freshfields.com if you need assistance.

Freshfields Bruckhaus Deringer US LLP has offices in New York, Silicon Valley and Washington, DC. Freshfields Bruckhaus Deringer LLP is a limited liability partnership registered in England and Wales with registered number OC334789, and has offices or associated entities in Austria, Bahrain, Belgium, China, England, France, Germany, Hong Kong, Italy, Japan, the Netherlands, Singapore, Spain, the United Arab Emirates and Vietnam.

Any reference to a partner means a member, or a consultant or employee with equivalent standing and qualifications, of Freshfields Bruckhaus Deringer US LLP, Freshfields Bruckhaus Deringer LLP or any associated firms or entities.

For information about how Freshfields Bruckhaus Deringer processes personal data please refer to this Privacy notice. For further information about Freshfields Bruckhaus Deringer, please refer to our website at www.freshfields.com.

This e-mail is confidential and may be legally privileged. If you have received it in error, you are on notice of its status. Please notify us immediately by reply e-mail and then delete this message from your system. Please do not copy it, use it for any purpose or disclose its contents to any other person; to do so could be a breach of confidentiality. Thank you for your cooperation. Please contact our IT Helpdesk at GlobalITServiceDesk@freshfields.com if you need assistance.

Freshfields Bruckhaus Deringer US LLP has offices in New York, Silicon Valley and Washington, DC. Freshfields Bruckhaus Deringer LLP is a limited liability partnership registered in England and Wales with registered number OC334789, and has offices or associated entities in Austria, Bahrain, Belgium, China, England, France, Germany, Hong Kong, Italy, Japan, the Netherlands, Singapore, Spain, the United Arab Emirates and Vietnam.

Any reference to a partner means a member, or a consultant or employee with equivalent standing and qualifications, of Freshfields Bruckhaus Deringer US LLP, Freshfields Bruckhaus Deringer LLP or any associated firms or entities.

For information about how Freshfields Bruckhaus Deringer processes personal data please refer to this Privacy notice. For further information about Freshfields Bruckhaus Deringer, please refer to our website at www.freshfields.com.

CONFIDENTIALITY NOTICE: This email, including any attachments, is confidential and may be privileged. If you are not the intended recipient please notify the sender immediately, and please delete it; you should not copy it or use it for any

purpose or disclose its contents to any other person. Norton Rose Fulbright entities reserve the right to monitor all email communications through their networks.

Norton Rose Fulbright Australia, Norton Rose Fulbright LLP, Norton Rose Fulbright Canada LLP, Norton Rose Fulbright South Africa Inc and Norton Rose Fulbright US LLP are separate legal entities and all of them are members of Norton Rose Fulbright Verein, a Swiss verein. Norton Rose Fulbright Verein helps coordinate the activities of the members but does not itself provide legal services to clients. Details of each entity, with certain regulatory information, are available at nortonrosefulbright.com.

This e-mail is confidential and may be legally privileged. If you have received it in error, you are on notice of its status. Please notify us immediately by reply e-mail and then delete this message from your system. Please do not copy it, use it for any purpose or disclose its contents to any other person; to do so could be a breach of confidentiality. Thank you for your cooperation. Please contact our IT Helpdesk at GlobalITServiceDesk@freshfields.com if you need assistance.

Freshfields Bruckhaus Deringer US LLP has offices in New York, Silicon Valley and Washington, DC. Freshfields Bruckhaus Deringer LLP is a limited liability partnership registered in England and Wales with registered number OC334789, and has offices or associated entities in Austria, Bahrain, Belgium, China, England, France, Germany, Hong Kong, Italy, Japan, the Netherlands, Singapore, Spain, the United Arab Emirates and Vietnam.

Any reference to a partner means a member, or a consultant or employee with equivalent standing and qualifications, of Freshfields Bruckhaus Deringer US LLP, Freshfields Bruckhaus Deringer LLP or any associated firms or entities.

For information about how Freshfields Bruckhaus Deringer processes personal data please refer to this Privacy notice. For further information about Freshfields Bruckhaus Deringer, please refer to our website at www.freshfields.com.

This e-mail is confidential and may be legally privileged. If you have received it in error, you are on notice of its status. Please notify us immediately by reply e-mail and then delete this message from your system. Please do not copy it, use it for any purpose or disclose its contents to any other person; to do so could be a breach of confidentiality. Thank you for your cooperation. Please contact our IT Helpdesk at GlobalITServiceDesk@freshfields.com if you need assistance.

Freshfields Bruckhaus Deringer US LLP has offices in New York, Silicon Valley and Washington, DC. Freshfields Bruckhaus Deringer LLP is a limited liability partnership registered in England and Wales with registered number OC334789, and has offices or associated entities in Austria, Bahrain, Belgium, China, England, France, Germany, Hong Kong, Italy, Japan, the Netherlands, Singapore, Spain, the United Arab Emirates and Vietnam.

Any reference to a partner means a member, or a consultant or employee with equivalent standing and qualifications, of Freshfields Bruckhaus Deringer US LLP, Freshfields Bruckhaus Deringer LLP or any associated firms or entities.

For information about how Freshfields Bruckhaus Deringer processes personal data please refer to this Privacy notice. For further information about Freshfields Bruckhaus Deringer, please refer to our website at www.freshfields.com.

This e-mail is confidential and may be legally privileged. If you have received it in error, you are on notice of its status. Please notify us immediately by reply e-mail and then delete this message from your system. Please do not copy it, use it for any purpose or disclose its contents to any other person; to do so could be a breach of confidentiality. Thank you for your cooperation. Please contact our IT Helpdesk at GlobalITServiceDesk@freshfields.com if you need assistance.

Freshfields Bruckhaus Deringer US LLP has offices in New York, Silicon Valley and Washington, DC. Freshfields Bruckhaus Deringer LLP is a limited liability partnership registered in England and Wales with registered number OC334789, and has offices or associated entities in Austria, Bahrain, Belgium, China, England, France, Germany, Hong Kong, Italy, Japan, the Netherlands, Singapore, Spain, the United Arab Emirates and Vietnam.

Any reference to a partner means a member, or a consultant or employee with equivalent standing and qualifications, of Freshfields Bruckhaus Deringer US LLP, Freshfields Bruckhaus Deringer LLP or any associated firms or entities.

For information about how Freshfields Bruckhaus Deringer processes personal data please refer to this Privacy notice. For further information about Freshfields Bruckhaus Deringer, please refer to our website at www.freshfields.com.