# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

|  |  |
|---|---|
| The State of Texas, et al., | |
| Plaintiffs, | Case No. 4:20-cv-00957-SDJ |
| v. | Hon. Sean D. Jordan |
| Google LLC, | |
| Defendants. | |

**PLAINTIFF STATES' MOTION FOR MODIFICATION OF SCHEDULING ORDER**

## INTRODUCTION

Plaintiff States have worked diligently to complete depositions and document discovery within the fact discovery deadline established by the Court. Yet, with five business days left before the close of fact discovery, Google's continued delays have prevented Plaintiff States from scheduling and completing depositions of several key witnesses. The Plaintiffs States' concern about the delay in discovery has been reiterated on multiple occasions but to no avail; Google has not complied with the Special Master's Order regarding 30(b)(6) providing witnesses and dates and Google has not provided dates for witnesses noticed during the discovery period. Simply put, the States cannot take depositions until Google provides a witness and a date. These witnesses are related to 30(b)(6) topics noticed two months ago as well as 30(b)(1) witnesses for whom Google has not confirmed dates. Although the States are starting to get dates on for some of the witnesses (with even less than 48-hours notice), Google is now setting 4-5 depositions a day to squeeze *some* of them in.

Regardless of who is to blame, the facts are simple:

- In the past 2.5 weeks, the States have received approximately 185,000 DTPA discovery documents from Google, with metadata being provided as late as two days ago;
- Approximately 400,000 documents have been produced by third-party ████ after the Court awarded the States the right to move forward on NBA discovery;
- Google has produced and continues to produce to the States rolling productions (over 37) from third-parties starting April 2 to date;
- The Special Master has recommended the States receive expert reports from the EDVA Action that Google has not yet produced and has indicated that it may object to, which will cause further delay—those reports are related in part to 30(b)(6) depositions set next week;
- There are 20 Rule 30(b)(6) topics to which Google has not provided a witness or date (9 topics and 11 subtopics); nor has Google sought protection on those topics;
- There are 8 Rule 30(b)(1) depositions that have been noticed, but Google has not provided a witness on;
- There are additional Rule 30(b)(1) topics that the Special Master ruled on today, that Google has not provided a witness on.

The Court has made the parties aware that if there is relevant responsive discovery the parties will

1

get it. Delay should not be rewarded. Permitting these additional three weeks to take specific depositions will allow the States to get discovery it has noticed and has been awarded. The States ask that they be permitted to take a discrete number of limited and specific depositions in the three weeks after the close of fact discovery.

Although, the States believe there is some flexibility in the Court's current schedule related to dispositive motions, the States have proposed a modification to the schedule that would push the trial date back from March 31, 2025 to April 22, 2025. Google's initial proposed trial date was May 26, 2025.

The outstanding depositions include Rule 30(b)(6) depositions on topics central to the Plaintiff States' claims. For several of these topics, Google has not even designated a witness, no less proposed a date. For other topics, Google has refused to designate a witness on certain subtopics despite the fact that there is not a protective order permitting such a refusal. For others, the Parties await a ruling on Google's motions for protective orders. Google has also failed to provide dates for several key 30(b)(1) witnesses, including the three high-level executives whose depositions the Special Master recently ordered to go forward. *See* Dkt. 423. Further, when Google *has* finally offered witnesses and dates for certain other depositions in recent days and weeks, Google has repeatedly lumped in three to four depositions on the same day and essentially told the States to take it or leave it. Google's conduct has jammed the States and severely hindered their ability to complete fact discovery on the current schedule. Meanwhile, third parties have requested more flexibility to schedule the remaining depositions that Plaintiff States have subpoenaed.

At the same time, Plaintiffs States have received in recent days and weeks—and expect to continue to receive next week—hundreds of thousands of additional documents from Google and third parties. And the Plaintiff States have not yet received from Google the expert reports from

the Department of Justice's parallel Virginia case that the Special Master recently ordered be produced, *see* Dkt. 418, which the States need to vet any inconsistencies in upcoming fact and Rule 30(b)(6) depositions.

To accommodate these critical remaining depositions, Plaintiff States seek leave to take certain, limited depositions within the three weeks after the May 3, 2024, fact discovery deadline, without extending that deadline. Specifically, Plaintiff States seek leave to take the following already-noticed depositions by May 24, 2024:

- Rule 30(b)(6) depositions of Google on the 29 topics and 14 subtopics (as of this filing) for which Google refuses to designate a witness or otherwise disputes the topic despite not filing a protective order, as well the eight topics for which Google's protective orders are pending before the Special Master;

- Rule 30(b)(1) depositions of nine Google witnesses for whom Google has not offered a date, as well as four former Google employees; and

- Rule 30(b)(6) depositions of the 16 third-party depositions for which a date has not been offered.

Given the time constraints, the States do not believe that a hearing on this Motion is necessary. If the Court wishes to have a hearing, the States will make themselves available at the Court's desire.

## **BACKGROUND**

From December 16, 2020, when Plaintiff States filed this action in this Court, to May 2023, essentially no discovery took place in this case. In May 2023, Google completed initial document productions, which Plaintiff States promptly reviewed. Starting on July 17, 2023, the States began noticing depositions of Google witnesses. Those depositions began in August 2023 but then

stopped abruptly on August 28 due to Google's inadvertent omission of more than 16 million documents and Google's technical issues with getting those documents loaded for review. In September and October 2023, Google produced 1.9 million documents totaling some 12.2 million pages. However, due to issues faced by both the States and MDL Plaintiffs with Google's products and access to its file transfer sites, the States were not able to fully load these productions until late October and early November 2023. Thus, significant discovery could not begin in earnest in this case until the end of 2023.

On January 2, 2024, the Court entered a Scheduling Order that provided for, *inter alia*, a May 3, 2024, fact discovery deadline and a May 17, 2024, deadline for disclosure of expert testimony on issues for which the party bears the burden of proof. Dkt. 194 at 2. Since that time, Plaintiff States have noticed and scheduled more than 20 individual and corporate depositions of Google and third parties, received and reviewed millions of pages of produced documents, and responded to Google's requests for significant document and deposition discovery.

### 1. Rule 30(b)(6) Depositions of Google

On February 21, 2024, Plaintiff States served a Rule 30(b)(6) notice on Google. After a full-day conference with the Special Master on March 21, 2024, the Special Master ordered that the States "identify, no later than March 22, 2024, a discrete list of 10 prioritized deposition topic 'buckets' into which the 107 noticed topics shall be grouped." Dkt. 321 at 6. The States complied. *See* Ex. A at 38, 42-43. The Special Master also ordered that "Google, no later than March 29, 2024, provide dates to the States on which they will provide Rule 30(b)(6) deponents on the grouped topics." *Id.*[1]

---

[1] The Special Master order was without prejudice to Google raising specific objections to the precise scope of the depositions. Google has not raised those objections to the Special Master or the Court, let alone done so promptly.

Google has not complied with that order. As of this filing, Google has not provided witnesses or dates on the full scope of some 30 topics. While Google moved for a protective order on some of these topics, Google continues to refuse to designate witnesses both on some topics wholesale and on the full scope of other topics and subtopics, even though they have not sought a protective order or otherwise raised their objections to the Special Master or the Court. Specifically, there are (a) 8 topics[2] for which Google has moved for a protective order and for which a deposition has not been scheduled; (b) 8 entire topics and 13 separate subtopics[3] for which Google has not designated a witness and has <u>not</u> sought a protective order; and (c) at least 13 topics and one subtopic[4] about which the parties have an ongoing disagreement over scope and for which Google has <u>not</u> sought a protective order. *See* Appendix A at 1-3. Thus, with less than a week of discovery remaining, the States lack clarity on Google's designations for more than 30 topics.

Despite these delays, Plaintiff States have taken depositions of four 30(b)(6) witnesses, representing roughly three depositions based on seven-hour increments.[5] Additionally, the States are scheduled and confirmed to take depositions of five more Rule 30(b)(6) witnesses before the May 3, 2024, fact discovery cutoff. Plaintiff States have also designated and scheduled 30(b)(6) depositions for each State, which have either been completed or will be completed by May 3. *See* Appendix A at 5-8.

**2.  Rule 30(b)(1) Depositions of Google Fact Witnesses**

Plaintiff States have noticed depositions of 28 Google fact witnesses under Rule 30(b)(1).

---

[2] Topics 1-4 and 16-19.

[3] Topics 55, 65, 75-76, 98(f), 98(g), 83, 104(a-b), 104 (e), 104(f), 104(h), 104(i), 104(k), 104(n-p), 104(q), 105-106.

[4] Topics 6, 22, 26, 43, 45, 50, 56, 74, 88, 91, 94, 98(c), 100, 101.

[5] Under the Scheduling Order, each seven-hour period of a 30(b)(6) deposition counts as one deposition for purposes of the Order's deposition limits. Dkt. 194 at 6.

Plaintiff States have taken nine Google fact witness depositions, including four in the MDL and five within the past few weeks. The States are scheduled and confirmed to take six more in advance of the May 3, 2024, fact discovery cutoff.

Yet Google has yet to offer dates for nine of the noticed fact witnesses. *See* Appendix A at 3. On April 24, 2024, the Special Master recommended three of those depositions (those of high-ranking Google officials) proceed. Dkt. 423. Google previously represented that these three high-ranking officials could not sit for depositions before the May 3 fact discovery deadline.  In addition, of the nine yet-to-be-scheduled witnesses, six are custodians of documents in the recently produced DTPA document productions discussed below.

### 3.   Depositions of Third Parties

On April 15, 2024, Plaintiff States noticed by subpoena Rule 30(b)(6) depositions of 21 third parties.[6] The States have since withdrawn four of those subpoenas, and the States have scheduled and confirmed two depositions of Rule 30(b)(6) witnesses for ███████ demanded location of London, totaling 5.5 hours on the record. In total, by the May 3 fact discovery cutoff, the States estimate they will have taken 24 depositions across Google and the third parties.

Plaintiff States are in communication with the 16 remaining third parties to schedule depositions but have not yet confirmed dates for them. *See* Appendix A at 3.

### 4.   Document Productions

On November 13, 2023, Plaintiff States propounded document requests related to the States' DTPA claims. Only after the Special Master's order on March 29, 2024, did Google begin producing responsive documents. Between April 9 and April 24, 2024, Plaintiff States received

---

[6] Because 30(b)(6) depositions are counted based on the number of hours, and Plaintiff States expect to need just a few hours for most of these depositions, these depositions will count for substantially less than 21 depositions under the States' 40-deposition cap. *See* Dkt. 196 at 6.

numerous Google-identified DTPA productions totaling more than 185,794 documents. In addition, between April 2 and April 22, 2024, Google has produced on a rolling basis 37 productions.

Meanwhile, on November 23, 2023, Plaintiff States challenged Google's privilege logs due to pervasive deficiencies. The Special Master granted Plaintiff States' motion and ordered Google to supplement its logs and produce non-privileged documents. Subsequently, on throughout April 2024, Google has produced approximately 39,000 wrongfully withheld documents.

On January 27, 2023, Plaintiff States served requests for production on third-party ███. Although ███ had produced those documents to Google in the parallel Virginia Action, Google did not reproduce those documents to the States based on a prior discovery stay. On March 27, 2024, the Court ordered production of those documents. *See* Dkt. 327. On April 24, 2024, ███ produced to the States approximately 370,000 responsive documents. ███ has represented that its three document sets will reflect the custodial files ███ believes are most likely to contain information relevant to the claims at issue in this litigation.

Finally, Google has represented to the States that there are relevant third-party productions from the Virginia Action that remain unproduced to the States. Under the parties' stipulation and the Virginia Action's protective order, according to Google, those productions will be further delayed by a notice and seven-day objection period, plus a five-day production period. The States do not know the total volume of these forthcoming productions.

**5. Prior Discussions on a Limited Scheduling Modification**

At an April 18, 2024, Status Conference, the Parties and the Court discussed the possibility that Plaintiff States might need to seek a limited modification of the Scheduling Order due to the aforementioned deposition scheduling and document production issues. *See* Ex. B at 31:19-36:22.

The Court stated that it "anticipate[d]" that any upcoming "potential requested extension of deadlines or a request that certain things be done past May 3" would "first be raised with the special master." *Id.* at 36:18-22.

On April 23, 2024, Plaintiff States filed a brief with the Special Master requesting the Special Master's guidance on the States' need for (a) leave to take certain, limited depositions after the May 3, 2024 fact discovery cutoff, without extending the fact discovery cutoff, and (b) a corresponding short extension of their May 17, 2024 expert deadline, with no impact on the trial date of March 31, 2025. Dkt. 407.[7] The States sought a hearing with the Special Master on this issue and represented that they would file a formal motion to the Court to modify the Scheduling Order if needed. *Id.*

On April 25, 2024, the Court ordered Plaintiff States to file a formal motion with the Court with the scheduling modification request proposed in the States' brief to the Special Master. Dkt. 410.

## ARGUMENT

I.    **The Scheduling Order Should Be Modified to Permit a Limited Number of Post-May 3 Depositions and Extend the Corresponding Scheduling Order. Deadline Accordingly.**

In order to complete critical depositions and to allow sufficient time for their experts to prepare their opening reports, Plaintiff States seek (a) leave to take a discrete number of depositions[8] after the May 3, 2024 fact discovery cutoff, which the States believe they can accomplish within three weeks after the fact discovery cutoff and without the need to extend the

---

[7] Plaintiff States filed a corrected brief the following day, April 24. *See* Dkt. 410.

[8] The exact number of depositions depends on (i) the result of the outstanding protective order dispute with respect to one Google witness, as well as the number of witnesses Google provides in response to the outstanding 30(b)(6) topics.

fact discovery cutoff, and (b) a corresponding three week extension to all case deadlines resulting in a jury selection date of April 21, 2025.

### A. Legal Standard

A court's scheduling order may be modified "only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). To determine whether good cause exists, courts in the Fifth Circuit look to four factors: "(1) the explanation for the failure to timely [comply with the scheduling order]; (2) the importance of the [modification]; (3) the potential prejudice in allowing the [modification]; and (4) the availability of a continuance to cure such prejudice." *Grant v. City of Houston*, 625 F. App'x 670, 679 (5th Cir. 2015) (quoting *Meaux Surface Prot., Inc. v. Fogleman*, 607 F.3d 161, 167 (5th Cir. 2010)) (alterations in the original). This same standard applies to motions to conduct additional depositions after the close of fact discovery. *See, e.g.*, *Theriot v. Bldg. Trades United Pension Tr. Fund*, No. CV 18-10250, 2022 WL 4364507, at *2-3 (E.D. La. Sept. 21, 2022).

### B. Unforeseen Delays, Including Google's, Have Thwarted Plaintiff States' Diligent Efforts to Comply with the Scheduling Order.

The moving party's "diligence" is "the most important factor in the good-cause analysis." *Le-Vel Brands, LLC v. DMS Nat. Health, LLC*, No. 4:20-CV-398-SDJ, 2022 WL 949952, at *3 (E.D. Tex. Mar. 28, 2022). To satisfy this factor of the good-cause standard, "the moving party must show that, despite its diligence, it could not reasonably have met the scheduling order deadline." *Cub USA Servs., LLC v. Jetta Operating Co., Inc.*, No. 3:14-CV-2508-D, 2016 WL 1028128, at *2 (N.D. Tex. Mar. 15, 2016).

Plaintiff States have moved swiftly to complete the depositions needed to mount their case against Google, and they have done so without the benefit of a full review of Google's hundreds

of thousands of pages of late-breaking document productions. Thanks to these diligent efforts, Plaintiff States expect to have taken 24 depositions by the May 3 fact discovery deadline—with at least two to three depositions scheduled each business day between now and then.[9]

But the States cannot take depositions until Google provides a witness and a date. Google's outstanding depositions include 30(b)(6) topics noticed two months ago and multiple 30(b)(1) witnesses for whom Google has not confirmed dates. Simply put, that is not how discovery is supposed to work. Google needs to either produce witnesses or file for a protective order; it cannot (but has) simply objected on paper to the States' deposition notices, or otherwise failed to respond, without moving for a protective order. In addition, pursuant to the Special Master's recommendation, Google must provide dates for deposition of the three high-level Google executives sought by Plaintiff States. *See* Dkt. 423. And Plaintiff States have noticed a number of depositions based on DTPA discovery that was served over five months ago, but for which the States only received productions from Google—totaling nearly 200,000 documents—within the last few days and weeks. Even if Google were to provide to the States today dates for its outstanding topics and corporate and individual witnesses, it is highly unlikely the parties could schedule those depositions in the remaining five business days of fact discovery given the number of depositions already confirmed and scheduled. Indeed, Google has represented that its three high-level executives are not available to be deposed prior to May 3.

Plaintiff States are in a similar position with respect to third parties. Plaintiff States continue to receive responsive third-party document discovery and do not even know how many

---

[9] Even with the additional noticed depositions, Plaintiff States will not exceed their 40-deposition cap, because several of the 30(b)(6) depositions will not count as a full deposition. The States currently intend to go forward with all noticed depositions and will notify Google or the relevant third parties if they decide to withdraw any notices.

more documents to expect by May 3. This includes document discovery for which a Court-ordered stays were lifted less than a month ago and for which productions were completed just two days ago. *See* Dkt. 327 (Mar. 27, 2024) (lifting the stay on discovery regarding the Network Bidding Agreement between Google and Meta). Despite these delays in document production, the States are working with third parties to schedule their depositions and require some further flexibility to schedule around the needs of third parties.

In short, given the large number of outstanding deposition dates and continuing large volumes of documents that have been produced to the States on a daily basis for the past two weeks—with more to come—the States cannot take all of their noticed depositions despite their diligence. Once all documents have been produced and all depositions completed, Plaintiff States' experts will require two to three more weeks to incorporate this discovery into their opening reports.

**C. Plaintiff States' Proposed Modifications Are Necessary to Permit Critically Important Discovery.**

The outstanding noticed depositions cover topics that are central to Plaintiff States' claims in this complex antitrust and consumer protection case brought by 17 sovereigns challenging 15-plus years of conduct by Google in the multi-trillion-dollar markets for online advertising. For example, Google has yet to schedule depositions for the three high-level executives that the Special Master found to be important to several of the Plaintiff States' claims. *See* Dkt. 423 at 7-10. Google has also failed to provide witnesses and/or dates, or otherwise objected to the topics, for essential 30(b)(6) topics such as Reserve Price Optimization, Dynamic Revenue Share, the economics of ad tech markets and Google's restraints, source code, and several subtopics related to header

bidding.[10] *See* Appendix A at 1-3. Similarly, outstanding third-party document productions cover critical issues like the Network Bidding Agreements, which the Court found to be relevant to Plaintiff States' DTPA and Sherman Act Section 2 claims. Dkt. 327 at 5. Plaintiff States and their experts seek merely a few more weeks to complete these important depositions and review the hundreds of thousands of recently produced or soon-to-be produced documents that are likely highly relevant, if not essential, to the States' claims.

**D. The Proposed Modification Would Not Prejudice Google.**

Google would incur no prejudice from the proposed modification. For one thing, with respect to the three high-level executives that the Special Master has recommended be produced, Google has admitted that those executives cannot sit for deposition before the fact discovery deadline. Requiring those executives to sit for depositions within the next five business days seemingly would cause more prejudice to Google than giving Google three more weeks to accommodate those depositions. Beyond the already-noticed depositions that Plaintiff States seek to conduct after May 3 (many of which would be of third parties, not Google), Google would face no additional fact discovery after the May 3 deadline.

**E. Any Prejudice Could Easily Be Cured Through a Continuance of the Expert Discovery Deadline.**

Although the States believe there is room to modify the schedule regarding dispositive motions, without upending the March 31, 2025 trial date. The States have laid out a schedule that moves all dates back three weeks to prevent any burden on the parties. The new date for jury selection would be April 21, 2025.

---

[10] These outstanding topics include some that the Court specifically encouraged Plaintiff States to prioritize, such as records custodian depositions. *See* Ex. C at 24:14-25:8.

| Current Date | Event | Proposed New Date | Difference |
|---|---|---|---|
| 05/03/24 | Close of Fact Discovery | 5/24/24 | 3 weeks |
| 05/17/24 | Expert Reports Due | 6/7/24 | 3 weeks |
| 07/08/24 | Google's Expert Reports Due (53 days) | 7/30/24 | Same span |
| 08/05/24 | Rebuttal Expert Reports Due (28 days) | 8/27/24 | Same span |
| 09/13/24 | Close of Expert Discovery (39) | 10/5/24 | Same span |
| 10/18/24 | Deadline for Motions for Summary Judgement/Daubert (35 days) | 11/9/24 | Same span |
| 11/08/24 | Responses to MSJ/Daubert (21 days) | 11/30/24 | Same span |
| 11/22/24 | Replies for MSJ/Daubert (14 days) | 12/14/24 | Same span |
| 2/28/25 | Motions in Limine due (98 days) | 3/22/25 | Same span |
| 3/31/25 | Jury Selection –4-week trial (31 days) | 4/21/25 | Same span |

## **CONCLUSION**

For the foregoing reasons, Plaintiff States respectfully ask this Court to modify the

Scheduling Order, Dkt. 196, as follows:

1. Permit Plaintiff States to take the 30(b)(6), 30(b)(1), and third-party already-noticed

    depositions (or their hours-equivalent) before May 24, 2024, while leaving the May 3 fact

    discovery deadline in place and not permitting any new discovery requests or deposition

    notices; and

2. Extend all additional case deadlines by three weeks.

3. Given the time constraints, the States do not believe that a hearing on this Motion is

    necessary. If the Court wishes to have a hearing, the States will make themselves available

    at the Court's desire.

Respectfully submitted,

/s/ W. Mark Lanier
W. Mark Lanier
Mark.Lanier@LanierLawFirm.com
Alex J. Brown
Alex.Brown@LanierLawFirm.com
Zeke DeRose III
Zeke.DeRose@LanierLawFirm.com
Jonathan P. Wilkerson
Jonathan.Wilkerson@LanierLawFirm.com
10940 W. Sam Houston Pkwy N
Suite 100
Houston, TX 77064
(713) 659-5200
**THE LANIER LAW FIRM, PLLC**

/s/ Ashley Keller
Ashley Keller
ack@kellerpostman.com
150 N. Riverside Plaza, Suite 4100
Chicago, Illinois 60606
(312) 741-5220

Zina Bash
zina.bash@kellerpostman.com
111 Congress Avenue, Suite 500
Austin, TX 78701
(512) 690-0990

Noah S. Heinz
noah.heinz@kellerpostman.com
Daniel Backman (*pro hac vice* forthcoming)
daniel.backman@kellerpostman.com
1101 Connecticut, N.W., 11th Floor
Washington, DC 20005
(202) 918-1123
**KELLER POSTMAN LLC**

*Counsel for Texas, Idaho, Louisiana (The Lanier Law Firm only), Mississippi, North Dakota, Indiana, South Carolina, and South Dakota*

*Submitted on behalf of all Plaintiff States*

**NORTON ROSE FULBRIGHT US LLP**
Joseph M. Graham, Jr.
joseph.graham@nortonrosefulbright.com
Geraldine Young
geraldine.young@nortonrosefulbright.com
1301 McKinney, Suite 5100
Houston, Texas 77010
(713) 651-5151

Marc B. Collier
Marc.Collier@nortonrosefulbright.com
98 San Jacinto Blvd., Suite 1100
Austin, Texas 78701

(512) 474-5201
FOR PLAINTIFF STATE OF TEXAS:

KEN PAXTON
Attorney General

*/s/ Trevor E. D. Young*

Brent Webster, First Assistant Attorney General of Texas
Brent.Webster@oag.texas.gov
James R. Lloyd, Deputy Attorney General for Civil Litigation
James.Lloyd@oag.texas.gov
Trevor Young, Deputy Chief, Antitrust Division
Trevor.Young@oag.texas.gov

**STATE OF TEXAS, OFFICE OF THE ATTORNEY GENERAL**
P.O. Box 12548
Austin, TX 78711-2548
(512) 936-1674

*Attorneys for Plaintiff State of Texas*

## <u>CERTIFICATION OF CONFERENCE</u>

I certify that counsel has complied with the meet and confer requirement in Local Rule CV-7(h). The personal conferences required by Local Rule CV-7(h) have been conducted or were attempted throughout March and April 2024 via video and in-person conferences and email between Plaintiffs' and Defendant's counsel.

The foregoing document and exhibits further outline explanations of why no final resolution has been reached yet, leaving potentially open issues for the Special Master and Court to resolve.

*/s/ Geraldine Young*
Geraldine Young

## <u>CERTIFICATE OF SERVICE</u>

I certify that, on April 26, 2024, this document was filed electronically in compliance with Local Rule CV-5(a) and served on all counsel who have consented to electronic service, per Local Rule CV-5(a)(3)(A).

*/s/ Geraldine Young*
Geraldine Young

# APPENDIX A
# FILED UNDER SEAL

**APPENDIX A**

**Outstanding Rule 30(b0(6) Topics, Noticed by the States to Google on February 21, 2024:**

| TOPIC No./Nos. | Topic Summary | Status |
|---|---|---|
| Topic 1 | General discovery, document preservation production practices | No witness designated; protective order denied by Special Master. Dkt. 428. |
| Topic 6 | General discovery; location and format of documents | Dispute over scope; States seek additional witness(es) to cover full scope of topic |
| Topic 18 | Preservation, retention, searches, use, etc. of Google chats | No witness designated; protective order denied by Special Master. Dkt. 428. |
| Topic 22 | Ad tech product integration and data flows | Dispute over scope; States seek additional witness(es) to cover full scope of topic |
| Topic 26 | Evaluation, testing, experimentation, design, data for each Google ad tech product and auction mechanic | Dispute over scope; States seek additional witness(es) to cover full scope of topic |
| Topic 43 | External representations and public-facing statements re: ad tech products and auction mechanics to publishers, advertisers, other third parties | Dispute over scope; States seek additional witness(es) to cover full scope of topic |
| Topic 45 | Disclosures of ad tech auction mechanics | Dispute over scope; States seek additional witness(es) to cover full scope of topic |
| Topic 50 | Statements / communications re second-price auctions and other auction types and models; reasons and communications re: switching from second to first priced auction | Dispute over scope; States seek additional witness(es) to cover full scope of topic |
| Topic 55 | Complaints re: ad tech auction fairness / bias | Google refusing to provide a witness; no protective order filed |
| Topic 56 | Live experiments on auction participants | Dispute over scope; States seek additional witness(es) to cover full scope of topic |

| Topic 65 | Google's defenses | Google refusing to provide a witness; no protective order filed |
|---|---|---|
| Topic 74 | Business and financial plans, analyses | Dispute over scope; States seek additional witness(es) to cover full scope of topic |
| Topics 75 and 76 | Accounting policies and procedures; profits, revenue, fees, margins | Google refusing to provide a witness; no protective order filed |
| Topic 88 | Experiments, tests, data for GAM, DFP, AdX | Dispute over scope; States seek additional witness(es) to cover full scope of topic |
| Topic 91 | Interactions and data exchanges among DFP, AdX, GAM, non-Google publisher ad servers and exchanges, Google Marketing Platform, Google Chrome. | Dispute over scope; States seek additional witness(es) to cover full scope of topic |
| Topic 94 | Experiments, analyses, simulations re: ad tech auction mechanics on publishers or advertisers | Dispute over scope; States seek additional witness(es) to cover full scope of topic |
| Topic 98(c) | Dynamic Revenue Share and the effects of each auction mechanic on fees, revenue share, take-rate | Dispute over scope; States seek additional witness(es) to cover full scope of topic |
| Topics 98(f), 98(g) | Number and identity of publishers opted into DRS; number of transactions and impressions of publishers on AdX in which DRS was implemented / operated | Google refusing to provide a witness; no protective order filed |
| Topic 100 | Unified / Uniform Pricing Rules | Dispute over scope; States seek additional witness(es) to cover full scope of topic |
| Topic 101 | Reserve Price Optimization | Dispute over scope; States seek additional witness(es) to cover full scope of topic |
| Topic 83, Topic 104(f), 104(i), 104(q) | Effect of ad tech auction mechanics on Google revenue share, fees, margins, take-rate; effects of header bidding on publishers and advertisers and comparison to open bidding | Google refusing to provide a witness; no protective order filed |

2

| Topic 104(c) | Changes to ad tech products in connection with header bidding | Google refusing to provide a witness; no protective order filed |
|---|---|---|
| Topic 104 (e), (j), (k), (n) (q) | Financial and competitive effects of header bidding on Google, advertisers, publishers; contracts related to open bidding and header bidding | Google refusing to provide a witness; no protective order filed |
| Topics 105-106 | Source code and algorithms; database configuration | Google refusing to provide a witness; no protective order filed |

**Noticed Google Witnesses under Rule 30(b)(1)**

***No Deposition Dates Offered:***[1]

| WITNESS[2] | DATE NOTICED | DATE OFFERED |
|---|---|---|
| Sergey Brin* | March 19, 2024 | |
| Sundar Pichai* | March 19, 2024 | |
| Neal Mohan* | March 19, 2024 | |
| ███████████ | April 17, 2024 | |
| ███████████ | April 17, 2024 | |
| ███████████ | April 17, 2024 | |
| ███████████ | April 17, 2024 | |
| ███████████ | April 17, 2024 | |

***Deposition Dates Recently Offered:***

| WITNESS | DATE NOTICED | DATE OFFERED |
|---|---|---|
| ███████████ | April 17, 2024 | May 1 (not yet accepted) |
| ███████████ | April 17, 2024 | April 26 (accepted) |

[1] The States have also, pursuant to representations from Google's counsel, subpoenaed three former Google employees whom Google's counsel claims to not represent: ███████████ ███████, and ███████. The States are assessing whether to withdraw or move forward with those subpoenaed depositions and will update immediately if they are withdrawn. Google has this week also advised that another noticed deponent, ███████████, must also be subpoenaed, and the States are awaiting receiving her last known contact information.

