# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# SHERMAN DIVISION

| | |
|---|---|
| THE STATE OF TEXAS, et al., § § Plaintiffs, § v. § § GOOGLE LLC, § § Defendant. § § § § | Civil Action No. 4:20-cv-00957-SDJ |

## DEFENDANT GOOGLE'S OBJECTIONS TO
## REPORT AND RECOMMENDATION (ECF NO. 423)

**FILED UNDER SEAL**

**INTRODUCTION**

Google respectfully objects to the Report & Recommendation ("Report"), ECF No. 423. The Report recommends over ten hours of examination of top Google officials even though there are less intrusive sources for the identified topics. This recommendation errs because Plaintiffs have not made the showing required to obtain apex depositions in the Fifth Circuit, namely that Google's co-founder Sergey Brin and CEO Sundar Pichai have unique knowledge relevant to this case and that Plaintiffs have exhausted less intrusive means of discovery.

Under law in this Circuit for deposing high-ranking corporate officers, neither should be deposed because they do not have unique knowledge relevant to this case. At a minimum, Plaintiffs should be required to exhaust less intrusive means—including taking the deposition of Neal Mohan[1]—before subjecting two of the most senior Google executives to depositions mainly on the same subject: the DoubleClick acquisition.

For three reasons, the Court should decline to adopt the recommendations as to Messrs. Brin and Pichai.

*First*, the Report errs in applying the law and is wrong on the facts. It makes findings of "unique knowledge" of Messrs. Pichai and Brin that are unsupported or contradicted by the record. The conclusion that Mr. Pichai had unique involvement in the DoubleClick acquisition is erroneous given his role at the company in 2008 and the undisputed record. The Report also misapplies Fifth Circuit law on deposing high-ranking officials by placing unwarranted emphasis on the claimed "importance" of the case and conflating "unique" knowledge with merely relevant knowledge.

---

[1] Google does not object to the recommendation that Neal Mohan, a former DoubleClick top executive and now CEO of YouTube, be deposed personally for a limited time. Google's instant objections are focused on the Report's recommendation that Google's CEO Sundar Pichai and its co-founder Sergey Brin also be subject to depositions.

1

**FILED UNDER SEAL**

*Second*, the Report does not recommend the least intrusive means for discovery. Without limiting the substantive scope, the Report recommends allowing depositions from the executives without regard to sequencing or subject matter. This is so even though the same main reason cuts across all three depositions—the DoubleClick acquisition. In this Circuit, parties seeking to depose a high-ranking official must exhaust less-intrusive means before subjecting the executive to a deposition. Here, at minimum, this requires Plaintiffs first to depose Mr. Mohan and then see whether more examination, if any, is necessary.

*Third*, due to the special-master briefing process and burden shifting here, the Report relies on arguments Plaintiffs raised for the first time in oral argument that were not fully briefed.

## FACTUAL BACKGROUND

### I. Sergey Brin and Sundar Pichai are two of Google's highest executives.

Plaintiffs seek to depose two top Google officials. Mr. Brin is a co-founder of Google and a board member. Mr. Pichai is the CEO of Alphabet, Google's parent company and also a board member.

Plaintiffs primarily identify the 2008 DoubleClick acquisition as the basis for both depositions. During that time period, Mr. Pichai worked on Google's Chrome web browser. Mr. Pichai did not assume responsibility for Google's ads business until he became CEO in 2015. Mr. Brin co-founded Google in 1998 and was its president until 2019.

### II. Neither Mr. Brin nor Mr. Pichai possesses unique personal knowledge.

#### A. 2008 DoubleClick Acquisition (Brin & Pichai)

Plaintiffs assert that Mr. Brin and Mr. Pichai have knowledge of Google's 2008 acquisition of DoubleClick. Notably, Plaintiffs do *not* allege that the DoubleClick acquisition was anticompetitive. Rather, they say that Google's alleged monopolization began later, after it supposedly altered the design of the ad server acquired through DoubleClick. *See* Fourth Am.

