***FILED UNDER SEAL***

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| The State of Texas, et al.,<br><br>             Plaintiffs,<br><br>v.<br><br>Google LLC,<br><br>             Defendants. | Case No. 4:20-cv-00957-SDJ<br><br>Hon. Sean D. Jordan |

**PLAINTIFF STATES' RESPONSE TO DEFENDANT GOOGLE'S OBJECTION TO REPORT AND RECOMMENDATION (ECF NO. 423)**

**\*FILED UNDER SEAL\***

**TABLE OF CONTENTS**

INTRODUCTION ......................................................................................................................... 1

FACTUAL BACKGROUND ........................................................................................................ 3

    I.      Mr. Brin.................................................................................................................. 3

    II.     Mr. Pichai.............................................................................................................. 3

    III.    Mr. Mohan ............................................................................................................ 5

PROCEDURAL BACKGROUND................................................................................................ 5

ARGUMENT................................................................................................................................. 6

    I.      Google Fails to Establish That Mr. Brin and Mr. Pichai Lack Unique Knowledge That Cannot Be Less Intrusively Obtained, and Misrepresents Relevant Precedent.................................................................................................. 6

    II.     Google Invokes a Non-Existent Exhaustion Requirement. ................................. 11

    III.    Google's Objections to the Special Master's Procedures Are Baseless. ............. 14

CONCLUSION............................................................................................................................ 15

***FILED UNDER SEAL***

## INTRODUCTION

The Special Master's Report and Recommendation, Dkt. 423, accurately applied the relevant Fifth Circuit law on the deposition of high-level corporate executives in allowing depositions of Sergey Brin and Sundar Pichai to proceed subject to significantly reduced time limits. Google's objection, by contrast, elides the key facts and turns the applicable law on its head in a last-ditch effort to allow two key leaders of its monopolistic course of conduct to escape testimony. But Google cannot rewrite binding circuit law or the record in this case. Applying the correct legal test, the Report found that Plaintiff States met their burden to establish these depositions' relevance, while Google failed to meet its burden to show that (1) the States can obtain the relevant discovery through less-intrusive means and (2) the executives lack unique personal knowledge relevant to the case. Google's objection, Dkt. 440, does not disturb that conclusion and raises new arguments that that this Court has stated it will not consider (Dkt. 213 at 11) and that Google should have raised to the Special Master. Reaching further still, Google concludes by asking the Court to second-guess the Special Master's procedural orders without even acknowledging the high bar for such a decision. None of Google's arguments merits overturning the Special Master's careful recommendation.

*First*, Google runs from the record evidence establishing Mr. Brin's and Mr. Pichai's unique knowledge of the DoubleClick acquisition, the Network Bidding Agreement with Facebook ("Jedi Blue"), and the anticompetitive and monopolistic intent and effect of those decisions as key parts of Google's 15-plus-year effort to illegally acquire and maintain a monopoly in digital advertising. Perhaps recognizing its weak factual argument, Google seeks to change the legal standard by suggesting (a) that depositions of high-level corporate executives may occur only in "extraordinary circumstances," and (b) that the importance of the case, and the executives' testimony within it, is irrelevant to the legal test. Neither argument has any merit, and the Special

***FILED UNDER SEAL***

Master correctly saw through them.

*Second*, Google invents an exhaustion requirement that the case law does not support. Google insists that the States must depose lower-level officials before deposing Mr. Brin and Mr. Pichai, even after the States have established (and Google has not met its burden to refute) that Mr. Brin and Mr. Pichai have unique personal knowledge relevant to the case. The case law imposes no such requirement. Instead, the cases are clear that Plaintiff States need not "wait . . . until after [other] deposition where [the States] have already shown that they unique testimony that they seek through [Mr. Brin and Mr. Pichai] cannot be obtained by any less burdensome or intrusive means of deposing lesser-ranking or other employees or officers." *Gaedeke Holdings VII, Ltd. V. Mills*, No. 3:15-MC-36-D-BN, 2015 WL 3539658, at *4 (N.D. Tex. June 5, 2015). Google also asks the Court to credit new and unsupported claims that the States seek to "harass" Mr. Brin and Mr. Pichai by asking irrelevant questions.

