# EXHIBIT A

# FILED UNDER SEAL

1              IN THE UNITED STATES DISTRICT COURT
             FOR THE EASTERN DISTRICT OF TEXAS
2                       SHERMAN DIVISION
3      THE STATE OF TEXAS,          )
       ET AL.,                      )
4                                   )
           Plaintiffs,              ) CIVIL ACTION NO.:
5                                   )
       VS.                          ) 4:20-CV-957-SDJ
6                                   )
       GOOGLE LLC,                  )
7                                   )
           Defendant.               )
8
9
10            ------------------------------------
11            HEARING BEFORE SPECIAL MASTER
12                     APRIL 18, 2024
13            ------------------------------------
14
15
16          A HEARING BEFORE THE SPECIAL MASTER was taken in
17     the above-styled and numbered cause on April 18, 2024,
18     from 11:04 a.m. to 5:17 p.m., before Kimberly Byrns
19     Buchanan, CSR, RPR in and for the State of Texas,
20     reported by machine shorthand, at the United States
21     Courthouse, 7940 Preston Road, Plano, Texas 75024,
22     pursuant to the Federal Rules of Civil Procedure and the
23     provisions stated on the record or attached hereto.
24
25

                                              Page 1

```
 1                    A P P E A R A N C E S
 2
 3     SPECIAL MASTER:
 4              Mr. David Moran
                JACKSON WALKER LLP
 5              2323 Ross Avenue
                Suite 600
 6              Dallas, Texas 75201
                Tel: (214) 953-6000
 7              E-mail: dmoran@jw.com
 8              - also -
 9              Mr. William T. Nilsson
                2323 Ross Avenue
10              Suite 600
                Dallas, Texas 75201
11              Tel: (214) 953-6000
                E-mail: wnilsson@jw.com
12
13     FOR THE STATES:
14              Ms. Geraldine W. Young
                NORTON ROSE FULBRIGHT US, LLP
15              1301 McKinney
                Suite 5100
16              Houston, Texas 77010-3095
                Tel: (713) 651-5151
17              E-mail: geraldine.young@nortonrosefulbright.com
18              - and -
19              Mr. John McBride
                NORTON ROSE FULBRIGHT US, LLP
20              1045 W. Fulton Market
                Suite 1200
21              Chicago, Illinois 60607
                Tel: (312) 964-7800
22              E-mail: john.mcbride@nortonrosefulbright.com
23              - and -
24
25
```

Page  2

```
 1                    A P P E A R A N C E S
                           (CONTINUED)
 2
 3     FOR THE STATES (CONT'D.)
 4              Mr. Zeke DeRose
                THE LANIER LAW FIRM
 5              10940 W. Sam Houston Parkway N.
                Suite 100
 6              Houston, Texas 77064
                Tel: (713) 659-5200
 7              E-mail: zeke.derose@lanierlawfirm.com
 8              - and -
 9              Mr. Ashley Keller
                KELLER POSTMAN LLC
10              150 N. Riverside Plaza
                Suite 4100
11              Chicago, Illinois 60606
                Tel: (312) 741-5220
12              E-mail: ack@kellerpostman.com
13              - and -
14              Mr. Trevor Young, Esq.
                Deputy Chief-Antitrust Division
15              THE OFFICE OF THE TEXAS ATTORNEY GENERAL
                300 W. 15th Street
16              12th Floor
                Austin, Texas 78701
17              Tel: (512) 463-2100
                E-mail: trevor.young@oag.texas.gov
18
19     FOR GOOGLE LLC:
20              Mr. R. Paul Yetter
                Ms. Mollie Bracewell
21              YETTER COLEMAN LLP
                811 Main Street
22              Suite 4100
                Houston Texas 77002
23              Tel: (713) 632-8000
                E-mail: pyetter@yettercoleman.com
24
                - and -
25
```

Page  3

```
1                    A P P E A R A N C E S
                        (CONTINUED)
2

3      FOR GOOGLE LLC (CONT'D.)
4               Mr. Robert McCallum
                Ms. Lauren Vaca
5               FRESHFIELDS BRUCKHAUS DERINGER LLP
                3 World Trade Center
6               175 Greenwich Street
                New York New York 10007
7               Tel: (212) 277-4000
                E-mail: rob.mccallum@freshfields.com
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1    will be a limited deposition.  But we need her for this
 2    case.  They haven't stipulated that her testimony is
 3    admissible in this case, you know.
 4                    And we understand Judge Jordan's directive
 5    that you need evidence in this case, not rely on
 6    evidence in other cases.  That's kind of what we're
 7    doing.  We're getting the evidence for our case.
 8                    SPECIAL MASTER:  Appreciate that.
 9                    Anything else, Mr. -- go ahead.
10                    MS. YOUNG:  Sorry.  One --
11                    SPECIAL MASTER:  Don't mean to cut you
12    off.
13                    MS. YOUNG:  -- (inaudible) correct.
14                    Just to give some context, he talked
15    about -- or Mr. McCallum talked about that the very few
16    clawback challenges that have been made in this case.  I
17    just want to put that in context.
18                    We are only allowed to challenge
19    clawed-back documents that we have previously viewed.
20    We can't -- we're not in a position to challenge all the
21    clawed-back documents.  So that universe of
22    challengeable documents is actually really, really small
23    under the protective order.
24                    And that -- and so that's not to say that
25    we don't have grounds to challenge any or that all
```

Page 112

```
 1    documents have, you know, properly been withheld.  It's
 2    just a function of the clawback provision in the
 3    protective order.
 4                   SPECIAL MASTER:  Thank you.
 5                   Anything further, Mr. McCallum?
 6                   MR. MCCALLUM:  Just on the point of the
 7    suggestion that there was a practice of shielding
 8    documents.  There's been no explanation of why a
 9    practice, if it existed, would have been detected by
10    outside counsel's review of privilege calls.  And that
11    is the -- that's the reason why we have outside counsel
12    conducting independent reviews.
13                   And that's the only point that I'll make.
14                   SPECIAL MASTER:  Thank you.
15                   We've got about twenty minutes before we
16    need to get back before Judge Jordan.
17                   Do we want to take up, Mr. Yetter, your
18    protective order with regard to Mr. Brin, Pichai --
19                   MR. YETTER:  Yes.
20                   SPECIAL MASTER:  -- and Neal Mohan?
21                   MR. YETTER:  Yes.
22                   So you've read all the papers.  And I
23    don't think there's any disagreement -- like material
24    disagreement of what the standard is.
25                   Plaintiff has to show relevance, and it's
```

