# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# SHERMAN DIVISION

| | |
|---|---|
| THE STATE OF TEXAS, et al., <br><br> Plaintiffs, <br><br> v. <br><br> GOOGLE LLC, <br><br> Defendant. | Case No. 4:20-cv-00957-SDJ <br><br> Hon. Sean D. Jordan |

## PLAINTIFF STATES' OBJECTIONS TO REPORT AND RECOMMENDATION (ECF NO. 470)

## **INTRODUCTION**

Google has repeatedly attempted to shortcut its own discovery by seeking Plaintiff States' highly protected opinion attorney work product derived from their pre-suit investigation. First, Google asked the Special Master to compel the States to produce memoranda written by the States' attorneys about pre-suit investigatory interviews with third parties. The Special Master denied that unjustified request. *See* Dkt. 289. Google did not formally object to the Special Master's recommendation. Instead, Google tried to go around it, using its 30(b)(6) deposition of Plaintiff States' representative to probe for protected opinion work product about the States' third-party interviews. Plaintiff States appropriately objected, and the representative answered the questions to the extent he could without revealing privileged information.

But Google's pursuit of the States' privileged information did not end there. Google asked the Special Master to compel Plaintiff States to sit for another 30(b)(6) deposition to reveal their attorney work product, even though Google lacked the "compelling need" that the case law requires for obtaining this highly protected work product. The Special Master sided with Google based on an unsupported—and false—assumption that such a deposition could reveal additional nonprivileged facts about those interviews beyond the copious materials the States have already provided. The Special Master also relied upon Google's false assertion that Plaintiff States had agreed to testify about the contents of the memoranda.

Because both of those premises were false, the Special Master's conclusion was erroneous. The States have continually maintained that no additional nonprivileged facts exist for Google to unearth, and the States agreed to designate a witness to testify only to the nonprivileged facts already produced—which the witness did. Any further deposition testimony would necessarily require the States to prepare the witness to testify about the contents of the interview memoranda that all parties agree are highly privileged, because (a) the information in those memoranda is at

1

least 3-4 years old, (b) the attorney authors are nearly all unavailable, and (c) any preparation by those or other attorneys would cause the witness to reveal privileged information. Accordingly, Plaintiff States respectively ask this Court to decline to adopt the Special Master's Report and Recommendation, Dkt. 470.

Further deposition testimony would fly in the face of well-established law protecting public enforcers from illegitimate probing by investigatory targets. Google should have to rest on the discovery of third parties that it has chosen to do (or, in this case, neglected to do). In fact, Google could still interview the third parties—whose names and contact information the States have provided—to get the same information they improperly seek from the States. This Court should decline to grant Google an illegitimate window into the States' own investigatory impressions and conclusions. To the extent the Court finds that any additional nonprivileged "underlying facts" exist to which Google is entitled, Google should be limited to interrogatories or other written discovery.

## FACTUAL BACKGROUND

On January 27, 2023, Google served on Plaintiff States an overbroad set of interrogatories, including Interrogatory 9, which requested extensive information about "all persons other than Google with whom [the States] communicated concerning an Investigation or this Action." Dkt. 272 App. at 1 (filed under seal). The States responded by, *inter alia*, (1) objecting to the response to the extent it sought material protected by the attorney-client, attorney work product, or other privilege; and (2) pointing Google to (i) the States' First Amended Initial Disclosures, which would list each third party contacted during the investigation and (ii) the States' prior productions of communications with third parties. *See* Dkt. 245-1 at 28-29.

On February 27, 2024, Google raised a dispute with the Special Master regarding the adequacy of Plaintiff States' response to Interrogatory 9. *See* Dkt. 272. Following the States'

response, *see* Dkt. 278 at 3-10, the Special Master sided with the States and denied Google's motion to compel further response to Interrogatory 9, *see* Dkt. 289 at 5-7. The Special Master found that the States' Initial and Amended Disclosures were "comprehensive" and that the States had "produced all documents they received from those third parties and correspondence exchanged during their investigations." *Id.* at 6-7. The Special Master opined that these materials were "sufficient for Google to continue to mount its defense," that Google had an "unrestricted ability to attempt to interview or depose the identified persons," and that Google had not made the "requisite showing" to obtain "otherwise privileged work product" contained in the memoranda the States had prepared regarding its interviews of third parties. *Id.* at 7. Further, the Special Master credited the States' argument that "there is no non-opinion work product contained in the memoranda." *Id.* at 6.

