# Exhibit A
# FILED UNDER SEAL

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| THE STATE OF TEXAS, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| v. | § | |
| | § | Civil Action No. 4:20-CV-957-SDJ |
| GOOGLE LLC, | § | |
| | § | |
| Defendant. | § | |

**DEFENDANT GOOGLE LLC'S RESPONSES AND OBJECTIONS TO
<u>PLAINTIFFS' THIRD SET OF INTERROGATORIES</u>**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure ("Federal Rules") and Local Rule CV-26 of the Local Rules of the United States District Court for the Eastern District of Texas ("Local Rules"), Defendant Google LLC ("Google"), by its undersigned counsel, hereby responds to Plaintiffs' Third Set of Interrogatories (Nos. 6 through 28) as follows.

These Responses and Objections are based on the information currently available to Google and are provided subject to, without intending to waive, and expressly preserving, Google's right at any time to revise, correct, supplement, or clarify any of the responses and objections herein.

In providing these Objections, Google does not waive, and expressly preserves, all defenses and claims.  Google provides these Objections without waiving or intending to waive: (a) any objections as to the competency, relevance, materiality, privileged status, or admissibility as evidence, for any purpose, of any information provided in response to the Interrogatories; (b) the right to object on any ground at any time in response to a demand for further responses to the Interrogatories; (c) the right to revise, amend, supplement, or clarify any of the objections set forth herein; or (d) the right to move the Court for a protective order with respect to the Interrogatories.

## OBJECTIONS TO INSTRUCTIONS

1.      Google objects to each of Plaintiffs' Instructions to the extent that they seek to impose obligations beyond those required by the Federal Rules, this Court's Local Rules, or any applicable order.

2.      Google objects to Instruction 4 because it seeks to impose obligations regarding the production and handling of ESI that are governed by the ESI Order (ECF No. 183) negotiated by the parties and entered by the Court, including by purporting to impose privilege log obligations.   The negotiated and court-ordered ESI Order is the appropriate vehicle for addressing such obligations, not unilaterally imposed instructions to the Interrogatories.

3.      Google objects to Instruction 7 as vague and ambiguous as to the meaning of "Present."  Google further objects to the seventeen-year timeframe in Instruction 7 as overbroad, unduly burdensome, and disproportionate to the needs of the case.  Google will interpret the relevant time period for the purposes of responding to these Interrogatories as the ten-year time period from January 1, 2013 to March 27, 2023.

## OBJECTIONS TO DEFINITIONS

To the extent that Google does not object to a defined term or responds to Interrogatories containing a defined term, regardless of whether Google has objected to that definition, Google's response should not be taken as a concession or agreement by Google that the defined term is factually accurate or legally sufficient for any evidentiary purposes.  To the extent Google objects to any of Plaintiffs' defined terms below, Google incorporates by reference those objections wherever such defined term or definition is directly or indirectly used in the Interrogatories.

1.      Google objects to that portion of Definition 5, for the term "Advertiser," that defines advertisers for the purposes of these Interrogatories as including persons or entities that buy Ad Inventory on mobile applications, which Ad Inventory is outside the scope of Plaintiffs' claims as defined in the operative complaint in this Action.

2.     Google objects to Definition 9, "Ad Tech Products," as overbroad, unduly burdensome, vague, and ambiguous to the extent it is defined to include "any and all systems, platforms, and software . . . used in the process of identifying, selecting, transmitting, and/or rendering Digital Advertising on a desktop or mobile device, as well as all systems and software . . . that implement and/or effectuate an Ad Auction, including receiving, processing, and transmitting bid requests, bid responses, or related messages."  The definition could be read to be limited solely to those portions of a product that implement the specified functionality (e.g., those portions of a DSP that handle bidding, but not, for example, the advertiser-facing user interface), or conversely to include general-purpose infrastructure on which software involved in ad tech relies, such as a user's web browser or Google's proprietary network and data storage infrastructure on which all of its services rely.  Google further objects to this definition as overbroad, unduly burdensome, and disproportionate to the needs of the case to the extent it is defined to include systems, platforms, and software used in Google's search advertising business, an area that is not relevant to any claim that the Court has determined was well-pleaded and that has only the barest connection to these Actions.  The Google "systems, platform, and software . . . used in the process of identifying, selecting, transmitting, and/or rendering" search advertising, including the "systems and software . . . that implement and/or effectuate . . . Ad Auction[s]" for such advertising, are distinct from those that Google uses for the display advertising relevant to these Actions, so including them dramatically increases the breadth of this definition and of each of the specifications relying on it, without proportional benefit.  Google further objects that this definition's use of the term "Google Ads," without specifying whether an Interrogatory seeks information about the search or display advertising systems offered under that brand, is vague

and ambiguous.  Google further objects to this definition as overbroad, unduly burdensome, and disproportionate to the needs of the case to the extent that it purports to include Campaign Manager, DoubleClick Campaign Manager, Google Analytics, Search Ads 360, or any other product not the subject of alleged misconduct in these Actions.  Given the breadth of discovery already produced and to be produced, any additional information generated by expanding the scope of Google's search and production obligations to include such products would be of limited or no relevance to any party's claims or defenses.  Google further objects to this definition to the extent that it purports to include the "Google Display Network."  The Google Display Network refers to the group of website publishers and mobile application developers that offer display ad inventory for sale using Google services, not an independent product.  Google will construe the term "Ad Tech Products" to refer to independent products that Google and third parties provide to publishers or advertisers to facilitate the sale and purchase of display advertising inventory, and not, for example, the sale of search ad inventory.  For the avoidance of doubt, Google will construe the term "Ad Tech Products" to include the following Google products: Google Ads (solely as used for the purchase of display advertising, not search ad inventory), Display & Video 360, Campaign Manager, AdSense for Content (but not, for the avoidance of doubt, AdSense for Search), AdMob, and Google Ad Manager.

3.      Google objects to that portion of Definition 10, for the term "Google Ad Manager" or "GAM," that refers to inclusion of "DFP" and "AdX" as vague and ambiguous because there are multiple potential sets of Google ad-tech products that could "include[]" DFP and AdX.  For purposes of these Interrogatories, and consistent with what Google takes to be the best reading of Definition 4 in the context of Plaintiffs' Complaint, Google will construe the term

"Google Ad Manager" or "GAM" to refer to its product of that name (including without limitation Google Ad Manager 360), including "DFP" and "AdX" as construed herein.

