**FILED UNDER SEAL**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| THE STATE OF TEXAS, et al., | § § § | |
| Plaintiffs, | § | |
| v. | § § | Civil Action No. 4:20-cv-00957-SDJ |
| GOOGLE LLC, | § § | |
| Defendant. | § § | |

**DEFENDANT GOOGLE LLC'S BRIEF IN RESPONSE TO PLAINTIFFS' MAY 7, 2024 BRIEF TO THE SPECIAL MASTER**

**FILED UNDER SEAL**

**TABLE OF CONTENTS**

ARGUMENT...................................................................................................................1

    I. GOOGLE'S RESPONSES TO PLAINTIFFS' THIRD INTERROGATORIES................... 1

    II. GOOGLE'S CLAW BACK WAS PROPER.................................................................3

        A. Plaintiffs' Waiver Arguments Lack Basis......................................................3

        B. The Redacted Material Contains Legal Advice On Its Face...........................5

    III. GOOGLE PROPERLY PREPARED AND DEFENDED THE ▇▇▇ DEPOSITION....6

    A. Mr. ▇▇▇ Was Properly Prepared To Testify..................................................6

    B. Plaintiffs Violated Federal Rule 30(b)(1)........................................................8

**FILED UNDER SEAL**

Google respectfully submits this Brief in Response to Plaintiffs' Brief to the Special Master dated May 7, 2024, ECF No. 472. Plaintiffs' Brief raises three issues:

**Google's Responses to Plaintiffs' Third Interrogatories**. The Special Master need not address this issue at this time while the parties continue to meet and confer.

**Clawback**. Plaintiffs introduced the same document containing privileged material in two separate depositions on the same day. Both sets of defending attorneys clawed the document back in real time. The Special Master should reject Plaintiffs' claims of waiver because the Clawed Back Document is privileged on its face, there was no waiver, and Plaintiffs cannot establish waiver under the governing clawback provision or any applicable legal standards.

███████ **Deposition**. After taking seven hours of Mr. ███████' testimony in his personal capacity, Plaintiffs then took additional personal testimony as part of his Rule 30(b)(6) deposition and so Google properly objected. Plaintiffs' other gripes reflect that they did not like the testimony they got from a properly prepared deponent because the testimony hurt their case.

**ARGUMENT**

**I.   GOOGLE'S RESPONSES TO PLAINTIFFS' THIRD INTERROGATORIES.**

Google and Plaintiffs met and conferred concerning Google's responses to Plaintiffs' Third Interrogatories on Monday, May 6. During that meet-and-confer, the parties discussed Plaintiffs' priorities, the nature of Google's objections, and potential ways in which Plaintiffs could narrow their requests. Google will continue to work with Plaintiffs to reach a resolution.

Provided the parties can reach a reasonable resolution, Google anticipates being able to supplement its responses to Interrogatories 6, 9, 13-19, and 20-23. Once the parties are able to negotiate a reasonable scope of response, Google will provide its responses as soon as possible.

There are, however, some Interrogatories to which Google may not be able to provide a

**FILED UNDER SEAL**

response. Interrogatories 7, 8, 10, and 11 seek incredibly detailed monthly data dating back to 2013 concerning all "Google Auction Mechanics," which Plaintiffs define to mean "any and all systems and software that implement, effectuate, or modify any Ad Auction rules, preferences, designs, or features." Plaintiffs provide a nonexclusive list of 16 purported "systems and software." Interrogatory 12 seeks even more extensive data for one Google Auction Mechanic.

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

█████. Therefore, any response would require Google to attempt to build a monthly dataset, which would entail evaluating trillions of auction transactions across more than a decade, and, given the engineering complexity involved, might not ultimately be successful.

As has been made clear to Plaintiffs, Google's past experience creating the bespoke transaction-level datasets in this and related cases demonstrates that the burden of responding to Plaintiffs' requests would be immense, and the time required extensive. Because Google does not maintain this information in the ordinary course of business, Google had to launch significant engineering projects to assemble the various data points regarding each transaction (*e.g.*, queries, bids, clicks) from multiple different logs and join them in a coherent fashion. This was not something Google had previously attempted to create,████████████████████ █████.

