# EXHIBIT A

```
 1              IN THE UNITED STATES DISTRICT COURT

             FOR THE EASTERN DISTRICT OF TEXAS

 2                    SHERMAN DIVISION

 3   THE STATE OF TEXAS, ET AL )

                               )

 4   vs.                       )  CASE NO. 4:20-CV-957-SDJ

                               )

 5   GOOGLE LLC                )

 6

 7   ********************************************************

 8

 9                  SPECIAL MASTER HEARING

10                     MAY 2, 2024

11

     ********************************************************

12

13      SPECIAL MASTER HEARING, via Zoom, was taken in the

14   above-styled and numbered cause before Special Master

15   David Moran on the 2nd day of May, 2024, from 10:02 a.m.

16   to 11:58 a.m., before Melinda Barre, Certified Shorthand

17   Reporter in and for the State of Texas, reported by

18   computerized stenotype machine, all parties appearing

19   remotely via web videoconference, pursuant to the rules

20   of procedure and the provisions stated on the record or

21   attached hereto.

22

23

24

25

                                              Page 1
```

```
 1                    APPEARANCES
          (ALL APPEARED VIA ZOOM VIDEO CONFERENCE.)
 2
 3   FOR THE STATES:
 4        Mr. Zeke DeRose, III
          Mr. Jonathan Wilkerson
 5        THE LANIER LAW FIRM, PC
          10940 W. Sam Houston Parkway N., Suite 100
 6        Houston, Texas 77064
 7        Telephone: 713.659.5200
          E-mail: zeke.derose@lanierlawfirm.com
 8
 9        Ms. Geraldine W. Yung
          NORTON ROSE FULBRIGHT US LLP
10        1301 McKinney, Suite 5100
          Houston, Texas 77010
11
          Telephone: 713.651.5437
12        E-mail: geraldine.young@nortonrosefulbright.com
13
          Mr. Trevor Young
14        STATE OF TEXAS, OFFICE OF THE ATTORNEY GENERAL
          ANTITRUST DIVISION
15        P.O. Box 12548, 7th Floor
          Austin, Texas 78711
16
          Telephone: 512.936.2334
17        E-mail: trevor.young@oag.texas.gov
18
19
20
21
22
23
24
25
```

Page  2

```
 1                    A P P E A R A N C E S
 2    FOR GOOGLE LLC:
 3         Mr. Jamie Aycock
           Ms. Mollie Bracewell
 4         YETTER COLEMAN LLP
           811 Main Street, Suite 4100
 5         Houston, Texas 77002
 6         Telephone: 713.632.8000
           E-mail: jaycock@yettercoleman.com
 7
 8         Mr. Robert John McCallum
           Ms. Lauren Vaca
 9         FRESHFIELDS BRUCKHAUS DERINGER US LLP
           3 World Trade Center
10         175 Greenwich Street, 51st Floor
           New York, New York 10007
11
           Telephone: 212.284.4910
12         E-mail: rob.mccallum@freshfields.com
13
      ALSO PRESENT:  David Moran, Special Master
14                        William Nilsson
15
16
17
18
19
20
21
22
23
24
25
```

Page 3

```
 1              SPECIAL MASTER:  Let's begin our hearing
 2    this morning, May 2nd.  And let me call the case which
 3    is the State of Texas, et al versus Google LLC in the
 4    United States District Court for the Eastern District of
 5    Texas, Sherman Division, Case No. 4:20-cv-957 before the
 6    Honorable Sean Lee Jordan.  Let me have appearances,
 7    please, from the States.
 8              MS. YOUNG:  Geraldine Young for the State
 9    of Texas.  Go ahead.
10              MR. DeROSE:  Zeke DeRose, Lanier Law Firm,
11    for the State of Texas.
12              SPECIAL MASTER:  Anyone else from the
13    States?
14              MR. DeROSE:  We also have Trevor Young
15    from the Texas Attorney General's Office.
16              SPECIAL MASTER:  I see Mr. Young.  Good
17    morning, Mr. Young.  Thank you.  Anyone else from the
18    States?
19              All right.  From Google, Mr. McCallum
20    would you like to kick that off?
21              MR. McCALLUM:  Happy to, Special Master.
22    Robert MacCallum from Freshfields on behalf of defendant
23    Google.  And with me here today I have my colleague from
24    Freshfields Lauren Vaca and also from our co-counsel at
25    the Yetter Coleman firm we have Jamie Aycock and Mollie
```

