# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# SHERMAN DIVISION

| | |
|---|---|
| THE STATE OF TEXAS, *et al.*,<br><br>      Plaintiffs,<br><br> vs.<br><br>GOOGLE LLC,<br><br>      Defendant. | Civil Action No. 4:20-cv-00957-SDJ |

# NON-PARTY META PLATFORMS, INC.'S OPPOSED
# MOTION FOR A PROTECTIVE ORDER

# TABLE OF CONTENTS

I. Background ........................................................................................................................ 1

    A. Meta's Documents in the DOJ's Investigative File ................................................. 1

    B. Subpoenas Issued to Meta in *Texas et al. v. Google* ................................................ 3

        1. Google Document Subpoena ........................................................................ 3

        2. State Plaintiffs' Document Subpoena .......................................................... 4

        3. Rule 30(b)(6) Witness Testimony by Meta ................................................. 6

    C. The Stipulated Order ................................................................................................ 6

II. Legal Standard ................................................................................................................... 6

III. Argument ........................................................................................................................... 7

    A. The Discovery Sought Is Neither Relevant Nor Proportional ................................. 7

    B. Allowing Google to Produce Irrelevant, Confidential Meta Information Would Be Unfair and Prejudicial ............................................................................. 9

    C. Google and the State Plaintiffs Have Had Ample Opportunity to Obtain Discovery from Meta ............................................................................................. 10

IV. Conclusion ....................................................................................................................... 12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Bavely, Trustee of AAA Sports, Inc. v. Panini America, Inc.*,
   2023 WL 3686806 (E.D. Tex. Jan. 27, 2023)..................................................................9

*In Re: Google Digital Advert. Antitrust Litig.*,
   No. 1:21-md-03010-PKC, Dkt. 541 (S.D.N.Y. May 5, 2023).......................................8

*Hoeflein v. Crescent Drilling & Prod., Inc.*,
   No. SA-19-CV-01194-FB, 2020 WL 2527939 (W.D. Tex. May 18, 2020)...............9

*Seattle Times Co. v. Rhinehart*,
   467 U.S. 20 (1984).............................................................................................................9

*In re Stewart Title Co.*,
   No. H-09-247, 2009 WL 1708079 (S.D. Tex. June 17, 2009)....................................9

*Uniloc 2017 LLC v. Cardo Systems, Inc.*,
   No. 2:18-cv-511, 2019 WL 13472203 (E.D. Tex. May 22, 2019) ............................7

*United States v. Google LLC*,
   No. 1:23-cv-000108 (E.D. Va.) ................................................................................ *passim*

*Young v. Braum's, Inc.*,
   No. 5:19CV161-RWS-CMC, 2021 WL 1413128 (E.D. Tex. Jan. 8, 2021).............7

**Other Authorities**

Fed. R. Civ. P. 26................................................................................................................ *passim*

Pursuant to Federal Rule of Civil Procedure 26(c) and this Court's May 30, 2024 Stipulation and Order for Reproduction of Discovery ("Stipulated Order"), Dkt. 510, non-party Meta Platforms, Inc. ("Meta") respectfully moves this Court to enter a protective order prohibiting the reproduction in this case of certain Meta documents produced by the United States in *United States v. Google LLC*, No. 1:23-cv-000108 (E.D. Va.) ("EDVA Action") because (1) the documents are neither relevant to any party's claim or defense nor proportional to the needs of the case, (2) their reproduction would unfairly prejudice Meta, and (3) the parties have already had ample opportunity to seek discovery directly from Meta in this matter.

Based upon clarifications provided by Meta concerning the scope of its document productions, Google does not oppose Meta's requested relief. Plaintiffs oppose this motion.

**I.     BACKGROUND**

**A.     Meta's Documents in the DOJ's Investigative File**

The parties seek to bring into this litigation a grab-bag of Meta's confidential information, including from unrelated investigations. Specifically, the parties seek reproduction of the entirety of Meta's documents in the DOJ's investigative file from the EDVA Action ("DOJ Files"), which contains Meta's responses to six different civil investigative demands ("CIDs") from November 2019 to October 2020. This sweeping approach ignores that certain files are neither relevant nor proportional to the parties' claims and defenses at issue here. It also runs afoul of the prior agreement reached between the State Plaintiffs and Meta regarding the scope of Meta's production in this case. *See* Decl. of E. Kate Patchen ("Patchen Decl."), Ex. 14 ("We have an agreement. We accept your clarification and amendment of our proposed terms and the agreed production as constituting Meta's complete response to the document subpoena with no further supplementation required.").

