# EXHIBIT B

## BEFORE THE UNITED STATES JUDICIAL PANEL
## ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE: DIGITIAL ADVERTISING ANTITRUST LITIGATION | MDL No. 3010 |

## THE PLAINTIFF STATES' MEMORANDUM IN SUPPORT OF REMAND
## TO THE EASTERN DISTRICT OF TEXAS

**TABLE OF CONTENTS**

TABLE OF CONTENTS ...........................................................................................................i

TABLE OF AUTHORITIES ...................................................................................................ii

INTRODUCTION .....................................................................................................................1

BACKGROUND .........................................................................................................................2

ARGUMENT ...............................................................................................................................4

    I.  The Venue Act applies to *Texas v. Google*. ..............................................................4

        a.  The Venue Act applies to the States' lawsuit because it merely changes a procedural rule ...................................................................................................................4

        b.  The Venue Act applies to the States' lawsuit because it deprives the JPML and the transferee court of authority over the case ........................................................7

    II.  Application of the Venue Act to the States' lawsuit requires the Panel to remand the States' action to the Eastern District Of Texas .......................................................9

    III.  In the alternative, the Panel should grant this motion as a matter of discretion, in the interest of judicial economy ............................................................................................10

    IV.  The State Plaintiffs respectfully request that the Panel order expedited briefing and consideration of this motion. ..............................................................................................10

CONCLUSION ..........................................................................................................................11

## TABLE OF AUTHORITIES

**Cases**                Page(s)

*Blaz v. Belfer,*
368 F.3d 501 (5th Cir. 2004) ............................................................................... 5

*Bruner v. United States,*
343 U.S. 112 (1952) ............................................................................................ 8

*Ex parte Collett,*
337 U.S. 55 (1949) ..................................................................................... 1, 6, 7

*Hadlich v. Am. Mail Line,*
82 F. Supp. 562 (N.D. Cal. 1949) ....................................................................... 6

*Hallowell v. Commons,*
239 U.S. 506 (1916) ............................................................................................ 8

*Hughes Aircraft Co. v. U.S. ex rel. Schumer,*
520 U.S. 939 (1997) ........................................................................................ 4, 8

*In re Bridgestone/Firestone, Inc.,*
128 F. Supp. 2d 1196 (S.D. Ind. 2001) .............................................................. 9

*In Re Google Digital Advert. Antitrust Litig.,*
555 F. Supp. 3d 1372 (J.P.M.L. Aug. 8, 2021) .................................................. 2

*In re Google Digital Advert. Antitrust Litig.,*
2022 WL 4226932 (S.D.N.Y. Sept. 13, 2022) ................................................... 2

*In re Roberts,*
178 F.3d 181 (3d Cir.1999) ................................................................................. 9

*Landgraf v. USI Film Prod.,*
511 U.S. 244 (1994) ................................................................................... passim

*Legal Assistance for Vietnamese Asylum Seekers v. Dep't of State, Bureau of Consular Affs.,*
104 F.3d 1349 (D.C. Cir. 1997) .......................................................................... 5

*Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach,*
523 U.S. 26 (1998) .............................................................................................. 9

*Schoen v. Mountain Producers Corp.,*
170 F.2d 707 (3d Cir. 1948) ............................................................................... 6

*Seay v. Kaplan,*
  35 F.R.D. 118 (S.D. Iowa 1964) ....................................................................6

*United States v. Dentsply Int'l, Inc.,*
  190 F.R.D. 140 (D. Del. 1999) ......................................................................3

*United States v. Nat'l City Lines, Inc.,*
  334 U.S. 573 (1948) .......................................................................................1

*United States v. Nat'l City Lines, Inc.,*
  337 U.S. 78 (1949) ....................................................................................1, 7

*Zall v. Standard Ins. Co.,*
  58 F.4th 284 (7th Cir., 2023) .........................................................................5

**Statutes**

15 U.S.C. 12 ...........................................................................................................3

15 U.S.C. 13 ...........................................................................................................3

15 U.S.C. 56 ...........................................................................................................3

28 U.S.C. § 1407(g) .....................................................................................passim

Pub. L. No. 117-328, § 301, 136 Stat. 4459 (2022) .................................... 1, 3, 7

Pub. L. No. 90-296, § 1407(g), 82 Stat. 109 (1968) .......................................1, 3

**Rules**

Fed. R. Civ. P. 86(a) ..............................................................................................5

