# EXHIBIT D

No. 23-910

# In the United States Court of Appeals for the Second Circuit

---

In re Google LLC,

Petitioner.

---

On Petition for Writ of Mandamus
to the United States Judicial Panel on Multidistrict
Litigation

---

## Response to petition for mandamus

---

Brent Webster
First Assistant Attorney General

Lanora C. Pettit
Principal Deputy Solicitor General

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
Fax: (512) 474-2697
Lanora.Pettit@oag.texas.gov

Counsel for Respondents

# Corporate Disclosure Statement

No. 23-910

## In re Google LLC,
*Petitioner*,

As sovereign entities, respondents have no shareholders to be disclosed under Federal Rule of Appellate Procedure 26.1(a).

/s/ Lanora C. Pettit

Lanora C. Pettit
*Counsel of Record for Respondents*

## Statement Regarding Oral Argument

This case calls for the straightforward application of *Ex parte Collett*, 337 U.S. 55 (1949), and *United States v. National City Lines, Inc.*, 337 U.S. 78 (1949), where the Supreme Court squarely held that because "[n]o one has a vested right in any given mode of procedure," changes to venue rules apply to cases pending at the time those rules become effective. *Collett*, 337 U.S. at 71. Because the Judicial Panel on Multi-District Litigation ("JPML") correctly concluded that Google forfeited any attempt to distinguish *Collett* and *National City Lines* by "ma[king] no attempt to address" them,[1] oral argument is unnecessary for the disposition of Google's petition for a writ of mandamus. Should the Court conclude that oral argument would aid in its decisional process, the respondent States request the opportunity to participate.

---

[1] *In re Google Digit. Advert. Antitrust Litig.*, MDL No. 3010 (J.P.M.L. June 5, 2023), ECF No. 250 ("Remand Order") at 3.

# Table of Contents

Page

Corporate Disclosure Statement ...................................................................... i

Statement Regarding Oral Argument ............................................................. ii

Table of Authorities ...................................................................................... iv

Introduction .................................................................................................... 1

Statement of Jurisdiction ............................................................................... 3

Issue Presented ............................................................................................... 3

Statement of the Case .................................................................................... 3

Standard of Review ........................................................................................ 7

Summary of the Argument ............................................................................. 8

Argument ...................................................................................................... 10

    I.    Google Has Not Shown a Clear Entitlement to Mandamus Relief. .......... 10

        A.    The JPML correctly concluded that Congress did not displace ordinary presumptions that the Venue Act applies to pending cases. ...................................................................... 11

            1.    The text of the Venue Act applies to pending cases. .................... 11

            2.    Google's attempt to rewrite the Venue Act through cherry-picked legislative history is unavailing. ........................................ 14

        B.    Under *Landgraf* step two, the JPML correctly concluded that the Venue Act is a procedural rule that applies to pending cases. ..................................................................................... 18

    II.    Google Cannot Show That Mandamus Is Appropriate Under the Circumstances. .................................................................................... 24

Conclusion .................................................................................................... 27

Certificate of Service .................................................................................... 28

Certificate of Compliance ............................................................................ 28

# Table of Authorities

Page(s)

**Cases:**

*Albemarle Corp. v. AstraZeneca UK Ltd.*,
    628 F.3d 643 (4th Cir. 2010) ............................................................... 20

*Am. Int'l Grp., Inc. v. Bank of Am. Corp.*,
    712 F.3d 775 (2d Cir. 2013) ................................................................ 11

*BedRoc Ltd., LLC v. United States*,
    541 U.S. 176 (2004) ............................................................................ 11

*Blaz v. Belfer*,
    368 F.3d 501 (5th Cir. 2004) .............................................................. 19

*Bragdon v. Abbott*,
    524 U.S. 624 (1998) ............................................................................. 2

*Centurion v. Holder*,
    755 F.3d 115 (2d Cir. 2014) ................................................................ 10

*Chavez v. Martinez*,
    538 U.S. 760 (2003) ............................................................................ 20

*Cheney v. U.S. Dist. Ct. for D.C.*,
    542 U.S. 367 (2004) ..................................................................... *passim*

*Coinbase, Inc. v. Bielski*,
    143 S. Ct. 1915 (2023) .......................................................... 9, 21, 26

*Ex parte Collett*,
    337 U.S. 55 (1949) ....................................................................... *passim*

*Connecticut Nat'l Bank v. Germain*,
    503 U.S. 249 (1992) ............................................................................ 14

*In re Cooper Tire & Rubber Co.*,
    568 F.3d 1180 (10th Cir. 2009) ...................................................... 2, 22

*Crane v. Hahlo*,
    258 U.S. 142 (1922) ............................................................................ 23

*In re Depuy Orthopaedics, Inc.*,
    870 F.3d 345 (5th Cir. 2017) ......................................................... 24, 26

*In re Digital Advert. Antitrust Litig.*,
    555 F. Supp. 3d 1372 (J.P.M.L 2021) ............................................... 3, 5

*Edelman v. Lynchburg Coll.*,
    535 U.S. 106 (2002) ............................................................................ 13

*Enter. Mortg. Acceptance Co., LLC, Sec. Litig. v. Enter. Mortg.*
*Acceptance Co.*,
391 F.3d 401 (2d Cir. 2004) ...................................................... 9, 11, 18

*F.T.C. v. Standard Oil Co. of Cal.*,
449 U.S. 232 (1980) ...................................................................... 21

*Ex parte Fahey*,
332 U.S. 258 (1947) ........................................................................ 7

*Food Mktg. Inst. v. Argus Leader Media*,
139 S. Ct. 2356 (2019) ...................................................................15

*Ford Motor Co. v. Ryan*,
182 F.2d 329 (2d Cir. 1950)....................................................... 22-23

*Gemsco, Inc. v. Walling*,
324 U.S. 244 (1945) ........................................................................16

*In re Google Digit. Advert. Antitrust Litig.*,
627 F. Supp. 3d 346 (S.D.N.Y. 2022) ............................................. 5

*In re Google LLC*,
No. 2021-171, 2021 WL 4592280 (Fed. Cir. Oct. 6, 2021) (per
curiam)......................................................................................... 25

*Hadlich v. Am. Mail Line*,
82 F. Supp. 562 (N.D. Cal. 1949)................................................... 20

*Hallowell v. Commons*,
239 U.S. 506 (1916) ................................................................ 17, 21

*Hamdan v. Rumsfeld*,
548 U.S. 557 (2006) ...............................................................*passim*

*Hughes Aircraft Co. v. U.S. ex rel. Schumer*,
520 U.S. 939 (1997) ...................................................................... 12

*Jingrong v. Chinese Anti-Cult World All. Inc.*,
16 F.4th 47 (2d Cir. 2021) .............................................................11

*Lamar Archer & Cofrin, LLP v. Appling*,
138 S. Ct. 1752 (2018) .................................................................. 12

*Landgraf v. USI Film Products*,
511 U.S. 244 (1994) ...............................................................*passim*

*Legal Assistance for Vietnamese Asylum Seekers v. Dep't of State, Bureau*
*of Consular Affairs*,
104 F.3d 1349 (D.C. Cir. 1997)........................................................19

