UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

THE STATE OF TEXAS, ET AL.  §
§
v.                           §          CIVIL NO. 4:20-CV-957-SDJ
§
GOOGLE LLC                   §

## MEMORANDUM ADOPTING REPORT AND RECOMMENDATION OF THE SPECIAL MASTER

In this antitrust action a coalition of States allege that Google has executed a broad scheme of anticompetitive conduct in display advertising markets. Display advertising is a form of tailored digital advertising, displayed on websites and mobile applications, that allows advertisers to direct ads to specific web users based on their browsing history and characteristics. The States maintain that Google has monopolized or attempted to monopolize various markets related to online display ads and unlawfully used its market power to tie its "ad server," a tool used by publishers to manage their inventory of display ads, to its "ad exchange," a distinct product that conducts auctions for the sale of display ads—thereby coercing publishers to use Google's ad server. The States further allege that Google's conduct in display advertising markets violated the States' deceptive trade practices laws. In response, Google contends that the States lack standing to bring this action and that none of the federal and state antitrust claims or state-law deceptive trade practices claims have substantive merit.

Before the Court is a discovery-related dispute. Google seeks a protective order prohibiting the States from deposing two high-ranking Google executives, its co-

1

founder and board member Sergey Brin and its CEO Sundar Pichai. (Dkt. #349).[1] The Court referred Google's motion to the Special Master, and the Special Master issued a report and recommendation that Google's request be granted in part (the "Report"). The Special Master concluded that the depositions should proceed, but recommended that Mr. Brin's deposition be limited to 2.5 hours and Mr. Pichai's deposition be limited to 4 hours. (Dkt. #423). Google objected to the Report, (Dkt. #440), and the parties have fully briefed the issues. After full consideration, the Court will adopt the Report and grant in part Google's motion for protective order.

## I. RULE 26, *SALTER*, AND "APEX" DEPOSITIONS

The Court's analysis of Google's motion for protection begins with the federal rules, as interpreted by the Fifth Circuit and persuasive authority from courts within and outside the circuit.

### A. Courts Have Substantial Authority and Discretion to Manage Deposition Discovery Under Rule 26.

The scope of discovery under the Federal Rules of Civil Procedure is broad. *Crosby v. La. Health Serv. & Indem. Co.*, 647 F.3d 258, 262 (5th Cir. 2011). Rule 26(b)(1) provides that parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." FED. R. CIV. P. 26(b)(1). "A discovery request is relevant

---

[1] In its motion, Google also sought to prohibit the deposition of YouTube CEO Neal Mohan. (Dkt. #349). Google later clarified that it no longer objected to a limited deposition of Mohan. (Dkt. #440 at 2 n.1). Accordingly, the Court adopted the Report with respect to the Special Master's recommendation that Neal Mohan be deposed personally for no more than four hours and denied in part Google's Motion for Protective Order Prohibiting Plaintiff States from Deposing Sergey Brin, Sundar Pichai, and Neal Mohan. (Dkt. #450).

when the request seeks admissible evidence or 'is reasonably calculated to lead to the discovery of admissible evidence.'" *Crosby*, 647 F.3d at 262 (quoting *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 820 (5th Cir. 2004)). The proportionality inquiry requires courts to consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." FED. R. CIV. P. 26(b)(1).

The federal rules also impose an obligation on courts to guard against abusive discovery. As the Fifth Circuit has admonished, "Rule 26(b) has never been a license to engage in an unwieldy, burdensome, and speculative fishing expedition." *Crosby*, 647 F.3d at 264 (cleaned up). Consistent with this obligation, Rule 26(b) provides that a court must "limit the frequency or extent of discovery otherwise allowed" if the court determines that "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." FED. R. CIV. P. 26(b)(2)(C)(i).

And under Rule 26(c)(1), for good cause, a court may "'issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense,' including forbidding a deposition, or limiting its scope." *Apple Inc. v. Samsung Elecs. Co., Ltd*, 282 F.R.D. 259, 262 (N.D. Cal. 2012) (citing FED. R. CIV. P. 26(c)(1)). The party seeking a protective order "bears the burden of showing that a protective order is necessary, which contemplates a particular and specific

demonstration of fact as distinguished from stereotyped and conclusory statements." *EEOC v. BDO USA, L.L.P.*, 876 F.3d 690, 698 (5th Cir. 2017) (cleaned up).

"The Court has broad discretion in determining whether to grant a motion for Protective Order and what degree of protection is required because it is 'in the best position to weigh fairly the competing needs and interests of parties affected by discovery.'" *Zavala v. Cooper Tire & Rubber Co.*, No. 4:22-CV-498, 2022 WL 17069113, at *1 (E.D. Tex. Nov. 17, 2022) (citing *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36, 104 S.Ct. 2199, 81 L.Ed. 2d 17 (1984)); *see also Gauthier v. Union Pac. R.R. Co.*, No. 1:07-CV-12, 2008 WL 2467016, at *3 (E.D. Tex. June 18, 2008) ("In deciding whether to grant a motion for a protective order, the court has significant discretion.").

