# EXHIBIT C

HIGHLY CONFIDENTIAL

Page 1

1                 UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF TEXAS
2                       SHERMAN DIVISION
3       STATE OF TEXAS, et al,        )
                                      )
4            Plaintiffs,              )   CASE NO.
                                      )   4:20cv00957-SDJ
5       v.                            )
                                      )
6       GOOGLE, LLC,                  )
                                      )
7            Defendant.               )
        _____      )
8
9
10
11                        __ __ __
12                 Friday, May 17, 2024
13                        __ __ __
14                 HIGHLY CONFIDENTIAL
15            PURSUANT TO PROTECTIVE ORDER
16                        __ __ __
17                      Remote Video-Recorded Oral
        Fed. R. Civ. P. 30(b)(6) Deposition of GOOGLE
18      CHAT, BY AND THROUGH ▮▮▮▮▮▮▮▮ held at the
        offices of Veritext, 1000 SW Broadway, Suite
19      1660, Portland, Oregon, commencing at
        9:12 a.m. PDT on the above date, before Debra
20      A. Dibble, Fellow of the Academy of
        Professional Reporters, Certified Court
21      Reporter, Registered Diplomate Reporter,
        Certified Realtime Reporter and Notary
22      Public.
                                __ __ __
23
                 Job No. MDLG6695561
24                 GOLKOW - VERITEXT
             877.370.DEPS | fax 917.591.5672
25                 deps@golkow.com

HIGHLY CONFIDENTIAL

```
                                              Page 2

 1      APPEARANCES:
 2          NORTON ROSE FULBRIGHT US LLP
            BY:  ETHAN GLENN, ESQUIRE
 3               ethan.glenn@nortonrosefulbright.com
                 MARC B. COLLIER, ESQUIRE
 4               marc.collier@nortonrosefulbright.com
            98 San Jacinto Boulevard
 5          Austin, Texas 78701-4255
            (512) 536-2437
 6          Counsel for Plaintiff State of Texas
 7
 8          STATE OF TEXAS
            OFFICE OF THE ATTORNEY GENERAL
 9          BY:  OBINNA ILOANI, ESQUIRE (Via Zoom)
                 obinna.iloani@oag.texas.gov
10          300 West 15th Street
            Austin, Texas 78701
11          (512)463-2100
            Counsel for Plaintiff State of Texas
12
13          FRESHFIELDS BRUCKHAUS DERINGER LLP
            BY:  ROBERT MCCALLUM, ESQUIRE
14               rob.mccallum@freshfields.com
                 ROBERT BARTON, ESQUIRE  (via Zoom)
15               robert.barton@freshfields.com
            3 World Trade Center
16          175 Greenwich Street
            New York, New York 10007
17          (212) 277-4000
            Counsel for Google LLC
18
19      ALSO PRESENT:
20          MARA BOUNDY, ESQUIRE
            Google LLC
21
22          JEFF NIEMCZURA, ESQUIRE (via Zoom)
            Google LLC
23
24          LORI AINTABLIAN, ESQUIRE (via Zoom)
            Google LLC
25
```

HIGHLY CONFIDENTIAL

Page 3

1      APPEARANCES:

2      ALSO PRESENT (continued):

3           JONATHAN JAFFE (via Zoom)

4

5      TRIAL TECHNICIAN/VIDEOGRAPHER:

6           DAN LAWLOR

       Golkow - Veritext

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

HIGHLY CONFIDENTIAL

Page 4

1                         INDEX

2

3       APPEARANCES                                    2

4       PROCEEDINGS                                    9

5

6       EXAMINATION OF  █████████████

7            BY MR. COLLIER                           10

8            BY MR. MCCALLUM                         247

9

10      CERTIFICATE                                  255

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

HIGHLY CONFIDENTIAL

```
                                              Page 5

 1                    DEPOSITION EXHIBITS

 2      NUMBER              DESCRIPTION            PAGE

 3      Exhibit 415        █████████LinkedIn        12

 4                         Profile

 5      Exhibit 416        Transcript of Proceedings,  32

 6                         In re Google Play Store

 7                         Antitrust Litigation

 8      Exhibit 417        Docket, USA v. Google       44

 9      Exhibit 418        12/2/11 Press Release,      45

10                         Statement of DOJ's Antitrust

11                         Division on its Decision to

12                         Close Its Investigation

13      Exhibit 419        8/9/12 Press Release, Google  47

14                         Will Pay $22.5 Million to

15                         Settle FTC Charges

16      Exhibit 420        1/3/13 Press Release, Google  48

17                         Agrees to Change Its

18                         Business Practices to

19                         Resolve FTC Competition

20                         Concerns

21      Exhibit 421        E-mail(s) re: Press Reports:  53

22                         FTC Investigation & Google

23                         Display, GOOG-DOJ-18360214 -

24                         GOOG-DOJ-18360221

25
```

