**FILED UNDER SEAL**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| THE STATE OF TEXAS, et al., | § § § | |
| Plaintiffs, | § | |
| v. | § | Civil Action No. 4:20-cv-00957-SDJ |
| | § | |
| GOOGLE LLC, | § § | |
| Defendant. | § | |

**GOOGLE'S OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL WRITTEN DISCOVERY REGARDING GOOGLE CHATS**

**FILED UNDER SEAL**

## INTRODUCTION

Google disclosed its Chat preservation process to Plaintiffs four years ago, during the pre-litigation stage of this matter. Plaintiffs confirmed their understanding of that process, including that Chat messages would be lost if not manually marked "history on," and did not raise any objections or concerns. The Federal Rules require parties to coordinate their discovery efforts early in litigation precisely to avoid the kind of gamesmanship that Plaintiffs are engaging in now, and Plaintiffs failed to do so. *See generally* Fed. R. Civ. P. 26.

Since Plaintiffs confirmed their understanding of Google's processes, hundreds of thousands of individual Chat messages have been produced in this case, and Google estimates it has collected millions more for the agreed custodians. Ex. 1. If Plaintiffs had a genuine concern about the reasonableness of Google's retention process then they should have raised it years ago when it was disclosed instead of waiting until now. There is no justification for entertaining Plaintiffs' requests for documents and information that pre-date any preservation obligation in this case, that are privileged, or that were collected in unrelated cases.

But now, Plaintiffs allege an illogical and unsubstantiated company-wide conspiracy dating back to 2007 to "prevent production of communications" relevant to allegations that Plaintiffs only began investigating *12 years later*. Given the nonsensical premise of a plan to avoid something that did not exist, it is no surprise that Plaintiffs have no evidence to support their wild conspiracy theory from the mountain of discovery they have received. Plaintiffs now have 100 transcripts of testimony from current and former Google employees and asked over 500 Chat-related questions, in addition to conducting an entire 30(b)(6) deposition on retention processes (including the process for Chat retention). Nobody testified that they deleted Chat messages. Nobody instructed others to delete messages or to avoid discovery obligations; nobody testified that they were so instructed. Plaintiffs proffered their conspiracy theory directly to a handful of deponents and all of them forcefully rejected it.

Ex. 2; *infra* at 11.  There was no conspiracy, and Plaintiffs have not pointed to any "specific" or "material" deficiency in Google's productions that would justify yet more discovery-on-discovery.  *See VeroBlue Farms USA Inc. v. Wulf*, 345 F.R.D. 406, 420 (N.D. Tex. 2021).

Instead, Plaintiffs point to a handful of Chat messages, emails, and trainings, many of which pre-date any kind of preservation obligation in this case or have nothing to do with ad tech.  Plaintiffs did not ask deponents in this case about the documents they now portray as smoking guns and ask the Court to draw sweeping inferences that do not survive scrutiny.  Litigants in other cases have asked about these same documents and the resulting testimony contradicts Plaintiffs' conspiracy theory.  *Infra* at 11.

Plaintiffs' complaints also ring hollow because they have failed to comply with even the most basic preservation obligations incumbent on any civil litigant in federal court.  Five State Plaintiffs admitted that they did not issue litigation hold notices.  Their productions have been paltry.  And Puerto Rico is only just now beginning its productions—two months after the close of fact discovery.  It would be inequitable to reward Plaintiffs by indulging their conspiracy theories and prolonging their discovery-on-discovery sideshow.

Plaintiffs have utterly failed to show any prejudice from the retention policy they knew full well about or a "specific" and "material" deficiency in Google's massive production that warrants revisiting the protective order limiting discovery-on-discovery in this case.  The Court should deny Plaintiffs' motion.

## BACKGROUND

### A.  Google Disclosed Its Chats Retention Process to Plaintiffs in 2020

Texas announced its antitrust investigation into Google's ad tech products on September 9, 2019.  Shortly thereafter, Google issued its first wave of 44 litigation hold notices.  By the end of 2019, Google had placed over 130 employees on litigation hold.

