IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| The State of Texas, et al., | |
| Plaintiffs, | Case No. 4:20-cv-00957-SDJ |
| v. | Hon. Sean D. Jordan |
| Google LLC, | Special Master: David T. Moran |
| Defendants. | |

# PLAINTIFFS' OPPOSITION TO NON-PARTY
# META PLATFORMS INC.'S MOTION FOR PROTECTIVE ORDER

## INTRODUCTION

Nearly eight months ago, Plaintiff States served requests for production on Google LLC ("Google") for documents Google produced and received in *United States v. Google LLC*, No. 1:23-cv-000108 (E.D. Va.) (the "EDVA Action"). That request covers nearly three million documents Meta Platforms, Inc. ("Meta") produced in response to six Department of Justice Civil Investigative Demands and documents produced to third parties in the EDVA Action (the "EDVA Documents"). At that time, Google sought Meta's consent to Google's reproduction of the EDVA Documents to Plaintiff States. *See* Dkt. 521-9 (March 29, 2024 subpoena).  But, despite the Court's holding that all non-party documents produced in the EDVA Action are relevant here (*see* Dkt. 510), Meta refused to consent and later filed a motion for a protective order to prevent the production of the remaining EDVA Documents, despite Meta bearing no burden in this production (Google has all the EDVA Documents and will produce them with the press of a button) and despite not being willing to represent that the as-yet unproduced EDVA Documents are not relevant to this matter (Meta would not agree to represent that the unproduced EDVA Documents "are not reasonably likely to contain relevant information" for this matter). Meta is attempting to use its negotiation over a third-party subpoena to limit production from a request for production from the Plaintiff States to Google. The Court should not allow it.

The Plaintiff States do not know what documents have not yet been produced and sought to avoid this dispute by asking Meta to represent that the non-produced subset of EDVA Documents are "not reasonably likely to contain relevant information . . . ." The Plaintiff States offered to accept that sworn representation in lieu of forcing production of the remaining EDVA Documents. But as Meta is not willing to make that offered representation, the Plaintiff States are

1

forced to conclude that the remaining EDVA Documents do have relevant information and should be produced.

Meta's arguments that there is just cause for a protective order are unpersuasive. Meta has not shown that the EDVA Documents are irrelevant—the fact that Meta did not attach a declaration saying as much to its motion is illuminating. Further, Meta has maintained that it does not even know what documents are contained in the EDVA Documents. And Meta has not attempted to show, and cannot show, that it would be burdened or prejudiced by the reproduction of the EDVA Documents. Google, not Meta, would produce the documents, and it would do so with the push of a button—Meta is not required to do anything. It also will not be prejudiced by the reproduction, under a protective order, of documents from a matter that this Court has found to contain relevant documents. Instead, Meta merely argues that because it (1) engaged in "good-faith negotiations" with Plaintiff States when negotiating a third-party subpoena and (2) did not control what the DOJ produced to Google in the EDVA Action, it would be prejudicial to allow Google to reproduce those documents here. But this is no longer about production of documents from a third-party; it is about production from Google. In that light, Meta's arguments do not constitute good cause. Its motion should be denied.

**I.   BACKGROUND**

In September 2023, Plaintiff States served Google with requests for production (the "EDVA RFPs") seeking, among other things, copies of "any production of Documents" and "[a]ny Documents received from third parties" in the EDVA Action.[1] *See* Ex. 1 at ¶¶ 302-03 (September

---

[1] One of the reasons for seeking nonparty documents from Google (rather than the nonparties) was to reduce the burden on nonparties.

29, 2023 Requests for Production). In turn, Google sought Meta's consent to reproduce the EDVA Documents to Plaintiff States. Dkt. 521-9 (March 29, 2024 Subpoena). Meta refused.

