# EXHIBIT A

October 31, 2022

**VIA ECF**

The Honorable P. Kevin Castel
United States District Judge
Daniel Patrick Moynihan, United States Courthouse
500 Pearl St., Courtroom 11D
New York, New York 10007

> Re: *In re Google Digital Advertising Antitrust Litig.*, 1:21-md-03010 (S.D.N.Y.) (PKC)
> **This Document Relates to: ALL ACTIONS**

Dear Judge Castel:

Pursuant to paragraph 5 of Pre-Trial Order No. 2, the Plaintiffs' Lead Attorneys[1] submit a proposed Case Management Plan and Scheduling Order which has been agreed to by all Plaintiffs. Below we identify and discuss the areas of agreement and disagreement among Plaintiffs and Defendants. No conference is scheduled at this time.[2]

1. **Paragraph 1 (Complaint amendments)**

Plaintiffs' proposed paragraph 1 provides for three circumstances under which a Plaintiff may amend its complaint. Plaintiffs and Defendants agree that a Plaintiff group may amend its complaint: (1) pursuant to the procedures set forth in Pre-Trial Order Nos. 2 and 3; and (2) with leave of the Court, including to conform to future rulings of the Court related to the sufficiency of the pleadings. The parties disagree, however on the other proposed circumstance under which a Plaintiff may amend: (3) as permitted under Rule 15(a)(1). Provisions 1-3 contemplate scenarios for private Plaintiffs to file initial non-conforming amendments and for Plaintiffs to file conforming amendments to any later Court Orders or as permitted under the Rules.

Google opposes allowing Plaintiffs to amend "once as a matter of course" to the extent permitted under Rule 15(a)(1). During the several meet and confers to discuss the Case Management Order, Google did not explain its basis for that objection. Courts in this District and elsewhere have described the right to timely amend once under Rule 15(a)(1) as "absolute." *Gaming Mktg. Solutions, Inc. v. Cross*, 528 F. Supp. 2d 403, 406 (S.D.N.Y. 2007) (Sullivan, J.); *see also Chartwell Therapeutics Licensing, LLC v. Citron Pharma LLC*, 2020 WL 7042642, at *6

---

[1] The Plaintiffs' Lead Attorneys, as designated by the Court in Pre-Trial Order No. 2 (Doc. 309), are: Mark Lanier of the Lanier Law Firm, David Boies of Boies Schiller, Dena Sharp of Girard Sharp, and Tina Wolfson of Ahdoot & Wolfson.

[2] Pursuant to Your Honor's Individual Practice 3B and Fed. R. Civ. P. 37(a)(1), Plaintiffs certify that we attempted in good faith to reach agreement on all issues without Court action.

The Honorable P. Kevin Castel
October 31, 2022
Page 2

(E.D.N.Y. Nov. 30, 2020); *Buffalo State Alumni Ass'n, Inc. v. Cincinnati Ins. Co*., 2017 WL 1734159, at *4 (W.D.N.Y. May 4, 2017).  While it is true that a court may "limit the *time* for amendment" as a matter of course, *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 244 (2d Cir. 2007) (emphasis added), Google has not proposed a time limit for plaintiffs to exercise their "absolute" right. Nor do this Court's pre-trial orders create a deadline for amendments as a matter of course.[3] Instead, Google suggests, without ever providing plaintiffs notice, that plaintiffs' right to amend as a matter of course should be extinguished immediately.

Several plaintiffs never have amended their complaints, under Rule 15(a)(1) or otherwise. In compliance with this Court's pre-trial plan, they did not exercise their right to amend while Google's motion to dismiss the States' complaint was pending and while proceedings in their actions were stayed. Order ¶ 2 (Sept. 24, 2021), Doc. 129. Thus under Rule 15 they still timely may amend once as a matter of course. Their "absolute" right to do so should not be extinguished without prior notice.

### 2.  **Paragraph 2 (ESI and Rule 26(f))**

This paragraph addresses two proposals by Plaintiffs that Defendants have not accepted. The first relates to agreeing to confer on the matters referred to in Rule 26(f)(2) and Rule 26(f)(3), and the second relates to a deadline for the parties to submit a proposed ESI Order and expert stipulation to the Court. Since the Court issued Pre-Trial Order Nos. 2 and 3, Plaintiffs and Defendants have conferred on several occasions regarding the Scheduling Order and items contemplated in Rule 26(f). In doing so, the parties have satisfied most of the Rule 26(f) requirements, and to the extent there are outstanding issues related to Rule 26(f)(2) and Rule 26(f)(3), in lieu of an official Rule 26(f) conference, Plaintiffs propose an agreement between the parties to discuss all remaining matters required under Rule 26(f). In other words, given the discussions that have already occurred, Plaintiffs do not believe that conducting a formal Rule 26(f) conference would serve the interests of economy and efficiency.

The second part of paragraph 2 concerns Plaintiffs' proposal of a November 14, 2022, due date for submitting an ESI protocol to the Court. Plaintiffs believe that the parties will benefit in getting an ESI protocol and expert stipulation entered without additional undue delay by having a set date by which an agreed ESI protocol (or competing protocols) will be provided to the Court. This approach helped avoid substantial delay in entry of the Confidentiality Order in this case. The State Plaintiffs began negotiating an ESI protocol with Google in early 2021. In April 2022, Plaintiffs provided Defendants with an ESI proposal in accordance with this Court's guidance.

For the past six months Plaintiffs and Defendants have been negotiating to reach an agreed-upon ESI protocol, but agreement has proven elusive. Plaintiffs believe that without a firm deadline from the Court, these negotiations could continue indefinitely. Setting a November 14

---

[3] Indeed, the Court explicitly directed the parties to discuss Paragraph 3 of its model Case Management Plan and Scheduling Order, which addresses the deadline for amended pleadings.  PTO 2 ¶ 6. That would be unnecessary if the court's orders already created a deadline for amendments.

