# EXHIBIT B



**Via ECF**

The Honorable P. Kevin Castel
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007-1312

**Washington**
700 13th Street, NW
10th Floor
Washington, DC 20005-3960
T +1 202 777 4500 (Switchboard)
  +1 202 777 4545 (Direct)
F +1 202 507 5945
E eric.mahr@freshfields.com
www.freshfields.com

November 7, 2022

Re:    *In re Google Digital Advertising Antitrust Litigation*, No. 1:21-md-03010 (PKC)

Dear Judge Castel:

Defendants Google LLC, Alphabet Inc., and YouTube LLC (collectively "Google") respectfully submit this letter in response to Plaintiffs' proposed Case Management Plan and Scheduling Order. ECF No. 358. Google's proposed Scheduling Order is attached hereto as Exhibit A, and a redline of Google's proposed Scheduling Order against Plaintiffs' proposed Scheduling Order is attached hereto as Exhibit B. Pursuant to Your Honor's Individual Practices, we note that there is no conference scheduled at this time.

As an initial matter, we note that State Plaintiffs revealed for the first time last week that they do not intend for their Third Amended Complaint ("TAC") to be the operative complaint that the Court and the parties can use to assess the bounds of permissible discovery. *See* ECF No. 362; *see also* Fed. R. Civ. P. 26(b)(1) (authorizing discovery into "any nonprivileged matter that is relevant to any party's *claim* or defense and proportional to the needs of the case") (emphasis added). Until last week, Google was under the impression that the State Plaintiffs had put their strongest and best pleading before the Court, having previously represented it to be "comprehensive" and as "complete as possible." ECF No. 141. On that basis, Google participated in multiple meet-and-confer sessions and exchanged multiple draft Scheduling Orders with Plaintiffs, as the Court instructed. ECF No. 309 ¶ 5. Throughout that process, Google was open to agreeing that discovery would commence soon after entry of a Scheduling Order because it seemed that the claims in the TAC, as limited by the Court's opinion addressing Google's motion to dismiss (ECF No. 308), would govern the scope of discovery in at least the State Plaintiffs' case and the Court previously signaled its intention for discovery to begin. ECF No. 142 at Tr. 12:24-13:9.

But State Plaintiffs have now informed the Court that the purportedly "comprehensive" TAC still needs to be "clean[ed] up," ECF No. 362 at 3 n.6, and that they seek another opportunity to "put their best foot forward," *id*. at 3. If State Plaintiffs are permitted to file a motion to amend their pleadings for the fourth time, then Google would respectfully request that the Court keep the stay of discovery in place and refrain from entering any Scheduling Order until after that motion has been resolved and Google has had an opportunity to update its proposed Scheduling Order in light of the allegations included in the operative complaint. On the other hand, if the Court holds State Plaintiffs to their TAC, then Google would

**Freshfields Bruckhaus Deringer** us LLP

respectfully request that the Court enter its proposed Scheduling Order (Ex. A), rather than the order submitted by Plaintiffs.

Like their approach to pleading, Plaintiffs' proposed Scheduling Order overcomplicates what should be a more straightforward exercise, smacks of gamesmanship, and should be rejected by the Court. Despite having had more than a year to prepare their discovery requests, ECF No. 141 at 1, Plaintiffs have yet to serve any early Rule 34 requests and yet propose that Google complete its productions in just *6 months*, while exempting certain Plaintiffs from *any* discovery. Plaintiffs' six-month deadline is especially unreasonable given that the proper scope of discovery cannot be determined in any of Plaintiffs' cases, now that they are all in the process of amending their claims and Google is seeking to dismiss at least parts of all of their complaints. ECF Nos. 357, 367. Plaintiffs already have the benefit of more than two million documents that Google originally produced during State Plaintiffs' 18-month pre-suit investigation of Google, and they now seek to prejudice Google's ability to defend itself by constraining fact discovery to just 15 months. Unlike Plaintiffs, Google has not yet been able to propound any discovery. As the JPML observed, discovery in the State Plaintiffs' action alone "is likely to be voluminous and complex" and third party discovery will likely be "significant."[1]

Despite the Court's Order not to do so, Plaintiffs propose larding up the Scheduling Order with a slew of provisions that need not and should not be included, such as deadlines for finalizing a stipulation to which the parties have already agreed in principle, selection of a few "bellwether" Plaintiffs (and discovery exemptions for many other Plaintiffs), "category-specific" interrogatories with no basis under the Federal Rules, monthly case management conferences (which Plaintiffs concede are for their own benefit and will likely be canceled), and a timeframe for a trial which may never occur. *See* ECF No. 309 ¶ 6 (instructing that the Scheduling Order "need not and should not provide for every contingency").

Google's Scheduling Order, by contrast, is streamlined, fair, and comports with the Federal Rules and Pre-Trial Order ("PTO") No. 2. Consistent with Federal Rule of Civil Procedure 23, Google proposes that class certification be briefed at "an early practicable time," i.e., prior to the conclusion of fact discovery. Fed. R. Civ. P. 23(c)(1)(A); *see* Ex. A ¶ 8. Google also proposes 24 months for fact discovery, which is comparable with other cases of this magnitude and complexity, and affords Google a fair opportunity to take discovery and mount its defense. Ex. A ¶ 5. And Google's Scheduling Order does not seek to address unnecessary contingencies.

**Paragraph 1 (Complaint Amendments)**

There is no dispute regarding the first two categories of permissible amendments in Paragraph 1. But there is a disputed third category in which Plaintiffs propose that they be allowed to amend their complaints "as permitted under Rule 15(a)(1)," ECF No. 358-1 ¶ 1, and claim an "absolute" right to amend once as a matter of course, ECF No. 358 at 1. Google's proposal provides for Plaintiffs to amend their complaints with leave of Court, but its proposal does not reference Rule 15(a)(1) because the Court's prior orders override that default.

Plaintiffs concede that the Court has the power to "limit the *time* for amendment." ECF No. 358 at 2. In PTO Nos. 2 and 3, the Court did just that, establishing a procedure for

---

[1] *In re Digital Advert. Antitrust Litig.*, 555 F. Supp. 3d 1372, 1375, 1378 (J.P.M.L. 2021).

**Freshfields Bruckhaus Deringer US LLP**

amending complaints, and providing a deadline for such amendments. ECF No. 309 ¶ 1 ("Any Class Action . . . or any individual plaintiff . . . may within 21 days submit a proposed amended pleading"); ECF No. 311 ¶ 1 (setting same schedule for "Any Individual Action").

Some Plaintiffs chose not to avail themselves of the opportunity to amend per the schedule established by the Court and instead seek to reserve the ability to amend in the future "as of right." Consistent with the Court's guidance,[2] having failed to amend by the deadline set by the Court, those Plaintiffs must now seek the Court's leave to amend. The Second Circuit has held that the period to amend as of right under Federal Rule 15(a)(1) ends "upon expiration of a specified period in a scheduling order." *Sacerdote v. New York Univ.*, 9 F.4th 95, 115 (2d Cir. 2021), *cert. denied*, 142 S. Ct. 1112 (2022). While it "is still possible for the plaintiff to amend the complaint after such a deadline, . . . the plaintiff may do so only upon a showing of the 'good cause' that is required to modify a scheduling order under Rule 16(b)(4)." *Id.*[3]

**Paragraph 2 (Stipulation Deadlines)**

There is no dispute that the parties will meet and confer about all items set forth in Rule 26(f)(2) and 26(f)(3) by November 14, 2022. But Plaintiffs propose to go further and require the parties to submit proposed ESI Orders and expert stipulations by the same date. Those additional requirements are unnecessary because Google already has finalized drafts of both documents.

Google submitted to Plaintiffs a proposed ESI Order *over four months ago*, but Plaintiffs have insisted on scores of changes to what should be a simple order. In September 2021, the Court ordered Plaintiffs to coordinate the drafting of an ESI Order, ECF No. 129, and Plaintiffs then represented to the Court that they were "consolidating comments" on their proposed ESI Order. ECF No. 141 at 1. *Seven months* after being ordered to coordinate, Plaintiffs provided a first draft which, at almost 50 pages, was untethered to the Federal Rules and completely unworkable. *See* Ex. C. After coordinating with Meta, Google provided to Plaintiffs, on July 1, 2022, a simple and streamlined draft ESI Order based on one entered by a federal judge in a recent antitrust case brought by the Federal Trade Commission.[4] Ex. D (cover letter); Ex. E (Defendants' proposed ESI Order).

After two more months went by, Plaintiffs responded to Defendants' July 1 proposal by proposing *more than 60* further changes. On October 14, 2022, Google offered a path

---

[2] At the September 24, 2021 conference, the Court stated: "[o]ther plaintiffs -- in class actions, in individual actions -- will have time to seek an amendment, not a lot of time but time after you have in hand a decision on the motion to dismiss in the state case, to then say, Well, gee, I want to amend to add an allegation that was upheld in the state case, or the like. So you'll have a chance. . . . That's the process. So what I envision is 21 days after the decision on the motion to dismiss, there will be an opportunity for amendments and when I say amendments, move to amend. I'll have you submit a proposed pleading so everybody knows what the amendment is." ECF No. 142 at Tr. 11:22-12:14.

[3] *See also In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 2020 WL 3256871, at *2 (S.D.N.Y. June 16, 2020) ("[A] court-ordered schedule 'may be modified only for good cause and with the judge's consent. When a scheduling order has been entered which has restricted a party's ability to file an amended complaint, Rule 15's liberal standard must be balanced against the more stringent standard of Rule 16, under which such an order 'may be modified only for good cause.'" (internal quotation marks and citations omitted)), *aff'd*, 336 F.R.D. 400 (S.D.N.Y. 2020).

[4] *FTC v. Meta Platforms, Inc.*, No. 1:20-cv-03590 (D.D.C. Mar. 8, 2022), ECF No. 108.

**Freshfields Bruckhaus Deringer** US LLP

forward in the negotiations that addressed what Plaintiffs had identified as their top priorities, but would have required compromise by both sides. Ex. F at 3-4. Google also gave detailed explanations for its positions regarding the preservation of seven specific categories of ESI and asked Plaintiffs to explain their position if they disagreed. *Id.* at 2-3. And Google informed Plaintiffs that Google was prepared to submit Defendants' July 1 proposal to the Court if Plaintiffs refused to compromise and continued to demand dozens of further changes in their favor. *Id.* at 4.

Plaintiffs told Google that they would provide a response to Google's proposed ESI Order by October 28, but then failed to do so. A week later, on the afternoon of Friday, November 4, Plaintiffs provided a partial response (subject to approval by some Plaintiffs) in which they again rejected or challenged all of Google's proportionality proposals, suggested more than 20 further changes, failed to answer any of Google's questions, and posed more than 20 further questions largely pertaining to provisions that Google had introduced over four months ago. Plaintiffs did not respond to Google's compromise proposal, provide a counterproposal, or address any of the matters raised in Google's October 14 letter.

After dragging their feet for months, Plaintiffs now claim that "these negotiations could continue indefinitely" unless the Court orders the parties to submit proposed ESI Orders by November 14. ECF No. 358 at 2. Yet Plaintiffs have been the cause of these protracted negotiations, not Google. Google has been clear for weeks that, unless Plaintiffs were willing to negotiate a meaningful compromise, it would be prepared to submit to the Court the proposed ESI Order that it provided to the Plaintiffs on July 1 and that is attached hereto as Exhibit E.[5] Plaintiffs have failed to budge and indeed do not even have a currently pending proposal.

As to the expert stipulation, the parties have reached agreement in principle: on October 28, 2022, Google provided Plaintiffs with a stipulation that Google would be prepared to submit to the Court for approval if the Court enters a Scheduling Order that provides Google with 90 days to respond to Plaintiffs' expert reports (as both Plaintiffs' and Google's proposed Scheduling Orders would do). Because the finalization of the stipulation is contingent on the schedule ordered by this Court, Google's proposal does not include a deadline for the expert stipulation.

### Paragraph 3 (Beginning of Discovery)

As this Court instructed in PTO-2, Google engaged in negotiations with Plaintiffs regarding a Scheduling Order under the assumption that State Plaintiffs' Third Amended Complaint was their "strongest and best pleading."[6] But State Plaintiffs now seek to amend their complaint for a *fourth* time and so all Plaintiffs are in the process of amending their complaints. That makes it nearly impossible for the parties and the Court to determine the scope of discovery. Accordingly, Google submits that discovery should be stayed until at least

---

[5] Google's October 14 letter stated: "We outline below a proposed compromise that addresses Google's primary concerns in exchange for what we understand to be Plaintiffs' primary concerns (as well as many of Plaintiffs' proposed "technical edits"). If Plaintiffs will agree to appropriate limitations on the scope of discoverable ESI grounded in principles of proportionality, then Google will agree to the changes outlined below and reflected in the enclosed redline. But if Plaintiffs continue to reject any and all changes proposed by Google then Google is prepared to submit Defendants' July 1 Draft to the Court." Ex. F at 1.

[6] ECF No. 142 at Tr. 11:4-5.

Case 4:20-cv-00957-SDJ    Document 574-2    Filed 07/19/24    Page 6 of 116 PageID #:
19224
Case 1:21-md-03010-PKC   Document 371   Filed 11/07/22   Page 5 of 13

5 | 13

**Freshfields Bruckhaus Deringer** US LLP

the State Plaintiffs' complaint has been finalized and Google has had an opportunity to consider whether any changes to the operative pleading should affect the Scheduling Order.

Google proposes that most discovery could proceed soon after entry of the Scheduling Order, but that discovery directed at (or exclusively related to) certain narrow topics would remain stayed. Ex. A ¶ 3. More specifically, Google's proposal would not allow Plaintiffs immediately to commence discovery into topics that the Court has already rejected as bases for antitrust liability: Google's Network Bidding Agreement with Facebook; encryption of user IDs; Reserve Price Optimization; Exchange Bidding; and Accelerated Mobile Pages.[7] Nor would Plaintiffs be permitted to conduct discovery concerning Google's Search business, an area that the Court has not held to state a claim and that is far removed from the core allegations in this case.

By contrast, Plaintiffs' proposal ignores the Court's guidance and would allow discovery into every issue—including those that the Court found not to state plausible antitrust claims—as soon as fact discovery begins. Plaintiffs point out that, under their proposal, Google could assert relevance objections and litigate them before Your Honor, ECF No. 358 at 4, but it would be much simpler and more efficient for discovery to be limited to what the Court already has identified as plausible claims, as Google proposes. Plaintiffs also contend that Google should be subjected to discovery into irrelevant matters because it does not oppose their motions to file amended complaints, *id.*, but they ignore that Google informed the Court that it would be seeking leave to challenge the sufficiency of those pleadings through motions to dismiss. ECF No. 354. On November 4, Google filed its pre-motion letter. ECF No. 367.

### Paragraph 4 (Initial Disclosures)

There are no disputes on this paragraph.

### Paragraph 5 (Fact Discovery Period)

Google proposes a 24-month period for fact discovery in this sprawling and complex matter. Ex. A ¶ 5. Plaintiffs include sixteen states and Puerto Rico, Advertiser Class Plaintiffs, Publisher Class Plaintiffs, and 70 individual non-class Plaintiffs. Their claims are sweeping in scope, encompassing federal antitrust claims, as well as a multitude of different state antitrust and consumer protection claims. Even after the Court's motion to dismiss ruling, State Plaintiffs' remaining antitrust claims alone involve more than a dozen distinct types of conduct allegedly affecting at least four separate alleged markets over the course of more than a decade. The JPML correctly observed that discovery in the State Plaintiffs' action alone "is likely to be voluminous and complex,"[8] and this MDL includes dozens of additional private actions, including many raising unique claims implicating other alleged markets as well.

Google's 24-month proposal is in line with the periods ordered for fact discovery in similar (and less complex) cases:

- In *Sullivan v. Barclays PLC*, Your Honor permitted **approximately 20 months** of fact discovery in an antitrust class action arguably less complex than this MDL. *Sullivan*

---

[7] ECF No. 308 at 20-34 (Network Bidding Agreement with Facebook), 40-44 (encryption of user IDs), 57-64 (Reserve Price Optimization and Exchange Bidding), 70-72 (Accelerated Mobile Pages).

[8] *In re Digital Advert. Antitrust Litig.*, 555 F. Supp. 3d 1372, 1378 (J.P.M.L. 2021).

6│13

**Freshfields Bruckhaus Deringer** US LLP

concerned one consolidated class action by private plaintiffs alleging price-fixing and market manipulation in a single market.  Scheduling Order, No. 13-cv-2811 (S.D.N.Y. Apr. 10, 2017), ECF No. 337 ¶ 5 (attached as Exhibit G) (setting close of fact discovery approximately 20 months from the entry of the order).

- In *In re American Express Anti-Steering Rules Antitrust Litigation*, the court permitted **20 months** of fact discovery in an MDL involving the U.S. government, state attorneys general, and private plaintiffs.  Amended Scheduling Order, No. 11-md-2221 (E.D.N.Y. Dec. 18, 2012), ECF No. 224 at 1-2 (attached as Exhibit H) (initial disclosures completed by April 14, 2011, fact discovery to close December 21, 2012).

- In *In re Google Play Store Antitrust Litigation*, discovery lasted **over 21 months** from the earliest document requests until close of fact discovery.  Joint Case Management Statement, No. 21-md-2981 (N.D. Cal. Mar. 25, 2021), ECF No. 11 at 4-5 (attached as Exhibit I) (describing November 9, 2020 requests for production); Amended MDL Scheduling Order, ECF No. 191 at 2 (attached as Exhibit J) (setting close of fact discovery at August 12, 2022).

- In *In re Hard Disk Drive Suspension Assemblies Antitrust Litigation*, a price-fixing MDL with two indirect purchaser classes and two direct action plaintiffs, fact discovery ran from May 14, 2020 to October 21, 2022, i.e., **approximately 29 months**.  Order re: Lifting of Discovery Stay and Coordination of Discovery and Discovery Limits, No. 19-md-2918 (N.D. Cal. May 14, 2020), ECF No. 213 at 3 (attached as Exhibit K) (lifting discovery stay on May 14, 2020); Amended Order re Case Schedule, ECF No. 503 ¶ 1 (attached as Exhibit L) (setting close of fact discovery at October 21, 2022).

- In *In re Generic Pharmaceuticals Pricing Antitrust Litigation*, fact discovery is set to last **46 months** in an MDL brought by attorney generals from 48 states, Puerto Rico, and the District of Columbia, as well as classes of private plaintiffs and direct action plaintiffs. Pretrial Order No. 96, No. 2:16-md-02724-CMR (E.D. Pa. July 12, 2019), ECF No. 1046 ¶ 3 (attached as Exhibit M) (opening discovery July 12, 2019); Pretrial Order No. 217, ECF No. 2244 ¶ 1 (attached as Exhibit N) (ordering discovery to close June 1, 2023).

Plaintiffs propose that fact discovery be completed in just 15 months.  ECF No. 358-1 ¶ 5. In support of that figure, they note that Judge Jordan ordered a 13.5-month period for fact discovery in the State Plaintiffs' case before it was transferred to this Court and that a 15-month period was initially[9] entered in the Google Search case.  ECF No. 358 at 4.  But both matters were government actions that did not involve the complexities and additional discovery required in private class action litigation like the ones consolidated in this MDL.[10]

Plaintiffs may be content with 15 months for post-complaint fact discovery because they have already benefited from the State Plaintiffs' 18-month pre-complaint investigation and access to roughly two million documents that Google produced many months ago.  *See*

---

[9] That period was later extended to approximately 17 months.  Order, *United States v. Google*, No. 1:20-cv-03010 (D.D.C. Dec. 6, 2021), ECF No. 263 at 1.

[10] Moreover, Plaintiffs implicitly conceded that 18 months would be a reasonable period for fact discovery when they proposed that period during negotiations over the Scheduling Order.  Email from Jason Zweig, October 23, 2022 (attached as Exhibit O).

**Freshfields Bruckhaus Deringer** US LLP

ECF No. 244. Google, on the other hand, has yet to propound any discovery. In addition to seeking discovery from all 92 Plaintiffs, Google anticipates sending subpoenas to a significant number of third-party customers and competitors in each of Plaintiffs' alleged relevant markets. Negotiation of these subpoenas will take a substantial amount of time, and third party discovery likely will take longer to complete than party discovery. Indeed, State Plaintiffs represented to the JPML that they "took over 50 statements, equivalent to depositions," from third parties over the course of their 18-month investigation prior to filing suit.[11] *See also In re Interest Rate Swaps Antitrust Litig.*, 2019 WL 1147149, at *26 (S.D.N.Y. Mar. 13, 2019) (recognizing defendant's "right to pursue . . . third party document discovery, data, and depositions" and noting that such third-party discovery "is apt to be substantial and time-consuming").

### Paragraph 6.1 (Substantial Completion of Fact Discovery)

The Court should reject Plaintiffs' proposal that, by 6 months after the start of fact discovery, the parties would "substantially complete production of documents including data responsive to document requests served within the first 30 days of discovery." ECF No. 358-1 ¶ 6.1. Indeed, achieving "substantial completion" in that timeframe seems impossible given the apparent fluidity of the pleadings (and thus the proper scope of discovery).

Although not required by the Federal Rules, some courts have imposed substantial completion deadlines that are calibrated to the overall period of fact discovery and anchored much closer to the end of fact discovery than the beginning. *See e.g.*, *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, No. 1:14-md-02542, (S.D.N.Y.) ECF No. 354-1 at 3, 379 at 4 (adopting order for substantial completion "in response to the initial Requests for Production" to be "completed no later than ninety (90) days before the close of fact discovery").[12]

Consistent with those approaches, Google proposes a "substantial completion" deadline of 15 months from the beginning of fact discovery (which might be 14 months after service of initial document requests). Ex. A ¶ 6.1. A substantial completion deadline of 15 months would leave approximately 9 months of a 24-month fact discovery period for remaining party document discovery and depositions and third-party discovery. That should provide all parties with an adequate opportunity to develop the factual record necessary to resolve this complex MDL within the overall fact discovery period.

Plaintiffs do not cite any orders that would support their version of a fast-tracked substantial completion deadline of just 6 months from the beginning of fact discovery.[13] Such

---

[11] Transcript of Oral Argument, *In re Digital Advertising Antitrust Litig.*, MDL No. 3010 (J.P.M.L. Jul. 29, 2021), ECF No. 110 at 25:7-8.

[12] *See also In re Pork Antitrust Litig.*, No. 18-cv-01776 (D. Minn.), ECF Nos. 289 at 2-3, 658 at 4 (discovery commenced prior to the court's scheduling order such that the substantial completion deadline was nearly 34 months from when plaintiffs served initial Rule 34 requests); *In re Cattle and Beef Antitrust Litig.*, No. 20-cv-01319 (D. Minn.), ECF Nos. 628 at 3, 72 at 5 (scheduling order called for substantial completion deadline of approximately 29 months from when both sides filed initial Rule 34 requests in September of 2020).

