# EXHIBIT Q

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

---

**FEDERAL TRADE COMMISSION**,

                    Plaintiff,

            v.

**META PLATFORMS, INC.**

                    Defendant.

---

Civil Action No. 1:20-cv-03590 (JEB)

## JOINT CIVIL RULE 16.3 REPORT TO THE COURT

In accordance with Federal Rule of Civil Procedure 26(f) and Civil Local Rule 16.3, Plaintiff Federal Trade Commission ("FTC") and Defendant Meta Platforms, Inc. ("Meta") have met and conferred, and hereby submit this Joint Meet and Confer Statement and proposed Scheduling and Case Management Order to the Court.  *See* Ex. A (FTC Proposed Scheduling Order), Ex. B (Meta Proposed Scheduling Order).[1]

    **1.**    **Service of Complaint.**  Counsel for Meta has accepted service of the Complaint and waived formal service of a summons.

    **2.**    **Initial Disclosures.**  The Parties exchanged initial disclosures on February 22, 2022.

    **3.**    **Local Rules 16.3(c)(1), 16.3(c)(4), 16.3(c)(5).**

      a)  Likelihood of Disposal by Dispositive Motion.

---

[1] Where the Parties are in agreement, their agreed position is as stated in the numbered paragraphs.  Where they disagree, their respective positions and explanations for their positions are set forth separately in the numbered paragraphs.

***Plaintiff's Position***:  Plaintiff does not anticipate that any motions for summary judgment that might be filed will impact the scope or timing of discovery.

***Defendant's Position***:  Meta anticipates it will file a motion or motions for summary judgment and reserves its rights as to the timing of the motion or motions.

b) <u>Settlement</u>.  The Parties do not believe that settlement discussions would be useful to engage in at this time.

c) <u>ADR</u>.  The Parties have considered the possibility of using alternative dispute resolution procedures but do not believe that ADR would be useful to engage in at this time.  At a later time, the Parties will confer regarding whether mediation may be appropriate.

d) <u>Bifurcation</u>.

***Plaintiff's Position***:  The parties should proceed expeditiously to a trial that deals exclusively with liability issues.  Following the liability trial, Plaintiff anticipates a separate remedy hearing. The provisions set forth below relating to discovery shall not apply to any additional discovery to facilitate a remedy phase.  The parties should meet and confer at an appropriate time and submit to the Court, no later than five weeks prior to the final pretrial conference, proposals for an amended or separate Case Management Order governing the remedy phase.

***Defendant's Position***:  Meta submits that only fact and expert discovery on liability issues should be scheduled at this time.  Additional scheduling is premature, including scheduling relating to a subsequent remedies phase, if any is required.  Such proceedings will be unnecessary if Plaintiff fails to prove its case

as to liability.  Plaintiff's proposal that the Parties confer on a Case Management Order for a remedies phase "no later than five weeks prior to the final pretrial conference" for the liability phase is unnecessary, disruptive, and premature. Only after the Court has ruled on the liability issues should any additional proceedings be scheduled, as the Court's rulings will likely affect the scope and timing of any such subsequent phase if one is required.  Meta is aware of no instance, and Plaintiff has cited none, where the Court has entered a Case Management Order relating to a separate remedies phase prior to a liability determination.  Plaintiff has given no reason why these additional proceedings need to be scheduled prior to a liability determination.

4.    **Discovery Conference.**  The Parties have met and conferred pursuant to Federal Rule of Civil Procedure 26(f) and Local Rule 16.3. The Parties discussed proposals for a Scheduling and Case Management Order, as well as proposals for an ESI Order, a 502(d) Order, and a Protective Order.  These discussions satisfied the Parties' obligation under Federal Rule of Civil Procedure 26(f) and Local Rule 16.3.

5.    **Case Schedule.**  The Parties' respective scheduling proposals, including for fact discovery, are set forth below.

***Plaintiff's Position*:**

The Federal Trade Commission seeks a prompt end to the ongoing conduct through which Meta unlawfully maintains its monopoly power.  Accordingly, the FTC requests that the Court set a trial date, and adopt other procedural mechanisms (described herein), to efficiently advance discovery and expeditiously resolve the FTC's claims.  Meta – predictably – seeks

delay, and thus seeks to transform the FTC's suit into a lengthy and unnecessarily expansive campaign.[2]  This is not warranted or in the public interest.

Plaintiff's proposed schedule is appropriate in light of the "special urgency" that applies to government suits that "seek to enjoin ongoing anticompetitive conduct."  *United States v. Dentsply Int'l, Inc.*, 190 F.R.D. 140, 145 (D. Del. 1999).  Plaintiff's reasonable proposals further the public interest in promptly addressing ongoing anticompetitive conduct, and are consistent with the FTC's recent experience in complex antitrust cases seeking injunctive relief to remedy ongoing monopolization.  *See* Scheduling Order at 2, *FTC v. Surescripts*, 1:19-cv-01080-JDB, (D.D.C. Feb. 28, 2020), ECF No. 54 (providing approximately 11 months from start of discovery to close of fact discovery); Case Management Order at 2, *FTC v. Qualcomm,* 5:17-cv-00220-LHK, (N.D. Cal. Apr. 19, 2017), ECF No. 75 (providing approximately 11 months from Case Management Order to close of fact discovery, and approximately 20 months from Case Management Order to trial).  The fact that the parties in *United States v. Google* agreed to a different schedule provides no reason for delay, where the FTC believes a more rapid resolution

---

[2] Prompt resolution of the FTC's claims will speed the efficient resolution of litigation throughout the country, as Meta seeks to leverage delay in the FTC case to postpone even distantly related lawsuits that present "different theories."  *See* Seventh Joint Case Management Statement at 12-13, *Klein v. Meta Platforms, Inc.*, 3:20-cv-08570-JD (N.D. Cal. Feb. 17, 2022) ECF No. 227 (Meta seeks delayed resolution of an earlier-filed private class action despite "different theories presented in [the FTC's complaint] and private plaintiff actions").  The FTC noticed the *Klein* case as a related action because a class of consumers alleged that Meta employed a "Copy, Acquire, Kill" strategy to maintain monopoly power in a Social Network Market.  On January 14, 2022, the *Klein* court held that the consumer plaintiffs adequately alleged that Meta possessed monopoly power in the relevant market, but dismissed the consumer plaintiffs' "Copy, Acquire, Kill" claims as untimely.  The *Klein* consumer plaintiffs recently informed the district court that they will not seek to amend those claims; a class of advertisers will amend its claims that Meta maintained power in a Social Advertising Market.  *Id.* at 4.  In *Klein*, the only remaining claims that allege that Meta maintained monopoly power in a Social Network Market are based on the consumer class' claim that Meta made "false representations about its data privacy."  *See id* at 3.

is feasible.  Indeed, Plaintiff's proposed trial schedule provides a reasonable midpoint between *Google,* Scheduling and Case Management Order at 3-7, *United States v. Google, LLC*, 1:20-cv-03010-APM (D.D.C. Dec. 21, 2020), ECF No. 85 (approximately 33 months from CMO to trial), and *Microsoft,* in which the government filed its complaint on May 18, 1998, and began trial *five months* later on October 19, 1998.  *United States v. Microsoft*, 253 F.3d 34, 47 (D.C. Cir. 2001).

Plaintiff's proposed schedule is achievable in this matter, particularly if the Court adopts the efficiency-enhancing measures Plaintiff proposes below, such as interim deadlines to ensure that disputes regarding third party discovery do not delay the Court's schedule.  *See, e.g.*, *FTC v. Qualcomm*, 5:17-cv-00220-LHK (N.D. Cal., Nov. 15, 2017), ECF No. 308 (setting deadlines for briefing disputes regarding third party discovery and deadlines to complete third party productions).  These commonsense proposals should address Meta's speculation that the parties or/and third parties will be unable to resolve any discovery disputes in a timely fashion.  Fed. R. Civ. P. 16(c)(2)(L); *see also id.* at (c)(2)(P) (the Court may take appropriate action to manage "potentially difficult or protracted actions" and facilitate "the just, speedy, and inexpensive disposition of the action").

Another measure the Court should adopt is to set a trial date in the Case Management Order, just as other courts have done in recent complex antitrust cases involving government plaintiffs.  *See* Scheduling and Case Management Order at 10, *United States v. Google, LLC*, 1:20-cv-03010-APM (D.D.C. Dec. 21, 2020), ECF No. 85; Case Management Order at 2, *FTC v. Qualcomm,* 5:17-cv-00220-LHK (N.D. Cal. Apr. 19, 2017), ECF No. 75.  A fixed trial date provides numerous benefits: among other benefits, a fixed trial date motivates parties and third parties to resolve any disputes expeditiously.  Indeed, Meta argues that the FTC's proposed discovery schedule is unrealistic based on the fact that the court extended the discovery schedule

in *FTC v. Surescripts*, but ignores the fact that the *Surescripts* court did not set a trial date in its CMO. In *FTC v. Qualcomm*, the court set a trial date in the CMO, and trial began precisely as scheduled. Case Management Order, *FTC v. Qualcomm,* 5:17-cv-00220-LHK (N.D. Cal. Apr. 19, 2017), ECF No. 75.

Contrary to Meta's assertions, the FTC's discovery requests do not necessitate a lengthy discovery period, but rather, underscore the FTC's ability and desire to move forward with discovery expeditiously. The FTC has already served its first set of Requests for Production (on February 15, 2022) and is ready to meet and confer promptly with Meta, including with respect to a proposed scope of production. Nor does Meta's remarkable claim that it needs to burden nearly 300 third parties with discovery requests warrant a lengthy discovery period. While Meta claims it competes with virtually every other internet service or mode of communication, *see, e.g.*, Mem. in Supp. of Facebook, Inc.'s Mot. to Dismiss FTC's Compl. at 18, ECF No. 56-1, it is doubtful that discovery from such an extensive list of third parties is warranted in this matter. Further, Meta cannot be heard to object to the FTC's proposed mechanisms to efficiently handle third-party discovery on the one hand, and then use its own opposition to such mechanisms as a basis to seek a longer discovery period on the other.

Meta's request for an extended expert deposition period is likewise unwarranted and inconsistent with the FTC's recent experience. Meta suggests that the parties may have a total of twelve experts, but this is speculative, and in any event would not require three full months for expert depositions. In *FTC v. Qualcomm*, the parties prepared at least 12 expert reports, and the expert deposition period was 4 weeks, just as Plaintiff proposes here. Case Management Order, *FTC v. Qualcomm,* 5:17-cv-00220-LHK (N.D. Cal. Apr. 19, 2017), ECF No. 75.

For these reasons, Plaintiff proposes the following schedule for fact discovery, expert

discovery, and trial:

| Scheduled Event | Calculation of Date | Date |
|---|---|---|
| Defendant's Answer | | Jan. 25, 2022 |
| Fact discovery commences | | Feb. 7, 2022 |
| Deadline to amend pleadings/join additional Parties as of right | | Feb. 15, 2022 |
| Initial Disclosures | | Feb. 22, 2022 |
| FTC to substantially complete production of investigative file | | Feb. 24-28, 2022 |
| Deadline to file any motions to compel in connection with disputes with third parties regarding documents and data discovery | | July 11, 2022 |
| Deadline to complete production of third party documents and data | | Oct. 3, 2022 |
| Close of fact discovery | 53 weeks after start of fact discovery | Jan. 13, 2023 |
| Plaintiffs serve opening expert disclosures in accordance with Rule 26(a)(2)(B) | 6 weeks after fact discovery ends | Feb. 24, 2023 |
| Defendant's expert reports | 14 weeks after fact discovery ends | April 21, 2023 |
| Plaintiff's rebuttal expert report(s) | 22 weeks after fact discovery ends | June 16, 2023 |
| Close of expert discovery | 26 weeks after fact discovery ends | July 14, 2023 |
| Deadline for summary judgment or *Daubert* motions | 2 weeks after expert discovery ends | July 28, 2023 |
| Deadline for oppositions summary judgment or *Daubert* motions | 3 weeks after summary judgment or *Daubert* motion(s) | Aug. 18, 2023 |
| Deadline for replies concerning summary judgment and D*aubert* motions | 10 days after *Daubert* or summary judgment oppositions | Aug. 28, 2023 |
| Final Pretrial Conference | | Nov. 9, 2023 |
| Trial begins | | Dec. 11, 2023 |

### ***Defendant's Position*:**

Meta submits that the Plaintiff's schedule is unrealistic as well as unfair to Meta, and that

the following schedule is appropriate for the reasons stated below:

| Event | Calculation of Date | Date |
|---|---|---|
| Deadline to amend pleadings or add parties | | Feb. 15, 2022 |
| Parties exchange Rule 26(a)(1) initial disclosures | | Feb. 22, 2022 |
| Plaintiff to produce investigative file | | Feb. 24-28, 2022 |
| Close of fact discovery | 15 months from CMO | May 29, 2023 |
| Plaintiff's opening expert reports | 16.5 months from CMO | July 13, 2023 |
| Defendant's expert reports | 18.5 months from CMO | Sept. 12, 2023 |
| Plaintiff's rebuttal expert report(s) | 20.5 months from CMO | Nov. 14, 2023 |
| Close of expert discovery | 23.5 months from CMO | Feb. 13, 2024 |

Scheduling beyond the completion of expert discovery is contrary to the Court's practice, premature, and inefficient.  *See, e.g.*, Rule 16 Scheduling Conf. Tr., ECF No. 68, at 2:23-24, 3:11-12, *Grant v. Entm't Cruises*, No. 17-cv-01159-JEB (D.D.C. Aug. 8, 2018); Scheduling Order, ECF No. 30, *White v. Edgewood Mgmt. Corp.*, No. 19-cv-02508-JEB (D.D.C. May 15, 2020) (scheduling only through post-discovery status hearing despite *joint* proposal for post-discovery dispositive motion deadlines and a pretrial conference date).  There is no reason to depart from the Court's usual practice here.  The FTC's stated demand for expedition is inconsistent with its long delay in challenging mergers that occurred 10 (Instagram) and 8 (WhatsApp) years ago, its 18-month pre-filing investigation, and its request for extensions even after it filed its complaint.  The Court should set a trial date only after it has resolved summary judgment motions, which may dispose of the FTC's claims in their entirety or limit the scope of any claims that remain for trial.  Given the complex and extensive pretrial proceedings that must be completed before any trial can occur, any date set now would likely be unrealistic and illusory, and helpful to neither the Parties nor the Court.

