**FILED UNDER SEAL**

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| THE STATE OF TEXAS, ET AL. | § § § | |
| v. | § § | CIVIL NO. 4:20-CV-957-SDJ |
| GOOGLE LLC | § § § | |

## REPORT AND RECOMMENDATION OF SPECIAL MASTER

The Court referred Google LLC's ("Google") Motion for Protective Order (Dkt. #347) and Memorandum in Support of Google LLC's Motion for a Protective Order (Dkt. #361)[1] (the "Motion") to the Special Master for consideration and entry of a report and recommended disposition. (Dkt. #367). On April 15, 2024, the Plaintiff States (the "States") filed their response in opposition to the Motion. (Dkt. #374). On April 18, 2024, the Special Master held an in-person hearing regarding the Motion (the "April 18 Hearing").

The Motion seeks an order (i) preventing the States from pursuing interrogatory answers, requested documents, and Rule 30(b)(6) deposition testimony addressed to "discovery-on-discovery," principally as to Google Chats, and (ii) protecting against the deposition of Google's in-house counsel ▮▮▮▮▮▮. (Dkt. #361).

For the reasons stated herein, the Special Master recommends that the Court **GRANT-IN-PART** and **DENY-IN-PART** the Motion. The Special Master recommends

---

[1] Google's Memorandum in Support was originally filed at Dkt. #348, but subsequently, a corrected version was filed at Dkt. #361.

that the Court: (i) **GRANT** the Motion as to ▇▇▇▇▇▇'s deposition, (ii) **GRANT** the Motion as to the States' written discovery seeking discovery-on-discovery without prejudice to the States later seeking such discovery if justified, (iii) **DENY** the Motion as to Rule 30(b)(6) testimony on Topics 1 and 18 with respect to Google Chats; and (iv) **GRANT** the Motion as to Rule 30(b)(6) testimony on Topics 2, 3, 4, 5, 16, 17, and 19. The Special Master further recommends that Google—through its counsel of record in this case—be **ORDERED** to conduct a re-review of those privileged documents identified on its privilege log that mention or refer to ▇▇▇▇▇▇ and confirm that such documents, upon counsel of record's review, are not tainted by the alleged "fake privilege."

1. **LEGAL STANDARD**

It is well-established that "control of discovery is committed to the sound discretion of the trial court." *Williamson v. U.S. Dep't of Agric.*, 815 F.2d 368, 382 (5th Cir. 1987). Under Federal Rule of Civil Procedure 26(b)(1), "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Both Rule 26(b)(1) and this District's Local Civil Rule 26(d) provide guidance in evaluating whether the requested discovery is both relevant and proportional. *See* Fed. R. Civ. P. 26(b)(1) (factors to consider include the "importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."); E.D. Tex. Local Rule CV-26(d) (5 factors guiding relevant discovery). Rule

26(b) "has never been a license to engage in an unwieldy, burdensome, and speculative fishing expedition." *Crosby v. La. Health Serv. & Indem. Co.*, 647 F.3d 258, 264 (5th Cir. 2011) (internal quotation marks and citation omitted).

### a.  Discovery-On-Discovery

When considering whether "discovery-on-discovery" is appropriate, Courts "have insisted that the documents that have been produced permit a reasonable deduction that other documents may exist or did exist and have been destroyed." *Hubbard v. Potter*, 247 F.R.D. 27, 29 (D.D.C. 2008); *accord Tijerina v. Stanley*, Civ. A. No. 5:16-cv-102, 2019 WL 1396964, at *4 (E.D. Tex. Mar. 28, 2019) ("[H]e asserts there were other medical records which would have supported all of his allegations; however, he offers nothing to suggest that any such records exist.").

