<span style="color:red"><strong>FILED UNDER SEAL</strong></span>

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| THE STATE OF TEXAS, ET AL. | § | |
|---|---|---|
| | § | |
| v. | § | CIVIL NO. 4:20-CV-957-SDJ |
| | § | |
| GOOGLE LLC | § | |

## ORDER OF SPECIAL MASTER

By Order of the Court dated January 26, 2024 (Dkt. #213) the undersigned was appointed Special Master to address discovery issues and disputes between Plaintiff States ("States") and Defendant Google LLC ("Google"). On June 26, 2024, the States filed their Motion to Compel Written Discovery Regarding Destruction of Google Chats (the "Motion") (Dkt. #540). The Special Master ordered Google to respond to the Motion by July 5, 2024 (Dkt. #541), and Google did so. (Dkt. #545). On July 9, 2024, the States filed a Notice of Supplemental Authority, alerting the Special Master to a recent court order issued in *In re Google Play Store Antitrust Lit.* (N.D. Cal.) ("*Play*"). (Dkt. 547). The Special Master held a hearing on the Motion via teleconference on July 10, 2024.

The States' Motion seeks an order compelling Google to: (1) provide the States with the start and end dates for any legal holds sent to Google's custodians since January 1, 2015 (Interrogatory No. 31); (2) produce any litigation holds or reminders that were issued to any custodians, or the like, since January 1, 2018 (Requests for Production Nos. 126 and 127); (3) produce the "system-wide backend log" previously produced in *Play* (Request for Production No. 133); and (4) produce the transcript

and accompanying documents from the May 20, 2024 "Google Chat" deposition of Google's corporate representative in *The State of Texas v. Google LLC*, Cause No. 22-01-88230 (377th Dist. Ct., Victoria County, Tex.) (the "Location Case").

Having fully considered the submissions and arguments of counsel, and for the reasons stated herein, the Special Master **GRANTS IN PART** and **DENIES IN PART** the States' Motion. The Special Master **GRANTS** the States' requests that Google: (1) provide a full answer to the States' Interrogatory No. 31; and (2) produce responsive documents to Requests for Production Nos. 126, 127, and 133 (as modified below). The Special Master **DENIES** the States' request for the Location Case deposition transcript and documents.

1. **LEGAL STANDARD**

It is well-established that "control of discovery is committed to the sound discretion of the trial court." *Williamson v. U.S. Dep't of Agric.*, 815 F.2d 368, 382 (5th Cir. 1987). Under Federal Rule of Civil Procedure 26(b)(1), "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." FED. R. CIV. P. 26(b)(1). Both Rule 26(b)(1) and this District's Local Civil Rule 26(d) provide guidance in evaluating whether the requested discovery is both relevant and proportional. *See* FED. R. CIV. P. 26(b)(1) (stating that the factors to consider include the "importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."); E.D. TEX. L. R. CV-26(d) (including 5 factors guiding

relevant discovery). Rule 26(b) "has never been a license to engage in an unwieldy, burdensome, and speculative fishing expedition." *Crosby v. La. Health Serv. & Indem. Co.*, 647 F.3d 258, 264 (5th Cir. 2011) (internal quotation marks and citation omitted).

When considering whether "discovery-on-discovery" is appropriate, courts "have insisted that the documents that have been produced permit a reasonable deduction that other documents may exist or did exist and have been destroyed." *Hubbard v. Potter*, 247 F.R.D. 27, 29 (D.D.C. 2008); *accord Tijerina v. Stanley*, Civ. A. No. 5:16-cv-102, 2019 WL 1396964, at *4 (E.D. Tex. Mar. 28, 2019) ("[H]e asserts there were other medical records which would have supported all of his allegations; however, he offers nothing to suggest that any such records exist.").

