**FILED UNDER SEAL**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| THE STATE OF TEXAS, et al., | § § § § § § § § § | Civil Action No. 4:20-cv-00957-SDJ |
| Plaintiffs, | | |
| v. | | |
| GOOGLE LLC, | | |
| Defendant. | | |

**GOOGLE'S MOTION FOR REVIEW OF THE SPECIAL MASTER'S JULY 15, 2024 ORDER GRANTING IN PART PLAINTIFFS' MOTION TO COMPEL WRITTEN DISCOVERY REGARDING GOOGLE CHATS**

**FILED UNDER SEAL**

**TABLE OF CONTENTS**

**INTRODUCTION** ..................................................................................................................1

**BACKGROUND** ....................................................................................................................2
    A.    Google Disclosed Its Chat Retention Processes to Plaintiffs in 2020. ........................2
    B.    Google Produced a Massive Amount of Discovery. ...................................................4
    C.    Many Plaintiffs Have Failed to Preserve or Produce Documents. .............................4
    D.    The Special Master Authorized Limited Discovery on Discovery, and Google Complied With That Order. ...................................................................................................4
    E.    Plaintiffs Moved for *More* Discovery on Discovery, Which the Special Master Also Granted. .......................................................................................................................5

**STANDARDS** .........................................................................................................................6

**ARGUMENT** ..........................................................................................................................7

**I.    THE ORDER'S UNREQUESTED FINDING THAT PLAINTIFFS MADE A "PRELIMINARY SHOWING OF SPOLIATION" LACKS ANY BASIS IN LAW OR FACT.** ........................................................................................................................7
    A.    The Order Contains Legal Error:  It Improperly Addresses Spoliation, Lacks a Legal Basis for its Finding, and Deprives Google of Due Process. .................................7
    B.    The Order Contains Factual Error:  The Limited Record Available Does Not Establish That Spoliation Occurred. ............................................................................9
        1.    Google Disclosed Its Chats Retention Processes to Plaintiffs in January 2020 and Relied on the Parties' ESI Agreement for Years. ............................................10
        2.    The Purported "Disparity" Between Chat and Email Productions Does Not Support A Preliminary Showing of Spoliation. ....................................................12

**II.    THE SPECIAL MASTER'S FINDING THAT GOOGLE SHOULD PROVIDE LITIGATION HOLD DATES STARTING IN 2015 LACKS LEGAL BASIS.** ................12

**CONCLUSION** ....................................................................................................................15

**FILED UNDER SEAL**

**INTRODUCTION**

Google appeals two narrow but crucial components of the Special Master's July 15, 2024 Order (the "Order"). *See* ECF No. 558. Google has complied with the aspects of the Order it does not challenge.

First, for the reasons demonstrated below, the Court should strike from the Order an unsupported finding that Plaintiffs made a "preliminary showing of spoliation." Plaintiffs' motion, which sought only additional discovery on discovery, had not requested any such finding, nor was the term "spoliation" even mentioned in the underlying hearing. Determining whether spoliation has occurred is a significant event that cannot be undertaken without fair notice, the opportunity to be heard, and the benefit of a complete record—all of which were lacking here.

Second, because it contradicts a prior Order establishing 2019 as the date at which Google's obligation to preserve documents arose, the Court should overturn the portion of the Order mandating that Google produce information about its litigation holds issued in other cases dating back to 2015. As shown below, 2015 relates to a period before anyone, including Plaintiffs, anticipated this litigation.

Before the Special Master was a single, discrete question: whether Plaintiffs were entitled to compel responses to specific "discovery on discovery" requests regarding Google Chat. *See* ECF No. 540 at 15.[1] Google has largely complied with the Special Master's Order on that question. But, as shown below, the Special Master went beyond that limited question when he found Plaintiffs had made a "preliminary showing of spoliation." Order at 11. This finding was unnecessary to any of the Order's discovery rulings. In fact, Plaintiffs' motion had not sought any such finding; granting it without notice and an opportunity to be heard deprived

---

[1] Specifically, Plaintiffs' request for relief was as follows: "Plaintiff States ask the Special Master to compel Google to answer Plaintiff States' Interrogatory No. 31 in full, to produce documents responsive to Requests for Production Nos. 126, 127, and 133, and to produce the transcript and documents from the May 20, 2024 deposition on Google Chats in *The State of Texas v. Google*." ECF No. 540 at 15.

