IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| THE STATE OF TEXAS, et al., | § | |
| | § | |
| Plaintiffs, | § | Civil Action No. 4:20-cv-00957-SDJ |
| v. | § | |
| | § | |
| GOOGLE LLC, | § | |
| | § | |
| Defendant. | § | |

**GOOGLE'S MOTION TO STRIKE IMPROPER REBUTTAL OPINIONS OF
PLAINTIFFS' EXPERTS DAVID DERAMUS AND ANIL SOMAYAJI**

Expert rebuttal opinions are not do-overs. Nor are they opportunities to sandbag the opposition by eliciting a response to one opinion only to pivot to another. The "purpose of rebuttal … is just that—to rebut," *Sierra Club, Lone Star Chapter v. Cedar Point Oil Co. Inc.*, 73 F.3d 546, 571 (5th Cir. 1996), which means that a proper "'rebuttal' report explains, repels, counteracts, or disproves evidence of the adverse party's initial report," *CEATS, Inc. v. TicketNetwork, Inc.*, 2018 WL 453732, at *3 (E.D. Tex. Jan. 17, 2018) (quotation omitted); *see also* Fed. R. Civ. P. 26(a)(2)(D)(ii) (defining proper expert rebuttal reports as those "intended solely to contradict or rebut evidence on the same subject matter identified by another party").

Defendant Google LLC ("Google") files this Motion to Strike portions of two of Plaintiffs' recently disclosed "rebuttal" reports that are paradigmatic case-in-chief opinions. The first proffers a brand-new, ███████ "calculation" in support of the civil penalties Plaintiffs demand as affirmative relief under state DTPA laws—a number ████████████████████████ ██████████████████████████████████ The other introduces brand-new technical analyses of the purported ████████████████████████████ ███████, an allegation that has always been part of Plaintiffs' antitrust case in chief. These improper and untimely "rebuttal" opinions are seriously prejudicial. Both should be stricken.

## RELEVANT PROCEDURAL HISTORY

The Court set June 7, 2024 as the deadline for "[d]isclosure of expert testimony …  on issues for which the party bears the burden of proof." Dkt. #458.[1] Plaintiffs served reports from six affirmative experts on June 7. Ex. 1 (Ewalt Decl.) ¶ 3. Included were reports from a putative expert on the quantification of civil penalties, Jeffrey Andrien (Ex. 2), and a putative expert in

---

[1] The June 7 deadline was a three-week extension beyond the Court's original deadline for Plaintiffs' affirmative expert reports. Dkt. #194. Plaintiffs requested that extension to "allow sufficient time for their experts to prepare their opening reports." Dkt. #432 at 8.

computer science, Jacob Hochstetler (Ex. 3).

On July 30, Google served its expert reports, due that day because they addressed "issues for which [Google] does not bear the burden of proof." Dkt. #458.[2] Included among Google's nine reports were (i) reports from Dr. Steven Wiggins (Ex. 4) and Dr. Douglas Skinner (Ex. 5), in response to Mr. Andrien's opinions on civil penalties, and (ii) a report from Dr. Martin Rinard (Ex. 6), partially in response to Hochstetler and otherwise addressing opinions from Plaintiffs' affirmative experts that implicate Google's source code. Ex. 1, ¶ 4.

Plaintiffs next requested and received an extension to their deadline to disclose "rebuttal expert testimony," moving it to September 9. Dkt. #609. On September 9, Plaintiffs served **11** purported "rebuttal" reports, including **5** from previously undisclosed experts. Ex. 1, ¶ 5. These eleven reports together total ~1500 pages. *Id.*

Plaintiffs' newly disclosed "rebuttal" experts include two that opine on subjects plainly within Plaintiffs' affirmative burden of proof. One is a brand-new report on the calculation of DTPA civil penalties—an issue on which Plaintiffs without doubt bear the burden of proof—authored by David DeRamus. In it, Dr. DeRamus purports to ████████████████████ ████████████████████████████████████████████████████████████████ ██████████████████████ espoused by Plaintiffs' initial civil-penalties expert, Mr. Andrien. *See* Ex. 7 (DeRamus Rpt.). Plaintiffs' "rebuttal" expert Dr. Anil Somayaji also offers a brand-new opinion that, in reality, goes to an element of Plaintiffs' case in chief: anticompetitive conduct as relevant to antitrust liability. Dr Somayaji claims to describe ██████████████████████

---

[2] Two of Google's reports were served August 6, pursuant to the Court's one-week extension for "responsive expert opinions that would … include issues relating to equitable relief for which the party does not bear the burden of proof." Dkt. #562; Ex. 1, ¶ 4.

