IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| THE STATE OF TEXAS, et al., <br><br> Plaintiffs, <br><br> v. <br><br> GOOGLE LLC, <br><br> Defendant. | Civil Action No. 4:20-cv-00957-SDJ |

**PLAINTIFF STATES' RESPONSE TO GOOGLE'S MOTION TO STRIKE**

## INTRODUCTION

Google's motion fails because the opinions at issue are proper rebuttal, but even if they were not, striking would be unwarranted. Google's expert Dr. Wiggins opines that an optimal civil penalty need *only* account for ███████████████████████████████████████████ ███████████████████████████████████████ Dr. DeRamus contradicts that opinion by explaining that a penalty amount ████████████████████████ ████████████████ would not deter Google, both because it ignores the probability of detection and because Dr. Wiggins's proposed penalties would not induce Google (including its management and shareholders) to take *any* corrective action. This is the purpose of a rebuttal report.

Google's expert Dr. Milgrom opines that even though Google concealed certain auction rule changes from auction participants, they nonetheless would learn of the changes and adapt their behavior, nullifying any gains to Google. Dr. Somayaji directly rebuts Dr. Milgrom's "no harm, no foul" theory by showing through Google's own source code that because Google's auctions hide information from participants, are highly complex, and change frequently, auction participants lack the ability to discern these rules via experiment and adapt their behavior.

Both of these opinions are pure rebuttal, but even if they were not, Google's motion fails to justify its demand for the severe remedy of striking. The Fifth Circuit has regularly reversed courts for striking expert testimony, even when, unlike here, disclosures were egregiously late. The standard remedy is to allow an opportunity to respond, even if doing so would require additional summary judgment or *Daubert* motions and reopening discovery. Here, Plaintiff States offered on September 16 to allow Google to file sur-rebuttal reports (an offer Google accepted for another expert). Expert discovery is still open, and the sur-rebuttal could be completed without moving any deposition or briefing deadlines. Google refused. There is no prejudice to Google,

1

and even if there were, the proper remedy would be to allow Google a sur-rebuttal; not to strike the rebuttals at issue. The Court should deny the motion.

## BACKGROUND

The parties have worked cooperatively to disclose expert testimony, accommodating scheduling concerns from both sides. Plaintiffs served affirmative expert reports on June 7. Claiming surprise at finding remedies-related expert opinion in Plaintiff States' opening reports, Google met and conferred, culminating in a status conference and joint motion to amend the scheduling order. Dkt. 607. Google served responsive expert reports on July 30 and August 6. Under the modified schedule, expert discovery closes November 1—and, on the theory that the federal government's separate action creates a weeks-long conflict, Google has offered most of its experts for deposition at the end of October. Plaintiff States served rebuttal expert reports on September 9, nearly two months before the close of expert discovery.

One week later, on September 16, Google first raised concerns that certain rebuttal opinions of Drs. Gans, DeRamus, and Somayaji were untimely affirmative opinions. That same day, Plaintiff States emailed, met, and conferred, accommodating Google's request to allow sur-rebuttal of Dr. Gans's opinions and to move deposition dates until after sur-rebuttal. *See* Dkt. 623. Plaintiff States compromised not because Dr. Gans had any improper opinions, but to avoid burdening the Court. Plaintiff States made the same offer for Drs. DeRamus and Somayaji, but Google did not then, and does not now, seek to sur-rebut Drs. DeRamus and Somayaji.

## ARGUMENT

Google's motion fails on two fronts. The opinions are proper rebuttal, and even if they were not, a remedy far short of striking the opinions is appropriate here: namely, allowing Google to file sur-rebuttal reports, which it already is preparing on other topics.

