IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| The State of Texas, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>Google LLC,<br><br>    Defendants. | Case No. 4:20-cv-00957-SDJ<br><br>Hon. Sean D. Jordan |

**DEFENDANT GOOGLE LLC'S MOTION TO BIFURCATE
THE LIABILITY FINDING FROM ASSESSMENT OF PENALTIES**

Google respectfully files this Motion to Bifurcate the Liability Finding From Assessment of Penalties. As demonstrated below, a further bifurcation of the trial under Rule 42(b) is warranted to ensure the jury's decision on liability is not overwhelmed, and Google is not unfairly prejudiced, by evidence that is relevant only to the determination of DTPA penalty awards, *if liability is found*.

**I. Standards Applicable to Motions to Bifurcate**

Federal Rule of Civil Procedure 42 affords a trial court discretion to bifurcate issues at trial to vitiate potential prejudice.

This Court discussed the relevant standards and ordered bifurcation in *Wagoneka v. KT & G USA Corp.*, 2020 WL 6063096 (E.D. Tex. Oct. 14, 2020). "Rule 42(b) allows a court to bifurcate the trial of issues 'for convenience, to avoid prejudice, or to expedite and economize.'" *Id.* at * 2 (citing Fed. R. Civ. P. 42(b)). "To avoid prejudice, courts will often bifurcate claims so that the presentation of punitive-damages evidence occurs only after the jury has determined liability." *Id.* (citing *O'Malley v. U.S. Fidelity & Guar. Co.*, 776 F.2d 494, 500-01 (5th Cir. 1985) and *State Farm Fire & Cas. Co. v. Woods*, 896 F.Supp. 658, 660 (E.D. Tex. 1995) ("[b]ifurcation [of punitive damages] is the wisest course" when opposing party has "not identified any prejudice that

1

will come to him from bifurcation" and moving party "has made convincing assertions of prejudice") and *Dubea v. Simpson*, No. 9:07-CV-63-TH, 2009 WL 10677421, at *1 (E.D. Tex. Mar. 2, 2009) ("[T]he Court finds that evidence of [defendant's] net worth is relevant to the issue of exemplary damages. But, given the aforementioned risk of…prejudice to [defendant], the Court will bifurcate the issue of exemplary damages from the liability portion of the trial.")).

The Supreme Court's concerns about the prejudicial effect of evidence relevant only to punitive damages apply with equal force in cases involving civil penalties. *See, e.g.*, *Cooper Indus. v. Leatherman Tool Grp.*, 532 U.S. 424, 433-34 (2001) ("Despite the broad discretion that States possess with respect to the imposition of criminal penalties ***and*** punitive damages, the Due Process Clause of the Fourteenth Amendment to the Federal Constitution imposes substantive limits ***on that discretion***. That Clause makes the Eighth Amendment's prohibition against excessive fines and cruel and unusual punishments applicable to the States.") (emphasis added); *see also United States v. Bajakajian*, 524 U.S. 321, 324 (1998) (Excessive Fines clause precluded punitive forfeiture that was grossly disproportionate); *Hudson v. United States*, 522 U.S. 93, 103 (1997) ("The Eighth Amendment protects against excessive civil fines, including forfeitures."). The Due Process Clause "of its own force also prohibits the States from imposing grossly excessive ***punishments*** on tortfeasors." *Cooper Indus.*, 532 U.S. at 434 (internal quotations omitted) (emphasis added).

As demonstrated below, each of these principles strongly supports entry of an order bifurcating the jury's decision on liability from any consideration of the number of violations or the amount of any penalties.

**II. Bifurcation is Necessary to Prevent Unfair Prejudice to Google**

None of the Plaintiff States' liability claims requires or permits the jury to consider Google's net worth, total revenues, or wealth as a component of determining liability. This, alone, warrants bifurcation. Separating the jury's decision on liability from any issue related to penalties mitigates the risk that evidence of Google's wealth, total revenues, and net worth–evidence that is relevant only to issues related to *penalties*–will taint the jury's assessment of liability.

