IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| THE STATE OF TEXAS, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| v. | § | Civil Action No. 4:20-cv-00957-SDJ |
| | § | |
| GOOGLE LLC, | § | |
| | § | |
| Defendant. | § | |

## GOOGLE'S OPPOSITION TO PLAINTIFFS' MOTION TO DEEM SUPPLEMENTAL EXPERT REPORT OF JACOB HOCHSTETLER TIMELY SERVED

**INTRODUCTION**

Plaintiffs have not been candid with the Court, the Special Master, or Google.  Chats and retention are not a new issue in this case:  If Plaintiffs intended to designate an expert on those issues, they were required by the Scheduling Order to disclose their intent to do so over four months ago on June 7, 2024.  *See* ECF No. 458.  Instead:

- Plaintiffs told the Special Master in July that the production of the logs at issue would be the end of the burden for Google, when they knew but did not disclose that another Report was forthcoming.  *See* Ex. A, July 10 Hr'g Tr. at 85:2 (counsel for Texas stating: "All the burden is over" for Google).

- Plaintiffs failed to disclose their intentions while the parties renegotiated the expert schedule in August—while Google was simultaneously preparing the logs for production—culminating in the Court entering a new schedule.  ECF No. 609.

- After Google produced the logs, Plaintiffs told Google that they needed additional information about the logs ahead of the late-August deposition of Mr. Pichai.  Ex. B at 3.  But Plaintiffs asked no questions about the logs in the deposition, and it is now apparent that their intention was to later assert that they needed the information to finalize their untimely Report. Ex. C at 2.  Plaintiffs never disclosed that to Google.  *See id.* at 1.

- In October, Plaintiffs then produced a new affirmative report by a software engineer—now rebranded, but not qualified as a document retention expert—to opine on preservation of messages "relevant to this litigation," an obvious legal issue that is in the Court's province.

The result is that the current schedule—negotiated by the parties and entered by the Court— does not now afford Google a reasonable opportunity to respond to the new affirmative report that Plaintiffs dropped on October 4.  Summary Judgment and *Daubert* motions are due on November 18.  The Court should not countenance gamesmanship of this sort and should deny Plaintiffs' Motion.

Consistent with that pattern, Plaintiffs' Motion is remarkable for its failure to disclose to the Court the real reason for this dispute.  Even after Plaintiffs failed—for months—to notify the Court or Google of their intent to serve a brand new affirmative report, to avoid burdening the Court and without waiver of its rights to object to this clear violation of the Scheduling Order, Google was willing to explore a resolution of this untimely report through a reasonable

1

schedule to respond.  But Plaintiffs were not willing to do that and instead now seek the Court's blessing of their report as "properly and timely served"—without mentioning either their demand that Google provide any responsive reports *within three business days* or their own refusal to negotiate the obvious scheduling problem that they have created.

Though styled as a "supplemental" report, the report at issue (the "Second Affirmative Report") is wholly unrelated to the previously disclosed opinions of Plaintiffs' experts.  It is a new affirmative report about an expert topic not disclosed (as required) in June—document preservation.  *See* ECF No. 458.  But because they are seeking to serve a new report on a new topic, and not a supplement, Plaintiffs must first obtain a modification of the Scheduling Order. They have not even sought to do so and—even if they had—could not show the requisite good cause based on their failure to raise this issue earlier.  To the contrary: in seeking discovery of the data at issue, Plaintiffs represented to the Special Master that Google would suffer no "burden" once that data was produced.

But Plaintiffs' proposed course will burden and prejudice Google.  Plaintiffs took a full six weeks from production of the logs to serve the Report and then insisted on a patently unreasonable schedule that gave Google only three business days to respond.  And expert discovery is now nearly done, with the November 18 deadline for summary judgment and *Daubert* motions looming.  Those motions are intended to be made on a fulsome record to enable the Court to fulfill its essential gatekeeping function before a jury trial.  And Plaintiffs are doubling down by insisting that they can foist an unreasonable timetable for expert discovery-on-discovery on Google while asserting simultaneously that Google is precluded from probing the mounting evidence of Plaintiffs' spoliation of evidence and other discovery failures.  (So far, twelve States have admitted that they failed to issue litigation holds.)

