IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| THE STATE OF TEXAS, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>GOOGLE LLC,<br><br>    Defendant. | Civil Action No. 4:20-cv-00957-SDJ |

**PLAINTIFF STATES' OPPOSITION TO GOOGLE'S MOTION TO BIFURCATE**

## INTRODUCTION

At the parties' request, this Court has bifurcated the proceedings so that equitable remedies are tried separately from the "issues of liability and penalties." Dkt. 610 at 1. Months after the parties' negotiations and engagement with the Court over bifurcation have ended, Google now seeks to further narrow the scope of an initial trial, excluding any of the amorphous category of "evidence that is relevant only to the determination of DTPA penalty awards." Dkt. 635 at 1. Google provides no example of a case in which that sort of division has ever occurred. Rather, it analogizes exclusively to punitive damages. But civil penalties are not punitive damages, and the trifurcation Google seeks would present numerous line-drawing problems. Besides delaying the resolution of the case and inconveniencing everyone involved with the trial, Google's trifurcation proposal stretches Federal Rule of Civil Procedure 42 too far and would prejudice Plaintiff States. This Court should reject Google's attempts at muddling the issues and deny its request to trifurcate.

## LEGAL STANDARD

While Rule 42 allows bifurcation (or even trifurcation) "[f]or convenience, to avoid prejudice, or to expedite and economize," "bifurcation 'is not the usual course that should be followed.'" *Aikens v. Cent. Or. Truck Co.*, No. 4:20-CV-00567, 2021 WL 4263169, at *1 (E.D. Tex. Sept. 20, 2021) (quoting *McDaniel v. Anheuser-Busch, Inc.*, 987 F.2d 298, 304 (5th Cir. 1993)); *see also Laitram Corp. v. Hewlett-Packard Co.*, 791 F. Supp. 113, 114 (E.D. La. 1992) (bifurcation "should be the exception, not the rule"). "The party requesting separate trials bears the burden of convincing the court that such an exercise of its discretion will (1) promote greater convenience to the parties, witnesses, jurors, and the court, (2) be conducive to expedition and economy, and (3) not result in undue prejudice to any party." *Image Processing Techs., LLC v. Samsung Elecs. Co.*, No. 2:20-cv-00050, 2020 WL 3315989, at *1 (E.D. Tex. June 18, 2020) (citations omitted).

1

Rule 42(b) is permissive, and this Court has considerable discretion to deny a motion to trifurcate. *See Nester v. Textron, Inc.*, 888 F.3d 151, 162 (5th Cir. 2018). Still, that discretion is not unlimited; "the issue to be tried must be so distinct and separate from the others that a trial of it alone may be had without injustice." *McDaniel*, 987 F.2d at 305 (quoting *Alabama v. Blue Bird Body Co.*, 573 F.2d 309, 318 (5th Cir. 1978)). The limitation on separate trials is partly based on the Seventh Amendment jury-trial right, which generally allows "a litigant to have only one jury pass on a common issue of fact." *Id.* at 305 (quoting *Swofford v. B & W, Inc.*, 336 F.2d 406, 415 (5th Cir. 1964)). Trifurcation is inappropriate when it would force separate juries to pass on overlapping legal and factual questions. *See Blue Bird Body Co.*, 573 F.2d at 318.

Courts also should not trifurcate when it would "result in unnecessary delays, additional expense, or some other form of prejudice." *In re Jack'd Up Charters LLC*, 681 F. Supp. 3d 560, 564 (E.D. La. 2023) (quoting *Laitram Corp.*, 791 F. Supp. at 115). For example, parties are prejudiced when trifurcation would force them "to present the same evidence twice[] or thrice[] in separate trials." *Butler v. BNSF Ry. Co.*, No. 1:22-CV-00367, 2024 WL 4525512, at *3 (E.D. Tex. Aug. 6, 2024) (alterations in original) (quoting *Smith v. BNSF Ry. Co.*, No. 17-cv-00977, 2019 WL 5063468, at *2 (D. Colo. Oct. 8, 2019)).

