# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# SHERMAN DIVISION

| | |
|---|---|
| THE STATE OF TEXAS, *et al.*, § § § § *Plaintiffs,* § § v. § § GOOGLE LLC, § § § § *Defendant.* § | Civil Action No. 4:20-cv-00957-SDJ |

**GOOGLE LLC'S REPLY IN SUPPORT OF ITS MOTION
TO BIFURCATE THE LIABILITY FINDING FROM ASSESSMENT OF PENALTIES**

Bifurcation should be ordered because Plaintiffs have previewed an intent to emphasize penalty-related evidence, such as Google's net worth, to shortcut the actual elements of liability, by prejudicing the jury with a "Robin Hood" mentality. Google's overall size is irrelevant to its market share for antitrust purposes, and courts have repeatedly rejected attempts to conflate the two. Plaintiffs hardly dispute this and instead mischaracterize the relief sought, avoiding any discussion of the incurable prejudice Google will suffer if the jury hears evidence and argument about its net worth or the magnitude of the penalties Plaintiffs seek *before* determining liability.

## I. Google Seeks Bifurcation, Not Trifurcation.

In agreeing to bifurcate the issue of equitable remedies, Plaintiffs recognized that the jury should not be burdened with evidence relevant solely to issues it would not decide. ECF 606 at 3. The Joint Motion requested a "Phase I: Liability and Penalties" trial but also disclaimed "an agreement by either side regarding *which issues, if any, are triable to a jury in this matter*." *Id.* at 1, 4.[1] That is exactly Google's point: Google agrees that "One uninterrupted trial *on all issues triable before one jury*, followed by a second proceeding before the Court is the best and most efficient way forward."[2] ECF 650 (Plff's Opp.) at 3. But which issues *are* triable to a jury, and what *evidence* is admissible on those issues are therefore essential questions. The answers confirm that bifurcation of all issues related to penalties and remedies is warranted.

Google will soon file a motion to strike Plaintiffs' demand that the jury determine the amount of penalties to be assessed, if any, on Plaintiffs' DTPA claims. The U.S. Supreme Court is unequivocal: "a determination of a civil penalty is not an essential function of a jury trial," so "the Seventh Amendment does not require a jury trial for that purpose in a civil action." *Tull v.*

---

[1] Unless otherwise indicated, all emphasis is added, and citations have been cleaned up.
[2] If the Court rules that the jury will decide the amount of penalties to be assessed, Google reserves the right to seek further division of the trial proceeding.

1

*United States*, 481 U.S. 412, 27 (1987); *see also, e.g.*, *Sec. & Exch. Comm'n v. Life Partners Holdings, Inc.*, 854 F.3d 765, 81-82 (5th Cir. 2017) (same). Unless the action has its roots in the common law—which the States' claims do not[3]—penalties related to a statutory cause of action are *not* issues triable to a jury. *Sec. & Exch. Comm'n v. Jarkesy*, 144 S.Ct. 2117, 2130 & n.11 (2024) (jury trial required where SEC *anti-fraud* penalties were rooted in common law fraud).

## II.     Google's Net Worth Is Irrelevant to Liability.

Even if the jury *could* decide penalties, bifurcation is still warranted because evidence of Google's wealth is not relevant to prove liability. Plaintiffs are flatly wrong to suggest Google's net worth or absolute size is relevant to their antitrust claims. Proof of Google's *market share* in the relevant market(s) and its *market power* does not require—or even permit—proof of Google's overall net worth or its total company revenues.  Instead, *relevant* evidence is that which shows "the defendant's market power and commensurate ability to lessen or destroy competition *in that market*." *Taylor Pub. Co. v. Jostens, Inc.*, 216 F.3d 465, 474 (2000) (quoting *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 455–56 (1993)). Evidence of a company's overall size or net worth is *not* relevant to market share. *Retractable Techs. Inc. v. Becton, Dickinson & Co.*, 2009 WL 8725107, at *2–3 (E.D. Tex. Oct. 8, 2009) (in patent dispute, granting defendant's limine motion on defendant's overall wealth but allowing evidence of defendant's *market share* as relevant to determining a reasonable royalty).

In rejecting an argument identical to Plaintiffs' here, a federal court explained:

> [Plaintiff] argues that a defendant's size is relevant in an antitrust case, as size is "an earmark of monopoly power." . . . ***However, the relevant consideration is not size alone, but rather size within and in relation to the particular markets in question*** . . . . [Defendant's] absolute size and financial strength, or the facts that it

---

[3] *See, e.g.*, *Cruz v. Anderson Restoration, Inc.*, 364 S.W.3d 817, 824 (Tex. 2012) ("the DTPA *did not codify the common law*. . . ."); Tex. Bus. & Comm. Code §15.20 (providing Attorney General a right to recover "a civil fine" upon proof of an underlying violation of the antitrust statute).

is the largest public real estate company in the United States . . . are thus not relevant to proving market power or monopoly power.

