# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

UNITED STATES OF AMERICA, et al.,        )
                                          )
                  Plaintiffs,             )
                                          )
        v.                                )    1:23-cv-108 (LMB/JFA)
                                          )
GOOGLE LLC,                               )
                                          )
                  Defendant.              )

MEMORANDUM OPINION

Before the Court is defendant Google's Motion to Dismiss the United States' Damages

Claim as Moot and to Strike the Jury Demand, [Dkt. No. 628] ("Motion to Dismiss and Strike"

or "Mot."). In support of its motion, Google puts forward two arguments, one rooted in the

Seventh Amendment to the United States Constitution and the other in the justiciability doctrine

of mootness. The United States and seventeen other plaintiff states oppose the motion and ask

that all claims in the Amended Complaint be tried to a jury. [Dkt. No. 690] ("Opp."). Oral

argument on the motion has been heard, and for the reasons that follow, Google's Motion to

Dismiss and Strike will be granted and the jury demand will be stricken.

I. BACKGROUND

The Amended Complaint alleges that the United States purchased "in excess of $100

million in open web display advertising" from Google, and as authorized by federal statute, the

United States seeks to recover damages from Google based on its alleged overcharges on those

purchases that resulted from its anticompetitive conduct.[1] [Dkt. No. 120] ("Amend. Compl.") at

_____

[1] The Antitrust Division of the United States Department of Justice has authority under 28 C.F.R. § 0.40 to seek recovery on behalf of the United States for damages to its business or property

¶ 278; see also id. at ¶ 342 (seeking structural equitable relief on Counts I through IV).[2]  When the Amended Complaint was filed, the allegation was supported by an expert witness analysis showing that the United States purchased more than $70 million in open web display advertising exclusively using Google advertising technology ("ad tech") tools, which did not include open web display advertising purchased using third-party buying tools or third-party exchanges. During the course of this litigation, the United States reduced its damages claim to relevant purchases made by eight federal agencies that purchased open web display advertising from Google: the Postal Service, the Census Bureau, the Department of Veterans Affairs, the National Highway Traffic Safety Administration, the Centers for Medicare & Medicaid Services, the Army, the Navy, and the Air Force (collectively, the "federal agency advertisers" or "FAAs").

In early September 2023, after Google moved to compel a calculation of damages, [Dkt. No. 406], United States Magistrate Judge John F. Anderson ordered the United States to provide supplemental interrogatory responses explaining its damages calculation, [Dkt. No. 447] at 23:25-25:1.  On September 29, 2023, the United States attached a specific number to its damages request, estimating that damages to the eight federal agency advertisers ranged between $3.2 and $9.2 million, before trebling and pre-judgment interest.  [Dkt. No. 632-3] at 2-6 ("Supplemental Response to Interrogatory No. 9").

In discovery, the United States offered two experts to support its damages calculation: Dr. Timothy Simcoe, who calculated alleged overcharge percentage rates paid by the federal agency advertisers based on a hypothetical competitive market, and Ms. Adoria Lim, who used Simcoe's rates to calculate the alleged damages suffered by the United States due to Google's

---

under 15 U.S.C. § 15a.  Under that authority, the Antitrust Division has discretion about whether, and on whose behalf, to bring such claims for damages.

[2] The seventeen states that have joined this civil action have not asserted a claim for damages.

allegedly anticompetitive conduct.[3]  In their expert reports, Simcoe and Lim addressed various

damages-related topics, including what fees Google would have been able to charge in a

hypothetical "but-for" market in which it had not engaged in anticompetitive conduct ("but-for

take rates"), and how those overcharges were borne by Google's advertiser and publisher

customers.[4]

In February 2024, Lim produced her expert report calculating the amount by which the

eight federal agency advertisers were allegedly overcharged by Google.  Her report relied in part

on the expert report of Simcoe, who calculated "the alternative percentage that Google's ad

exchange would have retained from advertisers who purchased display advertisements on the

open web absent Google's alleged anticompetitive conduct," i.e., the but-for take rate.  [Dkt. No.

601-1] at 11.  Lim did not "independently evaluate [Simcoe's] analysis, but rather use[d] it as an

input to calculate overcharges and advertiser damages."  Id.

Lim calculated that the United States, through the eight federal agency advertisers,

suffered actual damages between $164,189 and $745,152, before trebling and prejudgment

interest, based on the but-for take rates of 16.6%, 16.2%, and 10%.  Lim's calculations are

reflected in Figure 19 of her expert report, reproduced below:

---

[3] The United States originally retained Dr. Thomas Respess III to perform the damages
calculation analysis.  On February 12, 2024, one day before Respess's rebuttal report was due,
the United States informed Google that Respess was withdrawing from the case for personal
reasons and that Lim, who served in a consulting capacity to Respess, would be serving in his
place and offering a rebuttal report.  In her rebuttal report, Lim adopts Respess's initial report in
full, including "the opinions, analysis, and abbreviations noted therein."  Lim attaches Respess's
initial report as an appendix to her rebuttal report.  See [Dkt. Nos. 577 & 652].

