FILED UNDER SEAL

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| THE STATE OF TEXAS, et al., | **)** | |
| | **)** | |
| Plaintiffs, | **)** | |
| | **)** | |
| v. | **)** | Civil Action No. 4:20-cv-00957-SDJ |
| | **)** | |
| GOOGLE LLC, | **)** | |
| | **)** | |
| Defendant. | **)** | |

DEFENDANT GOOGLE LLC'S ANSWER TO FOURTH AMENDED COMPLAINT
AND AFFIRMATIVE DEFENSES

Subject to and without waiver of its pending motions to dismiss under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6), Defendant Google LLC ("Google") answers and pleads as follows in response to Plaintiffs' Fourth Amended Complaint:

## I.  PRELIMINARY STATEMENT

Advertising is a cornerstone of the free and open internet. Over the last 16 years, Google engineers have been hard at work to develop and improve the advertising technology that helps keep the internet free to users. Through enormous effort and investment, Google created a suite of high-quality, safe, efficient, and reliable 'ad tech' software that helps advertisers efficiently place ads meaningful to their customers and helps publishers sell their ad space at fair prices. Google's ad technology is extraordinarily sophisticated. It is subject to constant improvement to meet customer needs, so it can keep up with a rapidly changing digital advertising landscape. Out of a wide array of choices available to them, business customers choose Google's ad tech tools because they work. As a result of Google's investments—and investments by its many ad tech competitors—the industry has experienced an extraordinary eighteen-fold economic growth since 2008. Today, there are more transactions than ever. Prices have generally fallen over time, and

<u>**FILED UNDER SEAL**</u>

quality has increased, as have ad sellers' revenue and ad buyers' returns on investment.

Contracts, free competition, and private property are foundational to the functioning of this important and growing advertising market. This lawsuit places each of these foundational principles at risk. In their Fourth Amended Complaint, the States allege Google is liable for antitrust and deceptive trade practices claims, but the States' allegations are wrong.

First, the States' Complaint ignores the framework of America's antitrust laws, disregards commercial realities, and depends on gerrymandered market definitions that exclude Google's most significant competitors. Notably, the market did not develop overnight. Instead, between 2008 and 2022, Google and others innovated (with some innovations superseding others) to fine-tune product design and better serve the needs of customers. Ad buyers and ad sellers also have many alternatives: they can trade on any number of other exchanges; they can deal directly with one another; and they can buy and sell ad space on web pages, in mobile apps, in or alongside video content, or on connected TV and in streamed entertainment. And in this way, each side of this market depends on the other: an ad buyer cannot buy an ad without a seller, on the other side of the platform, selling space for that ad to appear. Google and other ad tech companies have innovated and developed new features and products as the ways in which users consume digital content and the surfaces across which ads can be bought and sold continues to evolve. This fierce and hard-fought competition has been procompetitive, resulting in increased output, greater innovation, and better prices in a dynamic market.

Second, the States' "deceptive trade practice" claims ignore the law and the relevant facts. Ad buyers and ad sellers had the information they needed to decide whether it was beneficial to them to use Google's ad tech tools. The terms of Google's contracts, as well as its explanations of how Google's auctions worked, how bids were submitted, how ads were placed, how reserve prices

**FILED UNDER SEAL**

were set, and how Google was paid for its services, were not misleading or incomplete. After years of litigation, the States cannot identify even one ad buyer or ad seller who was deceived or harmed by Google's actions–or even one who would have behaved differently absent the alleged deception.  Nor have they any evidence to show how ad buyers or ad sellers would have behaved differently without Google, its products, or its disclosures.

For all these reasons, and those pleaded below, Google denies it is liable for any and all of the claims asserted.

In specific response to the Fourth Amended Complaint's allegations, Google pleads as follows:

## II.    NO WAIVER OF MOTIONS TO DISMISS

Google answers Plaintiffs' Fourth Amended Complaint as set forth below, subject to and without waiver of the arguments set forth in its motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6), filed on January 16, 2024 and February 8, 2024 (ECF Nos. 200 & 224).

Except to the extent specifically admitted herein, Google denies each and every allegation contained in the Fourth Amended Complaint, including all allegations contained in headings, footnotes, figures, images, prayers for relief, or otherwise not contained in one of the Fourth Amended Complaint's 778 numbered paragraphs. Google generally denies the legal claims asserted in the Fourth Amended Complaint and responds to the Fourth Amended Complaint's numbered paragraphs as set forth below.

FILED UNDER SEAL

## III.    RESPONSES TO NUMBERED PARAGRAPHS

The section headings in the Fourth Amended Complaint do not require a response. To the extent that the section headings contain allegations requiring a response, Google denies all such allegations.

1.    Google admits that at Paragraph 1, Plaintiffs seek to assert various claims under federal and state laws, but Google denies that Plaintiffs have adequately stated a claim under any of those laws and denies that Google has violated any of those laws.

2.    Google admits in part and denies in part the allegations in Paragraph 2. Google admits it was founded over twenty years ago and that its business has expanded beyond internet search over the past 20 years. Google denies the allegations in Paragraph 2 in all other respects.

3.    Google admits in part and denies in part the allegations in Paragraph 3. Google admits its parent company, Alphabet, Inc., had the revenues disclosed in its public filings, but denies that these allegations apply to Google LLC, the Defendant in this case. Google denies the allegations in Paragraph 3 in all other respects.

4.    Google admits in part and denies in part the allegations in Paragraph 4. Google admits it operates an ad exchange used by advertisers and publishers and that it offers tools that advertisers can use to purchase display advertising inventory. Google denies the allegations in Paragraph 4 in all other respects.

5.    Google admits in part and denies in part the allegations in Paragraph 5. Google admits the existence of documents containing the quoted language, to which documents Google refers the Court for a complete and accurate statement of its contents. Google denies the allegations in Paragraph 5 in all other respects.

**FILED UNDER SEAL**

6.      Google admits in part and denies in part the allegations in Paragraph 6. Google admits the existence of a document containing the quoted language, to which document Google refers the Court for a complete and accurate statement of its contents. Google denies the allegations in Paragraph 6 in all other respects.

7.      Google denies the allegations in Paragraph 7.

8.      Google denies the allegations in Paragraph 8.

9.      Google admits in part and denies in part the allegations in Paragraph 9. Google admits that online advertising significantly contributes to enabling a free and open internet; that when an internet user visits a webpage with space for display ads, it generates a unique impression for each ad space available on the page; and that a display ad transaction can occur in less than a second. Google lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the second sentence of Paragraph 9 and, on that basis, denies those allegations. Figure 1 purports to describe display ad space on an online publisher's website, to which no response is required. To the extent a response to Figure 1 is deemed necessary, Google denies that Figure 1 presents a fair, accurate, and complete description of the matters described therein and, on that basis, denies the allegations contained in Figure 1 in Paragraph 9. Google denies the allegations in Paragraph 9 in all other respects.

10.      Google admits in part and denies in part the allegations in Paragraph 10. Google admits that some publishers' inventory can be viewed as distinct and that the value of different ad units can differ and will depend on a variety of factors including the audience. Google denies the allegations in Paragraph 10 in all other respects.

11.      Google admits in part and denies in part the allegations in Paragraph 11. Google lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations

<u>**FILED UNDER SEAL**</u>

in the first, second, and fourth sentences of Paragraph 11 as to what "is a critical task for . . . publishers," what "almost all major publishers use," and what is "[a]t the heart of any ad server" and, on that basis, denies those allegations. Google admits that publisher ad servers gather and communicate information for each impression. Google denies the allegations in Paragraph 11 in all other respects.

12.    Google admits in part and denies in part the allegations in Paragraph 12. Google lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the first sentence of Paragraph 12 as to what "advertisers generate" and, on that basis, denies those allegations. Google admits that some ad buying tools let advertisers set parameters about their purchasing preferences, such as the types of users they want to reach and the maximum bids they are willing to submit for various types of display ad inventory; and that some ad buying tools use the advertiser's configurations to automatically bid on ad space in exchanges and networks. Google denies the allegations in Paragraph 12 in all other respects.

13.    Google admits in part and denies in part the allegations in Paragraph 13. Google admits that publishers using ad servers and advertisers using ad buying tools can connect with one another in an ad exchange in real-time auctions. Google denies the allegations in Paragraph 13 in all other respects.

14.    Figure 2 in Paragraph 14 purports to provide a high-level visual model of the relationship between the types of products that interface to effectuate the purchase and sale of display ads on the open web, to which no response is required. To the extent a response to Figure 2 is deemed necessary, Google denies that Figure 2 presents a fair, accurate, and complete description of the matters described therein and, on that basis, denies the allegations contained in Figure 2 in Paragraph 14. Google denies the allegations in Paragraph 14 in all other respects.

**FILED UNDER SEAL**

15.     Google admits in part and denies in part the allegations in Paragraph 15. Google admits that developers of mobile device applications can generate revenue by selling their in-app impressions through the use of "in-app mediation" tools and "in-app networks" as well as other tools; and that in-app networks sell in-app inventory on behalf of mobile developers. Google denies the allegations in Paragraph 15 in all other respects.

16.     Google denies the allegations in Paragraph 16.

17.     Google admits in part and denies in part the allegations in Paragraph 17 and the corresponding footnote. The table in Paragraph 17 purports to describe the type of product, alleged relevant market, and Google's products in those alleged markets, to which no response is required. To the extent a response is deemed necessary, Google denies that the table in Paragraph 17 presents a fair, accurate, and complete description of the matters described therein and, on that basis, denies the allegations contained in the table in Paragraph 17. With respect to footnote 1, Google admits that it has rebranded several of its offerings over the years, including DoubleClick for Publishers (known as DFP) and DoubleClick Advertising Exchange (known as AdX) to Google Ad Manager (known as GAM) and AdWords to Google Ads; and that it operates an in-app ad network and platform named AdMob. Google denies the allegations in Paragraph 17 and the corresponding footnote in all other respects.

18.     Google denies the allegations in Paragraph 18.

19.     Google admits in part and denies in part the allegations in Paragraph 19. Google admits that it completed its acquisition of DoubleClick in 2008 and that some ad servers have entered and exited since 2008. Google denies the allegations in Paragraph 19 in all other respects.

20.     Google denies the allegations in Paragraph 20.

21.     Google denies the allegations in Paragraph 21.

<u>FILED UNDER SEAL</u>

22.     Google admits in part and denies in part the allegations in Paragraph 22. Google admits the existence of a technology known as header bidding, which uses code embedded in a webpage's "header," and that header bidding was designed to allow publishers to send bid requests for their inventory to multiple exchanges and other demand sources and to evaluate the responses to such requests. Google lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the fourth and fifth sentences of Paragraph 22 as to what "many publishers began to use" and what "[a]dvertisers . . . began" to do and, on that basis, denies those allegations. Google denies the allegations in Paragraph 22 in all other respects.

23.     Google admits in part and denies in part the allegations in Paragraph 23. Google admits the existence of documents containing the quoted language, to which documents Google refers the Court for a complete and accurate statement of their contents. Google denies the allegations in Paragraph 23 in all other respects.

24.     Paragraph 24 purports to describe allegations regarding Google's Exchange Bidding, to which no response is required because those allegations have been dismissed. *See In re Google Digital Advert. Antitrust Litig.*, 1:21-md-03010-PKC (Sept. 9, 2022), ECF No. 308 ("MDL ECF 308 Opinion and Order"). To the extent a response is deemed necessary, Google admits in part and denies in part the allegations in Paragraph 24. Google admits that it developed a feature known as Exchange Bidding to permit non-Google exchanges to bid into auctions in Google Ad Manager. Google further admits that Exchange Bidding had a project codename "Jedi." Google denies the allegations in Paragraph 24 in all other respects.

25.     Google denies the allegations in Paragraph 25.

26.     Paragraph 26 purports to describe allegations regarding Google's Network Bidding Agreement with Facebook, to which no response is required because those allegations have been

**FILED UNDER SEAL**

dismissed. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, Google denies the allegations in Paragraph 26.

27.     Google admits in part and denies in part the allegations in Paragraph 27. Google admits that with Unified Pricing Rules, publishers set a single price floor within the Google Ad Manager interface that applies uniformly across all exchanges, networks, DSPs, and other buying tools participating in Google's unified auction. Google further admits that publishers could also set different price floors for different ad exchanges using the tools made available by other ad exchanges, and these price floors would apply in addition to those from Unified Pricing Rules. Google denies the allegations in Paragraph 27 in all other respects.

28.     Paragraph 28 purports to describe allegations regarding Google's proposed Privacy Sandbox, to which no response is required because those allegations have been dismissed. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, Google denies the allegations in Paragraph 28.

29.     Google denies the allegations in Paragraph 29.

30.     Google denies the allegations in Paragraph 30.

31.     Google admits in part and denies in part the allegations in Paragraph 31. Google admits that Plaintiffs purport to bring this action in their respective sovereign capacities, as *parens patriae*, and pursuant to Section 16 of the Clayton Act. Google denies the allegations in Paragraph 31 in all other respects and denies that this action serves the citizens, general welfare, or economy of any of the Plaintiffs' respective states.

32.     Google admits in part and denies in part the allegations in Paragraph 32. Google admits it is a limited liability company organized and existing under the laws of the State of Delaware, and that it maintains a Mountain View, California business address; that it is a

**FILED UNDER SEAL**

technology company that provides numerous internet-related products, including online advertising technologies; and that it is a subsidiary of XXVI Holdings Inc., which is a subsidiary of Alphabet Inc., a publicly traded company that is incorporated and existing under the laws of the State of Delaware and that maintains its principal executive offices in Mountain View, California. Google denies the allegations in Paragraph 32 in all other respects.

33. Paragraph 33 contains legal conclusions to which no response is required. To the extent a response is deemed necessary, Google does not dispute federal subject matter jurisdiction; provided, however, that if the Court dismisses the federal antitrust claims, applicable law in the Fifth Circuit would require the dismissal of all pendent state law claims asserted under 28 U.S.C. § 1367.

34. Paragraph 34 contains legal conclusions to which no response is required. To the extent a response is deemed necessary, Google admits in part and denies in part the allegations in Paragraph 34. Google admits that Plaintiffs' Fourth Amended Complaint seeks to assert various claims under federal and state laws, but denies that Plaintiffs have adequately stated a claim under any of those laws and denies that Google has violated any of those laws. Google further denies that Plaintiffs are seeking the relief listed in Paragraph 34, as Plaintiffs have advised the Court and Google that no state is seeking damages, restitution, or disgorgement (ECF No. 381). Google denies the allegations in Paragraph 34 in all other respects.

35. Paragraph 35 contains legal conclusions to which no response is required. To the extent a response is deemed necessary, Google denies pendent jurisdiction is properly asserted or may be maintained and otherwise denies the allegations in Paragraph 35.

36. Paragraph 36 contains legal conclusions to which no response is required. To the extent a response is deemed necessary, Google does not dispute—for purposes of this action

**FILED UNDER SEAL**

only—the personal jurisdiction of this Court and admits that it is engaged in interstate trade and commerce. Google denies the allegations in Paragraph 36 in all other respects.

37.    Paragraph 37 contains legal conclusions to which no response is required. To the extent a response is deemed necessary, Google does not dispute venue in this matter but reserves all rights should events or future investigation render the venue improper. Google denies the allegations in Paragraph 37 in all other respects.

38.    Google admits in part and denies in part the allegations in Paragraph 38. Google admits that the internet revolutionized the way people consume content and expanded the opportunities for companies to advertise. Google denies the allegations in Paragraph 38 in all other respects.

39.    Google admits in part and denies in part the allegations in Paragraph 39. Google admits that advertisers can use various advertising formats to achieve their campaign goals. Google denies the allegations in Paragraph 39 in all other respects.

40.    Google denies the allegations in Paragraph 40.

41.    Google denies the allegations in Paragraph 41.

42.    Google admits in part and denies in part the allegations in Paragraph 42. Google admits that online publishers sell their inventory to advertisers both directly and indirectly, including through advertising marketplaces, and that "direct" sales are those in which a publisher or developer sells its ad inventory directly to advertisers. Google further admits that a publisher's inventory is, in part, a function of the number of user visits to the relevant website and that a publisher may not always be able to predict the number of potential ad impressions it can sell directly. Google denies the allegations in Paragraph 42 in all other respects.

<u>**FILED UNDER SEAL**</u>

43.    Google admits in part and denies in part the allegations in Paragraph 43. Google admits that indirect sales can occur through "ad exchanges" and through "networks" of publishers and advertisers, and that in addition to or as an alternative to direct sales, publishers can let ad exchanges auction their inventory in real-time and let networks resell their inventory. Google denies the allegations in Paragraph 43 in all other respects.

44.    Google admits in part and denies in part the allegations in Paragraph 44. Google admits that when a user visits a publisher's website, an ad server may route the publisher's available impressions to exchanges along with information about the impression, including the user ID, the parameters of the ad slot, and any rules about pricing. Google denies the allegations in Paragraph 44 in all other respects.

45.    Google admits in part and denies in part the allegations in Paragraph 45. Google admits that some publishers' and developers' inventory can be viewed as heterogeneous and that the value of different ad units can differ and will depend on a variety of factors including the audience. Google denies the allegations in Paragraph 45 in all other respects.

46.    Google admits in part and denies in part the allegations in Paragraph 46. Google admits the existence of Google webpages containing a portion of the language quoted in the first sentence of Paragraph 46, to which webpages Google refers the Court for a complete and accurate statement of their contents. Google denies the allegations in Paragraph 46 in all other respects.

47.    Google admits in part and denies in part the allegations in Paragraph 47. Google admits that publishers use a variety of products and services to help sell their display ad inventory, that advertisers use a variety of products and services to help purchase display ad inventory; and that ad servers, ad exchanges, ad networks, and ad buying tools are among the products that

**FILED UNDER SEAL**

publishers use to help sell their display ad inventory and that advertisers use to purchase display inventory. Google denies the allegations in Paragraph 47 in all other respects.

48.    Google denies the allegations in Paragraph 48.

49.    Google admits in part and denies in part the allegations in Paragraph 49. Google admits that ad servers can help track and sell a publisher's ad inventory through both direct and indirect channels to allow the publisher to attempt to maximize its revenue or achieve other goals and that some publishers use a single ad server. Google lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the first sentence of Paragraph 49 and, on that basis, denies those allegations. Google denies the allegations in Paragraph 49 in all other respects.

50.    Google lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the first sentence of Paragraph 50 as to what "[p]ublishers rely on" and, on that basis, denies those allegations. Google denies the allegations in Paragraph 50 in all other respects.

51.    Google admits in part and denies in part the allegations in Paragraph 51. Google admits that publisher ad servers perform a number of functions to enable them to select appropriate advertising for each page impression; that ad servers may receive browser cookies and that, depending on a user's settings, such cookies may subsequently be correlated with a profile; that browser cookies can be used to limit the number of times a user is shown a particular ad to avoid oversaturating the user; that cookies can be used as part of the process of measuring ad campaigns' effectiveness; and that some ad campaign billing models, such as cost-per-conversion, charge advertisers based on a specified user action. Google denies the allegations in Paragraph 51 in all other respects.

<u>**FILED UNDER SEAL**</u>

52.     Google admits in part and denies in part the allegations in Paragraph 52. Google admits that publishers can configure their indirect sales channels in their publisher ad server configurations; that publishers can route their inventory to multiple different exchanges and networks; and that publishers can configure how various exchanges and networks can access and compete for the publishers' inventory through their ad servers. Google denies the allegations in Paragraph 52 in all other respects.

53.     Google admits in part and denies in part the allegations in Paragraph 53. Google admits that ad servers generally are responsible for selecting, in accordance with the publisher's preferences, the ads or ad providers for a particular page impression from among candidates identified through a publisher's direct and indirect sales channels. Figure 3 purports to describe how a website's ad server manages and routes ad space, to which no response is required. To the extent a response to Figure 3 is deemed necessary, Google denies that Figure 3 presents a fair, accurate, and complete description of the matters described therein and, on that basis, denies the allegations contained in Figure 3 of Paragraph 53. Google denies the allegations in Paragraph 53 in all other respects.

54.     Google denies the allegations in Paragraph 54.

55.     Google lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the second sentence of Paragraph 55 and, on that basis, denies those allegations. Google denies the allegations in Paragraph 55 in all other respects.

56.     Google admits in part and denies in part the allegations in Paragraph 56. Google admits that Google Ad Manager's ad serving functionality is the successor to an ad server product that Google acquired as part of its 2008 acquisition of DoubleClick. Google further admits that, in 2011, it acquired Admeld Inc., which offered software that helped publishers optimize the yield

**FILED UNDER SEAL**

from their display advertising inventory. Google denies the allegations in Paragraph 56 in all other respects.

57.     Google admits in part and denies in part the allegations in Paragraph 57. Google admits that many online publishers in the United States sell some of their inventory to advertisers indirectly through exchanges and networks. Google denies the allegations in Paragraph 57 in all other respects.

58.     Google admits in part and denies in part the allegations in Paragraph 58. Google admits that ad exchanges match buyers and sellers of display ads on an impression-by-impression basis in real time, typically through an auction mechanism; that a publisher's ad server can route the publisher's inventory to ad exchanges in real time; that advertisers can purchase an ad impression on ad exchanges through ad buying tools, among other means; that publishers can offer their impressions in an "open auction," which is a real-time auction on an exchange that is open to all, or substantially all, advertisers using the exchange; that many advertisers do not bid directly on ad exchanges; and that some ad exchanges may retain a percentage of the clearing price of transactions on their ad exchanges that can vary based on a number of factors including publisher and transaction type. Google denies the allegations in Paragraph 58 in all other respects.

59.     Google denies the allegations in Paragraph 59.

60.     Google admits in part and denies in part the allegations in Paragraph 60. Google admits that some ad exchanges retain a percentage of the clearing price of transactions on their ad exchanges that vary based on a number of factors including publisher and transaction type. Google denies the allegations in Paragraph 60 in all other respects.

61.     Google admits in part and denies in part the allegations in Paragraph 61. Google admits that it retains a percentage of the clearing price of transactions on its ad exchange that varies

FILED UNDER SEAL

based on a number of factors including publisher and transaction type. Google denies the allegations in Paragraph 61 in all other respects.

62.    Google denies the allegations in Paragraph 62.

63.    Google admits in part and denies in part the allegations in Paragraph 63. Google admits the existence of a document containing the quoted language, to which document Google refers the Court for a complete and accurate statement of its contents. Google denies the allegations in Paragraph 63 in all other respects.

64.    Google denies the allegations in Paragraph 64. Figure 4 purports to describe how Google's ad server controls routing functions to competing exchanges, to which no response is required. To the extent a response to Figure 4 is deemed necessary, Google denies that Figure 4 presents a fair, accurate, and complete description of the matters described therein and, on that basis, denies the allegations contained in Figure 4 of Paragraph 64. Google denies the allegations in Paragraph 64 in all other respects.

65.    Google admits in part and denies in part the allegations in Paragraph 65. Google admits that ad networks match ad inventory for publishers of different sizes with advertisers; that networks can, but do not always, carry inventory risk by purchasing impressions on their own behalf as opposed to on the direct behalf of a specific advertiser or advertiser representative; and that networks provide varying degrees of price transparency on a per-impression basis. Google denies the allegations in Paragraph 65 in all other respects.

66.    Google admits in part and denies in part the allegations in Paragraph 66. Google admits that ad networks are distinct from exchanges, and that ad networks would aggregate remnant inventory from multiple digital content providers and resell the inventory to advertisers.

FILED UNDER SEAL

Google lacks knowledge or information sufficient to form a belief as to the truth or falsity of the rest of the allegations in Paragraph 66 and, on that basis, denies those allegations.

67.     Google lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the first sentence of Paragraph 67 and, on that basis, denies those allegations. Google denies the allegations in Paragraph 67 in all other respects.

68.     Google lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the first sentence of Paragraph 68 and, on that basis, denies those allegations. Google denies the allegations in Paragraph 68 in all other respects.

69.     Google admits in part and denies in part the allegations in Paragraph 69. Google admits the existence of a document containing the quoted language, to which document Google refers the Court for a complete and accurate statement of its contents, and that its AdSense for Content service typically retains a 32% revenue share (paying 68% to the publishers). Google lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the last sentence of Paragraph 69 and, on that basis, denies those allegations. Google denies the allegations in Paragraph 69 in all other respects.

70.     Google admits in part and denies in part the allegations in Paragraph 70. Google admits that many web publishers use Google's ad exchange and ad networks. Google denies the allegations in Paragraph 70 in all other aspects.

71.     Google admits in part and denies in part the allegations in Paragraph 71. Google admits that publishers use publisher ad servers to facilitate their advertising sales and advertisers use tools to facilitate their advertising purchases; that advertisers of all sizes use demand-side platforms ("DSPs"); and the existence of a document containing portions of the quoted language,

FILED UNDER SEAL

to which document Google refers the Court for a complete and accurate statement of its contents. Google denies the allegations in Paragraph 71 in all other aspects.

72.    Google admits in part and denies in part the allegations in Paragraph 72. Google admits that some ad buying tools let advertisers set parameters about their purchasing preferences, such as the types of users they want to reach and the maximum bids they are willing to submit for various types of display ad inventory. Google further admits that some ad buying tools use the advertiser's configurations to automatically bid on ad space in exchanges and networks. Google denies the allegations in Paragraph 72 in all other aspects.

73.    Google admits in part and denies in part the allegations in Paragraph 73. Google admits that different buying tools have different features and requirements suitable to different users; that some advertisers outsource their ad purchasing to ad agencies; that buying tools charge different prices, in part due to differences in their features; and that Google Ads does not impose a minimum spending requirement on advertisers. Google lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the fourth and fifth sentences of Paragraph 73 and, on that basis, denies those allegations. Google denies the allegations in Paragraph 73 in all other respects.

74.    Google admits in part and denies in part the allegations in Paragraph 74. Google admits that when a user visits a publisher's website, an ad server may route the publisher's available impressions to exchanges along with information about the impression, including the user ID, the parameters of the ad slot, and any rules about pricing; that the bid requests often include information about the impression and how long bidders have to respond with their bid response; that ad buying tools typically evaluate the bid request, determine whether they want to bid on behalf of particular advertisers and, if so, how much, and return the bid response to the

FILED UNDER SEAL

exchange before the timeout expires (which is often less than a second); that exchanges in general, at some point, close the auction and pass the highest bid to the ad server; that ad servers generally are responsible for selecting, in accordance with the publisher's preferences, the ads or ad providers for a particular page impression from among candidates identified through a publisher's direct and indirect sales channels; that users could see an ad adjacent to the content they are reading; and that real-time auctions happen every second of every day. Google lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the fifth sentence of Paragraph 74 and, on that basis, denies those allegations. Figure 5 purports to describe how exchanges solicit bids via bid requests from advertisers' buying tools, to which no response is required. To the extent a response to Figure 5 is deemed necessary, Google denies that Figure 5 presents a fair, accurate, and complete description of the matters described therein and, on that basis, denies the allegations contained in Figure 5 of Paragraph 74. Google denies the allegations in Paragraph 74 in all other respects.

75.    Google denies the allegations in Paragraph 75.

76.    Google admits in part and denies in part the allegations in Paragraph 76. Google admits that it offers ad buying tools that are suitable for advertisers of all sizes; that it offers an ad buying tool known as Display & Video 360 ("DV360") that is used by advertisers of all sizes, and which is derived in part from Google's acquisition of Invite Media; that advertisers of all sizes may purchase advertisements through Google Ads; that advertisers pay fees for many of the different services Google offers, and these fees may be subject to negotiation and therefore may vary among customers; and the existence of a document containing the language quoted in the third sentence of Paragraph 76, to which document Google refers the Court for a complete and

accurate statement of its contents. Google denies the allegations in Paragraph 76 in all other respects.

77.    Google admits in part and denies in part the allegations in Paragraph 77. Google admits the existence of a document containing portions of the quoted language, to which document Google refers the Court for a complete and accurate statement of its contents. Google denies the allegations in Paragraph 77 in all other respects.

78.    Google admits in part and denies in part the allegations in Paragraph 78. Google admits that many of the bids submitted by its ad buying tools are algorithmically determined and based on the advertiser's preferences and constraints; that it describes its services' operations and policies to its customers; and the existence of a webpage containing the quoted language, to which webpage Google refers the Court for a complete and accurate statement of its contents. Google denies the allegations in Paragraph 78 in all other respects.

79.    Google admits in part and denies in part the allegations in Paragraph 79. Google admits that mobile device app publishers can use a variety of tools, including mediation tools for in-app inventory and in-app display ad networks for transactions. Google denies the allegations in Paragraph 79 in all other respects.

80.    Google admits in part and denies in part the allegations in Paragraph 80. Google admits that developers can use in-app mediation tools to manage their in-app inventory. Google denies the allegations in Paragraph 80 in all other respects.

