# EXHIBIT 23

# REDACTED

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE GOOGLE DIGITAL ADVERTISING ANTITRUST LITIGATION | No. 21-MD-3010 (PKC) |

### DECLARATION OF ████████

I, ████████, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1. I have worked for Google LLC ("Google") for approximately ██ years. I am currently the ████████████████████████████████████████████.[1] In that capacity, I have extensive familiarity with how Google and other companies use cookies in connection with display advertising. Based on my personal experience with and knowledge of cookies and their use, I describe below some of the material features of Google's cookies used in display advertising and in real-time bidding products (Authorized Buyers, Open Bidding), as well as my general understanding of how their functionality evolved over time and operates today, though there may have been exceptions (e.g., bugs, experiments).

2. A "cookie" is a small piece of data stored on a user's computer via the user's browser when the user visits a website. In digital advertising, Google and other companies typically use cookies to store user or browser identifiers. These cookie-based identifiers ("IDs") can serve a variety of purposes, including personalizing ads (depending on a user's ad settings), limiting the number of times an ad is shown to a user, muting ads a user has chosen to stop seeing, and measuring the effectiveness of ads.

---

[1] Google Ad Manager combines functionalities that were previously called DoubleClick for Publishers ("DFP") and AdX.

1

Highly Confidential                                                                                                                        GOOG-AT-MDL-C-000076497

3.      A third-party cookie is created and placed on a user's browser by a domain that is different from the domain of the website that the user is visiting at that time. Companies that provide display advertising tools – such as demand-side platforms ("DSPs") and supply-side platforms ("SSPs") – place their third-party cookies on users' browsers under domains that they own and operate. A company can access only the third-party cookies set under its own domain.

4.      When a user visits a website, code on the publisher's website can be configured to send ad requests to the publisher's SSPs, including through publisher ad servers and/or through header bidding. Each ad request to an SSP may include the cookie-based ID associated with the third-party cookie stored on the browser of the user visiting the website under the SSP's domain. When an SSP then sends bid requests to DSPs, those bid requests may include the SSP's cookie-based ID or a derivative thereof.

5.      The Google third-party cookie used to pseudonymously identify a web browser instance on a given device, for advertising purposes, is known internally █████████

████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████

███████████████████████████
███████████████████████████

---
[2] Google's ███████████████████████

Highly Confidential                                                                                         GOOG-AT-MDL-C-000076498



7. DSPs commonly wish to use their own data about users, or the data of their advertiser customers, in making bidding decisions. When such data is associated with users of browsers that support third-party cookies, it is typically keyed by the cookie-based ID stored under DSP's domain. This is because, when a DSP collects information about user interactions (for example, on advertiser websites) from browsers, it only has access to third-party cookies stored under its own domain, but not to third-party cookies of any other companies (including SSPs). Further, because DSPs commonly work with many SSPs, it is more convenient for a DSP to key the information that it may collect and store about users using a single, consistent identifier. A cookie-based ID stored under a DSP's domain is such a consistent ID, while each SSP uses a different cookie-based ID for the same browser instance stored under its respective domain. Cookie matching is the process, typically provided by the SSP, of building a mapping between cookie-based IDs of two parties, frequently a DSP and an SSP.[3] Once the mapping is built, and assuming it is stored by the SSP (which typically is the case), an SSP can look up and include the DSP's cookie-based ID in a bid request. Google offers bidders to store these mapping tables ("hosted match tables") on its infrastructure at no charge. As a result, cookie

---

[3] The process for DSPs to integrate with Google's cookie matching service is described in detail at https://developers.google.com/authorized-buyers/rtb/cookie-guide.

3

Highly Confidential
GOOG-AT-MDL-C-000076499

matching enables a DSP to make bidding decisions using its data (or its advertiser's customer data) accessible by a consistent cookie-based ID stored under the DSP's domain.

8. Like other DSPs, when Google Ads and DV360 bid on third-party SSPs, they rely on the cookie matching services provided by the third-party SSP issuing the bid request.



9. Publishers can use a feature called "Secure Signals" to send additional information ("signals") on real-time bidding requests to the third-party bidders they choose. These signals can be created through a signal collection library (for web inventory, implemented as JavaScript code) provided by the publisher, or by a bidder or third party that the publisher chooses to work with. The publisher chooses which signals are collected and with which bidders they are shared, and it is possible that the publisher may choose to include user identifiers in the signals shared. For example, an SSP may choose to implement its own secure signal library that collects its third-party cookie-based ID directly from the browser in order to make that ID available through Secure Signals in bid requests to that SSP – without the need to rely on cookie matching with Google. Secure Signals must be obfuscated before sending them to Google. Secure Signals will only be shared at the publisher's explicit instruction and only with bidders the publisher has allowed to receive the signals. Google does not attempt to interpret, inspect, use, or retain Secure Signals data in any way.

4

10. I declare under penalty of perjury that the foregoing is true and correct.

Executed on the 11th day of July 2024, in ███████████████.

███████████████

Highly Confidential                                                                                           GOOG-AT-MDL-C-000076501