# EXHIBIT 25
# REDACTED

**HIGHLY CONFIDENTIAL**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| THE STATE OF TEXAS, et al., § <br> § <br> Plaintiffs, § <br> § <br> v. § <br> § <br> GOOGLE LLC, § <br> § <br> Defendant. § | Civil Action No. 4:20-CV-957-SDJ |

**DEFENDANT GOOGLE LLC'S FIRST AMENDED RESPONSES
AND OBJECTIONS TO
<u>PLAINTIFFS' THIRD SET OF INTERROGATORIES</u>**

to prejudice its right to conduct further investigation in these Actions, or to limit its use of any additional evidence that may be developed. Google reserves the right to assert additional objections, and to supplement its responses and objections as appropriate, particularly if any additional information regarding the Interrogatories or the underlying claims at issue is provided.

## RESPONSES AND OBJECTIONS TO SPECIFIC INTERROGATORIES

**Interrogatory No. 6:**

>For each Google Auction Mechanic, identify (1) each version or iteration of the Google Auction Mechanic; (2) the dates on which each version of each Google Auction Mechanic was launched or implemented on AdX, including the dates on which each version of each Google Auction Mechanic was (a) first used in or launched to live experimentation and what percentage of Publishers and Advertisers were subject to said live experimentation, (b) ramped up or down during live experimentation and what percentage of Publishers and Advertisers were subject to live experimentation after the ramp up or down, (c) launched to general availability, and, (d) if applicable, the dates on which each version of each Google Auction Mechanic was terminated, retired, or replaced; (3) the number and percentage of Publishers and Advertisers using AdX that were subject to live experimentation leading up to the launch to general availability of each version of each Google Auction Mechanic; and (4) for each month from the launch to general availability of each version of each Google Auction Mechanic, the number and identification of all Publishers and Advertisers on which each Google Auction Mechanic had an effect on floor prices, bids, revenue shares, or margins that would not have otherwise been affected had the Google Auction Mechanic not been operational.

**Response to Interrogatory No. 6:**

Google objects to Interrogatory 6 as overbroad, unduly burdensome, and disproportionate to the needs of the case because it seeks to require Google to provide information about "each version or iteration" of each of at least 16 different "Google Auction Mechanics" over more than 17 years. Google further objects to Interrogatory 6 as overbroad, unduly burdensome, and disproportionate to the needs of the case to the extent that it requires Google to summarize produced documents reflecting ad hoc experiments Google ran which assess the impact of

8

Google Auction Mechanics during the time period between a given Google Auction Mechanic's launch and its general availability, as such documents are equally available to Plaintiffs.

Google further objects to Interrogatory 6 as vague and ambiguous because it purports to require the identification of each "version or iteration," and further responses with respect to each "version," without defining either "version" or "iteration" or explaining the difference, if any, between those terms. ███████████████████████████████████

███████████████████████████████████

██████████████████████████████

███████████████████████████████, yet Plaintiffs provide no heuristic for selecting which "versions or iterations" they view as responsive.

Google further objects to Interrogatory 6 as vague and ambiguous because it fails to define "live experimentation" or "ramped up or down" in connection therewith. Google further objects to Interrogatory 6 as vague and ambiguous because it fails to define what it would mean for an Advertiser or Publisher to be "subject" to such "live experimentation." Google further objects to those subparts of Interrogatory 6 referencing those terms as overbroad, unduly burdensome, and disproportionate to the needs of the case.

Google further objects to Interrogatory 6 as vague and ambiguous because it fails to define the term "effect," including by providing the type or magnitude of effect that would be required to be responsive to the Interrogatory.

As previously discussed in the parties' meet-and-confer session on May 6, 2024, given the number of different "versions or iterations" of the Google Auction Mechanics over the past 15+ years, the vast majority of which have no relevance to the claims and defenses in this

Action, Google cannot reasonably respond with respect to all such versions or even "major" versions (and Interrogatory 6 is overbroad, unduly burdensome, and disproportionate to the needs of the case to the extent it seeks such responses). Nor do all versions have authoritative names; some are referenced in ordinary course documents by multiple names, while others are not "named" at all. Google has therefore construed Interrogatory 6 to refer to the 25+ versions identified below, which are those that have been the focus of discovery to date in this Action. To the extent Plaintiffs identify other versions that they contend are relevant to the claims and defenses in this Action, Google is willing to consider in good faith further supplementing this response.

With respect to Interrogatory 6's request for the dates on which those versions "launched to general availability," Google notes that it is impossible in many cases to pinpoint an exact date for a Google launch, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. Nonetheless, Google has provided below "on or about" dates for "general availability" launches (or their equivalent) as described in Google's ordinary course business documents currently available, assuming the features referenced in the definition of "Google Auction Dynamics" but not otherwise defined in the Interrogatories refer to the Google features commonly referred to using those names.

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇.

Subject to and without waiving any of the foregoing objections, Google responds to Interrogatory 6 as follows:

**Open Bidding** launched as "Exchange Bidding in Dynamic Allocation" on or about February 12, 2018. Network Bidding subsequently launched on or about January 4, 2019.

**Real-Time Bidding & Open Auction** are not defined in the Interrogatories, but to the extent they refer to auctions in AdX in which bidders could submit bids in real-time (as opposed to static bids configured in advance of the auction), AdX has supported such auctions at least since its re-launch after Google's acquisition of DoubleClick, which was publicly announced on September 17, 2009.

