# EXHIBIT 21
# [FILED UNDER SEAL]

1

```
 1              IN THE UNITED STATES DISTRICT COURT

 2              IN AND FOR THE DISTRICT OF DELAWARE

 3                          - - -

 4
        ZF MERITOR LLC and MERITOR    :   CIVIL ACTION
 5      TRANSMISSION CORPORATION,     :
                                      :
 6                  Plaintiffs,       :
                                      :
 7          vs.                       :
                                      :
 8      EATON CORPORATION,            :
                                      :
 9                  Defendant.        :   NO. 06-623 (SLR)

10
                            - - -
11
                                 Wilmington, Delaware
12                               Thursday, August 27, 2009
                                 4:27 o'clock, p.m.
13
                            - - -
14
        BEFORE:  HONORABLE SUE L. ROBINSON, U.S.D.C.J.
15
                            - - -
16
        APPEARANCES:
17

18          DRINKER, BIDDLE & REATH LLP
            BY:  KAREN V. SULLIVAN, ESQ.
19

20                       -and-

21

22

23

24                               Valerie J. Gunning
                                 Official Court Reporter
25
```

000001

```
                                    2
1   APPEARANCES (Continued):

2
    DICKSTEIN SHAPIRO LLP
3      BY: JAY N. FASTOW, ESQ.,
           PAUL R. TASKIER, ESQ.
4          JENNIFER D. HACKETT, ESQ. and
           (Washington, D.C.)
5

6            -and-

7
    ADAMS HOLCOMB LLP.
8      BY: R. BRUCE HOLCOMB, ESQ.
           (Washington, D.C.)
9

10           Counsel for Plaintiffs

11

12  MORRIS, NICHOLS, ARSHT & TUNNELL
       BY: DONALD E. REID, ESQ.
13

14           -and-

15
    HOWREY LLP
16     BY: JOSEPH A. OSTOYICH, ESQ.,
           ROBERT F. RUYAK, ESQ. and
17         MELISSA HANDRIGAN, ESQ.
           (Washington, D.C.)
18

19           Counsel for Defendant

20
             - - -
21

22

23
24
25
```

---

                                    3

1                 P R O C E E D I N G S

2

3          (Proceedings commenced in the courtroom,
4   beginning at 4:27 p.m.)

5

6          THE COURT: All right. I guess you can fill me
7   in on where we stand. Well, before you do that, let me say
8   this. Because we are going on three years without a fourth
9   judge, and although we have visiting judges taking over the
10  quarter of the civil cases that are coming in, we still have
11  all the criminal cases, and just because of our civil
12  docket, we're double-booked. So as it turns out, September,
13  I've got some criminal trials I have to get to, and one of
14  the double-booked cases, which does not happen often, is not
15  going away. So instead of four weeks, I probably have two
16  weeks to give you.
17         Now, I don't know what you plan to do today
18  given our situation, but I just want to let you know from
19  the get-go that if you plan to go forward, we're going to
20  have to do some juggling to get you any time at all.
21         And I also need to tell you that with the
22  caseload I have, I cannot get to any substantial motion
23  practice anytime soon. I just, with a fact-intensive case
24  like this, I continue to believe that summary judgment is
25  an incredibly burdensome exercise for me, and I will

---

                                    4

1   probably come out saying, there are lots of facts here and
2   there's no way that I can say, because every time I say it,
3   the Third Circuit sends it back, saying, gee, you should
4   have let this go forward.
5          So this is my situation. You tell me what your
6   situation is and we will see how we can go forward.
7          MR. FASTOW: Thank you, your Honor. Jay Fastow,
8   for the plaintiffs.
9          And as plaintiffs, of course, we'd like to get
10  to trial, but in light of the of Court's decision recently,
11  we think that the more efficient way to address this is to
12  do a couple of things first.
13         We would like to make a motion and we plan to do
14  it within the next week, in a week, addressing the opinion
15  and the order, a couple of grounds.
16         THE COURT: So you're talking about motion for
17  reconsideration and having me go back and go through the
18  exhaustive exercise again?
19         MR. FASTOW: Well, your Honor, if you like,
20  I could preliminarily preview it for you. But really
21  what we're looking at are a couple of things, just
22  briefly.
23         One is clarification in terms of the -- the
24  Court's rationale on the Daubert motion compared to the
25  final order the Court issued, excluding Dr. DeRamus'

---

                                    5

1   testimony, because what the Court did, as we read it,
2   is went off on the Court's view of the sufficiency of
3   the strategic business plan. And there are a couple of
4   things.
5          One is, Dr. DeRamus, as the Court recognized
6   in the decision, also had in his report the discussion of
7   non-damage issues, injury to competition, injury to
8   plaintiffs. And the Court specifically says, I'm not
9   addressing that here. So we think that, number one, we
10  would like clarification that when the Court says the
11  motion to exclude his testimony is granted, that it does
12  not include those issues.
13         A second one, again, is clarification. We
14  submit the lack of connection between the Court's rationale
15  and even on damages, whether Dr. DeRamus would be allowed
16  to testify, because, again, the Court went off on its view
17  of the sufficiency of the strategic business plan, but
18  there are alternative damages approaches that Dr. DeRamus
19  can use. And, in fact, the case from the Third Circuit the
20  Court cited, in Re Paoli, specifically endorses that in
21  Footnote 19.
22         THE COURT: Well, I will tell you, that was
23  the worst expert report I ever read in all my years on
24  the bench. It was. So if, in fact, it's everyone's wish
25  to go forward and just get this to a close, then you would

6

1  need to specifically point out to me where in the report
2  his alternate damages theories that do not -- I mean, I
3  don't know what he relies on and how you can have an
4  alternate damages theory, as far as I can see, without any
5  underlying -- any underpinning data.
6        But without getting into it here, because I,
7  frankly, don't have the patience for it, if it's our
8  considered view that it's better to get this case to trial
9  in some fashion, to put this matter to rest, then I will
10 certainly let you point out where his alternate theories
11 are and that they don't at all rely on the data that I found
12 so lacking, and that they do rely on something that is
13 appropriate.
14       So move on.
15       MR. FASTOW: Well, your Honor, just to be
16 crystal-clear from the plaintiffs' perspective, it's our
17 view that we should go through this motion first before we
18 proceed towards trial. We'd like to get to trial and do
19 want to get to trial. I believe we have a right to get to
20 trial. We think it makes sense to work through these issues
21 preliminarily.
22       A related, or another issue that we're going
23 to raise in this motion relates to the rationale of the
24 opinion compared to the motion that was, in fact, made.
25 And the motion that defendant Eaton made was not under --

7

1  well, let me put it this way. The Court's decision was
2  under Rule 703. Eaton did not make a motion under Rule
3  703.
4        THE COURT: That's fine, but as a gatekeeper,
5  I think I can review this under anything.
6        If you want -- well, all right. As I said, I
7  appreciate the fact that you want to file this motion, but
8  I really don't want to hear it today.
9        MR. FASTOW: That's fine, your Honor.
10       THE COURT: So on to how we get to trial.
11       You believe that all of these issues need to be
12 addressed before we get to trial?
13       MR. FASTOW: Yes, your Honor. We think that's
14 the appropriate and efficient and sensible way to do that.
15 And then once we get through this motion, then we would
16 like to come back to your Honor and set another conference
17 date.
18       THE COURT: All right. Thank you.
19       MR. FASTOW: And just, your Honor, one more
20 point I will mention is that Eaton has mentioned in its
21 submission yesterday that they want to renew the motion
22 for summary judgment on statute of limitations grounds. I
23 think they also mentioned reconsideration motion.
24       THE COURT: Yes.
25       MR. OSTOYICH: Your Honor, Joe Ostoyich from

8

1  Howrey, for Eaton Corporation.
2        We have gone through the process outlined by
3  the Federal Rules. We have engaged in fact discovery and
4  completed it. We've engaged in expert discovery and
5  completed it. We are ready to go to trial.
6        If we're going to have a delay, which we are not
7  advocating, we're all ready for this. This was the process
8  that's outlined, and if the expert didn't survive, just like
9  any other evidence, if they don't have backup evidence, I'm
10 not sure how they get to trial.
11       But we advocate starting the trial on the 8th.
12 If we're not going to, we do think we'd like that
13 opportunity to renew some of those motions because we
14 thought they were good motions, but we're here and ready to
15 start the trial on the day it's scheduled.
16       THE COURT: All right. So it's not clear to me
17 that plaintiffs can go to trial without some of this expert
18 opinion, so if we are going to go to trial, it seems to me
19 as though we need to go through the exercise and see if any
20 of the expert opinion survives.
21       So let me propose something with respect to
22 the schedule. Right now, I've got a criminal trial that
23 I've got to try because we've got the Speedy Trial Act,
24 and so I wouldn't be starting this trial until the 10th,
25 not the 8th. I've run up against another obstacle the

9

1  following week, where I can't attend to this case.
2        And you may sit down, sir.
3        MR. OSTOYICH: Thank you.
4        THE COURT: I guess what I'm proposing is, if I
5  only have two weeks to give this case under the best of
6  circumstances, number one, do you think we can accomplish
7  the trial in two weeks?
8        I do try virtually all of my patent cases in
9  two weeks or less. It seems to me we can do this in two
10 weeks. And, if so, whether, because this was a four-week
11 trial, whether, if I get my double-booked civil case that --
12 if I can get them to switch, would you be available to try
13 this case the weeks of the 22nd of September and the 28th
14 of September, rather than starting it as early as the 10th,
15 so that I have some time to address the plaintiffs' motion
16 for reconsideration to see what, if anything -- whether, in
17 fact, they've got expert opinion upon which to base any of
18 their case?
19       MR. FASTOW: Your Honor, well, just, first of
20 all, while we think that we would be entitled to proceed to
21 trial in any event, we certainly think it makes sense, as
22 your Honor is suggesting, to address these expert issues
23 first.
24       In terms of the schedule, I think in the
25 pretrial order, if I'm not mistaken, the total number of

