# EXHIBIT 148

UNDER PROTECTIVE ORDER

Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

THE STATE OF TEXAS, ET AL.,

       Plaintiff,

vs.                            CASE NO. 4:20-CV-00957-SDJ

GOOGLE, LLC,
       Defendant.

VTC 30(b)(6)
DEPOSITION OF:   THE STATE OF SOUTH CAROLINA
                  BY: REBECCA HARTNER
                     (Appearing by VTC)

DATE:            APRIL 23, 2024

TIME:            9:13 a.m.

LOCATION:       Zoom Videoconference

TAKEN BY:       Counsel for the Defendants

REPORTED BY:    Susan M. Valsecchi, Registered
               Professional Reporter, CRR
               (Appearing by VTC)

_____

Job No. CS6655508

Page 40

1         Ms. Hartner, if you can answer without
2     disclosing work product, you may do so.
3         THE WITNESS: So I'm unable to answer,
4     I think, I don't think, without disclosing
5     work product.
6  BY MS. BRACEWELL:
7     Q.   Okay.  Let's talk a little bit about
8  the impact on advertisers specifically.
9         What is South Carolina's understanding
10 of how many in-state advertisers or ad agencies use
11 Google ad tech products?
12    A.   So we'll be relying on the documents
13 and data produced in this case and ongoing
14 discovery to show the number of -- number of
15 advertisers.
16    Q.   Can you name any in-state advertisers
17 or ad agencies?
18        MS. SCHULTZ:  Objection, form.
19        THE WITNESS:  Sitting here today, I'm
20 unable to name any particular advertiser.
21 However, discovery is ongoing, and this will
22 be the subject of forthcoming expert
23 discovery.
24 BY MS. BRACEWELL:
25    Q.   Are there any reports, studies, or

1  calculations you're aware of setting forth the
2  alleged harm to advertisers in South Carolina?
3       A.   I'm unaware of any studies, however,
4  discovery is ongoing, and this will be the subject
5  of forthcoming expert reports.
6       Q.   Okay.  And have any state agencies
7  investigated the alleged harm to advertisers in
8  South Carolina?
9       A.   I'm not able to speculate about any
10 state agencies.
11      Q.   You're not aware of any state agencies
12 having conducted that kind of investigation,
13 correct?
14      A.   I'm not aware.
15      Q.   And the OAG didn't request that any
16 state agencies investigate that alleged harm,
17 correct?
18           MS. SCHULTZ:  Objection based on work
19      product.
20           Ms. Hartner, you may answer if you can
21      do so without disclosing work product.
22           THE WITNESS:  No, I don't know if I'm
23      able to answer without disclosing work
24      product.
25 BY MS. BRACEWELL:

1    A.   And any deposition testimony or
2    discovery in this case, but I don't have anything
3    to add otherwise.
4    Q.   Okay.  Let's turn, if we can, to
5    in-state publishers.  What is South Carolina's
6    understanding of how many in-state publishers use
7    Google ad tech products?
8    A.   The factual basis for the publishers
9    who use the products will be all the documents and
10   data produced in this case and the deposition
11   testimony, and that's also going to be the subject
12   of forthcoming expert reports.
13   Q.   Can you name three in-state publishers,
14   sitting here today?
15   A.   Could you repeat that question, please?
16   Q.   Can you name three in-state publishers
17   who have been harmed, sitting here today?
18        MS. SCHULTZ:  Objection, form.
19        THE WITNESS:  Sitting here today, I'm
20        not aware of particular publishers to name.
21        However, discovery is ongoing, and the
22        expert discovery is also forthcoming.
23   BY MS. BRACEWELL:
24   Q.   So can -- you can't name a single
25   in-state publisher who has been harmed by Google's

Page 46

```
 1    alleged conduct, correct?
 2             MS. SCHULTZ:  Object to form.
 3             THE WITNESS:  I believe I just answered
 4        that.
 5    BY MS. BRACEWELL:
 6        Q.   How did -- or strike that.  Are there
 7    any reports, studies, or calculations of the
 8    alleged harm to publishers in South Carolina?
 9        A.   Sitting here today, I'm not aware of
10    any particular studies; however, discovery is
11    ongoing, and this will be the subject of expert
12    reports forthcoming.
13        Q.   Did you ask anyone about such reports
14    or studies or calculations of in-state harm?
15             MS. SCHULTZ:  Work product objection
16        here.
17             Ms. Hartner, you may answer to the
18        extent you don't disclose work product.
19             THE WITNESS:  Yeah.  Can you ask the
20        question again, please?
21    BY MS. BRACEWELL:
22        Q.   Yes or no, did you ask anyone about
23    reports, studies, or calculations upon to in-state
24    publishers?
25        A.   In preparation for the test -- or for
```

