# EXHIBIT 176

                                                    Page 1

1              IN THE UNITED STATES DISTRICT COURT
              FOR THE EASTERN DISTRICT OF TEXAS
2                      SHERMAN DIVISION
3    THE STATE OF TEXAS,        )
     et al.,                    )
4                               )
          Plaintiffs,           )
5                               )
     vs.                        )  CASE NO. 4:20-cv-00957-SD
6                               )
     GOOGLE LLC,                )
7                               )
          Defendant.            )
8
9                 30(b)(6) DEPOSITION OF
10                     JEFF PICKETT
11          ON BEHALF OF THE STATE OF ALASKA
12                     MAY 3, 2024
13
14      ORAL VIDEOTAPED DEPOSITION OF JEFF PICKETT, via
15   Zoom, produced as a witness at the instance of the
16   Defendant and duly sworn, was taken in the above-styled
17   and numbered cause on the 3rd day of May, 2024, from
18   12:15 p.m. to 3:03 p.m. Alaska Standard Time, before
19   Melinda Barre, Certified Shorthand Reporter in and for
20   the State of Texas, reported by computerized stenotype
21   machine, all parties appearing remotely via web
22   videoconference, pursuant to the rules of procedure and
23   the provisions stated on the record or attached hereto.
24
25      Job No. CS6655711

Page 21

1    a lawsuit, I mean, not jurisdiction or whatever.

2                 So there has to be some nexus between the

3    conduct and the State of Alaska.  So we would definitely

4    look for that nexus before filing a suit, lawsuit.

5        Q.    In this particular litigation what was that

6    nexus to Alaska?

7        A.    So through the course of the information and

8    evidence developed in the coalition's investigation,

9    what became apparent was that the Google conduct that we

10   focused on in the Ad Tech matter was national in scope

11   and, therefore, impacted Alaskans.  I believe there's

12   likely to be expert testimony that sort of backs that

13   up.

14                And so that was, you know -- that checked

15   that box to answer, I think, the question that you've

16   asked me.

17       Q.    In what venue does the Alaska AGO's office

18   typically bring state law enforcement actions?

19       A.    State law enforcement actions?  I mean, if only

20   state law is implicated, it would be in our trial

21   courts, state trial courts.  We refer to them as

22   superior courts.  Typically we have a district court

23   that's also a trial court, but it handles smaller types

24   of cases.

25                But if there are federal claims that

Page 32

1      Q.    And you're prepared to testify about these

2  today as they relate to the State of Alaska.  Is that

3  right?

4      A.    Yes.

5      Q.    Did Alaska receive any consumer complaints

6  about Google's Display Advertising products?

7      A.    No.

8      Q.    Okay.  So for clarification purposes, if we can

9  turn to RFA 3, which is at page 5.  It goes on to 6.

10            THE VIDEOGRAPHER:  Mr. Pickett, just to

11  let you know, if I don't take back control, you can

12  always take it back.  Just click on the mouse, and then

13  you should regain control of the document whenever you

14  need to.

15            THE WITNESS:  Okay.  Thanks.

16  BY MS. LEONARD:

17      Q.    And just to clarify, what is Alaska's response

18  to RFA No. 3?

19      A.    Okay.  So, you know, part of the response, of

20  course, are the objections.  And then in terms of our

21  substantive response, I'll read it.  "The plaintiff

22  states have produced complaints regarding Google's

23  Display Advertising or Ad Tech that are relevant and

24  within their possession, custody and control.  Subject

25  to and without waiving the foregoing objections, the

Page 42

1    harmed.

2        Q.    So Alaska doesn't have any Alaska-specific harm

3    in addition to the information that Alaska's relying on

4    from Texas' representative?

5                MR. ENGELBECK:  Objection, form.

6        A.    Well, Alaska specific.  I mean, I think that

7    what -- you know, some of that question I would have to

8    answer by pointing to expert sort of reports that will

9    be coming out.

