# EXHIBIT 190

HIGHLY CONFIDENTIAL

Page 1

```
 1            IN THE UNITED STATES DISTRICT COURT
 2             FOR THE EASTERN DISTRICT OF TEXAS
 3                       SHERMAN DIVISION
 4
 5   THE STATE OF TEXAS, et al.,  )
                                  )
 6                   Plaintiffs,  )
                                  )
 7        v.                      ) CIVIL ACTION
                                  ) NO. 4:20-cv-00957-SDJ
 8   GOOGLE LLC,                  )
                                  )
 9                   Defendant.   )
     _____)
10
11
12
13
14                    HIGHLY CONFIDENTIAL
15          VIDEOTAPED VIDEOCONFERENCE DEPOSITION OF
16     LUCAS TUCKER, SENIOR ASSISTANT ATTORNEY GENERAL
17                    LAS VEGAS, NEVADA
18                 MONDAY, APRIL 29, 2024
19
20
21     Kele R. Smith, NV CCR No. 672, CA CSR No. 13405
22                   Job No. 6657786
23
24
25     Job No. CS6657786
```

Page 83

1   agencies that received subpoenas, whatever they decided
2   to produce.  We had no role in that process.
3       Q.  So do you still have Exhibit 4 in front of you?
4       A.  I do.
5       Q.  Would you please turn to Page 12?  It shows
6   Google's Interrogatory No. 4.  Do you see that?
7       A.  Yes.
8       Q.  And Google's Interrogatory No. 4 asks plaintiff,
9   including the State of Nevada, to identify all injured
10  persons or categories of person on whose behalf they as
11  parens patriae seek monetary relief, including civil
12  penalties, in this action.  Correct?
13      A.  Yes, I see that.
14      Q.  Moving to the bottom of Page 13 and continuing on
15  the top of Page 14 of Exhibit 4, the plaintiffs,
16  including Nevada, "...seek to recover civil penalties as
17  parens patriae for harm to the general welfare and
18  economy of each state caused by injuries to publishers
19  and advertisers that have been deprived of improved
20  quality, increased transparency, further innovation, and
21  lower prices due to Google's anticompetitive conduct."
22  Correct?
23      A.  That's correct.
24      Q.  Let's focus first on publishers.  Do you have any
25  estimate as to how many publishers in Nevada used

HIGHLY CONFIDENTIAL

Page 84

```
1    Google's ad tech products?
2        A.   Do I have an estimate?
3        Q.   Correct.
4        A.   Today, I do not.  I think that will be something
5    that we'll rely on expert testimony for.
6        Q.   How would you go about measuring the injuries to
7    in-state publishers as alleged in this statement in
8    Exhibit 4?
9        A.   Well, again, I think methodology is something
10   that we'll rely on the expert for.
11       Q.   So you don't have a methodology sitting here
12   today for measuring the injuries to in-state publishers
13   as alleged in this statement in Exhibit 4.  Correct?
14            MR. HENTHORN:  Objection.  Form.
15       A.   Umm, I think any methodology that we may have
16   today would be protected by the work product doctrine.
17   Ultimately, we will be relying on the methodology chosen
18   by the expert.
19   BY MR. ZHANG:
20       Q.   Can you name -- can you name just one in-state
21   publishers on whose behalf the State of Nevada is
22   seeking civil penalties for its antitrust claims in this
23   case?
24       A.   Well, I believe some publishers have been
25   identified in one of the responses to one of the
```

Page 85

1   interrogatories, but I'm not aware of where each of them
2   is headquartered or each of them has its domicile state
3   of business, so I can't say whether or not -- I can't
4   tell you specifically a Nevada-based publisher, but I
5   expect the documents that we received from Google may
6   have that information.
7       Q.  If they may have information, are you
8   speculating?
9       A.  Again, I can't speak specifically to a particular
10  document, but I know Google has produced millions of
11  documents.
12      Q.  Are you aware of any factual basis that any
13  specific in-state publishers was injured by Google's
14  alleged anticompetitive conduct in this case?
15      A.  I'm sorry.  Can you restate the question, please?
16      Q.  Are you aware of any specific factual basis that
17  any specific in-state publisher was injured by Google's
18  alleged anticompetitive conduct in this case?
19      A.  I don't have a specific document or statement to
20  direct you to today, but we would rely on the facts that
21  were gathered during the multistate investigation, the
22  testimony of Mr. Gordon, and the ongoing discovery of
23  both Google and third parties.
24      Q.  Did you conduct any independent investigation on
25  any in-state publishers in connection with this case?

