# EXHIBIT 192

```
                                                          Page 1

 1              UNITED STATES DISTRICT COURT
                 EASTERN DISTRICT OF TEXAS
 2                   SHERMAN DIVISION
 3
        STATE OF TEXAS, et al.,
 4
                Plaintiffs,       Civil Action No.
 5                                4:20-cv-00957-SDJ
           v.
 6
        GOOGLE LLC,
 7
                Defendant.
 8
 9      * * * * * * * * * * * * * * * * * * * * * * * * *
10         TRANSCRIPT OF THE VIDEOTAPED 30(B)(6) DEPOSITION:
11                    STATE OF LOUISIANA
12                    By and through:
13               PATRICK MICHAEL VOELKER
14
15                 Friday, May 3, 2024
                     9:22 a.m. (CST)
16
17
18
19
20
21
22
        Reported by:
23
           YOLANDA J. PENA, Certified
24         Court Reporter No. 2017002
           in and for the State of
25         Louisiana
        Job No. CS6670337
```

Page 37

1    A.   Well, I guess first point there would be it --
2    to my understanding, I believe the discovery deadline
3    did get pushed a couple of weeks. But as I sit here
4    today, no, I'm not aware of Louisiana having any
5    forthcoming productions beyond what was, I guess, given
6    to you this morning.
7    BY MS. BAYOUMI:
8         Q.   So that's not entirely correct. The fact
9    discovery deadline is still today for all, you know,
10   document productions.
11              MR. ELLIS:   Okay. He's here to answer
12         questions, not argue about discovery.
13             MS. BAYOUMI:   I just want to make sure
14         the record is accurate.
15             MR. ELLIS:   Understood.
16   BY MS. BAYOUMI:
17        Q.   Is Louisiana aware of any facts that are
18   unique to Louisiana in forming the basis of any of its
19   claims in the fourth amended complaint?
20             MR. ELLIS:   Objection; form.
21        A.   Yeah, sure. I think the investigation, as I
22   mentioned earlier, is indicative of and represents a
23   national pervasive harm that has harmed, you know, the
24   citizens of the United States, therefore the citizens
25   of Louisiana as well, and that is, you know, the basis

Page 38

1      of Louisiana's facts.  And beyond that, I believe
2      Louisiana has designated Texas to testify as to the
3      direct facts alleged in the fourth amended complaint.
4      BY MS. BAYOUMI:
5          Q.   So your testimony is that Louisiana does not
6      have any facts unique to Louisiana other than those
7      that are common to the citizens of the United States
8      based on the investigation conducted by Texas; is that
9      right?
10              MR. ELLIS:  Object to form.
11         A.   I don't know if I'd word it in that manner.  I
12     think the response I just gave is the way in which I
13     would respond to that question.
14     BY MS. BAYOUMI:
15         Q.   Is Louisiana relying on any facts that are
16     unique to Louisiana to support its claim in the fourth
17     amended complaint?
18              MR. ELLIS:  Object to form.
19         A.   Yeah, could you repeat that again, if you
20     don't mind?
21     BY MS. BAYOUMI:
22         Q.   Sure.  Is Louisiana relying on any facts that
23     are unique to Louisiana to support its claims in the
24     fourth amended complaint?
25         A.   Sure --

Page 39

1           MR. ELLIS:  Same objection.
2           THE WITNESS:  Sorry about that.
3      A.   I think the, you know, factual basis of the
4   complaint as well has been designated that the State of
5   Texas would testify to.  I believe that if there is
6   not -- I'm sorry.  Let me rephrase that.
7           Is that, you know, Texas had been designated
8   to testify on those facts in the fourth amended
9   complaint, and further, you know, discoveries ensuing.
10  Louisiana has got expert reports that would, you know,
11  further reveal those facts that we have.
12  BY MS. BAYOUMI:
13     Q.   What do you mean by "further reveal those
14  facts" that you have?
15          Are those facts that have not been produced or
16  made aware to Google to this date?
17     A.   No.  Apologies.  That would have been a
18  misword there.  I think "establish" would have been a
19  better choice of vocabulary.  Apologies.
20     Q.   Does Louisiana have any independent factual
21  basis for its deceptive trade practice claims?
22     A.   I think the answer would be much the same,
23  would be relying on the multistate investigation that
24  ensued and the testimony of Texas, of which Louisiana
25  has designated them to testify to the facts in the

Page 40

1     complaint.
2         Q.   So as you sit here today as the corporate
3     representative for the State of Louisiana, you're
4     unaware of any unique facts to Louisiana; is that
5     correct?
6              MR. ELLIS:   Objection; form.
7         A.   I guess as I sit here today, I'm unaware of
8     anything beyond what I just mentioned and had referred
9     to in response to a couple of your questions.
10    BY MS. BAYOUMI:
11        Q.   What actions did Louisiana take to comply with
12    its discovery obligations?
13              MR. ELLIS:   Objection; form.
14        A.   It has, you know, to my knowledge and
15    understanding, produced that which would have been
16    responsive to y'all's request in a timely manner within
17    the deadline that has been set in this case.
18    BY MS. BAYOUMI:
19        Q.   Did Louisiana institute a document hold notice
20    related to the litigation?
21        A.   Not that I'm aware of.  However, if this is
22    worth any, you know, quantifying here, I was not the
23    original attorney that signed onto this case.  I had
24    come on in a later capacity.
25        Q.   Who was the original attorney?

