# EXHIBIT 6

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COLLEEN GALLAGHER, ILANA FARAR, ANDREA LOPEZ, JOANN CORDARO, and ROSANNE COSGROVE, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>BAYER AG, BAYER CORPORAITION, and BAYER HEALTHCARE LLC,<br><br>Defendants. | CASE NO. 3:14-cv-04601-WHO |

**EXPERT REPORT OF NANCY MATHIOWETZ, PH.D.**

**I.    INTRODUCTION**

1.    I am Professor Emerita, Department of Sociology at the University of Wisconsin-Milwaukee (UWM).  Prior to joining the faculty at UWM in 2003, I was Associate Professor, Joint Program in Survey Methodology, University of Maryland and University of Michigan.  My research focuses on various aspects of survey methodology, including, but not limited to, the effects of mode and methods of data collection, question and questionnaire design, response error, and means to assess and reduce various sources of error in the survey process.  I have taught courses on survey methodology, questionnaire design, and advanced statistical methods, and I have offered short courses on questionnaire design to various audiences.  I have testified as an expert on survey research methodology in federal and state court cases.

1

Case 4:20-cv-00957-SDJ   Document 725-7   Filed 12/16/24   Page 3 of 6 PageID #: 46785
Case 3:14-cv-04601-WHO   Document 252-2   Filed 12/31/18   Page 4 of 74
CONFIDENTIAL

that class members would not have purchased One A Day products but-for the challenged representations.

7. In light of plaintiffs' restitution claim, one empirical research question of interest is whether consumers would continue to purchase the named products in light of information that informs them of the lack of benefit related to heart health, immunity, and energy. It is not plausible to conclude that consumers who would continue to purchase One A Day products despite such information would not have purchased the named products absent the specific health claims at issue.

8. In addition, the Court's Trial Plan Order indicates that consumers "who were prescribed vitamins or otherwise took supplements because of a diagnosed nutrition deficiency" will not be entitled to damages. See Civil Minutes of Case Management Conference, filed 04/17/18 at 2-3. As a result, a second empirical research question of interest is the extent to which consumers took a multivitamin on the advice of a health professional.

9. In light of these research questions, I designed an empirical study to determine (1) whether One A Day consumers would continue to purchase the named products in light of a disclaimer as to any health benefits related to heart health, immunity, and energy; and (2) the extent to which One A Day consumers take such products on the advice of health professionals. The study I designed was administered to members of the AmeriSpeak panel, a probability-based panel designed to represent the U.S. household

3

Case 4:20-cv-00957-SDJ Document 725-7 Filed 12/16/24 Page 4 of 6 PageID #: 46786
Case 3:14-cv-04601-WHO Document 252-2 Filed 12/31/18 Page 5 of 74
CONFIDENTIAL

population. Data were collected from 469 panelists[2] who identified purchasing a named product during the 12-month period prior to the interview date. Interviews were conducted only among adults ages 18 and older who were currently not residing in California, Florida, or New York. Defense counsel asked me to exclude class members in light of the legal restrictions on the ability of defendants to communicate with plaintiffs who are represented by counsel.

10. Overall, the study finds that the majority of individuals (56.6%)[3] who take a named product would continue to do so, even after being told that the product does not provide additional support for heart health, immunity, or physical energy for individuals who are otherwise healthy and eat a balanced diet. An additional 15.9% are unsure as to whether or not they would continue to purchase the product. Stated differently, 27.5% indicate that they would no longer continue to purchase the product when told that the product does not provide additional support for heart health, immunity, or physical energy for individuals who are otherwise healthy and eat a balanced diet. Among those taking one of the named products, 31.7% indicate that they take a multivitamin at the recommendation of a health professional. Looking at these two questions jointly, 69.0% of individuals who take a named product (1) would continue to purchase the product, even after being told that the product does not provide additional support for heart health, immunity, or physical energy for an otherwise healthy person who eats a balanced diet;

---

[2] One respondent did not answer any of the substantive questions in the main section of the survey. The analysis addresses responses from the 468 respondents who provided substantive data.

[3] All estimates provided in this report are weighted, and standard errors account for the sample design, which includes stratification. Section II sets out the details of the study methodology and the appropriate estimation strategy.

4

Case 4:20-cv-00957-SDJ    Document 725-7    Filed 12/16/24    Page 5 of 6 PageID #:
46787
Case 3:14-cv-04601-WHO    Document 252-2    Filed 12/31/18    Page 9 of 74
CONFIDENTIAL

21. Consumers whose only purchases were made on behalf of another person were excluded from the study; that is, only those individuals who purchased the product(s) for him or herself were eligible to proceed to the main study questions. For this reason, and because only adults ages 18 and older were included in the study, One A Day Teen Advantage for Her and One A Day Teen Advantage for Him were not included among the list of products of interest.

22. There does not appear to be any reason to believe that the opinions of the class members would differ from the opinions expressed by survey respondents with respect to the substantive questions asked in the survey. Both groups consist of purchasers of the One A Day products identified in the SACAC, and all were exposed to the labels that included the three claims that plaintiffs assert are false or misleading.

23. The main section of the questionnaire included only three questions: (1) a question about the place of purchase(s); (2) a question concerning intent to purchase in light of information that the purchased product provided no additional support for heart health, immunity, or physical energy; and (3) a question concerning whether a health professional had ever recommended that the respondent take a multivitamin. The specific question wording can be found in Appendix B.

24. On July 16, 2018, a pilot study was launched, and 4,000 panelists were invited to participate. The goals of the pilot study were threefold: (1) determine the usability of the online survey; (2) determine a rough estimate of the eligibility rate, that is, the rate among panelists of having purchased a named product; and (3) determine if respondents had difficulty understanding any of the questions. A total of 555 of the 4,000 invitees

8

42.     Taking together consumers who would continue to purchase the products and those taking multivitamins at the recommendation of a health professional, almost 70% of consumers would continue to purchase the One A Day product they have taken in the past year, even after being informed that the product does not provide any additional benefits with respect to heart health, immunity, or energy for an otherwise healthy person who eats a balanced diet and/or are taking a multivitamin in response to recommendations from a health professional.

43.     Including those who are unsure as to whether or not they would continue to purchase the specific One A Day product results in 79.5% (2.67%) who indicated that they (1) would continue to purchase the specific One A Day product for which they were questioned or were unsure as to whether they would continue to purchase the specific One A Day product for which they were questioned; and/or (2) were taking a multivitamin at the recommendation of a health professional.

_Nancy A. Mathiowetz_
Nancy A. Mathiowetz

13