# EXHIBIT 69
## REDACTED

```
                                                              Page 1

 1               IN THE UNITED STATES DISTRICT COURT

 2                    EASTERN DISTRICT OF TEXAS

 3                        SHERMAN DIVISION

 4

 5   THE STATE OF TEXAS, ET AL,

 6                Plaintiffs,

 7   vs.                         CIVIL NO. 4:20-CV-957-SDJ

 8   GOOGLE LLC,

 9                Defendants.

10   _____/

11

12

13                     HIGHLY CONFIDENTIAL

14       VIDEOTAPED DEPOSITION of ███████████████████

15                  Redwood City, California

16                      April 26, 2024

17                        9:24 a.m.

18

19

20

21   Job No. MDLG6661144

22

23   Stenographically reported by:

24   JENNY L. GRIFFIN, RMR, CSR, CRR, CCRR, CRC

25   CSR No. 3969
```

Page 2

1
2
3
4
5
6
7
8          Videotaped deposition of █████████████████████
9    taken on behalf of the Plaintiffs, at Freshfields
10   Bruckhaus Deringer, 855 Main Street, Redwood City,
11   California, on Friday, April 26, 2024, beginning at
12   9:24 a.m. and ending at 7:01 p.m., before
13   Jenny L. Griffin, a Certified Shorthand Reporter,
14   Registered Merit Reporter, Certified Realtime
15   Reporter, California Certified Realtime Reporter,
16   Certified Realtime Captioner.
17
18
19
20
21
22
23
24
25

HIGHLY CONFIDENTIAL

Page 3

```
 1              A P P E A R A N C E S:
 2
 3         NORTON ROSE FULBRIGHT US LLP
           Attorney for Plaintiff
 4         BY:  PETER M. HILLEGAS, ESQ.
           98 San Jacinto Boulevard, Suite 1100
 5         Austin, Texas 78701-4255
           512.474.5201
 6         peter.hillegas@nortonrosefulbright.com
 7         - and -
 8         NORTON ROSE FULBRIGHT US LLP.
           BY: JIANG WU, ESQ. (VIA ZOOM)
 9         1045 West Fulton Market, Suite 1200
           Chicago, Illinois 60607
10         312.964.7800
           jiang.wu@nortonrosefulbright.com
11
12         AXINN, VELTROP & HARKRIDER LLP
           Attorney for Defendant and the Witness
13         BY: DANIEL S. BITTON, ESQ.
           55 Second Street
14         San Francisco, California 94105
           415.490.2000
15         dbitton@axinn.com
16         - and -
17         AXINN, VELTROP & HARKRIDER LLP
           BY: BLAKE E. PESCATORE, ESQ.
18         114 West 47th Street
           New York, New York 10036
19         212.728.2200
           bpescatore@axinn.com
20
           - and -
21
           FRESHFIELDS BRUCKHAUS DERINGER
22         BY:  JUSTINA K. SESSIONS, ESQ.
           855 Main Street
23         Redwood City, California 94063
           650.461.8276
24         Justina.sessions@freshfields.com
25
```

```
                                                        Page 4
 1          A P P E A R A N C E S: (Continued)
 2                  Present on Zoom:
 3

 4    Zeke DeRose III:    Lanier Law Firm
 5    Melonie DeRose:     Lanier Law Firm
 6    Bao Cuong Pham:     Assistant Attorney General, Office
 7                        of the Texas Attorney General
 8    Jonathan Jaffe:     Retained Plaintiff Consultant
 9

10    VIDEOGRAPHER:       Miguel Concepcion, Golkow Litigation
11    TRIAL TECH:         Jim Lopez, Golkow Litigation
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

