# EXHIBIT 75
# REDACTED

**HIGHLY CONFIDENTIAL**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| THE STATE OF TEXAS, et al.,  §<br>  §<br>   Plaintiffs,  §<br>  §<br>v.  §<br>  §<br>GOOGLE LLC,  §<br>  §<br>   Defendant.  § | Civil Action No. 4:20-CV-957-SDJ |

**DEFENDANT GOOGLE LLC'S FIRST AMENDED RESPONSES
AND OBJECTIONS TO
<u>PLAINTIFFS' THIRD SET OF INTERROGATORIES</u>**

Subject to and without waiving any of the foregoing objections, Google responds to Interrogatory 6 as follows:

**Open Bidding** launched as "Exchange Bidding in Dynamic Allocation" on or about February 12, 2018. Network Bidding subsequently launched on or about January 4, 2019.

**Real-Time Bidding & Open Auction** are not defined in the Interrogatories, but to the extent they refer to auctions in AdX in which bidders could submit bids in real-time (as opposed to static bids configured in advance of the auction), AdX has supported such auctions at least since its re-launch after Google's acquisition of DoubleClick, which was publicly announced on September 17, 2009.

**Dynamic Allocation** initially launched on or about July 11, 2007 and was subsequently re-launched along with the remainder of AdX after Google's acquisition of DoubleClick, which was publicly announced on September 17, 2009. Plaintiffs purport to define "First Look" and "Last Look" as separate "Google Auction Mechanics" as to which Interrogatory 6 seeks separate responses, but neither is a Google Auction Mechanic as defined in the Interrogatories. Specifically, to the extent "First Look" refers to the alleged functionality by which Dynamic Allocation purportedly evaluated bids from AdX buyers prior to calling third-party exchanges, Google denies that that was the result of a "launch" within the meaning of Interrogatory 6. Similarly, to the extent "Last Look" refers to the alleged functionality by which dynamic allocation purportedly evaluates bids from AdX buyers after the results of any header bidder auction are known, Google denies that that was the result of a "launch" within the meaning of Interrogatory 6.

**Enhanced Dynamic Allocation** launched on or about March 3, 2014.

**Optimized Competition** launched on or about March 29, 2018. It was subsequently launched for small business publishers on or about April 30, 2018.

**Unified Pricing Rules** launched on or about May 10, 2019, with an open beta for publishers. Legacy open auction pricing rules were subsequently deprecated in favor of UPR in a launch on or about September 25, 2019.

**Reserve Price Optimization** launched on or about March 31, 2015. RPO v.2 subsequently launched on or about October 5, 2015. Prior versions of RPO were disabled along with the Google Ad Manager switch to first-price auctions in September-October 2019. In June 2022, Google launched a version of RPO designed for Ad Manager's first-price auction, known as Optimized Pricing, on select web traffic, and it was extended to all web traffic in January 2023.

**Dynamic Revenue Share** launched on or about August 20, 2015. DRS v. 2 subsequently launched on or about December 1, 2016. tDRS subsequently launched on or about July 17, 2018.

**Project Bernanke** launched on or about November 11, 2013. Subsequent versions of Bernanke include Global Bernanke, which launched on or about August 12, 2015; Project Bell v.2, which launched on or about October 26, 2016; and a further version of Bernanke compatible with Ad Manager's first-price auction (sometimes known as "Alchemist"), which launched no later than on or about October 25, 2019.

**Project Poirot** launched on or about June 19, 2017. Subsequent versions of Poirot include "Project Poirot with Bid Buckets," which launched on or about January 8, 2018; Project Poirot 2.0, also known as "Poirot with Auction Type Signal," which launched on or about September 3, 2018; and a further version of Poirot that utilized the minimum-bid-to-win data

provided by Google Ad Manager after its transition to a unified first price auction, which version of Poirot launched in September 2019.

**Project Elmo** launched on or about November 29, 2017 for DV360 advertisers.

**Minimum Bid to Win** (understood to refer to Google Ad Manager's provision of minimum bid to win feedback to Open Bidders and Authorized Buyers submitting bids to Google Ad Manager) launched on or about September 2019.

**OpenRTB** is an industry standard adopted by the Interactive Advertising Bureau (IAB), but not a Google Auction Dynamic as defined in the Interrogatories.

**Interrogatory No. 7:**

For each Google Auction Mechanic, from January 1, 2013 to the Present, identify on a monthly basis the number of impressions where such Google Auction Mechanic had any effect on bids, floor prices, or revenue shares, and the percentage of such impressions as a share of overall impressions, which otherwise would not have been affected had the Google Auction Mechanic not been operational.

