# EXHIBIT 115
# REDACTED

Page 1

```
 1        IN THE UNITED STATES DISTRICT COURT
          FOR THE EASTERN DISTRICT OF TEXAS
 2                   SHERMAN DIVISION
 3   THE STATE OF TEXAS, et    )
     al.,                      )
 4                             ) Case No.
                 Plaintiffs,   ) 4:20-cv-00957-SDJ
 5                             )
     vs.                       ) Hon. Sean D. Jordan
 6                             )
     GOOGLE LLC,               )
 7                             )
                 Defendants.   )
 8
              FRIDAY, APRIL 12, 2024
 9
       CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER
10                       - - -
11          Remote videotaped deposition of
12   Google LLC 30(b)(6) designee ▮▮▮▮▮▮▮▮▮▮▮,
13   held at the location of the witness in
14   Teaneck, New Jersey, commencing at 8:33 a.m.
15   Eastern, on the above date, before Carrie A.
16   Campbell, Registered Diplomate Reporter,
17   Certified Realtime Reporter, Illinois,
18   California & Texas Certified Shorthand
19   Reporter, Missouri, Kansas, Louisiana & New
20   Jersey Certified Court Reporter.
21
22                       - - -
23
24
25   Job No. MDLG6644294
```

PURSUANT TO PROTECTIVE ORDER

Page 2

```
 1      R E M O T E    A P P E A R A N C E S :
 2
        NORTON ROSE FULBRIGHT US LLP
 3      BY:  GERALDINE YOUNG
             geraldine.young@nortonrosefulbright.com
 4      1301 McKinney, Suite 5100
        Houston, Texas  77010
 5      (713) 651-5151
 6
        and
 7
 8      NORTON ROSE FULBRIGHT US LLP
        BY:  MARISA MADARAS
 9           marisa.madaras@nortonrosefulbright.com
        799 9th Street NW, Suite 1000
10      Washington, DC  20001
        (202) 662-0200
11
12      and
13
        THE LANIER LAW FIRM, PLLC
14      BY:  ZEKE DEROSE
             zeke.derose@lanierlawfirm.com
15           MELONIE DEROSE
             melonie.derose@lanierlawfirm.com
16      10940 West Sam Houston Parkway North,
        Suite 100
17      Houston, Texas  77064
        (713) 659-5200
18      Counsel for Texas, Idaho, Louisiana
        (The Lanier Law Firm only), Mississippi,
19      North Dakota, Mississippi,
        South Carolina, and South Dakota
20
21
        STATE OF TEXAS
22      OFFICE OF THE ATTORNEY GENERAL
        BY:  CUONG PHAM
23           Cuong.Pham@oag.texas.gov
        P.O. Box 12548
24      Austin, Texas  78711-2548
        (512) 936-1674
25      Counsel for Plaintiff State of Texas
```

Page 3

```
 1      FRESHFIELDS BRUCKHAUS DERINGER US LLP
        BY:   JULIE ELMER
 2            julie.elmer@freshfields.com
        700 13th Street, NW, 10th Floor
 3      Washington, DC  20005-3960
        (202) 777-4500
 4
 5      and
 6
        FRESHFIELDS BRUCKHAUS DERINGER US LLP
 7      BY:   JEANETTE BAYOUMI
              jeanette.bayoumi@freshfields.com
 8            MATTHEW STEYL
              matthew.steyl@freshfields.com
 9      175 Greenwich Street, 51st Floor
        New York, New York  10007
10      (212) 277-4000
        Counsel for Google LLC
11
12
   ALSO PRESENT:
13
           STEVEN C. SPARLING, Litigation and
14  Regulatory Counsel, Google LLC
15         JONATHAN JAFFE, consultant
16         RAY MOORE, trial technician, Precision
    Trial Solutions
17
18
    V I D E O G R A P H E R :
19      DAVID LANE,
        Golkow Litigation Services
20
                        - - -
21
22
23
24
25
```

```
                                                         Page 4
 1                            INDEX
 2                                                        PAGE
 3    APPEARANCES...................................     2
 4    EXAMINATIONS
 5      BY MS. YOUNG...............................      8
 6
 7                           EXHIBITS
 8     No.    Description                                Page
 9     Exh 67  ███████████  LinkedIn profile              15
               printout
10
       Exh 68 "3 way automation can help                  40
11            publishers succeed," ████████████,
              July 7, 2021
12
       Exh 69 ███████████: GSL                            48
13            Accomplishments,
              GOOG-DOJ-AT-01814428 -
14            GOOG-DOJ-AT-01814435
15     Exh 70 Plaintiffs' First Notice of Rule            84
              30(b)(6) Deposition
16
       Exh 71 March 29, 2024 Freshfields                  87
17            Bruckhaus Deringer US LLP letter
              to Lanier Law Firm
18
       Exh 72 April 9, 2024 Freshfields                   94
19            Bruckhaus Deringer US LLP letter
              to Lanier Law Firm
20
       Exh 73 Nitish Promo Packet 2019,                  130
21            GOOG-DOJ-AT-01033317 -
              GOOG-DOJ-AT-01033327
22
       Exh 74 Google DRX (DFP+AdX) Opportunity           144
23            & Plan, September 2014,
              GOOG-AT-MDL-013284385 -
24            GOOG-AT-MDL-013284425
25
```

