# EXHIBIT 249

Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

THE STATE OF TEXAS, et al,

       Plaintiffs,

-vs-                                    Civil Action No.
                                        4:20-cv-00957-SDJ
GOOGLE LLC,

       Defendant.


VIDEOTAPED DEPOSITION OF CHUCK HARDER
TAKEN ON BEHALF OF THE DEFENDANT
ON MAY 1, 2024, BEGINNING AT 8:51 A.M.
VIA ZOOM


APPEARANCES

on behalf of the PLAINTIFFS

Ms. Amanda Wentz (Via Zoom)
ARKANSAS ATTORNEY GENERAL'S OFFICE
323 Center Street
Suite 200
Little Rock, Arkansas 72201
(501) 682-2007

(Appearances continued on next page.)
REPORTED BY:  Shannon S. Harwood, CSR, RPR, CRR
   Job No. CS6663791

Page 2

1  (Appearances continued.)
2  Mr. Clark Kirkland (Via Zoom)
   Ms. Rebecca Hartner (Via Zoom)
3  SOUTH CAROLINA ATTORNEY GENERAL'S OFFICE
   Rembert Dennis Building
4  1000 Assembly Street
   Room 519
5  Columbia, South Carolina 29201
   (803) 734-3970
6  ckirkland@scag.gov
7
   Mr. Jonathan Wilkerson (Via Zoom)
8  THE LANIER LAW FIRM
   10940 West Sam Houston Parkway N
9  Suite 100
   Houston, Texas 77064
10 (713) 659-5200
   j.wilkerson@lanierlawfirm.com
11
12 on behalf of the DEFENDANT
13 Mr. Matthew Zorn (Via Zoom)
   Mr. Chuck Matula (Via Zoom)
14 YETTER COLEMAN LLP
   811 Main Street
15 Suite 1400
   Houston, Texas 77002
16 (713) 632-8000
   mzorn@yettercoleman.com
17 cmatula@yettercoleman.com
18
19 ALSO APPEARING:  Mr. Peter Zierlein, Videographer (Via
   Zoom) Mr. Dan Acosta, Video Concierge (Via Zoom)
20
21
22
23
24
25

UNDER PROTECTIVE ORDER

Page 23

1     VIDEO CONCIERGE:  Got it.  Will do.
2     A.    Okay.
3     Q.    (By Mr. Zorn)  Sir, can you verify for me that
4  the date of this is April 1st, 2023?
5     A.    That's correct.
6     Q.    And so the State of Arkansas has been paying
7  Google over a decade for this ad campaign, fair?
8     A.    Correct.
9     Q.    And that's because, as we discussed earlier,
10  this ad campaign is in public interest, fair?
11     A.    Yes, that's correct.
12     Q.    And it's been effective, true?
13     A.    It has -- it has achieved our goal, which is
14  to inform individuals who conduct internet searches
15  based on the criteria that we've set forth in -- in
16  giving them the opportunity to see that their purchase
17  or a purchase of untaxed cigarettes may be subject to
18  criminal or civil enforcement by the State of Arkansas.
19     Q.    And at no point during this period has the
20  Office of Attorney General considered switching to a
21  different ad tech provider, correct?
22     A.    Not to my knowledge.
23     MR. ZORN:  Why don't we pull this -- this
24  document down.
25     Q.    (By Mr. Zorn)  Sir, would you agree with me

Page 24

```
1    that the harm to Arkansas's general welfare and economy
2    is based on publishers and advertisers experiencing
3    decreased revenue, lower quality and higher prices?
4           MS. WENTZ:  Form.
5        A.   Pardon?
6        Q.   (By Mr. Zorn)  Would you agree to me that the
7    harm to Arkansas's general welfare and economy from what
8    it alleges Google is doing in this case is based on harm
9    that publishers and advertisers are experiencing in the
10   form of decreased revenue, lower quality and higher
11   prices?
12       A.   I don't think that I -- we can make that
13   determination yet.  We are still waiting for additional
14   information to be provided during the discovery process
15   and are waiting on the reports of our experts.
16       Q.   But that's Arkansas's allegation in the case,
17   true?
18       A.   Again, we're not -- we're not going to know
19   what the harm is to Ark -- Arkansans in the State of
20   Arkansas until the discovery process is completed and we
21   have the reports of our expert witnesses.
22       Q.   So -- so it's fair to say that the State of
23   Arkansas joined this lawsuit not knowing one way or the
24   other whether what it's alleging benefits Arkansas
25   consumers or hurts Arkansas consumers; is that right?
```

1      A.   No, we joined the lawsuit -- we joined the
2   lawsuit.  The harm -- the harm is a harm nationwide that
3   we believe to be substantial and widespread and we
4   believe that the harm to Arkansans was -- we have no
5   reason to believe that the harm to Arkansans is any
6   different than the national harm to -- national harm.
7      Q.   But so -- so setting aside national harm, the
8   harm to Arkansans, has Arkansas done any evaluation as
9   to whether the relief it is requesting in this case
10  would benefit citizens of the State of Arkansas or take
11  away from the state --
12     A.   We've not done --
13     Q.   -- citizens of Arkansas?
14     A.   Yeah, as -- as I've indicated, we've not done
15  a separate investigation or a separate evaluation and we
16  will not know until the discovery has concluded and we
17  get the reports of our experts.
18     Q.   Sir, the State has done no investigation,
19  correct?
20     A.   We've not done any investigation apart from
21  the multi-state investigation.
22     Q.   Sir, the State did no investigation before it
23  decided to join this lawsuit as to whether obtaining the
24  relief the State is requesting in this lawsuit would
25  benefit Arkansans or would hurt Arkansans; is that

