# EXHIBIT 250

UNDER PROTECTIVE ORDER

Page 1

```
 1        UNITED STATES DISTRICT COURT
       FOR THE EASTERN DISTRICT OF TEXAS
 2             SHERMAN DIVISION
 3
 4   THE STATE OF TEXAS, et al.,
 5           Plaintiffs,
                                  Civil Action No.
 6   vs.                          4:20-cv-00957-SJD
 7   GOOGLE, LLC,
 8           Defendant.
 9   _____/
10
                                  Collins Building
11                                107 W. Gaines Street
                                  Tallahassee, FL 32399
12                                April 22, 2024
                                  9:44 a.m. - 5:30 p.m. EDT
13
14
15         DEPOSITION OF ANDREW BUTLER
16
17       Taken on behalf of the Defendant before
18   Alice J. Teslicko, Registered Merit Reporter, and
19   Notary Public in and for the State of Florida at
20   Large, pursuant to a Notice of Taking 30(b)(6)
21   Deposition in the above cause.
22
23
24
25      Job No. CS6654550
```

```
 1   APPEARANCES:
 2
     On Behalf of the Plaintiff State of Florida
 3     and the Deponent:
 4       FLORIDA OFFICE OF THE ATTORNEY GENERAL
         BY:  R. SCOTT PALMER, ESQ.
 5            LEE ISTRAIL, ESQ.
              LIZABETH BRADY, ESQ.    (Via Zoom)
 6            COLIN FRASER, ESQ.      (Viz Zoom)
         FL-01, The Capitol
 7       Tallahassee, FL 32399
         (850) 414-3300
 8       scottpalmer@myfloridalegal.com
         lee.istrail@myfloridalegal.com
 9
10   On Behalf of the Defendant Google, LLC:
11       YETTER COLEMAN, LLP
         BY:  AYLA SYED, ESQ.
12            JAMIE A. AYCOCK, ESQ.
              CHUCK F. MATULA, ESQ.   (Via Zoom)
13       811 Main Street, Suite 4100
         Houston, TX 77002
14       (713) 632-8000
         asyed@yettercoleman.com
15       jamieaycock@yettercoleman.com
         chuckmatula@yettercoleman.com
16
17   ADDITIONAL APPEARANCES VIA ZOOM:
18   On Behalf of the Plaintiff States:
19       KELLER POSTMAN, LLC   (For All Plaintiff States)
         BY:  LAUREN SCHULTZ, ESQ.
20       1101 Connecticut Avenue NW, Suite 1100
         Washington, DC 20036
21       (202) 918-1123
         lauren.schultz@kellerpostman.com
22
23
24
25
```

```
 1    ADDITIONAL APPEARANCES VIA ZOOM - CONTINUED:
 2
          TEXAS OFFICE OF THE ATTORNEY GENERAL
 3        BY:  OBINNA O.C. ILOANI, ESQ.
          300 W 15th Street
 4        Austin, TX 78701
          (512) 463-2100
 5        obinna-lloani@oag.texas.gov
 6
          NORTON ROSE FULBRIGHT US, LLP     (TX)
 7        BY:  GABRIEL CULVER, ESQ.
          98 San Jacinto Blvd., Suite 2200
 8        Austin, TX 78701
          (512) 536-2401
 9        gabriel.culver@nortonrosefulbright.com
10
          LANIER LAW FIRM     (TX/NY)
11        BY:  JONATHAN WILKERSON, ESQ.
               ALEX HENTHORN, ESQ.
12        10940 West Sam Houston Parkway North
          Houston, TX 77064
13        (713) 659-5200
          jonathan.wilkerson@lanierlawfirm.com
14        alex.henthorn@lanierlawfirm.com
15
          MONTANA DEPARTMENT OF JUSTICE
16        BY:  ANNA SCHNEIDER, ESQ.
          215 North Sanders, P.O. Box 201401
17        Helena, MT 59620
          (406) 444-2026
18        anna.schneider@mt.gov
19
          COOPER & KIRK, PLLC   (MT)
20        BY:  HAROLD S. REEVES, ESQ.
               MICHAEL WEITZNER, ESQ.
21        1523 New Hampshire Avenue, N.W.
          Washington, DC 20036
22        (202) 220-9600
          hreeves@cooperkirk.com
23        mweitzner@cooperkirk.com
24
25
```

Case 4:20-cv-00957-SDJ   Document 749-10   Filed 12/30/24   Page 5 of 17 PageID #: 48878

