# EXHIBIT 263

UNDER PROTECTIVE ORDER

Page 1

```
 1            IN THE UNITED STATES DISTRICT COURT
 2             FOR THE EASTERN DISTRICT OF TEXAS
 3                      SHERMAN DIVISION
 4                          -o0o-
 5    THE STATE OF TEXAS, et        )
      al.,                          )
 6                                  )
              Plaintiffs,           )
 7                                  ) Civil Action No:
      v.                            ) 4:20-CV-957-SDJ
 8                                  )
      GOOGLE LLC,                   )
 9                                  )
              Defendant.            )
10    _____)
11
12
13
14       VIDEO RECORDED REMOTE 30(b)(6) DEPOSITION OF
15                    THE STATE OF UTAH
16                    BY MARIE MARTIN
17
18                    Taken via Zoom
19              On Tuesday, April 30, 2024
20                     At 2:48 p.m.
21
22
23
24    Job No. CS6671888
25    Reported by:  Emily A. Gibb, RPR, CSR, CCR
      CA CSR #14551, NV CCR #709
```

Page 2

```
 1                A P P E A R A N C E S
 2
 3    For the Plaintiff States:
 4            Alex Henthorn, Esq.
              THE LANIER LAW FIRM, P.C.
 5            10940 West Sam Houston Parkway North
              Suite 100
 6            Houston, Texas   77064
              (713) 659-5200
 7            alex.henthorn@lanierlawfirm.com
 8
      For the State of Utah:
 9
              Kevin McLean, Esq.
10            Scott Ryther, Esq.
              Michael Gadd, Esq.
11            ATTORNEY GENERAL'S OFFICE
              160 East 300 South
12            6th Floor
              Salt Lake City, Utah  84114
13            (801) 440-0545
              kmclean@agutah.gov
14            sryther@agutah.gov
              mgadd@agutah.gov
15
              Lauren Schultz, Esq.
16            KELLER POSTMAN
              150 North Riverside Plaza
17            Suite 4100
              Chicago, Illinois  606060
18            (312) 896-4516
              lauren.schultz@kellerpost.com
19
20
21
22
23
24
25
```

```
 1           A P P E A R A N C E S (Continued)
 2    For Google:
 3           Lauren Kaplin, Esq.
              Daphne Lin, Esq.
 4           FRESHFIELDS BRUCKHAUS DERINGER LLP
              700 13th Street, NW
 5           10th Floor
              Washington, DC  20005
 6           (202) 777-4518
              lauren.kaplin@freshfields.com
 7           daphne.lin@freshfields.com
 8
      Also Present:
 9
              Elin Alm, Esq., North Dakota
10
              John Olson, Esq., Idaho
11
              McKayla Largin, Legal Videographer
12
13
14                        * * *
15
16
17
18
19
20
21
22
23
24
25
```

Page 45

1  BY MS. KAPLIN:
2      Q.   Has the State of Utah conducted any
3  investigation to determine what sort of harms the
4  State of Utah has experienced as a result of Google's
5  alleged conduct?
6      A.   The State of Utah is part of a multistate
7  investigation, and it has been a part of that
8  investigation for several years now.  The State of
9  Utah has also -- has conducted responses to discovery
10 in this matter.  That's my answer.
11     Q.   So any investigation conducted by the State
12 of Utah into the harms that the State has experienced
13 was -- was done as part of the multistate
14 investigation to Google that occurred before this
15 suit was filed?
16     A.   The State of Utah has been part of the
17 multistate investigation, and thus -- and that is the
18 basis for any investigation that was conducted by
19 Utah.
20     Q.   Did that investigation include an
21 investigation into the harms experienced by the State
22 of Utah specifically?
23     A.   The State of Utah has no reason to believe
24 that it is in any way different from harms that are
25 nationwide that result from Google's monopolization

Page 46

```
 1    in these markets.
 2         Q.   What have you done to confirm that belief?
 3              MR. RYTHER:   Objection to -- you're --
 4    you're wandering into some privileged work product.
 5              MS. KAPLIN:   I'm asking about the
 6    investigation conducted and which had to have been
 7    produced to Google as part of discovery in this
 8    action.
 9              MR. RYTHER:   All right.
10              Well, if you can answer without divulging
11    work product, go ahead, Marie.
12              THE WITNESS:   What have I done to respond to
13    your question just now?
14    BY MS. KAPLIN:
15         Q.   No.   What has the state done -- so you
16    previously testified that the State of Utah has no
17    reason to believe that it is in any way different
18    from harms that are nationwide that resulted from
19    Google's monopolization in these markets.
20         A.   Yes.
21         Q.   And my question to you is:   What has the
22    State of Utah done to confirm that belief?
23         A.   The State of Utah confirms this belief
24    through being part of the multistate investigation
25    and litigation in this matter.
```

