# EXHIBIT 6
# FILED UNDER SEAL

HIGHLY CONFIDENTIAL

Page 1

```
1        IN THE UNITED STATES DISTRICT COURT
          FOR THE EASTERN DISTRICT OF TEXAS
2                   SHERMAN DIVISION
3
     THE STATE OF TEXAS, ET AL.,  §
4                                 §
                    Plaintiffs,   § CASE NO.
5                                 § 4:20-cv-00957-SDJ
               vs.                §
6                                 §
     GOOGLE LLC,                  §
7                                 §
                    Defendant.    §
8
9
10              HIGHLY CONFIDENTIAL
11
12              Remote deposition of ▮▮▮▮▮▮
13    ▮▮▮▮  taken in the above-entitled matter before
14   Suzanne J. Stotz, a Certified Shorthand
15   Reporter (Texas License No. 11942), Certified
16   Realtime Reporter, Registered Professional
17   Reporter, and Notary Public of the States of
18   New York and Texas, on Wednesday, May 1, 2024,
19   commencing at 9:05 a.m. EDT.
20
21
22
23
24   NY Notary: 01ST0024070
25     Job No. MDLG6673200
```

                                                              Page 2

 1     A P P E A R A N C E S:
 2
 3     FOR THE PLAINTIFFS:
 4          (Via Videoconference)
            NORTON ROSE FULBRIGHT US LLP
 5          BY:  GERALDINE W. YOUNG, ESQ.
            1301 McKinney
 6          Suite 5100
            Houston, Texas 77010
 7          (713) 651-5151
            geraldine.young@nortonrosefulbright.com
 8
                 - and -
 9
            (Via Videoconference)
10          NORTON ROSE FULBRIGHT US LLP
            BY:  MARISA MADARAS, ESQ.
11          799 9th Street NW
            Suite 1000
12          Washington, DC 20001
            (202) 662-0200
13          marisa.madaras@nortonrosefulbright.com
14
15     FOR THE DEFENDANT:
16          (Via Videoconference)
            FRESHFIELDS BRUCKHAUS DERINGER LLP
17          BY:  JUSTINA SESSIONS, ESQ.
            855 Main Street
18          Redwood City, California 94063
            (650) 618-9250
19          justina.sessions@freshfields.com
20               - and -
21          (Via Videoconference)
            FRESHFIELDS BRUCKHAUS DERINGER LLP
22          BY:  ERIC MAHR, ESQ.
            700 13th Street, NW
23          10th Floor
            Washington, DC 20005
24          (202) 777-4545
            eric.mahr@freshfields.com
25

```
                                                      Page 3
 1     A P P E A R A N C E S (Continued):
 2
 3     FOR THE DEFENDANT (Continued):
 4
              (Via Videoconference)
 5            FRESHFIELDS BRUCKHAUS DERINGER LLP
              BY:  TINA LaRITZ, ESQ.
 6            3 World Trade Center, 51st Floor
              175 Greenwich Street
 7            New York, New York 10007
              (212) 277-4000
 8            tina.laritz@freshfields.com
 9
10
11     ALSO PRESENT:
12            David Lane, Videographer
13            Jon Int-Hout, Trial Tech
14            Jonathan Jaffe
              c/o Texas Attorney General's Office
15
              William Shieber
16            c/o Texas Attorney General's Office
17            Brian Richter
              c/o Texas Attorney General's Office
18
              Melonie DeRose
19
              ████  ████████
20            c/o Google LLC
21
22
23
24
25
```

Page 110

```
 1    BY MS. YOUNG:
 2         Q.    The 2018 market share document
 3    we've been discussing, that was a record that
 4    Google created in conducting its business,
 5    correct?
 6         A.    The document that I'm referring to
 7    was a business document in which a piece of
 8    that small document took a look -- referenced a
 9    share.  In terms of -- yeah, that pretty
10    much -- it referenced a share.
11         Q.    What product was that share
12    attached to?
13         A.    I'm not -- I'm not a hundred
14    percent sure, but I did see market share
15    reference in that doc.
16         Q.    What market was that share attached
17    to?
18         A.    Advertising, maybe AdX or GAM --
19    oh, definitely was not GAM.  I want to say it
20    might have been just advertising.
21               I -- I don't know, Ms. Young.  I
22    don't recall the specifics.  I do recall seeing
23    a market share, though.
24         Q.    Has there been any instruction to
25    Google employees to not conduct market share
```

