**\*FILED UNDER SEAL\***

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

|  |  |
|---|---|
| The State of Texas, et al., | |
| Plaintiffs, | |
| v. | Case No. 4:20-cv-00957-SDJ |
| Google LLC, | Hon. Sean D. Jordan |
| Defendant. | |

## PLAINTIFF STATES' MOTION FOR SPOLIATION SANCTIONS

**\*FILED UNDER SEAL\***

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................. 1

    A.    Google's Chat and Document Retention Policies................................... 1

    B.    Google Instructed its Employees To Use "History Off" Chats for Work-Related Communications Because They Would Not Be Preserved for Future Litigation. ......................................................................................... 3

    C.    Google Intentionally Failed To Preserve Large Quantities of Relevant Chats. ...................................................................................................... 5

LEGAL STANDARD......................................................................................................... 8

ARGUMENT ..................................................................................................................... 9

    A.    Relevant Chats That Should Have Been Preserved Were Permanently Deleted Because Google Failed To Take Reasonable Steps To Preserve Them. ...................................................................................................... 9

    B.    Rule 37(e)(2) Sanctions Are Warranted Because Google Intentionally Failed To Preserve Chats for the Purpose of Depriving Opponents of Their Use in Litigation. ..................................................................................... 12

    C.    Rule 37(e)(1) Sanctions Are Warranted Because Plaintiffs Are Prejudiced by Google's Failure To Preserve Chats. ............................................... 13

CONCLUSION................................................................................................................. 15

**\*FILED UNDER SEAL\***

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allstate Texas Lloyd's v. McKinney*,
   964 F. Supp. 2d 678 (S.D. Tex. 2013) .......................................................................11

*Anderson v. Sotheby's Inc. Severance Plan*,
   No. 04 CIV. 8180 (SAS), 2005 WL 2583715 (S.D.N.Y. Oct. 11, 2005) ...............................11

*Balancecxi, Inc. v. Intl. Consulting*,
   No. 1:19-CV-0767-RP, 2020 WL 6886258 (W.D. Tex. Nov. 24, 2020), *report
   and recommendation adopted sub nom. BalanceCXI, Inc. v. Intl. Consulting &
   Research Group, LLC*, No. 1:19-CV-767-RP, 2021 WL 2194900 (W.D. Tex.
   Feb. 3, 2021) ...........................................................................................12, 13, 15

*Bellamy v. Wal-Mart Stores, Texas, LLC*,
   No. SA-18-CV-60-XR, 2019 WL 3936992 (W.D. Tex. Aug. 19, 2019) ...............................11

*BHI Energy I Power Services LLC v. KVP Holdings, LLC*,
   No. 3:22-CV-1981-L-BN, 2024 WL 1607065 (N.D. Tex. Apr. 12, 2024)
   ................................................................................................ 8-10, 12, 14, 15

*Cleary v. Am. Airlines, Inc.*,
   No. 4:21-CV-00184-O, 2022 WL 5320126 (N.D. Tex. July 22, 2022)..................................15

*Deutschland GmbH v. Glenmark Pharm. Inc.*,
   No. 07-CV-5855, 2010 WL 2652412 (D.N.J. July 1, 2010), *aff'd sub
   nom.Sanofi-Aventis Deutschland GmbH v. Glenmark Pharm. Inc., USA*, 748
   F.3d 1354 (Fed. Cir. 2014) .........................................................................................13

*Disedare v. Brumfield*,
   No. CV 22-2680, 2024 WL 1526699 (E.D. La. Apr. 9, 2024) ....................................... 10-15

*Edwards v. Junior State of Am. Found.*,
   No. 4:19-CV-140-SDJ, 2021 WL 1600282 (E.D. Tex. Apr. 23, 2021)...............8, 9, 11, 14, 15

*In re Google Play Store Antitrust Litig.*,
   No. 20-CV-05671, 2024 WL 3302068 (N.D. Cal. July 3, 2024)...............................................5

*In re Google Play Store Antitrust Litig.*,
   664 F. Supp. 3d 981 (N.D. Cal. 2023) .................................................................5, 11, 13, 14

*Guzman v. Jones*,
   804 F.3d 707 (5th Cir. 2015) ....................................................................................9

**\*FILED UNDER SEAL\***

*LendingTree, LLC v. Zillow, Inc.*,
　　No. 3:10-CV-00439-FDW, 2014 WL 1309305 (W.D.N.C. Mar. 31, 2014) ..........................11

*Miramontes v. Peraton, Inc.*,
　　No. 3:21-CV-3019-B, 2023 WL 3855603 (N.D. Tex. June 6, 2023) ......................................15

*Owens v. Bd. of Supervisors of Louisiana State U. and Agric. and Mech. College*,
　　695 F. Supp. 3d 750 (M.D. La. 2023) ............................................................................... 10-14

*Sanchez v. Thomas*,
　　No. 1-22-CV-01197-DII, 2024 WL 4706583 (W.D. Tex. Oct. 9, 2024)................................12

*Trade Group, Inc. v. BTC Media, LLC*,
　　No. 4:23-CV-00555-P, 2024 WL 3513475 (N.D. Tex. July 23, 2024) ......................11, 13, 14

*United Healthcare Services, Inc. v. Rossel*,
　　No. 3:21-CV-1547-L-BT, 2024 WL 1252365 (N.D. Tex. Mar. 21, 2024)
　　................................................................................................................................... 9-11, 15

*United States v. Google LLC*,
　　No. 20-CV-3010 (APM), 2024 WL 3647498 (D.D.C. Aug. 5, 2024)....................................13

*United States v. Google LLC*,
　　No. 23-cv-108 (E.D. Va. Sept. 13, 2024) ..........................................................................3, 13

**Rules and Statutes**

Fᴇᴅ. R. Cɪᴠ. P. 37...........................................................................................................8, 9, 12–15

**\*FILED UNDER SEAL\***

<u>**TABLE OF EXHIBITS**</u>

| Appendices | Description |
|---|---|
| A | Deposition Excerpts Showing Daily Chats Use |
| B | Deposition Excerpts Showing Business Chats Use |
| C | Deposition Excerpts Showing No Attempt to Change History Settings While on Hold |
| D | Chats Involving Custodians While on Hold in Which Participants Discussed Turning History "Off" |
| E | Chats Involving Custodians in Which Participants Acknowledged History "Off" Was to Suppress Discovery |
| F | Custodian Hold Dates |

| Exhibit No. | Description |
|---|---|
| 1 | Email produced by Google dated 9/16/2008 from ████████ to ████ ████, titled "Re: [Googlers] Business communications in a complicated world" (GOOG-DOJ-29864619–20) |
| 2 | Declaration of Jacob Hochstetler in Support of Plaintiff States' Motion for Spoliation Sanctions |
| 3 | Excerpts from the Deposition of Google's CEO, Sundar Pichai, taken under oath on August 30, 2024 in this Matter |
| 4 | Excerpts from the Deposition of ████████, taken under oath on May 17, 2024 in this Matter |
| 5 | Email produced by Google dated 11/5/2007 from ████████ to ████████ ████████, titled "Central Region Weekly Update: Week of November 5, 2007." (GOOG-DOJ-19116303–310) |
| 6 | Document produced by Google titled "You Said What?!" (USDOJ-GOOGEX-000253–304) |

