# EXHIBIT 9
# FILED UNDER SEAL

```
 1                     UNITED STATES DISTRICT COURT
                       EASTERN DISTRICT OF VIRGINIA
 2                           ALEXANDRIA DIVISION

 3   ---------------------------x
     UNITED STATES, et al.,      :   Civil Action No.:
 4                               :   1:23-cv-108
              Plaintiffs,        :
 5       versus                  :   Tuesday, August 27, 2024
                                 :   Alexandria, Virginia
 6   GOOGLE LLC,                 :
                                 :   Pages 1-33
 7            Defendant.         :
     ---------------------------x
 8
             The above-entitled motions hearing was heard before
 9   the Honorable Leonie M. Brinkema, United States District
     Judge.  This proceeding commenced at 10:04 a.m.
10
                         A P P E A R A N C E S:
11
     FOR THE PLAINTIFFS:   GERARD MENE, ESQUIRE
12                         OFFICE OF THE UNITED STATES ATTORNEY
                           2100 Jamieson Avenue
13                         Alexandria, Virginia  22314
                           (703) 299-3700
14
                           JULIA TARVER WOOD, ESQUIRE
15                         KATHERINE CLEMONS, ESQUIRE
                           AARON TEITELBAUM, ESQUIRE
16                         UNITED STATES DEPARTMENT OF JUSTICE
                           ANTITRUST DIVISION
17                         450 Fifth Street, NW
                           Washington, D.C.  20530
18                         (202) 894-4266

19                         MATTHEW HUPPERT, ESQUIRE
                           UNITED STATES DEPARTMENT OF JUSTICE
20                         950 Pennsylvania Avenue, NW
                           Room 3109
21                         Washington, D.C.  20530
                           (202) 476-0383
22
                           TYLER HENRY, ESQUIRE
23                         OFFICE OF THE ATTORNEY GENERAL
                           OFFICE OF THE SOLICITOR GENERAL
24                         202 North Ninth Street
                           Richmond, Virginia  23219
25                         (804) 786-7704
                                                                1
```

```
 1                    A P P E A R A N C E S:

 2   FOR THE DEFENDANT:     CRAIG REILLY, ESQUIRE
                            LAW OFFICE OF CRAIG C. REILLY
 3                          209 Madison Street
                            Suite 501
 4                          Alexandria, Virginia  22314
                            (703) 549-5354
 5
                            KAREN DUNN, ESQUIRE
 6                          JEANNIE RHEE, ESQUIRE
                            AMY MAUSER, ESQUIRE
 7                          WILLIAM ISAACSON, ESQUIRE
                            ANITA LIU, ESQUIRE
 8                          PAUL, WEISS, RIFKIND,
                            WHARTON & GARRISON LLP
 9                          2001 K Street, NW
                            Washington, D.C.  20006
10                          (202) 223-7300

11   COURT REPORTER:        STEPHANIE M. AUSTIN, RPR, CRR
                            Official Court Reporter
12                          United States District Court
                            401 Courthouse Square
13                          Alexandria, Virginia  22314
                            (607) 743-1894
14                          S.AustinReporting@gmail.com

15          COMPUTERIZED TRANSCRIPTION OF STENOGRAPHIC NOTES

16

17

18

19

20

21

22

23

24

25
                                                                 2
```

