# EXHIBIT 30
# FILED UNDER SEAL

```
 1                    UNITED STATES DISTRICT COURT
                      EASTERN DISTRICT OF VIRGINIA
 2                         ALEXANDRIA DIVISION

 3    ---------------------------x
      UNITED STATES, et al.,     :  Civil Action No.:
 4                               :  1:23-cv-108
                 Plaintiffs,     :
 5        versus                 :  Friday, September 13, 2024
                                 :  Alexandria, Virginia
 6    GOOGLE LLC,                :  Day 5 a.m.
                                 :  Pages 1-163
 7               Defendant.      :
      ---------------------------x
 8
             The above-entitled bench trial was heard before the
 9    Honorable Leonie M. Brinkema, United States District Judge.
      This proceeding commenced at 9:28 a.m.
10
                           A P P E A R A N C E S:
11
      FOR THE PLAINTIFFS:     GERARD MENE, ESQUIRE
12                            OFFICE OF THE UNITED STATES ATTORNEY
                              2100 Jamieson Avenue
13                            Alexandria, Virginia  22314
                              (703) 299-3700
14
                              JULIA TARVER WOOD, ESQUIRE
15                            AARON TEITELBAUM, ESQUIRE
                              KELLY GARCIA, ESQUIRE
16                            DAVID TESLICKO, ESQUIRE
                              DANIEL GUARNERA, ESQUIRE
17                            MICHAEL WOLIN, ESQUIRE
                              UNITED STATES DEPARTMENT OF JUSTICE
18                            ANTITRUST DIVISION
                              450 Fifth Street, NW
19                            Washington, D.C.  20530
                              (202) 894-4266
20
      (State of VA)           TYLER HENRY, ESQUIRE
21                            OFFICE OF THE ATTORNEY GENERAL
                              OFFICE OF THE SOLICITOR GENERAL
22                            202 North Ninth Street
                              Richmond, Virginia  23219
23                            (804) 786-7704

24

25
                                                                    1
```

```
 1                     P R O C E E D I N G S

 2   FOR THE PLAINTIFFS:    ELLIOTT DIONISIO, ESQUIRE
     (State of CA)          OFFICE OF THE CALIFORNIA ATTORNEY
 3                          GENERAL
                            300 South Spring Street
 4                          Suite 1700
                            Los Angeles, California  90013
 5                          (213) 269-6681

 6   FOR THE DEFENDANT:     CRAIG REILLY, ESQUIRE
                            LAW OFFICE OF CRAIG C. REILLY
 7                          209 Madison Street
                            Suite 501
 8                          Alexandria, Virginia  22314
                            (703) 549-5354
 9
                            ERIC MAHR, ESQUIRE
10                          WILLIAM ISAACSON, ESQUIRE
                            TINA LARITZ, ESQUIRE
11                          PAUL, WEISS, RIFKIND,
                            WHARTON & GARRISON LLP
12                          2001 K Street, NW
                            Washington, D.C.  20006
13                          (202) 223-7300

14   COURT REPORTER:        STEPHANIE M. AUSTIN, RPR, CRR
                            Official Court Reporter
15                          United States District Court
                            401 Courthouse Square
16                          Alexandria, Virginia  22314
                            (607) 743-1894
17                          S.AustinReporting@gmail.com

18        COMPUTERIZED TRANSCRIPTION OF STENOGRAPHIC NOTES

19

20

21

22

23

24

25
                                                                    2
```

```
 1                         TABLE OF CONTENTS

 2                              WITNESSES

 3   On behalf of the Plaintiffs:

 4   TOM KERSHAW

 5   Direct examination by Ms. Garcia ..........5
     Cross-examination by Mr. Mahr .............12
 6   Redirect examination by Ms. Garcia ........32

 7   CHRISTOPHER LASALA

 8   Direct examination by Mr. Teslicko ........36
     Cross-examination by Mr. Isaacson .........140
 9
     On behalf of the Defendant:
10   Admitted

11   Number 463 ................................162

12                              EXHIBITS

13   On behalf of the Plaintiff:
     Admitted
14   Number 549 ................................44
     Number 624 ................................50
15   Number 612 ................................64
     Number 719 ................................68
16   Number 719 ................................75
     Number 864 ................................77
17   Number 114 ................................85
     Number 118 ................................90
18   Number 433 ................................94
     Number 254 ................................98
19   Number 238 ................................103
     Number 444 ................................109
20   Number 613 ................................114
     Number 317 ................................117
21   Number 925 ................................124
     Number 927 ................................126
22   Number 1777 ...............................128
     Number 992 ................................132
23   Number 1818 ...............................134
     Number 590 ................................149
24                             MISCELLANY

25   Proceedings September 13, 2024 ............4
     Certificate of Court Reporter ............163
```

