**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | |
|---|---|
| THE STATE OF TEXAS, et al.,<br><br>       Plaintiffs,<br><br>v.<br><br>GOOGLE LLC,<br><br>       Defendant. | Civil Action No. 4:20-cv-00957-SDJ<br><br>Hon. Sean D. Jordan |

## **PLAINTIFF STATES' RESPONSE IN OPPOSITION TO GOOGLE'S MOTION TO STRIKE JURY DEMAND**

## <u>INTRODUCTION</u>

Last year, the Supreme Court reaffirmed that the Seventh Amendment protects the right to a jury trial in enforcement actions seeking civil penalties. *SEC v. Jarkesy*, 603 U.S. 109 (2024). Unmoved by that binding precedent, Google seeks to avoid the judgment of twelve citizens by attempting to persuade this Court that *no* DTPA claim, and *no* enforcement action need *ever* be tried to a jury, even when the government seeks substantial civil penalties. On Google's telling, a defendant who deceives investors must answer to his peers, while a company that deceives consumers is entitled to a bench trial. If that nonsensical hair splitting seems to defy *Jarkesy*, that is because it does. Google toggles from the nonsensical to the frivolous toward the end of its motion, contending that the penalty the States seek is so excessive under the Eighth Amendment that the Court *cannot allow* a jury to hear it. This flips the proper analysis upside down, removing the safeguard of a jury in cases that need it most. The Court should reject Google's arguments and deny the motion.

## <u>LEGAL STANDARD</u>

The right to a jury trial is sacrosanct in federal court. It is "of such importance and occupies so firm a place in our history and jurisprudence that any seeming curtailment of the right" must "be scrutinized with the utmost care." *Dimick v. Schiedt*, 293 U.S. 474, 486 (1935). When the Constitution was submitted to the States for ratification, citizens balked at the lack of a "provision for the trial by jury in civil cases." The Federalist No. 83, 495 (Clinton Rossiter ed. 1961) (Alexander Hamilton). To quell their concerns, one of the twelve amendments that the First Congress submitted to the States for ratification provided: "In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved." U.S. Const. amend. VII.

1

Although the Seventh Amendment certainly covers "common-law forms of action recognized" in 1791, *Curtis v. Loether*, 415 U.S. 189, 193 (1974), it also covers "all suits, which are not of equity and admiralty jurisdiction, whatever may be the peculiar form which they may assume." *Ross v. Bernhard*, 396 U.S. 531, 533 (1970) (quoting *Parsons v. Bedford, Breedlove & Robeson*, 28 U.S. 433, 447 (1830)). Whether a claim is statutory does not factor into the analysis. *See Tull v. United States*, 481 U.S. 412, 414-15, 417-25 (1987). Rather, if a claim is "legal in nature" then there is a right to a jury trial. *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 53 (1989).

"To determine whether a suit is legal in nature," courts must "consider the cause of action and the remedy it provides." *Jarkesy*, 603 U.S. at 122-23. Accounting for these two factors, courts look for "a single historical analog" that most closely resembles the cause of action at issue. *Tull*, 481 U.S. at 421 n.6. If that best historical analog is legal, the jury right attaches; but "those actions that are analogous to 18th-century cases tried in courts of equity or admiralty do not require a jury trial." *Id.* at 417. The cause of action is rarely identical to the best historical analog. *Jarkesy*, 603 U.S. at 126. A cause of action may be "broader," "narrower," or both, but still analogous. *Id.*

Although courts must consider the cause of action, the remedy sought is the "more important" factor. *Tull*, 481 U.S. at 421. Because many claims are both equitable and legal in nature, often "the remedy is all but dispositive." *Jarkesy*, 603 U.S. at 123. When a lawsuit seeks legal remedies, the Seventh Amendment protects the right to a jury trial. When the relief sought is purely equitable, there is no Seventh Amendment right to a jury trial.

## **ARGUMENT**

### I.    **The States are Entitled to a Jury Trial on Their DTPA Claims.**

The Seventh Amendment requires a jury trial on the DTPA claims for two reasons: first, because civil penalties are a legal remedy, and second, because the DTPA claims are analogous to

actions at law. Google's arguments to the contrary either misconstrue or fail to mention on-point cases from the Supreme Court and Fifth Circuit.

### A.  DTPA Civil Penalties are Legal, Not Equitable, Remedies.

A jury right attaches to the claims here because the States seek civil penalties, which are legal, not equitable, remedies. *Jarkesy* is on all fours. In *Jarkesy*, "the SEC s[ought] civil penalties, a form of monetary relief. While monetary relief can be legal or equitable, money damages are the prototypical common law remedy." 603 U.S. at 123 (citing *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 255 (1993)). To decide "whether a monetary remedy is legal," courts must examine "if it is designed to punish or deter the wrongdoer, or, on the other hand, solely to 'restore the status quo.'" *Id.* (quoting *Tull*, 481 U.S. at 422). Civil penalties, of course, do not "serve a remedial purpose, but rather can only be explained as [] serving either retributive or deterrent purposes." *Austin v. United States*, 509 U.S. 602, 610 (1993) (cleaned up). In *Jarkesy*, the Supreme Court found it dispositive that, although "the SEC can choose to compensate injured shareholders from the civil penalties it collects . . . it is not required to do so," and therefore the "penalty *by definition* does not 'restore the status quo' and can make no pretense of being equitable." 603 U.S. at 124 (emphasis added). The same points are dispositive here.

