# EXHIBIT 51
# REDACTED

HIGHLY CONFIDENTIAL

Page 1

```
            IN THE UNITED STATES DISTRICT COURT
              FOR THE EASTERN DISTRICT OF TEXAS
                      SHERMAN DIVISION
                          - - -

     STATE OF TEXAS et al.,          :   CASE NO.
                                     :   4:20-CV-00957-
                    Plaintiffs,      :   SDJ
                                     :
          v.                         :
                                     :
     GOGGLE, LLC,                    :
                                     :
                    Defendants.      :
                                     :
                 - HIGHLY CONFIDENTIAL -
                 PURSUANT TO PROTECTIVE ORDER

                          - - -

                       May 1, 2024

                          - - -
```

Videotaped deposition of ▇▇▇▇▇▇▇ Ph.D., taken pursuant to notice, was held at the law offices of Axinn, Veltrop & Harkrider LLP, 114 West 47th Street, New York, New York, beginning at 9:08 a.m., on the above date, before Michelle L. Gray, a Registered Professional Reporter, Certified Shorthand Reporter, Certified Realtime Reporter, Certified Court Reporter and Notary Public.

                          - - -

Job No. MDLG6673130

```
                                                              Page 2

 1     APPEARANCES:
 2
 3             NORTON ROSE FULBRIGHT US LLP
               BY:  TALBOT HANSUM, ESQ.
 4             (In person)
               98 San Jacinto Boulevard
 5             Suite 1100
               Austin, Texas 78701
 6             512.474.5201
               talbut.hansum@nortonrosefulbright.com
 7
                  - and -
 8
               NORTON ROSE FULBRIGHT US LLP
 9             BY:  JIANG (JOHN) WU, Ph.D., ESQ.
               (In person)
10             1045 West Fulton Market
               Suite 1200
11             Chicago, Illinois 60607
               312.964.7800
12             jiang.wu@nortonrosefulbright.com
               Representing the Plaintiff, State of Texas
13
14             THE LANIER LAW FIRM
               BY:  ZEKE DeROSE, III, ESQ.
15             (Zoom)
               10940 West Sam Houston Parkway North
16             Suite 100
               Houston, Texas 77064
17             713.659.5200
               zeke.derose@lanierlawfirm.com
18             Representing the Plaintiffs, States of
               South Carolina, Indiana, Idaho, Louisiana,
19             South Dakota, North Dakota, Texas and
               Mississippi
20
21
22
23
24
25
```

```
                                                         Page 3

 1              APPEARANCES:  (Cont'd.)
 2
                STATE OF TEXAS
 3              OFFICE OF THE ATTORNEY GENERAL
                BY:  LUKE WOODWARD, ESQ.
 4              BY:  TREVOR YOUNG, ESQ.
                (Zoom)
 5              300 West 15th Street
                Austin, Texas 78701
 6              512.463.2100
                luke.woodward@oag.texas.gov
 7              trevor.young@oag.texas.gov
                Representing the Plaintiff, State of Texas
 8
 9              AXINN, VELTROP & HARKRIDER LLP
                BY:  DAVID R. PEARL, ESQ.
10              BY:  SANDHYA TANEJA, ESQ.
                BY:  SAM D. SHERMAN, ESQ.
11              (In person)
                1901 L Street NW
12              Washington, D.C. 20036
                202.912.4700
13              dpearl@axinn.com
                staneja@axinn.com
14              ssherman@axinn.com
                Representing the Defendant, Google and the
15              Witness
16
17
18
19
20
21
22
23
24
25
```

```
                                                    Page 4
 1          ADDITIONAL APPEARANCES:   (Cont'd.)
 2
 3
 4       VIDEOTAPE TECHNICIANS:
 5         Danny Ortega - in person
           Jonathan Juarez - in person
 6         (Golkow)
 7
 8       LITIGATION TECHNICIAN:
 9         Vince Rosica - Zoom
           (Golkow/Precision Trial Solutions)
10
11
12       ALSO PRESENT:
           ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ - in person
13         (Inhouse Google)
14
         Jonathan Jaffe - Zoom
15       (Consultant)
16
17                      -  -  -
18
19
20
21
22
23
24
25
```

HIGHLY CONFIDENTIAL

Page 9

```
 1                      - - -
 2              THE VIDEOGRAPHER:  We are now
 3      on the record.
 4              My name is Daniel Ortega, and
 5      I'm the legal videographer for
 6      Golkow Litigation Services.
 7              Today's date is May 1st, 2024,
 8      and the time is 9:08 a.m.
 9              This video deposition is being
10      held at 114 West 47th Street, New
11      York, New York, in the matter of the
12      State of Texas et al. versus Google
13      LLC.
14              The deponent today is ██████
15              All counsel will be noted on
16      the stenographic record.
17              The court reporter today is
18      Michelle Gray and will now swear in
19      the witness.
20                      - - -
21              ... ████████ Ph.D., having
22      been first duly sworn, was examined
23      and testified as follows:
24                      - - -
25                    EXAMINATION
```

