IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| THE STATE OF TEXAS, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| v. | § | Civil Action No. 4:20-cv-00957-SDJ |
| | § | |
| GOOGLE LLC, | § | |
| | § | |
| Defendant. | § | |

## DEFENDANT GOOGLE LLC'S OPPOSITION TO PLAINTIFFS' MOTION FOR SANCTIONS

## TABLE OF CONTENTS

I.    INTRODUCTION ...................................................................................................... 1

II.   EVIDENCE RELEVANT TO THIS MOTION .................................................... 2

   A.  Google's Chat Retention Policy .................................................................... 2

   B.  Google's Disclosure of its Chat Retention Policy to the States ................... 3

   C.  ESI Order Negotiations ................................................................................. 5

III.  LAW GOVERNING THIS MOTION .................................................................. 5

IV.   ARGUMENT ........................................................................................................ 6

   A.  PLAINTIFFS' FIVE-YEAR DELAY RENDERS THEIR MOTION UNTIMELY AND WARRANTS ITS DENIAL. .................................................... 6

   B.  PLAINTIFFS HAVE NOT MET ANY ELEMENTS OF RULE 37(e) ............................ 8

      1.  Google's Obligation to Preserve Documents Relevant to Plaintiffs' Claims Arose in Late 2019 at the Earliest. ...................................................... 8

      2.  Plaintiffs Fail to Establish that Any Relevant Chats Were Lost. ................... 10

      3.  Google Took Reasonable Steps to Preserve Relevant Chats. ........................ 12

      4.  Any Lost Chats Can Be Replaced With Other Discovery. ............................ 15

   C.  GOOGLE DID NOT ACT IN BAD FAITH, AND PLAINTIFFS HAVE NOT BEEN PREJUDICED ................................................................................. 16

      1.  Plaintiffs Cannot Obtain an Adverse Inference under Rule 37(e)(2) Because They Cannot Show Intent to Deprive. ............................................................. 17

      2.  Plaintiffs Are Not Entitled to any Other Sanctions Under Rule 37(e)(1) Because They Have Not Been Prejudiced. ...................................................... 19

V.    CONCLUSION .................................................................................................. 20

# TABLE OF AUTHORITIES

**Cases**

*Abney v. Wal-Mart*,
  984 F. Supp. 526 (E.D. Tex. 1997) ................................................................................... 7

*Allstate Tex. Lloyd's v. McKinney*,
  964 F. Supp. 2d 678 (S.D. Tex. 2013) ............................................................................... 9

*Anderson Energy Grp. (Ohio), LLC v. Endeavor Ohio, LLC*,
  2014 WL 12580471 (N.D. Tex. Sept. 4, 2014) ................................................................. 10

*Arthur Anderson LLP v. United States*,
  544 U.S. 696 (2005) ........................................................................................................ 17

*Banco Mercantil De Norte, S.A. v. Paramo*,
  2024 WL 3929896 (S.D. Tex. Aug. 23, 2024) ................................................................... 7

*Barnett v. Deere & Co.*,
  2016 WL 4544052 (S.D. Miss. Aug. 31, 2016) ................................................................. 18

*Bellamy v. Wal-Mart Stores, Texas, LLC*,
  2019 WL 3936992 (W.D. Tex. Aug. 19, 2019) ................................................................. 10

*BHI Energy I Power Servs. LLC v. KVP Holdings*,
  730 F. Supp. 3d 308 (N.D. Tex. Apr. 12, 2024) ..................................................... 10, 17, 19

*Brandt v. Vulcan, Inc.*,
  30 F.3d 752 (7th Cir. 1994) .............................................................................................. 6

*Calsep A/S v. Dabral*,
  84 F.4th 304 (5th Cir. 2023) ................................................................................... 16, 17, 19

*Castaneda v. AT&T Corp.*,
  2018 WL 11471270 (W.D. Tex. Nov. 8, 2018) ................................................................. 12

*Citgo Petroleum Corp. v. Odfjell Seachem*,
  2013 WL 2289951 (S.D. Tex. May 23, 2013) ................................................................... 6

*Coastal Bridge Co. v. Heatec, Inc.*,
  833 F. App'x 565 (5th Cir. 2020) ........................................................................... 5, 9, 16, 17

*Consol. Aluminum Corp. v. Alcoa, Inc.*,
  244 F.R.D. 335 (M.D. La. 2006) ....................................................................................... 14

*Cuomo v. Clearing House Ass'n*,
  557 U.S. 519 (2009) ........................................................................................................ 10

*Edwards v. Junior State of Am. Found.*,
    2021 WL 1600282 (E.D. Tex. Apr. 23, 2021) ........................................................... 5, 11, 15

*Eur. v. Equinox Holdings, Inc.*,
    592 F. Supp. 3d 167 (S.D.N.Y. 2022) .......................................................................... 19

*Flores v. AT&T Corp.*,
    2018 WL 6588586 (W.D. Tex. Nov. 8, 2018) ............................................................ 17

*Ford v. Anderson Cnty., Texas*,
    102 F.4th 292 (5th Cir. 2024) ....................................................................................... 16

*Goodman v. Praxair Servs., Inc.*,
    632 F. Supp. 2d 494 (D. Md. 2009) ............................................................................... 6

*Greger v. C.R. Bard, Inc.*,
    2021 WL 3855474 (E.D. Tex. Aug. 30, 2021) ............................................................ 12

*Guzman v. Jones*,
    804 F.3d 707 (5th Cir. 2015) .......................................................................................... 9

*Hall v. Ins. Corp. of Brit. Columbia*,
    2023 WL 11920411 (M.D. Fla. Nov. 14, 2023) ............................................................ 6

*In re Delta/AirTran Baggage Fee Antitrust Litig.*,
    770 F. Supp. 2d 1299 (N.D. Ga. 2011) ........................................................................ 10

*In re Enron Corp. Sec., Derivative & Erisa Litig.*,
    762 F. Supp. 2d 942 (S.D. Tex. 2010) ........................................................................... 9

*In re Google RTB Consumer Privacy Litig.*,
    No. 4:21-cv-02155-YGR (N.D. Cal. Jan. 3, 2025) ....................................................... 6

*In re Grand Jury Proc.*,
    43 F.3d 966 (5th Cir. 1994) .......................................................................................... 10

*In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*,
    341 F.R.D. 474 (April 11, 2022) ...................................................................... 16, 18, 19

*In re United States*,
    864 F.2d 1153 (5th Cir. 1989) ........................................................................................ 7

*In re: Google Digital Advertising Antitrust Litigation*,
    No. 21-md-3010 (S.D.N.Y. Jan. 20, 2023) ..................................................................... 1

*In re: Google Play Store Antitrust Litigation ("Play")*,
    No. 21-md-2981, 664 F. Supp. 3d 981 (N.D. Cal. 2023) .............................................. 8

*Keranos, LLC v. Silicon Storage Tech., Inc.*,
   2018 WL 7283284 (E.D. Tex. Mar. 1, 2018) ......................................................................... 7

*LendingTree, LLC v. Zillow, Inc.*,
   2014 WL 1309305 (W.D.N.C. Mar. 31, 2014) ...................................................................... 9

*Long v. Howard Univ.*,
   561 F. Supp. 2d 85 (D.D.C. 2008) ..................................................................................... 6

*Miller v. Michaels Stores, Inc.*,
   98 F.4th 211 (5th Cir. 2024) ........................................................................................... 16

