# EXHIBIT 4

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 1

```
 1   IN THE UNITED STATES DISTRICT COURT
 2   FOR THE EASTERN DISTRICT OF TEXAS
 3   SHERMAN DIVISION
 4
 5   ---------------------------------X
 6   THE STATE OF TEXAS, ET AL.,
 7            PLAINTIFFS,
 8      V.   CASE NO. 4:20-CV-00957-SDJ
 9   GOOGLE LLC,
10            DEFENDANT.
11   ---------------------------------X
12
13           HIGHLY CONFIDENTIAL
14           ATTORNEYS' EYES ONLY
15          VIDEOTAPE DEPOSITION OF
16            IGNATIUS A. GRANDE
17            DECEMBER 19, 2024
18               9:06 A.M.
19
20
21
22
23
24   JOB NO. CS7075142
25
```

Page 137

```
 1   EMPLOYEES THAT COMPANY SHOULD BE
 2   CONSIDERING VIOLATING ITS DUTY TO
 3   PRESERVE?
 4       A.    THIS IS THE GUIDANCE OF THE
 5   SEDONA CONFERENCE. THEY DON'T -- THEY'RE
 6   NOT GOING TO -- AGAIN, TO YOUR POINT IT'S
 7   NOT THE LAW.  THEY'RE PROVIDING BEST
 8   PRACTICES AND GUIDANCE, AND THIS IS YOUR
 9   GUIDANCE.
10       Q.    SO THE SEDONA CONFERENCE IS
11   NOT GOING TO SAY IF YOU DON'T DO THIS
12   YOU'RE VIOLATING YOUR DUTY TO PRESERVE,
13   CORRECT? THAT'S NOT THE TYPE OF THING
14   THAT THEY SAY?
15           MR. RENARD:  OBJECTION TO
16       FORM.
17       A.    THE SEDONA CONFERENCE AND
18   OTHER -- OTHER GUIDANCE, INCLUDING THE
19   GUIDANCE I CITE FROM THE FTC NOTES THAT
20   THE EPHEMERAL MESSAGING, INSTANT
21   MESSAGING NEEDS TO BE PRESERVED AS PER A
22   LEGAL HOLD, WHETHER THAT IS A LEGAL HOLD
23   CAPABILITY THAT PRESERVES ALL CHATS OR
24   MESSAGES OR IF NOT, ANOTHER METHOD WHICH
25   IN THIS CASE THE OTHER OPTION WOULD HAVE
```

