# EXHIBIT 8

# Chapter 11

# Meet and Confer Obligations

*By Ignatius Grande*\*

§ 11:1    Introduction
§ 11:2    The evolution of Federal Rule of Civil Procedure 26(f)
§ 11:3    Local rules expanding the reach of the Rule 26(f)
§ 11:4    Coordination between counsel and the client
§ 11:5    Conduct of the Rule 26(f) conference
§ 11:6    Strategic implications of the meet and confer
          obligations
Appendix 11A.    Rule 26(f) Conference Checklist

**Research References**

*West's Key Number Digest*
Federal Civil Procedure ☞1551

*Legal Encyclopedias*
C.J.S., Federal Civil Procedure § 594

*Treatises and Practice Aids*
eDiscovery & Digital Evidence §§ 2:2, 6:4, 6:16, 6:19

## § 11:1   Introduction

The Rule 26(f) conference is the early meet and confer conference between the parties called for by the Federal Rules of Civil Procedure and is intended to foster a discussion among counsel regarding the parameters of discovery. In order to be prepared for a 26(f) conference, counsel must become educated regarding a full range of electronic discovery ("eDiscovery") issues at this early stage of the litigation. The landscape of discovery is now tweaked to front load the resolution of issues that may have some impact on the preservation, collection, and production of electronic discovery. The Rule 26(f) conference forces counsel to tackle the core theories of the case at a very preliminary stage in the litigation. Counsel will be wise to enter into these conferences well prepared both in terms of the factual grasp of the client's

---

\*Previous contributors to this work have included Marla Bergman, Jason Birriel, Samuel Salyer and Christopher O'Neill.

electronic systems, the key repositories of their client's data that are implicated in the case, and the tactical aspects of the electronic discovery process. In addition, counsel should develop a strong sense of the issues of the case and the factual materials likely to be relevant to proving the claims and/or defenses in the case.

## § 11:2    The evolution of Federal Rule of Civil Procedure 26(f)

The concept of the Rule 26(f) conference is not new. Before the 2006 amendments, parties were expected to meet and confer to plan for the discovery process.[1] By rule, the Rule 26(f) conference takes place "at least 21 days before a scheduling conference is to be held or a scheduling order is due under Rule 16(b)."[2] The Rule 16(b) scheduling order must be issued "within the earlier of 120 days after any defendant has been served with the complaint or 90 days after any defendant has appeared."[3] Thus, counsel only has a couple of months after a complaint has been filed to comply with the requirements of this Rule, which place hefty burdens on counsel. It should be noted that although the Federal Rules of Civil Procedure set forth a 26(f) requirement, not all civil practitioners treat the 26(f) conference seriously.[4]

During the 26(f) conference, parties must make or arrange to make 26(a)(1) disclosures and discuss issues concerning the preservation of discoverable information. The 2006 amendments to Rule 26(f) added the discovery of electronically stored information ("ESI") to the list of issues that the parties must discuss during the meet and confer process. The form in which such ESI will be disclosed by the producing party should be included in the parties' discussion. Rule 26(f) requires counsel to expend consider-

---

[Section 11:2]

[1]This subdivision of Rule 26(f) was added in the 1980 Amendment to curb the "widespread criticism of abuse of discovery." Fed. R. Civ. P. 26(f), Advisory Committee Notes for 1980 Amendments. At that time, however it was an elective process. The 1993 Amendments to Rule 26(f) made it mandatory, absent special circumstances, for parties to meet and prepare a discovery plan in all cases. Fed. R. Civ. P. 26(f), Advisory Committee Notes for 1993 Amendments.

[2]Fed. R. Civ. P. 26(f).

[3]Fed. R. Civ. P. 16(b).

[4]Early Stages of Litigation Attorney Survey: Report to the Judicial Conference Advisory Committee on Civil Rules, Federal Judicial Center (March 2012) (In March 2012, the Federal Judicial Center conducted a closed-case survey about the early stages of litigation. Some of the findings included the fact that 28% of survey respondents had not met and conferred with the opposing side to plan for discovery and most survey respondents that did meet and confer reported that the meeting lasted between 10 and 30 minutes).

able time and effort to properly understand their client's ESI environment and to develop a discovery plan. Courts have continued to interpret and clarify the requirements of the Rule 26(f) conference, focusing on the necessity of competent counsel to engage in meaningful negotiations regarding eDiscovery and on transparency in the eDiscovery process.[5]

The 2006 Committee Notes to the Rule 26(f) amendments state that "[i]t may be important for counsel to discuss [the client's electronic] systems, and accordingly important for counsel to become familiar with those systems before the conference."[6]

Issues that counsel must be knowledgeable about and prepared to negotiate with opposing counsel in the conference may include: preservation issues, the scope and timing of the electronic discovery, whether data will be identified as not reasonably accessible, the method for dealing with the production of privileged or confidential documents, the format for the production of the ESI, and whether there are any cost sharing issues.[7]

The crux here is that Rule 26(f) requires thoughtful consideration of the client's data, at a very early stage in the case, in order to determine what may be relevant to the litigation. The focus on electronic discovery during this early conference is intended to "avoid later difficulties or ease their resolution."[8] It will only be possible to comply with that mandate if all parties come fully prepared to discuss the potentially relevant data that exists, to negotiate issues of preservation and production, and to reach a mutually agreeable discovery plan.

Failure to raise issues pertaining to eDiscovery during the Rule 26(f) conference may lead to permanent consequences in the litigation. Courts have held that failure to raise issues during the Rule 26(f) conference forecloses a party from later raising issues of the inadequate production of electronic information.[9] Additionally, failure to understand a client's computer systems could lead

---

[5]See, e.g., Custom Hardware Engineering & Consulting, Inc. v. Dowell, 2012 WL 10496, *3 (E.D. Mo. 2012) (advising parties to resolve discovery disputes, such as keyword search terms, with civility); Romero v. Allstate Ins. Co., 271 F.R.D. 96, 109 (E.D. Pa. 2010) (stating that Rule 26(f) requires parties to develop a discovery plan that includes electronically stored information at the 26(f) conference); William A. Gross Const. Associates, Inc. v. American Mfrs. Mut. Ins. Co., 256 F.R.D. 134, 136 (S.D. N.Y. 2009) ("Electronic discovery requires cooperation between opposing counsel and transparency in all aspects of preservation and production of ESI.").

