# EXHIBIT 12



**HOUSTON**
The Lanier Law Firm, PC
10940 W. Sam Houston Pkwy N.
Suite 100
Houston, TX 77064
713.659.5200
Fax 713.659.2204

**NEW YORK**
The Lanier Law Firm, PLLC
535 Madison Ave.
12th Floor
New York, NY 10022
212.421.2800
Fax 212.253.4094

**LOS ANGELES**
The Lanier Law Firm, PC
2829 Townsgate Rd.
Suite 100
Westlake Village, CA 91361
310.277.5100
Fax 310.277.5103

September 18, 2024

*Via Email*

Robert J. McCallum
FRESHFIELDS BRUCKHAUS DERINGER US LLP
3 World Trade Center
175 Greenwich Street
New York, NY 10007
Rob.McCallum@freshfields.com

Re:   *The State of Texas et al. v. Google LLC*, Cause No. 4:20-cv-00957-SDJ

Counsel,

This letter is an individual and joint response by the Plaintiff States in this action to your letter dated September 5, 2024.

At the outset, the Plaintiff States, as state enforcers, were surprised to receive three to eleven new interrogatory requests, depending on how you count the discrete parts, in an informal letter format several months after the close of fact discovery.

As you are aware, *Google's conduct* is what is at issue in this lawsuit, not that of the Plaintiff States. Google is the best source of information regarding its monopoly of certain markets, not the Plaintiff States. During the course of discovery, the Plaintiff States went above and beyond what is required by the rules to provide exhaustive information to Google. The record is replete with example after example of these state enforcers thoroughly answering Google's questions during meet and confers, and through correspondence, discovery responses, and even putting up for deposition corporate representatives to testify on discovery-on-discovery topics noticed by Google.

The Plaintiff States' discovery responses and testimony were even broader than necessary given that no state is seeking damages. Plaintiff States are only seeking penalties through the States' DTPA statutes; thus, Plaintiff States or their agencies' expenditures on Ad Tech products are irrelevant even under the broad relevant and responsive standard of the Eastern District of Texas.

In fact, these new interrogatories track closely with the information sought by Google back in March and April of 2024 from Google's Rule 30(b)(6) depositions topics served on the Plaintiff States and which every Plaintiff prepared for and presented a corporate representative for deposition.

For example, Topic 1 of Google's Schedule B Topic Notice asked for a corporate representative to be prepared to discuss, "Your retention, preservation, collection, review, and production of documents and data related to the Investigation and this Action, including in response to Google's discovery requests in this Action."

Further, Topic 3 of Google's Schedule B Topic Notice asked for a corporate representative to be prepared to discuss, "Your document preservation related to the Investigation and this Action, including any relevant document retention policies and ***whether and when You implemented a litigation hold***" (emphasis added).

Your first interrogatory in your September 5, 2024 letter asks each State to "[c]onfirm ***whether the State Plaintiff issued a litigation hold*** in connection with the pre-suit investigation and/or the litigation" (emphasis added).

Google cannot claim some new basis for not pursuing this line of questioning when it had a corporate representative of each Plaintiff State, under oath, who could have provided sworn answers. Clearly, based on the topics it articulated in the 30(b)(6) deposition notices and the actual questions asked during the depositions, Google anticipated asking not only litigation hold questions but also chat questions.[1] The failure of Google to pursue this line of questioning during depositions and waiting months until after fact discovery closed to obtain the same information is not a basis for the States to voluntarily provide sworn answers to new interrogatories now. Google had plenty of time to follow up with the States during the discovery period on issues and responses to letters and discovery meet and confers.

The six example States cited by Google as the basis for a wholesale re-opening of discovery on all 16 Plaintiff States fails as well. Conclusory statements that certain states have "not produced a single chat message" or that the "practices have resulted in the destruction of relevant documents" are not based in fact when there is no evidence of relevant documents

---

[1] Searches performed on the deposition testimony transcripts of the States: Alaska: "hold" but not "chat"; Arkansas: none; Florida: "retention" but not "hold" or "chat"; Idaho: "hold" but not "chat"; Indiana: "hold" but not "chat"; Kentucky: "retention" but not "hold" or "chat"; Louisiana: "hold" but not "chat"; Mississippi: "retention" but not "hold" or "chat"; Missouri: "retention" and "chat" but not "hold"; Montana: none; Nevada: "retention" and "hold" but not "chat"; North Dakota: "retention," "hold," and "chat"; Puerto Rico: "retention" and "hold" but not "chat"; South Carolina: "retention" but not "hold" or "chat"; South Dakota: "retention" but not "hold" or "chat"; Texas: "retention" but not "hold" or chat"; Utah: "retention" and "hold" but not "chat."

