# EXHIBIT 29



**HOUSTON**
The Lanier Law Firm, PC
10940 W. Sam Houston Pkwy N.
Suite 100
Houston, TX 77064
713.659.5200
Fax 713.659.2204

**NEW YORK**
The Lanier Law Firm, PLLC
535 Madison Ave.
12th Floor
New York, NY 10022
212.421.2800
Fax 212.253.4094

**LOS ANGELES**
The Lanier Law Firm, PC
2829 Townsgate Rd.
Suite 100
Westlake Village, CA 91361
310.277.5100
Fax 310.277.5103

October 21, 2024

*Via Email*

Robert J. McCallum
FRESHFIELDS BRUCKHAUS DERINGER US LLP
3 World Trade Center
175 Greenwich Street
New York, NY 10007
Rob.McCallum@freshfields.com

Re:   *The State of Texas et al. v. Google LLC*, Cause No. 4:20-cv-00957-SDJ

Counsel,

This letter is an individual and joint response by the Plaintiff States in this action to your letter dated September 27, 2024.

At the outset, the Plaintiff States disagree with your contention that there were any "deficiencies" in their retention efforts and reject your accusation that Plaintiff States have "destroyed documents relevant to this case." To the contrary, the Plaintiff States have preserved documents appropriately in compliance with the Rules and the Court's orders.

As you well know, Google spent years negotiating discovery with the States. Any alleged "surprise" or discovery of litigation hold dates "in the final weeks of fact discovery" or "after" the fact discovery deadline is due to Google's negligence. Google had ample opportunity to raise any concerns about retention practices over the course of the lawsuit well in advance of fact discovery closing. Google chose not to do so. Indeed, Google chose not to even ask the majority of the Plaintiff States' Rule 30(b)(6) deponents the most basic of questions concerning litigation holds and retention policies. Moreover, as explained on multiple occasions—unlike Google's failure to properly hold and retain documents and chats—the Plaintiff States' policies preserved relevant and non-relevant case information under the Plaintiff States' permanent retention policies. Google's continued efforts of comparing apples to oranges is ill fated.

To address Google's concerns regarding the Plaintiff States' responses to the Offices of the Attorneys General, Plaintiff States present some of the requested authorities. Importantly, many of these authorities touch on Google's faulty arguments concerning custody, possession, or control of State Attorneys General Offices over State Agencies.

For example, the "State of Texas" is comprised of three distinct branches of government and the hundreds of governmental agencies and thousands of employees and contractors therein. *See* TEX. CONST. ART. 2 § 1 (separation of powers). To put it bluntly, the Legislative Department writes the laws, the Executive Department (including the Office of the Attorney General ("OAG")) enforces the laws, and the Judicial Department interprets the laws. *See* Tex. Const. Art. 3 (Legislative Department); Art. 4 (Executive Department); Art. 5 (Judicial Department). In light of this divergent grant of powers, wherein the Executive Department has no authority over the Legislative or Judicial departments, it would be constitutionally impossible to answer for the "State of Texas" as a whole as Google seeks to force Plaintiffs to do here. Furthermore, even parts of the Executive Departments are separate from other Executive Departments. Thus, requests for documents from Executive Departments that are not in the OAG's possession, custody, or control also fails.

Google seeks to impute constitutional authority on the OAG that it simply does not have; this is an enforcement action; by statute, the OAG represents the State and the State's interest. *See* TEX. CONST. ART. 4 § 22; *see also* TEX. BUS. & COMM. CODE § 17.47(a). But while it represents the State in this case, the OAG *is not* the State. *See* TEX. BUS. & COMM. CODE § 17.47(h) ("In bringing . . . an action under this subchapter, the [OAG] acts in the name of the state . . ."); *see also Perry v. Del Rio*, 6 S.W.3d 85, 92 (Tex. 2001) ("The Attorney General is a **member** of the Executive Department whose primary duties are to render legal advice in opinions to various political agencies and to represent the State in civil litigation.") (emphasis added).

