# Exhibit 10
# Filed Under Seal

# When to "Reasonably Anticipate" a Government Investigation

## BY ROBERT HOFF AND NATALIE SHONKA

The exponential growth in electronic discovery in the recent past has resulted in a corresponding increase in case law addressing e-discovery issues. Perhaps not surprisingly, most cases address e-discovery issues in the context of civil litigation between private parties. But e-discovery issues must be considered carefully in government investigations as well, for the failure to follow the rules governing e-discovery when faced with a government investigation can have dire consequences.

One of the most important issues to arise from the onslaught of e-discovery is when to "reasonably anticipate" litigation or a government investigation, which triggers a company's obligation to implement a document-preservation notice or "litigation hold." The determination of when such a duty should attach is necessarily fact-intensive and varies on a case-by-case basis. (Companies in some industries, such as broker-dealers, are required to retain documents for a certain period pursuant to rules or regulations governing those industries. We do not address those circumstances here.) Companies and their counsel must act reasonably and in good faith, considering all information available to them to determine when it is time to implement a litigation hold.

### What "Reasonably Anticipate" Means Generally

It is firmly established that a duty to preserve evidence, including electronically stored information (ESI) arises when litigation is "reasonably anticipated." *E.g., Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Secs., LLC*, 05 Civ. 9016 (SAS), 2010 U.S. Dist. LEXIS 4546, at *14–15 (S.D.N.Y. Jan. 15, 2010). The SEC Enforcement Manual has adopted this standard: "A duty to preserve ESI and paper records generally arises when litigation is reasonably anticipated or foreseeable, as well as when litigation is pending." SEC Enforcement Manual § 3.2.6.4.1.3 at 71 (Feb. 8, 2011), *available at* www.sec.gov/divisions/enforce/

enforcementmanual.pdf. It is beyond dispute that the duty to issue a litigation hold is triggered when a party reasonably anticipates not just a civil litigation, but also a civil or criminal government investigation. "[O]nce a party reasonably anticipates litigation, it must suspend its routine document retention/destruction policy and put in place a 'litigation hold' to ensure the preservation of relevant documents." *Pension Comm.*, 2010 U.S. Dist. LEXIS 4546, at *15 (citations and internal quotation marks omitted).

The standard governing when to implement a litigation hold is easy enough to express. What is much more difficult is determining precisely what it means and how it should be applied in a given case. Courts and commentators have set forth several definitions of what it means to reasonably anticipate litigation or a government investigation. For instance, the Sedona Conference Working Group on Electronic Document Retention & Production, a resource that courts often rely upon when addressing ESI issues, states that "[a] reasonable anticipation of litigation arises when an organization is on notice of a *credible probability* that it will become involved in litigation . . ." *Sedona Conference Commentary On Legal Holds: The Trigger & The Process*, 11 Sedona Conf. J. 265, 271 (2010) (Guideline 1) (emphasis added).

Similarly, courts have held that the duty to preserve evidence attaches "when a party *should have known* that the evidence may be relevant to future litigation." *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 216 (S.D.N.Y. 2003) (emphasis added). "The future litigation must be '*probable*,' which has been held to mean '*more than a possibility*.'" *In re Napster, Inc. Copyright Litig.*, 462 F. Supp. 2d 1060, 1068 (N.D. Cal. 2006) (emphasis added). "[A] litigant's duty to preserve evidence arises when 'he *knows or should know* [it] is relevant to *imminent* or ongoing litigation.'" *Phillip M. Adams & Assocs., L.L.C. v. Dell, Inc.*, 621 F. Supp. 2d 1173, 1190 (D. Utah 2009) (emphasis

added; citation omitted). Even these definitions are not exhaustive.

Applying these standards in the context of a government investigation, one might say that a party has a duty to preserve evidence when a government investigation is a credible probability or when a party should have known that an investigation was imminent. The standards are notably flexible, however, and no potential investigation-inducing event occurs in a vacuum. Courts scrutinize the circumstances of a particular case to determine when the duty to preserve is triggered.

