```
 1                IN THE UNITED STATES DISTRICT COURT
                 FOR THE EASTERN DISTRICT OF TEXAS
 2                        SHERMAN DIVISION

 3    THE STATE OF TEXAS, et al,        §
                                        §
 4                                      §
                    Plaintiffs,         §
 5                                      §       Case No.:
                                        §       4:20-cv-00957-SDJ
 6        vs.                           §
                                        §
 7    GOOGLE, LLC,                      §
                                        §
 8                    Defendant.

 9

10                       STATUS CONFERENCE
                    TRANSCRIPT OF PROCEEDINGS
11          BEFORE THE HONORABLE SEAN D. JORDAN
                 UNITED STATES DISTRICT JUDGE
12
           Wednesday, January 29, 2025; 9:39 a.m.
13                       Plano, Texas

14
      APPEARANCES OF COUNSEL:
15    (Continued on page 2.)

16    FOR THE PLAINTIFF
      THE STATE OF TEXAS:
17
          W. Mark Lanier (Via videoconference)
18        Zeke DeRose, III
          THE LANIER LAW FIRM
19        10940 W. Sam Houston Pkwy N.
          Suite 100
20        Houston, Texas 77064

21
          ******************************************
22
                    GAYLE WEAR, RPR, CRR
23             Federal Official Court Reporter
                    7940 Preston Road
24               Plano, Texas 75024
                    214.872.4867
25
```

```
1    FOR THE PLAINTIFF
     THE STATE OF TEXAS:
2    (Continued from page 1.)

3         Jonathan P. Wilkerson
          THE LANIER LAW FIRM
4         6810 Cypress Creek Parkway
          Houston, Texas 77069
5
          Ashley C. Keller
6         KELLER POSTMAN LLC
          2333 Ponce de Leon Boulevard, Suite R-240
7         Coral Gables, Florida 33134

8         Noah Heinz
          KELLER POSTMAN LLC
9         1101 Connecticut Avenue, N.W., Suite 11th Floor
          Washington, Illinois 20036
10
          James Lloyd
11        STATE OF TEXAS
          OFFICE OF THE ATTORNEY GENERAL
12        P. O. Box 12548
          Austin, Texas 78711
13
          Geraldine W. Young
14        NORTON ROSE FULBRIGHT
          1560 Lamar, Suite 2000
15        Houston, Texas 77010

16        ALSO PRESENT:

17        Ethan Glenn

18

19
     FOR THE DEFENDANT:
20   (Continued on page 3.)

21        Eric Mahr
          FRESHFIELDS BRUCKHAUS DERINGER US LLP
22        700 13th Street NW
          Washington, DC 20005
23

24

25
```

```
1    FOR THE DEFENDANT:
     (Continued from page 2.)
2

3         Justine Kahn Sessions
          FRESHFIELDS US LLP
4         855 Main Street
          Redwood City, California 94063
5
          Kathy Dawn Patrick
6         Ayesha Najam
          Charles Rosson
7         GIBBS & BRUNS LLP
          1100 Louisiana, Suite 5300
8         Houston, Texas 77002

9    ALSO PRESENT:

10   Denise Drake

11

12                         *    *    *

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
1   January 29, 2025                              9:39 a.m.

2                        ---o0o---

3                   P R O C E E D I N G S

4                        ---o0o---

5        THE COURT:  Good morning.  You may be seated.

6        All right, counsel, we're here on cause number

7   4:20-cv-957, State of Texas, et al versus Google LLC.  Let's

8   start with appearances of counsel, and we can go with

9   plaintiffs first.

10        Mr. Lanier, I know you're here by video, so I'll

11  let you start.

12        MR. LANIER:  Thank you, Your Honor.  And I

13  apologize I have to be here by video.  We are trying a case

14  in Los Angeles, with the fires and everything else going on.

15  We have selected the jury.  I'm in the middle of opening.

16  And I am good here for one hour before I have to walk back

17  across the street to court.  And so I apologize for that, but

18  I appreciate the deference.  And I am here ready to go on the

19  issues that I argued.

20        THE COURT:  All right.  Thank you, Mr. Lanier.

21  We'll try to keep it within an hour.  We'll see how we do.

22        Why don't we have appearances for Google.

23        MS. PATRICK:  Good morning, Your Honor.  Kathy

24  Patrick from Gibbs & Bruns for Google.

25        My other colleagues are on the seating chart.  Do
```

1    you want them to enter appearances, or --

2            THE COURT:  No, that's fine.  Just whoever you want

3    to introduce.  If anybody else is going to speak, we can just

4    have them introduced.

5            So we're here for a status conference that was

6    requested by Google, but I think it makes sense to have a

7    status conference at this point anyway.  And I did also

8    receive the letter from Ms. Patrick yesterday evening with a

9    suggested agenda that looks fine to me.

10           I have some topics I'm going to want to talk to you

11   about, and I'm going to walk through a little history of this

12   case that leads into my first question or two.  But we'll be

13   able to discuss all the topics that you've raised,

14   Ms. Patrick.

15           I will note for all counsel that as with our prior

16   hearings, we do have the audio feed for the public so that

17   the public can listen in on this hearing.

18           So I think it makes sense to put a little context

19   on where we are right now in this case as we get into talking

20   about where we're headed.

21           A little bit of the history of this case, of which

22   I'm sure you're all pretty familiar, is that it was

23   originally filed in this court in December of 2020.

24           In August of 2021, the judicial panel on

25   multi-district litigation sent the case to the Southern

1    District of New York for coordinated and consolidated

2    pretrial proceedings, and it was in New York until late 2023.

