**\*\* FILED UNDER SEAL \*\***

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

|  |  |
|---|---|
| The State of Texas, et al., | |
| Plaintiffs, | |
| v. | Case No. 4:20-cv-00957-SDJ |
| Google LLC, | Hon. Sean D. Jordan |
| Defendant. | |

## PLAINTIFF STATES' RESPONSE TO GOOGLE'S MOTION TO EXCLUDE AND STRIKE THE EXPERT TESTIMONY OF IGNATIUS GRANDE

**\*\* FILED UNDER SEAL \*\***

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ........................................................................... ii

**I.    INTRODUCTION** .................................................................................. 1

**II.   BACKGROUND** ................................................................................... 2

**III.  LEGAL STANDARD** ........................................................................... 4

**IV.   ARGUMENT** ...................................................................................... 5

    A.   Mr. Grande's eDiscovery and ESI preservation opinions and testimony are relevant, helpful, admissible expert testimony. ...............................5

        1.   Mr. Grande's eDiscovery and ESI preservation opinions are permissible testimony about issues that overlap with law; they are not legal conclusions themselves. ............................................... 6

        2.   Mr. Grande's eDiscovery and ESI preservation opinions are not inferences about the intent or motive of Google. ...................... 8

    B.   Mr. Grande is qualified to offer opinions about Google's burden to preserve and that relevant Chats were destroyed. ..............................9

        1.   Mr. Grande's opinion that it was not burdensome to preserve Chats is grounded in his expertise and does not rely on technical knowledge.................................... 10

        2.   Mr. Grande's opinion that relevant Chats were destroyed does not require data analytics or computer science.................................. 11

    C.   All of Mr. Grande opinions rebut Mr. Malkiewicz's opinions. .....................12

        1.   Each of Mr. Grande's opinions explicitly rebuts and disproves Mr. Malkiewicz's opinions and provide necessary context and explanation...................... 13

** FILED UNDER SEAL **

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Atlas Glob. Techs. LLC v. TP-Link Techs. Co.*,
   684 F. Supp. 3d 570 (E.D. Tex. 2023) (Payne, J.) ..................................................8

*Bethel v. Berkshire Hathaway Homestate Ins. Co.*,
   596 F. Supp. 3d 1260 (D. Colo. 2022) ..................................................................7

*Bradford v. Walmart Stores Tex., L.L.C.*,
   No. 23-40138, 2024 WL 658967 (5th Cir. Feb. 16, 2024) ......................................6

*Buddenberg v. Est. of Weisdack*,
   711 F. Supp. 3d 712 (N.D. Ohio 2024) ...............................................................4, 6

*Butler v. BNSF Ry. Co.*,
   No. 1:22-cv-00367-MJT, 2024 WL 2735020 (E.D. Tex. Mar. 26, 2024)
   (Stetson, J.) .............................................................................................................4

*C.P. Ints., Inc. v. Cal. Pools, Inc.*,
   238 F.3d 690 (5th Cir. 2001) ..................................................................................6

*Calsep, Inc. v. Intelligent Petroleum Software Sols., LLC*,
   No. 4:19-cv-1118, 2021 WL 1729169 (S.D. Tex. Apr. 29, 2021), *report &
   recommendation adopted by* 2021 WL 2493153 (S.D. Tex. Aug. 6, 2021) .....................4, 7, 9

*Carlson v. Bioremedi Therapeutic Sys., Inc.*,
   822 F.3d 194 (5th Cir. 2016) ..................................................................................5

*CEATS, Inc. v. TicketNetwork, Inc.*,
   2:15-CV-01470-JRG-RSP, 2018 WL 453732 (E.D. Tex. Jan. 17, 2018)
   (Payne, J.) ..........................................................................................................12, 13

*Charalambopoulos v. Grammer*,
   No. 3:14-CV-2424-D, 2017 WL 930819 (N.D. Tex. Mar. 8, 2017) ........................12

*Daubert v. Merrell Dow Pharms., Inc.*,
   509 U.S. 579 (1993) ................................................................................................5

*Est. of Sowell v. United States*,
   198 F.3d 169 (5th Cir. 1999) ..................................................................................6

** FILED UNDER SEAL **

*Gibson Brands, Inc. v. Armadillo Distrib. Enters., Inc.*,
   No. 4:19-CV-00358, 2020 WL 6581868 (E.D. Tex. Nov. 10, 2020) (Mazzant, J.) ...............................................................................................................................12

*GN Netcom, Inc. v. Plantronics, Inc.*,
   930 F.3d 76 (3d Cir. 2019) ..............................................................................................4

*Gree, Inc. v. Supercell Oy*,
   No. 2:19-cv-00071-JRG-RSP, 2020 WL 4059550 (E.D. Tex. July 20, 2020) (Payne, J.) .....................................................................................................................8

*Greger v. C.R. Bard, Inc.*,
   No. 4:19-CV-657-SDJ, 2021 WL 3855474 (E.D. Tex. Aug. 30, 2021) (Jordan, J.) ................................................................................................................................6

*Kumho Tire Co. v. Carmichael*,
   526 U.S. 137 (1999) ........................................................................................................5

*In re Local TV Advert. Antitrust Litig.*,
   No. 18-c-6785, 2023 WL 5607997 (N.D. Ill. Aug. 30, 2023) .....................................4

*Lofton v. McNeil Consumer & Specialty Pharms.*,
   No. 3:05-CV-1531-L (BH), 2008 WL 4878066 (N.D. Tex. July 25, 2008), *aff'd* 672 F.3d 372 (5th Cir. 2012) ...................................................................................6

*Mojo Mobility, Inc. v. Samsung Elecs. Co.*,
   No. 2:22-CV-00398-JRG-RSP, 2024 WL 3497905 (E.D. Tex. July 22, 2024) (Payne, J.) ...................................................................................................................12

*Morris v. GreCon, Inc.*,
   No. 9:16-CV-00035-RC, 2018 WL 11351310 (E.D. Tex. Dec. 20, 2018) (Clark, J.) ......................................................................................................................4

*Olney v. Job.com*,
   No. 1:12-CV-01724-LJO, 2014 WL 5430350 (E.D. Cal. Oct. 24, 2014) ...........................6, 9

*Pajak v. Under Armor, Inc.*,
   636 F. Supp. 3d 629 (N.D. W. Va. 2022) ...............................................................4, 6, 7, 9

*Pipitone v. Biomatrix, Inc.*,
   288 F.3d 239 (5th Cir. 2002) ..........................................................................................4

*Reitz v. Woods*,
   85 F.4th 780 (5th Cir. 2023) ...........................................................................................6

*Rimkus Consulting Grp., Inc. v. Cammarata*,
   688 F. Supp. 2d 598 (S.D. Tex. 2010) ...........................................................................7

**\*\* FILED UNDER SEAL \*\***

*Sec. & Exch. Comm'n v. Ambassador Advisors, LLC*,
    576 F. Supp. 3d 250 (E.D. Pa. 2021) ........................................................7

*In re State Farm Lloyds*,
    519 S.W.3d 647 (Tex. App. 2015) ............................................................13

*United States v. Chisley*,
    No. 22-40584, 2023 WL 4864811 (5th Cir. July 31, 2023) ......................4

