**\*\* FILED UNDER SEAL \*\***

## IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | |
|---|---|
| The State of Texas, et al., | |
| Plaintiffs, | |
| | Case No. 4:20-cv-00957-SDJ |
| v. | |
| | Hon. Sean D. Jordan |
| Google LLC, | |
| Defendant. | |

## PLAINTIFF STATES' RESPONSE TO GOOGLE'S MOTION TO EXCLUDE AND STRIKE THE EXPERT TESTIMONY OF JACOB HOCHSTETLER

**\*\* FILED UNDER SEAL \*\***

# TABLE OF CONTENTS

I.   **INTRODUCTION** ............................................................................................ 1

II.   **BACKGROUND** ............................................................................................. 3

III.  **LEGAL STANDARD** ..................................................................................... 5

IV.  **ARGUMENT** .................................................................................................. 6

    A.  Dr. Hochstetler's Log Dataset Opinions Should Not Be Excluded .................................6

        1.  Dr. Hochstetler's Log Dataset Opinions Are Relevant and Reliable. ..................... 6

        2.  The Log Dataset Opinions Would Not Unduly Prejudice Google. ......................... 8

    B.  Dr. Hochstetler's Deletion Opinions Should Not Be Excluded .......................................9

        1.  Dr. Hochstetler Is Qualified to Provide His Deletion Opinions. ........................... 10

        2.  Dr. Hochstetler's Deletion Opinions Are Reliable. ............................................... 12

        3.  Dr. Hochstetler's Deletion Opinions Are Relevant. ............................................... 14

        4.  Dr. Hochstetler's Deletion Opinions Are Not Unduly Prejudicial. ....................... 15

V.   **CONCLUSION** .......................................................................................... 15

**\*\* FILED UNDER SEAL \*\***

## TABLE OF AUTHORITIES

**Cases**                                                                                                                               **Page(s)**

*Carlson v. Bioremedi Therapeutic Sys., Inc.*,
   822 F.3d 194 (5th Cir. 2016) ....................................................5

*Charles v. K-Patents, Inc.*,
   No. 1:17-CV-339, 2020 WL 1480734 (E.D. Tex. Mar. 19, 2020) .........................13

*Daubert v. Merrell Dow Pharms., Inc.*,
   509 U.S. 579 (1993).....................................................5, 6

*In re Google Play Store Antitrust Litig.*,
   664 F. Supp. 3d 981 (N.D. Cal. 2023) ...............................7

*In re Google Play Store Antitrust Litig.*,
   No. 20-CV-05671, 2024 WL 3302068 (N.D. Cal. July 3, 2024).........................2, 7

*Jahn v. Equine Servs., PSC*,
   233 F.3d 382 (6th Cir. 2000) ....................................................14

*Kumho Tire Co. v. Carmichael*,
   526 U.S. 137 (1999)......................................................5

*Lyondell Chem. Co. v. Albemarle Corp.*,
   No. 1:01-CV-890, 2007 WL 9711338 (E.D. Tex. May 31, 2007)....................13, 14

*McCune v. Graco Children's Prods., Inc.*,
   495 F. App'x 535 (5th Cir. 2012) ................................................6, 14

*United States ex rel. Mitchell v. CIT Bank, N.A.*,
   No. 4:14-CV-00833, 2022 WL 1233651 (E.D. Tex. Apr. 26, 2022).......................7

*Nat'l Union Fire Ins. Co. v. Smith Tank & Steel, Inc.*,
   No. 3:11-CV-00830, 2014 WL 12690177 (M.D. La. Nov. 6, 2014).......................7

*Nelson v. Sunbeam Prods., Inc.*,
   579 F. Supp. 3d 857 (E.D. Tex. 2022) .............................................9, 15

*Pipitone v. Biomatrix, Inc.*,
   288 F.3d 239 (5th Cir. 2002) ....................................................5

*United States v. Perry*,
   35 F.4th 293 (5th Cir. 2022) ....................................................5

**\*\* FILED UNDER SEAL \*\***

*Van Winkle v. Rogers*,
    82 F.4th 370 (5th Cir. 2023) ...............................................................................................4, 5

**Rules and Statutes**

Fed. R. Evid. 403 ...............................................................................................8, 9, 15

Fed. R. Evid. 702 ...............................................................................................5, 6, 11

**\*\* FILED UNDER SEAL \*\***

## I.  INTRODUCTION

Google improperly deleted millions of its employees' Chats and all but a tiny sliver of log metadata about those Chats. Google now tries to grind that sliver into dust and sweep its misconduct under the rug by seeking to disqualify the States' expert witnesses on this issue. Google's core argument for the exclusion of these experts is audacious – specifically, that because Google destroyed <u>so much</u> of the chats and log metadata, there is simply not enough left to permit anybody to form an opinion. Recognizing the ethical quagmire Google's argument portends, courts have repeatedly considered and rejected such arguments. The States' expert, Dr. Hochstetler, used his expertise in computer science to perform a technical analysis of <u>all</u> undestroyed Chat metadata and extrapolated from that analysis the number of Chats that were likely destroyed by Google – that is all that can be asked and all that is required. His methodology was sound, reliable, and reproducible, and his analysis of these highly technical log files is necessary to aid the Court and jury in understanding Google's conduct with respect to Chats. Notably, Google does not challenge Dr. Hochstetler's core technical analysis, but instead invents imaginary hurdles and hoops over and through which it claims he failed to jump. But any paucity in the data analyzed by Dr. Hochstetler is attributable solely to Google, and any evaluation of his opinions must be tethered to the facts of this case, not a hypothetical world where more, or different, data is available.

