IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| THE STATE OF TEXAS, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| v. | § | Civil Action No. 4:20-cv-00957-SDJ |
| | § | |
| GOOGLE LLC, | § | |
| | § | |
| Defendant. | § | |

**GOOGLE'S OPPOSITION TO PLAINTIFFS' MOTION FOR *IN CAMERA* REVIEW**

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................. 3

STANDARD ....................................................................................................................... 4

ARGUMENT ...................................................................................................................... 6

    I.   Because Plaintiffs Do Not Challenge Google's Privilege, *In Camera* Review Is
        Unwarranted. ............................................................................................................. 6

    II.  There Are No Substantive Disagreements About Whether Documents on Google's
        Privilege Log Were Prepared in Anticipation of *This* Litigation. .................................. 6

        A.  There Is No Basis For *In Camera* Review of Documents Dated Earlier Than July
            2019—Before Plaintiffs Began Their Investigation. ................................................ 7

        B.  Plaintiffs Have Not Met Their Burden To Warrant *In Camera* Review of
            Documents Dated Between July 2019 and September 2019 .................................... 10

        C.  Plaintiffs Have Not Met Their Burden To Warrant *In Camera* Review of Thousands
            of Additional Documents. ..................................................................................... 13

    III.  Plaintiffs Ignore the Attorney-Client Privilege and Have Not Met Their Heavy Burden
         To Compel Production of Google's Work Product. ....................................................... 14

        A.  Plaintiffs Ignore Attorney-Client Privilege. ............................................................ 14

        B.  Plaintiffs Fail To Overcome Work Product Protection ............................................. 14

CONCLUSION .................................................................................................................... 15

# TABLE OF AUTHORITIES

**Cases**

*Austin v. Kroger Texas, L.P.*,
    864 F.3d 326 (5th Cir. 2017) ................................................... 1

*Bruno v. State Farm Mut. Auto. Ins. Co.*,
    2023 WL 3844182 (E.D. La. June 6, 2023)................................ 5-6, 14

*CFE Int'l LLC v. Schnaas*,
    2023 WL 6702486 (S.D. Tex. Oct. 12, 2023)........................... 14

*Cuomo v. Clearing House Ass'n*,
    557 U.S. 519 (2009).................................................................. 3

*Elec. Data Sys. Corp. v. Steingraber*,
    2003 WL 21653414 (E.D. Tex. July 9, 2003) ....................... 14

*Felice v. Infinity Cnty. Mut. Ins. Co.*,
    2018 WL 11450175 (W.D. La. Nov. 7, 2018).......................... 5

*Goodyear Tire & Rubber Co. v. CEVA Logistics Singapore, Ltd.*,
    348 F.R.D. 54 (E.D. La. 2024)................................................ 5

*Guzman v. Jones*,
    804 F.3d 707 (5th Cir. 2015) ................................................. 12

*In re Delta/AirTran Baggage Fee Antitrust Litig.*,
    770 F. Supp. 2d 1299 (N.D. Ga. 2011) ............................... 9, 10

*In re Enron Corp. Sec., Derivative & Erisa Litig.*,
    762 F. Supp. 2d 942 (S.D. Tex. 2010) ................................. 12

*In re Grand Jury Proceedings*,
    43 F.3d 966 (5th Cir. 1994) .................................................. 9

*In re Sealed Case*,
    146 F.3d 881 (D.C. Cir. 1998).............................................. 12

*Jani-King Franchising, Inc. v. Jani-King (GB) Ltd.*,
    2015 WL 12916409 (N.D. Tex. Feb. 6, 2015)...................... 4, 7

*Jolivet v. Compass Grp. USA, Inc.*,
    340 F.R.D. 7 (N.D. Tex. 2021) ............................................ 4, 14

*Jordan Kahn Music Co., L.L.C. v. Taglioli*,
    2021 WL 2530842 (E.D. Tex. June 21, 2021)...................... 5, 6

*King v. Univ. Healthcare Sys., L.C.*,
    645 F.3d 713 (5th Cir. 2011) ............................................. 11

*LendingTree, LLC v. Zillow, Inc.*,
    2014 WL 1309305 (W.D.N.C. Mar. 31, 2014) ....................... 10

*Madanes v. Madanes*,
    199 F.R.D. 135 (S.D.N.Y. 2001) ........................................ 15

*Markley v. U.S. Bank Nat'l Ass'n*,
    2020 WL 12602882 (D. Colo. Dec. 29, 2020) ........................ 14

*N. Am. Sci. Assocs., LLC v. Conforti*,
    2024 WL 4903753 (D. Minn. Nov. 27, 2024) ......................... 10

*Ocwen Loan Servicing, LLC v. Heiberg*,
    2020 WL 957640 (E.D. Tex. Feb. 4, 2020) ............................. 1

*Phillip M. Adams & Assocs., L.L.C. v. Dell, Inc.*,
    621 F. Supp. 2d 1173 (D. Utah 2009) .................................. 10

*Prepared Food Photos Inc. v. Epic Sols. LLC*,
    2024 WL 4904680 (W.D. La. July 31, 2024) ......................... 7-8

*Realnetworks, Inc. v. DVD Copy Control Ass'n, Inc.*,
    264 F.R.D. 517 (N.D. Cal. 2009) ....................................... 12

