**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| THE STATE OF TEXAS, et al, | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | Civil Action No. 4:20-cv-00957-SDJ |
| | § | |
| GOOGLE LLC, | § | |
| | § | |
| *Defendant.* | § | |

**DEFENDANT GOOGLE LLC'S SUPPLEMENTAL BRIEFING IN RESPONSE TO**
**<u>THE COURT'S MARCH 13, 2025 ORDER (ECF 825)</u>**

# Table of Contents

**Page**

I.    Introduction ................................................................................................................ 1

II.   Assessment of Penalties.............................................................................................. 4

  A.   *Tull* is Binding and Requires the Court to Assess Any Penalties. ....................... 5

  B.   The States' "Separate Route" is Baseless and Contravenes *Simler*................... 7

  C.   Taking the States' "Separate Route" Leads to the Same Result: The States'
      Legislatures Delegated Assessment of Penalties to the Court............................. 9

    1.   DTPA.......................................................................................................... 10

      a.   Utah.................................................................................................... 13

      b.   Texas.................................................................................................. 13

      c.   Puerto Rico ........................................................................................ 14

    2.   State Antitrust ............................................................................................ 15

      a.   Four States Cannot Recover Antitrust Penalties................................ 15

      b.   Six States Mandate that the Court Decides Antitrust Penalties.......... 16

      c.   Seven States are Silent but Look to Federal Law, which Mandates that the
        Court Decides Antitrust Penalties...................................................... 18

III.  Liability ..................................................................................................................... 20

  A.   DTPA ................................................................................................................. 20

    1.   The States' DTPA Jury Demand Fails Step One of the *Tull/Jarkesy* Analysis............. 20

      a.   The States Cannot Avoid the Requirement to Prove Injury and Harm. .................. 21

      b.   There is No Common Law Analog for the States' DTPA Claims. .......................... 23

        i.    The Parties' Prior Dismissal Arguments Addressed this Point. ................. 24

        ii.   The States' Own Courts Agree: the DTPA is Not Analogous to
          Common Law Fraud. ................................................................. 26

        iii.  Historical Evidence Confirms the Lack of Common Law
          Analog—and that the Closer Analog is in Equity. ................................ 29

        iv.   A Common Law Action for Debt is Not Analogous, Either. ...................... 30

      c.   The States Cannot Have It Both Ways. .................................................... 31

    2.   The Remedy Sought, which is "More Important" in the *Tull/Jarkesy* Analysis,
      Confirms That the States' DTPA Claims are Equitable. ................................ 32

a. An "Intertwined" Equitable Remedy is One in Which a Monetary Award is Derived From or in Addition to Equitable Relief. ................................ 33

b. In Eleven States' DTPAs, Penalties Are Always Intertwined with Equitable Relief. ................................................................................................ 35

    i. Texas ..................................................................................... 35

    ii. Alaska ................................................................................... 37

    iii. Arkansas ............................................................................... 39

    iv. Indiana .................................................................................. 40

    v. Kentucky ............................................................................... 41

    vi. Louisiana .............................................................................. 42

    vii. Mississippi ........................................................................... 44

    viii. Missouri ................................................................................ 45

    ix. Montana ................................................................................ 48

    x. South Carolina ...................................................................... 49

    xi. South Dakota ........................................................................ 50

**Eleven States: Conclusion** ......................................................................... 51

c. Five States' DTPAs: Penalties Intertwined With Equitable Relief Here. ................. 52

    i. Florida ................................................................................... 52

    ii. Idaho ..................................................................................... 53

    iii. Nevada .................................................................................. 55

    iv. North Dakota ........................................................................ 57

    v. Utah ...................................................................................... 58

**Five States: Conclusion** ............................................................................. 59

d. Puerto Rico: Cannot Bring DTPA Claims in this Court. ................................ 59

e. Any Uncertainty Weighs in Favor of Dismissal Under 28 U.S.C. § 1367(c) ............ 61

3. The States Fail to Substantively Engage with the "Incidental to" or "Intertwined with" Issue. .......................................................................................... 62

B. Antitrust ......................................................................................................... 66

1. In Antitrust Actions, the *Tull* Step Two Analysis is Dispositive. ..................... 66

2. The Remedy Sought by Nearly All of the States' Antitrust Claims is Equitable. ......... 68

a. Federal Claims .................................................................................... 68

b. State Claims ........................................................................................ 69

i.   In Nine States, Civil Penalties are Intertwined with Injunctive Relief. ................................................................................. 70

     (a)   Alaska ................................................................. 70

     (b)   Louisiana .............................................................. 71

     (c)   Montana ............................................................... 71

     (d)   Nevada ................................................................ 72

     (e)   North Dakota .......................................................... 73

     (f)   South Carolina ........................................................ 74

     (g)   South Dakota .......................................................... 75

     (h)   Texas ................................................................. 75

     (i)   Utah .................................................................. 76

ii.  Three States Do Not or Cannot Seek Civil Penalties, Leaving Only Injunctive Relief. ............................................................. 77

     (a)   Indiana ............................................................... 78

     (b)   Missouri .............................................................. 78

     (c)   Puerto Rico ........................................................... 78

iii. Arkansas and Idaho Cannot Recover Civil Penalties *or* Injunctive Relief, the Only Forms of Relief They Have Pled. .................. 79

     (a)   Arkansas .............................................................. 79

     (b)   Idaho ................................................................. 81

iv.  Florida, Kentucky, and Mississippi are Not Entitled to Have a Texas Jury Resolve Their State Law Antitrust Claims. .......................... 83

     (a)   Florida ............................................................... 84

     (b)   Kentucky .............................................................. 84

     (c)   Mississippi ........................................................... 86

v.   Even If a Fraction of States Has Jury Rights on Antitrust Penalty Claims, the Proper Recourse is to Sever Those Claims by Declining Supplemental Jurisdiction. ....................................... 86

IV.  Resolving Legal and Equitable Claims. .............................................. 89

  A. If a State Has Both Equitable and Legal Claims, There is No Circumstance in Which the Jury May Decide Both. ...................................................... 89

  B. If a State Has Both Equitable and Legal Claims, All Claims Must Nevertheless Be Decided by the Court if the Seventh Amendment Does Not Apply to the States. ............ 94

C.  If There is a Mismatch of States, in which Some States' Claims are Equitable while Other States' Claims are Legal, the Court Should Sever the Legal States Or Else Face a Gargantuan Task of Categorizing Overlapping Elements...........................94

V.  Conclusion ...................................................................................................... 95

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Abbott*,
117 F.4th 729 (5th Cir. 2024) ................................................................67

*Adams v. Cyprus Amax Minerals Co.*,
149 F.3d 1156 (10th Cir. 1998) ..............................................................64

*Agostini v. Felton*,
521 U.S. 203 (1997) ..............................................................................5, 6

*Aguadilla Paint Center, Inc. v. Esso Standard Oil Co. (Puerto Rico)*,
2011 WL 6759549 D.P.R. 901, 83 P.R. Offic. Trans. 44 (P.R. Dec. 15, 2011)
................................................................................................14, 20, 60, 68

*Alakayak v. B.C. Packers, Ltd.*,
48 P.3d 432 (Alaska 2002) ......................................................................18

*Allison v. Citgo Petroleum Corp.*,
151 F.3d 402 (5th Cir. 1998) ..............................................................89, 92

*Associated Inv. Co. P'ship v. Williams Assocs. IV*,
645 A.2d 505 (Conn. 1994) .....................................................................27

*Atlas Roofing Co. v. Occupational Safety & Health Review Comm'n*,
430 U.S. 442 (1977) ....................................................................21, 28, 29

*Bailey v. Bailey*,
731 F. App'x 272 (5th Cir. 2018) ..............................................................9

*Baird v. Norwest Bank*,
843 P.2d 327 (Mont. 1992) ......................................................................26

*Bank of New York Mellon v. WMC Mortg., LLC*,
2015 WL 4164691 (S.D.N.Y. July 10, 2015) ...........................................65

*Bastian v. Petren Resources Corp.*,
892 F.2d 680 (7th Cir. 1990) .............................................................24, 26

*Beacon Theatres, Inc. v. Westover*,
359 U.S. 500 (1959) ....................................................................29, 66, 67

*Betsinger v. D.R. Horton, Inc.*,
232 P.3d 433 (Nev. 2010) ........................................................................26

vi

*Betterman v. Montana,*
578 U.S. 437 (2016)................................................................................29

*Borst v. Chevron Corp.,*
36 F.3d 1308 (5th Cir. 1994) ................................................ *passim*

*Boumediene v. Bush,*
553 U.S. 723 (2008)................................................................................29

*Briscoe v. LaHue,*
460 U.S. 325 (1983)................................................................................29

*Broaddus v. Florida Power Corp.,*
145 F.3d 1283 (11th Cir. 1998) ..........................................................92

*Brock v. Superior Care, Inc.,*
840 F.2d 1054 (2d Cir. 1988)..............................................................64

*Browning-Ferris Indus. of Vt., Inc. v. Kelco Disposal, Inc.,*
492 U.S. 257 (1989)................................................................................22

*Burns v. Alcala,*
420 U.S. 575 (1975)........................................................................36, 38

*Byrd v. Blue Ridge Rural Elec. Co-op., Inc.,*
356 U.S. 525 (1958)..................................................................................9

*Byrnes v. Parker Drilling Offshore USA, LLC,*
2006 WL 1098900 (E.D. La. Feb. 16, 2006) ..................................88

*Caller-Times Pub. Co., Inc. v. Triad Commc'ns, Inc.,*
826 S.W.2d 576 (Tex. 1992)................................................................91

*Casciola v. F.S. Air Serv., Inc.,*
120 P.3d 1059 (Alaska 2005)..............................................................38

*Cemex de Puerto Rico, Inc. v. Terrassa Concrete Indus., Inc.,*
2024 WL 2332605 (P.R. Cir. Apr. 26, 2024) ..........................15, 60

*Cenco, Inc. v. Seidman & Seidman,*
686 F.2d 449 (7th Cir. 1982) ..............................................................24

*Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry,*
494 U.S. 558 (1990)................................................................ *passim*

*Chesapeake Expl., LLC v. Whillock,*
432 S.W.3d 61 (Ark. App. 2014)........................................................40

vii

*Circuit City Stores, Inc. v. Adams*,
    532 U.S. 105 (2001) ................................................................................................40, 61

*City of El Paso, Tex. v. El Paso Entm't Inc.*,
    464 F. App'x 366 (5th Cir. 2012) ...........................................................................53

*City of Monterey v. Del Monte Dunes at Monterey, Ltd.*,
    526 U.S. 687 (1999) ................................................................................................67

*Cooper Indus., Inc. v. Leatherman Tool Grp., Inc.*,
    532 U.S. 424 (2001) ................................................................................................22

*Crane Co. v. Am. Standard, Inc.*,
    490 F.2d 332 (2d Cir. 1973) ...................................................................................63

*Crocker v. Piedmont Aviation, Inc.*,
    49 F.3d 735 (D.C. Cir. 1995) .......................................................................33, 34, 63

*Curtis v. Loether*,
    415 U.S. 189 (1974) ................................................................................................27

*Dairy Queen, Inc. v. Wood*,
    369 U.S. 469 (1962) ......................................................................................... *passim*

*David Jason West & Pydia, Inc. v. State*,
    212 S.W.3d 513 (Tex. App.--Austin 2006) .............................................................91

*Day v. GEICO Cas. Co.*,
    2023 WL 2250273 (N.D. Cal. Feb. 27, 2023) ........................................................27

*Delgado v. Shell Oil Co.*,
    890 F. Supp. 1324 (S.D. Tex. 1995) .......................................................................88

*Derouen v. Hercules Liftboat Co., LLC*,
    2016 WL 5869786 (E.D. La. Oct. 7, 2016) ............................................................87

*Doe v. Boys Clubs of Greater Dallas, Inc.*,
    907 S.W.2d 472 (Tex. 1995) ...................................................................................91

*Dole v. United Steelworkers of Am.*,
    494 U.S. 26 (1990) ..................................................................................................60

*Dominguez v. Gulf Coast Marine & Assocs., Inc.*,
    2011 WL 1526973 (E.D. Tex. Apr. 20, 2011) ........................................................88

*Dubin v. United States*,
    599 U.S. 110 (2023) ................................................................................................72

*Dura Pharmaceuticals, Inc. v. Broudo*,
    544 U.S. 336, 343-44 (2005) .......................................................................................23

*Elson v. Black*,
    56 F.4th 1002 (5th Cir. 2023) ....................................................................................24

*Enochs v. Lampasas Cty.*,
    641 F.3d 155 (5th Cir. 2011) ......................................................................................61

*Entergy Arkansas, Inc. v. Nebraska*,
    358 F.3d 528 (8th Cir. 2004) ...............................................................................63, 64

*Feltner v. Columbia Pictures Television, Inc.*,
    523 U.S. 340 (1998) ..........................................................................................5, 6, 7, 8

*Fleitmann v. Welsbach St. Lighting Co. of Am.*,
    240 U.S. 27 (1916) .....................................................................................................67

*FN Herstal SA v. Clyde Armory Inc.*,
    838 F.3d 1071 (11th Cir. 2016) ..................................................................................89

*Franklin v. Apple Inc.*,
    569 F. Supp. 3d 465 (E.D. Tex. 2021) ..................................................................24, 91

*Gasperini v. Ctr. for Humanities, Inc.*,
    518 U.S. 415 (1996) (Scalia, J., dissenting)................................................................9

*Gauthreaux v. Baylor Univ. Med. Ctr.*,
    876 F. Supp. 847 (N.D. Tex. 1994) ...........................................................................87

*Goar v. Compania Peruana de Vapores*,
    688 F.2d 417 (5th Cir. 1982) .......................................................................................9

*Golden v. Kelsey-Hayes Co.*,
    73 F.3d 648 (6th Cir. 1996) ..................................................................................64, 65

*Granfinanciera v. Nordberg*,
    492 U.S. 33 (1989)............................................................................................. *passim*

*Great W. Directories, Inc. v. Sw. Bell Tel. Co.*,
    63 F.3d 1378 (5th Cir. 1995) ......................................................................................91

*Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Foundation, Inc.*,
    484 U.S. 49 (1987)............................................................................................. *passim*

*Hall v. Cole*,
    412 U.S. 1 (1973)........................................................................................................32

*Hope Med. Enters., Inc. v. Fagron Compounding Servs., LLC*,
  2021 WL 2941546 (C.D. Cal. Jul. 12, 2021) ................................................................27, 28

*HPC Biologicals, Inc. v. UnitedHealthcare of La., Inc.*,
  194 So. 3d 784 (La. App. 1 Cir. 2016) .............................................................................18

*Hudspeth v. Enter. Life Ins. Co.*,
  358 S.W.3d 373 (Tex. App.—Houston [1st Dist.] 2011) .....................................................91

*Jarecki v. G. D. Searle & Co.*,
  367 U.S. 303 (1961)........................................................................................................72

*Kramer v. Banc of Am. Sec., LLC*,
  355 F.3d 961 (7th Cir. 2004) .........................................................................................89

*Lankhorst v. Ind. Sav. Plan Co.*,
  2012 WL 13098680 (M.D. Fla. Feb. 23, 2012) ...............................................10, 12, 27, 28

*Major Mart, Inc. v. Mitchell Distrib. Co., Inc.*,
  46 F. Supp. 3d 639 (S.D. Miss. 2014)..............................................................................18

*Markman v. Westview Instruments, Inc.*,
  517 U.S. 370 (1996).................................................................................................21, 28

*Massachusetts v. Morash*,
  490 U.S. 107 (1989).......................................................................................................60

*McDonnell v. United States*,
  579 U.S. 550 (2016).................................................................................................72, 73

*State ex rel. McLeod v. C & L Corp.*,
  313 S.E.2d 334 (S.C. Ct. App. 1984), *abrogated on other grounds by Murphy
  v. Owens-Corning Fiberglas Corp.*, 550 S.E.2d 589 (S.C. Ct. App. 2001) ..........................26

*Molano v. State*,
  262 S.W.3d 554 (Tex. App.—Corpus Christi 2008) ..........................................................14

*Nat. Res. Def. Counsel v. Illinois Power Res., LLC*,
  2017 WL 3037434 (C.D. Ill. July 18, 2017)......................................................................6

*NLRB v. Jones & Laughlin Steel Corp.*,
  301 U.S. 1 (1937)...........................................................................................................21

*Oficina de Asuntos Monopolisticos del Departamento de Justicia v. Abarca
  Health, LLC*,
  2025 WL 894419 ...........................................................................................................15

*Olshausen v. Comm'r of Internal Revenue,*
273 F.2d 23 (9th Cir. 1959) ..................................................................................31

*Paolino v. JF Realty,*
2013 WL 12320080 (D.R.I. Aug. 8, 2013) .........................................................63, 64

*Pasley v. Freeman,*
100 Eng. Rep. (1789) ...........................................................................................23

*Pleasant v. McDaniel,*
550 S.W.3d 8 (Ark. Ct. App. 2018) ......................................................................26

*Porter v. Warner Holding Co.,*
328 U.S. 395 (1946) .............................................................................................40

*Portuondo v. Agard,*
529 U.S. 61 (2000) .................................................................................................8

*Ralph Blechman, Inc. v. I.B. Kleinert Rubber Co.,*
98 F. Supp. 1005 (S.D.N.Y. 1951) ........................................................................67

*Resolution Tr. Corp. v. Marshall,*
939 F.2d 274 (5th Cir. 1991) .................................................................................9

*Reyes v. N. Tex. Tollway Auth.,*
830 F. Supp. 2d 194 (N.D. Tex. 2011) ..................................................................21

*Robinson v. Brown,*
320 F.2d 503 (6th Cir.1963) ................................................................................53

*Rodriguez de Quijas v. Shearson/Am. Express, Inc.,*
490 U.S. 477 (1989) ............................................................................................5, 6

*Roscello v. Southwest Airlines Co.,*
726 F.2d 217 (5th Cir. 1984) ...............................................................................93

*Russello v. United States,*
464 U.S. 16 (1983) ..............................................................................36, 42, 48, 55

*Sanchez v. Esso Standard Oil De Puerto Rico, Inc.,*
2010 WL 3087485 (D.P.R. Aug. 5, 2010) .............................................................64

*Sanijet Corp. v. Jacuzzi Inc.,*
2002 WL 1398546 (N.D. Tex. Feb. 14, 2002) .................................................68, 77

*SEC v. Collector's Coffee, Inc.,*
2025 WL 752221 (S.D.N.Y. Mar. 10, 2025) ......................................................6, 7

*SEC v. Jarkesy*,
 603 U.S. 109 (2024) ................................................................................................ *passim*

*SEC v. Life Partners Holdings, Inc.*,
 854 F.3d 765 (5th Cir. 2017) ................................................................................. 90

*SEC v. TKO Farms, Inc.*,
 2024 WL 4896204 (C.D. Cal. Sept. 20, 2024) ...................................................... 6

*Simler v. Conner*,
 372 U.S. 221 (1963) ................................................................................................ *passim*

*Smith v. Baldwin*,
 611 S.W.2d 611 (Tex. 1980) ................................................................................. 26

*Sommers Drug Stores Co. Emp. Profit Sharing Trust v. Corrigan*,
 883 F.2d 345 (5th Cir. 1989) ................................................................................. 22

*Sprague v. Ticonic Nat. Bank*,
 307 U.S. 161 (1939) ............................................................................................... 32

*Springer v. Rodriguez*,
 2019 WL 4417805 (S.D. Tex. Aug. 20, 2019) ...................................................... 19

*Star Tobacco, Inc. v. Darilek*,
 298 F. Supp. 2d 436 (E.D. Tex. 2003) .................................................................. 91

*State v. Eli Lilly & Co.*,
 2009 WL 6058384 (S.C. Com. Pl. Sept. 22, 2009) ...................................... 12, 13, 17

*State v. O'Neill Investigations, Inc.*,
 609 P.2d 520 (Alaska 1980) .................................................................................. 38

*State v. Standard Oil Co.*,
 107 S.W.2d 550 (Tex. 1937) ................................................................................. 76

*State v. Western Capital Corp.*,
 290 N.W.2d 467 (S.D. 1980) ................................................................................. 51

*State v. Yazaki N. Am., Inc.*,
 294 So. 3d 1178 (Miss. 2020) ............................................................................... 45

*Terrell v. DeConna*,
 877 F.2d 1267 (5th Cir.1989) ............................................................................... 53

*Texas v. Penguin Group (USA) Inc.*,
 2013 WL 1759567 (S.D.N.Y. Apr. 24, 2013) ...................................................... 67

*Timbs v. Indiana,*
    586 U.S. 146 (2019) ............................................................................22

*Town of Chester, N.Y. v. Laroe Estates, Inc.,*
    581 U.S. 433 (2017) ............................................................................21

*Tull v. United States,*
    481 U.S. 412 (1987) ..................................................................... *passim*

*United Mine Workers of Am. v. Gibbs,*
    383 U.S. 715 (1966) .....................................................................61, 62

*United States v. Bajakajian,*
    524 U.S. 321 (1998) ............................................................................22

*United States v. Cleveland Indians Baseball Co.,*
    532 U.S. 200 (2001) .....................................................................13, 37

*United States v. ERR, LLC,*
    35 F.4th 405 (5th Cir. 2022) .................................................27, 90, 93

*United States v. Google,*
    No. 23-cv-108, ECF 748 (June 11, 2024) ........................................67

*United States v. Morton,*
    467 U.S. 822 (1984) ............................................................................43

*Univ. of Texas Sw. Med. Ctr. v. Nassar,*
    570 U.S. 338 (2013) ............................................................................23

*Vape Cent. Grp., LLC v. U.S. FDA,*
    2025 WL 637416 (D.D.C. Feb. 27, 2025) ..........................................6

*Whiting v. Jackson State Univ.,*
    616 F.2d 116 (5th Cir. 1980) .............................................................32, 69

*In re Zyprexa Prods. Liab. Litig.,*
    671 F. Supp. 2d 397 (E.D.N.Y. 2009) ..............................................22

**Statutes**

10 L.P.R.A. § 259 *et seq.* ...................................................... *passim*

10 L.P.R.A. § 266 ...................................................................................78

10 L.P.R.A. § 269 ............................................................................59, 60

15 U.S.C. § 1 ......................................................................... *passim*

15 U.S.C. § 2 ................................................................................................................19

15 U.S.C. § 26 .......................................................................................................68, 77

18 U.S.C. § 201(a)(3) ....................................................................................................73

28 U.S.C. § 1367 ......................................................................................................3, 69

28 U.S.C. § 1367(c) ...................................................................................19, 35, 61, 87

33 U.S.C. § 1365 ..........................................................................................................54

Alaska Stat. § 45.50.501(a) ..........................................................................................38

Alaska Stat. § 45.50.551(b) .............................................................................10, 12, 38

Alaska Stat. § 45.50.578 ..............................................................................................18

Alaska Stat. § 45.50.578(b) ..........................................................................................71

Alaska Stat. § 45.50.580(a) ..........................................................................................70

Ark. Code § 4-75-315 ...................................................................................................81

Ark. Code § 4-75-315(a) ..................................................................................15, 80, 81

Ark. Code § 4-75-315(b) ........................................................................................16, 80

Ark. Code § 4-88-104 .............................................................................................39, 40

Ark. Code § 4-88-113(a) ..................................................................................10, 12, 39, 40

Fla. Stat. § 501.201 ......................................................................................................52

Fla. Stat. § 501.207(1) ..................................................................................................53

Fla. Stat. § 501.2075 .................................................................................10, 52, 53, 63

Fla. Stat. § 542.21 ........................................................................................................18

Fla. Stat. § 542.21(1) ..............................................................................................84, 87

Fla. Stat. § 542.21(2) ....................................................................................................84

Fla. Stat. § 542.23 ........................................................................................................84

Fla. Stat. § 542.32 ........................................................................................................18

Idaho Code § 48-104 .......................................................................................16, 17, 82

Idaho Code § 48-108 ................................................................................................ 81, 83

Idaho Code § 48-108(1) .................................................................................................... 15

Idaho Code § 48-108(2) ............................................................................................... 16, 83

Idaho Code § 48-112 ........................................................................................................ 81

Idaho Code § 48-606(1) ......................................................................................... 10, 53, 54

Idaho Code § 108(1) ......................................................................................................... 83

Idaho Code § 108(2) ......................................................................................................... 83

Ind. Code § 24-1-2-5.1(c) ................................................................................................. 78

Ind. Code § 24-5-0.5-4(c) ................................................................................................. 41

Ind. Code § 24-5-0.5-4(g) ..................................................................................... 10, 40, 63

Ky. Rev. Stat. § 15.020(1) ................................................................................................ 85

Ky. Rev. Stat. § 367.110 ................................................................................................... 85

Ky. Rev. Stat. § 367.170 ............................................................................................. passim

Ky. Rev. Stat. § 367.175 .............................................................................................. 16, 86

Ky. Rev. Stat § 367.190 ......................................................................... 11, 41, 42, 85

Ky. Rev. Stat. § 367.190(1) ......................................................................................... 42, 85

Ky. Rev. Stat. § 367.990 ................................................................................................... 85

Ky. Rev. Stat. § 367.990(2) ........................................................................................ passim

Ky. Rev. Stat. § 367.990(8) ................................................................................ 16, 85, 86, 87

La. Rev. Stat. § 51:123 ................................................................................................ 18, 71

La. Rev. Stat. § 51:128 ..................................................................................................... 71

La. Rev. Stat. § 51:1407(A) .............................................................................................. 43

La. Rev. Stat. § 51:1407(B) ....................................................................................... 11, 12, 43

La. Rev. Stat. § 51:1407(C) .............................................................................................. 43

Miss. Code § 75-21-7 ...................................................................................... 18, 86, 87

Miss. Code § 75-24-5(1) ...................................................................................................11, 44, 45

Miss. Code § 75-24-9 ........................................................................................................11, 44, 45

Miss. Code § 75-24-19(1)(b) ......................................................................................11, 12, 44, 63

Mo. Rev. Stat. § 407.100 ......................................................................................................45, 46

Mo. Rev. Stat. § 407.100(1) ........................................................................................................46

Mo. Rev. Stat. § 407.100(2) ........................................................................................................46

Mo. Rev. Stat. § 407.100(3) ........................................................................................................46

Mo. Rev. Stat. §§ 407.100(4)–(5) ...............................................................................................46

Mo. Rev. Stat. § 407.100(6) ............................................................................................11, 12, 47

Mo. Rev. Stat. § 416.051 ..............................................................................................................78

Mont. Code § 30-14-111 ..............................................................................................................48

Mont. Code § 30-14-142 ..................................................................................................11, 12, 48, 63

Mont. Code § 30-14-222 .......................................................................................................16, 72

N.D. Cent. Code § 51-08.1-07 ...............................................................................................17, 73

N.D. Cent. Code § 51-15-07 ........................................................................................................57

N.D. Cent. Code § 51-15-11 ..................................................................................................12, 57

Nev. Rev. Stat. § 367.170 ............................................................................................................85

Nev. Rev. Stat. § 367.190 ............................................................................................................41

Nev. Rev. Stat. § 482.554 ............................................................................................................56

Nev. Rev. Stat. §§ 598.0903-598.0999 .................................................................................11, 55

Nev. Rev. Stat. § 598.0963(3) ......................................................................................................56

Nev. Rev. Stat. § 598.0973(1) ......................................................................................................55

Nev. Rev. Stat. § 598.0974 ...............................................................................................11, 55, 56

Nev. Rev. Stat. § 598.0999(2) .......................................................................................11, 55, 56, 63

Nev. Rev. Stat. §§ 598.0999(4)–(5) .............................................................................................55

Nev. Rev. Stat. § 598A.050................................................................18

Nev. Rev. Stat. § 598A.070(1)(c)................................................72, 73

Nev. Rev. Stat. § 598A.170................................................................18

S.C. Code § 39-5-20, *et seq.* ................................................12, 17, 74

S.C. Code § 39-5-50(a) ................................................................49, 74, 75

S.C. Code § 39-5-110(a) ........................................................... *passim*

S.D. Codified Law § 37-1-14.2................................................17, 75

S.D. Codified Law § 37-24-6................................................12, 50, 51

S.D. Codified Law § 37-24-23................................................12, 50, 51

S.D. Codified Law § 37-24-27................................................12, 50, 51, 63

Tex. Bus. & Com. Code § 15.04................................................18

Tex. Bus. & Com. Code § 15.05(b)................................................90

Tex. Bus. & Com. Code § 15.20................................................76, 85

Tex. Bus. & Com. Code § 15.20(a)................................................18

Tex. Bus. & Com. Code § 17.01 *et seq.* ................................................13

Tex. Bus. & Com. Code § 17.46(a)................................................90

Tex. Bus. & Com. Code § 17.47................................................14, 37, 62

Tex. Bus. & Com. Code § 17.47(a)................................................35, 36

Tex. Bus. & Com. Code § 17.47(c)................................................14, 35, 36, 90

Tex. Bus. & Com. Code § 503.001(d)................................................37

Utah Code §§ 13-11-1-23................................................13

Utah Code § 13-11-17................................................13, 58

Utah Code § 76-10-3108................................................18, 77

Utah Code § 76-10-3109(3)................................................77

Utah Code § 76-10-3118................................................19

## Other Authorities

E. Coke, *Fourth Institutes of the Laws of England* 84 (1797) ......................................................29

Fed. R. Civ. P. 9(b) ................................................................................................24, 25

Fed. R. Civ. P. 39 ...........................................................................................................94

Fed. R. Civ. P. 39(c) ...............................................................................................89, 94

Henry Home, Lord Kames, *Principles of Equity* 63 (3d ed. 1778) ..............................30

Merriam-Webster Dictionary (11th ed.) ......................................................................36

Restatement (Second) of Torts § 525 (1976) ..............................................................23

U.S. Const. amend. VII ....................................................................................... *passim*

U.S. Const. amend. XIV, § 1 .......................................................................................22

U.S. Const. art. III, § 2, cl. 1 ....................................................................21, 22, 26

12 W. Holdsworth, *A History of English Law* (1938)..................................................29

## I.    Introduction

As requested by the Court, Defendant Google respectfully submits this supplemental brief in support of its Motion to Strike Plaintiffs' Jury Demand for All Claims and Civil Penalties, ECF 690, addressing "the operation of the States' Deceptive Trade Practices Acts ('DTPA') and antitrust statutes, as well as the parties' precise arguments concerning the availability of jury trial for the States' DTPA and antitrust claims," ECF 825 (Order) at 1.

