# **EXHIBIT 1**

# THE FOURTH PART

## OF THE

## Institutes of the Laws of England,

### CONCERNING

### THE JURISDICTION OF COURTS.

---

Proverbs 22. 28.   *Ne transgrediaris antiquos terminos quos posuerunt patres tui.*

Terminos propriæ potestatis egressus in aliam messem perperam mittit falcem suam.

---

## Authore EDWARDO COKE, Milite, J. C.

Hæc ego grandævus posui tibi, candide lector.

═══════════════════════

**London:**

Printed for E. and R. BROOKE, BELL-YARD, near TEMPLE BAR.

M.DCC.XCVII.



that I shall not sue him? To whom Billing the chief justice answered, you are not bound to obey it, becaufe that commandment is againft law: but feing that toucheth upon the jurifdiction of the court, let us in the next place handle that point.

### The Jurifdiction of the Court.

In the chancery are two courts, one ordinary, *coram domino rege in cancellaria*, [a] wherein the lord chancelour or lord keeper of the great feale proceeds according to the right line of the laws and ftatutes of the realm, *fecundum legem et confuetudinem Angliæ*. [b] Another extraordinary according to the rule of equity, *fecundum æquum et bonum*. And firft of the former court.

[c] He hath power to hold plea of *scire fac'* for repeal of the kings letters patents, of petitions, *monftrans de droits*, traverfes of offices, partitions in chancery, of *scire fac'* upon recognifances in this court, vvrits of *audita querela* and *scire fac'* in the nature of an *audita querela* to avoid executions in this court; [d] dowments in chancery, the writ *de dote affignanda* upon offices found, execution upon the ftatute ftaple, or recognifance in nature of a ftatute ftaple upon the act of 23 H. 8. but the execution upon a ftatute merchant is retornable either into the kings bench, or into the common place, and all perfonall actions by or againft any officer or minifter of this court in refpect of their fervice or attendance there. [a] In thefe if the parties defcend to iffue, this court cannot try it by jury, but the lord chancelour or lord keeper delivereth the record by his proper hands into the kings bench to be tried there; becaufe for that purpofe both courts are accounted [b] but one, and after triall had to be remanded into the chancery, and there judgement to be given. But if there be a demurrer in law, it fhall be argued and adjudged in this court. Nota, the legall proceedings of this court be not inrolled in rolls, but remaine *in filaciis* being filed up in the office of the pety-bag. [c] Upon a judgement given in this court a writ of error doth lie retornable into the king's bench: [d] the ftile of the court of the kings bench is *coram rege* (as hath been faid) and the ftile of this court of chancery is *coram domino rege in cancellaria, et additio probat minoritatem*. And in this court the lord chancelour or the lord keeper is the fole judge: and in the kings bench there are four judges at the leaft.

This court is *officina juftitiæ*, out of which all originall writs and all commiffions which paffe under the great feal go forth, which great feal is *clavis regni*, and for thofe ends this court is ever open.

Of this court Fleta *ubi fupra*, faith, *Dicuntur brevia cum fint formata ad fimilitudinem regulæ juris, quæ breviter, et paucis verbis intentionem proferentis exponunt, ficut regula juris, rem quæ eft breviter enarrat: non tamen ita debet effe bre. quin rationem et vim intentionis contineat. Et funt quædam brevia formata fub fuis cafibus, et quædam de curfu quæ confilio totius regni funt approbata. quæ quidem mutari non poterunt abfque eorundem contraria voluntate. Sunt et brevia ex eis fequentia quæ dicuntur judicialia, et fæpius variantur fecundum varietatem placitorum proponent' et refpondent', petentis et excipientis et fecundum varietatem refponfionum. Sunt et quædam quæ dicuntur magiftralia et fæpius variantur fecundum diverfitatem cafuum, factorum et querelarum, et quorum*
*quædam*

[a] 8 E. 4. 5. 9 E. 4. 15. 14 E. 4. 7.
[b] Stan. prær. c. 20. fo. 65. b. Pl. com. fo. 72.
[c] Rot. par. 8 H. 4. nu. 122. 2 R. 3. 1.
[d] R'gift. 297. F. N. B. 263. Stanf. prær. c2. Rot. par. 18 E. 3. nu. 41, 42.

[ 80 ]

[a] 13 E. 2. coram rege, rot. 5 L. London.

[b] 10 E. 3. 61. 24 E. 3. 65. 77.

[c] 18 E. 3. 25. 17. aff. 24. 14 Eliz. Dier 315. Pl. com. 393. a.
[d] In par. Tr. 9. H. 6. rot. 5. int. placita regis.

*Officina juftitiæ*.
Fleta lib. 2. ca. 12. Bract. li. 5. fo. 413. Britton ca. 84. Fleta lib. 6. ca. 35. & 36.



