**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| The State of Texas, et al., | |
| Plaintiffs, | Case No. 4:20-cv-00957-SDJ |
| v. | Hon. Sean D. Jordan |
| Google LLC, | |
| Defendant. | |

**<u>SECOND SUPPLEMENTAL BRIEF BY ARKANSAS, IDAHO, KENTUCKY,
MISSISSIPPI, AND PUERTO RICO IN OPPOSITION TO GOOGLE'S MOTION TO
STRIKE THE JURY DEMAND</u>**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................... ii

    A.   The Non-Jurisdictional Issues Google Raises Were Forfeited. ....................................... 1

    B.   Arkansas and Idaho May Recover Civil Penalties and Seek Injunctive Relief. .............. 1

    C.   The Court Has Jurisdiction Over Puerto Rico's Claims. .................................................. 5

    D.   Kentucky Can Seek Injunctive Relief Under Its Common Law. ..................................... 7

    E.   Mississippi Can Seek Disgorgement and Restitution. .................................................... 9

CONCLUSION ...................................................................................................... 10

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Aguadilla Paint Ctr. v. Esso*,
  2011 WL 6759549 D.P.R. 901, 83 P.R. Offic. Trans. 44 (P.R. 2011)......................................6

*Akin v. La. Nat'l Bank of Baton Rouge*,
  322 F.2d 749 (5th Cir. 1963) ...................................................................................................5

*Arbaugh v. Y & H Corp.*,
  546 U.S. 500 (2006)..................................................................................................................1

*Atlas R.R. Const. Co. v. Columbus & Greenville Ry. Co.*,
  190 F. Supp. 2d 908 (N.D. Miss. 2002)...................................................................................5

*Becknell Dev., L.L.C. v. Linamar Corp.*,
  No. 07 C 5455, 2008 WL 576334 (N.D. Ill. Feb. 28, 2008)....................................................6

*Begay v. Kerr-McGee Corp.*,
  682 F.2d 1311 (9th Cir. 1982) .................................................................................................5

*Blanyar v. Genova Prods. Inc.*,
  861 F.3d 426 (3d Cir. 2017).....................................................................................................5

*Boone Creek Props., LLC v. Lexington-Fayette Urban Cnty. Bd. of Adjustment*,
  442 S.W.3d 36 (Ky. 2014).......................................................................................................8

*Cemex de Puerto Rico, Inc. v. Terrassa Concrete Indus., Inc.*,
  No. D CD2010-2285, 2024 WL 2332605 (P.R. Cir. Apr. 26, 2024)........................................7

*Commonwealth ex rel. Chandler v. Anthem Ins. Cos.*,
  8 S.W.3d 48 (Ky. Ct. App. 1999) ............................................................................................9

*Collins v. Commonwealth*,
  324 S.W.2d 406 (Ky. 1959)......................................................................................................8

*Commonwealth v. Ky. Jockey Club*,
  38 S.W.2d 987 (Ky. 1931) ........................................................................................................8

*Commonwealth ex rel. Conway v. Thompson*,
  300 S.W.3d 152 (Ky. 2009)..................................................................................................7, 8

*Gandy v. Rsrv. Life Ins. Co.*,
  279 So. 2d 648 (Miss. 1973)....................................................................................................9

*Gary A. v. New Trier High Sch. Dist. No. 203*,
   796 F.2d 940 (7th Cir. 1986) ........................................................5

*Hancock v. Terry Elkhorn Mining Co.*,
   503 S.W.2d 710 (Ky. 1973) ........................................................8

*Harrison v. Jefferson Par. Sch. Bd.*,
   78 F.4th 765 (5th Cir. 2023) ........................................................1

*Hawaii v. Standard Oil Co. of Cal.*,
   405 U.S. 251 (1972) ........................................................2

*Mississippi ex rel. Hood v. AU Optronics Corp.*,
   571 U.S. 161 (2014) ........................................................10

*Irvin v. Picket*,
   6 Ky. 343 (1814) ........................................................8

*Jamison v. McClendon*,
   476 F. Supp. 3d 386 (S.D. Miss. 2020) ........................................................1

*Kelley v. Pulaski Stave Co.*,
   105 S.W. 153 (Ky. 1907) ........................................................8

