IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| THE STATE OF TEXAS, et al., | § § § | |
| Plaintiffs, | § | |
| v. | § | Civil Action No. 4:20-cv-00957-SDJ |
| | § | |
| GOOGLE LLC, | § § | |
| Defendant. | § § | |

**DEFENDANT GOOGLE LLC'S VERIFIED MOTION FOR CONTINUANCE AND CONFERENCE REQUEST**

TO THE HONORABLE SEAN JORDAN, UNITED STATES DISTRICT JUDGE:

In the wake of the Court's Order specifying issues to be tried to the Court and to the jury, ECF 854 ("Jury Order"), and in light of the upcoming remedies trial in the DOJ case pending in the Eastern District of Virginia (the "Virginia DOJ Proceeding"), Defendant Google LLC respectfully moves for a continuance of the August 11 liability trial date. In Part II, below, Google identifies issues it believes are appropriate for consideration at the upcoming conferences suggested by the Court, on a schedule convenient to the Court.

**I.    Verified Motion for Continuance.**

1.    Google moves to continue the August 11 liability trial date. It respectfully requests that the Court adjourn the liability trial setting to a date 60 days after the Hon. Leonie Brinkema issues a final judgment after the September 22 remedial trial in the Virginia DOJ proceeding. This motion is supported by the Declaration of Eric J. Mahr, attached as Ex. A.

1

2. In deciding whether to grant a continuance, "the Court's 'judgment range is exceedingly wide,' for it 'must consider not only the facts of the particular case but also all of the demands on counsel's time and the court's.'" *Konrick v. Exxon Mobil Corp.*, 2015 WL 13532722 at *1 (E.D. La. 2015) (Vance, J.) (quoting *Streber v. Hunter*, 221 F.3d 701, 736 (5th Cir. 2000)). A continuance is warranted here. Plaintiffs are now proposing a trial schedule here that overlaps with the September 22 remedies trial in the Virginia DOJ proceeding. A continuance would avoid the prejudice and inefficiency created by the collision of two trials proceeding at once, with witnesses rendered unavailable for one case or the other. Principles of federal sovereignty, mootness, unredressability, judicial economy, and the need to mitigate the risk of inconsistent liability findings also support a continuance. A continuance would also allow this Court to set an orderly sequence for the trial of liability and, if necessary, penalties and equitable relief once judgment has been entered in the Virginia DOJ proceeding. That sequence would afford the federal remedial trial its required priority, and it would permit this Court to assess whether any relief granted in the Virginia judgment renders moot or unredressable some or all of the relief Plaintiffs seek here.

### A. Collision with the Virginia Remedies Trial.

3. First, the trial schedule here and the September 22 remedies trial in Virginia DOJ Proceeding are now on a collision course. On June 25, 2025, the Plaintiff States sent Google their "Proposed Trial Management Procedures." *See* Mahr Decl. ¶ 2. In pertinent part, Plaintiffs' trial proposal states that:

> For the *liability* portion of the state antitrust claims and DTPA claims to be determined by a jury, and the federal antitrust claims to be determined by Judge Jordan, the Plaintiffs believe this trial will last approximately four (4) to five (5) weeks. Specifically, the Plaintiffs believe if a jury is picked on Monday August 11th, [the liability trial] *will conclude with closing statements on Friday, September 12th*….For the bench trial of the DTPA civil penalties portion, the Plaintiffs believe this trial will last approximately one (1)

2

week. If the jury finds there is liability for DTPA claims, *Plaintiffs' propose continuing straight into this portion of the trial immediately following a verdict.*

*See* Mahr Decl., Ex. 1 at A.1, ¶¶1–2 (emphasis added).

4.     Google does not believe the Court can or should proceed "straight into" a decision on penalties (as Plaintiffs propose) before it first decides—as Rule 50 requires—whether there is a "legally sufficient evidentiary basis" for any jury finding of liability. *See* Fed. R. Civ. P. 50(a)(1). In addition, a one-week bench trial does not afford adequate time for the Court to determine how many DTPA violations occurred[1] and what, if any penalties are warranted to address them, particularly here where Plaintiffs have asserted their intent to seek *over $100 billion* in penalties. *See* Mahr Decl. ¶¶ 5–6. The law is plain that any penalties assessed must be shown (on the evidence during the bench trial) to be proportionate to the harm Plaintiffs prove. *See generally* DTPA MSJ (ECF 672) at Part V.B. pp. 29–37 (discussion required proof of harm and proportionality of penalties to harm given the requirements of the Due Process and Excessive Fines clauses of the Constitution).

