# EXHIBIT 1

```
                  IN THE UNITED STATES DISTRICT COURT
                   FOR THE EASTERN DISTRICT OF TEXAS
                            SHERMAN DIVISION

THE STATE OF TEXAS, et al,        §
                                  §
            Plaintiffs,            §
                                  §
     vs.                          §     Case No.:
                                  §     4:20-cv-00957-SDJ
GOOGLE, LLC,                      §
                                  §
            Defendant.             §


                         MOTIONS TO DISMISS
                      TRANSCRIPT OF PROCEEDINGS
                 BEFORE THE HONORABLE SEAN D. JORDAN
                      UNITED STATES DISTRICT JUDGE

                 Thursday, April 18, 2024; 1:37 p.m.
                            Plano, Texas


APPEARANCES OF COUNSEL:
(Continued on page 2.)

FOR THE PLAINTIFF STATES:

Zeke DeRose, III
THE LANIER LAW FIRM, PC - Houston
10940 W. Sam Houston Parkway N.
Suite 100
Houston, Texas 77064

Jonathan P. Wilkerson
THE LANIER LAW FIRM
6810 Cypress Creek Parkway
Houston, Texas 77069


         *******************************************

                    GAYLE WEAR, RPR, CRR
                 Federal Official Court Reporter
                       7940 Preston Road
                       Plano, Texas 75024
                  gayle_wear@txed.uscourts.gov
```

```
 1   quasi-sovereign or sovereign standing.
 2              MR. KELLER:  Absolutely, Your Honor.  There has to
 3   be injury in fact.  We've --
 4              THE COURT:  Right.
 5              MR. KELLER:  -- talked about parens patriae and
 6   injury to a quasi-sovereign interest.  I think the Article
 7   III head of jurisdiction that they're inviting us to
 8   entertain speaks to sovereign interest.  I will concede for
 9   the Court there's a lot less precedent that's on point there.
10   We don't have something squarely on point for sovereign
11   standing.  I don't think they have anything on point for
12   sovereign standing.  So the safer course is parens patriae.
13              THE COURT:  And let me ask you, on parens patriae,
14   because I'm going to get to sovereign standing with you, you
15   had mentioned that, you know, you haven't really seen a case
16   that supports their theory.  You said really you just would
17   be looking at the dissent in the Georgia case.  But what
18   about -- this is a case cited by the other side from 2017,
19   Ninth Circuit -- the Missouri v. Harris case?  That's a case
20   where the Ninth Circuit rejects parens patriae standing, and,
21   you know, it's from 2017.
22              And I would like to get your thoughts on that case
23   because that's a case where -- I'm sure you're well familiar
24   with the facts, but basically you had California had passed
25   legislation about what kinds of eggs could be sold in
```

```
 1   But for constitutional injury purposes, we've done more than
 2   we need to, certainly, on the pleading.
 3              THE COURT:  All right.  You can continue.
 4              MR. KELLER:  I think that I've exhausted my
 5   prepared remarks, Your Honor.  I'm happy to talk about
 6   sovereign standing some more, if you would like.  I've
 7   admitted that there is a dearth of case law on that, so
 8   parens patriae I think is the easier ground.  But --
 9              THE COURT:  Let's talk about sovereign standing
10   because this comes back to the point that was made by
11   Mr. Mahr, meaning he focused a little more on parens patriae,
12   but the Harrison case, you know, lays out very clearly the
13   test for sovereign standing.  And it seems problematic for
14   the States under that test because the only part of the test
15   that it seems like the States could meet could be something
16   about being able to enforce their own laws.  And I don't know
17   that I see that here.  In other words, I look at the test in
18   Harrison, which is very clear, and I match that up with
19   what's at issue in this case, and it looks like it's
20   problematic for the States.
21              And so my question to you is in light of the
22   standards that are clearly sovereign in Harrison, how do you
23   get -- how do the States fit into that here to get the
24   sovereign standing?
25              MR. KELLER:  I'll give you my best shot at it, Your
```

1   Honor.  So *Massachusetts v. EPA* from the Supreme Court,
2   leaning heavily on Justice Kennedy's concurring opinion from
3   *Lujan*, says that "Congress has allowed to depart from the
4   common law default for injury in fact.  It can create
5   injuries that wouldn't have been previously recognized."  And
6   I think the default is certainly that when there's a
7   violation of federal law, it's for the federal sovereign, an
8   Article II executive branch officer, to go enforce that
9   violation.  But the antitrust laws are unique in that
10  Congress expressly desired for the states to play a crucial
11  role in the enforcement of the antitrust laws and to address
12  violations of the antitrust laws.  And this case is a good
13  illustration as to why.
14          The States here are the ones who led the
15  investigation.  They filed the complaint.  They largely
16  survived a motion to dismiss.  And then the United States
17  jumped in and said, yeah, this is a really good piece of work
18  that you've done.  We're going to copy you and go to
19  Virginia.  And I am casting no aspersions.  We're thrilled
20  that the United States has come along for the ride and has
21  recognized the harm that Google is causing to markets, but
22  the States did the leg work for that at Congress's
23  invitation.
24          And so where you have Congress under *Massachusetts*
25  *v. EPA* inviting the states to enforce federal law, and you

1  have precedent going all the way back to *Testa v. Katt* saying
2  that a violation of federal law is a violation of state law
3  because federal law under the supremacy clause is the law of
4  the state, I think in that unique confluence of situations,
5  plus Congress saying exclusive federal jurisdiction, we can't
6  file our federal antitrust claims in state court, they can
7  only be filed in an Article III tribunal, I think all of that
8  suggests that the States do have a sovereign injury.
9           THE COURT:  All right.  Thank you, Mr. Keller.
10          MR. KELLER:  Thank you, Your Honor.
11          THE COURT:  Mr. Mahr?
12          MR. MAHR:  Just a few comments, Your Honor.
13  Certainly, if they want to bring a diversity case before the
14  Supreme Court, they can do that.
15          And I'm focused on this case and the idea that if
16  there is no on-point precedent, it's because this is such a
17  unique situation.  And they've got something else that was
18  remarked upon by the *Harrison* court, I think it was, that
19  that says something about the whether they said an interest
20  or not.  And this is a unique case in that it's a federal
21  claim being used to get into federal court to bring these 17
22  state DTPA claims on, seeking only redundant injunctive
23  relief -- nothing else under the federal antitrust laws --
24  when there are private cases in the Southern District of New
25  York, many of them seeking the exact same relief on behalf of