IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| THE STATE OF TEXAS, et al., | § § § § § § § § § | |
| Plaintiffs, | | |
| v. | | Civil Action No. 4:20-cv-00957-SDJ |
| GOOGLE LLC, | | |
| Defendant. | | |

**DEFENDANT GOOGLE LLC'S BRIEF IN SUPPORT
OF DISPUTED TRIAL PROCEDURES**

The Court's Scheduling Order required trial management proposals from both sides. The agreed trial procedures are in Part I(1) of the filed Joint Pre-Trial Order, ECF 875 at 36–44. The disputed procedures are at Part I(2), *id*. at 44–54. Subject to and without waiver of its pending Motion for Continuance, ECF 862, Defendant Google LLC submits this brief in support of three trial procedures the States dispute in the JPTO: i) the need to mandate equal time for the parties, enforced by a chess clock, ii) Google's request for preliminary instructions on the law after the jury is seated and before it hears opening statements, and iii) Google's request for interim argument. ECF 875 at 44–54. In addition to these, Google respectfully submits the Court should consider using an expanded, case-specific juror questionnaire to assist the Court and parties in conducting *voir dire*. The States' lead counsel have advised that they do not believe one is needed. But, as shown below, the use of case-specific written questionnaires prior to *voir dire* is recommended and used widely in complex cases. We discuss each in greater detail, below.

## I. Time Limits and a Mandate of Equal Time at Trial

### A. The Court Has Discretion to Impose Time Limits and Equal Time at Trial.

The Court has broad discretion to implement trial management procedures to ensure the "just, speedy, and inexpensive" resolution of this case. Fed. R. Civ. P. 1. Imposing reasonable time limits and an *equal* allocation of time are well within the Court's discretion. Both are needed here. *See* ECF 875 at 33–34 (Google submission, discussing Plaintiffs' trial time estimate); *id.* at 45 (Google's proposal for equal time and a chess clock to enforce it).

As the Fifth Circuit has explained:

> Imposing time limits during trial is a growing trend among district courts …. [T]ime limits are one tool that courts have to make trials more efficient and juror friendly. We have thus approved their use, so long as the limits are reasonable, even in criminal cases where limits are more controversial.

*United States v. Morrison*, 833 F.3d 491, 504 (5th Cir. 2016) (internal citation and footnote omitted) (citing *United States v. Colomb*, 419 F.3d 292, 299 (5th Cir. 2005) ("[A] district court may impose reasonable time limits on the presentation of evidence and the examination of witnesses."); *United States v. Gray*, 105 F.3d 956, 963–65 (5th Cir. 1997) (court has broad discretion to manage docket, including "imposition of time limits on counsel")). Other circuits take a similar approach.[1] So widespread is the use of time limits at trial that "[a]ppellate courts typically review a district court's implementation of time limits under an abuse of discretion standard." *United States v. Greenlaw*, 84 F.4th 325, 360 (5th Cir. 2023).

---

[1] *See, e.g.*, *United States v. Spangler*, 638 F. App'x 611, 613 (9th Cir. 2016) (time limits on cross-examination do not violate Confrontation Clause if they do not "limit[] relevant testimony and prejudice[] the defendant, and den[y] the jury sufficient information to appraise [] biases and motivations" (quoting *United States v. Bensimon*, 172 F.3d 1121, 1128 (9th Cir. 1999)); *United States v. Vest*, 116 F.3d 1179, 1187 (7th Cir. 1997) (approving use of time limits in criminal case).

2

The same principles apply in civil cases. "The Court has an inherent right to place reasonable limitations on the time allotted for trial." *Frazier v. Honeywell Int'l, Inc.*, 518 F. Supp. 2d 831, 840-41 (E.D. Tex. 2007) (citing *Deus v. Allstate*, 15 F.3d 506, 520 (5th Cir. 1994)); *see also McLain v. Lufkin Indus., Inc.*, 519 F.3d 264, 282 (5th Cir. 2008) (district court has broad discretion in "structuring the conduct of a trial" and "may maintain the pace of the trial by setting time limits on counsel"); *Sims v. ANR Freight Sys., Inc.*, 77 F.3d 846, 849 (5th Cir. 1996) (observing that "[s]peed is necessary, and the limited capabilities of the judicial system certainly should be considered in determining whether to impose limits on the introduction of evidence and the length of trial … [together with] a cautious respect for the requirements necessary to achieve a fair trial"). Federal courts in this district, *e.g., Frazier,* 518 F. Supp. 2d at 840, and around the country regularly impose time limits on trials,[2] and courts routinely divide that time equally to ensure both sides have an equal opportunity to present their claims and defenses.[3]

