UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| THE STATE OF TEXAS, ET AL. | § | |
| | § | |
| v. | § | CIVIL NO. 4:20-CV-957-SDJ |
| | § | |
| GOOGLE LLC | § | |

# **ORDER**

This complex antitrust case is currently set for trial on liability issues beginning on August 11, 2025, and the parties have filed their Joint Final Pre-Trial Order. (Dkt. #875). The most conservative estimate for the length of the trial, offered by Plaintiff States,[1] is over four weeks. The States believe that, if a jury is picked on Monday, August 11, closing statements could be delivered no later than September 12. (Dkt. #875 at 32–33). Given that the jury will decide claims under twelve different antitrust statutes involving several alleged markets, as well as fifteen different Deceptive-Trade-Practice-Act ("DTPA") claims involving multiple allegedly deceptive practices for each claim, it's reasonable to assume that jury deliberations may extend for days—certainly into the week of September 15. And potentially longer if the case does not go to the jury on the States' estimated timetable. For its part, Google maintains that the trial will likely take longer to complete than the States estimate, particularly given the States' witness list, which includes up to 70 witnesses who may

---

[1] The coalition of States includes Texas, Alaska, Arkansas, Florida, Idaho, Indiana, Louisiana, Mississippi, Missouri, Montana, Nevada, North Dakota, South Carolina, South Dakota, Utah, and the Commonwealths of Kentucky and Puerto Rico.

1

provide live testimony, and up to 124 depositions (or portions thereof) that may be presented to the jury. (Dkt. #875 at 33–34).

At the same time, parallel litigation is ongoing in in the United States District Court for the Eastern District of Virginia (the "EDVA Action").[2] The EDVA Action, brought by the federal government and seventeen States, involves claims and issues substantially overlapping with this case and is at an advanced stage in its proceedings. Following a bench trial in September 2024, that court issued its memorandum opinion on liability in April 2025, finding that Google had violated Section 2 of the Sherman Act by willfully acquiring and maintaining monopoly power in what the court described as the open-web display publisher ad-server market and the open-web display ad-exchange market and that Google has unlawfully tied its publisher ad server and ad exchange in violation of Sections 1 and 2 of the Sherman Act. *United States v. Google LLC*, No. 23-CV-108, 2025 WL 1132012, at *1 (E.D. Va. Apr. 17, 2025). The EDVA Action is now scheduled for additional trial proceedings, commencing on September 22, 2025, to determine the appropriate remedies for the antitrust violations.

Before this Court is Google's Verified Motion for Continuance and Conference Request. (Dkt. #862). In the motion, Google requests that the Court continue the current August 11 trial date on liability issues given "the upcoming remedies trial in the [EDVA Action]." (Dkt. #862 at 1). The States oppose the motion. (Dkt. #863). The

---

[2] *United States v. Google LLC*, No. 23-CV-108 (E.D. Va. filed Jan. 24, 2023).

Court has considered the parties' briefing and arguments presented during a hearing on the motion. (Dkt. #866). After full consideration of the parties' filings, their arguments at the hearing, and the relevant law, the Court will grant the motion.

## I. BACKGROUND

The primary theme permeating the States' arguments against Google's continuance motion is a fairness complaint. Because this case was filed years before the EDVA Action, the States believe it would be unfair for the EDVA Action to proceed to final judgment before the liability trial has taken place here. More to the point, the States suggest that Google's continuance motion is just the latest step in Google's alleged years'-long pattern of delay, purportedly designed to ensure that the claims made against Google in this case are ultimately decided in another forum. As the Court will explain, this argument is not well taken. To understand why, a brief discussion of the history of this case and related cases is warranted.

**A. Procedural History**

The States filed their complaint against Google in December 2020, asserting various federal-antitrust, state-antitrust, and state-DTPA violations. (Dkt. #1). Shortly thereafter, Google moved to transfer this case to the Northern District of California under 28 U.S.C. § 1404(a). (Dkt. #28). Google noted that, at the time this case was filed, several similar cases were already ongoing, each featuring antitrust claims asserting that Google had monopolized online-display-advertising markets. *See* (Dkt. #28) (collecting then-pending actions in the Northern District of California). Although the Court denied Google's venue-transfer request, (Dkt. #122), the motion

was not frivolous. Nor did the Court construe it as an attempt to delay proceedings. Immediately after ruling on the transfer motion, on May 21, 2021, the Court entered a scheduling order that anticipated a trial date in June 2023. (Dkt. #123).