[2] Witnesses with an asterisk (*) represent the three Google executives for whom Google's motions for a protective order before the Special Master was granted in part and denied in part on April 24, 2024. Those depositions will proceed with specified time limits. *See* Dkt. 423. The States have removed from this list ███████████, for whom Google's motion for a protective order was granted by the Special Master on April 26, 2024. *See* Dkt. 428.

**Subpoenaed Third Parties under Rule 30(b)(6), Noticed April 15, 2024, with No Deposition Dates Confirmed:[3]**



Withdrawn:

1. ███████

████████████

███████████

██████████████

[3] As Rule 30(b)(6) depositions, these depositions will not each count as one deposition if the States only take a few hours with each witness, as is the States' intent.  Also, as stated in the States' brief, the States are assessing whether they will withdraw any third-party subpoenaed depositions (just as Google has withdrawn third-party subpoenas) and expect to make those decisions soon.

4

**Scheduled Rule 30(b)(6) of the Plaintiff States, with All Deposition Dates Offered:**

| | | |
|---|---|---|
| Texas | April 17 (completed) | In Person<br><br>████████<br><br>9 am CT start<br>NRF Austin<br>98 San Jacinto Blvd Ste 1100<br>Austin, TX 78701 |
| Florida | April 22 (completed) | In Person<br><br>████████<br><br>9:30 am ET start<br>Collins Building<br>107 W Gaines St<br>Tallahassee, FL 32399 |
| South Carolina | April 23 (completed) | Remote<br><br>████████<br><br>9 am ET start |
| Kentucky | April 25 (completed) | In Person<br><br>████████<br><br>9 am ET start<br>310 Whittington Parkway<br>Suite 101<br>Louisville, KY 40222 |

| | | |
|---|---|---|
| Mississippi | April 25 (completed)<br><br>█████████████<br><br>████████████ | In Person<br><br>████████<br><br>9:30 am CT start<br><br>██████<br><br>After 1st depo start<br><br>550 High Street<br><br>Jackson, MS |
| Indiana | April 25-26 (confirmed dates)<br><br>April 25 –<br><br>████████ - Topics 1-5, 11-14, 16, 26-28<br><br>April 26 –<br><br>███████ - Topic 32 | In Person<br><br>1 pm ET start April 25<br><br>10 am ET start April 26<br><br>302 W Washington Street<br><br>Indiana Gov't Center South<br><br>Fifth Floor<br><br>Indianapolis, IN 46204 |
| Missouri | April 26 (confirmed date) | Remote<br><br>█████████████<br><br>9 am CT start |
| Nevada | April 29 (confirmed date) | Remote<br><br>████████<br><br>8:30 am to 4:30 pm PT |
| South Dakota | April 29 (confirmed date) | In Person<br><br>██████████<br><br>8 am CT start<br><br>1302 E Hwy 14<br><br>Pierre, SD 57501 |

6

| Utah | April 30 (confirmed date) | Remote |
| --- | --- | --- |
| | ████████ – Topics 1-3 (AGO only), 4-5 (but not DCP ad agency purchases or DCP's doc retention policies), 11-14, 16, 26-27 (both AGO and DCP) | ████████<br>8 am PT start<br>████████<br>1 pm PT start |
| | ████████ – Topics 1-3 (DCP), 4-5 (as they relate to DCP ad agency purchases and DCP doc retention policies), 28, 32 (DCP only) | |
| Puerto Rico | April 30 (confirmed date) | In Person<br>████████<br>9:30 am ET start<br>PR DOJ<br>████████<br>677 Esq Ave Jesus T Pinero<br>San Juan, Puerto Rico |
| Montana | (confirmed dates)<br>April 30 – ████████ - Topics 1-3<br>May 1 – ████████ - Remaining topics | Remote<br>████████ 9 am MT start<br>████████ 9 am MT start |
| Arkansas | May 1 (confirmed date) | Remote<br>████████<br>9 am CT start |
| North Dakota | May 2 (confirmed date) | Remote<br>████████<br>8 am CT start |

| Idaho | May 3 (confirmed date) | Remote<br>█████████<br>9:30 am MT start |
|---|---|---|
| Louisiana | May 3 (confirmed date) | In Person<br>█████████<br>9 am CT start<br>Louisiana AG office*<br>Baton Rouge |
| Alaska | May 3 (confirmed date) | Remote<br>█████████<br>Noon Alaska start |

# EXHIBIT A
# FILED UNDER SEAL

**From:** Zeke DeRose III <Zeke.DeRose@LanierLawFirm.com>

**Date:** Friday, April 26, 2024 at 1:51 PM

**To:** "SESSIONS, Justina (JKS)" <Justina.Sessions@freshfields.com>, "Marc B. Collier" <marc.collier@nortonrosefulbright.com>, "Geraldine W. Young" <geraldine.young@nortonrosefulbright.com>, "BAYOUMI, Jeanette" <Jeanette.Bayoumi@freshfields.com>

**Cc:** Paul Yetter <pyetter@yettercoleman.com>, "MCCALLUM, Robert" <rob.mccallum@freshfields.com>, "Bracewell, Mollie" <mbracewell@yettercoleman.com>, "MAHR, Eric (EJM)" <Eric.MAHR@freshfields.com>, "Moran, David" <dmoran@jw.com>, "Nilsson, William (DAL)" <wnilsson@jw.com>, Mark Lanier <Mark.Lanier@LanierLawFirm.com>, Ashley Keller <ack@kellerpostman.com>, John McBride <john.mcbride@nortonrosefulbright.com>, Jonathan Wilkerson <Jonathan.Wilkerson@LanierLawFirm.com>, "Young, Trevor (TX)" <Trevor.Young@oag.texas.gov>, "Peter M. Hillegas" <peter.hillegas@nortonrosefulbright.com>, James Lloyd <James.Lloyd@oag.texas.gov>, Thomas Ray <thomas.ray@oag.texas.gov>, "Alex J. Brown" <Alex.Brown@LanierLawFirm.com>, "SALEM, Sara" <Sara.Salem@freshfields.com>, "ELMER, Julie (JSE)" <Julie.Elmer@freshfields.com>, "SONG, Tinny" <Tinny.Song@freshfields.com>, Marisa Madaras <marisa.madaras@nortonrosefulbright.com>, Gabriel Culver <gabriel.culver@nortonrosefulbright.com>

**Subject:** Re: Google AdTech (EDTX): Categories and First Priority of States' 30(b)(6) to Google per Special Master Conference

Hi Tina,

Thank you for clarifying. If Google is withdrawing Mr. ███ entirely, we have no choice but to accept Mr. ████ on the topics Mr. ███ was initially designated for and the new additional topics.

As you can imagine we have been preparing for Mr. ███s testimony among the other depositions set for next week, so this change, given the tight window is not ideal.

We are concerned about the number of depos amounting to 4 or 5 depos a day now being scheduled, with some this week coming with less than 48-hours notice. Mr. ███ who we discussed and asked for dates on the week of April 15 is now offered at the end of next week (May 2 and May 3)—where there are a number of ever-increasing stacked depos. I will note that there were a couple days this week that were light on depos or did not have any set.

We understand Google objects to alternative dates, but we think it would be prudent and in the best interest to find alternative dates for discrete specific depos.

Also, we have attached our reply to Google's response to the outstanding 30(b)(6) topics, but again note that with 5 days left in fact discovery we should be past the never-ending back-and-forth without a date set for testimony.

Zeke

**From:** "SESSIONS, Justina (JKS)" <Justina.Sessions@freshfields.com>

**Date:** Thursday, April 25, 2024 at 8:37 AM

**To:** Zeke DeRose III <Zeke.DeRose@LanierLawFirm.com>, "Marc B. Collier" <marc.collier@nortonrosefulbright.com>, "Geraldine W. Young" <geraldine.young@nortonrosefulbright.com>, "BAYOUMI, Jeanette" <Jeanette.Bayoumi@freshfields.com>

**Cc:** Paul Yetter <pyetter@yettercoleman.com>, "MCCALLUM, Robert" <rob.mccallum@freshfields.com>, "Bracewell, Mollie" <mbracewell@yettercoleman.com>, "MAHR, Eric (EJM)" <Eric.MAHR@freshfields.com>, "Moran, David" <dmoran@jw.com>, "Nilsson, William (DAL)" <wnilsson@jw.com>, Mark Lanier <Mark.Lanier@LanierLawFirm.com>, Ashley Keller <ack@kellerpostman.com>, John McBride <john.mcbride@nortonrosefulbright.com>, Jonathan Wilkerson <Jonathan.Wilkerson@LanierLawFirm.com>, "Young, Trevor (TX)" <Trevor.Young@oag.texas.gov>, "Peter M. Hillegas" <peter.hillegas@nortonrosefulbright.com>, James Lloyd <James.Lloyd@oag.texas.gov>, Thomas Ray <thomas.ray@oag.texas.gov>, "Alex J. Brown" <Alex.Brown@LanierLawFirm.com>, "SALEM, Sara" <Sara.Salem@freshfields.com>, "ELMER, Julie (JSE)" <Julie.Elmer@freshfields.com>, "SONG, Tinny" <Tinny.Song@freshfields.com>, Marisa Madaras <marisa.madaras@nortonrosefulbright.com>, Gabriel Culver <gabriel.culver@nortonrosefulbright.com>

**Subject:** RE: Google AdTech (EDTX): Categories and First Priority of States' 30(b)(6) to Google per Special Master Conference

Dear Zeke –

We are withdrawing ████ as a 30(b)(6) witness entirely. Mr. ████ is designated on Ms. ███s prior topics and the additional ones we noted. Mr. ████ will be prepared to testify regarding:

- Google's policies and procedures for public statements to customers about the Google Ad Tech Products referenced in the Fourth Amended Complaint and/or for customer notifications regarding product changes for those same products.
- Communications programs or strategies relating to RPO, DRS, Bernanke, and the Unified First Price auction, including the disclosures made (if any) and the manner in which each was disclosed
- Google's external statements or communications regarding the benefits or drawbacks of auction types.
- Current sell-side product strategies

These designations cover aspects of Topics 20, 37, 39, 40-47, 49, 50-52, 74, 78, 98, and 101(g), (h), (j), and (k).

I also have another update for you:

    Mr ▇▇▇ is available to provide additional 30(b)(6) testimony on May 2 and May 3 from 9-12 ET each day.

Regards,
Tina

**From:** Zeke DeRose III <Zeke.DeRose@LanierLawFirm.com>
**Sent:** Wednesday, April 24, 2024 10:45 PM
**To:** SESSIONS, Justina (JKS) <Justina.Sessions@freshfields.com>; Marc B. Collier <marc.collier@nortonrosefulbright.com>; Geraldine W. Young <geraldine.young@nortonrosefulbright.com>; BAYOUMI, Jeanette <Jeanette.Bayoumi@freshfields.com>
**Cc:** Paul Yetter <pyetter@yettercoleman.com>; MCCALLUM, Robert <rob.mccallum@freshfields.com>; Bracewell, Mollie <mbracewell@yettercoleman.com>; MAHR, Eric (EJM) <Eric.MAHR@freshfields.com>; Moran, David <dmoran@jw.com>; Nilsson, William (DAL) <wnilsson@jw.com>; Mark Lanier <Mark.Lanier@LanierLawFirm.com>; Ashley Keller <ack@kellerpostman.com>; John McBride <john.mcbride@nortonrosefulbright.com>; Jonathan Wilkerson <Jonathan.Wilkerson@LanierLawFirm.com>; Young, Trevor (TX) <trevor.young@oag.texas.gov>; Peter M. Hillegas <peter.hillegas@nortonrosefulbright.com>; James Lloyd <James.Lloyd@oag.texas.gov>; Thomas Ray <thomas.ray@oag.texas.gov>; Alex J. Brown <Alex.Brown@LanierLawFirm.com>; SALEM, Sara <Sara.Salem@freshfields.com>; ELMER, Julie (JSE) <Julie.Elmer@freshfields.com>; SONG, Tinny <Tinny.Song@freshfields.com>; Marisa Madaras <marisa.madaras@nortonrosefulbright.com>; Gabriel Culver <gabriel.culver@nortonrosefulbright.com>
**Subject:** Re: Google AdTech (EDTX): Categories and First Priority of States' 30(b)(6) to Google per Special Master Conference

Hi Tina,

Thank you for your notes. We are reviewing your letter from last night and will respond promptly with questions. In the meantime, to make sure we are on the same page, can we get a little clarification on the new 30(b)(6) designation and de-designation?

1. Specifically, can you clarify what "communications topics" Google is designating ▇▇▇▇▇▇ on?
   - Are they: Topics 20, 37, 39, 40-42, 44, 51-52?
   - Per Google's April 15, 2024 letter are they: Topics 43, 46, 47, 49, 98, 101?

We will respond regarding the offered dates of May 1 or May 3 in New York.

2. Is Google withdrawing ▇▇▇▇ as a 30(b)(6) witness entirely, or does Ms. ▇▇ remain designated to testify on Topics 20, 37, and 39? (Or is Ms. ▇▇ being replaced by ▇▇▇▇ on these?)

Thank you for the help with this.

Zeke

**From:** "SESSIONS, Justina (JKS)" <Justina.Sessions@freshfields.com>
**Date:** Wednesday, April 24, 2024 at 5:54 PM
**To:** Zeke DeRose III <Zeke.DeRose@LanierLawFirm.com>, "Marc B. Collier" <marc.collier@nortonrosefulbright.com>, "Geraldine W. Young" <geraldine.young@nortonrosefulbright.com>, "BAYOUMI, Jeanette" <Jeanette.Bayoumi@freshfields.com>
**Cc:** Paul Yetter <pyetter@yettercoleman.com>, "MCCALLUM, Robert" <rob.mccallum@freshfields.com>, "Bracewell, Mollie" <mbracewell@yettercoleman.com>, "MAHR, Eric (EJM)" <Eric.MAHR@freshfields.com>, "Moran, David" <dmoran@jw.com>, "Nilsson, William (DAL)" <wnilsson@jw.com>, Mark Lanier <Mark.Lanier@LanierLawFirm.com>, Ashley Keller <ack@kellerpostman.com>, John McBride <john.mcbride@nortonrosefulbright.com>, Jonathan Wilkerson <Jonathan.Wilkerson@LanierLawFirm.com>, "Young, Trevor (TX)" <trevor.young@oag.texas.gov>, "Peter M. Hillegas" <peter.hillegas@nortonrosefulbright.com>, James Lloyd <James.Lloyd@oag.texas.gov>, Thomas Ray <thomas.ray@oag.texas.gov>, "Alex J. Brown" <Alex.Brown@LanierLawFirm.com>, "SALEM, Sara" <Sara.Salem@freshfields.com>, "ELMER, Julie (JSE)" <Julie.Elmer@freshfields.com>, "SONG, Tinny" <Tinny.Song@freshfields.com>, Marisa Madaras <marisa.madaras@nortonrosefulbright.com>, Gabriel Culver <gabriel.culver@nortonrosefulbright.com>

**Subject:** RE: Google AdTech (EDTX): Categories and First Priority of States' 30(b)(6) to Google per Special Master Conference

Counsel –
As an update, I have the availability for our new designee on communications topics.  Google designates ▓▓▓▓▓▓ and he is available in New York on May 1 or May 3.

Regards,
- Tina

**From:** SESSIONS, Justina (JKS)
**Sent:** Wednesday, April 24, 2024 3:12 PM
**To:** 'Zeke DeRose III' <Zeke.DeRose@LanierLawFirm.com>; 'Marc B. Collier' <marc.collier@nortonrosefulbright.com>; 'Geraldine W. Young' <geraldine.young@nortonrosefulbright.com>; BAYOUMI, Jeanette <Jeanette.Bayoumi@freshfields.com>
**Cc:** Paul Yetter <pyetter@yettercoleman.com>; MCCALLUM, Robert <rob.mccallum@freshfields.com>; 'Bracewell, Mollie' <mbracewell@yettercoleman.com>; MAHR, Eric (EJM) <Eric.MAHR@freshfields.com>; 'Moran, David' <dmoran@jw.com>; 'Nilsson, William (DAL)' <wnilsson@jw.com>; 'Mark Lanier' <Mark.Lanier@LanierLawFirm.com>; 'Ashley Keller' <ack@kellerpostman.com>; 'John McBride' <john.mcbride@nortonrosefulbright.com>; 'Jonathan Wilkerson' <Jonathan.Wilkerson@LanierLawFirm.com>; 'Young, Trevor (TX)' <trevor.young@oag.texas.gov>; 'Peter M. Hillegas' <peter.hillegas@nortonrosefulbright.com>; 'James Lloyd' <James.Lloyd@oag.texas.gov>; 'Thomas Ray' <thomas.ray@oag.texas.gov>; 'Alex J. Brown' <Alex.Brown@LanierLawFirm.com>; SALEM, Sara <Sara.Salem@freshfields.com>; ELMER, Julie (JSE) <Julie.Elmer@freshfields.com>; SONG, Tinny <Tinny.Song@freshfields.com>; 'Marisa Madaras' <marisa.madaras@nortonrosefulbright.com>; 'Gabriel Culver' <gabriel.culver@nortonrosefulbright.com>
**Subject:** RE: Google AdTech (EDTX): Categories and First Priority of States' 30(b)(6) to Google per Special Master Conference

Dear Zeke –
We respond to the questions and open issues you noted on 30(b)(6) depositions in the attached chart.

I want to highlight two items:

First, with respect to Mr. Mohan.  If Mr. Mohan is required to sit for a 30(b)(1) deposition, he is available on May 3.  If that deposition occurs, Mr. Mohan will also testify as a 30(b)(6) designee regarding the DoubleClick acquisition.  In the event that Mr. Mohan is not required to sit for a 30(b)(1) deposition, Google will provide an alternative designee on the 30(b)(6) topic of the acquisition, and we will provide that availability as soon as possible.

Second, we had previously designated ▓▓▓▓ to testify on some communications-related topics.  In response to some of the requests for additional testimony that you made below and upon further investigation and consideration, we have determined that we will need to designate someone other than ▓▓▓▓.  We are therefore withdrawing our designation of ▓▓▓▓.  We will provide you with the availability for our new designee (who is designated on ▓▓▓▓▓ topics as well as the additional topics discussed in the chart below) as soon as possible.

Regards,
- Tina

**From:** SESSIONS, Justina (JKS)
**Sent:** Tuesday, April 23, 2024 2:31 PM
**To:** Zeke DeRose III <Zeke.DeRose@LanierLawFirm.com>; Marc B. Collier <marc.collier@nortonrosefulbright.com>; Geraldine W. Young <geraldine.young@nortonrosefulbright.com>; BAYOUMI, Jeanette <Jeanette.Bayoumi@freshfields.com>
**Cc:** Paul Yetter <pyetter@yettercoleman.com>; MCCALLUM, Robert <rob.mccallum@freshfields.com>; Bracewell, Mollie <mbracewell@yettercoleman.com>; MAHR, Eric (EJM) <Eric.MAHR@freshfields.com>; Moran, David <dmoran@jw.com>; Nilsson, William (DAL) <wnilsson@jw.com>; Mark Lanier <Mark.Lanier@LanierLawFirm.com>; Ashley Keller <ack@kellerpostman.com>; John McBride <john.mcbride@nortonrosefulbright.com>; Jonathan Wilkerson <Jonathan.Wilkerson@LanierLawFirm.com>; Young, Trevor (TX) <trevor.young@oag.texas.gov>; Thomas Ray <thomas.ray@oag.texas.gov>; Alex J. Brown <Alex.Brown@LanierLawFirm.com>; SALEM, Sara <Sara.Salem@freshfields.com>; ELMER, Julie (JSE) <Julie.Elmer@freshfields.com>; SONG, Tinny <Tinny.Song@freshfields.com>; Marisa Madaras <marisa.madaras@nortonrosefulbright.com>; Gabriel Culver <gabriel.culver@nortonrosefulbright.com>
**Subject:** RE: Google AdTech (EDTX): Categories and First Priority of States' 30(b)(6) to Google per Special Master Conference

Dear Zeke –
I have filled in your chart below regarding start times and locations for Google depositions.

We are working on a response to your earlier email but likely will not have it to you by your deadline of 5 CT.

Regards,
Tina

**From:** Zeke DeRose III <Zeke.DeRose@LanierLawFirm.com>
**Sent:** Monday, April 22, 2024 8:33 PM
**To:** SESSIONS, Justina (JKS) <Justina.Sessions@freshfields.com>; Marc B. Collier <marc.collier@nortonrosefulbright.com>; Geraldine W. Young <geraldine.young@nortonrosefulbright.com>; BAYOUMI, Jeanette <Jeanette.Bayoumi@freshfields.com>

3

**Cc:** Paul Yetter <pyetter@yettercoleman.com>; MCCALLUM, Robert <rob.mccallum@freshfields.com>; Bracewell, Mollie <mbracewell@yettercoleman.com>; MAHR, Eric (EJM) <Eric.MAHR@freshfields.com>; Moran, David <dmoran@jw.com>; Nilsson, William (DAL) <wnilsson@jw.com>; Mark Lanier <Mark.Lanier@LanierLawFirm.com>; Ashley Keller <ack@kellerpostman.com>; John McBride <john.mcbride@nortonrosefulbright.com>; Jonathan Wilkerson <Jonathan.Wilkerson@LanierLawFirm.com>; Young, Trevor (TX) <trevor.young@oag.texas.gov>; Peter M. Hillegas <peter.hillegas@nortonrosefulbright.com>; James Lloyd <James.Lloyd@oag.texas.gov>; Thomas Ray <thomas.ray@oag.texas.gov>; Alex J. Brown <Alex.Brown@LanierLawFirm.com>; SALEM, Sara <Sara.Salem@freshfields.com>; ELMER, Julie (JSE) <Julie.Elmer@freshfields.com>; SONG, Tinny <Tinny.Song@freshfields.com>; Marisa Madaras <marisa.madaras@nortonrosefulbright.com>; Gabriel Culver <gabriel.culver@nortonrosefulbright.com>

**Subject:** Re: Google AdTech (EDTX): Categories and First Priority of States' 30(b)(6) to Google per Special Master Conference

Counsel,

It looks like some of my earlier email from 6:37pm CT actually addresses some of the questions in Tina's letter from this evening as does the below email we were preparing when we received her letter. We will of course review Tina's letter and respond accordingly to anything not addressed.

Tina--I will note that in the letter sent today you note that I emailed on Friday asking about Topic 97 and you note that Mr. ▮▮▮▮ will be designated, and y'all are still working on a date. (It's conceivable that I sent multiple emails on Friday related to 30(b)(6) dates, but I think my email from Friday morning to Paul asked about Topic 66 based on Paul's representation that the deponent will be Mr. Mohan.)

As Google knows, it is imperative that we get dates and times for these deponents. As of Thursday, April 18, Google decided to designate Mr. Mohan to Topic 66 from our February 21st deposition notice—however, tomorrow (April 23) it will have been five days since Google decided who the deponent would be and we still do not have a date to try and work into a schedule, let alone address any conflicts the deposing attorney may have. I understand that 2 of those days were weekend days, but with this little time and this already congested schedule, we need dates immediately. As noted in my previous email please provide names and dates by 5pm CT tomorrow, or earlier.

***Number of Depositions***
Regarding the question about the number of depositions the States have served and the note that you "want to be clear that, absent any order from the Court or prior agreement of the parties, Google will not permit questioning of Google witnesses that exceeds Plaintiffs' deposition limit . . . ." I think we referenced this Thursday in Court and this morning.

I mentioned in Court on Thursday that although there are outstanding depositions noticed that total over 40, there are some unknowns as to what depositions will go forward, but that we do not intend to exceed the limits. I also represented this to Rob this morning (and explained the current situation with former Google employees, outstanding dates from Google, and the motions Google has filed opposing three of the depositions). Similarly, I represented to Rob that we were not going to take Mr. ▮▮▮▮'s deposition in his individual capacity.

To be clear, the States have not exceeded and will not exceed their 40-deposition limit with their taken and currently scheduled/confirmed depositions.

We are assessing whether we will withdraw any third-party subpoenaed depositions (just as Google has withdrawn some of those) and will let you know as soon as we decide any withdrawals. We currently intend to go forward with the noticed Google depositions but, of course, will let you know immediately if we decide to withdraw any of those. Part of the situation the States find themselves in regarding the deposition uncertainty is compounded by the fact that there are some 38 topics Google has not designated a witness on or scheduled. Once we get resolution on those depositions we can adjust accordingly.

***Upcoming Google Witnesses***
For the upcoming scheduled depositions of Google witnesses, please see below whether the States will proceed with those in-person or remotely (the ▮▮▮▮ and ▮▮▮▮ depositions have already been confirmed but are included here for reference). Because we received a date for Mr. ▮▮▮▮'s deposition today, we have not had a chance to assess whether that deposition will go forward in person or remotely but will let you know soon.