2

**FILED UNDER SEAL**

Compl. ("FAC") ¶¶ 19, 245-46, 257.

With respect to Mr. Brin, Plaintiffs assert that he "actively participated" in discussions prior to the acquisition and "was a custodian of multiple key and relevant documents." Pls.' Br. 6-7, ECF No. 374. In one cited email Mr. Brin offers a one-line commentary on the deal team's assessment of options. *Id.*, Ex. 7. The other document Plaintiffs cited lists Mr. Brin as a "custodian," which means only that he had access to the document but did not necessarily contribute to it. *Id.*, Ex. 8.

With respect to Mr. Pichai, Plaintiffs claim that he was "personally involved" in the acquisition based on (i) an email in which he responds to a company-wide email announcing the acquisition with congratulations, *id.* Ex. 4, and (ii) his transmitting a "board update" email that included points regarding the acquisition sourced from other company documents, *id.* Ex. 3. Plaintiffs noticed a Rule 30(b)(6) topic on "Google's acquisition of DoubleClick and any exclusive access or rights afforded to AdX after and as a result of that acquisition." (Ex. 1 at Topic 66 (Pls.' 30(b)(6) Notice). Google designated two corporate representatives on this topic: ▮▮▮▮ and Neal Mohan. (Ex. 2, Apr. 24, 2024 Email.) When Plaintiffs deposed Mr. ▮▮▮ on April 19, they spent over 6 hours asking him about dynamic revenue share rather than other topics. Mr. ▮▮▮ has offered more availability for May 2-3. Mr. Mohan's deposition has been offered for May 3. (Ex. 3, Apr. 25, 2024 Email). Mr. Mohan was DoubleClick's senior vice president of strategy and product management before it was acquired by Google. He then served for seven years as Google's senior vice president of its display ads business, before becoming YouTube's CEO and chief product officer. He was deposed in the Virginia case. *See* ECF No. 349-1. These depositions can cover what Plaintiffs say they need to know about the DoubleClick acquisition, including documents they cite to justify deposing Mssers. Brin and Pichai on this

**FILED UNDER SEAL**

topic. *See* Google's Br. Supporting Mot. for Prot. Order ("Google's Br."), ECF No. 349-1 at 4-5 & Exs. A, B, E, F.

Beyond that, the DoubleClick acquisition and later product development involved many employees at DoubleClick and Google Plaintiffs could have deposed. *See, e.g.*, Nov. 3, 2023 MDL Dep.; GOOG-AT-MDL-7173923 (Oct. 28, 2021 DOJ Dep.); GOOG-AT-MDL-7178292 (Aug, 12, 2021 DOJ Dep.) (product manager working on the integration and development of DoubleClick products); GOOG-AT-MDL-7169640 (Oct. 2, 2020 DOJ Dep.). Plaintiffs could have deposed a number of these persons with actual involvement in the product integrations after Google's acquisition of DoubleClick, but chose not to.

### B. 2008 Microsoft Discussion (Pichai)

Plaintiffs say Mr. Pichai was "personally involved and has knowledge regarding Google's strategy as to its competitor Microsoft." Pls.' Br. at 6. In support, they cite one 2008 document. Again, this is seven years before he became CEO, when he was working on the team developing Google's Chrome browser. *See* Google's Br., Ex. G. In that email chain, he reports "rumors that Microsoft has planned a feature" that "could have broader implications on the way [Google] serve adsense ads," and he "called [his] contact at Microsoft and . . . arranged for a meeting." *Id.* Notably, one of eight other people on those emails is *Mr. Mohan*, with whom Plaintiffs may address this particular email in his upcoming deposition.

### C. 2018 Network Bidding Agreement (Pichai)

As for the NBA, Plaintiffs allege that Google misrepresented that "all participants in the unified auction . . . compete[d] equally." FAC ¶ 586. They say Mr. Pichai, by then CEO, has relevant knowledge of this claim because he had "final approval" of the NBA. Pls.' Br. at 8. That is untrue. *See, e.g.*, Google's Br., Ex. H ("████████████████████████████████████████████████████"). Nor was he a signatory.