*Third*, Google challenges the briefing and argument procedures that the Special Master established for this dispute. *See* Dkt. 339 at 5 (setting a briefing and argument schedule). But, under the Federal Rules, this Court "may set aside [the Special Master's] ruling on a procedural matter only for an abuse of discretion." Fed. R. Civ. P. 53(f)(5). The Special Master acted well within his discretion in adopting these procedures and appropriately decided the issue based on the whole record and the parties' arguments.

Given the stakes of this litigation—a potential breakup of Google due to Google's monopolization of multi-trillion-dollar markets and per-violation civil penalties for Google's deceptive acts—it is both eminently proportional and entirely warranted for two of Google's leaders to sit for a combined 6.5 hours of depositions regarding critical business decisions that they steered.

*FILED UNDER SEAL*

## FACTUAL BACKGROUND

Contrary to Google's misdirection, the record demonstrates that both Mr. Brin and Mr. Pichai have unique, personal, highly relevant knowledge of pivotal turning points in Google's illegal drive to ad tech dominance and monopolization.

### I. Mr. Brin

As Google's founder and longtime president, Mr. Brin was part of a small group of the highest-level Google executives who played a direct role in Google's strategy and negotiations for its acquisition of DoubleClick. In an email exchange about the acquisition with ▇▇▇▇, ▇▇▇▇, and a small handful of other (mostly former) Google executives, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. *See* Dkt. 375-7 (GOOG-TEX-01068770). Further, as an integral decision-maker on all things related to Google's ad tech business,[1] Mr. Brin received presentations and materials on critical strategic issues related to this acquisition, including ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. *See* Dkt. 375-8 (GOOG-NE-01787563). Plaintiff States allege that the DoubleClick acquisition represented the "origins of Google's display advertising monopolies," Fourth Amended Complaint ¶ 19, and the illegal course of conduct that the States challenge, *id.* ¶¶ 245–46.



### II. Mr. Pichai

Mr. Pichai, Google's current CEO, was also personally involved in Google's competitive strategy regarding advertising technology—the same monopolistic strategy that led Google to

---

[1] For example, the States previously cited a news article recounting a heated debate between Mr. Brin and Mr. Page over the direction of Google's advertising business. *See* Dkt. 375 at 2 (citing Henry Blodget, *Google's Brin And Page Shouted At Each Other Over Google's Decision To Become Evil (Target Ads)— Then Brin Caved*, Business Insider (August 9, 2010), https://www.businessinsider.com/googles-brin-and-page-shouted-at-each-other-over-googles-decision-tobecome-evil-move-into-ad-targeting-then-brin-caved-2010-8).

acquire DoubleClick. Documents from 2007 and 2008 show that Mr. Pichai was personally involved in the DoubleClick acquisition, separate and apart from Mr. Brin's involvement. *See* Dkt. 375-4 (GOOG-TEX-01119275) ("███"); Ex. Dkt. 375-3 (GOOG-DOJ-28505483) (stating that ███). Mr. Pichai was also involved in high-level conversations regarding a Forbes article alleging that Google had "largely dismissed the existence of click fraud [on its advertising platform] while privately acknowledging the problem."[2] *See* Dkt. 375-11 (GOOG-DOJ-16948166) (showing ███); *see also* Dkt. 375-12 (GOOG-TEX-00380602) (another executive stating that ███).

In addition, in 2008, Mr. Pichai wrote to a set of Google executives about a feature Google competitor Microsoft launched in its Internet Explorer browser that, per Mr. Pichai, "will clearly impact third party adservers like DoubleClick" (which Google had recently acquired). Dkt. 375-9 (GOOG-DOJ-16537020). Mr. Pichai stated that he "met with Microsoft" regarding its new product feature, expressed "concern[]" with how Microsoft's strategy could affect Google's ad tech business, and said Google should "watch [Microsoft's] actions here very closely." *Id.* Mr. Pichai, who at the time worked on Google's competitor web browser to Internet Explorer, Dkt. 440 at 2, was thus intimately involved in Google's technological and competitive strategy regarding the interaction between internet browsers and Google's growing ad tech stack, including DoubleClick.