Page 113

```
 1    not enough to show remote relevance.  And basically it's
 2    the Computer Acceleration case --
 3                    SPECIAL MASTER:  Right.
 4                    MR. YETTER:  -- of the Eastern District.
 5                    And, if they show relevance, then
 6    the -- of the -- the defendant here -- of the -- the
 7    deposition has to show that there is other means,
 8    less-intrusive means, like lower-level employees and/or
 9    that the -- this higher-level executive does not have
10    unique personal knowledge.
11                    So there's three witnesses here.  Two of
12    those fall within that construct, Sergey Brin and Sundar
13    Pichai.  With your permission, I'd like to just briefly
14    talk about each one.
15                    SPECIAL MASTER:  Please.
16                    MR. YETTER:  And it seems to me that the
17    most relevant way to deal with them is to look -- we
18    asked.  They brought this up.  They noticed these three,
19    and including Mr. Mohan.  We pushed back or we inquired
20    why would you want to take them.  Two of them -- all of
21    them are still at the company.  All of them are at very
22    high levels.
23                    They all fall -- it may not be called apex
24    doctrine in federal court, but it's clearly a doctrine
25    for high-level executives in the Eastern District in
```

Page 114

1    federal -- in the Fifth Circuit generally.

2                    They gave us documents -- some -- they

3    added some documents to what we've presented -- to what

4    both sides have presented to the Special Master.

5                    Let me just take them one at a time.

6                    So Sergey Brin, co-founder, still active

7    at Google.  The two documents -- the area that they

8    focused on for Mr. Brin was basically the acquisition of

9    DoubleClick.

10                   And you've seen the documents, but I just

11   want to make a couple of comments on two of the

12   documents.

13                   We attach them to our -- let me see if I

14   can give you the document number.

15                   SPECIAL MASTER:  I think it's 349.

16                   MR. YETTER:  Yeah, our motion.  349.

17                   And it is exhibit -- sealed Exhibits A and

18   B.  And these are document, as I understand it, that

19   they -- that the States called out to us to show that

20   these two -- that this -- Mr. Brin had unique personal

21   knowledge and no one else in the company, or that was at

22   that time there, could testify about the same thing.

23                   So Exhibit A is a series of e-mails and

24   it's a seven-page -- a nine-page e-mail.  And Mr. Brin

25   basically comments, as you've seen it, just a couple of

                                              Page 115

```
 1    times --
 2                  SPECIAL MASTER:  Right.
 3                  MR. YETTER:  -- usually in just a few
 4    words.  Like at one point, he says -- they're debating,
 5    and there's a number of people involved, all higher-up
 6    folks.  And they're debating:  What's the size of the
 7    offer?  ███████████████████████?
 8                  And he says:  ██████████████████.  He
 9    says:  ████████████████████.  He says:  █
10    ████████████████████████████████████████████
11    ██████████████████████████.
12                  And this is really a discussion among a
13    number of executives at Google.  Some of them may not be
14    there anymore.
15                  But there's -- the one thing this e-mail
16    at least respectfully will offer shows that it's not
17    unique to Mr. Brin.  I mean, he may have had an opinion.
18    But, just because a high-level executive has an opinion
19    that he expresses among a group of other executives in
20    coming to a decision, it doesn't mean that his knowledge
21    about that decision is unique.
22                  That's essentially the argument that the
23    Plaintiffs are making, that if he makes a personal
24    opinion or meets something personally, then that means
25    it's unique personal knowledge.  And that's not what the
```

Page 116

```
 1    cases say.
 2                I will point out, for example, in
 3    the -- one of the cases that we have cited is the
 4    Microsoft case, the Computer Acceleration case.  And in
 5    that Eastern District case, 2007, the Plaintiffs wanted
 6    to depose Bill Gates.  And they said, well, he -- we
 7    have some e-mails where he personally expressed concern
 8    about importance of boot speed and something.
 9                And the magistrate judge there basically
10    said, well, that's not enough.  It's not enough to claim
11    that a higher-level executive has remotely relevant
12    information, nor is it enough to show that he's the only
13    one that has it, that he's unique.
14                So, here, in -- Sergey Brin may have
15    expressed in Exhibit A and 17 years ago in March of
16    2007.
17                And, in Exhibit B, he got a slide deck,
18    like lots of other people did, that covered the same
19    acquisition, again, 17 years ago in 2007, that somehow
20    that creates -- makes him a relevant --
21    materially-relevant witness.
22                The State says that the fact that he got
23    the slide deck, it was a custodian, in other words, and
24    saved somehow on his --
25                SPECIAL MASTER:  Right.
```

Page 117

```
 1              MR. YETTER:  -- electronic information,
 2   makes it relevant to him.  And, again, it's nothing more
 3   that Bill Gates.
 4              Another case that we have cited to the
 5   Special Master is the Motion Games/Nintendo case where
 6   they wanted to depose the CEO -- or I believe the
 7   president of Nintendo.  And he made public statements.
 8   He didn't make just internal e-mails, like Bill Gates
 9   did.  He made public statements.  The Plaintiff is
10   saying that makes -- that means he's got important
11   personal -- unique personal involvement here.
12              And, essentially, what the Plaintiffs, the
13   States, have given us here is Mr. Brin, at a high level,
14   back in 2007, was involved in high-level discussions,
15   like lots of executives.  And it doesn't reflect
16   anything more than simply being involved in a lot of
17   discussions about the acquisition of DoubleClick.
18              This case, according to the Plaintiff, is
19   not about the acquisition of DoubleClick.  It's not
20   alleged that that itself was an epic competitive act,
21   but that what was done with DoubleClick is of substance.
22              So we've made that argument.  You've seen
23   that.
24              SPECIAL MASTER:  Yes.
25              MR. YETTER:  So that's Mr. Brin.
```