On March 5, 2024, Google served notices of deposition under Rule 30(b)(6) on each of the Plaintiff States seeking corporate testimony on 41 topics, including multiple topics that sought privileged information regarding the States' pre-suit investigation. *See* Dkt. 334 at 4. After meeting and conferring with Google regarding their objections, the States agreed to testify to a set of topics to the extent they sought only factual, non-privileged information. *See id.* At a March 21, 2024, hearing before the Special Master, the States reiterated their agreement to designate 30(b)(6) witnesses on the agreed-upon topics to "testify about everything except, of course, anything that's privileged or protected across all the topics." Dkt. 406-3 at 37:18-21 (Mar. 21, 2024, Special Master Hr'g Tr.).

On March 29, Plaintiff States codified that agreement and their continued objection to 30(b)(6) testimony on attorney work product in a letter to Google. Dkt. 343-1. The States reiterated their "significant and legitimate concerns that the Rule 30(b)(6) depositions sought by Google will

3

necessarily and primarily seek testimony on privileged information and communications and protected attorney work product, in the form of attorney mental impressions and evaluations." *Id.* at 4-5. The States further represented that they had already "provided all of their available factual basis of their claims in their length complaint, interrogatory responses, document productions, and other products and correspondence to Google," and thus that "[a]nything beyond those already-provided facts will seek testimony on the OAG's legal strategy, theories, opinions, and mental impressions, deliberations, and evaluations about those (again) already-provided factual basis." *Id.* at 5.

Subject to that agreement and those objections, on April 17, 2024, the States presented the General Counsel of the Office of the Attorney General of the State of Texas, as the corporate representative for Texas and, on issues common to the States, for the States. *See* Dkt. 406-5. He testified for nearly 12 hours (9:12 AM to 8:34 PM), including about 8.5 hours on the records, on a variety of topics. He prepared for the deposition by

> review[ing] hundreds of pages of documents, including the documents that are listed in the deposition notice, me[eting] with counsel, probably spen[ding] 30 or 40 hours reviewing documents and getting brushed up on the case and getting updates on the background of the case, where it is now, and then understanding all of the factual bases for the claims that were made in the -- in the various documents at issue and the deposition notice.

*Id.* Tr. 16:6-14. During the deposition, the States' counsel reiterated their previously stated position that the witness would not testify about the privileged contents of the attorney work product memoranda—the same memoranda that the Special Master already determined were privileged and not discoverable. *See, e.g.*, *id.* Tr. 85:23-86:16. Indeed, the witness stated that he had not reviewed the interview memoranda prior to the deposition because those memoranda are work product. Instead, he reviewed the privilege logs produced by the States, which provided the relevant non-privileged information from those memoranda. *See id.* Tr. 197:19-200:1. Based on

4

that and other information he reviewed, the witness provided significant information about the States' communications with and investigative interviews of third parties while accepting his counsel's instructions not to reveal privileged information. *See id.* Tr. 191:2-195:19.

But Google was not satisfied with this non-privileged information alone. Instead, on April 23, Google once again asked the Special Master to allow it to discover the States' attorney work product regarding their third-party investigative interviews. Dkt. 406. Google claimed that the witness "was unprepared to testify about any third-party facts," including the contents of the third-party memoranda, and that Google sought only "the underlying factual information itself" from those memoranda. *Id.* at 4-6. Based on those misrepresentations, Google argued that the States had reneged on their agreement to provide testimony on this topic.

On April 26, Plaintiff States responded to correct Google's mistaken construal of the witness's testimony, the privileged nature of the information that Google sought, and the parties' prior agreement. *See* Dkt. 426. The States emphasized that they "ha[d] never represented that there were clean, non-privileged facts to discover in those memoranda [of the pre-suit third-party interviews], nor agreed to disclose the contents of those attorney work product memoranda." *Id.* at 2-3.