4.      Google objects to that portion of Definition 11, for the term "Google Ads" or "AdWords," that refers to "Google Display Network" as vague and ambiguous because "Google Display Network" is not a product or service offered by Google, but is instead a term used by Google to describe a collection of inventory made available for purchase by publishers using certain Google products or services, including Google Ad Manager, AdSense for Content, and AdMob.  For purposes of these Interrogatories, and consistent with what Google takes to be the best reading of Definition 11 in the context of Plaintiffs' Complaint, Google will construe the term "Google Ads" or "AdWords" to refer to that portion of its Google Ads service (previously known as AdWords) that allows advertisers to purchase display advertising inventory, whether or not that inventory is part of the "Google Display Network" (but not, for the avoidance of doubt, any portion of such service relating to the purchase of search advertising).

5.      Google objects to Definition 12, "Google Auction Dynamic," as vague, ambiguous, overbroad, unduly burdensome, and disproportionate to the needs of the case to the extent that it purports to include 16 enumerated alleged examples plus a vague catch-all for "any and all systems and software that implement, effectuate, or modify any Ad Auction rules, preferences, designs, or features," without defining or qualifying the systems or software that would qualify.  Google further objects to Definition 12 as vague and ambiguous because of reference to supposed Auction Mechanics that are not themselves defined.  Subject to and without waiving that objection, Google will construe the term to refer to those examples listed by Plaintiffs in Definition 12.

6.      Google objects to Definition 15, "You", "Your", "Alphabet", or "Google," to the extent it defines "subsidiary," "affiliate," and "joint venture" to refer to "any firm in which there is total or partial ownership of twenty-five percent or more or total or partial control between the company and any other Person or entity."  Google will construe "subsidiary," "affiliate," and "joint venture" to refer to firms over whose documents Google has possession, custody, or control.

7.      Google objects to Definition 16, "Google Chats," as overbroad, unduly burdensome, and disproportionate to the needs of the case to the extent that it purports to include product or services not offered by Google or not otherwise in the possession, custody, or control of Google, such as "Chat messages, hangouts, Slacks, Teams, instant messages, and any other messages, communications, or documents or data used, maintained, or found in short message or 'instant message' applications."  Google further objects to the phrases "Chat messages," "hangouts," "Slacks," "Teams," "instant messages," "other messages," "short message," and "applications" as undefined and unclear.  Google also objects to this Definition to the extent it purports to seek documents that are not relevant and/or are not proportional to the needs of the litigation.  Google further objects to this Definition to the extent it purports to seek documents protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege or protection.  For purposes of these Interrogatories, Google will construe the term "Google Chats" to refer to its product of that name (including without limitation Google Hangouts).

8.      Google objects to Definition 20, "DFA", as overly broad, unduly burdensome, and disproportionate to the needs of the case because the DoubleClick for Advertisers is not a product relevant to any of Plaintiffs' claims.

## GENERAL OBJECTIONS

1.      Google objects to the Interrogatories to the extent they do not comport with the Federal Rules, this Court's Local Rules, or applicable orders of this Court.

2.      Google objects to the Interrogatories because they are vague, ambiguous, overbroad, unduly burdensome, and duplicative of previously propounded interrogatories and requests for production of documents.

3.      Google objects to each Interrogatory that includes multiple discrete subparts but purports to be a single interrogatory.  *See* Fed. R. Civ. P. 33(a)(1).

4.      Google objects to the Interrogatories as exceeding the limit of 45 interrogatories, including discrete subparts, set by the Court in ECF No. 194.  For example, Interrogatory 6 contains at least 8 discrete subparts, Interrogatory 12 contains at least 19 discrete subparts, and Interrogatories 13 and 22 each contains at least 5 discrete subparts.  The Interrogatories contain an additional 10 non-contention Interrogatories, bringing the total number of non-contention interrogatories (including discrete subparts) served by Plaintiffs to at least 47, even without considering either (a) Interrogatories contained in Plaintiffs' First or Second Set of Interrogatories, to which Google has earlier responded or objected, or (b) discrete subparts other than those in Interrogatories 6, 12, 13, and 22.

5.      Google objects to the Interrogatories to the extent they call for information that is already in the possession of or equally available to Plaintiffs or their counsel, including, but not

limited to, documents previously produced to Plaintiffs and documents available from government agencies, regulatory bodies, court filings, commercial industry sources, or documents available in the public domain.

6.     Google's investigation of Plaintiffs' claims is ongoing.  These responses are being made after reasonable inquiry into the relevant facts and are based only upon the information and documentation that is presently known to Google.  Google's responses should not be construed to prejudice its right to conduct further investigation in these Actions, or to limit its use of any additional evidence that may be developed.  Google reserves the right to assert additional objections, and to supplement its responses and objections as appropriate, particularly if any additional information regarding the Interrogatories or the underlying claims at issue is provided.

## RESPONSES AND OBJECTIONS TO SPECIFIC INTERROGATORIES

**Interrogatory No. 6:**

> For each Google Auction Mechanic, identify (1) each version or iteration of the Google Auction Mechanic; (2) the dates on which each version of each Google Auction Mechanic was launched or implemented on AdX, including the dates on which each version of each Google Auction Mechanic was (a) first used in or launched to live experimentation and what percentage of Publishers and Advertisers were subject to said live experimentation, (b) ramped up or down during live experimentation and what percentage of Publishers and Advertisers were subject to live experimentation after the ramp up or down, (c) launched to general availability, and, (d) if applicable, the dates on which each version of each Google Auction Mechanic was terminated, retired, or replaced; (3) the number and percentage of Publishers and Advertisers using AdX that were subject to live experimentation leading up to the launch to general availability of each version of each Google Auction Mechanic; and (4) for each month from the launch to general availability of each version of each Google Auction Mechanic, the number and identification of all Publishers and Advertisers on which each Google Auction Mechanic had an effect on floor prices, bids, revenue shares, or margins that would not have otherwise been affected had the Google Auction Mechanic not been operational.

**Response to Interrogatory No. 6:**

Google objects to Interrogatory 6 as overbroad, unduly burdensome, and disproportionate to the needs of the case because it seeks to require Google to provide information about "each version or iteration" of each of at least 16 different "Google Auction Mechanics" over more than 17 years. Google further objects to Interrogatory 6 as overbroad, unduly burdensome, and disproportionate to the needs of the case to the extent that it requires Google to summarize produced documents reflecting ad hoc experiments Google ran which assess the impact of Google Auction Mechanics during the time period between a given Google Auction Mechanic's launch and its general availability, as such documents are equally available to Plaintiffs.