Across the DOJ investigation, the Virginia Case, the MDL, and this case, Google has created seven log-level datasets, each covering between one week and one month in 2022, 2023, or 2024. Between them, these datasets contain hundreds of billions of bids and amount to several hundred terabytes of data. Each of them took Google engineers approximately four to six *months* to create and required multiple rounds of trial-and-error before they were completed.

**FILED UNDER SEAL**

The code that Google wrote to produce these log-level datasets was highly customized for the specifications of those particular requests, and extensive work was required to debug them and ensure that they could handle the massive amounts of data required for even those short periods of time. Adding additional information or extending the data to a much longer time period would require rewriting code and doing an entirely new—and much bigger—collection of data, and could introduce additional points of failure. Accordingly, Google cannot at this point provide a precise estimate for how long it would take to compile the requested data for every month going back *11 years*. But this certainly could not be done in a matter of weeks.

## II. GOOGLE'S CLAW BACK WAS PROPER.

In two separate depositions occurring on the same day, Plaintiffs introduced as an exhibit a document containing material that is privileged on its face and which was inadvertently produced without redactions (GOOG-DOJ-27760500 or the "Clawed Back Document"). Both sets of Google counsel identified the Clawed Back Document as containing privileged material and clawed the document back in real time during both depositions. Google promptly provided a redacted version of the Clawed Back Document.

### A. Plaintiffs' Waiver Arguments Lack Basis.

Plaintiffs' Brief fails to address the relevant provisions of the Confidentiality Order, ECF No. 182, governing claw backs or any applicable law. Clawbacks are governed by Paragraph 12(a) of the Confidentiality Order which is intended "to provide the maximum protection allowed by Federal Rule of Evidence 502(d)."[1] Under Paragraph 12(a), "[t]he production of privileged or work-product protected Documents, electronically stored information ("ESI") or information, whether inadvertent or otherwise, is not a waiver of the privilege or protection from

---

[1] ECF No. 182 at ¶ 12(a).

**FILED UNDER SEAL**

discovery in this case or in any other federal or state proceeding."[2] This is the same provision that Google negotiated with Plaintiffs and which Judge Castel interpreted as part of a clawback challenge while Plaintiffs were part of the MDL. *See* MDL ECF No. 438 at 3 ("Where an Order sets forth the procedure for clawing back purportedly protected documents, the terms of that Order control and not the principles that might apply had there been no Order.").

Plaintiffs' argument rests on the false premise that Google did not act promptly enough in asserting the clawback. That not only misstates the factual record, but also ignores that "promptness" is not the governing standard under Paragraph 12(a). Interpreting this same provision, Judge Castel ruled that Paragraph 12(a) "does not require that the party claiming privilege demonstrate reasonable steps to prevent disclosure and that they acted promptly to rectify the error" and permits parties to claw back documents under any circumstance, subject to two "possible" exceptions: where (i) the party asserting inadvertent production has acted in a manner that was "completely reckless"; or (ii) the prior disclosure was a "deliberate and strategic choice." MDL ECF No. 438 at 4. Plaintiffs have not asserted that either exception applies—for good reason, as there is nothing in the record to support either exception.

While it is not relevant under the governing clawback provision, there is also no question that Google acted promptly. Plaintiffs introduced the same document in two depositions on the same day. Google's counsel in both depositions objected and clawed it back within *minutes*.

- ▇▇▇ **Deposition.** Plaintiffs asked Mr. ▇▇▇ a series of short questions about the Clawed Back Document. Ex. A at 312:2-318:4. Google's counsel reviewed it in real time and, finding privileged material, instructed Plaintiffs it would be clawing back the exhibit and providing a redacted version of the document. *Id*. at 325:17-25. Plaintiffs did not ask about the privileged content on page -516 of the Clawed Back Document (or any privileged content on other pages) and stated that they would "be moving on from that exhibit." *Id.* at 326:1-3.