Page 4

```
 1   Bracewell.
 2                SPECIAL MASTER:  Thank you.  Anyone else
 3   from Google?  All right.  Thank you both sides there.
 4                Obviously we've seen the two orders late
 5   yesterday from His Honor, Judge Jordan, on the States'
 6   request for some modification of the scheduling order.
 7   And you saw his thinking and rationale and what he had
 8   to say with respect to that and then, secondly, the
 9   impact on dates.
10                As I said in my e-mail to the parties
11   yesterday early evening, there's a little bit of
12   breathing room here; but there's still a lot of work to
13   be done.  So the good news is the work's steady, but the
14   bad news is the work has been really steady for you.
15                I'll take judicial notice of e-mails in
16   the middle of the night from Mr. DeRose, who apparently
17   doesn't sleep, and we've already taken judicial notice
18   that Mr. McCallum works 24 hours a day regardless of
19   what time zone he may be in, Down Under, London,
20   New York, everywhere.
21                So I do want to commend the parties for
22   working really, really hard on a challenging case,
23   zealously representing your clients extremely well, as
24   well as being cooperative in a very challenging,
25   difficult case.
```

Veritext Legal Solutions
346-293-7000

1  received yesterday was in connection with the

2  re-contracting dashboard that you had been made aware of

3  as a result of Ms. ████'s deposition.  So that's what

4  we provided yesterday.

5            There will be an additional letter coming

6  from me, I think, pointing you to other additional data

7  sources.  If not later today, then by tomorrow.  And

8  that comes on the back of, as you know, a number of

9  written responses that we've provided in connection with

10  Ms. ████'s testimony.

11            MS. YOUNG:  Okay.  That's great.  Maybe

12  we'll pencil in a meet-and-confer on Monday.  Okay.

13  Thank you.

14            SPECIAL MASTER:  Thank you both sides on

15  that.  Let's turn to Google's disputes that Mr. Aycock

16  wants to be heard on this, I suspect.  The floor is

17  yours.

18            MR. AYCOCK:  Thank you, Special Master.

19  So we would like to raise a couple of issues with the

20  corporate representative of Texas' deposition.  First

21  let me just set the stage so that you understand kind of

22  the context here.

23            So ████████ was designated not

24  just as the corporate representative for the State of

25  Texas, but he was also designated by all of the 17

Page 62

1  plaintiff states here for all of the common factual

2  issues in the case.  So this is not just another one of

3  the state depositions.  It's particularly significant to

4  the case.

5              So this was our opportunity really to dig

6  into the factual basis for the allegations in the

7  complaint and get more details on interrogatory

8  responses.

9              This may not have come across in the -- in

10 just the briefing that was submitted to the Special

11 Master; but, you know, if you actually sat in the

12 deposition, what you would have seen is you would have

13 seen that the deposition went on for a long time.  Part

14 of the reason it went on for such a long time was

15 because ██████████ spent such a significant amount of

16 time flipping pages of the complaint and interrogatory

17 responses and simply reading from the complaint and

18 interrogatory responses.  And that was the vast majority

19 of the day that we spent.

20              So after --

21              SPECIAL MASTER:  Yeah.  It was a long

22 deposition.  I've got all of it.

23              MR. AYCOCK:  After the deposition we sent

24 an e-mail to counsel sort of outlining the deficiencies.

25 We never received a response to that.

                                            Page 63

1        SPECIAL MASTER:  Right.

2        MR. AYCOCK:  What I will say is that is in

3    direct contrast to the way that Google has responded

4    when deficiencies have been noted.  We were just talking

5    about the deposition of Mr. ████, and Mr. McCallum was

6    referring to the ways that Google has responded with

7    certain information in arriving and making additional

8    productions.  And we haven't seen any of that from the

9    States.

10       So the two issues that we wanted to

11   present to the Special Master then are -- first have to

12   do with their lack of preparation and lack of

13   responsiveness in particular areas.

14       Then the second issue, which has been

15   presented to the Special Master previously, you know --

16   you have seen this before -- has to do with facts that

17   were learned during the third-party interviews that were

18   conducted.

19       So first with regard to the preparation,

20   let me just point to a couple of examples here.  In

21   raising this we are not in a situation where we are

22   trying to do a gotcha with the witness where we

23   presented some random documents and are trying to quiz

24   the witness.  We are really trying to get at some of the

25   basic contentions in the case and some of the basic

1    factual support for the claims.