1

Indeed, only three of the CIDs reflected in the DOJ Files relate to the DOJ's Google-specific investigation (the "Google CIDs"). *See id.* ¶¶ 3, 12 (DOJ CIDs to Meta issued May 6, 2020, June 26, 2020, and October 20, 2020). The other three CIDs ("Non-Google CIDs"), and the productions made in response to them, are not relevant to the claims at issue in this action.[1] *See id.* ¶ 3. The Bates ranges for the DOJ Files make clear that the DOJ combined productions from all six CIDs and delivered them as an undifferentiated production to Google in the EDVA Action. *See id.* ¶ 11.[2] The combined volume of all six CIDs was over thirteen million pages. *Id.* ¶ 11.

The Non-Google CID specifications themselves, which describe the documents demanded, illustrate how far afield they were from documents having any bearing on Google, ad tech, or the network bidding agreement ("NBA"). *See id.*, Exs. 2–4 (DOJ CIDs to Meta issued November 26, 2019, January 28, 2020, and May 11, 2020 CIDs). By way of example, documents produced in response to those CIDs relate to a 2019 U.K. Competition and Markets Authority Sector Inquiry (approximately 7,950 pages), a 2018 Australian Competition and Consumer Commission inquiry (approximately 14,060 pages), a 2016 German Federal Cartel Office investigation (approximately 8,620 pages), the FTC's second request in the Instagram merger investigation (approximately 24,770 pages), litigation in *Six4Three, LLC v. Facebook, Inc.* (approximately 1,368,080 pages) and thousands of pages of documents related to the 2012 Instagram and 2014 WhatsApp merger filings in multiple jurisdictions. *See id.* ¶ 7. In fact, the request in the May 11, 2020 Non-Google

---

[1] The Non-Google CIDs were served by the DOJ on Meta on November 26, 2019, January 28, 2020, and May 11, 2020. *See* Patchen Decl. ¶ 3.

[2] The bates ranges for the productions fall into two ranges: FBDOJ000000001 through FBDOJ013066084, and FBDOJGOOG_00000001 through FBDOJGOOG_01494984. The first set of bates ranges FBDOJ000000001 through FBDOJ013066084 start with the November 2019 CID and the second set of bates ranges FBDOJGOOG_00000001through FBDOJGOOG_01494984, containing "GOOG," start with the May 6 CID production. *See* Patchen Decl. ¶ 11.

CID was only a request for the reproduction of documents responsive to an FTC CID issued to Meta in April 2020 as part of the FTC's separate Section 2 investigation of Meta. *See id.*, Ex. 4 (DOJ CID to Meta issued May 11, 2020).

By contrast, the Google CIDs specifically indicate that they were part of a Google investigation. *See id.* ¶ 12. The documents in that Google-specific set total approximately 1.4 million pages. Documents from the Google CIDs have now been produced to the parties multiple times over, including already in this litigation.

### B. Subpoenas Issued to Meta in *Texas et al. v. Google*

State Plaintiffs and Google have served multiple subpoenas on Meta already in this matter, including (1) Google's subpoena to Meta to reproduce materials from the EDVA Action, (2) the State Plaintiffs' subpoena demanding documents and Rule 30(b)(6) corporate testimony, and (3) Google's cross-notice subpoena for Rule 30(b)(6) corporate testimony. The various subpoenas are described below.

#### 1. Google Document Subpoena

On March 29, 2024, Google served Meta with a document subpoena in this case demanding Meta's consent to reproduce (1) documents and data provided to the DOJ concerning **Google's Display Advertising or Ad Tech Products**, including but not limited to, all documents produced in connection with any formal or informal government or regulatory investigation (i.e., the DOJ Files); (2) all documents and data produced to any party in response to a subpoena issued in the EDVA Action, and (3) copies of deposition testimony taken of employees in the same matter. *See id.*, Ex. 8 (Google subpoena to Meta issued March 29, 2024).