## INTRODUCTION

For over 50 years, the Multidistrict Litigation Act applied to state attorney general antitrust actions alleging federal antitrust violations. *See* Multidistrict Litigation Act of 1968, Pub. L. No. 90-296, § 1407(g), 82 Stat. 109, 110 (1968). On December 29, 2022, however, President Biden signed into law the State Antitrust Enforcement Venue Act of 2021 (the "Venue Act"). *See* Consolidated Appropriations Act, 2023, Pub. L. No. 117-328, Div. gg, Title III, § 301, 136 Stat. 4459, 5970 (2022). The Venue Act removes state antitrust enforcement actions from the ambit of the Multidistrict Litigation Act. In ratifying the Venue Act, Congress and the President recognized the critical and distinct role that states play in federal antitrust enforcement. *Cf. United States v. Nat'l City Lines*, 334 U.S. 573, 589-90 (1948) (discussing Congress's "declared policy of expediting" enforcement litigation under the federal antitrust laws).

Because the Venue Act applies to the State Plaintiffs' antitrust action against Google, *see The State of Texas, et al. v. Google LLC*, No. 1:21-cv-6841-PKC (S.D.N.Y. 2021), it requires the Panel to remand the States' case. A new law applies to pending litigation when, like the Venue Act, it merely alters a procedural rule. *See Landgraf v. USI Film Prod.*, 511 U.S. 244, 275 (1994); *Ex parte Collett*, 337 U.S. 55, 71 (1949); *United States v. Nat'l City Lines, Inc.*, 337 U.S. 78, 80-82 (1949). The authority to transfer the venue of cases solely for coordinated pretrial proceedings is plainly procedural. The Venue Act therefore divests (1) the United States District Court for the Southern District of New York (the transferee court) of the authority to oversee the States' action, and (2) this Panel of the authority under the Multidistrict Litigation Act to centralize the States' case in an MDL. For these reasons, the States' action must return to its transferor court—the United States District Court for

the Eastern District of Texas—and the Panel should grant the States' motion.[1]

## BACKGROUND

In December 2020, the State of Texas and nine other Plaintiff States[2] sued Google in the Eastern District of Texas, alleging that Google violated federal antitrust laws (as well as state antitrust laws and state deceptive trade practice acts) when it engaged in anticompetitive conduct across various online advertising technology markets.  In May 2021, Google moved this Panel to centralize the States' case with 19 other private antitrust suits that had been filed throughout the country.  The State Plaintiffs opposed this request. Dkt. No. 71. In opposing Google's motion, the State Plaintiffs specifically recognized the possibility of the Venue Act becoming law as a reason not to centralize the State's case: "centralization of the [States' case] could be undone after the [Venue Act] goes into effect, which would create substantial inefficiencies, particularly if the MDL is not in the Eastern District of Texas." *Id.* at pp. 2-3.  This Panel granted Google's request and centralized the States' case and the private suits in the Southern District of New York.  *In Re Google Digital Advert. Antitrust Litig.*, 555 F. Supp. 3d 1372 (J.P.M.L. Aug. 8, 2021).  Google then moved to dismiss all of the States' federal antitrust claims, which Judge Castel denied as to the States' tying, monopolization, and attempted monopolization counts.  *See In re Google Digital Advert. Antitrust Litig.*, 2022 WL 4226932 (S.D.N.Y. Sept. 13, 2022).  Discovery is in its infancy.  It was just a few days ago, for example, that Judge Castel heard oral argument on proposed ESI protocols.  *See In re Digital Advertising Antitrust Litig.*, No. 1:21-md-03010-PKC (S.D.N.Y. 2021) at Dkt. 468 (Feb. 22, 2023).

A few months after the Court rejected Google's motion to dismiss, President Biden signed

---

[1] Attached as exhibit A is the Plaintiff States' affidavit pursuant to JPML Rule 10.3(a)(i) (requiring a motion to remand to be accompanied by "an affidavit reciting whether the movant has requested a suggestion of remand and the judge's response," among other requirements).

[2] Since then, seven additional jurisdictions (6 states and one territory) have joined the suit.

the Venue Act into law.  The Venue Act did two things.  First, it amended 28 U.S.C. § 1407(g) to

read as follows (new language bolded):

> Nothing in this section shall apply to any action in which the United
> States **or a State** is a complainant arising under the antitrust laws.
> "Antitrust laws" as used herein include those acts referred to in the
> Act of October 15, 1914, as amended (38 Stat. 730; 15 U.S.C. 12),
> and also include the Act of June 19, 1936 (49 Stat. 1526; 15 U.S.C.
> 13, 13a, and 13b) and the Act of September 26, 1914, as added March
> 21, 1938 (52 Stat. 116, 117; 15 U.S.C. 56).

*See* Consolidated Appropriations Act, 2023, Pub. L. No. 117-328, Div. gg, Title III, § 301, 136 Stat.