*Lindh v. Murphy*,
   521 U.S. 320 (1997) .............................................................................14, 17, 19

*Martin v. Hadix*,
   527 U.S. 343 (1999) ........................................................................................16

*Martinez v. I.N.S.*,
   523 F.3d 365 (2d Cir. 2008) ..............................................................10, 11, 15

*Maryland v. Soper*,
   270 U.S. 9 (1926) ...........................................................................................24

*Merck & Co. v. Reynolds*,
   559 U.S. 633 (2010) ........................................................................................13

*Milner v. Dep't of Navy*,
   562 U.S. 562 (2011) ........................................................................................15

*Mohawk Indus., Inc. v. Carpenter*,
   558 U.S. 100 (2009) ..................................................................................24, 25

*North Star Steel Co. v. Thomas*,
   515 U.S. 29 (1995) .........................................................................................13

*In re Paxton*,
   60 F.4th 252 (5th Cir. 2023) ..........................................................................24

*Ex parte Peru*,
   318 U.S. 578 (1943) ........................................................................................24

*Ramos v. Town of Vernon*,
   208 F.3d 203, 2000 WL 287698 (2d Cir. 2000).............................................22

*Red Lion Broad. Co. v. FCC*,
   395 U.S. 367 (1969) ........................................................................................15

*Rivers v. Roadway Express, Inc.*,
   511 U.S. 298 (1994) ........................................................................................16

*Russello v. United States*,
   464 U.S. 16 (1983) .........................................................................................17

*Schoen v. Mountain Producers Corp.*,
   170 F.2d 707 (3d Cir. 1948) ...........................................................................20

*Seay v. Kaplan*,
   35 F.R.D. 118 (S.D. Iowa 1964) .....................................................................20

*In re The City of New York*,
   607 F.3d 923 (2d Cir. 2010) .............................................................................8

*T.M. ex rel. A.M. v. Cornwall Cent. Sch. Dist.*,
   752 F.3d 145 (2d Cir. 2014).............................................................................22

*Toibb v. Radloff*,
    501 U.S. 157 (1991) ..........................................................15

*In re TS Tech USA Corp.*,
    551 F.3d 1315 (Fed. Cir. 2008) ...................................... 23

*United States v. Gonzales*,
    520 U.S. 1 (1997) ...............................................................15

*United States v. Krug*,
    868 F.3d 82 (2d Cir. 2017) ............................................. 20

*United States v. Nat'l City Lines, Inc.*,
    80 F. Supp. 734 (S.D. Cal. 1948) ..................................13

*United States v. National City Lines*,
    334 U.S. 573 (1948) ........................................................ 23

*United States v. National City Lines, Inc.*,
    337 U.S. 78 (1949) ..................................................*passim*

*United States v. Schooner Peggy*,
    5 U.S. (1 Cranch.) 103 (1801) .......................................13

*Vill. of Barrington v. Surface Transp. Bd.*,
    636 F.3d 650 (D.C. Cir. 2011) .......................................15

*In re Volkswagen of Am., Inc.*,
    545 F.3d 304 (5th Cir.2008) (en banc) ....................23, 25

*Will v. United States*,
    389 U.S. 90 (1967)...............................................24, 25, 26

*Ysleta del sur Pueblo v. Texas*,
    142 S. Ct. 1929 (2022)......................................................15

*Zall v. Standard Ins. Co.*,
    58 F.4th 284 (7th Cir. 2023) ..........................................19

**Constitutional Provisions, Statutes, and Rules:**

1 U.S.C. § 1 ............................................................................. 12

15 U.S.C.
    § 15(a) ............................................................................ 21

28 U.S.C.:
    § 1292(a)(1)....................................................................22
    § 1404 ............................................................................ 23
    § 1407................................................................................ 4

§ 1407(a) ............................................................................. 9, 26

§ 1407(g) ............................................................................. *passim*

§ 1651(a) ............................................................................. 3

Act of April 29, 1968, Pub. L. No. 90-296, § 1, 82 Stat. 109 ................ 4

Consolidated Appropriations Act, 2023, Pub. L. No. 117-328, Div. GG, Title III,  301, 136 Stat. 4459 (Dec. 29, 2022) ........................... 5

136 Stat. 4459 Title III, § 301 (Dec. 29, 2022) ............................ 12

**Other Authorities:**

168 Cong. Rec. S7328 (daily ed. Dec. 19, 2022) ............................ 18

Antonin Scalia & Bryan A. Garner, *Reading Law: Interpretation of Legal Texts* 266 (2012) ............................................................. *passim*

16 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3935.4 (3d. ed.) .................................................. 9-10, 25

Complaint, *United States v. Google*, No. 1:23-cv-00108 (E.D. Va. Jan. 24, 2023) ........................................................................ 4

*In re: Google Digit. Advert. Antitrust Litig.*, MDL No. 3010 (J.P.M.L. Mar. 22, 2023), ECF No. 229-1 .............................................. 7

*In re Google Digit. Advert. Antitrust Litig.*, MDL No. 3010 (J.P.M.L. June 5, 2023), ECF No. 250 ................................................ *passim*

*In re: Google Digit. Advert. Antitrust Litig.,* MDL No. 3010 (J.P.M.L. Mar. 22, 2023), ECF No. 238 ............................................... 27

Jt. Letter, *In re Digit. Advert. Antitrust Litig.*, No. 1:21-md-03010-PKC (S.D.N.Y. 2021), ECF No. 468 (Feb. 21, 2023) ........................... 5

Letter from Attorney General Phil Weiser, et al., to Sen. Amy Klobuchar (June 18, 2021), https://tinyurl.com/2p8a5c38; ............ 4

Letter from Sen. Amy Klobuchar, et al., to Judge Roslynn R. Mauskopf (July 28, 2021), https://tinyurl.com/rajzhdvd ............... 1, 4, 5, 26

Spencer Weber Waller, *The Past, Present, and Future of Monopolization Remedies*, 76 Antitrust L.J. 11 (2009) .................................... 21

State Antitrust Enforcement Venue Act of 2021, H.R. 3460 and S. 1787, 117th Cong. (2021) ..................................................... 4

# Introduction

This case was always going back to the Eastern District of Texas, and Google has always known it. The only question is when. When read (as it must be) in conjunction with ordinary rules of statutory construction, Congress's amendment to 28 U.S.C. § 1407(g) resolves that question: so that States would not "be hamstrung in their efforts to halt antitrust violations or protect their citizens from anticompetitive conduct,"[2] Congress provided that "[n]othing in [the Multidistrict Litigation statute] shall apply to any action in which . . . a State is a complainant arising under the antitrust laws." 28 U.S.C. § 1407(g). Recognizing that this type of procedural rule creates no retroactivity concerns and respecting the legislative choice to limit its authority, the JPML remanded this case to Texas. Google's effort to undo that decision through the "drastic and extraordinary remed[y]" of a writ of mandamus is entirely without merit. *Collett*, 377 U.S. at 72.