## B. *Salter v. Upjohn*

Together with Rule 26, the Fifth Circuit's seminal decision in *Salter v. Upjohn Co.*, 593 F.2d 649 (5th Cir. 1979), has guided lower courts considering whether and when high-ranking corporate executives, sometimes referenced as "apex" executives, may be shielded from providing deposition testimony. *Salter* involved a claim that Upjohn, a pharmaceutical manufacturer, had failed to adequately test and label a prescription drug, resulting in the death of a recipient of the drug. *Id*. at 650. When the decedent's estate sued Upjohn, the plaintiff initially requested the deposition of Upjohn's president, to be taken at the same time as "those employees of the corporation who were most familiar with the manufacture, approval and marketing" of the drug at issue. *Id*. Notably, at that time, Upjohn's president had already submitted a statement to a committee of the United States Senate concerning the

testing, marketing, and use of the drug in question. Under the circumstances, Upjohn's initial request for a protective order was granted, based on the lower court's conclusion that, because the plaintiff had the president's written statement to the Senate and was deposing about eight or ten Upjohn employees "who actually had the more personal knowledge of the matter than the president of the company," those employees should be deposed first, and "if any of their testimony was different from what the president of the company said," then the president could be deposed on such discrepancies. *Id*. at 651 n.1.

On appeal, the Fifth Circuit recognized that the lower court's protective order was not a "complete prohibition" on the deposition of Upjohn's president, but rather "merely required plaintiff to depose the other employees that Upjohn indicated had more knowledge of the facts" before deposing Upjohn's president. *Id*. at 651; *see also id*. ("The trial judge had indicated that if the testimony of the other employees was unsatisfactory, he would allow plaintiff to take [Upjohn's president's] deposition."). As the *Salter* court explained, the trial judge was permissibly exercising "the broad discretion that this court has long recognized" that district courts enjoy "in controlling the timing of discovery." *Id*. The court pointed to two facts that drove and supported the lower court's decision. First, at the time the trial judge entered the protective order, the plaintiff had Upjohn's president's Senate Committee testimony, which "contained substantially the same information" that the plaintiff sought to obtain from Upjohn's president in the requested deposition. *Id*. Second, because the plaintiff was scheduled to take the depositions of "those employees who Upjohn indicated had

the most direct knowledge of the relevant facts," it was "very likely" that, after taking the other employees' depositions, the plaintiff would be satisfied and abandon the request to depose Upjohn's president, unless it turned out that the other employees did not have "more personal knowledge" of the facts than Upjohn's president or their testimony was inconsistent with Upjohn's president's Senate testimony. *Id.* Given these circumstances, the *Salter* court concluded that the trial court's "attempt to postpone or prevent the necessity" of taking the deposition of Upjohn's president was within the court's discretion "in light of [Upjohn's] reasonable assertions" that its president "was extremely busy and did not have any direct knowledge of the facts." *Id.*

The Fifth Circuit made clear, however, that while the trial court's entry of the protective order was not in error, it also did not foreclose the possibility that an appropriate, renewed request could have been made for the deposition of Upjohn's president. "Of course, if after taking the other depositions, plaintiff was not satisfied and again properly gave notice of or requested [the deposition of Upjohn's president], the judge probably should have allowed the deposition." *Id.* That did not happen in *Salter*. *See id.* ("After the first protective order, however, plaintiff never again properly raised the issue in the trial court.").

*Salter* provides two guiding principles concerning the depositions of high-ranking corporate executives. The first principle, grounded in the breadth of appropriate deposition discovery under the federal rules, recognizes that "[i]t is very unusual for a court to prohibit the taking of a deposition altogether and absent extraordinary circumstances, such an order would likely be in error." *Id.* Thus, a

blanket prohibition on taking the deposition of a witness who can provide relevant testimony, including a senior corporate official, is "very unusual" and requires "extraordinary circumstances."

The second, related principle is that, while a blanket prohibition on taking the deposition of a witness who can provide relevant testimony is highly unusual, courts have substantial discretion to manage the deposition process. This includes discretion to control the timing and sequence of depositions and, as may be necessary, to enter orders designed to "postpone or prevent" the necessity of taking a high-ranking corporate executive's deposition. *Id.* As *Salter* demonstrates, such decisions are highly fact-specific, driven by factors that include the executive's position and duties within the relevant organization and the availability of other witnesses who have more personal knowledge of the facts at issue.

## C. The Gloss on *Salter* in Recent Cases

For the last forty-five years, courts within this circuit consistently have applied the text of Rule 26, and *Salter*'s principles, when confronted with questions of whether and when high-ranking corporate executives may be deposed. More broadly, courts across the country have addressed the same issue under Rule 26, and those decisions also provide helpful guidance to this Court.