HIGHLY CONFIDENTIAL

Page 6

| 1 | Exhibit 422 | Excerpt of Google Privilege | 56 |
| 2 | | Log | |
| 3 | Exhibit 423 | 5/16/24 Privilege Log | 59 |
| 4 | | Analysis | |
| 5 | Exhibit 424 | E-mail(s) re: CID to | 65 |
| 6 | | Alphabet Inc., | |
| 7 | | GOOG-NE-11319529 | |
| 8 | Exhibit 425 | State of Texas Civil | 70 |
| 9 | | Investigative Demand, | |
| 10 | | GOOG-UT-00000034 - | |
| 11 | | GOOG-UT-00000072 | |
| 12 | Exhibit 426 | E-mail(s) re: [Googlers] | 97 |
| 13 | | ██████████████████ | |
| 14 | | ██████████████████ | |
| 15 | | GOOG-DOJ-019569563 - | |
| 16 | | GOOG-DOJ-019569564 | |
| 17 | Exhibit 427 | PowerPoint, ████████, | 102 |
| 18 | | USDOJ-GOOGEX-000253 - | |
| 19 | | USDOJ-GOOGEX-000304 | |
| 20 | Exhibit 428 | 8/23/17 Chat History, | 127 |
| 21 | | GOOG-AT-MDL-008029060 - | |
| 22 | | GOOG-AT-MDL-008029061 | |
| 23 | | | |
| 24 | | | |
| 25 | | | |

HIGHLY CONFIDENTIAL

Page 7

| 1 | Exhibit 429 | Internal Document, | 143 |
| 2 | | Architecture - G Suite in | |
| 3 | | Regulated Industries, | |
| 4 | | GOOG-DOJ-28387270 - | |
| 5 | | GOOG-DOJ-28387342 | |
| 6 | Exhibit 430 | TLC Commitment Tracking | 150 |
| 7 | | Document, GOOG-DOJ-14815029 | |
| 8 | Exhibit 431 | Google Chat Retention | 158 |
| 9 | | Policy, | |
| 10 | | GOOG-AT-MDL-009709520 - | |
| 11 | | GOOG-AT-MDL-009709521 | |
| 12 | Exhibit 432 | Google Chat Retention | 176 |
| 13 | | Policy, | |
| 14 | | GOOG-AT-MDL-009709508 - | |
| 15 | | GOOG-AT-MDL-009709509 | |
| 16 | Exhibit 433 | Google Chat Retention | 186 |
| 17 | | Policy, | |
| 18 | | GOOG-AT-MDL-009709522- | |
| 19 | | GOOG-AT-MDL-009709523 | |
| 20 | Exhibit 434 | Google Chat Retention | 190 |
| 21 | | Policy, | |
| 22 | | GOOG-AT-MDL-009709506 - | |
| 23 | | GOOG-AT-MDL-009709507 | |
| 24 | | | |
| 25 | | | |

Page 8

1    Exhibit 435        Google Chat Retention        190

2                       Policy,

3                       GOOG-AT-MDL-009709518 -

4                       GOOG-AT-MDL-009709519

5    Exhibit 436        2/9/23 Chat History,          209

6                       GOOG-AT-MDL-008548075 -

7                       GOOG-AT-MDL-008548077

8    Exhibit 437        10/12/21 Chat History,        212

9                       GOOG-AT-MDL-B-004073824 -

10                      GOOG-AT-MDL-B-004073826

11   Exhibit 438        Findings of Fact and          222

12                      Conclusions of Law Re Chat

13                      Preservation

14   Exhibit 439        Matrix of Produced Chats by   233

15                      year with notations by

16                      witness

17

18

19

20

21

22

23

24

25



HIGHLY CONFIDENTIAL

Page 18

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25



Page 19



HIGHLY CONFIDENTIAL

Page 20



Page 44



```
17          Q.    I will hand you tab O, as in
18      Oscar, what we'll mark as Exhibit 417.
19                (Google/         Deposition
20          Exhibit 417, Docket, USA v. Google,
21          was marked for identification.)
22      BY MR. COLLIER:
23          Q.    And I'm not going to ask you
24      any questions specifically about the
25      document.  I'll represent to you that that is
```

HIGHLY CONFIDENTIAL

Page 45

1    just a docket sheet on a certain case, in

2    case you wanted to refer to it.