**FILED UNDER SEAL**

Google's litigation hold notice contained specific instructions regarding the preservation of Google Chat and Hangouts.[1] Google instructed employees not to use these instant messaging applications to discuss any topics covered by the legal hold and that, if they must, then they should preserve the messages by switching to "history on."

Google disclosed its Chat retention processes to Texas beginning in January 2020:

- Google disclosed that "Google Hangouts messages are generally retained for a period of 30 days if they have been marked on-the-record, and potentially longer if the custodian of the on-the-record messages are on legal hold." Ex. 3 at 3.

- Texas then confirmed its understanding that "[Chat] messages are not retained in any way unless they are marked on-the-record by the user." Ex. 4 at 2.

- And Google responded that "Hangout messages by default are set to be 'off-the-record.' Off-the-record messages are not retained by Google," and that "Google instructs custodians on a legal hold to preserve relevant materials, including an instruction to preserve relevant Hangout conversations by putting those conversations 'on-the-record' on a message-by-message basis." Ex. 5 at 4.

Google had this process for placing Chat messages on hold because Google assessed that Chat messages , Ex. 6 at 124:7-9, and that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ *id.* at 120:22-121:4, such that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ *Id.* at 124:23-24.[2]

For the period September 9, 2019 to February 7, 2023 (the "Relevant Retention

---

[1] The predecessor application to Chat was called "Hangouts." Similarly, "on-the-record" was an earlier terminology for "history on" functionality.

[2] Google has publicly disclosed the instructions it gave litigation hold recipients regarding Chat usage in response to questioning from Judge Donato and with an understanding that this disclosure would not waive privilege or work product protection over the hold notice itself or any other instructions it contained. *See* Hr'g Tr. at 42:8-43:3, *In re Google Play Store Litigation*, No. 21-md-02981-JD (N.D. Cal. Jan 12, 2023) ("I'm taking the position that you can ask the questions and you're not going to face a waiver.").

Period"),[3] Google has collected hundreds of thousands of Chat conversations for the agreed custodians in this case. Ex. 1. From that collection, Google produced approximately 8,700 Chat conversations, including over 470,000 individual Chat messages. *Id.*

Plaintiffs filed suit on December 16, 2020. In a sprawling 358-paragraph Complaint, Plaintiffs challenged a range of conduct beginning with Google's acquisition of DoubleClick in 2008. The vast majority of the allegations in the Complaint (including the four amended complaints that have followed) relate to products and optimizations that are alleged to have been developed and implemented long before Google was under any obligation to retain documents in this case.[4] Appendix A; *see infra* at 11.

The parties negotiated an ESI Order over the course of ten months between April 2022 and February 2023. Google raised various preservation issues with Plaintiffs, but Plaintiffs refused to meaningfully engage.[5] Despite having full knowledge of the retention processes of which they now complain, Plaintiffs raised no concerns with those processes, confirmed their understanding of them, and did not request that Google change them.

### B. Google Produced A Massive Amount of ESI And Discovery-On-Discovery

Google has produced over 6.3 million documents in this case. Those productions result from running more than 200 agreed search terms across the files of more than 180 agreed custodians. Google has also produced more than 750 terabytes of data, including more than 40 custom datasets, seven of which are bid-level datasets that took Google engineers several months to create. Google has made available more than 80 gigabytes of

---

[3] On February 8, 2023, Google implemented a new technical process that turned "history on" and automatically preserved all Chat messages for Google employees whose documents and communications were placed on legal hold in connection with this matter. Google's corporate representative testified that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* at 138:6-15.
[4] The Special Master has stated that "[o]nce the Texas Attorney General's investigation of Google began in September 2019, Google had an obligation to preserve relevant Information." ECF No. 428 at 5.
[5] *See, e.g.*, Exs. 7-10.

source code for inspection.[6] Plaintiffs have access to approximately 100 transcripts of testimony by current and former Google employees.[7]

On top of this, Plaintiffs have significant discovery-on-discovery regarding Chat. Google has produced to Plaintiffs the output of Chat-related discovery-on-discovery negotiated with plaintiffs in the Virginia Case. This includes Chat messages hitting on search terms related to the application's history setting and the results of a survey of 35 custodians in this case (chosen by plaintiffs in the Virginia Case) regarding their usage of Chat. Ex. 11. And Plaintiffs have asked over 500 questions of Google deponents regarding Chat usage.