While continuing to seek Meta's consent to the reproduction of the EDVA Documents, Plaintiff States served Meta with a 30(b)(6) notice and subpoena for documents on March 29, 2024 (the "Subpoena"). *See* Dkt. 521-10. Because Plaintiff States needed at least *some* documents in advance of the 30(b)(6) depositions—and Meta was still refusing consent to the reproduction of the EDVA Documents—the Subpoena focused on the production of documents responsive to discrete topics. *Id.* Shortly after Plaintiff States served the Subpoena, they began negotiating with Meta about its scope (but *not* the scope of the EDVA RFPs), beginning with a meet and confer on April 8, 2024. Ex. 2 at 7-8 (April 7, 2024 email from K. Patchen to M. Lanier). During the conferral, Meta agreed to "get [Plaintiff States] information about its productions related to Google AdTech (whether related to the Texas investigation, EDVA case/investigation, or elsewhere) so that the parties can understand the scope of documents produced and determine if those documents have been produced to Texas or are still outstanding." *See id.* at 5-6 (April 9, 2024 email from Z. DeRose to K. Chow & K. Patchen). Despite that promise, Meta never provided the States with any additional information about the EDVA productions. However, based on Meta's representations during the April 8 meet and confer, Plaintiff States agreed to hold May 2, 2024, open for Meta's 30(b)(6) deposition. *Id.* Subsequently, Meta agreed to produce one witness to testify about the "later implementation of the" Network Bidding Agreement ("NBA") and the topics in Google's cross-notice on April 30, 2024, and another to testify about the "NBA's negotiation, execution, and early implementation" on May 2, 2024. *See* Dkt. 521-15 at 2-3 (April 21, 2024 email from K. Patchen to M. Collier).

Leading up to the scheduled 30(b)(6) depositions, Meta had still not agreed to the reproduction of the EDVA Documents or to produce any documents responsive to the Subpoena. On April 12, 2024, Meta served additional, more detailed responses and objections to Plaintiff States' Subpoena, but did not agree to produce any documents. Ex. 2 at 5 (April 12, 2024 email from K. Chow to Z. DeRose). That same day, Meta noted it was "still in the process of investigating how [the EDVA documents] overlap with Texas's subpoena." *Id.* at 4. After additional prodding by Plaintiff States on April 14 and 15, Meta committed to providing a written response on Wednesday, April 17. *Id.* At 2-3 (April 15, 2024 email from K. Chow to M. Collier). In that written response, Meta noted that it had produced to Plaintiff States documents relating to the NBA and "Meta's Audience Network business." Dkt. 521-14 at 3-4. Meta added that it "had discussions with Google regarding the reproduction of the Meta-related materials produced in [the EDVA Action]," which include documents produced in response to third-party discovery requests and "over three million Meta-related documents in DOJ's investigative file that . . . were provided to Google." *Id.* at 4. But Meta refused to produce those other documents, declaring that Plaintiff States "already have in their possession a significant amount of materials that relate to" the NBA and that those materials "represent[] an appropriate response to the Plaintiff-States' March 29 subpoena." *Id.* When Plaintiff States asked Meta to agree to Google reproducing the EDVA Documents, Meta refused, claiming those documents were "non-relevant portions of the DOJ file," and asked to meet and confer on April 19 about "what we think would be an appropriate and reasonable limitation in the scope." Ex. 2 at 1 (April 18, 2024 email from K. Patchen to Z. DeRose).

Before the April 19 meet and confer, Meta identified three categories of documents that it proposed producing to Plaintiff States in response to the Subpoena:

4

1. "Materials responsive to DOJ's May 2020 CID, which includes requests for documents relevant to the development, strategy, and implementation of the NBA, as well as communications with Google re: the NBA."

2. "Materials responsive to DOJ's June 2020 CID, which includes documents related to Meta's advertising technology products."

3. "Materials responsive to Google's nonparty subpoena in the EDVA litigation. That subpoena is attached to our letter and includes responsive documents that run through April 2023."

Ex. 3 at 3-4 (April 19, 2024 email from K. Chow to M. Collier). During the meet and confer, Plaintiff States and Meta discussed Meta's proposed production. To convince Plaintiff States that the proposed production would be sufficient for the upcoming 30(b)(6) depositions, Meta shared a copy of the May 2020 CID and screen-shared select portions of the June 2020 CID. Glenn Decl. ¶ 6. Meta did not show Plaintiff States the October 2020 CID or any of the so-called "Non-Google CIDs." *Id*. ¶ 7. Meta represented to the Plaintiff States that any documents not shown during the meet and confer or included in Meta's proposed production were not relevant to the topics identified in the Subpoena. The Plaintiff States could not confirm those representations or otherwise verify what was included in the remaining EDVA Documents (*Id.*), because the first scheduled 30(b)(6) deposition was set to take place in only *eleven days* (and the end of fact discovery was rapidly approaching).