The Honorable P. Kevin Castel
October 31, 2022
Page 3

deadline will allow the parties to enter discovery with an appropriate ESI protocol and expert stipulation in place.

3. **Paragraph 3**

Plaintiffs recommend that discovery occur on all issues related to the pleadings as currently constituted. While the pleadings have not been completely settled as motions to dismiss the recently amended pleadings are expected, the scope of the case that the Court already has permitted to proceed should allow broad discovery.

Defendants have stated a desire to prevent discovery on various topics that they believe may be subject to further motions to dismiss, including discovery concerning Google's Search business, the Network Bidding Agreement ("NBA") between Google and Meta, encryption of user IDs, Reserve Price Optimization, Exchange Bidding, and Accelerated Mobile Pages. Plaintiffs believe, however, that wholesale elimination of such topics from discovery would create substantial inefficiencies and is inappropriate as those topics remain relevant to understanding the existing claims, the relevant markets, and the appropriateness of relief requested (whether damages or injunctive relief) even if claims specific to such topics do not proceed. *See Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (holding that "discovery is not limited to issues raised by the pleadings, for discovery itself is designed to help define and clarify the issues.").

For example, discovery of the motivations of the NBA (and thus concerning the negotiations that led to the NBA) are relevant to Google's efforts to "kill" header bidding and relate to Plaintiffs' various Section 2 claims regardless of whether a Section 1 claim regarding the NBA is permitted to proceed. Indeed, in its reply brief to the JPML in support of this MDL, Google itself noted the necessity of discovery concerning Facebook's business activities.[4] The NBA is also part of the State Plaintiffs' Section Two claims in Counts I and II of their Third Amended Complaint (TAC). Although Google expressly argued that Counts I and II of the State Plaintiffs' TAC should be dismissed to the extent they relied on the NBA (*see* Doc. 293 at p. 9), the Court did not dismiss such claims.

Likewise, discovery of other activities that undisputedly occurred, such as encryption of user IDs, Reserve Price Optimization, and Accelerated Mobile Pages, also relate to understanding the impact of Defendants' anticompetitive conduct and the functionality of the relevant markets, even if the Court holds that claims specifically based on those topics are not plausibly anticompetitive. Similarly, preventing discovery concerning Google's "Search business" could be used to prevent discovery of documents and data relevant to Daily Mail's allegations that Google punished publishers by demoting them in search results if the publisher used differential price floors to force Google to compete for impressions, and the Direct Action Newspaper Plaintiffs' allegations that Google leveraged its monopoly in the general search market to gain monopoly power and further dominance in the ad exchange and ad server markets. Defendants likely also

---

[4] As Google noted, "the cases will all require discovery from Facebook, either because of the Google-Facebook agreement or because Facebook is a key competitor in any properly defined Ad Tech relevant market." MDL 3010, Doc. 89 at 13.

The Honorable P. Kevin Castel
October 31, 2022
Page 4

would invoke a limitation of discovery relating to "Exchange Bidding" to eliminate large swaths of discovery pertaining to its AdX exchange (central to market definition and related conduct), its ad server, and competing exchanges.

To address any reasonable concerns regarding the scope of discovery, Plaintiffs propose the second sentence of their paragraph 3 whereby each party generally reserves its rights to assert a relevancy objection. Such an objection can be litigated to Your Honor in the event of a dispute the parties cannot work out themselves, in the particular factual context in which it may arise.

Plaintiffs further note that Google has chosen not to oppose any of the private Plaintiffs' motions to amend. As a result, the stay pending resolution of motions to amend contained in paragraph 3 of Pretrial Order No. 2 does not apply to Google. ECF No. 390, ¶ 3. Meta Platforms Inc., on the other hand, has opposed amendments that seek to name it as a defendant in claims brought by (i) the Advertiser Class and (ii) the Individual Newspapers (not including Daily Mail). While Plaintiffs understand such opposition may result in a stay of discovery as to Meta Platforms other than as a third party, Plaintiffs believe that the proposed discovery schedule will permit completion of discovery of Meta as a party, should claims against it be allowed to proceed, within the time set forth in the proposed Case Management Order even with a stay as to party discovery of Meta while the amendment process is considered by the Court.

4. **<u>Paragraph 4 (Initial disclosures)</u>**

There are no disputes on this paragraph.

5. **<u>Paragraph 5 (Fact discovery period)</u>**

Plaintiffs propose a fact discovery period of 15 months. Google proposes a fact discovery period of 24 months. Plaintiffs respectfully submit that 15 months is a more appropriate discovery period for this case, especially given that some of the cases that are part of this MDL already have been pending for nearly two years. The Publisher Class and Plaintiff States' cases were filed in December 2020, and the Advertiser Class actions were filed several months before that.

When the Plaintiff States' case was pending in the Eastern District of Texas, in May 2021 (five months after the States filed their lawsuit), Judge Jordan entered a schedule which provided for a 13.5-month fact discovery period.[5] Nearly 1.5 years have elapsed since then, including the formation of an MDL. In recognition of some additional complexity given that this now an MDL, Plaintiffs believe a 15-month period is appropriate. Notably, 15 months is also the duration of fact discovery in *United States v. Google* (the Google Search case).[6]

---

[5] Doc. 123 in 4:20-cv-00957 (E.D. Tex.).
[6] Doc. 85, at p. 3 in 1:20-cv-03010 (D.D.C.).

The Honorable P. Kevin Castel
October 31, 2022
Page 5

6. **Paragraph 6 (Service of discovery requests)**

The parties largely agree concerning the discovery limitations set forth in Paragraph 6. Only two items remain in dispute: (1) Plaintiffs' proposal of an interim deadline for substantial completion of document discovery; and (2) the number and division of interrogatories.