[13] Although Plaintiffs cite *In re Interest Rate Swaps* and *Fort Worth Emps. Retirement Fund v. J.P. Morgan Chase & Co.*, *see* ECF No. 358 at 5, the court in *Interest Rate Swaps* ordered an 11-month substantial completion deadline—nearly double the time Plaintiffs propose here—at the same time that it permitted more time for fact discovery (17 months) than Plaintiffs propose for this case. Civil Case Management Plan and Scheduling Order, No. 16-md-2704 (S.D.N.Y. Aug. 28, 2017), ECF No. 250 at 1. And in *Fort Worth*, the parties had 32 months to substantially complete fact discovery. Scheduling Order, No. 1:09-cv-03701 (S.D.N.Y. Sept. 9, 2011), ECF No.

**Freshfields Bruckhaus Deringer** us LLP

a short deadline would be especially inappropriate here because Plaintiffs have refused to provide any specifics about the breadth of the discovery they plan to seek from Google, making only vaguely ominous references during meet-and-confer sessions to initial document requests that they claim will be "comprehensive" and cover "all aspects of the case." Thirteen months ago, at the September 24, 2021 conference, the Court encouraged Plaintiffs to formulate and share their document requests with Google while discovery was stayed because Your Honor recognized that it likely would take Google significant time to respond to those requests.[14] At that time—over a year ago—Plaintiffs represented to the Court that they were "consolidating comments" on their requests, ECF No. 141 at 1, but they still have yet to serve them or to inform Google of the categories of documents they intend to seek. Without providing any concrete guidance about their specific document requests, Plaintiffs simply have no basis to ask the Court to require Google to substantially comply with all of them in 6 months. Indeed, it is particularly unreasonable for Plaintiffs to propose that Google be required to complete all of the work of responding and producing documents and data in less than half time that Plaintiffs will have taken just to *propound* their requests.

### Paragraph 6.2 (Interrogatories)

Google proposes that, "no party may be served with more than 25 interrogatories in total (across all actions)." Ex. A ¶ 6.2; *see also* Fed. R. Civ. P. 33(a)(1) ("[A] party may serve on any other party no more than 25 interrogatories."). That proposal would ensure that no party is subject to a disproportionate number of interrogatories.

Having already had extensive discovery of Google, Plaintiffs ask for more. Now Plaintiffs propose that "each side may serve up to 25 common interrogatories on another side" and "[i]n addition, each category of plaintiffs or defendants . . . may serve up to 15 interrogatories seeking category-specific information on any other category of plaintiff or defendant." ECF No. 358-1 at 3. Because there are four categories of plaintiffs, *id.* at 1 n.1, this proposal would subject Google to as many as 85 interrogatories, while ensuring that no Plaintiff would have to respond to more than 40 interrogatories. In addition to subjecting Google to more than twice as many interrogatories as any Plaintiff, Plaintiffs' proposal for category-specific interrogatories fails to heed the Court's direction in PTO-3 that they coordinate with respect to the preparation of a common set of interrogatories. ECF No. 311 ¶ 3.

Under Local Rule 33.3(a), interrogatories are generally limited to seeking names of witnesses with relevant knowledge, the computation of damages, and existence of location of documents. In light of the extensive document productions that Plaintiffs already have, there should be limited need for Plaintiffs to issue additional interrogatories. With appropriate coordination among Plaintiffs, 25 interrogatories should be sufficient. If not, then Google's proposal allows for the parties to request additional interrogatories "upon a showing of good cause." *See* Ex. A ¶ 6.2.

---

147 (initiating fact discovery in October 2011); *Fort Worth Emps. Retirement Fund v. J.P. Morgan Chase & Co.*, 297 F.R.D. 99, 114 (S.D.N.Y. 2013) (substantial completion deadline ultimately set for 2014).

[14] The Court stated: "If there is a consolidated Rule 34 demand that [Plaintiffs] want to serve, the time to respond is going to be stayed, but the clock will be ticking so that Google will not be able to say, My God, I just got this on a Tuesday and [it's] going to take me months to figure out what's within the scope of this." ECF No. 142 at Tr. 33:11-15.

**Freshfields Bruckhaus Deringer** US LLP

### Paragraphs 6.5 and 6.6 (Bellwether Plaintiffs)

Plaintiffs propose to require the parties to meet and confer "regarding the selection of bellwether plaintiffs or a bellwether discovery pool." ECF No. 358-1 at 3-4. Although they never explain precisely what they have in mind, it appears that the 45 Direct Action Newspaper Plaintiffs hope that only a few of them will be required to respond to discovery requests, while most will have to prepare only some sort of "Plaintiff Fact Sheets" at some point.

Plaintiffs' proposal appears designed to treat a few "bellwether" Direct Action Newspaper Plaintiffs like named class representatives for the broader group. They can still achieve that result by dismissing their individual actions and participating in this litigation as members of the Publisher Class. But having chosen to pursue their own opt-out actions, the Direct Action Newspaper Plaintiffs should not be permitted to deprive Google of the ability to conduct discovery into their individual claims.

Plaintiffs offer no precedent for using a "bellwether" process to effectively immunize certain individual parties from discovery. In *In re Generic Pharmaceuticals*—the only antitrust case Plaintiffs cite—the court selected certain cases based on the drugs at issue to proceed as bellwethers through trial and prioritized setting a case schedule for those bellwethers. *See In re Generic Pharmaceuticals Pricing Antitrust Litig.*, 2:16-md-02724 (E.D. Pa. 2021), ECF Nos. 1845, 1901. However, the court there did not pause discovery in the non-bellwether cases (*id.*, ECF No. 1901 ¶ 17) and in fact non-bellwether discovery has been proceeding. *See, e.g.*, *id.*, ECF No. 2222 (ordering production of discovery relevant to both bellwether and non-bellwether cases).

Nor do Plaintiffs' other exemplar bellwether actions (all non-antitrust) provide any support. Those cases involved focusing an initial round of discovery on particular issues, while preserving defendants' rights to obtain discovery later in the case. *See* Scheduling Order No. 2, *In re Syngenta AG MIR 162 Corn Litig.*, No. 14-md-2591 (W.D. Kan. Oct. 21, 2015), ECF No. 1098 at 5 (deferring discovery on certain cases until after disposition of certain "bellwether" trials); *In re National Prescription Opiate Litig.*; *In re Taxotere (Docetaxel) Prod. Liab. Litig.*, MDL No. 2740 (E.D. La.), ECF Nos. 669, 670, 1099 (same). That is a far cry from Plaintiffs' proposal to see most of the Direct Action Newspaper Plaintiffs immunized from all discovery.

### Paragraph 7 (Depositions)

The parties largely agree on the provisions related to depositions. The main difference between their proposals is that Google proposes to include the following sentence: "There will be no duplicative questioning of witnesses, and, absent good cause, no fact witness deponent will be examined more than once." Ex. A ¶ 7. Plaintiffs' proposal omits that sentence, and their letter does not explain why. Although the Court has already included this admonition in PTO-2, ECF No. 309 ¶ 6, Google believes it is important for the Court to reaffirm it in the Scheduling Order, which the parties and non-parties will reference throughout the litigation,

### Paragraphs 8 and 9 (Class Expert Discovery and Class Certification)

Google proposes that class expert discovery and class certification briefing occur prior to the close of fact discovery, Ex. A ¶ 8, while Plaintiffs propose that they take place after the close of fact discovery. Google's proposal is the more efficient one for at least three reasons.

**Freshfields Bruckhaus Deringer** US LLP

    *First*, Google's proposal is consistent with the approach taken in recent MDLs,[15] as well as the approach taken by this Court in complex class actions. *See In re SunEdison, Inc. Securities Litig.*, No. 16-md-2742 (S.D.N.Y. June 1, 2018), ECF No. 377 (ordering that the plaintiffs move for class certification "at any time, provided that such briefing be completed [before the close of fact discovery]"); *Sullivan v. Barclays PLC et al.*, No. 13-cv-2811 (S.D.N.Y. Apr. 10, 2017), ECF No. 337 (ordering class certification discovery, including depositions of class experts, and the filing of a motion for class certification to be completed before the close of fact discovery); *In re Bank of Am. Corp. Securities, Derivative, and Employee Income Retirement Income Security Act (ERISA) Litig.*, No. 09-md-2058 (S.D.N.Y. Sept. 7, 2011), ECF No. 453 (same).[16]

    *Second*, Plaintiffs' proposal would result in class certification and summary judgment being briefed simultaneously. That, in turn, would force the Court to address class certification and summary judgment concurrently despite the Court's guidance that the parties should avoid turning chambers into a "bottleneck."[17] By its nature, certification is the fulcrum of a class action. Denial of class certification would likely lead to dismissal or settlement, without the need for the parties to prepare—or the Court to consider—costly and time-consuming summary judgment motions. But Plaintiffs' proposal would require summary judgment briefing simultaneously with class certification briefing, virtually guaranteeing significant wasted effort if classes are not certified or if only partially certified. And although Plaintiffs rely on various cases from outside this District in support of their contention that their proposal has precedent, ECF No. 358 at 8 n.13, none of those cases called for the simultaneous briefing of class certification and summary judgment that Plaintiffs propose here.[18]

---

[15] *See e.g.*, Case Management Order, *In re Xyrem (Sodium Oxybate) Antitrust Litig.*, No. 3:20-md-02966 (N.D. Cal. Mar. 19, 2021), ECF No. 66 (ordering class certification briefing to be completed before the close of fact discovery); MDL Scheduling Order, *In re Google Play Store Antitrust Litig.*, No. 21-md-2981(N.D. Cal. Oct. 22, 2021), ECF No. 122 (same); Pretrial Scheduling Order, *In re Pork Antitrust Litig.*, No. 18-cv-01776 (D. Minn. Jan. 26, 2021), ECF No. 658 (same); Pretrial Scheduling Order, *In re Cattle and Beef Antitrust Litig.*, No. 20-cv-01319 (D. Minn June 22, 2022), ECF No. 571 (same); *see also* Amended Order re Case Schedule, *In re Hard Disk Drive Suspension Assemblies Antitrust Litig.*, No. 19-md-2918 (N.D. Cal. May 27, 2022), ECF No. 503 (ordering plaintiffs to move for class certification before the close of fact discovery).

[16] These same examples also demonstrate that Plaintiffs' professed concerns about supposed inefficiencies in bifurcating class and non-class expert discovery are overblown. *See* ECF No. 358 at 9.

[17] At the September 24, 2021 conference, the Court stated: "[I]t is not the case that multiple motions going on at the same time lead to faster or more efficient results. You're dealing with one judge, one chambers." *See* ECF No. 142 at Tr. 12:17-21.

[18] *See e.g.*, Scheduling Order, *In re Dental Supplies Antitrust Litig.*, No. 16-cv-696 (E.D.N.Y. Apr. 4, 2018), ECF No. 269 (ordering summary judgment motions "due 30 days after the Court decides the class certification motion"); Corrected Seventh Amended Scheduling Order, *In re Niaspan Antitrust Litig.*, No. 13-MD-2460 (E.D. Pa. Nov. 16, 2018), ECF No. 570 (addressing summary judgment after briefing and hearing on class certification motions); Case Management Order, *Henry v. Brown Univ.*, 1:22-cv-00125 (N.D. Ill. Sept. 8, 2022), ECF No. 195 (sequencing summary judgment motions after briefing on class certification); Case Management Order no. 5, *In re: Broiler Chicken Grower Antitrust Litig.*, No. 6:17-cv-00033 (E.D. Okla. Oct. 20, 2022), ECF No. 643 (same); *Le v. Zuffa, LLC*, No. 2-15-cv-01045 (D. Nev. Oct. 14, 2016), ECF No. 311 (same); *Simon and Simon, PC, et al. v. Align Tech., Inc.*, No. 3:20-cv-03754 (N.D. Cal. May 13, 2021), ECF No. 106 (same).

**Freshfields Bruckhaus Deringer US LLP**

*Third*, Google submits that it is preferable to allow fact discovery to proceed during class certification. Plaintiffs' proposal could require the Court to reopen discovery to resolve class certification issues—imposing additional burdens on the parties and the Court.[19]

Plaintiffs' various other contentions (e.g., that Google's proposed schedule would prevent the Class Plaintiffs from using class expert reports informed by all of fact discovery and would require front-loading of key data and document issues, *see* ECF No. 358 at 9) lack any basis because Google has proposed that the parties substantially complete their productions within 15 months of the service of initial document requests, one month before class expert reports would be due. Ex A ¶¶ 3, 6.1. Plaintiffs should therefore have an adequate factual record upon which to proceed with class certification briefing.[20]

### Paragraph 10 (Non-Class Expert Depositions)

Google proposes a 60-day period following the service of Plaintiffs' rebuttal non-class expert reports for expert depositions, Ex. A ¶ 10, and Plaintiffs propose a 45-day period, ECF No. 358-1 at 5. The longer period builds in greater flexibility to accommodate experts' schedules without materially impacting the overall schedule.

### Paragraph 11 (Summary Judgment)

Google proposes that any pre-motion letter seeking summary judgment be filed no later than 14 days after the close of *expert* discovery, Ex. A ¶ 11, and Plaintiffs propose that they be filed no later than 14 days after the close of *fact* discovery, ECF No. 358-1 at 5. Because of the importance of expert evidence in antitrust cases,[21] the arguments in any pre-motion letters filed soon after fact discovery ends and expert discovery begins will likely be overtaken as expert evidence comes into the record, potentially creating some disputes of material fact and resolving others. Indeed, Plaintiffs themselves recognize that "briefing on any such motion for summary judgment should naturally occur following the close of *expert* discovery." ECF No. 358 at 10 (emphasis added).

Plaintiffs propose that "[n]o party shall file any summary judgment motions prior to the close of expert discovery," ECF No. 358-1 at 5, without providing any justification for their position. Google's proposal omits that limitation because it would be inconsistent with Federal Rule 56, which provides that "a party may file a motion for summary judgment *at any time* until 30 days after the close of *all* discovery." Fed. R. Civ. P. 56(b) (emphasis added).

---

[19] *See, e.g.*, *A & R Body Specialty v. Progressive Cas. Ins. Co.*, No. 3:07CV929 WWE, 2012 WL 40465, at *1–2 (D. Conn. Jan. 9, 2012) (rejecting proposal to schedule class certification after the close of fact discovery because the parties would likely require additional discovery to respond to class certification motions).

[20] Plaintiffs also argue that the well-established and routine sequencing of class certification proposed by Google would result in expert reports "run[ning] into one another." ECF No. 358 at 9. But earlier stages of litigation always "run into" later stages.

[21] *See, e.g.*, *Colsa Corp. v. Martin Marietta Servs., Inc.*, 133 F.3d 853, 855 (11th Cir. 1998) (holding that expert testimony is required to define a relevant market for antitrust claims); *Monsanto Co. v. Trantham*, 156 F. Supp. 2d 855, 863 (W.D. Tenn. 2001) ("[G]enerally speaking, expert proof is required to prove antitrust claims merely because the knowledge of the markets required to prove such a claim is generally beyond that of a lay person and the level of analysis needed to assist the Court in determining the relevant market is outside the reach of most lay persons.").

**Freshfields Bruckhaus Deringer US LLP**

### Paragraph 11 of Plaintiffs' Proposal (Monthly Conferences)

Plaintiffs propose to require the Court to "hold monthly case management conferences . . . to address any issues or disputes that may arise." ECF No. 358-1 at 5. Their letter reveals that these conferences are intended mainly to facilitate "rais[ing] discovery disputes," ECF 358 at 11, and Google respectfully submits that establishing a regular forum for airing discovery disputes will more likely multiply, than deter, such disputes. Of course, Google will participate in conferences as directed by the Court, but it does not propose to tell the Court how often it should meet with the parties. Google understands that position to be consistent with the Court's guidance.[22]

### Paragraph 12 (Trial Date)

Plaintiffs propose that the Court set a trial date in the first Scheduling Order. ECF 358-1 at 6. The Court need not and should not schedule a trial date at this juncture because it is not yet clear which, if any, cases in the MDL will survive summary judgment and which, if any, will be tried in this Court. If necessary, the Court can schedule trial dates following summary judgment.

\* \* \*

For all of these reasons, Google respectfully requests that the Court keep the discovery stay in place and defer entry of any Scheduling Order if it allows State Plaintiffs to file a motion to amend their complaint. If the Court declines to allow State Plaintiffs to amend, then Google respectfully requests entry of a Scheduling Order in the form attached hereto as Exhibit A.

Respectfully submitted,

*/s/ Eric Mahr*
Eric Mahr
FRESHFIELDS BRUCKHAUS
DERINGER US LLP
700 13th Street, NW
10th Floor
Washington, DC 20005
Telephone: (202) 777-4545
Email: eric.mahr@freshfields.com

Justina K. Sessions
WILSON SONSINI GOODRICH &
ROSATI
Professional Corporation
One Market Plaza
Spear Tower, Suite 3300
San Francisco, California 94105

---

[22] At the April 19, 2021 conference, the Court stated: "I hope we're not all anticipating, well, our weekly discovery fight, Judge, what do you think?" ECF No. 291 at Tr. 44:3-4.

13|13

**Freshfields Bruckhaus Deringer US LLP**

Telephone: (415) 947-2197
Email: jsessions@wsgr.com

*Counsel for Defendants Google LLC,*
*Alphabet Inc., and YouTube LLC*

CC: All Counsel of Record (via ECF)

# Exhibit A

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| IN RE GOOGLE DIGITAL ADVERTISING ANTITRUST LITIGATION | 21-md-3010 (PKC)<br><br>**[Proposed] CIVIL CASE MANAGEMENT PLAN AND SCHEDULING ORDER** |

**P. KEVIN CASTEL, Senior District Judge:**

This Civil Case Management Plan (the "Plan") is submitted by the parties[1] in accordance with Fed. R. Civ. P. 26(f)(3), and Pretrial Order No. 2 (Doc. 309):

    1.    Amended pleadings may not be filed and additional parties may not be joined except pursuant to the procedures set forth in Pre-Trial Order Nos. 2 and 3 or with leave of the Court, including to conform to future rulings of the Court related to the sufficiency of the pleadings.

    2.    Pursuant to Fed. R. Civ. P. 26(f)(1), by November 14, 2022, the parties shall meet and discuss all items set forth in Rule 26(f)(2) and 26(f)(3).

    3.    Fact discovery shall begin 14 days after entry of this Order, except that discovery directed or exclusively related to the following topics shall not begin until after the Court resolves any motions to dismiss claims related to those topics:  (i) Google's Search business; (ii) Google's Network Bidding Agreement with Facebook; (iii) encryption of user IDs; (iv) Reserve Price Optimization; (v)

---

[1]    The parties are the State Plaintiffs, the Class Publisher Plaintiffs, the Class Advertiser Plaintiffs, the Individual Action Plaintiffs (i.e., the Newspaper Plaintiffs and the Daily Mail), the Google Defendants (i.e., Google LLC; Alphabet Inc.; and YouTube, LLC) and Meta Platforms, Inc.  For purposes of this Order, a "side" means either (a) the State Plaintiffs, the Class Publisher Plaintiffs, the Class Advertiser Plaintiffs, and the Individual Action Plaintiffs collectively; or (b) the Google Defendants and Meta Platforms, Inc. collectively.

Exchange Bidding; and (vi) Accelerated Mobile Pages.

4.      Initial disclosures, pursuant to Fed. R. Civ. P. 26(a)(1), shall be served not later than 30 days after the beginning of fact discovery or such other date as mutually agreed to by the relevant parties. A party that has previously served initial disclosures in an individual action need not serve additional initial disclosures in such action if, within 30 days of the beginning of fact discovery, that party advises the other parties in such individual action that it will stand on its previous disclosures. If, when fact discovery begins, a party knows that it will need to update previously served initial disclosures, that party shall serve updated initial disclosures within 30 days of the beginning of fact discovery. Nothing herein relieves a party of its obligation to supplement or correct initial disclosures pursuant to Fed. R. Civ. P. 26(e).

5.      All <u>fact</u> discovery shall be completed by 24 months from the start of fact discovery. The Court finds that this case presents unique complexities and other exceptional circumstances that warrant this period of fact discovery.

6.      The parties are to conduct discovery in accordance with the Federal Rules of Civil Procedure and the Local Rules of the Southern District of New York. The following interim deadlines may be extended by the written consent of all parties without application to the Court, provided that all fact discovery is completed by the date set forth in paragraph 5 above (absent good cause to extend that date):

6.1.      Initial requests for production of documents and data to be served by 30 days after the beginning of fact discovery. By 15 months after the start of fact discovery the parties shall substantially complete production of documents including data responsive to document requests served within the

2

first 30 days of discovery.

6.2.    Interrogatories (other than for the sole purpose of authenticating documents) to be served and answered in accordance with Fed. R. Civ. P. 33 and Local Rule 33.3 and shall be served no later than 30 days before the close of fact discovery identified in paragraph 5 above. Absent leave of Court upon a showing of good cause, no party may be served with more than 25 interrogatories in total (across all actions).

6.3.    Requests to Admit (other than for the sole purpose of authenticating documents) to be served no later than 30 days prior to the close of fact discovery identified in paragraph 5 above.

6.4.    Except by agreement of the parties or Court order, depositions (other than depositions of "non-class experts" as defined below) shall be completed by the close of fact discovery identified in paragraph 5 above.

7.    The parties shall be permitted to take up to 10 fact-witness depositions per side in accordance with Fed. R. Civ. P. 30(a)(2) without further leave of Court. It is anticipated that each side will require more than 10 depositions. A party may seek leave of Court to depose additional witnesses by identifying the particular witnesses by name (unless a Rule 30(b)(6) witness); describing the matters on which they have unique knowledge; and identifying the group or groups of actions the particular witness pertains to. There will be no duplicative questioning of witnesses, and, absent good cause, no fact witness deponent will be examined more than once. Absent court order or agreement of parties, all depositions shall be conducted in accordance with the Federal Rules of Civil Procedure.

8.    Class certification proceedings in the proposed Advertiser and Publisher

class actions will begin before the close of fact discovery. Plaintiffs in each of the proposed class actions ("Class Plaintiffs") will serve opening reports of experts opining on issues related to class certification ("class experts") by 8 months before the close of fact discovery. Defendant(s) will serve class expert opposition reports 90 days after receiving such reports, and Class Plaintiffs may serve any class expert reply reports 45 days after receiving Defendant(s)' opposition reports.

9.    Class Plaintiffs will move for class certification 30 days after serving class expert reply reports. Defendant(s) will respond 45 days after receiving such motions, and Class Plaintiffs may file any reply briefs 21 days after receiving Defendant(s)' opposition briefs. The parties will separately discuss a class expert *Daubert* briefing schedule and raise any issues with the Court at a later time, if necessary.