Beyond that, the main points of disagreement between the Parties as to the case schedule are the length of fact discovery (Meta proposes 15 months, while Plaintiff proposes 10 months)

and the length of expert discovery (Meta proposes 8.5 months, while Plaintiff proposes 4.5 months).

Meta believes that its proposals are reasonable for the following reasons.

*First*, Meta is not seeking an extended schedule. On the contrary, the time period for discovery proposed in Meta's schedule is similar to what the Court has regularly set for ordinary, less complex actions. *See*, *e.g.*, Scheduling Order, ECF No. 33 (June 20, 2011) and Minute Order (June 27, 2013), *United States v. Speqtrum, Inc*, No. 10-cv-2111-JEB (D.D.C. Compl. filed Dec. 13, 2010) (just over 24.5 months between initial scheduling order and close of discovery); Scheduling Order, ECF No. 63 (June 5, 2012), Minute Order (Aug. 23, 2013), Minute Order (Dec. 12, 2013), and Minute Order (June 23, 2014), *SEC v. E-Smart Techs., Inc.*, No. 11-cv-895-JEB (D.D.C. Compl. filed May 13, 2011) (just under 16 months between initial scheduling order and close of fact discovery; 10 months between close of fact discovery and close of expert discovery). The FTC is effectively proposing that Meta should be limited to only about two thirds of the usual period for discovery, for no reason other than what its attorneys claimed was a "marching order" from superiors to make sure that the case is tried by a certain (artificial) deadline: December 2023.[3]

*Second*, this case is unusually complex and unprecedented – an obvious and undisputed point. The FTC seeks, for the first time ever, to dismantle a company based on acquisitions that it reviewed and cleared, and that Meta completely integrated, many years ago. The FTC's allegations cover more than a decade and touch nearly every aspect of Meta's business. While the supposed antitrust violation is limited to 2 acquisitions, the FTC's proposed market definition

---

[3] The FTC attorneys gave this explanation during the Parties' telephonic Rule 26(f) conference on February 7, 2022.

and monopoly power allegations involve a constellation of issues relating to everything Meta and its many competitors have done from at least 2012 until the present, as well as similarly complex issues regarding future competition in the fast-changing world of technology. *See United States v. Microsoft Corp.*, 253 F.3d 34, 49 (D.C. Cir. 2001) (en banc) ("Rapid technological change leads to markets in which firms compete through innovation for temporary market dominance, from which they may be displaced by the next wave of product advancements.").

Discovery will be necessary on many issues, including the nature and identity of competitors over a period of more than a decade; Meta's ability (or inability) to raise prices, restrict output, or reduce quality over that same extended period; Meta's acquisitions of Instagram and WhatsApp and their actual *effect* on competition and consumers; and the basis (or lack of basis) for the FTC's contention that consumers would have materially better products but for those acquisitions. The FTC has demonstrated by its actions that it recognizes the need for extensive discovery, both as to subject matter and timing. On February 15, the FTC served 40 requests for production (some of which contain up to 12 subparts), that span a broad range of issues and the time period from 2009 to the present (some from 2007 to the present). The FTC's new requests are significantly broader than what the agency requested during the investigation, in which document production occurred over 18 months. For example, one of the FTC's current requests calls for "all documents relating to the Company's revenues." While this and other requests are unwarranted, and will likely be contested, they underscore the Parties' joint recognition of the extraordinary breadth of necessary discovery in this case.

The FTC recognizes the case will be "potentially difficult or protracted," but suggests – without any support – that adopting numerous additional procedural requirements inconsistent with the Federal Rules of Civil Procedure will somehow expedite discovery. That is wishful

thinking, as imposing untested attempts to re-write the Federal Rules of Civil Procedure is more likely to spawn time-consuming disputes than streamline the extensive discovery that both sides agree is necessary.  The FTC's citation to the *Google* case illustrates that:  the agreed upon experiments there did not result in a shortened discovery period, and indeed that case has a discovery period similar to what Meta proposes here.  The schedule initially set had to be extended notwithstanding the so called "efficiency-enhancing measures."  Order, ECF No. 263, at 1 (Dec. 6, 2021), *United States v. Google LLC*, No. 1:20-cv-03010-APM (D.D.C.).  Meta's individual objections to each of these untested and unnecessary procedures is discussed *infra*.

*Third*, the FTC can argue for a compressed schedule because it already had 18 months of unlimited discovery before filing this action.  During its investigation, it collected more than 12 million pages of documents from Meta, and an untold number from third parties.  It took testimony from 24 senior Meta employees (totaling 150 hours of testimony).  *See* FTC's Mem. Supp. Mot. To Compel Rule 26(f) Conference, ECF No. 63-1, at 7 (seeking to expedite discovery planning because the FTC already possessed much of the information it needed).  The FTC seeks an additional 10 months of discovery here, but objects to Meta's request that it have *half* the time the FTC would have for discovery (18 months pre-complaint plus 10 months now) under its proposal.  This would be both unfair and unwarranted.  The FTC has no response to this obvious disparity, and has given no good reason why Meta's discovery in this case should be confined or limited.  The extraordinarily broad document requests the FTC has already served confirm that allowing only 10 months for fact discovery is entirely unrealistic even for the discovery that the FTC intends to seek from Meta.  The FTC's investigation undoubtedly included expansive discovery from scores of third parties, such as market participants, commercial data providers, consumers, and others.  Meta will need to review the FTC's

investigative file before it can assess the FTC's case and frame additional appropriate and necessary discovery of the FTC and the third parties who were part of its investigation as well as additional third parties, and that discovery is going to take time.

*Fourth*, a significant discovery period is necessary because of the extensive Party discovery that will be required in this case. Meta will need to obtain and analyze not only the FTC's files relating to its 18-month investigation, but also the extensive review the FTC conducted at the time it cleared the Instagram and WhatsApp transactions in 2012 and 2014. Meta should be allowed to seek discovery relating to the highly relevant issues of whether and how the FTC evaluated potential harm to competition and consumers in 2012 and 2014 and why it decided not to challenge those transactions. The FTC's own assessment of these issues – admissions by an opposing party – are both discoverable and potentially of crucial significance. Meta expects significant and time-consuming litigation with the FTC over these materials, as the agency has indicated it will resist efforts to conduct discovery into its prior decision-making and party admissions.

*Fifth*, a significant discovery period is necessary because of the breadth of third-party discovery that will be required. These third parties may oppose and contest this discovery, as many, if not most, of the third parties will be firms that consider themselves competitors of Meta. They may be resistant to providing commercially sensitive information to Meta or its counsel. Indeed, according to counsel for the FTC, third parties that have been in discussions with the FTC regarding the protective order have concerns regarding the FTC's provision of the investigative files or discovery in this case to Meta. But such discovery is crucially necessary in order for Meta to defend itself against the FTC's allegations that Facebook had and has little or *no* competition. Discovery will expose these allegations as untrue. Meta has already identified

286 companies that are likely to have relevant information it may use to support its defenses (and many others will surely be identified in the FTC's investigative files), most of which have made public statements that Meta is a competitor.

Further, a number of important third parties who have relevant information (for example, the parent company of TikTok) are located outside the United States; obtaining appropriate discovery from them is likely to take a significant amount of time, as the Hague Convention procedures are elaborate and lengthy. The execution of letters rogatory may take a year or more. *See* State Department, Preparation of Letters Rogatory, https://perma.cc/ZC67-GXMK (visited on Feb. 22, 2022). The FTC's own discovery requests to Meta similarly seek information about competitors outside the United States, some of which encompass services "anywhere in the world." The time and resources necessary for translation and review of foreign language documents alone would make the FTC's schedule unworkable.

Meta will need this extensive discovery to demonstrate that the FTC's alleged relevant antitrust market improperly excludes many competitive alternatives. Meta will also need discovery from these companies relating to their privacy, data protection, and advertising policies and practices, among others, to defend against the FTC's unsupportable allegations that consumers would have had better or higher-quality products in these and possibly other respects absent the challenged acquisitions of Instagram and WhatsApp. In short, third-party discovery in this case will necessarily be more extensive, time-consuming, and likely difficult, than discovery in other cases for which the Court has provided a discovery period similar to or longer than what Meta seeks here.

*Sixth*, a significant expert discovery period is necessary because this case will require extensive expert analysis and many expert depositions. *See FTC v. Facebook, Inc.*, 2022 WL

103308, at *13 (D.D.C. Jan. 11, 2022) (explaining that the agency will have to *prove* its allegations "likely with expert testimony").  Given the breadth of the issues framed by the Amended Complaint, Meta expects that it may be required to offer testimony from experts in many fields, including, but not limited to economics, entrepreneurship, digital platforms, mergers and acquisitions, regulatory review of reportable transactions, securities markets, online advertising, surveys, privacy, and computing infrastructure.  After the Parties exchange opening, rebuttal, and reply expert reports, there will undoubtedly be many expert depositions.  Meta currently estimates that the Parties may offer testimony from a dozen experts, if not more.  *See id.* at *7 (predicting a "potential 'battle of the experts'").  The FTC's suggestion that 4 weeks is sufficient to complete all expert depositions is unrealistic.  Three months for completion of all expert depositions will be necessary given the complexity and breadth of the likely expert work in this case, much of which will be data intensive.

Meta's proposal is consistent with other schedules this Court has ordered for cases involving fewer experts than are likely to be presented here.  Scheduling Order, ECF. No. 13, *Anderson v. Washington Hilton, L.L.C.*, No. 1:21-cv-01140 (D.D.C. Oct. 29, 2021) (2 months and 21 days between rebuttal expert disclosures and close of discovery for relatively straightforward tort claims); Scheduling Order, ECF No. 10, *Kelbaner v. Bernhardt*, No. 1:20-cv-02974 (D.D.C. Apr. 28, 2021) (3 months between expert disclosures and close of discovery for employment discrimination action).  And, the FTC's truncated expert deposition schedule is particularly prejudicial to Meta:  under the FTC's schedule, the FTC will have 6 weeks following Meta's submission of opposing expert reports to file a rebuttal report, and another 4 weeks after that for depositions.  This means that the FTC will have a 6-week head start to prepare for depositions of Meta's experts.  Meta, in contrast, will receive the FTC's expert reports – which

could be expansive and draw on considerable volumes of data and documents – for the first time only 4 weeks before expert discovery concludes.  While the FTC will have a head start under any scheduling proposal, Meta's proposal of 3 months for expert depositions will give Meta sufficient time to prepare for and then depose the FTC's experts, and is necessary to balance the FTC's head start.

Seventh, there is no emergency here that could justify depriving Meta of appropriate time for the extensive discovery that it legitimately needs to defend itself against the FTC's allegations covering more than a decade of Meta's business activity and its attempt to break the company into pieces.  The FTC's demands for a rushed schedule are unnecessary and inconsistent with its own conduct.  It waited 8 years to challenge Meta's acquisition of Instagram (2012), and 6 years to challenge Meta's acquisition of WhatsApp (2014).  It took 18 months to conduct its investigation of Meta's conduct.  It has not sought and could not credibly seek a preliminary injunction.  Its suggestion that a rushed period is necessary for claims relating to long-past acquisitions would turn every case of alleged past violation into a claim of current-day emergency.  *United States v. Dentsply International, Inc.* does not support an expedited schedule. The court there adopted the unremarkable proposition that, for purposes of efficient resolution of the government action seeking to enjoin an ongoing exclusive-dealing agreement, the case should not be consolidated with a related private action.  *See* 190 F.R.D. 140, 145 (D. Del. 1999).  The FTC's compressed schedule is prejudicial to Meta but not to the agency given the lengthy discovery period the agency has already had.