### b.  Protective Orders

"The only pre-deposition protest allowed by the Federal Rules of Civil Procedure is a motion for a protective order." *Ferko v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 218 F.R.D. 125, 144 (E.D. Tex. 2003) (citations omitted). Under Federal Rule of Civil Procedure 26(c), a "court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). The movant bears the burden of showing that a protective order is necessary, "which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *Equal Emp. Opportunity Cmm'n v. BDO USA, L.L.P.*, 876 F.3d 690, 698 (5th Cir. 2017) (internal quotation marks and citation omitted); *Zavala v. Cooper Tire & Rubber Co.*, No. 4:22-CV-498, 2022 WL 17069113, at *1 (E.D. Tex. Nov. 17, 2022)

(citing *Landry v. Air Line Pilots Ass'n*, 901 F.2d 404, 435 (5th Cir. 1990)) ("Therefore, a Protective Order is warranted in those instances in which the party seeking it demonstrates good cause and a specific need for protection.").

"The Court has broad discretion in determining whether to grant a motion for Protective Order and what degree of protection is required because it is 'in the best position to weigh fairly the competing needs and interests of parties affected by discovery.'" *Zavala*, 2022 WL 17069113, at *1 (quoting *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984)).

Protective orders barring depositions are rarely granted, "and absent extraordinary circumstances, such an order would likely be in error." *Salter v. Upjohn Co.*, 593 F.2d 649, 651 (5th Cir. 1979) (citations omitted) (noting that "[i]t is very unusual for a court to prohibit the taking of a deposition altogether"); *see Bucher v. Richardson Hosp. Auth.*, 160 F.R.D. 88, 92 (N.D. Tex. 1994) ("Protective orders prohibiting depositions are rarely granted.").

2. ANALYSIS

   a. Discovery-On-Discovery

Google argues that the States have not articulated a basis for "discovery-on-discovery," noting that the primary focus of the States' discovery-on-discovery has been the retention of Google Chats. (Dkt. #361 at 6–7). Google notes that the States were informed of Google's Chat retention policies in January 2020, that Google did not have a duty to preserve Chats until September 2019, and that the majority of the conduct at issue in this action occurred before

September 2019. (*Id.*). Google further notes that the States have had an opportunity to depose Google employees about Chats. (*Id.* at 7).

The States argue that they are entitled to the requested discovery-on-discovery because the evidence supports a "reasonable deduction" that relevant Chats were destroyed. (Dkt. #374 at 7). In particular, the States point to the wide discrepancy between the number of Chats produced—13,588—with the number of emails produced—3.8 million—especially considering testimony from Google witnesses that they use Chats frequently and, in some cases, at least as often as emails. (*Id.* at 2–4). The States also rely on findings in *In re Google Play Store Antitrust Lit.* (N.D. Cal.) ("*Play*") that Google destroyed Chats relevant to that case, which, in combination with the paltry number of Chats produced in this case, is sufficient to justify discovery into Chat retention. (*Id.* at 1–2).

The Special Master finds that Google's Chat retention policy and the record *in this case* justifies some limited discovery-on-discovery. Google witnesses have testified that they frequently use Chats to discuss business matters, and possibly as much as they use emails. (*See, e.g.,* #374-4 at 247:21–22, 258:24–25 (███████ testifying "I use Chat on a daily basis" and "on some days I have hundreds of chats"); #374-5 at 61:21 – 62:2 (███████ testifying that email, Chats, and in-person discussions are "interchangeable")). Once the Texas Attorney General's investigation of Google began in September 2019, Google had an obligation to preserve relevant information, and that would include Chats. Google instructed each employee to decide whether to put Chats "on-the-record" on a message-by-message basis. (*See* Dkt. #280-

3 at 4). And in contrast to Google's Chat retention policy, Google preserved all emails instead of delegating preservation decisions to individual employees. (Apr. 18 Hrg. Tr. at 81). On its face, Google's Chat retention policy appears to fall short of Google's obligation to preserve all relevant electronically stored information. *See* Fed. R. Civ. P. 37(e) Advisory Committee's Notes to 2015 Amendment ("Many court decisions hold that potential litigants have a duty to preserve relevant information when litigation is reasonably foreseeable."); *Peals v. QuikTrip Corp.*, Civ. A. No. 4:20-cv-22-KPJ, 2021 WL 2043185, at *5 (E.D. Tex. May 21, 2021) ("A party has a duty to preserve evidence 'when the party has notice that the evidence is relevant to the litigation or should have known that the evidence may be relevant.'") (quoting *Guzman v. Jones*, 804 F.3d 707, 713 (5th Cir. 2015)). Indeed, Google changed its Chat retention policy to preserve **all** Chats when issues arose as to the sufficiency of Google's preservation of Chats. (*See* Apr. 18 Hrg. Tr. at 84) (Chat retention policy changed in the first quarter of 2023).