2.  **ANALYSIS**

The States argue that their Motion should be granted because there is evidence supporting a reasonable deduction that: (1) Google employees destroyed or failed to retain Chats at Google's direction; and (2) additional written discovery can fill in the gaps left by Google's document destruction. (Dkt. #540 at 7–13). The States rely heavily on the Rule 30(b)(6) deposition on Google Chats that the Special Master recommended and the Court ordered. (Dkt. #428 at 8); (Dkt. #452 at 1). The States further urge that the factual record is amply sufficient to permit more (but still limited) discovery. The States additionally argue that any objections on the basis of relevance, proportionality, or privilege are without merit. (*Id.* at 13–15). The States therefore request an order compelling Google to respond to the States' Interrogatory No. 31 in full, produce documents responsive to the States' Requests for Production

Nos. 126, 127, and 133, and produce the transcript and documents from the May 20, 2024 Google Chats deposition in the Location Case. (*Id.* at 15).

In response, Google re-urges an argument it previously presented to the Special Master; namely, that Google promptly disclosed its Chat retention policies to the States in 2020 and the States did not object until much later. (Dkt. #545 at 8–10). Google further argues that the evidence does not support the States' theory of destruction—for example, the States rely on the testimony of two employees who left the display ads business before Google's retention obligation arose in this case. (*Id.* at 10–11). Google also argues that statements relating to turning "history off" for Chats are taken out of context by the States. (*Id.* at 11–13). Additionally, Google argues that the States have not shown that they are entitled to further discovery regarding Chats. (*Id.* at 13–15).[1]

As a preliminary matter, the Special Master and Court already found that the States had submitted sufficient proof to meet their burden and that limited discovery

---

1 Relying on the work of a forensic technology director at KPMG, Google now claims that the difference between its Chat productions and email productions is far narrower. (*See* Dkt. #545 at 6–7, 10). At the April 18, 2024 hearing, Google asserted that it had produced approximately 13,000 Chats. (*See* Apr. 18 Hrg. Tr. at 78). Google now claims that the metric should not be Chat "conversations," but individual Chat messages. (*See* Dkt. #545 at 41). When considering that metric, Google claims that it has produced "approximately 470,410 individual messages." (*See id.* at Ex. 1). Google accordingly argues that further discovery on the Chat-front is unwarranted. While the Special Master recognizes the distinction Google is making, there is still a significant disparity between the Chats and emails produced in this case. More importantly, it is not the amount of communications produced that concerns the Special Master, but rather Google's compliance (or lack thereof) with its independent preservation obligation. (*See* Dkt. #428 at 8). Google's distinction between conversations and individual messages does not alleviate that concern.

Case 4:20-cv-00957-SDJ   Document 579-3   Filed 07/23/24   Page 5 of 17 PageID #: 19836

FILED UNDER SEAL

on discovery was justified because the evidence in this case "permits a reasonable deduction that Chats were not preserved[.]" (Dkt. #428 at 8); (Dkt. #452 at 1). The Special Master and the Court accordingly ordered limited discovery on discovery in the form of a Rule 30(b)(6) deposition and denying additional written discovery without prejudice, and stated that the States could seek later "written discovery if deposition testimony or other evidence warrants it." (Dkt. #428 at 8); (Dkt. #452 at 1) (adopting the Special Master's Report and Recommendation).

The question before the Special Master now is whether additional discovery on discovery is warranted. The Special Master finds that the evidence amply "warrants" and "justifies" the limited additional discovery on discovery contemplated in the Special Master's and Court's prior findings. (Dkt. #428 at 8); (Dkt. #452 at 1).