1

**FILED UNDER SEAL**

Google of due process. *See infra* § I.A. It also was not supported on the record before the Special Master, which established that Google had disclosed its retention processes to Plaintiffs, incorporated them by agreement with Plaintiffs in the protocol used to produce ESI in this case, and had—as a result—preserved millions of Chat messages and produced hundreds of thousands of them, as well as millions of other documents, too. *See infra* § I.B. There is, therefore, no support for finding a "preliminary showing of spoliation" when Google disclosed what it was preserving and complied with its disclosed practices, with Plaintiffs' consent.

The Special Master also erred in ordering Google to produce the start and end dates of litigation holds from other, unrelated matters dating back nearly a decade. This ruling contradicts the Special Master's prior (and correct) finding that Google's preservation obligation in this case started in 2019. Google could not have reasonably anticipated this litigation (and therefore had no duty to preserve) four years before Plaintiffs' themselves began their investigation. *See infra* § II.

While Google does not agree with other aspects of the Order, it limits its challenges to these two issues because they are incorrect as a matter of law, unsubstantiated by the record, and prejudicial to Google.

For all of these reasons, Google respectfully requests that the Court conduct a de novo review of and vacate the two aspects of the Order Google challenges. *See* ECF No. 213 at 11.

## BACKGROUND

**A. Google Disclosed Its Chat Retention Processes to Plaintiffs in 2020.**

Shortly after Texas began its antitrust investigation into Google's ad tech products, Google began issuing litigation holds to employees with potentially relevant documents and information. *See* ECF No. 545 at 2-3. Google continued to issue litigation holds on a rolling basis as the investigation and subsequent litigation unfolded. *Id.* Google's litigation hold notices contained specific instructions regarding the preservation of Google Chats (and its

2

predecessor, Hangouts).  *Id.* at 3.  These hold notices instructed employees not to use Chat to discuss any topics covered by the legal hold and that, if they must, they should preserve the messages by switching to "history on."  *Id.*[2]

In January 2020, more than four years ago and almost a year before Plaintiffs filed suit, Google informed Plaintiffs of the processes it was using to comply with its obligation to preserve Chat messages.  *Id.* Ex. 3 at 3.  Following multiple days of discovery conferences, Texas confirmed its understanding that "[Chat] messages are not retained in any way unless they are marked on-the-record by the user. . . .  If the user does not take this action for every conversation, the unmarked ones will be deleted immediately."  *Id.* Ex. 4 at 2; *see also generally id.* at Exs. 2-4.  The parties later negotiated an ESI Order over the course of ten months between April 2022 and February 2023.  *See id.* at 4.  That Order provides that each party "will continue its retention practices" and "will modify" those processes "[u]pon mutual agreement of the parties."  ECF No. 183 at 3.

Plaintiffs *knew* about Google's Chat retention processes four years ago.  Not only did Plaintiffs raise no objection to them then, they instead confirmed in writing that they had an accurate understanding of them and never requested that Google change them.  *See* ECF No. 545 Ex. 4.[3]  Google relied on the parties' understanding for years.  Plaintiffs now ignore these facts, preferring instead to discuss the record in a different case involving the Google Play Store.  Contrary to Plaintiffs' suggestion that findings from *Play* should be imported here, *see* ECF No. 547, Google's early disclosure of its retention processes—and Plaintiffs' acknowledgement of them without protest for years—sharply distinguish this case from *Play*.

---

[2] Google's litigation holds are privileged.  Google has produced redacted versions of its litigation hold notice by order of the Special Master, which further orders that "Google's production will not amount to a waiver of privilege."  Order at 12.  This Motion does not reveal any privileged information beyond what the Special Master ordered Google to disclose.

[3] At the Special Master's July 10, 2024, hearing, Plaintiffs' counsel suggested for the first time that Google's disclosures at the outset of Texas's investigation were "technically correct but incomplete" or constituted "partial truths."  July 10, 2024 Hr'g Tr. at 32:12, 25.  Plaintiffs knew from Google's disclosures that Chats that were not marked "history on" would be "deleted," and therefore not retained.

**FILED UNDER SEAL**

*See* ECF No. 545 at 15 (noting Judge Donato's finding that Google "should have advised plaintiffs about its preservation approach early in the litigation").