████████████████████████████████████████████████████, an allegation that *has always been a tenet of Plaintiffs' antitrust theory*, *see* Ex. 8 (Somayaji Rpt.).

## ARGUMENT

Drs. DeRamus and Somayaji each proffer untimely affirmative opinions under the guise of "rebuttal" reports. Their improper rebuttal opinions—Sections II.B-C, VI.C-D, and VII.B of the DeRamus report and Sections IV and V of the Somayaji report—should be stricken.[3]

### I.     Improper rebuttal opinions should be stricken, absent substantial excuse.

"Parties must provide their expert disclosures 'at the times and in the sequence that the court orders,'" and that "requirement extends to designating rebuttal experts and disclosing rebuttal reports 'intended solely to contradict or rebut evidence' in another party's expert reports." *CEATS, Inc. v. TicketNetwork, Inc.*, 2018 WL 453732, at *3 (E.D. Tex. Jan. 17, 2018) (quoting Fed. R. Civ. P. 26(a)(2)(D)). In turn, "Rule 37 sets forth the consequences of untimely or insufficient disclosure by a party: 'The party is not allowed to use that information or witness … unless the failure was substantially justified or is harmless.'" *Id.* (quoting Fed. R. Civ. P. 37(c)(1)).

On motions to strike improper rebuttal opinions, the first question is "whether [the expert] is a rebuttal witness" or instead offers affirmative (and thus untimely) expert opinions. *See United States ex rel. Montcrieff v. Peripheral Vascular Assocs., P.A.*, 507 F. Supp. 3d 734, 746-47 (W.D. Tex. 2020). Courts consider three factors in answering this threshold question: "(1) whether the report is purporting to contradict or rebut expert opinions offered by the opposing party as a claim or defense on which the opposing party has the burden of proof; (2) whether the opinions are on the same subject matter as that identified by the opposing party's expert [report]; and (3) whether

---

[3] This Motion addresses only the timeliness of Dr. DeRamus's and Dr. Somayaji's improper rebuttal opinions, not their relevance, reliability, or other substantive matters bearing on their admissibility. To the extent not stricken, Google reserves its rights to object on substantive grounds.

the evidence disclosed as rebuttal evidence is intended solely to contradict or rebut that evidence." *Id.* at 747 (quoting *YETI Coolers, LLC v. RTIC Coolers, LLC*, 2017 WL 394511, at *2 (W.D. Tex. Jan. 27, 2017); *see also Gibson Brands, Inc. v. Armadillo Distrib. Enters., Inc.*, 2021 WL 231764, at *1 (E.D. Tex. Jan. 22, 2021) (similar, and collecting cases).

Second, while "[i]mpermissible rebuttal testimony should be excluded," *Gibson Brands*, 2021 WL 231764, at *1, courts consider whether "the failure was substantially justified or is harmless," Fed. R. Civ. P. 37(c)(1), such that a lesser remedy may suffice. Several factors inform this question, too: "(1) the importance of the witnesses' testimony; (2) the prejudice to the opposing party of allowing the witnesses to testify; (3) the possibility of curing such prejudice by granting a continuance; and (4) the explanation, if any, for the party's failure to comply with the discovery order." *Sierra Club, Lone Star Chapter v. Cedar Point Oil Co. Inc.*, 73 F.3d 546, 572 (5th Cir. 1996). When the factors weigh against excusing the untimely disclosure, as when there is "no good explanation for [the] delay in proffering" the opinion, the proper remedy is to strike it. *E.g.*, *CEATS*, 2018 WL 453732, at *4; *Montcrieff*, 507 F. Supp. 3d at 748-49. Alternatively, when the factors weigh in the other direction, as when exclusion would result in a "trial in which only the Defendants have experts," courts may find a lesser remedy appropriate, such as allowing the opposing party to file a sur-rebuttal report. *E.g.*, *9.345 Acres*, 2016 WL 5723665, at *5-6. The Court has "broad" discretion in resolving both questions. *Sierra Club*, 73 F.3d at 569.