2

I.  **The Opinions Are Proper Rebuttal.**

The parties agree on the general meaning of "rebuttal": "A 'rebuttal' report explains, repels, counteracts, or disproves evidence of the adverse party's initial report."  *CEATS, Inc. v. TicketNetwork, Inc.*, 2018 WL 453732, at *3 (E.D. Tex. Jan. 17, 2018).  But Google is wrong to argue that a new methodology or analysis cannot be rebuttal.  Indeed, "[n]othing in Rule 26 or the nature of rebuttal prohibits offering *independent opinions* or utilizing *other methodologies*. 'In fact, offering a different, purportedly *better methodology* is a proper way to rebut the methodology of someone else.'"  *Gibson Brands, Inc. v. Armadillio Distrib. Enters., Inc.*, 2021 WL 231764, at *3 (E.D. Tex. Jan. 22, 2021) (quoting *TCL Commc'ns Tech. Holdings Ltd. v. Telefonaktenbologet LM Ericsson*, 2016 WL 7042085, at *4 (C.D. Cal. Aug. 17, 2016)) (emphases added).  Each opinion is proper rebuttal.

A.  **Dr. DeRamus's Opinions Are Proper Rebuttal.**

Each of the sections Google challenges rebuts Google's own expert witness' reports. Further, by largely failing to contest Dr. DeRamus's qualitative rebuttal opinions and instead focusing on corresponding quantitative substantiation, Google lets the mask slip: the true objective of Google's motion is to defang Dr. DeRamus's rebuttal opinion, not to quibble with the scope.

1.  **Dr. DeRamus's probability of detection opinions are rebuttal (§§ IIB, VI.C).**

Section II of Dr. DeRamus's report describes the "Economic framework for determining statutory penalties with a deterrent effect." Def. Ex. 7 at 10.  Its very first sentence addresses Dr. Wiggins's report, flagging that Dr. Wiggins "omits a discussion of key factors." *Id.* § II.A (which Google does not seek to strike) categorizes various types of penalties and criticizes Dr. Wiggins for opining that the appropriate penalty is linked to ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ ▬▬▬▬▬▬▬▬ *Id.* at 13. Section II.B (which Google does seek to strike) is no different.  It explains why economists uniformly consider the probability of detection in assessing optimal

3

deterrence—a key factor Dr. Wiggins failed to address, instead focusing solely on profits. This is a powerful critique of Dr. Wiggin's methodology, since the various DTPA statutes instruct factfinders to assess penalties based, in part, on "the amount necessary to deter future violations." *See, e.g.*, Texas Deceptive Trade Practices Act ("TDTPA") § 17.47(g). Dr. DeRamus shows that by ▇▇▇▇▇▇▇▇▇▇▇▇▇▇ without considering likelihood of detection, Dr. Wiggins ignores a key factor.

Section VI begins by critiquing Dr. Wiggins's ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. Among other criticisms, Dr. DeRamus reiterates that Dr. Wiggins "ignores" the "deterrent purpose" of civil penalties, which requires assessing the probability of detection. Google has not moved to strike this material. Section VI.B. challenges Dr. Wiggins's conclusions that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇, and instead, uses Google's own documents to show that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. Section VI.C. then estimates the probability of detection (which, when combined with the benefits calculation from Section VI.B., produces a figure for deterrence). Google seeks to strike section VI.C, but there is no conceptual difference between that section and the preceding subsections that Google does *not* move to strike. Section VI.C is linked to what comes before: Dr. DeRamus first explains in general that benefits from the misconduct and the probability of detection are both relevant to assessing civil penalties, and then calculates *specifically* the benefits (§VI.B) and probability of detection (§VI.C). Simply put, all of Section VI rebuts Dr. Wiggins by showing that his penalty methodology is incomplete and his resulting figures are implausible and wrong.

### 2. Dr. DeRamus's opinions on Google's benefits are proper rebuttal (§ VI.D).

Section VI.D. estimates the benefits to Google from the challenged practices both *ex ante* and *ex post*, responding *directly* to Dr. Wiggins's contrary calculations. For example, section VII.C of Dr. Wiggins's report purports to calculate ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

4

███████████████ Def. Ex. 4 at 107-11.  He concludes that ████████████████

████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████.

*Id.* at 109-10.  Thus, ██████████████████████████████ *Id.* at 110.  Next, he *assumes* there was some benefit to Google, and opines that ████████████████████

████████████████████████████████████████████████████████████████████████

*Id.*  Dr. DeRamus directly rebuts that calculation, using what he explains is a superior methodology, and getting a different result.  *See* Def. Ex. 7 § VI.D.1-2.  In the remainder of section VI.D., Dr. DeRamus performs the same calculations for the other misconduct at issue, and under various alternative assumptions.  "Fixing" an opposing expert's methodology for errors is classic, appropriate rebuttal expert testimony.