**A. No component of liability turns on Google's net worth or wealth**

The DTPA statutes at issue in Count VI of the States' Fourth Amended Complaint do not encompass–nor does any state plead–an element of net worth or wealth as a basis for liability. *See In re Google Digital Advert. Antitrust Litig.*, 1:21-md-03010-PKC, ECF No. 541, Count VI(1)-(17) (citing each state's deceptive trade practice and consumer protection statutes). The sections of the Texas DTPA pleaded by Texas at the Fourth Amended Complaint ¶¶ 674-678 (citing DTPA §17.46(b)(5), (b)(7), (b)(9), (b)(12), and (b)(24)) do not require proof of a defendant's *net worth* or *wealth* as a required element of any claim, nor do any other States' statutes require such proof. The State DTPA statutes likewise do not require evidence or a finding of *revenue earned* to establish any element of liability. *See, e.g., id.* The federal antitrust claims asserted in Counts I-III and the Supplemental State Law Antitrust Claims pleaded in Count V(1)-(17) do not require such proof, either.

In short, each of the statutes at issue in the Complaint inquires only into a defendant's *actions*. None permits or requires an offer of net worth or wealth as an element relevant to liability. Because no element of liability for Plaintiffs' claims is established or proved by pointing to evidence of Google's net worth, wealth, or total revenues, Plaintiffs will suffer no prejudice if the jury is required to find liability only on the evidence of Google's *actions*, without presentation of

evidence of the number or value of alleged penalties, or Google's wealth, net worth, or total revenues.

### B.  This Court's decision in *Wagoneka* confirms bifurcation is the wisest course

In *Wagoneka*, this Court ordered bifurcation of liability and damages finding it was the "the wisest course" to prevent unfair prejudice to the defendant. *See Wagoneka*, 2020 WL 6063096 at *2. As the Court explained, "[b]ecause Wagoneka no longer needs to present revenue evidence at the liability stage, bifurcation would now alleviate KT&G USA's prejudice concerns." *Id.* The same is true here. As explained above, no element of liability is established through proof of Google's net worth, wealth, or revenues. Bifurcation therefore makes sense here, for all the reasons the Court cited in *Wagoneka.* And, as explained below, the risk of prejudice from the admission of net worth, wealth, and revenue evidence risks confusing the jury and will prejudice Google's right to a fair trial.

> **1.  Admission at the liability phase of evidence related to the calculation of penalties could profoundly prejudice Google's right to a fair trial of liability**

In contrast to the liability elements of Plaintiffs' claims, some states' DTPA penalty provisions suggest a defendant's net worth is a factor that may be considered in assessing the appropriate *penalty* for a DTPA violation, if one is found. *See, e.g.,* Tex. Bus. & Com. Code §17.47(c) (upon proof of entitlement to injunctive relief, "the consumer protection division may request, and the trier of fact may award, a civil penalty to be paid to the state in an amount of: (1) not more than $10,000 per violation") and §17.47(g) ("In determining the amount of penalty imposed under Subsection (c), the trier of fact shall consider…(3) the amount necessary to deter future violations; (4) the economic effect *on the person* against whom the penalty is to be assessed; and…(6) any other matter that justice may require.") (emphasis added); *see also, e.g., Transp. Ins.*

4

*Co. v. Moriel*, 879 S.W.2d 10, 29 (Tex. 1994) (holding that net worth evidence is relevant to determine amount of punitive damages necessary to punish and deter wrongful conduct because "[t]hat which could be an enormous penalty to one may be but a mere annoyance to another").

The statutory disconnect between how liability is proved and the possibility that net worth evidence might be admissible on penalties creates an obvious risk the jury might misapply evidence relevant only to *penalties* to their assessment of liability. That some states' statutes may permit consideration of a defendant's net worth to establish an appropriate penalty to be paid to the state's own treasury (and not to any injured persons) upon proof of liability compounds this risk of prejudice. The United States Supreme Court has emphasized repeatedly that evidence in support of punitive damages may taint, irretrievably, a jury's consideration of liability:

> [P]unitive damages pose an ***acute danger of arbitrary deprivation of property***. Jury instructions typically leave the jury with wide discretion in choosing amounts, and the presentation of evidence of a defendant's net worth ***creates the potential that juries will use their verdicts to express biases against big businesses, particularly those without strong local presences***.