If the Court deems the Second Affirmative Report to be timely served, Google will not only have to address Prof. Hochstetler's new opinions now during a new, extended round of

expert discovery, but also move to disqualify Prof. Hochstetler through a *Daubert* motion. Plaintiffs should not be permitted to offer the new "expert" opinions contained in his Second Affirmative Report.  But if the Court holds otherwise, it should establish a reasonable timetable for Google to respond, consistent with the Court's Scheduling Order.

## STANDARD

"The purpose of supplementary disclosures is just that—to supplement" and they "are not intended to provide an extension of the expert designation and report production deadline." *Metro Ford Truck Sales, Inc. v. Ford Motor Co.*, 145 F.3d 320, 324 (5th Cir.1998); *see also Sierra Club, Lone Star Chapter v. Cedar Point Oil Co. Inc.*, 73 F.3d 546, 571 (5th Cir. 1996) ("[Supplementary and rebuttal] disclosures are not intended to provide an extension of the deadline by which a party must deliver the lion's share of its expert information.").

If the changes or additions to an expert report fall outside the scope of proper supplementation, then the appropriate procedural vehicle is "to seek an extension of [the] expert report deadline and establish 'good cause' to modify the Court's scheduling order pursuant to Federal Rule of Civil Procedure 16." *Diaz v. Con-Way Truckload, Inc.*, 279 F.R.D. 412, 422 (S.D. Tex. 2012).  "A schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4); *see also Kumar v. Frisco Indep. Sch. Dist.*, 476 F. Supp. 3d 439, 468 (E.D. Tex. 2020) (striking untimely-filed expert report where "Defendants have not established good cause for the Court to grant leave under Rule 16(b)").  To be clear, Plaintiffs do not seek leave to modify the Court's scheduling order; they seek a judicial determination that the Second Affirmative Report was in fact timely.

## ARGUMENT

**I.    Plaintiffs Have Misrepresented The Nature Of This Dispute To The Court.**

Plaintiffs' Motion fails to mention the issue that actually drove the parties to an impasse. After Plaintiffs first contacted Google on September 27, 2024, to tell them that a supposedly

"supplemental" report was forthcoming,[1] Google told Plaintiffs on October 1 that any such report would be untimely, that Plaintiffs would need leave of the Court to serve another report, and that—to the extent any such report were permitted—Google would have the right to serve a responsive report.  Ex. C.  Plaintiffs never responded.  Instead, they served their untimely 43 page report on October 4, and invited Google to propose dates for a two-hour deposition.

Without waiving its right to object to Plaintiffs' untimely report, Google gave proposed dates for a deposition.  Ex. D.  Plaintiffs then proposed, on October 16, that Google should serve any responsive reports by October 21, *i.e., within three business days*.  Ex. E.  At a meet-and-confer that day, Google told Plaintiffs that their proposal was unrealistic and unreasonable given that the governing Scheduling Order provides for 7.5 weeks to serve responsive reports and that Plaintiffs themselves took six weeks from production of the logs to prepare their own new report.  Plaintiffs then stated—for the first time—that they intended to file this Motion.

Google told Plaintiffs that it "opposes based on Plaintiffs' insistence on an unreasonable schedule and reserves the right to object to the [Second Affirmative Report] as untimely."  Ex. F.  In their Certificate of Conference, Plaintiffs misrepresent that position by omitting any reference to Plaintiffs' insistence on an unreasonable schedule and pretend that this dispute is limited to their own untimely service of a purported "supplemental" report.  *Compare id. with* ECF No. 638 at 9.

## II.   The Report Is Not A "Supplemental" Report.

Plaintiffs' affirmative expert reports were due more than four months ago on June 7, 2024.  ECF No. 458.  If Plaintiffs had intended to submit an affirmative report addressing

---

[1] Plaintiffs seek to backdate their disclosure to September 9, when they buried a throwaway line in approximately 1,400 pages of expert reports, as part of a "rebuttal" report authored by Prof. Hochstetler that had nothing to do with chats or retention thereof, but rather, a technical analysis of Google's advertising technology stack: "I understand that Google has recently produced chat log data. I reserve the right to serve a supplemental report in the future analyzing that data."  Hochstetler Rebuttal Report at 4.   Prof. Hochstetler provided no further details, and the notice given was insufficient for Google to anticipate the opinions that might follow.

discovery-on-discovery, then they needed to designate an expert witness and his or her anticipated opinions at that time.  Plaintiffs did not.  Instead, they designated Prof. Hochstetler to opine on "the operation of the products used in web display advertising," and other technical elements of Google's display advertising products.  Ex. G (June 7, 2024 Opening Report of Jacob Hochstetler) at 6.  They said nothing about Chats, logs, or discovery-on-discovery.