## ARGUMENT

One uninterrupted trial on all issues triable before one jury, followed by a second proceeding before the Court is the best and most efficient way forward. Separating the issues into three parts advances none of Rule 42's goals. Rather, it creates an inefficient and unfair process for resolving the issues that a jury will decide.

### I. Google's Proposed Division Is Unworkable.

Bifurcation is appropriate only when there is "a clear understanding between the court and counsel of the issue or issues involved in each phase and what proof will be required to pass from

one phase to the next." *Blue Bird Body Co.*, 573 F.2d at 319 (quoting *Response of Carolina v. Leasco Response, Inc.*, 537 F.2d 1307, at 1321 (5th Cir. 1976), *abrogated on other grounds, Cont'l T.V., Inc. v. GTE Sylvania Inc.*, 433 U.S. 36 (1977)).  Google's proposal flunks that requirement.  The issues surrounding liability and penalties are intertwined, and the evidence Google seeks to move to the penalty phase is relevant to liability too.  Google cites only cases that bifurcate punitive damages, not *antitrust* cases or DTPA enforcement actions.  The principles do not translate well.

      **A.**       **There is no clean line between evidence relating to liability and penalties.**

Rather than the "clear understanding" of the "issues involved in each phase" that the Fifth Circuit requires for bifurcation, Google asks that the Court "mandate an initial liability phase, in which the jury will decide *only* which, if any, of Google's alleged practices violated the relevant statutes." Dkt. 635 at 10.  Google suggests that this would *not* include "[e]vidence of the number of violations, including the total revenues Google allegedly earned" and "Google's net worth and wealth." *Id.*  This proposal sparks thorny questions.

Start with the "number of violations."  Is the "number of violations" actually "not relevant to any issue of liability," as Google argues, *id.*, or is it the number of times the jury is finding Google liable for violating state law?  Consider how a statute of limitations defense would apply. Google has argued that Reserve Price Optimization conduct is time-barred.  In some states, the trigger for the limitations period may depend on how the jury applies the discovery rule.  This is clearly a liability issue, since a time bar is a defense on the merits.  But it also would be a penalty issue, since the number of violations—and the extent of ill-gotten benefits to Google—could turn on what conduct is within the limitations period.  The parties and witnesses would need to address the same issues twice, and the Court would need to somehow instruct the jury that whatever finding the jury made on the statute of limitations for *liability* must carry through to the penalty phase.

3

Turning from the number of violations, Google is simply wrong that its revenue and wealth are not relevant to liability. Google's extraordinary market dominance and supra-competitive profits over many years has obvious relevance to antitrust liability. Its excess resources and large size enabled its anticompetitive conduct and informed the behaviors of other market participants. Google's "size and financial condition can be relevant to [its] ability to influence prices." *In re HIV Antitrust Litig.*, No. 19-cv-02573, 2023 WL 5670808, at *15 (N.D. Cal. Mar. 19, 2023); *see S. Pines Chrysler-Plymouth, Inc. v. Chrysler Corp.*, No. M-83-122, 1986 WL 964, at *3 (M.D.N.C. Apr. 22, 1986); *see also* Margarida Afonso, *A Catalogue of Merger Defenses Under European and United States Antitrust Law*, 33 Harv. Int'l L.J. 1, 60 (1992) ("there is a correlation between the size of a firm's market share and its ability to influence price"). Google's profits also may be relevant to its executives' motives to commit misconduct. If the Court granted the motion, the parties would need to litigate which financial details are relevant to at least one theory of liability, and which, if any, are *only* relevant to penalties, a tedious and largely pointless exercise.