***Moreover, this evidence would carry a substantial danger of prejudice*.** . . . [M]arket power and monopoly power are complicated concepts that have very nuanced roles in these claims. . . . ***Those nuances already have the potential to confuse the jury; offering evidence of [Defendant's] absolute size or financial strength would add further potential for confusion, and would also invite the jury to short-circuit this analysis and find that [Plaintiff] has the requisite market power or monopoly power simply because it is the biggest or strongest***.

*Gumwood HP Shopping Partners, L.P. v. Simon Prop. Group, Inc.*, No. 3:11-CV-268 JD, 2016 WL 10706086, at *1–2 (N.D. Ind. Oct. 28, 2016) (excluding evidence of net worth and size).[4]

### III. Penalty Evidence at the Liability Phase Will Only Prejudice the Jury.

Citing no authority, Plaintiffs suggest the *personal wealth* of Google's executives is relevant to liability because compensation provides a "motive" to violate antitrust laws. Dkt 650 at 5. This is wrong. "Evidence of the employees' compensation adds little insight into their motive"—let alone the *company's* motive—and is instead "more aimed at appealing to the jury's sympathies given the wealth and compensation of the defendant and its employees." *Gumwood*, 2016 WL 10706086, at *3. By Plaintiffs' logic, the compensation of *every* executive, including company-derived wealth, would be admissible in **any** trial as relevant to the *company's* motive. Courts have rejected this logic.[5] Here, the risk of impermissible inferences of liability based on wealth are not hypothetical. In the 2.5-hour deposition the Court allowed of Sergey Brin, Plaintiffs'

---

[4] Plaintiffs' cases are inapposite. Dkt. 650 at 4. The court in *In re HIV Antitrust Litigation* allowed evidence of class **plaintiffs'** size and financial condition because it was relevant to plaintiffs' bargaining power and ability to mitigate damages. 2023 WL 5670808, at *15 (N.D. Cal. Mar. 19, 2023). In *S. Pines Chrysler-Plymouth, Inc. v. Chrysler Corp.*, the Court allowed evidence relevant to prove the defendant's "size" *within the relevant market* (market power), not evidence of its overall size or profits. 1986 WL 964, at *3 (M.D.N.C. Apr. 22, 1986)).

[5] *See, e.g., Tuchman v. DSC Communications Corp.*, 14 F.3d 1061, 1069 (5th Cir. 1994) ("Incentive compensation can hardly be the basis on which an allegation of fraud is predicated. On a practical level, were the opposite true, the executives of virtually every corporation in the United States would be subject to fraud allegations.").

3

lead counsel devoted extensive time to questions about his personal wealth and assets. Lead counsel also pressed Neal Mohan, DoubleClick's former CEO (now the President of YouTube) on whether he had "earned the title of Google's $100 million man."[6]

Bifurcation would also serve judicial economy. First, as noted above, net worth evidence—while relevant to DTPA penalties—is not relevant to any issue of liability. For example, Plaintiffs' two experts on DTPA penalties offer no opinions on antitrust or DTPA *liability* at all and so would not testify in the liability phase.[7] Second, bifurcating penalties will potentially save significant time. If Google is found not liable, the jury could be spared several days of prejudicial evidence entirely irrelevant to liability. Finally, Plaintiffs' claimed concerns about having ***two different*** juries deciding related issues (or bringing back the ***same*** jury for a second phase after intervening publicity) are moot. Google seeks only a single jury, and, even if the jury does decide penalties, the "risk" that Plaintiffs cite exists in every bifurcated case and can be addressed by appropriate instructions from the Court.

### IV.   Courts Routinely Bifurcate Punitive Damages to Avoid Undue Prejudice

Plaintiffs invoke a red herring in suggesting that while "punitive damages" are routinely bifurcated, "civil penalties" should not be. There is no reason to treat them differently: factfinders may consider the defendant's net worth in determining the amounts of both types of punishment, so courts routinely bifurcate the determination of the amount of punitive damages to prevent the

---

[6] The undue prejudice of evidence offered under the guise of "civil penalties" on the jury's liability determination goes beyond net worth. For instance, Plaintiffs' expert Mr. DeRamus (whose opinion should be stricken for several reasons, *see, e.g.*, Dkt. 613) intends to opine on ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

[7] *See* Dkt. 613-2 (Andrien Report) ¶ 8 ("***No opinions on liability*** are expressed herein."); Dkt. 613-7 (DeRamus Report) ¶ 5 ("I ***assume***" a jury finding of deceptive conduct in violation of state statutes). Plaintiff did not designate an expert on antitrust penalties.