[4] Google has filed two Daubert motions with respect to the United States' damages experts.
Those motions are currently pending before the Court.  [Dkt. No. 575] ("Google's Motion to
Exclude Opinion Testimony of Adoria Lim"); [Dkt. No. 578] ("Google's Motion to Exclude
Opinion Testimony of Dr. Timothy Simcoe").

| But-For Take Rate | AdX Overcharge to FAAs [A] | Platform Fees Overcharge to FAAs [B] | Total Damages to FAAs [C] = [A] + [B] |
|---|---|---|---|
| **Figure 19: Summary of Damages to FAAs** **January 25, 2019 – January 24, 2023** | | | |
| **10.0%** | $676,779 | $68,373 | $745,152 |
| **16.2%** | 181,728 | 17,672 | 199,399 |
| **16.6%** | 149,789 | 14,401 | 164,189 |

[Dkt. No. 601] at 37.

Lim then trebled the total damages and added prejudgment interest, resulting in actual damages between $504,531 using the 16.6% but-for take rate and $2,289,751 using the 10% but-for take rate, as represented below in the final column of Figure 1 of Lim's expert report:

| But-For Take Rate [A] | AdX Overcharge [B] | Platform Fees Overcharge [C] | Total Damages [D] = [B] + [C] | Prejudgment Interest (PJI) [E] | Treble Damages [F] = [D] x 3 | PJI + Treble Damages [G] = [E] + [F] |
|---|---|---|---|---|---|---|
| **Figure 1: Summary of FAA Damages and Prejudgment Interest** | | | | | | |
| 10.0% | $ 676,779 | $ 68,373 | $ 745,152 | $ 54,293 | $ 2,235,457 | $ 2,289,751 |
| 16.2% | 181,728 | 17,672 | 199,399 | 14,529 | 598,198 | 612,727 |
| 16.6% | 149,789 | 14,401 | 164,189 | 11,963 | 492,568 | 504,531 |

[Dkt. No. 601-1] at 13.

Importantly, in his expert report, Simcoe found that Google had been charging an average take rate of 19.8% during the relevant period; nowhere in his report did he offer support that 10% would be the appropriate take rate in a competitive market. Lim used the 10% but-for take rate in her calculations only at the request of the United States. [Dkt. No. 577] at 6.

Plaintiffs have demanded a jury trial on all issues properly triable to a jury in accordance with Fed. R. Civ. P. 38(b). Amend. Compl. at ¶ 343. The Clayton Act provides the United

States with a procedural right of action for Count V, its treble damages claim, 15 U.S.C. § 15a, while the Sherman Act, 15 U.S.C. §§ 1, 2, 4, contains the substantive prohibitions that give rise to the antitrust action, and "the right to trial by jury applies to treble damages suits under the antitrust laws . . . ," Beacon Theatres, Inc. v. Westover, 359 U.S. 500, 504 (1959). In its Answer to the Amended Complaint, Google likewise demanded a jury trial "on all issues so triable." [Dkt. No. 208] at 55-56.

On April 26, 2024, Google filed its motion for summary judgment. [Dkt. No. 569]. On May 16, 2024, one day before plaintiffs' opposition to the motion for summary judgment was due, Google had a cashier's check in the amount of $2,289,751, which it claims reflects the most generous amount of damages suffered by the federal agency advertisers, delivered to the Antitrust Division of the United States Department of Justice. That figure was calculated using the 10% but-for take rate contained in Lim's expert report, trebled plus prejudgment interest through June 30, 2024. Google asserts that the payment extinguishes the United States' damages claim and, as a result, the right to a jury trial.

In a letter to the Executive Officer of the Antitrust Division accompanying the cashier's check, Google's counsel stated that it was "voluntarily tendering" payment "for the full amount of damages alleged by the United States." [Dkt. No. 632-5]. The letter also stated that the cashier's check "should not be construed either as an admission that Google is liable in this action, or that the United States has suffered any damages." Id. That check remains uncashed. On that same day, Google filed the instant Motion to Dismiss and Strike.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 39(a)(2) permits a party to move to strike an opposing party's jury demand when the party demanding a jury trial has no such right. See Francis v.

Dietrick, 682 F.2d 485, 487 (4th Cir. 1982).  Rule 39 "does not include a time limit," and

"nothing prevents the court from granting a Motion to Strike brought pursuant to [Rule] 39(a)

where, as here, the parties are months away from trial."  Fluor Enters., Inc. v. Mitsubishi Hitachi

Power Sys. Ams., Inc., 2019 WL 1620755, at *5 (E.D. Va. Apr. 16, 2019).

   "To qualify as a case fit for federal-court adjudication, an actual controversy must be

extant at all stages of review, not merely at the time the complaint is filed."  Carter v. Fleming,

879 F.3d 132, 136-37 (4th Cir. 2018) (internal quotation omitted); U.S. Const. art. III, § 2

(limiting a federal court's power to "Cases" or "Controversies").  "If the court determines at any

time that it lacks subject-matter jurisdiction" over a claim, including because the claim is moot, it

must dismiss the claim. Fed. R. Civ. P. 12(h)(3).  "Because the requirement of a live controversy

applies independently to each form of relief sought, it is appropriate to address each form of

relief separately."  McArthur v. Braband, 610 F. Supp. 3d 822, 835 (E.D. Va. 2022) (internal

quotation omitted).  Challenges to subject-matter jurisdiction may be heard "at any time."  Fed.