81.    Google admits in part and denies in part the allegations in Paragraph 81. Google admits that developers can install and integrate software development kits into their applications; that mediation tools' SDKs may interact with those used by in-app networks; and that many

<u>**FILED UNDER SEAL**</u>

applications that display ads from multiple demand sources use third-party mediation tools. Google denies the allegations in Paragraph 81 in all other respects.

82.    Google admits in part and denies in part the allegations in Paragraph 82. Google admits that mediation tools do not purchase impressions from developers and that some companies offer both a mediation tool and an in-app network. Google denies the allegations in Paragraph 82 in all other respects.

83.    Google lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the first sentence of Paragraph 83 and, on that basis, denies those allegations. Google denies the allegations in Paragraph 83 in all other respects.

84.    Google admits in part and denies in part the allegations in Paragraph 84 and the corresponding footnote. Google admits that it offers AdMob and Google Ad Manager to digital content providers with in-app inventory. Google denies the allegations in Paragraph 84 and the corresponding footnote in all other respects.

85.    Google admits in part and denies in part the allegations in Paragraph 85. Google admits one of the ways mediation tools compete is based on the revenue they generate for developers. Google denies the allegations in Paragraph 85 in all other respects.

86.    Google denies the allegations in Paragraph 86.

87.    Google admits in part and denies in part the allegations in Paragraph 87. Google admits that in-app networks typically offer and support technology designed to work with mobile applications. Google denies the allegations in Paragraph 87 in all other respects.

88.    Google lacks knowledge or information sufficient to form a belief as to what "most developers" have and, on that basis, denies those allegations in Paragraph 88. Google denies the allegations in Paragraph 88 in all other respects.

<u>FILED UNDER SEAL</u>

89.    Google lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the first sentence of Paragraph 89 and, on that basis, denies those allegations. Google denies the allegations in Paragraph 89 in all other respects.

90.    Google admits in part and denies in part the allegations in Paragraph 90. Google admits that Facebook (now known as "Meta") operates an ad network called the "Facebook Audience Network" or "FAN" (now the "Meta Audience Network"); that FAN is one of Google's major competitors competing in ways that include, but are not limited to, connecting third-party app publishers selling inventory to interested advertisers; and that FAN no longer buys web ads. Google denies the allegations in Paragraph 90 in all other respects.

91.    Google admits in part and denies in part the allegations in Paragraph 91. Google admits that Plaintiffs purport to define relevant product markets, but denies that they are properly defined. Google denies the allegations in Paragraph 91 in all other respects.

92.    Google admits in part and denies in part the allegations in Paragraph 92. Google admits that in Section VI(A) of the Fourth Amended Complaint, Plaintiffs purport to define four antitrust markets, but denies that they are properly defined. Google denies the allegations in Paragraph 92 in all other respects.

93.    Google admits in part and denies in part the allegations in Paragraph 93. Google admits that ad servers can help publishers manage and sell their web display advertising inventory, whether directly or indirectly. Google denies the allegations in Paragraph 93 in all other respects.

94.    Google admits in part and denies in part the allegations in Paragraph 94. Google admits that ad servers can help publishers manage their web display advertising inventory to varying degrees and in varying ways. Google denies the allegations in Paragraph 94 in all other respects.

**FILED UNDER SEAL**

95.     Google lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 95 and, on that basis, denies those allegations.

96.     Google admits in part and denies in part the allegations in Paragraph 96. Google admits that some publishers' expected direct and indirect sales volume may affect their choice of products. Google denies the allegations in Paragraph 96 in all other respects.

97.     Google admits in part and denies in part the allegations in Paragraph 97. Google admits that some large publishers such as those listed use ad servers and that some customers' expected direct sales volume may affect their choice of products. Google also admits the existence of documents containing portions of the quoted language, to which documents Google refers the Court for a complete and accurate statement of their contents. Google denies the allegations in Paragraph 97 in all other respects.

98.     Google denies the allegations in Paragraph 98.

99.     Google denies the allegations in Paragraph 99.

100.    Google admits in part and denies in part the allegations in Paragraph 100. Google admits the existence of a document containing the quoted language, to which document Google refers the Court for a complete and accurate statement of its contents. Google denies the allegations in Paragraph 100 in all other respects.

101.    Google lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the last sentence of Paragraph 101 and, on that basis, denies those allegations. Google denies the allegations in Paragraph 101 in all other respects.

102.    Google admits in part and denies in part the allegations in Paragraph 102. Google lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the second sentence of Paragraph 102 and, on that basis, denies those allegations. Google admits

FILED UNDER SEAL

the existence of documents referenced in the fifth and seventh sentences of Paragraph 102, to which documents Google refers the Court for a complete and accurate statement of their contents. Google denies the allegations in Paragraph 102 in all other respects.

103.    Google denies the allegations in Paragraph 103.

104.    Google denies the allegations in Paragraph 104.

105.    Google admits in part and denies in part the allegations in Paragraph 105. Google admits the existence of a 2020 document with the title quoted in the third sentence of Paragraph 105, to which document Google refers the Court for a complete and accurate statement of its contents. Google also admits the existence of a document containing the quoted language in the last sentence of Paragraph 105, to which document Google refers the Court for a complete and accurate statement of its contents. To the extent the allegations in Paragraph 105 purport to characterize or describe the findings or reports of government agencies, such findings or reports speak for themselves and Google denies any characterization or description that is inconsistent therewith. Google denies the allegations in Paragraph 105 in all other respects.

106.    Google admits in part and denies in part the allegations in Paragraph 106. To the extent the allegations in the first sentence of Paragraph 106 purport to characterize or describe documents or other sources, such documents or sources speak for themselves and Google denies any characterization or description that is inconsistent therewith. Google admits the existence of a document containing the quoted language in the second sentence of Paragraph 106, to which document Google refers the Court for a complete and accurate statement of its contents. Google also admits the existence of a document which appears to be referenced in the third sentence of Paragraph 106 and was produced in discovery, to which document Google refers the Court for a complete and accurate statement of its contents, but Google denies prior knowledge of this

FILED UNDER SEAL

document. Google lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the fourth sentence of Paragraph 106 and, on that basis, denies those allegations. Google denies the allegations in Paragraph 106 in all other respects.

107.    Google admits in part and denies in part the allegations in Paragraph 107. Google admits the existence of a document containing the quoted language in the third sentence in Paragraph 107, to which document Google refers the Court for a complete and accurate statement of its contents.  Google also admits the existence of the 2013 article referenced in the fourth sentence in Paragraph 107, to which article Google refers the Court for a complete and accurate statement of its contents. Google lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the first, second, and fifth sentences of Paragraph 107 and, on that basis, denies those allegations. Google denies the allegations in Paragraph 107 in all other respects.

108.    Google lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the third sentence of Paragraph 108 and, on that basis, denies those allegations. Google denies the allegations in Paragraph 108 in all other respects.

109.    Google admits in part and denies in part the allegations in Paragraph 109. Google admits that laws and regulations concerning competition, user privacy, and deceptive trade practices can vary from country to country. Google lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the first sentence of Paragraph 109 and, on that basis, denies those allegations. Google denies the allegations in Paragraph 109 in all other respects.

110.    Google lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 110 and, on that basis, denies those allegations.

**FILED UNDER SEAL**

111.     Google denies the allegations in Paragraph 111.

112.     Google denies the allegations in Paragraph 112.

113.     Google denies the allegations in Paragraph 113.

114.     Google admits in part and denies in part the allegations in Paragraph 114. Google admits the existence of documents containing the quoted language in the fifth, sixth, seventh, and eighth sentences of Paragraph 114, to which documents Google refers the Court for a complete and accurate statement of their contents. To the extent the allegations in Paragraph 114 purport to characterize or describe other documents or sources, such sources speak for themselves and Google denies any characterization or description that is inconsistent therewith. Google denies the allegations in Paragraph 114 in all other respects.

115.     Google admits in part and denies in part the allegations in Paragraph 115. Google admits the existence of a document containing the quoted language, to which document Google refers the Court for a complete and accurate statement of its contents. Google denies the allegations in Paragraph 115 in all other respects.

116.     Google admits in part and denies in part the allegations in Paragraph 116. Google admits the existence of documents which appear to be referenced in the second, fourth, and fifth sentences of Paragraph 116 and were produced in discovery, to which documents Google refers the Court for a complete and accurate statement of their contents, but Google denies prior knowledge of these documents. Google lacks knowledge and information sufficient to form a belief as to the truth or falsity of the allegations in the first and third sentences of Paragraph 116 and, on that basis, denies those allegations. Google denies the allegations in Paragraph 116 in all other respects.

**FILED UNDER SEAL**

117.     Google admits in part and denies in part the allegations in Paragraph 117. Google admits the existence of the AdExchanger and Wall Street Journal articles referenced in Paragraph 117, to which articles Google refers the Court for a complete and accurate statement of their contents. Google denies the allegations in Paragraph 117 in all other respects.

118.     Google admits in part and denies in part the allegations in Paragraph 118. Google admits that ad servers can charge fees for their services. Google lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the last sentence of Paragraph 118 and, on that basis, denies those allegations. Google denies the allegations in Paragraph 118 in all other respects.

119.     Google denies the allegations in Paragraph 119.

120.     Google admits in part and denies in part the allegations in Paragraph 120. Google admits the existence of a document containing the quoted language, to which document Google refers the Court for a complete and accurate statement of its contents. Google denies the allegations in Paragraph 120 in all other respects.

121.     Google denies the allegations in Paragraph 121.

122.     Google admits in part and denies in part the allegations in Paragraph 122. Google admits that the existence of competition from other publisher ad servers was among the arguments Google presented to the FTC in connection with its proposed acquisition of DoubleClick. Google also admits that ad servers have entered and exited since 2012. Google denies the allegations in Paragraph 122 in all other respects.

123.     Paragraph 123 purports to describe allegations relating to Google's Network Bidding Agreement with Facebook, to which no response is required because those allegations

**FILED UNDER SEAL**

have been dismissed. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, Google denies the allegations in Paragraph 123.

124.    Google admits in part and denies in part the allegations in Paragraph 124. Google admits that there may be some costs in replacing one publisher ad server with another for the same webpage. To the extent the allegations in the last sentence of Paragraph 124 purport to quote, characterize, or describe unspecified documents or other sources, Google notes that such sources speak for themselves and denies any characterization or description that is inconsistent therewith. Google denies the allegations in Paragraph 124 in all other respects.

125.    Google admits in part and denies in part the allegations in Paragraph 125. Google admits the existence of a document which appears to be referenced in the second sentence of Paragraph 125 and was produced in discovery, to which document Google refers the Court for a complete and accurate statement of its contents, but Google denies prior knowledge of that document. Google denies the allegations in Paragraph 125 in all other respects.

126.    Google admits in part and denies in part the allegations in Paragraph 126. Google admits that many publishers use one ad server at a time to manage their web display inventory and that a publisher may, for a variety of reasons, use more than one ad server. Google denies the allegations in Paragraph 126 in all other respects.

127.    Google denies the allegations in Paragraph 127.

128.    Google admits in part and denies in part the allegations in Paragraph 128. Google admits that ad exchanges auction multiple publishers' web display inventory to multiple purchasers; that exchanges generally interoperate with or are connected with publishers' ad servers, including but not limited to Google Ad Manager; and that advertisers typically interact

FILED UNDER SEAL

with ad exchanges through ad networks, buying tools, or other intermediaries. Google denies the allegations in Paragraph 128 in all other respects.

129.    Google admits in part and denies in part the allegations in Paragraph 129. Google admits that ad exchanges generally do not bear inventory risk. Google lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the fourth, fifth, and seventh sentences of Paragraph 129 and, on that basis, denies those allegations. Google denies the allegations in Paragraph 129 in all other respects.

130.    Google admits in part and denies in part the allegations in Paragraph 130. Google admits that publishers can increase price floors; and that advertisers can bid on and purchase individual impressions. Google lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the first and third sentences of Paragraph 130 and, on that basis, denies those allegations. Google denies the allegations in Paragraph 130 in all other respects.

131.    Google denies the allegations in Paragraph 131.

132.    Google admits in part and denies in part the allegations in Paragraph 132. Google admits that different ad exchanges, publisher ad servers, ad networks, and ad buying tools may have different features and pricing. Google lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the fourth sentence of Paragraph 132 and, on that basis, denies those allegations. Google denies the allegations in Paragraph 132 in all other respects.

133.    Google admits in part and denies in part the allegations in Paragraph 133. Google admits that buying or selling inventory directly may involve a sales team or automated sales interface; that publishers and advertisers may (but need not) rely on internal staff to manage their relationships for direct sales; and that the expected value of inventory can be a factor that

**FILED UNDER SEAL**

publishers consider in determining an ad sales strategy. Google lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the fifth and sixth sentences of Paragraph 133 and, on that basis, denies those allegations. Google denies the allegations in Paragraph 133 in all other respects.

134.    Google admits in part and denies in part the allegations in Paragraph 134. Google admits the existence of documents containing the quoted language, to which documents Google refers the Court for a complete and accurate statement of their contents. Google denies the allegations in Paragraph 134 in all other respects.

135.    Google denies the allegations in Paragraph 135.

136.    Google denies the allegations in Paragraph 136.

137.    Google denies the allegations in Paragraph 137.

138.    Google denies the allegations in Paragraph 138.

139.    Google admits in part and denies in part the allegations in Paragraph 139. Google admits the existence of a document containing the quoted language, to which document Google refers the Court for a complete and accurate statement of its contents. Google denies the allegations in Paragraph 139 in all other respects.

140.    Google lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the third, fourth, and fifth sentences of Paragraph 140 and, on that basis, denies those allegations. Google denies the allegations in Paragraph 140 in all other respects.

141.    Google admits in part and denies in part the allegations in Paragraph 141, Google admits that laws and regulations concerning competition, user privacy, and deceptive trade practices can vary from country to country. Google lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the first sentence of Paragraph 141 and,

FILED UNDER SEAL

on that basis, denies those allegations. Google denies the allegations in Paragraph 141 in all other respects.

142.    Google lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 142 and, on that basis, denies those allegations.

143.    Google denies the allegations in Paragraph 143.

144.    Google denies the allegations in paragraph 144.

145.    Google denies the allegations in Paragraph 145.

146.    Google lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the second sentence of Paragraph 146 and, on that basis, denies those allegations. Google denies the allegations in Paragraph 146 in all other respects.

147.    Google lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the second, third, and fourth sentences of Paragraph 147 and, on that basis, denies those allegations. To the extent the allegations in the second sentence of Paragraph 147 purport to characterize or describe unspecified documents or other sources, Google notes that such sources speak for themselves and denies any characterization or description that is inconsistent therewith. Google denies the allegations in Paragraph 147 in all other respects.

148.    Google lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the first, second, and third sentences of Paragraph 148 and, on that basis, denies those allegations. Google denies the allegations in Paragraph 148 in all other respects.

149.    Google admits in part and denies in part the allegations in Paragraph 149. Google admits the existence of a document containing substantially the quoted language, to which document Google refers the Court for a complete and accurate statement of its contents. Google denies the allegations in Paragraph 149 in all other respects.

**FILED UNDER SEAL**

150.    Google admits in part and denies in part the allegations in Paragraph 150. Google admits the existence of a Digiday article containing the quoted language in the third sentence of Paragraph 150, to which article Google refers the Court for a complete and accurate statement of its contents. To the extent the allegations in the fourth sentence of Paragraph 150 purport to characterize or describe unspecified internal documents, such documents speak for themselves and Google denies any characterization or description that is inconsistent therewith. Google denies the allegations in Paragraph 150 in all other respects.

151.    Google admits in part and denies in part the allegations in Paragraph 151. Google admits the existence of a Wall Street Journal article containing the quoted language in the first sentence of Paragraph 151, to which article Google refers the Court for a complete and accurate statement of its contents. To the extent the allegations in Paragraph 151 purport to characterize or describe unspecified documents, such documents speak for themselves and Google denies any characterization or description that is inconsistent therewith. Google denies the allegations in Paragraph 151 in all other respects.

152.    Google lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the second sentence of Paragraph 152 and, on that basis, denies those allegations. Google denies the allegations in Paragraph 152 in all other respects.

153.    Google admits in part and denies in part the allegations in Paragraph 153. Google admits that Rubicon, AT&T's Xandr, and Index Exchange, among many others, all operate ad exchanges with which Google competes. Google lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the first (except as admitted above), second, third, fourth, fifth, sixth, seventh, eighth, and ninth sentences of Paragraph 153 and, on

that basis, denies those allegations. Google denies the allegations in Paragraph 153 in all other respects.

154.    Google lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the first sentence of Paragraph 154 and, on that basis, denies those allegations. Google denies the allegations in Paragraph 154 in all other respects.

155.    Google admits in part and denies in part the allegations in Paragraph 155. Google admits the existence of a document containing the quoted language, to which document Google refers the Court for a complete and accurate statement of its contents. Google denies the allegations in Paragraph 155 in all other respects.

156.    Google denies the allegations in Paragraph 156.

157.    Google admits in part and denies in part the allegations in Paragraph 157. Google admits the existence of documents containing the quoted language, to which documents Google refers the Court for a complete and accurate statement of their contents. Google further admits that its revenue share varies across transaction types and customers. Google lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the second and fifth sentences of Paragraph 157 and, on that basis, denies those allegations. Google denies the allegations in Paragraph 157 in all other respects.

158.    Google admits in part and denies in part the allegations in Paragraph 158.  Google admits the existence of a survey that it believes to be referenced in the second, third, and fourth sentences of Paragraph 158, to which survey Google refers the Court for a complete and accurate statement of its contents. Google also admits the existence of a column on adexchanger.com containing the quoted language in the fifth sentence of Paragraph 158, to which column Google refers the Court for a complete and accurate statement of its contents. Google admits the existence

**FILED UNDER SEAL**

of an article on adexchanger.com containing the quoted language in the sixth sentence of Paragraph 158, to which article Google refers the Court for a complete and accurate statement of its contents. Google denies the allegations in Paragraph 158 in all other respects.

159.    Google lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the second sentence of Paragraph 159 and, on that basis, denies those allegations. Google denies the allegations in Paragraph 159 in all other respects.

160.    Google admits in part and denies in part the allegations in Paragraph 160. Google admits that generally speaking an ad exchange may be more attractive to advertisers as more publishers use it, and more attractive to publishers as more advertisers use it. Google denies the allegations in Paragraph 160 in all other respects.

161.    Google admits in part and denies in part the allegations in Paragraph 161. Google admits that publishers use publisher ad servers to facilitate their advertising sales and that advertisers use buying tools to facilitate their advertising purchases. Google denies the allegations in Paragraph 161 in all other respects.

162.    Google admits in part and denies in part the allegations in Paragraph 162. Google admits the existence of documents containing substantially the quoted language, to which documents Google refers the Court for a complete and accurate statement of their contents. Google denies the allegations in Paragraph 162 in all other respects.

163.    Google admits in part and denies in part the allegations in Paragraph 163. Google admits that advertisers of all types and sizes use automated tools to bid on and purchase ad inventory, including ad inventory trading on ad exchanges and ad networks. Google denies the allegations in Paragraph 163 in all other respects.

**FILED UNDER SEAL**

164.    Google admits in part and denies in part the allegations in Paragraph 164. Google admits that different ad buying tools provide different types of interfaces for advertisers. Google denies the allegations in Paragraph 164 in all other respects.

165.    Google lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the second and third sentences of Paragraph 165 and, on that basis, denies those allegations. Google denies the allegations in Paragraph 165 in all other respects.

166.    Google admits in part and denies in part the allegations in Paragraph 166. Google admits that Google Ads does not impose a minimum spending requirement on advertisers. Google lacks knowledge or information sufficient to form a belief as to the requirements of other firms' buying tools and, on that basis, denies the allegations in the first sentence of Paragraph 166. Google denies the allegations in Paragraph 166 in all other respects.

167.    Google admits in part and denies in part the allegations in Paragraph 167. Google admits that advertisers of all types and sizes use automated tools to bid on and purchase ad inventory, including inventory sold on ad exchanges and ad networks. Google denies the allegations in Paragraph 167 in all other respects.

168.    Google admits in part and denies in part the allegations in Paragraph 168. Google admits the existence of documents containing substantially the quoted language, to which documents Google refers the Court for a complete and accurate statement of its contents. Google denies the allegations in Paragraph 168 in all other respects.

169.    Google admits in part and denies in part the allegations in Paragraph 169. Google admits that different buying tools can have different features and requirements suitable to different users and that some advertisers outsource their ad purchasing to ad agencies. Google denies the allegations in Paragraph 169 in all other respects.

**FILED UNDER SEAL**

170.     Google denies the allegations in Paragraph 170.

171.     Google admits in part and denies in part the allegations in Paragraph 171. Google admits that different buying tools can have different features and requirements suitable to different users and that some advertisers utilize dedicated teams for their ad purchasing. Google denies the allegations in Paragraph 171 in all other respects.

172.     Google admits in part and denies in part the allegations in Paragraph 172 and the corresponding footnote. Google admits the existence of a document containing the quoted language in the footnote, to which document Google refers the Court for a complete and accurate statement of its contents. Google further admits that different ad exchanges and ad networks provide different types of interfaces for advertisers, including for the purchase of inventory. Google denies the allegations in Paragraph 172 and the corresponding footnote in all other respects.

173.     Google denies the allegations in Paragraph 173.

174.     Google denies the allegations in Paragraph 174.

175.     Google admits in part and denies in part the allegations in Paragraph 175. Google admits, on information and belief, that in mid-2020 Facebook faced public backlash that spurred many advertisers to shift their spend to other channels and buying tools, some of whom indicated they would shift such spend to Google Ads. Google denies the allegations in Paragraph 175 in all other respects.

176.     Google lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the last sentence of Paragraph 176 regarding advertisers' ability to "optimize" using Facebook's tools and, on that basis, denies those allegations. Google denies the

allegations in the first sentence of Paragraph 176. On information and belief, Google denies the remaining allegations in Paragraph 176 in all other respects.

177.    Google lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the second, fourth, fifth, sixth, seventh, eight, and ninth sentences of Paragraph 177 and, on that basis, denies those allegations. To the extent the allegations in Paragraph 177 purport to characterize or describe an unspecified "internal research document from Amazon," such document speaks for itself, and Google denies any characterization or description that is inconsistent therewith. Google denies the allegations in Paragraph 177 in all other respects.

178.    To the extent the allegations in Paragraph 178 purport to characterize or describe an unspecified internal Google document, such document speaks for itself, and Google denies any characterization or description that is inconsistent therewith. Google denies the allegations in Paragraph 178 in all other respects.

179.    To the extent the allegations in the third sentence of Paragraph 179 purport to characterize or describe what regulators have found, such findings speak for themselves and Google denies any characterization or description that is inconsistent therewith. To the extent the allegations in the fourth sentence of Paragraph 179 purport to characterize or describe unspecified Google internal documents, such documents speak for themselves and Google denies any characterization or description that is inconsistent therewith. Google denies the allegations in Paragraph 179 in all other respects.

180.    Google admits in part and denies in part the allegations in Paragraph 180. Google admits the existence of a 2020 UK CMA report discussing online platforms and digital advertising, to which report Google refers the Court for a complete and accurate statement of its contents. Google denies the allegations in Paragraph 180 in all other respects.

FILED UNDER SEAL

181.    To the extent the allegations in Paragraph 181 purport to characterize or describe unspecified Google internal documents, such documents speak for themselves and Google denies any characterization or description that is inconsistent therewith. Google denies the allegations in Paragraph 181 in all other respects.

182.    Google lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the third and fourth sentences of Paragraph 182 and, on that basis, denies those allegations. Google denies the allegations in Paragraph 182 in all other respects.

183.    Google admits in part and denies in part the allegations in Paragraph 183. Google admits that laws and regulations concerning competition, user privacy, and deceptive trade practices can vary from country to country. Google lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the first sentence of Paragraph 183 and, on that basis, denies those allegations. Google denies the allegations in Paragraph 183 in all other respects.

184.    Google lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 184 and, on that basis, denies those allegations.

185.    Google denies the allegations in Paragraph 185.

186.    Google denies the allegations in Paragraph 186.

187.    Google denies the allegations in Paragraph 187.

188.    Google lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the second sentence of Paragraph 188 and, on that basis, denies those allegations. Google denies the allegations in Paragraph 188 in all other respects.

189.    Google admits in part and denies in part the allegations in Paragraph 189. Google admits the existence of a document containing the quoted language, to which document Google

**FILED UNDER SEAL**

refers the Court for a complete and accurate statement of its contents. Google denies the allegations in Paragraph 189 in all other respects.

190.    Google admits in part and denies in part the allegations in Paragraph 190. Google admits that Google Ads is one of the largest buyers on AdX. Google also admits the existence of a document containing the quoted language, to which document Google refers the Court for a complete and accurate statement of its contents. Google denies the allegations in Paragraph 190 in all other respects.

191.    Google admits in part and denies in part the allegations in Paragraph 191. Google lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the second and third sentences of Paragraph 191 and, on that basis, denies those allegations.  To the extent the allegations in the last sentence of Paragraph 191 purport to quote, characterize, or describe unspecified documents or other sources, such sources speak for themselves and Google denies any characterization or description that is inconsistent therewith. Google further lacks knowledge of information sufficient to form a belief as to the truth or falsity of the allegation in the latter clause of the last sentence of Paragraph 191 and, on that basis, denies those allegations. Google denies the allegations in Paragraph 191 in all other respects.

192.    Google lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the third sentence of Paragraph 192 and, on that basis, denies those allegations. To the extent the allegations in the fourth sentence of Paragraph 192 characterize or describe reports from the ACCC or UK CMA, such reports speak for themselves and Google denies any characterization or description that is inconsistent therewith. Google denies the allegations in Paragraph 192 in all other respects.

193.    Google denies the allegations in Paragraph 193.

**FILED UNDER SEAL**

194.    Google admits in part and denies in part the allegations in Paragraph 194. Google admits the existence of a document containing the quoted language, to which document Google refers the Court for a complete and accurate statement of its contents. Google denies the allegations in Paragraph 194 in all other respects.

195.    Google admits in part and denies in part the allegations in Paragraph 195. Google admits that buying tools provide varying types of measurement functionality to assess audience reach. Google denies the allegations in Paragraph 195 in all other respects.

196.    Google admits in part and denies in part the allegations in Paragraph 196. Google admits that advertisers of all types and sizes use automated tools to bid on and purchase ad inventory, including inventory sold on ad exchanges and ad networks; and that advertisers use buying tools to achieve their advertising goals. Google denies the allegations in Paragraph 196 in all other respects.

197.    Google admits in part and denies in part the allegations in Paragraph 197. Google admits that different buying tools can have different features and requirements suitable to different users. Google denies the allegations in Paragraph 197 in all other respects.

198.    Google admits in part and denies in part the allegations in Paragraph 198. Google admits that some advertisers outsource their ad purchasing to ad agencies. Google lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the first and second sentences of Paragraph 198 and, on that basis, denies those allegations. Google denies the allegations in Paragraph 198 in all other respects.

199.    Google lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the third and fourth sentences of Paragraph 199 and, on that basis, denies those allegations. Google denies the allegations in Paragraph 199 in all other respects.

**FILED UNDER SEAL**

200.    To the extent the allegations in the second sentence of Paragraph 200 purport to characterize unspecified Google documents or sources, such sources speak for themselves and Google denies any characterization or description that is inconsistent therewith. Google denies the allegations in Paragraph 200 in all other respects.

201.    Google denies the allegations in Paragraph 201.

202.    Google admits in part and denies in part the allegations in Paragraph 202. Google admits that different buying tools can have different features and requirements suitable to different users. Google denies the allegations in Paragraph 202 in all other respects.

203.    Google lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 203 and, on that basis, denies those allegations. Google denies the allegations in Paragraph 203 in all other respects.

204.    Google admits in part and denies in part the allegations in Paragraph 204. Google admits that different ad exchanges, publisher ad servers, ad networks, and ad buying tools may have different features. Google lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the fourth sentence of Paragraph 204 and, on that basis, denies those allegations. Google denies the allegations in Paragraph 204 in all other respects.

205.    Google denies the allegations in Paragraph 205.

206.    Google denies the allegations in Paragraph 206.

207.    Google denies the allegations in Paragraph 207.

208.    Google admits in part and denies in part the allegations in Paragraph 208. Google admits the existence of the 2020 UK CMA report referenced in Paragraph 208, to which report Google refers the Court for a complete and accurate statement of its contents. To the extent the allegations in Paragraph 208 purport to characterize or describe the findings or reports of

**FILED UNDER SEAL**

government agencies, such findings or reports speak for themselves and Google denies any characterization or description that is inconsistent therewith. Google denies the allegations in Paragraph 208 in all other respects.