**Dynamic Allocation** initially launched on or about July 11, 2007 and was subsequently re-launched along with the remainder of AdX after Google's acquisition of DoubleClick, which was publicly announced on September 17, 2009. Plaintiffs purport to define "First Look" and "Last Look" as separate "Google Auction Mechanics" as to which Interrogatory 6 seeks separate responses, but neither is a Google Auction Mechanic as defined in the Interrogatories. Specifically, to the extent "First Look" refers to the alleged functionality by which Dynamic Allocation purportedly evaluated bids from AdX buyers prior to calling third-party exchanges, Google denies that that was the result of a "launch" within the meaning of Interrogatory 6. Similarly, to the extent "Last Look" refers to the alleged functionality by which dynamic allocation purportedly evaluates bids from AdX buyers after the results of any header bidder auction are known, Google denies that that was the result of a "launch" within the meaning of Interrogatory 6.

**Enhanced Dynamic Allocation** launched on or about March 3, 2014.

**Optimized Competition** launched on or about March 29, 2018. It was subsequently launched for small business publishers on or about April 30, 2018.

**Unified Pricing Rules** launched on or about May 10, 2019, with an open beta for publishers. Legacy open auction pricing rules were subsequently deprecated in favor of UPR in a launch on or about September 25, 2019.

**Reserve Price Optimization** launched on or about March 31, 2015. RPO v.2 subsequently launched on or about October 5, 2015. Prior versions of RPO were disabled along with the Google Ad Manager switch to first-price auctions in September-October 2019. In June 2022, Google launched a version of RPO designed for Ad Manager's first-price auction, known as Optimized Pricing, on select web traffic, and it was extended to all web traffic in January 2023.

**Dynamic Revenue Share** launched on or about August 20, 2015. DRS v. 2 subsequently launched on or about December 1, 2016. tDRS subsequently launched on or about July 17, 2018.

**Project Bernanke** launched on or about November 11, 2013. Subsequent versions of Bernanke include Global Bernanke, which launched on or about August 12, 2015; Project Bell v.2, which launched on or about October 26, 2016; and a further version of Bernanke compatible with Ad Manager's first-price auction (sometimes known as "Alchemist"), which launched no later than on or about October 25, 2019.

**Project Poirot** launched on or about June 19, 2017. Subsequent versions of Poirot include "Project Poirot with Bid Buckets," which launched on or about January 8, 2018; Project Poirot 2.0, also known as "Poirot with Auction Type Signal," which launched on or about September 3, 2018; and a further version of Poirot that utilized the minimum-bid-to-win data

12

provided by Google Ad Manager after its transition to a unified first price auction, which version of Poirot launched in September 2019.

**Project Elmo** launched on or about November 29, 2017 for DV360 advertisers.

**Minimum Bid to Win** (understood to refer to Google Ad Manager's provision of minimum bid to win feedback to Open Bidders and Authorized Buyers submitting bids to Google Ad Manager) launched on or about September 2019.

**OpenRTB** is an industry standard adopted by the Interactive Advertising Bureau (IAB), but not a Google Auction Dynamic as defined in the Interrogatories.

**Interrogatory No. 7:**

For each Google Auction Mechanic, from January 1, 2013 to the Present, identify on a monthly basis the number of impressions where such Google Auction Mechanic had any effect on bids, floor prices, or revenue shares, and the percentage of such impressions as a share of overall impressions, which otherwise would not have been affected had the Google Auction Mechanic not been operational.

**Response to Interrogatory No. 7:**

Google objects to Interrogatory 7 as overbroad, unduly burdensome, and disproportionate to the needs of the case because it seeks to require Google to provide information about each of at least 16 different "Google Auction Mechanics" on a monthly basis for over 11 years. Google further objects to Interrogatory 7 as overbroad, unduly burdensome, and disproportionate to the needs of the case to the extent that it requires Google to summarize produced documents reflecting ad hoc experiments Google ran which assess the impact of Google Auction Mechanics, as such documents are equally available to Plaintiffs.

Google further objects to Interrogatory 7 as vague and ambiguous because it fails to define the term "effect," including by providing the type or magnitude of effect that would be

13

**HIGHLY CONFIDENTIAL**

Dated: May 24, 2024                    Respectfully submitted,

*/s/ Eric Mahr*
Eric Mahr (*pro hac vice*)
FRESHFIELDS BRUCKHAUS DERINGER US LLP
700 13th Street NW, 10th Floor
Washington, D.C. 20005
(202) 777-4500
eric.mahr@freshfields.com

R. Paul Yetter
State Bar No. 22154200
YETTER COLEMAN LLP
811 Main Street, Suite 4100
Houston, Texas 77002
(713) 632-8000
pyetter@yettercoleman.com

ATTORNEYS FOR DEFENDANT GOOGLE LLC

**HIGHLY CONFIDENTIAL**

## CERTIFICATE OF SERVICE

I certify that on this 24th day of May 2024, this document was sent via email in compliance with the local rules and served on all counsel of record via email.

*/s/ Veronica M. Bosco*
Veronica M. Bosco
FRESHFIELDS BRUCKHAUS
DERINGER US LLP
3 World Trade Center
175 Greenwich St., 51st Fl.
New York, NY 10007