10

1  trial hours that the parties have proposed, if you divide
2  it by, I guess, 30 trial hours per week, would be in the
3  five to six-week range. So I mean we, frankly, submit that
4  two weeks would be way too short for this case. And, again,
5  as much as we would like to get to trial, we think it's
6  important to have enough time.
7       THE COURT: I have to say, you are never going
8  to get five or six weeks of trial time in this court. You
9  just can't. I don't have it to give. I am double-booked
10 through 2010. I am booking into 2011, and I think I even
11 have a few patent trials booked in 2012. You cannot do it.
12 So we either have to figure out how to separate issues and
13 get to the heart of this case in a two-week period and then
14 see where that takes us, or you are -- I don't know what to
15 tell you. I can't do it.
16      MR. FASTOW: Well, I hear your Honor. I think
17 for the moment, at least until we can see if there's
18 something to be done in terms of breaking up issues, that,
19 from our perspective, two weeks would plainly not be enough.
20 And we understand that works into your Honor's schedule. We
21 understand that. And as much as we'd like to get to trial,
22 we think that's not enough time.
23      THE COURT: All right. Is there -- I don't
24 know.
25      MR. OSTOYICH: Your Honor, just from a defense

11

1  perspective, I think two weeks is a lot for this case. I
2  think we can accomplish their case and our case in two
3  weeks.
4       Now, we did put in 80 hours for our case, but
5  that's pegging off, they gave us a 95 figure and listed 50
6  trial witnesses. Obviously, if I have to spend 45 minutes
7  to an hour crossing everyone, that by itself takes a fair
8  amount of time.
9       This is a two-week trial, in my view. We can
10 start on the 22nd, if we need to.
11      One thing I want to clarify. Are they saying
12 if they file a motion for reconsideration and you deny that
13 and in effect hold that the doctor's report is entirely out,
14 that we're still going to have the trial, because I have a
15 lot of people we have to gear up for this. So if we are not
16 going to do that, I would like to know that now just so we
17 can figure out our schedules.
18      THE COURT: Well, I have to say that I focused
19 on the damages issue, not the liability issue, because that
20 was clearer to me. I have limited time and resources, so I
21 addressed the issue that was clearer.
22      Now, I don't know how you go forward on a case
23 if you don't have damages even if there is some other report
24 that addresses the liability issue.
25      Now, so I guess in that regard, I guess they are

12

1  making the point that -- well, they've got their arguments
2  on the damages theory of the case. So I don't know.
3       I guess we should ask plaintiffs' counsel, if,
4  in fact, I conclude that there is no damages theory to which
5  this witness can testify, then how is it that we would be
6  going forward?
7       MR. OSTOYICH: I guess, your Honor -- first, the
8  answer is, yes, we believe we still would be entitled to go
9  forward.
10      THE COURT: I truly wish you wouldn't use the
11 word "entitled."
12      MR. FASTOW: Okay.
13      THE COURT: Because there are very few things in
14 life to which we are entitled, and I suspect in this case,
15 there's not a whole lot anyone is entitled to.
16      MR. FASTOW: All right. As to the bases, we
17 believe we could still proceed on damages with respect to
18 fact evidence and lay opinion testimony under Rule 701,
19 and there's a whole collection of cases dealing with lay
20 opinion testimony with respect to future profits, with
21 respect to business valuation, under Rule 701.
22      Separately, there's a claim for injunctive
23 relief. So, in any event, of course, damages don't go to
24 that at all.
25      THE COURT: And since the business -- since

13

1  there is no business anymore, what kind of injunctive relief
2  are you talking about?
3       MR. FASTOW: We're talking about injunctive
4  relief, for example, that they could not have these long-
5  term agreements, shouldn't be able to be long term anymore.
6  That they shouldn't be able to agree with OEMs.
7       Well, your Honor, can I just stop for a
8  second? I don't want to get into anything that would
9  implicate the confidentiality order. I see we have some
10 folks here.
11      THE COURT: Well, I guess I wasn't clear that
12 you were still a competitor, and if you weren't a
13 competitor, I'm not sure how you would have standing for
14 any injunctive relief, but that's neither here nor there.
15 That is your view on how we could proceed to trial
16 regardless of my decision.
17      MR. FASTOW: Yes, your Honor. We believe on
18 both damages and injunctive relief, we could proceed.
19      THE COURT: Can I ask you a question? You're
20 a very nice man, and I appreciate, and I have tried to make
21 sure that you and your clients have been able to proceed
22 and to gather your evidence, but when I look at it, as I
23 said someplace in my memorandum order, this is a business
24 that wasn't in business that long before it went out of
25 business, and the figures that you are coming up with just

14

1  strike me as the kind of extravagant greed that makes
2  everything look suspect.
3       So I mean, I have to say that if -- well,
4  there's no way anyone can settle when you're out here and
5  reality is probably far removed from that. But I take it
6  your clients are absolutely wedded to these figures that
7  just, to me, are not at all connected to the real world.
8       Is that the case?
9       MR. FASTOW: Are you asking on a litigation side
10 or a settlement side?
11      THE COURT: On a settlement side.
12      MR. FASTOW: Your Honor, we're always prepared
13 to have meaningful settlement discussions.
14      THE COURT: But I'm just saying, you can't
15 with those figures, and you seem bound and determined to
16 stick with these figures come whatever or high water. All
17 right.
18      MR. FASTOW: Your Honor, I will mention it. Of
19 course, settlement comes both ways.
20      THE COURT: That's true.
21      MR. FASTOW: And I think we shouldn't get
22 into much more, but there are two sides to a two-party
23 settlement.
24      THE COURT: I understand that. And, certainly,
25 this isn't a completely one-sided case. That's why it has

15

1  gotten this far.
2       All right. Well, what I would propose is the
3  following. Well, it's unusual to me to have a plaintiff
4  who is not -- it does not seem as though you even want to
5  try to somehow get the case to trial soon because, as I
6  said, I can't promise you I will ever have five weeks to
7  give you.
8       So let's assume for the moment that you file
9  your motion for reconsideration and it's briefed promptly
10 and that I have to get to it promptly, obviously, and that
11 you can proceed to trial. Is there no way that we can do
12 this in two weeks?
13      MR. FASTOW: Your Honor, I don't see at all
14 doing the entire trial in two weeks.
15      One of the issues that I think your Honor has
16 raised, and we're perfectly prepared to speak with Eaton's
17 counsel about it, is whether there are ways to bifurcate
18 the issues, whether that makes sense, and see if at least we
19 can do it in some pieces.
20      Yes. So maybe we can follow up, if that's --
21 if there's some way to do that, because, again, you're
22 entirely right. We're the plaintiff. We would like to get
23 to trial. Just in light of this decision, we think it makes
24 sense to work out some of these things first, and then we
25 are prepared to talk to them about ways to bifurcate.

16

1       THE COURT: All right. Thank you.
2       And from defendant's points of view, are there
3  issues that are more critical that -- is there any domino
4  effect here? Are there issues that are critical so that if
5  they go forward and they go in either party's direction,
6  that that is a clear enough signal that the parties might
7  be able to not try every issue that they have asserted
8  against each other?
9       MR. OSTOYICH: I mean, in concept, it's hard to
10 tell. We're dealing with shifting sand, your Honor. Let me
11 just give you an example.
12      We were here about three months ago, arguing
13 the possibility of summary judgment, and we heard bundled
14 rebates and Lepages and we heard exclusive dealing and
15 Dentsply. Well, lo and behold, I got the jury instructions
16 two weeks ago. There is no jury instruction on bundled
17 rebates and there is no jury instruction on exclusive
18 dealing, and they've objected to our instructions on
19 exclusive dealing. They have a very brief mention of it in
20 their 80 papers of instructions.
21      So I don't even know what the basis for the
22 case is at this point. It's this very amorphous kind of
23 something anticompetitive. It's really not easy for me to
24 pin down.
25      So in concept, I would say maybe, but I can't

17

1  tell, because I don't know what the basis for the case is.
2       What I will do while I'm up here, your Honor,
3  if I can just ask the question, I'm not clear. If they file
4  a motion for reconsideration and I can demonstrate that all
5  of Dr. DeRamus' damages methodologies are pinned down to
6  that plan and what other flaws there are, now it sounds
7  like if you deny their motion for reconsideration, they also
8  want to proffer lay witnesses on damages.
9       Well, we did not have the possibility during
10 discovery of cross-examining those, because we did not know
11 that was realistic. I submit to you, they should not be in
12 a better position now than they would have been if they
13 proffered that under their rules.
14      So how many bites at the apple are they going to
15 ask for? And I just submit, we should just have the trial
16 and be done with it, because we're confident at this point
17 and we've got our evidence lined up.
18      THE COURT: All right. Well, that is a problem
19 for the plaintiff. If, in fact -- well, no evidence can
20 come in unless it was vetted through the discovery process,
21 and even if witnesses testified as to facts that might be
22 relevant to damages, if it wasn't in the context of damages
23 so that it was clear what the scope of the questioning
24 should be, that's a problem.
25      So I'm not sure we need to talk about that

000005

18

1  today, but, certainly, I share the defendant's concern about
2  the alternate resolution to your problem, that you can just
3  rely on fact witnesses.
4           MR. FASTOW: Well, your Honor, if we have
5  witnesses whom they depose and didn't ask those questions,
6  it's not our fault.
7           THE COURT: Well, clearly, in a sophisticated
8  antitrust case, you don't go forward on lay witnesses.
9  You go forward on an expert. The fact that the expert at
10 this point hasn't gotten through the Daubert gate does not
11 mean you can go back and say, well, we really meant to rely
12 on fact witnesses unless you specifically identified them
13 and it was clear to the defendant that you've got an expert,
14 but you're also relying on fact witnesses to prove a damages
15 case.
16          Don't tell me that that would have been clear to
17 anybody unless you specifically made it so.
18          MR. FASTOW: Well, your Honor, as you say, we
19 can argue that issue another time.
20          THE COURT: Yes. Yes, you can. Yes, you can.
21          All right. Well, let me say this. That,
22 clearly, until we're all on the same page as to what
23 theories and claims the plaintiff is pursuing, we cannot
24 hope to identify those that are more critical versus less
25 critical.