UNDER PROTECTIVE ORDER

Page 58

1   number of affected or allegedly harmed consumers,
2   fair?
3           MS. SCHULTZ:  Objection, form.
4           THE WITNESS:  I'm sorry, will you
5       repeat the question?
6   BY MS. BRACEWELL:
7       Q.   Of course, of course.
8           Sitting here today, South Carolina does
9   not have an understanding of the number of in-state
10  consumers affected by the alleged conduct?
11      A.   So we have a factual basis for our
12  understanding of widespread harm to consumers,
13  which would include documents and data produced
14  during this case and deposition testimony, other --
15  and that will be the subject of forthcoming expert
16  reports.
17      Q.   Do any of those sources you've just
18  described -- documents and data, depositions -- do
19  any of those provide a particular number of
20  in-state consumers affected by the alleged conduct?
21      A.   Yes, we think that the combination of
22  documents and data will support calculations of
23  harm, along with expert reports forthcoming.
24      Q.   Okay.  But sitting here today, you
25  don't know what that number is, fair?

Page 59

1           MS. SCHULTZ:  Objection, form.
2           THE WITNESS:  Sitting here today, I'm
3      not able to say a particular number, however
4      discovery is ongoing, and this will be the
5      subject of forthcoming expert reports.
6   BY MS. BRACEWELL:
7      Q.   Are you aware of any reports or studies
8   or calculations about alleged harm to consumers in
9   South Carolina?
10     A.   Sitting here today, I'm not aware of
11  any reports; however, discovery is ongoing, and
12  this will be the subject of expert discovery
13  forthcoming.
14     Q.   But South Carolina didn't rely on any
15  such reports about harm to consumers in filing the
16  lawsuit, correct?
17     A.   So we relied on all the investigative
18  materials, documents produced, interviews, et
19  cetera.  We -- I am unaware if we relied on any
20  studies.
21     Q.   Okay.  You are not aware that South
22  Carolina relied on any such studies or reports,
23  correct?
24          MS. SCHULTZ:  Objection, form.
25          THE WITNESS:  I believe I just answered

Page 179

1  CERTIFICATE OF REPORTER

2

3       I, Susan M. Valsecchi, Registered
4  Professional Reporter and Notary Public for
5  the State of South Carolina at Large, do
6  hereby certify that the foregoing transcript
7  is a true, accurate, and complete record.
8       I further certify that I am neither
9  related to nor counsel for any party to the
10 cause pending or interested in the events
11 thereof.
12      Witness my hand, I have hereunto
13 affixed my official seal this 23rd day of
14 April, 2024 at Columbia, Richland County,
15 South Carolina.

            Susan M. Valsecchi, RPR, CRR
            My Commission expires
            December 4, 2024

1  The State Of Texas, Et Al. v. Google LLC
2  Rebecca Hartner (#6655508)
3           E R R A T A   S H E E T
4  PAGE  12  LINE  12  CHANGE  delete "the"
5  _____
6  REASON  transcription error
7  PAGE  19  LINE  15  CHANGE  "Kristen" to "Kristin"
8  _____
9  REASON  spelling error
10 PAGE  38  LINE  5   CHANGE  "Part" to "RFA"
11 _____
12 REASON  transcription error
13 PAGE  67  LINE  18  CHANGE  "2020" to "2023"
14 _____
15 REASON  transcription error
16 PAGE  87  LINE  15  CHANGE  "your" to "our"
17 _____
18 REASON  transcription error
19 PAGE  94  LINE  10  CHANGE  "our office is privy" to
20 "our office's purview"
21 REASON  transcription error
22
23 _Rebecca N. Hartner_                    5/9/2024
24 Rebecca Hartner                              Date
25

Page 185

1  The State Of Texas, Et Al. v. Google LLC
2  Rebecca Hartner (#6655508)
3          ACKNOWLEDGEMENT OF DEPONENT
4    I, Rebecca Hartner, do hereby declare that I
5  have read the foregoing transcript, I have made any
6  corrections, additions, or changes I deemed necessary as
7  noted above to be appended hereto, and that the same is
8  a true, correct and complete transcript of the testimony
9  given by me.
10
11  _Rebecca N. Hartner_____    _5/9/2024_____
12  Rebecca Hartner                  Date
13  *If notary is required
14                    SUBSCRIBED AND SWORN TO BEFORE ME THIS
15  _9th___ DAY OF _May_____, 20_24_.
16
17
18         _Anna C. Smith_____
19              NOTARY PUBLIC

[Notary Seal: ANNA C. SMITH, NOTARY PUBLIC, SOUTH CAROLINA, Exp. May 8, 2025]