10               And then, in addition to what the experts

11   are going to talk about, will include, as I understand

12   it, Alaska based -- you know, how Google's tech has

13   intersected with or been used in Alaska.  In addition to

14   that, Mr. Gordon, I think, gave fulsome responses to the

15   common facts that we believe also exist -- that also

16   attend Google products in tech that is used by Alaskan

17   publishers and advertisers.

18               But to kind of preemptive guess the next

19   question, I have not and the State of Alaska has not

20   talked to a specific advertiser based in Alaska or

21   specific publisher based in Alaska.  As part of our

22   investigation, we have not done that.

23   BY MS. LEONARD:

24       Q.    Okay.  So you say Alaska has not identified a

25   specific advertiser or publisher in Alaska that has been

Page 44

1    BY MS. LEONARD:

2        Q.   Just want to close out our discussion about the

3    consumer complaints that we talked about earlier.  And

4    just to clarify, you said there were no consumer

5    complaints about Google's Display Advertising or Ad

6    Tech.  You didn't search other types of complaints

7    against Google.

8                So what Alaska-specific harm are you

9    seeking penalties for in the fourth amended complaint?

10               MR. ENGELBECK:  Objection, form.

11       A.   So just to clarify one piece of what you just

12   said, we did search for Alaska -- or for consumer

13   complaints against Google that we received involving

14   Google, and we found two.  But neither of them had

15   anything to do with Ad Tech.

16   BY MS. LEONARD:

17       Q.   Okay.  So what is the Alaska-specific harm that

18   the State of Alaska is seeking penalties for in the

19   complaint?

20       A.   Well, so again I would point to Mr. Gordon's

21   30(b)(6) deposition, the answers he gave, because the

22   common set of facts that he discussed apply equally in

23   Alaska.

24       Q.   And so there are no unique facts specific to

25   Alaska that support Alaska's claims in the -- as alleged

Page 45

1    in the fourth amended complaint?

2        A.    Yeah.    No facts that we're relying on that are

3    specific only to Alaska.

4        Q.    I'm going to now turn to the types of claims

5    that are brought by the State of Alaska in the fourth

6    amended complaint.

7                  For its federal antitrust claim, is Alaska

8    proceeding as parens patriae?  And I apologize if I am

9    butchering that.

10       A.    Yeah.  We are proceeding as we are permitted to

11   under federal law.  But, generally speaking, yes, we are

12   acting in our parens capacity, you know, on behalf of

13   our citizens.

14       Q.    So on behalf of the citizens of Alaska?

15       A.    Right, right.  And when I say that, what I mean

16   is, you know, our legislature has invested [as spoken]

17   the Attorney General's Office with the authority to

18   enforce our consumer protections and/or antitrust laws.

19                  So we are acting pursuant to that

20   authority.  And our legislature granted the AG's office

21   that authority in order to protect the interests of

22   Alaskan citizens.  And then we're permitted under

23   federal statute to sort of include or enforce certain

24   federal claims.

25       Q.    And for the federal antitrust claim Alaska is

Page 64

 1    between 1,000 and $25,000 for each violation.

 2    Violations, you know -- so it's the same answer as I

 3    just gave with respect to our antitrust statute in this

 4    way.

 5              You know, the factual basis for

 6    calculating a violation has been described in

 7    allegations contained in their complaint and, you know,

 8    relevant responses and in the States' omnibus objections

 9    and responses to interrogatory questions and then

10    Mr. Gordon's testimony which we designated him to

11    testify about common facts.

12        Q.    Are there any Alaska-specific facts that Alaska

13    intends to base its civil penalties under state DTPA law

14    on?

15        A.    Right, Alaska specific.  As I understand that

16    question, I hear you asking me is there something we're

17    going to allege that doesn't exist anywhere else, a fact

18    that exists only in Alaska that supports a violation or,

19    you know, an assertion that this is a violation.  The

20    answer to that question is no.