Page 91

1  BY MR. ZHANG:
2     Q.  Outside of the work you did for this case, you
3  don't have any estimate of how many advertisers there
4  are in Nevada who use the Google ad tech products?
5         MR. HENTHORN:  Same objection.
6     A.  Well, at least with regards to the alleged
7  conduct in this case, that would be correct.
8  BY MR. ZHANG:
9     Q.  Can you name just one in-state advertiser on
10 whose behalf the State of Nevada is seeking civil
11 penalties for its antitrust claims in this case?
12    A.  I cannot identify a specific advertiser located
13 in Nevada.
14    Q.  Are you aware of any factual -- strike that.
15        Is it your testimony that you cannot identify a
16 specific advertiser located in Nevada on whose behalf
17 the State of Nevada is seeking civil penalties for its
18 antitrust claims in this case?
19        MR. HENTHORN:  Objection.  Form.
20    A.  Well, I can't name for you a specific advertiser
21 in Nevada, but again, we are relying on the facts from
22 the multistate investigation, facts from Google and
23 third parties in ongoing discovery, and the factual
24 testimony of Mr. Gordon.
25 ///

Page 201

1  BY MR. ZHANG:
2     Q.  But sitting here now, you're not aware of any
3  Nevada-specific facts underlying the Fourth Amended
4  Complaint in this case.  Correct?
5        MR. HENTHORN:  Objection.  Form.  Asked and
6  answered.
7     A.  You know, I'm going refer to, you know, the
8  common facts as described by Mr. Gordon for the State of
9  Texas, and again, it is a national market and we're not
10 aware of anything that differentiates the harm in Nevada
11 from the harm across the nation.
12 BY MR. ZHANG:
13    Q.  Did Nevada AGO put in place any document hold in
14 connection with this case?
15       MR. HENTHORN:  Objection.  Form.
16    A.  Did we put into place document holds?  Is that
17 what you asked?
18 BY MR. ZHANG:
19    Q.  Do you know what is a document hold or do you
20 prefer to call it a litigation hold?
21    A.  Okay.  Litigation hold, basically I know it's to
22 preserve documents.  No, we did not.
23    Q.  So Nevada AGO didn't put in place any litigation
24 hold in connection with this case.  Correct?
25    A.  That's correct.

Page 205

1     CERTIFICATE OF REPORTER

2  STATE OF NEVADA     )
                      ) ss:
3  COUNTY OF CLARK    )

4         I, KELE R. SMITH, a Certified Court Reporter in
5  Clark County, State of Nevada, do hereby certify:  That
6  I reported the taking of the deposition of LUCAS TUCKER,
7  SENIOR ASSISTANT ATTORNEY GENERAL, commencing on Monday,
8  April 29, 2024, at 8:32 a.m.
9         That prior to being deposed, the witness was by
10 me duly sworn to testify to the truth, that I thereafter
11 transcribed my said shorthand notes into typewriting, and
12 that the typewritten transcript is a complete, true, and
13 accurate transcription of said shorthand notes and that
14 the witness was asked to review and correct the
15 transcript.
16        I further certify that I am not a relative or
17 employee of counsel of any of the parties, nor a
18 relative or employee of the parties involved in said
19 action, nor a person financially interested in the
20 action.
21        IN WITNESS WHEREOF, I have set my hand in my
22 office in the County of Clark, State of Nevada, this
23 30th day of April, 2024.
24
25        KELE R. SMITH, NV CCR #672, CA CSR #13405

1                          ERRATA SHEET
2
3    I declare under penalty of perjury that I have read the
4    foregoing 204 pages of my testimony, taken on Monday,
5    April 29, 2024, from Las Vegas, Nevada, and that the
6    same is a true record of the testimony given by me at
7    the time and place herein above set forth, with the
8    following exceptions:
9    PAGE  LINE   SHOULD READ                REASON FOR CHANGE

| PAGE | LINE | SHOULD READ | REASON FOR CHANGE |
|---|---|---|---|
| 10 | 1 | "NHS" should read "antitrust" | correction |
| 20 | 7 | "had" should be "have" | typo |
| 28 | 13 | "potential" should be "retention" | correction |
| 60 | 2 | "agree" should be "refer" | correction |
| 74 | 7 | "out" should be "outside" | typo |
| 82 | 21 | "states" should be "state agencies" | correction |
| 111 | 18 | "ROPs" should be "RFPs" | correction |

Job No. CS6657786

HIGHLY CONFIDENTIAL

Page 207

| | PAGE LINE | SHOULD READ | REASON FOR CHANGE |
|---|---|---|---|
| 1 | | | |
| 2 | | | |
| 3 | | | |
| 4 | | | |
| 5 | | | |
| 6 | | | |
| 7 | | | |
| 8 | | | |
| 9 | | | |
| 10 | | | |
| 11 | | | |
| 12 | | | |
| 13 | | | |
| 14 | | | |
| 15 | | | |
| 16 | \* \* \* \* \* | | |

17

18  DATE: May 7, 2024          _____
                                SIGNATURE OF WITNESS

19
                               Lucas J. Tucker
20                              NAME TYPED OR PRINTED

21
22
23
24
25  Job No. CS6657786

Veritext Legal Solutions
800-567-8658                                      973-410-4098