Page 64

1    publishers use Google ad tech products in Louisiana?
2             MR. ELLIS:  Objection; form.
3         A.  It is not aware as I sit here currently.
4    BY MS. BAYOUMI:
5         Q.  And has Google's alleged conduct harmed
6    publishers in Louisiana?
7         A.  It has.
8         Q.  What is the factual basis for that?
9         A.  I believe it's as mentioned previously, to be
10   testified by Texas on Louisiana's behalf as designated
11   and will further be forthcoming in quantifiable
12   measures by the expert report.
13        Q.  But Louisiana is not aware of any
14   state-specific factual basis for its allegations that
15   Google harmed publishers in Louisiana, right?
16        A.  I think the way I would answer that is as just
17   laid out.  I think the way I worded is the state of
18   affairs for Louisiana.
19        Q.  I don't think that was an answer to my
20   question.
21        A.  Yeah, sorry.  Could you repeat it, then?
22        Q.  Sure.  Louisiana is not aware of any
23   state-specific factual basis for its allegations that
24   Google harmed publishers in Louisiana, right?
25             MR. ELLIS:  Objection; form.

Page 65

1  A. It is the, you know, fact that the
2  investigation revealed a nationwide harm. It is in
3  that sense specific to Louisiana, yes. Louisiana has
4  been harmed just as much any other state, as revealed
5  through the investigation.
6  BY MS. BAYOUMI:
7  Q. And that's the common factual basis that Texas
8  is testifying on; is that right?
9  A. That is correct.
10 Q. And Louisiana is not aware of any
11 state-specific factual basis for its allegations that
12 Google harmed advertisers in Louisiana; is that right?
13 MR. ELLIS: Objection; form.
14 A. It would be the same answer. You know, the
15 designated facts that Texas has been set to testify on.
16 BY MS. BAYOUMI:
17 Q. What is Louisiana's understanding of how many
18 ad tech providers are located in Louisiana?
19 MR. ELLIS: Objection; form, asked and
20 answered.
21 A. As I sit here today currently, no quantifiable
22 understanding that I could give you a number on.
23 BY MS. BAYOUMI:
24 Q. How did Louisiana determine that there was
25 harm to in-state ad tech providers?

Page 74

```
 1      what has been laid out in Louisiana's sworn-to response
 2      to Interrogatory No. 5.
 3      BY MS. BAYOUMI:
 4           Q.   What's your understanding of display
 5      advertising?
 6           A.   Not all that much.
 7           Q.   What -- what do you understand about display
 8      advertising?
 9           A.   It is --
10                MR. ELLIS:  Objection; form.
11                THE WITNESS:  Sorry, apologies.
12           A.   I think Louisiana's understanding of it is as
13      laid out in that response to Interrogatory No. 5, and
14      there's not much that I could personally add to that
15      response sitting here today.
16      BY MS. BAYOUMI:
17           Q.   And what is your understanding of advertising
18      technology?
19                MR. ELLIS:  Objection; form.
20           A.   Much the same response: Very rudimentary
21      understanding personally, Louisiana's understanding
22      being laid out in the response to Interrogatory No. 5,
23      and I wouldn't have anything to add beyond that today.
24      BY MS. BAYOUMI:
25           Q.   Louisiana uses advertising agencies for
```

Page 75

1      digital advertising; is that right?
2           A.   It has, yes.
3           Q.   Does Louisiana also use ad agencies for
4      nondigital advertising?
5           A.   Not that I'm aware of, currently.  I -- you
6      know, from having familiarized myself with this
7      information, I could guess that they do, but that would
8      be simply that, a guess.
9           Q.   Which ad agencies does Louisiana work with?
10               MR. ELLIS:  Objection; form.
11          A.   Yeah.  So from my knowledge and preparation
12     for this deposition, there was Feigley and an Audience
13     Partners/a4.  I believe those are now or are the same
14     entity.
15     BY MS. BAYOUMI:
16          Q.   You mean Audience Partners and a4 are now the
17     same entity?
18          A.   That's my understanding, yeah.
19          Q.   Are there any others that you're aware of?
20          A.   Not that I'm aware of.
21          Q.   Do you know whether Louisiana state agencies
22     also work with these same ad agencies?
23               MR. ELLIS:  Objection; form, scope.
24          A.   Yeah, I'm not aware of the actions of any
25     other agencies and their advertising behavior.