```
                                                      Page 9
 1                    P R O C E E D I N G S
 2                         ---oOo---
 3              THE VIDEOGRAPHER:  Good morning.  We are
 4    now on the record.
 5              My name is Miguel Concepcion.  I'm a
 6    videographer for Golkow Litigation Services.
 7              Today's date is April 26, 2024, and the
 8    time is 9:24 a.m. Pacific Time.
 9              This video deposition is being held in
10    Redwood City, California, in the matter of the State
11    of Texas, et al., versus Google LLC.
12              The deponent is ████████████████
13              All appearances will be noted on the
14    stenographic record.
15              The court reporter is Jenny Griffin and
16    will now swear in the witness.
17                            ---
18                  ████████████████████████
19    having been first duly sworn and/or affirmed by the
20    Certified Shorthand Reporter to tell the truth, the
21    whole truth, and nothing but the truth, testified as
22    follows:
23              THE VIDEOGRAPHER:  Counsel, you may
24    proceed.
25    ///
```

HIGHLY CONFIDENTIAL

```
                                                        Page 10

 1                        EXAMINATION
 2   BY MR. HILLEGAS:
 3       Q.   Good morning, Mr. ▮▮▮▮▮
 4            Will you please state your full name for
 5   the record.
 6       A.   ▮▮▮▮▮▮▮▮▮▮
 7       Q.   Where do you live?
 8       A.   I live in Sunnyvale, California.
 9       Q.   Do you work for Google?
10       A.   Yes, I do.
11       Q.   What is the address of the location where
12   you work for Google?
13       A.   I work in the Bay View Building,
14   Number 200.
15       Q.   What city is that in?
16       A.   Mountain View.
17       Q.   Mr. ▮▮▮▮▮   I understand you were deposed
18   yesterday; is that correct?
19       A.   That is correct.
20       Q.   Was that your first time being deposed?
21       A.   No, it was not.
22       Q.   How many times have you been deposed
23   before?
24       A.   Prior to yesterday, I have been deposed two
25   times.
```