**Response to Interrogatory No. 7:**

Google objects to Interrogatory 7 as overbroad, unduly burdensome, and disproportionate to the needs of the case because it seeks to require Google to provide information about each of at least 16 different "Google Auction Mechanics" on a monthly basis for over 11 years. Google further objects to Interrogatory 7 as overbroad, unduly burdensome, and disproportionate to the needs of the case to the extent that it requires Google to summarize produced documents reflecting ad hoc experiments Google ran which assess the impact of Google Auction Mechanics, as such documents are equally available to Plaintiffs.

Google further objects to Interrogatory 7 as vague and ambiguous because it fails to define the term "effect," including by providing the type or magnitude of effect that would be

13

Google further objects to Interrogatory 14 as vague and ambiguous because it fails to define the term "Global Pool." Without a definition of that vague and ambiguous term, Google is unable to respond to Interrogatory 14.

Subject to and without waiving the foregoing objections, Google responds to Interrogatory 14 as follows:

Global Bernanke is an extension of the original implementation of Project Bernanke under which Google Ads targets a ▇ buyside margin across all of its purchases on AdX as a whole, while allowing its buyside margin to vary from the ▇ target for purchases of individual Publisher's inventory, within certain guardrails. The amount of that variation was algorithmically determined based on factors including the conversion rate for each Publisher and Google Ads' potential to win incremental impressions for its Advertisers on that Publisher's inventory.

**Interrogatory No. 15**

> State whether You contend that AdX ran a second-price auction prior to switching to a first price auction in 2019, and if so, describe in detail all facts supporting Your contention.

**Response to Interrogatory No. 15:**

Google objects to Interrogatory 15 as premature because it calls for matters that will be the subject of expert testimony. Google further objects to Interrogatory 15 as overly broad, unduly burdensome, and disproportionate to the needs of the case to the extent it requires Google to "describe in detail" the facts supporting its contention. Moreover, Interrogatory 15 is overly broad, unduly burdensome, and disproportionate to the needs of the case given the extensive amount of deposition testimony and document discovery available to Plaintiffs.

Subject to and without waiving the foregoing objections, Google responds that AdX ran a second-price auction prior to 2019.

Google cannot at this time "describe in detail" "all facts" that support this contention, but identifies the following illustrative supporting evidence: Deposition testimony to date (including, without limitation, the testimony of          0(b)(6) (Vol I, Tr. 153:24-25);          (Tr.         and the documents cited therein; as well as GOOG-AT-MDL-00884239, and various public statements, such as https://blog.google/products/admanager/simplifying-programmatic-first-price-auctions-google-ad-manager/ and https://support.google.com/authorizedbuyers/answer/9686673?hl=en.

Google intends to additionally present expert testimony in support of its contentions. Accordingly, Google expressly reserves the right to supplement this response, both as to contentions and supporting evidence, following the close of discovery in this Action.

**Interrogatory No. 16**

State whether you contend that Reserve Price Optimization was beneficial to Publishers or Advertisers in any way, and if so, describe in detail all facts supporting Your contention.

**Response to Interrogatory No. 16:**

Google objects to Interrogatory 16 as premature because it calls for matters that will be the subject of expert testimony.

Google further objects to Interrogatory 16 as vague and ambiguous because it fails to define the term "beneficial" or the baseline against which such benefits should be measured. Google further objects to Interrogatory 16 as vague and ambiguous because it fails to define the "Publishers" or "Advertisers" whose benefits should be measured.

Google further objects to Interrogatory 16 as overly broad, unduly burdensome, and disproportionate to the needs of the case to the extent it purports to require Google to "describe in detail all facts supporting" its contentions. Moreover, Interrogatory 16 is overly broad, unduly burdensome, and disproportionate to the needs of the case given the extensive amount of deposition testimony and document discovery available to Plaintiffs.

Subject to and without waiving the foregoing objections, Google responds to Interrogatory 16 as follows:

Reserve Price Optimization was beneficial to Publishers using AdX during the relevant times because it increased the floor price in AdX auctions where Google predicted, based on historical bid data, that a higher floor price would increase publisher revenues. It also simplified the process of revenue optimization for Publishers by automating the adjustment of floor prices that might otherwise have been manually set by Publishers.

Reserve Price Optimization was beneficial to Advertisers using AdX during the relevant times because, by making AdX more attractive to Publishers and encouraging them to make more inventory available for sale, RPO tended to increase the amount and quality of inventory made available to such Advertisers on AdX by Publishers.

Google cannot at this time "describe in detail" "all facts" that support this contention, but identifies the following illustrative supporting evidence: Deposition testimony to date (including, without limitation, the testimony of ████████████████████████████████ ████████████████████████████████████████████████████████████████ ███████████████████ and the documents cited therein, as well as GOOG-AT-MDL-C-000017971; GOOG-DOJ-04937154, GOOG-DOJ-07235914, GOOG-AT-MDL-004242638, GOOG-DOJ-04937154, GOOG-DOJ-13199910, GOOG-DOJ-13209957, GOOG-DOJ-