Page 5

```
 1      Exh 75  E-mail(s),                              177
             GOOG-DOJ-14632454 -
 2           GOOG-DOJ-14632455
 3      Exh 76  Order Form - DFP Premium and ADX        181
             Services,
 4           GOOG-AT-MDL-015945895 -
             GOOG-AT-MDL-015945914
 5
        Exh 77  DRX re-contracting PRD,                 191
 6           GOOG-TEX-00725911 -
             GOOG-TEX-00725915
 7
        Exh 78  "2018 Google Ad Manager releases        201
 8           archive"
 9      Exh 79  Campaign stakeholder review             212
             status,
10           GOOG-AT-MDL-019416878 -
             GOOG-AT-MDL-019416881
11
        Exh 80  E-mail(s),                              229
12           GOOG-DOJ-15370825 -
             GOOG-DOJ-15370826
13
        Exh 81  E-mail(s),                              235
14           GOOG-AT-MDL-B-002235587 -
             GOOG-AT-MDL-B-002235588
15
        Exh 82  Google comms doc,                       240
16           GOOG-NE-12549921 -
             GOOG-NE-12549926
17
        Exh 83  DRX Re-Contracting Comms,               254
18           GOOG-TEX-00059386 -
             GOOG-TEX-00059387
19
        Exh 84  E-mail(s),                              265
20           GOOG-AT-MDL-B-001407885
21      Exh 85  [Comms Doc] - DRX recontracting,        267
             GOOG-DOJ-AT-01140595 -
22           GOOG-DOJ-AT-01140601
23      Exh 86  Google Deal Executive Summary,          269
             GOOG-AT-MDL-B-004861392 -
24           GOOG-AT-MDL-B-004861439
25
```

Page 6

```
 1      Exh 87  Excel spreadsheet,                        272
                GOOG-AT-MDL-016866243
 2
        Exh 88      Google Ad Manager, Order Form -   279
 3              Google Ad Manager Small Business
                Service,
 4              GOOG-DOJ-AT-01134520 -
                GOOG-DOJ-AT-01134523
 5
        Exh 89      "What are the guiding principles 315
 6              and approaches for our publisher
                strategy, given the ecosystem
 7              changes?",
                GOOG-NE-04001130 -
 8              GOOG-NE-04001140
 9      Exh 90      "Decision 21-D-11 of 7 June 2021 333
                regarding practices implemented
10              in the online advertising
                sector*."
11
12         (Exhibits attached to the deposition.)
13
14    CERTIFICATE..................................338
15    ACKNOWLEDGMENT OF DEPONENT...................340
16    ERRATA.......................................341
17    LAWYER'S NOTES...............................342
18
19
20
21
22
23
24
25
```

PURSUANT TO PROTECTIVE ORDER

Page 7

1          VIDEOGRAPHER:  We're now or not
2    record.  My name is David Lane,
3    videographer for Golkow Litigation
4    Services.
5          Today's date is April 12, 2024.
6    Our time on the record is 8:33 a.m.
7    Eastern Standard Time.
8          This remote video deposition is
9    being held in the matter of the State
10   of Texas, et al., versus Google, LLC.
11         Our deponent today is ███████
12   ████████
13         All parties to this deposition
14   are appearing remotely and have agreed
15   to the witness being sworn in
16   remotely.
17         Due to the nature of remote
18   reporting, please pause briefly before
19   speaking to ensure all parties are
20   heard completely.
21         Our counsel will be noted on
22   the stenographic record.
23         Court reporter today is Carrie
24   Campbell, who will now swear in our
25   witness.