1   right?
2       A.   We've not conducted any investigation separate
3   and apart from the multi-state investigation and have
4   relied upon the multi-state investigation and have as
5   our witness for that investigation designated Mr. Gordon
6   from Texas.
7       Q.   Okay.  When you speak of the multi-state
8   investigation, are you familiar with the multi-state
9   investigation?
10      A.   I -- I know there's a multi-state
11  investigation that occurred before the filing of the
12  complaint.
13      Q.   So you're aware of the existence of a multi-
14  state investigation, fair?
15      A.   Yes.
16      Q.   Can you describe the multi-state investigation
17  for me now?
18      A.   I don't know that I can do that without
19  divulging privileged information or communications or
20  protected attorney work product.
21      Q.   Sir, the State is relying on the multi-state
22  investigation as a basis for its allegations in this
23  complaint, correct?
24      A.   Correct.
25      Q.   And what you're telling me is that what the

Page 29

1  services cause publishers and advertisers to experience
2  decreased revenue; yes or no?
3       A.   If that is -- if that's what's in the
4  complaint, then yes.
5       Q.   What is the basis for that belief?
6       A.   Yeah, on items -- or Item 29 of the complaint
7  on Page 12, (As read) In sum, Google's anticompetitive
8  conduct has adversely and substantially affected the
9  Plaintiff State's economies, as well as the general
10 welfare in the Plaintiff States.  More particularly,
11 Google's conduct has caused a wide range of
12 anticompetitive effects as delineated in Section VIII.
13 These effects include higher prices, reduced output,
14 lower quality, reduced innovation, the exit of rivals,
15 and foreclosed entry.  Google's harm to competition
16 deprives advertisers, publishers and their consumers of
17 improved quality, greater transparency, greater
18 innovation, increased output and lower prices.
19      Q.   Is that what the state is relying on?
20      A.   That's our -- that's our allegation in the
21 complaint and -- that's the allegation in our complaint.
22      Q.   Sir -- sir, that paragraph states a
23 conclusion, correct?
24      A.   I believe so.
25      Q.   What's the factual basis for that conclusion?

Page 30

1    A.    The factual basis for that conclusion, this is
2  -- this is an instance where -- again, an instance where
3  the facts in this case are common for all the states
4  involved and the fact witness for the common facts is
5  the 30(b)(6) witness for the State of Texas, Mr. Gordon.
6    Q.    Do you have any evidence about harm to
7  Arkansas's citizens --
8    A.    I don't have any -- I don't have any -- we
9  don't have any evidence that the harm to Arkansas
10 citizens is any different than the harm nationally.
11   Q.    So -- so is it the State's contention that
12 widespread national harm is the harm to Arkansas
13 citizens?
14   A.    We -- no, the -- we do not believe -- we have
15 no reason to believe that Arkansas was -- that the harm
16 to Arkansas was any less or any more than it was
17 nationally at this point.  It will not know until
18 discovery is concluded and we have the reports of our
19 experts.
20   Q.    Sir, discovery closes in two days.  You know
21 that, right?
22   A.    I do now.
23   Q.    The fact discovery closes in two days, fair?
24   A.    I have no reason to doubt that.
25   Q.    So -- so your testimony is that in the next 48

UNDER PROTECTIVE ORDER

Page 31

1  hours, there may be new facts that -- that substantiate
2  things that you can't substantiate today.  Is that what
3  I'm hearing?
4       A.   I don't believe that within the next 48 hours
5  the information that we provide is going to be fully
6  analyzed and the expert opinions are not due until the
7  middle of May.
8       Q.   You believe that a deposition of the Texas DMV
9  is going to assist you in determining the harm that is
10 occurring to the citizens of the state of Arkansas?
11      A.   I have no reason to believe or not to believe
12 that.
13      Q.   What discovery do you think will assist the
14 State of Arkansas in determining whether its citizens
15 have experienced particular harm from Google's conduct?
16      A.   We won't know until all the discovery is in
17 and we get the report of our expert witnesses.
18      Q.   Sir, is there anything that has prevented the
19 State from getting the opinion of its experts prior to
20 now?
21      A.   I'm not -- I'm not familiar with that and I
22 don't know -- I don't know that I can answer that
23 question without divulging confidential information or
24 privileged information or communications or privileged
25 or protected attorney work product.

```
 1                    C E R T I F I C A T E

 2                                                    Page 70

 3    STATE OF OKLAHOMA  )
                         )
 4    COUNTY OF TULSA    )

 5

           I, Shannon S. Harwood, a Certified Shorthand
 6
      Reporter in and for the State of Oklahoma, do hereby
 7
      certify that the foregoing is a true and correct
 8
      transcription of my shorthand notes of proceedings had
 9
      in Case Number 4:20-cv-957-SDJ heard on the 1st day of
10
      May, 2024, and is only valid with my stamped seal and my
11
      original signature.
12
           I further certify that I am not related to nor
13
      attorney for either of said parties nor otherwise
14
      interested in said action.
15
           IN WITNESS WHEREOF, I have hereunto set my hand and
16
      seal this 2nd day of May, 2024.
17

18

19

20

21

22
                         _____
23
                         Shannon S. Harwood, CSR, RPR, CRR
24

25
```