UNDER PROTECTIVE ORDER

Page 4

```
 1    ADDITIONAL APPEARANCES VIA ZOOM - CONTINUED:
 2
          UTAH OFFICE OF THE ATTORNEY GENERAL
 3        BY:  MARIE W.L. MARTIN, ESQ.
          350 N. State Street, Suite 230
 4        Salt Lake City, UT 84114
          (801) 366-0260
 5        mwmartin@agutah.gov
 6
          SOUTH CAROLINA ATTORNEY GENERAL'S OFFICE
 7        BY: REBECCA M. HARTNER, ESQ.
               MARY FRANCES JOWERS, ESQ.
 8             CLARK C. KIRKLAND JR., ESQ.
          1000 Assembly Street
 9        Columbia, SC 29201
          (803) 734-3970
10        rhartner@scag.gov
          mfjowers@scag.gov
11        ckirkland@scag.gov
12
          OFFICE OF THE KENTUCKY ATTORNEY GENERAL
13        BY:  PHILIP R. HELERINGER, ESQ.
               ZACH RICHARDS, ESQ.
14        1024 Capital Center Drive, Suite 200
          Frankfort, KY 40601
15        (502) 696-5647
          philip.heleringer@ky.gov
16        zach.richards@ky.gov
17
          THE DUGAN LAW FIRM, APLC   (LA)
18        BY:  DAVID S. SCALIA, ESQ.
               MONICA VELA-VICK, ESQ.
19        365 Canal Street, Suite 1000
          New Orleans, LA 70130
20        (504) 648-0180
          dscalia@dugan-lawfirm.com
21        monica@dugan-lawfirm.com
22
23
24
25
```

Veritext Legal Solutions
800-567-8658                                       973-410-4098

```
 1    ADDITIONAL APPEARANCES VIA ZOOM - CONTINUED:
 2
          NORTH DAKOTA OFFICE OF THE ATTORNEY GENERAL
 3        BY:  ELIN S. ALM, ESQ.
          1720 Burlington Drive, Suite C
 4        Bismarck, ND 58504
          (701) 328-5570
 5        ealm@nd.gov
 6
          SOUTH DAKOTA OFFICE OF THE ATTORNEY GENERAL
 7        BY:  JONATHAN VAN PATTEN, ESQ.
          1302 East Hwy 14, Suite One
 8        Pierre, SD 57501
          (605) 773-3215
 9        jon.vanpatten@state.sd.us
10
          STATE OF MISSISSIPPI ATTORNEY GENERAL'S OFFICE
11        BY:  CALEB PRACHT, ESQ.
          550 High Street
12        Jackson, MS 39201
          (601) 359-3680
13        caleb.pracht@ago.ms.gov
14
          IDAHO OFFICE OF THE ATTORNEY GENERAL
15        BY:  JOHN OLSON, ESQ.
          700 W. Jefferson Street, Suite 210
16        Boise, ID 83720
          (208) 334-2400
17        john.olson@ag.idaho.gov
18
          HAUSFELD, LLP   (PR)
19        BY:  KYLE G. BATES, ESQ.
          600 Montgomery Street, Suite 3200
20        San Francisco, CA 94111
          (415) 633-1908
21        kbates@hausfeld.com
22
23        Also Present:  Gabe Dunlap - Videographer
24                         - - -
25
```

1    Q   So outside of Mr. Gordon's testimony --
2  strike that.  Let me rephrase that question.
3          You intend to rely on Mr. Gordon's testimony
4  with respect to the irreparable harm alleged for the
5  injunction being sought under Federal antitrust
6  statutes?
7    A   I mean, you're asking me what we intend to
8  rely on?  Is that what the question is?
9    Q   I can reframe the question.
10   A   Okay.
11   Q   What irreparable harm does the State of
12 Florida allege an injunction is necessary to prevent
13 under Federal antitrust law?
14   A   So the harms are laid out extensively in the
15 interrogatory responses.  Those are the harms
16 generally across the nationwide market that are common
17 to the Plaintiff States.
18          With respect to Florida, there is that
19 general harm.  There is our additional facts, such as
20 the number of natural persons and the number of
21 businesses doing business in our state.  And expert
22 discovery is ongoing, which may provide additional
23 details as to the precise numbers.
24   Q   And specific to the State of Florida, what
25 is the irreparable harm to natural persons alleged as