1  Q.  Right.  And I previously asked whether the
2  investigation conducted by the State of Utah
3  investigated -- sorry.  Let me strike that and
4  restart.
5       I previously asked whether the multistate
6  investigation that Utah was a part of included an
7  investigation into the harms experienced by the State
8  of Utah specifically.  In response to that, you said
9  Utah has no reason to believe that it's any
10 different.  And I asked what you've -- what the State
11 of Utah has done to confirm that belief.
12      And I think your response is then going full
13 circle back to being part of the investigation.  So I
14 wanted to just ask as whether part of the
15 investigation the State of Utah did anything to
16 confirm that -- what and to what extent it was harmed
17 by Google's alleged conduct?
18 A.  To confirm that we are any different from
19 other states, I think -- or from nationwide conduct
20 would be trying to prove a negative.  What have we
21 done?  We've been part of the multistate
22 investigation.  We have citizens who we know were
23 harmed by this conduct, and we have no reason to
24 believe that we're any different from other -- that
25 Utah consumers, advertisers and publishers are any

Page 48

```
 1   different from other states or from nationwide
 2   conduct in this matter.
 3        Q.   Can you identify the citizens you just
 4   referred to who you know were harmed by this conduct?
 5        A.   I can identify at least some who were
 6   consumers of Google advertising or Google -- I'm
 7   sorry, of Google's, who were harmed by the conduct.
 8             Now, firstly, all consumers in the state of
 9   Utah, all 3.3 million, or at least that part of those
10   who are Internet users, which is greater than
11   90 percent, would be harmed by Google's conduct
12   because that's harm which accrues to the general
13   welfare and economy of the state.
14             Next, as -- as to specific consumers of
15   Google's products, the two consumers who you saw in
16   the deposition previously, Melanie Hall's deposition,
17   were indirect purchasers of Google -- Google's
18   products.
19             Another consumer of Google's products, like
20   if you want to name certain persons, is DCP itself.
21   As you know from looking at -- from watching -- I'm
22   sorry, from deposing Ms. Hall extensively about DCP's
23   purchases, they are also a consumer of Google's
24   products, they are an advertiser.
25             Other advertisers in the state of Utah that
```

1  I can name are Penna Powers.
2          You want me to talk about publishers?
3      Q.  I was actually focusing on individual
4  citizens, so real persons.
5      A.  The two consumers that were discussed during
6  Melanie Hall's deposition are two specific persons.
7  Additionally, all persons in the state of Utah who
8  have any exposure to the Internet have a harm that's
9  associated with Google's conduct.
10     Q.  What have you done to determine that all
11 users of the Internet in the state of Utah have
12 been -- have had exposure to harm associated with
13 Google's conduct?
14     A.  In order -- so all -- I may have misspoke.
15 All consumers in the state of Utah are harmed by
16 Google's conduct because they are part of the class
17 of persons who are part of the -- they're affected by
18 Google's harms to the general welfare and economy of
19 the state.
20         What have I done?  I found information from
21 the US Census Bureau which told us how many Utah
22 consumers there are.  They're a percentage that are
23 exposed to the Internet as well as Utah being a part
24 of the multistate investigation and litigation in
25 this matter.

1    Q.   You've mentioned a couple times harm to the
2    general welfare and economy of the State of Utah.
3         Can you tell me what that means?
4    A.   I'm not an expert.  I only have 12 credits
5    towards a master of science -- 15 in a couple of
6    days -- in applied economics.  I am not an expert at
7    all in this field.  We would leave that to expert
8    testimony.
9         In terms of harms to the general welfare and
10   economy of the state, I would refer you to the
11   responses to Interrogatories No. 4 and 5, which list
12   out harms which accrue to the entire nation, to
13   consumers in that nation, advertise -- and as well as
14   advertisers and publishers that result from Google's
15   conduct.
16        I can specify further, if you like.
17   Q.   How widespread is the harm to the State of
18   Utah?
19   A.   It is ubiquitous throughout the state.
20   Q.   And to measure that harm, what have you
21   done?
22   A.   I have determined the number of consumers in
23   the state and the number of businesses in the state,
24   as well as Utah being a part of the multistate
25   investigation and litigation.

Page 114

REPORTER'S CERTIFICATE

STATE OF UTAH     )
                  )
COUNTY OF UTAH    )

I, EMILY A. GIBB, a Certified Shorthand Reporter and Registered Professional Reporter, hereby certify:

THAT I reported the taking of the deposition of MARIE MARTIN, commencing on April 30, 2024, at 2:48 p.m.

THAT prior to being examined, the witness was placed under oath to tell the truth, the whole truth, and nothing but the truth; that the proceedings were taken down by me in shorthand and thereafter my notes were transcribed through computer-aided transcription; and the foregoing transcript constitutes a full, true, and accurate record of such testimony adduced and oral proceedings had, and of the whole thereof.

I further certify that I am in no way related to any of the parties, nor I am I financially interested in the outcome of the case.

( ) Review and signature was requested.
( ) Review and signature was waived.
( ) Review and signature was not requested.

IN WITNESS THEREOF, I have subscribed my name on this 1st day of May, 2024.

*Emily A. Gibb* (signature)

Emily A. Gibb, RPR, CSR, CCR