Page 111

1    calculations?
2         A.    Absolutely.  All Google employees,
3    specifically in the strategic realm, has been
4    instructed -- just generic -- generic Google
5    employees have been instructed not to do market
6    share calculations.
7         Q.    Who has given that instruction?
8         A.    As part -- internal counsel has
9    advised us, and as part of our PGTM team, it is
10   a general understanding within Google that we
11   do not do market share analysis.  It is not
12   part of day-to-day operations.
13        Q.    How has that instruction been
14   communicated?
15        A.    It comes up in, like, every
16   meet- -- in a lot of meetings.  From again,
17   communication from internal counsel,
18   communication from the leaders of the
19   organization in terms of market share analysis
20   is not something that we should be doing on a
21   regular -- should not be doing period, not even
22   on a regular basis.
23        Q.    How long has that been the case
24   that Google employees have been instructed not
25   to conduct market share calculations?

Page 112

```
1        A.    It has been the case definitely
2    since I joined the past ▇▇▇ years.  Before
3    that, that's also, from my understanding, with
4    my peers, that was also the understanding that
5    market share cannot be part of our operations.
6        Q.    When was the first time that you
7    received that instruction?
8        A.    The first time I received it was
9    when I joined.  As part of the ▇▇▇▇▇▇▇▇▇▇▇▇▇▇
10   when I joined, it was very clear we cannot do
11   market share analysis; and I was running the
12   strategic team at that point in time.
13       Q.    When you say "it was very clear,"
14   how was it made to you very clearly?
15            MS. SESSIONS:  And I'm just going
16       to caution you in giving your answer.  You
17       can answer that question at a high level,
18       but don't reveal any specific
19       conversations that you may have had with
20       Google's lawyers.
21            You can answer the question.
22            THE WITNESS:  Okay.
23            General counsel as well as
24       conversations within my own team.  I have
25       actually led and made sure that market
```

Page 113

1          share information is not doing that we
2          disclosed.
3      BY MS. YOUNG:
4          Q.    Have these instructions been given
5      in writing?
6          A.    That's a good question.  I want to
7      say maybe, but I'm not a hundred percent sure
8      because it's -- it's pretty adamant.  So maybe
9      it has been done in writing, but I'm not a
10     hundred percent sure; but the mindset is
11     definitely no market share.
12         Q.    Is there a policy with respect to
13     this directive that no Google employees conduct
14     market share calculations?
15               MS. SESSIONS:  Object to the form.
16               You may answer.
17               THE WITNESS:  Ms. Young, that's the
18          policy since I've joined.  Whether or not
19          it's a written policy, I'm not a hundred
20          percent sure; but that's the mindset.
21               Market share is not something we do
22          as part of our operates -- day-to-day
23          operations.
24     BY MS. YOUNG:
25         Q.    Is that policy for Google employees

HIGHLY CONFIDENTIAL

Page 338

1      C E R T I F I C A T E

4      I, SUZANNE J. STOTZ, a
5   Registered Professional Reporter, Certified
6   Realtime Reporter, and Notary Public in and for
7   the State of New York, do hereby certify that
8   the foregoing is a true and accurate transcript
9   of the stenographic above-captioned matter.

13      SUZANNE J. STOTZ, RPR, CRR
14      Notary Commission Expires 4/29/28

18   DATED: May 2, 2024

21   NOTE:  THE CERTIFICATE APPENDED TO THIS
22   TRANSCRIPT DOES NOT APPLY TO ANY REPRODUCTION
23   OF THE SAME BY ANY MEANS, UNLESS UNDER THE
24   DIRECT CONTROL AND/OR DIRECTION OF THE
25   CERTIFYING COURT REPORTER.