-v-

**\*FILED UNDER SEAL\***

| Exhibit No. | Description |
|---|---|
| 7A-7D | Redacted litigation holds produced by Google (GOOG-AT-MDL-C-000087449–451 (Ex. 7A), GOOG-AT-MDL-C-000087452–455 (Ex. 7B), GOOG-AT-MDL-C-000087456 (Ex. 7C), GOOG-AT-MDL-C-000087457–66 (Ex. 7D) |
| 8 | Chat conversation produced by Google between ▆▆▆▆▆ and ▆▆▆▆▆ ▆, dated 4/4/2016 (GOOG-AT-MDL-B-004376995–98) |
| 9 | Excerpts of the Transcript of Hearing in the Case of the *United States, et al. v. Google LLC*, No. 1:23-cv-108 (E.D. Va., August 27, 2024) |
| 10 | Chat Conversation Produced by Google, dated 10/25/2021 (GOOG-AT-MDL-B-004439510–12) |
| 11 | Chat Conversation Produced by Google, dated 9/7/2021 (GOOG-AT-MDL-012219359–61) |
| 12 | Chat Conversation Produced by Google, dated 9/4/2019 (GOOG-AT-MDL-B-003924905–07) |
| 13 | Chat conversation produced by Google, dated 8/11/2022 (GOOG-AT-MDL-008023410) |
| 14 | Chat conversation produced by Google, dated 2/8/2022 (GOOG-AT-MDL-008033073–76) |
| 15 | Excerpts of Entries from May 2013 of a Privilege Log Produced by Google in this Matter |
| 16 | Civil Investigative Demand Issued on September 9, 2019 by the Office of the Attorney General of the State of Texas to Alphabet Inc. (GOOG-UT-00000034–72) |
| 17 | Letter Sent from Google's Counsel in this Matter (Robert J. McCallum) to Plaintiffs' Counsel (Zeke DeRose III, Geraldine Young, and Marc Collier), dated August 29, 2024 |

**\*FILED UNDER SEAL\***

| Exhibit No. | Description |
|---|---|
| 18 | Entry dated 7/29/2017 Excerpted from a Privilege Log Produced by Google in this Matter |
| 19 | Entry dated 8/1/2016 Excerpted from a Privilege Log Produced by Google in this Matter |
| 20 | Entry dated 2/27/2015 Excerpted from a Privilege Log Produced by Google in this Matter |
| 21 | Excerpts from a Privilege Log Produced by Google in this Matter |
| 22 | Entry dated 12/5/2018 Excerpted from a Privilege Log Produced by Google in this Matter |
| 23 | Email Produced by Google dated 6/8/2007 from Victoria Rupeka to multiple recipients, titled "Double Click Media Clips 8.6.07" (GOOG-TEX-00803477–78) |
| 24 | Email Produced by Google dated 5/24/2013 from Neal Mohan to Susan Wojcicki, titled "Fwd: Press Reports: FTC Investigation & Google Display" (GOOG-DOJ-18360214–221) |
| 25 | Email produced by Google dated 9/9/2019 from Kevin Yingling to multiple recipients, titled "Frd: CID to Alphabet Inc." (GOOG-NE-11319529) |
| 26 | Chat conversation produced by Google, dated 12/19/2018 (GOOG-AT-MDL-B-004633186–96) |
| 27 | Chat conversation produced by Google, dated 9/16/2019 (GOOG-AT-MDL-018279549) |
| 28 | Chat conversation produced by Google, dated 9/18/2019 (GOOG-NE-12976885–87) |
| 29 | Chat conversation produced by Google, dated 1/29/2019 (GOOG-DOJ-AT-00743521) |

**\*FILED UNDER SEAL\***

| Exhibit No. | Description |
|---|---|
| 30 | Excerpts of the direct and cross examination of Google employee Christopher LaScala, taken under oath on September 13, 2024 in the case of the United States, et al. v. Google LLC, No. 1:23-cv-108 (E.D. Va.) |
| 31 | Chat conversation produced by Google, dated 7/28/2020 (GOOG-AT-MDL-B-006365520–23) |
| 32 | Chat conversation produced by Google, dated 8/31/2020 (GOOG-AT-MDL-004074544–46) |
| 33 | Chart titled "Google AdTech: Privilege Log Analysis (As of: May 16, 2024) Anticipation of Litigation," bearing the label Exhibit 423 from the deposition of Genaro Lopez on May 17, 2024 in this Matter |
| 34-A | Declaration of Ignatius Grande in Support of Plaintiff States' Motion for Spoliation Sanctions (Pt. 1: Declaration and Exs. 1-15) |
| 34-B | Declaration of Ignatius Grande in Support of Plaintiff States' Motion for Spoliation Sanctions (Pt. 2: Exs. 16-46) |

**\*FILED UNDER SEAL\***

## INTRODUCTION

For decades, Defendant Google LLC ("Google") used an instant messaging application ("Google Chat")[1] for its employees to communicate. Knowing such communications ("Chats") could be "used against" it in litigation, Ex. 1 (9/16/08 Email) at -619-20, Google intentionally implemented training and document retention policies from 2008 until 2023 that destroyed the vast majority of these Chats, including those sent and received by employees subject to litigation holds. Google did this deliberately and in bad faith.  Take it from Google's Chief Legal Counsel, who told employees *in writing* that its Chat retention policies were *specifically designed* to ensure most Chats would not be available to adversaries in future litigation.  The scheme worked.  *Millions* of Chats between Google employees involved in the misconduct alleged in this litigation have been destroyed.  These Chats contained relevant evidence on intent, deception, and knowledge that is not obtainable from any other source.

Google's intentional, bad faith spoliation has prejudiced Plaintiffs, warranting sanctions. Specifically, the Court should (1) instruct the jury that (i) Google had an obligation to preserve Chats, (ii) Google intentionally deleted millions of Chats, and (iii) the jury must presume the deleted Chats contained information unfavorable to Google, (2) find that Chats likely would have provided further evidence against Google's motions for summary judgment; (3) award Plaintiffs' fees and costs associated with this motion; and (4) impose any other just sanction.

## BACKGROUND

### A.  Google's Chat and Document Retention Policies.

Google Chat is an instant messaging tool designed by Google that allows employees to communicate internally.  Ex. 4 (Dep. ███████) at 77:18-78:5, 99:6-9, 104:12-22; Exs. 34-A and

---

[1] "Google Chat" was previously called "Google Talk" or "Google Hangouts."  All functioned similarly, were subject to the same retention policies, and are referred to as "Google Chat."

**\*FILED UNDER SEAL\***

34-B (collectively, "Ex. 34"; Declaration of I. Grande) ¶ 5.b, ¶ 10.a.  Google Chat contains a "history" setting that can be turned "on" or "off" for each Chat conversation.  Ex. 4 at 79:11-18. Chats sent or received when the history is turned "off" are *deleted* after 24 hours, regardless of whether any employee participating in the Chat is subject to a litigation hold.  *Id*. at 75:24-76:1, 77:7-24, 78:10-19, 136:6-13, 242:13-18, 244:11-22.[2]  Google designed Google Chat so that history "off" Chats never pass through Google's proprietary preservation software (Vault) used to enforce its retention policies.  *Id*. at 18:21-19:10, 77:7-78:2; *see* Ex. 34 ¶ n. 14.  Deleted Chats cannot be recovered.  Ex. 4 at 90:2-9.

From 2008 to February 2023, to "help avoid inadvertent retention of instant messages" that could "become subject to review in legal discovery[,]" Google made "history off" the default setting for almost all employees, even those subject to litigation holds.  *Id*. at 100:25-01:12; Ex. 1 at -619.[3]  Google had the ability to set Chat history to "on" as the default (indeed, that default setting was offered to Google customers).  Ex. 4 at 146:21-49:11, 156:24-57:4; Ex. 34 ¶ 5.o.  It was simply not what Google chose for Google employees' Chats.  Ex. 4 at 146:21-49:11, 156:1-57:4; *see* Ex. 34 ¶ 10.e-f.  Until February 2023, Google left it up to its employees subject to litigation holds to decide for themselves whether to switch Chat history from the default "off" to "on."[4]  Remarkably, even a conscientious employee had to turn history "on" for *each* Chat conversation; he had no ability to change the default setting for all conversations he was in.  Ex. 4

---

[2] The retention period for Chats where the history is turned "on" varies.  *Id*. at 73:17-74:5.  Absent a hold, "history on" Chats are retained at least 30 days and at most 18 months.  *Id*. at 75:6-76:1.

[3] The only exception was "threaded rooms" (*i.e.*, chats sent to many recipients that could branch off into additional conversations), but even for those, Chats were not preserved more than 24 hours unless a participant under a litigation hold *sent* a message.  Ex. 4 at 134:17-21, 180:23-84:10.