1    we have voluminous evidence that not only was that not
2    complied with, indeed, Google concedes that for the nine
3    employees who admitted to using chats, eight of them, eight
4    out of nine, failed to turn the toggle on to preserve the
5    chats.  So there was not compliance with this purported
6    basis to preserve even chats that were otherwise going to be
7    automatically deleted.
8              And, in fact, the evidence shows that Google --
9    the employees were repeatedly deliberately moving
10   communications to off-the-record chats so that they wouldn't
11   be discovered.  Indeed, we have one instance we've cited to
12   the Court involving one of the trial witnesses, Mr. Korula,
13   who was literally instructed by a Google attorney to turn
14   his history off when discussing substantive matters.
15             So this was essentially part of a three-prong
16   process that Google implemented, not all of which was made
17   clear to the United States, and certainly wasn't made clear
18   during the investigation or the early days of this case.
19             So the United States brought this motion at the
20   appropriate time, at the time for pretrial motions.  This is
21   not a motion that seeks further discovery, it doesn't seek
22   enforcement of the specific discovery order, and it is a
23   motion designed to deal with how this evidence will be
24   treated at trial, and so it was appropriately brought, in
25   the United States' estimation, at the pretrial phase.

```
 1              The Court will recall that up until May of this
 2   year, this case was intended to proceed by jury trial, and
 3   the United States was prepared to file a motion for jury
 4   instructions for an adverse inference on these issues, but
 5   prudentially wanted to gather evidence about exactly how
 6   these missing chats were going to impact the trial of this
 7   case.  The United States anticipated the Court would have
 8   questions about the specific and concrete prejudice that the
 9   United States has suffered, and so the Court -- the United
10   States has waited until the exhibit lists were produced, the
11   witness lists were produced, so that we can put the scope of
12   this conduct into appropriate context.
13              So this was not a situation where any kind of
14   delay was tactical on the United States' part; it was a
15   prudential judgment we made to give the Court complete
16   context and the complete picture before raising this serious
17   motion.
18              THE COURT:  Wait.  Can you tell me, when do you
19   think the government first became aware of the Walker memo?
20              MS. WOOD:  The Walker memo I believe was produced
21   during discovery.  Whether it was produced during the
22   investigation or during the litigation, I can't say
23   specifically.  But the Walker memo was not produced, you
24   know, in the first days of discovery.
25              THE COURT:  Well, once it was produced, it clearly
```
12

```
 1   would have put you on notice that there was this policy
 2   about deleting most chats.  In fact, in particular, that the
 3   default was being set such that the chats were automatically
 4   going to be deleted.
 5             MS. WOOD:  I believe that information first came
 6   to light in the context of the proceeding in the Northern
 7   District of California in January of 2023.  And while that
 8   predated the litigation here, what we didn't know was, A,
 9   how it impacts our witnesses in particular; and B, and
10   perhaps more importantly, the difficulty and cumbersome
11   process that was required to convert history-on chats to
12   history -- or history-off chats to history-on chats.
13             That is a pivotal distinction in our mind, because
14   if it were a simple process of employees being able to, once
15   they're on a litigation hold, go into their system and for
16   all their chats from today for the next five years just
17   toggle history on, I think we would be in a very different
18   situation, Your Honor.  And that we did not learn until much
19   later through the course of discovery.
20             And remember also that many of the chats that were
21   produced that we've cited as evidence here were produced
22   well after the original fact discovery cutoff, and some were
23   produced even more recently than that, as Google has
24   continued to comply with their discovery obligations by
25   producing documents later and later.
```

13

Stephanie Austin, RPR, CRR USDC/EDVA (607) 743-1894

```
 1              And so it is a question, if we had had full and
 2   complete information at a different time, we would be in a
 3   very different situation, although I still believe that in
 4   that context it would still be prudential to bring the
 5   motion at an appropriate pretrial phase, either in
 6   connection with a motion for an adverse inference to be
 7   charged to the jury or with respect to the Court.  But the
 8   case law is clear, that when the spoliation conduct is
 9   serous, that outweighs any concern about purported
10   timeliness.
11              I'll also offer to Your Honor that Google has been
12   unable to articulate any form of prejudice or harm due to
13   the timing of this motion, and there is none.  Because any
14   arguments they would have had back in October, November,
15   December about the timing, if the motion had been filed
16   then, could easily be made now.  They have not lost any
17   arguments in the interim.  We are not seeking a delay in the
18   trial, we are not seeking additional discovery, we are not
19   seeking to supplement the evidentiary record in any way.
20   What we are seeking is a trial-related relief, and that, we
21   believe, comports with the case law about the appropriate
22   timing for motions such as these, and we believe it was --
23   in our view, we were mindful of the Court's admonition to
24   focus on the merits, to proceed with the case accordingly,
25   and to give concrete examples and context for any alleged
```

14

```
 1  prejudice.  And so that is the reason why we determined it
 2  to be most prudential to see what witnesses were on both
 3  sides of the witness list, what exhibits were on the exhibit
 4  list, and exactly how Google's conduct has threatened a fair
 5  trial in this case.
 6              THE COURT:  All right.  Thank you.  All right,
 7  Ms. Rhee.
 8              MS. RHEE:  Thank you, Your Honor.
 9              THE COURT:  There are a whole bunch of problems
10  with how Google approached the preservation of evidence in
11  this case.  I mean, the Walker memo of course goes back to
12  before litigation was actually started, but there's
13  incredible smoking guns within that document.  I mean,
14  there's a clear recognition, you know, "as you know, Google
15  continues to be in the midst of several significant legal
16  and regulatory matters, including government review of our
17  deal with Yahoo."  And then it goes on.  And then -- you
18  know, so it sets the setting for an argument that there was
19  definitely a very clever approach to try to hide relevant
20  information going back to 2008.
21              And then my concern from the record of this
22  case -- and I'm looking at Appendix B that was attached to
23  the government's motion -- which talks about the litigation
24  hold and the incredible delay in which various witnesses
25  were notified about that litigation hold.  Because that has
```
                                                              15