3

```
1             THE COURT:  All right.  Wait.  Is there any
2  objection to 1818?
3             MR. ISAACSON:  No objection.
4             THE COURT:  All right.  It's in.
5    (Plaintiffs' Exhibit Number 1818 admitted into evidence.)
6  BY MR. TESLICKO:
7  Q    This is, again, taking place almost a year after you
8  received a litigation hold in this matter; right?
9  A    Yes.
10 Q    And in this chat on the first page at 11:53:16,
11 Mr. Islam raises what he calls burning issues with a
12 multi-call launch; do you see that?
13 A    Yes.
14 Q    Multi-call refers to an ad tech product being called
15 multiple times for a single impression; right?
16 A    Yes.
17 Q    He goes on to write at 11:53:39 that there will "likely
18 be VP escalations on the issue"; right?
19 A    Yes.
20 Q    Only significant issues within the ad tech business got
21 raised to the VP level; right?
22 A    We didn't waste their time.
23 Q    And at 11:54:27, he explains the multi-call launch
24 could have "major negative impact to a number of off
25 platform pubs."
```

134

```
 1              Did I read that right?
 2   A    Yes.
 3   Q    And then turning to page 3 at 13:03:18.
 4   A    Yes.
 5   Q    You write:  "Also maybe start an off-the-record ping
 6   with Duke, you, me, about this."
 7   A    Yes.
 8   Q    An off-the-record ping thread is an off-the-record
 9   chat; right?
10   A    Yes.
11   Q    And Duke -- I'm sorry, I got ahead of myself.
12              Duke -- who does Duke refer to?
13   A    He was a product manager.
14   Q    Sorry?
15   A    He was a product manager in the business.
16   Q    He was a director of product management, in fact?
17   A    Yeah.
18   Q    He was heavily involved in Google's ad tech business;
19   right?
20   A    Yes.
21   Q    At the time, was he also involved in working on
22   responses to the U.S. antitrust investigation of Google?
23   A    I don't know who received that letter.
24              (Reporter interrupted for clarification.)
25              THE WITNESS:  I don't know who received litigation
```

1  holds.
2  BY MR. TESLICKO:
3  Q    At this time, Mr. Dukellis was responsible for the
4  sell-side aspects of display, video and app advertising;
5  right?
6  A    Yes.
7  Q    And at 13:03:57, so going back to the document,
8  Mr. Islam responds to your suggestion:  "K.  Kicking off
9  now"; do you see that?
10 A    Yes.
11 Q    Fair to say that Mr. Islam knew what you meant by an
12 off-the-record ping; right?
13 A    Yes.
14 Q    Did he get that understanding from you as his
15 supervisor?
16 A    It was just how we spoke.  I don't know what you mean.
17 Everyone used the phrase off-the-record ping.
18 Q    Did you ask other people to take chats off the record,
19 Mr. LaSala?
20 A    I mean, not that I recall.
21 Q    Could you have?
22 A    It would be unusual.  My MO was mostly off the record.
23 So old -- you know, old tricks die hard.  So that's how I --
24 that's how I was sort of used to working to get on the same
25 page.

136

1  Q    I want to understand better why you asked to take this
2  particular chat off the record.
3            You knew based on the litigation hold that we just
4  reviewed that the government was investigating Google's ad
5  tech business; right?
6  A    I did.
7  Q    And you knew, based on your training at Google, that
8  documents related to the ad tech business likely would be
9  turned over to the government at some point; right?
10 A    I did.
11 Q    And that was covered in Communicate With Care training,
12 for example?
13 A    It was covered in the training.
14 Q    And so you asked to go off the record here in a way
15 that ensured whatever was said in that subsequent
16 off-the-record chat would never be produced to the
17 government; right?
18 A    No.
19 Q    Let me unpack that a little, Mr. LaSala.
20           You understood that off-the-record chats were not
21 preserved as of the time of this chat in August of 2020;
22 right?
23 A    Yes.
24 Q    And so if the document is not preserved, it can't be
25 produced to the government; right?