Civil penalties serve quintessential *legal* purposes, such as deterrence and punishment. *See, e.g., Watson Lab'ys, Inc. v. State*, 241 So. 3d 573, 593 (Miss. 2018) (civil penalties under Mississippi's DTPA seek "to deter [the] repetition" of illegal conduct (quotation omitted)); *State ex rel. Wilson v. Ortho-McNeil-Janssen Pharms., Inc.*, 777 S.E.2d 176, 203 n.31 (S.C. 2015) ("the appropriate factors for assessing a civil penalty in an Attorney General directed claim under" the DTPA include "the deterrence value of the assessed penalties" and various factors geared toward punishing the defendant); *Molano v. State*, 262 S.W.3d 554, 559 (Tex. App. 2008) (Texas DTPA "authorizes civil penalties to punish violators for their unlawful conduct" (citation omitted)).

Two Supreme Court cases (*Jarkesy* and *Tull*) have held that civil penalties are legal remedies, not equitable. Google has cited no controlling—or even persuasive—authority that civil penalties are ever equitable. "Indeed, courts in equity refused to enforce such penalties." *Tull*, 481 U.S. at 424. Beyond that historical problem, Google does not even try to explain how civil penalties restore the status quo or otherwise serve a traditional equitable purpose. They clearly do not. Google's own summary judgment motion admits that "[t]he penalties the States seek here will *not* be paid to any allegedly injured party; to the contrary, they will be paid to State treasuries." Dkt. 672 at 10 n.6. And so, just as in *Jarkesy*, the "penalty by definition does not 'restore the status quo' and can make no pretense of being equitable." 603 U.S. at 124. As in prior cases, the civil penalties sought here are legal, not equitable, which is "all but dispositive." *Id.* at 123.

## B. The States' DTPA Claims Are Traceable to Common-law Actions.

DTPA claims for civil penalties are *more* analogous to common-law actions than to any equitable action. Specifically, the Supreme Court has held that actions seeking civil penalties are analogous to actions in debt: "Prior to the enactment of the Seventh Amendment, English courts had held that a civil penalty suit was a particular species of an action in debt that was within the jurisdiction of the courts of law." *Tull*, 481 U.S. at 418 (citing *Atcheson v. Everitt*, 98 Eng. Rep. 1142 (K.B. 1775); *Calcraft v. Gibbs*, 101 Eng. Rep. 11 (K.B. 1792)). "Actions *by the Government* to recover civil penalties under statutory provisions therefore historically have been viewed as one type of action in debt requiring trial by jury." *Id.* at 418-19 (emphasis added); *see also Jarkesy*, 603 U.S. at 122.

Alternatively, like the civil penalty claims under Rule 10b–5 in *Jarkesy*, DTPA claims are analogous to common-law fraud claims for Seventh Amendment purposes. *See In re Takata Airbag Prods. Liab. Litig.*, 464 F. Supp. 3d 1291, 1302 (S.D. Fla. 2020); *see also Patane v. Nestle Waters N. Am., Inc.*, 478 F. Supp. 3d 318, 354 (D. Conn. 2020). Both bar "[o]missions and

[m]isstatements." *Takata Airbag*, 464 F. Supp. 3d at 1303. Although the court did not explicitly say so, the link helps explain why there is a Seventh Amendment right to a jury trial in suits for civil damages under the FTC Act. *See United States v. Dish Network, L.L.C.*, 754 F. Supp. 2d 1002, 1003-04 (C.D. Ill. 2010).

There is no traditional equitable claim that is analogous to a DTPA claim.[1] Google correctly recognizes that the proper question is "whether a statutory action is *more similar* to cases that were tried in courts of law or courts of equity." Motion at 2 (emphasis added). But after asking the right question, Google answers it with a non-sequitur: DTPA claims are "novel[]" and do not codify the common law. *Id.* at 3. That is irrelevant. The whole point of looking to historical *analogs* is to properly categorize *novel* claims as either legal or equitable in nature. Next, Google quotes *Atlas Roofing*, which addresses public rights (which are not at issue here), and was narrowed—if not overruled—by *Jarkesy*. *Id.* (quoting *Atlas Roofing Co. v. Occupational Safety & Health Rev. Comm'n*, 430 U.S. 442, 461 (1977)). That is not enough. The Seventh Amendment "embrace[s] all suits, which are not of equity and admiralty jurisdiction." *Ross*, 396 U.S. at 533 (quoting *Parsons*, 28 U.S. at 447). Google needed to proffer an equitable analog to a DTPA claim. *See, e.g.*, *In re Abbott*, 117 F.4th 729, 736 (5th Cir. 2024) (denying a jury trial right only after identifying an equitable analog). If Google were right, *Tull* would have come out the other way, since penalties under the Clean Water Act are obviously not a "codification" of the common-law action in debt. Rather, *Tull* and *Jarkesy* show that the common-law analog need not be "identical"; it can be broader, narrower, or both. 603 U.S. at 126.

---

[1] Claims seeking equitable *remedies*—such as disgorgement or unjust enrichment—may be analogous to some traditional equitable claim. But all equitable remedies will be heard by the Court in this case.

## C.  Google's Arguments Misconstrue or Ignore Controlling Precedent.

Because controlling precedent compels denying Google's motion, it cobbles together a patchwork of inapplicable case law. The Court should not be fooled.

### 1.  Parties are entitled to have a jury decide claims for legal relief even if the legal claims are incidental to equitable claims.