HIGHLY CONFIDENTIAL

Page 10

```
 1                        - - -
 2    BY MR. HANSUM:
 3          Q.      All right.  Good morning, █████.
 4          A.      Good morning.
 5          Q.      ██████, my name is Talbot Hansum.
 6    I'm here on behalf of the states that are suing
 7    Google in this case.
 8                  ██████, can we begin by having you
 9    state your full name for the record?
10          A.      My official name is ████████.
11    Last name is ███  But I go by ███ at Google.
12          Q.      Okay.  And I want to run through
13    some of the ground rules for a deposition.
14                  Have you ever been deposed before?
15          A.      No.
16          Q.      Okay.  So in a deposition, the court
17    reporter is recording every word that I say and
18    every word that you say.
19                  I will ask you questions, and if you
20    will give a moment pause after my question to give
21    your counsel an opportunity to provide any
22    objections that they may have, and then proceed
23    with your answer.
24                  Do you understand that?
25          A.      Yes.
```

Page 89

```
 1              specific part of Google revenue
 2              coming from DoubleClick for
 3              Publishers.
 4    BY MR. HANSUM:
 5         Q.     Okay.  So while EDA was a yield
 6    optimization technique, it also increased Google's
 7    revenue; is that fair?
 8              MR. PEARL:  Objection.  Form.
 9              THE WITNESS:  Yes.  It
10              increased Google's revenue and also
11              publishers' revenue.
12    BY MR. HANSUM:
13         Q.     Okay.  How would you label cross
14    priority ranking and EDA as a -- would you call it
15    an experiment, or a feature?  What would be the way
16    that you would normally label that?
17              MR. PEARL:  Objection.  Form.
18              THE WITNESS:  It's part of
19              feature software engineer practice.
20              It start from ideas,
21              experimentation.  There are other
22              failures.  Some of them will
23              eventually implement and roll out
24              and become a, quote, unquote,
25              features the publisher can use.
```

```
                                                          Page 90
 1                And so this -- it goes -- this
 2           -- either went to multiple stages
 3           and over a long course of the time.
 4  BY MR. HANSUM:
 5        Q.     That's fine.  I'm trying to
 6  understand just what you call these things that
 7  have names.  So like we talked about DRS and EDA
 8  and now CPR.
 9                Do you call all of those features --
10  what would you, in your day-to-day job, call those?
11                MR. PEARL:  Objection.  Form.
12                THE WITNESS:  I think we just
13           refer just by name.  So, yeah, CPR
14           is one idea to yield optimize the
15           other ideas, many other ideas.  And,
16           yeah, they are all -- but either
17           refer by names will make it very
18           clear which ideas we are -- for
19           software engineer to communicate,
20           which idea we are working on.
21  BY MR. HANSUM:
22        Q.     Okay.  I'm going to list a couple of
23  ideas that I understand as yield optimization
24  ideas.
25        A.     Okay.
```

Page 91

1      Q.     And I just want you to confirm that
2  they are.
3      A.     Sounds good.
4      Q.     So cross priority ranking, or CPR,
5  is a yield optimization idea; is that correct?
6      A.     Yes.
7      Q.     And enhanced dynamic allocation,
8  which I understand is another name for cross
9  priority ranking, is also a yield optimization
10 idea; is that right?
11     A.     It should be the same as cross
12 priority ranking, but yes.
13     Q.     Okay.
14     A.     EDA, or enhanced dynamic allocation,
15 it's a yield optimization idea.
16     Q.     Okay.  And dynamic revenue share, or
17 DRS, is also a yield optimization idea; is that
18 fair?
19     A.     Yes.
20     Q.     Okay.  And a project called Project
21 Bernanke is also a yield optimization idea; is that
22 right?
23            MR. PEARL:  Objection.  Form.
24            THE WITNESS:  I heard of the
25     Project Bernanke, but I don't work