*Mosley v. Marriot Int'l, Inc.*,
   2024 WL 1224241 (E.D. Mich. Mar. 21, 2024) ................................................................... 9

*Mugworld, Inc. v. G.G. Marck & Assocs., Inc.*,
   2007 WL 2446533 (E.D. Tex. Aug. 23, 2007) .................................................................. 11

*Owens v. Bd. of Supervisors of Louisiana State Univ. & Agric. & Mech. Coll.*,
   695 F. Supp. 3d 750 (M.D. La. 2023) ............................................................................. 15

*Point Blank Sols., Inc. v. Toyobo Am., Inc.*,
   No. 09-61166-CIV, 2011 WL 1456029 (S.D. Fla. Apr. 5, 2011) ......................................... 9

*Promier Prods., Inc. v. Orion Cap. LLC*,
   708 F. Supp. 3d 1376 (N.D. Ill. 2023) ............................................................................... 6

*Realnetworks, Inc. v. DVD Copy Control Ass'n, Inc.*,
   264 F.R.D. 517 (N.D. Cal. May 5, 2009) ......................................................................... 9

*Rimkus Consulting Grp. v. Cammarata*,
   688 F.Supp.2d 598 (S.D. Tex. 2010) .............................................................................. 16

*Russell v. Univ. of Texas of Permian Basin*,
   234 F. App'x 195 (5th Cir. 2007) ................................................................................... 17

*Siegel v. Compass Bank*,
   2021 WL 4498915 (N.D. Tex. Jan. 11, 2021) .................................................................. 6

*Taylor v. Google LLC*,
   2024 WL 4947270 (N.D. Cal. Dec. 3, 2024) .................................................................. 11

*United Healthcare Servs., Inc. v. Rossel*,
   2024 WL 1252365 (N.D. Tex. Mar. 21, 2024) ................................................................ 19

**Other Authorities**

A.B.A., THE ANTITRUST COMPLIANCE HANDBOOK § XIII.D.1 (2019) ....................................... 13

*Commentary on Ephemeral Messaging ("Ephemeral Messaging")*, 22. SEDONA CONF. J. 436 (2021) .................................................................................................................. 12, 13

*Data Destruction Policies and Practices*, 2019 TXCLE-ARED 12-VII, 2019 WL 2075505 ..... 13

*Sedona Conference Commentary on Legal Holds*,  20 SEDONA CONF. J. 341 (2019) ............ 14, 18

*The Sedona Principles, Third Edition: Best Practices, Recommendations & Principles for Addressing ESI ,*19 SEDONA CONF. J. 1, 196 (2018) ............................................................. 7, 12

## TABLE OF APPENDICES

Appendix A: Timeline of Allegedly Deceptive or Anticompetitive Conduct

Appendix B: Deposition Excerpts Showing Chat Usage for Non-Substantive Communication

Appendix C: State Plaintiffs' Litigation Hold Dates

Appendix D: State Plaintiffs' Timeliness Objections to Document Retention Inquiries

Appendix E: Declaration of H. Tolga Bilgicer, PhD

## I.    INTRODUCTION

There is no basis for the extreme and sparingly used sanctions Plaintiffs seek. Texas first announced its antitrust investigation into Google's ad tech products in a Civil Investigative Demand (CID) letter on September 9, 2019. ECF 693-23. Google promptly placed its key ad tech employees on litigation hold, sending its first wave of notices on October 4, 2019, ECF 693-24, which instructed employees to preserve relevant Chat messages, *see*, *e.g.*, ECF 693-14 at 451. Google also timely disclosed the details of its Google Chat retention process to lead Plaintiff Texas, nearly a year before this case was filed, in early 2020. Exs. 1, 2. Texas's Attorney General acknowledged that process (including that Chats **would be deleted** unless an employee changed the setting to save messages) and did not ask Google to change a thing. Ex. 3. Just the opposite: the ESI Order Plaintiffs later proposed to the MDL court provided that the parties *continue* their retention practices. *In re: Google Digital Advertising Antitrust Litigation*, No. 21-md-3010 (S.D.N.Y. Jan. 20, 2023) ("MDL"), ECF 439-1 (Proposed Order) at 3. Now, after *five years*, Plaintiffs move for drastic sanctions, claiming **after discovery is long-closed** that relevant messages may have been lost. No part of Plaintiffs' Motion meets their burden under Rule 37.

Google's early disclosure of its Chat retention process to Plaintiffs makes this case different from others addressing Chat—a difference Plaintiffs never address. Instead, Plaintiffs concoct preservation obligations that do not exist and would rewrite e-discovery obligations for *all* litigants, asserting that Google had a duty to preserve documents relevant to *this* 2019 litigation beginning "as far back as 2006." Mtn. (ECF 693) at 10. That is not the law. Preservation obligations arise when a party reasonably anticipates claims for a *particular* lawsuit brought by a *particular* plaintiff. Google could not have reasonably anticipated the antitrust claims in *this lawsuit* until Texas opened its investigation in late 2019 (and for the DTPA claims, not until

Plaintiffs filed their complaint in December 2020, at the earliest).

The record establishes that Google took reasonable steps to preserve Chat messages potentially relevant to this case once its duty to preserve actually arose, including by disclosing its Chat-retention process to Plaintiffs. The law does not require companies to preserve every scrap of electronically stored information (ESI), but instead, to take "***reasonable***" steps to preserve relevant information, Fed. R. Civ. P. 37(e),[1] a standard Google satisfied here.

Finally, Google could not have "intended" to deprive Plaintiffs of Chat messages in *this* litigation by *continuing* routine preservation processes it *disclosed* to Plaintiffs. Nor have Plaintiffs been prejudiced by any documents lost *after* Google's duty to preserve first began in September 2019, because Google disclosed its Chat preservation process within months; Plaintiffs assented to it; and their claims are based mainly on conduct *prior* to 2019 when the preservation obligations first arose. Without the requisite prejudice or intent, sanctions under Rule 37(e)(1) or (e)(2), respectively, cannot be ordered. Plaintiffs' Motion should be denied.

## II.    EVIDENCE RELEVANT TO THIS MOTION

### A.    Google's Chat Retention Policy.

Google Chat, previously known as Google Hangouts and Google Talk ("Chat"), is an instant messaging tool used by companies (including Google) to communicate, collaborate, and create and store electronic documents. Ex. 5 (████ 30(b)(6) Dep. Tr.) at 107:4–108:21; Ex. 2 at 4. Every Chat message in a conversation can be set to "history on" or "history off," which setting (during the period relevant to the Motion) applied to future messages in the conversation until changed by a participant. Ex. 5 at 79:11–80:7.

From 2008 to February 2023, Google's default message setting (changeable by the user)

---

[1] Unless otherwise noted, all emphasis is added, internal citations and quotations are omitted, and citations have been cleaned up for ease of reading.

was "history off" for most Chat conversations—meaning that a message was not retained after 24 hours.[2] Ex. 5 at 75:6–76:1; 164:16–165:7; Ex. 6 (2020 Retention Policy) at 1. When a message was sent after a user toggled "history on," however, it was retained for a time period depending on the type of Chat (e.g., one-on-one versus a group), and if a participant was placed on legal hold, then for the duration of the hold. Ex. 5 at 167:20-168:8; Ex. 6 at 2. Google's 2008 announcement that the default setting for a new "Chat" would be "history off" (a.k.a. "off-the-record") stated a single, generalized purpose: to help "streamline and simplify" Google's review, in responding to document production requests, of "millions of pages" of Chat messages that had no ongoing business value (e.g., routine or duplicative communications and meeting requests). ECF 693-08. Google's Chat Retention Policy reaffirmed that purpose in 2020: to help "reduce redundant, obsolete, and trivial information," "time spent sifting through irrelevant old messages," and "storage costs." Ex. 6.