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
                                                    Page 138
 1   BEEN PUTTING A HOLD ON ALL -- OR
 2   PREVENTING THE USE OF CHATS BY EMPLOYEES
 3   WHO WERE SUBJECT TO THE LITIGATION HOLD.
 4        Q.   SO I'M NOT ASKING QUESTIONS
 5   NOW ABOUT PRESERVING ALL RELEVANT CHAT
 6   MESSAGES.  I'M ASKING A BROADER QUESTION.
 7   I'LL JUST TRY AGAIN.
 8             CAN YOU CITE TO ANYTHING
 9   ISSUED BY SEDONA THAT REQUIRES, THAT SAYS
10   COMPANIES ARE REQUIRED TO PHYSICALLY
11   PROHIBIT ANY EMPLOYEE ON HOLD FROM
12   SENDING ANY MESSAGE THAT'S NOT SAVED?
13        A.   NO.
14        Q.   CAN YOU CITE ANY INDUSTRY
15   STANDARD -- AND I'LL GET TO THE LAW IN A
16   SECOND -- BUT INDUSTRY STANDARD THAT
17   REQUIRES A COMPANY TO PHYSICALLY PROHIBIT
18   EMPLOYEES ON HOLD FROM SENDING CHAT
19   MESSAGES THAT IS NOT CAPABLE OF BEING
20   SAVED?
21        A.   THE INDUSTRY STANDARD IS THAT
22   COMPANIES NEED TO PRESERVE POTENTIALLY
23   RESPONSIVE COMMUNICATIONS AND IF -- IF
24   THAT'S NOT FEASIBLE WITH THE CHAT
25   PLATFORM THERE NEEDS TO BE ANOTHER WAY TO
```

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 139

```
 1   DO IT.
 2        Q.    AND ONE POSSIBLE OTHER WAY
 3   URGED BY SEDONA IS BY INSTRUCTING
 4   EMPLOYEES TO NOT USE A MESSAGING SYSTEM
 5   THAT'S NOT KEEPING THE PARTICULAR CHAT,
 6   RIGHT?
 7        A.    I DON'T RECALL IF IT STATES
 8   THAT LANGUAGE.
 9        Q.    JUST TO BE CLEAR, GOOGLE IN
10   THIS CASE, AS WE SAW, INSTRUCTED ITS
11   EMPLOYEES TO; A, NOT USE CHAT TO TALK
12   ABOUT RELEVANT TOPICS TO THE HOLD; AND
13   THEN B, IF THEY HAD TO, TO TURN HISTORY
14   ON, CORRECT?
15             MR. RENARD:  OBJECTION TO
16        FORM.
17        A.    THEY DID THAT BUT IT WAS NOT
18   CLEAR HOW THEY COULD COMPLY WITH IT OR
19   MADE IT VERY DIFFICULT FOR THEM TO COMPLY
20   WITH THOSE INSTRUCTIONS.
21        Q.    YOU SAID "MADE IT VERY
22   DIFFICULT" AND "NOT CLEAR". LET'S TAKE
23   THEM ONE BY ONE.
24             IN TERMS OF IT BEING CLEAR OR
25   NOT, YOU DON'T KNOW BECAUSE OF THE
```

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 188

```
 1  LOOKING FOR THAT OPINION? BECAUSE I CAN
 2  SAVE YOU SOME TIME AND LET YOU KNOW IT'S
 3  NOT IN THERE AND THAT'S WHY I'M ASKING.
 4       A.   I'M NOT SURE OF THE EXACT DATE
 5  THAT A LITIGATION TRIGGER MIGHT HAVE BEEN
 6  TRIGGERED IN CONNECTION WITH THAT ONE
 7  POINT.  BUT DECEPTIVE TRADE PRACTICES,
 8  YOU KNOW, WERE PART OF THE -- THE
 9  INVESTIGATIONS THAT WERE -- AND ANTITRUST
10  ISSUES THAT WERE STARTING TO BE RAISED IN
11  THAT PERIOD OF TIME.
12       Q.   WHICH ONE?
13       A.   WHICH ANTITRUST? WHICH ISSUE?
14       Q.   SIR, I'M SORRY, I DON'T MEAN
15  TO BE DISRESPECTFUL BUT DID YOU JUST MAKE
16  THAT UP, THAT THESE INVESTIGATIONS --
17  THAT THE INVESTIGATIONS HAD TO DO WITH
18  DECEPTIVE TRADE PRACTICES?
19            MR. RENARD: OBJECTION TO
20       FORM.
21       A.   I BELIEVE THAT WAS -- WAS THAT
22  YOUR QUESTION?
23       Q.   LET'S LOOK BACK TO YOUR
24  REPORT. EVENTS A THROUGH K, DID ANY OF
25  THEM INVOLVE POTENTIAL OR ACTUAL
```

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 189