[6]Fed. R. Civ. P. 26(f), Advisory Committee Notes for 2006 Amendments.

[7]Richard N. Lettieri and Hon. Joy Flowers Conti, eDiscovery and Pretrial Conferences A Primer for Lawyers and Judges, 46 Judges' Journal 34 (2007).

[8]Fed. R. Civ. P. 26(f), Advisory Committee Notes for 2006 Amendments.

[9]See, e.g., Wells Fargo Bank, N.A. v. LaSalle Bank Nat. Ass'n, 2009 WL 2243854 (S.D. Ohio 2009) (denying further discovery because the parties did not

to sanctions.[10] Thus, the implications of being unprepared for the Rule 26(f) conference can potentially alter the outcome of the entire litigation.

The Federal Rules of Civil Procedure were amended again effective December 1, 2015, but the revised rules do not change the substance of Rule 26(f). However, prior to the revised rules being put into effect in 2015, Rule 26(d) did not allow parties to serve any discovery requests prior to the Rule 26(f) conference. The amended Rule 26(d) allows document requests to be served much earlier—as soon as 22 days after service of the complaint and summons—which could be several days prior to a 26(f) conference. The amended rules state, however that the time for responding to those early RFPs only begins counting down at the 26(f) conference. The revisions to Rule 26(d) should not greatly affect the relevance or substance of a 26(f) conference, but it is possible that where document requests have been served prior to the conference that there will be more to discuss with regard to production issues.

## § 11:3    Local rules expanding the reach of the Rule 26(f)

In recent years, many local courts have adopted their own eDiscovery rules supplementing the Federal Rules of Civil Procedure.[1] For example, the Western District of North Carolina

---

engage in an effective meet and confer); Kentucky Speedway, LLC v. National Ass'n. of Stock Car Auto Racing, 2006 WL 5097354 (E.D. Ky. 2006) (holding that Plaintiff could not seek metadata from Defendant where the issue of whether or not eDiscovery included metadata should have been addressed in the Rule 26(f) conference but was not); RLI Ins. Co. v. Indian River School Dist., 2007 WL 3112417 (D. Del. 2007) (denying motion to compel and holding that plaintiff failed to raise issue of eDiscovery during the Rule 26(f) conference); Brincker-hoff v. Town of Paradise, 2010 WL 4806966 (E.D. Cal. 2010) (Plaintiff who did not seek production of emails in native or electronic format at 26(f) conference was not entitled to production of emails in native file format.).

[10]*See, e.g.,* Green v. Blitz U.S.A., Inc., 2011 WL 806011 (E.D. Tex. 2011), order vacated, 2014 WL 2591344 (E.D. Tex. 2014) (awarding sanctions where counsel did not have an understanding of how to search company's electronic documents) (sanctions order later vacated upon request of the opposing party); In re A & M Florida Properties II, LLC, 53 Bankr. Ct. Dec. (CRR) 17, 2010 WL 1418861 (Bankr. S.D. N.Y. 2010) (holding that counsel's failure to "gain a sufficient understanding of plaintiff's computer systems resulting in significantly delayed production of relevant documents" warranted monetary sanction against both the client and counsel).

**[Section 11:3]**

[1]Over 40 District courts in states including Arkansas, Alaska, Arizona, California, Colorado, Connecticut, Delaware, Florida, Georgia, Illinois, Indiana, Iowa, Kansas, Maryland, Massachusetts, Missouri, Nebraska, New Hampshire, New Jersey, New York, North Carolina, Ohio, Pennsylvania, Tennessee, Texas, Utah, Vermont, West Virginia, and Wyoming have protocols for the exchange of

set forth 16 points that the parties should discuss during the Rule 26(f) conference. They are summarized below for use as a potential checklist, but should not be viewed by any means as exhaustive:

(1) The scope of the requests for ESI and the form of the production;

(2) The need for, volume of, and costs associated with the production of metadata;

(3) The duty to preserve ESI;

(4) Issues pertaining to the preservation or waiver of the attorney-client privilege or other applicable privileges;

(5) The identification of ESI that is or is not "reasonably accessible" under Rule 26(b)(2)(B);

(6) The methods for bates numbering or otherwise identifying produced ESI;

(7) The methods for making necessary redactions;

(8) List of the types of information systems used by the client and the accessibility of such data;

(9) Specific facts related to the costs and burdens of the preservation, collection and production of ESI;

(10) Issues of cost sharing;

(11) The search methods for retrieving or reviewing ESI;

(12) The scope of and need for depositions of information systems personnel;

(13) The need for two-tiered or staged discovery of ESI;

(14) The need for protective orders or confidentiality orders;

(15) Requests for sampling or testing of ESI; and

(16) The need for the retention of an agreed-upon court expert.[2]

The Northern District of California has also put in place eDiscovery Guidelines ("N.D.Cal. Guidelines").[3] The Northern District of California Guidelines include a checklist for lawyers to utilize during their Rule 26(f) meet and confer conference, and a model order about eDiscovery. The intent of the Guidelines was to provide attorneys with tools "to focus them on what's important and head off unnecessary disputes," said U.S. Magistrate Judge Elizabeth Laporte of San Francisco, who chaired the bench-bar

---

ESI. Additionally, at least half of the state court systems have also promulgated eDiscovery rules. *See, e.g.,* Cal. Civ. Proc. Code §§ 2016 to 2036; N.Y. Ct. Rules, § 202.70.

[2]O'Bar v. Lowe's Home Centers, Inc., 2007 WL 1299180 (W.D. N.C. 2007).

[3]Northern District of California Guidelines for the Discovery of Electronically Stored Information, Nov. 27, 2012, available at http://www.cand.uscourts.gov/eDiscoveryGuidelines.

committee that developed the guidelines.[4] The N.D.Cal. Guidelines encourage parties to prioritize and phase their discovery requests and to balance the cost and burden of requests against factors like the amount in controversy, the parties' resources, the issues at stake in the litigation and the importance of the discovery to resolving the case.