Page 2

being destroyed, and, moreover, many States do not even use chats or only use chats for non-substantive matters.[2]

The following are State-specific statements in response to your letter:

**Alaska**

1.  Yes, Alaska issued a litigation hold on May 31, 2023 that dates back to May 1, 2018. In addition, Alaska's Executive Branch document retention policies require archiving all documents typically for anywhere between 3 and 7 years (there are variations in specific situations). Any documents accumulated in an investigation or for litigation must be kept for at least 5 years after the formal close of the investigation or litigation. The Attorney General's Office is subject to much longer retention schedules for various materials relevant to investigations or litigation. The State's record retention schedules and policies can be found here:

https://archives.alaska.gov/documents/rims/schedules/200-2.pdf

https://archives.alaska.gov/documents/rims/schedules/100-3.pdf

https://archives.alaska.gov/documents/rims/schedules/law/03-82-1.pdf

2.  a. May 31, 2023 dating back to May 1, 2018

b. The Hold applies to Executive branch agencies' emails, Microsoft Teams Chats, and attachments. In addition, The State has had a policy of not deleting any emails, Chats, or attachments starting in July of 2017, regardless of shorter retention schedules.

c.  Executive branch emails, Microsoft Teams Chats, and attachments are covered by the hold.

d.  The State uses Microsoft Teams Chat as its instant messenger. All Teams Chats are automatically preserved since July 2017. Prior to that, the Chat messages were preserved according to individual agency retention policies.

e.  The State has not used an auto-deletion function for Teams Chats, or emails, since July 2017. And prior to that date, Chats and emails would only have been deleted pursuant to the records retentions policies of individual agencies.

3.  Not applicable.

---

[2] *See* individual State responses below.

Page 3

### Arkansas

In 2013, when the Office of the Arkansas Attorney General ("Arkansas") began its use of Ad Tech products, it was not contemplating litigation against Google in relation to anticompetitive conduct in the Ad Tech market. On the contrary, Arkansas did not contemplate this action until 2019. Arkansas had no obligation to preserve documents in anticipation of litigation until 2019, and any documents that were not retained prior to that time cannot possibly be considered an act of spoliation, as Arkansas had no reason at that time to believe that the documents would be necessary to a litigation that was not yet contemplated by the state.

The State of Arkansas did not issue a written litigation hold when it began contemplation of this matter because all documents created or obtained in the course of its investigations are done so in anticipation of litigation. There is no reason to issue an office-wide litigation hold notice when the only custodians are the case's attorneys, who are already on notice of their retention obligations.

As Arkansas has repeatedly emphasized, the state's claims are not based in the state's use of Ad Tech. Because of this, Arkansas did not discuss a litigation hold with the custodian of the records relating to the state's use of Ad Tech, as there was no reason to believe those records would be relevant to the anticipated litigation. When it became apparent that Google believed the records to be relevant, counsel for Arkansas contacted the custodian of the records relating to the state's use of Ad Tech and instructed the custodian to retain all such records.

As stated in Arkansas's Supplemental Responses to Google LLC's First Set of Requests for Production in response to Request No. 12, the Office of the Attorney General of the State of Arkansas does not, nor has it during the Relevant Period, have a document retention policy.

### Florida

The Florida Office of the Attorney General affirms that all potentially relevant documents were preserved in connection with this enforcement action. As part of its initial investigation, the Office confirmed that it had never used Ad Tech products. The Office verified that the only potentially relevant documents or information in its possession, custody, or control would be contained in the Consumer Complaint Database. The Office does not dispose of records from this database (*see*, *e.g.*, FL-OAG-000000014, a complaint from 2013); therefore, a separate litigation hold was unnecessary to preserve all potentially relevant information. As for ephemeral messages, the Office's retention schedule operates based on the content and purpose of the record, not the format or technology used. The Office has already described its compliance with its discovery obligations with counsel for Google in

detail, both in meet-and-confer and in writing. The Office subsequently made a representative available for testimony, under oath, on the very topics addressed in the letter. At no point in the six months following the Office's disclosure of its discovery process has counsel for Google communicated a specific perceived deficiency in the Office's document production—including any dissatisfaction with the Office's conclusion that any and all potentially relevant documents would be contained in the database.