In that light, neither the State nor the OAG—in its capacity bringing this suit—can represent the Legislative Department, the Judicial Department, parts of the Executive Department, or the over 150 Texas State Agencies Google seeks answers from, because "state agencies, political subdivisions, and arm-of-the-state entities are not themselves the sovereign State of Texas" and do not answer to the OAG, a member of the executive branch." *See Nettles v. GTECH Corp.*, 606 S.W.3d 726, 740-41 (Tex. 2020) (citation omitted).

This argument also reflects how the law has previously been applied in Texas. In *Perez v. Perry*, applying the Federal Rules of Civil Procedure, the court distinguished between the different branches of government and found that documents from "legislators who are not represented by the Attorney General's office … are not within the State's possession, custody, or control[.]" No. SA-11-CV-360-OLG-JES, 2014 WL 1796661, at *2 (W.D. Tex. May 6, 2014). Here, the OAG has no more authority to command or answer for the Governor, the Legislature, or other State agencies than Google does.

And even if the OAG for various States *could* answer for certain other state agencies, the burden is on Google to first establish that OAG has control over the documents and information it seeks. *League of United Latin Am. Citizens v. Abbott*, 2022 WL 1540589, at *1

Page 2

(W.D. Tex. May 16, 2022) (citing *Mir v. L-3 Commc'ns Integrated Sys., LP*, 319 F.R.D. 220, 231 (N.D. Tex. 2016) (discussing Fed. R. Civ. P. 34(a)(1)). It has not.

This distinction is aligned with other courts' application in other jurisdictions.

In *Perez v. Perry*, the court found that a party seeking ESI stored on legislators' private servers must obtain a subpoena directed at that legislator. No. SA-11-CV-360-OLG-JES, 2014 WL 1796661, at *2 (W.D. Tex. May 6, 2014).

For instance, in *United States v. Am. Express Co.*, the court found that the state agencies and the Attorneys General "should not be aggregated together for discovery purposes" and that the state agencies, with the exception of an agency that was a subdivision of the Attorney General's Office, were not parties to the case. No. 10CV04496NGGRER, 2011 WL 13073683 at *2 (E.D.N.Y. July 29, 2011).

In *U. S. v. Am. Tel. & Tel. Co.*, the court found that there was no basis for holding that a quasi-legislative agency and independent body becomes a plaintiff when the Department of Justice chooses to file a lawsuit on behalf of the United States and that doing so would leave the conduct of a lawsuit and other actions brought by the government "vulnerable to a virtual veto by one or more independent regulatory agencies. 461 F. Supp. 1314, 1335-36 (D.D.C. 1978).

In *Colorado v. Warner Chilcott Holdings Co. II, Ltd.*, the court decided that it would "not aggregate separate state governmental agencies without a strong showing to the contrary" and denied the defendants' motion to compel. No. 05-CV-2182, Slip Op. (D.D.C. May 8, 2007).

In *New York ex rel. Boardman v. Nat'l R.R. Passenger Corp.*, the court found that "there is a presumption that separate governmental agencies under state law will not be aggregated together" and that the equivalent discovery request as Google has in this case was "unduly burdensome and cumbersome but totally untenable and outside the spirit of the Federal Rules." 233 F.R.D. 259, 266 (N.D.N.Y. 2006).

In *Com. v. Ortho-McNeil-Janssen Pharm., Inc.*, the court sustained an objection to similar discovery requests because the requests did "not differentiate between state agencies, much less make any particularized showing that the Attorney General ha[d] any control over them" and said, "that is not enough from which to infer an obligation on her part to demand that these agencies open their files." No. CIV.A. 2011-2811-BLS, 2012 WL 5392617, at *2 (Mass. Super. Oct. 5, 2012).