### Factors for Companies to Consider

Some events unambiguously trigger a duty to preserve documents, for example, the receipt of a civil or criminal complaint, information, or indictment. Likewise, the receipt of a subpoena, civil investigative demand, or other demand for documents, triggers the obligation. It is in the gray area between idle threat and receipt of a complaint or demand for documents where the difficult issues arise. To address these difficult issues, companies should consider the following factors among many others that could be applicable in any given case. Moreover, a company that decides a litigation hold is not necessary at one phase should constantly reconsider these factors, among others, to determine whether a subsequent event or new information should trigger a litigation hold. *See, e.g., Sedona Conference Commentary on Litigation Holds*, 11 Sedona Conf. J. at 272 ("Of course, later information may require an organization to reevaluate its determination and may result in a conclusion that litigation that previously had not been reasonably anticipated . . . is then reasonably anticipated.").

### The Specificity and Source of Warnings or Concerns

Companies and their counsel should consider the specificity of a warning about misconduct that could trigger a government investigation. In the civil context,

Published in Criminal Litigation, Volume 11, Number 3, Spring 2011. © 2011 by the American Bar Association. Reproduced with permission. All rights reserved. This information or any portion thereof may not be copied or disseminated in any form or by any means or stored in an electronic database or retrieval system without the express written consent of the American Bar Association.

courts have closely analyzed the specificity of a potential plaintiff's communications and threats to determine whether a duty to preserve has triggered. *See, e.g., Viramontes v. U.S. Bancorp*, No. 10C761, 2011 U.S. Dist. LEXIS 7850, at *9–11 (N.D. Ill. Jan. 27, 2010) (holding that the plaintiff's letter to human resources was insufficient to trigger a preservation obligation because nothing in it suggested "that litigation concerning the matters at issue in this case was imminent or reasonably foreseeable" where the letter complained that the plaintiff's supervisor treated employees and customers in an unprofessional manner, but did not state that the employee might assert possible claims against the defendant).

Applying this principle in the investigation context, a company should consider whether it has received a specific threat or warning about conduct that can lead to a government investigation. For example, a warning from an employee in the accounting department that the controller is "cooking the books" should certainly trigger some level of inquiry, but may not be sufficient to trigger a litigation hold. On the other hand, the duty may be triggered if an employee reports that, at the end of the fiscal year, the controller sold $100,000 worth of widgets to ABC Co., and then bought them back as soon as the next fiscal year started, in an effort to artificially increase revenue in the current fiscal year.

Not only should companies measure the specificity of a threat or warning about misconduct, but also they should consider the specificity of their own employees' and officers' beliefs about whether an investigation is likely, which of their employees hold such beliefs, and what positions such employees hold. In *Cenveo Corp. v. Southern Graphic Systems, Inc.*, No. 08-5521, 2010 U.S. Dist. LEXIS 104211 (D. Minn. Sept. 30, 2010), the duty to preserve arose at the time the defendant's CEO told other employees of the company that "he was concerned about a lawsuit." *Id.* at *4, 10–11. In *Viramontes*, however, although a supervisor later testified that "soon" after he first read the plaintiff's letter, he thought it gave rise to "some possible legal ramifications for either" him or the defendant employer, the court held that the subjective thought of one employee was not sufficient to impose a firm-wide duty to preserve. 2011 U.S. Dist. LEXIS 7850, at *12.

Thus, a statement by a mid-level manager of a company that "we should be careful because the government may take issue with this" could be viewed differently than a statement by an executive officer that "we're going to receive a subpoena any day now." Companies and their counsel need to carefully consider the specificity of statements by those alleging misconduct and those responding to such allegations, and the employment positions of such persons, to apply a reasonable, good-faith analysis regarding whether the statements trigger a duty to preserve documents.