3             Around late October, early November 2023 it came

4    back to this court.  And with the parties' assistance, the

5    Court had hearings to figure out a schedule for the case.  We

6    wound up putting out a scheduling order that, believe it or

7    not, was only about -- it was about a year ago.  January of

8    2024 we put together the schedule that we've been following.

9    And I think it was a somewhat ambitious schedule,

10   particularly considering that while some discovery had been

11   done in the Southern District of New York, a lot of discovery

12   did remain to be accomplished.  And I do want to compliment

13   the parties on how much work has been done to meet the

14   schedule that was put together, particularly in terms of

15   discovery.

16            This Court appointed a special master not long

17   after the scheduling order was put in place.  And with the

18   special master's very able assistance and the parties'

19   tremendous work put in on getting through discovery, we were

20   able to, as far as I can tell, essentially complete all

21   discovery, with certain things remaining outstanding or

22   issues in disputes.

23            But that brought us to the end of the summer and

24   into the fall to where we were getting towards *Daubert*

25   motions, summary judgment briefing.  And that's where things

1    get a bit interesting in this case because, as you know, we

2    have parallel litigation going on in the Eastern District of

3    Virginia.

4           I will note that, of course, we also had motions to

5    dismiss filed and heard in this case.  The Court literally

6    just got out the ruling on the 12(b)(1) motion.  We have a

7    12(b)(6) motion pending, which I can tell you it may -- you

8    know, it may wind up being rolled into the summary judgment.

9    I'm considering doing that.  That's not ideal, but I think

10   that's the way that that may be handled.  So I know that's

11   one question you had, Ms. Patrick, is I think there's a

12   chance that will be rolled in.

13          But let me come back to where we stand today,

14   particularly with regard to the summary judgment briefing and

15   questions about rulings on the summary judgment motions.

16          So the Eastern District of Virginia case began

17   trial in September, and I know you're all well aware of that,

18   and has concluded in the Eastern District, and the parties in

19   that case are awaiting a ruling from Judge Brinkema.

20          Now, in November, as you may recall, we had a

21   status conference, and a topic at that status conference

22   raised by Google, and subject to discussion with the parties,

23   was should the Court delay even the filing of the summary

24   judgment motions until Judge Brinkema issued her ruling.  The

25   States were opposed to that.

1          And I asked the parties to go ahead and confer and

2     then get me a joint advisory that set forth your positions;

3     that was filed on November 12, 2024.  And notably, in

4     Google's position statement part of that -- this is docket

5     number 659 -- Google says "Both plaintiffs and Google

6     recognize that additional briefing is certain to be warranted

7     after Judge Brinkema rules."  So in Google's view, it would

8     be more efficient to push off the summary judgment briefing.

9     Again, the States did not agree on that.

10          But I understood that to be a representation that

11     the position of both sides was that this Court should not be

12     issuing any rulings on summary judgment motions until two

13     things had happened:  One, Judge Brinkema's ruling came down;

14     and, two, each side had the opportunity to submit

15     supplemental briefing on that ruling.

16          As you may recall, I issued an order on November

17     13, 2024, that essentially said the parties are going to have

18     the opportunity to submit supplemental briefing after the

19     Eastern District of Virginia has issued its ruling.  You may

20     recall that the order specifically said within three days of

21     the Court's ruling in the Eastern District of Virginia case,

22     the parties should submit a joint advisory detailing their

23     recommendation on the timing and page limits for such

24     supplemental briefing.  Again, the premise of that was my

25     understanding that both sides did not want the Court to be

1    ruling on summary judgments, at a minimum, until the Eastern

2    District of Virginia's ruling came down and they had the

3    opportunity to brief it.

4            So I will say, Ms. Patrick, I was somewhat

5    surprised to see, in both your request for this status

6    conference and your agenda letter yesterday, not a single

7    solitary reference to the Eastern District of Virginia case,

8    but simply a request of "when can we expect a ruling on the

9    summary judgment motions."

10           I will say that that left me somewhat puzzled

11   because my understanding has been that at least Google, and I

12   think both sides, would prefer the Court not rule on the

13   summary judgment motions until the Eastern District of

14   Virginia has ruled and you've had time to brief it.

15           Now, here we are on January 29, and the Eastern

16   District has not issued its ruling, which I believe is

17   entirely understandable, you know, given the complexity and

18   the scope of what is being considered in that case.  So it's

19   totally understandable to me that that ruling's not issued.

20   And I know Google had thought and hoped it might come by the

21   end of December.  But as we sit here today, the Court is

22   still working on that.

23           So a question I have right out of the box for the

24   parties in this case is very straightforward.  Is it the

25   position -- or is it still the position of each side that you

```
 1    do not want this Court to rule on the summary judgment

 2    motions until, one, the E.D.V.A. has ruled and, two, you've

 3    had an opportunity to submit supplemental briefs?

 4              And I'm happy to start with you, Ms. Patrick.  For

 5    both sides, you may want to use the podium.  Or do you have a

 6    lapel mic?

 7              MS. PATRICK:  It's here, Judge.

 8              THE COURT:  All right.  You can use the lapel mic,

 9    but just make sure -- it's flashing red right now.  You want

10    it flashing green.

11              MS. PATRICK:  It's flashing red.

12              THE COURT:  You want it flashing green.  So you

13    need to push that button.

14              MS. PATRICK:  There it is.  It's green now.

15              THE COURT:  All right.  Go ahead, Ms. Patrick.

16              MS. PATRICK:  Your Honor, I appreciate the Court's

17    clarification on that.  I think that from Google's

18    perspective, when we raised this issue initially, we just

19    thought we should wait to brief the summary judgments

20    entirely and see what happens in that trial.  But the

21    decision was made to move forward.  And so I think our view

22    was that whatever happened in the Eastern District of

23    Virginia would need to be addressed for either side.  We

24    certain -- we don't think that that is true, for example, of

25    the DTPA motions, which are purely state law claims that
```

1    concern different elements of the different 17 states and the

2    Commonwealth of Puerto Rico, on which some clarity about what

3    is going to be required to be proved will be helpful.  And I

4    alluded to that in our last hearing about whether, you know,

5    were we in state court, which we aren't, a 166(g)  hearing on

6    this is what you have to prove, would be helpful.  And so

7    that's part of the occasion for the status conference.