*United States v. Perry*,
    35 F.4th 293 (5th Cir. 2022) ....................................................................5

**Other Authorities**

Fed. R. Civ. P. 26(a)(2)(B) ............................................................................12

Fed. R. Civ. P. 26(a)(2)(C) ............................................................................12

Fed. R. Civ. P. 26(a)(2)(D)(iii) ......................................................................12

Fed. R. Civ. P. 37, Advisory Committee's Note to 2015 Amendment ..........6

Fed. R. Evid. 702 ............................................................................................5

The Sedona Conference, *The Sedona Conference Glossary: E–Discovery &*
    *Digital Information Management* 48 (2d ed. 2007) ....................................7

The Sedona Conference, *The Sedona Principles: Best Practices*
    *Recommendations & Principles for Addressing Electronic Document*
    *Production* (2d ed. 2007) ............................................................................13

**\*\* FILED UNDER SEAL \*\***

## I.    INTRODUCTION

Google deleted millions of its employees' relevant Chats for years in violation of its duty to preserve.  The States designated Dr. Jacob Hochstetler to analyze the Google Chat ("Chat") Log Dataset—which contained information about employee Chat usage—and opine on the magnitude of Google's destruction.    To rebut Dr. Hochstetler's opinions, Google designated Michal Malkiewicz, who attempted to rebut Dr. Hochstetler but also went beyond Dr. Hochstetler's opinions and opined on a variety of Chat-related topics, including that: 1) Google's preservation policies aligned with industry standards and the Sedona Conference; 2) that no relevant Chats were spoliated; and 3) that Google's preservation policies were similar to the States.  *See, e.g.*, Dkt. 764-3 (Malkiewicz Rep.) at ¶¶ 21-23, 26, 28.  To rebut those Chat opinions, the States designated Ignatius Grande, a compliance consultant and preservation expert who has specialized in electronic discovery ("eDiscovery"), electronically stored information ("ESI"), and discovery forensics for over twenty years.

Mr. Malkiewicz did not fare well in his deposition, so Google now attempts to exclude Mr. Grande by rewriting Mr. Malkiewicz's opinions that Mr. Grande expressly rebuts.  Despite Mr. Malkiewicz's opinion being written in black & white, Google now backtracks, mischaracterizes, and obscures his opinions to claim, post-hoc, that he actually didn't opine on certain issues and therefore Mr. Grande's opinions are improper.  But that argument ignores a plain reading of Mr. Malkiewicz's opinions; which the States had to rebut.  If the Court excludes Mr. Grande's opinion now, Mr. Malkiewicz's erroneous eDiscovery and ESI preservation opinions will be unrebutted.

Moreover, exclusion would be wholly improper. Mr. Grande's opinions are admissible, relevant, and significant eDiscovery and ESI preservation expert opinions that are based on ***industry standards***, not legal conclusions.  eDiscovery and ESI preservation are complex, nuanced

**\*\* FILED UNDER SEAL \*\***

topics that are not intuitively known by lay juries, and Google's discovery practices and Chat spoliation is core to the parties' claims and defenses.  These topics are thus ripe for expert opinions.

And Mr. Grande is qualified to give those opinions.  He has worked in the eDiscovery industry for almost 25 years and even been a Court-appointed neutral forensic examiner.  Dkt. 764-5 at pp. 47-51 (Grande Rep., Appendix A: CV).  He has published articles, lectured at bar association programs and other professional and academic events, held discovery-related leadership positions, and even taught eDiscovery courses at a law school.  *Id.*  And he has worked on state and federal matters with companies large and small, conducted and advised on complex document collections, contributed to drafting of preservation policies, and has otherwise been involved with all aspects of the preservation issues in front of the factfinder.  *Id.*

Google's arguments against Mr. Grande go, if anywhere, to weight rather than admissibility.  Whether Google's eDiscovery and preservation practices were sufficient or aligned with industry standards are hotly contested issues.  The parties' experts presented their opinions, and the parties disagree who is correct.  But the answer is not exclusion; Mr. Grande is qualified on these topics, his opinions are relevant, reliable, and not legal conclusions, and they rebut Mr. Malkiewicz's opinions.  The Court should deny the motion so the jury can hear from the experts.

## II.     BACKGROUND

On July 15, 2024, the Special Master ordered Google to produce a set of "system-wide backend logs" containing information about Chats, which Google produced on August 26, 2024.  *See* Dkt. 558.  A month later, the States served Dr. Hochstetler's supplemental report opining how many Chats Google employees sent with History "Off."  Dr. Hochstetler did not opine on eDiscovery or ESI preservation polices or standards (or whether Google adhered to those policies or standards), or how Google trained employees to use Chats, or how employees did use Chats.  On November 26, 2024, Google served a report from Mr. Malkiewicz attempting to rebut Dr.

**\*\* FILED UNDER SEAL \*\***

Hochstetler's opinions *and* opined on all those other topics.  The States served Mr. Grande's report

rebutting Mr. Malkiewicz's express, but incorrect, opinions that:

1)    The information governance practices Google applied to Chats are "widespread" and generally accepted in the industry;[1]

2)    It is "normal and sensible" for companies to have data management policies that delete data, and, because Google deleted Chats pursuant to those policies, it did not violate any preservation obligations;[2]

3)    It was burdensome for Google to modify its Chat retention policies;[3]

4)    The produced logs that Dr. Jacob Hochstetler analyzed should not be used to determine Google employees' usage of Chat and History "Off";[4]

5)    Google employees did not use Chat for business-related communications;[5]

6)    The responsive rate of collected Chats was "low."[6]

7)    Google placed its custodians on timely, sufficient litigation holds;[7]

8)    The testimony of Google employees is better evidence of their Chat usage than Dr. Hochstetler's analysis of the logs;[8]

9)    The logs do not reflect Google employees' typical messaging volume;[9]

10)   Google's conduct in *Google Play* was different from its Chat conduct here;[10]

11)   The States have similar information governance practices as Google;[11]

12)   History "Off" had no impact on Google's Chat preservation;[12]

---

[1] Dkt. 764-3 ("Malkiewicz Rep.") at ¶ 20-23, 26, 28; *see* Dkt. 764-5 ("Grande Rep.") at ¶ 53-69.
[2] Malkiewicz Rep. at ¶ 20-23, 26, 28, 31; *see* Grande Rep. at ¶ 70-75
[3] Malkiewicz Rep. at ¶¶ 23, 25, 30, n. 45; *see* Grande Rep. at ¶ 76-88.
[4] Malkiewicz Rep. at ¶¶ 10.d, 10.k., 10.l., 12-14, 40-47, 87-88; *see* Grande Rep. at ¶¶ 89-93.
[5] Malkiewicz Rep. at ¶¶ 10.j, 12, 40-47, 59, 62, 76, 87-88; *see* Grande Rep. at ¶¶ 98-100.
[6] Malkiewicz Rep. at ¶¶ 59, 76, 82, 86-88, 92, 101-103; *see* Grande Rep. at ¶¶ 101-102.
[7] Malkiewicz Rep. at ¶¶ 18, 20-23, 28, 30-31, 62, 87; *see* Grande Rep. at ¶¶ 103-115.
[8] Malkiewicz Rep. at ¶¶ 40-47; *see* Grande Rep. at ¶¶ 94-95.
[9] Malkiewicz Rep. at ¶¶ 10.d, 40-45; *see* Grande Rep. at ¶¶ 96-97.
[10] Malkiewicz Rep. at ¶¶ 10.k., 10.l., 12-14, 40-43; *see* Grande Rep. at ¶ 116.
[11] Malkiewicz Rep. at ¶¶ 21, 22, 26; *see* Grande Rep. at ¶¶ 117-120.
[12] Malkiewicz Rep. at ¶¶ 59, 76, 82, 86-88, 92, 101-103; *see* Grande Rep. at ¶¶ 121-134.