The need for Dr. Hochstetler's analysis is also clear; despite being aware of the States' investigation of its AdTech business since at least September 2019 and issuing litigation holds starting in October 2019, *see* Dkt. 585, Google took no affirmative steps to ensure the preservation of relevant communications among its employees. Google's ordinary settings included a "History" setting for each chat message. By default, "History" was set to off, and the chat message would be automatically deleted after 24 hours. Ex. 1 (Hochstetler Supp. Rpt.) at ¶¶ 13, 18, 20. Rather than take action on a system level, Google wrote a letter to its personnel, asking them to preserve their

**\*\* FILED UNDER SEAL \*\***

relevant Chats and other documents (without explaining what was relevant). *Id.* at 18. Google did not monitor compliance, instead permitting their existing processes to destroy communications – even if that employee was under a litigation hold. Determining whether and how many Chats were sent with History "Off" is thus crucial to determining the magnitude of Google's spoliation.

The only way to determine whether Google employees sent or received Chat messages with History "Off" is by analyzing a system-wide backend log that contains entries that detail the actions that employees take within the Google Chat application, including whether they send a Chat message is sent with History "On" or "Off." *Id.* at 23. The States requested such logs and, after a motion to compel and an order from the Special Master, Google begrudgingly produced a limited set (the "Log Dataset") covering 68 days and five employees who happened to be custodians in both this case and the *Play* litigation where Google had previously been sanctioned for spoliating Chats. *In re Google Play Store Antitrust Litig.*, No. 20-CV-05671, 2024 WL 3302068, at \*15 (N.D. Cal. July 3, 2024) (issuing permissive adverse inference instruction to jury as additional sanction under the same fact pattern). The States requested Dr. Jacob Hochstetler analyze the produced Log Dataset to evaluate Google employees' Chat usage, including determining the quantity of Chats that were sent or received with History "Off."

Google seeks to exclude those opinions about that Log Dataset, arguing that Dr. Hochstetler was not able to prove that deleted Chats were relevant to this case and that the Log Dataset was not representative of Google's employees and therefore not reliable. Google's arguments should put it on the horns of a dilemma: either it produced relevant information sufficient to show how many Chats were sent with History "Off," or it deleted that information knowing that the data it produced was not relevant, and it should be sanctioned for its discovery failure. Instead, Google constructs a series of *ipse dixit* arguments devoid of evidence or expert testimony and instead asks

**\*\* FILED UNDER SEAL \*\***

this Court to endorse its unilateral failure to preserve mountains of evidence by excluding Dr. Hochstetler's analysis of the only evidence that remains.

Google's tactics should not be rewarded. Dr. Hochstetler is qualified to analyze and opine on the Log Dataset; his credentials as a computer scientist are unchallenged. While Google asserts that Dr. Hochstetler is not an expert in statistics, Google ignores that Dr. Hochstetler's analysis is grounded in computer science and, in any event, he has published papers and has work experience using statistics to analyze large datasets. Dr. Hochstetler's opinions are relevant because the actions of Google's employees and the quantity of Chats deleted further help educate and inform the Court and the jury about the reasonableness of Google's "preservation efforts." And Dr. Hochstetler's methodology is reliable – his actions and methodology were painstakingly laid out in his reports, including the source code he wrote to analyze the logs; Google does not challenge the repeatability of Dr. Hochstetler's analysis to the <u>entire</u> set of produced data.

Google's problem is thus not with _how_ Dr. Hochstetler formed his opinions, but with what the opinions _are_. That is not the basis for a motion to exclude; that is left for cross-examination at trial. The Court should not engage with Google's gamesmanship; following existing precedent, the Court should determine that Google has failed to show that Dr. Hochstetler's opinions should be excluded and deny the motion.

## II.  BACKGROUND

On October 4, 2019, Google started issuing litigation holds relevant to this case. Ex. 1 (Hochstetler Supp. Rpt.) at Ex. D. Between 2019 and 2021, Google issued 141 litigation holds to custodians, with an additional 47 holds issued between 2022 and 2024. According to Google's ███████████████████████████████, Google's litigation holds merely instructed recipients to preserve Chat messages. _Id._ at ¶ 18, Ex. 2 (Hochstetler Dep.) at 262:22-264:22. Google did not monitor recipients for compliance, instead leaving it to individual recipients to

**\*\* FILED UNDER SEAL \*\***

comply. Ex. 1 (Hochstetler Supp. Rpt.) at ¶ 18, Ex. 2 (Hochstetler Dep.) at 262:22-264:22. It was not until February 2023 that Google enforced mandatory preservation of messages. Ex. 1 (Hochstetler Supp. Rpt.) at ¶ 18.

On July 15, 2024, the Special Master ordered that Google produce a set of "system-wide backend logs" to the States that contained information regarding Chats. Dkt. 558. Google produced those logs on August 26, 2024, which contained 68 days of data for five custodians. The States asked Dr. Hochstetler to analyze those produced logs. As Google admits, Dr. Hochstetler is a qualified expert in computer science. Mot. at 9. Dr. Hochstetler has performed log analysis for Los Alamos National Labs, Ex. 2 (Hochstetler Dep.) at 13:8-14:24, and has published statistical analysis for Los Angeles County to enhance its police deployments. *Id.* at 23:24:12, 256:9-257:2. Dr. Hochstetler's experience in computer science and statistical analyses qualifies him as an expert. *Van Winkle v. Rogers*, 82 F.4th 370, 379 (5th Cir. 2023) ("Experience alone can provide a sufficient foundation for expert testimony."). A month after Google produced the logs, Dr. Hochstetler produced a supplemental expert report, analyzing the information in the logs to determine how many Chats were sent with history "off" and thus not preserved by Google's systems.

In that report, Dr. Hochstetler described the content of the Log Dataset, how he analyzed the Log Dataset (including the source code he used to perform such analysis), and what conclusions he drew from that analysis. *Id.* Dr. Hochstetler further quantified the individual actions by each person in the Log Dataset ("Log Dataset Opinions"). *Id.* He then compared that data against the limited Chat production that had taken place to develop a conservative estimate of the Chats that had not been preserved ("Deletion Opinions").[1] He also evaluated deposition testimony and

---

[1] What Google calls "Generalized Opinions" are extrapolations from the only set of logs that Google did not destroy, and provide information regarding the annualized number of chats that Google permitted to be destroyed.