*ReedHycalog UK, Ltd. v. Baker Hughes Oilfield Operations Inc.*,
    242 F.R.D. 357 (E.D. Tex. 2007) ......................................... 6

*Shank v. Levin*,
    2017 WL 11518102 (M.D. Pa. Nov. 29, 2017) ....................... 14

*Smith v. Shelter Mut. Ins. Co.*,
    2018 WL 1278429 (M.D. La. Mar. 12, 2018) ...................... 13-14

*Steves & Sons, Inc. v. JELD-WEN, Inc.*,
    327 F.R.D. 96 (E.D. Va. 2018) .......................................... 12

*Sullivan v. Warminster Twp.*,
    274 F.R.D. 147 (E.D. Pa. 2011) ........................................ 15

*Udoewa v. Plus4 Credit Union*,
    457 F. App'x 391 (5th Cir. 2012) ...................................... 12

*United States ex rel. Fisher v. JPMorgan Chase Bank N.A.*,
    2020 WL 3265060 (E.D. Tex. June 17, 2020) ..................... 5, 14-15

*United States v. Google*,
   *No. 23-cv-108* (E.D. Va. Aug. 2, 2024) ..................................................................... 5

*United States v. Zolin*,
   491 U.S. 554 (1989)............................................................................................ 5, 7, 14

## INTRODUCTION

Stubbornly pursuing a bad argument does not improve it. On January 17, this Court correctly held (ECF 776), after Plaintiffs had ample opportunity to be heard, that Google's duty to preserve began in September 2019. Unhappy with that Order—which severely undermines the potential scope and timing premise of their pending spoliation motion—Plaintiffs' Motion (ECF 786) implicitly seeks reconsideration[1] under the guise of a request for *in camera* review of privileged documents reaching back to **2015**.[2] Importantly, Plaintiffs do not challenge whether any documents on Google's privilege logs are actually privileged. Instead, Plaintiffs argue that the Court should review Google's privileged documents to see if Google anticipated Plaintiffs' claims before September 9, 2019. That argument is meritless and should be rejected.

Plaintiffs swore under oath that they did not begin the investigation that became the subject of this suit until **July 2019**. ECF 46-1 at 1. Google could not have reasonably anticipated *this suit* before Plaintiffs did. Accordingly, Plaintiffs' request for *in camera* review of any documents before July 2019 should be flat-out rejected. Plaintiffs' Motion specifically identifies only two documents between July and September 9, 2019, so only those two documents are even conceivably ripe for *in camera* review.

Neither of those documents—or any others of which Plaintiffs seek *in camera* review— suggest Google anticipated *this suit* before Texas issued its first CID. Anticipating that

---

[1] Because Plaintiffs (effectively) seek reconsideration of an interlocutory order, the Court should consider the Motion under Federal Rule of Civil Procedure 54(b). *Austin v. Kroger Texas, L.P.*, 864 F.3d 326, 336 (5th Cir. 2017). Plaintiffs fail to cite this governing standard, likely because their Motion does exactly what Rule 54(b) motions cannot: "Rule 54(b) motions . . . are not the proper vehicle for rehashing evidence, legal theories, or arguments." *Ocwen Loan Servicing, LLC v. Heiberg*, 2020 WL 957640, at *2 (E.D. Tex. Feb. 4, 2020).

[2] Plaintiffs mischaracterize the January 17 Order as merely preliminary and not final, claiming the Court has only just "begun to analyze when Google's obligation to preserve Chats arose." Mot. at 1. The Court's ruling was abundantly clear and definitive.

investigations, in general, are afoot is not the test. The Court has (correctly) rejected Plaintiffs' argument that they can graft duties owed to *other* litigants onto this case. ECF 776 at 10-15 (noting "that the duty to preserve evidence is owed to a specific party and does not 'shift' over time," and that any other approach would be "unreasonable, unfair, and unworkable"). And Google's descriptions of the documents[3] and the public record reflect what this Court already found: Google did not reasonably anticipate *this suit* before the CID. As of August 2019, the States' investigations were "still taking shape," investigators had "not formally agreed on a specific plan of action," and the "details" were "still being discussed."[4]

Plaintiffs' tack-on request—that if the Court pulls forward Google's preservation trigger date, then **Plaintiffs** get to see the privileged documents behind that determination—should likewise be denied. First, Plaintiffs ignore that the vast majority of log entries at issue in the Motion are also attorney-client privileged, App'x A, so even if the work-product privilege could be pierced for "substantial need," the corresponding documents are still protected from production. Second, there can be no "substantial need" to obtain privileged communications reflecting when Google first anticipated a litigation commenced **by Plaintiffs** when Plaintiffs know—or can glean from their own files, sworn admissions, and public statements to the extent they currently cannot recall—when **they** first anticipated their suit. Also, if the Court were to conduct an *in camera* review and determine that Google's preservation duties arose in July 2019, then Plaintiffs would

---

[3] Without intending to waive any privilege or protection, Google attaches as Appendix A a list of the 15 documents cited in Plaintiffs' Motion with their corresponding privilege log entries and—for certain documents—additional details to inform the Court's decision whether to review them *in camera* (to potentially change its prior determination of Google's duty-to-preserve date). Before Plaintiffs filed their Motion, Google had indicated it might provide additional details to narrow the dispute, but Plaintiffs filed their Motion before Google had the opportunity to do so. For two documents, Google has determined the underlying information was previously produced and so Google is now producing them. App'x. A, Nos. 8, 11.