This brief first analyzes the Plaintiff States' demand for a jury to determine the amount of penalties based on *Tull v. United States*, 481 U.S. 412 (1987). Next, for completeness, it applies the States' erroneous "separate route"—which asks whether the State legislatures delegated the penalty determination to courts—to each State's DTPA and antitrust statutes. The brief then analyzes the right to have a jury decide liability by applying the test set forth in *Tull* and *SEC v. Jarkesy*, 603 U.S. 109 (2024), to each State's DTPA and antitrust statute in turn.

This analysis leads to one conclusion: there is no right to a jury on any issue. The Court must decide (1) the amount of any civil penalties awarded because *Tull* controls; (2) DTPA liability because there is no common law analog, and the remedy sought is wholly equitable; and (3) antitrust liability because courts treat the remedy as dispositive, and the remedy sought is wholly equitable for the vast majority of States.

The brief further explains these issues as follows:

1. As detailed below in Part II, the Supreme Court's binding decision in *Tull* is conclusive: no right to a jury determination of the amount of civil penalties exists for *any* of the States' claims. There is no authority to the contrary. The States' alternative test lacks any precedential support, ignores *Tull*, and blatantly contravenes *Simler v. Conner*, 372 U.S. 221 (1963). Even if it did not, the result

would be the same because nearly every State legislature expressly delegated penalty determinations to courts.

2.  As detailed below in Part III.A, the States' demand for a jury on DTPA liability fails both steps of the *Tull* and *Jarkesy* analysis. First, no claim at common law in 1791 would have allowed the States to establish liability or recover billions in penalties without proof of harm, injury, or causation. The States' contention that their DTPA statutes permit such an outcome, and the recognition by their respective Supreme Courts that DTPA claims are distinct from the common law, takes their claims entirely outside any common law analog, weighing strongly against any right to a jury trial of those claims in federal court. Second, as to the "more important" factor whether the remedy sought is legal or equitable, *Tull*, 481 U.S. at 422 n.7, the remedy sought by the States here is equitable because any award of civil penalties is "intertwined with" and "incidental to" injunctive relief under the States' DTPAs, *id.* at 424.

    a.  For eleven States (Texas, Alaska, Arkansas, Indiana, Kentucky, Louisiana, Mississippi, Missouri, Montana, South Carolina, and South Dakota), DTPA civil penalties are always intertwined with and incidental to injunctive relief under the plain terms of the statutes. As a result, the remedies sought are equitable in nature.

    b.  For five States (Florida, Idaho, Nevada, North Dakota, and Utah), DTPA civil penalties are intertwined with and incidental to injunctive relief as pleaded here. Again, the remedies sought are equitable in nature.

    c.  The remaining one (Puerto Rico) cannot seek civil penalties in this Court, but in any event, the penalties it seeks are intertwined with equitable relief.

3.  As detailed below in Part III.B, the States' demand for a jury on federal and state antitrust liability also fails. The Supreme Court, the Eastern District of Virginia, and the States themselves have all recognized that in antitrust actions, the remedy is dispositive. The States seek only equitable relief on their federal antitrust claims and a majority of state claims. Several other States do not (or cannot) seek antitrust civil penalties at all, confirming that Plaintiffs have no right to a jury.

    a.  In connection with the federal antitrust claims, the States admit that they seek only equitable relief.

    b.  For nine States (Texas, Alaska, Montana, Louisiana, Nevada, North Dakota, South Carolina, South Dakota, and Utah), antitrust civil penalties are always intertwined with and incidental to injunctive relief under the plain terms of the state statutes. Accordingly, the remedies sought are equitable in nature.

    c.  Three States (Indiana, Missouri, and Puerto Rico) do not or cannot seek civil penalties under the plain terms of their laws, so they can pursue only equitable injunctive relief in this matter.

    d.  Two States (Arkansas and Idaho) cannot seek civil penalties *or* injunctive relief under their laws. Because these States cannot obtain *any* relief, they are not entitled to try their claims to a jury (or the bench).

    e.  Should the Court find that the remaining three States (Florida, Kentucky, and Mississippi) are entitled to a jury, the solution is to sever and dismiss their claims under 28 U.S.C. § 1367 so they can be decided by courts within

those states—not to put the burden of sitting through weeks of trial and resolving complex issues of foreign state law on a jury of Texans.

4. Part IV addresses the Court's questions about the process for resolving a mix of legal and equitable claims, assuming the States have both legal and equitable claims. ECF 825 at 2. Even under that assumption, there is no circumstance in which a jury would resolve all claims; instead, there would be a jury phase and a bench phase, as this Court has already anticipated.[1] The Court would need to determine if any fact issues overlap between the legal and equitable claims and give those to the jury. There are no overlapping fact issues between the States' DTPA and antitrust claims, so if a given State's DTPA claim is equitable, but its antitrust claim is legal (or vice versa), a jury would decide the legal one, and the Court would decide the equitable one.

However, there are no legal claims in this case. The States therefore have no right to a jury trial, and their jury demand should be stricken.

## II. Assessment of Penalties

The States have no right to have a jury decide the amount of penalties if Google is found liable on any claim. *See Tull*, 481 U.S. at 427. The States admit that *Tull* "very clearly states that the amount of civil penalties is for the judge," 3/12/25 Hrg Tr. at 54:7–8, which should end the matter. They nonetheless suggest that the Court could disregard this binding Supreme Court precedent and look to state-specific procedure, ignoring that to do so would violate *Simler*—which unambiguously held that the right to a jury in federal court is determined according to federal law,

---

[1] The Court has already determined that "bifurcating equitable remedies, if any, will be more convenient for the Court and the Parties, and will expedite and economize this litigation." ECF 610 (Order on Joint Motion to Bifurcate) at 1.

not state law. 372 U.S. at 222. The States' invitation would put this Court on a wrong and fruitless path: nearly all of the States' DTPA and antitrust statutes delegate the assessment of penalties to courts anyway.

### A.  *Tull* is Binding and Requires the Court to Assess Any Penalties.

The United States Supreme Court has answered whether a jury right exists for determining the amount of penalties in the clearest possible terms: "We therefore **hold** that a determination of a civil penalty is not an essential function of a jury trial, and that the Seventh Amendment does not require a jury trial for that purpose in a civil action." *Tull*, 481 U.S. at 427.[2]

Despite that emphatic language—which this Court observed "is pretty strong that this is a holding," 3/12/25 Hrg Tr. at 56:2–3—the States urge the Court to set it aside as "dicta" that is "in tension" with other Supreme Court precedent. *Id*. at 54:12–16 (discussing two footnotes in *Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 354 nn.8–9 (1998)), 54:21–23 & 57:18–22. The Supreme Court itself rejects this approach:

> We do not acknowledge, and we do not hold, that *other courts* should conclude our more recent cases have, by implication, overruled an earlier precedent. We reaffirm that "[i]f a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, *the Court of Appeals should follow the case which directly controls*, leaving to this Court the prerogative of overruling its own decisions.

*Agostini v. Felton*, 521 U.S. 203, 237 (1997) (quoting *Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 484 (1989)); *see also Rodriguez de Quijas*, 490 U.S. at 485 ("The general rule of long standing is that the law announced in the Court's decision controls the case at bar."). The States' invitation that this Court disregard *Tull*'s holding because the Supreme Court in a subsequent case remarked in a footnote that the relevant portion of *Tull* was "arguably dicta,"

---

[2] Unless otherwise noted, all emphasis is added and internal citations and quotations are omitted.

*see Feltner*, 523 U.S. at 354 n.8, without addressing *Tull*'s characterization of its conclusion as a "hold[ing]," 481 U.S. at 427—is exactly what *Agostini* and *Rodriguez de Quijas* prohibit courts from doing.

Small wonder, then, that the States cite no case in which any court disregarded *Tull*'s ruling on penalties as mere dicta.[3] The *Tull* sentence in question starts with the phrase "[w]e therefore hold," 481 U.S. at 427, and as this Court noted, "Justice Scalia's dissent [in *Tull*] certainly seems to treat it as a holding." 3/12/25 Hrg Tr. at 56:11–12. Federal courts around the country—including several in the last few months—apply this core holding of *Tull* as binding.[4] And at least one court has rejected the exact argument Plaintiffs make based on *Feltner*. *See Nat. Res. Def. Counsel v. Illinois Power Res., LLC*, 2017 WL 3037434, at *3 (C.D. Ill. July 18, 2017). There, as here, the party seeking a jury "argue[d] that *Feltner* characterized *Tull* as dicta." *Id.* That argument was "unpersuasive," and the court concluded that "the Supreme Court did not overrule [*Tull*'s holding] in *Feltner*, nor can its holding overcome it." *Id.*

The Supreme Court's 2024 *Jarkesy* decision further demonstrates the point. There, the Supreme Court expressly "follow[ed] the approach set forth" in *Granfinanciera v. Nordberg*, 492 U.S. 33 (1989), and *Tull* to delineate the scope of the Seventh Amendment right to a jury trial in a statutory action—without questioning *Tull*'s core holding that there is no Seventh Amendment

---

[3] Even Justice Thomas, writing for the majority in *Feltner*, treated *Tull* as more than dicta, opting to distinguish the case as "inapposite" because of the historical differences between civil penalties and damages. 523 U.S. at 355. If the *Feltner* majority viewed *Tull* as dicta, there would have been no reason to distinguish it at all.

[4] *See, e.g.*, *SEC v. Collector's Coffee, Inc.*, 2025 WL 752221, at *7 (S.D.N.Y. Mar. 10, 2025) (relying on *Tull* to deny request for jury to determine remedies); *Vape Cent. Grp., LLC v. U.S. FDA*, 2025 WL 637416, at *7 (D.D.C. Feb. 27, 2025) ("The Supreme Court has also held that the Seventh Amendment does not require a jury trial for determination of a civil penalty amount."); *SEC v. TKO Farms, Inc.*, 2024 WL 4896204, at *1 (C.D. Cal. Sept. 20, 2024) ("[I]n *Tull v. United States*, the Supreme Court held [that] the mere assessment or calculation of civil penalties after liability had already been established did not create the right to a jury trial.").

right to a jury trial on the amount of penalties. *Jarkesy*, 603 U.S. at 121. As another federal court has noted, that "*Tull* is cited repeatedly with approval by the Supreme Court in *Jarkesy*[] reinforc[es the] conclusion that *Jarkesy* did not disturb the [amount-of-penalties] holding in *Tull*." *Collector's Coffee, Inc.*, 2025 WL 752221, at *7.

      *Tull* controls here. There is no right under the Seventh Amendment to a jury trial on the amount of civil penalties.

### B. The States' "Separate Route" is Baseless and Contravenes *Simler*.

      Recognizing that "it is quite possible to read section iii of *Tull* as a holding," the States nevertheless offer the Court a purported "separate route." 3/12/25 Hrg Tr. at 57:13–15. They suggest that this Court could disregard *Tull*'s holding and hold instead that (1) "the default rule for Seventh Amendment purposes is that juries decide the amount [of penalties]," but that (2) a sovereign—here, the States—can delegate the amount-of-penalties question "to the judge." *Id.* at 58:4–9. Under their test, the Court must look to the States' DTPA penalty statutes, and "where Google correctly says the States have decided to give [the amount-of-penalties decision] to the judge instead of the jury," the States agree that the Court decides; otherwise, the States would have a jury decide the amount. *Id.* at 58:13–17.

      Both steps on the States' "separate route" lead to error. As for their first premise, the States invent out of whole cloth a Seventh Amendment rule that juries should determine "quantit[ies]" of money, *id.* at 57:21–58:3—a category not used in any case cited by the States and one never used by the Supreme Court. They also conjure a false equivalence between damages and civil penalties, *id.* at 55:4–13, that the Supreme Court has rejected, *see Feltner*, 523 U.S. at 355. Determining damages requires fact-finding as to the amount of harm, while assessing penalties to be paid to the Government is "analogous to sentencing in a criminal proceeding," *id.*, involving questions historically left exclusively to judges, *Tull*, 481 U.S. at 427. And while there is historical evidence

that juries determined damages at common law, the Supreme Court has twice found (*Feltner* and *Tull*) no evidence that juries ever made penalty determinations. *See Feltner*, 523 U.S. at 355 ("In *Tull*, however, we were presented with no evidence that juries historically had determined the amount of civil penalties to be paid to the Government.").

The States have cited no evidence to fill that historical void; instead, they point to *Feltner*'s discussion of monetary compensation, not penalties. *See* ECF 753 (Resp. to Google's Mot. to Strike) at 13. But monetary compensation—damages—are not at issue here. The States' lack of historical evidence that juries determined the amount of penalties in 1791 is but another reason that a Seventh Amendment right does not attach. *Cf. Portuondo v. Agard*, 529 U.S. 61, 67 (2000) (rejecting claims under the Fifth and Sixth Amendments, because respondent "[l]ack[ed] any historical support for the constitutional rights that he asserts").

The second premise of the States test is even worse. The States reason that because *Tull* involved the *federal* legislature delegating the penalties decision to the court (permissibly so, *Tull* held, since there is no Seventh Amendment right), this Court should look to whether each *state* legislature, as the sovereigns here, did the same. 3/12/25 Hrg. Tr. at 58:4–59:23. But *Simler* and its progeny prohibit a federal court from looking to state law for procedural rules, including whether a jury right attaches. The States' response to this Court's rightful concern about *Simler* was, respectfully, a non sequitur: that the Court could still comply with the "federal rule about the division of labor between judges and juries" by looking to whether a jury right attaches under the law of each state, as the relevant sovereign here. *Id*. at 59:6–60:5. In a game of semantics to attempt to satisfy *Simler*, the States frame their proposal as a "federal rule" premised on state law determining whether a jury right exists.

That is not what *Simler* says at all. *Simler* is categorical: "[T]he right to a jury trial in the federal courts is to be determined as a matter of federal law in diversity as well as other actions." 372 U.S. at 222 (1963). The point of *Simler* is that "the jury-trial right is to be determined according to federal law" to achieve "uniformity in its exercise" *even when* state law governs the substantive claims, which was just as true in *Simler* as it is here. *Id.* Even before *Simler*, the Supreme Court emphasized the "strong federal policy against allowing state rules to disrupt the judge-jury relationship in federal courts." *Byrd v. Blue Ridge Rural Elec. Co-op., Inc.*, 356 U.S. 525, 538 (1958). It is so well established as to be axiomatic that there is no jury right in this federal court case because there is none under federal law, specifically *Tull*—even if a jury right were to attach under state law for the claim in question. *See, e.g.*, *Bailey v. Bailey*, 731 F. App'x 272, 276–77 (5th Cir. 2018) (no jury right in federal court despite jury right under Texas law); *Resolution Tr. Corp. v. Marshall*, 939 F.2d 274, 279 (5th Cir. 1991) (denying jury right where party argued Texas law provided one because "the Seventh Amendment does not guarantee a trial by jury to determine the amount of reasonable attorneys fees"); *Goar v. Compania Peruana de Vapores*, 688 F.2d 417, 423 (5th Cir. 1982) ("This rule operates … [to] require[] trial of certain issues by a judge when state law might allow a jury trial."); *cf. Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 465 (1996) (Scalia, J., dissenting) ("[N]o one would argue that *Erie* confers a right to a jury in federal court wherever state courts would provide it[.]"). Under the States' "separate route," any jury right for assessment of penalties turns on state law, not federal law. That violates *Simler*. End of story.

### C. Taking the States' "Separate Route" Leads to the Same Result: The States' Legislatures Delegated Assessment of Penalties to the Court.

There simply is no path, then, by which the States could avail themselves of any jury right for the assessment of penalties under the state statutes; they are wholly irrelevant here. Nonetheless, for completeness, the following analysis shows that even under the States' proposed

and erroneous test, *see* 3/12/25 Hrg. Tr. at 58:13–17, the assessment of penalties still belongs to the Court. The following sections analyze the States' DTPA and antitrust statutes in turn.

### 1. DTPA

Fourteen States' DTPAs expressly delegate the determination of civil penalties to courts:

| **(1) Alaska** | Alaska Stat. § 45.50.551(b): "In an action brought under AS 45.50.501, if ***the court finds*** that a person is using or has used an act or practice declared unlawful by AS 45.50.471, the attorney general, ***upon petition to the court***, may recover, on behalf of the state, a civil penalty of not less than $1,000 and not more than $25,000 for each violation." |
|---|---|
| **(2) Arkansas** | Ark. Code § 4-88-113(a): "In any proceeding brought by the Attorney General for civil enforcement of the provisions of this chapter, prohibiting unlawful practices as defined in this chapter, ***the circuit court*** may make such orders or judgments as may be necessary to: … (3) ***Assess penalties*** to be paid to the state, not to exceed ten thousand dollars ($10,000) per violation, against persons found to have violated this chapter." |
| **(3) Florida** | Although the civil penalties provision of the Florida Deceptive and Unfair Trade Practices Act does not explicitly address whether a court or jury decides the amount of penalties, *see* Fla. Stat. § 501.2075, courts have held that the text of "FDUTPA does not provide a statutory right to a jury trial," *Lankhorst v. Ind. Sav. Plan Co.*, 2012 WL 13098680, at *3-4 (M.D. Fla. Feb. 23, 2012). |
| **(4) Idaho** | Although the civil penalties provision of the Idaho Consumer Protection Act does not explicitly address whether a court or jury decides the amount of penalties, *see* Idaho Code § 48-606(1)(e), the very next section of the Idaho Code specifies that the court provides the Idaho Attorney General relief:<br><br>"In any action brought by the attorney general, wherein the state prevails, ***the court shall***, in addition to the relief granted pursuant to section 48-606, Idaho Code, award reasonable costs, investigative expenses and attorney's fees to the attorney general. … In addition, ***the court may*** . . . (7) Grant other appropriate relief." Idaho Code § 48-607. |
| **(5) Indiana** | Ind. Code § 24-5-0.5-4(g): "If ***a court finds*** any person has knowingly violated section 3 or 10 of this chapter, other than section 3(b)(19), 3(b)(20), or 3(b)(40) of this chapter, the attorney general, in an action pursuant to subsection (c), may recover from the person on behalf of the state a civil penalty of a fine not exceeding five thousand dollars ($5,000) per violation." |

| (6) Kentucky | Ky. Rev. Stat. § 367.990(2): "In any action brought under KRS 367.190, if *the court finds* that a person is willfully using or has willfully used a method, act, or practice declared unlawful by KRS 367.170, the Attorney General, *upon petition to the court*, may recover, on behalf of the Commonwealth, a civil penalty of not more than two thousand dollars ($2,000) per violation …." |
| --- | --- |
| (7) Louisiana | La. Rev. Stat. § 51:1407(B): "In addition to the remedies provided herein, the attorney general may request and *the court may impose a civil penalty* against any person found by the court to have engaged in any method, act, or practice in Louisiana declared to be unlawful under this Chapter. In the event the court finds the method, act, or practice to have been entered into with the intent to defraud, the court has the authority to impose a penalty not to exceed five thousand dollars for each violation." |
| (8) Mississippi | Miss. Code § 75-24-19(1)(b): "In any action brought under Section 75-24-9, if *the court finds* from clear and convincing evidence, that a person knowingly and willfully used any unfair or deceptive trade practice, method or act prohibited by Section 75-24-5, the Attorney General, *upon petition to the court*, may recover on behalf of the state a civil penalty in a sum not to exceed Ten Thousand Dollars ($10,000.00) per violation." |
| (9) Missouri | Mo. Rev. Stat. § 407.100(6): "*The court may award* to the state a civil penalty of not more than one thousand dollars per violation; except that, if the person who would be liable for such penalty shows, by a preponderance of the evidence, that a violation resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adopted to avoid the error, no civil penalties shall be imposed." |
| (10) Montana | Mont. Code § 30-14-142(2): "In an action brought under 30-14-111, if *the court finds* that a person is willfully using or has willfully used a method, act, or practice declared unlawful by 30-14-103, the department, *upon petition to the court*, may recover on behalf of the state a civil fine of not more than $10,000 for each violation. The fine provided for in this subsection is in addition to any liability that a person might be subject to under subsection (1)." |
| (11) Nevada | Nev. Rev. Stat. § 598.0999(2): "Except as otherwise provided in NRS 598.0974, in any action brought pursuant to the provisions of NRS 598.0903 to 598.0999, inclusive, *if the court finds* that a person has willfully engaged in a deceptive trade practice, the Commissioner, the Director, the district attorney of any county in this State or the Attorney General bringing the action may recover a civil penalty not to exceed $15,000 for each violation. *The court in any such action may*, in addition to any other relief or reimbursement, award reasonable attorney's fees and costs." |

11

| | |
|---|---|
| **(12) North Dakota** | N.D.C.C. § 51-15-11: "***The court may assess for the benefit of the state a civil penalty*** of not more than five thousand dollars for each violation of this chapter or for each violation of chapter 51-12, 51-13, 51-14, or 51-18." |
| **(13) South Carolina** | S.C. Code § 39-5-110(a): "If ***a court finds*** that any person is willfully using or has willfully used a method, act or practice declared unlawful by Section 39-5-20, the Attorney General, ***upon petition to the court***, may recover on behalf of the State a civil penalty of not exceeding five thousand dollars per violation."<br><br>State courts have confirmed that, under South Carolina law, "the issue involving whether or not to assess the civil penalties provided for in §39-5-110 should be tried by a judge acting without a jury." *State v. Eli Lilly & Co.*, 2009 WL 6058384 (S.C. Com. Pl. Sept. 22, 2009). |
| **(14) South Dakota** | S.D. Codified Law § 37-24-27: "In any action brought under § 37-24-23, ***if the court finds*** that a person is intentionally using or has intentionally used an act or practice declared to be unlawful by § 37-24-6, the attorney general, ***upon petition to the court***, may recover, on behalf of the state, a civil penalty of not more than two thousand dollars per violation. For purposes of this section, an intentional violation occurs when the party committing the violation knew or should have known that his conduct was a violation of § 37-24-6." |

As a matter of statutory interpretation, a court must decide penalties in all of these States. Variations in how the statutes make this plain are immaterial. Whether a statute states that "the court," not a jury, has discretion to assess, award, or impose civil penalties, *see* Ark. Code § 4-88-113(a); La. Rev. Stat. § 51:1407(B); Mo. Rev. Stat. § 407.100(6); N.D.C.C. § 51-15-11, or instead mandates that the Attorney General "petition … the court" for such an award, *see* Alaska Stat. 45.50.551(b); Ky. Rev. Stat. § 367.990(2); Miss. Code § 75-24-19(1)(b); Mont. Code § 30-14-142(2); S.C. Code § 39-5-110(a); S.D. Codified Law § 37-24-27, the result is the same: the Court alone decides penalties. And other than in Florida, the portion of each statute that authorizes civil penalties is embedded within provisions that set forth what "a court" must find and specify that civil penalties are unavailable absent "the court's" finding of a violation. *See supra*. Resolving any doubt, courts that have addressed whether their state's DTPA provides the right to a jury trial have concluded that it does not. *See Lankhorst*, 2012 WL 13098680, at *3-4 ("The FDUTPA does not

provide a statutory right to a jury trial[.]"); *Eli Lily & Co.*, 2009 WL 6058384 ("[I]t is this Court's finding and it is ORDERED that the issue involving whether or not to assess the civil penalties provided for in § 39-5-110 should be tried by a judge acting without a jury."). Accordingly, even if the Court, counterfactually, could look to state jury rights, the amount of civil penalties is a question for the Court in these States.

Though *Tull* and *Simler* are dispositive that the Court decides penalties in federal court, that leaves three States that require separate analysis under the States erroneous theory:

### a.  Utah

Under basic canons of statutory interpretation, Utah's DTPA requires that only the Court may impose any penalties. The civil penalty provision states that the "enforcing authority may bring an action in a court of competent jurisdiction to ... ***obtain a fine*** in an amount determined after considering the factors in Subsection (6)." Utah Code § 13-11-17(1)(d). The "who" of that provision is "clarified by the remainder of the statutory scheme," so the "holistic endeavor" of statutory construction looks to the rest of Utah's DTPA to fill in the gap. *United States v. Cleveland Indians Baseball Co.,* 532 U.S. 200, 217–18 (2001). Under other sections of Utah's DTPA, courts determine civil penalties. *See, e.g.*, Utah Code Ann. § 13-11-7(2) ("[T]he court may impose a civil penalty … for each day a temporary restraining order, preliminary injunction, or permanent injunction issued under this chapter is violated[.]"). Meanwhile, no provision delegates any penalty determination to the "jury." *See* Utah Code Ann. §§ 13-11-1 to -23. Construing Utah's DTPA as a whole, any penalty determinations—including those under section 13-11-17—must be made by the Court.

### b.  Texas

The Texas Deceptive Trade Practices Act, Tex. Bus. & Com. Code § 17.01 *et seq.*, provides:

> In addition to the request for a temporary restraining order, or permanent injunction in a proceeding brought under Subsection (a) of this section, the consumer protection division may request, and ***the trier of fact*** may award, a civil penalty to be paid to the state in an amount of: (1) not more than $10,000 per violation ….

Tex. Bus. & Com. Code § 17.47(c).

In federal court, the amount of a civil penalty is always determined by the court. *Tull*, 481 U.S. at 427. So although the "trier of fact" for civil penalties may sometimes be a jury for a case in Texas state court, the same is not true in this Court. *See id.* And even in Texas state courts, it is the court who awards penalties under section 17.47 when sitting as the trier of fact. *See Molano v. State*, 262 S.W.3d 554, 561–62 (Tex. App.—Corpus Christi 2008). Because the Court will be the "trier of fact" for determining liability on Texas's DTPA claims, *see* Part III.A., *infra*, the statute confirms that determining penalties will be for the Court too.

### c.  Puerto Rico

The Puerto Rican legislature delegated the assessment of civil penalties under the Puerto Rico Antitrust Act (which *is* its DTPA), 10 L.P.R.A. § 259 *et seq.*, to the Puerto Rico Department of Consumer Affairs. It provides:

> When any person is found liable of violating the regulations approved pursuant to subsection (b) of this section, and it appears that said violation was committed with present or real knowledge of the prohibition, or with reasonable knowledge inferred on the basis of objective circumstances, ***the Department of Consumer Affairs shall impose a civil penalty*** up to five thousand dollars ($5,000), for each violation in addition to the most appropriate remedies according to the details of the complaint, as provided in subsection (c) of this section."

10 L.P.R.A. § 259(i) (translated).

Any civil penalties arising from claims by Puerto Rico thus cannot be heard by the jury, nor can they be heard by the Court. They must instead be brought by the Puerto Rico Office of Monopolistic Affairs ("OAM") and decided by the Puerto Rico Department of Consumer Affairs ("DACO"). *See, e.g.*, *Aguadilla Paint Center, Inc. v. Esso Standard Oil Co. (Puerto Rico)*, 2011

14

WL 6759549, 183 D.P.R. 901, 83 P.R. Offic. Trans. 44 (P.R. Dec. 15, 2011) ("[T]he Department of Consumer Affairs has exclusive primary jurisdiction in all antitrust action commenced by the Office of Monopolistic Affairs where the cause of action is based on any unfair or deceptive act or practice.") (translated); *Cemex de Puerto Rico, Inc. v. Terrassa Concrete Indus., Inc.*, 2024 WL 2332605, at *3–*4 (P.R. Cir. Apr. 26, 2024) ("[A]ny allegation of illegal monopolistic practices must first be investigated by the OAM, resolved by DACO and then reviewed by the Court of First Instance.[5]") (translated). Civil penalty amounts as to Puerto Rico cannot be decided in the Eastern District of Texas at all and they certainly cannot be decided by a jury.

### 2. State Antitrust

Antitrust penalties are civil penalties, so *Tull* and *Simler* are again dispositive: only this Court may decide the amount of any penalty if Google is found liable. But even under the States' erroneous theory that state law is relevant, the result is the same.

### a. Four States Cannot Recover Antitrust Penalties.

Four States do not seek or cannot recover civil penalties for reasons addressed in Part III.B.2.b., *infra*. In short, **(1) Indiana** and **(2) Missouri** do not seek antitrust penalties. *See* ECF 381 (Pls. Am. Advisory Re: Relief Sought) at 3–4 (seeking only injunctive relief, costs, and attorneys' fees under state antitrust laws). And the laws of **(3) Arkansas** and **(4) Idaho** authorize recovery of antitrust civil penalties only when the Attorney General brings an action in the State's proprietary or sovereign capacity. *See* Ark. Code § 4-75-315(a); Idaho Code § 48-108(1). Where,

---

[5] The Puerto Rico Supreme Court recently held that the Uniform Administrative Procedure Act of the Government of Puerto Rico, which was enacted after the Antitrust Law, requires judicial review of the Department of Consumer Affairs decision to be in the Puerto Rico Court of Appeals instead of the Court of First Instance. *Oficina de Asuntos Monopolisticos del Departamento de Justicia v. Abarca Health, LLC*, 2025 WL 894419, at *8–9, 2025 TSPR 23 (P.R. Mar. 13, 2025).

as here, the States seek relief as *parens patriae*,[6] the statutes allow only monetary damages—not civil penalties (or injunctive relief).[7] *See* Ark. Code § 4-75-315(b); Idaho Code § 48-108(2). With no claim seeking state antitrust penalties, these four States have no right to demand a jury trial to decide state antitrust civil penalties.

### b. Six States Mandate that the Court Decides Antitrust Penalties.

The antitrust statutes of six more States provide that the determination of civil penalties is a question for the Court (or in Puerto Rico's case, an administrative agency), not the jury:

| | |
|---|---|
| **(1) Kentucky** | Ky. Rev. Stat. § 367.990(8): "In addition to the penalties contained in this section, the Attorney General, ***upon petition to the court***, may recover, on behalf of the Commonwealth a civil penalty of not more than the greater of five thousand dollars ($5,000) or two hundred dollars ($200) per day for each and every violation of KRS 367.175." |
| **(2) Montana** | Mont. Code § 30-14-222: (1) A person who is or will be injured or the department may bring an action to enjoin an act that is in violation of 30-14-205 through 30-14-214 or 30-14-216 through 30-14-218 and for the recovery of damages. If ***the court finds*** that the defendant is violating or has violated any of the provisions of 30-14-205 through 30-14-214 or 30-14-216 through 30-14-218, ***the court shall enjoin the defendant.*** It is not necessary to allege or prove actual damages to the plaintiff. |

---

[6] *See* ECF 381 at 3 (seeking relief as *parens patriae*). The States have all but conceded that they have not alleged—much less proven—harm to any sovereign interest. 4/18/2024 Hrg. Tr. at 45:5-12 (admitting that they "don't have something squarely on point for sovereign standing" and rely on *parens patriae* standing. The Court ruled that the States had pleaded *parens patriae* standing, and did not address sovereign standing. *See* ECF 788 (Order on 12(b)(1) Mot.). Accordingly, while some States purport to seek relief in their sovereign capacities, *see* ECF 381, they may pursue claims only in their *parens patriae* capacities.