*quædam sunt personalia, et quædam realia, et quædam mixta, secundum quod sunt actiones diversæ vel variæ, quia tot erunt formulæ brevium, quod sunt genera actionum, quia non potest quis sine brevi agere, præcipue de libero tenemento suo, quia non tenetur quis respondere sine brevi, nisi gratis voluerit, et cum hoc fecerit quis, ex hoc ei nm injuriabitur: volenti enim et scienti non fit injuria. De eadem autem re, plures alicui competere poterunt actiones, ordine autem, ut convenit, observato. Breve quidem regis in se nullam debet continere falsitatem, nec aliquem errorem: apparere debet vel in prima sui figura non vitiosum, maxime si fuerit patens sive apertum, quia originalia quædam sunt clausa, et quædam aperta. Et sive aperta, sive clausa, apparere non debent abrasa, nec abolita: et si inveniatur abrasio, tunc refert quo loco, à quo, et quando. Quo loco? videlicet utrum in narratione facti vel juris. Si autem in narratione facti, cadet coram justic' quasi suspectum. Facta enim et nomina mutari non debent, sed jura ubique scribi possunt. A quo? utrum videlicet per clericum cancellar' cui autoritas data fuerit, vel ausu temerario per alium, sicut clericum justic,' vel vic' ad procurationem alicujus partis: quo casu omnes agentes et consentientes tanquam falsarii puniantur. Item quando? videlicet utrum hoc fiat antequam bre. in curia resuscitatum et publicatum, vel post. Si autem post, erit breve suspectum et cadet, si à tenente fuerit hoc calumpniatum. Fiunt autem brevia judicialia in cancellaria ex recognitionibus et contractibus habitis et in rotulis cancellariæ irrotulatis et ex recordo cancellario et clericis sibi associatis per hac constitutionem concesso. Quia de hiis quæ recordata sunt coram cancellar' domini regis, et ejus justic' qui recordum habent et in rotulis eorum irrotulantur, non debet fieri processus placiti per summonitionem, vel attachiament', essonia, visus tre. et alias solempnitates cur' sicut fieri consuevit ex contractibus, et conventionibus factis extra curiam. Observandum est de cætero quod ea quæ inveniuntur irrotulata coram hiis qui recordum habent vel in finibus contenta, cum sint contractus sive conventiones vel obligationes sive servicia aut consuetudines recognitæ sive alia quæcunq; irrotulata quib' cur' regis sine juris et constitutionis offensa authoritatem præstare potest talem de cetero habeat vigorem, quod non sit necesse de hiis placitare in posterum, sed cum venerit querens ad curiam domini regis, si recens sit cognitio, vel finis, vix infra annum per bre. levatus, statim habeat bre. de executione illius recognitionis factæ: et si forte à majore tempore transacto facta fuerit illa recognitio, vel finis levatus: præcipiatur vic' quod scire fac' parti de qua fit queremonia, quod sit ad certum diem, ostens. si quid sciat dicere quare hujus irrotulata vel in fine contenta executionem habere non debeant. Et si ad diem venerit, et nihil sciat dicere quare executio fieri non debeat, præcipiatur vic' quod rem irrotulatam vel in fine contentam exequi fac'. Eodem modo mandetur ordinario in suo casu, observato nihilominus quod inferius dicetur in statuto de medio qui per judicium aut recognitionem est obligatus. Ex hac quidem constitutione oriuntur bria. judicialia in cancellaria sicut coram ipsis justic. Ipsi autem collaterales et socii cancellarii esse dicuntur præceptores, eo quod bria. causis examinatis remedialia fieri præcipiunt, et hoc quoque cum sine denar' ad opus domini regis, et quoque sine fine, eo quod omnia bria. non sunt omni tempore æquipollentia. De brevibus autem coram justic' ad primas assisas cum in partes illas venerint, fines capere non consueverunt, eo quod ad tempus itineris justic' ligat constitutio Magnæ Cartæ quæ talis est; Nulli justitiam negabimus, vendemus, vel differemus: sed non inhibetur quin fines capiantur pro brevibus possessionum, et actionum personalium, pro celeriore justitia habenda; qui quidem pro qualitatibus et quantitatibus*

[ 81 ]

*portionum*

Cap. 8.        The Court of Chancery.                                    81

*portionem concessi in eisdem brevibus imbreviabuntur, et in rotulis cancellariæ irrotulantur. Qui quidem rotuli singulis annis ad scaccar' liberabuntur, et fines hujus extrahuntur et per summon' scaccarii leventur. Clausula vero finis talis est, Et cape securitatem à præfato tali de 40 solid. ad opus nostrum pro hoc brevi. Verba autem extract' de scaccario sunt hæc. De A. de B. pro brevi habend' dim marc' vel amplius prout finis factus fuerit. Conceduntur aliquando conquerentib' ob favorem paupertatis quod ubi præsumi potest sic quod plegios invenire non possunt de prosequend' clamorem suum quod securitatem præstent vic' per fidei interpositionem suam, non tamen in actionibus personalibus hoc concedendum est. Habet et rex clericos in officio illo expertos et legales qui formulas brevium cognoscunt, qui approbanda admittunt et defectiva omnino repellunt, quib' omnia bria. priusquam ad sigillum proveniunt cum deliberatione distincte et aperte in ratione, dictione, litera et syllaba examinare injunctum est. Et sciendum quod nullum bre. nisi per manus eorundem ad sigillum debet admitti. Habet etiam sex clericos suos prænotarios in officio illo, qui cum clericis memoratis familiares, &c. esse consueverunt et præcipue ad victum et vestitum qui ad bria. scribenda secundum diversitates querelarum sunt intitulati. Et qui omnes pro victu et vestitu de proficuo sigilli in cujuscunque usus pervenerit debent honeste inveniri. Sunt etiam nihilominus clerici juvenes et pedites quibus de gratia cancellar' concessum est pro expeditione populi bria. facere cursoria, dum tamen sub advocatione clericorum superiorum fuerint qui eorum facta in eorum receperint pericula. Et in quolibet bri. debet scribentis nomen inbreviari qui warrantizare poterint in peccatores si necesse fuerit. Et ne præfati clerici superflua petant stipendia pro scriptura sua, constitutum est quod tam clerici justic' quam cancellar' de solo denario pro scriptura unius brevis se teneant contentos.*

And this court is the rather alwayes open, for that if a man be wrongfully imprisoned in the vacation, the lord chancelour may grant a *habeas corpus* and do him justice according to law, where neither the kings bench nor common pleas can grant that writ but in the term time; but this court may grant it either in term time or vacation. So likewise this court may grant prohibitions at any time either in terme or vacation; which writs of prohibition are not retornable: but if they be not obeyed, then may this court grant an attachment upon the prohibition retornable either in the kings bench or common place.