*Hood ex rel. Mississippi v. Microsoft Corp.*,
   428 F. Supp. 2d 537 (S.D. Miss. 2006) ........................................................10

*Oficina de Asuntos Monopolísticos del Departamento de Justicia v. Abarca Health, LLC*,
   No. CC-2023-0773, 2025 WL 894419 ........................................................7

*In re Pork Antitrust Litig.*,
   665 F. Supp. 3d 967 (D. Minn. 2023) ........................................................7

*In re Processed Egg Prods. Antitrust Litig.*,
   851 F. Supp. 2d 867 (E.D. Pa. 2012) ........................................................10

*Respass v. Commonwealth*,
   115 S.W. 1131 (Ky. 1909) ........................................................8

*Ry. Co. v. Whitton's Adm'r*,
   80 U.S. (13 Wall.) 270 (1871) ........................................................5

*Hood ex rel. State v. BASF Corp.*,
   No. 56863, 2006 WL 308378 (Miss. Ch. Ct. Jan. 17, 2006) ........................................................9

*Superior Beverage Co. v. Schieffelin & Co.*,
   448 F.3d 910 (6th Cir. 2006) ........................................................5

*Tenn. Coal, Iron & R.R. Co. v. George,*
    233 U.S. 354 (1914) ........................................................................................6

*Tideway Oil Programs, Inc. v. Serio,*
    431 So. 2d 454 (Miss. 1983) ...........................................................................10

*Waller v. Moore ex rel. Quitman Cnty. Sch. Dist.,*
    604 So. 2d 265 (Miss. 1992) ...........................................................................10

*Wilborn v. Balfour,*
    67 So. 2d 857 (Miss. 1953) .............................................................................10

**Statutes**

10 L.P.R.A.
    § 259 ..............................................................................................................6, 7
    § 259(i)(f) ..........................................................................................................6
    § 259(a) .............................................................................................................6
    § 259(b) .............................................................................................................6
    § 259(d) .............................................................................................................6
    § 269 ..................................................................................................................6
    § 269 ..................................................................................................................6

15 U.S.c.
    § 15c .............................................................................................................2, 3
    § 15c(a)(1) .........................................................................................................2
    § 15c(b) .............................................................................................................2
    § 15e .................................................................................................................2
    § 26 .............................................................................................................2, 3

28 U.S.C. § 1652 .......................................................................................................6

Ark. Code Ann.
    § 4-75-315(a) ....................................................................................................3
    § 4-75-315(a) ....................................................................................................4
    § 4-75-315(b) ....................................................................................................3

Idaho Code Ann.
    § 48-108(1) .......................................................................................................4
    § 48-108(2) .......................................................................................................4

Ky. Rev. Stat. Ann.
    § 15.020(1) ........................................................................................................7
    § 367.170 ..........................................................................................................8
    § 367.175 ..........................................................................................................7
    § 367.190 ....................................................................................................7, 8, 9

Miss. Code Ann.
 § 11-45-11 .................................................................................................9
 § 75-21-7 ...................................................................................................9
 § 75-24-11 .................................................................................................9

## Other Authorities

7 Am. Jur. 2d Attorney General § 6 (2009) ...................................................8

The Court allowed additional supplemental briefing on issues specific to Arkansas, Idaho, Kentucky, Mississippi, and Puerto Rico.  Dkt. 841.  Plaintiff States answer as follows.

## A.    The Non-Jurisdictional Issues Google Raises Were Forfeited.

The parties negotiated a "compromise" summary judgment briefing schedule, affording Google 60 pages to make any arguments "address[ing] Plaintiffs' twenty federal and state antitrust claims," *not* including the statement of undisputed facts.  Dkt. 622.  The Court granted the parties' request.  Dkt. 627.  The arguments Google raised in its supplemental brief go to the merits and belong in its summary judgment motion.  Google argued that Arkansas law is narrower than federal law, and that the civil penalties are barred by statutes of limitations in some states, but otherwise argued only that state-law antitrust claims match federal law.  *See* Dkt. 674 at 50-53.  Google therefore forfeited its non-jurisdictional arguments.  *E.g.*, *Jamison v. McClendon*, 476 F. Supp. 3d 386, 418 (S.D. Miss. 2020) ("[F]ailure to raise the argument in his motions for summary judgment means he has forfeited its resolution at this juncture.").  The Court has discretion to consider Google's late arguments, but it also can simply dismiss the arguments as forfeited.