5.     But Plaintiffs' own proposal leaves no room for dispute: *their* estimated trial schedule (when deliberations are included) overruns and encroaches into the September 22 remedies trial set in the Virginia DOJ proceeding. *See* Mahr Decl. ¶¶ 2–3. Here's why: Plaintiffs now propose a four- to five-week liability trial with closing arguments on September 12, 2025, Mahr. Decl., Ex. 1, after which the jury will need to deliberate on as many as 27 separate statutory claims challenging seven or more alleged deceptive acts and practices for each. Following

---

[1] Proof of the number of violations Google committed is not an element required to prove *liability* under any state's DTPA or antitrust statute. *See* Jury Order, App'x 2 (cataloging elements of liability claims for each State's DTPA and antitrust statute). Instead, the number of violations is at issue only as to the amount of penalties, an issue the Court must decide under *Tull*. *See generally id.* at 137–140 and App'x 2. Plaintiffs dispute this, claiming the jury (which has no role to play in the amount of penalties) should nevertheless determine the number of violations—a fact relevant *only* to the determination of the *amount* of penalties.

3

deliberations that will almost certainly stretch into the week of September 15, 2025, "if the jury finds liability," Plaintiffs propose that the Court continue "straight into" a "one week" penalty trial. *Id.* ¶ 2 and Ex. 1.

6. This schedule cannot work. Under Plaintiffs' trial proposal, deliberations will likely occur during the week of September 15. *Id.* This necessarily means that the "one week" penalty trial Plaintiffs propose *will* invade the week of September 22—when the DOJ remedies trial is set to begin. *Id.* A continuance is warranted to avoid this collision. Resetting this trial to a date 60 days after judgment is entered in the Virginia DOJ proceeding will eliminate the risk that this Court's jury trial will trench into the remedies trial in Virginia.

### B. Priority of United States' Claims and Sound Judicial Administration.

7. There are additional, substantive reasons for a continuance. In Virginia, the DOJ sued on behalf of the United States to enforce the federal antitrust laws. That action has absolute priority over the claims at issue here, where the States (proceeding in their *parens patriae* capacity, subordinate to the federal sovereign) seek only injunctive relief under federal law. As the Fifth Circuit explained, "the United States has an interest in enforcing federal law that is independent of any claims of private citizens." *Equal Opp. Emp. Comm'n. v. East Baton Rouge Parish Sch. Bd.*, 594 F.2d 56, 58 (5th Cir. 1979) (quoting *United States v. Raines*, 362 U.S. 17 (1960) (holding that the United States' interest in enforcing its own laws is "the highest public interest in the due observance of all constitutional guarantees")); *see also Sec'y of Labor v. Fitzsimmons*, 805 F.2d 682, 692 (7th Cir. 1986) (noting that "the government enjoys special status in antitrust cases in order that it might ensure proper freedom in the market").

8. Important principles are implicated by "situations involving the contemporaneous exercise of concurrent jurisdictions, either by federal courts or by state and federal courts. These

4

principles rest on considerations of 'wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.'" *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976) (quoting *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183 (1975)). Federal courts are meant to avoid inconsistent adjudications for reasons of judicial economy, comity, and to encourage reliance on adjudication. *See generally Allen v. McCurry*, 449 U.S. 90, 94 (1980) (citing *Montana v. United States*, 440 U.S. 147, 153–54 (1979)). To proceed to trial here in August would contravene each of these principles.

9.  At this very moment, Google's antitrust liability for claims related to its Ad Tech stack is being adjudicated in no fewer than three federal courts. *See* Mahr Decl. ¶ 4. Each case is at an inflection point that creates a concrete risk of inconsistent adjudication, especially if Google prevails at trial here. It does not serve judicial economy, and it risks inconsistent adjudication, for this court to undertake a trial of liability in these circumstances.

**C.    Possible Mootness and Unredressability.**

10.  Third, the Court now confronts important issues related to the possible mootness of some or all of the remedies Plaintiffs seek. Mootness has been described as the doctrine of "standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." *Ctr. for Biological Diversity, Inc. v. BP Am. Prod. Co.*, 704 F.3d 413, 425 (5th Cir. 2013) (cleaned up). "Mootness applies when intervening circumstances render the court no longer capable of providing meaningful relief to the plaintiff." *Id.* "If a case has been rendered moot, a federal court has no constitutional authority to resolve the issues that it presents." *Umphress v. Hall*, 133 F.4th 455, 469 (5th Cir. 2025). The doctrine of redressability assesses the "likelihood that the requested relief

5

will redress the alleged injury." *Creekmore v. Att'y Gen. of Texas*, 116 F. Supp. 2d 767, 775 (E.D. Tex. 2000) (quoting *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 102-03 (1998)).