---

[2] *See, e.g.*, *Guzman v. Latin Am. Entm't, LLC*, 2014 WL 12599345, at *1 (S.D. Tex. July 2, 2014) (Costa, J.) (quoting earlier ruling, stating, "[t]he Court routinely imposes time limits at trial and will do so in this case"); *Smith v. Christus Health Ark-La-Tex*, 2013 WL 12242055, at *14 (E.D. Tex. Sept. 12, 2013) ("It is the Court's experience that time limits make for better jury trials."); *Raynor v. G4S Secure Solutions (USA), Inc.*, 327 F. Supp. 3d 925, 940 (W.D.N.C. 2018) (given Federal Rule of Civil Procedure 1 and Federal Rule of Evidence 611(a), "numerous circuit courts and district courts have found courts have broad discretion to control and manage its trials in civil cases by setting time limits"); *United States v. Reaves*, 636 F. Supp. 1575, 1580 (E.D. Ky. 1986) (imposing time limits "requires counsel to exercise a discipline of economy choosing between what is important and what is less so"; "reduces the incidence of the judge interfering in strategic decisions"; and "gives a cleaner, crisper, better-tried case" (quotation marks and citation omitted)).

[3] *See, e.g.*, *Grant v. CRST Expedited, Inc.*, 2021 WL 1299227, at *1-2 (E.D. Tex. Apr. 7, 2021) (finding "10 hours per side for trial" was reasonable and would "serve[] to expedite the presentation and questioning of witnesses," where matter was "not a complex case"); *Benton v. EPA*, 2014 WL 5147983, at *1–2 (N.D. Tex. Oct. 14, 2014) (eight-hour time restriction imposed on each party for the presentation of evidence); *Smith*, 2013 WL 12242055, at *5, 13–14 (order allowing ten hours for each side "to present its case and cross-examine opposing side's witnesses"); *Raynor*, 327 F. Supp. 3d at 940 (court imposed 15-hour chess clock and "explained that this meant Plaintiff had 7.5 hours and Defendant had 7.5 hours").

### B.  Basic Fairness Requires an Order Granting Equal Time at Trial, Enforced by a Chess Clock.

This case is set for trial on August 11, 2025. ECF 796 at 3. The States propose that the evidence will be closed on September 11, 2025, with closing arguments the next day, on September 12. *See* ECF 875 at 32–33. Excluding holidays, there are just 22 days—or roughly 120 hours (assuming 5.5 hours of testimony per day)—to present evidence to the jury. *Id.* at 44.

This is not a simple case. It involves sophisticated technology and algorithms, as well as complex economic concepts and auction theory. The States have identified over 170 witnesses, including nearly a dozen experts,[4] in fields ranging from economics to auction theory, "machine learning," computer source code, privacy, and "ecosystems." They seek liability findings under dozens of *distinct* state antitrust and DTPA statutes. A jury will have difficulty absorbing the facts and applying them fairly, in the context of the Court's instructions, *without* a fulsome presentation of the evidence. The States' trial proposal ignores this. Instead, it argues for a disproportionate allocation of time in favor of the States, with *no enforceable time limits* on their presentation of evidence. *See* ECF 875 at 45. This augurs a trial by filibuster and threatens to deprive Google of an equal and adequate opportunity to present its case.

The States' witness list also shows why an Order mandating equal time is needed. Counsel for the States assured the Court that their designations of video deposition testimony would not exceed ***10-15 minutes each***. ECF 874 (7/7/2025 Mtns. Hrg. Tr.) at 35:22–36:2.[5] Yet, after this assurance in Court, the States designated ***sixty-six hours*** of affirmative deposition testimony (from

---

[4] ECF 875-1 (States' "Initial" Witness List).

[5] "Yeah, we have 120 deposition plays, but anybody who has ever looked at my trial knows that I will kill anyone on my team, and I say that metaphorically, if we have a deposition play that's longer than ten or 15 minutes. So I will move through those deposition plays like a hot knife through butter." ECF 874, Tr. 35:22–36:2

4

63 depositions) to be played at trial.[6] Only two of their video designations run *less* than the promised "ten or 15 minutes." Even allowing that witness lists may narrow as trial approaches, time must also be *added* for the States' declared live witnesses. Without action by the Court to equalize time, the States' case-in-chief may consume almost all available trial time.