Within three months, however, the United States Judicial Panel on Multidistrict Litigation ("JPML") ordered that this case be transferred to the United States District Court for the Southern District of New York for coordinated and consolidated pretrial proceedings in MDL 3010. (Dkt. #140). The request for centralization of similar actions was made by Google. But again, the request was reasonable, as demonstrated by the JPML's decision. As the JPML observed, nineteen similar actions against Google were pending in sixteen districts, each "concern[ing] Google's alleged monopolization and suppression of competition in online display advertising—essentially, the marketplace for the placement of digital display ads on websites and mobile apps." (Dkt. #140 at 1).

The case remained in MDL 3010 for over two years, until late 2023. During that time, discovery was paused for a significant period pending the resolution of dismissal motions. *See* (MDL Dkt. #129 ¶ 3) (staying "general discovery" effective September 24, 2021). In the interim, Congress enacted the State Antitrust Enforcement Venue Act of 2021 (the "Venue Act"), which removed state antitrust enforcement actions from the ambit of the Multidistrict Litigation Act. (Dkt. #142). In February 2023, the States filed a motion to remand with the JPML based on the Venue Act. Thereafter, on June 5, 2023, the JPML ordered remand of this action to the Eastern District of Texas. *In re Google Dig. Advert. Antitrust Litig.*, MDL No.

3010, 677 F.Supp.3d 1372 (J.P.M.L. June 5, 2023). Google then sought mandamus relief from the Second Circuit, arguing that the JPML's decision should be overturned. Google was granted an administrative stay on remand pending the resolution of its mandamus petition. (Dkt. #150). After Google's mandamus petition was denied, the case arrived back in this Court in November 2023, about twenty-seven months after being sent to MDL 3010. *See* (Dkt. #153).

At that time, although the case had been pending for nearly three years, there was still much to do. Discovery, for example, was nowhere near completion. After conferring with the parties and considering the complexity of the case, the Court set a March 2025 trial date, with discovery to be completed and closed in May 2024. (Dkt. #194). In the ensuing months, the parties engaged in a rigorous discovery process with the assistance of a special master. But they were unable to complete discovery by the contemplated deadline. As a result, the discovery deadline was extended, (Dkt. #458), along with other case deadlines. *See, e.g.*, (Dkt. #562, #609, #653).

The parties have also engaged in extensive motion practice, amounting to thousands of pages of briefing and supporting evidence, including dismissal and summary-judgment motions, motions challenging expert testimony, and motions related to spoliation allegations against Google. In addition, Google submitted a motion seeking to strike the States' jury demand as to all claims. The resolution of that motion alone involved hundreds of pages of briefing from the parties and a lengthy order from this Court. (Dkt. #854). A number of motions remain outstanding,

including Google's summary-judgment motions and motions challenging expert testimony.

In the meantime, nearly a year before this case returned to the Court, in January 2023, the EDVA Action was filed. It proceeded to a bench trial on liability in September 2024. As of January 2025, however, the court had not yet entered its decision. Because the liability decision in the EDVA Action could bear on liability issues in this case, and because of the parties' voluminous motions practice, it became clear that the March 2025 trial date was no longer prudent. The parties agreed. After holding a hearing with the parties to discuss a plan forward, the Court entered an order moving trial to August 11, 2025. (Dkt. #796).

\* \* \*

Contrary to the States' suggestion, the Court does not attribute any delays in the progress of this case to unreasonable or improper conduct on Google's part, or for that matter on the part of the States themselves.[3] To the contrary, both sides made commendable efforts to timely complete discovery concerning the numerous and complex claims at issue, and both sides have also engaged in extensive, but warranted, motion practice to advance their respective legal positions. The truth is that this case has not been complicated by schemes of delay perpetrated by either side. Rather, the course of this litigation has been complicated by the fact that there

---

[3] At certain points in time, Google has accused the States of improper delays. *See, e.g.*, (Dkt. #457 at 2) (noting that Google argued that the States' "inability to complete discovery on time is due to delays of their own making"). The Court rejected such suggestions of misconduct on the part of the States. (Dkt. #457 at 4) ("[T]he Court finds that Plaintiff States have diligently attempted to comply with the current fact discovery deadline, despite the various disputes and delays that have occurred throughout the course of discovery.").