The States are also missing the below-highlighted information (e.g., start time) from Google that are necessary to finalize arrangements for those depositions – please send us that information this week.

| Date | Witness Name | In-Person or Remote | Location | Time |
|------|--------------|---------------------|----------|------|
| 4/23/2024 | ▮▮▮▮▮ | Remote | Freshfields Redwood City, CA - 855 Main Street, Redwood City, California 94063 | 9 am PT |
| | | | | |

| 4/26/2024 | ▮ | Remote | Boulder | 9 am MT |
| 4/26/2024 | ▮ | In-Person | Freshfields Redwood City, CA - 855 Main Street, Redwood City, California 94063 | 9am PT |
| 4/29/2024 | ▮ | In-Person | New York - Freshfields NY office (3 World Trade Center, 175 Greenwich St 52nd Floor, New York, NY 10007) | 9 am ET |
| 4/30/2024 | ▮ | Remote | Freshfields DC office, 700 13th St., NW 10th Floor, Washington D.C. 20005 | 9 am ET |
| 4/30/2024 | ▮ | Remote | Freshfields Redwood City, CA | 9 am PT |
| 5/1/2024 | ▮ | In-Person | Axinn New York, 14 West 47th Street, New York, NY 10036 | 9 am ET |
| 5/1/2024 | ▮ | Remote | Freshfields New York | 9 am ET |
| 5/1/2024 | ▮ | TBD | Freshfields Redwood | 9 am PT |
| 5/2/2024 | ▮ | Remote | Axinn New York, 14 West 47th Street, New York, NY 10036 | 9 am ET |
| 5/2/2024 | ▮ | Remote | Freshfields New York | 9 am PT |

**From:** Zeke DeRose III <Zeke.DeRose@LanierLawFirm.com>

**Date:** Monday, April 22, 2024 at 6:37 PM

**To:** "SESSIONS, Justina (JKS)" <Justina.Sessions@freshfields.com>, "Marc B. Collier" <marc.collier@nortonrosefulbright.com>, "Geraldine W. Young" <geraldine.young@nortonrosefulbright.com>, "BAYOUMI, Jeanette" <Jeanette.Bayoumi@freshfields.com>
**Cc:** Paul Yetter <pyetter@yettercoleman.com>, "MCCALLUM, Robert" <rob.mccallum@freshfields.com>, "Bracewell, Mollie" <mbracewell@yettercoleman.com>, "MAHR, Eric (EJM)" <Eric.MAHR@freshfields.com>, "Moran, David" <dmoran@jw.com>, "Nilsson, William (DAL)" <wnilsson@jw.com>, Mark Lanier <Mark.Lanier@LanierLawFirm.com>, Ashley Keller <ack@kellerpostman.com>, John McBride <john.mcbride@nortonrosefulbright.com>, Jonathan Wilkerson <Jonathan.Wilkerson@LanierLawFirm.com>, "Young, Trevor (TX)" <trevor.young@oag.texas.gov>, "Peter M. Hillegas" <peter.hillegas@nortonrosefulbright.com>, James Lloyd <James.Lloyd@oag.texas.gov>, Thomas Ray <thomas.ray@oag.texas.gov>, "Alex J. Brown" <Alex.Brown@LanierLawFirm.com>, "SALEM, Sara" <Sara.Salem@freshfields.com>, "ELMER, Julie (JSE)" <Julie.Elmer@freshfields.com>, "SONG, Tinny" <Tinny.Song@freshfields.com>, Marisa Madaras <marisa.madaras@nortonrosefulbright.com>, Gabriel Culver <gabriel.culver@nortonrosefulbright.com>
**Subject:** Re: Google AdTech (EDTX): Categories and First Priority of States' 30(b)(6) to Google per Special Master Conference

Counsel,

As noted at the hearing last week, the States have managed and provided a chart to Google with dates, locations, witness names, links, and topics for all 17 depositions (pasted in below).

We request Google do the same for currently scheduled depositions where we are still needing information on start times, etc. The attached excel spreadsheet shows on the "Scheduled 30b6" tab highlighted info we are still missing from Google.
**To date there are still 38 topics we do not have witnesses or dates from Google on.** This is the first tab "Outstanding 30b6" on our attached sheet and a summary is pasted in below with the highlighted information we are still missing from Google.

Mohan (#66) and ▮ (#97)
Additionally, Mr. Yetter noted on Thursday that Google was providing Mr. Mohan and Mr. ▮ on topic 66 and Mr. ▮ on topic 97 (that is Mr. ▮s 43rd substantive topic he has been designated on).

**Please provide dates for those two depositions.**

(Mr. McBride sent a separate note about scheduling the remainder of Mr. ███ s deposition and as Judge Jordan noted on Thursday and in the past, the parties are going to get the discovery they need and are entitled to. Mr. ███ is designated on 43 topics so we need to get a date for the rest of the 30(b)(6) topics he has been noticed for. As noted to Judge Jordan we believe it will take 3 days to sufficiently address the 43 topics, but the States conceded and are willing to accept 2 days.)

Google is correct that the States have raised the alarm (and have been raising the alarm) over the schedule due to the volume of documents recently produced and the lack of witnesses and dates for 30(b)(6) depositions provided by Google. Google's claim is that the States are manufacturing a reason some depositions need to occur after May 3. Google is, and has been, in the driver's seat on this one and we look forward to Google's final position on these topics.

**Please provide dates and witnesses for the outstanding topics listed below or confirm Google will not provide a witness and its final objection. Please return this chart by Tuesday at 5pm CT.**

If we are unable to reach a resolution we will request a time with the Special Master on Thursday to get resolution so we can get these final depositions scheduled, but I'm still hopeful we can find a path forward.

| TOPIC No./Nos. (*Pending before Special Master) | Date(s) | Start Time | Witness | Location |
|---|---|---|---|---|
| Topic 66 | | | *Neal Mohan/*███ *per Paul Yettter 4/18/24* | |
| *Topics 1, 2, 3, 4, and 16 | | | | |
| Topic 6 | | | | |
| *Topics 17-19 | | | | |
| Topic 22 | | | | |
| Topics 29 – 30 | | | | |
| *Topic 36 | | | | |
| Topics 40-42, 44, 51-52: | | | | |
| Topic 45 | | | | |
| Topic 55 | | | | |
| Topic 65 | | | | |
| Topic 74 | | | | |
| Topics 75 and 76 | | | | |
| Topic 83, Topic 104(f), 104(i), 104(q) | | | | |
| Topic 104(c) | | | | |
| Topic 104 (e), (j), (k), (n) (q) | | | | |
| Topics 105-106 | | | | |

███ **Topics**

**Topics 26, 56, 88, 94**: These topics all involve, in one form or another, issues related to experiments that Google has performed in the context of its Ad Tech Products/Mechanics. You have proposed having us identify specific analyses and experiments for you to consider, but as we have noted, we do not have access to a list of the experiments that Google ran or analyses that Google has conducted, and you have represented to us that there is no way to generate a comprehensive list. Recent deposition testimony suggests that there are some ███ experiments available at any given time and that Google engineers make over ███ configuration changes to those experiments each year. It would be unreasonably burdensome to require the States to sift through Google's 6 million document production and attempt to determine what all of these experiments are (assuming, of course, that such information even exists in Google's production, which the States do not believe to be the case), let alone which are relevant to the conduct at issue here. Google should therefore investigate which experiments are relevant to this case and prepare a witness to testify regarding the same.

**Topic 34**: We requested a witness who can testify regarding any information that is available to Google that Google does not make available to Advertisers or Publishers and Google's reasons for not providing such information to Advertisers or Publishers.  Google has responded that Messrs. ▮▮▮▮ and ▮▮▮▮ will testify regarding "the information that is available by Google product features," but that is far narrower than what the States have requested.  Google has proposed that ▮▮▮▮ will testify regarding "the information that Google makes available to customers using Google Ad Manager" and that ▮▮▮▮ will testify regarding "information that Google makes available to advertiser customers using Display and Video 360 and/or Google Ads."  Google has suggested that "[q]uestions about whether Google makes information available to customers and why/why not should be directed to them."  Google's suggestion is nonsensical.  Customers will not know why or why not Google makes available information to them; only Google will.  Furthermore, it will be nigh impossible for the States to cobble together the testimony of four individuals in order to identify what information is in fact known to Google versus what is shared with publishers.

**Topic 43**:  Google has designated ▮▮▮▮ to testify regarding Google's "policies and procedures for public statements to customers about the Google Ad Tech Products referenced in the Fourth Amended Complaint and/or for customer notifications regarding product changes for those same products" and has "offered to designate a witness [also Ms. ▮▮▮▮ regarding Google's communications programs or strategies relating to Reserve Price Optimization, Dynamic Revenue Share, and Bernanke."  This topic is far broader and Google's designation ignores that this topic seeks information on communications regarding each Ad Tech Product and/or Ad Tech Auction Mechanic (not just RPO, DRS, and Bernanke) and internal discussions regarding whether, to what extent, and with whom You should disclose or externally discuss Your Ad Tech Auction Mechanic(s), and the effect thereof.

**Topic 50**:  This topic is: "Statements or communications (internal or external) regarding the benefits or drawbacks of any auction types, including the transparency, fairness, and truthfulness of any auction type, the benefits and drawbacks of second price auctions and alternative auction models, Your reasons for switching from an alleged second price auction, including to a first price auction in or around 2019, and internal discussions regarding whether, to what extent, and with whom You should disclose or externally discuss such benefits and drawbacks, and the effects thereof."  In response Google stated that they were designating ▮▮▮▮ to "discuss the reasons that Google changed AdX from a second price auction to a first-price auction."  That is only a small sliver of this topic; please identify a witness who can speak to the other aspects of this topic.

**Topic 91**:  This topic seeks to explore the ways in which Google's Ad Tech products (including the Chrome browser) interact with each other, as well as with third party Ad Tech products.  Google has taken the position that this topic is too broad and vague but that Mr. ▮▮▮▮ is designated to testify regarding a very small subset of product interactions.  But Google is in the best position to explain the interaction of its products both internally and in connection with 3rd party products and the States are entitled to explore this subject with one or more witnesses.

**Topic 98 (c, f, g, h)**: Despite the clear relevance of these topics, Google has refused to provide a witness.

**Topic 100**: Google has failed to identify a witnesses for most of the subtopics for topic 100, which relate to issues such as attempts by publishers to circumvent Unified Pricing Rules, publisher use of per-buyer price floors, analysis of the impact of UPR on the adoption of Header Bidding, the impact of UPR separate and apart from the move to a first-price acution, along with various UPR metrics. Instead, Google has offered only ▮▮▮▮ "to testify on the operation, design, and reasons that Google implemented UPR." Google contents that this designation "covers the majority of this topic, to the extent that Google performed any such analyses in the ordinary course of business." Google has refused to provide a witness on Topic 100(d).

**Topic 101**:  As with topic 100, Google has failed to identify a witnesses for many of the subtopics for topic 101, including those directed to various metrics and impacts related to RPO, internal discussion regarding RPO and its impact, the decision to implement RPO without disclosing RPO.

**Topic 104 (a, b, h, l, o, p)**:  Google has not designated a witness on these sub-topics, despite suggesting in its April 15, 2024 letter that it had addressed them in its April 12, 2024 correspondence.

### 30(b)(6)'s of the States

| | | |
|---|---|---|
| Texas | April 17 (completed) | In Person<br><br>9 am CT start<br>NRF Austin<br>98 San Jacinto Blvd Ste 1100<br>Austin, TX 78701 |
| Florida | April 22 (completed) | In Person<br><br>9:30 am ET start<br>Collins Building<br>107 W Gaines St<br>Tallahassee, FL 32399 |
| South Carolina | April 23 (confirmed date) | Remote<br><br>9 am ET start |
| Kentucky | April 25 (confirmed date) | In Person<br>▮▮▮▮ |

| | | |
|---|---|---|
| | | 9 am ET start<br>310 Whittington Parkway<br>Suite 101<br>Louisville, KY 40222 |
| Mississippi | April 25 (confirmed date)<br>██████████████ | In Person<br><br>9:30 am CT start<br><br>After 1st depo start<br>550 High Street<br>Jackson, MS |
| Indiana | April 25-26 (confirmed dates)<br>April 25 –<br>██████ Topics 1-5, 11-14, 16, 26-28<br><br>April 26 –<br>████████ Topic 32 | In Person<br>1 pm ET start April 25<br>10 am ET start April 26<br>302 W Washington Street<br>Indiana Gov't Center South<br>Fifth Floor<br>Indianapolis, IN 46204 |
| Missouri | April 26 (confirmed date) | Remote<br>████████<br>9 am CT start |
| Nevada | April 29 (confirmed date) | Remote<br>████████<br>8:30 am to 4:30 pm PT |
| South Dakota | April 29 (confirmed date) | In Person<br>████████<br>8 am CT start<br>1302 E Hwy 14<br>Pierre, SD 57501 |
| Utah | April 30 (confirmed date)<br>██████ – Topics 1-3 (AGO only), 4-5 (but not<br>DCP ad agency purchases or DCP's doc retention<br>policies), 11-14, 16, 26-27 (both AGO and DCP)<br>█████ Topics 1-3 (DCP), 4-5 (as they relate to<br>DCP ad agency purchases and DCP doc retention<br>policies), 28, 32 (DCP only) | Remote<br><br>8 am PT start<br>████████<br>1 pm PT start |
| Puerto Rico | April 30 (confirmed date) | In Person<br>████████<br>9:30 am ET start<br>PR DOJ<br>████████<br>677 Esq Ave Jesus T Pinero<br>San Juan, Puerto Rico |
| Montana | (confirmed dates)<br>April 30 – ██████ Topics 1-3<br>May 1 ██████ Remaining topics | Remote<br>████ am MT start<br>9 am MT start |
| Arkansas | May 1 (confirmed date) | Remote<br>████████<br>9 am CT start |
| North Dakota | May 2 (confirmed date) | Remote<br>████████<br>8 am CT start |
| Idaho | May 3 (confirmed date) | Remote<br>████████<br>9:30 am MT start |
| Louisiana | May 3 (confirmed date) | In Person<br>████████<br>9 am CT start<br>Louisiana AG office* |

| | | Baton Rouge |
|---|---|---|
| Alaska | May 3 (confirmed date) | Remote<br><br>Noon Alaska start |

---

**From:** Zeke DeRose III <Zeke.DeRose@LanierLawFirm.com>

**Date:** Friday, April 19, 2024 at 11:32 AM

**To:** "SESSIONS, Justina (JKS)" <Justina.Sessions@freshfields.com>, "Marc B. Collier" <marc.collier@nortonrosefulbright.com>, "Geraldine W. Young" <geraldine.young@nortonrosefulbright.com>, "BAYOUMI, Jeanette" <Jeanette.Bayoumi@freshfields.com>

**Cc:** Paul Yetter <pyetter@yettercoleman.com>, "MCCALLUM, Robert" <rob.mccallum@freshfields.com>, "Bracewell, Mollie" <mbracewell@yettercoleman.com>, "MAHR, Eric (EJM)" <Eric.MAHR@freshfields.com>, "Moran, David" <dmoran@jw.com>, "Nilsson, William (DAL)" <wnilsson@jw.com>, Mark Lanier <Mark.Lanier@LanierLawFirm.com>, Ashley Keller <ack@kellerpostman.com>, John McBride <john.mcbride@nortonrosefulbright.com>, Jonathan Wilkerson <Jonathan.Wilkerson@LanierLawFirm.com>, "Young, Trevor (TX)" <trevor.young@oag.texas.gov>, "Peter M. Hillegas" <peter.hillegas@nortonrosefulbright.com>, James Lloyd <James.Lloyd@oag.texas.gov>, Thomas Ray <thomas.ray@oag.texas.gov>, "Alex J. Brown" <Alex.Brown@LanierLawFirm.com>, "SALEM, Sara" <Sara.Salem@freshfields.com>, "ELMER, Julie (JSE)" <Julie.Elmer@freshfields.com>, "SONG, Tinny" <Tinny.Song@freshfields.com>, Marisa Madaras <marisa.madaras@nortonrosefulbright.com>, Gabriel Culver <gabriel.culver@nortonrosefulbright.com>

**Subject:** Re: Google AdTech (EDTX): Categories and First Priority of States' 30(b)(6) to Google per Special Master Conference

Mr. Yetter,

During the afternoon session of the Special Master Conference yesterday, you gave us the name of the representative Google would put up on topic number 66. Topic number 66 was one of the 30 – 50 topics we do did not have a witness or clarification on from my April 10 and April 12 emails below. We appreciate Google providing a witness name on one of the outstanding topics and that that witness is not Mr. ▮▮▮

**For Mr. Mohan—can you provide a date and location for Mr. Mohan's 30(b)(6) on topic number 66 and whether you intend to designate Mr. Mohan on any of the other topics so we can get the deposition scheduled?**

If Google has any additional names and dates for the not-yet designated topics, including topic 97, getting those names and dates would be helpful as well.

Thank you again for your help!

Zeke

| 66 | Google's acquisition of DoubleClick and any exclusive access or rights afforded to AdX after and as a result of that acquisition. | "The real-time interoperation of DFP and AdX through 2020" & "the operation, design, and expected benefits of Dynamic Allocation, Enhanced Dynamic Allocation, Reserve Price Optimization, Dynamic Revenue Share, Unified Pricing Rules, Open Bidding, and the material features of the Google AdX auction as relevant to Plaintiffs' Fourth Amended Complaint, from 2012 – 2020" | Will Mr. ▮▮▮ be prepared to testify regarding Google's acquisition of DoubleClick and any exclusive access or rights afforded to AdX as a result of that acquisition? |
|---|---|---|---|

---

**From:** "SESSIONS, Justina (JKS)" <Justina.Sessions@freshfields.com>

**Date:** Tuesday, April 16, 2024 at 8:59 PM

**To:** Zeke DeRose III <Zeke.DeRose@LanierLawFirm.com>, "Marc B. Collier" <marc.collier@nortonrosefulbright.com>, "Geraldine W. Young" <geraldine.young@nortonrosefulbright.com>, "BAYOUMI, Jeanette" <Jeanette.Bayoumi@freshfields.com>

**Cc:** Paul Yetter <pyetter@yettercoleman.com>, "MCCALLUM, Robert" <rob.mccallum@freshfields.com>, "Bracewell, Mollie" <mbracewell@yettercoleman.com>, "MAHR, Eric (EJM)" <Eric.MAHR@freshfields.com>, "Moran, David" <dmoran@jw.com>, "Nilsson, William (DAL)" <wnilsson@jw.com>, Mark Lanier <Mark.Lanier@LanierLawFirm.com>, Ashley Keller

<ack@kellerpostman.com>, John McBride <john.mcbride@nortonrosefulbright.com>, Jonathan Wilkerson <Jonathan.Wilkerson@LanierLawFirm.com>, "Young, Trevor (TX)" <trevor.young@oag.texas.gov>, "Peter M. Hillegas" <peter.hillegas@nortonrosefulbright.com>, James Lloyd <James.Lloyd@oag.texas.gov>, Thomas Ray <thomas.ray@oag.texas.gov>, "Alex J. Brown" <Alex.Brown@LanierLawFirm.com>, "SALEM, Sara" <Sara.Salem@freshfields.com>, "ELMER, Julie (JSE)" <Julie.Elmer@freshfields.com>, "SONG, Tinny" <Tinny.Song@freshfields.com>, Marisa Madaras <marisa.madaras@nortonrosefulbright.com>, Gabriel Culver <gabriel.culver@nortonrosefulbright.com>

**Subject:** RE: Google AdTech (EDTX): Categories and First Priority of States' 30(b)(6) to Google per Special Master Conference

Dear Zeke,

Plaintiffs' last-minute attempt to cancel Mr. ████'s deposition is an unfair burden on the witness and creates needless delay. Google has no choice but to raise this issue with Special Master Moran in the morning.

Google complied with the Special Master's order that Google begin scheduling 30(b)(6) depositions and on March 29 designated Mr. ████ on various topics and offered Mr. ████ April 19 for his deposition. Since that time, you have asked that we expand the scope of those designations, contending that various subparts of your topics were not covered. We obliged (in part by confirming that other witnesses will handle subjects and in part by confirming that Mr. ████ could testify as to some of your questions). But now, even though Google has done exactly what you requested, you are complaining that the scope of the designation is somehow too broad.  The breadth of Plaintiffs 30(b)(6) notice is a problem of their own making.  Moreover, you rejected our offers to designate 30(b)(1) testimony as 30(b)(6) testimony and rejected our offers to provide written responses on certain topics.  You have also complained to us that too many depositions are scheduled for the final week of fact discovery.  In light of this history it is unreasonable to demand that we reschedule Mr. ████s previously confirmed deposition within such a compressed timeframe.

We are prepared to proceed with Mr. ████s deposition as planned this Friday.  He has been prepared to address the 30(b)(6) topics for which he's been designated, and Plaintiffs should proceed as scheduled.

Your sudden demand to reschedule Mr. ████s deposition without a legitimate reason and demand that he sit for multiple days comes at the same time as various other correspondence that suggests that Plaintiffs are now looking to extend the fact discovery period set by the Court.  Google has made tremendous efforts to address Plaintiffs' ever-expanding demands within the period that has been set for fact discovery, including to schedule the depositions you have demanded and to designate and prepare witnesses on the over-100-topic sprawling 30(b)(6) notice on which you have sought testimony.

There is no reason Mr. ████ should not be designated for the topics on which we have identified him and you have not identified any legitimate reason for him to sit for more than 7 hours as the rules contemplate and complete his deposition on Friday, as previously agreed.  We remain willing to work with you, however, should there be a necessity for him to sit for deposition slightly longer than 7 hours on the record.

Regards,
Tina

**From:** Zeke DeRose III <Zeke.DeRose@LanierLawFirm.com>
**Sent:** Tuesday, April 16, 2024 4:00 PM
**To:** SESSIONS, Justina (JKS) <Justina.Sessions@freshfields.com>; Marc B. Collier <marc.collier@nortonrosefulbright.com>; Geraldine W. Young <geraldine.young@nortonrosefulbright.com>; BAYOUMI, Jeanette <Jeanette.Bayoumi@freshfields.com>
**Cc:** Paul Yetter <pyetter@yettercoleman.com>; MCCALLUM, Robert <rob.mccallum@freshfields.com>; Bracewell, Mollie <mbracewell@yettercoleman.com>; MAHR, Eric (EJM) <Eric.MAHR@freshfields.com>; Moran, David <dmoran@jw.com>; Nilsson, William (DAL) <wnilsson@jw.com>; Mark Lanier <Mark.Lanier@LanierLawFirm.com>; Ashley Keller <ack@kellerpostman.com>; John McBride <john.mcbride@nortonrosefulbright.com>; Jonathan Wilkerson <Jonathan.Wilkerson@LanierLawFirm.com>; Young, Trevor (TX) <trevor.young@oag.texas.gov>; Peter M. Hillegas <peter.hillegas@nortonrosefulbright.com>; James Lloyd <James.Lloyd@oag.texas.gov>; Thomas Ray <thomas.ray@oag.texas.gov>; Alex J. Brown <Alex.Brown@LanierLawFirm.com>; SALEM, Sara <Sara.Salem@freshfields.com>; ELMER, Julie (JSE) <Julie.Elmer@freshfields.com>; SONG, Tinny <Tinny.Song@freshfields.com>; Marisa Madaras <marisa.madaras@nortonrosefulbright.com>; Gabriel Culver <gabriel.culver@nortonrosefulbright.com>
**Subject:** Re: Google AdTech (EDTX): Categories and First Priority of States' 30(b)(6) to Google per Special Master Conference

Hi Tina,

Mr. ████ has been designated on 42 topics and we have been discussing this issue for a couple weeks now. Your line-by-line response does not resolve our concerns over the scope of your designation for Mr. ████ which remain numerous.

We cannot agree to limit the Plaintiff States' rights to discovery to be predicated on a scenario where if we "have a reasonable and discrete number of additional unanswered questions at the conclusion of seven hours, [Google] will be happy to discuss."

We have no choice but to pull down Friday's deposition of Mr. ████ and hold it open pending conversation with the Special Master on Thursday.

We envision that, to depose a Google representative or representatives on 42 topics, it will require 2-3 days. **Please provide dates and times for Mr. ████ or other Google representatives for 3 days for these 42 topics accordingly.**

Zeke

**From:** "SESSIONS, Justina (JKS)" <Justina.Sessions@freshfields.com>

**Date:** Tuesday, April 16, 2024 at 2:58 PM

**To:** Zeke DeRose III <Zeke.DeRose@LanierLawFirm.com>, "Marc B. Collier" <marc.collier@nortonrosefulbright.com>, "Geraldine W. Young" <geraldine.young@nortonrosefulbright.com>, "BAYOUMI, Jeanette" <Jeanette.Bayoumi@freshfields.com>

**Cc:** Paul Yetter <pyetter@yettercoleman.com>, "MCCALLUM, Robert" <rob.mccallum@freshfields.com>, "Bracewell, Mollie" <mbracewell@yettercoleman.com>, "MAHR, Eric (EJM)" <Eric.MAHR@freshfields.com>, "Moran, David" <dmoran@jw.com>, "Nilsson, William (DAL)" <wnilsson@jw.com>, Mark Lanier <Mark.Lanier@LanierLawFirm.com>, Ashley Keller <ack@kellerpostman.com>, John McBride <john.mcbride@nortonrosefulbright.com>, Jonathan Wilkerson <Jonathan.Wilkerson@LanierLawFirm.com>, "Young, Trevor (TX)" <trevor.young@oag.texas.gov>, "Peter M. Hillegas" <peter.hillegas@nortonrosefulbright.com>, James Lloyd <James.Lloyd@oag.texas.gov>, Thomas Ray <thomas.ray@oag.texas.gov>, "Alex J. Brown" <Alex.Brown@LanierLawFirm.com>, "SALEM, Sara" <Sara.Salem@freshfields.com>, "ELMER, Julie (JSE)" <Julie.Elmer@freshfields.com>, "SONG, Tinny" <Tinny.Song@freshfields.com>, Marisa Madaras <marisa.madaras@nortonrosefulbright.com>, Gabriel Culver <gabriel.culver@nortonrosefulbright.com>

**Subject:** RE: Google AdTech (EDTX): Categories and First Priority of States' 30(b)(6) to Google per Special Master Conference

Dear Zeke –
Attached please find a line-by-line response to the questions outlined in your chart below.  In short, while Mr. ▮▮▮ is not designated to testify on the full scope of every topic/question that you outline below, other witnesses fill in the other points that you identified so we believe that our existing designations have these topics and your questions covered.  We also think this gives you the clarification you've asked for on the scope of Mr. ▮▮▮'s designations.

With respect to your request for additional deposition time with Mr. ▮▮▮ or any other witnesses, the point may be moot in light of the additional information and clarifications we've provided in the attached chart.  But to the extent it is not, we see no reason to deviate from the Federal Rules and the presumption that the deposition of any 30(b)(6) designee is limited to seven hours.  If that were not the case, Plaintiffs could obtain additional deposition time simply by breaking their 30(b)(6) notice into myriad individual topics and arguing that the number of topics merited additional time.  Your concern that "Google could simply designate a single rep for any and all topics and seek to limit corporate testimony in this case to 7 hours" is obviously not what has happened here, as Google has designated eight different witnesses in response to Plaintiffs' 30(b)(6) notice.  It is also important to note that Plaintiffs have access to a significant amount of existing discovery on the majority of the topics in the 30(b)(6) notice, including prior deposition testimony on many of the same subjects.  To the extent that you remain concerned about the amount of deposition time available to you, we'd encourage you to accept Google's several offers to respond to certain portions of the 30(b)(6) notice in writing.  Finally, we do not intend to be unreasonable with respect to a precise time limit for Mr. ▮▮▮'s 30(b)(6) deposition.  If Plaintiffs have conducted the deposition efficiently and have a reasonable and discrete number of additional unanswered questions at the conclusion of seven hours, we will be happy to discuss.