4

**FILED UNDER SEAL**

In any event, Plaintiffs have noticed a Rule 30(b)(6) topic, "Any analysis conducted by or for You in connection with having Meta/Facebook use Open Bidding, including analysis of the minimum spend commitment needed to deter Meta/Facebook from using Header Bidding in a significant way, as well as any concerns You had or expressed (internally or externally) regarding Facebook potentially partnering with Amazon to use Header Bidding." Ex. 1 at Topic 97. Google designated Mr. ▮▮▮▮ to testify on this topic. *See* Ex. 4 (Mar. 29, 2024 Ltr.) (designating him as Google's 30(b)(6) witness).

In addition, Plaintiffs have access to significant witness testimony about the NBA from parallel litigation. *See, e.g.*, GOOG-AT-MDL-7173923 (Oct. 28, 2021 DOJ Dep.); GOOG-AT-MDL-7177356 (Oct. 6, 2021 DOJ Dep.); GOOG-AT-MDL-7178559 (Sept. 28, 2021 DOJ Dep.); GOOG-AT-MDL-7174888 (Aug. 10, 2021 DOJ Dep.); GOOG-AT-MDL-7179591 (Jul. 21, 2021 DOJ Dep.); GOOG-AT-MDL-7170602 (Oct. 26, 2020 DOJ Dep.). They never articulated why that discovery, or the coming 30(b)(6) testimony, is not enough.

To support claims of relevance, Plaintiffs cite nearly-identical versions of an employee's application for promotion that mention the NBA in passing. *See* Google's Br., Ex. C. These documents do not say, much less prove, that Mr. Pichai has *unique* knowledge of the NBA that cannot be or has not been secured from other sources. In fact, Plaintiffs never sought to depose this employee nor *any* person listed as a ▮▮▮▮▮▮▮▮▮▮▮▮ on the summary of the deal that was sent to Mr. Pichai. *See* Google Br., Ex. H.

**PROCEDURAL BACKGROUND**

Google moved for protection on April 9, 2024. ECF No. 349. Plaintiffs responded six days later. ECF No. 375. Under the special-master briefing schedule, no reply was allowed or filed. *See* ECF No. 339 at 5. The Special Master heard arguments three days later, on April 18.

5

At the hearing, Plaintiffs modified their theory of relevance from what they told Google in earlier meet-and-confers and stated in Plaintiffs' opposition. Plaintiffs argued that the depositions of these executives was critical to proving Google's *intent* to monopolize since intent would *not* appear in the documents.

> The main overarching point I would make -- and it applies to the CEO as well -- is intent really matters in these kinds of antitrust cases.… The other feature that I think comes from these cases is precisely because the antitrust laws exist people don't document their intent in careful memos that lay out their anti-competitive designs.... And by its nature of these sorts of intentions are going to be limited to the very top of an organization like Google. They're not sending around a memo to everybody copied on that e-mail saying here's all the anticompetitive stuff we're going to do with the DoubleClick asset. So we've got to be able to depose someone like Mr. Brin, who had the familiarity that he did with those assets and was willing to pay for them, to figure out why pay more.

Apr. 18 Hr'g Tr. at 118:24-20:18. Plaintiffs also argued that the "importance" of their case made executive depositions proper, regardless of the burden-shifting test. "This is not a $75,000 and one penny diversity case. This is a case by 17 sovereign States. And we're seeking to break up Google. . . . The allegations that we're making are real serious, so it means that high level people have to get in a chair." *Id.* at 121:9-17. In contrast, their brief focuses on burden shifting legal standard and has only a passing reference to "the stakes of this litigation." Pls.' Br. at 1.

The Report issued on April 25 recommending that depositions of Messrs. Mohan, Pichai, and Brin proceed for up to a total of 10.5 hours of testimony from these officials. The Report significantly relies on arguments raised for the first time at the hearing. Thus, it notes that the "States stressed in oral argument the importance of this case," Report at 5; quotes arguments about intent and the "stakes" of the case; *id.* at 2; and cites arguments about intent, *id.* at 4.