After becoming Google's CEO in 2015, *id.*, Mr. Pichai was also personally involved in the

---

[2] *See* Dkt. 375 at 7 n.5 (citing Andy Greenberg, *Click Fraud Goes Viral*, Forbes (July 19, 2007), https://www.forbes.com/2007/07/19/click-fraud-rise-tech-internetcx_ag_0719techclick.html?sh=6ef4d9a13a61).

Network Bidding Agreement or Jedi Blue agreement with Facebook. Google's documents show that ▌

▌. *See* Dkt. 375-5 (GOOG-DOJ-AT-01901774) ("▌

▌"); Dkt. 375-6 (GOOG-AT-MDL-016678498) ("▌

▌").

### III.  Mr. Mohan

At the time of the DoubleClick acquisition, Mr. Mohan worked at DoubleClick, not at Google. Dkt.440 at 3. He joined Google after the acquisition as senior vice president of Google's display ads business and, later, the CEO of Google subsidiary YouTube. *Id.* Mr. Mohan does not appear on the above-cited internal Google strategy communications with Mr. Brin regarding the DoubleClick acquisition, since he was an employee of the counterparty. Mr. Mohan also did not participate, as far as the record shows, in the 2008 meetings with Microsoft regarding ad tech that Mr. Pichai directed. Neither does Mr. Mohan appear in any of the communications discussed above regarding the Facebook Network Bidding Agreement or Jedi Blue.

## PROCEDURAL BACKGROUND

Plaintiff States served Rule 30(b)(1) notices on Mr. Brin and Mr. Pichai on March 19, 2024, with many weeks left before the close of fact discovery. *See* Dkt. 324 at 5.

At a hearing on April 4, 2024, the Special Master ordered Google to file any motions for protective orders regarding those notices by April 9 and ordered the States to respond by April 12. Dkt. 339 at 5. On April 9, Google filed its motion for protective order. Dkt. 349; 349-1. On April 10, the Special Master modified the briefing schedule upon the parties' joint request. Dkt. 353. And on April 15, the States filed their response to Google's motion, pursuant to the revised schedule. Dkt. 375.

5

*FILED UNDER SEAL*

On April 18, the Special Master held a hearing at which both parties presented their arguments to the Special Master in an extensive colloquy about these protective orders. *See* Ex. A, Apr. 18 Hr'g Tr. at 113:17-150:4.

On April 25, the Special Master's Report and Recommendation recommended the deposition of Mr. Brin for 2.5 hours and Mr. Pichai and Mr. Mohan for 4 hours. Dkt. 423. On April 29, Google challenged the Special Master's recommendation as to Mr. Brin and Mr. Pichai and did not challenge the recommendation as to Mr. Mohan. Dkt. 440.

## ARGUMENT

I. **Google Fails to Establish That Mr. Brin and Mr. Pichai Lack Unique Knowledge That Cannot Be Less Intrusively Obtained, and Misrepresents Relevant Precedent.**

The Special Master correctly recited and applied the basic legal test that courts in the Fifth Circuit and this District apply when assessing motions for protective orders for high-level corporate executives. First, the party seeking the deposition has the burden to show that "their requested discovery is relevant." *Fam. One v. Isaacks*, No. 9:22-CV-00028-MJT, 2023 WL 4503537, at *5 (E.D. Tex. Apr. 25, 2023). The relevance inquiry is guided by Rule 26(b)(1) and the District's Local Civil Rule 26(d). *See* Dkt. 423 at 2 (citing Fed. R. Civ. P. 26(b)(1); E.D. Tex. Rule CV-26(d)). Second, once the party seeking the deposition has met that relevance burden, the burden shifts to the party that has moved for a protective order to show (1) that the plaintiff "can obtain relevant discovery through less-intrusive means," and (2) that the noticed witnesses do "not possess unique personal knowledge relevant to the case." *Isaaks*, 2023 WL 4503537, at *7. After the Special Master's order applying this framework, Google correctly conceded that this burden-shifting framework applies. *See* Dkt. 440 at *7.