Page 118

```
 1              SPECIAL MASTER:  But would he not have

 2     some relevant information about, once we acquired

 3     DoubleClick, this might be the strategy, this might be

 4     the approach that we would like to implement on

 5     DoubleClick once it comes within the now Alphabet

 6     umbrella then?  I don't think Alphabet was around.

 7              I would anticipate something from your

 8     friends across the aisle about that.

 9              MR. YETTER:  I'm sure they're going to say

10     that.

11              Like any executive at his level at the

12     time --

13              SPECIAL MASTER:  Right.

14              MR. YETTER:  -- he's going to be apprised

15     of a whole lot of stuff, like do we buy it, how much do

16     we pay for it, what do we do with it.

17              The argument today to the Special Master

18     is really not that third thing, what do we do with it,

19     very much.

20              But, even if it were --

21              SPECIAL MASTER:  Right.

22              MR. YETTER:  -- even if they pulled up a

23     bunch of exhibits and e-mails and slide decks that he

24     got, that he was a custodian of, that shows he knows

25     what they were going to do with it, again, what they
```

Page 119

```
 1    haven't done and what we think we have shown is that
 2    he's not the person making that decision.  He doesn't
 3    have unique personal knowledge about it.
 4              And whatever the decision that was being
 5    made, which is not in the documents they provided to the
 6    Special Master at this point, there are other either
 7    current or former higher-level executives, employees, of
 8    Google that could testify about the same thing.
 9              We wouldn't be in this discussion today if
10    Mr. Brin were retired and -- or he were at some other
11    company because the whole point of this document is that
12    when you have higher-level employees of your
13    adversary -- and Mr. Brin is the co-founder, he's now
14    still very much at the top -- Sundar Pichai is the top
15    man -- then the Court looks at whether -- it's
16    essentially a proportionality standard.
17              It's whether it is burdensome, needless,
18    and disproportional to be asking that high-level
19    employee of your adversary things that others
20    within -- other witnesses with their current Google
21    employees or former Google employees -- the States have
22    been deposing and -- or, at least at this point,
23    subpoenaing former high-level Google employees, like ███
24    ███████ -- that -- and that that executive doesn't
25    have unique personal knowledge, then it's the
```

Page 120

1    proponent's obligation to take those less-intrusive

2    steps.

3                I will say, another good example of how

4    this process works is the Isaacks case of 2023, Eastern

5    District case.  This is the Little League baseball case.

6    And it was a terrible case involving sex abuse by a

7    Little League coach.

8                But what the Plaintiffs did there is they

9    wanted to depose the CEO.  The way they went about doing

10   it, without the policy of the League, is they asked the

11   safety manager who made the decision not to mandate

12   child-safety testing.  She said:  It wasn't me.  Someone

13   up the chain.

14               So then they asked her supervisor.  Then

15   they asked the Chief Operating Officer.  And he said:

16   It wasn't me.  It was my boss, the CEO.

17               And the magistrate judge in that situation

18   said that's exactly the situation where the CEO makes an

19   important decision where no one else can testify about

20   it because it was his decision.

21               SPECIAL MASTER:  So let me ask you,

22   Mr. Yetter.  If Mr. Brin is not deposed, who's the

23   substitute for Mr. Brin at a lower level, what I hear

24   you saying?  Who is that witness?

25               MR. YETTER:  Let's talk about which topic

Page 121

1     they want to talk about.

2                    SPECIAL MASTER:  Right.

3                    MR. YETTER:  The acquisition of

4     DoubleClick --

5                    SPECIAL MASTER:  Yes.

6                    MR. YETTER:  -- Neal Mohan was at

7     DoubleClick.

8                    I really think what they want to talk to

9     about, according to their complaint, is what was done

10    with DoubleClick after it was acquired.  And Neal Mohan

11    ran DoubleClick.

12                   And I'm not trying to finger anybody.

13    I'm --

14                   SPECIAL MASTER:  No, no.  You're answering

15    my question.

16                   MR. YETTER:  But he basically was in

17    charge of DoubleClick after he came to Google until

18    2015.  That's why they want to depose him again, at

19    least reportedly.

20                   Now, that same topic is also on a

21    30(b)(6), their long list of --

22                   SPECIAL MASTER:  It's number 66.

23                   MR. YETTER:  So they want us to give the

24    most knowledgeable person.

25                   So if the -- and our position, in response

                                              Page 122

1    to it shouldn't be Mr. Brin, it shouldn't be Pichai,

2    because there are other people, our 30(b)(6)

3    representative will be one of them.

4                SPECIAL MASTER:  Who -- I'm going to ask

5    you this:  Who is that witness for Topic 66?  Has that

6    been decided?

7                MR. YETTER:  I -- that is a good question.

8    I don't know off the top of my head, but I can provide

9    that information to you.

10               SPECIAL MASTER:  Okay.  Just asking.

11               MR. YETTER:  And, frankly, it may well be

12   Mr. Mohan.  If he's not --

13               SPECIAL MASTER:  And, while we're at it,

14   Topic 97 on Meta will probably also be helpful too,

15   right?  I mean, that's the argument --

16               MR. YETTER:  Correct.

17               SPECIAL MASTER:  -- that you make.

18               MR. YETTER:  And we will --

19               SPECIAL MASTER:  So I'm just asking who

20   those witnesses will be because it might be relevant

21   where we land on this.

22               MR. YETTER:  And we will give you the -- I

23   don't know off the top of my head.