At a hearing before the Special Master on May 2, the Special Master asked Google "[how he] could then permit you to ask from a testimonial standpoint testimonial evidence for the exact same information" from the investigatory memoranda that the Special Master had previously refused to compel. Ex. A at Tr. 71:11-13 (May 2, 2024, Special Master Hr'g Tr.). The Special Master indicated that doing so would be to not "rule consistently." *Id.* at Tr. 71:14-15. Plaintiff States agreed with that assessment, explaining that what Google was asking for "is essentially another 30(b)(6) witness to go and review all of the work product memos and try to parse what

5

may be nonprivileged factual information from mental impressions, which we do not think can be done based on our review of the memos." *Id.* at Tr. 75:5-14.

On May 7, following a hearing on this and other topics, the Special Master granted Google's request for additional testimony from the States "as to the facts learned from pre-suit interviews with third parties." Dkt. 470 at 5. The Special Master distinguished between (a) "[t]he third party interview memoranda," which "are protected by the work product doctrine," and (b) "the underlying factual information gleaned from third party interviews," which the Special Master held were discoverable "through the testimony of the States' Rule 30(b)(6) witness." *Id.* at 3.

## ARGUMENT

**I.     The Special Master Improperly Permitted Google To Seek Testimony on the States' Attorney Work Product.**

The Special Master's recommendation that Plaintiff States provide additional 30(b)(6) testimony would require the States to reveal attorney work product, even though Google has not even attempted to meet its heavy burden to overcome attorney work product protection for opinion work product. The Special Master proceeded based on an abstract and unsubstantiated assumption that additional non-privileged "underlying facts" exist for Google to discover about the third-party investigative interviews outside of the third-party investigative memoranda that the Special Master already determined were protected. That assumption is incorrect, and the Special Master's order is incorrect as a result.

**A.     Attorney Work Product, Such as Memoranda from Investigative Interviews, Is Protected from Discovery, Particularly in the Context of Public Enforcers' Investigations.**

The attorney work product privilege "insulates a lawyer's research, analysis of legal theories, mental impressions, notes, and memoranda of witnesses' statements from an opposing counsel's inquiries." *Dunn v. State Farm Fire & Cas. Co.*, 927 F.2d 869, 875 (5th Cir. 1991) (citing *Upjohn Co. v. United States*, 449 U.S. 383, 400 (1981)). This longstanding doctrine exists to permit

6

attorneys to "assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless inference." *Hickman v. Taylor*, 329 U.S. 495, 511 (1947). The Supreme Court has justified this privilege in part because, "[u]nder ordinary conditions, forcing an attorney to repeat or write out all that witnesses have told him and to deliver the account to his adversary gives rise to grave dangers of inaccuracy and untrustworthiness. No legitimate purpose is served by such production." *Id.* at 512-13.

"Opinion work product" in particular—including memoranda prepared by attorneys in anticipation of litigation—"is afforded an almost absolute protection from discovery" and "is the most sacrosanct of all forms of work product." *United States v. Rodgers*, No. 4:20, CR-00358, 2022 WL 1074013, at *6 (E.D. Tex. Apr. 8, 2022) (Mazzant, J.) (citations and quotation marks omitted). For that reason, courts in this District and Circuit regularly protect from discovery attorney notes and memoranda prepared during investigations, as well as *testimony about those notes and memoranda*. *See, e.g.*, *id.* at *7 (denying defendant's motion to compel testimony about third-party interviews because "even if the [U.S. Department of Justice] Witnesses testified only as to their 'interviews with witnesses related to the investigation' . . . these, too, would constitute opinion work product"; *Smith v. Diamond Offshore Drilling, Inc.*, 168 F.R.D. 582, 585 (S.D. Tex. 1996) (concluding that investigatory reports that contain summaries of witness interviews are opinion work product because the reports are "suffused" with the investigator's mental impressions and conclusions); *Dunn*, 927 F.2d at 875 (finding that opinion work product includes notes and memoranda created by an attorney or his agent, regarding witness interviews, because they contain mental impressions)). Such memoranda or summaries of investigatory interviews receive this heightened protection because, even though underlying facts are not privileged, "it is

the selection and compilation of the relevant facts [in such memoranda] that is at the heart of the work product doctrine." *Kentucky v. Marathon Petroleum Co. LP*, No. 3:15-CV-354-DJH, 2018 WL 3130945, at *3 (W.D. Ky. June 26, 2018) (citation and quotation marks omitted).