Google further objects to Interrogatory 6 as vague and ambiguous because it purports to require the identification of  each "version or iteration," and further responses with respect to each "version," without defining either "version" or "iteration" or explaining the difference, if any, between those terms. Because the code implementing each Google Auction Mechanic may be updated regularly throughout each year (including to fix bugs, make minor improvements, or otherwise), it would be unduly burdensome and disproportionate to the needs of the case to expect Google to provide separate responses for each time the relevant code was updated, yet Plaintiffs provide no heuristic for selecting which "versions or iterations" they view as responsive.

Google further objects to Interrogatory 6 as vague and ambiguous because it fails to define "live experimentation" or "ramped up or down" in connection therewith. Google further objects to Interrogatory 6 as vague and ambiguous because it fails to define what it would mean for an Advertiser or Publisher to be "subject" to such "live experimentation." Google further objects to those subparts of Interrogatory 6 referencing those terms as overbroad, unduly burdensome, and disproportionate to the needs of the case.

9

Google further objects to Interrogatory 6 as vague and ambiguous because it fails to define the term "effect," including by providing the type or magnitude of effect that would be required to be responsive to the Interrogatory.

Given the foregoing objections, Google cannot reasonably respond to Interrogatory 6 at this time.   It is, however, prepared to meet-and-confer concerning potential limitations to Interrogatory 6 that would render it reasonable and proportionate to the needs of the case.

**Interrogatory No. 7:**

For each Google Auction Mechanic, from January 1, 2013 to the Present, identify on a monthly basis the number of impressions where such Google Auction Mechanic had any effect on bids, floor prices, or revenue shares, and the percentage of such impressions as a share of overall impressions, which otherwise would not have been affected had the Google Auction Mechanic not been operational.

**Response to Interrogatory No. 7:**

Google objects to Interrogatory 7 as overbroad, unduly burdensome, and disproportionate to the needs of the case because it seeks to require Google to provide information about each of at least 16 different "Google Auction Mechanics" on a monthly basis for over 11 years.  Google further objects to Interrogatory 7 as overbroad, unduly burdensome, and disproportionate to the needs of the case to the extent that it requires Google to summarize produced documents reflecting ad hoc experiments Google ran which assess the impact of Google Auction Mechanics, as such documents are equally available to Plaintiffs.

Google further objects to Interrogatory 7 as vague and ambiguous because it fails to define the term "effect," including by providing the type or magnitude of effect that would be required to be responsive to the Interrogatory.   Google further objects to Interrogatory 7 as overbroad, unduly burdensome, and disproportionate to the needs of the case to the extent that it seeks information on "any" effect, without specifying some threshold of materiality.

10

Google further objects to Interrogatory 7 as vague and ambiguous because it fails to define the term "overall impressions," which could refer to all impressions on Google Ad Manager, all impressions regardless of tool, or some subset of either of them.

Google further objects to Interrogatory 7 as overly broad, unduly burdensome, and disproportionate to the needs of the case to the extent it is understood to require Google to collect and analyze transaction-level data on billions (if not trillions) of auctions that potentially could have been affected by a "Google Auction Mechanic" to describe or calculate such effects.  At least since Google served its Responses and Objections to the Plaintiffs' First Set of Requests for Production in the MDL on February 27, 2023 (at which point this Action was consolidated with the MDL), Plaintiffs have been on notice of Google's objections to collecting, let alone analyzing, such data.  It is doubly unreasonable to expect Google to do so this close to the close of discovery.

Given the foregoing objections, Google cannot reasonably respond to Interrogatory 7 at this time.  It is, however, prepared to meet-and-confer to determine whether there are limitations to Interrogatory 7 that would render it reasonable and proportionate to the needs of the case.

**Interrogatory No. 8:**

For each Google Auction Mechanic, from January 1, 2013 to the Present, identify on a monthly basis the number and percentage of AdX auctions on which the Google Auction Mechanic had an effect on bids, floor prices, revenue shares, or margins, which otherwise would not have been affected had the Google Auction Mechanic not been operational.

**Response to Interrogatory No. 8:**

Google objects to Interrogatory 8 as overbroad, unduly burdensome, and disproportionate to the needs of the case because it seeks to require Google to provide information about each of at least 16 different "Google Auction Mechanics" on a monthly basis for over 11 years.

11

Google further objects to Interrogatory 8 as vague and ambiguous because it fails to define the term "effect," including by providing the type or magnitude of effect that would be required to be responsive to the Interrogatory.  Google further objects to Interrogatory 8 as overbroad, unduly burdensome, and disproportionate to the needs of the case to the extent that it seeks information on any effect, without specifying some threshold of materiality.

Google further objects to Interrogatory 8 as overly broad, unduly burdensome, and disproportionate to the needs of the case to the extent it is understood to require Google to collect and analyze transaction-level data on billions (if not trillions) of auctions that potentially could have been affected by a "Google Auction Mechanic" to describe or calculate such effects.  At least since Google served its Responses and Objections to the Plaintiffs' First Set of Requests for Production in the MDL on February 27, 2023 (at which point this Action was consolidated with the MDL), Plaintiffs have been on notice of Google's objections to collecting, let alone analyzing, such data.  It is doubly unreasonable to expect Google to do so this close to the close of discovery.

Given the foregoing objections, Google cannot reasonably respond to Interrogatory 8 at this time.  It is, however, prepared to meet-and-confer to determine whether there are limitations to Interrogatory 8 that would render it reasonable and proportionate to the needs of the case.

**Interrogatory No. 9:**

To the extent You contend that You disclosed one or more Google Auction Mechanics to Publishers, Advertisers, or the public at large, for each Google Auction Mechanic, identify (1) all methods and means by which you contend you disclosed each Google Auction Mechanic, (2) the date(s) on which you contend you disclosed each Google Auction Mechanic, (3) each Publisher and Advertiser to which you contend you disclosed the Google Auction Mechanic, and describe in detail the information You contend that You disclosed about how each Google Auction Mechanic operated and its effects or potential effects on bids, revenue shares, floor prices, yields, revenues, or returns on investment.

**Response to Interrogatory No. 9:**

Google objects to Interrogatory 9 as overbroad, unduly burdensome, and disproportionate to the needs of the case because it seeks separate responses as to each of at least 16 different "Google Auction Mechanics," and seeks to shift to Google the burden of identifying the complete set of "Google Auction Mechanics" that Plaintiffs assert are at issue in this Action, which information is better to known to Plaintiffs than Google.

Google further objects to Interrogatory 9 as vague and ambiguous because it fails to define the term "disclose," including by specifying the nature or degree of disclosure that would be responsive to the Interrogatory. Google further objects to Interrogatory 9 as overly broad, unduly burdensome, and disproportionate to the needs of the case to the extent that it purports to require Google to identify each date on which any fact regarding each Google Auction Mechanic was "disclosed" and identify "each Publisher and Advertiser" who received such disclosure.