---

[2] *Id.*

4

**FILED UNDER SEAL**

- ▇▇▇▇ **Deposition.** Plaintiffs asked ▇▇▇▇ a series of questions about the same Clawed Back Document. Ex. B at 205:1-221:3. Google's counsel objected on privilege grounds as soon as Plaintiffs' counsel started to ask questions that implicated the privileged content on page -516 of the document. *Id.* at 220-221. Google's counsel immediately provided a redacted version of the document and allowed questioning to proceed on the non-privileged material.

Against that backdrop and the governing clawback provision, it is difficult to credit Plaintiffs' assertion of an entitlement to another 30 minutes of deposition time with Mr. ▇▇▇▇ on the theory that "Google's counsel prohibited the States from questioning Mr. ▇▇▇▇ at all regarding that key slide." Br. at 6. Plaintiffs had ample opportunity—reflected in more than 30 pages of testimony on the record—to ask questions about the non-privileged portions of page -516 of the Clawed Back Document. Ex. B at 225:8-259:19. Plaintiffs used up their full 7 hours with Mr. ▇▇▇▇, failed to reserve any time, and Google objected on the record to Plaintiffs' attempt to hold the deposition open. *Id.* at 279.[3]

### B. The Redacted Material Contains Legal Advice On Its Face.

As Google explained on the record, the material that Google has now redacted concerns legal assessment of regulatory risk issues and, on its face, reflects legal advice of in-house counsel at Google. *See* Ex. B at 222:10-24. This was independently evident to Google's counsel in both the ▇▇▇▇ and ▇▇▇▇ depositions that occurred on the same day.

This should have been evident to Plaintiffs, too. Paragraph 12(d) of the governing Confidentiality Order requires that when a party becomes aware that it has received information or material that it knows or reasonably should know is privileged, counsel must immediately notify opposing counsel, stop reading the material, return the information and destroy all copies

---

[3] Plaintiffs' only cited authority, *Nguyen v. Excel Corp.*, does not concern or interpret a claw back governed by Federal Rule of Evidence 502(d). 197 F.3d 200, 206 (5th Cir. 1999). In *Nguyen*, the court found waiver when the defendant failed to assert a privilege objection during a deposition and allowed their witness to testify about privileged information without objection.

**FILED UNDER SEAL**

and notes. ECF No. 182 at ¶ 12(d). Google has repeatedly warned Plaintiffs of its obligations under Paragraph 12(d). *See, e.g.*, ECF No. 235 Ex. 5 at 3. Unlike the plaintiffs in the Virginia Case and the MDL, Plaintiffs in this case have never notified Google that they have identified ***any*** privileged documents in the more than 6.2 million that Google has produced. Plaintiffs' failure to do so suggests that they are applying an improperly restrictive interpretation of the law of privilege.[4]

### III. GOOGLE PROPERLY PREPARED AND DEFENDED THE ▮▮▮▮ DEPOSITION.

#### A. Mr. ▮▮▮▮ Was Properly Prepared To Testify.

Google designated Mr. ▮▮▮▮ to testify with respect to five Topics out of Plaintiffs' extraordinarily broad 107-Topic Rule 30(b)(6) Notice. Although not clear from their Brief, Plaintiffs appear to take issue with Mr. ▮▮▮▮ testimony regarding just one of them, *i.e.*, Topic 77 ("buyside market share calculations and competitive intelligence ***performed in the ordinary course***").[5] Google agreed to provide a witness to testify about "[m]arket share calculations (***if any***) and competitive intelligence or company tracking for buy-side products (Topic 77)."[6]

Mr. ▮▮▮▮ was prepared to address Topic 77 but it appears that Plaintiffs do not like the corporate designee testimony that they received. Specifically, Mr. ▮▮▮▮ testified that ▮▮▮▮



---

[4] Plaintiffs have submitted a separate brief to the Special Master on May 8, 2024 challenging Google's clawback. Google will submit a separate response to that brief explaining the privileged nature of the redacted content in greater detail.

[5] The other four are Topic 32 (information and data that Google makes available to its advertising customers using Display and Video 360 and/or Google Ads), and Topics 85-87 (concerning the pricing of Display and Video 360 and Google Ads).