2              So the first point is that in the

3    complaint there are a number of paragraphs where

4    allegations are made about harms to particular

5    advertisers and particular publishers.  We actually in

6    our notice in a number of instances identified with

7    specificity the paragraphs that we wanted to question

8    the witness about.

9              In our amended notice actually that we

10   just discussed that was narrowed the plaintiffs actually

11   proposed dropping some of those topics because they were

12   subsumed within our topic about the factual basis for

13   the complaint.  So those don't appear in our narrowed

14   list of topics, but we were very specific.

15             In the deposition ▇▇▇▇▇▇ with one

16   exception could not identify any of those specific

17   advertisers or publishers that are alleged to have been

18   harmed.  The one exception was there was a very specific

19   narrow interrogatory that asked about a particular

20   publisher in a particular paragraph, and so he was able

21   to identify that specific publisher.  But in no other

22   instance was he able to identify any of the specific

23   advertisers or publishers.

24             What we confirmed in the deposition is

25   that he also didn't do anything to investigate that

Veritext Legal Solutions
346-293-7000

```
 1   information.  He didn't talk to anybody in advance about
 2   those issues even though those were specific documents
 3   that we had identified.
 4            After the deposition we actually in our
 5   e-mail to counsel said that for this issue we would be
 6   happy to take written responses.  We're just looking for
 7   the information.  Again, we never heard from the
 8   plaintiffs on this topic, which I think is especially
 9   not burdensome to the plaintiffs given that they should
10   know who the specific advertisers and publishers that
11   they've made allegations about in the complaint are.
12            The second issue that is an example that I
13   want to point to has to do with harm.  We asked
14   questions about what is the alleged irreparable harm in
15   this case, and all that ███████ did was he found an
16   interrogatory response that asked about harm.  He read
17   it.  Nothing in the interrogatory response says anything
18   about irreparable harm, and he couldn't identify with
19   any -- not even specificity.  He could not even say what
20   the irreparable harm was in any way.
21            And I apologize for the raining sound in
22   the background.  We're having a big storm right now in
23   Houston.
24            SPECIAL MASTER:  It rains in Dallas, too.
25   It did all night long.
```

Veritext Legal Solutions
346-293-7000

1          MR. AYCOCK:  The third example I wanted to

2     point the Special Master to has to do with consumer

3     complaints.  And ████████ couldn't testify in any way

4     about any consumer complaints that were filed with the

5     State.  He hadn't reviewed any of them.  This was the

6     subject of several of our corporate representative

7     deposition topics in the notice.

8               He had spoken with one person about one

9     specific complaint and didn't remember any of the

10    details about that complaint.  So he just was not

11    prepared.  Those are just some of the examples that I'll

12    point the Special Master to.

13              SPECIAL MASTER:  Okay.

14              MR. AYCOCK:  In the response brief the

15    plaintiffs have said that we spent a lot of the

16    deposition trying to suggest that the witness was not

17    prepared.  That's not at all the case.  There are a

18    number of questions that asked what ████████ did to

19    prepare on particular topics, but that's only after he

20    could not identify any specific factual basis for

21    numerous allegations.

22              And so we asked follow-up questions about

23    what he had done, whether he had looked at documents.

24    And what we see from the transcript over and over again

25    is essentially what he did is he read the complaint and

                                                  Page 67

1    he read the interrogatory responses.

2              SPECIAL MASTER:  Okay.  Did you want to

3    talk about the work product issue that I know the States

4    have raised?  And you've seen my order on that.  So

5    let's talk about that, please.

6              MR. AYCOCK:  That's right.  The second

7    issue then has to do with the facts learned in the

8    interviews.  So this is an issue that we've raised with

9    the Special Master before the deposition.  We were aware

10   that there was a dispute between the parties on this

11   issue.

12             We thought that we had reached a

13   resolution and, actually, Mr. Yetter raised this in the

14   conference with the Special Master and on the record

15   specifically said what the agreement was between the

16   parties.  And he specifically noted that the parties

17   agreed that the facts that were learned in these

18   interviews could -- the witness could be deposed about

19   those facts.  That's on the record.  But the witness

20   here was not prepared, didn't know anything about the

21   substance of those facts in any way.