Notably, regarding the second category, Google previously served Meta with a subpoena in the EDVA Action ("Google EDVA Subpoena") calling for the production of 24 categories of documents from January 2013 to the present, including documents related to display advertising,

3

ad tech competition, ad buying tools, ad tech research and development, and ad tech investments, along with data files covering bids, impressions, and gross revenue. *Id.*, at Ex. 7 (Google subpoena to Meta issued March 31, 2023). The production by Meta in response to the Google EDVA Subpoena included approximately 40,000 pages. *Id.* ¶ 15.

Regarding the subpoena served by Google in the present case, Meta objected to the production of the first category of materials and informed both Google and the State Plaintiffs that the DOJ Files contain additional materials from Meta that are unrelated to and outside of the scope of Google's advertising or ad tech products. *Id.* ¶ 16. Instead, following negotiations with the State Plaintiffs, Meta agreed to reproduce portions of the DOJ Files relevant to Google's advertising and ad tech products. Meta also agreed to the reproduction in this case of the documents and data produced in response to the Google EDVA Subpoena (the second category of materials requested). Meta further agreed to the reproduction of all of the Meta deposition transcripts in the EDVA Action (the third category of materials requested).

### 2. State Plaintiffs' Document Subpoena

The State Plaintiffs served a separate subpoena on Meta requesting the production of 27 categories of documents and Rule 30(b)(6) corporate testimony. *See id.*, Ex. 9 (State Plaintiffs' subpoena to Meta issued March 29, 2024). Meta timely served the State Plaintiffs with two sets of responses and objections to their subpoena and negotiated the scope of both the Rule 30(b)(6) testimony and the document subpoena. *See id.*, Exs. 11–12 (Objections and Responses served on State Plaintiffs by Meta on April 5 and April 11, 2024). During the negotiations, Meta proposed to produce to the State Plaintiffs three sets of documents it believed were responsive to the subpoena requests. Those sets of documents were:

    i.    Materials responsive to the DOJ's May 6, 2020 CID, including documents relevant to the development, strategy, and implementation of the Google NBA, as well as communications with Google regarding the NBA;

    ii.    Materials responsive to the DOJ's June 2020 CID, including documents related to Meta's advertising technology products; and

    iii.    Materials responsive to Google's non-party subpoena along with the transcripts and exhibits from the two Meta Rule 30(b)(6) depositions in the EDVA Action.

*See id.*, Ex. 14.

As part of its negotiations over the scope of the relevant documents in the DOJ Files, Meta made available underlying Google CIDs for review and shared search terms and custodians for those productions that Meta had originally negotiated with the DOJ. *See id.* At the end of the negotiations, the State Plaintiffs agreed that the sets of documents Meta agreed to reproduce from the DOJ Files would "constitute Meta's complete response to the document subpoena ***with no further supplementation required***." *See id.* Meta then produced over 1.5 million pages of additional documents to the State Plaintiffs in response to their subpoena.³ *See id.* ¶ 23.

---

³ Prior to this litigation, Texas also issued a CID to Meta in October 2020 demanding the production of documents and information covering a six-year span and 27 separate requests for production. *See* Patchen Decl., Ex. 1 (Texas CID to Meta issued October 5, 2020). The categories of documents Texas demanded to be produced in response to that CID included documents related to ad tech products, the Google NBA, competitor analyses and impact studies including but not limited to Google's products, revenue and ad impression transactions, acquisitions of companies and products, various metrics regarding digital advertising and data files. *See id.* In response, Meta produced approximately 1.3 million pages of documents to Texas from the same set of DOJ Files. *See id.* ¶ 5.

### 3.    Rule 30(b)(6) Witness Testimony by Meta

Both the State Plaintiffs and Google demanded that Meta also provide Rule 30(b)(6) testimony on topics including the NBA negotiations, execution, and implementation, Meta's Audience Network, header bidding, ad tech products and the display advertising market. *See id.*, Exs. 10 (Google Cross Notice), 15 (April 24 Correspondence with State Plaintiffs and Google on the Scope of the Deposition Topics). Two witnesses provided Rule 30(b)(6) deposition testimony on behalf of Meta in the present case. Patchen Decl. ¶ 28.