4459, 5970 (2022).  Second, the Venue Act eliminated subsection (h) from § 1407, which had

previously permitted the Panel to "consolidate and transfer with or without the consent of the

parties, for both pretrial purposes and for trial, any action brought under section 4C of the Clayton

Act." *Id*.  The Venue Act therefore amended title 28 of the United States Code to exempt from the

MDL process any state antitrust enforcement action, like the States' action here, which alleges

federal antitrust claims.  In effect, the Venue Act extended to state enforcement actions the same

MDL exemption that federal antitrust enforcement suits have enjoyed since 1968. Letter from

Venue Act Co-Sponsors Senators Klobuchar and Lee and Representatives Cicilline and Buck (July

28, 2021) (aim of Venue Act is "to give federal and state enforcers relative parity—neither federal nor

state governments should be hamstrung in their efforts to halt antitrust violations or protect their

citizens from anticompetitive conduct."); NAAG Letter in Support of Venue Act (June 18, 2021),

("State antitrust enforcement actions should be extended the same protections from transfer as those

brought on behalf of the United States.").  Such a government exemption from MDL proceedings

is "justified by the importance [to] the public of securing relief in antitrust cases as quickly as

possible." *United States v. Dentsply Int'l Inc.*, 190 F.R.D. 140, 144-45 (D. Del. 1999) quoting H.R.

Rep. No. 90-1130, at 5, 8, reprinted in 1968 U.S.C.C.A.N. at 1902, 1905 (quoting letter of Deputy Attorney General Ramsey Clark).

## ARGUMENT

The Venue Act applies to *Texas v. Google* for two independent reasons. First, the Venue Act merely changes a procedural rule—and thus, under binding precedent, must apply to pending cases. *Landgraf*, 511 U.S. at 275. Second, the Venue Act strips the JPML and the transferee court of authority over the States' case. Under binding precedent, statutes that strip a court of its authority to hear a case apply retroactively. *See Hughes Aircraft Co. v. U.S. ex rel. Schumer*, 520 U.S. 939, 951 (1997). After the Panel concludes that the Venue Act applies to *Texas v. Google*, the text of Section 1407(a) requires that the Panel remand the action to its transferor court, the United States District Court for the Eastern District of Texas. *See* 28 U.S.C. § 1407(a).

I. **The Venue Act applies to *Texas v. Google*.**

    a. **The Venue Act applies to the States' lawsuit because it merely changes a procedural rule.**

The Supreme Court has held that "[c]hanges in procedural rules may often be applied in suits arising before their enactment without raising concerns about retroactivity." *Landgraf*, 511 U.S. at 275. In *Landgraf*, the Supreme Court gave a straightforward rationale for retroactive application: parties have "diminished reliance interests in matters of procedure" and "rules of procedure regulate secondary [conduct]" as opposed to "primary conduct" (*i.e.*, conduct that "would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed.") *Id.* at 275, 280. The effect of that "secondary conduct" (whether it cut in the plaintiff's favor or the defendant's favor) is irrelevant. *See id.* at 275 n.28 ("We have upheld intervening procedural changes even if application of the new rule operated

4

to a defendant's disadvantage in the particular case."); *cf.* Fed. R. Civ. P. 86(a) (stating that amendments to the Rules should be applied to pending litigation absent a Supreme Court rule to the contrary, or prejudice to primary conduct). Thus, the inquiry is a narrow and straightforward one: does the new rule affect only procedure (and thus "secondary conduct")? If the answer is yes, then that new rule applies to pending cases.

Subsequent cases have repeatedly affirmed *Landgraf*'s holding that procedural rule changes apply to existing cases. For example, in *Blaz v. Belfer*, the Fifth Circuit applied a law retroactively that permitted "removal and dismissal of certain state law securities class actions." 368 F.3d 501, 502 (5th Cir. 2004). In doing so, the court reasoned that "a class action is a procedural device," and the law in question "provide[d] a procedural framework for the secondary conduct of filing certain state securities claims[.]" *Id.* at 505. The court therefore concluded that applying the law to pending cases would "not raise retroactivity concerns" because "retrospective changes to 'procedural rules'" affect "secondary, rather than primary, conduct." *Id.* (citing *Landgraf*, 511 U.S. at 275). Other circuits have similarly applied *Landgraf*'s holding. *See Zall v. Standard Ins. Co.*, 58 F.4th 284, 292, 296 (7th Cir., 2023) (relying on *Landgraf* to retroactively apply an ERISA amendment that requires plan administrators to "provide [a] claimant, free of charge, with any new or additional evidence" used by the administrator, because the rule was a "new procedural requirement" that "would have been easy" for the claim administrator to follow "without any prejudice to its interests"); *Legal Assistance for Vietnamese Asylum Seekers v. Dep't of State, Bureau of Consular Affs.*, 104 F.3d 1349, 1352 (D.C. Cir. 1997) ("Applying the principles of *Landgraf* to this case, we conclude that [the law at issue] [will] not raise retroactivity concerns" because "plaintiffs are asserting a procedural right" and "do not have a substantive right to any particular process for having their [visa] applications considered.").