Google acknowledges (at 14) that the JPML applied the correct two-part test from *Landgraf v. USI Film Products*, 511 U.S. 244, 280 (1994). That test requires courts to examine first "whether Congress has expressly prescribed the statute's proper reach," then "whether the new statute would have retroactive effect" such as "impair[ing] rights a party possessed when he acted, increase[ing] a party's liability for past conduct, or impos[ing] new duties with respect to transactions already completed." *Id.* at 280. Here, that analysis was easy: the Supreme Court has already

---

[2] Letter from Sen. Amy Klobuchar, et al., to Judge Roslynn R. Mauskopf (July 28, 2021), https://tinyurl.com/rajzhdvd.

held that because a venue statute is "a remedial provision," changes to such a statute are "applicable to pending actions." *Collett*, 337 U.S. at 71; *see also, e.g.*, *Landgraf*, 511 U.S. at 275 (relying on *Collett* in fashioning its rule). And Google "ma[de] no attempt" to distinguish these cases. Remand Order 3.

Google's belated attempt to develop contrary arguments here turn the law on its head. A writ of mandamus is proper only when the petitioner establishes that his "right to issuance of the writ is 'clear and indisputable,'" and that principles of equity favor the extraordinary remedy. *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 380-81 (2004). On Google's telling (at 10), it is indisputable that because Congress removed a provision that would have made the act "take effect on June 1, 2021," that Congress expressly prescribed the statute not reach cases still pending on January 1, 2023. This is a non-sequitur. Moreover, legislative history Google cites cannot bear the weight placed on it—particularly given that Congress is presumed to have been aware of *Collett* and *National City Lines* when it passed the Venue Act. *See, e.g.*, *Bragdon v. Abbott*, 524 U.S. 624, 648 (1998).

Even if Google could establish a clear right to relief on the merits, it cannot establish that equity favors its requested relief, which must be "appropriate under the circumstances." *Cheney*, 542 U.S. at 380-81. Mandamus relief is inappropriate for many reasons—even apart from the fact that appellate courts do "not use mandamus to hold the district court responsible for failing to address arguments that were not before it." *In re Cooper Tire & Rubber Co.*, 568 F.3d 1180, 1196 (10th Cir. 2009). Perhaps most significant is that in passing the Venue Act, Congress knew it was sacrificing potential efficiencies. Congress did it anyway because of the significant societal

2

costs that inhere in allowing state antitrust-enforcement action to be tied to—and potentially bogged down by—private litigants whose private incentives may not align with the public good.

## Statement of Jurisdiction

Pursuant to the All Writs Act, this Court may entertain a petition for writ of mandamus "in aid of [its own] jurisdiction" or as "agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). Google does not maintain that it seeks a mandamus petition in aid of this Court's jurisdiction in an underlying appeal.

## Issue Presented

Whether Google has demonstrated a clear and indisputable right to mandamus relief where the JPML remanded this case to the Eastern District of Texas based on an amendment to 28 U.S.C. § 1407(g) providing that antitrust actions brought by States are not subject to MDL proceedings.

## Statement of the Case

In December 2020, Plaintiff States filed suit against Google in the Eastern District of Texas, alleging that Google violated federal and state antitrust laws by engaging in anticompetitive conduct across various online advertising technology markets. Many private lawsuits against Google followed on the heels of the Plaintiff States' suit. Facing nearly two dozen efforts to hold it accountable for its misconduct, Google successfully sought to consolidate "19 actions" brought by States or private individuals, which were then "pending in 16 districts" across the country. *In re Digital Advert. Antitrust Litig.*, 555 F. Supp. 3d 1372, 1374 (J.P.M.L 2021) ("Transfer

Order"). Regardless of how this Court rules on the petition, this consolidated action will not include all claims based on Google's anti-competitive behavior: since 1968, Congress has exempted from the multi-district litigation statue "any action in which the United States is a complainant arising under the antitrust laws." Act of April 29, 1968, Pub. L. No. 90-296, § 1, 82 Stat. 109, 110 (codified as amended at 28 U.S.C. § 1407). Pursuant to that exemption, the United States is separately litigating its own claims under the Sherman Act in the Eastern District of Virginia. Complaint, *United States v. Google*, No. 1:23-cv-00108 (E.D. Va. Jan. 24, 2023).

Before this case left Texas, the States informed the JPML that Congress was in the process of extending the United States' antitrust exemption to States. State Antitrust Enforcement Venue Act of 2021, H.R. 3460 and S. 1787, 117th Cong. (2021) (the "Venue Act"). As supporters explained, when transferred, these actions, which are "brought in the public interest," are "typically postponed and may be joined with numerous other lawsuits brought by private plaintiffs."[3] The result is often delay in States' ability to "protect consumers, workers, and competition" as States "need to coordinate—and possibly consolidate—with slower-moving private actions." Klobuchar, *supra* n.1, at 1.[4] The JPML acknowledged this legislative effort, and agreed that the "proposed legislation, if enacted would effectuate" the States'

---

[3] Letter from Attorney General Phil Weiser, et al., to Sen. Amy Klobuchar (June 18, 2021), https://tinyurl.com/2p8a5c38; *see also* Klobuchar, *supra* n.1.

[4] For the avoidance of doubt, the States do not think the Court needs to look at these legislative materials to resolve the straightforward issue of statutory construction. *Infra* Part I.A.1. They are included here to give context to those cherry-picked aspects of the statute's history on which Google repeatedly relies.

"desired outcome"—that is for the case to remain in the Eastern District of Texas. *Transfer Order*, 555 F. Supp. 3d at 1379. But, the JPML concluded, it "must apply the law currently in effect, without speculating about what future legislation might be passed." *Id.* at 1379. On this basis, the case was transferred.

In the nearly two years since transfer, this case has proven the fears of Congress right: the States' action has been encumbered by "slower-moving private actions" to the detriment of the States' citizens. Klobuchar, *supra* n.1, at 1. It was over a year from the time the case arrived in the Southern District of New York before the court denied Google's request to dismiss the States' tying, monopolization, and attempted monopolization counts. *See In re Google Digit. Advert. Antitrust Litig.*, 627 F. Supp. 3d 346 (S.D.N.Y. 2022). And when the States' sought transfer of this case back to the Eastern District of Texas nearly six months later, discovery remained in its infancy. S*ee* Jt. Letter, *In re Digit. Advert. Antitrust Litig.*, No. 1:21-md-03010-PKC (S.D.N.Y. 2021), ECF No. 468 (Feb. 21, 2023).

Congress has now passed a revised version of the Venue Act as part of the Consolidated Appropriations Act of 2023. Consolidated Appropriations Act, 2023, Pub. L. No. 117-328, Div. GG, Title III, § 301, 136 Stat. 4459, 5970 (Dec. 29, 2022). That law amended 28 U.S.C. § 1407(g)—which provides for transfer to MDL proceedings—to state: "Nothing in this section shall apply to any action in which the United States *or a State* is a complainant arising under the antitrust laws." 28 U.S.C. § 1407(g) (emphasis added). Section 1407(g) thus exempts antitrust actions filed by states from MDL proceedings in the same way that it has exempted such actions filed by the federal government since 1968.

Relying on this provision, the States sought to transfer this case back to the Eastern District of Texas. Remand Order, *In Re: Google Digit. Advert. Antitrust Litig.*, MDL No. 3010, ECF No. 250. As it did when it made its original transfer decision, the JPML looked to then-existing law. *Id.* This time, recognizing that Congress had changed the procedural rules applicable to multi-district litigation, the JPML held "that the recent amendment to Section 1407(g) applies to pending state antitrust enforcement actions and, absent a state's waiver of its venue rights, the Panel must grant the motion for remand." *Id.* at 2.