Consistent with *Salter*, courts have recognized that high-ranking executives may be deposed "when conduct and knowledge at the highest corporate levels of the defendant are relevant to the case." *Kimberly-Clark Corp. v. Cont'l Cas. Co.*, No. 3:05-CV-0475, 2006 WL 3436064, at \*2 (N.D. Tex. 2006) (cleaned up). But a party seeking

such discovery must first use "less-intrusive means before taking such [a] deposition, by way of deposing lesser-ranking employees." *Ross Neely Sys., Inc. v. Navistar, Inc.*, No. 3:13-CV-1587, 2015 WL 12916401, at *1 (N.D. Tex. Apr. 9, 2015) (citing *Salter*, 593 F.2d at 649)). And, "[u]nless the executive possesses 'unique personal knowledge' about the controversy, the court should regulate the discovery process to avoid 'oppression, inconvenience, and burden' to the executive and the corporation." *Robinson v. Nexion Health at Terrell, Inc.*, No. 3:12-CV-03853, 2014 WL 12915533, at *2 (N.D. Tex. Apr. 16, 2014) (quoting *Comput. Acceleration Corp. v. Microsoft Corp.*, 9:06-CV-140, 2007 WL 7684605, at *1 (E.D. Tex. 2007)).

An apt example of the application of *Salter* is *ZeniMax Media, Inc. v. Oculus VR, LLC*, No. 3:14-CV-1849, 2015 WL 13949662 (N.D. Tex. Dec. 7, 2015). In *ZeniMax*, the court allowed the deposition of Mark Zuckerberg in a lawsuit concerning the alleged misappropriation of technology related to Facebook's multi-billion-dollar acquisition of Oculus. *Id.* at *1–2. The *ZeniMax* court noted that, given Mr. Zuckerberg's "active participation in Facebook's acquisition of Oculus, he has unique knowledge, as Facebook's Founder, Chairman, and CEO, regarding his own decision to acquire Oculus and his valuation of Oculus based on his testing of the Rift headset which ZeniMax alleges includes misappropriated ZeniMax technology." *Id.* at *2. Notwithstanding its conclusion that Mr. Zuckerberg had unique, personal knowledge relevant to the case, the court recognized the need to "first utiliz[e] less-intrusive means before taking [Mr. Zuckerberg's] deposition, by way of deposing lesser-ranking employees." *Id.* (cleaned up). The court therefore ordered that Zuckerberg's deposition

8

would proceed only after other noticed depositions had been conducted "so that less intrusive discovery [could] be exhausted and information that could adequately be obtained from lesser ranking employees [would] be acquired before [Mr. Zuckerberg's] deposition." *Id*.

The analysis and decision in *Apple Inc. v. Samsung Electronics Co., Ltd*, 282 F.R.D. 259 (N.D. Cal. 2012), is also instructive. In that case, Apple sought the depositions of six Samsung executives in a patent infringement action. The *Apple* court considered whether each proposed Samsung executive had "unique first-hand, non-repetitive knowledge of the facts at issue in the case," and whether plaintiff Apple had "exhausted other less intrusive discovery methods." *Id*. at 263. In conducting this analysis, the court looked "first to the relative position of the proposed witness in the company . . ., second to the materiality and uniqueness of the witness' likely knowledge, and third to the availability or exhaustion of other less burdensome discovery methods." *Id*. at 264. Applying this analysis across the six Samsung executives at issue, the court allowed some of the requested depositions to proceed, with time constraints, and denied others. *See id*. at 264–69.[2]

---

[2] For example, the *Apple* court allowed the requested deposition of Samsung's CEO because Apple had shown that this executive had unique, first-hand knowledge regarding Samsung's "purported strategy of considering Apple's products when creating new Samsung products," *Apple Inc. v. Samsung Elecs. Co., Ltd*, 282 F.R.D. at 264, but limited the amount of deposition time because the CEO was a "quintessential apex" deponent who had many demands on his schedule, *id*. at 264–65 (cleaned up). The court also allowed the deposition of a senior Samsung research and development executive—over Samsung's objection that Apple had failed to exhaust less-intrusive methods of discovery—based on the court's conclusion that engaging in less-intrusive discovery would not "negate the fact" that the deponent was "likely to have his own unique knowledge" concerning subject matter directly relevant to Apple's claims. *Id*. at 267–68.

### D. Prior Cases Involving High-Ranking Google Executives

Finally, the Court notes that several cases have considered requests that high-ranking Google executives, including Mr. Brin and Mr. Pichai, be protected from deposition. These cases are also instructive.

For example, in *PA Advisors, LLC v. Google, Inc.*, No. 2:07-CV-480, 2009 WL 10741630 (E.D. Tex. Aug. 28, 2009), the court granted Google's motion to quash an initial deposition notice of Mr. Brin in a patent infringement suit. *Id.* at *2–3. Two facts were critical to the *PA Advisors* court's decision. First, the court acknowledged that Mr. Brin was a very high-ranking executive at Google and that the deposition "would likely cause significant disruption to [Google's] operations." *Id.* at *2. Second, the court noted that the plaintiff had failed to show that a deposition of Mr. Brin would "yield *any* relevant information," much less any relevant information that could not be reasonably obtained through less-intrusive means such as the depositions of lower-ranking employees or Rule 30(b)(6) corporate representative depositions, so as to justify the disruption to Google's operations. *Id.* at *3 (emphasis added).