3                 But my first question is going

4    to be:  Are you aware of a 2011 antitrust

5    case, U.S. versus Google, involving when

6    Google bought ITA software?

7                 MR. MCCALLUM:  Objection,

8         scope.

9         A.    No, I'm not aware.

10   BY MR. COLLIER:

11        Q.    Okay.  So you wouldn't know

12   when or if Google issued a litigation hold

13   for that 2011 case?

14                 MR. MCCALLUM:  Objection,

15        scope.

16        A.    No, I wouldn't.

17   BY MR. COLLIER:

18        Q.    I'm going to hand you tab Q,

19   Exhibit 418.

20                 (Google/████ Deposition

21        Exhibit 418, 12/2/11 Press Release,

22        Statement of DOJ's Antitrust Division

23        on its Decision to Close Its

24        Investigation, was marked for

25        identification.)

HIGHLY CONFIDENTIAL

Page 46

```
 1      BY MR. COLLIER:
 2            Q.      And again, sir, you're free to
 3      look at it, but I really just gave you that
 4      for your reference to ask -- and I know this
 5      is prior to your tenure.  I just need to know
 6      what you know and what you are aware of.
 7                    Are you aware that there was a
 8      2011 investigation by the DOJ of Google's
 9      acquisition of Admeld, A-D-M-E-L-D, Inc.?
10                    MR. MCCALLUM:  Objection,
11            scope.
12            A.      No, I'm not aware.
13      BY MR. COLLIER:
14            Q.      So if I was to ask you a series
15      of questions about when Google issued a
16      litigation hold or when it ended, you
17      wouldn't know?
18                    MR. MCCALLUM:  Objection,
19            scope.
20            A.      Correct, I wouldn't know.
21      BY MR. COLLIER:
22            Q.      Okay.
23                    MR. COLLIER:  I'll hand you
24            Exhibit 419, which is tab T, T as in
25            turtle or Tom.
```

Page 47

1           (Google/⬛⬛⬛Deposition

2           Exhibit 419, 8/9/12 Press Release,

3           Google Will Pay $22.5 Million to

4           Settle FTC Charges, was marked for

5           identification.)

6     BY MR. COLLIER:

7           Q.    Are you aware that Google, in

8     or about August of 2012, paid $22.5 million

9     for FTC charges related to DoubleClick?

10               MR. MCCALLUM:  Objection,

11          scope.

12          A.    No, I'm not aware.

13    BY MR. COLLIER:

14          Q.    So if I was to ask you when the

15    litigation hold would have began or ended or

16    who was covered by it, you wouldn't know?

17               MR. MCCALLUM:  Objection,

18          scope.

19          A.    That's right.

20    BY MR. COLLIER:

21          Q.    And what is DoubleClick, by the

22    way?

23          A.    At a very general level, I

24    believe it's an ad marketplace technology.

25          Q.    And who owns DoubleClick today?

HIGHLY CONFIDENTIAL

Page 48

1          A.     I believe Google owns

2      DoubleClick, or acquired DoubleClick.

3          Q.     As we sit here today, whether

4      related to Exhibit 419 or otherwise, are you

5      aware of any litigation holds that would have

6      covered, say, chats related to DoubleClick --

7                 MR. MCCALLUM:   Objection,

8          scope.

9      BY MR. COLLIER:

10         Q.     -- or its acquisition?

11         A.     I'm not aware of any.

12         Q.     Okay.  I'll hand you

13     Exhibit 420, tab CC, Charlie-Charlie.

14                (Google,          Deposition

15         Exhibit 420, 1/3/13 Press Release,

16         Google Agrees to Change Its Business

17         Practices to Resolve FTC Competition

18         Concerns, was marked for

19         identification.)

20     BY MR. COLLIER:

21         Q.     And I'll represent to you, sir,

22     that this is a January 2013 press release

23     regarding a Google settlement with the FTC

24     related to AdWords.

25                First of all, do you know what

HIGHLY CONFIDENTIAL

Page 49

1      AdWords are?

2            A.      I don't.

3            Q.      Okay.  Then I presume you are

4      not aware, because it's prior to your time,

5      about the Google settlement with the FTC

6      related to AdWords?

7                   MR. MCCALLUM:  Objection,

8            scope.

9            A.      Correct, I'm not aware.

10     BY MR. COLLIER:

11           Q.      Okay.  And then therefore, you

12     wouldn't know if, related to this 2013

13     settlement with AdWords, if there was a

14     litigation hold, who would be covered by it,

15     when it would have began or when it would

16     have ended?

17                  MR. MCCALLUM:  Objection,

18           scope.