### C. Plaintiffs Failed to Discharge Their Basic Discovery Obligations

In sharp contrast with Google's massive production, Plaintiffs' productions have been paltry. South Dakota produced its document retention policy and nothing else. Mississippi produced one document. Idaho, Missouri, Alaska, and South Carolina all produced less than 50 documents. No Plaintiff State has produced any instant messages.

Five Plaintiff States admitted that they did not implement any litigation hold in connection with this case. Ex. 12 at 201:19-22 (Nevada), Ex. 13 at 103:18-20 (Indiana), Ex. 14 at 40:19-24; 41:12-21 (Louisiana), Ex. 15 at 99:3-16 (Utah), Ex. 16 at 27:19-23 (Puerto Rico).[8] Some States tried to explain away their failure to issue a litigation hold by reference to default retention periods. Ex. 18 at 98:21-104:7 (Indiana), Ex. 19 at 99:3-19 (Utah). Others did not try to explain away their failure at all. Ex. 16 at 27:19-23 ("Q. Did Puerto Rico institute a document-hold notice related to this litigation? A. No. Q. Why not? A. We

---

[6] Google has also produced more than 500 dashboard screenshots or related files that were manually prepared over the course of recent months, and has made supplemental productions of technical documents following a manual search of its files by over 20 engineers.

[7] In addition to the more than 25 depositions of current and former Google employees that Plaintiffs have taken since remand to this Court, Plaintiffs also have access to 24 transcripts from the MDL, 10 transcripts from the Virginia Case, 34 transcripts from the DOJ's pre-suit investigation, and 7 trial transcripts from the *Search* case.

[8] Alaska's 30(b)(6) designee testified that he "believe[d] there was" a litigation hold issued in the case, but was not sure. Ex. 17 at 66:24-67:1.

just didn't."). As the Court is aware, Puerto Rico has completely failed to discharge its basic discovery obligations on the schedule set by the Court. ECF No. 537.

Plaintiffs have also succeeded in stonewalling Google's discovery efforts by taking the position that documents belonging to state agencies (who use the products the States have put at issue) are not within their control. South Carolina and Texas asserted that state agencies are protected by sovereign immunity. The South Carolina Department of Parks, Recreation, and Tourism's petition for rehearing en banc was just denied by the Fourth Circuit, and the agency has yet to comply with its obligations.

### D. The Special Master Entered a Protective Order

On April 26, 2024, the Special Master recommended an Order granting in part Google's request for a protective order, which the Court entered. In permitting limited discovery-on-discovery to proceed, the Special Master expressed concern with the disparity between the number of emails and other documents produced when compared with the number of Chat messages produced. ECF Nos. 428; 452.

The disparity is attributable in part to the fact that Plaintiffs self-servingly compare apples to oranges. Specifically, Plaintiffs instructed deponents to count each individual message in a Chat conversation as a distinct, single "Chat," which led some deponents to testify—based on that counting methodology—that they might send as many Chat messages in a day as they send emails. *See, e.g.*, Ex. 20 at 258:10-25; Ex. 21 at 66:4-15; Hr'g Tr. (Apr. 18, 2024) at 74:5-14. But when comparing production volumes in their briefing, Plaintiffs contradictorily have counted each produced *conversation* as one single "Chat"—even though it might comprise hundreds of individual messages spanning multiple days and topics.[9] *See* ECF No. 374 at 2. To correct for that gamesmanship and allow a fair comparison, Google

---

[9] Plaintiffs' own examples demonstrate this point. Exhibit 8 to their opposition to Google's motion for a protective order is a single Chat conversation, produced as a single document, but it comprises 321 individual Chat messages over two days. *See* ECF No. 374, Ex. 8.