So Plaintiff States agreed that Meta's limited production of the three categories of documents would be sufficient *for purposes of the topics in the third-party Subpoena*. See Dkt. 521-15 at 4-5 (April 19, 2024 email from M. Collier to K. Chow). Meta responded by confirming that it would promptly produce the three categories of documents, but it noted: "we cannot represent what is in the DOJ file (Since Meta did not produce it and has not seen it) or that there are no other relevant documents in other DOJ productions." *Id.* at 2-3 (April 21, 2024 email from K. Patchen to M. Collier). All Meta represented was that "the three document sets we

5

proposed and that you agreed to below reflect the custodial files we believe are most likely to contain information relevant to the claims at issue in this litigation." *Id.* Meta did not—and conceded it *could not*—confirm that the remaining EDVA Documents are not relevant to Plaintiff States' claims. But because Plaintiff States needed at least some documents to prepare for the upcoming 30(b)(6) depositions, they accepted Meta's proposed production as "constituting Meta's complete response *to the document subpoena* with no further supplementation required." *Id.* at 2 (April 21, 2024 email from M. Collier to K. Patchen) (emphasis added). Plaintiff States did *not* represent that Meta's proposed production in response to a third-party subpoena would satisfy the EDVA RFPs to Google—since, of course, the proposed production *did not* satisfy the EDVA RFPs.

On April 23, 2024, "in response to Texas's March 29, 2024 subpoena," Meta produced the three categories of documents relating to the NBA, totaling approximately 345,000 documents, subject to the operative protective order in this case. Ex. 5 at 2 (April 23, 2024 Letter from K. Patchen to M. Lanier).

In response to Meta's motion for protective order, and to resolve the dispute without need of Court intervention, Plaintiff States have only sought a sworn declaration from Meta that the remaining EDVA Documents are not likely to be relevant to Plaintiff States' claims or Google's defenses. On July 8, Meta's counsel sent Plaintiff States a draft declaration, stating that "[t]he documents that Meta produced to the State Plaintiffs reflect the materials Meta identified as likely to contain relevant information." In response, Plaintiff States proposed adding one sentence to the last line of the last paragraph of the declaration: "The non-produced subset of documents in the FBDOJ Bates range that were not produced to the State Plaintiffs are not likely to contain relevant information." Ex. 4-A at 1 (July 10, 2024 email from E. Glenn to K. Patchen); Ex. 4-B (draft

6

declaration with Plaintiff States' proposed edit). Counsel for Plaintiff States confirmed that, if Meta agreed to that addition, the dispute over Meta's motion would be resolved. *Id.*

The next day, July 11, the parties again met and conferred. During the meet and confer, Meta did not agree to the Plaintiff States' proposed additional language. Glenn Decl. ¶ 11. Plaintiff States made an oral offer to again modify that last line:

> "Some documents with the bates prefix FBDOJ are duplicates of documents with the bates prefix FBDOJGOOG that have already been produced to the Plaintiff States  Based on the categories of documents sought by the CIDs and what I know about Meta's records, I believe the non-produced subset of documents in the FBDOJ Bates range that were not produced to the State Plaintiffs are not reasonably likely to contain relevant information other than those duplicate documents that have already been produced to Plaintiff States."

*Id.* ¶ 12. Meta did not agree to the oral proposal at that time, and did not commit to when it would respond to it either.

## II.   LEGAL STANDARD

Rule 26(b)(1) permits the discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Under Rule 26(c) a non-party may move the court for a protective order "limiting the scope of disclosure or discovery." Fed. R. Civ. P. 26(c).  But to obtain that relief, the non-party must establish good cause warranting the protective order. *Id.* "The burden is on the party seeking the protective order 'to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements.'" *Cunningham v. Concentrix Solutions Corp.*, No. 4:20-cv-00661, 2021 WL 425099, at *2 (E.D. Tex. Feb. 8, 2021) (citing *In re Terra Int'l*, 134 F.3d 302, 306 (5th Cir. 1998)). Thus, a protective order is only warranted where "the party seeking it demonstrates good cause and a specified need for protection." *Id.*

III.     **ARGUMENT**

The Court has already held that all documents produced by non-parties in the EDVA Action and the DOJ's related pre-suit investigation are relevant to the parties' claims and defenses in this case. *See* Dkt. 510. Meta has not supplied a sworn declaration saying otherwise. Despite the presumptive relevance of the documents, Meta argues that it has shown good cause for a protective order because (1) the remaining EDVA Documents "contain vast amounts of information with no bearing on any of Plaintiffs' claims," (2) the reproduction of the remaining documents would be "unfair and prejudicial" because Meta has engaged in "extensive negotiations" with Plaintiff States, and (3) Meta has already provided *some* of the requested documents. None of these reasons constitute good cause.