1. Plaintiffs propose that the Case Management Order require all parties to substantially complete their production of documents including data responsive to initial requests for production within the first 6 months of discovery. The parties should, of course, work in good faith to make rolling productions of responsive documents promptly upon receiving requests for production. But an interim substantial completion deadline ahead of the fact discovery cutoff will promote efficient discovery by giving the parties ample opportunity to review initial productions of documents and data and to address any deficiencies well before fact discovery ends. An interim deadline will also serve this Court's command that, "absent good cause, no deponent will be examined more than once." Pre-Trial Order No. 2, ¶ 6, Doc. 309. Plaintiffs' proposal gives the parties "adequate time to make additional requests and conduct depositions with a solid factual basis." *Fort Worth Emps. Retirement Fund v. J.P. Morgan Chase & Co.*, 297 F.R.D. 99, 114 (S.D.N.Y. 2013) (Francis IV, M.J.). Without an interim deadline, the possibility that late-produced documents will necessitate a request to recall an already-deposed witness will increase. Plaintiffs' proposal will limit the need for such repeat depositions. And like Plaintiffs' other proposals, an interim substantial completion deadline is commonplace in MDL proceedings. In fact, other courts in this District presiding over MDLs have similarly set interim substantial completion deadlines several months before the fact discovery cutoff. *See, e.g.*, Civil Case Management Plan and Scheduling Order, *In re Interest Rate Swaps Antitrust Litig.*, No. 16-md-2704 (PAE) (S.D.N.Y. Aug. 28, 2017), ECF No. 250 (setting substantial completion deadline of seven months before the end of fact discovery).

Google's only stated opposition to this interim deadline is that it does not yet know the size of its initial productions and so cannot ascertain whether the interim deadline is reasonable. But Google has known for years the topics and documents that are relevant to these cases, and since the Court's September 13 Order denying its motion to dismiss, Google has known that discovery will go forward on at least the vast majority of issues in the States' Third Amended Complaint. Moreover, although the States' investigation culminated with the filing of its initial complaint, the Department of Justice has continued its investigation of Google's monopolization of ad-tech markets making it likely that a large amount of relevant material is already prepared for production to Plaintiffs in this MDL.[7] If Google determines that substantial completion of its response to any particular request is not feasible by the deadline, it can seek an agreed extension from Plaintiffs or seek to demonstrate "good cause" to modify the deadline. Fed. R. Civ. P. 16(b)(4).

2. Plaintiffs propose that, absent leave of Court, both sides (i.e., plaintiffs and defendants) should receive 25 common interrogatories each. In addition, each "category of plaintiffs or

---

[7] *See* David McCabe & Tripp Mickle, *Justice Dept. Said to Conduct New Interviews in Inquiry Into Google's Ad Tech*, N.Y. Times, Aug. 9, 2022, https://www.nytimes.com/2022/08/09/technology/justice-dept-google-ad-tech.html.

The Honorable P. Kevin Castel
October 31, 2022
Page 6

defendants" would receive 15 interrogatories to pursue "category-specific information."[8] Plaintiffs' proposal reflects both an equitable distribution of interrogatories and the reality that, while the centralized actions overlap, each has unique substantive and procedural issues necessitating unique discovery. Google itself recognized, in petitioning for the creation of this MDL, that differences between the actions may require a "protocol that: 1) allows pretrial proceedings with respect to any non-common issues to proceed concurrently with pretrial proceedings on common issues; and 2) ensures that pretrial proceedings will be conducted in a streamlined manner leading to the just and expeditious resolution of all actions." Mem. of Points & Auths. at 15-16, *In re Digital Advertising Antitrust Litig.*, MDL No. 3010 (J.P.M.L. Apr. 30, 2021), Doc. No. 1-1 (quoting *In re Countrywide Fin. Corp. Mortg. Mktg. & Sales Practices Litig.*, 582 F. Supp. 2d 1373, 1375 (J.P.M.L. 2008)). Plaintiffs' proposal achieves precisely that—it requires all parties to coordinate on a set of common interrogatories related to common issues, while also permitting the parties to inquire into category-specific issues "concurrently" with other discovery proceedings. Indeed, providing plaintiffs with a modest amount of category-specific discovery is especially important here, where the interests and claims of different plaintiff groups may diverge significantly. *See In re "Fine Paper" Antitrust Litig.*, 453 F. Supp. 118, 122 (J.P.M.L. 1978) (explaining that "antagonistic" or differentiated "interests among the parties" to an MDL "may be accommodated by" permitting "discovery on any issues unique to any action or party . . . to proceed in a separate discovery schedule concurrently with discovery on common issues" (cleaned up)).

Google's counter-proposal is to insist that "no party may be served with more than 25 interrogatories in total (across all actions)." Under this proposal Plaintiffs would be permitted to propound 25 interrogatories on Google. Google, meanwhile, would be permitted to propound 25 interrogatories on each plaintiff party, creating an enormous imbalance. Even worse, Google's proposal was ambiguous as to the meaning of "party"—if "party" were given its natural meaning, Google's proposal would permit plaintiffs only 25 collective interrogatories while allowing Google potentially thousands because over 50 plaintiffs are parties to these centralized actions. But even under a more conservative reading—in which parties are only the States, the proposed classes and, collectively, the individual actions—plaintiffs, who bear the burden of proof, would receive only 25 interrogatories to Google's 100. Google may complain that Plaintiffs' proposal, too, creates an imbalance: under Plaintiffs' proposal, Google would receive 40 interrogatories total and Plaintiffs would receive 85 (25 common and 4 sets of 15 category-specific interrogatories). But this disparity reflects Plaintiffs' burdens in these cases and the diversity of claims they are pursuing.