10.    All Plaintiffs shall serve opening reports of experts opining on issues other than those related to class certification ("non-class experts") within 40 days after the close of fact discovery. Defendant(s) shall serve responsive non-class expert reports within 90 days after the service of Plaintiffs' non-class expert reports. Plaintiffs may then serve any rebuttal non-class expert reports within 90 days after the service of Defendant(s)' reports. Non-class expert discovery, including depositions of non-class experts, shall be completed within 60 days following the service by Plaintiffs of rebuttal non-class expert reports.

11.    All motions and applications shall be governed by the Court's Individual Practices, including pre-motion conference requirements. Pursuant to the authority of Fed. R. Civ. P. 16(c)(2), any motion challenging the testimony of non-class expert witnesses under Fed. R. Evid. 702 (*Daubert* motions) and any motion for

4

summary judgment will be deemed untimely unless a Pre-Motion Letter relating thereto is filed no later than fourteen (14) days after the date set by the Court for the close of non-class expert discovery.

12.     Setting of the Final Pretrial Submission Date, and of the deadlines related thereto, is deferred pending the determination of the district or districts where these cases will be tried.


***TO BE COMPLETED BY THE COURT***:

The Plan has been reviewed by the Court and, except as modified, is adopted as the Scheduling Order of this Court in accordance with Rule 16(b), Fed. R. Civ. P.

13.     [Other provisions included by Court.]


This ORDER may not be modified or the dates herein extended, except by further Order of this Court for good cause shown. Any application to modify or extend the dates herein (except as noted in paragraph 6) shall be made in a written application in accordance with paragraph 1(C) of the Court's Individual Practices and shall be made no less than five (5) days prior to the expiration of the date sought to be extended.


 Dated: _____        _____

                                                    P. Kevin Castel
                                                    United States District Judge

# Exhibit B

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| | 21-md-3010 (PKC) |
| IN RE GOOGLE DIGITAL ADVERTISING ANTITRUST LITIGATION | **[Proposed] CIVIL CASE MANAGEMENT PLAN AND SCHEDULING ORDER** |

**P. KEVIN CASTEL, Senior District Judge:**

This Civil Case Management Plan (the "Plan") is submitted by the parties[1] in accordance with Fed. R. Civ. P. 26(f)(3), and Pretrial Order No. 2 (Doc. 309):

1.    Amended pleadings may not be filed and additional parties may not be joined except: (1) pursuant to the procedures set forth in Pre-Trial Order Nos. 2 and 3; (2) or with leave of the Court, including but not limited to amending to conform to future rulings of the Court related to the sufficiency of the pleadings; or (3) as permitted under Rule 15(a)(1).

2.    Pursuant to Fed. R. Civ. P. 26(f)(1), by November 14, 2022, the parties shall meet and discuss all items set forth in Rule 26(f)(2) and 26(f)(3).[2] The parties shall

---

[1]  The different categories of Plaintiffs The parties are the State Plaintiffs, the Class Publisher Plaintiffs, the Class Advertiser Plaintiffs, the Individual Action Plaintiffs (i.e., the Direct Action Newspaper Plaintiffs and the Daily Mail). The different categories of Defendants are:), the Google Defendants (i.e., Google LLC; Alphabet Inc.; and YouTube, LLC) and Meta Platforms, Inc. For purposes of this Order, a "side" means either (a) the State Plaintiffs, the Class Publisher Plaintiffs, the Class Advertiser Plaintiffs, and the Individual Action Plaintiffs collectively; or (b) the Google Defendants and Meta Platforms, Inc. collectively.

[2]  There are approximately 45 Direct Action Newspaper Plaintiffs with claims pending in this MDL with the possibility of more individual actions being filed. Defendants and the Direct Action Newspaper Plaintiffs shall meet and confer to select bellwether newspaper plaintiffs for the purposes of discovery and propose a bellwether tract to address the Direct Action Newspaper Plaintiffs. The meet and confer to select bellwether plaintiffs, and any

Case 4:20-cv-00957-SDJ    Document 574-2    Filed 07/19/24    Page 23 of 116 PageID #:
19241
Case 1:21-md-03010-PKC   Document 371-2   Filed 11/07/22   Page 3 of 9

~~also negotiate an appropriate protocol regarding Electronically Stored Information~~

~~and an appropriate stipulation regarding expert discovery, and present either agreed~~

~~upon proposed stipulations, or their respective positions as to those portions of the~~

~~stipulations on which they do not agree, by November 14, 2022.~~

3.    Fact discovery shall begin 14 days after entry of this Order. ~~The parties~~

~~reserve all rights to object to~~ , except that discovery ~~, including on relevance~~

~~grounds~~ directed or exclusively related to the following topics shall not begin until

after the Court resolves any motions to dismiss claims related to those topics:  (i)

Google's Search business; (ii) Google's Network Bidding Agreement with

Facebook; (iii) encryption of user IDs; (iv) Reserve Price Optimization; (v)

Exchange Bidding; and (vi) Accelerated Mobile Pages.

4.    Initial disclosures, pursuant to Fed. R. Civ. P. 26(a)(1), shall be served not

later than 30 days after the beginning of fact discovery or such other date as

mutually agreed to by the relevant parties. A party that has previously served initial

disclosures in an individual action need not serve additional initial disclosures in

such action if, within 30 days of the beginning of fact discovery, that party advises

the other parties in such individual action that it will stand on its previous

disclosures. If, when fact discovery begins, a party knows that it will need to update

previously served initial disclosures, that party shall serve updated initial

disclosures within 30 days of the beginning of fact discovery. Nothing herein

relieves a party of its obligation to supplement or correct initial disclosures pursuant

---

~~bellwether schedule set by the Court, shall not affect the deadlines set forth herein as to the~~
~~other categories of Plaintiffs~~

to Fed. R. Civ. P. 26(e).

5.    All <u>fact</u> discovery shall be completed by ~~15~~24 months from the start of fact discovery. The Court finds that this case presents unique complexities and other exceptional circumstances that warrant this period of fact discovery.

6.    The parties are to conduct discovery in accordance with the Federal Rules of Civil Procedure and the Local Rules of the Southern District of New York. The following interim deadlines may be extended by the written consent of all parties without application to the Court, provided that all fact discovery is completed by the date set forth in paragraph 5 above (absent good cause to extend that date):

6.1.    Initial requests for production of documents and data to be served by 30 days after the beginning of fact discovery.  By ~~six~~15 months after the start of fact discovery the parties shall substantially complete production of documents including data responsive to document requests served within the first 30 days of discovery.

6.2.    Interrogatories (other than for the sole purpose of authenticating documents) to be served and answered in accordance with Fed. R. Civ. P. 33 and Local Rule 33.3 and shall be served no later than 30 days before the close of fact discovery identified in paragraph 5 above. Absent leave of Court upon a showing of good cause, ~~each side may serve up to 25 common interrogatories on another side. In addition, each category of plaintiffs or defendants (as referenced in footnote 1 above), may serve up to 15 interrogatories seeking category-specific information on any other category of plaintiff or defendant.~~<u>no party may be served with more than 25 interrogatories in total (across all actions).</u>

6.3.    Requests to Admit (other than for the sole purpose of authenticating

documents) to be served no later than 30 days prior to the close of fact

discovery identified in paragraph 5 above.

6.4.    Except by agreement of the parties or Court order, depositions (other than

depositions of fact witnesses"non-class experts" as defined below) shall be

completed by the close of fact discovery identified in paragraph 5 above.

6.5.    Bellwether Discovery for the Direct Action Newspaper Plaintiffs: To

advance the central goals of this MDL to complete discovery in the just,

speedy, and inexpensive manner required by Fed. R. Civ. P. 1, the Court

will implement a bellwether discovery method for the Direct Action

Newspapers. With respect to discovery on the Direct Action Newspaper

Plaintiffs by Defendants, the parties shall meet and confer regarding the

selection of bellwether plaintiffs or a bellwether discovery pool. All

discovery on Defendants by the Direct Action Newspaper Plaintiffs will be

conducted in accordance with the common and category-wide discovery set

forth in this Section 6 and its subparts. The parties shall also meet and

confer regarding the contents and timing of Plaintiff Fact Sheets, which will

be required to be completed by all non-bellwether Direct Action Newspaper

Plaintiffs in this MDL.

6.6.    For the avoidance of doubt, the procedures set forth in this paragraph 6

concerning bellwethers apply only to the Direct Action Newspaper plaintiffs

and shall not affect any other deadline set forth herein as to any other

category of Plaintiff.

7.    The parties shall be permitted to take up to 10 fact-witness depositions per side in

accordance with Fed. R. Civ. P. 30(a)(2) without further leave of Court. It is anticipated that ~~collectively, the Plaintiffs~~each side will require more than 10 depositions. A party may seek leave of Court to depose additional witnesses by identifying the particular witnesses by name (unless a Rule 30(b)(6) witness); describing the matters on which they have unique knowledge; and identifying the group or groups of actions the particular witness pertains to. There will be no duplicative questioning of witnesses, and, absent good cause, no fact witness deponent will be examined more than once. Absent court order or agreement of parties, all depositions shall be conducted in accordance with the Federal Rules of Civil Procedure.

8.    Class certification proceedings in the proposed Advertiser and Publisher class actions will begin before the close of fact discovery.  Plaintiffs in each of the proposed class actions ("Class Plaintiffs") will serve opening reports of experts opining on issues related to class certification ("class experts") by 8 months before the close of fact discovery.  Defendant(s) will serve class expert opposition reports 90 days after receiving such reports, and Class Plaintiffs may serve any class expert reply reports 45 days after receiving Defendant(s)' opposition reports.

9.    Class Plaintiffs will move for class certification 30 days after serving class expert reply reports.  Defendant(s) will respond 45 days after receiving such motions, and Class Plaintiffs may file any reply briefs 21 days after receiving Defendant(s)' opposition briefs.  The parties will separately discuss a class expert *Daubert* briefing schedule and raise any issues with the Court at a later time, if necessary.

10.    All Plaintiffs shall serve opening reports of ~~all experts~~ experts opining on

issues other than those related to class certification ("non-class experts") within 40 days after the close of fact discovery. Defendant(s) shall serve responsive non-class expert reports within 90 days after the service of Plaintiffs' non-class expert reports. Plaintiffs may then serve any rebuttal non-class expert reports within 90 days after the service of Defendant(s)' reports. ~~Depositions of~~ Non-class expert discovery, including depositions of non-class experts, shall be completed within ~~45~~60 days following the service by Plaintiffs of rebuttal non-class expert reports.

~~Class certification proceedings in the proposed Advertiser and Publisher class actions will occur after the close of fact and expert discovery. Plaintiffs in each of these proposed class actions will move for certification within 30 days after the close of expert discovery. Defendant(s) will respond to the certification motions within 45 days after their filing, and each of the two sets of Class Plaintiffs may file a reply within 30 days after the filing of Defendant(s)' responses.~~

11.    All motions and applications shall be governed by the Court's Individual Practices, including pre-motion conference requirements. Pursuant to the authority of Fed. R. Civ. P. 16(c)(2), any motion challenging the testimony of non-class expert witnesses under Fed. R. Evid. 702 (*Daubert* motions) and any motion for summary judgment will be deemed untimely unless a Pre-Motion Letter relating thereto is filed no later than fourteen (14) days after the date set by the Court for the close of ~~fact discovery. No party shall file any summary judgment motions prior to the close of~~non-class expert discovery.

~~The Court will hold monthly case management conferences to ensure efficient progress and to address any issues or disputes that may arise in a timely fashion. At least five business days prior to each monthly conference, the parties shall make a~~

~~joint submission informing the Court that there are no issues to discuss, or setting forth an agenda of the issues they wish to discuss with the Court's attention or request that the Court address at the conference and any party may simultaneously provide a letter to the Court providing additional information. The Court will issue a separate order setting forth the dates, times and locations of these conferences. The next case management conference will be held on December ____, 2022 at __ a.m./p.m.~~

12.    Setting of the Final Pretrial Submission Date, and of the deadlines related thereto, is deferred pending the determination of the district or districts where these cases will be tried. ~~To the extent possible given the Court's schedule, trial in any action in this MDL that will be tried by this Court, including, but not limited to, Associated Newspapers, Ltd. v. Google LLC, No. 21-cv-03446-PKC (originally filed in this Court), shall commence within 90 days of the close of expert discovery or 90 days of a decision on a motion for summary judgment, whichever is later. No party waives its rights to remand to its transferor court under 28 U.S.C. § 1407(a) or any other right related to the change of venue. See Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26 (1998); Manual for Complex Litigation § 22.93 at p. 463 (4th ed.).~~

***TO BE COMPLETED BY THE COURT*:**

The Plan has been reviewed by the Court and, except as modified, is adopted as the Scheduling Order of this Court in accordance with Rule 16(b), Fed. R. Civ. P.

13.    [Other provisions included by Court.]

Case 4:20-cv-00957-SDJ    Document 574-2    Filed 07/19/24    Page 29 of 116 PageID #:
19247
Case 1:21-md-03010-PKC   Document 371-2   Filed 11/07/22   Page 9 of 9

This ORDER may not be modified or the dates herein extended, except by further

Order of this Court for good cause shown. Any application to modify or extend the dates

herein (except as noted in paragraph 6) shall be made in a written application in accordance

with paragraph 1(C) of the Court's Individual Practices and shall be made no less than five

(5) days prior to the expiration of the date sought to be extended.

Dated: _____          _____
                                                              P. Kevin Castel
                                                     United States District Judge

8

# Exhibit C



**New York**
601 Lexington Avenue
31ˢᵗ Floor
New York, NY  10022
T  +1 212 277-4000 (Switchboard)
    +1 212 284-4910 (Direct)
F  +1 646 521-5710
E  rob.mccallum@freshfields.com
www.freshfields.com

<u>**Via Email**</u>

Zeke DeRose III
Lanier Law Firm
10940 W. Sam Houston Pkwy N
Suite 100
Houston, TX 77064

May 23, 2022

**Re:**    *In re Google Digital Advertising Antitrust Litigation*, No. 1:21-md-03010 (PKC)

Dear Zeke:

I write regarding Plaintiffs' initial draft of the ESI protocol that you circulated on April 26, 2022 ("Plaintiffs' Draft").  Seven months in the making, Plaintiffs' Draft ignores all of the Court's recent guidance concerning the need for efficiency in discovery.  It also jettisons the concept of proportionality and goes so far beyond the obligations imposed by the Federal Rules that it appears engineered to achieve an impasse.  As a result, it is an unworkable starting point for negotiations. We summarize our main concerns below and propose an efficient and practical alternative solution that is consistent with the Court's guidance.

**1.    Plaintiffs' Draft Ignores the Court's Guidance**

At the April 19, 2022 Conference, Judge Castel questioned the need to "reinvent wheels" in this case, and cautioned the parties against "lard[ing] up" discovery orders. ECF 291 at 14, 32; *see also id*. at 56 ("[M]y goal here is to get this simplified and get it done.")  Plaintiffs' Draft ignores that guidance.  Having ballooned to 44 pages, it is twice the length of the prior draft under negotiation with State Plaintiffs, and includes a slew of unnecessary provisions emblematic of the type of "overkill" that we understand the Court to have discouraged.  *See id*. at 5.

In addition to running afoul of the Court's overarching guidance as to the need for efficiency, Plaintiffs' Draft also conflicts with the Court's specific guidance on the management of discovery in this MDL.

*First*, Plaintiffs' Draft seeks to shift the consequences of Plaintiffs' delay to Google.  After a seven month delay, Plaintiffs now propose that this Order should be entered in mid-June and that

215

obligations concerning "discovery requests pending at the time of this Order" should commence "within 7 days of the entry of this Order" (which in turn triggers additional cascading deadlines). Plaintiffs' Draft ¶ 5.3. The timeline proposed in Plaintiffs' Draft is not only burdensome, but it conflicts with the Court's guidance that Plaintiffs should coordinate the drafting of Rule 34 document requests, ECF 129, to ensure that Google had sufficient time to formulate its response to such requests (recognizing that doing so might take "months"). *See* ECF 142 at 33. If implemented, Plaintiffs' Draft would deprive Google of the necessary time to formulate its response to Plaintiffs' belated Rule 34 requests in contravention of the Court's guidance.

*Second*, Plaintiffs' Draft seems intended to generate regular discovery disputes. We understand the Court to have encouraged the parties to prioritize efficiency and negotiate in good faith in an effort to minimize "weekly" discovery disputes. *See* ECF 291 at 42-43. But Plaintiffs' Draft walks back most of the progress that Google and State Plaintiffs achieved in negotiations during the summer of last year and replaces that progress with numerous one-sided provisions that will lead to impasse. Perhaps recognizing that it is bound to create disputes, Plaintiffs' Draft introduces various affirmative obligations to go to Court whenever disagreement is reached. *See* Plaintiffs' Draft ¶¶ 5.4, 5.17, 8.2.

*Third*, Plaintiffs' Draft introduces more than six pages of provisions concerning clawbacks and privilege logs which are inconsistent with the Court's guidance and the recently entered Confidentiality Order. Judge Castel has already ruled on the scope of an appropriate privilege clawback provision in this case, ECF 297, so there is no reason for Plaintiffs to reinvent that wheel by seeking to modify or supplement those procedures through this Order. *See* Plaintiffs' Draft ¶¶ 7.2-7.5. And the Court has already rejected Plaintiffs' proposal that Investigation Materials are "deemed to be produced" in this MDL because that language could be read to give rise to an obligation to create privilege logs that the Court has declined to endorse. *Compare* Plaintiffs' Draft ¶ 1.1 *with* ECF 291 at 19-22. Instead of implementing the Court's guidance with respect to privilege logs, Plaintiffs' Draft ignores it and sets forth pages of burdensome provisions detailing the format and content of privilege logs, the vast majority of which are superfluous. Plaintiffs' Draft ¶¶ 7.6-7.14. Plaintiffs' Draft also purports to impose an obligation on the party asserting privilege to provide unspecified "additional relevant information" in the event that the Receiving Party claims to be "unable to adequately assess" the claims of privilege. Plaintiffs' Draft ¶ 7.3.

## 2.    Plaintiffs' Draft Conflicts With the Federal Rules of Civil Procedure

The purpose of the Federal Rules is to achieve the "just, speedy, and inexpensive determination" of disputes. Fed. R. Civ. P. 1. Plaintiffs' Draft appears intended to do the opposite because it jettisons the baseline requirement of proportionality and replaces it with a scorched-earth approach to discovery, and otherwise purports to impose a range of obligations not found in the Federal Rules.

*First*, Plaintiffs' Draft discards various provisions incorporating the concept of proportionality. The draft ESI protocol under negotiation with State Plaintiffs last summer tracked Rule 26 and, among other things, required the parties to use reasonable, good faith, and

proportional efforts to preserve, identify, and produce relevant information, including identifying appropriate limits to discovery.  Consistent with Rule 26, State Plaintiffs agreed to various sensible limitations on the requirement to search, review, and produce certain materials, including with respect to deleted documents and data accessible only by forensics, ephemeral data that is difficult to preserve, temporary internet files, dynamic fields of databases or log files that are not retained in the usual course of business, and certain data in metadata fields.  Plaintiffs' Draft undoes that progress and replaces those provisions with a blanket requirement to "preserve and allow inspection of all relevant, discoverable Documents in their original, native, unmodified format, unless otherwise jointly agreed to by the Parties in writing."  Plaintiffs' Draft ¶ 4.2.  And while State Plaintiffs had agreed that certain types of information—such as backup and disaster recovery systems, system logs, server logs, and network logs, and systems no longer in use—need not be searched, Plaintiffs' Draft requires immediate disclosure of information concerning "disaster recovery media and rotation of backup media" as well as "the identity and version of applicable legacy software" (among other things). Plaintiffs Draft ¶ 5.4.

*Second*, Plaintiffs' Draft is laced with burdensome obligations that have no basis in the Federal Rules.  Perhaps most egregious is the vague and ambiguous requirement to produce "materials properly within the scope of discovery" without any limitation by search terms or agreed Custodial Sources.  Plaintiffs' Draft seems to defeat the purpose of agreed limitations on discovery because it purports to require production of responsive documents "regardless of whether the materials hit upon any agreed-upon Search Terms or fall within the constraints of an agreed-upon electronic search methodology."  Plaintiffs' Draft ¶ 5.9.  And the remainder of Paragraph 5 of Plaintiffs' Draft concerning "Search and Collection of Documents," which runs to approximately 10 pages, purports to impose various other burdensome obligations, including some which require discovery of documents that are irrelevant on their face.  For example, under Plaintiffs' Draft a Producing Party would be required to conduct a sampling and review exercise for search terms where the parties disagree as to whether the discovery sought is "unduly burdensome or not proportional to the needs of these Actions," Plaintiffs' Draft ¶ 5.11.6, and to provide "disclosures regarding the non-relevant information that each Search Term is returning or terms or phrases that may be returning non-responsive documents." *Id*.  Requiring sampling of every term a party disagrees with and requiring disclosures about non-relevant information would cause delay, be unduly burdensome, unfairly prejudice a party's ability to object to inappropriate search terms, and would require disclosure of information outside the proper scope of discovery.

*Third*, Plaintiffs' Draft seeks to replace the timeframes set forth in the Federal Rules with a series of bespoke timelines of Plaintiffs' choosing.  Various provisions of Plaintiffs' Draft purport to impose cascading 7- and 14-day deadlines.  *See* Plaintiffs' Draft, ¶¶ 4.2, 5.1, 5.11.5, 5.11.6.  Under the Federal Rules, a party has 30 days to file Responses and Objections to a Request for Production made pursuant to Rule 34, following which the parties would, in the ordinary course, meet and confer concerning an appropriate scope of discovery.  There is no reason to depart from the deadlines provided for in the Federal Rules.

415

*Fourth*, Plaintiffs' Draft presumes the propriety of all document requests because various deadlines are triggered by the service of any "request" without regard to its breadth or relevance. *See, e.g.*, Plaintiffs' Draft ¶¶ 5.3, 5.4. The Court has already made clear that some of State Plaintiffs' prior requests for documents would be overbroad and inappropriate on their face if propounded in the MDL. *Compare* State Pls.' Second Set of Reqs. for Produc., Nos. 2-3 (Apr. 30, 2021), *with* ECF 291 at 21 ("If it's one Rule 34 request that says, 'Pursuant to Rule 34, give me everything you gave in the civil investigative stage,' that's not going to work with me."). Google believes that the more efficient course is to adopt the framework contemplated by the Federal Rules, pursuant to which a recipient of a request for production of documents is afforded the opportunity to file Responses and Objections that will inform any subsequent meet-and-confer.