Finally, Meta seeks an appropriate, not a delayed, schedule.  Meta's proposed schedule approximates the schedules in other government antitrust cases pending in this court.  For example, Meta's proposed schedule is very similar to the schedule that Judge Mehta set in the

Case 4:20-cv-00957-SDJ    Document 574-17    Filed 07/19/24    Page 17 of 70 PageID #:
19572
Case 1:20-cv-03590-JEB    Document 100    Filed 02/22/22    Page 16 of 43

Google antitrust case, where the Court provided a total of 22.5 months from the time of its case management order to the close of both fact and expert discovery:  16.5 months for fact discovery from the time of the case management order; 1 month from the close of fact discovery to opening expert reports; and 5 months from opening expert reports to the close of expert discovery.  *See* Scheduling and Case Management Order, ECF No. 85, at 3-4 (Dec. 21, 2020), Order, ECF No. 263, at 1 (Dec. 6, 2021), *United States v. Google LLC*, No. 1:20-cv-03010-APM (D.D.C.); *see also* Scheduling Order, ECF No. 93 (Mar. 2, 2011) and Second Amended Scheduling Order, ECF No. 214, at 2 (Mar. 28, 2012), *United States v. Am. Express Co.*, No. 10-cv-04496-NGG-RER (E.D.N.Y.) (22 months between initial scheduling order and close of fact discovery; just under 6.5 months between close of fact discovery and close of expert discovery).

The schedules the Plaintiff cites are inapposite.  *FTC v. Surescripts* supports *Meta's* proposed schedule, not Plaintiff's.  There, the truncated schedule initially proposed (which the FTC now attempts to use as a benchmark) proved unworkable.  Consequently, the FTC and the defendant jointly requested 2 extensions, which the court granted, resulting in a discovery schedule very close to what Meta proposes:  14 months for fact discovery and just under 9 months between close of fact discovery and close of expert discovery.  *See* First Amended Scheduling Order, ECF No. 79, at 2 (Nov. 12, 2021), Second Amended Scheduling Order, ECF No. 79, at 2 (Apr. 13, 2021), Minute Order (Dec. 2, 2021), *FTC v. Surescripts, LLC*, No. 19-cv-01080-JDB.  The schedule in *FTC v. Qualcomm*, from a different court, was based on that court's stated preference for initially scheduling all trials within 2 years of the filing of the complaint, a practice inconsistent with the practice of this Court.  CMC Tr., ECF No. 79, at 20-24, No. 5:17-cv-00220-LHK (N.D. Cal. Apr. 19, 2017).  In *United States v. Microsoft Corp.*, the district court ordered expedition of a government case where there was both a past history of

enforcement (a consent decree agreed to 3 years earlier) and a request for a preliminary injunction, *United States v. Microsoft Corp.*, 253 F.3d 34, at 47 (D.C. Cir. 2001) – neither of which is present here.  The FTC has not sought a preliminary injunction nor could it plausibly seek one.

      **6.**     **Discovery of Confidential Information.**  Discovery and production of confidential information will be governed by the Protective Order and an ESI Order entered by the Court in this action.  No deadline in this order shall override any deadline set forth in the Protective Order or ESI Order.  When sending discovery requests, notices, and subpoenas to Nonparties, the Parties must include copies of any Protective Orders in effect at the time.

      The Parties have a dispute regarding the appropriate provisions for a Protective Order, ESI Order, and 502(d) Order.

      ***Plaintiff's Position*:**  The FTC has provided to Meta a complete proposal for a protective order that parallels the protections provided to commercially sensitive information produced by parties and third parties in a recent complex antitrust case involving government plaintiffs.  *See* Stipulated Protective Order, *United States v. Google, LLC*, 1:20-cv-03010-APM (D.D.C., Dec. 21, 2020), ECF No. 84.  The parties have met and conferred regarding their competing proposals. The Court should instruct each party to submit, on a date convenient for the Court, a proposed Protective Order, and a supporting Memorandum not to exceed 10 pages explaining the reasons supporting the party's proposal.  *See* Minute Order, *United States v. Google, LLC*, 1:20-cv-03010-APM (D.D.C., Nov. 9, 2020), ECF No. 84 ("the parties are directed to submit position statements outlining their respective positions on the disputed terms of a protective order, not to exceed ten pages, on or before November 13, 2020.  Third parties wishing to be heard on the

disputed terms of the protective order may also submit position statements, not to exceed seven pages, on or before November 13, 2020.").

The FTC has also provided to Meta a complete proposal for an ESI Order governing the production of documents and information in this case, and the parties have met and conferred regarding their competing proposals.  The parties should continue to meet and confer and present to the Court either a joint proposal or competing proposals accompanied by a supporting Memorandum not to exceed 10 pages explaining the reasons supporting the party's proposal.

***Defendant's Position***:  The FTC's proposed protective order is inconsistent with case law, inefficient, and unfair.  Meta raised these concerns with the FTC and provided the FTC a proposed protective order.  Meta believes the Parties should continue to meet and confer regarding their disputes.  Assuming the disputes are not resolved by the February 28, 2022 scheduling conference, Meta proposes that the Court should instruct each Party to submit, on a date and in a format convenient for the Court, a proposed Protective Order, and a supporting Memorandum explaining the reasons supporting the Party's proposal.

Meta has also provided the FTC a proposed ESI and 502(d) Order and also believes the Parties should continue to meet and confer regarding their disputes on these proposals.  Assuming the disputes are not resolved by the February 28, 2022 scheduling conference, the Court should instruct each Party to submit, on a date and in a format convenient for the Court, a proposed ESI and 502(d) Order and a supporting Memorandum explaining the reasons supporting the Party's proposal.

7.    **Production of Investigation Materials.**  Plaintiff shall begin production of its investigatory file no later than February 24, 2022, and anticipates substantially completing the production of its investigatory file no later than February 28, 2022.  The FTC's investigatory file

will be produced on an outside-counsel-only basis pending entry of an appropriate protective order.

### 8.    Document Requests.

***Plaintiff's Position***:  Plaintiff requests that the Court adopt requirements similar to those that a court in this District recently adopted to ensure the efficient completion of discovery in a complex antitrust case involving a government plaintiff.  *See* Scheduling and Case Management Order at 9, *United States v. Google, LLC*, 1:20-cv-03010-APM (D.D.C. Dec. 21, 2020), ECF No. 85.  The Court should order as follows:

The Parties must serve any objections to requests for productions of documents within **[30]** days as required by FRCP 34.  Within **[7]** calendar days of service of any objections to a request for production, the Parties must meet and confer to attempt to resolve any objections and to agree on materials to be searched.  At the time it serves its responses, the producing Party will provide an estimated date for inspection/production in accordance with Fed. R. Civ. P. 34(b)(2)(B).  To the extent that there is a dispute regarding the scope of production that impacts the estimated time period for completion of the responsive production, the Producing Party will supplement its good-faith estimate of the time period for completion of the responsive production upon resolution of such disputes. Responsive productions (subject to any objections or custodian issues that have not been resolved) shall be made on a rolling basis.

***Defendant's Position***:  Meta objects to Plaintiff's attempt to place restrictions on discovery that are additional to or inconsistent with the Federal Rules of Civil Procedure. Federal Rule of Civil Procedure 34 already outlines the requirements for responding to document requests, including when and how a party must respond.  *See*, *e.g.*, Fed. R. Civ. P. 34(b)(2)(A) (providing requirements for "Time to Respond"); *id.* at 34(b)(2)(B) (providing requirements or

"Responding to Each Item").  Imposing additional requirements, including a 7-day period in which the Parties must meet and confer, is unnecessary and burdensome.  The FTC has not provided good cause to modify the Federal Rules of Civil Procedure.  The fact that the parties agreed in *Google* that the Rules as to document requests should be modified is not a reason that the same modifications should be imposed here, where Meta objects to the modification.  If the Court is inclined to consider this proposal, Meta requests an opportunity to fully brief the issue.

9.    **Interrogatories.**

*Plaintiff's Position*:  Plaintiff requests that the Court adopt requirements similar to those that a court in this District recently adopted to ensure the efficient completion of discovery in a complex antitrust case involving a government plaintiff.  *See* Scheduling and Case Management Order at 10, *United States v. Google, LLC*, 1:20-cv-03010-APM (D.D.C. Dec. 21, 2020), ECF No. 85.  The Court should order as follows:

The Parties must respond and serve any objections to interrogatories within **[30]** calendar days as required by Fed. R. Civ. P. 33. Within **[7]** calendar days of service of any objections, the parties must meet and confer to attempt to resolve any objections and to discuss whether the request may be satisfied by the production of documents or structured data. Each Party is limited to **[30]** interrogatories in total (including discrete subparts). Contention interrogatories may be answered at any time up to **[30]** days after the close of fact discovery.  Each side reserves the right to ask the Court for leave to serve additional interrogatories.

*Defendant's Position*:  Meta agrees that each Party should be limited to **[30]** interrogatories in total (including discrete subparts), and that each Party should have the right to ask the Court for leave to serve additional interrogatories.

Meta otherwise objects to Plaintiff's attempt to place restrictions on discovery that are additional to or inconsistent with the Federal Rules of Civil Procedure.  Federal Rule of Civil Procedure 33 already outlines the requirements for responding to interrogatories, including when and how a party must respond.  *See*, *e.g.*, Fed. R. Civ. P. 33(b) (providing requirements for "Answers and Objections," including time to respond and objections).  Imposing additional requirements, including a 7-day period in which the Parties must meet and confer, is unnecessary and burdensome.  The FTC has not provided good cause to modify the Federal Rules of Civil Procedure.  The fact that the parties agreed in *Google* that the Rules as to interrogatories should be modified is not a reason that the same modifications should be imposed here, where Meta objects to the modification.  If the Court is inclined to consider Plaintiff's proposal, Meta requests an opportunity to fully brief the issue.

        10.    **Requests for Admission.**

        ***Plaintiff's Position***:  Plaintiff requests that the Court adopt provisions that will maximize the efficiency of requests for admission regarding the authentication or admissibility of documents, data, or other evidence.  Pre-trial requests for admission are an efficient way to resolve evidentiary disputes, and courts in this District have recently endorsed the approach the FTC requests to ensure efficiency in complex antitrust cases involving a government plaintiff.  *See* Scheduling Order at 3, *FTC v. Surescripts*, 1:19-cv-01080-JDB (D.D.C. Feb. 28, 2020), ECF No. 54 ("The close of fact discovery shall not preclude requests for admission regarding the authentication and admissibility of exhibits.").  The FTC's proposal to allow requests for admission regarding evidentiary issues after the close of fact discovery is a natural consequence of its proposal to crystallize disputes over authenticity at the time the parties exchange objections to trial exhibits.  *See infra*, Section 17 ("Any good-faith objection to a document's authenticity

must be provided with the exchange of other objections to intended trial exhibits."). Meta's

supposed concern that the FTC will serve numerous requests for admissions is simply

speculative: indeed, the whole purpose of the FTC's proposal in Section 17, *infra*, is to minimize

the need for requests for admissions by establishing a presumption that materials produced in

discovery are authentic (***not*** admissible), absent a genuine good-faith dispute. *See id.* This

process efficiently resolves any genuine disputes regarding authenticity, and avoids needless

requests for admission regarding documents that will not be introduced at trial. Meta's

speculation that the FTC will attempt to prove its case by introducing large numbers of

documents without establishing their importance and implications is both entirely unfounded and

irrelevant to the merits of the FTC's sensible proposal. Accordingly, the Court should order as

follows:

Each side is limited to **[35]** requests for admission in total. Each side reserves the right to

ask the Court for leave to serve additional requests for admission. Requests for admission

relating solely to the authentication or admissibility of documents, data, or other evidence (which

are issues that the parties must attempt to resolve initially through negotiation) do not count

against these limits. The close of fact discovery shall not preclude requests for admission

regarding the authentication and admissibility of exhibits.

**_Defendant's Position_:** Meta generally agrees with Plaintiff's proposed numerical limits

for requests for admission (35 per side, with no limit on requests for admission relating solely to

document authentication) but believes that all such discovery should be completed within the

period set by the Court for fact discovery. Plaintiff has given no valid reason for extending the

document discovery phase in this way. That other parties in other cases may have agreed to do

so is no sound reason to do it here over Meta's objection.

Meta further objects to attempts by Plaintiff to use requests for admission to establish "admissibility" as that is a trial issue and should be considered at a later date.  This and other FTC proposals indicate to Meta that the agency anticipates trial by flooding unexplained and selectively culled internal Meta documents into the record without testimony, where the meaning and relevance of those documents may be unclear.  Indeed, during the Rule 26 conference, the FTC's counsel suggested that they would need 4,000 requests for admission dedicated just to document authenticity.  Such a strategy would be both unfair and legally invalid, as this District and other courts have determined.  Transcript of Evidentiary Hearing, ECF No. 182, at 10:21-25, *United States v. AT&T Inc.*, No. 17-CV-2511-RJL (D.D.C. Mar. 19, 2018) (refusing to admit emails without witness testimony); *see also FTC v. Washington Data Res.*, 856 F. Supp. 2d 1247, 1253 (M.D. Fla. 2012), *aff'd*, 704 F.3d 1323 (11th Cir. 2013) ("bulky 'document dump' (preferred only by an unskilled or unprepared or overwhelmed lawyer) is a disfavored (and risky) practice that almost always results in grief for the lawyers or the judge or for anyone else left to swim in a great reservoir of undifferentiated and unfamiliar paper").