Further, the wide disparity in the volume of Chats produced in comparison to emails and other documents produced is concerning and justifies further inquiry. *See U.S. v. Planned Parenthood Federation of America*, 2:21-cv-022-Z, 2022 WL 19021566, at *3 (N.D. Tex. Sept. 20, 2022) (ruling that relative disparity in document productions allowed "the Court to make 'a reasonable deduction that other documents may exist'") (internal citation omitted). The States argue that Google only produced 13,588 Chats, out of the approximately 6 million total documents produced—meaning Chats only comprise approximately **.23%** of Google's total document production and

.36% of Google's email production. At the April 18 Hearing, Google argued that the States incorrectly tabulated the number of Chats produced, but even accepting and applying Google's calculation, Chats remain a mere fraction of less than 1% of Google's total document production in this case. (*See* Apr. 18 Hrg. Tr. at 78) ("SPECIAL MASTER: [I]s the 13,000 number right? [GOOGLE COUNSEL]: That's broadly right yes.").

The Special Master notes the *Play* Court found that "Google fell strikingly short" as to preservation. *See Play*, 664 F. Supp. 3d 981, 992 (N.D. Cal. 2023). And, as Google acknowledges, the preservation policies in *Play* and this case were similar, if not identical. (*See* Apr. 18 Hrg. Tr. at 79) ("SPECIAL MASTER: Well, is there anything materially different about Google's retention policy in [*Play*] as compared to here during the relevant period? [GOOGLE COUNSEL]: The retention policies would have been broadly similar if not the same."). And the preservation obligation was triggered earlier in this action (September 2019) than in *Play* (2020).

At the April 18 Hearing, Google advanced an argument that at least one State, South Carolina, had a similar retention policy in place. (Apr. 18 Hrg. Tr. at 76–77). Setting aside whether that's a persuasive response to the sufficiency of Google's policy, Google has sought and the States have permitted discovery-on-discovery as to the States' document retention. (*See* Dkt. #374 at 10) ("Google has sought and has obtained, and is obtaining, similar discovery-on-discovery from the States."). And the Special Master has allowed discovery-on-discovery on certain States, as Google

sought and obtained. (*See, e.g.*, Dkt. #339 at 4) (ordering discovery into Puerto Rico's document collection efforts).

The Special Master also recognizes that Google's Texas counsel promptly disclosed Google's Chat retention policy to the State of Texas in January 2020, but the principal question here is less one of transparency than one of *compliance* with the independent preservation obligation. The Special Master also acknowledges Google's contention that the States waited to raise this issue until a late stage of the case but notes the States' response that Google did not identify or at least confirm which documents in its production actually were Chats until recently.

Google's retention policy on its face is inadequate and coupled with the other evidence in this case therefore permits a reasonable deduction that Chats were not preserved, which is sufficient to allow some limited discovery-on-discovery. *See Hubbard*, 247 F.R.D. at 29.[2] The Special Master recommends that the Court **DENY** the Motion as to Rule 30(b)(6) testimony sought by the States in noticed topics 1 to the extent they relate to Google Chats, and 18. The Special Master does not view the remaining discovery-on-discovery Rule 30(b)(6) topics, including Topic Nos. 2, 3, 4, 5, 16, 17, and 19, as germane to Chat preservation or otherwise proportional. Therefore, the Special Master recommends that the Court **GRANT** the Motion as to those topics.

The Special Master recommends that the Court **GRANT** the Motion as to the States' written discovery, including its Interrogatory Nos. 29–34 and Request for

---

[2] The Special Master's recommendation does not pass upon whether there was, in fact, any destruction or spoliation of Chats in this case—the Special Master merely finds that there is a sufficient basis to permit further discovery on the subject.