Google, however, argues that the Special Master must find good cause to modify the previously issued protective order before additional discovery on discovery may proceed. (*See* Dkt. #545 at 8) (citing *United States v. Homeward Residential, Inc.*, No. 4:12-CV-461, 2016 WL 279543, at *4 (E.D. Tex. Jan. 22, 2016))). The Special Master is unconvinced. Although the States' request for broader discovery was initially denied, the Special Master and the Court expressly noted that the denial was *without* prejudice to the instant Motion. (Dkt. #428 at 8); (Dkt. #452 at 1). The discovery ordered here thus does not require modification to the previous Order. Good cause is accordingly unnecessary. Regardless, the Special Master specifically finds that the States have submitted more than sufficient additional evidence—especially from the Rule 30(b)(6) deposition of Google's corporate representative on Chats—that

good cause does exist to allow for limited, additional discovery on discovery as discussed below.[2]

### a.    Interrogatory No. 31: Litigation Hold Start and End Dates

The States first seek a full answer to the States' Interrogatory No. 31, which asks Google to "[p]rovide the start and end dates for any legal holds applicable to any custodian identified in this matter from January 1, 2015 to the present." (Dkt. #540 at 12) (citing Dt. #348-1). According to the States, Google's litigation holds "can reveal (a) who was reminded to preserve relevant Chats and when, (b) what they were instructed to do, and thus (c) the scope and degree of Google's non-compliance with its preservation obligations"—all of which Google's corporate representative could not sufficiently answer. (*Id.*).

For its part, Google agreed to provide start and end dates for legal holds applicable to custodians in this case dating back to September 2019, but it objects to "starting in 2015 as Plaintiffs requested" because it claims it "had no obligation to retain Chat messages in this case prior to September 2019[.]" (Dkt. #545 at 13).

The Special Master agrees with the States that Google anticipated litigation concerning the antitrust and regulatory issues regarding ad tech, including DoubleClick, far before 2019. As argued at the hearing, Google's own privilege logs assert attorney client and work product privilege over DoubleClick- and ad tech-related communications as far back as 2006. (*See* Jul. 10 Hrg. Tr. at 21–25) ([States'

---

2 The Special Master additionally notes that Special Master has the judicially-delegated authority to now permit further discovery previously not allowed without prejudice, subject to Rule 53's objection procedures. (*See* Dkt. #213 at 4, 9) (ordering that the Special Master has the authority to oversee "all discovery in this matter").

Counsel]: "And it's not just me that says Google anticipated litigation as far back as 2006. This is their privilege log, Your Honor. This is what Google told us and told the Court, they have relevant documents beginning in 2006[.]"); (*see id.* at 24) ([States' Counsel]: "[L]ook at 2013 privilege log. The FTC investigation of DoubleClick. They had an obligation to preserve that.").

Despite Google contending, even admitting, that it anticipated litigation and therefore resisted discovery on the basis of privilege—as shown by Google's own privilege log entries dating back to 2006—the States asserted that many of Google's custodians in this action did not receive litigation holds until 2021 or 2023. (*See* Jul. 10 Hrg. Tr. at 44). Google did not rebut this claim. Further, Google's corporate representative was unable to provide the States with answers as to who received litigation holds or when they received the holds. (*See id.* at 45). And the Special Master's concern over Google's preservation efforts are only compounded by Google's continued reliance on privilege objections grounded on anticipation of litigation as a shield to refuse the production of documents well before 2019, while simultaneously insisting that its preservation obligations in this case did not arise until 2019 when it first anticipated litigation upon notice from the State of Texas. *See Jolivet v. Compass Group USA, Inc.*, 340 F.R.D. 7, 20 (N.D. Tex. 2021) (noting that "courts generally recognize that a privilege cannot be used simultaneously as both a sword and a shield"); *Barry v. Medtronic, Inc.*, No. 1:14-CV-104, 2016 WL 3583620, at *5

(E.D. Tex. May 9, 2016) (same); *Willy v. Admin Review Bd.*, 423 F.3d 483, 497 (5th Cir. 2005) (same).[3]

The Special Master already found that Google had an obligation to preserve relevant information beginning in September 2019 and that its retention policies fell short of its duty. (Dkt. #428 at 6). Indeed, it is undisputed that Google substantially modified it policies after serious questions arose as to the sufficiency of its compliance with preservation policies and independent discovery obligations. Google's corporate representative's deposition testimony did not alleviate the Special Master's concerns. In fact, that entity deposition only confirms and amplifies those concerns. (*See, e.g.*, Dkt. # 540, Ex. C at 136: 613) ("  "). The deposition testimony for Google as an organization, as the States summarized and Google did not contest, evidences that Chat history is only preserved if two steps are taken: (1) a Google employee must toggle his/her Chat history "on"; and (2) that employee must be subject to a litigation