### B. Google Produced a Massive Amount of Discovery.

Google's retention processes resulted in the collection of millions of Chat messages, ECF No. 545 Ex. 1 at 3, hundreds of thousands of which were produced to Plaintiffs, *id.* Ex. 1 at 2. In total, Google has produced more than 6.3 million documents in this case. *Id.* at 4. On top of these productions, Google has also provided significant discovery on discovery regarding Chat messages. Among other things, Google produced a survey of 35 custodians regarding their usage of Chat messages and a corporate representative to discuss how Chat messages were gathered and preserved. *Id.* at 5, Ex. 11. In addition, Plaintiffs have asked over 500 questions to other Google deponents about Chat usage. *Id.* at 5.

### C. Many Plaintiffs Have Failed to Preserve or Produce Documents.

While attacking the adequacy of Google's litigation holds, five Plaintiffs admitted that ***they did not implement any litigation hold at all*** in this case. *Id.* at 5. And in sharp contrast with Google's massive production, all Plaintiffs' productions have been paltry. Puerto Rico has completely failed to discharge even its most basic discovery obligations. *See* ECF No. 537. South Dakota and Mississippi each produced just one document, while Idaho, Missouri, Alaska, and South Carolina each produced fewer than 50 documents. ECF No. 545 at 5. No Plaintiff has produced a single instant message. *Id.*

### D. The Special Master Authorized Limited Discovery on Discovery, and Google Complied With That Order.

At the close of discovery, Plaintiffs asserted for the first time that the Chat retention processes ***to which they agreed in writing in early 2020*** were inadequate and sought various discovery on discovery. On April 26, 2024, the Special Master granted in part Google's request for a protective order but permitted limited discovery on discovery to proceed in the form of a corporate representative deposition. ECF No. 428. The Special Master advised that additional

4

discovery would be permitted only "if justified" by "testimony or other evidence." *Id.* at 9, 13. Google complied with that order. *See* ECF No. 545 at 14.[4]

### E. Plaintiffs Moved for *More* Discovery on Discovery, Which the Special Master Also Granted.

Following their deposition of Google's corporate representative, Plaintiffs moved for additional written discovery. ECF No. 540. In so doing, Plaintiffs alleged ***for the first time*** that Google's retention processes they had acknowledged and accepted for years somehow constituted a "yearslong" conspiracy to promote the "rampant destruction of relevant communications" ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇." *Id.* at 1, 8.

Based on those conclusory and unsustainable assertions, Plaintiffs filed a motion seeking specific relief: (1) the production of "the start and end dates for any legal holds applicable to any custodian identified in this matter from January 1, 2015 to the present," regardless of whether the legal hold had any relation to the substance of this case; (2) the entire text of every litigation hold and reminder issued for this case; (3) a debugging log produced in *Play*;[5] and (4) information from a separate, unrelated action in Texas state court (the "Location Case"). *Id.* at 15. No part of the motion sought a spoliation finding. *Id.*[6] To narrow the issues in dispute, Google provided the litigation hold dates for custodians in this litigation starting in 2019 and reached an agreement with Plaintiffs regarding the *Play* log.

The Order granted Plaintiffs' motion in part. Relevant here, it first ordered the production of portions of Google's litigation holds and reminders insofar as they provide "specific instructions regarding the preservation of Google Chats and Hangouts," holding that this production "will not amount to a waiver of privilege." Order at 12. Google has produced

---

[4] In addition, Google is complying with this Court's Order to produce Sundar Pichai for deposition, including on the subject of "retention of communications on the Google Chats platform." ECF No. 535 at 23.
[5] The parties have since reached a compromise agreement resolving this issue.
[6] While Plaintiffs made a brief reference to spoliation, they did not seek any spoliation-related findings; rather, the relief requested was limited to compelling further discovery. *See* ECF No. 540 at 15.

**FILED UNDER SEAL**

these materials. But the Order went further, granting relief that Plaintiffs had not sought and that lacked support in the undeveloped record, finding that Plaintiffs had made a "preliminary showing of spoliation." Order at 11.

Second, the Order granted Plaintiffs' request for litigation hold dates going back to 2015. *Id.* at 6-9. This too was error. The Special Master previously ruled that Google's preservation obligation for this matter began in 2019, when Texas initiated its investigation and Google reasonably anticipated litigation, *see* ECF No. 428 at 5, but now—contradicting the Special Master's prior determination—the Order rules that Google anticipated litigation "far before 2019," and potentially "as far back as 2006," Order at 6, two years before Google even entered the alleged markets at issue, *see* ECF No. 545 at 4.