## II.   Dr. DeRamus's improper rebuttal opinions should be stricken.

No law allows any plaintiff to proffer as a purported "rebuttal" an opinion disclosing brand-new methods for calculating damages, because that is an issue on which every plaintiff bears the burden of proof. Just so here, regarding Plaintiffs' "rebuttal" on civil penalties. Permitting Plaintiffs to proceed on an untimely affirmative report ████████████████████

███████████████ would be profoundly prejudicial to Google—a prejudice made inexcusable by the fact that the Google documents and public-domain "evidence" considered in Dr. DeRamus's report were equally available to Plaintiffs before they served their opening reports in June. Plaintiffs offer no justification for their delay in providing this affirmative report, because there is none. So the "rebuttal" opinions in which Dr. DeRamus purports to tell the jury how to calculate civil penalties, and how much to award, must be stricken.

### A. DeRamus offers improper rebuttal opinions.

The DeRamus opinions at issue in this Motion do not correct or rebut Google's experts on civil-penalty metrics. They are an overt attempt at a do-over, providing a backup affirmative penalty calculation should Plaintiffs' initial civil-penalty expert, Mr. Andrien, fail to persuade. Plaintiffs are "trying to improperly use rebuttal to modify [their] case in chief and get a 'do-over,'" but the Federal Rules forbid such gambits. *9.345 Acres*, 2016 WL 5723665, at *4.

Plaintiffs disclosed Mr. Andrien—not Dr. DeRamus—as an affirmative expert on the theory and calculation of civil penalties under the respective Plaintiff states' deceptive trade practices laws ("DTPA"). Mr. Andrien began by ████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████ Ex. 2, ¶ 101 & tbl. 2.[4] Next, Mr. Andrien opined regarding ████████

████████████████████████████████████████████ *id.* ¶ 127,

a figure purportedly derived from his analysis of ████████████████████████

████████████████████████████████████████████████████

████████████████████████████████ *id.* ¶ 129. In the end, Mr. Andrien's

---

[4] *See also* Ex. 9 (Andrien Rebuttal Rpt.) ¶ 21 (clarifying that he calculated ███████████████ ); Ex. 7 (DeRamus Rpt.) ¶ 33 (same as to Andrien's calculation of ███████████████ ).

calculations ████████████████████████████████████ *Id.* ¶ 130.

Google's experts, Drs. Wiggins and Skinner, rebutted and corrected Mr. Andrien's analysis—on Mr. Andrien's own terms. Dr. Wiggins explained that, in a number of ways (██████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ███████████████), Mr. Andrien's ████████ figure for total ████████████████████████. Ex. 4 (Wiggins Rpt.) § IV. In sum, Dr. Wiggins's analysis revealed that ████████████ ████████████████████████████████████████████████████████████ ████████████████████████████. *Id.* ¶ 166 (emphasis added). Dr. Wiggins also contested Mr. Andrien's calculation of a ████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████. *Id.* ¶ 172 & tbl. 2. Dr. Wiggins therefore opined that a proper application of Mr. Andrien's theory ████████████ ███████████████. *Id.* ¶ 180 & fig. 3. Google expert Dr. Skinner added to the necessary corrections of Mr. Andrien's analysis by correcting Mr. Andrien's quantification of ████████ ████████████████████████████████████████████. Whereas  Mr. Andrien  calculated ████████████████████████████████████████████████ ██████████ Ex. 2 (Andrien Affirmative Rpt.) ¶ 95 & tbl. 1, ████████████████████ ████████████████████████ *id.* at ¶ 13, ████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████ Ex. 5 (Skinner Rpt.) ¶ 50 & tbl. 3, ¶ 57 & tbl. 4A.

On September 9, Mr. Andrien disclosed a rebuttal report taking issue with many of Dr. Wiggins's and Dr. Skinner's corrections. *See* Ex. 9. But Plaintiffs did not stop there. They also

disclosed Dr. DeRamus's "rebuttal," which offers not one, but **two brand-new methodologies and calculations** ████████████████████████████████████████.