Throughout Section VI.D, Dr. DeRamus repeatedly criticizes and corrects Dr. Wiggins's methodology and conclusions regarding the benefits to Google from the misconduct at issue.  For example, Dr. DeRamus counteracts Dr. Wiggins's conclusion (and related methodology) that the appropriate measure for measuring net benefits to Google is ████████████████, instead concluding that "the proper measure is Google's incremental profits associated with the estimated incremental revenues," and employing an alternative methodology.  Def. Ex. 4 at 110.  *See* Def. Ex. 7 § VI.D.1 ("From an economic perspective, the appropriate measure for this calculation is not ████████████████████████████████████████████████, but rather its incremental profits associated with the estimated incremental revenues.").

Dr. DeRamus challenges Dr. Wiggins's estimate of ████████████████████

████████████████████████████████████████████████████████████████████████

█████████ and his contention ███████████████████████████████████████████

█████████████ instead pointing to internal Google documents and concluding that █

5

███ *Id.* § VI.D.2 (citing Wiggins Report ¶¶ 19, 257). From there, in contrast to Dr. Wiggins's methodology, Dr. DeRamus incorporates in his calculations the ███ *See, e.g., id.* §§ VI.D.3-VI.D.5. Dr. DeRamus further criticizes Dr. Wiggins's "(under)estimate of the number of statutory violations" and shows that even using Dr. Wiggins's estimate, the resulting per violation penalty amount would be ███. *Id.* § VI.D.6. Dr. DeRamus is clearly "challenging the validity of [Dr. Wiggins's] overall conclusions" and "counteracts" and "disproves" Dr. Wiggins's opinions; Section VI.D "is thus a rebuttal." *Gibson Brands*, 2021 WL 231764, at *3 (quoting *CEATS, Inc.*, 2018 WL 453732, at *3).

### 3. Dr. DeRamus's opinions regarding Google's stock price are proper rebuttal (§§ II.C, VII.B).

Dr. DeRamus proposes another way to correct Dr. Wiggins's ███ theory. Section II.C. explains the well-understood principal-agent problem in economics, as applied to civil penalties and deterrence. Taking action as a principal (shareholders, here) is costly, and so will not occur unless the penalty not only removes incremental benefit, *but also* exceeds the costs of monitoring and preventing the agent (management) from committing misconduct. Dr. DeRamus's opinion directly rebuts Dr. Wiggins's opinions, ███, and Dr. Skinner's opinion that a ███. Def. Ex. 5 at 36.

Section VII applies the theory. Dr. DeRamus examines prior enforcement actions and penalties to discern "whether they had a sufficiently detectable impact on Google's stock price, such that they likely led . . . to a change of behavior." Def. Ex. 7 ¶ 127. Google does not challenge

6

VII.A, which qualitatively examines prior enforcement. Section VII.B takes a quantitative approach to the *same* question, assessing whether previous penalties made any difference to the stock price: "prior penalties have had a minimal impact on Google's stock performance, providing little incentive for shareholders to actively engage in monitoring and deterring corporate misconduct." *Id.* ¶ 137. In other words, Dr. DeRamus is explaining, powerfully, that Dr. Wiggins and Dr. Skinner are wrong that a ███████████████████████████████████████ ███████████████████████████████████████████████████████ would deter Google. It would not. Rather, shareholders would hardly even notice Dr. Wiggins's proposed penalty amounts, let alone react with measures to improve corporate behavior, which the principal-agent economic literature shows would be costly. Shareholders would pay the penalty and shrug. In short, Dr. DeRamus shows that Google's experts' proposed penalty would be woefully inadequate to deter misconduct, which is proper rebuttal.