*State Farm Mut. Auto Ins. Co. v. Campbell*, 538 U.S. 408, 417 (2003) (quoting *Honda Motor Cor., Ltd. v. Oberg*, 512 U.S. 415, 432 (1994)) (quoted in *Wagoneka*, 2002 WL 6063096 at *1) (emphasis added). The risk this prejudicial net worth and financial evidence might overwhelm the jury's decision on liability raises separate, but equally profound, constitutional concerns under the Excessive Fines Clause and the Due Process Clause. *See Timbs v. Indiana*, 586 U.S. 146, 150 (2019) (Excessive Fines Clause incorporated against the States by the Fourteenth Amendment because the "[p]rotection against excessive punitive economic sanctions secured by the Clause is…both 'fundamental to our scheme of ordered liberty' and 'deeply rooted in this Nation's history and tradition.'") (quoting *McDonald v. Chicago*, 561 U.S. 742, 767 (2010)).

5

Here, Plaintiffs' penalty demands and the evidence they intend to offer implicate both constitutional provisions. Plaintiffs' approach to the assessment of penalties focuses on Google's size, wealth, and net worth, without regard to any evidence of harm. *See, e.g.*, Dkt. #613-2 (Rpt. of Pls.' Expert J. Andrien) §§ IV.A, IV.B, IV.I; Dkt. #613-9 (Rebuttal Rpt. of Pls.' Expert J. Andrien) §§ III.B, IV.B. In fact, many of the Plaintiffs admit they have *no* evidence of specific harm to anyone in their state from Google's alleged practices.[1] Plaintiffs thus intend to urge that penalties be imposed on Google measured not by any harm it allegedly caused but rather based on Google's size and net worth, arguing this is a necessary "deterrent."

Plaintiffs have recently submitted expert reports[2] that demonstrate the serious risk of allowing Plaintiffs to offer evidence related to penalties and penalty amounts *before* the jury first decides liability. None of Plaintiffs' expert reports quantifies any identified harm caused to even one individual ad buyer or ad seller. Instead, Plaintiffs' witnesses offer what amounts to an *ipse dixit*, attempting to tell the jury the penalty amount *they* believe the jury should assess based on Google's size *rather than* quantifying the number of violations, tying penalties to the number of violations, or demonstrating they are proportional to any harm Google actually caused. Plaintiffs' expert reports are plain about another point: the sums they advocate do *not* depend in any way on the number of violations the States may eventually prove at trial. To the contrary, at least two of

---

[1] *See e.g.*, Tr. Alaska Rule 30(b)(6) Witness at 33:8-11 (Alaska received no complaints about Google's actions), *id.* at 40:17-23("I'm not in a position to be able to answer one way or another whether there actually are specific documents that may touch upon harm that Alaskans have suffered…I just don't know the answer."); *id.* at 42: 18-22 ("I have not and the State of Alaska has not talked to a specific advertiser based in Alaska or specific publisher based in Alaska. As part of our investigation, we have not done that.").

[2] The public disclosure of Plaintiffs' potentially inadmissible and likely unconstitutional penalty calculations risks prejudicing the entire venire. Google thus does not state here the specific amounts these experts have asserted they intend to argue the jury should award; rather, Google is prepared to discuss those issues *in camera* at a Status Conference, if the Court sets one.

Plaintiffs' experts have calculated the penalties they assert based on the total number of transactions, without establishing that *any* specific transaction actually violated the law, after which they set their putative "penalty" sums at an amount they contend is necessary to *deter* Google—a total they admit is *independent of* and *unaltered by* proof of any lower number of violations or any proof of harm at all.[3]

Plaintiffs' invitation that the jury should "use their verdicts to express biases against big business," *State Farm*, 538 U.S. at 417, by arguing the jury should punish Google for its success, size, and scale without regard to any harm Google actually caused or the number of violations it actually committed raises serious Constitutional concerns and magnifies the risk of prejudice. Bifurcation, as this Court observed in *Wagoneka*, is the wisest course to prevent both.