Seeking to skirt this failure to disclose, Plaintiffs now recast Prof. Hochstetler's new report as "supplemental" even though it plainly has nothing to do with his timely-served opinions.  ECF No. 638 at 3-4.  But a report is not "supplemental" merely because it was authored by an expert who had been disclosed in connection with a separate opinion.  *Newberry v. Disc. Waste, Inc.*, No. 4:19-CV-00147, 2020 WL 363775, at *2 (E.D. Tex. Jan. 22, 2020) ("Plaintiffs may not 'supplement' their expert's report—with entirely new conclusions and theories regarding Defendant's wrongdoing—nearly four months after the deadline set by the Scheduling Order.  This is not a supplement, but an entirely new expert report."); *see also Kumar v. Frisco Indep. Sch. Dist.*, 476 F. Supp. 3d 439, 469 (E.D. Tex. 2020) (excluding as not supplemental a report that "was not attempting to correct an inaccuracy nor complete an outstanding issue in [the expert's] report").

Citing *Diaz v. Con-Way Truckload, Inc.*, 279 F.R.D. 412 (S.D. Tex. 2012), Plaintiffs argue that parties may supplement expert reports at any time up to 30 days before trial, even with "new opinions."  ECF No. 638 at 3-4.  But in fact, *Diaz* makes clear that "[t]he basic purpose of supplementary disclosures under Rule 26(e)(2) is to prevent prejudice or surprise, not to provide an extension of the expert designation and report production deadline." *Diaz*, 279 F.R.D. at 421 (cleaned up) (citing *Metro Ford Truck Sales*, 145 F.3d at 324).  *Diaz* also makes clear that supplementation is only appropriate "*in certain limited circumstances*" and that "permissible supplementation means correcting inaccuracies, or filling the interstices of an incomplete report." *Id.* at 421 (emphasis in original; citations and quotation marks omitted).

Any other approach would violate Rule 26, which requires that initial expert disclosures include "a *complete* statement of all opinions the witness will express."  Fed. R. Civ. Pr. 26(a)(2)(B)(i) (emphasis added).

Plaintiffs do not seriously argue that this brand new report is supplementation.  Nor could they.  Prof. Hochstetler's Opening Report opined on the ad tech products at issue in this case.  And his rebuttal report responded to a report submitted by Google and authored by Prof. Martin Rinard, which had nothing to do with chats, logs, or retention.

By contrast, Prof. Hochstetler's Second Affirmative Report explains that he will now opine on Google's preservation of purportedly relevant chat messages based on "chat log data," ECF No. 638-1 at 3-4.  But beyond citing his original and rebuttal reports to explain his qualifications, Prof. Hochstetler never cites those reports again and he never purports to correct any prior misstatements.  Nor does he argue that the chat log supplies information that was missing from those reports.  The Court should therefore exclude the Second Affirmative Report as an untimely attempt to disclose new expert testimony through the back door. *See Metro Ford Truck Sales*, 145 F.3d at 324 ("[Supplemental] disclosures are not intended to provide an extension of the expert designation and report production deadline.").

### III.    Plaintiffs Have Failed To Show Good Cause To Modify The Scheduling Order To Permit The Service Of Yet Another Affirmative Report.

"In the context of an untimely motion to amend a scheduling order's deadlines for the designation of experts and to file expert reports, the Fifth Circuit Court of Appeals applies a four-factor balancing test to determine whether good cause exists: [A] the explanation for the failure to adhere to the deadline; [B] the importance of the proposed modification to the scheduling order; [C] potential prejudice in allowing the testimony or the supplement; and [D] the availability of a continuance to cure such prejudice." *Diaz*, 279 F.R.D. at 422 (citing *Geiserman v. MacDonald*, 893 F.2d 787, 791 (5th Cir.1990)).  All four factors demonstrate that Plaintiffs have not shown good cause.

### A. Plaintiffs Have Presented No Credible Explanation For Failing To Abide By This Court's Scheduling Order.

Chats and retention are not new issues in this case.  Plaintiffs were well aware of the existence of the logs at issue and had expressed a desire to show that relevant chats were lost well in advance of the Court's deadline for expert disclosures under the Scheduling Order. Plaintiffs requested the logs on April 3, 2024, in the final month of a 16-month discovery period.  And Google provided sworn 30(b)(6) testimony about the logs on May 17, 2024, including, among other things, ███████████████████████████████████████ ███████████████████████████████████████████████████████████████████████ ██████████████████████  Since then, Plaintiffs have had multiple opportunities to disclose their intentions to the Court, the Special Master, and Google, but failed to do so.