      **B.**      **Bifurcation of punitive damages is nothing like this case.**

The cases Google cites do not support its contention that the jury's decision on liability should be devoid of "any consideration of the number of violations or the amount of any penalties." Dkt. 365 at 2. Rather, Google relies entirely on cases about punitive damages, not antitrust or DTPA cases. Antitrust and DTPA enforcement actions are hardly rare—it speaks volumes that Google was unable to identify a case with the trifurcated structure it requests here.[1]

This Court's decision in *Wagoneka v. KT&G USA Corp.*, No. 4:18-CV-859-SDJ, 2020 WL 6063096 (E.D. Tex. Oct. 14, 2020) is typical of the line of cases Google relies upon. There, the

---

[1] Even in enforcement actions in state courts where the penalty amount is determined by the court, juries routinely hear evidence about high "profits," and the "motivations to retain (and increase) [] market share." *State ex rel. Wilson v. Ortho-McNeil-Janssen Pharms., Inc.*, 777 S.E.2d 176, 190 (S.C. 2015). That evidence is permissible at the liability phase.

4

Court bifurcated liability and punitive damages in an employment discrimination suit. There would be no reason for the jury to know the profits, revenues, or financial condition of "KT&G USA Corp." After a summary judgment ruling, the "need to introduce sales revenue evidence to rebut KT&G USA's pretext—no longer exists." *Id.* at *3. Potential prejudice was high, and the issues would otherwise not arise, and so the Court decided to bifurcate.

Courts treat antitrust cases differently. The Fifth Circuit has "recognize[d] that there are often no neat dividing lines between the elements of proof required to obtain a damage award for antitrust violations." *Malcolm v. Marathon Oil Co.*, 642 F.2d 845, 852 (5th Cir. Unit B Apr. 1981) (citations omitted); *see In re Zetia (Ezetimibe) Antitrust Litig.*, No. 2:18-md-2836, 2023 WL 4157433, at *2 (E.D. Va. Mar. 14, 2023) ("Splitting the presentation of evidence between liability and damages would require wading into the potentially ambiguous delineation between antitrust impact (during the liability phase) and damages."). Thus, courts "must [] approach with trepidation" a request for "separate trials of 'liability' and 'damage' in antitrust cases." *Leasco Response, Inc.*, 537 F.2d at 1324. That is so even though antitrust cases typically involve treble damages, which raise concerns similar to punitive damages.

This is not a case in which the jury will be unaware of the defendants' wealth and financial success until a punitive damages phase. Google is a household name, and one of the five most valuable companies on the planet. Liability on the antitrust and DTPA claims largely turns on *how* Google became so wealthy. Even in the context of damages, the wealth and financial condition of the defendant are highly relevant to determinations of market power and anticompetitive effects cautioning courts against bifurcation. That reasoning is even more persuasive in the context of civil penalties since the concepts of severity of violation, deterrence, and knowledge of illegality

5

are directly intertwined with liability issues. Just as in the typical antitrust case, Google's financial condition will be front-and-center in the liability case.

## II. A Trifurcated Trial Will Be Inefficient and Would Prejudice Plaintiff States.

### A. Trifurcation would be inconvenient and inefficient.

Holding another jury phase would greatly decrease efficiency. Numerous expert witnesses would testify twice, requiring extensive travel and costs. A "bifurcated trial . . . would result in requests for the Court's intervention" over countless disputes over which evidence "is relevant to liability or to [penalties]." *Evantigroup, LLC v. Mangia Mobile, LLC*, No. 4:11-CV-1328, 2013 WL 74372, at *2 (E.D. Mo. 2013). The same jury[2] would need to stay longer—deliberating *twice*.

The *only* scenario in which bifurcation would aid efficiency is an early Google win. True, "some efficiencies may result if the trial ends before the [civil penalties] phase." *In re Zetia (Ezetimibe) Antirust Litig.*, 2023 WL 4157433, at *2. But the "benefit only accrues if Defendants win on liability." *Id.* As the Fifth Circuit explained, a finding for a defendant on liability would "eliminate the need for [a civil penalties] trial" in "any case where liability and [remedies] are both at issue." *Sims v. City of Jasper, Texas*, 117 F.4th 283, 290 (5th Cir. 2024). That is not enough.