4

prejudicial effect of such evidence on liability determinations. *State Farm Mut. Auto Ins. Co. v. Campbell*, 538 U.S. 408, 417 (2003). This includes district courts in this Circuit.[8]

Plaintiffs imply an "antitrust exception" to bifurcation where none exists. They cite to cases about bifurcation of liability from *actual* damages (Dkt. 650 at 5), but here, Plaintiffs do not *seek* actual damages. They seek only *statutory penalties* for Google's conduct based on entirely *different* and *independent* evidence, such as Google's net worth or, at its most extreme, their expert's opinion about the amount of penalty required to punish Google's *parent* company by imposing a targeted decline in its stock price. None of this is relevant to whether Google violated antitrust or consumer protection laws.[9] This Court can and should apply its discretion under Rule 42 to bifurcate liability and remedies. *See Fed. Trade Comm'n v. Amazon.com, Inc.*, 2024 WL 4448815, at *25 (W.D. Wash. Sept. 30, 2024) (in suit by FTC and states under antitrust and consumer protection laws, bifurcating liability from remedies served judicial economy).

---

[8] *E.g.*, *Mack v. Specialized Loan Servicing, LLC*, No. 420CV00766SDJCAN, 2022 WL 1552142, at *3 (E.D. Tex. Apr. 26, 2022) (bifurcating to avoid prejudice from net worth evidence; jury instruction would be insufficient to combat prejudice); *Utex Indus., Inc. v. Wiegand*, No. H-18-1254, 2020 WL 5879102, at *2 (S.D. Tex. Oct. 2, 2020) (same); *Dubea v. Simpson*, No. 9:07-CV-63-TH, 2009 WL 10677421, at *1 (E.D. Tex. Mar. 2, 2009) (bifurcating to prevent "Robin Hood" mentality); *United Healthcare Services Inc. v. Synergen Health LLC*, No. 3:20-CV-0301-X, 2023 WL 6471701, at *2 (N.D. Tex. Oct. 4, 2023) (bifurcating to avoid prejudice and for judicial economy); *Transparent Energy, LLC v. Premiere Mktg., LLC*, No. 3:19-CV-3022-BT, 2021 WL 6200910, at *1–2 (N.D. Tex. Dec. 30, 2021) (bifurcating with one jury would "avoid prejudice to either party, enhance the ability of the jury to focus on the issues in front of it, and potentially increase efficiency to the extent the second phase proves unnecessary.").

[9] Plaintiffs' reliance on *Response of Carolina, Inc. v. Leasco Response, Inc.*—where an antitrust trial *was* bifurcated into liability and actual damages phases—is misplaced. 537 F.2d 1307, 1320–21 (5th Cir. 1976). In affirming a directed verdict on liability, the Fifth Circuit held only that bifurcation did not "diminish[] the requirement that a plaintiff show some evidence that the [antitrust] violation caused him injury *before* a defendant is found liable." *Id.* Plaintiffs' interpretation of "the Fifth Circuit's words in *Leasco* to forbid the utilization of a bifurcated trial in virtually any antitrust case" "***is too extreme***." *Campus Cleaners, Inc. v. Dallas Tailor & Laundry Supply*, 25 Fed. R. Serv. 2d 1003 (S.D. Tex. 1977).

5

Dated: November 5, 2024	Respectfully submitted,

                        **GIBBS & BRUNS LLP**

                        */s/ Kathy D. Patrick*
Kathy D. Patrick
Texas Bar No. 15581400
kpatrick@gibbsbruns.com
Ayesha Najam
Texas Bar No. 24046507
anajam@gibbsbruns.com
Charles Rosson
Texas Bar No. 24074985
crosson@gibbsbruns.com
1100 Louisiana, Suite 5300
Houston, Texas 77002
Tel.: 713.650.8805
Fax.: 713.750-0903

Eric Mahr (*pro hac vice*)
Julie S. Elmer (*pro hac vice*)
FRESHFIELDS BRUCKHAUS DERINGER LLP
700 13th Street NW, 10th Floor
Washington, D.C. 20005
(202) 777-4545
eric.mahr@freshfields.com
julie.elmer@freshfields.com

Daniel S. Bitton (*pro hac vice*)
AXINN, VELTROP & HARKRIDER LLP
55 Second Street
San Francisco, CA 94105
(415) 490-1486
dbitton@axinn.com

Bradley Justus (*pro hac vice*)
James K. Hunsberger (*pro hac vice*)
David R. Pearl (*pro hac vice*)
AXINN, VELTROP & HARKRIDER LLP
1901 L Street NW
Washington, DC 20036
(202)912-4700
bjustus@axinn.com
jhunsberger@axinn.com
dpearl@axinn.com

6

ATTORNEYS FOR
DEFENDANT GOOGLE LLC

## CERTIFICATE OF SERVICE

I certify that on November 5, 2024, this document was filed electronically in compliance with Local Rule CV-5(a); notice of this filing was served on all counsel who have consented to electronic service. In addition, this sealed document will be promptly served by email to counsel of record for all parties.

/s/ *Kathy Patrick*
Kathy Patrick

## CERTIFICATE OF SEALING

I certify that on November 5, 2024, a motion to seal the foregoing document was filed separately and immediately before the filing of this document under seal, pursuant to Local Rule CV-5(a)(7)(B).

/s/ *Kathy Patrick*
Kathy Patrick