R. Civ. P. 12(h)(3); see also Church of Scientology v. United States, 506 U.S. 9, 12 (1992).

### III. DISCUSSION

#### A. **Mootness**

   Mootness arises when a plaintiff receives all the relief that has been requested or could be

awarded in the case.  See Alvarez v. Smith, 558 U.S. 87, 92-94 (2009); Simmons v. United

Mortg. & Loan Inv., LLC, 634 F.3d 754, 763 (4th Cir. 2011).  Once whole, a plaintiff lacks a

"personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be

redressed by the requested relief."  Allen v. Wright, 468 U.S. 737, 751 (1984).  Consequently,

when a plaintiff does not stand to gain from a judicial decision, "the decision enters the

forbidden territory of advice."  Jarrett v. United States, 79 F.4th 675, 678 (6th Cir. 2023) (citing

Mills v. Green, 159 U.S. 651, 653 (1895)).

As a result of tendering what it characterizes as the "maximum amount" of damages that the United States could have received if Count V had gone to trial, Google now seeks dismissal of the claim "as moot because there is no longer a case or controversy as to damages, a prerequisite for Article III jurisdiction." See Mot. at 3, 12.  In opposition, the United States insists that Google has not mooted its damages claim because the cashier's check "did not actually compensate the United States for the full extent of its claimed damages."  Opp. at 3.

The United States Supreme Court has held that a defendant's "offer" of relief does not make a plaintiff whole or deprive a court of subject-matter jurisdiction if the offer is "unaccepted," and thus the case does not become moot. See Campbell-Ewald Co. v. Gomez, 577 U.S. 153, 156, 165 (2016).  Relying on traditional contract principles, Justice Ginsburg, writing for the majority in Campbell-Ewald, explained that because a defendant may revoke an offer or fail to follow through—and because offers generally come with conditions—an offer does not give the plaintiff everything sought in the complaint. Id. at 156, 165.  As relevant here, the Supreme Court reserved the question whether a defendant may moot a claim by "depositing the full amount of the plaintiff's individual claim in an account payable to the plaintiff" or by otherwise tendering complete relief.  Id. at 165-66.

In dissent, the Chief Justice, joined by Justices Scalia and Alito, expounded that the majority's holding was "limited to its facts" because "payment of complete relief," such as by "deposit[ing] the offered funds with the District Court" or otherwise guaranteeing payment, requires dismissal of a claim as moot. Id. at 184 (Roberts, C.J., dissenting); see also id. at 188 (Alito, J., dissenting) ("Today's decision thus does not prevent a defendant who actually pays complete relief—either directly to the plaintiff or to a trusted intermediary—from seeking dismissal on mootness grounds."); id. at 172 (Thomas, J., concurring) ("Because Campbell-

7

Ewald only offered to pay Gomez's claim but took no further steps, the court was not deprived of jurisdiction."). The majority did not dispute that actual payment of complete relief could moot a case, but instead deemed the question "appropriately reserved for a case in which it is not a hypothetical." Id. at 166 (Ginsburg, J.).

The question left open in Campbell-Ewald has been answered by many lower federal courts. For example, in support of its motion, Google cites to Jarrett v. United States, 79 F.4th 675 (6th Cir. 2023). There, plaintiff Joshua Jarrett sued the Internal Revenue Service seeking a tax refund, and during the pendency of his lawsuit, the IRS issued him a refund check for the full amount of damages he sought plus interest. Even so, Jarrett refused to cash the check. Id. at 677. Chief Judge Sutton, writing for a unanimous Sixth Circuit panel, held that the government's payment mooted Jarrett's case because granting him "the full sum without stipulation or condition" gives him all the relief he could have received. Id. at 678. The court explained that ample Supreme Court precedent supported the distinction between offers of relief and actual payments, the latter being distinguishable from the facts presented in Campbell-Ewald and thus sufficient to moot a damages claim. See id. at 679 (collecting cases). The court also reached this conclusion at the request of the United States, which argued that "full payment of a claim moots a suit for the recovery of the claimed amount." Brief for Appellee United States, Jarrett v. United States, 2023 WL 2825353, at *26–*30 (6th Cir. Mar. 30, 2023). In that same brief, the United States further insisted that a "plaintiff may not prolong a case merely by refusing to accept a valid tender." Id. at *30.

Numerous other lower court decisions say the same thing—specifically, that the tender of complete relief moots a claim for damages. See, e.g., Radha Geismann, M.D., P.C. v. ZocDoc, Inc., 909 F.3d 534, 542 (2d Cir. 2018) (recognizing that mootness may arise when a defendant

surrenders "complete relief"); Duncan v. Governor of the Virgin Islands, 48 F.4th 195, 206 (3d Cir. 2022) (acknowledging that "[s]mall claims for cash can always be mooted swiftly with payment of the amount claimed"); Chen v. Allstate Ins. Co., 819 F.3d 1136, 1145 (9th Cir. 2016) (stating a "consistent" view that "a claim becomes moot once the plaintiff actually receives all of the relief to which he or she is entitled on the claim" (emphasis omitted)); Russell v. United States, 661 F.3d 1371, 1375 (Fed. Cir. 2011) (delivering a check mooted a claim for damages); McDermott v. United States, 95 Fed. Cl. 70, 75 (2010) (similar); Kuntze v. Josh Enters., Inc., 365 F. Supp. 3d 630, 642 (E.D. Va. 2019) (Davis, C.J.) ("[W]hen an individual plaintiff receives complete relief for her claims, that plaintiff no longer has a live case or controversy.").