209.    Google denies the allegations in Paragraph 209.

210.    Google lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the third and fourth sentences of Paragraph 210 and, on that basis, denies those allegations. Google denies the allegations in Paragraph 210 in all other respects.

211.    Google admits in part and denies in part the allegations in Paragraph 211. Google admits that laws and regulations concerning competition, user privacy, and deceptive trade practices can vary from country to country. Google lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the first sentence of Paragraph 211 and, on that basis, denies those allegations. Google denies the allegations in Paragraph 211 in all other respects.

212.    Google lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 212 and, on that basis, denies those allegations.

213.    Google denies the allegations in Paragraph 213.

214.    Google denies the allegations in Paragraph 214.

215.    Google admits in part and denies in part the allegations in Paragraph 215. Google admits that in Section VI(B) of the Fourth Amended Complaint, Plaintiffs purport to define two antitrust markets, but denies that they are properly defined. Google denies the allegations in Paragraph 215 in all other respects.

216.    Paragraph 216 purports to describe allegations relating to an alleged in-app mediation market, to which no response is required because all claims related to that alleged market

**FILED UNDER SEAL**

have been dismissed. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, Google admits in part and denies in part the allegations in Paragraph 216. Google admits that in-app mediation can help developers manage and sell in-app inventory, whether directly or indirectly. Google denies the allegations in Paragraph 216 in all other respects.

217.    Paragraph 217 purports to describe allegations relating to an alleged in-app mediation market, to which no response is required because all claims related to that alleged market have been dismissed. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, Google admits in part and denies in part the allegations in Paragraph 217. Google admits that mediation tools can help developers manage and sell in-app inventory, whether directly or indirectly; that it offers AdMob and Google Ad Manager for apps to developers; and that it competes with companies such as MoPub, ironSource, and Unity, among others. Google denies the allegations in Paragraph 217 in all other respects.

218.    Paragraph 218 purports to describe allegations relating to an alleged in-app mediation market, to which no response is required because all claims related to that alleged market have been dismissed. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, Google denies the allegations in Paragraph 218.

219.    Paragraph 219 purports to describe allegations relating to an alleged in-app mediation market, to which no response is required because all claims related to that alleged market have been dismissed. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, Google denies the allegations in Paragraph 219.

220.    Paragraph 220 purports to describe allegations relating to an alleged in-app mediation market, to which no response is required because all claims related to that alleged market have been dismissed. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed

<u>FILED UNDER SEAL</u>

necessary, Google lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the second sentence of Paragraph 220 and, on that basis, denies those allegations. Google denies the allegations in Paragraph 220 in all other aspects.

221.    Paragraph 221 purports to describe allegations relating to an alleged in-app mediation market, to which no response is required because all claims related to that alleged market have been dismissed. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, Google denies the allegations in Paragraph 221.

222.    Paragraph 222 purports to describe allegations relating to an alleged in-app mediation market, to which no response is required because all claims related to that alleged market have been dismissed. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, Google admits in part and denies in part the allegations in Paragraph 222. Google admits the existence of documents containing the quoted language, to which documents Google refers the Court for a complete and accurate statement of their contents. Google lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the fourth, fifth, and sixth sentences of Paragraph 222 and, on that basis, denies those allegations. Google denies the allegations in Paragraph 222 in all other aspects.

223.    Paragraph 223 purports to describe allegations relating to an alleged in-app mediation market, to which no response is required because all claims related to that alleged market have been dismissed. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, Google lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the third and fourth sentences of Paragraph 223 and, on that basis, denies those allegations. Google denies the allegations in Paragraph 223 in all other respects.

**FILED UNDER SEAL**

224.    Paragraph 224 purports to describe allegations relating to an alleged in-app mediation market, to which no response is required because all claims related to that alleged market have been dismissed. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, Google admits in part and denies in part the allegations in Paragraph 224. Google admits that laws and regulations concerning competition, user privacy, and deceptive trade practices can vary from country to country. Google lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the first sentence of Paragraph 224 and, on that basis, denies those allegations. Google denies the allegations in Paragraph 224 in all other respects.

225.    Paragraph 225 purports to describe allegations relating to an alleged in-app mediation market, to which no response is required because all claims related to that alleged market have been dismissed. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, Google denies the allegations in Paragraph 225.

226.    Paragraph 226 purports to describe allegations relating to an alleged in-app mediation market, to which no response is required because all claims related to that alleged market have been dismissed. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, Google denies the allegations in Paragraph 226.

227.    Paragraph 227 purports to describe allegations relating to an alleged in-app mediation market, to which no response is required because all claims related to that alleged market have been dismissed. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, Google admits in part and denies in part the allegations in Paragraph 227. Google admits that it offers AdMob mediation and Google Ad Manager for apps to developers. Google denies the allegations in Paragraph 227 in all other respects.

**FILED UNDER SEAL**

228.    Paragraph 228 purports to describe allegations relating to an alleged in-app mediation market, to which no response is required because all claims related to that alleged market have been dismissed. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, Google admits in part and denies in part the allegations in Paragraph 228. Google admits that it competes with companies such as MoPub, ironSource, and AppLovin, among others. Google denies the allegations in Paragraph 228 in all other aspects.

229.    Paragraph 229 purports to describe allegations relating to an alleged in-app mediation market, to which no response is required because all claims related to that alleged market have been dismissed. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, Google admits in part and denies in part the allegations in Paragraph 229. Google admits the existence of a document containing the quoted language in the first sentence of Paragraph 229, to which document Google refers the Court for a complete and accurate statement of its contents. Google lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the third, fourth, fifth, and sixth sentences of Paragraph 229 and, on that basis, denies those allegations. Google denies the allegations in Paragraph 229 in all other respects.

230.    Paragraph 230 purports to describe allegations relating to an alleged in-app mediation market, to which no response is required because all claims related to that alleged market have been dismissed. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, Google admits in part and denies in part the allegations in Paragraph 230. Google admits the existence of a document containing substantially the quoted language, to which document Google refers the Court for a complete and accurate statement of its contents. Google denies the allegations in Paragraph 230 in all other respects.

<u>**FILED UNDER SEAL**</u>

231.     Paragraph 231 purports to describe allegations relating to an alleged in-app mediation market, to which no response is required because all claims related to that alleged market have been dismissed. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, Google denies the allegations in Paragraph 231.

232.     Paragraph 232 purports to describe allegations relating to an alleged in-app network market, to which no response is required because all claims related to that alleged market have been dismissed. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, Google admits in part and denies in part the allegations in Paragraph 232. Google admits that it operates AdMob, an ad network that sells in-app inventory on behalf of mobile app developers; and that it competes against Facebook Audience Network, Unity, ironSource, and Vungle, among others. Google denies the allegations in Paragraph 232 in all other aspects.

233.     Paragraph 233 purports to describe allegations relating to an alleged in-app mediation market, to which no response is required because all claims related to that alleged market have been dismissed. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, Google lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the second and third sentences of Paragraph 233 and, on that basis, denies those allegations. Google denies the allegations in Paragraph 233 in all other respects.

234.     Paragraph 234 purports to describe allegations relating to an alleged in-app mediation market, to which no response is required because all claims related to that alleged market have been dismissed. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, Google admits in part and denies in part the allegations in Paragraph 234. Google admits the existence of a document containing the quoted language, to which document Google refers the

**FILED UNDER SEAL**

Court for a complete and accurate statement of its contents. Google denies the allegations in Paragraph 234 in all other respects.

235.    Paragraph 235 purports to describe allegations relating to an alleged in-app mediation market, to which no response is required because all claims related to that alleged market have been dismissed. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, Google denies the allegations in Paragraph 235.

236.    Paragraph 236 purports to describe allegations relating to an alleged in-app mediation market, to which no response is required because all claims related to that alleged market have been dismissed. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, Google denies the allegations in Paragraph 236.

237.    Paragraph 237 purports to describe allegations relating to an alleged in-app network market, to which no response is required because all claims related to that alleged market have been dismissed. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, Google lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the second sentence of Paragraph 237 and, on that basis, denies those allegations. Google denies the allegations in Paragraph 237 in all other respects.

238.    Paragraph 238 purports to describe allegations relating to an alleged in-app network market, to which no response is required because all claims related to that alleged market have been dismissed. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, Google denies the allegations in Paragraph 238.

239.    Paragraph 239 purports to describe allegations relating to an alleged in-app network market, to which no response is required because all claims related to that alleged market have been dismissed. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed

FILED UNDER SEAL

necessary, Google lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the fourth, fifth, and sixth sentences of Paragraph 239 and, on that basis, denies those allegations. Google denies the allegations in Paragraph 239 in all other respects.

240.     Paragraph 240 purports to describe allegations relating to an alleged in-app network market, to which no response is required because all claims related to that alleged market have been dismissed. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, Google admits in part and denies in part the allegations in Paragraph 240. Google admits that laws and regulations concerning competition, user privacy, and deceptive trade practices can vary from country to country. Google lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the first sentence of Paragraph 240 and, on that basis, denies those allegations. Google denies the allegations in Paragraph 240 in all other respects.

241.     Paragraph 241 purports to describe allegations relating to an alleged in-app network market, to which no response is required because all claims related to that alleged market have been dismissed. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, Google lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 241 and, on that basis, denies those allegations.

242.     Paragraph 242 purports to describe allegations relating to an alleged in-app network market, to which no response is required because all claims related to that alleged market have been dismissed. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, Google denies the allegations in Paragraph 242.

243.     Paragraph 243 purports to describe allegations relating to an alleged in-app network market, to which no response is required because all claims related to that alleged market have

<u>**FILED UNDER SEAL**</u>

been dismissed. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, Google denies the allegations in Paragraph 243.

244.    Google denies the allegations in Paragraph 244.

245.    Google admits in part and denies in part the allegations in Paragraph 245. Google admits that from 2008 to the present, Google's ad exchange and ad server faced significant competition from well-funded rivals. Google also admits the existence of a document containing one of the figures set forth in the second sentence of Paragraph 245, to which document Google refers the Court for a complete and accurate statement of its contents. Google denies the allegations in Paragraph 245 in all other respects.

246.    Google admits in part and denies in part the allegations in Paragraph 246. Google admits that Google Ads bids on Google's ad exchange on behalf of advertisers, and that Google's exchange is operable with Google's ad server. Google denies that Figure 6 presents a fair, accurate, and complete description of the matters described therein and, on that basis, denies the allegations contained in Figure 6 in Paragraph 246. Google denies the allegations in Paragraph 246 in all other respects.

247.    To the extent the allegations in the third sentence of Paragraph 247 purport to characterize or describe an unspecified Google study, such study speaks for itself and Google denies any characterization or description that is inconsistent therewith. Google lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the fourth, fifth, sixth, and seventh sentences of Paragraph 247 and, on that basis, denies those allegations. Google denies the allegations in Paragraph 247 in all other respects.

248.    Google admits in part and denies in part the allegations in Paragraph 248. Google admits the existence of a document containing the quoted language in the fourth sentence of

**FILED UNDER SEAL**

Paragraph 248, to which document Google refers the Court for a complete and accurate statement of its contents. Google denies the allegations in Paragraph 248 in all other respects.

249.    Google denies the allegations in Paragraph 249.

250.    Google admits in part and denies in part the allegations in Paragraph 250. Google admits that Google Ads bids on display ad inventory on non-Google ad exchanges on behalf of advertisers. Google denies the allegations in Paragraph 250 in all other respects.

251.    Google admits in part and denies in part the allegations in Paragraph 251. Google admits that it began offering unified DFP/AdX contracts in 2016, but denies that any contract required publishers to use DFP in order to access AdX. Google admits the existence of documents containing the quoted language in the third, fourth, and fifth sentences of Paragraph 251, to which documents Google refers the Court for a complete and accurate statement of their contents. Google denies the allegations in Paragraph 251 in all other respects.

252.    Google denies the allegations in Paragraph 252.

253.    Google admits in part and denies in part the allegations in Paragraph 253. Google admits the existence of a document containing the quoted language, to which document Google refers the Court for a complete and accurate statement of its contents. Google denies the allegations in Paragraph 253 in all other respects

254.    Paragraph 254 purports to describe allegations relating to the encryption of user IDs, to which no response is required because the Court found that Plaintiffs have failed to plausibly allege that Google's use of encrypted user IDs is anticompetitive conduct. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, Google denies the allegations in Paragraph 254.

**FILED UNDER SEAL**

255.    Paragraph 255 purports to describe allegations relating to the encryption of user IDs, to which no response is required because the Court found that Plaintiffs have failed to plausibly allege that Google's use of encrypted user IDs is anticompetitive conduct. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, Google denies the allegations in Paragraph 255.

256.    Paragraph 256 purports to describe allegations relating to the encryption of user IDs, to which no response is required because the Court found that Plaintiffs have failed to plausibly allege that Google's use of encrypted user IDs is anticompetitive conduct. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, Google denies the allegations in Paragraph 256.

257.    Paragraph 257 purports to describe allegations relating to the encryption of user IDs, to which no response is required because the Court found that Plaintiffs have failed to plausibly allege that Google's use of encrypted user IDs is anticompetitive conduct. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, Google admits in part and denies in part the allegations in Paragraph 257. Google admits that it hashes or encrypts the identifiers it shares with third parties in connection with publishers' impressions. Google denies the allegations in Paragraph 257 in all other respects.

258.    Paragraph 258 purports to describe allegations relating to the encryption of user IDs, to which no response is required because the Court found that Plaintiffs have failed to plausibly allege that Google's use of encrypted user IDs is anticompetitive conduct. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, Google denies the allegations in Paragraph 258.

<u>**FILED UNDER SEAL**</u>

259.    Paragraph 259 purports to describe allegations relating to the encryption of user IDs, to which no response is required because the Court found that Plaintiffs have failed to plausibly allege that Google's use of encrypted user IDs is anticompetitive conduct. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, Google admits in part and denies in part the allegations in Paragraph 259. Google denies the allegations in the first sentence of Paragraph 259. Google admits the existence of an internal experiment reflecting the findings described in the second sentence of Paragraph 259, that economists discuss the winner's curse, and that advertisers may lower their bids to avoid it in some circumstances. Google lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the fourth and fifth sentences of Paragraph 259 and, on that basis, denies those allegations. Google admits that, as a general matter, economists recognize that the winner's curse may lead bidders to bid less often and more conservatively, but lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the sixth sentence of Paragraph 259 that this accurately describes advertisers bidding on non-Google buying tools and exchanges. Google denies the allegations of Paragraph 259 in all other respects.

260.    Paragraph 260 purports to describe allegations relating to the encryption of user IDs, to which no response is required because the Court found that Plaintiffs have failed to plausibly allege that Google's use of encrypted user IDs is anticompetitive conduct. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, Google lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the last sentence of Paragraph 260 and, on that basis, denies those allegations. Google denies the allegations in Paragraph 260 in all other respects.

**FILED UNDER SEAL**

261.    Paragraph 261 purports to describe allegations relating to the encryption of user IDs, to which no response is required because the Court found that Plaintiffs have failed to plausibly allege that Google's use of encrypted user IDs is anticompetitive conduct. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, Google admits in part and denies in part the allegations in Paragraph 261. Google admits that its ad server may route a publisher's available impressions to exchanges along with information about the impression, including an identification number. Google denies the allegations in Paragraph 261 in all other respects.

262.    Paragraph 262 purports to describe allegations relating to the encryption of user IDs, to which no response is required because the Court found that Plaintiffs have failed to plausibly allege that Google's use of encrypted user IDs is anticompetitive conduct. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, Google admits in part and denies in part the allegations in Paragraph 262. Google admits that its publisher ad server was and is designed to help maximize publisher revenue, subject to the publisher's configuration and other internal and external constraints. Google denies the allegations in Paragraph 262 in all other respects.

263.    Paragraph 263 purports to describe allegations relating to the encryption of user IDs, to which no response is required because the Court found that Plaintiffs have failed to plausibly allege that Google's use of encrypted user IDs is anticompetitive conduct. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, Google admits in part and denies in part the allegations in Paragraph 263. Google admits that it hashes or encrypts the identifiers it shares with third parties in connection with publishers' impressions. Google denies the allegations in Paragraph 263 in all other respects.

FILED UNDER SEAL

264.    Paragraph 264 purports to describe allegations relating to the encryption of user IDs, to which no response is required because the Court found that Plaintiffs have failed to plausibly allege that Google's use of encrypted user IDs is anticompetitive conduct. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, Google admits in part and denies in part the allegations in Paragraph 264. Google admits the existence of documents containing the quoted language, to which documents Google refers the Court for a complete and accurate statement of their contents. To the extent the allegations in Paragraph 264 purport to characterize or describe Doubleclick's contracts, such contracts speak for themselves and Google denies any characterization or description that is inconsistent therewith. Google denies the allegations in Paragraph 264 in all other respects.

265.    Google admits in part and denies in part the allegations in Paragraph 265. Google admits that ad servers can help track and sell a publisher's ad inventory to allow the publisher to attempt to maximize its revenue or achieve other goals. The second sentence in Paragraph 265 purports to describe allegations relating to the encryption of user IDs, to which no response is required because the Court found that Plaintiffs have failed to plausibly allege that Google's use of encrypted user IDs is anticompetitive conduct. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, Google denies the allegations in the second sentence of Paragraph 265. Google denies the allegations in Paragraph 265 in all other respects.

266.    Paragraph 266 purports to describe allegations relating to the encryption of user IDs, to which no response is required because the Court found that Plaintiffs have failed to plausibly allege that Google's use of encrypted user IDs is anticompetitive conduct. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, Google denies the allegations in Paragraph 266.

<u>FILED UNDER SEAL</u>

267.    Paragraph 267 purports to describe allegations regarding Dynamic Allocation, to which no response is required because the Court found that Plaintiffs lack Article III standing to seek injunctive relief for those allegations. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, Google admits in part and denies in part the allegations in Paragraph 267. Google admits that its publisher ad server originally known as DoubleClick for Publishers included a feature known as "Dynamic Allocation." Google denies the allegations in Paragraph 267 in all other respects.

268.    Paragraph 268 purports to describe allegations regarding Dynamic Allocation, to which no response is required because the Court found that Plaintiffs lack Article III standing to seek injunctive relief for those allegations. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, Google admits in part and denies in part the allegations in Paragraph 268. Google admits that there was an industry practice known as "waterfalling" that involved sequentially offering inventory to multiple exchanges, networks, or other sources of demand. Google denies the allegations in Paragraph 268 in all other respects.

269.    Paragraph 269 purports to describe allegations regarding Dynamic Allocation, to which no response is required because the Court found that Plaintiffs lack Article III standing to seek injunctive relief for those allegations. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, Google admits in part and denies in part the allegations in Paragraph 269. Google admits that there was an industry practice known as "waterfalling" that involved sequentially offering inventory to multiple exchanges, networks, or other sources of demand, in a publisher-defined sequence. Google denies the allegations in Paragraph 269 in all other respects.

270.    Paragraph 270 purports to describe allegations regarding Dynamic Allocation, to which no response is required because the Court found that Plaintiffs lack Article III standing to

**FILED UNDER SEAL**

seek injunctive relief for those allegations. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, Google admits in part and denies in part the allegations in Paragraph 270 and the corresponding footnote. Google admits that there was an industry practice known as "waterfalling" that involved sequentially offering inventory to multiple exchanges, networks, or other sources of demand, in a publisher-defined sequence. To the extent a response is deemed necessary to the allegations in footnote 4, Google admits that "CPM" is industry shorthand for "cost per mille"; that "mille" is Latin for "thousand"; and that "CPM" is the term used to denote the price of 1,000 ad impressions. Google denies the allegations in Paragraph 270 and the corresponding footnote in all other respects.

271.    Paragraph 271 purports to describe allegations regarding Dynamic Allocation, to which no response is required because the Court found that Plaintiffs lack Article III standing to seek injunctive relief for those allegations. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, Google admits in part and denies in part the allegations in Paragraph 271. Google admits that its publisher ad server included a feature known as "Dynamic Allocation" that was designed to compare real-time bids received through Google's ad exchange with a publisher's estimate of its yield from other channels, so as to maximize the publisher's revenue; that while Dynamic Allocation only supported the DoubleClick ad exchange (both before and after Google acquired DoubleClick), publishers could configure an estimated or contracted CPM for any other non-guaranteed demand source, including exchanges or networks, and that many publishers use and used an exchange's historical performance when determining the expected value to configure for that exchange for a particular ad impression. Google denies the allegations in Paragraph 271 in all other respects.

**FILED UNDER SEAL**

272.      Paragraph 272 purports to describe allegations regarding Dynamic Allocation, to which no response is required because the Court found that Plaintiffs lack Article III standing to seek injunctive relief for those allegations. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, Google admits in part and denies in part the allegations in Paragraph 272. Google admits the existence of documents containing portions of the quoted language, to which documents Google refers the Court for a complete and accurate statement of their contents. Google denies the allegations in Paragraph 272 in all other respects.

273.      Paragraph 273 purports to describe allegations regarding Dynamic Allocation, to which no response is required because the Court found that Plaintiffs lack Article III standing to seek injunctive relief for those allegations. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, Google admits in part and denies in part the allegations in Paragraph 273. Google admits that there was an industry practice known as "waterfalling" that involved sequentially offering inventory to multiple exchanges, networks, or other sources of demand. Google also admits that AdX was not always ranked first in a publisher's waterfall, if at all. Google denies the allegations in Paragraph 273 in all other respects.

274.      Paragraph 274 purports to describe allegations regarding Dynamic Allocation, to which no response is required because the Court found that Plaintiffs lack Article III standing to seek injunctive relief for those allegations. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, Google denies the allegations in Paragraph 274.

275.      Paragraph 275 purports to describe allegations regarding Dynamic Allocation, to which no response is required because the Court found that Plaintiffs lack Article III standing to seek injunctive relief for those allegations. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, Google admits in part and denies in part the allegations in Paragraph

**FILED UNDER SEAL**

275. Google admits that its publisher ad server included a feature known as "dynamic allocation" that was designed to compare real-time bids received through Google's ad exchange with a publisher's estimate of its yield from other channels, so as to maximize the publisher's revenue. Google denies the allegations in Paragraph 275 in all other respects.

276.    Paragraph 276 purports to describe allegations regarding Dynamic Allocation, to which no response is required because the Court found that Plaintiffs lack Article III standing to seek injunctive relief for those allegations. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, Google admits in part and denies in part the allegations in Paragraph 276. Google admits the existence of a document containing portions of the quoted language, to which document Google refers the Court for a complete and accurate statement of its contents. Google denies the allegations in Paragraph 276 in all other respects.

277.    Paragraph 277 purports to describe allegations regarding Dynamic Allocation, to which no response is required because the Court found that Plaintiffs lack Article III standing to seek injunctive relief for those allegations. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, Google denies the allegations in Paragraph 277.

278.    Paragraph 278 purports to describe allegations regarding Dynamic Allocation, to which no response is required because the Court found that Plaintiffs lack Article III standing to seek injunctive relief for those allegations. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, Google admits in part and denies in part the allegations in Paragraph 278. Google admits the existence of documents containing the quoted language, to which documents Google refers the Court for a complete and accurate statement of their contents. Google denies the allegations in Paragraph 278 in all other respects.

<u>**FILED UNDER SEAL**</u>

279.    Paragraph 279 purports to describe allegations regarding Dynamic Allocation, to which no response is required because the Court found that Plaintiffs lack Article III standing to seek injunctive relief for those allegations. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, Google admits in part and denies in part the allegations in Paragraph 279. Google admits the existence of a document containing the quoted language in the second sentence of Paragraph 279, to which document Google refers the Court for a complete and accurate statement of its contents. Google denies the allegations in Paragraph 279 in all other respects.

280.    Paragraph 280 purports to describe allegations regarding Dynamic Allocation, to which no response is required because the Court found that Plaintiffs lack Article III standing to seek injunctive relief for those allegations. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, Google admits in part and denies in part the allegations in Paragraph 280. Google admits the existence of an article containing the quoted language in the third sentence of Paragraph 280, to which article Google refers the Court for a complete and accurate statement of its contents. Google lacks knowledge and information sufficient to form a belief as to the truth or falsity of the allegations in the second sentence of Paragraph 280 and, on that basis, denies those allegations. Google denies the allegations in Paragraph 280 in all other respects.

281.    Paragraph 281 purports to describe allegations regarding Dynamic Allocation, to which no response is required because the Court found that Plaintiffs lack Article III standing to seek injunctive relief for those allegations. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, Google denies the allegations in Paragraph 281.

282.    Google admits in part and denies in part the allegations in Paragraph 282. Google admits that in 2014, it launched Enhanced Dynamic Allocation, which expanded on Dynamic Allocation by allowing AdX (and other exchanges) to transact impressions that otherwise would

<u>**FILED UNDER SEAL**</u>

have been allocated to direct deals if doing so would generate more revenue for the publisher, while still fulfilling the publisher's direct deals. Google also admits that while both Dynamic Allocation and Enhanced Dynamic Allocation increased competition for a publisher's impressions and thereby increased publisher revenue, a publisher could choose not to have its impressions subject to Dynamic Allocation or Enhanced Dynamic Allocation. Google denies the allegations in Paragraph 282 in all other respects.

283.    Google admits in part and denies in part the allegations in Paragraph 283. Google admits that in 2014, it launched Enhanced Dynamic Allocation, which expanded on Dynamic Allocation by allowing AdX (and other exchanges) to transact impressions that otherwise would have been allocated to direct deals if doing so would generate more revenue for the publisher, while still fulfilling the publisher's direct deals. Google also admits that while both Dynamic Allocation and Enhanced Dynamic Allocation increased competition for a publisher's impressions and thereby increased publisher revenue, a publisher could choose not to have its impressions subject to Dynamic Allocation or Enhanced Dynamic Allocation. Google denies the allegations in Paragraph 283 in all other respects.

284.    Google admits in part and denies in part the allegations in Paragraph 284. Google admits that in 2014, it launched Enhanced Dynamic Allocation, which expanded on Dynamic Allocation by allowing AdX (and other exchanges) to transact impressions that otherwise would have been allocated to direct deals if doing so would generate more revenue for the publisher, while still fulfilling the publisher's direct deals. Google also admits that while both Dynamic Allocation and Enhanced Dynamic Allocation increased competition for a publisher's impressions and thereby increased publisher revenue, a publisher could choose not to have its impressions

**FILED UNDER SEAL**

subject to Dynamic Allocation or Enhanced Dynamic Allocation. Google denies the allegations in Paragraph 284 in all other respects.

285.    Google denies the allegations in Paragraph 285.

286.    Google denies the allegations in Paragraph 286.

287.    Google denies the allegations in Paragraph 287.

288.    Google admits in part and denies in part the allegations in Paragraph 288. Google admits that it retains a percentage of the clearing price of transactions on its ad exchange that varies based on a number of factors including publisher and transaction type. Google lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the last sentence of Paragraph 288 and, on that basis, denies those allegations. Google denies the allegations in Paragraph 288 in all other respects.

289.    Google admits in part and denies in part the allegations in Paragraph 289. Google admits that EDA causes a non-guaranteed line item to win an impression only when the highest eligible non-guaranteed line item is greater than the EDA reserve price and any other floor price; and that many publishers use and used an exchange's historical performance when determining the expected value to configure for that exchange for a particular ad impression. Google denies the allegations in Paragraph 289 in all other respects.

290.    Google admits in part and denies in part the allegations in Paragraph 290. Google admits that Google Ad Manager helps publishers maximize inventory yield, subject to the publisher's configuration and other internal and external constraints. Google denies the allegations in Paragraph 290 in all other respects.

291.    Google admits in part and denies in part the allegations in Paragraph 291. Google admits the existence of a document containing the quoted language, to which document Google

<u>**FILED UNDER SEAL**</u>

refers the Court for a complete and accurate statement of its contents. Google denies the allegations in Paragraph 291 in all other respects.

292.    Google admits in part and denies in part the allegations in Paragraph 292. Google admits the existence of a document containing the quoted language, to which document Google refers the Court for a complete and accurate statement of its contents. Google denies the allegations in Paragraph 292 in all other respects.

293.    Google denies the allegations in Paragraph 293.

294.    Paragraph 294 purports to describe allegations regarding Dynamic Allocation, to which no response is required because the Court found that Plaintiffs lack Article III standing to seek injunctive relief for those allegations. *See* MDL ECF 308 Opinion and Order.  To the extent a response is deemed necessary, Google admits in part and denies in part the allegations in Paragraph 294. Google admits that it retains a percentage of the clearing price of transactions on its ad exchange that varies based on a number of factors including publisher and transaction type. Google denies the allegations in Paragraph 294 in all other respects.

295.    Google admits in part and denies in part the allegations in Paragraph 295. Google admits that Google Ad Manager can be used to manage a publisher's inventory, including relationships with other exchanges, and to maximize inventory yield, subject to the publisher's configuration and other internal and external constraints. Google denies the allegations in Paragraph 295 in all other respects.