19

1           Is there someplace in the pretrial, the rather
2  hefty pretrial stipulation, that we could start kind of
3  looking at that?
4           MR. FASTOW: Yes, your Honor. I think there's
5  a quite extensive discussion of our claims in the pretrial,
6  proposed pretrial order.
7           THE COURT: All right. And is that as helpful
8  as the actual jury instructions that you submitted, which
9  it's kind of where the rubber meets the road when it comes
10 to --
11          MR. FASTOW: I think the proposed pretrial
12 order lays out our notion of our theories, facts that need
13 to be adjudicated, facts that we think do not need to be
14 adjudicated, but should be deemed established.
15          THE COURT: And where is that helpfully
16 located?
17          MR. FASTOW: Well, just starting briefly on
18 Page 1, we have a brief statement of our case. Then we
19 have a list of joint statement of facts, which are admitted
20 and require no proof on Page 3. Then we have our proposed
21 statement of facts starting on Page 6.
22          THE COURT: Well, it's not the facts. It's
23 what legal theories you are pursuing based on the facts.
24          MR. FASTOW: I think, your Honor, when one
25 goes through the facts that we deemed should be admitted

20

1  and require no proof and then the facts at issue.
2           For example, we can look at issues of fact
3  which remain to be litigated on Page 18. We have a list of
4  our facts and -- I'm sorry -- our statement.
5           And I think, in fact, defendant is correct in
6  one sense, which is that you can't put one simple name on
7  our claim. What they've been trying to do through the whole
8  case is to call this a predatory pricing case, for example.
9  It's not just a predatory pricing case. And while they may
10 be frustrated by the fact that this is a set of claims,
11 Section 1 of the Sherman Act, Section 2 of the Sherman Act,
12 Section 3 of the Clayton Act, they are about lots of
13 anticompetitive conduct, and that you cannot just call it
14 a simple name.
15          We're entitled -- I will use a different word --
16 those are perfectly viable and valid claims and are
17 recognized by cases like Dentsply, like Lepages, many of
18 the case that we've cited.
19          THE COURT: Well, Dentsply was a fairly easy --
20 I mean, it was an easier case in that it was clearly an
21 exclusive dealing, and this is more complicated because --
22 well, the contract you're talking about wasn't explicitly
23 exclusive, but that's neither here nor there.
24          MR. FASTOW: We submit there are many more piece
25 of anticompetitive conduct, both individually and in

21

1  concert, in which the defendant here has engaged.
2           So while they keep trying through the whole
3  case -- you saw you saw it in the motion to dismiss, you
4  saw it in the motion for summary judgment. To pigeonhole
5  it into one particular name, that's not how our claims
6  work. And, of course, we're the master of our claims.
7           THE COURT: All right. This is my concern
8  about plaintiffs' case, just as it was my concern about
9  plaintiffs' expert report, is that you rely on so many
10 facts. I mean, you push so much information at the
11 fact-finder, that I suspect there's no real way any lay
12 fact-finder, like a jury, even a judge, can possibly
13 understand what it all actually means. I mean, when you lay
14 out your seven, or your six statements, that looks really
15 easy. I mean, it looks like, well, this is all you have to
16 do, but your theory is based on conduct -- well, I don't
17 know.
18          I mean, that is why you think it is going to
19 take you six weeks to try the case, because you are just
20 throwing everything that happened during this three years
21 into the mix, and I get the impression that you're hoping
22 that the antitrust theory floats to the top. That's just
23 my impression.
24          MR. FASTOW: Your Honor, just two points on
25 that.

000006

### 22

1  One is, of course, your Honor did deny Eaton's
2  motion for summary judgment on the merits of the case.
3  And I would also refer your Honor to the discussion
4  beginning on Page 28 of the proposed pretrial order,
5  entitled, the heading, "Brief Statement of what Plaintiffs
6  Intend to Prove in Support of Their Claims." So that's
7  another discussion in the pretrial order of what we have.
8  And I think, if you match it page per page, it
9  may be that the defendant has a much longer discussion on
10 their side. I have not counted it, but in some of the
11 sections, I believe at least that's true.
12 In any event, I'm past summary judgment, and,
13 yes, they can hide behind the view that, well, this should
14 be a simple case when they've done, in our view, many things
15 that were anticompetitive. And of course, we intend to
16 raise the very anticompetitive conduct in this case.
17 THE COURT: Well, when I look at what you have
18 provided on Pages 28 and 29, these are not legal theories.
19 I mean, there's no way to separate out issues based on what
20 you've done on Pages 28 and 29. I mean, those are not kind
21 of different -- well, so I can't imagine that there's any
22 way to do this.
23 MR. FASTOW: I think, your Honor, that's where
24 you can look at the proposed jury instructions, where we
25 lay out the law we think is appropriate here. And as much

### 23

1  as they want to put a name, bundled rebates, the case is a
2  lot of things. And the cases that we cite in the proposed
3  jury instructions and elsewhere in this case on the motion
4  to dismiss, the motion for summary judgment, show that we
5  are very -- that they support the notion that plaintiff
6  can sue when a defendant engages in lots of anticompetitive
7  acts, and lots of kind of anticompetitive acts, as well as
8  if the defendant engaged in only one type of anticompetitive
9  act.
10 THE COURT: So it's really not that you are
11 pursuing different claims, it's just that you simply have a
12 whole lot of evidence you want to propound to support your
13 claims. So it does not sound like there's any way to
14 whittle down this trial.
15 I mean, certainly, I guess if I have no choice,
16 I can give you a choice. You either do it in two weeks now,
17 or we postpone and hope that at some point in the future,
18 all my other cases will go away one way or another so I can
19 give you more than two weeks. I don't know.
20 MR. FASTOW: Your Honor, as I said, we're
21 willing to put our minds to the task of seeing whether
22 there's a way to bifurcate something. But I think when
23 you think about Eaton's summary judgment motion, it was
24 also all kinds of stuff.
25 THE COURT: Well, but they were addressing what

### 24

1  you had proposed. And I guess the other problem is, if, in
2  fact, you're not necessarily saying that each kind of
3  conduct is necessarily anticompetitive -- well, are you
4  saying that it's not that each conduct can be classically
5  characterized as anticompetitive, but that all the conduct,
6  when you take it together, produces an anticompetitive
7  effect?
8  MR. FASTOW: Well, your Honor, what we're saying
9  is that each piece of conduct that we want to cite is
10 anticompetitive, but that the Supreme Court has also held
11 that we're entitled to put it altogether and they have a
12 cumulative effect. That's the Continental Ore case in 1962,
13 where the Supreme Court rejected exactly what Eaton is
14 trying to do here, which is to slice out each type of
15 conduct, look at that separately, and then try to move on.
16 The Supreme Court rejected just that argument and said that,
17 no, you look at it altogether.
18 THE COURT: Which is what makes this case so
19 difficult, both from a summary judgment point of view and
20 from a trial management point of view, which is why I
21 focused on damages, because you're piling a whole lot of
22 information, from what I saw, on a very slim read.
23 Now --
24 MR. FASTOW: Your Honor, perhaps -- could I
25 propose something?