21        Q.    Okay.  And for the antitrust laws and the

22    maximum penalty under -- excuse me, maximum civil

23    penalties, there's no state -- Alaska-specific facts

24    that underlie that relief.  Is that right?

25        A.    Like unique only to Alaska, we are not

Page 78

1    third parties in Alaska interviewed?

2        A.    I am not aware of any third parties being

3    interviewed up here in Alaska.

4        Q.    Can you identify any in-state Alaska publisher

5    that was harmed by the alleged conduct in the complaint?

6        A.    That is not -- can I identify any -- I need to

7    make sure I heard that because you did cut out there a

8    second.

9        Q.    I'm happy to repeat it.

10        A.    Thank you.

11        Q.    Can you identify any in-state Alaska publisher

12    that was harmed by the conduct alleged in the complaint?

13        A.    No.

14        Q.    Can you identify any in-state Alaska advertiser

15    that was harmed by the conduct alleged in the complaint?

16        A.    No.

17        Q.    Can you identify any in-state Ad Tech

18    competitor that was harmed by the conduct alleged in the

19    complaint?

20        A.    No.   And, again, with respect to the previous

21    two questions and this one, it's not something we looked

22    for.

23                    MS. LEONARD:   That is all that I have, and

24    I reserve my time.

25                    MR. ENGELBECK:   Well, then maybe we'll

Page 82

```
 1              IN THE UNITED STATES DISTRICT COURT
                FOR THE EASTERN DISTRICT OF TEXAS
 2                       SHERMAN DIVISION
 3     THE STATE OF TEXAS,        )
       et al.,                    )
 4                                )
           Plaintiffs,            )
 5                                )
       vs.                        )  CASE NO. 4:20-cv-00957-SD
 6                                )
       GOOGLE LLC,                )
 7                                )
           Defendant.            )
 8
 9                    REPORTER'S CERTIFICATE
10             ORAL DEPOSITION OF JEFF PICKETT
11                      May 3, 2024
12
13        I, Melinda Barre, Certified Shorthand Reporter in
14     and for the State of Texas, hereby certify to the
15     following:
16        That the witness, JEFF PICKETT, was duly sworn by
17     the officer and that the transcript of the oral
18     deposition is a true record of the testimony given by
19     the witness;
20        That the original deposition was delivered to
21     Claire Leonard.
22        That a copy of this certificate was served on all
23     parties and/or the witness shown herein
24     on May 6, 2024.
25        I further certify that pursuant to FRCP Rule
```

Page 83

1   30(f)(1), that the signature of the deponent:

2        ____ was requested by the deponent or a party before

3   the completion of the deposition and that the signature is

4   to be before any notary public and returned within 30 days

5   from date of receipt of the transcript.  If returned,

6   the attached Changes and Signature Page contains any

7   changes and the reasons therefor:

8        ____was not requested by the deponent or a

9   party before the completion of the deposition.

10       I further certify that I am neither counsel for,

11  related to, nor employed by any of the parties or

12  attorneys in the action in which this proceeding was

13  taken, and further that I am not financially or

14  otherwise interested in the outcome of the action.

15       Certified to by me on this, the 6th day

16  of May, 2024.

17

18

19

20

21                        Melinda Barre

                          Texas CSR 2192

22                        Expiration:  12/31/25

23

24

25

Page 84

1    COUNTY OF HARRIS      )

2    STATE OF TEXAS        )

3        I hereby certify that the witness was notified on

4    May 6, 2024 that the witness has 30 days or (____

5    days per agreement of counsel) after being notified by

6    the officer that the transcript is available for review

7    by the witness and if there are changes in the form or

8    substance to be made, then the witness shall sign a

9    statement reciting such changes and the reasons given by

10   the witness for making them;

11       That the witness' signature was/was not returned as

12   of June 5, 2024.

13       Subscribed and sworn to on this, the _____ day of

14   _____, 2024.

15

16

17

18

19

20                    Melinda Barre

                      Texas CSR 2192

21                    Expiration:  12/31/25

22

23

24

25