Page 76

```
 1    BY MS. BAYOUMI:
 2         Q.   And does Louisiana use these ad agencies to
 3    purchase display advertising?
 4         A.   It has.
 5         Q.   For which campaigns?
 6         A.   I believe Feigley, "Feigley" -- however you
 7    care to pronounce that -- ran the Gaming campaign, and
 8    the Audience/a4 was in regards to the Fair Housing
 9    campaigns, which there were two, 2018 and 2020.
10         Q.   So apart from those three campaigns, are you
11    aware of any other digital advertising campaigns run by
12    Louisiana?
13         A.   Not that I'm aware of.
14         Q.   Has Louisiana purchased display advertising
15    without the use of an ad agency?
16              MR. ELLIS:  Objection; form.
17         A.   Not that I'm aware of.
18    BY MS. BAYOUMI:
19         Q.   What role does an ad agency play for
20    Louisiana's ad campaigns?
21         A.   I guess the entirety of the role.  They are
22    relied upon and hired for their expertise and knowledge
23    of getting the advertisement out in a manner that is
24    effective, you know, relying on their expertise.
25         Q.   So the ad agency would plan any marketing
```

Page 77

1      campaigns; is that right?
2                      MR. ELLIS:  Objection; form.
3           A.    That would be a bit of speculation on my end.
4      They are, you know, hired for their expertise in that
5      field and their ability to facilitate the advertising
6      in the digital space.
7      BY MS. BAYOUMI:
8           Q.    Would you agree that ad agency executes
9      Louisiana's marketing campaigns?
10          A.    Sure.
11          Q.    And does the ad agency measure the
12     effectiveness of Louisiana's campaigns?
13                     MR. ELLIS:  Objection; form.
14          A.    I believe so.
15     BY MS. BAYOUMI:
16          Q.    And the ad agency makes all strategic
17     decisions on behalf of Louisiana -- Louisiana's
18     marketing campaigns; is that right?
19          A.    I don't know if it would be fair to say that
20     they make all of them.  My understanding is that the
21     communications director from the Department of Justice
22     is the person by which that is facilitated, and there
23     in conversation during the course of these campaigns.
24          Q.    And who is the communications director?
25          A.    At that time -- he is no longer with the

Page 78

```
 1      office, but during the campaigns 2018, 2020, 2022, it
 2      would have been Millard Mule, which is M-u-l-e.
 3            Q.    And who succeeded his position?
 4            A.    I'm not sure, honestly.
 5            Q.    And do you know what the duties of the
 6      communications director are?
 7            A.    I don't.
 8            Q.    And the ad agency that Louisiana works with
 9      for its ad campaigns would decide which ad tech
10      products to use for a particular campaign; is that
11      right?
12                  MR. ELLIS:  Objection; form.
13            A.    Just to make sure I understand you, is the
14      question whether the ad agency is the one who
15      determines the way in which the ads are displayed?  Or
16      I guess could you just repeat it?
17      BY MS. BAYOUMI:
18            Q.    Sure.
19            A.    Sorry, I didn't mean to spit that back at you.
20            Q.    Sure.  So is it the ad agency that decides
21      which ad tech products to use for Louisiana's
22      advertising campaigns?
23            A.    Yeah, that's my understanding.  Yes.
24            Q.    And how does Louisiana decide which ad agency
25      to work with for a particular campaign?
```

```
                                                         Page 141

 1      The State Of Texas, Et Al. v. Google LLC
 2      Patrick Voelker (#6670337)
 3                     E R R A T A   S H E E T
 4      PAGE_____ LINE_____ CHANGE_____
 5      _____
 6      REASON_____
 7      PAGE_____ LINE_____ CHANGE_____
 8      _____
 9      REASON_____
10      PAGE_____ LINE_____ CHANGE_____
11      _____
12      REASON_____
13      PAGE_____ LINE_____ CHANGE_____
14      _____
15      REASON_____
16      PAGE_____ LINE_____ CHANGE_____
17      _____
18      REASON_____
19      PAGE_____ LINE_____ CHANGE_____
20      _____
21      REASON_____
22
23      _____[signature]_____           May 29, 2024
24      Patrick Voelker                          Date
25
```

Page 142

1  The State Of Texas, Et Al. v. Google LLC
2  Patrick Voelker (#6670337)
3              ACKNOWLEDGEMENT OF DEPONENT
4     I, Patrick Voelker, do hereby declare that I
5  have read the foregoing transcript, I have made any
6  corrections, additions, or changes I deemed necessary as
7  noted above to be appended hereto, and that the same is
8  a true, correct and complete transcript of the testimony
9  given by me.
10
11  _____          May 29, 2024
12  Patrick Voelker                        Date
13  *If notary is required
14                         SUBSCRIBED AND SWORN TO BEFORE ME THIS
15                         29th DAY OF May_____, 2024.
16
17
18                         Mary S. Adams #40703
19                             NOTARY PUBLIC
20
21
22
23
24
25