```
 1             calculate prices based on the
 2             second-highest bid.  Buyers are 'best
 3             served' if they bid below their true
 4             value because the difference in value
 5             between winning first place and second
 6             place is very small."
 7             Do you see that, sir?
 8        A.   I see it.
 9        Q.   So do you agree that Google is famous for
10   implementing generalized second-price auctions?
11             MR. BITTON:  Objection to scope.
12             THE WITNESS:  I don't know if -- Google is
13   famous for lots of things.  And I don't know if I
14   would say it's famous for implementation of Google's
15   second-price auctions.
16   BY MR. HILLEGAS:
17        Q.   In the second-price auction, the winner
18   pays the bid of the second-highest bidder; right?
19             MR. BITTON:  Objection to scope and form.
20             THE WITNESS:  Again, like I said, I'm not
21   an expert in VCG and GSP auction mechanics.  That
22   goes to how the price or the cost allocation is done
23   to usually groups of ads.  It's sort of a separate
24   module from what I work on.
25   ///
```

Page 49

1   BY MR. HILLEGAS:
2       Q.   But you're familiar with what a generalized
3   second-price auction is; right?
4           MR. BITTON:  Objection to scope.
5           THE WITNESS:  Not very well.
6   BY MR. HILLEGAS:
7       Q.   So you don't know why bidders would be best
8   served by bidding below the true value, do you, sir?
9           MR. BITTON:  Objection to scope and form.
10          THE WITNESS:  The differences between GSP
11  and VCG is not my area of expertise.  Like I said,
12  that comes down to price allocation to block groups
13  of ads, and that's a different module from what I
14  worked on.
15  BY MR. HILLEGAS:
16      Q.   In 2013 what were you working on?
17          MR. BITTON:  Objection to scope.
18          THE WITNESS:  In 2013 I had started to work
19  on exchange bidding as part of this team called
20  gTrade.
21  BY MR. HILLEGAS:
22      Q.   What is gTrade?
23          MR. BITTON:  Objection to scope.
24          THE WITNESS:  GTrade was the name assigned
25  to some of the engineers working on projects, trying

Page 50

1    ==to figure out the best way to bid on exchanges on==
2    ==behalf of AdWords advertisers.==
3    BY MR. HILLEGAS:
4        Q.   What is exchange bidding?
5             MR. BITTON:  Objection to scope.
6             THE WITNESS:  What I'm referring to as
7    exchange bidding is how in this case AdWords should
8    generate a bid to be submitted to the exchange in
9    order to -- in order to win the ad impression to
10   generate the best advertiser value subject to other
11   constraints.
12   BY MR. HILLEGAS:
13       Q.   At the time many auctions were using
14   second-price bidding; right?
15            MR. BITTON:  Objection to scope.
16            THE WITNESS:  When you say "many auctions,"
17   are you referring to -- what are you referring to?
18   BY MR. HILLEGAS:
19       Q.   For example, AdX ran a second-price
20   exchange in 2013; correct?
21            MR. BITTON:  Objection to scope.
22            THE WITNESS:  Again, I'm not a sell-side
23   expert.  And someone on sell-side should talk about
24   the AdX options.  But it is my understanding that
25   AdX was running a second-price auction at that time.

Page 51

1  BY MR. HILLEGAS:
2      Q.   And you were trying to figure out the best
3  way to bid on exchanges like AdX on behalf of
4  AdWords advertisers; right?
5           MR. BITTON:  Objection to scope.
6           THE WITNESS:  Yes.  I was trying to figure
7  out the best way to bid on behalf of advertisers
8  maximizing value and bidding through Ad Exchange.
9  BY MR. HILLEGAS:
10     Q.   And you were doing this without knowledge
11 of what a second-price auction is; correct?
12          MR. BITTON:  Objection to scope and form.
13          THE WITNESS:  Can you elaborate, please?
14 BY MR. HILLEGAS:
15     Q.   If AdX is an exchange that you were
16 submitting bids to, and AdX ran a second-price
17 auction, you previously said that you didn't have
18 knowledge of what a second-price auction is;
19 correct?
20          MR. BITTON:  Objection to form and scope.
21          THE WITNESS:  No.  I did not say that.
22 BY MR. HILLEGAS:
23     Q.   So when I asked you what a generalized
24 second-price auction is, what is a generalized
25 second-price auction?

Page 170

1            MR. BITTON:  Objection to scope.
2            THE WITNESS:  This was a model built to
3    improve click-through rate predictions for AdWords
4    ads, buying on AdX traffic in this case.
5    BY MR. HILLEGAS:
6        Q.   And so when you say it improves run time,
7    you're referring to the run time to get something to
8    AdX then; right?
9            MR. BITTON:  Objection to scope and form.
10           THE WITNESS:  No.  This is referring to the
11   run time off the pipeline itself to come up with
12   those improved predictions.
13           MR. HILLEGAS:  I have a feeling that that
14   is a long question that we're going to have to get
15   into.  And since we've been going, I think, for now
16   an hour and 15 minutes, why don't we take a little
17   bit of a break and we'll come back to that later.
18           MR. BITTON:  Okay.
19           THE WITNESS:  Okay.
20           THE VIDEOGRAPHER:  Going off the record at
21   2:01 p.m.
22           (Recess taken.)
23           THE VIDEOGRAPHER:  We're back on the record
24   at 2:15 p.m.
25   ///

Page 171