Page 8

```
 1                      YONI WILBUR,
 2   of lawful age, having been first duly sworn
 3   to tell the truth, the whole truth and
 4   nothing but the truth, deposes and says on
 5   behalf of the Plaintiffs, as follows:
 6
 7              VIDEOGRAPHER:  Please begin.
 8              MS. YOUNG:  Do you need us, the
 9        record -- or the counsel to state our
10        names on the record?
11              No.
12
13              DIRECT EXAMINATION
14   QUESTIONS BY MS. YOUNG:
15        Q.    Okay.  Good morning,
16   ▇▇▇▇▇▇▇▇▇▇.
17              Can you please state your full
18   name for us?
19        A.    Sure.  It's ▇▇▇▇▇▇▇▇▇▇.
20        Q.    Is there anything impairing
21   your ability to give truthful, accurate
22   testimony today?
23        A.    No.
24        Q.    And you understand we're taking
25   a deposition remotely.
```

```
 1    testified to, the number of publishers
 2    associated with those networks would be close
 3    to around ▬▬▬ as well?
 4           A.    Yes.
 5           Q.    And in looking further on in
 6    this sentence where you talk about leading
 7    recontracting efforts with respect to these
 8    approximately ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬, your
 9    role also included managing termination of
10    those partners who were not recontracted.
11                Is that correct?
12           A.    Yes.
13           Q.    And those partners were not
14    recontracted because they did not want to
15    sign a new contract with a Google Ad Manager
16    product.
17                Is that correct?
18                MS. ELMER:  Object to form.
19                THE WITNESS:  Those partners
20          were terminated because they did not
21          sign a unified contract, yes.
22    QUESTIONS BY MS. YOUNG:
23           Q.    And they did not want to sign a
24    unified contract because they did not want to
25    sign a contract including DFP?
```

Page 76

1           MS. ELMER:  Object to form.
2    QUESTIONS BY MS. YOUNG:
3         Q.    Is that correct?
4           MS. ELMER:  Same objection.
5           THE WITNESS:  I cannot
6      speculate on why a partner would not
7      have wanted to sign a contract.
8    QUESTIONS BY MS. YOUNG:
9         Q.    Stepping back, a partner didn't
10   have an option to keep their AdX only
11   contract.
12              Is that correct?
13        A.    Correct.
14        Q.    They did not have an option to
15   not go through the recontracting process?
16          MS. ELMER:  Object.  Object to
17       form.
18          THE WITNESS:  Well, they did
19       have an option.  They could have
20       chosen not to recontract if they
21       didn't -- if they didn't want to.
22   QUESTIONS BY MS. YOUNG:
23        Q.    Their options were limited to
24   either recontracting or no contract at all?
25        A.    Those are the two options, yes.

Page 77

```
 1          Q.      Partners or customers of Google
 2   were not provided any other choices beyond
 3   those two that were just discussed?
 4          A.      Those are the two choices, yes.
 5          Q.      Do you know how many partners
 6   were terminated as a result of this
 7   recontracting effort?
 8          A.      I do not.
 9          Q.      Do you know how many networks
10   were terminated as a result of this
11   recontracting effort that you led?
12          A.      I do not.
13          Q.      If we look at the next
14   sentence, it says, ████████████████████████
     ████████████████████████████████████████████
     ████████████████████████████████████████████
     ████████████████████████████████████
18                  Did I read that correctly?
19          A.      Yes.
20          Q.      And does that again accurately
21   reflect your role in the recontracting
22   effort?
23          A.      I wouldn't have done the direct
24   customer outreach, but I would have -- I
25   would have provided sales with the tool to do
```

PURSUANT TO PROTECTIVE ORDER



Golkow Technologies,
877-370-3377  A Veritext Division  www.veritext.com

Page 79

1  QUESTIONS BY MS. YOUNG:
2      Q.    It was a priority of Google's
3  to ███████████████████████████████████████
4  ███████████████████████████████████████
5            MS. ELMER:  Object to form.
6            THE WITNESS:  I would -- I
7       think a better way to say it is it was
8       a priority of Google to give partners
9       a choice.
10 QUESTIONS BY MS. YOUNG:
11     Q.    But it's correct that Google
12 only gave partners two choices.
13           Correct?
14     A.    Yes, correct.
15     Q.    And those two choices were to
16 recontract, or sign a new contract, or be
17 terminated.
18           Correct?
19     A.    That was the decision of the
20 business, yes.
21     Q.    And the partners did not have a
22 choice on their participation in this
23 recontracting process?
24           MS. ELMER:  Object to form.
25           THE WITNESS:  We were -- the