1   the basis for injunctive relief under Federal
2   antitrust law?
3       A    The harm that the Plaintiff States generally
4   allege flows to consumers in the nationwide market.
5   That effect being felt by the 22 million natural
6   persons in Florida is our factual basis for that.
7       Q    And when you say "felt by the 22 million,"
8   what do you mean?
9       A    Affected by negatively Google's monopolistic
10  conduct and deceptive conduct.
11      Q    I'm trying to understand.  Focusing on the
12  22 million individuals you identified, why wouldn't
13  monetary relief be adequate to compensate for the harm
14  alleged by the Plaintiff States in this case?
15          MR. PALMER:  Objection.  I think this is
16      work product.  If you can answer it without
17      referring to work product, go ahead.
18      A    I don't think I can answer that question
19  without referring to work product.
20      Q    What is the factual basis for Florida's
21  assertion that individual -- that 22 million
22  individuals in the State of Florida suffered
23  irreparable harm as a result of Google's alleged
24  conduct?
25      A    So the factual bases underlying those

```
 1   effects on the nationwide market and then those
 2   effects being demonstrated inside of Florida, which
 3   could be the subject of expert opinion.  Experts
 4   quantify and measure harm.
 5        Q    You also mentioned that there were certain
 6   businesses within the State of Florida who you allege
 7   experienced irreparable harm as a result of Google's
 8   alleged conduct; is that right?
 9        A    That's correct.
10        Q    What businesses are you referencing?
11        A    So the Florida Department of State has three
12   and a half million active registrations for
13   businesses.  Google's transactional data can
14   demonstrate which of the affected businesses.  Those
15   might be in the State.  And expert testimony and
16   reports are ongoing.
17        Q    I'm trying to understand.  With respect to
18   those three and a half million businesses that are
19   identified by the Florida Department of State, what
20   are the facts underlying Florida's claim that those
21   businesses have suffered irreparable harm because of
22   Google's alleged conduct?
23        A    So the harm to the markets that they
24   participate in is common to all of the Plaintiff
25   States and so that harm, questions surrounding that,
```

Page 49

1  I'd refer to the other witness.
2           But there are three and a half million
3  businesses in the State of Florida.  Advertising is
4  important to all businesses.  The internet is
5  ubiquitous.  And the specifics of the harm caused by
6  Google's conduct could be a matter of expert discovery
7  that is ongoing.
8       Q    So you can't point to any specific evidence
9  that advertisers or publishers within the State of
10 Florida were harmed by Google's alleged conduct?
11          MR. PALMER:  Objection to form.
12          MR. ISTRAIL:  Objection to form.
13      A    That's not what I said.  That evidence,
14 I believe is -- so you take the evidence demonstrating
15 that there's harm in the nationwide market that all of
16 these people are participating in.
17          They're Florida businesses, they're small
18 businesses, they're a peer in the State.  They're
19 participating in a market that's been monopolized.
20 They're experiencing the harms just like everyone else
21 in the nationwide market.
22          But those harms are specific to us in
23 Florida because they're our businesses.  They're doing
24 business with our citizens.  They are our citizens
25 running it, and expert testimony will quantify where

1   and to what extent and how all of these harms occur.
2        Q    And can you name specific businesses that
3   were harmed in the State of Florida by Google's
4   alleged conduct?
5             MR. PALMER:  Objection to form.
6        A    The Florida Office of the Attorney General
7   is not the law firm for any specific individual
8   business.
9        Q    So I understand that you're not representing
10  any individual business as an attorney in this
11  matter.  What I'm asking is if you can name any
12  specific businesses within the State of Florida who
13  are harmed by Google's alleged conduct.
14            MR. PALMER:  Objection as to form.
15       A    I believe that Google's data will
16  demonstrate individual businesses in the State of
17  Florida.  But sitting here today, other than maybe the
18  businesses that have complained about Google and the
19  complaints that we produced, I don't have a specific
20  business for you today.
21       Q    So I understand you intend to rely on
22  documents produced after this case was filed, but --
23            MR. PALMER:  Objection as to form.
24  BY MS. SYED:
25       Q    There was a complaint filed before those

Page 74

1  irreparable harm Florida is claiming under its
2  antitrust claims is the same as the irreparable harm
3  it's alleging with respect to its DTPA claim?
4         MR. PALMER:  Objection as to form.
5    A    I think that I specified that those two
6  things are separate.  So that I believe that the facts
7  underlying the alleged wrongdoing inform the facts
8  that demonstrate the necessity to fix the harm caused
9  by the wrongdoing, and in that respect those are two
10 separate things, as I stated earlier.
11   Q    So I understand there are separate statutes.
12 There's a separate State antitrust statute, there's a
13 separate Federal antitrust statute, and there's a
14 separate State DTPA statute, correct?
15   A    Correct.
16   Q    And it's your testimony today -- strike
17 that.
18        How is the irreparable harm you're alleging
19 with respect to your DTPA claim different from the
20 irreparable harm you're alleging with respect to your
21 antitrust claims?
22        MR. PALMER:  Objection as to form.
23   A    So like I explained earlier, antitrust
24 claims establishing a violation also establishes a
25 violation under the DTPA.  In that narrow respect, the