[4] Ex. 4 at 20:23-21:5, 136:6-13.  Unlike with Chats, the emails of employees under a litigation hold were preserved by default and such setting could not be overridden by those employees.  Ex. 4 at 122:4-23:8; Ex. 34 ¶ 5.q.

**\*FILED UNDER SEAL\***

at 79:3-18.  Within a particular Chat conversation, any messages sent or received prior to history being switched "on" were not preserved.[5]  Even after one participant turned history "on," any other participant could unilaterally turn history back "off," and any messages sent after would be deleted. Ex. 4 at 135:5-11, 175:2-7; Ex. 34 ¶ 5.p.  There is also no record in a produced Chat conversation of when history was turned "off" and "on."  Ex. 34 ¶ 10.o-p.  Plaintiffs therefore have no way of knowing whether there are portions of each produced Chat that were not preserved.  *Id*.

Based on these design features, the onus was on each individual employee under a litigation hold to determine *in real time* whether a particular *part* of a particular Chat might be relevant to *any* actual or reasonably anticipated litigation.  Ex. 4 at 126:14-27:5; Exs. 7A-D (Redacted Litigation Holds); Ex. 34 ¶ 5.o.  The only guidance Google offered those employees was the litigation hold notices themselves.  Ex. 4 at 185:18-23, 187:6-88:21 (Google's chat retention policy did not instruct employees to "turn history on" for discussions related to a litigation hold until October 2021.  Google did not audit whether its employees complied with the litigation holds; Google's corporate representative on Chats did not even "know if there is a way to do it."  Ex. 4 at 121:5-15, 204:2-05:6.  *See also* Ex. 34 ¶ 10.s.

### B. Google Instructed its Employees To Use "History Off" Chats for Work-Related Communications Because They Would Not Be Preserved for Future Litigation.

As it faced antitrust investigations over its proposed acquisition of DoubleClick and other anticompetitive conduct, Google warned employees as early as November 2007 not to create written records that "last forever" and could be "scrutinized by . . . antitrust regulators," particularly on competition-related topics including market definition and dominance, "competitors," or "bundl[ing]" products to "lock in" consumers.  Ex. 5 (11/5/07 Email) at -303-

---

[5]Ex. 4 at 79:20-81:12, 90:20-91:10; Ex. 30 (LaSala Tr., *United States v. Google LLC*, No. 23-cv-108 (E.D. Va. Sept. 13, 2024)) at 138:2-39:4.  Prior to February 2023, the first message in any Chat would likely never be preserved.

*FILED UNDER SEAL*

04.  *See also* Ex. 34 ¶¶ 5.q, 10.q.  In September 2008, Google's Chief Legal Officer Kent Walker (Ex. 4 at 22:3-5), sent an email to employees on "email and instant-messaging culture," warning that the company faced "several significant legal and regulatory matters"; and that "anything you write can become subject to review in legal discovery" and "may be used against" Google.  Ex. 1 (9/16/08 Email) at -619-20.  *In that same email*, he announced the new Google policy to "make 'off the record' the Google corporate default setting for [Chats]," noting that "'on the record' conversations become part of your (more or less) permanent record and are added to Google's long-term document storehouse." *Id*. at -619.

Google trained employees to follow this policy.  For example, since at least 2018, an interactive training for its employees,[6] warned them that Google is "constantly in the public eye . . . and the courthouse," that Google "often ha[s] to produce employee communications as evidence," and that employees therefore "need to be cautious in [their] communications."  Ex. 6 at -254 (ellipsis in original). Google taught employees that sending an "off the record" Chat is "[b]etter than sending [an] email" because "off the record" Chats "are not retained by Google as emails are." *Id.* at -264.  *See also* Ex. 34 ¶¶ 5.n., 5.q, 10.n

Employees took management's warnings to heart.  They regularly expressed concerns about the risks of preserving Chats that could later be produced in litigation.[7]  To avoid this issue,

---

[6] Ex. 6 ("You Said What?!"); Ex. 4 at 101:23-03:22; Ex. 12 (9/4/19 Chat) at -906.

[7] *See, e.g.,* Ex. 13 (8/11/22 Chat) (noting that Chat history being on "forever" is "probably not a great idea for a public company unless you want to end up getting deposed alot"); Ex. 14 (2/8/22 Chat) at -073 (explaining that Google's Chats policy was "a risk management issue" because "communication patterns [in one-to-one Chats] tend to be more hyperbolic and undisciplined" than in threaded rooms; another employee recognized the potential for spoliation, noting: "funnily enough, that's exactly why [a former employer] preserved it for 3 years – philosophy was 'if you're communicating using a company tool, assume it's legally discoverable'"); Ex. 26 (12/19/18 Chat) at -188 (confirming reason for history "off" chats was "for when we really *are* worried about something specifically ending up in court or resulting in Bad Stuff(tm)").

4

**\*FILED UNDER SEAL\***

they extensively used "history off" Chats to communicate with each other regarding substantive business issues, including ad-tech-related business.[8]    Because employees knew these communications were systemically destroyed, these Chats likely expressed candid Google employee reactions to, and comments about, Google's intentions and relevant misconduct that was not fully captured in the communications employees knew would be produced in this case.[9] Google's policy was so well ingrained that many of its designated custodians in this case *never* even *tried* to preserve their Chats.  App'x C (Dep. Excerpts Showing No Attempt To Change History Settings While on Hold).

Not until February 2023, around the time another federal court rebuked (and ultimately sanctioned) it for Chats spoliation,[10] did Google finally change Google Chat's default setting to "history on" and remove the ability for employees under litigation hold to turn it off.  Ex. 4 at 25:13-18, 134:3-11; Ex. 3 at 50:15-51:4; Ex. 34 ¶ 5.o.

### C.  Google Intentionally Failed To Preserve Large Quantities of Relevant Chats.

Google knew it was facing advertising technology ("ad tech") antitrust investigations and

---

[8] *See, e.g.,* App'x D (Chats Involving Custodians on Hold Discussing Turning History "Off"); App'x E (Chats Involving Custodians where Participants Acknowledged History "Off" Was To Suppress Discovery); Ex. 27 (9/16/19 Chat) (referring to "history off" Chats as an unpreserved "vegas"—*i.e.*, what's said in Chats stays in Chats); Ex. 34 ¶ 10.a-b(xii), c(iii); *see also infra.* at 5-8.  Even when discussions were initiated in threaded rooms or other "history on" Chats, employees often shifted to "history off" Chats to avoid retention of their continued communications.  *See, e.g.,* Ex. 10 (10/5/21 Chat) at -510; Ex. 11 (9/7/21 Chat) at -361.  Thus, many Chats in this case— the history "on" portion of which Google produced as responsive discovery—were at least partially destroyed.  App'x D; *see also* Ex. 2 ¶ 10.

[9] *See, e.g.*, Ex. 8 (4/4/16 Chat) at -997; Ex. 31 (7/28/20 Chat) (questioning lack of transparency in auction structure), Ex. 32 (8/31/20 Chat) at -546 ("when DV3 started bidding more intelligently and optimizing ROI for advertisers, it resulted in a massive shift in spend to Ad[X]"); *see also* Ex. 34 ¶¶ 5.c, 10.a-b(iii).

[10] *See In re Google Play Store Antitrust Litig. ("Play")*, 664 F. Supp. 3d 981, 993-94 (N.D. Cal. 2023) (characterizing Google's practices as "a 'don't ask, don't tell' policy for Chat preservation, at the expense of its preservation duties" and ordering monetary sanctions); *In re Google Play Store Antitrust Litig.*, No. 20-CV-05671, 2024 WL 3302068, at \*15 (N.D. Cal. July 3, 2024) (issuing permissive adverse inference instruction to jury as additional sanction).