Stephanie Austin, RPR, CRR USDC/EDVA (607) 743-1894

```
 1   a huge impact, given the fact that there was this automatic
 2   deletion as to chat messages that just indicates that an
 3   awful lot of evidence has likely been destroyed.
 4              You need to address those issues.
 5              MS. RHEE:  Thank you, Your Honor.
 6              So we think that the Court is right to focus on
 7   timeliness here.
 8              With respect to the Walker memo, the date of that
 9   is 2008, as the Court rightly noted.  That was well before
10   the --
11              THE COURT:  Well, it's before this case was filed,
12   but it recognizes that even back then, Google was being
13   looked at by regulators.  All right.
14              And so, you know, is it wise to tell your people,
15   hey, the government's going to be looking at us, we want to
16   make sure that sensitive information is not kept, because if
17   it's kept, then we might have -- in fact, it says that in
18   the memo, our discovery obligations, we have to turn it
19   over.
20              So, you know, it's not saying to them directly,
21   destroy any relevant evidence; it's sort of a wink and a
22   nod.  But, I mean, it's clearly giving a message to
23   employees that there are different ways of communicating
24   this particular way through chats we can kind of control.
25              And corporation-wide, there was this default put
```

16

Stephanie Austin, RPR, CRR USDC/EDVA (607) 743-1894

```
 1   in, as I understand it.  So if you were involved in a chat
 2   and you're a Google employee, there was automatically a
 3   default that that conversation would be destroyed within a
 4   few hours unless the employee did something.  So you put the
 5   burden on the ordinary employee to decide whether or not
 6   that particular chat needed to be preserved, and, even then,
 7   the length of preservation, as I understand it, the max was,
 8   what, 18 months.
 9             And the other thing that's strange in this case --
10   and someone has to explain exactly how this would operate in
11   a chat conversation -- is that even if I, the Google
12   employee, took off the default and so now I wanted it
13   preserved, the recipient, the other member of that chat also
14   had to do something; right?
15             MS. RHEE:  No, Your Honor.  Any one of the
16   participants who had a history on would preserve that
17   particular conversation or thread.
18             THE COURT:  Both sides of it?
19             MS. RHEE:  Yes, both sides of it.  Because it's
20   instantaneous, equivalent of text messaging.  So unlike
21   emails, you're not going to have both sides of it.  So with
22   respect to the way that it functioned, if one of the
23   participants had a history on, then it would be a history-on
24   conversation.
25             THE COURT:  And so that the other -- what if the
```

17

1  other side hit history off, if there was another Google
2  employee?
3          MS. DUNN: Even if they had a history off, at
4  least for the custodian with the history on, that would be
5  preserved, and the entirety of that text exchange would be
6  preserved.
7          THE COURT: Right. Now, how do you respond to
8  Appendix B? And that is that the length of time between the
9  time that the litigation hold was requested and the time in
10 which the litigation hold was actually communicated to the
11 particular employee?
12         MS. RHEE: Yeah. I mean, I think there what you
13 can see in Google's filing and response, Your Honor, is a
14 corrected Appendix B, because upon review of all of the
15 underlying hold notices, what was properly reflected was not
16 always the earliest time hold notice that those recipients
17 actually got in connection with the topics of this
18 investigation.
19         And so, again, when you actually look at the
20 attachments to Google's reply to the government's motion,
21 the corrected dates of the very first-in-time hold notices
22 that were issued reflect that actually there wasn't an undue
23 delay on the company's part to issue the hold notices.
24         Of course, the government continues to contend
25 that those hold notices and the processes around them were

18

1  for the day.
2          MS. RHEE:  Thank you.
3              (Proceedings adjourned at 10:44 a.m.)
4          ----------------------------------
5  I certify that the foregoing is a true and accurate
6  transcription of my stenographic notes.
7
8              _____
9                 Stephanie M. Austin, RPR, CRR

33