137

```
 1   A   Yes.
 2   Q   Okay.  Now, we've reviewed two chats right now because
 3   a portion of those chats was preserved on the record.
 4           Do you recall ever toggling history on after you
 5   received the litigation hold in October of 2019?
 6   A   I don't really recall.  I do have one recollection of
 7   where, right after we got the training, one of my colleagues
 8   texted me, pinged me, it was history off, but I didn't
 9   initiate it.  It had substance, so then I went and turned
10   history on, but it wasn't clear to me that, like, if I turn
11   history on if it retroactively gets everything.  And then I
12   put it into an email because I thought -- I was trying to
13   figure out how to do this.
14           So I -- broadly speaking, I tried to follow the
15   terms of the litigation hold and do things in a way that
16   were different than how I had done them for a decade.  And
17   obviously, like, I made a mistake, but it wasn't
18   intentional.
19   Q   And I want to make sure I understand what you just
20   said.
21           Your understanding, at the time at least, was that
22   if someone sent you a chat with history off by default, even
23   if you turned history on, it wouldn't save the prior chats;
24   right?
25   A   I didn't know.
```

138

1  Q    But your belief was it wouldn't save them, that's why
2  you send yourself a copy of the chat you're recalling;
3  right?
4  A    In that case, yeah.
5  Q    Okay.  Do you have any sense of how many other chats
6  related to the ad tech business were destroyed because you
7  didn't switch them to history on after receiving the
8  litigation hold in October of 2019?
9  A    No.
10 Q    More than 50?
11 A    No.  I have no -- I don't even -- we documented -- I
12 think it's proved by all of this -- every decision that we
13 made.  The lead-up debating to the decision, the actual
14 decision, the implementation plan with the decision.
15          The one thing I do know is that we were really
16 good at documenting and debating, and to the extent I made a
17 mistake a couple times, it was not intentional.  It was not
18 to hide anything.  It was to -- everything was written down
19 everywhere.
20 Q    I want to understand that a little better.
21          We've looked at two chats where you asked to go
22 off the record after October of 2019.
23          Sitting here today, do you have any estimate of
24 the number of other chats related to the ad tech business
25 that were off the record after 2019?

139

| | |
|---|---|
| 1 | A    No.  No. |
| 2 | Q    You have no idea if it could be more than 200, say? |
| 3 | A    No.  I tried my hardest.  That would be unusual.  I |
| 4 | tried my hardest not to. |
| 5 |         MR. TESLICKO:  Okay.  With that, Your Honor, we |
| 6 | pass the witness. |
| 7 |         THE COURT:  All right.  Will you be using the |
| 8 | depositions at all in cross-examination? |
| 9 |         MR. ISAACSON:  No. |
| 10 |         THE COURT:  All right. |
| 11 |                  CROSS-EXAMINATION |
| 12 | BY MR. ISAACSON: |
| 13 | Q    Mr. LaSala, I'm Bill Isaacson, an attorney for Google. |
| 14 |         Let's introduce yourself a little bit more.  Where |
| 15 | do you work currently? |
| 16 | A    Currently? |
| 17 | Q    Yeah. |
| 18 | A    Columbia Business School. |
| 19 | Q    And what are you doing at Columbia? |
| 20 | A    Teaching product management. |
| 21 | Q    Okay.  And what are -- what curriculum are you teaching |
| 22 | there? |
| 23 | A    It's around building software products.  Product |
| 24 | management.  Software products. |
| 25 | Q    And you've been at Columbia how long? |

140

Stephanie Austin, RPR, CRR USDC/EDVA (607) 743-1894

1      MR. ISAACSON: Is this one of the ones with the
2 natives? No. Oh. Some of these have charts -- exhibits
3 have charts in it that are very hard to read, and so just
4 for the ease of readability, we've put the native versions
5 on the back, which are bigger in case we need to look at
6 them. We're not seeking to move the natives or anything,
7 it's just a visual aid.
8      THE COURT: All right. We're not talking
9 redaction issues?
10      MR. ISAACSON: No. There's no redaction issues.
11 This is --
12      THE COURT: All right. That's fine.
13      And, you know what, it's just about 1:00, and
14 since we're starting a new topic, why don't we take the
15 lunch break now. We'll start up again at 2:00. All right.
16      (Court recessed for lunch at 12:59 p.m.)
17      ----------------------------------
18 I certify that the foregoing is a true and accurate
19 transcription of my stenographic notes.
20
21      _____
           *Stephanie Austin*
22      Stephanie M. Austin, RPR, CRR
23
24
25

163