Understanding that the States seek legal remedies—civil penalties—Google argues that this relief is merely incidental to the claims for equitable relief. But they clearly are not, and it would not matter if they were. Google quotes *Tull* (at 5) but ignores that the phrase it quotes is summarizing what the "Government next contends," not what the Court holds. 481 U.S. at 424. The Court's actual *holding* emphasized the "flaws" in that argument. *Id.* First, and dispositive here: "while a court in equity may award monetary restitution as an adjunct to injunctive relief, *it may not enforce civil penalties*,"[2] even when the issues are intertwined (since civil penalties are always legal). *Id.* (emphasis added). Second, the Court deemed the "$22 million" penalty as too large to "be considered incidental to" the equitable relief. *Id.* at 424-25. That is true here too given the size of the penalties sought.[3]

Beyond *Tull*, Google ignores the binding authority of *Dairy Queen, Inc. v. Wood*, 369 U.S. 469 (1962), where the Supreme Court rejected the exact argument that Google makes here. There, the plaintiffs sued seeking an accounting and an injunction barring trademark infringement. *Id.* at 474-75. Incidental to those claims for equitable relief, the plaintiffs also sought a judgment for

---

[2] Modern practice in state courts with separate courts of equity may—and some do—allow courts of equity to grant civil penalties, but the inquiry for Seventh Amendment purposes is historical.

[3] If it mattered, Google has not even shown that the civil penalties claims are "incidental." Its argument is apparently based solely on the statutory text that Texas can request civil penalties "in addition to" its requests for equitable remedies. Motion at 5. That wording does not show that civil penalties are "dependent upon injunctive relief." Motion at 6. Beyond that, the Supreme Court in *Tull* looked at the complaint in that specific case, not the statute in general to determine what was "incidental."  Here, the substantial penalty at issue is not incidental.

what the defendant owed them for using the trademark without paying required licensing fees. *Id.* The defendant demanded a jury trial over the request for money damages that was incidental to, and intertwined with, the request for an accounting. The district court struck the demand, and the Third Circuit denied mandamus relief. The Supreme Court reversed. As it explained, "insofar as the complaint requests a money judgment it presents a claim which is unquestionably legal" that triggered the right to a jury trial on that issue. *Dairy Queen*, 369 U.S. at 476. The Supreme Court rejected the "view that the right to trial by jury may be lost as to legal issues [that are] 'incidental' to equitable issues." *Id.* at 470.

The Fifth Circuit reached the same conclusion. As Judge Wisdom explained, "where the presence of legal and equitable causes in the same case requires the selection between a jury and a non-jury determination of certain common issues, the discretion of the trial court is very narrowly limited and *must*, wherever possible, be exercised to preserve jury trial." *Thermo-Stitch, Inc. v. Chemi-Cord Processing Corp.*, 294 F.2d 486, 490 (5th Cir. 1961) (cleaned up; emphasis added). This is true even if "the equitable cause clearly outweigh[s] the legal cause so that the basic issue of the case taken as a whole is equitable"; "[a]s long as any legal cause is involved the jury rights it creates control." *Id*. at 491. The law remains the same today. *See United States v. ERR, LLC*, 35 F.4th 405, 411 (5th Cir. 2022) (citations omitted). Google cites none of these binding decisions, nor are they cited by the cases Google relies upon in § II(a)(ii) of its motion. Recently, the Fifth Circuit interpreted *Dairy Queen* to mean that when an equitable "claim is intertwined with" a legal claim, "a jury trial is required on the overlapping issues to preserve the Seventh Amendment right." *Id.* at 414 (citations omitted). That principle controls here.

True, there are equitable issues here. That is why the States consented to bifurcating the proceedings so that the legal issues could be resolved first—as required by *Beacon Theatres, Inc.*

7

*v. Westover*, 359 U.S. 500 (1959)—followed by the equitable issues. The States seek only to protect the Seventh Amendment right to a jury trial for their legal claims. Under *Dairy Queen*, it is immaterial whether the legal claims are incidental to the equitable claims. This Court should apply *Jarkesy*, *Tull*, *Dairy Queen*, and *ERR,* even though Google did not.

>    *2.   None of the state-law issues Google raises displace the Seventh Amendment.*

Google briefs various state-law issues, but never explains how each fits into this Court's analysis. Both sides agree that "the right to a jury trial in the federal courts is to be determined as a matter of federal law." *Simler v. Conner*, 372 U.S. 221, 222 (1963); *see* Motion at 2 (quoting this proposition). So although "the substantive dimension of the claim asserted finds its source in state law . . . the characterization of that state-created claim as legal or equitable for purposes of whether a right to jury trial is indicated must be made by recourse to federal law." *Simler*, 372 U.S. at 222 (cleaned up). This basic point nullifies Google's arguments that under different state laws civil penalties are legal or equitable or incidental or not. State terminology differs in subtle ways from federal terminology, but state-law characterization makes no federal difference.[4]

Beyond that, "[t]he Seventh Amendment, [] governs proceedings in federal court, but not in state court." *Gasperini v. Ctr. for Humans., Inc.*, 518 U.S. 415, 432 (1996) (citing *Walker v. Sauvinet*, 92 U.S. 90, 92 (1875)). Thus, States can have more expansive or less expansive jury-trial rights; there is no federal constitutional floor.[5] For that reason, state court decisions on the scope of the right to a jury trial shed no light on the issue presented here. Google's reliance on such cases rather than binding federal precedent is telling.