Page 92

```
 1            on buy-side.
 2    BY MR. HANSUM:
 3            Q.     Okay.  And UPR are unified pricing
 4    rules.  Have you heard of that?
 5            A.     Yes.
 6            Q.     And is that a yield optimization
 7    idea?
 8            A.     Yes.
 9            Q.     Okay.  And reserve price
10    optimization, or RPO, is that a yield optimization
11    idea?
12            A.     Yes.  That's another idea.
13            Q.     Okay.  So I just listed CPR, EDA --
14    you understand those to be the same thing -- DRS,
15    Bernanke, UPR, and RPO, right?
16            A.     Yes.
17                   I cannot speak more on Bernanke
18    since I don't work on that.
19            Q.     Okay.  Let's -- so we'll put
20    Bernanke aside just for a second.
21                   So CPR and EDA, DRS, UPR, and RPO.
22                   Sorry.  Just to be clear, I didn't
23    say EPR, I said UPR.
24            A.     Unified pricing rules.
25            Q.     Correct, yes.  Although those are
```

```
 1              what -- how much they know.  Our
 2              client managers handle that.
 3   BY MR. HANSUM:
 4         Q.     Does Google post the details of the
 5   experiments on its web page?
 6         A.     Usually not.  I don't think so.
 7         Q.     Okay.  Does Google issue e-mails or
 8   bulletins that let publishers and advertisers know
 9   about the details of its experiment on live
10   auctions?
11                MR. PEARL:  Objection.  Form.
12                THE WITNESS:  I don't work on
13            our site communications.
14   BY MR. HANSUM:
15         Q.     Are you aware of Google issuing
16   e-mails or bulletins that let publishers and
17   advertisers know about the details of its
18   experiments on live auctions?
19         A.     I don't handle client communication.
20         Q.     I understand you don't handle, but
21   does that mean you're also not aware of that
22   happening?
23         A.     Yeah.  I'm not aware.  I'm not part
24   of the communication process.
25         Q.     Okay.
```

Page 168

```
1              Do you consider the details of
2    Google's experiments to be Google confidential
3    information?
4              MR. PEARL:  Objection.  Form.
5              THE WITNESS:  Can you say more
6       on the details?
7    BY MR. HANSUM:
8         Q.   Do you consider information about
9    Google's experiments, like the goals or how they
10   are implemented, to be Google confidential
11   information?
12        A.   Can you say more about legal?
13   What -- which part of information you think it's in
14   the scope you think?
15        Q.   Well, let's take a specific example.
16   So we talked about dynamic revenue share earlier.
17        A.   Okay.
18        Q.   The details of how dynamic revenue
19   share works within Google's code, do you consider
20   that to be confidential?
21             MR. PEARL:  Objection.  Form.
22             THE WITNESS:  So part of
23        the -- this intellectual property
24        involved, and also depends on which
25        part of stages we talk about before.
```

Page 169

```
 1                During the experimentation,
 2        because there are many variants of
 3        even dynamic rev shares, there's so
 4        many changes, and we change the
 5        algorithm all the time to tweak, to
 6        maximize yield.
 7                There's no one even particular
 8        set that's -- can be written down.
 9        And I don't know even it's
10        worthwhile, and I don't handle
11        outside communication with clients.
12   BY MR. HANSUM:
13        Q.     Have you ever shared any source code
14   related to dynamic revenue sharing with someone
15   outside of Google?
16        A.     Never.
17        Q.     Okay.  So what led us down all of
18   these questions is my question about the second
19   bullet point on the screen here of, ▮▮▮▮
20   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
21                The document says, ▮▮▮▮▮▮▮▮▮▮
22   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
23   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
24                What I'm trying to understand, ▮▮
25   ▮▮   is why did the project managers revising this
```

Page 170

```
 1   [REDACTED]
 2
 3
 4              MR. PEARL:  Objection.  Form.
 5              I'll caution the witness not
 6        to reveal the content of any
 7        communications with lawyers in your
 8        response.
 9              THE WITNESS:  I was not with
10        AdX before this change.  I was on
11        DoubleClick for Publishers.
12              So I had very little knowledge
13        on what was involved before.
14   BY MR. HANSUM:
15        Q.    All right.  Go down to the page
16   ending in 4871.  In the --
17        A.    4871?
18        Q.    Yeah.  Top right.  It's Page 5.
19              MR. PEARL:  Do you mean 187?
20              MR. HANSUM:  Sorry.  184.  Let
21        me scroll over.
22              THE WITNESS:  Oh, 184.  That's
23        the same page.  Oh, next page.
24        Okay.
25              MR. HANSUM:  Next page.
```

```
                                                       Page 345
 1                         CERTIFICATE
 2
 3
 4              I HEREBY CERTIFY that the witness
     was duly sworn by me and that the deposition is a
 5   true record of the testimony given by the witness.
 6              It was requested before completion
     of the deposition that the witness, ▮▮▮▮▮▮▮ Ph.D.,
 7   have the opportunity to read and sign the
     deposition transcript.
 8
 9        [signature: Michelle L. Gray]
10
          MICHELLE L. GRAY,
11        A Registered Professional
          Reporter, Certified Shorthand
12        Reporter, Certified Realtime
          Reporter, Certified Court Reporter
13        and Notary Public
          Dated:  May 2, 2024
14
15
16              (The foregoing certification of this
17   transcript does not apply to any reproduction of
18   the same by any means, unless under the direct
19   control and/or supervision of the certifying
20   reporter.)
21
22
23
24
25
```