From 2008 to February 2023, Google's policy for, and instructions to, employees subject to litigation holds was *always* that they *shall not* send "history off" Chat messages about any topics covered by the hold, and messages within the scope of holds *must be retained*. ECF 693-14 (Litigation Holds); ECF 693-08 (2008 Announcement); Ex. 6 (2020 Retention Policy). Plaintiffs do not dispute this.

## B. Google's Disclosure of its Chat Retention Policy to the States.

When Google was notified of Texas's investigation on September 9, 2019, ECF 693-23, it promptly issued litigation holds to relevant ad tech employees. The first wave of holds were sent on October 4, 2019, *see* ECF 693-24, and contained detailed instructions about preserving relevant Chat messages—specifically instructing employees *not* to use Chat to discuss "any topics covered"

---

[2] In 2020, Google set the default to history "on" for "threaded rooms"—i.e., conversations where chats sent to many recipients could branch off into more conversations. *See* Ex. 6*; Mtn. at 2 n.3.

by the legal hold, and if they "absolutely must do so," to "make sure the settings preserve the messages" by switching to "history on," ECF 693-14 at -87452–55, -87449–51. Google continued to place employees on litigation hold, on a rolling basis, as the investigation (and later, litigation) proceeded. ECF 693-24. Google disclosed its Chat retention process to Plaintiffs soon after the investigation began. In letters in January and February 2020—*five years ago*—Google told Texas that:

- "Google Hangout [the predecessor to Chat] messages by default are set to be 'off-the-record.'" Ex. 2  at 4.
- "Off-the-record messages *are not retained by Google*." *Id.*
- "Google Hangouts messages are generally retained for a period of 30 days if they have been marked on-the-record."[3] Ex. 1 at 3.
- Google "*instructs custodians on a legal hold to preserve relevant materials, including an instruction to preserve relevant Hangout conversations* by putting those conversations 'on-the-record' on a message-by-message basis." Ex. 2 at 4.
- Once an employee is put on a legal hold, "on the record" Hangout conversations are preserved for the duration of the legal hold. *Id.*
- Google "audits" employees on legal hold by sending "regular electronic" reminders to preserve their relevant materials, including by putting their Chat messages "on-the-record." *Id.*; *see* Ex. 5 (███ Dep.) at 230:25–231:5.

Texas acknowledged this, writing a letter "memorializ[ing]" its understanding that "[Chat] messages are not retained in any way unless they are marked on-the-record by the user. . . . If the user does not take this action for every conversation, the unmarked ones will be deleted immediately." Ex. 3 at 2. Texas and the other States filed this lawsuit in December 2020, asserting both antitrust and DTPA claims, ECF 1 at 100–116, putting Google first on notice of Plaintiffs' DTPA claims. Prior to filing, Texas *never* asked Google to modify its disclosed Chat retention process. In February 2023, Google changed its Chat retention process for employees subject to a litigation hold, setting "history on" and disallowed toggling it off. Ex. 5 at 191:16–192:2.

---

[3] This described the *shortest* amount of time that Google retained "on-the-record" messages.

### C.  ESI Order Negotiations.

After this case was transferred to the Southern District of New York and consolidated into the MDL, *see* ECF 140, Plaintiffs led a ten-month negotiation of the ESI Order, in which dozens of drafts were exchanged involving preservation issues. Plaintiffs' final proposed ESI Order (like several drafts exchanged over the prior year) required that certain information be retained, but otherwise provided that each party "will *continue* its retention practices."  MDL ECF 439-1 at 3. Thus, the ESI Order that Plaintiffs negotiated did not require Google to make any changes to its previously disclosed Chat retention process. During those negotiations—and through February 2023 when Google changed the default to "history on" for Chat—Plaintiffs *still* never asked Google to suspend or modify its Chat retention process.

Fact discovery in this case closed on May 3, 2024. ECF 194 at 2. Nearly five years after Google disclosed its Chat retention process, four years after this lawsuit was filed, and more than seven months after fact discovery closed, Plaintiffs filed this motion for spoliation sanctions.

## III.    LAW GOVERNING THIS MOTION

Before a court can impose sanctions under Rule 37(e), it must find "that a party was (i) obligated to preserve ESI (ii) but did not do so (iii) because it failed to take reasonable steps to preserve it, and (iv) the ESI cannot be restored or replaced." *Edwards v. Junior State of Am. Found.*, 2021 WL 1600282, at *7 (E.D. Tex. Apr. 23, 2021) (Jordan, J.). A party is obligated to preserve relevant documents only once they "should have reasonably anticipated litigation." *Coastal Bridge Co. v. Heatec, Inc.*, 833 F. App'x 565, 574 (5th Cir. 2020). Rule 37(e) "does not apply when information is lost before a duty to preserve arises." Fed. R. Civ. P. 37(e) Adv. Comm. Notes to 2015 amendment ("Adv. Comm. 2015").

A motion for spoliation sanctions fails as a matter of law if it is not filed timely—that is,

"as soon as reasonably possible after discovery of the facts that underlie the motion." *Goodman v. Praxair Servs., Inc.*, 632 F. Supp. 2d 494, 508 (D. Md. 2009). Spoliation motions filed "***months after [discovery] has closed*** or ***after dispositive motions have been filed***, or worse still, ***on the eve of trial***, can completely disrupt the pretrial schedule, involve significant cost, and burden the court and parties." *Id.* "Courts are justifiably unsympathetic to litigants" who file belated motions due to "inattention, neglect, or purposeful delay or aimed at achieving an unwarranted tactical advantage." *Id.* They routinely deny untimely Rule 37 sanctions motions.[4]

## IV.    ARGUMENT

### A.    PLAINTIFFS' FIVE-YEAR DELAY RENDERS THEIR MOTION UNTIMELY AND WARRANTS ITS DENIAL.

Plaintiffs knew the "facts underl[ying]" their Motion, *Goodman*, 632 F. Supp. 2d at 508—Google's Chat retention process—not later than February 2020, ***when Google disclosed it to Texas and Texas "memorialize[d]" that it understood it***, Exs. 1–3. Plaintiffs' ***five-year*** delay in bringing their Motion is *years* longer than the delay in the many cases cited above, in which courts denied sanctions motions as untimely. Any challenge to Google's disclosed retention process should have occurred in early 2020—when Google first disclosed it—or, at the latest, as part of the initial ESI Order negotiations with Plaintiff Texas in Spring 2021. ECF 108; *see* Fed. R. Civ. P. 26(f)(3)(C)

---

[4] *See* Ex. 31, Order in *In re Google RTB Consumer Privacy Litig.*, No. 4:21-cv-02155-YGR (N.D. Cal. Jan. 3, 2025) (denying spoliation motion filed 2 months after discovery closed, and 3 to 11 months after Google disclosed disputed preservation practice, as untimely); *Siegel v. Compass Bank*, 2021 WL 4498915, at *1 (N.D. Tex. Jan. 11, 2021) (denying adverse inference filed 3 months after discovery closed); *Promier Prods., Inc. v. Orion Cap. LLC*, 708 F. Supp. 3d 1376, 1385 (N.D. Ill. 2023) (adverse inference motion untimely after 3 months); *Citgo Petroleum Corp. v. Odfjell Seachem*, 2013 WL 2289951, at *11 (S.D. Tex. May 23, 2013) (11-month delay rendered Rule 37 motion untimely); *Hall v. Ins. Corp. of Brit. Columbia*, 2023 WL 11920411, at *8 (M.D. Fla. Nov. 14, 2023) (16-month delay rendered Rule 37 motion untimely); *Brandt v. Vulcan, Inc.*, 30 F.3d 752, 757 (7th Cir. 1994) (Party "could, and should, have taken action years earlier"); *Long v. Howard Univ.*, 561 F. Supp. 2d 85, 91 (D.D.C. 2008) (assessing "when the movant learned of the discovery violation, how long he waited before bringing it to the court's attention, and whether discovery has been completed," motion filed years after discovering wrongdoing was untimely).