1  INVESTIGATIONS OR LITIGATIONS INVOLVING
2  CLAIMS OF DECEPTIVE TRADE PRACTICES?
3          A.      THOSE -- THE -- WHAT I LIST IN
4  A THROUGH K DEAL WITH ALLEGATIONS OF
5  MONOPOLIZATION IN THE AREA OF DISPLAY
6  ADS.
7          Q.      THANK YOU. SO NOW MY QUESTION
8  IS, PUTTING ASIDE A THROUGH K, CAN YOU
9  CITE TO US ANY OTHER EVENT TO SHOW THAT
10 BEFORE DECEMBER OF 2019 GOOGLE SHOULD
11 HAVE ANTICIPATED CLAIMS INVOLVING
12 DECEPTIVE TRADE PRACTICES IN ITS DISPLAY
13 ADS BUSINESS?
14         A.      I'M NOT AWARE OF ONE.
15         Q.      AND DID YOU TAKE A LOOK AT THE
16 CID THAT WAS ISSUED IN SEPTEMBER OF 2019?
17         A.      I DID AT SOME POINT.
18         Q.      AND THAT REFERENCED
19 ALLEGATIONS OF POTENTIAL VIOLATIONS OF
20 THE TEXAS ANTITRUST STATUTE; IS THAT
21 RIGHT?
22         A.      I BELIEVE SO.
23         Q.      ALL RIGHT. LET'S GO BIG
24 PICTURE A LITTLE BIT BEFORE WE SWITCH
25 GEARS ALTOGETHER.

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 190

1  DO YOU AGREE THAT PRESERVATION
2  OBLIGATIONS REQUIRE REASONABLE AND GOOD
3  FAITH EFFORTS?
4     A.   YES.
5     Q.   AND THAT IT IS UNREASONABLE TO
6  EXPECT PARTIES TO TAKE EVERY CONCEIVABLE
7  STEP OR PROPORTIONATE TO SEPTEMBER EACH
8  INSTANCE OF ESI?
9     A.   I BELIEVE THAT, I DON'T THINK
10 THAT WAS APPLICABLE IN THIS CASE, THOUGH.
11    Q.   WHEN YOU SAY YOU BELIEVE
12 THAT -- I'M GOING TO REPEAT MY PREMISE.
13         YOU AGREE THAT IT'S
14 UNREASONABLE TO EXPECT PARTIES TO TAKE
15 EVERY CONCEIVABLE STEP TO PRESERVE EACH
16 INSTANCE OF RELEVANT ESI, CORRECT?
17    A.   THAT'S CORRECT.
18    Q.   OR DISPROPORTIONATE STEPS,
19 RIGHT?
20    A.   THAT'S CORRECT.
21    Q.   AND YOUR OPINION THAT GOOGLE
22 HAD -- WELL, LET ME ASK YOU THIS.  THE
23 OPINIONS WE'VE BEEN TALKING ABOUT,
24 GOOGLE'S DUTY TO PRESERVE, DO THEY ALSO
25 APPLY TO EVERY PIECE OF PAPER THAT FALLS

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 192