The N.D.Cal. Guidelines emphasize cooperation. Under Guideline 1.02, the parties are expressly directed to cooperate "on issues relating to the preservation, collection, search, review and production of ESI."[5] The Guidelines state that an attorney can be cooperative and at the same time zealously represent its client.[6] The Guidelines also stress the importance of exchanging information at the earliest possible stage of discovery, especially during the parties' 26(f) conference.[7]

It is also noteworthy that the N.D.Cal. Guidelines emphasize the importance of proportionality. In keeping with FRCP 26(b)(2)(C) and 26(g)(1)(B)(iii), the parties are told to consider the burden or expense of proposed electronic discovery compared with its likely benefit, its significance to the merits of the case, the parties' resources and other factors.[8] The Guidelines also hold that discovery requests for production of ESI and related responses should be reasonably targeted, clear, and as specific as practicable.

Several other states have issued local rules encouraging the concepts that have been emphasized in the Northern District of California Guidelines, including proportionality and cooperation.

Also of note, the Advisory Committee Notes for the 2015 amendments indicate that courts are permitted to adopt local rules that shorten deadlines with regards to case management activities within the context of Rule 16 and Rule 26(f) matters.

## § 11:4  Coordination between counsel and the client

Outside counsel needs to begin the discussion about discovery

---

[4]Vanessa Blum, Northern District Unveils eDiscovery Guidelines, The Recorder (November 27, 2012).

[5]N.D.Cal. Guidelines, Guideline 1.02. Life Plans, Inc. v. Security Life of Denver Insurance Company, 52 F. Supp. 3d 893 (N.D. Ill. 2014). This case highlights the importance of parties focusing early in the case on the cost of e-discovery, especially in light of decisions reading § 1920 to exclude certain eDiscovery processes from the scope of costs in that section. While the parties had agreed to the format of ESI production and to provide a standard type of load file, they had not agreed to share the cost or use a particular vendor for processing ESI.

[6]N.D.Cal. Guidelines, Guideline 1.02.

[7]N.D.Cal. Guidelines, Guideline 1.02.

[8]N.D.Cal. Guidelines, Guideline 1.03.

with their client at the very outset of the litigation. As soon as practicable, a litigation hold memorandum must be sent to the potentially relevant custodians of documents requesting the preservation of potentially responsive information.[1] Counsel needs to gather information about their client's electronic document systems at this phase, both to ensure that the litigation hold is proper in scope, and also to begin the education process for purposes of the Rule 26(f) conference. As thorough an understanding as possible about the claims and defenses of the lawsuit is critical to this process, as the claims at issue may affect the data sources identified and disclosed at the conference. Since document requests can now be served prior to the meet and confer conference as per the December 2015 revision to Rule 26(d), practitioners must be prepared not only to address their client's data sources, but also to potentially address actual document requests. Because the Rule 26(f) conference contemplates a comprehensive discussion about the entire scope of discovery from soup to nuts, counsel must become educated about the legal and factual underpinnings of the case.

Once counsel understands the parameters of the case, the next step should be co-ordination with the client. In-house counsel usually is the "go to" person for initiating the process of outside counsel's education of the organization of the client and its electronic systems. In-house counsel should also include individuals from the information technology department or their eDiscovery counsel in initial conversations. Depending upon the size, sophistication, and organization of the company, others may also be critical to an in-depth understanding of the company's electronic systems. Potential resources are legal assistants, records management personnel, and "owners" of various databases, including the company's intranet, internet or social media site, voicemail, instant messaging, team rooms or shared databases, and unique financial, marketing, or customer databases. Some companies even have an established eDiscovery team in place, consisting of lawyers, legal assistants, and/or IT personnel who can assist counsel to understand the electronic systems at the company. It is important for companies to understand that effective assistance given to outside counsel at this time can result in an opportunity to define and limit the scope of electronic discovery and to reduce the overall costs associated with this phase of litigation.

---

**[Section 11:4]**

[1]*See* Zubulake v. UBS Warburg LLC, 220 F.R.D. 212 (S.D. N.Y. 2003) (holding that the duty to preserve ESI attaches at the time litigation is reasonably anticipated). *See also* Apple Inc. v. Samsung Electronics Co., Ltd., 888 F. Supp. 2d 976, 997 (N.D. Cal. 2012) (confirming duty to preserve evidence and authority of judges to sanction for failure to preserve).

Counsel should next determine the range of custodians who may have potentially responsive information, both in connection with issuing the litigation hold and preparing for the Rule 26(f) conference. Developing a strong "key" custodians list before the conference is particularly valuable, as preservation efforts may be able to be limited to those custodians or their business units. While a broader retention effort is generally preferable so that claims of spoliation and improper preservation will be less likely to be successful, care should be taken to avoid being so over-inclusive that an undue burden is created for the client. In particular, preservation efforts undertaken on an overly grand scale can expose the client to huge costs before the scope of the case is even defined and may be difficult to implement effectively. Outside counsel must delicately achieve the level of understanding necessary to conduct the Rule 26(f) conference without straining the client's resources. Focusing on the fact that eDiscovery comes in three phases—preservation, collection, and production—may be helpful to avoid overwhelming the client.

There is much that an outside counsel must learn prior to the Rule 26(f) conference. An outside counsel who represents a particular client in multiple matters will have an advantage during this education phase. Additionally, many in-house legal departments, especially those with frequent litigation, will already have spent time putting in place measures to meet their eDiscovery obligations. Some companies will have "data maps," which are detailed summaries of the company's networks, systems, and databases. A data map may also show the document retention schedules of these various systems and the custodians or "owners" of the systems. Companies are well advised to develop data maps before the onset of litigation. Doing so will save time and angst during the early phase of litigation. Certain companies also have begun to standardize hold orders, document collection processes, and approaches for the early discovery process, having various written materials and resources already in place so that outside counsel does not need to begin anew each time a litigation hold is put into place. This approach is also helpful because it builds a level of consistency into the overall discovery process at a particular company. This can help avoid taking inconsistent positions in litigation (e.g., material that was claimed to be "inaccessible" in one case, does not inadvertently become "accessible" in the next case) and also reduces the risk that inconsistent processes can be argued to be lax processes. At times, it may make sense to hire a third-party electronic discovery consultant to assist with deciphering the location, use, and retention capabilities of the client's various systems.