**Idaho**

Google's belated interrogatories are not appropriately directed at the Idaho Attorney General (IDAG), as explained below:

On May 30, 2023, the IDAG made its first production to Google.

On February 26, 2024, the IDAG sent a letter to Google responding to discovery-related questions that Google's counsel had asked of all the states. In the letter, the IDAG explained how the IDAG had conducted its search, who were the custodians, and from where were the documents collected.

On April 10, 2024, the IDAG made its second production. This second production consisted of complaints responsive to Google's RFPs 4 and 8 that were received after the IDAG's first production on May 30, 2023, documents concerning such complaints, and other documents concerning complaints that were produced in the May 30, 2023 production.

Following these productions and explanations, Google has never contacted the IDAG to follow up about the productions, to contest that the productions were deficient, to follow up about the discovery and production explanations, to contest that the explanations were deficient, or to meet and confer with the IDAG with respect to the productions or the discovery and production explanations. Google also has never challenged that the IDAG's productions are deficient or that there are some documents or categories of documents that are or were in the possession, custody, and control of the IDAG that should have been produced but were not or that were somehow destroyed because of a supposedly insufficient litigation hold. Google has never even attempted to meet and confer with the IDAG about any of this.

Further, the IDAG already answered Google's litigation hold questions in a 30(b)(6) deposition. During the 30(b)(6) deposition, the witness was asked about a litigation hold. Transcript 153:2-4 ("Do you know whether Idaho sent a document hold notice to the Consumer Protection Division?"). The witness answered the questions, and the Google lawyer moved on to the next topic. Transcript 153:2-154:7. (*See* IDAG 30(b)(6) May 3, 2024 deposition transcript). Neither during nor after the deposition did Google contest that the answers were deficient, followed up with the IDAG, or attempted to meet and confer with the IDAG regarding whether Google needed more information about the litigation hold described

Page 5

in the deposition or that there are some documents that are somehow missing from the IDAG's productions because of a supposedly insufficient litigation hold.

Therefore, the IDAG should not have to further answer the belated "litigation hold" interrogatories in Mr. McCallum's September 5, 2024 letter.

Finally, the Consumer Protection Division of the IDAG does not use a "chat" app for business purposes, including for this case.

### Indiana

INOAG has previously produced its document retention policies governing the limited set of documents not stored in email mailboxes (*e.g.*, consumer complaint files). As explained in previous correspondence, including its May 9, 2024, letter to Google, the INOAG's ordinary course retention practices for email communications are such that it maintains access to emails through a central system without need for any litigation hold. Emails are not subject to any routine destruction, and individual custodians do not have the ability to delete files from the central system. As such, no litigation hold is necessary to preserve all emails indefinitely.

The other categories of documents in the possession of the INOAG Unclaimed Property Division that are referenced in counsel's letter of September 5, 2024, are communicated to INOAG, or within INOAG, by email and are thus similarly preserved. With regards to any potential documents dated prior to 2019, the INOAG previously disclosed its search methodology in a February 23, 2024, letter and disclosed the additional custodians that it identified for the relevant time period after undertaking reasonable and proportionate efforts to inquire about the previous practices of the INOAG during a previous administration of the INOAG. It disclosed this search methodology and communicated its willingness to meet and confer. Google never engaged INOAG on the issue of any potential deficiency in the custodians identified.

### Kentucky

Kentucky did not issue a litigation hold in connection with the pre-suit investigation or litigation because Kentucky's several layers of Document Retention Policies would preserve all responsive documents. Specifically, the Kentucky Office of the Attorney General's Records Retention Schedule requires all documents related to an attorneys' litigating file—including materials such as "correspondence," "attorney work product," and "evidence"—to be retained for a total of 8 years after "case closure." The Kentucky Office of the Attorney General's Record Retention Schedule further requires employees to retain similar documents, like "investigators notes" and "correspondence," for a total of 5 years after "case closure." Antitrust specific policies from the same policy instructs that the same

materials are to be *permanently* retained by the Commonwealth. Concerning other correspondence unrelated to official business, the generally applicable Kentucky State Government Records Retention Schedule provides that such "nonbusiness related correspondence" should not be retained.