Next, as explained in Plaintiff States' omnibus response to Google's letter dated September 5, 2024, Google lacks a basis for new lines of questioning when it failed to ask

Page 3

these questions of the Plaintiff States' corporate representatives during their 30(b)(6) depositions. Indeed, Google's topics in the 30(b)(6) deposition notices—and the questions asked during the depositions—reveal that Google anticipated asking questions about litigation holds, document retention, and chats.[1] Moreover, Google could have followed up with Plaintiff States during the fact discovery period—Google did not.

The following are State-specific statements in response to your letter:

### Alaska

Google deposed Alaska's 30(b)(6) witness, Jeff Pickett, on May 3, 2024. Google questioned Mr. Pickett regarding record retention policies and litigation holds. Pickett Dep. 53:13-25, 66:21-67:25. Additionally, Alaska has provided Google with its document retention policies of relevant Alaska state agencies, pointed Google to the publicly-available state website that contains links to the records retention policies of *all* state agencies,[2] and has already informed Google when a litigation hold was put in place.

### Arkansas

Google had the opportunity to question the Office of the Arkansas Attorney General and other Arkansas state agencies about such topics but failed to do so. For instance, Google failed to question Arkansas' 30(b)(6) witness, Chuck Harder, about topics related to litigation holds, document retention policies, or chats.

Likewise, Google failed to ask Arkansas' Parks Department 30(b)(6) witnesses Kratkiewicz and Pucket about these same topics. Google had the opportunity to question Arkansas about such topics but failed to do so.

### Florida

The Florida Office of the Attorney General did not issue a litigation hold specific to this action. As part of its initial investigation, the Office confirmed that it had never used Ad Tech products. The Office verified that the only potentially relevant documents or information

---

[1] Searches performed on the deposition testimony transcripts of the States: Alaska: "hold" but not "chat"; Arkansas: none; Florida: "retention" but not "hold" or "chat"; Idaho: "hold" but not "chat"; Indiana: "hold" but not "chat"; Kentucky: "retention" but not "hold" or "chat"; Louisiana: "hold" but not "chat"; Mississippi: "retention" but not "hold" or "chat"; Missouri: "retention" and "chat" but not "hold"; Montana: none; Nevada: "retention" and "hold" but not "chat"; North Dakota: "retention," "hold," and "chat"; Puerto Rico: "retention" and "hold" but not "chat"; South Carolina: "retention" but not "hold" or "chat"; South Dakota: "retention" but not "hold" or "chat"; Texas: "retention" but not "hold" or chat"; Utah: "retention" and "hold" but not "chat."

[2] https://archives.alaska.gov/rims/.

Page 4

in its possession, custody, or control would be contained in the Consumer Complaint Database. The Office does not dispose of records from this database (see, e.g., FL-OAG-000000014, a complaint from 2013). Throughout discovery, the Office was transparent about its document retention and collection practices and fully described its compliance with discovery obligations to counsel for Google in detail, both in meet-and-confers and in writing. Google had every opportunity to raise perceived concerns with the Office's process during extensive fact discovery. It did not. The Office subsequently made a representative available for testimony regarding its preservation efforts on April 22, 2024. Google's counsel failed to ask a single question about litigation holds or chats. Google also sought discovery from multiple entities pursuant to Rule 45 of the Federal Rules of Civil Procedure, including the Florida Department of Environmental Protection. Similarly, Google did not ask about litigation holds or chats when it had the opportunity to do so.

**Idaho**

On May 30, 2023, the Idaho Attorney General ("IDAG") produced versions of the document retention and destruction policy for its Consumer Protection Division. Google never contacted the IDAG to follow up about these documents, to contest that the production was deficient, or to meet and confer with the IDAG with respect to this production or this policy.

In the 30(b)(6) deposition notice to the IDAG, Google included multiple retention, preservation, and hold topics.[3] Google asked the IDAG witnesses regarding these topics, and the IDAG witnesses answered the questions. *See* Guyon Dep. 22:4–18, 30:12–18, 35:8–15, 50:10–51:18, 52:4–53:15; Olson Dep. 153:2–154:7. Google's 30(b)(6) deposition notice to the IDAG did not include any "chat" topics, and during the deposition, Google did not ask the IDAG witnesses about chats.