### Whether the Conduct Typically or Historically Has Triggered an Investigation

A company and its counsel should consider whether conduct at issue is typically the type of conduct that triggers a government investigation. In some instances, repeat players who know, or should know, that certain conduct will trigger an investigation, may be held to more stringent standards in determining when the duty to preserve arose. *See, e.g., Cedar Petrochemicals, Inc. v. Dongbu Hannong Chem. Co.*, No. 06 Civ. 3972, 2011 U.S. Dist. LEXIS 4768, at *47 (S.D.N.Y. Jan. 14, 2011) (holding that the plaintiff was on notice of the duty to preserve as soon as a dispute arose because plaintiff was "a sophisticated commercial actor to whom the likelihood of a dispute over liability for" a damaged product "was so evident that they notified [the defendant] that they were holding them liable . . . within days of discovering" the alleged defect).

Thus, as soon as a company becomes aware of conduct that, based on the company's prior experience, it knows or believes will be the subject of a government investigation, the company should consider issuing a litigation hold—even before it receives a request for information from the government. For example, a company that does business overseas may be subject to repeated scrutiny for potential violations of the Foreign Corrupt Practices Act (FCPA). That company might also know that, in the current enforcement environment, the U.S. Department of Justice has been focusing heavily on FCPA violations. *E.g., Assistant Attorney General Lanny A. Breuer Speaks at the 24th National Conference on the Foreign Corrupt Practices Act*, Nov. 16, 2010, *available at* www.justice.gov/criminal/pr/speeches/2010/crm-speech-101116.html ("I'm proud to say that our FCPA enforcement is stronger than it's ever been—and getting stronger."). That company might be expected to reasonably anticipate an investigation as soon as potential misconduct is identified because it is familiar with FCPA enforcement efforts by the government.

### Pending Investigations of Companies in the Same Industry

Companies and their counsel should also consider whether the company is likely to be investigated as part of a broader industry-wide investigation. It is not uncommon for the government to launch an industry-wide investigation of certain conduct that occurs at many companies. For example, on August 4, 2010, former New York Attorney General—currently New York Governor—Andrew Cuomo, announced "an industry-wide investigation into predatory health care lending." *See* Office of the Atty. Gen., Media Center, Aug. 4, 2010, *available at* www.ag.ny.gov/media_center/2010/aug/aug4a_10.html. The New York Attorney General's Office announced that it issued 10 subpoenas to companies that allegedly pressured consumers into using a certain healthcare credit card with misleading sales pitches that pushed consumers into debt unwittingly. *Id.* If a company that also marketed the same credit card to consumers, but did not receive a subpoena, became aware of the investigation, it might consider whether a subpoena will be forthcoming and whether it therefore should reasonably anticipate an investigation. *See, e.g., Phillip M. Adams & Assocs.*, 621 F. Supp. 2d at 1191 (holding that the defendant had a duty to preserve electronic evidence years before the plaintiff threatened suit because of the defendant's awareness that others in its industry were being sued or settling cases based on the same alleged patent infringement that was at issue for the defendant).

Published in Criminal Litigation, Volume 11, Number 3, Spring 2011. © 2011 by the American Bar Association. Reproduced with permission. All rights reserved. This information or any portion thereof may not be copied or disseminated in any form or by any means or stored in an electronic database or retrieval system without the express written consent of the American Bar Association.

This is not meant to suggest that a company should issue a litigation hold every time another company in the same line of business receives a subpoena. Indeed, a company is not required to issue a litigation hold based on speculation or a vague fear that it might receive a subpoena one day. But if there is an announced industry-wide investigation, all companies in that industry should take notice and consider how they should prepare. Likewise, a company that becomes aware of an industry-wide government investigation should consider whether it would be appropriate to proactively start an internal investigation to determine if that company has engaged in similar conduct that may be subject to a government investigation. Depending on the results of the internal investigation, the company may be able to determine if a litigation hold is necessary before the government comes knocking on its door.