8            We certainly did not intend to be critical of the

9    Court's delay in ruling.  I hope it was not perceived that

10   way.  If it was, I apologize.  Our point in sending the

11   letter is we are, because of the delay in the Eastern

12   District of Virginia, now rolling up on a March 31 trial date

13   which involves antitrust claims that are identical to those

14   in many respects -- not entirely, but in many respects to

15   those that were filed in Virginia.

16           And so I wanted to get some clarification from the

17   Court about what your thinking was on that topic.  The

18   antitrust claims quite obviously, given the Court's 12(b)(1)

19   ruling yesterday, are the anchor for the DTPA claims.  We

20   understand the Court's ruling on that.  But what is -- I

21   guess I would say, what are you thinking.

22           I mean, from our perspective at this juncture, I

23   think -- and Eric can -- Mr. Mahr can address this -- I think

24   we certainly expected, because Judge Brinkema keeps her

25   word -- you know, she prides herself on swift decisions --

1    and she had targeted the end of the year.  I don't think we

2    know at this point what we expect, but we certainly expect a

3    speedy ruling nonetheless because that's her reputation.

4            MR. MAHR:  I think that's right.

5            THE COURT:  So I want to just make sure I have your

6    position.  As I understand it, as we sit here today, from

7    Google's standpoint, this Court does not need to await any

8    rulings from the Eastern District of Virginia, does not need

9    to allow for additional briefing.  You're content to go

10   forward on the record the Court has.

11           MS. PATRICK:  On the DTPA motions, that's correct,

12   Your Honor.  I think the issue is this.  If -- let's assume,

13   for the sake of argument, that next Wednesday Judge

14   Brinkema -- if the Court were to issue its antitrust rulings

15   today, and next Wednesday Judge Brinkema issued a ruling that

16   was contrary, what then would the Court do.  And so I would

17   submit that it might well be prudent to carry the antitrust

18   motion for now, given that Judge Brinkema hasn't ruled.

19           But certainly as to the DTPA motions, those are

20   ripe, unaffected by Virginia, and we think some clarity on

21   those would be helpful to the parties as we roll into

22   preparing the pretrial order, if the Court doesn't intend to

23   carry those as well.

24           So I think if that clarification is helpful, Judge,

25   I think that would be our position, go ahead and carry the

1    antitrust motions, and then we'll do the supplemental

2    briefing because both sides agree that is necessary.  But on

3    the DTPA, it would be helpful if the Court has got the time

4    to go ahead and address those.

5            THE COURT:  All right.  Let me get the States'

6    position on this because I think I understand that Google

7    believes that the Court can move forward on the DTPA-related

8    issues, but ideally, we'll await a ruling from the Eastern

9    District of Virginia before ruling on the antitrust issues.

10           So is Mr. Lanier going to address this?

11           All right.  Go ahead.

12           MR. LANIER:  Please, Your Honor.  First of all, I

13   never want to correct the Court, but the Court's recitation

14   of history needs a slight modification that I'm sure you

15   purposely left out, but it's not fair to you and it's not

16   fair to your staff.  That modification is when we were trying

17   to move this case as rapidly as we could because of the

18   importance of the issues, you allowed the constriction of the

19   normal time that you and your clerks and your staff would

20   need to review all of the briefing, to do all of the

21   research, and put yourself under an extreme burden because

22   the parties needed the benefit of as much time as possible

23   for discovery.

24           I distinctly recall standing at your podium

25   cringing because the net effect of what we were doing was

```
1    putting you in a box time wise that would be very difficult
2    and strenuous on your staff, and yet, you took that upon
3    yourself.
4            We then aggravated that problem by delaying some
5    things even later in the process.  Fortunately, through the
6    good graces of your special master, we were still able to
7    stay on a good enough track.  But you had failed to put into
8    the record the very difficult placement that you and your
9    staff were on because of the timeline that this -- this track
10   that was placed.  And so I think the Court is not being fair
11   to itself in reciting the history without including those
12   facts.
13           Now, that being said --
14           THE COURT:  Well, let me comment on that real
15   quickly, Mr. Lanier, before you continue because I do think
16   it's a good point just in terms of where we are in the
17   timeline.  You all will recall, to Mr. Lanier's point, that
18   because of a coordination with the Eastern District of
19   Virginia trial and particularly because Google was going to
20   be involved in a tremendous amount of work in that trial, we
21   moved some deadlines that had to do with experts, but also
22   moved our summary judgment deadline back about a month.
23           And the other factor that I think I'm getting into
24   a little bit granular here, but to Mr. Lanier's point and I
25   think it matters, in moving the expert deadlines and
```

1    everything else, and given the *Daubert* motions that we have,

2    and we've had *Daubert* filings going into this month, and for

3    many of these experts, obviously, the Court needs to be

4    making *Daubert* rulings that may impact the summary judgment

5    rulings in this case.