**\*\* FILED UNDER SEAL \*\***

13)       A single Chat conversation can contain hundreds or thousands of Chats;[13]

14)       Employees do not send fewer Chat messages over the holidays.[14]

### III.    <u>LEGAL STANDARD</u>

Expert testimony is often required to explain industry standards. *See Butler v. BNSF Ry. Co.*, No. 1:22-cv-00367-MJT, 2024 WL 2735020, at \*5 (E.D. Tex. Mar. 26, 2024) (Stetson, J.).[15] This includes eDiscovery and ESI preservation; courts have held that experts can opine on a company's preservation practices and whether those practices met industry standards.[16,17,18] *Calsep, Inc. v. Intelligent Petroleum Software Sols., LLC*, No. 4:19-cv-1118, 2021 WL 1729169, at \*6 (S.D. Tex. Apr. 29, 2021) (eDiscovery expert testimony admitted where the "expert testified that there were files permanently deleted and that the way Defendants stored the data is not best practices.").

---

[13] Malkiewicz Rep. at ¶ 16; *see* Grande Rep. at ¶ 135.

[14] Malkiewicz Rep. at ¶¶ 10.e, 43, 99; *see* Grande Rep. at ¶¶ 136-137.

[15] *See also, e.g.*, *United States v. Chisley*, No. 22-40584, 2023 WL 4864811, at \*1 (5th Cir. July 31, 2023) (upholding district court decision admitting "expert testimony regarding the trucking industry's standards"); *Morris v. GreCon, Inc.*, No. 9:16-CV-00035-RC, 2018 WL 11351310, at \*6 (E.D. Tex. Dec. 20, 2018) (Clark, J.) (allowing expert testimony on industry standards).

[16] *See, e.g.*, *In re Local TV Advert. Antitrust Litig.*, No. 18-c-6785, 2023 WL 5607997, at \*10 (N.D. Ill. Aug. 30, 2023) (admitted expert testimony that "[a party's] preservation practices were deficient and below industry standards."); *Pajak v. Under Armor, Inc.*, 636 F. Supp. 3d 629, 638 (N.D.W.V. 2022) (admitting eDiscovery expert to opine "on industry standards and best practices related to e-discovery, device and data preservation, and litigation hold implementation and management."); *GN Netcom, Inc. v. Plantronics, Inc.*, 930 F.3d 76, 81, 85 (3d Cir. 2019) (granting motion for a new trial to allow party to present expert testimony of spoliation at trial.").

[17] As an example, courts have admitted eDiscovery expert opinions that a company's preservation practices were not compliant with eDiscovery standards and practices because (1) the company failed to take reasonable steps or execute a proper litigation hold; (2) files were deleted or lost; (3) the lost files were lost were permanently lost; (4) the deletion or lack of preservation was intentional; and (5) the lost materials were potentially relevant or responsive. *See Pajak*, 636 F. Supp. 3d 629, 640 ("[p]roposed testimony by [the eDiscovery expert] that Defendants . . . failed to take reasonable steps or execute a proper litigation hold is permitted").

[18] *Calsep, Inc.*, No. 4:19-cv-1118, 2021 WL 1729169, at \*5 ("expert testified that . . . [ESI] was permanently deleted . . . The expert further testified that the deletion was intentional"); *Buddenberg v. Est. of Weisdack*, 711 F. Supp. 3d 712, 821 (N.D. Ohio 2024) (considering ESI expert's opinion that deleted ESI was "likely irretrievable").

** FILED UNDER SEAL **

"The trial court's role as gatekeeper [under *Daubert*] is not intended to serve as a replacement for the adversary system . . . Thus, while exercising its role as a gate-keeper, a trial court must take care not to transform a *Daubert* hearing into a trial on the merits." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 249-50 (5th Cir. 2002) (quoting Fed. R. Evid. 702 advisory committee note). "[T]he rejection of expert testimony is the exception rather than the rule." *United States v. Perry*, 35 F.4th 293, 330 (5th Cir. 2022) (quotation omitted). Under *Daubert*, courts focus on three things: qualifications, helpfulness, and reliability. First, the standard for expert qualification is not stringent. "Differences in expertise bear chiefly on the weight to be assigned to the testimony by the trier of fact, not its admissibility." *Carlson v. Bioremedi Therapeutic Sys., Inc.*, 822 F.3d 194, 199 (5th Cir. 2016) (citation omitted). Second, the question of helpfulness sounds in fit and relevance; "[t]he basic standard of relevance ... is a liberal one." *Daubert*, 509 U.S. at 587. Third, reliability is a "flexible" inquiry that depends on the type of expertise and the opinions at issue. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999).

## IV.    ARGUMENT

### A.    Mr. Grande's eDiscovery and ESI preservation opinions and testimony are relevant, helpful, admissible expert testimony.

Mr. Grande's opinions on eDiscovery and ESI preservation are not legal conclusions. Mr. Grande's practice as a consultant is focused on advising clients on eDiscovery and ESI preservation. Grande Rep., Appendix A: CV. As such, Mr. Grande's opinions fall squarely within the bounds of his expertise and permissible expert testimony. *See* Ex. 1 (Grande Dep. Tr.) at 16:1-10 (". . . I have opined to whether or not Google preserved evidence in compliance with industry standards and practices."); *id*. at 130:13-132:19. Google argues that Mr. Grande should be excluded because he is an attorney and his opinions are "legal determinations" or that he "simply interpret[s] (and purport[s] to apply) the law." Mot. at 6, 7. But Google's arguments twists the

**\*\* FILED UNDER SEAL \*\***

fact that Mr. Grande opines on industry standard issues that arise in a legal context into somehow being improper legal conclusions.[19] This argument is non-sensical; exclusion would deprive the Court of significant expertise just because it happens to be litigation-adjacent.

### 1. Mr. Grande's eDiscovery and ESI preservation opinions are permissible testimony about issues that overlap with law; they are not legal conclusions themselves.