**\*\* FILED UNDER SEAL \*\***

documentary evidence related to Chats and Google's document preservation and determined that these records validated his analysis. Based on his analysis, Dr. Hochstetler determined that Google failed to preserve millions of Chat messages in 2022 alone. Ex. 1 (Hochstetler Supp. Rpt.) at ¶ 82.

### III. LEGAL STANDARD

"The trial court's role as gatekeeper under *Daubert* is not intended to serve as a replacement for the adversary system.' . . . Thus, while exercising its role as a gatekeeper, a trial court must take care not to transform a *Daubert* hearing into a trial on the merits." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 249-50 (5th Cir. 2002) (quoting Fed. R. Evid. 702 advisory committee note). "The rejection of expert testimony is the exception rather than the rule." *United States v. Perry*, 35 F.4th 293, 330 (5th Cir. 2022) (quoting Fed. R. Evid. 702 advisory committee's notes (2000)).

Under *Daubert*, courts focus on three things: qualifications, relevance, and reliability. The standards are not stringent. For example, with respect to qualifications, "Rule 702 does not mandate that an expert be highly qualified in order to testify about a given issue. Differences in expertise bear chiefly on the weight to be assigned to the testimony by the trier of fact, not its admissibility." *Carlson v. Bioremedi Therapeutic Sys., Inc.*, 822 F.3d 194, 199 (5th Cir. 2016) (citation omitted). As with qualifications, the standard is not determining whether an expert's testimony is helpful. Rather, "the basic standard of relevance . . . is a liberal one." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 587 (1993). And reliability is a "flexible" inquiry that depends on the type of expertise and the opinions at issue. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999). The touchstone for reliability is that the expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.* at 152. In keeping with that touchstone, "experience alone can provide a sufficient foundation for expert testimony." *Van Winkle*, 82 F.4th at 379 (citing Fed. R. Evid. 702, Advisory Committee Notes on 2000 Amendments).

** FILED UNDER SEAL **

## IV. ARGUMENT

Dr. Hochstetler is a well-qualified expert who conducted a repeatable, scientific analysis and, based on that analysis, opined on specific, relevant issues that will assist the factfinder in determining Google employees' usage of Chat and the magnitude of Google's spoliation of Chat messages sent with History "Off." Those opinions should be admitted, and there is no reasonable basis to exclude them.

### A. Dr. Hochstetler's Log Dataset Opinions Should Not Be Excluded

Google's motion to exclude Dr. Hochstetler's opinions as to the Log Dataset should be denied. Google does not challenge Dr. Hochstetler's qualifications to perform his analysis. Instead, it argues that Dr. Hochstetler's opinions are irrelevant, unreliable, and prejudicial. For the following reasons, Google's argument fails, and the Court should deny the Motion.

#### 1. Dr. Hochstetler's Log Dataset Opinions Are Relevant and Reliable.

Google's argument that Dr. Hochstetler's Log Dataset opinions are neither relevant nor "helpful" is supported by neither facts nor law. The Fifth Circuit and the plain language of Section 702 rebut Google's relevance argument. "[T]estimony is relevant if it helps 'the trier of fact to understand the evidence or to determine a fact in issue.'" *McCune v. Graco Children's Prods., Inc.*, 495 F. App'x 535, 539 (5th Cir. 2012) (quoting Fed. R. Evid. 702(a)); *see also Daubert*, 509 U.S. at 591-92. Dr. Hochstetler reviewed a metadata log for five custodians that were subject to litigation holds in this case; these same custodians were also subject to a litigation hold in another, case. Mot. at 2; Ex. 2 (Hochstetler Dep.) at 259:3-22. These logs are lengthy, complex, and technical; they cannot be parsed by a layperson. Dr. Hochstetler wrote custom source code to analyze these logs and Google concedes that analysis is correct. Ex. 1 (Hochstetler Supp. Rpt.) at Apps. C-D. Despite being subject to <u>multiple</u> litigation holds, Google does not deny that none of the five custodians (or indeed anyone involved in Chats with them) turned Chat history on at any

**\*\* FILED UNDER SEAL \*\***

point in time up until Google forced retention of Chats on February 8, 2023. *Id.* at ¶ 7(b). Google does not deny that approximately 18,566 of 21,269 messages sent over the 68-day period covered by the Log Dataset were sent or received with History "Off" and thus not retained. *Id.* And Google does not deny that it did not monitor employees' compliance with its litigation holds, beyond sending periodic follow-up emails reminding employees that they were under a hold. *Id.* at ¶ 18. Dr. Hochstetler's analysis setting forth and applying these uncontroverted facts helps the finder of fact understand the complex, technical evidence at issue in the Spoliation Motion (Dkt. 693) and at trial. *See also In re Google Play Store Antitrust Litig.* ("*Play*"), 664 F. Supp. 3d 981, 993-94 (N.D. Cal. 2023) (characterizing Google's practices as "a 'don't ask, don't tell' policy for Chat preservation, at the expense of its preservation duties" and ordering monetary sanctions); *In re Google Play Store Antitrust Litig.*, 2024 WL 3302068, at *15 (issuing permissive adverse inference instruction to jury as additional sanction under the same fact pattern).

Because it cannot find fault with Dr. Hochstetler's <u>technical</u> analysis, Google instead seeks to cast Dr. Hochstetler's opinion as unreliable because he "has no opinion on whether a single message with 'history off' was relevant to this lawsuit." Mot. at 7. But that is a red herring that conflates the issue of relevance with the technical analysis of the number of messages that were destroyed by Google. Experts need not provide an opinion on the ultimate legal question to be helpful to the jury, and in any event, Mr. Grande relied on Dr. Hochstetler's analysis in opining on the relevance of these deleted Chats. *See, e.g.*, *United States ex rel. Mitchell v. CIT Bank, N.A.*, No. 4:14-CV-00833, 2022 WL 1233651, at *3-5 (E.D. Tex. Apr. 26, 2022) (holding that experts may rely on the opinions of other experts in forming the ultimate conclusion); *Nat'l Union Fire Ins. Co. v. Smith Tank & Steel, Inc.*, No. 3:11-CV-00830, 2014 WL 12690177, at *5 (M.D. La. Nov. 6,

**\*\* FILED UNDER SEAL \*\***

2014) ("[A]n expert cannot be an expert in all fields, and it is reasonable to expect that experts will rely on the opinion of experts in other fields as background material for arriving at an opinion.").