[4] Ex. 1, *State Attorneys General Said to Be Near Formal Investigation of Tech Companies*, N.Y. Times, 8/19/2019; *see also* App'x A, No. 13 (reflecting "**potential investigation** by state AGs").

have **no** need (let alone a "substantial" one), to view those documents themselves. Finally, any documents would be irrelevant to Plaintiffs' pending spoliation motion because the incremental time period at issue—July 2019 through September 9, 2019—does not implicate any of the "key milestones" of Plaintiffs' allegations, which range from 2006 to 2018. ECF 776 at 19-20.

## BACKGROUND

In July 2024, the Special Master granted a motion by Plaintiffs to compel certain "discovery on discovery" related to Google's retention of Google Chat messages. ECF 558. Among other things, the Special Master found that Plaintiffs had made a "preliminary showing of spoliation," and ordered Google to provide information about its legal holds dating back to 2015. *Id*. at 10, 11. Google moved for review of those portions of the Special Master's Order, arguing that a finding of preliminary spoliation was unnecessary to the Order's result and that Google had no obligation to preserve documents in connection with this litigation prior to September 9, 2019, when Texas issued its first CID. *See* ECF 585.

While Google's motion for review was pending, Plaintiffs served two (untimely) expert reports related to Chat retention and filed a motion seeking spoliation sanctions relying heavily on that expert testimony. ECF 693.[5] In their motion for sanctions, Plaintiffs repeated their theory that Google reasonably should have anticipated this litigation—or, at least, claims like Plaintiffs'—as far back as 2006. *See id.* at 10-11.

On January 17, 2025, the Court granted Google's motion for review of the Special Master's July order. *See* ECF 776. The Court identified six "apparently key milestones" among Plaintiffs' allegations regarding Google's conduct, going back as far as 2006 and ending in 2018, and stated

---

[5] In their briefing on sanctions, Plaintiffs do not dispute that 12 of the 17 State Plaintiffs have failed to issue a litigation hold of any kind, even today. Plaintiffs have the same preservation obligations as any civil litigant. *See Cuomo v. Clearing House Ass'n*, 557 U.S. 519, 531 (2009).

that any attempt "to spin the wheel" to select one of these events as the beginning of Google's preservation duty "would be, at best, arbitrary, and, at worst, nonsensical." *Id.* at 19-20. The Court's other pertinent rulings include:

- Google's "document retention responsibilities began" on September 9, 2019. *Id.* at 16.

- "[T]he duty to preserve evidence is owed to a specific party and does not 'shift' over time" and any other approach would be "unreasonable, unfair, and unworkable." *Id.* at 14-15.

- Plaintiffs are incorrect "that the commencement of the duty to preserve must coincide with the period of time for which Google has asserted any work-product protection," but Plaintiffs could "request an *in camera* review process" if they had "a substantive disagreement" with Google's "work-product privilege claims." *Id.* at 20-21.

Plaintiffs now bring this Motion seeking *in camera* review of privileged documents dating back to 2015. Plaintiffs do ***not*** challenge any privilege claim but rather ask the Court to reconsider the start date of Google's retention obligations for this case.

## STANDARD

***Duty to Preserve***. As articulated by this Court, "the duty to preserve potentially relevant evidence arises when the party in possession of the evidence knows that litigation *by the party seeking the evidence* is pending or probable." ECF 776 at 10 (emphasis in original).[6] There is no "shifting" duty to preserve, such that an investigation by one potential plaintiff or the government creates a duty for a defendant to preserve evidence for claims later brought by a different party. *See id*. at 10-16.

***In camera review***. "[I]n camera review is not appropriate merely because a party requests the district court undertake the endeavor." *Jani-King Franchising, Inc. v. Jani-King (GB) Ltd.*, 2015 WL 12916409, at *1 (N.D. Tex. Feb. 6, 2015); *Jolivet v. Compass Grp. USA, Inc.*, 340 F.R.D. 7, 21-22 (N.D. Tex. 2021) (same). Rather, courts permit *in camera* review "[w]here there is a

---

[6] Unless otherwise noted, all emphasis is added; citations are cleaned up for ease of reading; and internal citations and quotations are omitted.

sufficient evidentiary showing that an issue exists regarding *the application of a privilege*." *Jordan Kahn Music Co., L.L.C. v. Taglioli*, 2021 WL 2530842, at \*2 (E.D. Tex. June 21, 2021) (emphasis in original) (citing *United States v. Zolin*, 491 U.S. 554, 571-72 (1989)); *see also Goodyear Tire & Rubber Co. v. CEVA Logistics Singapore, Ltd.*, 348 F.R.D. 54, 70 (E.D. La. 2024) ("Only when there is a sufficient evidentiary showing that an issue exists regarding the application of a privilege must the court utilize its discretion to determine whether in camera review is appropriate under the circumstances presented.").[7] A party must "provide sufficient information to enable other parties to evaluate the applicability of the claimed privilege or protection," which "should reduce the need for in camera examination of the documents." Fed. R. Civ. P. 26, 1993 Adv. Comm. Notes.[8]