[7] These sections further provide that relief sought in the state's *parens patriae* capacity will be awarded by "the court." Ark. Code § 4-75-315(b)(1) ("***The court*** in which the action is commenced shall award the Attorney General as monetary relief the actual damages sustained or restitution for loss incurred as a result of the violations of this subchapter and the cost of suit, including a reasonable attorney's fee."); Idaho Code § 48-108(2)(a) ("***The district court*** shall award the attorney general as monetary relief the total damages sustained for violations of section 48-104 or 48-105, Idaho Code, and the cost of suit, including a reasonable attorney's fee."). Accordingly, Arkansas and Idaho are not entitled to a jury in any event.

| | |
|---|---|
| | (2)(a) ***In addition to injunctive relief***, the plaintiff is entitled to recover from the defendant the greater of three times the amount of actual damages sustained or $1,000."[8] |
| **(3) North Dakota** | N.D. Century Code § 51-08.1-07: "***The trier of fact*** may assess for the benefit of the state a civil penalty of not more than one hundred thousand dollars for each violation of this chapter." As explained above, the "trier of fact" for a civil penalty in federal court is the Court, not a jury. *See Tull*, 481 U.S. at 427. And regardless, the Court will be the "trier of fact" for determining liability on North Dakota's DTPA claims. *See* Part III.A., *infra*. |
| **(4) South Carolina[9]** | S.C. Code § 39-5-110(a): "If ***a court finds*** that any person is willfully using or has willfully used a method, act or practice declared unlawful by Section 39-5-20, the Attorney General, ***upon petition to the court***, may recover on behalf of the State a civil penalty of not exceeding five thousand dollars per violation." |
| | State courts have confirmed that, under South Carolina law, "the issue involving whether or not to assess the civil penalties provided for in § 39-5-110 should be tried by a judge acting without a jury." *State v. Eli Lilly & Co.*, 2009 WL 6058384 (S.C. Com. Pl. Sept. 22, 2009). |
| **(5) South Dakota** | S.D. Codified Law § 37-1-14.2: "The attorney general, or a state's attorney with the permission or at the request of the attorney general, may bring an action for appropriate injunctive or other equitable relief and civil penalties in the name of the state for a violation of this chapter. ***The court may assess for the benefit of the state a civil penalty*** of not more than fifty thousand dollars for each violation of this chapter." |
| **(6) Puerto Rico[10]** | 10 L.P.R.A. § 259(i) (as translated): "When any person is found liable of violating the regulations approved pursuant to subsection (b) of this section, and it appears that said violation was committed with present or real knowledge of the prohibition, or with reasonable knowledge inferred on the basis of objective circumstances, ***the Department of Consumer Affairs shall impose a civil penalty*** up to five thousand dollars ($5,000), for each violation in addition to the most appropriate remedies according to the details of the complaint, as provided in subsection (c) of this section." |

---

[8] The text of the statute is plain: A court decides injunctive relief, and a civil penalty is awarded "in addition to" injunctive relief. *Id.* Additionally, the amount of a civil penalty is not discretionary. Rather, the amount is either triple the actual damages (here, zero) or $1,000. Thus, there is no matter for a jury to decide: If penalties are to be awarded, they are exactly $1,000 under the Montana antitrust statute. *See id.*

[9] South Carolina relies on the same statutory scheme—SCUPTA, S.C. Code § 39-5-20, *et seq.*—for state deceptive trade practices claims and state antitrust claims.

[10] Puerto Rico seeks antitrust penalties under the same provision as it seeks DTPA penalties. For the same reasons as previously explained, *see* pp. 14–15 *supra*, no penalties may be awarded in this Court at all.

### c. Seven States are Silent but Look to Federal Law, which Mandates that the Court Decides Antitrust Penalties.

The remaining seven States likewise require that the Court decide antitrust penalties because the Sherman Act does. In those states, the statutes themselves do not expressly delineate the judge/jury role, nor does state caselaw. *See* **(1) Alaska**, Alaska Stat. § 45.50.578; **(2) Florida**, Fla. Stat. § 542.21; **(3) Louisiana**, La. Rev. Stat. § 51:123; **(4) Mississippi**, Miss. Code § 75-21-7; **(5) Nevada**, Nev. Rev. Stat. § 598A.170; **(6) Texas**, Tex. Bus. & Com. Code § 15.20(a); **(7) Utah**, Utah Code § 76-10-3108(1). But in each of these States, courts look to federal decisions interpreting the Sherman Act as a guide to construing their own laws—which in turn requires that courts determine penalties, not juries. *See, e.g.*, **(1) Alaska**, *Alakayak v. B.C. Packers, Ltd.*, 48 P.3d 432, 448 (Alaska 2002) ("We have noted that claims brought under AS 45.50.562 are analogous to claims brought under § 1 of the federal Sherman Act, and that federal cases construing § 1 of the Sherman Act will be used as a guide."); **(2) Florida**, Fla. Stat. Ann. § 542.32 ("It is the intent of the Legislature that, in construing this chapter, due consideration and great weight be given to the interpretations of the federal courts relating to comparable federal antitrust statutes."); **(3) Louisiana**, *HPC Biologicals, Inc. v. UnitedHealthcare of La., Inc.*, 194 So. 3d 784, 792-93 (La. App. 1 Cir. 2016) ("[F]ederal analysis of the Sherman Act is persuasive, though not controlling."); **(4) Mississippi**, *Major Mart, Inc. v. Mitchell Distrib. Co., Inc.*, 46 F. Supp. 3d 639, 656 (S.D. Miss. 2014) ("Courts have analyzed Mississippi's antitrust law in the same manner as federal antitrust laws."); **(5) Nevada**, Nev. Rev. Stat. § 598A.050 ("The provisions of this chapter shall be construed in harmony with prevailing judicial interpretations of the federal antitrust statutes."); **(6) Texas**, Tex. Bus. & Com. Code § 15.04 ("The provisions of this Act shall be construed to accomplish this purpose and shall be construed in harmony with federal judicial interpretations of comparable federal antitrust statutes to the extent consistent with this purpose.");

**(7) Utah**, Utah Code § 76-10-3118 ("The Legislature intends that the courts, in construing this act, will be guided by interpretations given by the federal courts to comparable federal antitrust statutes and by other state courts to comparable state antitrust statutes.").

Thus, each of these states incorporates the Sherman Act's requirement that penalties must be decided by a court, not a jury. *See* 15 U.S.C. § 1 ("Every person who shall make any contract or engage in any combination or conspiracy hereby declared to be illegal … shall be punished by fine not exceeding $100,000,000 if a corporation, or, if any other person, $1,000,000 … *in the discretion of the court*."); *id.* § 2 ("Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations … shall be punished by fine not exceeding $100,000,000 if a corporation, or, if any other person, $1,000,000 … *in the discretion of the court*."). The limited state case law in these seven states provides no reason to infer that any of them would mandate a jury determination of penalties where the statute is silent and the Sherman Act is to the contrary.

If the Court has any doubt as to these states, the appropriate remedy is to decline jurisdiction over the state law claims and allow the respective state courts to resolve this question in the first instance. *See* 28 U.S.C. § 1367(c)(1) ("The district courts may decline to exercise supplemental jurisdiction over a claim" if "the claim raises a novel or complex issue of State law[.]"). It would be inappropriate to burden a Texas jury with deciding an issue that Texas itself— and this federal court—would not require them to decide. *See Springer v. Rodriguez*, 2019 WL 4417805, at *2 (S.D. Tex. Aug. 20, 2019) (Courts in this circuit make "every effort to minimize the unnecessary utilization of a jury and to minimize the inconvenience to jurors.").

### III.    Liability

Consistent with the Court's Order, this supplemental briefing analyzes the States' DTPA and antitrust statutes to address whether the statutes "provide the State with an equitable claim, a legal claim, or both[.]" ECF 825 at 1. That analysis shows that as to both DTPA and antitrust liability, the States' claims are uniformly equitable, leaving the States with no jury right. Google's position that the States have no right to a jury trial at all under the Seventh Amendment based on historical evidence, and its responses to the Court's questions about *Standard Oil Co. of California v. Arizona*, are addressed elsewhere and thus not repeated here. *See* ECF 690 at 8–9; ECF 832 (*Standard Oil* Br.).

### A.    DTPA

Under the Seventh Amendment test outlined in *Tull* (and reaffirmed in *Jarkesy*), the States' DTPA claims are equitable. First, the States assert that their DTPA claims do not require them to prove reliance, causation, injury, or damages; if so, then they "d[o] not borrow [their] cause of action from the common law," *Jarkesy*, 603 U.S. at 136, and lack any common-law analog that would have been tried to a jury. And to the extent there was a DTPA analog in 1791, relevant historical evidence indicates it would have been in equity. Second, under the "more important" step of the Seventh Amendment test, the remedy sought for each State's DTPA claim is wholly equitable. *See Tull*, 481 U.S. at 421. That the remedy sought is equitable is "all but dispositive," *Jarkesy*, 603 U.S. at 123, and because both the remedy sought and the nature of the action are equitable, there can be no dispute: each State's DTPA claim is equitable.

#### 1.    The States' DTPA Jury Demand Fails Step One of the *Tull/Jarkesy* Analysis.

The Seventh Amendment only "applies to actions brought to enforce statutory rights that are analogous to common-law causes of action ordinarily decided in English law courts in the late

18th century." *Granfinanciera*, 492 U.S. at 42; *see also Tull*, 481 U.S. at 417 (first step of analysis compares "the nature of the action" to "18th-century actions brought in the courts of England prior to the merger of the courts of law and equity").

The Supreme Court has repeatedly stated that where a legislature creates a new statutory obligation that was "unknown to the common law"—as opposed to in the "nature of a common law suit"—the Seventh Amendment does not require trial by jury. *See Jarkesy*, 603 U.S. at 138 (quoting *Atlas Roofing Co. v. Occupational Safety & Health Review Comm'n*, 430 U.S. 442, 453 & 461 (1977)); *see also NLRB v. Jones & Laughlin Steel Corp.*, 301 U.S. 1, 48–49 (1937) (Seventh Amendment jury trial not required because "[t]he instant case is not a suit at common law or in the nature of such a suit" and instead was "unknown to the common law"); *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 379–80 (1996) (construction of patent claim was issue for court, not jury, where "there was no direct antecedent of modern [patent] claim construction in the historical sources," and "no established jury practice sufficient to support an argument by analogy that today's construction of a claim should be a guaranteed jury issue"). As shown below,  the States' DTPA claims are distinct from, and unknown to, the common law.

### a. The States Cannot Avoid the Requirement to Prove Injury and Harm.

Two points are essential before proceeding further.

First, as a matter of law, Plaintiffs *must* establish injury to pursue any of these claims in federal court. Article III standing—an issue of subject matter jurisdiction—requires Plaintiffs to show injury *in fact* for every claim and each "form of relief that is sought," regardless of whether that injury element is contained within the State's respective DTPA statute. ECF 672 (DTPA MSJ) at 6–7 (quoting *Town of Chester, N.Y. v. Laroe Estates, Inc.*, 581 U.S. 433, 439 (2017)); *Reyes v. N. Tex. Tollway Auth.*, 830 F. Supp. 2d 194, 201 (N.D. Tex. 2011) ("Lack of standing is a defect

in subject matter jurisdiction.") (citing *Sommers Drug Stores Co. Emp. Profit Sharing Trust v. Corrigan*, 883 F.2d 345, 348 (5th Cir. 1989)). Any lack of an explicit *statutory* injury requirement is irrelevant to the *Article III* injury requirement.

Separately, Plaintiffs must establish injury to be entitled to any constitutionally proportionate penalties. *See* ECF 672 at 31–37. The Excessive Fines Clause has been incorporated against the States by the Fourteenth Amendment's Due Process Clause. *Timbs v. Indiana*, 586 U.S. 146, 151 (2019). Going back to the Magna Carta, any "economic sanctions" must therefore "be proportioned" to the harm caused. *Id*. (citing *Browning-Ferris Indus. of Vt., Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 271 (1989)); *accord United States v. Bajakajian*, 524 U.S. 321, 334–39 (1998) (evaluating proportionality and excessiveness considering the "harm that [was] caused"); *Cooper Indus., Inc. v. Leatherman Tool Grp., Inc.*, 532 U.S. 424, 435 (2001) ("the relationship between the penalty and the harm to the victim caused by the defendant's actions" is a criterion in determining constitutionality of punitive damages awards); *In re Zyprexa Prods. Liab. Litig.*, 671 F. Supp. 2d 397, 463 (E.D.N.Y. 2009) (granting summary judgment on DTPA claim for penalties because "[u]nder this constitutional fairness and equity standard, Mississippi's requests for statutory penalties ... would result in a multibillion dollar cumulative penalty grossly disproportionate to both the injury Mississippi has suffered and the seriousness of Lilly's alleged misconduct").

Without proof of *any* quantum of harm, no penalty is or can be shown to be constitutionally proportional; similarly, to award *more* than zero dollars in penalties where there is zero showing of harm is an excessive fine as a matter of law. In short, while the States contend they can establish *liability* under their DTPAs without proof of harm, they certainly cannot constitutionally obtain

any penalties without proof of both injury to a specific consumer and actual harm sustained by someone.

### b. There is No Common Law Analog for the States' DTPA Claims.

As invoked by the States, the DTPA claims have no common law analog. They analogize their claims to common law fraud, ECF 753 at 4–5, but they have previously stated that "DTPA claims are not fraud claims" and do "not require [proof of] reliance, injury, damages, identification of *specific* victims, or even false statements (as opposed to deceptive acts)," *see* ECF 260 (Resp. to DTPA MTD) at 8 (emphasis in original). This reliance-free, causation-free, harm-free theory of DTPA liability bears no resemblance to any claim at common law.

Common law claims—including common law torts of fraud and deceit—uniformly required the plaintiff to prove that it suffered an injury caused by the defendant. The common law tort of deceit "subjects a person who 'fraudulently' makes a 'misrepresentation' to liability 'for pecuniary loss *caused'* to one who justifiably *relies* upon that misrepresentation." *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 343 (2005) (quoting Restatement (Second) of Torts § 525 p. 55 (1976)). As the Supreme Court explained in *Dura Pharmaceuticals*, "the common law has long insisted that a plaintiff in such a case show not only that had he known the truth he would not have acted but also that he suffered *actual economic loss*." 544 U.S. at 343–44 (citing, *inter alia*, *Pasley v. Freeman*, 100 Eng. Rep. 450, 457 (1789) ("[I]f no injury is occasioned by the lie, it is not actionable: but if it be attended with a damage, it then becomes the subject of an action.")). In addition to injury, "[c]ausation in fact—i.e., proof that the defendant's conduct did in fact cause the plaintiff's injury—is a standard requirement of any tort claim." *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 346 (2013). It requires "the plaintiff to show 'that the harm would not have occurred' in the absence of—that is, but for—the defendant's conduct." *Id.* at 346-47.

As Judge Posner explained in *Bastian v. Petren Resources Corp.*, the requirement to prove a defendant caused a loss "*is* the standard common law fraud rule. … [and] is an instance of the common law's universal requirement that the tort plaintiff prove causation." 892 F.2d 680, 683–84 (7th Cir. 1990) (emphasis original). Common law fraud "is not actionable" without proof of harm: "No hurt, no tort." *Id.* at 684–85; *see also Cenco, Inc. v. Seidman & Seidman*, 686 F.2d 449, 453 (7th Cir. 1982) ("Tort law, unlike criminal law, does not punish 'inchoate,' which is to say purely preparatory, conduct; for wrongdoing to be actionable as a tort there must be an injury.").

### i. The Parties' Prior Dismissal Arguments Addressed this Point.

Here, in contrast, the States insist their DTPA claims do *not* require them to prove injury, damages, or causation, all of which are fundamental elements of any common-law tort. *See* ECF 260 at 8 (asserting DTPA claims do not require proof of "reliance, injury, damages, identification of *specific* victims, or even false statements (as opposed to deceptive acts)"). What exactly these claims *are*—and what the States must prove to prevail on them—now bears directly on whether they have any Seventh Amendment right to try them to a jury. It has also been addressed in the parties' prior briefing and argument on the motion to dismiss.

The States' Complaint asserts claims for "misstatements" and "omissions" by Google that the States contend violated individual DTPA statutes. *See* Fourth Amended Complaint (FAC) Count VI & ¶¶ 537–38. Google moved to dismiss under Rule 9(b), arguing that "[e]ach of the DTPA claims is predicated on the allegation that Google made false or misleading statements or failed to make a material disclosure. They therefore sound in fraud and are subject to Rule 9(b)." ECF 224 (DTPA MTD) at 9 (citing *Elson v. Black*, 56 F.4th 1002, 1008 (5th Cir. 2023) ("Rule 9(b) applies by its plain language to *all averments of fraud*, whether they are part of a claim of fraud or not."); *Franklin v. Apple Inc.*, 569 F. Supp. 3d 465, 479 (E.D. Tex. 2021) (applying 9(b)

24

to misrepresentation and failure-to-disclose-based Texas DTPA claims.)). Google's argument under Rule 9(b), that the States' DTPA claims averred one aspect of fraud—proof of a misstatement or omission that must be pleaded with particularity—did not assert or establish that the entirety of a DTPA claim is "in the nature of" or analogous to common law fraud.[11]

In response, the States were adamant: "***DTPA claims are not fraud claims*** … In general, ***where elements of traditional fraud are absent***, courts do not apply Rule 9(b)." ECF 260 at 8.[12] The States' oral argument then highlighted the important differences between DTPA claims and common law fraud, foreshadowing the issue that now confronts the Court; namely, *what is it* that the States are asserting they must prove and is it (or is it not) analogous to a claim at the common law? As framed by the States, a DTPA claim is *not* analogous to the common law:

> You saw some of the precedent that says you can apply a relaxed Rule 9 where sovereigns are in play. ***A lot of these DTPA statutes don't have fraud or mistake as a necessary element; they prohibit only unfair or unconscionable practices***.

> But the real teeth behind Rule 9 is typically on the reliance prong. And you just heard my friend on the other side concede under cases like *Holzman*, and there are many others, ***when sovereigns are bringing these DTPA enforcement actions, they don't have to prove reliance. And if we don't have to prove reliance, of course, we don't have to plead reliance***. So there's no necessary Rule 9, Tell me the specific consumer transaction where this consumer was deceived into doing something; ***we don't have to establish that.***

---

[11] The distinction is important. The Supreme Court asks whether the claim, in all of its elements, is "in the nature of" one that could have been proved in a court of common law in 1791, *Jarkesy*, 604 U.S. at 138, even if it differs in minor particulars. In contrast, where the statute creates a claim and remedy "unknown to the common law," *id*., then the analogy to the common law fails. The question the Court must answer, therefore, is not "Is there an analogy between *an element* of this DTPA claim and *an element* of a common law fraud claim?" Rather, it is whether this *claim*–which the States assert does *not* obligate them to prove crucial elements of common law fraud is still, somehow, analogous to common law fraud. As shown by the chart *infra* at Appendix D, even the States' own courts answer that question with a resounding "no."

[12] In response to Google's Motion to Strike Plaintiffs' Jury Demand, the States contradictorily argue "[a]lternatively," that "DTPA claims are analogous to common-law fraud claims for Seventh Amendment purposes." *See* ECF 753 at 4.

4/18/2024 Hrg. Tr. at 80:17–81:6 (Remarks of Mr. Keller, counsel for the States).

Though Mr. Keller elsewhere conceded that proof of injury was a necessary element of *Article III standing*, *see id.* at 45:2–3 ("Absolutely, Your Honor. There has to be injury in fact."), his argument about what the States must prove under the DTPAs confirms that common law fraud is not an apt analogy to a DTPA claim, nor is any other claim that would have been tried to a jury at common law in 1791. The States have always maintained that their sovereign DTPA claims ***do not*** require them to prove anything like common law fraud, asserting that they bear no burden to prove "fraud or mistake as a necessary element," "reliance," or even that any specific "consumer was deceived into doing something." *Id*. at 80:19–81:6. This runs headlong into Judge Posner's observation in *Bastian*, *supra*: "No hurt, no tort." 892 F.2d at 684.

### ii. The States' Own Courts Agree: the DTPA is Not Analogous to Common Law Fraud.

Almost all of the States' own courts deny a connection between the DTPA and the common law—some going as far to say that the DTPA creates "new substantive rights" that are "distinctly different" from common-law fraud or "in derogation" of it. *See* Appendix D. For example, the Texas Supreme Court has found that the DTPA "does not represent a codification of the common law." *Smith v. Baldwin*, 611 S.W.2d 611, 616 (Tex. 1980). Courts in a dozen other States have reached the same conclusion. *See, e.g.*, *Pleasant v. McDaniel*, 550 S.W.3d 8, 12 (Ark. Ct. App. 2018) ("Simply put, a claim of common-law fraud and a claim under the statutory provisions of the ADTPA are distinctly different."); *Betsinger v. D.R. Horton, Inc.*, 232 P.3d 433, 436 (Nev. 2010) (agreeing that statutory offenses like those defined in Nevada's DTPA are "separate and distinct from common law fraud"); *Baird v. Norwest Bank*, 843 P.2d 327, 333 (Mont. 1992) ("This statute being in derogation of the common law, should be liberally construed with a view to effect its object and to promote justice."); *State ex rel. McLeod v. C & L Corp.*, 313 S.E.2d 334, 338

(S.C. Ct. App. 1984) ("We hold that the [SCUTPA] creates new substantive rights by making unlawful conduct which was not actionable under the common law."), *abrogated on other grounds by Murphy v. Owens-Corning Fiberglas Corp.*, 550 S.E.2d 589 (S.C. Ct. App. 2001).

This is significant. The Supreme Court has found a jury right preserved only where the statutory claim mimics common law claims—including by incorporating elements of proof known to the common law—or where there is otherwise evidence linking the action to the common law. *See, e.g.*, *Curtis v. Loether*, 415 U.S. 189, 195 (1974) (statutory damages action was analogous to common law tort actions because it "define[d] a new legal duty, and authorize[d] the courts to compensate a plaintiff for the injury caused by the defendant's wrongful breach"); *Jarkesy*, 603 U.S. at 125–26 (concluding that common law fraud and securities fraud were analogous despite not being "identical" because of Congress's "decision to draw upon common law fraud," which "created an enduring link between federal securities fraud and its common law 'ancestor'"). The Fifth Circuit did the same in a case Plaintiffs rely on. *See* ECF 753 at 7–8 (citing *United States v. ERR, LLC*, 35 F.4th 405, 411 (5th Cir. 2022), which states: "The OPA mimics these common-law options. The statute first creates a legal duty and then provides a right of action to *compensate the injured party* for a breach of that duty," *id*. at 412).

At least three federal district courts have performed a similar inquiry and determined that state consumer protection statutes—like those at issue here—do not "parallel any 18th-century actions at law or equity." *Hope Med. Enters., Inc. v. Fagron Compounding Servs., LLC*, 2021 WL 2941546, at **2–3 (C.D. Cal. Jul. 12, 2021); *see also Day v. GEICO Cas. Co.*, 2023 WL 2250273, at *2 (N.D. Cal. Feb. 27, 2023); *Lankhorst v. Indep. Sav. Plan Co.*, 2012 WL 13098680, at *3 (M.D. Fla. Feb. 23, 2012); *cf. Associated Inv. Co. P'ship v. Williams Assocs. IV*, 645 A.2d 505, 510 (Conn. 1994) (holding, under state constitutional law, "[i]n view of the unique breadth and

flexibility of the cause of action created by CUTPA, we conclude that it does not bear substantial similarity to a common law action triable to a jury prior to 1818."). The *Hope Medical Enterprises* court explained that because the state statutes "extend[] beyond common law conceptions of unfair competition," they do not "necessarily parallel a common law cause of action for unfair methods of competition." 2021 WL 2941546, at *3. Therefore, the nature of the action "weigh[ed] against finding a Seventh Amendment right to a jury trial on these claims." *Id.* Similarly, in *Lankhorst*, the court concluded that the Florida Deceptive and Unfair Trade Practices Act "did not exist at common law" and that "the legislature clearly intended to establish a new [substantive] cause of action." 2012 WL 13098680, at *3. The court therefore granted a motion to strike the jury demand on FDUTPA claims. *Id.* at *4.

Although the analogy to a common-law cause of action need not be "precise[]," it must be "appropriate." *Tull*, 481 U.S. at 420-21. And a common law analogy doesn't fit here. On the States' telling, in their DTPA claims, "*elements of traditional fraud are absent.*" ECF 260 at 8. And there is no evidence their legislatures "deci[ded] to draw upon common law," *Jarkesy*, 603 U.S. at 125, when creating the DTPAs. *See* Appendix D. It follows, then, that the DTPA statutes "did not borrow [their] cause of action from [] common law [fraud]," *Jarkesy* 603 U.S. at 136. This is obvious from another, historical point: a claim seeking billions of dollars in civil penalties *without* proof of causation, injury, or actual damages suffered by an identified plaintiff was manifestly one "unknown to the common law." *Cf. Atlas Roofing*, 430 U.S. at 453. There is therefore no "analogous" common law claim that compares to the States' novel, *sui generis* DTPA claims here. In combination with the equitable nature of the relief sought, this forecloses the States' demand for a jury because the Seventh Amendment extends only to a cause of action "that either was tried at law at the time of the founding or is at least analogous to one that was." *Markman*, 517 U.S. at

376; *Atlas Roofing*, 430 U.S. at 459 (Seventh Amendment does not "require a jury trial where none was required" in 1791).

### iii. Historical Evidence Confirms the Lack of Common Law Analog—and that the Closer Analog is in Equity.

Historical evidence shows that claims like these—as the States assert them—would have been heard in courts of equity, not courts of law. That's because there existed certain "frauds and deceits" that were taken only in equity under the well-worn principle that courts of equity acted where legal remedies were inadequate. *See Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 509 n.13 (1959). As Sir Edward Coke put it over two hundred years ago: "*All covins, frauds, and deceits, for which there is no remedy by the ordinary course of law* [are resolved in Chancery]." Ex. 1, E. Coke, *Fourth Institutes of the Laws of England* 84 (1797).[13] For fraud specifically, the court of equity was "always ready to give a remedy for fraud or sharp practice where the parties had no remedy at law" including "where misrepresentation was alleged." Ex. 2, 12 W. Holdsworth, *A History of English Law* 234, 235–36 (1938).[14]

The States' DTPA claims resemble this second type of fraud or deceit claims heard in equity, not law. Courts of equity provided relief for "frauds" that "fell short of deceit," but "imported breach of a duty to which equity had attached its sanction." *Id.* at 236.[15] Lord Kames, a renowned eighteenth century jurist, described these two tiers of fraud: one for common law, and

---

[13] The Supreme Court frequently relies on historical sources like Sir Edward Coke's *Institutes of the Laws of England* to determine "the Framers' comprehension of the right as it existed at the founding[.]" *Betterman v. Montana*, 578 U.S. 437, 442 (2016).

[14] The Court has also repeatedly looked to guidance from Lord William Holdsworth's *A History of English Law*. *See Boumediene v. Bush*, 553 U.S. 723, 740 (2008); *Briscoe v. LaHue*, 460 U.S. 325, 339 n.22 (1983).

[15] Fraud meant not "moral fraud," but "breach of the sort of obligation which is enforced" by a court in equity. Holdsworth, *supra*, at 236.

the other for equity. At common law, there existed "fraud in a proper sense" that "implies treachery." Ex. 3, Henry Home, Lord Kames, *Principles of Equity* 63 (3d ed. 1778).[16] "But there are double-fac'd circumstances without number, and other artful means, calculated to deceive, which do not involve any degree of treachery." *Id.* Kames explained that "frauds of this inferior nature have been overlooked by common law" and so "it is the duty of *a court of equity to repress such deceit*[.]" *Id.* Similarly, Holdsworth reports that courts of equity were "extending the conception of fraud" to give "relief in many cases which bordered on fraud," including bargains "considered to be unconscionable" or acts "considered unfair or unconscientious." Holdsworth, *supra*, at 235–36.

This second, lesser type of fraud heard in equity precisely describes the States' DTPA claims. The DTPA statutes were designed to break from common law fraud, *see* Appendix D, and to address frauds of an "inferior nature." The States themselves have offered no proof of causation, injury, or damages, and so fall short of the common-law tort of fraud or deceit, instead seeking injunctive relief (and incidental penalties, *see* Part III.A.2., *infra*) for Google's purported misleading disclosures and omissions. Only courts of equity could have heard such claims and provided such relief.

### iv. A Common Law Action for Debt is Not Analogous, Either.

Plaintiffs elsewhere contend that an action in debt is a proper common-law analog because this is an "action[] by the Government to recover civil penalties." ECF 753 at 10. That analogy fails for two reasons. First, actions in debt were brought to seek "relief for an *injury*," *Tull*, 481 U.S. at 421, but Plaintiffs assert they need not prove injury here. *See* ECF 260 at 8. If Plaintiffs'

---

[16] For ease of navigation, the pagination matches the excerpt, from a reprint edited by Michael Lobban, rather than the original pagination of Lord Kames' third edition.

position were true, "all actions for the collection of taxes would be actions of debt, as would all other statutory proceedings involving a sum of money. Such a broad view of the common law action of debt is not tenable." *Olshausen v. Comm'r of Internal Revenue*, 273 F.2d 23, 27 (9th Cir. 1959).

Second, that "civil penalty suit[s]," *Tull*, 481 U.S. at 418, might sometimes be analogous to debt does not answer whether this action, which seeks equitable relief and only incidental penalties, is analogous. To answer that question: it's not. An action for injunctive relief, wherein only incidental penalties may be awarded, is inherently different from one in debt, where the entire *basis* of the cause of action is to recover money owed. So, if the Court agrees—consistent with the plain language of the DTPAs, *see* Part III.A.2., *infra*—that the States must bring injunctive relief actions for any penalties to be available, then the nature of this action is not a "suit for civil penalties" as *Tull* describes, and the debt analogy does not follow.[17]

### c. The States Cannot Have It Both Ways.

The States cannot have their cake and eat it too, asserting in one breath that common-law fraud is a historical analog, but in the next that they needn't prove any of the core elements that common-law fraud required. As shown above, the common law would never have recognized a cause of action that required no proof of reliance, harm, injury, or causation. If such a harm- and causation-free claim now exists under a State's DTPA, it is not a claim known to the common law and was not triable to a jury in 1791. Conversely, if Plaintiffs insist common-law fraud is a historical analog, they must carry the burden to prove *all* of the required common law elements they still insist that they cannot (and do not intend to) prove. Until then, as invoked by the States,

---

[17] The reason that the step-one analysis—whether debt is as an accurate analog—turns on the remedy sought is because the whole premise of the analogy is based on the remedy sought. *See Tull* 481 U.S. at 418 ("[A] *civil penalty suit* [is] a particular type of an action in debt[.]").

their DTPA claims are not analogous to any common law claim—and more analogous to claims heard in equity—so there is no support for a jury right under step one of the *Tull/Jarkesy* test.