 * The author of that book speaking of the court of chancery, and of the jurisdiction it then had, saith, *Curia cancellariæ regiæ est curia ordinaria pro brevibus originalibus emanandis, sed non placitis communibus tenendis.*

Divers acts of parliament give authority to the lord chancelour to heare and * determine divers offences and causes in the court of chancery, which is ever intended in this court proceeding in Latin, *secundum legem et consuetudinem Angliæ*, and the defendant shall not be sworn to his answer, nor examined upon interrogatories, and upon issue joyned it shall be tried in the king's bench, *ut in similibus casibus solet*. But our purpose is not to enumerate all these statutes, for our aim is principally at the generall jurisdiction of this court.

The officers and ministers of this court of common law doe principally attend and doe their service to the great seal, as the * twelve masters of the chancery, whereof the master of the rols is

<sup>*</sup> New Tales, or *Novæ Narrationes,* written about the beginning of E. 3.
27 E. 3. cap. 13.
2 R. 3. fo. 3.
13 E. 4.
Dier 12 El. 288. a resolve.

*[ 82 ]

*Officers and ministers of this court.*
See the 2 part of the Inst. W. 2.

c.2.24. *verb. Clerici de Cancellariæ,*    * In the parliament rol of 5 R. 2. nu. 23. they are called chief clerks.

IV. INST.                H                                    the



the chief, who by their originall inftitution, as it is proved before, fhould be expert in the common law, to fee the forming and framing of originall writs according to law, which are not of courfe; whereupon fuch are called in our ancient authors *brevia magiftralia*. The clerk of the crown, the clerk of the hamper, the fealer, the chafe wax, the controller of the chancery, twenty four curfitors for making writs of courfe or formed writs according to the regifter of the chancery, the clerk of the prefentations, the clerk of the faculties, the clerk examiner of letters patents, the clerks of the pettibag, and the fix atturnies. The proceffe in this court is under the great feal according to the courfe of the common law.

Having fpoken of the court of ordinary jurifdiction, it followeth according to our former divifion, that we fpeak of the extraordinary proceeding according to the rule of equity, *fecundum æquum et bonum*, wherein we will purfue our former order.

*Of the antiquity of this court of equity.*
Henry Beaufort fon of John of Gaunt bifhop of Winch. cardinal of St. Eufebius, lord chancelor in the beginning of the reign of H. 6. and in that kings reign John Kemp cardinall of S. Rufeline archbifhop of York, lord chancelor. See Rot. parl. 28 H 6. nu. 10. & 35 H. 6. fo. 3.
a 36 E. 3. cap. 9.

Albeit our ancient authors, the Mirror, Glanvill, Bracton, Britton and Fleta doe treat of the former court in chancery, and of originall writs and commiffions iffuing out of the fame, yet none of them do once mention this court of equity. We have alfo confidered what cafes in this court of equity have been reported in our books, and we find none before the reign of H. 6. and in that kings time, and afterwards plentifully, we then turned our eies to acts of parliaments and parliament rols.

a Some have thought that the ftatute of 36 E. 3. gave the chancelor his firft authority for his proceeding in courfe of equity, by which it is enacted, That if any man think himfelf grieved contrary to any of the articles above written, or others contained in divers ftatutes, will come to the chancery or any for him, and thereof make his complaint, he fhall prefently have there remedy by force of the faid articles and ftatutes, without elfewhere purfuing to have remedy. But certainly this act giveth the chancelor no power to proceed in courfe of equity, but that he grant to the party grieved originall writs which are called remediall grounded upon any ftatute for his relief, and there is no ftatute that gives the party grieved remedy in equity. Laftly, the laft words of the act, without elfewhere purfuing to have remedy, doe manifeft that the meaning of the makers of the act is to direct the party to be relieved by the common law, by actions upon thefe ftatutes, and not elfewhere.

Rot. par. 13 R. 2. nu. 30.

In the parliament holden 13 R. 2. the commons petitioned to the king, That neither the chancellor nor other counfellor doe make any order againft the common law, nor that any judgment be given without due proceffe of law. Whereunto the kings anfwer was, The ufages heretofore fhall ftand, fo as the kings royalty be faved. In the fame parliament another petition was, That no perfon fhould appear upon a writ *De quibufdam certis de caufis*, before the chancelor or any other of the councell, where recovery is therefore given by the common law: whereunto the kings anfwer is, The king willeth as his progenitors have done, faving his regalty.