## B.    Arkansas and Idaho May Recover Civil Penalties and Seek Injunctive Relief.

Parens patriae, much like "jurisdiction," "is a word of many, too many, meanings." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 510 (2006) (citation omitted).  Google's argument rests on equivocating those meanings.  The first meaning concerns federal jurisdiction.  Under federal law, "[S]tates have at least four types of interests that, if injured, satisfy standing's first requirement: sovereign, quasi-sovereign, proprietary, or private."  Dkt. 788 at 3 (quoting *Harrison v. Jefferson Par. Sch. Bd.*, 78 F.4th 765, 769 (5th Cir. 2023)).  That is one context in which the Court (and the parties) have discussed the *capacities* in which States may bring suit: "States may also sue in multiple capacities, 'on behalf of themselves or in the interest of their residents in a parens patriae capacity.'"  *Id.* (quoting *Harrison*, 78 F.4th at 769).  Under federal law, "a State suing in a parens

patriae capacity must show that (1) it has suffered an injury to a quasi-sovereign interest, such as the economic well-being of its residents in general, and (2) a substantial segment of the State's population has been affected by the challenged conduct." Dkt. 788 at 27.

Second, parens patriae refers to a way of seeking certain *remedies*, which may be a state law question (for state law remedies) or a federal law question (for federal law remedies). Start with federal law. Federal law authorizes an "attorney general of a State [to] bring a civil action in the name of such State, as parens patriae on behalf of natural persons residing in such State . . . to secure monetary relief as provided in this section for injury sustained by such natural persons to their property . . . ." 15 U.S.C. § 15c(a)(1). Pursuing this remedy triggers certain procedures (such as notice and an opportunity to opt-out), and res judicata consequences for the "natural persons" who received notice and did not opt-out. *See id.* § 15c(b); *see also e.g., id.* § 15e (regarding distribution of damages). Plaintiff States are not seeking relief under this federal statutory parens patriae procedure, and so there will be no calculation of damages under it, notice to natural persons, or distribution to natural persons. Rather, they seek injunctive relief under 15 U.S.C. § 26, which *does not* say anything about parens patriae capacity. Yet it is beyond dispute that "a State suing in its parens patriae capacity qualifies as a 'person' under this section." Dkt. 788 at 9 (citing *Hawaii v. Standard Oil Co. of Cal.*, 405 U.S. 251, 261 (1972)). The point is not that § 26 is *really* a parens patriae remedy after all—clearly it is different from § 15c, since it does not require notice, opt-out, or other procedures. The point is that a state can have parens patriae *standing* to seek a particular *remedy* whether that remedy is labeled a "parens patriae" remedy or not. This is simply an application of the general principle that "[w]hether a party has a cause of action for a certain type of recovery and whether it has Article III standing are two separate inquiries." Dkt. 788, at 38

2

n.18.  That both the Article III standing label and the remedial label are the same *words* is occasionally confusing, but in substance immaterial.

Next consider state law.  Many states have no remedy labeled "parens patriae" *at all*. Others, such as Arkansas and Idaho, have statutory schemes that are conceptually similar to the federal scheme: a specifically labeled "parens patriae" remedy (with special procedures), and a more general regime without a specific label, and without special procedures.  Arkansas law provides that "[i]n addition to the other remedies provided in this subchapter" the "Attorney General may bring an action in the name of the state" for "a declaratory judgment," an "injunction" "actual damages or restitution," or "civil penalties."  Ark. Code Ann. § 4-75-315(a).  Much like 15 U.S.C. § 26, nothing in this section states that suits *must* be in any particular capacity.  Certainly claims are not limited to a *sovereign* capacity,[1] as Google argues, since it includes claims for "actual damages" the state suffered, which is usually considered proprietary or private.  There is no textual indication that the Arkansas legislature intended to limit what the Attorney General could do, much less that it sought to bar claims in a parens patriae capacity in federal court.