11.     Plaintiffs here seek exclusively equitable relief for their federal antitrust claims. Jury Order at 23–24. They also seek injunctive relief for their State antitrust claims. In Virginia, the injunctive and remedial relief the DOJ seeks is now of record. *See* E.D. Va. ECF 1430 (DOJ Remedies Proposal). Though opposed vigorously by Google, the DOJ seeks expansive divestiture relief including "AdX Divestiture," *id.* at 8; "Phased Divestiture of DFP [Doubleclick for Publishers]," *id.* at 9; the opening of Google's stack to "all third-party ad tech tools," *id.* at 12; bid-routing remedies, *id.*; a mandate that "Google's buyside tools (AdWords and DV360) should be prohibited from receiving bid requests or providing bids directly into AdX or DFP and must instead access AdX or DFP inventory only through a third-party exchange or API," *id.* at 12; and other behavioral remedies.[2] If granted, this sweeping relief could render moot the divestiture and behavioral injunctive remedies the States seek here. Further, while Google won on the DOJ's liability claim as to Google's advertiser tools, it is possible that the remedies ordered in Virginia (particularly as to Google's ad exchange) could foreclose (or make unredressable) the structural injunctive remedies the States seek for their claims relating to Google's advertiser tools. Indeed,

---

[2] Google has argued (and will continue to argue) in Virginia that the relief sought by the DOJ cannot be reconciled with, among others, the Supreme Court's decisions in *Verizon Commc'n Inc. v. Law Offices of Curtis V. Trinko*, 540 U.S. 398 (2004) and *Pacific Belle Tel. Co. v. LinkLine Commc'ns, Inc.* 555 U.S. 438, 448 (2009). As Justice Scalia explained for the Court at length in *Trinko*, "as a general matter, the Sherman Act 'does not restrict the long recognized right of a trader or manufacturer engaged in an entirely private business, freely to exercise *his own independent discretion as to parties with whom he will deal*.'" 540 U.S. at 408 (emphasis added) (quoting *United States v. Colgate & Co.*, 250 U.S. 300, 307 (1919)). And as Chief Justice Roberts explained for the Court in *LinkLine*, "*Trinko* thus makes clear that if a firm has no antitrust duty to deal with its competitors at wholesale, *it certainly has no duty to deal under terms and conditions that the rivals find commercially advantageous*." 555 U.S. at 450. The relief the DOJ seeks would also have the district courts oversee, through "enforced sharing … , the proper price, quantity, and other terms of dealing—a role for which they are ill-suited." *Trinko*, 540 U.S. at 408.

the DOJ's proposal includes mandates as to the way Google's advertiser tools, Google Ads and DV360, will be required to bid into sell-side tools, relief that would preclude any *different* remedial order by this Court, even if it found liability on the States' federal antitrust claims. *See, e.g.*, *Chamber of Commerce v. Fed. Trade Comm'n*, 732 F. Supp. 3d 674, 677 (E.D. Tex. 2024) ("'[C]ourts of coordinate jurisdiction and equal rank' must take 'care to avoid interference with each other's affairs' … avoid 'duplication [and] rulings which may trench upon the authority of sister courts.'") (quoting *W. Gulf Maritime Ass'n v. Int'l Longshoremen's Deep Sea Local 24*, 751 F.2d 721, 728 (5th Cir. 1985)).

12. Google intends to appeal the Virginia decision. But before this Court dedicates a month of its own time (and the time of a jury to decide state antitrust liability) an adjournment of the trial here is warranted. Continuing this trial will avoid the clear prospect that this Court (and the jury) may spend a month evaluating antitrust liability claims only to find that equitable relief sought in those claims has been rendered moot or unredressable by the Virginia judgment. It does not serve judicial economy for this Court to devote additional time to conduct a bench trial to determine equitable remedies for the antitrust claims, if those remedies are likewise rendered moot by the Virginia judgment.

### D. Prejudice

13. Finally, Google will suffer prejudice if a continuance is not granted. *See* Mahr Decl. ¶¶ 5–6. Many of the trial witnesses Google intends to offer at the current August trial setting are urgently needed to prepare for and provide expected trial testimony at the Virginia remedies proceeding. *Id.* ¶ 3. If, as Plaintiffs' schedule contemplates, those witnesses must appear in Texas during the bench trial "continuing straight into" penalties sometime during the week of September 15 (or even later, depending on the length of jury deliberations), *cf. id.* Ex. 1, then those trial

7

witnesses may be unable to appear to testify in the Virginia DOJ remedies trial that begins September 22. *Id.* ¶ 3. Likewise, once the Virginia proceeding commences, the same witnesses may be unavailable to appear at the penalties trial here if, as seems certain, this Court's assessment of the amount of penalties continues *into* or *after* the week of September 22. *Id.* ¶¶ 3, 5.