The States' demand for a *disproportionate* amount of trial time, ECF 875 at 47, would profoundly prejudice Google. If the jury is told to expect a four-week trial, but learns after four weeks that they must sit for two *more* weeks so Google can present its defense, they will direct their justifiable ire not at the States—who would be responsible for the delay—but at Google. The States' attempt to arrogate to themselves almost all of the available trial weeks may also impede Google's ability to present its live witnesses in Texas, given the imminence of the Virginia remedies proceeding where four of them are also slated to testify.

The Court can avoid this prejudice with a timing order. The purpose of a jury trial is "to assure a fair and *equitable* resolution of factual issues." *Colgrove v. Battin*, 413 U.S. 149, 157 (1973) (emphasis added). Imposing firm time limits will help ensure fair and equitable resolution. There are 22 trial days, equating to 121 hours of total time, available. Google respectfully urges the Court to enter an Order dividing that time equally between the States and Google, so that each side is afforded 60 hours of time to present its claim. This time should be maintained via a chess clock, with all time used on direct, cross-, and re-direct examination, as well as any interim argument the Court permits, counted toward a party's total. Enforcing these limits will ensure that, as the States have asked and represented, the parties can deliver closing arguments on September 12, 2025, with deliberations the following week.

---

[6] *See* ECF 875 at 45, 47 (discussing States' deposition designations). In contrast, Google designated just fifteen hours of deposition testimony. With equal time allocations, this can readily be accomplished, with adequate time for Google's live witnesses.

## II.  Jury Questionnaire Prior to Live Voir Dire

The Court has requested proposed *voir dire* questions from the parties. ECF 796 at 2. As a supplement to those questions, Google proposes that the Court employ a case-specific juror questionnaire, to be completed by panelists before live *voir dire*. The States have stated they do not believe a questionnaire is needed.

### A.  The Law Permits the Use of Juror Questionnaires.

The use of questionnaires is common in complex cases and authorized by applicable law. Jury selection is "particularly within the province of the trial judge," *Skilling v. United States*, 561 U.S. 358, 386 (2010) (quoting *Ristaino v. Ross*, 424 U.S. 589, 594-95 (1976)), and "[n]o hard-and-fast formula dictates the necessary depth or breadth of *voir dire*." *Id.* (citing *United States v. Wood*, 299 U.S. 123, 145-46 (1936)). District courts are afforded "great latitude in deciding what questions should be asked on *voir dire*," *Mu'Min v. Virginia*, 500 U.S. 415, 424 (1991), because "in-the-moment *voir dire* affords the trial court a more intimate and immediate basis for assessing a venire member's fitness for jury service." *Skilling,* 561 U.S. at 386-87. "We consider the adequacy of jury selection [in this case] ... attentive to the respect due to district-court determinations of juror impartiality and of the measures necessary to ensure that impartiality." *Id*. at 387.

A juror questionnaire is a permissible and appropriate means for the Court to conduct initial screening of jurors. It "help[s] to identify prospective jurors excusable for cause and serve[s] as a springboard for further questions put to remaining members of the array." *Skilling*, 561 U.S. at 388.[7] In *Skilling*, the Supreme Court considered the jurors' answers to written questionnaires and

---

[7] The Federal Judicial Center has compiled over 20 sample jury questionnaires, including several from federal courts in Texas. *See* Federal Judicial Center, Jury Questionnaires, www.fjc.gov/subject/jury-questionnaires (last visited July 12, 2025).

6

in live *voir dire* in holding that Judge Lake's "selection process successfully secured jurors who were largely untouched by Enron's collapse." *Id*. at 389; *see also United States v. Sanders*, 133 F.4th 341, 376 (5th Cir. 2025) (discussing permissible use of juror questionnaires to ask whether prospective jurors had religious views on the propriety of the death penalty, as it might prevent a person "from impartially applying the law"); *Cravens v. Smith*, 610 F.3d 1019, 1032 (8th Cir. 2010) (noting that "venirepersons' 'strong responses … in the jury questionnaires in combination with their equivocal responses given during voir dire provide fair support for the district court's decision' [to strike the venirepersons]" (quoting *United States v. Nelson*, 347 F.3d 701, 712 (8th Cir. 2003))).