is significant parallel litigation, which resulted in this case being consolidated for a time in MDL 3010, as well as legitimate disputes over the application of federal legislation that ultimately removed this case from MDL 3010 and returned it to this Court, and finally by the progress of the EDVA Action and its corresponding impact on trial scheduling here. Beyond these external circumstances, the Court shares with the parties the responsibility for any failures to administer the case more efficiently.[4]

**B. Status of the EDVA Action**

In April 2025, Judge Brinkema entered her liability order in the EDVA Action, concluding that Google had violated the Sherman Act:

> Plaintiffs have proven that Google has willfully engaged in a series of anticompetitive acts to acquire and maintain monopoly power in the publisher ad server and ad exchange markets for open-web display advertising. For over a decade, Google has tied its publisher ad server and ad exchange together through contractual policies and technological integration, which enabled the company to establish and protect its monopoly power in these two markets. Google further entrenched its monopoly power by imposing anticompetitive policies on its customers and eliminating desirable product features. In addition to depriving rivals of the ability to compete, this exclusionary conduct substantially harmed Google's publisher customers, the competitive process, and, ultimately, consumers of information on the open web. Accordingly, Google is liable under Sections 1 and 2 of the Sherman Act.
>
> For the foregoing reasons, by an Order to be issued with this Memorandum Opinion, Count III (monopolization of the advertiser ad network market) will be dismissed, and the parties will be ordered to submit a joint proposed schedule for briefing and arguing their positions as to the remedies that should be imposed in light of Google have been found liable for monopolization of the publisher ad server market (Count

---

[4] The Court has endeavored to timely rule on the parties' motions. Unfortunately, it has not achieved every hoped-for efficiency. This is due in part to the Court's robust docket. As of the beginning of this month, the Court's weighted caseload is about 1,951 cases, which includes a weighted civil caseload of 676 cases and a weighted criminal caseload of 1,275 cases. The Court understands the guidance from the Administrative Office of the U.S. Courts to be that the weighted caseload for a federal district judge should not exceed 430 cases.

I), monopolization of the ad exchange market (Count II), and unlawful tying of AdX and DFP (Count IV).

(EDVA Action Dkt. #1410 at 114–15). A few weeks later, the parties in the EDVA Action agreed to a remedies trial on September 22, 2025. (EDVA Action Dkt. #1428). Shortly after, the EDVA Plaintiffs filed their proposed remedies, which included "a mix of structural, behavioral, and administrative remedies including divestiture of Google's AdX ad exchange and phased divestiture of its DFP publisher ad server." (EDVA Action Dkt. #1430 at 7).

## II. LEGAL STANDARD

Federal courts have the inherent power "to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991). Whether to grant a continuance falls soundly within this power and the trial court's discretion. As the Fifth Circuit has noted, "[w]hen the question for the trial court is a scheduling decision, such as whether a continuance should be granted, the judgment range is exceedingly wide[.]" *Streber v. Hunter*, 221 F.3d 701, 736 (5th Cir. 2000) (citation omitted).

## III. DISCUSSION

Google makes three interrelated arguments in support of its motion to continue. First, it contends that under the current schedule there is a significant likelihood that this Court's liability trial, set to commence on August 11, will collide with the EDVA Action's remedies trial, scheduled for September 22. (Dkt. #862 at 2–4). Google further notes that this outcome becomes more likely, if not a certainty, if

the Court were to contemplate moving immediately into a remedies proceeding following the jury trial on liability. (Dkt. #862 at 11). Second, Google observes that the final judgment in the EDVA Action may well include some or all structural remedies requested by the plaintiffs in that action. (Dkt. #862 at 5). Such structural remedies may require Google to divest certain businesses, such as its ad exchange and its publisher ad server, together with other remedies that would substantially impact Google's products in the advertiser ad-network market. In Google's view, these potential remedies in the EDVA Action could render moot a substantial number of the States' claims. (Dkt. #862 at 5–7). Third, Google argues that the closely parallel paths to final judgment in this case and the EDVA Action implicate concerns regarding judicial economy, duplicative proceedings, and risks of inconsistent adjudication. (Dkt. #862 at 4–5). For these reasons, Google requests that the Court continue the liability trial of this case pending the entry of final judgment in the EDVA Action, or alternatively, that the Court reschedule the liability trial in this matter to take place after the remedies proceeding is completed in the EDVA Action. (Dkt. #862 at 8).