Regards,
Tina

**From:** Zeke DeRose III <Zeke.DeRose@LanierLawFirm.com>

**Sent:** Tuesday, April 16, 2024 10:32 AM

**To:** SESSIONS, Justina (JKS) <Justina.Sessions@freshfields.com>; Marc B. Collier <marc.collier@nortonrosefulbright.com>; Geraldine W. Young <geraldine.young@nortonrosefulbright.com>; BAYOUMI, Jeanette <Jeanette.Bayoumi@freshfields.com>

**Cc:** Paul Yetter <pyetter@yettercoleman.com>; MCCALLUM, Robert <rob.mccallum@freshfields.com>; Bracewell, Mollie <mbracewell@yettercoleman.com>; MAHR, Eric (EJM) <Eric.MAHR@freshfields.com>; Moran, David <dmoran@jw.com>; Nilsson, William (DAL) <wnilsson@jw.com>; Mark Lanier <Mark.Lanier@LanierLawFirm.com>; Ashley Keller <ack@kellerpostman.com>; John McBride <john.mcbride@nortonrosefulbright.com>; Jonathan Wilkerson <Jonathan.Wilkerson@LanierLawFirm.com>; Young, Trevor (TX) <trevor.young@oag.texas.gov>; Peter M. Hillegas <peter.hillegas@nortonrosefulbright.com>; James Lloyd <James.Lloyd@oag.texas.gov>; Thomas Ray <thomas.ray@oag.texas.gov>; Alex J. Brown <Alex.Brown@LanierLawFirm.com>; SALEM, Sara <Sara.Salem@freshfields.com>; ELMER, Julie (JSE) <Julie.Elmer@freshfields.com>; SONG, Tinny <Tinny.Song@freshfields.com>; Marisa Madaras <marisa.madaras@nortonrosefulbright.com>; Gabriel Culver <gabriel.culver@nortonrosefulbright.com>

**Subject:** Re: Google AdTech (EDTX): Categories and First Priority of States' 30(b)(6) to Google per Special Master Conference

Hi Tina,

Thank you for your email.  We share your desire to resolve these issues quickly, given the limited time remaining in discovery and the crowded deposition calendar.

Given the continued uncertainty surrounding the scope of the topics for which you have designated Mr. ▮▮▮ and the volume of technical material you have designated him to cover, <u>we ask that you provide us – no later than tomorrow (Wednesday) afternoon – a new date for Mr. ▮▮▮s deposition that will allow for at least two consecutive days of questioning</u>, as well as responses to the questions on scope that we sent last Friday.

We can then raise these issue with the Special Master, if needed, at the hearing on Thursday to find a path forward but need to know Google's position on providing a new date for Mr. ▮▮▮ that will allow for two consecutive days as well as

the notes below.

We note that we will need multiple (consecutive) days with Mr. ▆▆▆—even if Mr. ▆▆▆ s testimony is limited to only: the "operation, design, and expected benefits of Dynamic Allocation, Enhanced Dynamic Allocation, Reserve Price Optimization, Dynamic Revenue Share, Unified Pricing Rules, Open Bidding, and the material features of the Google AdX auction as relevant to Plaintiffs' Fourth Amended Complaint, from 2012 – 2020."

As we previously noted, limiting his testimony to just 7 hours would essentially allow us only an hour for each of the major issues in the case that Mr. ▆▆▆ has been designated to cover (e.g., 1 hour on DRS, 1 hour RPO, 1 hour on UPR, etc.), which is simply not feasible or workable. Moreover, you have designated Mr. ▆▆▆ as witness on some 42 topics, which is over 1/3 of the 30(b)(6) topics noticed by the States.

We are still waiting for you to confirm the exact scope of Mr. ▆▆▆ s designations, which will likely impact the amount of time we will need with this witness. Until we get a response on this, we are extremely limited in our ability to prepare.

As spelled out in detail in our chart below, **we need to understand if Mr. ▆▆▆ is being offered solely in a technical capacity, or if he will be testifying regarding issues such as the DoubleClick acquisition (Topic 66), communications with customers regarding auction mechanics, business/strategy decisions made by Google regarding various auction mechanics, etc.** And we need to know if Mr. ▆▆▆ will be prepared to testify on the sell-side auction mechanics through the present, or if his testimony will be limited to 2012-2020 as you originally proposed.

Thank you and we are happy, as always, to discuss your responses after we get them.

Zeke

**From:** "SESSIONS, Justina (JKS)" <Justina.Sessions@freshfields.com>
**Date:** Friday, April 12, 2024 at 5:42 PM
**To:** Zeke DeRose III <Zeke.DeRose@LanierLawFirm.com>, "Marc B. Collier" <marc.collier@nortonrosefulbright.com>, "Geraldine W. Young" <geraldine.young@nortonrosefulbright.com>, "BAYOUMI, Jeanette" <Jeanette.Bayoumi@freshfields.com>
**Cc:** Paul Yetter <pyetter@yettercoleman.com>, "MCCALLUM, Robert" <rob.mccallum@freshfields.com>, "Bracewell, Mollie" <mbracewell@yettercoleman.com>, "MAHR, Eric (EJM)" <Eric.MAHR@freshfields.com>, "Moran, David" <dmoran@jw.com>, "Nilsson, William (DAL)" <wnilsson@jw.com>, Mark Lanier <Mark.Lanier@LanierLawFirm.com>, Ashley Keller <ack@kellerpostman.com>, John McBride <john.mcbride@nortonrosefulbright.com>, Jonathan Wilkerson <Jonathan.Wilkerson@LanierLawFirm.com>, "Young, Trevor (TX)" <trevor.young@oag.texas.gov>, "Peter M. Hillegas" <peter.hillegas@nortonrosefulbright.com>, James Lloyd <James.Lloyd@oag.texas.gov>, Thomas Ray <thomas.ray@oag.texas.gov>, "Alex J. Brown" <Alex.Brown@LanierLawFirm.com>, "SALEM, Sara" <Sara.Salem@freshfields.com>, "ELMER, Julie (JSE)" <Julie.Elmer@freshfields.com>, "SONG, Tinny" <Tinny.Song@freshfields.com>, Marisa Madaras <marisa.madaras@nortonrosefulbright.com>, Gabriel Culver <gabriel.culver@nortonrosefulbright.com>
**Subject:** RE: Google AdTech (EDTX): Categories and First Priority of States' 30(b)(6) to Google per Special Master Conference

Dear Zeke,

Thank you for the productive call yesterday. It was helpful to hear your clarification of certain outstanding topics. In the interest of resolving our negotiations quickly so that we can get to the important work of fully preparing our witnesses, we propose the following on the topics that we discussed yesterday. We note, however, that our agreement to respond to additional topics as outlined below is subject to our reaching a global agreement on the remaining scope of the States' 30(b) (6) notice. We are reviewing the long list of questions and requests that you sent earlier today and will respond as quickly as we can. We're trying to bring these discussions to a close and finish identifying and preparing the Google witnesses, which benefits both sides, so we cannot agree to keep providing incremental additional designations while the scope of the States' demands also expand.

Topic 6
Google will designate a witness or witnesses to testify regarding the internal and external nomenclature commonly used for the Google Ad Tech Products and Ad Tech Auction Mechanics relevant to this case.

I say "commonly used" because we cannot reasonably prepare a witness to be able to list every single term that anyone may have used for any of the products or mechanics at issue, but we will make a good-faith effort to prepare witnesses on the nomenclature.

Topics 29 - 30
We understand from our discussion that Plaintiffs are not looking for Google to conduct an exhaustive investigation and identify every individual that may have worked on any of the products or optimizations in this case, despite the broad literal wording of these topics. Instead, we understand that Plaintiffs would like to ask 30(b)(6) witnesses about the employees

generally responsible for the Ad Tech Auction Mechanics at issue in the case, and what those employees' roles were. We further understand that you want to be able to ask 30(b)(6) witnesses who they would go to if the witness does not know the answer to a particular technical question. To that end, Google proposes to designate a witness or witnesses to testify regarding:

The Google employees primarily responsible for conceiving and implementing the Ad Tech Auction Mechanics at issue in the case.

Topic 22

We understand from our discussion that Plaintiffs are looking for testimony regarding the types of integrations that Google has with third-party products, focused on ad servers, ad exchanges, and ad buying tools. Examples of questions might be exploring the parties (or types of parties) that Google's ad servers, ad exchanges, and ad buying tools integrate with and how that integration is accomplished (e.g. via API, etc.). Google proposes to designate a witness or witnesses to testify regarding:

The nature or types of integrations that Google's ad server, ad exchange, and ad buying tools have with third-party products relevant to display advertising.

Topic 36

We agreed that the scope of discovery relating to the privacy sandbox is subject to dispute and will be determined soon. I noted for planning purposes that ▇▇▇▇▇ would likely be Google's designee regarding the Privacy Sandbox.

Topics 40-42, 44, 51-52:

We understand from our discussion that Plaintiffs are looking for testimony regarding the communications programs or strategies surrounding the specific Auction Mechanics at issue in the case. We propose a slight further narrowing of these topics to limit the scope to the Auction Mechanics that Plaintiffs specifically identify as part of their deceptive trade practices claims, as the communications programs or strategies surrounding other Auction Mechanics (on which plaintiffs have no claim relating to disclosure or lack of disclosure) would not be relevant. Therefore, Google proposes to designate a witness or witnesses to testify regarding:

Google's communications programs or strategies relating to Reserve Price Optimization, Dynamic Revenue Share, and Bernanke.

Topic 45: This Topic is "The number and identity of Publishers and Advertisers to which You disclosed each Ad Tech Auction Mechanic, in full or in part, and the specific disclosures made to each such Publisher and Advertiser." As drafted, this Topic would require Google to investigate and then identify each publisher or advertiser to whom a disclosure was made, and identify the specific disclosure. This topic does not require follow-up questions or extended explanation. Therefore, although Google believes that the topic is improper and objectionable, Google proposes to:

identify its disclosures of Reserve Price Optimization, Dynamic Revenue Share, and Bernanke in writing on or before May 3, 2024.

Topic 55: This Topic is "Complaints, concerns, or questions by any Publisher, Advertiser, or other third-party relating to the fairness, transparency of, or bias in Your Ad Auctions, and Your responses thereto, including relating to whether AdX ran a second-price auction prior to 2019." Google cannot reasonably prepare a witness to testify on this Topic. During our meet and confer, you expressed that you were interested in common complaints or the most frequent complaints. Unfortunately that clarification does not help, as I don't know how we would go about determining whether complaints, concerns, or questions were common and there might be significant nuance to the differences among individual communications.

Topic 65: As detailed in my letter dated April 9, we believe that this topic as written seeks privileged information, is overly broad and unduly burdensome (especially to the extent that it requires Google to identify every "document[ ] bearing on, supporting, or refuting each defense." As a compromise, Google proposes to:

provide the factual basis for each of Google's affirmative defenses in writing on or before May 3, 2024.

Topic 74. We understand that plaintiffs are primarily interested in strategic or product plans for the products at issue in this case, both forward-looking and historical. However, as you know, the relevant time period spans well over a decade and the products at issue are large and complex. We are considering whether Google could reasonably prepare a witness on a clarified version of this topic and will get back to you shortly

Topic 83, Topic 104(f), 104(i), 104(q). We understand from our discussions that Plaintiffs are not asking Google to perform an analysis of the effects of each Auction Mechanic on fees, revenue share, margins, and take-rates but, rather, are asking Google to identify whether it performed any such analyses in the ordinary course of business. Similarly, with respect to Topic 104(f), we understand that Plaintiffs seek any ordinary course analyses of "Header bidding's impact on winning prices paid by Advertisers and/or received by Publishers for impressions and take rates charged by ad exchanges." And for Topic 104(i), any ordinary course " analysis of the flow of queries running through Header Bidding as compared to Open Bidding." After having demanded that Google produce an incredible number of documents, Plaintiffs now seem to want Google to sift through

those documents to identify analyses within that massive set which Plaintiffs already have.

Nonetheless, in the interests of compromise and in lieu of a 30(b)(6) witness, Google proposes to conduct a reasonable investigation into whether Google analyzed, in the ordinary course of business, the effect of an Auction Mechanic on fees, revenue share, margins, and/or take-rates or "Header bidding's impact on winning prices paid by Advertisers and/or received by Publishers for impressions and take rates charged by ad exchanges," ordinary course "analysis of the flow of queries running through Header Bidding as compared to Open Bidding," and ordinary course analysis of the  "impact of Header Bidding on Your Metrics, Publishers' and/or Advertisers' Metrics, and Your competitors' Metrics"  and identify or produce any such ordinary course analyses before May 3, 2024.

Topic 104(c).  We understand from our discussions that Plaintiffs are not asking Google to analyze or speculate as to whether any product change had any effect on header bidding.  The only three product changes that you identify within the topic are line-item caps, line item caps, "data redactions," and minimum bid to win data.  Google designates ▮▮▮▮ to testify regarding line item caps.  Mr. ▮▮▮ is sitting for a 30(b)(1) deposition on April 26 (which was rescheduled at plaintiffs request), and we ask that Plaintiffs complete their 30(b)(6) deposition of Mr. ▮▮▮ at the same time.  We think this is more than reasonable given that Plaintiffs already have access to Mr. ▮▮▮'s investigative deposition transcript.  Google will designate a witness to testify regarding Google's provision of minimum bid to win data.  Google is not aware of any "data redactions" made in connection with header bidding.  Thus, we believe this topic is now covered.

Topics 104(d), 104(m).  As I noted on April 9, we believe this topic is covered by Google's designation of ▮▮▮▮ to testify regarding the data and reporting that Google makes available to its publisher customers.  As such, we're not identifying anyone else.

Regards,
Tina

**From:** Zeke DeRose III <Zeke.DeRose@LanierLawFirm.com>
**Sent:** Friday, April 12, 2024 1:53 PM
**To:** Marc B. Collier <marc.collier@nortonrosefulbright.com>; Geraldine W. Young <geraldine.young@nortonrosefulbright.com>; BAYOUMI, Jeanette <Jeanette.Bayoumi@freshfields.com>
**Cc:** SESSIONS, Justina (JKS) <Justina.Sessions@freshfields.com>; Paul Yetter <pyetter@yettercoleman.com>; MCCALLUM, Robert <rob.mccallum@freshfields.com>; Bracewell, Mollie <mbracewell@yettercoleman.com>; MAHR, Eric (EJM) <Eric.MAHR@freshfields.com>; Moran, David <dmoran@jw.com>; Nilsson, William (DAL) <wnilsson@jw.com>; Mark Lanier <Mark.Lanier@LanierLawFirm.com>; Ashley Keller <ack@kellerpostman.com>; John McBride <john.mcbride@nortonrosefulbright.com>; Jonathan Wilkerson <Jonathan.Wilkerson@LanierLawFirm.com>; Young, Trevor (TX) <Trevor.Young@oag.texas.gov>; Peter M. Hillegas <peter.hillegas@nortonrosefulbright.com>; James Lloyd <James.Lloyd@oag.texas.gov>; Thomas Ray <Thomas.Ray@oag.texas.gov>; Alex J. Brown <Alex.Brown@LanierLawFirm.com>; SALEM, Sara <Sara.Salem@freshfields.com>; ELMER, Julie (JSE) <Julie.Elmer@freshfields.com>; SONG, Tinny <Tinny.Song@freshfields.com>; Marisa Madaras <marisa.madaras@nortonrosefulbright.com>; Gabriel Culver <gabriel.culver@nortonrosefulbright.com>
**Subject:** Re: Google AdTech (EDTX): Categories and First Priority of States' 30(b)(6) to Google per Special Master Conference

Tina,

Thank you again for getting on a call with us yesterday afternoon. We wanted to follow-up regarding the breadth of Mr. ▮▮▮▮'s proposed testimony, additional time needed with Mr. ▮▮▮ and who, if not Mr. ▮▮▮ will testify to highlighted and the specific topics.

### *Mr. ▮▮▮▮ Designated by Google for 42 Topics and Need for Additional Days*

As we discussed on our meet and confer yesterday, Google has designated Mr. ▮▮▮ as a 30(b)(6) witness on certain matters that Google has suggested cover **42** of the States 30(b)(6) topics, which is over 1/3 of all topics noticed.

We noted yesterday, that due to the large number of topics Mr. ▮▮▮ is designated on, we will need more than one day —likely multiple, consecutive days with Mr. ▮▮▮ however, you noted that you weren't sure we are entitled to more than 7 hours with a corporate rep. This of course cannot be the case. Otherwise, Google could simply designate a single rep for any and all topics and seek to limit corporate testimony in this case to 7 hours.

Even if Mr. ▮▮▮ is only going to give testimony on the specific things spelled out in previous correspondence, being limited to 7 hours would essentially allow us an hour for each of the major issues in the case (e.g., 1 hour on RPO, 1 hour on UPR, etc., which of course is not workable or practical).

Given the schedule and the fact that Mr. ▮▮▮'s deposition is currently scheduled for Friday, April 19—the day after the hearing in Plano, it seems like we need to understand when Mr. ▮▮▮ or other deponents will be available so we can adjust the crowded deposition schedule accordingly.

### *Scope of Topics and Subject Matter Mr. ▮▮▮ Designated*

Additionally, for many of these topics, however, the States believe there is a significant delta between the scope of the topic and the subject matter for which Google has designated Mr. ▮▮▮

As promised during our conversation yesterday, we are circulating the chart below to highlight these gaps. Specifically, we have used yellow highlighting to identify areas where we have scope concerns and tried to provide a (non-exhaustive) summary of our concerns in the column labelled "States' Issues." Given that Google has taken a similar approach with Mr. ▮▮▮'s designations, we believe that many of the same issues arise with that witness, but we're hopeful that

working through things with Mr. ▮ first will be an efficient path forward.  Please review the chart below and let us know if Mr. ▮ will be prepared to testify regarding the full scope of these topics (with the understanding that he may testifying on some topics only as to certain Auction Mechanics) and if not, who Google will designate for the portion(s) of these topics that Mr. ▮ will not be prepared to address.

| No. | Topic | Google Designation | States' Issues |
|---|---|---|---|
| 7 | The design and development process, employee or contractor onboarding process, and the identity of the persons, entities, and groups responsible for each Google Ad Tech Auction Mechanic. | Processes by which Google engineering personnel were initially educated or onboarded regarding the sell-side Ad Tech Auction Mechanics at issue in Plaintiffs' Fourth Amended Complaint | To avoid any misunderstanding, please let us know which Auction Mechanisms you consider "sell-side" and which you consider "buy-side." Also, please confirm what you mean by engineers being "initially" educated or onboarded – are you restricting Mr. ▮ 's testimony on this subject to a particular time period? |
| 8 | The process by which any of your employees or contractors are educated or otherwise "onboarded" regarding each Google Ad Tech Auction Mechanic, including the resources used to provide such education, such as primers, instruction manuals, wikis, technical documents, presentations, tutorials, and videos, and any Documents and/or repositories used or referenced as part of this process. | Processes by which Google engineering personnel were initially educated or onboarded regarding the sell-side Ad Tech Auction Mechanics at issue in Plaintiffs' Fourth Amended Complaint | To avoid any misunderstanding, please let us know which Auction Mechanisms you consider "sell-side" and which you consider "buy-side." Also, please confirm what you mean by engineers being "initially" educated or onboarded – are you restricting Mr. ▮ 's testimony on this subject to a particular time period? |
| 9 | The technical documentation (either internal or external) for each of Your Ad Tech Products and Ad Tech Auction Mechanics, including, but not limited to technical reference manuals, specifications, schematics, configuration guides, user manuals, APIs, instruction manuals, product roadmaps, product architecture schematics, training materials, sign-off guides, technology documents, integration guides, Markdown files, and information repositories, including websites, related to each Google Ad Tech Auction Mechanic. | Documents . . . created in the ordinary course of business for Google Ad Manager, DFP, and/or AdX through 2020 | Please confirm that Mr. ▮ will be prepared to cover the technical documentation for the various Auction Mechanics (UPR, DA, EDA, RPO, etc). |
| 11 | The design and development process for each Google Ad Tech Auction Mechanic, including milestones such as conception, research, design, development, testing, experiments, first roll-out and staged roll-out (whether live or in experiment), and use at full scale, and including the location and approximate time for each stage, and identification of each Ad Tech Product to which each Ad Tech Mechanic applied and Documents relating to this Topic. | The operation, design, and expected benefits of Dynamic Allocation, Enhanced Dynamic Allocation, Reserve Price Optimization, Dynamic Revenue Share, Unified Pricing Rules, Open Bidding, and the material features of the Google AdX auction as relevant to Plaintiffs' Fourth Amended Complaint, from 2012 - 2020 | This topic includes questions around timing/dates, including when Auction Mechanics were rolled out and used at full scale.  Will Mr. ▮ be prepared to testify regarding such dates? |
| 20 | Documents, including representations, statements, communications, presentations, posts or postings, marketing, promotions, advertising, updates, instructions, or recommendations regarding each Ad Tech Product and/or Ad Tech Auction | The operation, design, and expected benefits of Dynamic Allocation, Enhanced Dynamic Allocation, Reserve Price Optimization, Dynamic Revenue Share, Unified Pricing Rules, Open Bidding, and the material features of the Google AdX auction as relevant to | Will Mr. ▮ be prepared to discuss documents provided to Publishers, Advertisers, etc. as well as internal discussions as to whether, to what extent and with whom Google should disclose or discuss Ad Tech Auction Mechanics and effects? |

| | | | |
|---|---|---|---|
| | Mechanic provided to Publishers, Advertisers, customers, Users, and/or third parties, and internal discussions regarding whether, to what extent, and with whom You should disclose or externally discuss Your Ad Tech Auction Mechanic and the effects thereof. | Plaintiffs' Fourth Amended Complaint, from 2012 - 2020 | |
| 21 | The lifecycle of an ad impression within Your Ad Tech Products, including through each Ad Tech Auction Mechanic. | The operation, design, and expected benefits of Dynamic Allocation, Enhanced Dynamic Allocation, Reserve Price Optimization, Dynamic Revenue Share, Unified Pricing Rules, Open Bidding, and the material features of the Google AdX auction as relevant to Plaintiffs' Fourth Amended Complaint, from 2012 - 2020 | This topic seeks testimony on the overall end-to-end technical lifecycle for display advertising (in Google products). You have designated Mr. ▆▆ for a subset of Auction Mechanics and Products (and Mr. ▆▆ regarding Bernanke, Poirot, Elmo, and Awbid) – but who will testify regarding the rest? |
| 24 | Your decision to implement and reasons for implementing or declining to implement each Ad Tech Auction Mechanic, including for all versions of each Ad Tech Auction Mechanic including Google's decision to exempt certain buyers from various Ad Tech Auction Mechanics. By way of example, this would include discussions related to exempting GDN from DRS and Google's RPO exemption policy. | The operation, design, and expected benefits of Dynamic Allocation, Enhanced Dynamic Allocation, Reserve Price Optimization, Dynamic Revenue Share, Unified Pricing Rules, Open Bidding, and the material features of the Google AdX auction as relevant to Plaintiffs' Fourth Amended Complaint, from 2012 - 2020 | Will Mr. ▆▆ be prepared to testify regarding why Google decided to implement the various Auction Mechanics and to exempt certain buyers from various Auction Mechanics? |
| 26 | Google's evaluation, testing, experimentation, analyses, predictions, designs, simulations, query results, data maps, data descriptions, data dictionaries, and prototyping of each Google Ad Tech Product and Ad Tech Auction Mechanic. | The operation, design, and expected benefits of Dynamic Allocation, Enhanced Dynamic Allocation, Reserve Price Optimization, Dynamic Revenue Share, Unified Pricing Rules, Open Bidding, and the material features of the Google AdX auction as relevant to Plaintiffs' Fourth Amended Complaint, from 2012 - 2020 | You have proposed having us identify specific analyses and experiments for you to consider, but as we have noted, we do not have access to a list of the experiments that Google ran or analyses that Google has conducted, and you have represented to us that there is no way to generate a comprehensive list. Will Mr. ▆▆ be prepared to identify and discuss the relevant evaluations, experiments, analyses, etc. that Google performed in connection with the Auction Mechanics for which you are offering him (e.g., Dynamic Allocation, Enhanced Dynamic Allocation, Reserve Price Optimization, Dynamic Revenue Share, Unified Pricing Rules, Open Bidding)? |
| 28 | Whether and to what extent You currently use or implement any Ad Tech Auction Mechanic; if not, when you stopped implementing the Ad Tech Auction Mechanic and Your reasons for doing so; and Your plans to implement any Ad Tech Auction Mechanic in the future, including revised or modified versions of that Ad Tech Auction Mechanic. | The operation, design, and expected benefits of Dynamic Allocation, Enhanced Dynamic Allocation, Reserve Price Optimization, Dynamic Revenue Share, Unified Pricing Rules, Open Bidding, and the material features of the Google AdX auction as relevant to Plaintiffs' Fourth Amended Complaint, from 2012 - 2020 | For Auction Mechanics on which you have indicated Mr. ▆▆ will testify that are no longer in use, will he be prepared to provide Google's reasons for discontinuing those Auction Mechanics as well as Google's plans to implement such Mechanic (or a variation thereof) in the future? |
| 34 | For any auction in which Google participates, any information that is available to Google that Google does not make available to Advertisers or Publishers and Google's reasons for not | The operation, design, and expected benefits of Dynamic Allocation, Enhanced Dynamic Allocation, Reserve Price Optimization, Dynamic Revenue Share, Unified Pricing Rules, Open | Will Mr. ▆▆ be prepared to testify as to the information that Google does not make available to publishers as well as Google's reasons for not providing such information? |