Under Fed. R. Civ. P. 53(f), the Court is to "decide *de novo* all objections to findings of fact made or recommended by" the Special Master. *See also* ECF No. 213 (adopting Rule 53(f)). In "conducting a de novo review," it will examine the "entire record" and make "an independent

**FILED UNDER SEAL**

assessment under the law." *Brown v. Walmart #6467,* 2020 WL 6781520, at *1 (E.D. Tex. Nov. 17, 2020) (cite omitted).

## ARGUMENT AND AUTHORITIES

I. **The Report misapplies the law, misreads the facts, and finds facts without support.**

The Fifth Circuit "has recognized the need for first utilizing less-intrusive means before taking an apex deposition, by way of deposing lesser ranking employees." *Motion Games, LLC v. Nintendo Co.*, 2015 WL 11143486, at *1 (E.D. Tex. Mar. 18, 2015) (cites omitted); *see also Salter v. Upjohn Co.*, 593 F.2d 649, 651 (5th Cir. 1979).

Under this framework, once a party satisfies its initial burden to show that discovery of a high-ranking executive is relevant, the burden shifts to the other party to show it can be obtained "through less-intrusive means." *Family One v. Isaacks*, 2023 WL 4503537, at *6 (E.D. Tex. Apr. 25, 2023) (cite omitted). Unless an executive has *unique* personal knowledge (not to be confused with just personal knowledge) relevant to the case, a court should regulate discovery to avoid oppression, inconvenience, and burden to the executive and corporation. *Id.* (cites omitted).

Similarly, in the context of top state officials, a court "commits a 'clear abuse of discretion' when it compels apex testimony absent extraordinary circumstances." *In re Paxton*, 60 F.4th 252, 258 (5th Cir. 2023) (issuing writ of mandamus to quash deposition of AG, since he "cannot perform [his] duties" if he often is drawn into lawsuits and the information could be obtained from other sources, such as a state representative testifying for him). Courts often apply these same principles to quash depositions of executives of corporations like Google. *See, e.g., Affinity Labs of Tex. v. Apple, Inc.*, 2011 WL 1753982, at *15 (N.D. Cal. May 9, 2011) (applying these principles as to former Apple CEO Steve Jobs); *Celerity, Inc. v. Ultra Clean Holding, Inc.*, 2007 WL 205067, at *3 (N.D. Cal. Jan. 25, 2007) ("[v]irtually every court that has addressed deposition notices directed at an official at the highest level or 'apex' of corporate management

7

has observed that such discovery creates a tremendous potential for abuse or harassment" and citing *Salter*); *cf. In re Google Ad. Antitrust Litig.*, 1:21-md-3010-PKC (S.D.N.Y. May 3, 2022) (Castel, J.), ECF No. 291 at 43:1-5 ("take the depositions of the first reports and then get back to me if you can't get the information from them").

The Report erroneously applies this governing framework in three distinct ways.

*First*, its findings are erroneous and unsupported by the record. It makes speculative findings on the "unique knowledge" of the executives that have no support in the record, relying only on attorney arguments. For example, although the Report states that Mr. Pichai "as CEO" has unique knowledge of the DoubleClick acquisition, Report at 9, he was not an executive at Google until seven years after the acquisition. He did not work in the ads organization at the time and for years thereafter.

Moreover, the Report assumes that because Mr. Brin was and is a top officer who is on *some* communications about the DoubleClick acquisition, he has "unique, relevant knowledge" as to the company's intent. Under this reasoning, a top executive would sit for deposition in every case, regardless of burden. *Cf. Paxton*, 60 F.4th at 258 ("It is entirely unexceptional for a public official to comment publicly about a matter of public concern. If doing so imparts unique knowledge, high-level officials will routinely have to testify."). And the Report does not take into account that the company's "intent," raised for the first time by Plaintiffs at the hearing, may be probed through less-intrusive discovery, like the upcoming Rule 30(b)(6) Mohan deposition.