Google does not appear to contest the relevance of Mr. Brin's and Mr. Pichai's testimony. And, on the second step, Google falls far short of its burden to establish that (1) Mr. Brin's and

6

***FILED UNDER SEAL***

Mr. Pichai's relevant testimony can be gained through less-intrusive means and (2) the two executives lack unique knowledge.

Google attempts, and fails, to meet its burden in three ways. First, Google argues that Mr. Brin's and Mr. Pichai's unique knowledge lacks support in the record. On Mr. Pichai, Google argues that he "was not an executive at Google until seven years after the [DoubleClick] acquisition" and "did not work in the ads organization." But Plaintiff States have put forward record evidence showing Mr. Pichai's (a) involvement in the DoubleClick acquisition, and (b) deep personal involvement in Google's post-acquisition competition with Microsoft as it attempted to amass its ad tech monopoly through tools that included DoubleClick's ad server. *See* Dkt. 375-3; 375-4; 345-9. Google does not refute that evidence or provide any other evidence to contradict it.

And on Mr. Brin, Google argues that he lacked any "unique, relevant knowledge" because others, like Mr. Mohan, could testify about the DoubleClick deal and the company's "intent." Dkt. 440 at 8. But Plaintiff States established that Mr. Brin was part of a very small group of executives that steered the DoubleClick deal—a group that, as Google concedes, did not include Mr. Mohan, because he did not work at Google at the time. Further, as the States previously argued and the Special Master credited, evidence of key executives' anticompetitive intent is unlikely to be widely shared throughout the company. *See* Apr. 19 Tr. at 140:17-22; Dkt. 423 at 5. Google offers no record evidence—and no reason to think—that Mr. Mohan's 30(b)(6) deposition could elicit the same relevant testimony that Plaintiff States have established with respect to Mr. Brin.

Second, along similar lines, Google contends that the Special Master ignores the requirement that the high-level executives must have "firsthand and non-repetitive knowledge,'" not mere "involvement." Dkt. 440 at 8 (quoting *Computer Acceleration Corp. v. Microsoft Corp.*,

7

2007 WL 7684605 (E.D. Tex. June 15, 2007)). To the contrary, the States have established and the Special Master agreed that Mr. Brin's and Mr. Pichai's knowledge of the DoubleClick acquisition and Google's subsequent monopolistic course of conduct was indeed both firsthand and non-repetitive. Mr. Brin, and only Mr. Brin, has firsthand knowledge of why ▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊. *See* Dkt. 423 at 7. Corporate representatives such as Mr. ▊▊▊▊ and Mr. Mohan, Google's 30(b)(6) witnesses, would not. Similarly, the record demonstrates that Mr. Pichai has firsthand knowledge of topics such as (i) the DoubleClick technology's importance to Google's ad tech business and (ii) relationships with critical marketplace players Microsoft and Facebook. *See* Dkt. 423 at 9. Thus, unlike the high-level executives in *Computer Acceleration* and *Greco v. Nat'l Football League*, 2015 WL 13935035 (N.D. Tex. Feb. 5, 2015), both Mr. Pichai and Mr. Brin have "unique, firsthand relevant knowledge that is unobtainable from another source." *Greco*, 2015 WL 13935035, at *3. Google offers no evidence to the contrary and no other deponent that would share Mr. Brin's and Mr. Pichai's unique and highly relevant knowledge.

For those reasons, Google's comparisons to other cases involving depositions of Mr. Brin and Mr. Pichai are inapposite (and were not previously argued or cited to the Special Master). In *PA Advisors, LLC v. Google, Inc.*, the plaintiff's best evidence of Mr. Brin's unique knowledge was that he was the recipient (along with thousands of others) of a single email to which he did not reply. 2009 WL 10741630, at *1-2 (E.D. Tex. Aug. 28, 2009). In addition, Mr. Brin had submitted a declaration stating that he had "no unique information about this case." *Id.* at *1. The evidence here shows Mr. Brin personally communicating relevant information, not merely receiving information along with thousands of others. In *Brown v. Google, LLC*, the Court denied

a deposition of Mr. Pichai because the magistrate judge had not even *considered* whether Pichai had "unique or superior personal knowledge" and there was insufficient evidence in the record to evaluate that question. 2022 WL 2289059, at *2 (N.D. Cal. Apr. 4, 2022). Here, by contrast, the Special Master applied the correct legal test and found that "Mr. Pichai as CEO possesses ample, current, relevant and unique knowledge" with respect to several key aspects of the case. Dkt. 423 at 9.