24               SPECIAL MASTER:  Okay.

25               MR. YETTER:  But we are obligated and we

                                          Page 123

```
 1    agreed that we're going to provide -- I know there's
 2    been some discussion about it, but we will be providing
 3    a witness on those.
 4                    SPECIAL MASTER:  On those two topics?
 5                    MR. YETTER:  Yeah.
 6                    If that -- if -- it's not, though, like
 7    that's the only person or witnesses -- the person we do
 8    on the 30(b)(6).  Because in any one of the documents
 9    that you've seen -- we've just been talking about
10    Mr. Brin, but Mr. Pichai is exactly the same.
11                    It's a group of people on every single
12    document that they've provided that, whether they're
13    current or former, are potential witnesses about the
14    very same exhibit.
15                    SPECIAL MASTER:  The CEO, has he
16    been -- he hasn't been deposed in the MDL, has he?
17                    MR. YETTER:  Neither of these witnesses,
18    Mr. Brin or Mr. Pichai, were deposed either in the MDL
19    or in the DOJ case.
20                    SPECIAL MASTER:  Thank you.  That was my
21    understanding.  All right.
22                    Go ahead.  I don't want to cut you off.
23                    MR. YETTER:  On -- moving to Mr. Pichai,
24    there -- they -- there's really three things, three big
25    topics --
```

```
 1                    SPECIAL MASTER:  Tell you what.

 2                    MR. YETTER:  Yes.

 3                    SPECIAL MASTER:  This might be a good

 4    stopping point --

 5                    MR. YETTER:  Okay.

 6                    SPECIAL MASTER:  -- unfortunately.

 7                    I think we need to get back to -- we've

 8    got eight minutes.  And we can go a few more minutes if

 9    we want to.  But we need to get into the courtroom.

10                    MR. YETTER:  I'm good to stop.

11                    SPECIAL MASTER:  Let's take a -- let's

12    stop here.

13                    And let's go off the record.

14                    THE REPORTER:  Off the record.

15                    (Break was from 1:23 p.m. to 4:38 p.m.)

16                    SPECIAL MASTER:  So let's go back on the

17    record.

18                    We're back here at about 4:39, same long

19    afternoon that we've had.  And we've had excellent

20    argument between both sides on motions to dismiss in

21    Judge Jordan's court.

22                    We're now back to finish the remaining

23    discovery disputes that are set forth in Docket 380.

24                    And, when we broke to argue those two

25    motions, Mr. Yetter had the floor with respect to
```

Page 125

1    Google's motion for protective order with respect to

2    three executives of Google or Google affiliates, YouTube

3    is what I understand for Mr. Mohan.

4              So, Mr. Yetter, we talked about Mr. Brin's

5    deposition.  Anything more you want to say on Mr. Brin

6    before we move to Mr. Pichai, the CEO?

7              MR. YETTER:  One thing, Special Master,

8    you asked about -- I had made the point about there are

9    other less-intrusive witnesses from which to get the

10   same means, to get the same information.  You asked

11   about the 30(b)(6) Topic 66, which is DoubleClick.

12             SPECIAL MASTER:  Right, the acquisition.

13             MR. YETTER:  It will be in two pieces.

14   It's actually more than the acquisition.  It's actually

15   integration and operation as well.

16             The acquisition, which we don't really

17   think is an issue, but we will have a witness testify

18   about that.  And it would be Mr. Mohan, Neal Mohan's

19   testimony about that, if he is going to testify.

20             SPECIAL MASTER:  If it goes beyond

21   14 hours, yes.

22             MR. YETTER:  And, on the integration and

23   operation, it is Mr. ██████████, who is starting

24   tomorrow.

25             SPECIAL MASTER:  Okay.

Page 126

```
 1                    MR. YETTER:  His -- and he is -- I'm now
 2     informed he's already been designated for that.  He is
 3     one of the 32.
 4                    SPECIAL MASTER:  He's on Number 66 for
 5     that issue.
 6                    MR. YETTER:  He's on 66.
 7                    And he's also on Number 97, which is
 8     basically the Network Bidding Agreement.  It's about
 9     Meta and header bidding.  And he has been designated for
10     that topic already as well.  So, if that's not covered
11     tomorrow, it will be covered in a few extra hours next
12     week.
13                    And so both of those topics, to the extent
14     that they're relevant in the case, have a witness.  He
15     is a senior engineer, a senior employee of Google that
16     is prepared to testify about that, which, again, we
17     believe reflects both that there is a -- are available
18     less-intrusive means and that this knowledge about both
19     of those topics, DoubleClick integration and operation
20     and acquisition and Facebook Meta and the NBA, are not
21     unique personal knowledge of Mr. Brin.
22                    SPECIAL MASTER:  Okay.  Obviously, for
23     30(b)(6), it doesn't depend upon personal knowledge, but
24     it can be helpful.
25                    Mr. ███████ was at Google at the time of
```

Page 127

```
 1    the DoubleClick acquisition?
 2                    MR. YETTER:  He was.  He was, yes.  I
 3    believe he was.  He's been -- no, actually, I'm not sure
 4    about that.  I thought I had heard he had been --
 5                    (Sotto voce discussion between Mr. Yetter
 6    and Ms. Bracewell.)
 7                    MR. YETTER:  Mr. Mohan has been, but I
 8    think Mr. ████████ -- ████████ came a few years later, but
 9    he has been -- he will be prepared to testify about the
10    integration.  I believe he's been there for 12 years?
11                    MR. MCCALLUM:  Sounds right.
12                    SPECIAL MASTER:  Thank you.  All right.
13                    MR. YETTER:  Mr. Pichai is -- if Mr. Brin
14    is at a very high level, Mr. Pichai is at the pinnacle
15    of the company.  He's the CEO of Alphabet.
16                    He is -- the focus that they -- that the
17    States have put on him is, again, for DoubleClick, less
18    on the acquisition, but to some extent on the
19    acquisition.  Not very much on the operations, at least
20    not in the documents that they have suggested.
21                    The Network Bidding Agreement, they say
22    that he was involved to some extent in that.
23                    He updated the board on the
24    DoubleClick -- at least he was involved in some board
25    presentations on the DoubleClick acquisition.
```

Page 128

```
 1                    He had some involvement in a response to a
 2       Forbes article on click fraud, is what the Plaintiffs
 3       have said.  And he had some involvement on competitive
 4       efforts by Microsoft with regard to some innovations
 5       that --
 6                    SPECIAL MASTER:  He had a friend at
 7       Microsoft, I believe.
 8                    MR. YETTER:  He had a contact at
 9       Microsoft.
10                    SPECIAL MASTER:  We're all friends.
11                    MR. YETTER:  We're all -- yes, we're all
12       friends or colleagues.
13                    And it was some new innovation at
14       Microsoft.
15                    Now, what I would say about that is,
16       especially when you look at the documents that they
17       provided on this -- and I'll only give a couple of
18       examples -- well, first of all, Plaintiffs' Exhibit 4 to
19       their response to the motion for protection, on the
20       DoubleClick acquisition, he sends an e-mail that -- to
21       three colleagues, Mr. ████████, Ms. ████████, and
22       Mr. ████████, on the announcement of acquiring
23       DoubleClick in April 2007.  He basically says:
24       ████████████████████████████████████████████████████
25                    How that is particularly relevant, if
```

```
 1    DoubleClick is relevant -- I'm not saying it's not
 2    relevant -- but that is the most remotely relevant
 3    indication of his knowledge, that he congratulates his
 4    colleagues.
 5              SPECIAL MASTER:  No, go ahead.
 6              MR. YETTER:  On the issue of the Forbes
 7    article on click fraud, the article is -- which is
 8    Exhibit 11 to the response, the article is in July of
 9    2007.  And he's asked by a colleague to work on some
10    bullet points to respond to the article with another
11    colleague, ██████████.  And they eventually do in order
12    to update another colleague, a senior-level fellow by
13    the name of ████████████████, on this article.
14              And, one, it's not clear -- at least the
15    States have not made it clear how the DoubleClick -- how
16    this article on the click fraud is woven into this case
17    about disclosures in antitrust violations.
18              But the bottom line is he's clearly
19    working with other people.  His answer is: ████████████
20    ████████████████████████████████████
21              And an instant message with ████████████
22    said: ██████████████.
23              So he's working with another colleague.
24    Any one of these would have the same knowledge about the
25    talking points that they put together about this article
```