To overcome this "'nearly . . . absolute'" protection for opinion work product, the party seeking discovery must show "'a compelling need for the information.'" *Rodgers*, 2022 WL 1074013, at *6 (quoting S.*E.C. v. Brady*, 238 F.R.D. 429, 443 (N.D. Tex. 2006)). This "heightened burden" requires more than even the "undue hardship and substantial need" required for disclosure of ordinary work product. *Brady*, 238 F.R.D. at 443.

Courts take an especially hard line against deposition testimony of public enforcement offices due to the risk of revealing protected attorney work product. That hard line applies even if the designated corporate representative is not an attorney. For example, in *Kentucky v. Marathon*, the court prohibited the defendant in a state enforcement action from deposing a non-attorney representative for the Office of the Kentucky Attorney General because "the only people with suitable knowledge about this case are OAG attorneys or those who have worked directly under them, such as the investigators and paralegals . . . . It only follows that should an OAG attorney prepare another member of the office to testify at the deposition, that employee would necessarily be repeating the information the attorney told him." 2018 WL 3130945, at *3-5. That testimony, like testimony of the attorneys themselves, would inevitably reveal opinion work product even if the defendant claimed to seek only facts. Similarly, in *F.T.C. v. U.S. Grant Resources, LLC*, the court denied a deposition of the Federal Trade Commission regarding its pre-suit investigation, finding that "the 30(b)(6) notice is an inappropriate attempt to depose opposing counsel and to delve into the theories, opinions and mental impressions of FTC attorneys." No. Civ.A. 04-596, 2004 WL 1444951, at *9 (E.D. La. June 25, 2004).

## B. Google's 30(b)(6) Questions Improperly Seek Attorney Work Product About the States' Public Enforcement Investigation.

The Special Master properly denied Google's motion to compel production of the States' third-party investigative interview memoranda. Yet, now, the Special Master has granted Google's request to compel the States' testimony about the contents of those very same privileged memoranda. The Special Master did so on the assumption that there exist additional "facts the States learned from third party interviews" that the States had not previously disclosed and that could be testified to in a deposition without revealing the attorney opinions, mental impressions, and decisions about compilations of facts contained in the memoranda. Dkt. 470 at 4. That assumption has no basis.

The transcript of the witness's corporate deposition reveals exactly why. During the deposition, Google's counsel asked—and the witness answered—a series of questions about a third party whom Texas interviewed during the pre-suit investigation. Dkt. 406-5 at Tr. 142:21-145:9. The witness confirmed that Texas OAG had interviewed that third party based on the log previously produced to Google, *id.* Tr. 143:4-7, and answered questions about communications that Texas produced from its investigative file, *id.* Tr. 142:13-145:9. The witness did so without any privilege objection. Not satisfied with that factual information, Google then asked, "And do you know if [Plaintiff States] have reached any conclusions about whether these statements [that the third party made in the previously produced communications] are true?" *Id.* Tr. 145:10-12. Only at that point did the States' counsel object that the question "calls for work product." *Id.* Tr. 145:13-14. Following that objection, Google moved on to a different topic.

That exchange exemplifies the dividing line between facts and work product on which the States have insisted—and that any further deposition testimony would cross. As the Special Master previously found, the States have already produced copious factual information about third-party

9

participation and communications in their pre-suit investigation. Dkt. 289 at 7. That information forms the extent of the "underlying facts" that the States can disclose without disclosing opinion work product. Accordingly, in the deposition, the witness pointed to and confirmed the factual information already produced to Google—such as the logs and communications—while refusing to testify to the conclusions and opinions that the States had made based on those facts. Any further deposition of the States would either adhere to that same distinction or require breaching the work product privilege.