Google further objects to Interrogatory 9 as vague and ambiguous because it fails to define the term "effects," including by providing the type or magnitude of effects that would be required to be responsive to the Interrogatory. Google further objects to Interrogatory 9 as overbroad, unduly burdensome, and disproportionate to the needs of the case to the extent that it seeks information on any effect, without specifying some threshold of materiality, and to the extent it purports to require Google to summarize any and all statements about each Google Auction Mechanic in Google's voluminous document productions in this case, which are equally available to Plaintiffs. Moreover, Interrogatory 9 is unduly burdensome, overbroad, and disproportionate to the needs of the case given the extensive amount of deposition testimony and document discovery available to Plaintiffs.

Given the foregoing objections, Google cannot reasonably respond to Interrogatory 9 at this time.  It is, however, prepared to meet-and-confer to determine whether there are limitations to Interrogatory 9 that would render it reasonable and proportionate to the needs of the case.

**Interrogatory No. 10:**

For each Google Auction Mechanic, identify on a monthly basis beginning on January 1, 2013 Google's revenues and profits attributable to such Google Auction Mechanic.

**Response to Interrogatory No. 10:**

Google objects to Interrogatory 10 as overbroad, unduly burdensome, and disproportionate to the needs of the case because it seeks to require Google to provide information about each of at least 16 different "Google Auction Mechanics" on a monthly basis for over 11 years.

Google further objects to Interrogatory 10 as vague and ambiguous because it fails to define the term "attributable" as used in the request.  Google further objects to Interrogatory 10 as premature to the extent it calls for responses that may be the subject of expert testimony.

Google further objects to Interrogatory 10 as overly broad, unduly burdensome, and disproportionate to the needs of the case to the extent it is understood to require Google to collect and analyze transaction-level revenue and profit data on billions (if not trillions) of auctions that potentially could have been "attributable" to each of at least 16 different "Google Auction Mechanics."  At least since Google served its Responses and Objections to the Plaintiffs' First Set of Requests for Production in the MDL on February 27, 2023 (at which point this Action was consolidated with the MDL), Plaintiffs have been on notice of Google's objections to collecting, let alone analyzing, such data.  It is doubly unreasonable to expect Google to do so this close to the close of discovery.

Given the foregoing objections, Google cannot reasonably respond to Interrogatory 10 at this time.  It is, however, prepared to meet-and-confer to determine whether there are limitations to Interrogatory 10 that would render it reasonable and proportionate to the needs of the case.

**Interrogatory No. 11**

For each Google Auction Mechanic, identify any additional value gained by You, including in the form of improved position or share in any and all Ad Tech Product markets.

**Response to Interrogatory No. 11:**

Google objects to Interrogatory 11 as overbroad, unduly burdensome, and disproportionate to the needs of the case because it seeks separate responses as to each of at least 16 different "Google Auction Mechanics," and seeks to shift to Google the burden of identifying the complete set of "Google Auction Mechanics" that Plaintiffs assert are at issue in this Action, which information is better to known to Plaintiffs than Google.

Google further objects to Interrogatory 11 as vague and ambiguous because it fails to define the terms "additional value," "position," or "share."

Google further objects to Interrogatory 11 as vague and ambiguous because it fails to define the link between a "Google Auction Mechanic" and the "additional value" about which the Interrogatory seeks information.

Google further objects to Interrogatory 11 as overly broad, unduly burdensome, and disproportionate to the needs of the case to the extent it is understood to require Google to collect and analyze transaction-level data on billions (if not trillions) of auctions that potentially could have been affected by a "Google Auction Mechanic" to describe or calculate such "additional value" associated with such auctions.  At least since Google served its Responses and Objections to the Plaintiffs' First Set of Requests for Production in the MDL on February 27, 2023 (at which point this Action was consolidated with the MDL), Plaintiffs have been on notice of Google's

15

objections to collecting, let alone analyzing, such data.  It is doubly unreasonable to expect Google to do so this close to the close of discovery.

Given the foregoing objections, Google cannot reasonably respond to Interrogatory 11 at this time.  It is, however, prepared to meet-and-confer to determine whether there are limitations to Interrogatory 11 that would render it reasonable and proportionate to the needs of the case.

**Interrogatory No. 12**

Starting with the initial launch of Bernanke to the present, identify on a monthly basis: [1] the number of auctions (as a count and percentage of overall auctions) where the operation of Bernanke resulted in a winning bid and the [2] average and [3] median monetary amount such bids were adjusted by the operation of Bernanke; [4] the number of auctions (as a count and a percentage of overall auctions) in which Bernanke raised or lowered the second-highest bid submitted to the AdX auction, [5] the number of bids (as a count and percentage of overall auctions) in which the second-highest bid was lowered to zero or the minimal increment above zero, and [6] the average monetary amount such bids were adjusted by the operation of Bernanke; [7] the number of queries won due to Bernanke in which the winning bid was raised above a competing bid in the AdX auction and [8] the number of queries won due to Bernanke in which the highest bid raise raised above only the publisher's floor price, and [9] the average monetary amounts the winning bids were above the floor price or the next-highest bid; the [10] average and [11] median values for Bernanke alpha and beta; [12] the number of auctions (as a count and a percentage of overall auctions) where the operation of Bernanke resulted in money being contributed to one or more Bernanke pools and [13] the average amount of such contribution; [14] the number and identity of publishers for whom the operation of Bernake had a negative impact on revenue, and [15] the amount of such negative impact; [16] the number and identity of publishers that were excluded from the Bernanke program and [17] the reasons for their exclusion; [18] the identity of any publishers for whom Google monitored margins for the purpose of ensuring that Bernanke did not have a negative impact on these publishers' revenue; [19] any efforts, programs, initiatives, or monitoring You engaged in or otherwise performed to determine the impact of Bernanke on floor prices set by publishers.

**Response to Interrogatory No. 12:**

Google objects to Interrogatory 12 as overbroad, unduly burdensome, and disproportionate to the needs of the case because it seeks, on a monthly basis for more than 10

years, answers to at least 19 discrete unnumbered subparts (for which Google has inserted numbers above for ease of reference).

Google further objects to Interrogatory 12 as vague and ambiguous because it fails to define what it means for "the operation of Bernanke [to] result[] in a winning bid," including the counter-factual against which the "operation of Bernanke" should be measured.

Google further objects to Interrogatory 12 as vague and ambiguous because it fails to define what it means for a bid to be "adjusted by the operation of Bernanke" or the standard against which one would determine whether Bernake "raised or lowered" a bid.