[6] *See* Ex. F at 4 (emphasis added). Google also agreed that Mr. ▮▮▮▮ would "provide 30(b)(6) testimony following the conclusion of his 30(b)(1) deposition provided the entire day does not last more than 7 hours on the record." *Id.*

FILED UNDER SEAL

████████████████████████████████████████████████████.[7]  Mr. ████

explained—multiple times—that ██████████████████████████████████

████████████████████████████████████████████████████████████████

████ Ex. A at 36:13-37:2.  Mr. ████ further explained: ██████████

███████████████████████████████████████████████████████. As a

result, ██████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████ Ex. A at 44:18-45:7.[8]

Plaintiffs can complain all they want about the preparation of Mr. ████ but they will not receive a different answer from Google as to Topic 77. That is because, as Mr. ████ testified, ████████████████████████████████████████████████████████████

██████████████████████████████████. Under Rule 30(b)(6), the designee "must testify about information known or reasonably available to the organization." Mr. ████ did so.

With that context, Plaintiffs' Brief boils down to a laundry list of gripes that lack basis.

*First*, Plaintiffs' argument that Mr. ████ "failed to meet with any non-attorney Google employees, Br. at 7, incorrectly assumes that there was a need to do so. Mr. ████ is a 14-year veteran of Google who is the Managing Director of Global Products and Solutions, and is responsible for helping Google's sales and product teams design and bring to market various

---

[7] ████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████ Ex. A at 164:18-165:1.
[8] And although Plaintiffs complain that Mr. ████ was not prepared to testify on Google's definition of "market share," Mr. ████ testified that ████████████████████████████
████████████████████████ Ex. A at 27:8-10.

7

**FILED UNDER SEAL**

buy-side advertising products. His testimony reflects that deep experience.

*Second*, Plaintiffs' argument that Mr. ▮ "testified that he was only relying on his own personal experience as a Google employee in answering questions," Br. at 7, is misleading and wrong. There is nothing improper about relying on personal experience to give corporate testimony when that experience is directly relevant to the designated Topic. That is especially so when, as here, the deponent witness is a Managing Director who has been employed by Google for 14 years. Mr. ▮ explained that his relevant knowledge was also based on "decision-making forums" in which decisions are made regarding sales and product prioritization, as well as his perspective as a managing director of strategy for Google's buy-side products. Ex. A at 165:13-20.

*Third*, Plaintiffs' argument that Mr. ▮ should have met with counsel for the same length of time as a different Google employee met with counsel makes no sense. Br. at 7. Google's designated sell-side representative, Ms. ▮, joined Google two years ago and so additional preparation was appropriate. Mr. ▮ spent three hours with Google's counsel preparing for his 30(b)(6) deposition. Mr. ▮ did not require additional preparation.

## B. Plaintiffs Violated Federal Rule 30(b)(1).

Wasting time on irrelevancies has become a common fixture of depositions taken by Plaintiffs in this case. Among other things, Plaintiffs asked Google's witnesses about their level of familiarity with the Dallas Cowboys and the New York Giants;[9] their coaching strategy if they were to coach professional soccer player Lionel Messi and their knowledge of the offside rule in soccer;[10] massages and Google's cafeterias;[11] and their experiences of listening to the radio while

---

[9] *See* Ex. D at 360:11-25.
[10] *See id.* at 361:23-362:6, 364:16-25.
[11] *See* Ex. G at 326:18-328:4.

**FILED UNDER SEAL**

driving through the Holland Tunnel connecting New York City to New Jersey.[12]

Google designated Mr ▆ to testify regarding five different Topics in Plaintiffs' extraordinarily broad Rule 30(b)(6) Notice. Mr. ▆ provided careful testimony that sought to distinguish between those Topics and to provide testimony in the correct context for each Topic.[13] But Plaintiffs posed ***more than one hundred and fifty questions*** that properly drew a scope objection. For one line of questioning, the questioner even conceded they were seeking additional personal testimony. *See* Ex. A at 203:9-11 ("Q. Now, this question you can [answer] in your personal capacity. But have you seen the movie Fight Club with Brad Pitt?"). By this point, Plaintiffs had already taken seven hours of personal testimony and so Plaintiffs had no basis to seek additional Rule 30(b)(1) testimony. So Google's counsel was within their rights to object as they did. *Id*. at 204:23-205:3 ("[I]f this line of questioning continues, Mr. Robinson, we may need to call the special master, because this is well outside the scope of the 30(b)(6). You have already taken Mr. ▆' 30(b)(1) deposition, and this is highly inappropriate.").