22             The plaintiffs said in their brief that

23   the witness answered questions on this issue.  But if

24   you look at the -- I mean, just to give you a couple of

25   examples of the questions that were asked and the

Page 68

```
 1    answers that were given on this issue -- so I'm reading

 2    from the transcript starting at page 194.  These are the

 3    pages that the plaintiffs pointed to in their brief.

 4              "So today you can't identify a single

 5    category of document that was requested from the third

 6    parties as part of the Texas investigation?

 7              "No, other than all of these documents

 8    were provided to Google.

 9              "Question:  And you interviewed those

10    third parties in part related to the documents that they

11    provided, right?

12              "Answer:  I do not know the content of

13    those interviews.  What I know about those interviews

14    was provided to Google in our communications privilege

15    log that lays out the people we spoke to, the date, the

16    time, if there was a witness and the nature of those --

17    well, the nature of the privileged document, privilege

18    description that's in there, what's in that list."

19              And then the question, "And so you didn't

20    review any of the interview memoranda that are

21    referenced in the privilege log, right?

22              "Correct.

23              "And you didn't ask anybody about the

24    substance of those interview memoranda, right?

25              "Correct."
```

Page 69

 1              So the witness provided no information

 2    whatsoever from the interviews.  And what's especially

 3    problematic about that is that both the Texas witness

 4    and since that time several of the States who have been

 5    deposed have all confirmed that they can't say whether

 6    any facts were learned from those third-party interviews

 7    that form the basis of the complaint.  And they've also

 8    said that they can't say whether they're going to rely

 9    on facts learned in those interviews at trial.

10              So we think it's particularly problematic

11    that they are now -- that they are saying we can't get

12    at any of those facts.  What we've heard from the

13    plaintiffs is that we actually need to somehow get those

14    facts from the third parties, that somehow that is less

15    burdensome.

16              It's just sort of a basic principle of

17    discovery that if you can get something from a party,

18    you should get it from a party first as opposed to a

19    third party.  We've talked about the deposition limits,

20    and that's actually our next issue that we're going to

21    talk about.

22              SPECIAL MASTER:  So --

23              MR. AYCOCK:  (Crosstalk) -- go and depose

24    every witness that was interviewed as part of the

25    investigation.  So we really need for the plaintiffs to

                                              Page 70

```
 1   provide these facts.
 2              SPECIAL MASTER:  Okay.  So I appreciate
 3   that.  Well, you know, I've ruled on that issue that --
 4   the memos to the file from the interviews by the AG's
 5   office when they interviewed whoever they interviewed
 6   and however they reduced that to writing.  Google sought
 7   the production of those materials, and I've ruled on
 8   that request as privileged.
 9              I hear the States saying if you -- we
10   already have a ruling that the underlying document
11   itself is privileged.  How could I then permit you to
12   ask from a testimonial standpoint testimonial evidence
13   for the exact same information?  How could I dare do
14   that and try to walk out of this room and say I try to
15   rule consistently, right?
16              So help me out how you can get through a
17   deposition the same information that I've held you can't
18   get the other way in an interrogatory or some other
19   discovery device.
20              MR. AYCOCK:  All of our questions just
21   have to do with the facts.  What a third party told the
22   State of Texas, there's nothing privileged about that.
23   And so that's -- I don't think there's any question that
24   we've only asked for the underlying facts.
25              We're also now not asking necessarily for
```

Page 71

```
 1    interview memoranda to be produced.  We would like to
 2    talk to a witness who can say, When we interviewed News
 3    Corp, this is what they said, or, They provided a
 4    presentation about the following topic.
 5              Those are the kinds of things that we
 6    should be entitled to know, who complained about Google?
 7    What were their complaints?  We're not asking for their
 8    mental impressions about who would make a good witness
 9    or the strength of their case or any of those kinds of
10    things.
11              SPECIAL MASTER:  Okay.  All right.  Thank
12    you.
13              Who's going to take that for the States?
14              MS. YOUNG:  I can cover some initial
15    points, and then I welcome Mr. Young and Mr. DeRose and
16    Mr. Wilkerson to jump in as well.
17              SPECIAL MASTER:  You're going to do a
18    sufficient job to cover the issue, but I'll let you have
19    one colleague, not -- you don't need three to back you
20    up.  You don't need anyone.
21              MS. YOUNG:  I was just acknowledging them.
22    I will cover everything.  I will be quick, too.
23              So on Google's request for some
24    information in writing, we'll follow up on that; and I
25    think we can provide something quickly.
```