### C.    The Stipulated Order

Despite reaching an agreement on the scope of Meta's required production in this case, Google notified Meta on June 5, 2024, that the parties seek the reproduction of the entirety of the DOJ Files. *See id.*, Ex. 17. And, according to the Stipulated Order, both parties have asserted that the material in the DOJ Files is "relevant and proportional to the parties' claims and defenses." *See* Stipulated Order at 1. Of course, neither party has an interest in protecting Meta's confidential, proprietary, and sensitive information. Meta—who has that interest—disagrees.

The Stipulated Order provides that any "EDVA Non-Party, MDL Party, or MDL Non-Party that wishes to object to the reproduction of its Materials in this case shall seek a protective order from this Court within seven days of Google's service of this Order on it," *see* Dkt. 510, leading to the instant motion.

## II.    LEGAL STANDARD

The Federal Rules of Civil Procedure require that a district court "limit the frequency or extent of discovery otherwise allowed" if the proposed discovery "is outside the scope permitted by Rule 26(b)(1)," if the discovery sought is "unreasonably cumulative or duplicative," or if the party seeking discovery "has had ample opportunity to obtain the information." Fed. R. Civ. P. 26(b)(2)(C).

A protective order is appropriate upon a showing by a non-party from whom discovery is sought that the requested discovery "does not fall within Rule 26(b)(1)'s scope of discovery" or that it "is otherwise objectionable." *Young v. Braum's, Inc.*, No. 5:19CV161-RWS-CMC, 2021 WL 1413128, at *5 (E.D. Tex. Jan. 8, 2021). "The party seeking a protective order must show 'good cause' for its issuance," and "[o]nce good cause is shown, the burden shifts to the party seeking the [discovery] to demonstrate that a protective order would necessarily impair its ability to prosecute or defend its claims." *Uniloc 2017 LLC v. Cardo Systems, Inc.*, No. 2:18-cv-511, 2019 WL 13472203, at *2 (E.D. Tex. May 22, 2019).

### III.   ARGUMENT

There is good cause to grant Meta's motion and prohibit Google's reproduction of the entire DOJ Files. First, the DOJ material that Google intends to reproduce includes information from business transactions and a state court litigation that are each approximately a decade old, as well as information from various foreign investigations—none of which directly involves the subject of this litigation. This information is therefore irrelevant and should not be subject to discovery. Second, allowing Google to proceed with its contemplated production would be unfair and prejudicial to Meta, considering the parties' extensive negotiations with respect to discovery already provided by Meta. Third, Meta has already provided extensive discovery in this case pursuant to subpoenas, negotiations, and agreements with the parties. Additional invasive discovery of confidential Meta information should therefore be barred.

#### A.   The Discovery Sought Is Neither Relevant Nor Proportional

For information to be discoverable, it must be "relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). The vast majority of Meta's information in the DOJ Files—over a million pages of documents—fails this basic requirement.

The operative Fourth Amended Complaint ("FAC") names only Google as a defendant, and it alleges violations of the Sherman Act, various antitrust state laws, and various state laws pertaining to deceptive trade practices related to Google's advertising and ad tech businesses. *See In Re: Google Digital Advert. Antitrust Litig.*, No. 1:21-md-03010-PKC, Dkt. 541 (S.D.N.Y. May 5, 2023). Regarding purported anticompetitive and deceptive conduct, the FAC includes allegations regarding Google's ad server, exchange competition, auctions, header bidding, pricing rules, and Google's "future plans." The FAC alleges anticompetitive effects in a publisher ad server market, exchange market, in-app network market, and in markets for buying ad tools. Regarding deceptive trade practices, the FAC includes allegations regarding reserve price optimization, dynamic revenue share, "Project Bernanke," header bidding, sales of users' personal information, and auction participation.

The confidential materials from Meta that Google intends to produce here include vast amounts of information with no bearing on any of Plaintiffs' claims. For example, the materials at issue include over one million pages from the litigation *Six4Three, LLC v. Facebook, Inc.*, a 2015 California Superior Court lawsuit brought by an app developer after its short-lived app called "Pinkinis," used to identify Facebook photos of users' friends in bikinis, had its access to user data restricted by Facebook. The confidential, irrelevant materials further include thousands of pages relating to merger filings involving Instagram in 2012 and WhatsApp in 2014, and various investigations of Meta by foreign regulators. These confidential materials are unrelated to Google, ad tech, or the network bidding agreement. They are therefore irrelevant, not proportional to the needs of the case, and are outside the scope of discovery. Indeed, none of the parties in the present action have ever attempted to explain why any of the aforementioned materials are relevant to any claim or defense.