As relevant here, a rule governing venue is a paradigmatic procedural rule. In *United States v. National City Lines, Inc.*, the Supreme Court addressed the retroactivity of a statute that permitted the transfer of "any civil action," holding that it permitted retroactive transfer of antitrust cases. 337 U.S. at 80-82; *see also U.S. v. Natl. City Lines*, 80 F. Supp. 734, 738–39 (S.D. Cal. 1948) ("[M]atters of venue and change of venue are, as a rule, mere incidences of procedure. And statutes relating to remedies and procedure operate retrospectively"). In *Ex parte Collett*, the Court reached the very same conclusion, permitting *forum non conveniens* transfers in FELA cases—even though the statute was passed after the plaintiff had filed his suit and the statute was silent as to retroactivity. 337 U.S. at 71. The Court rejected the defendant's arguments against the plaintiff's venue transfer, noting that "[n]o one has a vested right in any given mode of procedure" and holding that the statute was "a remedial provision applicable to pending actions." *Id.* Other cases confirm that a change of venue is procedural. *See Schoen v. Mountain Producers Corp.*, 170 F.2d 707, 714 (3d Cir. 1948) (holding that legislation permitting "a district court [to] transfer any civil action to any other district or division where it might have been brought" was "remedial and purely procedural in character"); *Albemarle Corp. v. AstraZeneca UK Ltd.*, 628 F.3d 643, 650 (4th Cir. 2010) ("The appropriate venue of an action is a procedural matter"); *Seay v. Kaplan*, 35 F.R.D. 118 (S.D. Iowa 1964) (noting that many courts—"including the United States Supreme Court" had held "that venue statutes are procedural matters and that they may upon becoming effective apply to then pending cases.") (collecting cases); *Hadlich v. Am. Mail Line*, 82 F. Supp. 562, 563 (N.D. Cal. 1949) ("Essentially venue is an incidence of procedure. It is a part of an incidence of procedure. It is a part of that body of law which bounds and delineates the forum and the manner and mode of enforcing a litigant's rights. It is distinguishable from and is not within the field of law, known as substantive, which

6

recognizes, creates and defines rights and liabilities and causes of action.").

Here, the Venue Act wrought wholly procedural changes. To understand why, consider two provisions in the Multidistrict Litigation Act. The Multidistrict Litigation Act permits the JPML to transfer certain actions. *See* § 1407(a). After those actions are transferred, it also grants the transferee court authority to "exercise the powers of a district judge in any district for the purpose of conducting pretrial depositions[.]" *See id.* § 1407(b). Both subsections govern procedure: subsection (a) governs venue—something that is paradigmatically procedural, *see Ex parte Collett*, 337 U.S. at 71; *Nat'l City Lines, Inc.*, 337 U.S. at 80-82, and subsection (b) governs the transferee court's authority to conduct ongoing pretrial proceedings. Yet the Venue Act exempted state enforcement actions that alleged federal antitrust violations from both § 1407(a) and § 1407(b). Indeed, its text is unequivocal on this point: "*Nothing in this section*" (i.e., nothing in the Multidistrict Litigation Act) shall apply to any action in which the United States *or a State* is a complainant arising under the antitrust laws." *See* Consolidated Appropriations Act, 2023, Pub. L. No. 117-328, Div. gg, Title III, § 301, 136 Stat. 4459, 5970 (2022) (emphasis added). Thus, as with other statutes that made wholly procedural changes, the Venue Act must apply to the States' pending case. *See Landgraf*, 511 U.S. at 275.