In reaching its decision that this case should return to Texas now rather than at the conclusion of pre-trial proceedings, the JPML stated that "*Landgraf* provides the well-settled framework for determining the reach of a newly enacted statute." *Id.* The JPML identified *Landgraf*'s two-part test for determining whether a law could be retroactively applied: "(1) does the statute contain an express command as to its retroactive application; and (2) if the answer is no, would application of the new statue to the action have a genuinely retroactive effect." *Id.* (internal quotation marks omitted). And it noted that though "there is a long-established 'presumption against retroactive legislation,'" the Supreme Court has "emphasized ... that '[c]hanges in procedural rules may often be applied in suits arising before their enactment without raising concerns about retroactivity.'" *Id.* (quoting *Landgraf*, 511 U.S. at 265).

Applying *Landgraf*, the JPML first held that "the express language of the Section 1407(g) amendment does not provide an answer to its temporal reach." *Id.* Then, moving to the second step of the *Landgraf* analysis, the JPML concluded that

"[t]he Section 1407(g) amendment is a plainly procedural rule" because "Section 1407 is in the nature of a venue provision for pretrial proceedings," "Congress labeled the Section 1407(g) amendment . . . a 'venue' provision," and "[t]he venue of an action cannot be characterized as impairing rights that a party had when it acted, increasing a party's liability for past conduct, or imposing new duties." *Id.* at 3. The JPML reasoned that "*Landgraf* leaves no doubt on this matter," and it rejected "Google's reliance on legislative history to support its prospective-only interpretation of the amendment" as "unpersuasive." *Id.* "Having determined that the amendment to Section 1407(g) applies to state antitrust enforcement actions pending in MDLs" the JPML found "that remand [to the Eastern District of Texas] is required." *Id.* As a result, the JPML did not reach alternative grounds the States asserted for transfer. *In re: Google Digit. Advert. Antitrust Litig.,* Memorandum in Support of Remand to the Eastern District of Texas, ECF No. 229-1. Google subsequently sought and obtained a temporary administrative stay from the JPML and brought its petition for a writ of mandamus in this Court.

## STANDARD OF REVIEW

"As extraordinary remedies," writs of mandamus or prohibition against a judge "are reserved for really extraordinary causes." *Collett*, 337 U.S. at 72 (quoting *Ex parte Fahey*, 332 U.S. 258, 259 (1947)). As petitioner, it is Google's burden to show that its "right to issuance of the writ is 'clear and indisputable,'" and that it "ha[s] no other adequate means to attain the relief [it] desires." *Cheney*, 542 U.S. at 380-81. Moreover, because mandamus "is one of the most potent weapons in the judicial arsenal," the Supreme Court has explained, "even if [those] two prerequisites have

7

been met, the issuing court, in the exercise of its discretion, must be satisfied that the writ is appropriate under the circumstances." *Id.*; *In re The City of New York*, 607 F.3d 923, 932-33 (2d Cir. 2010) (quoting *Cheney*, 542 U.S. 380-81, as establishing a three-part test).

## SUMMARY OF THE ARGUMENT

Google is not entitled to the extraordinary relief it seeks because it has demonstrated neither that its entitlement to relief is clear and indisputable, nor that mandamus is appropriate under these circumstances.

**I.**  Google's petition for a writ of mandamus must be denied at the outset because the JPML correctly identified existing Supreme Court precedent that changes to venue may be applied to pending cases. *See National City Lines*, 337 U.S. at 78; *Collett*, 337 U.S. at 71. But even if it were writing on a blank slate, the JPML correctly applied both of *Landgraf*'s two steps to conclude that, as a procedural rule, the Venue Act "takes away no substantive right but simply changes the tribunal that is to hear the case." *Hamdan v. Rumsfeld*, 548 U.S. 557, 577 (2006).

*First*, the text of the Venue Act requires that it apply in pending cases, particularly when read in the light of ordinary canons of statutory construction. Section 1407(g) states that "[n]othing in this section shall apply to *any action* in which the United States or a State *is* a complainant arising under the antitrust laws." 28 U.S.C. § 1407(g) (emphasis added). That plain text controls here because the States are complaining parties in a case arising under the antitrust laws, and thus the amended statute "shall apply" to them. *Id.* That conclusion is reinforced by ordinary canons of construction. For example, the pending-action canon, which explains that statutes

governing in-court behavior are presumed to apply to any case that is then in court when they take effect. *See* Antonin Scalia & Bryan A. Garner, *Reading Law: Interpretation of Legal Texts* 266 (2012). But even "[if] the statute is ambiguous or contain[ed] no express command," Google would not have a clear entitlement to relief; "the court proceeds to the second stage of the *Landgraf* test." *Enter. Mortg. Acceptance Co., LLC, Sec. Litig. v. Enter. Mortg. Acceptance Co.*, 391 F.3d 401, 406 (2d Cir. 2004).

*Second*, the JPML correctly concluded that, because the Venue Act is a procedural provision, applying it to pending litigation does not "impair rights [Google] possessed when [it] acted, increase [its] liability for past conduct, or impose new duties with respect to transactions already completed." *Landgraff*, 511 U.S. at 280. Put another way: the Venue Act may make it more expensive for Google to defend its anticompetitive conduct, but it does not impose new legal consequences on that conduct. *Cf. Coinbase, Inc. v. Bielski*, 143 S. Ct. 1915, 1922-23 (2023). It therefore presents no retroactivity problem.

**II.** Even if Google had met its burden to show a clear entitlement to relief on the merits, it cannot show "that the writ is appropriate under the circumstances." *Cheney*, 542 U.S. at 381. Although rarely exercised, the JPML always had the discretion to send the case back to Texas. 28 U.S.C. § 1407(a). And it had the obligation to do so before trial. *Id.* As a result, what Google really seeks is an instruction that remand was an abuse of discretion based on its assessment of how the Venue Act impacted the JPML's own organic statute. Superintending the district court's discretionary transfer decisions is never a proper use of mandamus. 16 Charles Alan Wright

9

& Arthur R. Miller, Federal Practice and Procedure § 3935.4 (3d. ed.). But it is particularly inappropriate where the unique posture of this case means the Court's decision will provide no meaningful forward-looking guidance to the JPML—only a ticket for Google to avoid Congress's decision that state antitrust actions should proceed outside the multi-district framework.

**ARGUMENT**

## I.  Google Has Not Shown a Clear Entitlement to Mandamus Relief.

To start, Google is not entitled to the "drastic and extraordinary remed[y]" of a writ of mandamus, *Collett*, 377 U.S. at 72, because it has not shown that the JPML committed any "clear and indisputable" error in applying *Landgraf*, *Cheney*, 542 U.S. at 381. Although the law applies a presumption against retroactivity, courts engage in a two-part analysis to determine whether a law applies retroactively. *Martinez v. I.N.S.*, 523 F.3d 365, 370 (2d Cir. 2008). *First*, courts look for any "express command" from Congress that addresses the amendment's temporal scope. *Landgraf*, 511 U.S. at 280. If one exists, "the inquiry is at an end." *Centurion v. Holder*, 755 F.3d 115, 121 (2d Cir. 2014). *Second*, where no clear, express command exists, courts inquire whether application would "impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." *Landgraf*, 511 U.S. at 280; *see also Martinez*, 523 F.3d at 372. Although Google seems at times to try to muddy the waters by conflating different aspects of the inquiry, it has not shown that the JPML misapplied this

standard—let alone that any error was "clear and indisputable." *Cheney*, 542 U.S. at 381.