In this regard, Mr. Brin's purported knowledge about the case stemmed from a cold solicitation he received via email from Ilya Geller, the inventor of the patent-in-suit. *Id.* at *1. But Mr. Brin submitted a declaration to the court affirming that he had "no knowledge about Mr. Geller" or "of ever meeting with [Mr.] Geller." *Id.* at *2 (cleaned up). And Mr. Geller similarly confirmed that he had no memory of any contact with Mr. Brin other than sending his unsolicited email. *Id.* On this record the

*PA Advisors* court granted Mr. Brin protection from the deposition notice, requiring the plaintiff to first depose a Rule 30(b)(6) representative of Google, allowing for the possibility that the plaintiff could later re-notice a deposition of Mr. Brin, "if appropriate." *Id.* at *3. In sum, the *PA Advisors* plaintiff could not take Mr. Brin's deposition because it failed to show that Mr. Brin had any relevant knowledge whatsoever, which Mr. Brin confirmed in a declaration submitted to the court.

In another patent infringement case, *In re Google Litigation*, No. 08-03172, 2011 WL 4985279 (N.D. Cal. Oct. 19, 2011), the plaintiff sought to depose both Mr. Brin and Google's then-CEO Larry Page. The court recognized that Mr. Brin and Mr. Page were high-level or "apex" Google executives, but also noted that, "when a witness has personal knowledge of facts relevant to the lawsuit, even a corporate president or CEO is subject to deposition," and "the fact that [an] apex witness has a busy schedule is simply not a basis for foreclosing otherwise proper discovery." *Id.* at *2. The *In re Google* court went on to conclude that "at least Page has unique knowledge of facts that cannot be secured by other less intrusive means of discovery," and therefore his deposition could be taken. *Id.*[3]

As to Mr. Brin, the court was not persuaded that he had unique, first-hand knowledge of the facts of the case or that the plaintiff had exhausted other less-

---

[3] Mr. Page's deposition was also allowed in other cases during this period where courts determined he had unique knowledge relevant to the case. *See Google, Inc. v. Am. Blind & Wallpaper Factory*, No. 03–5340, 2006 WL 2578277, at *3 (N.D. Cal. Sept. 6, 2006) (allowing limited deposition of Mr. Page based on his unique knowledge of changes to Google's trademark policies); *Oracle Am., Inc. v. Google, Inc.*, No. 10–3561 (Dkt. #229) (allowing two-hour deposition of Mr. Page based on his unique knowledge of negotiations between Sun and Oracle and Google's decision to purchase Android).

intrusive methods of discovery, so his deposition was not permitted. *Id*. However, the court allowed for the possibility that Mr. Brin's deposition could be taken at a later point in the litigation, depending on the circumstances. *See id*. ("If after taking Page's deposition, [plaintiff] can identify topics that only Brin can address, it may file an appropriate motion with the court on an expedited basis. Unless and until such a motion is granted, no deposition of Brin is permitted.").

*Celorio v. Google Inc.*, No. 1:11-CV-79, 2012 WL 12861605 (N.D. Fla. Nov. 19, 2012), also involved patent claims and requests to depose three high-level Google executives and members of its Board of Directors—Messrs. Eric Schmidt, Page, and Brin. Similar to *PA Advisors*, the *Celorio* plaintiff maintained that the Google executives each had personal, unique, and first-hand knowledge of relevant facts because the plaintiff had sent letters on behalf of his company to Messrs. Schmidt, Page, and Brin, asserting that Google might be infringing one of his company's patents. *Id*. at *1. Although Google did not dispute receiving the letters, as in *PA Advisors*, Messrs. Schmidt, Page, and Brin filed affidavits with the court confirming that each of them had "no memory or recollection" of receiving the letter referencing potential infringement, or any other letter from plaintiff's company, and likewise that each of them had "no knowledge of what was done in response to receiving the letter." *Id*. at *2. Under the circumstances, the *Celorio* court concluded that deposing Messrs. Schmidt, Page, and Brin would be "a complete waste of time." *Id*.

The *Celorio* plaintiff also asserted that the Google executives should be deposed because they each had first-hand information on Google's implementation of the

technology at issue in the case. *Id*. The court rejected this argument, reasoning that, while the Google executives may have had knowledge of Google's implementation of the technology at issue, there was no evidence that Messrs. Schmidt, Page, or Brin had unique knowledge. The court further concluded that the plaintiff had failed to undertake the depositions of lower-level employees with more direct knowledge of the facts. *See id*. ("Thus, in the absence of any attempt by Plaintiff to depose the lower-level Google employees, who have knowledge concerning Google's implementation of the [technology at issue], Plaintiff has failed to satisfy the burden of showing that other less intrusive means of discovery have been exhausted."). The *Celorio* court concluded that none of the Google executives could be deposed because the plaintiff failed to show that Messrs. Page, Brin, or Schmidt had "personal, unique knowledge of the facts at issue" and the plaintiff "failed to exhaust less intrusive discovery methods before pursuing depositions of [the] high-level executives." *Id*. at *3.[4]

*     *     *

In sum, the gloss on *Salter* over the years has not altered its fundamental guidelines, and courts across the country apply the same principles when considering whether and when high-level corporate executives may be deposed. To begin, courts may not completely prohibit the deposition of a witness who has relevant information,