19           A.      Correct, I wouldn't be aware.

20     BY MR. COLLIER:

21

22

23

24

25

HIGHLY CONFIDENTIAL

Page 50

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25



HIGHLY CONFIDENTIAL

Page 51



```
 1
 2
 3
 4
 5
 6
 7
 8
 9
10
11
12
13
14
15
16            Q.      Okay.  Couple more of these,
17      and then we'll take a short break.
18            A.      Sure.
19                    MR. COLLIER:  Actually, this is
20            a good breaking point, if you don't
21            mind.  Do you want to take five or ten
22            minutes?
23                    THE WITNESS:  Sure.
24                    THE VIDEOGRAPHER:  We're going
25            off the record.  The time is 9:54.
```

HIGHLY CONFIDENTIAL

Page 52

1           (Recess taken, 9:54 a.m. to

2        10:03 a.m. PDT)

3             THE VIDEOGRAPHER:  We are going

4        back on the record.  The time is

5        10:03.

6    BY MR. COLLIER:

7        Q.    ███████████    were you able to get

8    some water and take a break?

9        A.    Yes, I was.  Thanks.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

HIGHLY CONFIDENTIAL

Page 53



12          Q.      Do you happen to know when the
13     DoubleClick acquisition was?
14          A.      No, I don't.
15          Q.      If I told you it was
16     approximately 2007, would that -- does that
17     sound right, or you just have no way of
18     knowing?
19          A.      I have no way of knowing.
20          Q.      Okay.  I'm going to hand you
21     what we're marking Exhibit 421, which is tab
22     J, as in Juliet.
23                  (Google/          Deposition
24          Exhibit 421, E-mail(s) re: Press
25          Reports: FTC Investigation & Google

HIGHLY CONFIDENTIAL

Page 54

```
 1              Display, GOOG-DOJ-18360214 -
 2              GOOG-DOJ-18360221, was marked for
 3              identification.)
 4         BY MR. COLLIER:
 5              Q.     And I'll ask you if this is a
 6         document you've ever seen.
 7              A.     No, I've never seen this.
 8              Q.     Do you see on the face of the
 9         document that this is an e-mail from Neal
10         Mohan, on May 24th, 2013, at 8:29 p.m.?
11              A.     Yes, that's what it says.
12              Q.     To Susan Wojcicki.
13                     I'm sure I'm pronouncing that
14         horribly, but W-O-J-C-I-C-K-I?
15              A.     Yes, that's what it says.
16              Q.     And who is Mr. Mohan?
17              A.     Well, today, Mr. Mohan is the
18         CEO of YouTube.
19              Q.     And who is Susan Wojcicki?
20              A.     Susan was the previous CEO of
21         YouTube.
22              Q.     So these are high-level people
23         corresponding, right?
24              A.     I don't know what Neal's role
25         was at that point.
```

HIGHLY CONFIDENTIAL

Page 55

1          Q.     If I tell you he was senior

2     vice president of display and video ads at

3     Google at that point, would you have any

4     reason to disagree with that?

5          A.     I wouldn't know what his role

6     was.

7          Q.     If I told you Susan Wojcicki's

8     role was senior VP of advertising and

9     commerce, would you have any reason to

10    disagree?

11         A.     No, I wouldn't know the

12    specifics.

13         Q.     Okay.  So are you generally

14    aware that the FTC began a 2013 investigation

15    into Google's Ad Tech?

16              MR. MCCALLUM:  Objection,

17         beyond the scope of this deposition.

18         A.     I don't have any knowledge of

19    that.

20    BY MR. COLLIER:

21         Q.     So -- and I apologize.  I know

22    these questions are repetitive, but would it

23    be fair to say, then, that you don't have any

24    knowledge of whether or not Google initiated

25    a litigation hold for this FTC investigation,

HIGHLY CONFIDENTIAL

Page 56

1      who it would have covered and when it would

2      have ended?

3                    MR. MCCALLUM:  Objection,

4          scope.

5          A.      Correct, I wouldn't have any

6      knowledge of that.

7      BY MR. COLLIER:

8          Q.      But are you generally aware of

9      what litigation holds are in effect today?

10         A.      Not the specifics of the

11     individual holds.

12         Q.      All right.  So I'm going to

13     show you what we're going to mark as

14     Exhibit 422, tab III.

15                    (Google/████████ Deposition

16         Exhibit 422, Excerpt of Google

17         Privilege Log, was marked for

18         identification.)

19     BY MR. COLLIER:

20         Q.      And I apologize for the small

21     print.  This is how it was produced to us.

22                    And I will represent to you

23     that this is a portion of Google's privilege

24     log in this case.

25                    Have you ever seen Google's

HIGHLY CONFIDENTIAL

Page 57

1          privilege log, by the way?

2                          MR. MCCALLUM:  Objection,

3                scope.