**FILED UNDER SEAL**

has counted the number of individual Chat messages produced. Ex. 1. From within the Relevant Retention Period, Google has produced approximately 470,000 individual Chat messages. *Id*. In comparison, Google has produced approximately one million emails during the same period. *Id.*

Plaintiffs now bring the instant Motion seeking additional discovery-on-discovery to support their "theory" that, since 2007, Google conspired to eliminate discoverable documents for an investigation that did not exist until 2019. But there is nothing to support that theory—indeed, the mountain of evidence produced in discovery dispels it—and the Special Master should not permit a further fishing expedition.

## STANDARD

"Once litigation has commenced, if the parties cannot reach agreement about preservation issues, promptly seeking judicial guidance about the extent of reasonable preservation may be important." Fed. R. Civ. P. 37(e), Advisory Committee's Notes to 2015 Amendment; *see also United States v. Ross*, 511 F.2d 757, 762 (5th Cir. 1975) ("This Court and others have criticized failure to raise alleged discovery errors promptly.").

Federal Rule 37 allows a party to "move for an order compelling disclosure or discovery." Fed. R. Civ. P. 37(a)(1). "The moving party bears the burden of showing that the materials and information sought are discoverable." *Panini Am., Inc. v. Wild Card, Inc.*, 2023 WL 1073692, at *1 (E.D. Tex. Jan. 27, 2023). Discovery that is *not* "relevant to any party's claim or defense," Fed. R. Civ. P. 26(b)(1), but that instead pertains to how a party has complied with its discovery obligations—so-called "discovery-on-discovery"—is disfavored, given the "danger of extending the already costly and time consuming discovery process ad *infinitum* [*sic*]." *Freedman v. Weatherford Int'l Ltd.*, 2014 WL 4547039, at *2 (S.D.N.Y. Sept. 12, 2014); *In re Google Digital Advert. Antitrust Litigation*, No. 21-md-3010 (S.D.N.Y.) ("MDL Litigation") ECF No. 725 at 3 ("[T]his invasive discovery on a collateral issue is

unwarranted."). A party seeking such discovery must justify the request with a "showing of a specific or material deficiency" in the responding party's productions. *VeroBlue Farms USA Inc. v. Wulf*, 345 F.R.D. 406, 420 (N.D. Tex. 2021).

The discovery that Plaintiffs now seek is subject to a protective order. *See* ECF No. 428 at 13 (recommending that the Court grant Google's motion for a protective order "as to the States' written discovery seeking discovery-on-discovery without prejudice to the States later seeking such discovery *if justified*" (emphasis added)); ECF No. 452 (so ordering). "To demonstrate good cause" to modify a protective order, "the movant must present a specific demonstration of fact rather than mere conclusory statements." *United States v. Homeward Residential, Inc.*, 2016 WL 279543, at *4 (E.D. Tex. Jan. 22, 2016) (quotation marks and citation omitted).

## ARGUMENT

### I. GOOGLE DISCLOSED ITS CHAT RETENTION PROCESSES AT THE BEGINNING OF PLAINTIFFS' INVESTIGATION

Google disclosed its Chat preservation process to Plaintiffs in 2020. Plaintiffs explicitly confirmed they understood that Chat messages would be lost if employees did not manually turn history on. Plaintiffs raised no objection or concern. If they had any concerns, Plaintiffs were obligated to "promptly" raise them then, but did not. *Ross*, 511 F.2d at 762. Four years later, Plaintiffs resort to an illogical and unsubstantiated conspiracy theory, but this is nothing more than gamesmanship. The Special Master should reject this untimely and baseless effort to take even more discovery-on-discovery.

The Sedona Conference counsels that "[a]s soon as practicable, parties should confer and seek to reach agreement regarding the preservation and production of electronically stored information."[10] Parties are encouraged to "attempt to resolve discovery issues early."