        A.     **The discovery sought is relevant and proportional to Plaintiff States' claims.**

The Court has already found that all "materials produced by . . . non-parties in . . . the EDVA Action . . . and in the DOJ's related pre-suit investigation of Google's display ads business . . . are relevant and proportional to the parties' claims and defenses in this case under this District's standard." Dkt. 510 at 1. Meta has failed to rebut this presumption of relevance. During the purportedly "good faith negotiations" with Plaintiff States, Meta admitted that it "cannot represent what is in the DOJ file . . . or that there are no other relevant documents in other DOJ productions." Ex. 3 (April 21, 2024 email from K. Patchen to M. Collier). All Meta could confirm was that "the three document sets we proposed and that you agreed to below reflect the custodial files *we believe* are *most likely* to contain information relevant to the claims at issue in this litigation." *Id.* (emphasis added). In its Motion, Meta argues that the "vast majority" of the EDVA Documents are not relevant and "include vast amounts of information with no bearing on any of Plaintiffs' claims." Mot. at 7-8. But by its own admission, Meta does not know what is included in the EDVA Documents, it will not confirm under oath that the remaining EDVA Documents are not relevant,

8

and it will not divide the relevant from the irrelevant. And just yesterday, Meta would not confirm the EDVA documents *are not reasonably likely to* contain any relevant information. For this reason alone, the Court should deny Meta's motion.

Further, based on the information Meta *does* know (and has provided), it is clear that the documents Plaintiff States seek are relevant to this litigation. First, Meta asks this Court to allow it to continue refusing to consent to the reproduction of documents initially produced in response to the October 20, 2020 CID, which Meta itself has labeled a "Google CID." *See* Mot. at 2. Meta concedes that the October 20, 2020 CID "relate[s] to the DOJ's Google-specific investigation." *Id.* Yet while Meta has agreed to the reproduction of documents from the other two "Google CIDs" because they are "likely to contain information relevant to the claims at issue in this litigation," Ex. 3 (April 21, 2024 email from K. Patchen to M. Collier), it refuses to do the same for the October 20, 2020 CID. Meta has provided no rationale for the disparate treatment of the so-called "Google CIDs." Given that Meta itself has identified the October 20, 2020 CID as seeking documents specific to Google, there is no plausible argument that the documents produced in response to that CID are not relevant to this case (nor has Google offered any).

Second, the three "Non-Google CIDs" (*See* Dkts. 521-3, 521-4, 521-5) all appear to implicate relevant documents.[2] Those CIDs requested, among other things, information and documents about (1) antitrust or competition-related investigations into Meta's conduct from 2010 to 2020, (2) antitrust or competition-related lawsuits involving Meta from 2010 to 2020, and (3) certain FTC CIDs (the subject of which Plaintiff States have no way of determining without

---

[2] Plaintiff States have now had the opportunity to review the "Non-Google CIDs" since Meta attached them as exhibits to its Motion. Meta had previously refused to provide (or even show, like with the May and June 2020 "Google CIDs") Plaintiff States with those CIDs so that they could evaluate whether they were likely to implicate responsive information.

9

access to the documents). *See* Dkts. 521-3, 521-4, 521-5. Because the Plaintiff States have no context about what Meta produced in response to the "Non-Google CIDs" aside from Meta attaching the CIDs to its Motion, it is impossible for Plaintiff States to know that they are not relevant. This is especially true considering "[r]elevancy is broadly construed, and a request for discovery should be considered relevant if there is 'any possibility' that the information sought may be relevant to the claim or defense of any party." *Merrill v. Waffle House, Inc.*, 227 F.R.D. 467, 470 (N.D. Tex. 2005) (quoting *Sheldon v. Vermonty*, 204 F.R.D. 679, 689 (D. Kan. 2001)). There is—at a minimum—"[some] possibility" that Meta's responses to the Non-Google CIDs include information relevant to this case, which, as Meta acknowledges, involves Google's alleged antitrust violations relating to the ad tech market, exchange competition, auctions, header bidding, and Google's pricing rules. *See* Mot. at 8 (citing *In re Google Digital Advert. Antitrust Litig.*, No. 1:21-md-03010-PKC, Dkt. 541 (S.D.N.Y. May 5, 2023)). Because it is not "clear that the information sought can have no possible bearing on the claim or defense of a party" here, "the request for discovery should be allowed." *Merrill*, 227 F.R.D. at 470.