**3.** To advance the central goals of this MDL to complete discovery in the just, speedy, and inexpensive manner required by Fed. R. Civ. P. 1, the Direct Action Newspaper Plaintiffs respectfully propose that the Court implement a bellwether discovery method for the Individual

---

[8] Plaintiffs proposal defines the categories as: 1) the State Plaintiffs; 2) the Class Publisher Plaintiffs; 3) the Class Advertiser Plaintiffs; 4) the Individual Action Plaintiffs (i.e., the Direct Action Newspaper Plaintiffs and the Daily Mail); 5) the Google Defendants (i.e., Google LLC; Alphabet Inc.; and YouTube, LLC); and 6) Meta Platforms, Inc.

The Honorable P. Kevin Castel
October 31, 2022
Page 7

Actions.[9] With respect to discovery on the Direct Action Newspaper Plaintiffs by Defendants, the Plaintiffs propose that these parties shall meet and confer regarding the selection of bellwether plaintiffs or a bellwether discovery pool. Importantly, the Direct Action Newspaper Plaintiffs propose that all discovery on Defendants by the Individual Plaintiffs will be conducted in accordance with the common and category-wide discovery set forth in Section 6 and its subparts. The Direct Action Newspaper Plaintiffs also anticipate that they will meet and confer with Defendants regarding the contents and timing of Plaintiff Fact Sheets, which will be required to be completed by all non-bellwether Direct Action Newspaper Plaintiffs in this MDL.

7. **Paragraph 7 (Depositions)**

When discussing the number of depositions in this case at the April 19, 2022, discovery conference, the Court said, "[n]o blank checks. You're going to have to persuade me why you need who you need when you're going above the limits." 4/19/22 Tr. at 58:1-3. In adherence to what the Court said, the Plaintiffs' proposed Case Management Plan provides for the limit of 10 depositions per side in Rule 30(a)(2)(A)(i). Defendants agree with this.

Although there is currently no dispute between the parties with respect to this provision, it is important for Plaintiffs to let the Court know that they will certainly need more than 10 depositions here. The MDL includes four groups of actions: 1) the State Plaintiffs' action; 2) the Class Publisher action; 3) the Class Advertiser action; and 4) the Individual Actions. In addition to the common conduct across the different actions which will need to be discovered, each of these groups has some unique claims or aspects.

Google itself well knows and has previously acknowledged that this case will require significantly more than 10 depositions. When the Plaintiff States were proceeding in the Eastern District of Texas, Google agreed that 60 depositions per side were proportional to the needs of the case.[10] That was before the creation of this MDL, in which there are now additional cases. Further, in a somewhat similar case involving Google—*United States v. Google* (the Google Search case)—the Court permitted plaintiffs to take up to 80 depositions.[11]

---

[9] There are approximately 45 Direct Action Newspaper Plaintiffs with claims pending in this MDL with additional CTOs already having been granted by the JPML, and the possibility of more individual tag-along actions being filed. Numerous MDL case management orders adopt a bellwether discovery pool approach as requested here by and for the Direct Action Newspaper Plaintiffs' Actions. *See, e.g.*, *In Re Generic Pharms. Pricing Antitrust Litig.*, No. 16-MD-2724, 2021 WL 8362709, at *2 (E.D. Pa. Oct. 14, 2021) (antitrust matter); *In Re Syngenta AG MIR 162 Corn Litig.*, No. 14-md-2591(W.D. Kan.) (particularly illustrative as the composition of that MDL for economic loss is comparable to the tracts of this case); *see also In Re: National Prescription Opiate Litigation; In re Taxotere (Docetaxel) Prod. Liab. Lit.*, (MDL No. 2740) (E.D. La.) Case Management Orders 3, 8A (ECF Nos. 669, 670, 1099).

[10] Joint Report of Attorney Conference at 10, *Texas v. Google LLC*, No. 4:20-cv-00957 (E.D. Tex. Apr. 27, 2021), ECF No. 108.

[11] Doc. 108 in 1:20-cv-03010 (D.D.C.).

The Honorable P. Kevin Castel
October 31, 2022
Page 8

It also appears this Court anticipates that the Plaintiffs will need more than 10 depositions. In Pre-Trial Order No. 2, the Court wrote, "[t]he Court is open to expanding the number of deponents above the presumptive limit in Rule 30(a)(2)(A)(1) but will only do so—and may do so from time to time—upon identification of the particular witnesses by name (unless a Rule 30(b)(6) witness) and description of the matters on which he or she has unique knowledge." In other complex cases, this Court has approved upward deviations from the deposition limits in Rule 30. For example, in *In re Bank of America Corp. Securities, Derivative, and Employee Retirement Income Security Act (ERISA) Litig.*, No. 09-MD-2058, the Court allowed Plaintiffs up to 38 depositions.[12] Given the expansive allegations in this case, covering multiple products, markets, and divisions within Google, over a long period of time, this case likely is more complicated than *Bank of America*. However, when Plaintiffs propose to exceed the limits of Rule 30, they will make an appropriate application to the Court which lists the "particular witnesses by name (unless a Rule 30(b)(6) witness) and description of the matters on which he or she has unique knowledge."

## 8. **Paragraphs 8 (expert discovery) and 9 (class certification)**

Plaintiffs' schedule proposes a single fact discovery period of 15 months for all issues whether relating to class certification, the merits of the claims, or both. After the conclusion of fact discovery, plaintiffs' schedule proposes a single expert discovery period for all issues including class and merits issues to be addressed by the experts. Class certification motions would then follow the close of expert discovery to ensure the Court has the benefit of a complete record in considering class certification. Plaintiffs' counsel have successfully litigated prior complex antitrust cases with court-approved schedules similar to what Plaintiffs propose here, often with the agreement of the defendants and several other courts adopted analogous processes and schedules for litigating antitrust class actions.[13]

Defendants' proposed schedule, under which class expert discovery and class certification briefing would occur prior to the close of fact discovery, would be less efficient and likely to lead to prejudice, particularly given the governing standards for class certification and the intricacies of fact discovery in this complex and important case. First, Defendants' proposed schedule would

---

[12] Doc. 453 in 1:09-MD-2058.