*Fifth*, Plaintiffs' Draft includes numerous provisions that invite delay and corollary discovery and disputes, and intrude on a Producing Party's right to discharge its discovery obligations without undue interference by the Requesting Party. Specifically, Plaintiffs' Draft imposes various obligations on a Producing Party to provide an unspecified amount of additional information to enable the Receiving Party to "assess" or "evaluate" the "sufficiency" or "efficacy" of searches and proposed Custodians, and purports to provide the Requesting Party with other broad rights to oversee and "validate" the Producing Party's discovery efforts. Plaintiffs' Draft ¶¶ 5.3, 5.4, 5.11.1, 5.11.2, 5.12, 5.13. There is no obligation under the Federal Rules to provide that kind of information or submit to that degree of oversight by an adversary. It is for Google and its counsel to propose and conduct appropriate searches in response to discovery requests issued by Plaintiffs (and to confer in good faith as to the scope of those searches). If Plaintiffs contend that we have not discharged our discovery obligations in any particular instance, the appropriate course of action is to meet and confer. If necessary, Google will justify the scope of its discovery efforts to the Court.

\* \* \*

Judge Castel ordered Plaintiffs to coordinate as to a draft ESI Protocol in September 2021. ECF 129. Plaintiffs represented to the Court in October 2021 that they had done so and were consolidating comments on an ESI Stipulation to be provided to Defendants. ECF 141. Having waited over seven months to present that draft, Plaintiffs now assert that time is of the essence and that the parties should aim to submit an agreed draft to Judge Castel in mid-June.

But Plaintiffs' Draft ignores the Court's guidance and the Federal Rules to such a degree that it is not a workable starting point for negotiations. As a result, Google proposes to follow the Court's guidance from the Confidentiality Order negotiations: We have enclosed two exemplar ESI Orders that Google has entered into in other cases, both of which are based on the Federal Rules, streamlined, and efficiently address the relevant ESI issues without seeking to reinvent the wheel. *See* ECF 291 at 13-14. As requested, we have also coordinated with Meta's counsel and we understand that they will be proposing a third exemplar. We invite Plaintiffs to select from one of those exemplars with the goal of submitting a joint ESI stipulation and proposed order to Judge Castel by mid-June as requested by Plaintiffs.

Case 4:20-cv-00957-SDJ    Document 574-2    Filed 07/19/24    Page 35 of 116 PageID #:
19253
Case 1:21-md-03010-PKC    Document 371-3    Filed 11/07/22    Page 6 of 6

515

We are available to meet and confer.

Very truly yours,

/s/ Robert J. McCallum

Robert J. McCallum

Enclosures

cc: Lauren Kaplin
   Mikaela Evans-Aziz
   Kevin Orsini
   Martha Reiser
   Jason Zweig
   Caitlin Coslett
   John Thorne
   Daniel Bird
   Eric Maier
   Ted Maya
   Jordan Elias
   Stuart Davidson
   Serina Vash
   Thomas Ray

# Exhibit D



**Freshfields Bruckhaus Deringer US LLP**

**New York**
601 Lexington Avenue
31st Floor
New York, NY 10022
T  +1 212 277-4000 (Switchboard)
    +1 212 284-4910 (Direct)
F  +1 646 521-5710
E  rob.mccallum@freshfields.com
www.freshfields.com

<u>**Via Email**</u>
Zeke DeRose III
Lanier Law Firm
10940 W Sam Houston Pkwy N
Suite 100
Houston, TX 77064

July 1, 2022

Re:    *In re Google Digital Advertising Antitrust Litigation*, No. 1:21-md-03010 (PKC)

Dear Zeke:

I write further to the June 8 meet and confer and your email dated June 11 concerning negotiation of the draft ESI protocol in the above-captioned MDL.  As promised, Google has coordinated with Meta to produce a draft ESI Order that is consistent with the Court's guidance and the Federal Rules, as well as addressing Plaintiffs' stated concerns.  A copy of that draft is enclosed for your review ("Defendants' Draft").

As set forth in our May 23 letter, Defendants' initial draft ESI Order—which ran to almost 50 pages[1]—was unworkable as a starting point for negotiations.  Plaintiffs' second attempt was just two pages shorter and failed to address the fundamental concerns we identified in our May 23 letter.  And Plaintiffs' most recent proposal—that we start from the draft under negotiation in the Eastern District of Texas—is similarly impractical.  Plaintiffs have asserted that their initial 50-page draft was based on that document, and that they intend to reinsert their extensive wish-list of unworkable provisions if we were to start there.  Thus, Plaintiffs' most recent proposal appears to be no more than an attempt to continue negotiations based on Plaintiffs' initial, unworkable, draft.

Consistent with the Court's guidance that the parties should not seek to "reinvent wheels," Google offered Plaintiffs a choice of two different exemplar ESI orders that had been

---

[1] Plaintiffs' 44-page draft contained seven full pages of single-spaced text in 10-point font.  When converted to a form that complies with the Court's filing requirements, it expanded to almost 50 pages.



reviewed and approved by federal judges and entered in other recent cases. Meta offered a third exemplar of an ESI order entered recently in an ongoing antitrust litigation—*Federal Trade Comm'n v. Meta Platforms, Inc.*, No. 1:20-cv-03590-JEB (D.D.C.), and Google made clear that it was prepared to negotiate from any of those three exemplars.

Plaintiffs refused on the basis that Google's exemplars did not address two issues of concern to Plaintiffs: linked documents and the readability of comments. But Meta's exemplar addresses both issues and Plaintiffs have not otherwise identified any concerns with it. Defendants have therefore based their proposal on the ESI Order approved by Judge Boasberg in *Federal Trade Commission v. Meta Platforms, Inc.* As explained below, we have made further edits to address the specific concerns that Plaintiffs raised at the June 8 meet and confer and in Plaintiffs' communications dated June 3 and June 11.

     **1.**    **Native documents**. Plaintiffs asserted that the ESI Order should address their concern that, when documents are "Tiffed or otherwise produced in a format other than native format, . . . comments are often cut off and unreadable." Defendants' Draft addresses that concern by providing that "[h]idden content, tracked changes or edits, comments, notes, and other similar information, shall to the extent reasonably practicable, also be imaged so that such content is viewable on the image file." Defendants' Draft at 17. Defendants further agreed that, to the extent an imaged file with comment bubbles is illegible, the receiving party may make reasonable requests that a more readable version, such as a native version, be produced. *Id*.

     **2.**    **Links**. Plaintiffs asserted that "[t]raditional ESI orders anticipate attachments and parent-child relationships when discussing production format and logistics," but that the usage of linked documents would require production "in a way that allows the reviewer to know the documents are related." Defendants' Draft includes language to address that concern. Defendants' Draft at 19.

     **3.**    **Privilege Logs**. Plaintiffs requested that the ESI Order include provisions governing "the requisite form and scope of information on privilege logs and the exclusions from privilege log obligations." We have agreed to that request and have added four pages of provisions governing logs that should not be controversial—indeed, it is based on the relevant provision from Plaintiffs' proposed draft. Defendants' Draft at 8-11. You will see that we have also agreed to Plaintiffs' request to limit the use of categorical privilege logs even though the use of such logs is "presumptively proper" in this District. *Id*. at 9; Local Civ. R. 26.2(c).

     **4.**    **Production Format**.

     (a)    *Redactions*. Plaintiffs requested that redactions should not be permitted for relevance, responsiveness, or confidentiality, and we have agreed to that request. Defendants'



**Freshfields Bruckhaus Deringer US LLP**

3｜4

Draft at 11.  Plaintiffs also requested that if any member of a document family is responsive then every member of the family should be produced, and Defendants' Draft contains that language. *Id*. at 13.

(b)    *Metadata*.  Plaintiffs have asserted, without explanation, that their list of 85 proposed metadata fields spanning seven pages is "reasonable".  We disagree, and Defendants' Draft includes (without modification) the 33 metadata fields approved by Judge Boasberg drawn from Meta's exemplar.  If there are specific additional metadata fields that Plaintiffs assert that are needed, please identify those fields and explain the need for each one.

(c)    *Time zones*.  Plaintiffs requested that productions be uniformly processed with the UTC or UTC+1 time zone, and we have agreed that ESI items shall be processed using a consistent time zone to the extent reasonably practicable.  Defendants' Draft at 20.

**5.    Preservation and Search**.  Plaintiffs requested "fulsome—but reasonable—" requirements governing preservation and search.  But Plaintiffs have yet to make any reasonable proposals.  For the reasons stated in our May 23 letter, Plaintiffs' 10 pages of burdensome search protocols are not tethered to the need for proportionality and amount to the sort of micromanagement and discovery on discovery that is disfavored by courts in this District.  *See e.g., Winfield v. City of New York*, No. 15CV05236LTSKHP, 2017 WL 5664852 (S.D.N.Y. Nov. 27, 2017) (observing that "the producing party is better equipped than the court to identify and utilize the best process for producing their own ESI consistent with their obligations under the Federal Rules of Civil Procedure.")  Nevertheless, to address Plaintiffs' concerns, Defendants' Draft obliges the producing party to "use its institutional knowledge of how its ESI is stored and accessed in the ordinary course of business to identify responsive Documents."  Defendants' Draft at 7.  The obligation to use "institutional knowledge" includes "a Party's standard practices regarding the storage of ESI, its file organization structure, its usage of group ownership, group accounts, and shared network locations to manage or organize ESI."  *Id*.

\*   \*   \*

Defendants' Draft is based on a proposal that was agreed to by the FTC in a broad antitrust action, and approved by Judge Boasberg.  Unlike Plaintiffs' proposals, Defendants' Draft is objectively fair and reasonable.  We have made further changes to address the specific concerns that Plaintiffs have raised so far.  And we are prepared to discuss further changes provided that Plaintiffs make reasonable requests and explain the need for the changes.

**Freshfields Bruckhaus Deringer US LLP**

4｜4

We are available to meet and confer.

Very truly yours,

/s/ Robert J. McCallum

Robert J. McCallum


Enclosures

cc:    Lauren Kaplin
       Mikaela Evans-Aziz
       Kevin Orsini
       Brittany Sukiennik
       Andrew Huynh
       Martha Reiser
       Jason Zweig
       Caitlin Coslett
       John Thorne
       Daniel Bird
       Eric Maier
       Ted Maya
       Jordan Elias
       Stuart Davidson
       Serina Vash
       Thomas Ray

# Exhibit E

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Google Digital Advertising Antitrust Litig. | Civil Action No. 21-MD-3010 (PKC) |

**STIPULATION AND [PROPOSED] ORDER REGARDING DISCOVERY PROCEDURE**

WHEREAS, Rule 26(f) of the Federal Rules of Civil Procedure states that the parties must develop a proposed discovery plan that states the parties' views and proposals on, among other things, "any issues about disclosure, discovery, or preservation of electronically stored information, including the form or forms in which it should be produced," Fed. R. Civ. P. 26(f)(3)(C);

WHEREAS, the parties mutually seek to reduce the time, expense, and other burdens of discovery of certain electronically stored information ("ESI") and privileged materials, as described further below, and to better define the scope of their obligations with respect to preserving such information and materials;

WHEREAS, the parties are aware of the importance of cooperation and commit to cooperate in good faith throughout the matter to promote the "just, speedy, and inexpensive determination" of this action, as required by Fed. R. Civ. P. 1. The parties agree to use reasonable, good faith, and proportional efforts to preserve, identify and produce relevant and discoverable information consistent with Fed. R. Civ. P. 26(b)(1). The parties' cooperation includes identifying appropriate limits to eDiscovery, including limits on custodians, identifying relevant and discoverable subject matter, establishing time periods for eDiscovery and other parameters to limit and guide preservation and eDiscovery issues;

WHEREAS, the parties therefore are entering into this Stipulation with the request that the Court enter it as an Order;

1

NOW THEREFORE, it is hereby STIPULATED and ORDERED:

## I.    GENERAL PROVISIONS

1. Except as specifically set forth herein, this Stipulation and Order does not alter or affect the applicability of the Federal Rules of Civil Procedure or Local Rules for the United States District Court for the Southern District of New York.

2. The production specifications set forth in this Stipulation and Order apply to Documents and ESI that is to be produced in the first instance in the above-captioned litigation. To the extent any producing party reproduces Documents or ESI previously produced by any party or Non-Party during a pre-complaint investigation of the subject matter of this litigation, that party may reproduce such Documents or ESI in the manner in which it was produced to that party. No party is obligated to reformat a reproduction of any prior production in accordance with the production specifications in this Stipulation and Order.

3. "Actions" means collectively the actions centralized by the Judicial Panel on Multidistrict Litigation under the caption *In re Google Digital Advertising Antitrust Litig.*, No. 21-MD-3010 (PKC) (S.D.N.Y.), as well as any additional actions subsequently transferred and/or centralized with these Actions, including any related discovery, pretrial, trial, post-trial, or appellate proceedings. The term Action means an individual action within the Actions. For the avoidance of doubt, "Actions" excludes pre-suit investigations by State Plaintiffs.

4. ESI Liaisons.

   a. Designation: Each party agrees to designate one or more ESI Liaisons within ten (10) days after entry of this ESI Protocol. Any party is free to change its designated ESI Liaisons by providing written notice to the other parties.

   b. Duties of ESI Liaisons: Each ESI Liaison will be prepared to participate in the resolution of any e-discovery disputes or ESI issues that may arise (or designate another person as primarily responsible), be knowledgeable about the party's

Case 4:20-cv-00957-SDJ    Document 574-2    Filed 07/19/24    Page 44 of 116 PageID #:
19262
Case 1:21-md-03010-PKC    Document 371-5    Filed 11/07/22    Page 4 of 21

eDiscovery efforts, have reasonable access to personnel most knowledgeable about the

Party's electronic systems and capabilities in order to, as appropriate, explain those

systems and answer relevant questions, including the location, nature, accessibility,

format, collection, search methodologies, and production of ESI in this matter, and

have reasonable access to those who are knowledgeable about the technical aspects of

eDiscovery, including electronic document storage, organization, and format issues,

and relevant information retrieval technology, including search methodology. The

parties will rely on the liaisons, as needed, to confer about ESI and to help resolve

disputes without court intervention.

## II.    PRESERVATION

1. Materials To Be Preserved. Each Party will continue its retention practices with regards

   to all Documents and ESI and will take reasonable and proportionate steps to preserve

   relevant and discoverable ESI in compliance with duties to preserve material under the

   Federal Rules of Evidence and the Federal Rules of Civil Procedure. Upon mutual

   agreement of the parties, a party will modify its retention practices to ensure the

   preservation of potentially responsive Documents and ESI.

2. To reduce the costs and burdens of preservation and to ensure proper ESI is preserved,

   the parties agree that:

   a. Parties shall preserve non-duplicative, relevant information currently in their

      possession, custody, or control.

   b. Subject to and without waiving any protection described above, the parties agree that:

      i.    The parties will endeavor to agree upon a date limitation for the

            preservation of ESI;

      ii.   The parties will endeavor to agree upon a list of the types of relevant ESI

            they believe should be preserved and the custodians, for whom they

believe relevant ESI should be preserved. The parties shall add or remove custodians as reasonably necessary.

3. ESI That Is Not Reasonably Accessible. The following categories of ESI are not reasonably accessible in this litigation and the parties agree that they need not be preserved, searched, collected, or reviewed. The parties will continue to meet and confer regarding any additional categories of information that are not reasonably accessible.

   a. Back-up systems and tapes used for disaster recovery;

   b. Individual user data subject to routine disposition required by privacy regulations;

   c. Information from handsets, mobile devices, personal digital assistants, and tablets that is duplicative of information that resides in a reasonably accessible data source;

   d. Logs of calls made from cellular phones;

   e. Voicemail messages;

   f. Deleted, slack, fragmented, or unallocated data accessible only by forensics;

   g. Data stored in random access memory ("RAM"), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system;

   h. Online access data such as temporary or cache files, including internet history, web browser cache and cookie files, wherever located;

   i. Data in metadata fields that are frequently updated automatically, such as last-opened or last modified dates;

   j. Server, system, or network logs;

   k. Ad log files concerning ads viewed outside the United States;

   l. Dynamic fields of databases, dashboards, or log files;

   m. Systems no longer in use that cannot be accessed; and

   n. Information created or copied during the routine, good-faith performance of processes for the deployment, maintenance, retirement, and/or disposition of computer equipment

by the party that is duplicative of information that resides in a reasonably accessible data source.

4. Nothing in this Stipulation and Order prevents any party from asserting, in accordance with the Federal Rules of Civil Procedure, that other categories of Documents or ESI are not reasonably accessible.

5. Preservation Does Not Affect Discoverability or Claims of Privilege. By preserving Documents and ESI for the purpose of this litigation, the Parties are not conceding that such material is discoverable, nor are they waiving any claim of privilege.

## III.   COLLECTION AND REVIEW

1. The parties agree that in responding to an initial Fed. R. Civ. P. 34 request, they will meet and confer about methods to search ESI in order to identify ESI that is subject to production in discovery and filter out ESI that is not subject to discovery.

2. The parties will meet and confer in good faith regarding search terms and/or use of technology-assisted review or a similar tool (collectively "TAR") to identify responsive documents. If a requesting party objects to the sufficiency of the producing party's terms, the requesting Party may propose modifications or a list of additional terms. The parties will meet and confer in good faith regarding any proposed changes: Any disputes over search terms that cannot be resolved between the parties during a meet and confer may be consequently raised with the Court.

3. Nothing in this Order may be construed or interpreted as precluding a producing party from performing a responsiveness review to determine if documents captured by search terms are in fact relevant to the requesting party's request. Nothing in this Order precludes a party from using TAR, or a combination of TAR and search terms, or some other method to fulfill their document production obligations, provided that the party discloses to the other party the process used and complies with the meet and confer

Case 4:20-cv-00957-SDJ    Document 574-2    Filed 07/19/24    Page 47 of 116 PageID #:
19265
Case 1:21-md-03010-PKC    Document 371-5    Filed 11/07/22    Page 7 of 21

obligations outlined in this Order. Similarly, nothing may be construed or interpreted as precluding a producing party from performing a privilege review of documents determined to be relevant by any means. Further, nothing in this Order shall be construed or interpreted as requiring the production of all documents captured by any search term if that document is in good faith and reasonably deemed not relevant to the requesting party's request or privileged.

4. Each party will use its best efforts to filter out common system files and application executable files by using a commercially reasonable hash identification process. Hash values that may be filtered out during this process are located in the National Software Reference Library ("NSRL") NIST hash set list.

5. De-Duplication. Each party is required to produce only a single copy of a responsive document and each party may de-duplicate responsive ESI (based on MD5 hash values at the document level) across Custodians. For emails with attachments, the hash value is generated based on the parent/child document grouping. To the extent that deduplication through MD5 hash values is not possible, the parties shall meet and confer to discuss any other proposed method of deduplication. A producing party must make reasonable effort to identify all agreed upon custodians who were in possession of any de-duplicated documents through an appropriate load file field such as All Custodians. Additionally, all BCC recipients whose names would have been included in the BCC metadata field, to the extent such metadata exists, but are excluded because of horizontal/global de-duplication, must be identified in the BCC metadata field specified in Appendix 1. In the event of rolling productions of documents or ESI, the producing party will, as needed, supplement the load files with updated All Custodian information, as well as BCC information to the extent such metadata exists. Duplicate custodian information may be provided by a metadata overlay and will be provided by a producing party on an ongoing basis.

6

6.  Email Threading. Where multiple email messages are part of a single chain or "thread," a party is only required to produce the most inclusive message ("Last In Time Email") and need not produce earlier, less inclusive email messages or "thread members" that are fully contained, including attachments and inline objects (including inline images and hyperlinks) and including identical text, identical subject(s), identical senders and recipients (including in "to," "cc," and "bcc" fields), within the Last In Time Email. Only email messages (including inline objects, text, subject(s), and senders and recipients) and all attachments that are fully contained in and identical to the Last In Time Email will be considered less inclusive email messages that need not be produced.

7.  Cooperation. The Parties agree to work together in good faith to resolve any differences that they may have over the Producing Party's use of search terms, TAR, or a combination of the search terms and TAR, or some other method, or for documents that cannot be searched electronically.

8.  Filtering. If a producing party proposes to apply other filters to limit Documents and ESI that is collected for processing and review (e.g., filters that identify system files, non-user generated files, or zero-byte files), the producing party shall advise the requesting party and the requesting and producing parties shall meet and confer regarding such additional proposed filters.

9.  Each Party shall use its institutional knowledge of how its ESI is stored and accessed in the ordinary course of business to identify responsive Documents. This institutional knowledge includes, but is not limited to, a Party's standard practices regarding the storage of ESI, its file organization structure, its usage of group ownership, group accounts, and shared network locations to manage or organize ESI.

**IV.    PRODUCTION FORMAT**

1. The parties agree to produce documents in the formats described in Appendix 1 to this Order. If particular documents warrant a different format, the parties will cooperate to arrange for the mutually acceptable production of such documents. The parties agree, to the extent practicable, not to materially degrade the searchability of the documents as part of the document production process.

**V.    PRIVILEGE LOGS**

1. Any Producing Party will produce a privilege log within 30 days after substantial completion of its production. Except as provided otherwise below, for any Document withheld in its entirety, the Producing Party will produce privilege logs in MS Excel (.xlsx) format.  A Party is not required to log redacted documents provided that a metadata field is provided indicating which documents are redacted, and provided that the Party agrees to respond to reasonable requests for additional information regarding the basis for redactions on specific documents where the basis is unclear from the document itself.

2. If any member of a produced Document Family is withheld on grounds of privilege or work-product, the Producing Party shall produce a Bates stamped placeholder slipsheet that identifies the Document as withheld as privileged and shall identify the Document in the Privilege Log by the Bates number on the placeholder slipsheet.

3. Privilege logs shall be provided containing the following information, to the extent reasonably available:

    a.    A sequential number associated with each entry in the privilege log (Column A: row 1, row 2, row 3, etc.);

    b.    Where applicable, BegBates and Parent BegBates;

    c.    The Custodian or Custodial or Non-Custodial Data Source from which the Document was collected;

8

d.  The name of each person who sent, authored, or otherwise prepared the Document;

e.  The identity of each person designated as an addressee or copyee, including CC and BCC (copyees and blind copyees shall appear in separate fields);

f.  The date;

g.  A description, pursuant to Federal Rule of Civil Procedure 26(b)(5)(A)(ii), of the contents of the withheld Document that, without revealing information that is itself privileged or protected, is sufficient to enable other Parties to understand the general subject matter of the Document and assess the basis of the claim of privilege or other protection from disclosure;

h.  The name of the attorney(s) or legal organization who provided the legal advice at issue, from whom the legal advice at issue is requested, who directed the facilitation of the legal advice at issue, and/or who requested or prepared the Document;

i.  The nature of the privilege or protection asserted (i.e., attorney-client privilege, work product doctrine), and if no privilege claim is asserted, the basis of withholding the Document or any portion thereof.

4.  If a Producing Party contends that all Documents of a particular type or category are privileged, they may request permission from and shall meet and confer with the Receiving Party to identify such Documents on a privilege log by category rather than individually. The Receiving Party shall consider any such request in good faith. The Producing Party's categorical privilege log entry must still provide the Requesting Party, and the Court if necessary, with information sufficient to evaluate the Producing Party's privilege claims.