Witnesses should have the opportunity to explain and provide context for any statements in emails or other contemporaneous documents the Parties seek to offer in evidence.  Plaintiff should conduct discovery in a manner that will produce relevant and probative evidence – and not base its case on a legally invalid "ambush by unexplained documents" that has been rejected in this and other courts.  With sufficient time for fact discovery, Plaintiff will have ample opportunity to ask witnesses about whatever documents it believes are relevant and thereby avoid creating a record that cannot satisfy Federal Rule of Evidence 403 or other legal requirements.

Case 4:20-cv-00957-SDJ    Document 574-17    Filed 07/19/24    Page 25 of 70 PageID #:
19580
Case 1:20-cv-03590-JEB    Document 100    Filed 02/22/22    Page 24 of 43

11.    **Discovery on Nonparties.**

*__Plaintiff's Position__***:**  Plaintiff requests that the Court adopt requirements similar to those

that a court in this District recently adopted to ensure the efficient completion of third party

discovery in a complex antitrust case involving a government plaintiff.  *See* Scheduling and Case

Management Order at 10, *United States, et. al. v. Google, LLC*, 1:20-cv-03010-APM, ECF No.

85 (D.D.C. Dec. 21, 2020); *see also* Order Amending Scheduling and Case Management Order,

*United States, et. al. v. Google, LLC*, 1:20-cv-03010-APM, ECF No. 126 (D.D.C. Mar. 30, 2021)

(a party must serve a document subpoena within 7 days, where a third party has received a

document subpoena from the other party).  This proposal minimizes burdens on third parties by

ensuring that both Plaintiff and Defendant promptly and simultaneously engage in discussions

with each third party regarding the scope of discovery requests, and eliminates the predictable

delay that can arise when a third party receives a Rule 45 subpoena from one party but has not

yet received a subpoena from the other party.  The Court should order as follows:

Each Party must serve upon the other Party a copy of any discovery request served

electronically on any Nonparty at the same time it is served on the Nonparty.  A requesting Party

must provide the other Party with a written record of any oral or written modifications,

extensions, or postponements to the discovery request within **[3]** business days of the

modification, extension, or postponement.  Every discovery request to a Nonparty shall include a

cover letter requesting that (a) the Nonparty stamp each document with a production number and

any applicable confidentiality designation prior to producing it; (b) the Nonparty provide both to

the requesting Party and to the other side copies of all productions at the same time; (c) the

Nonparty provide to both the requesting Party and the other side copies of all written

correspondence with any Party concerning the Nonparty's response to or compliance with any

discovery request (including any extensions, modifications, or postponements).  When sending discovery requests, notices, and subpoenas to Nonparties, the Parties must include copies of any Protective Orders in effect at the time.  After May 2, 2022, if a Party is in receipt of a subpoena served pursuant to Federal Rule of Civil Procedure 45 upon a Nonparty, the deadline for the receiving Party to serve any subpoena upon that Nonparty is 7 days.

**_Defendant's Position_**:  Meta objects to Plaintiff's attempt to place restrictions on discovery that are additional to or inconsistent with the Federal Rules of Civil Procedure. Federal Rule of Civil Procedure 45 already outlines the requirements for serving and responding to non-party discovery, including who must be served and noticed and when and how a party must respond.  *See*, *e.g.*, Fed. R. Civ. P. 45(a)(1) (providing the "Form and Contents" of subpoenas); *id.* at 45(a)(4) (requirements for "Notice to Other Parties Before Services"); *id.* at 45(d) (providing for objections and enforcement of subpoenas).  Imposing additional requirements, including requiring the Parties exchange a written record of any oral or written modifications within a 3-day period, is unnecessary and burdensome.  The FTC has not provided good cause to modify the Federal Rules of Civil Procedure.  The fact that the parties agreed in *Google* that the Rules as to discovery on nonparties should be modified is not a reason that the same modifications should be imposed here, where Meta objects to the modification.  If the Court is inclined to consider Plaintiff's proposal, Meta requests an opportunity to fully brief the issue.

Case 4:20-cv-00957-SDJ    Document 574-17    Filed 07/19/24    Page 27 of 70 PageID #:
19582
Case 1:20-cv-03590-JEB    Document 100    Filed 02/22/22    Page 26 of 43

**12.    Depositions.**

**a.    Number of Depositions.**

***Plaintiff's Position*:**

Meta provides no precedent in support of its remarkable proposal to: (1) provide itself

900 hours of deposition time, but approximately 750 hours for the FTC; (2) limit the FTC to 200

hours of testimony from current and former Meta employees; and (3) restrict the questions the

FTC is permitted to ask witnesses who sat for investigational hearings.  Courts in this District

routinely reject requests to limit the government's litigation discovery from witnesses who

previously sat for an investigational hearing during an FTC investigation.  *Compare* Joint Mot.

for Case Management and Scheduling Order at 17-18, *FTC v. Draftkings, Inc.*, No. 17-cv-1195

(KBJ) (July 3, 2017), ECF No. 31 *with* Case Management and Scheduling Order at 9, *FTC v.*

*Draftkings, Inc.*, No. 17-cv-1195 (KBJ) (D.D.C. July 10, 2017), ECF No. 46 (rejecting

Defendant's proposal to limit FTC deposition time based on prior testimony in investigational

hearings); s*ee also* Scheduling and Case Management Order at 11, *United States, et. al. v.*

*Google, LLC*, 1:20-cv-03010-APM (D.D.C. Dec. 21, 2020), ECF No. 85 ("depositions

previously taken in response to Civil Investigative Demands" do not count against deposition

limits); Case Management Order at 10-11, *United States v. AT&T Inc.*, No. 1:17-cv-2511

(D.D.C. Dec. 21, 2017), ECF No. 54 ("Any party may further depose any person whose

deposition was taken pursuant to a Civil Investigative Demand, and the fact that such person's

deposition was taken pursuant to a Civil Investigative Demand may not be used as a basis for

any party to object to that person's deposition."); Scheduling Order at 3, *FTC v. Surescripts*, No.

19-1080 (JDB) (D.D.C. Feb. 28, 2020), ECF No. 54 ("Depositions taken during the

Commission's pre-complaint investigation do not count toward the number of depositions allowed by this Order.").

Investigations serve a different purpose than litigation, and courts have long recognized that a government agency's pre-complaint investigation is not a substitute for, nor should it limit, post-complaint discovery. *Oklahoma Press Pub Co. v. Walling*, 327 U.S. 186, 201 (1946) (agency investigations are intended "to discover and procure evidence, not to prove a pending charge or complaint, but upon which to make one if, in the Administrator's judgment, the facts thus discovered should justify doing so."); *S.E.C. v. Sargent*, 229 F.3d 68, 80 (1st Cir. 2000) (noting "there is no authority which suggests that it is appropriate to limit the SEC's right to take discovery based upon the extent of its previous investigation into the facts underlying its case" (quoting *SEC v. Saul,* 133 F.R.D. 115, 118 (N.D. Ill. 1990))); *see also United States v. GAF Corp.*, 596 F.2d 10, 14 (2d Cir. 1979) ("It is important to remember that the [Justice] Department's objective at the pre-complaint stage of the investigation is not to 'prove' its case but rather to make an informed decision on whether or not to file a complaint." (quoting H. R. REP. 94-1343 at 26, Hart-Scott-Rodino Antitrust Improvements Act of 1976)); *FTC v. Texaco, Inc.*, 555 F.2d 862, 874 (D.C. Cir. 1977) ("In the pre-complaint stage, an investigating agency is under no obligation to propound a narrowly focused theory of a possible future case."). Investigational hearings help the FTC determine whether a target has violated or is about to violate the antitrust laws. Depositions seek testimony to prove specific elements in court. Meta's proposal to restrict the FTC's deposition "areas" would unfairly and inefficiently prevent the FTC from exploring the facts to which Meta's executives might testify at trial; for example, it would prevent the FTC from eliciting testimony regarding documents that address an "area" that the FTC explored during an investigational hearing. This is inappropriate, as the

27

authorities cited above recognize that investigational hearings routinely have a different focus, or are conducted at a higher level of generality, than depositions taken once litigation has commenced.  Further, Meta's proposal would doubtless lead to disputes about whether a line of inquiry deals with a "new area," or instead with an "area" that was already covered by prior testimony.  (The parties have had no opportunity to discuss what Meta means by a "new area" because Meta presented this proposal in writing on February 22, 2022, shortly before the deadline for this filing, after previously taking the position that the FTC should be prevented entirely from deposing any Meta executive who provided testimony during the FTC's investigation.)

Given that Meta's proposal is unfair, inefficient, and unworkable, it is unsurprising that Meta provides no precedent for its adoption.  Meta cites only an out-of-Circuit case in which, in the limited context of a preliminary injunction hearing, a court denied a deposition that was limited to three topics about which the witness had previously testified.  *See* Def.'s Mot. for Protective Order at 24-25, *United States v. UPM-Kymmene Oyj*, No. 03-cv-2528 (N.D. Ill. May 9, 2003), ECF No. 42.  This case is irrelevant to the proposal Meta advances.  Even the briefing on which Meta relies acknowledges that investigational hearings in the limited context of a preliminary injunction challenge to a merger are fundamentally different from the government's pre-complaint investigations of complex monopolization cases.  *Id.* at 5 ("While the Government has asserted that investigative depositions serve different purposes than litigation depositions, that generalization – ***which certainly applies in ponderous wide-ranging investigations*** – most assuredly does not apply" in the pre-merger review process) (emphasis added).

Accordingly, the Court should order as follows:

Each side should be limited to 500 total deposition hours for fact witnesses.  The hours

Case 4:20-cv-00957-SDJ    Document 574-17    Filed 07/19/24    Page 30 of 70 PageID #:
19585
Case 1:20-cv-03590-JEB    Document 100    Filed 02/22/22    Page 29 of 43

limit refers to time of testimony actually taken on the record.  In the event that a noticed entity

designates as a 30(b)(6) witness an individual that was also noticed pursuant to Rule 30(b)(1),

the noticed entity and each noticing Party shall meet and confer to determine whether it is

appropriate to extend the length of the deposition beyond the limit that would otherwise apply if

the individual's deposition had been noticed only pursuant to Rule 30(b)(1).  There shall be no

limit on the number of separate 30(b)(6) notices that can be served on a Party or a Third Party.

The following depositions do not count against the above deposition limits: (a)

depositions of the Parties' designated expert witnesses; (b) sworn testimony previously taken

during the FTC's pre-Complaint investigation or in any other litigation or government

investigation; and (c) depositions taken for the sole purpose of establishing the authenticity or

admissibility of documents, provided that such depositions may be noticed only after the Party

taking the deposition has taken reasonable steps to establish authenticity or admissibility through

other means, and further provided that such depositions must be designated at the time that they

are noticed as being taken for the sole purpose of establishing authenticity or admissibility.

***Defendant's Position***:  Each Party should be limited to 900 total deposition hours for fact

witnesses, with a maximum of 200 hours for depositions of current and former Meta

employees.  Depositions pursuant to Federal Rule of Civil Procedure 30(b)(6) should count

against the 200-hour maximum, and the total number of hours of Rule 30(b)(6) testimony of

Meta should not exceed 21 hours (unless otherwise agreed by counsel or decided by Court

order).  Depositions of the Parties' designated expert witnesses should not count against the

deposition hours allocated for fact witnesses.  Sworn testimony taken by the FTC of Meta

employees during its pre-complaint investigation (approximately 150 hours) should count against

its 900-hour deposition limit, as the investigation covered the same issues now before this Court

and the FTC will undoubtedly seek to use that testimony in this proceeding.  The Court should limit any deposition of Meta employees to new areas not covered in prior sworn testimony. Depositions should be conducted as provided in the Federal Rules of Civil Procedure.

*Meta's total hours proposal is reasonable and necessary.*  A significant number of depositions (900 hours per side) will be necessary so that Meta can conduct necessary third-party discovery to defend this case.  *See* Defendant's Position, No. 5.  The gap between the Meta proposal (900 hours) and the FTC proposal (500 hours) is largely illusory:  The FTC has already conducted 150 hours of questioning of Meta witnesses (not accounting for third-party testimony taken and interviews conducted during the investigation) and it seeks an unlimited number of hours for certain categories of depositions, such as "document admissibility."  On February 22, 2022, Meta notified the FTC that it will imminently serve 81 third-party subpoenas, and expects to serve many more.  Meta has already identified 286 companies that are likely to have relevant information it may use to support its defenses, most of which have identified Meta as a competitor.  The 900-hour budget will provide both sides with the scope necessary to conduct the extensive discovery that both sides have said they need.

Nine hundred hours of deposition time therefore is amply justified in a case of this complexity and magnitude.  *See, e.g.*, *United States v. Philip Morris, Inc.*, 449 F. Supp. 2d 1, 33 (D.D.C. 2006) ("parties each took over 1,000 hours of depositions" in a civil RICO action); *In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*, 827 F.3d 223, 229 (2d Cir. 2016) (noting that "[d]iscovery included more than 400 depositions" – equivalent to 2,800 hours assuming 7-hour depositions); *In re Bank of New York Mellon Corp. Forex Transactions Litig.*, 2014 WL 5392465, at *2 (S.D.N.Y. Oct. 9, 2014) ("The private plaintiffs and the government, on the one hand, and the defendants on the other *each* were permitted collectively to take up to

Case 4:20-cv-00957-SDJ    Document 574-17    Filed 07/19/24    Page 32 of 70 PageID #:
19587
Case 1:20-cv-03590-JEB    Document 100    Filed 02/22/22    Page 31 of 43

150 fact depositions.") (equivalent to 1,050 hours assuming 7-hour depositions); *In re Brand Name Prescription Drugs Antitrust Litig.*, 1999 WL 759472, at *3 (N.D. Ill. Sept. 1, 1999) ("The parties took over 1000 depositions in this matter.") (equivalent to 7,000 hours assuming 7-hour depositions).