8

Production Nos. 119 and 121–135 for now, without prejudice to the States later seeking such written discovery if deposition testimony or other evidence warrants it.

     b.    Deposition of In-House Counsel

Google argues that the States should not be permitted to take ███████'s deposition under the test established in *Shelton v. American Motors Corp.*, 805 F.2d 1323 (8th Cir. 1986) and adopted by the Fifth Circuit in *Nguyen v. Excel Corp.*, 197 F.3d 200, 209 (5th Cir. 1999). (Dkt. #361 at 9). Under *Shelton*, counsel may not be deposed unless (1) no other means exist to obtain the information sought, (2) the information sought is relevant and non-privileged, and (3) the information is crucial to the preparation of the case. (*Id.* at 9–10) (citing *Nguyen*, 197 F.3d at 208). As to the first factor, Google argues that the requested testimony was already given in *Play*, that the States have it, and thus this element is not met. (*Id.* at 10). As to the second factor, Google argues that the testimony sought regarding Google's privilege assertions in this case is not relevant, because the privilege disputes in the *Play* case have no bearing on *this* case. (*Id.*). As to the third factor, because the States did not seek this testimony until years into the case, the States cannot credibly assert that the requested testimony is crucial to their preparation of the case. (*Id.* at 11). Finally, Google emphasizes that the privilege calls in this case are made by outside counsel. (*Id.* at 10).

The States respond that *Shelton* does not apply here, as ███████ is not trial counsel nor is she involved in trial strategy. (Dkt. #374 at 11). However, the States argue that her testimony would be proper even under the *Shelton* standard, as Google does not stipulate to the admissibility of ███████'s *Play* testimony, and Google has

9

continued to revise its privilege logs at this late stage of this case. (*Id.* at 12). The States contend that the "fake privilege" at issue in the *Play* case may have also occurred in this case, pointing to the voluminous entries on Google's privilege logs, many of which list ███████, and Google's continued revisions and "throw backs" of documents previously listed on privilege logs. (*Id.* at 3, 9–10).

The Special Master does not agree with the States that *Shelton* is inapplicable merely because ███████ is in-house, not trial counsel. *See Murphy v. Adelphia Recovery Trust*, No. 2-09-MC-105-B, 2009 WL 4755368, at *3 (N.D. Tex. Nov. 3, 2009) ("[T]he critical factor in determining whether the *Shelton* test applies is not the status of the lawyer as 'trial counsel,' but the extent of the lawyer's involvement in the pending litigation."). As the States acknowledge, ███████ appears on 822 documents produced by Google and "large numbers" of withheld documents, indicating her involvement in matters relevant to this litigation. (Dkt. #374 at 6). "Generally, federal courts have disfavored the practice of taking the deposition of a party's attorney; instead, the practice should be employed only in limited circumstances." *Theriot v. Par. of Jefferson*, 185 F.3d 477, 491 (5th Cir. 1999).

███████ previously testified in *Play* regarding privilege issues raised there. As to this case, the Special Master notes that Google has re-reviewed its privilege log entries, revised such entries, and de-designated numerous privilege designations, after and in response to the States' own thorough evaluation of Google's privilege logs

10

and identification of what they contended were deficient privilege assertions.[3] Further, as noted by Google at the April 18 Hearing, privilege evaluations in this case were made or supervised by Google's outside counsel—not ▇▇▇ or anyone else in Google's in-house legal department. (*See* Apr. 18 Hrg. Tr. at 92). Additionally, ▇▇▇ is not a document custodian in this case, nor did the States seek to include ▇▇▇ as a custodian. (Dkt. #361 at 9).

As to alleged "fake privilege" in this case, the States urge that the *Play* practice "may be present in this case" but have not pointed to any actual nexus between the privilege issues from *Play* and this case such that ▇▇▇'s deposition is justified. (Dkt. #374 at 2). At the April 18 Hearing, the States acknowledged that their stated need for such a deposition was to find out whether privilege issues from the *Play* case applied as to this case. (*See* Apr. 18 Hrg. Tr. at 110) ("We need testimony with respect to the practice that she testified about the *Play* case with respect to the relevant documents in this case and if those practices—the fake privilege practices can be [T]aken [W]ith [C]are,[4] how those relate to the relevant documents in this case."). The States have not made a sufficient showing of relevant, nonprivileged information to be obtained by deposing ▇▇▇ in this case. The Special Master therefore recommends that the Court **GRANT** the Motion as to ▇▇▇'s deposition.