---

[3] The States also emphasized the recent rulings and finding in *Play* that there is "an ingrained systemic culture of suppression of relevant evidence within Google." (Dkt. #547 at 1–2) (citing *Play*, 2024 WL 3302068, at *15). The Special Master has previously recognized that Chat retention policies and the litigation hold notices and related issues in this case and in *Play* were similar, if not the same. (Dkt. #428 at 7) (citing Apr. 18 Hrg. Tr. at 79). But the Special Master remains concerned with what Google has done (or not done) in *this case* to meet its preservation obligations, not in *Play*. Therefore, while *Play* illustrates that other another federal court has been very troubled by Google's preservation efforts, the Special Master limits the inquiry to the issues in *this case*.

8

hold. (*See* Jul. 10 Hrg. Tr. at 30) (*See also* Dkt. #540 at Ex. C (citing 18:21-19:5, 50:11-51:1, 52:23-53:7, 79:20-80:12, 101:3-101:12)). In other words, if an employee was not subject to a litigation hold at a particular date and time, there is no possibility that the employee's Chat history was preserved, making the start and end dates of Google's litigation holds a critical fact in this case. (*See id.*).

In short, the Special Master has ample evidence to further support a reasonable deduction that relevant Chats were not preserved or were destroyed and that Google may not have complied with its duty to preserve relevant documents and communications. *See Beck v. Access E Forms, LP*, No. 4:16-CV-00985, 2018 WL 3752842, at *1 (E.D. Tex. Aug. 8, 2018) ("The obligation to preserve evidence arises when the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation." (citation omitted)); FED. R. CIV. P. 37(e) Advisory Committee's Notes to 2015 Amendment ("Many court decisions hold that potential litigants have a duty to preserve relevant information when litigation is reasonably foreseeable."). Accordingly, the States have met their burden for additional, limited discovery on discovery via Interrogatory No. 31. *See Hubbard*, 247 F.R.D. at 29; *Homeward Residential*, 2016 WL 279543, at *4.

    b.   **Requests for Production Nos. 126 & 127: Litigation Holds and Reminders**

While Google only objects to the time period of Interrogatory No. 31, it objects to the States' next requests in their entirety. The States' Requests for Productions Nos. 126 and 127 ask Google to provide the States with "[a]ny litigation hold(s) or hold notice(s)" and "[a]ny litigation hold reminder(s)" that were "issued to any

9

custodian, deponent, or person likely to have discoverable information identified in this matter from January 1, 2018 to the present." (Dkt. #540 at 12) (citing Dt. #348-2). Google, however, insists that its litigation holds are privileged. (Dkt. #545 at 14) (citing *Retractable Techs. Inc. v. Abbott Lab'ys, Inc.*, 2010 WL 11531179, at *4 (E.D. Tex. May 20, 2010)).

Multiple district courts have found that litigation holds are generally protected by the attorney-client privilege or work product doctrine. *See, e.g., Cannata v. Wyndham Worldwide Corp.*, No. 2:10-CV-00068, 2011 WL 3495987, at *2 (D. Nev. Aug. 10, 2011) ("In general, *unless spoliation is at issue*, a litigation hold letter is not discoverable, particularly where it is shown that the letter includes material protected by the attorney-client privilege or the work product doctrine.") (emphasis added); *Gibson v. Ford Motor Co.*, 510 F. Supp. 2d 1116, 1123 (N.D. Ga. 2007) (finding that a litigation hold letter was not discoverable as it likely constituted attorney work-product); *Muro v. Target Corp.*, 250 F.R.D. 350, 360 (N.D. Ill. 2007) (finding after *in camera* review that "the litigation hold notices, on their face, appear to be privileged material").