**STANDARDS**

The parties may challenge a ruling by the Special Master under the standard of review set forth in Federal Rule of Civil Procedure 53(f). *See* ECF No. 213 at 11. Under that Rule, the Court "must decide de novo" all objections to findings of fact and conclusions of law made by the Special Master. Fed. R. Civ. P. 53(f)(3)-(4).

Discovery that is not "relevant to any party's claim or defense," Fed. R. Civ. P. 26(b)(1), but instead pertains to how a party has complied with its discovery obligations—so-called "discovery on discovery"—is disfavored, given the "danger of extending the already costly and time consuming discovery process ad *infinitum* [sic]." *Freedman v. Weatherford Int'l Ltd.*, No. 12 Civ. 2121, 2014 WL 4547039, at *2 (S.D.N.Y. Sept. 12, 2014); *see also, e.g.*, *In re Google Digital Advert. Antitrust Litigation*, No. 21-md-3010 (S.D.N.Y.), ECF No. 725 at 3 ("[T]his invasive discovery on a collateral issue is unwarranted."). A party seeking such discovery must justify the request with a "showing of a specific or material deficiency" in the responding party's productions. *VeroBlue Farms USA Inc. v. Wulf*, 345 F.R.D. 406, 420 (N.D. Tex. 2021).

**FILED UNDER SEAL**

It is also well-settled that the relief granted by the Court cannot exceed that sought in the underlying motion. *See, e.g.*, *OCA-Greater Houston v. Texas*, 867 F.3d 604, 615 (5th Cir. 2017) (overturning injunction that contained provisions "unrequested by any party").[7]

## ARGUMENT

### I. THE ORDER'S UNREQUESTED FINDING THAT PLAINTIFFS MADE A "PRELIMINARY SHOWING OF SPOLIATION" LACKS ANY BASIS IN LAW OR FACT.

Google challenges the Order's finding that Plaintiffs made a "preliminary showing of spoliation." Order at 11. Plaintiffs' motion sought no such relief, and, in initially ordering limited discovery on discovery, the Special Master did "not pass upon whether there was, in fact, any destruction or spoliation of Chats in this case." ECF No. 428 at 8 n.2. This Court has also declined to rule on whether spoliation has occurred. *See* ECF No. 535 at 23. The Special Master should have taken the same approach here. There has been no evidentiary hearing or analysis of the legal requirements for a finding of spoliation; Google has had no opportunity to fully brief and argue the issue of spoliation; and the record before the Special Master was not sufficiently developed to support a determination as to whether spoliation occurred. The Court should strike this improper finding from the Order on these legal grounds. The Order's finding is also unsupported by the evidence in the record.

### A. The Order Contains Legal Error: It Improperly Addresses Spoliation, Lacks a Legal Basis for its Finding, and Deprives Google of Due Process.

The Order's finding of a "preliminary showing of spoliation" is erroneous, as a matter of law, for at least three reasons.

First, making *any* finding concerning spoliation was unnecessary and inappropriate at this motion-to-compel stage, while discovery on discovery remains ongoing and the record

---

[7] *See also, e.g.*, *Scott v. Schedler*, 826 F.3d 207, 214 (5th Cir. 2016) (An "injunction may not encompass more conduct than was requested or exceed the legal basis of the lawsuit."); *United States v. Holy Land Found. for Relief & Dev.*, No. 3:04-CR-240, 2007 WL 1888387, at *1 (N.D. Tex. June 29, 2007) ("[B]ecause the defendants do not request any specific discovery regarding the SWIFT program, their motion on this point is denied.").

7

continues to develop. The question whether spoliation occurred was not before the Special Master and requires analysis under a different legal standard from the discovery-on-discovery dispute that *was* before him: The standard for authorizing discovery on discovery is merely a "showing of a specific or material deficiency." *VeroBlue Farms*, 345 F.R.D. at 420. The bar for spoliation is much higher: It "depends on what is reasonable, and that in turn depends on whether what was done—or not done—was proportional to that case and consistent with clearly established applicable standards." *Rimkus Consulting Grp., Inc. v. Cammarata*, 688 F. Supp. 2d 598, 613 (S.D. Tex. 2010).