His first proffered methodology is that ████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████ *Id.* § II.B & ¶¶ 28-29. In this vein, he opines that ██████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████. *Id.* ¶¶ 33 & fig. 1.

Second, Dr. DeRamus offers another theoretical methodology to calculate civil penalties. He claims that ██████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████. *Id* § II.C & ¶ 43 ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████

Those methodological opinions (§§ II.B and II.C) are themselves improper rebuttals. But Dr. DeRamus does not just theorize regarding the two brand-new methodologies the jury might use to quantify penalties. He then purports to **actually calculate two sets of brand-new "ranges" of civil penalties for the jury's consideration**, with each set applying one of his new theoretical methodologies. To implement his ██████████████████████████████████████████ (§§ VI.C and VI.D), Dr. DeRamus (i) ████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████

7

███████████ *id.* § VI.C & ¶¶ 103-04, 108; and (ii) ████████████████████

████████████████████████████████████████████████████████

███████████████████████████████ *id.* § VI.D. Ultimately, █████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████

Dr. DeRamus next calculates ***another set of brand-new penalty figures*** (§ VII.B) based on his *second* brand-new methodology ███████████████████████████████████

████████████████████████ *Id.* § VII & ¶ 128). He first purports to ████████

████████████████████████████████████████████████████████

████████████████████████ *Id.* ¶ 135. According to Dr. DeRamus, he then ████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████ *Id.* Ultimately, Dr. DeRamus concludes that ████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████ *Id.* ¶ 140. ████████████████████████



*Id.* ¶¶ 142-146. Neither Dr. Wiggins, Dr. Skinner, nor any other Google expert ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

Each factor courts consider when determining if a rebuttal opinion is actually a rebuttal opinion shows that these are affirmative opinions, not "rebuttals." The Plaintiff States bear the burden of proof when seeking to enforce the DTPA. *State v. Vavro*, 259 S.W.3d 377, 382 (Tex. App.—Dallas 2008, no pet.). That burden includes justifying DTPA remedies like civil penalties. *See State v. Bachynsky*, 770 S.W.2d 563 (Tex. 1989) (reversing judgment for State, awarding DTPA civil penalties, because State's evidence was insufficient to support aggregate penalty award). Dr. DeRamus, in offering new methods for calculating and actual calculations of civil penalties, is not "contradict[ing] or rebut[ting] expert opinions … ***on which the opposing party has the burden of proof***." *Montcrieff*, 507 F. Supp. 3d at 747 (emphasis added). He opines strictly in support of a paradigmatic element of Plaintiffs' case in chief—the calculation of monetary relief.

Neither can Dr. DeRamus's brand-new methodologies and calculations be construed as "intended solely to contradict or rebut" Google's experts on "subject matter [they] identified." *See id.* at 747. Google's experts did not "identify" Plaintiffs' framework for and calculation of

appropriate civil penalties—Plaintiffs' expert Mr. Andrien did that. Google's experts (Drs. Wiggins and Skinner) then properly corrected Mr. Andrien's underlying calculations and assumptions. *See 9.234 Acres*, 2016 WL 5723665, at *3 ("[A] rebuttal witness must respond to ***new opinions brought out in her opponent's case in chief***.") (emphasis added). That Google's experts disagreed with and corrected Mr. Andrien's civil-penalty opinions does not open the door, on rebuttal, to brand-new affirmative civil-penalty opinions.[5]

Nor can Plaintiffs have been surprised that Google's experts would address Mr. Andrien's calculation of ██████████ civil penalties based on ████████████████ So, even if Dr. DeRamus's calculations tangentially contradicted Dr. Wiggins's or Dr. Skinner's opinions (and they do not), they would still be improper rebuttal opinions—because a witness who "contradict[s] an *expected and anticipated* portion of the opposing party's case in chief can never be considered a rebuttal witness." *9.234 Acres*, 2016 WL 5723665, at *3 (emphasis original).

### B. The appropriate remedy is to strike Dr. DeRamus's non-rebuttal opinions.

The "[m]ost significant[]" factors determining whether to strike an untimely expert opinion are the sponsoring party's "explanation for its delay" and whether the information was available "before the deadline for its initial expert reports." *CEATS*, 2018 WL 453732, at *4; *see also Daedalus Blue LLC v. SZ DJI Tech. Co., Ltd.*, 2022 WL 831619, at *4 (E.D. Tex. Feb. 24, 2022) (collecting cases: "Courts routinely reject untimely 'supplemental' expert testimony where the opinions are based upon information available prior to the deadline for expert disclosure.").