### 4. New methodology and analysis are permissible in a rebuttal report.

Because Dr. DeRamus's opinions sharply contradict Google's experts, Google is left to argue that something more is required. It chiefly argues that new methods and data are *per se* improper rebuttal, but that misstates the law. Rule 26 permits expert opinions to "rebut evidence on the same subject matter." Fed. R. Civ. P. 26(a)(2). Under that rule, "rebuttal is limited to the same subject matter encompassed in the opposing party's expert report, but district courts have been reluctant to narrowly construe the phrase 'same subject matter' beyond its plain language." *E.g.*, *Scott v. Chipotle Mexican Grill, Inc.*, 315 F.R.D. 33, 44 (S.D.N.Y. 2016) (citing cases). Here, Google's disclosure of Dr. Wiggins broadly lists the subject matter of his testimony as "the civil penalties claimed by the Plaintiff States for alleged violations of state deceptive trade practices acts." Ex. A at 5 (Google's Expert Disclosure (Dr. Wiggins)); *see also id.* at 4-5 (Dr. Skinner). His report is extensive. Clearly, Dr. DeRamus rebuts the "same subject matter" under the rule and

7

discusses Dr. DeRamus' view of the appropriate "civil penalties claimed by the Plaintiff States for alleged violations of state deceptive trade practices acts." There is no separate requirement that the methods be the same.[1]

Beyond covering the *same subject matter*, Dr. DeRamus's methodology and data *rebuts* Dr. Wiggins's opinions. This district, and a host of others have agreed that "offering a different, purportedly better methodology is a proper way to rebut the methodology of someone else." *Gibson Brands*, 2021 WL 231764, at *3 (quoting *TCL Commc'ns Tech. Holdings*, 2016 WL 7042085, at *4).[2] Nor are rebuttal experts limited to the same facts or data, but rather "may cite new evidence and data so long as the new evidence and data is offered to directly contradict or rebut the opposing party's expert." *Glass Dimensions, Inc. v. State St. Bank & Trust Co.*, 290 F.R.D. 11, 16 (D. Mass. 2013).[3]

Google suggests there is an exception to these principles where a rebuttal expert addresses something on which the party has the "burden of proof," but there is no such rule. Google cites *Montcrieff v. Peripheral Vascular Associates, P.A.*, 507 F. Supp. 3d 734, 748 (W.D. Tex. 2020), but in that case the court *agreed* the opinions at issue were rebuttal—the issue was whether they were *timely*. The other cases Google cites are likewise inapposite. For example, in *YETI Coolers, LLC v. RTIC Coolers, LLC*, 2017 WL 394511 (W.D. Tex. Jan. 27, 2017), the expert "did not review any

---

[1] *Better Holdco, Inc. v. Beeline Loans, Inc.*, 666 F. Supp. 3d 328, 361 (S.D.N.Y. 2023) ("a rebuttal expert need not use the same methodology as the affirmative expert to stay within the 'same subject matter'") (citation omitted); *see also Baker v. SeaWorld Ent., Inc.*, 423 F. Supp. 3d 878, 896 (S.D. Cal. 2019) ("Rebuttal testimony is proper as long as it addresses the same subject matter that the initial experts address.") (citation omitted).
[2] *Accord Little v. Wash. Metro. Area Transit Auth.*, 249 F. Supp. 3d 394, 416 (D.D.C. 2017) ("District courts routinely . . . permit rebuttal experts to use new methodologies to rebut the opinions of the opposing expert.").
[3] *Accord In re Disposable Contact Lens Antitrust*, 329 F.R.D. 336, 396 (M.D. Fla. 2018); *Withrow v. Spears*, 967 F. Supp. 2d 982, 1002 (D. Del. 2013); *Better Holdco*, 666 F. Supp. 3d at 361 ("[A] proper rebuttal expert's opinion is not required to be based on the same data as the expert opinion that it is offered to rebut.") (citing cases).

8

YETI expert reports before preparing her own report and admitted during her deposition that 'I'm not rebutting anybody.'" *Id.* at *2. By contrast, here, Dr. DeRamus obviously reviewed Google's experts' reports, and is undisputedly *claiming* to rebut them.⁴ *See* Def. Ex. 7 ¶ 2 ("I was asked . . . to evaluate and respond to the reports of Dr. Steven Wiggins and Dr. Douglas Skinner").