### 2. Jury instructions will not cure this prejudice

The Supreme Court has also held that the prejudicial admission of penalty evidence at the liability phase cannot be remedied or eliminated by jury instructions. "Vague instructions, or those that merely inform the jury to avoid 'passion or prejudice'…do little to aid the decisionmaker in its task of assigning appropriate weight to evidence that is relevant and evidence that is tangential or only inflammatory." *State Farm*, 538 U.S. at 418 (quoted in *Wagoneka*, 2020 WL 6063096 at *1). Accordingly, as in *Wagoneka*, bifurcation is the preferred course to ensure the trial of liability

---

[3] Other aspects of the putative penalty demands are equally problematic. For instance, to assert the jury should structure a penalty based on what will cause loss to Google's *stockholders* is not a penalty any statute at issue authorizes. Nor is there any basis to inflict punishment *on stockholders* for actions they did not take and that Plaintiffs have not shown deceived or caused harm to any individual ad buyer or ad seller. *Compare In re Zyprexa*, 671 F.Supp.2d 397, 462-63 (E.D.N.Y. 2009) ("[E]lementary notions of fairness enshrined in our constitutional jurisprudence dictate that a person receive fair notice not only of the conduct that will subject him to punishment, but also of the severity of the penalty that a State may impose.") (quoting *State Farm Mut. Auto Ins. v. Campbell*, 538 U.S. 408, 416 (2003) and citing *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 574 (1996)).

7

proceeds fairly, on the evidence relevant to liability, *before* the jury hears any evidence relevant to potential penalties.

### 3. State law does not control this bifurcation issue

Anticipating the States' response, it is no answer for the States to claim that the Texas Legislature exempted the DTPA from the bifurcation requirements of Texas Civil Practices & Remedies Code §41.009. "[A] district court is simply not bound by state law when deciding whether to bifurcate." *Nester v. Textron, Inc.*, 888 F.3d 151, 163 (5th Cir. 2018). In this federal court, bifurcation to prevent prejudice is within the Court's "sole discretion" under Federal Rule of Civil Procedure 42. *First Texas Sav. Ass'n. v. Reliance Ins. Co.*, 950 F.2d 1171, 1174 (5th Cir. 1992).

Here, the mandates of the Constitution require careful consideration of a bifurcation order as the wisest course to protect Google from the obvious and serious risk of prejudice created by the States' intent to use net worth, wealth, and revenue evidence to incite anti-corporate bias, a risk the Court should take steps to prevent to ensure Google receives a fair trial.

## III. Plaintiffs Are Not Prejudiced by Bifurcation, Nor Will Judicial Economy Be Served by a Trial that Includes Evidence Relevant to Only the Amount of Penalties at the Liability Phase

Plaintiffs will suffer no prejudice, much less any unfair prejudice, if the determination of the number of violations and the amount of any penalties to be awarded are bifurcated from the jury's decision on the only relevant liability question; namely, whether Google's Ad Tech *practices* and *actions* violated the federal and state antitrust laws or contravened any state deceptive trade practice statutes. While the reports of Plaintiffs' experts make obvious that

8

Plaintiffs prefer to attack Google and its officers for their wealth at the liability phase,[4] that is no reason to permit them to do so at trial. Google's wealth is irrelevant to *any* liability issue.

Bifurcating the decision on *whether* specific practices violated any statute–and considering that issue separately from the number of violations or penalty amounts–will also serve judicial economy. Trying liability first, through an initial phase focused solely on whether Google's actions and practices violated the relevant statutes, might well avoid the need to try any other issue. If Google prevails on liability, weeks of unnecessary evidence related to Google's wealth, its total revenues, or the number of alleged violations of various statutes would be avoided, saving the jury, the Court, and the parties time and costs. A "no" on whether a practice violated a statute avoids the offer of cumulative and irrelevant evidence about the volume of transactions that did *not* violate any statute, streamlining the trial. It will also limit the scope of expert testimony and mitigate the risk of additional, unfair prejudice submitting penalty evidence about transactions for which the jury has determined Google has no liability.