*First*, Plaintiffs did not inform the Special Master of their intent to serve another expert report when they moved to compel production of the logs on June 26, 2024.  ECF No. 540.  To the contrary, they told the Special Master that production would impose no burden on Google, and the Special Master's Order was based on the fact that the production of the logs would be "free from any burden to Google." ECF No. 558 at 13; *cf.* Ex. A at 85:2 (counsel for Texas stating: "All the burden is over").  There was no mention—in the motion-to-compel briefing or hearing—of Plaintiffs' intent to designate an expert to testify regarding the alleged document-preservation implications of such logs (which cover a 68 day period for just five of the 192 custodians in this case).

*Second*, Plaintiffs did not inform Google of their intent to serve another affirmative expert report when the parties recently renegotiated the expert schedule.  Throughout August 2024, the parties negotiated dates for expert depositions and extensions of the expert schedule, culminating in a Joint Motion Pursuant to Rule 16(b) To Modify Scheduling Order To Provide Brief Extensions Of Expert Discovery Period And Summary Judgment/Daubert Deadlines,

ECF No. 607.  The Court then entered an Order implementing those agreed dates.  ECF No. 609.  Plaintiffs said nothing about this forthcoming Second Affirmative Report.

*Third*, even after Google produced the logs, Plaintiffs continued to fail to mention their intent when meeting and conferring about Plaintiffs' requests for additional discovery about the logs.  To the contrary, on August 28 Plaintiffs told Google that they needed additional information about the logs in advance of Sundar Pichai's deposition. Ex. B at 3.  But Plaintiffs did not ask Mr. Pichai about the logs.

*Fourth*, Plaintiffs failed to seek the leave of the Court to serve a supplemental report even after Google explicitly explained to Plaintiffs on October 1 that any such report would be untimely and that leave of the Court would be required.  Ex. C.  Plaintiffs ignored Google's email, never responded, and served the Second Affirmative Report three days later without further explanation.  *Cf.* Local Rule CV-7(k) ("Motions for leave to file a document should be filed separately and immediately before the document for which leave is sought.").  Then, in their Motion, Plaintiffs make the patently false assertion that it was only "[t]wo days ago," that "Google informed the States for the first time" that the Second Affirmative Report was untimely and required leave to serve.  *Compare* ECF No. 638 at 3 *with* Ex. C. ("Plaintiffs have no basis to issue a supplemental report on Chats data and will need to seek leave from the Court to do so.").

Plaintiffs have explained none of these failures or misrepresentations.  Instead, they falsely assert that "[o]n July 22, 2024, Google agreed to produce a subset of those logs," ECF No. 638 at 2, and then repeatedly assert (also falsely) that Google waited over a month to do so.  *Id*. at 2, 4, 5.  In fact, Google agreed on July 29 to produce only those portions of the logs relating to custodians overlapping between the *Play* case in which they were originally produced and this case.  *See* Ex. B at 4.  Google agreed to do so to avoid the need to burden

8

the Court with a further appeal to the Court.  But producing that subset was burdensome to Google, and took weeks, because it required repackaging the logs.[2]

### B.  The Late Report Is Not Important Because The Report Contains No Relevant, Admissible Evidence

If the Court deems the Second Affirmative Report to be timely served, Google will not only have to address Prof. Hochstetler's new opinions now during a new, extended round of expert discovery, but also move to disqualify Prof. Hochstetler through a *Daubert* motion. The Court can and should eliminate the need for such briefing by determining on the merits that this brand new "supplemental" Report cannot possibly have any importance.  *See Newberry v. Disc. Waste, Inc.*, No. 4:19-CV-00147, 2020 WL 363775, at *3 (E.D. Tex. Jan. 22, 2020) (second factor in favor of precluding supplemental report where "Plaintiffs do not address the importance of the new testimony").