### B. Trifurcation would prejudice Plaintiff States.

Separate jury trials are proper only if they "would not 'result in unnecessary delay, additional expense, or some other form of prejudice.'" *In re Jack'd Up*, 681 F. Supp. 3d at 564 (quoting *Laitram Corp*, 791 F. Supp. at 115). Trifurcating produces all three types of prejudice.

---

[2] Google does not specify whether one jury would hear both "phases," but Plaintiff States presume it intends the same jury to hear both to avoid re-doing jury selection and explaining the case. Empaneling a different jury would also present Seventh Amendment concerns. *See Blue Bird Body Co.*, 573 F.2d at 318 ("[T]he Seventh Amendment guarantee of a trial by jury is the general right of a litigant to have only one jury pass on a common issue of fact.") (citing *Gasoline Prods., Co. v. Champlin Refin. Co.*, 283 U.S. 494, 499–500 (1931)); *see also Castano v. Am. Tobacco Co.*, 84 F.3d 734, 750 (5th Cir. 1996) ("The Seventh Amendment entitles parties to have fact issues decided by one jury, and prohibits a second jury from reexamining those facts and issues.").

First, it would cause delay. This case has already suffered delay; Plaintiff States sued more than two years before the federal government filed a similar suit. Yet trial is over in the United States's case while Google seeks three separate trials, none of which has started. Google argues that bifurcation is permitted under Rule 42(b) to "expedite and economize" a proceeding, Dkt. 635 at 1, yet Google has not—and cannot—credibly assert the trifurcation would be more expeditious. To the contrary, it would cause unnecessary delay, extending the proceeding over additional phases with duplicative testimony.

Second, holding two trials on issues triable to a jury *plus* another phase for issues triable to the court would increase the parties' costs and unnecessarily burden this Court. Much evidence would be relevant to both phases, and that evidence would be presented at both trials. Besides wasting the parties' and Court's time, it would also require witnesses to travel to two trials. "In this way, inconvenience and increased costs to the parties, as opposed to judicial economy, are [] likely to result from" bifurcation. *Fucich Contracting, Inc. v. Shread-Kuyrkendall & Assocs., Inc.*, No. 18-2885, 2020 WL 5232423, at *3 (E.D. La. Sept. 2, 2020).

Third, if Google succeeds in barring evidence of revenue and the number of violations, Plaintiff States would be less able to convey the scope of Google's misconduct, making the trial narrative less compelling. Google's profits have long been extraordinary. Financial results like that are rare in a competitive economy, but more likely with anticompetitive conduct. The jury should hear about that.

Last, in a high-profile case like this, there is a danger that publicity resulting from a finding of liability would interrupt the proceedings, or otherwise affect the deliberations on penalties. Much better to allow publicity from the verdict to come when the jury's work has finished.

### C. Google's argument for prejudice is weak.

Our justice system relies on juries to be able to render just verdicts in antitrust cases against large companies. Some evidence in every trial is prejudicial, but "[a]ny perceived prejudice to [defendants] that could result from a single-phase trial on all issues can be mitigated or entirely avoided by appropriate instructions to the jury." *Spiker v. Salter*, No. 3:20-CV-00517, 2022 WL 602194, at *4 (W.D. La. Feb. 28, 2022); *see Rodriguez v. Singh*, No. 23-CV-00154, 2024 WL 4328780, at *2 (W.D. Tex. Feb. 20, 2024) ("any prejudice can be avoided with carefully drafted jury instructions"); *Chartis Specialty Ins. Co. v. Tesoro Corp.*, 930 F. Supp. 2d 653, 673 (W.D. Tex. 2013). A properly instructed jury can understand and consider evidence of Google's finances for the limited purposes this Court deems appropriate. *Richardson v. Marsh*, 481 U.S. 200, 206 (1987) (there is an "almost invariable assumption of the law that jurors follow their instructions").