In the Fourth Circuit, an unpublished decision issued after Campbell-Ewald briefly addressed the impact of an attempted payment of complete relief on the ongoing viability of a damages claim. See Bennett v. Office of Fed. Emp.'s Grp. Life Ins., 683 F. App'x 186 (4th Cir. 2017) (unpublished) (per curiam). In Bennett, a panel of the Fourth Circuit held that the case was not moot when the plaintiff returned a check for the full amount of relief because the act of returning the check made the payment an unaccepted settlement offer.[5] Id. at 188-89. The court did not directly address the hypothetical question left open in Campbell-Ewald as to whether actual payment of full relief moots a claim, nor did it analyze case law from other jurisdictions addressing that question. Additionally, the court did not expound upon what would happen if the check were not returned or if the defendant had made a more guaranteed form of payment, such as a cashier's check or a deposit in an account payable to the plaintiff. Therefore, as Chief Judge

---

[5] The Fourth Circuit's opinion, as well as the parties' briefs, describe the financial instrument as a "check," not a cashier's check. See Bennett, 683 F. App'x at 188-89; Informal Response Brief of Appellees at 13-14, Bennett, 683 F. App'x 186, 2016 WL 2772693, at *11-*14.

Davis explained in <u>Kuntze</u>, the hypothetical question raised in <u>Campbell-Ewald</u> remains unanswered in the Fourth Circuit. <u>See</u> 365 F. Supp. 3d at 642.

Although there is no controlling Fourth Circuit precedent on this issue, at least two district court cases from within the Fourth Circuit support the proposition that payment of complete relief moots a claim for damages. First, in <u>Price v. Berman's Auto., Inc.</u>, the defendant provided a cashier's check to the plaintiffs for the full amount of relief. Plaintiffs promptly rejected and returned the check. 2016 WL 1089417, at *3 (D. Md. Mar. 21, 2016). The court held that, because the plaintiffs returned the cashier's check before the court ruled on the pending motion, the claim was not moot at that time; however, if the defendant reissued the cashier's check to the plaintiffs and renewed its motion, the court would grant the motion to dismiss the claims as moot. <u>Id.</u> at *2-*3. The <u>Price</u> court reasoned that a cashier's check would be adequate to moot a claim because the plaintiffs would possess all the money to which they would have been entitled if they had prevailed through litigation. <u>Id.</u> at *2.[6] Second, in <u>Gray v. Kern</u>, citing to the dissents in <u>Campbell-Ewald</u>, the court held that actual payment of complete relief would moot a claim. 143 F. Supp. 3d 363, 366-67 (D. Md. 2016), <u>rev'd on other grounds</u>, 702 F. App'x 132, 143 (4th Cir. 2017) (unpublished).

Taken together, the Court is satisfied that a defendant may moot a damages claim by depositing the full amount sought by a plaintiff in an account payable to the plaintiff or by otherwise tendering complete relief in the form of a guaranteed form of payment, such as a cashier's check.

---

[6] The <u>Price</u> court emphasized the important distinction between a cashier's check and, for example, a personal check, because the latter poses a "legitimate risk of non-payment" should "the defendant's check turn out to be defective" and would then require the court to "enforce the judgment." 2016 WL 1089417, at *2. Here, because Google tendered a cashier's check, which has been guaranteed by the issuing bank, there is no legitimate risk of non-payment.

With that principle established, in its Motion to Dismiss and Strike, Google argues that "it has in fact paid the United States every dollar the United States could conceivably hope to recover under the damages calculation of the United States' own expert." Mot. at 15. Accordingly, Google maintains that the United States' damages claim is moot, and therefore must be dismissed for lack of subject-matter jurisdiction. Id. In opposition, the United States argues that its damages claim has not been satisfied because the "cashier's check that Google delivered did not reflect the maximum amount that the United States could recover at trial, nor did Google present the check without conditions." Opp. at 7. Each of the United States' two arguments will be addressed in turn.

First, the parties dispute whether the amount of the cashier's check is the "full amount" that the United States could possibly recover at trial on its damages claim. Generally, a payment cannot satisfy a damages claim unless a plaintiff "could not possibly recover more" than the tendered amount "if her case proceeded to a jury trial." Warren v. Sessoms & Rogers, P.A., 676 F.3d 365, 372 (4th Cir. 2012).[7] Here, Google's cashier's check was based on the 10% but-for take rate in Lim's expert report: $2,289,751, which she calculated using damages of $745,152, trebling that amount, and adding prejudgment interest. The United States, however, argues that the evidence produced during discovery "could" support a reasonable inference that Google's but-for take rate in a more competitive market may be closer to 5%, which would increase the total potential damages. Opp. at 10.