296.    Google denies the allegations in Paragraph 296.

297.    No response is required to sections (2) and (3) of the last sentence of Paragraph 297, because the Court found that Plaintiffs lack Article III standing to seek injunctive relief for allegations regarding Dynamic Revenue Share ("DRS") and because the Court held that Plaintiffs

FILED UNDER SEAL

failed to plausibly allege that Reserve Price Optimization ("RPO") was anticompetitive conduct. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary to sections (2) and (3) of the last sentence of Paragraph 297, Google denies those allegations. Google denies the allegations in Paragraph 297 in all other respects.

298. Google admits in part and denies in part the allegations in Paragraph 298. Google admits the existence of a Google Ads bidding optimization feature called Project Bernanke, which launched in 2013. Google denies the allegations in Paragraph 298 in all other respects.

299. Google admits in part and denies in part the allegations in Paragraph 299. Google lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the first sentence in Paragraph 299, and, on that basis, denies those allegations. Google admits that generally in a first-price auction, the advertiser who bid the highest amount above the publishers' minimum floor price wins and pays the amount it bid. Google admits that generally in a second-price auction, the advertiser who bid the highest amount above the publisher's minimum floor price wins and pays the higher of (1) the second-highest bid, or (2) the floor price. Google admits that generally in a third-price auction, the buyer would pay the amount of the third-highest bid. Google denies the allegations in Paragraph 299 in all other respects.

300. Google admits in part and denies in part the allegations in Paragraph 300. Google admits that, prior to late 2019, AdX operated as a second-price auction. Google also admits the existence of an adexchanger.com article containing portions of the language quoted in the second and third sentences of Paragraph 300, to which article Google refers the Court for a complete and accurate statement of its contents. Google further admits the existence of a document containing the language quoted in the fourth and fifth sentences of Paragraph 300, to which document Google

**FILED UNDER SEAL**

refers the Court for a complete and accurate statement of its contents. Google denies the allegations in Paragraph 300 in all other respects.

301.    Google admits in part and denies in part the allegations in Paragraph 301. Google admits that ad exchanges send "bid requests" to eligible bidders; that ad buying tools can evaluate the bid request, determine whether to submit a bid and, if so, how much to bid, and return a bid response to the exchange before the timeout expires (which is often less than a second) and without knowing other bidders' bids; and that, in second-price auctions, the winning bidder typically pays the amount of the second-highest bid or the floor price, whichever is greater. Google denies the allegations in Paragraph 301 in all other respects.

302.    Google admits in part and denies in part the allegations in Paragraph 302. Google admits that publishers could set different price floors for different buyers and that, in a second-price auction, if only the highest bid exceeds the applicable floor (with the second-highest bid falling below the floor), then the floor will serve as the second-highest bid, such that the winner will pay an amount equal to the floor. Google lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the second sentence of Paragraph 302 and, on that basis, denies those allegations. Figure 8 purports to describe price floors in second-price auctions, to which no response is required. To the extent a response is deemed necessary, Google denies that Figure 8 presents a fair, accurate, and complete description of the matters described therein and, on that basis, denies the allegations contained in Figure 8 in Paragraph 302. Google denies the allegations in Paragraph 302 in all other respects.

303.    Google denies the allegations in Paragraph 303.

304.    Figure 9 purports to describe the Bernanke program, to which no response is required. To the extent a response is deemed necessary, Google denies that Figure 9 presents a

**FILED UNDER SEAL**

fair, accurate, and complete description of the matters described therein and, on that basis, denies the allegations contained in Figure 9 in Paragraph 304. Google denies the allegations in Paragraph 304 in all other respects.

305.    Google admits in part and denies in part the allegations in Paragraph 305. Google admits the existence of a document containing the quoted language in the second sentence of Paragraph 305, to which document Google refers the Court for a complete and accurate statement of its contents. Google denies the allegations in Paragraph 305 in all other respects.

306.    Google admits in part and denies in part the allegations in Paragraph 306. Google admits that Project Bernanke is intended to increase advertisers' win rates in Google's ad exchange. Google denies the allegations in Paragraph 306 in all other respects.

307.    Google admits in part and denies in part the allegations in Paragraph 307. Google admits that Project Bernanke uses data about historical bids through Google Ads (comparable to data maintained by other buying tools) to adjust Google Ads' bids on certain auctions to increase its likelihood of winning impressions that would otherwise be won by other buying tools or go unfilled. Google denies the allegations in Paragraph 307 in all other respects.

308.    Google admits in part and denies in part the allegations in Paragraph 308. Google admits that advertisers buying through networks, demand-side platforms, or other buying tools participating on Google's ad exchange win auctions when they have the highest net bid (including a net bid higher than those of advertisers using Google's buying tools); that the Bernanke program has increased Google Ads' win rate within Google's ad exchange; and the existence of a document containing the quoted language in the last sentence of Paragraph 308, to which document Google refers the Court for a complete and accurate statement of its contents. Google denies the allegations in Paragraph 308 in all other respects.

FILED UNDER SEAL

309.    Google admits in part and denies in part the allegations in Paragraph 309. Google admits that it developed different versions of the Bernanke program and that the program was intended to increase the win rates in Google's ad exchange for advertisers who use Google Ads. Google denies the allegations in Paragraph 309 in all other respects.

310.    Google admits in part and denies in part the allegations in Paragraph 310. Google admits that it launched another version of Bernanke, called Global Bernanke, in August 2015. Google denies the allegations in Paragraph 310 in all other respects.

311.    Google admits in part and denies in part the allegations in Paragraph 311. Google admits that it developed different versions of the Bernanke program. Google also admits the existence of a document containing the quoted language in the sixth sentence of Paragraph 311, to which document Google refers the Court for a complete and accurate statement of its contents. Google denies the allegations in Paragraph 311 in all other respects.

312.    Google admits in part and denies in part the allegations in Paragraph 312. Google admits that, consistent with its practice and customers' expectations, details of Project Bernanke's operations were not disclosed to publishers, although publishers do have transparency into the final bids submitted by Google Ads and other buying tools/demand-side platforms. Google denies the allegations in Paragraph 312 in all other respects.

313.    Google admits in part and denies in part the allegations in Paragraph 313. Google admits the existence of a document containing portions of the quoted language, to which document Google refers the Court for a complete and accurate statement of its contents. Google denies the allegations in Paragraph 313 in all other respects.

**FILED UNDER SEAL**

314.    Google lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the second sentence of Paragraph 314 and, on that basis, denies those allegations. Google denies the allegations in Paragraph 314 in all other respects.

315.    Google lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the fourth and fifth sentences of Paragraph 315 and, on that basis, denies those allegations. Google denies the allegations in Paragraph 315 in all other respects.

316.    Google admits in part and denies in part the allegations in Paragraph 316. Google admits that advertisers buying through networks, demand-side platforms, or other buying tools participating on Google's ad exchange win auctions when they have the highest net bid (including a net bid higher than those of advertisers using Google's buying tools); and that the Bernanke program has increased Google Ads' win rate within Google's ad exchange. To the extent that the allegations in the second sentence of Paragraph 316 purport to characterize or describe unspecified documents, those documents speak for themselves and Google denies any characterization or description inconsistent therewith. Google denies the allegations in Paragraph 316 in all other respects.

317.    Google admits in part and denies in part the allegations in Paragraph 317. Google admits that the Bernanke program increased the win rate on Google's ad exchange for advertisers who use Google Ads and the existence of a document containing the figure referenced in the first sentence of Paragraph 317, to which document Google refers the Court for a complete and accurate statement of its contents. Google also admits the existence of documents containing the figures referenced in the second and third sentences of Paragraph 317, to which documents Google refers the Court for a complete and accurate statement of their contents. Google further admits the existence of a gTrade 2013 strategy document with the depicted screenshot, to which document

**FILED UNDER SEAL**

Google refers the Court for a complete and accurate statement of its contents. Google denies the allegations in Paragraph 317 in all other respects.

318.    Paragraph 318 purports to describe allegations regarding DRS, to which no response is required because the Court found that Plaintiffs lack Article III standing to seek injunctive relief for those allegations. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, Google admits in part and denies in part the allegations in Paragraph 318. Google admits that its ad exchange supported a feature called DRS and that, if enabled by the publisher, DRS dynamically adjusted the revenue share retained by Google's ad exchange for particular impressions to allow more bids to clear the applicable price floors. Google denies the allegations in Paragraph 318 in all other respects.

319.    Google admits in part and denies in part the allegations in Paragraph 319. Google admits that AdX would not be able to transact an impression if the net bid was below the publisher's floor price. Google denies the allegations in Paragraph 319 in all other respects.

320.    Paragraph 320 and Figure 10 purport to describe allegations regarding DRS, to which no response is required because the Court found that Plaintiffs lack Article III standing to seek injunctive relief for those allegations. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, Google denies the allegations in Paragraph 320. Google also denies that the characterization of Figure 10 presents a fair, accurate, and complete description of the matters described therein and, on that basis, denies the allegations contained in Figure 10.

321.    Paragraph 321 purports to describe allegations regarding DRS, to which no response is required because the Court found that Plaintiffs lack Article III standing to seek injunctive relief for those allegations. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, Google lacks knowledge or information sufficient to form a belief

**FILED UNDER SEAL**

as to the truth or falsity of the allegations in the second sentence of Paragraph 321 and, on that basis, denies those allegations. Google denies the allegations in Paragraph 321 in all other respects.

322.    Paragraph 322 purports to describe allegations regarding DRS, to which no response is required because the Court found that Plaintiffs lack Article III standing to seek injunctive relief for those allegations. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, Google denies the allegations in Paragraph 322.

323.    Paragraph 323 purports to describe allegations regarding DRS, to which no response is required because the Court found that Plaintiffs lack Article III standing to seek injunctive relief for those allegations. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, Google denies the allegations in Paragraph 323.

324.    Paragraph 324 purports to describe allegations regarding DRS, to which no response is required because the Court found that Plaintiffs lack Article III standing to seek injunctive relief for those allegations. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, Google admits in part and denies in part the allegations in Paragraph 324. Google admits the existence of a document containing portions of the quoted language, to which document Google refers the Court for a complete and accurate statement of its contents. Google denies the allegations in Paragraph 324 in all other respects.

325.    Paragraph 325 purports to describe allegations regarding DRS, to which no response is required because the Court found that Plaintiffs lack Article III standing to seek injunctive relief for those allegations. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, Google denies the allegations in Paragraph 325.

326.    Paragraph 326 purports to describe allegations regarding DRS, to which no response is required because the Court found that Plaintiffs lack Article III standing to seek

**FILED UNDER SEAL**

injunctive relief for those allegations. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, Google admits in part and denies in part the allegations in Paragraph 326. Google admits that DRS was launched on or about August 20, 2015, and that, for a period of time, it was intended to apply to all AdX publishers. Google denies the allegations in Paragraph 326 in all other respects.

327.    Paragraph 327 purports to describe allegations regarding DRS, to which no response is required because the Court found that Plaintiffs lack Article III standing to seek injunctive relief for those allegations. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, Google admits in part and denies in part the allegations in Paragraph 327. Google admits the existence of documents containing portions of the quoted language, to which documents Google refers the Court for a complete and accurate statement of their contents. Google denies the allegations in Paragraph 327 in all other respects.

328.    Paragraph 328 purports to describe allegations regarding DRS, to which no response is required because the Court found that Plaintiffs lack Article III standing to seek injunctive relief for those allegations. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, Google denies the allegations in Paragraph 328.

329.    Paragraph 329 purports to describe allegations regarding DRS, to which no response is required because the Court found that Plaintiffs lack Article III standing to seek injunctive relief for those allegations. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, and to the extent the allegations in the first sentence of Paragraph 329 purport to characterize or describe unidentified documents or other sources, such sources speak for themselves and Google denies any characterization or description that is inconsistent therewith. Google denies the allegations in Paragraph 329 in all other respects.

**FILED UNDER SEAL**

330.    Paragraph 330 purports to describe allegations regarding DRS, to which no response is required because the Court found that Plaintiffs lack Article III standing to seek injunctive relief for those allegations. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, and to the extent the allegations in the fifth sentence of Paragraph 330 purport to characterize or describe unspecified internal documents, such documents speak for themselves and Google denies any characterization or description that is inconsistent therewith. Google denies the allegations in Paragraph 330 in all other respects.

331.    Paragraph 331 purports to describe allegations regarding RPO, to which no response is required because the Court found that Plaintiffs failed to plausibly allege that RPO was anticompetitive conduct. *See* MDL ECF 308 Opinion and Order.  To the extent a response is deemed necessary, Google admits in part and denies in part the allegations in Paragraph 331. Google admits that it launched RPO in 2015. Google denies the allegations in Paragraph 331 in all other respects.

332.    Paragraph 332 purports to describe allegations regarding RPO, to which no response is required because the Court found that Plaintiffs failed to plausibly allege that RPO was anticompetitive conduct. *See* MDL ECF 308 Opinion and Order.  To the extent a response is deemed necessary, Google admits in part and denies in part the allegations in Paragraph 332. Google admits that bidders in a second-price auction are incentivized to bid what they value the item they are bidding on to be worth and that, prior to late 2019, AdX operated as a second-price auction. Google denies the allegations in Paragraph 332 in all other respects.

333.    Paragraph 333 purports to describe allegations regarding RPO, to which no response is required because the Court found that Plaintiffs failed to plausibly allege that RPO was anticompetitive conduct. *See* MDL ECF 308 Opinion and Order.  To the extent a response is

<u>**FILED UNDER SEAL**</u>

deemed necessary, Google admits in part and denies in part the allegations in Paragraph 333. Google admits the existence of an adexchanger.com article containing portions of the quoted language in the second sentence of Paragraph 333, to which article Google refers the Court for a complete and accurate statement of its contents. Google denies the allegations in Paragraph 333 in all other respects.

334.    Paragraph 334 purports to describe allegations regarding RPO, to which no response is required because the Court found that Plaintiffs failed to plausibly allege that RPO was anticompetitive conduct. *See* MDL ECF 308 Opinion and Order.  To the extent a response is deemed necessary, Google lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the first sentence of Paragraph 334 and, on that basis, denies those allegations. Google denies the allegations in Paragraph 334 in all other respects.

335.    Paragraph 335 purports to describe allegations regarding RPO, to which no response is required because the Court found that Plaintiffs failed to plausibly allege that RPO was anticompetitive conduct. *See* MDL ECF 308 Opinion and Order.  To the extent a response is deemed necessary, Google admits in part and denies in part the allegations in Paragraph 335. Google admits that RPO generated dynamic per-buyer floor prices based, in part, on historical bids. Google denies the allegations in Paragraph 335 in all other respects.

336.    Paragraph 336 purports to describe allegations regarding RPO, to which no response is required because the Court found that Plaintiffs failed to plausibly allege that RPO was anticompetitive conduct. *See* MDL ECF 308 Opinion and Order.  To the extent a response is deemed necessary, Google denies the allegations in Paragraph 336.

337.    Paragraph 337 purports to describe allegations regarding RPO, to which no response is required because the Court found that Plaintiffs failed to plausibly allege that RPO was

<u>**FILED UNDER SEAL**</u>

anticompetitive conduct. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, Google admits in part and denies in part the allegations in Paragraph 337. Google admits the existence of a document containing the quoted language in the last sentence of Paragraph 337, to which document Google refers the Court for a complete and accurate statement of its contents. Google denies the allegations in Paragraph 337 in all other respects.

338.    Paragraph 338 purports to describe allegations regarding RPO, to which no response is required because the Court found that Plaintiffs failed to plausibly allege that RPO was anticompetitive conduct. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, Google denies the allegations in Paragraph 338.

339.    Paragraph 339 purports to describe allegations regarding RPO, to which no response is required because the Court found that Plaintiffs failed to plausibly allege that RPO was anticompetitive conduct. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, Google denies the allegations in Paragraph 339.

340.    Paragraph 340 purports to describe allegations regarding RPO, to which no response is required because the Court found that Plaintiffs failed to plausibly allege that RPO was anticompetitive conduct. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, Google admits in part and denies in part the allegations in Paragraph 340. Google admits that RPO was launched in 2015. Google denies the allegations in Paragraph 340 in all other respects.

341.    Paragraph 341 purports to describe allegations regarding RPO, to which no response is required because the Court found that Plaintiffs failed to plausibly allege that RPO was anticompetitive conduct. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, Google admits in part and denies in part the allegations in Paragraph 341.

**FILED UNDER SEAL**

Google admits the existence of a March 5, 2015 Digiday article containing the quoted language, to which article Google refers the Court for a complete and accurate statement of its contents. Google denies the allegations in Paragraph 341 in all other respects.

342.    Paragraph 342 purports to describe allegations regarding RPO, to which no response is required because the Court found that Plaintiffs failed to plausibly allege that RPO was anticompetitive conduct. *See* MDL ECF 308 Opinion and Order.  To the extent a response is deemed necessary, Google denies the allegations in Paragraph 342.

343.    Paragraph 343 purports to describe allegations regarding RPO, to which no response is required because the Court found that Plaintiffs failed to plausibly allege that RPO was anticompetitive conduct. *See* MDL ECF 308 Opinion and Order.  To the extent a response is deemed necessary, Google admits in part and denies in part the allegations in Paragraph 343. Google admits that it published a blog post on May 12, 2016, containing the quoted language, to which blog post Google refers the Court for a complete and accurate statement of its contents. Google denies the allegations in Paragraph 343 in all other respects.

344.    Paragraph 344 purports to describe allegations regarding RPO, to which no response is required because the Court found that Plaintiffs failed to plausibly allege that RPO was anticompetitive conduct. *See* MDL ECF 308 Opinion and Order.  To the extent a response is deemed necessary, Google lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the fourth sentence of Paragraph 344 and, on that basis, denies those allegations. Google denies the allegations in Paragraph 344 in all other respects.

345.    Paragraph 345 purports to describe allegations regarding RPO, to which no response is required because the Court found that Plaintiffs failed to plausibly allege that RPO was anticompetitive conduct. *See* MDL ECF 308 Opinion and Order.  To the extent a response is

**FILED UNDER SEAL**

deemed necessary, Google admits in part and denies in part the allegations in Paragraph 345. Google admits that it published a blog post on May 12, 2016, containing the quoted language in the second sentence of Paragraph 345, to which blog post Google refers the Court for a complete and accurate statement of its contents. Google also admits the existence of a document containing portions of the quoted language in the fifth sentence of Paragraph 345, to which document Google refers the Court for a complete and accurate statement of its contents. Google denies the allegations in Paragraph 345 in all other respects.

346.    Paragraph 346 purports to describe allegations regarding RPO, to which no response is required because the Court found that Plaintiffs failed to plausibly allege that RPO was anticompetitive conduct. *See* MDL ECF 308 Opinion and Order.   To the extent a response is deemed necessary, Google admits in part and denies in part the allegations in Paragraph 346. Google admits that, prior to late 2019, AdX operated as a second-price auction. To the extent the allegations in the second and third sentences of Paragraph 346 purport to characterize or describe unspecified industry articles or other sources, such articles and sources speak for themselves and Google denies any characterization or description that is inconsistent therewith. Google denies the allegations in Paragraph 346 in all other respects.

347.    Paragraph 347 purports to describe allegations regarding RPO, to which no response is required because the Court found that Plaintiffs failed to plausibly allege that RPO was anticompetitive conduct. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, Google admits in part and denies in part the allegations in Paragraph 347. Google admits the existence of documents containing portions of the quoted language, to which documents Google refers the Court for a complete and accurate statement of their contents. Google denies the allegations in Paragraph 347 in all other respects.

**FILED UNDER SEAL**

348.    Paragraph 348 purports to describe allegations regarding RPO, to which no response is required because the Court found that Plaintiffs failed to plausibly allege that RPO was anticompetitive conduct. *See* MDL ECF 308 Opinion and Order.  To the extent a response is deemed necessary, Google admits in part and denies in part the allegations in Paragraph 348. Google admits that because RPO was included as a standard part of the AdX Open Auction, it was not a feature publishers participating in the Open Auction could turn off. Google also admits that it has offered a feature named "optimized pricing" after migrating to a first-price auction. To the extent the allegations in the second sentence of Paragraph 348 purport to characterize or describe unspecified documents, such documents speak for themselves and Google denies any characterization or description inconsistent therewith. Google denies the allegations in Paragraph 348 in all other respects.

349.    Paragraph 349 purports to describe antitrust allegations relating to RPO, to which no response is required because the Court found that Plaintiffs have failed to plausibly allege that RPO is anticompetitive conduct. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, Google denies the allegations in Paragraph 349.

350.    To the extent the allegations in Paragraph 350 relate to RPO, no response is required because the Court held that Plaintiffs failed to plausibly allege that RPO was anticompetitive conduct. *See* MDL ECF 308 Opinion and Order. To the extent the allegations in Paragraph 350 relate to DRS, no response is required because the Court found that Plaintiffs lack Article III standing to seek injunctive relief for those allegations. *See id*. To the extent a response is deemed necessary, Google denies the allegations in Paragraph 350.

351.    To the extent the allegations in Paragraph 351 relate to RPO, no response is required because the Court held that Plaintiffs failed to plausibly allege that RPO was anticompetitive

**FILED UNDER SEAL**

conduct. *See* MDL ECF 308 Opinion and Order. To the extent the allegations in Paragraph 351 relate to DRS, no response is required because the Court found that Plaintiffs lack Article III standing to seek injunctive relief for those allegations. *See id*. To the extent a response is deemed necessary, Google admits in part and denies in part the allegations in Paragraph 351. Google admits the existence of a document containing the quoted language in the fourth sentence of Paragraph 351, to which document Google refers the Court for a complete and accurate statement of its contents. Google denies the allegations in Paragraph 351 in all other respects.

352.    Google admits in part and denies in part the allegations in Paragraph 352. Google admits the existence of a technology known as header bidding, and that header bidding was designed to allow publishers to send bid requests for their inventory to multiple exchanges and other demand sources and to evaluate the responses to such requests. Google admits that non-Google exchanges can participate in header bidding. Google admits that header bidding was and remains popular, including after Exchange Bidding became available, and that the adoption rate of header bidding among publishers ranged from 73.1% to 79.2% between 2018 and 2019. Google admits the existence of a document containing the quoted language in the fourth, fifth, sixth, and seventh sentences of Paragraph 352, to which document Google refers the Court for a complete and accurate statement of its contents. Google denies the allegations in Paragraph 352 in all other respects.

353.    Google admits in part and denies in part the allegations in Paragraph 353. Google admits that publishers, including those using Google Ad Manager, can implement header bidding by inserting code into the HTML header of their webpages and that header bidding can enable bid requests to multiple exchanges and other demand sources, with the bid selected by the header bidding code then being passed back to the publisher's ad server. To the extent Paragraph 353

purports to describe allegations relating to Dynamic Allocation and RPO, no response is required because the Court found that Plaintiffs lack Article III standing to seek injunctive  relief for allegations relating to Dynamic Allocation and Plaintiffs failed to plausibly allege that RPO was anticompetitive conduct. *See* MDL ECF 308 Opinion and Order. Google denies the allegations in Paragraph 353 in all other respects.

354.    Google denies the allegations in Paragraph 354.

355.    Google admits in part and denies in part the allegations in Paragraph 355. Google admits that header bidding was and remains popular, including after Exchange Bidding became available, and that the adoption rate of header bidding among publishers ranged from 73.1% to 79.2% between 2018 and 2019. Google lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the second and third sentences of Paragraph 355 and, on that basis, denies those allegations. Google admits the existence of a document containing the figure set forth in the last sentence of Paragraph 355, to which document Google refers the Court for a complete and accurate statement of its contents. Google denies the allegations in Paragraph 355 in all other respects.

356.    Google admits in part and denies in part the allegations in Paragraph 356. Google admits that publishers can facilitate the implementation of header bidding using pre-built code libraries offered by third parties. Google lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the second sentence of Paragraph 356 and, on that basis, denies those allegations. Google denies the allegations in Paragraph 356 in all other respects.

357.    To the extent Paragraph 357 purports to describe allegations regarding Dynamic Allocation, no response is required because the Court found that Plaintiffs lack Article III standing to seek injunctive relief for those allegations. *See* MDL ECF 308 Opinion and Order. To the extent

**FILED UNDER SEAL**

a response is deemed necessary, Google admits in part and denies in part the allegations in Paragraph 357. Google admits that header bidding was and remains popular, including after Exchange Bidding became available, and that the adoption rate of header bidding among publishers ranged from 73.1% to 79.2% between 2018 and 2019. Google admits the existence of a document containing the quoted language in the first sentence of Paragraph 357, to which document Google refers the Court for a complete and accurate statement of its contents. Google denies the allegations in Paragraph 357 in all other respects.

358.    Google admits in part and denies in part the allegations in Paragraph 358. Google lacks knowledge and information sufficient to form a belief as to the truth or falsity of the allegations in the first and fourth sentences of Paragraph 358 and, on that basis, denies those allegations. Google admits the existence of documents containing the figures in the second and third sentences of Paragraph 358, to which documents Google refers the Court for a complete and accurate statement of their contents. Google denies the allegations in Paragraph 358 in all other respects.

359.    Paragraph 359 purports to describe allegations regarding Dynamic Allocation, to which no response is required because the Court found that Plaintiffs lack Article III standing to seek injunctive relief for those allegations. *See* MDL ECF 308 Opinion and Order. To the extent a response is required, and in all other respects, Google denies the allegations in Paragraph 359.

360.    Google admits in part and denies in part the allegations in Paragraph 360. Google admits that consumers benefit from goods and services that are lower priced and of higher quality. Google lacks knowledge and information sufficient to form a belief as to the truth or falsity of the allegations in the second and third sentences of Paragraph 360 and, on that basis, denies those allegations. Google denies the allegations in Paragraph 360 in all other respects.

**FILED UNDER SEAL**

361.    To the extent the allegations in Paragraph 361 purport to characterize or describe unspecified "internal documents," such sources speak for themselves and Google denies any characterization or description that is inconsistent therewith. Google denies the allegations in Paragraph 361 in all other respects.

362.    Google admits in part and denies in part the allegations in Paragraph 362. Google admits the existence of a document containing substantially the quoted language in the fifth sentence of Paragraph 362, to which document Google refers the Court for a complete and accurate statement of its contents. Google lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the third sentence of Paragraph 362 and, on that basis, denies those allegations. Google denies the allegations in Paragraph 362 in all other respects.

363.    Google admits in part and denies in part the allegations in Paragraph 363. Google admits the existence of a document containing the quoted language in the fourth sentence of Paragraph 363, to which document Google refers the Court for a complete and accurate statement of its contents.  Google denies the allegations in Paragraph 363 in all other respects.

364.    Google admits in part and denies in part the allegations in Paragraph 364. Google admits the existence of a document containing the quoted language in the second, third, fourth, and fifth sentences of Paragraph 364, to which document Google refers the Court for a complete and accurate statement of its contents. Google denies the allegations in Paragraph 364 in all other respects.

365.    Google admits in part and denies in part the allegations in Paragraph 365. Google admits the existence of an internal project called the "Header Bidding Observatory" whose goals included understanding header bidding's evolution and effects. Google also admits the existence of a document containing the language quoted in the third sentence of Paragraph 365, to which

**FILED UNDER SEAL**

document Google refers the Court for a complete and accurate statement of its contents. Google denies the allegations in Paragraph 365 in all other respects.

366.    Paragraph 366 purports to describe allegations regarding Google's Exchange Bidding, to which no response is required because the Court found that the Plaintiffs have not plausibly alleged that Exchange Bidding harmed competition. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, Google admits in part and denies in part the allegations in Paragraph 366. Google admits that it developed a feature known as Exchange Bidding to permit non-Google exchanges to bid into auctions in Google Ad Manager.  Google further admits that Exchange Bidding had a project codename "Jedi." Google denies the allegations in Paragraph 366 in all other respects.

367.    Paragraph 367 purports to describe allegations relating to Google's Exchange Bidding, to which no response is required because the Court found that the Plaintiffs have not plausibly alleged that Exchange Bidding harmed competition, and relating to the encryption of user IDs, to which no response is required because the Court found that Plaintiffs have failed to plausibly allege that Google's use of encrypted user IDs is anticompetitive conduct. *See* MDL ECF 308 Opinion and Order.  To the extent a response is deemed necessary, Google admits in part and denies in part the allegations in Paragraph 367. Google admits that it developed a feature known as Exchange Bidding to permit non-Google exchanges to bid into auctions in Google Ad Manager. Google denies the allegations in Paragraph 367 in all other respects.

368.    Paragraph 368 purports to describe allegations regarding Google's Exchange Bidding, to which no response is required because the Court found that the Plaintiffs have not plausibly alleged that Exchange Bidding harmed competition. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, Google admits in part and denies in part the

<u>FILED UNDER SEAL</u>

allegations in Paragraph 368. Google admits that it developed a feature known as Exchange Bidding to permit non-Google exchanges to bid into auctions in Google Ad Manager. Google denies the allegations in Paragraph 368 in all other respects.