### 25

1  THE COURT: Yes.
2  MR. FASTOW: Maybe it makes sense, let us make
3  our motion regarding the Court's recent order, have that
4  briefed and heard, and then perhaps get back together again
5  and see where we are after the Court has resolved that
6  motion.
7  THE COURT: All right. Well, if we do that,
8  let me say that I will rearrange my trial schedule either
9  by having the other trial go earlier or by rescheduling
10 that trial, which is a much simpler trial, so that at least
11 we'll have two contiguous weeks starting on September 22nd,
12 or are you saying that we -- that, truly, this will just
13 be another issue for appeal if I say, we have to go forward
14 and do this in two weeks?
15 I mean, I get in enough trouble with circuit
16 courts anyway, I'm not sure I want to take this on, because
17 I have to say that I could not survive, and I don't know how
18 any judge does, without timed trials, so that you actually
19 can schedule trials during the year.
20 And if I go forward and you, appeal and my very
21 favorite court, the Third Circuit, says, oh, Judge Robinson,
22 we've decided that timed trials really aren't a good idea,
23 you know what's going to happen? We won't try cases here.
24 So as an outside counsel, you might not care
25 about that. I suspect local counsel might care a little

26

1  bit more, but I, frankly, am not sure I want to risk
2  that.
3       As I said, there's no way I can give you more
4  than three weeks, but the question is whether I go to the
5  trouble of rearranging everything to give you the two
6  contiguous weeks, or whether you're saying at this point,
7  if you can't give us at least three, if not four, if not
8  five, if not six, we can't possibly try this complicated
9  case.
10       MR. FASTOW: Well, your Honor, I feel very
11  confident on the lower parts of those numbers, but I'm
12  willing to think about the bifurcation issue, to see if we
13  can work at it, because we understand from our perspective,
14  if there is something that makes sense, it allows us to get
15  to trial sooner, so we have an incentive to do that once the
16  motion issues have been cleared up. We understand plainly
17  the value to us in getting to at least a trial, if not the
18  full trial, if there's something that makes sense, but, for
19  example, two weeks, I just do not think that that would be
20  enough time to try this case entirely.
21       THE COURT: All right. Thank you.
22       Let's hear from defendant's counsel. I mean, I
23  think part of the problem has been that -- well, anyway,
24  what say you?
25       MR. OSTOYICH: Again, your Honor, we can try

27

1  the case in two weeks. I think that's reasonable. I don't
2  know what we can slice out and bifurcate. I'm not in favor
3  of it.
4       We're here. We're ready to go. This was the
5  schedule the parties agreed upon and submitted to you a
6  long time ago, and just like an evidentiary question, if a
7  ruling is issued pretrial, you live with it and you go to
8  trial, and that's what I would advocate here.
9       I don't think there's any reason to delay this
10  and drag it out. The client just pays more money. It's not
11  good for anything. It's just hanging over our heads.
12  Frankly, we'd just like to be done with it and get it
13  cleared.
14       Thank you.
15       THE COURT: All right. Well, let me work on
16  my schedule, see what I can do. In the meantime, we've got
17  to have a motion for reconsideration filed and we need to
18  have it filed promptly so that the defendant has an
19  opportunity to respond so that I have an opportunity to
20  resolve it before we might go to trial. All right?
21       MR. FASTOW: We would propose, your Honor, a
22  week from today. Next Thursday, we would propose to file
23  that motion.
24       THE COURT: All right.
25       MR. FASTOW: And I will mention that although

28

1  defendant is now saying how they're ready to go to trial,
2  they also asked your Honor to address two motions, summary
3  judgment and statute of limitations motion. They also want
4  to re-raise the reconsideration motion.
5       THE COURT: I know, and I honestly wish I could
6  do it, but I really can't.
7       MR. OSTOYICH: We're saying in the alternative.
8  We would rather just try the case and be done with it. If
9  we're going to have a delay, if it's not going to be until
10  September 22nd, or 2010, then we'll take you up on the
11  order, your Honor, which said you're denying without
12  prejudice to refile.
13       THE COURT: All right. Well, we're not delaying
14  at the moment, so let's focus on the motion for
15  reconsideration, and include in that your theory, sir, that
16  even if I continue to believe that your expert should not
17  testify on the grounds illuminated in his expert report on
18  damages, that there's some alternate way you can prove
19  damages, so that we can -- and let me just look.
20       I don't feel like turning on my computer, so let
21  me look at paper.
22       All right. So Thursday, the 3rd. Now, under
23  the local rules, a response wouldn't be due until the 17th,
24  which, obviously, does not give us enough time.
25       Can you do this by the 10th or the 11th?

29

1       MR. OSTOYICH: I don't have my calendar. Either
2  one of those, your Honor. You tell us.
3       THE COURT: All right. Well, you've got Labor
4  Day, so actually the 14th. If you could get something back
5  by the 14th. And if I need -- that's getting awfully close.
6       That's less than a week away. I know you all
7  are gearing up for trial is the problem, and that's an
8  expensive proposition. I don't know whether plaintiff is,
9  but defendant seems to be gearing up for trial.
10       MR. FASTOW: Your Honor, I think, again, it goes
11  back to trying to shoehorn, you know -- and I understand
12  your Honor's scheduling problems. But let me just mention
13  the pretrial order, just to give the Court a sense of at
14  least what the parties were thinking about.
15       THE COURT: Well, I mean, honestly,
16  shoehorning -- I don't really care what the parties were
17  thinking about.
18       MR. FASTOW: All right.
19       THE COURT: It's how much this Court can bear,
20  and I mean that in b-e-a-r, under its strained, limited
21  resources. So I think probably maybe 9/11 instead of 9/14
22  for the defendant's response. In the meantime, I will let
23  you know whether I can rearrange my trial schedule. I,
24  frankly, don't know.
25       I have no idea at this point in my mind -- I'm

```
                                        30
 1   sure I start a trial the first full week of October, but if
 2   I can rearrange that and we've got those three weeks, then
 3   please just see with your people whether, in fact, you might
 4   be available, and I will see what I can do.
 5              So I will let you know about scheduling next
 6   week.  In the meantime, 9/3, September 3rd for the motion,
 7   September 11th for the response, and I might get you on the
 8   phone to schedule a conference about the motion if it's
 9   unclear to me what's going on, or if I have other issues to
10   address with you.  All right?
11              MR. FASTOW:  Thank you, your Honor.
12              MR. OSTOYICH:  Thank you, your Honor.
13              THE COURT:  All right.  Counsel, I appreciate
14   your patience.  I find antitrust very, very much more
15   complicated than patent litigation, by a hundredfold, so I
16   appreciate your patience.  I will do my best to do a good
17   job.
18              All right.  Thank you very much.
19              (Counsel respond, "Thank you, your Honor.")
20              (Court recessed at 5:12 p.m.)
21                   - - -
22
23
24
25
```

**0**

06-623 [1] - 1:9

**1**

1 [2] - 19:18, 20:11
10th [3] - 8:24, 9:14, 28:25
11th [2] - 28:25, 30:7
14th [2] - 29:4, 29:5
17th [1] - 28:23
18 [1] - 20:3
19 [1] - 5:21
1962 [1] - 24:12

**2**

2 [1] - 20:11
2009 [1] - 1:12
2010 [2] - 10:10, 28:10
2011 [1] - 10:10
2012 [1] - 10:11
22nd [4] - 9:13, 11:10, 25:11, 28:10
27 [1] - 1:12
28 [3] - 22:4, 22:18, 22:20
28th [1] - 9:13
29 [2] - 22:18, 22:20

**3**

3 [2] - 19:20, 20:12
30 [1] - 10:2
3rd [2] - 28:22, 30:6

**4**

45 [1] - 11:6
4:27 [2] - 1:12, 3:4

**5**

50 [1] - 11:5
5:12 [1] - 30:20

**6**

6 [1] - 19:21

**7**

701 [2] - 12:18, 12:21

703 [2] - 7:2, 7:3

**8**

80 [2] - 11:4, 16:20
8th [2] - 8:11, 8:25

**9**

9/11 [1] - 29:21
9/14 [1] - 29:21
9/3 [1] - 30:6
95 [1] - 11:5

**A**

able [4] - 13:5, 13:6, 13:21, 16:7
absolutely [1] - 14:6
accomplish [2] - 9:6, 11:2
act [1] - 23:9
Act [4] - 8:23, 20:11, 20:12
ACTION [1] - 1:4
acts [2] - 23:7
actual [1] - 19:8
ADAMS [1] - 2:7
address [5] - 4:11, 9:15, 9:22, 28:2, 30:10
addressed [2] - 7:12, 11:21
addresses [1] - 11:24
addressing [3] - 4:14, 5:9, 23:25
adjudicated [2] - 19:13, 19:14
admitted [2] - 19:19, 19:25
advocate [2] - 8:11, 27:8
advocating [1] - 8:7
ago [3] - 16:12, 16:16, 27:6
agree [1] - 13:6
agreed [1] - 27:5
agreements [1] - 13:5
allowed [1] - 5:15
allows [1] - 26:14
alternate [5] - 6:2, 6:4, 6:10, 18:2, 28:18
alternative [2] - 5:18, 28:7
altogether [2] - 24:11, 24:17
amorphous [1] - 16:22

amount [1] - 11:8
AND [1] - 1:2
answer [1] - 12:8
anticompetitive [12] - 16:23, 20:13, 20:25, 22:15, 22:16, 23:6, 23:7, 23:8, 24:3, 24:5, 24:6, 24:10
antitrust [3] - 18:8, 21:22, 30:14
anytime [1] - 3:23
anyway [2] - 25:16, 26:23
appeal [2] - 25:13, 25:20
APPEARANCES [2] - 1:16, 2:1
apple [1] - 17:14
appreciate [4] - 7:7, 13:20, 30:13, 30:16
approaches [1] - 5:18
appropriate [3] - 6:13, 7:14, 22:25
argue [1] - 18:19
arguing [1] - 16:12
argument [1] - 24:16
arguments [1] - 12:1
ARSHT [1] - 2:12
asserted [1] - 16:7
assume [1] - 15:8
attend [1] - 9:1
August [1] - 1:12
available [2] - 9:12, 30:4
awfully [1] - 29:5

**B**

backup [1] - 8:9
base [1] - 9:17
based [3] - 19:23, 21:16, 22:19
bases [1] - 12:16
basis [2] - 16:21, 17:1
bear [1] - 29:19
BEAR [1] - 29:20
BEFORE [1] - 1:14
beginning [2] - 3:4, 22:4
behind [1] - 22:13
behold [1] - 16:15
bench [1] - 5:24
best [2] - 9:5, 30:16
better [2] - 6:8, 17:12
between [1] - 5:14
BIDDLE [1] - 1:18
bifurcate [4] - 15:17, 15:25, 23:22, 27:2
bifurcation [1] - 26:12

bit [1] - 26:1
bites [1] - 17:14
booked [5] - 3:12, 3:14, 9:11, 10:9, 10:11
booking [1] - 10:10
bound [1] - 14:15
breaking [1] - 10:18
brief [2] - 16:19, 19:18
Brief [1] - 22:5
briefed [2] - 15:9, 25:4
briefly [2] - 4:22, 19:17
BRUCE [1] - 2:8
bundled [3] - 16:13, 16:16, 23:1
burdensome [1] - 3:25
business [8] - 5:3, 5:17, 12:21, 12:25, 13:1, 13:23, 13:24, 13:25
BY [5] - 1:18, 2:3, 2:8, 2:12, 2:16