```
 1    BY MR. HILLEGAS:
 2        Q.   Welcome back, Mr. [redacted]   I hear that
 3    we're about halfway through our deposition; so
 4    that's exciting -- or terrifying, depending on how
 5    you feel.
 6             We had briefly been discussing your
 7    consulting with the sell-side teams, if you recall.
 8        A.   Yes.
 9        Q.   Does Google formally organize employees
10    between buy-side and sell-side organizations?
11             MR. BITTON:  Objection to form and scope.
12             THE WITNESS:  There is a buy-side and
13    sell-side organization today leading up to two
14    different VPs.  Actually, three, if I factor in DV3.
15    BY MR. HILLEGAS:
16        Q.   Are the two teams typically segregated?
17             MR. BITTON:  Objection to scope and form.
18             THE WITNESS:  Segregated in what way?
19    BY MR. HILLEGAS:
20        Q.   Is there any sort of firewall between the
21    buy-side and sell-side teams?
22             MR. BITTON:  Objection to form and scope.
23             THE WITNESS:  As I said, buy-side team
24    optimizes on behalf of advertisers.  Sell-side teams
25    work with publishers.  And we interact on occasion
```

Page 172

1    ==to discuss potential impact to advertisers or==
2    ==publishers on launches.==
3    BY MR. HILLEGAS:
4        Q.   So there's no formal separation between the
5    teams; is that correct?
6             MR. BITTON:  Objection to form and scope.
7             THE WITNESS:  How do you -- what kind of
8    formal separation are you referring to?
9    BY MR. HILLEGAS:
10       Q.   There's nothing in place at Google that
11   would prevent buy-side teams from talking with
12   sell-side teams; right?
13            MR. BITTON:  Objection to scope.
14            THE WITNESS:  Again, like I said, buy-side
15   team and sell-side teams talk to each other if we
16   want to discuss the impact of launches.  My team has
17   talked to third-party exchanges to discuss impact of
18   launches.
19            That's how I would characterize the nature
20   of our interaction, but we have our own optimization
21   goals.
22   BY MR. HILLEGAS:
23       Q.   Buy-side engineers talk with sell-side
24   engineers as part of that; right?
25            MR. BITTON:  Objection to scope and form.

```
                                                         Page 173
 1              THE WITNESS:  I wouldn't say that is
 2     generally true.  I think there are a few buy-side
 3     engineers who have these types of discussions with a
 4     few sell-side engineers on an as-needed basis.
 5     BY MR. HILLEGAS:
 6          Q.   Such as yourself and Mr. ▇▇▇▇
 7              MR. BITTON:  Objection to form and scope.
 8              THE WITNESS:  Such as the conversations I
 9     have had with Mr. ▇▇▇▇ on impact of potential
10     launches on publishers or advertisers.
11     BY MR. HILLEGAS:
12          Q.   Do any of the buy-side engineers help the
13     sell-side engineers debug code?
14              MR. BITTON:  Objection to scope and form.
15              THE WITNESS:  I cannot answer that question
16     at this point, sitting here today.
17     BY MR. HILLEGAS:
18          Q.   It's possible, though?
19              MR. BITTON:  Objection to form and scope.
20              THE WITNESS:  I'm not sure if that's -- if
21     that happens or not.
22     BY MR. HILLEGAS:
23          Q.   Is it possible for sell-side engineers to
24     help buy-side engineers debug code?
25              MR. BITTON:  Objection to form and scope.
```

```
                                                         Page 359
 1                         ---oOo---

 2

 3         I, JENNY L. GRIFFIN, hereby certify:

 4         That I am a certified shorthand reporter in and

 5   for the County of Alameda, State of California;

 6         Prior to being examined, █████████████████

 7   the witness named in the foregoing deposition, was by

 8   me duly sworn to testify to the truth, the whole

 9   truth, and nothing but the truth; that said

10   deposition was taken pursuant to notice at the time

11   and place therein set forth, and was taken down by me

12   in stenotype and thereafter transcribed by means of

13   computer-aided transcription, and that said

14   deposition is a true record of the testimony given by

15   the witness.

16         I further certify that I am neither counsel for

17   nor related in any way to any party to said action,

18   nor otherwise interested in the outcome thereof.

19         In witness whereof, I have hereunto subscribed

20   my name April 29, 2024.

21

22
                           [signature: Jenny L. Griffin]
23

24                       JENNY L. GRIFFIN, CSR #3969

25                       Certified Shorthand Reporter
```