Page 80

```
 1          business made the decision to unify
 2          the two -- the -- to unify DFP and
 3          AdX, and partners were given a choice
 4          to either -- to recontract on the new
 5          platform or to no longer use the
 6          product.
 7   QUESTIONS BY MS. YOUNG:
 8          Q.     The decision to unify the two
 9   contracts, that was solely a Google decision.
10          Correct?
11          A.     Correct.
12          Q.     Partners or customers had no
13   choice with respect to that aspect, the
14   unification of the two products?
15          A.     The unification was a business
16   decision by Google, but partners always have
17   a choice.
18          Q.     Between -- and that choice is
19   limited, right, between recontracting or
20   being terminated?
21                 MS. ELMER:  Object to form.
22                 THE WITNESS:  Again, those
23          are -- those are two choices, yes,
24          that a partner would have.
25
```

PURSUANT TO PROTECTIVE ORDER

Page 81

```
 1   QUESTIONS BY MS. YOUNG:
 2        Q.     We will get into this with the
 3   contracts, but the partners who were
 4   terminated were terminated before their
 5   contracts were expired.
 6               Correct?
 7               MS. ELMER:  Object to form.
 8               THE WITNESS:  Sorry, could
 9        you -- could you -- could you say that
10        again?
11   QUESTIONS BY MS. YOUNG:
12        Q.     The partners who were
13   terminated as part of this recontracting
14   effort that you led, they were terminated
15   before their contracts expired.
16               Correct?
17               MS. ELMER:  Object to form.
18               THE WITNESS:  No.
19   QUESTIONS BY MS. YOUNG:
20        Q.     They were not terminated before
21   their contracts expired?
22        A.     All our -- I believe the -- no,
23   I would say not.
24        Q.     So this recontracting only
25   occurred when the contract was up to expire?
```

Page 300

1           MS. ELMER:  Object to form.
2           THE WITNESS:  I'm sorry, was
3      there a question?
4  QUESTIONS BY MS. YOUNG:
5      Q.    Yeah.
6            So I -- you answered that there
7  is a way to further investigate the number of
8  publishers on GAM throughout the years.
9            Do you recall that?
10     A.    Yes.
11     Q.    And I asked you, the relevant
12 years, based on the documents we've seen
13 today, mean starting in late 2017 to the
14 present with respect to GAM.
15           Right?
16           MS. ELMER:  I'm going to object
17      to the form to the extent that you're
18      asking the witness what is relevant.
19           But you may answer.
20           THE WITNESS:  I would need to
21      do further investigation to confirm
22      what years would be relevant.
23 QUESTIONS BY MS. YOUNG:
24     Q.    Well, GAM has been in existence
25 since 2017 and 2018.

Page 301

1           Correct?
2      A.   GAM -- can you -- can you
3  repeat that?  Sorry.
4      Q.   GAM has been in existence since
5  2017 and 2018.
6           Correct?
7      A.   Are you referring to when we
8  rebranded as GAM or when we --
9      Q.   Actually, that's -- yeah.  So
10 DRX has been in existence since when?
11     A.   I would -- that's what I would
12 need to confirm, when we -- when we started
13 moving partners onto the unified product.
14     Q.   And when you started moving
15 partners onto the unified product would be
16 the start of the time on which we could
17 measure how many publishers were on that
18 product.
19          Correct?
20          MS. ELMER:  Object to form.
21          THE WITNESS:  Could you repeat
22     the question?  Sorry.
23 QUESTIONS BY MS. YOUNG:
24     Q.   Yeah.
25          Look, we talked today about

```
                                                    Page 302
 1      unified contracts.  We saw some starting in
 2      2016, and as this letter confirms and as
 3      documents show, they go through the present.
 4                 Correct?
 5           A.    Correct.
 6           Q.    So further investigation within
 7      Google could provide us the number of
 8      publishers with each -- with those contracts
 9      in each of those years from 2016 to the
10      present.
11                 Correct?
12                 MS. ELMER:  Object to form.
13           Assumes facts.
14                 You may answer.
15                 THE WITNESS:  Again, I don't
16           know specifically when we start --
17           when we started having a unified
18           product, so I would need to look into
19           that.
20                 But once I found out that
21           information, I could get the number of
22           networks for you.
23      QUESTIONS BY MS. YOUNG:
24           Q.    And then from the network
25      number, further investigation could also
```

Page 303

```
 1   determine the number of publishers.
 2            Correct?
 3        A.   Correct.
 4        Q.   And you discussed tests and
 5   internal networks.
 6            Correct?
 7        A.   Yes.
 8        Q.   Those could be filtered or
 9   excluded, could they not?
10        A.   Potentially, if they were
11   appropriately marked.
12        Q.   This ▮▮▮▮▮▮ number and the
13   other numbers in this letter, are those data
14   figures you received ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
15   ▮▮▮▮▮▮▮▮?
16        A.   That ▮▮▮▮▮▮ number is not a
17   number I received over chat.
18        Q.   Do you know the origin of that
19   number?
20        A.   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
```