1  irreparable harm for the DTPA is the same as the
2  antitrust act.
3          But the DTPA also includes additional harms
4  caused by false and misleading omissions and
5  statements, and to the extent that the irreparable
6  harm is caused by those false, misleading statements
7  and you know, unconscionable practices, it is separate
8  and different, and that is the distinction I'm making.
9          I hope that's helpful.
10     Q    So what are those additional harms that are
11 specific to your Florida DTPA claim?
12         MR. PALMER:  Objection as to form.
13     A    So the harms specific to Florida with
14 respect to the DTPA claim are -- so the facts
15 underlying that harm are the facts underlying the
16 Plaintiff States' claims generally that this market
17 suffered these harms, and then facts that Floridians
18 participated and Florida businesses participated in
19 that market, as well as expert discovery, etc.
20     Q    So the only Florida-specific fact you can
21 identify supporting your claim of irreparable harm
22 under the DTPA is that Floridians participated in the
23 general market; is that right?
24         MR. PALMER:  Objection as to form.
25     A    I believe the facts underlying the harm

Page 76

1  specific to Florida is that we have 22 million people
2  participating, with ubiquitous use of internet, three
3  and a half million businesses participating.  And I
4  believe that expert testimony can go a long way in
5  elucidating and quantifying this, rather than me
6  pontificating about it.
7       Q    And is it your testimony today that all
8  22 million individuals in Florida you identified
9  suffered irreparable harm under the DTPA because of
10 the conduct you've alleged?
11          MR. PALMER:  Objection as to form.
12      A    Not necessarily, but that's a question for
13 the experts.
14      Q    When you say "not necessarily," why not
15 necessarily?
16      A    Because I believe that quantifying and
17 measuring proportions and amounts of harm is not
18 information reasonably available to me as a witness,
19 because it's above anyone's head.  It's expert
20 witness.
21      Q    So just to clarify, I'm not asking you to
22 quantify, you know, the total harm at this moment.
23 I'm trying to understand the facts you're alleging
24 that support your claim for irreparable harm under the
25 DTPA.

UNDER PROTECTIVE ORDER

Page 77

1        MR. PALMER:  Is that a question?
2   BY MS. SYED:
3   Q    And so I believe when asked what separate
4   harms you alleged under the State -- under the
5   antitrust laws versus the State DTPA, you stated that
6   there were facts underlying Florida specifically,
7   including 22 million ubiquitous internet users and
8   3.5 million businesses in the State.
9        MR. PALMER:  Objection as to form.
10  Q    I'm trying to understand.  What is your
11  basis for alleging that those individuals or
12  businesses in the State of Florida experienced
13  irreparable harm because of the conduct you've alleged
14  under your state DTPA?
15       MR. PALMER:  I think we're getting into the
16    area of attorney work product.  But if you can
17    answer it without reference to that, go ahead.
18  A    Besides my knowledge and training as an
19  antitrust attorney, expert witnesses are designed
20  specifically to give such testimony regarding harm.
21  It's a matter of economics.
22       If you're looking for data, the economists
23  will have to determine what data they're using, etc.
24  Q    So I understand that the States -- I
25  understand that expert discovery will be done in this

Page 212

1       CERTIFICATE OF OATH

3       I, Alice J. Teslicko, RMR, a Notary Public
4   for the State of Florida at large, do hereby
5   certify that the witness, Andrew Butler, appeared
6   personally before me and was duly sworn.
7       Signed and sealed this 23rd day of April,
8   2024.

11                          Alice J. Teslicko, RMR

13  Commission No. HH300672
    My Commission Expires:
14  December 14, 2026

Page 213

```
                        CERTIFICATE
    STATE OF FLORIDA        )
                            )   ss.
    COUNTY OF NASSAU        )


            I, ALICE TESLICKO, RMR, a Registered
    Merit Reporter and Notary Public for the State of
    Florida at Large, do hereby certify that I reported
    the deposition of Andrew Butler, a witness called by
    the Defendant in the above-styled cause; and that the
    foregoing pages constitute a true and correct
    transcription of my shorthand report of the deposition
    of said witness.
            I further certify that I am not an attorney
    or counsel of any of the parties, nor a relative or
    employee of counsel connected with the action, nor
    financially interested in the action.

            WITNESS my hand and official seal in the
    City of Fernandina Beach, County of Nassau, State of
    Florida, this 23rd day of April, 2024.




                            Alice J. Teslicko, RMR
    My commission expires:
    December 14, 2026
    Commission No. HH300672
```