**\*FILED UNDER SEAL\***

litigation before it chose to make "history off" the default setting for Chats in 2008 (and well before February 2023).[11]    The Special Master recognized that "Google's own privilege logs assert attorney client and work product privilege over DoubleClick and ad tech-related communications as far back as 2006." Dkt. #558 at 6-7.[12]  By 2013, Google specifically anticipated ad tech-related litigation.[13] And even Google concedes that it had an obligation to preserve evidence by September 2019, when Texas issued its first Civil Investigative Demand ("CID"), Ex. 16, and began identifying several ad tech custodians. Dkt.#585 at 12-17; *see also* Ex. 25 (9/9/19 Email). Google assured Plaintiffs in January 2020 that it was "taking reasonable and appropriate steps to ensure its custodians' compliance" with preservation obligations (Dkt. #545-5 at 4). Despite this representation, Google utterly failed to implement timely litigation holds on its employees.  Ex. 34¶ 10.k.  Of Google's 202 custodians in this matter, 61 were not placed on a litigation hold *until 2022 or later*, more than *3 years* after Texas issued the CID, *2 years* after Google represented that it had implemented litigation holds, and *16 years* after Google first anticipated ad tech litigation. Ex. 17 (8/29/24 Letter); App'x F (Custodian Hold Dates).  Since Google did not issue timely litigation holds, Chats were still not retained even if the history setting was turned "on." Ex. 4 at 94:23-95:18.

---

[11] *See, e.g.,* Ex. 34 ¶ 10.h.(i-xi); Ex. 5 (11/5/07 Email) at -303-04; Ex. 1 (9/16/08 Email) at -619-20;  Ex. 23 (8/6/07 Email) at -477 (discussing "antitrust issues surrounding the Google/DoubleClick Deal"); Ex. 24 (5/24/13 Email) (regarding 2013 FTC investigation into Google's ad business).

[12] *See also, e.g.,* Ex. 4 (Ex. 423); Ex. 4 at 59:16-61:22.

[13] *See, e.g.,* Ex. 34¶ 10.h.(i-xi); Ex. 24 (regarding 2013 FTC investigation into Google's ad business); Ex. 15 (Google 5/13 Privilege Log excerpts).  Google continued to anticipate such litigation in subsequent years. *See, e.g.,* Ex.34 ¶ 10.h.(i-xi); Ex. 21 (2/19/14-12/2/14 privilege log entries reflecting FTC investigation); Ex. 20 (2/27/15 Privilege Log No. GGPL-1031909716); Ex. 19 (8/1/16 Privilege Log No. GGPL-2210020836); Ex. 18 (7/29/17 Privilege Log No. GGPL-1010009884); Ex. 22 (12/5/18 Privilege Log No. GGPL-1190482012).  *See also* Ex. 4 (Ex. 423); Ex. 4 at 59:16-61:22.

**\*FILED UNDER SEAL\***

The predictable *and intended* result of Google's approach was Google destroyed millions of relevant Chat messages. Ex. 2 ¶ 11,13-15; Ex. 34 ¶ 10.t-w.  The few system-wide backend logs for Chats that Google has produced confirm what common sense dictates: employees subject to litigation holds did not vigilantly turn history on in the middle of conversations or if any other participant switched it off. Ex. 2 ¶ 5.[14]  Five individuals, including Sundar Pichai (Google's CEO), were custodians in both *Play* and this case, and Google produced the logs for those five custodians from the period from December 9, 2022, to February 14, 2023. Ex. 2 ¶ 2.  The logs showed that *none* of those five custodians *ever* affirmatively switched history "on"; it remained off until Google forced Chats history "on" in 2023.  *Id*. ¶ 5.  Google's policies resulted in the destruction of *96%* of Pichai's Chats from December 9, 2022, to February 8, 2023.  *Id*. ¶ 9.  Based on the number of history "off" messages reflected in the logs as to the five available custodians, Google's policies appear to have resulted in the deletion of about 20,000 Chat messages per custodian per year, totaling between 2.8 and 4 *million* Chat messages per year across all custodians to this litigation.. *Id*. ¶¶ 11, 13-15; Ex. 34 ¶ 10.t-w.

Many of these deleted Chats would have been relevant.  Of the witnesses Plaintiffs have deposed in this case, at least thirteen said they used Chats *daily*, sometimes sending and receiving *hundreds* per day; at least eight described how they used Chats to conduct business.  App'x A (Dep. Excerpts Showing Daily Chats Use); App'x B (Dep. Excerpts Showing Business Chats Use); Ex. 34 ¶¶ 10.a-b.  Both Google's corporate representative on Chats and its CEO (Pichai) agreed

---

[14] There was a system-wide backend log which contained a record of when employees switched Chat history "on" or "off" within Chat conversations. Ex. 4 at 218:25-22:4.  But Google only used these logs for debugging purposes and only maintained them for 55 days on a rolling basis.  *Id*. at 219:12-20:20.  As a result, the only meaningful logs Google produced in this case were a handful of logs from a 68-day period (December 9, 2022, to February 14, 2023) that it previously produced in the *Play* antitrust litigation.  *Id*. at 218:25-22:4; Ex. 2 ¶ 2.

**\*FILED UNDER SEAL\***

that Google's employees use Chats daily as an essential tool.[15]  The few preserved Chats that Google produced demonstrate that employees used Google Chat to discuss information relevant to Plaintiffs' claims, including Chats that are evidence of deception and intent to monopolize.[16]

To date, Google has produced over six million documents, only approximately 14-15 thousand of which are Chat conversations.  Ex. 2 ¶ 23; Dkt. #374 at 2.  By contrast, Google produced approximately 4.2 million emails.  Ex. 2 ¶ 22.  Of the Chats produced, none were from the 2000-2010, one from 2011, and only a handful from 2012-2015; the vast majority were from 2020-2023.  *Id.* ¶ 19.

## LEGAL STANDARD

Rule 37(e) authorizes sanctions against a party that fails "to take reasonable steps to preserve" electronically stored information ("ESI") "that should have been preserved in the anticipation or conduct of litigation" and "cannot be restored or replaced through additional discovery[.]"  FED. R. CIV. P. 37(e).  *See also Edwards v. Junior State of Am. Found.*, No. 4:19-CV-140-SDJ, 2021 WL 1600282, at \*7 (E.D. Tex. Apr. 23, 2021).  Once these predicate elements have been established, courts consider the "possible remedies under Rules 37(e)(1) or 37(e)(2), which 'have different requirements before sanctions can be imposed and can lead to different sanctions.'"  *BHI Energy I Power Services LLC v. KVP Holdings, LLC*, No. 3:22-CV-1981-L-BN, 2024 WL 1607065, at \*9 (N.D. Tex. Apr. 12, 2024) (citation omitted).  If another party has been

---

[15] Ex. 4 at 228:3-29:6; Ex. 3 at 33:6-11 (confirming that employees "definitely use Chat for regular communication as part of [their] ongoing work"), 41:17-42:6.  Some Google witnesses claimed not to use Chats for substantive purposes (Dkt. #545-2 at 3), but even the small number of Chats produced prove that testimony wrong.  *See, e.g.,* Ex. 28 (9/18/19 Chat) at -885; Ex. 29 (1/29/19 Chat).  In any event, Google cannot show that *all* employees don't use for substantive purposes.

[16] *see* Ex. 34 ¶¶ 10.a-b(xii); *see also, e.g.,* Ex. 8 at -997 (employee noting that the "lowering of floors" on AdX made him "sick").  Plaintiffs have previously identified other relevant topics Google employees discussed in the Chats Google did manage to preserve.  Dkt. #374 at 4 (identifying topics and citing exhibits).

8

*FILED UNDER SEAL*

prejudiced by the "loss of the information," the court "may order measures no greater than necessary to cure the prejudice[.]" FED. R. CIV. P. 37(e)(1). Additionally, if the court finds that the spoliating party "acted with the intent to deprive another party of the information's use in the litigation[,]" the court may impose more severe sanctions, such as (i) a presumption "that the lost information was unfavorable to the party;" (ii) an instruction to "the jury that it may or must presume the information was unfavorable to the party;" or (iii) "dismiss[ing] the action or enter[ing] a default judgment." FED. R. CIV. P. 37(e)(2).[17]

It is generally the movant's burden to demonstrate by a preponderance of the evidence that spoliation sanctions are warranted. *See BHI*, 2024 WL 1607065, at *13; *United Healthcare Services, Inc. v. Rossel*, No. 3:21-CV-1547-L-BT, 2024 WL 1252365, at *5 (N.D. Tex. Mar. 21, 2024). However, Rule 37(e) "does not place a burden of proving or disproving prejudice on one party or the other." FED. R. CIV. P. 37, Adv. Comm. Notes (2015 Amendment). Rather, it is left to the Court "to determine how best to assess prejudice in particular cases." *Id*. *See also BHI*, 2024 WL 1607065, at *13.