---

[4] The desire to avoid irrelevant issues does not mean that the States agree with Google's state-law arguments. To be clear, Google is wrong under state law too.

[5] For example, Louisiana's constitution does not provide a right to a jury trial and the statutory right is narrower than the Seventh Amendment. *See* La. Code Civ. Proc. Ann. arts. 1731-32. In Idaho, there is a diminished jury trial right when a case involves both equitable claims and legal claims. *See Idaho First Nat'l Bank v. Bliss Valley Foods, Inc.*, 824 P.2d 841, 865 (Idaho 1991).

###### 3. *FTC Act cases show the states are entitled to a jury trial.*

FTC Act cases confirm the right to a jury trial here. The FTC Act cases Google cites are irrelevant, as they correctly held that cases brought under Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), where the FTC *may seek only equitable relief*, need not be tried to a jury. *AMG Cap. Mgmt., LLC v. FTC*, 593 U.S. 67, 75 (2021) (holding § 13(b) "does not authorize the Commission directly to obtain court-ordered monetary relief"). But when the government sues under a separate FTC Act section permitting the award of *civil penalties*, the Seventh Amendment protects the right to a jury trial. *See, e.g., Dish Network,* 754 F. Supp. 2d at 1003-04.

## II.    The States are Entitled to a Jury Trial on Their Antitrust Claims.

Google concedes that "the Seventh Amendment protects the right to a jury trial of antitrust damages claims brought by private plaintiffs . . . [because] antitrust claims were actionable at common law and are considered to be legal in nature." Motion at 8 (citations omitted). Still, Google argues that the States are not entitled to a jury trial on their state antitrust claims because there is no history of sovereigns trying antitrust claims to a jury. This argument fails for five reasons.

First, Google has waived this argument. Google's counsel conceded on the record that "there is a jury trial right to a trial on liability in the antitrust claims." Tr. 11/6/24, 31:20-21. It cannot unring the bell with a footnote in its motion.

Second, Google cites no cases for the proposition that courts look to the identity of the plaintiff when determining whether the Seventh Amendment guarantees a jury trial. Rather, both cases Google cites point to the "action," not the parties. *Chauffeurs, Teamsters & Helpers, Loc. No. 391 v. Terry*, 494 U.S. 558, 565 (1990) (quoting *Tull*, 481 U.S. at 417); *Jarkesy*, 603 U.S. at 121. That is why in *Jarkesy* the Court did not consider the identity of the sovereign as a party when reaching its decisions. *See* 603 U.S. at 124-26. Rather, it looked to whether similar actions were triable at common law. The Fifth Circuit has done the same. *See Austin v. Shalala*, 994 F.2d 1170,

1175 (5th Cir. 1993) (when the Federal Government sues, the usual Seventh Amendment rules apply when deciding whether there is a right to a jury trial).

Third, Google's arguments defy binding precedent. The States seek civil penalties. Again, "[a]ctions *by the Government* to recover civil penalties under statutory provisions [] historically have been viewed as one type of action in debt requiring trial by jury." *Tull*, 481 U.S. at 418-19 (emphasis added). This Court cannot follow the path recommended by a scholarly declarant over the commands of the Supreme Court.[6] The declaration also relates solely to "damages," not penalties, and asserts, with no explanation, that the proper analog for this case is for "'satisfaction in damages for any personal wrong' against the monarch." Dkt. 690-1 at 4. This is likely because it was submitted in the Federal Government's action, which involved claims for damages the *Federal Government sought directly*. This is an enforcement action for civil penalties, not for damages to redress "personal wrongs" against governments, so the arguments are irrelevant.

Fourth, with respect to the state-law antitrust claims, the remedies (including civil penalties) and nature of the claim produce the same result as with the DTPA claims. Antitrust civil penalties are meant to punish and deter. For example, Mississippi calls the civil penalties imposed for antitrust violations a "punishment," *Grenada Lumber Co. v. State ex rel. Att'y Gen.*, 54 So. 8, 10 (Miss. 1911), meant to "deter[]" future violations. *Hood ex rel. State v. BASF Corp.*, No. 56863, 2006 WL 308378, at *11 (Miss. Ch. Jan. 17, 2006).[7]

---

[6] The declaration differs from binding precedent in other ways too. For example, it cites two sources (one of which is a student note) for the proposition that "complex cases" would not be tried to a jury, but obviously Seventh Amendment precedents disagree. Dkt. 690-1 at 5.

[7] *BASF* also shows why Google's reliance on state cases misses the mark. Mississippi law differs significantly from federal law. For example, Mississippi has separate equity and law courts, and the Mississippi Legislature's assignment of cases to those courts differs from how cases were divided in 1791. Thus, whether a party is entitled to a jury trial in Mississippi state court is unrelated to whether there is a right to a jury trial in federal court.

Finally, even if the States were not independently entitled to a jury trial on their antitrust claims, those claims must still be tried to a jury because they are intertwined with the DTPA claims for which the States are entitled to a jury trial. In federal court for Seventh Amendment purposes, when an equitable "claim is intertwined with" a legal claim, "a jury trial is required on the overlapping issues to preserve the Seventh Amendment right." *ERR*, 35 F.4th at 414 (citations omitted). For example, the States allege that Google deceived advertisers, publishers, and the public about its Dynamic Revenue Share program, Dkt. 712 at 10-12, 47-50, and Project Bernanke, *id.* at 12-14, 50-53. There is no way to untangle the DTPA claims relating to DRS and Bernanke from the state antitrust claims—all the antitrust counts in the fourth-amended complaint allege the deceptive and anticompetitive aspects of DRS and Bernanke.  Because the antitrust claims are intertwined with the DTPA claims, they must be tried to a jury whether they are equitable or legal.