(obligating parties to discuss "any issues" about "preservation of [ESI]").[5] Plaintiffs instead requested no changes to Google's disclosed Chat retention processes in their proposed ESI Order—which would have afforded Google an opportunity to address any concerns years ago— and waited to file this motion until after the close of discovery, after Google moved for summary judgment, and mere months before trial.[6]  Plaintiffs have thus waived any complaint about Google's Chat retention.[7]

Plaintiffs' refrain that they have tried since 2020 to obtain information about Google's Chat retention process is false. Prior to MDL centralization, Plaintiffs issued 3 document requests, none of which concerned Chats. Exs. 7, 9, 10. Following centralization in August 2021, Judge Castel created a Discovery Steering Committee, allocating two seats to Plaintiffs (more than any other constituency). The Committee did not ask Google to change its Chat processes despite 10 months of negotiations over the ESI Order. When discovery in the MDL began in January 2023, Plaintiffs issued only one Chat-related request. Ex. 11 (RFP No. 301 out of 301).

The *Play* case was the true genesis of Plaintiffs' Chat discovery, which they first issued in

---

[5] "A corollary" to early ESI preservation discussions is that "untimely challenges to production failures may not provide a basis for relief." *The Sedona Principles, Third Edition: Best Practices, Recommendations & Principles for Addressing ESI ,*19 Sedona Conf. J. 1, 196 (2018). Plaintiffs' new expert on ESI preservation, Ignatius Grande, agrees. "[E]stablishing preservation boundaries" early sets the "ground rules," to avoid "later claims of spoliation" and "the potential that the discovery process will be used for gamesmanship." Ex. 8

[6] Plaintiffs' receipt of Chat-related discovery in 2024 does not excuse their delay. They did not seek that discovery until 2024. Also, the basis for the Motion—that employees could have written about display ads in off-the-record chat messages—was disclosed to Plaintiffs in early 2020 and was not news in 2024. Finally, it is irrelevant for *all purposes* that Plaintiffs' computer science expert only recently counted the number of "history off" messages sent by 5 employees over a 68-day period in *late 2022 to early 2023*, years after Plaintiffs learned of Google's policy.

[7] *Cf. In re United States*, 864 F.2d 1153, 1156 (5th Cir. 1989); *Keranos, LLC v. Silicon Storage Tech., Inc.*, 2018 WL 7283284, at *2 (E.D. Tex. Mar. 1, 2018) (defendants waived objection to venue by failing to raise it for 9 months); *Abney v. Wal-Mart*, 984 F. Supp. 526, 530 (E.D. Tex. 1997) (party waived challenge to opposing counsel by "delay[ing]" motion for disqualification for a year); *Banco Mercantil De Norte, S.A. v. Paramo*, 2024 WL 3929896, at *3 (S.D. Tex. Aug. 23, 2024) (Fifth Amendment privilege waived by "four-month delay and gamesmanship"). Plaintiffs are well aware that timeliness is required, having argued *repeatedly* that a failure to timely raise concerns with preservation or production waives the issues entirely. *See* Appendix D.

this case *two weeks* after the hearing in *Play* on Chats. *In re: Google Play Store Antitrust Litigation ("Play")*, No. 21-md-2981, ECF 418 (Jan. 12, 2023). But Judge Donato's ruling relied on ***different facts;*** namely, that Google "stay[ed] silent" in that case about its preservation practices—rather than, as Google did here, "***advis[ing] plaintiffs about its preservation approach early in the litigation***." 664 F. Supp. 3d 981, 993 (N.D. Cal. 2023).

No matter how Plaintiffs' delay is measured—bringing this Motion almost five years after Google disclosed its retention process, four years after ESI negotiations began, seven months after fact discovery closed, *after* Google moved for summary judgment, and just three months before trial—the Court should deny Plaintiffs' Motion as untimely.

## B. PLAINTIFFS HAVE NOT MET ANY ELEMENTS OF RULE 37(e)

### 1. Google's Obligation to Preserve Documents Relevant to Plaintiffs' Claims Arose in Late 2019 at the Earliest.

Plaintiffs must prove that Google had a duty to preserve the documents at issue. Fed. R. Civ. P. 37(e). Rule 37 "does not apply when information is lost *before a duty to preserve arises.*" Adv. Comm. 2015. At the earliest, Google first reasonably anticipated Plaintiffs' ***antitrust claims*** in September 2019, when Texas announced it was "investigating anticompetitive conduct in markets relating to online advertising" that may violate Texas antitrust statutes. ECF 693-23. Plaintiffs took the same position on their own preservation obligations, arguing *they* had no duty to preserve "until 2019" once their investigation began. Ex. 12 at 4 (Arkansas noting "it did not contemplate this action until 2019"). In the DOJ's parallel ad tech suit, it argued Google's duty to preserve relevant chats began once Google received "*the ad-tech-focused CID the Division issued*" in 2019, ***not*** back in 2013. *United States v. Google*, No. 23-cv-108, ECF 1116 at 18–19.

Meanwhile, Google did not reasonably anticipate Plaintiffs' ***DTPA claims*** until suit was filed in December 2020. The CID did not reference *deceptive* conduct related to Google's ad tech

or cite potential violations of Texas's *DTPA*, ECF 693-23, and nothing put Google on reasonable notice of the DTPA claims Plaintiffs bring here *prior* to the CID, *cf.* Ex. 4 at 189:7–22.

These undisputed facts are fatal to Plaintiffs' Motion. Google disclosed its Chat retention processes in January and February 2020—*before* Google's preservation obligation even began for its DTPA claims, and mere months after it began for its antitrust claims. Realizing the bind that Google's early-2020 disclosure puts them in, Plaintiffs seek to backdate Google's preservation obligation by ***more than a decade***, asserting that Google somehow "knew" that Chat messages could be relevant to some potential ad tech antitrust litigation with someone (not with these Plaintiffs) in 2013 or "arguably as far back as 2006." Mtn. at 10.