```
 1   RELEVANT DOCUMENTS SHOULD BE PREVENTED
 2   FROM THROWING AWAY PAPER?
 3        A.    IF THEY HAVE POTENTIALLY
 4   RESPONSIVE DOCUMENTS, PAPER DOCUMENTS
 5   THAT CAN'T BE EASILY SEPARATED OUT, YES,
 6   I THINK THAT PAPER SHOULD BE PRESERVED IF
 7   IT'S A FILE, FOR EXAMPLE.
 8        Q.    AND IS THERE A DIFFERENCE
 9   BETWEEN INSTRUCTING EMPLOYEES TO KEEP
10   THAT PAPER VERSUS TAKING AWAY THEIR TRASH
11   CANS?
12              MR. RENARD:  OBJECTION, FORM.
13        A.    IN TERMS OF COLLECTING THAT
14   PAPER, IF A SOUND PROCESS IS PUT IN PLACE
15   THAT'S DEFENSIBLE, THAT THAT -- THAT'S
16   WHAT SHOULD BE DONE.
17        Q.    I'M SORRY. THAT WAS NOT IN MY
18   QUESTION. I WILL OBJECT AS NONRESPONSIVE.
19              IS THERE A DIFFERENCE, AS
20   SOMEONE WHO GIVES DISCOVERY ADVICE,
21   BETWEEN TELLING EMPLOYEES DON'T THROW
22   AWAY RELEVANT PAPER VERSUS REMOVING THEIR
23   TRASH CANS?
24              MR. RENARD:  OBJECTION, FORM.
25        A.    I CAN'T ANSWER THAT QUESTION.
```

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 193

1  IT DOESN'T MAKE SENSE.
2       Q.    AND IT DOESN'T MAKE SENSE
3  BECAUSE YOU'VE NEVER ADVISED ANY COMPANY
4  TO REMOVE THEIR TRASH CANS, HAVE YOU?
5       A.    NO.
6       Q.    HAVE YOU EVER ADVISED ANY
7  COMPANY TO TELL ITS EMPLOYEES TO KEEP
8  EVERY SINGLE STICKY NOTE OR SHRED OF
9  PAPERS IN THEIR OFFICES WHETHER OR NOT IT
10 RELATES TO A LITIGATION HOLD?
11      A.    NO.
12      Q.    HAVE YOU EVER -- ARE YOU
13 FAMILIAR WITH WHAT A WHITEBOARD IS?
14      A.    YES.
15      Q.    AND THE WHOLE PURPOSE OF A
16 WHITEBOARD IS IT'S EXPECTED TO BE ERASED
17 AND REUSED REGULARLY, RIGHT?
18      A.    YES.
19      Q.    HAVE YOU EVER ADVISED A
20 COMPANY TO REMOVE ALL WHITEBOARDS FROM
21 THEIR OFFICES ONCE THEY ANTICIPATE
22 LITIGATION?
23      A.    NO.
24      Q.    LET'S CHANGE GEARS AND TALK
25 ABOUT THE CHAT METADATA LOGS THAT WERE

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 194

1  PRODUCED IN THIS LAWSUIT FOR FIVE
2  PARTICULAR CUSTODIANS. ARE YOU WITH ME ON
3  WHAT I'M TALKING ABOUT?
4       A.    YES.
5       Q.    DID YOU PERSONALLY REVIEW ANY
6  METADATA THAT GOOGLE PRODUCED WITH
7  RESPECT TO THE FIVE CUSTODIANS?
8       A.    I SAW THE METADATA THAT HAD
9  BEEN PRODUCED BUT MY REPORT DID NOT
10 INCLUDE ANALYSIS OF THE METADATA.
11      Q.    WHEN YOU SAY YOU SAW THE
12 METADATA, YOU WERE ABLE TO ACTUALLY VIEW
13 THE CSV FILES THAT WERE PRODUCED?
14      A.    I SAW WHAT KIND OF METADATA
15 WAS IN THE CSV FILE.  SO, YEAH, I SAW IT.
16 I DIDN'T ANALYZE THE DATA, THOUGH.
17      Q.    WHEN YOU SAY "I DIDN'T ANALYZE
18 THE DATA", YOU MEAN YOU DIDN'T DO WHAT
19 PROFESSOR HOCHSTETLER DID IN TERMS OF
20 WRITING SCRIPTS TO RUN STATISTICS ON THE
21 CODE; IS THAT WHAT YOU'RE SAYING?
22      A.    YES, I DID NOT -- I SAW THE
23 FILES, SAW WHAT WAS IN THE FILE BUT I DID
24 NOT PERFORM ANY ANALYSIS.
25      Q.    AND WOULD YOU BE QUALIFIED TO

Page 248