Outside counsel should discuss the potential scope of the preservation and collection effort with the relevant business groups

at the client as well as with in-house counsel and representatives of the information technology group. Outside counsel needs to identify and understand the various systems and their client's perspective on the ease of preserving and collecting the data in order to have a meaningful negotiation with opposing counsel during the Rule 26(f) conference.[2] Counsel should be familiar with what information systems are "reasonably accessible" and which are not. Federal Rule of Civil Procedure 26(b)(2)(B) provides that data that is not reasonably accessible may not need to be produced in the litigation. The concept of reasonable accessibility is tied to cost and burden—if it would be too costly or overly burdensome to retain or collect data, it is possible that the information can be excluded from preservation, collection, and production.[3]

The Rules require that both accessible and inaccessible data sources be disclosed to opposing counsel, so outside counsel should know his or her client's perspective on the accessibility of their various data sources. Companies need to be particularly focused on the need to preserve and/or restore back up or disaster recovery tapes. It is not necessarily the case that all back-up tapes are not reasonably accessible in any situation. Moreover, even if they are inaccessible, they may still need to be restored if the data is not otherwise available and the requesting party shows good cause.[4] Many companies now do not use backup tapes for current disaster recovery but rather they back up copies of their server to tape, which might not be considered to be not reasonably accessible, especially where there are limits to the amount of email data maintained on the active server. Counsel will also want to be familiar with other potential data sources, such as social media, internal chat systems, instant messaging, and voicemail.

Counsel and representatives of the client also need to discuss the limits they will strive to put upon the document preservation and collection effort. In addition to restrictions on the number of custodians and the scope of the information systems, thought should be given to additional methods to limit the potential production. Counsel should consider utilizing date restrictions,

---

[2]News America Marketing In-Store Services, LLC v. Floorgraphics, Inc., 2012 WL 1986493 (D.N.J. 2012) (Court found that defendants failed to meet their obligations under Rule 26(f) by only recently becoming aware of the structure of their computer system—three years after the case was filed and after discovery was closed).

[3]Fed. R. Civ. P. 26(b)(2)(B), Advisory Committee Notes for 2006 Amendments ("But some sources of electronically stored information can be accessed only with substantial burden and cost. In a particular case, these burdens and costs may make the information on such sources not reasonably accessible.").

[4]Fed. R. Civ. P. 26(b)(2)(B).

key word searches, analytics tools such as threading or near-duplication technology, and technology assisted review to reduce the amount of ESI that the producing party would need to review, and produce. Well-reasoned key word searches or technology assisted review may be in the best interests of all the parties, because they will limit the document collection to those most relevant to the issues at hand. In the early stages of litigation, the client will be particularly able to assist counsel with developing a meaningful list of key words and relevant date ranges.

The advent of eDiscovery is a product of changes in society and in the way people communicate. The Federal Rules of Civil Procedure have been designed to cope with the explosion of electronic information. One way the rules attempt to reign in the discovery of ESI is to force counsel to vet the issues at the very early stages of the case. The Rule 26(f) conference is intended to "avoid later difficulties or ease their resolution."[5] To take advantage of the early meet and confer process, counsel must become familiar with the client's electronic data. Moreover, outside counsel should coordinate with the client who in turn must fully cooperate in order to set appropriate limits on the disclosure process. Counsel will then be properly armed to enter into arena of the meet and confer.

## § 11:5    Conduct of the Rule 26(f) conference

The Rule 26(f) conference should be a meaningful negotiation between counsel for the parties. It should be utilized to afford all parties comfort regarding the appropriate scope of the discovery process, including preservation obligations, collection efforts, and production responsibilities. Courts are increasingly insistent that the process of exchanging ESI be a cooperative one.[1] Additionally, as noted above, many local rules being implemented throughout the country require or encourage parties to cooperate with each other in the eDiscovery process.[2]

Indeed, the Sedona Conference, a law and policy think-tank, is-

---

[5]Fed. R. Civ. P. 26(f), Advisory Committee Notes for 2006 Amendments.

**[Section 11:5]**

[1]*See, e.g.,* Sentis Group, Inc., Coral Group, Inc. v. Shell Oil Co, 559 F.3d 888 (8th Cir. 2009) (instructing the parties to act "in a manner consistent with the spirit of cooperation, openness, and candor owed to fellow litigants and the court and called for in modern discovery."); Moore v. Publicis Groupe, 287 F.R.D. 182, 191, (S.D. N.Y. 2012), adopted, 2012 WL 1446534 (S.D. N.Y. 2012) ("Electronic discovery requires cooperation between opposing counsel and transparency in all aspects of preservation and production of ESI.") (quoting William A. Gross Const. Associates, Inc. v. American Mfrs. Mut. Ins. Co., 256 F.R.D. 134 (S.D. N.Y. 2009)).

[2]See § 11:3.

sued a Cooperation Proclamation, which has been endorsed by many judges, including judicial leaders in the eDiscovery case law such as Judges Shira Sheindlin, James Francis, and David Waxse. The purpose of the Cooperation Proclamation is to refocus litigation on the merits of the case and not on eDiscovery issues, as well as to "promote open and forthright information sharing, dialogue (internal and external), training, and the development of practical tools to facilitate cooperative, collaborative, transparent discovery."[3]

Limiting the list of custodians, setting parameters on the date range of discoverable information, and negotiating the universe of systems subject to the discovery process can lend certainty to the types of documents and systems that need to be maintained either historically or under an ongoing litigation hold. As discussed above, there are many topics that can be included in the Rule 26(f) conference. One of the first topics of discussion should be preservation. The Rules do not contemplate that every scrap of ESI needs to be maintained and produced in every case. To the contrary, the Rules expect a rational culling of the documents necessary to the litigation from the full range of ESI in existence.[4]

If the client has initiated a broad litigation hold, counsel will want to be able to release that hold over documents or systems that are not required to be disclosed in the case. Placing sensible parameters on the preservation obligations of the parties is a key component of the meet and confer conference. It gives the requesting party comfort that the documents it requires to prove the case will be in existence and subject to the discovery process. Moreover, establishing preservation boundaries will set the ground rules for the producing party, setting forth the scope of the effort and avoiding later claims of spoliation. Agreement regarding the scope of preservation is also crucial so that the producing party can avoid broad, open-ended requests that may be impossible with which to comply. Setting reasonable limits on the scope of preservation will, therefore, focus the discovery process on the production of documents that need to be exchanged for purposes of the litigation, and avoid the potential that the discovery process will be used for gamesmanship.