### Louisiana

Louisiana has provided much of the requested information in prior communications and letters. In addition, Louisiana AG's office provided a Rule 30(b)(6) corporate representative, Patrick M. Voelker, to answer these discovery questions during his deposition on May 3, 2024. Louisiana AG's office is unaware of any communications related to Ad Tech or this litigation occurring via chats.

### Mississippi

The letter does not appear to be directed to Mississippi, but Mississippi is submitting this response in an effort of good faith. Fact discovery in the Google AdTech litigation has completed and Mississippi has fully complied with Google's discovery requests. The MS AGO 30(b)(6) deposition was taken on April 25, 2024, with sworn testimony provided by the deponent, Crystal Utley Secoy. Please refer to the deposition testimony, as well as Exhibit 6 to the deposition, which contains communications with the Mississippi AGO and legal counsel for Google.

### Missouri

We believe this seems to be an attempt to essentially obtain written interrogatory responses or Rule 30(b)(6) testimony after discovery. Indeed, much of this was, in fact, discussed in Missouri's Rule 30(b)(6) deposition. The Missouri Attorney General's Office did not issue litigation hold letters in connection with pre-suit investigation or litigation. Our mandated records retention schedules, to which Google was directed in our deposition, adequately cover the needs in this case. These schedules are all available online at https://www.sos.mo.gov/records/recmgmt/retention/general. As indicated in those schedules, the Attorney General's legal files (including the accompanying investigation file) are retained for 50 years before being archived. Google's main concern here seems to be instant messaging systems. Our Office does not use an instant messaging system like WhatsApp.

### Montana

In response to your September 5, 2024 letter, the State of Montana represents the following with respect to the issuance of pre-suit investigation and/or litigation hold: Montana did not issue a pre-suit investigation and/or litigation hold. Montana's Office

Page 7

of Consumer Protection ("OCP") has a practice of not deleting business related email and therefore a specific litigation hold memo was not necessary. In addition, as this is an active case, OCP would not delete documents related to this matter. OCP uses Microsoft Teams, which includes a chat capability. OCP does not delete Teams messages.

Montana's document retention schedules have been provided in discovery. *See e,g.* PLTFF_MT_00637; PLTFF_MT_00609. As the schedule notes, Montana OAG's files are retained for either 5 or 10 years. Montana's General Record Retention Schedule 3, PLTFF_MT_00637, sets forth additional requirements for certain types of criminal records.

**Nevada**

As reflected in the transcript from Nevada AG's Rule 30(b)(6) deposition testimony, we did not issue any litigation holds because it was not apparent that any public-facing Nevada state agency websites contained advertising purchased via the Ad Tech products at issue in this case. The function of the Nevada Attorney General's website and many other state agency websites is to inform the public on various issues rather than advertise. However, after discovering there were some responsive agencies, we worked diligently with them to produce 45,337 documents, and Google deposed representatives from two of those agencies. The State's retention policy, provided to defense counsel, does not include any chat-specific, or messaging-app specific, requirements.

**North Dakota**

North Dakota issued a litigation hold on February 25, 2021, directed to all attorneys in the North Dakota Office of Attorney General and the front office. The litigation hold covered any documents or electronic information, in our possession, custody, or control, that relate to Google, its business practices, its conduct as alleged in the antitrust litigation against Google, or the investigation of Google's anticompetitive conduct, including documents obtained from or identifying communications with third parties. We later followed up with further details to staff that were identified as having potentially responsive documents.

Employees of the North Dakota Office of Attorney General were generally given Microsoft Teams Chat access in March of 2020. As pointed out by Google, in September of 2020 the North Dakota State IT Department implemented the one-year retention of Teams Chat messages. *See* NDAG-ADTECH-000008805.

North Dakota did not suspend the auto-deletion of Teams Chat messages because it was determined not necessary to preserve any potentially relevant documents. The custodians identified as having potentially relevant records in this matter do not use Teams Chat for official matters and in a way that would create a record responsive to Google's discovery

requests. Largely, Teams Chat is used for internal office communications regarding matters relating to staff matters, work assignments, and schedules.