Google also conducted a 30(b)(6) deposition of the Idaho Department of Health & Welfare ("IDHW"). The deposition of the IDHW was the only deposition that Google

---

[3] These retention, preservation, and hold topics were the following:
1. Your retention, preservation, collection, review, and production of documents and data related to the Investigation and this Action, including in response to Google's discovery requests in this Action.
3. Your document preservation related to the Investigation and this Action, including any relevant document retention policies and whether and when You implemented a litigation hold.
28. The process in Your jurisdiction for filing a consumer complaint related to a deceptive trade practice, and the relevant retention policies for such complaints.
29. Your process for reviewing or investigating consumer complaints related to deceptive trade practices, and the relevant retention policies for: (a) complaints reviewed and/or investigated pursuant to such process(es) and (b) the review and/or investigative files.

Page 5

conducted of an Idaho agency. In the deposition subpoena to the IDHW, Google did not include any retention, preservation, hold, or chat topics. And during the deposition, Google did not ask the IDHW any questions about such topics.

Google thus has had ample opportunity during the fact discovery period to question the IDAG and Idaho agencies about the retention, preservation, hold, and chat topics.

### Indiana

Google questioned Indiana's 30(b)(6) witness on the topics of litigation holds and chats. *See* Taterka Dep. 25-26 (discussing Indiana's process for filing consumer complaints and readiness to testify on subpoena topics 26-28); *id*. 100-104 (discussing in detail Indiana's document holds and related policies). Clearly, Google had the opportunity to question Indiana on these topics. The questions posed in Google's letter dated September 27, 2024 come too late.

### Kentucky

Google deposed Kentucky's 30(b)(6) witness, Jonathan Farmer, on April 25, 2024. Despite having the opportunity to question Mr. Farmer on litigation holds, retention policies, and chats, Google failed to do so.

### Louisiana

Jeff Harlan, deputy assistant secretary with the Louisiana Office of Tourism, was the only Louisiana agency deponent. He was not asked any questions about chats, chat preservations, litigation holds, or document preservation during his April 30, 2024 deposition. As you likely know, the Louisiana Office of Tourism was represented by separate counsel during the deposition.

Assistant Attorney General Patrick Voelker was deposed as Louisiana's 30(b)(6) representative. He was not asked any questions about chats or chat preservation. However, he was asked questions regarding litigation holds and Louisiana has been subject to follow up requests about that testimony.

Voelker testified that he was not aware of Louisiana instituting a document hold notice related to the litigation and did not institute one when he came on the case. Voelker Dep. 40:19-21, 41:12-14, 43:1-4. Voelker did not speak with his director before the deposition about whether a litigation hold notice had been issued. *Id*. 42:15-17. Voelker testified to searching emails and the consumer complaint database. *Id*. 43:5-10. He testified that, to his knowledge, no search was run "over any other areas or central repository of documents." *Id*. 44:15-17. When asked whether he know of "other documents responsive to Google's request

for that would not have been captured by email searches or searches of the consumer complaint database," Voelker answered, "[n]ot to my knowledge." *Id*. 44:18-22.

Further, Voelker testified during his deposition that the AG's office is "not representing any of the agencies in this proceeding." *Id*. 45:18-46:10.

### Mississippi

Google deposed Mississippi's 30(b)(6) witness, Crystal Utley Secoy, on April 25, 2024. Despite having the opportunity to question Mrs. Secoy on litigation holds, retention policies, and chats, Google failed to do so. The document retention policies of the Mississippi Attorney General's Office are public record.[4] Mississippi directs Google to its prior response for additional clarification.