### The Commencement of an Internal Investigation

Companies and their counsel should also consider whether the commencement of an internal investigation triggers a duty to issue a litigation hold. Many internal investigations are undertaken because of, or in response to, a government investigation or request for information. In those circumstances, the duty to issue a litigation hold has been triggered. However, companies often commence an internal investigation before any government investigation is reasonably anticipated, even when the subject of the internal investigation could one day be the subject of a government investigation. This can raise difficult questions as to when to implement a litigation hold.

Instinctively, a company might feel compelled to implement a litigation hold as soon as it decides to conduct an internal investigation, even before any misconduct is identified. This has the advantage of preserving documents that would aid in the internal investigation, and assuring that documents are not inadvertently destroyed well in advance of any potential government investigation.

However, there can be disadvantages to implementing a litigation hold prematurely.

First, a company may not want to reveal that it is commencing an internal investigation because it may not want to tip off employees who are suspected of wrongdoing. One way to address this concern may be to issue a limited litigation hold only to those employees who are not suspected of wrongdoing, and to try to obtain documents about potential misconduct in ways other than through the potentially culpable employees. But it may be difficult to identify those employees before the internal investigation has commenced.

A second disadvantage of issuing a litigation hold before determining that any misconduct occurred is that a litigation hold might result in business interruption, inconvenience, and significant costs for no reason. An internal investigation that triggers a litigation hold may ultimately find that nothing improper occurred. On balance, though, companies need to recognize that employees sometimes need to be inconvenienced, and business sometimes need to be disrupted, to protect the broader interests of the company in complying with its legal obligations.

In sum, when commencing an internal investigation, a company needs to balance the benefits of implementing a litigation hold early in the process against the risks of doing so. The overriding concern must be whether the company can determine at every stage of the internal investigation that a government investigation in the future is reasonably anticipated.

### Claiming Protections of the Work-Product Doctrine

A tricky issue that companies and their counsel sometimes face is the impact on the duty to implement a litigation hold resulting from asserting the protections of the attorney-work-product doctrine. Parties may inadvertently "admit" that a litigation hold should have been put in place earlier than it was implemented by invoking the protections of the doctrine. Federal Rule of Civil Procedure 26(b)(3) protects from disclosure "things that are prepared in anticipation of litigation." Fed. R. Civ. P. 26(b)(3). *See also* Fed. R. Evid. 502(g) ("'work-product protection' means

the protection that applicable law provides for tangible material (or its intangible equivalent) prepared in anticipation of litigation or for trial.") The work-product doctrine also applies in criminal matters. *E.g.*, *United States v. Nobles*, 422 U.S. 225, 238–39 (1975).

Companies need to know that, once they "anticipate" litigation or an investigation for work-product purposes, a court may find that they also "reasonably anticipated" litigation or an investigation for purposes of issuing a litigation hold. In *Siani v. State Univ. of N.Y. at Farmingdale*, 09-CV-407 (JFB) (WDW), 2010 U.S. Dist. LEXIS 82562 (E.D.N.Y. Aug. 10, 2010), the defendants issued a litigation hold on August 1, 2008, following the receipt of a complaint filed with the Equal Employment Opportunity Commission. The plaintiff contended that the defendants' duty to preserve documents arose in early 2008 "when outside legal counsel was retained by the defendants for matters relating to [the plaintiff's] allegations of ongoing discrimination." *Id.* at *16. The plaintiff's argument relied on the defendants' withholding of documents created in February 2008 on the grounds that they were attorney work product prepared "in anticipation of litigation." *Id.* In support of their work-product argument, the defendants contended that documents created in February 2008 were protected from disclosure because the plaintiff "had raised 'concerns that he was a victim of ongoing age discrimination' at a meeting in January 2008, and that '[l]itigation was therefore reasonably foreseeable' as of that date." The court agreed with the plaintiff's argument that, "[i]f [litigation] was reasonably foreseeable for work-product purposes . . . it was reasonably foreseeable for duty to preserve purposes." It described the plaintiff's argument as a "common sense conclusion that if the litigation was reasonably foreseeable for one purpose in January 2008, it was reasonably foreseeable for all purposes."