6         So I do want to tell you that the Court is

7    cognizant of all that.  And, Mr. Lanier, the point is well

8    taken.  It is something else that has to be part of the

9    Court's consideration on timing, is that we've moved

10   deadlines back, and we've literally been getting briefing, as

11   you all are well familiar with, up into this month on

12   experts.  In fact, there's some briefing on experts going

13   into next month, but those don't bear on the MSJs.  I think

14   those bear on the ESI issues.

15        So thank you for raising that, Mr. Lanier.  I think

16   it's something we all do need to factor in, the compressed

17   time frame we faced.  And, you know, I will acknowledge that

18   this Court also has some other very large matters with things

19   that will be pending and coming up within the next two

20   months, absolutely unavoidably, and things we can't move for

21   various reasons.

22        So you can proceed, Mr. Lanier.

23        MR. LANIER:  Thank you, Your Honor.  The nerd in me

24   is shouting out in my brain the Kobayashi Maru, that Star

25   Trek no-win situation.  And that's where the Court is, when

1    the parties come -- or Google actually came and asked to

2    extend the filing deadline for motions for summary judgment

3    because of their time problems, and then coming before this

4    Court and, candidly, in my opinion, complaining about a time

5    delay that I can't even fathom a complaint being lodged.  So

6    here's the States' position on this succinctly.

7         You've got DTPA issues that clearly overlap with

8    issues pertaining to the antitrust claims; that's why they're

9    all brought together.  And the Court's got to decide how

10   you're going to issue your opinions.  Will you issue separate

11   ones on each one?  Will you issue one major opinion where you

12   can cross reference or facts?  There is a lot of work that

13   goes into this.

14        Far be it for any of us in this case to tell this

15   Court how to run its docket and its decision with its clerks

16   on how to produce those memoranda.  I don't know that any of

17   them are ripe for now.  Maybe they all are ripe for now.  We

18   believe this is totally within your discretion.  And our job

19   as parties is to be prepared to try this lawsuit, and we can

20   be prepared to try this lawsuit, period.  And we leave it up

21   to you to answer these motions whenever and however you

22   choose.

23             THE COURT:  All right.  Thank you, Mr. Lanier.

24             MR. KELLER:  Your Honor --

25             THE COURT:  I'm sorry.  Mr. Keller, go ahead.

1          MR. KELLER:  See if I can make it turn green.

2          THE COURT:  And any of you are free to go up and

3    use that big podium if you want.

4          MR. KELLER:  Thank you, Your Honor.  Ashley Keller

5    for the Plaintiff States.

6          I just want to amplify a little bit of what

7    Mr. Lanier said.  First, I agree with the punchline.  We, of

8    course, defer to the Court on whatever is easiest.  Our

9    understanding back in the November timeline was the same as

10   Your Honor's that it would make sense to wait, but

11   circumstances change.  And, understandably, as you said, the

12   Eastern District of Virginia is taking its time with a

13   complicated case.  And so to the extent that the calendar now

14   dictates that you would want to accelerate things, we're

15   completely open to that.

16         The point that I wanted to amplify is I don't think

17   there is this clear declaration between antitrust and DTPA

18   issues, and so I don't think it would necessarily be so

19   simple to just deal with summary judgment on the DTPA.  And

20   the reason for that is part of the supplemental briefing that

21   we may be submitting with that three-day trigger that you

22   referenced in your previous order, may be collateral estoppel

23   type issues because there are factual overlapping

24   circumstances between the antitrust claims and the DTPA

25   claims.  And until we see the Eastern District of Virginia's

1    findings of fact and conclusions of law, it will be difficult

2    for us to say which things may have been necessarily decided

3    as part of that judgment.

4            And so I did want to alert you to the fact that if

5    we jump into the DTPA issues alone, there may be extra work

6    that we have to do on the back end to unpack some of those

7    estoppel issues.  But again, we will, of course, defer to the

8    Court on whatever schedule you think is appropriate to

9    adjudicate summary judgment, including oral argument if you

10   think that one is appropriate.

11           THE COURT:  All right.  Thank you, Mr. Lanier,

12   Mr. Keller.

13           Ms. Patrick, did you have any followup you wanted

14   to provide on this issue?

15           MS. PATRICK:  No, Your Honor.  Obviously, you are

16   the keeper of your docket, and we have confidence in you to

17   manage this however.  Our point in asking the question on the

18   status conference was simply March 31st is coming.  What do

19   we need to do.

20           THE COURT:  Understood.  Do you agree with the

21   point that there is some overlap in these issues?  Or is that

22   something you don't --

23           MS. PATRICK:  I think that's quite speculative,

24   Your Honor.  And certainly, as to the DTPA issues, for

25   example, I will give you a key point on which I think there

1    is zero overlap that stands at the heart of the multi-billion

2    dollar penalties that they're seeking here, which is can the

3    States obtain penalties without evidence of individualized

4    harm.  We talked about *Zyprexa* last time; that's briefed in

5    our summary judgment.  That has nothing to do with the

6    antitrust case.  It has to do with whether under the

7    statutes, under the constitution, the Court can engage, in

8    effect, order effectively a massive transfer of wealth from

9    Google to the treasuries of these states with no evidence of

10    harm at all, right.  That's a pure legal question, not

11    relevant to the antitrust claims at all, not collateral

12    estoppel under those claims.  That's what do these statutes

13    authorize.  And so I don't agree.

14            Now, we don't know yet what Judge Brinkema is going

15    to rule.  There are aspects -- there were allegations, for

16    example, the dynamic revenue sharing, which you're aware of,

17    was also an anticompetitive act.  There are other pieces that

18    are not alleged to be anticompetitive in the Eastern District

19    of Virginia; for example, the sale of personal information,

20    which Google, as you know, disputes occurs, but it's a

21    separate element of their DTPA claims.