To exclude Mr. Grande, Google mischaracterizes as legal conclusions a number of his opinions that support his ultimate assessment, based on the facts before him, that Google's preservation practices did not comply with eDiscovery and ESI preservation industry standards and practices. Yet each of Mr. Grande's opinions that Google challenges has been permitted in connection with spoliation. For instance, courts have found it permissible for an expert like Grande to opine that: (1) Google had an obligation to preserve Chats under eDiscovery industry standards; (2) Google failed to take reasonable steps to preserve Chats and failed to execute a proper litigation hold; (3) because of Google's choices and actions, Chats were lost; (4) Chats were permanently and irretrievably lost; (5) Chats that were permanently lost were likely responsive and relevant; Google's preservation practices did not comply with eDiscovery industry standards and practices.
[20]  The mere fact that Mr. Grande's opinions address eDiscovery and ESI preservation industry

---

[19]Google cites almost exclusively to cases that are unrelated to eDiscovery or ESI preservation opinions. *See, e.g., C.P. Ints., Inc. v. California Pools, Inc*., 238 F.3d 690, 697 (5th Cir. 2001) (application of trademark law); *Reitz v. Woods*, 85 F.4th 780, 788–789 (5th Cir. 2023) (existence of probable cause); *Lofton v. McNeil Consumer & Specialty Pharms.,* No. 3:05-CV-1531-L (BH), 2008 WL 4878066, at *6 (N.D. Tex. July 25, 2008) (pharmaceutical warning labels); *Est. of Sowell v. United States*, 198 F.3d 169, 171 (5th Cir. 1999) (estate taxes); *Bradford v. Walmart Stores Tex., L.L.C*., No. 23-40138, 2024 WL 658967, at *2 n.1 (5th Cir. Feb. 16, 2024) (slip and fall injury); *Greger v. C.R. Bard, Inc*., No. 4:19-CV-657-SDJ, 2021 WL 3855474, at *10 (E.D. Tex. Aug. 30, 2021) (Jordan, J.) (serious manufacturing defect).

[20] *See Olney v. Job.com*, No. 1:12-CV-01724-LJO, 2014 WL 5430350 at *13 (E.D. Cal. Oct. 24, 2014) ("a significant portion of the parties' expert reports … is devoted to Plaintiff's degree of culpability in installing the file deletion programs and allowing them to run after the duty to preserve evidence arose"); *Pajak*, 636 F. Supp. 3d 629, 640-42 (permitting eDiscovery expert opinions on whether defendants "took reasonable, good faith, proportionate, and commonly

**\*\* FILED UNDER SEAL \*\***

standards that are shaped by legal standards and statutes does not somehow poison those opinions.[21]  *See Sec. & Exch. Comm'n v. Ambassador Advisors, LLC*, 576 F. Supp. 3d 250 (E.D. Pa. 2021) (admitting expert testimony on "industry custom and practices … shaped by legal frameworks" even though they "use the same terms of art and legal phrases").  Indeed, the phrases that Google argues render Mr. Grande's opinions "conclusions of law" are widely used in the eDiscovery and ESI preservation industries and in the materials that govern their standards and practices— materials that are not legal standards.[22]  *See Pajak*, 636 F. Supp. 3d 629, 641-42 (determining that eDiscovery expert opinions on "industry standards and best practices within the e-Discovery field, and whether the defendants complied with the same" were permissible opinions.)  Google's arguments are unavailing.  Further, the fact that Mr. Grande is a non-practicing attorney has no bearing on his ability to testify.  *See, e.g.*, *Waco Int'l, Inc. v. KHK Scaffolding Houston Inc*., 278 F.3d 523, 533 (5th Cir. 2002) (finding that "although, a lawyer may not testify as to purely legal matters, he or she may testify as to legal matters that involve questions of fact.").  Excluding his

---

accepted steps to preserve potentially relevant content," and opinions applying principles set out by The Sedona Conference); *Buddenberg v. Est. of Weisdack*, 711 F. Supp. 3d 712, 821 (N.D. Ohio 2024) (considering ESI expert's opinion that lost discovery was "likely irretrievable"); Fed. R. Civ. P. 37, Advisory Committee's Note to 2015 Amendment ("Although the rule focuses on the common-law obligation to preserve on the anticipation or conduct of litigation, courts may sometimes consider whether there was an independent requirement that the lost information be preserved. Such requirements arise from many sources.")*; Calsep, Inc.*, 2021 WL 1729169, at \*5 ("expert testified that . . . [ESI] was permanently deleted.").

[21] *See Bethel v. Berkshire Hathaway Homestate Ins. Co*., 596 F. Supp. 3d 1260, 1268 (D. Colo. 2022) (holding that applying "industry standards—some of which are derived from case law— does not constitute improper legal-conclusion testimony.").

[22] Google's argument that the use of the word "spoliation" renders Mr. Grande's opinions impermissible is unfounded: "Spoliation" is a term of art in the eDiscovery industry and is used regularly in the eDiscovery principles on which courts routinely allow experts to opine, such as The Sedona Conference materials.  *See Calsep, Inc.*, 2021 WL 1729169 at \*2 ("[s]poliation is the destruction or the significant and meaningful alteration of evidence." *Rimkus Consulting Grp., Inc. v. Cammarata*, 688 F. Supp. 2d 598, 612 (S.D. Tex. 2010) (quoting The Sedona Conference Glossary: E–Discovery & Digital Information Management (2d. ed.) 48 (2007)).

**\*\* FILED UNDER SEAL \*\***

opinions would only deprive the factfinder of relevant expertise about the facts underlying the factfinders' legal determinations.

> ### 2. *Mr. Grande's eDiscovery and ESI preservation opinions are not inferences about the intent or motive of Google.*

Google next attempts to exclude Mr. Grande by mischaracterizing his opinions as "state of mind" opinions, citing to specific deposition excerpts while omitting the testimony between those cites which clarifies the excerpts. Mot. at 6 (citing to Grande Dep. Tr. 39:1-10 and 41:13-20). In the disputed section, Mr. Grande opines on Google's own internal preservation memo:

> "Q. And so, sir, that's an opinion that when Google failed to preserve "History Off" chats, that it did so with a particular motive, right?
>
> A. I believe I was referencing a document that stated that, that is the document. …
>
> Q. You were opining on Google's intent, aren't you, there? …
>
> A. I don't know if I would say I'm opining on it . I would say Google attempted but I am, you know referencing a document there that has language that indicates that was the case.
>
> Q. … Sir, you're offering an opinion on the "why", right? The "why" certain chat messages were not preserved, aren't you? …
>
> A. I mean, my opinion there is really merely restating what was the content of the email that I'm referencing in that - - in that provision.").

*See* Ex. 1 at 39:11-17; 40:16-41:9. Mr. Grande is referencing an internal Google memo that states:

> "Google continues to be in the midst of several significant legal and regulatory matters . . . So we've got two requests of you and one change to announce . . . To help avoid inadvertent retention of instant messages, we have decided to make 'off the record' the Google corporate default setting for Google Talk."

Ex. 2. While experts may not testify as to a party's subjective intent or state of mind, courts in this district have held that experts "may testify as to the underlying facts that in his opinion may show [a party's] state of mind." *Atlas Glob. Techs. LLC v. TP-Link Techs. Co*., LTD., 684 F. Supp. 3d 570, 578 (E.D. Tex. 2023) (Payne, J.); *Gree, Inc. v. Supercell Oy*, No. 219CV00071JRGRSP, 2020 WL 4059550 (E.D. Tex. July 20, 2020) (Payne, J.). That is what Mr. Grande has done here.