Nor is the time period relevant. While Google argues that the Log Dataset is irrelevant because it "covered a time period years after the start of this lawsuit . . . , long after the core conduct Plaintiffs claim created liability in this case," Mot. at 8, the record demonstrates that relevant Google conduct continued long after the filing of the complaint, including during the pendency of the Log Dataset. Dkt. 770 at 4, Exs. 4-9 ("[R]elevant conduct occurred from 2019-2023."). Google's argument that the Log Dataset covers an irrelevant time period therefore fails.

Even Google's expert found Dr. Hochstetler's methodology reliable. At deposition, Mr. Malkiewicz testified that he "believe[d] both Professor Hochstetler and I have close to a perfect certainty on the pattern of switching on and off for those five employees." Ex. 3 (Malkiewicz Dep.) at 134:15-17. As Google's expert agrees with Dr. Hochstetler regarding the data of the Log Dataset, there should be no dispute as the reliability of Dr. Hochstetler's methodology.

Accordingly, the Court should find that Dr. Hochstetler's analysis of the Log Dataset is relevant and reliable, and deny the motion.

### 2. *The Log Dataset Opinions Would Not Unduly Prejudice Google.*

Google will not be unduly prejudiced by Dr. Hochstetler's relevant, reliable opinions about Google employees' Chat usage, and Google's Chat spoliation. Google does not challenge Dr. Hochstetler's qualifications to perform his Log Dataset analysis. Instead, Google argues, without citation, that the jury will be "incurably confused" by Dr. Hochstetler opining on two topics. Google's argument fails as a matter of law.

First, Google fails to weigh prejudice against probative value, as required under Federal Rule of Evidence 403. This factor alone is dispositive – as shown in Section IV(A)(1), Dr.

** FILED UNDER SEAL **

Hochstetler's opinions are relevant to the issues before this Court, both with respect to the States' Spoliation Motion, Dkt. 693, and with respect to trial.

Second, the mere fact that Dr. Hochstetler has opinions about discrete topics is not disqualifying; experts are permitted to testify regarding multiple discrete topics. In *McDaniels v. Ross*, the defendant similarly challenged an expert who was to testify on both accident reconstruction and Federal Motor Carrier Safety Regulations, which the court summarily denied. No. 2:17-CV-240-Z-BR, 2020 WL 5901120, at *2 (N.D. Tex. Feb. 6, 2020).

Third, Google's argument is merely a recitation of its belief that Dr. Hochstetler's analysis is not relevant to this case, because it relies on a log created for and produced in another case. But Google does not assert the Log Dataset is missing messages or logs; to the contrary, the Log Dataset is comprehensive. Google further ignores that the custodians Dr. Hochstetler analyzed were <u>also</u> under litigation hold in this case, and that being subject to litigation holds in multiple cases should result in <u>more</u> Chats being preserved, not fewer.

Exclusion under Rule 403 is "an extraordinary measure that should be used sparingly." *Nelson v. Sunbeam Prods., Inc.*, 579 F. Supp. 3d 857, 875 (E.D. Tex. 2022). As Google failed to demonstrate any prejudice, let alone substantial prejudice, that would result from Dr. Hochstetler's opinions being heard by the jury or even to weigh the probative value of his opinions, the Court should deny Google's Motion as to the Log Dataset Opinions.

## B. Dr. Hochstetler's Deletion Opinions Should Not Be Excluded

Google's motion to exclude Dr. Hochstetler's Deletion Opinions should also be denied. Google does not challenge Dr. Hochstetler's technical expertise, but argues without evidence that a higher level of statistical expertise is required to extrapolate the overall number of lost Chats from the log metadata. At root, Google contends both that Google destroyed so much information that Dr. Hochstetler cannot perform a reasonable analysis on what remains and that Dr. Hochstetler

** FILED UNDER SEAL **

cannot adequately prove that "relevant" Chats were destroyed. Dr. Hochstetler, however, is an expert in data log analysis and extrapolation based on large datasets. His analysis of the entirety of Google's produced data is as reliable as possible given Google's failure to adequately preserve Chats and corresponding metadata. Accordingly, the Court should decline to reward Google for its destruction of records, find that Dr. Hochstetler is qualified to present his opinions, that his opinions are reliable, relevant, and not unduly prejudicial, and deny Google's Motion.

### 1. Dr. Hochstetler Is Qualified to Provide His Deletion Opinions.

This Court should find that Dr. Hochstetler is well-qualified to offer his Deletion Opinions. Google's qualifications argument stems from an alleged failure to show that the <u>entirety</u> of the data produced by Google was statistically significant. But as the Fifth Circuit held in *Bunch v. Bullard*, the Court "cannot permit an employer to escape liability for discriminatory tactics merely because his work force is not vast enough to provide meaningful data for a sophisticated statistical evaluation." 795 F.2d 384, 395 (5th Cir. 1986). To be clear, Google does not challenge Dr. Hochstetler's actual analysis. It does not challenge that Google failed to preserve 18,566 Chat messages for the five custodians, does not challenge Dr. Hochstetler's review of the log for seasonal variation, his comparison to emails, nor his use of the entire Log Dataset. Ex. 2 (Hochstetler Dep.) at 70:22-71:6, 175:1-10; Ex. 4 (Hochstetler Reply Rpt.) at ¶¶ 60-61. Google does not contest that Dr. Hochstetler's analysis of the metadata "is the best possible estimate of Chat use given what was produced in this case." Ex. 2 (Hochstetler Dep.) at 262:3-8.

Google's discussion of "p-values" and statistical conclusions is another red-herring. As Dr. Hochstetler testified, statistical significance wasn't relevant, because he "wasn't sampling"; instead, he used "the entirety of what was produced by Google." *Id.* at 116:1-2, 116:7-10. Dr. Hochstetler further testified that he had seen "no evidence" that the Log Dataset was unreliable,

**\*\* FILED UNDER SEAL \*\***

untrustworthy, or unrepresentative, *see, e.g.*, *id.* at 120:5-121:6, and that because there was no evidence that the Log Dataset was unreliable, extrapolation was reasonable. *Id.* at 154:13-155:3.