*Work Product*. While material "prepared in anticipation of litigation" is shielded from discovery as attorney work product, Fed. R. Civ. P. 26(b)(3), if it does not include "the mental impressions, conclusions, opinions, or legal theories of a party's attorney," Fed. R. Civ. P. 26(b)(3)(B), it may "still be produced" if the party seeking production establishes "a substantial need of the privileged materials" and "an inability to obtain the substantial equivalent of the material through other means without undue hardship." *United States ex rel. Fisher v. JPMorgan Chase Bank N.A.*, 2020 WL 3265060, at \*5 (E.D. Tex. June 17, 2020). The "substantial need" exception is "*not* applicable to attorney-client communications." *Bruno v. State Farm Mut. Auto.*

---

[7] *See also United States v. Google, No. 23-cv-108* (E.D. Va. Aug. 2, 2024) ("Virginia Case"), ECF 274 and ECF 279 (denying *in camera* review of documents because plaintiffs failed to make an "adequate factual showing" that information in the challenged documents was not privileged); *Felice v. Infinity Cnty. Mut. Ins. Co.*, 2018 WL 11450175, at \*2, n.3 (W.D. La. Nov. 7, 2018) (declining to conduct *in camera* inspection, noting that "[e]xcept in particularized circumstances—such as when a proponent is seeking to demonstrate the applicability of a privilege or immunity . . . —the court is not well situated to evaluate the evidentiary record without the benefit of open adversarial guidance by the parties.").

[8] While Rule 26 "does not attempt to define for each case what information must be provided when a party asserts a claim of privilege or work product protection," Fed. R. Civ. P. 26, 1993 Adv. Comm. Notes, the parties here did define the information required to assert a claim of privilege, in the agreed-upon ESI Order entered by the Court. ECF 183 at 9-10.

*Ins. Co.*, 2023 WL 3844182, at \*3 (E.D. La. June 6, 2023); *see also ReedHycalog UK, Ltd. v. Baker Hughes Oilfield Operations Inc.*, 242 F.R.D. 357, 360 n.1 (E.D. Tex. 2007) ("If the attorney-client privilege applies to a particular item, it is absolutely undiscoverable.").

## ARGUMENT

### I. Because Plaintiffs Do Not Challenge Google's Privilege, *In Camera* Review Is Unwarranted.

The Court's January 17 Order provided: "Google has confirmed that none of its work-product privilege claims are based on reasonably anticipated litigation in *this case*. (Dkt. #585). If the States have a substantive disagreement as to any such claims, they can request an *in camera* review process." ECF 776 at 21. But Plaintiffs do not have any "disagreement" as to Google's privilege claims. Rather than seeking review of Google's documents to determine whether assertions of the attorney-client or work-product privileges were proper,[9] Plaintiffs seek to ***benefit*** from Google's assertion of work-product privilege, to claim Google anticipated ***this*** litigation (not some other potential litigation) as early as 2015. If the Court intended by its Order to permit only requests for *in camera* review of Google's assertions of privilege, then Plaintiffs' Motion should be denied outright. *See, e.g.*, *Jordan Kahn*, 2021 WL 2530842, at \*2.[10]

### II. There Are No Substantive Disagreements About Whether Documents on Google's Privilege Log Were Prepared in Anticipation of *This* Litigation.

Now, instead of presenting a substantive disagreement with Google's work-product claims, Plaintiffs ask the Court to review 15 documents that appear to be created prior to September 9, 2019, *see* App'x A, n.1, and thousands of documents on Google's privilege log with the words

---

[9] Plaintiffs argue that they have "substantial need" for certain work-product documents, Mot. at 10-11, but even then do not dispute that the documents are indeed work product.

[10] Plaintiffs assert that "*[i]n camera* review is commonly used" to "resolve disputed issues," Mot. at 5, n.6, but none of their cited cases consider whether *in camera* review is appropriate to determine a factual issue where the existence of a privilege is not disputed.

"State AG" or "Texas" between 2015 and 2019, to determine whether they were "in anticipation of *this* litigation." Mot. at 2.[11] But Plaintiffs provide no evidence of any legitimate substantive disagreement for *any* of those documents.

First, there can be no substantive disagreement for documents before July 2019. Plaintiffs *themselves* began the investigation that culminated in this lawsuit in July 2019. ECF 46-1 at 1. Google could not have reasonably anticipated this suit **before Plaintiffs did**, and this Court has already held that Plaintiffs cannot graft onto this case preservation duties owed to other litigants. ECF 776 at 10-15. Second, *in camera* review is unwarranted for documents dated between July 2019 and September 2019. Contemporaneous media coverage and Google's privilege log make clear that Plaintiffs had not yet agreed on "a specific plan of action" for the investigation. Ex. 1; App'x A, Nos. 13, 14. Plaintiffs' *wishful thinking* that Google somehow knew the contours of Plaintiffs' investigation as it was still taking shape is not a *substantive disagreement* about when Google anticipated this litigation. Third, with respect to Plaintiffs' broad request for review of thousands of documents between 2015 and 2019 with the words "Texas" or "State AG," Plaintiffs do not even attempt to justify the burden that would be imposed on the Court.

### A. There Is No Basis For *In Camera* Review of Documents Dated Earlier Than July 2019—Before Plaintiffs Began Their Investigation.