### 2. The Remedy Sought, which is "More Important" in the *Tull/Jarkesy* Analysis, Confirms That the States' DTPA Claims are Equitable.

The States' DTPA jury demand also fails the second step of the *Tull* analysis, which examines the remedy sought to determine whether it is legal or equitable. *Tull*, 481 U.S. at 417–18. Each State seeks two remedies under its DTPA: (1) injunctive relief and (2) civil penalties.[18] *See* ECF 381 at 2–6.[19] No one disputes that the *injunctive relief* sought by Plaintiffs under each DTPA is equitable and carries no right to a jury trial. *See, e.g.*, *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 41–42 (1989); ECF 753 at 2.[20]

The *civil penalties* sought by the States are also equitable because, as shown below, they are "incidental to or intertwined with injunctive relief." *Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry*, 494 U.S. 558, 571 (1990) (quoting *Tull,* 481 U.S. at 424)). "The Supreme Court

---

[18] Although the States' advisory represents that "[a]ll Plaintiff States seek injunctive relief for Google's unfair and deceptive practices pursuant to their respective state's deceptive trade practices laws," the state-by-state chart of remedies sought indicates that Arkansas and South Dakota seek only civil penalties and not injunctive relief in connection with their DTPA claims. *See* ECF 381 at 3, 5. For the reasons described at pages 39 and 50 *infra*, they are not entitled to penalties without bringing an action for injunctive relief.

[19] *See also* Ex. 4 (7th Am. ROG Resp.) at 68 n.1 ("All Plaintiff States seek civil penalties for violations of their state law consumer protection statutes."); *id.* at 75 ("The Plaintiff States are seeking civil penalties and injunctive relief in their *parens patriae* capacity."); Ex. 5 (Pls' Am. Disclosures) ("The Plaintiff States do not seek damages in this case.") at 2.

[20] The majority of States also seek attorney's fees and costs, but the "inclusion [of requests for fees and costs] does not raise the right to a jury in an otherwise purely equitable action." *Whiting v. Jackson State Univ.*, 616 F.2d 116, 122 n.3 (5th Cir. 1980); *see also Sprague v. Ticonic Nat. Bank*, 307 U.S. 161, 166 (1939) ("Plainly the foundation for the historic practice of granting reimbursement for the costs of litigation other than the conventional taxable costs is part of the original authority of the chancellor to do equity in a particular situation."); *Hall v. Cole*, 412 U.S. 1, 5 (1973) (same). Google therefore does not address fees or costs in the forthcoming Seventh Amendment analysis.

has recognized two exceptions to the general rule that a claim seeking monetary recovery is legal in nature[:] In *Terry,* the Court made clear that a request for monetary recovery sounds in equity, and thus does not guarantee a jury trial, when it is restitutionary in nature or is intertwined with claims for injunctive relief." *Borst v. Chevron Corp.*, 36 F.3d 1308, 1324 (5th Cir. 1994). The remedy sought is often "all but dispositive" of whether a right to a jury trial exists. *Jarkesy*, 603 U.S. at 111. Here, the intertwined equitable remedies the States seek give rise to no right to a jury trial of DTPA liability.

### a. An "Intertwined" Equitable Remedy is One in Which a Monetary Award is Derived From or in Addition to Equitable Relief.

Courts examine whether remedies are "intertwined" during the second *Tull* step when a party brings a distinct statutory claim but seeks more than one type of remedy or relief. In *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Foundation, Inc.*, for example, the Supreme Court found a penalty remedy to be intertwined with equitable relief where the statute "d[id] not authorize civil penalties separately from injunctive relief; rather, the two forms of relief [we]re referred to in the same subsection, even the same sentence." 484 U.S. 49, 58 (1987). *Gwaltney* distinguished that statute at issue from the one in *Tull*, where the penalty relief was "separably authorized in a separate and distinct statutory provision," 481 U.S. at 425, and therefore not intertwined with equitable relief. The D.C. Circuit observed the same distinction, holding that a monetary award is intertwined with equitable relief when "the power to award such amounts [is] derived from a statutory grant of equitable authority." *Crocker v. Piedmont Aviation, Inc.*, 49 F.3d 735, 748 (D.C. Cir. 1995). Conversely, "where the power to award money damages is not merely derivative of the court's authority to enjoin statutory violations but rests on a 'separate and distinct statutory provision,' the award of damages will not be considered 'incidental to or intertwined with' equitable relief." *Id.* at 749 (quoting *Tull,* 481 U.S. at 425).

Whether civil penalties and injunctive relief are intertwined—as defined by *Gwaltney* and *Tull*—is determined by the "substantive dimension" of the States' DTPA remedy provisions. *See Simler*, 372 U.S. at 222; *Crocker*, 49 F.3d at 748 ("status of a claim as 'intertwined' or 'incidental' with injunctive relief depends on the remedial structure of the statutory scheme"). On this basis, the "remedy sought" by almost every State is undeniably equitable. As shown below for each state in turn, the States' penalty remedies are not "separably authorized in a separate and distinct statutory provision," *Tull*, 481 U.S. at 425, but rather are authorized only in addition to, and derived from, equitable relief. *Gwaltney*, 484 U.S. at 58. In summary form:

- In **eleven States**—Texas, Alaska, Arkansas, Indiana, Kentucky, Louisiana, Mississippi, Missouri, Montana, South Carolina, and South Dakota—a DTPA civil penalties award is incidental to, and intertwined with, injunctive relief. Those States can seek civil penalties under their DTPAs *only* if they institute an action for injunctive relief; any award of civil penalties is "derived from a statutory grant of equitable authority." *Crocker*, 49 F.3d at 748.

- In **five additional States**—Florida, Idaho, Nevada, North Dakota, and Utah—DTPA civil penalties are also incidental to, and intertwined with, injunctive relief because these statutes authorize the States to seek civil penalties only *in addition* to another claim. Here, the States all seek civil penalties in addition to injunctive relief. Thus, as asserted in this case, the availability of civil penalties for their DTPA claims is "derived from a statutory grant of equitable authority," *Crocker*, 49 F.3d at 748, and thus "intertwined with" equitable relief, *Gwaltney*, 484 U.S. at 58–59.

- Finally, **Puerto Rico** cannot seek civil penalties in this Court, but even if it could, the penalties it seeks are incidental to equitable relief.

34

- If the Court finds otherwise for any of these States—especially non-Texas States—the efficient solution is to exercise its discretion to dismiss those claims under 28 U.S.C. § 1367(c). It would be unfair to empanel and burden a jury of Texas citizens to hear evidence for a month or more solely to decide whether Google is liable under other States' state consumer protection laws.[21]

### b. In Eleven States' DTPAs, Penalties Are Always Intertwined with Equitable Relief.[22]

#### i. Texas

Under Texas law, the Attorney General must bring an action for injunctive relief, and only then can it seek civil penalties "in addition to" injunctive relief. Specifically, Texas seeks civil penalties under its DTPA pursuant to section 17.47(c), entitled "Restraining Orders." Tex. Bus. & Com. Code § 17.47(c); *see also* FAC ¶ 760(e). This section permits the Texas consumer protection division to "bring an action in the name of the state ... to restrain by temporary restraining order, temporary injunction, or permanent injunction" any practice deemed unlawful by the subchapter:[23] section

> (a) Whenever the consumer protection division has reason to believe that any person is engaging in, has engaged in, or is about to engage in any act or practice declared to be unlawful by this subchapter, and that proceedings would be in the public interest, the division may bring an action in the name of the state against the person ***to restrain by temporary restraining order, temporary injunction, or permanent injunction*** the use of such method, act, or practice.

Tex. Bus. & Com. Code § 17.47(a).

---

[21] Separately, the Court should dismiss Arkansas, Idaho, Indiana, and Utah's claims for lack of any connection to "consumer" transactions, *see* ECF 224 (DTPA MTD) at 25–26, and failure to produce any evidence to support such a consumer link, *see* ECF 672 (DTPA MSJ) at 57–59.

[22] For the Court's reference, Google attaches as Appendix A a chart comparing the injunctive relief and penalty provisions of these eleven States' DTPAs.

[23] FAC ¶ 760(d) (Texas seeks injunctive relief under DTPA); *see also* Joint Appendix.

But while Texas can bring a standalone claim for injunctive relief under section 17.47(a), it cannot bring a standalone claim for penalties. Subsection (c) of the same section allows Texas to seek penalties only "[i]n addition" to its request for an injunction:

> (c) *In addition to the request for a temporary restraining order, or permanent injunction in a proceeding brought under Subsection (a) of this section*, the consumer protection division may request, and the trier of fact may award, a civil penalty to be paid to the state in an amount of:
>
>> (1) not more than $10,000 per violation[.]

*Id.* § 17.47(c).

Rules of statutory interpretation oblige this Court to give effect to the statutory phrase "in addition to." Where the legislature "includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that [the legislature] acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. United States*, 464 U.S. 16, 23 (1983). The Court must therefore give effect to the inclusion of the phrase "in addition to" in the civil penalties subsection and its exclusion in the injunctive relief subsection. *Id.* Had the Texas legislature intended to permit an independent claim for civil penalties, "it presumably would have done so expressly as it did in the [preceding] subsection [(a)]." *Id.* Plaintiffs are thus wrong when they claim this language may be ignored. *See* ECF 753 at 6 n.3.

This Court must also adhere to the "axiom that words used in a statute are to be given their ordinary meaning[.]" *Burns v. Alcala*, 420 U.S. 575, 580 (1975). The ordinary meaning of "in addition to" is "combined or associated with," Merriam-Webster Dictionary, (11th ed.), which supports only one conclusion: Texas can only seek civil penalties under its DTPA when "combined" with an action for injunctive relief "in a proceeding brought under Subsection (a)." Tex. Bus. & Com. Code § 17.47(c).

The Court must also look to Texas's statutory scheme as a whole and give statutory phrases harmonious meaning. *See United States v. Cleveland Indians Baseball Co.,* 532 U.S. 200, 217–18 (2001) ("statutory construction 'is a holistic endeavor'" in which "the meaning of a provision is 'clarified by the remainder of the statutory scheme[.]'"). Here, it is notable that *other* sections of Texas's Business and Commerce Code create an *independent* action to recover a penalty. *See, e.g.,* Tex. Bus. & Com. Code § 503.001(d) ("The attorney general may *bring an action* to recover the civil penalty"). The Court must give the exclusion of that language in section 17.47 a "compatible" meaning with its inclusion in section 503.001, *Cleveland Indians Baseball Co.,* 532 at 217–18, construing the statute by its plain terms to authorize an independent action for a civil penalty under section 503.001, but one dependent on and intertwined with equitable relief for section 17.47.

Because Texas's DTPA "does not authorize civil penalties separately from injunctive relief," *Gwaltney*, 484 U.S. at 58, and Texas "may seek civil penalties only in a suit brought to enjoin or otherwise abate on ongoing violation," *id.* at 59, civil penalties are "incidental to" and "intertwined with" injunctive relief. *Terry*, 494 U.S. at 571.

### ii. Alaska

The structure of Alaska's DTPA closely parallels Texas's and provides that the Attorney General may seek civil penalties only "in" an action for injunctive relief. Alaska seeks civil penalties under section 45.50.551, *see* FAC ¶¶ 681, 761(c), which permits the court to award civil penalties only "*[i]n an action* brought under AS 45.50.501":

> (b) ***In an action brought under AS 45.50.501***, if the court finds that a person is using or has used an act or practice declared unlawful by AS 45.50.471, the attorney general, upon petition to the court, may recover, on behalf of the state, a civil penalty of not less than $1,000 and not more than $25,000 for each violation.

37

Alaska Stat. § 45.50.551(b).[24]

Section 45.550.501, titled "Restraining Prohibited Acts," permits the Alaska Attorney General to "bring an action in the name of the state" "to restrain by injunction the use of an act or practice" deemed unlawful under its terms:[25]

> (a) When the attorney general has reason to believe that a person has used, is using, or is about to use an act or practice declared unlawful in AS 45.50.471, and that proceedings would be in the public interest, ***the attorney general may bring an action in the name of the state against the person to restrain by injunction the use of the act or practice.***

Alaska Stat. § 45.50.501(a).

Like Texas, Alaska can bring a standalone claim for injunctive relief, *see* Alaska Stat. § 45.50.501(a), but can seek civil penalties only "*in*" that action for injunctive relief. *Cf. Burns*, 420 U.S. at 580 (interpreting the ordinary meaning of statutory language). Alaska cases confirm that civil penalties under section 45.50.551(b) can be sought only in addition to and with injunctive relief. *See State v. O'Neill Investigations, Inc.*, 609 P.2d 520, 527 (Alaska 1980) ("*As a corollary* to injunctive relief under s 501, the Alaska Act provides for a "civil penalty[.]"); *Casciola v. F.S. Air Serv., Inc.*, 120 P.3d 1059, 1066 n.24 (Alaska 2005) ("AS 45.50.501(a) authorizes the attorney general to bring an action in the name of the state against parties engaging in practices that violate AS 45.50.471. *Pursuant to such an action*, a penalty of $5,000 per violation may be assessed against a party who violates AS 45.50.471."). Accordingly, civil penalties are "incidental to" and "intertwined with" the injunctive relief, *Terry*, 494 U.S. at 571, and so the remedies sought by Alaska are equitable.

---

[24] Section 45.50.551(a)—which provides for the availability of civil penalties where a person "*violates the terms of an injunction* or restraining order issued under AS 45.50.501"—is not at issue here.

[25] *See* FAC ¶ 681, 761(b) (confirming that Alaska seeks an injunction under this section).

### iii. Arkansas

Arkansas' DTPA follows the same pattern: the Attorney General must "file an action" for injunctive relief (or restitution) and may only seek civil penalties "in" such a proceeding. Here, the state-by-state chart of remedies sought indicates that Arkansas does not request injunctive relief (or restitution) in connection with its DTPA claims. *See* ECF 381 at 3. And it does not purport to bring an action under section 4-88-104, the "Civil Enforcement" provision that empowers the Attorney General to "file an action." *See* FAC ¶ 762. Because Arkansas can only seek penalties in a "proceeding brought by the Attorney General for civil enforcement of the provisions of this chapter" under section 4-88-104, civil penalties are not available for Arkansas at all. However, even if the Court concludes that Arkansas has brought the required action, the intertwined nature of these claims confirms that any penalties are equitable.

Arkansas seeks civil penalties under section 4-88-113(a) of the Arkansas Code, *see* FAC ¶¶ 685, 762(d), which provides: "In any proceeding brought by the Attorney General for civil enforcement of the provisions of this chapter … the circuit court may ... (3) Assess penalties":

> (a) ***In any proceeding brought by the Attorney General for civil enforcement of the provisions of this chapter***, prohibiting unlawful practices as defined in this chapter, the circuit court may make such orders or judgments as may be necessary to:… (3) ***Assess penalties*** to be paid to the state, not to exceed ten thousand dollars ($10,000) per violation, against persons found to have violated this chapter.

Ark. Code § 4-88-113(a)(3).

Section 4-88-104, the "Civil Enforcement" provision, permits the Arkansas attorney general to file an action for civil enforcement "including, but not limited to, the seeking of restitution and the seeking of an injunction:"

> In addition to the criminal penalty imposed hereunder, the Attorney General of this state shall have authority, acting through the Consumer Counsel of Arkansas, to file an action in the court designated in § 4-88-112 for civil enforcement of the provisions of this chapter, ***including***, ***but not limited to, the seeking of restitution***

***and the seeking of an injunction*** prohibiting any person from engaging in any deceptive or unlawful practice prohibited by this chapter.

Ark. Code § 4-88-104.

Both restitution and injunctive relief are equitable remedies. *See, e.g.*, *Porter v. Warner Holding Co.*, 328 U.S. 395, 402 (1946) ("Restitution [] lies within that equitable jurisdiction[.]"); *Terry*, 494 U.S. at 570 ("[W]e have characterized damages as equitable where they are restitutionary[.]"); *see also Chesapeake Expl., LLC v. Whillock*, 432 S.W.3d 61, 66 (Ark. App. 2014) ("Restitution and unjust enrichment are equitable theories[.]"). This too shows that section 4-88-104 authorizes penalties only as incidental, equitable relief. *See Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 114–15 (2001) ("[W]here general words follow specific words in a statutory enumeration, the general words are construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words."). Because Arkansas can seek penalties under its DTPA only "*in*" proceedings seeking equitable relief, Ark. Code § 4-88-113(a)(3), penalties are intertwined with equitable relief. *See Terry*, 494 U.S. at 571.

### iv. Indiana

The same is true under Indiana's DTPA: The Attorney General may "bring an action to enjoin a deceptive act" and may recover civil penalties only if the court finds a knowing violation "in" such an action. Indiana seeks civil penalties for alleged DTPA violations pursuant to section 24-5-0.5-4(g) of the Indiana Code, *see* FAC ¶ 702(a), which permits the attorney general to recover a civil penalty if the court finds "knowing[]" violations "in an action pursuant to subsection (c)":

> (g) If a ***court finds any person has knowingly violated*** section 3 or 10 of this chapter, other than section 3(b)(19), 3(b)(20), or 3(b)(40) of this chapter, ***the attorney general, in an action pursuant to subsection (c)***, ***may recover from the person on behalf of the state a civil penalty*** of a fine not exceeding five thousand dollars ($5,000) per violation.

Ind. Code § 24-5-0.5-4(g).

40

Subsection (c) is the provision under which the Indiana attorney general "may bring an action to enjoin a deceptive act":[26]

> (c) The attorney general **may bring an action to enjoin** a deceptive act, including a deceptive act described in section 3(b)(20) of this chapter, notwithstanding subsections (a) and (b). However, the attorney general may seek to enjoin patterns of incurable deceptive acts with respect to consumer transactions in real property. In addition, the court may:
>
> (1) issue an **injunction**[.]

Ind. Code § 24-5-0.5-4(c)(1).

Because Indiana can only seek civil penalties "in" an action seeking an injunction via a provision that ties the remedy to that equitable relief, its penalty remedy is "incidental to" and "intertwined with" injunctive relief. *Terry*, 494 U.S. at 571. Indiana therefore seeks wholly equitable relief.

### v.   Kentucky

Kentucky's DTPA is more of the same, allowing the Attorney General to recover civil penalties only "in" an action for injunction. It seeks civil penalties for alleged DTPA violations pursuant to Kentucky Revised Statute § 367.990(2), *see* FAC ¶ 710(c), a provision that permits the Kentucky Attorney General to seek penalties "in any action brought under KRS 367.190," if a court has found "willful[]" violations:

> (2) **In any action brought under KRS 367.190**, **if the court finds** that a person is willfully using or has willfully used a method, act, or practice declared unlawful by KRS 367.170, the Attorney General, upon petition to the court, **may recover, on behalf of the Commonwealth, a civil penalty** of not more than two thousand dollars ($2,000) per violation, or where the defendant's conduct is directed at a person aged sixty (60) or older, a civil penalty of not more than ten thousand dollars ($10,000) per violation, if the trier of fact determines that the defendant knew or should have known that the person aged sixty (60) or older is substantially more vulnerable than other members of the public.

---

[26] FAC ¶ 702(c) (confirming Indiana seeks injunctive relief for alleged DTPA violations under Ind. Code § 24-5-0.5-4(c)).

Ky. Rev. Stat. § 367.990(2).

KRS 367.190, entitled "Injunction," permits the Kentucky Attorney General to seek "a restraining order or temporary or permanent injunction to prohibit" DTPA violations—and is the section under which Kentucky seeks an injunction here, *see* FAC ¶ 709:

> Whenever the Attorney General has reason to believe that any person is using, has used, or is about to use any method, act or practice declared by KRS 367.170 to be unlawful, and that proceedings would be in the public interest, he may immediately move in the name of the Commonwealth in a Circuit Court ***for a restraining order or temporary or permanent injunction*** to prohibit the use of such method, act or practice.

Ky. Rev. Stat. § 367.190(1).

As with the other states, giving effect and meaning to the phrase "*in* any action brought under KRS 367.190" links and limits the right to seek civil penalties to an action for injunctive relief, and not otherwise. *See Russello*, 464 U.S. at 23. Because Kentucky "may seek civil penalties only in a suit brought to enjoin or otherwise abate on ongoing violation," *Gwaltney*, 484 U.S. at 59, its request for civil penalties is "incidental to" and "intertwined with" injunctive relief. *Terry*, 494 U.S. at 571.

### vi. Louisiana

The remedy provisions of Louisiana's DTPA mirror the previous five and closely track Texas's by providing that a request for civil penalties may be made only "in addition" to an action for injunctive relief. Louisiana seeks civil penalties for alleged DTPA violations pursuant to section 51:1407, entitled "Restraining Prohibited Acts." *See* FAC ¶ 713. In the same section, at subsection (B), the statute permits the attorney to request a civil penalty "[i]n addition to the remedies provided herein":

> (B) ***In addition to the remedies provided herein***, the attorney general ***may request and the court may impose a civil penalty*** against any person found by the court to have engaged in any method, act, or practice in Louisiana declared to be unlawful

under this Chapter. In the event the court finds the method, act, or practice to have been entered into with the intent to defraud, the court has the authority to impose a penalty not to exceed five thousand dollars for each violation.

La. Stat. § 51:1407(B).

The immediate (and only) preceding subsection is the one authorizing the Louisiana attorney general to "bring an action for injunctive relief." La. Stat. § 51:1407(A). No remedies *other than* injunctive relief are provided in subsection (A):

> (A) Whenever the attorney general has reason to believe that any person is using, has used, or is about to use any method, act, or practice declared by R.S. 51:1405 to be unlawful, **he may bring an action for injunctive relief in the name of the state** against such person to restrain and enjoin the use of such method, act, or practice.

La. Stat. § 51:1407(A).[27]

In sum, on the face of the Louisiana statute, the only standalone remedy in section 51:1407 is injunctive relief under subsection (A). Penalties are available under subsection (B) only "in" an action under subsection (A). Construing section 51:1407 as a whole, the civil penalty remedy is therefore inextricably intertwined with and dependent upon the injunctive relief under subsection (A). *See United States v. Morton*, 467 U.S. 822, 828 (1984) ("We do not, however, construe statutory phrases in isolation; we read statutes as a whole."). Thus, no jury right applies. *Terry*, 494 U.S. at 571.

---

[27] The only other remedy provided in the rest of the section is in subsection (C), but that provision is limited to civil penalties for violations against elderly and disabled persons. La. Stat. § 51:1407(C). It does not apply here by its terms, but is structurally linked—like the other penalty provision—to a claim for injunctive relief and penalties through subsection (B). *Id.* (civil penalty claims under subsection (C) authorized only "[i]n addition to any other civil penalty provided for in this Section").

### vii. Mississippi

Like the others, Mississippi's DTPA permits recovery of civil penalties only "in" an action for injunctive relief. Mississippi seeks civil penalties pursuant to section 75-24-19(1)(b) of the Mississippi Code, *see* FAC ¶ 768(c), which provides for civil penalties "[i]n any action brought under section 75-24-9," if the court finds "knowing[]" and "willful[]" violations:

> ***In any action brought under Section 75-24-9***, if the court finds from clear and convincing evidence, that a person knowingly and willfully used any unfair or deceptive trade practice, method or act prohibited by Section 75-24-5, the Attorney General, upon petition to the court, ***may recover on behalf of the state a civil penalty*** in a sum not to exceed Ten Thousand Dollars ($10,000.00) per violation.

Miss. Code § 75-24-19(1)(b).

Section 75-24-9 is entitled "Injunctive Relief" and permits Mississippi to "bring an action … to restrain by temporary or permanent injunction:"[28]

> Whenever the Attorney General has reason to believe that any person is using, has used, or is about to use any method, act or practice prohibited by Section 75-24-5, and that proceedings would be in the public interest, ***he may bring an action in the name of the state against such person to restrain by temporary or permanent injunction*** the use of such method, act or practice.

Miss. Code § 75-24-9.

Section 72-24-9 is also the "only" provision of the statute that permits the claims Mississippi brings here:

> Unfair methods of competition affecting commerce and unfair or deceptive trade practices in or affecting commerce are prohibited. ***Action may be brought under Section 75-24-5(1) only under the provisions of Section 75-24-9***.

Miss. Code § 75-24-5(1).

The unambiguous meaning of these provisions is plain. Actions instituted under Mississippi's DTPA may "only" be for injunctive relief, and civil penalties are available only "in"

---

[28] FAC ¶ 768(a) (confirming that Mississippi seeks injunctive relief under section 75-24-9).

an action for injunctive relief. The Mississippi Supreme Court has confirmed this, holding that, "[w]hile the MCPA also allows for the recovery of civil penalties for willful violations of Section 75-24-5, these monetary penalties may only be recovered '[i]n an[ ] action brought under Section 75-24-9.'" *State v. Yazaki N. Am., Inc.*, 294 So. 3d 1178, 1184 (Miss. 2020). "If there is no action for injunctive relief under 75-24-9, there is no action to recover civil penalties under Section 75-24-19." *Id.* Because Mississippi "may seek civil penalties only in a suit brought to enjoin or otherwise abate on ongoing violation," *Gwaltney*, 484 U.S. at 59, its request for civil penalties is not standalone: instead, it is "incidental to" and "intertwined with" injunctive relief. *Terry*, 494 U.S. at 571.

### viii.    Missouri

The same is true under Missouri's DTPA. If the attorney general brings an action for injunctive relief, and the court finds an actual or threatened violation, then—and only then—may the court issue an order granting penalties.

The section containing the civil penalties provision is titled in relevant part: "***Injunction*-- temporary restraining orders-- receivers--restitution, when--civil penalty.**" Mo. Rev. Stat. § 407.100.[29] Subsection (1) of that section requires that Missouri seek injunctive relief in any action brought for a violation of its DTPA:

> Whenever it appears to the attorney general that a person has engaged in, is engaging in, or is about to engage in any method, act, use, practice or solicitation, or any combination thereof, *declared to be unlawful by this chapter*, **the attorney general may seek and obtain, in an action in a circuit court, an injunction** prohibiting such person from continuing such methods, acts, uses, practices, or solicitations, or any combination thereof, or engaging therein, or doing anything in furtherance thereof.

---

[29] Missouri seeks both injunctive relief and civil penalties for violations of its DTPA under Mo. Rev. Stat. § 407.100. *See* Joint Appendix; *see also* ECF 381 at 4.

Mo. Rev. Stat. § 407.100(1).

Subsection (2) of that provision lists the specific relief the Missouri attorney general can seek, but requires that all relief be sought "in" an action for injunctive relief "under subsection 1":

> *In any action under subsection 1 of this section*, and pursuant to the provisions of the Missouri Rules of Civil Procedure, the attorney general may *seek and obtain temporary restraining orders, preliminary injunctions, temporary receivers*, and the sequestering of any funds or accounts if the court finds that funds or property may be hidden or removed from the state or that such orders or injunctions are otherwise necessary.

Mo. Rev. Stat. § 407.100(2).

Subsection (3) further clarifies that if the court makes certain findings, again in the context of an "action under subsection 1," then "it may make such orders or judgments as may be necessary to prevent" further violations:

> *If the court finds* that the person has engaged in, is engaging in, or is about to engage in any method, act, use, practice or solicitation, or any combination thereof, declared to be unlawful by this chapter, *it may make such orders or judgments as may be necessary* to prevent such person from employing or continuing to employ, or to prevent the recurrence of, any prohibited methods, acts, uses, practices or solicitations, or any combination thereof, declared to be unlawful by this chapter.

Mo. Rev. Stat. § 407.100(3).

The remaining subsections in section 407.100 enumerate the relief the court may provide if the steps outlined in subsections (1) through (3) have been completed.[30] Concretely, if (1) the

---

[30] *See* Mo. Rev. Stat. § 407.100(4)–(5).

> 4. The court, in its discretion, may enter an order of restitution, payable to the state, as may be necessary to restore to any person who has suffered any ascertainable loss, including, but not limited to, any moneys or property, real or personal, which may have been acquired by means of any method, act, use, practice or solicitation, or any combination thereof, declared to be unlawful by this chapter. It shall be the duty of the attorney general to distribute such funds to those persons injured. Such funds may or may not be interest-bearing accounts, but any interest which accrues to any such account shall be sent at least annually by the attorney general to the director of revenue to be deposited in the state treasury to the credit of the state general revenue fund.

attorney general brings an action for injunctive relief to remedy actual or threatened statutory violations; (2) the attorney general seeks preliminary injunctive relief; and (3) the court finds an actual or threatened violation, the court may issue "orders or judgments" granting (4) restitution, (5) a receiver, or (6) civil penalties, in addition to the permanent and preliminary injunctive relief authorized by the first two subsections.

These provisions do not permit the attorney general to bring a standalone action for a civil penalty. Rather, the remaining provisions—including the provision for civil penalties under subsection (6)—all refer back to the injunction action contemplated in section (1) and prescribe additional remedies the court can order should it find a defendant liable in the injunctive relief action authorized in section (1):

> ***The court may award to the state a civil penalty*** of not more than one thousand dollars ***per violation***; except that, if the person who would be liable for such penalty shows, by a preponderance of the evidence, that a violation resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adopted to avoid the error, no civil penalties shall be imposed.

Mo. Rev. Stat. § 407.100(6).

In other words, civil penalties are available only if, in the action for injunctive relief, the court finds that the defendant committed violations of the State's DTPA. Because Missouri's DTPA "do[es] not authorize civil penalties separately from injunctive relief," *Gwaltney*, 484 U.S. at 59, and civil penalties are available "only in a suit brought to enjoin or otherwise abate on ongoing violation," *id.*, Missouri's request for civil penalties is "incidental to" and "intertwined with" injunctive relief. *Terry*, 494 U.S. at 571. Missouri thus seeks wholly equitable remedies.

---

5. The court, in its discretion, may appoint a receiver to ensure the conformance to any orders issued under subsection 3 of this section or to ensure the payment of any damages ordered under subsection 4 of this section.

### ix. **Montana**

The injunctive relief and civil penalties provisions under Montana's DTPA are almost identical to Kentucky's. Civil penalties can be awarded only "[i]n an action brought under 30-14-111," the injunctive relief provision, and if the court finds "willful[]" violations:[31]

> *In an action brought under 30-14-111*, if the *court finds that* a person is *willfully using or has willfully used* a method, act, or practice declared unlawful by 30-14-103, the department, upon petition to the court, *may recover on behalf of the state a civil fine* of not more than $10,000 for each violation. The fine provided for in this subsection is in addition to any liability that a person might be subject to under subsection (1).