17 R. 2. ca. 6.

In the parliament holden in 17 R. 2. it is enacted at petition of the commons, That forafmuch as people was compelled to come before the kings councell, or in chancery, by writs grounded upon untrue fuggeftions, that the chancelor for the time being prefently

after

after that such suggestions be duly found and proved untrue, shall have power to ordain and award dammages according to his discretion * to him which is so travelled unduly as is aforesaid. This act extendeth to the chancelor proceeding in course of equity, and extendeth not to a demurrer in law upon a bill, but upon hearing of the cause upon these words in the act [duly found and proved] and this is the first parliament that I find touching this matter. And in the roll of the same parliament, I finde the first decree in chancery that ever I observed, the effect whereof was: John de Windsor complaineth and requireth to be restored to the mannors of Rampton, Cottenham and Westwick with their appurtenances in the county of Cambridge, the which were adjudged to him by the kings award, then in the possession of Sir John Lisley, and now withholden by Sir Richard le Scrope, who by champerty bought the same: the cause was this. Upon a petition of Windsor against Lisley they both compromitted the matter to the kings order, the king committed the same to the councell, they after digesting of the same made a decree for Windsor under the privy seal, they send warrant to the chancelor to confirm the same, which was done under the great seal by a special injunction to Lisley, and to write to the sherif to execute the same. After this, Lisley by petition to the king requireth that the same may be determined at the common law, notwithstanding any former matter: the king accordingly by privy seal giveth warrant to the chancelor to make a *supersedeas*, the which was done by privy seal, after which Sir Richard Lescrope bought the same. Upon the ripping of the whole matter, this sale was thought no champerty, whereupon it was adjudged, that the said Windsor should take nothing by his said suit, but to stand to the common law, and that the said Sir Richard should goe without day.

The commons petitioned that no writs or privy seals be sued out of the chancery, exchequer or other places to any man to appear at a day upon a pain, either before the king and his councell, or in any other place, contrary to the ordinary course of the common law: whereunto the king answered: that such writs should not be granted without necessity.

Amongst the petitions of the commons you shall find this, that all writs of *subpœna* and *certis de causis*, going out of the chancery and the exchequer may be enrolled, and not granted of matters determinable at the common law, on pain that the plaintif doe pay by way of debt to the defendant forty pound: whereunto is answered, the king will be advised.

It is enacted, to endure untill the next parliament, that the exception (how that the party hath sufficient remedy at the common law) shall discharge any matter in chancery. At the n xt parliament you shall find a petition in these words. No man to be called by privy seal or *subpœna* to answer any matters but such as have no remedy by the common law, and that to appear so by the testimony of two justices of either bench, and by indenture between 'them and the plaintif, which plaintif shall always appear in proper person, and find surety by recognizance to prosecute with effect the matters of the bill only, and to answer dammages if the same fall out against the plaintif.

### Marginalia

7 E. 4. fo. 14.

Rot. par. 17 R. 2. nu 10. William Courtney son of Hugh earl of Devon, was then bishop of Cant. and lo. chancelor when this decree was made.

Champerty.

Rot. par. 2 H. 4. nu. 69.

Rot. par. 3 H. 5. nu. 46. Edmond Stafford archb. of York, was lord chancellor at this time.
Rot. Par. 9 H. 5. nu. 25.
Rot. Par. 1 H. 6. nu. 41.

Never good petition in parliament dieth, but first or last will take effect.
Vid. sup. fa. 32.
15 H. 6. ca. 4.

But in *anno* 15 H. 6. for a perpetuall law, and for the true jurifdiction of this court it is enacted in thefe words.

30 H. 6. fo. 26.
4 E. 4. 8. 14 E. 4.
1. 16 E. 4. 9. b.
18 E. 4. 13.
6 E. 4. 10. b.
7 H. 7. 12.
Fortefc. ca. 34.
Rot. par. 14 E. 4.
nu. 5. William.
Shetfords cafe
Doct. & Stud.
cap. 18. 24. 50.
31 H. 6. ca. 2.

*Item,* forafmuch as divers perfons have before this time been greatly grieved by writs of *fubpœna*, purchafed for matters determinable by the common law of his land, to the great dammage of fuch perfons fo vexed, in fubverfion, and impediment of the common law aforefaid; our foveraign lord the king will, that the ftatutes thereof made fhall be kept after the form and effect of the fame. And that no writ of *fubpœna* be granted from henceforth till furety be found to fatisfie the party fo grieved and vexed for his dammages and expences, if fo be that the matter may not be made good, which is contained in the bill. In *anno* 31 H. 6. cap. 2. there is a provifo in thefe words. Provided that no matter determinable by the law of this realm fhall be by the faid act determined in other form then after the courfe of the fame law in the kings courts having determination of the fame law.

[ 84 ]

Trin. 2 Jac.

Tr. 2 Jac. *regis,* upon fuit made to the king for erecting of a new office for taking of furety according to the faid act of 15 H. 6. cap. 4. the king referred the caufe to Popham chief juftice, who upon conference with the judges in Fleetftreet, refolved that the furety was by force of that act to be by obligation, and to be made by the party grieved himfelf, becaufe it concerneth his dammages and cofts, and the court was to fet down the form and fum of the obligation, and in the end the fuit prevailed not.

* Pafch. 29 El.
in Scaccario
Woods cafe.
Vide 7 El. Dier
238. Seignior
Shaadois cafe.

* Pafch. 29 Eliz. *in fcaccario,* in Woods cafe adjudged upon the ftatute of 2 E. 6. cap. 13. for the like reafon that the forfeiture for non-payment of tithes fhall goe to the party grieved.

*Realons,* 1. à
majori ad minus.
Rot par. 2 R. 2.
nu. 18.
Rot. par. 13 R 2.
nu. 10.

1. Rot. par. 2 R. 2. nu. 18. the high court of parliament relieveth but fuch as cannot have remedy but in parliament.

The parliament for matters determinable at the common law doth remit the parties thereunto.