The next section provides, using language that is quite similar to 15 U.S.C. § 15c, that the "Attorney General also may bring a civil action in the name of the state, as parens patriae on behalf of natural persons residing in this state, to secure monetary relief . . . for injury, directly or indirectly sustained by those persons."  Ark. Code Ann. § 4-75-315(b).  Arkansas law provides for specific procedures, such as notice and an opportunity to opt-out, and res judicata consequences, as well as rules for distributing the monetary recovery.  *Id.*  This provision does not provide for

---

[1] Google's use of bold and italics implicitly argues that it believes the words "in the name of the state" equate to sovereign capacity, but there is no reason to read that concept into Arkansas law. In fact, the parens patriae remedy found in Ark. Code Ann. § 4-75-315(b) also contains the phrase "in the name of the state."  The more natural reading is that it specifies *who* is authorized to sue for Arkansas—the Attorney General, rather than another officer—and what the lawsuit caption should say—"Arkansas" rather than "Tim Griffin."

injunctions or civil penalties, and so of course Arkansas does not seek those remedies under this provision. But all that means is that—much like the federal-law analysis—Arkansas has parens patriae *standing* in federal court and the remedies it seeks in that capacity are authorized under subsection (a), which is not *labeled* parens patriae because it does not have the procedures associated with that state law remedial label. Again, as with federal law, it is somewhat confusing that the words are the same, but courts always must distinguish jurisdiction and remedies.

The same logic applies for Idaho. The text is virtually identical: "the attorney general may bring an action in the name of the state" for "a declaratory judgment," an "injunction" "actual damages or restitution," "civil penalties" or "divestiture." Idaho Code Ann. § 48-108(1). Just as with federal law, nothing in this section suggests it is meant to *forbid* suits based on quasi-sovereign injuries under Article III. The next subsection provides for suits "in the name of the state, as parens patriae on behalf of persons residing in this state, to secure monetary relief . . . for injury directly or indirectly sustained by those persons." *Id.* § 48-108(2). This subsection requires special procedures, such as notice, opt-out, res judicata consequences, and rules about distribution of monetary recovery. *Id.*

The multiplicity of meanings has at times sparked confusion in this case, but that should not obscure the bottom line, which is fairly clear: (1) Arkansas and Idaho allege quasi-sovereign injuries that support parens patriae standing in federal court;[2] (2) their state law authorizes injunctive relief and penalties, without limiting *how* or in what *capacity* the state can seek those remedies; (3) their state law also authorizes a procedurally complex way to recover monetary awards that the law labels "parens patriae," but neither State is seeking this remedy.

---

[2] The States also maintain that they have standing in their sovereign capacity, which the Court has not resolved and need not resolve.

**C.    The Court Has Jurisdiction Over Puerto Rico's Claims.**

Google now challenges the Court's jurisdiction over Puerto Rico's claims based on a venue restriction.  Previously, Google argued that Puerto Rico must bring its DTPA claims in a different *court*, not (as it argues now) the Department of Consumer Affairs. *See* Dkt. 672 at 16–20.  That argument is new, *see* Dkt. 835 at 59–60, but is just as mistaken as its old venue argument, *see* Dkt. 712 at 30–32.  This Court has jurisdiction over these claims.  Federal law determines this Court's jurisdiction over Puerto Rico's claims.  Google does not argue that federal supplemental jurisdiction is lacking.  Rather, it argues that *Puerto Rico* law bars this Court from granting any remedies, a proposition that defies basic federal jurisprudence and is wrong on Puerto Rico law.

Take federal jurisdiction first.  Case-after-case in different circuits and presenting different facts have consistently held that *federal* law determines *federal* jurisdiction, and that federal law preempts any attempt to confine that jurisdiction by fixing exclusive jurisdiction in a non-federal tribunal. "Whenever a general rule as to property or personal rights, or injuries to either, is established by State legislation, its enforcement by a Federal court in a case between proper parties is a matter of course, and the jurisdiction of the court, in such case, is not subject to State limitation." *Ry. Co. v. Whitton's Adm'r*, 80 U.S. (13 Wall.) 270, 286 (1871).  "Federal jurisdiction cannot be defeated by a state statute prescribing the court in which the action is to be brought." *Akin v. La. Nat'l Bank of Baton Rouge*, 322 F.2d 749, 754 (5th Cir. 1963).[3]  Federal courts