14. The conflict in these two trial proceedings—one in Virginia and one in Texas—during and around the same weeks in September warrants a continuance. Plaintiffs' trial length proposal would now require critical Google witnesses to be in two places at once and to be saddled with preparing for and giving trial testimony across two matters simultaneously. *Id.* ¶¶ 3, 5–6. "The granting of a continuance to allow material witnesses an opportunity to testify is a matter within the sound discretion of the trial judge." *DeVargas v. Brownell*, 251 F.2d 869, 871 (5th Cir. 1958) (Wisdom, J.). It is unfairly prejudicial to Google to have crucial witnesses pulled in two directions at once (or rendered unavailable to testify in one trial or the other), given the stakes in each of these proceedings, Mahr Decl. ¶ 5; namely, a demand for the divestiture of businesses in which Google has invested billions of dollars in Virginia, an identical demand for divestiture in Texas, *plus* a demand for over $100 billion in penalties.

15. For all these reasons, a brief adjournment of the trial date to a date 60 days after the Virginia judgment is entered will Google's witnesses to testify in both proceedings. It will also allow time for the entry of judgment in Virginia so this Court can assess what, if any, remedies remain redressable and are not moot. Google therefore respectfully requests that the Court grant its Verified Motion for Continuance.

## II. Request for Rule 16(c) Conference.

16. At the November 12, 2024 hearing, the Court indicated its intention to convene a Rule 16 conference to delineate the elements of the States' claims they must prove at trial. *See* Tr. Hrg. 11/12/2024 ("once the MSJs have been ruled on, and assuming that after they've been ruled on we have claims remaining, claims going forward along these lines, I agree with you that before the trial starts, the Court will have to resolve as a matter of law these issues for any such remaining claims so that everybody knows what the proof needs to look like or has to look like before we get into trial"); *see also* Fed. R. Civ. P. 16(c)(2) ("At any pretrial conference, the court may consider and take appropriate action on the following matters: (A) formulating and simplifying the issues … (L) adopting special procedures for managing … difficult legal questions, or unusual proof problems, … (N) ordering the presentation of evidence early in the trial on a manageable issue that might, on the evidence, be the basis for a judgment as a matter of law under Rule 50(a) or a judgment on partial findings under Rule 52(c).").

17. The August 11 trial date is 42 days from now. Before the jury is seated, the Court has before it important unresolved issues including: a) whether the States must prove the facts demonstrating their claimed *parens patriae* standing at trial, b) what facts the States must prove to support their pleaded DTPA theories, and c) what proof they must offer of individualized harm, both to establish standing and to prevail on liability. Thus far, the States have asserted (wrongly) that they can prove DTPA liability (and obtain billion-dollar penalties at the penalty phase) without any obligation to prove that any individual advertiser or publisher was injured by Google's actions. *Compare* Google DTPA MSJ at 3 ("The U.S. Constitution and DTPAs do not permit the States to obtain penalties without proof of *actual* and *individualized* harm, but the States' proof consists only of *hypothetical* and *aggregated* harms.") and *id.* at 9–10 (noting that Plaintiffs' expert witness,

9

Dr. Matthew Weinberg, "cannot identify even one ad buyer or ad seller that was harmed or deceived by Google's conduct, nor one that joined the so-called 'Google ecosystem' because of allegedly deceptive actions, nor even 'any particular ad impression that I know was impacted by the deceptive elements' of Google's optimizations.") (citing testimony), *with e.g.*, States' DTPA MSJ Resp. (ECF 712) at 42 (arguing that "individualized proof of harm is *not* a prerequisite to recover civil penalties") (emphasis original); *see also* Google DTPA MSJ at 30–32 (arguing that Due Process and state law prohibit the award of penalties without individualized proof of harm).[3]

18. Separately, the parties' compliance at trial with the Court's Jury Order—and the separation it requires between the jury's adjudication of liability and this Court's determination of the amount of penalties (if liability is found)—would be assisted by guidance from the Court about how it believes those adjudications should be sequenced and how they relate to the further equitable relief decisions this Court may also be required to make, again if liability is found.