The ABA's Principles for Juries and Jury Trials encourage the use of pre-*voir dire* questionnaires:

> It is beneficial to both the system as a whole and the attorneys involved in a particular case to use a questionnaire to obtain information from prospective jurors. The questionnaire data should be furnished to counsel before voir dire along with the list of prospective jurors. Use of a questionnaire is likely to shorten the time necessary for juror selection and permits both the court and counsel to make better informed decisions about the exercise of challenges during the jury selection process.

Principles for Juries and Jury Trials (Am. Bar Ass'n 2023) at 81, *available at* https://www.americanbar.org/content/dam/aba/administrative/american_jury/principles-juries-jury-trial.pdf (last visited July 12, 2025) ("ABA Principles"). With information from a questionnaire in hand, the live *voir dire* conducted by the Court can be more focused and informative. *See id.* at 82 (benefits of questionnaires include that prospective jurors "may be more willing to divulge sensitive information on the written form" and that they "permit the court and counsel to conduct a more focused voir dire"). Use of a questionnaire may also "reduce the number

7

of citizens who spend time waiting to be questioned for a case on which they could never serve." *Id*.

### B.   The Proposed Questionnaire is Appropriate.

Recognizing that the Court typically employs a standard juror questionnaire seeking mostly biographical data, a more detailed questionnaire is warranted here given the scope of the issues, the prominence of the parties, and the likely length of trial. The questionnaire Google proposes is attached as Ex. A. It is modeled on the standard juror questionnaire the Hon. Rodney Gilstrap provides for use in civil trials,[8] a copy of which is attached as Ex. B, and draws some topics from the questionnaire the Supreme Court discussed approvingly in *Skilling*,[9] a copy of which is attached hereto as Ex. C.

The proposed questionnaire is just 42 questions, divided into three sections that seek information directly relevant to jurors' qualifications and ability to serve impartially: I) General Background, II) Questions Specific to this Case, and III) Particularized Showings of Hardship. Use of this questionnaire will allow the Court to inquire privately, as the ABA Principles recommend, about sensitive matters that may affect whether a juror is qualified to serve or is able to serve impartially. It would also—based on affirmative responses—identify jurors who are not qualified to serve, for example because of a personal relationship with the parties or their counsel, saving time for them, the parties, and the Court. Used in tandem with the questions the Court will ask of the entire panel during *voir dire*, this questionnaire will assure the Court and the parties that

---

[8] Standing Order Regarding Use of Juror Questionnaires in Advance of *Voir Dire*, *available at* https://www.txed.uscourts.gov/sites/default/files/judgeFiles/Standing%20Order%20Regarding%20the%20Use%20of%20Juror%20Questionnaires%20in%20Advance%20of%20Voir%20Dire%20rev.%203.21.pdf (last visited July 8, 2025).

[9] *United States v. Skilling*, No. 4:-04-cr-0025, Dkt. 1214 (S.D. Tex. Apr. 9, 2007).

any jury eventually empaneled is qualified, able to serve for the length of the trial, and unburdened by biases or partiality.

Google therefore respectfully requests that the Court grant use of a juror questionnaire and enter an order directing the Clerk to either: i) enclose copies of the questionnaire, as approved by the Court, when it issues summonses to potential jurors, or ii) require the jurors to fill the questionnaire out before *voir dire* begins.[10]

### III.    Trial Procedures to Promote Juror Understanding

#### A.    Preliminary Instructions on the Law

The ABA Principles also recommend specific, in-trial procedures to improve juror understanding.[11] Among these are a recommendation to use preliminary instructions to the jury on the law relevant to the jury's decision. *See, e.g.*, ABA Principle 6, "Courts Should Educate Jurors Regarding the Essential Aspects of a Jury Trial," and ABA Principle 13, "The Court and Parties Should Vigorously Promote Juror Understanding of the Facts and the Law." Both ABA Principles support Google's request, ECF 875 at 52, that the Court give the jury preliminary instructions on the law before opening statements.

Principle 6D states in part that:

> The court should give preliminary instructions directly following empanelment of the jury that explain the jury's role; the trial procedures, including note-taking and questioning by jurors; ***the nature of evidence and its evaluation; the issues to be addressed; and the basic relevant legal principles, including the elements of the charges and claims and definitions of unfamiliar legal terms***…. [T]he Court

---

[10] Google will submit its proposed questions for live *voir dire* to the Court on July 24, 2024, as the Scheduling Order requires. ECF 796 at 2. If the Court declines to submit any question in the proposed questionnaire in writing, then Google respectfully submits the Court should ask those questions of the array, as a whole, during live *voir dire*.