In response, the States argue that the issues Google identifies are self-imposed, illusory, or irrelevant. (Dkt. #863 at 2–3). For example, the States note that Google was aware of the August 2025 trial date here when it agreed to the September 2025 remedies trial in the EDVA Action. (Dkt. #863 at 3). And, in the States' view, Google raises an illusory concern that claims in this case may be moot after final judgment is entered in the EDVA Action. Until all appeals are exhausted, the States contend,

9

that final judgment will not bind any other court. (Dkt. #863 at 2). As to inconsistent adjudications, the States maintain that Google's concern is irrelevant because a liability finding in this Court would be based on a different trial with different facts, witnesses, and evidence. (Dkt. #863 at 7). As noted herein, the States also assert that Google's reasons boil down to a continuing strategy to delay proceedings in this matter. *See supra* Part I.A.

Courts have discretion to stay proceedings for the purpose of judicial economy and in their own interests and the interests of the litigants before them. *See Landis v. North American Co.*, 299 U.S. 248, 254–55, 57 S.Ct. 163, 81 L.Ed. 153 (1936). This discretion is broad, though not "unbounded." *See Wedgeworth v. Fibreboard Corp.*, 706 F.2d 541, 545 (5th Cir. 1983). The court must weigh the interests of the parties in determining whether to stay proceedings. *See, e.g.*, *Dominguez v. Hartford Fin. Servs. Grp.*, 530 F.Supp.2d 902, 905 (S.D. Tex. 2008) (citing *Landis*, 299 U.S. at 254–55). Where a stay is sought because of parallel pending federal court actions, "the general principle is to avoid duplicative litigation." *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). The relevant factors for courts to consider are "equitable in nature." *See Kerotest Mfg. Corp. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183, 72 S.Ct. 219, 96 L.Ed. 200 (1952). The Court considers it appropriate to look to the following equitable factors as it seeks to balance the parties' interests: (1) the extent to which the issues in the EDVA Action overlap with those presented here; (2) the status of the EDVA Action; (3) the States' interest in proceeding on the current timetable and any potential prejudice that may

be caused by the delay; (4) Google's interest in a stay and any prejudice associated with proceeding on the current timetable; and (5) the interest of the Court. *See SuperMedia Inc. v. Bell*, No. 3:12-CV-2034, 2012 WL 5389683, at *1 (N.D. Tex. Nov. 2, 2012).

To begin with, there is substantial overlap between the issues in the EDVA Action and this case. The current operative complaint in this case—the Fourth Amended Complaint ("FAC")—includes six counts. The table below shows the overlap between liability findings in the EDVA Action and the claims asserted in the States' FAC.

| Count | EDVA Case Finding | Asserted Here? |
|---|---|---|
| Monopolization of the advertiser ad network market | EDVA Count III: Google found not liable for violating Sherman Act | EDTX Count I/II |
| Monopolization of the publisher ad server market | EDVA Count I: Google found liable for violating Sherman Act | EDTX Count I/II |
| Monopolization of the ad exchange market | EDVA Count II: Google found liable for violating Sherman Act | EDTX Count I/II |
| Unlawful tying of AdX and DFP | EDVA Count IV: Google found liable for violating Sherman Act | EDTX Count III |
| Google agreement with Facebook unlawful | N/A in EDVA | EDTX Count IV |
| Violation of Plaintiff States' state antitrust laws | N/A in EDVA | EDTX Count V |
| Violation of Plaintiff States' state DTPA laws | N/A in EDVA | EDTX Count VI |

In addition to the direct overlap between this case and the EDVA Action on federal-antitrust claims, there is also additional overlap with the state-antitrust claims because the state statutes mirror federal law.

The States also seek exclusively equitable relief on their federal-antitrust claims and injunctive relief for their state-antitrust claims. The EDVA Plaintiffs' requests for injunctive relief have been submitted in the EDVA Action. (EDVA Action Dkt. #1430). The EDVA Plaintiffs seek expansive divestiture relief, including "AdX Divestiture," *id.* at 8; "Phased Divestiture of DFP [Doubleclick for Publishers]," *id.* at 9; the opening of Google's suite of ad tech products to "all third-party ad tech tools," *id.* at 12; bid-routing remedies, *id.*; a mandate that "Google's buyside tools (AdWords and DV360) should be prohibited from receiving bid requests or providing bids directly into AdX or DFP and must instead access AdX or DFP inventory only through a third-party exchange or API," *id.* at 12; and other behavioral remedies. As Google correctly notes, if granted, this sweeping relief could render moot the divestiture and behavioral injunctive remedies the States seek here.