| | | Bidding, and the material features of the Google AdX auction as relevant to Plaintiffs' Fourth Amended Complaint, from 2012 - 2020 | |
|---|---|---|---|
| 43 | Google's external representations and public-facing statements You made or considered making regarding each Ad Tech Product and/or Ad Tech Auction Mechanic to Publishers, Advertisers, and other third-parties, including any such representations or statements related to whether Publishers, Advertisers, and other-third parties would be opted into any version of an Ad Tech Auction Mechanic and/or whether being opted into that Ad Tech Auction Mechanic would also opt a Publisher out of another Ad Tech Auction Mechanic (or version of an Ad Tech Auction Mechanic), and internal discussions regarding whether, to what extent, and with whom You should disclose or externally discuss Your Ad Tech Auction Mechanic(s), and the effects thereof. | The operation, design, and expected benefits of Dynamic Allocation, Enhanced Dynamic Allocation, Reserve Price Optimization, Dynamic Revenue Share, Unified Pricing Rules, Open Bidding, and the material features of the Google AdX auction as relevant to Plaintiffs' Fourth Amended Complaint, from 2012 - 2020 | Will Mr. ▓▓▓ be prepared to discuss the external representations/statement that Google made to Publishers, Advertisers, etc., including statements as to whether customers would be opted-in or out of various Auction Mechanics and internal discussions relating to the same? |
| 46 | Your internal discussions, communications documents, "talking points," marketing materials, and related internal trainings related to each Ad Tech Product and Ad Tech Auction Mechanic, including Your development thereof and internal communications related thereto, and including Google's understanding of the effects, benefits, and drawbacks of each Ad Tech Auction Mechanic on Publishers, Advertisers, Google, and the broader "ecosystem" as the term is used by Google in its documents; the transparency, fairness, and truthfulness of any auction type or Ad Tech Auction Mechanic; Your decision whether or not (and if so, when) to disclose the Ad Tech Auction Mechanic to Publishers, Advertisers, and third-parties, and Your reasoning or rationale regarding such decisions. | The operation, design, and expected benefits of Dynamic Allocation, Enhanced Dynamic Allocation, Reserve Price Optimization, Dynamic Revenue Share, Unified Pricing Rules, Open Bidding, and the material features of the Google AdX auction as relevant to Plaintiffs' Fourth Amended Complaint, from 2012 - 2020 | Among other things, this topic relates to marketing materials, Google's decisions/rationale around third party disclosures, and Google's understanding of effects, benefits, and drawbacks of Auction Mechanics on Publishers, Advertisers, and Google.  Will Mr. ▓▓▓ be prepared on the full scope of this topic? |
| 47 | Google's internal discussions regarding each Ad Tech Auction Mechanic, including Google's understanding of the effects of the Ad Tech Auction Mechanic on Publishers, Advertisers, Google, and the broader "ecosystem"; Your decision whether or not (and if so, when) to disclose the Ad Tech Auction Mechanic to Publishers, Advertisers, and third-parties, the extent of such disclosure, and Your reasoning or rationale regarding such decisions. | The operation, design, and expected benefits of Dynamic Allocation, Enhanced Dynamic Allocation, Reserve Price Optimization, Dynamic Revenue Share, Unified Pricing Rules, Open Bidding, and the material features of the Google AdX auction as relevant to Plaintiffs' Fourth Amended Complaint, from 2012 - 2020 | Will Mr. ▓▓▓ be prepared to discuss the effects of the Auction Mechanics/AdX on third parties, disclosures to third parties and Google reasons/rationale for disclosing (or not disclosing)? |
| 49 | The types of auctions (e.g., first price auctions, second price auctions, shadow auctions, first look auctions, and modified or hybrid second price auctions) that Google ran for display advertising from | The operation, design, and expected benefits of Dynamic Allocation, Enhanced Dynamic Allocation, Reserve Price Optimization, Dynamic Revenue Share, Unified Pricing Rules, Open | Will Mr. ▓▓▓ be prepared to discuss the types of auctions that Google ran and representations to third parties regarding the same? |

| | | |
|---|---|---|
| | 2010 to the present, Your representations to and communications with third parties and internal communications regarding the same, and any internal discussions regarding whether, to what extent, and with whom You should disclose or externally discuss such auctions, and the effects thereof. | Bidding, and the material features of the Google AdX auction as relevant to Plaintiffs' Fourth Amended Complaint, from 2012 - 2020 | |
| 50 | Statements or communications (internal or external) regarding the benefits or drawbacks of any auction types, including the transparency, fairness, and truthfulness of any auction type, the benefits and drawbacks of second price auctions and alternative auction models, Your reasons for switching from an alleged second price auction, including to a first price auction in or around 2019, and internal discussions regarding whether, to what extent, and with whom You should disclose or externally discuss such benefits and drawbacks, and the effects thereof. | The operation, design, and expected benefits of Dynamic Allocation, Enhanced Dynamic Allocation, Reserve Price Optimization, Dynamic Revenue Share, Unified Pricing Rules, Open Bidding, and the material features of the Google AdX auction as relevant to Plaintiffs' Fourth Amended Complaint, from 2012 - 2020 | This topic covers, among other things, Google's reasons (which includes business/strategy reasons) for switching from an alleged second price to a first price auction. Will Mr. ▮▮▮ be prepared on the full scope of this topic? |
| 53 | Whether and to what extent Google contends that AdX ran a second price auction prior to switching to a first-price auction in or around 2019. | The operation, design, and expected benefits of Dynamic Allocation, Enhanced Dynamic Allocation, Reserve Price Optimization, Dynamic Revenue Share, Unified Pricing Rules, Open Bidding, and the material features of the Google AdX auction as relevant to Plaintiffs' Fourth Amended Complaint, from 2012 - 2020 | Will Mr. ▮▮▮ be prepared to testify as to what constitutes a second price auction and to answer questions on which type of auction AdX ran prior to 2019? |
| 56 | Whether You ran live experiments on auction participants, whether you notified the auction participants of these experiments and how they were notified, and if live experiments were run, the type, scope and description of the experiments run, the percentage of traffic or "slices" on which they were run, and the identity of the participants on which they were run as well as Google's conclusions regarding the results of those experiments. | The operation, design, and expected benefits of Dynamic Allocation, Enhanced Dynamic Allocation, Reserve Price Optimization, Dynamic Revenue Share, Unified Pricing Rules, Open Bidding, and the material features of the Google AdX auction as relevant to Plaintiffs' Fourth Amended Complaint, from 2012 - 2020 | You have proposed having us identify specific experiments for you to consider, but as we have noted, we do not have access to a list of the experiments that Google ran, and you have represented to us that there is no way to generate a comprehensive list. Will Mr. ▮▮▮ be prepared to identify and discuss the relevant experiments run on live traffic in connection with the Auction Mechanics for which you are offering him (e.g., Dynamic Allocation, Enhanced Dynamic Allocation, Reserve Price Optimization, Dynamic Revenue Share, Unified Pricing Rules, Open Bidding)? |
| 66 | Google's acquisition of DoubleClick and any exclusive access or rights afforded to AdX after and as a result of that acquisition. | "The real-time interoperation of DFP and AdX through 2020" & "the operation, design, and expected benefits of Dynamic Allocation, Enhanced Dynamic Allocation, Reserve Price Optimization, Dynamic Revenue Share, Unified Pricing Rules, Open Bidding, and the material features of the Google AdX auction as relevant to Plaintiffs' Fourth Amended Complaint, from 2012 – 2020" | Will Mr. ▮▮▮ be prepared to testify regarding Google's acquisition of DoubleClick and any exclusive access or rights afforded to AdX as a result of that acquisition? |
| 69 | Publishers' ability to access AdX demand through a non-DFP (or other Google) ad | The operation, design, and expected benefits of Dynamic Allocation, | Will Mr. ▮▮▮ be prepared to testify as to Google's consideration of or |

| | | | |
|---|---|---|---|
| | server and Google's consideration of or refusal to integrate AdX with third-party or publisher in-house ad servers. | Enhanced Dynamic Allocation, Reserve Price Optimization, Dynamic Revenue Share, Unified Pricing Rules, Open Bidding, and the material features of the Google AdX auction as relevant to Plaintiffs' Fourth Amended Complaint, from 2012 - 2020 | refusal to integrate AdX with 3rd party or publisher in-house ad servers? Will he be able to testify as to Publishers' ability to access AdX demand through a non-DFP (or other Google) ad server? |
| 78 | The impact, effect, benefit, or harm of each Ad Tech Auction Mechanic alone or in combination on Publishers, Advertisers, Google, and Your competitors, including any such analysis conducted or generated by You or on Your behalf, the individuals involved in performing such analysis, the tools used to perform such analysis, any reports generated detailing such analysis, and Your communications regarding the same. | The operation, design, and expected benefits of Dynamic Allocation, Enhanced Dynamic Allocation, Reserve Price Optimization, Dynamic Revenue Share, Unified Pricing Rules, Open Bidding, and the material features of the Google AdX auction as relevant to Plaintiffs' Fourth Amended Complaint, from 2012 - 2020 | Among other things, this topic goes to the impact/effect/benefit/harm of the Auction Mechanics on customers/competitors and any analysis Google has done regarding such impact, but you have designated Mr. [ ] to testify only on the "expected benefits" of various Auction Mechanics. Will he be prepared to address the full scope of this topic? |
| 79 | The effects of each Ad Tech Auction Mechanic on AdX exchange floors, on bids from Google Ads, on Google's fees, revenue share, margins, and take-rates, and on second bids on noncompetitive queries. | The operation, design, and expected benefits of Dynamic Allocation, Enhanced Dynamic Allocation, Reserve Price Optimization, Dynamic Revenue Share, Unified Pricing Rules, Open Bidding, and the material features of the Google AdX auction as relevant to Plaintiffs' Fourth Amended Complaint, from 2012 - 2020 | You have indicated that Mr. [ ] will be prepared to testify regarding the "expected benefits" of various Auction Mechanics, but will he also be prepared to discuss the _effects_ of those Mechanics, as set out in this topic? |
| 80 | The effects of each Ad Tech Auction Mechanic on AdX exchange floors. | The operation, design, and expected benefits of Dynamic Allocation, Enhanced Dynamic Allocation, Reserve Price Optimization, Dynamic Revenue Share, Unified Pricing Rules, Open Bidding, and the material features of the Google AdX auction as relevant to Plaintiffs' Fourth Amended Complaint, from 2012 - 2020 | You have indicated that Mr. [ ] will be prepared to testify regarding the "expected benefits" of various Auction Mechanics, but will he also be prepared to discuss the _effects_ of those Mechanics on AdX exchange floors? |
| 88 | Any experiments, tests, analyses, predictions, simulations, query results, data maps, data descriptions, data dictionaries, for GAM, DFP, and AdX. | The operation, design, and expected benefits of Dynamic Allocation, Enhanced Dynamic Allocation, Reserve Price Optimization, Dynamic Revenue Share, Unified Pricing Rules, Open Bidding, and the material features of the Google AdX auction as relevant to Plaintiffs' Fourth Amended Complaint, from 2012 - 2020 | Who will testify regarding this topic for GAM and DFP? Also, you have proposed having us identify specific analyses and experiments for you to consider, but as we have noted, we do not have access to a list of the experiments that Google ran or analyses that Google has conducted, and you have represented to us that there is no way to generate a comprehensive list. Will Mr. [ ] be prepared to identify and discuss the relevant tests, experiments, analyses, etc. related to AdX? |
| 89 | Your decision to allow AdX to outbid non-Google Ad Exchanges after they submitted their bids, as well as Your decision to discontinue this conduct, if such a decision was made. | The operation, design, and expected benefits of Dynamic Allocation, Enhanced Dynamic Allocation, Reserve Price Optimization, Dynamic Revenue Share, Unified Pricing Rules, Open Bidding, and the material features of the Google AdX auction as relevant to Plaintiffs' Fourth Amended Complaint, from 2012 - 2020 | This topic is directed to the reasons Google decide to allow AdX to outbid non-Google Ad Exchanges – will Mr. [ ] be prepared to testify on the reasons behind such decisions? |
| 91 | The manner in which DFP, AdX, GAM, Non-Google Publisher Ad Servers, Non- | The operation, design, and expected benefits of Dynamic Allocation, | Of all of the platforms/technologies that are identified in this topic, you |

| | | | |
|---|---|---|---|
| | Google SSPs, non-Google Ad Exchanges, AdSense, DV360, Google Marketing Platform (formerly DoubleClick Digital Marketing and Google Analytics 360 Suite), and Google Chrome interact and/or exchange data or otherwise communicate with each other. | Enhanced Dynamic Allocation, Reserve Price Optimization, Dynamic Revenue Share, Unified Pricing Rules, Open Bidding, and the material features of the Google AdX auction as relevant to Plaintiffs' Fourth Amended Complaint, from 2012 - 2020 | have indicated that Mr. ▮▮▮ will testify regarding the "material features of the Google AdX auction." Who will testify regarding the other platforms/technologies and how they interact? |
| 92 | Any advantages to You or Your Ad Tech Products arising from Your access to or use or accumulation of information relating to past bidding behavior of bidders on an Ad Auction You conduct, including Exchange Bidding and Open Bidding and including any documentation related to the availability of bid-related information for Publishers, Advertisers, and Ad Exchanges at each stage of the auction and Advertisers' valuation of Ad Impressions. | The operation, design, and expected benefits of Dynamic Allocation, Enhanced Dynamic Allocation, Reserve Price Optimization, Dynamic Revenue Share, Unified Pricing Rules, Open Bidding, and the material features of the Google AdX auction as relevant to Plaintiffs' Fourth Amended Complaint, from 2012 - 2020 | Will Mr. ▮▮▮ be prepared to discuss the advantages of access/use/accumulation of past bidding behavior and the availability of bid-related information to third parties? |
| 93 | The monetary and non-monetary advantages to You or Your Ad Tech Products arising from Your access to or use or accumulation of Behavioral Data as well as what representations were made to Publishers, Advertisers and Ad Exchanges about Behavioral Data and whether the underlying users consented to that Behavioral Data's use in an Ad Exchange. | The operation, design, and expected benefits of Dynamic Allocation, Enhanced Dynamic Allocation, Reserve Price Optimization, Dynamic Revenue Share, Unified Pricing Rules, Open Bidding, and the material features of the Google AdX auction as relevant to Plaintiffs' Fourth Amended Complaint, from 2012 - 2020 | Will Mr. ▮▮▮ be prepared to discuss the use/accumulation of Behavioral Data, representations to third parties regarding the same, and underlying users' consent to the use of such data in Ad Exchange? |
| 94 | Any experiment, analysis, or simulation You conducted or are aware of related to the impact of any Ad Tech Auction Mechanic on Publishers or Advertisers and the results thereof, including but not limited to any impact on Your exchange fees and Publisher revenues or yields. | The operation, design, and expected benefits of Dynamic Allocation, Enhanced Dynamic Allocation, Reserve Price Optimization, Dynamic Revenue Share, Unified Pricing Rules, Open Bidding, and the material features of the Google AdX auction as relevant to Plaintiffs' Fourth Amended Complaint, from 2012 - 2020 | You have proposed having us identify specific experiments for you to consider, but as we have noted, we do not have access to a list of the experiments that Google ran, and you have represented to us that there is no way to generate a comprehensive list. Will Mr. ▮▮▮ be prepared to identify and discuss the relevant experiments run on live traffic in connection with the Auction Mechanics for which you are offering him (e.g., Dynamic Allocation, Enhanced Dynamic Allocation, Reserve Price Optimization, Dynamic Revenue Share, Unified Pricing Rules, Open Bidding)? |
| 97 | Any analysis conducted by or for You in connection with having Meta/Facebook use Open Bidding, including analysis of the minimum spend commitment needed to deter Meta/Facebook from using Header Bidding in a significant way, as well as any concerns You had or expressed (internally or externally) regarding Facebook potentially partnering with Amazon to use Header Bidding. | Analysis conducted (if any) in connection with having Meta/Facebook use Open bidding, including analysis (if any) "of the minimum spend commitment needed to deter Meta/Facebook from using Header Bidding in a significant way" | Who are you designating to testify regarding concerns Google had or expressed regarding Facebook potentially partnering with Amazon to use Header Bidding? |
| 98 | Dynamic Revenue Share ("DRS"), including, but not limited to:<br><br>a. whether Google currently uses any revenue sharing programs or features, | The operation, design, and expected benefits of Dynamic Allocation, Enhanced Dynamic Allocation, Reserve Price Optimization, Dynamic Revenue Share, Unified Pricing Rules, Open | You have indicated that Mr. ▮▮▮ will testify regarding the operation, design, and expected benefits of DRS, but this topic is materially broader than that, including whether Google |

| | | |
|---|---|---|
| | including where and how such revenue programs or features are used, and if not, whether Google currently has plans to implement any revenue sharing programs or features; | Bidding, and the material features of the Google AdX auction as relevant to Plaintiffs' Fourth Amended Complaint, from 2012 - 2020 | currently runs any programs similar to DRS, the effects (not just expected benefits) of DRS on a number of metrics, financial/revenue consequences of DRS, decisions and communications regarding opt-in or opt-out of publishers from DRS, and contracts related to DRS.  Will Mr. ▆▆▆ be prepared to testify regarding the full scope of this topic? |
| | b. any revenue sharing program or feature that dynamically adjusted margins, revenue share, take rates or the fees Google charged Publishers to transact via AdX; | | |
| | c. the effects of each Ad Tech Auction Mechanic on Your exchange fee, margin, revenue share, or take rate including but not limited to the time at which an Ad Tech Auction Mechanic adjusted Your exchange fee, revenue share, margin, or take rate in relation to the time at which bids were solicited; | | |
| | d. Your decision to opt Publishers into DRS v1 or any predecessor thereof and whether and to what extent You opted Publishers into DRS v1 or any predecessor thereof and whether and how, if at all, Google disclosed to Publishers their enrollment therein; | | |
| | e. the ability of a Publisher to opt out of DRS v1 (or any predecessor) and Your communications internally and externally relating to the same; | | |
| | f. the number and identity of all Publishers who were opted into the first version of DRS (or any version or iteration of DRS prior to DRS v2) when it was initially implemented; | | |
| | g. the number of transactions and impressions transacted on and the number and identify of every Publisher transacting on AdX on a monthly basis from January 1, 2012 to the present in which the implementation or operation of DRS resulted in exchange fees for publisher inventory, or Your take rates, margins, or revenue shares, that were higher than they otherwise would have been had DRS not been implemented or in operation; | | |
| | h. the impact of DRS on Your Metrics, Publishers' and/or Advertisers' Metrics, and Your competitors' Metrics; | | |
| | i. Contracts related to DRS including Your interpretation such contracts. | | |
| 100 | Unified (or Uniform) Pricing Rules ("UPR"), including, but not limited to: | The operation, design, and expected benefits of Dynamic Allocation, Enhanced Dynamic Allocation, Reserve | You have designated Mr. ▆▆▆ to testify regarding the "operation, design, and expected benefits" of |

| | | |
|---|---|---|
| a. publisher use of per-buyer (e.g., per-Ad Exchange or per-buyer tool) price floors, including using price floors to increase revenue and improve quality of advertisements;<br><br>b. attempts by any Publisher, SSP, or Publisher ad network to circumvent GAM's [Unified/Uniform] Pricing Rules, and all exceptions to or accommodations or variations of [Unified/Uniform] Pricing Rules requested by Publishers and Your decision whether to approve or reject such requests;<br><br>c. internal tests, experiments, simulations, or studies, which measure, forecast, predict, study, or research the impact that Your decision to move to a Unified Auction or adopt [Unified/Uniform] Pricing Rules would have or has had on the adoption of Header Bidding;<br><br>d. the number of impressions (as an absolute number and as a percentage of the total number of impressions available in the Unified Auction) that Google Ads or DV360 won slightly above the floor price (where "slightly above" shall mean that the difference between the price that Google Ads or DV360 paid and the floor price or next highest bid does not exceed $0.10 CPM);<br><br>e. the impact of UPR separate from the move to the first price auction on Your Metrics, Publishers' and/or Advertisers' Metrics, and Your competitors' Metrics. | Price Optimization, Dynamic Revenue Share, Unified Pricing Rules, Open Bidding, and the material features of the Google AdX auction as relevant to Plaintiffs' Fourth Amended Complaint, from 2012 - 2020 | UPR but this topic is significantly broader, and requires a witness prepared to address, among other things, how publishers use per-buyer price floors, attempts by third parties to circumvent UPR, exceptions/accommodations related to UPR from third parties and Google's decisions related to such exceptions, the impact of UPR on the adoption of Header Bidding, and financial/operational reporting related to UPR, as well as the impact of UPR on various Google and third-party metrics. |
| 101 | Reserve Price Optimization ("RPO"), including, but not limited to:<br><br>a. Your contracts with Publishers, including revisions, changes, or amendments thereto, related to Publishers' exchange floors and any alterations or changes thereto, as well as any related internal and external communications, including those related to Your interpretation such contracts;<br><br>b. the number and identity of all Publishers whose exchange floors were affected, altered, changed, manipulated or overridden as a result of RPO from January 1, 2013 to the present;<br><br>c. the number of transactions on AdX on a monthly basis from January 1, 2013 to the present, in which an Advertiser paid more for an ad/impression than they otherwise would have if RPO had not | The operation, design, and expected benefits of Dynamic Allocation, Enhanced Dynamic Allocation,  Reserve Price Optimization, Dynamic Revenue Share, Unified Pricing Rules, Open Bidding, and the material features of the Google AdX auction as relevant to Plaintiffs' Fourth Amended Complaint, from 2012 - 2020 | You have designated Mr. ▇ to testify regarding the "operation, design, and expected benefits" of RPO, but this topic is significantly broader, and requires a witness prepared to address, among other things, changes to contracts related to exchange floors, the effects of RPO on publishers and Google, public statements and disclosure (or lack of disclosure) regarding RPO and Google's decision making process around such disclosure. |

been operational or in effect;

d. the identity of all Advertisers who, from January 1, 2013 to the present, paid more for an ad/impression than they otherwise would have if RPO had not been operational or in effect;

e. Your use of historical bidding information in connection with RPO, including whether and to what extent You informed Advertisers that RPO used Advertisers' historical bidding information;

f. Your internal discussions regarding RPO, including Your understanding of the effects of RPO on Publishers, Advertisers, and Google, and Your decision whether or not to disclose RPO to Publishers, Advertisers, and third-parties;

g. Your internal and external communications related to the amount and type of inventory that would be available on AdX as a result of RPO;

h. Your decision to initially implement RPO without disclosing the program to Publishers and/or Advertisers and the reasons therefore;

i. the number and identity of all Publishers who were opted into RPO when it was initially launched or implemented, including the extent to which Google disclosed RPO to Publishers;

j. Your decision to externally represent RPO as "optimized pricing" rather than "reserve price optimization," internal and external communications related to such decision, and the reasons therefore;

k. Your public-facing statements and internal communications related to RPO or "optimized pricing", including but not limited to the March 5, 2015 Digiday article "Google sweetens deal for publishers with dynamic price floors," including any internal discussions regarding whether, to what extent, and with whom You should make such statements regarding RPO, and the effects thereof;

l. the impact of RPO on Your Metrics, Publishers' and/or Advertisers' Metrics, and Your competitors' Metrics.

| 102 | Dynamic Allocation ("DA") and Enhanced Dynamic Allocation ("EDA"), including, | The operation, design, and expected benefits of Dynamic Allocation, | You have designated Mr. ▮▮▮ to testify regarding the "operation, |

| | | | |
|---|---|---|---|
| | but not limited to:<br><br>a. the design, development, and operation, including when AdX receives the impression and waterfall process, of each version of DA and EDA;<br><br>b. how EDA differs from DA;<br><br>c. the impact and/or effect of EDA on non-AdX Exchanges, on the share of Ad Inventory sold by Publishers through Direct Sales, on the timing of Ad Inventory sold by Publishers through Direct Sales, on the value of Publishers' inventory sold through Direct Sales, on allocation of Advertisers' ad spend between Direct Sales and programmatic sales, and/or on the loss to Publishers of the opportunity to gain additional ad spend absent EDA;<br><br>d. how you rank or ranked Ad Exchanges or Ad Networks with DA or EDA enabled (and how that compares or compared to how Publishers rank or prioritize Ad Exchanges or Ad Networks);<br><br>e. DA's effects on Publisher revenue and CPMs bid for Ad Inventory, whether DA is an improvement over "waterfalling" or "daisy chaining," and whether it reduces Publisher risk that ad inventory would not sell;<br><br>f. how You determined the reserve price and/or the "Temporary CPM" and/or the "Value CPM" in auctions using EDA and how Real Time Bidding ("RTB") works in the context of EDA;<br><br>g. EDA's impact on advertiser use of AdX or GDN;<br><br>h. the impact of DA on Your Metrics, Publishers' and/or Advertisers' Metrics, and Your competitors' Metrics;<br><br>i. the impact of EDA on Your Metrics, Publishers' and/or Advertisers' Metrics, and Your competitors' Metrics. | Enhanced Dynamic Allocation, Reserve Price Optimization, Dynamic Revenue Share, Unified Pricing Rules, Open Bidding, and the material features of the Google AdX auction as relevant to Plaintiffs' Fourth Amended Complaint, from 2012 - 2020 | design, and expected benefits" of DA and EDA, but this topic is significantly broader, and requires a witness prepared to address, among other things, the impact/effect of EDA on numerous subjects, DA's effects on Publishers' revenue and Google's views as to whether DA is an improvement over "waterfalling," how RTB works in the context of EDA, EDA's impact on advertiser use of AdX or GDN, as well as the impact of DA and EDA on various Google and 3rd party metrics. |
| 104(a), (b), (h), (l), (o), (p) | Header Bidding, including, but not limited to:<br><br>a. the monthly share of impressions and revenue served by DFP or transacted through AdX, as well as the monthly share of impressions transacted by and revenue for any other Publisher Ad Server, Ad Exchange, or Ad Network or through Header Bidding; | The operation, design, and expected benefits of Dynamic Allocation, Enhanced Dynamic Allocation, Reserve Price Optimization, Dynamic Revenue Share, Unified Pricing Rules, Open Bidding, and the material features of the Google AdX auction as relevant to Plaintiffs' Fourth Amended Complaint, from 2012 - 2020 | You have designated Mr. ▉▉ to testify regarding the "operation, design, and expected benefits" of Open Bidding, but this topic is significantly broader, and requires a witness prepared to address, among other things, Google's decision not to support Header Bidding in GAM and DFP and to prohibit AdX or GAM from returning bids through header bidding, Google's overall response to |

| | |
|---|---|
| b. Your decision not to support the option for Publishers to use Header Bidding in GAM, DFP,or Open Bidding, and to prohibit AdX or GAM from returning bids through Header Bidding;<br><br>...<br><br>h. Your response to Header Bidding, including all Documents concerning Your policy and practice of implementing Open Bidding;<br><br>...<br><br>I. the potential or actual impact of Dynamic Allocation on Publisher revenues, including comparing revenues from Dynamic Allocation versus Header Bidding;<br><br>...<br><br>o. the impact that Your decision to move to a Unified Auction or adopt [Unified/Uniform] Pricing Rules would have or has had on the adoption of Header Bidding;<br><br>...<br><br>p. Your use or imposition of timeout restrictions on Bid Requests concerning ads served on AMP Pages when the inventory being served was sold through a Header Bidding solution or through any competing Ad Exchange; | header bidding, the impact of header bidding on Publisher revenues, comparing revenues between Dynamic Allocation and header bidding, the impact of UPR adoption on header bidding, and the imposition of timeout restrictions in various scenarios. |

---

**From:** Zeke DeRose III <Zeke.DeRose@LanierLawFirm.com>
**Date:** Thursday, April 11, 2024 at 6:40 PM
**To:** "Marc B. Collier" <marc.collier@nortonrosefulbright.com>, "Geraldine W. Young"
<geraldine.young@nortonrosefulbright.com>, "BAYOUMI, Jeanette" <Jeanette.Bayoumi@freshfields.com>
**Cc:** "SESSIONS, Justina (JKS)" <Justina.Sessions@freshfields.com>, Paul Yetter <pyetter@yettercoleman.com>, "MCCALLUM,
Robert" <rob.mccallum@freshfields.com>, "Bracewell, Mollie" <mbracewell@yettercoleman.com>, "MAHR, Eric (EJM)"
<Eric.MAHR@freshfields.com>, "Moran, David" <dmoran@jw.com>, "Nilsson, William (DAL)" <wnilsson@jw.com>, Mark Lanier
<Mark.Lanier@LanierLawFirm.com>, Ashley Keller <ack@kellerpostman.com>, John McBride
<john.mcbride@nortonrosefulbright.com>, Jonathan Wilkerson <Jonathan.Wilkerson@LanierLawFirm.com>, "Young, Trevor (TX)"
<Trevor.Young@oag.texas.gov>, "Peter M. Hillegas" <peter.hillegas@nortonrosefulbright.com>, James Lloyd
<James.Lloyd@oag.texas.gov>, Thomas Ray <Thomas.Ray@oag.texas.gov>, "Alex J. Brown" <Alex.Brown@LanierLawFirm.com>,
"SALEM, Sara" <Sara.Salem@freshfields.com>, "ELMER, Julie (JSE)" <Julie.Elmer@freshfields.com>, "SONG, Tinny"
<Tinny.Song@freshfields.com>, Marisa Madaras <marisa.madaras@nortonrosefulbright.com>, Gabriel Culver
<gabriel.culver@nortonrosefulbright.com>
**Subject:** Re: Google AdTech (EDTX): Categories and First Priority of States' 30(b)(6) to Google per Special Master Conference

Special Master,

As a quick update, the Parties are continuing to work together on 30(b)(6) deposition issues and will update the
Special Master after tomorrow's follow-up calls and correspondence.