*Second*, the Report conflates involvement with unique knowledge. Under *Salter*, an apex-executive deposition is improper if the executive lacks "firsthand and non-repetitive knowledge" of relevant issues. *Computer Acceleration Corp. v. Microsoft Corp.*, 2007 WL 7684605 (E.D. Tex. June 15, 2007); *see also, e.g.*, *Motion Games*, 2015 WL 1114386, at *4 (holding deposition

of Nintendo CEO was "unnecessary and unduly burdensome because he likely will not have any unique personal knowledge regarding [certain] meetings"); *Greco v. Nat'l Football League*, 2015 WL 13935035, at *3 (N.D. Tex. Feb. 5, 2015) (quashing deposition of Cowboys' president for lack of "unique, firsthand relevant knowledge that is unobtainable from another source"). Here, Messrs. Brin and Pichai have no unique and non-repetitive knowledge.

Further underscoring this lack of unique knowledge, Plaintiffs deposed Mr. ▆▆▆ as a 30(b)(6) witness on the post-DoubleClick acquisition integration and topics associated with the NBA, will depose Mr. Mohan personally and as a 30(b)(6) witness, and have testimony from related litigation of individuals with direct knowledge of both subjects. *See supra* II.A, C. In light of Plaintiffs' Rule 30(b)(6) deposition of Google itself, neither Mr. Brin nor Mr. Pichai possesses *unique* knowledge.

Giving due weight to this "unique knowledge" requirement, courts have quashed similar efforts to depose Messrs. Brin and Pichai. For example, Judge Folsom granted Google's motion to quash and for a protective order to preclude the deposition of Mr. Brin where plaintiffs failed to show that a deposition "would yield any relevant information . . . that cannot reasonably be obtained through less invasive sources, such as interrogatories, depositions of lower-ranking employees, or Rule 30(b)(6) corporate depositions." *PA Advisors, LLC v. Google, Inc.*, 2009 WL 10741630, at *3 (E.D. Tex. Aug. 28, 2009). The court noted "significant disruption to [Google's] operations" that would result if the depositions were permitted and found that Mr. Brin receiving an email alone does not justify his deposition without plaintiffs first trying to ask about the email during a Rule 30(b)(6) deposition. *Id.*[2]

---

[2] While the Report distinguishes this case based on an affidavit submitted by Mr. Brin, Report at 7, affidavits are not necessary to show that discovery may be obtained through less intrusive means. Here, Plaintiffs never address why Rule 30(b)(6) depositions and a personal deposition of Mr. Mohan are not sufficient, less-intrusive means to obtain this discovery. To the extent this Court believes they are, Google respectfully requests additional time to prepare/submit affidavits from Messrs. Brin and Pichai.

**FILED UNDER SEAL**

And, in *Brown v. Google, LLC*, 2022 WL 2289059, at *2 (N.D. Cal. Apr. 4, 2022), the magistrate judge ordered Mr. Pichai to sit for a two-hour deposition based on a "few documents establish[ing] that specific relevant information was communicated to, and possibly from, Mr. Pichai." Notably, that case involved Google's Chrome browser, on which he worked. Even so, the district court reversed because the order did not "consider whether Mr. Pichai has unique or superior personal knowledge." *Id.* (cleaned up). As here, the cited documents and statements merely showed that he, as CEO, was kept updated on high-level aspects and made public statements about a flagship product and its features. *See* Jt. Subm'n re: Dep. of Google Ofcr. Sundar Pichai, 3–5, *id.*, ECF No. 357. The court found those documents to be insufficient to establish any unique knowledge. *Id.* at *2. This Court should find the same here.