Google's reliance on *Celorio v. Google* fails for the same reason. In that case, the plaintiff alleged only that Mr. Brin (along with Mr. Page and Mr. Schmidt) merely received a letter that was of "marginal importance" and "ha[d] at best marginal relevance." 2012 WL 12861605, at *2 (N.D. Fla. Nov. 19, 2012). In addition, all three executives had filed affidavits averring that they had "no memory or recollection of receiving" the letter and no knowledge of the response. *Id.* Finally, the Court found that any relevant information that those three executives might have could be obtained from depositions of "lower-level employees with more direct knowledge of the facts." *Id.* Those facts are a far cry from the instant case. Here, Plaintiff States have pointed not just to Mr. Brin and Mr. Pichai's *receipt* of communications, but their *sending* of communications, attendance at meetings, and direction of key strategic decision-making. *See, e.g.*, Dkt. 375 at 2-3. And neither has disclaimed relevant, unique knowledge. Given those distinctions, the Special Master did not err in denying Google's motion.

As all those cases make clear, the States' argument and the Special Master's recommendation would not require a top executive to "sit for deposition in every case, regardless of burden," as Google claims. Dkt. 440 at 8. Instead, the Special Master correctly and carefully parsed the record to determine that Mr. Brin and Mr. Pichai had unique, personal knowledge here that they apparently did not have in other suits.

9

***FILED UNDER SEAL***

Third, Google argues that the Special Master inappropriately considered the "importance" of the case in assessing Mr. Brin's and Mr. Pichai's unique knowledge. Dkt. 440 at 10-11. The Special Master did no such thing. As the Recommendation and Report makes abundantly clear, the Special Master considered the "importance" of the case only in the Rule 26 relevance and proportionality inquiry, the first step in the two-part burden-shifting framework that Google acknowledged applies. *See* Dkt. 423 at 2, 5. That inquiry requires considering issues such as the "importance of the issues at stake in the action" and "the amount in controversy." *Id.* at 2 (citing Fed. R. Civ. P. 26(b)(1). When the Special Master discussed "importance" in the second step, it was in reference to the importance of Mr. Brin's and Mr. Pichai's particular testimony to the issues, not the importance or dollar value of the case. *See id.* at 7-8.

Google also attempts to argue that the Special Master erred in emphasizing the subject matter of *Computer Acceleration* and *U.S. v. Microsoft*, 253 F.3d 34 (D.C. Cir. 2001). Dkt. 440 at 11 (citing Dkt. 423 at 6). But the Special Master did not find that *Computer Acceleration* was distinguishable because it was a patent case. Rather, the Special Master accurately summarized the reason that Bill Gates's deposition in that case was not proportional under Rule 26(b) due to the high burden relative to the limited relevance of the "discrete technical issue" about which Mr. Gates had knowledge. Dkt. 423 at 6; *see Computer Acceleration*, 2007 WL 7684605, at *1 (E.D. Tex. June 15, 2007)). Accordingly, the Special Master compared the limited relevance of that testimony to Mr. Gates's critical role in the *U.S. v. Microsoft* antitrust litigation, which centered on high-level decisions by Microsoft to illegally dominate markets through an anticompetitive course of conduct and put on the table a break-up of the company. Clearly, with respect to both relevance and unique knowledge of the top executive, the instant case is far more similar to *U.S.*

10

***FILED UNDER SEAL***

*v. Microsoft* than *Computer Acceleration*.[3]

To top off Google's mistaken arguments, Google suggests that deposing a high-level executive requires a showing of "extraordinary circumstances." Dkt. 440 at 7 (quoting *In re Paxton*, 60 F.4th 252, 258 (5th Cir. 2023)). Quite the opposite. *In re Paxton* involved the deposition of high-level *state officials*, not corporate executives, as Google concedes. And while Google insists that "[c]ourts often apply these same principles to quash depositions of executives of corporations like Google," Dkt. 440 at 7, the cases Google cites *do not* impose an "extraordinary circumstances" requirement. Instead, those cases are consistent with, and specifically invoke, the Fifth Circuit's instruction that a protective order *denying* the deposition of high-level corporate executives is what requires "extraordinary circumstances." *Salter v. Upjohn Co.*, 593 F.2d 648, 651 (5th Cir. 1979).[4] That Google felt the need to misquote and misconstrue the case law only highlights the reality that the Special Master applied the correct legal standard to the facts in denying Google's protective order.