Page 130

```
 1    in Forbes.

 2                    And the last one I will mention is --

 3                    SPECIAL MASTER:  The NBA?

 4                    MR. YETTER:  Yes.  And it is --

 5                    (Reporter clarification.)

 6                    MR. YETTER:  It is Exhibit H held under

 7    seal to our motion for protection.

 8                    And this is another one of the documents

 9    that the States have pointed out to us.  It is a

10    September 2018 e-mail in which one of -- a Mr. █████ at

11    Google sends an update on the Network Bidding -- the

12    NBA.

13                    And, in the second paragraph, he says:

14    █████████████.  ██████████████████████████████████

15    ██████████████████████████████████████.

16                    At this point, Mr. Pichai is the CEO.

17                    And the e-mail, which is obviously, on the

18    face of it, an update to him about the status of the

19    deal, has 49 other recipients on it, any number of which

20    are -- we would argue, are more informed probably than

21    Mr. Pichai, which is getting updated as the deal is

22    coming to conclusion, who is not having to give his

23    approval.

24                    And, to the extent that there is

25    information that the Plaintiffs want to get about the
```

Page 131

1    DoubleClick -- excuse me -- about the NBA, which is not

2    already going to be testified about in the 30(b)(6),

3    they have countless other -- at least 49 other Google

4    employees who may be still at the company or are

5    formerly at the company to ask about it.

6              The only thing that the States cite in

7    contrast is a document that is a promotion application

8    by another employee of the company who describes somehow

9    that final approval was going to come from Mr. Pichai.

10   And Mr. Pichai had nothing to do with that promotion

11   application.

12             So the bottom line -- and this is really

13   from our perspective.  You said we're in the ninth

14   inning.  There's, you know, two strikes left.  The

15   fourth quarter or two minutes left.

16             You know, these are two of the very most

17   senior executives of the company.  None of the other

18   Plaintiffs in their related cases have asked to depose

19   them.

20             They -- their knowledge, as the States

21   have provided it to us, are remotely relevant, if it's

22   relevant.  And there are more than enough, as we have

23   provided in the papers given to the Special Master,

24   significant evidence that there are less-intrusive means

25   and that the knowledge is not unique to either of these

Page 132

```
 1    two men.
 2                    I'll stop there.
 3                    SPECIAL MASTER:  Let me ask a question
 4    about Mr. Pichai.  He testified -- not -- this is
 5    information.  There's -- not dispositive.  It's
 6    just -- he testified in Search, as I understand.  Is
 7    that right?
 8                    MR. YETTER:  He did.
 9                    SPECIAL MASTER:  Okay.  And he testified
10    in Epic Games?
11                    MR. YETTER:  He did in Epic -- he was a
12    Google witness in Search and a Epic -- adverse witness
13    in the Epic case.
14                    SPECIAL MASTER:  Okay.  But not in -- we
15    talked about.  He's -- he didn't -- he hasn't testified
16    in the three cases involving display ads.
17                    MR. YETTER:  He's not going to be a
18    witness in the Virginia case, and he has not been
19    noticed or deposed in the NBA.
20                    SPECIAL MASTER:  Okay.  Thank you.
21                    Want to cover --
22                    MR. YETTER:  Mr. Mohan?
23                    SPECIAL MASTER:  -- Mr. Mohan?
24                    MR. YETTER:  A different -- while he is
25    CEO of YouTube, we're not moving under that doc -- the
```

Page 133

```
 1    so-called apex doctrine.
 2                    But he has been deposed 14 hours already.
 3    You know --
 4                    SPECIAL MASTER:  So let me ask a question
 5    on that.  Are you willing to say that the deposition he
 6    gave to the DOJ can be treated as if it were taken in
 7    this case?  Just asking.
 8                    (Sotto voce discussion between Mr. Yetter,
 9    Ms. Bracewell, Mr. And McCallum.)
10                    SPECIAL MASTER:  And let me ask another
11    question.
12                    MR. YETTER:  We will get back to you on
13    that.
14                    SPECIAL MASTER:  That's fine.  You may not
15    want to make that call right here and now.  I get that.
16    But it might be relevant to --
17                    MR. YETTER:  Yes, we understand that.
18                    SPECIAL MASTER:  Do the States have a copy
19    of his deposition in the DOJ case, Mr. Mohan's?
20                    MR. DEROSE:  We do.
21                    SPECIAL MASTER:  Okay.
22                    MR. DEROSE:  And we think that there was a
23    lot that was not --
24                    SPECIAL MASTER:  Covered.
25                    MR. DEROSE:  -- covered.
```

Page 134

1          SPECIAL MASTER:  I suspect from your

2     standpoint.

3          But you do have a copy of it?

4          MR. DEROSE:  We do have a copy, yes.

5          SPECIAL MASTER:  And you took it in the

6     first seven hours, so you have -- so -- you have

7     14 hours of his testimony.

8          MR. DEROSE:  Mohan's deposition was only

9     taken by the Department of Justice.  It was not

10    cross-noticed by anyone in the MDL.

11         SPECIAL MASTER:  Right.

12         MR. DEROSE:  So it's just seven hours of

13    testimony.

14         SPECIAL MASTER:  I'm sorry.  What I was

15    referring to is you took him before you filed this

16    lawsuit.  You took him in the investigation stage?