The Special Master concluded that additional "underlying facts" exist for the States to disclose through testimony based on another part of the transcript, in which Google's counsel asked the witness if he had "any understanding of what specific facts were conveyed during [the pre-suit interviews of third parties]." Dkt. 470 at 4 (quoting Dkt. 406-5 at Tr. 200:7-8). The witness responded that he did not have any such understanding. Dkt. 406-5 at Tr. 200:10. The Special Master opined, based on that exchange, that the States had not "provide[d] a deponent prepared to address the facts" of the pre-suit investigation. Dkt. 470 at 4. But the immediate context of that exchange disproves the Special Master's conclusion.

The exchange began with Google's counsel asking he witness whether he was "aware of the substance that was communicated during those [investigatory] interviews [of third parties]," "other than the information that's provided on the privilege log." Dkt. 406-5 at Tr. 195:5-8. After a work product objection, the witness testified that his additional knowledge of those interviews (outside of the privilege log) was limited to "the information [that] happens to be contained in the complaint or the interrogatory responses" or "another place." *Id.* Tr. 196:19-197:6. Google then asked whether the witness had reviewed the third-party investigatory interview memoranda that the Special Master previously ruled to be protected, or had asked someone else "about the

10

substance of those interview memoranda." *Id.* Tr. 197:19-24. The witness confirmed that he had not. Google proceeded to ask him why he had not reviewed those memoranda, *id.* Tr. 198:3-5, to which the witness responded that he had reviewed everything his attorneys had provided him, and the memoranda were not included in those materials, *id.* Tr. 199:10-12. Instead, he had reviewed the privilege log and other non-privileged materials. *Id.* Tr. 199:13-17. Only then did Google ask, and he witness confirmed, that he did not know the "specific facts [that] were conveyed during those interviews." *Id.* Tr. 200:7-10.

As the full exchange reflects, if from a State witness, the additional "factual" information Google requests must necessarily come from those interview memoranda. Those memoranda are the only source of information in the States' possession about the contents of those interviews besides (a) the non-privileged factual information already provided, and (b) the recollections and conclusions of attorneys who conducted the interviews. The witness testified at length to item (a) and could not testify to item (b) without revealing attorney work product.[1] Thus, to testify any further about the "contents" of those interviews beyond what he already did, the witness would have to review and summarize the interview memoranda. That is why Google repeatedly asked the witness whether he had reviewed those memoranda and sought information their contents.[2] The insurmountable problem for Google is that those memoranda—which selected, compiled, and

---

[1] Indeed, nearly all of the attorney authors of these memoranda no longer work at OAG or work for other States that are no longer part of the litigation. Further, those interviews mostly occurred in 2019-2020, with the most recent memorandum written about three to four years ago. Even if any remaining attorneys retained perfect memory of the facts revealed in those interviews, they would almost certainly be unable to separate those memories from their evaluations in the memoranda. And any other attorney who did not participate in writing the memoranda would be relying upon those protected impressions rather than any underlying facts.

[2] To avoid the potential disclosure of privileged information contained in attorney opinion work product contained in the interview memoranda, the witness was prepared to testify on other material. This includes communications with third-parties, the identifies of whom Google knows; documents produced by third-parties, of which Google in possession; and the Civil Investigative Demands issued to third parties, of which Google is, again, aware. Google opted to ignore questioning the witness on any of these categories of documents. Instead, Google deliberately attempted to elicit testimony from material it knew was privileged.

11

evaluated facts collected during the third-party investigatory interviews—are "suffused" with opinion work product. *Smith*, 168 F.R.D. at 585. On the other hand, as the Special Master previously recognized, there exists a non-privileged source of the same information: the third parties who were interviewed and who Google could have interviewed and can still interview.

In short, the Special Master was right to deny Google's attempt to compel production of those memoranda but was wrong to assume that further 30(b)(6) testimony would not effectively require the same thing. The previous deposition testimony makes that crystal clear. Any further testimony on those interviews would require revealing highly protected opinion work product.