Google further objects to Interrogatory 12 as overly broad, unduly burdensome, and disproportionate to the needs of the case to the extent it is understood to require Google to collect and analyze transaction-level data on billions (if not trillions) of auctions to which Bernanke potentially was applied to identify which of those transactions could have been "won by" or otherwise affected by Bernanke.  At least since Google served its Responses and Objections to the Plaintiffs' First Set of Requests for Production in the MDL on February 27, 2023 (at which point this Action was consolidated with the MDL), Plaintiffs have been on notice of Google's objections to collecting, let alone analyzing, such data.  It is doubly unreasonable to expect Google to do so this close to the close of discovery.

Given the foregoing objections, Google cannot reasonably respond to Interrogatory 12 at this time.  It is, however, prepared to meet-and-confer to determine whether there are limitations to Interrogatory 12 that would render it reasonable and proportionate to the needs of the case.

**Interrogatory No. 13**

> Identify any efforts, programs, initiatives, or monitoring You engaged in or otherwise performed to ensure that advertisers for whom one or more bids were used to fund Bernanke pools received corresponding subsidies via Bernanke on other bids, such that the financial impact on each such advertiser from Bernanke was net neutral and, on a

monthly basis: identify the number of advertisers (as a count and a percentage of all advertisers eligible for Bernanke) who received a net subsidy to their bids in the operation of Bernanke (i.e., these advertisers received more funds from Bernanke pools than was contributed from their bids in a given month), and the average and median amount contributed to Bernanke pools for each advertiser in this group; identify the number of advertisers (as a count and a percentage of all advertisers eligible for Bernanke) who contributed more funds to Bernanke pools than they received, and the average and median amount of funds received from Bernanke pools for each advertiser in this group.

### Response to Interrogatory No. 13:

Google objects to Interrogatory 13 as vague, ambiguous, overly broad, unduly burdensome, and disproportionate to the needs of the case to the extent it purports to require Google to identify "any efforts, programs, initiatives, or monitoring" without defining those terms or specifying any threshold of materiality.

Google further objects to Interrogatory 13 as vague and ambiguous since it fails to define the terms "financial impact" or "net neutral."

Google further objects to Interrogatory 13 as vague and ambiguous to the extent that it defines "advertisers . . . who received a net subsidy to their bids in the operation of Bernanke" as "advertisers [who] received more funds from Bernanke pools than was contributed from their bids in a given month," since such definition is inconsistent with the underlying facts.  In particular, advertisers do not "receive funds" from Bernanke pools.  For the same reasons, Google objects to Interrogatory 13 to the extent it seeks information regarding "advertisers . . . who contributed more funds to Bernanke pools than they received."

Google further objects to Interrogatory 13 as overly broad, unduly burdensome, and disproportionate to the needs of the case to the extent it is understood to require Google to collect and analyze transaction-level data on billions (if not trillions) of auctions to which Bernanke potentially applied and its effects on those and other auctions. At least since Google served its

Responses and Objections to the Plaintiffs' First Set of Requests for Production in the MDL on February 27, 2023 (at which point this Action was consolidated with the MDL), Plaintiffs have been on notice of Google's objections to collecting, let alone analyzing, such data.  It is doubly unreasonable to expect Google to do so this close to the close of discovery.

Given the foregoing objections, Google cannot reasonably respond to Interrogatory 13 at this time.  It is, however, prepared to meet-and-confer to determine whether there are limitations to Interrogatory 13 that would render it reasonable and proportionate to the needs of the case.

**Interrogatory No. 14**

Describe in detail the logic related to the Global Pool in Global Bernanke, including but not limited to whether You maintained pools for individual publishers within the Global Pool, the distribution and prioritization of funds between any such publisher-specific pools, whether any such publisher-specific pool was depleted first before using pool contributions from other publishers, and whether funds from one publisher's pool were ever used to subsidize a bid for another publisher's impression.

**Response to Interrogatory No. 14:**

Google objects to Interrogatory 14 as overly broad, unduly burdensome, and disproportionate to the needs of the case to the extent it requires Google to generally "describe in detail" the logic and behavior of its systems.  Moreover, Interrogatory 16 is overly broad, unduly burdensome, and disproportionate to the needs of the case given the extensive amount of deposition testimony and document discovery available to Plaintiffs.

Google further objects to Interrogatory 14 as vague and ambiguous because it fails to define the term "Global Pool."  Without a definition of that vague and ambiguous term, Google is unable to respond to Interrogatory 14.

Given the foregoing objections, Google cannot reasonably respond to Interrogatory 14 at this time.  It is, however, prepared to meet-and-confer to determine whether there are limitations to Interrogatory 14 that would render it reasonable and proportionate to the needs of the case.

19

**Interrogatory No. 15**

State whether You contend that AdX ran a second-price auction prior to switching to a first price auction in 2019, and if so, describe in detail all facts supporting Your contention.

**Response to Interrogatory No. 15:**

Google objects to Interrogatory 15 as premature because it calls for matters that will be the subject of expert testimony.  Google further objects to Interrogatory 15 as overly broad, unduly burdensome, and disproportionate to the needs of the case to the extent it requires Google to "describe in detail" the facts supporting its contention.  Moreover, Interrogatory 15 is overly broad, unduly burdensome, and disproportionate to the needs of the case given the extensive amount of deposition testimony and document discovery available to Plaintiffs.

Subject to and without waiving the foregoing objections, Google responds that AdX ran a second-price auction prior to 2019.

**Interrogatory No. 16**

State whether you contend that Reserve Price Optimization was beneficial to Publishers or Advertisers in any way, and if so, describe in detail all facts supporting Your contention.

**Response to Interrogatory No. 16:**

Google objects to Interrogatory 16 as premature because it calls for matters that will be the subject of expert testimony.

Google further objects to Interrogatory 16 as vague and ambiguous because it fails to define the term "beneficial" or the baseline against which such benefits should be measured. Google further objects to Interrogatory 16 as vague and ambiguous because it fails to define the "Publishers" or "Advertisers" whose benefits should be measured.

Google further objects to Interrogatory 16 as overly broad, unduly burdensome, and disproportionate to the needs of the case to the extent it purports to require Google to "describe

in detail all facts supporting" its contentions.  Moreover, Interrogatory 16 is overly broad, unduly burdensome, and disproportionate to the needs of the case given the extensive amount of deposition testimony and document discovery available to Plaintiffs.