Plaintiffs asked several other lines of questioning that were not only out of scope, but were obviously intended to expand upon issues addressed in his Rule 30(b)(1) testimony.[14] Given that Plaintiffs had already taken seven hours of personal testimony, Google was entitled to ask what Topics were at issue and it is telling that Plaintiffs were unwilling or unable to do so. *See, e.g.*, Ex. A at 103:4-7 ("Ms. Sessions: Counsel what 30(b)(6) topic does this relate to? Mr.

---

[12] *See* Ex. E at 591:12-23.
[13] *See, e.g.*, Ex. A at 169:16-170:18 ("There are several topics. It would be helpful if we could look at the topic specifically that you're asking of. I would like to make sure I answer in the correct context and on the right topic.").
[14] For example, Plaintiffs repeatedly asked about transparency and fairness (*compare* Ex. A at 242:9-244:25, 374:9-375:7, *with* Ex. C at 98:21-117:22); and the differences between Google's buyside products (*compare* Ex. A at 48:11-60:13, *with* Ex. C at 203:11-204:2).

**FILED UNDER SEAL**

Robinson: [*long pause*] This is my deposition.").[15] Notably, counsel did not instruct Mr. ▮ not to answer, and Plaintiffs therefore obtained testimony in response to all of the objected-to questions—including the ones that Plaintiffs' counsel insisted on asking multiple times. *See, e.g., id.* at 132:9-134:5, 136:10-138:3; 137:22-13:3 138:5-139:1; 139:3-7 (repeated questions as to whether Mr. ▮ knew Amazon's or others' shares of an unidentified alleged DSP market).

In total, Google's counsel's objections ran to 10 minutes. These 10 minutes of objections constitute a small fraction of the time that Plaintiffs used to improperly conduct a second 30(b)(1) deposition of Mr. ▮ and an even smaller fraction of the fourteen hours of testimony they obtained from Mr. ▮. Given the egregious nature of the questioning in this deposition—and in this case to date—Plaintiffs are not entitled to any more questioning of Mr. ▮, and especially not another 30(b)(1) deposition.

Dated: May 10, 2024                     Respectfully submitted,

                                        */s/ R. Paul Yetter*
                                        R. Paul Yetter
                                        State Bar No. 22154200
                                        YETTER COLEMAN LLP
                                        811 Main Street, Suite 4100
                                        Houston, Texas 77002
                                        (713) 632-8000
                                        pyetter@yettercoleman.com

                                        Eric Mahr (*pro hac vice*)
                                        FRESHFIELDS BRUCKHAUS DERINGER LLP
                                        700 13th Street NW, 10th Floor
                                        Washington, DC 20005
                                        (202) 365-5319
                                        eric.mahr@freshfields.com
                                        ATTORNEY FOR DEFENDANT GOOGLE LLC

---

[15] Plaintiffs asked Mr. ▮ various other lines of questioning for which he was not designated to testify. These included questions about auction mechanics (Ex. A at 177:15-178:24), sell-side presentations and products (*id.* at 67:18-68:11), and sell-side optimizations (*id.* at 186:24-189:7).

**FILED UNDER SEAL**

**CERTIFICATE OF SERVICE AND OF SEALING**

      I certify that, on May 10, 2024, this document was filed electronically in compliance with Local Rule CV-5(a) and served on all counsel who have consented to electronic service, per Local Rule CV-5(a)(3)(A). I also certify that, on May 10, 2024, a motion to seal the foregoing document and its exhibits was filed separately and before the filing of this document under seal, per Local Rule CV-5(a)(7)(B). This sealed filing will be promptly served by email with a secure link on counsel of record for all parties in this case, and will be publicly filed in redacted form per Local Rule CV-5(a)(7)(E).

*/s/ R. Paul Yetter*
R. Paul Yetter