Page 72

```
 1                    I think that goes to the fact of the

 2        position the States have always taken is that a lot of

 3        the information that Google seeks can be provided in rog

 4        responses and things like that, and we will uncover to

 5        kind of fill some of the gaps they've raised here in

 6        writing.

 7                    I do want to note, I think Mr. Aycock

 8        mentioned that they noticed a topic on having the

 9        witness identify specific advertisers and publishers.  I

10        pulled up the 30(b)(6) notice to Texas.  I don't see

11        that.  But that's something that we think is more

12        appropriately considered to be provided in writing.  So

13        we will go back and take a look at that.

14                    And I think that underscores also the fact

15        that the States have gone through incredible effort to

16        put all the facts that they're relying on in either

17        their very lengthy complaint or their interrogatory

18        responses and all of the other written discovery we've

19        provided Google.  The States are not looking to hide any

20        facts.

21                    One other point I wanted to touch up on on

22        lack of -- their allegations of lack of preparation.

23        I'm fresh off of a 30(b)(6) deposition I took of a

24        Google witness yesterday.  She arrived with a huge -- it

25        was remote.  So I wasn't in the room with her.  She
```

Page 73

```
 1    arrived with a 14-document binder that was then -- the

 2    contents of which were sent to me two minutes before the

 3    deposition started.  It had kind of a notes page, and

 4    then it had 14 documents including some pretty lengthy

 5    Excels.

 6              That was fine.  That happens in 30(b)(6)s,

 7    right?  She referenced the notes during the deposition.

 8    She was designated on a number of topics.  One of the

 9    topics she was designated on was Google's competitive

10    intelligence tracking and tracking of competitors.

11              I asked her, Who are Google's competitors

12    as to the AdX product?  She could name at most two or

13    three and said maybe there are others.  Same with

14    respect to their Google Ad Manager product, right?

15              So, I mean, I think there's kind of this

16    issue that Google is expecting the States' witnesses to

17    come and just recite names and, in the instance of

18    irreparable harm, give legal conclusions that I think

19    that are out of bounds and do not reflect a lack of

20    preparation or inadequate testimony by ███████ .

21              But I think a good -- at this point in

22    time a good solution is for the States -- we are good

23    faith going to consider Google's request for information

24    and provide it in writing, just as Mr. McCallum and his

25    team have provided us information in writing.  We don't
```

1    think making the States prepare another 30(b)(6) witness

2    to testify about this type of information that

3    analogously Google's 30(b)(6) witnesses have also not

4    been able to testify about is the solution here.

5              And then with respect to the work product

6    memos, I don't have that much more to say about it

7    because I think you hit the nail on the head.  I don't

8    think you can consistently rule.

9              What they're asking for is essentially

10   another 30(b)(6) witness to go and review all of those

11   work product memos and try to parse what may be

12   nonprivileged factual information from mental

13   impressions, which we do not think can be done based on

14   our review of the memos.

15             SPECIAL MASTER:  Back to the first issue,

16   so when will you provide in writing these, my word not

17   yours, supplemental or additional responsive materials

18   that Google has raised through Mr. Aycock?

19             MR. YOUNG:  So Mr. Collier defended

20   ██████████  deposition, and I think he is currently in

21   the Meta depo.  So I just want to double check with him.

22             I will represent that that was something

23   we were working on, and it may have gotten kind of

24   deferred just in the hustle and bustle.  I will talk to

25   him; but I think we can endeavor to provide something by

                                          Page 75

```
 1   next week, May 10th.

 2              This is where I welcome my other team

 3   members to jump in because I don't want to commit us to

 4   something that can't be done.

 5              SPECIAL MASTER:  Well, I appreciate that.

 6   Someone was going to speak.  Go ahead.

 7              I think we need to move sooner, quicker,

 8   faster than that date in light of what remains.  So I

 9   would encourage no later than Wednesday of next week --

10              MS. YOUNG:  May 8th?

11              SPECIAL MASTER:  May 8th.

12              -- responsive information on this issue

13   that Google has raised.  And I would encourage the

14   States to do that because I think it's important on that

15   issue.

16              All right.  Anything else from the States

17   on that?

18              MS. YOUNG:  No.  Thank you.  And even

19   without an order we will provide it by May 8th.

20              SPECIAL MASTER:  All right.  And it may

21   get reduced to writing in an order.  We'll see.  But

22   thank you, Ms. Young.

23              Mr. Aycock, anything in response?

24              MR. AYCOCK:  I just want to add for the

25   Special Master that, you know, the States are taking a
```

Veritext Legal Solutions
346-293-7000

 1   diametrically opposed position than they did going into

 2   the deposition.