Furthermore, Meta's status as a non-party warrants "more consideration" by the Court of the proportionality of the discovery at issue. *See Hoeflein v. Crescent Drilling & Prod., Inc.*, No. SA-19-CV-01194-FB, 2020 WL 2527939, at *2 (W.D. Tex. May 18, 2020) (noting that two subpoenaed companies were "not parties to this lawsuit, and therefore the Court has more consideration for the potential burden of compliance with Plaintiffs' subpoenas," and quashing subpoenas as "not proportional to the needs of the case"); *see also In re Stewart Title Co.*, No. H-09-247, 2009 WL 1708079, at *2 (S.D. Tex. June 17, 2009) (quashing subpoena and noting that where a non-party "would be entrusting the confidentiality of its documents to parties who do not represent its interests," this "lend[s] weight to the arguments for quashing discovery"). It is not proportional to the needs of the case to permit vast amounts of irrelevant and confidential information from a non-party to be produced, especially when Meta has already produced, pursuant to agreement of the parties, reams of documents on the issues actually relevant to the case. The Court should therefore enter a protective order barring Google from producing irrelevant and confidential Meta information. *See* Fed. R. Civ. P. 26(b)(2)(C)(iii) (providing that "the court must limit the frequency or extent of discovery" where "the proposed discovery is outside the scope permitted by Rule 26(b)(1)").

### B.  Allowing Google to Produce Irrelevant, Confidential Meta Information Would Be Unfair and Prejudicial

"Rule 26(c) includes among its express purposes the protection of a 'party or person from annoyance, embarrassment, oppression, or undue burden or expense.'" *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 35 n.21 (1984) (quoting Fed. R. Civ. P. 26(c)) (emphasis added). But Rule 26(c) also protects other interests, including privacy, fairness, and notice. *See id.* ("Although the Rule contains no specific reference to privacy or to other rights or interests that may be implicated, such matters are implicit in the broad purpose and language of the Rule."); *Bavely,*

9

*Trustee of AAA Sports, Inc. v. Panini America, Inc.*, 2023 WL 3686806, at *2 (E.D. Tex. Jan. 27, 2023) (explaining that the district court is "in the best position to weigh fairly the competing needs and interests of parties affected by discovery" when evaluating a motion for protective order). Here, allowing Google to proceed with its contemplated production would be unfair and prejudicial to Meta. The Court should therefore protect Meta's interests as a non-party by prohibiting Google from proceeding with the production.

First, allowing Google to proceed with the contemplated production would be unfair considering Meta's extensive good-faith negotiations with the State Plaintiffs and Google regarding an appropriate scope of production by Meta. The Court should not permit Google to produce—and the State Plaintiffs to obtain—reams of irrelevant confidential information that Meta reasonably believed would not need to be injected into this case.

Second, allowing Google to proceed with the contemplated production would be prejudicial to Meta because Meta had no control of what the DOJ decided to produce in the EDVA Action. Allowing the materials to be reproduced here would perpetuate the dissemination of confidential Meta information in successive litigation without an adequate opportunity by Meta to fully review all of the material at issue, to interpose specific objections against production, and to effectively limit further access to and dissemination of the information.

### C. Google and the State Plaintiffs Have Had Ample Opportunity to Obtain Discovery from Meta

The parties have had ample and multiple opportunities to obtain discovery from Meta in this case. This case already contains the files from the CID the State of Texas issued to Meta in 2020, depositions and transcripts of testimony of four corporate 30(b)(6) witnesses, deposition transcripts of two Meta witnesses taken during the DOJ investigation, and document productions in response to both the Google and State Plaintiff subpoena. Patchen Decl. ¶ 27. Meta, for

example, has produced documents relevant to the rationale, development, negotiation, strategy, and implementation of the NBA, as well as communications with Google regarding the NBA. More broadly, Meta's production included documents related to what the DOJ defined as ad tech and digital advertising. The produced documents relate to Meta's strategy in ad tech since approximately 2016 and include past acquisitions and deprecation of Meta ad tech products. Further, Meta produced documents related to Meta's Audience Network, which is Meta's platform that partners with Google via the Google NBA. These documents relate to Audience Network's strategy, growth, revenue, and partnership opportunities, among other topics. Finally, Meta produced documents discussing broadly its view on competition in the ad tech and digital advertising space. *Id.*