> **b. The Venue Act applies to the States' lawsuit because it deprives the JPML and the transferee court of authority over the case.**

A second, independent reason supports the application of the Venue Act to the States' case: the Venue Act deprives the JPML of authority over the case entirely. This is made clear by an analogous type of statute: those that confer or remove jurisdiction. The Supreme Court has held that statutes that merely affect jurisdiction "regulate the secondary conduct of litigation and not the underlying primary conduct of the parties"—they "affect only *where* a suit may be brought, not *whether*

it may be brought at all." *Hughes*, 520 U.S. at 951.  As a result, these jurisdictional statutes (and their jurisdictional changes) apply retroactively.  *See Hallowell v. Commons*, 239 U.S. 506, 508 (1916) (applying to pending litigation a statutory amendment that removed jurisdiction from the district courts over certain matters related to Indian affairs and giving that jurisdiction instead to the Secretary of the Interior, because the change in jurisdiction "t[ook] away no substantive right, but simply change[d] the tribunal that [was] to hear the case"); *Bruner v. United States*, 343 U.S. 112, 116-17 (1952) ("This rule—that, when a law conferring jurisdiction is repealed without any reservation as to pending cases, all cases fall with the law—has been adhered to consistently by this Court."); *Landgraf*, 511 U.S. at 274 ("Application of a new jurisdictional rule usually takes away no substantive right but simply changes the tribunal that is to hear the case. Present law normally governs in such situations because jurisdictional statutes speak to the power of the court rather than to the rights or obligations of the parties") (internal quotation marks and citation omitted).

Here, the Venue Act is directly analogous to changes in a jurisdictional statute that strips a court of authority to hear a case.  It deprives the JPML of authority to transfer any state enforcement action alleging federal antitrust claims.  *See* 28 U.S.C. § 1407(a).  It also removes the transferee court's authority to "exercise the powers of a district judge . . . for the purpose of conducting pretrial depositions[.]" 28 U.S.C. § 1407(b).  Thus, as with statutes that "confer or oust jurisdiction," the Venue Act "affect[s] only where [antitrust] suit[s] may be brought" and "*which* court shall have [authority] to entertain a particular cause of action[.]" *Hughes*, 520 U.S. at 951.  As a result, the Venue Act "can fairly be said merely to regulate the secondary conduct of litigation," and must therefore apply retroactively.  *See Hallowell*, 239 U.S. at 508; *Bruner*, 343 U.S. at 116-17; *Landgraf*, 511 U.S. at 274.

8

## II.  Application of the Venue Act to the States' lawsuit requires the Panel to remand the States' action to the Eastern District Of Texas.

Section 1407 states that the Panel "shall" remand an action to the transferor court "at or before the conclusion of such pretrial proceedings." 28 U.S.C. § 1407(a).  The Supreme Court has interpreted that language to require the Panel to remand an action to the transferor court once the transferee court's authority over the case has ceased.  In *Lexecon*, the transferee court had issued an order transferring the consolidated actions to itself for the purpose of conducting the trial, not just the pretrial proceedings.  *See Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 36-40 (1998).  The Supreme Court reversed that order because section 1407 "bars recognizing any self-assignment power in a transferee court."  *Id.* at 40.  Once the Court found that the transferee court lacked such power, it required the Panel to remand under §1407.  Indeed, the Court held that §1407(a) placed an affirmative obligation on the Panel to remand the action even though the transferee court had not first issued a suggestion of remand.  *Id.* at 36–37.

The same logic applies to the States' case.  The Venue Act has removed the transferee court's power under section 1407 to conduct pretrial proceedings.  As a result, the Panel "shall" remand the action to the transferor court.  28 U.S.C. § 1407(a).  Although the precise provision of section 1407 that has divested the transferee court of its power over the States' case differs from that in *Lexecon*, the same remedy applies.  The Panel is the only tribunal that can apply the amended section 1407 to the States' case and remand the action to the Eastern District of Texas.  *See In re Bridgestone/Firestone, Inc.*, 128 F. Supp. 2d 1196, 1197 (S.D. Ind. 2001) ("The power to remand a case to the transferor court lies solely with the Panel.") (citing *In re Roberts*, 178 F.3d 181, 183 (3d Cir.1999)).  Section 1407, as amended, requires the Panel to do so.

9

**III.    In the alternative, the Panel should grant this motion as a matter of discretion, in the interest of judicial economy.**

Finally, even if the Panel disagrees with everything the States have argued thus far, it should still exercise its authority to remand the States' action "before the conclusion" of "pretrial proceedings[.]" 28 U.S.C. § 1407(a).  The State of Texas and the other State Plaintiffs would prefer that this action be heard in Texas.  Texas' attorneys, its offices, and its resources are all in Texas—and Texas would, understandably, rather have its lawyers travel to the Eastern District of Texas courthouse in Plano, Texas than fly to and from New York City on the dime of the Texas taxpayers.  If the Panel therefore denies this motion, Texas and the other State Plaintiffs may face a difficult decision.  On the one hand, they could file a new action in the Eastern District of Texas—but then they would have to litigate two substantially similar lawsuits at the same time (one in front of Judge Castel, and the other in front of the Texas federal judge).  This would waste the State Plaintiffs' resources as well as the resources of the federal judiciary.  On the other hand, some states could dismiss their suit in the Southern District of New York and then re-file in the Eastern District of Texas—but not all states may join in the dismissal.  This would, again, create two parallel track lawsuits.  If the Panel grants this motion and remands the States' lawsuit, it will therefore elect the cleanest and most efficient route for the adjudication of the States' claims.