## A. The JPML correctly concluded that Congress did not displace ordinary presumptions that the Venue Act applies to pending cases.

### 1. The text of the Venue Act applies to pending cases.

To the extent that the JPML made an error, it favored Google: the panel should have stopped at *Landgraf* step one because the plain text of the Venue Act applies to the States' action—particularly when read in the light of ordinary canons of construction. The "critical inquiry at step one of *Landgraf* is 'whether Congress has expressly prescribed the statute's proper reach.'" *Martinez*, 523 F.3d at 372 (quoting *Landgraf*, 511 U.S. at 280). This analysis "begins with an examination of the text" and applies ordinary interpretive tools. *Id.* at 370, 372. Only after applying those tools, "[if] the statute is ambiguous," will the Court "proceed[] to the second stage of the *Landgraf* test." *Enter. Mortg. Acceptance Co.*, 391 F.3d at 406.

Statutory construction "begins with the statutory text." *BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183 (2004). Where, as here, "the text is unambiguous," it "ends there as well." *Id.*; *see also Jingrong v. Chinese Anti-Cult World All. Inc.*, 16 F.4th 47, 57 (2d Cir. 2021). In determining whether the text is ambiguous, the Court will look at syntactic and contextual clues—not just individual terms and phrases on the paper. Scalia & Garner, *supra*, p.33. For example, Congress is presumed to understand and apply the rules of English grammar. *Am. Int'l Grp., Inc. v. Bank of Am. Corp.*, 712 F.3d 775, 781-83 (2d Cir. 2013). It is also "presumed to be aware" of how

the courts construe particular words and phrases. *Lamar Archer & Cofrin, LLP v. Appling*, 138 S. Ct. 1752, 1762 (2018).

Under the plain text of the Venue Act, it applies to the States' request for remand. *See* Consolidated Appropriations Act, 2023, Pub. L. No. 117-328, Div. GG, Title III, § 301, 136 Stat. 4459, 5970 (Dec. 29, 2022). The full text of section 1407(g) now reads:

> Nothing in this section shall apply to any action in which the United States **or a State** is a complainant arising under the antitrust laws. "Antitrust laws" as used herein include those acts referred to in the Act of October 15, 1914, as amended (38 Stat. 730; 15 U.S.C. 12), and also include the Act of June 19, 1936 (49 Stat. 1526; 15 U.S.C. 13, 13a, and 13b) and the Act of September 26, 1914, as added March 21, 1938 (52 Stat. 116, 117; 15 U.S.C. 56).

28 U.S.C. 1407(g) (emphasizing the addition from the Venue Act). Thus, following the Venue Act, the statute creating and empowering the JPML states that "[n]othing in this section *shall apply* to any action in which . . . a State *is* a complainant arising under the antitrust laws." *Id.* (emphasis added). The use of "is" in the Venue Act applies to "any action" in which a State is presently an antitrust complainant—including this one. *See* 1 U.S.C. § 1 (explaining how to interpret use of the present tense). Section 1407(g) therefore prevents the MDL statute from applying to the States because they are currently complainants.[5]

---

[5] Indeed, as the States explained to the JPML, because section 1407 is the provision that empowers the JPML, the fact that section 1407(g) speaks in the present tense also deprives the JPML of jurisdiction. Resp. in Opposition, ECF No. 71-1 at 7-8. The district court never reached the issue, but changes to jurisdictional rules, like changes to venue provisions, apply to pending cases. *E.g.*, *Hughes Aircraft Co. v. U.S. ex rel. Schumer*, 520 U.S. 939, 951 (1997).

This conclusion is buttressed by at least two related canons of statutory construction. *First*, Congress legislates against the backdrop of common law. *Merck & Co. v. Reynolds*, 559 U.S. 633, 648 (2010). And, under the so-called pending-action canon, the general common-law rule has long been that statutory changes are presumed to apply in pending litigation—even after the judgment but before final resolution of an appeal. Scalia & Garner, *supra* p. 266 (citing *inter alia United States v. Schooner Peggy*, 5 U.S. (1 Cranch.) 103, 110 (1801) (Marshall, C.J.)).

*Second*, although a retroactive effect is an exception to the pending-action canon, under the prior-construction canon, Congress is "presumed to have known" of—and expressed "tacit congressional approval of"—settled judicial interpretations of existing statutes. *Edelman v. Lynchburg Coll.*, 535 U.S. 106, 117-18 (2002); *see also, e.g.*, *North Star Steel Co. v. Thomas*, 515 U.S. 29, 34 (1995). And the Supreme Court has repeatedly held that venue provisions do not create a retroactive effect. For example, in *National City Lines*, the Supreme Court addressed the retroactivity of a statute that permitted the transfer of "any civil action," holding that it permitted retroactive transfer of antitrust cases. 337 U.S. at 80-82; *see also United States v. Nat'l City Lines, Inc.*, 80 F. Supp. 734, 738-39 (S.D. Cal. 1948). In *Ex parte Collett*, the Court reached the same conclusion, permitting forum non conveniens transfers in Federal Employees' Liability Act cases—even though the statute was passed after the plaintiff had filed his suit and the statute was silent as to retroactivity. 337 U.S. at 71. The Court rejected the defendant's arguments against the plaintiff's venue transfer, noting that "[n]o one has a vested right in any given mode of procedure"

and holding that the statute was "a remedial provision applicable to pending actions." *Id.*

Taken together, these canons of construction create a presumption that Congress intends a venue provision to apply to all pending cases unless it says otherwise. Or, to quote Google's own authority (cited at 4, 16, 22), if a new law is "merely procedural in the strict sense (say, setting deadlines for filing and disposition)," unless Congress says otherwise, "the natural expectation would be that it would apply to pending cases." *Lindh v. Murphy*, 521 U.S. 320, 327 (1997). And Google acknowledges (Motion to Expedite at 3), Congress did not say otherwise. To the contrary, it spoke in the present tense about "any case" involving a state antitrust enforcement proceeding. Because courts "must presume that a legislature says in a statute what it means and means in a statute what it says there," *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253-254 (1992), this Court should conclude that section 1407(g) applies to *any* state antitrust enforcement action to which a State is presently a party.

### 2. Google's attempt to rewrite the Venue Act through cherry-picked legislative history is unavailing.

As before the JPML, Google attempts (at 16-23) to avoid this straightforward conclusion by pointing to legislative history and criticizing the JPML (at 16) for "only looking at the enacted text of the Venue Act." Specifically, Google asserts that because Congress considered but removed additional language that would have expressly made the Venue Act apply to pending cases, it must have expressly determined that the Venue Act should not apply to pending cases. That criticism is in the nature of a confession given that the entire point of *Landgraf* step one is to ask

14

whether the text of the Venue Act "expressly prescribed" its reach. *Martinez*, 523 F.3d at 372 (quoting *Landgraf*, 511 U.S. at 280). But even apart from that, the JPML correctly rejected this argument as "unpersuasive"—again for at least three related reasons.