---

[4] A similar result was obtained in *Brown v. Google LLC*, No. 4:20-CV-03664, 2022 WL 2289059 (N.D. Cal. Apr. 4, 2022), a case in which the plaintiffs requested the deposition of Mr. Pichai after he had assumed his current role as Google's CEO. The district judge overturned a magistrate judge's decision that allowed Mr. Pichai's deposition, concluding that, while Mr. Pichai may have possessed and/or communicated information relevant to the case, the magistrate judge had erred in failing to consider whether Mr. Pichai had "unique or superior personal knowledge" and in failing to address whether plaintiffs had "exhausted all less intrusive means of discovery with respect to Mr. Pichai." *Id*. at *1–*2.

including an "apex" executive, absent "extraordinary circumstances." Of course, courts may prevent the depositions of executives who have no information relevant to the issues in the case. Because the deposition of any witness who has no relevant information would be pointless and unfair, such discovery should not be allowed.

For high-ranking corporate executives, however, there are additional considerations once the relevance hurdle is overcome. District courts may, and should, exercise discretion on the timing of such discovery to avoid oppression, inconvenience, and the imposition of unfair burdens on executives and companies. The touchstones of the court's analysis include an examination of the executive's role within the company, whether he has unique, personal, and non-repetitive knowledge of relevant facts, and whether less-intrusive discovery has already been conducted.

Consistent with these principles, courts are empowered under Rule 26 and interpretive precedent to enter orders designed to postpone or prevent the necessity of taking a high-ranking corporate executive's deposition by requiring that less-intrusive discovery be completed first. A court may require, for example, that lower-ranking employees with superior knowledge be deposed before a high-level executive. The prioritized completion of lower-ranking-employee depositions, or Rule 30(b)(6) corporate representative depositions, may either obviate any need for the "apex" executive's deposition, or alternatively narrow the scope of the apex executive's deposition.[5]

---

[5] Google has cited *In re Paxton*, 60 F.4th 252, 258 (5th Cir. 2023), a case that concerns protections afforded to high-ranking or "apex" government officials and agents, in support of its request for a protective order. (Dkt. #440 at 7–8). However, the *Paxton* decision and

## II. BRIN AND PICHAI MAY BE DEPOSED UNDER APPROPRIATE TIME LIMITS

It is undisputed that Mr. Brin, Google's co-founder and board member, and Mr. Pichai, Google's current CEO, are high-level corporate executives. Google argues that, owing to Mr. Brin and Mr. Pichai's high-level positions at Google, they should be afforded protection from giving deposition testimony as requested by Plaintiff States. (Dkt. #349 at 6). Specifically, Google argues that Mr. Brin and Mr. Pichai do not possess unique, personal knowledge concerning the issues identified by the Plaintiff States for such testimony. (Dkt. #349 at 6–9). Google also argues that the States are not entitled to depose Mr. Brin and Mr. Pichai because the States have not yet exhausted less-intrusive means to acquire the information sought, e.g., from deposing lower-level employees or Rule 30(b)(6) corporate representatives on the same topics. (Dkt. #349 at 9–10).

Plaintiff States counter that Mr. Brin and Mr. Pichai not only can provide relevant testimony, but that each possesses unique and personal knowledge on issues

---

related cases regarding apex government officials are not helpful to the Court's analysis here because such state actors enjoy protections from discovery that are not extended to the private sector. As the Fifth Circuit has explained, "[i]t is a settled rule in this circuit that *exceptional circumstances* must exist before the involuntary depositions of high agency officials are permitted." *In re FDIC*, 58 F.3d 1055, 1060 (5th Cir. 1995) (emphasis added) (cleaned up) (issuing writ of mandamus to quash notices of deposition issued to members of the Board of Directors of the Federal Deposit Insurance Corporation); *see also In re Bryant*, 745 F.App'x 215, 220 (5th Cir. 2018) ("Involuntary depositions of highly-ranked government officials are only allowed when 'exceptional circumstances' exist." (cleaned up)). The "exceptional circumstances" analysis, which has not been extended to private-sector executives, is premised on courts' recognition that "[h]igh-ranking government officials are the subject of or involved in unusually high numbers of lawsuits and therefore should be protected from undue burdens regarding [such] frequent litigation." *In re Bryant*, 745 F.App'x at 220–21; *see also In re Paxton*, 60 F.4th at 258 (explaining that the rationale for limiting such "apex" testimony as to state actors is that "[h]igh ranking government officials have greater duties and time constraints than other witnesses") (citing *In re FDIC*, 58 F.3d at 1060)).

significant to the resolution of the States' claims. Pointing to the extensive discovery and numerous depositions of Google employees already completed,[6] the States further contend that Google has failed to show that the States can obtain the same information through less-intrusive means. (Dkt. #375 at 4–5).