4                A.      No, I have not.

5          BY MR. COLLIER:

6                Q.      Okay.  And I believe I saw you

7          looking at the e-mail that was 421 as well as

8          422, so you may have anticipated my

9          questions.

10

11

12

13

14

15

16

17

18

19         BY MR. COLLIER:

20               Q.      Okay.  Let me try something a

21         little --

22                          But you are a lawyer as we

23         discussed, right?

24               A.      That's right.

25               Q.      And what is your understanding

HIGHLY CONFIDENTIAL

Page 61

```
 1              MR. COLLIER:  I'm not going to
 2         make him swear to this.  This is our
 3         work product, not his, but I am
 4         entitled to ask him if he knows.
 5    BY MR. COLLIER:
 6         Q.    So, sir, just so I can ask you
 7    if you know, do you know, from -- and I will
 8    also represent to you on this chart, where it
 9    says 1900 and N/A, those are documents that
10    for whatever reason are not dated.
11              MR. COLLIER:  Log entries are
12         not dated?  Okay.
13    BY MR. COLLIER:
14         Q.    With that said, do you know,
15    other than this chart or with this chart or
16    in any way, how many documents Google has
17    withheld from production due to an
18    anticipation of litigation narrative in their
19    privilege log?
20              MR. MCCALLUM:  Objection, scope
21         and form.
22         A.    I do not know.
23    BY MR. COLLIER:
24
25
```

HIGHLY CONFIDENTIAL

Page 62



```
21       BY MR. COLLIER:
22              Q.      Okay.   When did Google have an
23       anticipation of litigation regarding the
24       State of Texas's claims in this matter?
25              A.      I don't know.
```

Page 63

1          Q.      Okay.  So if I'm -- and I don't
2     want to ask you questions you don't know; I'm
3     just asking if you know.  If we were to go
4     through these thousands of documents, or at
5     least the privilege log entries, these
6     thousands of documents withheld under
7     anticipation of litigation, is it your
8     testimony you couldn't tell me anything that
9     you couldn't learn from reading from the
10    privilege log itself?
11         A.      I just legitimately don't have
12    any knowledge of the specifics here, so...
13         Q.      Well, that's what I mean.  I'm
14    just trying to save time.
15         A.      Mm-hmm.
16         Q.      There are thousands of
17    documents, and I will represent this to you.
18    There are thousands and thousands of
19    documents on Google's privilege log that
20    reference in anticipation of litigation.  And
21    I can walk you through this privilege log if
22    you'd like.  But if your answer is:  I don't
23    have any knowledge of any of the documents on
24    that log and wouldn't be able to tell you
25    anything other than it's a privilege log,

HIGHLY CONFIDENTIAL

Page 64

1    that's fair, and I won't ask you.

2                    Or we can do it.

3          A.      That's what I'm saying.  I

4    don't have any knowledge of any specific

5    documents on that log.

6          Q.      And you don't have any

7    knowledge of when Google, the entity, decided

8    there was an anticipation of litigation in

9    this case, the State of Texas matter?

10         A.      Correct, I don't have any

11   knowledge.

12         Q.      You understand as a lawyer,

13   companies place on privilege logs documents

14   that are relevant but are not going to be

15   disclosed due to an assertion of privilege,

16   right?

17         A.      As a general matter, yes, I

18   agree.

19         Q.      Okay.  When did Google first

20   learn that the State of Texas, and the other

21   states in this case led by the State of

22   Texas, was investigating its Ad Tech

23   practices?

24                    MR. MCCALLUM:  Objection,

25              scope.

Page 65

1          A.     I don't know.

2     BY MR. COLLIER:

3          Q.     Okay.  I'm going to hand you

4     what I've marked as -- it's tab B, as in boy.

5     Exhibit 424.

6                    (Google/          Deposition

7          Exhibit 424, E-mail(s) re: CID to

8          Alphabet Inc., GOOG-NE-11319529, was

9          marked for identification.)

10     BY MR. COLLIER:

11          Q.     The front page is some

12     metadata.  You know what metadata is, right?

13          A.     Yes.

14          Q.     Just so we can say it, what is

15     metadata?

16          A.     It's data that gives you

17     additional details about a particular digital

18     artifact.

19          Q.     So, for example, if this

20     metadata came from Google, we can rely on the

21     From and the To categories as being who this

22     e-mail was sent from and who it was sent to,

23     right?

24          A.     As a general matter, yes,

25     that's right.

HIGHLY CONFIDENTIAL

Page 66

1          Q.     If you can turn to the e-mail

2      itself.

3                 [Document review.]

4      BY MR. COLLIER:

5          Q.     Have you had a chance to review

6      this page?