---

[10] *The Sedona Principles, Third Edition: Best Practices, Recommendations & Principles for Addressing Electronic Document Production*, 19 Sedona Conf. J. 1 (2018) ("Sedona Principles" or "Sedona") at 71.

*Id.* These principles are intended to prevent the precise form of sandbagging occurring here. "The 2015 Amendments to the Federal Rules . . . were intended to reduce both the costs generally associated with ESI discovery and fears about making preservation decisions that might be second-guessed in later spoliation motion practice."[11]

Google has followed this guidance, but Plaintiffs have not. Google informed Plaintiffs of its retention processes at the outset of their investigation. *Supra* at 3. Plaintiffs had tremendous leverage over Google during the pre-suit investigation, but they never questioned the reasonableness of Google's processes or asked that Google change them. They did not request any changes during the ten-month negotiation of the ESI Order.

Plaintiffs' failure to raise Chat preservation until now has prejudiced Google's ability to attempt to cure any conduct. *Cf. Citgo Petroleum Corp. v. Odfjell Seachem*, 2013 WL 2289951, at *11 (S.D. Tex. May 23, 2013) (noting that "an unreasonable delay may render a motion for sanctions under Rule 37 untimely" and denying in relevant part a motion filed "almost a full year" after the allegedly sanctionable conduct). In that regard, Plaintiffs rely in part on a pending sanctions motion in the *Search* case. Mot. at 1-2. But they gloss over Google's disclosure of its Chat retention process, which Judge Mehta noted during argument, remarking that Google's "express statements" about its treatment of Chat and "what that meant for preservation" had been "acknowledged by . . . Texas."[12] He went on to admonish the *Search* plaintiffs that if they "did know" about Google's preservation process and "didn't say anything about it," then "whatever harm there is today could have been staunched much earlier." *Id.* at 226:13-16.

Plaintiffs suggest that sanctions "may already be warranted" even on the existing record. Mot. at 12. But Google's explicit disclosure and the dearth of evidence in Plaintiffs'

---

[11] *The Sedona Conference Commentary on Legal Holds, Second Edition: The Trigger & The Process* (Dec. 2018 Public Comment Version) at 3.
[12] *See* Hr'g Tr. at 225:16-19, *United States v. Google LLC*, No. 20-3010 (D.D.C. Apr. 14, 2023), ECF No. 580.

9

**FILED UNDER SEAL**

Motion demonstrates that any putative motion for sanctions is unwarranted and meritless. Moreover, Google has collected hundreds of thousands of Chat conversations in the Relevant Retention Period and has produced approximately 470,000 individual Chat messages for that same period. Ex. 1. These numbers must be put in context: the vast majority of allegations in this case pertain to conduct that is alleged to have occurred prior to any retention obligation arising in September 2019. Appendix A; *see also Marten Transp., Ltd. v. Plattform Adver., Inc.*, 2016 WL 492743, at *10 (D. Kan. Feb. 8, 2016) (denying sanctions under Rule 37(e) when plaintiff had no duty to preserve ESI at issue until after its routine deletion).

## II. THE EXPANSIVE DISCOVERY IN THIS CASE UNDERMINES PLAINTIFFS' BROAD-RANGING CONSPIRACY THEORY

Plaintiffs' theory—that Google hatched a nefarious plan back in 2007 "to eliminate any paper trail" concerning "topics of interest to antitrust enforcers," Mot. at 8—makes no sense whatsoever. It requires the Court to buy into the idea that Google hatched a plan to defeat an investigation that did not begin until 12 years later, and that the plan applied to Chat—but no other forms of ESI.

Given its nonsensical premise, it is no surprise that Plaintiffs have no evidence to support their wild conspiracy theory from the mountain of discovery they have received, including over 100 transcripts of testimony. All deponents who were explicitly asked about the theory underpinning Plaintiffs' Motion explicitly disavowed it.[13] Plaintiffs rely on the testimony of just two employees who left the display ads business *before any retention obligation arose* in this case (Mot. at 11):[14]

---

[13] Ex. 20 at 255:13-23 (█████████████████████████████████████████
█████████; ██████████████████: "Q. Have you ever been instructed to delete chats? THE WITNESS: Never.").