Meta also has not shown that the documents Plaintiff States seek are not "proportional to the needs of the case," *see* Fed. R. Civ. P. 26(b)(1), despite the Court's holding that they are, Dkt. 510 at 1. The closest Meta gets is arguing that its "status as a non-party warrants 'more consideration' by the court of the proportionality of the discovery at issue." Mot. at 9 (citing *Hoeflein v. Crescent Drilling & Prod., Inc.*, No. SA-19-CV-01194-FB, 2020 WL 2527939, at *2 (W.D. Tex. May 18, 2020)). Meta claims that the discovery Plaintiff States seek is "not proportionate" merely because it includes "vast amounts of irrelevant and confidential information from a non-party[.]" *Id.* But neither case Meta cites supports its position. In *Hoeflein*, 2020 WL 2527939, at *2, the court's analysis turned on the fact that requiring the non-party to search for

10

and produce documents for all potential class members (rather than only the named plaintiffs) would constitute an undue "burden of compliance" with the subpoenas. Here, Meta need not search for and produce documents; it need only consent to the reproduction of documents it has already produced. There is no "burden of compliance." Similarly, as Meta notes, *In re Stewart Title Company* turned on the fact that the non-party "would be entrusting the confidentiality of its documents to parties who do not represent its interests." No. H-09-247, 2009 WL 1708079, at *2 (S.D. Tex. June 17, 2009). The court noted, however, that this kind of confidentiality concern is "not dispositive on its own," but may merely "lend weight to the arguments for quashing discovery." *Id.* But Meta has not made any other plausible arguments suggesting that Plaintiff States' requests are not proportional to the needs of the case such that Meta's confidentiality concerns would justify a protective order. And "[t]he Federal Rules do not . . . provide for the withholding of subpoenaed documents on the grounds that the non-party wishes to keep them secret." *Dotson v. Edmonson*, No. 16-15371, 2017 WL 11535244, at *3 (E.D. La. Nov. 21, 2017).

Further, any documents produced in this case are subject to the operative confidentiality order, which should alleviate Meta's confidentiality concerns. Dkt. 510 at 1 ("To the extent any of the Materials were designated as "Confidential" or "Highly Confidential" [in the EDVA Action], they shall be treated as "Confidential" or "Highly Confidential," as designated, under the confidentiality order governing this case." (citing Dkt. 182)). Indeed, the fact that Meta has already produced "reams of documents," Mot. at 9, here shows that Meta understands its confidential information is adequately protected by the operative confidentiality order. *See* Ex. 5 at 2 (April 23, 2024 Letter from K. Patchen to M. Lanier) ("Meta does not agree to any disclosure of the above-described materials and reserves all rights as a non-party *pursuant to the protective order* entered in this matter." (emphasis added)).

11

B.  **Meta will not be burdened or prejudiced by the reproduction of the remaining documents Plaintiff States seek.**

Meta does not contend that the reproduction of documents would subject it to "annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c). Nor could it—the documents at issue have *already been produced* to the DOJ (and Google) in the EDVA Action and merely requires Google (not Meta) to push a button and reproduce them here. Meta does not have to review or produce these documents; it is merely being asked to consent to the reproduction of those documents. Meta contends that "allowing Google to proceed with its contemplated production would be unfair and prejudicial" because Meta has engaged in "extensive good-faith negotiations" regarding a third-party subpoena and it "had no control of what DOJ decided to produce in the EDVA Action." Mot. at 9-10. Neither ground justifies the protective order Meta seeks and both distract from the core premise: this is about production from Google to the Plaintiff States.

First, Meta's supposed "good faith negotiations with the State Plaintiffs and Google regarding an appropriate scope of production" does not relieve Meta of its obligation to comply with its discovery obligations. *Id.* Meta cites no law in support of its position. Merely conferring in good faith—as the Rules *require*—is not a substitute for meeting discovery obligations.

Meta has refused to consent to the reproduction of the EDVA Documents since the EDVA RFPs—which were designed to minimize the burden on nonparties like Meta—were issued. Later, with the 30(b)(6) depositions and the end of fact discovery rapidly approaching, Meta offered to produce only a limited subset of the EDVA Documents relevant to the topics in the 30(b)(6) notice, forcing Plaintiff States to decide whether to accept Meta's incomplete production with little time to prepare for the depositions or to proceed with the 30(b)(6) without *any* of Meta's documents. So Plaintiff States agreed the limited production would suffice *for purposes of the 30(b)(6)*.