[13] *See, e.g.*, Case Mgmt. Order No. 1, *Henry v. Brown Univ.*, 1:22-cv-00125 (N.D. Ill. Sept. 8, 2022), ECF No. 195; Case Mgmt. Order, *In Re: Geisinger Health and Evangelical Community Hosp. Healthcare Workers Antitrust Litig.*, No. 4:21-cv-00196-MWB (M.D. Pa. Feb. 7, 2022), ECF No. 80; Case Mgmt. Order No. 1, *In re: Broiler Chicken Grower Antitrust Litig.*, No. 6:17-cv-00033-RJS-SPS (E.D. Okla. Apr. 13, 2020) ("*Broilers Okla.*"), ECF No. 312; Stipulated Order Regarding Amended Case Schedule As Modified, *Simon and Simon, PC, et al. v. Align Tech., Inc.*, No. 3:20-cv-03754-VC (N.D. Cal. May 31, 2021) ("*Align*"), ECF No. 104; Further Amended Scheduling Order, *In re Lipitor Antitrust Litig.*, No. 3:12-cv-02389-PGS-DEA (D.N.J. Oct. 1, 2019), ECF No. 899; Corrected Seventh Amended Scheduling Order, *In re: Niaspan Antitrust Litig.*, No. 13-MD-2460 (E.D. Pa. Nov. 16, 2018), ECF No. 570; Scheduling Order at 1, *In re Dental Supplies Antitrust Litig.*, No. 16-cv-696 (BMC) (GRB) (E.D.N.Y. April 10, 2017), ECF No. 177; Discovery Plan and Scheduling Order at 1, *Le v. Zuffa, LLC*, No. 2-15-cv-01045-RFB-(PAL) (D. Nev. Oct. 14, 2016), ECF No. 311.

The Honorable P. Kevin Castel
October 31, 2022
Page 9

impose two largely redundant, separate rounds of expert reports—one for reports pertaining to class certification, and then another pertaining to the merits. Under current jurisprudence in antitrust litigation, "class" reports and "merits" reports are necessarily similar and largely overlapping. At class certification, Plaintiffs will have the burden of showing that their case can be proved with predominantly class-wide evidence. *See, e.g., Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1047-49 (2016); *Amgen Inc. v. Conn. Retirement Plans & Trust Funds*, 568 U.S. 455, 459-60, 467-70 (2013); *see also Comcast Corp. v. Behrend*, 569 U.S. 27, 33-34 (2013) (class certification analysis in antitrust cases will "frequently entail overlap with the merits of the plaintiff's underlying claim," because the "class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action") (internal quotation marks and citations omitted).[14] Class Plaintiffs' certification applications will thus seek to show that the case is capable of class-wide proof by laying out workable methods of class-wide proof consistent with the common questions for the respective classes. Plaintiffs' experts will address this proof in their class certification reports—but it is also what Plaintiffs' experts will address in their merits' reports. Bifurcating expert reports into two separate rounds, therefore, would be needlessly expensive, inefficient, and redundant.

Second, Defendants' schedule would prevent the Class Plaintiffs from using expert reports relevant to class certification that would be informed by all of the fact discovery in the case. This could prejudice not only Class Plaintiffs' presentations in support of certification but, because of the overlap noted above, could also prejudice merits positions supported by expert evidence. Plaintiffs' class experts would be forced to conduct their economic and other analyses of the challenged conduct, and reach opinions about the effects and nature of that conduct, on an incomplete, shifting record. Further, Defendants' bifurcated schedule could create a motivation, whether intentional or not, for Defendants to produce key documents, data, and witnesses *after* the class expert reports have been submitted, but while fact discovery remains open. Indeed, given the timing of the class reports, the record would inevitably be different at the time Plaintiffs' experts serve their opening class reports and the time they submit their rebuttal reports. This is both unfair and inefficient.

Third, Defendants' proposed schedule makes coordination between the class and non-class plaintiff groups nearly impossible. The class groups would require front-loading of key data and document issues as well as certain important depositions needed for class purposes, but the non-class groups would not have the same interest in developing the record and taking depositions in that sequence. All Plaintiffs have been working well together and, considering their common adversaries, will benefit from a case schedule that maintains the general alignment of their interests.

Fourth, Defendants' proposed sequencing would have the two rounds of expert exchanges—class and then overlapping merits—effectively run into one another. As a result, the

---

[14] Under Fed. R. Civ. P. 23(b)(3), Plaintiffs must show that their case as a whole or one or more of its constituent parts is capable of proof on a predominantly class-wide basis. *Tyson Foods*, 136 S. Ct. at 1045 ("When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3).") (quotation omitted).

The Honorable P. Kevin Castel
October 31, 2022
Page 10

"merits" reports would essentially function as sur and sur-sur rebuttals in a four-shot exchange of reports. And both sides in each class case would want to submit the newly developed evidence and analysis to the Court to serve as part of the record for class certification. This would be highly inefficient, not to mention burdensome to the Court and its staff. Defendants' proposal also would potentially allow them multiple depositions of at least some of Plaintiffs' experts, which would also be redundant and inefficient.

Finally, Defendants have sought to justify their proposed class expert and certification schedule by complaining they would otherwise have to brief summary judgment and class certification at the same time. The anticipated schedule, however, can easily ensure that neither Plaintiffs nor Defendants are burdened with such overlap. For example, any summary judgment motions by Defendants can be filed at the same time that the Class Plaintiffs file their respective class certification motions. Defendants would then be responding on class certification while Plaintiffs are responding to any summary judgment motion, with replies likewise being prepared by the opposite parties rather than either side needing to simultaneously brief separate motions.