5.  A single document containing multiple email messages (i.e., in an email chain) may be logged as a single entry. A document family may be logged as a single entry so long as

the log entry references the attachment(s) and accurately describes both the parent document and its responsive attachment(s);

6.  Each entry on a privilege log must indicate each person, group, or entity who was acting in a legal capacity with respect to that particular Document.

7.  If the Producing Party contends that more than one basis for withholding applies to a single Document, all bases must be asserted in the privilege log.

8.  Exclusions.  To the extent any of the following Documents are privileged or otherwise protected from disclosure by Federal Rule of Civil Procedure 26(b)(3)-(4), they may be excluded from privilege logs:

 a.  Documents solely in the possession of outside counsel and their agents who represent a Party in any of these Actions;

 b.  Documents sent solely among a Party's outside counsel and their agents;

 c.  Documents that are non-discoverable under the Expert Stipulation;

 d.  Documents sent solely between counsel for the United States and counsel for any state;

 e.  Documents sent solely between outside counsel (and their agents) who represent a Party in any of these Actions and inside counsel for a Party;

 f.  Documents sent solely among outside counsel and their agents who represent a Party in any of these Actions and the Parties they represent in these Actions, regarding the prosecution or defense of these Actions;

 g.  Documents excluded from privilege log obligations by the Expert Stipulation entered in these Actions; and

 h.  Documents the Producing Party may properly exclude from a privilege log pursuant to any subsequent order in the Actions.

9.  If a Document contains both privileged and non-privileged communications, the non-privileged communications must be produced, either by separately producing a copy of the non-privileged communications embedded in the privileged communication, or by producing a copy of the entire communication string with the privileged portion(s) redacted and indicate the privilege claimed on the face of the redacted document. The redactions shall be narrowly applied so the Receiving Party has the ability to discern to the maximum extent practicable the privilege assertion within the Document and to view all non-privileged communications and material.

10. Redactions based on relevance or responsiveness or confidentiality are disallowed. For the avoidance of doubt, (a) to the extent that any Document contains or reflects Source Code, as defined by the Confidentiality Order entered on May 11, 2022, ECF No. 297, such Document will be governed by Appendix C of that Confidentiality Order, and (b) nothing in this Stipulation and Order prevents any party from redacting personal data and personally identifying numbers or sensitive information from produced documents, consistent with the requirements under Federal Rule of Civil Procedure 5.2 and Local Rules. The Parties do not waive any objections to the production, discoverability, admissibility, or confidentiality of Documents.

11. If a Document is produced with redactions, the redactions must not obscure any header information (e.g., from, to, subject, sent date) of any emails or other communications reflected in the Document, except to the extent that information is privileged.

12. A Party who, pursuant to a request under Federal Rule of Civil Procedure 34,  re-produces Documents from other matters in satisfaction of its discovery obligations in this litigation, may produce privilege logs in their original format, even if the privilege logs do not comply with the requirements of this Order.

Case 4:20-cv-00957-SDJ    Document 574-2    Filed 07/19/24    Page 53 of 116 PageID #:
19271
Case 1:21-md-03010-PKC    Document 371-5    Filed 11/07/22    Page 13 of 21

## VI.    MISCELLANEOUS PROVISIONS

1. Motions. The parties shall raise discovery disputes in accordance with the Individual Practices of Judge Kevin P. Castel.  Discovery Disputes shall be brought on by letter and the parties shall comply with Local Civil Rule 37.2 unless otherwise ordered. A Discovery Dispute Letter to the Court shall contain the certification required under Rule 37(a)(1), Fed. R. Civ. P., and the full text of any discovery request and response or objection thereto, together with any case law support and any affidavits required to adjudicate the issue. The party from whom discovery is sought shall respond within four days and shall include any case law support and any affidavits required to adjudicate the issue.

2. Costs of Document Production. Unless this Court orders otherwise for good cause shown, each party and non-party shall bear the costs of collecting, processing, reviewing, and producing its own documents.

3. Integration/Appendices. The following documents are incorporated herein by reference:

   a.    "Appendix 1" is a document describing the production format and fields to be included in the documents produced by each party.


SO ORDERED this _____ day of _____, 2022

                                          _____
                                          HON. P. KEVIN CASTEL
                                          U.S. District Judge

## APPENDIX 1: PRODUCTION FORMAT

**A**.    **Production Components**. Except as otherwise provided below, ESI shall be produced in accordance with the following specifications:

1. An ASCII delimited data file (.DAT) with ASCII 020 for the comma character and ASCII 254 for the quote character, with all values in a multi-value field separated by a semi-colon ASCII 059 (with the use of commas and quotes as delimiters not acceptable using standard delimiters) and encoded in UTF-8;

2. An image load file (.OPT) that can be loaded into commercially acceptable production software (e.g. Concordance);

3. TIFF images; and

4. Document level .TXT files for all documents containing extracted full text or OCR text.

5. Parent-child relationships will be maintained in production.

6. Document families must be produced, even if only the parent email or an attachment to an email is responsive, except (1) junk files and non-user created content routinely excluded during processing, and (2) documents that are withheld on the basis of attorney-client privilege or work product protection.

If a particular document or category of documents warrants a different production format, for example if it is impractical to produce an entire document family for particular documents, the parties will cooperate in good faith to arrange for a mutually acceptable production format.

**B**.    **Production Media and Access Controls**. Documents shall be encrypted and produced through electronic means, such as secure file sharing methods (e.g. FTP), or on CD, DVD, flash drive or external hard drive ("Production Media"). Each piece of Production Media shall identify a production number corresponding to the production volume (e.g. "VOL001"). Each piece of Production Media shall also identify: (a) the producing party's name; (2) the production date; (3) the Bates Number range of the materials contained on the Production Media.

Nothing in this Order will preclude or impair any and all protections provided the parties by any Protective Order(s) agreed and entered into by the parties. Any data produced by the producing party must be protected in transit, in use, and at rest by all in receipt of such data. Parties will use best efforts to avoid the unnecessary copying or transmittal of produced documents. Any copies made of produced data must be kept on media or hardware employing whole-disk or folder level encryption or otherwise secured on information systems and networks in a manner consistent with the best practices for data protection. If questions arise, Parties will meet and confer to ensure security concerns are addressed prior to the exchange of any documents.

C.    **Data Load Files/Image Load Files**. All production items will be provided with a delimited data file or "load file," which will include both an image cross-reference load file (such as an Opticon file) and a metadata (.dat) file with the metadata fields identified below on the document level to the extent available. Each TIFF in a production must be referenced in the corresponding image load file. The total number of documents referenced in a production's data load file should match the total number of designated document breaks in the image load file(s) in the production. The total number of pages referenced in a production's image load file should match the total number of TIFF files in the production. All images must be assigned a unique Bates number that is sequential within a given document and across the production sets. The Bates numbers in the image load file must match the corresponding documents' beginning Bates numbers in the data load file. The total number of documents in a production should match the total number of records in the data load file. Load files shall not vary in format or structure within a production, or from one production to another.

D.    **Metadata Fields**. With the exception of the hard copy paper documents, which are separately addressed in paragraph L below, each of the metadata and coding fields set forth below that can be extracted shall be produced for each document to the extent reasonably

14

Case 4:20-cv-00957-SDJ    Document 574-2    Filed 07/19/24    Page 56 of 116 PageID #:
19274
Case 1:21-md-03010-PKC    Document 371-5    Filed 11/07/22    Page 16 of 21

practicable. The parties are not obligated to populate manually any of the fields below if such

fields cannot be extracted from a document, with the exception of the following: (a)

BEGBATES, (b) ENDBATES, (c) BEGATTACH, (d) ENDATTACH, (e) CUSTODIAN, (f)

ALLCUSTODIANS, (g) CONFIDENTIALITY, (h) REDACTIONS, (i) NATIVEFILEPATH,

and (j) TEXTFILEPATH, which should be populated by the party or the party's vendor. The

parties will make reasonable efforts to ensure that metadata fields automatically extracted from

the documents correspond directly to the information that exists in the original documents.

| Field Name[1] | Field Description |
|---|---|
| BEGBATES | Beginning Bates number as stamped on the production image |
| ENDBATES | Ending Bates number as stamped on the production image |
| BEGATTACH | First production Bates number of the first document in a family |
| ENDATTACH | Last production Bates number of the last document in a family |
| CUSTODIAN | Individual from whom the document originated |
| ALLCUSTODIAN(S) | Individual(s) whose documents de-duplicated out |
| CONFIDENTIALITY | Confidentiality designation assigned to document |
| HASHVALUE | MD5 hash value of document |
| AUTHOR | Any value populated in the Author field of the document properties (Edoc or attachment only) |
| DATECREATED | Date the document was created (format: MM/DD/YYYY) (Edoc or attachment only) |
| DATEMODIFIED | Date when document was last modified according to filesystem information (format: MM/DD/YYYY) (Edoc or attachment only) |
| FROM | The name and email address of the sender of the email |

---

[1] Field names can vary from system to system and even between different versions of systems. Thus, Parties are to be guided by these Field Names and Field Descriptions when identifying the metadata fields to be produced for a given document pursuant to this ESI Protocol Order.

Case 4:20-cv-00957-SDJ    Document 574-2    Filed 07/19/24    Page 57 of 116 PageID #:
19275
Case 1:21-md-03010-PKC    Document 371-5    Filed 11/07/22    Page 17 of 21

| | |
|---|---|
| TO | All recipients that were included on the "To" line of the email |
| CC | All recipients that were included on the "CC" line of the email |
| BCC | All recipients that were included on the "BCC" line of the email |
| DATERECEIVED | Date email was received (format: MM/DD/YYYY) |
| DATESENT | Date email was sent (format: MM/DD/YYYY) |
| FILESIZE | The original file size of the produced document |
| ORIGINATING PATH | File path of the file as it resided in its original environment |
| REDACTIONS | Indicate Yes if a document is redacted. If no leave blank. |
| NATIVEFILEPATH | Native File Link (Native Files only) |
| EMAIL THREAD ID | Unique identification number that permits threading of email conversations. For instance, MS Outlook identification number ("PR CONVERSATION INDEX") is 22 bytes in length, followed by zero or more child blocks each 5 bytes in length, that facilitates use of email threading. (Microsoft application documents only) |
| TEXTFILEPATH | Path to extracted text/OCR file for document |
| EMAILSUBJECT | Subject Line of email |
| TIMESENT | Time email was sent |
| TIMEZONEUSED | Time zone used to standardize date/time during document processing |
| RECEIVETIME | Time email was received |
| FILENAME | File Name of the edoc or email |
| TITLE | Any value populated in Title field of the document properties |
| SUBJECT | Any value populated in the Subject field of the document properties |
| DOCEXT | File extension of the document |
| WITHHELD PLACHOLDER | To the extent a document is fully withheld (on the basis of privilege or otherwise), this field must be populated with a "Y". If not applicable leave blank. |
| TECHNICAL ISSUE PLACEHOLDER | To the extent a file is withheld on the basis of a technical issue, this field must be populated with a "Y". If not applicable leave blank. |

16

Case 4:20-cv-00957-SDJ    Document 574-2    Filed 07/19/24    Page 58 of 116 PageID #:
19276
Case 1:21-md-03010-PKC   Document 371-5   Filed 11/07/22   Page 18 of 21

**E.    TIFFs**. Documents that exist only in hard copy format shall be scanned and produced as TIFFs. Documents that exist as ESI shall be converted and produced as TIFFs, except as provided below. The imaged data shall retain all attributes of the native or hard-copy file, such as document breaks, to the extent reasonably practicable. To the extent reasonably practicable, produced TIFF image will show all text and images that are visible in the form in which the electronic document was last saved, with the exception of redacted portions. Hidden content, tracked changes or edits, comments, notes, and other similar information, shall to the extent reasonably practicable, also be imaged so that such content is viewable on the image file. Where hidden content, tracked changes or edits, comments, notes, or other similar information is not readable in its produced format, a party that received the document may make reasonable requests that a more readable version, such as a native version, be produced when helpful to interpret the contents of the relevant document.  Unless excepted below, single page, black and white, Group IV TIFFs should be provided, at least 300 dots per inch (dpi) for all documents, with corresponding multi-page text and necessary load files. Each TIFF image shall be named according to a unique corresponding Bates number associated with the document. Each image shall be branded according to the Bates number and the agreed upon confidentiality designation. Original document orientation should be maintained (i.e., portrait to portrait and landscape to landscape). Documents that are difficult to render in TIFF because of technical issues, or any other documents that are impracticable to render in TIFF format, may be produced in their native format with a placeholder TIFF image stating "Document Produced Natively." A producing party retains the option to produce ESI in alternative formats if so agreed by the requesting party, which may include native format, or a combination of native and TIFF formats. Where the TIFF image is unreadable or has materially degraded the quality of the original, the producing party shall provide a higher quality TIFF image or the native or original file.

17

**F.    Color**. A party that received a production may make reasonable requests that color images be produced where color is helpful to interpret the contents of the relevant document. The production of documents and/or ESI in color shall be made in single-page JPEG format (300 DPI). All requirements for productions stated in this ESI Protocol regarding productions in TIFF format apply to any productions of documents and/or ESI in color made in such an alternative format. Reasonable requests that a document be produced in color for the reasons set forth in this Paragraph will not be unreasonably denied by the producing party. If a producing party wishes to object, it may do so by responding in writing and setting forth its objection(s) to the production of the requested document in color.

**G.    Text Files.** A single multi-page text file shall be provided for each document, and the filename should match its respective TIFF filename. When possible, the text of native files should be extracted directly from the native file. Text files will not contain the redacted portions of the documents. A commercially acceptable technology for optical character recognition "OCR" shall be used for all scanned, hard copy documents and for documents with redactions.

**H.    Native Files.** Spreadsheets (e.g. MS Excel) and presentations (e.g. MS PowerPoint) will be produced in native format unless redacted, in which instance, spreadsheets shall be produced in TIFF with OCR Text Files. To the extent that they are produced in this action, audio, video, and multi-media files will be produced in native format. Native files shall be produced with a link in the NATIVEFILEPATH field, along with extracted text (where extracted text is available) and applicable metadata fields set forth in paragraph D above. A Bates numbered TIFF placeholder indicating that the document was provided in native format must accompany every native file.

**I.    Request for Other Native Files.** Other than as specifically set forth above, a producing party need not produce documents in native format. If a party would like a particular document produced in native format and this ESI protocol does not require the production of that document in its native format, the party making such a request shall explain the reason for its request that the

18

document be produced in its native format. The requesting party will provide a specific Bates range for documents it wishes to be produced in native format. The producing party need only produce such a document in native format if reasonably practicable. Any native files that are produced should be produced with a link in the NativeLink field, along with all extracted text and applicable metadata fields set forth in Appendix 1.

**J.     Linked Files and Collaborative Work Environments.** Where an email or other document links to another file or document in a collaborative work environment, a receiving party may request, when reasonable to do so, that the producing party conduct a reasonable search for the document corresponding with the link over the collection sets of documents for the agreed-upon custodians that received the email(s) containing the link, and process and produce the document if it is contained among the documents searched.

**K.     Confidentiality Designation.** Responsive documents in TIFF format will be stamped with the appropriate confidentiality designations in accordance with the Protective Order entered in this matter. Each responsive document produced in native format will have its confidentiality designation identified in the filename of the native file and indicated on its corresponding TIFF placeholder.

**L.     Databases and Other Structured Data.** The parties shall meet and confer regarding the production format and scope of data contained in databases in order to ensure that any information produced is reasonably usable by the receiving party and that its production does not impose an undue burden on the producing party. To avoid doubt, information will be considered reasonably usable when produced in CSV format, tab-delimited text format, Microsoft Excel format, or Microsoft Access format. To the extent a party is constrained from producing responsive ESI because of a third-party license or because software necessary to view the ESI is hardware-dependent, the parties shall meet and confer in an attempt to reach an agreement on whether alternative methods exist to enable the requesting party to view the ESI.

**M.     Paper Documents.** A producing party may make paper documents available for inspection and copying in accordance with Federal Rule of Civil Procedure 34 or, additionally or alternatively, scan and OCR paper documents. The following information shall be produced in the load file accompanying production of paper documents produced by scan and OCR to the extent reasonably practicable: (a) Beg Bates, (b) End Bates, (e) Custodian, (f) Confidentiality, and (g) Redacted. Paper documents should be logically unitized for production to the extent reasonably practicable. Generally, when scanning paper documents for production, distinct documents shall not be merged into a single record and single documents shall not be split into multiple records. The parties will make reasonable efforts to unitize documents correctly. Where a document or a document group — such as folder, clipped bundle, or binder has an identification spine or other label, the information on the label shall be scanned and produced as the first page of the document or grouping to the extent reasonably practicable.

**N.     Date and Time.** No party shall modify the date or time as contained in any original ESI. This provision does not prevent parties from deleting inaccurate date or time information that arises as an incident of collection or processing.

**O.     Time Zone.** To the extent reasonably practicable, ESI items shall be processed using a consistent time zone and the time zone shall be disclosed to the requesting party.

**P.     Auto Date/Time Stamps.** To the extent reasonably practicable, ESI items shall be processed so as to preserve the data/time shown in the document as it was last saved, not the date of collection or processing.

**Q.     Hidden Text.** ESI items shall be processed, to the extent practicable, in a manner that preserves hidden columns or rows, hidden text, worksheets, speaker notes, tracked changes, and comments.

# Exhibit F



**Freshfields Bruckhaus Deringer US LLP**

**Via Email**

Zeke DeRose III
Lanier Law Firm
10940 W. Sam Houston Pkwy N
Suite 100
Houston, TX 77064

New York
601 Lexington Avenue
31st Floor
New York, NY 10022
T +1 212 277 4000 (Switchboard)
  +1 212 284 4910 (Direct)
F +1 646 521 5710
E rob.mccallum@freshfields.com
www.freshfields.com

October 14, 2022

Re: *In re Google Digital Advertising Antitrust Litigation*, No. 1:21-md-03010 (PKC)

Dear Zeke:

I write concerning Plaintiffs' draft of the ESI Order in the above-captioned MDL.

Defendants' Draft of the ESI Order dated July 1 ("Defendants' July 1 Draft") was based on a template entered by a federal judge in a recent antitrust case brought by the Federal Trade Commission. Google made a modest number of changes to that objectively reasonable template, including a small number of changes in Google's favor (grounded in principles of proportionality, as discussed below), and a larger number of changes in Plaintiffs' favor (to address specific concerns raised by Plaintiffs). Contrary to Federal Rule of Civil Procedure 26(b)(1), Plaintiffs' most recent draft rejects all proportionality changes proposed by Google. It retains, however, all changes in Plaintiffs' favor, and then demands over 50 additional changes in Plaintiffs' favor (many of which find no support in the Federal Rules). Plaintiffs' one-sided approach to negotiations is unproductive, and ignores the Court's guidance that the parties should not seek to reinvent the wheel.

We outline below a proposed compromise that addresses Google's primary concerns in exchange for what we understand to be Plaintiffs' primary concerns (as well as many of Plaintiffs' proposed "technical edits"). If Plaintiffs will agree to appropriate limitations on the scope of discoverable ESI grounded in principles of proportionality, then Google will agree to the changes outlined below and reflected in the enclosed redline. But if Plaintiffs continue to reject any and all changes proposed by Google then Google is prepared to submit Defendants' July 1 Draft to the Court.



**The ESI Order Should Reflect Principles of Proportionality**

Google made very limited changes to the categories of ESI identified in the *FTC v. Meta* template that need not be preserved or searched. Those changes are grounded in Federal Rule 26(b)(1) and principles of proportionality articulated in the Sedona Principles *i.e.*, that the "preservation obligation should be limited to those steps reasonably necessary to secure ESI for the fair and just resolution of the matter in dispute," and that "it is neither feasible nor reasonable to require litigants to canvas all potential sources of ESI in discharging their preservation obligations and responding to discovery requests." The Sedona Principles, Third Edition, 19 Sedona Conf. J. 1, 112, 173 (2018) ("Sedona Principles"). Plaintiffs rejected all of Google's proposed changes then deleted further provisions that were part of the original *FTC v. Meta* template. Those provisions should be included in the ESI Order.

Back-up systems and tapes used for disaster recovery. The Sedona Principles counsel that, "[a]bsent good cause, preservation obligations should not extend to disaster recovery backup tapes created in the ordinary course of business." Sedona Principles, at 113. If Plaintiffs contend that there is good cause to require preservation of disaster recovery systems in this case, please explain the basis for that contention.

Individual user data subject to routine disposition required by privacy regulations. The Sedona Conference counsels that "[d]ata protection laws and regulations may affect an organization's ability to implement legal hold data preservation measures." The Sedona Conference, Commentary on Legal Holds, Second Edition, 20 Sedona Conf. J. 341, 409 (2019). If Plaintiffs contend that the preservation obligation should trump the requirements of privacy regulations affecting any user data, please explain the basis for that contention.

Logs of calls made from cellular phones, and voicemail messages. The Sedona Principles counsel that preservation efforts should focus on "sources that are most likely to contain relevant ESI." Sedona Principles, at 136. In light of the nature of the allegations remaining in the case, which focus on unilateral exclusionary conduct across various alleged markets, it seems unlikely that voicemails and cell phone logs will have any relevance to the issues in dispute. If Plaintiffs contend otherwise, please explain the basis for that contention.

Metadata fields that are frequently updated automatically, such as last-opened or last modified dates. "Computer systems manage data dynamically, meaning that the ESI is constantly being cached, rewritten, moved, and copied." Sedona Principles, at 112. It follows that parties should limit preservation obligations to steps "reasonably necessary to secure ESI for the fair and just resolution of the matter in dispute." *Id.* If Plaintiffs contend that frequently updated fields such as last-opened or last-modified dates are relevant to the claims in this case, please explain the basis for that contention.

Ad logs concerning ads viewed outside the United States. Ad logs are an example of the category of "massive or disproportionate volumes of information" that need not be preserved. Sedona Principles, at 136. Google has exabytes of ad log data which is too large to produce, cannot easily be searched, and older log data is no longer of any business use to Google. If



Plaintiffs contend that ad logs concerning ads viewed outside the United States are relevant to the claims in this case, please explain the basis for that contention.

<u>Dynamic fields of databases, dashboards, or log files</u>.  Dynamic fields are an example of "ephemeral data" that need not be preserved.  Sedona Principles, at 136.  Google has many databases, dashboards, and logs featuring dynamic fields that are automatically populated with refreshed data from (and thus duplicative of) other sources.  "A party need not preserve multiple or duplicative copies of the same relevant ESI."  Sedona Principles, at 94.  If Plaintiffs contend that dynamic fields are relevant to this dispute, please explain the basis for that contention.