   *A 200-hour cap on depositions of Meta current and former employees is reasonable.*  A 200-hour cap on depositions of Meta's current and former employees, a 21-hour cap on 30(b)(6) depositions, and limitations on duplicating the testimony of Meta employees who already testified in the investigation are entirely reasonable.  *See*, *e.g.*, Def.'s Mot. for Protective Order, ECF No. 42, at 2 (May 9, 2003) and Opinion, *United States v. UPM-Kymmene Oyj*, No. 03-cv-25828, 2003 WL 21804221, at *1 (N.D. Ill. May 16, 2003) (vacating deposition notice of a company's CEO because the government had already taken a day-long deposition of the CEO "[d]uring its [antitrust] investigation").  The FTC should not be permitted to repetitively burden Meta's senior employees, who are trying to manage a complex enterprise while at the same time being sought for testimony in political and judicial matters covering many of the same issues. The FTC (with its cooperating State plaintiffs) took 2-day depositions of Meta's most senior executives.  Meta's proposed limitations on depositions of Meta witnesses will eliminate unnecessary and wasteful depositions of Meta's current and former employees.  *See Affinity Labs of Texas v. Apple, Inc*., 2011 WL 1753982, at *17 (N.D. Cal. May 9, 2011) (denying motion to compel deposition of Steve Jobs); *In re Ski Train Fire of Nov. 11, 2000 Kaprun Austria*, 2006 WL 1328259, at *10 (S.D.N.Y. May 16, 2006) (denying motion to compel depositions of Siemens AG executives).  In opposing Meta's proposal, the FTC states that "Meta has no basis to assert that the FTC will depose its executives only to duplicate testimony already provided."  The prior testimony was already repetitive and cumulative.  The Court should limit any deposition of

Meta employees to new areas, just as the FTC at least implicitly concedes would be appropriate here.

### b.  Notice of Depositions.

**_Plaintiff's Position_**:  The FTC proposes a commonsense procedure for noticing depositions, objecting to notices, and scheduling depositions, similar to those a court in this District recently adopted to ensure the efficient completion of discovery in a complex antitrust case involving a government plaintiff.  *See* Scheduling and Case Management Order at 11-12, *United States, et. al. v. Google, LLC*, 1:20-cv-03010-APM, ECF No. 85 (D.D.C. Dec. 21, 2020). The Court should order as follows:

Within **[10]** calendar days of receipt of a deposition notice, the noticed Party or Nonparty must provide any objections it intends to assert in response to that deposition notice, and, if relevant, an alternative date on which witnesses will be made available for testimony.  Parties and Nonparties will use their best efforts to make witnesses available for deposition at a mutually agreeable time and location and without undue delay.  If a witness is a former employee of any Party or Nonparty, upon receipt of a deposition notice for the former employee, that Party or Nonparty shall, within **[10]** calendar days of the deposition notice, provide the date of departure and last known address of the former employee, state whether counsel for the Party or Nonparty can accept service of the notice, and state whether the counsel for the Party or Nonparty will be representing the witness in connection with the deposition and, if not, provide the name and contact information for the witness' counsel or state that counsel for the Party or Nonparty is unaware that the witness is represented by counsel.

If a Party serves a subpoena for the production of documents or electronically stored information on a Party or Nonparty and a subpoena commanding attendance at a deposition by a

witness employed by such Party or Nonparty, the Party serving those subpoenas must schedule the witness's deposition for a date at least **[14]** calendar days after the return date for the document subpoena.  If the return date for the document subpoena is extended: absent consent of both Plaintiff and Defendant, the deposition must be postponed to a date at least **[14]** calendar days following the date of production of substantially all documents required by the subpoena (as modified by any negotiations regarding subpoena compliance) (a) with respect to which the witness is an author, addressee, recipient, or custodian; and (b) are contained in a shared filing location or other electronic or physical repository that the witness accessed in the ordinary course of business.

For any deposition lasting longer than **[7]** hours, either Party or the witness may demand that the time remaining after the seventh hour be carried over to be completed on the next consecutive business day, or as soon as possible consistent with the convenience of the witness and the Parties.

***Defendant's Position***:  Meta objects to Plaintiff's attempt to place restrictions on discovery that are additional to or inconsistent with the Federal Rules of Civil Procedure. Federal Rules of Civil Procedure 30 and 45 already provide the appropriate requirements for serving and responding to party and non-party depositions, including who must receive notice and when and how a party or non-party must respond.  Imposing additional requirements is unnecessary and burdensome.  The FTC has not provided good cause for the additional restrictions it seeks.  If the Court is inclined to consider Plaintiff's proposal, Meta requests an opportunity to fully brief the issue.

      **c.**   **Allocation of Time During Depositions.**

***Plaintiff's Position*:**

1. ***Defendant's current employees***: During the deposition of a current employee of Defendant, Plaintiff may examine the witness for up to 7 hours.

2. ***Defendant's former employees***: During the deposition of a former employee of Defendant that is noticed only by one side, the other side may question the witness for up to one hour at the conclusion of the noticing party's examination, which shall last no more than 6 hours.  During the deposition of a former employee of Defendant that is noticed by both Parties, the deposition will be **[10]** hours: (a) if the witness provided sworn testimony during the FTC's pre-Complaint investigation, the time will be divided equally between the sides; (b) if the witness did not provide sworn testimony during the FTC's pre-Complaint investigation, Plaintiff may examine the witness for up to 7 hours and Defendant may examine the witness for up to 3 hours. In any deposition of a former employee of Defendant, any time allotted to one side not used by that side may not be used by the other side.

3. ***Nonparty witnesses who are not a former employee of Defendant***: (a) if the deposition is noticed by only one side, the non-noticing side may question the witness for up to one hour at the conclusion of the noticing party's examination, which shall last no more than 6 hours; (b) if the deposition is noticed by both sides, then the deposition will be **[10]** hours and will be divided equally between the sides. Any time allotted to one side not used by that side in a Nonparty deposition may not be used by the other side.

***Defendant's Position*:**  Meta submits that depositions should be conducted as provided in

the Federal Rules of Civil Procedure, and that Plaintiff's proposals to add limitations additional to or inconsistent with the Federal Rules of Civil Procedure should not be imposed, except as agreed below.

1. ***Defendant's Current and Former Employees*** (Plaintiff's Position Nos. 1 and 2, above): The FTC should only be allowed to depose current or former Meta employees who provided sworn testimony during the FTC's pre-complaint investigation as to topics not previously covered in that prior testimony; and no deposition should exceed the 7 hours provided in the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 30(a)(2) (requiring leave to re-depose a witness who "has already been deposed in the case"); *id.* 30(d)(1) (requiring leave for a deposition longer than "1 day of 7 hours").

For former employees, if the witness did not provide an interview or sworn testimony during the FTC's pre-complaint investigation: (a) if the deposition is noticed by both sides, the 7 hours should be divided equally between the sides (3.5 hours each); (b) if the deposition is noticed by only one side, Meta and the FTC's proposals are the same, i.e., the noticing Party should have 6 hours for its examination, and the non-noticing Party should be allowed to question the witness for up to 1 hour at the conclusion of the noticing Party's examination. Former employees who provided an interview during the FTC's pre-complaint investigation should be examined by Defendant for up to 7 hours and by Plaintiff for up to 3 hours. For former employees who provided sworn testimony during the FTC's pre-complaint investigation, the FTC should be permitted to take testimony only on topics not previously covered in the prior testimony. Such former employees who provided sworn testimony during

Case 4:20-cv-00957-SDJ    Document 574-17    Filed 07/19/24    Page 37 of 70 PageID #:
19592
Case 1:20-cv-03590-JEB    Document 100    Filed 02/22/22    Page 36 of 43

the FTC's pre-complaint investigation should be examined by Defendant for up to 7

hours and by Plaintiff for up to 3 hours.  Any change in these time allocations should

be granted only upon a particularized showing of good cause made to the Court.  In

any deposition of a former employee of Defendant, any time allotted to one side not

used by that side should not be used by the other side.

2.  ***Nonparty Witnesses Who Are Not a Former Employee of Defendant***:  Meta agrees

with the FTC's proposal.

**13. Dispute Resolution.**  No discovery motions may be filed without leave of court.  In the

event a discovery dispute arises, the Parties shall make a good faith effort to resolve or narrow

the areas of disagreement.  If the Parties are unable to resolve the discovery dispute, the Parties

shall jointly call chambers at (202) 354-3300, at which time the Court will either rule on the

issue or determine the manner in which it will be handled.

**14. Inadvertent Production of Privileged Information.**  Inadvertent production of

privileged information shall be governed by the terms of a Court order under Federal Rule of

Evidence 502(d).

**15. Privilege Logs.**  The Parties agree that the following privileged or otherwise protected

communications shall not be the subject of discovery, need not be preserved, and need not be

placed on a privilege log:  email, notes, drafts, communications, memoranda, documents, or

other work product produced by or exchanged solely among and between:  (a) outside counsel[4]

for the Defendant; (b) outside counsel for Defendant and/or In-House counsel (as that term is

defined in the Protective Order in this action) employed by Defendant and counsel for Parties

---

[4] As used in this Paragraph, "counsel" includes attorneys, economists or other experts
assisting counsel, paralegals, assistants, and those acting on behalf of counsel.

with common legal interest in defending potential or current litigation against Meta; (c) In-House Counsel (as that term is defined in the Protective Order in this action) employed by Defendant on topics relating to potential or current litigation against Meta; (d) counsel for the Federal Trade Commission (or persons employed by the Federal Trade Commission); (e) counsel for the Federal Trade Commission (or persons employed by the Federal Trade Commission) and counsel for a plaintiff with which the FTC shares a common legal interest in pursuing or exploring litigation against Meta; (f) counsel for the Federal Trade Commission (or persons employed by the Federal Trade Commission) and counsel employed by any executive-branch agency of the federal government.  When responsive or non-responsive, privileged documents described in this Paragraph are attached to responsive non-privileged documents that are produced in whole or in part; however, the producing Party will insert a placeholder to indicate a document has been withheld from that family.

**16. Privilege Log Timing and Format.**

*__Plaintiff's Position__*:  If a producing party redacts documents within a production or withholds documents from a production as privileged, it shall provide a privilege log relating to those documents within **[21]** calendar days of the production in which the documents would have been included but for the privilege claim.  A producing Party must provide a final privilege log no later than **[30]** calendar days prior to the close of fact discovery.  All privilege logs shall be provided in Excel format.

*__Defendant's Position__*:  Meta submits that the Parties should provide privilege logs 90 days after completion of production for each set of requests of production, or such other agreed upon date.  For production of discovery completed at the close of fact discovery, the Parties should provide privilege logs by 30 days after the completion of production.  All privilege logs

Case 4:20-cv-00957-SDJ   Document 574-17   Filed 07/19/24   Page 39 of 70 PageID #:
19594
Case 1:20-cv-03590-JEB   Document 100   Filed 02/22/22   Page 38 of 43

should be provided in Excel format.  The FTC's proposal to provide privilege logs in an expedited basis and before fact discovery is even completed is unnecessary and burdensome.

**17. Presumptions of Authenticity.**

*__Plaintiff's Position__*:  The FTC proposes a commonsense procedure similar to the approach recently adopted by courts in this District in antitrust cases involving government plaintiffs.  *See* Scheduling and Case Management Order at 16, *United States v. Google, LLC*, 1:20-cv-03010-APM (D.D.C. Dec. 21, 2020), ECF No. 85; Case Management Order at 15, *United States v. AT&T Inc.*, No. 17-CV-2511-RJL (D.D.C. Dec. 21, 2017), ECF No. 54.  The Court should order as follows:

Documents produced in response to a discovery request by Parties and Nonparties from their own files will be presumed to be authentic within the meaning of Federal Rule of Evidence 901.  Any good-faith objection to a document's authenticity must be provided with the exchange of other objections to intended trial exhibits.  If the opposing side serves a specific good-faith written objection to the document's authenticity, the presumption of authenticity will no longer apply to that document and the parties will promptly meet and confer to attempt to resolve any objection.

*__Defendant's Position__*:  Meta respectfully submits that evidentiary rulings are premature and not the appropriate subject of the initial scheduling order.  As explained above (Defendant's Position, No. 10), this and other FTC proposals indicate to Meta that the FTC may flood the record with documents that were not the subject of testimony from witnesses with personal knowledge, i.e., a "document dump."  This is entirely inappropriate as explained above.  For present purposes, there is no need to address matters beyond the scheduling of fact and expert discovery, in accordance with what Meta understands to be the Court's standard practice.  The

fact that the parties agreed in *Google* and *AT&T* that the Rules as to authentication should be modified is not a reason that the same modifications should be imposed here, where Meta objects to the modification.  If the Court is inclined to consider Plaintiff's proposal, however, Meta requests an opportunity to fully brief the issue.