---

[3] The States objected to roughly 300,000 of Google's privilege log entries. (*See* Dkt. #235 at 2). After re-review, Google made approximately 170,000 revisions to its log entries and produced 38,489 documents. (Dkt. #374 at 3).

[4] "Communicate With Care" is a term used internally by Google for their written communication practices. *See Play*, 664 F. Supp. 3d at 983.

However, the Special Master remains concerned about the "fake privilege" issues found in *Play* and whether they may have affected this case. The Special Master notes that ▇▇▇ testified in the *Play* trial, after which the *Play* Court found that fake privilege had occurred. *See Play*, Dkt. #849 at 162 ("Google's witnesses have also – and I'm referring here namely to in-house attorney ▇▇▇ ▇▇▇ – have also testified or given disturbing testimony about the use of, quote, 'fake privilege,' close quote, claims with respect to internal Google documents and communications."). Additionally, privilege assessments appear to have been made by outside counsel in the *Play* case, as they were here. (Apr. 18 Hrg. Tr. at 92–93) (Google's counsel acknowledging privilege calls were made by outside counsel in *Play*). The States note ▇▇▇ still appears on "large numbers" of privilege log entries as to withheld documents (though the precise number is not quantified), and appears on 822 previously withheld documents that were produced to the States after re-review. The Special Master further notes that Google, when conducting its privilege re-reviews in this case, did not afford special attention to documents in which ▇▇▇'s name appears, which took place after the findings in *Play*. (*Id.* at 96–97). This all gives the Special Master concern, given the seriousness of the issue and the rulings in *Play*.

The Special Master therefore recommends that Google be **ORDERED** to promptly complete a further review of **all** documents that continue to be withheld as privileged and on which ▇▇▇'s name appears. The review shall be undertaken by Google's counsel of record in this case. Google's counsel of record in this case shall

12

(i) report their findings to the Special Master, (ii) advise in the report as to the presence of "fake privilege," if any, as to the withheld documents and (iii) if needed, revise Google's privilege logs and produce previously withheld documents, if any.

The Special Master's recommendation is to take action to provide grounds to reasonably conclude that no documents in this case are being withheld on privilege without a good faith basis, unaffected by the troubling issues in *Play*. The Special Master is confident that such review by counsel of record here as officers of the Court will provide such grounds.

3. CONCLUSION

For the reasons stated herein, the Special Master recommends that the Court **GRANT-IN-PART** and **DENY-IN-PART** the Motion. The Special Master recommends that the Court: (i) **GRANT** the Motion as to ▬▬▬▬'s deposition, (ii) **GRANT** the Motion as to the States' written discovery seeking discovery-on-discovery without prejudice to the States later seeking such discovery if justified, (iii) **DENY** the Motion as to Rule 30(b)(6) testimony on Topics 1 and 18 with respect to Google Chats; and (iv) **GRANT** the Motion as to Rule 30(b)(6) testimony on Topics 2, 3, 4, 5, 16, 17, and 19. The Special Master further recommends that Google—through its counsel of record in this case—be **ORDERED** to conduct a re-review of those privileged documents identified on its privilege log that mention or refer to ▬▬▬▬ and confirm that such documents, upon counsel of record's review, are not tainted by the alleged "fake privilege."

Signed this 26th day of April, 2024.

**FILED UNDER SEAL**

_____
David T. Moran
**Special Master**
TXBN: 14419400
JACKSON WALKER LLP
2323 Ross Avenue, Suite 600
Dallas, Texas  75201
Telephone: (214) 953-6051
E-mail:  dmoran@jw.com

**FILED UNDER SEAL**

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing Order of Special Master was filed electronically in compliance with Local Rule CV-5(a) on this 26th day of April, 2024 and was served on all counsel who are deemed to have consented to electronic service by electronic mail.

_____
David T. Moran

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

Pursuant to the Court's Order Appointing Special Master (Dkt. No. 213), I certify that the Court has already granted authorization to seal this document.

Date: April 26, 2024

_____
David T. Moran