If there is a preliminary showing of spoliation, however, courts have found that litigation holds become discoverable. *See, e.g., Major Tours, Inc. v. Colorel*, No. CIV 05-3091, 2009 WL 2413631, at *2 (D.N.J. Aug. 4, 2009) (citing *Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422, 425 nn.15–16 (S.D.N.Y. 2004)).

Google does not address any of the foregoing law. Instead, Google cites this Court's opinion in *Retractable Technologies* for the general proposition that

10

"litigation holds . . . are privileged." (Dkt. #545 at 14). But Judge Folsom in *Retractable Technologies* actually made no such finding as to privilege. On the contrary, the Court there explicitly stated that it "need not decide whether the privilege or work product protection would apply to the actual document retention policy per se." *Retractable Techs.*, 2010 WL 11531179, at *4. Judge Folsom allowed discovery as to the facts surrounding the retention policies, but denied further production. *Id.* Additionally, the discovery record in this case appears to be at a much different posture than *Retractable Technologies*. Neither the States nor Google provided the Special Master with any binding authority on the privileged status of legal holds, and the Special Master likewise did not find any controlling authority within the Eastern District of Texas or the United States Court of Appeals for the Fifth Circuit. Moreover, Google provides no evidence to support and meet its burden of establishing that its litigation holds are actually privileged.

Although there is a lack of controlling authority, the Special Master finds that the States have made a preliminary showing of spoliation, that Google has not carried its burden to prove privilege, and that Google's litigation holds are therefore discoverable *in part*. *See Major Tours*, 2009 WL 2413631, at *2. Further, the Special Master's finding is bolstered by Google's use of its litigation hold as both a sword and a shield, as it urges in its opposition to the Motion as follows:

> Google's litigation hold notice contained specific instructions regarding the preservation of Google Chat and Hangouts.[1] Google instructed employees not to use these instant messaging applications to discuss any topics covered by the legal hold and that, if they must, then they should preserve the messages by switching to "history on."

(Dkt. #545 at 3). Google cannot claim compliance with its preservation duties by merely asking the Court and parties to accept its description of its litigation hold on the one hand, while refusing the States the opportunity to verify that alleged compliance on the other hand by actually reviewing the hold notices themselves. *See Jolivet*, 340 F.R.D. at 20; *Barry*, 2016 WL 3583620, at *5; *Willy*, 423 F.3d at 497.

That said, the Special Master finds that the litigation holds need not be produced in their entirety. Instead, *Play* provides a reasonable alternative, which Google itself recognized in its briefing. (*Id.* at 3 n.2) (citing Hrg. Tr. at 42:8–43:3, *In re Google Play Store Litigation*, No. 21-md-02981 (N.D. Cal. Jan 12, 2023) ("I'm taking the position that you can ask the questions and you're not going to face a waiver.")). Following *Play*, the Special Master orders Google to produce all of the relevant and "specific instructions regarding the preservation of Google Chats and Hangouts" set forth in all of the Litigation Holds to the States. Google's production will not amount to a waiver of privilege, to which the States agreed during the 10 hearing. (*See* Jul. 10 Hrg. Tr. at 73–74).

  c.  Request for Production 133: System-Wide Backend Logs

The States also request the "system-wide backend logs" that Google previously produced in *Play* under the States' RFP No. 133. According to Google's corporate representative, this log "shows when each employee captured by the log turned their Chat history on or off during a running 55-day period." (Dkt. #540 at 12) (summarizing Google's corporate representative's testimony). The States stress that this log is "the *only* record . . . of Google's real-time document destruction in practice." (*Id.* at 13). Google counters that the States' request amounts to a mere "fishing expedition that is not proportional to the needs of this case in light of the mountain of existing discovery that disproves the theory underpinning Plaintiffs' Motion." (Dkt. 545 at 15). Google also emphasizes that of the 180 custodians in this case, "only seven overlap with those in the *Play* case, meaning that the system[-]wide backend log largely pertains to irrelevant custodians." (*Id.*).