The Special Master never performed a *Rimkus*-style spoliation analysis, nor was one called for by the relief sought. It follows that the Order's finding of a "preliminary showing" of spoliation was unnecessary and improper as well. Previously, the Special Master found there was "a sufficient basis to permit further discovery" *without* "pass[ing] upon whether there was, in fact, any destruction or spoliation of Chats in this case." ECF No. 428 at 8 n.2. Consistent with his prior approach, the July 15 Order identifies two independent bases to compel production of excerpts from the litigation holds that do not touch on spoliation at all. *See* ECF No. 558 at 11 (finding that Google "has not carried its burden to prove privilege," and "use[d] its litigation hold as both a sword and a shield"). Because a finding on spoliation was unnecessary to resolve Plaintiffs' motion and outside the scope of the discovery proceedings, the Order's finding that a preliminary showing of spoliation was made constituted legal error.

Second, no legal basis exists to find a "preliminary showing of spoliation." Courts in this Circuit do not recognize a "preliminary showing of spoliation" as a legally significant event; instead, courts examine (1) whether spoliation has occurred, and (2) if so, whether sanctions are warranted. *See, e.g.*, *Guzman v. Jones*, 804 F.3d 707, 713 (5th Cir. 2015). The definition of spoliation—which was cited nowhere in the Order—is "the destruction or the significant and meaningful alteration of evidence." *Id.* (quoting *Rimkus*, 688 F. Supp. 2d at

8

**FILED UNDER SEAL**

612). Before finding that spoliation has occurred, the Court must engage in fact-intensive analyses, including whether documents "relevant to the litigation" were, in fact, destroyed and whether the responding party had a duty to preserve those documents at the time they were deleted. *Id.*; *see also, e.g.*, *BHI Energy I Power Services LLC v. KVP Holdings, LLC*, No. 3:22-CV-1981, 2024 WL 1607065, at *5 (N.D. Tex. Apr. 12, 2024) ("BHI is unable to show that a single document relevant to this action has been lost or deleted, and there is thus no evidence of spoliation."); *Goodman v. Praxair Services, Inc.*, 632 F. Supp. 2d 494, 508 (D. Md. 2009) ("[R]esolution of spoliation motions is fact intensive, requiring the court to assess when the duty to preserve commenced [and] whether the party accused of spoliation properly complied with its preservation duty."). Neither the Special Master nor the Court has ever ruled on the extent of Google's obligation to preserve Chat messages, much less assessed whether Google reasonably complied with those duties. That is a prerequisite to any showing of spoliation.

Third, the Special Master's finding must be reversed for a failure of due process. Due process requires that a party receive adequate notice of an allegation, and a full and fair opportunity to be heard, including opportunity to develop a full factual record. But Plaintiffs did not ask for the relief the Special Master granted. *See* ECF No. 545 at 15 (mentioning a preliminary showing of spoliation only once); *see also* Fed. R. Civ. P. 7(b)(1)(C) (requiring motions to "state the relief sought"). A spoliation-related finding was thus improper because it exceeded the specific and limited relief sought in Plaintiffs' motion. The word "spoliation" was not mentioned even once during the hearing on Plaintiffs' motion. As a result, Google had no opportunity—much less a full and fair one—to defend against a spoliation ruling that Plaintiffs *never requested*.

### B. The Order Contains Factual Error: The Limited Record Available Does Not Establish That Spoliation Occurred.

The Court need not reach factual issues to strike the Order's spoliation finding, given the legal errors addressed above. But even the limited factual record shows that Google

9

**FILED UNDER SEAL**

complied with its preservation and discovery obligations, which is another basis for rejecting the Order's finding of a "preliminary showing of spoliation."

### 1. Google Disclosed Its Chats Retention Processes to Plaintiffs in January 2020 and Relied on the Parties' ESI Agreement for Years.

At the outset of Texas's investigation, Google promptly issued litigation holds, which included specific instructions concerning the preservation of Chat messages. ECF No. 545 at 2-3. It is undisputed that Google first disclosed its retention processes to Plaintiffs in January 2020, that Plaintiffs confirmed their understanding of those processes in writing, and that Plaintiffs never asked Google to change its retention processes in the ensuing four years—all facts Plaintiffs conveniently omitted from their motion. *Id*. Exs. 2-4.