Plaintiffs offered no reason that Dr. DeRamus's calculations of penalty "ranges" could not

---

[5] *See Ainsworth v. Circle K Convenience Store, No. 3721*, 56 F.3d 1386, at *1-2 (5th Cir. May 25, 1995) (defense expert's disagreement with plaintiff's expert was not a basis to allow rebuttal expert because the subject matter "was not new"); *McReynolds v. Matthews*, 2017 WL 5573194, at *4 (S.D. Miss. Nov. 20, 2017) (defense expert opinion on "essential element of [plaintiff's] claim," is not "new information that would be proper grounds for a rebuttal").

have been disclosed in June, as required by the Scheduling Order. They undoubtedly could: the information on which he relies—██████████████████████████ —████████████████████████—were all available then. There is no excuse. *See Sierra Club*, 73 F.3d at 573 (affirming exclusion where it "was clear from the filing of the action" that subject matter of expert's testimony "would be an issue in this lawsuit").

Other considerations also support striking these opinions. The "prejudice" to Google, *see id.* at 572, speaks for itself. Google has now been confronted with a new, affirmative opinion ██████████████████████████████ Google believed its experts had to rebut based on the (timely) report of Plaintiffs' first penalty expert, Mr. Andrien. Now, rather than the allotted five months between Plaintiffs' affirmative reports, and the need to file summary-judgment and *Daubert* motions in November, Google is left with just two months in the interim, during which time nineteen expert depositions must be completed. *See id.* (finding sufficient prejudice where a party "should have received most of this information in initial expert disclosures a month earlier"). This prejudice cannot be cured by affording Google a surrebuttal. There is not enough time for an econometric expert to prepare a comprehensive critique of Dr. DeRamus's █████████████ and to assess Dr. DeRamus's ██████████ ██████████████████, then prepare for and conduct appropriate depositions, by the close of expert discovery on November 1 (a deadline Plaintiffs refuse to extend). *See YETI Coolers*, 2017 WL 394511, at *3 (party "would be prejudiced if [expert's] report is allowed, because it would be unable to rebut [expert's] opinion with an expert of its own").[6] Plaintiffs, in

---

[6] If the Court instead chooses to grant Google leave to prepare sur-rebuttal reports, the expert discovery schedule would have to be extended by *at least* seven weeks to allow Google adequate time to prepare comprehensive surrebuttal reports and conduct depositions–a delay that would impose cascading delays in the summary judgment and *Daubert* schedule, as well as the March trial date. The only way to maintain the current schedule, without prejudice to Google, is to strike these improper, untimely affirmative opinions.

contrast, are not prejudiced by exclusion of these untimely opinions. They, not Google, chose to designate only Mr. Andrien to testify affirmatively on metrics purportedly bearing on the calculation of civil penalties. And Mr. Andrien remains available to do so.

Further, should Plaintiffs be permitted to use Dr. DeRamus as a "do-over" on Mr. Andrien's subject matter, Google will have "expended considerable resources responding to [Andrien's] initial opinions," only to now "undoubtedly … expend significantly more time and money addressing [DeRamus's] new opinions." *See Daedalus Blue*, 2022 WL 831619, at *4. The "Fifth Circuit has been clear that district judges have the power to control their dockets by refusing to give ineffective litigants a second chance to develop their case." *Id.* at *4; *accord Hamburger v. State Farm Mut. Auto. Ins. Co.*, 361 F.3d 875, 884 (5th Cir. 2004) (violation of a scheduling order is not a ground for continuance). Finally, if Dr. DeRamus's new penalty opinions were so "important," *see Sierra Club*, 73 F.3d at 572, as to excuse Plaintiffs' sandbagging tactics, they should have been disclosed on or before the deadline for case-in-chief expert testimony. *See YETI Coolers*, 2017 WL 394511, at *3 (the "importance of [expert's] testimony" was "not enough to save" it because the "deadline was well known," as was which party "bears the burden of proof").