Google also cites *Gibson Brands*, but there the court found that the report was rebuttal, even though the expert acknowledged that his findings were "consistent with" the other side's expert in some ways, and even though they used "fundamentally different" methods. 2021 WL 231764, at *3. The court explained that "a rebuttal does not have to contradict every assertion made by the opposing party," and different methodologies and data can still constitute opinions "on the same subject matter." *Id.* Thus, the rebuttal was proper because "at least some of [expert's] testimony purports to contradict or rebut [other expert's] opinion." *Id.* at *2 (quoting *Poly-Am., Inc. v. Serrot Int'l, Inc.*, 2002 WL 1996561, at *15 (N.D. Tex. Aug. 26, 2002)). The same is true here, defeating Google's contention that Dr. DeRamus only "tangentially contradicted" its experts. Mot. at 10.

### B. Dr. Somayaji's Opinions Are Rebuttal.

A core part of Dr. Milgrom's opinions is that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *E.g.*, Def. Ex. 10 ¶ 29. He cites studies of how bidders changed their strategies when auctions shift from second-payer to first-payer designs. *Id.* ¶ 29 n.30. The glaring problem with these opinions is that Google did not *tell the market participants about the changes*, and so they could not adapt their behavior like the participants in the studies he cites. In Dr. Somayaji's

---

⁴ Google also cites *United States v. 9.345 Acres of Land*, 2016 WL 5723665 (M.D. La. Sept. 30, 2016), but the district court there declined to grant the relief Google is seeking here. The district court allowed the United States to designate a rebuttal expert as their only merits expert, allowed sur-rebuttal, and then ruled on ten defense experts, holding that nine of them violated Rule 26 through inadequate disclosures, unauthorized sur-rebuttal, or untimely opinions. *Id.* at *7. It ultimately declined to strike any experts on timeliness—the grounds Google argues here—but did strike some whose disclosures were too short.

9

words, "I understand Dr. Milgrom to be opining that ███████████████████████

████████████████████████████████████████████████████████████████████████

███████████████████████ Def. Ex. 8 ¶ 21. Dr. Somayaji refutes that critical premise by examining source code, showing how auctions worked, what Google knew, and with whom Google shared that information. Dr. Somayaji further shows that market participants could not know much about Google's system because it is too complex to be determined experimentally. Def. Ex. 8 ¶ 20.

Google seeks to strike portions of these opinions on the strange ground that Dr. Milgrom has "nothing to do with computer source code" and so did not know what Dr. Somayaji reveals. Mot. at 12. According to Google, Dr. Milgrom's opinions are limited to how participants can ████████████████████████████████████████████████ *Id.* at 13. It is puzzling that Dr. Milgrom could opine if he did not know what information the participants had, but even if his opinion was so limited, Dr. Somayaji's opinion is still rebuttal. His analysis—based on the source code—of what information participants had, and how that information prevented them from optimizing auction outcomes strongly rebuts Dr. Milgrom's opinion that ████████████████

████████████████████████████████████████████. The opposite is true.

Google argues that Dr. Somayaji's opinions are affirmative opinions, but ignores that Plaintiffs' affirmative opinions on these topics are in Dr. Chandler's report.[5] Dr. Somayaji's opinions were necessary to rebut Dr. Milgrom. Had Dr. Milgrom admitted that Google could profit from the challenged practices because market participants were unaware of the auction rule changes, Dr. Somayaji's opinion would not have been needed. Instead, he claimed that market

---

[5] *See* Ex. B (Chandler Report) § X (opinion 17, which is summarized in paragraph 23: "(a) failures to adequately or timely disclose changes to the auction's mechanics and purposes; (b) unwarranted restrictions on material information needed by auction participants and intermediaries; (c) denials of equal and fair access to inventory, demand, and functionality to advertisers, publishers, ad servers, exchanges, or ad buying tools . . . .").

10

participants *could know* about the auction rules and ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. That flawed opinion necessitated rebuttal.

## II.   Even If They Were Untimely, Striking Would Still Be Unwarranted.

On a motion to strike, courts apply a four-factor test considering: "(1) the explanation for the failure to identify the witness; (2) the importance of the testimony; (3) potential prejudice in allowing the testimony; and (4) the availability of a continuance to cure such prejudice." *Betzel v. State Farm Lloyds*, 480 F.3d 704, 707 (5th Cir. 2007).  Google gives short shrift to all but the first factor, incorrectly presenting striking as the default remedy for untimely submissions.