In contrast, judicial economy or fairness will not be served if Plaintiffs are permitted to subject Google to the irretrievable prejudice inherent in allowing Plaintiffs to urge the jury to find Google liable *because* it is large or has made money. *Wagoneka*, 2020 WL 6063096 at *3 ("Given that instructions warning juries to avoid 'prejudice or passion' do little to aid the decisionmaker in this context and that Wagoneka has not articulated convincing countervailing concerns of convenience or prejudice in bifurcating liability and damages, the Court concludes that bifurcation

---

[4] Plaintiffs' questioning during apex and other executive depositions confirmed Plaintiffs' intended emphasis on the personal wealth of Google executives. Plaintiffs spent hours inquiring into this topic, even though it is irrelevant to *Google's* liability for any claim. The fact that Plaintiffs' counsel used these depositions for that purpose confirms the profound risk that permitting the use of this and similar evidence of wealth at the liability phase will be irretrievably prejudicial to Google's right to a fair trial of liability.

is the wisest course."). No part of the statutes authorizes finding Google liable on that basis, and requiring the jury to hear evidence about the volume of transactions that did not violate the statute is irrelevant.

## IV. Conclusion

For all these reasons, the Court should order a further bifurcation of the trial to mandate an initial liability phase, in which the jury will decide *only* which, if any, of Google's alleged practices violated the relevant statutes. Evidence of the number of violations, including the total revenues Google allegedly earned, as well as evidence of Google's net worth and wealth, is not relevant to any issue of liability so the Court should order bifurcation, pursuant to Rule 42(b), to ensure that all such evidence is admitted (if at all) only during any required penalty phase of the trial.

Dated: October 17, 2024               Respectfully submitted,

 

**GIBBS & BRUNS LLP**

*/s/ Kathy D. Patrick*
Kathy D. Patrick
Texas Bar No. 15581400
kpatrick@gibbsbruns.com
Robin C. Gibbs
Texas Bar No. 07853000
rgibbs@gibbsbruns.com
Charles Rosson
Texas Bar No. 24074985
crosson@gibbsbruns.com
1100 Louisiana, Suite 5300
Houston, Texas 77002

1100 Louisiana, Suite 5300
Houston, Texas 77002
Tel.: 713.650.8805
Fax.: 713.750-0903

Eric Mahr (*pro hac vice*)
Julie S. Elmer (*pro hac vice*)
FRESHFIELDS BRUCKHAUS DERINGER LLP
700 13th Street NW, 10th Floor
Washington, D.C. 20005
(202) 777-4545
eric.mahr@freshfields.com
julie.elmer@freshfields.com

Daniel S. Bitton (*pro hac vice*)
AXINN, VELTROP & HARKRIDER LLP
55 Second Street
San Francisco, CA 94105
(415) 490-1486
dbitton@axinn.com

Bradley Justus (*pro hac vice*)
James K. Hunsberger (*pro hac vice*)
David R. Pearl (*pro hac vice*)
AXINN, VELTROP & HARKRIDER LLP
1901 L Street NW
Washington, DC 20036
(202)912-4700
bjustus@axinn.com
jhunsberger@axinn.com
dpearl@axinn.com

ATTORNEYS FOR
DEFENDANT GOOGLE LLC

**CERTIFICATE OF SERVICE**

      I certify that on October 17, 2024, this document was filed electronically in compliance with Local Rule CV-5(a) and thus served on all counsel who have consented to electronic service.

/s/ *Kathy Patrick*
Kathy Patrick

**CERTIFICATE OF CONFERENCE**

      I certify that, in compliance with Local Rule CV-7(h), counsel for Defendant conferred in good faith with counsel for Plaintiffs via a Zoom conference on October 16, 2025, attended by Kathy Patrick, Rob McCallum, and Constance Forkner for Defendant Google, and attended by Mark Lanier, Mark Collier, Ashley Keller, Noah Heinz, and Zeke DeRose, counsel for Plaintiffs. The parties discussed the legal basis for the motion, including Google's concern about the prejudicial effect of offering net worth, wealth, and revenue evidence to the jury during a liability phase, given that this evidence was not relevant to any liability issues, as well as this Court's decision in *Wagoneka*. Plaintiffs stated that they did not agree further bifurcation was appropriate and declined to agree to the relief requested. Accordingly, both parties agree they are at an impasse on the question of further bifurcation, such that a decision by the Court is required to resolve the matter.

/s/ *Kathy Patrick*
Kathy Patrick