Prof. Hochstetler's opinions are obviously improper and subject to exclusion.  He opines that 

*Id*. at 35.  But those are legal opinions drafted by Plaintiffs' counsel.  A self-proclaimed expert at "developing and managing software at scale," Ex. G at 7, has no basis to opine on

*Manning v. Crockett*, No. 95 C 3117, 1999 WL 342715 at *3 (N.D. Ill. May 18, 1999) ("the assistance of counsel contemplated by Rule

---

[2] Specifically, because the logs had not been produced "by custodian" in the *Play* case, generating a version of the logs for only an agreed subset of the relevant custodians required Google's engineers to repackage the logs for just the agreed subset of custodians.

26(a)(2)(B) is not synonymous with ghost-writing") cited in *Seitz v. Envirotech Sys. Worldwide Inc.*, No. CIV. A. H-02-4782, 2008 WL 656513, *2 (S.D. Tex. Mar. 6, 2008). Prof. Hochstetler does not profess to be an expert on electronic discovery or document preservation obligations, including relevance. And even Prof. Hochstetler concedes that



Accordingly, it is far from "important" that Plaintiffs be permitted to introduce the opinions of a software expert on Google's document preservation obligations and compliance therewith, let alone on the legal relevance of a chat.

### C. Plaintiffs' Failure To Timely Disclose Their Intention To Serve Yet Another Affirmative Expert Report Is Prejudicial To Google.

The prejudice to Google is significant and self-evident.

*First*, Plaintiffs repeatedly failed to timely disclose their intent to serve a new report about Google's document preservation. *Supra* at 7-8. Google produced all of the information that it was required to provide on August 26.[3] Plaintiffs then took a full six weeks from production of the logs to serve the Report and failed to seek the Court's leave to do so even after Google told them that leave was required. Ex. C at 1. In the meantime, Google had provided Plaintiffs with additional information in response to Plaintiffs' false assertions that it

---

[3] The Court should not credit Plaintiffs' various assertions that they were waiting on Google to provide additional information to finalize the Second Affirmative Report. Plaintiffs never told Google that they needed further information for that purpose, and Google had no obligation to answer further questions. Google provided most of the confirmations requested by Plaintiffs on August 29—within a day of receipt and more than five weeks before Plaintiffs submitted the Second Affirmative Report. Ex. B. When the parties met and conferred on September 13, Plaintiffs did not disclose that they would weaponize Google's good faith agreement to answer additional questions to claim that more information was needed to finalize their Report. Ex. C.

was required for a deposition.  *See supra* at 1, 8.[4]  Had Plaintiffs not sat silently in wait, the parties could have addressed it earlier and agreed on an appropriate schedule.

*Second*, the schedule proposed by Plaintiffs for any responsive reports is patently unreasonable.  *Supra* at 2; Ex. E.  It is obvious that the current schedule cannot accommodate Plaintiffs' late disclosures, and the fact that Plaintiffs have declined to seek a modification of the Scheduling Order or engage in a negotiation demonstrates that they know this.  Instead, Plaintiffs seek to have their desired timeline and their untimely expert report and have Google prejudiced by a compressed timeline to assess and respond to Plaintiffs' software expert's report on document preservation and legal relevance.  Significantly, that prejudice flows to the Court as well, which would be deprived of adequate expert discovery on the *Daubert* motion that would follow on Prof.  Hochstetler's so-called expert opinion.

*Third*, expert discovery is winding down, and Plaintiffs have not advanced any good reason to engage in another round on a new topic that, at least according to Plaintiffs, they have been pursuing for over four years. *See, e.g.,* Ex. A at 34:4-5 (Counsel for Texas stating: "we've been raising [Chats] since 2020.").  Google is now preparing to move for summary judgment while Plaintiffs continue to complete fact discovery by making new productions.  The Special Master has already ruled that Puerto Rico's late productions have prejudiced Google.  ECF No. 537.  Utah recently discovered that it ran ad tech campaigns via instant message and made a production of documents less than two weeks ago.  And while twelve States—including Texas—have now admitted that they never issued a litigation hold notice, three others continue to refuse to confirm whether they did so.  And Plaintiffs have taken the position that it is too late for Google to engage in further discovery-on-discovery, while Plaintiffs are doing precisely

---

[4] The Court should not credit Plaintiffs' assertions that Google provided this information "on a rolling basis," ECF No. 638 at 2, because Google told Plaintiffs that they had no obligation to provide further information and Plaintiffs did not tell Google that they planned to serve another Report.

that.  *See* Ex. I.  It is patently unfair for Plaintiffs to insist that they can foist an unreasonable timetable for expert discovery-on-discovery on Google while asserting that Google is precluded from probing the mounting evidence of Plaintiffs' spoliation of evidence and other discovery failures.