Even if Google could show prejudice, trifurcation will not meaningfully diminish it. The jury will know that Google is a large, wealthy corporation whether this Court grants this motion or not. The jury will also hear Plaintiff States' evidence that Google is a monopolist who earned monopoly profits. Adding Google's net worth is, at most, a modest change, and trifurcating the trial to remove one of many different sources of evidence of Google's financial condition is not worth the expense and inconvenience. Where the "the basis [for bifurcation] is simply that the jury would not be able to render a fair verdict after hearing a corporation's net worth, then the motion will be denied." *Blue Star Sports Holdings, Inc. v. Fed. Ins. Co.*, No. 4:22-CV-098, 2023 WL 3898943, at *3 (E.D. Tex. June 8, 2023).

## CONCLUSION

The Court should deny Google's motion.

DATED: October 31, 2024

/s/ W. Mark Lanier
W. Mark Lanier
Mark.Lanier@LanierLawFirm.com
Alex J. Brown
Alex.Brown@LanierLawFirm.com
Zeke DeRose III
Zeke.Derose@LanierLawFirm.com
Jonathan P. Wilkerson
Jonathan.Wilkerson@LanierLawFirm.com
10940 W. Sam Houston Pkwy N.
Suite 100
Houston, TX 77064
(713) 659-5200
**THE LANIER LAW FIRM, PLLC**

Respectfully submitted,

/s/ Ashley Keller
Ashley Keller
ack@kellerpostman.com
150 N. Riverside Plaza, Suite 4100
Chicago, IL 60606
(312) 741-5220

Zina Bash (Bar No. 24067505)
zina.bash@kellerpostman.com
111 Congress Avenue, Suite 500
Austin, TX 78701
(512) 690-0990

/s/ Noah S. Heinz
Noah S. Heinz
noah.heinz@kellerpostman.com
Kiran N. Bhat
kiran.bhat@kellerpostman.com
1101 Connecticut Ave., N.W., Suite 1100
Washington, DC 20036
(202) 918-1123
**KELLER POSTMAN LLC**

*Counsel for Texas, Idaho, Louisiana (The Lanier Law Firm only), Indiana, Mississippi, North Dakota, South Carolina, and South Dakota Submitted on behalf of all Plaintiff States*

9

**NORTON ROSE FULBRIGHT US LLP**
Joseph M. Graham, Jr.
joseph.graham@nortonrosefulbright.com
Geraldine Young
geraldine.young@nortonrosefulbright.com
1550 Lamar Street, Suite 2000
Houston, Texas 77010
(713) 651-5151

Marc B. Collier
Marc.Collier@nortonrosefulbright.com
98 San Jacinto Blvd., Suite 1100
Austin, Texas 78701
(512) 474-5201


FOR PLAINTIFF STATE OF TEXAS

KEN PAXTON
Attorney General

*/s/ Trevor E. D. Young*
Brent Webster, First Assistant Attorney General of Texas
Brent.Webster@oag.texas.gov
James R. Lloyd, Deputy Attorney General for Civil Litigation
James.Lloyd@oag.texas.gov
Trevor Young, Deputy Chief, Antitrust Division
Trevor.Young@oag.texas.gov

**STATE OF TEXAS, OFFICE OF THE ATTORNEY GENERAL**
P.O. Box 12548
Austin, TX 78711-2548
(512) 936-1674

*Attorneys for Plaintiff State of Texas*

**CERTIFICATE OF SERVICE**

I certify that on October 31, 2024, this document was filed electronically in compliance with Local Rule CV-5(a) and served on all counsel who have consented to electronic service, per Local Rule CV-5(a)(3)(A).

*/s/ Noah S. Heinz*
Noah S. Heinz