In support of the 5% but-for take rate figure, the United States cites to three pieces of evidence: a portion of Simcoe's expert report which included one example of a take rate lower

_____

[7] Read in context, the Warren court made clear that because the case was an appeal of a motion to dismiss, the court lacked a sufficient record, such as "an evidentiary hearing or judicial fact finding in the district court," on which to evaluate plaintiff's damages claim. 676 F.3d at 372.

than 10%; Figure 38 of Lim's expert report; and a series of internal Google emails discussing strategic reasons to consider using a take rate below its 20% rate.  Opp. at 9-10 (citing [Dkt. No. 640-1] at ¶¶ 12, 236 & n.253; [Dkt. No. 673-17]; [Dkt. No. 652-11]; [Dkt. No. 673-18]).  The United States claims that "[i]f the jury were to agree with that evidence, as it reasonably could, then the United States' damages would be as much as $1,188,711, before trebling or pre-judgment interest, and $3,652,824 after trebling and prejudgment interest."  Opp. at 10.[8]  The United States then likens the tendered cashier's check to a mere offer for an insufficient amount which can be rightly rejected under the reasoning of the majority in Campbell-Ewald.

Although the United States argues that Google's take rate in a competitive market should be between 5% and 15%, Opp. at 17, it has never clearly advanced that position in its expert disclosures, or before opposing Google's Motion to Dismiss and Strike.  For example, Simcoe's expert report includes a summary chart of Google's average take rate and the average take rates of nine ad tech competitors.  With the exception of one competitor, all of the average take rates charged by the ad tech companies hover between 15% and 20% for the preceding five years, as reproduced below in Figure 4 of Simcoe's expert report.  The one outlier competitor represents a take rate closer to 8.2% for all years, except 2022 when it dips below 5%.  In his deposition, Simcoe explained that he considered internal Google documents discussing the appropriate take rates, as well as competitor average take rates, in drafting his report, but he expressly disclaimed

---

[8] Since submitting its opposition to Google's Motion to Dismiss and Strike, the United States has revised its preferred damages figure, lowering it to $3,642,190, due to a previous miscalculation.  See [Dkt. No. 731-1] ("Unfortunately, we noticed in our review that the damages figure we used in our brief . . . incorrectly incorporated the wrong amount for the Total AdX Overcharge taken from Lim Figure 38. . . . We apologize for any confusion in that regard.").  Google argues that this revision underscores the fluctuating nature of the United States' current damages claim, one that was not previously calculated and disclosed in Lim's expert report, and instead is being calculated in real-time by the United States in response to the motion.

offering an opinion that supported the use of a but-for take rate at or below 10%. [Dkt. No. 731] at 3 (citing deposition testimony). Importantly, no expert for the United States expressly relied on a 5% but-for take rate in calculating the federal agency advertisers' alleged damages, nor did the experts include any analysis or calculation of a 5% (or lower) but-for take rate in the reports filed in this case.



[Dkt. No. 644-1] at 12.

It is unclear how the United States settled on the 5% but-for take rate figure, which it now claims is the correct figure on which to base its maximum possible damages award. In its sur-reply and during oral argument, the United States claims that the record contains evidence of but-for take rates as low as 2%, or perhaps even lower at 1%. [Dkt. No. 740] at 1 ("Google's own employees suggested take rates of 5% (and lower)."). The United States offers no principled reason for why it has paused the sliding damages scale at the 5% but-for take rate, other than it is a figure appearing somewhere in the record. Opp. at 10. Although there are scant pieces of

evidence discussing lower take rates, there is no corresponding damages calculation—resulting in a precise dollar figure—provided by any of the United States' experts. The damages figure now asserted by the United States appeared only in the course of briefing this motion, and does not appear plainly in any of the United States' expert reports.

The United States has also posited that Figure 38 of Lim's report could provide a sufficient basis on which a jury could award damages based on a 5% but-for take rate; however, as Google explained, Figure 38 appears in an appendix and was not offered to support a damages calculation; it is a "sensitivity analysis" showing calculations using different but-for take rates, highlighting in red boxes the but-for take rates contained in Simcoe's report. There is no red box around a 5% but-for take rate, indicating that Lim did not rely on it in arriving at her conclusions. Moreover, Figure 38 applies only to AdX overcharges; it does not include platform fee overcharges, which are part of Lim's damages calculations in Figures 1 and 19. Stated more plainly, Figure 38 excludes a crucial part of the damages equation.

At oral argument, the United States conceded that the jury would not have all the information required to arrive at a damages figure by simply looking at the numbers in Figure 38. Given this concession, the United States' insistence on a damages figure that is higher than what its expert, Lim, calculated would impose an unreasonable burden on the jurors by requiring them to calculate a damages amount without the aid of an expert report informing them as to the corresponding dollar amount associated with a particular take rate. Moreover, calculating a but-for take rate "nearly always requires the use of an expert economist or statistician" and "estimating this hypothetical situation is exceedingly difficult." See Phillip E. Areeda & Herbert Hovenkamp, Antitrust Law: An Analysis of Antitrust Principles and Their Application, at

14

¶¶ 340a2. 340b (5th ed. 2023).  Although Lim included Figure 38 in her expert report, she provided damages calculations that rely only on the 10%, 16.2%, or 16.6% but-for take rates.