369.    Paragraph 369 purports to describe allegations regarding Google's Exchange Bidding, to which no response is required because the Court found that the Plaintiffs have not plausibly alleged that Exchange Bidding harmed competition. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, Google admits in part and denies in part the allegations in Paragraph 369. Google admits that it developed a feature known as Exchange Bidding to permit non-Google exchanges to bid into auctions in Google Ad Manager. Google also admits the existence of a document containing the quoted language in the third sentence of Paragraph 369, to which document Google refers the Court for a complete and accurate statement of its contents. Google denies the allegations in Paragraph 369 in all other respects.

370.    Paragraph 370 purports to describe allegations regarding Google's Exchange Bidding, to which no response is required because the Court found that the Plaintiffs have not plausibly alleged that Exchange Bidding harmed competition. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, Google admits in part and denies in part the allegations in Paragraph 370. Google admits that it developed a feature known as Exchange Bidding to permit non-Google exchanges to bid into auctions in Google Ad Manager. Google denies the allegations in Paragraph 370 in all other respects.

371.    Paragraph 371 purports to describe allegations regarding Google's Exchange Bidding, to which no response is required because the Court found that the Plaintiffs have not plausibly alleged that Exchange Bidding harmed competition. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, Google admits in part and denies in part the

**FILED UNDER SEAL**

allegations in Paragraph 371. Google admits that it developed a feature known as Exchange Bidding to permit non-Google exchanges to bid into auctions in Google Ad Manager. Google also admits the existence of a document containing the quoted language in the fifth sentence of Paragraph 371, to which document Google refers the Court for a complete and accurate statement of its contents. Google denies the allegations in Paragraph 371 in all other respects.

372.    Paragraph 372 purports to describe allegations regarding Google's Exchange Bidding, to which no response is required because the Court found that the Plaintiffs have not plausibly alleged that Exchange Bidding harmed competition. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, Google denies the allegations in Paragraph 372.

373.    Paragraph 373 purports to describe allegations regarding Google's Exchange Bidding, to which no response is required because the Court found that the Plaintiffs have not plausibly alleged that Exchange Bidding harmed competition. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, Google admits in part and denies in part the allegations in Paragraph 373. Google admits that it developed a feature known as Exchange Bidding to permit non-Google exchanges to bid into auctions in Google Ad Manager.  Google also admits the existence of a document containing the quoted language, to which document Google refers the Court for a complete and accurate statement of its contents. Google denies the allegations in Paragraph 373 in all other respects.

374.    Paragraph 374 purports to describe allegations regarding Google's Exchange Bidding, to which no response is required because the Court found that the Plaintiffs have not plausibly alleged that Exchange Bidding harmed competition. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, Google admits in part and denies in part the

<u>**FILED UNDER SEAL**</u>

allegations in Paragraph 374. Google admits the existence of a document containing the quoted language in the second sentence of Paragraph 374, to which document Google refers the Court for a complete and accurate statement of its contents. Google denies the allegations in Paragraph 374 in all other respects.

375.    Paragraph 375 purports to describe allegations regarding Google's Exchange Bidding, to which no response is required because the Court found that the Plaintiffs have not plausibly alleged that Exchange Bidding harmed competition. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, Google admits in part and denies in part the allegations in Paragraph 375. Google admits that it developed a feature known as Exchange Bidding to permit non-Google exchanges to bid into auctions in Google Ad Manager. Google denies the allegations in Paragraph 375 in all other respects.

376.    Paragraph 376 purports to describe allegations relating to Google's Exchange Bidding, to which no response is required because the Court found that the Plaintiffs have not plausibly alleged that Exchange Bidding harmed competition. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, Google admits in part and denies in part the allegations in Paragraph 376. Google admits that it developed a feature known as Exchange Bidding to permit non-Google exchanges to bid into auctions in Google Ad Manager. Google denies the allegations in Paragraph 376 in all other respects.

377.    Paragraph 377 purports to describe allegations relating to Dynamic Allocation, to which no response is required because the Court found that Plaintiffs lack Article III standing to seek injunctive relief for those allegations, and regarding Exchange Bidding, to which no response is required because the Court found that the Plaintiffs have not plausibly alleged that Exchange Bidding harmed competition. *See* MDL ECF 308 Opinion and Order. To the extent a response is

<u>FILED UNDER SEAL</u>

deemed necessary, Google admits in part and denies in part the allegations in Paragraph 377. Google admits the existence of a document containing the quoted language in the last sentence of Paragraph 377, to which document Google refers the Court for a complete and accurate statement of its contents. Google denies the allegations in Paragraph 377 in all other respects.

378.    Paragraph 378 purports to describe allegations relating to Google's Exchange Bidding, to which no response is required because the Court found that the Plaintiffs have not plausibly alleged that Exchange Bidding harmed competition. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, Google admits in part and denies in part the allegations in Paragraph 378. Google admits that it developed a feature known as Exchange Bidding to permit non-Google exchanges to bid into auctions in Google Ad Manager. Google denies the allegations in Paragraph 378 in all other respects.

379.    Paragraph 379 purports to describe allegations regarding Google's Exchange Bidding, to which no response is required because the Court found that the Plaintiffs have not plausibly alleged that Exchange Bidding harmed competition. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, Google admits in part and denies in part the allegations in Paragraph 379. Google admits the existence of a document containing the quoted language, to which document Google refers the Court for a complete and accurate statement of its contents. Google denies the allegations in Paragraph 379 in all other respects.

380.    Paragraph 380 purports to describe allegations regarding Google's Exchange Bidding, to which no response is required because the Court found that the Plaintiffs have not plausibly alleged that Exchange Bidding harmed competition. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, Google admits in part and denies in part the allegations in Paragraph 380. Google admits that "minimum bid to win" data are related to the

**FILED UNDER SEAL**

price an auction participant would have had to bid to win a particular auction, and further admits that it shares such data with bidders that submitted bids to Google Ad Manager for a given auction at the conclusion of such auction. Google denies the allegations in Paragraph 380 in all other respects.

381.    Paragraph 381 purports to describe allegations regarding Google's Exchange Bidding, to which no response is required because the Court found that the Plaintiffs have not plausibly alleged that Exchange Bidding harmed competition. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, Google admits in part and denies in part the allegations in Paragraph 381. Google admits the existence of a document containing the quoted language in the last sentence of Paragraph 381, to which document Google refers the Court for a complete and accurate statement of its contents. Google further admits that Google's advertiser-facing tools, like competitive buying tools, use historical data to attempt to model the optimal bids for impressions to improve value for advertisers. Google denies the allegations in Paragraph 381 in all other respects.

382.    Google admits in part and denies in part the allegations in Paragraph 382. Google admits the existence of a document containing the figures in the second sentence of Paragraph 382, to which document Google refers the Court for a complete and accurate statement of its contents. Google denies the allegations in Paragraph 382 in all other respects.

383.    Paragraph 383 purports to describe allegations relating to Google's Exchange Bidding, to which no response is required because the Court found that the Plaintiffs have not plausibly alleged that Exchange Bidding harmed competition. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, Google denies the allegations in Paragraph 383 in all other respects.

FILED UNDER SEAL

384.    Paragraph 384 purports to describe allegations relating to Google's Exchange Bidding, to which no response is required because the Court found that the Plaintiffs have not plausibly alleged that Exchange Bidding harmed competition. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, and in all other respects, Google denies the allegations in Paragraph 384.

385.    Google admits in part and denies in part the allegations in Paragraph 385. Google admits the existence of an internal project called the "Header Bidding Observatory" whose goals included understanding the evolution and effects of header bidding. Google also admits the existence of documents containing substantially the quoted language in the second, fourth, sixth, and seventh sentences of Paragraph 385, to which documents Google refers the Court for a complete and accurate statement of their contents. Google lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the third sentence of Paragraph 385 and, on that basis, denies those allegations. The image at the end of Paragraph 385 purports to be a portion of a Google document, to which no response is required. To the extent a response is deemed necessary, Google denies that the image at the end of Paragraph 385 presents a fair, accurate, and complete description of the matters described therein and, on that basis, denies the allegations contained in the image at the end of Paragraph 385. Google denies the allegations in Paragraph 385 in all other respects.

386.    Google admits in part and denies in part the allegations in Paragraph 386. Google admits the existence of a document containing the quoted language in the second sentence of Paragraph 386, to which document Google refers the Court for a complete and accurate statement of its contents. Google denies the allegations in Paragraph 386 in all other respects.

**FILED UNDER SEAL**

387.    Google admits in part and denies in part the allegations in Paragraph 387. Google admits that it provides publishers using Google Ad Manager 360 with the option to subscribe to Data Transfer report files that contain non-aggregated event-level data to help publishers understand the performance of their advertising inventory. Google further admits that one type of Data Transfer report file, known as the Bids Data Transfer ("BDT") report file, contains information about the bids that the publisher received on its inventory, and that prior to September 2019, Google allowed buyers to opt out of including information about their bids in BDT files. Google admits that many bidders chose to opt out. Google further admits that in connection with Google transitioning to a Unified First Price Auction in September 2019, Google updated BDT files to provide publishers with more information about the new first-price auction by including a complete set of bids from all Authorized Buyers, Open Bidding buyers, Google Ads, and DV360, but broke joinability with other Data Transfer report files at that time ██████████████████████████ ████████████████████████████████████████ Google further admits that beginning in January 2024, Google introduced a modified BDT file that would be joinable with other Data Transfer files. Publishers now have the option to subscribe to the non-joinable BDT files introduced in September 2019 or the new modified joinable BDT files. Google lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the third sentence of Paragraph 387 and, on that basis, denies those allegations. Google denies the allegations in Paragraph 387 in all other respects.

388.    Google admits in part and denies in part the allegations in Paragraph 388. Google admits that it provides publishers using Google Ad Manager 360 with the option to subscribe to Data Transfer report files that contain non-aggregated event-level data to help publishers understand the performance of their advertising inventory. Google further admits that there are

separate Data Transfer report files for different types of events– including Bids, Impressions, Clicks, and other events– and publishers can choose which reports to receive.  Google denies the allegations in Paragraph 388 in all other respects.

389.    Google admits in part and denies in part the allegations in Paragraph 389. Google admits that since well before header bidding became popular, DoubleClick for Publishers (and now Google Ad Manager) has limited the total number of line items that a publisher can create to ensure the efficient operation of the ad server. Google denies the allegations in Paragraph 389 in all other respects.

390.    Google admits in part and denies in part the allegations in Paragraph 390. Google admits that publishers using Google's ad server can integrate with header bidding using a feature in Google Ad Manager called header bidding trafficking or using line items with predefined values. Google denies the allegations in Paragraph 390 in all other respects.

391.    Google admits in part and denies in part the allegations in Paragraph 391. Google admits that since well before header bidding became popular, it has limited the total number of line items that a publisher can create to ensure the efficient operation of the ad server; that it has received requests from time to time from publishers to increase the number of permitted line items to enable them to better implement their preferred header bidding scheme, and has at times granted waivers. Google also admits the existence of a document containing the quoted language in the last sentence of Paragraph 391, to which document Google refers the Court for a complete and accurate statement of its contents. Google denies the allegations in Paragraph 391 in all other respects.

392.    To the extent that Paragraph 392 purports to describe allegations relating to Google's Exchange Bidding, no response is required because the Court found that the Plaintiffs

FILED UNDER SEAL

have not plausibly alleged that Exchange Bidding harmed competition. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, Google admits in part and denies in part the allegations in Paragraph 392. Google admits that since well before header bidding became popular, it has limited the total number of line items that a publisher can create to ensure the efficient operation of the ad server. Google also admits the existence of a document containing the quoted language in the second sentence of Paragraph 392, to which document Google refers the Court for a complete and accurate statement of its contents. Google denies the allegations in Paragraph 392 in all other respects.

393.    Google lacks knowledge and information sufficient to form a belief as to the truth or falsity of the allegations in the second sentence of Paragraph 393 and, on that basis, denies those allegations. Google denies the allegations in Paragraph 393 in all other respects.

394.    Google denies the allegations in Paragraph 394.

395.    Google admits in part and denies in part the allegations in Paragraph 395. Google admits that advertisers of all sizes, including those that have an in-house marketing team or a relationship with an advertising agency, use DV360 to manage ad campaigns and bid across multiple ad exchanges. Google denies the allegations in Paragraph 395 in all other respects.

396.    Google admits in part and denies in part the allegations in Paragraph 396. Google admits the existence of a technology known as header bidding, and that header bidding was designed to allow publishers to send bid requests for their inventory to multiple exchanges and other demand sources and to evaluate the responses to such requests. Google admits that non-Google exchanges can participate in header bidding. Google admits that publishers, including those using Google Ad Manager, can implement header bidding by inserting code into the HTML header of their webpages and that header bidding can enable bid requests to multiple exchanges

**FILED UNDER SEAL**

and other demand sources, with the bid selected by the header bidding code then being passed back to the publisher's ad server. To the extent Paragraph 396 purports to describe allegations regarding Dynamic Allocation, no response is required because the Court found that Plaintiffs lack Article III standing to seek injunctive relief for these allegations. *See* MDL ECF 308 Opinion and Order. To the extent Paragraph 396 purports to describe allegations regarding Exchange Bidding, no response is required because the Court found that the Plaintiffs have not plausibly alleged that Exchange Bidding harmed competition. *See id*. Google denies the allegations in Paragraph 396 in all other respects.

397.    Google admits in part and denies in part the allegations in Paragraph 397. Google admits that ad buyers using DV360 can access inventory from many sources, including Google's ad exchange and over 100 of its rivals, such as major exchanges the Index Exchange, OpenX, Rubicon, Pubmatic, and others. Ad buyers using DV360 can also buy from Google's owned and operated properties (such as YouTube), as well as from digital content providers who use their own proprietary publisher ad servers. Google admits the existence of a document containing substantially the quoted language in the second sentence of Paragraph 397, to which document Google refers the Court for a complete and accurate statement of its contents. Google admits that certain experiments involving DV360 turning off buying on known header bidding requests resulted in non-Google exchanges winning those impressions. Google denies the allegations in Paragraph 397 in all other respects.

398.    Google denies the allegations in Paragraph 398.

399.    Google admits in part and denies in part the allegations in Paragraph 399. Google admits the existence of documents containing the quoted language in Paragraph 399, to which

**FILED UNDER SEAL**

documents Google refers the Court for a complete and accurate statement of their contents. Google denies the allegations in Paragraph 399 in all other respects.

400.    Google admits in part and denies in part the allegations in Paragraph 400. Google admits the existence of documents containing the quoted language, to which documents Google refers the Court for a complete and accurate statement of their contents. Google further admits that, like other DSPs, DV360 attempts to avoid over-bidding on advertisers' behalf, and that Project Poirot was one such effort. Google denies the allegations in Paragraph 400 in all other respects.

401.    Google admits in part and denies in part the allegations in Paragraph 401. Google admits the existence of a document containing the quoted language, to which document Google refers the Court for a complete and accurate statement of its contents. Google denies the allegations in Paragraph 401 in all other respects.

402.    Google admits in part and denies in part the allegations in Paragraph 402. Google admits the existence of a document containing the quoted language, to which document Google refers the Court for a complete and accurate statement of its contents. Google denies the allegations in Paragraph 402 in all other respects.

403.    Google admits in part and denies in part the allegations in Paragraph 403. Google admits the existence of a document containing the quoted language, to which document Google refers the Court for a complete and accurate statement of its contents. Google also admits that Project Elmo is an optimization implemented when Google ascertained that certain exchanges were sending single ad queries multiple times to target advertisers with limited budgets.  Google further admits that Project Elmo ensures that advertisers' bids on the same ad inventory are

<u>FILED UNDER SEAL</u>

consistent even if an advertiser was asked for its willingness to pay multiple times. Google denies the allegations in Paragraph 403 in all other respects.

404.     Google admits in part and denies in part the allegations in Paragraph 404. Google admits that the impact of Project Elmo on exchanges differed based on exchanges' conduct, decreasing revenue for exchanges that made multiple calls for the same inventory, while increasing revenue on exchanges that did not engage in this behavior. Google also admits that AdX was, among others, one such exchange that realized increased revenue. Google further admits the existence of a document containing some of the figures set forth in the second sentence of Paragraph 404, to which document Google refers the Court for a complete and accurate statement of its contents. To the extent the allegations in the second and third sentences of Paragraph 404 purport to characterize or describe documents or other sources, such documents or sources speak for themselves and Google denies any characterization or description that is inconsistent therewith. Google denies the allegations in Paragraph 404 in all other respects.

405.     Google admits in part and denies in part the allegations in Paragraph 405. Google admits the existence of a document containing the figures set forth in the second sentence of Paragraph 405, to which document Google refers the Court for a complete and accurate statement of its contents. Google denies the allegations in Paragraph 405 in all other respects.

406.     Google denies the allegations in Paragraph 406.

407.     Paragraph 407 purports to describe allegations relating to AMP, to which no response is required because the allegations have been dismissed. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, Google admits in part and denies in part the allegations in Paragraph 407. Google admits that AMP pages are not compatible with every type of header bidding implementation. Google further admits that in 2018, AMP deprecated Delayed

**FILED UNDER SEAL**

Fetch (including remote.html) and introduced Fast Fetch (including Real Time Config). Google denies the allegations in Paragraph 407 in all other respects.

408.    Paragraph 408 purports to describe allegations relating to AMP, to which no response is required because the allegations have been dismissed. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, Google admits in part and denies in part the allegations in Paragraph 408. Google admits that at one point, only AMP-compliant articles were eligible for inclusion in the Top stories carousel on Google Search's result page. Google denies the allegations in Paragraph 408 in all other respects.

409.    Paragraph 409 purports to describe allegations relating to AMP, to which no response is required because the allegations have been dismissed. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, Google admits in part and denies in part the allegations in Paragraph 409. Google admits that one way for users to find online content is through a search engine. Google lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the last sentence of Paragraph 409 and, on that basis, denies those allegations. Google denies the allegations in Paragraph 409 in all other respects.

410.    Paragraph 410 purports to describe allegations relating to AMP, to which no response is required because the allegations have been dismissed. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, Google admits in part and denies in part the allegations in Paragraph 410. Google admits that it registered ampproject.org; that the lead project developer and decision maker was a Google employee through 2018; and that control of the project has transitioned to the OpenJS Foundation. Google also admits the existence of a document containing the quoted language, to which document Google refers the Court for a complete and

<u>FILED UNDER SEAL</u>

accurate statement of its contents. Google denies the allegations in Paragraph 410 in all other respects.

411.    Paragraph 411 purports to describe allegations relating to AMP, to which no response is required because the allegations have been dismissed. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, Google denies the allegations in Paragraph 411.

412.    Google denies the allegations in Paragraph 412.

413.    Paragraph 413 purports to describe allegations relating to Google's Network Bidding Agreement with Facebook, to which no response is required because the allegations have been dismissed. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, Google denies the allegations in Paragraph 413.

414.    Paragraph 414 purports to describe allegations relating to Google's Network Bidding Agreement with Facebook, to which no response is required because the allegations have been dismissed. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, Google admits in part and denies in part the allegations in Paragraph 414. Google admits that in March 2017, Facebook published a blog post indicating that mobile web publishers who use header bidding would be able to join its Facebook Audience Network through approved partners or through open-source header bidding solutions and that one of the ways that ad networks can transact with publishers using Google's Ad Manager or AdMob platforms is to submit bids into ad exchanges. Google lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the last sentence of Paragraph 414 and, on that basis, denies those allegations. Google denies the allegations in Paragraph 414 in all other respects.

415.    Paragraph 415 purports to describe allegations relating to Google's Network Bidding Agreement with Facebook, to which no response is required because the allegations have been dismissed. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, Google admits the existence of documents containing the quoted language in Paragraph 415, to which documents Google refers the Court for a complete and accurate statement of their contents. Google denies the allegations in Paragraph 415 in all other respects.

416.    Paragraph 416 purports to describe allegations relating to Google's Network Bidding Agreement with Facebook, to which no response is required because the allegations have been dismissed. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, Google admits in part and denies in part the allegations in Paragraph 416. Google admits the existence of articles containing the quoted language, to which articles Google refers the Court for a complete and accurate statement of their contents. Google denies the allegations in Paragraph 416 in all other respects.

417.    Paragraph 417 purports to describe allegations relating to Google's Network Bidding Agreement with Facebook, to which no response is required because the allegations have been dismissed. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, Google admits in part and denies in part the allegations in Paragraph 417. Google admits that certain of its employees were aware of Facebook's March 2017 blog post referenced in Paragraph 417 and that a Google employee referenced Facebook's March 2017 blog post or industry press in an email. Google lacks knowledge sufficient to form a belief as to the truth or falsity of the allegations in the second sentence of Paragraph 417 and, on that basis, denies those allegations. Google denies the allegations in Paragraph 417 in all other respects.

FILED UNDER SEAL

418.    Paragraph 418 purports to describe allegations relating to Google's Network Bidding Agreement with Facebook, to which no response is required because the allegations have been dismissed. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, Google admits in part and denies in part the allegations in Paragraph 418. Google admits the existence of a document containing the quoted language, to which document Google refers the Court for a complete and accurate statement of its contents. To the extent the allegations in the first sentence of Paragraph 418 characterize or describe internal Google documents, such documents speak for themselves and Google denies any characterization or description that is inconsistent therewith. Google denies the allegations in Paragraph 418 in all other respects.

419.    Paragraph 419 purports to describe allegations relating to Google's Network Bidding Agreement with Facebook, to which no response is required because the allegations have been dismissed. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, Google admits in part and denies in part the allegations in Paragraph 419. Google admits the existence of documents which appear to be referenced in Paragraph 419 and were produced in discovery, to which documents Google refers the Court for a complete and accurate statement of their contents, but Google denies prior knowledge of those documents. Google denies the allegations in Paragraph 419 in all other respects.

420.    Paragraph 420 purports to describe allegations relating to Google's Network Bidding Agreement with Facebook, to which no response is required because the allegations have been dismissed. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, Google admits in part and denies in part the allegations in Paragraph 420. Google admits the existence of documents which appear to be referenced in the third, fourth, and fifth sentences of Paragraph 420 and were produced in discovery, to which documents Google refers the Court

FILED UNDER SEAL

for a complete and accurate statement of their contents, but Google denies prior knowledge of those documents. Google further admits the existence of a document containing the quoted language in the sixth and seventh sentences of Paragraph 420, to which document Google refers the Court for a complete and accurate statement of its contents. Google denies the allegations in Paragraph 420 in all other respects.

421.     Paragraph 421 purports to describe allegations relating to Google's Network Bidding Agreement with Facebook, to which no response is required because the allegations have been dismissed. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, Google admits in part and denies in part the allegations in Paragraph 421. Google admits the existence of a document containing the quoted language, to which document Google refers the Court for a complete and accurate statement of its contents. Google denies the allegations in Paragraph 421 in all other respects.

422.     Paragraph 422 purports to describe allegations relating to Google's Network Bidding Agreement with Facebook, to which no response is required because the allegations have been dismissed. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, Google admits in part and denies in part the allegations in Paragraph 422. Google admits the existence of documents which appear to be referenced in Paragraph 422 and were produced in discovery, to which documents Google refers the Court for a complete and accurate statement of their contents, but Google denies prior knowledge of those documents. Google denies the allegations in Paragraph 422 in all other respects.

423.     Paragraph 423 purports to describe allegations relating to Google's Network Bidding Agreement with Facebook, to which no response is required because the allegations have been dismissed. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed

<u>**FILED UNDER SEAL**</u>

necessary, Google admits in part and denies in part the allegations in Paragraph 423. Google admits the existence of an email thread which appears to be referenced in Paragraph 423 and was produced in discovery, to which email thread Google refers the Court for a complete and accurate statement of its contents, but Google denies prior knowledge of that email thread. Google denies the allegations in Paragraph 423 in all other respects.

424.    Paragraph 424 purports to describe allegations relating to Google's Network Bidding Agreement with Facebook, to which no response is required because the allegations have been dismissed. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, Google admits in part and denies in part the allegations in Paragraph 424. Google admits the existence of a September 2018 Google-Facebook agreement signed by the executives identified in Paragraph 424. Google denies the allegations in Paragraph 424 in all other respects.

425.    Paragraph 425 purports to describe allegations relating to Google's Network Bidding Agreement with Facebook and relating to Exchange Bidding, to which no response is required because the allegations have been dismissed. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, Google admits in part and denies in part the allegations in Paragraph 425. Google admits that the internal codename for Google's Network Bidding Agreement with Facebook is "Jedi Blue." The image following Paragraph 425 appears to be a portion of the Network Bidding Agreement, to which no response is required, and to which document Google refers the Court for a complete and accurate statement of its contents. Google further admits that Exchange Bidding was renamed Open Bidding. Google denies the allegations in Paragraph 425 in all other respects.

426.    Paragraph 426 purports to describe allegations relating to Google's Network Bidding Agreement with Facebook, to which no response is required because the allegations have

**FILED UNDER SEAL**

been dismissed. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed

necessary, Google admits in part and denies in part the allegations in Paragraph 426. Google admits

the existence of a document containing the quoted language, to which document Google refers the

Court for a complete and accurate statement of its contents. Google lacks knowledge or

information sufficient to form a belief as to the truth or falsity of the allegations in the third

sentence of Paragraph 426 and, on that basis, denies those allegations. Google denies the

allegations in Paragraph 426 in all other respects.

427.    Paragraph 427 purports to describe allegations relating to Google's Network

Bidding Agreement with Facebook, to which no response is required because the allegations have

been dismissed. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed

necessary, Google denies the allegations in Paragraph 427.

428.    Paragraph 428 purports to describe allegations relating to Google's Network

Bidding Agreement with Facebook, to which no response is required because the allegations have

been dismissed. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed

necessary, Google admits in part and denies in part the allegations in Paragraph 428. Google admits

that it retains a revenue share of 5-10% for transactions matched through Open Bidding as

consideration for the value provided by Google's service, and that the "baseline" revenue share

that AdX charges for auctions of inventory that are generally available to all the buyers on an

exchange is 20 percent for Google and 80 percent to the ad space seller. Google further admits

that, prior to its amendment, the original Network Bidding Agreement contained a volume discount

for which Facebook never qualified. Google denies the allegations in Paragraph 428 in all other

respects.

429.    Paragraph 429 purports to describe allegations relating to Google's Network Bidding Agreement with Facebook, to which no response is required because the allegations have been dismissed. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, Google admits in part and denies in part the allegations in Paragraph 429. Google admits that some bidders in its auctions have requested that timeouts in Google's auctions be lengthened, while others have requested that they be shortened. Google also admits that it ultimately opted to increase the timeout for certain auctions uniformly for all bidders. Google denies the allegations in Paragraph 429 in all other respects.

430.    Paragraph 430 purports to describe allegations relating to Google's Network Bidding Agreement with Facebook, to which no response is required because the allegations have been dismissed. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, Google admits in part and denies in part the allegations in Paragraph 430. Google admits that Facebook has direct billing and contractual relationships with publishers transacting with the Facebook Audience Network through Google's Open Bidding program. Google also admits that it typically has commonplace confidentiality provisions in its contracts with and terms of service for ad networks and ad exchanges participating in its Open Bidding program. Google lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the sixth sentence of Paragraph 430 and, on that basis, denies those allegations. Google denies the allegations in Paragraph 430 in all other respects.

431.    Paragraph 431 purports to describe allegations relating to Google's Network Bidding Agreement with Facebook, to which no response is required because the allegations have been dismissed. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, Google admits in part and denies in part the allegations in Paragraph 431. Google admits

<u>FILED UNDER SEAL</u>

that it does not charge any buyer, including Facebook Audience Network, for impressions it believes to be resulting from spam. Google denies the allegations in Paragraph 431 in all other respects.

432.    Paragraph 432 purports to describe allegations relating to Google's Network Bidding Agreement with Facebook, to which no response is required because the allegations have been dismissed. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, and to the extent Paragraph 432 purports to characterize the terms of the Network Bidding Agreement, Google refers the Court to the Network Bidding Agreement itself for a complete and accurate statement of its contents. Google denies the allegations in Paragraph 432 in all other respects.

433.    Paragraph 433 purports to describe allegations relating to Google's Network Bidding Agreement with Facebook, to which no response is required because the allegations have been dismissed. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, Google admits in part and denies in part the allegations in Paragraph 433. Google admits that it has worked with Facebook, among other partners, to improve their respective performance in Google's auctions. Google lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the fourth and sixth sentences of Paragraph 433 and, on that basis, denies those allegations. Google denies the allegations in Paragraph 433 in all other respects.