**C**

calendar [1] - 29:1
cannot [4] - 3:22, 10:11, 18:23, 20:13
care [3] - 25:24, 25:25, 29:16
case [44] - 3:23, 5:19, 6:8, 9:1, 9:5, 9:11, 9:13, 9:18, 10:4, 10:13, 11:1, 11:2, 11:4, 11:22, 12:2, 12:14, 14:8, 14:25, 15:5, 16:22, 17:1, 18:8, 18:15, 19:18, 20:8, 20:9, 20:18, 20:20, 21:3, 21:8, 21:19, 22:2, 22:14, 22:16, 23:1, 23:3, 24:12, 24:18, 26:9, 26:20, 27:1, 28:8
caseload [1] - 3:22
cases [9] - 3:10, 3:11, 3:14, 9:8, 12:19, 20:17, 23:2, 23:18, 25:23
certainly [5] - 6:10, 9:21, 14:24, 18:1, 23:15
characterized [1] - 24:5
choice [2] - 23:15, 23:16
circuit [1] - 25:15

Circuit [3] - 4:3, 5:19, 25:21
circumstances [1] - 9:6
cite [2] - 23:2, 24:9
cited [2] - 5:20, 20:18
CIVIL [1] - 1:4
civil [3] - 3:10, 3:11, 9:11
claim [2] - 12:22, 20:7
claims [8] - 18:23, 19:5, 20:10, 20:16, 21:5, 21:6, 23:11, 23:13
Claims [1] - 22:6
clarification [3] - 4:23, 5:10, 5:13
clarify [1] - 11:11
classically [1] - 24:4
Clayton [1] - 20:12
clear [8] - 6:16, 8:16, 13:11, 16:6, 17:3, 17:23, 18:13, 18:16
cleared [2] - 26:16, 27:13
clearer [2] - 11:20, 11:21
clearly [3] - 18:7, 18:22, 20:20
client [1] - 27:10
clients [2] - 13:21, 14:6
close [2] - 5:25, 29:5
collection [1] - 12:19
coming [2] - 3:10, 13:25
commenced [1] - 3:3
compared [2] - 4:24, 6:24
competition [1] - 5:7
competitor [2] - 13:12, 13:13
completed [2] - 8:4, 8:5
completely [1] - 14:25
complicated [3] - 20:21, 26:8, 30:15
computer [1] - 28:20
concept [2] - 16:9, 16:25
concern [3] - 18:1, 21:7, 21:8
concert [1] - 21:1
conclude [1] - 12:4
conduct [9] - 20:13, 20:25, 21:16, 22:16, 24:3, 24:4, 24:5, 24:9, 24:15
conference [2] - 7:16, 30:8

confident [2] - 17:16, 26:11
confidentiality [1] - 13:9
connected [1] - 14:7
connection [1] - 5:14
considered [1] - 6:8
context [1] - 17:22
contiguous [2] - 25:11, 26:6
Continental [1] - 24:12
continue [2] - 3:24, 28:16
Continued [1] - 2:1
contract [1] - 20:22
Corporation [1] - 8:1
CORPORATION [2] - 1:5, 1:8
correct [1] - 20:5
Counsel [2] - 2:10, 2:19
counsel [7] - 12:3, 15:17, 25:24, 25:25, 26:22, 30:13, 30:19
counted [1] - 22:10
couple [4] - 4:12, 4:15, 4:21, 5:3
course [6] - 4:9, 12:23, 14:19, 21:6, 22:1, 22:15
court [2] - 10:8, 25:21
COURT [46] - 1:1, 3:6, 4:16, 5:22, 7:4, 7:10, 7:18, 7:24, 8:16, 9:4, 10:7, 10:23, 11:18, 12:10, 12:13, 12:25, 13:11, 13:19, 14:11, 14:14, 14:20, 14:24, 16:1, 17:18, 18:7, 18:20, 19:7, 19:15, 19:22, 20:19, 21:7, 22:17, 23:10, 23:25, 24:18, 25:1, 25:7, 26:21, 27:15, 27:24, 28:5, 28:13, 29:3, 29:15, 29:19, 30:13
Court [15] - 1:24, 4:25, 5:1, 5:5, 5:8, 5:10, 5:16, 5:20, 24:10, 24:13, 24:16, 25:5, 29:13, 29:19, 30:20
Court's [6] - 4:10, 4:24, 5:2, 5:14, 7:1, 25:3
courtroom [1] - 3:3
courts [1] - 25:16
criminal [3] - 3:11, 3:13, 8:22
critical [4] - 16:3,

16:4, 18:24, 18:25
cross [1] - 17:10
cross-examining [1] - 17:10
crossing [1] - 11:7
crystal [1] - 6:16
crystal-clear [1] - 6:16
cumulative [1] - 24:12

**D**

D.C [3] - 2:4, 2:8, 2:17
damage [1] - 5:7
damages [19] - 5:15, 5:18, 6:2, 6:4, 11:19, 11:23, 12:2, 12:4, 12:17, 12:23, 13:18, 17:5, 17:8, 17:22, 18:14, 24:21, 28:18, 28:19
data [2] - 6:5, 6:11
date [1] - 7:17
Daubert [2] - 4:24, 18:10
dealing [6] - 12:19, 16:10, 16:14, 16:18, 16:19, 20:21
decided [1] - 25:22
decision [5] - 4:10, 5:6, 7:1, 13:16, 15:23
deemed [2] - 19:14, 19:25
defendant [10] - 6:25, 18:13, 20:5, 21:1, 22:9, 23:6, 23:8, 27:18, 28:1, 29:9
Defendant [2] - 1:9, 2:19
defendant's [4] - 16:2, 18:1, 26:22, 29:22
defense [1] - 10:25
DELAWARE [1] - 1:2
Delaware [1] - 1:11
delay [3] - 8:6, 27:9, 28:9
delaying [1] - 28:13
demonstrate [1] - 17:4
Dentsply [3] - 16:15, 20:17, 20:19
deny [3] - 11:12, 17:7, 22:1
denying [1] - 28:11
depose [1] - 18:5
DeRamus [3] - 5:5, 5:15, 5:18
DeRamus' [2] - 4:25, 17:5
determined [1] - 14:15

DICKSTEIN [1] - 2:2
different [3] - 20:15, 22:21, 23:11
difficult [1] - 24:19
direction [1] - 16:5
discovery [4] - 8:3, 8:4, 17:10, 17:20
discussion [5] - 5:6, 19:5, 22:3, 22:7, 22:9
discussions [1] - 14:13
dismiss [2] - 21:3, 23:4
DISTRICT [2] - 1:1, 1:2
divide [1] - 10:1
docket [1] - 3:12
doctor's [1] - 11:13
domino [1] - 16:3
DONALD [1] - 2:12
done [6] - 10:18, 17:16, 22:14, 22:20, 27:12, 28:8
double [4] - 3:12, 3:14, 9:11, 10:9
double-booked [4] - 3:12, 3:14, 9:11, 10:9
down [4] - 9:2, 16:24, 17:5, 23:14
Dr [5] - 4:25, 5:5, 5:15, 5:18, 17:5
drag [1] - 27:10
DRINKER [1] - 1:18
due [1] - 28:23
during [3] - 17:9, 21:20, 25:19

**E**

early [1] - 9:14
easier [1] - 20:20
easy [3] - 16:23, 20:19, 21:15
Eaton [5] - 6:25, 7:2, 7:20, 8:1, 24:13
EATON [1] - 1:8
Eaton's [3] - 15:16, 22:1, 23:23
effect [4] - 11:13, 16:4, 24:7, 24:12
efficient [2] - 4:11, 7:14
either [5] - 10:12, 16:5, 23:16, 25:8, 29:1
elsewhere [1] - 23:3
endorses [1] - 5:20
engaged [4] - 8:3, 8:4,

21:1, 23:8
engages [1] - 23:6
entire [1] - 15:14
entirely [3] - 11:13, 15:22, 26:20
entitled [8] - 9:20, 12:8, 12:11, 12:14, 12:15, 20:15, 22:5, 24:11
ESQ [9] - 1:18, 2:3, 2:3, 2:4, 2:8, 2:12, 2:16, 2:16, 2:17
established [1] - 19:14
event [3] - 9:21, 12:23, 22:12
evidence [7] - 8:9, 12:18, 13:22, 17:17, 17:19, 23:12
evidentiary [1] - 27:6
exactly [1] - 24:13
examining [1] - 17:10
example [5] - 13:4, 16:11, 20:2, 20:8, 26:19
exclude [1] - 5:11
excluding [1] - 4:25
exclusive [5] - 16:14, 16:17, 16:19, 20:21, 20:23
exercise [3] - 3:25, 4:18, 8:19
exhaustive [1] - 4:18
expensive [1] - 29:8
expert [13] - 5:23, 8:4, 8:8, 8:17, 8:20, 9:17, 9:22, 18:9, 18:13, 21:9, 28:16, 28:17
explicitly [1] - 20:22
extensive [1] - 19:5
extravagant [1] - 14:1