## **ARGUMENT**

### **A. Relevant Chats That Should Have Been Preserved Were Permanently Deleted Because Google Failed To Take Reasonable Steps To Preserve Them.**

Rule 37(e)'s four predicate elements have been established here. *See Edwards*, 2021 WL 1600282, at *7. Google did not preserve its employees' Chats despite its obligation to do so. *See* Ex. 34 ¶ 10.t. A party's duty to preserve evidence arises once it knows or should have known that the evidence may be relevant to the litigation. *See id.*; *United Healthcare*, 2024 WL 1252365, at

---

[17] The "intent" that must be shown under Rule 37(e)(2) is equivalent to the "bad faith" that must be shown for courts to impose similar spoliation sanctions under their inherent authority. *See Guzman v. Jones*, 804 F.3d 707, 713 (5th Cir. 2015) ("Bad faith, in the context of spoliation, generally means destruction for the purpose of hiding adverse evidence.").

*FILED UNDER SEAL*

*7.  "A variety of events may alert a party to the prospect of litigation."  *Owens v. Bd. of Supervisors of Louisiana State U. and Agric. and Mech. College*, 695 F. Supp. 3d 750, 756-57 (M.D. La. 2023).  "Once litigation is reasonably anticipated, a potential party to that litigation 'must not destroy unique, relevant evidence that might be useful to an adversary.'"  *United Healthcare*, 2024 WL 1252365, at *7 (citation omitted).  Once the duty arises, "even information subject to routine deletion may fall within the duty's reach, requiring that the deletion process be interrupted."  *BHI*, 2024 WL 1607065, at *9.[18]

Here, the deleted Chats are indisputably relevant to Plaintiffs' claims.[19]  Google's employees, including its custodians in this case, extensively utilized Google Chat to communicate with each other regarding substantive business issues, including ad-tech-related business relevant to this case.  *Supra* at 5-8.  Indeed, Chats were the *recommended* mode of communication for "sensitive" business discussions.  *Supra* at 4.  Indeed, while we have the "point in time" *Play* log (as it was produced), Google deleted and is still deleting the on-going Chats log that would have allowed the Court to evaluate all the custodians and their Chats in this case.

Google admits it had an obligation to preserve evidence no later than September 2019, when Texas issued its CID.  *Supra* at 5-6.  But in truth, Google's duty to preserve evidence arose much earlier.  Google knew Chats could be relevant to potential antitrust litigation regarding its ad tech products since at least 2013 (and arguably as far back as 2006), as its own privilege logs *in this case* assert attorney client and work product privilege over DoubleClick and ad tech-related

---

[18] *See also United Healthcare*, 2024 WL 1252365, at *7, *12 ("A party has a duty to suspend policies that lead to the deletion of relevant evidence."); *Disedare*, 2024 WL 1526699, at *12 (a party "cannot blindly destroy documents and expect to be shielded by a seemingly innocuous document retention policy").

[19] *See United Healthcare*, 2024 WL 1252365, at *8 ("[L]ost or destroyed evidence is relevant if a reasonable trier of fact could conclude that the lost evidence would have supported the claims or defenses of the party that sought it."); FED. R. EVID. 401.

**\*FILED UNDER SEAL\***

communications from that time.  *Supra* at 6.  "A defendant cannot take the inconsistent position that it was under anticipation of litigation for privilege purposes and then simultaneously deny that it had any duty to preserve relevant and proportional documents and ESI."  *Bellamy v. Wal-Mart Stores, Texas, LLC*, No. SA-18-CV-60-XR, 2019 WL 3936992, at \*4 (W.D. Tex. Aug. 19, 2019).[20]

Google could have easily taken steps to preserve its employees' Chats as soon as it reasonably anticipated litigation.[21]  Ex. 34 ¶¶ 5.k, 5.o, 5.t-w, 10.r.[22]  Google's abject failure to take these or any other reasonable steps to preserve its employees' Chats,  *supra* at 2-6; Ex. 34 ¶¶ 10.g, 10.j, 10.k,[23] resulted in millions of deleted communications.  Ex. 34 ¶ 10.v-w; *see, e.g., Disedare v. Brumfield*, No. CV 22-2680, 2024 WL 1526699, at \*12 (E.D. La. Apr. 9, 2024).  "[N]either a different source nor further discovery could adequately replace" the Chats that Google destroyed.  *Edwards*, 2021 WL 1600282, at \*8; Ex. 34 ¶¶ 5.c.[24]

---

[20] *See also, e.g., Allstate Texas Lloyd's v. McKinney*, 964 F. Supp. 2d 678, 684 (S.D. Tex. 2013); *LendingTree, LLC v. Zillow, Inc.*, No. 3:10-CV-00439-FDW, 2014 WL 1309305, at \*10 (W.D.N.C. Mar. 31, 2014); *Anderson v. Sotheby's Inc. Severance Plan*, No. 04 CIV. 8180 (SAS), 2005 WL 2583715, at \*4 (S.D.N.Y. Oct. 11, 2005).

[21] Google is well versed in both technology and litigation.  *See Play*, 664 F. Supp. 3d at 982–83.  Courts take this into consideration when determining whether a party took reasonable steps to preserve ESI.  *See* Fed. R. Civ. P. 37, Adv. Comm. Notes (2015 Amendment) (courts "should be sensitive to the party's sophistication with regard to litigation in evaluating preservation efforts").

[22] *See also Owens*, 695 F. Supp. 3d at 758 ("[D]iscovery obligations do not end with the implementation of a 'litigation hold'—to the contrary, that's only the beginning.  Counsel must oversee compliance with the litigation hold . . . .").

[23] *See Play*, 664 F. Supp. 3d at 993–94 (concluding "that Google did not take reasonable steps to preserve [Chat evidence] that should have been preserved in the anticipation or conduct of litigation"); *see also, e.g., Owens*, 695 F. Supp. 3d at 759 ("Defendant did not take reasonable steps to preserve [texts]" where, "[d]espite a litigation hold, Defendant did not properly monitor or did not properly communicate to the relevant staff the need to preserve key data."); *Trade Group, Inc. v. BTC Media, LLC*, No. 4:23-CV-00555-P, 2024 WL 3513475, at \*3 (N.D. Tex. July 23, 2024) (concluding "the failure to ensure the autodelete function was turned off when litigation holds were issued . . . , which would have preserved [the] text messages, constitutes a lack of reasonable steps to safeguard these messages"); *United Healthcare*, 2024 WL 1252365, at \*12 (finding defendant was required to amend its document retention policy "from the moment any litigation with Plaintiffs was reasonably anticipated").

[24] Regardless, "the mere potential for similar conversations is not sufficient to restore or replace

*FILED UNDER SEAL*

**B. Rule 37(e)(2) Sanctions Are Warranted Because Google Intentionally Failed To Preserve Chats for the Purpose of Depriving Opponents of Their Use in Litigation.**

To impose an adverse inference instruction, the Court must find that Google acted with "intent." FED. R. CIV. P. 37(e)(2).  Intent can be shown "by either direct evidence or by inference from a 'strong chain of circumstantial evidence.'" *Disedare*, 2024 WL 1526699, at *12 (citation omitted).[25]  Prejudice may be "presumed" or "inferred" if the Court finds that Google acted with the intent to deprive.  *BHI*, 2024 WL 1607065, at *11.[26]  Google's Chat retention policies were deliberately created for the express purpose of depriving enforcement authorities of the use of Google's employees' Chats in litigation.  *Supra* at 2-3.  The fact that Google preserved emails by default, but not Chats (which it pressured its employees to use), creates the strong inference that the Chats policy was intentional and in bad faith.  *Supra* at 2-3.[27]  Indeed, even after Google belatedly issued litigation holds—the first in two necessary steps for a Chat to be retained—years after its obligation to preserve arose, almost none of the Chats for relevant custodians were preserved.  *Supra* at 7-8.  A party who destroys 90+% of a category of evidence produced by an employee under a litigation hold intends to deprive its adversary of that evidence.  Google's

---

the lost [Chats].  Even when the information lost is cumulative to some extent, the loss of the information still has an impact because Plaintiffs cannot present the overwhelming quantity of evidence they otherwise would have to support their case."  *Owens*, 695 F. Supp. 3d at 760 (internal citation omitted; cleaned up).