**III.    A Jury Should Decide the Amount of Civil Penalties.[8]**

### A. Google's Eighth Amendment Argument Lacks Merit.

Google argues (at 14-15) that the Court must set the civil penalty amount to avoid Eighth Amendment problems. This argument is nonsensical on its face and ignores applicable law on both substance and procedure. Start with the substantive law, which is crystal clear: "No matter how excessive (in lay terms) an administrative fine may appear, if the fine does not exceed the limits prescribed by the statute authorizing it, the fine does not violate the Eighth Amendment." *Newell Recycling Co. v. EPA*, 231 F.3d 204, 210 (5th Cir. 2000). In other words, civil penalties are not analyzed under *United States v. Bajakajian*, 524 U.S. 321 (1998). True, other Circuits engage in the *Bajakajian* analysis for civil penalties. *E.g.*, *United States v. Aleff*, 772 F.3d 508, 512 (8th Cir. 2014). But this Court is bound by *Newell Recycling*, not *Aleff*.

---

[8] The State of South Carolina does not join in Section III of the Response.

Next, consider the procedure. The proper time to consider whether a civil penalty violates the Eighth Amendment is after the verdict in a post-trial motion seeking remittitur. *See, e.g.*, *Yates v. Pinellas Hematology & Oncology, P.A.*, 21 F.4th 1288, 1297 (11th Cir. 2021); *United States ex rel. Bunk v. Gosselin World Wide Moving, N.V.*, 741 F.3d 390, 405 (4th Cir. 2013) (agreeing to remittitur). Even Google's favorite quote from *Bajakajian*—district courts must assess penalties "in the first instance," 524 U.S. at 336—was discussing how appellate courts review district courts' findings. The quote had nothing to do with whether juries could decide the civil penalty amount. The proper time to consider the constitutionality of a penalty is after the verdict because if the jury stayed within a permissible amount (or found for Google), there would be no constitutional violation. Google cites no case in which any court has ever stricken a jury demand on these grounds. There are none, because the argument is preposterous.

**B.  The Seventh Amendment Requires A Jury Determine Civil Penalties.**

Google relies almost exclusively on *Tull* for its argument, but *Tull* was an unusual case. The typical rule—that juries calculate monetary amounts for remedies—has been applied for almost two hundred years. In *Dimick*, the Court held that the Seventh Amendment bars courts from increasing a jury verdict. 293 U.S. at 486. That is because deciding the amount to award a plaintiff is a factual issue that is in the sole discretion of the jury. *See id.* And in *Bank of Hamilton v. Dudley's Lessee*, the Court said a jury must calculate compensation for improvements made to real property by a lessee. 27 U.S. 492, 525 (1829).

The Supreme Court in *Tull* departed from this longstanding view based on "legislative history" from which it concluded that "Congress intended that trial judges perform the highly discretionary calculations necessary to award civil penalties after liability is found." 481 U.S. at 425. Congress apparently assumed the penalties would be set based on EPA's "penalty calculation policy," but did not actually enact any statutory criteria (though some were added later). *Id.* at

422 n.8. The next question was whether Congress's decision violated the Constitution. Lacking any "evidence" of what "the Framers meant," the Court reasoned that since Congress could fix the amount, it could also delegate the question to a court, which it had apparently done. *Id.* at 426 & n.9. The calculation contemplated by Congress was among "the kinds of calculations traditionally performed by judges." *Id.* at 427. And so, over a vigorous dissent by Justice Scalia, the Court allowed the judge, rather than the jury, to decide on penalties.

The Supreme Court quickly cast doubt on this portion of *Tull*. In *Feltner v. Columbia Pictures Television, Inc.*, it held that the question of statutory damages must be decided by a jury. 523 U.S. 340, 355 (1998). Justice Thomas's opinion for the Court warned that the "portion of our opinion [in *Tull* that Congress could authorize trial judges to assess the amount of civil penalties] was arguably dicta," *id.* at 354 n.8, cited Justice Scalia's dissent, *id.* at 355, and emphasized that the *Tull* Court was "presented with no evidence" of the history, *id*. Beyond that, *Tull* was "at least in tension" with multiple other cases that *did* require the jury to calculate monetary amounts. *Id.* at 355 n.9.

The Supreme Court's recent *Jarkesy* case further undercuts this portion of *Tull*. Unlike *Tull*, there were statutory criteria in *Jarkesy*, and those criteria made clear that the penalty calculation addressed punishment and deterrence, which is quintessentially for the jury. The Court expressly relied on the factors to be considered when deciding whether to assess civil penalties: "(1) whether the [] misconduct involved fraud, deceit, manipulation, or deliberate or reckless disregard for regulatory requirements, (2) whether it caused harm, (3) whether it resulted in unjust enrichment . . . (4) whether the defendant [] previously violated securities laws . . . (5) the need for deterrence, and (6) other matters as justice may require." *Jarkesy*, 603 U.S. at 123 (cleaned up). Several of the factors "concern culpability, deterrence, and recidivism. Because they tie the availability of civil

penalties to the perceived need to punish the defendant rather than to restore the victim, such considerations are legal rather than equitable." *Id.* at 123-24.