Plaintiffs' backdating theory would rewrite discovery obligations for all litigants, and ***courts have consistently rejected such a standard***. The "duty to preserve evidence runs to an *identifiable* opposing party"—not any *potential* future plaintiff. *Mosley v. Marriot Int'l, Inc.*, 2024 WL 1224241, at *2 (E.D. Mich. Mar. 21, 2024).[8] A duty to preserve arises only when a party first reasonably anticipates that *specific* litigation: a "*general* concern" over litigation is not enough. *Realnetworks, Inc. v. DVD Copy Control Ass'n, Inc.*, 264 F.R.D. 517, 526 (N.D. Cal. May 5, 2009).[9] Plaintiffs' own cases confirm that a duty to preserve turns on the *facts of a specific case* and *runs to a specific opposing party*—not earlier cases brought by other parties.[10]

---

[8] *See also Point Blank Sols.*, *Inc. v. Toyobo Am., Inc.*, No. 09-61166-CIV, 2011 WL 1456029, at *24 (S.D. Fla. Apr. 5, 2011).

[9] *See also Coastal Bridge*, 833 F. App'x at 574; *Guzman v. Jones*, 804 F.3d 707, 713 (5th Cir. 2015); *In re Enron Corp. Sec., Derivative & Erisa Litig.*, 762 F. Supp. 2d 942, 964 (S.D. Tex. 2010) (a duty to preserve arises "only when a party knows or reasonably should know that there is a substantial chance that a claim will be filed and that the evidence in its possession or control will be potentially relevant to *that* claim"); *see also* Adv. Comm. 2015.

[10] *See Allstate Tex. Lloyd's v. McKinney*, 964 F. Supp. 2d 678, 684 (S.D. Tex. 2013) (plaintiff anticipated litigation after receiving notice that defendant retained a lawyer for *that* case); *LendingTree, LLC v. Zillow, Inc.*, 2014 WL 1309305, at *6 (W.D.N.C. Mar. 31, 2014) (defendant's duty to preserve began when "[t]he existence of [Defendant's] infringing system was brought to [] attention ... by counsel for [Plaintiff]").

That Google's privilege log reflects attorney work-product created prior to September 2019 is a red herring. *See* Mtn. at 6 n.13. None of the referenced privilege log entries were based on reasonably anticipated litigation *in this case.* Rather, Google anticipated litigation in connection with *other* earlier matters and continued to maintain work-product protection here because that work product for prior cases remains protected from disclosure in subsequent litigations. *See, e.g.*, *In re Grand Jury Proc.*, 43 F.3d 966, 971 (5th Cir. 1994); *Anderson Energy Grp. (Ohio), LLC v. Endeavor Ohio, LLC*, 2014 WL 12580471, at *2 (N.D. Tex. Sept. 4, 2014).

Adopting Plaintiffs' "shifting duty" theory would make this Court **the first** to hold that a party must preserve any relevant document for any potential plaintiff *indefinitely*, simply because some *other* plaintiff filed or investigated an earlier suit. Plaintiffs' own authority recognizes as much. *See Bellamy v. Wal-Mart Stores, Texas, LLC*, 2019 WL 3936992 at *4 (W.D. Tex. Aug. 19, 2019) ("The Court refuses to accept this date as the trigger date. For companies of any size, this would impose preservation obligations for countless claims.").[11] "No court has so held" that when a business is served with a CID, *other* similar lawsuits brought by *other* plaintiffs are reasonably foreseeable. *In re Delta/AirTran Baggage Fee Antitrust Litig.*, 770 F. Supp. 2d 1299, 1308 (N.D. Ga. 2011) ("[W]hen Delta received the CID [from the DOJ], it cannot be said that Delta should have anticipated this lawsuit [with *Plaintiffs*].").

## 2. Plaintiffs Fail to Establish that Any Relevant Chats Were Lost.

Plaintiffs have the burden to show that *relevant* evidence was not preserved. *See BHI Energy I Power Servs. LLC v. KVP Holdings, LLC* ("*BHI Energy I*"), 730 F. Supp. 3d 308, 324 (N.D. Tex. Apr. 12, 2024). The Motion fails to carry this burden, too.

First, evidence that some Google employees use Chat daily or that some *produced* chat

---

[11] Because States have the same obligations as any civil litigant, *Cuomo v. Clearing House Ass'n*, 557 U.S. 519, 531 (2009), Plaintiffs too would face the permanent threat of spoliation.

messages reference topics in the case is *not* evidence that unpreserved messages contained *relevant* information—information with a tendency to make a "*fact [] of consequence* in determining the action" "more or less probable." *Edwards*, 2021 WL 1600282 at *7 (citing Fed. R. Evid. 401); *cf. Taylor v. Google LLC*, 2024 WL 4947270, at *3 (N.D. Cal. Dec. 3, 2024) (that employee "use[d] chat messages for work purposes" did not provide "evidentiary support" to conclude that relevant information was likely contained in those messages).[12] After exhaustive discovery on discovery, Plaintiffs fail to show that *any* Google employee deliberately disobeyed the repeated litigation hold instructions and  sent "history off" messages discussing relevant information.[13] Nor do Plaintiffs identify any information sought in discovery that was not produced because it lay in unpreserved messages.

Lacking actual proof that relevant evidence was not preserved, Plaintiffs rely on a computer code expert, Jacob Hochstetler. He analyzed metadata from Chat logs covering 5 employees (who overlapped with the *Play* case) for 68 days during this lawsuit, to (unreliably) extrapolate that millions of chat messages across relevant custodians were lost per year. ECF 693-9 (Hochstetler Decl.). However, Prof. Hochstetler is not an expert in statistics and did not determine whether his sample set of ***less than 1%*** was sufficient to yield a statistically significant observation, Ex. 14 (Hochstetler Dep.) at 21:20–23:9; 117:18–121:6. *Cf. Mugworld, Inc. v. G.G. Marck & Assocs., Inc.*, 2007 WL 2446533, at *3 (E.D. Tex. Aug. 23, 2007) ("The court cannot find that conclusions

---

[12] In *Taylor*, the court denied discovery-on-discovery on Google's Chat preservation, emphasizing that preservation should be assessed on the facts of that case and not other cases involving Chat. 2024 WL 4947270, at *3–4 ("[P]laintiffs have not shown that Google failed to preserve relevant chat messages across custodians *in this case*.").

[13] Plaintiffs cite a handful of employees who purportedly found the icon for history on/off "confusing," ECF 693-41 ¶ 5(p), in 2018 while a program bug was being resolved, Ex. 13 (bug was high priority). But this *preceded* Google's preservation obligations (which did not arise until late 2019), and Plaintiffs offer no evidence that any relevant Chat message was lost during that short time. To the contrary, the messages Plaintiffs cite were obviously *preserved*.

based on four-tenths of 1% are reliable or representative of the entire shipment."). He also admittedly is not opining that any lost messages were *relevant* to the litigation, *id.* at 235:16–236:24, so his opinions are not just unreliable but also immaterial.[14]

### 3. Google Took Reasonable Steps to Preserve Relevant Chats.

Parties anticipating litigation need not preserve "every shred of paper, every e-mail or electronic document, and every back up tape." *Castaneda v. AT&T Corp.*, 2018 WL 11471270, at *7 (W.D. Tex. Nov. 8, 2018). Rule 37(e) requires only "***reasonable steps***" to preserve relevant ESI; it "does not call for perfection," Adv. Comm. 2015. Google's preservation efforts met that standard here. And when Google promptly disclosed its Chat retention process to Plaintiffs, they did not object to it as unreasonable.