1   SYSTEM REALLY IS PROBABLY A COMBINATION
2   OF ONE, TWO AND THREE, UNDER THESE
3   FACTORS.
4        Q.   OKAY.
5        A.   IT DEPEND ON HOW YOU
6   CHARACTERIZED IT AND HOW IT WAS SET UP.
7        Q.   OKAY. WE'RE GOING TO MOVE ON.
8   LET'S LOOK AT PAGE 454.
9        A.   YES, I'M THERE.
10       Q.   OKAY. SO UNDER THE CATEGORY
11  TENSIONS ASSOCIATED WITH THE USE OF
12  EPHEMERAL MESSAGING APPLICATIONS, IN PART
13  A, SEDONA WENT THROUGH AND OUTLINED SOME
14  BENEFITS OF EPHEMERAL MESSAGING. DO YOU
15  SEE THAT?
16       A.   YES.
17       Q.   AND UNDER TITLE -- SORRY,
18  SUBHEADING 1, ORGANIZATIONAL BENEFITS, IT
19  NOTES FOR ORGANIZATIONS THAT IT "SUPPORTS
20  INFORMATION GOVERNANCE BEST PRACTICES BY
21  REDUCING UNNECESSARY DATA. IT ALSO
22  FACILITATES, AMONG OTHER THINGS,
23  COMPLIANCE WITH LEGAL REQUIREMENTS TO
24  PROTECT PERSONAL DATA, PRIVACY BY DESIGN
25  AND DATA SECURITY OBJECTIVES." DID I READ

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 249

```
 1   THAT CORRECTLY?
 2        A.   YOU DID.
 3        Q.   AND BEFORE I GO -- ACTUALLY,
 4   LET'S KEEP READING. UNDER INFORMATION
 5   GOVERNANCE, IS THAT IG IN EDISCOVERY
 6   CIRCLES?
 7        A.   THAT'S CORRECT.
 8        Q.   BECAUSE IN OTHER CIRCLES IT
 9   MEANS SOMETHING DIFFERENT.
10             IT SAYS, "THE MASSIVE GROWTH
11   IN DATA VOLUMES HAS DRIVEN ORGANIZATIONS
12   TO ADOPT POLICIES THAT SEEK TO MANAGE THE
13   LIFECYCLE OF DATA. THE FOCUS OF THOSE
14   POLICIES IS ON RETENTION OF DATA WITH
15   ONGOING BUSINESS VALUE, AND EARLY
16   IDENTIFICATION AND ACTION TO DISCARD DATA
17   WITHOUT SUCH VALUE, RESPONSIBLE USAGE OF
18   EPHEMERAL MESSAGING TOOLS CAN OFFER
19   SIGNIFICANT ECONOMIES IN DATA STORAGE AND
20   RECORDS MANAGEMENT."
21             SO I WANT TO PAUSE THERE. WE
22   WILL READ A FEW OTHER PARTS OF THIS, MR.
23   GRANDE, BUT CAN WE AGREE THAT SEDONA
24   RECOGNIZES THAT BUSINESSES DO FOCUS ON A
25   DISTINCTION BETWEEN DATA THAT HAS ONGOING
```

Page 250

```
 1   BUSINESS VALUE AND DATA THAT DOESN'T?
 2             MR. RENARD:  OBJECTION TO
 3       FORM.
 4       A.    YES, BUT THIS IS BASED ON --
 5   NOT BASED ON THE TYPE OF COMMUNICATION,
 6   IT'S BASED ON WHETHER A DOCUMENT HAS
 7   ONGOING BUSINESS VALUE OR NOT.
 8             MS. NAJAM:  OKAY.  I'LL OBJECT
 9       TO EVERYTHING AFTER "YES" AS
10       NONRESPONSIVE.
11       Q.    SEDONA IS NOT CRITICIZING THE
12   POLICIES OF ORGANIZATIONS BEING FOCUSED
13   ON RETENTION OF DATA WITH ONGOING
14   BUSINESS VALUE AND EARLY IDENTIFICATION
15   AND ACTION TO GET RID OF DATA WITHOUT IT,
16   TRUE?
17             MR. RENARD:  OBJECTION, FORM.
18       A.    THAT'S WHAT THAT PROVISION
19   STATES.
20       Q.    MY QUESTION WAS, ARE WE GOING
21   TO FIND THAT SEDONA CRITICIZES THAT
22   DISTINCTION THAT ORGANIZATIONS ARE
23   MAKING?
24       A.    NO.  BUT, AGAIN, I DON'T THINK
25   THAT'S THE SAME DISTINCTION BEING MADE BY
```

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 251

```
 1   GOOGLE IN THIS CASE.
 2        Q.    TOTALLY GET IT.  AND I'LL
 3   OBJECT TO EVERYTHING AFTER "NO" AS
 4   NONRESPONSIVE. LET'S GO TO THE NEXT PAGE
 5   455.