The discussion regarding preservation necessarily leads to a

---

[3]The Sedona Conference Cooperation Proclamation, 2008.

[4]"The parties' discussion should pay particular attention to the balance between the competing needs to preserve relevant evidence and to continue routine operations critical to ongoing activities. Complete or broad cessation of a party's routine computer operations could paralyze the party's activities. The parties should take account of these considerations in their discussions, with the goal of agreeing on reasonable preservation steps." Fed. R. Civ. P. 26(f), Advisory Committee Notes for 2006 amendments.

conversation regarding whether various ESI is or is not "reasonably accessible." Producing parties want to obtain certainty over what they need to preserve, collect, and produce for purposes of the ongoing functionality of the company, budgeting, and cost considerations, as well as precedent setting for subsequent litigation. For example, clients will be most pleased if they can return to their regular retention practices with respect to expensive back up tape rotations. The Rule 26(f) conference is an opportunity for the parties to discuss the need for documents that may not be "reasonably accessible," along with their attendant costs and burdens. The preservation, collection, or production of certain ESI may be so burdensome or costly so as to render that information inaccessible for purposes of the Federal Rules of Civil Procedure. Counsel for both parties should discuss the true need for access to that data. Discovery is not intended to be a punitive process and compromises regarding access to "inaccessible" ESI should be thoroughly discussed during the meet and confer. Cost shifting may be discussed in terms of the production of arguably inaccessible data.[5]

Courts have held that inaccessible data that is too costly or burdensome for a party to produce may nevertheless be produced if the requesting party pays the costs of the production.[6] Counsel must be mindful to raise the issue of cost shifting preferably at the 26(f) conference, but definitely well before the deadline for the production of documents.[7]

The December 2015 amendments to the Federal Rules of Civil

---

[5]*See* Fed. R. Civ. P. 26(b)(2)(B), 26(b)(2)(C) and 26(c); *See also, e.g.,* Last Atlantis Capital, LLC v. AGS Specialist Partners, 2011 WL 6097769, *2 (N.D. Ill. 2011) (discussing Sedona Conference Commentary, which suggests that cost-sharing should be addressed at the initial Rule 26(f) conference).

[6]*See, e.g.,* Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 98 S. Ct. 2380, 57 L. Ed. 2d 253, 25 Fed. R. Serv. 2d 541 (1978) ("[Responding party] may invoke the district court's discretion . . . to grant orders protecting him from 'undue burden or expense' . . . including orders conditioning discovery on the requesting party's payment of the costs of discovery."); Boeynaems v. LA Fitness Intern., LLC, 285 F.R.D. 331, 335–36 (E.D. Pa. 2012) (stating that "[t]he rules for discovery, and some case law, have long allowed a trial judge to shift the cost of pretrial discovery . . . . Shifting the cost burdens of discovery, both for ESI and paper discovery, is no longer rare," and holding that defendant could shift costs of production to class-action plaintiff even though class certification was pending); Takeda Pharmaceutical Co. Ltd. v. Teva Pharmaceuticals USA, Inc., 2010 WL 2640492 (D. Del. 2010) (Holding that request for documents relating to patents for a 13-year period was not reasonably accessible and shifting 80% of vendor costs to the requesting party based on the producing party's demonstration that producing such data would be burdensome).

[7]*See, e.g.,* Cason-Merenda v. Detroit Medical Center, 2008 WL 2714239 (E.D. Mich. 2008) (Denying producing party's request for cost shifting on the ground that the request was made after the producing party already had incurred the costs of production in the format demanded.).

Procedure included a revision to Rule 26(c)(1)(B), which specifically allows a court to order to cost shifting when granting a protective order. The revised rule states that, "[t]he court may, for good cause, issue an order . . . specifying terms, including time and place or the allocation of expenses, for the disclosure or discovery."[8]

Counsel may also discuss the issue of sampling the data, which could be instructive as to whether it would be worthwhile to collect the entirety of the data in dispute. A sample may illustrate whether there is relevant information and the volume of that information in the data in question. Sampling may lead the parties to take more informed positions with regards to the value of the production of the data.[9]

Additionally, agreement may be reached upon a protocol for culling the data set using key word searches or some other method. Key word searching can be beneficial to both parties because it will, if done properly, limit the universe of documents that both parties will need to review.[10] Key word searching may turn out to be an iterative process, such that the key words

---

[8]Fed. R. Civ. P. 26(c)(1)(B).

[9]*See, e.g.,* Chen-Oster v. Goldman, Sachs & Co., 285 F.R.D. 294, 304 (S.D. N.Y. 2012) (discussing how samples can be obtained from databases in order to draw inferences about the population as a whole); Cummins, Inc. v. Ace American Ins. Co., 2011 WL 130158, *10 (S.D. Ind. 2011) (ordering sampling of flood insurance claims and related non-privileged dispute resolution documents).

[10]Courts have favored the concept of key word searching. *See, e.g.,* Williams v. Taser Intern., Inc., 2007 WL 1630875 (N.D. Ga. 2007) (where court itself developed a list of key words for electronic document searches); Indeed, some Courts become quite involved in the protocols for searching ESI. *See, e.g.,* William A. Gross Const. Associates, Inc. v. American Mfrs. Mut. Ins. Co., 256 F.R.D. 134 (S.D. N.Y. 2009) (holding "[t]his case is just the latest example of lawyers designing keyword searches in the dark, by the seat of the pants, without adequate (indeed, here, apparently without any) discussion with those who wrote the emails."); Helmert v. Butterball, LLC, 16 Wage & Hour Cas. 2d (BNA) 559, 2010 WL 2179180 (E.D. Ark. 2010) (granting a motion to compel further discovery in part and adjudicating both the matter of search terms and custodians); U.S. v. O'Keefe, 537 F. Supp. 2d 14, 69 Fed. R. Serv. 3d 1598 (D.D.C. 2008) (holding that "[w]hether search terms or 'keywords' will yield the information sought is a complicated question involving the interplay, at least, of the sciences of computer technology, statistics and linguistics. . . . Given this complexity, for lawyers and judges to dare opine that a certain search term or terms would be more likely to produce information than the terms that were used is truly to go where angels fear to tread."); Victor Stanley, Inc. v. Creative Pipe, Inc., 250 F.R.D. 251, 260, 262, 70 Fed. R. Serv. 3d 1052 (D. Md. 2008) (Holding that "[s]election of the appropriate search and information retrieval technique requires careful advance planning by persons qualified to design effective search methodology. The implementation of the methodology selected should be tested for quality assurance; and the party selecting the methodology must be prepared to explain the rationale for the method chosen to the court, demonstrate that it is appropriate for the task, and show that it was properly implemented.").