### Puerto Rico

Puerto Rico's document retention practices were in, addition to being a topic of Google's Rule 30(b)(6) deposition of Puerto Rico, described in prior correspondence from counsel on at least four previous occasions (letters dated March 5, April 12, and April 24 as well as an email dated May 15). That said, and as concerns Puerto Rico, the answer to the latest iteration of these questions posed for a fifth time in your September 5, 2024 letter is as follows:

1. Puerto Rico did not issue a litigation hold because the PRDOJ keeps all e-mails and electronic files for 10 years and otherwise has no written policies regarding 1) the issuance of separate per-matter litigation holds or 2) document preservation. As we've stated previously, those matters are handled by the PRDOJ's Head of IT and Administrator of Records.
2. The PRDOJ has no ordinary course retention period for WhatsApp messages because there is no policy permitting the use of WhatsApp to conduct official government business within the PRDOJ. The PRDOJ does not own or otherwise pay for its employees' cell phones and as such any messages sent by individuals on their personal devices are not within the possession, custody, or control of the PRDOJ.
3. Puerto Rico has described its ordinary course retention periods for other documents multiple times, including during deposition, and declines to do so again beyond the information provided above.

Additionally, Google's characterization that Puerto Rico "conducted ad tech campaign business via WhatsApp" is specious. The document referenced in your letter is an internal email between two PRDOJ employees discussing an attachment to an email that one had trouble opening. The other offered to send her the file via WhatsApp, but there is no evidence of that actually happening. Then the individual having issues opening the attachment stated that she would seek help from IT. This exchange a) does not actually indicate that WhatsApp was ever used, and b) is entirely consistent with the fact that the PRDOJ does not subsidize or otherwise control employees' personal cell phones or otherwise have a policy permitting their use for official business.

### South Carolina

The absence of instant messages from South Carolina (SCOAG)'s productions does not stem from any preservation issues. Rather, SCOAG negotiated with Google about its search methodology to respond to Google's RFPs, and instant messages were not an agreed

Page 9

upon data source. *See* Correspondence between SCOAG and Google dated May 11, 2023, May 19, 2023, May 23, 2023, May 24, 2023, and June 6, 2023. It is an inappropriate time for Google to raise any issues now after the close of fact discovery. Moreover, per office policy, SCOAG staff did not send any instant messages about the Google Ad Tech case. *See* South Carolina Attorney General Office Manual § 4, p. 9 (providing that instant messages should be used for "informal communication on non-substantive matters" (emphasis added)).

### South Dakota

Litigation Hold. The file was initially assigned to Yvette Lafrentz. The case was reassigned to Jonathan Van Patten in February 2023, shortly after Ms. Lafrentz left this office to take another position. As far as it is known, no litigation hold was ever issued in this case. We have relied instead on our longstanding document retention policy, a written copy of which was produced at the Rule 30(b)(6) deposition earlier this year. In response to the Request for Production of Documents, none were produced as there was no ad business purchased from Google by the AG's office.

Chat communications. The Ad Tech file has had only one lawyer at a time working on it. There are no "chat" communications related to this matter.

### Utah

As we have told you before, the Utah Office of the Attorney General has not made digital ad agency purchases, and the statement in your letter to the contrary is incorrect. However, as also previously explained, the Utah Department of Commerce, Division of Consumer Protection ("DCP"), which is a separate agency from the Utah Office of the Attorney General, has made ad agency purchases. DCP does not agree that further discovery is due currently as fact discovery has closed. However, in a show of good faith, DCP searched it records and interviewed staff, determining that there may be a limited number of chats that may be peripheral to this dispute. DCP will be producing existing chat messages for employees who assisted with purchasing digital advertising within the next 30-60 days.

In closing, counsel is not aware of any meet and confer that has occurred on this new request for interrogatories. Your indication that "[i]f any State Plaintiff does not provide the requested confirmation by September 12, 2024, then Google intends to raise the issue with the Special Master," short-circuits EDTX Local Rule CV-7(h).[3] If Google is not satisfied with the thorough responses provided here, we ask that you respond on a State-by-State basis for each State you contend an issue still remains so that we can coordinate individual meet and

---

[3] "For opposed motions, correspondence, e-mails, and facsimile transmissions do not constitute compliance with the substantive component and are not evidence of good faith."

Page 10

confers to reach as much agreement as possible in the spirit of cooperation and compliance with the local rules.

Regards,

*Jonathan P. Wilkerson*

Jonathan P. Wilkerson

Page 11