### Missouri

Missouri maintains the position that Google's letter dated September 27, 2024 seeks to obtain interrogatory responses improperly outside of the discovery period. Google had the opportunity to, and did, ask about some of the requested topics during Missouri's 30(b)(6) deposition. For instance, the Missouri Attorney General's Office did not issue litigation hold letters in connection with pre-suit investigation or litigation. Missouri's mandated records retention schedules, to which Google was directed during the 30(b)(6) deposition, adequately cover the needs in this case. These schedules are all available online.[5] As indicated in those schedules, the Attorney General's legal files (including the accompanying investigation file) are retained for **50 years** before being archived. As stated in the Plaintiff States' omnibus response letter to Google's September 5, 2024 letter, the Missouri Attorney General's Office does not use an instant messaging system like WhatsApp.

### Montana

Montana responds to Google's letter dated September 27, 2024 as follows:

1. Did Montana investigate whether any of its State employees used personal devices to communicate via WhatsApp or other instant messaging apps to conduct State business, for example, as we now know that Puerto Rico did?

State employees at the Office of Consumer Protection have not used personal devices to communicate via WhatsApp or other instant messaging apps to conduct State business

---

[4] http://records.mdah.state.ms.us/appschedules1.php?agency_name=Attorney+General%2C+Office+of+the&searchby=&sterm=&sortby=division_name.
[5] https://www.sos.mo.gov/records/recmgmt/retention/general.

related to this matter. In addition, per departmental policy, instant messaging apps are not permitted to be installed on state cells phone and are thus not used.

2. Does Montana's response cover: (a) Montana State University, (b) Montana Office of Tourism, and (c) the University of Montana? If not, what is Montana's answer to the questions posed in our September 5 letter as to those agencies?

As Montana has previously explained, the State of Montana does not represent Montana State University, Montana Office of Tourism, or the University of Montana in this matter.

In addition, Google deposed Montana's 30(b)(6) witness, Anna Schneider, on May 1. Despite having the opportunity to question Ms. Schneider on litigation holds, retention policies, and chats, Google failed to do so.

### Nevada

Google questioned Nevada's 30(b)(6) witness, Lucas Tucker, regarding litigation holds during his deposition. Tucker Dep. 201:13-202:22. Additionally, document retention was discussed during Mr. Tucker's deposition. *See, e.g., id*. 28:11-29:8, 125:16-24, 126:25-127:11. Google did not question Mr. Tucker about chats.

Also, Google failed to question the 30(b)(6) witnesses for Nevada's state agencies, the Nevada State Treasurer and Department of Motor Vehicles, about litigation holds or chats.

### North Dakota

During North Dakota's 30(b)(6) deposition, Google asked about the (Teams) chat retention/deletion policy that North Dakota had produced. Alm Dep. 14:6-25:1. Otherwise, Google failed to question Ms. Alm regarding litigation holds or document retention policies.

### Puerto Rico

Google did ask about litigation holds during Puerto Rico's 30(b)(6) deposition. *See, e.g.,* Diaz Martinez Dep. 27:19-28:15. Mr. Diaz was otherwise not asked specific questions about Puerto Rico's retention policies during his deposition, although Google included this topic (Topic 1) in his deposition subpoena. With respect to its discovery of Puerto Rico, and like the other Plaintiff States, Google had the opportunity to ask Puerto Rico's 30(b)(6) witness about chats but did not do so. Puerto Rico has also confirmed, in response to Google's September 5 letter, that the PRDOJ does not use WhatsApp for official business nor does it have possession, custody, or control over its employees' personal cell phones.

Page 8

Puerto Rico also rejects Google's premise that it has "pointed to evidence confirming that employees nevertheless have [used their personal cell phones for official business]." R. McCallum Letter to Plaintiff States, September 27, 2024. As described in prior correspondence that is not, at all, what the referenced documents show.