Thus, if a company and its counsel invoke the work-product doctrine because documents are created in anticipation of litigation" or an investigation, they should expect that government investigators will

Published in Criminal Litigation, Volume 11, Number 3, Spring 2011. © 2011 by the American Bar Association. Reproduced with permission. All rights reserved. This information or any portion thereof may not be copied or disseminated in any form or by any means or stored in an electronic database or retrieval system without the express written consent of the American Bar Association.

credibly claim a litigation hold should have been implemented no later than the date on which the work-product doctrine was first invoked.

## Consequences of Failure
When analyzing when to implement a hold, it is important for a company to recognize and consider the severe consequences that could flow from the failure to do so at the right time.

### Loss of Beneficial Documents
One of the most often overlooked benefits of issuing a litigation hold early is the preservation of documents that actually benefit a company's position. Usually, discussions around the failure to issue a litigation hold center on the "doomsday" scenario—all the severe sanctions and penalties that might flow from failure to issue a timely hold. But it is equally important to preserve helpful documents. There may be a perfectly legitimate explanation for a company's conduct, and a company will want to preserve all of the documents that support that explanation. A company may lose the ability to defend itself adequately if it destroys beneficial documents.

### Loss of Cooperation Credit
The failure to issue a litigation hold and the consequential destruction of relevant documents can thwart a company's ability to obtain cooperation credit from the government. Although neither the Securities and Exchange Comission (SEC) nor the U.S. Department of Justice explicitly state that a company will receive credit for timely issuing a litigation hold, both government agencies will give credit to companies that provide all relevant information in response to an investigation. The loss of relevant documents due to the failure to implement a timely hold could prevent companies from receiving that credit.

The SEC's cooperation standards set forth the criteria the commission considers in determining whether a party has cooperated in an investigation. *See* S.E.C., Report of Investigation Pursuant to Section 21(a) of the Securities Exchange Act of 1934 and Commission Statement

on the Relationship of Cooperation to Agency Enforcement Decisions, Securities Exchange Act Release No. 44969 (Oct. 23, 2001) (Seaboard Report), *available at* www.sec.gov/litigation/investreport/34-44969.htm. In some circumstances, cooperation can cause the SEC to take no enforcement action, bring reduced charges, or seek lighter sanctions. Some of the factors the SEC will consider in determining whether a party cooperated include: what steps the company took upon learning of the misconduct; whether the company committed to learn the truth fully and expeditiously; whether the company made available to the SEC the results of its review of misconduct and provided sufficient documentation reflecting the company's response to the situation; and whether the company voluntarily disclosed information to the SEC that was not directly requested and that might not otherwise have been uncovered. *See id.* Any one of these factors would be difficult to satisfy if a company destroyed relevant documents because it failed to implement a timely litigation hold.

Similarly, in the "Filip Memorandum," the U.S. Department of Justice set forth the "Principles of Federal Prosecution of Business Organizations" and discussed how the Department measures and values a company's level of cooperation. *See* Dep't of Justice, Title 9, Ch. 9-28.00, *available at* www.justice.gov/opa/documents/corp-charging-guidelines.pdf. Several factors relevant to cooperation can be impacted by the timeliness of a litigation hold. One factor the Department of Justice considers is whether a company disclosed all relevant, non-privileged, facts concerning misconduct. *See id.* § 9-28.720 at 9. Additionally, the Department of Justice will consider whether a company provided non-privileged documents and other evidence. *Id.* at 9 n.2. Each of these factors would be difficult for a company to satisfy if it lost relevant documents due to the failure to issue a timely litigation hold. The Department of Justice will also consider whether a company obstructed a government investigation by, for example, providing an "incomplete or delayed production of records." *Id.* § 9-28.730 at 12. The failure to implement a timely litigation hold

may be deemed obstruction of justice in some circumstances.