22            And so I think it is in that sense speculative to

23    contend that there would be any collateral estoppel

24    applicable in the DTPA claims, but if there is, they can

25    address that when and if that decision is made.  For now, I

1  think you have those claims before you and they are very much

2  the tail wagging the dog here, right.  Those DTPA claims are

3  the tail wagging the dog.  And so that attention, if the

4  Court has the time to give it, is warranted, in our view.

5          THE COURT:  All right.  Well, I will say that as

6  our discussion indicates, I think there are reasons for the

7  Court to consider moving our timeline back somewhat on trial.

8  Those reasons have to do with awaiting the Eastern District

9  of Virginia's decision, which at this point in time we

10  can't -- we can't predict whether it will come in the very

11  near term or may be out weeks or maybe months.

12          Also, as has been raised at this hearing, and

13  Mr. Lanier discussed it and I followed up with some of the

14  more granular details, this Court does typically follow a

15  practice of having at least 110 days-plus, in any -- in

16  almost any case to consider summary judgment briefing before

17  going into pretrial.

18          And in this case, the submissions from the parties

19  on summary judgment and on the experts are very extensive,

20  very detailed, and involve a lot of evidence.  And so in this

21  case, it's all the more important that the Court have

22  sufficient time to give the attention to the *Daubert* motions

23  and the summary judgment motions -- and, by the way, the

24  other motions, Ms. Patrick, that you've identified, the

25  additional bifurcation motion, whether or not any or all of

1    these claims will be tried to a jury.  You know, the parties

2    are literally on diametrically opposed sides of that.  Google

3    says none of them should be tried to a jury.  The States

4    believe all of them should be tried to a jury.

5           So there are a number of reasons why a shift in the

6    schedule in this case may be needed.  And what I am thinking

7    is that I will -- I would like the parties to confer on this.

8    You don't necessarily have to do a joint advisory.  What I'm

9    going to do is probably set up some sort of an additional

10   conference for us, it could be just a phone conference.  But

11   I would like the parties to consider time frames, you know,

12   windows of time if we're moving our pretrial and trial

13   deadlines only, somewhere in the two-to-three-month range,

14   which I tend to think provides additional time for the Court

15   to consider motions, but also would give the Court and the

16   parties time to process and have briefing on a decision from

17   the Eastern District of Virginia.

18          We have adhered to the schedule from last year I

19   think remarkably well.  But because of the fact that there is

20   parallel litigation, we've had to move some deadlines -- I

21   think appropriately move deadlines -- for the parties, but

22   that does lead to one reason why a shift in our trial

23   schedule makes sense and that is also again driven largely by

24   awaiting the decision from the Eastern District of Virginia.

25          So to put a finer point on this, if you all can

1    confer on a potential shift of our trial and pretrial

2    deadlines only for about 60 to 90 days, or something like

3    that, I would be happy to get an advisory.  What we will do

4    is contact you and set up either another status conference

5    like this, or a phone conference, to follow up on this issue.

6    Which bears on, well, all the initial topics in your letter,

7    Ms. Patrick.  There are a few other -- there are some other

8    things that you bring up that I'm happy for us to discuss

9    today.

10           MS. PATRICK:  Yes.  I just have a couple of

11   questions, Your Honor --

12           THE COURT:  Yes.

13           MS. PATRICK:  -- just so -- I heard the Court would

14   like to have a 110-day increment.  If we're moving back three

15   months, would you be talking about moving the trial back

16   three months and then bringing the deadlines forward so you

17   can hit a trial date three months from now, or -- just give

18   us some -- we're doing pretty well on negotiating schedules.

19   It's just if we knew what date the Court wanted to set the

20   case for trial, then we can I think sync with great ease.

21   We're getting along just fine on when are we going to do this

22   or that.

23           THE COURT:  That's a great question.  So let me

24   clarify a little bit.  From my standpoint, I think you're

25   looking at a potential trial date that is sometime in the

1    latter part of June or July, if we're moving this.  Either in

2    the latter part of June or sometime in July, but I'm open to

3    hearing from the parties on an alternate time frame.  But

4    it's literally saying, you know, when I say 60 to 90 days,

5    you know, if we are moving it to sometime in June, that's

6    more like 60 days.  If we're looking at sometime into July,

7    that's more like 90 days.  And I'm happy to hear from the

8    parties if you think an alternate time frame is better.

9         I want to put all of that under consideration, but

10   also follow up with you because I'm not make making a call

11   today that we're moving anything.  But I recognize, per the

12   parties' submissions and the discussion today, that I'm going

13   to need to make a call in the near term about whether or not

14   we're going to move those pretrial deadlines.

15        Ms. Patrick's submissions appropriately note that

16   we have pretrial order and some other deadlines on February

17   28.  But as you're familiar with, we have deadlines before

18   that for you all, in mid-February, around February 14, that

19   have you start meeting to put these materials together that

20   you all have very legitimate questions about and that turn on

21   other issues that are before the Court.