**\*\* FILED UNDER SEAL \*\***

Moreover, in the specific context of failure to preserve ESI, Texas courts have permitted eDiscovery experts to testify to their conclusions that the deletion of documents was intentional based on a sufficient review of the underlying facts. *Calsep, Inc.*, 2021 WL 1729169, at \*5 ("[t]he expert further testified that the deletion was intentional, requiring advanced skill, and responding to the warning that the deletion would be irreversible"); *see also Olney v. Job.com*, No. 1:12-CV-01724-LJO, 2014 WL 5430350 at \*13 (E.D. Cal. Oct. 24, 2014) (admitted expert opinions included a "significant portion of the parties' expert reports … devoted to Plaintiff's degree of culpability in installing the file deletion programs and allowing them to run after the duty to preserve evidence arose."). A fulsome review of the transcript shows that Mr. Grande is not making "inferences about intent and motive" but is opining on the *underlying facts* that show Google's state of mind when. Grande Rep. at ¶ 69. That is the extent of his opinion, and it is permissible.

**B. <u>Mr. Grande is qualified to offer opinions about Google's burden to preserve and that relevant Chats were destroyed.</u>**

Courts have also held that experts are qualified to "give an expert opinion on industry standards and best practices related to e-discovery, device and data preservation, and litigation hold implementation and management" where the expert has experience in "counseling clients in discovery strategy and reasonable preservation and collection of discovery." *Pajak*, 636 F. Supp. 3d 629, 640. In particular, courts have held that experts meeting those qualifications can opine on whether a party "took reasonable, good faith, proportionate, and commonly accepted steps to preserve potentially relevant content." *Id*. Such experts may also opine as to whether the failure to take reasonable steps resulted in ESI being permanently deleted or otherwise lost. *Calsep, Inc.*, 2021 WL 1729169, at \*6. Mr. Grande has exactly these qualifications.

Google does not argue that Mr. Grande is unqualified to give expert opinions on eDiscovery or ESI preservation industry standards and best practices; instead, it moves the goalposts to argue

**\*\* FILED UNDER SEAL \*\***

that Mr. Grande is unqualified because he is "not an expert in quantitative data analysis or computer science." Mot. at 8. Google argues that two opinions require expertise in data analysis or computer science; (1) that it would not have been "burdensome or expensive" for Google developers to have put in place code that allowed administrators to save Google Chat messages for employees who were subject to one of the many litigation holds, and (2) that Google likely lost "millions" of Chats. *Id*. But Mr. Grande, based on his extensive experience in eDiscovery and ESI preservation, is qualified to opine on what is too burdensome or expensive for Google to retain; technical expertise that Google seeks to impose is not necessary to form those opinions.

### 1. Mr. Grande's opinion that it was not burdensome to preserve Chats is grounded in his expertise and does not rely on technical knowledge.

First, Mr. Grande does not offer opinions as to the technical feasibility of preserving Chats within Google's systems or suggest any specific technical implementation that Google should have put in place to preserve Chats. Instead, he leverages his experience with eDiscovery and ESI preservation systems and Google's statements in Google's *own documents* to opine on its ability to preserve Google Chats. Grande Rep. at ¶¶ 77-80. Notably, he is opining on the relative burden and expense of implementing the steps Google actually – albeit untimely – took to preserve Chats beginning in 2023. This is made clear in the paragraph cited by Google:

> "As noted below, it is my opinion that Google likely already had the capability to adjust it internal systems to save "all" Google Chat messages for employees who were subject to litigation holds based upon the services that Google was already providing to its customers."

*Id*. at ¶ 77. Mr. Grande supports that opinion by citing to statements by Google employees and internal Google documents indicating that Google had the capability to turn "History On" for all employees under legal holds at various points. *Id*. at ¶ 80; Ex. 1 at 281:17-283:2; 231:25-233:22.

Mr. Grande, who knows the time it takes to implement ESI preservation systems or alter policies within such systems from his decades of experience, further noted the short amount of

time that it took for Google to implement its "History On" solution once it was under scrutiny in the *Google Play* case. Grande Rep. at ¶ 80. Mr. Grande makes clear that he's opining on what an eDiscovery and ESI expert would view as reasonable within the industry in light of a company's self-documented and admitted capabilities. Google's argument that this opinion requires data analytics or computer science expertise is a ploy to keep the evidence of the shocking scope of its spoliation away from the jury. The court should not be fooled.

### 2. Mr. Grande's opinion that relevant Chats were destroyed does not require data analytics or computer science.

Second, Google also argues that Mr. Grande's opinion that Google lost "millions" of Chats requires expertise in data analytics and computer science. Mot. at 8. But Mr. Grande's report shows otherwise. Grande Rep. at ¶ 38 (relying on Prof. Hochstetler for the precise calculation of lost Chats), ¶ 122 (opining that "there were many Google Chat messages that were likely sent with History Off … [g]iven Google's retention policies, practices, and training and Dr. Hochstetler's analysis … and my review of how Google employees used Google Chat"). He relies on Dr. Hochstetler's analysis and marries it with his own experience and the available evidence to reach his opinion; that is permissible. Moreover, Mr. Grande made clear that he is not opining on a specific number of lost Chats by analyzing the Chat Log Dataset. Ex. 1 at 196:16-198:20; 261:14-262:22. Rather, he is opining on the general scope of the missing Chat information based on well accepted eDiscovery and ESI preservation standards and practices, on which he routinely advises clients as a consultant. *See id*. at 206:5-17 ("… A. In the context of my eDiscovery work, you know, we often have to extrapolate numbers based upon what we were provided and sometimes that's determining the emails or documents are missing from a certain period of time…"). In undertaking this task, Mr. Grande relied on Prof. Hochstetler's calculation of lost Chats and other

** FILED UNDER SEAL **

types of evidence that Mr. Grande routinely reviews in consultation with his eDiscovery clients when determining whether they deleted or are missing ESI.[23]

### C. All of Mr. Grande opinions rebut Mr. Malkiewicz's opinions.

Each of Mr. Grande's opinions directly rebut Mr. Malkiewicz's opinions. *See* Grande Rep. at pp. 2-3, ¶¶ 39-52 (Table of Contents and Summary of Opinions). Rebuttal expert opinions are those "intended solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B) or (C)." Fed. R. Civ. P. 26(a)(2)(D)(iii). An expert opinion satisfies Rule 26 when it "explains, repels, counteracts, or disproves evidence of the adverse party's initial report." *CEATS, Inc. v. TicketNetwork, Inc.*, 2:15-CV-01470-JRG-RSP, 2018 WL 453732, at *3 (E.D. Tex. Jan. 17, 2018) (Payne, J.);[24] *see also Charalambopoulos v. Grammer*, No. 3:14-CV-2424-D, 2017 WL 930819, at *15 (N.D. Tex. Mar. 8, 2017) (declining to exclude expert testimony that "paint[s] a more complete picture" of opposing parties' expert testimony).

Mr. Grande's opinions fit squarely within that standard. Even Google admita this; while arguing that Grande's opinions are "new," it then states that they do provide context for Mr. Malkiewicz's opinions. Mot. at 14. In other words, each of Mr. Grande's opinions at the very

---

[23] *See* Ex. 1 at 197:24-200:1 (concluding that Google employees under a hold likely sent millions of "History Off" messages every year by reviewing Prof. Hochstetler's analysis as an expert that "deal[s] often with statistical issues in the context of eDiscovery" *and also* reviewing documents and deposition transcripts in which Google employees indicated that (a) "they sent hundreds of Chats per day," (b) "many Google employees did not change from the default settings in Google Chat which were 'History Off' up until February of 2023," (c) "that many other Google employees were confused by whether history was on or off when they were sending Chats. In fact, noting in certain situations that the "Off" button looked like it was on or the on button looked like it was off," (d) "that many chats that were produced appear to be of a Swiss cheese nature where the "History On" was only on for part of the conversation," (e) "it was difficult for or impossible for employees to turn 'History On' because another employee had it "Off," and (f) "that in some situations after 24 hours history would automatically go off in certain Chats.").