In any event, Google's argument that Dr. Hochstetler is unqualified to opine on statistics misrepresents both the standard required and Dr. Hochstetler's testimony. It is irrelevant whether Dr. Hochstetler's resume contains the word "statistics." To the extent an understanding of statistics is required here, the question is whether Dr. Hochstetler has relevant experience in the subject, not what he titled his papers. Here, Dr. Hochstetler has such expertise; Dr. Hochstetler testified that his professional experience includes statistics and data log review. *See, e.g.*, Ex. 2 (Hochstetler Dep.) at 13:8-14:24, 23:24:12, 256:9-257:2.

Nor does Dr. Hochstetler's alleged disavowal of being an "expert" in statistics carry any weight. Dr. Hochstetler does not offer an opinion on "statistics"; he offers an opinion on extrapolation from large datasets. To be clear, Dr. Hochstetler has the requisite expertise in statistics: Dr. Hochstetler followed his statement with testimony about how he had been paid to write a paper "about smart city planning[ t]hat was a large scale statistical model that placed police patrols and police cars into LA County, and this was based upon 13 years of LA County crime records." *Id.* at 23:3-16. Dr. Hochstetler's "knowledge, skill, experience, training, [and] education" allow him to "help the trier of fact to understand" the Log Dataset and Google's internal Chat protocols. Fed. R. Evid. 702. But just as an electrician need not know construction techniques, neither does a computer scientist need to opine on sampling to evaluate and extrapolate from a large dataset. And while Dr. Hochstetler has not previously testified as an expert on statistics, the Federal Rules do not preclude experts from testifying for the first time; otherwise, no expert would ever be qualified because all experts must testify for the first time.

** FILED UNDER SEAL **

Indeed, Google's Daubert challenge on this point is an improper attempt to cross-examine Dr. Hochstetler. In making this argument Google first asserts that "p-values" are necessary to Dr. Hochstetler's analysis and that Dr. Hochstetler "flunked a follow-on quiz about various 'Intro to Statistics' terms like Z-scores, Type I errors, and margin of error" performed by counsel. Mot. at 10. Google's counsel continues to testify on their own behalf, asserting that Dr. Hochstetler's extrapolation requires additional statistics qualifications that it claims Dr. Hochstetler does not possess. Google, however, provides no evidence that such qualifications are required, even by its own expert, Dr. Malkiewicz. *See* Ex. 5 (Malkiewicz Rpt.) (failing to opine on qualifications).

Dr. Hochstetler's analysis shows that Google, through its own inaction, failed to preserve over a million Chats in 2022 alone. Google should not be permitted to assert that the analysis of the entirety of what it <u>did</u> preserve is not significant. To the extent expertise in statistical analysis is required to offer opinions on these issues, Dr. Hochstetler possesses sufficient expertise. The Court should find that Dr. Hochstetler is qualified to give his opinions and deny the Motion.

### 2. Dr. Hochstetler's Deletion Opinions Are Reliable.

The Court should find that Dr. Hochstetler's Deletion Opinions are reliable. Contrary to Google's assertion that Dr. Hochstetler "performed no analysis at all," Mot. at 1, Dr. Hochstetler laid out his analysis in excruciating detail over 42 pages of his report. Ex. 1 (Hochstetler Supp. Rpt.). Far from failing to provide "the same level of intellectual rigor" that another hypothetical expert would perform, Dr. Hochstetler laid out a roadmap for Google to follow. Mot. at 11.

Google did not follow that roadmap; instead, its argument follows a familiar path. Searching for anything they can use to discredit Dr. Hochstetler, Google asserts that <u>more</u> analysis is required before Dr. Hochstetler could offer opinions. It contends Dr. Hochstetler should have (1) provided a "margin of error," (2) determined that the log dataset was "representative," and (3) shown that his opinions were "statistically significant." Mot. at 12-14. But Google's conclusions

** FILED UNDER SEAL **

that "[c]ourts [in other Circuits] 'consistently' reject statistical samples that are 'too small to be meaningful'" rely on cases that are inapplicable here and defy Fifth Circuit law. Mot. at 12. In *Haskell v. Kaman Corp.*, for example, "six former Company officers were allowed to testify . . . about terminations of themselves and of others." 743 F.2d 113, 118 (2d Cir. 1984). The Second Circuit held that the plaintiff's sample was too small in part because he had "irrationally excluded some older persons from the base 'class' used by him for comparison." *Id.* at 121. Here, however, Dr. Hochstetler did not exclude anyone from the sample; he used the entirety of the Log Dataset in his calculations.

Google's argument about the chat behavior of the other 136 employees is a red herring. While Google asserts that Dr. Hochstetler "has ***no*** opinion about whether the other 136 employees had 'similar Chat behavior,'" his testimony is more nuanced. At deposition, Dr. Hochstetler testified that he only had data "from the five custodians in the dataset." Ex. 2 (Hochstetler Dep.) at 149:12-20. At the same time, Dr. Hochstetler testified throughout his deposition that there was no evidence indicating that the Log Dataset was unrepresentative. *Id.* at 81:13-21, 120:5-121:6, 138:4-10 ("Q: Given the wide variation and the number of chats sent by just those five during the log period, can we agree that it's likely there's also wide variation in message volume among the remaining 136 custodians? A. I have seen no evidence to the contrary."); 140:21-141:2 (noting that Google's expert did not provide evidence to the contrary); 152:16-153:5, 154:13-155:3 (testifying that Google had not produced any evidence that the Log Dataset was not representative).