Plaintiffs have not made "a sufficient evidentiary showing that an issue exists regarding the application of a privilege," *Jani-King*, 2015 WL 12916409, at *1, even interpreting that phrase broadly to include *implications* of a privilege assertion, as Plaintiffs' Motion effectively does.[12]

---

[11] A preliminary analysis indicates that running Plaintiffs' proposed search terms (not accounting for "permutations," Mot. at 2 n.3) within withheld documents would pull in thousands of documents with no bearing on the instant Motion. *See infra* note 22.

[12] Plaintiffs cite *Zolin*, 491 U.S. 554, for the proposition that their burden is "not [] stringent," Mot. at 9, and then seek to expand the crime-fraud framework from *Zolin* to this case by relying on *Prepared Food Photos Inc. v. Epic Sols. LLC*, 2024 WL 4904680, at *1, n.4 (W.D. La. July 31,

Mot. at 5. Plaintiffs assert that *in camera* review is necessary to determine whether "Google anticipated this litigation before September 2019," including going back to "July 29, **2017**." Mot. at 6.[13] But Plaintiffs **know** that **they** did not begin the investigation that resulted in **this** litigation until July 2019:

- Texas has submitted a sworn affidavit stating that "[t]he OAG **began investigating** Google's [allegedly] anticompetitive conduct **in July of 2019**." ECF 46-1 at 1.[14]

- As of August 2019, press reports indicated that the States' investigations were "still taking shape"; investigators had "not formally agreed on a specific plan of action"; and the "details" were "still being discussed." Ex. 1. Google's contemporaneous privilege log entry reflects a "**potential investigation** by state AGs in conjunction with DOJ investigation" in August 2019. App'x. A, No. 13.

- Texas issued its first CID to Google on September 9, 2019. ECF 755-22, 752-31. That same day, Texas issued a press release in which it "announced **plans to investigate** Google's overarching control of **online advertising markets** and search traffic." Texas explicitly acknowledged the existence of **prior investigations** of Google by **other regulators**, but asserted that "[n]one of these previous investigations . . . fully address the source of Google's sustained market power."[15]

- Arkansas—seeking to excuse its destruction of relevant documents in this case—has represented that it "had no obligation to preserve documents in anticipation of litigation **until 2019**," and that, as a result, "any documents that were not retained prior to that time cannot possibly be considered an act of spoliation, as **Arkansas had no reason at that time to believe that the documents would be necessary to a litigation that was not yet contemplated by the state**." ECF 757 Ex. 12 at 4.

- Plaintiffs in the Virginia Case—**including State Attorneys General who were part of the same 50-state investigation as Plaintiffs here**—have taken the position that Google's retention obligation began in **October 2019**, when the Department of Justice issued its "ad-

---

2024). Mot. at 9. But the court in *Prepared Foods* **denied** the request for in camera review, noting that "*[i]n camera* review is generally disfavored." *See id.* at *1, *3.

[13] Plaintiffs stress that Google's corporate representative did not give specific answers to questions about when Google anticipated this litigation or how many documents it withheld on work-product grounds. *See* Mot. at 11-12; Mot. Ex. 3 at 64:6-9; *id.* at 60:8-10. But these topics were not within the scope of his deposition, as a protective order limited his testimony to Google's retention and preservation practices and policies "*to the extent they relate to Google Chats*." ECF 428 at 8; ECF 452. It does not follow that Plaintiffs thus have no way to determine when Google reasonably anticipated an investigation that Plaintiffs themselves conducted.

[14] Plaintiffs have repeated that assertion to this Court. *See, e.g.*, February 4, 2021 H'rg Tr. at 19:7-8 ("[W]e've been doing this for 18 months").

[15] Ex. 2, Press Release, "Attorney General Paxton Leads 50 Attorneys General in Google Multistate Bipartisan Antitrust Investigation," Texas OAG, Sept. 9, 2019.

tech-focused CID." Mot. at 18-19, Virginia Case ECF 1116.

- Texas's privilege log reflects no interviews of third party witnesses in its pre-suit investigation of Google *until 2020*. Ex. 3.

Against that backdrop, there is no basis for *in camera* review of any documents prior to July 2019 because Texas has sworn that it began its investigation at that time, and the record demonstrates that the contours of Texas' investigation only came into focus in the months that followed. Plaintiffs' speculation that pre-2019 entries on Google's privilege logs *might* reflect what ultimately became *this* litigation, *see, e.g.*, Mot. at 2 n.2, 6, 9, is illogical and unfounded.[16]

The Court has already rejected Plaintiffs' argument that they can enforce preservation duties owed to other litigants, because "the duty to preserve evidence is owed to a specific party and does not 'shift' over time," and any other approach would be "unreasonable, unfair, and unworkable." ECF 776 at 10-15 (citing *In re Delta/AirTran Baggage Fee Antitrust Litig.*, 770 F. Supp. 2d 1299 (N.D. Ga. 2011)). Plaintiffs' request for *in camera* review dating back to *2015* amounts to a de facto request that the Court reconsider and overturn its January 17 Order. But the Court has already stated that it was "unclear why the States selected January 1, 2015, as the date when Google's duty to preserve data commenced," ECF 776 at 7 n.2, and that Plaintiffs "provide[d] no meaningful guidance on this point," *id.* at 20. The instant Motion provides no