Mont. Code Ann. § 30-14-142(2).

Section 30-14-111—titled "Department to restrain unlawful acts—is the provision under which Montana seeks injunctive relief, FAC ¶ 726, 770(b):

> (1) Whenever the department has reason to believe that a person is using, has used, or is about to knowingly use any method, act, or practice declared by 30-14-103 to be unlawful and that proceeding would be in the public interest, the department may bring an *action in the name of the state against the person to restrain by temporary or permanent injunction or temporary restraining order* the use of the unlawful method, act, or practice upon giving appropriate notice to that person. … (4) A district court is authorized to issue temporary or permanent injunctions or temporary restraining orders to restrain and prevent violations of this part, and an injunction must be issued without bond.

Mont. Code Ann. § 30-14-111(1), (4).

The Court must give meaning to the phrase "in an action brought under 30-14-111." *See Russello*, 464 U.S. at 23. Based on its ordinary meaning, Montana can seek civil penalties only "in" an action for injunctive relief, not as a standalone claim. Because Montana's DTPA "do[es] not authorize civil penalties separately from injunctive relief," *Gwaltney*, 484 U.S. at 59, and civil penalties are available "only in a suit brought to enjoin or otherwise abate on ongoing violation,"

---

[31] FAC ¶¶ 726, 770 (confirming that Montana seeks civil penalties for alleged DTPA violations pursuant to section 30-14-142).

*id.*, Montana's request for civil penalties is therefore "incidental to" and "intertwined with" injunctive relief. *Terry*, 494 U.S. at 571. Montana thus seeks wholly equitable remedies.

### x. South Carolina

South Carolina seeks civil penalties for alleged DTPA violations pursuant to South Carolina Code section 39-5-110(a). *See* FAC ¶ 751(b). Under that section, South Carolina's Attorney General can recover civil penalties "if a court finds" that any person has committed a "willful[]" violation of its DTPA:

> "(a) ***If a court finds that any person is willfully using or has willfully used a method, act or practice declared unlawful by Section 39-5-20***, the Attorney General, upon petition to the court, may recover on behalf of the State a civil penalty of not exceeding five thousand dollars per violation."

S.C. Code Ann. § 39-5-110(a) ("Civil penalties for willful violation …").

But to obtain that finding, South Carolina's Attorney General must first "bring an action in the name of the State against such person to restrain by temporary restraining order, temporary injunction or permanent injunction":

> "(a) ***Whenever the Attorney General has reasonable cause to believe that any person is using, has used or is about to use any method, act or practice declared by Section 39-5-20 to be unlawful***, and that proceedings would be in the public interest, he may bring an action in the name of the State against such person to restrain by ***temporary restraining order, temporary injunction or permanent injunction*** the use of such method, act or practice."

S.C. Code Ann. § 39-5-50(a) ("Injunction").

South Carolina admits that it brings its DTPA action here "pursuant to S.C. Code § 39-5-50(a)," FAC ¶ 745, and that it seeks injunctive relief under that section, *id.* ¶ 751(a). No provision of South Carolina's DTPA that allows the Attorney General to "bring an action" solely for recovery of a penalty, nor does South Carolina purport to do so here. As with the other states, because South Carolina brings its DTPA action pursuant to a provision authorizing only injunctive relief, and because it may recover penalties only if the Court finds a "willful" violation in that

49

injunctive relief action, its claim for civil penalties is "incidental to" and "intertwined with" its claim for injunctive relief. *Gwaltney*, 484 U.S. at 59.

### xi. South Dakota

South Dakota's injunctive relief and civil penalties provisions parallel Kentucky's and Montana's, in that the attorney general may recover civil penalties only "in" an action for injunctive relief. The state-by-state chart of remedies sought indicates that South Dakota does not request injunctive relief in connection with its DTPA claims. *See* ECF 381 at 5. And it does not seek any relief under section 37-24-23 except for fees and costs. *See* FAC ¶ 775. Because South Dakota can only seek penalties in an action for injunctive relief "brought under § 37-24-23," penalties are not available here. However, even if the Court concludes that South Dakota has sufficiently alleged the required claim for injunctive relief, the intertwined nature of these claims confirms that any penalties sought are equitable.

Civil penalties can be awarded "[i]n any action brought under § 37-24-23" for "intentional[]" violations:[32]

> ***In any action brought under § 37-24-23***, if the *court finds that a person is intentionally using or has intentionally used* an act or practice declared to be unlawful by § 37-24-6, the attorney general, upon petition to the court, ***may recover, on behalf of the state, a civil penalty*** of not more than two thousand dollars per violation. For purposes of this section, an intentional violation occurs when the party committing the violation knew or should have known that his conduct was a violation of § 37-24-6.

S.D. Codified Laws § 37-24-27.

---

[32] FAC ¶ 775(d) (confirming that South Dakota seeks civil penalties for alleged DTPA violations pursuant to SDCL § 37-24-27).

As the title of that section—"Civil penalty for intentional violations recovered in action for injunction"—confirms, section 37-24-23 is the provision under which South Dakota "may bring an action ... to restrain by temporary or permanent injunction:"

> If the attorney general has reason to believe that any person is using, has used, or is about to use any act or practice declared to be unlawful by § 37-24-6 and that proceedings would be in the public interest, the attorney general may bring ***an action in the name of the state against the person to restrain by temporary or permanent injunction*** the use of the act or practice, upon the giving of appropriate notice to that person. The notice shall state generally the relief sought and be served in accordance with § 37-24-16 and at least three days before any hearing in the action. The attorney general, if the prevailing plaintiff, may also recover reasonable attorney's fees and costs.

S.D. Codified Laws § 37-24-23 ("Attorney general's action for injunction–Notice–Attorney fees").

Consistent with the plain meaning of these provisions, the South Dakota Supreme Court has held that the civil penalty provided in section 37-24-27 "is premised upon the state bringing an action for an injunction[.]" *State v. Western Capital Corp.*, 290 N.W.2d 467, 473 (S.D. 1980). Because South Dakota can obtain civil penalties "only in a suit brought to enjoin or otherwise abate on ongoing violation," *Gwaltney*, 484 U.S. at 59, South Dakota's request for civil penalties is "incidental to" and "intertwined with" the State's injunctive relief. *Terry*, 494 U.S. at 571.

### Eleven States: Conclusion

The civil penalties in these eleven states do not exist as standalone remedies. Rather, they depend expressly on—and are directly linked to—provisions that authorize equitable and injunctive relief. Because penalties can be sought "only in a suit brought to enjoin or otherwise abate on ongoing violation," *Gwaltney*, 484 U.S. at 59," under the plain holdings of *Tull* and *Gwaltney*, the penalties sought by these States are all "incidental to" and "intertwined with" injunctive relief. Accordingly, under the Texas, Alaska, Arkansas, Indiana, Kentucky, Louisiana, Mississippi, Missouri, Montana, South Carolina, and South Dakota DTPAs, the penalty "remedy

sought" by each of these States under their DTPA is equitable. *See Terry*, 494 U.S. at 571; *Borst*, 36 F.3d at 1324; Mot. at 6–8 (citing cases). No jury right therefore applies.

### c. Five States' DTPAs: Penalties Intertwined With Equitable Relief Here.[33]

In five additional States—Florida, Idaho, Nevada, North Dakota, and Utah—standalone claims for DTPA civil penalties are not available. Rather, as invoked here, the penalties requested are authorized only in actions for injunctive relief. That makes them "incidental to" and "intertwined with" injunctive relief, and therefore equitable. *Terry*, 494 U.S. at 571.

### i. Florida

Florida seeks civil penalties under section 501.2075 of its DTPA. *See* FAC ¶¶ 689(d); 763(d). This section allows recovery of a civil penalty for "willful[]" violations, but only "in any action brought under this part by the enforcing authority:"[34]

> Except as provided in s. 501.2077, any person, firm, corporation, association, or entity, or any agent or employee of the foregoing, who is willfully using, or has willfully used, a method, act, or practice declared unlawful under s. 501.204, or who is willfully violating any of the rules of the department adopted under this part, is liable for a civil penalty of not more than $10,000 for each such violation. Willful violations occur when the person knew or should have known that his or her conduct was unfair or deceptive or prohibited by rule. ***This civil penalty may be recovered in any action brought under this part by the enforcing authority***; or the enforcing authority may terminate any investigation or action upon agreement by the person, firm, corporation, association, or entity, or the agent or employee of the foregoing, to pay a stipulated civil penalty.

Fla. Stat. Ann. § 501.2075 ("Civil penalty").

---

[33] For the Court's reference, Appendix B is a chart comparing the injunctive relief and penalty provisions of these five States' DTPAs.

[34] Actions brought "under this part" means actions brought under Florida's DTPA. *See* Fla. Stat. Ann. § 501.201 (*"This part shall be known and may be cited as the 'Florida Deceptive and Unfair Trade Practices Act.'"*).

Under its DTPA, Florida's enforcing authority can bring actions (a) "to obtain a declaratory judgment"; (b) "to enjoin"; or (c) for "actual damages":

> ***The enforcing authority may bring***: (a) An action to obtain a declaratory judgment that an act or practice violates this part. ***(b) An action to enjoin any person who has violated, is violating, or is otherwise likely to violate, this part.*** (c) An action on behalf of one or more consumers or governmental entities for the actual damages caused by an act or practice in violation of this part."

Fla. Stat. Ann. § 501.207(1) ("Remedies of enforcing authority").

Florida does not seek damages or a declaratory judgment. FAC ¶¶ 689, 763 (no mention of damages or declaratory judgment);[35] ECF 381 at 3 (same); *cf.* Ex. 5 (Pls' Am. Disclosures) at 2 ("Plaintiff States do not seek damages in this case."). Instead, it seeks civil penalties in an action "under this part," Fl. Stat. Ann. § 501.2075, that is brought to "enjoin any person who has violated, is violating, or is otherwise likely to violate" its DTPA. *Id.* at § 501.207; *see also* FAC ¶¶ 689(c), 763(f). Civil penalties can be recovered under Florida's DTPA only in actions brought by the enforcing authority, and the action brought by Florida's enforcing authority here is for injunctive relief. Accordingly, as asserted, Florida's request for penalties is "incidental to" and "intertwined with" injunctive relief. *Gwaltney*, 484 U.S. at 59.

### ii. Idaho

Idaho seeks civil penalties and injunctive relief, both pursuant to section 48-606(1) of its DTPA. *See* FAC ¶¶ 695, 764(f), 764(i); *see also* ECF 381 at 3. As relevant here, that subsection allows Idaho's attorney general to "bring an action … to enjoin any method, act or practice that

---

[35] Even if Florida also seeks a declaratory judgment, it would not change the analysis. *See City of El Paso, Tex. v. El Paso Entm't Inc.,* 464 F. App'x 366, 370 (5th Cir. 2012) ("[A]n action for declaratory relief can be either legal or equitable, depending upon whether the action is simply an inverted lawsuit for legal relief or the counterpart of a suit in equity." (quoting *Terrell v. DeConna*, 877 F.2d 1267, 1273 (5th Cir.1989)); *see also Robinson v. Brown,* 320 F.2d 503, 505 (6th Cir.1963) ("The inclusion of a claim for declaration of rights in the complaint did not, in our opinion, convert an equity case into an action at law.").

violates the provisions of [the DTPA]; … [and] to recover from the alleged violator civil penalties":

> "(1) Whenever the attorney general has reason to believe that any person is using, has used, or is about to use any method, act or practice declared by this chapter to be unlawful, and that proceedings would be in the public interest, he may bring an action in the name of the state against such person:
>
> > (a) To obtain a declaratory judgment that a method, act or practice violates the provisions of this chapter;
> >
> > (b) ***To enjoin any method, act or practice that violates the provisions of this chapter*** by issuance of a temporary restraining order or preliminary or permanent injunction, upon the giving of appropriate notice to that person as provided by the Idaho rules of civil procedure;
> >
> > (c) To recover on behalf of consumers actual damages or restitution of money, property or other things received from such consumers in connection with a violation of the provisions of this chapter;
> >
> > (d) To order specific performance by the violator;
> >
> > (e) ***To recover from the alleged violator civil penalties*** of up to five thousand dollars ($5,000) per violation for violation of the provisions of this chapter; and
> >
> > (f) To recover from the alleged violator reasonable expenses, investigative costs and attorney's fees incurred by the attorney general.

Idaho Code § 48-606(1).

Like the statute in *Gwaltney*,[36] these "two forms of relief are referred to in the same subsection,"[37] which "suggests a connection between injunctive relief and civil penalties," and supports a conclusion that civil penalties may be sought "only in a suit brought to enjoin or otherwise abate on ongoing violation." 484 U.S. at 58–59.

---

[36] That statute, 33 U.S.C. § 1365, permitted the court to "enforce such an effluent standard or limitation, or such an order, . . . and to apply any appropriate civil penalties under section 1319(d) of this title." 484 U.S. at 54 n.1.

[37] There are six total subsections in Idaho Code § 48-606. The full statute is included in the Joint Appendix.

Because Idaho seeks solely civil penalties and injunctive relief in this case, and those provisions are referred to in the same subsection (and even same sentence) under Idaho Code § 48-606, any award of civil penalties will be "intertwined with" the award of injunctive relief. *Id.* at 58. The remedy sought by Idaho under its DTPA is therefore equitable.

### iii. Nevada

Nevada seeks civil penalties under sections 598.0999(2) and 598.0973(1) of its DTPA. *See* FAC ¶ 771(b). Both civil penalty provisions permit an award of penalties only "*in any action brought pursuant to the provisions of NRS 598.0903 to 598.0999, inclusive.*" Neither NRS 598.0999(2) (which applies to willful violations) nor NRS 598.0973(1) (which applies to violations "directed toward an elderly person or a person with a disability") allow Nevada to bring a standalone claim for civil penalties.[38]

> Except as otherwise provided in NRS 598.0974, ***in any action brought pursuant to the provisions of NRS 598.0903 to 598.0999, inclusive***, if the court finds that a person has willfully engaged in a deceptive trade practice, the Commissioner, the Director, the district attorney of any county in this State or ***the Attorney General bringing the action may recover a civil penalty*** not to exceed $15,000 for each violation. The court in any such action may, in addition to any other relief or reimbursement, award reasonable attorney's fees and costs.

---

[38] That civil penalties may be awarded in an action brought under section 598.0999 does not mean an independent claim for civil penalties is available. That language refers to Nevada's ability to obtain civil penalties in an action brought pursuant to subsections 598.0999(4) or 598.0999(5), which explicitly permit "the Commissioner or the district attorney of any county [to] bring an action in the name of the State of Nevada" to seek "suspension of [a] person's privilege to conduct business within [Nevada]" or "dissolution of [a] corporation." *See* Nev. Rev. Stat. § 598.0999(4)–(5). Subsections (4) and (5) do not include the language in subsection (2) that limits recovery of civil penalties to "actions brought under" specific sections.

The Court should give meaning to the Nevada legislature's inclusion of that limiting language for the civil penalties provision (subsection (2)), in contrast to the language in subsections (4) and (5) authorizing Nevada to "bring an action." *See Russello*, 464 U.S. at 23. The plain meaning is that civil penalties may be sought *only* in another action—which can include an action for injunctive relief (like here) or can be an action for dissolution of a corporation under subsections (4) and (5). Any other interpretation would render the limiting phrase ("in any action brought pursuant to") in subsection 598.0999(2) meaningless.

Nev. Rev. Stat. § 598.0999(2) ("Civil and criminal penalties for violations").

> Except as otherwise provided in NRS 598.0974,[39] *in any action or proceeding brought pursuant to NRS 598.0903 to 598.0999,* inclusive, if the court or the Director or his or her designee finds that a person has engaged in a deceptive trade practice directed toward an elderly person or a person with a disability, the court or the Director or his or her designee may, in addition to any other civil or criminal penalty, impose a civil penalty of:
>> (a) For a deceptive trade practice directed toward a person with a disability, not more than $15,000 for each violation.
>> (b) For a deceptive trade practice directed toward an elderly person, not more than $25,000 for each violation.

*Id*. § 598.0973(1) ("Civil penalty for engaging in deceptive trade practice directed toward elderly person or person with disability").

Because the penalty remedies are *not* standalone remedies, under *Gwaltney* they are intertwined with equitable relief. This is confirmed here by another fact: Nevada seeks injunctive relief under section 598.0963, FAC ¶ 771(a), which is the sole claim Nevada brings "pursuant to the provisions of NRS 598.0903 to 598.0999":

> If the Attorney General has reason to believe that a person has engaged or is engaging in a deceptive trade practice, the Attorney General may bring an action in the name of the State of Nevada against that person *to obtain a temporary restraining order, a preliminary or permanent injunction,* or other appropriate relief, including, without limitation, the recovery of a civil penalty, disgorgement, restitution or the recovery of damages . . . .

Nev. Rev. Stat. § 598.0963(3) ("Additional powers of Attorney General").[40]

Because the civil penalties Nevada seeks can only be brought "in an action brought pursuant to *the provisions of NRS 598.0903 to 598.0999*," and the only action Nevada brings

---

[39] Nev. Rev. Stat. § 598.0974 does not change the analysis or bear on this case. That section provides that a civil penalty "must not be imposed" in certain civil proceedings "if a fine has previously been imposed against that person *by the Department of Motor Vehicles* pursuant to NRS 482.554 for the same act."

[40] While section 598.0963 might be read to separately authorize penalties, Nevada *does not seek penalties pursuant to section 598.0963 in this case*. *See* FAC ¶ 771(a).

pursuant to them is for injunctive relief, any award of civil penalties here is "incidental to" and

"intertwined with" injunctive relief. *Cf. Gwaltney*, 484 U.S. at 59.

### iv. North Dakota

North Dakota seeks civil penalties pursuant to North Dakota Century Code § 51-15-11.

*See* FAC ¶ 739, 772(d). That section permits the court to assess civil penalties for violations of the

State's DTPA, but only "in addition to those remedies otherwise provided by this chapter[.]" The

statute does not permit standalone claims for civil penalties:

> The court may assess for the benefit of the state a civil penalty of not more than five thousand dollars for each violation of this chapter or for each violation of chapter 51-12, 51-13, 51-14, or 51-18. The penalty provided in this section ***is in addition to those remedies otherwise provided*** by this chapter or by chapter 50-22, 51-12, 51-13, 51-14, 51-16.1, or 51-18.

N.D. Century Code § 51-15-11 ("Civil penalties").

As with the other states, North Dakota anchors its request for penalties in an action for

injunctive relief, here doing so pursuant to section 51-15-07:[41]

> Whenever it appears to the attorney general that a person has engaged in, or is engaging in, any practice declared to be unlawful by this chapter, or by other provisions of law, including chapter 50-22, 51-13, 51-14, 51-16.1, or 51-18, ***the attorney general may seek and obtain in an action in a district court an injunction*** prohibiting that person from continuing the unlawful practice or engaging in the unlawful practice or doing any act in furtherance of the unlawful practice after appropriate notice to that person."

N.D. Century Code § 51-15-07 ("Remedies--Injunction--Other relief--Receiver--Cease and desist

orders--Civil penalties--Costs recoverable in adjudicative proceedings"). North Dakota seeks no

other remedy under its DTPA. *See* FAC ¶ 772; ECF 381 at 5; Ex. 5 at 2.

Like other states, North Dakota embeds the right to penalties in a catchall provision that

refers to injunctive and other forms of equitable relief. Because North Dakota can only obtain civil

---

[41] *See* FAC ¶ 772(c) (seeking injunctive relief pursuant to N.D. Century Code § 51-15-07).

penalties "in addition" to other remedies provided under its DTPA, and here, the only other remedy North Dakota seeks under its DTPA is injunctive relief, any civil penalties are "incidental to" and "intertwined with" injunctive relief. *Gwaltney*, 484 U.S. at 59.

### v. Utah

Utah's DTPA mirrors Idaho's. Utah seeks civil penalties and injunctive relief, both pursuant to section 13-11-17(1) of its DTPA. *See* FAC ¶ 758. As relevant here, the subsection allows Utah's enforcing authority to bring an action to "enjoin, in accordance with the principles of equity, [violations]; ... and obtain a fine":

> The enforcing authority may bring an action in a court of competent jurisdiction to:
>
> (a) obtain a declaratory judgment that an act or practice violates this chapter;
>
> (b) ***enjoin, in accordance with the principles of equity***, a supplier who has violated, is violating, or is otherwise likely to violate this chapter;
>
> (c) recover, for each violation, actual damages, or obtain relief under Subsection (2)(b), on behalf of consumers who complained to the enforcing authority within a reasonable time after it instituted proceedings under this chapter; and
>
> (d) ***obtain a fine*** in an amount determined after considering the factors in Subsection (6).

Utah Code § 13-11-17(1).

Like Idaho's DTPA and the statute in *Gwaltney*, these "two forms of relief are referred to in the same subsection,"[42] which again "suggests a connection between injunctive relief and civil penalties" and "supports" a conclusion that civil penalties may be sought "only in a suit brought to enjoin or otherwise abate on ongoing violation." 484 U.S. at 58–59.

Because Utah seeks solely civil penalties and injunctive relief in this case, and those provisions are referred to in the same subsection under section 13-11-17, any award of civil

---

[42] There are six total subsections in Utah Code § 13-11-17. The full statute is included in the Joint Appendix.

penalties would be "intertwined with" any award of injunctive relief. *Cf. Gwaltney*, 484 U.S. at 58. The remedy sought by Utah under its DTPA is therefore equitable.

### Five States: Conclusion

Because the civil penalties sought by Florida, Idaho, Nevada, North Dakota, and Utah are asserted with, and depend on, required injunctive relief, they are "incidental to" and "intertwined with" with that equitable relief. The "remedy sought" by these States under their DTPAs is thus equitable. *See Terry*, 494 U.S. at 571; *Borst*, 36 F.3d at 1324; Mot. at 6–8 (citing cases).

### d. Puerto Rico: Cannot Bring DTPA Claims in this Court.

Puerto Rico (the last of the seventeen Plaintiffs) purports to seek injunctive relief and civil penalties in connection with its DTPA claims, citing both 10 L.P.R.A. § 259 and 10 L.P.R.A. § 269. *See* FAC ¶ 773(b); *see also* ECF 381 at 5. The text of section 259 requires that Puerto Rico's Department of Consumer Affairs ("DACO", a Puerto Rican administrative agency) impose any civil penalties, followed by judicial review in the Puerto Rico Court of First Instance[43]:

> (i) When any person is found liable of violating the regulations approved pursuant to subsection (b) of this section, and it appears that said violation was committed with present or real knowledge of the prohibition, or with reasonable knowledge inferred on the basis of objective circumstances, ***the Department of Consumer Affairs shall impose a civil penalty*** up to five thousand dollars ($5,000), for each violation in addition to the most appropriate remedies according to the details of the complaint, as provided in subsection (c) of this section.

> (d) The Office of Monopolistic Affairs or the accused party, when affected by a decision of the Department of Consumer Affairs, shall be entitled to a ***judicial review at the Court of First Instance of the Commonwealth of Puerto Rico***. The petition for review shall be filed with the Court of First Instance within thirty (30) days from the date of notice of such decision.

10 L.P.R.A. § 259(d), (i) ("Fair Competition") (translated).

---

[43]The Puerto Rico Supreme Court recently held that the appeal should be to the Puerto Rico Court of Appeals. *See* p.15 n.5, *supra*.

Puerto Rico courts have held that DACO has *exclusive primary jurisdiction* to adjudicate such claims. *Aguadilla Paint Center v. Esso*, 2011 WL 6759549, 183 D.P.R. 901, 83 P.R. Offic. Trans. 44 (P.R. Dec. 15, 2011); *Cemex de Puerto Rico, Inc. v. Terrassa Concrete Indus., Inc.*, 2024 WL 2332605, at *3 (P.R. Cir. Apr. 26, 2024). There is no basis—either in the text of the statute or Puerto Rico caselaw—to conclude that this Texas federal court can decide Puerto Rico's claim for civil penalties under section 259. Nor is there any basis on which this Court could empanel and authorize a Texas jury to do so, under *Tull* or otherwise.

The same is true for section 269, which requires claims for injunctive relief to be adjudicated in Puerto Rico's Court of First Instance. 10 L.P.R.A. § 269; *see also Aguadilla*, 183 D.P.R. at 932–33 (noting that injunction requests are governed by section 269):

> **The Court of First Instance is hereby vested with jurisdiction to prevent, prohibit, enjoin and punish violations of this chapter**, and it shall be the duty of the Secretary of Justice to institute proceedings for injunctions or any other proceeding to prevent, prohibit, enjoin and punish such violations, and to obtain such other or further relief as may be appropriate. When a party complained of shall have been duly notified that an action has been filed against him, the court shall proceed, as soon as possible, to the hearing and determination of the case; and pending such proceedings and before final decree, **the court may make such temporary restraining orders or prohibition** as shall be deemed just in the premises.

10 L.P.R.A. § 269 ("Jurisdiction and Enforcement Provisions") (translated).

Even if the Court reads section 269 as permitting courts *in general* to "prevent, prohibit, enjoin, and punish" violations—and interprets "punish" to include the availability of civil penalties, despite canons of statutory interpretation indicating otherwise[44]—any civil penalties awarded under section 269 would necessarily be "intertwined with" and "incidental to" injunctive relief. *See Gwaltney*, 484 U.S. at 58. This interpretation is supported by the next sentence in section

---

[44] "The traditional canon of construction, *noscitur a sociis,* dictates that 'words grouped in a list should be given related meaning.'" *Dole v. United Steelworkers of Am.*, 494 U.S. 26, 36 (1990) (quoting *Massachusetts v. Morash,* 490 U.S. 107, 114–11 (1989)).

269, which provides that the Secretary of Justice can "institute proceedings for *injunctions* or *any other proceeding* to prevent, prohibit, enjoin and punish such violations." The Court should interpret "any other proceeding" to include only actions similar to those "for injunctions." *Cir. City Stores,* 532 U.S. at 114–15 ("Where general words follow specific words in a statutory enumeration, the general words are construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words."). It follows that Puerto Rico must institute an action for an injunction, or a similar equitable action, to seek penalties, which makes Puerto Rico's request for penalties incidental to injunctive relief and thus equitable. *See Gwaltney*, 484 U.S. at 58; *Terry*, 494 U.S. at 571.

### e.  Any Uncertainty Weighs in Favor of Dismissal Under 28 U.S.C. § 1367(c).

If the Court concludes that the text of any DTPA is ambiguous and could be read to "separably" authorize the State to seek civil penalties without seeking injunctive relief, the Court should exercise its discretion to decline supplemental jurisdiction over those DTPA claims. *See* 28 U.S.C. § 1367(c)(1) (endorsing federal courts' discretion to decline supplemental jurisdiction over a state-law claim that "raises a novel or complex issue of State law").[45]

First, this would allow the respective States' courts—where their legislatures authorized their Attorneys General to file suit—to address in the first instance the relationship between injunctive relief and civil penalties under the DTPAs. *See Enochs v. Lampasas Cty.*, 641 F.3d 155, 161 (5th Cir. 2011) ("[T]he Supreme Court has for nearly half a century cautioned federal courts

---

[45] "Courts are instructed to examine their jurisdiction 'at every stage of the litigation,'" *Enochs v. Lampasas Cty.*, 641 F.3d 155, 161 (5th Cir. 2011), so while Google also raised section 1367(c) in its pending motion for summary judgment on the States' DTPA claims, the issue "is one which remains open throughout the litigation," *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 727 (1966).

to avoid 'needless decisions of state law' such as the decisions the district court made on the merits of [plaintiff's] Texas state law claims." (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)).

Dismissal would also be fair to the Texas citizens who would otherwise be burdened with the obligation to sit as jurors in a month-long trial to determine whether Google is liable under other States' consumer protection laws—claims that (under the States' flawed method of counting violations) account for miniscule percentages of the DTPA violations alleged here. *See e.g.*, ECF 668-10 (Andrien Expert Report) at 111 (alleged violations in Idaho ranging between .51% and .59%).

### 3. The States Fail to Substantively Engage with the "Incidental to" or "Intertwined with" Issue.

In their response, the States failed to meaningfully engage with whether penalties are incidental to, or intertwined with, injunctive relief under any of their DTPAs. *See generally* ECF 753 (failing to cite Tex. Bus. & Com. Code § 17.47); *id.* at 8 & n.4 (stating that these arguments are "irrelevant" and "wrong" but not explaining why). At the hearing, the States attempted to make up for lost ground but still fell short. 3/12/25 Hrg Tr. at 50:2–53:5.

The States had three basic responses. First, they asserted that under section 17.47 of Texas's DTPA, penalties are available even if injunctive relief is denied. *Id.* at 50:11–51:22. But they have cited no cases in which that has ever occurred (nor is Google aware of any), and it defies reason to interpret the "Restraining Orders" provision as authorizing the recovery of penalties where the court has found injunctive relief unwarranted. The more reasonable interpretation is that where a court denies a claim for injunctive relief under subsection (a), the "additon[al]" remedies in the statute will be denied too—after all, the States do not dispute that the facts they "must prove to establish their right to injunctive relief under [Section 17.47] are the same facts needed for this

Court to apply civil penalties." *Cf. Paolino v. JF Realty*, 2013 WL 12320080, at *3 (D.R.I. Aug. 8, 2013). That there are *additional* mental state requirements for obtaining penalties under most DTPAs—not required for obtaining injunctive relief—further confirms that a court cannot award penalties without injunctive relief. *See* Fla. Stat. Ann. § 501.2075; Ky. Rev. Stat. § 367.990(2); Mont. Code Ann. § 30-14-142; Nev. Rev. Stat. § 598.0999(2); S.C. Code Ann. § 39-5-110(a) ("willfully"); Miss. Code § 75-24-19(1)(b) ("willfully and knowingly"); Ind. Code § 24-5-0.5-4(g); 10 L.P.R.A. § 259 ("knowingly"); S.D. Codified Laws § 37-24-27 ("intentionally").

But regardless, the Supreme Court's test for whether a monetary award is "incidental to" or "intertwined with" injunctive relief has never required that monetary relief be *awarded* only if injunctive relief is awarded. To the contrary, monetary relief can be incidental to injunctive relief even though *no injunctive relief is awarded*, because the "historical test looks to the remedy which was 'sought' by the plaintiff," not the remedy awarded. *See Entergy Arkansas, Inc. v. Nebraska*, 358 F.3d 528, 545 (8th Cir. 2004) (quoting *Granfinanciera*, 492 U.S. at 42); *cf. Crane Co. v. Am. Standard, Inc.*, 490 F.2d 332, 342 (2d Cir. 1973) (unavailability of equitable relief does not "transform what had been a suit in equity into one at least partially at law simply because the chancellor might determine monetary relief to be a more appropriate remedy than a retrospective injunction"). Simply put, equitable penalties do not become legal even if they can be awarded without an injunction.