2 Regula.
3.

2. *Nunquam decurritur ad extraordinarium, fed ubi deficit ordinarium.*

3. Whereas matters of fact by the common law are triable by a jury of twelve men, this court fhould draw the matter *ad aliud examen,* that is, to judge upon depofition of witneffes, which fhould be but evidence to a jury in actions real, perfonall, or mixt.

37 H 6. 14.
27 H. 8. 18.

This court of equity proceeding by Englifh bill is no court of record, and therefore it can bind but the perfon only, and neither the ftate of the defendants lands, nor property of his goods or chattels.

Trin. 2 Jac.
reg. in fcaccario.
Sr Thomas
Themilthorps
cafe.

Egerton lord chancelour impofed a fine upon Sir Tho. Themilthorp knight, for not performing his decree in chancery concerning lands of inheritance, and eftreated the fame into the exchequer: and upon proceffe the party appearing pleaded that the fine was impofed by the lord chancelour for not performance of his decree, and that he had no power to affeffe the fame. The atturny generall confeffed the plea to be true, *et petit advifamentum curiæ,* concerning the power of the chancelor in this cafe,

Cap. 8.      The Court of Chancery.      84

case, and upon debate of the question in court, and good advisement taken, it was adjudged that the lord chancelor had no power to assesse any such fine, for then by a mean he might bind the interest of the land where he had no power, but of the person only, and thereupon the said Sir Thomas Themilthorp was discharged of the said fine.

Afterward the said lord chancelor decreed against Waller certain lands, and for not performance of the decree imposed a fine upon him, and upon processe out of the court of chancery extended the lands that Waller had in Midd. &c. whereupon Waller brought his assise in the court of common pleas, where the opinion of the whole court agreed *in omnibus*, with the court of exchequer.    *Wallers case.*

The lord chancelor or the lord keeper is sole judge both in this court of equity, and in the court concerning the common law; but in cases of weight or difficulty he doth assist himself with some of the judges of the realm, and no greater exception can be taken hereunto then in case of the lord steward of England being sole judge in triall of the nobility, who also is assisted with some of the judges.    *The Judge of this court of equity, &c.*

For this court of equity the ancient rule is good. Three things are to be judged in court of conscience: covin, accident, and breach of confidence.

All covins, frauds, and deceits, for the which is no remedy by the ordinary course of law.

Accident, as when a servant of an obligor, morgageor, &c. is sent to pay the mony on the day, and he is robbed, &c. remedy is to be had in this court against the forfeiture, and so in the like.

The third is breach of trust and confidence, whereof you have plentifull authorities in our books.

The case in the chancery between the earl of Worcester and other plaintifs, and Sir Moyl Finch and Eliz. his wife defendants was this. The queen being seised of the mannor of Raveston and of certain lands in Stokegoldington, (which the plaintif pretended to be a mannor either in right or reputation) granted by her letters patents the mannors of Raveston and Stokegoldington to the said Sir Moyl, and John Awdelye, and their heirs: but this was upon confidence, that they should grant the mannor of Raveston to Sir Thomas Heneage and Anne his wife, and to the heirs of Anne; and the mannor of Stokegoldington to Sir Thomas and Anne, and the heirs of Sir Thomas. Sir Moyle and Awdelye by deed indented and inrolled *termino Trin.* 1588. 30 Eliz. in this court for a thousand pound bargained and sold to Sir Thomas Henage and his wife the mannors of Raveston and Stokegoldington, and the scite of the priory of Raveston in the county of Buck. and all other their lands, tenements and hereditaments in Ravenston, Weston, Pidington, and Stokegoldington, in the county of Buck. To have and to hold the mannor of Raveston and the scite of the said priory, and all the premisses in Ravenston, Weston, Pidington, and Stokegoldington (other then the said mannor of Stokegoldington) to the said Sir Thomas and dame Anne, and the heirs of the said dame Anne: and to have and to hold the said mannor of Stokeg. to the said Sir Thomas and dame Anne, and to the heirs of Sir Thomas. Sir Thomas had issue by    [ 85 ] *Mich. 42 & 43 El. in Cancellar'. Sir Moyl Finches case.*