---

[3] *See also Gary A. v. New Trier High Sch. Dist. No. 203*, 796 F.2d 940, 945 (7th Cir. 1986) ("A state may not use state law to limit the jurisdiction of the federal courts."); *Superior Beverage Co. v. Schieffelin & Co.*, 448 F.3d 910, 917 (6th Cir. 2006) ("a state may not deprive a federal court of jurisdiction merely by declaring in a statute that it holds exclusive jurisdiction"); *Begay v. Kerr-McGee Corp.*, 682 F.2d 1311, 1315 (9th Cir. 1982) ("[S]tate law may not control or limit the diversity jurisdiction of the federal courts. . . .  Pursuant to the supremacy clause, section 1332(a) preempts any contrary state law."); *Blanyar v. Genova Prods. Inc.*, 861 F.3d 426, 431 n.5 (3d Cir. 2017) ("state substantive law cannot deprive a federal court of its diversity jurisdiction"); *Atlas R.R. Const. Co. v. Columbus & Greenville Ry. Co.*, 190 F. Supp. 2d 908, 910 (N.D. Miss. 2002)

exercising diversity or supplemental jurisdiction are empowered to adjudicate using non-federal law, *see* 28 U.S.C. § 1652, and that power cannot be nullified by a non-federal venue limitation. Such restrictions are disregarded, and federal courts consider only the substantive rights and remedies. "[J]urisdiction is to be determined by the law of the court's creation, and cannot be defeated by the extraterritorial operation of a statute of another state, even though it created the right of action." *Tenn. Coal, Iron & R.R. Co. v. George*, 233 U.S. 354, 360 (1914).

Google's argument is wrong on Puerto Rico law too. Puerto Rico Laws, title 10, subsection 259(i)(f) outlines the Department of Consumer Affairs ("DACO") as an administrative forum to adjudicate cases, which later undergo judicial review under subsection 259(d). This framework does not bar the Office of Monopolistic Affairs (the "OMA") from pursuing remedies for DTPA violations in court, as authorized under subsections 259(a) and (b). Moreover, Puerto Rico law vests the local court "with jurisdiction to prevent, prohibit, enjoin and punish violations, and to obtain such other or further relief as may be appropriate" *id.* § 269. *See also* Fourth Am. Compl. ("FAC") ¶¶ 743, 773 (invoking § 259 and § 269). No provision *prohibits* other tribunals from adjudicating disputes or awarding penalties if appropriate, even though a later paragraph of the same section *does* grant exclusive jurisdiction on other matters. *Compare* 10 L.P.R.A. § 269 ¶ 2 (giving "exclusive jurisdiction" over "criminal proceedings,") *with* ¶ 1 (no exclusive jurisdiction).

Google's cases are inapposite because they address procedures that must be followed when the OMA presents a case before DACO, which later undergoes judicial review. *See Aguadilla Paint Ctr. v. Esso*, 2011 WL 6759549, 183 D.P.R. 901, 83 P.R. Offic. Trans. 44 (P.R. 2011) (expressly stating that DACO's jurisdiction to decide on DTPA cases and penalties is

---

("It is axiomatic that federal diversity jurisdiction cannot be affected, restricted, or defeated by state legislation giving state courts exclusive jurisdiction over the matter involved."); *Becknell Dev., L.L.C. v. Linamar Corp.*, No. 07 C 5455, 2008 WL 576334, at *5 (N.D. Ill. Feb. 28, 2008) (exercising supplemental jurisdiction despite a state-law limitation).

notwithstanding the remedies authorized under sections 259 and 269); *Cemex de Puerto Rico, Inc. v. Terrassa Concrete Indus., Inc.*, No. D CD2010-2285, 2024 WL 2332605, at *3 (P.R. Cir. Apr. 26, 2024) (which did not concern claims brought by the OMA under 10 L.P.R.A. § 259).

Finally, those cases do not constrain this Court's jurisdiction over these claims under federal law. Google relies on *Oficina de Asuntos Monopolísticos del Departamento de Justicia v. Abarca Health, LLC*, No. CC-2023-0773, 2025 WL 894419, at *8–9, 2025 TSPR 23 (2025), but that case addressed only which court could properly exercise *judicial review* of an administrative decision by DACO, not whether a claim could be brought in federal court. *See id.* at *3. There is no legal authority addressing *federal* courts that support Google's argument. To the contrary, Puerto Rico has brought successful Puerto Rico Antitrust Act suits in federal court. *See, e.g.*, *In re Pork Antitrust Litig.*, 665 F. Supp. 3d 967 (D. Minn. 2023).