19. For example, in its Jury Order, the Court ruled that the Supreme Court's *Tull* decision "remains binding precedent and mandates that the quantum of civil penalties be decided by courts, not juries." Jury Order at 139. In discussions of the trial procedures, Plaintiffs have sought to unwind this clear ruling by maintaining that the number of violations is an issue to be determined by the jury. Not a single state DTPA or antitrust statute requires proof of the *number* of violations committed as an element required to prove liability. *See* Jury Order App'x 2 (summarizing liability provisions of all relevant state statutes). Instead, in every state, the number of violations is relevant *only* to determine the quantum of permissible penalties, *see id.*

---

[3] Three states have also filed motions to reconsider the Court's Jury Trial Order. *See* ECF 855 (Mtn. to Reconsider by Arkansas and Idaho) and ECF 856 (Mtn. to Reconsider by South Dakota). Each of these serial filings seeks reconsideration of issues these States had a full and fair opportunity to brief. Notably, none cites any change in the law or other ground that would support reconsideration of the Court's lengthy, highly detailed opinion that considered the grounds raised (again) exhaustively in resolving the original motion.

(summarizing the amount of "per violation" penalties a court may award)—an issue the Court has ruled it alone must decide. A conference to discuss this issue would clarify matters for the parties, as it affects which witnesses will—and will not—be required for the liability trial.

20. Another issue on which the Court's guidance would be helpful is the trial *sequence* and timing. In its Jury Order, the Court ruled that in its bench trial of liability *and* in assessing the amount of penalties, the *Dairy Queen* decision requires the Court to give effect to the jury's decision on liability issues. Jury Order at 12–14, 23, and 31. Before the jury's findings can be "given effect," the Court must first determine whether they are supported by "a legally sufficient evidentiary basis" or whether, instead, a new trial, Fed. R. Civ. P. 50(c), or a judgment as a matter of law, Fed. R. Civ. P. 50(a)(1) and 50(b), is warranted. Rule 50 contemplates a window of 28 days after the jury is dismissed for the Court to assess these matters. *See* Fed. R. Civ. P. 50(b). Plaintiffs' trial management proposal ignores this, urging that the Court should plunge "straight into" a determination of penalties immediately upon the verdict, *before* it determines whether a "legally sufficient evidentiary basis to find for the party on that issue," Rule 50(a), exists. Respectfully, Plaintiffs have the sequence of proof backwards. The *quantum* of any penalties to be awarded *depends on* competent liability findings supported by legally sufficient evidence. It would be helpful to know the Court's views on this issue, as it affects the scheduling of penalty-phase lay and expert witnesses.

21. Finally, the parties' trial planning would be aided by clarity on the pending motions, the decisions on which will affect which witnesses—and which issues—will be presented to the jury at trial. If the Court wishes to set hearings to discuss any of those motions, Google will of course make itself available.

11

Dated: June 30, 2025

Respectfully submitted,

**GIBBS & BRUNS LLP**

*/s/ Kathy D. Patrick*
Kathy D. Patrick
State Bar No. 15581400
KPatrick@gibbsbruns.com
Robin C. Gibbs
State Bar No. 07853000
rgibbs@gibbsbruns.com
Ayesha Najam
State Bar No. 24046507
anajam@gibbsbruns.com
Charles M. Rosson
State Bar No. 24074985
crosson@gibbsbruns.com
1100 Louisiana, Suite 5300
Houston, Texas 77002
Tel.: (713) 650-8805
Fax: (713) 750-0903

**FRESHFIELDS BRUCKHAUS DERINGER US LLP**

Eric Mahr (*pro hac vice*)
700 13th Street, NW
10th Floor
Washington, DC 20005
Tel.: (202) 777-4545
eric.mahr@freshfields.com

*Attorneys for Defendant*

**CERTIFICATE OF SERVICE**

      I certify that on June 30, 2025, this document was filed electronically in compliance with Local Rule CV-5(a) and served on all counsel who have consented to electronic service, per Local Rule CV-5(a)(3)(A).

                                                                        */s/ Kathy D. Patrick*
                                                                         Kathy D. Patrick

**CERTIFICATE OF CONFERENCE PURSUANT TO LOCAL RULE 7(h)**

      I certify that I conferred with Zeke DeRose, Noah Heinz, and Geraldine Rose—all counsel for the Plaintiffs States—by video conference on June 27, 2025 to discuss Google's planned Motion for Continuance and this Request for a Rule 16(c) Scheduling Conference. Plaintiffs' counsel requested the opportunity to consider the matter over this weekend. On June 30, 2025, Mr. DeRose sent an email (copying the remaining States' counsel) stating that the States opposed a continuance. He also advised that, while the States were "not requesting a Rule 16 conference at this time," they "are at the Court's disposal if he sets a Rule 16 conference.

      SIGNED this 30th day of June, 2025

                                                                      /s/ *Kathy D. Patrick*
                                                                        Kathy D. Patrick