[11] Principles for Juries and Jury Trials (Am. Bar Ass'n 2023), *available at* https://www.americanbar.org/content/dam/aba/administrative/american_jury/principles-juries-jury-trial.pdf (last visited July 12, 2025).

> should ***give such instructions during the course of the trial as are necessary to assist the jury in understanding the facts and law of the case being tried as described in Standard 13D.2***.

ABA Principles at 37-38 (emphasis added).[12] Other authorities confirm that jurors' ability to apply the law to the facts of the case and recall relevant evidence can be improved when jurors receive instruction on the applicable law both before and after the evidence is presented rather than only at the close of the evidence. *See* ABA Principles at 44 (citing Vicki L. Smith, *Impact of Pretrial Instruction on Jurors' Information Processing and Decision Making*, 76 J. APPLIED PSYCH. 220, 226 (1991); Amiram Elwork et al., *Juridic Decisions: In Ignorance of the Law or In Light of It?*, 1 L. & HUM. BEHAV. 163, 178 (1977)). "The value of preliminary instructions is consistent with the finding that people receive information more effectively if they understand in advance the context in which they will be required to evaluate or analyze that information and that repetition can enhance recall." ABA Principles at 44 (citation omitted).

The ABA not only recommends that preliminary jury instructions include "sufficient detail on the legal framework the jurors will be asked to apply to inform the jurors about the relevant legal issues they should be aware of as the trial unfolds," *id.*, it specifically recommends Courts give preliminary instructions on the law in complex antitrust matters like this one. *See* Roberta D. Liebenberg & Rob Walters, *Preface to* ABA Model Jury Instructions in Civil Antitrust Cases (2016) ("Model Instructions"). The Model Instructions report the recommendation of a "Blue Ribbon" panel of judges and practitioners who:

> examined the use of preliminary instructions to the jury before opening statements, particularly in rule of reason cases that will require the jury to understand and apply more difficult legal concepts. The Panel unanimously recommended the use of preliminary instructions ***before opening statements***

---

[12] *See also* ABA Principles at 42 (comment on Principle 6D, stating: "[t]he court should give preliminary jury instructions, both verbally and in writing, before the presentation of the parties' opening statements," which should explain *inter alia* "the basic general and specific underlying principles of law to be applied in the case").

> in order to provide the jury with a legal framework to evaluate the evidence and to focus lawyers' opening statements.

Liebenberg & Walters, *Preface to* Model Instructions (emphasis added).

The "effectiveness of opening statements is often enhanced if preceded by preliminary instructions from the judge outlining the principal issues in the case." MANUAL FOR COMPLEX LITIG. § 12.21 (4th ed. 2004) ("Manual"). Employing preliminary instructions on the law will help the jury frame the evidence, which here will include highly technical economic concepts, among others. *See Vance v. Ball State Univ.*, 570 U.S. 421, 443-44 (2013) (jury's work "will be simplified" in "inevitably complicated" employment discrimination cases where, with respect to application of Court's definition of "supervisor" under Title VII, "[t]he jurors can be given preliminary instructions that allow them to understand, as the evidence comes in, how each item of proof fits into the framework that they will ultimately be required to apply"). The Court should explain these to the jury before opening statements, so the jurors understand *why* they are hearing the evidence presented to them and have a framework to explain *what and how* it fits the parties' respective burdens of proof. As explained in the comment to ABA Principle 6D, "Research shows that, despite their best efforts, jurors often fail to understand difficult legal concepts, including the burdens of proof in both civil and criminal cases." ABA Principles at 44-45 (citing Max Rogers, Note, *Laypeople as Learners: Applying Educational Principles to Improve Juror Comprehension of Instructions*, 115 N.W. U. L. REV. 1185, 1187–89 (2021)).

Giving preliminary instructions also mitigates the separate risk that counsel will misspeak in an opening statement about facts or law important to the jury's understanding. In a case of this significance, the Court can reduce the risk that a new trial might be required as a result. Preliminary instructions on the law, delivered by the Court, do just that.

B.       **Interim Argument**

Google has also requested that the Court allow the parties to use part of their time budget for interim argument to the jury. ECF 875 at 54. More specifically, Google proposes that the Court allow each side up to two hours of interim argument time (out of their overall time budget) to be used at their discretion (and subject to the Court's schedule) during the presentation of evidence. *Id.* Counsel may use their argument budget at their discretion before or after any witness's testimony, and argument may be made without the need for the other party to respond to it.