In addition, while Google won on the EDVA Plaintiffs' liability claim as to Google's advertiser tools, it is possible that the remedies ordered in Virginia, particularly as to Google's ad exchange, could foreclose the structural injunctive remedies the States seek for their claims relating to Google's advertiser tools. In this regard, the EDVA Plaintiffs' remedies proposal includes mandates as to the way Google's advertiser tools, Google Ads and DV360, will be required to bid into sell-side tools, relief that could impact any differing remedial order entered by this Court, even

if it found liability on the States' federal-antitrust claims. In sum, the final judgment in the EDVA Action may substantially narrow the issues to be tried in this case.

To be sure, the States have an interest in proceeding to trial on the current timetable, including the fact that they have planned for their witnesses, including experts, to be available for trial in line with the current August setting. However, the States have not articulated any meaningful prejudice associated with continuing the trial pending a final judgment in the EDVA Action.

Moreover, even if this case proceeded under the current timetable, it is highly unlikely, if not impossible, that this Court would reach a final judgment before the EDVA Court—meaning that this Court would still have to address the impact of a final judgment in the EDVA Action on the claims in this case even if the liability trial went forward here on August 11. Here's why. To begin with, the EDVA Action has already resolved liability—this Court has not. And per the parties' pretrial order, under the best-case scenario presented by the States, a jury will not even begin to deliberate on liability issues until about September 15—a week before the remedies trial in the EDVA Action. After a jury verdict is returned, and before any penalties proceeding could take place here, the Court would have to resolve any Rule 50 motions, a process that would likely consume at least a few months. The parties have proposed that, concurrently with the jury trial in August, the Court would conduct a bench trial on the federal-antitrust claims and certain state-antitrust claims, as well as certain state-DTPA claims. (Dkt. #875 at 37–38). The bench trial on certain liability issues will then involve a post-trial schedule for submission of proposed

findings of fact and conclusions on liability issues tried by the Court. These issues would also need to be resolved before any remedies proceeding in this case. Only after all these matters are adjudicated, likely several months after the liability trial is complete, could this Court move forward with a remedies trial. Again, the Court presumes that a final judgment could only be reached here weeks, if not months, after such a remedy proceeding were completed. In the meantime, the EDVA Action remedy proceeding will likely be completed well before this Court has finished its liability phase, and it's reasonable to presume that the EDVA Action final judgment would also issue well before this Court's final judgment—probably before this Court could even complete its remedy proceeding.

In sum, even if this case proceeds under the current timetable, at some point before final judgment is reached here, a final decision will be issued in the EDVA Action. That decision will undoubtedly impact, and may substantially narrow, the issues to be resolved in this case. Under the circumstances, principles of judicial economy and avoiding duplicative proceedings counsel in favor of granting the requested continuance. The benefits of moving forward with a liability trial in August–September, a process that will necessarily place great strains on an already overburdened docket, *see supra* note 4, are minimal given that there is virtually no scenario in which the Court will not have to address a final judgment in the EDVA Action long before any final judgment is reached here.

Finally, this Court has a responsibility to administer an enormous docket as best it can, serving all the litigants in the cases pending before it. Part of that

14

responsibility is fulfilled by making pragmatic decisions to streamline cases wherever possible. There is every reason to anticipate that the resolution of the EDVA Action will streamline the issues in this case. And that resolution will come before, and likely long before, any final resolution of this case could occur—even under the parties' most optimistic estimates. Accordingly, a continuance pending final judgment in the EDVA Action makes sense.[5]

### IV. CONCLUSION

It is therefore **ORDERED** that Defendant Google LLC's Verified Motion for Continuance and Conference Request, (Dkt. #862), is **GRANTED**.

It is further **ORDERED** that the current trial scheduled for August 11, 2025, is **CANCELLED**. A new trial date and pretrial deadlines will be entered, as necessary, after the entry of final judgment in the EDVA Action.

It is further **ORDERED** that all deadlines and hearings in this case are **STAYED** pending the entry of final judgment in the EDVA Action.

It is further **ORDERED** that the parties will file a joint notice to the Court within one week of the entry of final judgment in the EDVA Action.

**So ORDERED and SIGNED this 17th day of July, 2025.**

SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE

---

[5] Google has argued that it may be prejudiced by having to present its witnesses in proceedings before both this Court and the Virginia court within essentially the same timeframe. Because any such potential prejudice could be avoided by sensible trial-management procedures, this argument has not influenced the Court's decision on the continuance request.