Per the call with the Special Master yesterday, the Parties met and conferred this afternoon regarding 30(b)(6)
witnesses and dates related to the Special Master's March 25 Order and Google's letter from yesterday regarding
objections and clarification.

The Parties have both agreed to follow-up in writing on specific areas for clarification and speak again tomorrow
in an effort to continue making progress.

Zeke

**From:** Zeke DeRose III <Zeke.DeRose@LanierLawFirm.com>

**Date:** Wednesday, April 10, 2024 at 1:36 PM

**To:** "Marc B. Collier" <marc.collier@nortonrosefulbright.com>, "Geraldine W. Young"
<geraldine.young@nortonrosefulbright.com>, "BAYOUMI, Jeanette" <Jeanette.Bayoumi@freshfields.com>

**Cc:** "SESSIONS, Justina (JKS)" <Justina.Sessions@freshfields.com>, Paul Yetter <pyetter@yettercoleman.com>, "MCCALLUM,
Robert" <rob.mccallum@freshfields.com>, "Bracewell, Mollie" <mbracewell@yettercoleman.com>, "MAHR, Eric (EJM)"
<Eric.MAHR@freshfields.com>, "Moran, David" <dmoran@jw.com>, "Nilsson, William (DAL)" <wnilsson@jw.com>, Mark Lanier
<Mark.Lanier@LanierLawFirm.com>, Ashley Keller <ack@kellerpostman.com>, John McBride
<john.mcbride@nortonrosefulbright.com>, Jonathan Wilkerson <Jonathan.Wilkerson@LanierLawFirm.com>, "Young, Trevor (TX)"
<Trevor.Young@oag.texas.gov>, "Peter M. Hillegas" <peter.hillegas@nortonrosefulbright.com>, James Lloyd
<James.Lloyd@oag.texas.gov>, Thomas Ray <Thomas.Ray@oag.texas.gov>, "Alex J. Brown" <Alex.Brown@LanierLawFirm.com>,
"SALEM, Sara" <Sara.Salem@freshfields.com>, "ELMER, Julie (JSE)" <Julie.Elmer@freshfields.com>, "SONG, Tinny"
<Tinny.Song@freshfields.com>, Marisa Madaras <marisa.madaras@nortonrosefulbright.com>, Gabriel Culver
<gabriel.culver@nortonrosefulbright.com>

**Subject:** Re: Google AdTech (EDTX): Categories and First Priority of States' 30(b)(6) to Google per Special Master Conference

As a quick follow-up, and to help with some more clarity regarding outstanding issues, the States still need answers on
a few additional points in my April 1 email:

- Regarding ▮▮▮▮▮ whose Rule 30(b)(1) deposition is scheduled for this Friday April 5, the States
  believe that deposition may last the entire allotted time on the record for his fact witness deposition, which
  the States are entitled to take. **For that reason, can you please provide other dates when, and
  location where, Mr. ▮▮▮▮ can be available for his Rule 30(b)(6) deposition?**

- Regarding your offer "to provide verified written responses in response to Topics 1, 2, 3, 4, 6, and 16" in lieu
  of a 30(b)(6) deposition (p. 4), the States believe that depositions will be the most efficient and effective
  manner of discovery because the States are entitled to probe those issues beyond written verified responses
  and such written responses will only prompt follow-up questions that are better-suited for and would be
  more efficiently handled in a deposition. The States had previously discussed with Google that the States
  have already provided, or could provide, Google with written verified responses in response to Google's
  Rule 30(b)(6) topics. Google had a similar response, that it wanted to probe those responses in a
  deposition. For that reason, the States have offered to sit for a deposition on Google's Topics 1-3, in addition
  to other topics, and are not providing any declarations or verified responses in lieu of a deposition. **Please
  provide us dates for the 30(b)(6) deposition(s) on Topics 1, 2, 3, 4, 6, and 16.**

- Regarding your proposal with respect to Topics 75 and 76—that Google is willing to "agree that the 30(b)(6)
  testimony of ▮▮▮▮ from the Virginia case can be used as if it were taken in this case" (p. 4)—I do not
  believe we have Ms. ▮▮▮ s 30(b)(6) testimony, so the States do not know what she testified to or whether it
  would satisfy the States' inquiries to which they are entitled. The States thus are not in a position to
  consider this proposal. **Please send us Ms. ▮▮▮ s 30(b)(6) testimony for us to consider. Also,
  please send us pursuant to the States' RFPs, all 30(b)(6) testimony from the DOJ Virginia case
  that are relevant to this case.**

**From:** Zeke DeRose III <Zeke.DeRose@LanierLawFirm.com>

**Date:** Wednesday, April 10, 2024 at 1:51 AM

**To:** "Marc B. Collier" <marc.collier@nortonrosefulbright.com>, "Geraldine W. Young"
<geraldine.young@nortonrosefulbright.com>, "BAYOUMI, Jeanette" <Jeanette.Bayoumi@freshfields.com>

**Cc:** "SESSIONS, Justina (JKS)" <Justina.Sessions@freshfields.com>, Paul Yetter <pyetter@yettercoleman.com>, "MCCALLUM,
Robert" <rob.mccallum@freshfields.com>, "Bracewell, Mollie" <mbracewell@yettercoleman.com>, "MAHR, Eric (EJM)"
<Eric.MAHR@freshfields.com>, "Moran, David" <dmoran@jw.com>, "Nilsson, William (DAL)" <wnilsson@jw.com>, Mark Lanier
<Mark.Lanier@LanierLawFirm.com>, Ashley Keller <ack@kellerpostman.com>, John McBride
<john.mcbride@nortonrosefulbright.com>, Jonathan Wilkerson <Jonathan.Wilkerson@LanierLawFirm.com>, "Young, Trevor (TX)"
<Trevor.Young@oag.texas.gov>, "Peter M. Hillegas" <peter.hillegas@nortonrosefulbright.com>, James Lloyd
<James.Lloyd@oag.texas.gov>, Thomas Ray <Thomas.Ray@oag.texas.gov>, "Alex J. Brown" <Alex.Brown@LanierLawFirm.com>,
"SALEM, Sara" <Sara.Salem@freshfields.com>, "ELMER, Julie (JSE)" <Julie.Elmer@freshfields.com>, "SONG, Tinny"

<Tinny.Song@freshfields.com>, Marisa Madaras <marisa.madaras@nortonrosefulbright.com>, Gabriel Culver
<gabriel.culver@nortonrosefulbright.com>
**Subject:** Re: Google AdTech (EDTX): Categories and First Priority of States' 30(b)(6) to Google per Special Master Conference

Counsel,

There were 72 days left in fact discovery when the States served 30(b)(6) deposition notices on Google. There are now 23 days left.

While we very much appreciate the witnesses and dates Google provided on March 29th, we still do not have witnesses or dates on the below listed topics that were identified as outstanding in my April 1 email below.

After seeking assistance from the Special Master to promptly schedule the 30(b)(6) depositions served on Google on February 21st, the Special Master Ordered that "no later than March 29, 2024, [Google] provide dates to the States on which they will provide Rule 30(b)(6) deponents on the grouped topics" (Dkt. #291, #293 p. 6).

The parties have notified Special Master Moran that they may need his assistance on Wednesday afternoon related to the Publisher Contract Information for Friday's 30(b)(6) deposition. **Accordingly, please provide us dates and witnesses for the below topics not already addressed by 3pm CT today (Wednesday, April 10) so we may raise any outstanding issues from the Special Master's March 25, 2024 Order.**

*[Excerpt from April 1 Email Below:]*

Your letter does not address a number of the topics in the States' 30(b)(6) notice to Google, including but not limited to the following. **Please let us know what Google's position is as to these and other omitted topics, including whether Google is refusing to produce a witness to testify on these and the other omitted topics, so that we may raise the issue with the Special Master.**
- o Topics 17-19 (on source code and chats),
- o Topic 22 (integration with third party systems),
- o Topics 29-30 (persons knowledgeable about Ad Tech products and auctions),
- o Topic 32 (data and information Google makes available to advertisers and publishers),
- o Topic 36 (deprecation of third-party cookies and implementation of FLEDGE, Privacy Sandbox, and Protected Audience API)
- o Topics 40-42, 44, 51-52 (certain statements or disclosures made or not made to publishers, advertisers, third parties, or the public)
- o Topic 45 (number and identity of publishers and advertisers that received certain disclosures)
- o Topic 55 (complaints from publishers, advertisers and other third parties regarding fairness or transparency)
- o Topic 65 (factual bases of Google's defenses)
- o Topic 74 (plans, analyses and reports related to Ad Tech products and auctions)
- o Topic 83 (The effects of each Ad Tech Auction Mechanic on Google's fees, revenue share, margins, and take-rates)
- o Topics 85-87, 90 (Google's margins, take-rates, fees, and revenue paid by advertisers and received by publishers)
- o Topic 104(c), (d), (e), (f), (g), (i), (j), (k), (m), (n) (q) (changes, limitations, impacts, latency studies, analysis of flow of queries, contracts, decisions, and efforts related to header bidding, and groups or teams studying header bidding)
- o Topics 105-106 (source code, algorithms, and database configurations related to Ad Tech Productions, Ad Tech auctions, and Ad Requests)
- o After 2020 for "The operation, design, and expected benefits of Dynamic Allocation, Enhanced Dynamic Allocation, Reserve Price Optimization, Dynamic Revenue Share, Unified Pricing Rules, Open Bidding, and the material features of the Google AdX auction as relevant to Plaintiffs' Fourth Amended Complaint, (Topics 11, 14, 20, 21, 23, 24, 25, 26, 28, 31, 34, 43, 46, 47, 49, 50, 53, 56, 63, 64, 66, 78, 79, 80, 81, 88, 89, 91, 92, 93, 94, 98, 100, 102, 104(a), (b), (h) (l), (o), (p), 107)."
  - ▪ Mr. ████ is only designated in your letter to testify regarding these topics "from 2012 – 2020"

**From:** "Marc B. Collier" <marc.collier@nortonrosefulbright.com>
**Date:** Tuesday, April 9, 2024 at 7:44 PM
**To:** "Geraldine W. Young" <geraldine.young@nortonrosefulbright.com>, "BAYOUMI, Jeanette"

<Jeanette.Bayoumi@freshfields.com>, Zeke DeRose III <Zeke.DeRose@LanierLawFirm.com>
**Cc:** "SESSIONS, Justina (JKS)" <Justina.Sessions@freshfields.com>, Paul Yetter <pyetter@yettercoleman.com>, "MCCALLUM, Robert" <rob.mccallum@freshfields.com>, "Bracewell, Mollie" <mbracewell@yettercoleman.com>, "MAHR, Eric (EJM)" <Eric.MAHR@freshfields.com>, "Moran, David" <dmoran@jw.com>, "Nilsson, William (DAL)" <wnilsson@jw.com>, Mark Lanier <Mark.Lanier@LanierLawFirm.com>, Ashley Keller <ack@kellerpostman.com>, John McBride <john.mcbride@nortonrosefulbright.com>, Jonathan Wilkerson <Jonathan.Wilkerson@LanierLawFirm.com>, "Young, Trevor (TX)" <Trevor.Young@oag.texas.gov>, "Peter M. Hillegas" <peter.hillegas@nortonrosefulbright.com>, James Lloyd <James.Lloyd@oag.texas.gov>, Thomas Ray <Thomas.Ray@oag.texas.gov>, "Alex J. Brown" <Alex.Brown@LanierLawFirm.com>, "SALEM, Sara" <Sara.Salem@freshfields.com>, "ELMER, Julie (JSE)" <Julie.Elmer@freshfields.com>, "SONG, Tinny" <Tinny.Song@freshfields.com>, Marisa Madaras <marisa.madaras@nortonrosefulbright.com>, Gabriel Culver <gabriel.culver@nortonrosefulbright.com>
**Subject:** Re: Google AdTech (EDTX): Categories and First Priority of States' 30(b)(6) to Google per Special Master Conference

Additionally, Plaintiffs will present the State of Texas 30b witness on the previously mentioned April 17, 2024 date at the NRF Austin offices at 9am CT.

Thank you, Marc

Get Outlook for iOS

**From:** Geraldine W. Young <geraldine.young@nortonrosefulbright.com>
**Sent:** Tuesday, April 9, 2024 7:32 PM
**To:** BAYOUMI, Jeanette <Jeanette.Bayoumi@freshfields.com>; Zeke DeRose III <zeke.derose@lanierlawfirm.com>
**Cc:** SESSIONS, Justina (JKS) <Justina.Sessions@freshfields.com>; Paul Yetter <pyetter@yettercoleman.com>; MCCALLUM, Robert <rob.mccallum@freshfields.com>; Bracewell, Mollie <mbracewell@yettercoleman.com>; MAHR, Eric (EJM) <Eric.MAHR@freshfields.com>; Moran, David <dmoran@jw.com>; Nilsson, William (DAL) <wnilsson@jw.com>; Mark Lanier <Mark.Lanier@LanierLawFirm.com>; Ashley Keller <ack@kellerpostman.com>; Marc B. Collier <marc.collier@nortonrosefulbright.com>; John McBride <john.mcbride@nortonrosefulbright.com>; Jonathan Wilkerson <Jonathan.Wilkerson@LanierLawFirm.com>; Young, Trevor (TX) <Trevor.Young@oag.texas.gov>; Peter M. Hillegas <peter.hillegas@nortonrosefulbright.com>; James Lloyd <James.Lloyd@oag.texas.gov>; Thomas Ray <Thomas.Ray@oag.texas.gov>; Alex J. Brown <Alex.Brown@LanierLawFirm.com>; SALEM, Sara <Sara.Salem@freshfields.com>; ELMER, Julie (JSE) <Julie.Elmer@freshfields.com>; SONG, Tinny <Tinny.Song@freshfields.com>; Marisa Madaras <marisa.madaras@nortonrosefulbright.com>
**Subject:** Re: Google AdTech (EDTX): Categories and First Priority of States' 30(b)(6) to Google per Special Master Conference

Plaintiffs confirm we can start at the witness's preferred time.

We will use the referenced platform for exhibits for all remote depositions that Plaintiffs take in the case, and I believe the court reporter has already directly provided Google's counsel with those instructions for the ▇▇ deposition last week. It would be the same for all such depositions. If you have further questions, you should reach out to the court reporter.

Thanks, Geraldine

**From:** BAYOUMI, Jeanette <Jeanette.Bayoumi@freshfields.com>
**Sent:** Tuesday, April 9, 2024 1:03 PM
**To:** Zeke DeRose III <zeke.derose@lanierlawfirm.com>
**Cc:** SESSIONS, Justina (JKS) <Justina.Sessions@freshfields.com>; Paul Yetter <pyetter@yettercoleman.com>; MCCALLUM, Robert <rob.mccallum@freshfields.com>; Bracewell, Mollie <mbracewell@yettercoleman.com>; MAHR, Eric (EJM) <Eric.MAHR@freshfields.com>; Moran, David <dmoran@jw.com>; Nilsson, William (DAL) <wnilsson@jw.com>; Mark Lanier <Mark.Lanier@LanierLawFirm.com>; Ashley Keller <ack@kellerpostman.com>; Marc B. Collier <marc.collier@nortonrosefulbright.com>; John McBride <john.mcbride@nortonrosefulbright.com>; Jonathan Wilkerson <Jonathan.Wilkerson@LanierLawFirm.com>; Geraldine W. Young <geraldine.young@nortonrosefulbright.com>; Young, Trevor (TX) <Trevor.Young@oag.texas.gov>; Peter M. Hillegas <peter.hillegas@nortonrosefulbright.com>; James Lloyd <James.Lloyd@oag.texas.gov>; Thomas Ray <Thomas.Ray@oag.texas.gov>; Alex J. Brown <Alex.Brown@LanierLawFirm.com>; SALEM, Sara <Sara.Salem@freshfields.com>; ELMER, Julie (JSE) <Julie.Elmer@freshfields.com>; SONG, Tinny <Tinny.Song@freshfields.com>
**Subject:** RE: Google AdTech (EDTX): Categories and First Priority of States' 30(b)(6) to Google per Special Master Conference

**[External Email – Use Caution]**

Zeke,

With regard to ███████'s deposition taking place this Friday, April 12, we can confirm that it will be remote. We would like for the deposition to start at 8:30am ET as Ms. ████ has a hard stop at 5:30pm ET. Please confirm that State Plaintiffs will be able to start at this time.

Additionally, please confirm whether Plaintiffs will be using Veritext's Golkow Zoom platform to conduct the remote deposition and provide instructions for connecting and using exhibits on that platform by EOD tomorrow.

Thanks,
Jeanette

**Jeanette Bayoumi**
Senior Associate
she/her/hers

**Freshfields Bruckhaus Deringer US LLP**
3 World Trade Center
175 Greenwich Street
New York, NY 10007
**T** +1 212 277 4043 | M +1 646 284 7200
Jeanette.Bayoumi@freshfields.com

**From:** Zeke DeRose III <Zeke.DeRose@LanierLawFirm.com>
**Sent:** Tuesday, April 9, 2024 1:13 AM
**To:** SESSIONS, Justina (JKS) <Justina.Sessions@freshfields.com>; Paul Yetter <pyetter@yettercoleman.com>; MCCALLUM, Robert <rob.mccallum@freshfields.com>; Bracewell, Mollie <mbracewell@yettercoleman.com>; MAHR, Eric (EJM) <Eric.MAHR@freshfields.com>
**Cc:** Moran, David <dmoran@jw.com>; Nilsson, William (DAL) <wnilsson@jw.com>; Mark Lanier <Mark.Lanier@LanierLawFirm.com>; Ashley Keller <ack@kellerpostman.com>; Marc B. Collier <marc.collier@nortonrosefulbright.com>; John McBride <john.mcbride@nortonrosefulbright.com>; Jonathan Wilkerson <Jonathan.Wilkerson@LanierLawFirm.com>; Geraldine W. Young <geraldine.young@nortonrosefulbright.com>; Young, Trevor (TX) <Trevor.Young@oag.texas.gov>; Peter M. Hillegas <peter.hillegas@nortonrosefulbright.com>; James Lloyd <James.Lloyd@oag.texas.gov>; Thomas Ray <Thomas.Ray@oag.texas.gov>; Alex J. Brown <Alex.Brown@LanierLawFirm.com>
**Subject:** Re: Google AdTech (EDTX): Categories and First Priority of States' 30(b)(6) to Google per Special Master Conference

Justina,

Thank you for providing the locations of the 30(b)(6)s that have been confirmed.  Can you please also provide us the start times, so that we can finalize arrangements for those depositions?

For the upcoming 30(b)(6) deposition of ██████ on April 12, the States will take that deposition remotely, but reserve the right to take others in person and will follow up soon to confirm whether the below referenced depositions will be in person or remote.

As you acknowledge below, the States are also still waiting to hear back from Google on the date for Mr. ████'s 30(b)(6) and on designated witnesses and dates for the still outstanding multiple topics.

Zeke

**From:** "SESSIONS, Justina (JKS)" <Justina.Sessions@freshfields.com>
**Date:** Thursday, April 4, 2024 at 6:30 AM
**To:** Zeke DeRose III <Zeke.DeRose@LanierLawFirm.com>, Paul Yetter <pyetter@yettercoleman.com>, "MCCALLUM, Robert" <rob.mccallum@freshfields.com>, "Bracewell, Mollie" <mbracewell@yettercoleman.com>, "MAHR, Eric (EJM)" <Eric.MAHR@freshfields.com>
**Cc:** "Moran, David" <dmoran@jw.com>, "Nilsson, William (DAL)" <wnilsson@jw.com>, Mark Lanier <Mark.Lanier@LanierLawFirm.com>, Ashley Keller <ack@kellerpostman.com>, "Marc B. Collier" <marc.collier@nortonrosefulbright.com>, John McBride <john.mcbride@nortonrosefulbright.com>, Jonathan Wilkerson <Jonathan.Wilkerson@LanierLawFirm.com>, "Geraldine W. Young" <geraldine.young@nortonrosefulbright.com>, "Young, Trevor (TX)" <Trevor.Young@oag.texas.gov>, "Peter M. Hillegas" <peter.hillegas@nortonrosefulbright.com>, James Lloyd <James.Lloyd@oag.texas.gov>, Thomas Ray <Thomas.Ray@oag.texas.gov>, "Alex J. Brown" <Alex.Brown@LanierLawFirm.com>
**Subject:** RE: Google AdTech (EDTX): Categories and First Priority of States' 30(b)(6) to Google per Special Master Conference

Dear Zeke,
I write in response to your email from Monday evening regarding the States' 30(b)(6) notice.  I've provided answers to some of your questions below, and we will follow up with additional designations and responses to the topics you asked about.

████████  We had offered April 5 for the 30(b)(6) portion of Mr. ████ deposition but you declined that date because you would like to spend

seven hours questioning Mr. ▆▆▆▆ as a 30(b)(1) witness. We are looking for alternative dates for Mr. ▆▆▆▆ 30(b)(6) deposition and will provide them shortly.

Deposition locations. Thank you for confirming the offered dates. With respect to locations, we suggest that Plaintiffs consider conducting 30(b) (6) depositions remotely, as it seems quite inefficient to force the time and expense of travel for what, in at least some cases, should be short and straightforward 30(b)(6) depositions. Nonetheless, the witnesses will be available at the following locations:

▆▆▆▆ Freshfields Redwood City, CA
▆▆▆▆ Freshfields New York
▆▆▆▆ Freshfields Redwood City, CA
▆▆▆▆: Freshfields Redwood City, CA
▆▆▆▆ Freshfields New York
▆▆▆▆ (2nd depo): Freshfields New York

Sell-side designee. Our potential designee for sell-side market share calculations (if any), competitive intelligence or company tracking of sell-side ad tech companies or products, and pricing of sell-side products has been out of the office this past week and so we have been unable to discuss availability. We expect to be able to provide availability by early next week.

Additional topics. We will respond to all of the topics you list below but in the meantime provide some additional designations here:

Topic 32. Google designates ▆▆▆▆ to testify regarding information that Google makes available to advertiser customers using Display and Video 360 and/or Google Ads. Google also agrees to designate a witness to testify regarding the information that Google makes available to publisher customers using Google Ad Manager. This will be the same sell-side designee as discussed above.

Topics 85-87. Google designates ▆▆▆▆ to testify regarding the pricing of Display and Video 360 and Google Ads. Google will designate a witness to testify regarding the pricing of Google Ad Manager (including DFP and AdX). This will be the same sell-side designee as discussed above.

Topic 90. Google designates ▆▆▆▆ to testify regarding the "decision to charge a fee to Ad Exchanges who participated in Open Bidding or Exchange Bidding."

**From:** SESSIONS, Justina (JKS)
**Sent:** Wednesday, April 3, 2024 6:21 AM
**To:** Zeke DeRose III <Zeke.DeRose@LanierLawFirm.com>; Paul Yetter <pyetter@yettercoleman.com>; MCCALLUM, Robert <rob.mccallum@freshfields.com>; Bracewell, Mollie <mbracewell@yettercoleman.com>; MAHR, Eric (EJM) <Eric.MAHR@freshfields.com>
**Cc:** Moran, David <dmoran@jw.com>; Nilsson, William (DAL) <wnilsson@jw.com>; Mark Lanier <Mark.Lanier@LanierLawFirm.com>;
Ashley Keller <ack@kellerpostman.com>; Marc B. Collier <marc.collier@nortonrosefulbright.com>; John McBride
<john.mcbride@nortonrosefulbright.com>; Jonathan Wilkerson <Jonathan.Wilkerson@LanierLawFirm.com>; Geraldine W. Young
<geraldine.young@nortonrosefulbright.com>; Young, Trevor (TX) <Trevor.Young@oag.texas.gov>; Peter M. Hillegas
<peter.hillegas@nortonrosefulbright.com>; James Lloyd <James.Lloyd@oag.texas.gov>; Thomas Ray <Thomas.Ray@oag.texas.gov>; Alex J.
Brown <Alex.Brown@LanierLawFirm.com>
**Subject:** RE: Google AdTech (EDTX): Categories and First Priority of States' 30(b)(6) to Google per Special Master Conference

Dear Zeke –
This is received and we are working on a response. We will provide an update later today.

- Tina

**From:** Zeke DeRose III <Zeke.DeRose@LanierLawFirm.com>
**Sent:** Monday, April 1, 2024 7:16 PM
**To:** SESSIONS, Justina (JKS) <Justina.Sessions@freshfields.com>; Paul Yetter <pyetter@yettercoleman.com>; MCCALLUM, Robert <rob.mccallum@freshfields.com>; Bracewell, Mollie <mbracewell@yettercoleman.com>; MAHR, Eric (EJM) <Eric.MAHR@freshfields.com>
**Cc:** Moran, David <dmoran@jw.com>; Nilsson, William (DAL) <wnilsson@jw.com>; Mark Lanier <Mark.Lanier@LanierLawFirm.com>;
Ashley Keller <ack@kellerpostman.com>; Marc B. Collier <marc.collier@nortonrosefulbright.com>; John McBride
<john.mcbride@nortonrosefulbright.com>; Jonathan Wilkerson <Jonathan.Wilkerson@LanierLawFirm.com>; Geraldine W. Young
<geraldine.young@nortonrosefulbright.com>; Young, Trevor (TX) <Trevor.Young@oag.texas.gov>; Peter M. Hillegas
<peter.hillegas@nortonrosefulbright.com>; James Lloyd <James.Lloyd@oag.texas.gov>; Thomas Ray <Thomas.Ray@oag.texas.gov>; Alex J.
Brown <Alex.Brown@LanierLawFirm.com>
**Subject:** Re: Google AdTech (EDTX): Categories and First Priority of States' 30(b)(6) to Google per Special Master Conference

Hi Justina:

Thank you for sending your letter Friday night regarding witnesses and topics for the States' Rule 30(b)(6) notice to Google. Please see below for our initial questions and comments that will help us confirm and schedule these depositions quickly:

Regarding ▆▆▆▆ whose Rule 30(b)(1) deposition is scheduled for this Friday April 5, the States believe that deposition may last the entire allotted time on the record for his fact witness deposition, which the States are entitled to take. **For that reason, can you please provide other dates when, and**

location where, Mr. ▮▮▮▮ can be available for his Rule 30(b)(6) deposition?