Likewise, in *Celorio v. Google Inc.*, 2012 WL 12861605, at *2 (N.D. Fla. Nov. 19, 2012), the plaintiff sought to depose several of "the highest ranking senior executives of Google," including Mr. Brin. Again, the plaintiff relied on documents showing that he and other Google directors had "some knowledge" about the subject matter of the case, "Google's implementation of the scanning of printed books with OCR image based technology." *Id*. But "this does not demonstrate . . . unique knowledge." *Id.* Further, the judge noted that Google made available a 30(b)(6) witness on the relevant topics, and there were "lower-level employees with more direct knowledge of the facts." *Id.* Thus, plaintiff "failed to demonstrate compelling reasons for conducting the apex depositions." *Id.* at *3.

*Third*, the Report places unwarranted emphasis on the "importance" of the case. As with imputing unique knowledge to a CEO, this logic would subject all top executives to depositions in every "important" case, despite having only a tenuous connection to the facts. Yet, under Fifth Circuit law, the issue is not the importance or scope of the case, but the unique, non-duplicative

knowledge of the deponent.

Moreover, the Report's comparison of two cases in which Bill Gates's testimony was sought—*Computer Acceleration v. Microsoft* and *U.S. v. Microsoft*—legally errs and misses the point. *See* Report at 6. For starters, it attaches significance to the former being a patent case and the latter being an antitrust case. Those distinctions are of no moment and were not grounds for either decision. And the chasm between the proffered relevance of Gates's testimony in the two cases further underscores the legal error in the Report.

The *Computer Acceleration* court refused to order a Gates deposition because he lacked unique knowledge that could not be obtained through less intrusive means. 2007 WL 7684605, at *1. Emails showing that he "directed and encouraged [Microsoft] employees" on aspects of the patented process fell short of establishing he had "firsthand and non-repetitive knowledge" that was not the subject of other deposition notices. *Id.* What he knew was not centrally related to the merits, and a deposition of "a high level corporate executive should not be freely granted when the subject of the deposition will be only remotely relevant to the issues of the case." *Id.*

In contrast, in *Microsoft*, Gates's independent conduct was alleged in the complaint. *See* Compl. ¶¶ 6, 16-17, 67, 69, *U.S. v. Microsoft Corp.*, No. 1:98-CV-1232 (D.D.C. May 18, 1998), 1998 WL 35241886 ("But Mr. Gates did not stop at free distribution."). Here, Plaintiffs' sole basis for Mr. Brin's relevance is the DoubleClick acquisition; Mr. Pichai is identified as relevant to the acquisition as well as an alleged 2008 meeting with Microsoft (both of which occurred 7 years before he became CEO) and the NBA. As the Report recognizes—and quite distinct from *Microsoft*—the DoubleClick acquisition is *not* alleged to be anticompetitive. Report at 7. And, regardless of the import of the acquisition, neither Messrs. Pichai nor Brin has unique knowledge regarding Google's "intent" on any of the other proffered topics that cannot be obtained from the

11

Rule 30(b)(6) deposition of Mr. Mohan, who worked at both DoubleClick and Google. Moreover, unlike here, Microsoft *agreed* to put Gates up for a deposition. *See* Microsoft's Mot. at 19, *United States v. Microsoft Corp.*, No. 1:98-CV01232 (D.D.C. Aug. 4, 1998), ECF. No. 959 ("Microsoft proposed to make available Mr. Gates . . . .").

## II.   Alternatively, the Report should be modified to require exhaustion of other means.

A district court has authority to "alter apex depositions under the Federal Rules to avoid duplication, harassment, and burdensomeness." *Schmidt v. Goodyear Tire & Rubber Co.*, 2003 WL 27375845, at *1 (E.D. Tex. Jan. 13, 2003). Such a remedy is appropriate here, where the Report recommends three high-level depositions without regard for sequencing, without subject matter limitation, and totalling over ten hours.