## II. Google Invokes a Non-Existent Exhaustion Requirement.

Google next invents a requirement that Plaintiffs must "first exhaust less-intrusive means

---

[3] Google's other objections to the Special Master's discussion of *U.S. v. Microsoft* are equally off-base. Google states that Plaintiff States do not sufficiently allege "independent conduct" of the target high-level executives in their Complaint, whereas the *Microsoft* plaintiffs did with respect to Mr. Gates. Dkt. 440 at 11-12. First, the States *do* allege conduct on the part of Mr. Pichai. But even if they did not, it would not matter, because the Court at this stage is not confined to the Complaint and can review the whole record. *See* Rule 53(f)(1). And the record evidence of Mr. Brin and Mr. Pichai's unique, personal knowledge is clear. Further, the fact that Microsoft agreed to put Mr. Gates up for a deposition in *Microsoft*, as Google points out, only reinforces how unreasonable and unsupported Google's position is here. Mr. Gates testified when a breakup of his company due to a course of anticompetitive and monopolistic conduct was at stake; Mr. Brin and Mr. Pichai must do the same here.

[4] *See, e.g.*, *Affinity Labs of Texas v. Apple, Inc.*, 2011 WL 1753982, at *15 (N.D. Cal. May 9, 2011) (noting, "[a]bsent extraordinary circumstances, it is very unusual for a court to *prohibit the taking of a deposition*," and applying the *Salter* standard that the Special Master correctly applied here) (emphasis added); *Celerity, Inc. v. Ultra Clean Holding, Inc.*, 2007 WL 205067, at *3 (N.D. Cal. Jan. 25, 2007) (quoting *Salter* for the same proposition).

before subjecting any high-ranking executive to a deposition." Dkt. 440 at 12. Google attributes this supposed requirement to *Salter*. Yet, as Plaintiff States previously pointed out, *Salter* at most requires that lower-ranking employees be deposed first if those employees have "more knowledge of the facts" than the high-ranking executive. *Salter*, 593 F.2d at 651. By contrast, courts have made clear that there is "no need or good basis for requiring [plaintiffs] to wait . . . until after [other] deposition where [the plaintiffs] have already shown that the unique testimony that they seek through [the high-ranking executives] cannot be obtained by any less burdensome or intrusive means of deposing lesser-ranking or other employees or officers." *Gaedeke*, 2015 WL 3539658, at *4.

The cases Google cites are all consistent with that rule. As discussed above, the Court in *PA Advisors* found that Mr. Brin had *no* unique knowledge—or even "any relevant information"—and thus that other, less-invasive sources of discovery would be much more likely to produce relevant information. 2009 WL 10741630, at *3. Here, Plaintiff States have pointed to significant evidence of Mr. Brin's unique, highly relevant knowledge. In *Gauthier v. Union Pacific R. Co*, the Court ordered a deposition of lower-level employees first because the plaintiffs there "ha[d] not shown that [a 30(b)(6) deposition of a corporate representative] would not supply the sought information." 2008 WL 2467016, at *4 (E.D. Tex. June 18, 2008). Here, the States have established exactly that, pointing to Mr. Brin's and Mr. Pichai's personal knowledge of high-level corporate strategy and intent that a corporate representative would not be able to provide.[5] Similarly, the Court in *Robinson v. Nexion Health at Terrell, Inc.*, applied the same rule, rooted in

---

[5] Google insists, again, that a 30(b)(6) deposition of Mr. Mohan would "provide some or all of what [the States] purport to need" with respect to the DoubleClick acquisition. Dkt. 440 at 13. The States have previously explained why—given Mr. Mohan's position at the time of the acquisition and leading up to it (working for DoubleClick, not Google, at the time), as well as Mr. Brin's and Mr. Pichai's unique personal involvement for Google in aspects of that acquisition—Mr. Mohan's deposition, whether individual or corporate, could not provide the critical information that Plaintiff States seek.