17         MR. DEROSE:  Oh, in the investigation.

18    Yes.

19         SPECIAL MASTER:  Do you have that?

20    Because the State of Texas took that depo --

21         MR. DEROSE:  Right.  Yes.

22         SPECIAL MASTER:  -- I assume.  Right?

23         MR. DEROSE:  Sorry.

24         SPECIAL MASTER:  So you've got 14 hours of

25    him, correct?

Page 135

```
 1                    MR. DEROSE:  That's my understanding, yes.

 2                    SPECIAL MASTER:  Okay.  Yeah.

 3                    MR. YETTER:  I believe he was the only

 4      witness that was deposed in the investigation.  I -- let

 5      me double-check on that, but that's my memory.

 6                    Am I correct?

 7                    UNIDENTIFIED MAN:  I'm not sure.

 8                    SPECIAL MASTER:  Okay.

 9                    Anything else on Mr. Mohan?

10                    MR. YETTER:  The only thing on

11      Mr. Mohan -- and, as I said, there -- to some extent, we

12      may designate him on some issues, so there may be a

13      limited amount of extra testimony -- is that the

14      coordination order, while it's clearly not in effect

15      today, at the time he was deposed in Virginia, it was in

16      effect.  And the State of Texas was still -- had not yet

17      been remanded back to the Eastern District.

18                    And, at that time, both the MDL and the

19      Plaintiff and the State of Texas, under that existing

20      coordination, would be -- would have -- that would have

21      been counted against them.  They didn't

22      count -- cross-notice it.

23                    And today, as counsel had said earlier,

24      the DOJ is seeking to amend the coordination order in

25      Virginia such that the very same obligation would
```

Page 136

```
 1    extend.
 2                 If that happens -- and Texas is not
 3    objecting to it, they're in agreement with it -- it
 4    still would be their -- it would count as a deposition
 5    in this case.
 6                 So when it was taken, at least when it was
 7    noticed, it counted as a deposition in this case.  And,
 8    if what happens in Virginia -- if the amended
 9    coordination order actually happens, it will count as a
10    deposition in this case.  And the -- you may have read
11    the motion to amend the coordination order.  The DOJ
12    says that, that it would mean that the witnesses taken
13    in Virginia or in the MDL could not be retaken in --
14                 SPECIAL MASTER:  Right.
15                 MR. YETTER:  -- without good cause.
16                 SPECIAL MASTER:  But it -- you filed the
17    opposition, though, to that yesterday evening.  Right?
18                 MR. YETTER:  We did, for different
19    reasons.  We --
20                 SPECIAL MASTER:  Right, right.
21                 MR. YETTER:  -- file it for different
22    reasons.
23                 All I'm saying is that the States here
24    before the Special Master are saying, We've never taken
25    that deposition.  Yet back, originally, when it was
```

Page 137

```
 1    taken in Virginia, and even today, the States have
 2    agreed that it would have been counted as a --
 3                    SPECIAL MASTER:  If they remained
 4    in -- their argument now is it's not a coordinated case,
 5    right?
 6                    MR. YETTER:  It's certainly their argument
 7    now.
 8                    But, if what happens in Virginia with the
 9    motion to amend, if it happens, it would be --
10                    SPECIAL MASTER:  Then it comes back, is
11    your point.  Got it.
12                    All right.  Anything else from Google on
13    these three potential witnesses, deponents?
14                    MR. YETTER:  No.
15                    SPECIAL MASTER:  Okay.
16                    Mr. Keller.
17                    MR. KELLER:  Hi, Special Master.
18                    I think I'll start with Mr. Brin and
19    reserve the right to phone a friend here if they want to
20    rein me in.
21                    I know you've read the papers.  I know you
22    understand their relevance first.  And then, once we've
23    got that, the presumption is we get things unless they
24    can overcome the burden of showing there's a
25    less-intrusive means.
```

Page 138

```
 1              I think you just heard any number of
 2   40 people on a e-mail or 20 people on an e-mail.  I
 3   don't think that meets their burden of showing the
 4   less-intrusive means.  You can't just point to a laundry
 5   list.  But let's put a pin in that.
 6              The main overarching point I would make
 7   for Mr. Brin -- and I think it applies to the CEO as
 8   well -- is intent really matters in these kinds of
 9   antitrust cases.  It's actually an element of an
10   effective monopolization claim, so it's really
11   important.
12              But it's definitely probative and relevant
13   to monopolization itself, even if it's not dispositive
14   because, if you have the intent to go out and monopolize
15   and get ill-gotten profits, as opposed to competing
16   based on your superior skill and technological prowess,
17   that's something that could be taken into account
18   because we presume that sophisticated entities like
19   Google are pretty good at carrying out their intent.
20              Another feature that I think comes from
21   these sorts of cases is precisely because the antitrust
22   laws exist people don't document their intent in careful
23   memos that lay out their anti-competitive designs.
24              And so the DoubleClick acquisition, why
25   did Mr. Brin, as a co-founder and a high-ranking officer
```

Page 139

```
1   of the company, ████████████████████████████

2   ██████?  And they say we haven't alleged that the

3   acquisition itself was anti-competitive.  We don't

4   concede that it wasn't, that's true.  But, obviously,

5   the acquisition of DoubleClick played a significant role

6   in all of the other monopolization and attempt theories

7   that we're pursuing.

8              And, you know, one reason that Mr. Brin

9   █████████████████████████████████████████████

10  ████████████████████████████████████████████

11  ████████████████████████████████████████████████

12  ██████████████████████████████████████████.

13               ██████████████████████████████████████

14  █████████████████████████████████████████████████

15  ██████████████████████████████████████████████

16  █████████████████████████.

17              And, by its nature, these sorts of

18  intentions are going to be limited to the very top of an

19  organization like Google.  They're not sending around a

20  memo to everybody copied on that e-mail saying here's

21  all the anti-competitive stuff we're going to do with

22  the DoubleClick asset.

23              So we've got to be able to depose someone

24  like Mr. Brin, ██████████████████████████████████

25  ████████████████████████████████████████
```

Page 140

1    ███████████████████████████████████.

2              And so, you know, we point to some

3    documents that demonstrate the relevance.  We're not

4    going to give our entire deposition playbook and show

5    them everything in advance.  We don't think that that's

6    our burden at this phase.

7              But the thematic point is that intent

8    matters.  And I think I would say the same sort of thing

9    with respect to the CEO.