### C. Plaintiff States Did Not Consent to a 30(b)(6) Deposition on This Opinion Work Product.

Google argues that Plaintiff States' objections to further 30(b)(6) testimony on these third-party investigatory interviews contravenes their previous agreement to testify about the facts of that investigation. The Special Master credited that argument. Dkt. 470 at 4. But that misrepresents the States' agreement. In their March 29 letter, the States made clear that they believed that they had already provided all the non-privileged factual information about their third-party investigation and that thus that "[a]nything beyond those already-provided facts will seek testimony on the OAG's legal strategy, theories, opinions, and mental impressions, deliberations, and evaluations about those (again) already-provided factual basis." Dkt. 343-1 at 5. The States' agreement to designate a witness on the corresponding 30(b)(6) topics was made subject to that objection. *See also* Dkt. 406-3 at 37:18-21 (agreeing to testify on the agreed-upon topics but not on "anything that is privileged or protected across all topics"). On April 17, the States' witness complied with that agreement by answering questions about the previously provided factual information while refusing to answer questions that would require revealing opinion work product.

### D. Google Has Not Met Its Heavy Burden To Obtain Opinion Work Product.

Any order to compel Plaintiff States to designate a corporate witness to testify further about the attorney memoranda for the pre-suit third-party investigatory interviews would require Google to show a "compelling need" for such testimony. *Rodgers*, 2022 WL 1074013, at *6. Google has not even attempted to meet that high bar. *See* Dkt. 406 (Google's briefing to the Special Master, in which Google did not argue a compelling need or even substantial need for this material). The closest Google has come was in its briefing regarding the third-party memoranda themselves, in which it stated that it "expects to be able to establish for the Special Master that it has a 'substantial need' for information about Plaintiffs' third-party interviews." Dkt. 272 at 6. The Special Master found that Google had not made the "requisite showing to obtain otherwise privileged work product," Dkt. 289 at 7, and Google did not object to that finding. Because any further deposition testimony on this topic would necessarily require disclosure of opinion work product, Google has plainly not met its burden to compel such testimony.

Nor could Google meet that burden if it tried. Google has, for multiple years, known the identity and contact information of the third parties interviewed in the States' investigation and has had ample opportunity to interview or depose them. Google's ability to obtain the information from non-privileged sources was, in fact, one of the reasons the Special Master denied Google access to the interview memos in the first place. But, as far as the record shows, Google has not even attempted to do so. *Accord* Dkt. 289 at 7. Google chose instead to take 30(b)(6) depositions of the seventeen Plaintiff states and took twice as many depositions of state agencies as private third parties in this action.

Now, Google seeks an unjustified shortcut: a deposition to seek the States' own opinions and conclusions about their own interviews of those third parties. As the Supreme Court held long

ago, "[n]o legitimate purpose is served by such production." *Hickman*, 329 U.S. at 513. The Court should reject Google's illegitimate request.[3]

## CONCLUSION

For the foregoing reasons, the Court should decline to adopt the Special Master's recommendation compelling additional 30(b)(6) testimony from Plaintiff States as to the purported facts contained in attorney memoranda regarding the States' pre-suit investigatory interviews with third parties. To the extent the Court finds any additional discovery on that topic to be warranted, the Court should limit such discovery to interrogatories or other written discovery.

---

[3] Plaintiff States maintain that no additional, non-privileged information exists for Google to discover about the States' third-party investigatory interviews. However, if this Court finds otherwise, it should limit any further discovery to written interrogatories or, if necessary, a written deposition. Such a decision would be consistent with how courts typically approach the highly sensitive area of discovery into public enforcers' investigations. *See, e.g.*, *U.S. Grant Res.*, 2004 WL 1444951, at *3 (applying the *Shelton* test to determine whether deposition of a public enforcement office is warranted, which permits such depositions only "(1) where no other means exists to obtain the information, (2) the information is relevant and nonprivileged, and (3) the information is crucial to the preparation of the case") (citing *Shelton v. Am. Motors Corp.*, 850 F.2d 1323, 1327 (8th Cir.1986)); *see also Nguyen v. Excel Corp.*, 197 F.3d 200, 209 (5th Cir. 1999) (citing the *Shelton* test with approval). Applying that test, the Eastern District of Louisiana protected the FTC from testifying in a 30(b)(6) about its pre-suit deposition and instead held that written interrogatory responses and, potentially, a written deposition were sufficient. *U.S. Grant Res.*, 2004 WL 1444951, at *11. These "other means to obtain the [non-privileged] information sought" foreclosed any justification for a deposition. *Id.* at *10. Here, too, any further 30(b)(6) testimony on the third-party investigatory interviews would reveal work product because of the way in which any corporate representative must prepare for this deposition, as demonstrated by the State witness's prior testimony. To the extent any other "relevant and nonprivileged" facts remain to be discovered, "other means exist to obtain the information." *U.S. Grant Res.*, 2004 WL 1444951, at *11. As in *U.S. Grant Resources.*, written interrogatories or, if necessary, a written deposition would be the only appropriate way to proceed. In addition, of course, Google could independently interview the third parties and ask them about their interview statements to the States. The States' investigatory practice was to interview third parties before sending them requests for documents, and the third-party civil investigative demands ("CIDs") that the States served on those third parties were drafted for the purpose of collecting supporting information about information shared in those interviews. The States have produced those CIDs and CID productions to Google, and Google has long had the opportunity to ask those witnesses about the documents they produced.