Given the foregoing objections, Google cannot reasonably respond to Interrogatory 16 at this time.  It is, however, prepared to meet-and-confer to determine whether there are limitations to Interrogatory 16 that would render it reasonable and proportionate to the needs of the case.

**Interrogatory No. 17**

State whether you contend that DRS v2 (described in GOOG-NE-04934281 as the version  of DRS that "adjusts Google's revenue share more aggressively, by decreasing and increasing the Google share on different impressions") was beneficial to Publishers or Advertisers in any way, and if so, describe in detail all facts supporting Your contention.

**Response to Interrogatory No. 17:**

Google objects to Interrogatory 17 as premature because it calls for matters that will be the subject of expert testimony.

Google further objects to Interrogatory 17 as vague and ambiguous because it fails to define the term "beneficial" or the baseline against which such benefits should be measured. Google further objects to Interrogatory 17 as vague and ambiguous because it fails to define the "Publishers" or "Advertisers" whose benefits should be measured.

Google further objects to Interrogatory 17 as overly broad, unduly burdensome, and disproportionate to the needs of the case to the extent it purports to require Google to "describe in detail all facts supporting" its contentions.  Moreover, Interrogatory 17 is overly broad, unduly burdensome, and disproportionate to the needs of the case given the extensive amount of deposition testimony and document discovery available to Plaintiffs.

21

Given the foregoing objections, Google cannot reasonably respond to Interrogatory 17 at this time.  It is, however, prepared to meet-and-confer to determine whether there are limitations to Interrogatory 17 that would render it reasonable and proportionate to the needs of the case.

**Interrogatory No. 18**

State whether You disclosed to Publishers, Advertisers, or the public at large that, with Bernanke, Google Ads could drop its second bid into AdX, and if so, describe in detail all facts supporting Your contention.

**Response to Interrogatory No. 18:**

Google objects to Interrogatory 18 as vague and ambiguous because it fails to define what it means by Google Ads' "second bid" or to "drop" such bid.

Google further objects to Interrogatory 18 as overly broad, unduly burdensome, and disproportionate to the needs of the case to the extent it purports to require Google to "describe in detail all facts supporting" its contentions.  Moreover, Interrogatory 18 is overly broad, unduly burdensome, and disproportionate to the needs of the case given the extensive amount of deposition testimony and document discovery available to Plaintiffs.

Given the foregoing objections, Google cannot reasonably respond to Interrogatory 18 at this time.  It is, however, prepared to meet-and-confer to determine whether there are limitations to Interrogatory 18 that would render it reasonable and proportionate to the needs of the case.

**Interrogatory No. 19**

State whether You contend that You disclosed to Publishers, Advertisers, or the public at large that Bernanke "create[d] a pool of money by reducing second bid" or how such pool was used (as described, for example, in GOOG-DOJ-28386151), and if so, describe in detail all facts supporting Your contention.

**Response to Interrogatory No. 19:**

Google objects to Interrogatory 19 as vague and ambiguous because it fails to define what it means by Google Ads' "second bid."

Google further objects to Interrogatory 19 as overly broad, unduly burdensome, and disproportionate to the needs of the case to the extent it purports to require Google to "describe in detail all facts supporting" its contentions.  Moreover, Interrogatory 19 is overly broad, unduly burdensome, and disproportionate to the needs of the case given the extensive amount of deposition testimony and document discovery available to Plaintiffs.

Given the foregoing objections, Google cannot reasonably respond to Interrogatory 19 at this time.  It is, however, prepared to meet-and-confer to determine whether there are limitations to Interrogatory 19 that would render it reasonable and proportionate to the needs of the case.

### Interrogatory No. 20

Describe in detail the consideration (including technical advantages, ad auction advantages, informational advantages, information, access, policy exemptions, other exemptions, discounts, compensation, and all other consideration) that You offered or Facebook received from You in fulfillment or as a result of the 2018 Network Bidding Agreement or as part of the Network  Bidding Pilot Program, or during the negotiation, drafting, or execution of the Network Bidding Agreement, including identifying each aspect of such consideration on a monthly basis where applicable.

### Response to Interrogatory No. 20:

Google objects to Interrogatory 20 as vague and ambiguous because it fails to define the terms "consideration" or "advantages," or the baselines against which such "consideration," "advantages," or "discounts" should be measured.

Google further objects to Interrogatory 20 as overbroad, unduly burdensome, and disproportionate to the needs of the case including to the extent it seeks a detailed description of the aspects of the Network Bidding Agreement or the Google-Facebook technical integration that could be construed as "advantages" or other "consideration," without any requirement of materiality or usable definition of "advantages" or "consideration."  Moreover, Interrogatory 20

is overly broad, unduly burdensome, and disproportionate to the needs of the case given the extensive amount of deposition testimony and document discovery available to Plaintiffs.

Given the foregoing objections, Google cannot reasonably respond to Interrogatory 20 at this time.   It is, however, prepared to meet-and-confer to determine whether there are limitations to Interrogatory 20 that would render it reasonable and proportionate to the needs of the case.

**Interrogatory No. 21**

> Describe in detail the steps You took or changes You made in fulfillment or as a result of the 2018 Network Bidding Agreement or as part of the Network Bidding Pilot Program, or during  the negotiation, drafting, or execution of the Network Bidding Agreement, including but not  limited to: changes to Your Algorithms; manual overrides of Your Algorithms; changes to Your  Auction Mechanics; changes to Your Ad Auction Products; changes to any of Your official  policies; changes to Your Metrics; changes to your rules, policies, or procedures related to Ad  Auctions for all customers; and changes to your rules, policies, or procedures related to Ad  Auctions for certain customers (including identifying which customers these changes relate to and  dates for the implementation of such changes).

**Response to Interrogatory No. 21:**

Google objects to Interrogatory 21 as vague and ambiguous because it fails to define the term "Network Bidding Agreement."   This response assumes that, consistent with its usage in Interrogatory 20, the term refers to the 2018 Network Bidding Agreement between Google and Facebook.

Google further objects to Interrogatory 21 as vague and ambiguous because it fails to define the term "Network Bidding Pilot Program."

Google further objects to Interrogatory 21 as overly broad, unduly burdensome, and disproportionate to the needs of the case insofar as it seeks a detailed description of all "steps" or "changes" taken or made by Google in connection with the Network Bidding Agreement with Facebook, or with the Network Bidding Pilot Program, without regard to size, significance, or

materiality.    Moreover,  Interrogatory  21  is  overly  broad,  unduly  burdensome,  and disproportionate to the needs of the case given the extensive amount of deposition testimony and document discovery already available to Plaintiffs.