 3                   Ms. Young and I had a meet-and-confer on

 4   this specific issue, and she specifically said on our

 5   call there would be no basis for them to claim privilege

 6   over facts that were conveyed in those interviews.  That

 7   was confirmed then by Mr. Yetter.

 8                   So the idea now that somehow there is no

 9   way for the States to then get at the underlying facts

10   that everybody agrees are not privileged, I find it --

11   it's hard to understand and it's hard to reconcile with

12   the statements that were made.  So I just would, again,

13   urge the Special Master to reconsider that issue.

14                   SPECIAL MASTER:  No.  I appreciate that.

15   And I know you've emphasized that facts are facts; and

16   your view is that those are discoverable under all

17   circumstances, I think is generally your position as I

18   read it and understand it to be.

19                   On the other hand, I also read from our

20   friends at the States that when the AG interviewed third

21   parties and learned a lot of facts -- and maybe they

22   learned some opinions and maybe they learned some

23   impressions -- then they went back to their office and

24   they wrote a memo to the file: I met with witness, you

25   know, No. 1 and this is my -- this is what I learned

Page 77

1    from talking to witness No. 1.

2                    These are -- some things that are written

3    down may be factual and some things written down may be

4    the AG in my example's impressions of that witness and

5    what he learned and opinions about them.

6                    Those I understand to be attorney, you

7    know, work product memoranda; and we've ruled on that.

8    So it's a clash between those two issues, it seems to

9    me; and we'll just have to see how that goes.

10                   I understand your point about you, going

11   into the deposition, thought you were going to get a lot

12   of facts.  And I suspect from reading the States'

13   position they were going to provide you facts; but they

14   reserved all of their privilege, including work product.

15   And their position is that the information -- most, if

16   not substantial portions of it is privileged.  So that's

17   how I understand the lay of the land between the parties

18   here this morning.

19                   Okay.  Anything further on that important

20   but challenging issue?

21                   MS. YOUNG:  Not from the States.

22                   SPECIAL MASTER:  Okay.  On Nos. 2 and 3,

23   counting of State depositions as well as 30(b)(6)

24   depositions, I love math; but do we really need to go

25   into math this morning on this or can we say -- if it's

                                                  Page 78

```
1   a ripe issue, happy to deal with it.  But I would think

2   that we're not yet imminently about to cross over 40

3   depositions from either side.  But tell me I'm being too

4   optimistic about that, and we can take that up later if

5   need be.

6              The floor is yours, Mr. Aycock, on these

7   two topics.

8              MR. AYCOCK:  We actually do think that

9   this issue is ripe and it has to do with -- and we think

10  that as it stands that the plaintiffs have exceeded 40

11  depositions in terms of the number that have either been

12  taken or noticed.

13             So that's why -- I think that we can

14  present this fairly quickly and simply.

15             SPECIAL MASTER:  Okay.

16             MR. AYCOCK:  Concern that they are going

17  to raise that we have gone over that number.  So if we

18  could get clarification, I do think it would be helpful

19  because it can guide the parties in terms of do we need

20  to withdraw any notices of deposition as we schedule

21  depositions beyond the close of discovery.

22             So the first issue just has to do with how

23  you count depositions of third parties.  We understand

24  that the way that the plaintiffs are somehow counting is

25  that they are saying take all of the hours of
```

Page 79

1    depositions, divide them by seven and that's how you get

2    the number of depositions.

3              They're pointing to -- I believe that they

4    are basing that on the language in the scheduling order

5    that has to do with a particular party's deposition.

6    That language doesn't have to do with -- so let's say

7    you took a three-hour deposition of one party, a third

8    party, and a four-hour deposition of another third

9    party.  We think that would be two depositions, not one

10   deposition.

11             I think that that's confirmed by other

12   language in the scheduling order.  If you look at the

13   language on nonparties, in that provision the scheduling

14   order provides -- and I know we've talked about this --

15   that the parties can depose a witness for up to eleven

16   hours total, five and a half for each side.  And the

17   scheduling order specifically says that that would count

18   as one deposition for each side.

19             I think that that makes clear that it's

20   not a matter of hours.  We understand that the Eastern

21   District often does have scheduling orders that propose

22   a total number of hours of deposition.  That's not what

23   our scheduling order provides.

24             So that's the first issue.  I'll go ahead

25   and address the second if Special Master would