Both Google and the State Plaintiffs also served Meta with subpoenas for Rule 30(b)(6) testimony covering a broad array of topics. Meta negotiated the scope of the subpoenas and reached an agreement on the scope of those topics. *Id.* ¶ 28. Testimony included the origination, development, negotiation, drafting, execution, and terms of the Google NBA, early implementation and operation of the NBA, Meta's understanding of Google's strategy to benefit from its own ad auctions prior to the execution of the NBA, Meta's strategy regarding header bidding, and Audience Network's pricing, features, and capabilities. *Id.*

In sum, Meta has already provided hundreds of thousands of documents and multiple hours of corporate deposition testimony from four 30(b)(6) witnesses between the Texas and EDVA cases covering topics that may be relevant to the allegations in the FAC. Despite this, the parties now seek materials that exceed the scope of their claims and defenses without making anything more than an unsupported, conclusory statement about the content of the files they seek. Neither the State Plaintiffs nor Google challenged the adequacy of Meta's agreed-upon production of this

discovery or pursued a motion to compel. Given the extensive volume of information already provided by Meta to the parties in response to their numerous discovery requests, there is no justification for allowing Google to proceed with producing over a million (irrelevant) pages containing further confidential information. Even if there were some marginally relevant materials or overlapping documents, that still would not justify an end-run around the proper and orderly non-party discovery procedures that both State Plaintiffs and Google have fully employed as to Meta in this case. To require more of Meta, even if Meta does not have to produce the documents itself, would go beyond the scope of Rule 26(b)(2)(C).

## IV.    CONCLUSION

The Court should grant Meta's motion and enter a protective order barring Google from producing any additional materials involving Meta that are covered by the Stipulation and Order for Reproduction of Discovery (Dkt. 510). The reproduction of the portions of the DOJ Files that the parties already subpoenaed and directly negotiated with Meta reasonably meet any non-party discovery obligations.

Dated: June 12, 2024 /s/ *Melissa R. Smith*

Melissa R. Smith
Texas Bar No. 24001351
**GILLAM & SMITH LLP**
303 South Washington Avenue
Marshall, Texas 75670
Telephone: (903) 934-8450
Facsimile: (903) 934-9257
Email: melissa@gillamsmithlaw.com

Andrew T. "Tom" Gorham
Texas Bar No. 24012715
**GILLAM & SMITH LLP**
102 North College Avenue
Tyler, Texas 75702
Tom@gillamsmithlaw.com
Telephone: (903) 934-8450
Facsimile: (903) 934-9257
Email: tom@gillamsmithlaw.com

Kate Patchen (*pro hac vice* application forthcoming)
Michael E. Bowlus
**COVINGTON & BURLING LLP**
Salesforce Tower
415 Mission St., Ste. 5400
San Francisco, CA 94105
kpatchen@cov.com
mbowlus@cov.com
Phone: (415) 591-6000
Fax: (415) 955-6091

*Attorneys for Non-Party Meta Platforms, Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of the foregoing document via the Court's CM/ECF system per Local Rule CV-5(a)(3) this 12th day of June 2024.

*/s/ Melissa R. Smith*
Melissa R. Smith

## CERTIFICATE OF CONFERENCE

The undersigned hereby certifies that non-party Meta Platforms, Inc. ("Meta") complied with the meet and confer requirement in Local Rule CV-7(h) prior to filing this opposed motion. Counsel for Meta (Tom Gorham, Kate Patchen, and Michael Bowlus) conferred telephonically with counsel for defendant Google, LLC (Bradley Justus and Neelesh Moorthy) on June 11 and June 12, 2024. Meta corresponded with counsel for Plaintiffs (Marc Collier) via email on June 11, 2024, and Plaintiffs' counsel indicated that Plaintiffs oppose the requested relief. Meta requested a telephonic meet and confer with counsel for Plaintiffs on June 12, 2024. Counsel for Plaintiffs did not respond.

*/s/ Melissa R. Smith*
Melissa R. Smith