**IV.    The State Plaintiffs respectfully request that the Panel order expedited briefing and consideration of this motion.**

Panel Rule 6.1 generally governs the timing associated with Panel motions.  Rule 6.1(e) vest the Clerk with the discretion to shorten or enlarge the time periods set forth in Rule 6.1 as necessary. The State Plaintiffs respectfully request that the Panel Clerk, in the Clerk's discretion, shorten the time periods in Rule 6.1, and have the Panel consider this motion on an expedited basis.  The State

Plaintiffs' motion raises important considerations as to the disposition of their case and the propriety of its further inclusion in the MDL in light of the Venue Act.

## <u>CONCLUSION</u>

Under the Venue Act, the States' case is no longer subject to centralized pretrial proceedings in the Southern District of New York.  The States respectfully request that the Panel remand their lawsuit to the Eastern District of Texas.  The State Plaintiffs further request that the Clerk shorten the time periods in Rule 6.1, and that the Panel consider this motion on an expedited basis.

February 27, 2023                                                    Respectfully submitted,

/s/ Ashley Keller
Ashley Keller
Admitted Pro Hac Vice
ack@kellerpostman.com
Jason A. Zweig
jaz@kellerpostman.com
Brooke Clason Smith
brooke.smith@kellerpostman.com
150 N. Riverside Plaza, Suite 4100
Chicago, Illinois 60606
(312) 741-5220
Zina Bash
zina.bash@kellerpostman.com
111 Congress Avenue, Suite 500
Austin, TX 78701
(501) 690-0990
KELLER POSTMAN LLC

/s/ Mark Lanier
W. Mark Lanier (*lead counsel*)
Texas Bar No. 11934600
Mark.Lanier@LanierLawFirm.com
Alex J. Brown
Alex.Brown@LanierLawFirm.com
Zeke DeRose III
Zeke.DeRose@LanierLawFirm.com
10940 W. Sam Houston Parkway N. Suite 100
Houston, Texas 77064
Telephone: (713) 659-5200
Facsimile: (713) 659-2204
THE LANIER LAW FIRM, P.C.

*Attorneys for Plaintiff States of Texas, Idaho, Indiana, Louisiana (The Lanier Law Firm only), Mississippi, North Dakota, South Carolina, and South Dakota*

FOR PLAINTIFF STATE OF TEXAS:

KEN PAXTON
Attorney General

*/s/ Shawn E. Cowles*
Brent Webster, First Assistant Attorney General of Texas
Brent.Webster@oag.texas.gov
Grant Dorfman, Deputy First Assistant Attorney General
Grant.Dorfman@oag.texas.gov
Aaron Reitz, Deputy Attorney General for Legal Strategy Aaron.Reitz@oag.texas.gov
Shawn E. Cowles, Deputy Attorney General for Civil Litigation
Shawn.Cowles@oag.texas.gov

James R. Lloyd, Chief, Antitrust Division
James.Lloyd@oag.texas.gov
Trevor Young, Deputy Chief, Antitrust Division
Trevor.Young@oag.texas.gov

**OFFICE OF THE ATTORNEY GENERAL OF TEXAS**

P.O. Box 12548
Austin, TX 78711-2548
(512) 936-1674

*Attorneys for Plaintiff State of Texas*

FOR PLAINTIFF STATE OF ALASKA:


TREG R. TAYLOR
Attorney General


By :     _/s/ Jeff Pickett_
         Jeff Pickett
         Senior Assistant Attorney General, Special Litigation Section
         jeff.pickett@alaska.gov

         *Attorney for Plaintiff State of Alaska*

FOR PLAINTIFF STATE OF ARKANSAS:

TIM GRIFFIN
ATTORNEY GENERAL

By: _____
AMANDA J. WENTZ
Ark. Bar No. 2021066
Assistant Attorney General
Office of the Arkansas Attorney General
323 Center Street, Suite 200
Little Rock, AR 72201
(501) 682-1178
Amanda.Wentz@ArkansasAG.gov

*Attorney for Plaintiff State of Arkansas*

14

FOR PLAINTIFF STATE OF FLORIDA:

ASHLEY MOODY, Attorney General

*/s/ R. Scott Palmer*
R. SCOTT PALMER, Interim Co-Director, Antitrust Division
FL Bar No. 220353
JOHN GUARD, Chief Deputy Attorney General
LEE ISTRAIL, Assistant Attorney General
ANDREW BUTLER, Assistant Attorney General
CHRISTOPHER KNIGHT, Assistant Attorney General

Office of the Attorney General, State of Florida
PL-01 The Capitol
Tallahassee, Florida 32399
Phone: 850-414-3300
Email: scott.palmer@myfloridalegal.com

*Attorneys for Plaintiff State of Florida*

FOR PLAINTIFF STATE OF IDAHO:

RAÚL R. LABRADOR
ATTORNEY GENERAL

*/s/ John K. Olson*
John K. Olson
Acting Division Chief
Consumer Protection Division
Office of the Attorney General
954 W. Jefferson Street, 2nd Floor
P.O. Box 83720
Boise, Idaho 83720-0010
Telephone:   (208)   334-2424
john.olson@ag.idaho.gov

*Attorneys for Plaintiff State of Idaho*

FOR PLAINTIFF STATE OF INDIANA:

THEODORE E. ROKITA
Attorney General

The Office of the Indiana Attorney General

By: _Scott L. Barnhart_____

Scott Barnhart
Chief Counsel and Director of Consumer Protection
Indiana Atty. No. 25474-82
Indiana Government Center South – 5th Fl. 302
W. Washington Street
Indianapolis, IN 46204-2770
Phone: (317) 232-6309
Fax: (317) 232-7979
Email: scott.barnhart@atg.in.gov


Matthew Michaloski
Deputy Attorney General
Indiana Atty. No. 35313-49
Indiana Government Center South – 5th Fl. 302
W. Washington Street
Indianapolis, IN 46204-2770
Phone: (317) 234-1479
Fax: (317) 232-7979
Email: matthew.michaloski@atg.in.gov

*Attorneys for Plaintiff State of Indiana*

FOR PLAINTIFF COMMONWEALTH OF KENTUCKY:

DANIEL CAMERON
Attorney General

J. Christian Lewis
Executive Director of Consumer Protection

J. Christian Lewis, Executive Director of Consumer Protection
Christian.Lewis@ky.gov
Philip R. Heleringer, Deputy Director of Consumer Protection
Philip.Heleringer@ky.gov
Jonathan E. Farmer, Assistant Attorney General
Jonathan.Farmer@ky.gov
Office of the Attorney GeneralCommonwealth of Kentucky
1024 Capital Center Drive, Suite 200
Frankfort, Kentucky 40601
Tel: 502-696-5300

*Attorneys for Commonwealth of Kentucky*

FOR PLAINTIFF STATE OF LOUISIANA:

HON. JEFF LANDRY
ATTORNEY GENERAL, STATE OF LOUISIANA
Michael Dupree
Christopher J. Alderman
1885 N. 3rd Street
Baton Rouge, LA 70802

*s/ James R. Dugan, II_____*
James R. Dugan, II (*pro hac vice*)
TerriAnne Benedetto (*pro hac vice*)
The Dugan Law Firm
365 Canal Street
One Canal Place, Suite 1000
New Orleans, LA 70130
PH:  (504) 648-0180
FX:  (504) 649-0181
EM:  jdugan@dugan-lawfirm.com
        tbenedetto@dugan-lawfirm.com

James Williams
CHEHARDY SHERMAN WILLIAM, LLP
Galleria Boulevard, Suite 1100
Metairie, LA 70001
PH:   (504) 833-5600
FX:   (504) 833-8080
EM:   jmw@chehardy.com

*Attorneys for the State of Louisiana*

FOR PLAINTIFF STATE OF MISSISSIPPI:

LYNN FITCH, ATTORNEY GENERAL
STATE OF MISSISSIPPI

By:     */s/ Hart Martin*
        Hart Martin
        Consumer Protection Division
        Mississippi Attorney General's Office
        Post Office Box 220
        Jackson, Mississippi 39205
        Telephone: 601-359-4223
        Fax: 601-359-4231
        Hart.martin@ago.ms.gov

        *Attorney for Plaintiff State of Mississippi*

FOR PLAINTIFF STATE OF MISSOURI:

ANDREW BAILEY
Attorney General

Amy Haywood@ago.mo.gov
Missouri Attorney General's Office
P.O. Box 899
Jefferson City, Missouri 65102
Tel: 816-889-3090

*Attorneys for Plaintiff State of Missouri*

FOR PLAINTIFF STATE OF MONTANA:

AUSTIN KNUDSEN
Montana Attorney General


*/s/ Rebekah French*
Montana Attorney General's Office
P.O. Box 200151
Helena, MT 59620-0151
Phone: (406) 444-4500
Fax: (406) 442-1894
Rebekah.French@mt.gov

*/s/ Charles J. Cooper*
Charles J. Cooper
ccooper@cooperkirk.com
David H. Thompson
dthompson@cooperkirk.com
Brian W. Barnes
bbarnes@cooperkirk.com
Harold S. Reeves
hreeves@cooperkirk.com
COOPER & KIRK PLLC
1523 New Hampshire Avenue, NW
Washington DC 20036
Phone: (202) 220-9620
Fax: (202) 220-9601

*Attorneys for Plaintiff State of Montana*

FOR PLAINTIFF STATE OF NEVADA:

AARON D. FORD
Attorney General
ERNEST D. FIGUEROA
Consumer Advocate


*/s/ Michelle C. Newman*
Michelle C. Newman, Senior Deputy
Attorney General
mnewman@ag.nv.gov
Lucas J. Tucker (NV Bar No. 10252)
Senior Deputy Attorney General
LTucker@ag.nv.gov
Office of the Nevada Attorney General
100 N. Carson St.
Carson City, Nevada 89701
Tel: (775) 684-1100

*Attorneys for Plaintiff State of Nevada*

FOR PLAINTIFF STATE OF NORTH DAKOTA:


**STATE OF NORTH DAKOTA**
Drew H. Wrigley
Attorney General


By:  */s/ Elin S. Alm*
Parrell D. Grossman, ND ID 04684
Elin S. Alm, ND ID 05924
Assistant Attorneys General
Consumer Protection & Antitrust Division
Office of Attorney General of North Dakota
1720 Burlington Drive, Suite C
Bismarck, ND 58503-7736
(701) 328-5570
(701) 328-5568 (fax)
pgrossman@nd.gov
ealm@nd.gov

*Attorneys for Plaintiff State of North Dakota*

FOR PLAINTIFF COMMONWEALTH OF PUERTO RICO:

*/s/ Domingo Emanuelli-Hernández*
Domingo Emanuelli Hernández
Attorney General
Thaizza Rodríguez Pagán
Assistant Attorney General
PR Bar No. 17177
P.O. Box 9020192
San Juan, Puerto Rico 00902-0192
Tel: (787) 721-2900, ext. 1201, 1204
trodriguez@justicia.pr.gov

Kyle G. Bates
HAUSFELD LLP
600 Montgomery Street, Suite 3200
San Francisco, CA 94111

*Attorneys for Plaintiff Commonwealth of Puerto Rico*

FOR PLAINTIFF STATE OF SOUTH CAROLINA:

ALAN WILSON
Attorney General


*/s/ Mary Frances Jowers*
Mary Frances Jowers
Assistant Deputy Attorney General
Rebecca M. Hartner (S.C. Bar No. 101302)
Assistant Attorney General
W. Jeffrey Young
Chief Deputy Attorney General
C. Havird Jones, Jr.
Senior Assistant Deputy Attorney General
South Carolina Attorney General's Office
P.O. Box 11549
Columbia, South Carolina 29211-1549
Phone: 803-734-3996
Email: mfjowers@scag.gov

Charlie Condon
Charlie Condon Law Firm, LLC
880 Johnnie Dodds Blvd, Suite 1
Mount Pleasant, SC 29464
Phone: 843-884-8146
Email: charlie@charliecondon.com

James R. Dugan, II (*pro hac vice*)
The Dugan Law Firm
365 Canal Street
One Canal Place, Suite 1000
New Orleans, LA 70130
Phone: (504) 648-0180
Email: jdugan@dugan-lawfirm.com


*Attorneys for Plaintiff State of South Carolina*

FOR PLAINTIFF STATE OF SOUTH DAKOTA:

MARTY JACKLEY
Attorney General


*/s/ Jonathan Van Patten*
Jonathan Van Patten
Assistant Attorney General
Office of the Attorney General
1302 E. Highway 14, Suite 1
Pierre, SD 57501
Tel: 605-773-3215
jonathan.vanpatten@state.sd.us

*Attorney for Plaintiff State of South Dakota*

FOR PLAINTIFF STATE OF UTAH:

Sean D. Reyes
Utah Attorney General

*/s/ Marie W.L. Martin*
Marie W.L. Martin
Assistant Attorney General
160 East 300 South, 5th Floor
P.O. Box 140874
Salt Lake City, UT 84114-0872
mwmartin@agutah.gov
Telephone: (801) 538-9600

*Attorneys for Plaintiff State of Utah and as counsel for the Utah Division of Consumer Protection*