*First*, Google conflates legislative and statutory history. *Statutory* history involves changes to formally adopted legislation—that is the formally adopted "statutes repealed or amended by the statute under consideration." Scalia and Garner, *supra* p. 256. Because even repealed statutes at one point represented the will of the people's representatives, statutory history can be useful because it "form[s] part of the context of the statute." *Id.* By contrast "inferences of legislative intent from unenacted legislation" of the type Google seeks are deemed "unreliable." *Vill. of Barrington v. Surface Transp. Bd.*, 636 F.3d 650, 666 (D.C. Cir. 2011); *see also, e.g., Red Lion Broad. Co. v. FCC*, 395 U.S. 367, 381-82 n.11 (1969) ("[U]nsuccessful attempts at legislation are not the best of guides to legislative intent."); *accord Ysleta del sur Pueblo v. Texas*, 142 S. Ct. 1929, 1951-52 (2022) (Roberts, C.J., dissenting) (criticizing the majority for *not* giving greater weight to a statute's drafting history).

*Second*, for decades, it has been a bedrock principle of our law that where there is a "straightforward statutory command, there is no reason to resort to legislative history." *See also, e.g.*, *United States v. Gonzales*, 520 U.S. 1, 6 (1997); *Toibb v. Radloff*, 501 U.S. 157, 162 (1991). The Supreme Court has repeatedly stated that "[e]ven those of us who sometimes consult legislative history will never allow it to be used to muddy the meaning of clear statutory language" and disapproved the use of legislative history. *Food Mktg. Inst. v. Argus Leader Media*, 139 S. Ct. 2356, 2364 (2019)

(internal quotation marks omitted); *Milner v. Dep't of Navy*, 562 U.S. 562, 572 (2011) (same).

Determining whether a new law would apply retroactively is no different. To the contrary, the Supreme Court has "note[d] . . . reliance on . . . legislative history over-states the inferences that can be drawn from an ambiguous act of legislative draft-ing." *Martin v. Hadix*, 527 U.S. 343, 357 (1999). "[T]here is no need to refer to the legislative history where statutory language is clear." *Collett*, 337 U.S. at 61. And "'[t]he plain words and meaning of a statute cannot be overcome by a legislative history which through strained processes of deduction from events of wholly ambig-uous significance, may furnish dubious bases for inference in every direction.'" *Id.* (quoting *Gemsco, Inc. v. Walling*, 324 U.S. 244, 260 (1945)).

Google's cases are not to the contrary. For example, Google repeatedly cites (at 19, 20, 21, 22) *Rivers v. Roadway Express, Inc.*, 511 U.S. 298 (1994). But the statute at issue there "ha[d] the effect not only of increasing liability but also of establishing a new standard of conduct." *Id.* at 304. "Accordingly, for reasons [the Court] stated in *Landgraf*, the important new legal obligations" the statute "impose[d] br[ought] it within the class of laws that are presumptively prospective." *Id.* Because the Court could not find "any clear expression of congressional intent to reach cases that arose before [the provision's] enactment," it could not be applied retroactively—precisely because it was a substantive rather than a procedural statute. *Id.* at 307.

Equally off-base is Google's assertion (at 19) that *Hamdan v. Rumsfeld*, 548 U.S. 557 (2006) shows that Congress's deletion of a retroactivity provision from the Venue Act means that it must have intended the Act would not apply to pending

16

cases. In *Hamdan*, the relevant statute contained express retroactivity provisions in some sections but not others. *Hamdan*, 548 U.S. at 578-80. Expressly distinguishing the "natural expectation" that procedural statutes "apply to pending cases" discussed in *Lindh*, 521 U.S. at 327, it was this differential treatment that allowed a "negative inference [to] be drawn," *Hamdan*, 548 U.S. at 578. That is, rather than standing for the general proposition that deleted language informs adopted language, *Hamdan* merely reiterates the principle that "where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Id.* (cleaned up) (quoting *Russello v. United States*, 464 U.S. 16, 23 (1983)). And *Hamdan* expressly reaffirmed that where a law "'simply changes the tribunal that is to hear the case'" "no retroactivity problem arises." *Id.* at 577 (quoting *Hallowell v. Commons*, 239 U.S. 506, 508 (1916)).

*Third*, the history of the Venue Act itself shows why the type of analysis that Google seeks is fraught with peril. As Google acknowledges (at 10), the original proposed language was *not* that the Venue Act apply to all cases pending at the time the bill went into effect: it stated that "'[t]his Act and the amendments made by this Act, *shall take effect on June 1, 2021*,' a date that was *a year prior* to the bill's introduction," Pet. 10 (quoting S. 1787, 117th Cong. (as introduced, May 24, 2022) (emphasis in Google's Brief))—and eighteen months before it became effective. Even for new procedural rules, "the time of final judgment is the dividing line between prospective and retroactive effect." Scalia & Garner, *supra*, p. 266. Congress could have meant to exclude cases still pending in 2023, or it could have just wanted to

avoid calling into question any cases that reached judgment in the intervening time. That Congress also considered making the Venue Act explicit about applying to pending cases tells us little, 168 Cong. Rec. S7328, S7752 (daily ed. Dec. 19, 2022), because as Google admits (at 11), it did so only "[a]fter passing both the House and Senate," when the Venue Act went from being a stand-alone bill to being part of the Consolidated Appropriations Act. Rejection at that stage may say more about parliamentary procedure than what anyone in Congress intended the Venue Act to do. Or, as the JPML put it, "such omissions may reflect a political compromise and does not tell us precisely where the compromise was struck." Remand Order 3 (quotation marks omitted).

* * *

In sum, Google concedes (Motion to Expedite at 3) that the Venue Act "provision contains no language" addressing retroactivity. Given background principles of federal law, that omission combined with the use of the present tense in describing the effect of the Venue Act should be interpreted as applying that provision to pending litigation under *Landgraf* step one. 511 U.S. at 280. But, at most, it means that Congress was silent on the question, and the JPML did not clearly err by proceeding to *Landgraf* step two. Indeed, that is what this Court's precedent requires in such a circumstance. *Enter. Mortg. Acceptance Co.*, 391 F.3d at 406.

### B. Under *Landgraf* step two, the JPML correctly concluded that the Venue Act is a procedural rule that applies to pending cases.

Step two of the *Landgraf* inquiry requires courts to address "whether the new statute would have retroactive effect." 511 U.S. at 280. That is, courts assess

18

whether a statute "would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." *Id.* at 280. The JPML dutifully applied this precedent when it concluded that "[t]he Section 1407(g) amendment is plainly procedural." Remand Order 3. And its conclusion was entirely correct for many of the same reasons that would have allowed the panel to resolve this case under *Landgraf* step one.