The Court agrees with the Special Master that the States should be permitted to depose Mr. Brin and Mr. Pichai, but for limited periods of time given their roles at Google and the scope of each executive's unique, personal knowledge on issues relevant to the case. This is not a patent infringement dispute involving one-off and one-sided efforts to communicate with a high-level Google executive. *Cf. PA Advisors*, 2009 WL 10741630, at *2. The case concerns Google's "alleged monopolization and suppression of competition in online display advertising – essentially, the marketplace for the placement of digital display ads on websites and mobile apps." *In re Digit. Advert. Antitrust Litig.*, 555 F.Supp.3d 1372, 1373 (J.P.M.L. 2021). Nor is this a case where either Mr. Brin or Mr. Pichai has submitted an affidavit to the Court attesting that they have no knowledge or information about the antitrust and deceptive-trade-practice issues raised by Plaintiff States. The omission is telling.

As to both Mr. Brin and Mr. Pichai, the States have identified issues related to significant corporate acquisitions, meetings, and policies relevant to the issues in this case, and about which these Google executives have personal, unique knowledge. Under appropriate time limits, the depositions may be taken.

---

[6] Other than the contested depositions of Mr. Brin and Mr. Pichai, fact discovery is complete in this matter. (Dkt. #457). The parties have taken numerous depositions and millions of documents have been produced.

## A. Sergey Brin

Publisher ad servers are part of the marketplace for digital display ads. Publishers license this software product to manage their inventory of display ads. As described in Plaintiff States' operative complaint, "[p]ublishers typically use a single ad server to manage all of their web display inventory; using multiple ad servers would substantially frustrate a publisher's ability to effectively optimize management of their inventory and maximize revenue." (Fourth Amended Complaint "FAC" ¶ 49). An ad server allocates and routes available display ad space between direct sales per pre-arranged agreements with advertisers and indirect sales conducted through exchanges. *In re Google Digital Advert. Antitrust Litig.*, 627 F.Supp.3d at 361–62. The States allege that Google has willfully acquired monopoly power in the market for ad servers for large publishers. *Id*. at 362.

Google entered the ad server market in 2008 through its multi-billion-dollar acquisition of DoubleClick. (FAC ¶ 245). Although the States have not alleged that Google's DoubleClick acquisition, standing alone, was an anti-competitive act, it is the alleged origin of Google's digital advertising business and Google's alleged subsequent conduct with that enterprise is at the core of the States' monopolization and attempted monopolization claims. (FAC ¶¶ 19, 245–46). Further, Plaintiff States have alleged that Google attempted to achieve monopoly power "willfully, knowingly, and with specific intent." (FAC ¶ 604).

Plaintiff States have requested the deposition of Mr. Brin, arguing that "[a]s Google's founder and longtime president, Mr. Brin was part of a small group of the highest-level Google executives who played a direct role in Google's strategy and

negotiations for its acquisition of DoubleClick." (Dkt. #447 at 5). To show Mr. Brin's unique knowledge concerning DoubleClick, the States primarily point to an email exchange about the acquisition between and among several Google executives, including Messrs. Brin, Eric Schmidt (co-founder of Google), and Larry Page (then-CEO of Google). In the email exchange, Mr. Brin opined on the value of DoubleClick to Google, noting that it would be a "mistake" if Google allowed its competitor, Microsoft, to acquire DoubleClick and suggesting that Google increase its bid for DoubleClick and its ad server to $2.5 billion. *See* (Dkt. #375-7). As the States note, this email exchange illustrates Brin's shift of position concerning the DoubleClick acquisition. It is undisputed that Mr. Brin was opposed to the acquisition of DoubleClick when it was first considered a few years earlier, around 2005. But, as the email exchange demonstrates, Brin was strongly in favor of Google acquiring DoubleClick by the time the deal was made in 2008.

The States also point to materials that Mr. Brin received on strategic issues related to the acquisition, including PowerPoint slides that outlined the consequences for Google if competitor Microsoft were to have acquired DoubleClick and its ad server. *See* (Dkt. #375-8). The States contend that these materials, along with the email exchange, demonstrate that Mr. Brin was an "integral decision-maker on all things related to Google's ad tech business." (Dkt. #447 at 5).

Google counters that the States simply seek to harass Mr. Brin with a deposition based on nothing more than his roles as co-founder and longtime president of Google. Google minimizes the significance of the email exchange, arguing that it

18

merely concerns an interim bid amount that was initially proposed by another member of the deal team and was later approved by Google's then-CEO. (Dkt. #512 at 3). Instead of showing that Mr. Brin drove the deal, Google argues that it demonstrates that other Google executives, such as Susan Wojcicki and Tim Armstrong, were responsible for the primary decisions and strategic rationale behind the deal. (Dkt. #512 at 4). As to the PowerPoint slides concerning strategic issues related to the acquisition, Google states that Mr. Brin "had access to the document but did not necessarily contribute to it." (Dkt. #440 at 4).

Google further argues that a deposition of Mr. Brin would be duplicative, as the States have already obtained the information they profess to need through the deposition of another Google executive, Neal Mohan, and otherwise failed to avail themselves of the opportunity to obtain other information through less-intrusive means. Google contends that Mr. Mohan provided the information that Plaintiff States are purportedly seeking from Mr. Brin concerning Google's goals with respect to the DoubleClick acquisition, the rationale behind paying a higher price, and Google's competition with Microsoft for the acquisition. Finally, Google asserts that the States could have deposed one of the more active participants on the email exchange, such as Tim Armstrong, but failed to do so.