7          A.     Yes.

HIGHLY CONFIDENTIAL

Page 67



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

HIGHLY CONFIDENTIAL

Page 68



HIGHLY CONFIDENTIAL

Page 69



HIGHLY CONFIDENTIAL

Page 70



```
14        Q.     Okay.  All right.  I'm going to
15   hand you what we've marked as tab D, which
16   will be Exhibit 425.
17              (Google/        Deposition
18        Exhibit 425, State of Texas Civil
19        Investigative Demand,
20        GOOG-UT-00000034 - GOOG-UT-00000072,
21        was marked for identification.)
22              [Document review.]
23   BY MR. COLLIER:
24        Q.     Have you had a chance to look
25   at it?
```

HIGHLY CONFIDENTIAL

Page 71

1           A.     Just the first couple of pages.

2           Q.     And I'm going to presume -- I

3     shouldn't presume anything.

4                  Have you ever reviewed this

5     Civil Investigative Demand?

6           A.     No.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

HIGHLY CONFIDENTIAL

Page 72



HIGHLY CONFIDENTIAL

Page 73



HIGHLY CONFIDENTIAL

Page 76



HIGHLY CONFIDENTIAL

Page 77



HIGHLY CONFIDENTIAL

Page 78



HIGHLY CONFIDENTIAL

Page 79



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

HIGHLY CONFIDENTIAL

Page 80

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25



HIGHLY CONFIDENTIAL

Page 81



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

*    *    *

HIGHLY CONFIDENTIAL

Page 82

1        BY MR. COLLIER:

2             Q.     So what is the default -- or

3        "default" is probably not the right word.

4                   When you say you use Chat, is

5        it -- just today, when you go back to your

6        office, or I guess you're remote.  When you

7        go back to chatting, what is the name of the

8        program you are using?  Is it Google Chat?

9             A.     It's Google Chat today.

10            Q.     And you don't use any

11       third-party applications to chat, do you?

12            A.     No, I don't.

13            Q.     You wouldn't use Apple

14       Messenger or anything?

15            A.     No, not at work.

16            Q.     Yes.

17            A.     Yeah.

18

19

20

21

22

23

24

25

HIGHLY CONFIDENTIAL

Page 89

1              MR. MCCALLUM:  Objection to

2          scope.

3              A.      -- I'm not aware.

4      BY MR. COLLIER:

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

HIGHLY CONFIDENTIAL

Page 90

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25



HIGHLY CONFIDENTIAL

Page 91



HIGHLY CONFIDENTIAL

Page 92



HIGHLY CONFIDENTIAL

Page 96



```
 1
 2
 3
 4
 5
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21          Q.     Okay.  I'm going to switch to
22     another topic.  Do you want to take a five-
23     or ten-minute break?
24          A.     I'm fine.  We can keep going.
25          Q.     All right.  I'm handing you
```

HIGHLY CONFIDENTIAL

Page 97

1    what is tab K and will be Exhibit 426.

2                   (Google/██████eposition

3              Exhibit 426, E-mail(s) re: [Googlers]

4    ████████████████████████████████████████

5    ████████████████████████████████████████

6              GOOG-DOJ-019569563 -

7              GOOG-DOJ-019569564, was marked for

8              identification.)

9    BY MR. COLLIER:

10        Q.    Just ask you to review this

11   document.

12              [Document review.]

13        A.    Okay.

14   BY MR. COLLIER:

15        Q.    You good?

16        A.    Yeah.

17   ████████████████████████████████████████

18   ████████████████████████████████████████

19   ████████████████████████████████████████

20   ████████████████████████████████████████

21   ████████████████████████████████████████

22   ████████████████████████████████████████

23   ████████████████████████████████████████

24   ████████████████████████████████████████

25   ████████████████████████████████████████

HIGHLY CONFIDENTIAL

Page 98

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25



HIGHLY CONFIDENTIAL

Page 99

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25



HIGHLY CONFIDENTIAL



Page 100

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

HIGHLY CONFIDENTIAL

Page 101



HIGHLY CONFIDENTIAL

Page 102



1

2

3

4

5

6

7

8

9

10

11

12

13

14

15    BY MR. COLLIER:

16         Q.    I'm going to hand you what has

17    been marked tab R.  And this will be Exhibit

18    427.

19              (Google,          Deposition

20         Exhibit 427, PowerPoint,

21                      USDOJ-GOOGEX-000253 -

22         USDOJ-GOOGEX-000304, was marked for

23         identification.)