[14] Plaintiffs' description of the technical hurdles Google faced in developing a customized means to force history on for only the subset of Google employees on litigation hold misstates the testimony of Google's 30(b)(6) witness and is inaccurate. Plaintiffs suggest that

10

**FILED UNDER SEAL**

- 

- 

Plaintiffs cite a handful of Chat messages, emails, and one hypothetical question in a training material as evidence that "'history off' was both policy and practice for Google employees discussing the ad tech programs and decisions at issue in this case." Mot. at 9. None of them support Plaintiffs' narrative:

-  The foundation for the nefarious scheme alleged by Plaintiffs is a ▮▮▮▮▮▮▮▮▮▮. Mot. at 8. ▮▮▮▮▮▮▮▮▮▮ Mot. Ex. F at 2. And Judge Donato, in discussing Google's trainings, stated that "[i]t's not particularly suspicious for a corporation to say, 'Be careful of what you say in an e-mail.' It's just not." Hr'g Tr. at 200:2-4, *In re Google Play Store Litigation*, No. 21-md-02981 (N.D. Cal. Jan. 31, 2023), ECF No. 135.

- ▮▮▮▮▮▮▮▮▮▮. Plaintiffs cite an email, unrelated to ad tech, ▮▮▮▮▮▮▮▮▮▮ *See* Mot. at 8-9, Mot. Ex. H. None of the participants in this email exchange is a custodian in this case. ▮▮▮▮▮▮▮▮▮▮

---

Google offered a "feature" of Chat that would permit this capability for customers in regulated industries, but did not employ that feature for its own employees. *See* Mot. at 10. Google's 30(b)(6) witness explained ▮▮▮▮▮▮▮▮▮▮ *See* Ex. 6 at 156:1-22 (▮▮▮▮▮▮▮▮▮▮

[15] Plaintiffs suggest ▮▮▮▮▮ Chats would be "particularly relevant" because he was in communication with a supposed "whistleblower". Mot. at 11 n.7. But even the testimony of that supposed whistleblower—who left Google three years before any retention obligation arose in this case—does not support Plaintiffs' theory. *See* Ex. 22 at 240:1-4 ("Q You don't remember using Google Chat to chat teammates or others in Google? A I think we were mostly e-mail heavy, but maybe there was chat, too.").

11

- ▇▇▇ **Chat**. Plaintiffs cite a Chat conversation in which ▇▇▇, see Mot. at 9, Mot. Ex. J. ▇▇▇. Ex. 25 at 38:9-11. Plaintiffs did not depose ▇▇▇ and therefore did not ask her about this Chat conversation. But when questioned by plaintiffs in the Virginia Case, ▇▇▇ testified that ▇▇▇ *Id.* at 37:4-19.

- ▇▇▇. Plaintiffs cite ▇▇▇, Mot. at 8. But on its face, ▇▇▇ Mot. at 8, Mot. Ex. E at 2. The American Bar Association endorses that guidance.[16] Plaintiffs also fault Google ▇▇▇ Mot. at 8, Mot. Ex. E at 41. This is common sense advice endorsed by industry groups and attorneys, including the bar association of Plaintiff State Florida.[17]

- ▇▇▇. Plaintiffs cite a Chat conversation in which ▇▇▇ Mot. at 9, Ex. I, at 1. Despite deposing ▇▇▇ for 14 hours over two days, Plaintiffs never asked ▇▇▇ about this Chat conversation. And his other testimony completely undermines Plaintiffs' unsupported conspiracy theory and the inferences that Plaintiffs invite the Court to draw. Ex. 2; Ex. 20 at 255:7-23 ▇▇▇

- **2021 S. Pichai Chat**. Plaintiffs cite a Chat conversation—unrelated to ad tech—in which Google's CEO requests that the setting in a group Chat be changed to "history off," and then spin that to say that Google leadership "expressed . . . preference" for history-off chats. Mot. at 10 ("[T]his practice came from the top"); *see* Mot. Ex. O. But when plaintiffs in the *Search* case made the same argument based on the same

---

[16] *See* A.B.A., The Antitrust Compliance Handbook § XIII.D.1 (2019) ("Communicate clearly and concisely. Do not exaggerate or make jokes. What is funny in your email today may be hard to explain when that email is produced during some potential dispute years later.").