12

Second, Meta's contention that it "had no control of what the DOJ decided to produce in the EDVA Action" ignores that fact that Meta *did* control what it produced to the DOJ in the first instance. And, again, Meta cites no law supporting its position that its inability "to fully review all of the material at issue, to interpose specific objections against production, and to effectively limit further access to and dissemination of the information" constitutes prejudice or burden that would justify the issuance of a protective order. *See* Mot. At 10. Because Meta has identified no actual prejudice it would suffer if the EDVA Documents are reproduced, its Motion should be denied.

C. **Plaintiff States have not yet obtained complete discovery from Meta.**

Finally, Meta contends that the fact that Plaintiff States and Google have "had ample and multiple opportunities to obtain discovery from Meta in this case," constitutes good cause. Mot. at 10. The "ample" discovery that Meta references is (1) the documents Meta produced in response to the CID the State of Texas issued in 2020, (2) depositions and transcripts from four 30(b)(6) witnesses (two in the EDVA Action and two in this case), (3) two deposition transcripts from the EDVA Action, and (4) the partial document productions in response to the Subpoena. *Id.* Yet again, Meta cites no law in support of its position that its production of *some* discovery justifies good cause to issue a protective order preventing Plaintiff States from obtaining the *rest* of the documents Plaintiff States seek. It does not.

\* \* \* \* \* \* \* \* \*

The Court should deny Meta's Motion for Protective Order and order that the remaining EDVA Documents be produced in compliance with the Stipulation and Order for Reproduction of Discovery (Dkt. 510).

Dated: July 12, 2024

Respectfully submitted,

| | |
|---|---|
| */s/ W. Mark Lanier* | */s/ Ashley Keller* |
| W. Mark Lanier | Ashley Keller |
| Mark.Lanier@LanierLawFirm.com | ack@kellerpostman.com |
| Alex J. Brown | 150 N. Riverside Plaza, Suite 4100 |
| Alex.Brown@LanierLawFirm.com | Chicago, Illinois 60606 |
| Zeke DeRose III | (312) 741-5220 |
| Zeke.DeRose@LanierLawFirm.com | |
| Jonathan P. Wilkerson | Zina Bash |
| Jonathan.Wilkerson@LanierLawFirm.com | zina.bash@kellerpostman.com |
| 10940 W. Sam Houston Pkwy N | 111 Congress Avenue, Suite 500 |
| Suite 100 | Austin, TX 78701 |
| Houston, TX 77064 | (512) 690-0990 |
| (713) 659-5200 | |
| **THE LANIER LAW FIRM, PLLC** | */s/ Noah S. Heinz* |
| | Noah S. Heinz |
| | noah.heinz@kellerpostman.com |
| | 1101 Connecticut, N.W., 11th Floor |
| | Washington, DC 20005 |
| | (202) 918-1123 |
| | **KELLER POSTMAN LLC** |

*Counsel for Texas, Idaho, Louisiana (The Lanier Law Firm only), Indiana, Mississippi, North Dakota, South Carolina, and South Dakota*

*Submitted on behalf of all Plaintiff States*

14

**NORTON ROSE FULBRIGHT US LLP**
Joseph M. Graham, Jr.
joseph.graham@nortonrosefulbright.com
Geraldine Young
geraldine.young@nortonrosefulbright.com
1301 McKinney, Suite 5100
Houston, Texas 77010
(713) 651-5151

Marc B. Collier
Marc.Collier@nortonrosefulbright.com
98 San Jacinto Blvd., Suite 1100
Austin, Texas 78701
(512) 474-5201


FOR PLAINTIFF STATE OF TEXAS:

KEN PAXTON
Attorney General

*/s/ Trevor E. D. Young*
Brent Webster, First Assistant Attorney General of Texas
Brent.Webster@oag.texas.gov
James R. Lloyd, Deputy Attorney General for Civil Litigation
James.Lloyd@oag.texas.gov
Trevor Young, Deputy Chief, Antitrust Division
Trevor.Young@oag.texas.gov

**STATE OF TEXAS, OFFICE OF THE ATTORNEY GENERAL**
P.O. Box 12548
Austin, TX 78711-2548
(512) 936-1674

*Attorneys for Plaintiff State of Texas*

**CERTIFICATE OF SERVICE**

I certify that on July 12, 2024, this document was filed electronically in compliance with Local Rule CV-5(a) and served on all counsel who have consented to electronic service, per Local Rule CV-5(a)(3)(A).

*/s/ Noah S. Heinz*
Noah S. Heinz