## 9.  **Paragraph 10 (Motion practice and summary judgment)**

Consistent with this Court's standard Case Management Order, Plaintiffs propose that the filing of a pre-motion letter relating to any motion for summary judgment should occur no later than 14 days after the date set by the Court for the close of *fact discovery* and that briefing on any such motion for summary judgment should naturally occur following the close of *expert discovery*. Given the technical intricacies of this case, summary judgment motions necessarily will rely on expert reports and those reports will aid this Court in assessing and ruling on such motions. Similarly, because of the overlapping subject matter, any *Daubert* pre-motion letters would be premature until after close of expert discovery.

While Google's proposal suggests distinguishing between *non-class* expert discovery and *class* expert discovery, the realities of this case necessitate that for Class Plaintiffs these experts will substantially overlap; the distinction drawn by Google is artificial, inappropriate and inefficient. Moreover, as set forth above, Plaintiffs believe this case necessitates a single expert discovery period for all issues including class and merits issues. Google's proposal layers in multiple sets of motions and presupposes that the close of non-class expert discovery and class expert discovery can and should be bifurcated. In contrast, Plaintiffs favor a streamlined, efficient approach that will assist all parties and the Court in developing and refining the record.

## 10.  **Paragraph 11 (Monthly conferences)**

Plaintiffs' proposed CMP includes a provision allowing for short monthly conferences with the Court.[15] In connection with those conferences, Plaintiffs' proposed CMP also requires that five business days before the conference, the parties shall file a joint submission either setting forth an

---

[15] This same conference procedure was implemented by Judge Engelmayer upon the start of discovery in the *In re: Interest Rate Swaps Antitrust Litigation*, 1:16-md-02704-JPO (S.D.N.Y Apr. 20, 2018), ECF No. 368.

The Honorable P. Kevin Castel
October 31, 2022
Page 11

agenda of items to be addressed at the conference, or informing the Court that there are no issues to address at the conference with a request that the conference for that month be cancelled. Defendants oppose this provision in its entirety.

Based on experience in similar complex cases, Plaintiffs believe such regularly scheduled conferences will permit an efficient discovery process to proceed while keeping the Court well informed of the progress the parties are making. All parties will benefit from having a period of time scheduled by the Court to allow them to raise discovery disputes and get them resolved promptly and with less interruption to the Court's schedule, as the time will already have been set aside. Given the proposed requirement of a jointly submitted agenda, that set-aside time may be unnecessary should the parties be able to resolve amongst themselves any discovery disputes and neither side has an issue that requires Court intervention. The corollary is that all parties will be disciplined to progress negotiation over disputes in a timely manner knowing that failure to do so will likely result in the dispute being raised with the Court at the next upcoming conference.

**11. Paragraph 12 (Trial issues)**

In Paragraph 12, Plaintiffs request that the Court set a date by which trial should commence for actions that will be tried here. Setting a reasonable window for trial to commence will benefit all parties in these centralized cases. A trial date will ensure the parties "establish proper priorities," limiting costly and unnecessary discovery efforts. Robert F. Peckham, C.J., *A Judicial Response to the Cost of Litigation: Case Management, Two-Stage Discovery Planning and Alternative Dispute Resolution*, 37 Rutgers L. Rev. 253, 257 n.13 (1985); *id.* at 268 (setting a trial date is "the most important action taken" in setting a schedule "because a trial date limits the time within which all" pretrial proceedings "must take place"); *see also Manual for Complex Litigation* ("MCL") § 10.13 at 13 (4th ed.). Selecting a trial date that is reasonably close to the discovery cutoff will also ensure that the parties' discovery is not stale by the time trial begins. MCL § 11.422 at 54. And setting a trial date "is generally the most effective means to motivate parties to settle," obviating costly trial proceedings and conserving judicial resources. MCL § 13.13 at 169. For those reasons, setting trial dates early in MDL proceedings is commonplace, including in this Court.[16] Plaintiffs' proposal enhances the likelihood that an already lengthy pretrial schedule does not grow even longer.

Google's sole argument in opposition to Plaintiffs' proposal is that it is not yet known which cases will be tried in this Court. But Google does know that at least *Associated Newspapers*

---

[16] *See* Civil Case Management Plan and Scheduling Order, *In re Bank of Am. Corp. Secs., Derivative, and ERISA Litig.*, No. 09-md-02058 (PKC) (S.D.N.Y. Sept. 7, 2011), ECF No. 453; MDL Scheduling Order, *In re Google Play Store Antitrust Litig.*, No. 21-md-02981 (N.D. Cal. 2021), ECF No. 122; Case Management Order, *In re Xyrem (Sodium Oxybate) Antitrust Litig.*, 20-md-02966-LHK (N.D. Cal. 2021), ECF No. 66; Jointly Proposed Pretrial Order No. 5, *In re Zetia (Ezetimibe) Antitrust Litig.*, No. 2:18-md-02836 (E.D. Va. 2018), ECF No. 142; Case Management Order (Amended), *In re Qualcomm Antitrust Litig.*, No. 5:17-md-02773 (N.D. Cal. 2017), ECF No. 36; *see also* Civil Case Management Plan and Scheduling Order, *In re Interest Rate Swaps Antitrust Litig.*, No. 16-md-2704 (PAE) (S.D.N.Y. 2017), ECF No. 250 (setting the "Final Pretrial Order Date" for "sixty (60) days following a decision on motions for summary judgment").