<u>Systems no longer in use that cannot be accessed</u>.  We think that this is self-explanatory.  We do not have any particular "systems" in mind at this juncture, but we anticipate that this issue may arise given the pace of change in the ad tech world.  To the extent that Plaintiffs request documents from systems that are no longer in use, Google will consider those requests on a case-by-case basis and consistent with Federal Rule 26(b).  But it is unreasonable to expect Google to preserve systems that cannot be accessed.  If Plaintiffs contend otherwise, please explain the basis for that contention.

**Google Remains Prepared To Address Plaintiffs' Primary Concerns**

We understand Plaintiffs' primary concern to be that there are a number of documents produced in the presuit investigation that Plaintiffs assert contain unreadable truncated comments and do not contain linked documents.  As set forth in my letter of July 1, Google made changes to the *FTC v. Meta* template to address Plaintiffs' specific concerns, including by allowing the receiving party to make reasonable requests for a more readable version and for linked documents.  Those changes continue to be more than sufficient to address Plaintiffs' stated concerns.  But in the interest of reaching agreement on the ESI Order, if Plaintiffs will agree to the inclusion of Google's reasonable requests regarding proportionality (outlined above) then Google is prepared to take additional steps (outlined below) to address Plaintiffs' concerns.

<u>Readability</u>.  For future productions, Google will agree to include language obliging the producing party to make reasonable efforts to identify documents with readability issues in advance of production and, where issues are detected, to produce the document in a more readable format (such as in Microsoft-equivalent form).  For previously-produced Investigation Materials with readability issues Google would, when requested and where possible and proportionate, be prepared to produce a more readable version for documents that are responsive to a properly propounded request pursuant to Federal Rule 34.

<u>Links</u>.  For future productions, Google will agree to include language obliging the producing party to conduct a reasonable search to identify emails that contain links.  For each link identified, the producing party will conduct a reasonable search for the document corresponding with the link.  The search will be over the collected documents for the agreed-upon custodians that received the email(s) containing the link.  The producing party will process and produce relevant documents corresponding with the email links as though they were separate documents.  For previously-produced Investigation Materials, Google remains amenable to addressing



4|4

reasonable and proportionate requests for the production of a reasonable number of linked documents that are responsive to a properly propounded request pursuant to Federal Rule 34.  *See* App'x 1, Section J.

      <u>Technical edits</u>.  We do not agree with Plaintiffs' characterization of many of their proposed edits as being merely "technical."  Many of those so-called "technical edits" are substantive, burdensome, and disproportionate.  But if Plaintiffs will agree to address Google's proportionality concerns then Google would be prepared to agree to the "technical edits" reflected in the enclosed redline.

*  *  *

      Google remains prepared to meet and confer regarding the contours of this ESI Order.  Although Google is willing to consider Plaintiffs' views on these issues, Google will not agree to an ESI Order that is contrary to both Federal Rule 26 and the Sedona Principles.  If Plaintiffs continue to demand dozens of further changes in their favor while rejecting every single proportionality change proposed by Google then it does not seem productive to continue to exchange drafts.  Defendants' July 1 Draft is objectively reasonable, fairly addresses the concerns of all parties, and can be entered as drafted if need be.  If Plaintiffs will agree to appropriate limitations to the scope of ESI as described in this letter, then Google is prepared to make the additional concessions described in this letter and set forth in the enclosed redline.

                         Very truly yours,

                         <u>/s/ Robert J. McCallum</u>

                         Robert J. McCallum

Enclosure

cc:    Lauren Kaplin
       Mikaela Evans-Aziz
       Kevin Orsini
       Martha Reiser
       Jason Zweig
       Caitlin Coslett
       John Thorne
       Daniel Bird
       Eric Maier
       Ted Maya
       Jordan Elias
       Stuart Davidson
       Serina Vash
       Thomas Ray

# Exhibit G

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
STEPHEN SULLIVAN, WHITE OAK FUND LP,
CALIFORNIA STATE TEACHERS'
RETIREMENT SYSTEM, SONTERRA CAPITAL
MASTER FUND, LTD., FRONTPOIN
PARTNERS TRADING FUND, L.P. and
FRONTPOINT AUSTRALIAN OPPORTUNITIES
TRUST, on behalf of themselves and others
similar situated,

| USDC SDNY |
| DOCUMENT |
| ELECTRONICALLY FILED |
| DOC #: _____ |
| DATE FILED: _4/10/17_ |

                          Plaintiffs,            13-cv-2811 (PKC)

          -against-                              SCHEDULING ORDER

BARCLAYS PLC, et al.,

                          Defendants.

---------------------------------------------------------------x

Pursuant to Rule 16, Fed. R. Civ. P., this Scheduling Order shall govern this action:

1. The remaining defendants in this action are: Citibank, N.A. and Citigroup Inc.
   (together, "Citi") and JPMorgan Chase & Co. and JPMorgan Chase Bank, N.A.
   (together, "JP Morgan"). Plaintiffs have move for leave to file a Fifth Amended
   Complaint and the Court and parties acknowledge that this Order may need to be
   adjusted in the event new parties are added.

2. The parties do not consent to conducting all further proceedings before a Magistrate
   Judge.

3. The parties have agreed to waive initial disclosures in this matter.

4. Plaintiffs have requested a jury trial. Defendants reserve their position as to whether
   a jury trial is permissible here, depending on facts that may be further developed in
   discovery, and which claims might ultimately remain to be tried.

5. All fact discovery, including class discovery, shall be completed no later than
   December 4, 2018.

6. The parties are to conduct discovery in accordance with the Federal Rules of Civil
   Procedure and the Local Rules of the Southern District of New York. Dates for
   service of discovery requests, depositions and other discovery tools may agreed
   upon by the parties and extended by the written consent of all parties without
   application to the Court, provided that all fact discovery is completed by the date set
   forth in paragraph 5 above. Subject to the foregoing, the following dates apply:

Case 1:13-md-02481-PKC   Document 337   Filed 04/07/22   Page 3 of 4

   a. Parties shall serve Rule 34 requests, including requests addressed to the issue of class certification, by August 1, 2017.

   b. Defendants production of Euribor documents produced to regulators shall be completed by June 9, 2017;

   c. Defendants shall substantially complete their production of transactional data by October 23, 2017;

   d. Depositions may commence at any time after December 4, 2017 and shall be completed by December 4, 2018;

   e. The parties shall prioritize their depositions to complete those necessary to support or oppose class certification by February 16, 2018.

7. All expert discovery relating to class certification shall be completed by June 28, 2018.

8. Plaintiff may move for class certification any time before August 1, 2018.

9. All expert discovery (other than for class certification) in this case shall be completed by June 30, 2019. The parties shall meet and confer prior to December 14, 2018 to agree upon a schedule for completing same.

10. All motions and applications shall be governed by the Court's Individual Practices, including pre-motion conference requirements, except that motions in limine may be made without a premotion conference on the schedule set forth in paragraph 11. Pursuant to the authority of Rule 16(c)(2), Fed. R. Civ. P., any motion for summary judgment will be deemed untimely unless a request for a premotion conference relating thereto is made in writing no later than fourteen (14) days after the date set by the Court for the close of fact discovery.

11. By April 28, 2017, the plaintiffs, the Citi defendants and the JP Morgan defendanst shall advise the Court in writing via fax whether they agree to the retention of a private mediator.

12. The Final Pretrial Submission Date is forty five (45) days after the date in paragraph 9. By the Final Pretrial Submission Date, the parties shall submit a Joint Pretrial Order prepared in accordance with the undersigned's Individual Practices and Rule 26(a)(3), Fed. R. Civ. P. Any motions in limine shall be filed after the close of discovery but sufficiently before the Final Pretrial Submission Date to allow all briefing by all parties by the Final Pretrial Submission date; the premotion letter requirement is waived for any such motion. If this action is to be tried before a jury, proposed voir dire, jury instructions and verdict form shall also be filed by the Final Pretrial Submission Date. Counsel are required to meet and confer on a joint submission of proposed jury instructions and verdict form, noting any points of disagreement in the joint submission. Jury instructions may not be submitted after the Final Pretrial Submission Date, unless they meet the standard of Rule 51(a)(2)(A), Fed. R. Civ. P. If the action is to be tried to the Court, all "Final Pretrial Submissions (Non-Jury)" described in the Judge's Individual Practices (at ¶5) shall be filed by the Final Submission Date with the schedule for each party's submission to be agreed upon by the parties.

13. The next Case Management Conference is scheduled for ___Nov 17, 2017___ at
___10:30 a.m.___.

14. Any motion to amend to add additional
parties or claims will be deemed untimely
unless made within 60 days of this
Order.

This ORDER may not be modified or the dates herein extended, except by further Order of this
Court for good cause shown. Any application to modify or extend the dates herein (except as
noted in paragraph 6) shall be made in a written application in accordance with the Court's
Individual Practices and shall be made no less than five (5) days prior to the expiration of the
date sought to be extended.

P. Kevin Castel
United States District Judge

Dated:    New York, New York
          April 10, 2017

# Exhibit H

Case 1:11-mc-02221-NGG-RER    Document 214-1    Filed 12/07/11    Page 2 of 4 PageID #: 10760

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

_____
                                              :
IN RE:  AMERICAN EXPRESS ANTI-STEERING RULES  :    Master File No: 11-MDL- 2221 (NGG)(RER)
ANTITRUST LITIGATION (NO. II)                 :
                                              :
This Document Relates To:                     :
                                              :
        ALL CASES                             :
_____     :
                                              :
                                              :
UNITED STATES OF AMERICA, ET AL.,             :    Case No: 10-CV-04496 (NGG)(RER)
                                              :
        Plaintiffs,                           :
                                              :
vs.                                           :
                                              :
                                              :
AMERICAN EXPRESS COMPANY, ET AL.,             :
                                              :
        Defendants.                           :
                                              :
_____

### [PROPOSED] AMENDED SCHEDULING ORDER

The following discovery order shall be in place, and supersedes previous scheduling orders in the cases:

1.    The last day for the amendment of the pleadings or the addition of parties to these actions was March 16, 2011.

2.    The last day for exchange of initial disclosures was April 14, 2011.

3.    No new document requests shall be propounded after November 18, 2011 without leave of Court upon a showing of good cause.

4.    No later than May 25, 2012, the parties shall submit a joint stipulation and proposed deposition discovery coordination order outlining the number of depositions (or deposition hours) each side will have through the remainder of fact discovery.  If the parties

cannot agree, Defendants and each group of Plaintiffs shall instead submit a status report regarding their position and their own version of the proposed deposition discovery coordination order.

5.    All document discovery shall be completed by July 2, 2012.  This date shall not be extended except for unforeseen circumstances.

6.    Any proposed or joint expert discovery coordination order(s) must be filed by February 1, 2013.

7.    All fact discovery shall be completed by December 21, 2012, with the exception of the seven 30(b)(6) depositions noticed by plaintiffs that were the subject of Amex's motion to quash, which depositions shall be completed by February 1, 2013.

8.    The parties shall serve expert reports on the subjects for which they bear the burden of proof at trial by April 2, 2013.

9.    The parties shall serve any rebuttal expert reports by May 20, 2013.

10.    Any sur-rebuttal reports shall be served by July 3, 2013.

11.    All depositions of expert witnesses shall be taken between July 15, 2013 and August 14, 2013.

12.    All expert discovery shall be completed by August 14, 2013.

13.    The Court shall set a deadline for a joint pre-trial order and a date for a final pre-trial conference after taking into account the anticipated dispositive and class certification motions.

14.    Any dispositive motions for class certification shall be filed and briefed on a schedule to be set by the Court.

15.    Except as expressly provided above, the deadlines set forth herein may be extended upon a showing of good cause.

**SO ORDERED.**

Dated: _____12/14/12_____
      Brooklyn, New York

                                ____/s/ RER_____
                                  Ramon E. Reyes, Jr.
                                  U.S. Magistrate Judge

443252.1

# Exhibit I

1  Karma M. Giulianelli (SBN 184175)
   karma.giulianelli@bartlitbeck.com
2  **BARTLIT BECK LLP**
   1801 Wewetta St., Suite 1200
3  Denver, Colorado 80202
   Telephone: (303) 592-3100
4
5  Hae Sung Nam (*pro hac vice*)
   hnam@kaplanfox.com
6  **KAPLAN FOX & KILSHEIMER LLP**
   850 Third Avenue
7  New York, NY 10022
   Tel.: (212) 687-1980
8
9  *Co-Lead Counsel for the Proposed Class in In re Google Play Consumer Antitrust Litigation*
10
   Steve W. Berman (*pro hac vice*)
   steve@hbsslaw.com
11 **HAGENS BERMAN SOBOL SHAPIRO LLP**
   1301 Second Ave., Suite 2000
12 Seattle, WA 98101
   Telephone: (206) 623-7292
13
14 *Co-Lead Counsel for the Proposed Class in In re Google Play Developer Antitrust Litigation and Attorneys for Pure Sweat Basketball, Inc.*
15
16 Bonny E. Sweeney (SBN 176174)
   bsweeney@hausfeld.com
17 **HAUSFELD LLP**
   600 Montgomery Street, Suite 3200
18 San Francisco, CA 94104
   Telephone: (415) 633-1908
19
20 *Co-Lead Counsel for the Proposed Class in In re Google Play Developer Antitrust Litigation and Attorneys for Peekya App Services, Inc.*
21
22 [Additional counsel appear on signature page]
23
24
25
26
27
28

Paul J. Riehle (SBN 115199)
paul.riehle@faegredrinker.com
**FAEGRE DRINKER BIDDLE & REATH LLP**
Four Embarcadero Center, 27th Floor
San Francisco, CA 94111
Telephone: (415) 591-7500

Christine A. Varney (*pro hac vice*)
cvarney@cravath.com
**CRAVATH, SWAINE & MOORE LLP**
825 Eighth Avenue
New York, New York 10019
Telephone: (212) 474-1000

*Counsel for Plaintiff Epic Games, Inc. in Epic Games, Inc. v. Google LLC et al.*

Brian C. Rocca (SBN 221576)
brian.rocca@morganlewis.com
**MORGAN, LEWIS & BOCKIUS LLP**
One Market, Spear Street Tower
San Francisco, CA 94105-1596
Telephone: (415) 442-1000

*Counsel for Defendants Google LLC et al.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| **IN RE GOOGLE PLAY STORE ANTITRUST LITIGATION**<br><br>THIS DOCUMENT RELATES TO:<br><br>*Epic Games Inc. v. Google LLC et al.*, Case No. 3:20-cv-05671-JD<br><br>*In re Google Play Consumer Antitrust Litigation*, Case No. 3:20-cv-05761-JD<br><br>*In re Google Play Developer Antitrust Litigation*, Case No. 3:20-cv-05792-JD | Case No. 3:21-md-02981-JD<br><br>**JOINT CASE MANAGEMENT STATEMENT**<br><br>Date: April 1, 2021<br>Time: 10:00 a.m.<br>Courtroom: 11, 19th Floor (via Zoom)<br>Judge: Hon. James Donato |

Pursuant to this Court's Order dated February 18, 2021 (ECF No. 5), the parties in the above-captioned MDL action ("the Parties"), by and through their undersigned counsel, submit this Joint Statement.

## I.    CASE STATUS SUMMARY

**Scheduling Order**.  Prior to the MDL transfer order, the Parties submitted to the Court an agreed proposed scheduling order on November 6, 2020 that remains pending.  *See Epic Games Inc. v. Google LLC et al.*, Case No. 3:20-cv-05671-JD ("*Epic Action*"), ECF No. 87; *In re Google Play Consumer Antitrust Litigation*, Case No. 3:20-cv-05761-JD ("*Consumer Action*"), ECF No. 71; *In re Google Play Developer Antitrust Litigation*, Case No. 3:20-cv-05792-JD ("*Developer Action*"), ECF No. 68 (collectively, the "Actions").  As noted in the Joint Statement filed with the Court on February 17, 2021, the Parties do not believe the MDL transfer order should affect the schedule of the Actions and request entry of the stipulated case schedule at the Court's convenience.  ECF No. 3.

**Class Certification.**  Developer and Consumer Plaintiffs maintain that meeting the proposed August 2021 class certification schedule will require the prompt production of critical documents, particularly transactional data, by Google, and Google submits that prompt document productions by Developer and Consumer Plaintiffs is also a prerequisite to the class certification schedule, and that depending on the timing of the productions, it may necessitate a delay to the class certification schedule.

**Google's Motion to Dismiss**.  On February 26, 2021, the Parties filed a Joint Statement in the above-captioned MDL action setting forth their proposal with regard to streamlining motion practice on Google's pending Rule 12(b)(6) motion to dismiss as to Epic Games, Inc. (*Epic Action*, ECF No. 91) and Developer Plaintiffs (*Developer Action*, ECF No. 71) ("the Motion to Dismiss").  ECF No. 8.  The Parties proposed that Google's Motion to Dismiss be deemed to have been filed with respect to all Plaintiffs in the MDL action, that Consumer Plaintiffs—including those named in the six newly centralized consumer class actions—join the joint opposition already filed by Epic and Developer Plaintiffs, and that no further briefing be

1  filed with respect to the Motion to Dismiss.  The Parties further proposed that a hearing on the

2  Motion to Dismiss be held on the Court's regular Civil Law & Motion calendar on either April 8,

3  2021 at 10:00 a.m. or April 15, 2021 at 10:00 a.m.

4      **Consolidated Consumer Complaint**.  As part of the February 26 Joint

5  Statement, Consumer Plaintiffs indicated that they will not file an amended complaint or add

6  named Plaintiffs to the operative consolidated complaint at this time.  Accordingly, the pending

7  Consolidated Consumer Class Action Complaint (ECF No. 132, Case No. 3:20-cv-05761-JD)

8  will be the operative consumer complaint for purposes of Defendants' pleadings challenge and

9  for further consolidated proceedings in the *Consumer Action* with respect to all Consumer

10  Plaintiffs.

11      **Court's Prior Orders**.  The Joint Statement filed on February 17, 2021 requested

12  that the Court adopt the following orders as governing the MDL:

13      A.    Protective Order (*Epic Action*, ECF No. 106-1; *Consumer Action*, ECF

14      No. 109-1; *Developer Action*, ECF No. 76-1);

15      B.    ESI Order (*Epic Action*, ECF No. 88; *Consumer Action*, ECF No. 72;

16      *Developer Action*, ECF No. 69);

17      C.    Discovery Coordination Order (*Epic Action*, ECF No. 89; *Consumer

18      Action*, ECF No. 73; *Developer Action*, ECF No. 70); and

19      D.    Stipulation and [Proposed] Scheduling Order and Page Limits for

20      Forthcoming Motion Practice (*Epic Action*, ECF No. 87; *Consumer

21      Action*, ECF No. 71; *Developer Action*, ECF No. 68.)

22      **Discovery**.  Since the most recent Joint Statement was filed on February 17, 2021,

23  Google served its Answers and Objections to Epic's First Interrogatory on March 11, 2021.

24  Google's Responses and Objections to Plaintiffs' Supplemental Request for Production are due

25  March 31, 2021.  Google served Defendants' First Set of Requests for Production of Documents

26  and for Inspection to Consumer Plaintiffs on February 19, 2021.  Consumer Plaintiffs served

27  their Objections and Responses to Defendants' First Set of Requests for Production of

28

Case 4:20-cv-00957-SDJ    Document 574-2    Filed 07/19/24    Page 80 of 116 PageID #:
19298
Case 3:21-md-02981-JD    Document 371-9    Filed 03/25/22    Page 5 of 13

1 Documents and for Inspection on March 22, 2021.  In addition, Plaintiffs served fourteen

2 document subpoenas on third parties.

3    **Document Production**.  Document production continues.  Google has produced

4 approximately 96,000 documents totaling over 740,000 pages to date, including a large amount

5 of data.  Google is preparing another large production on or before March 30.  Epic has produced

6 approximately 1.8 million documents totaling over 4.5 million pages, with additional productions

7 anticipated in the coming weeks.  Developer Plaintiffs have produced approximately 4,000

8 documents from Pure Sweat Basketball and expect to produce Peekya App Services' documents

9 by April 19, 2021.  Consumer Plaintiffs have provided objections and responses to Google's

10 requests but have not yet produced documents.  Transactional data has not yet been produced by

11 either side, though the parties continue meeting and conferring on this issue.  Several other

12 discovery issues remain unresolved, as set forth below.

13    **Discovery Issues**.  The Parties have met and conferred at length on a number of

14 outstanding discovery issues.

15    Based on a letter sent by Google to Plaintiffs on March 22, 2021, Plaintiffs

16 believe that the Parties have now reached an impasse on two issues that Plaintiffs intend to brief

17 in the coming days:

18    A.    **Custodial Categories:**  The Parties are still discussing search terms to be

19        run on Google's custodial documents, as noted below.  The Parties

20        disagree as to whether once search terms are finalized, all agreed-upon

21        search terms should be run against all custodians, as requested by

22        Plaintiffs, or whether search terms should instead be grouped such that a

23        subset of the agreed-upon terms are run only against the documents of a

24        custodian who Google contends had roles and/or responsibilities relevant

25        to the search term subject matter, as proposed by Google.

26    B.    **Regulatory Investigations:**  On November 9, 2020, Plaintiffs served on

27        Google a request for production of all relevant documents produced by

28

1   Google to any regulatory agency investigating conduct at issue in this

2   litigation.  Google objects to the request as improper; it has offered as a

3   compromise to produce certain documents from one such investigation

4   (initiated by the European Commission; hereinafter the "EC

5   Investigation") but no others.  Not having clear information on whether

6   the EC Investigation is in fact the only relevant regulatory investigation

7   into conduct at issue in this litigation, on February 9, 2021 Epic served on

8   Google an interrogatory seeking information on all regulatory

9   investigations into such conduct.  On March 11, 2021 Google served its

10  answers and objections, naming one U.S. investigation that is publicly

11  known and declining to name any other investigations outside the United

12  States.  Google asserted that Plaintiffs' request was overbroad and

13  disproportionate to the needs of the case because it asked for information

14  regarding investigations of conduct that Google contends is wholly

15  extraterritorial or investigations that Google asserts only tangentially

16  concern Google Play and are unrelated to any claims or defenses in this

17  litigation.  Following further discussion between the Parties, it appears that

18  the Parties are at an impasse as to whether Google should be required (i) to

19  disclose to Plaintiffs all regulatory investigations related to "Google Play

20  or the distribution of Apps on Android" and (ii) to produce relevant

21  materials submitted to regulators in response to investigations that

22  implicate the same factual issues as this litigation.