**18. Expert Witness Disclosures** – **Materials Protected from Disclosure.**  The following information, documents, and materials are not discoverable, and need not be preserved or disclosed for purposes of complying with Federal Rule of Civil Procedure 26(a)(2), 26(b)(4), or any other rule, including testimony at deposition, hearing, or trial, unless such materials provide the only record of a fact or assumption that the expert relied on in forming the opinions to be expressed:  (a) any form of oral or written communications, correspondence, or work product shared between:  (i) the expert and any persons assisting the expert; (ii) Plaintiff's counsel and Plaintiff's experts, or between any agent or employee of Plaintiff's counsel and Plaintiff's experts; (iii) Meta's counsel and Meta's experts, or between any agent or employee of Meta's counsel and Meta's experts; (iv) testifying and non-testifying experts; (v) non-testifying experts; or (vi) testifying experts; (b) expert's notes, except for notes of interviews if the expert relied upon the notes in forming any opinions in his or her final report; (c) drafts of expert reports, affidavits, or declarations or comments, mark-ups, or edits prepared in connection with such drafts; and (d) data formulations, data runs, data analyses, surveys, studies, or any database-related operations not relied upon by the expert in forming any opinions in his or her final report.

**19. Expert Witness Disclosures** – **Materials To Be Disclosed.**  Subject to the limitations of the prior paragraph, the Parties agree that the following materials will be disclosed within **[2]** calendar days of when each expert report is served, or, for those materials to be made available upon request, within **[7]** calendar days of the request: (a) a list of all documents relied upon by

the expert in forming any opinions in his or her report, including Bates numbers of documents previously produced; (b) a list of all publications authored by the expert in the previous **[10]** years; (c) upon reasonable request, copies of all publications authored by the expert in the previous **[10]** years that are not readily available publicly; and (d) for all calculations or other quantitative analyses appearing in the report, the data set and programs underlying such calculations or quantitative analyses that were relied upon by the expert, including the programs and codes necessary to recreate the calculations or quantitative analyses from the data set.

**20. Expert Depositions.** Each expert may be deposed for **[7]** hours. The Parties may request additional time only upon a particularized showing of good cause made to the Court. Depositions of each Party's experts will be conducted only after disclosure of all expert reports and materials to be disclosed.

**21. Service of Pleadings and Discovery on Other Parties.** Service of all pleadings must be made by ECF (which will send notice to all Parties and Nonparties registered with ECF). Service of all trial subpoenas and discovery requests on a Party (including subpoenas for testimony or documents under Federal Rule of Civil Procedure 45), expert disclosures, and delivery of all correspondence in this matter must be made by email to the persons whose email is listed below. Service of trial subpoenas and discovery requests on a Nonparty (including subpoenas for testimony or documents under Federal Rule of Civil Procedure 45) may be made by email when the Nonparty or counsel for the Nonparty consents, or when service is made by email on a counsel who enters an appearance in this action on behalf of the Nonparty. Service via email will be considered equivalent to service by hand.

> For Plaintiff FTC:
> Daniel Matheson
> Owen Masters
> Michael Smith

Case 4:20-cv-00957-SDJ    Document 574-17    Filed 07/19/24    Page 42 of 70 PageID #:
19597
Case 1:20-cv-03590-JEB    Document 100    Filed 02/22/22    Page 41 of 43

Krisha Cerilli
Robert Zuver
Maggie DiMoscato
Sunila Steepen
Dominique Wilson
Federal Trade Commission
600 Pennsylvania Ave. N.W.
Washington D.C. 20580
Tel: 202-326-2075
dmatheson@ftc.gov
omasters@ftc.gov
msmith9@ftc.gov
kcerilli@ftc.gov
rzuver@ftc.gov
mdimoscato@ftc.gov
ssteephen@ftc.gov
dwilson1@ftc.gov


For Defendant Meta:
Mark C. Hansen
Kevin B. Huff
Kenneth M. Fetterman
Geoffrey M Klineberg
Kevin J. Miller
Aaron M. Panner
Alex A. Parkinson
Ana Nikolic Paul
Aaseesh P. Polavarapu
Kellogg, Hansen, Todd, Figel, & Frederick, P.L.L.C.
1615 M Street, N.W. Suite 400
Washington, DC 20036
Tel: 202-326-7900
mhansen@kellogghansen.com
khuff@kellogghansen.com
kfetterman@kellogghansen.com
gklineberg@kellogghansen.com
kmiller@kellogghansen.com
apanner@kellogghansen.com
aparkinson@kellogghansen.com
apaul@kellogghansen.com
apolavarapu@kellogghansen.com

Sonal N. Mehta
Wilmer Cutler Pickering Hale & Dorr LLP

2600 El Camino Real, Suite 400
Palo Alto, CA 94306
Tel: 650-858-6000
sonal.mehta@wilmerhale.com

David Gringer
Wilmer Cutler Pickering Hale & Dorr LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Tel:  212-230-8800
david.gringer@wilmerhale.com

James P. Rouhandeh
Michael Scheinkman
Davis Polk & Wardwell LLP
450 Lexington Avenue
New York, NY 10017
Tel: 212-450-4000
rouhandeh@davispolk.com
michael.scheinkman@davispolk.com

**22. Nationwide Service of Process.**  Good cause having been shown in view of the geographic dispersion of potential witnesses in this action, the Parties will be allowed nationwide service of process of discovery and trial subpoenas pursuant to Federal Rule of Civil Procedure 45 and 15 U.S.C. § 23 to issue from this Court.  The availability of nationwide service of process, however, does not make a witness who is otherwise "unavailable" for purposes of Federal Rule of Civil Procedure 32 and Federal Rule of Evidence 804 available under these rules regarding the use at trial of a deposition taken in this action.

**23. Modification of Scheduling and Case Management Order.**  Parties may not extend any deadline by stipulation; instead, Parties must seek extensions by motion.  Consent motions are generally looked upon with favor by the Court.

DATED: February 22, 2022                    Respectfully submitted,


                                            /s/ Daniel J. Matheson
                                            Daniel Matheson, Esq.
                                            (D.C. Bar #502490)
                                            Federal Trade Commission
                                            Bureau of Competition
                                            600 Pennsylvania Avenue N.W.
                                            Washington, D.C. 20580
                                            Telephone: (202) 326-2075
                                            Email: dmatheson@ftc.gov

                                            *Counsel for Plaintiff*
                                            *Federal Trade Commission*


                                            /s/ Mark Hansen
                                            Mark Hansen, Esq.
                                            Kellogg, Hansen, Todd, Figel & Frederick,
                                            P.L.L.C.
                                            1615 M Street, N.W.
                                            Washington, D.C. 20036
                                            Mhansen@kellogghansen.com
                                            (202) 326-7904

                                            *Counsel for Meta Platforms, Inc.*

# EXHIBIT A

## PLAINTIFF'S PROPOSED SCHEDULING ORDER

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **FEDERAL TRADE COMMISSION**,<br><br>                      Plaintiff,<br><br>        v.<br><br>**META PLATFORMS, INC.**<br><br>                   Defendant. | Civil Action No. 1:20-cv-03590 (JEB) |

## <u>PLAINTIFF'S PROPOSED SCHEDULING ORDER</u>

Pursuant to the Initial Scheduling Conference held February 28, 2022, and the Joint Rule 16.3 Report previously submitted by the parties, the Court ORDERS that the following schedule shall govern further proceedings:

1.     The deadline for amendment of pleadings or joinder shall be February 15, 2022;

2.     The deadline for initial disclosures shall be February 22, 2022;

3.     The deadline for plaintiff to substantially complete production of its investigative file shall be February 28, 2022;

4.     The deadline to file any motions to compel in connection with disputes regarding documents and data from third parties shall be July 11, 2022; the deadline for third parties to complete production of documents and data shall be October 3, 2022;

5.     Fact discovery shall close on January 13, 2023;

6.     Plaintiff's Rule 26(a)(2) expert disclosures shall be served February 24, 2023; Defendant's Rule 26(a)(2) expert disclosures shall be served April 21, 2023;

Plaintiff's rebuttal expert report shall be served June 16, 2023; expert discovery shall close on July 14, 2023;

7.    The deadline to file any summary judgment or *Daubert* motions shall be July 28, 2023; the deadline for any oppositions to timely summary judgment or *Daubert* motions shall be August 18, 2023; the deadline for any replies concerning summary judgment or *Daubert* motions shall be August 28, 2023;

8.    A pre-trial hearing is scheduled for November 9, 2023 at _____ in Courtroom 25;

9.    Trial is set for December 11, 2023;

10.   No discovery motions may be filed without leave of court. In the event that a discovery dispute arises, the parties shall make a good faith effort to resolve or narrow the areas of disagreement. If the parties are unable to resolve the discovery dispute, the parties shall jointly call chambers at (202) 354-3300, at which time the Court will either rule on the issue or determine the manner in which it will be handled; and

11.   Parties may not extend any deadline by stipulation; instead, parties must seek extensions by motion. Consent motions are generally looked upon with favor by the Court.

Upon consideration of the parties Joint Rule 16.3 Report, the Court further ORDERS that the following provisions shall govern the proceedings:

12.   **Bifurcation.** The provisions set forth below relating to discovery shall not apply to any additional discovery to facilitate a remedy phase. The parties should meet and confer and submit to the Court, no later than five weeks prior to the final

2

pretrial conference, proposals for an amended or separate Case Management Order governing the remedy phase.

13.    **Discovery of Confidential Information.**  Discovery and production of confidential information will be governed by the Protective Order and an ESI Order entered by the Court in this action.  No deadline in this order shall override any deadline set forth in the Protective Order or ESI Order.  When sending discovery requests, notices, and subpoenas to Nonparties, the Parties must include copies of any Protective Orders in effect at the time.

14.    **Document Requests.**  The Parties must serve any objections to requests for productions of documents within **[30]** days as required by FRCP 34. Within **[7]** calendar days of service of any objections to a request for production, the Parties must meet and confer to attempt to resolve any objections and to agree on materials to be searched. At the time it serves its responses, the producing Party will provide an estimated date for inspection/production in accordance with Fed. R. Civ. P. 34(b)(2)(B). To the extent that there is a dispute regarding the scope of production that impacts the estimated time period for completion of the responsive production, the Producing Party will supplement its good-faith estimate of the time period for completion of the responsive production upon resolution of such disputes. Responsive productions (subject to any objections or custodian issues that have not been resolved) shall be made on a rolling basis.

15.    **Interrogatories.**  The Parties must respond and serve any objections to interrogatories within **[30]** calendar days as required by Fed. R. Civ. P. 33. Within **[7]** calendar days of service of any objections, the parties must meet and confer to

attempt to resolve any objections and to discuss whether the request may be satisfied by the production of documents or structured data. Each Party is limited to **[30]** interrogatories in total (including discrete subparts). Contention interrogatories may be answered at any time up to **[30]** days after the close of fact discovery. Each side reserves the right to ask the Court for leave to serve additional interrogatories.

16.   **Requests for Admission.** Each side is limited to **[35]** requests for admission in total. Each side reserves the right to ask the Court for leave to serve additional requests for admission. Requests for admission relating solely to the authentication or admissibility of documents, data, or other evidence (which are issues that the parties must attempt to resolve initially through negotiation) do not count against these limits. The close of fact discovery shall not preclude requests for admission regarding the authentication and admissibility of exhibits.

17.   **Discovery on Nonparties.** Each Party must serve upon the other Party a copy of any discovery request served electronically on any Nonparty at the same time it is served on the Nonparty. A requesting Party must provide the other Party with a written record of any oral or written modifications, extensions, or postponements to the discovery request within **[3]** business days of the modification, extension, or postponement. Every discovery request to a Nonparty shall include a cover letter requesting that (a) the Nonparty stamp each document with a production number and any applicable confidentiality designation prior to producing it; (b) the Nonparty provide both to the requesting Party and to the other side copies of all productions at the same time; (c) the Nonparty provide to both the requesting

4

Case 4:20-cv-00957-SDJ    Document 574-17    Filed 07/19/24    Page 50 of 70 PageID #:
19605
Case 1:20-cv-03590-JEB    Document 100-1    Filed 02/22/22    Page 6 of 15

Party and the other side copies of all written correspondence with any Party

concerning the Nonparty's response to or compliance with any discovery request

(including any extensions, modifications, or postponements).  After May 2, 2022,

if a Party is in receipt of a subpoena served pursuant to Federal Rule of Civil

Procedure 45 upon a Nonparty, the deadline for the receiving Party to serve any

subpoena upon that Nonparty is 7 days.

18.    **Depositions.**

    a.    **Number of Depositions.**  Each side is limited to 500 total deposition hours for

fact witnesses.  The hours limit refers to time of testimony actually taken on the

record.  In the event that a noticed entity designates as a 30(b)(6) witness an

individual that was also noticed pursuant to Rule 30(b)(1), the noticed entity and

each noticing Party shall meet and confer to determine whether it is appropriate

to extend the length of the deposition beyond the limit that would otherwise

apply if the individual's deposition had been noticed only pursuant to Rule

30(b)(1).  There shall be no limit on the number of separate 30(b)(6) notices that

can be served on a Party or a Third Party.