The system-wide backend logs provide evidence directly relevant to when Google employees were turning their Chat history on or off, which Google itself has put at issue in this case due to its inadequate retention policies. (*See* Dkt. #428 at 8). Because Google's corporate representative could not provide further, relevant information on Google's practices at the deposition, the States have met their burden in seeking further limited discovery. Additionally, because this evidence readily exists in an already-produced form—as it was produced in *Play*—the Special Master finds that the system-wide backend logs from *Play* are proportionate and free from any burden to Google.

At the hearing, the States asserted that they were moving for production of both the system-wide backend logs produced in *Play* and for a backend log "specific to the last 55 days." As the Special Master stated at the hearing, the States' Motion does not move for anything other than the backend logs produced in *Play*. (*See* Jul. 10 Hrg. Tr. at 42–44). Accordingly, Google is only ordered to produce the backend logs produced in *Play*.

d.    **The May 20, 2024 Deposition Transcript from the Location Case**

Finally, the States seek the deposition transcript and accompanying documents from the May 20, 2024 Google Chats deposition in the Location Case. According to the States, Google's corporate representative's testimony in the Location Case "can confirm, explain, expand, or impeach what [he] told the States" in his deposition taken in this case the business day before. (Dkt. #540 at 13). Google responds that the States have not met their burden to import discovery from an unrelated location or privacy case into this antitrust (and DTPA) suit. (Dkt. #545 at 14–15).

The Special Master agrees with Google. The States have not cited any authority that allows for discovery on discovery for "impeach[ment]" purposes under any similar circumstances. And seeking access in this case to a second deposition in an unrelated privacy case—taken the next business day—that is alleged to "confirm, explain or expand" the testimony given by the same witness the day before is simply not compelling. Indeed, these three alleged grounds appear to be cumulative. Moreover, the States were permitted a full Rule 30(b)(6) deposition in this case and there is no showing that the deposition opportunity was insufficient  Without the

14

Case 4:20-cv-00957-SDJ   Document 579-3   Filed 07/23/24   Page 15 of 17 PageID #: 19846

FILED UNDER SEAL

requisite showing related to this particular issue—*see Hubbard*, 247 F.R.D. at 29—the Special Master will not order the production of deposition transcript and exhibits from the unrelated Location case.

### 3. CONCLUSION

For the reasons stated herein, the Special Master **GRANTS IN PART** and **DENIES IN PART** the States' Motion. The Special Master **GRANTS** the States' Motion as to its requests for a full answer to the States' Interrogatory No. 31 and the production of responsive documents to Requests for Production Nos. 126 and 127 as ordered herein, and Request No. 133. The Special Master **DENIES** the States' request for the *Location* Case deposition transcript and documents.

It is therefore **ORDERED** that Google:

(1) provide a full answer to the States' Interrogatory No. 31 within seven (7) days of the filing of this Order;

(2) produce responsive documents to Requests for Production Nos. 126 and 127, as modified by this Order, within seven (7) days of the filing of this Order; and

(3) produce responsive documents to Request for Production 133 within seven (7) days of the filing of this Order.

**FILED UNDER SEAL**

Signed this 15th day of July, 2024.

*[signature]*

_____
David T. Moran
**Special Master**
TXBN: 14419400
JACKSON WALKER LLP
2323 Ross Avenue, Suite 600
Dallas, Texas  75201
Telephone: (214) 953-6051
E-mail:  dmoran@jw.com

**FILED UNDER SEAL**

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing Order of Special Master was filed electronically in compliance with Local Rule CV-5(a) on this 15th day of July, 2024 and was served on all counsel who are deemed to have consented to electronic service by electronic mail.

_____
David T. Moran

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

Pursuant to the Court's Order Appointing Special Master (Dkt. No. 213), I certify that the Court has already granted authorization to seal this document.

Date: July 15, 2024

_____
David T. Moran