Google was entitled to rely on Plaintiffs' confirmation and the agreement between the parties as to the scope of ESI collection and production. There is "a particular need" for complaints about evidence retention to be raised "as soon as reasonably possible after discovery of the facts that underlie" the complaint. *Goodman*, 632 F. Supp. 2d at 508. "Courts are justifiably unsympathetic to litigants" who belatedly complain about evidence retention as a result of their own "inattention, neglect, or purposeful delay." *Id.*; *see also, e.g.*, *United States v. Ross*, 511 F.2d 757, 762 (5th Cir. 1975) ("This Court and others have criticized failure to raise alleged discovery errors promptly."). If Plaintiffs had issues or concerns about Google's disclosed retention processes, Plaintiffs should have raised the issues at the appropriate stage—in 2020—and provided Google an opportunity to confer with Plaintiffs and cure, rather than laying behind the log for four years and raising the issue only as the discovery window closed.

Additional facts refute the Special Master's finding: Google's discovery efforts resulted in collection of millions of Chat messages and production of hundreds of thousands of messages (in addition to massive productions of other types of ESI). ECF No. 545 at 4, Ex. 1 at 3. By contrast, there is no evidence that documents relevant to this matter were destroyed as a result of inadequate retention processes. Plaintiffs have access to 100 transcripts of

deposition testimony and have asked Google witnesses more than 500 questions about Chat usage. *Id.* at 5. In all of this, there is no testimony—none at all—that any Google employee ever deleted Chat messages or turned Chat history off to avoid document preservation obligations. *See id.* at 10-13. Plaintiffs pointed only to the testimony of two deponents who did not recall changing their history settings, both of whom left the display ads business *before* any preservation obligation arose in this case. *See id.*

The facts of this case must also be considered in light of unsettled law in Texas and other jurisdictions regarding ephemeral evidence.[8] There is no basis in the record to conclude that Google failed to take "reasonable" steps to preserve relevant documents in *this* case in a manner "consistent with clearly established applicable standards." *Rimkus*, 688 F. Supp. 2d at 613. In this context, Google properly satisfied its duties by: (a) directing employees to avoid using Chat communications for substantive discussions related to the subject matter of the litigation hold; (b) directing employees to preserve messages related to the subject of the litigation hold; and (c) **disclosing those processes to Plaintiffs' counsel**. Instead of "promptly" raising any objection to those processes, *Ross*, 511 F.2d at 762, Plaintiffs said nothing for four years. Plaintiffs do not contend that Google failed to follow the processes it disclosed, and the mere possibility that some information could have been lost does not constitute a "preliminary showing of spoliation." *See, e.g.*, *Rimkus*, 688 F. Supp. 2d at 612 (discussing when "deletions, alterations, and losses" can amount to spoliation).

---

[8] In Texas, for example, the Supreme Court addressed automatically deleted evidence for the first time in 2014. *See Brookshire Bros. v. Aldridge*, 438 S.W.3d 9, 14 (Tex. 2014). Despite recognizing the need to "maintain[] the balance between the significant interest in preserving relevant evidence and the burdens associated with doing so," the Court declined to announce a new test or otherwise provide guidance concerning the preservation of ephemeral information. *Id.* at 14, 27. As a result, as recently as 2019, a Texas Bar CLE *recommended* using programs that automatically delete messages as a way to reduce the amount of information susceptible to a data breach. *See* Data Destruction Policies and Practices, 2019 TXCLE-ARED 12-VII, 2019 WL 2075505.

### 2. The Purported "Disparity" Between Chat and Email Productions Does Not Support A Preliminary Showing of Spoliation.

The foundation of the Order is the Special Master's previous finding that a "wide discrepancy between the number of Chats produced . . . with the number of emails produced" permits a "reasonable deduction" that some information has been destroyed. ECF No. 428 at 6-8. That "deduction" is insufficient and unsupported. Google's production also includes more emails than memoranda, training presentations, and bid-level data sets, but that fact alone does not suggest destruction of the latter categories of documents. Document discovery does not operate on a quota system.

Moreover, the comparison between Chats and emails quickly unravels under scrutiny and does not support an inference of misconduct. The reasons Google produced more emails than Chat messages have nothing to do with a "conspiracy" to destroy unfavorable evidence. For example, Google repeatedly instructed its custodians not to discuss any topics covered by the litigation hold over Chat. *See* ECF No. 545 at 3. There was no similar instruction with respect to emails. A smaller number of Chat messages as compared to email messages may suggest *compliance with*, not defiance of, these litigation hold instructions. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *See, e.g., id.* at 11-13; *id.* Ex. 23 at 35:17-19. In other words, there are ample, innocuous explanations for why many Chat conversations did not contain the parties' agreed-upon search terms, while others were collected and reviewed but found to be irrelevant and not produced. The Order's finding, which relied on this misleading comparison, should be overturned.