## II.     Dr. Somayaji's improper rebuttal opinions should be stricken.

Dr. Somayaji does pay lip service to his purported role as a "rebuttal" expert. He frames his opinions ████████████████████████████████████████████████████ ████████████████████████ § IV, ¶ 24, and that ████████████████████████████ ██████ *id.* § V, ¶ 43, as ██████████████████████████████████████████ ██████████████████████████████████████████████████████████████████ ██████████ *see id.* ¶ 24; *see also* ¶ 43 (same as to § V). But Dr. Milgrom's report, which Dr. Somayaji purports to "rebut," has nothing to do with computer source code (Dr. Milgrom is an

economist), and offers no comparison of the ██████████████████████████████

████████. On the contrary, Dr. Milgrom opines on ████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████. *See generally* Ex. 10 (Milgrom Rpt.). Dr. Somayaji acknowledges as much, ██

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████ Ex. 8, ¶ 43 (emphasis added); *see also id.* ¶ 24 ████████████████████

████████████████████████████████████████████████████████████

████"). Put simply, Dr. Somayaji claims to "rebut" an opinion never offered by Dr. Milgrom

(or any other Google expert), namely that ████████████████████████████

████████████. That is not rebuttal. *See 9.345 Acres*, 2016 WL 5723665, at *3 ("Rule 26 defines

a proper expert rebuttal report as one that is 'intended solely to contradict or rebut evidence on the

same subject matter identified' by the opposing party's case in chief expert report.").[7]

It appears Plaintiffs always intended to offer the opinions in Sections IV and V of Dr.

Somayaji's "rebuttal" report. Nothing in Google's expert reports could have *unexpectedly*

provoked this analysis. These Sections opine ████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████" Ex. 8, ¶¶ 25, 43. None of this addresses Dr.

---

[7] Tellingly, Dr. Somayaji—a computer scientist—offers no rebuttal to Google's computer science expert Dr. Rinard. *See* Ex. 8 (Somayaji Rpt.) ¶ 3 and *passim* (acknowledging review of Dr. Rinard's report but not responding to it). Plaintiffs must also admit source-code opinions bear on their case in chief: their affirmative reports in June included a ~200-page report from computer scientist Dr. Hochstetler. Ex. 3.

Milgrom's analysis. Instead, it all relates to an element of Plaintiffs' as-alleged case in chief: the competitive advantages Google allegedly held as a result of its superior technology.

Plaintiffs cannot contend otherwise. The Court need look no further than their Complaint, which explicitly alleges the anticompetitive effect of ████████████████████ ████████████. Plaintiffs have *always* claimed that Google allegedly "foreclosed competition" through the technological design of its ad exchange, AdX, by "provid[ing] its buying tools (DV360 and Google Ads) with information advantages when bidding." Dkt. #541 (4th Am. Compl.) ¶ 276; *see also id.* ¶ 77 (alleging that Google uses "their control of the exchange to give preferred access to their own buying tools," including by "withholding relevant information" from "non-Google buying tools").[8] That alleged buy-side informational advantage ████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████.

Dr. Somayaji is not rebutting anything. He is offering evidence for one of Plaintiffs' original, and affirmative, theories of antitrust liability. His opinions do not "contradict or rebut expert opinions … on which [Google] has the burden of proof," *see Monctcrieff*, 507 F. Supp. 3d at 747, because it is Plaintiffs' burden to prove their theory of anticompetitive conduct. *Retractable*

---

[8] *See also* Dkt. # 1 (Orig. Complaint filed 12/16/2020) ¶ 238 (alleging that Goolge's "exchange and ad server provide Google's buy-side with information advantages and better opportunities"), ¶ 251 ("Google has unlawfully maintained monopolies by … [s]ubstantially foreclosing competition in the markets for display ad buying tools … by creating information asymmetry ….").

*Techs., Inc. v. Becton Dickinson & Co.*, 842 F.3d 883, 891 (5th Cir. 2016). Dr. Somayaji seeks to help Plaintiffs meet that affirmative burden, which means Sections IV and V are not "rebuttal" opinions. And he *certainly* cannot be rebutting Dr. Milgrom, as he claims, because he offers a "new data set" that Milgrom did not address (Google's source code) and a "new means of analysis" (source code review) that Dr. Milgrom was neither asked nor qualified to utilize. *See White v. State Bd. of Elec. Comm'rs*, 2023 WL 2957819, at *4 (N.D. Miss. Apr. 14, 2023) (opinion offering "an entirely new data set and new means of analysis" was "plain[ly] … not proper rebuttal").