### A.   The Explanation Is Plausible.

Plaintiff States behaved reasonably and in good faith.  The explanation factor is sensitive to whether there is a "finding of bad faith" and whether the party "repeatedly caused delay." *In re Complaint of C.F. Bean L.L.C.*, 841 F.3d 365, 373 (5th Cir. 2016).  In *C.F. Bean*, the plaintiff served a second expert "report over seven months after the deadline for designating rebuttal experts," and after *Daubert* motions had already been filed. *Id.* at 371.  The second report was based on facts that came out in third-party discovery.  Despite the extreme lateness and no motion for leave (or to change the schedule), the Fifth Circuit could "not say that [he] acted unreasonably," and emphasized the lack of bad faith or delay.  *Id.* at 372-73.  Here, Plaintiff States have consistently acted in good faith and moved quickly.  As discussed above, Plaintiff States designated Drs. DeRamus and Somayaji as rebuttal experts because they believed that the experts properly rebutted Google's experts.  Even if the Court ultimately disagrees, this would amount to a reasonable misstep, not a bad faith delay of the case.  To the contrary, Plaintiff States have taken extraordinary steps (such as the Dr. Gans agreement) to hold the expert schedule.

The only Fifth Circuit cases Google cites are far different and against the backdrop of egregious facts.  In *Sierra Club, Lone Star Chapter v. Cedar Point Oil Co.*, 73 F.3d 546 (5th Cir.

11

1996), the four experts' "reports" were served 90 days before trial and consisted of about one-page each, one of which listed only topics, not opinions. These disclosures were "so incomplete and insubstantial" that they violated the federal rules and pre-trial order, and adding somewhat more detail in rebuttal reports did not cure the problem. *Id.* at 571. The only explanation proffered was the supposed vagueness of the claims, which is obviously "not persuasive." *Id.* at 571, 573. In *Hamburger v. State Farm Mut. Auto. Ins. Co.*, 361 F.3d 875 (5th Cir. 2004), the plaintiff designated an expert almost three months late, apparently based on a misreading of Rule 26(a)(2), with "no other explanation." *Id.* at 883. Plaintiff States have been far more diligent here.[6]

Even in egregious cases, the first factor is not dispositive. In *Betzel*, the plaintiff disclosed expert witness testimony for the first time *three months* after the disclosure deadline, *three weeks* after a summary judgment motion had been filed, and *one week* after State Farm's deadline to file *Daubert* motions. 480 F.3d at 706. Applying the four-factor test, there was no dispute that the "first factor plainly favors State Farm," since the plaintiff had "no explanation … for his failure to timely designate." *Id.* at 707. Still, on the strength of the other factors, the Fifth Circuit held that striking the expert testimony was an abuse of discretion. *Id.* at 709.

**B. The Testimony Is Important.**

The testimony is plainly important, as Google all-but-admits. Google's experts did not account for the role deterrence should play in setting an appropriate civil penalty. Dr. DeRamus did so, opining that ███████████████████████████████████████. Google's motion underscores the importance of this testimony by breathlessly warning that "Dr. DeRamus purports ███████████████████████████████████████

---

[6] Google mistakenly cites *Daedalus Blue LLC v. SZ DJI Technology Co.* as an "E.D. Tex." case, Mot. at 10, but it is not. *See* 2022 WL 831619 (W.D. Tex. Feb. 24, 2022). Either way, there, the explanation was that the expert realized his analysis was wrong, so he tried to change it "the day before [his] deposition and the close of expert discovery." Neither of the States' experts have tried to change their testimony, and the reports were disclosed over a month before depositions.