### D.  The Prejudice To Google Cannot Be Cured Through Granting a Continuance.

Even if the Court were to grant a continuance, some prejudice to Google is irreversible. Rather than appealing the Special Master's July 15, 2024 Order requiring disclosure of the *Play* logs, Google, in good faith, negotiated a narrower production set not knowing that Plaintiffs would turn around and use it as a basis for serving an additional, untimely expert report. Indeed, because Plaintiffs' expert disclosures were due on June 7, Google did not think that this was even a prospect.  Even after that agreement, Google undertook the burden of providing explanatory information that it had no obligation to provide, only for Plaintiffs to later claim that they were waiting for this information to complete their surprise additional report.[5]  And Plaintiffs' failure to mention their planned late disclosure to the Court also prejudiced Google in the course of August renegotiations of the expert discovery schedule, *supra* at 7-8, as Google agreed to—and the Court endorsed—a new expert schedule without knowing the full landscape of expert discovery.  A continuance cannot unwind that prejudice.

### IV.  If The Court Finds There Is Good Cause To Permit Plaintiffs' Untimely Affirmative Report To Be Served, Google Is Entitled To A Reasonable Time To Respond.[6]

---

[5] Plaintiffs induced Google to provide the explanatory information under the false pretense of using it for Mr. Pichai's deposition. *See supra* at 1, 8; Ex. B at 2.

[6] Google notes that when Plaintiffs previously requested that the Special Master make modifications to the Scheduling Order, the Court entered an Order stating that "[g]iven the current timeline in this case, the Court will handle any such request in the first instance."  ECF No. 422.  There is a status and scheduling conference currently scheduled with the Court for October 30, 2024.  Google has filed an unopposed motion to reset that conference to the week of November 4, 2024.  ECF No. 643.

If the Court permits the Second Affirmative Report, the only way to mitigate the prejudice to Google is for the process for responding to the Report to hew as closely as possible to that of all other affirmative expert reports.  That is, Google should receive 7.5 weeks to retain, prepare, and serve its responsive report, which would make that report due on November 26, 2024.  Moreover, Plaintiffs have indicated that they will file a rebuttal report, and that depositions would then be scheduled following service of all expert reports.  *See* Ex. E.

## CONCLUSION

Plaintiffs' Motion should be denied.  To the extent that it is granted, Google should be given until November 26, 2024 to respond to this brand new expert report.

Dated: October 23, 2024                          Respectfully submitted,

GIBBS & BRUNS LLP

*/s/ Kathy D. Patrick*
Kathy D. Patrick
State Bar No. 15581400
KPatrick@gibbsbruns.com
Robin C. Gibbs
Texas Bar No. 07853000
RGibbs@gibbsbruns.com
Ayesha Najam
Texas Bar No. 24046507
ANajam@gibbsbruns.com
Charles M. Rosson
Texas Bar No. 24074985
CRosson@gibbsbruns.com
Caitlin A. Halpern
Texas Bar No. 24116474
CHalpern@gibbsbruns.com
Ann T. Lebeck
Texas Bar No. 24055840
ALebeck@gibbsbruns.com
Michael R. Davis
Texas Bar No. 24109793
MDavis@gibbsbruns.com
Michael D. Doman
Texas Bar No. 24131182
MDoman@gibbsbruns.com
1100 Louisiana, Suite 5300

Houston, Texas 77002
Tel.: (713) 650-8805
Fax: (713) 750-0903

**FRESHFIELDS US LLP**

Eric Mahr (*pro hac vice*)
700 13th Street, NW
10th Floor
Washington, DC 20005
Tel.: (202) 777-4545
eric.mahr@freshfields.com

*Attorneys for Defendant*

14

## CERTIFICATE OF SERVICE

I certify that on October 23, 2024, this document was filed electronically in compliance with Local Rule CV-5(a) and served on all counsel who have consented to electronic service, per Local Rule CV-5(a)(3)(A).

/s/ *Ayesha Najam*
Ayesha Najam

## CERTIFICATE OF SEALING

This Response is filed under seal pursuant to the Special Master's October 21, 2024 Order directing Google to file a sealed response.  This sealed filing will be promptly served by email on counsel of record for all parties, and pursuant to Local Rule CV-5(a)(7)(E), Google will file a redacted copy within seven days.

/s/ *Ayesha Najam*
Ayesha Najam