Most fatal to the United States' protestation over the possible but-for take rate is its concession in its opposition to Google's motion for summary judgment.  Consistent with E.D. Va. Local Rule 56(B), Google's motion for summary judgment contained a section titled Statement of Undisputed Facts ("SUF"), listing 97 material facts Google deemed uncontested in this litigation.  SUF 85 referred to the range of the United States' damages claim, and provided that:

> Plaintiffs claim less than a million dollars in damages—by their calculations as little as $164,189 or at most $745,152 (before trebling and pre-judgment interest)—on behalf of eight federal advertising agencies ("FAAs") who allegedly suffered injury between January 2019 and January 2023 when advertising agencies purchased "open-web display ads" on the FAAs' behalf.

[Dkt. No. 571] at ¶ 85.

On May 17, 2024, one day after the United States received Google's cashier's check, the United States filed its opposition to Google's summary judgment motion.  Although it contested the factual accuracy of 66 of Google's 97 SUFs, the United States did not dispute the damages range set forth in SUF 85, or provide any alternate fully-calculated damages amount or computation in response to SUF 85.  See [Dkt. No. 669].  Indeed, the United States' response to Google's SUF section begins with the statement: "Plaintiffs do not dispute the following Statements of Undisputed Fact ("SUFs"): 1, 3, . . . 85 . . . ." [Dkt. No. 669] at 4.  That sentence ended with a global footnote in which the United States merely disputed "the vague, subjective, and self-serving terminology included in many SUFs . . . including the phrases 'as little as' or 'at most' in SUF 85." Id. at 4 n.1.  Nothing in that footnote disputed the calculated amounts set forth in SUF 85.  Id.  In stark contrast to the United States' response to SUF 85, when the United

States disagreed with an SUF, it provided a specific, detailed response with citations to the record supporting its opposition.[9]

As Google correctly argues, the United States' failure to object to the damages range in SUF 85—after being put on notice of Google's position with respect to the United States' maximum amount of damages—constitutes an admission, specifically, that the maximum amount of damages the United States could receive was $745,152 before trebling and prejudgment interest. If the United States believed that its maximum damages amount was greater, it had to dispute SUF 85 and explain the basis for its calculation in its opposition to Google's motion for summary judgment. It did not. The United States' failure to oppose SUF 85 constitutes a judicial admission. See Meyer v. Berkshire Life Ins. Co., 372 F.3d 261, 264 (4th Cir. 2004); Meyer v. Berkshire Life Ins. Co., 372 F.3d 261, 264-65 (4th Cir. 2004) (affirming the district court's finding that the defendant's "waiver" of a legal defense that was made in a reply memorandum constituted a judicial admission, further explaining that "[j]udicial admissions are not . . . limited to affirmative statements that a fact exists" but also include "intentional and unambiguous waivers that release the opposing party from its burden to prove the facts necessary to establish the waived conclusion of law").

During oral argument, the United States insisted that it "made clear" in its opposition to Google's motion for summary judgment that the Google's take-rate could be between 5% and 15%. The United States bases that argument on references to certain internal Google emails in which employees suggested that a take rate could be between 5% and 15% to reflect the market.

---

[9] For example, in SUF 33, Google stated: "Plaintiffs' experts do not opine that Google's acquisition of DoubleClick was anticompetitive or exclusionary." [Dkt. No. 571] at 15 (citations omitted). In opposition to SUF 33, plaintiffs responded that "Plaintiffs' experts opine that the DoubleClick acquisition was a necessary first step to Google's exclusionary course of conduct." [Dkt. No. 669] at 7 (citations omitted).

[Dkt. No. 669] at 17. Those emails—plucked from the millions of documents produced in discovery—are insufficient to sustain the United States' claim for damages at the 5% but-for take rate, because the United States' damages expert, Lim, did not rely on them to calculate a damages figure corresponding to that but-for take rate and the United States did not include the corresponding dollar figure in any of its briefing before opposing Google's Motion to Dismiss and Strike.

The United States may not transform its damages claim into a moving target at this late stage in the litigation. Under Fed. R. Civ. P. 26(a)(1)(A)(iii), the United States was required to provide:

> A computation of each category of damages by the disclosing party—who must also make available . . . the documents or other evidentiary material . . . on which each computation is based, including materials bearing on the nature and extent of injuries suffered.

Fed. R. Civ. P. 26(a)(1)(A)(iii). "[A] party's Rule 26(a)(1)(A)(iii) disclosure must state the types of damages that the party seeks, must contain a specific computation of each category, and must include documents to support the computation." Silicon Knights, Inc. v. Epic Games, Inc., 2012 WL 1596722, at *1 (E.D.N.C. May 7, 2012). "District courts have therefore correctly held that, where a party only discloses a lump sum or merely refers to documents from which the opposing party can presume damages, the disclosing party has not met its obligation." Adv. Training Grp. Worldwide, Inc. v. Proactive Techs. Inc., 2020 WL 4574493, at *5 (E.D. Va. Aug. 7, 2020).