434.    Paragraph 434 purports to describe allegations relating to Google's Network Bidding Agreement with Facebook, to which no response is required because the allegations have been dismissed. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, Google admits in part and denies in part the allegations in Paragraph 434. Google admits that the Network Bidding Agreement limits the use of Facebook bid response data and is consistent

**FILED UNDER SEAL**

with Google's existing practice regarding all bidders' data. Google also admits the existence of a document containing the language quoted in the fifth sentence of Paragraph 434, which document was produced in this action and to which Google refers the Court for a complete and accurate statement of its contents, but Google denies prior knowledge of that document. The image at the end of Paragraph 434 purports to describe a portion of a Google contract, to which no response is required and to which document Google refers the Court for a complete and accurate statement of its contents. Google denies the allegations in Paragraph 434 in all other respects.

435.    Paragraph 435 purports to describe allegations relating to Google's Network Bidding Agreement with Facebook, to which no response is required because the allegations have been dismissed. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, Google admits in part and denies in part the allegations in Paragraph 435. Google admits the existence of a webpage on its website containing the quoted language, to which webpage Google refers the Court for a complete and accurate statement of its contents. Google denies the allegations in Paragraph 435 in all other respects.

436.    Paragraph 436 purports to describe allegations relating to Google's Network Bidding Agreement with Facebook, to which no response is required because the allegations have been dismissed. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, Google denies the allegations in Paragraph 436.

437.    Paragraph 437 purports to describe allegations relating to Google's Network Bidding Agreement with Facebook, to which no response is required because the allegations have been dismissed. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, Google admits in part and denies in part the allegations in Paragraph 437. Google admits that Google and Facebook compete head-to-head in the sale of online advertising in a variety of

<u>FILED UNDER SEAL</u>

ways, including in publishers' advertising auctions. Google denies the allegations in Paragraph 437 in all other respects.

438.    Paragraph 438 purports to describe allegations relating to Google's Network Bidding Agreement with Facebook, to which no response is required because the allegations have been dismissed. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, Google denies that Paragraph 438 accurately describes the Network Bidding Agreement and refers the Court to the Network Bidding Agreement itself for a complete and accurate statement of its contents. Google denies the allegations in Paragraph 438 in all other respects.

439.    Paragraph 439 purports to describe allegations relating to Google's Network Bidding Agreement with Facebook, to which no response is required because the allegations have been dismissed. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, Google admits in part and denies in part the allegations in Paragraph 439. Google admits that Google and Facebook compete head-to-head in the sale of online advertising in a variety of ways, including in publishers' advertising auctions. Google further admits that only one party can win a specific impression in a given auction. Google lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the second sentence of Paragraph 439 regarding Facebook's view of Google and, on that basis, denies those allegations. Google admits the existence of a document containing the quoted language in the last sentence of Paragraph 439, to which document Google refers the Court for a complete and accurate statement of its contents. Google denies the allegations in Paragraph 439 in all other respects.

440.    Paragraph 440 purports to describe allegations relating to Google's Network Bidding Agreement with Facebook, to which no response is required because those allegations have been dismissed. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed

**FILED UNDER SEAL**

necessary, Google admits in part and denies in part the allegations in Paragraph 440. Google admits that Google and Facebook compete head-to-head in the sale of online advertising in a variety of ways, including in publishers' advertising auctions. Google denies the allegations in Paragraph 440 in all other respects.

441.    Paragraph 441 purports to describe allegations relating to Google's Network Bidding Agreement with Facebook, to which no response is required because those allegations have been dismissed. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, Google denies the allegations in Paragraph 441.

442.    Paragraph 442 purports to describe allegations relating to Google's Network Bidding Agreement with Facebook, to which no response is required because those allegations have been dismissed. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, Google admits in part and denies in part the allegations in Paragraph 442. Google admits that the Network Bidding Agreement relates to advertising inventory on third-party publisher properties. Google denies the allegations in Paragraph 442 in all other respects.

443.    Paragraph 443 purports to describe allegations relating to Google's Network Bidding Agreement with Facebook, to which no response is required because those allegations have been dismissed. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, Google lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the second and third sentences of Paragraph 443 as to what "one Facebook study in 2019 found" and as to what the "average price Facebook paid per in-app impression" was on various platforms and, on that basis, denies those allegations. Google denies the allegations in Paragraph 443 in all other respects.

444.    Paragraph 444 purports to describe allegations relating to Google's Network Bidding Agreement with Facebook, to which no response is required because those allegations have been dismissed. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, Google admits in part and denies in part the allegations in Paragraph 444. Google admits that Google and Facebook compete head-to-head in the sale of online advertising in a variety of ways, including in publishers' advertising auctions. Google lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the second and third sentences of Paragraph 444 regarding Facebook and, on that basis, denies those allegations. Google admits the existence of a document containing the quoted language, to which document Google refers the Court for a complete and accurate statement of its contents. Google denies the allegations in Paragraph 444 in all other respects.

445.    Paragraph 445 purports to describe allegations relating to Google's Network Bidding Agreement with Facebook, to which no response is required because those allegations have been dismissed. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, Google denies the allegations in Paragraph 445.

446.    Paragraph 446 purports to describe allegations relating to Google's Network Bidding Agreement with Facebook, to which no response is required because those allegations have been dismissed. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, Google lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the third and fourth sentences of Paragraph 446 and, on that basis, denies those allegations. Google denies the allegations in Paragraph 446 in all other respects.

447.    Paragraph 447 purports to describe allegations relating to Google's Network Bidding Agreement with Facebook, to which no response is required because those allegations

**FILED UNDER SEAL**

have been dismissed. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed

necessary, Google denies that Paragraph 447 accurately describes the Network Bidding Agreement

and refers the Court to the Network Bidding Agreement itself for a complete and accurate

statement of its contents. Google denies the allegations in Paragraph 447 in all other respects.

448.    Paragraph 448 purports to describe allegations relating to Google's Network

Bidding Agreement with Facebook, to which no response is required because those allegations

have been dismissed. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed

necessary, Google denies the allegations in Paragraph 448.

449.    Paragraph 449 purports to describe allegations relating to Google's Network

Bidding Agreement with Facebook, to which no response is required because those allegations

have been dismissed. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed

necessary, Google admits in part and denies in part the allegations in Paragraph 449. Google admits

that the Network Bidding Agreement contains a provision governing cooperation between Google

and Facebook in the event of certain government investigations of the agreement and that the

Network Bidding Agreement contains a provision governing the parties' options to terminate the

agreement in the event of certain government investigations or lawsuits. The screenshot at the end

of Paragraph 449 purports to describe a portion of a Google contract, to which no response is

required. To the extent a response is deemed necessary, Google denies that the image at the end of

Paragraph 449 presents a fair, accurate, and complete description of the matters described therein

and, on that basis, denies the allegations contained in the image at the end of Paragraph 449. In

particular, and based on other portions of the Network Bidding Agreement that are not included in

the image at the end of Paragraph 449, Google denies the allegations in the fifth sentence of

Paragraph 449 and refers the Court to the Network Bidding Agreement itself for a complete and

**FILED UNDER SEAL**

accurate statement of its contents. Google denies the allegations in Paragraph 449 in all other respects.

450.    Paragraph 450 purports to describe allegations relating to Google's Network Bidding Agreement with Facebook, to which no response is required because those allegations have been dismissed. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, Google denies the allegations in Paragraph 450.

451.    Google denies the allegations in Paragraph 451.

452.    Google admits in part and denies in part the allegations in Paragraph 452. Google admits that, before its introduction of Unified Pricing Rules, publishers could set different price floors for different buyers. Google lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the second sentence of Paragraph 452 and, on that basis, denies those allegations. Google denies the allegations in Paragraph 452 in all other respects.

453.    Google lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the first and fourth sentences of Paragraph 453 and, on that basis, denies those allegations. Google denies the allegations of  Paragraph 453 in all other respects.

454.    Google denies the allegations in Paragraph 454.

455.    Google admits in part and denies in part the allegations in Paragraph 455. Google admits the existence of a document containing the quoted language in the second sentence of Paragraph 455, to which document Google refers the Court for a complete and accurate statement of its contents. To the extent the allegations in Paragraph 455 purport to characterize or describe other documents or sources, such documents or sources speak for themselves and Google denies any characterization or description that is inconsistent therewith. Google denies the allegations in Paragraph 455 in all other respects.

FILED UNDER SEAL

456.    Google admits in part and denies in part the allegations in Paragraph 456. Google admits the existence of a document containing substantially the quoted language in the second sentence of Paragraph 456, to which document Google refers the Court for a complete and accurate statement of its contents. Google denies the allegations in Paragraph 456 in all other respects.

457.    Google admits in part and denies in part the allegations in Paragraph 457. Google admits the existence of a document containing the quoted language, to which document Google refers the Court for a complete and accurate statement of its contents. Google denies the allegations in Paragraph 457 in all other respects.

458.    Google denies the allegations in Paragraph 458.

459.    Google lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the second sentence of Paragraph 459 and, on that basis, denies those allegations. Google denies the allegations in Paragraph 459 in all other respects.

460.    Google admits in part and denies in part the allegations in Paragraph 460. Google admits that with Unified Pricing Rules, publishers set a single price floor within the Google Ad Manager interface that applies uniformly across all exchanges, networks, DSPs, and other buying tools participating in Google's unified auction. Google further admits that publishers could also set different price floors for different ad exchanges using the tools made available by other ad exchanges, and these price floors would apply in addition to those from Unified Pricing Rules. Google denies the allegations in Paragraph 460 in all other respects.

461.    Google denies the allegations in Paragraph 461.

462.    Google admits in part and denies in part the allegations in Paragraph 462. Google admits that with Unified Pricing Rules, publishers set a single price floor within the Google Ad Manager interface that applies uniformly across all exchanges, networks, DSPs, and other buying

FILED UNDER SEAL

tools participating in Google's unified auction. Google further admits that publishers could also set different price floors for different ad exchanges using the tools made available by other ad exchanges, and these price floors would apply in addition to those from Unified Pricing Rules. Google denies the allegations in Paragraph 462 in all other respects.

463.    Paragraph 463 purports to describe allegations regarding Reserve Price Optimization (RPO), to which no response is required because the Court found that Plaintiffs failed to plausibly allege that RPO was anticompetitive conduct. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, Google admits in part and denies in part the allegations in Paragraph 463. Google admits that, before its introduction of Unified Pricing Rules, publishers could set different price floors for different buyers. Google admits that Reserve Price Optimization is an optimization Google developed that could increase publisher revenues by adjusting price floors. Google denies the allegations in Paragraph 463 in all other respects.

464.    Google lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the fifth and sixth sentences of Paragraph 464 and, on that basis, denies those allegations. Google denies the allegations in Paragraph 464 in all other respects.

465.    Google lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the second sentence of Paragraph 465 as to what "one large publisher invested" and, on that basis, denies those allegations. Google denies the allegations in Paragraph 465 in all other respects.

466.    Google admits in part and denies in part the allegations in Paragraph 466. Google admits the existence of a document containing substantially the quoted language in the fifth sentence of Paragraph 466, to which document Google refers the Court for a complete and accurate statement of its contents. Google denies the allegations in Paragraph 466 in all other respects.

**FILED UNDER SEAL**

467.    Paragraph 467 purports to describe allegations relating to Google's Network Bidding Agreement with Facebook, to which no response is required because those allegations have been dismissed. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, Google admits in part and denies in part the allegations in Paragraph 467. Google admits the existence of a document containing substantially the quoted language in the second sentence of Paragraph 467, to which Google refers the Court for a complete and accurate statement of its contents. Google also admits the existence of a document that appears to be referenced in the third sentence of Paragraph 467, to which Google refers the Court for a complete and accurate statement of its contents. Google denies the allegations in Paragraph 467 in all other respects.

468.    To the extent the allegations in the second sentence of Paragraph 468 purport to characterize or describe unspecified "auction records," those records speak for themselves and Google denies any characterization or description inconsistent therewith. Google denies the allegations in Paragraph 468 in all other respects.

469.    Google denies the allegations in Paragraph 469.

470.    Paragraph 470 purports to describe allegations regarding Google's proposed Privacy Sandbox, to which no response is required because those allegations have been dismissed. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, Google denies the allegations in Paragraph 470.

471.    Google admits in part and denies in part the allegations in Paragraph 471. Google admits that ████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████  Google further admits that it rejected the product proposed under ████████████

FILED UNDER SEAL

which in any event would have been optional for publishers. Google admits the existence of documents containing substantially the quoted language, to which documents Google refers the Court for a complete and accurate statement of their contents. Google denies the allegations in Paragraph 471 in all other respects.

472.    Google admits in part and denies in part the allegations in Paragraph 472. Google admits that in 2018 it introduced the ability to sign into Chrome; that signing into a Google service via Chrome's desktop browser automatically signed the user into Chrome as well; and that users are able to opt-out of this feature. Google denies the allegations in Paragraph 472 in all other respects.

473.    Paragraph 473 purports to describe allegations regarding Google's proposed Privacy Sandbox, to which no response is required because those allegations have been dismissed. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, Google denies the allegations in Paragraph 473.

474.    Paragraph 474 purports to describe allegations regarding Google's proposed Privacy Sandbox, to which no response is required because those allegations have been dismissed. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, Google admits in part and denies in part the allegations in Paragraph 474. Google admits that it announced its intention to phase out support for third-party cookies in Chrome for the entire web ecosystem (including Google) in 2022 in order to meet evolving consumer privacy expectations. Google further admits that in 2019 it introduced a collaborative industry initiative called the Privacy Sandbox, which was working through open industry forums like the W3C to develop alternatives to cookies that preserve privacy while supporting publishers that rely on advertising to make their content freely available. Google denies the allegations in Paragraph 474 in all other respects.

**FILED UNDER SEAL**

475.    Paragraph 475 purports to describe allegations regarding Google's proposed Privacy Sandbox, to which no response is required because those allegations have been dismissed. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, Google admits in part and denies in part the allegations in Paragraph 475. Google admits that its proposal to phase out support for third-party cookies in Chrome would not have affected publishers' ability to use first-party data to serve ads on their properties. Google denies the allegations in Paragraph 475 in all other respects.

476.    Paragraph 476 purports to describe allegations regarding Google's proposed Privacy Sandbox, to which no response is required because those allegations have been dismissed. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, Google lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the second and fourth sentence of Paragraph 476 and, on that basis, denies those allegations. Google denies the allegations in Paragraph 476 in all other respects.

477.    Paragraph 477 purports to describe allegations regarding Google's proposed Privacy Sandbox, to which no response is required because those allegations have been dismissed. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, Google admits in part and denies in part the allegations in Paragraph 477. Google admits that its proposal to phase out support for third-party cookies in Chrome would not have affected publishers' ability to use first-party data to serve ads on their properties. Google denies the allegations in Paragraph 477 in all other respects.

478.    Paragraph 478 purports to describe allegations regarding Google's proposed Privacy Sandbox, to which no response is required because those allegations have been dismissed.

**FILED UNDER SEAL**

*See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, Google denies the allegations in Paragraph 478.

479.    Paragraph 479 purports to describe allegations regarding Google's proposed Privacy Sandbox, to which no response is required because those allegations have been dismissed. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, Google admits in part and denies in part the allegations in Paragraph 479. Google admits that it helps publishers sell ad inventory, helps advertisers purchase ad impressions, and operates an ad exchange used by both advertisers and publishers. Google denies the allegations in Paragraph 479 in all other respects.

480.    Paragraph 480 purports to describe allegations regarding Google's proposed Privacy Sandbox, to which no response is required because those allegations have been dismissed. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, Google denies the allegations in Paragraph 480.

481.    Paragraph 481 purports to describe allegations regarding Google's proposed Privacy Sandbox, to which no response is required because those allegations have been dismissed. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, Google admits in part and denies in part the allegations in Paragraph 481. Google admits the existence of a document containing the quoted language, to which document Google refers the Court for a complete and accurate statement of its contents. Google denies the allegations in Paragraph 481 in all other respects.

482.    Paragraph 482 purports to describe allegations relating to the encryption of user IDs, to which no response is required because the Court found that Plaintiffs have failed to plausibly allege that Google's use of encrypted user IDs is anticompetitive conduct, and allegations

**FILED UNDER SEAL**

relating to the Network Bidding Agreement, to which no response is required because those allegations have been dismissed. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, Google denies the allegations in Paragraph 482.

483.    Paragraph 483 purports to describe allegations relating to the encryption of user IDs, to which no response is required because the Court found that Plaintiffs have failed to plausibly allege that Google's use of encrypted user IDs is anticompetitive conduct. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, Google denies the allegations in Paragraph 483.

484.    Paragraph 484 purports to describe allegations relating to the encryption of user IDs, to which no response is required because the Court found that Plaintiffs have failed to plausibly allege that Google's use of encrypted user IDs is anticompetitive conduct. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, Google denies the allegations in Paragraph 484.

485.    Paragraph 485 purports to describe allegations relating to the encryption of user IDs, to which no response is required because the Court found that Plaintiffs have failed to plausibly allege that Google's use of encrypted user IDs is anticompetitive conduct. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, Google admits in part and denies in part the allegations in Paragraph 485. Google admits that it entered into an agreement to allow WhatsApp users to backup their WhatsApp data to Google Drive. Google denies the allegations in Paragraph 485 in all other respects.

486.    Paragraph 486 purports to describe allegations relating to the encryption of user IDs, to which no response is required because the Court found that Plaintiffs have failed to plausibly allege that Google's use of encrypted user IDs is anticompetitive conduct. *See* MDL ECF

**FILED UNDER SEAL**

308 Opinion and Order. To the extent a response is deemed necessary, Google lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 486 regarding what representations WhatsApp made to WhatsApp users and WhatsApp's encryption timeline and, on that basis, denies those allegations. Google denies the allegations in Paragraph 486 in all other respects.

487. Paragraph 487 purports to describe allegations relating to the encryption of user IDs, to which no response is required because the Court found that Plaintiffs have failed to plausibly allege that Google's use of encrypted user IDs is anticompetitive conduct. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, Google lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 487 and, on that basis, denies those allegations. The image at the end of Paragraph 487 contains a partial screenshot of the WhatsApp mobile application, to which no response is required. To the extent a response is deemed necessary, Google denies that the image presents a fair, accurate, and complete description of the matters described therein and, on that basis, denies the allegations contained in that image. Google denies the allegations in Paragraph 487 in all other respects.

488. Paragraph 488 purports to describe allegations relating to the encryption of user IDs, to which no response is required because the Court found that Plaintiffs have failed to plausibly allege that Google's use of encrypted user IDs is anticompetitive conduct. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, Google admits in part and denies in part the allegations in Paragraph 488. Google admits that some consumers value encryption as one feature of communications applications. Google denies the allegations in Paragraph 488 in all other respects.

**FILED UNDER SEAL**

489.    Paragraph 489 purports to describe allegations relating to the encryption of user IDs, to which no response is required because the Court found that Plaintiffs have failed to plausibly allege that Google's use of encrypted user IDs is anticompetitive conduct. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, Google admits in part and denies in part the allegations in Paragraph 489. Google admits the existence of documents containing the quoted language, to which documents Google refers the Court for a complete and accurate statement of their contents. To the extent the allegations in the first sentence of Paragraph 489 characterize or describe unspecified media reports, such reports speak for themselves and Google denies any characterization or description that is inconsistent therewith. Google denies the allegations in Paragraph 489 in all other respects.

490.    Paragraph 490 purports to describe allegations relating to the encryption of user IDs, to which no response is required because the Court found that Plaintiffs have failed to plausibly allege that Google's use of encrypted user IDs is anticompetitive conduct. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, Google admits in part and denies in part the allegations in Paragraph 490. Google admits the existence of a document containing the quoted language, to which document Google refers the Court for a complete and accurate statement of its contents. Google denies the allegations in Paragraph 490 in all other respects.

491.    Paragraph 491 purports to describe allegations relating to the encryption of user IDs, to which no response is required because the Court found that Plaintiffs have failed to plausibly allege that Google's use of encrypted user IDs is anticompetitive conduct. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, Google admits in part and denies in part the allegations in Paragraph 491. Google admits the existence of a document

FILED UNDER SEAL

containing the quoted language, to which document Google refers the Court for a complete and accurate statement of its contents. Google denies the allegations in Paragraph 491 in all other respects.

492.    Paragraph 492 purports to describe allegations relating to the encryption of user IDs, to which no response is required because the Court found that Plaintiffs have failed to plausibly allege that Google's use of encrypted user IDs is anticompetitive conduct. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, Google admits in part and denies in part the allegations in Paragraph 492. Google admits the existence of a document containing the quoted language, to which document Google refers the Court for a complete and accurate statement of its contents. Google denies the allegations in Paragraph 492 in all other respects.

493.    Paragraph 493 purports to describe allegations relating to the encryption of user IDs, to which no response is required because the Court found that Plaintiffs have failed to plausibly allege that Google's use of encrypted user IDs is anticompetitive conduct. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, Google admits in part and denies in part the allegations in Paragraph 493. Google admits the existence of a blog post containing the quoted language, to which blog post Google refers the Court for a complete and accurate statement of its contents. To the extent the allegations in Paragraph 493 characterize or describe the Google Drive website, mobile application, or Google Drive Terms and privacy policy, such sources speak for themselves and Google denies any characterization or description that is inconsistent therewith. Google denies the allegations in Paragraph 493 in all other respects.

494.    Paragraph 494 purports to describe allegations relating to the encryption of user IDs, to which no response is required because the Court found that Plaintiffs have failed to

FILED UNDER SEAL

plausibly allege that Google's use of encrypted user IDs is anticompetitive conduct. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, Google admits in part and denies in part the allegations in Paragraph 494. Google admits the existence of a document containing the quoted language, to which document Google refers the Court for a complete and accurate statement of its contents. Google denies the allegations in Paragraph 494 in all other respects.

495.     Paragraph 495 purports to describe allegations relating to the encryption of user IDs, to which no response is required because the Court found that Plaintiffs have failed to plausibly allege that Google's use of encrypted user IDs is anticompetitive conduct. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, Google admits in part and denies in part the allegations in Paragraph 495. Google admits the existence of documents containing the figures cited in Paragraph 495, to which documents Google refers the Court for a complete and accurate statement of their contents. Google denies the allegations in Paragraph 495 in all other respects.

496.     Paragraph 496 purports to describe allegations relating to the encryption of user IDs, to which no response is required because the Court found that Plaintiffs have failed to plausibly allege that Google's use of encrypted user IDs is anticompetitive conduct. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, Google admits in part and denies in part the allegations in Paragraph 496. Google admits the existence of a document containing the quoted language, to which document Google refers the Court for a complete and accurate statement of its contents. Google denies the allegations in Paragraph 496 in all other respects.

FILED UNDER SEAL

497.    Paragraph 497 purports to describe allegations relating to the encryption of user IDs, to which no response is required because the Court found that Plaintiffs have failed to plausibly allege that Google's use of encrypted user IDs is anticompetitive conduct. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, Google admits in part and denies in part the allegations in Paragraph 497. Google admits the existence of a document containing the quoted language, to which document Google refers the Court for a complete and accurate statement of its contents. To the extent the allegations in Paragraph 497 characterize or describe proposed regulations or legislation, such regulations or legislation speak for themselves and Google denies any characterization or description that is inconsistent therewith. Google denies the allegations in Paragraph 497 in all other respects.

498.    Paragraph 498 purports to describe allegations relating to the encryption of user IDs, to which no response is required because the Court found that Plaintiffs have failed to plausibly allege that Google's use of encrypted user IDs is anticompetitive conduct. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, Google admits in part and denies in part the allegations in Paragraph 498. Google admits the existence of a document containing the quoted language, to which document Google refers the Court for a complete and accurate statement of its contents. Google denies the allegations in Paragraph 498 in all other respects.

499.    Paragraph 499 purports to describe allegations relating to the encryption of user IDs, to which no response is required because the Court found that Plaintiffs have failed to plausibly allege that Google's use of encrypted user IDs is anticompetitive conduct. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, Google admits in part and denies in part the allegations in Paragraph 499. Google admits the existence of a document

<u>**FILED UNDER SEAL**</u>

containing the quoted language, to which document Google refers the Court for a complete and accurate statement of its contents. Google denies the allegations in Paragraph 499 in all other respects.

500.  Paragraph 500 purports to describe allegations relating to the encryption of user IDs, to which no response is required because the Court found that Plaintiffs have failed to plausibly allege that Google's use of encrypted user IDs is anticompetitive conduct. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, Google admits in part and denies in part the allegations in Paragraph 500. Google admits the existence of a document containing the quoted language, to which document Google refers the Court for a complete and accurate statement of its contents. Google denies the allegations in Paragraph 500 in all other respects.

501.  Paragraph 501 purports to describe allegations relating to the encryption of user IDs, to which no response is required because the Court found that Plaintiffs have failed to plausibly allege that Google's use of encrypted user IDs is anticompetitive conduct. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, Google denies the allegations in Paragraph 501.

502.  Google denies the allegations in Paragraph 502.

503.  Google denies the allegations in Paragraph 503.

504.  Google denies the allegations in Paragraph 504.

505.  Google denies the allegations in Paragraph 505.

506.  Google admits in part and denies in part the allegations in Paragraph 506. Google admits that it retains a revenue share of 5-10% for transactions matched through Open Bidding as

FILED UNDER SEAL

consideration for the value provided by Google's service. Google denies the allegations in Paragraph 506 in all other respects.

507.    Google denies the allegations in Paragraph 507.

508.    Google lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the last sentence of Paragraph 508 and, on that basis, denies those allegations. Google denies the allegations in Paragraph 508 in all other respects.

509.    Paragraph 509 purports to describe allegations regarding Google's Network Bidding Agreement with Facebook, to which no response is required because those allegations have been dismissed. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, Google denies the allegations in Paragraph 509.

510.    Google lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the first, second, third, and fourth sentences of Paragraph 510 and, on that basis, denies those allegations. Google denies the allegations in Paragraph 510 in all other respects.

511.    Google admits in part and denies in part the allegations in Paragraph 511. Google admits that some publishers use revenue generated from selling ad space to, among other things, support content development. Google denies the allegations in Paragraph 511 in all other respects.

512.    Paragraph 512 purports to describe allegations relating to the encryption of user IDs, RPO, Dynamic Allocation, and DRS, to which no response is required because the Court found that Plaintiffs failed to plausibly allege Google's use of encrypted user IDs and RPO were anticompetitive, and Plaintiffs lack Article III standing to seek injunctive relief for claims relating to Dynamic Allocation and DRS. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, and in all other respects, Google denies the allegations in Paragraph 512.

**FILED UNDER SEAL**

513.    Google admits in part and denies in part the allegations in Paragraph 513. Google admits the existence of a document apparently referenced in the third sentence of Paragraph 513, to which document Google refers the Court for a complete and accurate statement of its contents. Google denies the allegations in Paragraph 513 in all other respects.

514.    Google lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the fifth sentence of Paragraph 514 and, on that basis, denies those allegations. Google denies the allegations in Paragraph 514 in all other respects.

515.    Google denies the allegations in Paragraph 515.

516.    Google denies the allegations in Paragraph 516.

517.    Google admits in part and denies in part the allegations in Paragraph 517. Google admits that publishers and advertisers benefit from a competitive market. Google denies the allegations in Paragraph 517 in all other respects.

518.    Paragraph 518 purports to describe allegations relating to Google's Network Bidding Agreement with Facebook, to which no response is required because those allegations have been dismissed. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, Google denies the allegations in Paragraph 518.

519.    Google admits in part and denies in part the allegations in Paragraph 519. Google admits that app developers and advertisers benefit from a competitive market. Google denies the allegations in Paragraph 519 in all other respects.

520.    Paragraph 520 purports to describe allegations relating to the encryption of user IDs, Dynamic Allocation, and the proposed Privacy Sandbox, to which no response is required because the Court found that Plaintiffs have failed to plausibly allege that Google's use of encrypted user IDs is anticompetitive conduct, the claims relating to the proposed Privacy Sandbox

**FILED UNDER SEAL**

have been dismissed, and Plaintiffs lack Article III standing to seek injunctive relief for claims relating to Dynamic Allocation. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, Google denies the allegations in Paragraph 520.

521.    Google admits in part and denies in part the allegations in Paragraph 521. Google admits the existence of a document containing the quoted language, to which document Google refers the Court for a complete and accurate statement of its contents. Google denies the allegations in Paragraph 521 in all other respects.

522.    Google lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the second sentence of Paragraph 522 and, on that basis, denies those allegations. Google denies the allegations in Paragraph 522 in all other respects.

523.    Paragraph 523 purports to describe allegations regarding Google's proposed Privacy Sandbox, to which no response is required because the allegations have been dismissed. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, Google lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the second sentence of Paragraph 523 and, on that basis, denies those allegations. Google denies the allegations in Paragraph 523 in all other respects.