**F**

fact [21] - 3:23, 5:19, 5:24, 6:24, 7:7, 8:3, 9:17, 12:4, 12:18, 17:19, 18:3, 18:9, 18:12, 18:14, 20:2, 20:5, 20:10, 21:11, 21:12, 24:2, 30:3
fact-finder [2] - 21:11, 21:12
fact-intensive [1] - 3:23
facts [12] - 4:1, 17:21, 19:12, 19:13, 19:19, 19:21, 19:22, 19:23, 19:25, 20:1, 20:4,

21:10
fair [1] - 11:7
fairly [1] - 20:19
far [3] - 6:4, 14:5, 15:1
fashion [1] - 6:9
FASTOW [37] - 2:3, 4:7, 4:19, 6:15, 7:9, 7:13, 7:19, 9:19, 10:16, 12:12, 12:16, 13:3, 13:17, 14:9, 14:12, 14:18, 14:21, 15:13, 18:4, 18:18, 19:4, 19:11, 19:17, 19:24, 20:24, 21:24, 22:23, 23:20, 24:8, 24:24, 25:2, 26:10, 27:21, 27:25, 29:10, 29:18, 30:11
Fastow [1] - 4:7
fault [1] - 18:6
favor [1] - 27:2
favorite [1] - 25:21
Federal [1] - 8:3
few [2] - 10:11, 12:13
figure [3] - 10:12, 11:5, 11:17
figures [4] - 13:25, 14:6, 14:15, 14:16
file [5] - 7:7, 11:12, 15:8, 17:3, 27:22
filed [2] - 27:17, 27:18
fill [1] - 3:6
final [1] - 4:25
finder [2] - 21:11, 21:12
fine [2] - 7:4, 7:9
first [7] - 4:12, 6:17, 9:19, 9:23, 12:7, 15:24, 30:1
five [4] - 10:3, 10:8, 15:6, 26:8
flaws [1] - 17:6
floats [1] - 21:22
focus [1] - 28:14
focused [2] - 11:18, 24:21
folks [1] - 13:10
follow [1] - 15:20
following [2] - 9:1, 15:3
Footnote [1] - 5:21
FOR [1] - 1:2
forward [12] - 3:19, 4:4, 4:6, 5:25, 11:22, 12:6, 12:9, 16:5, 18:8, 18:9, 25:13, 25:20
four [3] - 3:15, 9:10, 26:7
four-week [1] - 9:10

fourth [1] - 3:8
frankly [5] - 6:7, 10:3, 26:1, 27:12, 29:24
frustrated [1] - 20:10
full [2] - 26:18, 30:1
future [2] - 12:20, 23:17

**G**

gate [1] - 18:10
gatekeeper [1] - 7:4
gather [1] - 13:22
gear [1] - 11:15
gearing [2] - 29:7, 29:9
gee [1] - 4:3
get-go [1] - 3:19
given [1] - 3:18
granted [1] - 5:11
greed [1] - 14:1
grounds [3] - 4:15, 7:22, 28:17
guess [10] - 3:6, 9:4, 10:2, 11:25, 12:3, 12:7, 13:11, 23:15, 24:1
Gunning [1] - 1:24

**H**

HACKETT [1] - 2:4
HANDRIGAN [1] - 2:17
hanging [1] - 27:11
hard [1] - 16:9
heading [1] - 22:5
heads [1] - 27:11
hear [3] - 7:8, 10:16, 26:22
heard [3] - 16:13, 16:14, 25:4
heart [1] - 10:13
hefty [1] - 19:2
held [1] - 24:10
helpful [1] - 19:7
helpfully [1] - 19:15
hide [1] - 22:13
high [1] - 14:16
HOLCOMB [2] - 2:7, 2:8
hold [1] - 11:13
honestly [2] - 28:5, 29:15
Honor [42] - 4:7, 4:19, 6:15, 7:9, 7:13, 7:16, 7:19, 7:25, 9:19, 9:22, 10:16, 10:25, 12:7, 13:7, 13:17, 14:12, 14:18, 15:13, 15:15, 16:10, 17:2, 18:4, 18:18, 19:4, 19:24, 21:24, 22:1, 22:3, 22:23, 23:20, 24:8, 24:24, 26:10, 26:25, 27:21, 28:2, 28:11, 29:2, 29:10, 30:11, 30:12, 30:19
Honor's [2] - 10:20, 29:12
HONORABLE [1] - 1:14
hope [2] - 18:24, 23:17
hoping [1] - 21:21
hour [1] - 11:7
hours [3] - 10:1, 10:2, 11:4
Howrey [1] - 8:1
HOWREY [1] - 2:15
hundredfold [1] - 30:15

**I**

idea [2] - 25:22, 29:25
identified [1] - 18:12
identify [1] - 18:24
illuminated [1] - 28:17
imagine [1] - 22:21
implicate [1] - 13:9
important [1] - 10:6
impression [2] - 21:21, 21:23
IN [2] - 1:1, 1:2
incentive [1] - 26:15
include [2] - 5:12, 28:15
incredibly [1] - 3:25
individually [1] - 20:25
information [2] - 21:10, 24:22
injunctive [5] - 12:22, 13:1, 13:3, 13:14, 13:18
injury [2] - 5:7
instead [2] - 3:15, 29:21
instruction [2] - 16:16, 16:17
instructions [6] - 16:15, 16:18, 16:20, 19:8, 22:24, 23:3
Intend [1] - 22:6
intend [1] - 22:15
intensive [1] - 3:23

issue [10] - 6:22, 11:19, 11:21, 11:24, 16:7, 18:19, 20:1, 25:13, 26:12
issued [2] - 4:25, 27:7
issues [15] - 5:7, 5:12, 6:20, 7:11, 9:22, 10:12, 10:18, 15:15, 15:18, 16:3, 16:4, 20:2, 22:19, 26:16, 30:9
itself [1] - 11:7

**J**

JAY [1] - 2:3
Jay [1] - 4:7
JENNIFER [1] - 2:4
job [1] - 30:17
Joe [1] - 7:25
joint [1] - 19:19
JOSEPH [1] - 2:16
Judge [1] - 25:21
judge [3] - 3:9, 21:12, 25:18
judges [1] - 3:9
judgment [10] - 3:24, 7:22, 16:13, 21:4, 22:2, 22:12, 23:4, 23:23, 24:19, 28:3
juggling [1] - 3:20
jury [7] - 16:15, 16:16, 16:17, 19:8, 21:12, 22:24, 23:3

**K**

KAREN [1] - 1:18
keep [1] - 21:2
kind [8] - 13:1, 14:1, 16:22, 19:2, 19:9, 22:20, 23:7, 24:2
kinds [1] - 23:24

**L**

Labor [1] - 29:3
lack [1] - 5:14
lacking [1] - 6:12
law [1] - 22:25
lay [7] - 12:18, 12:19, 17:8, 18:8, 21:11, 21:13, 22:25
lays [1] - 19:12
least [7] - 10:17, 15:18, 22:11, 25:10, 26:7, 26:17, 29:14
legal [2] - 19:23, 22:18

Lepages [2] - 16:14, 20:17
less [3] - 9:9, 18:24, 29:6
liability [2] - 11:19, 11:24
life [1] - 12:14
light [2] - 4:10, 15:23
limitations [2] - 7:22, 28:3
limited [2] - 11:20, 29:20
lined [1] - 17:17
list [2] - 19:19, 20:3
listed [1] - 11:5
litigated [1] - 20:3
litigation [2] - 14:9, 30:15
live [1] - 27:7
LLC [1] - 1:4
LLP [4] - 1:18, 2:2, 2:7, 2:15
lo [1] - 16:15
local [2] - 25:25, 28:23
located [1] - 19:16
look [9] - 13:22, 14:2, 20:2, 22:17, 22:24, 24:15, 24:17, 28:19, 28:21
looking [2] - 4:21, 19:3
looks [2] - 21:14, 21:15
lower [1] - 26:11

**M**

man [1] - 13:20
management [1] - 24:20
master [1] - 21:6
match [1] - 22:8
matter [1] - 6:9
mean [17] - 6:2, 10:3, 14:3, 16:9, 18:11, 20:20, 21:10, 21:13, 21:15, 21:18, 22:19, 22:20, 23:15, 25:15, 26:22, 29:15, 29:20
meaningful [1] - 14:13
means [1] - 21:13
meant [1] - 18:11
meantime [3] - 27:16, 29:22, 30:6
meets [1] - 19:9
MELISSA [1] - 2:17
memorandum [1] - 13:23
mention [5] - 7:20, 14:18, 16:19, 27:25, 29:12
mentioned [2] - 7:20, 7:23
MERITOR [2] - 1:4
merits [1] - 22:2
methodologies [1] - 17:5
might [7] - 16:6, 17:21, 25:24, 25:25, 27:20, 30:3, 30:7
mind [1] - 29:25
minds [1] - 23:21
minutes [1] - 11:6
mistaken [1] - 9:25
mix [1] - 21:21
moment [3] - 10:17, 15:8, 28:14
money [1] - 27:10
months [1] - 16:12
MORRIS [1] - 2:12
motion [35] - 3:22, 4:13, 4:16, 4:24, 5:11, 6:17, 6:23, 6:24, 6:25, 7:2, 7:7, 7:15, 7:21, 7:23, 9:15, 11:12, 15:9, 17:4, 17:7, 21:3, 21:4, 22:2, 23:3, 23:4, 23:23, 25:3, 25:6, 26:16, 27:17, 27:23, 28:3, 28:4, 28:14, 30:6, 30:8
motions [3] - 8:13, 8:14, 28:2
move [2] - 6:14, 24:15
MR [45] - 4:7, 4:19, 6:15, 7:9, 7:13, 7:19, 7:25, 9:3, 9:19, 10:16, 10:25, 12:7, 12:12, 12:16, 13:3, 13:17, 14:9, 14:12, 14:18, 14:21, 15:13, 16:9, 18:4, 18:18, 19:4, 19:11, 19:17, 19:24, 20:24, 21:24, 22:23, 23:20, 24:8, 24:24, 25:2, 26:10, 26:25, 27:21, 27:25, 28:7, 29:1, 29:10, 29:18, 30:11, 30:12