[25] *See also Sanchez v. Thomas*, No. 1-22-CV-01197-DII, 2024 WL 4706583, at *4 (W.D. Tex. Oct. 9, 2024) (citation omitted), *report and recommendation adopted,* No. 1:22-CV-1197-RP, 2024 WL 4701909 (W.D. Tex. Nov. 5, 2024).

[26] *See also Balancecxi, Inc. v. Intl. Consulting*, No. 1:19-CV-0767-RP, 2020 WL 6886258, at *13 n.9 (W.D. Tex. Nov. 24, 2020), *report and recommendation adopted sub nom. BalanceCXI, Inc. v. Intl. Consulting & Research Group, LLC*, No. 1:19-CV-767-RP, 2021 WL 2194900 (W.D. Tex. Feb. 3, 2021); *Disedare*, 2024 WL 1526699, at *4.

[27] *See, e.g., Sanchez*, 2024 WL 4706583, at *5 (noting defendants' "selective preservation of evidence in response to alleged inmate misconduct as opposed to alleged officer misconduct nonetheless suggests bad faith").

**\*FILED UNDER SEAL\***

remedial action in 2023 hammers the points home; once its policy was uncovered,[28] Google implemented a fix. *Supra* at 2, 5. That it did so swiftly after being caught red handed shows that its prior noncompliance was willful.

Severe sanctions are necessary not only to punish Google and mitigate the prejudice to Plaintiffs, but also to deter other civil litigants from engaging in similar conduct.[29] Accordingly, Plaintiffs respectfully request that the Court instruct the jury that it must (or, at the very least, may) presume that the deleted Chats were unfavorable to Google. FED. R. CIV. P. 37(e)(2)(B).[30]

### C. Rule 37(e)(1) Sanctions Are Warranted Because Plaintiffs Are Prejudiced by Google's Failure To Preserve Chats.

Additional sanctions are also warranted under Rule 37(e)(1) because Plaintiffs have been prejudiced by Google's spoliation. Notably, a showing of bad faith is *not* required under Rule 37(e)(1).[31] Rather, such sanctions are appropriate so long as Plaintiffs have been prejudiced by Google's failure to preserve. FED. R. CIV. P. 37(e)(1). The Court may determine which party bears

---

[28] *See Play*, 664 F. Supp. 3d at 993 (noting the "intentionality manifested at every level within Google to hide the ball with respect to Chat[s]"). Two other courts have also reprimanded Google for its systemic and intentional destruction of Chats evidence. *See United States v. Google LLC*, No. 20-CV-3010 (APM), 2024 WL 3647498, at \*134 (D.D.C. Aug. 5, 2024) ("[a]ny company that puts the onus on its employees to identify and preserve relevant evidence does so at its own peril"; court was "taken aback by the lengths to which Google goes to avoid creating a paper trail for regulators and litigants"); Ex. 9 (Hr'g Tr., *United States v. Google LLC*, No. 23-cv-108 (E.D. Va. Aug. 27, 2024)) at 16:11-17:8 (finding it "strange" that Google "put the burden on the ordinary employee to decide whether or not that particular chat needed to be preserved . . . .").

[29] *See Balancecxi*, 2020 WL 6886258, at \*13; *Disedare*, 2024 WL 1526699, at \*15; *sanofi-aventis Deutschland GmbH v. Glenmark Pharm. Inc.*, No. 07-CV-5855, 2010 WL 2652412, at \*5 (D.N.J. July 1, 2010), *aff'd sub nom.Sanofi-Aventis Deutschland GmbH v. Glenmark Pharm. Inc., USA*, 748 F.3d 1354, 1362 (Fed. Cir. 2014).

[30] In the unlikely event the Court decides it may conduct a bench trial instead of a jury trial, Plaintiffs request that the Court presume that that the deleted Chats were unfavorable to Google. FED. R. CIV. P. 37(e)(2)(A).

[31] *See Trade Group*, 2024 WL 3513475, at \*2 ("Rule 37(e)(1) does not contain an 'intent' requirement. A party does not have to act willfully, deliberately, intentionally, or with any objective or subjective bad faith."); *BHI*, 2024 WL 1607065, at \*10; *Owens*, 695 F. Supp. 3d at 755 ("no finding of intent is necessary to impose sanctions" under Rule 37(e)(1)).

*FILED UNDER SEAL*

the burden of proving or disproving prejudice. *Supra* at 9. Where, as here, the content of the lost information is hard to know, "placing the burden of proving prejudice on the party that did not lose the information may be unfair." FED. R. CIV. P. 37, Adv. Comm. Notes (2015 Amendment).[32] Regardless, even if the Court chooses to place the burden on Plaintiffs, they have met it.

Typically, "the prejudice element is satisfied where a party's ability to present its case or to defend is compromised." *Trade Group*, 2024 WL 3513475, at *3; *see also Owens*, 695 F. Supp. 3d at 760; *BHI*, 2024 WL 1607065, at *10 (party prejudiced when its "ability to obtain the evidence necessary for its case has been thwarted"). Here, millions of Chats by relevant custodians have been destroyed. *Supra* at 7. These communications are not replicated in emails or elsewhere, per Google's express instructions and training sessions. *Supra* at 2, 4. The few Chats produced in this case further demonstrate that Google employees used Google Chat to candidly discuss substantive issues related to Google's ad tech business. *Supra* at 7-8. By failing to preserve most of its custodians' Chats, Google has compromised Plaintiffs' ability to present their case.[33]

Once prejudice is found, the range of potential sanctions available to the Court "is quite broad[.]" *Edwards*, 2021 WL 1600282, at *9. *See also Disedare*, 2024 WL 1526699, at *14. For example, the Court can permit "the parties to present evidence and argument to the jury regarding

---

[32] *See also Owens*, 695 F. Supp. 3d at 760–61 ("Defendants claim that Plaintiffs cannot show that any relevant evidence has indeed been lost and thus there can be no showing of prejudice. But to allow such an argument would be to allow every spoliator to claim lack of evidence implies lack of relevance."); *Trade Group*, 2024 WL 3513475, at *3–4 ("It is a circular argument that BTC must explain exactly what was in the deleted text messages in order to establish prejudice, especially when they never had the chance to review said text messages."); *Play*, 664 F. Supp. 3d at 994 (noting it was "not plaintiffs' burden to prove prejudice" for purposes of Rule 37(e)(1)).

[33] *See, e.g., Trade Group*, 2024 WL 3513475, at *4 ("BTC's ability to put forth their case has undoubtedly been impacted by a swatch of who knows how many missing text messages, and the Court finds they have been prejudiced accordingly."); *Play*, 664 F. Supp. 3d at 994 ("It is clear in the record that relevant, substantive business communications were made on Chat that plaintiffs will never see, to the potential detriment of their case.").

*FILED UNDER SEAL*

the loss of information," or give "the jury instructions to assist in its evaluation of such evidence or argument, other than instructions to which subdivision (e)(2) applies[.]" FED. R. CIV. P. 37(e), Adv. Comm. Notes (2015 Amendment).[34,35,36]

Finally, courts "routinely award attorney's fees and expenses under Rule 37(e), to cover the time and effort necessary to bring the issue of spoliation before the court." *BHI*, 2024 WL 1607065, at *11. *See also United Healthcare*, 2024 WL 1252365, at *4, *15; *Balancecxi*, 2020 WL 6886258, at *15-16; *Disedare*, 2024 WL 1526699, at *16. Here, Google has obstructed Plaintiffs' efforts to determine the extent of Google's Chats spoliation at every turn. *See, e.g.,* Dkts. #347, #348, #374, #540, #545. Plaintiffs therefore request that they be awarded their attorney's fees and expenses associated with these efforts.