Similarly, the "size of the available remedy" depends "on the culpability of the defendant and the need for deterrence, not the size of the harm that must be remedied. Indeed, showing that a victim suffered harm is not even required to" trigger a higher penalty. *Jarkesy*, 603 U.S. at 124. "Since nothing in this analysis turns on 'restor[ing] the status quo,' these factors show that these civil penalties are designed to be punitive." *Id.* (quoting *Tull*, 481 U.S. at 422).

This reasoning makes sense only if a jury is supposed to decide legal issues addressing deterrence and retribution. If juries are supposed to decide issues related to "culpability . . . and the need for deterrence," *id.*, then the presence of legal punishment criteria within the penalties calculation gives a strong reason to give the decision to a jury. On the other hand, if courts *always* decide the amount of a civil penalty—as Google claims—then this long section of *Jarkesy* is beside the point because the resolution of the case will not affect who calculates penalties.

This case is similar to *Jarkesy* and far from *Tull*. The civil penalties here are cabined by statutory criteria, and those criteria emphasize punishment and deterrence in a way that is distinctly legal under *Jarkesy*, and far from the calculations *Tull* said judges do every day. Moreover, unlike *Tull* where congressional intent was paramount, here there is no federal statute that the Court would need to strike down as unconstitutional to deny Google's motion; no federal law *prohibits* trying DTPA penalties to a jury. And there is no question that the intent of state lawmakers in Texas was to entrust DTPA civil penalties calculations to juries. *See State v. Credit Bureau of Laredo, Inc.*, 530 S.W.2d 288, 289-92 (Tex. 1975).

Still, Google's argument that this Court should follow how state courts determine civil penalties also lacks merit. Again, there is no federal right to a civil jury trial in state courts. Thus,

state legislatures often have judges decide issues that juries must decide in federal court. That is what some state legislatures have done here.

**C. The Court Should Submit the Issue to the Jury Even If It Is Not Required.**

Even if the Court holds that a jury is not required to determine the amount of penalties, that does not require the Court to strike the jury demand. After all, "the right to jury trial is a constitutional one . . . while no similar requirement protects trials by the court." *Beacon Theatres,* 359 U.S. at 510. As a result, "[o]ne guiding beacon has been lit by the Supreme Court: when in doubt, grant a jury trial." *City of New York v. Beretta, U.S.A. Corp.*, 312 F. Supp. 2d 411 (E.D.N.Y. 2004) (citations omitted). Supreme Court "decisions recognize that there is a strong federal policy favoring jury trial of fact issues. The strength of this policy in itself may provide the answer in cases in which the historical test gives no clear guidance." Wright & Miller, 9 Fed. Prac. & Proc. Civ. § 2302.1 (4th ed.). Here, both the federal courts and the States have a policy interest in favor of juries, which should weigh strongly in favor of trying penalties to a jury.

"In an action not triable of right by a jury, the court, on motion or on its own . . . may try any issue with an advisory jury." Fed. R. Civ. P. 39(c)(1). This Court has complete discretion on whether to use an advisory jury. *See* Wright & Miller, *supra* § 2335. Submitting the penalty question to the jury will resolve the case quicker. Moreover, further dividing the case raises practical difficulties. Rather than giving a verdict in the form of a penalties number, the jury would need to determine only liability. The Court would need to police which evidence is relevant to liability versus penalties, which is likely to be slippery. At minimum, the Court should submit the penalty question to an advisory jury, which can be one and the same as the mandatory jury for determining jury-triable issues.

## <u>CONCLUSION</u>

The Court should deny Google's motion.

15

DATED: January 6, 2025

Respectfully submitted,

/s/ W. Mark Lanier
W. Mark Lanier

Alex J. Brown
Alex.Brown@LanierLawFirm.com
Zeke DeRose III
Zeke.Derose@LanierLawFirm.com
Jonathan P. Wilkerson
Jonathan.Wilkerson@LanierLawFirm.com
10940 W. Sam Houston Pkwy N.
Suite 100
Houston, TX 77064
(713) 659-5200


**THE LANIER LAW FIRM, PLLC**

/s/ Ashley Keller
Ashley Keller
ack@kellerpostman.com
Kiran N. Bhat
kiran.bhat@kellerpostman.com
2333 Ponce De Leon Boulevard
Suite R-240
Coral Gables, Florida 33134
(833) 633-0118

Zina Bash (Bar No. 24067505)
zina.bash@kellerpostman.com
111 Congress Avenue, Suite 500
Austin, TX 78701
(512) 690-0990

/s/ Noah S. Heinz
Noah S. Heinz
noah.heinz@kellerpostman.com
1101 Connecticut Ave., N.W., Suite 1100
Washington, DC 20036
(202) 918-1123
**KELLER POSTMAN LLC**

*Counsel for Texas, Idaho, Louisiana (The Lanier Law Firm only), Indiana, Mississippi, North Dakota, South Carolina, and South Dakota*

*Submitted on behalf of all Plaintiff States*

**NORTON ROSE FULBRIGHT US LLP**
Joseph M. Graham, Jr.
joseph.graham@nortonrosefulbright.com
Geraldine Young
geraldine.young@nortonrosefulbright.com
1550 Lamar Street, Suite 2000
Houston, Texas 77010
(713) 651-5151