Google's 2008 to February 2023 Chat retention policy was consistent with guidance from The Sedona Conference ("Sedona"), which has explained (and Plaintiffs' expert agrees) that given the "massive growth in data volumes," retention practices should focus on "data with ongoing business value and early identification and action to discard data without such value."[15] Sedona thus recommends Information Governance programs that "encourage not only retention of ESI, but also the effective, timely, and consistent *disposal of ESI* that no longer needs to be retained or preserved."[16] Google's policy did that, identifying data with no ongoing business value—"redundant, obsolete, and trivial" chat messages—and changed the default retention setting to

---

[14] Another new "expert," Mr. Grande, improperly offers legal opinions regarding Google's preservation duties and compliance. ECF 693-41 (Grande Decl.). He also speculates about Google's state of mind, which is improper. *See Greger v. C.R. Bard, Inc.*, 2021 WL 3855474, at *9 (E.D. Tex. Aug. 30, 2021). Google will file a *Daubert* motion for each of Plaintiffs' Chats-related experts, *see* ECF 653 (Chat Scheduling Order), and submits that a hearing on Plaintiffs' spoliation motion is premature until those forthcoming expert motions are briefed.

[15] *Commentary on Ephemeral Messaging ("Ephemeral Messaging")*, 22. Sedona Conf. J. 436, 454 (2021); Ex. 4 at 249:10–250:19.

[16] *The Sedona Principles*, 19 Sedona Conf. J. at 61–62.

prevent the unnecessary retention of such ESI. Ex. 6.[17]

Notably, Plaintiffs' practices are akin to the Google practices they now attack. Texas preserves chats automatically for only 30 days, and employees must manually preserve chats relevant to litigation. Ex. 15. North Dakota has a "Chat *Deletion* Policy" under which "any chats with a date prior to September 18, 2019 will be deleted." Ex. 16. South Carolina stores instant messages for 10 days before they are automatically and *permanently deleted*. Ex. 17 at 9.

Google also took reasonable steps to preserve messages relevant to this litigation. Promptly after the CID, starting in October 2019, Google began issuing detailed litigation holds to relevant employees with explicit instructions about the need to preserve relevant chat messages.[18] The notices directed employees to avoid Chat when discussing relevant topics and turn history "on" if they "absolutely must" use it. ECF 693-14. This was a reasonable step explicitly approved by Sedona. *See Ephemeral Messaging*, 22. SEDONA CONF. J. at 479 (approving of either disabling *or* "otherwise prohibit[ing]" employees on legal hold from using ephemeral messaging for "communications related to the subject matter of the hold"). Google also sent periodic reminders to employees of their obligations, reiterating the need to "avoid Chat" (and "use email" when discussing topics covered by the hold) and directing them to "actually switch[]" to "history on" for any relevant conversations they must have on Chat. Ex. 5 at 230:25–231:4; ECF 693-14 at 16.

Plaintiffs argue that Google easily could have set the default Chat history to "on," but this

---

[17] Several bar associations advise caution in their communications, as Google did. Plaintiff Florida's Bar Association counsels: "Don't use email for any topic that needs to be explained or negotiated or will generate questions or confusion." ECF 545. The ABA advises to "[c]ommunicate clearly and concisely" and not "exaggerate or make jokes" because "[w]hat is funny in your email today may be hard to explain when that email is produced during some potential dispute years later." A.B.A., The Antitrust Compliance Handbook § XIII.D.1 (2019). A Texas Bar CLE recommends using programs that automatically delete messages to reduce the amount of information susceptible to a data breach. *Data Destruction Policies and Practices*, 2019 TXCLE-ARED 12-VII, 2019 WL 2075505.

[18] Google proactively put custodians on litigation hold *months* and *years* prior to the relevant Court order. *See* MDL ECF 664 (Nov. 2, 2023); Mtn. App'x F.

13

is another red herring. When Google changed the default for Chat history in February 2023 to "on" (and restricted changing it to "off") for solely employees on litigation hold, it did so only after spending hundreds of hours to customize this solution. *See* Ex. 5 at 137:24–139:14; 156:1–22; 198:16–201:3.[19] More importantly, Google was ***not required*** to disable history-off messaging for employees under legal hold to comply with Google's preservation obligation. Sedona and Plaintiffs' own expert agree. Ex. 4 at 138:8–13, 193:2–11, 258:10–22.[20]

Plaintiffs imply that Google erred by placing additional employees on litigation hold in 2022 and later.[21] *See* Mtn. at 6. But several of those custodians were added "after 2022" because Plaintiffs did not make the relevant request until February 2024. *See* Ex. 20 (2/26/24 Ltr. from State of Texas). Others are explained by Google proactively adding potential custodians, including new employees, in response to Plaintiffs' requests. *See*, *e.g.,* Ex. 21 at 2 n.4. This too was consistent with Sedona principles. *Sedona Conference Commentary on Legal Holds*, 20 SEDONA CONF. J. 341, 406–07 (2019); *see also Consol. Aluminum Corp. v. Alcoa, Inc.*, 244 F.R.D. 335, 340 (M.D. La. 2006). And continuing to place employees on legal hold as the case developed is strong evidence that Google *was* taking reasonable steps to fulfill its obligations.

These comprehensive steps resulted in an enormous collection effort. Google collected

---

[19] When Google investigated the possibility of creating "organizational units" comprising litigation-hold employees (to force *only* their Chat retention setting to "history on"), Google engineers advised it was a "terrible idea" from an "engineering perspective" that would introduce risks. Ex. 5 at 198:16–201:3. In claiming that Google could have easily made the February 2023 change earlier, Plaintiffs misconstrue two blog posts about Google Chat (for Workspace customers), which state only that the administrator can force the retention setting to "on" "locally" (for an organizational unit), not on an employee-by-employee basis. *See* Ex. 18; Ex. 19.

[20] *See also* Ex. 12 at 8 ("North Dakota did not suspend the auto-deletion of Teams Chat messages because it was determined not necessary to preserve any potentially relevant documents.").

[21] Meanwhile, most Plaintiffs (twelve) failed to issue litigation holds entirely: Texas, Florida, Indiana, Kentucky, Louisiana, Mississippi, Missouri, Montana, Nevada, Puerto Rico, South Dakota, and Utah. See Appendix C; Ex. 12, Ex. 29, and Ex. 30. And Alaska and Idaho did not issue litigation holds until 2023. *See* Ex. 12 at 3 (Alaska); Ex. 22 at 153:13–18 (Idaho). It is unclear when Arkansas issued its informal hold notice. Ex. 12 at 4.

over ten million individual chat messages for the 202 custodians in this case. *See* Appendix E (Decl. of H. Tolga Bilgicer) ¶ 5, 6. From that vast collection, Google produced 654,336 messages, *id*. ¶ 5, reflecting an overall responsiveness rate of 6.3%.[22] (In contrast, by the substantial compliance deadline, the 17 Plaintiffs collectively produced 110 documents and an incomplete investigation file.[23]) Plaintiffs concede the "vast majority" of Chat messages produced by Google "were from 2020–2023," Mtn. at 8, which confirms Google timely implemented litigation holds for this case.