 6              AT THE BOTTOM OF 455 THERE IS
 7   A SENTENCE THAT GOES ONTO THE NEXT PAGE.
 8   IT SAYS "LIKEWISE" -- I'M GOING TO
 9   ABBREVIATE IT -- "IG POLICIES THAT
10   PRIORITIZE DATA ASSETS WITH BUSINESS
11   VALUE RATHER THAN CONTROLLING ALL
12   INFORMATION EQUALLY ENHANCE THE
13   USEFULNESS OF RETAINED INFORMATION AND
14   ARE MORE RESPONSIVE TO CHANGING END USER
15   PREFERENCES." DID I READ THAT CORRECTLY?
16        A.    SORRY, I WAS LOOKING AT THE
17   WRONG SPOT. YES, THAT'S WHAT IT SAYS.
18        Q.    AND BY THE WAY, IN ANY -- IN
19   THIS PAPER ARE WE GOING TO FIND SEDONA
20   INSTRUCTING FOLKS THAT, HEY, WHEN YOU
21   MAKE THAT DISTINCTION YOU CAN'T MAKE IT
22   ON THE KIND OF COMMUNICATION, IT HAS TO
23   BE ON THE SUBSTANCE?
24              MR. RENARD:  OBJECTION TO
25       FORM.
```

```
 1   STARTS ON PAGE 476, IT'S CALLED GUIDELINE
 2   3.
 3        A.   GOT IT.
 4        Q.   "ORGANIZATIONS SHOULD MAKE
 5   INFORMED CHOICES AND DEVELOP
 6   COMPREHENSIVE USE POLICIES FOR EPHEMERAL
 7   MESSAGING APPLICATIONS."
 8             SO JUMPING BACK TO 479, WITHIN
 9   THAT SECTION SEDONA SUGGESTS IN THAT
10   FIRST SENTENCE, FULL SENTENCE ON THAT
11   PAGE, "ORGANIZATIONS MAY ALTERNATIVELY
12   SELECT A MIDDLE GROUND ALLOWING EMPLOYEES
13   TO COMMUNICATE WITH EPHEMERAL MESSAGING
14   UNTIL A LEGAL HOLD OBLIGATION ARISES, AT
15   WHICH TIME USE OF THE APPLICATION BY KEY
16   CUSTODIANS OF RELEVANT INFORMATION MAY BE
17   DISABLED OR OTHERWISE PROHIBITED FOR ANY
18   COMMUNICATIONS RELATED TO THE SUBJECT
19   MATTER OF THE HOLD."  DID I READ THAT
20   CORRECTLY?
21        A.   I THINK THAT'S PART OF THAT
22   PARAGRAPH, BUT THERE'S FURTHER DISCUSSION
23   EARLIER ON WITH REGARD TO LONGER
24   RETENTION PERIODS AND THE ABILITY TO
25   AFFECT -- OKAY.
```

Page 258