decided upon by the parties at the conference may only be the initial turn at searching the data. Additional key words may need to be developed at a later stage in the discovery process.[11]

In addition, courts have begun to accept technology or computer-assisted review ("TAR"), also referred to as predictive coding, as another method by which to limit the universe of documents that attorneys need to review during the course of discovery. The technology has been in place for several years, but starting in 2012 courts started approving the use of "predictive coding" technology to search through ESI during the course of discovery.[12]

There are many different forms of TAR that a vendor can apply, but the primary method requires the human review of only a subset of the entire universe of documents. The documents that are initially reviewed are usually referred to as the "seed" set. It is recommended that an attorney that has an in depth understanding of the issues in the case perform this initial review. The TAR software uses the intelligence gained from that initial review to understand the types of documents that are "hot" or "responsive" to the matter. Then, using mathematical algorithms, the software propagates the responsiveness determinations based on what was learned from the seed set review to another small set of documents which that attorney will review. Once the software has gained sufficient intelligence to make the desired relevance or responsiveness determinations across the full data set, the algorithm is perfected and that information can be used to code the entire document population.[13] The producing party and his or her counsel must determine what percentage or groupings of

---

[11]*See, e.g.,* In re Zurn Pex Plumbing Products Liability Litigation, 2009 WL 1606653 (D. Minn. 2009) (requiring the parties to initially run 14 search terms in order to determine the necessity for additional terms); Flying J Inc. v. Pilot Travel Centers LLC, 2009 WL 1834998 (D. Utah 2009) (Requiring the requesting party to identify 28 search terms with written justification for the initial search.).

[12]*See, e.g.,* Moore, 287 F.R.D. at 193 (finding that "computer-assisted review is an available tool and should be seriously considered for use in large-data-volume cases where it may save the producing party (or both parties) significant amounts of legal fees in document review"); *see also* Hinterberger v. Catholic Health System, Inc., 2013 WL 2250603, *1 (W.D. N.Y. 2013) (pointing out that court had encouraged parties to use predictive coding to assist with discovery); Global Aerospace Inc. v. Landow Aviation, 2012 WL 1431215 (Va. Cir. Ct. 2012) (rejecting plaintiffs' objections and issuing an order allowing defendants to use predictive coding to process and produce ESI).

[13]Tania Mabrey, Conquering Post-Indictment Discovery in the Digital Age, 27-SUM Crim. Just. 51 (Summer 2012).

documents will be reviewed manually to comply with their discovery obligations.[14]

Proponents of TAR believe that it saves parties time and money and is often more accurate than manual review.[15] A drawback to this technology is that the intelligence draws from the perspective of only one or two human reviewers—so it is important that the person who has the greatest knowledge of the case details be the one to review the documents required to perfect the algorithm. Also, it is important for the TAR process that the seed set be an accurate representation of the entire universe of custodians and documents. Technology Assisted Review or predictive coding may not replace the use of search terms, but it will increasingly become another tool used by attorneys to limit the universe of documents that are required to be reviewed.[16]

The challenge in using Technology Assisted Review is determining how much information the requesting party is entitled to regarding the set-up of the TAR process. Based upon the early case law, including *Da Silva Moore*, it has been argued that the requesting party should be able to have access to the seed set, which will include responsive and non-responsive documents, however, most parties using TAR are hesitant to provide such information.[17] The case law is not clear on how much transparency is required so if you are contemplating use of predictive coding in a case, it is useful to explore this early on in a matter with opposing counsel, for if there is push-back or over-reaching demands for information about the TAR process, the producing party may decide to use search terms to cull data instead.

The 26(f) conference can also be a good time for parties to discuss how to deal with privileged documents. The issues pertaining to the treatment of privileged materials are central to the eDiscovery process. A good percentage of a review budget can be spent on reviewing electronic documents for privilege.[18] Counsel may discuss whether "quick peak" or "claw back" agree-

---

[14]*See* Moore, 287 F.R.D. at 193 (holding that "counsel must design an appropriate process, including use of available technology, with appropriate quality control testing, to review and produce relevant ESI").

[15]Hayes Hunt and Jillian Thornton, Predicting the Future of Predictive Coding, The Legal Intelligencer, July 3, 2012.

[16]*See, e.g.,* National Day Laborer Organizing Network v. U.S. Immigration and Customs Enforcement Agency, 877 F. Supp. 2d 87, 109–10 (S.D. N.Y. 2012).

[17]In re Biomet M2a Magnum Hip Implant Products Liability Litigation, 2013 WL 6405156, *1 (N.D. Ind. 2013) (Court rejected Plaintiffs' motion to compel the defendant to produce the "seed set" and found that the fact that Plaintiffs had ". . .no right to discover irrelevant or privileged documents seems self-evident.").

[18]*See, e.g.,* Hopson v. Mayor and City Council of Baltimore, 232 F.R.D. 228, 63 Fed. R. Serv. 3d 582 (D. Md. 2005). *See also* Hon. John M. Facciola and

ments would be appropriate in a given case. Such agreements can minimize the time and expense associated with privilege review and if done properly, can avoid claims of the waiver of any privileges.[19]

While it has become much more common to make use of "quick peak" or "claw back" agreements,[20] many companies are still hesitant to regularly embrace such options. Even though these methods are designed to avoid privilege waiver, the reality is that one's opponent will have access to their privileged information and will have read it, even if they are later required to return such privileged material. When a claw back is put in place it is implemented by way of Federal Rule of Evidence 502(d). It is preferable to have the parties' 502(d) agreement "so ordered" by the court. This will give teeth to any agreement between the parties to make use of Federal Rule of Evidence 502.[21]

To the extent privilege logs are used in a case, counsel may also wish to consider, at the 26(f) conference, whether limits can be placed on the type of communications that need to be placed on a privilege log, or whether categories of documents can be grouped together for purposes of the privilege log. For example, communications solely between the client and outside counsel could potentially be grouped and not logged as individual communications, thus saving the producing party time and money in preparing the privilege log. At the conference, counsel can also raise the possibility of putting in place a Confidentiality Order

––––––––––

Jonathan M. Redgrave, Asserting and Challenging Privilege Claims in Modern Litigation: The Facciola-Redgrave Framework, 4 The Federal Courts Law Review 19 (2010) (proposing a novel approach to reduce the costs and burdens of privilege review through eliminating a document-by-document log for most electronically stored information.).