**South Carolina**

South Carolina issued a litigation hold for this case on June 17, 2021. Contrary to Google's statement in its September 27, 2024 letter, South Carolina ***did not*** "unilaterally exclude[] chats and instant messages from the scope of its searches for responsive documents." Far from it. South Carolina had lengthy negotiations with Google regarding what South Carolina would produce. At any time during these negotiations, Google could have raised the issue of chats or asked questions about additional data sources.

SCOAG staff did not send any instant messages about the Google Ad Tech case on public or personal devices. *See* South Carolina Attorney General Office Manual § 4, p. 9 (providing that instant messages should be used for "informal communication on non-substantive matters" (emphasis added))."

Google did not ask any questions about litigation holds or retention policies during the deposition of South Carolina's 30(b)(6) witness. At the beginning of the deposition, Ms. Hartner informed Google about the documents in the binder that she had with her during the deposition. One of the items was a copy of SCAG's manual and retention policy. *See* Hartner Dep. 14:3-4. Google declined to question the witness about this document.

Additionally, South Carolina Attorney General's ("SCAG") response does not cover these state agencies deposed in this action. These are separate state agencies, and SCAG does not have possession, custody, or control over the documents of these agencies *See* 2023-24 Appropriation Act, Part 1B, § 59.19, 2023 S.C. Acts 477, 884. Our agreement with Google did not cover custodians or answers from these sources. In addition, the Department of Parks, Recreation, and Tourism for South Carolina is currently involved in an appeal on this very issue.

**South Dakota**

Google declined to ask South Dakota's 30(b)(6) witness any questions regarding litigation holds or chats. *See generally* Van Patten Dep. Google did, however, question South Dakota regarding document retention policies. *See id.* 72:14-76:9.

**Texas**

Texas did not issue a litigation hold. Instead, Texas relies on the Texas Attorney General's document retention schedule. Google did not ask about any document retention

schedule in either Trevor Young or Justin Gordon's 30(b)(6) depositions. In Justin Gordon's 30(b)(6) deposition, the existence of the retention schedule in Mr. Gordon's binder appears on the transcript, but Google failed to ask questions regarding it.

### Utah

David Williams was the 30(b)(6) witness for the Utah Office of Tourism. Google had ample opportunity to ask about chat messages or document retention policies but chose not to do so. He was deposed by Google on April 19, 2024. Williams Dep. 4:21-24. Mr. Williams was questioned about UOT's responses to the subpoena issued by Google. *Id*. 12:6-18. He was not represented by the Antitrust & Data Privacy Division of the Utah Attorney General's Office at the deposition. *Id*. 65:1-14.

Melanie Hall was the 30(b)(6) witness for the Division of Consumer Protection in the Utah Department of Commerce. She is the Communications Director for the Department, and has been responsible for all the ad-buys during the relevant period of time. During her deposition, Google failed to ask questions regarding legal holds, litigation holds, document retention, or retention schedules or periods. There are three references to document retention in Melanie Hall's deposition, but none are substantive or identify the schedule or periods. Hall Dep. 13:11-19, 125:3-6, 130:8-14, Exs. 8-9.

Marie Martin was the 30(b)(6) witness for the Antitrust & Data Privacy Division of the Utah Office of the Attorney General. During Ms. Martin's deposition, Google failed to ask questions regarding legal holds, litigation holds, document retention, or retention schedules or periods. Google asked about chat messages, was told that a search was conducted for all responsive documents, and no messages were found. See Martin Deposition, 103:4-105:8.In closing, the Plaintiff States continue to believe that Google's efforts regarding discovery-on-discovery months after the close of fact discovery and almost 4 years after the filing of this lawsuit is improper but remain open to meet and confers to further narrow any remaining issues.

In closing, the Plaintiff States continue to believe that Google's efforts regarding discovery-on-discovery months after the close of fact discovery and almost 4 years after the filing of this lawsuit is improper but remain open to meet and confers to further narrow any remaining issues.

Regards,

*Jonathan P. Wilkerson*

Jonathan P. Wilkerson

Page 10