### Criminal Liability
In certain circumstances, and where the appropriate intent is proven, the failure to implement a litigation hold and the consequential destruction of documents can result in criminal liability. In response to the Enron/Arthur Andersen scandals, Congress enacted 18 U.S.C. § 1519, a part of the Sarbanes-Oxley Act aimed at criminalizing certain document-destruction conduct. The statute imposes criminal liability on a person who:

> knowingly alters destroys, mutilates, conceals, covers up, falsifies, or makes a false entry in any record, document, or tangible object with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States . . . or in relation to or contemplation of any such matter or case.

18 U.S.C. § 1519.

By its terms, section 1519 criminalizes conduct undertaken knowingly and with intent to impede or obstruct a government investigation. It also criminalizes conduct knowingly undertaken with the intent to impede or obstruct a contemplated investigation. The scienter requirements of the law preclude its application to an inadvertent destruction of documents. But the failure to implement a timely litigation hold may be circumstantial evidence of intent in some cases. In *U.S. v. Fumo*, 628 F. Supp. 2d 573 (E.D. Pa. 2007), the government charged that the defendant had destroyed email and other electronic evidence to keep it out of the hands of investigators while he was aware of an ongoing investigation relating to his conduct, all in violation of 18 U.S.C. § 1519. Notably, the defendant had not received a request for information or a criminal complaint before he destroyed documents. Rather, the government alleged the defendant knew about the investiga-

Published in Criminal Litigation, Volume 11, Number 3, Spring 2011. © 2011 by the American Bar Association. Reproduced with permission. All rights reserved. This information or any portion thereof may not be copied or disseminated in any form or by any means or stored in an electronic database or retrieval system without the express written consent of the American Bar Association.

tion through press coverage. Even though the first subpoena in the investigation was not alleged to have been issued until April 2004, and even then, was not issued to the defendant who allegedly destroyed documents, the court found that the indictment sufficiently alleged that the defendant was aware of the investigation at least as early as November 2003, when the *Philadelphia Inquirer* ran an article stating that the defendant was the subject of an investigation. Given that knowledge, the defendant had an obligation not to destroy documents.

The statute's prohibition on destroying documents in "contemplation" of an investigation means destroying documents may be a crime long before the government has actually begun its investigation. In *U.S. v. Russell*, 639 F. Supp. 2d 226 (D. Conn. 2007), the court stated that "'in contemplation of' . . . is commonly understood as meaning something that is envisioned or anticipated." Because the indictment alleged that the defendant's destructive act "was done with the purpose of effecting, or with an expectation that, a federal investigation might ensue, his alleged conduct" was prohibited under the statute. The court rejected the defendant's motion to dismiss and ruled that a jury would determine whether "at the time [the defendant] destroyed [the] Computer, an official proceeding . . . or [an] FBI investigation . . . were foreseeable to or anticipated by" him.

## Conclusion

Companies and their counsel who discover conduct that may lead to a government investigation need to apply a reasonable, good-faith analysis to decide when is the appropriate time to implement a litigation hold. They should consider all facts available at any given time to determine whether to reasonably anticipate a government investigation. Although implementation of a litigation hold can be disruptive and costly to an organization, the failure to implement a hold at the right time can lead to disastrous results. ∎

*Robert Hoff is a partner and Natalie Shonka is an associate with Wiggin and Dana LLP in New Haven, Connecticut.*

Published in Criminal Litigation, Volume 11, Number 3, Spring 2011. © 2011 by the American Bar Association. Reproduced with permission. All rights reserved. This information or any portion thereof may not be copied or disseminated in any form or by any means or stored in an electronic database or retrieval system without the express written consent of the American Bar Association.