22        So when I say I'm going to look at doing some sort

23   of a follow-up conference, I mean, soon -- I mean, like next

24   week -- I mean, very soon.  So I hope that clarification

25   helps you understand the time -- kind of time frame I'm

```
 1   contemplating, but I'm open to the parties' suggestions on

 2   this.

 3           MS. PATRICK:  That's very helpful, Your Honor.  I

 4   think we can work with that.  I think we have a -- we all

 5   have -- the Court has trial schedules, Mr. Lanier does, I do

 6   as well.  I think we can -- with that information, if you're

 7   looking at late June, July -- we can confer, get a suggested

 8   trial date to you to get you some deadlines.  We can do that

 9   rapidly because we already had in place some pretrial

10   exchanges that, you know, we were adjusting to hit some of

11   the deadlines for deposition designations, you know,

12   mechanical stuff that one has to get done before trial.  And

13   we were making good progress on that.  We had a meet and

14   confer scheduled tomorrow sometime, in any event, to talk

15   that through.

16           So I think a conference next week works.  And I

17   predict that we can get that information to you.  And then

18   you can make your decision about whether you're going to roll

19   it back or not.

20           I think for our purposes -- Zeke, I'm looking at

21   you -- I think we should like talk about what your preference

22   is and what our preference is on that trial because before we

23   line out all the rest of the deadlines on the existing

24   schedule, it would be good to know what the Court's going to

25   do on the trial date.
```

1        THE COURT:  Right.  And not to interrupt you -- I'm

2   going to let you finish -- but I have Mr. Lanier waving his

3   hand from Los Angeles, and I think he would like to comment.

4        MR. LANIER:  Thank you, Your Honor.

5        Before we get locked into this June, July concept,

6   and as we do the meet and confer over the next week, I don't

7   want Kathy to -- or Ms. Patrick to say, "Well, the Court

8   ordered June or July," because I will be lobbying for perhaps

9   trying this case in May, which is before the June-July.  My

10  June and July is totally shot.  I've got no chance of trying

11  it then.  So it's either May, or we roll into the fall.

12       And I just want to be able, without this -- I don't

13  want us to be in a position of trying to discuss this where

14  I'm suggesting May as a time to try it, which rolls -- you

15  know, instead of trying it the end of March or whatever.  I

16  don't know.  I just need to have the flexibility, if the

17  Court's okay with that, to try to lobby at least to see what

18  calendars look like for May because, otherwise, we may be

19  looking at the fall, which, candidly, I think is awfully late

20  to try this case.  Thank you.

21       THE COURT:  All right.  And I think that goes to

22  the point I made of I'm happy to hear from the parties about

23  what your schedules look like.  And the time frames that I've

24  referenced are again a suggested time frame from the Court,

25  but I'm happy to hear from the parties on this issue.  And I

```
 1    expect that you can confer on this.

 2              Mr. Lanier, did you have something more you wanted

 3    to say?

 4              MR. LANIER:  (Nods head in the negative.)

 5              THE COURT:  No.  All right.

 6              So what we will do is I'll have Ms. Munoz get in

 7    touch with you all, and we'll set up a conference for early

 8    next week.  And I'm glad to hear that you all will be able to

 9    make time.  You already have a meeting scheduled tomorrow.

10    So it sounds like that will work out.

11              Let me -- that was my paramount issue, obviously,

12    to discuss with you all, and it had everything to do with,

13    you know, what I think is sort of the 800-pound gorilla in

14    the room which is, you know, we are awaiting a decision from

15    the Eastern District and what does that mean for our

16    schedule.  There are other issues we've talked about with

17    regard to the timing we've had in this case.

18              Let me go ahead and I'm going to move on, unless

19    counsel have anything else to say on those issues.

20              Anything from the States?

21              MR. DEROSE:  No, sir.  No, Your Honor.

22              THE COURT:  Ms. Patrick, anything on that, that

23    issue?

24              MS. PATRICK:  No.  The only question is if the

25    Court -- if Mr. Lanier -- if we're not able to do it in May,
```

```
 1    given the Court's schedule, it would be helpful in advance of

 2    the conference next week to hear when after June or July the

 3    Court is available because we do want to give the Court

 4    space, whatever space it needs, to do the work it has to do,

 5    mindful of the Court's schedule.  And so if you want to let

 6    us know, you know, later today or tomorrow what -- you know,

 7    what kind of your available window is.  This is set for a

 8    four-week trial.

 9              THE COURT:  Right.

10              MS. PATRICK:  And so what that looks like on the

11    Court's calendar, that would be helpful information, as well.

12              THE COURT:  Right.  We have blocked that amount of

13    time out, obviously.  If this changes to, in whole or in

14    part, a bench trial, the amount of time needed may look

15    different.  But we're blocking out the time we think we need

16    for a jury trial.  So that's why we will hold a month for

17    this, at least a month for this.

18              MS. PATRICK:  Great.

19              THE COURT:  So we will get back with you all on

20    that aspect of scheduling.

21              So I think in terms of the agenda that you

22    suggested, Ms. Patrick, this takes us through I think

23    everything up to part three.  And I know some of this is just

24    forward looking on trial procedures.

25              MS. PATRICK:  Right.
```

```
 1              THE COURT:  And I'm happy to visit about that a

 2     little bit.  I know that we're going to have a lot of time to

 3     have these discussions, so I'm just going to make one or two

 4     points.  And then if there's other things you want to cover,

 5     we can.

 6              The first is that your letter of last night

 7     anticipates I think what will definitely be the case, which

 8     is that this will absolutely be timed, that the parties will

 9     be timed.  You will have equal time, is my plan, at trial.

10     And we can hammer out, as we move down the road, the amount

11     of time and precisely how that's going to work.  But I will

12     tell you I think that helps in any case.  I actually think

13     that helps the lawyers in any case.  Having time limits is

14     very helpful.

15              And so I always consult with the parties about how

16     much time they think they need.  I'm not going to just decide

17     that and then tell you what it is.  I want to hear from both

18     sides about what kind of time limits you think makes sense,

19     and we will work that out.  What you laid out in your letter

20     about sort of the general parameters of when you're being

21     timed is pretty much dead on.  And I will just tell you I

22     tend not to ding on time for objections because I don't want

23     to discourage people from preserving important issues along

24     those lines.

25              I will also say I'm very intrigued about the notion
```

1    of interim argument.  Candidly, I've not, you know, had a

2    case where that's happened.  It's interesting to me.  I'm not

3    sure -- I'm not sure that that's something that I would be

4    comfortable doing, but I'm absolutely willing to hear about

5    that.  I don't know if you would like to talk about that a

6    little bit today or just down the road, Ms. Patrick.