[24] *See also Mojo Mobility, Inc. v. Samsung Elecs. Co*., No. 2:22-CV-00398-JRG-RSP, 2024 WL 3497905, at *2 (E.D. Tex. July 22, 2024) (Payne, J.); *Gibson Brands, Inc. v. Armadillo Distribution Enterprises, Inc*., No. 4:19-CV-00358, 2020 WL 6581868 (E.D. Tex. Nov. 10, 2020) (Mazzant, J.).

**\*\* FILED UNDER SEAL \*\***

least "***explains***" and "repels, counteracts, or disproves" Malkiewicz's opinions. *See CEATS, Inc.*, 2018 WL 453732, at \*3 (emphasis added).

### 1. *Each of Mr. Grande's opinions explicitly rebuts and disproves Mr. Malkiewicz's opinions and provide necessary context and explanation.*

Google stakes its argument on the fact that Mr. Malkiewicz "does not purport to be an 'e-Discovery expert'" and does not use the exact same words that Mr. Grande uses in his rebuttal. *See* Mot. at 12 (stating that Mr. Malkiewicz opines that Google's retention practices are widespread but "never" opines that they are generally accepted). These arguments are mere hand-waving; if that standard were law—that a party could cut-off rebuttals just by having an expert testify that they aren't an expert in a certain area even if they give an opinion in that area—it would encourage foul play. Thankfully, it is not. No matter his title, Mr. Malkiewicz offers several opinions on eDiscovery and ESI practices and standards that invited rebuttal by Mr. Grande. For example, Mr. Malkiewicz opines that:

> (1) Google's "data management policies" are "normal and sensible" and adhere to the eDiscovery principles set out by The Sedona Conference;[25],[26]
>
> (2) Google's information governance practices are "widespread" and rebuts Prof. Hochstetler's suggestion "that Google's information governance practices are unusual or cannot be explained by Google's business judgment alone";[27]
>
> (3) Google's information governance practices are similar to the chat preservation policies of Plaintiff States in order to show that Google complied with eDiscovery standards;[28]

---

[25] Malkiewicz Rep. at ¶ 23.

[26] Texas courts have recognized the role of The Sedona Conference as a source of eDiscovery industry standards and practices. *See, e.g.*, *In re State Farm Lloyds*, 519 S.W.3d 647, 655 n. 8 (Tex. App. 2015) (citing to Sedona Conference, The Sedona Principles: Best Practices Recommendations & Principles for Addressing Electronic Document Production (2d ed. 2007) and stating that "The Sedona Conference is a nonprofit legal policy research and education organization which has a working group comprised of judges, attorneys, and electronic discovery experts *dedicated to resolving electronic document production issues*." (emphasis added)).

[27] Malkiewicz Rep. at ¶ 21.

[28] Malkiewicz Rep. at ¶¶ 21-22, 26, 28.

**\*\* FILED UNDER SEAL \*\***

(4) Google's litigation hold instructions were timely and effective;[29] and,

(5) Google employees did not use Chats to discuss business topics or "topics relevant to this litigation," estimating that, at most, 15.2% of the chats that were lost were responsive.[30]

Yet Google ignores each of these opinions (and others) and instead attempts to confine Mr. Grande's opinions to rebutting only the paragraphs explicitly cited in the footnotes of his report. To make Mr. Grande's opinions seem "new," Google isolates the opinions next to specific paragraphs from Mr. Malkiewicz's report. But Google's charts and appendix are incomplete. Below is a correction of one of Google's charts to include the *other* Malkiewicz opinions that the challenged Grande opinion rebuts.[31]

| Challenged Grande Opinion | Malkiewicz Opinion Cited in Grande |
|---|---|
| "The Malkiewicz Report's opinion that Google placed custodians (more than the agreed-upon list) on timely, sufficient litigation holds is incorrect." § XV. | Many of agreed-upon custodians "were placed on hold ***after*** ... the beginning of 2022. Google placed many employees on hold (and thus suspended normal preservation processes for their documents), even if they were not agreed-upon custodians in this case."[32] |
| | Beginning in September 2019, Google issued litigation hold notices to numerous Googlers in connection with this case. . Googlers were instructed to "not use' Google Chat or any other 'messaging apps to discuss any topics covered' by their legal holds, but that, if they 'must do so,' to 'make sure the settings preserve the messages, such as switching 'history on.'"[33] |
| | ***Additional Malkiewicz Opinions that § XV Explains, Repels, Counteracts, or Disproves.*** |

---

[29] Malkiewicz Rep. at ¶¶ 20, 31, 62.

[30] Malkiewicz Rep. at ¶¶ 59, 87, 88, 103.

[31] A fully-corrected version Google's appendix is attached. *See* Appendix A.

[32] Malkiewicz Rep. at ¶ 20.

[33] Malkiewicz Rep. at ¶ 31.

** FILED UNDER SEAL **

> Google's information governance practices are not unusual, can be explained by Google's business judgment alone, are widespread and "many Plaintiff States have adopted similar."[34]
>
> Google's data management policies are "normal and sensible" under the principles set forth by The Sedona Conference.[35]
>
> Google employees "had an understanding of, and compliance with, the instructions given in the litigation holds as they pertain to Chat."[36]

The above makes the entirety of Mr. Malkiewicz's opinion clear. Google's failure to exhaustively list all of the *many* Malkiewicz paragraphs that contain these eDiscovery opinions does not render Mr. Grande's opinions that rebut them "new."[37] Google cannot trick the Court into closing a door that Google itself opened. Under Google's narrow reading of rebuttal opinions, an expert would be severely limited in explaining why an opposing expert is wrong. Yet that is not the standard. If Google did not want the States to designate an expert to opine on eDiscovery and ESI preservation issues, Mr. Malkiewicz should not have opined on them. But now that he has, the States have a right to rebut him.[38] For the reasons above, Google's motions should be denied.

---

[34] Malkiewicz Rep. at ¶ 21.

[35] Malkiewicz Rep. at ¶ 23

[36] Malkiewicz Rep. at ¶ 62.

[37] Moreover, Mr. Grande explicitly testified that his opinions rebut not only the Malkiewicz opinions cited in his footnotes, but those that appear throughout the Malkiewicz Report. *See* Ex. 1 (Grande Dep. Tr.) at 85:21-86:12 ("[Mr. Malkiewicz] has other statements throughout his report that -- that also address his belief that Google's practices were usual and sufficient and followed."), 112:12-23 ("[t]his statement was in the context of Mr. Malkiewicz's opinions, again, … starting with paragraph 21 where he states that these information governance are widespread, and throughout he provides his views on how Google followed its records retention and litigation hold policies."), 155:16-156:9, 159:2-14.