Nor is Dr. Hochstetler required to find that the Log Dataset is a representative sample. Courts in the Fifth Circuit have repeatedly rejected the argument that an expert should be precluded from opining on a limited data set where the lack of data resulted from a party's destruction of that data. "In situations where an expert lacks sufficient data to form a precise conclusion, he may opine

13

**\*\* FILED UNDER SEAL \*\***

as to a reasonable estimate, as long as the underlying methodology is reliable." *Charles v. K-Patents, Inc.*, No. 1:17-CV-339, 2020 WL 1480734, at \*5 (E.D. Tex. Mar. 19, 2020). And the *Lyondell* Court refused to strike "an expert's otherwise sound methodology because of inherent constraints in the underlying evidentiary record, particularly where potentially invaluable evidence is missing because of the . . . actions of the objecting party," even where the actions were "innocuous." *Lyondell Chem. Co. v. Albemarle Corp.*, No. 1:01-CV-890, 2007 WL 9711338, at \*4 (E.D. Tex. May 31, 2007). "It would be patently unfair to allow [the party seeking to exclude the expert's testimony] to benefit from what seems to be a deplorable, and perhaps even negligent, absence of record-keeping." *Jahn v. Equine Servs., PSC*, 233 F.3d 382, 390 (6th Cir. 2000).

Google provides no basis for its argument that Dr. Hochstetler allegedly "depart[ed] from generally accepted statistical methodologies" or "refused to acknowledge them at all." Mot. at 14. Dr. Hochstetler explained that statistical significance was inapplicable to this scenario because he used the entirety of the data produced. Ex. 2 (Hochstetler Dep.) at 115:22-118:1. Google provides no support for its argument that "statistical significance" is applicable here, and its expert does not opine that a finding of "statistical significance" is necessary. Ex. 5 (Malkiewicz Rpt.) at ¶¶ 39-40.

Accordingly, the Court should find that Dr. Hochstetler's methodology in extrapolating from the Log Dataset was sufficiently reliable and deny the Motion.

### 3. Dr. Hochstetler's Deletion Opinions Are Relevant.

The Court should find that Dr. Hochstetler's Deletion Opinions are relevant. "[T]estimony is relevant if it helps 'the trier of fact to understand the evidence or to determine a fact in issue.'" *McCune*, 495 F. App'x at 539. As with the Log Dataset Opinions, Dr. Hochstetler's opinions regarding the volume of Chats Google destroyed underlies Mr. Grande's opinions regarding the relevancy of such Chats. Even without Mr. Grande's opinion, however, a finder of fact could weigh the millions upon millions of Chats that Google failed to preserve against the approximately 13,000

**\*\* FILED UNDER SEAL \*\***

produced Chats and over 4 million produced emails to determine Google likely failed to preserve relevant Chats. Ex. 4 (Hochstetler Reply Rpt.) at ¶¶ 60-61. A finder of fact could also weigh Google's productions against what it failed to produce to determine whether "Google failed to take reasonable steps to preserve relevant evidence." Mot. at 14.

Dr. Hochstetler's analysis is therefore facially relevant to the issue of whether Google failed to adequately preserve documents relevant to this case, and the Court should deny the motion.

### 4. *Dr. Hochstetler's Deletion Opinions Are Not Unduly Prejudicial.*

The Court should find that Dr. Hochstetler's opinions do not unduly prejudice Google. First, Google asserts that Dr. Hochstetler's opinions are not grounded in his computer science expertise. 42 pages of Dr. Hochstetler's Supplemental Expert Report, 21 pages of his Reply Report, and various appendices including source code analysis refute Google's premise. Dr. Hochstetler used his experience and expertise to review, evaluate, and analyze Google's Log Dataset, and to extrapolate the information contained in that Log Dataset, Google's sole production of data on Chats, to determine how many Chats were sent annually. Dr. Hochstetler was only able to perform this analysis by writing custom source code to correlate and analyze these log files. Thus, the very fiber of Dr. Hochstetler's analysis is rooted in computer science. Even if they were not, however, Dr. Hochstetler's background and experience illustrate that he has sufficient expertise in statistical analysis to perform his extrapolation to the rigor demanded by the Court. Section IV(A)(2), *supra*.

Once again, Google fails to weigh probative value against substantial prejudice, as required by Rule 403. And once again, Google ignores that its request is an extraordinary remedy that must be used sparingly. *Nelson*, 579 F. Supp. 3d at 875. Google has failed to meet its burden of proof on any area, and its Motion should be denied.

### V.  CONCLUSION

For the reasons above, the States respectfully request that Google's Motion be denied.

**\*\* FILED UNDER SEAL \*\***

DATED: January 24, 2025

Respectfully submitted,

_/s/ W. Mark Lanier_

W. Mark Lanier
Mark.Lanier@LanierLawFirm.com
Alex J. Brown
Alex.Brown@LanierLawFirm.com
Zeke DeRose III
Zeke.Derose@LanierLawFirm.com
Jonathan P. Wilkerson
Jonathan.Wilkerson@LanierLawFirm.com
10940 W. Sam Houston Pkwy N.
Suite 100
Houston, TX 77064
(713) 659-5200

_/s/ Ashley Keller_

Ashley Keller
ack@kellerpostman.com
Kiran N. Bhat
kiran.bhat@kellerpostman.com
2333 Ponce De Leon Boulevard
Suite R-240
Coral Gables, Florida 33134
(833) 633-0118

Zina Bash (Bar No. 24067505)
zina.bash@kellerpostman.com
111 Congress Avenue, Suite 500
Austin, TX 78701
(512) 690-0990

**THE LANIER LAW FIRM, PLLC**

_/s/ Noah S. Heinz_

Noah S. Heinz
noah.heinz@kellerpostman.com
1101 Connecticut Ave., N.W., Suite 1100
Washington, DC 20036
(202) 918-1123
**KELLER POSTMAN LLC**

_Counsel for Texas, Idaho, Louisiana (The Lanier Law Firm only), Indiana, Mississippi, North Dakota, South Carolina, and South Dakota_

_Submitted on behalf of all Plaintiff States_

**NORTON ROSE FULBRIGHT US LLP**
Joseph M. Graham, Jr.
joseph.graham@nortonrosefulbright.com
Geraldine Young
geraldine.young@nortonrosefulbright.com
1550 Lamar Street, Suite 2000
Houston, Texas 77010
(713) 651-5151