---

[16] Likewise, there is no basis for Plaintiffs' speculation that, because terms like "State AG" appear in pre-2019 log entries, Google must have figured out—before the States did—that these Plaintiffs would one day investigate or sue Google for anticompetitive or deceptive practices in display advertising, in particular. Mot. at 8. Google has never suggested that these log entries are related to "*this* massive, complex lawsuit, from *these* litigants." ECF 776 at 20 (emphasis in original). Google is an innovative and complex company and, as such, is a frequent litigant and subject of investigations all over the globe. The fact that documents associated with these kinds of investigations may have met the broad criteria for production in this case neither shows they were prepared for this case, nor strips them of their privilege. ECF 776 at 21 ("[D]ocuments reflecting attorney work product remain protected from disclosure in subsequent litigation matters even after the circumstances that originally gave rise to the protection no longer exist."); *see also In re Grand Jury Proceedings*, 43 F.3d 966, 971 (5th Cir. 1994).

further guidance[17]—meaningful or otherwise—much less "any authority that would support such a sweeping and novel theory of spoliation." *In re Delta*, 770 F. Supp. 2d at 1307.[18] In light of Plaintiffs' sworn evidence, it is simply not credible that Google "should have 'reasonably anticipated' *this* massive, complex lawsuit, from *these* litigants" prior to July 2019—and certainly not back in 2015. *Cf. N. Am. Sci. Assocs., LLC v. Conforti*, 2024 WL 4903753, at *18 (D. Minn. Nov. 27, 2024) ("[Plaintiff] has not identified any reason why, when [Plaintiff] did not believe litigation was imminent . . . [Defendants] would have done so.").

### B. Plaintiffs Have Not Met Their Burden To Warrant *In Camera* Review of Documents Dated Between July 2019 and September 2019.

In its January 17 Order, the Court recognized the date Texas issued its CID as the relevant date for Google's preservation obligations to commence in this case, concluding that any attempt to select an earlier date as "the point in time where Google should have 'reasonably anticipated' *this* massive, complex lawsuit, from *these* litigants" would be "at best, arbitrary, and, at worst, nonsensical." ECF 776 at 20 (emphasis in original). Yet, Plaintiffs again invite the Court to "spin the wheel" and select a preservation date ranging from "arbitrary" to "nonsensical." *Id.* at 20.

Given Texas's sworn statement that its investigation did not begin until July 2019, the ***only*** documents that the Court should even ***consider*** for *in camera* review are those dated between July 2019 and September 9, 2019 (when the Court determined Google's preservation obligations

---

[17] Plaintiffs assert that the 2015-2019 timeframe "contains many of the [15] documents" identified in the Motion, but the earliest document listed is from ***2017***. Mot. at 10 n.10.

[18] Plaintiffs assert that "[a] party's duty to preserve can arise before a CID is served." Mot. at 9, n.8, by citing *Phillip M. Adams & Assocs., L.L.C. v. Dell, Inc*., 621 F. Supp. 2d 1173 (D. Utah 2009). But *Dell* says no such thing: there was no CID at issue, and the court found that the defendant's preservation obligation arose from the filing and settlement of related class action lawsuits dealing with the same defect. *See id.* at 1190-92. Plaintiffs also cite *LendingTree, LLC v. Zillow, Inc*., 2014 WL 1309305 (W.D.N.C. Mar. 31, 2014), to argue that a party's duty to preserve can coincide with an assertion of work-product protection. But *LendingTree* concerned a work-product assertion ***by plaintiffs*** who had been put on notice of the specific defendant's potentially infringing patent. *See id.* at *6.

began). Plaintiffs have identified only two such documents, neither of which supports an earlier preservation obligation date. As noted on Appendix A,[19] the first document (dated August 16, 2019, GGPL-2300103155) merely relates to the possibility that State Attorneys General would join the Department of Justice in some investigation into unspecified issues. App'x. A, No. 13. Three days later, the press reported that the States' investigations were "still taking shape"; investigators had "not formally agreed on a specific plan of action"; and the "details" were "still being discussed." Ex. 1. The second document (GGPL-1011589412) is dated September 6, 2019— a mere three days prior to Texas's first CID—and references a potential announcement by state AGs investigating Google regarding unspecified competition issues based on unknown legal theories. App'x. A, No. 14.

This is all consistent with the chronology described above, *supra* at 8-9, and an *in camera* review is not necessary to conclude that these privileged documents fail to trigger any earlier preservation obligation in this case. Google does not dispute that by August 2019, it had become generally aware that certain States planned to announce some investigation of unspecified breadth. *See, e.g.*, Ex. 1. But Google could not have reasonably anticipated the specific contours of "*this* massive, complex lawsuit, from *these* litigants," ECF 776 at 20, before Texas's first CID.[20] *See*

---

[19] Where—unlike here—the dispute is over whether a document is in fact privileged, and a party provides a sufficiently detailed privilege log, then a court may credit the descriptions on the log and decline an *in camera* review. *See King v. Univ. Healthcare Sys., L.C.*, 645 F.3d 713, 721 (5th Cir. 2011) (trial court properly declined to conduct *in camera* review where it credited privilege log descriptions that included "the authors and recipients of the e-mails, a brief description of each withheld communication, the amount of each document withheld, and the type of privilege asserted."). Here, given that Plaintiffs do not challenge Google's privilege but instead seek a review to determine whether Google was anticipating *this* lawsuit, Google has—where necessary—provided additional details on Appendix A to satisfy the Court (without waiving any privilege) that review is unwarranted.