The pertinent question is instead whether the party "may seek civil penalties *only in a suit* brought to enjoin or otherwise abate an ongoing violation." *Gwaltney*, 484 U.S. at 58–59. Or, as the D.C. Circuit further expounded, is the power to award penalties "*derived from* a statutory grant of equitable authority." *Crocker*, 49 F.3d at 748. The States admit as much for Texas and Mississippi. *See* 3/12/25 Hrg Tr. at 50:15–18 ("The most that it could be read to say is *you have to*

*ask for equitable relief.* This is under 17.47(a), and that also authorizes you to ask for civil penalties."); *id.* at 51:23–52:1 ("It's the same in Mississippi. ... It just says *you have to request [equitable relief] in order to get the civil penalties.*"). And Google's analysis for the other States' DTPAs confirms the same.

For similar reasons, the States misfire their second (but related) argument that the "purpose of these penalties does not change" even when they are available only in suits for equitable relief. *See* 3/12/25 Hrg Tr. at 52:24–53:1. That simply sidesteps *Terry*'s intertwinement test altogether, and ignores its mandate that the nature of intertwined relief be evaluated as such. *See, e.g.*, *Borst*, 36 F.3d at 1324 (citing *Terry*, 494 U.S. at 570–71). *Terry* did not carve out penalties from the "incidental to equitable relief" exception. 494 U.S. at 570–71. Nor have courts read a carve-out for penalties into the exception since. To the contrary, as two post-*Tull* and *Terry* cases prove, when penalties—regardless of their purpose when raised independently, as they were in *Jarkesy* and *Tull*—are intertwined with injunctive relief, no Seventh Amendment right attaches. *See Paolino*, 2013 WL 12320080 at *3; *Sanchez v. Esso Standard Oil De Puerto Rico, Inc.*, 2010 WL 3087485, at *2 (D.P.R. Aug. 5, 2010).[46]

---

[46] Extensive additional case law—from courts of appeals across the country—likewise holds that monetary relief is equitable when intertwined with equitable relief. *See, e.g.*, *Entergy Arkansas*, 358 F.3d at 546–47 (holding that district court did not err by striking jury demand where monetary damages sought were "interrelated" to request for injunctive relief); *Golden v. Kelsey-Hayes Co.*, 73 F.3d 648, 662 (6th Cir. 1996) ("It is clear then that this particular case claiming a breach of a CBA is an equitable one, because, unlike in many contract actions, the plaintiffs seek equitable relief to which the monetary relief is only incidental."); *Brock v. Superior Care, Inc.,* 840 F.2d 1054, 1063 (2d Cir. 1988) ("If he wants to recover liquidated damages, he can sue under section 16(c), in which case the employer is entitled to a jury trial on the back pay award; if the Secretary prefers not to have a jury trial, he can sue for an injunction under section 17 and obtain a back pay award as an equitable remedy incidental to the injunction."); *Adams v. Cyprus Amax Minerals Co.*, 149 F.3d 1156, 1161–62 (10th Cir. 1998) (reversing on interlocutory appeal district court's denial of motion to strike the jury because monetary relief was "inextricably intertwined" with equitable relief, which made the remedy sought equitable in nature).

The States' third argument misses the point entirely. Plaintiffs insist that courts cannot characterize truly legal claims as incidental to equitable claims to eliminate a jury right, citing *Dairy Queen, Inc. v. Wood*, 369 U.S. 469 (1962). *See* 3/12/25 Hrg Tr. at 53:6–15. But that is not the issue here. Google's argument is *not* that the States have legal claims for civil penalties that are incidental to their equitable claims for injunctive relief. Google's argument is that a civil penalty under a State's DTPA is *itself* an equitable form of relief because it is available only incidental to injunctive relief. And that makes the remedy sought (injunctive relief and incidental penalties) under the State's DTPA wholly equitable.

"We can resolve this issue by clearing up the plaintiffs' apparent confusion regarding the Supreme Court's use of the phrase 'incidental to' in two distinct yet related contexts." *Golden v. Kelsey-Hayes Co.*, 73 F.3d 648, 660 (6th Cir. 1996). On the one hand are *Dairy Queen*'s and *Beacon Theatres*' prohibitions against denying a jury on truly legal "issues as merely 'incidental to'" equitable ones. *Id.* "It is not true however, that 'any award of monetary relief must necessarily be 'legal' relief.'" *Id.* at 661 (quoting *Terry*, 494 U.S. at 570). So on the other hand, "a *monetary* award '*incidental* to or intertwined with injunctive relief' may [itself] be equitable." *Id.* (emphasis in original) (quoting *Terry*, 494 U.S. at 571, in turn quoting *Tull*, 481 U.S. at 424); *see also Bank of New York Mellon v. WMC Mortg., LLC*, 2015 WL 4164691, at *5 (S.D.N.Y. July 10, 2015) (noting "the distinction between *legal issues* incidental to equitable ones and monetary *relief* incidental to equitable relief") (emphasis in original).

The penalties here are the latter: ones that, as shown by their equitable entanglement in the state statutes, are equitable relief. It follows that the States' DTPA claims are also equitable because (1) they have no common law analog and would have been heard in a court of equity in 1791, *see* Part III.A.1., *supra*, and (2) the remedy sought (injunctive relief and incidental penalties)

65

is equitable, *see* III.A.2., *supra*. Far from contravening *Dairy Queen*, Google's argument falls squarely within the framework of *Tull*, *Terry*, *Gwaltney*, and *Granfinanciera*.

### B. Antitrust

The States' antitrust claims are equitable too. Courts determine whether a jury right attaches to antitrust actions based solely on the remedy sought. Here, the States admit that their *federal* antitrust claims seek wholly equitable relief. 3/12/25 Hrg Tr. at 46:9–11 ("We are only seeking equitable relief with respect to our federal antitrust claims."). They must admit the same for Indiana and Missouri's state antitrust claims (which seek injunctive relief and no penalties) and Puerto Rico (which cannot seek antitrust penalties in this Court). Two additional States—Arkansas and Idaho—are not authorized to recover either civil penalties *or* injunctive relief under their respective statutes, which is the only relief they are seeking. *See* ECF 381. The relevant statutes authorize only claims for monetary damages, which the States abandoned long ago.

In addition, there are nine States—Alaska, Louisiana, Montana, Nevada, North Dakota, South Carolina, South Dakota, Texas, and Utah—whose antitrust statutes permit recovery of penalties only incidental to injunctive relief, making those claims equitable in the same way as the comparable DTPAs. The last three States' antitrust statutes—Florida, Mississippi, and Kentucky—do not explicitly intertwine civil penalties and injunctive relief, but rather than forcing Texas citizens to sit for weeks in trial because of ambiguities in foreign state law, this Court should sever these States so their courts can answer the question in the first instance.

### 1. In Antitrust Actions, the *Tull* Step Two Analysis is Dispositive.

Clear precedent dictates that whether an antitrust action entails a jury right depends solely on the remedy sought.[47] As the Supreme Court explained in *Beacon Theatres,* "the right to trial by

---

[47] The States again argue that antitrust actions are analogous to debt because they seek civil penalties. ECF 753 at 10. That fails here for the same reason as to their DTPA claims. *See* Part

jury applies to *treble damage suits* under the antitrust laws[.]" 359 U.S. at 504; *see also Fleitmann v. Welsbach St. Lighting Co. of Am.*, 240 U.S. 27, 29 (1916) (same). Where a party brings an antitrust action seeking only equitable relief, it is similarly settled that no jury right attaches. In the Eastern District of Virginia, Judge Brinkema struck the United States' jury demand—without any analysis of whether antitrust actions have a common law analog—because the damages claim was mooted, and only a claim for injunctive relief remained. *See United States v. Google*, No. 23-cv-108, ECF 748 (June 11, 2024). Other courts have reached the same conclusion: that there is no right to a jury in an antitrust action for injunctive relief. *See, e.g.*, *Texas v. Penguin Group (USA) Inc.*, 2013 WL 1759567, at *2 (S.D.N.Y. Apr. 24, 2013) ("[S]ince the Government exclusively brings claims for injunctive relief, no party disputes that no jury right attaches [in this Sherman Act case]."); *Ralph Blechman, Inc. v. I.B. Kleinert Rubber Co.*, 98 F. Supp. 1005, 1006 (S.D.N.Y. 1951) ("An action under the anti-trust laws may be either equitable or legal in nature, or both. If the action be for money damages only, there is a right to jury trial. … However, neither the Federal Rules nor the Seventh Amendment to the Constitution requires that the issue as to plaintiffs' right to injunctive relief because of defendants' alleged violation of the anti-trust laws be tried by a jury."); *cf. In re Abbott*, 117 F.4th 729, 739 (5th Cir. 2024) (noting it is "settled law that the Seventh Amendment does not apply" to "suits seeking only injunctive relief") (quoting *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 719 (1999)). And the States agree, too, acknowledging that their federal antitrust claims, which seek only equitable relief, cannot be heard by a jury on their own. *See* 3/12/2025 Hrg. Tr. at 46:9–47:13 (arguing that a jury should decide

---

III.A.1.iv., *supra*. Actions in debt required a showing of harm, and in any event, whether debt is an accurate analogy depends on whether the States' antitrust actions are properly characterized as "civil penalties suits." *See Tull*, 481 U.S. at 418.

issues for the federal antitrust claims because those issues overlap with purportedly legal state antitrust claims).

This treatment of antitrust actions illustrates *Jarkesy*'s point that, for some cases, the remedy sought is "all but dispositive" as to whether a jury right attaches. 603 U.S. at 123.[48] As shown below, the remedy sought is wholly equitable, and dispositive, for the vast majority of the States' antitrust claims.

### 2. The Remedy Sought by Nearly All of the States' Antitrust Claims is Equitable.

#### a. Federal Claims

"[T]he Plaintiff States do not seek damages in this case," including under their federal law antitrust claims. Ex. 5 (Pls. Am. Disclosures) at 2. Instead, to remedy alleged violations of federal antitrust law, Plaintiffs seek only injunctive relief. *See* FAC ¶ 759. Claims for injunctive relief under federal antitrust law, like claims for injunctive relief under other laws, are necessarily claims to "courts of equity." 15 U.S.C. § 26; *see also Sanijet Corp. v. Jacuzzi Inc.*, 2002 WL 1398546, at *2 (N.D. Tex. Feb. 14, 2002) ("In this case, with Plaintiff seeking only injunctive relief, the focus on the nature of the remedy sought compels the conclusion that it is not fundamentally compensatory or legal in nature, and therefore Plaintiff has no right to a jury trial here.").

This is undisputed. Plaintiffs agree that their federal-law antitrust claims are strictly equitable. *See* 3/12/25 Hrg. Tr. at 46:9-11 (Mr. Keller: "We are only seeking equitable relief with

---

[48] Separately, and as a threshold barrier, the States have no right to a jury trial in any event. *See* ECF 832 (*Standard Oil* Br.).

68

respect to our federal antitrust claims."). As such, the Sherman Act claim—the purported anchor for this Court's subject matter jurisdiction—does not provide a jury trial.[49]

### b. State Claims

Like the State DTPA statutes, the majority of State antitrust statutes provide that civil penalties are intertwined with or incidental to injunctive relief, rendering the monetary relief equitable as well. *See Tull*, 481 U.S. at 424. Several of the remaining states do not or cannot seek civil penalties at all. Specifically:

- In nine states (Alaska, Montana, Louisiana, Nevada, North Dakota, South Carolina, South Dakota, Texas, and Utah), the antitrust laws make clear that civil penalties are intertwined with or incidental to injunctive relief.

- Two states (Indiana and Missouri) have advised that they do not seek civil penalties, and a third (Puerto Rico) cannot seek civil penalties under the plain terms of its antitrust law.

- Two more states (Arkansas and Idaho) are not authorized to seek civil penalties *or* injunctive relief under their respective antitrust laws.

If the Court concludes that a small number of States *are* entitled to a jury trial on their state antitrust claims, the appropriate remedy is to sever and dismiss those claims under 28 U.S.C. § 1367. The alternative—requiring Texas jurors to sit through a several-week trial that involves claims under 35 different laws, all so the jury can resolve claims brought by a few foreign states while the Court resolves the rest—places an unfair burden on home-state citizens and the resources of this Court.

---

[49] Again, the "inclusion [of requests for fees and costs] does not raise the right to a jury in an otherwise purely equitable action." *Whiting*, 616 F.2d at 122 n.3; *see supra* n.20. They are also incidental to the injunctive relief sought in this case. *Tull*, 481 U.S. at 424.

### i. In Nine States, Civil Penalties are Intertwined with Injunctive Relief.[50]

As explained above, "a request for monetary recovery sounds in equity, and thus does not guarantee a jury trial, when it is restitutionary in nature or is intertwined with claims for injunctive relief." *Borst*, 36 F.3d at 1324 (citing *Terry*, 494 U.S. at 570-71); *see also Tull*, 481 U.S. at 424 ("A court in equity was empowered to provide monetary awards that were incidental to or intertwined with injunctive relief."). For the following states, civil penalties are intertwined with injunctive relief, rendering the remedy sought equitable and defeating the States' claim to a jury right.

### (a) Alaska

The section of the statute authorizing Alaska's Attorney General to seek injunctive relief specifically provides that such an action may stand alone:

> In addition to any other relief provided by AS 45.50.562–45.50.596, the attorney general may bring an action to enjoin a violation of AS 45.50.562--45.50.596. ***This action may be brought as a sole action or in conjunction with another action that the attorney general is authorized to bring.***

Alaska Stat. § 45.50.580(a).

By contrast, the section authorizing the Attorney General to seek civil penalties allows such relief only "in addition to any other relief available":

> ***In addition to any other relief available***, the attorney general may bring a civil action against a person who violates AS 45.50.562, 45.50.564, 45.50.568, or 45.50.570, or an injunction issued under AS 45.50.580, for a civil penalty of not more than (1) $1,000,000 if the person is a natural person; (2) $50,000,000 if the person is not a natural person.

---

[50] For the Court's reference, Google attaches as Appendix C a chart comparing the injunctive relief and penalty provisions of these nine States' antitrust laws.

Alaska Stat. § 45.50.578(b). This section does not permit the Attorney General to bring an action for civil penalties as a "sole action." A claim for civil penalties must be brought in conjunction with a claim for "other relief available"—which here consists only of injunctive relief. *See* ECF 381 at 3. Alaska's civil penalty demand is therefore incidental to and intertwined with its request for injunctive relief.

### (b) Louisiana

In connection with these alleged violations, Louisiana demands civil fines and injunctive relief pursuant to La. Rev. Stat. § 51:128, which provides:

> The district courts have jurisdiction to prevent and restrain violations of this Part, and the Attorney General or the district attorneys in their respective districts under the direction of the Attorney General or the governor, ***shall institute proceedings to prevent and restrain violations***. Proceedings shall be by way of petition and by citation, setting forth the case and praying that the violations be enjoined, or otherwise prohibited. When the parties complained of have been duly notified of the petition, the court shall proceed, as soon as practicable, to the hearing and determination of the case. Pending such action and before the final decree, the court may at any time issue a temporary restraining order if it is just in the premises. Whenever other parties are required, the court may summon them whether they reside in the parish in which the court is held or not, and the subpoenas may be served in any parish by the sheriff thereof.

This is the only provision in Louisiana's Monopolies statute that authorizes the Attorney General to "institute proceedings." Once an action "to prevent and restrain violations" has been properly commenced under this provision, the Attorney General may seek a penalty or fine under section 51:123. The core action is necessarily one for injunctive relief, and civil penalties are contingent on, incidental to, and intertwined with that equitable relief.

### (c) Montana

Montana seeks injunctive relief and civil penalties under a provision titled "Injunctions – Damages – Production of Evidence":

> (1) A person who is or will be injured or the department may bring an action to enjoin an act that is in violation of 30-14-205 through 30-14-214 or 30-14-216 through 30-14-218 and for the recovery of damages. If the court finds that the defendant is violating or has violated any of the provisions of 30-14-205 through 30-14-214 or 30-14-216 through 30-14-218, the court shall enjoin the defendant. It is not necessary to allege or prove actual damages to the plaintiff.
> (2)(a) ***In addition to injunctive relief***, the plaintiff is entitled to recover from the defendant the greater of three times the amount of actual damages sustained or $1,000.

Mont. Code § 30-14-222. This provision expressly states that civil penalties may be awarded "in addition to injunctive relief," such that civil penalties cannot be sought on their own or without a claim for injunctive relief. As a result, civil penalties are indisputably intertwined with injunctive relief.

### (d) Nevada

While the Fourth Amended Complaint lists various forms of relief, Nevada has since clarified that it seeks only injunctive relief, civil penalties, and attorneys' fees and costs, *see* ECF 381 at 5. As to these remedies, Nevada statute directs that the Attorney General shall:

> Institute proceedings on behalf of the State, its agencies, political subdivisions, districts or municipal corporations, or as parens patriae of the persons residing in the State for:
>> (1) Injunctive relief to prevent and restrain a violation of any provision of this chapter, including, without limitation, a temporary restraining order, preliminary injunction or permanent injunction.
>> (2) Civil penalties for violations of the provisions of this chapter.
>> (3) Criminal penalties for violations of the provisions of this chapter.
>> (4) Other equitable relief for violations of the provisions of this chapter, including, without limitation, disgorgement or restitution.

Nev. Rev. Stat. § 598A.070(1)(c).

"Under the familiar interpretive canon *noscitur a sociis*, 'a word is known by the company it keeps.'" *Dubin v. United States*, 599 U.S. 110, 124 (2023) (quoting *McDonnell v. United States*, 579 U.S. 550, 568–69 (2016); *Jarecki v. G. D. Searle & Co.*, 367 U.S. 303, 307 (1961)). In the *McDonnell* case, for example, the Supreme Court considered a statute that defined an "official act"

as "any decision or action on any question, matter, cause, suit, proceeding or controversy, which may at any time be pending, or which may by law be brought before any public official, in such official's official capacity, or in such official's place of trust or profit." 579 U.S. at 562 (quoting 18 U.S.C. § 201(a)(3)). To determine the intended meaning of "question" or "matter," the Court looked to the unambiguous meaning of "cause, suit, proceeding or controversy." *Id.* at 568-69. It "conclude[d] that a 'question' or 'matter' must be similar in nature to a 'cause, suit, proceeding or controversy,'" so it would not include "a typical meeting, call, or event arranged by a public official." *Id.* at 569. Likewise here, the civil penalties referenced in Nev. Rev. Stat. § 598A.070(1)(c)(2) could be construed as either legal or equitable if considered in isolation. Looking at the surrounding language, the fact that the list of available remedies begins with "injunctive relief" and ends with "*other equitable relief*" makes clear that the Nevada legislature intended for all enumerated remedies to be equitable in nature.

### (e) North Dakota

North Dakota seeks injunctive relief and civil penalties pursuant to a single section of the Uniform State Antitrust Act:

> The attorney general, or a state's attorney with the permission or at the request of the attorney general, may bring an action for appropriate injunctive relief, equitable relief, including disgorgement, and civil penalties in the name of the state for a violation of this chapter. The trier of fact may assess for the benefit of the state a civil penalty of not more than one hundred thousand dollars for each violation of this chapter.

N.D. Cent. Code § 51-08.1-07. This section "does not authorize civil penalties separately from injunctive relief; rather, the two forms of relief are referred to in the same subsection, even in the same sentence." *Gwaltney*, 484 U.S. at 58. As a result, there is "a connection between injunctive relief and civil penalties," *id.*, and civil penalties are intertwined with injunctive relief.

### (f) South Carolina

In the Fourth Amended Complaint, South Carolina alleges both deceptive trade practices and antitrust violations under the same section of the South Carolina Unfair Trade Practices Act. FAC ¶ 665 (alleging antitrust violations under S.C. Code § 39-5-20); FAC ¶ 748 (alleging unfair or deceptive acts or practices under S.C. Code § 39-5-20). South Carolina also invokes the same remedies provisions for each claim, *see* FAC ¶¶ 668, 751 (citing S.C. Code § 39-5-50(a) and S.C. Code § 39-5-110(a)), so its request for antitrust civil penalties is inextricably intertwined with its demand for injunctive relief for the same reasons discussed in Part III.A.2.b, *supra*. In brief, the Attorney General must "bring an action" under the "injunction" section of the statute:

> Whenever the Attorney General has reasonable cause to believe that any person is using, has used or is about to use any method, act or practice declared by Section 39-5-20 to be unlawful, and that proceedings would be in the public interest, he may bring an action in the name of the State against such person to restrain by temporary restraining order, temporary injunction or permanent injunction the use of such method, act or practice. Unless the Attorney General determines in writing that the purposes of this article will be substantially impaired by delay in instituting legal proceedings, he shall, at least three days before instituting any legal proceedings as provided in this section, give notice to the person against whom proceedings are contemplated and give such person an opportunity to present reasons to the Attorney General why such proceedings should not be instituted. The action may be brought in the court of common pleas in the county in which such person resides, has his principal place of business or conducts or transacts business. The courts are authorized to issue orders and injunctions to restrain and prevent violations of this article, and such orders and injunctions shall be issued without bond. Whenever any permanent injunction is issued by such court in connection with any action which has become final, reasonable costs shall be awarded to the State.

S.C. Code § 39-5-50(a).

If the Attorney General brings an action for injunctive relief under section 39-5-50(a), and the court finds a willful violation of section 39-5-20, the court may award a civil penalty:

> If a court finds that any person is willfully using or has willfully used a method, act or practice declared unlawful by Section 39-5-20, the Attorney General, upon

> petition to the court, may recover on behalf of the State a civil penalty of not exceeding five thousand dollars per violation.

S.C. Code § 39-5-110(a). The Attorney General cannot seek civil penalties without also seeking injunctive relief because, without an action properly initiated under section 39-5-50(a), there is no opportunity for a court to find a willful violation of the antitrust laws. Accordingly, civil penalties are dependent on—and intertwined with—injunctive relief.

### (g) South Dakota

South Dakota seeks injunctive relief and civil penalties under the same section of its code:

> The attorney general, or a state's attorney with the permission or at the request of the attorney general, may bring an action for appropriate injunctive or other equitable relief and civil penalties in the name of the state for a violation of this chapter. The court may assess for the benefit of the state a civil penalty of not more than fifty thousand dollars for each violation of this chapter.

S.D. Codified Laws § 37-1-14.2. This section "does not authorize civil penalties separately from injunctive relief; rather, the two forms of relief are referred to in the same subsection, even in the same sentence." *Gwaltney*, 484 U.S. at 58. As a result, there is "a connection between injunctive relief and civil penalties," *id.*, and the two forms of relief are intertwined.

### (h) Texas

Like the majority of states, Texas seeks both civil penalties and injunctive relief. *See* ECF 381 at 5-6. Those remedies are authorized by a single section titled "Civil Suits by the State":

> (a) Suit to Collect Civil Fine. The attorney general may file suit in district court in Travis County or in any county in the State of Texas in which any of the named defendants resides, does business, or maintains its principal office on behalf of the State of Texas to collect a civil fine from any person, other than a municipal corporation, whom the attorney general believes has violated any of the prohibitions in Subsection (a), (b), or (c) of Section 15.05 of this Act. An individual or other person adjudged to have violated any of these prohibitions shall pay a fine to the state in an amount not to exceed:
>    (1) if an individual, $300,000; or
>    (2) if any other person:
>         (A) $3 million, if the lesser of the person's assets or market capitalization is less than $100 million;

75

> (B) $20 million, if the lesser of the person's assets or market capitalization is at least $100 million but less than $500 million; or
> (C) $30 million, if the lesser of the person's assets or market capitalization is $500 million or more.
>
> (b) Suit for Injunctive Relief. The attorney general may file suit against any person, other than a municipal corporation, in district court in Travis County, or in any county in the State of Texas in which any of the named defendants resides, does business, or maintains its principal office on behalf of the State of Texas to enjoin temporarily or permanently any activity or contemplated activity that violates or threatens to violate any of the prohibitions in Section 15.05 of this Act. In any such suit, the court shall apply the same principles as those generally applied by courts of equity in suits for injunctive relief against threatened conduct that would cause injury to business or property. In any such suit in which the state substantially prevails on the merits, the state shall be entitled to recover the cost of suit.

Tex. Bus. & Com. Code § 15.20.

Although this section authorizes suits for civil penalties and for injunctive relief as separate, standalone actions, the Texas Supreme Court has held that the "purpose" of the antitrust laws renders penalties "incidental" to injunctive relief:

> In view of the general object of the antitrust laws to effectually suppress monopolies, it is plain to us that the purpose of the State in this action is to suppress the wrong of the defendants in error in entering into a combination to violate and in violating the anti-trust laws of the State, and that this basic purpose is the State's primary cause of action; although as incidental to it, and in aid of its effectuation, the State has the authority, under the statute to recover penalties from the defendants in error, should they be adjudged guilty.

*State v. Standard Oil Co.*, 107 S.W.2d 550, 560 (Tex. 1937). Because the "basic purpose" of Texas's law is to "suppress the wrong of the defendants" through injunctive relief, and "incidental" monetary penalties were authorized to "aid" in the "effectuation" of that primary objective, the two forms of relief are intertwined, and the claim must be considered equitable. *Id.*

### (i)  Utah

Utah seeks injunctive relief and civil penalties, which are authorized by the provision titled "Attorney general may bring action for injunctive relief, damages, and civil penalty":

> (1) The attorney general may bring an action for appropriate injunctive relief, a civil penalty, and damages in the name of the state, any of its political subdivisions or agencies, or as parens patriae on behalf of natural persons in this state, for a violation of this act. Actions may be brought under this section regardless of whether the plaintiff dealt directly or indirectly with the defendant. This remedy is an additional remedy to any other remedies provided by law. It may not diminish or offset any other remedy.
>
> (2) Any individual who violates this act is subject to a civil penalty of not more than $100,000 for each violation. Any person, other than an individual, who violates this act is subject to a civil penalty of not more than $500,000 for each violation.

Utah Code § 76-10-3108. The next subsection reiterates:

> The state or any of its political subdivisions may recover three times the amount of damages it sustains and the civil penalty provided by the Utah Antitrust Act, in addition to injunctive relief, costs of suit, and reasonable attorney fees

Utah Code §76-10-3109(3).

In both sections, "the two forms of relief are referred to in the same subsection, even in the same sentence." *Gwaltney*, 484 U.S. at 58. Additionally, like the Montana statute, the Utah Antitrust Act provides that civil penalties may be recovered "in addition to injunctive relief," confirming that the two are not independent. Utah Code § 76-10-3109(3). For both reasons, civil penalties are plainly intertwined with injunctive relief under Utah law.

### ii. Three States Do Not or Cannot Seek Civil Penalties, Leaving Only Injunctive Relief.

Under the antitrust laws of three Plaintiff States—Indiana, Missouri, and Puerto Rico—the Attorney General cannot recover civil penalties and can only pursue injunctive relief. These state-law claims, like the federal law claims, are therefore equitable and do not support a right to a jury trial. *See* 15 U.S.C. § 26; *Sanijet Corp.*, 2002 WL 1398546, at *2.

### (a) Indiana

Indiana is not seeking civil penalties in connection with its antitrust claims. *See* ECF 381 at 3. Under Indiana law, such penalties are authorized only in actions brought after June 30, 2023. Ind. Code § 24-1-2-5.1(c).

### (b) Missouri

Missouri is not seeking civil penalties in connection with its antitrust claims. *See* ECF 381 at 4. Under Missouri law, penalties for antitrust violations are authorized only in criminal cases and for contempt of court orders. *See* Mo. Rev. Stat. § 416.051.

### (c) Puerto Rico

Puerto Rico purports to seek both injunctive relief and civil penalties in connection with its antitrust claims. *See* ECF 381 at 5. However, Puerto Rico's Antitrust and Restrictions of Commerce Law authorizes an award of penalties only in a criminal case or a proceeding before the Department of Consumer Affairs:

> Any person who violates §§ 258, 260, 263(f) or 264 of this title shall be deemed guilty of a misdemeanor and upon conviction punished by a fine not less than five thousand dollars ($5,000) nor more than fifty thousand dollars ($50,000), or by imprisonment not exceeding one (1) year, or by both penalties, in the discretion of the court. Persons accused of violating the sections previously mentioned shall be entitled to a jury trial.

10 L.P.R.A. § 266 (translated).

> When any person is found liable of violating the regulations approved pursuant to subsection (b) of this section, and it appears that said violation was committed with present or real knowledge of the prohibition, or with reasonable knowledge inferred on the basis of objective circumstances, the Department of Consumer Affairs shall impose a civil penalty up to five thousand dollars ($5,000), for each violation in addition to the most appropriate remedies according to the details of the complaint, as provided in subsection (c) of this section.

10 L.P.R.A. § 259(i) (translated).

Because neither of these provisions is applicable here, Puerto Rico cannot recover civil penalties in connection with its antitrust claims and is limited to (at most) injunctive relief.

### iii. Arkansas and Idaho Cannot Recover Civil Penalties *or* Injunctive Relief, the Only Forms of Relief They Have Pled.

### (a) Arkansas[51]

Arkansas seeks injunctive relief and civil penalties, which are authorized by the provision titled "Civil actions and settlements by the Attorney General":

(a) In addition to the other remedies provided in this subchapter, whenever the Attorney General has reason to believe that any person is engaging, has engaged, or is about to engage in any act or practice declared unlawful by this subchapter, the Attorney General may bring an action *in the name of the state* against that person:

(1) To obtain a declaratory judgment that the act or practice violates the provisions of this subchapter;

(2) To enjoin any act or practice that violates the provisions of this subchapter by issuance of a temporary restraining order or preliminary or permanent injunction, without bond, upon the giving of appropriate notice;

(3) To recover on behalf of the state and its agencies actual damages or restitution for loss incurred either directly or indirectly; and

(4) To recover civil penalties of up to one thousand dollars ($1,000) per violation of this subchapter, or any injunction, judgment, or consent order issued or entered into under the provisions of this subchapter and reasonable expenses, investigative costs, and attorney's fees.