H 3            the



the said dame Anne the said Elizabeth one of the defendants his only child, and afterwards the said dame Anne died: the defendant alleadged that Sir Thomas was disseised of Stokegoldington, and the plaintif denied it. And after Sir Thomas by deed indented and inrolled, bargained and sold the mannor of Stokegoldington to the plaintif for payment of his debts and died: and for payment of his debts, they exhibited their bill against Sir Moyl, and the said Eliz. his wife, for the said mannor of Stokegoldington, and the lord chancelor decreed it for the plaintif. And upon a petition preferred by the defendants to queen Elizabeth, she referred the consideration of the whole case to all the judges of England: and after hearing of the counsell of both parts on severall days, and conference between themselves, these points for rules in equity were resolved. First, that if there were any disseison, that nothing passed to the plaintif either in right or equity, for the disseisor was subject to no trust, nor any *subpœna* was maintainable against him, not only because he was in the *post*, but because the right of inheritance or freehold was determinable at the common law and not in the chancery, neither had *cesti que use* (while he had his being) any remedy in that case. Secondly, it was resolved by all the justices, that admitting that Sir Thomas Heneage had a trust, yet could not he assign the same over to the plaintif, because it was a matter in privity between them, and was in nature of a *chose* in action, for he had no power of the land, but only to seek remedy by *subpœna*, and not like to *cesti que use*, for thereof there should be *possessio fratris*, and he should be sworn on juries in respect of the use, and he had power over the land by the statute of 1 R. 3. cap. and if a bare trust and confidence might be assigned over great inconvenience might thereof follow by granting of the same to great men, &c. Thirdly, when the land descended to Elizabeth, one of the defendants, as heir to her mother, and the trust descended to her from her father, the trust was drowned and extinguished. Fourthly, when any title of freehold or other matter determinable by the common law come incidently in question in this court, the same cannot be decided in chancery, but ought to be referred to the triall of the common law where the party grieved may be relieved by error, attaint, or by action of higher nature. And when the suit is for evidences, the certainty whereof the plaintif surmiseth he knoweth not, and without them he supposeth that he cannot sue at the common law: It was resolved that if the defendant make no title to the land, then the court hath just jurisdiction to proceed for the evidence; but if he make title to the land by his answer, then the plaintif ought not to proceed, for otherwise by such a surmise, inheritances, freeholds, and matters determinable by the common law shall be decided in chancery in this court of equity. And thus were these points resolved by Sir John Popham, Sir Edmond Anderson, Sir William Periam, and Walmeslye, Gawdye, Fenner, and Kingesmill justices, and Clark and Savill barons of the exchequer, and all this amongst other things they certified under their hands into the chancery, and thereupon the former decree was reversed. And in debating of this case it was resolved by the two chief justices, chief baron, and divers other justices, that if a man make a conveyance, and expresse an use, the party himself or his heirs shall not be received to averre a secret trust, other then the expresse limitation of the use, unlesse such

trust

*Marginal notes:*
- A disseisor subject to no trust.
- A trust cannot be assigned over. 22 El. Dier fo. 369. pl. 50.
- Matters determinable by the common law cannot be decided in chancery.
- Suit for evidence.

[86]

| Cap. 8. | The Court of Chancery. | 86 |
|---|---|---|

truſt or confidence doe appear in writing, or otherwiſe declared by ſome apparent matter. And Popham ſaid, that covin, accident, and breach of confidence were within the proper juriſdiction of this court.

   Thomas Throckmorton eſquire exhibited a bill in this court againſt Sir Moyl Finch knight, claiming a leaſe of the mannors of R. and S. for many years to come, and ſhew clear matter in equity to be relieved againſt a forfeiture pretended by Sir Moyle for breach of a condition where there was no default in the plaintif, &c. Unto which bill the defendant pleaded this plea, that for the triall of the forfeiture of which leaſe, he made a leaſe for years to one priviledged in the exchequer, who brought an *ejectione firme* againſt the plaintif, and upon pleading a demurrer in law, the leſſee had judgment to recover againſt Thomas Throckmorton (now plaintif in chancery:) whereupon Thomas Throckmorton brought a writ of error in the exchequer chamber, where upon due proceeding the judgement was affirmed, and demanded judgment, if after theſe judgements given at the common law he ought to be drawn to make any further anſwer in this court of equity. And Egerton lord chancelor delivered his opinion in court, that the defendant ſhould anſwer to the bill: and foraſmuch as the caſe was of great conſequence, the conſideration of the demurrer was by the queen referred to all the judges of England: before whom the councell of Throckmorton ſaid, that the intent of the lord chancelor was not to impeach the ſaid judgments, but confeſſing the ſaid judgments, to be relieved upon matter in equity: as if a man hath (as he is adviſed) two matters to aid him, matter at the common law, and matter in equity, and being impleaded at the common law, doth by advice of his councell aſſay the common law, where his adverſary prevaileth againſt him, and hath judgment accordingly, yet in this caſe the party may, confeſſing the judgment, ſue to be relieved upon a collaterall matter in equity: and thereupon they ſhewed ſome preſidents in time of H. 8. E. 6. &c. and one in the point between Ward and Fulwood. But upon great deliberation it was reſolved by all the judges of England, that the plea of Sir Moyl Finch was good, and that the lord chancelor ought not to examine the matter in equity after the judgement at the common law: for though the lord chancelor (as hath been ſaid) would not examine the judgment, yet he would by his decree take away the effect of the judgment: and for the preſidents, they were grounded upon the ſole opinion of the lord chancelor, and paſſed *ſub ſilentio*. But that ſuch a courſe ſhould be permitted, it ſhould be not only full of inconvenience, but directly againſt the laws and ſtatutes of the realm, againſt which no preſident or preſcription can prevail; * which you may read at large in the third part of the Inſtitutes, cap. Præmunire. Which reſolution of the judges was ſignified by Popham chief juſtice to the lord chancelor, and thereupon no further proceeding was againſt Sir Moyle Finch, but his plea ſtood.

   In a caſe depending in chancery by Engliſh bill between Mears plaintif and Saint-John and his wife adminiſtratrix of John Alnion defendant, the caſe was this: that the inteſtate took the profits of the lands of the plaintif being within age by force of a truſt repoſed in him by the father of the plaintif by his laſt will, the

Mich. 39 & 40 El. in Cancellar'.

* 27 E. 3. cap. 1. 4 H. 4. cap. 22. &c. in the preamble. Doct. & Stud. 30. W. 2. ca. 5. Vid. Paſch. 5 E. 4. coram rege rot. 35. Sir Simon Norres caſe. Nota. Mich. 37 & 38 El. in Cancellar.