## D.    Kentucky Can Seek Injunctive Relief Under Its Common Law.

To be clear, Kentucky does not rely on the common law for its injunction request under the Commonwealth's Consumer Protect Act. Rather, there is a specific statute authorizing courts to enjoin CPA violators. *See* Ky. Rev. Stat. Ann. § 367.190. Kentucky seeks that statutory remedy.

Kentucky also requests that this Court enjoin Google from violating the Commonwealth's antitrust statute (Ky. Rev. Stat. Ann. § 367.175) under Kentucky common law. *See* FAC ¶¶ 639(b), 766(b). Under Kentucky law, the "Attorney General is the chief law officer of the Commonwealth of Kentucky . . . and shall exercise all common law duties and authority pertaining to the office of the Attorney General under the common law, except when modified by statutory enactment." Ky. Rev. Stat. Ann. §15.020(1). The Kentucky Supreme Court has said there is "no doubt that the Attorney General of the Commonwealth of Kentucky has standing to seek injunctive relief on behalf of the citizens of the Commonwealth." *Commonwealth ex rel. Conway v. Thompson*, 300 S.W.3d 152, 172 (Ky. 2009), *corrected* (Jan. 4, 2010). This is because, "under the common law,

the attorney general has the power to bring *any action* which he or she thinks necessary to protect the public interest, a broad grant of authority which includes the power to act to enforce the [Commonwealth's] statutes." *Id.* at 173 (emphasis added) (quoting 7 Am. Jur. 2d Attorney General § 6 (2009)) (cleaned up).

*Thompson* did not break new ground. For over a century, Kentucky courts have recognized the Attorney General's ability to seek a common-law injunction. *See, e.g.*, *Hancock v. Terry Elkhorn Mining Co.*, 503 S.W.2d 710, 720 (Ky. 1973) (recognizing the authority to seek an injunction to enjoin a public nuisance); *Commonwealth v. Ky. Jockey Club*, 38 S.W.2d 987 (Ky. 1931) (recognizing the authority to seek an injunction for violations of "criminal or penal statutes . . . involving the use of property, or the breach of contracts"); *Respass v. Commonwealth*, 115 S.W. 1131, 1132 (Ky. 1909) (recognizing the authority to enjoin a public nuisance).

That Kentucky has a statute (Ky Rev. Stat. Ann. § 367.190) that provides for injunctive relief for violations of its consumer protection statute (Ky. Rev. Stat. Ann. § 367.170) does not mean that injunctions are otherwise unavailable under common law authority to stop other statutory violations. For over a century, courts have recognized parties' right to seek common-law injunctive relief. *See Kelley v. Pulaski Stave Co.*, 105 S.W. 153, 154–55 (Ky. 1907) (O'Rear, C.J., in chambers) (holding that statutes and rules did "not abolish the common-law jurisdiction attaching to courts of equity to grant injunctions in such matters as those courts have granted from ancient times"); *see also Irvin v. Picket*, 6 Ky. 343, 345 (1814). Statutory injunctions are distinct from common-law injunctions. "[W]here there is an adequate and complete remedy at law, a suit for [a common-law] injunction cannot ordinarily be sustained." *Collins v. Commonwealth*, 324 S.W.2d 406, 409 (Ky. 1959) (citation omitted). In addition, a party seeking a common-law injunction must show irreparable harm. *Boone Creek Props., LLC v. Lexington-Fayette Urban*

8

*Cnty. Bd. of Adjustment*, 442 S.W.3d 36, 39-40 (Ky. 2014). But for a statutory injunction sought by the Attorney General, those requirements disappear. *See Commonwealth ex rel. Chandler v. Anthem Ins. Cos.*, 8 S.W.3d 48, 55 (Ky. Ct. App. 1999) (citation omitted). The difference between a statutory injunction and one issued under the common law shows the continued viability of common-law injunctions. There would be no reason for statutes like section 367.190 to change the typical requirements for injunctive relief if the common-law injunction disappeared with the relatively recent invention of the statutory injunction. Nor would courts continue to require the traditional showings for a common-law injunction if such relief were not available in Kentucky.