"In a lengthy trial, it can be helpful if counsel can intermittently summarize the evidence that has been presented or can outline forthcoming evidence." Manual § 12.34. "Support for summaries in civil trials is widespread." *United States v. McGee*, 612 F.3d 627, 633 (7th Cir. 2010). "Interim summations in some form have been permitted in lengthy and/or complex civil trials" and "use of such procedures in complex and lengthy civil trials has been looked upon favorably by commentators." *United States v. Yakobowicz*, 427 F.3d 144, 151 (2d Cir. 2005) (distinguishing use of such summaries in civil actions versus criminal cases); *see also Consorti v. Armstrong World Indus., Inc.*, 72 F.3d 1003, 1008 (2d Cir. 1995) (noting that "a district court can greatly assist a jury in comprehending complex evidence through the use of intelligent management devices," including "interim addresses to the jury by counsel"), *vacated on other grounds sub nom. Consorti v. Owens-Corning Fiberglas Corp.*, 518 U.S. 1031 (1996).

A 2008 study conducted in the Seventh Circuit[13] confirms that interim argument serves several important purposes–particularly in a long trial:

---

[13] Seventh Circuit American Jury Project; Final Report (Sept. 2008), *available at* https://www.uscourts.gov/file/document/seventh-circuit-bar-assoc-final-report-re-jury-project-2008 (last visited July 11, 2025). The Seventh Circuit Jury Project Commission's findings on interim argument are found on pages 32-35 and 63-65.

- It enhanced juror comprehension of the evidence they heard and facilitated their recall of it;

- It helped to organize and highlight key evidence;

- It maintains juror engagement and prevents juror fatigue;

- It increases trial efficiency;

- It helps jurors "connect the dots" of what they are hearing as long trial proceeds; and,

- It gives lawyers strategic flexibility to emphasize facts and concepts important to their case, while the evidence is presented, rather than relying on the jury to recall (in the moment) evidence they might have heard four weeks earlier.

*See also* State Bar of Texas, *Report of the Court Administration Task Force*, at 54 (2008), *available at* https://www.ccl.hctx.net/criminal/examine/courtadmintaskforcerpt.pdf (last visited July 13, 2025) (recommending that the Texas Rules of Civil Procedure permit, among other things, "interim statements by counsel" concerning the evidence presented). As another judge has explained:

> The idea of permitting or directing counsel to sum up after discrete segments in a long or complex case has been analogized to a professor giving a review lecture during a course, and to a motorist's need to consult a highway map a number of times on a long trip before reaching the destination. Analogies aside, experts who have studied the technique, and judges who have used it, are unanimous in their views that in many cases the procedure boosts juror comprehension. The several advantages found to result include: enhancing juror understanding of the evidence;assisting jurors in recalling the evidence; allowing counsel to organize, clarify, emphasize, contextualize, and explain evidence; and aiding jurors in remaining focused, which prevents jurors from making premature judgments based on only a part of the case.

Hon. B. Michael Dann, *"Learning Lessons" and "Speaking Rights": Creating Educated and Democratic Juries*, 68 IND. L.J. 1229, 1255 (1993) (footnotes omitted).

IV. **Conclusion**

Each of these procedures would yield a fairer, more efficient trial. Accordingly, Google respectfully requests that the Court exercise its discretion to adopt them.

Dated: July 14, 2025

Respectfully submitted,

/s/ *Kathy D. Patrick*
Kathy D. Patrick
State Bar No. 15581400
KPatrick@gibbsbruns.com
Ayesha Najam
State Bar No. 24046507
ANajam@gibbsbruns.com
Charles M. Rosson
State Bar No. 24074985
CRosson@gibbsbruns.com
Gibbs & Bruns LLP
1100 Louisiana, Suite 5300
Houston, Texas 77002
Tel.: (713) 650-8805
Fax: (713) 750-0903

Eric Mahr (*pro hac vice*)
FRESHFIELDS US LLP
700 13th Street, NW
10th Floor
Washington, DC 20005
Telephone: (202) 777-4545
Email: eric.mahr@freshfields.com

*Attorneys for Defendant Google LLC*

**CERTIFICATE OF SERVICE**

I certify that on July 14, 2025, this document was filed electronically in compliance with Local Rule CV-5(a) and served on all counsel who have consented to electronic service, per Local Rule CV-5(a)(3)(A).

/s/*Kathy Patrick*
Kathy Patrick

14