Regarding the other Rule 30(b)(6) witnesses in your letter, the States accept the dates offered, subject to further conference and discussion on the issues you raise with respect to each witness and the topics he/she will testify on. **Please let us know the location of these depositions on those confirmed dates, so that we can make the necessary arrangements.**

Regarding your offer "to provide verified written responses in response to Topics 1, 2, 3, 4, 6, and 16" in lieu of a 30(b)(6) deposition (p. 4), the States believe that depositions will be the most efficient and effective manner of discovery because the States are entitled to probe those issues beyond written verified responses and such written responses will only prompt follow-up questions that are better-suited for and would be more efficiently handled in a deposition. The States had previously discussed with Google that the States have already provided, or could provide, Google with written verified responses in response to Google's Rule 30(b)(6) topics. Google had a similar response, that it wanted to probe those responses in a deposition. For that reason, the States have offered to sit for a deposition on Google's Topics 1-3, in addition to other topics, and are not providing any declarations or verified responses in lieu of a deposition. **Please provide us dates for the 30(b)(6) deposition(s) on Topics 1, 2, 3, 4, 6, and 16.**

Regarding your proposal with respect to Topics 75 and 76—that Google is willing to "agree that the 30(b)(6) testimony of ▮▮▮▮▮▮▮ from the Virginia case can be used as if it were taken in this case" (p. 4)—I do not believe we have Ms. ▮▮▮'s 30(b)(6) testimony, so the States do not know what she testified to or whether it would satisfy the States' inquiries to which they are entitled. The States thus are not in a position to consider this proposal. **Please send us Ms. ▮▮▮'s 30(b)(6) testimony for us to consider. Also, please send us pursuant to the States' RFPs, all 30(b)(6) testimony from the DOJ Virginia case that are relevant to this case.**

Your letter does not address a number of the topics in the States' 30(b)(6) notice to Google, including but not limited to the following. **Please let us know what Google's position is as to these and other omitted topics, including whether Google is refusing to produce a witness to testify on these and the other omitted topics, so that we may raise the issue with the Special Master.**
 Topics 17-19 (on source code and chats),
 Topic 22 (integration with third party systems),
 Topics 29-30 (persons knowledgeable about Ad Tech products and auctions),
 Topic 32 (data and information Google makes available to advertisers and publishers),
 Topic 36 (deprecation of third-party cookies and implementation of FLEDGE, Privacy Sandbox, and Protected Audience API)
 Topics 40-42, 44, 51-52 (certain statements or disclosures made or not made to publishers, advertisers, third parties, or the public)
 Topic 45 (number and identity of publishers and advertisers that received certain disclosures)
 Topic 55 (complaints from publishers, advertisers and other third parties regarding fairness or transparency)
 Topic 65 (factual bases of Google's defenses)
 Topic 74 (plans, analyses and reports related to Ad Tech products and auctions)
 Topic 83 (The effects of each Ad Tech Auction Mechanic on Google's fees, revenue share, margins, and take-rates)
 Topics 85-87, 90 (Google's margins, take-rates, fees, and revenue paid by advertisers and received by publishers)
 Topic 104(c), (d), (e), (f), (g), (i), (j), (k), (m), (n) (q) (changes, limitations, impacts, latency studies, analysis of flow of queries, contracts, decisions, and efforts related to header bidding, and groups or teams studying header bidding)
 Topics 105-106 (source code, algorithms, and database configurations related to Ad Tech Productions, Ad Tech auctions, and Ad Requests)
 After 2020 for "The operation, design, and expected benefits of Dynamic Allocation, Enhanced Dynamic Allocation, Reserve Price Optimization, Dynamic Revenue Share, Unified Pricing Rules, Open Bidding, and the material features of the Google AdX auction as relevant to Plaintiffs' Fourth Amended Complaint, (Topics 11, 14, 20, 21, 23, 24, 25, 26, 28, 31, 34, 43, 46, 47, 49, 50, 53, 56, 63, 64, 66, 78, 79, 80, 81, 88, 89, 91, 92, 93, 94, 98, 100, 102, 104(a), (b), (h) (l), (o), (p), 107)."
 Mr. ▮▮▮▮ is only designated in your letter to testify regarding these topics "from 2012 – 2020"

We will follow up regarding any other witness-specific or topic-specific issues, raised by your letter.

Again, thank you for the letter, and we look forward to receiving your responses to the above questions.

Zeke

**From:** "SESSIONS, Justina (JKS)" <Justina.Sessions@freshfields.com>
**Date:** Friday, March 29, 2024 at 10:09 PM
**To:** Zeke DeRose III <Zeke.DeRose@LanierLawFirm.com>, Paul Yetter <pyetter@yettercoleman.com>, "MCCALLUM, Robert" <rob.mccallum@freshfields.com>, "Bracewell, Mollie" <mbracewell@yettercoleman.com>, "MAHR, Eric (EJM)" <Eric.MAHR@freshfields.com>
**Cc:** "Moran, David" <dmoran@jw.com>, "Nilsson, William (DAL)" <wnilsson@jw.com>, Mark Lanier <Mark.Lanier@LanierLawFirm.com>, Ashley Keller <ack@kellerpostman.com>, "Peter M. Collier" <marc.collier@nortonrosefulbright.com>, John McBride <john.mcbride@nortonrosefulbright.com>, Jonathan Wilkerson <Jonathan.Wilkerson@LanierLawFirm.com>, "Geraldine W. Young" <geraldine.young@nortonrosefulbright.com>, "Young, Trevor (TX)" <Trevor.Young@oag.texas.gov>, "Peter M. Hillegas" <peter.hillegas@nortonrosefulbright.com>, James Lloyd <James.Lloyd@oag.texas.gov>, Thomas Ray <Thomas.Ray@oag.texas.gov>, "Alex J. Brown" <Alex.Brown@LanierLawFirm.com>
**Subject:** RE: Google AdTech (EDTX): Categories and First Priority of States' 30(b)(6) to Google per Special Master Conference

Dear Zeke,
Please see attached correspondence with 30(b)(6) designations.

Regards,
Tina

**From:** Zeke DeRose III <Zeke.DeRose@LanierLawFirm.com>
**Sent:** Tuesday, March 26, 2024 10:55 AM
**To:** SESSIONS, Justina (JKS) <Justina.Sessions@freshfields.com>; Paul Yetter <pyetter@yettercoleman.com>; MCCALLUM, Robert <rob.mccallum@freshfields.com>; Bracewell, Mollie <mbracewell@yettercoleman.com>; MAHR, Eric (EJM) <Eric.MAHR@freshfields.com>
**Cc:** Moran, David <dmoran@jw.com>; Nilsson, William (DAL) <wnilsson@jw.com>; Mark Lanier <Mark.Lanier@LanierLawFirm.com>; Ashley Keller <ack@kellerpostman.com>; Marc B. Collier <marc.collier@nortonrosefulbright.com>; John McBride <john.mcbride@nortonrosefulbright.com>; Jonathan Wilkerson <Jonathan.Wilkerson@LanierLawFirm.com>; Young, Trevor (TX) <Trevor.Young@oag.texas.gov>; Peter M. Hillegas <peter.hillegas@nortonrosefulbright.com>; James Lloyd <James.Lloyd@oag.texas.gov>; Thomas Ray <Thomas.Ray@oag.texas.gov>; Alex J. Brown <Alex.Brown@LanierLawFirm.com>
**Subject:** Re: Google AdTech (EDTX): Categories and First Priority of States' 30(b)(6) to Google per Special Master Conference

Counsel,

We write to follow up on our email from Friday, March 22, regarding prioritization of the States' Rule 30(b)(6) topics to Google.  Provided below is our further prioritized list of topic groupings.  As discussed previously and in our March 22 email, the general and high-level topics (the first 3 groupings) remain the States' priorities, followed by the UPR and DFP-AdX Tying topic groupings identified in the March 22 email.  We have now prioritized and organized the remaining topic groupings below. We acknowledge that the Special Master's Order (Dkt #291, #293) notes 10 prioritized deposition buckets into which the 107 noticed topics should be grouped. For ease of identifying deponents we have separated the topics into 13 buckets, but understand that Google may want to produce the same witness for multiple topics.

1. GENERAL DISCOVERY (Topics 1-20)
   - Obligations & Communications (Topics 1-4, 18-20)
   - Technical (Topics 6-15, 17)
   - Formats/Links (Topics 5, 16)
2. HIGH LEVEL TECH SPECIFIC TOPICS (Topics 21-36)
3. COMMUNICATIONS, REPRESENTATIONS, AND PURPORTED OMISSIONS (Topics 37-65) (pending DTPA document production)
4. UNIFIED PRICING RULES ("UPR") (Topic 100)
5. DFP-AdX TYING CLAIMS (Topics 66-73)
6. PRIVACY SANDBOX (Topic 36)
7. AD TECH ECONOMICS & IMPACT (Topics 74-97)
8. RESERVE PRICE OPTIMIZATION ("RPO") (Topic 101)
9. BERNANKE (Topic 99)
10. DYNAMIC REVENUE SHARE ("DRS") (Topic 98)
11. DYNAMIC ALLOCATION / ENHANCED DYNAMIC ALLOCATION (Topic 102)
12. HEADER BIDDING (Topics 96, 103, 104)
13. SOURCE CODE (Topic 105-107)

Also, we write to follow up on our meet and confer on Monday regarding Google's questions about the UPR and DFP-AdX Tying topic groupings:

- UNIFIED PRICING RULES ("UPR") (Topic 100)
  - Topic 100(c) ("internal tests, experiments, simulations, or studies, which measure, forecast, predict, study, or research the impact that Your decision to move to a Unified Auction or adopt [Unified/Uniform] Pricing Rules would have or has had on the adoption of Header Bidding"): this subtopic covers Google's general approach to analyzing these issues, as well as specific tests, experiments, simulations, or studies that have been produced by Google.
  - Topic 100(d) ("the number of impressions (as an absolute number and as a percentage of the total number of impressions available in the Unified Auction) that Google Ads or DV360 won slightly above the floor price (where "slightly above" shall mean that the difference between the price that Google Ads or DV360 paid and the floor price or next highest bid does not exceed $0.10 CPM)"): you commented that this appears like a document request and not a 30(b)(6) topic. While this data is also responsive to the States' other discovery requests, the States have not received it. If the data can be produced as documents, then the Google witness should come to the deposition with that data and the States can ask questions about it. The States believe they are, in any event, entitled to ask questions about this relevant topic.
  - Topic 100(e) ("the impact of UPR separate from the move to the first price auction on Your Metrics, Publishers' and/or Advertisers' Metrics, and Your competitors' Metrics"): This subtopic covers analysis and data on this issue in Google's possession.
- DFP-AdX TYING CLAIMS (Topics 66-73)
  - Topics 66-70: We have reviewed these topics and believe they are reasonably specific and targeted, based on the States' tying claims and allegations, so are unclear what further clarification can be provided. We are of course willing to further meet and confer on these more specifically if needed.
  - Topics 71-73: These topics cover testimony generally on the language of form contracts and Google's contracting process and related communications with publishers, and the number of publishers with which Google had such contracts.
    - Also related to these topics are Texas's Second Set of Requests for Production—served on Google on February 9, 2024 and which requested GAM (or AdX-DFP paired), Yavin, and AdX Direct contracts and the identity of publishers with those contracts—to which Google responded on March 11, 2024, not producing any documents but generally offering to meet and confer. The Parties met and conferred on those RFPs and Google's responses on March 19, where Google stated it would take back and consider either producing (a) form contracts and lists of publishers with each form contract or (b) all relevant, responsive publisher contracts, depending on how Google stores and how quickly Google can collect and produce either form of these documents. The States emphasized they were willing to take either type of production, based on the most expeditious form that can be produced. The States believe these discrete categories of documents, in either form, should be able to be produced quickly but have not heard from Google since the March 19 meet and confer. The States request an immediate response from Google as to these RFPs and documents and that these productions occur before the 30(b)(6) deposition on these topics as they are related and would make the deposition more efficient and productive.

As discussed, we can be available to further meet and confer later today on the UPR and Tying topics. We can also continue to discuss after receiving Google's dates for its Rule 30(b)(6) depositions on March 29, per the Special Master's 3/25 Order.

Zeke

---

**From:** "SESSIONS, Justina (JKS)" <Justina.Sessions@freshfields.com>
**Date:** Monday, March 25, 2024 at 10:09 AM
**To:** Zeke DeRose III <Zeke.DeRose@LanierLawFirm.com>, Paul Yetter <pyetter@yettercoleman.com>, "MCCALLUM, Robert" <rob.mccallum@freshfields.com>, "Bracewell, Mollie" <mbracewell@yettercoleman.com>, "MAHR, Eric (EJM)" <Eric.MAHR@freshfields.com>
**Cc:** "Moran, David" <dmoran@jw.com>, "Nilsson, William (DAL)" <wnilsson@jw.com>, Mark Lanier <Mark.Lanier@LanierLawFirm.com>, Ashley Keller <ack@kellerpostman.com>, "Marc B. Collier" <marc.collier@nortonrosefulbright.com>, John McBride <john.mcbride@nortonrosefulbright.com>, Jonathan Wilkerson <Jonathan.Wilkerson@LanierLawFirm.com>, "Geraldine W. Young" <geraldine.young@nortonrosefulbright.com>, "Young, Trevor (TX)" <Trevor.Young@oag.texas.gov>, "Peter M. Hillegas" <peter.hillegas@nortonrosefulbright.com>, James Lloyd <James.Lloyd@oag.texas.gov>, Thomas Ray <Thomas.Ray@oag.texas.gov>, "Alex J. Brown" <Alex.Brown@LanierLawFirm.com>
**Subject:** Re: Google AdTech (EDTX): Categories and First Priority of States' 30(b)(6) to Google per Special Master Conference

2 CT today works, thank you.

- Tina

**From:** Zeke DeRose III <Zeke.DeRose@LanierLawFirm.com>
**Sent:** Monday, March 25, 2024 7:50:30 AM
**To:** SESSIONS, Justina (JKS) <Justina.Sessions@freshfields.com>; Paul Yetter <pyetter@yettercoleman.com>; MCCALLUM, Robert <rob.mccallum@freshfields.com>; Bracewell, Mollie <mbracewell@yettercoleman.com>; MAHR, Eric (EJM) <Eric.MAHR@freshfields.com>
**Cc:** Moran, David <dmoran@jw.com>; Nilsson, William (DAL) <wnilsson@jw.com>; Mark Lanier <Mark.Lanier@LanierLawFirm.com>; Ashley Keller <ack@kellerpostman.com>; Marc B. Collier <marc.collier@nortonrosefulbright.com>; John McBride <john.mcbride@nortonrosefulbright.com>; Jonathan Wilkerson <Jonathan.Wilkerson@LanierLawFirm.com>; Geraldine W. Young <geraldine.young@nortonrosefulbright.com>; Young, Trevor (TX) <Trevor.Young@oag.texas.gov>; Peter M. Hillegas <peter.hillegas@nortonrosefulbright.com>; James Lloyd <James.Lloyd@oag.texas.gov>; Thomas Ray <Thomas.Ray@oag.texas.gov>; Alex J. Brown <Alex.Brown@LanierLawFirm.com>
**Subject:** Re: Google AdTech (EDTX): Categories and First Priority of States' 30(b)(6) to Google per Special Master Conference

Hi Justina,

Thank you for your note and I hope you had a good weekend. We can have folks that can be available to understand any specific questions today at 2pm CT. And then plan any additional discussion Tuesday and this week.

Please let us know if that works, and Geraldine will circulate an invite.

Zeke

Zeke DeRose III - Attorney p: 713-659-5200 w: www.LanierLawFirm.com

**From:** "SESSIONS, Justina (JKS)" <Justina.Sessions@freshfields.com>
**Date:** Friday, March 22, 2024 at 7:23 PM
**To:** Zeke DeRose III <Zeke.DeRose@LanierLawFirm.com>, Paul Yetter <pyetter@yettercoleman.com>, "MCCALLUM, Robert" <rob.mccallum@freshfields.com>, "Bracewell, Mollie" <mbracewell@yettercoleman.com>, "MAHR, Eric (EJM)" <Eric.MAHR@freshfields.com>
**Cc:** "Moran, David" <dmoran@jw.com>, "Nilsson, William (DAL)" <wnilsson@jw.com>, Mark Lanier <Mark.Lanier@LanierLawFirm.com>, Ashley Keller <ack@kellerpostman.com>, "Marc B. Collier" <marc.collier@nortonrosefulbright.com>, John McBride <john.mcbride@nortonrosefulbright.com>, Jonathan Wilkerson <Jonathan.Wilkerson@LanierLawFirm.com>, "Geraldine W. Young" <geraldine.young@nortonrosefulbright.com>, "Young, Trevor (TX)" <Trevor.Young@oag.texas.gov>, "Peter M. Hillegas" <peter.hillegas@nortonrosefulbright.com>, James Lloyd <James.Lloyd@oag.texas.gov>, Thomas Ray <Thomas.Ray@oag.texas.gov>, "Alex J. Brown" <Alex.Brown@LanierLawFirm.com>
**Subject:** RE: Google AdTech (EDTX): Categories and First Priority of States' 30(b)(6) to Google per Special Master Conference

Dear Zeke,
Thanks for providing these priorities.  We are working to identify witnesses and their availability as soon as possible.

As we do that, it would be helpful to have a conversation Monday about what exactly you have in mind on these topics.  For example, Topics 66-73 encompass at least technical issues (e.g. product design and operation), contracts, communications with publishers, and competitive intelligence.  These may require different witnesses and may require different amounts of preparation time depending on what you are seeking. For example, it would be helpful to know if you have specific communications with publishers in mind, if you expect a witness to be prepared to testify generally about how Google communicated with publishers on the topic, or something else.  Similarly, Topic 100 has five different subparts including at least one that appears to call for Google to generate bespoke data.

To be clear, we will work on witness availability in the meantime, but getting more clarity will help us determine the right people.

With respect to the "general discovery" topics, we'll also be glad to discuss your reaction to the offer that we made last Monday.

We are available to discuss on Monday at 10-11 CT or any time after 1 (following our meet and confer on your deposition notices of Sergey Brin and Sundar Pichai).

Regards,
Tina

**From:** Zeke DeRose III <Zeke.DeRose@LanierLawFirm.com>
**Sent:** Friday, March 22, 2024 3:00 PM
**To:** Paul Yetter <pyetter@yettercoleman.com>; MCCALLUM, Robert <rob.mccallum@freshfields.com>; Bracewell, Mollie <mbracewell@yettercoleman.com>; MAHR, Eric (EJM) <Eric.MAHR@freshfields.com>; SESSIONS, Justina (JKS) <Justina.Sessions@freshfields.com>
**Cc:** Moran, David <dmoran@jw.com>; Nilsson, William (DAL) <wnilsson@jw.com>; Mark Lanier <Mark.Lanier@LanierLawFirm.com>; Ashley Keller <ack@kellerpostman.com>; Marc B. Collier <marc.collier@nortonrosefulbright.com>; John McBride

<john.mcbride@nortonrosefulbright.com>; Jonathan Wilkerson <Jonathan.Wilkerson@LanierLawFirm.com>; Geraldine W. Young <geraldine.young@nortonrosefulbright.com>; Young, Trevor (TX) <Trevor.Young@oag.texas.gov>; Peter M. Hillegas <peter.hillegas@nortonrosefulbright.com>; James Lloyd <James.Lloyd@oag.texas.gov>; Thomas Ray <Thomas.Ray@oag.texas.gov>; Alex J. Brown <Alex.Brown@LanierLawFirm.com>

**Subject:** Google AdTech (EDTX): Categories and First Priority of States' 30(b)(6) to Google per Special Master Conference

Counsel,

In accordance with our discussions yesterday during the Special Master Conference and the Special Master's directive, we have listed out the categories of Topics in the States' 30(b)(6) notice to Google that we served on February 21st , so that we can get the first witness produced immediately.

We were asked to (1) categorize the Topics; and (2) prioritize the Topics/categories identifying which category of Topics should go first.

As discussed, we had already identified the first 20 Topics (categorized as "General Discovery/Custodian/Location of Documents Topics") as our threshold depos and highest priority.

However, during conversations yesterday Mr. Yetter and Ms. Bracewell noted that that although that category was the States' priority, producing a witness(es) on that category would not be the quickest. We agreed to give Google a prioritized category other than "General Discovery." (This is based on Google's position that preparing for the general and high-level topics will be more time-intensive and the that forthcoming DTPA productions will not be made until late April.)

Below, we have broken the Topics into 12 categories (with corresponding Topic numbers).

**We have identified the category of DFP AdX TYING CLAIMS (Topics 66-73) and UPR (Topic 100) as Topics that can and should be scheduled immediately for deposition.**

We will follow up next week with our prioritization of the remaining Topics to help move the process forward while working with Google to set a date for the General Discovery deposition.

1. GENERAL DISCOVERY / CUSTODIAN / LOCATION OF DOCUMENTS TOPICS (Topics 1-20)
2. HIGH LEVEL TECH SPECIFIC TOPICS (Topics 21-36)
3. COMMUNICATIONS, REPRESENTATIONS, AND PURPORTED OMISSIONS (Topics 37-65)
4. DFP-AdX TYING CLAIMS (Topics 66-73)
5. AD TECH ECONOMICS & IMPACT (Topics 74-97)
6. DYNAMIC REVENUE SHARE ("DRS") (Topic 98)
7. BERNANKE (Topic 99)
8. UNIFIED PRICING RULES ("UPR") (Topic 100)
9. RESERVE PRICE OPTIMIZATION ("RPO") (Topic 101)
10. DYNAMIC ALLOCATION / ENHANCED DYNAMIC ALLOCATION (Topic 102)
11. POIROT & ELMO (Topic 103)
12. HEADER BIDDING (Topic 104)
13. SOURCE CODE (Topics 105-107)

Yesterday we discussed the fastest path forward was Google identifying a witness and setting a date for the prioritized category and then working with Google with any follow-up discussions related to the category and corresponding Topics.

Have a great weekend.

Zeke

> **Zeke DeRose III**
> **Attorney**
> p: 713-659-5200
> 10940 West Sam Houston Pkwy N, Suite 100
> Houston • Texas • 77064
> www.LanierLawFirm.com



This e-mail is confidential and may be legally privileged. If you have received it in error, you are on notice of its status. Please notify us immediately by reply e-mail and then delete this message from your system. Please do not copy it, use it for any purpose or disclose its contents to any other person; to do so could be a breach of confidentiality. Thank you for your cooperation. Please contact our IT Helpdesk at GlobalITServiceDesk@freshfields.com if you need assistance.

Freshfields Bruckhaus Deringer US LLP has offices in New York, Silicon Valley and Washington, DC. Freshfields Bruckhaus Deringer LLP is a limited liability partnership registered in England and Wales with registered number OC334789, and has offices or associated entities in Austria, Bahrain, Belgium, China, England, France, Germany, Hong Kong, Italy, Japan, the Netherlands, Singapore, Spain, the United Arab Emirates and Vietnam.

Any reference to a partner means a member, or a consultant or employee with equivalent standing and qualifications, of Freshfields Bruckhaus Deringer US LLP, Freshfields Bruckhaus Deringer LLP or any associated firms or entities.

For information about how Freshfields Bruckhaus Deringer processes personal data please refer to this Privacy notice. For further information about Freshfields Bruckhaus Deringer, please refer to our website at www.freshfields.com.

This e-mail is confidential and may be legally privileged. If you have received it in error, you are on notice of its status. Please notify us immediately by reply e-mail and then delete this message from your system. Please do not copy it, use it for any purpose or disclose its contents to any other person; to do so could be a breach of confidentiality. Thank you for your cooperation. Please contact our IT Helpdesk at GlobalITServiceDesk@freshfields.com if you need assistance.

Freshfields Bruckhaus Deringer US LLP has offices in New York, Silicon Valley and Washington, DC. Freshfields Bruckhaus Deringer LLP is a limited liability partnership registered in England and Wales with registered number OC334789, and has offices or associated entities in Austria, Bahrain, Belgium, China, England, France, Germany, Hong Kong, Italy, Japan, the Netherlands, Singapore, Spain, the United Arab Emirates and Vietnam.

Any reference to a partner means a member, or a consultant or employee with equivalent standing and qualifications, of Freshfields Bruckhaus Deringer US LLP, Freshfields Bruckhaus Deringer LLP or any associated firms or entities.

For information about how Freshfields Bruckhaus Deringer processes personal data please refer to this Privacy notice. For further information about Freshfields Bruckhaus Deringer, please refer to our website at www.freshfields.com.

This e-mail is confidential and may be legally privileged. If you have received it in error, you are on notice of its status. Please notify us immediately by reply e-mail and then delete this message from your system. Please do not copy it, use it for any purpose or disclose its contents to any other person; to do so could be a breach of confidentiality. Thank you for your cooperation. Please contact our IT Helpdesk at GlobalITServiceDesk@freshfields.com if you need assistance.

Freshfields Bruckhaus Deringer US LLP has offices in New York, Silicon Valley and Washington, DC. Freshfields Bruckhaus Deringer LLP is a limited liability partnership registered in England and Wales with registered number OC334789, and has offices or associated entities in Austria, Bahrain, Belgium, China, England, France, Germany, Hong Kong, Italy, Japan, the Netherlands, Singapore, Spain, the United Arab Emirates and Vietnam.

Any reference to a partner means a member, or a consultant or employee with equivalent standing and qualifications, of Freshfields Bruckhaus Deringer US LLP, Freshfields Bruckhaus Deringer LLP or any associated firms or entities.

For information about how Freshfields Bruckhaus Deringer processes personal data please refer to this Privacy notice. For further information about Freshfields Bruckhaus Deringer, please refer to our website at www.freshfields.com.

This e-mail is confidential and may be legally privileged. If you have received it in error, you are on notice of its status. Please notify us immediately by reply e-mail and then delete this message from your system. Please do not copy it, use it for any purpose or disclose its contents to any other person; to do so could be a breach of confidentiality. Thank you for your cooperation. Please contact our IT Helpdesk at GlobalITServiceDesk@freshfields.com if you need assistance.

Freshfields Bruckhaus Deringer US LLP has offices in New York, Silicon Valley and Washington, DC. Freshfields Bruckhaus Deringer LLP is a limited liability partnership registered in England and Wales with registered number OC334789, and has offices or associated entities in Austria, Bahrain, Belgium, China, England, France, Germany, Hong Kong, Italy, Japan, the Netherlands, Singapore, Spain, the United Arab Emirates and Vietnam.

Any reference to a partner means a member, or a consultant or employee with equivalent standing and qualifications, of Freshfields Bruckhaus Deringer US LLP, Freshfields Bruckhaus Deringer LLP or any associated firms or entities.

For information about how Freshfields Bruckhaus Deringer processes personal data please refer to this Privacy notice. For further information about Freshfields Bruckhaus Deringer, please refer to our website at www.freshfields.com.

This e-mail is confidential and may be legally privileged. If you have received it in error, you are on notice of its status. Please notify us immediately by reply e-mail and then delete this message from your system. Please do not copy it, use it for any purpose or disclose its contents

to any other person; to do so could be a breach of confidentiality. Thank you for your cooperation. Please contact our IT Helpdesk at GlobalITServiceDesk@freshfields.com if you need assistance.

Freshfields Bruckhaus Deringer US LLP has offices in New York, Silicon Valley and Washington, DC. Freshfields Bruckhaus Deringer LLP is a limited liability partnership registered in England and Wales with registered number OC334789, and has offices or associated entities in Austria, Bahrain, Belgium, China, England, France, Germany, Hong Kong, Italy, Japan, the Netherlands, Singapore, Spain, the United Arab Emirates and Vietnam.