*First*, *Salter* requires Plaintiffs to first exhaust less-intrusive means before subjecting any high-ranking executive to a deposition, let alone three executives for over ten hours. Courts often require exhaustion of less intrusive alternatives like 30(b)(6) testimony and interrogatories. A serial approach requiring Plaintiffs to utilize such means would be consistent with *Salter* and how courts in the Fifth Circuit commonly approach the issue of apex depositions. *See, e.g.*, *PA Advisors*, 2009 WL 10741630, at *3 ("After [less invasive] discovery is completed, Plaintiff can, if appropriate, re-notice a deposition of Mr. Brin, and any irreconcilable dispute regarding the appropriateness of such a deposition can be submitted to the Court at that time."); *Gauthier v. Union Pac. R. Co.*, 2008 WL 2467016, at *4 (E.D. Tex. June 18, 2008) ("The issue may be revisited again, if warranted, and the Plaintiffs are able to show that they cannot obtain the necessary information through other means of discovery."); *Robinson v. Nexion Health at Terrell, Inc.*, 2014 WL 12915533, at *2 (N.D. Tex. Apr. 16, 2014) ("Should alternative discovery methods prove inadequate, the court may revisit the issue to determine whether the deposition of a high-ranking executive remains necessary."); *ZeniMax Media, Inc. v. Oculus VR, LLC*, 2015

WL 13949662, at *2 (N.D. Tex. Dec. 7, 2015) ("Mr. Zuckerberg's deposition shall proceed after the other noticed depositions have been conducted so that less intrusive discovery can be exhausted and information that could adequately be obtained from lesser ranking employees will be acquired before his deposition.").

As discussed above, this is the approach taken in prior cases involving Messrs. Pichai and Brin. In *Brown*, the district court denied even a two-hour deposition of Mr. Pichai because the magistrate judge's decision did not "address whether plaintiffs exhausted all less intrusive means of discovery." 2022 WL 2289059, at *2. And in *Celorio*, in blocking Mr. Brin's deposition, the court noted that "Plaintiff could have—and should have—pursued other discovery of lower level employees before seeking to depose the founders of Google." 2012 WL 12861605, at *2.

Here, none of Plaintiffs' 34 interrogatories relates to intent. Nor have they exhausted depositions of lower-level employees—including two 30(b)(6) witnesses to testify as to the DoubleClick acquisition—with the same knowledge that Plaintiffs describe as "unique." Most notably, Mr. Mohan will testify as a 30(b)(6) witness and in his personal capacity regarding the DoubleClick acquisition. Despite *Salter* and its progeny, the Report does not consider whether outstanding discovery—or discovery Plaintiffs never sought in the first place—can provide some or all of what they purport to need. Accordingly, the Court at most should order so that the depositions take place in sequence, with the Mohan 30(b)(6) and 30(b)(1) depositions going first. Only if Plaintiffs do not ask and get what they need from this discovery should they return to the Court to "revisit" whether depositions of Google's CEO and co-founder are needed. *Robinson*, 2014 WL 12915533, at *2.

*Second*, to the extent it is demonstrated that either of the Google executives must sit for a deposition, the Court should limit the deposition in time and scope pursuant to Rule 26. *See*

**FILED UNDER SEAL**

Fed. R. Civ. P. 26(c)(1); *Kimberly-Clark Corp. v. Cont'l Cas. Co.,* 2006 WL 3436064, at *4 (N.D. Tex. Nov. 29, 2006) (noting court's authority to impose "topical limits calculated to . . . reduce interference with [an apex executive's] corporate responsibilities"). This is because an apex deposition "creates a tremendous potential for abuse or harassment." *Celerity, Inc. v. Ultra Clean Holding, Inc.*, 2007 WL 205067, at *3 (N.D. Cal. Jan. 25, 2007) (collecting cases).

The Report does not constrain Plaintiffs from using the depositions as a vehicle to ask harassing, unbounded questions on irrelevant matters. That Messrs. Brin and Pichai are top executives is good cause to issue an order to protect them from "annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). Nor should Google have to prepare the executives on anything other than issues Plaintiffs have asserted to be relevant—*e.g.*, the DoubleClick acquisition and NBA. *Cf. Google Inc. v. Am. Blind & Wallpaper Factory, Inc.*, 2006 WL 2578277, at *3 (N.D. Cal. Sept. 6, 2006), *objections overruled*, 2006 WL 3050866 (N.D. Cal. Oct. 23, 2006) (allowing deposition of Google co-founder Larry Page "on the limited topic of his knowledge of and involvement in any changes to Google's trademark policies").