12

***FILED UNDER SEAL***

*Salter*, that a plaintiff should first depose a lower-ranking employee "*[u]nless the executive possess 'unique personal knowledge' about the controversy*.'" 2014 WL 12915533, at *2 (N.D. Tex. Apr. 16, 2014) (quoting *Computer Acceleration*, 2007 WL 7684605) (emphasis added). The supposed exhaustion requirement is not an additional barrier to deposing high-level executives; it is merely the flip side of the requirement that the high-level executive possess "unique, personal knowledge"—a showing that Google has failed to refute here.[6] Despite Google's protestations, Plaintiff States have well established that Mr. Mohan would not have knowledge of the key decisions and intent that the States seek from Mr. Brin and Mr. Pichai, and Google has offered no evidence to the contrary.[7]

Finally, Google suggests (for the first time in this objection) that Plaintiff States want to depose Mr. Brin and Mr. Pichai in order to "ask harassing, unbounded questions on irrelevant matters." Dkt. 440 at 14. Besides offering no evidence for this accusation, Google also ignores the fact that the Special Master effectively rejected such an argument by finding that Plaintiff States had surmounted their burden under Rule 26 while Google failed to meet its own. *See* Dkt. 423 at 2 ("Rule 26(b) "has never been a license to engage in an unwieldy, burdensome, and speculative fishing expedition.") (quoting *Crosby v. La. Health Serv. & Indem. Co.*, 647 F.3d 258, 264 (5th Cir. 2011)); *id.* ("Under Federal Rule of Civil Procedure 26(c), a 'court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden

---

[6] Google's last case, *ZeniMax Media, Inc. v Oculus VR, LLC*, also does not support Google's argument that courts will require exhaustion before allowing a high-level executive to be deposed. In that case, the Court permitted the deposition of Mr. Zuckerberg due to his "unique knowledge" and did not require the plaintiffs to first depose lower-level employees before coming back to the Court for leave to depose the high-level executive, as Google asks the Court to do here. 2015 WL 13949662, at *2 (N.D. Tex. Dec. 7, 2015).

[7] Despite the lack of an exhaustion requirement, the States have nonetheless been deposing lower-level Google employees, many of whom have deferred to Mr. Pichai as the person with more knowledge on relevant issues (for example, ▮▮▮▮▮▮▮▮▮▮ and ▮▮▮▮▮▮).

13

or expense.'"). Google merely repeats the legal standard without any evidence or argument. Such conclusory briefing cannot possibly satisfy Google's steep burden for a protective order.

Similarly, Google offers no argument for why Mr. Brin and Mr. Pichai should be deposed for shorter than the abbreviated, reasonable time limits that the Special Master recommended. Google points to another case limiting the testimony of Mr. Page to three hours. Dkt 440 at 14 (citing *Google Inc. v. Am. Blind & Wallpaper Factory, Inc.*, 2006 WL 2578277, at *3 (N.D. Cal. Sept. 6, 2006), *objections overruled*, 2006 WL 3050866 (N.D. Cal. Oct. 23, 2006)). That is comparable to the 2.5-hour and four-hour depositions recommended here.

**III.    Google's Objections to the Special Master's Procedures Are Baseless.**

Google's final, equally meritless argument is that the Special Master's "briefing procedures" did not permit Google to respond to the States' arguments. Dkt. 440 at 14. Google's argument has at least three fatal flaws.

First, the States' arguments at the April 18 hearing merely restated and elaborated upon arguments Plaintiff States made in their response to Google's protective order. *See, e.g.*, Dkt. 375 at 2 (discussing that the DoubleClick acquisition, about which the States sought Mr. Brin and Mr. Pichai's testimony, "furthered the monopolies and monopolization at the heart of this case"); *id.* at 4 (discussing Mr. Brin and Mr. Pichai's "personal, relevant, and unique knowledge regarding the DoubleClick acquisition"). Second, the Special Master, like this Court, may consider any evidence or arguments "presented to the Special Master," including arguments at a hearing. Dkt. 213 at 11. And finally, the Special Master's briefing schedule on this matter was a procedural order that this Court may review only for abuse of discretion. Fed. R. Civ. P. 53(f)(5); *see* Dkt. 213 at 11 ("The standard of review the Court will apply to any motion for review shall be governed by Rule 53(f)."). The Special Master acted well within his discretion in ordering the briefing schedule that he set here, and Google does not even attempt to argue otherwise.