10             You know, he's going to know things that

11   he's not sharing outside of a very tight circle within

12   Google if our theories of this case are right.

13             And the other point I would make that

14   maybe doesn't come through as sharply in the papers -- I

15   know you know this -- a big part of this is

16   proportionality and burden.

17             I cast no aspersions on anybody's case.

18   Everybody thinks their case is the most important case

19   in the world.  This is not a $75,000-and-one-penny

20   diversity case.  Right?  This is a case by 17 sovereign

21   states.  And we're seeking to break up Google.  That's a

22   pretty big deal.

23             The stakes are high.  The CEO can sit for

24   a deposition.  Sergey Brin, he's an important person, no

25   doubt about it.  But he can sit for a deposition.

Page 141

```
 1                    The allegations that we're making are real
 2      serious, so it means that high-level people have to get
 3      in a chair.
 4                    SPECIAL MASTER:  Anything on Mr. Mohan
 5      further?
 6                    MR. KELLER:  No.  Pass the baton on him.
 7                    MR. DEROSE:  Do you want to talk
 8      about -- do you want to give more on Brin and Pichai
 9      or --
10                    MS. YOUNG:  Yeah.  Just a few more things.
11                    SPECIAL MASTER:  Sure.
12                    MS. YOUNG:  And these are -- agreed the
13      thematic points, I think, are quite concerning, but
14      there may be smaller points.
15                    Just -- so most of the people -- I think
16      we dropped it in the footnotes -- that were on the
17      documents --
18                    SPECIAL MASTER:  They're gone.
19                    MS. YOUNG:  -- Pichai -- they're gone.
20                    SPECIAL MASTER:  I got it.
21                    MS. YOUNG:  So I think that has two
22      implications.  Right?  They're not there.  But it also,
23      I think, shows that the 30(b)(6) is not a substitute.
24                    And Mr. Mohan, where they're challenging
25      on other grounds, if they put him up, he's not on any of
```

Page 142

```
 1    those documents.  I don't think he was quite -- even
 2    close to the level of Mr. Brin and then Mr. Pichai at
 3    the time.  So I think that poses two problems.
 4                A smaller issue is the Topic 97, I think
 5    Mr. ████ is only covering a portion of it, so that
 6    leaves another portion open on the NBA.
 7                With respect to Mr. Pichai, I think, as
 8    you noted, he took the stand in the Search and Epic
 9    cases.  He might take the stand in the DOJ case.  We
10    don't know.  It's still to be seen whether or not he's
11    going to be a witness in that case.
12                I think that's it from me.
13                SPECIAL MASTER:  Yeah.  We're just talking
14    about depositions today, right?
15                MS. YOUNG:  Yeah.  Right.
16                SPECIAL MASTER:  We're not talking about
17    trial witnesses?  Okay.
18                MS. YOUNG:  And then I can move on to
19    Mr. Mohan unless --
20                Do you have anything on Brin or Pichai?
21                MR. DEROSE:  No.
22                MS. YOUNG:  So I think I --
23                SPECIAL MASTER:  So this is a witness
24    that's been deposed for 14 hours.
25                MS. YOUNG:  Yes.
```

Page 143

```
 1                    SPECIAL MASTER:  Seven by you, seven by
 2       the DOJ.
 3                    MS. YOUNG:  Not in this case.
 4                    My understanding is that --
 5                    SPECIAL MASTER:  In your presuit
 6       investigation.
 7                    MS. YOUNG:  Yes, yes.  And --
 8                    SPECIAL MASTER:  I know it doesn't count
 9       as one, but yes.
10                    MS. YOUNG:  Yeah, yeah.
11                    And, I think -- so the one point that
12       wasn't raised is the volume of documents that was
13       produced.
14                    So the investigation deposition took place
15       in 2020, so four years ago.  Six million-ish, I don't
16       know, around -- a lot of documents have been produced
17       since then.  And then even since the DOJ's deposition in
18       October, documents have been produced associated with
19       Mr. Mohan.
20                    There was -- and I don't want to kind of
21       get into a dispute about this, but even documents that
22       were produced in early October, the States were not able
23       to access until after his deposition.
24                    And, as Mr. DeRose alluded to, I think,
25       through those there's a lot of topics that were not
```

Page 144

```
 1    covered in the prior deposition that we didn't have

 2    knowledge about or couldn't have asked about in the

 3    prior deposition.

 4                SPECIAL MASTER:  So your ask on Mr. Mohan

 5    is seven hours?

 6                MR. DEROSE:  Yes, sir.

 7                MS. YOUNG:  Uh-huh.

 8                SPECIAL MASTER:  Okay.  All right.

 9                What else?  I don't mean to cut you off.

10    Just a question.

11                MS. YOUNG:  I think that's it.

12                No, please go.

13                MR. DEROSE:  I think the timing of what

14    happened when we were in the MDL is significant.

15                Mr. Lanier represented to Judge Jordan

16    before the decision to hold the Mohan deposition went to

17    the top levels, and that means Mr. Keller and

18    Mr. Lanier.

19                Mr. Mohan was scheduled for a deposition

20    the day after Labor Day.  The week before, we got an

21    e-mail from our friends on the other side that there had

22    been a hiccup related to document production.  That

23    hiccup resulted in 16 million documents not being

24    reviewed, 10,000 of which were related to Mr. Mohan.  So

25    we pulled the deposition and said we can't do this at
```

Page 145

```
 1    this time.
 2              It then took us a couple months to get all
 3    the documents, once they were produced and ingested.
 4    And we said we're not taking it just because the DOJ
 5    takes it.  We made it clear to Google at the time.  And
 6    they made it clear that they were going to object to it.
 7              But we do think that he has unique
 8    information.  We think that we're no longer tied to the
 9    DOJ schedule, and we weren't in October.  And he was at
10    DoubleClick as part of the transaction.  He has unique
11    information that we did not know during the
12    investigation.
13              And we do think, as they said, you know,
14    we weren't compelled to take it during the DOJ's time
15    line.  And we didn't have time to review the documents.
16    We have now, and we're prepared to take it.
17              SPECIAL MASTER:  All right.
18              Anything further from the States on these
19    three?  Mr. Yetter, rebuttal?
20              MR. YETTER:  Very briefly.
21              Counsel says, in an antitrust case, intent
22    to monopolize matters.  There's nothing that says in an
23    antitrust case you always take the CEO or every other
24    top executive in the case of the adversary at the time.
25              And Sundar Pichai was not the CEO at the
```

Page 146

1     time that DoubleClick was acquired.