Dated: May 12, 2024                            Respectfully submitted,

| | |
|---|---|
| /s/ W. Mark Lanier | /s/ Ashley Keller |
| W. Mark Lanier | Ashley Keller |
| Mark.Lanier@LanierLawFirm.com | ack@kellerpostman.com |
| Alex J. Brown | 150 N. Riverside Plaza, Suite 4100 |
| Alex.Brown@LanierLawFirm.com | Chicago, Illinois 60606 |
| Zeke DeRose III | (312) 741-5220 |
| Zeke.DeRose@LanierLawFirm.com | |
| Jonathan P. Wilkerson | Zina Bash |
| Jonathan.Wilkerson@LanierLawFirm.com | zina.bash@kellerpostman.com |
| 10940 W. Sam Houston Pkwy N | 111 Congress Avenue, Suite 500 |
| Suite 100 | Austin, TX 78701 |
| Houston, TX 77064 | (512) 690-0990 |
| (713) 659-5200 | |
| **THE LANIER LAW FIRM, PLLC** | /s/ Noah S. Heinz |
| | Noah S. Heinz |
| | noah.heinz@kellerpostman.com |
| | Daniel Backman |
| | daniel.backman@kellerpostman.com |
| | 1101 Connecticut, N.W., 11th Floor |
| | Washington, DC 20005 |
| | (202) 918-1123 |
| | **KELLER POSTMAN LLC** |

*Counsel for Texas, Idaho, Louisiana (The Lanier Law Firm only), Mississippi, North Dakota, Indiana, South Carolina, and South Dakota*

*Submitted on behalf of all Plaintiff States*

**NORTON ROSE FULBRIGHT US LLP**
Joseph M. Graham, Jr.
joseph.graham@nortonrosefulbright.com
Geraldine Young
geraldine.young@nortonrosefulbright.com
1301 McKinney, Suite 5100
Houston, Texas 77010
(713) 651-5151

Marc B. Collier
Marc.Collier@nortonrosefulbright.com
98 San Jacinto Blvd., Suite 1100
Austin, Texas 78701
(512) 474-5201

15

FOR PLAINTIFF STATE OF TEXAS:

KEN PAXTON
Attorney General

*/s/ Trevor E. D. Young*

Brent Webster, First Assistant Attorney General of Texas
Brent.Webster@oag.texas.gov
James R. Lloyd, Deputy Attorney General for Civil Litigation
James.Lloyd@oag.texas.gov
Trevor Young, Deputy Chief, Antitrust Division
Trevor.Young@oag.texas.gov

**STATE OF TEXAS, OFFICE OF THE ATTORNEY GENERAL**
P.O. Box 12548
Austin, TX 78711-2548
(512) 936-1674

*Attorneys for Plaintiff State of Texas*

**CERTIFICATE OF SERVICE**

I certify that, on May 12, 2024, this document was filed electronically in compliance with Local Rule CV-5(a) and served on all counsel who have consented to electronic service, per Local Rule CV-5(a)(3)(A).

*/s/ Geraldine Young*
Geraldine Young