Google  further  objects  to  Interrogatory  21  as  vague  and  ambiguous  because  it  fails  to define  the  terms  "Your  Algorithms,"  "Your  Auction  Products,"  and  "Your  Metrics,"  despite seeking responses with respect to such terms.

Given the foregoing objections, Google cannot reasonably respond to Interrogatory 21 at this time.   It is, however, prepared to meet-and-confer to determine whether there are limitations to Interrogatory 21 that would render it reasonable and proportionate to the needs of the case.

### Interrogatory No. 22

Describe  in  detail  the  nature  of  Amazon.com  Inc.'s  ("Amazon")  participation, involvement,  or interest in the Network Bidding Pilot Program, including but not limited to:  (a)  identifying  any  contracts  between  You  and  Amazon  related  to  the  Network Bidding  Pilot  Program;  describing  in  detail  any  consideration  or  advantages  (including technical  advantages,  ad  auction  advantages,   informational  advantages,  information, access,  policy  exemptions,  other  exemptions,  discounts,   compensation,  and  all  other consideration  and  advantages)  Amazon  received  from  You  related  to   the  Network Bidding  Pilot  Program;  (b)  describing  in  detail  any  consideration  or  advantages (including  technical  advantages,  ad  auction  advantages,  informational  advantages, information,  access,  policy  exemptions,  other  exemptions,  discounts,  compensation,  and all  other  consideration   and  advantages)  You  received  from  Amazon  related  to  the Network Bidding Pilot Program; (c) describing any steps You took or changes You made as a result of Amazon's participation,  involvement, or interest in the Network Bidding Pilot  Program,  including  but  not  limited  to:   changes  to  Your  Algorithms;  manual overrides  of  Your  Algorithms;  changes  to  Your  Auction  Mechanics;  changes  to  Your Ad Auction  Products;  changes  to  any  of  Your  official  policies;   changes  to  Your  Metrics; adjustments  in  the  way  your  Metrics  operate;  changes  to  your  rules,   policies,  or procedures related to Ad Auctions for all customers; and changes to your rules,  policies, or procedures related to Ad Auctions for certain customers (including identifying which customers these changes relate to and dates for the implementation of such changes); and (d)    Amazon's  participation  in  the  negotiations  leading  to  the  Network  Bidding Agreement  or   involvement  in  the  circumstances  of  the  negotiation,  its  drafting,  or  its execution.

**Response to Interrogatory No. 22:**

Google objects to Interrogatory 22 as overly broad, unduly burdensome, and disproportionate to the needs of the case to the extent it seeks a detailed description of various topics listed in the Interrogatory, including all "steps" or "changes" taken or made by Google, without regard to size, significance, or materiality. Moreover, Interrogatory 22 is overly broad, unduly burdensome, and disproportionate to the needs of the case given the extensive amount of deposition testimony and document discovery already available to Plaintiffs.

Google further objects to Interrogatory 22 as vague and ambiguous because it fails to define the term "Network Bidding Agreement."  This response assumes that, consistent with its usage in Interrogatory 20, the term refers to the 2018 Network Bidding Agreement between Google and Facebook.

Google further objects to Interrogatory 22 as vague and ambiguous because it fails to define the term "Network Bidding Pilot Program."

Google objects to Interrogatory 22 as vague and ambiguous because it fails to define the terms "consideration" or "advantages," or the baselines against which such "consideration," "advantages," or "discounts" should be measured.

Given the foregoing objections, Google cannot reasonably respond to Interrogatory 22 at this time.  It is, however, prepared to meet-and-confer to determine whether there are other limitations to Interrogatory 22 that would render it reasonable and proportionate to the needs of the case.

**Interrogatory No. 23**

Describe in detail the nature of the information shared between You and Facebook or between Your network(s), systems, storage centers, computers, servers, or processors, as a result  of the 2018 Network Bidding Agreement or as a result of Facebook's participation in the Network  Bidding Pilot Program or during the negotiation, drafting,

or execution of the Network Bidding Agreement, including identifying: (a) the nature of the user information Facebook provides to Google or Google provides to Facebook; (b) the nature of any information about ad auctions provided by Facebook to Google or Google to Facebook that is above and beyond the information provided by those parties to other third parties.

**Response to Interrogatory No. 23:**

Google objects to Interrogatory 23 as overly broad, unduly burdensome, and disproportionate to the needs of the case to the extent it seeks a detailed description of all information shared between Google and Facebook's computing systems in the context of routine bid requests, auction processing, and ad serving, without any significance or materiality threshold or reason to believe that such information is relevant to any party's claims or defenses.

Google further objects to Interrogatory 23 as vague and ambiguous because it fails to define which "network(s), systems, storage centers, computers, servers, or processors," the "user information," or the "information about ad auctions" about which it seeks information. Google further objects to Interrogatory 23 as vague and ambiguous because it fails to limit what it means for information sharing to be "a result" of the Network Bidding Agreement or Facebook's participation in the Network Bidding Pilot Program.

Given the foregoing objections, Google cannot reasonably respond to Interrogatory 23 at this time. It is, however, prepared to meet-and-confer to determine whether there are limitations to Interrogatory 23 that would render it reasonable and proportionate to the needs of the case.

**Interrogatory No. 24:**

Identify current and former Google executives (director level or above), engineers, and data scientists participating in the conception, development, and/or implementation of the privacy sandbox, including full descriptions of their scopes of responsibilities.

**Response to Interrogatory No. 24:**

Google objects to Interrogatory 24 as overbroad, unduly burdensome, and disproportionate to the needs of the case because it seeks to require Google to provide information on the full descriptions of scope of responsibilities for thousands of employees over a fourteen-year period of time – and in particular in the limited time afforded to respond in light of these interrogatories being issued one month before the close of fact discovery.  This position aligns with the *Order of the Special Master*, No. 4:20-CV-957, Dkt. #418 at 8 (the "Special Master Order") issued on April 24, 2024, who found that the requested discovery is "not proportional to the needs of this case" – explaining that "[b]alancing considerations of relevance and proportionality, the production burden in light of the fast-approaching end of fact discovery, and the remaining important discovery . . . the Special Master finds that Privacy Sandbox remains contingent and subject to the supervision and future UK regulatory approval for final implementation."

Google further objects to Interrogatory 24 as vague and ambiguous because the phrases "participating in," "conception," "development," and "implementation" are  undefined and unclear.

Google will not respond to Interrogatory 24 at this time.

**Interrogatory No. 25:**

Identify any prior, ongoing, or planned assessments or evaluations by Google of the future impact of the privacy sandbox on its revenue, profit, and/or market share from each of the following Ad Tech Products: DFP, AdX, GAM, GDN, and DV360.