1.    As discussed above, congressional silence in a procedural statute speaks volumes as "the natural expectation would be that [such statutes] would apply to pending cases." *Lindh*, 521 U.S. at 327 (citing *Landgraf*, 511 U.S. at 275). That is because whether a statute has an improper retroactive effect turns on whether the "new provision attaches new legal consequences" to primary conduct "completed before its enactment," and thus engendering reasonable reliance interests. *Landgraf*, 511 U.S. at 269-270. "Changes in procedural rules may often be applied in suits arising before their enactment without raising concerns about retroactivity," *id.* at 275, precisely because parties have "diminished reliance interests in matters of procedure" and "rules of procedure regulate secondary [conduct]" as opposed to "primary conduct." *Id.* at 275, 280; *see also Hamdan*, 548 U.S. at 577; *Zall v. Standard Ins. Co.*, 58 F.4th 284, 292, 296 (7th Cir. 2023); *Blaz v. Belfer*, 368 F.3d 501, 502 (5th Cir. 2004); *Legal Assistance for Vietnamese Asylum Seekers v. Dep't of State, Bureau of Consular Affairs*, 104 F.3d 1349, 1352 (D.C. Cir. 1997).

True, some procedural rules *do* affect primary conduct. For example, the attorney-client privilege governs secondary conduct—namely, what can be admitted into evidence—but its existence is justified by its effect on primary conduct—namely,

encouraging people to talk to their lawyers before they need to go to court. *E.g.*, *United States v. Krug*, 868 F.3d 82, 86 (2d Cir. 2017). Similarly, the exclusionary rule incentivizes proper primary conduct by governmental actors by preventing the government from entering evidence obtained in violation of an individual's civil rights. *Cf. Chavez v. Martinez*, 538 U.S. 760, 770 (2003) ("[W]e have created prophylactic rules designed to safeguard the core constitutional right protected by the Self–Incrimination Clause."). Where procedural rules have such effect on primary conduct, the States acknowledge that changes to those rules might have retroactive effect.

But, as discussed above (at 13-14), the Supreme Court held long before the Venue Act that venue provisions are *not* the type of procedural rules that raise retroactivity concerns due to their effect on primary conduct. *See National City Lines*, 337 U.S. 78; *Collett*, 337 U.S. 71. Lower courts have followed suit and confirmed that because venue provisions are "remedial and purely procedural in character," they can be applied in pending litigation. *Schoen v. Mountain Producers Corp.*, 170 F.2d 707, 714 (3d Cir. 1948); *see also, e.g.*, *Albemarle Corp. v. AstraZeneca UK Ltd.*, 628 F.3d 643, 650 (4th Cir. 2010) ("The appropriate venue of an action is a procedural matter."); *Seay v. Kaplan*, 35 F.R.D. 118, 119 (S.D. Iowa 1964); *Hadlich v. Am. Mail Line*, 82 F. Supp. 562, 563 (N.D. Cal. 1949).

Because the effect on "secondary conduct" is more or less irrelevant to the retroactivity analysis, rules like venue provisions that affect only secondary conduct can be applied in pending cases "even if application of the new rule operated to a defendant's disadvantage in the particular case." *See Landgraf*, 511 U.S. at 275 n.28. This conclusion is entirely consistent with other areas of law in which the Supreme Court

has recognized that "litigation expense, even substantial and unrecoupable cost, does not constitute irreparable injury." *Coinbase*, 143 S. Ct. at 1923 (quoting *F.T.C. v. Standard Oil Co. of Cal.,* 449 U.S. 232 (1980)).

The JPML faithfully—and correctly—applied this precedent. It properly concluded that the Venue Act affects only secondary conduct: looking to *Collett* and *National City Lines*, it noted, "[s]ection 1407 is in the nature of a venue provision for pretrial proceedings," and held that "[t]he venue of an action cannot be characterized as impairing rights that a party had when it acted, increasing a party's liability for past conduct, or imposing new duties." Remand Order 3 (citing *Collett*, 337 U.S. at 71 and *National City Lines, Inc.*, 337 U.S. at 78). That is entirely in line with Supreme Court precedent because the Venue Act "simply changes the tribunal that is to hear the case," and so "no retroactivity problem arises." *Hamdan*, 548 U.S. at 577 (quoting *Hallowell*, 239 U.S. at 508). Nor has Google ever claimed that the Venue Act regulates primary conduct: an accused monopolist might change his conduct if he knew the Sherman Act's criminal penalties would be doubled. But being required to proceed in Texas rather than New York—or even having to conduct discovery in two fora—is not a cognizable harm. *Cf. Coinbase*, 143 S. Ct. at 1923. It is certainly not the type of harm that would alter conduct that is already subject to "prison terms, fines, recovery of damages, special fees for prosecutors, revocation of corporate charters, voiding of contracts, injunctions, and other equitable remedies." Spencer Weber Waller, *The Past, Present, and Future of Monopolization Remedies*, 76 Antitrust L.J. 11, 13 (2009); *see also, e.g.*, 15 U.S.C. § 15(a) (imposing treble damages).

**2.** Google counters (at 23-28) by belatedly attempting to distinguish this myriad caselaw on the grounds that even if the Venue Act is a procedural rule, it still cannot be used to "mandate undoing or invalidating steps taken before the enactment" of the Venue Act. This argument comes too late and proves too little.

*First*, Google has forfeited any effort to distinguish Supreme Court precedent holding that changes to venue provisions may be applied in pending cases. "Google ma[de] no attempt to address *Ex parte Collett* and *National City Lines*" in its briefing before the JPML, which that court found "highly relevant to the analysis of whether a new venue provision . . . applies to pending cases." Remand Order 3. As a result, Google "left undisputed that, under governing Supreme Court precedent, changes in venue statutes are procedural and thus presumptively apply to all pending actions." *Id.* Ordinary appellants are bound by the consequences of their own forfeiture. *E.g., T.M. ex rel. A.M. v. Cornwall Cent. Sch. Dist.*, 752 F.3d 145, 168 (2d Cir. 2014). That is all the more true here because appellate courts do "not use mandamus to hold the district court responsible for failing to address arguments that were not before it." *In re Cooper Tire & Rubber Co.*, 568 F.3d at 1196.

*Second*, the argument depends on the premise that a court only does something when it grants a motion. That premise is wrong. "It is true without question that denials of preliminary injunction are appealable" actions by a district court. *Ramos v. Town of Vernon*, 208 F.3d 203 (Table), 2000 WL 287698, at *1 (2d Cir. 2000); 28 U.S.C. § 1292(a)(1). And for over half a century, courts—including this one—have held that the denial of a motion to transfer is an action that can, in a "sufficiently 'extraordinary cause,'" give rise to a petition for a writ of mandamus. *Ford Motor Co.*

*v. Ryan*, 182 F.2d 329, 330 (2d Cir. 1950); *see also, e.g.*, *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008) (citing *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir.2008) (en banc)).