The States have shown that Mr. Brin played a key role in both Google's decision to forgo the DoubleClick acquisition in 2005 and then to complete it in 2008. Whether the States should have questioned other recipients of Mr. Brin's emails on the issue does not negate the fact that Mr. Brin, as the sender, is likely to have unique

knowledge of what he intended by his comments. Mr. Brin was president of Google at the time of the DoubleClick acquisition. (Dkt. #349-1 at 8). And the evidence provided by Plaintiff States establishes that Mr. Brin likely possesses unique, personal knowledge regarding his views on the DoubleClick acquisition, including Google's goals with respect to such acquisition, the rationale behind paying a higher price for DoubleClick, and Google's competition with Microsoft for the acquisition of DoubleClick. *See* (Dkt. #375-7, #375-8).

The States have attempted to obtain this information through less-intrusive methods of discovery, deposing 30 current and former Google employees, including Neal Mohan, who testified both individually and as Google's 30(b)(6) designee. It is clear, however, that the depositions of Mr. Mohan and other witnesses cannot negate the need for Mr. Brin's testimony, because only Mr. Brin can provide testimony on his personal decision-making regarding the DoubleClick acquisition. That is to say, no one is in a better position to testify about Mr. Brin's own thought processes, analyses, and intentions concerning this multi-billion-dollar acquisition than Mr. Brin himself. *See ZeniMax*, 2015 WL 13949662, at *1 (allowing the deposition of Mark Zuckerberg after finding that "no one else is in a better position to testify about Mr. Zuckerberg's personal decision-making regarding that acquisition, and that he is uniquely knowledgeable about his own experiences . . . and the decisions he made based on those experiences"). As Plaintiff States correctly note, "[o]nly Mr. Brin can explain his evolving views on privacy and competition concerns that led Google to

20

forego the DoubleClick deal in 2005 but then complete it three years later." (Dkt. #514 at 3).

The Court concludes that Mr. Brin possesses unique, personal knowledge about Google's strategy concerning the DoubleClick acquisition. The Court will, therefore, allow Plaintiff States to take Mr. Brin's deposition. However, given that Mr. Brin represents the quintessential "apex" executive, and in light of the scope of his relevant, personal, and unique knowledge concerning the issues in this case, the deposition time will be limited to 2.5 hours, as recommended by the Special Master.

## B. Sundar Pichai

Plaintiff States also seek to depose Google's CEO, Sundar Pichai, arguing that he possesses unique, personal knowledge that is highly relevant to this matter. As with Mr. Brin, Google contends that Mr. Pichai has no unique, personal knowledge relevant to the issues in this case, and that any relevant information Mr. Pichai could provide should be gathered through less-intrusive means. Although the States list a number of topics about which Mr. Pichai allegedly has unique, personal information justifying his deposition, the Court discusses herein only the issues where Mr. Pichai's unique knowledge is most evident.[7]

---

[7] The States point to a number of topics that the Court does not believe support the request to depose Mr. Pichai. For example, the States maintain that Mr. Pichai has unique, personal, and important information on the DoubleClick acquisition, noting a congratulatory email he sent when the deal was completed, (Dkt. #375-4), and his compilation of updates for a board meeting concerning the deal, (Dkt. #375-3). But it is undisputed that, at the time of the DoubleClick acquisition, Mr. Pichai was not the CEO of Google but was instead working on Google Chrome. In fact, the DoubleClick acquisition occurred seven years before Mr. Pichai became Google's CEO. As such, the Court is not convinced by either Mr. Pichai's sending a friendly congratulations email, nor a compilation of suggested updates for a board

First, the States have demonstrated that Mr. Pichai has unique, personal knowledge concerning a Network Bidding Agreement ("NBA") Google and Facebook entered into in 2018. According to the States, the NBA was one part of an allegedly unlawful agreement by which Facebook substantially curtailed its use of a practice called header bidding in return for Google giving Facebook a leg up in publishers' web display and developers' in-app ad auctions. (FAC ¶ 413).

In regard to the NBA, the States have submitted evidence that, in 2019, Mr. Pichai met directly with Facebook CEO Mark Zuckerberg about the agreement. (Dkt. #514-5). Meta's corporate representative, Henry Erskine Crum, was "the product manager [at Facebook] responsible for . . . the [Facebook and Google] partnership," (Dkt. #514-6 at 8), and he confirmed that the NBA was one of the topics of that Pichai-Zuckerberg meeting. (Dkt. #514-6 at 11–13); *see also* (Dkt. #514-5). The States deposed Mr. Crum about direct negotiations between Mr. Pichai and Mr. Zuckerberg regarding the NBA, but Mr. Crum's testimony was necessarily limited by the fact that he did not attend the meeting. (Dkt. #514-6 at 8, 11–14). Mr. Pichai undoubtedly has unique, personal knowledge of his one-on-one discussion with Mr. Zuckerburg about the NBA; Mr. Crum, understandably, does not. *See* (Dkt. #514-5); (Dkt. #514-6 at 11–14). The Court concludes that the States have already undertaken

---

meeting, that he possesses any unique knowledge concerning the DoubleClick acquisition.