24    BY MR. COLLIER:

25

Page 103



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23          MR. COLLIER:  Okay.  All right.
24      Let's take -- it's 11:00.  Let's take
25      a five- or ten-minute break, whatever

HIGHLY CONFIDENTIAL

Page 104

1           you want, and I'll move around some

2           documents.

3                   THE WITNESS:  Okay.

4                   THE VIDEOGRAPHER:  Going off

5           the record.  The time is 11:00.

6                   (Recess taken, 11:00 a.m. to

7           11:08 a.m. PDT)

8                   THE VIDEOGRAPHER:  We are going

9           back on the record.  The time is

10          11:08.

11     BY MR. COLLIER:

12          Q.      ████████        is it fair to define

13     Google Chat as a communications instant

14     messaging tool?

15          A.      Yeah, that sounds right.

16          Q.      And the reason Google offers

17     Google Chat as a tool for its employees is to

18     enhance collaboration and communication among

19     employees?

20          A.      I don't know if they've used

21     that exact words, but that's been my

22     experience, yes.

23          Q.      Okay.  Let's go to Exhibit 416,

24     if that's your transcript.

25                  Okay.  If you want to go, it's

HIGHLY CONFIDENTIAL

Page 119



HIGHLY CONFIDENTIAL

Page 120



HIGHLY CONFIDENTIAL

Page 121



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

HIGHLY CONFIDENTIAL

Page 135



HIGHLY CONFIDENTIAL

Page 136



21   BY MR. COLLIER:

22          Q.      Let's go back to Exhibit 416,

23      your testimony before Judge Donato.

24                  Ask you to go to page 68.   Look

25      at lines 11 to 13.

Page 137

1          A.      Mm-hmm.

2          Q.      And you were asked:  And

3     they -- meaning Google employees -- know that

4     off-the-record chats are not retained, right?

5                  And what did you answer?

6          A.      I said:  I assume so.

7          Q.      Is that truthful testimony?

8          A.      Yes.

9          Q.      Would you agree with me that

10    information in chats could remain potentially

11    useful forever?

12                 MR. MCCALLUM:  Object to the

13         form.

14         A.      I couldn't say if -- I mean,

15    I'd have to look at specific instances to

16    give you that answer.

17    BY MR. COLLIER:

18         Q.      Well, as the information

19    governance lead, you'd agree with me that

20    chats can contain potentially relevant

21    information, either for or against Google, in

22    ongoing litigation, right?

23         A.      In theory, yes.

24    

25

HIGHLY CONFIDENTIAL

Page 180



HIGHLY CONFIDENTIAL

Page 181



HIGHLY CONFIDENTIAL

Page 182



HIGHLY CONFIDENTIAL

Page 183



HIGHLY CONFIDENTIAL

Page 184

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25



HIGHLY CONFIDENTIAL

Page 185

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25



HIGHLY CONFIDENTIAL

Page 186

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25



HIGHLY CONFIDENTIAL

Page 187



HIGHLY CONFIDENTIAL

Page 188



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

HIGHLY CONFIDENTIAL

Page 189



20          MR. COLLIER:  I'm going to take

21     a break just because I'm going to

22     cough.

23          THE VIDEOGRAPHER:  We're going

24     off the record.  The time is 1:28.

25          (Recess taken, 1:28 p.m. to

HIGHLY CONFIDENTIAL

Page 217

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25



HIGHLY CONFIDENTIAL

Page 218

1

2

3

4

5

6

7

8

9

10

11

12

13    BY MR. COLLIER:

14         Q.    Are you aware of the -- you

15    testified in the Epic case, the federal court

16    case we talked about.

17               Do you recall that?

18         A.    Mm-hmm.

19         Q.    Do you know what overlap there

20    is in the custodians in the Epic or the

21    Google Play Store case that you testified in

22    and in the case we're here about, Texas

23    antitrust case?

24         A.    No, I don't.

25         Q.    In the Epic case, there is

Page 219

1      testimony about a system-wide backend log.

2                      Are you familiar with that?

3                      MR. MCCALLUM:   Objection to

4           scope.

5           A.     I'm familiar with logs, yes.

6      BY MR. COLLIER:

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

HIGHLY CONFIDENTIAL

Page 220

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25



HIGHLY CONFIDENTIAL

Page 221



Golkow Technologies,
A Veritext Division

HIGHLY CONFIDENTIAL

Page 222



```
14        Q.      All right.  I'm going to hand
15   you tab NNN, which we will mark as
16   Exhibit 438.
17               (Google/        Deposition
18         Exhibit 438, Findings of Fact and
19         Conclusions of Law Re Chat
20         Preservation, was marked for
21         identification.)
22   BY MR. COLLIER:
23        Q.      Tell me when you've had a
24   chance to look at it.
25               [Document review.]
```

Page 223

1          A.      I've taken a look at the first

2     couple of pages.  I mean, I can keep reading

3     if you want me to read all of it.

4     BY MR. COLLIER:

5          Q.      Well, let me just ask this

6     question then.

7          A.      Okay.

8          Q.      Have you ever seen Exhibit 438

9     before today?

10          A.      I haven't read it personally,

11     no.

12          Q.      Do you -- I'll represent to

13     you, as the title says, that this is the

14     Court's Finding of Fact and Conclusions of

15     Law Re chat preservation.

16          A.      Yes.

17          Q.      And you know that this is based

18     on, in part, the hearing in which you

19     testified, right?

20               MR. MCCALLUM:  Object to the

21          scope.

22          A.      That's right.

23     BY MR. COLLIER:

24          Q.      And at no point after you

25     testified did you ask to review what the

Page 228

1     employees as a single collection.

2     BY MR. COLLIER:

3          Q.     Okay.  Let's go to paragraph 14

4     on page 6.

5                The Court found that, the first

6     sentence:  Google Chat is an essential tool

7     used daily by Google employees.

8                Do you have any reason to

9     disagree with that?

10               MR. MCCALLUM:  Object, scope.

11         A.     In my personal experience,

12    that's correct.

13    BY MR. COLLIER:

14         Q.     Okay.  Paragraph 15.

15               The Court found:  There are no

16    restrictions on the content and topics on

17    Chat, hearing transcript at 47:2-10.  Parens,

18    Chat can be used for, quote, anything under

19    the sun that employees want to communicate,

20    end quote.

21               Is that accurate?

22               MR. MCCALLUM:  Objection,

23         scope.

24         A.     Yes, the product does not

25    restrict you from typing in anything that you

Page 229

1    might be interested in communicating.

2    BY MR. COLLIER:

3          Q.      Nor does Google.  Right?

4                  You can -- Google employees can

5    use Google Chat for business things, right?

6          A.      Correct.

7          Q.      Birth announcements, which are

8    not a Google business thing, right?

9          A.      Correct.

10         Q.      Paragraph 29 on page 9.

11                 Now, the first sentence here

12   says:  Google has the technical ability to

13   set Chat history to, quote, on, as the

14   default for all employees who are subject to

15   a legal hold, but it chooses not to, period.

16   ████████████████████████████████████████

17   ████████████████████████████████████████

18   ████████████████████████████████████████

19   ████████████████████████████████████████

20   ████████████████████████████████████████

21   BY MR. COLLIER:

22         Q.      Let's go to paragraph 32.

23                 The Court found:  Google did

24   not check to see if custodians were actually

25   preserving relevant Chats as directed by the

HIGHLY CONFIDENTIAL

Page 230

1      hold notice, and did nothing in the way of

2      auditing or monitoring Chat preservation.

3                  MR. MCCALLUM:  Objection,

4          scope.

5          A.    Is there a question?

6      BY MR. COLLIER:

7          Q.    There is a question.  Under

8      oath, sir, is this finding by the Court true,

9      or not?

10                 MR. MCCALLUM:  Objection to

11         scope.

12         A.    Well, as we've discussed, there

13     is no technical ability to monitor the

14     content of chats to determine relevance in

15     the normal course of business.

16     BY MR. COLLIER:

17         Q.    And then the second sentence

18     says:  There is no evidence establishing that

19     Google did any individualized follow-up on

20     Chat preservation with the hold recipients,

21     including those designated as custodians.

22                 Is that true, sir?

23                 MR. MCCALLUM:  Objection,

24         scope.

25     ████████████████████████████████████████

HIGHLY CONFIDENTIAL

Page 255

1              C E R T I F I C A T E

2

3              I, DEBRA A. DIBBLE, RDR, CRR, CRC,

4        Notary Public, do hereby certify:

5              That ███████████, the witness

6        whose deposition is hereinbefore set forth,

7        was duly sworn by me and that such deposition

8        is a true record of the testimony given by

9        such witness;

10             That pursuant to FRCP Rule 30,

11        signature of the witness was not requested by

12        the witness or other party before the

13        conclusion of the deposition;

14             I further certify that I am not

15        related to any of the parties to this action

16        by blood or marriage, and that I am in no

17        way interested in the outcome of this matter.

18             IN WITNESS WHEREOF, I have

19        hereunto set my hand on 18th day of May,

20        2024.

21

22        _Debra A. Dibble_

          Debra A. Dibble TX CSR-10777

23        Fellow of the Academy of Professional

          Reporters

24        Registered Diplomate Reporter

          Certified Realtime Reporter

25        Notary Public 11/17/2027