[17] *See* Ex. 26 at 4 ("**DON'T** say or commit to writing anything that you would not be comfortable repeating or explaining to a government investigator, judge, or jury. Many antitrust investigations and lawsuits have their roots in poorly written communications."); Ex. 27 at 5 ("Don't use email for any topic that needs to be explained or negotiated or will generate questions or confusion.").

document, Mr. Pichai testified in open court that they were wrong. The discussion regarded an external speaking engagement for Google Cloud. *See* Ex. 28 at 7739:18-7742:5. Though he did not "recall the specifics" of this conversation, he explained that "normally" he might request that history be turned off if he was "about to comment on something of a personal nature about some person." He went on to confirm that he "never use[s] chat in the context of discussing substantive discussions" and "take[s] great care to comply with all litigation holds." *See id*. Plaintiffs in this case sought that transcript and Google produced it to them months ago.[18] So it is unclear why Plaintiffs have now represented that they "would have to ask Mr. Pichai directly" about the contents of the conversation in order to understand its context. *See* ECF No. 535 at 23.

### III. PLAINTIFFS ARE NOT ENTITLED TO YET ANOTHER ROUND OF DISCOVERY-ON-DISCOVERY

The Court has stated that it is focused on "the parties' actions in this case" rather than "what anybody has done in other cases." ECF No. 189 (Dec. 14, 2023 Hr'g Tr.) at 30:9-14. Accordingly, when Plaintiffs sought additional discovery-on-discovery, Google agreed insofar as the discovery was specific to this case and sought non-privileged documents. Google declined Plaintiffs' requests to the extent they seek documents that pre-date the existence of a retention obligation in this case, privileged materials, and materials related to other cases. Plaintiffs have yet to point to any "specific" or "material" deficiencies in Google's massive productions that would justify additional discovery-on-discovery, *Veroblue*, 345 F.R.D. at 420. They have not made "a specific demonstration of fact" that would show good cause to modify the Special Master's existing protective order. *Homeward Residential*, 2016 WL 279543, at *4. Accordingly, the Special Master should deny their requests.

**Litigation holds and reminders.** Google agreed to respond to Interrogatory 31 calling for the "start and end dates for any legal holds applicable to any custodian identified in this matter" for the time period September 2019 through the present (not starting in 2015 as Plaintiffs requested). Google had no obligation to retain Chat messages in this case prior to September 2019 at the earliest, and so the discovery sought is not relevant. Google

---

[18] *See* ECF No. 289 at 3-4 (ordering Google to produce certain non-public *Search* trial transcripts by March 26, 2024).

declined to produce copies of litigation holds and reminders issued in this case because they are privileged (RFP Nos. 126 and 127); *see, e.g.*, *Retractable Techs. Inc. v. Abbott Lab'ys, Inc.*, 2010 WL 11531179, at *4 (E.D. Tex. May 20, 2010) (denying a motion to compel the "precise wording and descriptions of legal issues in this action" of a party's litigation retention policy). There is no basis here to compel production of privileged materials.[19]

**Additional Discovery-on-Discovery From the *Location* Case.** Plaintiffs took the deposition of Google's corporate representative speaking on certain discovery topics on May 17, 2024. The transcript was designated Highly Confidential under the governing Confidentiality Order. *See* ECF No. 182 at ¶ 7(b) (deposition transcripts are deemed Highly Confidential in their entirety for 45 days following the deposition). The next business day, the same Plaintiffs' counsel took the deposition of the same corporate representative in a different case in state court that does not involve ad tech. Plaintiffs began that deposition by seeking to introduce the transcript from this case, in violation of this Court's Confidentiality Order. *See* ECF No. 182 at ¶ 23 (Highly Confidential Information "shall be used solely for the conduct of this Action").[20] Now Plaintiffs want to introduce the transcript from state court into this case, as well as dump into the record any Chat-related documents they were able to obtain in those unrelated proceedings. This is pure gamesmanship and an attempt by Plaintiffs' counsel to leverage their position as counsel to Texas across multiple cases to get two depositions for the price of one. Plaintiffs rely entirely on conclusory statements that this

---

[19] Plaintiffs cite no authority suggesting that a litigation hold notice would not be privileged. Instead, they rely on an out-of-circuit case in which the court ordered production of a party's litigation hold notice only after the party's 30(b)(6) witness testified "that no one ever talked to her about creating a litigation hold policy and that she was not sure what a litigation hold policy was." *Major Tours, Inc. v. Colorel*, 2009 WL 2413631, at *3 (D.N.J. Aug. 4, 2009).

[20] Google's concerns are heightened given that confidential material has already been leaked in this case. Days after this case was filed, an unredacted portion of a draft of the complaint was leaked to national media outlets, showing confidential Google and third-party information. *See generally* ECF No. 57 at 29:1-9; *see also* MDL ECF No. 291 at 31:13-15 ("[I]f there are leaks, I reserve the right to order forensic investigations of computers, lawyers' computers. All right?").

evidence would be "relevant" here. Mot. at 13. But this does not satisfy the requirement that they make a "*specific* showing of relevancy" sufficient to justify importing discovery from another unrelated case into this one. *Blackberry*, 2015 WL 12698062, *3 (emphasis added).

        **Systemwide Backend Log From *Play* Case**. Google declined Plaintiffs' request for the system-wide backend log that Google produced in *Play* because it was the latest in a long line of attempts by Plaintiffs to import the discovery record from a different case into this case. While Plaintiffs continue to point to the fact that Google was sanctioned in the *Play* case by Judge Donato, they have not and cannot grapple with the fact that Judge Donato's reasoning was grounded in his finding that Google "should have advised plaintiffs about its preservation approach early in the litigation." *Play* ECF No. 469 at 16-19. Here, Google *did* advise Plaintiffs about its preservation approach at the outset of the pre-suit investigation. Plaintiffs have also not shown any "specific" or "material" deficiency in Google's productions that the production of this data log would remedy or explain. *Veroblue*, 345 F.R.D. at 420. This is not the *Play* case and does not warrant mirrored discovery, let alone more discovery-on-discovery after the close of fact discovery. In addition, of the more than 180 custodians in this case, only seven overlap with those in the *Play* case, meaning that the systemwide backend log largely pertains to irrelevant custodians. The Special Master should not entertain Plaintiffs' request to embark on a fishing expedition that is not proportional to the needs of this case in light of the mountain of existing discovery that disproves the theory underpinning Plaintiffs' Motion.

## CONCLUSION

        For all the foregoing reasons, Plaintiffs' Motion should be denied.

**FILED UNDER SEAL**

Dated: July 5, 2024

Respectfully submitted,

*/s/ R. Paul Yetter*
R. Paul Yetter
State Bar No. 22154200
YETTER COLEMAN LLP
811 Main Street, Suite 4100
Houston, Texas 77002
(713) 632-8000
pyetter@yettercoleman.com

Eric Mahr
FRESHFIELDS BRUCKHAUS DERINGER US LLP
700 13th Street, NW
10th Floor
Washington, DC 20005
Telephone: (202) 777-4545
Email: eric.mahr@freshfields.com

ATTORNEYS FOR DEFENDANT GOOGLE LLC

**FILED UNDER SEAL**

**CERTIFICATE OF SERVICE**

    I certify that on July 5, 2024, this document was filed electronically in compliance with Local Rule CV-5(a) and served on all counsel who have consented to electronic service, per Local Rule CV-5(a)(3)(A).

*/s/ R. Paul Yetter*
R. Paul Yetter