The Honorable P. Kevin Castel
October 31, 2022
Page 12

*Ltd. v. Google LLC*, No. 1:21-cv-03446 (S.D.N.Y.), will be tried here as it was filed directly in this Court and any trial of that action is thus certain to be in this Court. Setting a date by which trial should commence in that action is thus sensible. *See Manual for Complex Litigation* § 20.132 at 224 (discussing the benefits of an MDL court trying "actions originally filed in the transferee district"); John G. Heyburn II, *A View From The Panel: Part of the Solution*, 82 Tulane L. Rev. 2225, 2233 n.47 (2008) (similar). And although no other plaintiff has yet done so, some or all may consent to trial in this Court, meaning other trials here are possible, if not likely. *See Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26 (1998). Plaintiffs' proposal is flexible—the specifics of the trial schedule are deferred until the cases are further developed. But while Google would leave proceedings open-ended, Plaintiffs' proposal would ensure that all parties work diligently to prepare these cases for trial.

The Honorable P. Kevin Castel
October 31, 2022
Page 13

Respectfully submitted,

_/s/ W. Mark Lanier_
W. Mark Lanier
New York Bar No.: 4327284
Mark.Lanier@LanierLawFirm.com
Tower 56
126 East 56th Street, 6th Floor
New York, NY 10022
(212) 421-2800
THE LANIER LAW FIRM, PLLC

_Counsel for Texas, Idaho, Indiana, Louisiana,_
_Mississippi, North Dakota, South Carolina,_
_and South Dakota_

_On behalf of the State Plaintiffs_


_/s/ Dena C. Sharp_
Dena C. Sharp (_pro hac vice_)
**GIRARD SHARP LLP**
601 California Street, Suite 1400
San Francisco, CA 94108
Tel: (415) 981-4800
Fax: (415) 981-4846
dsharp@girardsharp.com


Tina Wolfson (TW-1016)
**AHDOOT & WOLFSON, PC**
2600 West Olive Ave., Suite 500
Burbank, CA 91505
Tel.: (310) 474-9111
Fax: (310) 474-8585
twolfson@ahdootwolfson.com

_Interim Co-Lead Counsel for_
_the Proposed Advertiser Class_

_/s/ David Boies_
David Boies
dboies@bsfllp.com
BOIES SCHILLER FLEXNER LLP
333 Main Street
Armonk, NY 10504
Telephone: (914) 749-8200

_Lead Counsel for the Publisher Class_

CC: Counsel of Record

### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| | 21-md-3010 (PKC) |
| IN RE GOOGLE DIGITAL ADVERTISING ANTITRUST LITIGATION | **[Proposed] CIVIL CASE MANAGEMENT PLAN AND SCHEDULING ORDER** |

**P. KEVIN CASTEL, Senior District Judge:**

This Civil Case Management Plan (the "Plan") is submitted by the parties[1] in accordance with Fed. R. Civ. P. 26(f)(3), and Pretrial Order No. 2 (Doc. 309):

1. Amended pleadings may not be filed and additional parties may not be joined except: (1) pursuant to the procedures set forth in Pre-Trial Order Nos. 2 and 3; (2) with leave of the Court, including but not limited to amending to conform to future rulings of the Court related to the sufficiency of the pleadings; or (3) as permitted under Rule 15(a)(1).

2. Pursuant to Fed. R. Civ. P. 26(f)(1), by November 14, 2022, the parties shall meet and discuss all items set forth in Rule 26(f)(2) and 26(f)(3).[2] The parties shall also

---

[1]     The different categories of Plaintiffs are the State Plaintiffs, the Class Publisher Plaintiffs, the Class Advertiser Plaintiffs, the Individual Action Plaintiffs (i.e., the Direct Action Newspaper Plaintiffs and the Daily Mail). The different categories of Defendants are: the Google Defendants (i.e., Google LLC; Alphabet Inc.; and YouTube, LLC) and Meta Platforms, Inc. For purposes of this Order, a "side" means either (a) the State Plaintiffs, the Class Publisher Plaintiffs, the Class Advertiser Plaintiffs, and the Individual Action Plaintiffs collectively; or (b) the Google Defendants and Meta Platforms, Inc. collectively.

[2]     There are approximately 45 Direct Action Newspaper Plaintiffs with claims pending in this MDL with the possibility of more individual actions being filed. Defendants and the Direct Action Newspaper Plaintiffs shall meet and confer to select bellwether newspaper plaintiffs for the purposes of discovery and propose a bellwether tract to address the Direct Action Newspaper Plaintiffs. The meet and confer to select bellwether plaintiffs,

negotiate an appropriate protocol regarding Electronically Stored Information and an appropriate stipulation regarding expert discovery, and present either agreed-upon proposed stipulations, or their respective positions as to those portions of the stipulations on which they do not agree, by November 14, 2022.

3.  Fact discovery shall begin 14 days after entry of this Order. The parties reserve all rights to object to discovery, including on relevance grounds.

4.  Initial disclosures, pursuant to Fed. R. Civ. P. 26(a)(1), shall be served not later than 30 days after the beginning of fact discovery or such other date as mutually agreed to by the relevant parties. A party that has previously served initial disclosures in an individual action need not serve additional initial disclosures in such action if, within 30 days of the beginning of fact discovery, that party advises the other parties in such individual action that it will stand on its previous disclosures. If, when fact discovery begins, a party knows that it will need to update previously served initial disclosures, that party shall serve updated initial disclosures within 30 days of the beginning of fact discovery. Nothing herein relieves a party of its obligation to supplement or correct initial disclosures pursuant to Fed. R. Civ. P. 26(e).

5.  All <u>fact</u> discovery shall be completed by 15 months from the start of fact discovery. The Court finds that this case presents unique complexities and other exceptional circumstances that warrant this period of fact discovery.

6.  The parties are to conduct discovery in accordance with the Federal Rules of Civil Procedure and the Local Rules of the Southern District of New York. The following

---

and any bellwether schedule set by the Court, shall not affect the deadlines set forth herein as to the other categories of Plaintiffs.

interim deadlines may be extended by the written consent of all parties without application to the Court, provided that all fact discovery is completed by the date set forth in paragraph 5 above (absent good cause to extend that date):

6.1.    Initial requests for production of documents and data to be served by 30 days after the beginning of fact discovery. By six months after the start of fact discovery the parties shall substantially complete production of documents including data responsive to document requests served within the first 30 days of discovery.

6.2.    Interrogatories (other than for the sole purpose of authenticating documents) to be served and answered in accordance with Fed. R. Civ. P. 33 and Local Rule 33.3 and shall be served no later than 30 days before the close of fact discovery identified in paragraph 5 above. Absent leave of Court upon a showing of good cause, each side may serve up to 25 common interrogatories on another side. In addition, each category of plaintiffs or defendants (as referenced in footnote 1 above), may serve up to 15 interrogatories seeking category-specific information on any other category of plaintiff or defendant.

6.3.    Requests to Admit (other than for the sole purpose of authenticating documents) to be served no later than 30 days prior to the close of fact discovery identified in paragraph 5 above.

6.4.    Except by agreement of the parties or Court order, depositions of fact witnesses shall be completed by the close of fact discovery identified in paragraph 5 above.

6.5.    Bellwether Discovery for the Direct Action Newspaper Plaintiffs: To

advance the central goals of this MDL to complete discovery in the just, speedy, and inexpensive manner required by Fed. R. Civ. P. 1, the Court will implement a bellwether discovery method for the Direct Action Newspapers. With respect to discovery on the Direct Action Newspaper Plaintiffs by Defendants, the parties shall meet and confer regarding the selection of bellwether plaintiffs or a bellwether discovery pool. All discovery on Defendants by the Direct Action Newspaper Plaintiffs will be conducted in accordance with the common and category-wide discovery set forth in this Section 6 and its subparts. The parties shall also meet and confer regarding the contents and timing of Plaintiff Fact Sheets, which will be required to be completed by all non-bellwether Direct Action Newspaper Plaintiffs in this MDL.

6.6.    For the avoidance of doubt, the procedures set forth in this paragraph 6 concerning bellwethers apply only to the Direct Action Newspaper plaintiffs and shall not affect any other deadline set forth herein as to any other category of Plaintiff.

7.    The parties shall be permitted to take up to 10 fact-witness depositions per side in accordance with Fed. R. Civ. P. 30(a)(2) without further leave of Court. It is anticipated that collectively, the Plaintiffs will require more than 10 depositions. A party may seek leave of Court to depose additional witnesses by identifying the particular witnesses by name (unless a Rule 30(b)(6) witness); describing the matters on which they have unique knowledge; and identifying the group or groups of actions the particular witness pertains to. Absent court order or agreement of parties, all depositions shall be conducted in accordance with the Federal Rules of

Civil Procedure.

8.      All Plaintiffs shall serve opening reports of all experts within 40 days after the close

of fact discovery. Defendant(s) shall serve responsive expert reports within 90 days

after the service of Plaintiffs' expert reports. Plaintiffs may then serve any rebuttal

expert reports within 90 days after the service of Defendant(s)' reports.

Depositions of experts, shall be completed within 45 days following the service by

Plaintiffs of rebuttal expert reports.

9.      Class certification proceedings in the proposed Advertiser and Publisher class

actions will occur after the close of fact and expert discovery.  Plaintiffs in each of

these proposed class actions will move for certification within 30 days after the

close of expert discovery.  Defendant(s) will respond to the certification motions

within 45 days after their filing, and each of the two sets of Class Plaintiffs may file

a reply within 30 days after the filing of Defendant(s)' responses.

10.     All motions and applications shall be governed by the Court's Individual Practices,

including pre-motion conference requirements. Pursuant to the authority of Fed. R.

Civ. P. 16(c)(2), any motion for summary judgment will be deemed untimely unless

a Pre-Motion Letter relating thereto is filed no later than 14 days after the date set

by the Court for the close of fact discovery. No party shall file any summary

judgment motions prior to the close of expert discovery.

11.     The Court will hold monthly case management conferences to ensure efficient

progress and to address any issues or disputes that may arise in a timely fashion. At

least five business days prior to each monthly conference, the parties shall make a

joint submission informing the Court that there are no issues to discuss, or setting

forth an agenda of the issues they wish to discuss with the Court's attention or

request that the Court address at the conference and any party may simultaneously provide a letter to the Court providing additional information. The Court will issue a separate order setting forth the dates, times and locations of these conferences. The next case management conference will be held on December ____, 2022 at __ a.m./p.m.

12.    Setting of the Final Pretrial Submission Date, and of the deadlines related thereto, is deferred pending the determination of the district or districts where these cases will be tried. To the extent possible given the Court's schedule, trial in any action in this MDL that will be tried by this Court, including, but not limited to, Associated Newspapers, Ltd. v. Google LLC, No. 21-cv-03446-PKC (originally filed in this Court), shall commence within 90 days of the close of expert discovery or 90 days of a decision on a motion for summary judgment, whichever is later. No party waives its rights to remand to its transferor court under 28 U.S.C. § 1407(a) or any other right related to the change of venue. See Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26 (1998); Manual for Complex Litigation § 22.93 at p. 463 (4th ed.).

***TO BE COMPLETED BY THE COURT*:**

The Plan has been reviewed by the Court and, except as modified, is adopted as the Scheduling Order of this Court in accordance with Rule 16(b), Fed. R. Civ. P.

[Other provisions included by Court.]

This ORDER may not be modified or the dates herein extended, except by further Order of this Court for good cause shown. Any application to modify or extend the dates herein (except as noted in paragraph 6) shall be made in a written application in accordance with paragraph 1(C) of the Court's Individual Practices and shall be made no less than five (5) days prior to the expiration of the date sought to be extended.

Dated: _____          _____
                                                        P. Kevin Castel
                                                United States District Judge