23  Based on meet-and-confer discussions by telephone and on Epic's letter to Google of

24  March 23, 2021, Google believes that the Parties may now have reached an impasse on at least

25  one issue that Google intends to raise by letter brief in the coming days:

26      C.   **Impact of Excessive Video Game Play and Impulse Buying on Epic's**

27           **In-App Payment Preferences:**  Google has requested documents from

28

JOINT CASE MANAGEMENT STATEMENT
Case No. 3:21-md-02981-JD; 3:20-cv-05671-JD; 3:20-cv-05761-JD; 3:20-cv-05792-JD

Epic relating to excessive video game play and in-app impulse buying. Epic objects to the request as irrelevant to any claims or defenses at issue in the litigation. As discussed in the complaints and Google's Motion to Dismiss, app developers may avoid Google Play's billing system by allowing consumers to pay for in-app content—such as added features, levels, or game time in a video game—outside of the app such as through the developer's website. Epic's complaint alleges, however, that "[i]t is critical that such purchases can be made during gameplay itself, rather than in another manner. If a player were required to purchase game-extending extra lives outside of the app, the player may simply stop playing instead." Epic Complaint ¶ 117. In light of those allegations, Google asserts that the information Google seeks is relevant to qualitative dimensions of competition, including product design such as integration of parental controls and budget controls, and whether Epic has brought suit to avoid Google Play's billing system to capitalize on excessive video game play and impulse buying tendencies. It appears as if the Parties are at an impasse as to whether Epic should search for and produce documents related to excessive video gaming and impulse buying.

The Parties continue to meet and confer on several other topics, as described below, and remain hopeful that they will be able to resolve their disagreements. If the Parties are unable to do so, they will escalate their disputes to the Court as needed.

A. **Search Terms:** The Parties continue to negotiate search terms to be run over Google's and Epic's custodial collections.

B. **Scope of Time:** The Parties continue to discuss the appropriate search periods for custodial and non-custodial productions.

C. **Contracts with Apple:** The Parties continue to negotiate as to the production of Google's contracts with Apple.

Case 4:20-cv-00957-SDJ    Document 574-2    Filed 07/19/24    Page 83 of 116 PageID #:
19301
Case 3:21-md-03098-KJD    Document 371-9    Filed 03/25/22    Page 9 of 213

D.    **Consumer Plaintiffs' Device Information**:  Google and Consumer Plaintiffs continue to meet and confer about the nature and scope of information required from individual named plaintiffs' devices to understand their app- and in-app-related conduct relevant to this action.

Case 4:20-cv-00957-SDJ    Document 574-2    Filed 07/19/24    Page 84 of 116 PageID #:
19302
Case 3:21-md-02981-JD Document 871-9 Filed 03/25/22 Page 10 of 13

Dated: March 25, 2021                    CRAVATH, SWAINE & MOORE LLP
                                             Christine Varney (*pro hac vice*)
                                             Katherine B. Forrest (*pro hac vice*)
                                             Gary A. Bornstein (*pro hac vice*)
                                             Yonatan Even (*pro hac vice*)
                                             Lauren A. Moskowitz (*pro hac vice*)
                                             M. Brent Byars (*pro hac vice*)

                                         FAEGRE DRINKER BIDDLE & REATH LLP
                                             Paul J. Riehle (SBN 115199)

                                         Respectfully submitted,

                                         By:    /s/  *Yonatan Even*
                                                Yonatan Even

                                                *Counsel for Plaintiff Epic Games, Inc.*


Dated: March 25, 2021                    BARTLIT BECK LLP
                                             Karma M. Giulianelli

                                         KAPLAN FOX & KILSHEIMER LLP
                                             Hae Sung Nam


                                         Respectfully submitted,

                                         By:    /s/  *Karma M. Giulianelli*
                                                Karma M. Giulianelli

                                                *Co-Lead Counsel for the Proposed Class in*
                                                *In re Google Play Consumer Antitrust*
                                                *Litigation*

Case 4:20-cv-00957-SDJ    Document 574-2    Filed 07/19/24    Page 85 of 116 PageID #:
19303
Case 3:21-md-02981-JD    Document 171-9    Filed 03/25/22    Page 10 of 13

Dated:  March 25, 2021

PRITZKER LEVINE LLP
Elizabeth C. Pritzker

Respectfully submitted,

By:    /s/  *Elizabeth C. Pritzker*
                Elizabeth C. Pritzker

*Liaison Counsel for the Proposed Class in*
*In re Google Play Consumer Antitrust*
*Litigation*

Dated:  March 25, 2021

HAGENS BERMAN SOBOL SHAPIRO LLP
Steve W. Berman
Robert F. Lopez
Benjamin J. Siegel

SPERLING & SLATER PC
Joseph M. Vanek
Eamon P. Kelly
Alberto Rodriguez

Respectfully submitted,

By:    /s/  *Steve W. Berman*
                Steve W. Berman

*Co-Lead Interim Class Counsel for the*
*Developer Class and Attorneys for Plaintiff*
*Pure Sweat Basketball*

Dated:  March 25, 2021

HAUSFELD LLP
    Bonny E. Sweeney
    Melinda R. Coolidge
    Katie R. Beran
    Scott A. Martin
    Irving Scher

Respectfully submitted,

By:    /s/  *Bonny E. Sweeney*
      Bonny E. Sweeney

*Co-Lead Interim Class Counsel for the*
*Developer Class and Attorneys for Plaintiff*
*Peekya App Services, Inc.*

Dated:  March 25, 2021

MORGAN, LEWIS & BOCKIUS LLP
    Brian C. Rocca
    Sujal J. Shah
    Minna L. Naranjo
    Rishi P. Satia
    Michelle Park Chiu

Respectfully submitted,

By:    /s/  *Brian C. Rocca*
      Brian C. Rocca

*Counsel for Defendants Google LLC et al.*

1

## E-FILING ATTESTATION

2

3      I, Brian C. Rocca, am the ECF User whose ID and password are being used to file

this document.  In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that each of the

4      signatories identified above has concurred in this filing.

5

6                                        /s/ *Brian C. Rocca*
                                          Brian C. Rocca

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Exhibit J

1
2
3
4                        UNITED STATES DISTRICT COURT

5                       NORTHERN DISTRICT OF CALIFORNIA

6

7    In re Google Play Store Antitrust Litigation        Case No.  21-md-02981-JD

8                                                         **AMENDED MDL SCHEDULING
9                                                         ORDER**

10

11

12          In response to the parties' Joint Statement re: Case Schedule and Trial Structure, MDL

13   Dkt. No. 181, the Court sets the following amended case management deadlines pursuant to

14   Federal Rule of Civil Procedure 16 and Civil Local Rule 16-10.  This order applies to all actions

15   that are a part of this multi-district litigation case, and supersedes all scheduling orders previously

16   issued in any member case.

17

| Event | Deadline |
|-------|----------|
| Add parties and amend pleadings | Closed |
| Plaintiffs serve opening class expert reports | February 28, 2022 |
| Status conference | March 17, 2022, at 11 a.m. (by remote access) |
| Google serves opposition class expert reports | March 31, 2022 |
| Plaintiffs serve class expert rebuttal reports | April 25, 2022 |
| Class experts discovery cut-off | May 13, 2022 |
| Plaintiffs file class certification motion; Plaintiffs and Google file *Daubert* motions re class certification experts | May 26, 2022 |

United States District Court
Northern District of California

United States District Court
Northern District of California

| Event | Deadline |
|---|---|
| Google's class certification opposition; Plaintiffs' and Google's *Daubert* oppositions | June 23, 2022 |
| Joint submission for class certification experts' concurrent expert proceeding | July 12, 2022 |
| Plaintiffs' class certification reply brief; Plaintiffs' and Google's *Daubert* replies | July 14, 2022 |
| Concurrent expert proceeding for class certification experts | July 19, 2022 (Tue), at 2:00 p.m. |
| Class certification hearing | August 4, 2022, at 10:00 a.m. |
| Fact discovery cut-off | August 12, 2022 |
| Plaintiffs' merits expert reports | August 22, 2022 |
| Google's merits expert reports | September 26, 2022 |
| Plaintiffs' merits expert rebuttal reports | October 17, 2022 |
| Merits experts discovery cut-off | October 31, 2022 |
| Last day to file dispositive and *Daubert* motions | November 10, 2022 |
| Dispositive and *Daubert* motion responses | December 8, 2022 |
| Dispositive and *Daubert* motion replies | December 29, 2022 |
| Joint submission for merits experts' concurrent expert proceeding | December 30, 2022 |
| Concurrent expert proceeding for merits experts | January 5, 2023 (Tue), at 2:00 p.m. |
| Dispositive motion hearing | January 19, 2023, at 10:00 a.m. |
| Final pretrial conference | March 16, 2023, at 1:30 p.m. |
| Jury Trial | April 3, 2023, at 9:00 a.m. |

All dates set by the Court should be regarded as firm. Counsel may not modify these dates by stipulation without leave of court. Requests for continuances are disfavored, and scheduling conflicts that are created subsequent to the date of this order by any party, counsel or party-

2

controlled expert or witness will not be considered good cause for a continuance.  Sanctions may

issue for a failure to follow a scheduling or other pretrial order.  *See* Fed. R. Civ. P. 16(f)(1)(C).

**IT IS SO ORDERED.**

Dated:  February 2, 2022

_____
JAMES DONATO
United States District Judge

# Exhibit K

Case 4:20-cv-00957-SDJ    Document 574-2    Filed 07/19/24    Page 93 of 116 PageID #:
19311
Case 3:19-md-02918-MMC    Document 372-1    Filed 05/04/22    Page 2 of 10

1    [Counsel listed on signature pages]

2

3

4

5

6

7                          UNITED STATES DISTRICT COURT

8                        NORTHERN DISTRICT OF CALIFORNIA

9                            SAN FRANCISCO DIVISION

10

11   In re:  Hard Disk Drive Suspension Assemblies    |  Case No.  3:19-md-02918-MMC
     Antitrust Litigation
12                                                    |  MDL No. 2918

13   ─────────────────────────────────────

14   THIS DOCUMENT RELATES TO                         |  **STIPULATION AND** ~~[PROPOSED]~~
                                                      |  **ORDER RE: LIFTING OF DISCOVERY**
15   ALL ACTIONS                                      |  **STAY AND COORDINATION OF**
                                                      |  **DISCOVERY AND DISCOVERY LIMITS;**
16                                                    |  **NOTICE OF WITHDRAWAL OF**
                                                      |  **MOTION TO LIFT DISCOVERY STAY**
17                                                    |  **(ECF NO. 197)**

18

19

20

21

22

23

24

25

26

27

28

1  WHEREAS the End-User Plaintiffs[1] and the Reseller Plaintiffs[2] have filed two putative class

2  actions in MDL No. 2918 (the "MDL Docket"), assigned to this Court as transferee court by the

3  Judicial Panel on Multidistrict Litigation;

4  WHEREAS the Seagate Plaintiffs[3] have filed a related action—*Seagate Technology LLC et*

5  *al. v. Headway Technologies, Inc. et al.*, Case No. 3:20-cv-1217—that has been designated as a

6  related case pursuant to Civil L.R. 3-12.  ECF No. 157.

7  WHEREAS the End-User Plaintiffs, the Reseller Plaintiffs, and the Seagate Plaintiffs (each a

8  "Plaintiff Group") each have filed separate complaints against Defendants alleging related factual

9  allegations and causes of action (**Seagate:** Docket No. 3:20-cv-1217, ECF No. 1; **End-Users:** MDL

10  Docket, ECF No. 167, **Resellers:** MDL Docket, ECF No. 190).

11  WHEREAS each of the three complaints alleges claims against two separate groups of

12  affiliated Defendant companies, (1) NHK Defendants[4] and (2) TDK Defendants[5] (each a "Defendant

13

---

14  [1] End-User Plaintiffs ("End-Users") include 47 named individuals.  End-User Pls.' Consol. Class Action Compl. ¶¶ 18-64, ECF No. 167.  End-Users seek to represent a putative class of "all persons

15  and entities who, during the period from January 2005 through at least May 2016 (the 'Class Period'), indirectly purchased an HDD or a Finished Product, not for resale, which included as a

16  component part one or more HDD suspension assemblies that were manufactured or sold by Defendants, [or related entities]." *Id.* ¶ 8.  If an additional named End-User plaintiff becomes part of

17  the class the definition of "End-Users" shall include this party.

18  [2] Reseller Plaintiffs ("Resellers") include the following named entities and individual: Now Micro, Inc.; Voyager Technology Solutions, LLC; IT Worx, Inc.; Willow Bay Computer Solutions LLC;

19  Michael Medeiros.  Reseller Pls.' Corrected Consol. Amended Compl. ¶¶ 22-26, ECF No. 190. Resellers seek to represent a class of "All persons or entities who, during the period from and

20  including 2003 through such time as the anticompetitive effects of Defendants' conduct ceased, purchased a product for resale which included as a component part one or more HDD suspension

21  assemblies that were manufactured or sold by the Defendants . . . [or] indirectly purchased an HDD suspension assembly, for resale[.]" *Id.* ¶ 105.  If an additional named Reseller Plaintiff becomes part

22  of the class the definition of "Resellers" shall include this party.

23  [3] The "Seagate Plaintiffs" are Seagate Technology LLC ("Seagate LLC"), Seagate Technology (Thailand) Ltd. ("Seagate Thailand"), Seagate Singapore International Headquarters Pte. Ltd.

24  ("Seagate Singapore"), and Seagate Technology International ("Seagate International").  If any additional Seagate affiliated entity becomes a named plaintiff, the definition of the "Seagate

25  Plaintiffs" shall include this party.

26  [4] The "NHK Defendants" are NHK Spring Co., Ltd., NHK International Corporation, NHK Spring (Thailand) Co., Ltd., NAT Peripheral (Dong Guan) Co., Ltd. and NAT Peripheral (H.K.) Co., Ltd.

27  [5] The "TDK Defendants" are TDK Corporation ("TDK"), Magnecomp Precision Technology Public

28  Co. Ltd., Magnecomp Corporation, SAE Magnetics (H.K.) Ltd., and Hutchinson Technology Inc. ("HTI").  The Seagate Plaintiffs also assert claims against Headway Technologies, Inc. ("Headway").

1  Family" and collectively the "Defendant Families");

2         WHEREAS the Court has encouraged the parties to cooperate in discovery.  Case

3  Management Conference, ECF No. 159;

4         WHEREAS all parties wish to avoid duplication in discovery, adjust certain discovery limits,

5  and minimize discovery disputes;

6         WHEREAS, Defendants filed a motion to dismiss (ECF No. 192) requesting dismissal with

7  prejudice of the End Users' and Resellers' complaints, and that motion is currently scheduled for

8  hearing on July 17, 2020;

9         WHEREAS, End Users and Resellers on April 24, 2020 filed a Motion to Lift the Discovery

10  Stay (ECF No. 197) ("Motion to Lift Stay") seeking to permit written and document discovery to

11  proceed in this action;

12        WHEREAS, Defendants do not oppose plaintiffs' motion as set forth below;

13        WHEREAS, Plaintiffs and Defendants have agreed to lift the discovery stay in this action so

14  as to permit written and document discovery to proceed as set forth below; and

15        WHEREAS, in light of Defendants' agreement to lift the discovery stay consistent with the

16  limits and provisions set forth below, End Users and Resellers have agreed to withdraw the Motion

17  to Lift Stay;

18        WHEREFORE, THE PARTIES HEREBY STIPULATE AS FOLLOWS:

19        **A.     Lifting of Discovery Stay and Withdrawal of Motion to Lift Stay**

20        1.     All parties agree that the discovery stay in this action (ECF No. 3 at 3, ¶5) is hereby

21  lifted and that written and document discovery may proceed at this time.  End Users and Resellers

22  hereby withdraw their Motion to Lift Stay (ECF No. 197).  The parties agree to defer deposition

23  discovery until after resolution of Defendants' current motions to dismiss (ECF No. 192; Seagate

24  Action ECF No. 30) and entry of a deposition protocol consistent with subsection D, below, except

25  that Plaintiffs reserve the right to seek depositions that may be pertinent to Defendant SAE's motion

26  to dismiss for lack of personal jurisdiction.  *See* ECF No. 191; Seagate Action ECF No. 31).

27  _____

28  When used in connection with claims asserted by the Seagate Plaintiffs, TDK Defendants also
includes Headway.

**B.    Coordination of Discovery**

2.      Seagate Plaintiffs, Reseller Plaintiffs, and End-User Plaintiffs shall consult in good faith and use reasonable efforts to coordinate all discovery, including both discovery they propound and the resolution of any discovery disputes.  The three Plaintiff Groups shall consult in good faith to serve joint discovery requests, but discovery requests may be served by one group that are not pursued by the others.  To the extent discovery is served separately by any Plaintiff Group, the other Plaintiff Groups shall make reasonable efforts to avoid duplicating discovery requests previously served by any other party.  The three Plaintiff Groups shall work in good faith to coordinate their position on any discovery disputes with the Defendants.  This paragraph in no way prejudices or diminishes any Plaintiff Group's right to serve its own written discovery requests regarding issues that are not pursued by any other plaintiffs, in the event that the parties are unable to propound joint written discovery after consulting in good faith.

3.      The two Defendant Families shall consult in good faith and use reasonable efforts to coordinate discovery, including both discovery they propound and the resolution of any discovery disputes.  The two Defendant Families shall consult in good faith to serve joint discovery requests, but discovery requests may be served by one group that are not pursued by the other.  To the extent discovery is served separately by any Defendant Family, the other Defendant Family shall make reasonable efforts to avoid duplicating discovery requests previously served by any other Defendant. The two Defendant Families shall work in good faith to coordinate their position on any discovery disputes with the Plaintiffs.  This paragraph in no way prejudices or diminishes any Defendant Family's right to serve its own written discovery requests regarding issues that are not pursued by any other defendants, in the event that the parties are unable to propound joint written discovery after consulting in good faith.

**C.    Interrogatories Pursuant to Fed. R. Civ. P. 33(a)**

4.      Each Plaintiff Group may serve up to 20 interrogatories per Defendant Family.  All Plaintiffs will coordinate efforts to avoid serving duplicative and/or unduly burdensome interrogatories consistent with Fed. Rule Civ. Proc. 26.

4

5.      Each of the two Defendant Families may serve up to 20 interrogatories on each of the three Plaintiff Groups.  All Defendants will coordinate efforts to avoid serving duplicative and/or unduly burdensome interrogatories consistent with Fed. Rule Civ. Proc. 26.

**D.      Deposition and Discovery Protocol Provisions**

6.      The parties agree that the protocol and procedures for depositions shall be negotiated between the parties and submitted to the Court for approval.  Except as agreed to by the parties or ordered by the Court, no depositions shall proceed until a deposition protocol has been agreed to by the parties or ordered by the Court.

**E.      Service by E-Mail**

7.      The parties agree that all documents may be served by e-mail and have exchanged applicable e-mail addresses.  The parties agree that e-mail service shall be treated as personal, same-day service for purposes of computing time to act after being served under Fed. R. Civ. P. 6.

**F.      Reservation of Objections**

8.      The fact that this Order alters the number of interrogatories provided for by the Federal Rules of Civil Procedure is not intended to imply consent by any party that any particular discovery is necessary or appropriate or that particular discovery sought within the limits of this Order is not burdensome or excessive.  All parties maintain the right to object to any written discovery pursuant to Rule 26 of the Federal Rules of Civil Procedure, including but not limited to on grounds of relevance, privilege, or to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense.

**G.      Modification of Limits**

9.      Any of the provisions and limits set forth in sections A through F above may be modified by agreement of the parties affected, or by the Court for good cause.

**IT IS SO STIPULATED.**

Dated: May 14, 2020

**BAKER & McKENZIE LLP**

By:/s/ Mark H. Hamer

Mark. H. Hamer (State Bar No. 156997)
mark.hamer@bakermckenzie.com
Mark G. Weiss (*Pro Hac Vice*)
mark.weiss@bakermckenzie.com
815 Connecticut Avenue, NW
Washington, D.C.  20006
Tel.: (202) 452-7000
Fax: (202) 416-7177

Christina M. Wong (State Bar No. 288171)
christina.wong@bakermckenzie.com
Two Embarcadero Center, Suite 1100
San Francisco, California 94111
Tel.: (415) 576-3000
Fax: (415) 576-3099

**HUNTON ANDREWS KURTH LLP**

By:/s/ Craig Y. Lee

Craig Y. Lee (*pro hac vice*)
craiglee@huntonak.com
Carter Simpson (*pro hac vice*)
csimpson@huntonak.com
Emily Bolles (*pro hac vice*)
ebolles@huntonak.com
2200 Pennsylvania Ave., NW
Washington, D.C. 20005
Tel.: (202) 419-2114
Fax: (202) 778-2201

Anne Marie Mortimer (State Bar No. 169077)
amortimer@huntonak.com
550 South Hope Street, Suite 2000
Los Angeles, CA 90071
Tel.: (213) 532-2103
Fax: (213) 532-2020

*Attorneys for Defendants NHK Spring Co., Ltd.,*
*NHK International Corporation, NHK Spring*
*(Thailand) Co., Ltd., NAT Peripheral (Dong*
*Guan) Co., Ltd. and NAT Peripheral (H.K.)*
*Co., Ltd.*

MORGAN, LEWIS & BOCKIUS LLP

By:/s/ J. Clayton Everett, Jr.

J. Clayton Everett, Jr. (pro hac vice)
clay.everett@morganlewis.com
Scott A. Stempel (pro hac vice)
scott.stempel@morganlewis.com
1111 Pennsylvania Ave., N.W.
Washington, D.C. 20004
Tel.: (202) 739-3000
Fax: (202) 739-3001

C. Cecilia Wang, SBN 314125
cecilia.wang@morganlewis.com
One Market, Spear Street Tower
San Francisco, CA 94105
Tel.: (415) 442-1000
Fax: (415) 442-1001

*Attorneys for Defendants TDK Corporation, Magnecomp Precision Technology Public Co. Ltd., Magnecomp Corporation, SAE Magnetics (H.K.) Ltd., Headway Technologies, Inc., and Hutchinson Technology Inc.*

WILSON SONSINI GOODRICH & ROSATI

By:/s/ Kenneth R. O'Rourke

Kenneth R. O'Rourke, SBN 120144
korourke@wsgr.com
Jeff VanHooreweghe, SBN 313371
jvanhooreweghe@wsgr.com
One Market Plaza
Spear Tower, Suite 3300
San Francisco, CA 94105-1126
Tel.: (415) 947-2160
Fax: (415) 947-2099

*Attorneys for Plaintiffs Seagate Technology LLC, Seagate Technology (Thailand) Ltd., Seagate Singapore International Headquarters Pte. Ltd., and Seagate Technology International*

**CUNEO GILBERT & LaDUCA LLP**

By: /s/ Victoria Sims

Victoria Sims (pro hac vice)
vicky@cuneolaw.com
4725 Wisconsin Ave., N.W., Suite 200
Washington, D.C. 20016
Tel.: (202) 789-3960
Fax: (202) 789-1813

**LARSON KING LLP**

By: /s/ Shawn M. Raiter

Shawn M. Raiter
sraiter@larsonking.com
30 E. 7th Street, Suite 2800
St. Paul, MN 55101
Tel.: (651) 312-6500
Fax: (651) 312-6618

*Interim Co-Lead Counsel for Reseller Plaintiffs*

**ROBINS KAPLAN LLP**

By: /s/ Aaron M. Sheanin

Aaron M. Sheanin
asheanin@robinskaplan.com
2440 w. El Camino Real, Suite 100
Mountain View, California 94040
Tel.: (650) 784-4040
Fax: (650) 784-4041

**ZELLE LLP**

By: /s/ Christopher T. Micheletti

Christopher T. Micheletti
cmicheletti@zelle.com
44 Montgomery St., Suite 3400
San Francisco, CA 94104
Tel.: (415) 693-0700
Fax: (415) 693-0770

*Interim Co-Lead Counsel for End-User Plaintiffs*

8

**ATTESTATION**

Pursuant to Civil L. R. 5-1(i)(3), I attest that concurrence in the filing of this document has been obtained from each of the other signatories above.

Dated:  May 14, 2020                                    By:/s/ Mark H. Hamer _____

* * *

**[PROPOSED] ORDER**

**PURSUANT TO STIPULATION, IT IS SO ORDERED**.

Dated: __May 14, 2020__

The Hon. Maxine M. Chesney
United States District Court Judge

# Exhibit L

1

2

3

4

5

6

7                         **UNITED STATES DISTRICT COURT**

8                         **NORTHERN DISTRICT OF CALIFORNIA**

9

| | |
|---|---|
| IN RE: HARD DISK DRIVE SUSPENSION ASSEMBLIES ANTITRUST LITIGATION | Case No. 19-md-02918-MMC |
| | MDL No. 2918 |
| This Document Relates to: | **[PROPOSED]** ~~**AMENDED**~~ **ORDER RE CASE SCHEDULE** |
| ALL CASES | Judge: Hon. Maxine M. Chesney |

15

16          WHEREAS the current case schedule was set forth in ECF No. 430;

17          WHEREAS, the Court considered the Parties' Joint Case Management Statement (ECF

18   No. 497) outlining their respective positions concerning Class Plaintiffs' request for an extension

19   to the case schedule; and

20          WHEREAS, the Court held a Case Management Conference on May 20, 2022:

21          It is hereby **Ordered** that the case schedule shall be amended as follows:

22          1.      The close of fact discovery will be on October 21, 2022;

23          2.      Defendants' Motions for Summary Judgment based on the Foreign Trade Antitrust

24   Improvements Act ("FTAIA") and other laws limiting the extraterritorial reach of U.S. antitrust

25   laws will be due on August 2, 2022;

26          3.      Plaintiffs' Oppositions to Defendants' Motions for Summary Judgment based on

27   the FTAIA and other laws limiting the extraterritorial reach of U.S. antitrust laws will be due on

28   October 14, 2022;

1      4.    Defendants' Replies in Support of their Motions for Summary Judgment based on

2 the FTAIA and other laws limiting the extraterritorial reach of U.S. antitrust laws will be due on

3 December 7, 2022;

4      5.    Class Plaintiffs' Motions for Class Certification and expert reports in support of

5 class certification will be due on September 27, 2022;

6      6.    Defendants' Oppositions to Motions for Class Certification and expert reports in

7 opposition to class certification will be due on November 22, 2022;

8      7.    Class Plaintiffs' Replies and expert rebuttal reports in support of their Motions for

9 Class Certification will be due on January 31, 2023; and

10      8.    A Case Management Conference shall take place on March 31, 2023, with the

11 Parties' Joint Case Management Statement due by March 24, 2023.

Dated:  May 27, 2022

Hon. Maxine M. Chesney
United States District Judge

# Exhibit M

Case 4:20-cv-00957-SDJ    Document 574-2    Filed 07/19/24    Page 106 of 116 PageID
#: 19324
Case 2:16-md-02724-CMR    Document 1643    Filed 07/12/19    Page 2 of 3

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION | MDL No. 2724<br>Case No. 2:16-MD-02724 |
| THIS DOCUMENT RELATES TO: | Hon. Cynthia M. Rufe |
| *ALL ACTIONS* | |

## [PROPOSED] PRETRIAL ORDER NO. 96

### (Allowing Written Discovery to Proceed; Limited Stay of Depositions)

This 12th day of July , 2019, it is hereby **ORDERED** that:

1.     The terms outlined below shall apply until **November 8, 2019**.

2.     Initial disclosures remain stayed (as per PTO No. 44).

3.     All types of written discovery, including requests for production of documents, interrogatories, and requests for admissions, may be served.

4.     The parties shall provide a copy of proposed written discovery requests to the U.S. Department of Justice 10 business days before serving any discovery requests. If the United States objects to any proposed written discovery request, the United States will notify the party of the basis for the objection, and if necessary, bring that objection to the Special Master for resolution pursuant to PTO No. 68 ("Special Masters' Protocol"). The proposed discovery shall be stayed pending resolution.

5.     Depositions in all actions are stayed, except: (a) depositions as provided in paragraph 2 of PTO 44; (b) depositions of individuals on a list that the U.S. Department of Justice shall provide to the parties by August 16, 2019.

1

6.     The parties shall not seek and shall not respond to discovery about the criminal investigation that the Antitrust Division of the U.S. Department of Justice is conducting into the generic pharmaceuticals industry;

7.     A person responding to a discovery request (e.g., subpoena, request for production of documents, notice of deposition) ("Responding Person") shall not disclose what documents or other information has been provided to the Department of Justice in the course of its criminal investigation into the generic pharmaceuticals industry, provided that nothing in this paragraph requires any modification of any document control number or other endorsement on a document, nor prohibits or excuses a Responding Person from providing documents or other information that previously had been provided to the Department of Justice.

8.     Nothing in this Order precludes a party or subpoenaed party from objecting to, moving to quash, or seeking a protective order excusing a response to any discovery request, provided the objection is made in good faith.

It is so **ORDERED.**

BY THE COURT

CYNTHIA M. RUFE, J.

# Exhibit N

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION** | **MDL 2724**<br>**16-MD-2724** |
| **THIS DOCUMENT RELATES TO:** | **HON. CYNTHIA M. RUFE** |
| ***ALL ACTIONS*** | |

**PRETRIAL ORDER NO.  217
(AMENDING PRETRIAL ORDER NO. 188)
( SCHEDULE OF PROCEEDINGS IN BELLWETHER CASES)**

**AND NOW**, this 13th day of October, 2022, after discussion with the parties during the October 13, 2022 General Status Conference, it is hereby **ORDERED** that the deadlines set forth in Pretrial Order No. 188 for the **Bellwether Cases** are **AMENDED** as follows:

1. Fact discovery shall be completed no later than **June 1, 2023**.

2. Plaintiffs shall serve all expert reports and file applicable motions for class certification no later than **July 5, 2023**.

3. Depositions of Plaintiffs' experts shall be completed no later than **September 14, 2023**.

4. Defendants shall serve all expert reports and file responses to motions for class certification (with any expert reports in support thereof) and *Daubert* motions as to Plaintiffs' experts no later than **October 2, 2023**.

5. Depositions of Defendants' experts shall be completed no later than **December 18, 2023**.

6. Plaintiffs shall serve all rebuttal expert reports and file replies in support of class certification, responses to Defendants' *Daubert* motions, and *Daubert* motions as to Defendants' experts no later than **January 10, 2024**.

7. Depositions of Plaintiffs' new rebuttal experts, if any, shall be completed no later than **February 12, 2024**.

8. Defendants shall file sur-replies in opposition to class certification and responses in opposition to Plaintiffs' *Daubert* motions no later than **February 26, 2024**.

9. Plaintiffs shall file any further replies in support of class certification no later than **March 13, 2024**.

10. The Court will schedule hearings on class certification and *Daubert* motions for dates to be determined in **April 2024**.

11. All motions for summary judgment regarding the State Plaintiffs' bellwether case shall be filed no later than **March 13, 2024**.

12. All motions for summary judgment regarding the DPPs' and EPPs' bellwether cases shall be filed no later than **April 15, 2024**.

13. Responses to a motion for summary judgment shall be filed 60 days after the motion is filed.

14. Replies to a motion for a summary judgment shall be filed 30 days after the response is filed.

15. Oral argument on motions for summary judgment will be scheduled at the discretion of the Court.

16. Pretrial planning conferences, including with regard to *Lexecon*, will be scheduled at a later time in consultation with counsel.

17. Witnesses, including expert witnesses, shall be deposed no more than once, unless by agreement of the parties or by order of the Court for good cause shown. All disputes regarding depositions, including the length of the deposition of a particular witness, are referred in the first instance to Special Discovery Master Bruce Merenstein and whenever possible should be resolved before the witness is deposed.

It is so **ORDERED**.

**BY THE COURT**

**/s/ Cynthia M. Rufe**

_____
  **CYNTHIA M. RUFE, J.**

# Exhibit O

**Archived:** Thursday, November 3, 2022 1:01:21 PM
**From:** Jason Zweig
**Sent:** Sunday, October 23, 2022 5:18:18 PM
**To:** Zeke DeRose; MCCALLUM, Robert
**Cc:** MAHR, Eric (EJM); Justina Sessions; mevansaziz@wsgr.com; BAYOUMI, Jeanette; Philip Korologos; Dena C. Sharp; Jordan Elias; Henry Kelston; Ted Maya; Stuart Davidson; Serina Vash; Eric Maier; Daniel Bird; Zelcs, George; Martha Reiser; Andrew Huynh; bsukiennik@cravath.com
**Subject:** RE: Google AdTech MDL: PLA's Proposed Case Management Plan & Scheduling Order
**Sensitivity:** Normal

---

Thanks for sending these Zeke.

Rob, we can discuss further when we speak, but in terms of the length of the discovery period, plaintiffs have offered 18 months as a compromise, which we hope defendants will accept. If not, it is plaintiffs' intention to request a 15 month discovery period in the PLA's submission to the Court that is due on October 31.

**Jason Zweig**
Partner

Keller | Postman
150 N. Riverside Plaza, Suite 4100 | Chicago, IL, 60606
312.216.8667 ? | Email ? | Bio | Website

---

**From:** Zeke DeRose III <Zeke.DeRose@LanierLawFirm.com>
**Sent:** Saturday, October 22, 2022 2:27 AM
**To:** MCCALLUM, Robert <rob.mccallum@freshfields.com>
**Cc:** MAHR, Eric (EJM) <Eric.MAHR@freshfields.com>; Justina Sessions <jsessions@wsgr.com>; mevansaziz@wsgr.com; BAYOUMI, Jeanette <Jeanette.Bayoumi@freshfields.com>; Philip Korologos <Pkorologos@BSFLLP.com>; Jason Zweig <jaz@kellerpostman.com>; Dena C. Sharp <dsharp@girardsharp.com>; Jordan Elias <jelias@girardsharp.com>; Henry Kelston <hkelston@ahdootwolfson.com>; Ted Maya <tmaya@ahdootwolfson.com>; Stuart Davidson <sdavidson@rgrdlaw.com>; Serina Vash <svash@hermanjones.com>; Eric Maier <emaier@kellogghansen.com>; Daniel Bird <dbird@kellogghansen.com>; Zelcs, George <GZelcs@KoreinTillery.com>; Martha Reiser <mreiser@cravath.com>; Andrew Huynh <ahuynh@cravath.com>; bsukiennik@cravath.com
**Subject:** Re: Google AdTech MDL: PLA's Proposed Case Management Plan & Scheduling Order

Rob,

I have attached a response from the plaintiffs to the Case Management Plan. Please let us know if you and Meta have time to discuss the edits/changes on Monday or Tuesday.

Zeke

---

**From:** Zeke DeRose III <Zeke.DeRose@LanierLawFirm.com>
**Date:** Wednesday, October 12, 2022 at 12:33 AM
**To:** "MCCALLUM, Robert" <rob.mccallum@freshfields.com>

**Cc:** "MAHR, Eric (EJM)" <Eric.MAHR@freshfields.com>, Justina Sessions <jsessions@wsgr.com>, "mevansaziz@wsgr.com" <mevansaziz@wsgr.com>, "BAYOUMI, Jeanette" <Jeanette.Bayoumi@freshfields.com>, Philip Korologos <Pkorologos@BSFLLP.com>, Jason Zweig <jaz@kellerpostman.com>, "Dena C. Sharp" <dsharp@girardsharp.com>, Jordan Elias <jelias@girardsharp.com>, Henry Kelston <hkelston@ahdootwolfson.com>, Ted Maya <tmaya@ahdootwolfson.com>, Stuart Davidson <sdavidson@rgrdlaw.com>, Serina Vash <svash@hermanjones.com>, "Maier, Eric J." <emaier@kellogghansen.com>, "Bird, Daniel G." <dbird@kelloghansen.com>, "Zelcs, George" <GZelcs@KoreinTillery.com>
**Subject:** Re: Google AdTech MDL: PLA's Proposed Case Management Plan & Scheduling Order

Great. Thank y'all for accommodating. Invite to follow.

---

**From:** "MCCALLUM, Robert" <rob.mccallum@freshfields.com>
**Date:** Tuesday, October 11, 2022 at 5:45 PM
**To:** Zeke DeRose III <Zeke.DeRose@LanierLawFirm.com>
**Cc:** "MAHR, Eric (EJM)" <Eric.MAHR@freshfields.com>, Justina Sessions <jsessions@wsgr.com>, "mevansaziz@wsgr.com" <mevansaziz@wsgr.com>, "BAYOUMI, Jeanette" <Jeanette.Bayoumi@freshfields.com>, Philip Korologos <Pkorologos@BSFLLP.com>, Jason Zweig <jaz@kellerpostman.com>, "Dena C. Sharp" <dsharp@girardsharp.com>, Jordan Elias <jelias@girardsharp.com>, Henry Kelston <hkelston@ahdootwolfson.com>, Ted Maya <tmaya@ahdootwolfson.com>, Stuart Davidson <sdavidson@rgrdlaw.com>, Serina Vash <svash@hermanjones.com>, "Maier, Eric J." <emaier@kellogghansen.com>, "Bird, Daniel G." <dbird@kellogghansen.com>, "Zelcs, George" <GZelcs@KoreinTillery.com>
**Subject:** RE: Google AdTech MDL: PLA's Proposed Case Management Plan & Scheduling Order

Zeke – Monday from 3pm to 4pm ET works for us.  Look forward to speaking with you then.

Kind regards,
Rob

---

**From:** Zeke DeRose III <Zeke.DeRose@LanierLawFirm.com>
**Sent:** Tuesday, October 11, 2022 4:33 PM
**To:** MCCALLUM, Robert <rob.mccallum@freshfields.com>
**Cc:** MAHR, Eric (EJM) <Eric.MAHR@freshfields.com>; Justina Sessions <jsessions@wsgr.com>; mevansaziz@wsgr.com; BAYOUMI, Jeanette <Jeanette.Bayoumi@freshfields.com>; Philip Korologos <Pkorologos@BSFLLP.com>; Jason Zweig <jaz@kellerpostman.com>; Dena C. Sharp <dsharp@girardsharp.com>; Jordan Elias <jelias@girardsharp.com>; Henry Kelston <hkelston@ahdootwolfson.com>; Ted Maya <tmaya@ahdootwolfson.com>; Stuart Davidson <sdavidson@rgrdlaw.com>; Serina Vash <svash@hermanjones.com>; Maier, Eric J. <emaier@kellogghansen.com>; Bird, Daniel G. <dbird@kelloghansen.com>; Zelcs, George <GZelcs@KoreinTillery.com>
**Subject:** Re: Google AdTech MDL: PLA's Proposed Case Management Plan & Scheduling Order

Rob,

It looks like schedules and court appearances are pretty backed-up the next few days. Any chance this next Monday (Oct 17) from 2-4pm ET works for y'all?

That timeframe might allow your West Coast team to join as well.

If 2-4pm ET doesn't work, let me know what does and we will get a smaller group on the call so we can move things forward.

*As an aside, we have confirmation that the draft of the Case Management Plan circulated Friday has sign off from all plaintiffs (including all plaintiff states).

Thanks again,

Zeke

---

**From:** "MCCALLUM, Robert" <rob.mccallum@freshfields.com>
**Date:** Monday, October 10, 2022 at 1:57 PM
**To:** Zeke DeRose III <Zeke.DeRose@LanierLawFirm.com>
**Cc:** PLA-GoogleAdTech <PLA-GoogleADTech@mail-list.com>, "MAHR, Eric (EJM)" <Eric.MAHR@freshfields.com>, Justina Sessions <jsessions@wsgr.com>, "mevansaziz@wsgr.com" <mevansaziz@wsgr.com>, "BAYOUMI, Jeanette" <Jeanette.Bayoumi@freshfields.com>
**Subject:** RE: Google AdTech MDL: PLA's Proposed Case Management Plan & Scheduling Order

Zeke –

Thanks for your email.  Please do let us know when you have confirmation from all of the states that they are signed off on the revised draft.

Google is available to discuss on Wednesday from 12pm to 2pm and from 3pm to 4pm (ET).  Please let us know if one of those slots will work for you.

Kind regards,
Rob

---

**From:** Zeke DeRose III <Zeke.DeRose@LanierLawFirm.com>
**Sent:** Friday, October 7, 2022 8:12 PM
**To:** MAHR, Eric (EJM) <Eric.MAHR@freshfields.com>; Justina Sessions <jsessions@wsgr.com>; MCCALLUM, Robert <rob.mccallum@freshfields.com>
**Cc:** PLA-GoogleAdTech <PLA-GoogleADTech@mail-list.com>
**Subject:** Re: Google AdTech MDL: PLA's Proposed Case Management Plan & Scheduling Order

Eric,

We provided the draft Case Management Plan to Google last Friday, and at the same time (in accordance with PTO2) provided the draft to the Individual Action plaintiffs for comment.

The PLA has worked with the Individual Action plaintiffs and have incorporated their comments and the comments of all plaintiffs into the attached redline. (The redline is made to the version sent to Google last Friday.)

The attached document has input from all plaintiff groups. In the interest of getting Google a draft for negotiations, we are waiting on final sign off regarding the most recent tweaks/edits from some of the states and they have a negative option that expires Monday. (We expect all states to consent to the most recent edits, and this draft to represent the proposal from all plaintiffs (private and state)).

As you will see, some of the changes are simply reorganizing provisions or edits for consistency (e.g., combining paragraph 6 with paragraph 3, making references to the number of parties, etc.), and two of the paragraphs (1 and 12) have a substantive edit.

**<u>Please let us know if Google is available this Wednesday, October 12 to being initial</u>**

**discussions regarding the Case Management Plan and Scheduling Order.**

As always, please feel free to call. And have a great weekend.

Zeke

Zeke DeRose III - Attorney p: 713-659-5200 w: www.LanierLawFirm.com

---

**From:** Zeke DeRose III <Zeke.DeRose@LanierLawFirm.com>
**Date:** Friday, September 30, 2022 at 2:38 PM
**To:** "MAHR, Eric (EJM)" <Eric.MAHR@freshfields.com>, "Sessions, Justina" <jsessions@wsgr.com>, "MCCALLUM, Robert" <rob.mccallum@freshfields.com>
**Cc:** PLA-GoogleAdTech <PLA-GoogleADTech@mail-list.com>
**Subject:** Google AdTech MDL: PLA's Proposed Case Management Plan & Scheduling Order

Eric,

I hope you are doing well and the weather isn't too bad in D.C. from the hurricane.

We have included in the "cc" line a listserv that includes the Plaintiffs' Lead Attorneys (Mark Lanier, David Boies, Dena Sharp, and Tina Wolfson) to help ensure folks don't get left off emails when it's intended for the PLA. This list also includes others from their teams to make sure nothing slips through.

I have attached a draft of the PLA's proposed Case Management Plan and Scheduling Order. In accordance with Judge Castel's direction, we are simultaneously sending the draft to the Individual Action plaintiffs for consideration and negotiation.

It is our understanding that we have until October 29th to submit our proposal to the Court. (We are aiming for Friday, October 28, 2022 to submit the draft.) We have drafted the Case Management Plan and Scheduling Order based on Judge Castel's model order, his guidance in paragraph 6 of PTO2 (Dkt. No. 309), and any unique issues to the case.

We look forward to open and productive conversations and negotiations around the Plan and are happy to jump on a call sooner rather than later to discuss.

Please let us know who we should include on those calls/correspondence and when you would like to have an initial call.

Have a good and safe weekend.

Zeke

**Zeke DeRose III**
**Attorney**
p: 713-659-5200

The **Lanier** Law Firm

10940 West Sam Houston Pkwy N, Suite 100
Houston • Texas • 77064
www.LanierLawFirm.com

---

This e-mail is confidential and may be legally privileged. If you have received it in error, you are on notice of its status. Please notify us immediately by reply e-mail and then delete this message from your system. Please do not copy it, use it for any purpose or disclose its contents to any other person; to do so could be a breach of confidentiality. Thank you for your cooperation. Please contact our IT Helpdesk at GlobalITServiceDesk@freshfields.com if you need assistance.

Freshfields Bruckhaus Deringer US LLP has offices in New York, Silicon Valley and Washington, DC. Freshfields Bruckhaus Deringer LLP is a limited liability partnership registered in England and Wales with registered number OC334789, and has offices or associated entities in Austria, Bahrain, Belgium, China, England, France, Germany, Hong Kong, Italy, Japan, the Netherlands, Singapore, Spain, the United Arab Emirates and Vietnam.

Any reference to a partner means a member, or a consultant or employee with equivalent standing and qualifications, of Freshfields Bruckhaus Deringer US LLP, Freshfields Bruckhaus Deringer LLP or any associated firms or entities.

For information about how Freshfields Bruckhaus Deringer processes personal data please refer to this Privacy notice. For further information about Freshfields Bruckhaus Deringer, please refer to our website at www.freshfields.com.

This e-mail is confidential and may be legally privileged. If you have received it in error, you are on notice of its status. Please notify us immediately by reply e-mail and then delete this message from your system. Please do not copy it, use it for any purpose or disclose its contents to any other person; to do so could be a breach of confidentiality. Thank you for your cooperation. Please contact our IT Helpdesk at GlobalITServiceDesk@freshfields.com if you need assistance.

Freshfields Bruckhaus Deringer US LLP has offices in New York, Silicon Valley and Washington, DC. Freshfields Bruckhaus Deringer LLP is a limited liability partnership registered in England and Wales with registered number OC334789, and has offices or associated entities in Austria, Bahrain, Belgium, China, England, France, Germany, Hong Kong, Italy, Japan, the Netherlands, Singapore, Spain, the United Arab Emirates and Vietnam.

Any reference to a partner means a member, or a consultant or employee with equivalent standing and qualifications, of Freshfields Bruckhaus Deringer US LLP, Freshfields Bruckhaus Deringer LLP or any associated firms or entities.

For information about how Freshfields Bruckhaus Deringer processes personal data please refer to this Privacy notice. For further information about Freshfields Bruckhaus Deringer, please refer to our website at www.freshfields.com.