The following depositions do not count against the above deposition limits: (a)

depositions of the Parties' designated expert witnesses; (b) sworn testimony

previously taken during the FTC's pre-Complaint investigation or in any other

litigation or government investigation; and (c) depositions taken for the sole

purpose of establishing the authenticity or admissibility of documents, provided

that such depositions may be noticed only after the Party taking the deposition

has taken reasonable steps to establish authenticity or admissibility through

other means, and further provided that such depositions must be designated at the time that they are noticed as being taken for the sole purpose of establishing authenticity or admissibility.

b. **Notice of Depositions.**  Within **[10]** calendar days of receipt of a deposition notice, the noticed Party or Nonparty must provide any objections it intends to assert in response to that deposition notice, and, if relevant, an alternative date on which witnesses will be made available for testimony.  Parties and Nonparties will use their best efforts to make witnesses available for deposition at a mutually agreeable time and location and without undue delay. If a witness is a former employee of any Party or Nonparty, upon receipt of a deposition notice for the former employee, that Party or Nonparty shall, within **[10]** calendar days of the deposition notice, provide the date of departure and last known address of the former employee, state whether counsel for the Party or Nonparty can accept service of the notice, and state whether the counsel for the Party or Nonparty will be representing the witness in connection with the deposition and, if not, provide the name and contact information for the witness' counsel or state that counsel for the Party or Nonparty is unaware that the witness is represented by counsel.

If a Party serves a subpoena for the production of documents or electronically stored information on a Party or Nonparty and a subpoena commanding attendance at a deposition by a witness employed by such Party or Nonparty, the Party serving those subpoenas must schedule the witness's deposition for a date at least **[14]** calendar days after the return date for the document subpoena.

If the return date for the document subpoena is extended: absent consent of both Plaintiff and Defendant, the deposition must be postponed to a date at least **[14]** calendar days following the date of production of substantially all documents required by the subpoena (as modified by any negotiations regarding subpoena compliance) (a) with respect to which the witness is an author, addressee, recipient, or custodian; and (b) are contained in a shared filing location or other electronic or physical repository that the witness accessed in the ordinary course of business.

For any deposition lasting longer than **[7]** hours, either Party or the witness may demand that the time remaining after the seventh hour be carried over to be completed on the next consecutive business day, or as soon as possible consistent with the convenience of the witness and the Parties.

c.  **Allocation of Time During Depositions.**

1.  ***Defendant's current employees***: During the deposition of a current employee of Defendant, Plaintiff may examine the witness for up to 7 hours.

2.  ***Defendant's former employees***: During the deposition of a former employee of Defendant that is noticed only by one side, the other side may question the witness for up to one hour at the conclusion of the noticing party's examination, which shall last no more than 6 hours.  During the deposition of a former employee of Defendant that is noticed by both Parties, the deposition will be **[10]** hours: (a) if the witness provided sworn testimony during the FTC's pre-Complaint investigation, the time will be

7

Case 4:20-cv-00957-SDJ    Document 574-17    Filed 07/19/24    Page 53 of 70 PageID #:
19608
Case 1:20-cv-03590-JEB    Document 100-1    Filed 02/22/22    Page 9 of 15

divided equally between the sides; (b) if the witness did not provide sworn

testimony during the FTC's pre-Complaint investigation, Plaintiff may

examine the witness for up to 7 hours and Defendant may examine the

witness for up to 3 hours.  In any deposition of a former employee of

Defendant, any time allotted to one side not used by that side may not be

used by the other side.

3. ***Nonparty witnesses who are not a former employee of Defendant***: (a) if

the deposition is noticed by only one side, the non-noticing side may

question the witness for up to one hour at the conclusion of the noticing

party's examination, which shall last no more than 6 hours; (b) if the

deposition is noticed by both sides, then the deposition will be **[10]** hours

and will be divided equally between the sides. Any time allotted to one side

not used by that side in a Nonparty deposition may not be used by the other

side.

19. **Inadvertent Production of Privileged Information.**  Inadvertent production of

privileged information shall be governed by the terms of a Court order under

Federal Rule of Evidence 502(d).

20. **Privilege Logs.**  The Parties agree that the following privileged or otherwise

protected communications shall not be the subject of discovery, need not be

preserved, and need not be placed on a privilege log:  email, notes, drafts,

communications, memoranda, documents, or other work product produced by or

Case 4:20-cv-00957-SDJ    Document 574-17    Filed 07/19/24    Page 54 of 70 PageID #:
19609
Case 1:20-cv-03590-JEB    Document 100-1    Filed 02/22/22    Page 10 of 15

exchanged solely among and between:  (a) outside counsel[1] for the Defendant; (b) outside counsel for Defendant and/or In-House counsel (as that term is defined in the Protective Order in this action) employed by Defendant and counsel for Parties with common legal interest in defending potential or current litigation against Meta; (c) In-House Counsel (as that term is defined in the Protective Order in this action) employed by Defendant on topics relating to potential or current litigation against Meta; (d) counsel for the Federal Trade Commission (or persons employed by the Federal Trade Commission); (e) counsel for the Federal Trade Commission (or persons employed by the Federal Trade Commission) and counsel for a plaintiff with which the FTC shares a common legal interest in pursuing or exploring litigation against Meta; (f) counsel for the Federal Trade Commission (or persons employed by the Federal Trade Commission) and counsel employed by any executive-branch agency of the federal government. When responsive or non-responsive, privileged documents described in this Paragraph are attached to responsive non-privileged documents that are produced in whole or in part, however, the producing Party will insert a placeholder to indicate a document has been withheld from that family.

21.    **Privilege Log Timing and Format.**  If a producing party redacts documents within a production or withholds documents from a production as privileged, it shall provide a privilege log relating to those documents within **[21]** calendar days of the production in which the documents would have been included but for the

---

[1] As used in this Paragraph, "counsel" includes attorneys, economists or other experts assisting counsel, paralegals, assistants, and those acting on behalf of counsel.

privilege claim. A producing Party must provide a final privilege log no later than **[30]** calendar days prior to the close of fact discovery.  All privilege logs shall be provided in Excel format.

22.    **Presumptions of Authenticity**.  Documents produced in response to a discovery request by Parties and Nonparties from their own files will be presumed to be authentic within the meaning of Federal Rule of Evidence 901.  Any good-faith objection to a document's authenticity must be provided with the exchange of other objections to intended trial exhibits. If the opposing side serves a specific good-faith written objection to the document's authenticity, the presumption of authenticity will no longer apply to that document and the parties will promptly meet and confer to attempt to resolve any objection.

23.    **Expert Witness Disclosures** – **Materials Protected from Disclosure.**  The following information, documents, and materials are not discoverable, and need not be preserved or disclosed for purposes of complying with Federal Rule of Civil Procedure 26(a)(2), 26(b)(4), or any other rule, including testimony at deposition, hearing, or trial, unless such materials provide the only record of a fact or assumption that the expert relied on in forming the opinions to be expressed: (a) any form of oral or written communications, correspondence, or work product shared between:  (i) the expert and any persons assisting the expert; (ii) Plaintiff's counsel and Plaintiff's experts, or between any agent or employee of Plaintiff's counsel and Plaintiff's experts; (iii) Meta's counsel and Meta's experts, or between any agent or employee of Meta's counsel and Meta's experts; (iv) testifying and non-testifying experts; (v) non-testifying experts; or (vi) testifying

experts; (b) expert's notes, except for notes of interviews if the expert relied upon the notes in forming any opinions in his or her final report; (c) drafts of expert reports, affidavits, or declarations or comments, mark-ups, or edits prepared in connection with such drafts; and (d) data formulations, data runs, data analyses, surveys, studies, or any database-related operations not relied upon by the expert in forming any opinions in his or her final report.

24.     **Expert Witness Disclosures – Materials To Be Disclosed**.  Subject to the limitations of the prior paragraph, the Parties agree that the following materials will be disclosed within **[2]** calendar days of when each expert report is served, or, for those materials to be made available upon request, within **[7]** calendar days of the request: (a) a list of all documents relied upon by the expert in forming any opinions in his or her report, including Bates numbers of documents previously produced; (b) a list of all publications authored by the expert in the previous **[10]** years; (c) upon reasonable request, copies of all publications authored by the expert in the previous **[10]** years that are not readily available publicly; and (d) for all calculations or other quantitative analyses appearing in the report, the data set and programs underlying such calculations or quantitative analyses that were relied upon by the expert, including the programs and codes necessary to recreate the calculations or quantitative analyses from the data set.

25.     **Expert Depositions**.  Each expert may be deposed for **[7]** hours.  The Parties may request additional time only upon a particularized showing of good cause made to the Court.  Depositions of each Party's experts will be conducted only after disclosure of all expert reports and materials to be disclosed.

26.   **Service of Pleadings and Discovery on Other Parties**.  Service of all pleadings must be made by ECF (which will send notice to all Parties and Nonparties registered with ECF).  Service of all trial subpoenas and discovery requests on a Party (including subpoenas for testimony or documents under Federal Rule of Civil Procedure 45), expert disclosures, and delivery of all correspondence in this matter must be made by email to the persons whose email is listed below.  If the volume of attachments makes service by email or ECF impracticable, a Party shall make service via a Secure FTP service or overnight delivery to the persons listed below.  Service of trial subpoenas and discovery requests on a Nonparty (including subpoenas for testimony or documents under Federal Rule of Civil Procedure 45) may be made by email when the Nonparty or counsel for the Nonparty consents, or when service is made by email on a counsel who enters an appearance in this action on behalf of the Nonparty.  Service via email will be considered equivalent to service by hand.

> For Plaintiff FTC:
>     Daniel Matheson
>     Owen Masters
>     Michael Smith
>     Sunila Steepen
>     Dominique Wilson
>     Krisha Cerilli
>     Robert Zuver
>     Maggie DiMoscato
>     Federal Trade Commission
>     600 Pennsylvania Ave. N.W.
>     Washington D.C. 20580
>     Tel: 202-326-2075
>     dmatheson@ftc.gov
>     omasters@ftc.gov
>     msmith9@ftc.gov
>     dwilson1@ftc.gov
>     ssteephen@ftc.gov

kcerilli@ftc.gov
rzuver@ftc.gov
mdimoscato@ftc.gov


For Defendant Meta:
     Mark C. Hansen
     Kevin B. Huff
     Kenneth M. Fetterman
     Geoffrey M Klineberg
     Kevin J. Miller
     Aaron M. Panner
     Alex A. Parkinson
     Ana Nikolic Paul
     Aaseesh P. Polavarapu
     Kellogg, Hansen, Todd, Figel, & Frederick, P.L.L.C.
     1615 M Street, N.W. Suite 400
     Washington, DC 20036
     Tel: 202-326-7900
     mhansen@kellogghansen.com
     khuff@kellogghansen.com
     kfetterman@kellogghansen.com
     gklineberg@kellogghansen.com
     kmiller@kellogghansen.com
     apanner@kellogghansen.com
     aparkinson@kellogghansen.com
     apaul@kellogghansen.com
     apolavarapu@kellogghansen.com

     Sonal N. Mehta
     Wilmer Cutler Pickering Hale & Dorr LLP
     2600 El Camino Real, Suite 400
     Palo Alto, CA 94306
     Tel: 650-858-6000
     sonal.mehta@wilmerhale.com

     David Gringer
     Wilmer Cutler Pickering Hale & Dorr LLP
     7 World Trade Center
     250 Greenwich Street
     New York, NY 10007
     Tel:  212-230-8800
     david.gringer@wilmerhale.com

     James P. Rouhandeh
     Michael Scheinkman

Case 4:20-cv-00957-SDJ    Document 574-17    Filed 07/19/24    Page 59 of 70 PageID #:
19614
Case 1:20-cv-03590-JEB    Document 100-1    Filed 02/22/22    Page 15 of 15

Davis Polk & Wardwell LLP
450 Lexington Avenue
New York, NY 10017
Tel: 212-450-4000
rouhandeh@davispolk.com
michael.scheinkman@davispolk.com

27.    **Nationwide Service of Process**.  Good cause having been shown in view of the

geographic dispersion of potential witnesses in this action, the Parties will be

allowed nationwide service of process of discovery and trial subpoenas pursuant

to Federal Rule of Civil Procedure 45 and 15 U.S.C. § 23 to issue from this Court.

The availability of nationwide service of process, however, does not make a

witness who is otherwise "unavailable" for purposes of Federal Rule of Civil

Procedure 32 and Federal Rule of Evidence 804 available under these rules

regarding the use at trial of a deposition taken in this action.


SO ORDERED.


DATED: _____            _____

                                        Honorable James E. Boasberg
                                        United States District Judge

# EXHIBIT B

## DEFENDANT'S PROPOSED
## SCHEDULING ORDER

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>META PLATFORMS, INC.,<br><br>Defendant. | Case No. 1:20-cv-03590-JEB |

## META PLATFORMS, INC.'S PROPOSED SCHEDULING ORDER

Pursuant to the Initial Scheduling Conference held February 28, 2022, and the Joint Rule 16.3 Report previously submitted by the parties, the Court ORDERS that the following schedule shall govern further proceedings:

1. The deadline for amendment of pleadings and joinder of additional parties shall be February 15, 2022;

2. The deadline for initial disclosures shall be February 22, 2022;

3. The deadline for Plaintiff to begin production of its investigatory file shall be no later than February 24, 2022. The deadline for Plaintiff to substantially complete the production of its investigatory file shall be no later than February 28, 2022. The FTC's investigatory file shall be produced on an outside-counsel-only basis pending entry of an appropriate protective order;

4. Fact discovery shall close on May 29, 2023;

5. Plaintiff's Rule 26(a)(2) expert disclosures shall be served by July 13, 2023;

6. Defendant's Rule 26(a)(2) expert disclosures shall be served by September 12, 2023;

2022.02.19 Meta Draft Rule 16.3 Report – Exhibit B

7. Plaintiff's rebuttal expert disclosures shall be served by November 14, 2023;

8. Expert discovery shall close on February 13, 2024;

9. A post-discovery status hearing is scheduled for _____, 2023 at _____ in Courtroom 25;

10. No discovery motions may be filed without leave of court.  In the event that a discovery dispute arises, the parties shall make a good faith effort to resolve or narrow the areas of disagreement.  If the parties are unable to resolve the discovery dispute, the parties shall jointly call chambers at (202) 354-3300, at which time the Court will either rule on the issue or determine the manner in which it will be handled; and

11. Parties may not extend any deadline by stipulation; instead, parties must seek extensions by motion.  Consent motions are generally looked upon with favor by the Court.

Upon consideration of the parties Joint Rule 16.3 Report, the Court further ORDERS that the following provisions shall govern the proceedings:

12. **Bifurcation.**   There will be a first phase that will address only the Defendant's liability under the antitrust laws.  If the Court renders a decision finding the Defendant liable, then the Court will hold separate proceedings regarding any remedies for any violations of the antitrust laws that it finds.  During the liability phase, the Parties shall not take fact or expert discovery about issues solely relevant to remedies.

13. **Discovery of Confidential Information.**  Discovery and production of confidential information will be governed by the Protective Order and an ESI Order entered by the

2022.02.19 Meta Draft Rule 16.3 Report – Exhibit B

Court in this action.  No deadline in this order shall override any deadline set forth in the Protective Order or ESI Order.  When sending discovery requests, notices, and subpoenas to Nonparties, the Parties must include copies of any Protective Orders in effect at the time.

14. **Interrogatories.**  Each Party shall be limited to 30 interrogatories in total (including discrete subparts).  Each Party reserves the right to ask the Court for leave to serve additional interrogatories.

15. **Requests for Admission.**  Each Party shall be limited to 35 requests for admission in total.  Requests for admission relating solely to the authentication of documents, data, or other evidence do not count against these limits.  Each Party reserves the right to ask the Court for leave to serve additional requests for admission.

16. **Depositions.**  Each Party shall be limited to 900 total deposition hours for fact witnesses, with a maximum of 200 hours for depositions of current and former Meta employees.  Depositions pursuant to Federal Rule of Civil Procedure 30(b)(6) shall count against the 200-hour maximum, and the total number of hours of Rule 30(b)(6) testimony of Meta shall not exceed 21 hours (unless otherwise agreed by counsel or decided by Court order).  Depositions of the Parties' designated expert witnesses shall not count against the deposition hours allocated for fact witnesses.  Sworn testimony taken by the FTC of Meta employees during its pre-complaint investigation (approximately 150 hours) shall count against its 900-hour deposition limit.  Any deposition of Meta employees shall be limited to new areas not covered in prior sworn testimony.

17. **Allocation of Time During Depositions.**

2022.02.19 Meta Draft Rule 16.3 Report – Exhibit B

    a.  Except as provided below, no deposition shall exceed the 7 hours provided in the Federal Rules of Civil Procedure, absent a particularized showing of good cause made to the Court.

    b.  ***Defendant's former employees***:  For former employees, if the witness did not provide an interview or sworn testimony during the FTC's pre-complaint investigation:  (a) if the deposition is noticed by both sides, the 7 hours shall be divided equally between the sides (3.5 hours each); (b) if the deposition is noticed by only one side, the noticing Party shall have 6 hours for its examination, and the non-noticing Party shall be allowed to question the witness for up to 1 hour at the conclusion of the noticing Party's examination.  Former employees who provided an interview during the FTC's pre-complaint investigation shall be examined by Defendant for up to 7 hours and by Plaintiff for up to 3 hours.  For former employees who provided sworn testimony during the FTC's pre-complaint investigation, the FTC shall be permitted to take testimony only on topics not previously covered in the prior testimony.  Such former employees who provided sworn testimony during the FTC's pre-complaint investigation shall be examined by Defendant for up to 7 hours and by Plaintiff for up to 3 hours.  Any change in these time allocations shall be granted only upon a particularized showing of good cause made to the Court.  In any deposition of a former employee of Defendant, any time allotted to one side not used by that side shall not be used by the other side.

    c.  ***Nonparty witnesses who are not a former employee of Defendant***:  (a) If the deposition is noticed by only one side, the non-noticing side may question the

2022.02.19 Meta Draft Rule 16.3 Report – Exhibit B

witness for up to 1 hour at the conclusion of the noticing party's examination, which shall last no more than 6 hours; (b) if the deposition is noticed by both sides, then the deposition shall be 10 hours and shall be divided equally between the sides. Any time allotted to one side not used by that side in a Nonparty deposition may not be used by the other side.

18. **Inadvertent Production of Privileged Information.**  Inadvertent production of privileged information shall be governed by the terms of a Court order under Federal Rule of Evidence 502(d).

19. **Privilege Logs.**  The Parties agree that the following privileged or otherwise protected communications shall not be the subject of discovery, need not be preserved, and need not be placed on a privilege log:  email, notes, drafts, communications, memoranda, documents, or other work product produced by or exchanged solely among and between:  (a) outside counsel[1] for the Defendant; (b) outside counsel for Defendant and/or In-House counsel (as that term is defined in the Protective Order in this action) employed by Defendant and counsel for Parties with common legal interest in defending potential or current litigation against Meta; (c) In-House Counsel (as that term is defined in the Protective Order in this action) employed by Defendant on topics relating to potential or current litigation against Meta; (d) counsel for the Federal Trade Commission (or persons employed by the Federal Trade Commission); (e) counsel for the Federal Trade Commission (or persons employed by the Federal Trade Commission) and counsel for a plaintiff with which the FTC shares a common legal interest in pursuing or exploring litigation

---

[1] As used in this Paragraph, "counsel" includes attorneys, economists or other experts assisting counsel, paralegals, assistants, and those acting on behalf of counsel.

Case 4:20-cv-00957-SDJ    Document 574-17    Filed 07/19/24    Page 66 of 70 PageID #:
19621
Case 1:20-cv-03590-JEB    Document 100-2    Filed 02/22/22    Page 7 of 11

2022.02.19 Meta Draft Rule 16.3 Report – Exhibit B

against Meta; (f) counsel for the Federal Trade Commission (or persons employed by the Federal Trade Commission) and counsel employed by any executive-branch agency of the federal government.  When responsive or non-responsive, privileged documents described in this Paragraph are attached to responsive non-privileged documents that are produced in whole or in part; however, the producing Party will insert a placeholder to indicate a document has been withheld from that family.

20. **Privilege Log Timing and Format.**  The Parties shall provide privilege logs 90 days after completion of production for each set of requests of production, or such other agreed upon date.  For production of discovery completed at the close of fact discovery, the Parties shall provide privilege logs by 30 days after the completion of production.  All privilege logs shall be provided in Excel format.

21. **Expert Witness Disclosures – Materials Protected from Disclosure.**  The following information, documents, and materials are not discoverable, and need not be preserved or disclosed for purposes of complying with Federal Rule of Civil Procedure 26(a)(2), 26(b)(4), or any other rule, including testimony at deposition, hearing, or trial, unless such materials provide the only record of a fact or assumption that the expert relied on in forming the opinions to be expressed:  (a) any form of oral or written communications, correspondence, or work product shared between:  (i) the expert and any persons assisting the expert; (ii) Plaintiff's counsel and Plaintiff's experts, or between any agent or employee of Plaintiff's counsel and Plaintiff's experts; (iii) Meta's counsel and Meta's experts, or between any agent or employee of Meta's counsel and Meta's experts; (iv) testifying and non-testifying experts; (v) non-testifying experts; or (vi) testifying experts; (b) expert's notes, except for notes of

2022.02.19 Meta Draft Rule 16.3 Report – Exhibit B

interviews if the expert relied upon the notes in forming any opinions in his or her final report; (c) drafts of expert reports, affidavits, or declarations or comments, mark-ups, or edits prepared in connection with such drafts; and (d) data formulations, data runs, data analyses, surveys, studies, or any database-related operations not relied upon by the expert in forming any opinions in his or her final report.

22. **Expert Witness Disclosures – Materials To Be Disclosed.**  Subject to the limitations of the prior paragraph, the Parties agree that the following materials will be disclosed within 2 calendar days of when each expert report is served, or, for those materials to be made available upon request, within 7 calendar days of the request: (a) a list of all documents relied upon by the expert in forming any opinions in his or her report, including Bates numbers of documents previously produced; (b) a list of all publications authored by the expert in the previous 10 years; (c) upon reasonable request, copies of all publications authored by the expert in the previous 10 years that are not readily available publicly; and (d) for all calculations or other quantitative analyses appearing in the report, the data set and programs underlying such calculations or quantitative analyses that were relied upon by the expert, including the programs and codes necessary to recreate the calculations or quantitative analyses from the data set.

23. **Expert Depositions.**  Each expert may be deposed for 7 hours.  The Parties may request additional time only upon a particularized showing of good cause made to the Court.  Depositions of each Party's experts will be conducted only after disclosure of all expert reports and materials to be disclosed.

2022.02.19 Meta Draft Rule 16.3 Report – Exhibit B

24. **Service of Pleadings and Discovery on Other Parties.** Service of all pleadings must be made by ECF (which will send notice to all Parties and Nonparties registered with ECF). Service of all trial subpoenas and discovery requests on a Party (including subpoenas for testimony or documents under Federal Rule of Civil Procedure 45), expert disclosures, and delivery of all correspondence in this matter must be made by email to the persons whose email is listed below. Service of trial subpoenas and discovery requests on a Nonparty (including subpoenas for testimony or documents under Federal Rule of Civil Procedure 45) may be made by email when the Nonparty or counsel for the Nonparty consents, or when service is made by email on a counsel who enters an appearance in this action on behalf of the Nonparty. Service via email will be considered equivalent to service by hand.

For Plaintiff FTC:

Daniel Matheson
Owen Masters
Michael Smith
Sunila Steepen
Dominique Wilson
Krisha Cerilli
Robert Zuver
Maggie DiMoscato
Federal Trade Commission
600 Pennsylvania Ave. N.W.
Washington D.C. 20580
Tel: 202-326-2075
dmatheson@ftc.gov
omasters@ftc.gov
msmith9@ftc.gov
dwilson1@ftc.gov
ssteephen@ftc.gov
kcerilli@ftc.gov
rzuver@ftc.gov
mdimoscato@ftc.gov

For Defendant Meta:

2022.02.19 Meta Draft Rule 16.3 Report – Exhibit B

Mark C. Hansen
Kevin B. Huff
Kenneth M. Fetterman
Geoffrey M Klineberg
Kevin J. Miller
Aaron M. Panner
Alex A. Parkinson
Ana Nikolic Paul
Aaseesh P. Polavarapu
Kellogg, Hansen, Todd, Figel, & Frederick, P.L.L.C.
1615 M Street, N.W. Suite 400
Washington, DC 20036
Tel: 202-326-7900
mhansen@kellogghansen.com
khuff@kellogghansen.com
kfetterman@kellogghansen.com
gklineberg@kellogghansen.com
kmiller@kellogghansen.com
apanner@kellogghansen.com
aparkinson@kellogghansen.com
apaul@kellogghansen.com
apolavarapu@kellogghansen.com

Sonal N. Mehta
Wilmer Cutler Pickering Hale & Dorr LLP
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
Tel: 650-858-6000
sonal.mehta@wilmerhale.com

David Gringer
Wilmer Cutler Pickering Hale & Dorr LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Tel:  212-230-8800
david.gringer@wilmerhale.com

James P. Rouhandeh
Michael Scheinkman
Davis Polk & Wardwell LLP
450 Lexington Avenue
New York, NY 10017
Tel: 212-450-4000
rouhandeh@davispolk.com
michael.scheinkman@davispolk.com

2022.02.19 Meta Draft Rule 16.3 Report – Exhibit B

25. **Nationwide Service of Process.**  Good cause having been shown in view of the geographic dispersion of potential witnesses in this action, the Parties will be allowed nationwide service of process of discovery and trial subpoenas pursuant to Federal Rule of Civil Procedure 45 and 15 U.S.C. § 23 to issue from this Court.  The availability of nationwide service of process, however, does not make a witness who is otherwise "unavailable" for purposes of Federal Rule of Civil Procedure 32 and Federal Rule of Evidence 804 available under these rules regarding the use at trial of a deposition taken in this action.

**SO ORDERED**.

DATED:_____            _____
                                          Honorable James E. Boasberg
                                          United States District Judge