## II. THE SPECIAL MASTER'S FINDING THAT GOOGLE SHOULD PROVIDE LITIGATION HOLD DATES STARTING IN 2015 LACKS LEGAL BASIS.

Google also challenges the ruling that Google must provide the start and end dates for legal holds going back to January 1, 2015—well over four years before Texas announced its

investigation into Google's ad tech products. The Special Master previously held that "[o]nce the Texas Attorney General's investigation of Google began in September 2019, Google had an obligation to preserve relevant information." ECF No. 428 at 5. That finding was correct. The Court should not endorse belated efforts to backdate Google's preservation obligations, after fact discovery has closed. The Order effectively extends Google's preservation obligation by four years—when there was no inkling of this litigation—and threatens to manufacture a spoliation issue for documents during a period during which no preservation obligation existed.

The duty to preserve arises when a party first reasonably anticipates the litigation. *See, e.g.*, *Coastal Bridge Co., L.L.C. v. Heatec, Inc.*, 833 F. App'x 565, 574 (5th Cir. 2020). The mere possibility of some litigation some day is not enough. That the vast majority of conduct at issue in this lawsuit is alleged to have occurred prior to September 2019 does not alter the trigger date for this duty. *See* ECF No. 545, App'x A. Nor do separate investigations conducted by different agencies in earlier time periods. Federal courts have rejected the argument that the obligation to preserve materials because of one reasonably foreseeable litigation creates a shifting duty that may be applied in future litigations against other parties. *See, e.g.*, *Mosley v. Marriot Int'l, Inc.*, No. 21-CV-10470, 2024 WL 1224241, at *2 (E.D. Mich. Mar. 21, 2024) ("The duty to preserve evidence runs to an identifiable opposing party.").[9] Instead, "[a] party's duty to preserve evidence comes into being when the party has notice that the evidence is relevant to the litigation" at issue. *Guzman*, 804 F.3d at 713.

Google could not have reasonably anticipated this litigation until Texas began its investigation in 2019. But in the Order, the Special Master erroneously suggested that Google's obligation to preserve information may have begun as early as 2006—13 years before Texas began investigating Google's ad tech products. Order at 6-7. The Special Master based his

---

[9] *See also, e.g.*, *Town of Westport v. Monsanto Co.*, No. CV 14-12041-DJC, 2015 WL 13685105, at *4 (D. Mass. Nov. 5, 2015) ("[T]he duty to preserve evidence runs to a specific opposing party."); *Point Blank Sols., Inc. v. Toyobo Am., Inc.*, No. 09-61166-CIV, 2011 WL 1456029, at *24 (S.D. Fla. Apr. 5, 2011) ("The shifting duty theory is incompatible with the basic rule that a duty is owed to a specific party.").

**FILED UNDER SEAL**

conclusion on entries on Google's privilege log dating back to 2006. Significantly, however, none of Google's work-product privilege claims were based on reasonably anticipated litigation *in this case.* The Special Master's conclusion improperly conflates the standard for whether material is protected attorney work product under Federal Rule of Civil Procedure 26 with the standard for when a party's preservation obligation begins under Rule 37.

The standard for work product protection asks whether a *specific document* was created by an attorney or attorney's agent in anticipation of litigation. Documents reflecting attorney work product remain protected from disclosure in subsequent litigations even after the circumstances that originally gave rise to the protection no longer exist. *See, e.g.*, *In re Grand Jury Proceedings*, 43 F.3d 966, 971 (5th Cir. 1994); *Anderson Energy Grp. (Ohio), LLC v. Endeavor Ohio, LLC*, No. 3:13-CV-1784, 2014 WL 12580471, at *2 (N.D. Tex. Sept. 4, 2014). Google's privilege log merely reflects this well-settled principle. By contrast, the standard for a party's preservation obligation asks at what moment in time that party—with respect to a *particular litigation against a particular counterparty*—should have reasonably foreseen the litigation and thus begun preserving relevant materials. *See, e.g.*, *Coastal Bridge Co.*, 833 F. App'x at 574; *Rimkus*, 688 F. Supp. 2d at 612.

As a result, the "sword/shield" implied waiver analogy adopted by the Special Master is erroneous. *See* Order at 7. It is perfectly legitimate for a party that is investigated in 2019 to preserve work product protection over a document created in 2006 related to an earlier matter involving different parties. It does not follow that an investigation initiated in 2006 creates an obligation to preserve documents with respect to any conceivable litigation that could be brought by a different counterparty any number of years later. Properly withholding privileged

14

or otherwise protected materials in a subsequent case is simply not the same as using privilege as a "shield" in the context of a so-called "sword/shield" waiver.[10]

If adopted, the Special Master's holding would create an unworkable precedent for litigants large and small, public and private. Under the shifting duty that underpins the Order, no party could effectively manage documents or data due to the risk of a future accusation of spoliation by as-yet unidentified litigants in unknown cases. *Brigham Young Univ. v. Pfizer, Inc.*, 282 F.R.D. 566, 572 (D. Utah 2012) ("[Plaintiff] asserts that 'The duty to preserve runs to the legal system generally.' The Court disagrees . . . It is difficult for the Court to imagine how a party could ever dispose of information under such a broad duty because of the potential for some distantly related litigation that may arise years into the future.").

Google has already provided the dates for litigation holds starting in 2019. As the Special Master previously found, Google's preservation obligations in this case began when Texas initiated its investigation in 2019. ECF No. 428 at 5. The Special Master's Order to produce pre-2019 holds cannot square with this finding, the facts, or the law.

## CONCLUSION

The Court should reverse the Order to the extent addressed above and decline to order additional discovery on discovery.

---

[10] The cases cited by the Special Master confirm this point. *See* Order at 7-8; *Jolivet v. Compass Grp. USA, Inc.*, 340 F.R.D. 7, 29 (N.D. Tex. 2021) ("This is not a case in which a party has asserted a claim or defense that explicitly relies on the existence or absence of the very communications for which he claims a privilege.") (citation omitted); *Barry v. Medtronic, Inc.*, No. 1:14-CV-104, 2016 WL 3583620, at *6 (E.D. Tex. May 9, 2016) ("Implied waiver arises when the party attempts to use the privilege both as a shield and a sword by partially disclosing privileged communications or affirmatively relying on them to support its claim or defense and then shielding the underlying communications from scrutiny.") (citation omitted); *Willy v. Admin. Rev. Bd.*, 423 F.3d 483, 497 (5th Cir. 2005) ("[T]he 'shield and sword' analogy is conjunctive: it does not stand broadly for the proposition that an attorney may never use confidential information offensively.").

**FILED UNDER SEAL**

Dated: July 29, 2024

Respectfully submitted,

**GIBBS & BRUNS LLP**

*/s/ Kathy D. Patrick*
Kathy D. Patrick
State Bar No. 15581400
KPatrick@gibbsbruns.com
Robin C. Gibbs
Texas Bar No. 07853000
RGibbs@gibbsbruns.com
Ayesha Najam
Texas Bar No. 24046507
ANajam@gibbsbruns.com
Charles M. Rosson
Texas Bar No. 24074985
CRosson@gibbsbruns.com
Ann T. Lebeck
Texas Bar No. 24055840
ALebeck@gibbsbruns.com
Caitlin A. Halpern
Texas Bar No. 24116474
CHalpern@gibbsbruns.com
Michael R. Davis
Texas Bar No. 24109793
MDavis@gibbsbruns.com
Michael D. Doman
Texas Bar No. 24131182
MDoman@gibbsbruns.com
1100 Louisiana, Suite 5300
Houston, Texas 77002
Tel.: (713) 650-8805
Fax: (713) 750-0903

Eric Mahr
FRESHFIELDS BRUCKHAUS DERINGER US LLP
700 13th Street, NW
10th Floor
Washington, DC 20005
Telephone: (202) 777-4545
Email: eric.mahr@freshfields.com

ATTORNEYS FOR DEFENDANT GOOGLE LLC

**FILED UNDER SEAL**

## CERTIFICATE OF SERVICE

      I certify that on July 29, 2024, this document was filed electronically in compliance with Local Rule CV-5(a) and served on all counsel who have consented to electronic service, per Local Rule CV-5(a)(3)(A). A Motion to Seal this document has been filed. The sealed document will be promptly served by email.

      */s/ Kathy D. Patrick*
      Kathy D. Patrick