Dr. Somayaji's Sections IV and V should be stricken because the *Sierra Club* factors weigh against any lesser remedy. Plaintiffs cannot offer any legitimate "explanation" for failing to disclose Dr. Somayaji's opinions in June—their relevance "was clear from the filing of the action," and all parties knew that Google's source code "would be an issue in this lawsuit." *See Sierra Club*, 73 F.3d at 573.  The code and Google documents on which Dr. Somayaji relies were no less available in June, "before the deadline for [Plaintiffs'] initial expert reports." *See CEATS*, 2018 WL 453732, at *4. And Dr. Somayaji's improper rebuttals are prejudicial for the same reasons as Dr. DeRamus's, including in particular that Google "should have received [] this information in initial expert disclosures" in June, *see Sierra Club*, 73 F.3d at 572, leaving time to develop responsive expert testimony and undertake the time- and resource-intensive review of source code required to do so.

## CONCLUSION

Google respectfully requests that the Court strike, and exclude any testimony from these two experts regarding, the untimely affirmative opinions disclosed in Sections II.B-C, VI.C-D, and VII.B of the DeRamus report and Sections IV and V of the Somayaji report.

Dated: September 20, 2024                    Respectfully submitted,


GIBBS & BRUNS LLP

 /s/ Kathy D. Patrick
Kathy D. Patrick
Texas Bar No. 15581400
kpatrick@gibbsbruns.com
Robin C. Gibbs
Texas Bar No. 07853000
rgibbs@gibbsbruns.com
Ayesha Najam
Texas Bar No. 24046507
anajam@gibbsbruns.com
Charles M. Rosson
Texas Bar No. 24074985
crosson@gibbsbruns.com
Ann T. Lebeck
Texas Bar No. 24055840
alebeck@gibbsbruns.com
Caitlin A. Halpern
Texas Bar No. 24116474
chalpern@gibbsbruns.com
Michael Davis
Texas Bar No. 24109793
mdavis@gibbsbruns.com
Michael D. Doman
Texas Bar No. 24131182
mdoman@gibbsbruns.com
1100 Louisiana, Suite 5300
Houston, Texas 77002
Tel.: 713.650.8805
Fax.: 713.750-0903


Eric Mahr (*pro hac vice*)
Julie S. Elmer (*pro hac vice*)
FRESHFIELDS BRUCKHAUS DERINGER LLP
700 13th Street NW, 10th Floor
Washington, D.C. 20005
(202) 777-4545
eric.mahr@freshfields.com
julie.elmer@freshfields.com

Daniel S. Bitton (*pro hac vice*)

16

AXINN, VELTROP & HARKRIDER LLP
55 Second Street
San Francisco, CA 94105
(415) 490-1486
dbitton@axinn.com

Bradley Justus (*pro hac vice*)
James K. Hunsberger (*pro hac vice*)
David R. Pearl (*pro hac vice*)
AXINN, VELTROP & HARKRIDER LLP
1901 L Street NW
Washington, DC 20036
(202) 912-4700
bjustus@axinn.com
jhunsberger@axinn.com
dpearl@axinn.com

ATTORNEYS FOR
DEFENDANT GOOGLE LLC

## CERTIFICATE OF SERVICE

I certify that on September 20, 2024, this document was filed electronically in compliance with Local Rule CV-5(a) and thus served on all counsel who have consented to electronic service.

/s/ *Michael Davis*
Michael Davis

## CERTIFICATE OF CONFERENCE

I certify that counsel for Defendant conferred with counsel for Plaintiffs via email and via telephone conference (Google: R. McCallum, Plaintiffs:  Z. DeRose) and that counsel for Plaintiffs stated Plaintiffs' opposition to the relief requested in this Motion.

/s/ *Michael Davis*
Michael Davis

## CERTIFICATE OF MOTION TO SEAL

I certify that contemporaneously with the filing of this Motion, Defendant is filing a motion to seal both this document and the expert reports attached as exhibits.

/s/ *Michael Davis*
Michael Davis

18