12

Mot. at 2. Google later tries to change strategies, rhetorically asking why—"if Dr. DeRamus's new penalty opinions were so 'important'"—they were not disclosed on June 7. Mot. at 12. The simple answer is that there was nothing to rebut until Dr. Wiggins opined that an optimal civil penalty need only account for ███████████████████████████████████. At root, Google wishes that Dr. DeRamus were Carnac the Magnificent and could *prebut* Dr. Wiggins's failed methodology before it was written. However, the law allows Dr. DeRamus to *rebut* it. Beyond requiring clairvoyance, Google's reasoning about the importance prong amounts to "standing it on its head," since Google's approach makes more important testimony likelier to be struck. *Betzel*, 480 F.3d at 707. "Applying the second factor as intended," *id.* at 708, more important testimony weighs *against* striking. This case is much like *Betzel*, in which expert testimony was critical to proving damages, and striking was an abuse of discretion. *Id.* at 709.[7]

  Cases in which striking is affirmed tend to be like *Sierra Club*, where the stricken expert testimony "proved to be unimportant" because the opinions addressed the "degree of harm" caused by pollution, but the district court decided the penalty turned "only on the economic benefit," making the opinions largely irrelevant. 73 F.3d at 572-73. That is not this case. For example, Dr. DeRamus's section II.B explains the canonical principle that optimal deterrence forces offenders to internalize costs to society; to do that, a penalty must account for the gains to the offender **and** the probability of detection and enforcement. As Dr. DeRamus explains, Google's experts wholly ignore the probability of detection element, which is a key issue the factfinder should consider. Section VI.C discusses the probability of detection in more detail and estimates it. Those issues are important to a factfinder in setting a penalty amount, which turns, in part on "the amount necessary to deter future violations." TDTPA § 17.47(g).

---

[7] In *Hamburger*, the Fifth Circuit affirmed striking expert testimony "assum[ing] *arguendo*" its importance, but later in the same opinion it held that expert testimony *was not* necessary, straining that assumption mightily. 361 F.3d at 883.

Google says not one word about the importance of Dr. Somayaji's opinions, but they too are important. Without them, Google would be permitted to tell the factfinder that market participants could discern and adapt to the rules as they changed without the State's response that adaptation is unlikely based on the complexity and the sparse information Google shares.

### C. Prejudice to Google Is Slight.

In few cases is prejudice as low as this one. Google has not yet deposed either expert, but will depose both of them whether the motion is granted or not. It likely will file *Daubert* motions against both experts either way. Trial is six months away. The only new work required (other than filing this motion) would be optional sur-rebuttal reports that Plaintiff States would not oppose—which would accompany other sur-rebuttal Google is preparing anyway.

The prejudice in other cases was far higher. Google cites *Sierra Club*, but there the untimely disclosures were "two months before trial" leaving fairly little time for depositions, *Daubert*, summary judgment, and trial strategy decisions. 73 F.3d at 573. Even so, the Fifth Circuit tepidly concluded the "delay would have *likely* resulted in *some* prejudice." *Id.* (emphases added). In *C.F. Bean*, there were just "two weeks" left for the third-party defendant to take a deposition and prepare a rebuttal, and "several months before trial," but the Fifth Circuit noted it was "not a case of one party ambushing the other" and deemed the prejudice slight in the course of reversing. 841 F.3d at 371-73. In *Betzel*, the plaintiff disclosed expert witness testimony weeks after the deadline for both summary judgment and *Daubert*. 480 F.3d at 706. State Farm argued that they lost the opportunity to depose the experts, file *Daubert* challenges, to rebut them with other experts, and to address their opinions at summary judgment—even still, the Fifth Circuit reversed, holding that striking was an abuse of discretion. *Id.* at 709.

Because it has no real prejudice, Google invokes distractions. It calls Dr. DeRamus's opinion ████████████████████████████ as *itself* prejudice, Mot. at 11—but being forced to

14

grapple with a pathmarking case on its merits is not unwarranted prejudice. It claims, without explanation, that there "is not enough time" to respond to Dr. DeRamus, *id.*, even though (i) Google sat silent for a full week before even raising the issue, (ii) the default rebuttal period is 30 days, Plaintiffs first discussed sur-rebuttal on September 16, and (iii) there is apparently enough time for Google to prepare *another* sur-rebuttal report. Last, Google supplies no reasons why a sur-rebuttal to Dr. Somayaji's report could not be prepared, nor does it suggest that doing so would be difficult or take long. Its sole argument for "prejudice" is that it "should have received [] this information" previously. *Id.* at 15. If that were right, prejudice would collapse into timeliness.

### D. Any Prejudice Can Be Cured By Lesser Remedies.

The Fifth Circuit "has repeatedly stated that 'a continuance is the preferred means of dealing with a party's attempt to designate a witness out of time.'" *C.F. Bean*, 841 F.3d at 374 (quoting *Campbell v. Keystone Aerial Surveys, Inc.*, 138 F.3d 996, 1001 (5th Cir. 1998)); *accord Betzel*, 480 F.3d at 708 (same). That is why, in *Betzel*, State Farm's prejudice did not warrant striking the experts, since it could file another summary judgment motion and take late depositions. Here, it is doubtful any adjustment to the schedule need be made at all. But, if the Court believes that Google needs more time to prepare sur-rebuttal, the Court could grant leave for that purpose.

## CONCLUSION

The opinions Google seeks to strike are proper rebuttal. Even if they were not, Google has not shown why the extreme remedy of striking the opinions is warranted here.

15

DATED: October 1, 2024

/s/ W. Mark Lanier
W. Mark Lanier
Mark.Lanier@LanierLawFirm.com
Alex J. Brown
Alex.Brown@LanierLawFirm.com
Zeke DeRose III
Zeke.Derose@LanierLawFirm.com
Jonathan P. Wilkerson
Jonathan.Wilkerson@LanierLawFirm.com
10940 W. Sam Houston Pkwy N.
Suite 100
Houston, TX 77064
(713) 659-5200
**THE LANIER LAW FIRM, PLLC**

*Counsel for Texas, Idaho, Louisiana (The Lanier Law Firm only), Indiana, Mississippi, North Dakota, South Carolina, and South Dakota Submitted on behalf of all Plaintiff States*

Respectfully submitted,

/s/ Ashley Keller
Ashley Keller
ack@kellerpostman.com
150 N. Riverside Plaza, Suite 4100
Chicago, IL 60606
(312) 741-5220

Zina Bash (Bar No. 24067505)
zina.bash@kellerpostman.com
111 Congress Avenue, Suite 500
Austin, TX 78701
(512) 690-0990

/s/ Noah S. Heinz
Noah S. Heinz
noah.heinz@kellerpostman.com
Kiran N. Bhat
kiran.bhat@kellerpostman.com
1101 Connecticut Ave., N.W., Suite 1100
Washington, DC 20036
(202) 918-1123
**KELLER POSTMAN LLC**

16

**NORTON ROSE FULBRIGHT US LLP**
Joseph M. Graham, Jr.
joseph.graham@nortonrosefulbright.com
Geraldine Young
geraldine.young@nortonrosefulbright.com
1550 Lamar Street, Suite 2000
Houston, Texas 77010
(713) 651-5151

Marc B. Collier
Marc.Collier@nortonrosefulbright.com
98 San Jacinto Blvd., Suite 1100
Austin, Texas 78701
(512) 474-5201


FOR PLAINTIFF STATE OF TEXAS

KEN PAXTON
Attorney General

*/s/ Trevor E. D. Young*
Brent Webster, First Assistant Attorney General of Texas
Brent.Webster@oag.texas.gov
James R. Lloyd, Deputy Attorney General for Civil Litigation
James.Lloyd@oag.texas.gov
Trevor Young, Deputy Chief, Antitrust Division
Trevor.Young@oag.texas.gov

**STATE OF TEXAS, OFFICE OF THE ATTORNEY GENERAL**
P.O. Box 12548
Austin, TX 78711-2548
(512) 936-1674

*Attorneys for Plaintiff State of Texas*

**CERTIFICATE OF SERVICE**

I certify that on October 1, 2024, this document was filed electronically in compliance with Local Rule CV-5(a) and served on all counsel who have consented to electronic service, per Local Rule CV-5(a)(3)(A).

/s/ Noah S. Heinz
Noah S. Heinz

**CERTIFICATE OF MOTION TO SEAL**

I certify that contemporaneously with the filing of this Response, Plaintiff States filed a motion to seal both this document and the expert reports attached as exhibits.

/s/ Noah S. Heinz
Noah S. Heinz