The United States was required to disclose to Google a computation of each category of damages claimed pursuant to Rule 26(a). If a party fails to turn over the calculation, Rule 37(c) provides that exclusion of such evidence is the appropriate remedy, "unless the failure to disclose is harmless or was substantially justified." Advanced Training, 2020 WL 4574493, at *4; Fed.

R. Civ. P. 37(c)(1). The Fourth Circuit instructs courts to apply the following factors in determining whether a party's non-disclosure was "substantially justified or harmless": (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the non-disclosing party's explanation for its failure to disclose the evidence. S. States Rack & Fixture, Inc. v. Sherwin-Williams Co., 318 F.3d 592, 597 (4th Cir. 2003).

Many of these factors cut against the United States' late-arriving damages figure. For example, the United States' 5% but-for take rate damages request is inconsistent with the damages figures presented in Figures 1 and 19 of Lim's expert report, which yield a damages range of $164,189 to $745,152 based on but-for take rates of 10%, 16.2%, and 16.6%. See supra at 4. Google relied on the United States' disclosure in tendering the cashier's check for the greatest damages amount, trebled with prejudgment interest. As Google correctly argues in its reply brief:

> It would be highly prejudicial to Google—after . . . fact and expert discovery, after summary judgment (including DOJ's admission on damages) and Daubert briefing—for DOJ to advance a new damages theory and number. There is no way to cure the surprise, and the associated prejudice, without reopening discovery to understand the basis for the calculation, including the support DOJ now claims for a 5% revenue share—especially because no expert or fact witness has provided support that 5% is a revenue share that would be charged in a but-for world, i.e., absent alleged anticompetitive conduct.

[Dkt. No. 731] at 12 (cleaned up).

Allowing the United States to proceed with a new damages calculation based on a but-for take rate that was not fleshed out by their principal damages expert would run counter to the

purpose of Rule 26(a), which is to allow parties "to adequately prepare their cases for trial and to avoid unfair surprise." Bresler v. Wilmington Tr. Co., 855 F.3d 178, 190 (4th Cir. 2017).

For these reasons, the Court declines to adopt the United States' now-preferred damages figure and finds that the highest amount of damages the United States could recover at trial on Count V—based on Lim's expert report and the United States' admission by not opposing SUF 85—is $2,289,751, which has been calculated using a but-for take rate of 10% based on an overcharge of $745,152, trebled plus prejudgment interest.

In its second argument, the United States claims that Google's cashier's check was insufficient because "it was premised on the payment 'not be[ing] construed either as an admission that Google is liable in this action, or that the United States has suffered any damages.'" [Dkt. No. 632-5] at 1. Although disclaiming liability could be negotiated in a bilateral settlement agreement, the United States contends that when a party acts unilaterally to satisfy a claim, it cannot insist on such caveats, which are akin to contractual conditions being placed on the payment that would disqualify it from mooting the claim. Opp. at 13 (distinguishing Jarrett by arguing that, unlike this case, Jarrett involved "full and unconditional payment" of the amount the plaintiff had overpaid to the government in taxes and the IRS conceded the plaintiff's overpayment).

The United States reads the language in Jarrett for more than it is worth. In Jarrett, the Sixth Circuit acknowledged that the government had not admitted liability or agreed to an entry of judgment. "But that is not the measure of mootness," the court explained. 79 F.4th at 681. Rather, mootness arises "even though the parties 'continue to dispute the lawfulness of the conduct that precipitated the lawsuit.'" Id. (citing Already, LLC v. Nike, Inc., 568 U.S. 85, 91 (2013)). Such a position, in the context of retrospective money-damages claims, allows a party

to resolve a claim while not requiring it "to cede the issue for all future years.  One reasonable explanation for mooting a case is a party's partial, but not finally resolved, doubt about a litigation position."  Id.; see also Alvarez v. Smith, 558 U.S. 87, 93, 97 (2009) (explaining that a unilateral grant of relief mooted a claim without concession of liability).

Because Google need not concede liability, all that remains of the United States' second argument is that Google is "unilaterally precluding [p]laintiffs from arguing at trial that Google's payment is evidence of both damages and liability.  Opp. at 12.  Not so.  Google's statement that a voluntary tender "is not and should not be construed . . . as an admission" is a statement describing Google's position that it is not affirmatively admitting liability or damages by making the payment; nothing more.  And it is nonbinding on the Court.  At trial, the Court can determine what evidence and arguments are admissible as to liability on Counts I, II, III, and IV.[10]

Having received tender for the full amount of the United States' claimed damages, trebled with prejudgment interest, the United States is not entitled to receive any further relief on its damages claim.  That the United States has refused to deposit Google's cashier's check is of no consequence.  The Court "see[s] no reason that mootness should turn on what a [party] does

---

[10] The United States cites to several cases in which a defendant's tender of a check did not moot the dispute, thus attempting to frame Google's conduct as an offer of settlement, not a resolution of its damages claim.  The defendant in many of these cases turned the check over to the district court, not the plaintiff.  See, e.g., Fulton Dental, LLC v. Bisco, Inc., 860 F.3d 541, 545 (7th Cir. 2017) (depositing funds under Civil Rule 67).  As the Jarrett court explained, such a deposit still means the district court must resolve some component of the case, usually through a settlement, and thus runs the risk of leaving the plaintiff emptyhanded.  No further involvement of the Court is required here.  Moreover, Campbell-Ewald involved a putative class action.  There, complete relief, including incentive payments for lead plaintiffs, may have exceeded the value of a lead plaintiff's damages claim.  Jarrett, 79 F.4th at 680.  "Some courts worry about the risk that defendants will 'pick off' the lead plaintiff to deny relief to the remainder of the class, prompting them to apply 'special mootness rules' to collective litigation."  Id. (cleaned up).  "However sensible these mootness exceptions for class litigation may be, there is no comparable reason to depart from the usual rule that a full tender by a solvent defendant moots a damages claim in run-of-the-mine cases."  Id.

with a check any more than it should turn on whether he burns a full cash payment on the spot."
Jarrett, 79 F.4th at 680 (Sutton, C.J.).

Guided by these standards, the Court finds that Google's tendered cashier's check, payable to the United States, for $2,289,751 moots the United States' damages claim, Count V, because it reflects the full amount of damages suffered by the United States that can be supported by the record.

### B. Seventh Amendment

Google also argues that the Court should strike the United States' jury demand because the Seventh Amendment does not entitle the United States to a jury trial on its damages claim. Mot. at 7. Attempting to break new ground, Google contends that "Blackstone's Commentaries and other historical sources indicate that comparable damages suits brought by the English Crown in 1791 would have been heard by a judge not a jury." Mot. at 2. As such, "the unprecedented nature" of the United States' jury demand "weighs heavily against extending the Seventh Amendment jury trial right to the government." Id.

Because the Court finds that the United States' damages claim is moot, it need not, and will not, reach the constitutional question. Such a decision adheres to the Court's duty to avoid deciding constitutional questions presented unless essential to a proper disposition of a case. See N.L.R.B. v. Enter. Leasing Co. Se., LLC, 722 F.3d 609, 613 (4th Cir. 2013) ("Before we can address the constitutional arguments, we must first attempt to resolve these cases on non-constitutional grounds, if possible."); Spector Motor Serv., Inc. v. McLaughlin, 323 U.S. 101, 105 (1944) ("If there is one doctrine more deeply rooted than any other in the process of constitutional adjudication, it is that we ought not to pass on questions of constitutionality . . . unless such adjudication is unavoidable.").

### C. **Illinois Brick**

Lastly, in its pending motion for summary judgment, Google has asked the Court to enter judgment in its favor on Count V under the Supreme Court's holding in Illinois-Brick Co. v. Illinois, 431 U.S. 720 (1977), because the evidence in the record demonstrates that the federal agency advertisers were not direct purchasers of open web display advertising from Google. [Dkt. No. 571] at 39.  In Illinois Brick, the Supreme Court "established a bright-line rule that authorizes suits by direct purchasers but bars suits by indirect purchasers." See Apple, Inc. v. Pepper, 587 U.S. 273, 279 (2019).  According to Google, "[e]ach and every transaction underlying the eight [federal agency advertisers'] claims for damages involved the use of at least one, and sometimes two, middleman ad agencies who purchased impressions (and as such, ad tech services to facilitate those purchases) on the [their] behalf." [Dkt. No. 571] at 39.  In opposition, the United States argues that the narrow control exception articulated in Illinois Brick applies because there is functional and economic unity between the federal agency advertisers and their ad agencies.

Similar to the Court's explanation above, because the tendering of complete relief to the United States on Count V moots the damages claim, the Court need not, and will not, reach the merits of Google's Illinois Brick argument.  This approach accords with the limitation on the Court's power to decide only live "Cases" or "Controversies," and not to issue advisory opinions.  See Church of Scientology, 506 U.S. at 12 (Stevens, J.) ("It has long been settled that a federal court has no authority to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it." (cleaned up)); see also Uzuegbunam v. Preczewski, 592 U.S. 279, 808 (2021) (Roberts, C.J., dissenting) ("Where a plaintiff asks only for a dollar, the defendant should be able to end the

case by giving him a dollar, without the court needing to pass on the merits of the plaintiff's [other] claims.").

### IV. CONCLUSION

For these reasons, Google's Motion to Dismiss and Strike, [Dkt. No. 628], will be granted, Count V of the Amended Complaint will be dismissed as moot,[11] and the jury demand will be stricken by an Order to be issued with this Memorandum Opinion.

Entered this _11_ day of June, 2024.

Alexandria, Virginia

/s/ _____
Leonie M. Brinkema
United States District Judge

---

[11] The Supreme Court has held that the proper disposition of a claim that has become moot by a grant of complete relief is dismissal; it has not required entry of judgment for the plaintiff. See Already, 568 U.S. at 89-90, 93, 102. The Sixth Circuit in Jarrett followed that practice, explaining that the admission of liability or the entry of judgment are not prerequisites to mootness. 79 F.4th at 681.