524.    Google admits in part and denies in part the allegations in Paragraph 524. Google admits that advertisers benefit from a competitive market. Google further admits that ad buying tools are among the products that advertisers use to purchase display inventory. Google denies the allegations in Paragraph 524 in all other respects.

525.    Google admits in part and denies in part the allegations in Paragraph 525. Google admits that advertising can promote competition in some sectors. Google denies the allegations in Paragraph 525 in all other respects.

## FILED UNDER SEAL

526.    Google denies the allegations in Paragraph 526.

527.    Google restates its response to the allegations in Paragraphs 331-351 above as if stated herein.

528.    Google denies the allegations in Paragraph 528.

529.    Google admits in part and denies in part the allegations in Paragraph 529. Google admits that, from the time of its launch until late 2019, AdX operated as a second-price auction. Google also admits that generally in a second-price auction, the advertiser who bid the highest amount above the publisher's minimum floor price wins but only pays the amount equal to the second-highest bid that is not below the floor price. Google further admits that, in a second-price auction, if the second-highest bid falls below the floor price, then the winner will instead pay an amount equal to the floor price. To the extent the first sentence of Paragraph 529 references earlier allegations in the Fourth Amended Complaint, Google restates its response to those allegations above as if stated herein. Google denies the allegations in Paragraph 529 in all other respects.

530.    Google admits in part and denies in part the allegations in Paragraph 530. Google admits that bidders in a second-price auction are incentivized to bid what they value the item they are bidding on to be worth and that, prior to late 2019, AdX operated as a second-price auction. Google lacks knowledge or information sufficient to form a belief about the truth or falsity of the allegations in the first and last sentences of Paragraph 530 in so far as they allege what is "well understood by advertisers, publishers, and economists" and what "advertisers relied on" when bidding into AdX and, on that basis, denies the first and last sentences of Paragraph 530. Google denies the allegations in Paragraph 530 in all other respects.

531.    Google admits in part and denies in part the allegations in Paragraph 531. Google admits the existence of a 2010 adexchanger.com article containing the language quoted in the

FILED UNDER SEAL

second sentence of Paragraph 531, to which article Google refers the Court for a complete and accurate statement of its contents. Google denies the allegations in Paragraph 531 in all other respects.

532.    Google admits in part and denies in part the allegations in Paragraph 532. Google admits that it launched Reserve Price Optimization in 2015. Google further admits that Reserve Price Optimization uses information about historical bids to dynamically adjust price floors on the publisher's behalf. Google denies the allegations in Paragraph 532 in all other respects.

533.    Google admits in part and denies in part the allegations in Paragraph 533. Google admits that it launched Reserve Price Optimization in 2015 and that a version of it was in effect from the time of its launch until 2019. Google also admits that in 2022, Google launched a version of Reserve Price Optimization on select web traffic that was designed for Google Ad Manager's first-price auction and that was extended to all web traffic in 2023. Google denies the allegations in Paragraph 533 in all other respects.

534.    Google admits in part and denies in part the allegations in Paragraph 534. Google admits that Reserve Price Optimization launched in 2015. Google denies the allegations in Paragraph 534 in all other respects.

535.    Google admits in part and denies in part the allegations in Paragraph 535. Google admits the existence of a March 5, 2015 article on digiday.com containing the language quoted in Paragraph 535, to which article Google refers the Court for a complete and accurate statement of its contents. Google denies the allegations in Paragraph 535 in all other respects.

536.    Google admits in part and denies in part the allegations in Paragraph 536. Google admits the existence of a May 12, 2016 blog post containing the language quoted in Paragraph 536, to which blog post Google refers the Court for a complete and accurate statement of its

FILED UNDER SEAL

contents. Google also admits that it launched Reserve Price Optimization in 2015. Google denies the allegations in Paragraph 536 in all other respects.

537.    Google admits in part and denies in part the allegations in Paragraph 537. Google admits the existence of an email among Google employees containing the language quoted in Paragraph 537, to which email Google refers the Court for a complete and accurate statement of its contents. Google denies the allegations in Paragraph 537 in all other respects.

538.    Google denies the allegations in Paragraph 538.

539.    Google restates its response to the allegations in Paragraphs 318-330 above as if stated herein.

540.    Google denies the allegations in Paragraph 540. Google further notes that the Court found Plaintiffs lack Article III standing to seek injunctive relief for allegations regarding Dynamic Revenue Share ("DRS") for Plaintiffs' related antitrust claims. *See* MDL ECF 308 Opinion and Order.

541.    Google admits in part and denies in part the allegations in Paragraph 541. Google admits that its ad exchange supported a feature called "Dynamic Revenue Share" ("DRS") and that, if enabled by the publisher, DRS dynamically adjusted the revenue share retained by Google's ad exchange for particular impressions to allow more bids to clear the applicable price floors. Google denies the allegations in Paragraph 541 in all other respects. Google further notes that the Court found Plaintiffs lack Article III standing to seek injunctive relief for allegations regarding Dynamic Revenue Share ("DRS") for Plaintiffs' related antitrust claims. *See* MDL ECF 308 Opinion and Order.

542.    Google admits in part and denies in part the allegations in Paragraph 542. Google admits that DRS, if enabled by the publisher, dynamically adjusts the revenue share retained by

FILED UNDER SEAL

Google's ad exchange for particular impressions to allow more bids to clear the applicable price floors. Google further admits that, using DRS, Google facilitated auction wins that would not otherwise have happened. Google denies the allegations in Paragraph 542 in all other respects. Google further notes that the Court found Plaintiffs lack Article III standing to seek injunctive relief for allegations regarding Dynamic Revenue Share ("DRS") for Plaintiffs' related antitrust claims. *See* MDL ECF 308 Opinion and Order.

543.    Google admits in part and denies in part the allegations in Paragraph 543. Google admits the existence of documents from the summer of 2016 containing portions of the language quoted in Paragraph 543, to which documents Google refers the Court for a complete and accurate statement of their contents. Google denies the allegations in Paragraph 543 in all other respects. Google further notes that the Court found Plaintiffs lack Article III standing to seek injunctive relief for allegations regarding Dynamic Revenue Share ("DRS") for Plaintiffs' related antitrust claims. *See* MDL ECF 308 Opinion and Order.

544.    Google admits in part and denies in part the allegations in Paragraph 544. Google admits that in a second version of DRS, Google adjusted its ad exchange's revenue share in both directions–sometimes increasing the revenue share and other times decreasing the revenue share– while maintaining an average revenue share of 20 percent. Google also admits that it only increased its ad exchange's revenue share if the highest bid came in significantly higher and well in excess of the floor price, and that both versions of DRS successfully increased seller revenues and the number of transactions that cleared Google's ad exchange. Google denies the allegations in Paragraph 544 in all other respects. Google further notes that the Court found Plaintiffs lack Article III standing to seek injunctive relief for allegations regarding Dynamic Revenue Share ("DRS") for Plaintiffs' related antitrust claims. *See* MDL ECF 308 Opinion and Order.

<u>FILED UNDER SEAL</u>

545.    Google admits in part and denies in part the allegations in Paragraph 545. Google admits the existence of a Google document containing the language quoted in Paragraph 545, to which document Google refers the Court for a complete and accurate statement of its contents. Google denies the allegations in Paragraph 545 in all other respects. Google further notes that the Court found Plaintiffs lack Article III standing to seek injunctive relief for allegations regarding Dynamic Revenue Share ("DRS") for Plaintiffs' related antitrust claims. *See* MDL ECF 308 Opinion and Order.

546.    Google admits in part and denies in part the allegations in Paragraph 546. Google admits that DRS was available to publishers until September 2019. Google denies the allegations in Paragraph 546 in all other respects. Google further notes that the Court found Plaintiffs lack Article III standing to seek injunctive relief for allegations regarding Dynamic Revenue Share ("DRS") for Plaintiffs' related antitrust claims. *See* MDL ECF 308 Opinion and Order.

547.    Google admits in part and denies in part the allegations in Paragraph 547. Google admits that DRS increased the number of transactions that cleared Google's ad exchange. Google denies the allegations in Paragraph 547 in all other respects. Google further notes that the Court found Plaintiffs lack Article III standing to seek injunctive relief for allegations regarding Dynamic Revenue Share ("DRS") for Plaintiffs' related antitrust claims. *See* MDL ECF 308 Opinion and Order.

548.    Google denies the allegations in Paragraph 548. Google further notes that the Court found Plaintiffs lack Article III standing to seek injunctive relief for allegations regarding Dynamic Revenue Share ("DRS") for Plaintiffs' related antitrust claims. *See* MDL ECF 308 Opinion and Order.

**FILED UNDER SEAL**

549.    Google restates its response to the allegations in Paragraphs 297-317 above as if stated herein.

550.    Google admits in part and denies in part the allegations in Paragraph 550. Google admits that, prior to late 2019, AdX operated as a second-price auction. Google also admits the existence of an adexchanger.com article containing portions of the language quoted in Paragraph 550, to which Google refers the Court for a complete and accurate statement of its contents. To the extent the first sentence of Paragraph 550 references earlier allegations in the Fourth Amended Complaint, Google restates its responses to those allegations above as if stated herein. Google denies the allegations in Paragraph 550 in all other respects.

551.    Google admits in part and denies in part the allegations in Paragraph 551. Google admits the existence of a document containing the language quoted in Paragraph 551, to which document Google refers the Court for a complete and accurate statement of its contents. Google denies the allegations in Paragraph 551 in all other respects.

552.    Google admits in part and denies in part the allegations in Paragraph 552. Google admits the existence of an auction feature called Project Bernanke and that Project Bernanke launched in 2013. Google denies the allegations in Paragraph 552 in all other respects.

553.    Google admits in part and denies in part the allegations in Paragraph 553. Google admits that when Google Ads placed the two highest bids above the publisher price floor in the AdX auction, Bernanke both increased the Google Ads high bid and decreased the Google Ads low bid for certain AdX auctions. Google denies the allegations in Paragraph 553 in all other respects.

554.    Google denies the allegations in Paragraph 554.

555.     Google admits in part and denies in part the allegations in Paragraph 555. Google admits that through Bernanke, Google sought to increase the successful match rate on AdX, by enabling more ad space buyers to beat floor prices and win auctions. Google denies the allegations in Paragraph 555 in all other respects.

556.     Google admits in part and denies in part the allegations in Paragraph 556. Google admits that it developed different versions of Bernanke and that subsequent versions included Global Bernanke and Project Bell v.2. Google further admits that the original version of Bernanke varied the Google Ads revenue share with the aim of maintaining the same average revenue share for each publisher, and that Global Bernanke performed the same optimization but targeted an average revenue share across all publishers. Google denies the allegations in Paragraph 556 in all other respects.

557.     Google admits in part and denies in part the allegations in Paragraph 557. Google admits that the existence of Project Bell v.2, which was launched in 2016, overlapped for a portion of the time that Dynamic Allocation was an optional feature on Google's ad server. Google is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the second sentence of Paragraph 557 and, on that basis, denies those allegations. Google denies the allegations in Paragraph 557 in all other respects.

558.     Google admits in part and denies in part the allegations in Paragraph 558. Google admits that the Bernanke program increased the win rate on Google's ad exchange for advertisers who use Google Ads. Google also admits the existence of a document containing the figure referenced in the first sentence of Paragraph 558, to which document Google refers the Court for a complete and accurate statement of its contents. To the extent the allegations in the first sentence of Paragraph 558 purport to characterize or describe other, unspecified documents, such sources

<u>**FILED UNDER SEAL**</u>

speak for themselves and Google denies any characterization or description that is inconsistent therewith. Google denies the allegations in Paragraph 558 in all other respects.

559.    Google admits in part and denies in part the allegations in Paragraph 559. Google admits that, consistent with its practice and customers' expectations, Google did not specifically disclose the bid optimization techniques Bernanke, Global Bernanke, or Bell, although publishers do have transparency into the final bids submitted by Google Ads and other buying tools/demand-side platforms. Google denies the allegations in Paragraph 559 in all other respects.

560.    Google denies the allegations in Paragraph 560.

561.    Google denies the allegations in Paragraph 561.

562.    Google denies the allegations in Paragraph 562.

563.    Google denies the allegations in Paragraph 563.

564.    Google admits in part and denies in part the allegations in Paragraph 564. Google admits the existence of a technology known as header bidding, which uses code embedded in a webpage's "header," and that header bidding was designed to allow publishers to send bid requests for their inventory to multiple exchanges and other demand sources. To the extent the first sentence of Paragraph 564 references earlier allegations in the Fourth Amended Complaint, Google restates its responses to those allegations above as if stated herein. Google denies the allegations in Paragraph 564 in all other respects.

565.    Google admits in part and denies in part the allegations in Paragraph 565. Google admits that header bidding was and remains popular; that header bidding was designed to allow publishers to send bid requests for their inventory to multiple exchanges and other demand sources; and that the adoption rate of header bidding among publishers ranged from 73.1% to 79.2% between 2018 and 2019. Google lacks knowledge or information sufficient to form a belief as to

the truth or falsity of the allegations in the third sentence of Paragraph 565 as to whether publishers "saw their ad revenue jump overnight" and, on that basis, denies those allegations. To the extent the allegations in the fourth sentence of Paragraph 565 purport to characterize or describe unspecified documents or other sources, such sources speak for themselves and Google denies any characterization or description that is inconsistent therewith. Google denies the allegations in Paragraph 565 in all other respects.

566.    Google admits in part and denies in part the allegations in Paragraph 566. Google admits that header bidding was and remains popular. Google further admits the existence of an internal project called the "Header Bidding Observatory" whose goals included understanding header bidding's evolution and effects. Google denies the allegations in Paragraph 566 in all other respects.

567.    Google denies the allegations in Paragraph 567.

568.    Google admits in part and denies in part the allegations in Paragraph 568. Google admits the existence of an October 2017 email chain that includes emails to and from an "Alessia Sahli" of "OpenX" that contains the language quoted in the second and third sentences of Paragraph 568, to which email chain Google refers the Court for a complete and accurate statement of its contents. Google lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the first sentence of Paragraph 568 as to what OpenX ad exchange "noticed" in October 2017 and, on that basis, denies those allegations. Google denies the allegations in Paragraph 568 in all other respects.

569.    Google admits in part and denies in part the allegations in Paragraph 569. Google admits the existence of an October 2017 email chain that includes emails to and from Google employees and that contains the language quoted in Paragraph 569, to which email chain Google

refers the Court for a complete and accurate statement of its contents. Google denies the allegations in Paragraph 569 in all other respects.

570.    Google denies the allegations in Paragraph 570.

571.    Google denies the allegations in Paragraph 571.

572.    Google admits in part and denies in part the allegations in Paragraph 572. Google admits that its Privacy Principles today include, and have included since at least 2010, that it never sells its users' personal information to anyone. Google also admits that, between 2010 and 2023, it made changes to its Privacy Principles. Google admits the existence of a January 27, 2010 Google blog post containing the language quoted in the first, second, and third sentences of Paragraph 572, to which blog post Google refers the Court for a complete and accurate statement of its contents. Google further admits the existence of a Google webpage containing portions of the language quoted in the fifth and sixth sentences and in the image in Paragraph 572, to which webpage Google refers the Court for a complete and accurate statement of its contents. To the extent the allegations in Paragraph 572 attempt to characterize or describe the January 27, 2010 blog post, Google webpages, or other sources, such sources speak for themselves and Google denies any characterization or description that is inconsistent therewith. Google denies the allegations in Paragraph 572 in all other respects.

573.    Google admits in part and denies in part the allegations in Paragraph 573. Google admits that, since December 2019, its Privacy Policy has included the language quoted in Paragraph 573, and refers the Court to that policy and its prior versions for a complete and accurate statement of their contents. Google denies the allegations in Paragraph 573 in all other respects.

574.    Google admits in part and denies in part the allegations in Paragraph 574. Google admits the existence of a Google webpage with the language quoted in Paragraph 574, including

**FILED UNDER SEAL**

in the image in Paragraph 574, and further admits the existence of a link to this webpage from another Google webpage that sets forth Google's Terms of Service. Google refers the Court to each of these Google webpages for a complete and accurate statement of their contents. To the extent the allegations in Paragraph 574 attempt to characterize or describe other webpages, such sources speak for themselves and Google denies any characterization or description that is inconsistent therewith. Google denies the allegations in Paragraph 574 in all other respects.

575.    Google admits in part and denies in part the allegations in Paragraph 575. Google admits that it maintains webpages that explain Google privacy technologies, including the privacy tools, controls, and settings Google makes available to users to help manage their privacy, and that such webpages include information related to advertising. Google further admits the existence of Google webpages containing the language quoted in the third sentence of Paragraph 575 and a portion of the language quoted in the second sentence of Paragraph 575, to which webpages Google refers the Court for a complete and accurate statement of their contents. To the extent the allegations in Paragraph 575 characterize or describe those webpages, Google notes that such sources speak for themselves and denies any characterization or description that is inconsistent therewith. Google denies the allegations in Paragraph 575 in all other respects.

576.    Google admits in part and denies in part the allegations in Paragraph 576. Google admits that it maintains a webpage that explains how Google Search works and that, since 2021, has contained the language quoted in the second sentence of Paragraph 576, to which webpage Google refers the Court for a complete and accurate statement of its contents. Google also admits that it maintains a webpage that describes Google privacy technologies and data practices and that contains the language quoted in the third sentence of Paragraph 576, to which webpage Google refers the Court for a complete and accurate statement of its contents. To the extent the allegations

<u>**FILED UNDER SEAL**</u>

in Paragraph 576 characterize or describe those webpages, Google notes that such sources speak

for themselves and denies any characterization or description that is inconsistent therewith. Google

denies the allegations in Paragraph 576 in all other respects.

577.    Google admits in part and denies in part the allegations in Paragraph 577. Google

admits the existence of a May 2019 op-ed piece in the New York Times by Google CEO Sundar

Pichai, titled, "Google's Sundar Pichai: Privacy Should Not Be a Luxury Good," containing the

language quoted in the third and fourth sentences of Paragraph 577, to which piece Google refers

the Court for a complete and accurate statement of its contents. Google also admits that Mr. Pichai

testified before Congress in December 2018 and that his testimony included portions of the

language quoted in the fifth and sixth sentences of Paragraph 577, to which testimony Google

refers the Court for a complete and accurate statement of its contents. Google denies the allegations

in Paragraph 577 in all other respects.

578.    Google admits in part and denies in part the allegations in Paragraph 578. Google

admits its parent company, Alphabet, Inc., had the revenue disclosed in its public filings, but denies

that these allegations apply to Google LLC, the Defendant in this case. Google denies the

allegations in Paragraph 578 in all other respects.

579.    Google admits in part and denies in part the allegations in Paragraph 579. Google

admits that, depending on how users use Google's services and how they manage applicable

privacy controls, Google may collect information to provide better services to users. Google also

admits that users may choose to provide information to Google which personally identifies the

user, such as their name or email address. Google further admits that its Privacy Policy contains

the language quoted in the third sentence of Paragraph 579, to which policy Google refers the

Court for a complete and accurate statement of its contents. Google lacks knowledge or

FILED UNDER SEAL

information sufficient to form a belief as to the truth or falsity of the allegations in the second sentence of Paragraph 579 as to what is "commonly understood by users" and, on that basis, denies those allegations. The image at the end of Paragraph 579 contains a partial screenshot of a Google webpage, to which no response is required. To the extent a response is deemed necessary, Google denies that the image presents a fair, accurate, and complete description of the matters described therein and, on that basis, denies the allegations contained in that image. Google denies the allegations in Paragraph 579 in all other respects.

580.     Google admits in part and denies in part the allegations in Paragraph 580. Google admits that, depending on how users use Google's services and how they manage applicable privacy controls, Google may collect information to provide better services to users. Google also admits that such information may include users' IP addresses, location, and unique identifiers. Google denies the allegations in Paragraph 580 in all other respects.

581.     Google admits in part and denies in part the allegations in Paragraph 581. Google admits that, depending on how users use Google's services and how they manage applicable privacy controls, Google may collect information to provide better services to users. Google denies the allegations in Paragraph 581 in all other respects.

582.     Google admits in part and denies in part the allegations in Paragraph 582. Google admits that when a user visits a publisher's website, an ad server may route the publisher's available impressions to exchanges along with information about the impression, including the user ID, the parameters of the ad slot, and any rules about pricing. To the extent the second sentence of Paragraph 582 references earlier allegations in the Fourth Amended Complaint, Google restates its responses to those allegations above as if stated herein. Google denies the allegations in Paragraph 582 in all other respects.

**FILED UNDER SEAL**

583.    Google denies the allegations in Paragraph 583.

584.    Google lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the second and third sentences of Paragraph 584 and, on that basis, denies those allegations. Google denies the allegations in Paragraph 584 in all other respects.

585.    Google denies the allegations in Paragraph 585.

586.    Google denies the allegations in Paragraph 586.

587.    Google admits in part and denies in part the allegations in Paragraph 587. Google admits the existence of a March 2019 Google Ad Manager blog post, which remains accessible through a Google webpage, containing the language quoted in the first sentence of Paragraph 587, to which blog post Google refers the Court for a complete and accurate statement of its contents. Google also admits the existence of a Google webpage that explains how open bidding works and that contains a portion of the language quoted in the third sentence of Paragraph 587, to which webpage Google refers the Court for a complete and accurate statement of its contents. Google denies the allegations in Paragraph 587 in all other respects.

588.    Google denies the allegations in Paragraph 588.

589.    Google restates its response to every allegation set forth above as if stated herein. Google denies the allegations in Paragraph 589 in all other respects.

590.    Google denies the allegations in Paragraph 590.

591.    Google admits in part and denies in part the allegations in Paragraph 591. Google admits the existence of an agreement with Facebook referred to at times as "Jedi Blue." To the extent the allegations in Paragraph 591 characterize or describe that agreement, Google notes that it speaks for itself and denies any characterization or description that is inconsistent therewith. To the extent Paragraph 591 references earlier allegations in the Fourth Amended Complaint, Google

FILED UNDER SEAL

restates its responses to those allegations above as if stated herein. Google denies the allegations in Paragraph 591 in all other respects.

592.    Google denies the allegations in Paragraph 592.

593.    Google admits in part and denies in part the allegations in Paragraph 593. Google admits the existence of a set of automated bidding strategies, referred to as "Smart Bidding," that use Google AI to optimize conversions or conversion value. Google also admits that one key benefit of Smart Bidding is that, in bidding, machine learning algorithms train on data at a vast scale to help ad buyers make more accurate predictions about how different bid amounts might impact conversions or conversion value. To the extent the allegations in the third-to-last sentence of Paragraph 593 characterize or describe documents or other sources, Google notes that such sources speak for themselves and denies any characterization or description that is inconsistent therewith. Google denies the allegations in Paragraph 593 in all other respects.

594.    Google denies the allegations in Paragraph 594.

595.    Google admits in part and denies in part the allegations in Paragraph 595. Google admits that it provides publishers using Google Ad Manager 360 with the option to subscribe to Data Transfer report files that contain non-aggregated event-level data to help publishers understand the performance of their advertising inventory.  Google further admits that one type of Data Transfer report file, known as the Bids Data Transfer ("BDT") report file, contains information about the bids that the publisher received on its inventory, and that prior to September 2019, Google allowed buyers to opt out of including information about their bids in BDT files. Google admits that many bidders chose to opt out. Google further admits that in connection with Google transitioning to a Unified First Price Auction in September 2019, Google updated BDT files to provide publishers with more information about the new first-price auction by including a

**FILED UNDER SEAL**

complete set of bids from all Authorized Buyers, Open Bidding buyers, Google Ads, and DV360, but broke joinability with other Data Transfer report files at that time as a result of privacy concerns and then-existing contractual obligations with an Authorized Buyer. Google denies the allegations in Paragraph 595 in all other respects.

596.    Google denies the allegations in Paragraph 596.

597.    Google denies the allegations in Paragraph 597.

598.    Google restates its response to every allegation set forth above as if stated herein.

599.    Google denies the allegations in Paragraph 599.

600.    Paragraph 600 purports to describe allegations regarding Google's encryption of user IDs, Dynamic Allocation, RPO, DRS, Exchange Bidding, and the Network Bidding Agreement, to which no response is required because Plaintiffs failed to plausibly allege that Google's use of encrypted user IDs and RPO were anticompetitive, Plaintiffs lack Article III standing to seek injunctive relief for claims relating to Dynamic Allocation and DRS, Plaintiffs failed to plausibly allege that Exchange Bidding harmed competition, and allegations relating to Google's Network Bidding Agreement with Facebook and Privacy Sandbox have been dismissed. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, Google denies the allegations in Paragraph 600.

601.    Google denies the allegations in Paragraph 601.

602.    Google restates its response to every allegation set forth above as if stated herein.

603.    To the extent Paragraph 603 references earlier allegations in the Fourth Amended Complaint, Google restates its responses to those allegations above as if stated herein. Google denies the allegations in Paragraph 603 in all other respects.

604.    Google denies the allegations in Paragraph 604.

**FILED UNDER SEAL**

605.    Paragraph 605 purports to describe allegations regarding Google's encryption of user IDs, Dynamic Allocation, RPO, DRS, Exchange Bidding, Privacy Sandbox, and the Network Bidding Agreement, to which no response is required because Plaintiffs failed to plausibly allege that Google's use of encrypted user IDs and RPO were anticompetitive, Plaintiffs lack Article III standing to seek injunctive relief for claims relating to Dynamic Allocation and DRS, Plaintiffs failed to plausibly allege that Exchange Bidding harmed competition, and allegations relating to Google's Network Bidding Agreement with Facebook and Privacy Sandbox have been dismissed. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, Google denies the allegations in Paragraph 605.

606.    Google denies the allegations in Paragraph 606.

607.    Google restates its response to every allegation set forth above as if stated herein.

608.    Google denies the allegations in Paragraph 608.

609.    Google denies the allegations in Paragraph 609.

610.    Google denies the allegations in Paragraph 610.

611.    Google denies the allegations in Paragraph 611.

612.    Google denies the allegations in Paragraph 612.

613.    Google denies the allegations in Paragraph 613.

614.    Google restates its response to every allegation set forth above as if stated herein.

615.    Paragraph 615 purports to describe allegations relating to Google's Network Bidding Agreement with Facebook, to which no response is required because the allegations have been dismissed. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, Google denies the allegations in Paragraph 615.

**FILED UNDER SEAL**

616.    Paragraph 616 purports to describe allegations relating to Google's Network Bidding Agreement with Facebook, to which no response is required because the allegations have been dismissed. *See* MDL ECF 308 Opinion and Order. To the extent a response is deemed necessary, Google denies the allegations in Paragraph 616.

617.    Google restates its response to every allegation set forth above as if stated herein.

618.    Google denies the allegations in Paragraph 618.

619.    Google restates its response to every allegation set forth above as if stated herein. Google denies the allegations in Paragraph 619 in all other respects.

620.    Google denies the allegations in Paragraph 620.

621.    Google denies the allegations in Paragraph 621.

622.    Google restates its response to every allegation set forth above as if stated herein.

623.    Google denies the allegations in Paragraph 623.

624.    Google denies the allegations in Paragraph 624.

625.    Google restates its response to every allegation set forth above as if stated herein. Google denies the allegations in Paragraph 625 in all other respects.

626.    Google denies the allegations in Paragraph 626.

627.    Google restates its response to every allegation set forth above as if stated herein.

628.    Paragraph 628 contains legal conclusions to which no response is required. To the extent that a response is deemed necessary, Google denies the allegations in Paragraph 628.

629.    Google denies the allegations in Paragraph 629.

630.    Google denies the allegations in Paragraph 630.

631.    Google denies the allegations in Paragraph 631.

632.    Google restates its response to every allegation set forth above as if stated herein.

**FILED UNDER SEAL**

633.    Google denies the allegations in Paragraph 633.

634.    Google denies the allegations in Paragraph 634.

635.    Google restates its response to every allegation set forth above as if stated herein.

636.    Google restates its response to every allegation set forth above as if stated herein.

637.    Google denies the allegations in Paragraph 637.

638.    Google denies the allegations in Paragraph 638.

639.    Google denies the allegations in Paragraph 639.

640.    Google restates its response to every allegation set forth above as if stated herein.

641.    Google denies the allegations in Paragraph 641.

642.    Paragraph 642 purports to paraphrase statutory language, which speaks for itself.

Google refers the Court to the statute for a complete and accurate description of its contents.

Google denies the allegations in Paragraph 642 in all other respects.

643.    Google denies the allegations in Paragraph 643.

644.    Google denies the allegations in Paragraph 644.

645.    Google denies the allegations in Paragraph 645.

646.    Google restates its response to every allegation set forth above as if stated herein.

647.    Google denies the allegations in Paragraph 647.

648.    Google denies the allegations in Paragraph 648.

649.    Google restates its response to every allegation set forth above as if stated herein.

650.    Google denies the allegations in Paragraph 650.

651.    Google repeats its response to every allegation set forth above as if stated herein.

652.    Google denies the allegations in Paragraph 652.

**FILED UNDER SEAL**

653.     Google restates its response to every allegation set forth above if stated herein. Google denies the allegations in Paragraph 653 in all other respects.

654.     Google restates its response to every allegation set forth above if stated herein. Google denies the allegations in Paragraph 654 in all other respects.

655.     Google denies the allegations in Paragraph 655.

656.     Google restates its response to every allegation set forth above as if stated herein.

657.     Google denies the allegations in Paragraph 657.

658.     Google restates its response to every allegation set forth above as if stated herein.

659.     Google denies the allegations in Paragraph 659.

660.     Google denies the allegations in Paragraph 660.

661.     Google restates its response to every allegation set forth above as if stated herein.

662.     Google admits in part and denies in part the allegations in Paragraph 662. Google admits that at Paragraph 662, the Attorney General of South Carolina purports to bring suit under South Carolina Code § 39-5-50(a), to which statute Google refers the Court for a complete and accurate statement of its contents, but Google denies that Plaintiff South Carolina has adequately stated a claim and denies that Google has violated any of that State's laws. Google denies the allegations in Paragraph 662 in all other respects.

663.     Paragraph 663 contains legal conclusions to which no response is required. To the extent a response is deemed necessary, Google denies the allegations in Paragraph 663.

664.     Google denies the allegations in Paragraph 664.

665.     Google denies the allegations in Paragraph 665.

666.     Google denies the allegations in Paragraph 666.

667.     Google denies the allegations in Paragraph 667.

**FILED UNDER SEAL**

668.    Google denies the allegations in Paragraph 668.

669.    Google repeats its response to every allegation set forth above as if stated herein.

670.    Google denies the allegations in Paragraph 670.

671.    Google denies the allegations in Paragraph 671.

672.    Google repeats its response to every allegation set forth above as if stated herein.

673.    Google denies the allegations in Paragraph 673.

674.    Google repeats its response to every allegation set forth above as if stated herein.

675.    Paragraph 675 contains legal conclusions to which no response is required. To the extent a response is deemed necessary, Google admits the allegations in Paragraph 675.

676.    Google lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the second sentence of Paragraph 676 regarding what "the Consumer Protection Division of the Office of the Attorney General of the State of Texas believes and is of the opinion" and, on that basis, denies those allegations. Google denies the allegations in Paragraph 676 in all other respects.

677.    Google denies the allegations in Paragraph 677.

678.    Google denies the allegations in Paragraph 678.

679.    Google repeats its response to every allegation set forth above as if stated herein. Google denies the allegations in Paragraph 679 in all other respects.

680.    Google repeats its response to every allegation set forth above as if stated herein. Google denies the allegations in Paragraph 680 in all other respects.

681.    Google denies the allegations in Paragraph 681.

682.    Google denies the allegations in Paragraph 682.

**FILED UNDER SEAL**

683.    Google admits in part and denies in part the allegations in Paragraph 683. Google

admits that at Paragraph 683, the State of Alaska purports to seek the stated relief, but denies that

Plaintiffs are entitled to any of the relief sought in the Fourth Amended Complaint. Google denies

the allegations in Paragraph 683 in all other respects.

684.    Google repeats its response to every allegation set forth above as if stated herein.

685.    Google denies the allegations in Paragraph 685.

686.    Google repeats its response to every allegation set forth above as if stated herein.

Google denies the allegations in Paragraph 686 in all other respects.

687.    Google denies the allegations in Paragraph 687.

688.    Google denies the allegations in Paragraph 688.

689.    Google denies the allegations in Paragraph 689.

690.    Google repeats its response to every allegation set forth above as if stated herein.

691.    Google denies the allegations in Paragraph 691.

692.    Paragraph 692 contains legal conclusions to which no response is required. To the

extent a response is deemed necessary, Google admits the allegations in Paragraph 692.

693.    Google denies the allegations in the first sentence of Paragraph 693. Google lacks

knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in

the second sentence of Paragraph 693 as to what the Idaho Attorney General "believes" and, on

that basis, denies those allegations. Google denies the allegations in Paragraph 693 in all other

respects.

694.    Google denies the allegations in Paragraph 694.

695.    Google denies the allegations in Paragraph 695.

**FILED UNDER SEAL**

696.    Google admits in part and denies in part the allegations in Paragraph 696. With respect to the second sentence of Paragraph 696, Google admits that it was not provided notice or opportunity to appear before the Idaho Attorney General before the Idaho Attorney General filed claims against it. Google lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in the first sentence of Paragraph 696 as to what the Idaho Attorney General "finds" and, on that basis, denies those allegations. Google denies the allegations in Paragraph 696 in all other respects.

697.    Google repeats its response to every allegation set forth above as if stated herein. Google denies the allegations in Paragraph 697 in all other respects.

698.    Paragraph 698 contains legal conclusions to which no response is required. To the extent a response is deemed necessary, Google denies the allegations in Paragraph 698.

699.    Paragraph 699 contains legal conclusions to which no response is required. To the extent a response is deemed necessary, Google denies the allegations in Paragraph 699.

700.    Paragraph 700 contains legal conclusions to which no response is required. To the extent a response is deemed necessary, Google denies the allegations in Paragraph 700.

701.    Google denies the allegations in Paragraph 701.

702.    Google denies the allegations in Paragraph 702.

703.    Google denies the allegations in Paragraph 703.

704.    Google repeats its response to every allegation in all other paragraphs of the Fourth Amended Complaint as if stated herein.

705.    Google repeats its response to every allegation set forth above as if stated herein.

706.    Google denies the allegations in Paragraph 706.

707.    Google denies the allegations in Paragraph 707.

**FILED UNDER SEAL**

708.    Paragraph 708 contains legal conclusions to which no response is required. To the extent a response is deemed necessary, Google denies the allegations in Paragraph 708.

709.    Google denies the allegations in Paragraph 709.

710.    Google denies the allegations in Paragraph 710.

711.    Google repeats its response to every allegation set forth above as if stated herein.

712.    Google denies the allegations in Paragraph 712.

713.    Paragraph 713 contains legal conclusions to which no response is required. To the extent a response is deemed necessary, Google denies the allegations in Paragraph 713.

714.    Paragraph 714 contains legal conclusions to which no respect is required. To the extent a response is deemed necessary, Google denies the allegations in Paragraph 714. Google further notes that the statute speaks for itself.

715.    The first sentence of Paragraph 715 contains legal conclusions to which no response is required. To the extent a response is deemed necessary, Google denies those allegations. Google denies the allegations in Paragraph 715 in all other respects.

716.    Google denies the allegations in Paragraph 716.

717.    Google denies the allegations in Paragraph 717.

718.    Google denies the allegations in Paragraph 718.

719.    Google repeats its response to every allegation set forth above as if stated herein.

720.    Google denies the allegations in Paragraph 720.

721.    Google denies the allegations in Paragraph 721.

722.    Google repeats its response to every allegation set forth above as if stated herein.

723.    Google denies the allegations in Paragraph 723.

**FILED UNDER SEAL**

724.    Google repeats its response to every allegation set forth above as if stated herein. Google denies the allegations in Paragraph 724 in all other respects.

725.    Google denies the allegations in Paragraph 725.

726.    Google denies the allegations in Paragraph 726.

727.    Google repeats its response to every allegation set forth above as if stated herein.

728.    Google repeats its response to every allegation in Section VII of the Fourth Amended Complaint and in Count VI of the Fourth Amended Complaint as if stated herein. Google denies the allegations in Paragraph 728 in all other respects.

729.    Google denies the allegations in Paragraph 729.

730.    Paragraph 730 contains legal conclusions to which no response is required. To the extent a response is deemed necessary, Google denies the allegations in Paragraph 730.

731.    Google denies the allegations in Paragraph 731.

732.    Google repeats its response to every allegation set forth above as if stated herein.

733.    Google denies the allegations in Paragraph 733.

734.    Paragraph 734 contains legal conclusions to which no response is required. To the extent a response is deemed necessary, Google denies the allegations in Paragraph 734.

735.    The first sentence of Paragraph 735 contains legal conclusions to which no response is required. To the extent a response is deemed necessary, Google denies those allegations. Google denies the allegations in Paragraph 735 in all other respects.

736.    Google denies the allegations in Paragraph 736.

737.    Google denies the allegations in Paragraph 737.

**FILED UNDER SEAL**

738.    The second sentence of Paragraph 738 contains legal conclusions to which no response is required. To the extent a response is deemed necessary, Google denies those allegations. Google denies the allegations in Paragraph 738 in all other respects.

739.    Google denies the allegations in Paragraph 739.

740.    Google repeats its response to every allegation set forth above as if stated herein.

741.    Google denies the allegations in Paragraph 741.

742.    Google denies the allegations in Paragraph 742.

743.    Google denies the allegations in Paragraph 743.

744.    Google repeats its response to every allegation set forth above as if stated herein.

745.    Google denies the allegations in Paragraph 745.

746.    Paragraph 746 contains legal conclusions to which no response is required. To the extent a response is deemed necessary, Google denies the allegations in Paragraph 746.

747.    Google denies the allegations in Paragraph 747.

748.    Google denies the allegations in Paragraph 748.

749.    Google denies the allegations in Paragraph 749.

750.    Google denies the allegations in Paragraph 750.

751.    Google denies the allegations in Paragraph 751.

752.    Google repeats its response to every allegation set forth above as if stated herein.

753.    Google denies the allegations in Paragraph 753.

754.    The first sentence of Paragraph 754 contains legal conclusions to which no response is required. To the extent a response is deemed necessary, Google denies those allegations. Google denies the remaining allegations in Paragraph 754.

**FILED UNDER SEAL**

755.    Google repeats its response to every allegation set forth above as if stated herein. Google otherwise denies the allegations in Paragraph 755.

756.    Google denies the allegations in Paragraph 756.

757.    Paragraph 757 contains legal conclusions to which no response is required. To the extent a response is deemed necessary, Google denies the allegations in Paragraph 757.

758.    Google denies the allegations in Paragraph 758.

759.    Paragraph 759 sets forth the relief sought by Plaintiffs, to which no response is required. To the extent a response is deemed necessary, Google denies the allegations in Paragraph 759 and denies that Plaintiffs are entitled to any of the remedies or relief sought in the Fourth Amended Complaint.

760.    Paragraph 760 sets forth the relief sought by Plaintiff State of Texas, to which no response is required. To the extent a response is deemed necessary, Google denies the allegations in Paragraph 760 and denies that Plaintiffs are entitled to any of the remedies or relief sought in the Fourth Amended Complaint.

761.    Paragraph 761 sets forth the relief sought by Plaintiff State of Alaska, to which no response is required. To the extent a response is deemed necessary, Google denies the allegations in Paragraph 761 and denies that Plaintiffs are entitled to any of the remedies or relief sought in the Fourth Amended Complaint.

762.    Paragraph 762 sets forth the relief sought by Plaintiff State of Arkansas, to which no response is required. To the extent a response is deemed necessary, Google denies the allegations in Paragraph 762 and denies that Plaintiffs are entitled to any of the remedies or relief sought in the Fourth Amended Complaint.

**FILED UNDER SEAL**

763.    Paragraph 763 sets forth the relief sought by Plaintiff State of Florida, to which no response is required. To the extent a response is deemed necessary, Google denies the allegations in Paragraph 763 and denies that Plaintiffs are entitled to any of the remedies or relief sought in the Fourth Amended Complaint.

764.    Paragraph 764 sets forth the relief sought by Plaintiff State of Idaho, to which no response is required. To the extent a response is deemed necessary, Google denies the allegations in Paragraph 764 and denies that Plaintiffs are entitled to any of the remedies or relief sought in the Fourth Amended Complaint.

765.    Paragraph 765 sets forth the relief sought by Plaintiff State of Indiana, to which no response is required. To the extent a response is deemed necessary, Google denies the allegations in Paragraph 765 and denies that Plaintiffs are entitled to any of the remedies or relief sought in the Fourth Amended Complaint.

766.    Paragraph 766 sets forth the relief sought by Plaintiff State of Kentucky, to which no response is required. To the extent a response is deemed necessary, Google denies the allegations in Paragraph 766 and denies that Plaintiffs are entitled to any of the remedies or relief sought in the Fourth Amended Complaint.

767.    Paragraph 767 sets forth the relief sought by Plaintiff State of Louisiana, to which no response is required. To the extent a response is deemed necessary, Google denies the allegations in Paragraph 767 and denies that Plaintiffs are entitled to any of the remedies or relief sought in the Fourth Amended Complaint.

768.    Paragraph 768 sets forth the relief sought by Plaintiff State of Mississippi, to which no response is required. To the extent a response is deemed necessary, Google denies the

allegations in Paragraph 768 and denies that Plaintiffs are entitled to any of the remedies or relief sought in the Fourth Amended Complaint.

769.     Paragraph 769 sets forth the relief sought by Plaintiff State of Missouri, to which no response is required. To the extent a response is deemed necessary, Google denies the allegations in Paragraph 769 and denies that Plaintiffs are entitled to any of the remedies or relief sought in the Fourth Amended Complaint.

770.     Paragraph 770 sets forth the relief sought by Plaintiff State of Montana, to which no response is required. To the extent a response is deemed necessary, Google denies the allegations in Paragraph 770 and denies that Plaintiffs are entitled to any of the remedies or relief sought in the Fourth Amended Complaint.

771.     Paragraph 771 sets forth the relief sought by Plaintiff State of Nevada, to which no response is required. To the extent a response is deemed necessary, Google denies the allegations in Paragraph 771 and denies that Plaintiffs are entitled to any of the remedies or relief sought in the Fourth Amended Complaint.

772.     Paragraph 772 sets forth the relief sought by Plaintiff State of North Dakota, to which no response is required. To the extent a response is deemed necessary, Google denies the allegations in Paragraph 772 and denies that Plaintiffs are entitled to any of the remedies or relief sought in the Fourth Amended Complaint.

773.     Paragraph 773 sets forth the relief sought by Plaintiff Commonwealth of Puerto Rico, to which no response is required. To the extent a response is deemed necessary, Google denies the allegations in Paragraph 773 and denies that Plaintiffs are entitled to any of the remedies or relief sought in the Fourth Amended Complaint.

774.    Paragraph 774 sets forth the relief sought by Plaintiff State of South Carolina, to which no response is required. To the extent a response is deemed necessary, Google denies the allegations in Paragraph 774 and denies that Plaintiffs are entitled to any of the remedies or relief sought in the Fourth Amended Complaint.

775.    Paragraph 775 sets forth the relief sought by Plaintiff State of South Dakota, to which no response is required. To the extent a response is deemed necessary, Google denies the allegations in Paragraph 775 and denies that Plaintiffs are entitled to any of the remedies or relief sought in the Fourth Amended Complaint.

776.    Paragraph 776 sets forth the relief sought by Plaintiff State of Utah, to which no response is required. To the extent a response is deemed necessary, Google denies the allegations in Paragraph 776 and denies that Plaintiffs are entitled to any of the remedies or relief sought in the Fourth Amended Complaint.

777.    Paragraph 777 sets forth the relief sought by Plaintiff States, to which no response is required. To the extent a response is deemed necessary, Google denies the allegations in Paragraph 777 and denies that Plaintiffs are entitled to any of the remedies or relief sought in the Fourth Amended Complaint.

778.    Paragraph 778 contains Plaintiffs' demand for a jury trial, to which no response is required. To the extent a response is deemed necessary, Google denies that Plaintiffs are entitled to a jury trial on any claim asserted in the Fourth Amended Complaint.

## IV.    AFFIRMATIVE AND ADDITIONAL DEFENSES

Without assuming any burden that it would not otherwise bear, Google asserts the following defenses to the Fourth Amended Complaint. Further, Google reserves all affirmative defenses under Federal Rule of Civil Procedure 8(c) and any additional defenses, at law or in

<u>**FILED UNDER SEAL**</u>

equity, that may now exist or in the future be available, including without limitation improper venue, and based on discovery and further factual investigation in this case.

### <u>First Defense</u>

The Fourth Amended Complaint fails to state a claim upon which relief can be granted.

### <u>Second Defense</u>

The Plaintiffs' claims are barred, in whole or in part, because the relief sought by Plaintiffs would be contrary to the public interest, harm consumers and businesses, and is otherwise inequitable, impractical, and unworkable.

### <u>Third Defense</u>

The Plaintiffs' claims are barred, in whole or in part, because the Fourth Amended Complaint fails to allege any legally cognizable relevant product or geographic market.

### <u>Fourth Defense</u>

Google has never had, has not sought to acquire, and is unlikely to acquire monopoly power in any properly defined relevant market for advertising services.

### <u>Fifth Defense</u>

Google's conduct alleged by Plaintiffs in the Fourth Amended Complaint was lawful, justified, procompetitive, and carried out in Google's legitimate business interests and constitutes bona fide competitive activity, the benefits of which significantly outweigh any alleged anticompetitive effects. Google has no legal duty to deal with any competitor and has legitimate business justifications for its actions. Plaintiffs bear the burden to negate, and have not pleaded the absence of or negated the legitimate business justifications for Google's actions. Accordingly, no antitrust liability is or can be validly alleged or proved.

**FILED UNDER SEAL**

### Sixth Defense

The Plaintiffs' claims are barred, in whole or in part, for failure to allege any plausible harm to competition or consumers.

### Seventh Defense

The Plaintiffs' claims are barred, in whole or in part, because they lack standing to bring some or all of the claims alleged, and to seek some or all of the relief sought, in the Fourth Amended Complaint.

### Eighth Defense

The Plaintiffs' claims are barred, in whole or in part, because they lack capacity or authority to bring some or all of the claims alleged in the Fourth Amended Complaint.

### Ninth Defense

The Plaintiffs' claims are barred, in whole or in part, because the Fourth Amended Complaint fails to allege a cognizable antitrust injury.

### Tenth Defense

The Plaintiffs' deceptive trade practices claims are barred, in whole or in part, for failure to allege with particularity the circumstances constituting fraud or mistake. Plaintiffs' claims are also barred because Plaintiffs have not and cannot establish a legally cognizable false, misleading, unfair, or deceptive act or practice.

### Eleventh Defense

The Plaintiffs' claims are barred, in whole or in part, for failure to allege an adequate nexus with each of the Plaintiff States. The applicable state statutes and/or the state or United States Constitution do not permit the extraterritorial application of state law beyond each of the Plaintiff States' own borders. The applicable state statutes and/or the state or United States Constitution

**FILED UNDER SEAL**

also do not permit the Plaintiffs to cross their state lines to file their state law claims in federal court in Texas.

### Twelfth Defense

The Plaintiffs' claims are barred, in whole or in part, by the applicable statutes of limitations or repose and by the doctrine of laches.

### Thirteenth Defense

The Texas Deceptive Trade Practices and Consumer Protection Act Section 17.49(f), bars some or all of the claims by the State of Texas because the transactions, projects, or sets of transactions in question arose out of written contracts and involved more than $100,000. Tex. Bus. & Com. Code § 17.49(f). Section 17.49(g) also bars some or all of the claims by the State of Texas because they concern transactions, projects, or sets of transactions valued at more than $500,000. *Id*. § 17.49(g).  Some or all of the Plaintiffs' claims also are not actionable under the Texas Deceptive Trade Practices and Consumer Protection Act because they rest on the rendering of professional advisory services, which are outside the reach of the Texas Deceptive Trade Practices and Consumer Protection Act under Section 17.49(c). *Id*. § 17.49(c).

### Fourteenth Defense

The Plaintiffs' claims under state law are barred, in whole or in part, by the economic loss rule. A mere breach of contract is not actionable under any state deceptive trade practice statute and an action authorized by a contract is not deceptive as a matter of law. Here, the Plaintiffs do not allege any misrepresentations occurred outside Google's contracts and terms with its customers, so the state deceptive trade practices statutes do not apply. Finally, the Plaintiffs also

**FILED UNDER SEAL**

have no right to recovery under any of the state deceptive trade practice statutes pleaded in Count VI of the Fourth Amended Complaint.

### Fifteenth Defense

The Plaintiffs' demand for injunctive and penalty relief fails to state a claim on which equitable or injunctive relief may be granted to the extent the actions attacked in the Fourth Amended Complaint ended years before this lawsuit was filed, so there is neither any ongoing conduct nor any risk of future conduct that can or should be deterred by the award of such injunctive or penalty relief.

### Sixteenth Defense

To the extent that Plaintiffs seek to recover on behalf of allegedly injured consumers, those claims are barred because Plaintiffs have not identified specific consumers that qualify under the relevant statutes. In the absence of pleaded harm and injury to identified and identifiable ad buyers and ad sellers, the Plaintiffs again lack Article III standing.

### Seventeenth Defense

Any claim for civil penalties is barred, in whole or in part, by the applicable state statutes, by the United States Constitution's Due Process and Excessive Fines Clauses, and by comparable state constitutional provisions, by the lack of express legislative authorization for the requested form of civil penalties, and by the requirement of proportionality or reasonable relationship to the actual harm established.

### Eighteenth Defense

The State of Mississippi is barred as a matter of law from asserting a demand for "per violation" penalties under its deceptive trade practice statute in a case involving no individualized proof of harm to any ad buyer or ad seller in Mississippi. The imposition of such penalties is not

**FILED UNDER SEAL**

authorized by the statute and, if granted, would violate the Due Process and Excessive Fines

Clauses of the United States Constitution, as explained in *In re Zyprexa Prods. Liab. Litig.*, 671 F.

Supp. 2d 397, 462-64 (E.D.N.Y. 2009). For the same reasons, the other Plaintiffs are likewise

barred from seeking "per violation" penalties under their deceptive trade practices statutes in the

absence of proof of individualized harm to an ad buyer or ad seller in their state, because the award

of such penalties is not authorized by the relevant statute and would, in any event, violate the Due

Process and Excessive Fines Clauses of the United States Constitution, as well as any similar

provisions of the relevant state constitutions.

### Nineteenth Defense

The Plaintiffs' deceptive trade practices claims are barred, in whole or in part, because the

allegedly injured consumers consented to the receipt and use of the information at issue. End users

choose whether to consent to certain data processing, including the use of cookies or similar

identifiers to facilitate targeted advertising, and this consent bars the Plaintiffs' claims. Plaintiffs'

claims are also barred to the extent they seek to hold Google liable for the actions of third parties,

such as those who collect and use certain data and information to facilitate targeted advertising.

### Twentieth Defense

The Plaintiffs' claims are barred, in whole or in part, by the doctrines of waiver and/or

estoppel.

### Twenty-first Defense

The Plaintiffs' claims are barred, in whole or in part, because the allegedly injured ad

sellers and ad buyers through contract agreed to, authorized, and/or waived or relinquished claims

related to, the complained-of acts and practices. In addition, Google's auction practices and

policies were publicly disclosed to ad buyers and sellers, were true, and not misleading or

FILED UNDER SEAL

incomplete. In addition, the matters the States claim were omitted were not material to any reasonable ad buyer or reasonable ad seller, particularly when viewed in the context of other disclosures Google made.

### Twenty-second Defense

The Plaintiffs' deceptive trade practices claims are barred, in whole or in part, because Plaintiffs have no right to recover under the applicable state statutes; because Plaintiffs, ad buyers, ad sellers, and/or consumers did not suffer any harm or injury as a result of the allegedly unfair conduct; and/or because any injury caused by allegedly unfair conduct is outweighed by the benefits to competition, ad buyers, ad sellers, and/or consumers.

### Twenty-third Defense

Any relief demanded by Plaintiffs that requires Google to share its data, source code, private property, or technology with competitors is not authorized by law and, if ordered, would constitute an unconstitutional taking of Google's intellectual and personal property without just compensation in violation of the Due Process Clause. Further, to exact penalties from Google in the absence of proof of harm to any individual ad buyer or seller would likewise constitute an unconstitutional taking of Google's property in violation of the Due Process Clause.

### Twenty-fourth Defense

The penalty relief demanded by the States, if granted, would constitute an unconstitutional and Excessive Fine. Further, to the extent that state statutes at issue purport to (or are argued to permit) the Attorneys General to recover penalties from Google in the absence of proof of harm to an individual ad buyer or seller, then all such statutes are unconstitutional on their face and would be unconstitutional as applied. Any such authorization of penalties in the absence of proof of a

**FILED UNDER SEAL**

reasonable relationship between the harm actually caused and the amount of the penalty awarded would be disproportional *per se* and would violate the Due Process and Excessive Fines Clause.

### Twenty-fifth Defense

The Plaintiffs' claims are or may become barred, in whole or in part, by the one satisfaction rule, by res judicata, or by collateral estoppel. The one satisfaction rule, res judicata, or collateral estoppel may also bar, in whole or in part, issues or positions Plaintiffs seek to assert in this action.

### Twenty-sixth Defense

Some or all of the Plaintiffs' claims are barred, in whole or in part, by failure to satisfy statutory prerequisites to filing suit.

### Twenty-seventh Defense

The claims asserted by the Commonwealth of Puerto Rico under its Antitrust Act are barred, in whole or in part, because that Act requires claims for civil penalties to be brought by the Office of Monopolistic Affairs and adjudicated by the Department of Consumer Affairs, followed by potential judicial review in Puerto Rico's Court of First Instance. 10 L.P.R.A. § 259(c). The Department of Consumer Affairs has exclusive primary jurisdiction to adjudicate such claims. *See Aguadilla Paint Center v. Esso*, 183 D.P.R. 901, 2011 TSPR 194, 83 P.R. Offic. Trans. 44 (Dec. 15, 2011). The Act also requires requests for injunctive relief to be adjudicated in Puerto Rico's Court of First Instance. 10 L.P.R.A. § 269.

**FILED UNDER SEAL**

Google reserves the right to supplement its Answer and affirmative and additional defenses with other defenses that become available or apparent in the course of investigation, preparation, and/or discovery, and to amend its Answer accordingly.

**PRAYER FOR RELIEF**

WHEREFORE, Google prays for relief as follows:

(a)    That the Fourth Amended Complaint against Google be dismissed in its entirety, with prejudice;

(b)    That Google be awarded its attorneys' fees and costs and expenses of the suit; and

(c)    That the Court award such other and further relief to Google as the Court deems just and proper.

<u>FILED UNDER SEAL</u>

Dated: November 15, 2024

Respectfully submitted,

**GIBBS & BRUNS LLP**

<u>/s/ Kathy D. Patrick</u>
Kathy D. Patrick
Texas Bar No. 15581400
KPatrick@gibbsbruns.com
Robin C. Gibbs
Texas Bar No. 07853000
RGibbs@gibbsbruns.com
Ayesha Najam
Texas Bar No. 24046507
ANajam@gibbsbruns.com
Charles M. Rosson
Texas Bar No. 24074985
CRosson@gibbsbruns.com
Ann T. Lebeck
Texas Bar No. 24055840
ALebeck@gibbsbruns.com
Caitlin A. Halpern
Texas Bar No. 24116474
CHalpern@gibbsbruns.com
Michael R. Davis
Texas Bar No. 24109793
MDavis@gibbsbruns.com
Michael D. Doman
Texas Bar No. 24131182
MDoman@gibbsbruns.com
1100 Louisiana, Suite 5300
Houston, Texas 77002
Tel.: (713) 650-8805

Eric Mahr (*pro hac vice*)
Julie S. Elmer (*pro hac vice*)
**FRESHFIELDS US LLP**
700 13th Street, NW
10th Floor
Washington, DC 20005
Telephone: (202) 777-4545
Email: eric.mahr@freshfields.com
Email:  julie.elmer@freshfields.com

FILED UNDER SEAL

Daniel S. Bitton (*pro hac vice*)
AXINN, VELTROP & HARKRIDER LLP
55 Second Street
San Francisco, CA 94105
(415) 490-1486
dbitton@axinn.com

Bradley Justus (*pro hac vice*)
James K. Hunsberger (*pro hac vice*)
David R. Pearl (*pro hac vice*)
AXINN, VELTROP & HARKRIDER LLP
1901 L Street NW Washington, DC 20036
(202) 912-4700
bjustus@axinn.com
jhunsberger@axinn.com
dpearl@axinn.com

ATTORNEYS FOR DEFENDANT GOOGLE LLC

## CERTIFICATE OF SERVICE

I certify that on November 15, 2024, this document was filed electronically in compliance with Local Rule CV-5(a) and notice was thereby served on all counsel who have consented to electronic service, per Local Rule CV-5(a)(3)(A). In addition, this sealed filing will be promptly served by email on counsel of record for all parties.

*/s/ Kathy D. Patrick*
Kathy D. Patrick

## CERTIFICATE OF SEALING

I certify pursuant to Local Rule CV-5(a)(7)(B) that, on November 15, 2024, a motion to seal this document was filed, separately and immediately before this document was filed under seal.

*/s/ Kathy D. Patrick*
Kathy D. Patrick