**N**

name [4] - 20:6, 20:14, 21:5, 23:1
necessarily [2] - 24:2, 24:3
need [10] - 3:21, 6:1,

7:11, 8:19, 11:10, 17:25, 19:12, 19:13, 27:17, 29:5
**never** [1] - 10:7
**next** [3] - 4:14, 27:22, 30:5
**nice** [1] - 13:20
**NICHOLS** [1] - 2:12
**NO** [1] - 1:9
**non** [1] - 5:7
**non-damage** [1] - 5:7
**notion** [2] - 19:12, 23:5
**number** [3] - 5:9, 9:6, 9:25
**numbers** [1] - 26:11

## O

**o'clock** [1] - 1:12
**objected** [1] - 16:18
**obstacle** [1] - 8:25
**obviously** [3] - 11:6, 15:10, 28:24
**October** [1] - 30:1
**OEMs** [1] - 13:6
**OF** [1] - 1:2
**Official** [1] - 1:24
**often** [1] - 3:14
**once** [2] - 7:15, 26:15
**one** [18] - 3:13, 4:23, 5:5, 5:9, 5:13, 7:19, 9:6, 11:11, 14:25, 15:15, 19:24, 20:6, 21:5, 22:1, 23:8, 23:18, 29:2
**one-sided** [1] - 14:25
**opinion** [7] - 4:14, 6:24, 8:18, 8:20, 9:17, 12:18, 12:20
**opportunity** [3] - 8:13, 27:19
**order** [12] - 4:15, 4:25, 9:25, 13:9, 13:23, 19:6, 19:12, 22:4, 22:7, 25:3, 28:11, 29:13
**Ore** [1] - 24:12
**OSTOYICH** [10] - 2:16, 7:25, 9:3, 10:25, 12:7, 16:9, 26:25, 28:7, 29:1, 30:12
**Ostoyich** [1] - 7:25
**outlined** [2] - 8:2, 8:8
**outside** [1] - 25:24

## P

**p.m** [3] - 1:12, 3:4, 30:20
**page** [3] - 18:22, 22:8
**Page** [5] - 19:18, 19:20, 19:21, 20:3, 22:4
**Pages** [2] - 22:18, 22:20
**Paoli** [1] - 5:20
**paper** [1] - 28:21
**papers** [1] - 16:20
**part** [1] - 26:23
**particular** [1] - 21:5
**parties** [5] - 10:1, 16:6, 27:5, 29:14, 29:16
**parts** [1] - 26:11
**party** [1] - 14:22
**party's** [1] - 16:5
**past** [1] - 22:12
**patent** [3] - 9:8, 10:11, 30:15
**patience** [3] - 6:7, 30:14, 30:16
**pAUL** [1] - 2:3
**pays** [1] - 27:10
**pegging** [1] - 11:5
**people** [2] - 11:15, 30:3
**per** [2] - 10:2, 22:8
**perfectly** [2] - 15:16, 20:16
**perhaps** [2] - 24:24, 25:4
**period** [1] - 10:13
**perspective** [4] - 6:16, 10:19, 11:1, 26:13
**phone** [1] - 30:8
**piece** [2] - 20:24, 24:9
**pieces** [1] - 15:19
**pigeonhole** [1] - 21:4
**piling** [1] - 24:21
**pin** [1] - 16:24
**pinned** [1] - 17:5
**plainly** [2] - 10:19, 26:16
**plaintiff** [6] - 15:3, 15:22, 17:19, 18:23, 23:5, 29:8
**plaintiffs** [4] - 4:8, 4:9, 5:8, 8:17
**Plaintiffs** [3] - 1:6, 2:10, 22:5
**plaintiffs'** [5] - 6:16, 9:15, 12:3, 21:8, 21:9
**plan** [6] - 3:17, 3:19,

4:13, 5:3, 5:17, 17:6
**point** [12] - 6:1, 6:10, 7:20, 12:1, 16:22, 17:16, 18:10, 23:17, 24:19, 24:20, 26:6, 29:25
**points** [2] - 16:2, 21:24
**position** [1] - 17:12
**possibility** [2] - 16:13, 17:9
**possibly** [2] - 21:12, 26:8
**postpone** [1] - 23:17
**practice** [1] - 3:23
**predatory** [2] - 20:8, 20:9
**prejudice** [1] - 28:12
**preliminarily** [2] - 4:20, 6:21
**prepared** [3] - 14:12, 15:16, 15:25
**pretrial** [10] - 9:25, 19:1, 19:2, 19:5, 19:6, 19:11, 22:4, 22:7, 27:7, 29:13
**preview** [1] - 4:20
**pricing** [2] - 20:8, 20:9
**problem** [6] - 17:18, 17:24, 18:2, 24:1, 26:23, 29:7
**problems** [1] - 29:12
**proceed** [7] - 6:18, 9:20, 12:17, 13:15, 13:18, 13:21, 15:11
**Proceedings** [1] - 3:3
**process** [3] - 8:2, 8:7, 17:20
**produces** [1] - 24:6
**proffer** [1] - 17:8
**proffered** [1] - 17:13
**profits** [1] - 12:20
**promise** [1] - 15:6
**promptly** [3] - 15:9, 15:10, 27:18
**proof** [2] - 19:20, 20:1
**propose** [5] - 8:21, 15:2, 24:25, 27:21, 27:22
**proposed** [8] - 10:1, 19:6, 19:11, 19:20, 22:4, 22:24, 23:2, 24:1
**proposing** [1] - 9:4
**proposition** [1] - 29:8
**propound** [1] - 23:12
**prove** [2] - 18:14, 28:18
**Prove** [1] - 22:6
**provided** [1] - 22:18

**pursuing** [3] - 18:23, 19:23, 23:11
**push** [1] - 21:10
**put** [7] - 6:9, 7:1, 11:4, 20:6, 23:1, 23:21, 24:11

## Q

**quarter** [1] - 3:10
**questioning** [1] - 17:23
**questions** [1] - 18:5
**quite** [1] - 19:5

## R

**raise** [3] - 6:23, 22:16, 28:4
**raised** [1] - 15:16
**range** [1] - 10:3
**rather** [3] - 9:14, 19:1, 28:8
**rationale** [3] - 4:24, 5:14, 6:23
**Re** [1] - 5:20
**re** [1] - 28:4
**re-raise** [1] - 28:4
**read** [3] - 5:1, 5:23, 24:22
**ready** [5] - 8:5, 8:7, 8:14, 27:4, 28:1
**real** [2] - 14:7, 21:11
**realistic** [1] - 17:11
**reality** [1] - 14:5
**really** [9] - 4:20, 7:8, 16:23, 18:11, 21:14, 23:10, 25:22, 28:6, 29:16
**rearrange** [3] - 25:8, 29:23, 30:2
**rearranging** [1] - 26:5
**reason** [1] - 27:9
**reasonable** [1] - 27:1
**REATH** [1] - 1:18
**rebates** [3] - 16:14, 16:17, 23:1
**recent** [1] - 25:3
**recently** [1] - 4:10
**recessed** [1] - 30:20
**recognized** [2] - 5:5, 20:17
**reconsideration** [10] - 4:17, 7:23, 9:16, 11:12, 15:9, 17:4, 17:7, 27:17, 28:4, 28:15
**refer** [1] - 22:3

**refile** [1] - 28:12
**regard** [1] - 11:25
**regarding** [1] - 25:3
**regardless** [1] - 13:16
**REID** [1] - 2:12
**rejected** [2] - 24:13, 24:16
**related** [1] - 6:22
**relates** [1] - 6:23
**relevant** [1] - 17:22
**relief** [5] - 12:23, 13:1, 13:4, 13:14, 13:18
**relies** [1] - 6:3
**rely** [5] - 6:11, 6:12, 18:3, 18:11, 21:9
**relying** [1] - 18:14
**remain** [1] - 20:3
**removed** [1] - 14:5
**renew** [2] - 7:21, 8:13
**report** [7] - 5:6, 5:23, 6:1, 11:13, 11:23, 21:9, 28:17
**Reporter** [1] - 1:24
**require** [2] - 19:20, 20:1
**rescheduling** [1] - 25:9
**resolution** [1] - 18:2
**resolve** [1] - 27:20
**resolved** [1] - 25:5
**resources** [2] - 11:20, 29:21
**respect** [4] - 8:21, 12:17, 12:20, 12:21
**respond** [2] - 27:19, 30:19
**response** [3] - 28:23, 29:22, 30:7
**rest** [1] - 6:9
**review** [1] - 7:5
**risk** [1] - 26:1
**road** [1] - 19:9
**ROBERT** [1] - 2:16
**ROBINSON** [1] - 1:14
**Robinson** [1] - 25:21
**rubber** [1] - 19:9
**Rule** [4] - 7:2, 12:18, 12:21
**rules** [2] - 17:13, 28:23
**Rules** [1] - 8:3
**ruling** [1] - 27:7
**run** [1] - 8:25
**RUYAK** [1] - 2:16

## S

**sand** [1] - 16:10
**saw** [4] - 21:3, 21:4,

24:22
schedule [9] - 8:22, 9:24, 10:20, 25:8, 25:19, 27:5, 27:16, 29:23, 30:8
scheduled [1] - 8:15
schedules [1] - 11:17
scheduling [2] - 29:12, 30:5
scope [1] - 17:23
second [2] - 5:13, 13:8
Section [3] - 20:11, 20:12
sections [1] - 22:11
see [14] - 4:6, 6:4, 8:19, 9:16, 10:14, 10:17, 13:9, 15:13, 15:18, 25:5, 26:12, 27:16, 30:3, 30:4
seeing [1] - 23:21
seem [2] - 14:15, 15:4
sends [1] - 4:3
sense [9] - 6:20, 9:21, 15:18, 15:24, 20:6, 25:2, 26:14, 26:18, 29:13
sensible [1] - 7:14
separate [2] - 10:12, 22:19
separately [2] - 12:22, 24:15
September [7] - 3:12, 9:13, 9:14, 25:11, 28:10, 30:6, 30:7
set [2] - 7:16, 20:10
settle [1] - 14:4
settlement [5] - 14:10, 14:11, 14:13, 14:19, 14:23
seven [1] - 21:14
SHAPIRO [1] - 2:2
share [1] - 18:1
Sherman [2] - 20:11
shifting [1] - 16:10
shoehorn [1] - 29:11
shoehorning [1] - 29:16
short [1] - 10:4
show [1] - 23:4
side [4] - 14:9, 14:10, 14:11, 22:10
sided [1] - 14:25
sides [1] - 14:22
signal [1] - 16:6
simple [3] - 20:6, 20:14, 22:14
simpler [1] - 25:10
simply [1] - 23:11
sit [1] - 9:2

situation [3] - 3:18, 4:5, 4:6
six [5] - 10:3, 10:8, 21:14, 21:19, 26:8
six-week [1] - 10:3
slice [2] - 24:14, 27:2
slim [1] - 24:22
SLR [1] - 1:9
someplace [2] - 13:23, 19:1
soon [2] - 3:23, 15:5
sooner [1] - 26:15
sophisticated [1] - 18:7
sorry [1] - 20:4
sound [1] - 23:13
sounds [1] - 17:6
specifically [5] - 5:8, 5:20, 6:1, 18:12, 18:17
Speedy [1] - 8:23
spend [1] - 11:6
stand [1] - 3:7
standing [1] - 13:13
start [4] - 8:15, 11:10, 19:2, 30:1
starting [6] - 8:11, 8:24, 9:14, 19:17, 19:21, 25:11
Statement [1] - 22:5
statement [4] - 19:18, 19:19, 19:21, 20:4
statements [1] - 21:14
STATES [1] - 1:1
statute [2] - 7:22, 28:3
stick [1] - 14:16
still [5] - 3:10, 11:14, 12:8, 12:17, 13:12
stipulation [1] - 19:2
stop [1] - 13:7
strained [1] - 29:20
strategic [2] - 5:3, 5:17
strike [1] - 14:1
stuff [1] - 23:24
submission [1] - 7:21
submit [5] - 5:14, 10:3, 17:11, 17:15, 20:24
submitted [2] - 19:8, 27:5
substantial [1] - 3:22
SUE [1] - 1:14
sue [1] - 23:6
sufficiency [2] - 5:2, 5:17
suggesting [1] - 9:22
SULLIVAN [1] - 1:18
summary [10] - 3:24,

7:22, 16:13, 21:4, 22:2, 22:12, 23:4, 23:23, 24:19, 28:2
Support [1] - 22:6
support [2] - 23:5, 23:12
Supreme [3] - 24:10, 24:13, 24:16
survive [2] - 8:8, 25:17
survives [1] - 8:20
suspect [4] - 12:14, 14:2, 21:11, 25:25
switch [1] - 9:12

T

task [1] - 23:21
TASKIER [1] - 2:3
term [2] - 13:5
terms [3] - 4:23, 9:24, 10:18
testified [1] - 17:21
testify [3] - 5:16, 12:5, 28:17
testimony [4] - 5:1, 5:11, 12:18, 12:20
THE [47] - 1:1, 1:2, 3:6, 4:16, 5:22, 7:4, 7:10, 7:18, 7:24, 8:16, 9:4, 10:7, 10:23, 11:18, 12:10, 12:13, 12:25, 13:11, 13:19, 14:11, 14:14, 14:20, 14:24, 16:1, 17:18, 18:7, 18:20, 19:7, 19:15, 19:22, 20:19, 21:7, 22:17, 23:10, 23:25, 24:18, 25:1, 25:7, 26:21, 27:15, 27:24, 28:5, 28:13, 29:3, 29:15, 29:19, 30:13
theories [6] - 6:2, 6:10, 18:23, 19:12, 19:23, 22:18
theory [6] - 6:4, 12:2, 12:4, 21:16, 21:22, 28:15
they've [5] - 9:17, 12:1, 16:18, 20:7, 22:14
thinking [2] - 29:14, 29:17
Third [3] - 4:3, 5:19, 25:21
three [6] - 3:8, 16:12, 21:20, 26:4, 26:7, 30:2
throwing [1] - 21:20

Thursday [3] - 1:12, 27:22, 28:22
timed [2] - 25:18, 25:22
today [4] - 3:17, 7:8, 18:1, 27:22
together [2] - 24:6, 25:4
top [1] - 21:22
total [1] - 9:25
towards [1] - 6:18
TRANSMISSION [1] - 1:5
trial [49] - 4:10, 6:8, 6:18, 6:19, 6:20, 7:10, 7:12, 8:5, 8:10, 8:11, 8:15, 8:17, 8:18, 8:22, 8:24, 9:7, 9:11, 9:21, 10:1, 10:2, 10:5, 10:8, 10:21, 11:6, 11:9, 11:14, 13:15, 15:5, 15:11, 15:14, 15:23, 17:15, 23:14, 24:20, 25:8, 25:9, 25:10, 26:15, 26:17, 26:18, 27:8, 27:20, 28:1, 29:7, 29:9, 29:23, 30:1
Trial [1] - 8:23
trials [5] - 3:13, 10:11, 25:18, 25:19, 25:22
tried [1] - 13:20
trouble [2] - 25:15, 26:5
true [2] - 14:20, 22:11
truly [2] - 12:10, 25:12
try [12] - 8:23, 9:8, 9:12, 15:5, 16:7, 21:19, 24:15, 25:23, 26:8, 26:20, 26:25, 28:8
trying [4] - 20:7, 21:2, 24:14, 29:11
TUNNELL [1] - 2:12
turning [1] - 28:20
turns [1] - 3:12
two [25] - 3:15, 9:5, 9:7, 9:9, 10:4, 10:13, 10:19, 11:1, 11:2, 11:9, 14:22, 15:12, 15:14, 16:16, 21:24, 23:16, 23:19, 25:11, 25:14, 26:5, 26:19, 27:1, 28:2
two-party [1] - 14:22
two-week [2] - 10:13, 11:9
type [2] - 23:8, 24:14

U

U.S.D.C.J [1] - 1:14
unclear [1] - 30:9
under [10] - 6:25, 7:2, 7:5, 9:5, 12:18, 12:21, 17:13, 28:22, 29:20
underlying [1] - 6:5
underpinning [1] - 6:5
UNITED [1] - 1:1
unless [3] - 17:20, 18:12, 18:17
unusual [1] - 15:3
up [11] - 8:25, 10:18, 11:15, 13:25, 15:20, 17:2, 17:17, 26:16, 28:10, 29:7, 29:9

V

Valerie [1] - 1:24
valid [1] - 20:16
valuation [1] - 12:21
value [1] - 26:17
versus [1] - 18:24
vetted [1] - 17:20
viable [1] - 20:16
view [11] - 5:2, 5:16, 6:8, 6:17, 11:9, 13:15, 16:2, 22:13, 22:14, 24:19, 24:20
virtually [1] - 9:8
visiting [1] - 3:9
vs [1] - 1:7

W

washington [1] - 2:8
Washington [2] - 2:4, 2:17
water [1] - 14:16
ways [3] - 14:19, 15:17, 15:25
wedded [1] - 14:6
week [12] - 4:14, 9:1, 9:10, 10:2, 10:3, 10:13, 11:9, 27:22, 29:6, 30:1, 30:6
weeks [26] - 3:15, 3:16, 9:5, 9:7, 9:9, 9:10, 9:13, 10:4, 10:8, 10:19, 11:1, 11:3, 15:6, 15:12, 15:14, 16:16, 21:19, 23:16, 23:19, 25:11, 25:14, 26:4, 26:6, 26:19, 27:1, 30:2

whittle [1] - 23:14
whole [6] - 12:15, 12:19, 20:7, 21:2, 23:12, 24:21
willing [2] - 23:21, 26:12
Wilmington [1] - 1:11
wish [3] - 5:24, 12:10, 28:5
witness [1] - 12:5
witnesses [8] - 11:6, 17:8, 17:21, 18:3, 18:5, 18:8, 18:12, 18:14
word [2] - 12:11, 20:15
works [1] - 10:20
world [1] - 14:7
worst [1] - 5:23

## Y

year [1] - 25:19
years [3] - 3:8, 5:23, 21:20
yesterday [1] - 7:21

## Z

ZF [1] - 1:4