## CONCLUSION

For these reasons, Plaintiffs request that the Court instruct the jury at trial that (i) Google had an obligation to preserve Chats, (ii) Google intentionally deleted millions of Chats, and (iii) the jury must (or, alternatively, may) presume the deleted Chats contained information unfavorable to Google. Plaintiffs further request that the Court: (1) deny Google's motions for summary judgment to the extent the deleted Chats could have provided relevant evidence; (2) award Plaintiffs' attorneys' fees and costs; and (3) impose any other sanctions the Court finds appropriate.

---

[34] *See also Edwards*, 2021 WL 1600282, at *9 & n.10 (courts "often issue a spoliation jury instruction when pertinent evidence is spoliated, even absent a showing of bad faith"); *BHI*, 2024 WL 1607065, at *10; *United Healthcare*, 2024 WL 1252365, at *4, *14.

[35] If the Court determines Rule 37(e)(2) sanctions are not warranted, Plaintiffs request that the Court instruct the jury that it may consider the circumstances surrounding the loss of the Chats

[36] In all circumstances, the Court should deny Google's summary judgment motions (Dkt. #672; Dkt. #674) to the extent the motions rely on facts that could have been established through destroyed evidence. *See, e.g., Cleary v. Am. Airlines, Inc.*, No. 4:21-CV-00184-O, 2022 WL 5320126, at *7 (N.D. Tex. July 22, 2022); *cf. Miramontes v. Peraton, Inc.*, No. 3:21-CV-3019-B, 2023 WL 3855603, at *1, *7 (N.D. Tex. June 6, 2023) (denying summary judgment as sanction under inherent authority).

**\*FILED UNDER SEAL\***

Respectfully submitted,

*/s/ W. Mark Lanier*
W. Mark Lanier
Mark.Lanier@LanierLawFirm.com
Alex J. Brown
Alex.Brown@LanierLawFirm.com
Zeke DeRose III
Zeke.DeRose@LanierLawFirm.com
Jonathan P. Wilkerson
Jonathan.Wilkerson@LanierLawFirm.com
10940 W. Sam Houston Pkwy N
Suite 100
Houston, TX 77064
(713) 659-5200
**THE LANIER LAW FIRM, PLLC**

*/s/ Ashley Keller*
Ashley Keller
ack@kellerpostman.com
Kiran N. Bhat
kiran.bhat@kellerpostman.com
2333 Ponce De Leon Boulevard
Suite R-240
Coral Gables, Florida 33134
(833) 633-011

Zina Bash
zina.bash@kellerpostman.com
111 Congress Avenue, Suite 500
Austin, TX 78701
(512) 690-0990

*/s/ Noah S. Heinz*
Noah S. Heinz
noah.heinz@kellerpostman.com
1101 Connecticut, N.W., 11th Floor
Washington, DC 20036
(202) 918-1123
**KELLER POSTMAN LLC**

*Counsel for Texas, Idaho, Louisiana (The Lanier
Law Firm only), Mississippi, North Dakota,
Indiana, South Carolina, and South Dakota*

*Submitted on behalf of all Plaintiff States*

**NORTON ROSE FULBRIGHT US LLP**
*/s/ Marc B. Collier*
Marc B. Collier
Marc.Collier@nortonrosefulbright.com
98 San Jacinto Blvd., Suite 1100
Austin, Texas 78701
(512) 474-5201

Joseph M. Graham, Jr.
joseph.graham@nortonrosefulbright.com
Geraldine Young
geraldine.young@nortonrosefulbright.com
1550 Lamar Street, Suite 2000
Houston, Texas  77010
(713) 651-5151

**\*FILED UNDER SEAL\***

FOR PLAINTIFF STATE OF TEXAS:

KEN PAXTON
Attorney General

*/s/ James R. Lloyd*

Brent Webster, First Assistant Attorney General of Texas
Brent.Webster@oag.texas.gov
James R. Lloyd, Deputy Attorney General for Civil Litigation
James.Lloyd@oag.texas.gov

**STATE OF TEXAS, OFFICE OF THE ATTORNEY GENERAL**
P.O. Box 12548
Austin, TX 78711-2548
(512) 936-1674

*Attorneys for Plaintiff State of Texas*

**\*FILED UNDER SEAL\***

FOR PLAINTIFF STATE OF ALASKA:

TREG TAYLOR
ATTORNEY GENERAL

By: /s/ Jeff Pickett
Jeff Pickett
Senior Assistant Attorney General, Special Litigation Section
jeff.pickett@alaska.gov

*Attorney for Plaintiff State of Alaska*

**\*FILED UNDER SEAL\***

FOR PLAINTIFF STATE OF ARKANSAS:

TIM GRIFFIN
ATTORNEY GENERAL


By: _____
AMANDA J. WENTZ
Ark. Bar No. 2021066
Assistant Attorney General
Office of the Arkansas Attorney General
323 Center Street, Suite 200
Little Rock, AR 72201
(501) 682-1178
Amanda.Wentz@ArkansasAG.gov

*Attorney for Plaintiff State of Arkansas*

**\*FILED UNDER SEAL\***

FOR PLAINTIFF STATE OF FLORIDA:

ASHLEY MOODY, Attorney General

/s/ Lee Istrail
LEE ISTRAIL, Assistant Attorney General
FL Bar No. 119216

LIZABETH A. BRADY, Director, Antitrust Division
R. SCOTT PALMER, Special Counsel and Chief of Complex Enforcement
ANDREW BUTLER, Assistant Attorney General
CHRISTOPHER KNIGHT, Assistant Attorney General


Office of the Attorney General, State of Florida
PL-01 The Capitol
Tallahassee, Florida 32399
Phone: 850-414-3300
Email: scott.palmer@myfloridalegal.com

*Attorneys for Plaintiff State of Florida*

**\*FILED UNDER SEAL\***

FOR PLAINTIFF STATE OF IDAHO:

RAÚL R. LABRADOR
Attorney General

*/s/ John K. Olson*
John K. Olson, Deputy Attorney General

Consumer Protection Division
Office of the Attorney General
954 W. Jefferson Street, 2nd Floor
P.O. Box 83720
Boise, Idaho 83720-0010
Telephone:   (208)   334-2424
john.olson@ag.idaho.gov

*Attorneys for Plaintiff State of Idaho*

**\*FILED UNDER SEAL\***

FOR PLAINTIFF STATE OF INDIANA:

THEODORE E. ROKITA
Attorney General

*/s/ Jesse J. Moore*
Jesse J. Moore
Deputy Attorney General – Consumer Litigation
Office of Indiana Attorney General Todd Rokita
302 W. Washington St.,
IGCS - 5th Floor
Indianapolis, IN 46204
Phone: (317) 234-1479
Fax: (317) 232-7979
Email: jesse.moore@atg.in.gov

*Attorneys for Plaintiff State of Indiana*

**\*FILED UNDER SEAL\***

FOR PLAINTIFF COMMONWEALTH OF KENTUCKY:

RUSSELL COLEMAN
Attorney General

*/s/ Philip R. Heleringer*
Christian J. Lewis, Commissioner of the Office of Consumer Protection
christian.lewis@ky.gov
Philip R. Heleringer, Executive Director of the Office of Consumer Protection
philip.heleringer@ky.gov
Jonathan E. Farmer, Deputy Executive Director of the Office of Consumer Protection
jonathan.farmer@ky.gov
Office of the Attorney General
Commonwealth of Kentucky
1024 Capital Center Drive, Suite 200
Frankfort, Kentucky 40601
Tel: 502-696-5300

*Attorneys for Plaintiff Commonwealth of Kentucky*

**\*FILED UNDER SEAL\***

FOR PLAINTIFF STATE OF LOUISIANA:

By: */s/ Patrick Voelker*
Liz Murrill, Attorney General
Michael Dupree, Assistant Attorney General
Patrick Voelker, Assistant Attorney General
Office of the Attorney General, State of Louisiana
Public Protection Division
1885 North Third St.
Baton Rouge, Louisiana 70802
(225) 326-6400
voelkerp@ag.louisiana.gov

*s/ James R. Dugan, II*
James R. Dugan, II (*pro hac vice*)
TerriAnne Benedetto (*pro hac vice*)
The Dugan Law Firm
365 Canal Street
One Canal Place, Suite 1000
New Orleans, LA 70130
PH:   (504) 648-0180
FX:   (504) 649-0181
EM:   jdugan@dugan-lawfirm.com
        tbenedetto@dugan-lawfirm.com

James Williams
CHEHARDY SHERMAN WILLIAM, LLP
Galleria Boulevard, Suite 1100
Metairie, LA 70001
PH:   (504) 833-5600
FX:   (504) 833-8080
EM:   jmw@chehardy.com

*Attorneys for Plaintiff State of Louisiana*

**\*FILED UNDER SEAL\***

FOR PLAINTIFF STATE OF MISSISSIPPI:

LYNN FITCH, ATTORNEY GENERAL
STATE OF MISSISSIPPI

By:     _/s/ Garrett S. Mascagni_
        Garrett S. Mascagni
        Special Assistant Attorney General
        Consumer Protection Division
        Mississippi Attorney General's Office
        Post Office Box 220
        Jackson, Mississippi 39205
        Telephone: 601-359-4223
        Fax: 601-359-4231
        Garrett.Mascagni@ago.ms.gov


        _Attorney for Plaintiff State of Mississippi_

**\*FILED UNDER SEAL\***

FOR PLAINTIFF STATE OF MISSOURI:

ANDREW BAILEY
Attorney General

*/s/ Michael Schwalbert*
Michael.Schwalbert@ago.mo.gov
Missouri Attorney General's
Office
815 Olive St.
Suite 200
St. Louis, MO 63101
Tel: 314-340-7888

*Attorneys for Plaintiff State of Missouri*

**\*FILED UNDER SEAL\***

FOR PLAINTIFF STATE OF MONTANA:

AUSTIN KNUDSEN
Montana Attorney General


*/s/ Anna Schneider*
Anna Schneider
Montana Attorney General's Office
P.O. Box 200151
Helena, MT 59620-0151
Phone: (406) 444-4500
Fax: (406) 442-1894 Anna.Schneider@mt.gov


*/s/ Charles J. Cooper*
Charles J. Cooper
ccooper@cooperkirk.com
David H. Thompson
dthompson@cooperkirk.com
Brian W. Barnes
bbarnes@cooperkirk.com
Harold S. Reeves
hreeves@cooperkirk.com
COOPER & KIRK PLLC
1523 New Hampshire Avenue, NW
Washington DC 20036
Phone: (202) 220-9620
Fax: (202) 220-9601

*Attorneys for Plaintiff State of Montana*

**\*FILED UNDER SEAL\***

FOR PLAINTIFF STATE OF NEVADA:

AARON D. FORD
Attorney General
ERNEST D. FIGUEROA
Consumer Advocate


*/s/ Michelle C. Badorine*
Michelle C. Badorine, Senior Deputy
Attorney General
MNewman@ag.nv.gov
Lucas J. Tucker (NV Bar No. 10252)
Senior Deputy Attorney General
LTucker@ag.nv.gov
Office of the Nevada Attorney General
100 N. Carson St.
Carson City, Nevada 89701
Tel: (775) 684-1100

*Attorneys for Plaintiff State of Nevada*

**\*FILED UNDER SEAL\***

FOR PLAINTIFF STATE OF NORTH DAKOTA:

       **STATE OF NORTH DAKOTA**
       Drew H. Wrigley
       Attorney General


By:     */s/ Elin S. Alm*
       Elin S. Alm, ND ID 05924
       Assistant Attorneys General
       Consumer Protection & Antitrust Division
       Office of Attorney General of North Dakota
       1720 Burlington Drive, Suite C, Bismarck, ND 58503-7736
       (701) 328-5570
       (701) 328-5568 (fax)
       ealm@nd.gov

       *Attorneys for Plaintiff State of North Dakota*

**\*FILED UNDER SEAL\***

FOR PLAINTIFF COMMONWEALTH OF PUERTO RICO:

*/s/ Domingo Emanuelli-Hernández*
Domingo Emanuelli-
Hernández Attorney General
Thaizza Rodríguez Pagán
Assistant Attorney
General PR Bar No.
17177
P.O. Box 9020192
San Juan, Puerto Rico 00902-0192
Tel: (787) 721-2900, ext. 1201, 1204
trodriguez@justicia.pr.gov

Kyle G. Bates
HAUSFELD LLP
600 Montgomery Street, Suite 3200
San Francisco, CA 94111

*Attorneys for Plaintiff Commonwealth of Puerto Rico*

**\*FILED UNDER SEAL\***

FOR PLAINTIFF STATE OF SOUTH CAROLINA:

ALAN WILSON
Attorney General


/s/ *Mary Frances Jowers*
Mary Frances Jowers
Assistant Deputy Attorney General

W. Jeffrey Young
Chief Deputy Attorney General
C. Havird Jones, Jr.
Senior Assistant Deputy Attorney General
Mary Frances Joers
Assistant Deputy Attorney General
South Carolina Attorney General's Office
P.O. Box 11549
Columbia, South Carolina 29211-1549
Phone: 803-734-5855
Email: mjowers@scag.gov

Charlie Condon
Charlie Condon Law Firm, LLC
880 Johnnie Dodds Blvd, Suite 1
Mount Pleasant, SC 29464
Phone: 843-884-8146
Email: charlie@charliecondon.com

James R. Dugan, II (*pro hac vice*)
The Dugan Law Firm
365 Canal Street
One Canal Place, Suite 1000
New Orleans, LA 70130
Phone: (504) 648-0180
Email: jdugan@dugan-lawfirm.com


*Attorneys for Plaintiff State of South Carolina*

**\*FILED UNDER SEAL\***

FOR PLAINTIFF STATE OF SOUTH DAKOTA:

MARTY JACKLEY
Attorney General


*/s/ Jonathan Van Patten*
Jonathan Van Patten
Assistant Attorney General
Office of the Attorney General
1302 E. Highway 14, Suite 1
Pierre, SD 57501
Tel: 605-773-3215
jonathan.vanpatten@state.sd.us

*Attorney for Plaintiff State of South Dakota*

**\*FILED UNDER SEAL\***

FOR PLAINTIFF STATE OF UTAH:

Sean D. Reyes
Utah Attorney General

*/s/ Matthew Michaloski*
Matthew Michaloski
Marie W.L. Martin
Assistant Attorney General
160 East 300 South, 5th Floor
P.O. Box 140811
Salt Lake City, UT 84114
 mmichaloski@agutah.gov
Telephone: (801) 440-9825

*Attorneys for Plaintiff State of Utah and*
*as counsel for the Utah Division of Consumer Protection*

Matt Michaloski
Assistant Attorney General
Antitrust & Data Privacy Division
Utah Office of the Attorney General
160 E 300 S, 5th Floor
P.O. Box 140830
Salt Lake City, UT  84114-0830
801-440-9825
mmichaloski@agutah.gov

**\*FILED UNDER SEAL\***

## CERTIFICATE OF SERVICE AND SEALING

I certify that, on December 9, 2024, this document was filed electronically in compliance with Local Rule CV-5(a) and served on all counsel who have consented to electronic service, per Local Rule CV-5(a)(3)(A).

I also certify that, on December 9, 2024, a motion to seal the foregoing document and its exhibits was filed separately and before the filing of this document under seal, per Local Rule CV-5(a)(7)(B). This sealed filing will be promptly served by email on counsel of record for all parties in this case and will be publicly filed in redacted form per Local Rule CV-5(a)(7)(E).

*/s/ Marc B. Collier*
Marc B. Collier

## CERTIFICATE OF CONFERENCE

I certify that counsel has complied with the meet and confer requirement in Local Rule CV-7(h). Counsel for Plaintiff States met and conferred in good faith with counsel for Google on November 14, 2024. Google indicated that it opposes the motion.

*/s/ Marc B. Collier*
Marc B. Collier