Marc B. Collier
Marc.Collier@nortonrosefulbright.com
98 San Jacinto Blvd., Suite 1100
Austin, Texas 78701
(512) 474-5201

FOR PLAINTIFF STATE OF TEXAS

KEN PAXTON
Attorney General

*/s/ James R. Lloyd*
Brent Webster, First Assistant Attorney General of Texas
Brent.Webster@oag.texas.gov
James R. Lloyd, Deputy Attorney General for Civil Litigation
James.Lloyd@oag.texas.gov

**STATE OF TEXAS, OFFICE OF THE ATTORNEY GENERAL**
P.O. Box 12548
Austin, TX 78711-2548
(512) 936-1674

*Attorneys for Plaintiff State of Texas*

FOR PLAINTIFF STATE OF ALASKA:

TREG TAYLOR
ATTORNEY GENERAL


By: /s/ Jeff Pickett
Jeff Pickett
Senior Assistant Attorney General, Special Litigation Section
jeff.pickett@alaska.gov

*Attorney for Plaintiff State of Alaska*

FOR PLAINTIFF STATE OF ARKANSAS:

TIM GRIFFIN
ATTORNEY GENERAL

By: _____
AMANDA J. WENTZ
Ark. Bar No. 2021066
Assistant Attorney General
Office of the Arkansas Attorney General
323 Center Street, Suite 200
Little Rock, AR 72201
(501) 682-1178
Amanda.Wentz@ArkansasAG.gov

*Attorney for Plaintiff State of Arkansas*

FOR PLAINTIFF STATE OF FLORIDA:

ASHLEY MOODY, Attorney General

/s/ Lee Istrail
LEE ISTRAIL, Assistant Attorney General
FL Bar No. 119216

LIZABETH A. BRADY, Director, Antitrust Division
R. SCOTT PALMER, Special Counsel and Chief of Complex Enforcement
ANDREW BUTLER, Assistant Attorney General
CHRISTOPHER KNIGHT, Assistant Attorney General


Office of the Attorney General, State of Florida
PL-01 The Capitol
Tallahassee, Florida 32399
Phone: 850-414-3300
Email: scott.palmer@myfloridalegal.com

*Attorneys for Plaintiff State of Florida*

FOR PLAINTIFF STATE OF IDAHO:

RAÚL R. LABRADOR
Attorney General

*/s/ John K. Olson*
John K. Olson, Deputy Attorney General

Consumer Protection Division
Office of the Attorney General
954 W. Jefferson Street, 2nd Floor
P.O. Box 83720
Boise, Idaho 83720-0010
Telephone:   (208)   334-2424
john.olson@ag.idaho.gov

*Attorneys for Plaintiff State of Idaho*

FOR PLAINTIFF STATE OF INDIANA:

THEODORE E. ROKITA
Attorney General

*/s/ Jesse J. Moore*
Jesse J. Moore
Deputy Attorney General – Consumer Litigation
302 W. Washington St.
IGCS - 5th Floor
Indianapolis, IN 46204-2770
Phone: (317) 234-1479
Fax: (317) 232-7979
Email: jesse.moore@atg.in.gov

*Attorneys for Plaintiff State of Indiana*

FOR PLAINTIFF COMMONWEALTH OF KENTUCKY:

RUSSELL COLEMAN
Attorney General

*/s/ Philip R. Heleringer*
Christian J. Lewis, Commissioner of the Office of Consumer Protection
christian.lewis@ky.gov
Philip R. Heleringer, Executive Director of the Office of Consumer Protection
philip.heleringer@ky.gov
Jonathan E. Farmer, Deputy Executive Director of the Office of Consumer Protection
jonathan.farmer@ky.gov
Office of the Attorney General
Commonwealth of Kentucky
1024 Capital Center Drive, Suite 200
Frankfort, Kentucky 40601
Tel: 502-696-5300

*Attorneys for Plaintiff Commonwealth of Kentucky*

FOR PLAINTIFF STATE OF LOUISIANA:

By: */s/ Patrick Voelker*
Liz Murrill, Attorney General
Michael Dupree, Assistant Attorney General
Patrick Voelker, Assistant Attorney General
Office of the Attorney General, State of Louisiana
Public Protection Division
1885 North Third St.
Baton Rouge, Louisiana 70802
(225) 326-6400
voelkerp@ag.louisiana.gov

*s/ James R. Dugan, II*
James R. Dugan, II (*pro hac vice*)
TerriAnne Benedetto (*pro hac vice*)
The Dugan Law Firm
365 Canal Street
One Canal Place, Suite 1000
New Orleans, LA 70130
PH:   (504) 648-0180
FX:   (504) 649-0181
EM:   jdugan@dugan-lawfirm.com
        tbenedetto@dugan-lawfirm.com

James Williams
CHEHARDY SHERMAN WILLIAM, LLP
Galleria Boulevard, Suite 1100
Metairie, LA 70001
PH:   (504) 833-5600
FX:   (504) 833-8080
EM:    jmw@chehardy.com

*Attorneys for Plaintiff State of Louisiana*

FOR PLAINTIFF STATE OF MISSISSIPPI:

LYNN FITCH, ATTORNEY GENERAL
STATE OF MISSISSIPPI

By:    */s/ Garrett S. Mascagni*
       Garrett S. Mascagni
       Special Assistant Attorney General
       Consumer Protection Division
       Mississippi Attorney General's Office
       Post Office Box 220
       Jackson, Mississippi 39205
       Telephone: 601-359-4223
       Fax: 601-359-4231
       Garrett.Mascagni@ago.ms.gov

       *Attorney for Plaintiff State of Mississippi*

FOR PLAINTIFF STATE OF MISSOURI:

ANDREW BAILEY
Attorney General

*/s/ Michael Schwalbert*
Michael.Schwalbert@ago.mo.gov
Missouri Attorney General's
Office
815 Olive St.
Suite 200
St. Louis, MO 63101
Tel: 314-340-7888

*Attorneys for Plaintiff State of Missouri*

FOR PLAINTIFF STATE OF MONTANA:

AUSTIN KNUDSEN
Montana Attorney General


*/s/ Anna Schneider*
Anna Schneider
Montana Attorney General's Office
P.O. Box 200151
Helena, MT 59620-0151
Phone: (406) 444-4500
Fax: (406) 442-1894 Anna.Schneider@mt.gov


*/s/ Charles J. Cooper*
Charles J. Cooper
ccooper@cooperkirk.com
David H. Thompson
dthompson@cooperkirk.com
Brian W. Barnes
bbarnes@cooperkirk.com
Harold S. Reeves
hreeves@cooperkirk.com
COOPER & KIRK PLLC
1523 New Hampshire Avenue, NW
Washington DC 20036
Phone: (202) 220-9620
Fax: (202) 220-9601

*Attorneys for Plaintiff State of Montana*

FOR PLAINTIFF STATE OF NEVADA:

AARON D. FORD
Attorney General
ERNEST D. FIGUEROA
Consumer Advocate


*/s/ Michelle C. Badorine*
Michelle C. Badorine, Senior Deputy
Attorney General
MNewman@ag.nv.gov
Lucas J. Tucker (NV Bar No. 10252)
Senior Deputy Attorney General
LTucker@ag.nv.gov
Office of the Nevada Attorney General
100 N. Carson St.
Carson City, Nevada 89701
Tel: (775) 684-1100

*Attorneys for Plaintiff State of Nevada*

FOR PLAINTIFF STATE OF NORTH DAKOTA:

       **STATE OF NORTH DAKOTA**
       Drew H. Wrigley
       Attorney General


By:     */s/ Elin S. Alm*
       Elin S. Alm, ND ID 05924
       Assistant Attorneys General
       Consumer Protection & Antitrust Division
       Office of Attorney General of North Dakota
       1720 Burlington Drive, Suite C, Bismarck, ND 58503-7736
       (701) 328-5570
       (701) 328-5568 (fax)
       ealm@nd.gov

       *Attorneys for Plaintiff State of North Dakota*

FOR PLAINTIFF COMMONWEALTH OF PUERTO RICO:

*/s/ Domingo Emanuelli-Hernández*
Domingo Emanuelli-
Hernández Attorney General
Thaizza Rodríguez Pagán
Assistant Attorney
General PR Bar No.
17177
P.O. Box 9020192
San Juan, Puerto Rico 00902-0192
Tel: (787) 721-2900, ext. 1201, 1204
trodriguez@justicia.pr.gov

Kyle G. Bates
HAUSFELD LLP
600 Montgomery Street, Suite 3200
San Francisco, CA 94111

*Attorneys for Plaintiff Commonwealth of Puerto Rico*

FOR PLAINTIFF STATE OF SOUTH CAROLINA:

ALAN WILSON
Attorney General


/s/ *Mary Frances Jowers*
Mary Frances Jowers
Assistant Deputy Attorney General
W. Jeffrey Young
Chief Deputy Attorney General
C. Havird Jones, Jr.
Senior Assistant Deputy Attorney General
South Carolina Attorney General's Office
P.O. Box 11549
Columbia, South Carolina 29211-1549
Phone: 803-734-5855
Email: mjowers@scag.gov

Charlie Condon
Charlie Condon Law Firm, LLC
880 Johnnie Dodds Blvd, Suite 1
Mount Pleasant, SC 29464
Phone: 843-884-8146
Email: charlie@charliecondon.com

James R. Dugan, II (*pro hac vice*)
The Dugan Law Firm
365 Canal Street
One Canal Place, Suite 1000
New Orleans, LA 70130
Phone: (504) 648-0180
Email: jdugan@dugan-lawfirm.com


*Attorneys for Plaintiff State of South Carolina*

FOR PLAINTIFF STATE OF SOUTH DAKOTA:

MARTY JACKLEY
Attorney General


*/s/ Jonathan Van Patten*
Jonathan Van Patten
Assistant Attorney General
Office of the Attorney General
1302 E. Highway 14, Suite 1
Pierre, SD 57501
Tel: 605-773-3215
jonathan.vanpatten@state.sd.us

*Attorney for Plaintiff State of South Dakota*

FOR PLAINTIFF STATE OF UTAH:

Derek E. Brown
Utah Attorney General

*/s/ Matthew Michaloski*
Matthew Michaloski
Marie W.L. Martin
Assistant Attorneys General
160 East 300 South, 5th Floor
P.O. Box 140811
Salt Lake City, UT 84114
mmichaloski@agutah.gov
Telephone: (801) 440-9825

*Attorneys for Plaintiff State of Utah and*
*as counsel for the Utah Division of Consumer Protection*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on January 6, 2025, this document was filed electronically in compliance with

Local Rule CV-5(a) and served on all counsel who have consented to electronic service, per Local

Rule CV-5(a)(3)(A).

*/s/ Ashley Keller*
Ashley Keller