### 4.  Any Lost Chats Can Be Replaced With Other Discovery.

"Because [ESI] often exists in multiple locations, loss from one source may often be harmless when **substitute information** can be found elsewhere." Adv. Comm 2015; *cf. Edwards*, 2021 WL 1600282 at *8 (determining whether "a different source [or] further discovery could *adequately* replace the data that Plaintiffs failed to preserve").[24]

Plaintiffs contend that (due to their inaction through the close of discovery) lost chat messages now cannot be restored or replaced through additional discovery. Mtn. at 11 & n.24. Not true. Google has produced millions of documents in discovery that substantively respond to Plaintiffs' requests, and Plaintiffs have obtained over 90 deposition transcripts of former or current Google employees. To the extent that any substantive business information was included in

---

[22] Plaintiffs misleadingly compare the number of produced emails versus chat messages to try to cast Google's Chat production as deficient—a comparison that Plaintiffs' expert agrees is not apples-to-apples. Ex. 14 at 252:13–253:5. While every *individual* email was produced several times (e.g., in partial and complete strings), only one document was produced for every complete chat *conversation* (containing several individual messages). ECF 545 at 6–7.

[23] Plaintiffs failed to provide the "underlying facts" in their pre-suit investigation memoranda, which the Court noted should have been a "priority." ECF 492 at 2–3.

[24] Plaintiffs argue that the *content* of history-off messages are "lost," even if cumulative of produced emails. Mtn. at n.24. But their only cited case notes this was the rule **before** the 2015 amendments to Rule 37(e), *Owens v. Bd. of Supervisors of Louisiana State Univ. & Agric. & Mech. Coll.*, 695 F. Supp. 3d 750, 760 (M.D. La. 2023), which amendments provided the safe harbor for "substitute information," Adv. Comm. 2015.

purportedly lost chat messages, that information can be replaced by deposition testimony and/or emails, which Google employees have confirmed reflect the same information.[25] Case in point: The one chat Plaintiffs point to that arguably has some relevance to this case indicates that the same information was provided via email. Ex. 25. That email was produced. Ex. 26.

### C.  GOOGLE DID NOT ACT IN BAD FAITH, AND PLAINTIFFS HAVE NOT BEEN PREJUDICED

Spoliation remedies must be narrowly tailored to the harm and grounded in the facts of this case,[26] where Google disclosed its Chat preservation process, and Plaintiffs explicitly confirmed they understood it but waited five years before seeking sanctions.

An adverse inference is "the most severe sanction[] a court can administer." *Rimkus Consulting Grp. v. Cammarata*, 688 F.Supp.2d 598, 619 (S.D. Tex. 2010). To obtain an adverse inference under Rule 37(e)(2), Plaintiffs must prove that Google acted "with the intent to deprive [Plaintiffs] of the information's use in the litigation." *Ford v. Anderson Cnty., Texas*, 102 F.4th 292, 323–24 (5th Cir. 2024). Negligence (even gross negligence) is not enough. *Coastal Bridge Co.*, 833 F. App'x at 574; *see* Adv. Comm. 2015. Establishing an "intent to deprive" requires the movant to demonstrate "bad faith," *Miller v. Michaels Stores, Inc.,* 98 F.4th 211, 219 (5th Cir. 2024), which "generally means destruction for the purpose of hiding adverse evidence." *Id.*

To impose other sanctions (e.g., denial of summary judgment and attorney's fees) under Rule 37(e)(1)—which does not authorize adverse inference sanctions[27]—a court must "find[]

---

[25] *See, e.g.*, ECF 545-2; Ex. 23 (▬▬▬ Dep.) at 375:8–17; Ex. 24 (▬▬▬ Dep.) at 221:17–20.
[26] *Calsep A/S v. Dabral*, 84 F.4th 304, 311 (5th Cir. 2023) (sanctions "must be interpreted narrowly and used cautiously, especially when a statute or rule is at play"); Fed. R. Civ. P. 37(e)(1) (court "may order measures no greater than necessary to cure the prejudice"); Adv. Comm. 2015 ("The remedy [under (e)(2)] should fit the wrong."); *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 341 F.R.D. 474, 529 (limiting curative instruction to narrow set of data lost).
[27] Adv. Comm. 2015 (curative instructions under (e)(1) cannot have the same "effect of measures that are permitted under subdivision (e)(2)").

prejudice to another party from loss of the information," and "order measures no greater than necessary to cure th[at] prejudice." Fed. R. Civ. P. 37(e)(1). Prejudice occurs only where a party cannot present "evidence *essential* to its underlying claim." *BHI Energy I*, 730 F. Supp. 3d at 320–21 (quoting *Coastal Bridge Co.*, 833 F. App'x at 575); *see also Calsep A/S*, 84 F.4th at 314 ("Generally, we find prejudice when a party's case-in-chief is *seriously and gravely impacted*."). That any lost evidence was "*relevant*" is not enough to show prejudice. *Flores v. AT&T Corp.*, 2018 WL 6588586, at *7 (W.D. Tex. Nov. 8, 2018).

### 1. Plaintiffs Cannot Obtain an Adverse Inference under Rule 37(e)(2) Because They Cannot Show Intent to Deprive.

Plaintiffs cannot meet the high burden of bad faith required for an adverse inference, *Miller,* 98 F.4th at 219. *First*, Google disclosed its Chat retention process to Plaintiffs at the outset of their investigation, and Plaintiffs confirmed their understanding in writing. As in *Guzman*, Google's "disclosure . . . suggests [it] was not seeking to deceive." 804 F.3d at 713 (affirming denial of sanctions for failure to demonstrate bad faith). A finding that Google *intentionally* deceived Plaintiffs when it *disclosed* what it was doing and Plaintiffs acknowledged what that meant, would turn Rule 37(e)(2) on its head and set a dangerous precedent for all litigants. Parties must be able to rely on their disclosures as part of ESI negotiations, and a disclosed practice should not be the basis for the extreme remedy of an adverse inference.

*Second*, if any relevant Chats were lost, it was pursuant to Google's disclosed and routine document retention policy, negating any inference of bad faith. *Arthur Anderson LLP v. United States*, 544 U.S. 696, 704 (2005) ("Document retention policies, which are created in part to keep certain information from getting into the hands of others, including the Government, are common in business. It is, of course, not wrongful ... to comply with a valid document retention policy under ordinary circumstances."); *Russell v. Univ. of Texas of Permian Basin*, 234 F. App'x 195, 208 (5th

17

Cir. 2007) ("Typically, we do not draw an inference of bad faith when documents are destroyed under a routine policy."); *Barnett v. Deere & Co.*, 2016 WL 4544052, *4–5 (S.D. Miss. Aug. 31, 2016) (denying sanctions when documents were destroyed pursuant to document retention policy).[28] Again, there is nothing nefarious about Google's general guidance to employees to be "careful" when speculating on topics on which they were not informed. Google ***never*** suggested, whether in general guidance or litigation holds, that employees subject to a hold go "off the record" when saying something that may support an adversary's claim.[29]

*Third*, as discussed above, once Google anticipated this lawsuit, it (unlike most Plaintiffs) promptly began issuing litigation hold notices specifically instructing recipients *not* to use Chat to discuss topics relevant to the hold (and if they must, to preserve those messages). Litigants do not act in bad faith when they rely on employees to comply with preservation instructions. *Cf. Keurig*, 341 F.R.D. at 520–21 (even a failure to follow up with custodians regarding preservation, in contrast to Google's litigation hold reminders, "constitutes negligence, not an intent to deprive"); Ex. 5 at 120:22-121:3 ("I rely on the professionalism and the responsibilities of the individual custodians who receive specific instructions at the moment of their hold being issued"); *Sedona on Legal Holds*, 20 SEDONA CONF. J. at 408 ("allow[ing] individual employees to use discretion whether to retain e-mail is simply not indicative of bad faith").

---

[28] Plaintiffs' claim that Google's policy aimed to deprive adversaries of evidence is false. The 2008 Chat retention policy change was for permissible *business reasons*: reducing the burden of reviewing "millions" of non-substantive messages when responding to document requests. ECF 693-08. Defaulting to "history off" helped "reduce time spent sifting through *irrelevant* old messages and reduce storage costs," while allowing Google to focus on their "most meaningful and useful messages." Ex. 6. Also, until the 2015 Amendments (a time *Plaintiffs* claim is relevant), Rule 37(e) included a safe harbor for ESI lost "as a result of the routine, good-faith operation" of a document retention system. Fed. R. Civ. P. 37(e) (2006 Amend.).

[29] Regardless of the reason for the 2008 policy change, it still cannot support requisite intent in *this* case: Google could not have intended to deprive Plaintiffs of anything 11 years before they began their investigation. *See Keurig*, 341 F.R.D. at 496 (moving party must show that the spoliating party "had the intent of depriving [its adversary] ***in this litigation*** of that evidence").

*Finally*, Google's enormous production of ESI and the over 90 depositions made available to Plaintiffs are inconsistent with an intent to deprive. *See, e.g.*, *Keurig*, 341 F.R.D. at 526 (no intent where defendant's "productions were robust," and plaintiffs had "numerous sources of information on which to question" witnesses in depositions); *Eur. v. Equinox Holdings, Inc.*, 592 F. Supp. 3d 167, 179 (S.D.N.Y. 2022) (no intent where "produced materials provide Plaintiff substantial information and comparator evidence to support her claims").

### 2. Plaintiffs Are Not Entitled to any Other Sanctions Under Rule 37(e)(1) Because They Have Not Been Prejudiced.

Prejudice requires that missing, relevant messages were *essential* to Plaintiffs' claims. *See BHI Energy I*, 730 F. Supp. 3d at 321; *Calsep A/S*, 84 F.4th at 314.[30] Plaintiffs have not made this showing, so they cannot obtain sanctions under Rule 37(e)(1) either.

*First*, Google's duty to preserve arose on September 9, 2019, for Plaintiffs' antitrust claims and December 2020 for DTPA claims. But (i) *all* of the allegedly anticompetitive conduct and (ii) the conduct at the core of Plaintiffs' DTPA claims (RPO, DRS, and Project Bernanke) occurred *before* September 9, 2019. Appendix A. Any unpreserved chats between September 2019 and February 2023 are thus unlikely to have been *essential* to Plaintiffs' claims.[31]

*Second*, the record disproves that essential evidence lay in unpreserved chat messages. Google collected over 10 million chat messages and produced over half a million of them to Plaintiffs. *See* Appendix E. But Plaintiffs' experts did not cite a single chat message in their materials about the ***merits*** of the claims. Nor have Plaintiffs explained how missing Chats prevent them from proving any specific elements of a claim. *See* Mtn. at 13–15. Nor would that make sense

---

[30] Rule 37 gives judges "discretion to determine how best to assess prejudice," Adv. Comm. 2015, but courts in this circuit place the burden on the movant, *United Healthcare Servs., Inc. v. Rossel*, 2024 WL 1252365, at *4 (N.D. Tex. Mar. 21, 2024); *BHI Energy I*, 730 F.Supp.3d at 324.

[31] Plaintiffs acknowledged this fact *at least* for any purportedly lost chat messages after November 15, 2021, the date they initially sought to close discovery. Ex. 27.

here. For instance, messages among Google employees would not make it more likely that an *advertiser or publisher* was deceived. *See* ECF 695-1 at 23–29. Unable to prove essentiality, Plaintiffs substitute anodyne testimony from Google employees stating that they frequently used Chat. That does not establish any history-off chat messages were relevant, let alone ***essential***. In fact, many Google employees testified they used Chat primarily for logistical, personal, or other non-substantive reasons unrelated to the merits of this case.[32] *See* Appendix B; ECF 545-11.

*Finally*, Plaintiffs *knew* of Google's Chat retention process for years without suggesting that Chat messages were essential to their case. Instead, for example, Plaintiffs told the MDL court that *source code* behind Google's ad tech "will be direct evidence of Google's relevant conduct" and "a ***major aspect*** of expected discovery." MDL ECF 273 at 11–12. While litigating a dispute over the ESI order, MDL plaintiffs argued that *ad logs* were the "***heart and soul*** of the case." MDL ECF 481 at 9:7–8. It was not until after Google's Chat retention process was litigated in *Play* (involving very different circumstances) that Plaintiffs began claiming chat messages were crucial here.

Given the volume of other ESI produced in this case and the low likelihood that messages from September 2019 to February 2023 would be relevant, this is not a case where potentially lost messages "seriously and gravely" impacted Plaintiffs' case. *See Calsep A/S*, 84 F.4th at 314.

## V. CONCLUSION

For all of the foregoing reasons, the Court should deny Plaintiffs' Motion.

---

[32] That testimony is supported by analysis of the metadata contained in the debugging logs produced for the five custodians overlapping from the *Play* case. Even after Google's Chat history setting was forced on permanently for all legal hold recipients in February 2023, only a small fraction of all chat messages were responsive, ranging by custodian from a *zero percent* responsiveness rate to a maximum of 15.2%. *See* Ex. 28 (Malkiewicz Report) at 36.

Dated: January 6, 2025                    Respectfully submitted,


                                          */s/ Eric Mahr*
                                          Eric Mahr (*pro hac vice*)
                                          **FRESHFIELDS US LLP**
                                          700 13th Street, NW
                                          10th Floor
                                          Washington, DC 20005
                                          Tel.: (202) 777-4545
                                          eric.mahr@freshfields.com

                                          Robert J. McCallum (*pro hac vice*)
                                          **FRESHFIELDS US LLP**
                                          3 World Trade Center
                                          175 Greenwich Street
                                          New York, New York 10007
                                          Tel.: (212) 284 4910
                                          rob.mccallum@freshfields.com

                                          Kathy D. Patrick
                                          Texas Bar No. 15581400
                                          KPatrick@gibbsbruns.com
                                          Robin C. Gibbs
                                          Texas Bar No. 07853000
                                          RGibbs@gibbsbruns.com
                                          Ayesha Najam
                                          Texas Bar No. 24046507
                                          ANajam@gibbsbruns.com
                                          Elisa Wulfsberg
                                          Texas Bar No. 24125469
                                          EWulfsberg@gibbsbruns.com
                                          **Gibbs & Bruns LLP**
                                          1100 Louisiana, Suite 5300
                                          Houston, Texas 77002
                                          Tel.: (713) 650-8805
                                          Fax: (713) 750-0903

                                          *Attorneys for Defendant*

## CERTIFICATE OF SEALING

I certify pursuant to Local Rule CV-5(a)(7)(B) that, on January 6, 2025, a motion to seal was filed, separately and immediately before this document was filed under seal.

*/s/ Eric Mahr*

Eric Mahr

## CERTIFICATE OF SERVICE

I certify that on January 6, 2025, this document was filed electronically in compliance with Local Rule CV-5(a) and served on all counsel who have consented to electronic service, per Local Rule CV-5(a)(3)(A). In addition, this sealed filing will be promptly served by email on counsel of record for all parties.

*/s/ Eric Mahr*

Eric Mahr