1  Q. YOU'RE CORRECT. AND IF YOU
2  READ UP IN THAT SAME PARAGRAPH, THERE'S A
3  SHORT OPTION AND THERE IS A LONG OPTION,
4  AND WHAT I JUST READ TO YOU WAS MIDDLE
5  GROUND, RIGHT?
6  A. THAT'S CORRECT.
7  Q. SO I JUST WANT TO MAKE SURE
8  WE'RE READING SEDONA'S SUGGESTIONS THE
9  SAME WAY.
10  WHEN IT SAYS THAT "IT MAY BE
11  DISABLED OR OTHERWISE PROHIBITED FOR ANY
12  COMMUNICATIONS RELATING TO THE SUBJECT
13  MATTER OF THE HOLD", CAN WE AGREE THAT
14  SEDONA IS NOT SUGGESTING THAT PHYSICALLY
15  DISABLING EPHEMERAL MESSAGING IS BEST
16  PRACTICE -- I'M SORRY -- IS THE ONLY BEST
17  PRACTICE?
18  MR. RENARD: OBJECTION TO
19  FORM.
20  A. I WOULD AGREE THAT SEDONA SETS
21  FORTH DIFFERENT OPTIONS REGARDING
22  PRESERVATION, NOT JUST DISABLING.
23  Q. YOU CAN PUT EXHIBIT 13 ASIDE.
24  YOU MENTIONED A COUPLE OF TIMES TODAY
25  THAT IN YOUR OPINION EMPLOYEES MAY HAVE

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 259

```
 1   BEEN CONFUSED BY THE RETENTION SETTING.
 2   DO YOU RECALL THAT?
 3        A.    I BELIEVE REGARDING THE
 4   ABILITY TO TURN HISTORY ON OR OFF IS WHAT
 5   I WAS REFERENCING.
 6        Q.    SO LET'S LOOK AT PAGE 42 OF
 7   YOUR REPORT.  THERE IS AN IMAGE THERE.
 8   LET ME JUST MARK THAT AS A SEPARATE
 9   EXHIBIT. IT WILL BE EXHIBIT 14.
10             (GRANDE EXHIBIT 14, IMAGE FROM
11        EXPERT REPORT, WAS RECEIVED AND
12        MARKED ON THIS DATE FOR
13        IDENTIFICATION.)
14        Q.    IN EXHIBIT 14, THAT IS THE
15   EXACT SAME IMAGE THAT YOU EXCERPTED IN
16   YOUR REPORT, RIGHT, IT'S JUST BIGGER?
17        A.    YES.
18        Q.    ACTUALLY, I'M SORRY, IT'S THE
19   -- IT'S THE PICTURE, ITSELF, OF WHAT YOU
20   FOUND TO APPEAR CONFUSING, THAT IS THE
21   CLOCK WITH A SLASH IN IT?
22        A.    YES. THIS IS AN ATTACHMENT TO
23   A LONGER CHAT/EMAIL CORRESPONDENCE.
24        Q.    OKAY. I JUST WANT TO MAKE SURE
25   I UNDERSTAND. I UNDERSTAND THAT YOU HAVE
```

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 338

```
 1              C E R T I F I C A T E
 2              I, MAUREEN M. RATTO, A
 3    REGISTERED PROFESSIONAL REPORTER, DO
 4    HEREBY CERTIFY THAT PRIOR TO THE
 5    COMMENCEMENT OF THE EXAMINATION,
 6    IGNATIUS GRANDE WAS SWORN BY ME TO
 7    TESTIFY THE TRUTH, THE WHOLE TRUTH AND
 8    NOTHING BUT THE TRUTH.
 9              I DO FURTHER CERTIFY THAT THE
10    FOREGOING IS A TRUE AND ACCURATE
11    TRANSCRIPT OF THE PROCEEDINGS AS TAKEN
12    STENOGRAPHICALLY BY AND BEFORE ME AT
13    THE TIME, PLACE AND ON THE DATE
14    HEREINBEFORE SET FORTH.
15              I DO FURTHER CERTIFY THAT I AM
16    NEITHER A RELATIVE NOR EMPLOYEE NOR
17    ATTORNEY NOR COUNSEL OF ANY OF THE
18    PARTIES TO THIS ACTION, AND THAT I AM
19    NEITHER A RELATIVE NOR EMPLOYEE OF SUCH
20    ATTORNEY OR COUNSEL, AND THAT I AM NOT
21    FINANCIALLY INTERESTED IN THIS ACTION.
22
23                    [Signature: Maureen Ratto]
24              MAUREEN M. RATTO, RPR
25              LICENSE NO. 817125
```