[19]Hopson v. Mayor and City Council of Baltimore, 232 F.R.D. 228, 63 Fed. R. Serv. 3d 582 (D. Md. 2005); Adair v. EQT Production Co., 2012 WL 2526982 (W.D. Va. 2012).

[20]See, e.g., Chevron Corp. v. The Weinberg Group, Misc. Action No. 11-409, *1 n.1 (D.D.C. Oct. 26, 2012) (court entered a Rule 502(d) order allowing defendant to knowingly produce privileged materials without waiving any privileges); Rajala v. McGuire Woods, LLP, 90 Fed. R. Evid. Serv. 393, 2013 WL 50200, *5 (D. Kan. 2013) (court held that inadvertently produced document did not waive privilege and could be taken back by the producing party (clawed back) because Court had entered Rule 502(d) order before disclosure); In Brookfield Asset Management, Inc. v. AIG Financial Products Corp., 2013 WL 142503, *1 (S.D. N.Y. 2013) (court held that Rule 502(d) order issued by Court before defendant's production of privileged documents gave defendant the right to claw back those documents "no matter what the circumstances giving rise to their production were").

[21]Fed. R. Evid. 502(d) provides that a Federal Court can order that the attorney-client privilege or work product protection is not waived by disclosure of the producing party in the case before the Court and is not a waiver in any other federal or state proceeding.

providing for the protection of the production of confidential materials. The Confidentiality Order, which should be entered by the Court, should address whether access to the production or subsets of proprietary or sensitive documents should be limited and may provide for multiple tiers of confidentiality, such as "attorneys' eyes only."

Other essential elements of the Rule 26(f) conference include discussions relating to the format for the production of documents and the method of redaction. Counsel should determine what form of production is appropriate in the case. The production format of unique documents, such as spreadsheets or drawings, may need to be specially discussed and provided for in the Rule 26(f) conference.[22] In certain circumstances, a hybrid approach to production format may be most optimal, such as tiff images for documents that originated in paper format, a layered tiff production for e-mail and word documents and a native production for spreadsheets and drawings.

Counsel should also be prepared to raise any need to obtain ESI from a non-party to the litigation at the Rule 26(f) conference.[23] FRCP Rule 45, governing the use of subpoenas to compel production by non-parties, does not require the requesting party to meet and confer with the non-party before issuing a subpoena or submitting a motion to compel to the court. However, some local rules, or even judges' personal rules, may require a meeting.[24] If a party does meet and confer with a non-party, counsel should be prepared to discuss many of the same issues as at a Rule 26(f) conference, particularly the scope of discovery, the timing and form of production, ways to reduce the burden of discovery on the non-party (such as the use of TAR), and any cost shifting proposals.

After a 26(f) conference, the parties will need to report to the court regarding the progress made and open issues left for the court to resolve prior to the Rule 16(b) scheduling conference. Counsel who has not been able to satisfactorily settle open

---

[22]E.E.O.C. v. SVT, LLC, 2014 WL 1411775, *6–8 (N.D. Ind. 2014), subsequent determination, 2014 WL 2177796 (N.D. Ind. 2014) (Court ordered parties to have an in-person meet and confer to discuss production specifications and ordered that defendants produce Excel spreadsheets in native format).

[23]*See* DeGeer v. Gillis, 755 F. Supp. 2d 909, 918–19 (N.D. Ill. 2010) (court held that when parties knew that a non-party was in exclusive possession of documents directly relevant to the claims, affirmative defenses, and counterclaims in the case, the acquisition of ESI from that non-party should have been addressed at the Rule 26(f) conference).

[24]*See, e.g.*, The Sedona Conference, Commentary on Non-Party Production & Rule 45 Subpoenas (endorsing a meeting between the party issuing a Rule 45 subpoena and the non-party recipient as a best practice, even where not required).

eDiscovery issues and who believes that their position is reasonable, should bring these issues to the court's attention during this planning conference. This is the time to settle the scope of the discovery process so that limits can be placed on the preservation, collection, and production responsibilities of the parties if required. Judges have varying levels of sophistication with respect to issues pertaining to ESI. It has become common for magistrate judges to handle issues and disagreements relating to ESI. In addition, special masters are increasingly being assigned to handle ESI-related disputes.[25]

## § 11:6    Strategic implications of the meet and confer obligations

Lawyers can turn any event into a strategic opportunity, and the Rule 26(f) conference is no exception. Requesting parties who have unequal ESI production responsibilities can attempt to turn the eDiscovery process into an opportunity to paint their adversary in a bad light well before the merits of the case are ever presented to the court. The requesting party may make claims of bad faith, failure to preserve, spoliation, and inadequate electronic document production all for the purpose of gaining the upper hand before the court. The merits of the controversy are not discussed at this point in the case—indeed they are irrelevant to the producing party's alleged discovery abuses. The producing party is forced, whether justifiably or not, into a defensive posture before the judge, explaining the actual propriety of their actions in discovery. One way to avoid this scenario is to fully discuss issues pertaining to the discovery of electronic information at the Rule 26(f) conference. Hopefully, the parties will be able to negotiate a clear discovery plan that will protect the producing party from claims of improper conduct. Otherwise, the parties can jointly ask the court for guidance during the Rule 16(b) pretrial conference before the court. At that time, both parties appear on equal footing to ask the judge to set the proper parameters for electronic discovery.

The Rule 26(f) conference, therefore, is a strategic opportunity to negotiate an acceptable discovery plan. Counsel who is prepared to discuss the full gamut of eDiscovery issues is in a favorable position to place parameters on the discovery process and to avoid claims of spoliation or improper conduct later on in the litigation. Both sides should actually be inclined to engage in rational discussion, because the alternative is to appear before the court. Therefore, well informed counsel can obtain certain

---

[25]Bay, A Growing Trend: Use of eDiscovery 'Special Masters', Law Technology News, November 23, 2011.

concessions from the requesting party to limit the scope of the discovery of ESI.

In order to take advantage of the negotiation process, however, counsel must come well prepared to engage in meaningful discussion with counsel for the opposing party. Nevertheless, counsel is a lawyer and not a technical expert on the client's data or on computer systems generally. Does counsel need to bring a representative of the client or a third-party forensic or eDiscovery expert to the conference? The answer, of course, is one of strategy. The Rule 26(f) conference is like any other negotiation with opposing counsel. The nuances, timing, and tactics employed will be dependent upon the best judgment of lead counsel. Regardless of one's position at a 26(f) conference, it is crucial that a party come fully prepared to discuss the issues pertaining to ESI in that case. If counsel requires outside help to be able to reach definitive compromises during the Rule 26(f) conference, then counsel should surely bring those who might be indispensable to the process.

The single most important component of the entire eDiscovery process is preservation at the earliest stages of the litigation. The default should be that potentially relevant ESI should be preserved until either a compromise is negotiated between the parties prior to or during the Rule 26(f) conference or the court has issued an order with respect to the scope of electronic discovery. The producing party may also request the court's intervention prior to any of these conferences if a particular preservation issue results in an emergency situation. Parties who fail to preserve and then enter into the Rule 26(f) conference to discuss the parameters of discovery will necessarily be negotiating from a position of weakness. It is not persuasive to argue why ESI should not be produced when the ESI no longer exists. Furthermore, if negotiation fails and the ESI exists, the producing party will be before the court arguing from a position of strength. The argument that the information has been preserved, but the restoration, collection, and production of the data are unreasonably expensive, unduly burdensome, or irrelevant may be persuasive. If the ESI at issue no longer exists, the discussion before the court will likely turn to issues of spoliation and sanctions, and the potential for argument regarding the merits of the need for the information will be lost. Therefore, preservation is truly the cornerstone of the eDiscovery process.

The 26(f) conference has definitely grown in importance over the years and, based upon rules amendments and local rules, has become a central part of the discovery process in most courts. Parties must come prepared with regard to what they need and want from their adversary and with knowledge of their own systems. Since these discussions may end up being the basis of a

report to the court, counsel should cooperate and be reasonable in the positions that they assert. While lawyers who insist upon too little may appear to be hiding information, well prepared counsel will be able to negotiate a fair resolution of the issues pertaining to ESI and utilize the process of the Rule 26(f) conference to their best advantage.

# APPENDIX 11A

# Rule 26(f) Conference Checklist

### Prior to litigation

☐ **Plan early.** Parties must meet and confer within 90 days of filing a complaint or 69 days after the first responsive pleading, whichever comes first. Rule 26(f).

☐ **Review client's document retention policy.** Has the company implemented a formal Document Retention Policy to formalize rules for saving and destroying documents and e-mails? This policy should include electronic information. Also, employees should understand the purpose of the policy and the importance of compliance.

☐ **Determine what is accessible and inaccessible data.** It is wise to prepare a document that lists what electronically stored information (ESI) is reasonably accessible and reasonably inaccessible (based on undue burden or cost). Rule 26(b)(2).

☐ **Prepare and send litigation hold notices.** Company must prepare for interruption of day-to-day business in order to identify and preserve electronic information at issue in a specific litigation. Litigation hold notices should be sent to key witnesses and custodians and have a list of specific types of ESI to be preserved.

☐ **Beyond the hold.** Counsel no longer has the right to rely on the client to comply with proper instructions and advice. Counsel must reiterate the hold instructions on a regular basis and actively monitor the instructions. When needed, corrective action must be taken to ensure continued compliance.

☐ **Determine if data has been lost or destroyed.** Company must identify if data that may have been lost or destroyed during a litigation hold was due to routine operation of computer systems. This applies to destruction that occurs despite your "good faith efforts." Rule 37(e) protects you as long as your company took the necessary steps to implement a strategic approach to responding to preservation holds and discovery requests.

### To prepare for the meet & confer

☐ **Determine the size, scope, and timeframe of**

419

**collection.** Understand the size and scope of your ESI by determining the date range that is applicable and the custodians relevant to your case. Interview the document custodians to obtain this information and to inform them about their preservation obligations.

☐ **Determine the best method for collection.** Determine the need for an outside discovery consultant.

☐ **Estimate duplicates.** Estimate how many duplicates are in the collection and how best to deduplicate the collection.

☐ **Determine review timeframes and resources.** Determine what is needed to complete the relevancy and privilege reviews. Determine if redactions will be necessary and the best methods to redact.

☐ **Assess the best production method.** Determine how you want to receive your production and how you want to produce.

☐ **Determine if there is any spoliation or lost data.** Also, determine how best to defend such gaps at the meet and confer.

☐ **Determine whether you will request cost-shifting.** Also, consider how to best defend a cost-shifting request from opposing counsel.

☐ **Determine whether you will request a preservation order.** Also, decide how to best defend against a request from opposing counsel for a preservation order.

☐ **Decide who should attend the meeting.** Do you want an IT representative to attend and/or an outside eDiscovery vendor to attend? Decide on a 30 (b)(6) witness who will be able to testify about network configuration and document retention plan.

### At the meet & confer

☐ **Agree on scope.** Data custodians, key witnesses, geographic scope, and temporal scope.

☐ **Agree on preservation and/or production of unreasonably accessible data.**

☐ **Agree on handling of duplicates.**

☐ **Agree on handling masters and attachments.**

☐ **Agree on keyword search terms or use of predictive coding.**

☐ **Agree on the form of production.** Native, image only, image and text, paper, direct access, shared database repository, metadata.

☐ **Agree on Bates schema and other markings.**

☐ **Agree on cost-shifting.**

☐ **Agree on production priorities.**

☐ **Agree on how to handle Privacy Act data, confidential and secret data and business sensitive data.**

☐ **Determine if a Clawback Agreement/ 502(d) order is necessary.**

☐ **Determine if a Quick Peek Agreement is necessary.**

### After the meet & confer

☐ **Reissue the litigation hold** if necessary to update information or remind custodians.

☐ **Audit the litigation hold** to ensure compliance.

☐ **Test** keyword searches.

☐ **Document** all litigation hold efforts.