7         MS. PATRICK:  We can talk about it down the road.

8    This comes from -- I worked with Judge Nancy Ellis (ph) on a

9    jury improvement project, and this is one of the things that

10   the jury improvement project recommended because in a long

11   trial, you know, the jury can get lost -- you know, "wait,

12   what is this about?  Why am I hearing this" -- and

13   particularly in cases like antitrust.  And I view these as

14   kind of bookends, the question of preliminary instructions

15   and the question of interim argument.

16        You know, the question of what is a relevant

17   product market.  The question about how they think about

18   market power, about a refusal to deal.  All of those kinds of

19   things.  A snip test.  All that stuff, right, is just not

20   something that -- I have great regard and respect for juries,

21   but, you know, until I started practicing antitrust law, I

22   didn't understand that stuff either, you know.  It's just not

23   intuitive.

24        And so we want to give them the help they need to

25   understand why they're sitting here hearing this, listening

 1    to this stuff.  And it's all about making sure the jury

 2    understands what is the law that frames their decision, and

 3    then how -- because if they don't get those instructions

 4    until the end, they can't -- it's hard to put the evidence --

 5    you know, it's like you don't stand up in a college class and

 6    give the syllabus at the end, you give the syllabus up front

 7    so that the students can follow.  And I kind of think that

 8    that is a really good way to help them.

 9            And we'll be happy to put some briefing together on

10    interim argument.  The Court has complete discretion, as you

11    know, on how you conduct the trial and what you think is

12    helpful.  But why does this matter?  You know, you just heard

13    all this stuff.  Let me give you five minutes on why this

14    mattered.  That's all.

15            THE COURT:  All right.

16            MS. PATRICK:  That's what that is.

17            THE COURT:  All right.  I'm going to let

18    Mr. Lanier -- if you have anything to say on, you know, the

19    fact that this is going to be a timed issue, the trial is

20    going to be timed, and the interim argument issue.

21            MR. LANIER:  Thank you, Your Honor.  On the timed

22    issue, that's just one that's got to be hammered out if it's

23    going to be fair and right and proper, and we can do that

24    with you directly, we can do that through the special master,

25    however you choose for us to initiate those dialogues with

1    people on what we can do.

2              Interim argument is something that I have found

3    defendants are big on.  I don't know Ms. Patrick's trial

4    time, but I can say that I've now tried 13 cases that have

5    gone into three months.  I don't know anybody else who's

6    tried that many.  And we've never used interim argument

7    because if you've got the lawyers who know what they're

8    doing, you don't need those types of things.  That's what

9    opening statement is.  You can hearken back to opening

10   statement with witnesses, and you can say in opening

11   statement, I told the jury this; now I would like to talk to

12   you, Mr. or Mrs. Witness, about these issues that we

13   discussed in opening.

14             A good opening statement is something that will

15   ride with the jury, and I've had no trouble in three-month

16   trials with that.  Here's where it becomes unfair and if it's

17   at least as it's generally proposed.

18             In a case, the plaintiff has the burden of proof.

19   We all know that.  In every state where I've tried a case and

20   in every federal court when it comes time to close, there's a

21   closing argument.  The plaintiff goes first, the defendant

22   goes second, and then the plaintiff is given a rebuttal.  I

23   say in every state because it's different in New Jersey.

24   I've tried two cases in New Jersey, and in -- three.  And in

25   New Jersey, the defendant goes first in closing argument and

1    the plaintiff goes last, and so it's like one huge rebuttal.

2    But other than that, it's always plaintiff, defense,

3    rebuttal, because of the burden of proof.

4         Interim arguments are only fair if there's truly

5    going to be argument, if it's plaintiff, defendant, and a

6    rebuttal.  Otherwise, what you've effectively done is

7    supplanted that important role of the plaintiff getting to

8    have the last word necessary for the burden of proof, and

9    have supplemented throughout the duration of a trial

10   sustaining the idea that the defendant gets the last word in

11   such an argument.

12        And so interim arguments I find to be out of -- out

13   of the playing field of normative and good.  And so we're

14   glad to brief this as well, but I appreciate you giving me a

15   chance to make my initial thoughts known.

16        THE COURT:  All right.  Thank you, Mr. Lanier.

17        So I think the other issues that are identified,

18   things like preliminary jury instructions, verdict form, and

19   other items or questions are probably matters we can leave

20   for down the road, unless there's one of those you think we

21   should talk about this morning, Ms. Patrick.

22        MS. PATRICK:  No, Your Honor.  I would just commend

23   to you the preliminary jury instructions idea comes out of

24   the ABA model Antitrust Instructions where Judge Sarah Vance

25   and the Blue Ribbon Panel unanimously recommended,

1    particularly in antitrust instructions, that once the jury's

2    impaneled, you -- you know, the statement of the case in the

3    pretrial order sort of does that, but it's not typically a

4    law-based statement of the case.  And that's really the way I

5    kind of think about it, is it's just one more piece of that

6    to tell them, okay, now you're about to hear, and this is

7    what that means, so that they have some ideas.  But we can

8    obviously brief that for you.

9           THE COURT:  Thank you, Ms. Patrick.

10          So let me ask the parties, is there anything else

11   today -- I'll start with the States, Mr. Lanier, anything

12   else today that you think we need to discuss?  Mr. Lanier?

13          MR. LANIER:  Your Honor, at the appropriate moment,

14   we think it's going to be very useful to plug in the special

15   master to some of the pretrial issues, whether that is in the

16   end of March, or May, or the fall, whatever it may be,

17   especially things like deposition designations and things

18   like that.  He knows these issues very well, and we think

19   that that would be useful.  And so we put that as a pin in it

20   for the Court to consider and for Special Master Moran to run

21   out the door out of fear because I've thrown that out there

22   and he may not want to do such things.  But we think that it

23   might be useful.

24          The other thing that I would bring to the Court's

25   attention is the Court issued a ruling on the chats issue,

1    and the Court noted the preservation of documents would begin

2    with the September 2019 date because that was when the

3    litigation seemed to have first surfaced and the obligation

4    would kick in under your order.

5             Your Honor, we are going to be asking for an in

6    camera review of certain privileged documents where the

7    privilege is in anticipation of litigation, and so that

8    privilege is asserted in pre-September 2019 documents.  And

9    so what the obligation to preserve is not until September

10   2019 because that's when there was a reasonable anticipation

11   of litigation.  Then the objection and privilege that it was

12   prepared in anticipation of litigation should evaporate, we

13   believe.  And so we will be asking for an in camera review of

14   those to go along with your order.  And whether that goes

15   through the special master first or you, we don't know.  But

16   those are the only other two issues that we have before you.

17            THE COURT:  All right.  I'm going to let you

18   respond if you want, Ms. Patrick, but just two points on what

19   you've just said, Mr. Lanier.  The first is I'm happy to

20   consider having the special master assist on some of the

21   things like deposition designations.  If you want to make a

22   submission about what you're asking for -- because remember

23   that the order the Court issued was that the special master

24   would be focused on discovery-related issues.  So if the

25   parties, or one party, or both parties, would like to have

1    the special master also assist with some particular pretrial

2    issues, then that suggestion would need to be made because

3    the Court would need to make some sort of a supplement or

4    amendment to its order that was already focused in terms of

5    what the special master would be doing, but I'm happy to get

6    a written submission on that.

7            On your second point, Mr. Lanier, I actually did

8    already see your filing.  In fact, I think the filing was

9    made yesterday, so, regarding a request for in camera review

10   that arises out of this Court's order on the chats issues and

11   the appropriate date when we have anticipation of litigation.

12   So that order was, as you know, from the Court came out I

13   believe last week, and your motion was just filed, so Google

14   obviously has not had time to respond.

15           But I understand that this is going to be an issue

16   for the parties and it may well be something that we involve

17   the special master in if it's involved in the camera review.

18           So Ms. Patrick, you don't have to respond on any of

19   this.  I know that the in camera review motion was literally

20   just filed.  So if there's anything you want to say, you can.

21           MS. PATRICK:  Your Honor, we'll respond in writing.

22   I think, you know, the key point from our perspective is that

23   in camera review isn't just because they want the Court to

24   see our privileged documents; they have to be seeking relief

25   in some form.  And the suggestion in the motion that the

1    Court had not made a determination on the retention date read

2    as though they had not read the Court's order from the

3    previous week.  The Court did make that determination.  And

4    the assertion that work product protection from other cases

5    raises an anticipation of litigation here was also something

6    the Court addressed in that order.  So we will go through all

7    of that, and the Court will make the decision it makes.

8            With regard to the special master, we'll obviously

9    see what the plaintiffs propose.  But to the extent this

10   pertains to trial evidence, we think that would require

11   consent from Google, and we do not intend to consent to trial

12   of any issue before -- no disrespect to Special Master, who

13   is highly qualified, but we don't intend to consent to the

14   trial of any issue before the special master, and I just want

15   to be clear about that.

16           THE COURT:  I mean, that's understood.  And, you

17   know, we'll see what the states submit in terms of the

18   potential involvement of the special master in the -- in what

19   I'm characterizing as pretrial matters, but I'm not sure

20   exactly what that's going to come to.  And if that suggestion

21   is made, I'll, of course, consider what both sides' position

22   is on that, on any such involvement.

23           All right.  Mr. Lanier, anything else from the

24   plaintiffs today?

25           MR. LANIER:  No, Your Honor.  But again, thank you

```
1    and your staff for letting me be a difficult person today.

2              THE COURT:  Well, I hope you're staying safe out

3    there.  Thank you, Mr. Lanier.

4              Ms. Patrick, anything else from --

5              MS. PATRICK:  Nothing further, Your Honor.  Very

6    helpful to hear from you today.  We appreciate it very much.

7              THE COURT:  All right.  Thank you, counsel.  As I

8    said, you'll hear from the Court likely today, and then we'll

9    set a conference very soon.

10             We'll stand in recess.  Thank you.

11             THE COURT SECURITY OFFICER:  All rise.

12                       (Adjourned 10:29 a.m.)

13                   *    *    *    *    *

14

15

16

17

18

19

20

21

22

23

24

25
```

1               CERTIFICATE OF OFFICIAL REPORTER

2

3

4        I, Gayle Wear, Federal Official Court Reporter, in

5 and for the United States District Court for the Eastern

6 District of Texas, do hereby certify that pursuant to Section

7 753, Title 28 United States Code, that the foregoing is a

8 true and correct transcript of the stenographically reported

9 proceedings held in the above-entitled matter and that the

10 transcript page format is in conformance with the regulations

11 of the Judicial Conference of the United States.

12

13               Dated 31st day of January 2025.

14

15

16            /s/ Gayle Wear
              GAYLE WEAR, RPR, CRR
17            FEDERAL OFFICIAL COURT REPORTER

18

19

20

21

22

23

24

25