[38] If the Court does find that some of Mr. Grande's opinions are improper, it should take a less-drastic remedy than striking them; Google has not established the four-part test necessary to strike an expert opinion entirely. *See Betzel v. State Farm Lloyds*, 480 F.3d 704, 707 (5th Cir. 2007). Specifically, there is no prejudice to Google; as shown above, Mr. Malkiewicz already proffered opinions about the same topics that Mr. Grande opined on. The parties are therefore in an equal position.

** FILED UNDER SEAL **

DATED: January 24, 2024                          Respectfully submitted,

/s/ W. Mark Lanier                               /s/ Ashley Keller
W. Mark Lanier                                   Ashley Keller
Mark.Lanier@LanierLawFirm.com                    ack@kellerpostman.com
Alex J. Brown                                    Kiran N. Bhat
Alex.Brown@LanierLawFirm.com                     kiran.bhat@kellerpostman.com
Zeke DeRose III                                  2333 Ponce De Leon Boulevard
Zeke.Derose@LanierLawFirm.com                    Suite R-240
Jonathan P. Wilkerson                            Coral Gables, Florida 33134
Jonathan.Wilkerson@LanierLawFirm.com             (833) 633-0118
10940 W. Sam Houston Pkwy N.
Suite 100                                        Zina Bash (Bar No. 24067505)
Houston, TX 77064                                zina.bash@kellerpostman.com
(713) 659-5200                                   111 Congress Avenue, Suite 500
                                                 Austin, TX 78701
                                                 (512) 690-0990

**THE LANIER LAW FIRM, PLLC**                    /s/ Noah S. Heinz
                                                 Noah S. Heinz
                                                 noah.heinz@kellerpostman.com
                                                 1101 Connecticut Ave., N.W., Suite 1100
                                                 Washington, DC 20036
                                                 (202) 918-1123
                                                 **KELLER POSTMAN LLC**

*Counsel for Texas, Idaho, Louisiana (The Lanier
Law Firm only), Indiana, Mississippi, North
Dakota, South Carolina, and South Dakota*

*Submitted on behalf of all Plaintiff States*

**NORTON ROSE FULBRIGHT US LLP**
Joseph M. Graham, Jr.
joseph.graham@nortonrosefulbright.com
Geraldine Young
geraldine.young@nortonrosefulbright.com
1550 Lamar Street, Suite 2000
Houston, Texas 77010
(713) 651-5151

Marc B. Collier
Marc.Collier@nortonrosefulbright.com
98 San Jacinto Blvd., Suite 1100
Austin, Texas 78701
(512) 474-5201

**\*\* FILED UNDER SEAL \*\***

FOR PLAINTIFF STATE OF TEXAS

KEN PAXTON
Attorney General

*/s/ James R. Llloyd*
Brent Webster, First Assistant Attorney General of Texas
Brent.Webster@oag.texas.gov
James R. Lloyd, Deputy Attorney General for Civil Litigation
James.Lloyd@oag.texas.gov

**State of Texas, Office of the Attorney General**
P.O. Box 12548
Austin, TX 78711-2548
(512) 936-1674

*Attorneys for Plaintiff State of Texas*

**\*\* FILED UNDER SEAL \*\***

FOR PLAINTIFF STATE OF ALASKA:

TREG TAYLOR
ATTORNEY GENERAL


By: /s/ Jeff Pickett
Jeff Pickett
Senior Assistant Attorney General, Special Litigation Section
jeff.pickett@alaska.gov

*Attorney for Plaintiff State of Alaska*

**\*\* FILED UNDER SEAL \*\***

FOR PLAINTIFF STATE OF ARKANSAS:

TIM GRIFFIN
ATTORNEY GENERAL

By: _____
AMANDA J. WENTZ
Ark. Bar No. 2021066
Assistant Attorney General
Office of the Arkansas Attorney General
323 Center Street, Suite 200
Little Rock, AR 72201
(501) 682-1178
Amanda.Wentz@ArkansasAG.gov

*Attorney for Plaintiff State of Arkansas*

**\*\* FILED UNDER SEAL \*\***

FOR PLAINTIFF STATE OF FLORIDA:

John Guard, Acting Attorney General

<u>/s/ Lee Istrail</u>
LEE ISTRAIL, Assistant Attorney General
FL Bar No. 119216

LIZABETH A. BRADY, Director, Antitrust Division
R. SCOTT PALMER, Special Counsel and Chief of Complex Enforcement
ANDREW BUTLER, Assistant Attorney General
CHRISTOPHER KNIGHT, Assistant Attorney General

Office of the Attorney General, State of Florida
PL-01 The Capitol
Tallahassee, Florida 32399
Phone: 850-414-3300
Email: scott.palmer@myfloridalegal.com

*Attorneys for Plaintiff State of Florida*

**\*\* FILED UNDER SEAL \*\***

FOR PLAINTIFF STATE OF IDAHO:

RAÚL R. LABRADOR
Attorney General

*/s/ John K. Olson*
John K. Olson, Deputy Attorney General

Consumer Protection Division
Office of the Attorney General
954 W. Jefferson Street, 2nd Floor
P.O. Box 83720
Boise, Idaho 83720-0010
Telephone:   (208)   334-2424
john.olson@ag.idaho.gov

*Attorneys for Plaintiff State of Idaho*

**\*\* FILED UNDER SEAL \*\***

FOR PLAINTIFF STATE OF INDIANA:

THEODORE E. ROKITA
Attorney General

*/s/ Jesse J. Moore*
Jesse J. Moore
Deputy Attorney General – Consumer Litigation
302 W. Washington St.
IGCS - 5th Floor
Indianapolis, IN 46204-2770
Phone: (317) 234-1479
Fax: (317) 232-7979
Email: jesse.moore@atg.in.gov

*Attorneys for Plaintiff State of Indiana*

**\*\* FILED UNDER SEAL \*\***

FOR PLAINTIFF COMMONWEALTH OF KENTUCKY:

RUSSELL COLEMAN
Attorney General

*/s/ Philip R. Heleringer*
Christian J. Lewis, Commissioner of the Office of Consumer Protection
christian.lewis@ky.gov
Philip R. Heleringer, Executive Director of the Office of Consumer Protection
philip.heleringer@ky.gov
Jonathan E. Farmer, Deputy Executive Director of the Office of Consumer Protection
jonathan.farmer@ky.gov
Office of the Attorney General
Commonwealth of Kentucky
1024 Capital Center Drive, Suite 200
Frankfort, Kentucky 40601
Tel: 502-696-5300

*Attorneys for Plaintiff Commonwealth of Kentucky*

**\*\* FILED UNDER SEAL \*\***

FOR PLAINTIFF STATE OF LOUISIANA:

By: */s/ Patrick Voelker*
Liz Murrill, Attorney General
Michael Dupree, Assistant Attorney General
Patrick Voelker, Assistant Attorney General
Office of the Attorney General, State of Louisiana
Public Protection Division
1885 North Third St.
Baton Rouge, Louisiana 70802
(225) 326-6400
voelkerp@ag.louisiana.gov

*s/ James R. Dugan, II*
James R. Dugan, II (*pro hac vice*)
TerriAnne Benedetto (*pro hac vice*)
The Dugan Law Firm
365 Canal Street
One Canal Place, Suite 1000
New Orleans, LA 70130
PH:   (504) 648-0180
FX:   (504) 649-0181
EM:   jdugan@dugan-lawfirm.com
        tbenedetto@dugan-lawfirm.com

James Williams
CHEHARDY SHERMAN WILLIAM, LLP
Galleria Boulevard, Suite 1100
Metairie, LA 70001
PH:   (504) 833-5600
FX:   (504) 833-8080
EM:    jmw@chehardy.com

*Attorneys for Plaintiff State of Louisiana*

**\*\* FILED UNDER SEAL \*\***

FOR PLAINTIFF STATE OF MISSISSIPPI:

LYNN FITCH, ATTORNEY GENERAL
STATE OF MISSISSIPPI

By:    */s/ Garrett S. Mascagni*
       Garrett S. Mascagni
       Special Assistant Attorney General
       Consumer Protection Division
       Mississippi Attorney General's Office
       Post Office Box 220
       Jackson, Mississippi 39205
       Telephone: 601-359-4223
       Fax: 601-359-4231
       Garrett.Mascagni@ago.ms.gov

       *Attorney for Plaintiff State of Mississippi*

**\*\* FILED UNDER SEAL \*\***

FOR PLAINTIFF STATE OF MISSOURI:

ANDREW BAILEY
Attorney General

*/s/ Michael Schwalbert*
Michael.Schwalbert@ago.mo.gov
Missouri Attorney General's
Office
815 Olive St.
Suite 200
St. Louis, MO 63101
Tel: 314-340-7888

*Attorneys for Plaintiff State of Missouri*

**\*\* FILED UNDER SEAL \*\***

FOR PLAINTIFF STATE OF MONTANA:

AUSTIN KNUDSEN
Montana Attorney General


*/s/ Anna Schneider*
Anna Schneider
Montana Attorney General's Office
P.O. Box 200151
Helena, MT 59620-0151
Phone: (406) 444-4500
Fax: (406) 442-1894 Anna.Schneider@mt.gov


*/s/ Charles J. Cooper*
Charles J. Cooper
ccooper@cooperkirk.com
David H. Thompson
dthompson@cooperkirk.com
Brian W. Barnes
bbarnes@cooperkirk.com
Harold S. Reeves
hreeves@cooperkirk.com
COOPER & KIRK PLLC
1523 New Hampshire Avenue, NW
Washington DC 20036
Phone: (202) 220-9620
Fax: (202) 220-9601

*Attorneys for Plaintiff State of Montana*

**\*\* FILED UNDER SEAL \*\***

FOR PLAINTIFF STATE OF NEVADA:

AARON D. FORD
Attorney General
ERNEST D. FIGUEROA
Consumer Advocate


*/s/ Michelle C. Badorine*
Michelle C. Badorine, Senior Deputy
Attorney General
MNewman@ag.nv.gov
Lucas J. Tucker (NV Bar No. 10252)
Senior Deputy Attorney General
LTucker@ag.nv.gov
Office of the Nevada Attorney General
100 N. Carson St.
Carson City, Nevada 89701
Tel: (775) 684-1100

*Attorneys for Plaintiff State of Nevada*

**\*\* FILED UNDER SEAL \*\***

FOR PLAINTIFF STATE OF NORTH DAKOTA:

       **STATE OF NORTH DAKOTA**
       Drew H. Wrigley
       Attorney General


By:     */s/ Elin S. Alm*
       Elin S. Alm, ND ID 05924
       Assistant Attorneys General
       Consumer Protection & Antitrust Division
       Office of Attorney General of North Dakota
       1720 Burlington Drive, Suite C, Bismarck, ND 58503-7736
       (701) 328-5570
       (701) 328-5568 (fax)
       ealm@nd.gov

       *Attorneys for Plaintiff State of North Dakota*

**\*\* FILED UNDER SEAL \*\***

FOR PLAINTIFF COMMONWEALTH OF PUERTO RICO:

*/s/ Domingo Emanuelli-Hernández*

Domingo Emanuelli-
Hernández Attorney General
Thaizza Rodríguez Pagán
Assistant Attorney
General PR Bar No.
17177
P.O. Box 9020192
San Juan, Puerto Rico 00902-0192
Tel: (787) 721-2900, ext. 1201, 1204
trodriguez@justicia.pr.gov

Kyle G. Bates
HAUSFELD LLP
600 Montgomery Street, Suite 3200
San Francisco, CA 94111

*Attorneys for Plaintiff Commonwealth of Puerto Rico*

**\*\* FILED UNDER SEAL \*\***

FOR PLAINTIFF STATE OF SOUTH CAROLINA:

ALAN WILSON
Attorney General


/s/ *Mary Frances Jowers*
Mary Frances Jowers
Assistant Deputy Attorney General
W. Jeffrey Young
Chief Deputy Attorney General
C. Havird Jones, Jr.
Senior Assistant Deputy Attorney General
South Carolina Attorney General's Office
P.O. Box 11549
Columbia, South Carolina 29211-1549
Phone: 803-734-5855
Email: mjowers@scag.gov

Charlie Condon
Charlie Condon Law Firm, LLC
880 Johnnie Dodds Blvd, Suite 1
Mount Pleasant, SC 29464
Phone: 843-884-8146
Email: charlie@charliecondon.com

James R. Dugan, II (*pro hac vice*)
The Dugan Law Firm
365 Canal Street
One Canal Place, Suite 1000
New Orleans, LA 70130
Phone: (504) 648-0180
Email: jdugan@dugan-lawfirm.com


*Attorneys for Plaintiff State of South Carolina*

**\*\* FILED UNDER SEAL \*\***

FOR PLAINTIFF STATE OF SOUTH DAKOTA:

MARTY JACKLEY
Attorney General


*/s/ Jonathan Van Patten*
Jonathan Van Patten
Assistant Attorney General
Office of the Attorney General
1302 E. Highway 14, Suite 1
Pierre, SD 57501
Tel: 605-773-3215
jonathan.vanpatten@state.sd.us

*Attorney for Plaintiff State of South Dakota*

**\*\* FILED UNDER SEAL \*\***

FOR PLAINTIFF STATE OF UTAH:

Derek E. Brown
Utah Attorney General


*/s/ Matthew Michaloski*
Matthew Michaloski
Assistant Attorney General
Marie W.L. Martin
Deputy Division Director
Utah Office of the Attorney General
160 East 300 South, 5th Floor
P.O. Box 140811
Salt Lake City, UT 84114
mmichaloski@agutah.gov
Telephone: (801) 440-9825

*Attorneys for Plaintiff State of Utah and*
*as counsel for the Utah Division of Consumer Protection*

**\*\* FILED UNDER SEAL \*\***

## CERTIFICATE OF SERVICE

I certify that on January 24, 2024, this document was filed electronically in compliance with Local Rule CV-5(a) and served on all counsel who have consented to electronic service, per Local Rule CV-5(a)(3)(A).

*/s/ Marc B. Collier*
Marc B. Collier

## CERTIFICATE OF MOTION TO SEAL

I certify that contemporaneously with the filing of this Motion, Plaintiff States filed a motion to seal both this document and the attached exhibits.

*/s/ Marc B. Collier*
Marc B. Collier