Marc B. Collier
Marc.Collier@nortonrosefulbright.com
98 San Jacinto Blvd., Suite 1100
Austin, Texas 78701
(512) 474-5201

**\*\* FILED UNDER SEAL \*\***

FOR PLAINTIFF STATE OF TEXAS

KEN PAXTON
Attorney General

*/s/ James R. Lloyd*
Brent Webster, First Assistant Attorney General of Texas
Brent.Webster@oag.texas.gov
James R. Lloyd, Deputy Attorney General for Civil Litigation
James.Lloyd@oag.texas.gov

**State of Texas, Office of the Attorney General**
P.O. Box 12548
Austin, TX 78711-2548
(512) 936-1674

*Attorneys for Plaintiff State of Texas*

**\*\* FILED UNDER SEAL \*\***


FOR PLAINTIFF STATE OF ALASKA:

TREG TAYLOR
ATTORNEY GENERAL


By: /s/ Jeff Pickett
Jeff Pickett
Senior Assistant Attorney General, Special Litigation Section
jeff.pickett@alaska.gov

*Attorney for Plaintiff State of Alaska*

**\*\* FILED UNDER SEAL \*\***

FOR PLAINTIFF STATE OF ARKANSAS:

TIM GRIFFIN
ATTORNEY GENERAL

By: _____
AMANDA J. WENTZ
Ark. Bar No. 2021066
Assistant Attorney General
Office of the Arkansas Attorney General
323 Center Street, Suite 200
Little Rock, AR 72201
(501) 682-1178
Amanda.Wentz@ArkansasAG.gov

*Attorney for Plaintiff State of Arkansas*

**\*\* FILED UNDER SEAL \*\***

FOR PLAINTIFF STATE OF FLORIDA:

JOHN GUARD, Acting Attorney General

<u>/s/ Lee Istrail</u>
LEE ISTRAIL, Assistant Attorney General
FL Bar No. 119216

LIZABETH A. BRADY, Director, Antitrust Division
R. SCOTT PALMER, Special Counsel and Chief of Complex Enforcement
ANDREW BUTLER, Assistant Attorney General
CHRISTOPHER KNIGHT, Assistant Attorney General

Office of the Attorney General, State of Florida
PL-01 The Capitol
Tallahassee, Florida 32399
Phone: 850-414-3300
Email: scott.palmer@myfloridalegal.com

*Attorneys for Plaintiff State of Florida*

**\*\* FILED UNDER SEAL \*\***

FOR PLAINTIFF STATE OF IDAHO:

RAÚL R. LABRADOR
Attorney General

*/s/ John K. Olson*
John K. Olson, Deputy Attorney General

Consumer Protection Division
Office of the Attorney General
954 W. Jefferson Street, 2nd Floor
P.O. Box 83720
Boise, Idaho 83720-0010
Telephone:   (208)   334-2424
john.olson@ag.idaho.gov

*Attorneys for Plaintiff State of Idaho*

**\*\* FILED UNDER SEAL \*\***

FOR PLAINTIFF STATE OF INDIANA:

THEODORE E. ROKITA
Attorney General

*/s/ Jesse J. Moore*
Jesse J. Moore
Deputy Attorney General – Consumer Litigation
302 W. Washington St.
IGCS - 5th Floor
Indianapolis, IN 46204-2770
Phone: (317) 234-1479
Fax: (317) 232-7979
Email: jesse.moore@atg.in.gov

*Attorneys for Plaintiff State of Indiana*

**\*\* FILED UNDER SEAL \*\***

FOR PLAINTIFF COMMONWEALTH OF KENTUCKY:

RUSSELL COLEMAN
Attorney General

*/s/ Philip R. Heleringer*
Christian J. Lewis, Commissioner of the Office of Consumer Protection
christian.lewis@ky.gov
Philip R. Heleringer, Executive Director of the Office of Consumer Protection
philip.heleringer@ky.gov
Jonathan E. Farmer, Deputy Executive Director of the Office of Consumer Protection
jonathan.farmer@ky.gov
Office of the Attorney General
Commonwealth of Kentucky
1024 Capital Center Drive, Suite 200
Frankfort, Kentucky 40601
Tel: 502-696-5300

*Attorneys for Plaintiff Commonwealth of Kentucky*

**\*\* FILED UNDER SEAL \*\***

FOR PLAINTIFF STATE OF LOUISIANA:

By: */s/ Patrick Voelker*
Liz Murrill, Attorney General
Michael Dupree, Assistant Attorney General
Patrick Voelker, Assistant Attorney General
Office of the Attorney General, State of Louisiana
Public Protection Division
1885 North Third St.
Baton Rouge, Louisiana 70802
(225) 326-6400
voelkerp@ag.louisiana.gov

*s/ James R. Dugan, II*
James R. Dugan, II (*pro hac vice*)
TerriAnne Benedetto (*pro hac vice*)
The Dugan Law Firm
365 Canal Street
One Canal Place, Suite 1000
New Orleans, LA 70130
PH: (504) 648-0180
FX: (504) 649-0181
EM: jdugan@dugan-lawfirm.com
 tbenedetto@dugan-lawfirm.com

James Williams
CHEHARDY SHERMAN WILLIAM, LLP
Galleria Boulevard, Suite 1100
Metairie, LA 70001
PH: (504) 833-5600
FX: (504) 833-8080
EM: jmw@chehardy.com

*Attorneys for Plaintiff State of Louisiana*

** FILED UNDER SEAL **

FOR PLAINTIFF STATE OF MISSISSIPPI:

LYNN FITCH, ATTORNEY GENERAL
STATE OF MISSISSIPPI

By: */s/ Garrett S. Mascagni*
      Garrett S. Mascagni
      Special Assistant Attorney General
      Consumer Protection Division
      Mississippi Attorney General's Office
      Post Office Box 220
      Jackson, Mississippi 39205
      Telephone: 601-359-4223
      Fax: 601-359-4231
      Garrett.Mascagni@ago.ms.gov

      *Attorney for Plaintiff State of Mississippi*

**\*\* FILED UNDER SEAL \*\***

FOR PLAINTIFF STATE OF MISSOURI:

ANDREW BAILEY
Attorney General

*/s/ Michael Schwalbert*
Michael.Schwalbert@ago.mo.gov
Missouri Attorney General's
Office
815 Olive St.
Suite 200
St. Louis, MO 63101
Tel: 314-340-7888

*Attorneys for Plaintiff State of Missouri*

**\*\* FILED UNDER SEAL \*\***

FOR PLAINTIFF STATE OF MONTANA:

AUSTIN KNUDSEN
Montana Attorney General

*/s/ Anna Schneider*
Anna Schneider
Montana Attorney General's Office
P.O. Box 200151
Helena, MT 59620-0151
Phone: (406) 444-4500
Fax: (406) 442-1894 Anna.Schneider@mt.gov

*/s/ Charles J. Cooper*
Charles J. Cooper
ccooper@cooperkirk.com
David H. Thompson
dthompson@cooperkirk.com
Brian W. Barnes
bbarnes@cooperkirk.com
Harold S. Reeves
hreeves@cooperkirk.com
COOPER & KIRK PLLC
1523 New Hampshire Avenue, NW
Washington DC 20036
Phone: (202) 220-9620
Fax: (202) 220-9601

*Attorneys for Plaintiff State of Montana*

** FILED UNDER SEAL **

FOR PLAINTIFF STATE OF NEVADA:

AARON D. FORD
Attorney General
ERNEST D. FIGUEROA
Consumer Advocate


*/s/ Michelle C. Badorine*
Michelle C. Badorine, Senior Deputy
Attorney General
MNewman@ag.nv.gov
Lucas J. Tucker (NV Bar No. 10252)
Senior Deputy Attorney General
LTucker@ag.nv.gov
Office of the Nevada Attorney General
100 N. Carson St.
Carson City, Nevada 89701
Tel: (775) 684-1100

*Attorneys for Plaintiff State of Nevada*

**\*\* FILED UNDER SEAL \*\***

FOR PLAINTIFF STATE OF NORTH DAKOTA:

**STATE OF NORTH DAKOTA**
Drew H. Wrigley
Attorney General

By: */s/ Elin S. Alm*
Elin S. Alm, ND ID 05924
Assistant Attorneys General
Consumer Protection & Antitrust Division
Office of Attorney General of North Dakota
1720 Burlington Drive, Suite C, Bismarck, ND 58503-7736
(701) 328-5570
(701) 328-5568 (fax)
ealm@nd.gov

*Attorneys for Plaintiff State of North Dakota*

**\*\* FILED UNDER SEAL \*\***

FOR PLAINTIFF COMMONWEALTH OF PUERTO RICO:

*/s/ Domingo Emanuelli-Hernández*
Domingo Emanuelli-
Hernández Attorney General
Thaizza Rodríguez Pagán
Assistant Attorney
General PR Bar No.
17177
P.O. Box 9020192
San Juan, Puerto Rico 00902-0192
Tel: (787) 721-2900, ext. 1201, 1204
trodriguez@justicia.pr.gov

Kyle G. Bates
HAUSFELD LLP
600 Montgomery Street, Suite 3200
San Francisco, CA 94111

*Attorneys for Plaintiff Commonwealth of Puerto Rico*

**\*\* FILED UNDER SEAL \*\***

FOR PLAINTIFF STATE OF SOUTH CAROLINA:

ALAN WILSON
Attorney General


<u>/s/ *Mary Frances Jowers*</u>
Mary Frances Jowers
Assistant Deputy Attorney General
W. Jeffrey Young
Chief Deputy Attorney General
C. Havird Jones, Jr.
Senior Assistant Deputy Attorney General
South Carolina Attorney General's Office
P.O. Box 11549
Columbia, South Carolina 29211-1549
Phone: 803-734-5855
Email: mjowers@scag.gov

Charlie Condon
Charlie Condon Law Firm, LLC
880 Johnnie Dodds Blvd, Suite 1
Mount Pleasant, SC 29464
Phone: 843-884-8146
Email: charlie@charliecondon.com

James R. Dugan, II (*pro hac vice*)
The Dugan Law Firm
365 Canal Street
One Canal Place, Suite 1000
New Orleans, LA 70130
Phone: (504) 648-0180
Email: jdugan@dugan-lawfirm.com


*Attorneys for Plaintiff State of South Carolina*

**\*\* FILED UNDER SEAL \*\***


FOR PLAINTIFF STATE OF SOUTH DAKOTA:

MARTY JACKLEY
Attorney General


_/s/ Jonathan Van Patten_
Jonathan Van Patten
Assistant Attorney General
Office of the Attorney General
1302 E. Highway 14, Suite 1
Pierre, SD 57501
Tel: 605-773-3215
jonathan.vanpatten@state.sd.us

_Attorney for Plaintiff State of South Dakota_

**\*\* FILED UNDER SEAL \*\***

FOR PLAINTIFF STATE OF UTAH:

Derek Brown
Attorney General of Utah

*/s/ Matthew Michaloski*
Matthew Michaloski
Assistant Attorney General
Marie W.L. Martin
Deputy Division Director
160 East 300 South, 5th Floor
P.O. Box 140811
Salt Lake City, UT 84114
mmichaloski@agutah.gov
Telephone: (801) 440-9825

*Attorneys for Plaintiff State of Utah and*
*as counsel for the Utah Division of Consumer Protection*

** FILED UNDER SEAL **

## CERTIFICATE OF SERVICE

I certify that on January 24, 2025, this document was filed electronically in compliance with Local Rule CV-5(a) and served on all counsel who have consented to electronic service, per Local Rule CV-5(a)(3)(A).

*/s/ Marc B. Collier*
Marc B. Collier

## CERTIFICATE OF MOTION TO SEAL

I certify that contemporaneously with the filing of this Motion, Plaintiff States filed a motion to seal both this document and the attached exhibits.

*/s/ Marc B. Collier*
Marc B. Collier