[20] Google has addressed the two documents Plaintiffs specifically identified between the start of the States' investigation and Texas's first CID. As to the remaining 13, nine do not relate to a State AG investigation *at all*, App'x A, Nos. 1–3, 6–11; one relates to an investigation by Missouri—

*Guzman v. Jones*, 804 F.3d 707, 713 (5th Cir. 2015) (duty to preserve arises "when the party has notice that the evidence is relevant to the litigation"); *Realnetworks, Inc. v. DVD Copy Control Ass'n, Inc.*, 264 F.R.D. 517, 526 (N.D. Cal. 2009) ("A general concern over litigation does not trigger a duty to preserve evidence.").[21]

By contrast, attorney work product is protected even when it does not relate to ***any*** specific claim or counterparty, but is generated in anticipation of potential litigation more generally. "It is often prior to the emergence of specific claims that lawyers are best equipped either to help clients avoid litigation or to strengthen available defenses should litigation occur." *In re Sealed Case*, 146 F.3d 881, 886 (D.C. Cir. 1998). "If lawyers had to wait for specific claims to arise before their writings could enjoy work-product protection, they would not likely risk taking notes about such matters or communicating in writing with colleagues, thus severely limiting their ability to advise clients effectively." *Id.*; *see also Udoewa v. Plus4 Credit Union*, 457 F. App'x 391, 393 (5th Cir. 2012) ("[T]he privilege can apply where litigation is not imminent, as long as the primary motivating purpose behind the creation of the document was to aid in possible future litigation."). As the Court recognized, a "duty to preserve potentially relevant evidence" is different because it only arises with respect to a specific lawsuit and specific litigants. ECF 776 at 10. Any other approach risks imposing an "unfair" and "unworkable" generalized duty based on nebulous and

---

not Texas, *id.*, No. 4; one relates to European Union investigations, *id.*, No. 5; one refers to potential investigations by State AGs into unspecified competition issues based on unknown legal theories, *id.*, No. 12; and the final document is dated November 1, 2019 and thus could not give rise to an earlier preservation date, *id.*, No. 15.

[21] *See also In re Enron Corp. Sec., Derivative & Erisa Litig.*, 762 F. Supp. 2d 942, 964 (S.D. Tex. 2010) ("A duty to preserve the evidence arises only when a party knows or reasonably should know that there is a substantial chance that a claim will be filed and that the evidence in its possession or control will be potentially relevant to *that* claim."); *Steves & Sons, Inc. v. JELD-WEN, Inc.*, 327 F.R.D. 96, 106 (E.D. Va. 2018) ("It is true that a vague or far-off possibility of litigation is insufficient to trigger the duty to preserve"). Likewise, Plaintiffs' speculation that Google received a "heads up" prior to September 9, 2019 that one or more states was investigating its advertising technology, ECF 776 at 8, does not change that conclusion.

uncertain claims. *Id.* at 15. Google's assertions of work product protection are consistent with these standards: anticipating potential litigation in general—even by "State AGs" or "Texas"—does not mean it was anticipating the specific claims that culminated in this massive, complex lawsuit.

### C.    Plaintiffs Have Not Met Their Burden To Warrant *In Camera* Review of Thousands of Additional Documents.

In addition to the fifteen documents identified by reference to specific privilege log entries, Plaintiffs also ask the Court to review thousands of additional documents spanning a four-year period. Mot. at 9-10. This sweeping request underscores that Plaintiffs' Motion is but a second bite at a bad apple and a waste of judicial resources. Discovery closed in May 2024, and the parties are now preparing for trial. The Court should not entertain a burdensome and speculative request so that Plaintiffs can try to bring forward Google's duty-to-preserve date by two months ***at most***. Importantly, any documents within the incremental time period ***truly*** at issue (July to September 2019) would be irrelevant to Plaintiffs' pending spoliation motion because that window contains none of the "key milestones" underpinning Plaintiffs' allegations, which range from 2006 to 2018. ECF 776 at 19-20; *see also* ECF 757 App'x. A.

While the overbreadth and irrelevance of Plaintiffs' sweeping search term request is something that the parties could have discussed—and potentially addressed—during a fulsome meet-and-confer process (*see supra* note 3), it is evident by running a simple keyword search over documents Google has already produced.[22] The Court should deny this request based on the significant burden alone. *See Smith v. Shelter Mut. Ins. Co.*, 2018 WL 1278429, at *2 (M.D. La.

---

[22] Plaintiffs could have ascertained from documents produced and redacted for privilege that several contain terms like "Texas" (one of Plaintiffs' requested terms) even though they have no bearing on the instant Motion. *See, e.g.*, GOOG-AT-MDL-019703688 (2019 Politico newsletter stating they are "excited to partner with the Texas Tribune"); GOOG-AT-MDL-019616479 (2015 email noting that case involving Google Chrome "goes back to East Texas" post-appeal); GOOG-DOJ-06648387 (2016 email referencing "low-traffic roads in the state of Texas").

Mar. 12, 2018) (denying *in camera* review of 139 documents because it "would constitute a great and unnecessary expenditure of judicial resources").[23]

### III. Plaintiffs Ignore the Attorney-Client Privilege and Have Not Met Their Heavy Burden To Compel Production of Google's Work Product.

#### A. Plaintiffs Ignore Attorney-Client Privilege.

Google asserted attorney-client privilege as to the majority of log entries identified in Plaintiffs' Motion. App'x A. "If the attorney-client privilege applies to a particular item, it is absolutely undiscoverable and the work-product rule does not apply." *Elec. Data Sys. Corp. v. Steingraber*, 2003 WL 21653414, at *1 (E.D. Tex. July 9, 2003) (denying motion to compel attorney-client privileged documents); *see also Bruno*, 2023 WL 3844182, at *3 (same). Because Plaintiffs have not challenged any of Google's assertions of attorney-client privilege, the Court need not consider Plaintiffs' assertions of substantial need. *See, e.g.*, *Markley v. U.S. Bank Nat'l Ass'n*, 2020 WL 12602882, at *5 (D. Colo. Dec. 29, 2020) ("Because this court finds that the attorney-client privilege attaches to these communications, it does not consider whether the attorney work product doctrine would also prevent disclosure."); *Shank v. Levin*, 2017 WL 11518102, at *3 (M.D. Pa. Nov. 29, 2017) (same).

#### B. Plaintiffs Fail To Overcome Work Product Protection.

Plaintiffs also are not entitled to production of Google's work product because Plaintiffs have not met either of the prerequisites to overcome work product protection, "(1) a substantial need of the privileged materials and (2) an inability to obtain the substantial equivalent of the material through other means without undue hardship." *United States ex rel. Fisher v. JPMorgan*

---

[23] *See also Jolivet*, 340 F.R.D. at 22-23 ("In camera review can be an enormous burden to the court…."); *CFE Int'l LLC v. Schnaas*, 2023 WL 6702486, at *10 (S.D. Tex. Oct. 12, 2023) (*in camera* review decision depends on facts "of the particular case, including . . . the volume of materials the district court has been asked to review [and] the relative importance to the case of the alleged privileged information[.]" (quoting *Zolin*, 491 U.S. at 572)).

*Chase Bank N.A.*, 2020 WL 3265060, at *5 (E.D. Tex. June 17, 2020).

Under the first prong, Plaintiffs' claim that they have a substantial need for the documents to know "what Google knew and when" to determine "when Google's obligation to preserve arose," Mot. at 11, makes no sense. If the Court were to determine based on *in camera* review that Google's preservation obligation arose before September 9, 2019—which is indeed what Plaintiffs request[24]—then **Plaintiffs** would have no need to review the underlying information themselves. In any event, "relevancy alone is not enough to establish substantial need," and Plaintiffs have made no effort to show that pinpointing a collateral discovery-on-discovery issue would provide sufficient justification to pierce work product protection here. *Madanes v. Madanes*, 199 F.R.D. 135, 150 (S.D.N.Y. 2001) ("[S]ubstantial need is shown where the work product material at issue is central to the substantive claims"). As to the second prong, Plaintiffs' claim that they cannot obtain that information elsewhere is patently false: Plaintiffs have a perfectly good source for information about when Google could have anticipated the litigation because they know when *they* began investigating the relevant conduct, in July 2019. ECF 46-1 at 1. They also know when they first informed Google of the investigation—or at the very least, could themselves find out, with a search of their own emails.[25]

## CONCLUSION

The Court should deny Plaintiffs' Motion.

---

[24] *See* Mot. at 5 ("The States request that the Court analyze the documents *in camera* to determine if they were created in anticipation of this litigation and if they were, use that evidence to determine when Google's obligation to preserve Chats began.").

[25] Texas has confirmed that "nearly all of the attorney authors of [the] memoranda [from the presuit investigation] no longer work at [Texas] OAG". *See* ECF 483 at 11 n.1. If Plaintiffs' ignorance of when the pre-suit investigation began is due to their spoliation of evidence from departed employees, that does not provide the "substantial need" necessary to overcome work product protections. *See, e.g.*, *Sullivan v. Warminster Twp.*, 274 F.R.D. 147, 153 (E.D. Pa. 2011) (no "substantial need" where the alleged lack of information "is Plaintiffs' own fault").

Dated: February 11, 2025

Respectfully submitted,

**FRESHFIELDS US LLP**

*/s/ Eric Mahr*
Eric Mahr (*pro hac vice*)
700 13th Street, NW
10th Floor
Washington, DC 20005
Tel.: (202) 777-4545
eric.mahr@freshfields.com

**GIBBS & BRUNS LLP**

Kathy D. Patrick
State Bar No. 15581400
KPatrick@gibbsbruns.com

1100 Louisiana, Suite 5300
Houston, Texas 77002
Tel.: (713) 650-8805
Fax: (713) 750-0903

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I certify that on February 11, 2025, this document was filed electronically in compliance with Local Rule CV-5(a) and served on all counsel who have consented to electronic service, per Local Rule CV-5(a)(3)(A).

*/s/ Eric Mahr*
Eric Mahr