(b) The Attorney General also may bring a civil action *in the name of the state, as parens patriae* on behalf of natural persons residing in this state, to secure monetary relief as provided under this section for injury, directly or indirectly sustained by those persons because of any violation of this subchapter, in accordance with the following provisions:

(1) The court in which the action is commenced shall award the Attorney General as monetary relief the actual damages sustained or restitution for loss incurred as a result of the violations of this subchapter and the cost of suit, including a reasonable attorney's fee. The court shall exclude from the amount of monetary relief awarded in the action any amount which duplicates amounts that have been awarded for the same injury already or

---

[51] Independently, Arkansas' state-law antitrust claims should be dismissed in their entirety because Arkansas' antitrust laws do not prohibit alleged monopolization (except based on below-cost pricing, which is not alleged here). *See* ECF 224 at 26–28.

which are allocable to persons who have excluded their claims under subdivision (b)(3)(A) of this section;

(2)(A) In any action brought under this section, the Attorney General shall, at the time, in the manner, and with the content as the circuit court may direct, cause notice of the parens patriae action to be given by publication.

(B) If the court finds that notice given solely by publication would deny due process of law to any person, the court shall direct the Attorney General to give the notice as may be required by due process of law;

(3)(A) Any person on whose behalf an action is brought under this section may elect to exclude from the adjudication the portion of the Attorney General's claim for monetary relief attributable to him or her by filing notice of the election with the court, within the time period specified, in the notice of the action given to the persons to be benefited by the action.

(B) Any person failing to give the notice shall be barred during the pendency of the action from commencing an action in his or her own name for the injury alleged in the action and the final judgment in the action shall be res judicata as to any claim which could be brought by the person under this subchapter based on the facts alleged or proven in the action.

(C)(i) The provisions set forth in this section and in §§ 4-75-316 - 4-75-319 shall apply only to actions instituted by the Attorney General.

(ii) Nothing in the provisions set forth in this section and in §§ 4-75-316 - 4-75-319 shall be deemed to expand or create additional rights or remedies available to persons proceeding under any action instituted by one (1) or more persons or an entity other than the Attorney General for violations of the provisions of this subchapter; and

(4) All damages shall be distributed in a manner that will afford each person a reasonable opportunity to secure his or her appropriate portion of the net monetary relief, including a distribution under the theory of cy pres, subject to approval by the court.

Ark. Code § 4-75-315(a)–(b).

Arkansas seeks injunctive relief only in its parens patriae capacity, not in its sovereign capacity, *see* ECF 381 at 3, and it has not alleged injury to the State itself, *see generally* FAC; *see also* 4/18/2024 Hrg. Tr. at 45:10-12 (admitting that the States "don't have something squarely on point for sovereign standing" and instead rely on *parens patriae* standing). As a result, its claims are governed by Ark. Code § 4-75-315(b), which governs parens patriae claims, not subsection (a), which governs claims on behalf of the State. This distinction disposes of Arkansas' claims: Injunctive relief and civil penalties may be awarded only in actions brought under subsection (a),

while subsection (b) provides exclusively for recovery of actual damages and restitution. *See* Ark. Code § 4-75-315. Arkansas cannot obtain the injunctive relief or civil penalties authorized only by subsection (a), and it has not sought damages or restitution as authorized by subsection (b). Accordingly, Arkansas cannot receive any relief it requests in this action and therefore lacks standing. *See* ECF 672 at 10-11.

In any event, even if Arkansas could invoke the civil penalties provision in section 4-75-315(a), that relief is intertwined with injunctive relief. As in *Gwaltney*, the "two forms of relief are referred to in the same subsection"—subsection (a) of section 4-75-315—which "suggests a connection between injunctive relief and civil penalties" and supports a conclusion that civil penalties may be sought "only in a suit brought to enjoin or otherwise abate on ongoing violation." 484 U.S. at 58–59.

### (b) Idaho

Although the Fourth Amended Complaint demands a laundry list of remedies available under Idaho Code §§ 48-108 and 48-112, *see* FAC ¶ 631, Idaho now admits that it seeks only injunctive relief, civil penalties, and attorneys' fees and costs, *see* ECF 381 at 3. Idaho's remedies provision is similar to Arkansas' and is also titled "Civil actions and settlements by the attorney general":

> (1) Whenever the attorney general has reason to believe that any person is engaging, has engaged, or is about to engage in any act or practice declared unlawful by this chapter, the attorney general may bring an action ***in the name of the state*** against that person:
> > (a)  To obtain a declaratory judgment that the act or practice violates the provisions of this chapter;
> > (b)  To enjoin any act or practice that violates the provisions of this chapter by issuance of a temporary restraining order or preliminary or permanent injunction, without bond, upon the giving of appropriate notice;
> > (c)  To recover on behalf of the state and its agencies actual damages or restitution;

81

(d)  To recover civil penalties of up to fifty thousand dollars ($50,000) per violation of section 48-104 or 48-105, Idaho Code, or any injunction, judgment or consent order issued or entered into pursuant to this chapter and reasonable expenses, investigative costs and attorney's fees; and

(e)  To obtain an order requiring divestiture of any assets:

(i)  Acquired in violation of section 48-106, Idaho Code, to the extent determined necessary by the district court to avoid the creation of a monopoly or any likely substantial lessening of competition resulting from such transaction found violative of section 48-106, Idaho Code; or

(ii)  To restore competition in any line of Idaho commerce which has been eliminated by a violation of section 48-105, Idaho Code.

(2) The attorney general also may bring a civil action *in the name of the state, as parens patriae* on behalf of persons residing in this state, to secure monetary relief as provided under this chapter for injury directly or indirectly sustained by those persons because of any violation of section 48-104 or 48-105, Idaho Code, in accordance with the following provisions:

(a)  The district court shall award the attorney general as monetary relief the total damages sustained for violations of section 48-104 or 48-105, Idaho Code, and the cost of suit, including a reasonable attorney's fee. The court shall increase any damage recovery to an amount not in excess of three (3) times the damages sustained if the court finds that the violation at issue constituted a per se violation of section 48-104, Idaho Code, or an intentional violation of section 48-105, Idaho Code. The court shall exclude from the amount of monetary relief awarded in such action any amount which duplicates amounts which have been awarded for the same injury already or which are allocable to persons who have excluded their claims pursuant to subsection (2)(c) of this section.

(b)  In any action brought under this section, the attorney general shall, at such times, in such manner, and with such content as the district court may direct, cause notice of the parens patriae action to be given by publication. If the court finds that notice given solely by publication would deny due process of law to any person, the court shall direct the attorney general to give such notice as may be required by due process of law.

(c)  Any person on whose behalf an action is brought under this section may elect to exclude from such adjudication the portion of the attorney general's claim for monetary relief attributable to him by filing notice of such election with the court within the time period specified in the notice of such action given to the persons to be benefited by the action. Any person failing to give such notice shall be barred during the pendency of such action from commencing an action in his or her own name for the injury alleged in such action and the final judgment in such action shall be res judicata as to any claim which could be brought by such person under this act based on the facts alleged or proven in such action.

>    (d)  All damages shall be distributed in such a manner that will afford each person a reasonable opportunity to secure his appropriate portion of the net monetary relief.

Idaho Code § 48-108(1)-(2). Like Arkansas, Idaho claims to seek injunctive relief only in its parens patriae capacity, not in its sovereign capacity, *see* ECF 381 at 3, and it has not alleged injury to the State itself, *see generally* FAC; *see also* 4/18/2024 Hrg. Tr. at 45:5–12. Accordingly, its claims are governed by Idaho Code § 48-108(2), which applies to *parens patriae* actions and authorizes only monetary damages. The injunctive relief and civil penalties provided for in subsection (1) are not available. Because Idaho cannot receive any of the relief it requests in this action, it lacks standing. *See* ECF 672 at 10–11.

Again, even if Idaho could invoke this civil penalties provision, that relief would be intertwined with injunctive relief. Like in Arkansas and *Gwaltney*, the "two forms of relief are referred to in the same subsection"—subsection (1) of section 48-108—which "suggests a connection between injunctive relief and civil penalties" and supports a conclusion that civil penalties may be sought "only in a suit brought to enjoin or otherwise abate on ongoing violation." 484 U.S. at 58–59.

> ### iv. Florida, Kentucky, and Mississippi are Not Entitled to Have a Texas Jury Resolve Their State Law Antitrust Claims.

Plaintiffs should not be able to force Texas citizens into weeks of jury duty merely because three foreign States out of 17 Plaintiff States do not explicitly intertwine the recovery of civil penalties with the pursuit of injunctive relief. True, unlike the remaining States pursuing antitrust civil penalties, Florida, Kentucky, and Mississippi's statutory schemes do not explicitly intertwine the recovery of civil penalties with the pursuit of injunctive relief, and their respective state courts

have not addressed the issue.[52] That ambiguity in state law does not, however, translate to a jury right. Instead, should the Court determine that a fraction of the States have a right to a jury on liability for their state antitrust claims, the appropriate procedure is to decline supplemental jurisdiction over those marginal claims, rather than compel a Texas jury to hear claims purporting to redress the rights of non-Texans under non-Texas law.

### (a) Florida

The Florida Antitrust Act, as codified in Chapter 542, specifies the circumstances in which the Attorney General may pursue civil penalties and injunctive relief:

> (1) Any natural person who violates any of the provisions of s. 542.18 or s. 542.19 shall be subject to a civil penalty of not more than $100,000. Any other person who violates any of the provisions of s. 542.18 or s. 542.19 shall be subject to a civil penalty of not more than $1 million.
> (2) Any person who knowingly violates any of the provisions of s. 542.18 or s. 542.19, or who knowingly aids in or advises such violation, is guilty of a felony, punishable by a fine not exceeding $1 million if a corporation, or, if any other person, $100,000 or imprisonment not exceeding 3 years, or by both said punishments.

Fla. Stat. Ann. § 542.21(1)-(2).

> In addition to other remedies provided by this chapter, any person shall be entitled to sue for and have injunctive or other equitable relief in the circuit courts of this state against threatened loss or damage by a violation of this chapter. In any action under this section in which the plaintiff substantially prevails, the court shall award the cost of suit, including a reasonable attorney's fee, to the plaintiff.

Fla. Stat. Ann. § 542.23.

### (b) Kentucky

Kentucky's Consumer Protection Act, codified in Chapter 367 of the Kentucky Statutes, prohibits both "unfair, false, misleading, or deceptive acts or practices," Ky. Rev. Stat. § 367.170,

---

[52] Independently, the Court should dismiss Florida and Mississippi's state law antitrust claims because the claims require, among other things, non-conclusory allegations of in-state conduct or intrastate transactions, which these States have not alleged here. *See* ECF 224 at 19-20, 26–28.

and monopolization or attempted monopolization, *id.* § 367.175. Kentucky purports to seek injunctive relief under Ky. Rev. Stat. § 15.020 and Ky. Rev. Stat. § 367.110 through Ky. Rev. Stat. § 367.990, and civil penalties pursuant to Ky. Rev. Stat. § 367.990(8). FAC ¶ 639.

But section 15.020 is irrelevant here: it defines the Attorney General as "the chief law officer of the Commonwealth of Kentucky," Ky. Rev. Stat. § 15.020(1), and outlines the powers and duties of the office, *id*. § 15.020(1)–(4), but it does not authorize injunctive relief (or any other forms of relief) in antitrust suits (or any other matters). And Chapter 367—excluding sections limited to telephone solicitations, healthcare, funeral services, and other specific industries, which have not been pled and are not applicable here—contains only one section addressing injunctive relief:

> Whenever the Attorney General has reason to believe that any person is using, has used, or is about to use any method, act or practice declared by ***KRS 367.170*** to be unlawful, and that proceedings would be in the public interest, he may immediately move in the name of the Commonwealth in a Circuit Court for a restraining order or temporary or permanent injunction to prohibit the use of such method, act or practice. The action may be brought in the Circuit Court of the county in which such person resides or has his principal place of business or in the Circuit Court of the county in which the method, act or practice declared by ***KRS 367.170*** to be unlawful has been committed or is about to be committed; or with consent of the parties may be brought in the Franklin Circuit Court.

Ky. Rev. Stat. § 367.190(1).

However, "KRS 367.170" prohibits "unfair, false, misleading, or deceptive acts or practices." *Id*. § 367.170. This provision does not apply to monopolization or attempted monopolization claims, which are governed by section 367.175. *See id.* § 367.175.[53]

---

[53] As noted in Part III.A.2.b.v., *supra*, the civil penalties provision for DTPA claims is expressly connected to and intertwined with the injunctive relief provision. *See* Ky. Rev. Stat. § 367.990(2) ("***In any action brought under KRS 367.190***, if the court finds that a person is willfully using or has willfully used a method, act, or practice declared unlawful by KRS 367.170, the Attorney General, upon petition to the court, may recover, on behalf of the Commonwealth, a civil penalty of not more than two thousand dollars ($2,000) per violation ….").

The civil penalty provision for violations of section 367.175, which Kentucky invokes in the FAC, provides:

> In addition to the penalties contained in this section, the Attorney General, upon petition to the court, may recover, on behalf of the Commonwealth a civil penalty of not more than the greater of five thousand dollars ($5,000) or two hundred dollars ($200) per day for each and every violation of KRS 367.175.

Ky. Rev. Stat. § 367.990(8); *see* FAC ¶ 639(c).

### (c)  Mississippi

Mississippi seeks both injunctive relief and civil fines. FAC ¶ 648; ECF 381 at 4. While no section of Mississippi's antitrust statute expressly authorizes injunctive relief, civil penalties are authorized by the following section:

> Any person, corporation, partnership, firm or association of persons and the officers and representatives of the corporation or association violating any of the provisions of this chapter shall forfeit not less than one hundred dollars ($100.00) nor more than two thousand dollars ($2,000.00) for every such violation. Each month in which such person, corporation or association shall violate this chapter shall be a separate violation, the forfeiture and penalty in such case to be recovered alone by suit in the name of the state on the relation of the attorney general and by the consent of the attorney general suits may be brought by any district attorney, such suits to be brought in any court of competent jurisdiction.

Miss. Code § 75-21-7.

### v.  Even If a Fraction of States Has Jury Rights on Antitrust Penalty Claims, the Proper Recourse is to Sever Those Claims by Declining Supplemental Jurisdiction.

The antitrust penalty demands of these three states are relatively miniscule. Through their federal and state antitrust claims, the States seek an injunction obligating Google to divest ownership of its publisher ad server (which the States allege to serve more than 90% of the world's large online publishers, (*see* FAC ¶ 117)) in addition to inventing and implementing forced sharing at other levels of Google's ad tech stack (*see* ECF 699-41 (Pathak Rpt.) ¶¶ 22–23), and through their state DTPA claims, Plaintiffs seek in excess of $100 billion in civil penalties, (*see* ECF 699-

16 (DeRamus Rpt.) ¶ 16; ECF 699-11 (Andrien Rpt.) ¶ 11(h)). In contrast, the maximum recoverable gross penalty under these three states' *antitrust* laws is under $1.3 million combined. *See* Fla. Stat. § 542.21(1) ($1 million maximum); Ky. Rev. Stat. § 367.990(8) ($5,000 maximum); Miss. Code § 75-21-7 ($2,000 per month maximum, or $240,000 for a full decade of antitrust violation). Even setting aside the billions of dollars in disruption that would be caused by the States' requested injunction, the maximum antitrust civil penalties for these three states are less than 0.002% of the gross penalty the States request under their DTPAs.

The States should not be able to force a Texas jury to sit through weeks of trial based on such a relatively small aspect of the case. The better recourse is to decline jurisdiction over those few state-law antitrust claims for civil penalties to which a jury right may attach, thereby avoiding the illogical result of forcing a jury to sit through 100% of a complex trial even though a jury right may (or may not) attach to, at most, 0.002% of it. Requiring a jury to sit through all state law and federal law claims while "limiting the jury's consideration to only the state law claim would likely hinder the pursuit of justice and result in confusion," while also "imped[ing] the efficiency of the Court," including by necessitating "preliminary rulings on virtually all the evidence in order to determine what evidence applies to which claim." *Gauthreaux v. Baylor Univ. Med. Ctr.*, 876 F. Supp. 847, 849 (N.D. Tex. 1994) (declining supplemental jurisdiction after finding no jury right on federal claim); *see also Derouen v. Hercules Liftboat Co., LLC*, 2016 WL 5869786, at *6 (E.D. La. Oct. 7, 2016) (finding "compelling reasons for declining jurisdiction" where defendant was "entitled to a jury trial on [state law] claims" but the "remaining issues in th[e] case will not be tried before a jury"). The absence of a jury right on the (i) core federal claim, and (ii) a substantial majority of the state law claims thus provides a "compelling reason[] for declining jurisdiction," *see* 28 U.S.C. § 1367(c)(4). So, should the Court determine that some fraction of the States has a

right to a jury on their respective antitrust claims seeking civil penalties, it should decline jurisdiction over those claims and leave them for those States' courts and citizen-jurors to resolve.

Declining jurisdiction over a small fraction of state-law claims to which a jury right may attach is particularly appropriate here, because the States that may have a jury right on their antitrust penalty claims are neither citizens of the forum state nor authorized to seek redress for citizens of the forum state. Florida, Kentucky, and Mississippi purport to vindicate the rights of their respective citizens—not those of Texans. Demanding that Texans sit through, deliberate over, and resolve a lengthy, complex trial because citizens of other states elected to sue in Texas would contravene the well-established and common-sense "public interest" in "avoiding an unfair burden on citizens in an unrelated forum with jury duty." *Dominguez v. Gulf Coast Marine & Assocs., Inc.*, 2011 WL 1526973, at *13 (E.D. Tex. Apr. 20, 2011) (describing public interest consideration in connection with *forum non conveniens* analysis); *see also Delgado v. Shell Oil Co.*, 890 F. Supp. 1324, 1371 (S.D. Tex. 1995) ("[T]he length and complexity of plaintiffs' actions, when coupled with the lack of a substantial connection to this forum, would result in an unfair burden upon local residents forced to serve as jurors."). In contrast, when a "case will proceed as a bench trial," the "Court need not consider the burden of jury duty on citizens in an unrelated forum." *Byrnes v. Parker Drilling Offshore USA, LLC*, 2006 WL 1098900, at *2 n.3 (E.D. La. Feb. 16, 2006). To be sure, the States' unjustified decisions to burden a Texas federal court with novel issues of foreign state law present their own reasons to decline supplemental jurisdiction. *See* ECF 672 at 20–22. But demanding not a bench trial in Texas but a jury trial, in which Texas citizens are compelled to resolve non-Texas claims to purportedly vindicate non-Texans' rights, is a bridge still further and much too far.

IV.    **Resolving Legal and Equitable Claims.**

Finally, the Court asked the parties to address what happens if a State has both an equitable and a legal claim. The scenario in which this could occur is statute-based: where, for some States but not all,[54] a State's DTPA claim is equitable, but its state antitrust claim is legal (or vice versa). A separate scenario in which the Court could face mixed equitable and legal questions is relief-based: for example, where a single "statute provides the State with both equitable and legal" remedies. ECF 825 at 2.

A.    **If a State Has Both Equitable and Legal Claims, There is No Circumstance in Which the Jury May Decide Both.**

Because Google does not consent to a jury trial of issues "not triable of right to a jury," only legal claims, at most, could be tried to a jury. Fed. R. Civ. P. 39(c); *cf. FN Herstal SA v. Clyde Armory Inc.*, 838 F.3d 1071, 1089 (11th Cir. 2016) (Rule 39(c) means that "to have a trial by a non-advisory jury in a purely equitable proceeding, both parties must consent"); *Kramer v. Banc of Am. Sec., LLC*, 355 F.3d 961, 967 (7th Cir. 2004) (party was entitled to a jury for equitable claim "only if [the opposing party] consented").

If there are both legal and equitable claims present, however, "the Seventh Amendment requires that all factual issues common to these claims be submitted to a jury for decision on the

---

[54] This scenario does not apply for Puerto Rico or South Carolina, as these States assert DTPA claims and state antitrust claims under the same statutes, seeking the same relief. *Compare* Part III.A.2.b.x. & Part III.A.2.d. *with* Part III.B.2.b.i.f. & Part III.B.2.b.ii.c., *supra*. So either both sets of claims are legal or both are equitable. Indiana likewise brings its DTPA and state antitrust claims under the same statute, but it seeks different relief for its DTPA claims (injunctive relief and penalties) and its state antitrust claims (injunctive relief only), so the Court could still find one set of claims legal and the other equitable.

legal claims before final court determination of the equitable claims." *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 423 (5th Cir. 1998); *Dairy Queen*, 369 U.S. at 479. [55]

But there are no overlapping issues of fact present here if the divide between legal and equitable claims is by statute (DTPA legal, antitrust equitable, or vice versa). *See ERR, LLC*, 35 F.4th at 414; *Dairy Queen*, 369 U.S. at 479. There is no overlap between the elements for Plaintiffs' DTPA claims and the elements for Plaintiffs' state antitrust claims, and the elements are sufficiently distinct that the claims do not involve any common fact questions. *See generally* Joint Appendix. The issues a jury would need to decide for the States' DTPA claims include, for example, whether Google made misrepresentations or knowingly omitted material facts in connection with the sale of its goods or services. In contrast, the issues a jury would need to decide for the States' antitrust claims include, for example, whether a relevant antitrust market exists and, if so, whether Google maintains monopoly power in that defined market. To further illustrate, this table compares elements under Texas's DTPA and Texas's state antitrust statute.[56] *See* FAC ¶¶ 618, 677. None overlap.

---

[55] The Court would still need to determine the amount of any penalties, *see* Part II *supra*, equitable remedies, *see* ECF 610, and any predicate fact issues for imposing those remedies—so long as the Court's findings "do not conflict" with any jury findings as to liability. *See SEC v. Life Partners Holdings, Inc.*, 854 F.3d 765, 781–82 (5th Cir. 2017).

[56] This does not purport to be an exhaustive list of the elements that Texas must prove under either statute and it should not be interpreted as waiving any arguments or objections in connection with any proposed jury charge in this case.

| Texas DTPA Elements<br>Tex. Bus. & Com. Code §§ 17.46(a), 17.47(c) | Texas State Antitrust Elements<br>Tex. Bus. & Com. Code § 15.05(b) |
|---|---|
| *Elements for "affirmative misrepresentation" theory:*[57]<br><br>1. a person is engaging in, has engaged in, or is about to engage in;<br>2. a false, misleading, or deceptive act;[58]<br>3. in the conduct of trade or commerce; and<br>4. proceedings would be in the public interest. | *Elements for monopolization claim:*[59]<br><br>1. a relevant product and geographic market;<br>2. the possession of monopoly power in the relevant market; and<br>3. and the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historical accident. |
| *Additional elements for "failure to disclose" theory:*[60]<br><br>5. a failure to disclose;<br>6. which was known at the time of the transaction;<br>7. which was intended to induce the plaintiff into a transaction; and<br>8. that the plaintiff otherwise would not have entered the transaction if the information had been disclosed. | *Elements for "attempt to monopolize":*[61]<br><br>1. a relevant product and geographic market;<br>2. engaged in predatory or anticompetitive conduct[62] with;<br>3. a specific intent to monopolize the relevant market; and<br>4. a dangerous probability of achieving monopoly power. |

Plaintiffs do not assert—nor could they—that there are overlapping elements or fact

questions between the States' DTPA and antitrust statutes. Instead, they rely on purportedly

---

[57] *See David Jason West & Pydia, Inc. v. State*, 212 S.W.3d 513, 519 (Tex. App.—Austin 2006); *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 478 (Tex. 1995).

[58] "Generally, an act is false, misleading, or deceptive if it has the *capacity to deceive* an 'ignorant, unthinking, or credulous person.'" *Boys Clubs of Greater Dallas,* 907 S.W.2d at 479–80 (quotation omitted).

[59] *Caller-Times Pub. Co., Inc. v. Triad Commc'ns, Inc.*, 826 S.W.2d 576, 580 (Tex. 1992).

[60] *Franklin v. Apple Inc.*, 569 F. Supp. 3d 465, 480 (E.D. Tex. 2021); *see also Hudspeth v. Enter. Life Ins. Co.*, 358 S.W.3d 373, 388 (Tex. App.—Houston [1st Dist.] 2011).

[61] *Star Tobacco, Inc. v. Darilek*, 298 F. Supp. 2d 436, 447 (E.D. Tex. 2003).

[62] "Predatory or anticompetitive conduct is that which unfairly tends to be exclusionary or tends to destroy competition." *Great W. Directories, Inc. v. Sw. Bell Tel. Co.*, 63 F.3d 1378, 1385 (5th Cir. 1995).

overlapping *evidence*, such as common background information about Google's display advertising business or its algorithms like "Project Bernanke." 3/12/2025 Hrg. at 47:8–48:2. That misapplies the law. "The existence of common factual issues is to be distinguished from the existence of overlapping evidence." *Allison*, 151 F.3d at 423 & n.21. That "the two fact-finders will merely have to consider similar evidence in deciding [the] distinct issues" of the DTPA and antitrust claims does not shift equitable fact issues, such as the DTPA claims, into the jury's purview. *Id.* Indeed, Plaintiffs appear to concede that information about Project Bernanke is, at best, overlapping evidence that may be relevant to an antitrust question (whether Google "cement[ed] market power") and a distinct DTPA question (whether it "deceived the participants in the exchanges"). 3/12/2025 Hrg. at 47:14–20. Because there are no fact issues in common, if the Court concludes that one of a State's claims is legal (e.g., state antitrust) and the other is equitable (e.g., DTPA), the jury would decide all fact issues for the legal claim, and the Court would decide all fact issues for the equitable claim. Crucially, the Court would need to ensure that evidence relevant solely to the equitable claim that could influence the jury's verdict on the legal claim is not introduced. *See, e.g.*, *Broaddus v. Florida Power Corp.*, 145 F.3d 1283, 1289 (11th Cir. 1998) (reversing judgment and remanding for new jury trial because "jury's verdict may have been prejudiced by its improper consideration of the [equitable claim]-related evidence").

The second scenario in which the Court could hypothetically face mixed equitable and legal questions is relief-based: for example, where a state's DTPA (or antitrust statute) provides for both equitable relief (e.g., an injunction) and legal relief (e.g., non-incidental civil penalties). *See* ECF 825 at 2. To be clear, though, each statute does not create multiple "claims," such that there could be both legal and equitable claims within it, at least not as *Tull*, *Terry*, and *Dairy Queen* conceptualize them. Here, rather than "independent" claims where "each kind of relief is separably

92

authorized in a separate and distinct statutory provision," *Tull*, 481 U.S. at 425, these DTPA statutes each provide a single claim—for an injunction against a deceptive trade practice—and authorize civil penalties only as an appended form of relief within that same claim. *See* Part III.A.2., *supra*.[63] More to the point, the States do not characterize their penalty remedies as independent claims. To the contrary, each State pleads a single claim under each statute, *see* FAC Count V (state antitrust); Count VI (DTPA), with multiple requests for relief attached, *see, e.g.*, FAC ¶¶ 681 (Alaska "is entitled to relief for these violations…including injunctive relief, civil penalties…"), 689 (Florida characterizes civil penalties as a "remed[y] available"); 702 (same for Indiana); 710 (same for Kentucky). It would be erroneous to "analyze[] each component as if the other were irrelevant." *Tull*, 481 U.S. at 421 n.6.

To try to conceptualize these allegations instead as separate DTPA "claims," one legal and one equitable, also leads to an incoherent outcome. Specifically, the required comparison of elements between the claims would show nearly complete overlap in factual issues because, for all the States, as shown in Part III.A.2., *supra*, DTPA penalties claims can be sought only with DTPA injunctive relief claims, and they require proof of the same elements. *See Dairy Queen*, 369 U.S. at 479; *ERR, LLC*, 35 F.4th at 409. Technically, this scenario would require that the "factual issues common to the legal and the equitable claims must be submitted to a jury for decision on the legal claims," while the Court would still make "final … determination of the equitable claims." *Roscello v. Southwest Airlines Co.*, 726 F.2d 217, 221 (5th Cir. 1984).

But the very fact of substantial overlap between these civil penalties and injunctive relief is what proves that the civil penalties are in fact equitable, not legal. *See* Part III.A.2., *supra*; *see also* Part III.B.2.b.i, *supra*; *Terry*, 494 U.S. at 571 ("[A] monetary award 'incidental to or

---

[63] Same for the respective state antitrust statutes. *See* Part III.B.2.b.i.

intertwined with injunctive relief' may be equitable."). It makes no sense to decide, on the one hand, that civil penalties are so separate from the injunctive relief statutes in which they live that they may properly be categorized as a distinct legal claim; and yet simultaneously decide that they are so intertwined that virtually all of the factual underpinnings of equitable injunctive relief end up in the jury's hands. The error of categorizing these civil penalties as legal manifests itself again here, in the impossibility of preserving the two fact-finders' distinct roles as Rule 39 and the Seventh Amendment require.

> **B. If a State Has Both Equitable and Legal Claims, All Claims Must Nevertheless Be Decided by the Court if the Seventh Amendment Does Not Apply to the States.**

If the Court concludes that Plaintiffs have not met their burden to establish that the Seventh Amendment applies to the States at all, as distinct from individuals, then no jury right attaches regardless of the legal or equitable nature of Plaintiffs' claims. *See* ECF 832; Mot. at 9. All of Plaintiffs' claims (both DTPA and antitrust) would therefore need to be adjudicated through a bench trial. *See* Fed. R. Civ. P. 39(c).

> **C. If There is a Mismatch of States, in which Some States' Claims are Equitable while Other States' Claims are Legal, the Court Should Sever the Legal States Or Else Face a Gargantuan Task of Categorizing Overlapping Elements.**

A separate but related issue is how legal and equitable claims must be resolved if they differ among States. As discussed above, the Court should sever those outlier States. *See e.g.*, Part III.B.2.v., *supra*. If those outlier States remain in the case, the Plaintiffs could request a jury determination of the factual issues underpinning those legal claims, but not of the issues unique to the Court's determination of the equitable claims—which would require the Court to untie the Gordian knot of finding overlapping issues in the widely varying elements of the States' different DTPA and antitrust statutes. *See generally* Joint Appendix.

## V.    Conclusion

For the foregoing reasons, and those addressed in Google's Motion to Strike the Jury Demand, the States' jury demand should be stricken.

Dated: April 4, 2025

Respectfully submitted,

_/s/ Kathy D. Patrick_
Kathy D. Patrick
State Bar No. 15581400
KPatrick@gibbsbruns.com
Denise Drake
State Bar No. 24092358
DDrake@gibbsbruns.com
Ayesha Najam
State Bar No. 24046507
ANajam@gibbsbruns.com
Charles M. Rosson
State Bar No. 24074985
CRosson@gibbsbruns.com
Caitlin Halpern
State Bar No. 3454643
CHalpern@gibbsbruns.com
Michael Doman
State Bar No. 24131182
MDoman@gibbsbruns.com
Elisa Wulfsberg
State Bar No. 24125469
EWulfsberg@gibbsbruns.com
GIBBS & BRUNS LLP
1100 Louisiana, Suite 5300
Houston, Texas 77002
Tel.: (713) 650-8805
Fax: (713) 750-0903

Eric Mahr (_pro hac vice_)
Eric.Mahr@freshfields.com
Justina Sessions
Justina.Sessions@freshfields.com
FRESHFIELDS US LLP
700 13th Street, NW
10th Floor
Washington, DC 20005
Telephone: (202) 777-4545

_Attorneys for Defendant Google LLC_

## <u>CERTIFICATE OF SERVICE</u>

I certify that on April 4, 2025, this document was filed electronically in compliance with Local Rule CV-5(a) and served on all counsel who have consented to electronic service, per Local Rule CV-5(a)(3)(A).

<u>/s/ *Kathy D. Patrick*</u>
Kathy D. Patrick

**Appendix A: DTPA Injunctive Relief and Penalty Provisions (11 States)**

|  | **Injunctive Relief Provision** | **Civil Penalties Provision** |
|---|---|---|
| **(1) Texas** | Tex. Bus. & Com. Code § 17.47(a): "Whenever the consumer protection division has reason to believe that any person is engaging in, has engaged in, or is about to engage in any act or practice declared to be unlawful by this subchapter, and that proceedings would be in the public interest, ***the division may bring an action in the name of the state against the person to restrain by temporary restraining order, temporary injunction, or permanent injunction*** the use of such method, act, or practice." | Tex. Bus. & Com. Code § 17.47(c): "***In addition to the request for a temporary restraining order, or permanent injunction in a proceeding brought under Subsection (a) of this section,*** the consumer protection division may request, and the trier of fact may award, a civil penalty to be paid to the state in an amount of: (1) not more than $10,000 per violation[.]" |
| **(2) Alaska** | Alaska Stat. § 45.50.501(a): "When the attorney general has reason to believe that a person has used, is using, or is about to use an act or practice declared unlawful in AS 45.50.471, and that proceedings would be in the public interest, ***the attorney general may bring an action in the name of the state against the person to restrain by injunction the use of the act or practice.***" | Alaska Stat. § 45.50.551(b): "***In an action brought under AS 45.50.501***, if the court finds that a person is using or has used an act or practice declared unlawful by AS 45.50.471, the attorney general, upon petition to the court, may recover, on behalf of the state, a civil penalty of not less than $1,000 and not more than $25,000 for each violation." |
| **(3) Arkansas** | Ark. Code § 4-88-104: "In addition to the criminal penalty imposed hereunder, ***the Attorney General of this state shall have authority, acting through the Consumer Counsel of Arkansas, to file an action*** in the court designated in § 4-88-112 for civil enforcement of the provisions of this chapter, ***including, but not limited to, the seeking of restitution and the seeking of an injunction*** prohibiting any person from engaging in any deceptive or unlawful practice prohibited by this chapter." | Ark. Code § 4-88-113(a)(3): "***In any proceeding brought by the Attorney General for civil enforcement of the provisions of this chapter,*** prohibiting unlawful practices as defined in this chapter, the circuit court may make such orders or judgments as may be necessary to:… (3) Assess penalties to be paid to the state, not to exceed ten thousand dollars ($10,000) per violation, against persons found to have violated this chapter." |
| **(4) Indiana** | Ind. Code § 24-5-0.5-4(c): "The attorney general ***may bring an action to enjoin*** a deceptive act, including a | Ind. Code § 24-5-0.5-4(g): "***If a court finds any person has knowingly violated*** section 3 or 10 of this |

| | | deceptive act described in section 3(b)(20) of this chapter ….” | chapter, other than section 3(b)(19), 3(b)(20), or 3(b)(40) of this chapter, **the attorney general, <u>in an action pursuant to subsection (c)</u>, may recover from the person on behalf of the state a civil penalty** of a fine not exceeding five thousand dollars ($5,000) per violation.” |
|---|---|---|---|
| **(5) Kentucky** | | Ky. Rev. Stat. § 367.190(1): “Whenever the Attorney General has reason to believe that any person is using, has used, or is about to use any method, act or practice declared by KRS 367.170 to be unlawful, and that proceedings would be in the public interest, *he may immediately move in the name of the Commonwealth in a Circuit Court for a restraining order or temporary or permanent injunction* to prohibit the use of such method, act or practice.” | Ky. Rev. Stat. § 367.990(2): “***In any action brought under KRS 367.190***, if the court finds that a person is willfully using or has willfully used a method, act, or practice declared unlawful by KRS 367.170, the Attorney General, upon petition to the court, may recover, on behalf of the Commonwealth, a civil penalty of not more than two thousand dollars ($2,000) per violation….” |
| **(6) Louisiana** | | La. Stat. § 51:1407(A): “Whenever the attorney general has reason to believe that any person is using, has used, or is about to use any method, act, or practice declared by R.S. 51:1405 to be unlawful, *he may **bring an action** for injunctive relief in the name of the state against such person to restrain and enjoin the use of such method, act, or practice*.” | La. Stat. § 51:1407(B): “***In addition to the remedies provided herein***, the attorney general may request and the court may impose a civil penalty against any person found by the court to have engaged in any method, act, or practice in Louisiana declared to be unlawful under this Chapter. In the event the court finds the method, act, or practice to have been entered into with the intent to defraud, the court has the authority to impose a penalty not to exceed five thousand dollars for each violation.” |
| **(7) Mississippi** | | Miss. Code § 75-24-9: “Whenever the Attorney General has reason to believe that any person is using, has used, or is about to use any method, act or practice prohibited by Section 75-24-5, and that proceedings would be in the public interest, *he may **bring an action** in the name of the state against such person to restrain by temporary or permanent injunction* | Miss. Code § 75-24-19(1)(b): “***In any action brought under Section 75-24-9***, if the court finds from clear and convincing evidence, that a person knowingly and willfully used any unfair or deceptive trade practice, method or act prohibited by Section 75-24-5, the Attorney General, upon petition to the court, may recover on behalf of the state a civil penalty in a |

| | | sum not to exceed Ten Thousand Dollars ($10,000.00) per violation." |
|---|---|---|
| **(8) Missouri** | Mo. Rev. Stat. § 407.100(1): "Whenever it appears to the attorney general that a person has engaged in, is engaging in, or is about to engage in any method, act, use, practice or solicitation, or any combination thereof, declared to be unlawful by this chapter, ***the attorney general may <u>seek and obtain</u>, in an action in a circuit court, an injunction*** prohibiting such person from continuing such methods, acts, uses, practices, or solicitations, or any combination thereof, or engaging therein, or doing anything in furtherance thereof." | Mo. Rev. Stat. § 407.100(2), (3), (6): "2. ***<u>In any action under subsection 1 of this section</u>***, and pursuant to the provisions of the Missouri Rules of Civil Procedure, the attorney general may seek and obtain temporary restraining orders, preliminary injunctions, temporary receivers, and the sequestering of any funds or accounts if the court finds that funds or property may be hidden or removed from the state or that such orders or injunctions are otherwise necessary. … 3. If the court finds that the person has engaged in, is engaging in, or is about to engage in any method, act, use, practice or solicitation, or any combination thereof, declared to be unlawful by this chapter, it may make such orders or judgments as may be necessary to prevent such person from employing or continuing to employ, or to prevent the recurrence of, any prohibited methods, acts, uses, practices or solicitations, or any combination thereof, declared to be unlawful by this chapter. … 6. The court may award to the state a civil penalty of not more than one thousand dollars per violation …." |
| **(9) Montana** | Mont. Code Ann. § 30-14-111(1): "Whenever the department has reason to believe that a person is using, has used, or is about to knowingly use any method, act, or practice declared by 30-14-103 to be unlawful and that proceeding would be in the public interest, ***the department may <u>bring an action</u> in the name of the state against the person to restrain by temporary or permanent injunction or temporary restraining order the*** | Mont. Code Ann. § 30-14-142(2): "***<u>In an action brought under 30-14-111</u>***, if the court finds that a person is willfully using or has willfully used a method, act, or practice declared unlawful by 30-14-103, the department, upon petition to the court, may recover on behalf of the state a civil fine of not more than $10,000 for each violation. The fine provided for in this subsection is in addition to any liability that a person |

| | | |
|---|---|---|
| | *use of the unlawful method, act, or practice* upon giving appropriate notice to that person." | might be subject to under subsection (1)." |
| **(10) South Carolina** | S.C. Code Ann. § 39-5-50(a): "*Whenever the Attorney General has reasonable cause to believe that any person is using, has used or is about to use any method, act or practice declared by Section 39-5-20 to be unlawful*, and that proceedings would be in the public interest, he may bring an action in the name of the State against such person to restrain by *temporary restraining order, temporary injunction or permanent injunction* the use of such method, act or practice." | S.C. Code Ann. § 39-5-110(a): "*If a court finds that any person is willfully using or has willfully used a method, act or practice declared unlawful by Section 39-5-20*, the Attorney General, upon petition to the court, may recover on behalf of the State a civil penalty of not exceeding five thousand dollars per violation." |
| **(11) South Dakota** | S.D. Codified Laws § 37-24-23: "If the attorney general has reason to believe that any person is using, has used, or is about to use any act or practice declared to be unlawful by § 37-24-6 and that proceedings would be in the public interest, *the attorney general may* **bring an action** *in the name of the state against the person to restrain by temporary or permanent injunction the use of the act or practice*, upon the giving of appropriate notice to that person." | S.D. Codified Laws § 37-24-27: "***In any action brought under § 37-24-23***, if the court finds that a person is intentionally using or has intentionally used an act or practice declared to be unlawful by § 37-24-6, the attorney general, upon petition to the court, may recover, on behalf of the state, a civil penalty of not more than two thousand dollars per violation." |

**Appendix B: DTPA Injunctive Relief and Penalty Provisions (5 States)**

|  | **Injunctive Relief Provision** | **Civil Penalties Provision** |
|---|---|---|
| **(1) Florida** | Fla. Stat. Ann. § 501.207(1): "***The enforcing authority may bring***: (a) An action to obtain a declaratory judgment that an act or practice violates this part. ***(b) An action to enjoin any person who has violated, is violating, or is otherwise likely to violate, this part.*** (c) An action on behalf of one or more consumers or governmental entities for the actual damages caused by an act or practice in violation of this part." | Fla. Stat. Ann. § 501.2075: "Except as provided in s. 501.2077, any person, firm, corporation, association, or entity, or any agent or employee of the foregoing, who is willfully using, or has willfully used, a method, act, or practice declared unlawful under s. 501.204, or who is willfully violating any of the rules of the department adopted under this part, is liable for a civil penalty of not more than $10,000 for each such violation. Willful violations occur when the person knew or should have known that his or her conduct was unfair or deceptive or prohibited by rule. ***This civil penalty may be recovered in any action brought under this part[1] by the enforcing authority***; or the enforcing authority may terminate any investigation or action upon agreement by the person, firm, corporation, association, or entity, or the agent or employee of the foregoing, to pay a stipulated civil penalty." |
| **(2) Idaho** | Idaho Code § 48-606(1): Whenever the attorney general has reason to believe that any person is using, has used, or is about to use any method, act or practice declared by this chapter to be unlawful, and that proceedings would be in the public interest, he may bring an action in the name of the state against such person: … (b) To ***enjoin any method, act or practice*** that violates the provisions of this chapter by issuance of a | Idaho Code § 48-606(1): Whenever the attorney general has reason to believe that any person is using, has used, or is about to use any method, act or practice declared by this chapter to be unlawful, and that proceedings would be in the public interest, he may bring an action in the name of the state against such person: … (b) To ***enjoin any method, act or practice*** that violates the provisions of this chapter by issuance of a |

---

[1] Actions brought "under this part" are actions brought under Florida's DTPA. *See* Fla. Stat. Ann. § 501.201 (*"This part shall be known and may be cited as the 'Florida Deceptive and Unfair Trade Practices Act.'"*).

| | | |
|---|---|---|
| | temporary restraining order or preliminary or permanent injunction, upon the giving of appropriate notice to that person as provided by the Idaho rules of civil procedure;<br><br>…<br><br>(e) ***To recover from the alleged violator civil penalties*** of up to five thousand dollars ($5,000) per violation for violation of the provisions of this chapter; …. | temporary restraining order or preliminary or permanent injunction, upon the giving of appropriate notice to that person as provided by the Idaho rules of civil procedure;<br><br>…<br><br>(e) ***To recover from the alleged violator civil penalties*** of up to five thousand dollars ($5,000) per violation for violation of the provisions of this chapter; …. |
| **(3) Nevada** | Nev. Rev. Stat. § 598.0963(3): "(3). If the Attorney General has reason to believe that a person has engaged in or is engaging in a deceptive trade practice, the Attorney General may bring an action in the name of the State of Nevada against that person ***to obtain a temporary restraining order, a preliminary or permanent injunction,*** or other appropriate relief, including, without limitation, the recovery of a civil penalty, disgorgement, restitution or the recovery of damages . . . ." | Nev. Rev. Stat. § 598.0999(2): "Except as otherwise provided in NRS 598.0974, ***in any action brought pursuant to the provisions of NRS 598.0903 to 598.0999, inclusive***, if the court finds that a person has willfully engaged in a deceptive trade practice, the Commissioner, the Director, the district attorney of any county in this State or ***the Attorney General bringing the action may recover a civil penalty*** not to exceed $15,000 for each violation. The court in any such action may, in addition to any other relief or reimbursement, award reasonable attorney's fees and costs." |
| **(4) North Dakota** | N.D. Century Code § 51-15-07: "Whenever it appears to the attorney general that a person has engaged in, or is engaging in, any practice declared to be unlawful by this chapter, or by other provisions of law, including chapter 50-22, 51-13, 51-14, 51-16.1, or 51-18, ***the attorney general may seek and obtain in an action in a district court an injunction*** prohibiting that person from continuing the unlawful practice or engaging in the unlawful practice or doing any act in furtherance of the unlawful practice after appropriate notice to that person." | N.D. Century Code § 51-15-11: "The court may assess for the benefit of the state a civil penalty of not more than five thousand dollars for each violation of this chapter or for each violation of chapter 51-12, 51-13, 51-14, or 51-18. The penalty provided in this section ***is in addition to those remedies otherwise provided*** by this chapter or by chapter 50-22, 51-12, 51-13, 51-14, 51-16.1, or 51-18." |
| **(5) Utah** | Utah Code § 13-11-17(1): | Utah Code § 13-11-17(1): |

|  | (1) The enforcing authority may bring an action in a court of competent jurisdiction to:<br>…<br>(b) ***enjoin, in accordance with the principles of equity***, a supplier who has violated, is violating, or is otherwise likely to violate this chapter;<br>…<br>(d) ***obtain a fine*** in an amount determined after considering the factors in Subsection (6). | (1) The enforcing authority may bring an action in a court of competent jurisdiction to:<br>…<br>(b) ***enjoin, in accordance with the principles of equity***, a supplier who has violated, is violating, or is otherwise likely to violate this chapter;<br>…<br>(d) ***obtain a fine*** in an amount determined after considering the factors in Subsection (6). |

**Appendix C: State Antitrust Injunctive Relief and Penalty Provisions (9 States)**

| | **Injunctive Relief Provision** | **Civil Penalties Provision** |
|---|---|---|
| **(1) Alaska** | Alaska Stat. § 45.50.580(a): In addition to any other relief provided by AS 45.50.562–45.50.596, the attorney general may bring an *action to enjoin* a violation of AS 45.50.562--45.50.596. ***This action may be brought as a sole action or in conjunction with another action that the attorney general is authorized to bring.*** | Alaska Stat. § 45.50.578(b): ***In addition to any other relief available***, the attorney general may bring a civil action against a person who violates AS 45.50.562, 45.50.564, 45.50.568, or 45.50.570, or an injunction issued under AS 45.50.580, for a ***civil penalty*** of not more than (1) $1,000,000 if the person is a natural person; (2) $50,000,000 if the person is not a natural person. |
| **(2) Louisiana** | La. Rev. Stat. § 51:128: The district courts have jurisdiction to prevent and restrain violations of this Part, and the Attorney General or the district attorneys in their respective districts under the direction of the Attorney General or the governor, shall ***institute proceedings to prevent and restrain violations***. Proceedings shall be by way of petition and by citation, setting forth the case and praying that the violations be enjoined, or otherwise prohibited. When the parties complained of have been duly notified of the petition, the court shall proceed, as soon as practicable, to the hearing and determination of the case. Pending such action and before the final decree, the court may at any time issue a temporary restraining order if it is just in the premises. Whenever other parties are required, the court may summon them whether they reside in the parish in which the court is held or not, and the subpoenas may be served in any parish by the sheriff thereof. | La. Rev. Stat. § 51:123: No person shall monopolize, or attempt to monopolize, or combine, or conspire with any other person to monopolize any part of the trade or commerce within this state. Whoever violates this Section ***shall be fined*** not more than five thousand dollars, or imprisoned, with or without hard labor, not more than three years, or both. |
| **(3) Montana** | Mont. Code § 30-14-222: | Mont. Code § 30-14-222: |

1

|  | | |
|---|---|---|
|  | (1) A person who is or will be injured or the department **may bring an action to enjoin** an act that is in violation of 30-14-205 through 30-14-214 or 30-14-216 through 30-14-218 and for the recovery of damages. If the court finds that the defendant is violating or has violated any of the provisions of 30-14-205 through 30-14-214 or 30-14-216 through 30-14-218, the court shall enjoin the defendant. It is not necessary to allege or prove actual damages to the plaintiff.<br><br>(2)(a) In addition to injunctive relief, the plaintiff is entitled to recover from the defendant the greater of three times the amount of actual damages sustained or $1,000. | (1) A person who is or will be injured or the department may bring an action to enjoin an act that is in violation of 30-14-205 through 30-14-214 or 30-14-216 through 30-14-218 and for the recovery of damages. If the court finds that the defendant is violating or has violated any of the provisions of 30-14-205 through 30-14-214 or 30-14-216 through 30-14-218, the court shall enjoin the defendant. It is not necessary to allege or prove actual damages to the plaintiff.<br><br>(2)(a) **In addition to injunctive relief**, the plaintiff is entitled to recover from the defendant the greater of three times the amount of actual damages sustained or $1,000. |
| **(4) Nevada** | Nev. Rev. Stat. § 598A.070(c):<br>The Attorney General shall …<br>Institute proceedings on behalf of the State, its agencies, political subdivisions, districts or municipal corporations, or as parens patriae of the persons residing in the State for:<br>(1) **Injunctive relief** to prevent and restrain a violation of any provision of this chapter, including, without limitation, a temporary restraining order, preliminary injunction or permanent injunction.<br>(2) Civil penalties for violations of the provisions of this chapter.<br>(3) Criminal penalties for violations of the provisions of this chapter.<br>(4) Other equitable relief for violations of the provisions of this chapter, including, without limitation, disgorgement or restitution. | Nev. Rev. Stat. § 598A.070(c):<br>The Attorney General shall …<br>Institute proceedings on behalf of the State, its agencies, political subdivisions, districts or municipal corporations, or as parens patriae of the persons residing in the State for:<br>(1) Injunctive relief to prevent and restrain a violation of any provision of this chapter, including, without limitation, a temporary restraining order, preliminary injunction or permanent injunction.<br>(2) **Civil penalties** for violations of the provisions of this chapter.<br>(3) Criminal penalties for violations of the provisions of this chapter.<br>(4) Other equitable relief for violations of the provisions of this chapter, including, without limitation, disgorgement or restitution. |

| (5) North Dakota | N.D. Century Code § 51-08.1-07: The attorney general, or a state's attorney with the permission or at the request of the attorney general, may bring an action for appropriate ***injunctive relief,*** equitable relief, including disgorgement, and civil penalties in the name of the state for a violation of this chapter. The trier of fact may assess for the benefit of the state a civil penalty of not more than one hundred thousand dollars for each violation of this chapter. | N.D. Century Code § 51-08.1-07: The attorney general, or a state's attorney with the permission or at the request of the attorney general, may bring an action for appropriate injunctive relief, equitable relief, including disgorgement, and ***civil penalties*** in the name of the state for a violation of this chapter. The trier of fact may assess for the benefit of the state a civil penalty of not more than one hundred thousand dollars for each violation of this chapter. |
|---|---|---|
| (6) South Carolina | S.C. Code Ann. § 39-5-50(a): "***Whenever the Attorney General has reasonable cause to believe that any person is using, has used or is about to use any method, act or practice declared by Section 39-5-20 to be unlawful***, and that proceedings would be in the public interest, he may bring an action in the name of the State against such person to restrain by ***temporary restraining order, temporary injunction or permanent injunction*** the use of such method, act or practice . . . ." | S.C. Code Ann. § 39-5-110(a): "***If a court finds that any person is willfully using or has willfully used a method, act or practice declared unlawful by Section 39-5-20***, the Attorney General, upon petition to the court, may recover on behalf of the State a civil penalty of not exceeding five thousand dollars per violation." |
| (7) South Dakota | S.D. Codified Laws § 37-1-14.2: The attorney general, or a state's attorney with the permission or at the request of the attorney general, ***may bring an action for appropriate injunctive or equitable relief*** and civil penalties in the name of the state for a violation of this chapter. The court may assess for the benefit of the state a civil penalty of not more than fifty thousand dollars for each violation of this chapter. | S.D. Codified Laws § 37-1-14.2: The attorney general, or a state's attorney with the permission or at the request of the attorney general, may bring an action for appropriate injunctive or equitable relief ***and civil penalties*** in the name of the state for a violation of this chapter. The court may assess for the benefit of the state a civil penalty of not more than fifty thousand dollars for each violation of this chapter. |

3

| **(8) Texas** | Tex. Bus. & Com. Code § 15.20: (b) ***Suit for Injunctive Relief.*** The attorney general may file suit against any person, other than a municipal corporation, in district court in Travis County, or in any county in the State of Texas in which any of the named defendants resides, does business, or maintains its principal office on behalf of the State of Texas to enjoin temporarily or permanently any activity or contemplated activity that violates or threatens to violate any of the prohibitions in Section 15.05 of this Act. In any such suit, the court shall apply the same principles as those generally applied by courts of equity in suits for injunctive relief against threatened conduct that would cause injury to business or property. In any such suit in which the state substantially prevails on the merits, the state shall be entitled to recover the cost of suit. | Tex. Bus. & Com. Code § 15.20: (a) ***Suit to Collect Civil Fine.*** The attorney general may file suit in district court in Travis County or in any county in the State of Texas in which any of the named defendants resides, does business, or maintains its principal office on behalf of the State of Texas to collect a civil fine from any person, other than a municipal corporation, whom the attorney general believes has violated any of the prohibitions in Subsection (a), (b), or (c) of Section 15.05 of this Act. An individual or other person adjudged to have violated any of these prohibitions shall pay a fine to the state in an amount not to exceed: (1) if an individual, $300,000; or (2) if any other person: (A) $3 million, if the lesser of the person's assets or market capitalization is less than $100 million; (B) $20 million, if the lesser of the person's assets or market capitalization is at least $100 million but less than $500 million; or (C) $30 million, if the lesser of the person's assets or market capitalization is $500 million or more. |
| **(9) Utah** | Utah Code § 76-10-3108: (1) The attorney general may ***bring an action for appropriate injunctive relief***, a civil penalty, and damages in the name of the state, any of its political subdivisions or agencies, or as parens patriae on behalf of natural persons in this state, for a violation of this act. Actions may be brought under | Utah Code § 76-10-3108: (1) The attorney general may bring an action for appropriate injunctive relief, ***a civil penalty***, and damages in the name of the state, any of its political subdivisions or agencies, or as parens patriae on behalf of natural persons in this state, for a violation of this act. Actions may be brought under this |

| | | |
|---|---|---|
| | this section regardless of whether the plaintiff dealt directly or indirectly with the defendant. This remedy is an additional remedy to any other remedies provided by law. It may not diminish or offset any other remedy. | section regardless of whether the plaintiff dealt directly or indirectly with the defendant. This remedy is an additional remedy to any other remedies provided by law. It may not diminish or offset any other remedy. |

## Appendix D: State DTPAs Confirmed as Unknown at Common Law

| | Does state law deviate from the common law by design? |
|---|---|
| **(1) Alaska** | "The UTPA was designed to meet the ***increasing need*** in Alaska for the protection of consumers as well as honest businessmen from the depredations of those persons employing unfair or deceptive trade practices." *Donahue v. Ledgends, Inc.*, 331 P.3d 342, 353 (Alaska 2014) (citation and quotations omitted) (emphasis in original). |
| **(2) Arkansas** | "Simply put, ***a claim of common-law fraud and a claim under the statutory provisions of the ADTPA are distinctly different*** . . . ." *Pleasant v. McDaniel*, 550 S.W.3d 8, 12 (Ark. App. 2018). "[T]he deceptive and unconscionable trade practices listed in this section are *in addition to* and do not limit the types of unfair trade practices actionable at common law or under other statutes of this state." *Id.* (emphasis in original) (quoting Ark. Code § 4–88–107(b)). |
| **(3) Florida** | "[T]he FDUTPA is a statutorily created cause of action, ***which did not exist at common law***. ... [T]he legislature clearly intended to establish a new [substantive] cause of action for the benefit and protection of the consuming public.'" *Lankhorst v. Indep. Sav. Plan Co.*, 2012 WL 13098680, at *3 (M.D. Fla. Feb. 23, 2012) (bracketed word in original) (quoting *Delgado v. J.W. Courtesy Pontiac GMC-Truck, Inc.*, 693 So. 2d 602, 606 (Fla. 2d Dist. 1997)). |
| **(4) Idaho** | The statute and cases law do not directly address this question, but Idaho courts look to the Federal Trade Commission ("FTC") Act as "persuasive" in applying state law, *Duspiva v. Fillmore*, 293 P.3d 651, 656 (Idaho 2013), and "the 'unfair methods of competition' which are condemned by s 5(a) of the [FTC] Act, are ***not confined to those that were illegal at common law***," *Fed. Trade Comm'n v. Motion Picture Advert. Serv. Co.*, 344 U.S. 392, 394 (1953).[1] |
| **(5) Kentucky** | "The Kentucky Supreme Court has already held that ***evidence can be sufficient to find a KCPA violation even if it would not have supported a verdict for common-law fraud.***" *Am. Nat'l Univ. of Kentucky, Inc. v. Commonwealth ex rel. Beshear*, 2019 WL 2479608, at *5 (Ky. Ct. App. June 14, 2019) (not to be published) (citing *Craig & Bishop, Inc. v. Piles*, 247 S.W.3d 897, 905 (Ky. 2008)). |
| **(6) Louisiana** | "Notably, LUTPA was modeled after the Federal Trade Commission Act ... and the two acts share the same goals: to protect consumers and to foster competition." *Quality Envtl. Processes, Inc. v. I.P. Petroleum Co., Inc.*, 144 So. |

---

[1] Other States that look to cases construing the FTC Act for guidance include **Alaska**, Alaska Stat. Ann. § 45.50.545; **Florida**, Fla. Stat. § 501.204; **Louisiana**, *Guste v. Demars*, 330 So. 2d 123, 125 (La. Ct. App. 1976); **Mississippi**, Miss. Code § 75-24-3; **Missouri**, Mo. Code Regs. tit. 15, § 60-8.020; **Montana**, Mont. Code § 30-14-104(1); **South Carolina**, *State ex rel. Wilson v. Ortho-McNeil-Janssen Pharms., Inc.*, 777 S.E.2d 176, 188 (S.C. 2015); and **Utah**, Utah Code § 13-11-2(4).

| | 3d 1011, 1025 (La. 2014). As noted, the FTC Act expands, and is "not confined to" the common law. *Motion Picture Advert. Serv. Co.*, 344 U.S. at 394. |
|---|---|
| **(7) Mississippi** | Statutory claims under the Mississippi DTPA are "easier to prove" than common-law fraud claims. *Watson Labs., Inc. v. State*, 241 So. 3d 573, 589 (Miss. 2018). |
| **(8) Missouri** | "The MMPA was enacted to ***supplement*** the common law definition of fraud." *Conway v. Citi Mortgage, Inc.*, 438 S.W.3d 410, 414 (Mo. 2014). The law "protects consumers by ***expanding the common law definition of fraud*** . . . ." *Id.* |
| **(9) Montana** | "This statute being ***in derogation of the common law,*** should be liberally construed with a view to effect its object and to promote justice." *Baird v. Norwest Bank*, 843 P.2d 327, 333 (Montana 1992). |
| **(10) Nevada** | The Nevada Supreme Court has held that the state DTPA is "***separate and distinct from common-law fraud***." *Betsinger v. D.R. Horton, Inc.*, 232 P.3d 433, 435–36 (Nev. 2010). |
| **(11) South Carolina** | "We hold that the [SCUTPA] ***creates new substantive rights by making unlawful conduct which was not actionable under the common law.***" *State ex rel. McLeod v. C & L Corp.*, 313 S.E.2d 334, 338 (S.C. Ct. App. 1984), *abrogated on other grounds by Murphy v. Owens-Corning Fiberglas Corp.*, 550 S.E.2d 589 (S.C. Ct. App. 2001). |
| **(12) Texas** | "***The DTPA does not represent a codification of the common law.*** A primary purpose of the enactment of the DTPA was to provide consumers a cause of action for deceptive trade practices without the burden of proof and numerous defenses encountered in a common law fraud or breach of warranty suit." *Smith v. Baldwin*, 611 S.W.2d 611, 616 (Tex. 1980). "The act … clearly resulted from the Legislature's recognition of the inadequacies of traditional common law remedies in certain deceptive trade practices." *Woo v. Great Sw. Acceptance Corp.*, 565 S.W.2d 290, 298 (Tex. Civ. App.—Waco 1978), *writ refused NRE* (Sept. 20, 1978). |
| **(13) Utah**[2] | "This act shall be construed liberally to promote the following policies: (1) to simplify, clarify, and modernize the law governing consumer sales practices;" and "(4) to make state regulation of consumer sales practices not inconsistent with the policies of the Federal Trade Commission Act relating to consumer protection." Utah Code § 13-11-2. As noted, the FTC Act expands, and is "not confined to" the common law. *Motion Picture Advert. Serv. Co.*, 344 U.S. at 394. |

---

[2] There is mixed authority for Indiana's DTPA. One intermediate appellate court has suggested that the state law codifies common-law fraud, *Schmidt Enterprises, Inc. v. State*, 354 N.E.2d 247, 253 (Ind. Ct. App. 1976), but the statute explains that its purpose is to "simplify, clarify, and modernize the law governing deceptive and unconscionable consumer sales practices," Ind. Code § 24-5-0.5-1(b).