H 4 yearly


Digitized by Google

yearly value of which lands was fourscore pounds *per annum*, and the inteſtate took the profits from the 23 year of queen El. untill the 33 year of her reign, and with parcell of the profits purchaſed lands in fee which deſcended to his heir, and left aſſets to his adminiſtratrix one of the defendants to ſatisfie the plaintif, all debts paid. The queſtion was, whether in this caſe the adminiſtratrix might not be charged in equity for the ſaid mean profits: and Sir Thomas Egerton maſter of the rols ſaid, that he had ſeen a caſe in chancery in *anno* 34 H. 6. reſolved by all the judges of England remaining in the Tower, that where the feoffees to uſe took the profits of the land, and received the rents, and made their executors, and died leaving aſſets to ſatisfie all debts over and above the ſaid rents and profits, that the executors ſhould be charged to ſatisfie *ceſti que uſe* for the ſaid rents and profits, and accordingly it was decreed in Mears caſe againſt the defendant: but whether the heir ſhould be contributory or no, it was doubted.

[87]

Paſch. 32 El. in Cancellaria. Withams caſe. Eborum. Vide 7 E. 4. 14. & 18 E. 4. 11. & 12.

Withams caſe in the chancery was, that a tearm for years was granted to the uſe of a feme ſole, ſhe took huſband and died, whether the huſband ſhould have the uſe, or the adminiſtrators of the feme, was referred to the judges; and by them it was reſolved, that the adminiſtrators ſhould have it, and not the huſband, becauſe that this truſt of a feme was a thing in privity, and in nature of an action, for which no remedy was but by writ of *ſubpœna*. And ſo it was reſolved by the juſtices in Waterhouſes caſe, Hil. 8 Eliz. *Eborum*, for the truſt runneth in privity in this caſe, and a huſband ſhould not be tenant by the curteſie of an uſe, nor the lord of the villain ſhould have it at the common law.

Trin. 28 El. adjudge in the kings bench, in Peacocks caſe.

A man poſſeſſed of a tearm for years in lands, by his laſt will deviſed the ſame to one and the heirs of his body begotten, made his executors and died, the deviſee entreth by the aſſent of the executors, hath iſſue and aliens the tearm and dieth: this alienation barreth the iſſue, for a tearm for years cannot be entayled. And afterwards *anno* 31 Eliz. in a caſe depending in chancery between Higgins and Milles it was certified by the lord Anderſon and juſtice Walmſley (to whom it was referred) that no eſtate taile could be of a tearm, and that the alienation of the deviſee did bar the iſſue.

31 Eliz. between Higgins and Mils in Cancellaria.

Mic. 26. & 27 El. coram rege. Perrots caſe. 10 H. 6. 15. in London by preſcription. Nota this reſolution is againſt the court of requeſts. See hereafter, cap. 9.

In a premunire between John Perrot plaintif, and T. M. H. W. and others defendants, it was reſolved by Sir Chriſtopher Wray chief juſtice, and the court of kings bench, that the queen could not raiſe a court of equity by her letters patents, and that there could be no court of equity but by act of parliament, or by preſcription time out of mind of man. But the queen might grant power *tenere placita*, or *conuſans de plea*, for all muſt judge according to one ordinary rule of the common law, but otherwiſe it is of proceedings extraordinary without any certain rule.

Theſe caſes which upon ſo great and mature deliberation have been reſolved by the judges of the realm, and whereunto we were privy and well acquainted with, we have thought good to report, and publiſh for the better direction in like caſes hereafter.

*How he is created.* Camden, p. 131.

He is made lord chancelor of England, or lord keeper of the great ſeal, *per traditionem magni ſigilli ſibi per dominum regem*, and by taking his oath, *forma cancellarium conſtituendi regnante Henrico ſecundo fuit appendendo magnum Angliæ ſigillum ad collum cancellarii electi.*

Cap. 8.            The Court of Chancery.                    87

Some have gotten it by letters patents, [a] at will, and [k] one for tearm of his life; but it was holden void, becaufe an ancient office muft be granted, as it hath been accuftomed.

[c] It is enacted and declared, that the common law of this realm is and always was, and ought to be taken, that the keeper of the great feal of England for the time being hath always had, ufed, and executed, and from thenceforth may have, take, ufe, and execute the fame and the like place, authority, preheminence, jurifdiction, execution of laws, &c. as the lord chancelor of England for the time being lawfully ufed, &c.

And fo it appeareth in 18 E. 3. nu 41. that the lord chancelor, or lord keeper for the time being ought to have conufance.

[a] I finde that king H. 5. had two great feals, one of gold, which he delivered to the bifhop of Dureime, and made him lord chancelour of England, and another of filver, which king Henry the 5 delivered to the bifhop of London to keep.

[b] *William de Ayremin garden des rolles del chancelar' et fes compagnicns gardens del grand feale.* At this time was Robert Burnel bifhop of Bath and Wels chancelour of England.

[c] It is to be obferved, that where divers ancient ftatutes fpeak of the chancelour and of his lieutenant, it muft of neceffity be intended of fuch a lieutenant, as the law doth allow of, and that cannot be of a deputy, for the chancelour cannot make a deputy, but *locum tenens* is to be taken for one that holdeth the place, or hath equall authoritie of the chancelour, and that is *cuftos magni figilli*: and this agreeth with the judgement of the faid parliament in 5 Eliz. But all queftions are now taken away by the faid act of 5 Eliz. and at this day there being but one great feale, there cannot be both a lord chancelour and a lord keeper of the great feale at one time, becaufe both thefe are but one office, as it is declared by the faid act.

It is faid before, that the chancelour by his ordinary power may hold plea of *fcire fac'* to repeale the kings letters patents under the great feal being always inrolled in this court, which we (to make a true derivation of his name) fhall now particularly touch. This writ of *fcire fac'* to repeal letters patents doth lye in this ordinary courfe of juftice in three cafes. The firft, when the king by his letters patents doth grant by feverall letters patents one and the felf fame thing to feveral perfons, the former patentee fhall have a *fcire fac'* to repeal the fecond patent. Secondly, when the king granteth any thing that is grantable upon a falfe fuggeftion, the king by his prerogative *jure regio* may have a *fcire fac'* to repeal his own grant. Thirdly, when the king doth grant any thing, which by law he cannot grant, he *jure regio* (for advancement of juftice and right) may have a *fcire fac'* to repeal his own letters patents. Now the judgement in all thefe three cafes is, *Quòd prædictæ litteræ patentes dicti domini regis revocentur, cancellentur, evacuentur, adnullentur, et vacuæ, et invalidæ, pro nullo penitus habeantur, et teneantur; ac etiam quod irrotulamentum eorundem cancelletur, caffetur, et adnihiletur, &c.* Hereof our lord chancelour of England (for forein chancelours, it may be, have not like authority)

is

---

Margin notes:

[a] 35 H. 6. 3. B. of Winch. 1 H. 6. nu. 16.
[b] Cardinal Woolfey.
[c] 5 El. ca. 18.

Rot. par. 18 E. 3. nu. 41.

[ 88 ]

[a] Rot. par. 1 H. 6. nu. 13, 14. 13 R. 2. nu. 7. Vide Camden ubi fupra.
[b] Stat. de forma mittendi extract. in fcaccarium, anno 16 E. 1. vet. Mag. Carta, 2 part. fo. 47. b.
[c] An. 27 E. 1. de libertatibus perquirendis. Vet. Mag. Carta, part 1. fo. 126, &c 2 part fo. 57, &c.

*Cancellarius unde.*

6 E. 4. 9.
Dier 3 Eliz. 137.
2 E. 3. 7.
17 E. 3. 59.
21 E. 3. 47.

Lib. 2. fo. 14. &c.

Digitized by Google

Case 4:20-cv-00957-SDJ    Document 835-1    Filed 04/04/25    Page 14 of 14 PageID #: 60420

is called *cancellarius, à cancellando, i. à digniori parte*, being the highest point of his jurisdiction to cancell the kings letters patents under the great seale, and damming the inrolment thereof, by drawing strikes through it like a lettice.

And all this which hath been said concerning the office of the lord chancelour, or lord keeper is included within his [a] oath, which followeth in these words, and consisteth upon six parts. He shall sweare,

1. That well and truly he shall serve our soveraigne lord the king and his [b] people in the office of chancelour (or lord keeper.)
2. That he shall doe right to all manner of people, poore and rich, after the [c] lawes and usages of the realm.
3. That he shall truly counsel the king, and his counsell he shall [d] layne and keep.
4. That he shall not know nor suffer the hurt or disheriting of the king, or [e] that the rights of the crowne be decreased by any meanes as far as he may let it.
5. And if he may not let it, he shall make it clearly and expresly to be known to the king, with his true advice and counsell.
6. And that he shall do and purchase the kings profit in all that he reasonably may, as God him help, and by the contents of this book.

*The Lord chancellors oath.*
[a] Rot. Par. 10 R. 2. rot. 8. The oath recited. Vid. rot. parl. 11 H.4. 1. nu. 28.
[b] Becaufe he hath power of judicature, as is aforesaid.
[c] 10 R. 2. rot. par. nu. 8. 2 H. 4. nu. 10. 15 E. 3. nu. 10. 15. 37. 41, 42.
[d] Laine is an ancient French word, and signifieth to hide.
[e] Rot. par. 10 R. 2. nu. 6, 7, 8. &c. the case of *Mich. de la Pole* Chancelour of England.

[ 89 ]
Vid. artic. 20, 21, 26, 38, 41. 42. 44. 46.

### Articles againſt Cardinall Woolſey.

Now for as much as the articles exhibited to king H. 8. *1 die Decembris anno* 21 of his reign, by the lords and others of his privy councell (whereof Sir Thomas More lord chancelour was one) and by two of the principall judges of the realm against cardinall Woolsey, do in divers of the articles concern the jurisdiction of the chancery, (viz. the 20 and 26 articles, &c.) and other titles of this fourth part of the Institutes, we have thought good justly and truly to transcribe from the very originall, under the proper hands of the lords and others of the privy councell, and of the said judges, (which we have seen and had in our custody) and have compared this transcript with the originall it selfe, and have (because they are of great weight and use to many purposes) transcribed it *de verbo in verbum*, without omission of any thing, as matters of that nature ought to be: and the rather, for that in our Chronicles they are very untruly rehearsed: and before this time (that we finde) the true articles were never printed.

Constrained by necessity of our fidelity and conscience, complaine and shew to your most royall majesty, we your graces humble, true, faithfull, and obedient subjects: that the lord cardinall of York, lately your graces chancelour, presuming to take upon him the authority of the popes legat *de latere*, hath by divers and many sundry wayes and fashions committed high and notable grievous offences, misusing, altering, and subverting the order of your graces lawes: and otherwise contrary to your high honour, prerogative, crown, estate, and dignity regall, to the inestimable great hinderance, diminution, and decay of the universall wealth of this your graces realm. And it is touched summarily and particularly in certain articles here following, which be but a few in compari-
son

Digitized by Google