## E.    Mississippi Can Seek Disgorgement and Restitution.

Mississippi is expressly authorized to recover restitution and disgorgement for CPA violations under Mississippi Code section 75-24-11. Mississippi antitrust law also provides that the Attorney General may bring a suit for forfeiture under section 75-21-7. In addition, Mississippi law entitles the State to all forms of relief and "all remedies to which individuals are entitled . . . ." Miss. Code Ann. § 11-45-11. Therefore, Mississippi seeks disgorgement and restitution under both statutory and common law authority. The Attorney General is a constitutional officer of the State, possessing all power and authority "to institute, conduct and maintain all suits necessary for the enforcement of the laws of the state, preservation of order and the protection of public rights." *Gandy v. Rsrv. Life Ins. Co.*, 279 So. 2d 648, 649 (Miss. 1973).

Focusing on the common law, there are at least two lines of cases supporting Mississippi. The seminal case in Mississippi for restitution under the State's antitrust act is *Hood ex rel. State v. BASF Corp.*, No. 56863, 2006 WL 308378 (Miss. Ch. Ct. Jan. 17, 2006). There, the Mississippi Attorney General brought a parens patriae action for violating both the CPA and the antitrust statute. As it explained, restitution is sometimes the only possible remedy when one party has ill-gotten funds. *Id.* Thus, restitution must be available under the common law for the State to seek

when it proceeds as parens patriae.[4]  This right was acknowledged and not disputed by the United States Supreme Court in *Mississippi ex rel. Hood v. AU Optronics Corp*., 571 U.S. 161, 164 (2014) (addressing jurisdiction).  In *BASF*, as here, the Attorney General proceeded only in a parens patriae capacity—not a representative capacity.  Applying *BASF*'s holding is also consistent with the requirement that "the Mississippi Antitrust Act shall be liberally construed in all courts to the end that trusts and combines may be suppressed, and the benefits arising from competition in business preserved to the people of this state."  *In re Processed Egg Prods. Antitrust Litig.*, 851 F. Supp. 2d 867, 890 n.20 (E.D. Pa. 2012) (cleaned up).

Second, general principles of equity allow for courts to award restitution. Even without express statutory authority, "[a] court of equity . . . will make restitution" when necessary. *Tideway Oil Programs, Inc. v. Serio*, 431 So. 2d 454, 461 (Miss. 1983) (quoting *Wilborn v. Balfour*, 67 So. 2d 857, 863 (Miss. 1953)). *See also Waller v. Moore ex rel. Quitman Cnty. Sch. Dist.*, 604 So. 2d 265, 265 (Miss. 1992).  Here, it is possible calculate—based on expert testimony—the amount of ill-gotten profits Google made from their monopolistic behaviors.  It is thus possible to restore the status quo; disgorgement and restitution are available under both Mississippi common law and statutory authority.

**CONCLUSION**

The Court should deny Google's motion.

---

[4]See *Hood ex rel. Mississippi v. Microsoft Corp*., 428 F. Supp. 2d 537, 545–46 (S.D. Miss. 2006) (Attorney General had parens patriae authority to bring damages claim on behalf of natural persons).

DATED: April 24, 2025

Respectfully submitted,

/s/ *W. Mark Lanier*

/s/ *Ashley Keller*

W. Mark Lanier
Mark.Lanier@LanierLawFirm.com
Alex J. Brown
Alex.Brown@LanierLawFirm.com
Zeke DeRose III
Zeke.Derose@LanierLawFirm.com
Jonathan P. Wilkerson
Jonathan.Wilkerson@LanierLawFirm.com
10940 W. Sam Houston Pkwy N.
Suite 100
Houston, TX 77064
(713) 659-5200

Ashley Keller
ack@kellerpostman.com
Kiran N. Bhat
kiran.bhat@kellerpostman.com
2333 Ponce De Leon Boulevard
Suite R-240
Coral Gables, Florida 33134
(833) 633-0118

Zina Bash (Bar No. 24067505)
zina.bash@kellerpostman.com
111 Congress Avenue, Suite 500
Austin, TX 78701
(512) 690-0990

**THE LANIER LAW FIRM, PLLC**

/s/ *Noah S. Heinz*

Noah S. Heinz
noah.heinz@kellerpostman.com
1101 Connecticut Ave., N.W., Suite 1100
Washington, DC 20036
(202) 918-1123
**KELLER POSTMAN LLC**

*Counsel for Texas, Idaho, Louisiana (The Lanier Law Firm only), Indiana, Mississippi, North Dakota, South Carolina, and South Dakota*

*Submitted on behalf of the five Plaintiffs at issue*

**NORTON ROSE FULBRIGHT US LLP**
Joseph M. Graham, Jr.
joseph.graham@nortonrosefulbright.com
Geraldine Young
geraldine.young@nortonrosefulbright.com
1550 Lamar Street, Suite 2000
Houston, Texas 77010
(713) 651-5151

Marc B. Collier
Marc.Collier@nortonrosefulbright.com
98 San Jacinto Blvd., Suite 1100
Austin, Texas 78701
(512) 474-5201

FOR PLAINTIFF STATE OF TEXAS

KEN PAXTON
Attorney General

*/s/ Brent Webster*
Brent Webster, First Assistant Attorney General of Texas
Brent.Webster@oag.texas.gov

**STATE OF TEXAS, OFFICE OF THE ATTORNEY GENERAL**
P.O. Box 12548
Austin, TX 78711-2548
(512) 936-1674

*Attorneys for Plaintiff State of Texas*

FOR PLAINTIFF STATE OF ARKANSAS:

TIM GRIFFIN
ATTORNEY GENERAL


By: _____
AMANDA J. WENTZ
Ark. Bar No. 2021066
Assistant Attorney General
Office of the Arkansas Attorney General
323 Center Street, Suite 200
Little Rock, AR 72201
(501) 682-1178
Amanda.Wentz@ArkansasAG.gov

*Attorney for Plaintiff State of Arkansas*

FOR PLAINTIFF STATE OF IDAHO:

RAÚL R. LABRADOR
Attorney General

*/s/ John K. Olson*
John K. Olson, Deputy Attorney General

Consumer Protection Division
Office of the Attorney General
954 W. Jefferson Street, 2nd Floor
P.O. Box 83720
Boise, Idaho 83720-0010
Telephone:   (208)   334-2424
john.olson@ag.idaho.gov

*Attorneys for Plaintiff State of Idaho*

FOR PLAINTIFF COMMONWEALTH OF KENTUCKY:

RUSSELL COLEMAN
Attorney General

*/s/ Philip R. Heleringer*
Christian J. Lewis, Commissioner of the Office of Consumer Protection
christian.lewis@ky.gov
Philip R. Heleringer, Executive Director of the Office of Consumer Protection
philip.heleringer@ky.gov
Jonathan E. Farmer, Deputy Executive Director of the Office of Consumer Protection
jonathan.farmer@ky.gov
Office of the Attorney General
Commonwealth of Kentucky
1024 Capital Center Drive, Suite 200
Frankfort, Kentucky 40601
Tel: 502-696-5300

*Attorneys for Plaintiff Commonwealth of Kentucky*

FOR PLAINTIFF STATE OF MISSISSIPPI:

LYNN FITCH, ATTORNEY GENERAL
STATE OF MISSISSIPPI

By:    */s/ Garrett S. Mascagni*
       Garrett S. Mascagni
       Special Assistant Attorney General
       Consumer Protection Division
       Mississippi Attorney General's Office
       Post Office Box 220
       Jackson, Mississippi 39205
       Telephone: 601-359-4223
       Fax: 601-359-4231
       Garrett.Mascagni@ago.ms.gov

       *Attorney for Plaintiff State of Mississippi*

FOR PLAINTIFF COMMONWEALTH OF PUERTO RICO:

*/s/ Domingo Emanuelli-Hernández*
Domingo Emanuelli-
Hernández Attorney General
Thaizza Rodríguez Pagán
Assistant Attorney
General PR Bar No.
17177
P.O. Box 9020192
San Juan, Puerto Rico 00902-0192
Tel: (787) 721-2900, ext. 1201, 1204
trodriguez@justicia.pr.gov

Kyle G. Bates
HAUSFELD LLP
600 Montgomery Street, Suite 3200
San Francisco, CA 94111

*Attorneys for Plaintiff Commonwealth of Puerto Rico*

**<u>CERTIFICATE OF SERVICE</u>**

I certify that on April 24, 2025, this document was filed electronically in compliance with

Local Rule CV-5(a) and served on all counsel who have consented to electronic service, per Local

Rule CV-5(a)(3)(A).

> */s/ Ashley Keller*
> Ashley Keller