Any reference to a partner means a member, or a consultant or employee with equivalent standing and qualifications, of Freshfields Bruckhaus Deringer US LLP, Freshfields Bruckhaus Deringer LLP or any associated firms or entities.

For information about how Freshfields Bruckhaus Deringer processes personal data please refer to this Privacy notice. For further information about Freshfields Bruckhaus Deringer, please refer to our website at www.freshfields.com.

**CONFIDENTIALITY NOTICE:** This email, including any attachments, is confidential and may be privileged. If you are not the intended recipient please notify the sender immediately, and please delete it; you should not copy it or use it for any purpose or disclose its contents to any other person. Norton Rose Fulbright entities reserve the right to monitor all email communications through their networks.

Norton Rose Fulbright Australia, Norton Rose Fulbright LLP, Norton Rose Fulbright Canada LLP, Norton Rose Fulbright South Africa Inc and Norton Rose Fulbright US LLP are separate legal entities and all of them are members of Norton Rose Fulbright Verein, a Swiss verein. Norton Rose Fulbright Verein helps coordinate the activities of the members but does not itself provide legal services to clients. Details of each entity, with certain regulatory information, are available at nortonrosefulbright.com.

This e-mail is confidential and may be legally privileged. If you have received it in error, you are on notice of its status. Please notify us immediately by reply e-mail and then delete this message from your system. Please do not copy it, use it for any purpose or disclose its contents to any other person; to do so could be a breach of confidentiality. Thank you for your cooperation. Please contact our IT Helpdesk at GlobalITServiceDesk@freshfields.com if you need assistance.

Freshfields Bruckhaus Deringer US LLP has offices in New York, Silicon Valley and Washington, DC. Freshfields Bruckhaus Deringer LLP is a limited liability partnership registered in England and Wales with registered number OC334789, and has offices or associated entities in Austria, Bahrain, Belgium, China, England, France, Germany, Hong Kong, Italy, Japan, the Netherlands, Singapore, Spain, the United Arab Emirates and Vietnam.

Any reference to a partner means a member, or a consultant or employee with equivalent standing and qualifications, of Freshfields Bruckhaus Deringer US LLP, Freshfields Bruckhaus Deringer LLP or any associated firms or entities.

For information about how Freshfields Bruckhaus Deringer processes personal data please refer to this Privacy notice. For further information about Freshfields Bruckhaus Deringer, please refer to our website at www.freshfields.com.

This e-mail is confidential and may be legally privileged. If you have received it in error, you are on notice of its status. Please notify us immediately by reply e-mail and then delete this message from your system. Please do not copy it, use it for any purpose or disclose its contents to any other person; to do so could be a breach of confidentiality. Thank you for your cooperation. Please contact our IT Helpdesk at GlobalITServiceDesk@freshfields.com if you need assistance.

Freshfields Bruckhaus Deringer US LLP has offices in New York, Silicon Valley and Washington, DC. Freshfields Bruckhaus Deringer LLP is a limited liability partnership registered in England and Wales with registered number OC334789, and has offices or associated entities in Austria, Bahrain, Belgium, China, England, France, Germany, Hong Kong, Italy, Japan, the Netherlands, Singapore, Spain, the United Arab Emirates and Vietnam.

Any reference to a partner means a member, or a consultant or employee with equivalent standing and qualifications, of Freshfields Bruckhaus Deringer US LLP, Freshfields Bruckhaus Deringer LLP or any associated firms or entities.

For information about how Freshfields Bruckhaus Deringer processes personal data please refer to this Privacy notice. For further information about Freshfields Bruckhaus Deringer, please refer to our website at www.freshfields.com.

This e-mail is confidential and may be legally privileged. If you have received it in error, you are on notice of its status. Please notify us immediately by reply e-mail and then delete this message from your system. Please do not copy it, use it for any purpose or disclose its contents to any other person; to do so could be a breach of confidentiality. Thank you for your cooperation. Please contact our IT Helpdesk at GlobalITServiceDesk@freshfields.com if you need assistance.

Freshfields Bruckhaus Deringer US LLP has offices in New York, Silicon Valley and Washington, DC. Freshfields Bruckhaus Deringer LLP is a limited liability partnership registered in England and Wales with registered number OC334789, and has offices or associated entities in Austria, Bahrain, Belgium, China, England, France, Germany, Hong Kong, Italy, Japan, the Netherlands, Singapore, Spain, the United Arab Emirates and Vietnam.

Any reference to a partner means a member, or a consultant or employee with equivalent standing and qualifications, of Freshfields Bruckhaus Deringer US LLP, Freshfields Bruckhaus Deringer LLP or any associated firms or entities.

For information about how Freshfields Bruckhaus Deringer processes personal data please refer to this Privacy notice. For further information about Freshfields Bruckhaus Deringer, please refer to our website at www.freshfields.com.

This e-mail is confidential and may be legally privileged. If you have received it in error, you are on notice of its status. Please notify us immediately by reply e-mail and then delete this message from your system. Please do not copy it, use it for any purpose or disclose its contents to any other person; to do so could be a breach of confidentiality. Thank you for your cooperation. Please contact our IT Helpdesk at GlobalITServiceDesk@freshfields.com if you need assistance.

Freshfields Bruckhaus Deringer US LLP has offices in New York, Silicon Valley and Washington, DC. Freshfields Bruckhaus Deringer LLP is a limited liability partnership registered in England and Wales with registered number OC334789, and has offices or associated entities in Austria, Bahrain, Belgium, China, England, France, Germany, Hong Kong, Italy, Japan, the Netherlands, Singapore, Spain, the United Arab Emirates and Vietnam.

Any reference to a partner means a member, or a consultant or employee with equivalent standing and qualifications, of Freshfields Bruckhaus Deringer US LLP, Freshfields Bruckhaus Deringer LLP or any associated firms or entities.

For information about how Freshfields Bruckhaus Deringer processes personal data please refer to this Privacy notice. For further information about Freshfields Bruckhaus Deringer, please refer to our website at www.freshfields.com.

This e-mail is confidential and may be legally privileged. If you have received it in error, you are on notice of its status. Please notify us immediately by reply e-mail and then delete this message from your system. Please do not copy it, use it for any purpose or disclose its contents to any other person; to do so could be a breach of confidentiality. Thank you for your cooperation. Please contact our IT Helpdesk at GlobalITServiceDesk@freshfields.com if you need assistance.

Freshfields Bruckhaus Deringer US LLP has offices in New York, Silicon Valley and Washington, DC. Freshfields Bruckhaus Deringer LLP is a limited liability partnership registered in England and Wales with registered number OC334789, and has offices or associated entities in Austria, Bahrain, Belgium, China, England, France, Germany, Hong Kong, Italy, Japan, the Netherlands, Singapore, Spain, the United Arab Emirates and Vietnam.

Any reference to a partner means a member, or a consultant or employee with equivalent standing and qualifications, of Freshfields Bruckhaus Deringer US LLP, Freshfields Bruckhaus Deringer LLP or any associated firms or entities.

For information about how Freshfields Bruckhaus Deringer processes personal data please refer to this Privacy notice. For further information about Freshfields Bruckhaus Deringer, please refer to our website at www.freshfields.com.

# EXHIBIT B
# FILED UNDER SEAL

```
 1                  IN THE UNITED STATES DISTRICT COURT
                   FOR THE EASTERN DISTRICT OF TEXAS
 2                         SHERMAN DIVISION

 3   THE STATE OF TEXAS, et al,        §
                                       §
 4                  Plaintiffs,        §
                                       §
 5        vs.                          §        Case No.:
                                       §        4:20-cv-00957-SDJ
 6   GOOGLE, LLC,                      §
                                       §
 7                  Defendant.         §

 8

                          STATUS CONFERENCE
 9                   TRANSCRIPT OF PROCEEDINGS
                BEFORE THE HONORABLE SEAN D. JORDAN
10                  UNITED STATES DISTRICT JUDGE

11           Thursday, April 18, 2024; 10:02 a.m.
                         Plano, Texas
12

13   APPEARANCES OF COUNSEL:
     (Continued on page 2.)
14
     FOR THE PLAINTIFF STATES:
15
     Zeke DeRose, III
16   THE LANIER LAW FIRM, PC - Houston
     10940 W. Sam Houston Parkway N.
17   Suite 100
     Houston, Texas 77064
18
     Jonathan P. Wilkerson
19   THE LANIER LAW FIRM
     6810 Cypress Creek Parkway
20   Houston, Texas 77069

21

22       ********************************************

23               GAYLE WEAR, RPR, CRR
              Federal Official Court Reporter
24                 7940 Preston Road
                  Plano, Texas 75024
25            gayle_wear@txed.uscourts.gov
```

```
 1    FOR THE PLAINTIFF STATES:
      (Continued from page 1.)
 2
      Ashley C. Keller
 3    KELLER LENKNER LLC
      150 N. Riverside Plaza, Suite 4270
 4    Chicago, Illinois 60606

 5    Geraldine W. Young
      NORTON ROSE FULBRIGHT US LLP - Houston
 6    1301 McKinney, Suite 5100
      Houston, Texas 77010-3095
 7
      John W. McBride
 8    NORTON ROSE FULBRIGHT
      1045 W Fulton Market, Suite 1200
 9    Chicago, Illinois 60607

10    James Lloyd
      Trevor Young
11    STATE OF TEXAS, OFFICE OF THE ATTORNEY GENERAL
      ANTITRUST DIVISION
12    300 W. 15th Street
      Austin, Texas 78701
13
      FOR THE DEFENDANT:
14
      R. Paul Yetter
15    Mollie Bracewell
      YETTER COLEMAN, LLP - Houston
16    811 Main Street, Suite 4100
      Houston, Texas 77002
17
      Robert John McCallum
18    FRESHFIELDS BRUCKHAUS DERINGER US LLP
      601 Lexington Avenue
19    New York, New York 10022

20    Justina Kahn Sessions
      KEKER, VAN, NEST & PETERS LLP - San Francisco
21    633 Battery Street
      San Francisco, California 94111
22

23                                *    *    *

24

25
```

```
 1    ALSO PRESENT:

 2         David T. Moran, Special Master
           JACKSON WALKER LLP - Dallas
 3         2323 Ross Avenue, Suite 600
           Dallas, Texas 75201
 4
           Roger P. Alford
 5         UNIVERSITY OF NOTRE DAME
           3119 Eck Hall of Law
 6         Notre Dame, Indiana 46556

 7         Lauren Vaca

 8
                             *    *    *
 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1    the States directly, like Nevada and Alaska have done, deal

2    with us as opposed to pushing it off to the agencies.

3           I know the agencies now are not going to object to

4    the special master's recommendation, but I don't think it

5    would hurt if the Court at least gave us some guidance to the

6    States that they should be dealing directly with Google in

7    terms of agency discovery, depositions, and things like that.

8    So but that's up to the Court.  That would be -- from our

9    perspective, that would be very helpful and efficient.

10          THE COURT:  Well, let me -- I think I made this

11   point earlier, but just in case it's not abundantly clear, I

12   do think that the State of Texas and every other state should

13   be coordinating responses, documents, witnesses with all

14   state agencies.  If there's a reason that the states can't do

15   that, the State of Texas or another state can't do that,

16   then -- and that becomes a real point of contention, then the

17   Court can take up an issue along those lines.

18          But my view is that the Attorney General's Office

19   of the State of Texas and the lawyers that its retained to

20   represent the State of Texas are representing these agencies,

21   and that means that they are the lawyers for the agencies and

22   they should be coordinating the agencies' response.  And I

23   would expect the same to be true of the other states.

24          I have some experience with the role of the Texas

25   Attorney General and the power of the Texas Attorney General.

1    And so I'm happy to see briefing, if anyone wants to do

2    briefing, on why any state attorney general cannot do that in

3    this instance where they are representing the state in this

4    court.  But my understanding and my expectation will be that

5    the state -- the States and, by that, the Attorney General's

6    Office are going to coordinate that.  And, yes, they are

7    going to have to work through state agencies and maybe

8    in-house counsel at state agencies, and that's what the

9    attorney general does.  I hope that's clear enough.

10              Anything -- I assume there's no questions.

11              Mr. Yetter, anything else?

12              MR. YETTER:  Your Honor, that was very helpful.

13              Just one last couple of things.  Before we focused

14    on the 30(b)6 deposition of Mr. ███████, I was conveying to

15    the Court, hopefully at a high level, that Google is doing

16    everything it can and there has been a substantial amount of

17    discovery.  Our target is to finish fact discovery on

18    schedule as the Court has already set it.

19              We have some concerns that the States seem to be

20    moving toward positioning themselves to seek a delay of the

21    fact discovery cutoff.  I raise this only because -- and I

22    hope that's not so, but I raise it only because that is -- we

23    are doing everything on our side, the Google side, to make

24    sure that that does not happen.

25              The Court has given lots of thought to the

1    schedule.  I know that we originally asked for more time, but

2    the Court set the schedule, and we have tried very hard, and

3    we think successfully, to meet that schedule.  There's a lot

4    to do between now and early May, but that is the schedule

5    that we're on.  And with that, I don't have any other

6    comments, unless the Court has some questions for me.

7                THE COURT:  No, not at this time.

8                Mr. DeRose, anything else you needed to say?

9                MR. DEROSE:  May I?

10               THE COURT:  Yes, go ahead.

11               MR. DEROSE:  Just real quick.  And by "quick," I

12   mean not talk too fast.

13               The State of Texas and the other states have been

14   adamant from the get-go that we want a trial date.  Your

15   Honor gave it to us.  It starts jury selection March of next

16   year, and we're looking forward to being here.  But

17   Mr. Yetter did note -- and I feel obligated to at least put

18   this in context that delay in this case is not a good

19   thing -- it seems that the States will be moving toward

20   delay, and I hope that's not so.  In briefing, they said it

21   looks like the plaintiffs are manufacturing some basis for

22   extending the fact discovery deadline.

23               We need the facts that we need to be able to try

24   the case to overcome which I'm sure will be hundreds of pages

25   of summary judgment and Daubert motions.  For context, DTPA

1    discovery was requested November 13th, 2023.  It took a

2    special master order on March 29th to start that document

3    production.  We expect to get 200,000 of those documents

4    today -- or last night, to be candid -- with 15 days left.

5              The privilege log issues were noted November 22nd,

6    2023.  It took a special master order recently to get those

7    blow-backs to start coming in in mid to late April.  We have

8    as of now, from those 350,000 privilege log entries, 39,000

9    documents that were improperly withheld.

10             Meta discovery, which was first asked for in

11   January of 2023, Your Honor knows we just got a deposition

12   date, we're starting to get some information related to that.

13             For 30(b)6) topics, which was obviously a big part

14   of our conversation that was issued in February, we still

15   don't have 30 to 50 topics that have been given a witness,

16   or what are we doing on those, let alone dates.  I'm almost

17   finished, Your Honor.

18             Dashboards.  We were fighting with the MDL and

19   Google every single week for a year to say we think these

20   dashboards are relevant and responsive to outstanding

21   discovery.  At the end of March, after a 30(b)6) deposition

22   and after multiple meetings with the special master, we

23   started getting these multi-whatever -- there were millions

24   of dashboards at Google, but we started getting dashboard

25   production, which is very helpful and exactly what we need to

1    move forward.

2            If we could squeeze this all in and would have

3    gotten some of this not in November, not in December,

4    January, maybe even February, we wouldn't be where we are.

5    But to say that these sovereign states are manufacturing some

6    basis for an extension, we are reacting to the reality of the

7    playing field.

8            We do not want to give up that trial date, and we

9    have been adamant about that and have been forcing the fact

10   that we think this can get done, but we are where we are,

11   regardless of how we got here or what could have or should

12   have happened.  And we are extremely grateful for the

13   progress that Google has been making with us and with the

14   guidance of the special master.  But we do need to discuss

15   the reality of if we're just now getting 200,000 documents

16   that none of us can review yet, and if these topics have not

17   been designated, what do we need to do and what are those

18   incremental changes that, hopefully, and our request would

19   be, if we get to this point, does not move that trial date,

20   but is there room in Your Honor's schedule to say these are

21   the specific depositions that will take place, nothing more,

22   nothing less.

23           But when we find out we have three -- potentially

24   three million documents related to our DTPA and Section 2

25   claims related to Meta, it's concerning that we may not have

1    enough time.  And maybe I've just watched too much Final

2    Four, but I think arguably they have been effective with

3    running out this clock.  And so we will have a conversation.

4    I think, of course, everything is appropriate for Your Honor,

5    but I know we don't need to get you into the weeds of

6    discovery.

7            I think we can make a suggestion of how do we

8    handle it.  We want it to be very limited if we are going to

9    extend anything.  We want it to be very specific to

10   depositions and what we're doing and what happens with the

11   expert report.  But where I stand today, based on the

12   information that I've had, and how the last few months have

13   transpired, I'm not sure that 15 days is enough to get this

14   information in and these depositions scheduled, despite the

15   heroic efforts by Google and the States to double and

16   triple-track depositions.

17           THE COURT:  All right.  Thank you, Mr. DeRose.

18           Mr. Yetter, do you have -- yes, go ahead.

19           MR. YETTER:  Your Honor, this is really not the

20   forum to go point by point and dispute counsel, but I did

21   want to correct one likely inadvertent fact that counsel

22   gave.  On the DTPA discovery, which didn't get started for a

23   couple of months after they served the discovery in November,

24   and we responded in December, and the States then picked it

25   back up again earlier this year, we have produced 90 percent

1    of the documents already.  So there isn't 200,000 documents

2    ready to go, and there's 20,000 documents left to be

3    produced.  We believe either today or tomorrow they would be

4    produced.  So 90 percent has already been produced.

5            There has been a tremendous amount, as counsel said

6    correctly, a tremendous amount of discovery in the last 60

7    days that Google has produced, all of which lines up for the

8    depositions that are scheduled.  The States continue to

9    schedule more depositions; 18 third parties just in the last

10   two weeks, I believe, is the number.  We are going to do

11   whatever it takes to get all that done.  I raise this -- I

12   don't know if this is an issue for the Court today, but this

13   is an issue that we see coming, and that's why I wanted to

14   flag the Court on it.

15            THE COURT:  All right.  Thanks to both of you.

16   Again from, you know, my perspective, it seems to me that the

17   parties are working very hard to get everything done by the

18   close of fact discovery.  And if issues are coming up with

19   regard to a potential requested extension of deadlines or a

20   request that certain things be done past May 3, you know,

21   those are issues that I anticipate would first be raised with

22   the special master.  With that said, as I've mentioned in

23   terms of today, I think -- you may have other issues and

24   there's things that with regard to particular disputes that

25   remain active this afternoon, if the parties are agreeable to

1    streamline it, I may be able to just make some calls so that

2    we can keep this going.

3              But anyway, we will stand in recess for the moment.

4    I will see you all back at one o'clock.

5              THE COURT SECURITY OFFICER:  All rise.

6              (Adjourned at 10:50 a.m.)

7                        *    *    *    *    *

8                   CERTIFICATE OF OFFICIAL REPORTER

9

10             I, Gayle Wear, Federal Official Court Reporter, in

11   and for the United States District Court for the Eastern

12   District of Texas, do hereby certify that pursuant to Section

13   753, Title 28 United States Code, that the foregoing is a

14   true and correct transcript of the stenographically reported

15   proceedings held in the above-entitled matter and that the

16   transcript page format is in conformance with the regulations

17   of the Judicial Conference of the United States.

18

19                   Dated 20th day of April 2024.

20

21

22             /s/ Gayle Wear
               GAYLE WEAR, RPR, CRR
23             FEDERAL OFFICIAL COURT REPORTER

24

25

# EXHIBIT C
# FILED UNDER SEAL

```
 1              IN THE UNITED STATES DISTRICT COURT
                FOR THE EASTERN DISTRICT OF TEXAS
 2                       SHERMAN DIVISION

 3

    THE STATE OF TEXAS, et al,        §
 4                                     §
                    Plaintiffs,        §
 5                                     §
        vs.                            §      Case No.:
 6                                     §      4:20-cv-00957-SDJ
    GOOGLE, LLC,                       §
 7                                     §
                    Defendant.         §
 8

 9                     STATUS CONFERENCE
                  TRANSCRIPT OF PROCEEDINGS
10           BEFORE THE HONORABLE SEAN D. JORDAN
                 UNITED STATES DISTRICT JUDGE
11

            Thursday, February 15, 2024; 10:04 a.m.
12                       Plano, Texas

13

    APPEARANCES OF COUNSEL:
14  (Continued on page 2.)

15  FOR THE PLAINTIFF STATES:

16  W. Mark Lanier
    THE LANIER LAW FIRM
17  6810 FM 1960 West
    P. O. Box 691448
18  Houston, Texas 77269-1448

19  Jonathan P. Wilkerson
    THE LANIER LAW FIRM
20  6810 Cypress Creek Parkway
    Houston, Texas 77069

21

22      ************************************************

23              GAYLE WEAR, RPR, CRR
             Federal Official Court Reporter
24                 7940 Preston Road
                  Plano, Texas 75024
25           gayle_wear@txed.uscourts.gov
```

```
 1   FOR THE PLAINTIFF STATES:
     (Continued from page 1.)
 2
     Zeke DeRose, III
 3   THE LANIER LAW FIRM, PC - Houston
     10940 W. Sam Houston Parkway N.
 4   Suite 100
     Houston, Texas 77064
 5
     Geraldine W. Young
 6   NORTON ROSE FULBRIGHT US LLP - Houston
     1301 McKinney, Suite 5100
 7   Houston, Texas 77010-3095
 8   James Lloyd
     Trevor Young
 9   STATE OF TEXAS, OFFICE OF THE ATTORNEY GENERAL
     ANTITRUST DIVISION
10   300 W. 15th Street
     Austin, Texas 78701
11
12   FOR THE DEFENDANT:
13   R. Paul Yetter
     Mollie Bracewell
14   YETTER COLEMAN, LLP - Houston
     811 Main Street, Suite 4100
15   Houston, Texas 77002
16   Robert John McCallum
     FRESHFIELDS BRUCKHAUS DERINGER US LLP
17   601 Lexington Avenue
     New York, New York 10022
18
     ALSO PRESENT:
19
         Roger P. Alford
20       UNIVERSITY OF NOTRE DAME
         3119 Eck Hall of Law
21       Notre Dame, Indiana 46556
22                              *    *    *
23
24
25
```

```
 1    Google in as timely a manner as possible.
 2              On the Google side of the ledger, I'll say that,
 3    you know, everyone in this courtroom acknowledges that there
 4    has been a tremendous amount of documents produced -- I don't
 5    know if the number is six million at this point, that's the
 6    number I see thrown around -- but I think it's important for
 7    everyone to recognize that the mere fact that a certain
 8    number of documents has been produced does not necessarily
 9    mean So we're done, or, We're effectively done with document
10    production, if there are more materials that are relevant and
11    that should be produced.
12              I understand that it is a marker, it's an important
13    data point, but I don't think it means that we're necessarily
14    at the end of the road.  I think the consideration remains if
15    there are discovery requests that are out there that are
16    relevant that are appropriate, that production of materials
17    and information is still on the table.
18              Those are just overarching observations.
19              Two other things I want to note on discovery.  One
20    is that I don't know if this is necessary -- I think this
21    is -- well, I know this is covered somewhat in the report and
22    recommendation, but I will say that with regard to non-party
23    Meta in this case, if the States are going to want to do
24    discovery, I do think you're going to need to do a motion.
25    Just to be clear, I think you'll need to do a motion.
```

```
 1              The other point I want to raise has to do with --
 2    again, this is discovery related -- in your filings, this is
 3    your briefing to the special master in advance of this
 4    February 22 conference with the special master, there is a
 5    lot of back and forth, but I'll say maybe more so on the
 6    States' side, in terms of talking about issues with regard to
 7    things like the dashboards, things like some of the I guess
 8    you would call it the technical documents and those
 9    materials.  And it feels like there is back and forth about
10    what records Google has, what records Google keeps, whether
11    it's ESI format or otherwise.  And at least in the States'
12    filing, there are reflections of what's happened in
13    meet-and-confer discussions about that.
14              And in order to approach these types of areas of
15    discovery most efficiently -- and I think this goes both
16    ways.  By the way, I think there are issues that Google has
17    raised that also call this to mind.  I don't know if the
18    parties have considered this.  I don't know if the parties
19    have already had discussions about this.  But I would at
20    least suggest that the parties think about records custodian
21    depositions.
22              And those kinds of depositions -- this is a general
23    matter, particularly in complex litigation -- can be
24    extremely helpful, they can be extremely useful in moving
25    things forward.  And I'll just put this on the table.  They
```

1   can, in many instances, sort of take out that middleman of

2   you're working through the other side's counsel about what

3   they have and where they have it and what it looks like, and

4   you're going back and forth and back and forth and back and

5   forth.  And you take a records custodian or more than one

6   records custodian depositions and you're kind of cutting out

7   the middleman.  You're getting straight to the heart of

8   what's there.

9          My concern about, you know, endless -- or not

10  endless back-and-forths, but back-and-forths that don't

11  get -- don't make a lot of progress is that they can really

12  drag out the discovery process.  And let's face it, the

13  discovery deadlines we have in this case are ambitious.  I

14  think they are doable for the parties.  But I do think that

15  looking at something like record custodian depositions might

16  be very wise for the parties.

17         And if it means that -- and I mean for both sides.

18  I mean, I can see Google wanting them.  I can see the States

19  wanting them.  I think it might be very helpful moving this

20  forward.  So I'm going to suggest to the parties that you

21  think about doing that and talk to the special master about

22  doing that if you would like.

23         But if it means we also need to do any adjustments

24  on depositions or numbers, you know, I'm open to hearing

25  that.  Although, I think the parties have a pretty good

1        THE COURT:  All right.  We will now stand in

2   recess.  Thank you.

3        THE COURT SECURITY OFFICER:  All rise.

4            (Adjourned at 11:22 a.m.)

5            *    *    *    *    *

6        CERTIFICATE OF OFFICIAL REPORTER

7

8

9        I, Gayle Wear, Federal Official Court Reporter, in

10  and for the United States District Court for the Eastern

11  District of Texas, do hereby certify that pursuant to Section

12  753, Title 28 United States Code, that the foregoing is a

13  true and correct transcript of the stenographically reported

14  proceedings held in the above-entitled matter and that the

15  transcript page format is in conformance with the regulations

16  of the Judicial Conference of the United States.

17

18            Dated 18th day of February 2024.

19

20

21            /s/ Gayle Wear
              GAYLE WEAR, RPR, CRR
22            FEDERAL OFFICIAL COURT REPORTER

23

24

25

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| THE STATE OF TEXAS, et al., <br><br> Plaintiffs, <br><br> v. <br><br> GOOGLE LLC, <br><br> Defendant. | Civil Action No. 4:20-cv-00957-SDJ |

### [PROPOSED] ORDER GRANTING PLAINTIFF STATES' MOTION FOR MODIFICATION OF SCHEDULING ORDER

This Court, having considered Plaintiff States' Motion for Modification of Scheduling Order, filed April 26, 2024, hereby finds that the Motion should be **GRANTED**. The Scheduling Order, Dkt. 194, is hereby modified as follows:

- Plaintiff States may take up to 16 additional, already-noticed depositions (or their hours-equivalent) by May 24, 2024; and

- All subsequent case deadlines shall be extended by three weeks.

IT IS SO **ORDERED**.

1