*Third*, the 6.5 hours allotted to examine these executives is too much. Following Mr. Mohan's testimony, Plaintiffs should articulate and demonstrate how much time, if any, is actually necessary for Mr. Brin and for Mr. Pichai based on whatever issues remain and based on the discrete issues at hand. *See Kimberly-Clark Corp.*, 2006 WL 3436064, at *4 (acknowledging that a court may set reasonable time limits for an apex deposition); *Am. Blind*, 2006 WL 2578277, at *3 (limiting deposition of Google co-founder Larry Page to three hours).

**III.    Google did not have a full chance to respond to the States' arguments.**

Last, the Report relies upon arguments Plaintiffs made for the first time in oral argument on the company's intent. Considering the briefing procedures and allocation of burdens, the Report's conclusions rest upon arguments on which no briefing was submitted.

**FILED UNDER SEAL**

Google had the burden to move for protection. "The only pre-deposition protest" allowed by the Rules "is a motion for a protective order." *Ferko v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 218 F.R.D. 125, 144 (E.D. Tex. 2003). But, as the Report notes, courts in this District employ a burden-shifting analysis to decide whether to permit apex-type depositions. Report at 4. Thus, while Google had the task of moving for a Rule 26 protective order, Plaintiffs bore the "initial burden" to show that their requested discovery is relevant. *Id.*

This ordering, where a non-moving party bears the burden to show relevance, ordinarily presents no issue. Parties typically can file reply and sur-reply briefs on all motions, including those for protection. *See* EDTX Local Rule CV-7(f). Though suitable for the most discovery disputes, the special master procedures here provided Google no reply to Plaintiffs' effort to meet its initial burden on the motion, particularly in light of points they raised at the hearing. *See* Apr. 8 Order of Special Master, ECF No. 339 at 5 (setting deadline for the motion for protection on Apr. 9 and Plaintiffs' response on Apr. 12); *see also, e.g.*, *Griffith v. Kroger Co.*, 2008 WL 11347989, at *4 (E.D. Tex. Mar. 7, 2008) ("because the Court reaches these conclusions on grounds not raised by Kroger's motion, the Court will give Plaintiff an opportunity to be heard before this order becomes effective"). This is further grounds to reject the Report's recommendations as to depositions of Messrs. Brin and Pichai.

## CONCLUSION

Google respectfully requests the Court decline to adopt the Report's recommendations as to the Brin and Pichai depositions, without prejudice to re-urging after the taking of less intrusive discovery. This is consistent with how other courts have addressed similar circumstances. In the alternative, the Court significantly should limit these depositions by subject matter and time.

**FILED UNDER SEAL**

Dated: April 29, 2024  Respectfully submitted,

/s/ R. Paul Yetter
R. Paul Yetter
State Bar No. 22154200
YETTER COLEMAN LLP
811 Main Street, Suite 4100
Houston, Texas 77002
(713) 632-8000
pyetter@yettercoleman.com

Eric Mahr
FRESHFIELDS BRUCKHAUS DERINGER LLP
700 13th Street NW, 10th Floor
Washington, D.C. 20005
(202) 777-4500
eric.mahr@freshfields.com

ATTORNEYS FOR DEFENDANT GOOGLE LLC

**CERTIFICATE OF SERVICE AND OF SEALING**

I certify that, on April 29, 2024, this document was filed electronically in compliance with Local Rule CV-5(a) and served on all counsel who have consented to electronic service, per Local Rule CV-5(a)(3)(A). I also certify that, on April 29, 2024, a motion to seal the foregoing document and its exhibits was filed separately and before the filing of this document under seal, per Local Rule CV-5(a)(7)(B). This sealed filing will be promptly served by email with a secure link on counsel of record for all parties in this case, and will be publicly filed in redacted form per Local Rule CV-5(a)(7)(E).

/s/ R. Paul Yetter
R. Paul Yetter