14

***FILED UNDER SEAL***

## CONCLUSION

For the foregoing reasons, the Court should deny Google's motion and adopt the Special Master's recommendations as to Mr. Brin's and Mr. Pichai's depositions.

**\*FILED UNDER SEAL\***

Respectfully submitted,

| | |
|---|---|
| */s/ W. Mark Lanier* <br> W. Mark Lanier <br> Mark.Lanier@LanierLawFirm.com <br> Alex J. Brown <br> Alex.Brown@LanierLawFirm.com <br> Zeke DeRose III <br> Zeke.DeRose@LanierLawFirm.com <br> Jonathan P. Wilkerson <br> Jonathan.Wilkerson@LanierLawFirm.com <br> 10940 W. Sam Houston Pkwy N <br> Suite 100 <br> Houston, TX 77064 <br> (713) 659-5200 <br> **THE LANIER LAW FIRM, PLLC** | */s/ Ashley Keller* <br> Ashley Keller <br> ack@kellerpostman.com <br> 150 N. Riverside Plaza, Suite 4100 <br> Chicago, Illinois 60606 <br> (312) 741-5220 <br><br> Zina Bash <br> zina.bash@kellerpostman.com <br> 111 Congress Avenue, Suite 500 <br> Austin, TX 78701 <br> (512) 690-0990 <br><br> Noah S. Heinz <br> noah.heinz@kellerpostman.com <br> Daniel Backman <br> daniel.backman@kellerpostman.com <br> 1101 Connecticut, N.W., 11th Floor <br> Washington, DC 20005 <br> (202) 918-1123 <br> **KELLER POSTMAN LLC** |

*Counsel for Texas, Idaho, Louisiana (The Lanier Law Firm only), Mississippi, North Dakota, Indiana, South Carolina, and South Dakota*

*Submitted on behalf of all Plaintiff States*


**NORTON ROSE FULBRIGHT US LLP**
Joseph M. Graham, Jr.
joseph.graham@nortonrosefulbright.com
Geraldine Young
geraldine.young@nortonrosefulbright.com
1301 McKinney, Suite 5100
Houston, Texas 77010
(713) 651-5151

Marc B. Collier
Marc.Collier@nortonrosefulbright.com
98 San Jacinto Blvd., Suite 1100
Austin, Texas 78701
(512) 474-5201

***FILED UNDER SEAL***

FOR PLAINTIFF STATE OF TEXAS:

KEN PAXTON
Attorney General

*/s/ Trevor E. D. Young*

Brent Webster, First Assistant Attorney General of Texas
Brent.Webster@oag.texas.gov
James R. Lloyd, Deputy Attorney General for Civil Litigation
James.Lloyd@oag.texas.gov
Trevor Young, Deputy Chief, Antitrust Division
Trevor.Young@oag.texas.gov

**STATE OF TEXAS, OFFICE OF THE ATTORNEY GENERAL**
P.O. Box 12548
Austin, TX 78711-2548
(512) 936-1674

*Attorneys for Plaintiff State of Texas*

17

***FILED UNDER SEAL***

## CERTIFICATE OF SERVICE AND SEALING

I certify that, on April 30, 2024, this document was filed electronically in compliance with Local Rule CV-5(a) and served on all counsel who have consented to electronic service, per Local Rule CV-5(a)(3)(A).

I also certify that, on April 30, 2024, a motion to seal the foregoing document and its exhibits was filed separately and before the filing of this document under seal, per Local Rule CV-5(a)(7)(B). This sealed filing will be promptly served by email with a secure link on counsel of record for all parties in this case, and will be publicly filed in redacted form per Local Rule CV-5(a)(7)(E).

*/s/ Geraldine Young*
Geraldine Young