2                     So the intent to monopolize, the argument

3     is to take Mr. Pichai because somehow his intent was

4     critical in 2007.  He wasn't the top executive.

5                     SPECIAL MASTER:  He wasn't the top, but he

6     had a significant role even at that point in time.

7                     MR. YETTER:  He did -- he wasn't an

8     executive, clearly.

9                     SPECIAL MASTER:  Right.

10                    MR. YETTER:  I think he --

11                    SPECIAL MASTER:  He was either an officer

12    or director.  He probably wasn't a director.  He was an

13    officer.

14                    MR. YETTER:  He was not a director.

15                    SPECIAL MASTER:  He was an officer.

16                    MR. YETTER:  He was an officer.

17                    SPECIAL MASTER:  Right.

18                    MR. YETTER:  But all of the documents that

19    the Special Master has seen, it's a group of officers

20    talking about the same thing.

21                    And same with Mr. Brin.  He -- it's

22    certainly a group of officers talking about the same

23    thing.

24                    There wasn't anything in the papers in

25    which the States were saying that intent to monopolize

Page 147

1    was the point of what they were trying to get.

2                    And I would repeat, as I said earlier, the

3    DOJ is going to try this case in Virginia without either

4    of these men being deposed or without either of them

5    being witnesses in the case, Mr. Brin and Mr. Pichai.

6                    The point that -- and the States made this

7    point in their papers, that most of these executives at

8    the time are gone.

9                    The States are taking depositions of

10   former Google employees, a number of them.  Many of them

11   have their own lawyers.  And so that's something that

12   certainly can happen here.

13                   SPECIAL MASTER:  Those are the third-party

14   witnesses that you were talking about recently?

15                   MR. YETTER:  It is, some of which we are

16   not coordinating, but we -- the request came to us and

17   we've notified them.

18                   So the bottom line is I would simply end

19   with the Microsoft case, Computer Acceleration.  In that

20   case -- and every other case is consistent, as both

21   sides have cited.  The oral deposition of a high-level

22   corporate executive should not be freely granted when

23   the subject of the deposition will be only remotely

24   relevant to the issues of the case.  This is especially

25   so where the information sought in the deposition can be

                                                Page 148

```
 1     obtained through less-intrusive discovery methods or
 2     from depositions that will arguably lead to more direct
 3     knowledge of the facts at issue.
 4                    And we respectfully submit everything we
 5     presented and, frankly, everything that the States have
 6     presented show that there are other -- many other
 7     employees that can testify about the same topics.  And
 8     none of these, and certainly Mr. Brin and Mr. Pichai,
 9     have knowledge -- personal knowledge that's unique.
10     And, at best, some of the things that are being asked
11     about are remotely relevant.
12                    (Reporter clarification.)
13                    (Security Guard entered proceedings.)
14                    SPECIAL MASTER:  We're going to take a
15     short break.
16                    (Discussion held off the record.)
17                    SPECIAL MASTER:  We're back on.
18                    Anything further from the States in
19     response to that?  I assume not.  But...
20                    MR. DEROSE:  No, sir.
21                    SPECIAL MASTER:  Okay.
22                    Mr. Keller, do you need to leave?  I think
23     we're done on this issue.
24                    MR. KELLER:  I appreciate it.
25                    SPECIAL MASTER:  You bet.
```

Page 149

```
 1                    MR. KELLER:  Thank you, Special Master.

 2              Good to see you-all.

 3                    SPECIAL MASTER:  Thank you.

 4              Let's move on.  We have a few more issues.

 5    We've handled the two protective orders from Google.

 6                    Interrogatories, are we -- y'all have an

 7    understanding on Interrogatory No. 12?  No, we don't.

 8                    MR. YETTER:  We do not.

 9                    SPECIAL MASTER:  Let's be heard.

10                    MR. YETTER:  And it is -- it's a simple

11    issue.  We've asked -- they've alleged that

12    the -- certain Google contracts are -- they allege tying

13    claims in certain of the contracts.  We've asked them to

14    identify the contracts, which largely they have, but

15    also what specific provisions are --

16                    SPECIAL MASTER:  Coercive in nature.

17                    MR. YETTER:  -- coercive or related to the

18    tying.  And that's what we haven't gotten.

19                    And it's -- it is -- we're almost done

20    with fact discovery.  It's time -- beyond time to give

21    us that information.

22                    SPECIAL MASTER:  Okay.

23                    Mr. DeRose or --

24                    MS. YOUNG:  Yeah, I think the papers

25    are --
```

Veritext Legal Solutions
346-293-7000

```
1              IN THE UNITED STATES DISTRICT COURT
                FOR THE EASTERN DISTRICT OF TEXAS
2                       SHERMAN DIVISION
3       THE STATE OF TEXAS,            )
        ET AL.,                        )
4                                      )
            Plaintiffs,                ) CIVIL ACTION NO.:
5                                      )
        VS.                            ) 4:20-CV-957-SDJ
6                                      )
        GOOGLE LLC,                    )
7                                      )
            Defendant.                 )
8
9
10              REPORTER'S CERTIFICATION
11           HEARING BEFORE SPECIAL MASTER
12                  APRIL 18, 2024
13
14      I, Kimberly Byrns Buchanan, Certified Shorthand
15   Reporter in and for the State of Texas, hereby certify
16   to the following:
17     That the foregoing contains a true and accurate
18   transcription of all proceedings in the above-styled
19   matter as reported by me;
20      I further certify that I am neither counsel for,
21   related to, nor employed by any of the parties or
22   attorneys in the action in which this proceeding was
23   taken, and further state that I am not financially or
24   otherwise interested in the outcome thereof.
25      Certified to by me this 22nd day of April, 2024.
```

Page 162

1

2

3

*Kimberly Byrns Buchanan*

Kimberly Byrns Buchanan, RPR

4      Texas CSR No. 7579

Expiration Date:  12/31/24

5

Veritext Legal Solutions

6      Firm Resgitration No. 571

300 Throckmorton St., Ste. 1600

7      Fort Worth, Texas 76102

800-336-4000

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 163