**Response to Interrogatory No. 25:**

Google objects to Interrogatory 25 as overbroad, unduly burdensome, and disproportionate to the needs of the case because it seeks to require Google to provide documents on the privacy sandbox, an initiative not yet fully developed or implemented nor ripe for

adjudication – and in particular in the limited time afforded to respond in light of these interrogatories being issued one month before the close of fact discovery.  This position aligns with the *Order of the Special Master*, No. 4:20-CV-957, Dkt. #418 at 8 (the "Special Master Order") issued on April 24, 2024, who found that the requested discovery is "not proportional to the needs of this case" – explaining that "[b]alancing considerations of relevance and proportionality, the production burden in light of the fast-approaching end of fact discovery, and the remaining important discovery . . . the Special Master finds that Privacy Sandbox remains contingent and subject to the supervision and future UK regulatory approval for final implementation."

Google further objects to Interrogatory 25 to the extent it purports to require, or can be interpreted as purporting to require, Google to draw legal conclusions or to the extent it assumes disputed issues or is phrased in such a way as to be lacking foundation, argumentative, prejudicial, or otherwise improper. Specifically, Google objects to any assertion that DFP, AdX, GAM, GDN, and DV360 are part of distinct relevant antitrust markets.

Google further objects to Interrogatory 25 as vague and ambiguous because the phrase "impact of the privacy sandbox on" and "market share" is undefined and unclear.

Google will not respond to Interrogatory 25 at this time.

**Interrogatory No. 26:**

Identify any prior, ongoing, or planned assessments or evaluations by Google of the future impact of the privacy sandbox on the revenue, profit, and/or market share of any Google competitor.

**Response to Interrogatory No. 26:**

Google objects to Interrogatory 26 as overbroad, unduly burdensome, and disproportionate to the needs of the case because it seeks to require Google to provide documents

on the privacy sandbox, an initiative not yet fully developed or implemented nor ripe for adjudication – and in particular in the limited time afforded to respond in light of these interrogatories being issued one month before the close of fact discovery.  This position aligns with the *Order of the Special Master*, No. 4:20-CV-957, Dkt. #418 at 8 (the "Special Master Order") issued on April 24, 2024, who found that the requested discovery is "not proportional to the needs of this case" – explaining that "[b]alancing considerations of relevance and proportionality, the production burden in light of the fast-approaching end of fact discovery, and the remaining important discovery . . . the Special Master finds that Privacy Sandbox remains contingent and subject to the supervision and future UK regulatory approval for final implementation."

Google further objects to Interrogatory 26 as vague and ambiguous because the phrases "market share" and "competitor" are undefined and unclear.

Google further objects to Interrogatory 26 to the extent that it seeks documents that are not in the possession, custody, or control of Google because the revenue, profit and market shares of "competitor[s]" may be shown in part by documents found only in the possession, custody, or control of those parties.

Google will not respond to Interrogatory 26 at this time.

**Interrogatory No. 27:**

Identify any prior, ongoing, or planned assessments, evaluations, or improvements by Google of alternatives to the deprecation of third party cookies under the privacy sandbox as a means of complying with applicable privacy rules.

**Response to Interrogatory No. 27:**

Google objects to Interrogatory 27 as overbroad, unduly burdensome, and disproportionate to the needs of the case because it seeks to require Google to provide documents

on the privacy sandbox, an initiative not yet fully developed or implemented nor ripe for adjudication – and in particular in the limited time afforded to respond in light of these interrogatories being issued one month before the close of fact discovery.  This position aligns with the *Order of the Special Master*, No. 4:20-CV-957, Dkt. #418 at 8 (the "Special Master Order") issued on April 24, 2024, who found that the requested discovery is "not proportional to the needs of this case" – explaining that "[b]alancing considerations of relevance and proportionality, the production burden in light of the fast-approaching end of fact discovery, and the remaining important discovery . . . the Special Master finds that Privacy Sandbox remains contingent and subject to the supervision and future UK regulatory approval for final implementation."

Google further objects to Interrogatory 27 as vague and ambiguous because the phrases "assessments," "evaluations," "improvements," "alternatives" are undefined and unclear.

Google will not respond to Interrogatory 27 at this time.

**Interrogatory No. 28:**

Identify all categories of data or types of information that are collected, processed, or shared within the privacy sandbox framework.

**Response to Interrogatory No. 28:**

Google objects to Interrogatory 28 as overbroad, unduly burdensome, and disproportionate to the needs of the case because it seeks to require Google to provide documents on the privacy sandbox, an initiative not yet fully developed or implemented nor ripe for adjudication – and in particular in the limited time afforded to respond in light of these interrogatories being issued one month before the close of fact discovery.  This position aligns with the *Order of the Special Master*, No. 4:20-CV-957, Dkt. #418 at 8 (the "Special Master Order") issued on April 24, 2024, who found that the requested discovery is "not proportional to

the needs of this case" – explaining that "[b]alancing considerations of relevance and proportionality, the production burden in light of the fast-approaching end of fact discovery, and the remaining important discovery . . . the Special Master finds that Privacy Sandbox remains contingent and subject to the supervision and future UK regulatory approval for final implementation."

Google further objects to Interrogatory 28 as vague and ambiguous because the phrases "categories of data," and "types of information" are undefined and unclear.

Google will not respond to Interrogatory 28 at this time.


Dated: May 1, 2024                                    Respectfully submitted,

                                                      */s/ Eric Mahr*
                                                      Eric Mahr (*pro hac vice*)
                                                      FRESHFIELDS BRUCKHAUS DERINGER US LLP
                                                      700 13th Street NW, 10th Floor
                                                      Washington, D.C. 20005
                                                      (202) 777-4500
                                                      eric.mahr@freshfields.com

                                                      R. Paul Yetter
                                                      State Bar No. 22154200
                                                      YETTER COLEMAN LLP
                                                      811 Main Street, Suite 4100
                                                      Houston, Texas 77002
                                                      (713) 632-8000
                                                      pyetter@yettercoleman.com

                                                      ATTORNEYS FOR DEFENDANT GOOGLE LLC

**CERTIFICATE OF SERVICE**

I certify that on this 1 day of May 2024, this document was filed electronically in compliance with Local Rule CV-5(a) and served on all counsel who have consented to electronic service, per Local Rule CV-5(a)(3)(A).

*/s/ Veronica M. Bosco*
Veronica M. Bosco
FRESHFIELDS BRUCKHAUS
DERINGER US LLP
3 World Trade Center
175 Greenwich St., 51st Fl.
New York, NY 10007