The very cases that Google seeks to distinguish demonstrate why the distinction makes no difference. Take *National City Lines*, which is perhaps better labeled "*National City Lines II.*" The first time the Supreme Court heard the case, it reversed the district court's grant of a forum non conveniens motion, "holding that forum non conveniens was not applicable in antitrust suits." *Nat'l City Lines*, 337 U.S. at 79-80 (citing *United States v. National City Lines*, 334 U.S. 573 (1948)). Section 1404 was subsequently amended to allow such motions, the district court "granted the motion" and "ordered the case transferred," and the Supreme Court affirmed. *Id.* at 80. Were Google right, the Supreme Court was necessarily wrong: it had already ruled that the case could *not* be transferred, and this conclusion was only disturbed by an intervening change in law. The Supreme Court nonetheless allowed transfer based on an amendment to section 1404—and thus "undid" the relevant district court's decision to keep the cases. The same is true of *Ex Parte Collett*, where the Court affirmed transfer even though the case had been filed in October of 1947 and the provision allowing transfer did not become effective until September of 1948. In doing so, the Court expressly rejected the argument that "this action may not be transferred because it was instituted prior to the effective date of" the amendment, reasoning "'[n]o one has a vested right in any given mode of procedure.'" *Id.* at 71 (quoting *Crane v. Hahlo*, 258 U.S. 142, 147 (1922)). Just so here.

## II. Google Cannot Show That Mandamus Is Appropriate Under the Circumstances.

Because Google has no "clear and indisputable" right to relief on the merits, the Court need go no further. *Cheney*, 542 U.S. at 381, 391 (describing this as a "precondition" for mandamus relief). But Google also cannot show that "one of 'the most potent weapons in the judicial arsenal,'" mandamus, would be "appropriate under the circumstances." *Id.* at 380-81 (quoting *Will v. United States*, 389 U.S. 90, 107 (1967)). Such a writ is not a "punitive remedy," nor can it be used for purely "corrective and didactic function[s]." *Will*, 389 U.S. at 107. Courts can (and "routinely" do) hold "sometimes in published opinions, that a district court erred," yet "stop[] short of issuing a writ of mandamus." *In re Depuy Orthopaedics, Inc.*, 870 F.3d 345, 347 n.4 (5th Cir. 2017) (collecting case). In extraordinary circumstances, the writ is appropriate to avoid vitiating important rights held by the parties, *e.g.*, *In re Paxton*, 60 F.4th 252, 259-60 (5th Cir. 2023) (ordering mandamus relief to protect sovereign immunity); *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 105 (2009) (contemplating mandamus relief to protect important privileges); "embarrass[ing]" another "arm of the government," *Ex parte Peru*, 318 U.S. 578, 588 (1943) (discussing judicial seizure of the property of friendly sovereigns); or "intrusion by the federal judiciary on a delicate area of federal-state relations," *Will*, 389 U.S. at 95 (citing *Maryland v. Soper*, 270 U.S. 9 (1926)). A writ of mandamus here would not serve any of those purposes—or even Google's putative aim (at 30) to provide guidance to lower courts in interpreting section 1407(g).

*First*, this is not an instance where mandamus relief is necessary to vindicate an important individual right and thereby avoid a "manifest injustice." *See Mohawk*, 558 U.S. at 111. As discussed above (at 19-21), section 1407(g) can be applied to pending cases precisely because Google has no legally protected right to continue litigating this case in New York rather than Texas.

*Second*, this is not the rare circumstance where a transfer decision—even an erroneous one—"amount[s] to a judicial usurpation of power." *Volkswagen*, 545 F.3d at 309. That is, the Supreme Court has warned that when analyzing whether to issue a writ of mandamus, courts of appeals must take "care[] lest they suffer themselves to be misled by labels such as 'abuse of discretion' and 'want of power' into interlocutory review of nonappealable orders on the mere ground that they may be erroneous." *Will*, 389 U.S. at 98 n.6. Examining that admonition in a transfer context, the Fifth Circuit has stated courts of appeals are "not to issue a writ to correct a mere abuse of discretion, even though such might be reversible on a normal appeal." *Volkswagen*, 545 F.3d at 310. In addition to being widely cited by other courts, *e.g.*, *In re Google LLC*, No. 2021-171, 2021 WL 4592280, at *2 (Fed. Cir. Oct. 6, 2021) (per curiam), *Volkswagen* is indicative of what is now "common agreement" among appellate courts: "mandamus should be available to set aside a transfer" order only "if the district court lacks power to transfer or has acted on wrong legal principles," Wright & Miller, *supra* § 3935.4 (footnote omitted).

Google does not even try to show that the JPML lacked *power* to transfer the case back to Texas for good reason. In the MDL context, every case "transferred shall be remanded by the panel at or before the conclusion of such pretrial proceedings to the

district court from which it was transferred unless it shall have been previously ter-minated." 28 U.S.C. § 1407(a). In other words, Google always knew it was heading back to Texas. Although the JPML was unlikely to remand this case before the close of discovery, it always had the power to do so at any point and the obligation to do so before trial. The supposed loss of efficiency associated with doing so now rather than after discovery is not a legally cognizable injury—let alone one that justifies the ex-traordinary remedy of mandamus. *See Coinbase*, 143 S. Ct. at 1922-23.

*Third*, granting Google relief is more likely to create than prevent "intrusion by the federal judiciary on a delicate area of federal-state relations." *Will*, 389 U.S. at 95. After all, according to the Venue Act's sponsors, the entire point of the legisla-tion was to address a "crisis" of monopolization in "[m]any industries" that is threatening "consumers, workers, and competition"—a "crisis" that "Congress and the federal government rely on state attorneys general to address . . . by aiding in the enforcement of our federal antitrust laws." Klobuchar, *supra* at n.1. Respond-ent States stand ready, willing, and able to provide that assistance through "vigorous antitrust enforcement." *Id.* But years-long delays like those already seen in this case are standing in the way. Even if the JPML was wrong that Congress's stated aim of preventing such delays applies to this case of its own force (and it was not), those same concerns inform why equity counsels against the "drastic and extraordinary remed[y]" of a writ of mandamus. *Collett*, 337 U.S. at 72.

*Finally*, even if Google's premise were correct (at 30-31) that a writ of manda-mus could issue purely for error-correction or "didactic" purposes, *but see Will*, 389 U.S. at 109; *Depuy Orthopaedics*, 870 F.3d at 347 n.4, granting this petition would not

even do that. Indeed, although the Petition implies otherwise (at 30), Google has acknowledged that the legal issue presented here will affect *at most* two cases, one of which is not in this Circuit. Google Response at 13 n.2, *In re: Google Digit. Advert. Antitrust Litig.,* ECF No. 238. Were this Court to grant mandamus relief, it would therefore only affect this case and would not as Google suggests (at 31) serve a broader function. This narrow question counsels against the extraordinary remedy of mandamus.

## Conclusion

The petition for a writ of mandamus should be denied.

Respectfully submitted.

Brent Webster
First Assistant Attorney General

/s/ Lanora C. Pettit
Lanora C. Pettit
Principal Deputy Solicitor General

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
Fax: (512) 474-2697

Counsel for Respondents

## CERTIFICATE OF SERVICE

On July 17, 2023, this response was served via CM/ECF on all registered counsel and transmitted to the Clerk of the Court.

/s/ Lanora C. Pettit
LANORA C. PETTIT

## CERTIFICATE OF COMPLIANCE

This brief complies with: (1) the type-volume limitation of Federal Rule of Appellate Procedure 21(d)(1) because it contains 7,649 words, excluding the parts of the brief exempted by Rule 32(f); and (2) the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Equity) using Microsoft Word (the same program used to calculate the word count).

/s/ Lanora C. Pettit
LANORA C. PETTIT