Similarly, after reviewing the testimony and documentary evidence put forth by the States, the Court is not convinced that Mr. Pichai possesses unique knowledge concerning the publisher complaints about anticompetitive tech changes. Regardless, since the Court finds that Mr. Pichai possesses unique, personal knowledge regarding other relevant issues, that cannot be obtained through less-intrusive means, the States are entitled to proceed with his deposition.

less-intrusive discovery on this topic, including the deposition of Mr. Crum, and that Mr. Pichai's deposition is warranted.[8]

Second, the Court finds that Mr. Pichai likely possesses unique, personal knowledge concerning Google's document retention policies, specifically as to the retention of communications on the Google Chats platform. The States have raised legitimate concerns that, as a result of its Google Chats retention policies, Google may not have retained relevant and discoverable materials in this case. *See* (Dkt. #514 at 4); (Dkt. #374); (Dkt. #428 at 4–9); (Dkt. #452).

Through the testimony of lower-level employees, the States have shown that Mr. Pichai, as CEO, likely had to approve document retention policies, including those regarding Google Chats. (Dkt. #514-10 at 6, 9) (Google's corporate representative, Genaro Lopez, testifying that "the CEO" had to approve document retention policies, including those regarding Google Chats). Additionally, the States contend that Mr. Lopez testified that the States would have to ask Mr. Pichai directly why he (Pichai) requested to turn off Chat history in a conversation with another senior Google official. (Dkt. #514-10 at 13–14). Having reviewed the relevant deposition excerpts, the Court agrees that Mr. Lopez pointed to Mr. Pichai, along with the other participant of the conversation concerning the request to turn off Chat history, as possessing knowledge regarding the reasoning behind this request. (Dkt. #514-10 at 13–14). Of course, because Mr. Pichai purportedly sent the request

---

[8] The States also argued that Mr. Pichai had "final approval" of the NBA, but Google has shown that this assertion is incorrect. *See* (Dkt. #375 at 8). Nonetheless, it appears that Mr. Pichai played an active role in the negotiations surrounding the NBA, (Dkt. #447 at 4–5), and his unique, personal knowledge about those discussions warrants his deposition.

to turn off Chat history, he is in the best position to testify as to his personal decision-making concerning the request. *See ZeniMax Media*, 2015 WL 13949662, at *1. As the States correctly note, to the extent that this information is accurate, it raises significant questions about Google's document retention policies and Mr. Pichai's personal involvement in the deletion of relevant and discoverable materials. *See* (Dkt. #514 at 6).

The Court concludes that Mr. Pichai possesses unique, personal knowledge about the NBA and Google's document retention policies, specifically as to the retention of communications on the Google Chats platform. The Court will, therefore, allow Plaintiff States to take Mr. Pichai's deposition. However, as with Mr. Brin, Mr. Pichai represents the quintessential "apex" executive. In light of Mr. Pichai's role at Google, as well as the scope of his relevant, personal, and unique knowledge concerning the issues in this case, the deposition time will be limited to 4 hours, as recommended by the Special Master.

*        *        *

Google has not met its burden to show that a protective order prohibiting the depositions of Mr. Brin and Mr. Pichai should be entered. Under controlling law, such an order could be entered only under "extraordinary circumstances" because both witnesses have information relevant to this case.[9] No such "extraordinary circumstances" exist here.

_____

[9] Google suggested in its objections to the Special Master's Report that, given additional time, it could prepare and submit affidavits from Mr. Brin and Mr. Pichai. (Dkt. #440 at 10 n.2). However, Google never filed any such affidavits, despite having ample

Google also has failed to show that Mr. Brin and Mr. Pichai do not possess unique, personal knowledge on the topics referenced in this opinion, or that Plaintiff States have failed to exhaust less-intrusive methods of discovery. However, the Court will grant Google's motion for protective order in part, allowing limited time for these depositions based on Mr. Brin and Mr. Pichai's high-level positions at Google and the scope of their unique, personal knowledge relevant to the issues in this case.

### III. CONCLUSION

It is therefore **ORDERED** that the Report and Recommendation of the Special Master, (Dkt. #423), is **ADOPTED**.

It is further **ORDERED** that Google's Motion for Protective Order Prohibiting Plaintiffs from Deposing Sergey Brin, Sundar Pichai, and Neal Mohan, (Dkt. #349), is **GRANTED in part** and **DENIED in part**.

It is further **ORDERED** that Plaintiff States may depose Mr. Brin, but the deposition time will be limited to 2.5 hours.

It is further **ORDERED** that Plaintiff States may depose Mr. Pichai, but the deposition time will be limited to 4 hours.

It is further **ORDERED** that the parties shall meet and confer to schedule the depositions of Mr. Brin and Mr. Pichai.

---

time to do so. Even when Google submitted a supplemental brief in support of its protective order, it did not attach an affidavit from Mr. Brin or Mr. Pichai declaring that either lacks unique information relevant to this case. *See* (Dkt. #512).

**So ORDERED and SIGNED this 21st day of June, 2024.**

SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE